IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                    )   Case No. 08-13141(KJC)
                         )   (Jointly Administered)
                         )   Related to Dkt.No. 12262
TRIBUNE COMPANY, et al.,   )
                         )   Chapter 11

                         )   Courtroom 5
                         )   824 Market Street
        Debtors.      )   Wilmington, Delaware
                         )
                         )   August 17, 2012
                         )   10:00 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:
For Debtors:             Sidley Austin, LLP
                        BY: JAMES BENDERNAGEL, ESQ.
                        1501 K Street, NW
                        Washington, DC  20005
                        (202) 736-8000
                        BY: JEFFREY STEEN, ESQ.
                        BY: JAMES DUCAYET, ESQ.
                        One South Dearborn
                        Chicago, IL  60603
                        (312) 853-7000

                        Cole Schotz Meisel Forman & Leonard
                        BY: NORMAN PERNICK, ESQ.
                        500 Delaware Avenue, Ste. 1410
                        Wilmington, DE  19801
                        (302) 651-2000

ECRO:                  STEPHEN GRANT

Transcription Service:   DIAZ DATA SERVICES
                        331 Schuylkill Street
                        Harrisburg, Pennsylvania 17110
                        (717) 233-6664
                        www.diazdata.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:
(Continued)

For Credit Agreement
Lenders:                    Jones Day
                            BY: BRUCE BENNETT, ESQ.
                            BY: JAMES JOHNSTON, ESQ.
                            555 South Flower St., 50th Floor
                            Los Angeles, CA  90071
                            (213) 489-3939

                            Young Conaway Stargatt & Taylor LLP
                            BY: ROBERT BRADY, ESQ.
                            BY: BLAKE CLEARY, ESQ.
                            Rodney Square
                            1000 North King Street
                            Wilmington, DE  19801
                            (302) 571-6600

For JPMorgan:               Davis Polk
                            BY: MICHAEL RUSSANO, ESQ.
                            BY: KAREN LUFTGLASS, ESQ.
                            BY: ELI VONNEGUT, ESQ.
                            450 Lexington Avenue
                            New York, NY  10017
                            (212) 450-4019

                            Richards Layton & Finger
                            BY: DREW SLOAN, ESQ.
                            One Rodney Square
                            920 North King Street
                            Wilmington, DE  19801
                            (302) 651-7612

For Law Debenture:          Bifferado Gentilotti
                            BY: ROBIN BROGAN, ESQ.
                            800 North King Street
                            Plaza Level
                            Wilmington, DE  19801
                            (302) 429-1900

                            Kasowitz Benson Torres & Friedman,
                            LLP
                            BY: MATTHEW B. STEIN, ESQ.
                            BY: CHRISTINE MONTENEGRO, ESQ.
                            1633 Broadway
                            New York, NY  10019
                            (212) 506-1700

For Merrill Lynch:          Potter Anderson Corroon, LLP
                            BY: R. STEPHEN MCNEILL, ESQ.
                            BY: LAURIE SELBER SILVERSTEIN, ESQ.
                            Hercules Plaza
                            1313 North Market Street, 6th Floor
                            Wilmington, DE  19801
                            (302) 984-6033

For The Committee:          Landis Rath & Cobb
                            BY: ADAM G. LANDIS, ESQ.
                            919 Market Street
                            Suite 1800
                            Wilmington, De  19801
                            (302) 467-4400

                            Chadbourne & Parke
                            BY: DAVID LEMAY, ESQ.
                            BY: MARC ROITMAN, ESQ.
                            BY: ANDREW ROSENBLATT, ESQ.
                            30 Rockefeller Plaza
                            New York, NY  10112
                            (212) 408-5112

                            Zuckerman Spaeder, LLP
                            BY: JAMES SOTTILE, ESQ.
                            1185 Avenue of the Americas
                            31st Floor
                            New York, NY  10036-2603
                            (212) 897-3434

For U.S. Trustee:           Office of U. S. Trustee
                            BY: DAVID KLAUDER, ESQ.
                            844 King Street, Suite 2207
                            Lockbox 35
                            Wilmington, DE 19801
                            (302) 573-6491

For DBTCA:                  McCarter & English
                            BY: KATHARINE MAYER, ESQ.
                            BY: DAVID ADLER, ESQ.
                            405 North King Street, 8th Floor
                            Wilmington, DE  19801

For Stone Tower:            Rosner Law Group
                            BY: SCOTT LEONHARDT, ESQ.
                            BY: DAVID ROSNER, ESQ.
                            BY: SHERON KORPUS, ESQ.
                            824 N. Market St., Ste. 810
                            Wilmington, DE  19801
                            (302) 777-1111

```
For Wilmington Trust
Company:                    Brown Rudnick
                            BY: GORDON NOVOD, ESQ.
                            Seven Time3s Square
                            New York, NY  10036
                            (212) 209-4940


                            Sullivan Hazeltine Allinson
                            BY: WILLIAM HAZELTINE, ESQ.
                            901 N. Market Street, #1300
                            Wilmington, DE  19801
                            (302) 428-8191
For Aurelius Capital
Management:                 Akin Gump Strauss Hauer & Feld, LLP
                            BY: DANIEL GOLDEN, ESQ.
                            BY: DAVID ZENSKY, ESQ.
                            BY: DEBORAH NEWMAN, ESQ.
                            One Bryant Park
                            New York, NY  10036-6745
                            (212) 872-1000


TELEPHONIC APPEARANCES:


For Debtor:                 Sidley Austin
                            BY: BRYAN KRAKAUER, ESQ.
                            (312) 853-7515
                            BY: KERRIANN MILLS, ESQ.
                            (312) 853-0036
                            BY: JESSICA BOELTER, ESQ.
                            (312) 853-7030
                            BY: GEOFREY KING, ESQ.
                            (312) 853-0324


                            Tribune
                            BY: DAVE ELDERSVELD
                            (312) 222-4707
                            BY: GARY WEITMAN
                            (312) 222-3394
                            BY: DON LIEBENTRITT
                            (312) 222-3651
                            BY: MICHAEL D. ONEAL
                            (312) 222-3490


For Aurelius Capital
Management:                 Aurelius Capital Management
                            BY: DAN GROPPER
                            (646) 445-6500
```

```
For Official Committee
of Unsecured Creditors:    Chadbourne & Parke, LLP
                           BY: DOUGLAS DEUTSCH, ESQ.
                           BY: HOWARD SEIFE, ESQ.
                           BY: MARC ASHLEY, ESQ.
                           BY: THOMAS MCCORMACK, ESQ.
                           BY: MICHAEL DISTEFANO, ESQ.
                           (212) 408-5100


                           Zuckerman Spaeder, LLP
                           BY: ANDREW GOLDFARB, ESQ.
                           (202) 778-1800
For Former Directors
And Officers:              Grippo & Elden, LLC
                           BY: GEORGE R. DOUGHERTY, ESQ.
                           (312) 704-7700


For Bank of America:       Bank of America
                           BY: ESTER CHUNG, ESQ.
                           (646) 855-6705


                           O'Melveny & Myers (New York)
                           BY: DANIEL S. SHAMAH, ESQ.
                           (212) 326-2138


For SuttonBrook
Capital Management:        SuttonBrook Capital Management LP
                           BY: CAROL L. BALE
                           (212) 588-6640


For EGI-TRB:               Jenner & Block, LLP
                           BY: ANDREW VAIL, ESQ.
                           (312) 840-8688
                           BY: CATHERINE STEEGE, ESQ.
                           (312) 923-2952


For Alvarez & Marsal,
LLC:                       Alvarez & Marsal, LLC
                           BY: MATTHEW FRANK
                           (312) 371-9955


For Barclays:              Barclays Capital, Inc.
                           BY: OLIVIA MAURO, ESQ.
                           (212) 412-6773


For Merrill Lynch:         Kaye Scholer, LLP
                           BY: JANE PARVER, ESQ.
                           BY: MADALYN G. PRIMOFFR, ESQ.
                           (212) 836-8510
```

```
For Eric Bilmes:          HBK Capital Management
                          BY: ERIC BILMES
                          (212) 588-5115


                          O'Melveny & Myers, LLP
                          BY: EVAN JONES, ESQ.
                          (213) 430-6236
For Onex Credit
Partners:                 Onex Credit Partners
                          BY: STUART KOVENSKY
                          (201) 541-2121


For JPMorgan Chase:       Davis Polk & Wardwell, LLP
                          BY: ANGELA LIBBY, ESQ.
                          (212) 450-4433


For Davidson & Kempner:   DK Partners
                          BY: EPHRAIM DIAMOND
                          (646) 282-5841
For Oaktree Capital
Management:               Dewey & LeBoeuf, LLP
                          BY: JOSHUA M. MESTER, ESQ
                          (213) 621-6016


                          Oaktree Capital Management
                          BY: KENNETH C. LIANG
                          (213) 860-6422
                          BY: EDGAR LEE
                          (213) 860-6415


For Bank of America:      O'Melveny & Myers (New York Office)
                          BY: EVAN JONES, ESQ.
                          (213) 430-6236


For Arrowgrass Capital
Services:                 Arrowgrass Capital Partners, US, LP
                          BY: DAVID DUNN, ESQ.
                          (212) 584-5946


For Employees Compensation
Defendant's Group:        Frank Gecker, LLP
                          BY: REED HEILIGMAN, ESQ.
                          (312) 276-1432


For Wells Fargo Bank:     White & Case
                          BY: SCOTT GREISSMAN, ESQ.
                          (212) 819-8567


For Interested Party:     BY: ANNA KALENCHITS
                          (212) 723-1808
```

For Chandler Bigelow,
III:                        Sperling & Slater
                            BY: GWEN NOLAN, ESQ.
                            (312) 641-3200


For Wilmington Trust:       Brown Rudnick, LLP
                            BY: MARTIN SIEGEL, ESQ.
                            (212) 209-4829

For Robert McCormick
Foundation & Cantigny
Foundation:                 Katten Muchin Rosenman, LLP
                            BY: JOHN SIEGER, ESQ.
                            (312) 902-5294



For Citi:                   Paul Weiss Rifkind Wharton &
                            Garrison, LLP
                            BY: ANN K. YOUNG, ESQ.
                            (212) 373-2237
                            BY: OKSANA LASHKO, ESQ.
                            (212)  373-3000

                            Citi
                            BY: REBECCA SONG
                            (212) 559-9933


For Amalgamated Bank:       Millbank Tweed Hadley & McCloy
                            BY: ALAN STONE, ESQ.
                            (212) 530-5285


For Brigade Capital
Management:                 Brigade Capital Management
                            BY: GRANT NACHMAN
                            (212) 745-9781


For Realm Partners:         Realm Partners
                            BY: JASON D. ABBRUZZESE
                            (212) 612-1441


For Credit Agreement
Lenders:                    Angelo Gordon & Company, LP
                            BY: GAVIN BAIERA
                            (212) 692-0217


For Dow Jones News
Wires:                      Dow Jones & Company
                            BY: PEG BRICKLEY
                            (215) 462-0953

```
For Law Debenture Trust
Company of New York:      Kasowitz Benson Torres & Friedman
                          BY: PAUL BURGO, ESQ.
                          (212) 506-1865


For Pension Benefit
Guaranty Corporation:     Pension Benefit Guaranty
                          Corporation
                          BY: CASSANDRA BURTON-CAVERTY
                          (202) 326-4020


For Interested Party:     BY: ROBERT CHANNICK
                          In Pro Per/Pro Se
                          (312) 222-4840


For T. Rowe:              Bingham McCutchen, LLP
                          BY: MICHAEL D'AGOSTINO, ESQ.
                          (860) 240-2731


For USB Securities:       USB Securities, LLC
                          BY: DAVID W. DERR
                          (203) 719-9776


For Silver Point
Capital:                  Silver Point Capital
                          BY: MATTHEW EHMER
                          (203) 542-4219


For Monarch Alternative
Capital LP:               Monarch Alternative Capital, LP
                          BY: MICHAEL J. KELLY
                          (212) 554-1760


For Ane Launy:            Goldman Sachs & Co.
                          BY: ANE LAUNY
                          (212) 357-8935


For Allen Global
Partners:                 Allen Global Partners
                          BY: GERSON P. MENDONCE
                          (212) 339-2495


For Morgan Stanley:       Weil Gotshal & Manges, LLP
                          BY: ANDREA SAAVEDRA, ESQ.
                          (212) 310-8544


For Canyon Partners:      Canyon Partners
                          BY: CHANEY M. SHEFFIELD
                          (310) 272-1062
```

```
For Contrarian Capital
Management:                    Contrarian Capital Management
                               BY: JOSHUA TRUMP
                               (203) 662-8299

For Former Special
Committee:                     Skadden Arps Slate Meagher & Flom
                               (Chicago)
                               BY: JUSTIN WINEMAN, ESQ.
                               (312) 407-0924
```

WILMINGTON, DELAWARE, FRIDAY, AUGUST 17, 2012, 10:01 A.M.

1          THE CLERK:  All rise.

2          THE COURT:  Good morning, you all.

3          ALL:  Good morning.

4          MR. BENDERNAGEL:  Good morning, Your Honor, Jim

5    Bendernagel, for the debtors.  We're back.

6          THE COURT:  I noticed.

7                    (Laughter)

8          MR. BENDERNAGEL:  Almost in full force.  We have

9    a preliminary matter regarding the order of presentation,

10   Your Honor.  As you know, there are a couple of different

11   motions of today, a couple of Stay Motions, and a Motion for

12   Direct Certification.  We've had conversations with the

13   movants and the movants suggest that they would like to go

14   forward with the Certification Motion first.  We, the

15   debtors, have a problem with that simply because the Stay

16   Motion has evidence associated with it and we have both of

17   our witnesses here, Mr. Hartenstein and Mr. Kurtz, and we'd

18   like to move that forward.  Mr. Hartenstein has some family

19   issues that require his presence.  His sister-in-law is

20   very, very, very ill and he'd like to get back if he can

21   tonight and his concern is that if he doesn't get on early

22   in the day, that's not going to be possible.  We've talked

23   to the other side about that.  They still think that the

24   Certification Motion is going forward.  They've raised a

1    question of whether we want to put on our witnesses and the

2    answer to that is we do want to put on our witnesses but,

3    obviously, Your Honor is going to tell us what you want to

4    do and others may want to address this question.  We'd ask

5    that the Court, you know, accommodate the witnesses and

6    start with the evidence and then do the Stay Motion first

7    and then we can come to the Certification Motion.  Others

8    have opinions on this issue if you want to hear from them.

9         THE COURT:  All right.  I'll hear from others but

10   let me just ask is there any notion of totally how much time

11   it's expected will be consumed today?

12        MR. BENDERNAGEL:  I think it could take quite a

13   bit of time, Your Honor.  We've got a lot of different

14   people weighing in on these motions.  We have agreed that

15   when we get to the Certification Motion, everybody that

16   wants to say something in favor of certification will go and

17   then those people who want to say something against

18   certification will go, and the same thing with the Stay

19   Motions.  We're not going to do the Stay Motions seriatim.

20   We'll do them all together, and the like, but, you know,

21   just so we can get the Stay Motion, you're going to have Mr.

22   Zensky, and then I presume Mr. Rosner, and then I wouldn't

23   be surprised if Wilmington Trust has something to say on

24   those issues, and then, you know, we're going to have a

25   presentation.  It would not surprise me if we gobble up a

1  good chunk of the day at the like.

2          THE COURT:  All right.  Well, let me hear first

3  from -- or let me hear next from those who wish to press

4  certification first and why.

5          MR. ROSNER:  Good morning, Your Honor, David

6  Rosner, from Kasowitz Benson, on behalf of Law Debenture.

7  We're fine with the witnesses going first.  We do think the

8  natural order of things should be certification and then

9  stay.  That's why we had suggested that certification would

10 go first.  We spoke with Mr. Bendernagel.  He told us about

11 Mr. Hartenstein and we said sure, let's have the witnesses

12 go first.  But, after the witnesses, we think we should

13 argue certification, which is probably the shorter motion,

14 and I think it makes more sense to go first since I think

15 that it has Your Honor's view on certification has -- will

16 have an impact on Your Honor's view on the stay.  So what we

17 would propose is --

18          THE COURT:  I'm not sure I agree with that but I

19 understand what you're saying.

20          MR. ROSNER:  So we would agree let's have the

21 record open for the witnesses.  That's fine.  And if you're

22 inclined to hear the certification next, that's what we

23 would propose but, obviously, we're going to follow your

24 lead on that, Your Honor.

25          THE COURT:  Okay.  We're going to hear the stay

1  first in full and then we'll turn to certification.  But

2  before we begin, I have some preliminary remarks that I

3  would like to make that I hope will guide the parties to

4  what will be, in my view, a more helpful presentation today,

5  also more efficient, to get me where I need to be to

6  determine the issues that are before me.  And let me frame

7  those remarks in the context of the considerations that the

8  relevant legal authorities say I must address when

9  determining, first, whether a stay pending appeal should be

10  granted.

11          The first factor to be considered is whether the

12  applicant for a stay has made a strong showing on its

13  likelihood to succeed on appeal.  Ladies and gentlemen, I

14  have been amerced in these issues now for years.  The

15  exercise, in part, and maybe in large part, is the rehashing

16  of issues argued and considered at great length and which

17  are represented in four lengthy written opinions, all issued

18  within the last year.  I believe I've made one error, which

19  I corrected on reconsideration.  I will tell you I am at a

20  place of tranquility --

21                      (Laughter)

22          THE COURT:  -- that I have made the correct

23  decisions.  But if I'm wrong, I promise you I will be

24  faithful to any mandate that an Appellate Court sends my

25  way.  But to give the Appellants here some comfort, I have

1  yet to dispose of a Motion for a Stay Pending Appeal on the

2  grounds that Appellant has failed to meet its burden of

3  demonstrating a likelihood of success on appeal, and I do

4  not intend to be the first one today in which I will do

5  that.  So what I'd like Counsel to do is to take those parts

6  of their presentations addressed to that factor and cross

7  them out.  The written submissions have been extensive.  I

8  feel as if I need no further discussion, either on the

9  terrible mistakes I made or the wonderful things that I did.

10  I've heard enough.

11      Let me turn to the second factor, and that is

12  whether the applicant will be irreparably harmed if no stay

13  is granted.  Here, I think the central question, in

14  reviewing that factor, can be boiled simply down to the

15  question of can the egg be unscrambled if the Plan is

16  allowed to go effective, and I will tell you my preliminary

17  view is that it cannot be.

18      Let me turn to the third factor, and that's

19  whether the issuance of a stay will substantially injure

20  other interested parties.  My preliminary view is yes, the

21  issuance of a stay will injure other interested parties, and

22  I'd like the parties here to focus on if a stay is to be

23  granted, how the injury is to be quantified to protect

24  against the potential harm that goes against whom the stay

25  will operate.  That leaves the Appellants free to argue that

1   no stay is appropriate.  I don't mean to foreclose

2   discussion on that.

3           I turn to the fourth and final factor, and that

4   is public policy considerations.  Under these circumstances,

5   I see the split as a 50/50 split.  I think the District

6   Court in *Adelphia* properly identified the balancing of the

7   two considerations.  On the one hand, is allowing the

8   vindication of minority rights on appeal versus the swift

9   and efficient resolution of the bankruptcy proceedings.  I

10  think both are equally important here and those factors, I

11  think, just balance out.

12          The decisions say that, among the four factors,

13  equal weight need not necessarily be given to each since a

14  formula can't be reduced to a set of rigid rules, but I will

15  consider all four.

16          Let me turn briefly to the certification

17  requests.  28 U.S.C. 158(d) provides three situations in

18  which a Court, at least as I read the statute, if found,

19  must certify an appeal.  And if anyone disagrees with the

20  "must" part, you're free to argue that, one, that there's no

21  controlling law on the issue that's being appealed; that a

22  resolution of conflicting decisions is required; or that an

23  immediate appeal may materially advance progress of the

24  case.

25          At the scheduling hearing, I said to the parties

1  that it didn't seem to me desirable that the appeals should

2  be on track in two different Courts at the same time.  Let

3  me ask this, however.  If I find that one or more of the

4  three standards are met for certification, does the Court

5  have authority; does the statute permit, the Court to split

6  a single appeal and to put one issue to the Court of Appeals

7  and the rest to the District Court?  And if I find that one

8  of three factors exists with respect to any of the

9  Appellants who are requesting certification, should the

10 Court exercise, sua sponte, its authority to send all of the

11 appeals to the Court of Appeals; I guess it would be

12 arguably under the third factor, the third statutory factor;

13 that is that immediate appeal would materially advance the

14 progress of the case.

15          Now that concludes my initial statement.  I'm

16 prepared to move forward at this point with considering the

17 Motions for Stay.  If there are any questions about what

18 I've said, I'm willing to address them now if you'd like.

19          MR. BENDERNAGEL:  Your Honor, with that, we've

20 discussed how best to move forward with the Motions for Stay

21 and I think there's agreement that before we have an

22 opening, we ought to put the witnesses on and then just get

23 to the argument and, with that, we'd call Eddy Hartenstein

24 to the witness stand to testify with respect to this matter.

25          THE COURT:  Very well.

1          MR. BENDERNAGEL:  And while he's making his way,

2    can I hand up certain binders that we have that have his

3    Declaration and a few documents we're going to use?

4          THE COURT:  Certainly.  Mr. Hartenstein, this way

5    if you please, sir.  You know, usually I ignore the first

6    one but you're making it hard.

7                         (Laughter)

8          THE COURT:  Please stand and be sworn in, sir.

9          EDDY HARTENSTEIN, DEBTORS' WITNESS, SWORN

10         MR. BENDERNAGEL:  Your Honor, may I approach the

11   witness and provide him with a binder?

12         THE COURT:  You may.

13         MR. BENDERNAGEL:  May I proceed?

14         THE COURT:  You may.

15         MR. BENDERNAGEL:  All right.

16                    DIRECT EXAMINATION

17   BY MR. BENDERNAGEL:

18   Q    Mr. Hartenstein, by whom are you currently employed?

19   A    Tribune Company.

20   Q    And what is your current position?

21   A    I'm the President and CEO.

22   Q    Of the whole company?

23   A    Tribune Company, yes.

24   Q    And what are your responsibilities in that position?

25   A    Overseeing the operations and all aspects of our 23

1  television stations, our eight news publications, and our

2  various minority interests in media properties and assets.

3  Q     And how long have you held that position?

4  A     Since May of 2011.

5  Q     And how long have you worked for Tribune?

6  A     Since August.  It's almost coming up on my fifth year

7  anniversary, in fact today, of 2008.

8  Q     And what's the purpose of your testimony today?

9  A     To testify my belief, on my experience of running the

10 company, as to the harm that it would create if a stay were

11 granted.

12 Q     And have you prepared a Declaration setting forth your

13 views in that regard?

14 A     Yes I have.

15          MR. BENDERNAGEL:  Your Honor, at Tab 1, there is

16 a document entitled Amended Declaration of Eddy Hartenstein

17 in Support of the Objection of the DCL Plan Proponents to

18 the Motions for a Stay Pending Appeal.  We'd ask that that

19 be marked as Hartenstein Exhibit 1 for identification.

20          THE COURT:  Okay.

21             (Hartenstein Exhibit 1 marked)

22 BY MR. BENDERNAGEL:

23 Q     Do you recognize what's been marked as Hartenstein

24 Exhibit 1 for identification?

25 A     Yes I do.

1  Q     And is that, in fact, your Declaration?

2  A     Yes it is.

3  Q     Now, do you have a view as to what the harm would be

4  if, in fact, a stay would be granted?

5          MR. ZENSKY:  Objection.  Your Honor, as falling

6  prestige.  It's way too of an open-ended question.  It may

7  involve hearsay embedded in the answer.  I would ask that

8  Mr. Bendernagel proceed in slightly smaller steps.

9          THE COURT:  Well, I think the objection may be

10 better for the next question.  I'll overrule it for this

11 one.

12 BY MR. BENDERNAGEL:

13 Q     I think the question was yes or no, do you have a

14 view?

15 A     Yes I do.

16 Q     And have you put together a chart that identifies the

17 specific aspects of harm you wish to talk about today?

18 A     Yes I have.

19 Q     And is that chart set forth at Tab 2 of the

20 submission?

21 A     Yes it is.

22         MR. BENDERNAGEL:  Your Honor, we'd ask that Tab 2

23 be marked for identification as Hartenstein Exhibit 2.

24         THE COURT:  Okay.

25             (Hartenstein Exhibit 2 marked)

1  BY MR. BENDERNAGEL:

2  Q     Do you recognize what's been marked as Hartenstein

3  Exhibit 2?

4  A     Yes I do.

5  Q     And could you just briefly explain to the Court what

6  this document purports to do?

7  A     At my direction, I tried to summarize the five major

8  categories that harm could be done or, in my belief, would

9  be done to the company should a stay be granted for this

10  appeal.

11  Q     Now, the first item on the page is [indiscernible]

12  Brand Erosion.  Do you see that?

13  A     Yes.

14  Q     Could you explain to the Court what your concerns are

15  in that regard?

16  A     With our many media assets, there is, and has for

17  years and years, over 100 years in some cases, been the

18  establishment of a brand.  As we are now approaching our 44th

19  month of bankruptcy, it is a constant gnawing at what it is

20  we stand for amongst our clients, our subscribers, our

21  customers, our viewers, and the business partners and

22  advertisers that we try to do business with.

23  Q     Now, can you give an example of how the bankruptcy has

24  impacted the brand?

25  A     There's hardly a day that goes by that in, and with

1 one of our account executives or one of our businesspeople

2 in a meeting, that the first 15, 20 minutes doesn't get

3 consumed by talking about well, what about your bankruptcy

4 and how is that going to affect any relationship that you

5 want.  And I think the general public and our clients and

6 our advertisers understand that people and companies, from

7 time-to-time, go through a bankruptcy and that's something

8 that, you know, comes and goes in the 12 to 18 months.  But

9 then they turn to us and say, you know, four years, really?

10 And so it starts the whole meeting and gives a cloud of

11 uncertainty on everything that we're trying to do and it

12 starts it off as a negative and that's very hard to

13 overcome.

14 Q    And what would be the impact if a stay were granted?

15 A    Well, it's a continuation of that same uncertainty and

16 we were, and it was perceived when this Court issued the

17 confirmation last month, that we were on the path and coming

18 out and momentum was building.  And for there now to be a

19 stay on top of that, it just goes to our fundamental

20 credibility and it causes clients and advertisers to say oh,

21 shucks, you guys are never going to get out of bankruptcy.

22 Q    Now, are there instances where either competitors or

23 counter-parties have used the fact you're in bankruptcy in a

24 manner that's negatively impacted the company?

25          MR. ZENSKY:  Objection, Your Honor.  Foundation?

1  I believe such is limited to facts of this witness as

2  personally perceived, as opposed to what he might have heard

3  from other people within the company.

4          MR. BENDERNAGEL:  Your Honor, we accept that

5  qualification.

6          MR. ZENSKY:  Thank you.

7          THE WITNESS:  Yes, I think it's no better

8  exemplified than last night.  We -- I landed here in

9  Philadelphia after midnight last night.  I had -- when I

10 turned my Blackberry on, I had over 200 what appeared to be

11 spam emails on a retransmission consent dispute that we

12 found ourselves in with Cablevisions Systems, a cable

13 operator in the New York area, and they had issued a press

14 release shortly after midnight eastern time that, you know,

15 in a very misleading way to their customers, cited their

16 action or masked their action of taking our signals off the

17 air with a lot of smoke and noise about the fact that

18 Tribune is in bankruptcy and that's why it's happening.

19         MR. BENDERNAGEL:  If you could take a look at Tab

20 5, there's a document there that I would ask, Your Honor, be

21 marked as Hartenstein Exhibit 3 for identification.

22                 (Hartenstein Exhibit 3 marked)

23 BY MR. BENDERNAGEL:

24 Q    Do you have Hartenstein 3 for identification in front

25 of you?

1  A     Yes I do.

2  Q     What is this document?

3  A     It is a press release that came out shortly after

4  midnight last night from Cablevision Systems.

5  Q     Could you read the first sentence of the press release

6  into the record, please?

7  A     Yes.  In quotes, "The bankrupt Tribune Company and the

8  hedge funds and banks that own it, including Oaktree Capital

9  Management, Angelo Gordon & Company, and others, are trying

10  to solve Tribune's financial problems on the backs of

11  Cablevision customers."

12  Q     Now, is that what you're trying to do?

13  A     Absolutely not.

14  Q     How would you characterize how these kind of

15  statements affect the Tribune brand?

16  A     Well, it goes out as they are sending this message out

17  on a blue screen on the channel where WPIX, for example, our

18  Tribune station in New York would have been and confuses

19  customers that frankly don't know anything about what is

20  going on here and what has been going on here and makes

21  them, you know, think less of the -- you know, the Tribune

22  brand name and, specifically, the WPIX-11 brand.  It's kind

23  of what I mean by brand erosion.

24  Q     Now, if you could take a look at Exhibit -- at Tab 3

25  of your binder, there's a document entitled Tribune Company

1   Board of Directors 2011 Operating Performance Results.  Do

2   you see that?

3   A     Yes.

4            MR. BENDERNAGEL:  And I'd note -- I'd ask Your

5   Honor that this document be marked as Hartenstein 4 for

6   identification.

7            THE COURT:  Now, this was submitted, if I read

8   the binders correctly, under seal?

9            MR. BENDERNAGEL:  That's correct, Your Honor.

10           THE COURT:  And does it -- does the seal remain

11  so?

12           MR. BENDERNAGEL:  Yes, and we'd ask that it be

13  protected.  This is a confidential business document that

14  was used at his deposition and we want to look at a single

15  page in that connection.

16           THE COURT:  All right.

17               (Hartenstein Exhibit 4 marked)

18  BY MR. BENDERNAGEL:

19  Q     Are you -- do you have Hartenstein 4 in front of you?

20  A     Yes I do.

21  Q     If you can turn to page 16 of the document, there's a

22  chart entitled Publishing Peer Analysis Tribune Versus Large

23  Metros/Other Newspapers.  Do you see that?

24  A     Yes I do.

25  Q     And I take it you're familiar with this chart, is that

1   correct?

2   A     Yes.

3   Q     And if you would just explain to the Court without

4   describing the specific details on the page what's being

5   depicted on this chart?

6   A     It is showing the relative peer analysis in terms of

7   just total advertising dollars for Tribune's six largest

8   news publishing organizations and a sampling of other large

9   metropolitan area news publications and it indicates that we

10  are average or equally less -- have equally less advertising

11  revenues for 2011 than that peer group.

12  Q     Now, the movants have contended that this document

13  suggests that the bankruptcy -- that you're doing fine in

14  bankruptcy; that you're not essentially suffering brand

15  erosion, at least with respect to advertisers.  What's your

16  reaction to that allegation or assertion?

17  A     I disagree.

18  Q     And why do you disagree?

19  A     Well, it's not satisfactory to me as an operating

20  executive to be just average.  Average to me is mediocre.

21  That's a negative to me.  We have I think the capabilities

22  and assets that could allow us to be much better.  And if

23  you look in detail in specific market-to-market or adjacent

24  market areas, we're doing worse in some cases, much worse.

25  Q     Now, if you could go back to Exhibit 2, which is at

1  Tab 2, and the second bullet point on this page is entitled

2  Lost Strategic Opportunities.  Do you see that?

3  A    Yes.

4  Q    And could you explain to the Court what this bullet is

5  intended to address?

6  A    In short, it is for both an offensive and defensive

7  set of opportunities.  And by that, I mean both revenue

8  enhancing and expense or cost-reduction opportunities.  Very

9  difficult for us and we have lost I think tremendous

10 opportunities to enhance revenues through partnerships,

11 joint ventures, cooperative agreements with other entities

12 in the space that we're in, or perhaps adjacent spaces that

13 we're in, where we could have improved our performance.

14 Q    Now, you indicated that some of these opportunities

15 were revenue-enhancing opportunities.

16 A    Yes.

17 Q    Correct?  Can you explain what you mean by a revenue-

18 enhancing opportunity?

19 A    You know, doing joint selling opportunities,

20 representing a larger footprint for a single advertiser to

21 give that advertiser more coverage.

22 Q    And how, in your view as the CEO of the company, has

23 the bankruptcy impacted your ability to pursue those types

24 of opportunities?

25 A    Well, it goes back to my first comment.  When you sit

1  down, there is a question mark over our heads about well,

2  gee, what's going to happen to you; when are you going to

3  emerge; what's your governance; if there is an approval

4  required and, in many cases, it would require approval.

5  There are a number of hoops to jump through which a company

6  not in bankruptcy would not have to go through.

7  Q    Now, the second set of opportunities you talked about

8  were cost-saving opportunities or expense-saving

9  opportunities.  Could you describe what that entails?

10  A    Trying to be more efficient in the marketplaces that

11  we are in; trying to do new distribution deals for products

12  other let's say than just in the publishing sector,

13  delivering newspapers or in the broadcasting sector, you

14  know, providing market opportunities and marketing

15  solutions.  And again, the same set of questions come into

16  play when you are about or going to try to enter into a

17  long-term agreement with someone.  They come back to well,

18  who are you going to be with; what are the constraints

19  operating?  I just don't know.  It's too hard to do business

20  with us.

21  Q    Now, at your deposition, you were asked if you could

22  identify specific instances of lost opportunities.  Do you

23  recall that?

24  A    Yes I do.

25  Q    And you said you aren't going to go there and you

1  didn't provide specific opportunities.  Can you explain why

2  you were reluctant to do that?

3  A     Well sure.  When a potential partner, those that dared

4  come to talk to us, they are in a way laying out and being

5  vulnerable with us in terms of a weakness or a problem that

6  they also have and for me to take that information in,

7  sometimes under -- many times under confidentiality or non-

8  disclosure agreements, NDAs, I have to honor those.  And for

9  others, I think it would be a huge violation of trust, you

10 know, CEO to CEO of one of those other entities if the mere

11 act of talking to me meant that that was going to be -- you

12 know, become public in a forum such as this Court.  I'm also

13 very reluctant to -- you know, to talk about that when

14 hopefully upon emergence, which we are hopefully close to, I

15 could then resurrect those instructions and not have the

16 kinds of burdens and obstacles on me as I do now.  So I want

17 to preserve that potential.  But time is our enemy here

18 because those opportunities are situational.  We are in a

19 dynamic market.  Time to market, time to execute those

20 things are paramount.

21 Q     Now, is there any way you can calculate with any kind

22 of specificity how much you've lost in the way of

23 opportunity?

24 A     It's very hard to quantify.

25 Q     Is there a way of doing that with respect to brand

1  erosion?

2  A     Again, it's an insidious drip, drip, drip kind of --

3  you know, drip-by-drip, day-by-day, erosion and diminution

4  of our brand and of our price competitively in the

5  marketplace.

6  Q     Now, with respect to lost opportunities, what would

7  you expect the situation to be if, in fact, the stay is

8  granted?

9  A     Oh, well not only would it --

10           MS. MONTENEGRO:  Objection.

11           THE COURT:  Any response?

12           MR. BENDERNAGEL:  Yes, Your Honor.  I believe

13  that he's the CEO that's tasked with operating this company

14  and he has a view in that regard and I think that he has a

15  basis for providing that view based on what he's experienced

16  to date.

17           MS. MONTENEGRO:  Well, it's speculative because

18  it's in the future.

19           MR. BENDERNAGEL:  Well, everything in the future

20  is speculative, Your Honor.

21           THE COURT:  Yes, I mean including business

22  projections and we can name a whole list of them.  Really,

23  the question is I think weight, not admissibility under

24  these circumstances.  The objection is overruled.  You may

25  answer, sir.

1              MR. BENDERNAGEL:  Thank you, Your Honor.

2              THE WITNESS:  It's a compounding.  It not only is

3    a continuance of what we've been under so far in these 43

4    months, okay, but it is a giant step backwards.  As we were

5    building in a crescendo, if you can call it that, towards

6    emergence and it was -- you know, it is anticipated that

7    we're getting close and then to be thrown yet into another

8    period of uncertainty of any length, quite frankly, it is

9    just, you know, devastating to our hopes of doing things

10   like this.

11   BY MR. BENDERNAGEL:

12   Q     Have your competitors sought to take advantage of your

13   situation?

14   A     Absolutely.  I mean Hartenstein 5, I mean, you know,

15   fresh off the presses and yes, they are doing that.

16   Q     Now, one last question in this area, at your

17   deposition, there was a suggestion -- they pointed out to

18   you, you had gotten the Cubs deal done in the course of the

19   bankruptcy and they suggested that that was evidence that

20   you really weren't being deprived of the ability to do

21   deals.  Do you recall that line of examination?

22   A     Yes I do.

23   Q     And what's your reaction to that line, that assertion?

24   A     Yes, we absolutely did get the Cubs deal done but it

25   took us two years and jumping through an incredible set of

1   hoops to get that done when it should not have taken

2   anywhere near that long.

3   Q    Now, is it your testimony that bankruptcy makes it

4   impossible to do deals?

5   A    No, not at all.

6   Q    How would you characterize the impact of bankruptcy in

7   this regard?

8   A    It has been a huge obstacle for us to do -- to conduct

9   just our daily business, let alone do anything to

10  differentiate us out of the masses of other people in our

11  space of what I call mediocrity and it has just not allowed

12  us to rise about that.  We've worked very hard.  Management

13  has worked very hard to do that.  We've gotten a few breaks

14  here and there.  We've done a few things.  But it has

15  prevented us from being anywhere near what we potentially

16  could be to enhance the value of this estate.

17  Q    Now, if you go back to Tab 2, Exhibit 2, the third

18  bullet point reads Difficulties in Recruiting and Retaining

19  Talent.  Do you see that?

20  A    Yes I do.

21  Q    Could you explain to the Court what that item is meant

22  to address?

23  A    Well, it is basically our employee-base, most

24  specifically, our senior management and the key contributors

25  getting the best salespeople that we possibly can.  It has

1  been difficult to retain these key individuals, let alone

2  recruit new talent that we need for some of the new

3  initiatives that we have.  We've been -- you know, we're

4  getting close to five years.  The world is changing around

5  as there's a huge shift to digital and we need people from

6  outside the traditional areas of broadcast television and

7  newspaper publishing to take us there.  It's very hard for

8  us to do that under the constraints of bankruptcy as we've

9  been in.

10 Q    Now -- and you've been involved in the MIFF

11 proceedings in this case, is that correct?

12 A    Yes I have.

13 Q    And there's been discussion of this three-legged stool

14 of compensation.  Could you remind the Court what that

15 entails?

16 A    My --

17         THE COURT:  Oh, I remember.

18                 (Laughter)

19         THE COURT:  But go ahead; I'm sorry, sir.

20         THE WITNESS:  Well, I could address the leg

21 that's missing.  The missing leg is long-term equity

22 compensation, long-term incentive equity compensation, and

23 that's what all of our peers in any of the media companies

24 that we compete in for the pool of talent have and we don't.

25 BY MR. BENDERNAGEL:

1 Q     And how would you suggest that that's impacted your

2 ability to retain and recruit?

3 A     When you go to recruit, you're trying for the best

4 candidate possible for the job you need filled and he or she

5 will invariably ask when you've ascertained that there's a

6 great potential opportunity there and that they fit the

7 needs, it always gets down to okay, what's the comp package

8 and there is no -- there's no third leg and that is

9 something that we cannot -- I cannot, our H.R. Department,

10 today cannot promise.  We have no authority to do that.  We

11 have no authority and ability to, on a long-term incentive

12 basis, provide that even for our existing senior management.

13 So it's a problem and granting a stay now would even

14 exacerbate that and make any, you know, kinds of hirings

15 that we desperately need to do delayed that much longer and

16 lose our market opportunity and our ability to be first with

17 new products, new services, that we need.

18 Q     Now, at the deposition, Law Debenture pointed out that

19 you had been able to hire managers in some of your divisions

20 and, specifically, I think with respect to one of your radio

21 stations or the like or the super station, and that -- and

22 suggested that well, that undercuts your testimony.  What's

23 your reaction to that?

24 A     Look, I am not saying that we have not hired new

25 people.  We have been able here and there to get people.  So

1   it's not an absolute.  But it is certainly, with respect to

2   some of the key new areas that we've had, and with respect

3   to our existing employee base with -- that has a very high

4   turn rate, turnover rate, been very difficult to get those

5   new -- that new kind of talent, that new kind of employee on

6   board.  And granting a stay just further, you know, erodes

7   our credibility and the mere viability of Tribune and any of

8   its properties as a going concern and an entity that someone

9   wants to come and spend, you know, part of their career on.

10  Q    Now, is this a harm that can be quantified in your

11  opinion?

12  A    Again, a very difficult thing to quantify.  But it's

13  very difficult to come on to this company when you have

14  opportunities as a prospective employee for others and more

15  and more as we -- as the months pile on, for people to, you

16  know, to hope for an emergence.

17  Q    Does the fact that you can't quantify the harm mean

18  the harm doesn't exist in your mind?

19  A    No.

20  Q    If you go back to Tab 2, the fourth item is Continued

21  Administrative Expense.  Do you see that?

22  A    Yes.

23  Q    And to what does that relate?

24  A    Just the administrative costs associated with this

25  bankruptcy so far.

1    Q    And what have -- what's been the size roughly of those

2    costs to date?

3    A    It's roughly $400 million so far.

4    Q    And on a monthly basis, what's the run rate?

5    A    Well, just doing the math, it's -- you know, we're 43

6    months and counting, 400 million, you know, it's just shy of

7    $10 million a month or, you know, if you want to boil it

8    down to a daily basis, it's a half a million dollars a

9    business day.  I mean to an operating executive like me, I

10   mean that's obscene.

11   Q    Now, once the company emerges from bankruptcy, what is

12   your expectation as to what's going to happen to those

13   costs?

14   A    Oh, they would go significantly down.

15   Q    Now, if, in fact, the stay is extended, what's your

16   expectation as to what is going to happen?

17   A    They'll continue at that clip.

18   Q    Well, haven't you gotten all this work done and you'd

19   just be sitting around?

20   A    I'm sorry?

21   Q    Well, a lot of work has been done in getting the

22   company ready to emerge from bankruptcy, correct?

23   A    Yes.

24   Q    What additional work would have to be done with

25   respect to the emergence issue if, in fact, there's a delay?

1    A    A delay would just keep the various meters that are

2    going just in this room alone and on the dial-in number

3    alone and, you know, the countless other subject matter

4    experts that we have.  I have no reason to believe that that

5    wouldn't just continue on and all to the detriment of the

6    estate.

7    Q    Now, the last item you identify on Exhibit 2 is --

8    reads Settlements Could be Jeopardized.  Do you see that?

9    A    Yes.

10   Q    What did you have in mind there?

11   A    Well, you know, another way of phrasing bullet five

12   would be, you know, in our situation where we are now, a

13   continuance of the status quo would be, you know, sir, time

14   is our enemy.  It is and was a very complicated feat to get

15   all of the Proponents in agreement on the DCL Plan, which

16   was confirmed, many moving parts.  Each of those entities

17   operate in their own world which is dynamic and constantly

18   changing.  It is my fear that a stay of any duration could

19   only enhance the possibility, and over any medium-to-longer

20   period, probability of one of those parties not being

21   willing to hold on anymore and that that could cause a

22   domino effect, cause, you know, all the pieces to fall down,

23   and we find ourselves back at square one.

24   Q    At this juncture has anybody threatened to walk out on

25   the deal?

1   A      No.

2   Q      Does that mean that this isn't a concern?

3   A      No.  I mean you asked me what do I, you know, worry

4   about at night when I, you know, try to go to sleep.  This

5   is one of them.

6   Q      Now, at your deposition and in the papers that they

7   filed, the movants have made the point that, during the

8   course of the bankruptcy, the company's value has gone up;

9   that I think at one point, they assert that between the

10  first Plan that was filed in April 2010 and the current

11  situation, there's been an increase of a billion dollars in

12  value.  Are you generally familiar with those allegations?

13  A      Yes.

14  Q      Do you think that they support the argument that

15  there's no harm in staying in bankruptcy?

16              MS. MONTENEGRO:  Objection, Your Honor.  This is

17  requesting a legal --

18              THE COURT:  Counsel, you need to get closer to

19  the mic when you make your objections.  Would you do that

20  and repeat your objection, please?

21              MS. MONTENEGRO:  Objection.  That requires a

22  legal conclusion.

23              THE COURT:  Any response?

24              MR. BENDERNAGEL:  Your Honor, I don't believe the

25  question I'm asking requires a legal conclusion but I will

1  rephrase the question.

2         THE COURT:  Go ahead.

3  BY MR. BENDERNAGEL:

4  Q     It's true that the value of the company has increased

5  since the first plan was filed in April 2010, is that

6  correct?

7  A     Yes.

8  Q     In your view, does that support the concept that the

9  company has benefited from being in bankruptcy?

10  A     No it does not.

11  Q     And why is that?

12  A     It misses the point.  It misses the fundamental point

13  that this time that we've been in bankruptcy we have been

14  generating operating cash flow, positive, and we have

15  managed to do that with all of our business units.  But it

16  ignores the fact that we have not been paying debt service

17  for that period of time.  So, of course, if you are

18  generating cash flow from the operating side but don't have

19  a mortgage to pay, if you will, of course you're going to

20  accumulate cash and increase the value.  So it misses the

21  point.

22  Q     Well, if you weren't in bankruptcy, would you expect

23  that the performance could be better?

24  A     Absolutely.

25  Q     And I take it if the stay is continued, you're going

1  to continue to be in this situation, is that right?

2  A     Yes.

3  Q     Now, at your deposition, they showed you a copy of the

4  2012 Plan.  Do you recall that?

5  A     Yes, the 2012 Operating Plan.

6  Q     And if you could turn to Tab 4, there's a document

7  entitled Tribune Company Board of Directors 2012 Operating

8  Plan February 9, 2012.  Do you see that?

9  A     Yes.

10        MR. BENDERNAGEL:  And I'd ask, Your Honor, that

11  that be marked as Hartenstein 5 and I'd ask that this

12  document be under seal as well because this is a

13  confidential business record.

14        THE COURT:  All right.

15        (Hartenstein Exhibit 5 marked)

16  BY MR. BENDERNAGEL:

17  Q     Could you just identify this document for the record?

18  A     Yes.  It is what it says.  It's the same date as the

19  earlier document that documented the actual 2011

20  performance.  This was the Operating Plan that the Company's

21  Board of Directors approved for 2012 in early February.

22  Q     Now, how has the Company done this year in comparison

23  to its Plan?

24  A     You know, through the half-way point of the year, we

25  are slightly ahead of plan.

1  Q     And what accounts for the fact that you're somewhat

2  ahead of plan?

3  A     We've had a few one-time events on the revenue side

4  that have helped us out to offset some of the advertising

5  loses or declines in both publishing and broadcasting, and

6  we've had a slight set of improvements on our expense plan,

7  again, year-to-date.  But I would add that the most

8  difficult and often -- not often, always the most difficult

9  portion of the year is the second half and, most

10  specifically, the fourth quarter.  It's when we are most

11  volatile and that's I think true of any set of operating

12  companies that are as heavily dependent as we are on

13  advertising and that goes to the holiday seasons and it's

14  very hard to predict.  So while we are indeed slightly ahead

15  so far, I am still concerned, given the economy and

16  everything that's going on, that we are able to stay plan --

17  on plan for the full year.

18            THE COURT:  And the fact that this is an election

19  year doesn't help you all that much?

20            THE WITNESS:  It -- if -- Your Honor, if you are

21  suggesting that, with political spending that that helps us,

22  it could help us in some areas but, unfortunately, with

23  respect to the Presidential campaigns, we feel that the bulk

24  of the spending will go in the swing States and we just

25  don't have a lot of properties in those markets.  Where we

1    do, perhaps in Florida, we might see an uptake but we also,

2    you know, had baked that into our plan.  You know, quite

3    frankly, political spending so far for the year, what we had

4    predicted, is down from what we had predicted.

5              THE COURT:  Thank you.

6              THE WITNESS:  Okay.

7    BY MR. BENDERNAGEL:

8    Q    If the stay was granted, will that help you or hurt

9    you in meeting your Plan this year?

10   A    Oh, I think there's no question that it would hurt us.

11   Q    And why is that?

12   A    It's, again, a continuation of the uncertainty that we

13   have already been under, and with the momentum that we felt

14   both internally and externally when this Plan was confirmed

15   a month ago, to have a setback, a stay; they won't hear a

16   stay; they'll hear setback, I think would just be terrible

17   for us.

18   Q    Now, in their most recent papers, the movants have

19   said well, we're going to only ask for a six-month stay at

20   this juncture.  What's your reaction to that?

21   A    Six months might as well be six years.  People that we

22   deal with, our clients, they are week-to-week in many cases,

23   month-to-month in others.  Six months is an eternity.  Three

24   months is an eternity.

25   Q    What impact do you think that this would have on the

1  company if, in fact, the stay is granted?

2  A    I think it will harm us in all of the five ways that

3  I've put together on the chart.  It's just a continuation of

4  the same effects on each one of these categories, whether

5  it's employees, current or prospective, strategic

6  opportunities, our brand, and the meter is spinning out of

7  control on the administrative expense.

8  Q    In concluding, I'd like to ask you a few questions

9  about the process that's ongoing with the FCC.  Are you

10  familiar with that process?

11  A    Yes.

12  Q    And what's the basis of your familiarity?

13  A    Our people in Washington, our FCC Counsel and others

14  in the Company, have been preparing the information requests

15  that the FCC, specifically, the Media Bureau, has for the

16  licenses and the waivers required for us to emerge.

17  Q    Are you briefed about the progress with the FCC on a

18  regular basis?

19  A    Yes.

20  Q    And who provides you that information?

21  A    It's a combination of our Chief Restructuring Officer,

22  our General Counsel, and our FCC Counsel.

23  Q    And based on that flow of information, what's your

24  understanding as to what the current status of work on the

25  FCC applications is?

1          MR. ZENSKY:  Objection, Your Honor.  I think this

2     is calling for a hearsay answer if the witness is going to

3     repeat what he's been told by other people not present in

4     Court, and it also appears to be opening attorney/client

5     communications which the debtors I believe previously

6     maintained are privileged.

7          MR. BENDERNAGEL:  Your Honor, I'm asking as the

8     CEO of the Company what his expectation is.  I'm not asking

9     for specific communications.  I think it's an important

10    issue.  I think it -- and, you know, other than calling the

11    FCC; and they wouldn't answer anyway, I think it would be

12    helpful to get his perspective on this issue.

13         MR. ZENSKY:  Your Honor, may I be heard further?

14         THE COURT:  You may.

15         MR. ZENSKY:  I think Mr. Bendernagel acknowledges

16    that it would be based on communications from other parties.

17    What he thinks is the case is not the issue for this Court.

18    What the true facts are with respect to the FCC process may

19    be relevant.  And there was nothing stopping the debtors

20    from calling their FCC Counsel or putting the Declaration

21    from a person with first-hand knowledge of the state of

22    play.  So I maintain the objection to the question and the

23    proposed answer.

24         THE COURT:  Well, Mr. Zensky, you're both right,

25    okay?  These types of hearings, in my experience, you know,

1  are designed to be, if not summary in fashion, they're I

2  guess not unlike other injunction proceedings, and that is

3  extensive evidentiary records typically are not made.

4  Evidence is required here.  I don't disagree with that.  But

5  it would otherwise, as both of you point out, require, you

6  know, the calling of one or more other witnesses and I just

7  don't think that's appropriate under the circumstances.  If

8  this witness has an understanding about what he thinks the

9  process is, you know, we all know, in part, upon which it

10 might be based but we haven't heard it directly.  So it will

11 be weighed accordingly.  I'll allow it.

12            MR. ZENSKY:  Thank you.

13            MR. BENDERNAGEL:  Thank you, Your Honor.

14            THE COURT:  You may answer, sir, if you're able

15 to.  Do you remember the question?

16            THE WITNESS:  Yes.  It is my understanding that,

17 in fact, the Media Bureau and the FCC with its own General

18 Counsel, are essentially at parade rest in the process right

19 now in passing it up to the Commissioners and, in fact, we

20 had been told by them that they are waiting for the outcome

21 of this hearing today, the 17th of August, as to, you know,

22 deciding when they will proceed again on continuing their

23 process.

24 BY MR. BENDERNAGEL:

25 Q     In their papers that they filed the other night, they

1    make the point may attach a letter from the FCC that

2    indicates that the FCC, as of a certain date, started the

3    clock.  Are you familiar with that?

4    A     Yes.

5    Q     And just so the record is clear, what's your

6    understanding of what starting the clock means?

7              MR. ZENSKY:  For the record, Your Honor, the same

8    objection.

9              THE COURT:  Sustained.

10    BY MR. BENDERNAGEL:

11    Q     You've dealt with the FCC in the past in connection

12    with your work with Direct TV, is that correct?

13    A     Yes I have.

14    Q     Are you familiar with, as a result of that work, how

15    the FCC handles these types of issues?

16    A     Yes I am.

17    Q     And do you have an independent understanding as to

18    what the term start the clock means?

19    A     Yes I do.

20              MR. BENDERNAGEL:  Your Honor, I'd ask that he'd

21    provide that based on that experience.

22              THE COURT:  Well, ask the question.

23              MR. BENDERNAGEL:  Okay.

24    BY MR. BENDERNAGEL:

25    Q     Based on your experience, what's your understanding of

1    what start the clock means?

2              MR. ZENSKY:  Your Honor, if it's being elicited

3    in a general sense, which I think is Mr. Bendernagel's

4    question, I don't have an objection.  But if he's asking

5    again for the same sort of specific understanding based on

6    hearsay as to what it means in this case, I do maintain the

7    objection.

8              THE COURT:  It sounded more like in the general

9    sense.  On that basis, I'll allow it.  You may answer, sir.

10             THE WITNESS:  The FCC has this notion of a --

11   it's been called a shot clock after the basketball

12   reference, and if you can ascribe 180 days to a shot clock,

13   they have indeed -- they said they started that again.  But

14   in my experience in the past, that is something that they

15   can start and stop at their discretion and they do that.

16   And while they have started it again, I am concerned that a

17   stay could again cause them to stop that clock again.  That

18   has been my experience.

19             MR. ZENSKY:  I'm going to move the second part of

20   the answer as going beyond the question as it was

21   articulated and the Court understood.

22             THE COURT:  Motion is denied.

23   BY MR. BENDERNAGEL:

24   Q    One last question.  If, in fact, the stay is granted

25   and if, in fact, and I'm asking you to assume this, that the

1  FCC stops the clock and waits, what's your view of what the

2  impact on the company would be?

3  A    Again, it would be a solid piece of evidence to our

4  clients, our advertisers, that a governmental entity has

5  again stopped their process that would lead us to emergence

6  giving them, you know, more concern and not lifting the

7  cloud of uncertainty on us that we're ever going to emerge.

8  Q    In your view would that be a good thing or a bad

9  thing?

10  A    Absolutely a bad thing.

11        MR. BENDERNAGEL:  Your Honor, we don't have

12  anything further.

13        THE COURT:  Mr. Bendernagel, are you the sole

14  inquisitor for the DCL Plan Proponents?

15        MR. BENDERNAGEL:  As far as I know, Your Honor.

16        THE COURT:  All right.  Cross examination.  Mr.

17  Bendernagel, are you moving the admission of any of the

18  exhibits that were marked for identification?

19        MR. BENDERNAGEL:  Yes, Your Honor.  While we're

20  on the break, I'd move all five exhibits into evidence if I

21  could.

22        THE COURT:  Is there any objection?

23        MS. MONTENEGRO:  Objection.

24        MR. ZENSKY:  The Declaration should not come in.

25  The witness was presented live.  His testimony is on the

1  record.  I believe there was actually an offer to allow that

2  the record proceed originally by way of declaration that was

3  implied by the DCLs.  So the Direct Testimony should stand

4  as the record on that point, Your Honor.

5          MR. BENDERNAGEL:  Your Honor, I think that the

6  Declaration should be entered into the record.  I mean, you

7  know, it elaborates on these points and the like.  These

8  fellows have the burden of proof and they haven't put any

9  evidence in.

10          THE COURT:  Well, let me stop you there, Mr.

11 Bendernagel.  I'll say I'm going to sustain the objection.

12 But if, based on that ruling you wish to pursue further

13 Direct, I'll allow it now.

14          MR. BENDERNAGEL:  Sure.  I'd like to pursue

15 further Direct.

16          THE COURT:  All right.

17 BY MR. BENDERNAGEL:

18 Q     Do you have a copy of the Declaration in front of you?

19 Tab 1?

20 A     That's correct.

21 Q     Yes, Exhibit 1.

22 A     Exhibit --

23 Q     Did you -- you know, if you'd turn to the last page of

24 the document.

25 A     Yes.

1  Q      Is this a copy of your signature?

2  A      Yes it is.

3  Q      Did you read the Declaration before you signed it?

4  A      Yes I did.

5  Q      Was it true and correct to the best of your opinion at

6  that point in time?

7  A      Yes it was.

8  Q      Does it reflect your views as to what the harm would

9  be if, in fact, a stay were to be granted?

10 A      Yes it does.

11         MR. BENDERNAGEL:  On that basis, Your Honor, I'd

12 offer the document into evidence.

13         MS. MONTENEGRO:  Same objection.

14         THE COURT:  Sustained.

15         MR. ZENSKY:  Thank you.

16        (Hartenstein Exhibits 2, 3, 4, 5 admitted.)

17         THE COURT:  Cross examination.

18         MS. MONTENEGRO:  Good morning.  Christine

19 Montenegro, on behalf of Law Debenture.  Can I approach the

20 witness with an exhibit?

21         THE COURT:  Yes.  Do we have your exhibits?

22         MS. MONTENEGRO:  No we don't.  No you don't.

23         THE COURT:  Okay.  Do you have one for my law

24 clerk too?

25         MS. MONTENEGRO:  Yes.

1          (Hartenstein Exhibit 6 marked)

2                    CROSS EXAMINATION

3  BY MS. MONTENEGRO:

4  Q     Good morning, Mr. Hartenstein.  And I've handed you

5  what I wish to mark as Hartenstein Exhibit #6 for the

6  record.  Can you please identify this document?

7          MR. BENDERNAGEL:  Your Honor, before we move

8  forward, can we just note for the record that this document

9  is a highly confidential business record?  It's the

10 comparison of how the company was doing against its plan for

11 the first six motions.  I don't have any problem with them

12 using the document, but it ought to be --

13         THE COURT:  Is it a part, Mr. Bendernagel, of

14 either H-2, 3, 4, or 5 which have been admitted?

15         MR. BENDERNAGEL:  No it is not.

16         THE COURT:  Okay.

17         MR. BENDERNAGEL:  It's a document that

18 essentially plays off of Exhibit 5.

19         THE COURT:  Okay.  It's okay with the Court.  Any

20 objection to that?

21         MS. MONTENEGRO:  That's --

22         THE COURT:  All right.  We'll consider it

23 confidential and to remain so.

24 BY MS. MONTENEGRO:

25 Q     Mr. Hartenstein, can you please identify this document

1  for the record?

2  A     This is the end of second quarter 2012 operating

3  results for Tribune Company summary.

4  Q     And this is based on the Company's projections, is

5  that correct?

6  A     Well, it is the results through the second quarter

7  against the 2012 Plan and, as a reference, 2011 actual

8  performance for second quarter and year-to-date for the

9  first six months of '12.

10  Q     Am I correct, according to this document, it shows

11  that the Company's total operating cash flow was above its

12  2012 Plan by 32 percent?

13  A     Which line are you referring to; I'm sorry?

14  Q     Under the Total Operating Performance.

15  A     I'm looking for 32 -- oh, I'm sorry.  I see it now.

16  Yes.

17  Q     And just to reiterate, that's 32 percent above the

18  2012 Plan, is that correct?

19  A     Yes.

20  Q     And it also shows that your -- the Company's 20

21  percent above actual for 2011, compared to 2011?

22  A     Yes.

23  Q     With regards to the Company's total revenues, the

24  Company's total revenues are up three percent compared to

25  the Plan, the 2012 Plan, is that correct?

1   A      Yes.

2   Q      And the total revenues of the Company are also up two

3   percent compared to 2011 actual, is that correct?

4   A      Two percent, yes.

5   Q      You spoke earlier about the Company's valuations that

6   have been performed by Lazard, is that correct?

7   A      Yes.

8   Q      And you had mentioned that there had been an increase

9   in the Company's valuation?

10  A      Yes.

11  Q      And we're talking about the total distributable value,

12  is that correct?

13  A      I'm not clear of that as a defined term but I believe

14  the reference was made to what the value was before or when

15  we entered bankruptcy into when that last Lazard valuation

16  was made.

17          MS. MONTENEGRO:  May I approach the witness with

18  another exhibit, please?

19          THE COURT:  You may.  Thank you.

20          MS. MONTENEGRO:  And I'm handing you the -- I

21  handed you the Supplemental Disclosure for Tribune and I'd

22  like to mark this as Hartenstein #7, Exhibit 7.

23              (Hartenstein Exhibit 7 marked)

24          THE WITNESS:  Yes.

25  BY MS. MONTENEGRO:

1  Q      Have you seen this document before?

2  A      No.

3  Q      Can I turn your attention to page 21 of the document?

4            MR. BENDERNAGEL:  Your Honor, excuse me.  Ours

5  don't have numbers.  Oh, I got the wrong document.  I'm

6  sorry.

7  BY MS. MONTENEGRO:

8  Q      Are you on page 21, sir?

9  A      Yes.

10  Q     And if I could refer your attention to under Item #7,

11  Reorganized Value Update and Updated Financials in the first

12  paragraph.

13  A      Yes.

14  Q      Were you aware that a valuation came out dated as of

15  June 2011 giving a mid-point total distributable value at

16  $7.019 billion for the Company?

17  A      You said June.  I don't see June in here.

18  Q      At the last sentence of the first paragraph.

19  A      Oh, I'm sorry.  Yes, June 2011, 7.091 billion.  Yes.

20  Q      And is that correct, sir?

21  A      Well, again, I didn't perform this analysis but that's

22  what it says and --

23  Q      And then if you could turn to the following page, page

24  22, the first full paragraph, and if you could read that and

25  then I'm going to ask you a question.

1    A    Okay.

2    Q    Is it your understanding that the Company's total

3    distributable value has increased to -- with a mid-point of

4    $7.372 billion for the total distributable value?

5    A    Yes, I see that in the first sentence.

6    Q    And that's an increase between June 30, 2011 and

7    February 16th, 2012, is that correct?

8    A    Yes.

9    Q    And during that time, the Company was in bankruptcy,

10    is that correct?

11    A    Correct.

12    Q    And during that time, the Company wasn't paying

13    interest payments, is that correct?

14    A    Correct.

15    Q    Okay.  So that increase was during a time where there

16    were no interest payments being made, is that correct?

17    A    Correct.

18    Q    Earlier, you spoke about brand erosion.  Are you

19    offering any opinions as to quantification of what number

20    could be associated with brand erosion?

21    A    Specific numbers, no.

22    Q    Okay.  And, in fact, at your deposition -- strike

23    that.  In fact, you don't have any empirical evidence to

24    point to to show what brand erosion has occurred with the

25    Company, is that correct?

1    A      Not empirical, no.

2    Q      Okay.  And, in fact, wouldn't one be able to look at

3    the Company's advertising results to actually see what brand

4    erosion -- what effect it's having on the Company?

5    A      Are you referring back to the first exhibit?

6    Q      Well, why don't you answer my question first and

7    then --

8    A      Re-state the question then, please.

9    Q      My question is if you can actually look at the

10   Company's advertising revenue to actually see what harm they

11   have sustained as a result of brand erosion?

12   A      Well, the advertising revenues are down.

13   Q      And is it true that that would also show what effect

14   brand erosion would have on the Company?  Is that correct?

15   A      Advertising revenues down I think would indicate some

16   brand erosion, yes.

17   Q      And if we turn to your exhibit, I believe it's #4,

18   Hartenstein 4, 3 in your binder.

19   A      Which tab is that; I'm sorry?

20   Q      Tab 3.

21   A      Yes.

22   Q      In the item to the left, in effect, it says that the

23   Company's performing in line with other large metro

24   newspapers, is that correct?

25   A      Yes.

1  Q      And those companies as well are down nine percent, is

2  that correct, with the advertising revenue?

3  A      Some are; some aren't.

4  Q      But according to this document, it's showing that

5  those are, correct?

6  A      When taken in aggregate, yes.

7  Q      And that's the same aggregate it's compared against

8  The Tribune's six largest newspapers, is that correct?

9  A      Yes.

10  Q      And this information was provided to the Board in

11  2012, is that correct?

12  A      Yes.

13  Q      And as a CEO, you try to provide accurate, reliable

14  information to the Board, is that correct?

15  A      Yes, and this was for 2011.  Correct.

16  Q      Also discussed earlier about the fact that there's

17  been some lost opportunities as a result of the bankruptcy,

18  is that correct?

19  A      Yes.

20  Q      And you're not able to quantify a number to those lost

21  opportunities, is that correct?

22  A      Difficult to quantify, yes.

23  Q      And, in fact, you said that there is no documentation

24  that can point to what lost opportunities the Company has

25  not been able to go forward with, is that correct?

1   A     Can't provide any, no.

2   Q     And you've never spoken to the Board about any of

3   these lost opportunities because they weren't ripe yet, is

4   that correct?

5   A     Typically, when there is an opportunity of substance,

6   it would go to our Board but we never got to that point.  We

7   were, with respect to the entities that we were discussing

8   it, it just never got to the point where it was actionable

9   for the Board.

10  Q     And there's no documentation showing those lost

11  opportunities, is that correct?

12  A     Correct.

13          MS. MONTENEGRO:  May I approach the witness?

14          THE COURT:  You may.

15          MS. MONTENEGRO:  I'm handing you what's being

16  marked as Hartenstein #8, and this is the Periodic Report of

17  Debtors Pursuant to Bankruptcy 2015.3 and it's dated June

18  24th, 2012.

19             (Hartenstein Exhibit 8 marked)

20  BY MS. MONTENEGRO:

21  Q     Have you seen this document before, sir?

22  A     No I have not.

23  Q     If I could turn your attention to page two of the

24  document, footnote #3.  Is it correct, sir, that the Company

25  has recently sold Legacy on April 2nd, 2012?

1  A      We sold our interest in Legacy.

2  Q      And that's a correct statement?

3  A      Yes it is.

4  Q      Okay.  And the Company right now is an ESOP S Corp

5  structure, is that correct, sir?

6  A      You're talking about Tribune?

7  Q      Yes.

8  A      Yes.

9  Q      And then when it emerges from bankruptcy it's going to

10 convert to a C Corp, is that correct, sir?

11 A      Yes, that is my understanding.

12 Q      In connection with the sale of Legacy, did the Company

13 get any tax benefits associated with the ESOP S Corp

14 structure?

15 A      I couldn't attest to that.

16 Q      You're not aware of that, sir?

17 A      No.  I would have to, you know, consult with my Chief

18 Financial Officer on that.

19 Q      If you could turn to Tab 4 of your binder, sir, page

20 29, and if you could look at the statement dealing with Due

21 to Tribune's S Corp, can you read that sentence out loud?

22 A      Yes.  Due to Tribune's current S Corp ESOP structure,

23 there's a significant tax benefit to Tribune from selling

24 Legacy prior to converting to a C Corp in emergence from

25 Chapter 11.

1    Q      And is that a correct statement, sir?

2    A      Yes, this refreshes my memory.  Thank you.

3    Q      And the Company provided this to the Board, is that

4    correct, this document?

5    A      Yes, this was part of the Board package.

6    Q      And you used the word significant, is that correct,

7    significant tax savings?

8    A      Yes.

9    Q      Are you aware the Company has also acquired Cast TV as

10   of December 16th, 2010?

11   A      Yes, we have an equity interest in Cast TV.

12   Q      And your company has also been hired by Sun Print in

13   late 2011, early 2012 to print some of -- to print its

14   papers, is that correct, sir?

15   A      Yes.

16   Q      And both of those events, the acquisition of Cast TV

17   and being hired by Sun Print, both of those occurred while

18   you were in bankruptcy, is that correct, sir?

19   A      Yes.

20   Q      Recently, as of April of this year, Tribune acquired a

21   minority stake in Dranatic, is that correct?

22   A      Yes.

23   Q      And is that a digital company?  Does that deal with

24   digital technology, sir?

25   A      It does more for reducing the cost of reporting in

1  local and small markets, hyper local markets.

2  Q    And it involves outsourcing, is that correct, sir?

3  A    It involves having Dranatic, that entity, do the

4  actual reporting and gathering information from publically

5  available documents to generate stories and content.

6  Q    And this has occurred, again, while the Company was in

7  bankruptcy, is that correct?

8  A    Yes.

9  Q    Also mentioned earlier during your Direct, the Chicago

10  Cubs and that the sale occurred during 2009, correct, while

11  the Company was in bankruptcy?

12  A    Yes.

13  Q    Isn't it correct that the Company was trying to sell

14  the Cubs back in April 2007 prior to entering bankruptcy?

15  A    I was not at the Company at that time.  I am told that

16  that was a transaction that was being attempted.

17  Q    And the Company filed for bankruptcy in December 2008,

18  is that correct?

19  A    That is correct.

20  Q    So between the time of April 2007 and December 2008,

21  the Company did not sell the Cubs, is that correct?

22  A    That's correct.

23  Q    I'm just moving over to hiring and retention.  Sir,

24  you joined the company in 2008, is that correct?

25  A    Yes.

1   Q      August 2008?

2   A      Yes.

3   Q      And it was four months prior to the Company filing for

4   bankruptcy, is that correct?

5   A      Yes.

6   Q      And during your time at the Company while the Company

7   was in bankruptcy, you were promoted to CEO, is that

8   correct?

9   A      Yes.

10  Q      You are not offering any opinions as to how to

11  quantify the effect of hiring and retention has on your

12  Company during the time it's in bankruptcy, is that correct?

13  A      Could you --

14  Q      You're not providing any numbers as to be able to

15  quantify the harm the Company is sustaining while being in

16  bankruptcy with respect to hiring and retaining employees,

17  is that correct?

18  A      I am not providing any specifics that involves

19  individuals, people, their private lives, confidentiality.

20  Q      And it's true that the Company has a Management

21  Incentive Plan, is that correct?

22  A      Yes, known as the MIP Plan.

23  Q      And MIP -- the MIP 2012 Plan was recently approved, is

24  that correct?

25  A      Yes, it was approved by this Court.

1  Q      And it provides for a maximum payout of 45 million, is

2  that correct?

3  A      If certain performance, operating cash flow

4  performance, levels are met.  That is the upper extreme of

5  the potential payout.

6  Q      And those payouts are linked to the Company's

7  operating cash flows, is that correct?  It's -- the

8  thresholds are based on the Company's operating cash flow,

9  is that correct?

10 A      Yes.

11 Q      And it's also correct that the Company has hired and

12 promoted numerous employees and senior managers during its

13 time in bankruptcy, is that correct?

14 A      There have been several promotions from within when we

15 have a vacancy and there have been a few outside hires that

16 we have been able to make, nothing close to the numbers that

17 we would like to make and would need to make to be

18 competitive.

19 Q      And is it true that it would be numerous employees and

20 senior managers that have been hired and promoted?  Is that

21 a correct statement?

22 A      We have an employee base of over 11,000 so you'd have

23 to define numerous for me.

24              MS. MONTENEGRO:  Your Honor, may I approach the

25 witness?

1          THE COURT:  You may.

2    BY MS. MONTENEGRO:

3    Q    I'm handing you -- I've handed you your deposition

4    transcript.  If you could turn to page 159.

5    A    Yes.

6          THE COURT:  I'm sorry, this is from Friday,

7    August 10, 2012?

8          MS. MONTENEGRO:  Yes, for the record.  Yes.

9    BY MS. MONTENEGRO:

10   Q    And sir, you were deposed recently on the issues that

11   you are testifying about today, is that correct?

12   A    Yes.

13   Q    I'm going to read the question that was posed to you

14   and the answer.  You were asked:  There are numerous

15   employees and senior level managers that have been hired and

16   promoted during the course of the bankruptcy case?  Answer:

17   That is true.  Do you see that?

18   A    Yes.

19   Q    So is there any reason to disagree with the word

20   numerous today?

21   A    No, I just wanted to put it in context of our 11,000

22   plus employees.

23   Q    And Tribune is hiring competent and qualified

24   employees, is that correct?

25   A    When and where we can.  It's been difficult.

1  Q      Are you familiar with the compensation packages for

2  comparable companies in your industry?

3  A      Yes I am.

4  Q      Are you aware that some of your peers have reduced

5  their compensation packages or even suspended them in these

6  recent periods?

7  A      Some have, but virtually all of them have the

8  aforementioned three legs; base, current year performance

9  incentives, and then long-term incentives for the key senior

10 managers.

11 Q      Are you aware that EW Scripps had to do a salary

12 freeze during 2010-2011?

13 A      Not specifically, no.

14         MS. MONTENEGRO:  Your Honor, may I hand up to the

15 witness an exhibit?

16         THE COURT:  Yes.

17         MS. MONTENEGRO:  And I've handed you Schedule

18 14-A for EW Scripps Company, Your -- sir.

19         THE COURT:  Would you like to mark this for

20 identification, Ms. Montenegro?

21         MS. MONTENEGRO:  Yes.  Hartenstein #8.

22         THE COURT:  I think we have #8 already.  That

23 would be the --

24         MS. MONTENEGRO:  #9.

25         THE COURT:  -- Periodic Report dated as of June

1   24th, 2012.

2           MS. MONTENEGRO:  Okay.  So Exhibit 9.

3           THE COURT:  Thank you.

4           (Hartenstein' Exhibit 9 marked)

5   BY MS. MONTENEGRO:

6   Q    And sir, if I can turn your attention to page 22, if

7   you could look at the number at the bottom of the page.

8           MR. BENDERNAGEL:  What page, Your Honor?

9           MS. MONTENEGRO:  Page 22, and if you could look

10  at the bottom.

11  BY MS. MONTENEGRO:

12  Q    And if you could look under Base Salary, and if you

13  could read the first two sentences out loud in the second

14  full paragraph?

15          MR. BENDERNAGEL:  Your Honor, I'd object.  This

16  document is hearsay.  I don't have a problem with her asking

17  what his knowledge is about the document, but how he's --

18  she's asking to put the statement into the record.  He wants

19  -- she wants -- she needs to establish a foundation for this

20  document.

21          THE COURT:  Well, there may be reasons separately

22  for admissibility of the document and maybe you need to

23  approach it that way.  The objection is sustained.

24          MS. MONTENEGRO:  Your Honor, this is a public

25  record document and we ask that we use it -- he has

1  testified that he's very knowledgeable about comparable

2  companies at his deposition and to -- we wish to use this

3  document to refresh his recollection and pursue his

4  knowledge base about what comparable companies are doing in

5  the industry.

6           MR. BENDERNAGEL:  Your Honor, it is a public

7  record.  That doesn't mean it meets the public records

8  exemption.  This is a document that's put forward by a

9  company.  It's not their financial data that she's looking

10 at; it's just their statements, out of Court, not under

11 oath.  It's hearsay.

12          THE COURT:  Any response?

13          MS. MONTENEGRO:  Can I ask a few questions?

14 Would that alleviate it if I ask --

15          THE COURT:  It might.

16          MS. MONTENEGRO:  Okay.

17 BY MS. MONTENEGRO:

18 Q    Mr. Hartenstein, are you -- what are the comparable

19 companies doing in the industry over the last two years?

20 What has their compensation been like over the last two

21 years?

22 A    I think they're, in terms of total -- you know, total

23 compensation, they have flattened out generally.  But that

24 total compensation is made up of three components and they

25 virtually all, as evidenced by this proxy statement, have --

1  or Scripps certainly has those three legs.  We have two.

2          MS. MONTENEGRO:  Okay.  Your Honor, can I ask him

3  questions about the proxy statement?

4          THE COURT:  Well, ask the question and we'll see

5  if there are objections.

6          MS. MONTENEGRO:  Okay.

7  BY MS. MONTENEGRO:

8  Q    Isn't it true that EW Scripps had a salary freeze in

9  2010-2011 due to the economic conditions?

10 A    Again, I am seeing this for the very first time.  It

11 looks from that first sentence that named executive officers

12 it says did not receive a base salary merit increase.

13 Q    And that's one of the legs that you are referring to

14 that --

15 A    No.

16 Q    You're referring --

17 A    Well, yes, base salary yes.

18 Q    Yes.  Those are one of the three legs, is that

19 correct?

20 A    Correct.

21 Q    Okay.  And EW Scripps wasn't providing that increase

22 for that leg, is that correct?

23 A    That is correct.

24 Q    Are you familiar with the company, Lee Enterprise?

25 A    Somewhat.

1  Q     And what's your familiarity with their compensations

2  package?

3  A     They are a company that I believe just came out of

4  bankruptcy so it's -- they're kind of influx so I'm not

5  current on it.

6  Q     Were you aware of what their compensation package was

7  in 2010 prior to filing for bankruptcy?

8  A     Not specifically.

9  Q     So you weren't aware of the fact that they had

10  suspended their long-term investment options to their

11  employees back in 2010?

12  A     Again, I have no evidence to that but if that is the

13  case, I'm not surprised because they had, you know, I

14  believe some financial difficulties that caused them to go

15  into bankruptcy so I'm quite sure that's, you know, what --

16  that would be one of the steps that they might have taken

17  for that, yes.

18           MS. MONTENEGRO:  Your Honor, may I approach the

19  witness with another exhibit?

20           THE COURT:  You may.  Thank you.

21           MS. MONTENEGRO:  I'm marking Hartenstein Exhibit

22  10, the Schedule 14-A for the Enterprise, Incorporated.

23              (Hartenstein Exhibit 10 marked)

24  BY MS. MONTENEGRO:

25  Q     And if I could turn your attention to page 23, sir,

1  under the section called Grants of Plan Based Awards.

2  A     Yes.

3  Q     And if you could look at the third paragraph?

4  A     Yes.

5  Q     Isn't it true, according to Lee Enterprise's own

6  records, that they're showing that the suspension that

7  occurred with their long-term incentive plans was not just

8  -- it was due to economic conditions affecting not just the

9  company, but the publishing industry and the overall

10  economy, is that correct?

11  A     That's what they say.

12  Q     Okay.  Earlier, you testified about the bankruptcy

13  expenses that will be associated with the Company if a stay

14  is imposed, is that correct?

15  A     Yes.

16  Q     Isn't it true that you haven't quantified the actual

17  expenses that will be associated with the bankruptcy's fees

18  and expenses that will be associated with the stay, is that

19  correct?

20  A     I think a 43-month running trend is a pretty good

21  predictor of what would happen if we had a stay.

22  Q     And are you well-versed on what the actual expenses

23  are on a day-to-day?

24  A     I know what the totals are.  I couldn't tell you how

25  much goes to which law firm and which subject matter.  All I

1  see is the totals.

2  Q      Okay.  And the number that was at your -- strike that.

3  You haven't -- you personally haven't segregated the amounts

4  that would be attributable to a stay versus the amounts that

5  would be attributable just to the Company's ongoing expenses

6  once the Company emerges from bankruptcy?  You haven't done

7  that comparison, is that correct?

8  A      Well, I think you changed the question.

9  Q      Okay.

10 A      Post-emergence or --

11 Q      I want to know --

12 A      -- in bankruptcy pre-emergence in a continued stay?

13 Q      Well, have you looked at what the expenses would be

14 when the Company emerges from bankruptcy, what ongoing

15 expenses they would have?

16 A      Yes, and as I think I stated before, it would be

17 considerably less once we emerge from that.

18 Q      And do you have a number that you can put to that when

19 you say less?  Have you actually calculated that?

20 A      I personally have not, no.

21 Q      And who would do that calculation for you?

22 A      I think it would be a combination of, because he's

23 been involved in it up to date -- or they have been involved

24 in it up to date, of our Chief Restructuring Officer, our

25 Chief Legal Counsel, and our Chief Financial Officer.

1  Q      Are you also relying on Lazard to help with

2  evaluations -- with the amount of what the fees would be?

3  A      Lazard is not, to the best of my knowledge, the one or

4  the entity calculating the professional fees.

5              THE COURT:  I look at that situation, Mr.

6  Hartenstein, sometimes as someone in your position paying

7  for a party at which they have no fun.

8              THE WITNESS:  Well said, Your Honor.

9  BY MS. MONTENEGRO:

10  Q      And you haven't quantified what the bankruptcy fees

11  and expenses would be associated with an imposition of a

12  stay have you?

13  A      No, but again, you know, a continuation -- a stay is

14  status quo and I have seen no evidence whatsoever from any

15  of my people that it would be any different than the run

16  rate we're going at.

17  Q      And have you done any analysis to see how much money

18  would be expended with respect to the appeal and legal fees

19  associated just with the appeal?

20  A      You know, that could only go up from the activity that

21  we've had of late if there's an appeal involved.

22  Q      But you haven't yourself done any quantification of

23  that, is that correct, of what those fees or expenses would

24  be?

25  A      No.

1  Q      And if you could turn to, in your binder, to Exhibit

2  1, which is your Declaration.

3  A      Yes.

4  Q      Page seven.

5  A      Yes.

6  Q      If you can look actually at page six, paragraph 16.

7  A      Yes.

8  Q      Isn't it true that your understanding of what the

9  actual fees would be going forward, for the two years going

10 forward, if there was a stay, that information was supplied

11 to you by Mr. Kurtz, is that correct?

12 A      Yes, in his Declaration.

13 Q      And isn't it true that it's not something you've

14 quantified, is that correct?

15 A      That is correct, I did not quantify that.

16 Q      Another harm that you had mentioned today was the DCL

17 Plan and concerns that the Proponents might withdraw

18 support, is that correct?

19 A      Yes.

20 Q      And you used the word fear, possibility, domino

21 effect, is that correct?

22 A      Yes.

23 Q      But as you sit here today, no one has withdrawn

24 support, is that correct?

25 A      Yes, I believe I answered that way.  Yes.

1  Q     Are you aware that the Confirmation Plan actually has

2  a provision that prevents the parties from withdrawing

3  support?

4  A     Again, not specifically, but, you know, over for what

5  period of time I would ask?  I don't know.

6  Q     Are you aware that there's a provision that they had

7  to withdraw support before -- by July 23rd, 2012, and if that

8  time had passed, they can't withdraw support?  Are you aware

9  of that?

10  A     Not specifically.

11  Q     And you haven't quantified the amount of harm that

12  would be associated with the speculative thought that DCL

13  Plan Proponents might breach an agreement and withdraw

14  support?

15  A     No.  That's not so much one that a dollar amount can

16  be quantified.  It's just a fear of it coming unraveled and

17  we have to start all over again.

18  Q     And you haven't put a dollar amount to this fear, is

19  that correct?

20  A     That is correct.

21  Q     And the last thing you talked about was the FCC

22  process, is that correct?

23  A     Yes.

24  Q     And you don't know exactly when the FCC will or won't

25  give the approval is that correct?

1  A      That's correct.

2  Q      And you can't quantify what type of harm is associated

3  with the FCC withholding approval, is that correct?

4  A      Well, we can't emerge if they don't approve so that

5  goes to more time in and a continuation of all of the other

6  concerns that I indicated.

7           MS. MONTENEGRO:  Okay.  I have nothing further,

8  Your Honor.

9           THE COURT:  Okay.  Is there other cross-

10  examination?  Okay.  Mr. Zensky, I take it the answer is

11  yes?

12           MR. ZENSKY:  Yes, Your Honor.

13                     (Laughter)

14           THE COURT:  About how much time do you think you

15  will need?

16           MR. ZENSKY:  Two minutes, Your Honor, just a

17  couple questions.

18           THE COURT:  Well, there's a tantalizing thought.

19                     (Laughter)

20           UNKNOWN:  It's quite a challenge.

21           MR. ZENSKY:  Two minutes in questions.  I can't

22  vouch for the answers.

23                     (Laughter)

24                  CROSS EXAMINATION

25  BY MR. ZENSKY:

1  Q      Good morning, Mr. Hartenstein.  We've met before.

2  David Zensky, Akin, Gump, Strauss, Hauer & Feld, for

3  Aurelius Capital Management.  I think a few moments ago, you

4  testified that you don't know when or whether the FCC is

5  going to issue approval in this case?

6  A      That's correct.

7  Q      Okay.  In the absence of a stay, isn't it correct to

8  say that the Company will continue to incur administrative

9  expenses at least until the point in time FCC approval is

10 obtained, if ever?

11 A      Yes.

12 Q      Okay.  So those expenses are there whether or not the

13 Court enters a stay?  You're paying for the party at least

14 until FCC approval is obtained?

15 A      Yes.

16 Q      Correct?

17 A      Yes.

18 Q      Okay.  You used a blended average I think of 10

19 million a month in Direct Testimony about the administrative

20 expenses associated with this case?

21 A      I said almost 10.

22 Q      Okay.  And would it be fair to say that included

23 periods during which the Creditors' Committee was doing its

24 investigation into the transactions at issue in the leverage

25 buyout?

1    A      Yes.

2    Q      And that would include the period of the first

3    confirmation hearing in 2011 and all the discovery that led

4    up to it, correct?

5    A      Correct.

6    Q      And it would include the recent period where the

7    parties were disputing the allocation issues?

8    A      Correct.

9    Q      Okay.  Is it your understanding that there is no stay

10   and the Company exits, that it doesn't have to pay lawyers

11   to defend the appeal?

12   A      Repeat the question.

13   Q      Sure.  If no stay is granted and the Company exits

14   from bankruptcy and the appeal proceeds, you plan to defend

15   against the appeal I take it?

16   A      Yes.

17   Q      Okay.  Are your lawyers going to work for free or are

18   you going to pay them?

19   A      I have never yet met a lawyer that would work for

20   free.

21   Q      Okay.  So is it fair to say those expenses are going

22   to occur whether there's a stay or not?

23   A      I think some of them will.

24              MR. ZENSKY:  Okay.  That's all I had, Your Honor.

25              THE COURT:  Thank you.  Any other cross-

1    examination?

2                        (No audible response)

3              THE COURT:  Re-Direct.

4              MR. BENDERNAGEL:  I'll be quick.

5                        RE-DIRECT EXAMINATION

6    BY MR. BENDERNAGEL:

7    Q    Picking up on what Mr. Zensky said, if, in fact, you

8    emerge and the appeal goes forward, would you expect to be

9    paying for the costs of multiple attorneys to work on the

10   appeal from multiple firms or would you expect that it would

11   be one firm?

12   A    One firm.

13   Q    Ms. Montenegro asked you some questions about the

14   performance of Scripps and Lee Enterprises.  Do you recall

15   that?

16   A    Yes.

17   Q    Do the fact that they may be having difficulty or may

18   have made adjustments make it easier for you to recruit?

19   A    No.

20   Q    Does it change in any way your opinion as to what the

21   impact of bankruptcy has been on your abilities in that

22   regard?

23   A    No sir.

24   Q    She asked you a series of questions about certain

25   transactions you've done, Legacy and some other deal, and

1   does that, the fact that you've been able to do some

2   transactions, change your opinion with respect to the impact

3   of bankruptcy on your ability to do deals generally?

4   A    We have done some deals.  She did indicate those but

5   there's a -- there is a hole over us in terms of doing deals

6   in general.  The Legacy transaction was one of -- we had a

7   minority interest and, you know, the Board decided to make

8   the sale and exit and we went along with it that it's, if

9   you will, an exit strategy for us.

10  Q    Now, she asked you some questions about retaining

11  employees and the like.  Are there positions you haven't

12  been able to fill recently?

13  A    Yes.

14  Q    Could you give an example of that?

15  A    Well, I believe I gave an example in the deposition.

16  It was for a Chief Technology Officer who left early in the

17  year.  We have not been able to find a permanent replacement

18  and we have brought on a couple of consultants to, you know,

19  in a team approach, you know, fill that gap.

20  Q    Just so everybody's on the same page, what's a Chief

21  Technology Officer?

22  A    A person that is responsible for all the technology,

23  the information systems, the -- everything from a desktop

24  computer environment to the server farms that we need to put

25  our 23 television stations on the air everyday and produce

1  our numerous websites.  Over 700 people of the 11,000 people

2  are in that technology organization.

3  Q    How would you characterize the importance of that

4  position to the Company?

5  A    It's our lifeblood.  It's a direct report to me.  And

6  it is a very competitive area of expertise and we are -- and

7  have not been able to find a permanent replacement for that

8  for the reasons I mentioned.  We are deficient in terms of a

9  total compensation package.

10 Q    Now, there was some talk about the Cubs transaction.

11 Do you recall that?

12 A    Yes.

13 Q    Were the Cubs put into bankruptcy in December 2008?

14 A    I believe we had to put the entity that we had

15 ownership of into -- and I wasn't there when it was -- I

16 wasn't central and I did not have my CEO role at that time.

17 I was merely running the Los Angeles Times media group at

18 that time.  But my understanding was that we had to, in a

19 very complicated maneuver, actually put that entity for a

20 24-hour period or less, into bankruptcy and then out in

21 order to facilitate the transaction.

22 Q    Now, would that have been necessary or even possible

23 if you were outside of bankruptcy?

24 A    No.

25 Q    There was a question about Exhibit 7, which is the

1  Disclosure Statement.  I'm sorry.  Do you have Exhibit 7 in

2  front of you?  It's -- I have it.  It looks like -- I'm lost

3  on the numbers here.  I'm sorry.

4         THE COURT:  You may help him with this, Mr.

5  Bendernagel, if you'd like.

6  BY MR. BENDERNAGEL:

7  Q     Okay.  I have it.  Do you have page 21 -- 22 in front

8  of you?

9  A     Which one, 22?

10 Q     Yes.

11 A     Yes.

12 Q     And on page 22, the first full paragraph starts Based

13 on that update.  Do you see that?

14 A     Yes.

15 Q     And she asked you some questions about this, including

16 the fact that there had been a change between the one

17 valuation she talked about and the other, is that correct?

18 A     Yes.

19 Q     Can you read the sentence that says -- the second

20 sentence of that paragraph into the record?

21 A     As discussed in Exhibit C?  That one?

22 Q     That's the one.

23 A     As discussed in Exhibit C, the overall increase in

24 value for the Bankruptcy Court approved valuation of $7.019

25 billion is principally attributable to the debtors'

1    continuing accrual of distributable cash.

2    Q     And that increase in distributable cash, as I

3    understand your testimony, is because you aren't paying your

4    creditors, right?

5    A     Correct.

6    Q     One other set of questions; then I'll stop.  Do you

7    have paragraph -- Exhibit 6, which is the one-page

8    comparison of how the Company is doing against its Plan?

9    A     Results of Operations for Second Quarter?

10   Q     Yes.

11   A     Yes.

12   Q     Can you read into the record the box that's up at the

13   top of the page that starts with the word excludes?

14   A     Excludes special items, non-operating items, and

15   reorganization costs.

16   Q     So this document isn't reporting the drag of this

17   proceeding on the Company, correct?

18   A     Correct.

19         MR. BENDERNAGEL:  I don't have anything further,

20   Your Honor.

21         THE COURT:  Any Re-Cross?

22         MR. ZENSKY:  No.

23         MS. MONTENEGRO:  No, Your Honor.  I just want to

24   make a request to move our documents into evidence, Your

25   Honor.

1           THE COURT:  Okay.  Let's let the witness go

2  first.  Mr. Hartenstein, you may be excused.  I wish you the

3  best of luck with your situation.

4           THE WITNESS:  Thank you, Your Honor.

5           THE COURT:  Okay.  Ms. Montenegro, would you like

6  to move the admission of some exhibits?

7           MS. MONTENEGRO:  Yes.  We would move all of our

8  exhibits in.

9           THE COURT:  Okay.  Can you just state what they

10  are for the record?

11           MS. MONTENEGRO:  Hartenstein 6 is Tribune's

12  Results of Operations for September -- for the Second

13  Quarter of 2012.  Hartenstein 7 is the Supplemental

14  Disclosure to the Fourth Amended Plan.  Hartenstein 8 is the

15  Periodic Report for the Company.  Hartenstein 9 is the EW

16  Scripps Schedule 14-A FCC filing.  And Hartenstein 10 is Lee

17  Enterprises Schedule 14-A FCC filing.

18           MR. BENDERNAGEL:  Your Honor, we object to

19  Exhibits 9 and 10.  We don't object to 6, 7, and 8.  Our

20  objections on 9 and 10 are they are hearsay and there's been

21  no witness put forward.  I don't know that it's necessary

22  for those documents to be in the record but, you know, they

23  are hearsay.

24           THE COURT:  Any response?

25           MS. MONTENEGRO:  That's fine.  We're okay with

1  that.

2          THE COURT:  All right.  So H-6, 7, and 8 are

3  admitted without objection.  H-8 and 9 are withdrawn.

4          (Exhibits Hartensstein 6, 7, and 8 admitted.)

5          THE COURT:  Okay.

6          MR. BENDERNAGEL:  #9 and 10 are withdrawn.

7          THE COURT:  I'm sorry; #9 and 10 are withdrawn.

8  All right.  Mr. Bendernagel, give me some time estimate on

9  the next witness.

10          MR. BENDERNAGEL:  I think his Direct will take a

11  little longer, at probably about an hour so, you know, and

12  then I think his Cross will take longer too and certainly,

13  his deposition did.

14          THE COURT:  Okay.  So let's just play through

15  some timeframes just for the moment.  Let's say we recess

16  now and reconvene at 1:00, and let's just say for fun that

17  Direct and Cross takes a couple hours.  That's 3:00.  How

18  much time do the parties anticipate -- okay, let me take a

19  step back.  I assume that those are all the witnesses that

20  we'll hear today or am I incorrect about that?

21          MR. BENDERNAGEL:  No, you're correct about that.

22          THE COURT:  Okay.  How much time then do the

23  parties expect to consume in the way of argument following

24  the witness's testimony?

25          MR. BENDERNAGEL:  It might be better to have

1   others address that issue given the fact that others are

2   doing the argument.

3        THE COURT:  Well, let's hear from the movants

4   first.

5        MR. ZENSKY:  For the record, David Zensky, Akin,

6   Gump, Strauss, Hauer & Feld.  Given Your Honor's comments at

7   the outset of the hearing, which -- strike that.  Given Your

8   Honor's comments at the outset of the hearing, I don't

9   anticipate that the movants on the stay would require more

10  than 15 to 20 minutes of argument on the motion itself,

11  subject to response after hearing what the opponents have to

12  say.

13       THE COURT:  Okay.  What about on certification?

14       MR. ROSNER:  Again, based on Your Honor's

15  comments, I think certification could probably be done in

16  between 20 and 30 minutes.

17       THE COURT:  Okay.

18       MR. ROSNER:  On this side.

19       MR. CARICKHOFF:  For the record, David

20  Carickhoff, on behalf of EGI-TRB.  Your Honor, we think it

21  would take probably less than five minutes for the

22  certification issues.

23       THE COURT:  Okay.  Let me hear from the DCLs

24  on --

25       MR. BENNETT:  Your Honor, I am primarily

1  responsible for the stay arguments and I think 20 to 25

2  minutes will do the job.

3          THE COURT:  And certification?

4          MR. LEMAY:  Your Honor, David LeMay from

5  Chadbourne & Parke, for the Creditors' Committee.  I have on

6  the stay piece but a few sentences which won't take more

7  than a few minutes.  I am primarily responsible for the

8  certification and, although I think I could do it in less

9  than the time that Mr. Rosner budgeted, I don't think it

10  would be dramatically less.  So I think he said 20 to 30

11  minutes; 15 to 25 minutes.

12          MR. BENDERNAGEL:  The debtor may have some

13  comments but we'll keep them brief, Your Honor.

14          THE COURT:  Okay.  Well --

15          MR. BENDERNAGEL:  Mr. Zensky thinks that we

16  should start the witness, and I don't have a problem with

17  that, but whether -- at some point, we're going to have to

18  break for lunch so.

19          MR. ZENSKY:  If it's convenient for the Court and

20  it's in the interest in making sure we conclude.

21          MR. BENDERNAGEL:  I actually think it would be

22  better breaking and taking a shorter lunch because if we've

23  been going two hours, people are going to want to go to the

24  bathroom so we're going to take a break and then we're going

25  to take another break?  Why not just take one break and then

1  we come back and go through that testimony?

2           THE COURT:  All right.

3           MR. KORPUS:  Your Honor, if I may address the

4  Court?  Sheron Korpus --

5           THE COURT:  You may.

6           MR. KORPUS:  -- of Kasowitz Benson.  We did make

7  an offer to the debtors that they can just submit a

8  Declaration of Mr. Kurtz as his Direct Testimony.  Given

9  that they tried to submit the Declaration of Mr. Hartenstein

10  as an exhibit, I'm just offering that to the Court as a way

11  to shorten the proceeding today.  If the Declaration goes

12  in, you know, the Cross would probably be about -- I don't

13  make too many promises, but maybe half an hour to 45 minutes

14  on the debtor.

15           THE COURT:  All right.  Well, Counsel can confer

16  about that over the break.  I am going to break now.  We'll

17  reconvene at 12:45.  I do want and expect that we will

18  conclude today.  It is Friday after all.  I -- well, before

19  I took the bench, and nothing's yet changed my view, I

20  tended to doubt that I would make a ruling from the bench

21  today.  That having been said, I hope to do two things.  One

22  is at least be in a position to give a preliminary view

23  after having heard the evidence and the arguments about

24  where I would be headed.  But secondly, to at least have the

25  weekend to think over a final decision to be rendered early

1  next week either by telephone or, depending on where I go

2  with certification, a short writing.  That's my goal anyway.

3          MR. BENDERNAGEL:  That's fine, Your Honor.  We'll

4  be back at 12:45.

5          THE COURT:  The Court will stand in recess.

6          (Recess from 11:56 a.m. to 12:52 p.m.)

7          THE CLERK:  All rise.

8          MR. BENDERNAGEL:  May I proceed, Your Honor?

9          THE COURT:  Carry on.

10          MR. BENDERNAGEL:  Jim Bendernagel, for the

11  debtors.  At this time, we'd call David Kurtz as our next

12  witness.

13          DAVID KURTZ, DEBTORS' WITNESS, SWORN

14          MR. BENDERNAGEL:  Your Honor, may I approach with

15  the binders?

16          THE COURT:  You may.  Thank you.

17          THE WITNESS:  Thank you.

18                  DIRECT EXAMINATION

19  BY MR. BENDERNAGEL:

20  Q     Mr. Kurtz, by whom are you currently employed?

21  A     Lazard.

22  Q     And what is your position at Lazard?

23  A     Vice-Chairman of Investment Banking and head of the

24  Global Restructuring Group.

25  Q     And what are your responsibilities in that position?

1  A    To lead and coordinate Lazard's global restructuring

2  effort.

3  Q    And how long have you worked at Lazard?

4  A    Ten plus years.

5  Q    And could you briefly summarize your work experience

6  prior to joining Lazard?

7  A    Prior to joining Lazard, I practiced law, specializing

8  in the field of bankruptcy and restructuring for

9  approximately 22 years.

10  Q    And since you joined Lazard, has your work focused on

11  bankruptcy and restructuring?

12  A    Yes.

13  Q    So all tolled, how many years of experience do you

14  have in this area?

15  A    Next month it will be 33 years.

16  Q    And approximately how many different bankruptcies have

17  you worked on during that time period?

18  A    I've never actually tallied it up but I would estimate

19  it to be somewhere around 150.

20  Q    Now, could you generally describe the types of work

21  that you, in your career, have worked on in connection with

22  bankruptcy and restructuring?

23  A    Almost all of those situations involved corporate

24  Chapter 11 restructurings.  I would estimate that

25  approximately 90 percent of those assignments were on the

1  debtors side of the ledger; 10 percent representing

2  creditors.

3  Q     Have you worked on issues where you were required to

4  assess the impacts of bankruptcy on the debtor and its

5  operations and finances?

6  A     That issue has -- that issue typically arises in

7  almost every situation.

8  Q     Have you been -- had the occasion during your career

9  to look at the impact of bankruptcy on the various creditor

10  groups?

11  A     Yes.

12  Q     And during your career, have you had the opportunity

13  to look at the specific issues that are before the Court

14  today in connection with a stay emergence and the sizing of

15  a bond?

16  A     Yes, both as a lawyer and as a financial advisor.

17  Q     Could you provide a little more detail of what you've

18  done or you can recall having done in that area?

19  A     Sure.  Within the last couple of years, I assisted the

20  Charter Communication debtors who were, at that time,

21  involved in bankruptcy cases pending before the Bankruptcy

22  Court in the Southern District of New York.  One of the

23  issues that we confronted in that situation, and that I was

24  involved in, was identical to that which is before the Court

25  this afternoon and that is whether a stay should be granted

1  pending an appeal of an Order confirming a Plan of

2  Reorganization.  In that situation, I submitted two

3  Declarations in support of the company's position; one

4  before the Bankruptcy Court and then a separate Declaration

5  in front of the District Court before whom the Appellants

6  brought an appeal of the Bankruptcy Court's decision not to

7  grant the stay.

8  Q    And what position were you advocating, for the stay or

9  against the stay?

10 A    I was, in that situation, I was advocating the

11 position that if there were to be a stay, a substantial bond

12 should be required.

13 Q    Now, you indicated that you have had other experience

14 in this area?

15 A    Yes.

16 Q    Could you elaborate on that?

17 A    I also confronted the issue as a lawyer.

18 Q    Are you familiar with the Black Scholes Valuation

19 Model?

20 A    Yes.

21 Q    Just so everybody's on the same page, could you

22 explain what the Black Scholes Valuation Model is on a

23 general basis?

24 A    The Black Scholes Model is a generally accepted

25 methodology for calculating the value of options.

1    Q    Now, during your career in the bankruptcy and

2    restructuring area, have you had occasion to work with Black

3    Scholes?

4    A    Yes.

5    Q    And in what context would you work with Black Scholes?

6    A    I've worked with Black Scholes many times.  I have

7    worked with Black Scholes many times, both as a lawyer, as

8    well as a financial advisor in connection with establishing

9    the value of securities that were issued under Plans of

10   Reorganization, might be issued under Plans of

11   Reorganization, utilizing the Black Scholes methodology to

12   assist in negotiating potential frameworks around which a

13   Plan of Reorganization may be structured.

14           MR. BENDERNAGEL:  Your Honor, at this time, I'd

15   like to offer Mr. Kurtz as an expert in bankruptcy and

16   restructuring issues, including issues relating to

17   emergence, as well as the need for calculation of a bond.

18           THE COURT:  And is this solely in the nature of

19   his role as a financial advisor or as an attorney, or both?

20           MR. BENDERNAGEL:  I think it's as a financial

21   advisor, Your Honor.

22           MR. KORPUS:  Sheron Korpus, Kasowitz, Benson,

23   Torres & Friedman, for Law Debenture.  Your Honor, it was

24   not our understanding that Mr. Kurtz was testifying as an

25   expert witness.  There was no expert report that was served.

1   We understood that he's testifying as to the harm that he

2   calculated for the Company.  He is certainly qualified as a

3   financial advisor, but I don't really believe he should be

4   qualified to give opinions.

5           THE COURT:  And -- but what's the legal basis for

6   your objection?

7           MR. KORPUS:  The basis for objection is that he

8   should not be allowed to give opinion testimonies as an

9   expert witness having -- not having served an expert report.

10          THE COURT:  Okay.  Would you agree that this is a

11  contested matter within the meaning of the Bankruptcy Rules?

12          MR. KORPUS:  Yes, Your Honor.

13          THE COURT:  Okay.  Rule 9014 provides that that

14  requirement to Rule 26 does not apply in a contested matter

15  unless the Court so orders.  I don't recall having ordered

16  that here.

17          MR. BENDERNAGEL:  You did not, Your Honor.

18          THE COURT:  So, on that basis, the objection is

19  overruled.

20          MR. BENDERNAGEL:  Can I proceed?

21          THE COURT:  You may.

22          MR. BENDERNAGEL:  Thank you, Your Honor.

23  BY MR. BENDERNAGEL:

24  Q     What is your -- the purpose of your testimony today?

25  A     To provide testimony in connection with assisting the

1  Court in determining the appropriate amount of the Appellant

2  bond to be required of the Appellants in the event that the

3  Court is inclined to grant the stay.

4  Q    Could you describe the basic approach you took in

5  trying to do that type of a calculation?

6  A    What we tried to do was [indiscernible] from a

7  financial point of view the elements of potential harm that

8  could be suffered by those who are not prosecuting the

9  appeal during the pendency of a stay.

10  Q    Now, were you attempting to calculate actual harm?

11  A    No.

12  Q    Why wouldn't you be looking at actual?

13  A    Well, it's very difficult to predict the future with

14  quantitative certainty.  And so what we attempted to do here

15  was to establish what, in effect, would turn out to be a

16  maximum pot of recovery that would be available to protect

17  the interests of those were are not on the side of the

18  appeal in the event that after the pending appeal were to

19  conclude, assuming that the Appellees would prevail, the

20  Judge were to make a determination as to whether a harm was

21  suffered and to determine the amount of their harm, there

22  would be a source of recovery available to compensate those

23  who were damaged by virtue of the appeal and the stay.

24  Q    Can you describe your overall conclusions with respect

25  to the issue of how much of a bond is appropriate here?

1  A     My conclusion is that a substantial bond should be

2  posted.

3  Q     Now, I'd like you to take a look at Tab 1 of the

4  binder.  You'll see that there's a Declaration of David S.

5  Kurtz.  Do you see that?

6  A     Yes.

7              MR. BENDERNAGEL:  And I'd like that marked, Your

8  Honor, as Kurtz Exhibit 1 for identification.

9                    (Kurtz Exhibit 1 marked)

10 BY MR. BENDERNAGEL:

11 Q     Do you recognize this document, Mr. Kurtz?

12 A     Yes.

13 Q     What is this document?

14 A     This document is a Declaration that bears my signature

15 that was prepared in support of the testimony that I am

16 giving this afternoon.

17 Q     And if you could take a look at Tab 2, there's a chart

18 entitled Harms that Could Occur if the Bankruptcy is Stayed

19 for Two Years.  Do you see that?

20 A     Yes.

21              MR. BENDERNAGEL:  I'd ask that that document be

22 marked as Kurtz Exhibit 2 for identification.

23                    (Kurtz Exhibit 2 marked)

24 BY MR. BENDERNAGEL:

25 Q     And I'd ask you simply to explain to the Court what

1  this document is.

2  A     Essentially, this document attempts to establish with

3  respect to essentially three different categories of

4  potential loss, the amount of bond that should be required

5  as protection against each category, each of the three

6  categories of loss.

7  Q     Now, the first category is entitled Further

8  Administrative Costs.  Do you see that?

9  A     Yes.

10 Q     What's encompassed within that category, if you will?

11 A     Those would be, as the caption indicates,

12 administrative costs that would be incurred by the Company

13 or that would not be incurred in the event that the stay

14 were not granted and the Company was able to emerge from

15 Chapter 11.

16 Q     Now, do you have an --

17 A     Maybe the easiest way to think about it would be the

18 incremental costs, administrative costs, of staying in

19 Chapter 11.

20 Q     Now, you have a number of 113 million.  Do you see

21 that?

22 A     I do.

23 Q     Can you explain to the Court how that $113 million

24 number was derived?

25 A     That number, essentially, represents [indiscernible]

1  that could be incurred over a [indiscernible] assumed

2  appropriate.

3  Q    And what did you -- I take it -- did you calculate an

4  estimate based on a monthly basis and then multiply by two

5  years or how did you do the calculation?

6  A    Yes, exactly.

7         MR. ZENSKY:  Objection.  Leading, Your Honor.

8         MR. BENDERNAGEL:  All right.  Let me ask -- I'll

9  rephrase it.

10 BY MR. BENDERNAGEL:

11 Q    Explain what the components of the calculation are

12 that come to 113 million.

13 A    Sure.  [indiscernible] information.  It's 4.7 million

14 times 24 equals approximately 113 million; 4.7 million being

15 an estimate of the potential administrative costs to be

16 incurred by the Company during the 24 months of an assumed

17 stay [indiscernible] in the event of an appeal

18 Q    What did you base the 4.7 million per month estimate

19 on?

20 A    [indiscernible] average of the administrative expenses

21 incurred during the lowest point of the bankruptcy case,

22 which happened to be the period between August and October

23 of 2011.

24 Q    And that was before the Judge -- it was after the

25 confirmation hearing had ended and before the Judge rendered

1  his first confirmation decision, is that correct?

2  A    Exactly, and so my assumption was that that was a

3  period of relative quiet in the case and I think that was a

4  better way to think about the question than to merely take

5  the $10 million average that the Company has incurred during

6  the pendency of the Chapter 11 case.  In order to err on the

7  side of being conservative for this purpose, I used the

8  three-month average of the low.

9  Q    Now, based on your experience, do you believe that's a

10 reasonable approach?

11 A    I do believe it's a reasonable approach.

12 Q    And now, in their reply papers, the Trustees suggest

13 that whatever additional amounts might be incurred; and you

14 heard this this morning as well, that those amounts would be

15 incurred anyway.  Do you recall that testimony?

16 A    Yes.

17 Q    What's your reaction to that based on your experience?

18 A    False.

19 Q    And why do you say that?

20 A    Two reasons.  [indiscernible] post-emergence, nor does

21 the [indiscernible] by the Unsecured Creditors' Committee.

22 The other is the Group Professionals that is representing

23 the [indiscernible] Steering Committee.  And if you look

24 back on the same month period that I think was the time for

25 purposes of establishing the $4.7 million number, and if you

1   were to break out the amount of costs attributable to the

2   UCC, as well as the Professionals advising the senior

3   lenders, it would be approximately $2 million.  I believe

4   that that expense would be avoided and down to zero upon

5   emergence from Chapter 11.

6   Q     Now, if you'd take a look at Tab 3, there's a chart

7   entitled Incremental Costs During the Stay.  Do you see

8   that?

9   A     Yes.

10          MR. BENDERNAGEL:  And I'd ask, Your Honor, that

11   this be marked as Exhibit -- Kurtz Exhibit 3 for

12   identification.

13                  (Kurtz Exhibit 3 marked)

14   BY MR. BENDERNAGEL:

15   Q     Could you explain to the Court what this document

16   purports to show?

17   A     Well, this document is intended to assist in

18   articulating the other categories of expenses that would be

19   either significantly reduced or eliminated if the Company

20   were to emerge from Chapter 11.  So we've already covered

21   the UCC Professionals.  I've already talked about the

22   Professionals for the senior lenders.  But there are other

23   expenses that would be eliminated if the Company were to

24   emerge from Chapter 11, and that's what I try to capture on

25   this page.

1  Q    Could you just walk down the list and explain what

2  each of these categories are briefly?

3  A    Okay.  Category number one, Non-Ordinary Course

4  Transactions.  As we all know, any transaction outside the

5  ordinary course of business that a company wishes to engage

6  in must be approved by the Bankruptcy Court.  And so, during

7  the pendency of a stay, the company will be required to

8  incur the expense associated with preparing the moving

9  papers, to seek that approval from the Bankruptcy Court, to

10 attend Court hearings, to deal with the various

11 Professionals, to pay for the Professionals for the UCC, as

12 well as the senior lenders to attend Court proceedings, and

13 that is an incremental cost that clearly would be avoided in

14 the event that the company were able to emerge from Chapter

15 11.

16 Q    And the second item is entitled UCC Senior Lender

17 Professionals (Reporting/Monitoring Costs).

18 A    Right.

19 Q    Could you explain that?

20 A    Yes.  Not unlike many cases, the costs incurred by the

21 Professionals representing the UCC, as well as the senior

22 lenders, is not limited to matters directly associated with

23 proceedings that appear -- excuse me, proceedings that occur

24 before this Court.  The way they are involved, there is a

25 monitoring function and there is a -- frankly, a custom that

1    is developed in this case similar to other situations

2    whereby there is a closely coordinated relationship between

3    the company and these creditor constituencies with respect

4    to significant decisions, certainly those matters that are

5    outside the ordinary course of business.  And so, in

6    addition to the work directly connected to appearing before

7    the Court, reporting and monitoring is designed to capture

8    those interactions behind the scenes; sometimes by telephone

9    and sometimes in a conference room, where the Company would

10   certainly be in a position where it would need to engage in

11   interactions around business decisions that would be, you

12   know, purely within its own province post-bankruptcy that

13   require the approval of the Bankruptcy Court and, therefore,

14   will, at the input, whether the Company likes it or not, of

15   the Professionals representing these two creditor groups.

16   Q    And would that continue if the company emerged?

17   A    No.

18   Q    Now, the next one is Emergence Preparation Work that

19   Would Need to be Redone.  Generally, what is that?

20   A    When a company is ready to emerge from bankruptcy, so

21   it's done all of the work, internal work, associated with

22   the preparations for that event, and so it has engaged in

23   activities around claims reconciliation, executory contract

24   payments, there are corporate restructuring activities that

25   the Company has been engaged in; not all, but some of this

1    work would have to be updated and redone in the event that

2    the Company is required to stay in Chapter 11 for any

3    significant period of time.

4    Q     And could you explain number four?

5    A     Yes.  Number four, although I'm not an FCC expert, as

6    I understand it, there is work that has been done in

7    connection with the FCC approval process that would have to

8    be redone at the point where the appeal has been resolved

9    and the stay has been dissolved.

10   Q     What's number five about?

11   A     This really goes to, you know, similar to point number

12   one, the carrying costs of the Chapter 11 case.  And while,

13   you know, certainly certain of these expenses will carry

14   over for a period of time post-bankruptcy, assuming the

15   Company were to stay in bankruptcy for an extended period of

16   time, the amount of time that those expenses would continue

17   to be an obligation of the Company will be extended and,

18   therefore, the costs will be increased.

19   Q     And number six?

20   A     Yes.  As I understand the Plan of Reorganization, upon

21   emergence from bankruptcy, the costs associated with the

22   MDL-related work will be paid out of a fund that is to be

23   established under the Plan of Reorganization to pay those

24   expenses.  While the Company remains in Chapter 11, it must

25   pay those expenses out of its own pocket and there is no

1  provision in the Plan for offsetting the amount of funds

2  that have been set aside for payment of those expenses post-

3  bankruptcy.  So this would, again, be an incremental cost.

4  Q    And what about number seven?

5  A    Number seven addresses the costs associated with

6  defending against the appeal.  The Company will have to

7  defend against the appeal post-bankruptcy if it were to

8  emerge now and so that would not be an incremental cost.

9  What would be an incremental cost, however, would be the

10 fees and expenses that will undoubtedly be incurred by the

11 UCC and the senior lenders in connection with defending

12 against that appeal.  That cost, again, will not exist upon

13 the Company's emergence from Chapter 11.

14 Q    Now, as I understand your testimony, it's your

15 estimate that these incremental costs could be as much, or

16 more, as $4.7 million, is that correct?

17 A    It could be more than 4.7 million; it could be less

18 than 4.7 million.

19 Q    But your estimate is 4.7 million?

20 A    Well, what I have concluded is that $4.7 million per

21 month times the number of months during which the stay will

22 be in place is a reasonable amount of protection to

23 establish in order to compensate the Company for actual

24 costs that will be incurred during this period.  The 4.7

25 will be a maximum.  To the extent that the actual

1  incremental cost exceeds $4.7 million, the Company will have

2  no source of compensation and reimbursement.  To the extent

3  that the costs come in below $4.7 million, then the payment

4  against the bond will be limited to the actual amount.

5  Q    Now, you took that 4.7 million and multiplied by 24,

6  correct?

7  A    Yes.

8  Q    And you take -- and what was the 24-month period based

9  on?

10  A    The 24-month period was based upon discussions with

11  Counsel, as well as a reasonable estimate as to the amount

12  of time likely to be required to complete the appellate

13  process based upon statistics that have been compiled by the

14  Circuit Court with respect to such appeals.

15  Q    Now, if you could take a look at the document behind

16  Tab 4, which is an excerpt from the DCL Plan Proponents'

17  objection, and specifically look at page 33, there's a

18  footnote there.  Do you see that?

19  A    Yes.

20  Q    And in the first footnote -- and this footnote is

21  attached to a sentence.  It's a carryover sentence that

22  reads:  Although the Appellant's claim without any support

23  that the appeal period here should be short or brief, this

24  Court can and should take judicial notice of the fact that,

25  according to the Administrative Office of the United States

1   Courts, the immediate amount of time during 2011 for

2   completion of a bankruptcy appeal through the issuance of a

3   Merits decision by the Third Circuit Court of Appeals is

4   more than 24 months, excluding any additional time period

5   for seeking review by the Supreme Court.  Do you see that?

6   A      Yes.

7   Q      And then there's a cite here to see Administrative

8   Office.  Do you see that?

9   A      Yes.

10  Q      If you'd look at paragraph -- Tab 5

11           MR. BENDERNAGEL:  And I'd ask that this document

12  be marked as Exhibit -- Kurtz Exhibit 4.

13                   (Kurtz Exhibit 4 marked)

14  BY MR. BENDERNAGEL:

15  Q      Is this the reference that is being cited in the prior

16  footnote on page 33 of the Brief?

17  A      Yes.

18  Q      And what is this document?

19  A      This is a document that was created by the Office of

20  the U.S. Courts of Appeals that is designed to illustrate

21  the average period -- sorry, the medium time intervals

22  associated with appeals in the various Circuits of

23  Bankruptcy Court Orders.

24  Q      And as I understand it, this is based on a specific

25  time period, is that correct?

1    A      Yes.

2    Q      And what is that time period?

3    A      This is for the 12-month period ending September 30th,

4    2011.

5    Q      And with respect to the Third Circuit, what is the

6    overall time period that's reported for these types of

7    bankruptcy appeals?

8    A      24.3 months.

9    Q      And can you just identify where on the chart that's

10   shown?

11   A      Sure.  If you look at the column on the extreme right,

12   you'll see from iling in Lower Court to final disposition in

13   Appellate Court, which is exactly what we're talking about

14   here.  And then if you just follow the Third Circuit line

15   across to the right, you'll see the 24.3 number.

16   Q      Now, if you could go to your -- now, your estimate was

17   based on 24 months, right?

18   A      Yes.

19   Q      Did you look at what the estimate might be for other

20   periods?

21   A      Yes.

22   Q      If you'd go to your Declaration which has been marked

23   as Exhibit 1 and turn to Exhibit A to your Declaration, it's

24   a document entitled Bond Amount Estimates for Potential Stay

25   Periods.  Do you see that?

1    A      Yes.

2    Q      Could you explain what this document is?

3    A      Right.  What we've attempted to do here is sensitize

4    the analysis for duration of appeal.  And so we have done

5    the calculation under four different scenarios, the shortest

6    being a hypothetical 12-month appeal period; the longest

7    being a hypothetical 30-month appeal period.

8    Q      And for the two-year period, I take it the third

9    column sets forth the support for the analysis that's set

10   forth on Exhibit 2, is that correct?

11   A      Yes.

12   Q      And I take it if the period is longer, the amount is

13   somewhat higher and if it's shorter, the amount is lower, is

14   that correct?

15   A      Yes, I think that's intuitive.

16   Q      Okay.  Now, you're aware that, in their most recent

17   filing, they've indicated that they would be willing to live

18   with a six-month stay, subject to being asked -- asking for

19   more extensions of that stay?

20   A      Right.

21   Q      Are you familiar with that?

22   A      Yes.

23   Q      Have you done a calculation to see what this analysis

24   would produce at six months?

25   A      I have done a six-month calculation.

1    Q    And if you could turn to Tab 6, do you recognize this

2    document?

3    A    Yes.

4            MR. BENDERNAGEL:  And I'd ask that this document

5    be marked, Your Honor, as Kurtz Exhibit 5 for

6    identification.

7                    (Kurtz Exhibit 5 marked)

8    BY MR. BENDERNAGEL:

9    Q    And if you could explain what this document shows?

10   A    Sure.  We simply have added in this chart two

11   additional sensitivities; one at six months and the other at

12   nine months.

13   Q    And what is the bond amount that's reflected here in

14   the six-month column?

15   A    It would be $635 million.

16   Q    And what would be the amount if we use nine months?

17   A    $113 million.

18   Q    Now, if we could go back to your original chart which

19   is Exhibit 2 for identification, the second category is Lost

20   Opportunity Costs.  Do you see that?

21   A    Yes.

22   Q    And can you generally explain what you are trying to

23   do in this section?

24   A    Right.  What we're trying to do here is capture the

25   time value of money costs associated with the fact that,

1  during the duration of the stay, the Company will continue

2  to earn very substantial amounts of cash that would

3  otherwise be distributed to creditors.

4  Q      And when you use the term time value of money, what do

5  you mean?

6  A      It would be the cost suffered by the party that is

7  denied access to cash that, in this case, would be

8  distributed to that creditor in the event that the Plan is

9  confirmed.

10 Q      Now --

11 A      At the moment -- I'm sorry; go ahead.

12 Q      Sorry.  The first -- go ahead.

13 A      I was just going to observe that, at the moment, that

14 cash is earning interest at the extraordinary annual rate of

15 one basis point.

16 Q      Now, it says -- there's three categories here; the

17 first one is Delayed Investments of Distributable Cash.  Do

18 you see that?

19 A      Yes.

20 Q      And what does distributable cash mean as you've used

21 it in that sentence?

22 A      There, referring to cash that currently exists in the

23 Company's accounts that would be distributed to creditors

24 immediately upon the Company's emergence from Chapter 11 and

25 the actual amount of that cash, as I understand, exceeds $2

1  billion.

2  Q    Now, have you made adjustments to that to subtract out

3  from that cash, the amount that the Noteholders were seeking

4  the stay would be entitled to?

5  A    Yes.

6  Q    And why did you do that?

7  A    It is not my belief that the Company should

8  appropriately ask to be protected for the amount of

9  compensation for a bond by those who are pursuing the

10 appeal.  So we've only focused on those who are opposing the

11 appeal as the category of parties in interest who, at least

12 in our view, you know, whose harm is entitled to be

13 protected by the bond that we believe should be required.

14 Q    And do you recall approximately how much money falls

15 into the category of distributable cash available to people

16 other than the Noteholders?

17 A    Yes.  It's in excess of $1.9 billion.

18 Q    And I see on Chart 2, or Exhibit 2, the chart, you've

19 estimated that the lost opportunity associated with that

20 would be $272 million, is that correct?

21 A    Correct.

22 Q    How did you come up with that $272 million?

23 A    We used the methodology that is similar to what we and

24 other financial advisors always do in calculating an

25 appropriate rate of return.  This is an exercise that, for

1  example, is embedded in any discounted cash flow valuation

2  analysis that is performed and, you know, many times has

3  been testified to in this Court in connection with this case

4  and others in their purchase to look to a reference point in

5  determining the amount of lost opportunity costs that, in

6  our case, would be -- that the creditors who are being

7  harmed thereby would be entitled to be protected against.

8  Q      And what number did you come up with for that

9  reference point?

10  A      Right.  [indiscernible] using a number of different

11  potential reference points or benchmarks.  What we concluded

12  to use here, again, recognizing that this is an upper limit

13  of protection; this is not intended to be a calculation of

14  actual damage, was the length of term currently available as

15  calculated by Merrill Lynch with respect to an index of high

16  yield bonds that are currently trading in today's market and

17  if you are to invest in the bonds that are part of the

18  Merrill Lynch Index, as of the date that we -- when I

19  prepared the Declaration, August 3rd, 2012, the rate of

20  return that that Index was earning is 6.896 percent I

21  believe is the number.

22  Q      And so you multiplied the distributable cash by that

23  number to come up with the 272?

24  A      Right.  And so, here again, the $272 million is

25  intended to be not a calculation of actual damage, but an

1  over-the-limit of the amount that would be reserved to

2  compensate creditors in the event that, at the conclusion of

3  the appeal, there were actual damages suffered.

4  Q      And you did that calculation for the 24-month period?

5  A      We did.  The actual damages could be more; the actual

6  damages could be less.  Our conclusion is that the $272

7  million under these circumstances using present day

8  assumptions around rates of return that are available in the

9  marketplace is reasonable.

10 Q      Now, at your deposition, there was some suggestion

11 that well, it's possible that no one would ever invest in

12 this Merrill Lynch High Yield Index rate and that somehow

13 that undercuts the veracity of your assumption.  Are you

14 familiar with that assertion?

15 A      Yes.

16 Q      What's your reaction to that, sir?

17 A      It misses the point.  I am not contending that anyone

18 either would or would not invest in non-investment grade

19 corporate bonds or that the actual rate of return will track

20 the Merrill Lynch Index as of August 3rd.  Nobody could make

21 that contention.  And there is a -- there's a wide body of,

22 you know, many different creditors and many different

23 interests that would be the benefit shares of the cash

24 distribution if the Plan were to go effective.  So what we

25 tried to do here was to use a, you know, benchmark reference

1  point and something -- a rate of return that was available

2  identifiably in the marketplace as of August 3rd as a means

3  of capturing the maximum amount that would be reserved on --

4  not technically reserved, but it would go into the bond

5  calculation to establish a form of compensation for actual

6  time value of money loss which can only be known working

7  backwards rather than forwards at the time that the appeal

8  was resolved and the stay was no longer in effect.

9          THE COURT:  Mr. Bendernagel, let me ask you to

10  pause for a minute and ask Mr. Kurtz, would you back away a

11  little bit from the mic?

12          THE WITNESS:  I'm sorry.

13          THE COURT:  That's okay.  Thank you.

14          MR. BENDERNAGEL:  Would you -- can I proceed,

15  Your Honor?

16          THE COURT:  Yes, please.

17  BY MR. BENDERNAGEL:

18  Q    Would -- earlier, in your testimony regarding this

19  matter, you had indicated that the Company was earning at I

20  think you said one or 10 basis points.

21  A    No, 10 basis points would be 10 times what the company

22  is earning.

23  Q    I see.

24  A    One basis point.

25  Q    Okay.  All right.  Why is that?

1  A    The Company is constrained by investment guidelines

2  that are imposed by the Bankruptcy Code?

3  Q    Now, in their filing the other night, there was a

4  suggestion that if, in fact, the creditors invested at the

5  same level as the Company, there wouldn't be any harm.  Are

6  you aware of that?

7  A    Yes.

8  Q    And that, by definition, has to be true, right,

9  because it's the same level?

10 A    The same is the same.

11 Q    Do you think that's a reasonable assumption that

12 people that got the money would essentially invest it at one

13 basis point?

14 A    I think that, again, misses the point entirely.  The

15 creditors are being deprived of the opportunity to make

16 investment decisions for themselves.  That's the disconnect.

17 Q    Well, there's a suggestion in their Reply Briefs that,

18 in some respects, by being deprived of that right, they are

19 being saved from the possibility they might lose the money.

20 Are you familiar with that allegation?

21 A    That's true.  They are being saved from the

22 possibility that they would lose the money but they are also

23 being deprived of the opportunity to make money.  Now, it

24 may turn out at the end of the day that a Court were to

25 conclude, when the appeal is resolved, that there was no

1  actual damage here because I mean if the market's greater

2  over the next several years, we have financial disasters,

3  who knows what a Court might decide looking back on the

4  actual facts and circumstances as they evolved during the

5  pendency of a stay.  But that's not the point.  I mean we're

6  not trying to calculate here with precision loss that will

7  be suffered in the future.  That cannot be done.  All we're

8  attempting to do is establish a maximum pot of recovery that

9  would be available to compensate creditors based upon events

10 that will evolve and occur over the next months or years

11 while the appeal is pending and while the stay is in effect.

12 Q    Now, in your career, as both a lawyer and the

13 bankruptcy practice at Lazard, have you found many creditors

14 that wanted the company to keep their money to be -- so that

15 they would be protected from losing it?

16        MR. ZENSKY:  Objection, Your Honor.  I think that

17 the witness was qualified only with respect to his

18 experience as a financial advisor, not a lawyer.

19        MR. BENDERNAGEL:  I'll rephrase the question.

20 BY MR. BENDERNAGEL:

21 Q    In your experience as a financial advisor, do you find

22 very many entities that are creditors in bankruptcy that

23 have the view that they're being saved from themselves by

24 the fact that cash isn't being distributed?

25 A    Never.

1    THE COURT:  I've had a lot of requests to that

2   extent but not on that topic.

3    (Laughter)

4   BY MR. BENDERNAGEL:

5   Q    If you could go back to Chart #2, the chart that

6   summarizes the various calculations you did, under Lost

7   Opportunity Costs, the next item is Delayed Investment of

8   Future Cash Flows and you have an estimate of $14 million.

9   Could you explain what that calculation relates to?

10  A    Sure.  The Company will continue to generate cash,

11  assuming that it is able to operate in a manner that is

12  consistent with its forecasts over the next several years.

13  Under the terms of the -- the term debt to be issued under

14  the Plan of Reorganization, the $1.1 billion term debt, the

15  Company is required to sweep 50 percent of its operating

16  cash flow to be used to pay down the principal amount of

17  this debt.  The assumption here is that the 50 percent that

18  is not used for that purpose can and would be available to

19  make supplemental cash distributions to what would then be

20  equity holders under the -- excuse me, equity holders of the

21  Company.

22  Q    And what assumption did you make as to what those

23  distributions would earn out at if they had been distributed

24  -- if they were available?

25  A    Well, here again, we're not calculating the amount

1  that they would earn where establishing a maximum pot of

2  recovery that would be available to compensate for loss of

3  earnings.  And what we did in that regard was utilize the

4  same 6.986 rate of return --

5  Q    I think it's 6.896.

6  A    Let's just call it 6.9 plus rates that were utilized

7  for purposes of doing the calculation in Part A.

8  Q    Okay.  And if you look back at Exhibit 2, the third

9  item is delayed $1 billion loan facility.  Do you see that?

10  A    Yes.

11  Q    And the estimate there is $156 million.  How did you

12  come up with that?

13  A    What we assumed there was that one of two scenarios

14  could occur.  Either that the Company would be successful in

15  refinancing upon its emergence from bankruptcy, this $1.1

16  billion term facility.  Why are thinking in those terms?

17  The Company has been actively engaged in seeking financing

18  that would, in effect, replace this term debt.  So that's

19  scenario number one.  Scenario number two that was embedded

20  in the calculation that we did in Part C is that the actual

21  notes would be issued but the notes could be sold in the

22  marketplace at par.  Why is it reasonable to believe that

23  the notes could be sold into the marketplace at par?  Those

24  notes are designed, financially designed, to trade at par

25  and so we made that assumption.  In effect, that the

1    creditors of the Company who are not pursuing the appeal

2    would have, either by receiving additional cash in

3    connection with the refinance or by selling these notes into

4    the marketplace, an additional $1.1 billion adjusted for the

5    amount that wouldn't be going to them that they could, here

6    again, earn the 6.9 plus percent rate of return on it and

7    that's how we get to the $156 million number.

8    Q    Now, in doing this calculation, did you take into

9    account the fact that the Company might be avoiding paying

10   interest during the stay period and can you explain how that

11   might affect this calculation?

12   A    Right.  It could cause a downward adjustment to the

13   $156 million by virtue of the fact that the Company is not

14   paying interest that it otherwise would be paying either

15   under a replacement facility or the $1.1 billion facility.

16   And so in kind of balancing the factors that really work

17   both way with respect to this category, it would not be

18   unreasonable to take that fact into consideration.

19   Q    Okay.  Now, the last item on this chart is called Risk

20   of Equity Value Loss.

21   A    Right.

22   Q    And you have the number of $992 million.

23   A    Yes.

24   Q    What do you mean by the phrase Risk of Equity Value

25   Loss?

1    A      Well, I'd say that the component of potential loss

2    that we spent the most time thinking about how to quantify,

3    for purposes of this exercise, was the risk associated with

4    the fact that creditors will be denied access to equity that

5    would be issued under the Plan of Reorganization in the

6    event that the stay is not granted.  Under the Rules as I

7    understand them pertaining to the issuance of stays, the

8    creditors, the non-appellant creditors, are entitled to be

9    protected against loss.  So how do we think about that loss

10   appropriately for purposes of establishing a bond amount

11   that would be designed to compensate for this risk factor?

12   One way to do it would be to ask for a bond in the full

13   amount of $4 ½ billion which is the Plan value of the equity

14   to be distributed under the Plan of Reorganization,

15   recognizing that there is a risk that all of that value

16   could be eradicated over the next couple of years in the

17   event that either the Company's fortunes or markets evolve

18   in a way that all of that loss would occur.  Now, we

19   recognize that while the risk of loss is $4.5 million, the

20   probability of a loss that large would be not great, and so

21   one thought was to simply ask for a bond equal to $4 ½

22   billion which tracks the literal language of the Rules

23   applicable to the issuance of the stay but seemed fairly

24   extreme.  The other approach that we thought about utilizing

25   was to think about the differential between the going

1  concern value of the Company and the liquidation value of

2  the Company.   That is an approximately $3 billion variance

3  and one could argue that the liquidation value or the

4  liquidation value and so what is the risk is the difference

5  between liquidation value and current going concern value.

6  If we were to have adopted that approach, that would yield a

7  request of approximately $3 billion.   So that was a second

8  way to do it.   The third way to do it, which is what we

9  chose, is the most conservative of the three approaches that

10  we considered, was to, once again, look to the financial

11  markets or financial indices to try to utilize a reference

12  point to probability adjust the amount of risk that is

13  inherent in this $4 ½ billion of equity.   And the

14  methodology that we concluded to utilize for that purpose

15  was to calculate, using the Black Scholes formulation, the

16  amount that the Company should be able to pay based upon the

17  Black Scholes calculation in order to buy a put at the full

18  $4 ½ billion amount.   And so if the Company were to buy a

19  put, then the Company would be fully protected.   The flip

20  side of that is that is that, under the Black Scholes

21  formulation, someone on the other side of that trade should

22  be willing to assume the downside risk given the volatility

23  of this company and this industry in exchange for payment of

24  $992 million.   We felt that that was the most conservative

25  approach.   Under the circumstances, that was the most fair

1    and reasonable and balanced approached to use for that

2    purpose.  In effect, that would be the cost of insurance,

3    recognizing that the Company is not getting insurance for

4    that amount.  And here again, what we're attempting to

5    establish is a maximum amount of potential recovery.  And so

6    what we are not trying to do, what I am not trying to do, is

7    quantify the amount of loss at $992 million.  What I am

8    trying to do is to establish an amount of money that would

9    be set aside in [indiscernible] with the bond that would be

10   approval of available compensation to deal with what is

11   truly a $4 ½ billion risk.

12   Q     Now, in their papers, they've suggested that what

13   you've done is essentially guaranteed a return.  Are you

14   aware of that?

15   A     I am.

16   Q     And what's your reaction to that assertion?

17   A     That is completely incorrect.

18   Q     Why is it incorrect?

19   A     Nothing has been guaranteed here, nor are we

20   suggesting that anything should be guaranteed.  That would

21   be true if we were asking the Appellants to pay over to the

22   bondholders $992 million today.  But that is not the case at

23   all.  What we're talking about here and what we're thinking

24   about here and what the Judge will have to decide here is

25   the amount of bond which is the source of compensation for

1  damages to be suffered.  We have arrived at the $992 million

2  amount for that bond utilizing the methodology I have

3  described.  This is an upper limit.  At the end of the

4  appeal, parties will have to establish the true amount of

5  their damages based upon how facts and circumstances

6  actually develop and occur during the pendency of the stay.

7  It may be that the actual loss is substantially in excess of

8  $992 million.  If that were to occur, then the loss would be

9  suffered by the creditors.  It may also be that the loss is

10 substantially less than $992 million, in which case the

11 amount of the draw against the bond would be limited to the

12 actual damages.  And it is also possible that there could be

13 no loss that would be suffered based upon the way

14 circumstances develop over the next several years, in which

15 case there would be no draw against the bond for this

16 purpose.  So nothing is being guaranteed to anyone.  This is

17 a source of payment to be made to be available to compensate

18 creditors only if at some point in the future, looking

19 backward, not trying to predict forward, a Court were to

20 conclude that actual damages were suffered.

21 Q     Now, if you take a look back at Exhibit 1, your

22 Declaration, and you go to Exhibit B to the Declaration --

23 A     I'm sorry; Exhibit B?

24 Q     No, Exhibit 1.

25 A     Okay.

1    Q      And go to Exhibit B to the Declaration which is at the

2    — it's the last page of Exhibit 1 essentially.  It says Bond

3    Sizing Analysis Put Option Valuation.  Do you see that?

4    A      Yes.

5    Q      Can you just explain to the Court what's going on on

6    this page?

7    A      Well, there are a couple things going on on this page.

8    So in order to do a Black Scholes calculation, there are

9    five different inputs that are required.  And if you look at

10   the input box on the left side of the page, you will see how

11   we, at Lazard, have -- or where we have landed with respect

12   to each one of these five inputs.  And so, as you know,

13   we've assumed a two-year stay duration.  We've assumed a

14   risk-free rate, which is essentially the two-year Treasury

15   rate in an exercise where we are assuming that the stay

16   would be in place for two years.  We have assumed a 40

17   percent volatility.  The 40 percent volatility is an

18   exercise that is frankly no different than the volatility

19   exercise that we have done in connection with the valuation.

20   We looked at comparable companies in the company -- in the

21   same industry in which Tribune operates and concluded that

22   40 percent is an appropriate volatility factor to be

23   utilized for this purpose.  Also, because we are assuming

24   that the -- this is an at-the-money put, than the strike

25   price of the put would be identical to the enterprise

1   valuation that the put is designed to protect which is why

2   you see that the plan equity value and the exercise price

3   are both $4.515 billion.  So, on the left side of the

4   column, we describe the inputs.  As you go below, this is

5   the actual Black Scholes formula itself which I like to

6   refer to as the Black box, and then out of the Black box, we

7   derive the put value which is $992.32 million.

8   Q     While we're on this page, what's this other box on the

9   right-hand side?

10  A     Right.  I was just about to get to that.  What we do

11  in the box on the right, is run a sensitivity analysis where

12  the two variables are the amount of time that the stay would

13  be in effect, which is the column going across the page up

14  at the top, and then down on the left-hand column working

15  downward, we vary the volatility from 15 percent to 55

16  percent.  The higher the volatility, the more valuable the

17  put.  The lower the volatility, the less valuable the put.

18  And then you see that using a two-year assumption at a 40

19  percent volatility yields the $992 number that we have

20  decided to -- I decided to incorporate in my Declaration.

21  But, for example, in a one-year bankruptcy where the

22  volatility is 40 percent, the put number would -- the put

23  value would be $709 million, for example, and I think the

24  chart is really self-explanatory after that.

25  BY MR. BENDERNAGEL:

1  Q    I'd just like to focus on the volatility column and

2  the fact that you selected 40 percent.

3  A    Right.

4  Q    Why did you land on 40 percent?

5  A    As I indicated, we landed on 40 percent by looking at

6  the actual volatilities of stocks of companies that operate

7  in industries that Tribune Company operates in.

8         MR. BENDERNAGEL:  If you could turn to page

9  seven, there's a document entitled Comparable Company

10 Volatility Estimates.  I'd like to ask that that be marked

11 as Kurtz -- is it 5?

12        THE WITNESS:  You mean Tab 7?

13        MR. BENDERNAGEL:  Yes.  Your Honor, is it Kurtz 6

14 at this juncture or 5?

15        THE COURT:  I don't know.

16        THE WITNESS:  These are the reference points --

17        THE COURT:  #6.

18        MR. BENDERNAGEL:  Okay.  Thank you, Your Honor.

19             (Kurtz Exhibit 6 marked)

20 BY MR. BENDERNAGEL:

21 Q    Could you explain what Exhibit 6 shows?

22 A    Sure.  These are the reference points that we utilized

23 for purposes of doing the -- for arriving at the 40 percent

24 volatility.

25 Q    And why did you select 40 percent?

1  A     Forty percent appeared to be at the low end of the

2  range applicable to companies that operate in the same

3  industries.

4  Q     Now, the movants suggest, well, this is all very

5  interesting but the creditors could simply sell their debt

6  and they would be protected.  Are you aware of that

7  allegation?

8  A     Well, they can sell their debt but that's where the --

9  I think the point ends because selling debt is not the

10 equivalent of having access to equity in a company that has

11 emerged from Chapter 11.  It's a different security.  It's a

12 different marketplace.  Also remember that, if a stay were

13 to be entered, the creditors would be required to sell their

14 debt as debt issued by a company that has just extended its

15 stay in Chapter 11 after the market believes that the

16 Company is finally on the precipous of emerging from Chapter

17 11 with the attendant costs associated with it and the debt

18 of that company and how that debt will trade in the

19 marketplace is simply not an identical proxy for what the

20 equity could be sold at.  They're two different instruments;

21 two different markets.  There's certainly a relationship

22 between the two but one is not the equivalent of the other.

23 Q     Have you looked at what would happen if they went and

24 sold their debt compared to the Plan value that was talked

25 about this morning and was, you know, part of the valuation

1   process in this case?

2   A     Well, if you assume that the debt could be sold at

3   today's quoted price, the creditors would suffer a loss

4   against Plan value.

5   Q     And do you recall what the approximate level of that

6   loss could be?

7   A     Well, in the Declaration, we use a -- I think it's a

8   $526 million number, which is the calculation that was based

9   upon the 10-day trading average of that debt at the time the

10  Declaration was issued -- at the time the Declaration was

11  signed and filed.  If you updated that calculation to true

12  it up to, I think we used Wednesday night's closing price,

13  that number would decrease to $366 million because the price

14  of the debt is increasing as the Company inches closer to

15  the point at which it will emerge from Chapter 11.  It's

16  interesting to note that the trading price of the debt has

17  been consistently on an upward slope since the Court

18  indicated that it would confirm the Company's Plan of

19  Reorganization and I believe it is completely reasonable to

20  assume that were a stay to be granted and were the market to

21  understand that the Company's stay in Chapter 11; that it

22  was not going to get out of Chapter 11 as the market expects

23  and that it stay in Chapter 11, has now been significantly

24  elongated, I think it's almost inevitable that the trading

25  price of that debt would decline.

1        MR. KORPUS:  Objection, Your Honor.  Move to

2   strike that last statement.  It's purely speculative as to

3   what would happen should the stay be granted or the effect

4   of [indiscernible].

5        MR. BENDERNAGEL:  May I respond?

6        THE COURT:  Yes.

7        MR. BENDERNAGEL:  Your Honor, first of all, he's

8   been qualified as an expert.  But before we get to that

9   question, why don't you let me set a foundation?

10       THE COURT:  Go ahead.

11  BY MR. BENDERNAGEL:

12  Q    If you can take a look at Exhibit -- the last exhibit

13  in the document, Exhibit Tab 8.

14  A    Right.

15       MR. BENDERNAGEL:  And I'd ask that this be marked

16  as Kurtz 7.

17            (Kurtz Exhibit 7 marked)

18  BY MR. BENDERNAGEL:

19  Q    It's entitled Tribune's Senior Loan Pricing.  Do you

20  see that?

21  A    Yes.

22  Q    What does this document purport to show and how was it

23  created?

24  A    This document purports to show the actual trading

25  prices of the various tranches of the Company's main debt.

1  Q      And in your last answer, you had indicated that the

2  price has gone up since the Confirmation --

3  A      Right.

4   Q      -- Order came back.  Can you just point to where that

5  is reflected on this case?

6  A      If you go to the far right and you see the upward tick

7  in the trading prices, that correlates very closely to the

8  Confirmation Order being entered and the Court's indication

9  that a Confirmation Order would be entered in July.

10  Q      And have you looked across this timeline to see the

11  ups and downs of the trading?

12  A      Yes.

13  Q      And based on your experience in this bankruptcy, is it

14  fair to say that the trading has responded to developments

15  in this case?

16  A      Yes.

17          MR. ZENSKY:  Objection.  He's leading the witness

18  again, Your Honor.

19          MR. BENDERNAGEL:  Well, let me ask it --

20          THE COURT:  Sustained.

21          MR. BENDERNAGEL:  I'll rephrase it.

22  BY MR. BENDERNAGEL:

23  Q      During the course of the bankruptcy, how has the

24  trading values varied based on what's going on in the case?

25  A      Well, it looks to me as though there is some

1  significant amount of correlation to events that transpire

2  in this Court.  And perhaps the best evidence of that, other

3  than the comment that I just made with respect to the

4  Confirmation Order in July, is to go back to October 31st of

5  2011, which is the day the Order was entered denying

6  confirmation of both Plans, and you will see that there was

7  a serious dip in that at approximately that same time in the

8  trading prices of those securities, that bank debt.

9  Q    Based on your work in this case, and you're having

10 studied these types of volumes, do you have an opinion as to

11 what is likely to occur or what could occur if, in fact, a

12 stay were to be granted?

13 A    Yes.

14        MR. KORPUS:  I renew the objection, Your Honor.

15        THE COURT:  You know, it's always risky for a

16 Court to assume something, but I'll bet if any one of us

17 were asked that question, we'd answer it that same way.

18 Overruled.

19        THE WITNESS:  I do have an opinion that the

20 trading price would go down.

21 BY MR. BENDERNAGEL:

22 Q    And would that be a good or a bad thing for creditors?

23 A    Bad.

24 Q    Let me go back to the initial chart, Exhibit 2, and

25 the harms that could occur if bankruptcy is stayed for two

1    years.

2    A    Right.

3    Q    Does this cover all of the potential harms?

4    A    It does not.

5    Q    What types of potential harms are not captured by your

6    analysis?

7    A    What is not captured are the harms that you heard Mr.

8    Hartenstein testify to today and, you know, those potential

9    harms which have not been quantified, as we all know, could

10    manifest themselves in two different ways.  One, is that the

11    Company could be worth less two years from now than it is

12    today because of the factors articulated by Mr. Hartenstein.

13    The other, which to me is just as significant a loss but may

14    be a little more -- even more difficult to quantify, is the

15    amount of appreciation that the Company would have been able

16    to generate if it had been free of bankruptcy and able to do

17    a better job of operating its business.  And so it's not

18    just the loss relative to where we are today, it's the

19    foregone gain that will be an actual loss suffered by the

20    holders of the bank debt.

21    Q    Now, does -- how, if at all, does the bond calculation

22    take into consideration that potential harm?

23    A    It really doesn't.  The bond calculation -- this is

24    the 992, the put?

25    Q    Right.

1    A      That is purely a function of utilizing the Black

2    Scholes methodology which is tied to volatilities in the

3    industry, per se, not specific to Tribune.  So it's

4    important to understand that we have not done this

5    calculation based upon Tribune volatility.  We have done

6    this calculation based upon the volatility of companies that

7    are operating outside of Chapter 11 in the same industry.

8    The potential downside associated with the factors

9    articulated by Mr. Hartenstein would not be incorporated or

10   captured in the analysis that we did that led to the 992

11   million.

12   Q      Now, there's been some suggestion at your deposition

13   that, in order to get protection on the downside, you should

14   be willing to give up the potential benefits on the upside.

15   Do you recall that?

16   A      I do.

17   Q      What's your reaction to that proposal?

18   A      I do not agree with that.

19   Q      And why don't you agree with that?

20   A      The purpose of a bond is to protect against loss.  To

21   me, it seems almost absurd to suggest that, in order to be

22   protected against the loss, a creditor must give up the

23   potential for gain.  That is not the way I understand the

24   standard and, frankly, I have never seen any Court, over my

25   career, interpret matters relating to the establishment of

1  an amount -- of a bond amount in that manner.

2  Q     Now, in reviewing your Declaration, it's focused on

3  potential harms.  This chart is focused on potential harms.

4  We've talked a lot about potential harms.  Now, in preparing

5  to testify today, have you given some thought to whether

6  there are some potential benefits that might occur by

7  staying in bankruptcy?

8  A     I have.  We've given that consideration.

9  Q     And are there such potential benefits and, if there

10  are, what are they?

11  A     There is one potential benefit that we believe exists

12  based upon analysis that was done subsequent to submission

13  of the Declaration, and that is the fact that while in

14  Chapter 11, the Company, by virtue of the fact that it is an

15  S Corporation owned by an ESOP, will not be a taxpayer, and

16  were the Company to emerge from Chapter 11, it would have

17  been a taxpayer.

18  Q     Now, if the Company stays in bankruptcy, I take it

19  it's your testimony that the creditors and the Company would

20  benefit from not having to pay tax, right?

21  A     The Company will benefit by virtue of the fact that it

22  will not be paying taxes that it otherwise would be required

23  to pay.

24  Q     Who suffers the detriment of that benefit?

25  A     The Government.

1  Q      So if the stay is imposed, the Government gets

2  screwed?

3                          (Laughter)

4  BY MR. BENDERNAGEL:

5  Q      Is that fair?

6  A      I would never use language like that but --

7  Q      Okay.

8                          (Laughter)

9  A      -- I think I understand your point.

10 Q      Rather than have a leading question, what happens to

11 the Government if the stay is imposed based on that issue?

12 A      Well, it will collect less tax revenues.

13 Q      And about how much is that?

14 A      It's about $240 million a year.

15 Q      And --

16 A      Assuming the Company is able to hit its forecasts.

17 Q      Okay.  Now, final question.  You've thrown out a lot

18 of numbers.  There's been changes since you filed your

19 Declaration with respect to the length of the stay that

20 they're asking for.  What's your recommendation as to the

21 amount of the bond based on everything you've said today?

22 A      There should be a very substantial bond imposed.

23 Q      Should it be the 1.5 billion that you set forth or

24 would you adjust that to take into account these benefits?

25 What's your thought on that?

1  A      Look, I think in a world where the potential loss is

2  $4 ½ billion, taking all of the factors that I have

3  testified to today into consideration, a $1.5 billion bond

4  is a conservative amount.  It's approximately 22 percent of

5  the amount at risk, the $4 ½ billion, and I believe that

6  that would be a reasonably conservative bond for the Court

7  to order.

8           MR. BENDERNAGEL:  I don't have anything further,

9  Your Honor.

10          THE COURT:  Cross-examination.

11                    CROSS EXAMINATION

12  BY MR. KORPUS:

13  Q      Good afternoon.  Sheron Korpus, of Kasowitz, Benson,

14  Torres, & Friedman, for Law Debenture.  Good afternoon, Mr.

15  Kurtz.

16  A      Good afternoon.

17  Q      Let's talk with the length of the stay.  In the

18  Declaration, you assume the stay for two years, right?

19  A      Yes.

20  Q      And you've got an assumption from Counsel, right?

21  A      I received that guidance from Counsel.

22  Q      Right.  And you know that the Trustees are seeking

23  direct appeal to the Third Circuit, right?

24  A      Yes.

25  Q      You did not investigate yourself the average time for

1  prosecuting a direct appeal, right?

2  A     No.

3  Q     But you see in their reply papers that both the

4  Trustees and Aurelius are only seeking a stay for six months

5  at this time, right?

6  A     I understand that to be true.

7  Q     And in the sensitivity analysis that you prepared for

8  the purposes of today's hearing, you've now added a column

9  for six months, right?

10 A     Yes.

11 Q     And that's in Tab 6 of your binder?

12 A     If you just bear with me for a moment?  Yes.

13 Q     And in Tab 6 under the column for six months, which is

14 really what we're talking about, so it's really the column

15 that should be shaded today, the total financial impact or

16 harm that you've calculated is $635 million, right?

17 A     No, that's not the total harm that I've calculated.

18 That would be the bond amount that would be derived using a

19 six-month input, as opposed to a 24-month input.

20 Q     Okay.  I'm just going by the description of the column

21 on the left-hand column where it says Total Financial

22 Impact/Harm.

23 A     Right.

24 Q     I'm just using your words.  That's what it shows,

25 right?

1  A      All that we have done here is change 24 months to six

2  months and run the same calculations.

3  Q      And you came up with a number for a total bond of $635

4  million, right?

5  A      That's the number, right.

6  Q      And of that 635 million, 505 million is attributed to

7  this novel put option that you have discussed earlier,

8  right?

9           MR. BENDERNAGEL:  Objection to the

10  characterization of the put option.  It's argumentative.

11           THE COURT:  Overruled.

12           THE WITNESS:  Yes, I mean I don't think there's

13  anything novel about calculating a put, but it is

14  attributable to the put.

15  BY MR. KORPUS:

16  Q      But you've never seen a put being used to calculate a

17  bond pending a stay before, right?

18  A      No.

19  Q      Okay.  This is something that you came up with, right?

20  A      I concluded that it was a reasonable reference point.

21  Q      You didn't see it ever used in any other bankruptcy,

22  right?

23  A      No.

24  Q      You haven't read any texts suggesting that that would

25  be an appropriate way to calculate a bond, right?

1    A     Right.

2    Q     You haven't seen any articles suggesting that?

3    A     True.

4    Q     You've never done it before, right?

5    A     Right.

6    Q     Okay.  So out of the 635 million, $505 million is

7    based on this bond methodology, on this put methodology, and

8    we'll come back to that later?  Actually, let's continue

9    with the put while we're on that.  You said that you have

10   never used -- you've never used this put methodology before

11   in quantifying the harm that may result from a confirmation,

12   right, from a denied confirmation?

13   A     I did say that.

14   Q     Right.  And you've been involved in at least one other

15   case where you were asked to quantify the harm; you've

16   testified about that, right?

17   A     Yes.

18   Q     The Charter case?

19   A     Right.

20   Q     And you did not use this put methodology in the

21   Charter case, right?

22   A     I did not.

23   Q     Okay.

24   A     But that doesn't mean that it wouldn't have been

25   appropriate.

1  Q    I did not ask you that question.

2  A    Fair enough.

3  Q    So as far as you know, are you the first person to

4  suggest that the Black Scholes model can be used to quantify

5  a bond pending appeal?

6  A    I have no idea.

7  Q    Okay.  But you haven't seen anybody else suggest this?

8  A    Yes, that's right.

9  Q    And you don't believe that, in calculating this put

10 insurance policy method, there has to be any direct nexus

11 between the stay and the harm that may be suffered by the

12 Company?

13 A    This is to compensate for loss that would occur during

14 the period of the stay.

15 Q    And it's to compensate for any harm that could occur

16 during the period of the stay, regardless of whether or not

17 the harm is related to the continued bankruptcy of the

18 Company?

19 A    The -- for purposes of this calculation?  This is a

20 Black Scholes calculation which is indifferent to proximate

21 cause.

22 Q    Okay.  So the answer to my question is yes?

23 A    What was your question again?

24 AQ    The calculation of the put here sets out to ensure

25 against any harm that Tribune may suffer over the course of

1  the next two years or six months or whatever the period may

2  be, regardless of whether such harm arises from the

3  bankruptcy or from any other factor?

4  A    That's not correct.  It doesn't compensate against any

5  harm.

6  Q    It doesn't compensate against any harm?

7  A    That's right.  The potential for harm is $4 ½ billion

8  Q    Okay.  After the potential of harm of $4.5 billion,

9  there are ways that a put should protect up to $4.5 billion

10  but regardless of whether any of the harm has been suffered

11  as a result of the bankruptcy or for any other factor?

12  A    I think you misunderstand what I'm doing.

13  Q    Well --

14  A    Well, may I answer?

15  Q    Yes.

16  A    What I have suggested is that a bond amount with

17  respect to this category of potential loss be established in

18  the amount of $992 million.  That will protect for $992

19  million.  It does not protect up to $4 ½ billion.  If there

20  was $993 million of loss, then there will be a million

21  dollars of loss suffered that would not be covered by the

22  bond in my scenario, and the missing -- the point here that

23  I think it's important to emphasize is we're not buying a

24  put.  We're establishing a source of recovery and those are

25  two very different points.

1  Q     What you are doing is the put option is measuring the

2  cost to insure the reorganized Tribune's projected equity at

3  the end of the stay period.  Is that what you're doing?

4  That comes straight off your Declaration.

5  A     The put is the price at which the Company could buy

6  insurance based -- in the form of the put based upon the

7  Black Scholes methodology.

8  Q     And the --

9  A     That is the amount that, according to Black Sholes,

10 the market would require to accept the downside risk

11 associated with a $4 ½ billion equity.

12 Q     Is a put option an insurance policy against a

13 potential decline in equity value of the Company?

14 A     If there were a put purchased.

15 Q     Right.  And that decline in equity value could be as a

16 result of anything; not just as a result of a bankruptcy?

17 It could be as a result of flood or fire or anything else,

18 right?

19 A     Sure.

20 Q     Okay.  So -- and Tribune would face some of those

21 risks regardless of whether it was in bankruptcy or not,

22 right?

23 A     It's certainly possible.

24 Q     Do you think equity value could go down as a result of

25 higher regulation, no competitors, or the business risks

1    that any company faces on a going day basis?

2    A      Absolutely.

3    Q      And you testified that equity holders still get to

4    keep the upside of any increase in the value of Tribune

5    under this put methodology, right?

6    A      Well, and there would be no cost to the Appellants if

7    there were to be no downside.

8    Q      So this insurance policy that's being provided is an

9    insurance policy against any harm that may be suffered by

10   Tribune during the stay period regardless of whether such

11   harm is related to the bankruptcy, right?

12   A      No.  There's no insurance policy being purchased here.

13   We're setting aside $992 as a source of payment to

14   compensate against a $4 ½ billion risk.  There is no

15   insurance policy being purchased here.

16   Q      So the statement in your Declaration that the put

17   option is essentially an insurance policy against a

18   potential declining equity value is wrong?

19   A      No.  If a put were to be purchased, then there would

20   be such insurance and we're not asking that a put be

21   purchased here.  We're --

22   Q      I understand your point.

23   A      May I finish?  We're simply requesting that an amount

24   of money equal to what the put would have cost be set aside.

25   Q      Right.  And that amount of money is supposed to

1    compensate the Company for any risk of the equity value

2    declining for any reason?

3    A     Well, up to $992 million.

4    Q     For any reason though, or a put.

5    A     It will ultimately be up to the Judge to decide what

6    the appropriate draw against the bond should be, if any.

7    What we're requesting here is an amount of money that would

8    be established in order to serve as a source of payment in

9    the event that the Judge concludes, with 20/20 hindsight,

10    looking backward, that there were such compensable loss

11    suffered.

12    Q     But you're not trying to link any of these losses at

13    this point to any of the particular risks that may arise

14    directly from the bankruptcy, such as the risks that Mr.

15    Hartenstein tried to testify about?

16    A     What I'm suggesting is that we need to set aside a

17    fund that will be available to compensate and, utilizing the

18    methodology that I have articulated, I am suggesting that

19    the amount of that fund, as it relates to the equity

20    component, should be $992 million.

21    Q     Okay.  Now, let's go back to the beginning and talk

22    about the fees, the extra administrative fees, that you've

23    testified would be incurred by Tribune.

24    A     Is there something you want me to look at?

25    Q     We'll get to it.  You estimated the fees by taking the

1  average administrative costs per month from August to

2  October of 2011, right?

3  A    Yes.

4  Q    And then you just multiplied that by six months or 24

5  months or whatever the case may be?

6  A    Exactly.

7  Q    Did you analyze those fees in between August to

8  October 2011 to see what kinds of activities were undertaken

9  at that time?

10 A    I observed that that was a relatively quiet period

11 during the bankruptcy.

12 Q    But did you look and see actually what the costs were

13 for?  For example, the preference actions that were going

14 on, the objections to claims, and whether it's an

15 appropriate comparison to the post-emergence

16 [indiscernible]?

17 A    No.  The only analysis I did to drill behind the $4.7

18 million number was what I testified to in my Direct

19 Examination where I observed that approximately 2 million of

20 the 4.7 was directly attributable to fees that were paid to

21 the UCC, as well as the Professionals, for the senior

22 lenders.  That is all I did.

23 Q    But you not do a further down to see what those fees

24 were for?

25 A    I did not do a further down.

1    Q    Okay.  Now, if there is no stay and the Company

2    emerges from bankruptcy, you agree that there would be some

3    continued professional expenses relating to the bankruptcy,

4    right?

5    A    Sure.

6    Q    There would be costs associated with the website

7    administrative agent and costs with the fee examiner and

8    other such matters?

9    A    Absolutely.

10   Q    And you did not attempt to estimate those and write

11   them out from your total estimate?

12   A    No.

13   Q    You did not try to segregate the costs that would be

14   incurred in any event and deduct those from the total cost

15   that you have quoted by multiplying the 4.7 by whatever

16   number?

17   A    No.

18   Q    Okay.

19   A    I think --

20   Q    I think that's enough questions.  And even if there is

21   no stay, Tribune would still incur costs in opposing the

22   appeals that have been filed, right?

23   A    Tribune Company would incur its own costs, not the

24   costs of others.

25   Q    And you've not tried to quantify the costs of those

1  efforts and deduct it from your estimate, right?

2  A     No.  I am not trying to predict the future here as

3  well with respect to professional fees with scientific

4  certitude.  I am merely suggesting that $4.7 million is a

5  reasonable amount of money to reserve for actual incremental

6  fees that will be incurred looking backward with 20/20

7  hindsight at the end of the stay.

8  Q     So you looked back at 2011, you multiplied the number;

9  that's basically what you did?  Now, you came today to Court

10  with a slide.  Tab 3?

11  A     Tab 3?

12  Q     Of your exhibits.

13  A     Right.  I'm with you.

14  Q     And in Tab 3, you've listed certain costs that would

15  be, as you defined them, incremental costs during the stay

16  period, right?

17  A     Yes.

18  Q     But your estimate of 4.7 is not based on estimating

19  the costs for each of the seven items and aggregating them,

20  right?  That's not how you got to the quantification?

21  A     No, I explained how I got to the quantification.

22  Q     Okay.  So can you tell me, for example, what non-

23  ordinary course transactions you expect Tribune to have over

24  the next six months?

25  A     No, I -- there's no way I could possibly know non-

1    ordinary course transactions Tribune may have over the next

2    six months, nor if the Tribune --

3    Q    Or what would be associated with those?

4    A    Right.

5    Q    Okay.  And with regards to the UCC and Senior Lender

6    Professionals, do you have any quantification of what the

7    reporting monitoring costs would be over the next few

8    months?

9    A    No, I do not have the ability to predict the future in

10   that manner.

11   Q    Okay.  And the same goes for each of the items on this

12   list, right?

13   A    That's true.

14   Q    Okay.  And you mentioned that the -- there's a lot of

15   fees that were incurred, 2 million of the 4.7 were in

16   connection with the ongoing fees of the UCC and the Senior

17   Lender Professionals?

18   A    Yes.

19   Q    What is the basis of paying the Senior Lender

20   Professionals?

21   A    I believe that matter was resolved during the course

22   of the bankruptcy.

23   Q    And do you know whether Tribune has the ability during

24   the stay period to say to the Senior Lender Professionals we

25   got this; you don't need to worry about this?

1  A      I don't know the answer to that.

2  Q      Okay.  Do you know whether Tribune has the ability to

3  say to the Professionals for the Committee and the senior

4  lenders, hey, let's just have, you know, -- a custom I think

5  as you just testified, has developed of a lot of activity

6  involving all the contingent parties, we'll have this; maybe

7  we'll just run it by you before we do it?

8  A      Well, based upon my experience, there's no chance of

9  that.

10 Q      Okay.

11 A      That would actually go to someone and say let us

12 handle it; you guys sit on the sidelines?  No, that won't

13 happen.  Now, whether there was some way to shut it down

14 unilaterally, that I don't know the answer to.

15 Q      Okay.  Now, you testified on the harm that the non-

16 moving creditors could suffer from a delay in reinvesting

17 the distributable cash.  Do you recall that testimony?

18 A      Right.

19 Q      And you initially testified that the -- you said that

20 operating costs can be estimated by calculating the

21 difference between the investment income that the debtors

22 are generating and the anticipated rates of return that

23 could reasonably be earned by the non-moving creditors

24 outside of bankruptcy, right?

25 A      Right, using a reference point.

1    Q      Right.  And the reference point you used was the

2    Merrill Lynch U.S. High Master II Index as of August 3,

3    2012, right?

4    A      Correct.

5    Q      Okay.  And your assumption, basically, is that from

6    day one of the distribution, all the creditors invest in

7    these bonds which give -- return an equivalent to this rate,

8    right?

9    A      Right.  I make the assumption that creditors wouldn't

10   just sit idly with cash.

11   Q      Right.

12   A      So, right.

13   Q      So --

14   A      Started it from day one.

15   Q      Day one, everybody starts getting 6.9 percent for

16   return?

17   A      True.

18   Q      Can I get in on that?

19   A      Just buy the Merrill Lynch Index.

20   Q      Right.  There's also a chance I could lose money in

21   the Merrill Lynch.

22   A      That's true.

23            THE COURT:  Or qualification to represent anyone

24   in this case.

25   BY MR. KORPUS:

1  Q     Now, you did not actually survey the non-moving

2  creditors to see the Company invest in high yield

3  instruments, right?

4  A     No.

5  Q     You don't know what their investment portfolio looks

6  like?

7  A     I don't.

8  Q     And you -- they could have been investing in something

9  more like the S&P 500, for example, right?

10 A     I don't know what they're investing in.

11 Q     You didn't look at the S&P 500 Index, right?

12 A     No.

13 Q     That was another Index that was available to you that

14 you could have used, right?

15 A     I could have used another Index.

16 Q     Right.  And one group of the non-moving creditors is

17 the Retirees, right?

18 A     Right.

19 Q     And you didn't see what returns they got in their

20 investments in 2011?

21 A     No.

22 Q     Do you believe they were getting 6.9 percent on their

23 investments?

24 A     If they were in the Merrill Lynch -- if they were

25 invested in the Merrill Lynch Index as of August 3rd, they

1  were.

2  Q     Do you believe it's a reasonable assumption that the

3  Retirees were investing their money in the Merrill Lynch

4  High Yield Index?

5  A     I have no idea.

6  Q     Okay.  But it's an assumption that you made.  Now, you

7  did not look at the returns generated by Oaktree in 2011,

8  right?

9  A     No.

10 Q     You did not look at the returns generated by Angelo

11 Gordon, right?

12 A     Correct.

13 Q     Possible that they had losses, right?

14 A     Possible.

15 Q     And you agree with me that the investments in the U.S.

16 Treasury are low-risk investments comparatively?

17 A     Yes, I do.

18 Q     And that's why they have a relatively low yield?

19 A     Right.

20 Q     Right.  And the difference between the expected

21 returns on the investments is the different risk associated

22 with the investment, right?

23 A     That's reasonable.

24 Q     Right.  And there's a difference between the expected

25 return you get on high yield versus Treasury, right?

1    A       Sure.

2    Q       And the difference is the compensation for the higher

3    risk that you have with the high yield bond, right?

4    A       Right.

5    Q       So while high yield bonds pay more, you also have a

6    greater risk of losing your money, right?

7    A       Than Treasury's?

8    Q       Yes.

9    A       You do.

10           MR. KORPUS:  And let's look at -- can I have the

11   -- may I approach the Court and the witness, Your Honor?

12           THE COURT:  You may.  Thank you.

13   BY MR. KORPUS:

14   Q       I handed you [indiscernible] of binders.  I'm not sure

15   I will be using all of those but --

16   A       Okay.

17   Q       -- in there, you should see what was marked as Exhibit

18   4 to your deposition.

19   A       Okay.

20   Q       Which is the Merrill Lynch High Yield Index.  Do you

21   have that?

22   A       I do.  Yes.

23           MR. KORPUS:  Does the Court have that?

24           THE COURT:  I do.

25   BY MR. KORPUS:

1    Q    And you see that --

2            MR. BENDERNAGEL:  Your Honor, just for purposes

3    of keeping the record the record straight, should we be re-

4    marking this?  It would conventionally be marked this

5    morning.

6            MR. KORPUS:  Sure.

7            THE COURT:  Well --

8            MR. BENDERNAGEL:  Just mark them in order?  It's

9    up to you?

10            MR. KORPUS:  That's a good idea.

11            THE COURT:  -- are these going to be offered into

12    evidence?

13            MR. KORPUS:  Yes, I probably will offer this

14    document into evidence.  So we can mark it as Kurtz -- what

15    are we up to?

16            MR. BENDERNAGEL:  #8.

17            MR. KORPUS:  So this is #8 or #9?

18            MR. BENDERNAGEL:  #8?

19            MR. KORPUS:  This is #8, Kurtz #8.  Okay.

20                    (Kurtz Exhibit 8 marked)

21    BY MR. KORPUS:

22    Q    So looking at Kurtz 8, this is the document that you

23    relied on for in coming up with this return of 6.9 percent,

24    right?

25    A    Yes.

1   Q    And it has recent high yield bonds deals listed there,

2   right on the front part?

3   A    Yes.

4   Q    And it has a ratings column, right?

5   A    Yes.

6   Q    And it shows some double D's, B minuses, triple C

7   plus, triple C's.  Do you see all those?

8   A    Yes.

9   Q    All these ratings are lower than double A or triple A,

10  right?

11  A    Yes.

12  Q    Which signifies that there's higher potential for

13  default, right?

14  A    Yes.

15  Q    Okay.  And there's been years in the not too distant

16  past where the high yield indexes were actually negative,

17  right?

18  A    Yes.

19  Q    It's a pretty volatile index, right?

20  A    I don't know how to define pretty volatile, but I mean

21  there has been volatility in that index --

22  Q    Yes.

23  A    -- over the past several years.

24  Q    You agree it's a volatile index?

25  A    It's certainly more volatile than Treasury's.

1    Q      Right.  Do you recall in your deposition you were

2    shown a document that showed that the index was a single

3    rate which is 21.6 percent negative in 2008?

4    A      Right, and think in 2009, it was 53 percent positive

5    so --

6    Q      To that went down?

7    A      Right. It goes down; it goes up.

8    Q      It's just a very different investment?

9    A      It is.

10   Q      And JP Morgan is a large creditor here, right?

11   A      Yes.

12   Q      And you know that JP Morgan recently has suffered some

13   losses on its investments, right?

14   A      So I've heard, yes.

15   Q      $201 million I believe.

16   A      More than that.

17   Q      More than that?

18   A      Did you say $201 million?

19   Q      Yes.  More than that?

20   A      More than that.

21   Q      And Tribune has not lost any money on its Treasuries,

22   right?

23   A      No.  That's 2 billion in Treasuries.  There's --

24                        (Laughter)

25   Q      Money in the bank?

1    A      Money in the bank.  It has not.

2    Q      Now, let's move on to discuss the delayed investment

3    all firm of future cash flows.  First of all, I see from

4    your six-months chart that you are --

5    A      Do you want me to go back to that chart?

6    Q      Yes, that's on Tab --

7    A      Which one was that again?

8    Q      Tab 6.

9    A      Okay.

10   Q      Okay.  For the six-month period, you did not actually

11   calculate any harm arising from that, right?

12   A      I'm sorry; I'm not following your question.

13   Q      I'm talking about the free cash flow distribution

14   delay.  Do you see for the six-month period there's a blank

15   there?

16   A      Right, because the true-up against the note is every

17   six-months.

18   Q      Okay.

19   A      There wouldn't be any cash flow available to be paid

20   at the six-month mark.  That's why you don't see it until

21   the nine-month calculation.

22   Q      Okay.  Now, can you explain to me again, how was it

23   that you calculated this amount for the 24-month period?

24   A      I just took 50 percent of the Company's cash flow and

25   applied the 6.896 hypothetical rate of return against it.

1    Q    And is that because you estimated that the Company

2    will pay out in dividends 50 percent of its cash flow?

3    A    That's the -- essentially the assumption that was

4    made.

5    Q    And then what was the basis for that assumption?

6    A    That the Company, based upon the business plan that

7    currently exists, does not have an apparent use for that

8    cash and so we made a reasonable assumption that that cash

9    would be distributed to creditors.

10   Q    So you made an assumption that over the next two

11   years, the Company will just pay out in dividends $272

12   million to creditors?

13   A    Well, whatever the actual number is.

14   Q    I think in your Declaration it was $272 million.

15   A    Yes.  It's 50 percent of the excess cash flow.

16   Q    Okay.

17   A    That's what I have assume would be paid.

18   Q    Okay.  And is that a projection that you self-verified

19   or is that just something you got from the Company?

20   A    It's directly off of the Company's forecast.

21   Q    Now, let's move past that because there isn't really a

22   number here for the six-months period that we're dealing

23   with and let's talk about the next item which is Debt Amount

24   Delay.  You mentioned a potential replacement facility.

25   It's true that there's no commitment letter in place, right?

1   A     Yes.

2   Q     And you say that creditors who receive this Tribune

3   loan could sell that strip but you had no discussion with

4   any creditors at all that they intend to sell the strip in

5   the debt market, right?

6   A     That's right, but if they didn't sell the strip,

7   they'd get the coupon, but no, I have not had any

8   discussions with creditors.

9   Q     And they would get a coupon even if there is a stay;

10  it's just that a start date would be somewhat delayed,

11  right?

12  A     I don't know the answer to that.

13  Q     Okay.  Now, did you -- didn't I hear you testify that,

14  in fact, there's also a benefit to the Company under this

15  assumption because if the stay goes on, the Company will not

16  have to pay any interest, right?

17  A     Any income tax.

18  Q     I thought I also heard you say --

19  A     Oh, I'm sorry; we're talking about at this point?

20  Q     Yes.

21  A     That's right.  That the -- if the note were issued or

22  if the note was refinanced, then the Company would be

23  required to pay interest that will not be paid during the

24  stay period.

25  Q     And did you --

1  A     And so that cash flow will accumulate in the Company.

2  Q     And did you calculate the benefit of that amount?

3  A     Well, if you were to take that amount into

4  consideration, then what it really boils down to is the

5  differential between what the assumed refinancing rate would

6  be and the amount that would be paid under the note if the

7  note were issued.  So it's an offset.

8  Q     So do they cancel each other out?

9  A     No, they don't cancel each other out because the refi

10 rate -- the reason that the Company is considering

11 refinancing the debt is because the rate is lower.

12 Q     So what is -- is it a net benefit?

13 A     And the -- and more importantly, the rate is lower

14 than the 6.896 percent that we have assumed as the rate of

15 recovery.  So it would really be the differential between

16 the cash that would accumulate during the period of the stay

17 and the amount that could be earned if the creditors had the

18 cash.

19 Q     Okay.

20 A     And so it -- the don't completely offset but one

21 certainly does reduce the other.

22 Q     And did you calculate it?

23 A     I think we did do that calculation.

24 Q     And what is that number?

25 A     I don't have -- I mean I can get it for you.  I don't

1  recall offhand but it would largely mitigate that category.

2  Q     Okay.  So that category of harm is largely mitigated

3  by that?

4  A     I think if you -- yes, if you take into consideration

5  the fact that the Company is not paying interest during this

6  period, then that factor is largely mitigated.

7  Q     Okay.  Now, let's turn to the ability of the creditors

8  to liquidate their investment and avoid any harm by selling

9  the debt today.  You'll agree with me that there is a market

10 for the debt today, right?

11 A     It could be sold at a price.

12 Q     Large bulk of debt has been traded, right?

13 A     Correct.

14 Q     And you know, in fact, that many of the senior lenders

15 came to the holding by purchasing that holding on the

16 secondary market, right?

17 A     I do know that.

18 Q     Okay.  And, in fact, you testified that the -- well,

19 initially, you testified that there was a 6.1 percent

20 discount based on the difference between the trading value

21 for the debt that you calculated over a 10-day period and

22 the intrinsic value of the Plan based on the Larzard

23 valuation, right?

24 A     Right.

25 Q     And you said that you've recently amended that

1    calculation because in your deposition you were showing that

2    prices continue to go up, right?

3    A      Well, I ran the calculation in a different way and I

4    looked at it in the way that is most favorable to the

5    argument that the discount is smaller by picking a day and

6    doing, the day being the close of business Wednesday, and

7    doing the calculation off of that.  Whether it's more

8    reasonable to use one day, as opposed to a, you know, 10-day

9    average, I guess we could debate that.

10   Q      Well --

11   A      It's a different way of doing it.

12   Q      Well, when you look to the high yield index, you use

13   just a day as opposed to a range of days, right?

14   A      That's true.

15   Q      Okay.

16   A      Right.

17   Q      But to be consistent, let's say that you're going to

18   do that here.

19   A      Okay.

20   Q      And when you look at the trading data, and you

21   calculate it just on the most recent data, after your --

22   A      Wednesday night.

23   Q      Wednesday night after your deposition when you were

24   shown that the prices have gone up, what did the discount go

25   down to from 6.1?

1  A      On a percentage basis, it's just north of 4 percent.

2  Q      Okay.  And that's just a difference of basically of 10

3  days, right?

4  A      Yes.  As the Company is inching closer to emerging

5  from bankruptcy, the phenomenon you'd expect to occur is

6  occurring, which is the trading price of the debt is

7  converging to the Plan value.

8  Q      Right.  Now, these numbers come from two different

9  sources.  One is a bid asked based on what people pay in the

10 market.  That's the trading data, right?

11 A      Right.

12 Q      And the Lazard valuation is not based on what people

13 are willing to pay for buying or selling the Company.  It's

14 an investment bank evaluation done using the usual methods,

15 right?

16 A      Correct.

17 Q      Okay.  And you'd agree with me that the intrinsic

18 value of the Company is not necessarily equal to its market

19 capitalization?

20 A      I agree with that.

21 Q      Right.  And even if there is a discount that -- even

22 if we accept that it's proper to look at the difference

23 between the trading data and the investment bank evaluation

24 to see that there's a discount, isn't it possible that a

25 discount would reflect the market's perception of the risk

1  that appear to be successful?

2  A     That could be a component part, absolutely.

3          MR. KORPUS:  Okay.  Just one second.  If I can

4  just have a second to look at my notes?  I don't believe I

5  have any further questions.

6          THE COURT:  You may.

7          MR. KORPUS:  Thank you, Mr. Kurtz.

8          THE COURT:  Mr. Korpus, do you have any exhibits

9  you'd like to offer into evidence?

10          MR. KORPUS:  Yes.  I guess we only used -- I

11  really only used Exhibit 8.  We why don't we just offer that

12  one into evidence?

13          THE COURT:  Any objections to the admission of

14  K-8?

15          MR. BENDERNAGEL:  No objections.

16          THE COURT:  It's admitted without objection.

17  Thank you.

18              (Debtors' Exhibit K-8 admitted.)

19          MR. ZENSKY:  Just a few questions, Your Honor.

20  David Zensky, Akin, Gump, Strauss, Hauer & Feld, for

21  Aurelius Capital Management.

22                    CROSS EXAMINATION

23  BY MR. ZENSKY:

24  Q     Good afternoon, Mr. Kurtz.

25  A     Good afternoon.

1    Q    Could you take a look at Kurtz Exhibit 5, or what was

2    marked for identification as Kurtz Exhibit 5?

3    A    Sure.

4         MR. ZENSKY:  That's the table, Your Honor, with

5    the various times to appeal.

6         THE WITNESS:  Right.

7    BY MR. ZENSKY:

8    Q    Do you have that in front of you, sir?

9    A    Yes.

10   Q    Mr. Bendernagel directed you I believe to the last

11   column on the right for the Third Circuit in the 24.3-month

12   number, is that right?

13   A    Yes.

14        THE COURT:  That's K-4, I think, Mr. Zensky.

15        MR. ZENSKY:  I'm sorry, Your Honor?

16        THE COURT:  I think that's K-4.

17        MR. ZENSKY:  I'm sorry.  If it's K-4, I stand

18   corrected.

19        THE COURT:  Okay.

20        MR. ZENSKY:  Are we looking at -- is it this or

21   am I --

22        THE WITNESS:  Yes.

23        THE COURT:  It's the Table B-4(b).

24        MR. ZENSKY:  I have it as 5 in my book.

25        THE COURT:  Well, it's behind Tab 5.

1      MR. ZENSKY:  Oh, I'm sorry.  You're right.  My

2  mistake, Your Honor.

3      THE COURT:  But I think it was marked K-4.

4      MR. ZENSKY:  I meant to refer to Tab 5.

5      THE COURT:  Okay.

6  BY MR. ZENSKY:

7  Q    Okay.  We're on the same page, right?

8  A    Mystery solved.

9  Q    Okay.  And I believe you answered.  Mr. Bendernagel

10  directed you to the far right column?

11  A    Yes.

12  Q    Okay.  If you look up at the top, the headings on this

13  chart, you see there's one, two, three, four, six boxes

14  across the top?

15  A    Yes.

16  Q    Okay.  What is the second one from the right?

17  A    From Filing of Notice of Appeal to Final Disposition.

18  Q    Right.  You're aware that the Appellants have already

19  filed their Notice of Appeal in this case aren't you?

20  A    I think I know that, yes.

21  Q    Okay.  That's why we're here.

22  A    Right.  Right.

23  Q    And what is the time period under that column to get

24  the final disposition if you measure it from when the note

25  --

1    A       Starting there or --

2    Q       Yes.

3    A       -- to get to there?

4    Q    To get to there from filing the Notice of Appeal to

5    get to ultimate disposition.

6    A       Well, this is, as I understand it -- so you're in the

7    From Filing Notice of Appeal to Final Disposition?  That I

8    believe refers to -- Filing of Notice of Appeal to Final

9    Filing -- okay.  So this would be the amount of time from

10   the filing of the Notice of Appeal to final disposition at

11   the District Court level I believe.

12   Q    Okay.

13   A    And that's the way I understand this chart.

14   Q    Where on the chart does it say that?

15   A    Well, I think if you -- it's confusing.  Frankly, it

16   was confusing to me.  But I think if you read the

17   descriptions of the six columns, it's the only way to

18   interpret it.

19   Q    Okay.  Does this chart, to your knowledge, in any way

20   break out appeals where the parties sought to expedite the

21   briefing and resolution of the appeal in light of the

22   District Court or Circuit Court?

23   A    It doesn't break it out.  What I'm wondering is

24   whether you can derive it from this.  I guess I'd have to

25   think about that.

1  Q    This is just a median time of all appeals,

2  irrespective of whether the parties sought to hurry up.

3  A    That's true.  It's a median.

4  Q    Right.  And, therefore, this also doesn't break out

5  appeals where there's a real risk of equitable mootness that

6  might face the Appellants does it?

7  A    No.

8  Q    Now, you read the reply papers that were submitted by

9  my client in this case, Mr. Kurtz, in connection with the

10 stay?

11 A    I read a Brief.  I don't know if I've -- how many

12 there are but I read one that was submitted by you.  Maybe

13 that's the only one.

14 Q    Okay.  Well, are you aware that we wrote the debtors

15 and asked them to stipulate to an accelerated briefing

16 schedule if the appeal goes to the District Court where we

17 would file our Appeal Brief seven days after the decision

18 and the Appellees would have 10 days and then we would have

19 10 days to reply.  Are you aware of that?

20 A    I'm generally aware of that.

21 Q    Okay.  And if the debtors and their other Co-

22 Proponents were really concerned about all the risk of loss

23 that you talked about, they could agree to an accelerated

24 schedule could they not?

25 A    I'm not going to comment on what they could or

1  couldn't do or why they might say yes or maybe they might

2  say no.

3  Q     So you are comfortable with all the other opinions you

4  offered this afternoon but you don't know whether they could

5  agree to that?

6            MR. BENDERNAGEL:  Objection.  Argumentative.

7            THE WITNESS:  No, no.  I mean you asked --

8            THE COURT:  Sustained.

9            MR. ZENSKY:  You don't have to answer.  It was

10 sustained.

11           THE WITNESS:  Thanks.

12           MR. ZENSKY:  That's all I had, Your Honor.

13           THE COURT:  Re-Direct.

14                     RE-DIRECT EXAMINATION

15 BY MR. BENDERNAGEL:

16 Q     Take a look at that last exhibit, Exhibit 4, in Tab 5.

17 I take it we were looking at that fifth column, is that

18 right, Final Disposition?

19 A     Right.  The second to the last column.

20 Q     And the number is 13.2 months?

21 A     Yes.

22 Q     And if that is the period at the Third Circuit, that

23 would be twice as long, it would be more than twice the six-

24 month period that they are proposing here, right?

25 A     Yes.

1    Q      And if, in essence, what -- okay.  That's all I have

2    on that document.  There was a question about trading value

3    versus the analysis done by investment bankers like Lazard

4    to value firms.  Do you recall that?

5    A      Yes.

6    Q      And I take it you've had some experience with

7    valuation in the Bankruptcy Courts, is that correct?

8    A      Yes.

9    Q      When was the last time you saw a Bankruptcy Court

10   accept as valuation what the debt was trading at as

11   representation of valuation?

12            MR. KORPUS:  Objection, Your Honor.  I believe --

13   what is this, a hearsay or just repeating legal authorities?

14   I'm not --

15            MR. BENDERNAGEL:  I'm asking him when in his --

16            THE COURT:  You need to tell me what you think

17   first and then I'll have Mr. Bendernagel respond.

18            MR. KORPURS:  Well, I think it's a little bit of

19   both.  I mean I think testifying as to what you heard and

20   Judge accepting?  I mean it's either there -- it's either a

21   conclusion of law or it's hearsay or it's -- in either

22   event, it's not admissible.

23            MR. BENDERNAGEL:  I'll rephrase the question.

24   BY MR. BENDERNAGEL:

25   Q      In your experience as an investment banker and as a

1  lawyer, have you ever been in a situation where you saw,

2  through your own mind, an investment banker or any party

3  submitting as a valuation for purposes of a confirmation

4  hearing an analysis that was based on the fact -- on what

5  the debt was trading at?

6  A    I don't recall ever seeing that happen.

7  Q    How is it usually done?

8  A    It's usually done on the basis of valuation

9  methodologies that are, you know, well-established in

10 bankruptcy proceedings.

11 Q    Now, when we were here a couple of months ago, or over

12 a year ago, and the parties were submitting valuation data,

13 did Mr. Singh on behalf of Aurelius and the Noteholders take

14 the position that Mr. Korpus is -- I get it, I get it -- Mr.

15 Korpus is proposing here?

16 A    You know, I don't know what Mr. Singh did.

17 Q    There is some indication by Mr. Singh, you suggested,

18 that because there's still a discount that that might

19 reflect the risk of appeal.  Do you recall that?

20 A    That question was just asked here?

21 Q    Yes.

22 A    That might account for part of the discount?

23 Q    Right.

24 A    I remember that question.

25 Q    Now, if there was a serious risk of appeal, do you

1    think that the market would be creeping upward if they

2    thought that there was a likelihood of appeal?

3            MR. KORPUS:  Objection, Your Honor.  That's

4    really speculative.

5            THE COURT:  Sustained.

6    BY MR. BENDERNAGEL:

7    Q    You were asked a question about the third of the lost

8    profit calculations and the fact that the Company is not

9    paying interest and the interest could later be paid.

10   A    Right.

11   Q    And as a consequence, that might mitigate it, correct?

12   A    It could be an offset, right.

13   Q    And what would -- that is premised on the assumption

14   that, in fact, the Company does eventually pay that money

15   out to the creditors, correct?

16           MR. KORPUS:  Objection.  Leading.

17           MR. BENDERNAGEL:  It doesn't --

18           THE COURT:  Sustained as to form.

19   BY MR. BENDERNAGEL:

20   Q    Let me -- in making that analysis, what assumption did

21   you make as to whether, in fact, that money would eventually

22   be paid?

23   A    That it eventually would be paid.

24   Q    And what would -- would you change your view as to the

25   mitigating impact if, in fact, it wasn't paid?

1  A     Well, then you'd have to think about the effect on the

2  equity if the cash was still in the Company.  So it gets a

3  little complicated.

4  Q     Okay.  There was some question about Treasury notes

5  and that kind of stuff.  In your experience, do the hedge

6  funds that are generally involved in these types of

7  proceedings invest in Treasury notes?

8           MR. KORPUS:  Objection.  Foundation.

9           THE WITNESS:  No.  Investing in Treasury debt --

10          THE COURT:  I'll entertain a motion if you'd like

11  to make one, Mr. Korpus.

12          MR. KORPUS:  Motion to strike, Your Honor.

13          THE COURT:  Granted.

14          MR. BENDERNAGEL:  Are you sustaining this

15  objection, Your Honor, or just striking it --

16          THE COURT:  Well, the answer was given and that's

17  why I invited the motion.

18          MR. BENDERNAGEL:  That's right.  So I still have

19  a question there.

20          THE COURT:  Well, you need a new question.

21          MR. BENDERNAGEL:  Okay.  Fair enough.

22          THE COURT:  Because I struck the answer for a

23  reason.

24  BY MR. BENDERNAGEL:

25  Q     There was discussion in the case regarding this one

1  basis point that's being earned by the Tribune on the money

2  and the fact that Treasuries don't have very high yields.

3  In your experience, what types of investments do hedge funds

4  make?

5          MR. KORPUS:  Objection, Your Honor.  It's a

6  speculative question.  It's a question, a general, vague

7  question.  Hedge funds generally?  The hedge funds in this

8  case?  He testified that he does not know what the hedge

9  funds in this case invested.  That's really the question.

10  Information he has about hedge fund investments in general,

11  come in many types and many varieties.

12          THE COURT:  Sustained.  If you want to pursue

13  this line, I think you need to lay a little foundation.

14          MR. BENDERNAGEL:  Let me ask a different

15  question.

16  BY MR. BENDERNAGEL:

17  Q    Has Aurelius presented any evidence in this case as to

18  what the rate of return is to your knowledge?

19  A    Not that I'm aware of.

20  Q    They have the burden of proof with respect this bond

21  issue don't they?

22          MR. KORPUS:  Objection.

23          MR. ZENSKY:  Objection.

24          THE COURT:  Sustained.

25          MR. BENDERNAGEL:  I'll move on, Your Honor.

1   BY MR. BENDERNAGEL:

2   Q     You were asked a question about the fees and the fact

3   that the senior lenders are collecting fees from the case.

4   Do you know what the Plan says with respect to the fees, the

5   senior lenders' entitlement to fees?

6   A     I do not know what it says about that.

7   Q     Moving on, there was a question regarding your

8   testimony in the Charter case.  Is it -- and you were asked

9   did you utilize this put option in the Charter case and you

10  said no.  Was there a reason you didn't -- why didn't you

11  use the put option in the Charter case?

12  A     There were a couple reasons why we didn't do it there.

13  Number one, Charter presented a fairly unique set of

14  circumstances and so, you know, their -- that Plan of

15  Reorganization was, you know, premised on a very large

16  investment by debt holders that they were not committed to

17  make.  And then there was also an issue around the

18  differential between interest that was being paid during the

19  bankruptcy and interest that would be paid post-bankruptcy

20  that added up to very significant dollars given the fact

21  that Charter had $10 plus billion of debt.  And so the size

22  of the bond that we got to just utilizing those factors was,

23  you know, large enough that, you know, we really didn't need

24  to, you know, to pile on and, you know, add this into the

25  mix.  There were some very unique damages there that, you

1    know, we focused on as the basis for the request.

2    Q    You were also asked a question about segregating out

3    the costs and you went to try to explain something; it was a

4    while back in the examination, and Mr. Korpus indicated to

5    you that he didn't really want to hear your answer.  Do you

6    remember what your answer was in that regard?

7    A    Do you remember what the question was?

8                        (Laughter)

9    Q    No.  I'll move on.  One last question here.  There was

10   some suggestion that your equity put option approach

11   essentially was protecting against all sorts of

12   contingencies that could occur.  Do you recall that?

13   A    Right.

14   Q    Now, if, in fact, the Company is still in bankruptcy

15   and the equity isn't distributed and some catastrophe

16   occurs, does the fact that the Company is in bankruptcy in

17   equity have an impact on the creditors or the Company's

18   ability to respond to those crises.

19             MR. ZENSKY:  Objection, Your Honor.  It's a very

20   vague question.  I believe that Mr. Bendernagel --

21             MR. BENDERNAGEL:  Well, let me ask it a different

22   way.

23             THE COURT:  I don't know who could answer it

24   actually.

25             MR. BENDERNAGEL:  Right.  Let me ask this

1    question.

2    BY MR. BENDERNAGEL:

3    Q    It's clear that -- the put, as I understand it, is to

4    protect against the potential for harm, is that correct?

5    A    Right, which is important here because creditors

6    aren't able to sell out of their investment at a price which

7    would make them whole.

8    Q    And if they were outside of bankruptcy, would they

9    have that option?

10   A    Well sure, because with the Company out of bankruptcy

11   and with equity in their hands, they're free to do with it

12   as they wish and the market will trade it as it does.  The

13   problem is that that's not what they have today.  Today,

14   they have a debt claim against the Company in bankruptcy.

15   From post-bankruptcy, they have an equity claim against the

16   company that has emerged and is no longer operating under

17   the cloud of issues that Mr. Hartenstein articulated during

18   his examination.

19            MR. BENDERNAGEL:  I have nothing further, Your

20   Honor.

21            THE COURT:  Re-Cross.

22            MR. KORPUS:  Do you want to move your exhibits?

23            MR. BENDERNAGEL:  Yes, I wanted to move my

24   exhibits, Your Honor.

25            THE COURT:  Go ahead.

1          MR. BENDERNAGEL:  Exhibits 1 through 7, my sense

2    is that there's going to be an objection to the Declaration.

3    But, at a minimum, I'd like to get in Exhibits A and B of

4    the Declaration which were used in the examination and could

5    have been set out as separate exhibits.

6          THE COURT:  Okay.  Just let me get to -- K-1 is

7    offered only insofar as Exhibits A and B attached to the

8    Declaration and K-2 through K-7.  Is there any objection?

9          MR. KORPUS:  Not if the text of the Declaration

10   is not coming in.

11         THE COURT:  Okay.  Then without --

12         MR. BENDERNAGEL:  Thank you.

13         THE COURT:  -- objection.

14         MR. KORPUS:  May I just ask a couple follow-up

15   questions, Your Honor?

16         THE COURT:  Take three if you need them.

17         MR. KORPUS:  I may need to.  I may only need one,

18   just regarding the first.

19         THE COURT:  Well, take a minute if you need it.

20         MR. KORPUS:  Well, let me get to this one.

21                     RE-CROSS EXAMINATION

22   BY MR. KORPUS:

23   Q    Mr. Bendernagel asked you about whether or not it's

24   proper to value a company using the bond prices.  Just to be

25   clear, I'm not the one that was doing that here.  You were

1  the one that was taking the differential between the bond

2  prices market cap and the value of the Company per the Plan.

3  That's how you came up with the 6.1 discount that you today

4  reduced to 4 percent.

5  A     No.  I wasn't, in any way, suggesting or implying that

6  the bond trading price is the value of the Company.  I was

7  merely making the point that that is the quoted price for

8  that debt if they wanted to sell.  I wasn't commenting on

9  whether I thought that was fair value, full value, intrinsic

10  value; it's a completely different point.  There's a quote.

11  Somebody's bidding at that price.  If somebody wants to

12  sell, they can try to hit that bid.  It had nothing to do

13  with valuing the Company or drawing conclusions about value

14  from that quoted stock price.

15  Q     I understand.

16  A     Debt price.

17  A     I understand that, and neither am I.  But you -- what

18  you were doing is you were comparing that value with the

19  value of the Plan in saying there's a discount here.  This

20  is the value that they would receive under the Plan.  You

21  were drawing the comparison between those two numbers?

22  A     Yes.  All I was saying was that the market isn't

23  paying Plan value at this point in time.

24  Q     And you said the debts -- you just said to Mr.

25  Bendernagel that that's another reason why the put

1  methodology is an appropriate way to look at it because the

2  creditors cannot get full value for their claims at this

3  point in time.  Do you remember you just said that?

4  A     Yes.

5  Q     And that's the same as saying that it should protect

6  -- it's a protection against a liquidity, right?

7  A     No.

8  Q     It's not the same as saying they cannot liquidate

9  their investment?

10  A     No, I'm not saying that it's designed to protect

11  against illiquidity.  I'm making a completely different

12  point.

13  Q     Are you saying they cannot liquidate their investment

14  for full value at this point in time, right?

15  A     No, it has nothing to do with illiquidity.  It has to

16  do with the fact that they don't have to sell today what

17  they will have to sell if the Plan goes effective.  To be

18  able to have a debt claim against the company operating

19  under the cloud of Chapter 11, post-emergence, they will own

20  equity in a company that is free of Chapter 11.  That's the

21  point I'm making.  They're two different instruments

22  entirely.

23  Q     Right, they are, and they could --

24  A     It has nothing to do with liquidity.

25  Q     And they could sell the debt claim today and then buy

1  shares in the company when the company goes effective,

2  right?

3  A     Yes, and lose the differential.

4            MR. KORPUS:  Right.  Thank you.  No more

5  questions.

6            THE COURT:  Mr. Zensky, any Re-Cross?

7            MR. ZENSKY:  None, Your Honor.

8            THE COURT:  All right.  Thank you, sir.  You may

9  step down.

10           MR. BENDERNAGEL:  I believe that completes the

11  evidentiary portion of the show but it might be a good idea

12  to take a break and then start the motions, Your Honor.

13           THE COURT:  All right.  It's 10 of 3.  We'll take

14  a recess until 3:00.

15           MR. BENDERNAGEL:  Thank you.

16  (Recess from 2:51 p.m. until 3:02 p.m.)

17           THE COURT:  Mr. Zensky?

18           MR. ZENSKY:  Good afternoon, Your Honor, again

19  for the record, David Zensky, Akin, Gump, Strauss, Hauer &

20  Feld, for Aurelius Capital Management.  I'll present the

21  argument on the Aurelius Motion to Stay at this point, Your

22  Honor.

23           THE COURT:  All right.

24           MR. ZENSKY:  Your Honor, obviously, we'll tailor

25  our comments in line with the Court's opening comments this

1  morning and not delve into matters that the Court indicated

2  need not be discussed.

3          I want to start with just a general overview of

4  the Code, related jurisdictional provisions and Rules which

5  I believe govern what we do in this room in large respect.

6  And when I look at those sources in regard to the task at

7  hand today, I don't reach the conclusion that appeal is a

8  dirty word.  And I don't reach the conclusion that stay is a

9  dirty word when it comes to appealing from a confirmation

10  ruling.  One might think that reading the DCL objection to

11  our Motion, and candidly one might think that reviewing some

12  of the cases that have been issued in this area of the law.

13  But they're not founded on the text of the Code or the Rules

14  or related statues.  If we look at 28 U.S.C. 158(a) it

15  provides plenary jurisdiction of the District Court over

16  appeals from a Bankruptcy Court.  It doesn't say except with

17  respect to Confirmation Orders where we're going to make it

18  really difficult for an Objector to appeal from a

19  Confirmation ruling.  We look at 158(d), which you'll hear

20  more about later today.  Congress passed a special statute

21  to facilitate review from Bankruptcy Orders.

22          THE COURT:  Mr. Zensky this is not something

23  about what you have to convince me, you know.  I'm a Trial

24  Court.  I know where Trial Court stands in the order of

25  things.  There are Appellate Courts and I think I know what

1   the reason for Appellate Courts are.

2            MR. ZENSKY:  Sure.  And I'm sorry, Your Honor, I

3   didn't mean to indicate that this was the Court's view, but

4   it appears to be the view of certain precedents that have

5   been cited by the parties.  And my point is that I don't

6   believe, to the extent there's a judicial hostility to the

7   posture we find ourselves in, that it's well founded on the

8   text of the applicable Code provisions, rules or statutes.

9            THE COURT:  Well, I'll just say this.  There are

10  certain inconveniences which are created under the

11  circumstances but, you know, I don't think that answers the

12  question.

13           MR. ZENSKY:  Okay.  Let's talk about the -- I

14  think the inconvenience you might be getting at Your Honor.

15  The appeals at issue here were not the subject of a Final

16  Order until July 23rd, 2012, and any attempt to prosecute an

17  appeal earlier in the case would only have been on an

18  interlocutory basis subject to a stilted scope of review.

19  You'll remember that when we did file a protected Notice of

20  Appeal after the Opinion and Memorandum on Confirmation it

21  was derided as premature by the DCL Plan Proponents and they

22  have filed papers in opposition to Wilmington's

23  interlocutory appeal.  So this was really our first

24  opportunity.  And generally when a Confirmation Order comes

25  out, that's the time to appeal a ruling like this.

1          THE COURT:  I agree.

2          MR. ZENSKY:  Right, the Rules, by design, lead us

3   to this position.  Now it didn't necessarily have to play

4   out that way if the DCL Plan Proponents had filed a separate

5   9019 Motion as distinct from baking the settlement into the

6   Plan.  That might have led to a final appealable Order back

7   in 2011 and we wouldn't be here.  But by design or

8   otherwise, that's the way the Plan was presented and now we

9   find ourselves at the right time to appeal.

10          Then I look at the provision respecting a stay

11  Your Honor, 8005.  It doesn't say that stays should be more

12  difficult or torturous to obtain in the context of a

13  Confirmation Order if it's time to appeal now.  There's a

14  single sentence in 8005 that governs everything we're here

15  to discuss today.  And it says that "Bankruptcy Judges may

16  suspend or order the continuation of other proceedings in

17  the case, or make any other appropriate Order during the

18  pendency of an appeal on such terms as will protect the

19  rights of all parties in interest".  That's the rule that

20  we're here to talk about.  It doesn't say protect the

21  pecuniary interests of all the parties and interests or the

22  internal rate of return target of every hedge fund that

23  invested in the debt securities in the case, Your Honor.  It

24  says protect the rights of the parties, which I think should

25  focus the Court on the legal rights of the parties and

1 tangible specific harm to the company that somehow separates

2 this from the ordinary course of events.  Whether to stay,

3 and if so, on what terms, is always committed to the Court's

4 discretion.  I don't believe there's anything in that Rule

5 that says you must do this or you may not do that.  Indeed,

6 that sentence doesn't even mention the word bond, Your

7 Honor.  It's only when you go later down in the rule and

8 it's talking about the District Court that the reference to

9 a bond first comes up.

10          And the rule certainly doesn't say that the

11 Court should show more solicitude or concern for the rights

12 of the parties who are in favor of the confirmed Plan as

13 distinct from the rights of the parties who are seeking to

14 take the appeal.  And we believe Your Honor that given the

15 record that was just made where there was no idea when and

16 whether FCC approval will be obtained, no specific

17 identifiable concrete harm that will befall this company in

18 the next couple of months that a limited term stay of 180

19 days is appropriate and should be granted to allow Aurelius

20 and the other appellants to prosecute their appeals.

21          THE COURT:  Without a bond?

22          MR. ZENSKY:  Correct Your Honor.

23          THE COURT:  Now if I were to determine that a

24 stay is appropriate, but that also a bond would be

25 appropriate, would it change your view about duration of the

1  stay?

2         MR. ZENKSY:  I don't believe it would, Your

3  Honor.  If I understand your question, I don't believe it

4  would.

5         THE COURT:  I do, thank you.

6         MR. ZENSKY:  Where we are now, you heard Mr.

7  Kurtz say the $2 billion is under lock and key in the bank.

8  The same with respect to the strip, the debt, the equity --

9         THE COURT:  He said safely under lock and key.

10         MR. ZENSKY:  Safely under lock and key.  The cash

11  debt and equity if we have a limited term stay is going to

12  stay available for distribution at the appropriate time to

13  the parties entitled to it.  No one's legal rights will be

14  compromised in the interim.  The same with respect to the

15  party on the appealing side, the money and to the extent

16  creditors on our side elected a strip, their consideration

17  would remain under lock and key, as well.  On the other

18  hand, denying a stay will certainly be protective of the

19  rights of the Plan Proponents and the senior lenders but

20  will run the very real risk of fatally prejudicing the

21  rights of the Appellants to have an appeal heard.  And I'll

22  come back to that topic again as you asked this morning.

23         Let me talk for a minute about what I call the

24  big bond cases which are cited liberally in the DCL papers,

25  and I know the Court is familiar with them.  These are cases

1  where stays have been granted but conditioned on enormous

2  bonds, or not granted at all because of the magnitude of

3  harm that was concrete, identifiable and would befball the

4  company if a stay were granted.

5          First we could talk about *Adelphia* which Your

6  Honor mentioned this morning.  I know you're familiar with

7  it.  The harm that was bonded there was $70 million a month

8  of interest running on the DIP loan, okay?  That's the

9  opposite of this case.  You heard Mr. Hartenstein testify

10 that they're not paying interest while they're in

11 bankruptcy.  So that case is certainly distinguishable on

12 that point.

13         Secondly, the case makes clear that the result of

14 the stay would have forced *Adelphia* to prematurely undertake

15 an IPO of certain stock that it would be getting in the sale

16 transaction that was part of the Plan and that that would

17 cost the company $715 million if they were forced to

18 prematurely do the IPO that the stay would do.  That's a

19 causal nexus between the stay and a specific identifiable

20 harm to the debtor if a stay is issued, and that's why there

21 was a mega bond required in *Adelphia*.  Let's talk about

22 *Calpine* for a minute, Your Honor, a case that my firm was

23 involved with.  There the harm that led to the denial of the

24 stay was the loss of a very, very favorable exit facility

25 financing for $7.6 billion that was negotiated under one

1   economic climate that would blow up if a stay was issued

2   based on the explicit terms of the exit financing agreement

3   and that the cost to replace would have cost -- replace the

4   facility would have cost $900 million, okay?  That's not

5   this case.  That was a specific showing of a sui generis

6   type of harm that would befall the debtor company if the

7   stay was granted.  You heard nothing like that this morning.

8           The third mega bond case, or stay case, that was

9   cited by the DCL Plan Proponents is the *GM* case.  And as

10  Your Honor knows, nothing could be more different from this

11  case than the *GM* case Your Honor.  The Opinion indicates

12  that three days after the hearing on the stay the U.S.

13  Government said it would stop funding GM and that GM would

14  have to liquidate.  And Judge Gerber said, "Here we are not

15  talking about delaying distributions to creditors a little

16  longer, we're talking about the death of the company."  And

17  then he went on later to comment that the possibility of a

18  stay would pose "grievous systemic damage to the U.S.

19  automobile industry".  Your Honor you didn't hear anything

20  like that with respect to what would happen to Tribune if

21  you entertained a six-month or issued a six-month stay in

22  this matter.  In fact, you heard nothing other than harms

23  that would be present in any Chapter 11 case where the

24  company is required to or ask to stay under bankruptcy

25  protection for a little longer than it would like to stay

1   under bankruptcy protection.  All the harms that you heard

2   about from the two witnesses would be present in any case.

3   The big bond cases have no application for that reason.  And

4   forcing Aurelius, the indentured Trustees, or any Appellant

5   to put up a bond of $1.5 billion, as you heard Mr. Kurtz

6   tell you was the right amount here, 150 million or anything

7   like that to be paid over to the company or the lenders, if

8   the appeal is unsuccessful, I don't believe is protective of

9   the rights of all the parties as contemplated by Bankruptcy

10  Rule 8005 which is the touchstone for what Your Honor is

11  being asked to consider.

12          THE COURT:  Mr. Zensky is it your position that

13  if the Court were to decide that a bond is appropriate there

14  is no number, that the movements here would concede, might

15  be appropriate?

16          MR. ZENKSY:  I believe that is our position, Your

17  Honor.  If there was a nominal number which for some reason

18  was viewed to be part of the package, I suppose it's a

19  possibility.  But I think Your Honor understands our

20  position generally.

21          THE COURT:  I do now.

22          MR. ZENSKY:  Okay.  So forcing a bond of any size

23  of the type they're talking about or anything that would

24  satisfy them is not protective of all rights certainly, nor

25  is it necessary to protect the senior lenders.  Based on Mr.

1  Kurtz's testimony, you heard that there is a liquid market

2  here into which creditors can sell their debt instruments.

3  It is not a perfect analogue for the intrinsic value of the

4  company, but he did say there's a substantial relationship

5  between the value of the debt and the value of the company.

6  If you are a senior lender and a stay is issued and you want

7  out, you can get out.  If you want --

8          THE COURT:  If you want to relinquish the

9  potential upside of owning equity.

10          MR. ZENSKY:  That's correct.  And if you want

11  that upside, if you believe that Tribune is poised for

12  greatness in the future, you can hold your debt instrument

13  and when and if our appeal is unsuccessful that company will

14  -- that value will accrue to you because the equity at issue

15  and all the intrinsic value that builds up in the interim

16  will be enjoyed by a creditor in that situation.  But the

17  stay does not preclude such a creditor from monetizing their

18  instrument in the interim now, a month from now if their

19  investment thesis changes, two months from now, or three

20  months from now.  They can get out anytime they want.

21          Telling Aurelius again or the indentured Trustees

22  that they have to be prepared to reimburse those parties for

23  7% earnings on $3 billion worth of cash in the interim I

24  don't believe is required by the rule and would not be an

25  equitable outcome.

 1           Let me talk for a minute about the equities in

 2    general as we see it, and then I'll come back to the

 3    elements, Your Honor.  Our appeal, as you know, is from a

 4    settlement that was crammed down on a class that by amount

 5    of claims overwhelmingly voted against the Plan, 85, 88% by

 6    amount of the senior notes and 100% of the PHONES oppose

 7    that Plan, that settlement and it was crammed down.  And

 8    let's remember that Aurelius is not an out-of-the-money

 9    creditor who was conveniently coming and getting nothing on

10    consummation and saying shut down the whole shebang so I can

11    take an appeal.  To the contrary, Aurelius is scheduled to

12    get more than $200 million on the day the Plan consummates,

13    if and when it does, and is willing to have that money sit

14    on the sidelines just like everyone else.  It is not saying

15    what's good for you is not good for me or vice versa and

16    would suffer all of the same loss of investment

17    opportunities that Mr. Kurtz claims the senior lenders would

18    be suffering.  So that would make it equitable, in my view,

19    to have a standstill so we can appeal with no one

20    responsible to reimburse anyone else depending on the

21    outcome of the appeal.  Now the DCL Plan Proponents tell you

22    in their papers that they have owned the right to consummate

23    their Plan and exit.  Well, every debtor who has a confirmed

24    Plan feels that way.  It doesn't say that in the Code, in

25    the Rules.  Again, we've already exchanged ideas on this

1  Your Honor.  You have the right to appeal.  And again, every

2  debtor is going to want to exit, is going to say they've

3  earned the right to exit.  But, of course, that right is

4  only correct if Your Honor's rulings were right.  And while

5  not delving into the merits, we believe the grounds for

6  appeal that we have cited in our taking will be subject to

7  de novo review and, therefore, Your Honor's Opinion to the

8  extent it's being appealed will come with no presumption of

9  correctness. The District Court or Circuit Court, depending

10 on the discussion later, will have at it fresh.  So we don't

11 accept the fact that the debtor has earned the right to exit

12 in any respect.

13        Let me comment for a minute on the recent Third

14 Circuit Decision in the *Philadelphia News* case, which we

15 cite in our reply papers.  I'm sure Your Honor has read it.

16        THE COURT:  I have.

17        MR. ZENSKY:  And, you know, my take away from

18 this area of the law and the Third Circuit is that a lot of

19 the hostility that I talked about earlier to appeals and

20 stays from Confirmation Orders goes back to the *Continental*

21 Decision.  And I would like to think that although a panel

22 decision, that Judge Ambrose's Decision reflects a potential

23 new and open look at the importance of facilitating the

24 appeal from Confirmation Orders.  And we quoted this excerpt

25 in our paper.  He specifically warned against weapons that

1  are designed to prevent Appellate review of Bankruptcy Court

2  Orders that confirm reorganization plans.  And, of course,

3  he cited multiple times to then Judge, now Justice Alito's

4  dissent in *Continental* and in *Nordoff* as certainly

5  reflecting this panel's view about the importance of

6  Appellate review and the equitable mootness doctrine.  And

7  we believe that denying a stay, as the debtors have asked

8  you to do, or imposing a ruinous bond would be just such a

9  weapon.  It would be a weapon of design to thwart Appellate

10  review of the Confirmation Order and the issues that we have

11  the right to take up on appeal.  Now let me turn to the --

12          THE COURT:  Actually you could read the recent

13  Decision as arguing for the other side as a warning to

14  Courts that they shouldn't be so concerned about the

15  uselessness of appeals on equitable mootness grounds, don't

16  you think?

17          MR. ZENSKY:  I'm not sure what Your Honor means

18  by the other side, but I certainly agree that it shows a

19  very -- potentially very different view about the teeth of

20  the equitable mootness doctrine.

21          THE COURT:  Okay, I won't push any further than

22  that.

23          MR. ZENSKY:  Okay.  But let me stick with that

24  topic.  And Your Honor commented at the outset of today that

25  from your vantage point this is an egg that will not be able

1   to be unscrambled, or words to that effect.  I don't

2   necessarily agree with that, and I don't think this will be

3   the Court to decide it if we find ourselves in that

4   position.  But what I do believe is that there's a very real

5   risk that a Court could reach that conclusion if the Plan

6   consummates and our appeal has not yet been decided.  And we

7   believe that that in itself satisfies the second prong, the

8   potential for irreparable harm by the Appellant.  Certainly,

9   some Bankruptcy Court and District Court decisions in this

10  district have said that this is not enough to show

11  irreparable harm, but some of them say that it is enough.

12  Judge Farnan in the *Finova* case said that the loss of

13  Appellate rights would be sufficient irreparable harm, and

14  that if the Plan was allowed to proceed the appellant would

15  have little or no recourse and "this establishes a real and

16  substantial risk of irreparable harm."  There's certainly no

17  Third Circuit case that says that the loss of an appellate

18  right does not constitute irreparable harm.  And if you look

19  at the DCL objection at paragraph 31 and 32 where they argue

20  this point, they cite Bankruptcy Court and District Court

21  cases not binding on you and added District cases, but there

22  is nothing that says that this loss -- potential loss of

23  appellate right doesn't satisfy our burden on this point.

24  And if you take step back from the precedents and just think

25  about how could it not constitute irreparable harm Your

1    Honor, the difference between the settlement consideration

2    of $369 million and the full amount that would be available

3    to pay the senior notes and PHONES if the settlement did not

4    -- was not affirmed and the litigation went forward is $1.7

5    billion.  That's a lot of money.  Secondly if a Court were

6    to determine the appeal was equitably moot, the case is

7    over, we're done.  There's no recourse at that point.  And

8    the Third Circuit in *Ascernia* which was not a Bankruptcy

9    Court case, was a preliminary injunction, commented that

10   irreparable harm is potential harm that cannot be

11   readdressed following a trial.  So I would submit that the

12   very real chance of losing meritorious appellate right does

13   constitute irreparable harm for purposes of 8005 and the

14   case law.

15          Let me turn then to the other side to the debtor

16   and Plan Proponent side of the equation and talk about the

17   harm that you heard about today and it's argued in the

18   papers and the need for a bond.  The testimony was they

19   don't know when the FCC is going to rule.  That's what Mr.

20   Hartenstein was permitted to testify to.  But irregardless

21   -- or strike that.  If that's the case, we don't know

22   whether it's going to be next week, next month or next year.

23   To the extent there's a stay, it might not be imposing any

24   harm on the DCL Plan Proponents at all because we all know

25   they can't exit until that comes down.  So that's certainly

1  a factor and an important unknown here.  But irrespective of

2  when that may occur, and even if we knew it was going to

3  occur ten days from now, again I don't believe you've been

4  presented with any harm other than that that that would be

5  present in every single Chapter 11 where a debtor wants to

6  exit and creditors want their distributions.

7           THE COURT:  Well I will say the situation with

8  the FCC does pose, I guess, a difference from all the

9  others, as you say, but I'm not sure where that falls

10 because, you know, one of the things that DCL has told me

11 for an extended period of time was, Judge you got to do what

12 you got to do so we can go to the FCC because that's going

13 to take a long time.  Well then I confirmed the Plan and all

14 of a sudden it was on the verge of happening, and but for

15 the fact that the DCL Plan Proponents agreed voluntarily to

16 stay the effective date pending my Decision -- well at least

17 until today and we'll need to address this at the conclusion

18 of the hearing -- I would have imposed the stay until we got

19 here.  So I'm not sure whether it's weeks or months away or

20 days away.

21          MR. ZENSKY:  Okay, well, certainly there's no

22 evidence on that point Your Honor.  Mr. Bendernagel

23 commented --

24          THE COURT:  The evidence is conflicting, let's

25 put it that way.  If there is evidence, it doesn't lead me

1  to a resolution that's clear in my mind.

2          MR. ZENKSY:  But what I believe is important no

3  one has said to you that if a stay is entered, then that

4  will impact the decision on the merits of the FCC decision.

5  It doesn't make it less likely they will approve it if

6  there's a stay so that we can prosecute an expedited appeal.

7          THE COURT:  No but the fear --

8          MR. ZENSKY:  No one has told you that.

9          THE COURT:  No but the fear is the process will

10  be delayed, and one of the center pieces of the DCL

11  Proponent's argument is delay does nothing but harm us.  And

12  I will say whether or not that can be quantified doesn't

13  mean that it's not real.

14          MR. ZENSKY:  I understand Your Honor but, again,

15  I would say the evidence is entirely hazy on the issue of

16  whether a stay will in fact delay FCC consideration.  All

17  you've heard about is a fear.  And if you look at paragraph

18  43 and 44 of their objection, they cite nothing to support

19  this point and you didn't hear any evidence today.  So on

20  the issue of a bond there is certainly -- the rule does not

21  require it.  To the contrary, you have discretion as to what

22  is appropriate to protect all parties' rights.  The Third --

23  there's no Third Circuit case that says you must impose a

24  bond to be available to reimburse the company for

25  administrative expenses or creditors for lost investment

1   returns.  Think about that, Your Honor.  There's a recipe

2   for disaster.  Mr. Kurtz said, well, I'm not saying the

3   creditors would be entitled to this at the end of the day,

4   but you need to put up a billion five so that if the appeal

5   does not work out, everyone can claim against it.  Can you

6   imagine the specter of hundreds or thousands of creditors

7   trying to come in here and proving to you what they would

8   have done with the money in the interim?  That is not --

9            THE COURT:  I'd rather not.

10           MR. ZENSKY:  Yeah, I think our grandchildren

11  might end up litigating that issue.  So, again, there's not

12  even a Delaware District Court or bankruptcy case that says

13  there must be a bond imposed.  And if you look at the DCL

14  objection, and I would invite Your Honor to, at paragraph 56

15  and 57, they have a heading that says "A bond is absolutely

16  required."  That's the heading in their objection.  And then

17  when you look at the authorities that follow it, there are

18  four Southern District of New York cases followed by a

19  Massachusetts case and a Texas case.  Not that those cases

20  are not respected in their jurisdiction, but there is no

21  Delaware authority, no Third Circuit authority, and the Rule

22  does not say that you must impose a bond as a condition of

23  granting a stay.  In fact, there are Delaware cases that

24  have given a stay without a bond.  And I would refer the

25  Court back to *Finova*, where the Bankruptcy Court gave a 90-

1  day stay to get to the District Court and the District Court

2  Judge extended that for another 90 days making a total of

3  six months and no bond was required.

4      If the generic type of harm that you heard about

5  today, which I believe any debtor could tell the Court

6  about; brand erosion, difficulty with retention, the things

7  that debtors find unpleasant about being in Bankruptcy Court

8  or the return to creditors, if that type of harm precludes a

9  stay, or demands a bond, then you're basically, I think,

10 rewriting the rules.  You've foreclosed the possibility of a

11 stay because that's always going to be the case.  Every

12 debtor could come into Court and put on a show, like you saw

13 this morning.  Alternatively if you impose a bond, then

14 you're basically saying I don't have discretion, even though

15 the rule gives it to me.  I must put up a bond for the types

16 of harm that I was shown today.  Either way it could make

17 and would make Confirmation Orders again essentially

18 unreviewable because you know that no indentured Trustee is

19 in a position to post a bond of any amount of money, and a

20 creditor is not going to post a billion dollar bond or any

21 material bond just to try to get an appeal heard.

22      I believe the real question the Court should be

23 asking itself is this, Your Honor, under Rule 8005.  Are the

24 debtors facing concrete identifiable harm that would solely

25 be attributable to a delayed exit, and it's a type of harm

1  that when all the equities are considered the appealing

2  creditor should have to be prepared to indemnify the company

3  for if it wants a stay?  I believe that's the right question

4  to ask.  And if the Court agrees, the only answer it could

5  give would be no, that no such type of harm has been

6  presented to you during the course of this hearing.

7            THE COURT:  Thank you.

8            MR. ZENKSY:  Thank you.

9            MR. ROSNER:  Good afternoon, Your Honor, David

10  Rosner, Kasowitz, Benson, Torres & Friedman, Law Debenture

11  and for today's purposes, also for Deutsche Bank, two

12  indentured Trustees.  I will be relatively brief based upon

13  your comments this morning and Mr. Zensky's presentation.

14            Number one, I will adopt his presentation as

15  being also part of our Motions, because the Motions are

16  separate, if that's okay with Your Honor rather than

17  repeating.  And I do want to point out for --

18            THE COURT:  I don't know how you could repeat Mr.

19  Zensky's argument, it was -- it stands by itself.

20            MR. ROSNER:  I certainly couldn't do it as well.

21            THE COURT:  Yes.

22            MR. ROSNER:  It's sui generis, as it were, and

23  terrific and accurate and should be adopted by the Court as

24  well.

25                      (Laughter)

1          MR. ROSNER:  I would say that --

2          THE COURT:  Okay, buy him a beer when we leave

3   Mr. Zensky.

4                    (Laughter)

5          MR. ROSNER:  It is Friday.  Your Honor I also

6   would like to point out that the indentured Trustees

7   similarly reduced our request on the stay for -- to a 180-

8   day stay, a six-month stay after a four-year bankruptcy

9   case.  This Court is not required to order a bond in respect

10  of claimed economic damage.  That is purely speculative.

11  And I think that is the theme and that is the key here.  Mr.

12  Zensky pointed it out.  I think the record reflects that

13  what we're talking about is mere speculation in this case.

14         THE COURT:  What if I were to tell you that,

15  based upon the testimony that was given, it strikes me that

16  much of the testimony indicates there would be some kind of

17  harm but that the proof on quantification might be a little

18  fuzzier -- and that's not a criticism because under the

19  circumstances again it's projections -- is maybe not as

20  strong.  What would I do then if I decided there should be a

21  bond?

22         MR. ROSNER:  Well I think to answer the

23  question --

24         THE COURT:  I'm not asking you to help the other

25  side exactly but I want --

1        MR. ROSNER:  No and I wouldn't take that

2   invitation.  What I would say, Your Honor, is that if you

3   have found that there is some generalized harm you think,

4   then I think the obligation of the Court at that point is to

5   step back to the balancing test as opposed to say that it

6   jumps right to a bonding measure.  You look at it and say,

7   well, they haven't really pointed out to any actual harm.

8   There is no concrete harm.  They said they don't want to

9   remain in a -- not to have an effective date for the next

10  six months and maybe there is some issue here that people

11  aren't going to get their distributions.  And I'll talk to

12  that in just a second.  That goes really to the balancing.

13  It doesn't really go to what the bond is because nobody here

14  has told you that there's any basis for a bond or how much a

15  bond can be, because there really is no bond that is

16  appropriate under these circumstances when the appellants

17  have sought a very limited stay for a very limited purpose,

18  and not only have sought to expedite their appeals but have

19  also sought to go directly to the Third Circuit on the basis

20  that we think that Your Honor should grant, and we'll talk

21  about later, so that we would cut out a middle level of

22  appeal and we could actually get this done within that time

23  period and not risk the loss of the entire ability of the

24  appellants to actually take this case to a higher Court.

25  And this case, Your Honor, you said before, I mean this case

1  has dealt with remarkably difficult issues.  It's taken over

2  three-and-a-half years.  You've issued several Opinions.

3  You've gone back and revisited certain things.  This is a

4  case that -- and I think there was the Fifth Circuit that

5  once said that Confirmation Orders cry out for appellate

6  review.  I don't know if I -- I think that's a little bit

7  hyperbolic in terms of all Confirmation Orders, but I would

8  say in this instance, after having two confirmation

9  hearings, we should get to an Appellate Court in this case

10  as to the issues that have been presented to that Appellate

11  Court.

12           And again, I do disagree with the Court's

13  holdings in certain instances and those are the ones that we

14  are appealing.  The other ones we are not.  And to not say

15  -- to say that because some -- the record reflects some kind

16  of a little bit of harm, but we know that a bond is going to

17  stop the ability to get to appeal in that balance, I would

18  say the Appellants have to win that balance, Your Honor.

19  And that's how I would propose to answer that question.  And

20  in talking about the harm I would tell you that the bond

21  cannot be issued by this -- it cannot be required by the

22  Court, and it's unreasonable to even assert that it should.

23  To ensure against the entire value of a reorganized company,

24  an operating company to ensure against equity risks equal to

25  a hundred percent.  I think Mr. Kurtz said really the rule

1    -- he said the rules say technically that it should be $4.5

2    billion.  There is no rule, first of all, and it certainly

3    doesn't say that.  It wouldn't say that if there were a

4    rule.  And there's no basis for a Court to actually look at

5    the equity risk.

6              And, you know, we spent a lot of time sparing on

7    this idea of is there a liquid market, is there not a liquid

8    market for selling the bonds.  And, you know, I was

9    scratching my head just trying to figure out well isn't that

10   point?  What does owning a share of stock in anything give

11   you the right to do?  To me it only gives you the right to

12   do two things; it gives you the right to hold the stock

13   because you think it's going to appreciate in value or it

14   gives you the right to sell the stock because you think it's

15   already at its optimum value or you don't want to lose any

16   more money.

17             THE COURT:  And occasionally both.

18             MR. ROSNER:  And occasionally both, that's

19   correct.  And here I think 99% of the stock -- I think in

20   one of the papers it says 99% of the equity is going to be

21   held by the senior lenders and it's going to be a control

22   group.  So I don't know how relevant voting is to a bunch of

23   other creditors other than the senior lenders and the senior

24   lenders are controlling along with the debtors and the

25   committee the Plan right now.  So I don't think they have

1   much of an issue with voting or having their views expressed

2   as to what Tribune should do.  So if you can either hold or

3   you can sell, then can you do that now?  Well, yeah.  If

4   there's a stay, and even if there's not a stay, you just

5   hold onto your claim and now you're holding the stock.  If

6   you want to sell the stock, then you sell your claim and now

7   you've sold the stock.  So you're in exactly the same

8   position.  We can quibble as to whether the differential

9   between the market value and the plan value is really what

10  something should sell at.  Your Honor the cases are legion ,

11  particularly in this circuit and other ones.  And I think

12  common sense indicates that a market is what sets the price,

13  not what a bunch of experts do sitting in a room.  No

14  disrespect to the experts, but Your Honor has done a number

15  of valuation trials and has spoken to the point that you're

16  listening to experts talk about the valuation of a company

17  using midpoints.  The market uses a different analysis.  And

18  the market is very liquid, and you can sell your stock or

19  you can hold you stock in this company right now.

20          So getting back to the actual harm point, Mr.

21  Kurtz said a very interesting thing that I hope the Court

22  took note of, we certainly took note of, when he talked

23  about his testimony in *Charter*.  And in *Charter* he said that

24  they had actual harm there.  In *Charter* when he was

25  testifying as to what -- why he didn't need to do the put

1   option was because they had actual harm there.  So he was

2   able to testify to the actual harm.  We didn't need to --

3   and here's his quote "pile on."  They didn't need to "pile

4   on" with the put option because they had actual harm.  Well

5   here we don't have the actual harm, so all we have is the

6   piling on.  And that piling on is called a put option, and

7   the put option was invented at Lazard, you know.  Now I

8   don't know if they've patented it, but it's certainly the

9   first time that it's ever been used.  And he has testified

10  and it's a truism and we all know it that it was invented

11  for this case.  I would submit, I would argue to Your Honor

12  it was invented for this case because there is no actual

13  harm.  There is no reason for a bond.  So they had to come

14  up with a big, big number, a telephone number that will

15  cause these appellants to go away and risk losing their

16  appeal because they can't post it.  They know the indentured

17  Trustees can't and they know from discussions with Counsel

18  and discussions in the Court that the parties will not --

19  that Aurelius will not be posting the bond and none is

20  necessary.  So that's why they came up with the put option.

21  Never used, not subject to peer review, no peers have ever

22  accepted it.  No Court has ever accepted it.  This Court

23  will be on new ground.  It will be yet another novel

24  decision for this Court to step out and say that the put

25  option is a reasonable valuation that I should make, a

1  reasonable number that I should use in determining a bond

2  which is calculated on the basis of a risk that couldn't --

3  nobody could possibly testify to; that the risk is that in

4  the next six months Tribune is going to liquidate and the

5  equity value is going to be zero.  Six months this company

6  goes away and that's what the put option is supposed to

7  quantify.  So we will tell Your Honor that that is something

8  that should be discounted in its entirety.  And --

9          THE COURT: I will tell you, Mr. Rosner, that my

10  immediate reaction is from a couple different levels.  But

11  number one, I don't think I'm -- I know I'm not eager to

12  make law on that topic in a case in which the Rule 26

13  requirements do not apply and in which the methodology has

14  not been fully explored or adopted by admission anywhere

15  else.  So I -- well, that's how I feel at the moment.

16          MR. ROSNER:  Thank you Your Honor.  And with that

17  I would just like to -- I'd like to just close by just doing

18  a little bit of arithmetic and then I'll sit down if that's

19  okay with Your Honor.

20          THE COURT:  And I say that having the greatest

21  respect for Mr. Kurtz and for Lazard.

22          MR. ROSNER:  Thank you Your Honor.  I'd like to

23  close with just a little bit of arithmetic and then --

24          THE COURT:  Go ahead.

25          MR. ROSNER:  -- and then I'll sit down.  Can I --

1   Mr. Bendernagel can I ask you to put Kurtz 6 back on the

2   board?  Is that all right?  I wanted to put this up on your

3   screen as well.  Do you have Kurtz 6 -- do you have it

4   handy?

5           THE COURT:  I do.  I have them all.

6           MR. ROSNER:  That's it, okay, Kurtz 5.  Now Mr.

7   Kurtz testified on the stand today, and I think he did in an

8   earlier declaration, that he thought the bond should be 1.5

9   billion, but that was on the basis of the two years.  And he

10  I think admitted that for purpose of this chart the

11  sensitivity was to bring it back to the six months after we

12  had reduced our request to the six months.  So I'm focused

13  on column number one -- I mean after the explanations, but

14  the six-month column that yields, under his analysis if you

15  were going to accept his analysis on all these numbers, it

16  would yield the maximum of $635 million.  Now if you

17  discount to zero as we do, and we hope Your Honor will, this

18  equity delay idea that is the put, that's $505 million right

19  here of the 635.  And as I said before, there is really no

20  equity delay.  Sell or hold, you do what you want to do.  So

21  if you take out just that 505, that brings you down to $130

22  million.  So if you move up one line above the equity delay,

23  you have the debt amount delay which is the $37 million.

24  Now Mr. Kurtz also testified that by virtue of there being

25  no interest that is being paid, that that's essentially a

1   wash and, therefore, you can zero out the $37 million and

2   that takes you from 130, you subtract out the $37 million

3   and then now you're down to $93 million under his analysis.

4           Now Mr. Kurtz also testified that by virtue of

5   staying in bankruptcy there's a $240 million gain to the

6   company by virtue of remaining a S Corp and not a C Corp.

7   That's the tax benefit that he quantified of $240 million.

8   Now if you have $93 million as the amount that he has said

9   should be the estimated harm, and then you add to that $240

10  million, well that actually puts you in the plus column to

11  $147 million.  It shows not only no bond but that the

12  company is better off by $147 million.  Now even from that

13  $147 million I have not yet taken the top two columns, the

14  incremental Chapter 11 expenses and the distributable cash

15  delay.  Now if you just look at the first one, Mr. Kurtz

16  testified that that $28 million number was based upon 4.7

17  million times a certain number of months, times our six

18  months.  He also testified what we all know is kind of

19  obvious is that we're really talking about the incremental

20  costs, even though he uses the word incremental, the

21  incremental costs or what costs are going to happen over the

22  next six months that wouldn't happen over the next six

23  months if there was a stay.  And he says that it's basically

24  paying the creditors' committee and paying the senior

25  lenders because there's a custom that that's what you do.

1    I'm not really sure about the issue on the senior lenders.

2    My understanding of the settlement was that their fees get

3    paid by virtue of the Plan.  And if the Plan is ineffective,

4    I'm not sure why they have to pay the senior lenders' fees.

5    I could be wrong about that, but I thought that was part and

6    parcel of the settlement.  So I'm not even sure that that

7    would even be part of it.  But I'll assume that the

8    creditors' committee's fees would be part of it.  But he

9    said that you would take out roughly $2 million, and so it

10   was actually about $2.7 million, let's say, that would be

11   associated as an incremental expense.  And what he didn't

12   deduct from the $2.7 million would be costs that the company

13   is going to incur over the next six months by virtue of the

14   fact that it has a lot to do, even as a company that has hit

15   its effective date.  So now I don't know what that number

16   is.  I know that these cases go on in their -- they have a

17   life after confirmation effectiveness dealing with claims

18   objections going on for, you know -- you will be seeing

19   lawyers from this case for awhile.  You won't be seeing this

20   many lawyers and, in fact, they could probably reduce the

21   incremental Chapter 11 expenses by husbanding their

22   resources a little bit.  But that's another issue.  But it's

23   going to be something less than the $2.7 million.  And so if

24   you called it two, you would then jus be taking off, you

25   know, two times six is 12 so you would be then taking off

1  another $16 million and so now you're up to $163 million.

2  And the distributable cash delay was, by the way, if you

3  gave them full credit for the distributable cash delay

4  you're still only at $100 million.  But that's to the good,

5  that's not to the bad.  That's not a bond of $100 million,

6  that's a benefit of $100 million.  And the entire

7  distributable cash delay is predicated upon everybody

8  walking out of this Courtroom and investing their money at

9  7%.  And, you know, we've all talked about that.  It would

10  be wonderful in our economy if that were possible for

11  everybody to do.  It's not possible for everybody to do.

12  It's a number that was picked.  He -- Mr. Kurtz I think

13  intelligently didn't go with the 20% that he said that some

14  hedge funds make.  I think he also said he wasn't going to

15  go with the .1 basis point, which I think is reasonable, but

16  it's not 7%.  But it doesn't really matter.  If you just cut

17  it in half and called it three-and-a-half you're over 100

18  and -- you're almost at $200 million that the company

19  actually benefits, using their math.

20            THE COURT:  So the argument is that it's

21  beneficial to have an appeal after confirmation of the

22  Chapter 11 plan under these circumstances?

23            MR. ROSNER:  My argument -- no my argument --

24  well it's beneficial to us to have that appeal because we

25  hope it's going to prevail.  But my argument is is that no

1   bond is required because there's been no damage that --

2   there's been no harm that's been testified to on a concrete

3   basis.  And even on a theoretical basis, the numbers

4   indicate that no bond is required under the very testimony

5   that they've put on for Your Honor this morning.  So to

6   bring it to conclusion, I would submit to Your Honor that

7   the loss of our appellate rights -- the risk of loss of our

8   appellate rights because I, like Mr. Zensky, do believe that

9   the eggs can be unscrambled or submit that the eggs should

10  be unscrambled, and particularly on an unfair discrimination

11  issue that we'll be talking about in a little while.  But

12  the risk of loss of an entire appeal after four years on the

13  basis that creditors may not be able to get their

14  distributions for a few months, even if they're even able to

15  get those distributions based upon whenever the FCC acts,

16  the balance of that harm has to fall in favor of the

17  appellants.  And imposing a bond is the same thing as saying

18  that there will be no appeal -- or that there's a risk that

19  you have no appeal.  If you impose a bond, then there is no

20  stay and the appellants bear all of the risk of appeal in

21  this case.  So with that Your Honor, that's all I have for

22  you.

23          THE COURT:  Thank you.

24          MR. ROSNER:   Thank you.

25          MR. NOVOD:  Good afternoon Your Honor,  Gordon

1  Novod, of the law firm of Brown Rudnick, on behalf of

2  Wilmington Trust Company, the indentured Trustee to the

3  PHONES.  I rise simply to join with the comments that have

4  been made to the Court today by both Aurelius and also Law

5  Debenture.  We filed the joinder in reply in addition as

6  well, and I'm sure I'll have more to say on the second

7  matter before Your Honor today.  But I just wanted to simply

8  rise for that.

9          THE COURT:  Thank you.

10          MR. NOVOD:  Thank you Your Honor.

11          MR. BENNETT:  Good afternoon Your Honor, Bruce

12  Bennett on behalf of all DCL proponents responding to all of

13  the Stay Motions.  And I first want to make sure I observe

14  that I was sandbagged by an unrealistic time estimate, so

15  I'm probably going to take a little bit more than I

16  expected.  Your Honor, I have a combination of organizations

17  here.  One revolves around what our opponents did and one

18  revolves around some points I want to make, so forgive me if

19  I skip around a little bit.  I also want to respond to some

20  of the questions you seem to be having.

21          I want to start by discussing very briefly

22  vocabulary.  Your Honor has -- there's two competing

23  vocabularies and Your Honor is going to have to decide kind

24  of early on which one is right.  The vocabulary on that side

25  of the room, I'm pointing to the movants, is seeking in

1 terms of calibrating the bond and deciding about whether

2 there is harm.  They want to talk about harm, demonstrated

3 concrete harm.  I think you heard Mr. Zensky use those

4 words.  Our vocabulary is different, of course, and we are

5 talking about protection, security for potential harm.  And

6 we can look two places to figure out whose vocabulary is

7 right.  One place we can look at is the cases, and they've

8 got the word potential and harm which might occur all over

9 them.  But I actually find that sometimes we can find the

10 correct answer to these questions by examining situations

11 where we know the answer.  And one of the situations where

12 we know the answer is the bond that has to be posted when

13 there's a judgment and someone is seeking a stay pending

14 appeal.  Now we all know the answer to that one, right?

15 It's a hundred percent of the judgment plus a healthy

16 reserve for post-judgment interest and appellant costs,

17 whatever they turn out to be.  Have we ever heard of a

18 hearing where people say, oh, the judgment debtor is

19 Berkshire Hathaway.  Don't worry, they're good for it.  Or

20 because it's Berkshire Hathaway, it's only 80% because how

21 bad could it get for Berkshire Hathaway?  Do we have any

22 concept of we're now going to figure out the size of the

23 bond based upon not the potential harm, which is losing the

24 whole judgment, but some actual precise estimate of harm?

25 We have no such concept.

1          Secondly, we were told by Mr. Zensky that the

2     bond ought to be confined to the actual harm that is caused

3     by the stay.  Well, wait a second.  Where is that concept in

4     the context of the bond we all know about, which is the bond

5     secures the judgment payment in full no matter what happens?

6     If the judgment debtor suffers a flood and the loss is

7     because of a flood, not because of anything that happened in

8     the case, what happens?  Bond pays.  So the bond is a

9     protective device for any loss that results as a consequence

10    of the appeal and the fact that the Court stopped

11    collection, stopped enforcement of its Order at the moment

12    when the Plaintiff -- when the successful Plaintiff or the

13    successful party got his or her judgment.  That's our

14    baseline.  Everything we know about bonds I think starts

15    with that, the kind of bond we get in the ordinary

16    situation.  And now we reason from that analogy to apply

17    what we should be doing in this particular case.

18          The second major concept I want to talk about is

19    the whole issue of burden and how that ripples through a

20    number of different things that we've got going on here.

21    Stopping place number one, the FCC.  Your Honor is right the

22    FCC is a black box.  Excuse me a second.  They seem to like

23    it that way.  And so we don't have any exact information

24    about when we are going to get a ruling from the FCC.  To

25    bring Your Honor up-to-date, colloquially based upon the

1  latest information I've heard is that they shocked people

2  when we heard the staff actually started working when Your

3  Honor had their -- rumors, innuendo, and some kind of direct

4  communications -- that they actually started doing work when

5  Your Honor issued your most recent confirmation Opinion,

6  they didn't wait for your Order.  The Opinion apparently

7  triggered them doing some work.  So whether the three- to

8  six-month estimate from that point of time is right or is

9  not right, nobody knows.  But here is the point.  If you

10 read the cases, it is the burden on the person seeking the

11 stay without a bond to demonstrate that a bond isn't

12 necessary, that loss will not occur; that there is no

13 potential loss.  So if their argument is there can't be a

14 loss because you can't go effective anyway because the FCC

15 is going to take a long time and they can only say it, they

16 can't prove it, then it doesn't count.  And Your Honor has

17 to assume in a vacuum that the FCC isn't going to be a

18 material barrier and that the Plan go effective and that

19 it's not a mitigating factor.  It wasn't proved.  Another

20 point on burden, and I'm going to come back to this with

21 more detail later and this is the one aspect in which I'm

22 going to be a little bit duplicative.  As Mr. Kurtz said on

23 the witness stand and in his declaration and we see in our

24 papers, we offered three alternative calculations for how to

25 deal with the equity risk, just the same as the collection

1  risk in our kind of low-star ordinary bond concept.  We said

2  look at the "entire amount of the judgment."  We didn't talk

3  about the debt, although debt could be at risk too, we

4  talked about the total equity value.  Mr. Kurtz testified

5  quite rightly, not likely, but still possible.  By the way,

6  do you have a reported Decision that can tell us how

7  possible -- that it's really possible?  *Delphi.  Delphi* had

8  a Plan, hundred cent dollars.  All unsecured credits,

9  roughly $6 billion in claims.  It wasn't because of an

10  appeal but there was delays in the case and fights in the

11  case.  When the time came to Plan confirmation, unsecured

12  creditors got a contingent payment that could conceivably be

13  worth 4.5% to 5% on the dollar and it has not paid a nickel

14  yet.  So can there be [indiscernible] cases and bankruptcy

15  cases having billions of dollars of consequence?  There

16  could be.  That's potential harm.  Is it really likely?  We

17  don't know, we don't think so, but we cannot say with

18  certainty.  So that was one measure.

19      The other measure was look at the difference

20  between the organization and liquidation value.  And let me

21  offer a third one that was more -- that was more

22  conservative, a way to come to a smaller number.  I'll talk

23  more about that and the concept of insurance and how that

24  might relate to the concept of protection.  But if Your

25  Honor rejects the last one, you've been left with two that

1   have been proved with evidence.  You have been left with no

2   other.  This is not a zero.  The idea that this is a risk

3   not worthy of protection is completely inconsistent with

4   what the cases say about potential loss and completely

5   inconsistent with everything we know about the simple bond

6   case and what the bond is supposed to protect.  Again

7   responsive to something that was said before about the vote,

8   yes with equity comes the vote, comes control, will come a

9   new board of directors selected by and responsive to the

10  people whose money is really at stake, not the people

11  installed by the ESOP which is no longer in the money.

12  That's a really big deal.  And I'll come back to it when we

13  talk about the factors, public policy in particular.  But

14  yes, there is another huge difference about buying and

15  selling.  I'll come to another one in a minute, too.

16          Another topic responsive to what we just heard.

17  This whole 180-day offer, how does this really work?  We're

18  going to have some, I think their assertion is and I'll

19  explain why this is not necessarily right, smaller bond for

20  six months and then we're going to get another hearing in

21  five-and-a-half months, or at least there will be a

22  possibility.  I mean it could be that everything is resolved

23  within the six month period of time and all we have to

24  figure out is how much loss really did occur as a result of

25  the delay in the event that it's affirmed, or we get to

1   spend many more years with each other if it turns out in the

2   very unlikely event that it's going to be reversed.  But

3   let's say we're not done in 180 days, as all of the actual

4   evidence Your Honor has seen so far seems to suggests, that

5   we're not quite going to make it to the finish line in six

6   months, not on a record this big and this deep.  What are we

7   going to do then?  Well there's going to be some harm that

8   we'll know about by 180 days and then we'll have the next

9   180 days.  So are we going to have basically a certain

10  amount of bond which we'll have to have a hearing before

11  Your Honor with evidence that's going to have to be --

12              THE COURT:  Six months from now?

13              MR. BENNETT:  Five-and-a-half probably because --

14              THE COURT:  I was thinking that might be before

15  some other Court.

16              MR. BENNETT:  Well if the stay was issued by you,

17  I think, and the renewal would have to be here.  But maybe

18  that's another fight that would have to be had, and perhaps

19  there isn't agreement as to where that would occur.  And

20  maybe it comes back to you and it has to go up again.  It's

21  another unresolved question.  But there's certainly the

22  unresolved question of what are we going to do then because

23  we'll be able to measure, presumably, with some level of

24  procedure that satisfied the parties in your Court, what

25  losses were really incurred so far because we have to keep

1  protecting those.  And then we have to take a look at what's

2  the incremental losses for whatever period is next proposed.

3  I would basically borrow a page from Mr. Zensky's book with

4  respect to the testimony of Mr. Kurtz and ask have we ever

5  seen this rolling stay, multiple decision, several different

6  tiers of protection in an effort to get the size of the

7  protection that's really legally required down for a short

8  period of time?  And I confess, I've read a lot of cases on

9  the issues of bonds.  I've not seen it before.  Moving more

10  -- oh more point.  Mr. Zensky confidently told the Court

11  that there was no authority in this circuit or district or

12  in the Delaware Courts that says a party seeking a stay

13  pending appeal has the burden to prove why the bond should

14  not be the full amount of the potential harm.  Actually

15  there is.  It's recent.  It's the *W.R. Grace* District Court

16  Opinion.  It's cited in our paper at paragraph 59, page 31.

17  The cite is 2012 U.S. District LEXIS 88887 at *23.  It

18  reaches that result by citing *Adelphia* -- I'm not sure --

19  I'm not sure if it cites *Adelphia*, it may not.  I'm missing

20  my own quote.  So the standard that we supported also with a

21  series of other cases from other districts was also stated

22  in the *W.R. Grace* District Court case.  I'm not going to get

23  into metaphysics as to whether that's just binding or

24  suggestive to Your Honor, but it certainly is here.

25          THE COURT:  Well I have that Opinion in front of

1  me.  It's the one that was filed on June 27th of this year.

2          MR. BENNETT:  I don't have a cite that tells me

3  that Your Honor.  I apologize.

4          THE COURT:  And interestingly, among the things

5  it says as to the actual and potential harm is that -- oh

6  it's backwards, okay.  I understand, go ahead.

7          MR. BENNETT:  Okay.  So in a way starting again,

8  we agree that appeal is not a dirty word.  The difference is

9  is that after a judgment has been entered new instruments

10 arise as a result of that judgment that have to be

11 protected.  And the -- both the tests for the issuance of a

12 stay and the standards for the determining amount of a bond

13 are responsive to those interests.  We don't see

14 *Philadelphia News* as being terribly responsive to anything

15 that's before you today.  And I say that for two reasons.

16 First of all, that what *Philadelphia News* says is that not

17 all appeals are equity moot -- I'm going to make -- I'm

18 seizing on the same point as Your Honor but with a slightly

19 different emphasis.  And so -- and they said clearly in that

20 case it just wasn't.  And secondly, equitable mootness law I

21 don't think the Court said it changed it, it just said look

22 around and try hard to see whether effective appellant

23 relief could be granted.  And in that case it was the

24 issuance of an allowance of claim in a class where there was

25 no limit on the claims that could be allowed.  So I don't

1    see the -- every Third Circuit case is important.  I don't

2    see that case as changing what we happened -- what happened

3    here.

4              THE COURT:  I tend to agree.

5              MR. BENNETT:  I was going to skip over completely

6    the issue that Your Honor said you already decided with

7    respect to the -- whether or not there was a substantial

8    possibility prevailing on appeal.  Mr. Zensky addressed it

9    nevertheless, and I just feel compelled to point one thing

10   out from memory which is that when -- right now Aurelius

11   wants to characterize this is as a series of legal questions

12   but when they filed their Notice of appeal and their

13   Statement of Issues there was one issue which was whether or

14   not the settlement was properly approved under 9019 as being

15   reasonable.  I don't believe that that is a pure question of

16   law.  That is maybe a mixed question of law, in fact, but I

17   think it is in fact mostly factual.  And I do think that at

18   the end of the day if that's the question, which is the

19   question they asked that the Appellate Court focuses on, is

20   going to have a deferential standard of review and not a de

21   novo standard.  That's it.  I'm not talking about that

22   anymore.

23             The next one is irreparable harm.  And Your Honor

24   has previously held, I think twice at least that I could

25   find, and the other Delaware Courts were the same, that the

1  risk of equitable mootness which really is the risk that an

2  Appellate Court will find that the egg can't be unscrambled

3  for one reason or another is not a form of cognizable,

4  irreparable harm.  We actually do have an example of a case

5  of what Courts are talking about when they mean irreparable

6  harm.  I lost it with Mr. Johnson's help.  It's the *Dodgers*

7  appeal.  And the -- in the Dodgers' appeal, and by the sway

8  it emblematic of some of the other cases, the Court said the

9  irreparable harm it was focusing on there was not a mootness

10  problem, but a problem that the asset involved, which was

11  their media rights for a specific baseball team called the

12  Dodgers, might get away from the appealing party.  And so

13  it's not -- I think the distinction is the ability of

14  physically being able to have relief, not legally the relief

15  being foreclosed for a separate legal doctrine reason like

16  equitable mootness.  And in the Dodgers' case the reason was

17  we -- they were dealing with a unique piece of property.

18  There was another case involving real property owned by the

19  government that someone was claiming.  I can't remember its

20  name, but makes the same distinction.  So since, in this

21  instance, the fight is just over money the existence of a

22  separate doctrine of equitable mootness can prevent the

23  ultimate granting of effective relief, but it can't meet the

24  irreparable harm component of the test.  And so we think

25  they haven't met that test at all.  And under the cases that

1   say you've got to have something in all of the four

2   categories, that alone is probably a reason why the stay can

3   and should be denied.

4          The second standard is public interest.  I

5   mentioned on the -- Your Honor said that you were kind of

6   roughly in equipoise, to use a word that we've used in other

7   context in this case --

8          THE COURT:  Why not?

9          MR. BENNETT:  -- on balancing the issues, the

10  appellant's right to have appellate review and the

11  prevailing creditors' and debtors' right to have their plan

12  implemented, I would submit that there are a couple of

13  things that should knock you over into the category that the

14  public interest test is not satisfied here.  I do think that

15  there is a significant public interest in having business

16  enterprises run by the persons who have a real economic

17  stake in them through their ownership of stock and through

18  their board designees.  You don't have to take my word for

19  it.  There's Delaware case after Delaware case after

20  Delaware case that says that.

21          And secondly, Your Honor, the fact that we have a

22  taxpayer or a non-taxpayer that is ready, willing and able

23  to pay taxes is something that is also in the public

24  interest.  And so I think in this particular instance, on

25  the specific facts of this case, Your Honor can hold that

1  while in other circumstances it might be a close call.  In

2  this circumstance, I don't think it is.  The public interest

3  does not suggest that a stay should be entered in this case.

4        Next I'm going to turn to harm to persons other

5  than appellants.  And Your Honor knows this overlaps very

6  heavily with the bond discussion, so I'm going to, you know,

7  kind of drift back and forth between the two and try to

8  cover points that are relevant to both.

9        First of all, I want to remind the Court of the

10  things I started out with, which is what's the right

11  language, "might" or -- harm that might occur, harm that

12  might possibly occur or specific harm.  Let's remember that

13  because it's going to ripple through everything we're about

14  to say.

15        And the second part is where's the burden.  And

16  this is one of those circumstances where the burden is

17  squarely on the side of the person seeking the stay, and of

18  course, as Your Honor knows, they came here with no evidence

19  and lots of criticism of the evidence you heard.  And I

20  think we also have to say that there is the -- Mr.

21  Hartenstein's testimony, if I had to summarize it in a

22  sentence is that there's this overriding shadow of the

23  bankruptcy case that affects everything they do.  And the

24  other -- his second sentence was, and we finally established

25  some momentum and he's probably tried to use that momentum

1  to solve some of his problems, and he just doesn't want to

2  see another setback.

3         THE COURT:  Mr. Bennett, is there anyone in the

4  courtroom and outside of the courtroom who has an interest

5  in this company who didn't expect an appeal?

6         MR. BENNETT:  Your Honor, I suspect everyone here

7  expected an appeal.  I think, Your Honor, few people expect

8  a free stay.  I think few people predict -- expect any stay

9  in a case of this size.

10         THE COURT:  But --

11         MR. BENNETT:  I can't remember one in my career,

12  and I think that's really the question, is whether any --

13  not whether anyone expects an appeal.  People -- yes, of

14  course.  People expect an appeal.  We know what our

15  adversaries are going to do.  They're going to do everything

16  -- part of their job, part of my job is to -- is to protect

17  where we are, but I don't think the relevant question that

18  describes what's happening in the marketplace has anything

19  to do about appeal expectations, but it does have to do with

20  stay expectations.

21         THE COURT:  Okay.  So there would be a difference

22  in the reaction of others who deal with the debtor, which

23  was the concern of Mr. Hartenstein, which would be different

24  in a case in which there's an appeal with the stay that's

25  not free and a stay that's free.

1              MR. BENNETT:  I -- Your Honor, I --

2              THE COURT:  Do you understand my question?

3              MR. BENNETT:  I think -- no, I think what I will

4    say -- I don't think it's the right question.  I think the

5    question is that people will be not concerned about an

6    appeal if there is no stay.  If there is a stay, whether

7    because Your Honor orders one without conditions or if the

8    conditions are met, it will be a big problem for this

9    company because they will still be in bankruptcy.  And I

10   think the press release, which I can't believe the

11   coincidence in timing.  The press release is emblematic of

12   what at least my clients, not just this debtor, but every

13   client I've ever had tells me happens.  It's not that the

14   company doesn't know how to explain that they've got the

15   right to operate in bankruptcy cases.  They can do

16   everything in the ordinary course of business, look at my

17   cash balance.  They know they can do that.  They know how to

18   do that.  We help train them.  P.R. people help train them,

19   and they learn all the arguments.  The problem companies

20   face are stuff like this; that a competitor basically

21   highlights bankruptcy as a symbol of financial weakness, as

22   a symbol of desperation, as a symbol of something in an

23   environment where you're not in the room, can't respond,

24   can't explain.  Sometimes they ask you, sometimes they

25   don't.  It creates a -- clients will tell you, clients may

1  have told you when -- it creates a flow over everything.

2          THE COURT:  Clients and litigants have told me

3  that.

4          MR. BENNETT:  I believe it to be true.  I believe

5  it's also it depends on the kind of business you're in.

6  I've become convinced over time that department stores can

7  get through it because people don't really care who sells

8  them sox.  But I think in other environments where the

9  relationships are longer term like content deals, which are

10  very long term involving, in particular, Tribune,

11  advertising fields where people establish a brand on a

12  platform.  I think they fall on the other end of the range,

13  but that's, once again, you have no evidence of that other

14  than what Mr. Hartenstein said, and for better or for worse,

15  he took that job.  And he is telling you what he's dealing

16  with every day, and he brought tangible unbelievably current

17  evidence of what it's like.  And that's going to continue if

18  there is a stay.  And it's a harm that the company has to be

19  protected against, the cumulative impact of all that if it

20  turns out that an appeal is not well founded, is something

21  the company is entitled to protection from, even though it's

22  just potential, even though it might occur because that's

23  the standard in this context.  We're talking about creating

24  enough security to be available if potential harm or if harm

25  that might occur is ultimately realized.  That's the

1   exercise.

2           THE COURT:  So let me ask this question.  Let's

3   say the movants here, because two are indentured trustees

4   and claim credibly, I think, that they are unable to post

5   the bond because there's no well of cash into which they can

6   dig to pay for one.  And while -- I think Mr. Rosner said

7   this, but Aurelius hasn't.  They're unwilling or unable to

8   post the bond, and the way funds are sometimes set up or

9   managed, and I don't know how the Aurelius interests are set

10  up.  There's not the opportunity to call for contributions

11  additionally from investors to pay for a bond.  So if you,

12  for the moment, assume, for purposes of the question, that

13  the litigants who are seeking -- who filed appeal say they

14  cannot post the bond, doesn't that effectively deprive them

15  of their appellate rights, which they would otherwise be

16  able to exercise if I impose a bond?

17          MR. BENNETT:  First of all, I will say that your

18  -- the premise is not supported by the evidence, and I want

19  to talk to you about all kinds of reasons why that premise

20  might be -- might not be true --

21          THE COURT:  Well, there is no --

22          MR. BENNETT:  -- but accepting it.

23          THE COURT:  There is no evidence and that's why

24  it's -- there's argument or statements.

25          MR. BENNETT:  But we can find out the answers to

1  all those questions fairly easily.  The -- but the answer

2  is, yes, it's one of the really unfortunate parts of our

3  judicial system that some things don't get judicially

4  reviewed that should.  It's a problem.  We haven't quite, I

5  don't think, as a country, as a judiciary, law school

6  professors, we haven't figured that out because in the

7  context of a -- in various contexts someone loses.  They

8  can't get a stay or they can't put up a bond, and the

9  judgment goes ahead and is implemented and some court some

10  day says either I won't review it or I'm reviewing it, and

11  those guys are right, and tough luck.  I had a case like

12  that.  That's the way West Point ended, you were right, but

13  tough luck.  And that's not good, but that is reality in our

14  judicial system.

15          Now let's go back and talk about the kind of facts

16  we ought to explore before we decide that indentured

17  trustees can't and Aurelius can't.  And the PHONES

18  indentured trustee can't.  The reason why Deutsche Bank, Law

19  Debenture and I think -- I don't know about Deutsche Bank,

20  but Law Debenture and Wilmington Trust are represented by

21  the firms that they're represented by because holders gave

22  direction letters to the indentured trustees and when they

23  do that they give indemnities and so --

24          MR. ROSNER:  Your Honor, I'm going to interrupt at

25  this point.  Mr. Bennett's been testifying for a while, and

1  we've sat here and listened to it, but right now he's

2  testifying about something he doesn't know about, and he's

3  actually testifying inaccurately.  I'm not here operating

4  under a direction letter.  So maybe we should just stick to

5  the argument and not try to introduce facts that are not in

6  evidence and that Mr. Bennett has no basis to testify about.

7          MR. BENNETT:  Well, the record's empty, and they

8  have the burden so I'll just leave it at that.  So I think

9  Your Honor must assume that they have the capability of

10  putting up a bond because there is no one who has put any

11  evidence to the contrary.  And I'll move on.

12          Okay.  So all of the things that Mr. Hartenstein

13  talked about are potential harm that can have potential

14  financial consequences that may or may not be capable of

15  proof whenever these appeals are over.  The fact that

16  they're there means we all have to make some kind of an

17  estimate to make sure that those claims are secured.  Again,

18  I go back to our baseline, which is everything's covered.

19  We've walked in here and said we're not -- we're trying not

20  to seek the maximum because that's a really, really huge

21  number, but the fact that we're not trying to take the

22  maximum doesn't mean we're not entitled to be as completely

23  covered as is possible for all "mights" and all potentials.

24  And all of Mr. Hartenstein's parade of issues are things

25  that are -- that have to be protected.

1        I want to get to the next point, which is about

2   this whole business about why don't you just sell the whole

3   market volatility point.  There are, of course, to be two

4   answers to that; one you've heard over and over again.  I

5   don't really think I have to repeat, which is if you sell

6   right now, you're giving up somewhere between 350 and $500

7   million of potential reorganization value, maybe more, maybe

8   a little less based upon the Court's finding of value.  But

9   there's actually a much, much, much stronger answer, and

10  that is even if Oaktree were to sell tomorrow, they're going

11  to sell to someone.  That person is a creditor.  That person

12  is entitled to protection too.  The people who buy tomorrow

13  are entitled to be protected by a bond and their interests

14  are relevant to a stay decision as much as the person

15  holding today.

16        THE COURT:  Yes, but if they buy the day after a

17  stay is imposed, you know, they buy it with all the hair on

18  it, and they price it accordingly.

19        MR. BENNETT:  Well, then if that's the way the

20  world works and there's going to be a lot of -- there

21  shouldn't be hair.  That's my point.  There should be enough

22  protection so that there is no hair.  If we leave here and

23  there's hair, we didn't do our job because we're supposed to

24  protect the result that they were supposed to be able to get

25  today if there wasn't an appeal.  And so you can't -- I've

1  never seen an assumption of the risk concept alleviate a

2  bond requirement if the judgment changes hands.  Judgments

3  change hands too.  And I don't think we should even be

4  appositing a scenario where there's a big drop.  If Your

5  Honor thinks a stay is appropriate, but there's a big drop,

6  something really bad happens here.  There shouldn't be.

7  Everyone should be protected from any harm that might occur

8  by reason of an appeal, if the appeal is not ultimately won.

9  It shouldn't cause a drop.  And if they think it does,

10 there's not a big enough bond or the protection failed in

11 some meaningful way.

12        Okay.  I agree with Mr. Zensky that the important

13 rule is Rule 8005, and I focused on the same part of the

14 phrase he does, which talks about "on such terms that will

15 protect the rights of all parties in interest".  It doesn't

16 say that "may protect".  It doesn't say "likely to protect".

17 It doesn't say "almost protect".  It says "protect".  And as

18 I said before, that's reinforced by the fact that it's their

19 burden to demonstrate a bond isn't necessary, and it's

20 reinforced I think extremely importantly by the baseline

21 case, which is what happens when there's a money judgment,

22 and the bond is 100%.  It's 100% no matter what.  There's no

23 effort to predict how much loss there is.  And so it works

24 together if the baseline is you protect everything, and you

25 put the burden on the movant seeking a stay to say why a

1   bond isn't necessary or the bond should be less, you've got

2   a system that is in fact designed to make sure that the

3   appellees are protected, and that -- in Your Honor's

4   hypothetical, hair doesn't grow on the judgment while a stay

5   is in place pending appeal.

6         Let me talk a little bit about the different

7   categories and the objections you've gotten from different

8   categories.  The first is the assertion that the assumed

9   greater return that Mr. Kurtz used is too high, and I think

10  Mr. Kurtz said quite correctly he doesn't know whether it's

11  too high or too low, but he's pretty sure it's more than a

12  basis point.  And this, by the way, the ability to earn

13  money on money that you get is exactly the same as the bond

14  that was put in place in *Adelphia*.  The bond that was put in

15  place in *Adelphia* was to protect the residual claimants from

16  the fact that the money was going out the door, the interest

17  payments.  Here we are seeking to protect the residual

18  claimants from the fact that their money is locked up and

19  they can't get it out.  It's the same protection of the same

20  party.  It wasn't -- the bond wasn't to pay the interest.

21  It was to protect the people who were suffering because the

22  interest was being paid.  The bond here is protecting the

23  people who aren't getting the benefit of interest, the

24  residual claimants who are being hurt by the paralysis that

25  would be caused by the stay.

1          THE COURT:  But the response on the other side is,

2    but that doesn't mean they should be treated as if they

3    invested in junk bonds.

4          MR. BENNETT:  And we're not saying they should be.

5    That's not the job today.  The job today is to figure out

6    what's a sensible reserve.  What's a sensible reserve for an

7    -- to secure -- there's no sin in over-securing.  We

8    shouldn't over-secure by too much, but the parents are

9    entitled to coverage.  By the way, most appeal bonds over-

10   secure the expected amount that the appellee is going to get

11   if the judgment is affirmed.  In California, it's one -- the

12   benchmark is one and a half times the size of the judgment,

13   the half being assumed to be more than enough to cover

14   accruing interest and covering costs.  I don't know what the

15   rule is in Delaware.  I don't think it's a whole lot

16   different.  So it's not trying to cut it close and shave it.

17   It's trying to have reasonable security, and reasonable

18   security usually means with cushion.  So what's the right

19   number to pick?  Well, Mr. Kurtz is right that Tribune is in

20   a broad category of distress investments, and that people

21   who are investing in this kind of debt are kind of close to

22   high-yield type investors.  He's not saying each and every

23   one of them will be able to prove that their alternative

24   rate of return was six percent, but six months from now, a

25   year from now, 18 months from now, how ever long it takes to

1  go, are we going to be able to figure out what everybody's

2  return was?  I'm not saying you don't pick any of those, but

3  we're going to have certainty.  We're going to know what

4  every single investment in the -- available in a world did

5  in the period beginning the date of the confirmation or date

6  of whatever, the date of the stay is entered -- sorry, the

7  confirmation date's not relevant -- the date the stay is

8  entered and the day the appeal is over and it's time to

9  distribute money.  Those are going to be facts we are going

10  to know.

11          THE COURT:  So if I were to order grant the stay

12  conditioned upon the posting of a bond, what in your view

13  should be the duration?

14          MR. BENNETT:  I think the only workable thing is

15  the expected duration of the appellate process whatever that

16  is.  And the table that comes from the circuit is a little

17  hard to read, but I think that that is telling us that the

18  number is in the vicinity of two years.

19          THE COURT:  Well, it says roughly a year at the

20  District Court, and roughly a year at the Court of Appeals.

21          MR. BENNETT:  That's probably the way I read it.

22          THE COURT:  So the question for me that follows is

23  why would I want to reach that far?  Why wouldn't I leap to

24  other courts at the time in which the appeal is in their

25  hands or leaving their hands to make that determination?

1          MR. BENNETT:  I think that if you decided to do it

2    for the duration of the District Court appeal, the estimated

3    duration of District Court appeal, that's a defensible place

4    to draw a line.  I don't disagree with that.  But I do think

5    -- we're not saying any of this is easy, but it's --

6          THE COURT:  Very little that you have brought to

7    me has been easy, Mr. Bennett.

8          MR. BENNETT:  But the law is the -- when you start

9    with the baseline case and look at where the burden is, it's

10   pretty clear to me which side you're supposed to err on.

11   And the other side didn't bring any evidence to bear at all.

12   I think what you're left with is one of our proposals, and

13   no others because those are the only ones supported by

14   evidence.

15          On the whole issue of Chapter 11 expenses, no one

16   can quantify precisely how much expense could have been

17   avoided, but there are certain obvious ones.  Some were

18   mentioned, you know, committee, senior noteholders, all

19   those kinds of things.  There's another one.  There's the

20   whole financial advisor -- all the financial advisors are on

21   like the monthly clock, not on time periods.  So when the

22   case is over, those stop.  When the case is not over, they

23   continue.  So again, with respect to Chapter 11 expenses, we

24   have proved with evidence that they are going to be lower

25   when the company exits its Chapter 11 case even if there are

1  pending appeals.  It's been proved we have advanced an

2  estimate as to how to create an account large enough to

3  capture those costs how ever much they turn out to be in our

4  view.  And we picked the lowest numbers that have ever

5  happened in the case before.  Is that an irrational place to

6  start?  Is that an irrational place to create, again,

7  security?  We're talking about security.  We're not asking

8  for a single dollar to leave their pockets and wind up in

9  ours yet.  What we are asking for is that they post security

10  so that if our side is entitled to dollars, there are

11  dollars to be paid.

12      Ability to capture low interest rates in

13  refinancing, again, that's just like *Adelphia*.  All right.

14  *Adelphia* -- excuse me.  It's not like *Adelphia*.  It's just

15  like *Delphi*.  *Delphi* had a commitment.  We haven't advanced

16  to a commitment yet.  Your Honor has seen some papers on

17  that, I think.  But we all know, I think you can take

18  judicial notice of the fact -- excuse me, we know because

19  Kurtz told us, that the current interest rate environment is

20  very, very low, and that the risk is not that it's going to

21  go down more.  The risk is that it's going to go up.  And so

22  company financing, whether, by the way, it's financing for

23  purposes specifically contemplated by the plan or financing

24  because the company figures out it can do something else

25  that it wants to do, and wants to borrow money to do it.

1  Delay could cause harm.  Is it easy to put an estimate as to

2  how much harm it's going to be, how much interest rates are

3  going up?  No, it's not easy, but once again, the structure

4  of where we are in the law is that the -- Your Honor is

5  supposed to err on the sides of covering the loss with

6  adequate security, and over-security is not a sin.

7          I want now to make a digression and talk about the

8  whole issue of time, and talk about what -- how and I know

9  Your Honor is concerned about it, but how the approach of

10  looking at a [indiscernible] price may inform your decision

11  -- or should inform your decision.  And I want to do this

12  with a concrete example.  I think Mr. Kurtz alluded to this

13  if it's obvious, tell me to stop in the middle and I'll

14  stop, but I think this is a really important point.  Put it

15  in terms everyone in this room can understand.  Let's assume

16  that someone owns a $30,000 car and pays $1,000 a year for

17  comprehensive insurance.  And further assume that the owner

18  of the car parks on a driveway under a tree every night.

19  Your insurance premium, okay, is -- embedded in the

20  insurance premium is some number of the risk that the tree

21  falls on the car and totals the car.  The premium of $1,000

22  is pretty low because we said that the coverage is for a

23  year.  So we have a situation where we have a little bit of

24  information about someone pricing the risk for that period,

25  but the harm, if the tree falls on the car, is $30,000.  If

1  you have the insurance, you get $30,000.  If you don't have

2  the insurance, you don't get $30,000.  Point was made no

3  one's asking Aurelius, Law Debenture or any of the other

4  movants in the stay to reach into their pocket and buy the

5  insurance.  What Kurtz did is he said, I'm looking for as

6  much information I possibly can about what the market is

7  saying about potential losses, and the place he thought he

8  could get that was with the Black-Scholes model.

9          By the way, there was no information he gave us

10 that we could get it from which was basically just  the

11 volatility numbers, the volatility percents.  Remember the

12 40%, 40% volatility up and down?  By the way, that was also

13 he rounded down.  If you look at the total universe, the

14 volatilities were higher and lower.  The median came in, I

15 think, as 48, if I'm remembering the number exactly.  Okay?

16 So what Kurtz is trying to say is, you know, maximum loss,

17 tree falling down, $30,000, equity value disappearing

18 something like $4.5 billion, very high number.  I'm going to

19 try to find another estimate, and he picked the two-year

20 horizon.  Remember, that two-year horizon is just like the

21 $1,000 for two years.  The $2,000 insurance policy, just to

22 continue the hypothetical one more step.  And he -- and so

23 Law Debenture decided, well, you keep saying you're going to

24 buy the insurance.  Well, you're not.  They then said to

25 David Kurtz, well, let's make the period shorter so we can

1  get the premium back.  Well, back to our example.  We could

2  have a $2,000 premium for two years and a $1,000 premium for

3  one year.  Has the $30,000 changed?  No.  The $30,000 hasn't

4  changed.  And this tells us something about using insurance

5  for an estimation measure.  It's two things.

6        One, it's really low because it's influenced by

7  time.  But here's the second thing.  The crisis can occur at

8  any time.  So just based -- we're entitled -- we take the

9  position we think the cases amply support us, the baseline

10 case I referred you to concerning a bond clearly is on point

11 with this spec.  We're entitled to protection for the whole

12 thing and the big deed, which is trying to find a way to

13 moderate it, and trying to say let's find another realm of

14 safety.  We were then focusing on effectively two-year

15 volatility.  We know, Your Honor, everybody in the room

16 knows that that's a conservative estimate for the reasons

17 just described because severe losses can happen at any time.

18 They can happen tomorrow or two years from now.  Someone

19 entitled to protection from all loss whenever it occurs is

20 entitled to security that is vastly larger than the price

21 you would pay as insurance.

22        In any event, all this is going to say is that in

23 Kurtz's, in their view, admirable effort to be

24 extraordinarily conservative about the number that would

25 reflect kind of some more palatable evaluation of loss by

1   basically focusing on two-year volatility.  You shouldn't be

2   punished for that.  If Your Honor disregards it, that's

3   fine, but you are left with either the either the $3 billion

4   number or the $4.5 billion number because those are the two

5   in evidence.  The idea that this gets no protection at all,

6   this is not a risk that's cognizable in the bond context.

7   That's absurd because the cases say so, and because our

8   baseline case of what is protected in a bond in a

9   traditional case is clearly on point.

10          Finally, final note.  Your Honor has a lot of

11  discretion because it says you do.  The diet drugs case is

12  the case that ultimately -- I think it's Aurelius.  It could

13  have been Deutsche Bank, and it could have been both.  I

14  can't remember.  But they cite that for the case that a

15  court -- that the court can forego the bond requirement.

16  That's the case they cite.  The full quote, and to their

17  credit, the full quote's in their papers, "Courts will

18  forego the bond requirement when there are other means to

19  secure the judgment creditors' interests."  Other means to

20  secure.  Not "no means to secure".  Not some judgment that

21  it's really not necessary after all.  Go back to one of my

22  earlier points.  Burden.  Whose burden is it to propose

23  other means to secure?  It's theirs.  Your Honor gave them

24  the opportunity, talk to me about smaller bond.  They said,

25  no, no bond.  Other means to secure, none.  It all came down

1  to, first, a shifting of words. They haven't demonstrated

2  concrete harm.  They haven't demonstrated concrete and

3  actual harm.  Not the standard.  They tried to change the

4  standard on you.  Okay.  And the second thing they said is

5  it's just not -- it won't really happen.  Trust us, it won't

6  really happen.  It's not enough.

7         Conclusion, I don't think they've met the

8  standards for a stay.  I don't think they meet the public

9  policy threshold at all.  I don't think they meet the

10 irreparable harm at all.  And the other two don't counter-

11 balance two zeros.   As to a bond, we really do believe the

12 minimum size is a billion-five, and there are all kinds of

13 ways to find higher numbers.  There are no legitimate ways

14 to find lower numbers.  I'm happy to answer any questions

15 Your Honor might have.

16         THE COURT:  I don't have any.  Thank you.

17         MR. BENNETT:  Thank you.

18         MR. LEMAY:  Your Honor, David LeMay, for the

19 creditors' committee, and I am going to go up to do three

20 specific tasks, none of which will take very long at all.

21         First, I'd like to answer a question that Your

22 Honor left with Mr. Bennett.  I, sitting at counsel table

23 and not being at the podium, had the luxury to think about

24 it a little bit.  Yes, Mr. Bennett, if the trustees can't

25 put up a bond, as they say, and [indiscernible] funds really

1    can't put up a bond with their investors' money as they, as

2    they say, doesn't that, in effect, entirely deprive them of

3    a right to go forward with appeal because they can't put up

4    a bond?  I'd like to suggest to Your Honor that not holding

5    them to the same rules as the rest of the world is held to

6    would have the perverse effect of creating in jurisprudence

7    a specific class of people who are exempt from bonds so that

8    if a union, or a trade creditor, or the PVGC -- just going

9    through some of the people who are on the committee I

10   represent -- want a stay, they're subject to a bond, but

11   that because indentured trustees can't and, I guess, funds,

12   perhaps won't or can't put up a bond, they should be exempt.

13   There is, as it happens, in Rule 8005, an actual category of

14   appellant who is exempt from putting up a bond.  The Rule

15   drafters thought about this.  If you look at the last

16   sentence of Rule 8005, it says that "when an appeal is taken

17   by a trustee, a bond or other appropriate security may be

18   required," and then it goes on to say that if the United

19   States appeals or a government agency, they're relieved of

20   the burden of putting up a bond.

21          So here the rule makers, having in mind the notion

22   that the government shouldn't have to dig into the fist to

23   do this, but a trustee should.  Now, I don't actually think

24   that the word trustee is used in that sentence refers to an

25   indentured trustee.  I think it's actually referring to a

1    case trustee.  But if the rule drafters thought that it was

2    appropriate that an unsuccessful Chapter 11 or Chapter 7

3    trustee should have to dig into estate or his own pockets to

4    put up a bond, but the government should be exempt, I think

5    you can take away from that the proposition that there ought

6    not to be a special exemption for indentured trustees or for

7    professional investment funds, which should be held to the

8    same standards as everyone else.  So that would be my answer

9    on that question.

10          Second, Mr. Zensky's reply paper and his oral

11   remarks talked quite a lot about a case called *Finova*.  I

12   looked at that case.  It's quite brief.  I just wanted to

13   mention I don't think *Finova* has much to do with what we're

14   here today to talk about.  *Finova* was a pure liquidation

15   case.  It's a two-page opinion and --

16          THE COURT:  I agree.  I've read it, and I put it

17   kind of at the bottom of my pile.

18          MR. LEMAY:  Okay.  I won't talk about *Finova* any

19   more, Your Honor.

20          THE COURT:  Okay.

21          MR. LEMAY:  The third thing I want to do, though,

22   Your Honor, is talk about harm from the perspective of some

23   other people, and the other people I'm obviously talking

24   about are the creditors who aren't professional investors,

25   who perhaps haven't entered the case voluntarily, and I'm

1  going to use the composition of the creditors' committee as

2  a sort of proxy for that cross section because I believe the

3  cross section is largely representative.  So think about,

4  for example, a counter-party to a contract.  That contract

5  is going to be assumed under the plan, and they will have

6  the certainty of knowing they're no longer dealing with a

7  Chapter 11 debtor, and that there's no risk of that contract

8  being rejected.  They don't have a plan that they can go off

9  and sell.  All of the colloquy about the ability to sell

10 into a market doesn't help them.  What they need is the

11 assurance that any businessperson wants that they not

12 dealing with a Chapter 11 debtor any longer than they have

13 to.

14        Take a government agency like the Pension Benefit

15 Guaranty Corporation.  They're kind of an involuntary

16 creditor.  They don't get a call on whether they have to

17 insure the defined benefit pension plan of this company or

18 that company.  They just have to do it.  You can imagine

19 that insuring the pension of a bankrupt company is probably

20 not their favorite thing.  They want the certainty of

21 knowing that they are out of the woods.

22        Take the retirees.  Now the retirees, they were

23 talking about earlier, they may have allowed claims that

24 technically could be sold, but it's just in the nature of

25 things that they don't have access to the sort of

1   sophisticated financial advice that some of the voluntary

2   creditors in the case have that would enable them to know

3   whether the claim selling price that they're being offered

4   is the right price or the wrong price.  And then they've

5   been waiting for years for their distributions.  It seems to

6   me unfair to suggest to them, well, if you don't like

7   hanging around, and if you don't like the stay, you can just

8   go off and sell your claim.  Technically, they might be able

9   to, but that's not very good comfort, same with trade

10  creditors.

11          And then finally, and there -- this last group is

12  not represented on the committee except for the trustees,

13  you've heard several times that by amount the vast majority

14  of the senior notes have rejected the plan.  It's also true

15  that by number the vast majority of the senior noteholders

16  have accepted the plan.  What signals to me is although the

17  noteholder class is a descending class, the sort of rank and

18  file, the small guys, the little bondholder, the guy who's

19  got some of this in his personal portfolio, they want out of

20  this case, and again they don't have the access to the

21  sophisticated mechanics to tell them whether the current

22  selling price is a good one or bad one.  So I think those

23  harms particularly to creditors who have not voluntarily

24  entered the case, those kind of harms, which I think are

25  impossible by their nature, to hang a price tag on, those

1   harms are very real, and need to be taken into the balance.

2   I don't think Mr. Kurtz could testify about them because by

3   definition I don't know how you hang a number on them.  I do

4   know that when Your Honor wrote your October 31st opinion on

5   confirmation, you made it very clear that getting out of

6   bankruptcy was an incredibly important, and I don't think

7   that was just because you wanted this group of lawyers out

8   of your courtroom; although I'm sure you do.  I think you

9   were probably thinking about the case, the creditors and the

10  people and constituents as a whole.

11          THE COURT:  Mr. LeMay, every visit is a delight.

12          MR. LEMAY: Thank you, Your Honor, and very mutual,

13  too.  I think that kind of harm to these creditors,

14  especially the involuntary creditors correlates to the

15  public interest that was referred to in the *Adelphia* case.

16  I know Your Honor has read the *Adelphia* case.  I think you

17  even averted to the *Adelphia* Judge's writing that the public

18  interest requires bankruptcy courts to consider the good of

19  the case as a whole and not individual creditors' investment

20  concerns.  That was the stay decision in *Adelphia*.  I'd like

21  to submit, Your Honor, that the kinds of concerns and the

22  kinds of harms that I just mentioned correlate exactly into

23  that public interest.  And I'm available to answer any

24  questions on this motion.

25          THE COURT:  Thank you.

1    MR. BENDERNAGEL:  Your Honor, Jim Bendernagel, for

2 the debtor, and I'll keep my remarks short.  I was sort of

3 struck when Mr. Zensky started, when he started where he

4 did, and looked at the Code and the Law and then never

5 mentioned burden of proof.  Because I submit in a case as

6 difficult as this, burden of proof is important, and they

7 have the burden of proof.  This is an extraordinary remedy,

8 but they're treating it like they have an entitlement to a

9 stay, and that's incorrect.  The prongs are there for you to

10 analyze.  We talked a bit about irreparable harm.  One

11 factor that's never been mentioned with respect to

12 irreparable harm is the harm portion.  To the extent that

13 they do not have a significant likelihood of prevailing,

14 there is no harm or the harm is diminished by that.  And

15 that needs to be taken into account and balanced against the

16 clear harm that exists to the company, the creditors, and

17 other non-movants.  There's no question based on this record

18 that harm exists.  Companies -- it's not good to be in

19 bankruptcy, and it's absurd to argue that it is in this

20 situation.  To the [indiscernible] it's not good to not have

21 your money.  They essentially make the assertion they're

22 doing you a favor by essentially not allowing you to have

23 your money, and therefore risk loss.  The fact of the matter

24 is these creditors haven't had their money for four years,

25 and their basic position is, well, you can wait another six

1    months.  There's something wrong with that.  And then argue

2    then that because you can't quantify it with specificity, it

3    doesn't exist, is wrong.  There is harm here, and it's

4    significant harm, and I think we've established that on the

5    record.

6         Brings us to the bond question.  Now we say they

7    have the burden to prove on that issue, and I think we're

8    right, but the one thing that's absolutely clear on this

9    record is the answer is not zero, but that's their position,

10   that there is zero bond, there's zero harm here, but that's

11   wrong.  There's -- each of the categories that Mr. Kurtz

12   identified has a harm associated with it whether he got the

13   absolute right number, who knows.  But the fact of the

14   matter is what we do know is it isn't zero.  There is going

15   to be a difference with respect to administrative costs.  In

16   fact, I don't have my money and I can't invest it.  I'm

17   being harmed.  There's no question about that.

18        And finally, the fact that I don't have access to

19   my equity.  I don't have access to control, and it's because

20   of this stay.  There's harm associated with that.  I have

21   less flexibility.  If I have less flexibility, I have

22   greater risk.  That's the definition of harm.  So there is

23   harm here.  They've said the harm is zero.  They have the

24   burden of proof.  The harm can't be zero.  The evidence in

25   the record is the record that we put forward with respect to

1   that information, and the like.  Now Mr. Rosner got up here

2   and danced around with his math exercise misstating at least

3   one fact in terms of the amount of taxes.  He doubled that.

4   But significantly he ignored all the harms that were talked

5   about today as if this was just the quantification exercise,

6   which it is not and it should not be.

7           This brings us to the finer point, Your Honor, on

8   the FCC.  And I find it breathtaking what's gone on here

9   today, what the explanation is, is there's uncertainty about

10  the FCC.  No doubt about it, described as a black box,

11  nobody knows what's going to happen.  Their answer is

12  because they want to take the stake and I take the full risk

13  with that and so that's wrong.  They should be required to

14  post a bond in connection with that issue alone.  Why should

15  the debtor, why should the DCL plan proponent, who prevailed

16  here, and have been waiting to get out of bankruptcy for

17  years, bear that risk themselves without any sharing in that

18  risk at all?  That's their proposal.  We'll get to go

19  forward, and you can just wait around for your money.

20  That's not correct, Your Honor.  That initial case that says

21  that, and our submission is, that you should either deny the

22  stay or if you don't deny the stay, that you should require

23  a significant bond that protects people against the

24  potential harm that's being caused by this stay.  Thank you.

25          MR. ZENSKY:  Good afternoon, Your Honor.  David

1    Zensky, very briefly for Aurelius Capital Management.  Mr.

2    Bennett, Mr. LeMay and Mr. Bendernagel, between them now

3    spoke for three times as long as I have spoke to you, and

4    not once disputed the central thesis of my presentation,

5    Your Honor, which was that the type of harms that you have

6    been presented with are present any time a Chapter 11 debtor

7    says I'd rather get out sooner rather than later.  They are

8    generic harms, and if the Court concludes that there is

9    harms, creditors wanting their distributions, CEOs saying

10   it's a little difficult to be in bankruptcy, if those types

11   of things are enough to deny a stay or to require a bond,

12   then I believe you are writing things into the sentence that

13   Mr. Bennett agrees is the right sentence, that does not

14   require you to impose a bond, and you are taking away the

15   discretion that the Rule gives you because you were

16   basically saying any time a party wants a stay, those harms

17   will justify it being denied.  Now the biquity of Mr.

18   Bennett's presentation is best shown by where he started his

19   argument and where he went back to.  He told you that I'm

20   not right when I say a bond is not mandated by law, by

21   referring -- he didn't give you the citation, but he talked

22   about the situation where a judgment, a money judgment is

23   entered against someone and as the price of getting the stay

24   pending appeal, you must post a bond.  He's right.  That's

25   Bankruptcy Rule 7062.  That deals with an adversary

1  proceeding, a different situation where the parties seeking

2  the stay has been ordered to pay money over to the appellee.

3  As you know, and we said in our papers, that is not the

4  situation; to the contrary.  Tribune owes Aurelius money.

5  There is no judgment against Aurelius to pay Tribune any

6  money, and the language of 7062, on its face, says if you

7  want a stay, you put up a bond.  It says you may obtain a

8  stay if you post a bond.  Those words don't appear in the

9  sentence of Rule 8005 that governs the outcome of this case,

10 and that's why I said to you, and I accurately reported,

11 that none of the cases in this District or Circuit mandate a

12 bond.  Mr. Bennett said I'm wrong about that, and he said

13 that *W R Grace* is his ace in the hole on that point.  He is

14 mistaken in what he said.  I never said we didn't have the

15 burden, Your Honor, not once in my argument.  I acknowledged

16 that the applicants have the burden.  What I told you was

17 there was no case that said it would be unlawful or an abuse

18 of discretion as a matter of law for you to not require

19 bond, and indeed Mr. Bennett's ace in the hole, the *W R*

20 *Grace* case, says "the court may require a bond."  This is

21 the case he says that demonstrates that I'm wrong, which in

22 fact, is a Delaware District decision which we all agree is

23 not technically binding, but it actually says that I'm

24 right.

25          The last point I would make, Your Honor, is just

1    jurisdictionally.  I agree with the comment I think Your

2    Honor made to Mr. Bennett, and that is if the Court were

3    inclined to grant the six-month stay, and the appeal had not

4    been resolved by way of final judgment when it came up, it

5    would be up to the court that then had jurisdiction over

6    these matters to determine whether to extend and on what

7    basis, not to return back to this court unless the matter

8    had been remanded to this court.

9            THE COURT:  Well, on that point, and you -- we

10   absolutely need to get to the next subject soon, but there's

11   a distinction between fixing an amount of the bond based

12   upon an assumption about how long the appeal process will

13   take, and ordering a stay of a finite duration.  And

14   frankly, my inclination, as I sit here today, would be to do

15   the former.  Based upon the estimates in time, roughly a

16   year district court, another year court of appeals.  If I

17   were to grant the stay and if I were to impose, as a

18   condition of that, putting up of a bond, I think I'm

19   probably more likely to pick an amount based upon an

20   assumption of how long the appeal process would take at

21   least for the district court level, but not make a temporal

22   aspect of the stay.  Do you understand?

23           MR. ZENSKY:  I do understand, Your Honor.

24           THE COURT:  Okay. Any reaction to that?

25           MR. ZENSKY:  No.

1              THE COURT:  Okay.  Thank you.

2              MR. ZENSKY:  That's all I have, Your Honor.

3              MR. ROSNER:  I need to just clarify.  I'm sorry.

4    David Rosner, of Kasowitz Benson, for Law Debenture, and

5    Deutsche Bank.  Hartenstein 3, which is the press release

6    that they put in front of Your Honor, has been mentioned a

7    number of times and was mentioned twice by Mr. Bennett.  It

8    was offered as a statement as by a competitor of Tribune

9    showing how the bankruptcy is affecting Tribune, and

10   therefore why there should be no stay.  This -- and I would

11   ask Your Honor, you know when you get a chance to go back

12   and look at the exhibits, it is Hartenstein 3, this is a

13   press release by Cablevision, not by a competitor of

14   Tribune, but by a consumer of Tribune, somebody who carries

15   their stations, and it doesn't say that Tribune's bankruptcy

16   is causing any problems.  What it says is, and it's a quote,

17   it says, "the bankrupt Tribune Company and the hedge funds

18   and banks that own it, including Oaktree Capital Management,

19   Angelo Gordon & Company, and others are trying to solve

20   Tribune's financial problems on the backs of Cablevision's

21   customers.  Tribune and their hedge fund owners are

22   demanding tens of millions in new fees for WPIX and other

23   stations they own.  They should stop their anti-consumer

24   demands and work productively to reach an agreement."  This

25   is a fight between Cablevision and Tribune and the hedge

1  funds that they assert on it.  This offers nothing as to any

2  harm to the company by virtue of the bankruptcy.

3        Number two, Your Honor, the key question you asked

4  before is, I think, the key one or one of the key ones.

5  There's been several -- is, "Does a stay with a bond versus

6  a stay without a bond make a difference to the market?"  And

7  the answer, of course, is no.  If the market's going to look

8  at a stay at all, then they're going to not say, well wait a

9  second, is there a bond?  How much was the bond and what

10  happened in *Adelphia*, and shouldn't we look at those things?

11  No.  If there's any relevance to this court entering a stay,

12  the bond is irrelevant.  And what they're doing and I would

13  -- I hope that Your Honor will focus on this at some point,

14  is that they're using the bond as a proxy to defeat the

15  stay.  They're not really focusing on whether there is a

16  necessity of a bond.  It's using it to defeat the stay.  So

17  the reason we talked about quantification today is because

18  Your Honor asked us to talk about quantification, and I

19  think that was the relevance of today's hearing, and we

20  probably spent a little bit too much time getting to it.

21        The final point I would make is Mr. Bendernagel

22  and others have said they didn't bring any evidence, they

23  didn't bring any evidence, they didn't bring any evidence.

24  We did bring evidence.  It's called cross examination.  We

25  proved our case through their witnesses.  We're not

1  obligated to bring direct witnesses.  We are obligated to

2  make an evidentiary showing to Your Honor, and I submit that

3  we've done so.  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          MR. BENNETT:  Two sentences.  First, right,

6  judgment bond is mandatory.  What it protects against is the

7  purpose of the exercise, to focus on what bonds are supposed

8  to protect against.  The significance of the PR Newswire

9  article, the whole thing starts with the words, "the

10  bankrupt Tribune Company".  Why did they do that?  Because

11  they think it works.  They think it helps them in their

12  fight with Tribune to label Tribune as bankrupt, desperate,

13  trying to solve financial problems as opposed to being just

14  arm's length competitor.

15          THE COURT:  It's emblematic of the -- well what

16  recently has been more in the news, but is from time to time

17  between the content providers and the transmission folks,

18  and that's just -- it doesn't reflect well and it's not

19  meant to reflect well on Tribune, and the point is made.

20          MR. BENNETT:  Thank you.

21          THE COURT:  Okay.  Let's move to certification.

22          MR. BENDERNAGEL:  Could we take a five-minute

23  break so that people can move to the bathroom?

24          THE COURT:  Should I excuse men over the age of 50

25  first?

1                        (Laughter)

2              Five-minute break.

3    (Recess from 4:53 p.m. until 5:00 p.m.)

4              THE COURT:  All right, certification.

5              MR. ROSNER:  Certification, Your Honor, David

6    Rosner Kasowitz, Benson, Torres & Friedman, on behalf of Law

7    Debenture and, for today's purposes, Deutsche Bank.  I'm

8    going to answer your question that you raised at the outset

9    of the hearing regarding certification.  Do you have the

10   authority to split the appeals between the District Court

11   and the Third Circuit if you find that one of the questions

12   on appeal is subject to certification?  The answer is no.

13   Do all of the appeals go up as a group?  The answer is yes.

14   And that's on the face of the statute and Supreme Court

15   precedent.  28 U.S.C. 158(a) provides that the District

16   Court has jurisdiction to hear appeals from Final Orders.

17   The Confirmation Order is the Final Order that we're talking

18   about and it's the Order that they have jurisdiction to hear

19   appeals from.  It's not split into what the specific issue

20   on appeal is, it's the Order itself.  If you jump to

21   certification, 28 U.S.C. 158(d) subparagraph (a) it says the

22   appropriate Court of appeals shall have jurisdiction of

23   those appeals, the ones otherwise that go to the District

24   Court, if you certify one of the questions.  That appeal

25   again it's the jurisdiction that the Court of appeals has is

1  over the Final Order.  It's not over the specific issue on

2  appeal.  It's over the Order itself.  So that would go to

3  the Third Circuit.  And as it being the Order, then it would

4  have jurisdiction over appeals of that Order as the rule --

5  I'm sorry, as the statute says.  If you look also just at

6  the way that the certification -- the three prongs of what

7  certification -- what you would need to certify to bring

8  this up to the Third Circuit, each one makes it I think

9  crystal clear that we're talking about that the Order is the

10  one that goes up because if you look at number one, or "i in

11  the hole", however you want to describe it, if you certify

12  that the Order involves a question of law, it doesn't say

13  that it's the question of law that goes up to the Circuit,

14  it's if the Order involves a question of law in which

15  there's no controlling Decision, or involves a matter of

16  public policy, you certify that the Order is, then the Court

17  of appeals has jurisdiction over that Order.

18          THE COURT:  So are you answering really

19  questions, it doesn't -- the statute isn't personal as to

20  party?  So that if I were to grant your Motion everything

21  would go --

22          MR. ROSNER:  Everything goes --

23          THE COURT:  -- and nothing would go to the

24  District Court?

25          MR. ROSNER:  Nothing goes to the District Court,

1  everything goes up.

2          THE COURT:  Okay.

3          MR. ROSNER:  Everything goes up to the Third

4  Circuit.  And the Supreme Court just, you know, in an

5  analogous context in the *Yamaha* case in dealings with 28

6  U.S.C. 1292 made that point in dealing with interlocutory

7  appeals.  And in dealing with the interlocutory appeals it's

8  -- the Supreme Court made clear that what we're talking

9  about is an appeal from an Order.

10          THE COURT:  What then would become of that which

11  is pending in the District Court now?

12          MR. ROSNER:  Well, it's interesting Your Honor.

13  I think that there's some debate as to whether something is

14  actually pending in the District Court.  I know you can't

15  put on the record the --

16          THE COURT:  The air quotes?  Yes.

17          MR. ROSNER:  -- the quote marks.  But -- and

18  Wilmington Trust will talk to that as to what -- as to how

19  they see it.  I see it that the rule says that if a Motion

20  for Leave to Appeal hasn't been granted, that jurisdiction

21  still resides here and that that matter would still be here

22  and you still have jurisdiction to kick everything upstairs

23  -- up two levels upstairs and because the Motion for Leave

24  to Appeal has you know -- Judge Sleet hasn't acted on those

25  Motions.  There has been briefing on it, but there -- or the

1   beginning of briefing on it, but those Motions haven't been

2   granted and that would leave everything here at your -- with

3   your Court.  And, therefore, you would be making that

4   determination.  And I think Wilmington Trust will speak to

5   that but also say what they would intend to do should Your

6   Honor certify it, as we think you should.

7          So the short answer to your question is is that

8   everything goes and the Supreme Court supports that and the

9   rule -- and the statute itself says it.  So what do we seek

10  certification on Your Honor?  As you know, we've appealed on

11  the basis of unfair discrimination that Your Honor addressed

12  at the -- in the allocation disputes Decision that's

13  incorporated in the Confirmation Order.  The question on

14  appeal is whether this Court committed an error of law, as

15  we articulated, by permitting unfair discrimination within

16  the meaning of Section 1129(b) of the Bankruptcy Code in its

17  interpretation of notwithstanding Section 510(a).  A second

18  legal error that -- we assert a legal error, Your Honor, is

19  whether the Court made the appropriate comparison for

20  determination of materiality in determining that the DCL

21  Plan was not unfairly discriminatory to senior lenders.  Do

22  we say the Court compared two types of distributions to one

23  class as opposed to the distribution to two parity classes.

24  That's how we articulate our appeal, and they are both legal

25  questions, we say if it's analyzed correctly as a matter of

1  law the senior note holders will roughly have in their

2  recovery.  Most importantly, Your Honor, the facts of this

3  case are not relevant to that determination of

4  certification.  The facts of this case are just what would

5  be applied once we have a correct level of analysis of what

6  the law is from the Third Circuit that governs what unfair

7  discrimination is.

8          THE COURT:  I think you have a stronger argument

9  on your first point than you do on your second in that

10  respect.

11         MR. ROSNER:  Your Honor, I support my first point

12  and I will -- and that's the one I hope that you will focus

13  upon.

14         THE COURT:  I thought you might say that.

15         MR. ROSNER:  So in terms of certification, as you

16  said, there's three possibilities.  They're all written in

17  the disjunctive.  There's actually -- if you look at the

18  first one there's four because the first one has its own

19  disjunctive which applies if there's a matter -- a question

20  of law that relates to the public interest.  And we say that

21  we have three of them.  But to be clear, we only need one.

22  And we only -- there only need be one reason for you to

23  certify.  And if you certify it is -- once you find that

24  certification is appropriate, it's mandatory.  And that is

25  if there's no controlling law in the Third Circuit or in the

1    United States Supreme Court on the question of unfair

2    discrimination and the meaning of notwithstanding in Section

3    510(a).  And it is clear that the Third Circuit and --

4    neither the Third Circuit nor the Supreme Court has

5    discussed at all, let alone provided direct controlling

6    decision of law, unfair discrimination at all, let alone in

7    the context presented here of senior and subordinated and

8    parity debt.  The Court relied on *Goody's*.  The Appellees

9    rely on this *Goody's* Decision which is the "stub" rent case

10   of which we're all familiar.  I would tell Your Honor I

11   think that's hardly responsive.  I think the "stub" rent

12   case does not explain nor set the law in unfair

13   discrimination in the context of a cram-down Plan with the

14   Subordination Agreement in any respect.  It's a "stub" rent

15   case.  And notwithstanding the Third Circuit's discussion of

16   the term notwithstanding, it's somewhat spurious I think to

17   contend that the Court -- that this Court, based upon that

18   Decision and that Court's discussion of that singular word,

19   now knows -- and all the Courts in this Circuit, now know

20   what unfair discrimination means within the meaning of a

21   cram-down Plan that involves a Subordination Agreement

22   because of the reference to 510(a).  It is clear to me Your

23   Honor, and I hope clear to you, that the use of the term

24   notwithstanding in one section of the Code as interpreted by

25   the Circuit is not the same as another.  The Third Circuit

1    has said even that.  They've said in the *Conoco* Decision

2    where they were dealing with the Maritime Act and which

3    collected other Third Circuit cases that even that term,

4    talking about the term notwithstanding, can have different

5    meanings and it must be viewed together with the legislative

6    history, the statute's purpose and the structure; all those

7    things that we argued as to what the Court should do as a

8    matter of law in constructing the statute and then applying

9    it to these facts.  And we think that going directly to the

10   Third Circuit, if the Third Circuit accepts it because it's

11   not mandatory as to them, it's whether they authorize the

12   appeal, but if they do authorize the appeal we will then

13   have binding decisional law on the meaning of unfair

14   discrimination in a cram-down Plan for this Circuit, for

15   this Court, as well as for everybody else.

16          Importantly, in *Goody's* again on which this Court

17   relied, it was dealing only with Section 365(d)(3).  It gave

18   effect to the legislative purpose.  By its term, it said

19   it's giving effect to the legislative purpose when viewing

20   the legislative history.  And all it said was that in that

21   context, in (d)(3) with that background, it was "best

22   understood" as meaning -- as having that meaning.

23          THE COURT:  Well that's pretty much all any

24   Decision ever says, really.

25          MR. ROSNER:  That's true Your Honor.  However

1    what they said was best understood in that context.  I would

2    tell you that we do have decisional law in the Third Circuit

3    on the meaning of notwithstanding as to Section 365(d)(3)

4    and as to how 503(b) interplays with Section 365(d)(3) based

5    upon the legislative purpose and the legislative history of

6    that section.  And the Court went to some length to say,

7    hey, this is a protective statute for the landlords.  We

8    have to look at it at that way.  This was not to take away

9    their rights under 503(b).  This was to protect them and

10   make sure there was an actual direct way that you get your

11   money under 365(d)(3).  So it was looked at that way.  It

12   has absolutely nothing to do with unfair discrimination,

13   nothing to do with the purpose of cram-down, nothing to do

14   with the meaning of notwithstanding 510(a) and, importantly,

15   nothing to do with cram-down's requirement that 1129(a)(1)

16   be met in terms of any Plan; that every provision of Chapter

17   11 is met -- or Title 11 is met in order to confirm a Plan,

18   other than (a)(8) which is the only one that is accepted,

19   only (a)(8), and never speaks to (a)(1).  Even though the

20   *TCI-II* case says that they meant (a)(1), it doesn't say

21   that.  This is a question of law, not one of fact.  And to

22   get around that question of law that there's no controlling

23   Appellate decisional law on the meaning of notwithstanding,

24   that phrase, or unfair discrimination at all in this

25   context, the DCL Plan Proponents try to transmogrify I would

1  say the question of law into, one, a question of fact based

2  upon materiality.  So I have two things to say.  One is you

3  said you didn't like that one as much as the first one, in

4  any event.  And number two, what is at issue is the legal

5  determination of the meaning of notwithstanding Section

6  510(a), not how it interplays in this case, and not what the

7  effect is on the distributions under the facts here and not

8  what is the appropriate application of materiality.  What is

9  the legally correct comparison as opposed to what's the

10 effect will all come back.  Hopefully the Third Circuit will

11 see it our way and hopefully the Third Circuit will issue a

12 Decision that sends us back here for the limited purpose of

13 applying it.  Then we'll know how it applies to the facts.

14 But we need the rule first, and that's why we need to

15 certify this to the Third Circuit so that we can get that

16 rule.  Again, it's legal error and not the application to

17 facts.

18         Another argument that has been made against

19 certification is that there is this "in-Circuit decisional

20 law."  And they point to the *Armstrong* Decision in the

21 District Court.  There is no concept in certification as the

22 DCL Plan Proponents suggest of in-Circuit decisional law

23 that somehow supplants a required actual Circuit level

24 authority that mandates certification here.  The statute

25 can't be clearer than to say if you don't have Circuit --

1   okay.

2           THE COURT:  I agree.

3           MR. ROSNER:  Okay.  Okay, you got it -- you got

4   me, okay, all right.

5           THE COURT:  Don't seem too disappointed Mr.

6   Rosner.

7                       (Laughter)

8           MR. ROSNER:  It's just -- I'm going to move on.

9   It's getting late, right?  The second reason that we

10  articulate, which is also found under 158(d)(2)(a) "i in the

11  hole" is public interest; that there is a controlling issue

12  of law that is on appeal that is in the public interest to

13  be decided.

14          THE COURT:  Well, look, let's not complete the

15  first and the third factors.  So let's say it needs to stand

16  alone without respect specifically to the issue that you're

17  raising under the first factor.  And if you look at it that

18  way, what's the difference between this 11 and any other --

19          MR. ROSNER:  Well --

20          THE COURT:  -- to pick a theme that Mr. Zensky

21  propounds?

22          MR. ROSNER:  Well, it's not what's the difference

23  between this -- I mean I would suggest it's not the

24  difference between this 11 and any other 11, it's what's the

25  difference between determining unfair discrimination in the

1    context of a cram-down Plan when you're dealing with senior,

2    subordinated and parity debt which is the capital structure

3    of literally thousands and thousands of companies.  So their

4    cases are legion.  I think the *Enron* case in New York kind

5    of collected the Decision starting maybe with the *Credit*

6    *Industrial* Decision of the Second Circuit that said one

7    thing we need to do in our Courts is to make sure that

8    markets have predictability on the basis of how documents

9    are going to be understood; boilerplate provisions, how

10   Subordination Agreements -- they were dealing with

11   Subordination Agreements in both of those contexts -- are

12   going to be interpreted and interpreted by the Court.  Cram-

13   down, we're dealing with an instance right now where on the

14   facts of this case, based upon Your Honor's determination of

15   how the law should apply to those facts, we have a

16   Subordination Agreement that was neither fully enforced and

17   -- but was also given the benefit to other parties who were

18   not senior creditors.  And that's what happened in cram-

19   down.

20             THE COURT:  It strikes me that in concept how

21   you're framing the application of the statute is strikingly

22   similar to that which the Supreme Court just considered in

23   *RadLAX* in which it said the specific governs, not the

24   general.  So if you look at the factor -- the first factor

25   as specific and the third maybe as a little more general,

1  you can't pull the specific into the general.  And I know

2  it's a little different, but the concept I think is similar.

3          MR. ROSNER:  But when --

4          THE COURT:  Do you understand my point?

5          MR. ROSNER:  Well, I think when you're saying

6  pulling in the general, you're saying the general public

7  interests versus the specific as to whether there's a

8  controlling issue of law?

9          THE COURT:  Correct.

10          MR. ROSNER:  Okay and I understand that.  I

11  understand what you're saying.  You're saying, okay, this is

12  a more of a public interest point that you're trying to

13  make.  I mean isn't the specific question here as to whether

14  this is a Chapter 11 case, there's a Subordination Agreement

15  here, this is how we've interpreted it in this case?

16          THE COURT:  You said it much better than I did,

17  yes.

18          MR. ROSNER:  I doubt that.  But what I'm saying

19  is is that the public interest is actually in the way that

20  Bankruptcy Courts are going to look at Subordination

21  Agreements in the context of a cram-down confirmation,

22  because the public interest is in understanding -- the

23  market's understanding that contracts are going to be

24  respected in bankruptcy when the Bankruptcy Code says they

25  should be respected.  And that's really the fundamental

1    point is that we have a disagreement, you and I have a

2    disagreement as to whether 1129(b) requires straight fealty

3    to our Subordination Agreement or not.  And that's where --

4    what we would ask the Third Circuit to decide.  And the

5    reason the public cares about that is because there's lots

6    of subordinated debt out there and banks lend on the basis

7    of senior, subordinated, and parity debt.  And that capital

8    structure exists.  And I would say that we need to know

9    whether these agreements are going to be respected in

10   bankruptcy or they're not going to be respected in

11   bankruptcy in the instance of the benefited class being the

12   ones that were opposed to the confirmation.  So I certainly

13   understand your point as to the generality of the idea, but

14   I would say the generality is in the concept of what is the

15   public interest as opposed to what's the answer to that

16   question.

17            Now the third reason Your Honor, I'm jumping

18   ahead because I do think that most -- a lot of this is in

19   our papers and I know that you read all the papers and I'm

20   going to rely on our papers what I'm saying now -- or in

21   addition to what I'm saying right now.  Advance the

22   resolution of the litigation which is another reason that

23   this Court, if it finds that certifying an appeal -- and

24   this one is not on the controlling issue, it's just what's

25   going to happen to this litigation if I'm going to certify

1   the question?  Well I've told you, and I hope Mr. LeMay is

2   going to agree but I have a sense that he's not going to

3   agree, but I've told you that if one of these things is

4   certifiable they all are -- not certifiable -- subject to --

5                          (Laughter)

6           MR. ROSNER:  Subject to -- sorry, that was a poor

7   choice of words -- subject to certification.  If one is

8   subject to certification, they all are.  If Your Honor feels

9   that one of them is and it has the discretion then to say

10  that it will -- whether I feel -- you feel it will advance

11  the resolution of the litigation.  There is no question that

12  if all appeals are put in front of the Third Circuit that

13  that will advance the resolution of this litigation.  We've

14  all talked about avoiding piecemeal appeals.  You asked a

15  question right now.  We've got appeals at the District

16  Court, how do we put them all in one place?  We put them in

17  one place at the Circuit and that is mandated, I would tell

18  you, by finding there's no controlling issue of law.  But

19  it's also within Your Honor's discretion to do that on the

20  basis that, you know, that it will advance the resolution.

21  And everyone has been saying we need to end this case, we

22  need to end this case.  We actually reduced our request for

23  a stay in order to assist people in so-called ending this

24  case.  But the way we avoid piecemeal appeals and resolve

25  this case is to bring it up to the Circuit level -- bring it

1    up to the Circuit.  And that's not -- this is not the sole

2    reason -- advancing our appeal is not the sole reason that

3    we want to get to the Circuit.  The reason is is that there

4    are multiple appeals and they can be combined at once, and

5    then the resolution of this case will occur because you will

6    now have the two-level determination of what both is the

7    controlling issue of law as well as what are the resolution

8    of all of the appeals.

9              So I referred you to *Yamaha*.  I think that's very

10   helpful.  I would say for all three of those reasons Your

11   Honor, we did talk about public interest maybe in a little

12   bit of a different context, you should certify.  But I would

13   rely very heavily on the idea that there is no controlling

14   issue -- controlling decisional law on unfair discrimination

15   and 510(a), and notwithstanding 510(a), in this Circuit or

16   at the Supreme Court.  Thank you Your Honor.

17             THE COURT:  Thank you.

18             MR. NOVOD:  Good afternoon Your Honor, again,

19   Gordon Novod of the law firm of Brown Rudnick on behalf of

20   Wilmington Trust Company, the indentured Trustee for the

21   PHONES.

22             I rise really for two reasons Your Honor.  The

23   first is obviously to join in the argument presented by Law

24   Debenture and to reiterate, obviously, our support for their

25   request concerning the unfair discrimination issue.

1  Obviously, the PHONES it's a great -- issue of great

2  importance to the PHONES.  The PHONES believe that the

3  improper application of the subordination provisions of the

4  PHONES' indenture has a detrimental effect on their ability

5  to make a recovery here, not simply when the recovery may be

6  received.  As Mr. Rosner has pointed out, the misapplication

7  of the PHONES indenture will provide recoveries to people

8  who are not entitled to the benefit of contractual

9  subordination.

10        The second reason I rise Your Honor, frankly, is

11  to address the jurisdictional questions and questions that

12  you have asked and questions that have been raised in the

13  parties' papers.  The first thing I'd like to address is the

14  Confirmation Order.  The appeal seeks an appeal of the

15  Confirmation Order.  It doesn't seek an appeal of any prior

16  Order of Your Honor's, but simply the Confirmation Order

17  itself.  And that's what the certification question is

18  about.  So we respectfully join in the argument that all

19  appeals of the Confirmation Order would join the

20  Confirmation Order itself.  And, obviously, the Confirmation

21  Order and any appeal to that is not issue specific

22  necessarily but, rather, Order specific.

23        That being said, the DCL Plan Proponents have

24  taken the position, Your Honor, that for some reason

25  Wilmington Trust's prior appeal should serve as a judicial

1   impediment to this Court in making a ruling and determining

2   whether or not to certify all issues related to the

3   Confirmation Order, including the prior filed subordination

4   appeals.  And as Your Honor may be aware, back in January we

5   filed Notice of Appeal with respect to the Court's

6   reconsideration Opinion.  And that was filed with the

7   District Court.  Actually it was filed appropriately here in

8   this Court, and the District Court has since issued a Notice

9   saying that that has been docketed and it's been given an

10  ordinary Appellate number.  The District Court also asked

11  for a briefing schedule to be established, and Wilmington

12  Trust did file its opening brief just several weeks ago with

13  respect to that appeal.

14        The second appeal was with respect to Your

15  Honor's allocation disputes Order.  I should say the Order

16  and Opinion resolving those issues, which I believe was

17  issued April 9th of this year.  That case, like the first

18  appeal, we filed a Notice of Appeal in the Bankruptcy Court.

19  And the District Court has yet to establish a briefing

20  schedule and the District Court has yet to issue an

21  Appellate number, as it currently enjoys a miscellaneous

22  Appellate number.  So with respect to both appeals, and

23  they've both been assigned to Judge Sleet who is the same

24  Judge who heard a number of issues with respect to

25  Washington Mutual, and I'll refer to that in just a moment.

1  But Your Honor the argument has been made by the DCL Plan

2  Proponents that for one reason or another Wilmington Trust's

3  appeal, should Your Honor indicate that Your Honor is

4  inclined to certify all appeals that are pending to the

5  Circuit, should be left behind.  And on the other hand the

6  DCL Plan Proponents say, but it's an interlocutory Order and

7  we will be moving to dismiss that as being moot at some

8  point in the future.  And that comes from their own

9  Appellate papers on that topic -- or, excuse me, their own

10 papers before Your Honor that were filed just a few days

11 ago.

12         One, Wilmington has never conceded that the

13 appeal itself was not as a matter of right, as we always

14 contend and believe that it is as a matter of right.

15 However, the District Court has not yet ruled on that Motion

16 and hasn't said -- asked us to establish a briefing schedule

17 which we abided by and followed by filing our brief.  That

18 being said Your Honor, there's a procedure that's available

19 under *Venon vs. Swede* [ph], a case of the Third Circuit 1985

20 that allows for the exact situation that we're in to resolve

21 itself.  And the matter was covered more specifically in our

22 papers, but the procedure itself would allow Your Honor to

23 indicate that you wish to certify all appeals related to the

24 Confirmation Order to the Third Circuit.  And Wilmington

25 Trust is prepared.  In fact, we drafted the Motion that we

1   would file on an emergency basis with Judge Sleet to return

2   jurisdiction back to this Court for purposes of sending the

3   appeal to the Third Circuit.  And this exact procedure was

4   followed in *Washington Mutual* back earlier this year, I

5   believe in January and early February.  And --

6           THE COURT:  Would such a request at this time be

7   timely?

8           MR. NOVOD:  Pardon Your Honor?

9           THE COURT:  Would such a request at this time be

10  timely with respect to the two appeals that you have filed?

11          MR. NOVOD:  I don't quite understand Your Honor's

12  question.

13          THE COURT:  Would you be out of time to ask for

14  certification?

15          MR. NOVOD:  No we're not Your Honor because the

16  certification statute talks of two different requests

17  concerning timing.  The first is if we come to Your Honor

18  and on Motion ask for it to be certified, which we have not

19  done.  The second is if Your Honor decides to certify.  And

20  so if you read closely the section of the statute which I

21  believe is 28 U.S.C. 158(d)(2)(e), it talks about when a

22  request is made not necessarily upon Motion.  And one has to

23  assume in reading the provision that had they intended to

24  deprive Your Honor and constrict Your Honor as far as the

25  timetable, they certainly would have written a rule in that

1  such manner.

2          THE COURT:  Well I don't think the Court's, at

3  least as I understand it, the Court's hampered by time but

4  the parties are or could be.  Okay.

5          MR. NOVOD:  Sure, I mean, but Your Honor the

6  point of my rising is to tell you and advise you that there

7  is a procedure, we're prepared to proceed on an emergency

8  fashion because at the end of the day a consolidated

9  Appellate process will serve the interests of all the

10 parties and the Court because, frankly, you could have a

11 District Court and the Third Circuit both deciding issues

12 concerning the same parties are interrelated and arise out

13 of the same Order.  And we would suggest Your Honor that --

14         THE COURT:  Look, I think that's a result to be

15 avoided under any circumstance.

16         MR. NOVOD:  Of course Your Honor.

17         THE COURT:  But the mechanics of how that gets

18 worked out I guess we'll have to think about.

19         MR. NOVOD:  Okay, thank you Your Honor.

20         MR. ZENKSY:  Good afternoon again Your Honor,

21 David Zensky, Akin, Gump, Strauss, Hauer & Feld for

22 Aurelius.  Aurelius supports and joins in Law Debenture and

23 Deutsche Bank's Motion to certify the unfair discrimination

24 appeal.  If the Court accepts that Motion and believes that

25 those issues must go up and interprets the statute the way

1  Mr. Rosner described it, then that would be dispositive of

2  what to do with the Aurelius appeal.  We do agree, whether

3  it's mandatory or not, to take all the appeals, that the

4  more efficient course would be to treat everything together

5  as Your Honor just indicated.  And to the extent that you

6  felt it necessary to examine whether our appeal, as the

7  issues are laid out in our stay papers to you, would satisfy

8  the statute we have set that forth in our reply paper per

9  the Court's request and stand by that.

10            THE COURT:  Thank you.

11            MR. CARICKHOFF:  Good evening Your Honor, for the

12  record David Carickhoff with Blank Rome on behalf of EGI-

13  TRB, LLC.  Your Honor even if the Court does not accept Mr.

14  Rosner's interpretation of the statute in terms of whether

15  or not the Court can split the appeals, similar to Mr.

16  Zensky's position, we believe that because Law Debenture's

17  appeal involves the interpretation of the EGI-TRB

18  Subordination Agreement there's overlapping issues.  So we

19  believe that in connection with our Motion for Certification

20  we would at least meet the third requirement in that it

21  would materially advance the Chapter 11 cases and the

22  Appellate process having all that in one context.  We did

23  also raise another ground for certification which is

24  addressed in our papers, and that is the conflicting

25  Decisions.  My sense is that Your Honor probably views that

1  as similar to Mr. Rosner's first and second argument, liking

2  his first argument better.  So I will stop there, rely on

3  our papers on that point.  But again, we do think we've met

4  it with respect to the third prong.  Thank you.

5             THE COURT:  Thank you.

6             MR. ZENSKY:  I'm sorry Your Honor, David Zensky

7  again, Akin, Gump, Strauss, Hauer & Feld.  In my haste to go

8  quickly because of the hour, I neglected to mention one

9  point.

10            THE COURT:  Well your good deed will go

11 unpunished.  How's that?

12            MR. ZENSKY:  Thank you.  In supporting the notion

13 that all of the appeals would travel together, that that's

14 either mandated by the statute or the smart thing to do,

15 should not be interpreted as saying that if you were to send

16 them all to the Third Circuit that they all should

17 necessarily go forward on the same timetable.  We had a

18 lengthy discussion today about the potential risk of

19 equitable mootness.  And the appeals are differently

20 situated with respect to that risk, so I don't want anyone

21 to later interpret our support for the notion of all the

22 appeals traveling together as necessarily indicating that

23 the schedule would be identical for all of them.

24            THE COURT:  I guess that really wouldn't be up to

25 me, would it?

1        MR. ZENKSY:  Exactly and I just wanted to make it

2   on the record.

3        THE COURT:  Thank you.

4        MR. LEMAY:  Your Honor, I just need a second to

5   gather up the rest of the tools of my trade here.  Your

6   Honor, David Lemay from Chadbourne & Parke for the

7   Creditors' Committee, and I believe I have the puck for the

8   co-components on this certification issue as well.  The

9   Court is certainly familiar with Section 158(d)(2).  We do

10  not contest the disjunctive nature of the three-prong test

11  set forth therein, one of those prongs having two

12  subsections.  We also think, and we actually said in our

13  opening brief, that it certainly makes sense for all these

14  appeals to end up in the same place.  If you will allow me,

15  I will be agnostic on whether a different result is

16  possible.  We just don't think that a different result is

17  good.  And then, of course, we have a very firm difference

18  of opinion about what that one place should be.  We do not

19  think these cases should go to the Third Circuit Court of

20  Appeals but rather the District Court in this District, and

21  that's what I'd like to set forth to convince Your Honor of

22  on that.  So just a little bit of sort of stage-setting, the

23  direct appeal statute, as we know, is meant to fast-track

24  questions of law to the Circuit Court.  It's not meant to

25  send up to the Circuit Court every messy and fact bound

1  decision that people might make.  And indeed some empirical

2  evidence and some law review articles have suggested that

3  most of the time direct certification is used to deal with

4  very recurring issues of law that come up often in the

5  repetitive Chapter 13 and Chapter 7 consumer context where

6  the same fact pattern emerges time and time again.  It's

7  pretty rare anywhere and equally -- or even more rare in

8  this Circuit that direct certification is used in the

9  context anything close to this.  But be that as it may, I

10 know Your Honor's judicial style very well, what's done most

11 of the time is not relevant.

12          What I have to do is sort of show you what their

13 outcome should be in this case.  So up until about 6 o'clock

14 on Wednesday evening we had thought that the argument today

15 on certification was going to be very much like the

16 argument, or at least involve very much the same cases and

17 authorities, that have been talked about in the prior

18 hearing when Your Honor considered the allocation Decisions.

19 The original Motions filed for the -- by the indentured

20 Trustees on certification didn't raise any new arguments or

21 didn't suggest any new law.  And indeed, at oral argument

22 when this was argued, the Trustees' Counsel gave a view

23 about the word notwithstanding which we, as you know,

24 contend is critical to the question of controlling law on

25 this issue.  And what they said was that notwithstanding was

1    unambiguous and it meant even before application of

2    subordination.  And the transcript there is pretty clear.

3    Mr. Rosner staked out his turf on notwithstanding.  Nowhere

4    did he ever suggest in the argument below or in his opening

5    brief that Section 1129(b) is ambiguous.  That suggestion

6    emerged about 6:15 on Wednesday night.  And that's an

7    important point.  The reason -- and it's fine that he did

8    that, I'm not contesting his right to do it, but it does

9    inject a new element into the equation.  The reason that he

10   has suggested that Section 1129(b) is ambiguous is because

11   he must confront the *Exxon Mobile vs. Allapattah* case, which

12   I'll talk about a little bit more, which makes it very clear

13   that legislative history which -- on which his argument

14   stands or falls can only be introduced to resolve an

15   ambiguous statute.  So realizing that he needed to argue

16   ambiguity in order to get his legislative history in, and

17   further realizing that the legislative history being the

18   sole crux of his argument had to come in, the brief that we

19   got on Wednesday night raised the issue of ambiguity in

20   Section 1129(b).  It also said that the Third Circuit's

21   definition of notwithstanding in the *Goody's* case, which I

22   argued at the original hearing and which Your Honor accepted

23   in the allocation Decision, that the *Goody's* definition or

24   meaning of notwithstanding was not a good meaning for

25   Section 1129(b), and that Section 1129(b) uses

1   notwithstanding in a different way than *Goody's* uses

2   notwithstanding.  So we went racing back to the library on

3   Wednesday night, it was a busy night for us, and we came

4   away actually with some very new law which I think is highly

5   relevant and indeed dispositive because it emanates from the

6   Third Circuit, there's also some Supreme Court law, both of

7   these new items of law being subsequent to the prior

8   argument and, indeed, the prior Decision on these matters.

9   And so I have to talk a little about some new legal ground.

10  And I apologize for that.  It simply arises from the fact

11  that the question of ambiguity was injected into the

12  argument, really, the night before last.

13          So what I need to do I think to get rid of the

14  first prong on certification, or make it go away, is to show

15  you that controlling authority exists on the legal issues

16  raised.  We don't believe that that requires that we have a

17  controlling case on the precise statutory phrase that is

18  used.  If that were the case, pretty much everything in the

19  Bankruptcy Code would require a trip to the Third Circuit.

20  We believe that the Supreme Court of the United States and

21  the Third Circuit have issued controlling guidance on all of

22  the issues that Your Honor needs to resolve -- or that a

23  reviewing Court, I'm sorry Your Honor, needs to resolve this

24  appeal.  And those issues are, one, what does the word

25  notwithstanding mean in the first word of Section 112(b)(1)?

1  And then second, what is the correct role of legislative

2  history when interpreting the statute?  I'd like to submit

3  Your Honor that the word notwithstanding is completely

4  settled in the Third Circuit and that there's no doubt about

5  it.  The Third Circuit analyzed and explained what

6  notwithstanding meant in the *Goody's* case and the Trustees'

7  argument that it should mean something other in Section

8  1129(b) than it did, for example, in Section 365(d) really

9  has no basis in Third Circuit law.  The Supreme Court held

10 in a case that we cite in our papers called *U.S. National*

11 *Bank of Oregon against Independent Insurance Agents of*

12 *America*, there is a presumption that identical words used in

13 different parts of the same Act are intended to have the

14 same meaning.  That's pretty commonsensical.  You would

15 think that in a codified statute, such as the Bankruptcy

16 Code, when the same word is used that it ought to, in the

17 absence of some other compelling reason, be used the same

18 way.  And there's nothing to rebut that presumption here.

19 And, in fact, there's actually a brand new Decision out of

20 the Third Circuit.  It's kind of remarkable that once again

21 this has happened.  But I'd like to talk a little bit about

22 a case called *In Re:  Federal-Mogul Global Inc.*  It's

23 reported at 684 Fed 3rd 355.  It's a Third Circuit and it was

24 issued on May 12th -- or May 1st of this year subsequent to

25 all of the adventures that we had on the allocation

1    Decisions.  In that case, *Federal-Mogul,* the Court was

2    analyzing the first words of Sect5ion 1123(a) of the

3    Bankruptcy Code.  Those words read, "Notwithstanding any

4    otherwise applicable bankruptcy law."  And the Court

5    concluded that the phrase, in its words, clearly, the

6    clearly is the Third Circuit speaking, not me, means that

7    Section 1123(a) preempts state law.

8         I'd like to quote a little bit from *Federal-Mogul*

9    because it hasn't been part of the dialogue yet.  So here's

10   the *Federal* quote from page 369 of Fed 3rd.  The critical

11   words here are -- and then there's an imbedded quote from

12   the Supreme Court are, "Notwithstanding any otherwise" --

13   I'm sorry this is from the statute -- "Notwithstanding any

14   otherwise applicable non-bankruptcy law."  The Third Circuit

15   goes on, the Supreme Court has held that a notwithstanding

16   clause "clearly signals the drafter's intention that the

17   provisions of the notwithstanding section override

18   conflicting provisions" from the Supreme Court case Third

19   Circuit going on noting numerous instances when Courts of

20   appeals "have interpreted similar notwithstanding language

21   to supersede all other laws stating that," again quoting

22   from the Supreme Court, "a clearer statement is difficult to

23   imagine".  A clearer statement is difficult to imagine.  The

24   Supreme Court case that the Third Circuit is mentioning is a

25   case called *Cisneros vs. Alpine Ridge Group.*  It's reported

1  at 508 U.S. 10 with a jump cite to 18.  So there is the

2  latest word from the Third Circuit on what the word

3  notwithstanding means in the Bankruptcy Code and what it

4  means and how we should read it.  The Trustees say that

5  *Goody's* doesn't look good.  They said that *Goody's* wasn't

6  relevant because 365(d)(3) isn't similar in construction to

7  Section 1129(b).  That ignores, first of all, the *U.S.*

8  *National Bank of Oregon* case that I was talking about a

9  moment ago and -- because that case said that when the same

10 word is used in different parts of the statute it's meant to

11 have the same meaning.  I covered that I think before.  The

12 Trustees cite a case called *Conoco v. Skinner* for the

13 proposition that, "Courts must discern the meaning of

14 notwithstanding from the legislative history, purpose and

15 structure of the statute".  I'll note that *Conoco,* unlike

16 *Federal-Mogul,* is a 20-year old case, doesn't deal with the

17 Bankruptcy Code, it deals with Federal Maritime law.  And it

18 does -- although in that particular case it held that there

19 was no preemption within the Maritime statute section

20 itself, it did note that the use of the word notwithstanding

21 "in many cases is powerful evidence that Congress did not

22 intend of the legislation to take precedence."  So I think

23 that *Conoco* case is really not the best authority.  I think

24 the best authority that we should talk about is the *Federal-*

25 *Mogul* case.  And I'd like to note that *Federal-Mogul* is --

1  I'm sorry, the statute at issue in *Federal-Mogul*, Section

2  1123(a), is syntactically and grammatically completely

3  indistinguishable from Section 1129(b) of the Bankruptcy

4  Code.  Section 1123 reads, "Notwithstanding any other

5  applicable non-bankruptcy law -- any otherwise applicable

6  non-bankruptcy law, a Plan shall," and then it goes on.

7  Section 1129(b) for its part says "notwithstanding Section

8  510(a) of this Title if all of the other -- if all of the

9  applicable requirements of subsection (a) of this section

10  other than paragraph (8) are met with respect to a Plan, the

11  Court on request of the Proponent under the Plan shall

12  confirm the Plan."  Or just to hammer the point home, it is

13  a completely indistinguishable grammatical construction.

14  Now for that reason alone I would suggest that there is

15  controlling authority on the meaning of the word

16  notwithstanding as it's applied in the Third Circuit.  We

17  now have within the last couple of years and in one case in

18  the last couple of months the Circuit Court telling us what

19  this word means and can it mean anything else when it said a

20  clearer -- I have to go back and find that quote from --

21  that I like so much from *Federal-Mogul* where basically

22  quoting the Supreme Court it made the point that a clearer

23  statement of an intent to override could hardly be imagined.

24  I had my colleagues look in the Bankruptcy Code.  It turns

25  out there are 67 sections in the Code where the word

1    notwithstanding is used.  If the proposition is that the

2    Third Circuit has in a controlling way resolved the meaning

3    of notwithstanding in two of those sections, but 65 more are

4    up for grabs and have to go to Philadelphia before we know

5    what they mean, I'd like to suggest that that is simply --

6    it's simply beggars the imagination.  When Circuit Courts

7    issue dispositive rulings on things like what a word means

8    in law, the idea is not that you pick and choose.  And I

9    think at this point I would suspect that the Circuit would

10   be a little astonished if somebody didn't know what the word

11   notwithstanding meant.  And I can't imagine that it could

12   seriously be contended that we need 65 more appeals on each

13   use of the word notwithstanding.

14          For that reason, I think Your Honor can conclude

15   that as a matter of Circuit law the issue of notwithstanding

16   is settled by controlling law and, therefore, that prong of

17   certification is not applicable, the Third Circuit has

18   spoken.

19          Another issue which is settled by controlling law

20   is what -- in what way and how does legislative history get

21   used in interpreting a statute?  We have in our briefs way

22   back when the case was originally argued quoted a case

23   called *Exxon Mobil vs. Allapattah*.  And Your Honor's

24   allocation Decision actually quoted extensively in footnote

25   20 from that *Exxon Mobile* case.  The key sentence from *Exxon*

1 *Mobile against Allapattah* that I think is important here is

2 as follows, and it's a quote from the Supreme Court case.

3 It's from 545 U.S. 545 and the jump is to 568.  And here's

4 the Supreme Court, "Extrinsic materials have a role in

5 statutory interpretation only to the extent they shed a

6 reliable light on the enacting Legislature's understanding

7 of otherwise ambiguous terms."  And that's why Your Honor

8 the argument for ambiguity was made on reply the night

9 before last.  It became clear to the Trustees that the

10 legislative history that they want to introduce as

11 "governing" can't come in, can't even be considered unless

12 there's a question of ambiguity of the statute.  And the

13 authorities, that which I'll get to in a moment, are just

14 legion, *Exxon Mobile* itself, most recently a case from April

15 18th, 2012, again subsequent to the hearings on the

16 allocation Decision called *Mohammad against Palestinian*

17 *Authority*.  It's reported at 132 Supreme Court Reporter 1702

18 with a jump to 1709.  And what that case says, and this is

19 the quote, "Reliance on legislative history is unnecessary

20 in light of the statute's unambiguous language."  So there's

21 just no doubt at all that the legislative history snippet,

22 the so-called odious and a roundabout legislative history

23 snippet on which the entire argument of the Trustees relies

24 simply should not but, more importantly, cannot be part of

25 this Court's analysis.  You cannot use, and a Court cannot

1  use, the legislative history to impeach the text of the

2  statute.  The legislative history was never enacted.  I

3  think we recited all of the policy reasons why legislative

4  history doesn't work.  It's susceptible to manipulation.

5      Another recent case out of the Third Circuit, again

6  subsequent to the argument on this matter, is the case

7  called, I may be pronouncing it wrong, it's called I believe

8  *Knepper* but it's spelled *K-n-e-p-p-e-r against Rite Aid*

9  *Corporation*.  And it's reported at 675 Fed 3rd 249 with a

10  jump to 259 and 260.  It's from March 27th.  It's the Third

11  Circuit.  Here's what the Third Circuit most recently said

12  on legislative history, "Because reliance on the remarks of

13  legislators, not to supplement but to supplant the duly

14  enacted statutory text circumvents the Article 1 process, we

15  do not need to go beyond the plain text in interpreting the

16  statute."  And they quote the *Exxon Mobile against*

17  *Allapattah* case.  That's not surprising.  The Third Circuit

18  has also said in a case *called Brusewitz* which I think the

19  Trustees cited in their papers, we may have done so as well,

20  to say that ambiguity is found when there are two equally

21  plausible readings of statutory text.  *Brusewitz against*

22  *Wyeth* tells us there have to be two equally plausible

23  readings of statutory text.  But, of course, we don't have

24  that here.  We have one, and only one, plausible reading of

25  the word notwithstanding which was first stated in *Goody's*

1  by the Third Circuit, then reiterated just very recently by

2  *Federal-Mogul*, and on the other hand we have some

3  legislative history which is un-enacted.  I think that it's

4  very clear under controlling Third Circuit precedent this

5  legislative history really can't even be part of the

6  analysis.  Indeed, the Trustees cited a case called

7  *Calabrese*.  It's from July 20th, 2012.  That's a case in

8  which the Third Circuit looking at Section 507(a)(8) of the

9  Bankruptcy Code first concluded that 507(a)(8) is an

10  ambiguous section and then having concluded that it was not

11  clear, in its own words, reluctantly turned to legislative

12  history saying, "Reluctant as we are to wade into the murky

13  waters of legislative history, the ambiguity inherent in the

14  text of the statute requires us to do so."  So I think that

15  can be contrasted most distinctly from the word

16  notwithstanding as used in 1129 which has the benefit of

17  absolute clarification by the two cases that I've been

18  talking about repeatedly because I think they're so good for

19  us.

20          THE COURT:  Of course they also had prior

21  decisional law on which they relied, I think, to get to the

22  result there, am I correct, if I'm thinking of the right

23  case?

24          MR. LEMAY:  I'm not sure if I understand Your

25  Honor's question.

1        THE COURT:  Is this the taxes held in trust case?

2        MR. LEMAY:  It is a case about taxes, yes.

3        THE COURT:  Yeah.

4        MR. LEMAY:  But I think the key thing though, if

5   you look at the Circuit's Decision of the word

6   notwithstanding, I think it's just very clear that they are

7   stating a general proposition about how Bankruptcy Courts

8   ought to read notwithstanding.  And in fact, at one point a

9   couple pages later on they say -- they talk about the

10  legislative history and they say that the evidence from the

11  legislative history "is too equivocal to overcome the plain

12  meaning of the text which provides compelling evidence of

13  Congress' intent to preempt contrary non-bankruptcy law."

14        So, yes, there was prior decisional history.  But

15  I think that a fair reading of *Federal-Mogul* is that it can

16  be read and must be read to tell us what notwithstanding

17  means.  And when it follows hard on the heels of *Goody's* I'm

18  hard put to understand how anyone could construct an

19  argument that notwithstanding could mean something different

20  anymore in this Circuit.

21        Your Honor had some colloquy with Mr. Rosner

22  about what happens when you're talking about application of

23  law to facts, does that get certified.  And I think what I

24  took from Your Honor was that wasn't one where, you know,

25  you needed a lot of help from the advocates.  I'm perfectly

1    happy to tell you why I don't think the determinations that

2    you made about materiality in this particular case and the

3    amount of materiality and whether it amounts it's unfair.  I

4    perfectly have to tell you why I don't think that is the

5    stuff of direct certification.  But unless you wish me to

6    talk more about that, I got the sense from your conversation

7    with Mr. Rosner that that was an issue that you pretty much

8    had sorted out in your own mind and it's quite late.  If you

9    need that from me, though, I've got an outline.

10            THE COURT:  No that's fine, thank you Mr. LeMay.

11            MR. LEMAY:  Yeah.  Then we go to the question of

12   public importance, and just a couple of things on public

13   importance.  First I think Your Honor was correct in the

14   conversation/dialogue you had with Mr. Rosner, but a couple

15   of things.  The first thing they've said is, oh my God, this

16   is an issue of public importance because this ruling that

17   the Creditors' Committee has procured is going to wreck the

18   debt markets and nobody will ever do a debt deal.  There's

19   been proof of that.  Indeed, as far as we can tell, nobody

20   has written any articles about it.  No financing activity

21   has been affected by it.  I think it's a giant red herring.

22   And speaking of red herrings, the cases that have been

23   talked about, about respecting subordination, the need to

24   respect subordination, Mr. Rosner up here I think mentioned

25   *Enron*.  They also quoted a case called *Ion*.  There are a

1  bunch of cases that say that subordination absolutely must

2  be respected as between the parties to the Subordination

3  Agreement.  The junior creditor cannot get a dime over his

4  dissent -- over that class's dissent in a cram-down setting

5  unless the senior creditor agrees.  Now those cases are

6  obviously not applicable here.  Mr. Zensky once memorably

7  referred to the PHONES' recovery in this case as being a

8  bagel, and it stuck I my mind.  And that's true.  The PHONES

9  are not getting anything and the EGI-TRB notes are not

10  getting anything under the DCL Plan until the senior

11  creditors are paid in full, so all of the cases about people

12  running away from Subordination Agreements are simply

13  irrelevant.  What we're talking about here is the

14  distribution of value under a Chapter 11 plan as between

15  beneficiaries of a Subordination Agreement on the one hand

16  and strangers to the Subordination Agreement on the other

17  hand.  No one is proposing to deviate from the contractual

18  bargain that the junior creditors made.  And as to the

19  strangers to the Subordination Agreement, the Subordination

20  Agreement is an irrelevance to them.  They're not bound by

21  it.  They're not charged with its provisions.  The only

22  thing that comes into play is the requirement of Section

23  1129(b)(1).  Does the Plan discriminate unfairly?  And if

24  the Plan does discriminate unfairly, you can't confirm.  And

25  if the Plan does not discriminate unfairly, then you must

1   confirm, the other requirements are met.  And, of course,

2   the Third Circuit has now told us twice in the last couple

3   of years that notwithstanding 510(a) means exactly what it

4   says.

5           Material advancement of the case has been

6   advanced as another reason to certify.  I think Your Honor

7   has already dealt with this.  In the *New Century* case you

8   made the observation, which I think is absolutely spot on,

9   that the material advancement of the case prong of

10  certification really has to do with what's going to get us

11  to confirmation, what's going to get us to confirmation.

12  And that -- what you said was while arguably there's some

13  post-confirmation vitality to this prong, the emphasis

14  really is on Plan confirmation.  And I think that's right

15  here.  We have a confirmed Plan, and the material

16  advancement of the case prong I think is not relevant.  In

17  any event, it is very hard for me given that we all agree,

18  both sides of the table agree, that these appeals all must

19  travel together, it is very hard for me to understand how

20  the case would be materially advanced by having a whole

21  bunch of fact bound tagalong appeals, which I'll get to in a

22  second, go up to the Third Circuit because that would be a

23  pretty unwieldy mess for an Appellate Court which is really

24  not used to dealing with those things and I think shouldn't

25  be properly charged with dealing with those things.

1           EGI, for example, their argument is about whether

2     a particular term in a particular Subordination Agreement

3     does or does not subordinate particular recoveries to the

4     claims of the senior creditors.  Similarly with Wilmington

5     Trust, their complaint and their appeal is going to be about

6     whether particular subordination provisions in their

7     indenture do or do not require them to turn over proceeds of

8     avoidance actions, among other appeals.  Those to me strike

9     me as the sort of one-time, idiosyncratic, non-law forming

10    type appeals that really are not the sort of thing that

11    judicial efficiency would suggest go up to a Circuit Court

12    in the first instance.  Aurelius' appeal raises, no matter

13    how you cut it, a gigantic factual record.  The Aurelius

14    appeal ultimately is going to have to succeed -- I'm sorry,

15    the Aurelius appeal, in order to succeed, is going to have

16    to show that Your Honor basically got it wrong when you

17    ruled that the settlement fell above the lowest point in the

18    range of reasonableness.  That, by definition, is going to

19    impact all the factual findings that went into that, the

20    discussion of where up streaming, all of these concepts, all

21    of which are fair game for appeal, but none of which strike

22    me as the sort of thing that the Circuit Courts of appeal

23    ought to have loaded upon them in the first instance without

24    benefit of a stop -- a step in the -- a stop, I'm sorry, an

25    intermediate stop at the District Court.  I want to mention

1    -- my colleague as you can has just handed me a note.

2            Your Honor decided that the swap claim was

3    entitled to contractual seniority.  And that is both a

4    ruling in its own right because it took the swap claim and

5    said that it was fairly a beneficiary of contractual

6    subordination, vis-à-vis the PHONES and EGI.  But it also,

7    of course, had an implication for the degree of so-called

8    discrimination that the Trustees could assert.  Again I

9    think that swap claim Decision which is, again, asked to be

10   swept up directly to the Third Circuit is unique to a

11   specific set of documents and is not the sort of thing that

12   the Court of appeals which is meant to be creating broad

13   policy guidance for the lower Courts in the Circuit should

14   be dealing with.

15           The second question I think Your Honor has to

16   answer -- I think what I've just tried to answer are what

17   must Your Honor certify.  And my answer and the answer I'd

18   like to advocate to the Court is that Your Honor needn't

19   certify anything.  There's nothing you must certify.  I

20   guess the second question is what should you not certify or

21   could not certify?  I guess I won't take a firm view on

22   whether Your Honor lacks the ability to deal with and send

23   up the pending appeal in the District Court filed by

24   Wilmington Trust, but it does strike me that the

25   [indiscernible] process that they've advocated by which the

1    District Court would be asked to remand that pending appeal

2    down to you so that you, if you are inclined to bundle

3    everything up and send it to the Third Circuit, that you can

4    send it to the Third Circuit along with everything else.

5    But if you're not inclined to do that, it will go back to

6    the District Court.  It strikes me that that sort of

7    approach, and I won't take a view on whether it's illegal or

8    proper or improper, it treats the District Judge a little

9    bit like a zip car, like we'll pick you up when we need you

10   and then we'll drop you off when we're done with you, but we

11   then you need again a little bit later.  So I'd suggest that

12   just as a matter of prudence that whether or not

13   Wilmington's procedural gambit is in any way permissible,

14   and I don't really at this point after -- 36 hours after

15   having seen their papers, I don't have a view whether it is

16   or isn't, I don't think it's a good idea and I don't think

17   it's really the right approach, vis-à-vis the District

18   Court.  But that's for Judges, not lawyers, to decide.  I

19   just offer it.

20             So what should the Court do?  We don't think you

21   should sua sponte certify.  We don't think you should on

22   Motion certify.  We think what you should do is send all of

23   these appeals in one bundle up to the District Court.  The

24   District Court is an excellent position as a Court which, in

25   its own right, is a trial Court, although it would be

1  sitting in Appellate capacity here, but as a trial Court

2  with experience in conducting trials it would be in a much

3  better position to deal with the whole wealth of factual

4  issues raised by the EGI appeal, raised by the appeal filed

5  by Wilmington Trust, raised by the swap appeal and, most

6  importantly, raised by the Aurelius appeal.  So like Mr.

7  Rosner, I do agree that these appeals should all travel to

8  the same home.  But I believe that home should be the

9  District Court.  And, most importantly, I believe that

10  controlling authority, the controlling authority I've cited

11  from the *Goody's* case from the *Federal-Mogul* case on the

12  meaning of notwithstanding, and then the Supreme Court and

13  Third Circuit cases that I've cited, including the very

14  recent *Knepper* case from the Third Circuit, make it very

15  clear that there's no mandatory basis for certification.

16  Having concluded that there is no mandatory basis for

17  certification, I hope I've demonstrated why it's a bad idea.

18  And that's all I have for Your Honor.

19         THE COURT:  Thank you.

20         MR. BENDERNAGEL:  Your Honor Jim Bendernagel for

21  the Debtor.  And I'm not going to repeat anything that Mr.

22  LeMay said.  I think -- I agree with it.  But there is a

23  practical issue here that I think you should consider and it

24  was triggered in my mind by reading Aurelius' submission

25  because Aurelius has this strange word -- some strange

1  sentence that says why they didn't seek certification to

2  begin with.  They said because they worried that it would

3  slow things down.  And the question I said to myself, well,

4  what do you mean by that?  Direct appeals would be quicker

5  because you're cutting out a layer.  And I think the big

6  concern here is that whatever you do, if you certify this

7  whole gaggle of cases and send it on up it, doesn't mean the

8  Third Circuit is going to take it.  And, you know, there

9  hasn't been any evidence or any citation presented.  What

10  they're proposing to do here has been done before and the

11  Third Circuit has said, thank you sending all that up stuff

12  up here.

13                         (Laughter)

14           MR. BENDERNAGEL:  And it would really be ashamed

15  if they loaded up the truck [indiscernible] and the Third

16  Circuit said turn your truck around and head on back down

17  the highway.  And, you know, given what the Third Circuit

18  has done and has not done on certification it wouldn't

19  surprise me at all that this would be a roundtrip without

20  any kind of stop off in Philadelphia on the merits.  And I

21  don't think that would help anybody in that regard.  And I

22  think you just should that into consideration.  Thank you.

23           THE COURT:  Thank you.  Mr. Rosner I have a

24  question for you that just struck me, I don't know why, as

25  we're going through the statute.  And that is if I were to

1  deny your Motion for Certification, would the District Court

2  have the authority to certify on its own if it wanted to?

3        MR. ROSNER:  To give you a definite answer to

4  that, the answer is I think so.  But it's not clear I don't

5  think on the face of the statute.  We asked ourselves the

6  same question.  I don't think by virtue of appeal it is, but

7  I do think that it's this Court's, you know, decision.  I

8  can get back to you because I do have a request in that

9  regard.

10        THE COURT:  It wouldn't affect my decision on the

11  Motion but it just as a matter of curiosity struck me just

12  now, but thank you.

13        MR. ROSNER:  Because it's written in a way that

14  says on a request of the party then it has the two Courts.

15  So I have just a couple of -- two or three quick points and

16  then a request.

17        THE COURT:  Okay.

18        MR. ROSNER:  And what we're talking about, what

19  we're saying there is no Circuit level or Supreme Court

20  authority on is the meaning of notwithstanding Section

21  501(a) in the context of applying unfair discrimination in a

22  cram-down Plan.  So we're talking about the topic of unfair

23  discrimination and the meaning of this phrase within unfair

24  -- within 1129 (b).  So yes, there's the *Goody's* case that

25  talks about what the word notwithstanding means and there's

1   now this case *Federal-Mogul* that talks about what the word

2   notwithstanding is.  But what it doesn't do is talk about if

3   you have a Subordination Agreement and you have this phrase,

4   how does that play into the cram-down and is this phrase

5   going to be interpreted the same way as the word

6   notwithstanding was interpreted in those two cases.  And one

7   of the things, and I just looked at this quickly and that's

8   why I have a request in a moment, one of the things that it

9   appears that *Federal-Mogul* said, and I'm saying this without

10  having gone through the Decision and that's why I have a

11  request, is that it says that there's no textual support in

12  that section for reading it any other way.  And that's kind

13  of our central point on unfair discrimination and

14  notwithstanding Section 510(a) is that there is kind of a

15  textual support for reading it a different way.  It's

16  unclear what it means in this statute in particular.  For

17  example this says that if all -- this -- I'm sorry "this" is

18  1129 (b).  It says "if all applicable requirements of

19  subsection (a) of this section other than paragraph (8) are

20  met with respect to a Plan, the Court shall confirm the Plan

21  notwithstanding that paragraph".  It does not exclude

22  1129(a)(1).  So the argument is made, well, but it leaves

23  notwithstanding Section 510(a) of this Title and what that

24  must mean is that it only has to apply with all provisions

25  of Title 11 other than 510(a) and we should understand that

1  in cram-down this Court should look at 1129(a)(1)

2  differently.  But that's not what the statute says.  The

3  statute doesn't make that clear that it's accepting this

4  from the otherwise requirement that the same statute says

5  you have to find that (a)(1) is met.  It doesn't accept this

6  out of that (a)(1) provision.

7         But secondly -- and secondly if this obvious

8  interpretation is absolutely correct, then it would take

9  Subordination Agreements also out of, as I read this, the

10  fair and equitable requirement.  And if the fair and

11  equitable requirement, if you took Subordination Agreements

12  out of them, then the other entire sections that deal with

13  which classes are senior and which classes are junior no

14  longer are relevant in cram-down. And everybody knows that

15  that's not the same.  This is not -- Subordination

16  Agreements define who's senior and who's junior for the

17  purposes of cram-down.  So if you read it in just the way

18  that's being proposed it would have that meaning and could

19  have that meaning which would create remarkable turmoil in

20  the markets, I would suggest.  But there is textual support

21  for a contrary reading which it doesn't seem to be in

22  *Federal-Mogul* at least is what the Court appears to say on a

23  quick glance at the Decision.  Now here's my request.  My

24  request is that the -- that Decision was not set forth in

25  the Committee's papers or the responsive papers.  Nobody

1 handed me a copy of it today and said, hey, we're going to

2 be talking about this.  I don't know if you've seen it.  We

3 didn't raise it and, you know, you may not have looked at

4 it.  I'd like to take a chance to look at it.  And if

5 necessary, if I believe it's necessary, if Your Honor is not

6 ruling from the bench today but is actually going to hold

7 thing over until sometime next week, then to submit a

8 paragraph or two if I feel it's necessary to respond to the

9 argument of Mr. LeMay today.  That's a second request of the

10 party.  The first request was for certification.  The second

11 request was that one.

12        THE COURT:  If you had a choice between the two,

13 which would you make?

14        MR. ROSNER:  I'd go for certification Your Honor.

15        MR. LEMAY:  May I be heard very briefly?

16        THE COURT:  You may.  I'll respond to Mr. Rosner

17 before we go.

18        MR. LEMAY:  I'm sorry?

19        THE COURT:  I'm telling Mr. Rosner I would

20 respond to his request before we go.

21        MR. LEMAY:  If Your Honor believes that further

22 papers are helpful in an extremely compressed period of

23 time, of course who am I to disagree?  I guess the only

24 thing I would say is if he keeps raising new legal theories

25 in his reply paper, I'm going to keep finding new Third

1  Circuit cases to stump him with.

2                    (Laughter)

3            THE COURT:  I don't doubt it.  All right, are we

4  finished?

5            MR. BENDERNAGEL:  Actually, we're not.  There's

6  another item on the agenda and it's not pressing -- well

7  I'll hold off on that.  We had filed a Motion along with

8  Wilmington Trust earlier this week to shorten time to get on

9  the agenda, these various Motions that have been filed with

10 respect to counter designations of the record.  This whole

11 situation arose about two weeks ago when Law Debenture filed

12 a Motion seeking to essentially extend its time to do its

13 designations until shortly after today's hearing.  We filed

14 a Motion saying we didn't want to have to counter designate

15 four separate times.  Wilmington Trust has filed a Motion

16 saying they'd like to counter designate after Law Debenture

17 because they're arguing many of the same things.  And

18 Aurelius filed an objection criticizing us for slowing them

19 down because we hadn't counter designated and the like.  And

20 rather than have this continue on what we're really looking

21 for is simply a unified program that basically says get all

22 counter designations done by a certain date -- all the

23 designations done and we'll counter designate within seven

24 days.  And we cut our time period from 14 days to seven days

25 at least in that scenario.  We're willing to work with

1   Aurelius and I talked with Mr. Zensky today saying, you

2   know, we can probably work this out faster than burdening

3   the Court with this because under Law Debenture's proposal

4   they were going to designate on Monday, and if Wilmington

5   Trust were to designate two days later and EGI was to

6   designate what it wants to designate you'd probably have

7   this all wrapped up in about a week-and-a-half.  I'm willing

8   to work with them on that over the weekend and not bother

9   you today.  If you want to do argument on this issue, I

10  mean, I really think what we need is just some guidance as

11  to how this is going to get done.  I don't think anybody is

12  disputing that it has to be done.  It just seems to me that

13  there's an efficient way to do this.  And I think there's

14  been recognition today that all this stuff, at least for the

15  time being until Mr. Zensky gets his own fast track, should

16  be done in some kind of a coordinated basis.  And that's

17  what we're looking for.

18          THE COURT:  Well --

19          MS. NEWMAN: Your Honor may I be heard on this?

20          THE COURT:  Yes certainly.

21          MS. NEWMAN:  I won't argue the Motion, but just

22  briefly, you know, it's our position on behalf of Aurelius

23  that the designations to -- counter designations on

24  Aurelius' appeal should be filed immediately.  For reasons

25  that I'm sure are obvious to the Court, Aurelius filed its

1  Notice of Appeal and Designations as soon as it could on the

2  day the Confirmation Order was entered so that the appeal

3  could move forward as quickly as possible.  Absent the DCL

4  Plan Proponent's 9006 Motion, the counter designations to

5  Aurelius' appeal would have been filed on August 7th.

6  Aurelius' appeal cannot forward to the District Court or to

7  the Court that will ultimately be the first Court to hear

8  the appeal until the record is complete and in the absence

9  of a stay.  And really, even if the stay is granted, given

10  the limited duration of the stay that Aurelius is seeking,

11  even a delay of one week could mean the difference between

12  having Aurelius' appeal adjudicated and having it ruled

13  equitably moot.  As Mr. Zensky said today, we believe that

14  the egg can be unscrambled but there is obviously a real

15  risk that the Court that determines that issue will disagree

16  with us.  And so we would like this Motion heard today and

17  we would request that the Motion be denied and that the DCL

18  Plan Proponents be ordered to respond to Aurelius'

19  designations of record forthwith on Monday.

20         THE COURT:  Well, first of all, it's my intention

21  to ask the DCL Plan Proponents if they will again agree to,

22  I forget how we couched it over the telephone but, not a

23  stay I guess necessarily but an agreement not to go

24  effective.  That lasts until today, if I understand it

25  correctly, would have been agreed, I'd like to ask that that

1    be extended until the time of decision on pending Motions,

2    not the two we're talking about now but the Motions for

3    Stay.

4            MR. BENDERNAGEL:  That's not a problem Your

5    Honor.  I can't imagine we'd disagree with that simply

6    because if we did, you'd order it.

7            THE COUT:  Yes I would.

8                        (Laughter)

9            MR. BENDERNAGEL:  I'm getting ahead of the curve

10   here.

11           THE COURT:  So in light of that, let me ask

12   Counsel to confer over the weekend and see if the issues

13   raised in five and six can be resolved.  If they can't,

14   advise me and then I'll decide where to go from there.

15           MR. BENDERNABEL:  Appreciate it Your Honor.

16           MS. NEWMAN:  Thank you Your Honor.

17           THE COURT:  Okay.  Mr. Rosner, and I guess for

18   anybody else at this point, if somebody wants to submit a

19   short letter to me by noon on Monday, you may do so.

20           MR. ROSNER:  Thank you Your Honor.

21           THE COURT:  All right?

22           MR. BENDERNAGEL:  May I ask clarification?  I

23   take it you're not asking for a short letter on any subject

24   [indiscernible].

25                        (Laughter)

1          MR. BENDERNAGEL:  You're talking about the

2  subject matter that Mr. Rosner --

3          THE COURT:  I am.

4          MR. BENDERNAGEL:  -- because otherwise you could

5  get as many spam emails as Mr. Hartenstein got last night.

6          THE COURT:  And you may submit them to chambers'

7  email if you'd like.  I like them e-filed, but you can send

8  them to chambers' email.

9          MR. LEMAY:  Your Honor David LeMay again.  Would

10 you wish to impose a specific page limit?  And if so, that's

11 fine by us.

12         THE COURT:  I was thinking two pages.

13         MR. LEMAY:  That's --

14         THE COURT:  Mr. Rosner do you think you need

15 more?

16         MR. ROSNER:  No Your Honor.

17         THE COURT:  Okay.  Okay is there anything further

18 for today?

19         MR. BENDERNAGEL:  Well, you had indicated earlier

20 you might be giving us some guidance.  But it's late in the

21 day and we don't have anything more.

22         THE COURT:  I am unprepared to do that.  And I'm

23 just -- I'm unprepared to do that.

24         MR. BENDERNAGEL:  Then we don't have anything

25 further Your Honor.

1          THE COURT:  All right, thank you all very much.

2    That concludes this hearing.  I ask that you collect your

3    things with [indiscernible] for the benefit of Court and

4    Court staff and security staff.  I wish you all a good

5    weekend and safe travel home.  Court is adjourned.

6        (Whereupon, at 6:12 p.m. the hearing was adjourned.)

7

8                        CERTIFICATION

9          I certify that the foregoing is a correct

10   transcript from the electronic sound recording of the

11   proceedings in the above-entitled matter.

12

13

14   _____        20 August 2012

15   Tammy Kelly, Transcriber

16   Date

17

INDEX

| WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Eddy Hartenstein | 17 | | | |
| By Montenegro | | 50 | | |
| By Zensky | | 74 | | |
| | | | | |
| David Kurtz | 87 | | | |
| By Korpus | | 134 | | |
| By Zensky | | 162 | 167 | |
| By Korpus | | | | 176 |

| EXHIBITS: | | MARKED | ADMITTED |
|---|---|---|---|
| Hartenstein: | | | |
| #1 Amended Declaration | | 18 | 49 |
| #2 Summary of Brand Erosion | | 19 | 49 |
| #3 Press Release | | 22 | 49 |
| #4 Publishing Peer Analysis | | 24 (SEALED) | 49 |
| #5 2012 Operating Plan | | 39 | 49 |
| #6 2012 2nd Quarter Operating Results | | 60 | 83 |
| #7 Supplemental Disclosure | | 52 | 83 |
| #8 Periodic Report, 6/24/12 | | 57 | 83 |
| #9 Schedule 14A, E W Scripts | | 65 | Withdrawn |
| #10 Schedule 14A, Lee Enterprise | | 68 | Withdrawn |
| | | | |
| Kurtz: | | | |
| | | | |
| #1 Declaration | | 94 | |
| #2 Chart | | 94 | |
| #3 Chart | | 94 | |
| #4 Office of U.S.Court of Appeals | | 104 | |
| #5 Chart | | 107 | |
| #6 Chart of Reference Points | | 124 | |
| #7 Tribune Sr. Loan Pricing | | 127 | |
| #8 High Yield Bonds List | | 152 | 162 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**08-13141(kjc**(1) 1:5
**10-day**(3) 126:9 159:21 160:8
**112(b)(1**(1) 281:25
**1129(a)(1**(3) 263:15 300:22 301:1
**1129(b)(1**(1) 292:23
**12-month**(2) 105:3 106:6
**158(d)(2**(1) 278:9
**158(d)(2)(a**(1) 265:10
**158(d)(2)(e**(1) 274:21
**180-day**(1) 216:17
**20-year**(1) 284:16
**24-hour**(1) 79:20
**24-month**(5) 103:8 103:10 111:4 135:19 155:23

**24.3-month**(1) 163:11
**30-month**(1) 106:7
**365(d)(3**(5) 262:17 263:3 263:4 263:11 284:6

**43-month**(1) 69:20
**507(a)(8**(2) 289:8 289:9
**a)(1**(4) 263:19 263:20 301:5 301:6
**a)(8**(2) 263:18 263:19
**a.m**(3) 1:16 10:1 87:6
**abbruzzese**(1) 7:38
**abided**(1) 273:17
**abilities**(1) 77:21
**ability**(19) 26:23 30:20 33:2 33:11 33:16 78:3 146:9 146:23 147:2 159:7 174:18 200:23 201:17 221:13 232:12 236:12 244:9 271:4 295:22
**able**(34) 33:19 33:25 40:16 44:14 55:2 56:20 56:25 61:14 62:16 78:1 78:12 78:17 79:7 95:14 99:14 115:11 119:16 130:15 130:16 133:16 175:6 178:18 191:25 204:2 210:13 210:14 217:23 221:14 222:22 227:16 230:24 233:23 234:1 245:8

**about**(234) 10:24 12:10 16:17 19:17 21:3 21:3 22:17 23:19 27:1 27:7 27:16 28:13 31:12 37:4 42:9 42:17 44:8 52:5 52:11 54:18 56:16 57:2 58:6 63:11 65:17 66:1 66:4 67:3 69:12 73:21 74:14 75:19 77:13 77:24 78:10 79:10 79:25 80:15 80:17 83:11 83:20 83:21 84:13 86:12 86:16 86:23 95:17 97:4 98:21 101:10 102:4 105:13 118:2 118:9 118:24 118:25 120:23 120:24 123:10 125:25 132:4 133:13 133:14 135:14 136:13 137:16 142:15 142:22 146:25 155:13 156:23 157:19 165:25 166:22 166:23 168:2 170:7 171:1 171:4 172:10 173:2 173:6 174:2 176:23 177:13 180:20 180:23 181:13 182:20 183:8 183:25 184:23 185:5 185:21 186:15 186:16 187:2 187:23 189:1 190:19 191:5 191:14 191:19 192:25 193:16 193:17 195:17 196:1 197:4 197:6 197:7 199:13 200:21 201:20 203:16 203:23 207:19 208:1 208:5 208:10 209:9 210:11 212:1 212:2 212:5 213:4 213:14 213:18 213:24 215:3 215:4 215:23 216:4 216:5 216:7 216:13 216:14 217:8 220:21 221:5 223:13 224:19 225:5 226:23 227:19 228:15 228:19 229:2 229:2 229:6 229:13 230:1 230:2 231:14 232:6 236:7 237:7 237:8 237:9 237:24 238:6 238:7 239:4 239:24 240:24 241:23 242:15 243:11 243:14 243:18 243:22 243:24 244:3 244:9 244:23 246:2 246:9 247:10 248:17 249:5 249:9 249:10 250:22 251:12 252:12 254:17 254:18 256:18 257:9 258:9 262:4 268:5 269:14 270:11 271:18 274:21 275:18 277:18 278:18 279:13 279:17 279:23 280:6 280:12 281:9 282:4 282:21 284:8 284:24 289:18 290:2 290:7 290:9 290:22 290:22 291:2 291:6 291:20 291:23 291:23 291:11 292:13 294:1 294:5 299:18 299:22 299:25 300:1 300:2 302:2 303:11 304:7 306:2 307:1

**above**(5) 51:11 51:17 51:21 206:22 294:17
**aboveentitled**(1) 308:11
**absence**(3) 75:7 282:17 305:8
**absent**(1) 305:3
**absolute**(3) 34:1 248:13 289:17
**absolutely**(15) 23:13 30:14 32:24 47:10 141:2 144:9 162:2 196:15 248:8 252:10 263:12 292:1 293:8 301:8

**absurd**(3) 131:21 240:7 247:19
**abuse**(1) 251:17
**accelerated**(2) 166:15 166:23
**accept**(8) 22:4 140:10 161:22 168:10 190:11 206:15 276:13 301:5

**accepted**(6) 90:24 204:22 204:22 245:16 263:18 280:22

**accepting**(3) 168:20 227:22 301:3
**accepts**(2) 262:10 275:24
**access**(7) 108:7 118:4 125:10 244:25 245:20 248:18 248:19

**accommodate**(1) 11:5
**according**(5) 51:10 56:4 69:5 103:25 140:9
**accordingly**(2) 44:11 230:18
**account**(6) 21:1 117:9 133:24 169:22 236:2 247:15

**accounts**(2) 40:1 108:23
**accrual**(1) 81:1
**accrue**(1) 188:14
**accruing**(1) 233:14
**accumulate**(3) 38:20 158:1 158:16
**accurate**(2) 56:13 198:23
**accurately**(1) 251:10
**ace**(2) 251:13 251:19
**acknowledged**(1) 251:15

**acknowledges**(1) 43:15
**acquired**(2) 59:9 59:20
**acquisition**(1) 59:16
**across**(4) 105:15 123:13 128:10 164:14
**act**(3) 28:11 262:2 282:13
**acted**(1) 258:24
**action**(2) 22:16 22:16
**actionable**(1) 57:8
**actions**(2) 143:13 294:8
**actively**(1) 116:17
**activities**(3) 100:23 100:24 143:8
**activity**(3) 71:20 147:5 291:20
**acts**(1) 210:15
**actual**(49) 39:19 51:7 51:21 52:3 60:4 69:16 69:22 72:9 93:10 93:12 102:23 102:25 103:4 108:25 110:14 110:25 111:3 111:5 111:5 111:19 112:5 114:1 114:4 116:20 121:7 121:12 121:20 123:5 124:6 127:24 130:19 145:5 156:13 200:7 203:20 203:24 204:1 204:2 204:4 204:5 204:12 212:24 213:2 217:3 219:5 241:3 242:13 263:10 264:23
**actually**(46) 48:1 55:3 55:9 55:10 70:19 72:6 73:1 79:19 85:21 88:18 121:6 137:8 143:12 147:11 149:1 153:16 155:10 174:24 191:12 200:22 200:24 202:4 207:10 200:18 209:19 212:9 214:2 214:4 218:14 221:4 229:3 230:9 242:23 242:25 251:23 258:14 260:17 267:19 269:22 272:7 278:12 281:4 282:19 286:24 302:6 303:5

**adam**(1) 3:10
**add**(3) 40:7 173:24 207:9
**added**(4) 107:10 135:8 173:20 192:21
**addition**(3) 100:6 211:5 268:21
**additional**(6) 35:24 97:13 104:4 107:11 117:2 117:4

**additionally**(1) 227:11
**address**(11) 11:4 13:8 16:18 26:5 31:22 32:20 84:1 86:3 194:17 271:11 271:13

**addressed**(4) 14:6 220:8 259:11 276:24
**addresses**(1) 102:5
**adelphia**(16) 15:6 185:5 185:14 185:21 218:18 218:19 232:14 232:15 236:13 236:14 236:14 246:15 246:16 246:17 246:20 254:10

**adequate**(1) 237:6
**adjacent**(2) 25:23 26:12
**adjourned**(2) 308:5 308:6
**adjudicated**(1) 305:12
**adjust**(2) 119:12 133:24
**adjusted**(1) 117:4
**adjustment**(1) 117:12
**adjustments**(2) 77:18 109:2
**adler**(1) 3:40
**administered**(1) 1:6
**administrative**(17) 34:21 34:24 42:7 75:8 75:19 95:8 95:12 95:18 96:15 96:20 103:25 104:7 142:22 143:1 144:7 195:25 248:15
**admirable**(1) 239:23
**admissibility**(1) 29:23 65:22
**admissible**(1) 168:22
**admission**(4) 47:17 82:6 162:13 205:14
**admitted**(8) 49:16 50:14 83:3 83:4 162:16 162:18 206:10 309:14

**adopt**(1) 198:14
**adopted**(3) 119:6 198:23 205:14
**advance**(7) 15:23 16:13 268:21 269:10 269:13 269:20 276:21

**advanced**(4) 236:1 236:15 293:6 293:20
**advancement**(3) 293:5 293:9 293:16
**advancing**(1) 270:2
**advantage**(1) 30:12

**adventures**(1) 282:25
**adversaries**(1) 224:15
**adversary**(1) 250:25
**advertiser**(2) 26:20 26:21
**advertisers**(5) 20:22 21:6 21:20 25:15 47:4
**advertising**(10) 25:7 25:10 40:4 40:13 55:3 55:10 55:12 55:15 56:2 226:11

**advice**(1) 245:1
**advise**(2) 275:6 306:14
**advising**(1) 98:2
**advisor**(8) 89:16 91:8 91:19 91:21 92:3 114:18 114:21 235:20

**advisors**(2) 109:24 235:20
**advocate**(1) 295:18
**advocated**(1) 295:25
**advocates**(1) 290:25
**advocating**(2) 90:8 90:10
**affect**(4) 21:4 23:15 117:11 299:10
**affected**(1) 291:21
**affecting**(2) 69:8 253:9
**affects**(1) 223:23
**affirmed**(3) 193:4 216:25 233:11
**aforementioned**(1) 64:8
**after**(34) 12:12 22:9 22:14 23:3 46:11 84:11 86:18 86:23 93:18 96:24 123:24 125:15 139:8 160:21 160:23 166:17 181:20 186:12 199:8 201:8 206:11 206:13 208:17 209:21 210:12 219:9 222:19 222:19 230:16 240:21 296:14 296:14 303:13 303:16

**afternoon**(15) 89:25 94:16 134:13 134:14 134:16 162:24 162:25 167:4 179:18 198:9 210:25 211:11 249:25 270:18 275:20

**again**(73) 27:15 29:2 34:12 40:7 41:12 44:22 46:5 46:13 46:16 46:17 46:17 47:3 47:5 53:21 60:6 67:10 68:12 71:13 73:4 73:17 84:14 102:3 102:12 110:12 110:24 113:14 115:25 117:6 119:10 120:4 128:18 138:23 155:7 155:22 179:18 184:22 188:21 189:25 190:1 194:3 195:14 196:11 197:17 199:19 201:12 216:6 217:20 219:7 226:13 229:17 230:4 235:23 236:6 236:13 237:3 245:20 256:25 262:16 264:16 270:18 275:20 277:3 277:7 279:6 282:20 283:21 287:15 288:5 295:8 295:9 296:11 305:21 307:9

**against**(57) 11:17 14:24 14:24 50:10 51:7 56:7 76:15 81:8 90:9 95:5 102:6 102:7 102:12 103:4 110:7 118:9 121:11 121:15 126:4 131:20 131:22 138:25 139:4 139:6 140:12 141:9 141:14 141:17 142:6 155:16 155:25 174:11 175:4 175:14 175:15 178:6 178:11 178:18 189:5 190:25 196:5 201:23 201:24 226:19 247:15 249:23 250:23 251:5 255:6 255:8 264:18 282:11 287:1 287:21 288:8 288:16 288:21

**age**(1) 255:24
**agency**(2) 242:19 244:14
**agenda**(2) 303:6 303:9
**agent**(1) 144:7
**agents**(1) 282:11
**aggregate**(2) 56:6 56:7
**aggregating**(1) 145:19
**agnostic**(1) 278:15
**ago**(8) 41:15 75:3 169:11 169:12 272:12 273:11 284:9 303:11

**agree**(31) 12:18 12:20 92:10 131:18 131:19 144:2 150:15 153:24 159:9 161:17 161:20 166:23 167:5 182:1 191:18 192:2 219:8 220:4 231:12 243:16 251:22 252:1 265:2 269:2 269:3 276:2 293:17 293:19 297:7 297:22 305:21

**agreed**(3) 11:14 194:15 305:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **agreement**(22) 2:4  7:41  16:21  27:17  36:15  73:13  186:2  217:19  261:14  261:21  266:16  267:14  268:3  276:18  292:3  292:15  292:16  292:19  292:20  294:2  300:3  305:23 | | **almost**(8) 10:9  18:6  75:21  88:23  89:7  126:24  131:21  209:18 | | **and**(301) 5:14  10:12  10:14  10:17  10:18  10:18  10:21  10:22  11:1  11:4  11:5  11:6  11:7  11:16  11:18  11:20  11:22  11:22  11:24  12:4  12:8  12:11  12:14  12:21  13:1  13:6  13:13  13:15  13:16  13:16  14:3  14:6  14:11  14:16  14:18  14:21  15:3  15:3  15:9  15:10  15:19  16:6  16:7  16:7  16:21  16:22  16:23  17:1  17:3  17:8  17:11  17:20  17:21  17:24  17:25  18:1  18:2  18:3  18:5  18:8  18:12  19:1  19:16  19:19  20:5  20:16  20:17  20:21  20:21  20:25  21:4  21:5  21:5  21:5  21:6  21:7  21:8  21:9  21:10  21:10  21:11  21:12  21:14  21:15  21:16  21:17  21:18  21:18  21:20  21:20  22:13  22:17  22:18  23:7  23:8  23:9  23:18  23:20  23:20  23:22  24:4  24:10  24:12  24:14  24:25  25:3  25:8  25:9  25:18  25:22  25:22  26:1  26:4  26:6  26:7  26:8  26:9  26:22  27:4  27:14  27:15  27:25  27:25  28:2  28:28  28:8  28:15  28:16  29:3  29:4  30:23  30:25  31:11  31:14  31:18  31:24  32:5  32:6  32:10  32:13  32:22  32:24  33:1  33:2  33:4  33:6  33:8  33:8  33:11  33:13  33:14  33:15  33:16  33:20  33:21  33:21  33:25  34:2  34:6  34:7  34:7  34:8  34:9  34:14  34:15  34:23  35:1  35:4  35:6  35:18  36:2  36:3  36:5  36:14  36:17  36:19  36:21  36:23  37:6  37:10  37:20  38:11  38:14  38:20  38:25  39:6  39:10  39:11  40:1  40:5  40:5  40:8  40:9  40:11  40:13  40:13  40:15  40:18  40:24  41:11  41:13  41:14  41:16  42:12  42:13  42:16  42:20  42:22  42:23  43:4  43:10  43:11  43:19  43:22  44:2  44:6  44:17  44:19  45:5  45:17  46:12  46:15  46:15  46:16  46:21  46:25  46:25  47:1  47:6  48:7  48:8  49:5  50:4  50:23  51:4  51:7  51:8  51:17  51:20  52:2  52:8  52:11  52:20  52:21  53:10  53:11  53:20  53:22  53:23  53:24  53:24  54:6  54:6  54:9  54:12  54:22  55:2  55:6  55:13  55:17  56:1  56:7  56:10  56:13  56:15  56:24  57:2  57:10  57:16  57:17  58:2  58:4  58:9  58:20  59:1  59:3  59:6  59:12  59:16  59:17  59:23  60:1  60:2  60:4  60:5  60:6  60:10  60:17  60:20  60:23  61:3  61:6  61:11 | | **and**(301) 61:16  61:20  61:23  62:1  62:6  62:11  62:11  62:12  62:15  62:17  62:19  62:19  62:20  63:10  63:14  63:15  63:15  63:23  63:23  63:25  64:9  64:17  65:6  65:9  65:12  65:12  65:22  65:25  66:2  66:3  66:24  67:4  67:13  67:21  68:1  68:25  69:3  69:9  69:18  69:22  69:25  70:2  70:16  70:18  70:21  70:25  71:10  71:11  71:14  71:17  71:18  72:1  72:13  72:17  72:20  73:7  73:11  73:13  73:16  73:18  73:21  73:24  74:2  74:5  75:22  76:2  76:3  76:6  76:10  76:13  76:14  77:8  77:14  77:25  77:25  78:7  78:8  78:8  78:11  78:18  78:25  79:5  79:6  79:6  79:15  79:16  79:20  80:12  80:15  80:17  81:2  81:14  82:16  82:19  82:19  82:20  82:20  83:2  83:3  83:4  83:6  83:7  83:11  83:12  83:16  83:16  83:17  84:16  85:1  85:3  85:8  85:16  85:19  85:22  85:24  85:25  86:1  86:17  86:19  86:23  87:22  87:23  87:25  88:1  88:3  88:5  88:8  88:10  88:11  88:16  88:22  89:4  89:5  89:12  89:14  89:16  89:23  89:25  90:4  90:8  91:1  91:5  91:15  91:18  92:5  93:4  93:21  93:23  94:7  94:17  94:25  95:14  96:3  96:4  96:22  96:24  96:25  97:2  97:3  97:12  97:13  97:19  97:23  97:25  98:4  98:10  98:24  99:1  99:6  99:12  99:16  99:25  100:3  100:5  100:7  100:9  100:13  100:16  100:22  101:1  101:4  101:9  101:12  101:17  101:19  101:25  102:4  102:8  102:10  102:11  103:2  103:5  103:8  103:8  103:17  103:20  103:20  103:24  104:7  104:11  104:18  104:24  105:2  105:5  105:9  105:14  105:23  106:4  106:8  106:12  106:13  107:1  107:4  107:9  107:11  107:13  107:16  107:22  108:4  108:20  108:24  109:6  109:14  109:18  109:23  110:2  110:4  110:8  110:16  110:22  110:24  111:4  111:12  111:21  111:22  112:1  112:8  112:10  113:8  114:4  114:10  114:11  114:12  115:8  115:18  115:22  116:3  116:8  116:11  116:25  117:6  117:10  117:16  117:22  118:20  119:1  119:3  119:4  119:5  119:13  119:18  119:23  120:1  120:1  120:4  120:5  120:16  120:23  120:24  121:5  121:6  121:12  121:22  122:1  122:9  122:12  122:21  123:2  123:6  123:14  123:18  123:23  124:1  124:25  125:6  125:17  125:18  125:23  125:25  126:5  126:11  126:19  126:20  126:23  127:15  127:22  128:1  128:6  128:8  128:10  128:11 |
| **agreement."**(1) 253:24 | | **alone**(10) 31:9  32:1  36:2  36:3  222:2  249:14  261:5  261:6  265:16  285:14 | | | | | |
| **agreements**(10) 26:11  28:8  266:10  266:11  267:21  268:9  292:12  301:9  301:11  301:16 | | **along**(4) 78:8  202:24  296:4  303:7 | | | | | |
| **agrees**(3) 198:4  250:13  292:5 | | **alpine**(1) 283:25 | | | | | |
| **ahead**(14) 32:19  38:2  39:25  40:2  40:14  108:11  108:12  127:10  175:25  205:24  219:6  228:9  268:18  306:9 | | **already**(9) 41:13  64:22  98:20  98:21  164:18  189:25  202:15  220:6  293:7 | | | | | |
| **aid**(1) 288:8 | | **also**(60) 13:5  28:6  28:12  41:1  43:4  51:20  52:2  55:13  56:16  59:9  59:12  60:9  62:11  71:1  90:17  113:22  121:9  121:12  122:23  125:12  148:20  151:5  157:14  157:18  166:4  173:17  174:2  183:24  198:11  198:15  199:5  200:19  206:24  207:4  207:18  209:14  211:4  211:19  218:20  218:21  222:23  223:20  225:6  238:12  245:14  257:5  259:5  265:10  266:17  269:19  272:10  276:23  278:12  280:20  281:6  288:18  289:20  291:25  295:6  301:9 | | | | | |
| **air**(3) 22:17  78:25  258:16 | | | | | | | |
| **akin**(7) 4:14  75:2  84:5  162:20  179:19  275:21  277:7 | | | | | | | |
| **alan**(1) 7:29 | | | | | | | |
| **alito's**(1) 191:3 | | | | | | | |
| **all**(217) 10:2  10:3  10:4  11:9  11:20  12:2  13:17  15:15  16:10  17:15  17:25  24:16  31:5  32:23  35:18  36:5  36:15  36:22  38:15  39:14  40:19  42:2  44:9  47:16  47:20  48:16  50:22  64:7  66:25  69:25  73:17  74:5  76:3  76:24  78:22  82:7  83:2  83:8  83:19  85:2  86:15  86:18  87:7  88:13  88:23  96:8  99:4  100:21  100:25  112:25  114:7  118:15  118:18  120:23  125:4  127:7  130:3  130:9  130:21  134:2  136:1  143:22  147:6  148:6  151:15  153:7  153:9  155:3  155:3  157:4  166:1  166:22  167:3  167:12  168:1  174:11  177:22  179:8  179:13  179:23  182:19  182:21  185:2  187:1  187:9  187:24  188:15  189:16  193:24  193:24  194:8  194:13  195:16  195:22  198:1  201:7  202:2  204:5  204:10  206:2  206:5  206:15  207:18  209:9  210:20  210:21  211:12  211:12  212:8  212:14  213:4  215:8  216:23  217:3  219:16  219:17  221:25  222:1  223:9  225:19  226:19  227:17  227:19  228:1  229:12  229:16  229:23  229:23  229:24  230:17  231:15  235:11  235:18  235:20  236:13  236:17  239:19  239:22  240:5  240:21  240:25  241:9  241:10  241:12  241:20  244:9  249:4  249:18  251:22  253:2  254:8  256:4  256:13  260:16  261:5  261:6  261:10  261:19  262:6  262:20  262:23  263:24  264:10  265:4  268:19  269:4  269:8  269:12  269:14  269:16  270:8  270:10  271:18  272:2  273:4  273:23  275:9  276:3  276:22  277:13  277:16  277:16  277:21  277:23  278:13  281:21  282:25  283:21  284:7  285:8  285:8  287:21  288:3  292:11  293:17  293:18  294:19  294:20  294:20  296:22  297:7  297:17  298:11  298:19  300:17  300:18  300:24  303:3  303:21  303:22  304:7  304:14  305:20  306:21  308:1  308:1  308:4 | | **alternative**(4) 8:29  8:30  214:24  233:23 | | | | | |
| | | **alternatively**(1) 197:13 | | | | | |
| | | **although**(9) 85:8  101:5  103:22  190:21  215:3  245:16  246:8  284:18  296:25 | | | | | |
| | | **alvarez**(2) 5:37  5:38 | | | | | |
| | | **always**(7) 33:7  40:8  109:24  129:15  183:3  197:11  273:13 | | | | | |
| | | **amalgamated**(1) 7:28 | | | | | |
| | | **ambiguity**(7) 280:16  280:19  281:11  287:8  287:12  288:20  289:13 | | | | | |
| | | **ambiguous**(5) 280:5  280:10  280:15  287:7  289:10 | | | | | |
| | | **ambrose's**(1) 190:22 | | | | | |
| | | **amended**(4) 18:16  82:14  159:25  309:17 | | | | | |
| | | **amerced**(1) 13:14 | | | | | |
| | | **america**(4) 5:18  5:18  6:31  282:12 | | | | | |
| | | **americas**(1) 3:26 | | | | | |
| | | **among**(3) 15:12  219:4  294:8 | | | | | |
| | | **amongst**(1) 20:20 | | | | | |
| | | **amount**(82) 71:2  73:11  73:15  73:18  93:1  93:21  95:4  98:1  101:16  102:1  102:22  103:4  103:11  104:1  105:24  106:12  106:13  107:13  107:16  108:25  109:3  109:8  110:5  111:1  112:3  115:16  115:25  117:5  118:10  118:13  119:12  119:16  119:18  120:4  120:5  120:7  120:8  120:25  121:2  121:4  121:11  123:12  129:1  130:15  132:1  132:1  133:21  134:4  134:5  135:18  139:16  139:18  140:9  141:23  141:25  142:7  142:19  145:5  155:23  156:23  158:3  158:6  158:17  165:9  187:6  189:4  189:6  193:2  197:19  206:23  207:8  215:2  217:10  218:14  219:12  233:10  245:13  249:3  252:11  252:19  291:3 | | | | | |
| **allapattah**(4) 280:11  286:23  287:1  288:17 | | | | | | | |
| **allegation**(3) 25:16  113:20  125:7 | | **amounts**(6) 70:3  70:4  97:13  97:14  108:2  291:3 | | | | | |
| **allegations**(1) 37:12 | | | | | | | |
| **allen**(2) 8:38  8:39 | | **amply**(1) 239:9 | | | | | |
| **alleviate**(2) 66:14  231:1 | | **analogous**(1) 258:5 | | | | | |
| **allinson**(1) 4:8 | | **analogue**(1) 188:3 | | | | | |
| **allocation**(8) 76:7  259:12  272:15  279:18  280:23  282:25  286:24  287:16 | | **analogy**(1) 213:16 | | | | | |
| | | **analysis**(26) 24:22  25:6  53:21  71:17  106:4  106:9  106:23  110:2  122:3  123:11  130:6  131:10  132:12  135:7  143:17  168:3  169:4  170:20  203:17  206:14  206:15  207:3  260:5  287:25  289:6  309:20 | | | | | |
| **allow**(8) 25:22  44:11  46:9  48:1  48:13  183:19  273:22  278:14 | | | | | | | |
| **allowance**(1) 219:24 | | | | | | | |
| **allowed**(6) 14:16  31:11  92:8  192:14  219:25  244:23 | | **analyze**(2) 143:7  247:10 | | | | | |
| | | **analyzed**(2) 259:25  282:5 | | | | | |
| **allowing**(2) 15:7  247:22 | | **analyzing**(1) 283:2 | | | | | |
| **allows**(1) 273:20 | | | | | | | |
| **alluded**(1) 237:12 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**and**(301) 128:13 129:2 129:6 129:9 129:22 129:24 130:8 130:16 130:17 131:19 131:24 132:9 132:13 132:15 132:19 133:13 133:15 134:5 134:20 134:22 135:4 135:7 135:11 135:13 136:2 136:3 136:6 137:7 137:14 137:20 138:9 138:11 138:15 139:22 139:24 140:8 140:15 140:20 141:3 141:6 141:20 141:25 142:17 142:21 143:4 143:12 143:14 144:1 144:7 144:7 144:10 144:10 144:14 144:20 144:25 145:1 145:14 145:19 146:5 146:5 146:11 146:14 146:16 146:23 147:3 147:11 147:19 147:22 148:1 148:5 149:8 149:16 149:19 150:15 150:18 150:20 150:24 151:2 151:10 151:11 152:1 153:1 153:4 153:6 153:15 154:4 154:10 154:12 154:21 155:24 156:1 156:5 156:8 156:18 156:23 157:2 157:9 157:25 158:1 158:2 158:6 158:13 158:13 158:17 158:20 158:22 158:24 159:8 159:14 159:18 159:21 159:25 160:3 160:5 160:6 160:20 160:20 161:2 161:12 161:17 161:21 161:23 164:9 164:23 165:13 165:21 166:4 166:15 166:18 166:18 166:21 166:21 167:20 167:22 168:1 168:6 168:17 168:19 168:25 169:12 169:13 170:8 170:9 170:11 170:13 170:24 171:5 171:16 172:2 172:11 173:2 173:8 173:9 173:14 173:17 173:19 173:21 173:24 174:3 174:4 174:15 174:15 175:8 175:11 175:12 175:16 176:3 176:4 176:7 176:8 177:2 177:17 177:24 178:5 178:23 178:25 178:25 179:3 179:12 180:1 180:4 180:6 180:8 180:11 180:25 181:2 181:5 181:16 181:20 181:21 181:24 182:7 182:8 182:15 182:21 182:25 183:3 183:7 183:10 183:14 183:15 183:19 183:20 184:7 184:9 184:10 184:11 184:15 184:17 184:19 184:21 184:25 185:3 185:16 185:19 185:20 186:3 186:9 186:13 186:14 186:16 187:3 188:5 188:6 188:6 188:10 188:13 188:13 188:15 188:24 189:2 189:6 189:7 189:7 189:9 189:10 189:13 189:15 189:25 190:2 190:1 190:4 190:7 190:17 190:18 190:19 190:21 190:23 190:24 191:2 191:4 191:6 191:6 191:10 191:24 192:2 192:6 192:6 192:9 192:13 192:15 192:15 192:18 192:19 192:20 192:21 192:24 192:24 193:2 193:3 193:4 193:7 193:13 193:16 193:16 193:17 193:18 194:1 194:2 194:6 194:13 194:14 194:17 195:10 195:11 195:17 195:18 195:19 196:7 196:13 196:14 196:15 196:16 196:19 196:21 196:24 197:1 197:3 197:12 197:17

**and**(301) 197:19 197:25 198:4 198:11 198:13 198:17 198:22 198:23 198:23 199:11 199:11 199:18 200:1 200:6 200:10 200:11 200:18 200:20 200:22 200:23 200:25 201:3 201:4 201:12 201:13 201:14 201:19 201:19 201:22 202:2 202:4 202:6 202:8 202:17 202:18 202:19 202:21 202:23 202:24 203:4 203:5 203:6 203:9 203:11 203:11 203:15 203:17 203:18 203:23 204:3 204:6 204:6 204:9 204:10 204:10 204:15 204:17 204:18 204:19 204:24 205:4 205:6 205:8 205:13 205:16 205:18 205:20 205:21 205:23 205:25 206:7 206:9 206:17 206:19 207:1 207:1 207:3 207:6 207:9 207:14 207:23 207:24 208:3 208:5 208:9 208:11 208:20 208:23 209:1 209:2 209:6 209:8 209:9 209:17 209:18 210:3 210:10 210:17 210:20 211:4 211:6 211:13 211:17 211:23 212:1 212:4 212:5 212:7 212:8 212:11 212:13 212:16 213:6 213:10 213:16 213:19 213:23 214:3 214:5 214:16 214:18 214:18 214:20 214:21 214:23 214:23 215:10 215:13 215:14 215:20 215:20 215:23 215:23 216:4 216:6 216:9 216:12 216:14 216:18 216:20 216:23 217:6 217:8 217:17 217:18 217:19 217:20 218:1 218:4 218:8 219:4 219:5 219:11 219:12 219:15 219:19 219:19 219:20 219:22 219:23 220:9 220:12 220:17 220:20 220:23 220:25 221:7 221:7 221:12 221:16 221:24 221:25 222:3 222:10 222:11 222:17 222:21 222:22 222:24 223:5 223:7 223:7 223:15 223:15 223:17 223:19 223:19 223:23 223:24 224:5 224:1 224:4 224:12 224:25 225:9 225:19 226:2 226:14 226:15 226:16 226:17 226:18 227:4 227:6 227:8 227:9 227:18 227:23 228:8 228:9 228:9 228:10 228:11 228:13 228:15 228:17 228:17 228:19 228:20 228:22 228:23 228:25 229:1 229:2 229:5 229:6 229:7 229:11 229:19 229:23 229:24 230:4 230:6 230:9 230:13 230:18 230:20 230:22 230:25 231:3 231:9 231:13 231:17 231:19 231:22 231:23 231:24 232:3 232:7 232:9 232:12 232:18 233:4 233:12 233:14 233:16 233:17 233:20 233:22 234:8 234:8 234:16 234:20 235:9 235:11 235:12 236:4 236:8 236:20 236:21 236:25 237:6 237:7 237:8 237:8 237:11 237:13 237:16 237:17 237:21 238:4 238:7 238:12 238:14 238:19 238:22 238:22 239:2 239:4 239:12 239:13 240:7 240:13 240:16 241:2 241:4 241:10 241:12 241:19 241:23 241:25

**and**(301) 242:11 242:18 243:10 243:15 243:16 243:23 243:25 244:5 244:7 244:9 245:4 245:7 245:8 245:11 245:11 245:17 245:20 246:1 246:6 246:9 246:10 246:12 246:19 246:21 246:23 247:2 247:4 247:4 247:4 247:6 247:9 247:14 247:15 247:16 247:19 247:23 247:25 248:1 248:3 248:4 248:7 248:16 248:18 248:19 249:1 249:2 249:6 249:8 249:12 249:13 249:16 249:19 249:21 250:2 250:3 250:8 250:14 250:19 250:23 251:3 251:6 251:10 251:10 251:12 251:19 252:2 252:3 252:6 252:9 252:13 252:13 252:17 253:4 253:7 253:9 253:10 253:12 253:15 253:16 253:17 253:18 253:19 253:21 253:22 253:24 253:25 253:25 254:6 254:9 254:10 254:12 254:21 254:18 254:19 254:22 255:2 255:17 255:18 255:18 255:19 256:7 256:11 256:14 256:14 256:18 257:3 257:23 258:4 258:7 258:17 258:21 258:22 258:23 259:2 259:3 259:4 259:8 259:9 259:9 259:24 260:12 260:12 260:20 260:22 260:23 260:24 261:2 261:3 261:3 261:7 261:7 261:15 261:18 261:19 261:23 262:2 262:5 262:6 262:8 262:9 262:20 263:4 263:5 263:6 263:9 263:14 263:19 263:21 264:4 264:6 264:7 264:11 264:14 264:16 264:20 265:15 265:17 265:18 265:24 266:2 266:3 266:12 266:16 266:18 266:25 267:1 267:10 267:25 268:1 268:3 268:4 268:6 268:7 268:7 268:8 268:19 268:19 268:23 269:1 269:9 269:17 269:21 269:24 270:1 270:4 270:4 270:15 270:15 270:24 271:11 271:12 271:17 271:20 271:21 272:1 272:4 272:6 272:9 272:9 272:11 272:16 272:19 272:20 272:22 272:25 273:5 273:6 273:8 273:14 273:16 273:17 273:21 273:24 274:3 274:5 274:5 274:18 274:19 274:22 274:24 275:6 275:10 275:11 275:12 275:13 275:22 275:22 275:24 275:25 276:5 276:9 276:12 276:24 277:1 277:19 278:1 278:7 278:12 278:17 278:20 278:25 279:1 279:2 279:5 279:6 279:7 279:16 279:21 279:25 280:1 280:2 280:6 280:7 280:16 280:22 280:25 281:2 281:5 281:8 281:9 281:10 281:20 281:24 282:1 282:4 282:5 282:6 282:18 282:19 282:23 283:4 283:11 284:3 284:4 284:9 284:14 284:17 284:25 285:2 285:6 285:17 285:19 285:20 286:4 286:8 286:8 286:11 286:16 286:20 286:23 287:2 287:3 287:3 287:7 287:12 287:18 287:18 287:22 287:25 288:9 288:10

**and**(116) 288:16 288:24 289:2 289:10 290:8 290:10 290:16 290:17 290:23 291:2 291:3 291:8 291:12 291:18 291:22 292:8 292:8 292:9 292:16 292:18 292:23 292:24 293:1 293:12 293:14 293:15 293:24 294:5 295:3 295:4 295:6 295:11 295:17 295:17 295:22 296:3 296:7 296:10 296:14 296:16 297:5 297:9 297:12 297:12 297:18 297:21 297:23 298:3 298:5 298:7 298:8 298:10 298:14 298:15 298:16 298:17 298:18 298:20 298:21 298:25 299:15 299:18 299:23 299:25 300:3 300:4 300:6 300:7 300:7 300:9 300:10 300:12 300:13 300:23 300:25 301:7 301:10 301:10 301:10 301:13 301:14 301:16 301:18 302:1 302:3 302:4 303:6 303:17 303:19 303:19 303:23 303:24 304:1 304:4 304:5 304:8 304:13 304:16 305:1 305:8 305:9 305:12 305:16 305:16 305:17 306:12 306:13 306:14 306:17 307:6 307:10 307:21 307:22 308:3 308:4 308:5

**anderson**(1) 3:1
**andrea**(1) 8:44
**andrew**(3) 3:19 5:11 5:32
**ane**(2) 8:34 8:35
**angela**(1) 6:14
**angeles**(2) 2:9 79:17

**angelo**(4) 7:42 23:9 150:10 253:19
**ann**(1) 7:19
**anna**(1) 6:49
**anniversary**(1) 18:7
**annual**(1) 108:14
**another**(37) 30:7 36:11 52:18 68:19 72:16 85:25 149:13 149:15 177:25 197:2 204:23 208:22 209:1 214:19 216:14 216:15 216:16 216:20 217:18 217:21 221:3 221:18 224:2 235:19 238:19 239:13 247:25 252:16 261:25 264:18 268:22 273:2 276:23 286:19 288:5 293:6 303:6

**answer**(53) 11:2 19:7 29:25 43:2 43:11 43:23 44:14 46:9 46:20 55:6 63:14 63:16 74:10 128:1 129:17 138:22 139:14 147:1 147:14 157:12 167:9 171:16 171:22 174:5 174:6 174:23 198:4 199:22 201:19 212:10 212:11 212:12 212:14 228:1 230:9 241:14 241:21 243:8 246:23 248:9 249:11 254:7 256:8 256:12 256:13 259:7 268:15 295:16 295:16 295:17 295:17 299:3 299:4

**answered**(2) 72:25 164:9
**answering**(1) 257:18
**answers**(4) 74:22 181:11 227:25 230:4
**anti-consumer**(1) 253:23
**anticipate**(2) 83:18 84:9
**anticipated**(2) 30:6 147:22
**any**(158) 11:10 13:24 16:8 16:17 21:4 28:21 28:21 29:11 30:8 32:23 33:14 34:7 36:18 36:19 37:23 40:11 47:17 47:22 48:8 50:11 50:19 54:19 54:23 57:1 57:2 58:13 61:10 61:14 61:18 63:19 66:12 71:14 71:15 71:17 71:22 76:25 77:20 81:21 82:24 99:4 101:2 103:22 104:4 110:1 113:5 129:16 131:24 136:21 136:24 137:2 138:10 138:15 138:25 139:3 139:4 139:6 139:10 139:11 141:1 141:4 141:9 142:1 142:2 142:4 142:6 142:12 142:13 144:14 146:6 154:21 155:11 155:19 157:4 157:7 157:16 157:17 159:8 162:5 162:8 162:13 165:19 169:2 172:17 176:8 177:5 179:6 181:16 182:17 186:23 187:2 187:4 187:22 190:12 191:21 193:23 194:4 195:19 197:5 197:19 197:20 200:7 200:14 202:15 212:21 213:9 213:23 224:8 224:12 229:10 231:7 234:2 235:5 235:11 238:3 239:8 239:17 239:22 241:14 241:16 243:18 244:11 244:12 246:23 249:17 250:6 250:16 251:5 252:24 253:16 254:1 254:11 254:22 254:23 254:23 261:14 262:23 263:16 264:4 265:18 265:24 271:15 271:21 275:15 279:20 279:21 283:3 283:12 283:13 285:4 285:5 291:20 293:17 296:13 298:9 298:9 298:20 300:12 306:23

**anybody**(5) 36:24 138:7 298:21 304:11 306:18

**anymore**(3) 36:21 220:22 290:20
**anyone**(9) 15:19 111:17 121:16 148:23 189:20 224:3 224:13 277:20 290:18

**anything**(26) 23:19 31:9 47:12 81:19 120:20 134:8 136:13 140:16 140:17 183:4 186:19 187:6 187:23 202:10 213:7 219:14 224:18 279:9 285:19 292:9 292:10 295:19 297:21 307:17 307:21 307:24

**anytime**(1) 188:20
**anyway**(4) 43:11 87:2 97:15 214:14
**anywhere**(4) 31:2 31:15 205:14 279:7
**apologize**(2) 219:3 281:10
**apparent**(1) 156:7
**apparently**(1) 214:6

| Word | Page:Line |
|------|-----------|

appeal(180) 13:9 13:13 14:1 14:3 15:8 15:19 15:23 16:6 16:13 18:18 20:10 71:18 71:19 71:21 76:11 76:14 76:15 77:8 77:10 90:1 90:6 93:9 93:18 93:18 93:23 96:17 101:8 102:6 102:7 102:12 103:23 104:2 106:4 106:6 106:7 109:10 109:11 111:3 112:7 113:25 114:11 117:1 121:4 134:23 135:1 138:5 163:5 164:17 164:19 165:4 165:7 165:8 165:10 165:21 166:16 166:17 169:19 169:25 170:2 180:7 180:18 181:7 181:20 181:23 181:25 182:9 182:13 182:18 183:14 184:21 187:8 188:13 189:3 189:11 189:19 189:21 190:1 190:6 190:24 191:11 192:6 193:6 195:6 196:4 197:21 200:22 201:17 204:16 209:21 209:24 210:12 210:18 210:19 210:20 212:14 213:10 215:10 218:13 219:8 220:8 220:12 221:7 221:7 224:5 224:7 224:13 224:14 224:19 224:24 225:6 226:20 227:13 230:25 231:8 231:8 232:5 233:9 234:8 234:24 235:2 235:3 242:3 242:16 250:24 252:3 252:12 252:20 256:12 256:20 256:24 257:2 258:9 258:20 258:24 259:14 259:24 262:12 262:12 265:12 268:23 270:2 271:14 271:14 271:15 271:21 271:25 272:5 272:13 272:14 272:18 272:18 273:3 273:13 274:3 275:24 276:2 276:6 276:17 278:23 281:24 294:5 294:12 294:14 294:15 294:21 294:22 295:23 296:1 297:4 297:4 297:5 297:6 299:6 304:24 305:1 305:2 305:5 305:6 305:8 305:12

appealable(1) 182:6
appealed(3) 15:21 190:8 259:10
appealing(5) 180:9 184:15 198:1 201:14 221:12

appeals(66) 16:1 16:6 16:11 16:11 103:14 104:3 104:20 104:22 105:7 144:22 165:20 166:1 166:5 180:16 181:15 183:20 190:19 191:15 200:18 219:17 229:15 234:20 236:1 242:19 252:16 256:10 256:13 256:16 256:19 256:22 256:23 256:25 257:4 257:17 258:7 258:7 269:12 269:14 269:15 269:24 270:4 270:8 271:19 272:4 272:22 273:4 273:23 274:10 276:3 276:15 277:13 277:19 277:22 278:14 278:20 283:20 286:12 293:18 293:21 294:8 294:10 295:12 296:23 297:7 298:4 309:33

appear(3) 99:23 162:1 251:8
appearances(1) 4:22
appeared(2) 22:10 125:1
appearing(1) 100:6
appears(4) 43:4 181:4 300:9 301:22
appellant(8) 14:2 93:1 187:4 192:8 192:14 212:16 219:22 242:14

appellants(18) 13:25 14:25 16:9 90:5 93:2 120:21 141:6 164:18 166:6 183:20 184:21 200:16 200:24 201:18 204:15 210:17 210:20 223:5

appellant's(2) 103:22 222:10
appellate(31) 13:24 103:12 105:13 180:25 181:1 191:1 191:6 191:9 192:13 192:17 192:23 193:12 201:5 201:9 201:10 210:7 210:8 220:19 221:2 222:10 227:15 234:15 263:23 272:10 272:21 272:22 273:9 275:9 276:22 293:23 297:1

appellee(2) 233:10 251:2
appellees(4) 93:19 166:18 232:3 261:8
applicable(11) 118:23 125:2 181:8 283:4 283:14 285:5 285:5 285:9 286:17 292:6 300:18
applicant(2) 13:12 14:12
applicants(1) 251:16
applicants(7) 187:3 264:8 264:16 266:21 271:3 280:1 290:22

applications(1) 42:25
applied(3) 155:25 260:5 285:16
applies(2) 260:19 264:13
apply(5) 92:14 205:13 213:16 266:15 300:24

applying(3) 262:8 264:13 299:21
appositing(1) 231:4
appreciate(2) 202:13 306:15
appreciation(1) 130:15
approach(20) 17:10 49:19 52:17 57:13 62:24 65:23 68:18 78:19 87:14 93:4 97:10 97:11 118:24 119:6 119:25 151:11 174:10 237:9 296:7 296:17

approached(1) 120:1
approaches(1) 119:9
approaching(1) 20:18
appropriate(28) 15:1 44:7 93:1 93:25 96:2 109:25 122:22 136:25 137:25 142:6 143:15 178:1 182:17 183:19 183:24 183:25 184:12 187:13 187:15 195:22 200:16 231:5 242:17 243:2 256:22 259:19 260:24 264:8

appropriately(3) 109:8 118:10 272:7
approval(12) 27:3 27:4 73:25 74:3 75:5 75:9 75:14 99:9 100:13 101:7 120:10 183:16
approve(2) 74:4 195:5
approved(6) 39:21 61:23 61:25 80:24 99:6 220:14

approximate(1) 126:5
approximately(11) 88:9 88:16 88:25 96:14 98:3 109:14 119:2 119:7 129:7 134:4 143:19
april(8) 37:10 38:5 57:25 59:20 60:14 60:20 272:17 287:14

are(301) 10:11 13:6 13:17 15:10 16:4 16:9 16:17 17:18 17:24 20:14 20:18 21:21 21:22 23:9 23:16 24:19 25:10 27:2 27:5 27:11 27:16 27:18 27:18 28:4 28:14 28:18 28:18 28:20 30:15 36:1 36:12 37:12 38:17 39:25 40:10 40:12 40:12 40:14 40:16 40:20 41:22 42:9 42:17 43:6 43:18 44:1 44:3 44:18 44:20 45:3 45:14 47:13 47:17 51:13 51:24 52:2 53:8 54:18 55:5 55:12 56:1 56:3 56:5 59:9 61:10 62:4 62:6 62:8 63:11 63:14 64:1 64:4 64:11 66:4 66:18 66:18 67:5 67:13 67:18 67:24 68:3 69:22 69:23 69:24 71:1 73:1 73:6 73:8 75:12 76:17 76:17 76:21 78:11 79:2 79:6 79:8 82:10 82:20 82:20 82:23 83:2 83:3 83:6 83:7 83:19 84:1 85:23 87:20 87:25 89:13 90:18 93:8 93:17 96:11 98:22 99:2 99:24 100:4 100:24 106:21 107:22 109:9 110:10 110:6 110:16 110:17 110:17 111:8 111:13 113:2 113:5 113:15 113:18 113:20 113:21 113:22 114:22 116:16 116:24 117:1 118:8 120:6 120:13 120:19 122:7 122:8 122:9 122:15 122:23 123:3 123:12 124:16 124:22 125:6 130:5 130:7 130:18 131:7 132:6 132:9 132:10 132:10 134:22 135:4 138:3 139:9 139:24 140:1 147:22 150:16 152:11 152:15 153:9 155:4 161:13 163:20 166:12 166:14 166:19 167:3 167:24 169:9 171:4 171:13 178:13 178:13 178:23 180:25 181:1 181:9 181:10 183:12 183:13 184:6 184:24 184:25 186:14 188:6 191:1 196:17 196:20 196:23 197:23 198:1 198:15 201:13 201:14 201:24 202:24 203:10 207:21 212:4 213:24 217:6 217:9 217:22 219:13 219:17 221:5 222:12 223:8 224:15 224:17 225:8 225:20 226:9 226:9 227:3 227:4 227:8 227:9 227:13 228:11 228:20 229:5 229:13 229:15 229:17 229:24 229:25 230:3 230:13 230:14 232:3 232:17 232:24 233:8 233:21 233:21 234:1 234:1 234:9 234:9 235:13 235:17 235:20 235:24 235:25 236:9 236:10 237:2 237:4 240:3 240:4 240:18 241:12 241:13 242:7 242:9 243:24 244:21 245:24 246:1 247:9 250:6 250:7 250:11 250:12 250:14 253:19 253:21 255:1 255:7 257:18 259:24 260:3 260:4 266:4 266:9 266:11 267:20 267:23 268:9 269:4 269:8 269:12 270:4 270:7 271:8 273:4 275:4 275:12

are(31) 276:7 277:19 281:24 282:13 283:11 283:12 285:10 285:25 286:3 287:13 288:20 289:12 290:6 291:25 292:5 292:9 292:9 292:11 292:12 293:1 294:10 294:21 295:16 296:2 300:19 301:13 301:13 301:14 302:22 303:3 304:25

area(10) 22:13 25:9 30:16 79:6 88:14 89:18 90:14 91:2 180:12 190:18

areas(4) 25:24 32:6 34:2 40:22
aren't(8) 27:25 56:3 81:3 164:19 175:6 200:11 232:23 243:24

arguably(2) 16:12 293:12
argue(10) 12:13 14:25 15:20 119:3 192:19 204:11 247:19 248:1 280:15 304:21

argued(6) 13:16 193:17 262:7 279:22 280:22 286:22

arguing(2) 191:13 303:17
argument(42) 16:23 37:14 83:23 84:2 84:10 160:5 179:21 195:11 198:19 209:20 209:23 209:23 209:25 214:13 227:24 229:5 250:19 251:15 260:8 264:18 270:23 271:18 273:1 277:1 277:2 279:14 279:16 279:21 280:4 280:13 280:18 281:8 281:12 282:7 287:8 287:23 288:6 290:19 294:1 300:22 302:9 304:9

argumentative(2) 136:10 167:6
arguments(4) 85:1 86:23 225:19 279:20
arise(3) 142:13 219:10 275:12
arises(3) 89:6 139:2 281:10
arising(1) 155:11
arithmetic(2) 205:18 205:23
armstrong(1) 264:20
arm's(1) 255:14
arose(1) 303:11
around(17) 32:4 35:19 88:19 91:12 100:11 200:11 211:8 173:17 211:17 211:18 211:19 219:22 245:7 249:2 249:19 263:22 298:16
arps(1) 9:7
arrived(1) 121:1
arriving(1) 124:23
arrowgrass(2) 6:35 6:36
article(2) 255:9 288:14
articles(3) 137:2 279:2 291:20
articulate(2) 259:24 265:10
articulated(6) 46:21 130:12 131:9 142:18 175:17 259:15

articulating(1) 98:18
ascernia(1) 193:8
ascertained(1) 33:5
ascribe(1) 46:12
ashamed(1) 298:14
ashley(1) 5:5
aside(5) 102:2 120:9 141:13 141:24 142:16
ask(57) 11:4 11:10 16:3 18:18 19:7 19:22 22:20 24:4 24:12 33:5 39:10 39:11 41:19 42:8 45:20 45:22 53:25 65:25 66:13 66:14 67:2 67:4 73:5 94:21 94:25 96:8 98:10 104:11 107:4 109:8 112:9 112:10 118:12 118:21 124:10 127:15 128:19 138:1 172:14 174:21 174:25 176:14 186:24 198:4 206:1 218:4 225:24 227:2 253:11 268:4 274:13 274:18 305:21 305:25 306:11 306:22 308:2

asked(32) 27:21 37:3 63:14 77:13 77:24 78:10 80:15 106:18 129:17 137:15 161:9 166:15 167:7 169:20 170:7 173:2 173:8 174:2 176:23 184:22 187:11 191:7 220:19 254:3 254:18 269:14 271:12 272:10 273:16 295:9 296:1 299:5

asking(18) 37:25 43:7 43:8 46:4 46:25 65:16 65:18 106:18 120:21 133:20 141:20 168:15 197:23 199:24 236:7 236:9 238:3 306:23
aspect(2) 214:21 252:22
aspects(2) 17:25 19:17
assert(5) 37:9 201:22 254:1 259:18 295:8
assertion(7) 25:16 30:23 111:14 120:16 216:18 232:8 247:21

assess(1) 89:4
asset(1) 221:10
assets(3) 18:2 20:16 25:22
assigned(1) 272:23
assignments(1) 88:25
assist(3) 91:12 98:17 269:23
assisted(1) 89:19
assisting(1) 92:25
associated(30) 10:17 34:24 54:20 58:13 69:13 69:17 69:18 71:11 71:19 73:12 74:2 75:20 99:8 99:22 100:21 101:21 102:5 104:22 107:25 109:19 118:3 125:17 131:8 140:11 144:6 146:3 150:21 208:11 248:12 248:20
assume(15) 46:25 83:19 119:22 126:2 126:20 129:16 134:18 156:17 208:7 214:17 227:12 229:9 237:15 237:17 274:23

assumed(11) 96:1 96:16 116:13 122:13 122:13 122:16 158:5 158:14 232:8 233:13 244:5

| Word | Page:Line |
|------|-----------|
| **assuming**(6) 93:19 101:14 115:11 122:15 122:23 133:16 | |
| **assumption**(22) 97:2 111:13 113:11 115:17 115:22 116:25 123:18 134:20 148:5 148:9 150:2 150:6 156:3 156:5 156:8 156:10 157:15 170:13 170:20 231:1 252:12 252:20 | |
| **assumptions**(1) 111:8 | |
| **assurance**(1) 244:11 | |
| **astonished**(1) 286:10 | |
| **at-the-money**(1) 122:24 | |
| **attach**(1) 45:1 | |
| **attached**(2) 103:21 176:7 | |
| **attempt**(2) 144:10 181:16 | |
| **attempted**(3) 60:16 93:14 106:3 | |
| **attempting**(3) 93:10 114:8 120:4 | |
| **attempts**(1) 95:2 | |
| **attend**(2) 99:10 99:12 | |
| **attendant**(1) 125:17 | |
| **attention**(5) 53:3 53:10 57:23 65:6 68:25 | |
| **attest**(1) 58:15 | |
| **attorney**(1) 91:19 | |
| **attorney/client**(1) 43:4 | |
| **attorneys**(1) 77:9 | |
| **attributable**(7) 70:4 70:5 80:25 98:1 136:14 143:20 197:25 | |
| **attributed**(1) 136:6 | |
| **audible**(1) 77:2 | |
| **august**(16) 1:15 10:1 18:6 44:21 61:1 63:7 96:22 110:19 111:20 112:2 143:1 143:7 148:2 149:25 305:5 308:14 | |
| **aurelius**(38) 4:13 4:44 4:45 75:3 135:4 162:21 169:13 172:17 179:20 179:21 183:19 187:4 188:21 189:8 189:11 204:19 211:4 220:10 227:7 227:9 228:17 238:3 240:12 250:1 251:4 251:5 275:22 275:22 276:2 294:13 294:15 297:6 297:25 303:18 304:1 304:22 304:25 305:10 | |
| **aurelius's**(7) 294:12 297:24 304:24 305:5 305:6 305:12 305:18 | |
| **austin**(2) 1:23 4:24 | |
| **authorities**(5) 13:8 168:13 196:17 279:17 287:13 | |
| **authority**(18) 16:5 16:10 33:10 33:11 196:21 196:21 218:11 256:10 264:24 281:15 284:23 284:24 285:15 287:17 297:10 297:10 299:2 299:20 | |
| **authorize**(2) 262:11 262:12 | |
| **automobile**(1) 186:19 | |
| **available**(23) 60:5 93:16 93:22 109:15 110:14 111:8 112:1 114:9 115:18 115:24 116:2 120:10 121:17 142:17 149:13 155:19 184:12 193:2 195:24 226:24 234:4 246:23 273:18 | |
| **avenue**(3) 1:36 2:24 3:26 | |
| **average**(12) 25:10 25:20 25:20 75:18 96:20 97:5 97:8 104:21 126:9 134:25 143:1 160:9 | |
| **averted**(1) 246:17 | |
| **avoid**(2) 159:8 269:24 | |
| **avoidance**(1) 294:8 | |
| **avoided**(4) 98:4 99:13 235:17 275:15 | |
| **avoiding**(1) 117:9 269:14 | |
| **awards**(1) 69:1 | |
| **aware**(20) 53:14 58:16 59:9 64:4 64:11 68:6 68:9 73:1 73:6 73:8 106:16 113:6 120:14 125:6 164:18 166:14 166:19 166:20 172:19 272:4 | |

| Word | Page:Line |
|------|-----------|
| **away**(13) 112:10 190:17 194:19 194:20 204:15 205:6 221:12 243:5 250:14 263:8 281:4 281:14 292:12 | |
| **awhile**(1) 208:19 | |
| **b-4(b**(1) 163:23 | |
| **back**(63) 10:6 10:21 25:25 26:25 27:17 31:17 34:20 36:23 55:5 60:14 68:11 83:19 86:1 87:4 97:24 107:18 112:10 114:3 115:5 116:8 121:21 128:4 129:4 129:24 137:8 142:21 145:8 155:5 174:4 182:6 184:22 189:2 190:20 192:24 196:25 200:5 201:3 203:20 206:1 206:11 214:20 216:12 217:20 223:7 228:15 229:18 239:1 239:1 240:21 250:19 252:7 253:11 264:10 264:12 272:4 274:2 274:4 281:2 285:20 286:22 296:5 298:16 299:8 | |
| **background**(1) 262:21 | |
| **backs**(2) 23:10 253:20 | |
| **backward**(3) 121:19 142:10 145:6 | |
| **backwards**(3) 30:4 112:7 219:6 | |
| **bad**(9) 47:8 47:10 129:22 129:23 209:5 212:21 231:6 245:22 297:17 | |
| **bagel**(1) 292:8 | |
| **baiera**(1) 7:43 | |
| **baked**(1) 41:2 | |
| **baking**(1) 182:5 | |
| **balance**(7) 15:11 201:17 201:18 210:16 225:17 241:11 246:1 | |
| **balanced**(2) 120:1 247:15 | |
| **balancing**(5) 15:6 117:16 200:5 200:12 248:16 | |
| **bale**(1) 5:28 | |
| **bank**(20) 5:18 5:18 6:31 6:45 7:28 129:8 130:20 154:25 155:1 161:14 161:23 184:7 198:11 228:18 228:19 240:13 253:5 256:7 282:11 284:8 | |
| **banker**(2) 168:25 169:2 | |
| **bankers**(1) 168:3 | |
| **banking**(1) 87:23 | |
| **bankrupt**(5) 23:7 244:19 253:17 255:10 255:12 | |
| **bankruptcies**(1) 88:16 | |
| **bankruptcy**(161) 1:1 1:20 15:9 20:19 20:23 21:3 21:7 21:21 21:23 22:18 25:13 25:14 26:23 27:6 30:19 31:3 31:6 32:8 34:25 35:11 35:22 37:8 37:15 38:9 38:13 38:22 52:15 54:9 56:17 57:17 58:9 59:18 60:7 60:11 60:14 60:17 61:4 61:7 61:12 61:16 62:13 63:16 68:4 68:7 68:15 69:12 70:6 70:12 70:14 71:10 76:14 77:21 78:3 79:13 79:20 79:23 80:24 88:8 88:11 88:22 89:4 89:9 89:21 89:21 90:4 90:6 91:1 91:15 92:11 94:18 96:21 99:6 100:13 100:20 101:15 101:21 102:3 104:2 104:23 105:7 113:2 114:13 114:22 116:15 123:21 128:13 128:23 129:25 130:16 132:7 132:18 136:21 138:17 139:3 139:11 140:16 140:21 141:11 142:14 143:11 144:2 144:3 146:22 147:24 161:5 168:7 168:9 169:10 173:19 174:14 174:16 175:8 175:10 175:14 180:16 180:21 185:11 186:24 187:1 187:9 191:1 192:9 192:20 193:8 196:12 196:25 197:7 199:8 207:5 215:14 223:23 225:9 225:15 225:21 246:6 246:18 247:19 249:16 250:10 250:25 253:9 253:15 254:2 259:16 267:20 267:24 267:24 268:10 268:11 272:18 281:19 282:15 283:3 283:4 284:3 284:17 285:3 285:24 289:9 290:7 | |
| **bankruptcy's**(1) 69:17 | |
| **banks**(3) 23:8 253:18 268:6 | |
| **bank's**(1) 275:23 | |

| Word | Page:Line |
|------|-----------|
| **barclays**(2) 5:42 5:42 | |
| **bargain**(1) 292:18 | |
| **barrier**(1) 214:18 | |
| **base**(8) 34:3 62:22 64:8 65:12 66:4 67:12 67:17 96:18 | |
| **baseball**(1) 221:11 | |
| **based**(63) 29:15 42:23 43:16 44:10 45:21 45:25 46:5 48:12 51:4 62:8 69:1 80:12 84:14 96:4 97:9 97:17 103:8 103:10 103:13 104:24 105:17 114:9 119:16 121:5 121:13 126:8 128:13 128:24 129:9 131:5 131:6 132:12 133:11 133:21 137:7 140:6 140:6 145:18 147:8 156:6 159:20 159:22 161:9 161:12 169:4 186:2 187:25 198:12 199:15 207:16 210:15 212:23 213:25 230:8 239:8 247:17 252:11 252:15 252:19 261:17 263:4 264:1 266:14 | |
| **baseline**(5) 213:14 229:18 231:20 231:24 235:9 239:9 240:8 | |
| **basic**(2) 93:4 247:25 | |
| **basically**(16) 31:23 145:9 148:5 161:2 197:9 197:14 207:23 217:9 218:3 225:20 238:10 240:1 250:16 285:21 294:16 303:21 | |
| **basis**(47) 29:15 33:12 35:4 35:8 42:12 42:18 46:9 91:13 90:23 92:5 92:7 92:18 96:4 108:15 112:20 112:21 112:24 113:13 141:1 146:19 156:5 161:1 169:8 172:1 174:1 181:18 200:14 200:19 202:4 205:2 206:9 209:15 210:3 210:3 210:13 229:6 232:12 252:7 259:11 266:8 268:6 269:20 274:1 282:9 297:15 300:6 304:16 | |
| **basketball**(1) 46:11 | |
| **bathroom**(2) 85:24 255:23 | |
| **bear**(4) 135:12 210:20 235:11 249:17 | |
| **bears**(1) 94:14 | |
| **became**(1) 287:9 | |
| **because**(127) 10:16 28:18 29:17 39:12 57:3 68:13 70:22 81:3 85:22 113:9 114:1 122:23 125:9 126:13 130:12 155:16 156:1 156:21 157:15 158:9 158:11 160:1 169:18 171:22 175:5 175:10 178:1 185:2 188:14 193:24 194:10 194:12 197:11 197:18 198:15 199:18 200:13 200:15 201:15 202:13 202:14 204:1 204:4 204:12 204:16 207:25 209:24 210:1 210:8 212:20 212:20 213:7 213:7 214:14 214:14 215:9 217:5 217:22 217:25 223:13 225:7 225:9 226:7 226:22 227:3 227:5 228:6 228:21 229:10 229:20 230:23 232:1 235:13 236:18 236:24 237:22 239:6 239:17 240:4 240:7 240:7 240:11 242:3 242:11 244:2 246:2 246:7 247:5 248:2 248:19 249:12 250:15 254:17 255:10 257:10 258:23 260:18 261:22 262:10 267:22 268:5 268:18 270:5 274:15 275:8 275:10 276:16 277:8 280:10 281:5 283:9 284:6 284:9 289:18 291:16 293:22 295:4 297:25 298:2 298:5 298:8 299:13 303:17 303:19 304:3 306:6 307:4 | |
| **become**(3) 28:12 226:6 258:10 | |

| Word | Page:Line |
|------|-----------|
| **been**(142) 13:14 14:7 18:23 20:2 20:17 23:18 23:20 30:3 31:8 32:1 32:3 32:9 32:10 32:13 33:19 33:25 34:4 35:1 35:21 37:11 38:13 38:13 38:16 41:13 42:14 43:3 44:20 46:11 46:18 50:14 52:6 52:8 56:17 56:25 59:12 62:14 62:15 62:16 62:20 63:15 63:25 66:20 70:23 70:23 77:21 78:1 78:12 78:17 79:7 79:22 80:16 82:20 85:23 86:21 89:8 100:25 101:6 101:8 101:9 102:2 103:13 105:22 110:3 115:23 116:17 120:19 126:17 126:23 127:8 130:9 130:15 130:16 131:12 132:17 133:18 137:14 137:24 139:10 144:22 149:8 153:15 153:21 159:12 169:1 176:5 180:12 181:5 181:17 185:1 192:6 194:3 198:5 201:10 204:9 205:14 210:1 210:2 210:2 211:4 211:25 216:1 216:1 219:9 228:25 235:7 235:16 236:1 240:13 240:13 245:5 247:11 249:16 250:6 251:2 252:4 252:8 253:6 254:5 255:16 258:20 258:25 259:1 264:18 269:21 271:12 272:9 272:9 272:23 273:1 279:17 283:9 289:17 291:19 291:21 291:22 293:5 298:9 298:10 303:9 304:14 305:5 305:25 | |
| **beer**(1) 199:2 | |
| **befall**(2) 183:17 186:6 | |
| **befball**(1) 185:3 | |
| **before**(48) 1:19 13:2 13:6 16:21 49:3 50:7 52:14 53:1 57:21 70:16 73:7 75:1 86:18 89:13 89:21 89:24 90:9 96:25 96:24 99:24 100:6 127:8 136:17 137:4 137:10 147:7 300:25 206:19 211:7 216:7 217:10 217:14 218:9 219:15 228:16 231:18 236:5 254:4 273:10 280:1 281:12 284:11 286:4 287:9 298:10 302:17 302:20 | |
| **beggars**(1) 286:6 | |
| **begin**(2) 13:2 298:2 | |
| **beginning**(3) 142:21 234:5 259:1 | |
| **behalf**(10) 12:6 49:19 84:20 169:13 211:1 211:12 256:6 270:19 276:12 304:22 | |
| **behind**(5) 100:8 103:15 143:17 163:25 273:5 | |
| **being**(66) 15:21 25:4 28:4 30:20 31:15 36:20 38:9 46:2 54:16 57:15 59:17 60:16 61:15 96:14 97:7 104:15 106:16 106:7 106:18 110:6 113:15 113:18 113:19 113:21 113:23 114:23 114:24 121:16 123:8 136:16 141:8 141:12 141:15 160:6 172:1 173:18 187:11 190:8 197:7 198:15 206:24 206:25 219:14 220:14 221:14 221:15 232:22 232:24 233:13 241:23 244:8 245:3 248:17 249:24 250:17 255:13 257:3 268:11 271:23 273:7 273:18 280:17 281:7 292:7 301:18 304:15 | |
| **belief**(3) 18:9 20:8 109:7 | |
| **believe**(79) 13:18 22:1 29:12 36:4 37:24 43:5 48:1 52:13 55:17 68:3 68:14 72:25 78:15 79:14 92:3 97:9 97:11 98:3 109:13 110:21 116:22 126:19 132:11 134:5 138:9 146:21 149:22 150:2 154:15 162:4 163:10 164:9 165:8 165:11 168:12 174:20 179:10 180:5 181:6 183:4 183:14 184:2 184:3 187:8 187:16 188:11 188:24 190:5 191:7 192:4 192:7 194:3 195:2 197:5 197:22 198:3 210:8 220:15 225:10 226:4 226:4 241:11 244:2 250:12 271:2 272:6 273:14 274:5 274:21 276:16 276:19 278:7 281:16 281:20 288:7 297:9 302:5 305:13 | |
| **believes**(3) 125:15 275:24 302:21 | |
| **below**(3) 103:3 123:4 280:4 | |
| **bench**(3) 86:19 86:20 302:6 | |
| **benchmark**(2) 111:25 233:12 | |
| **benchmarks**(1) 110:11 | |
| **bendernabel**(1) 306:15 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **bendernagel**(177) 1:24 10:5 10:6 10:9 11:12 12:10 16:19 17:1 17:10 17:13 17:15 17:17 18:15 18:22 19:8 19:12 19:22 20:1 22:4 22:19 22:23 24:4 24:9 24:12 24:18 29:12 29:19 30:1 30:11 32:25 37:24 38:3 39:10 39:16 41:7 43:7 43:15 44:13 44:24 45:10 45:20 45:23 45:24 46:23 47:11 47:13 47:15 47:17 47:19 48:5 48:11 48:14 48:17 49:11 50:7 50:13 50:15 50:17 53:4 65:8 65:15 66:6 77:4 77:6 80:5 80:6 81:19 82:18 83:8 83:10 83:21 83:25 85:12 85:15 85:21 87:3 87:8 87:10 87:10 87:14 87:19 91:14 91:20 92:17 92:20 92:22 92:23 94:7 94:10 94:21 94:24 96:8 96:10 98:10 98:14 104:11 104:14 107:4 107:8 112:9 112:14 112:17 114:19 114:20 115:4 123:25 124:8 124:13 124:18 124:20 127:5 127:7 127:11 127:15 127:18 128:19 128:21 128:22 129:21 133:4 134:8 136:9 152:2 152:8 152:16 152:18 162:15 163:10 164:9 167:6 167:15 168:15 168:17 168:23 168:24 170:6 170:17 170:19 171:14 171:18 171:21 171:24 172:14 172:16 172:25 173:1 174:20 174:21 174:25 175:2 175:19 175:23 176:1 176:12 176:23 177:25 179:10 179:15 194:22 206:1 247:1 247:1 250:2 254:21 255:22 297:20 297:20 298:14 303:5 306:4 306:9 306:22 307:1 307:4 307:19 307:24 | | **bendernagel's**(4) 46:3 | | **beneficial**(2) 209:21 209:24 | | **beneficiaries**(1) 292:15 | | **beneficiary**(1) 295:5 | | **benefit**(21) 8:6 8:7 58:23 111:23 132:11 132:20 132:21 132:24 157:14 158:22 158:12 207:7 209:6 232:23 244:14 244:17 266:17 271:8 289:16 294:24 308:3 | | **benefited**(2) 168:23 288:11 | | **benefits**(6) 58:13 131:14 132:6 132:9 133:24 209:19 | | **bennett**(38) 2:6 84:25 211:11 211:12 217:13 217:16 219:2 219:7 220:5 222:9 224:3 224:6 224:11 225:1 225:3 226:4 227:17 227:22 227:25 229:6 229:7 230:19 233:4 234:14 234:21 235:1 235:7 235:8 241:17 241:22 241:24 250:2 250:13 251:12 252:2 253:7 255:5 255:20 | | **bennett's**(3) 228:25 250:18 251:19 | | **benson**(9) 2:42 8:2 12:6 86:6 91:22 134:13 198:10 253:4 256:6 | | **berkshire**(3) 212:19 212:20 212:21 | | **best**(11) 16:20 31:25 33:4 49:5 71:3 82:3 129:2 250:18 263:1 284:23 284:24 | | **bet**(1) 129:16 | | **better**(13) 19:10 22:7 25:22 38:23 83:25 85:22 97:4 130:17 207:12 226:14 267:16 277:2 297:3 | | **between**(42) 37:9 54:6 60:20 80:16 84:16 96:22 100:2 118:25 119:5 125:22 138:11 143:7 147:21 150:20 150:24 158:5 158:15 159:20 161:23 173:18 177:1 177:21 185:19 188:5 193:1 203:9 215:20 223:7 230:6 250:2 252:11 253:25 255:17 256:10 265:18 265:23 265:24 265:25 292:2 292:14 302:12 305:11 | | **beyond**(2) 46:20 288:15 | | **bid**(2) 161:9 177:12 | | **bidding**(1) 177:11 | | **bifferado**(1) 2:35 | | **big**(12) 184:24 187:3 204:14 204:14 216:12 217:6 225:8 231:4 231:5 231:10 239:12 298:5 | | **bigelow**(1) 7:2 | | **billion**(45) 37:11 53:16 53:19 54:4 80:25 109:1 109:17 115:14 116:9 116:16 117:4 118:13 118:22 119:2 119:7 119:13 119:18 120:11 123:3 123:22 134:3 134:5 139:7 139:8 139:9 139:19 140:11 141:14 154:23 173:21 184:7 185:25 187:5 188:23 193:5 196:4 197:20 202:2 206:9 215:9 238:18 240:3 240:4 | | **billion-five**(1) 241:12 | | **billions**(1) 215:15 | | **bilmes**(2) 6:1 6:2 | | **binder**(7) 17:11 23:25 55:18 58:19 72:1 94:4 135:11 | | **binders**(4) 17:2 24:8 87:15 151:14 | | **binding**(4) 192:21 218:23 251:23 262:13 | | **bingham**(1) 8:16 | | **biologically**(1) 250:17 | | **bit**(23) 11:13 112:11 168:18 201:6 201:16 205:18 205:23 208:22 211:15 211:19 214:22 232:6 237:23 241:24 247:10 254:20 270:12 278:22 280:12 282:21 283:8 296:9 296:11 | | **black**(22) 90:18 90:22 90:24 91:2 91:5 91:6 91:7 91:11 119:15 119:17 119:20 122:8 123:5 123:6 123:6 131:1 138:4 138:20 140:7 140:9 213:22 249:10 | | **black-scholes**(1) 238:8 | | **blackberry**(1) 22:10 | | **blake**(1) 2:14 | | **blank**(2) 155:14 276:12 | | **blended**(1) 75:18 | | **block**(1) 5:31 | | **blow**(1) 186:1 | | **blue**(1) 23:17 | | **board**(15) 24:1 34:6 39:7 39:21 56:10 56:14 57:6 57:9 57:9 59:3 59:5 78:7 206:2 216:9 222:18 | | **body**(1) 111:21 | | **boelter**(1) 4:29 | | **boil**(1) 35:7 | | **boiled**(1) 14:14 | | **boilerplate**(1) 266:9 | | **boils**(1) 158:4 | | **bond**(166) 89:15 90:11 91:17 93:2 93:25 94:1 95:4 103:4 105:24 107:13 109:9 109:13 112:4 118:10 118:12 118:21 120:9 120:25 121:2 121:11 121:15 122:2 130:21 130:23 131:20 132:1 133:21 133:22 134:3 134:6 135:18 136:3 136:17 136:25 137:7 138:5 139:16 139:22 142:6 151:3 172:20 173:22 176:24 177:1 177:6 183:6 183:9 183:21 183:24 184:24 185:21 186:8 187:3 187:5 187:13 187:22 191:8 193:18 195:20 195:24 196:13 196:15 196:22 196:24 197:3 197:21 199:9 199:21 200:13 200:14 200:15 200:15 206:8 207:11 209:5 210:1 210:4 205:1 206:8 207:11 209:5 210:1 210:4 210:17 210:19 212:1 212:12 212:23 213:2 213:4 213:4 213:8 213:8 213:15 214:11 214:11 215:1 216:5 216:6 216:19 217:10 218:10 219:12 223:6 227:5 227:8 227:17 227:16 228:8 229:10 230:13 231:2 232:14 232:20 232:22 234:12 239:10 240:6 240:8 240:15 240:18 240:24 240:25 241:11 241:25 242:1 242:4 242:10 242:12 242:14 242:17 242:20 243:4 248:6 248:10 249:14 249:23 250:11 250:14 250:20 250:24 251:7 251:8 251:12 251:19 252:11 252:18 254:5 254:6 254:9 254:9 254:12 254:14 254:16 255:6 | | **bond."**(1) 251:20 | | **bonded**(1) 185:7 | | **bondholder**(1) 245:18 | | **bondholders**(1) 120:22 | | **bonding**(1) 200:6 | | **bonds**(15) 110:16 110:17 111:19 148:7 151:5 153:1 185:2 202:8 213:14 218:9 233:3 233:9 242:7 255:7 309:37 | | **book**(2) 163:24 218:3 | | **borrow**(2) 218:3 236:25 | | **both**(34) 10:17 15:10 26:6 26:7 40:5 41:14 43:24 44:5 59:16 59:17 89:16 91:7 91:19 114:12 117:17 123:3 129:6 135:3 168:19 202:17 202:18 211:4 219:11 223:8 240:13 259:24 266:11 270:6 272:22 272:23 275:11 281:6 293:18 295:3 | | **bother**(1) 304:8 | | **bottom**(3) 65:7 65:10 243:17 | | **bound**(3) 278:25 292:20 293:21 | | **box**(8) 81:12 122:10 123:6 123:8 123:11 213:22 249:10 | | **boxes**(1) 164:13 | | **brady**(1) 2:13 | | **brand**(22) 20:12 20:18 20:24 23:15 23:22 23:22 23:23 25:14 28:25 29:4 42:6 54:18 54:20 54:24 55:3 55:11 55:14 55:16 197:6 226:11 282:19 309:18 | | **breach**(1) 73:13 | | **break**(14) 47:20 85:18 85:24 85:25 85:25 86:16 86:16 98:1 165:20 165:23 166:4 179:12 255:23 256:2 | | **breaking**(1) 85:22 | | **breaks**(1) 31:13 | | **breathtaking**(1) 249:8 | | **brickley**(1) 7:48 | | **brief**(12) 85:13 103:23 104:16 166:11 166:17 198:12 243:12 272:12 273:17 278:13 280:5 280:18 | | **briefed**(1) 42:17 | | **briefing**(7) 165:21 166:15 258:25 259:1 272:11 272:19 273:16 | | **briefly**(8) 15:16 20:5 88:5 99:2 211:21 250:1 302:15 304:22 | | **briefs**(2) 113:17 286:21 | | **brigade**(2) 7:32 7:33 | | **bring**(12) 206:11 210:6 213:25 235:11 254:22 254:23 254:23 254:24 255:1 257:7 269:25 269:25 | | **brings**(3) 206:21 248:6 249:7 | | **broad**(2) 233:20 295:12 | | **broadcast**(1) 32:6 | | **broadcasting**(2) 27:13 40:5 | | **broadway**(1) 2:46 | | **brogan**(1) 2:36 | | **brought**(4) 78:18 90:6 226:16 235:6 | | **brown**(4) 4:2 7:7 211:1 270:19 | | **bruce**(2) 2:6 211:11 | | **brusewitz**(2) 288:18 288:21 | | **bryan**(1) 4:25 | | **bryant**(1) 4:18 | | **budgeted**(1) 85:9 | | **building**(2) 21:18 30:5 | | **builds**(1) 188:15 | | **bulk**(2) 40:23 159:12 | | **bullet**(2) 26:1 26:4 31:18 36:11 | | **bunch**(4) 202:22 203:13 292:1 293:21 | | **bundle**(2) 296:2 296:23 | | **burden**(24) 14:2 48:8 172:20 192:23 213:19 214:10 214:20 218:13 223:15 223:16 229:8 231:19 231:25 235:9 240:22 240:22 242:20 247:5 247:6 247:7 248:7 248:24 251:15 251:16 | | **burdening**(1) 304:2 | | **burdens**(1) 28:16 | | **bureau**(2) 42:15 44:17 | | **burgo**(1) 8:3 | | **burton-caverty**(1) 8:9 | | **business**(21) 20:21 20:22 24:13 27:19 29:21 31:9 35:9 38:15 39:13 50:9 99:5 100:5 100:11 130:17 140:25 156:6 160:6 222:15 225:16 226:5 230:2 | | **businesspeople**(1) 21:1 | | **businessperson**(1) 244:11 | | **busy**(1) 281:3 | | **but**(287) 11:2 11:9 11:20 12:12 12:18 12:23 13:1 13:23 13:25 15:14 17:6 21:8 28:17 30:4 30:24 31:14 32:19 34:1 34:12 37:25 38:15 38:18 40:7 40:22 41:1 44:4 44:10 46:4 46:13 48:12 50:12 52:13 53:21 56:4 57:6 64:7 65:17 66:23 68:12 69:9 71:13 71:22 72:23 73:4 78:4 79:18 82:22 85:6 85:13 85:17 86:13 86:24 88:18 92:3 92:5 98:22 100:25 102:19 110:25 112:4 113:22 114:5 115:2 116:21 118:23 120:22 123:21 125:5 125:8 125:22 127:8 129:16 130:13 133:6 133:5 136:13 136:16 137:24 138:7 139:10 142:12 143:12 143:23 145:18 150:6 151:15 153:20 157:3 157:6 157:7 158:20 159:1 160:17 164:3 165:16 166:12 167:4 176:3 177:17 179:11 180:13 181:3 181:11 182:7 183:24 184:19 185:1 187:19 188:4 188:16 190:3 191:18 191:23 192:4 192:11 192:21 193:20 194:1 194:9 194:14 195:2 195:7 195:9 195:11 195:14 196:4 196:20 196:17 199:25 200:18 201:7 201:16 203:14 204:8 205:10 206:9 206:13 207:11 208:5 208:7 208:8 208:22 208:22 209:4 209:15 209:16 209:25 210:11 211:7 212:9 212:24 214:9 215:16 216:11 215:24 216:13 217:2 217:17 217:21 218:24 219:18 220:12 220:16 221:10 221:20 221:23 224:10 224:17 224:19 225:12 226:8 226:13 227:7 227:22 227:25 228:1 228:12 228:13 228:20 229:1 229:21 230:8 230:16 231:5 232:11 233:1 233:2 233:8 233:24 234:2 234:17 235:4 235:5 235:8 235:17 236:17 237:3 237:9 237:14 237:25 239:7 240:3 240:14 242:10 242:23 243:1 243:4 244:24 245:9 247:8 248:8 248:9 248:10 248:13 249:4 250:21 251:23 252:10 252:21 253:14 255:16 258:17 258:25 259:1 259:5 260:21 262:12 264:14 266:17 267:2 267:3 267:18 268:13 269:2 269:3 269:18 269:24 270:12 271:16 271:22 273:1 273:6 273:22 275:3 275:5 275:17 277:3 278:20 279:9 280:8 282:21 286:3 287:24 288:8 288:13 288:23 290:4 290:14 291:5 291:14 294:21 295:6 295:24 296:5 296:10 296:18 297:1 297:8 297:22 299:4 299:6 299:11 299:12 300:2 300:22 301:2 301:7 301:20 302:6 304:21 305:14 305:22 305:23 306:2 307:7 307:20 | | **buy**(11) 119:17 119:18 140:5 148:19 178:25 199:2 230:12 230:16 230:17 238:4 238:24 | | **buying**(3) 139:23 161:13 216:14 | | **buyout**(1) 75:25 | | **cable**(1) 22:12 | | **cablevision**(2) 23:4 23:11 253:13 253:25 | | **cablevisions**(1) 22:12 | | **cablevision's**(1) 253:20 | | **calabrese**(1) 289:7 | | **calculate**(11) 28:21 93:10 96:3 114:6 119:15 136:16 136:25 155:11 158:2 158:22 160:21 | | **calculated**(8) 70:19 92:2 110:15 135:16 135:17 155:23 159:21 205:2 | | **calculating**(7) 71:4 90:25 109:24 115:25 136:13 138:9 147:20 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**calculation**(33) 70:21 91:17 93:5 96:5 96:11 106:5 106:23 106:25 110:13 110:25 111:4 112:5 115:9 116:7 116:20 117:8 117:11 119:17 122:8 126:8 126:11 130:21 130:23 131:5 131:6 138:19 138:20 138:24 155:21 158:23 160:1 160:3 160:7

**calculations**(4) 115:6 136:2 170:8 214:24
**calibrating**(1) 212:1
**california**(1) 233:11
**call**(9) 16:23 30:5 31:11 87:11 116:6 184:23 223:1 227:10 244:16

**called**(20) 46:11 69:1 117:19 204:6 208:24 209:17 221:11 243:11 254:24 282:10 282:22 283:25 284:12 286:23 287:16 287: 288:7 288:18 289:6 291:25

**calling**(4) 43:2 43:10 43:20 44:6
**calpine**(1) 233:11
**came**(16) 23:3 53:14 68:3 128:4 136:3 136:19 145:9 159:15 177:3 204:20 215:11 223:18 238:14 240:25 252:4 281:3

**campaigns**(1) 40:23
**can**(134) 10:21 11:7 11:21 14:14 14:15 17:2 20:23 24:21 26:17 28:1 28:21 29:22 30:5 31:25 34:10 46:12 46:15 49:19 50:6 50:8 50:25 53:3 55:9 56:24 58:21 63:25 65:6 66:13 67:2 70:18 72:6 73:15 80:19 81:12 82:9 86:7 86:15 89:18 92:20 93:24 95:23 103:24 105:9 107:22 112:6 112:14 115:18 117:10 122:5 125:8 127:12 128:4 138:4 145:22 147:20 148:18 151:10 152:14 155:22 158:25 162:3 165:24 177:12 188:2 188:7 188:12 188:20 189:10 189:19 194:12 195:6 195:12 196:5 196:5 200:15 203:2 203:3 203:8 203:18 203:19 205:25 206:1 207:1 210:9 212:6 212:7 212:9 214:15 215:6 215:14 221:22 222:2 222:25 225:15 225:17 226:6 227:5 227:25 229:13 235:16 236:17 236:24 237:15 238:6 238:25 239:7 239:17 239:18 240:15 243:5 244:8 244:18 245:7 247:25 249:19 255:23 262:4 264:15 270:4 276:15 280:14 285:19 286:14 289:15 290:15 291:19 295:1 296:3 299:8 304:2 305:14 306:13 307:7

**cancel**(2) 158:8 158:9
**candidate**(1) 33:4
**candidly**(1) 180:11
**cannot**(18) 14:17 33:9 33:9 33:10 114:7 178:2 178:8 178:13 193:10 201:21 201:21 215:17 227:14 287:24 287:25 287:25 292:3 305:6

**cantigny**(1) 7:11
**canyon**(2) 8:47 8:47
**can't**(46) 15:14 34:17 57:1 73:8 74:2 74:4 74:21 193:25 204:16 204:17 214:13 214:14 214:16 221:2 221:19 221:23 224:11 225:10 225:23 225:24 228:8 228:8 228:17 228:17 228:18 230:25 232:19 240:14 241:24 242:1 242:3 242:11 242:12 248:2 248:16 248:24 258:14 264:25 267:1 286:11 287:11 287:11 289:5 292:24 306:5 306:13

**cap**(1) 177:2
**capabilities**(1) 25:21
**capability**(1) 229:9
**capable**(1) 229:14
**capacity**(1) 297:1
**capital**(27) 4:13 4:44 4:45 5:27 5:27 5:42 6:1 6:20 6:25 6:35 6:36 7:32 7:33 8:25 8:25 8:30 8:30 9:1 9:22 23:5 73:5 162:21 179:20 250:1 253:18 266:2 268:7

**capitalization**(1) 161:19
**caption**(1) 95:11
**capture**(5) 98:24 100:7 107:24 236:3

**captured**(3) 130:5 130:7 131:10
**capturing**(1) 112:3
**car**(6) 237:16 237:18 237:21 237:21 237:25 296:9

**care**(1) 226:7
**career**(8) 34:9 88:21 89:8 89:12 91:1 114:12 131:25 224:11

**cares**(1) 268:5
**carey**(1) 1:19
**carickhoff**(4) 84:19 84:20 276:11 276:12
**carol**(1) 5:28
**carries**(1) 253:14
**carry**(2) 87:9 101:13
**carrying**(1) 101:12
**carryover**(1) 103:21
**case**(203) 1:5 6:45 15:24 16:14 32:11 43:17 46:6 63:16 68:13 75:5 75:20 96:21 97:3 97:6 100:1 101:12 108:7 110:3 110:6 120:22 121:10 121:15 126:1 128:5 128:15 128:24 129:9 137:15 137:18 137:21 143:5 148:24 164:19 166:9 171:25 172:8 172:9 172:17 173:3 173:8 173:9 173:11 181:17 182:17 182:23 185:9 185:11 185:13 185:22 186:5 186:8 186:8 186:9 186:11 186:11 186:23 187:2 190:14 192:2 192:17 193:6 193:9 193:14 193:21 195:23 196:12 196:19 196:19 197:11 199:9 199:13 200:24 200:25 200:25 201:9 204:11 204:12 205:12 208:19 210:21 213:8 213:17 215:10 215:11 216:6 218:22 219:20 219:23 220:1 220:2 221:4 221:16 221:18 222:7 222:19 222:19 222:20 222:25 223:3 223:23 224:9 224:24 228:11 231:21 235:9 235:22 235:22 235:25 236:5 239:10 240:8 240:9 240:11 240:12 240:14 240:16 243:1 243:11 243:12 243:15 243:25 245:22 245:20 245:24 246:9 251:17 251:20 251:21 254:25 258:5 260:3 261:12 261:12 261:15 263:20 264:6 266:4 266:14 267:14 267:15 269:21 269:22 269:24 269:25 270:5 272:17 273:19 279:13 280:11 280:21 281:17 281:18 282:6 282:10 282:22 283:1 283:18 283:24 283:25 284:8 284:9 284:12 284:16 284:18 284:23 284:25 285:17 286:22 286:22 286:25 287:2 287:14 287:18 288:6 288:17 288:18 289:6 289:7 289:20 290:2 291:2 291:25 292:7 293:5 293:7 293:9 293:16 293:20 297:11 297:11 297:14 299:24 300:1

**cases**(45) 20:17 25:24 27:4 41:22 89:21 99:20 180:12 184:24 184:25 187:3 192:21 192:21 196:18 196:19 196:23 203:10 208:16 212:7 214:10 215:14 215:15 216:4 229:7 218:21 221:8 221:25 225:15 239:9 240:7 251:11 262:3 266:4 276:21 278:19 279:16 284:21 289:17 291:22 292:1 292:5 292:11 297:13 298:7 300:6 303:1

**cash**(49) 38:14 38:18 38:20 51:11 62:3 62:7 62:8 81:1 81:2 108:2 108:7 108:14 108:17 108:20 108:22 108:25 109:3 109:15 110:1 110:22 111:23 114:24 115:8 115:10 115:16 115:19 117:2 147:17 148:10 155:3 155:13 155:19 155:24 156:2 156:8 156:8 156:15 158:1 158:16 158:18 171:2 184:10 188:23 207:14 209:2 209:3 209:7 225:17 227:5

**cassandra**(1) 8:9
**cast**(3) 59:9 59:11 59:16
**catastrophe**(1) 174:15
**categories**(11) 20:8 42:4 95:3 95:6 98:18 99:2 108:16 222:2 232:7 232:8 248:11

**category**(14) 95:5 95:7 95:10 99:3 107:19 109:11 109:15 117:17 139:17 159:1 159:2 222:13 233:20 242:13

**catherine**(1) 5:34
**causal**(1) 185:19
**cause**(8) 36:21 36:22 46:17 117:12 138:21 204:15 231:9 237:1

**caused**(4) 68:14 213:2 232:25 249:24
**causes**(1) 21:20
**causing**(1) 253:16
**cent**(1) 215:8
**center**(1) 195:10
**central**(4) 14:13 79:16 250:4 300:13
**century**(1) 293:7
**ceo**(9) 17:21 26:22 28:10 28:10 29:13 43:8 56:13 61:7 79:16

**ceos**(1) 250:9
**certain**(15) 17:2 45:2 62:3 77:24 101:13 145:14 181:4 181:10 185:15 201:3 201:13 207:17 217:9 235:17 302:14

**certainly**(34) 17:4 34:1 67:1 83:12 92:2 100:4 100:10 101:13 125:21 140:23 153:25 158:21 183:10 184:18 185:11 187:24 191:4 191:18 192:8 192:16 193:25 194:21 195:20 198:20 202:2 203:22 204:8 217:21 218:24 268:12 274:25 278:9 278:13 304:20

**certainty**(5) 93:14 215:18 234:3 244:6 244:20

**certifiable**(2) 269:4 269:4
**certification**(62) 10:13 10:15 10:25 11:7 11:15 11:16 11:18 12:4 12:8 12:9 12:13 12:15 12:22 13:1 15:16 16:4 16:9 84:13 84:15 84:22 85:3 85:8 87:2 255:21 256:4 256:5 256:9 256:12 256:21 257:6 257:7 259:10 260:4 260:15 260:24 264:19 264:21 264:24 269:7 269:8 271:17 274:14 274:16 276:19 276:23 278:8 279:3 279:8 279:15 279:20 281:14 286:17 291:5 293:10 297:15 297:17 298:1 298:18 299:1 302:10 302:14 308:8

**certified**(2) 274:18 290:23
**certify**(27) 15:19 256:24 257:7 257:11 257:16 259:6 260:23 260:23 264:15 268:25 270:12 272:2 273:4 273:23 274:19 275:23 293:6 295:17 295:19 295:19 295:20 295:21 296:21 296:22 298:6 299:2 308:9

**certifying**(1) 268:23
**certitude**(1) 145:4
**chadbourne**(4) 3:16 5:2 85:5 278:6
**challenge**(1) 74:20
**chambers**(2) 307:6 307:8
**chance**(5) 147:8 148:20 193:12 253:11 302:4

**chandler**(1) 7:2
**chaney**(1) 8:48
**change**(8) 77:20 78:2 80:16 136:1 170:24 183:25 231:3 241:3

**changed**(5) 70:8 86:19 219:21 239:3 239:4
**changes**(3) 133:18 188:19 231:2
**changing**(3) 32:4 36:18 220:2
**channel**(1) 23:17
**channick**(1) 8:12

**chapter**(46) 1:9 58:25 88:24 95:15 95:19 97:6 98:5 98:20 98:24 99:14 101:2 101:12 101:24 102:13 108:24 125:11 125:15 125:16 126:15 126:21 126:22 126:23 131:7 132:14 132:16 178:19 178:20 186:23 194:5 207:14 208:21 209:22 235:15 235:23 235:25 243:2 243:2 244:7 244:12 250:6 263:16 267:14 276:21 279:5 279:5 292:14

**characterization**(1) 136:10
**characterize**(3) 23:14 31:6 79:3 220:11
**charged**(2) 292:21 293:25
**chart**(30) 19:16 19:19 24:22 24:25 25:5 42:3 94:17 98:6 105:9 107:10 107:18 109:18 109:18 115:5 115:5 117:19 123:24 129:24 132:3 155:4 155:5 164:13 165:13 165:14 165:19 206:10 309:31 309:32 309:34 309:35

**charter**(11) 89:20 137:18 137:21 173:8 173:9 173:11 173:13 173:21 203:23 203:23 203:24

**chase**(1) 6:13
**chicago**(3) 1:31 9:8 60:9
**chief**(7) 42:21 58:17 70:24 70:25 70:25 78:16 78:20

**choice**(2) 269:7 302:12
**choose**(1) 286:8
**chose**(1) 119:9
**christine**(2) 2:45 49:18
**chung**(1) 5:31
**chunk**(1) 12:1
**circuit**(106) 103:14 104:3 105:5 105:14 134:23 163:11 165:22 167:22 190:9 190:14 190:18 192:17 193:8 195:23 196:21 200:19 201:4 203:11 218:11 220:1 234:16 251:11 256:11 257:3 257:8 257:13 258:4 260:6 260:25 261:3 261:4 261:9 261:25 261:25 262:3 262:10 262:10 262:14 262:3 264:10 264:11 264:15 264:23 264:25 266:6 268:4 269:12 269:17 269:25 270:1 270:3 270:15 273:5 273:19 273:24 274:3 275:11 277:16 278:19 278:24 278:25 279:8 281:6 281:19 281:21 282:4 282:5 282:9 282:20 282:23 283:6 283:14 283:19 283:24 284:2 285:16 285:18 286:2 286:6 286:9 286:17 288:5 288:11 288:17 288:17 289:1 289:4 289:8 290:20 293:2 293:22 294:11 294:22 295:10 295:13 296:3 296:4 297:13 297:14 298:8 298:11 298:16 298:17 299:19 303:1

**circuits**(1) 104:22
**circuit's**(3) 261:15 280:20 290:5
**circumstance**(2) 223:2 275:15
**circumstances**(15) 15:4 29:24 44:7 111:7 114:4 119:25 121:5 121:14 173:14 181:11 199:19 200:16 209:22 223:1 223:16

**circumvents**(1) 288:14
**cisneros**(1) 283:25
**citation**(2) 250:21 298:9
**cite**(11) 104:7 190:15 192:20 195:18 218:17 219:2 240:14 240:16 282:10 284:1 284:2
**cited**(12) 22:15 104:15 181:5 184:24 186:9 190:6 191:3 218:16 288:19 289:6 297:10 297:13
**cites**(1) 218:19
**citi**(2) 7:17 7:24
**citing**(1) 218:8
**claim**(15) 103:22 175:14 175:15 178:18 178:25 196:5 203:5 203:6 219:24 227:4 245:3 245:8 295:2 295:4 295:9

**claimants**(3) 232:15 232:18 232:24
**claimed**(1) 199:10
**claiming**(1) 221:19

| Word | Page:Line |
|------|-----------|

claims(11) 100:23 143:14 178:2 189:5 189:17 208:17 215:9 219:25 229:17 244:23 294:4

clarification(2) 289:17 306:22
clarify(1) 253:3
class(7) 189:4 219:24 242:7 245:17 245:17 259:23 268:11

classes(3) 259:23 301:13 301:13
class's(1) 292:4
clause(1) 283:16
clear(25) 45:5 52:13 175:3 176:25 185:13 195:1 235:10 246:5 247:16 248:8 257:9 258:8 260:21 261:3 261:22 261:23 280:2 280:12 287:9 289:4 289:11 290:6 297:15 299:4 301:3

clearer(5) 264:25 283:22 283:23 285:20 285:22

clearly(6) 99:13 219:19 239:10 240:9 283:5 283:6
cleary(1) 2:14
clerk(3) 10:2 49:24 87:7
client(2) 166:9 225:13
clients(9) 20:20 21:5 21:20 41:22 47:4 225:12 225:25 225:25 226:2

climate(1) 186:1
clip(1) 35:17
clock(9) 45:3 45:6 45:18 46:1 46:11 46:12 46:17 47:1 235:21

close(11) 28:14 30:7 32:4 62:16 160:6 205:17 205:23 223:1 233:16 233:21 279:9

closely(3) 100:2 128:7 274:20
closer(3) 37:18 126:14 161:4
closing(1) 126:12
cloud(4) 21:10 47:7 175:17 178:19
co-components(1) 278:8
cobb(1) 3:9
code(18) 113:2 180:4 180:13 181:8 189:24 247:4 259:16 261:24 267:24 281:19 282:16 283:3 284:3 284:17 285:4 285:24 285:25 289:9

codified(1) 282:15
cognizable(2) 221:3 240:6
coincidence(1) 225:11
cole(1) 1:34
colleague(1) 295:1
colleagues(1) 285:24
collect(2) 133:12 308:2
collected(2) 262:3 266:5
collecting(1) 173:3
collection(2) 213:11 214:25
colloquially(1) 213:25
colloquy(2) 244:9 290:21
column(21) 105:11 106:9 107:14 123:4 123:13 123:14 124:1 135:8 135:13 135:14 135:20 135:21 153:4 163:11 164:10 164:23 167:17 167:19 206:13 206:14 207:10

columns(2) 165:17 207:13
combination(3) 42:21 70:22 211:16
combined(1) 270:4
come(33) 11:7 27:15 27:17 28:4 34:9 34:13 47:24 86:1 96:12 103:3 109:22 110:8 110:23 116:12 137:8 161:8 172:11 184:22 189:2 190:8 196:7 197:12 204:13 214:20 215:22 216:8 216:12 216:15 264:10 274:17 279:4 280:18 287:11

comes(12) 21:8 140:4 180:9 181:24 183:9 193:25 216:8 216:8 217:20 234:16 273:8 292:22
comfort(2) 13:25 245:9

comfortable(1) 167:3
coming(6) 18:6 21:17 73:16 152:23 176:10 189:9

comment(6) 26:25 129:3 166:25 186:17 190:13 252:1

commented(3) 191:24 193:9 194:23
commenting(1) 177:8
comments(8) 84:6 84:8 84:15 85:13 179:25 179:25 198:13 211:3

commissioners(1) 44:19
commitment(3) 156:25 236:15 236:16
committed(3) 173:16 183:3 259:14
committee(17) 3:9 5:1 9:7 75:23 85:5 97:21 97:23 147:3 202:25 207:24 235:18 241:19 242:9 244:1 245:12 278:7 291:17

committee's(2) 208:8 301:25
common(1) 203:12
commonsensical(1) 282:14
communication(1) 89:20
communications(4) 43:5 43:9 43:16 214:4

comp(1) 33:7
companies(15) 21:6 32:23 40:12 56:1 64:2 66:2 66:4 66:19 122:20 124:6 125:2 131:6 225:19 247:18 266:3

company(213) 1:8 4:2 7:42 7:47 8:2 17:19 17:22 17:23 18:10 20:9 21:24 22:3 23:7 23:9 23:25 26:22 27:5 29:13 34:13 35:11 35:22 38:4 38:9 39:7 39:22 42:1 42:14 43:8 47:2 50:10 51:3 52:2 53:16 54:9 54:12 54:25 55:4 55:14 56:24 57:24 58:4 58:12 59:3 59:9 59:12 59:23 60:6 60:11 60:13 60:15 60:17 60:21 60:24 61:3 61:6 61:6 61:12 61:15 61:20 62:11 64:18 66:9 67:24 68:3 69:9 69:13 70:6 70:14 75:8 76:10 76:13 79:4 81:8 81:17 82:15 92:2 95:12 95:14 96:16 97:5 98:19 98:23 99:5 99:7 99:14 100:3 100:9 100:14 100:16 100:20 100:25 101:2 101:15 101:17 101:24 102:6 102:23 103:1 108:1 109:7 112:19 112:21 113:1 113:5 114:14 115:10 115:15 115:21 116:14 116:17 117:1 117:9 117:13 119:1 119:2 119:16 119:18 119:19 119:23 120:3 122:20 124:7 124:9 125:10 125:14 125:16 125:18 126:14 130:11 130:15 132:14 132:16 132:18 132:19 132:21 133:16 138:12 138:18 140:5 140:13 141:1 142:1 144:1 144:23 149:2 156:1 156:6 156:11 156:19 157:14 157:15 157:22 158:1 158:10 159:5 161:4 161:13 161:18 170:8 170:14 171:2 174:14 174:16 175:10 175:14 175:16 176:24 177:2 177:6 177:13 178:18 178:20 179:1 179:1 183:1 183:17 185:4 185:17 186:6 186:24 187:7 188:4 188:5 188:13 195:24 198:2 201:23 201:24 203:16 203:19 205:5 207:6 207:12 208:12 208:14 209:18 211:2 224:5 225:9 225:14 226:18 226:21 235:25 236:22 236:24 244:17 244:19 247:16 253:17 253:19 254:2 270:20

company."(1) 186:16
company's(27) 37:8 39:20 51:4 51:11 51:20 51:23 51:24 52:5 52:9 54:2 55:3 55:10 55:23 62:6 62:8 70:5 90:3 102:13 108:23 108:24 118:17 126:18 126:21 127:25 155:24 156:20 174:17
company"(1) 255:10
comparable(6) 64:2 66:1 66:4 66:18 122:20 124:9

comparatively(1) 150:16
compared(6) 51:21 51:24 52:3 56:7 125:24 259:22

comparing(1) 177:18
comparison(8) 39:22 50:10 70:7 81:8 143:15 177:21 259:19 264:9

compelled(1) 220:9
compelling(2) 282:17 290:12
compensable(1) 142:10
compensate(14) 93:22 102:23 111:2 114:9 116:2 118:11 121:17 138:13 138:15 139:4 139:6 141:14 142:1 142:17

compensation(17) 6:40 32:14 32:22 32:22 64:1 64:5 66:20 66:23 66:24 68:6 79:9 103:2 109:9 112:5 120:10 120:25 151:2

compensations(1) 68:1
compete(1) 32:24
competent(1) 63:23
competing(1) 211:22
competitive(2) 62:18 79:6
competitively(1) 29:4
competitor(4) 225:20 253:8 253:13 255:14
competitors(3) 21:22 30:12 140:25
compiled(1) 103:13
complaint(1) 294:5
complete(3) 103:12 265:14 305:8
completely(12) 120:17 126:19 158:20 177:10 178:11 216:3 216:4 320:5 229:22 282:3 285:2 285:13

completes(1) 179:10
completion(1) 104:2
complicated(3) 36:14 79:19 171:3
component(4) 118:1 142:20 162:2 221:24
components(2) 66:24 96:11
composition(1) 244:1
compounding(1) 30:2
comprehensive(1) 237:17
compressed(1) 302:22
compromised(1) 184:14
computer(1) 78:24
conaway(1) 2:12
concede(1) 187:14
conceded(1) 273:12
conceivably(1) 215:12
concept(13) 38:8 212:22 212:25 213:3 213:18 215:1 215:23 215:24 231:1 264:21 266:20 267:2 268:14

concepts(1) 294:20
concern(9) 10:22 34:8 37:2 47:6 119:1 119:5 183:11 224:23 298:6

concerned(6) 40:15 46:16 166:22 191:14 225:5 237:9

concerning(4) 239:10 270:25 274:17
concerns(5) 20:14 72:17 74:6 246:20 121:20 286:14

conclude(5) 85:20 86:18 93:19 113:25 121:20 286:14

concludes(4) 16:15 142:9 250:8 308:2
concluding(1) 42:8
conclusion(12) 37:22 37:25 94:1 111:2 111:6 168:21 180:7 180:8 192:5 194:17 210:6 241:7

conclusions(2) 93:24 177:13
concrete(9) 183:17 185:3 197:24 200:8 210:2 212:3 237:12 241:2 241:2
condition(2) 196:22 252:18
conditioned(2) 185:1 234:12
conditions(4) 67:9 69:8 225:7 225:8
conduct(1) 31:8
conducting(1) 297:2
confer(2) 86:15 306:12

conference(1) 100:9
confess(1) 218:8
confidential(4) 24:13 39:13 50:9 50:23
confidentiality(2) 28:7 61:19
confidently(1) 218:10
confined(1) 213:2
confirm(7) 126:18 191:2 263:17 285:12 292:24 293:1 300:20

confirmation(49) 21:17 73:1 76:3 96:25 97:1 128:2 128:8 128:9 129:4 129:6 137:11 137:12 169:3 180:9 180:17 180:19 181:20 181:24 182:13 190:20 190:24 191:10 191:17 201:5 201:7 201:8 208:17 209:21 214:5 215:11 234:5 234:7 246:5 256:17 259:13 267:21 268:12 271:14 271:15 271:16 271:19 271:20 271:20 272:3 273:24 293:11 293:11 293:14 305:2

confirmed(7) 36:16 41:14 108:9 183:12 189:23 194:13 293:15

confirming(1) 90:1
conflicting(4) 15:22 194:24 276:24 283:18
confront(1) 280:11
confronted(2) 89:23 90:17
confuses(1) 23:18
confusing(2) 165:15 165:16
congress(2) 180:20 284:21
connected(1) 100:6
connection(16) 24:15 45:11 58:12 88:21 89:14 91:8 92:25 101:7 102:11 110:3 117:3 122:19 146:16 166:9 249:14 276:19

conoco(4) 262:1 284:12 284:15 284:23
consent(1) 22:11
consequence(3) 170:11 213:9 215:15
consequences(1) 229:14
conservative(8) 97:7 119:9 119:24 134:4 134:6 215:22 239:16 239:24
consider(5) 15:15 50:22 187:11 246:18 297:23

considerably(1) 70:17
consideration(10) 117:18 130:22 132:8 134:3 158:4 159:4 184:16 193:1 195:16 298:22

considerations(3) 13:7 15:4 15:7
considered(7) 13:11 13:16 119:10 198:1 266:22 279:18 287:11

considering(2) 16:16 158:10
consistent(2) 115:12 160:17
consistently(1) 126:17
consolidated(1) 275:8
constant(1) 20:19
constantly(1) 36:17
constituencies(1) 100:3
constituents(1) 246:10
constitute(3) 192:18 192:25 193:13
constrained(1) 113:1
constraints(2) 27:18 32:8
constrict(1) 274:24
construct(1) 290:18
constructing(1) 262:8
construction(2) 284:6 285:13
consult(1) 58:17
consultants(1) 78:18
consume(1) 83:23
consumed(2) 11:11 21:3
consumer(2) 253:14 279:5
consummate(1) 189:22
consummates(2) 189:12 192:6
consummation(1) 189:10
contemplated(2) 187:9 236:23
contend(3) 261:17 273:14 279:24
contended(2) 25:12 286:12

| Word | Page:Line |
|------|-----------|
| contending(1) 111:17 | |
| content(3) 60:5 226:9 255:17 | |
| contention(1) 111:21 | |
| contest(1) 278:10 | |
| contested(2) 92:11 92:14 | |
| contesting(1) 280:8 | |
| context(22) 13:7 63:21 91:5 182:12 213:4 222:7 226:23 228:7 240:6 258:5 261:7 261:13 262:21 263:1 263:25 266:1 267:21 270:12 276:22 279:5 279:9 299:21 | |
| contexts(2) 228:7 266:11 | |
| continental(2) 190:20 191:4 | |
| contingencies(1) 174:12 | |
| contingent(2) 147:6 215:12 | |
| continuance(2) 30:3 36:13 | |
| continuation(6) 21:15 41:12 42:3 71:13 74:5 182:16 | |
| continue(14) 35:17 36:5 39:1 75:8 100:16 101:16 108:1 115:10 137:8 160:2 226:17 235:23 238:22 303:20 | |
| continued(6) 2:2 34:20 38:25 70:12 138:17 144:3 | |
| continuing(2) 44:22 81:1 | |
| contract(4) 100:23 244:4 244:4 244:7 | |
| contracts(1) 267:23 | |
| contractual(4) 271:8 292:17 295:3 295:5 | |
| contrarian(2) 9:1 9:2 | |
| contrary(6) 189:11 195:21 229:11 251:4 290:13 301:21 | |
| contrasted(1) 289:15 | |
| contributions(1) 227:10 | |
| contributors(1) 31:24 | |
| control(4) 42:7 202:21 216:8 248:19 | |
| controlling(24) 15:21 202:24 257:15 260:25 261:5 263:22 265:11 267:8 268:24 269:18 270:7 270:13 270:14 279:24 281:15 281:17 281:21 285:15 286:2 286:16 286:19 289:4 297:10 297:10 | |
| convenient(1) 85:19 | |
| conveniently(1) 189:9 | |
| conventionally(1) 152:4 | |
| converging(1) 161:7 | |
| conversation(1) 31:24 | |
| conversation/dialogue(1) 291:14 | |
| conversations(1) 10:13 | |
| convert(1) 58:10 | |
| converting(1) 58:24 | |
| convince(2) 180:23 278:21 | |
| convinced(1) 226:6 | |
| cooperative(1) 26:11 | |
| coordinate(1) 88:1 | |
| coordinated(2) 100:2 304:16 | |
| copy(4) 39:3 48:18 49:1 302:1 | |
| corp(8) 58:4 58:10 58:13 58:21 58:22 58:24 207:6 207:6 | |
| corporate(3) 88:23 100:24 111:19 | |
| corporation(5) 8:7 8:8 132:15 244:15 | |
| correct(136) 13:22 24:9 25:1 26:17 32:11 35:22 38:6 45:12 48:20 49:5 51:5 51:10 51:18 51:25 52:3 52:6 52:12 53:20 54:7 54:10 54:11 54:13 54:14 54:16 54:17 54:25 55:14 55:24 56:2 56:5 56:8 56:11 56:14 56:15 56:18 56:21 56:25 57:4 57:11 57:12 57:24 58:2 58:5 58:10 59:1 59:4 59:6 59:14 59:18 59:21 60:2 60:7 60:10 60:13 60:18 60:19 60:21 60:22 60:24 61:4 61:8 61:12 61:17 61:21 61:24 62:2 62:7 62:9 62:11 62:13 62:21 63:11 63:24 67:19 67:20 67:22 67:23 69:10 69:14 69:19 70:7 71:23 72:11 72:14 72:15 72:18 72:21 72:24 73:19 73:20 73:22 73:25 74:1 74:3 75:6 75:7 75:16 76:4 76:5 76:8 80:17 81:5 81:17 81:18 83:21 97:1 102:16 103:6 104:25 106:10 106:14 109:20 109:21 139:4 148:4 150:12 159:13 161:16 168:7 170:11 170:15 175:4 183:22 188:10 190:4 202:19 212:10 249:20 260:5 264:9 267:9 282:1 289:22 291:13 301:8 308:9 | |
| corrected(2) 13:19 163:18 | |
| correctly(4) 24:8 232:10 259:25 305:25 | |
| correctness(1) 190:9 | |
| correlate(1) 246:22 | |
| correlates(2) 128:7 246:14 | |
| correlation(1) 129:1 | |
| corroon(1) 3:1 | |
| cost(17) 59:25 99:13 102:3 102:8 102:9 102:12 103:1 108:6 120:2 140:2 141:6 141:24 144:14 185:17 186:3 186:3 186:4 | |
| cost-reduction(1) 26:8 | |
| cost-saving(1) 27:8 | |
| costs(49) 34:24 35:2 35:13 77:9 81:15 95:8 95:12 95:18 95:18 96:15 98:1 98:7 99:17 99:20 101:12 101:18 101:21 102:5 102:15 102:24 103:3 107:20 107:25 110:5 115:7 125:17 143:1 143:12 144:6 144:7 144:13 144:21 144:23 144:24 144:25 145:14 145:15 145:19 146:7 147:20 174:3 207:20 207:21 207:21 208:12 212:16 233:14 236:3 248:15 | |
| couched(1) 305:22 | |
| could(167) 1:12 20:5 20:8 20:14 22:19 23:5 23:24 25:22 25:25 26:4 26:13 27:9 27:21 28:15 31:16 31:21 32:14 32:20 36:8 36:18 36:21 38:23 39:6 39:17 40:22 46:17 47:21 53:10 53:23 53:24 54:20 57:23 58:19 58:20 61:13 63:4 65:7 65:9 65:12 65:13 68:25 69:3 71:20 72:1 78:14 84:15 85:8 88:5 88:20 89:17 90:16 90:21 93:4 93:8 94:17 94:18 96:1 98:15 99:1 99:19 101:4 102:15 102:17 102:17 103:15 105:16 106:2 107:1 107:9 107:18 111:5 111:6 111:20 115:5 115:9 116:14 116:21 116:23 117:5 117:12 118:16 119:3 121:12 124:8 124:21 125:5 125:20 126:2 126:6 129:11 129:25 130:9 130:11 138:15 140:5 140:15 140:17 140:24 145:25 147:16 147:23 148:20 149:8 149:14 149:15 157:3 158:17 159:11 160:9 162:2 163:1 166:23 166:24 166:25 167:4 170:9 170:12 174:12 174:23 176:4 178:23 178:25 185:5 186:10 191:12 192:5 192:25 197:5 197:12 197:16 198:4 198:18 200:22 205:3 208:5 208:20 212:21 215:3 215:12 215:16 216:22 219:23 219:25 220:24 235:16 237:1 238:8 238:10 239:1 240:12 240:13 244:24 246:2 255:22 275:4 275:10 285:23 286:11 290:18 290:19 295:8 295:21 301:18 305:1 305:3 305:11 307:4 | |
| couldn't(5) 58:15 69:24 167:1 198:20 | |
| counsel(16) 14:5 37:18 42:13 42:22 42:22 43:20 44:18 70:25 86:15 103:11 134:20 134:21 204:17 241:22 279:22 306:12 | |
| count(1) 214:16 | |
| counter(9) 241:10 303:10 303:14 303:16 303:19 303:22 303:23 304:23 305:4 | |
| counter-parties(1) 21:23 | |
| counter-party(1) 244:4 | |
| counting(1) 35:6 | |
| countless(1) 36:3 | |
| country(1) 228:5 | |
| couple(2) 10:11 10:12 74:17 78:18 83:17 89:19 118:16 122:7 169:11 173:12 176:14 183:18 205:10 222:12 285:17 285:18 290:9 291:12 291:14 293:2 299:15 | |
| coupon(2) 157:7 157:9 | |
| course(31) 30:18 37:8 38:17 38:19 63:16 99:3 99:5 100:5 128:23 138:25 145:23 146:1 146:21 183:2 190:3 191:2 198:6 212:4 223:18 224:14 225:16 230:3 254:7 275:16 276:4 278:17 288:23 289:20 293:1 295:7 302:23 | |
| court(301) 1:1 10:3 10:7 11:5 11:9 12:2 12:18 12:25 13:22 13:24 15:6 15:18 16:4 16:5 16:6 16:7 16:10 16:11 16:25 17:4 17:8 17:12 17:14 18:20 19:9 19:24 20:5 20:14 21:16 24:7 24:10 24:16 25:3 26:4 28:12 29:11 29:21 31:21 32:14 32:17 32:19 37:18 37:23 38:2 39:14 40:18 41:5 43:4 43:14 43:17 43:24 44:14 45:9 45:22 46:8 46:21 46:22 47:13 47:16 47:22 48:10 48:16 49:14 49:17 49:21 49:23 50:13 50:16 50:19 50:19 50:22 52:19 57:14 61:25 63:1 63:6 64:16 64:19 64:22 64:25 65:3 65:21 66:10 66:12 66:15 67:4 68:20 71:5 74:9 74:14 74:18 75:13 76:25 77:3 80:4 80:24 81:21 82:1 82:5 82:9 82:24 83:2 83:5 83:7 83:14 83:22 84:3 84:13 84:17 84:23 85:3 85:14 85:19 86:2 86:4 86:5 86:10 86:15 87:5 87:5 87:9 87:16 89:13 89:22 89:24 90:4 90:5 91:18 92:5 92:10 92:13 92:15 92:18 92:21 93:1 93:3 94:25 95:23 98:15 99:6 99:9 99:10 99:12 99:24 100:7 100:13 103:14 103:24 104:3 104:5 104:23 105:12 105:13 110:3 112:9 112:13 112:16 113:24 114:3 115:1 121:19 122:5 124:15 124:17 126:17 127:6 127:10 128:20 129:2 129:15 129:16 131:24 134:6 134:10 136:11 145:9 148:23 151:11 151:12 151:23 151:24 152:7 152:11 162:6 162:8 162:13 162:10 163:14 163:16 163:19 163:23 163:25 164:3 164:5 165:11 165:22 165:22 166:16 167:8 167:13 168:9 168:16 170:5 170:16 171:10 171:13 171:16 171:20 171:22 172:12 172:24 174:23 175:21 175:25 176:6 176:11 176:13 176:16 176:19 179:6 179:8 179:13 179:17 179:23 180:1 180:15 180:16 180:22 180:24 180:24 181:9 182:1 182:25 183:8 183:11 183:21 183:23 184:5 184:9 184:25 187:12 187:13 187:21 188:8 190:9 190:9 190:16 191:1 191:12 191:21 192:3 192:9 192:9 192:20 192:20 193:5 193:9 194:7 194:24 195:7 195:9 196:9 196:12 196:25 196:25 197:1 197:5 197:1 197:5 197:7 197:12 197:22 198:4 198:7 198:18 198:21 198:23 199:2 199:9 199:14 199:24 200:4 200:24 201:9 201:11 201:22 202:4 202:17 203:21 204:18 204:22 204:22 204:24 205:9 205:20 205:24 206:5 209:20 210:23 211:4 211:9 | |
| court(216) 213:10 217:12 217:14 217:15 217:24 218:10 218:15 218:22 218:25 219:4 219:21 220:4 220:19 221:2 221:8 222:8 223:9 224:3 224:10 224:21 225:2 226:2 227:2 227:21 227:23 228:9 230:16 233:1 234:11 234:19 234:20 234:20 234:22 235:2 235:3 235:6 240:15 240:15 241:16 243:16 243:20 246:11 246:25 250:8 251:20 252:2 252:5 252:7 252:8 252:9 252:16 252:16 252:21 252:24 253:1 254:11 255:4 255:15 255:21 255:24 256:4 256:10 256:14 256:16 256:22 256:24 256:25 257:16 257:18 257:23 257:24 257:25 258:2 258:4 258:8 258:10 258:11 258:14 258:16 259:3 259:8 259:14 259:19 259:22 260:8 260:14 261:1 261:4 261:8 261:17 261:17 262:7 262:15 262:16 262:23 263:6 264:21 265:2 265:5 265:14 265:20 266:12 266:20 266:22 266:22 267:4 267:9 267:16 268:23 269:16 270:16 270:17 272:1 272:7 272:8 272:10 272:18 272:19 272:20 273:15 274:2 274:6 274:9 274:13 275:2 275:10 275:11 275:14 275:17 275:24 276:10 276:13 276:15 277:5 277:10 277:24 278:3 278:9 278:19 278:20 278:24 278:25 281:6 281:20 281:23 282:9 283:1 283:4 283:12 283:18 283:22 283:24 285:11 285:18 285:22 287:2 287:4 287:17 287:25 289:20 290:1 290:3 291:10 293:23 294:11 294:25 295:12 295:18 295:23 296:1 296:6 296:8 296:20 296:23 296:24 296:24 296:25 297:1 297:9 297:12 297:19 298:23 299:1 299:10 299:17 299:19 300:20 301:1 301:22 302:12 302:16 302:19 303:3 304:3 304:18 304:20 304:25 305:6 305:7 305:7 305:15 305:20 306:11 306:17 306:21 307:3 307:6 307:12 307:14 307:17 307:22 308:1 308:3 308:4 308:5 | |
| courtroom(5) 1:11 209:8 224:4 224:4 284:17 | |
| courts(21) 16:2 104:1 104:20 168:7 180:25 181:1 191:14 218:12 220:25 221:5 234:24 246:18 261:19 266:7 267:20 283:19 286:6 290:7 294:22 295:13 299:14 | |
| court's(14) 90:6 128:8 179:25 181:3 183:3 201:12 230:8 261:18 272:5 275:2 275:3 276:9 287:25 299:7 | |
| cout(1) 306:7 | |
| cover(3) 130:3 223:8 233:13 | |
| coverage(3) 26:21 233:9 237:22 | |
| covered(6) 98:20 139:21 229:18 229:23 273:21 284:11 | |
| covering(2) 233:14 237:5 | |
| cram(2) 266:12 266:18 | |
| cram-down(12) 261:13 261:21 262:14 263:13 266:1 267:21 292:4 299:22 300:4 301:1 301:14 301:17 | |
| cram-down's(1) 263:15 | |
| crammed(1) 189:4 189:7 | |
| create(4) 18:10 236:2 236:6 301:19 | |
| created(3) 104:19 127:23 181:10 | |
| creates(2) 225:25 226:1 | |
| creating(3) 226:23 242:6 295:12 | |
| credibility(2) 21:20 34:7 | |
| credibly(1) 227:4 | |
| credit(7) 2:4 6:8 6:9 7:41 209:3 240:17 266:5 | |
| creditor(16) 89:9 100:3 100:15 108:8 131:22 154:10 188:16 188:17 189:9 197:20 198:2 230:11 242:8 244:16 292:3 292:5 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**creditors**(66) 5:2 81:4 89:2 108:3 108:23 110:6 111:2 111:22 113:4 113:15 114:9 114:13 114:22 117:1 118:4 118:8 118:8 121:9 121:18 125:5 125:13 126:3 129:22 132:19 147:16 147:23 148:6 148:9 149:2 149:16 156:9 156:12 157:2 157:4 157:8 158:17 159:7 170:15 174:17 175:5 178:2 184:16 186:15 188:2 194:6 195:25 196:3 196:6 197:8 202:23 210:13 215:12 243:24 245:2 245:10 245:23 246:9 246:13 246:14 247:16 247:24 250:9 266:18 292:11 292:18 294:4

**creditors'**(12) 75:23 85:5 97:21 207:24 208:8 222:11 240:19 241:19 244:1 246:19 278:7 291:17

**credits**(1) 215:8
**creeping**(1) 170:1
**crescendo**(1) 30:5
**crises**(1) 174:18
**crisis**(1) 239:7
**critical**(2) 279:24 283:10
**criticism**(2) 199:18 223:19
**criticizing**(1) 303:18
**cross**(16) 14:6 47:16 49:17 50:2 74:9 74:24 76:25 83:12 83:17 86:12 134:11 162:22 244:2 244:3 254:24 309:2

**cross-examination**(1) 134:10
**crux**(1) 280:18
**cry**(1) 201:5
**crystal**(1) 257:9
**cubs**(7) 30:18 30:24 60:10 60:14 60:21 79:10 79:13

**cumulative**(1) 226:19
**curiosity**(1) 299:11
**current**(11) 17:20 37:10 42:5 42:24 58:22 64:8 68:5 119:5 226:16 236:19 245:21

**currently**(7) 17:18 87:20 108:22 110:14 110:16 156:7 272:21

**curve**(1) 306:9
**cushion**(1) 233:18
**custom**(3) 99:25 147:4 207:25
**customers**(4) 20:21 22:15 23:19 253:21
**customers."**(1) 23:11
**cut**(5) 200:21 209:16 233:16 294:13 303:24
**cutting**(1) 298:5
**c's**(1) 153:7
**d)(3)**(1) 262:21
**daily**(2) 31:9 35:8
**damage**(6) 110:14 110:25 114:1 186:18 199:10 210:1

**damaged**(1) 93:23
**damages**(8) 111:3 111:5 111:6 121:1 121:5 121:12 121:20 173:25

**dan**(1) 4:46
**danced**(1) 249:2
**daniel**(2) 4:15 5:23
**dared**(1) 28:3
**data**(7) 1:42 66:9 160:20 160:21 161:10 161:23 169:12

**date**(17) 29:16 35:2 39:18 45:2 70:23 70:24 110:18 157:10 194:16 200:9 208:15 234:5 234:5 234:6 234:7 303:22 308:16

**dated**(3) 53:14 57:17 64:25
**date's**(1) 234:7
**dave**(1) 4:35

**david**(29) 3:17 3:32 3:40 3:46 4:16 6:37 8:21 12:5 75:2 84:5 84:19 85:4 87:11 87:13 94:4 162:20 179:19 198:9 238:25 241:18 249:25 253:4 256:5 275:21 276:12 277:6 278:6 307:9 309:7

**davidson**(1) 6:17
**davis**(2) 2:20 6:13
**day**(28) 2:5 10:23 12:1 10:25 35:9 111:7 113:24 129:5 141:1 148:6 148:14 148:15 160:5 160:6 160:8 160:13 189:12 196:3 197:1 199:8 220:18 226:16 228:10 230:16 234:8 275:8 305:2 307:21

**day-by-day**(1) 29:3
**day-to-day**(1) 69:23
**days**(19) 46:12 160:13 161:3 166:17 166:18 166:19 183:19 186:12 194:3 194:20 197:2 217:3 217:8 217:9 273:10 303:24 303:24 303:24 304:5

**dbtca**(1) 3:38
**dcl**(30) 18:17 36:15 47:14 72:16 73:12 103:16 180:10 181:21 182:4 184:24 186:9 189:21 192:19 193:24 194:10 194:15 195:10 196:13 211:12 249:15 259:20 263:25 264:22 271:23 273:1 273:6 292:10 305:3 305:17 305:21

**dcls**(2) 48:3 84:23
**deal**(17) 30:18 30:24 36:25 41:22 59:23 77:25 99:10 120:10 214:25 216:12 224:22 279:3 284:16 291:18 295:22 297:3 301:12

**dealing**(17) 58:20 156:22 208:17 221:17 226:15 244:6 244:12 258:6 258:7 262:2 262:17 266:1 266:10 266:13 293:24 293:25 295:14

**dealings**(1) 258:5
**deals**(10) 27:11 30:21 31:4 78:3 78:4 78:5 153:1 226:9 250:25 284:17

**dealt**(3) 45:11 201:1 293:7
**dearborn**(1) 1:30
**death**(1) 186:16
**debate**(2) 160:9 258:13
**debenture**(19) 2:35 8:1 12:6 33:18 49:19 91:23 134:14 198:10 211:5 228:19 228:20 238:3 238:23 253:4 256:7 270:24 275:22 303:11 303:16

**debenture's**(2) 276:16 304:3
**deborah**(1) 4:17
**debt**(55) 38:16 115:13 115:14 115:17 116:18 125:5 125:8 125:9 125:14 125:14 125:17 125:18 125:24 126:2 126:9 126:14 126:16 126:25 127:25 129:8 130:20 156:23 157:5 158:11 159:19 159:12 159:21 161:6 168:10 169:5 171:9 173:16 173:21 175:14 177:8 177:16 178:18 178:25 182:23 184:8 184:11 188:2 188:5 188:12 206:23 215:3 215:3 233:21 261:8 266:2 268:6 268:7 291:18 291:18

**debtor**(23) 4:24 85:12 86:14 89:4 185:20 186:6 189:23 190:2 190:11 193:15 194:5 197:5 197:12 212:18 213:6 224:22 225:12 244:7 244:12 247:2 249:15 250:6 297:21

**debtors**(18) 1:13 1:23 10:6 10:16 43:5 43:19 57:17 86:7 87:11 89:1 89:20 147:21 166:14 166:21 191:7 197:7 197:24 202:24

**debtors'**(5) 17:9 80:25 87:13 162:18
**debts**(1) 177:24
**december**(4) 59:10 60:17 60:20 79:13
**decide**(10) 114:3 120:24 142:5 187:13 192:3 211:23 228:16 268:4 296:18 306:14

**decided**(10) 78:7 123:20 123:20 192:6 199:20 220:6 235:1 238:23 265:13 295:2

**decides**(1) 274:19
**deciding**(3) 44:22 212:1 275:11
**decision**(46) 86:25 90:6 97:1 104:3 166:17 190:14 190:21 190:22 190:22 191:13 194:16 195:4 195:4 204:24 215:6 218:5 230:14 237:10 237:11 246:20 251:22 257:15 259:12 261:6 261:9 261:18 262:1 262:24 264:12 264:20 266:5 266:6 279:1 280:23 281:8 282:19 286:24 287:16 290:5 295:9 299:7 299:10 300:10 301:23 301:24 306:1

**decisional**(8) 262:13 263:2 263:23 264:19 264:22 270:14 289:21 290:14

**decisions**(10) 13:23 15:12 15:22 100:4 100:11 113:16 192:9 276:25 279:18 283:1

**declaration**(43) 17:3 18:12 18:16 19:1 43:20 47:24 48:2 48:6 48:18 49:3 72:2 72:12 86:8 86:9 86:11 90:4 94:4 94:14 105:22 105:23 110:19 121:22 121:22 122:1 123:20 126:7 126:10 126:10 132:2 132:13 133:19 134:18 140:4 141:16 156:14 176:2 176:4 176:8 176:9 206:8 214:23 309:17 309:30

**declarations**(1) 90:3
**decline**(3) 126:25 140:13 140:15
**declines**(1) 40:5
**declining**(2) 141:18 142:2
**decrease**(1) 126:13
**deduct**(3) 144:14 145:1 208:12
**deed**(2) 239:12 277:10
**deep**(1) 217:6
**default**(1) 153:13
**defeat**(2) 254:14 254:16
**defend**(3) 76:11 76:14 102:7
**defendant's**(1) 6:41
**defending**(2) 102:6 102:11
**defensible**(1) 235:3
**defensive**(1) 26:6
**deferential**(1) 220:20
**deficient**(1) 79:8
**define**(3) 62:23 153:20 301:16
**defined**(3) 52:13 145:15 244:17
**definite**(1) 299:3
**definition**(6) 113:8 246:3 248:22 280:21 280:23 294:18

**degree**(1) 295:7
**delaware**(14) 1:2 1:13 1:36 10:1 196:12 196:21 196:23 218:12 220:25 222:19 222:19 222:20 233:15 251:22

**delay**(18) 35:25 36:1 147:16 155:14 156:24 195:11 195:16 206:18 206:20 206:22 206:23 207:15 209:2 209:3 209:7 216:25 237:1 305:11

**delayed**(8) 33:15 108:17 115:7 116:9 155:2 157:10 195:10 197:25

**delaying**(1) 186:15
**delays**(1) 215:10
**delight**(1) 246:11
**delphi**(4) 215:7 215:7 236:15 236:15
**delve**(1) 180:1
**delving**(1) 190:5
**demanding**(1) 253:22
**demands**(2) 197:9 253:24
**demonstrate**(2) 214:11 231:19
**demonstrated**(4) 212:2 241:1 241:2 297:17
**demonstrates**(1) 251:21
**demonstrating**(1) 14:3
**denial**(1) 185:23

**denied**(7) 46:22 108:7 118:4 137:12 222:3 250:17 305:17

**deny**(4) 249:21 249:22 250:11 299:1
**denying**(3) 129:5 184:18 191:7
**department**(2) 33:9 226:6
**dependent**(1) 40:12
**depending**(3) 87:1 189:20 190:9
**depends**(1) 226:5
**depicted**(1) 25:5
**deposed**(1) 63:10
**deposition**(17) 24:14 27:21 30:17 33:18 37:6 39:3 54:22 63:3 66:2 78:15 83:13 111:10 131:12 151:18 154:1 160:1 160:23

**deprive**(3) 227:14 242:2 274:24
**deprived**(4) 30:20 113:15 113:18 113:23
**derided**(1) 181:21
**derive**(2) 123:7 165:24
**derived**(2) 95:24 135:18
**derr**(1) 8:21
**descending**(1) 245:17
**describe**(6) 27:9 88:20 93:4 93:24 123:4 257:11

**described**(4) 121:3 239:17 249:10 276:1
**describes**(1) 224:18
**describing**(1) 25:4
**description**(1) 135:20
**descriptions**(1) 165:17
**design**(3) 182:2 182:7 191:9
**designate**(7) 303:14 303:16 303:23 304:4 304:5 304:6 304:6

**designated**(1) 303:19
**designations**(9) 303:10 303:13 303:22 303:23 304:23 304:23 305:1 305:4 305:19

**designed**(10) 44:1 100:7 104:20 116:24 116:24 118:11 123:1 178:10 191:1 232:2

**designees**(1) 222:18
**desirable**(1) 16:1
**desktop**(1) 78:23
**desperate**(1) 255:12
**desperately**(1) 33:15
**desperation**(1) 225:22
**detail**(3) 25:23 89:17 214:21
**details**(1) 25:4
**determination**(8) 93:20 234:25 259:4 259:20 260:3 264:5 266:14 270:6

**determinations**(1) 291:1
**determine**(5) 13:6 93:21 183:23 193:6
**determines**(1) 305:15
**determining**(8) 13:9 93:1 110:5 205:1 219:12 259:20 265:25 272:1

**detriment**(2) 36:5 132:24
**detrimental**(1) 271:4
**deutsch**(1) 5:3
**deutsche**(7) 198:11 228:18 228:19 240:13 253:5 256:7 275:23

**devastating**(1) 30:9
**develop**(2) 121:6 121:14
**developed**(2) 100:1 147:5
**developments**(1) 128:14
**deviate**(1) 292:17
**device**(1) 213:9
**dewey**(1) 6:21
**dial-in**(1) 36:2
**dialogue**(1) 283:9
**diamond**(1) 6:18
**diaz**(1) 1:42

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| | | | | | | | |

**did**(83) 14:9  30:24  36:10  48:23  49:3  49:4  58:12  60:21  67:12  72:15  78:4  79:16  83:13  86:6  92:17  96:3  96:3  96:5  96:18  105:19  109:6  109:22  110:8  111:4  111:5  115:6  115:22  116:3  116:11  116:20  117:8  124:4  124:25  131:10  134:25  137:13  137:20  137:22  138:1  143:7  143:12  143:17  143:22  143:25  144:10  144:13  145:9  149:1  150:7  150:10  154:18  155:10  157:13  157:25  158:2  158:22  158:23  160:24  169:13  169:16  170:20  173:9  181:19  188:4  193:3  206:7  211:17  216:24  234:4  238:5  247:4  254:24  255:10  267:16  270:11  272:12  276:22  280:4  280:7  282:8  284:20  284:21  306:6

**didn't**(39) 16:1  28:1  53:21  136:21  149:11  149:19  157:6  157:13  173:10  173:10  173:12  173:23  174:5  181:3  182:3  186:19  195:19  203:25  204:2  204:3  208:11  209:13  214:6  215:2  224:5  230:23  235:11  250:21  251:14  254:22  254:23  254:23  264:3  279:20  279:21  286:10  298:1  302:3  303:14

**diet**(1) 240:11

**difference**(22) 119:4  147:21  150:20  150:24  151:2  159:20  161:2  161:22  193:1  194:8  215:19  216:14  219:8  224:21  248:15  254:6  265:18  265:22  265:24  265:25  278:17  305:11

**different**(52) 10:11  11:13  16:2  71:15  88:16  95:3  106:5  110:10  111:22  111:22  122:9  122:18  125:11  125:12  125:20  125:21  130:10  139:25  150:21  154:8  160:3  160:11  161:8  172:14  174:21  177:10  178:11  178:21  186:10  191:19  203:17  205:10  212:4  213:20  218:5  219:19  224:23  232:6  232:7  233:16  251:1  262:4  267:2  270:12  274:16  278:15  278:16  281:1  282:13  284:10  290:19  300:15

**differential**(7) 118:25  158:5  158:15  173:18  177:1  179:3  203:8

**differentiate**(1) 31:10

**differently**(2) 277:19  301:2

**difficult**(18) 26:9  32:1  34:4  34:12  34:13  40:8  40:8  56:22  63:25  93:13  130:14  180:18  182:12  201:1  247:6  250:10  283:22  283:23

**difficulties**(2) 31:18  68:14

**difficulty**(2) 77:17  197:6

**dig**(3) 227:6  242:22  243:3

**digital**(3) 32:5  59:23  59:24

**digression**(1) 237:7

**dime**(1) 292:3

**diminished**(1) 247:14

**diminution**(1) 29:3

**dip**(2) 129:7  185:8

**direct**(27) 10:13  17:16  45:12  48:3  48:13  48:15  60:9  75:19  79:5  83:10  83:17  86:8  87:18  134:23  135:1  138:10  143:24  255:1  261:5  263:10  278:23  279:3  279:8  291:5  298:4  309:2

**directed**(2) 163:10  164:10

**direction**(3) 20:7  228:22  229:4

**directly**(9) 44:10  99:22  100:6  142:14  143:20  156:20  200:19  262:9  295:10

**directors**(5) 5:13  24:1  39:7  39:21  216:9

**dirty**(3) 180:8  180:9  219:8

**disagree**(9) 25:17  25:18  44:4  63:19  201:12  235:4  302:23  305:15  306:5

**disagreement**(2) 268:1  268:2

**disagrees**(1) 15:19

**disappearing**(1) 238:17

**disappointed**(1) 265:5

**disaster**(1) 196:2

**disasters**(1) 114:2

**discern**(1) 284:13

**disclosure**(5) 28:8  52:21  80:1  82:14  309:23

**disconnect**(1) 113:16

**discount**(11) 159:20  160:5  160:24  161:21  161:24  161:25  169:18  169:22  177:3  177:19  206:17

**discounted**(2) 110:1  205:8

**discovery**(1) 76:3

**discretion**(9) 46:15  183:4  195:21  197:14  240:11  250:15  251:18  269:9  269:19

**discriminate**(3) 292:23  292:24  292:25

**discrimination**(19) 210:10  259:11  259:15  260:7  261:2  261:6  261:13  261:20  262:14  263:12  263:24  265:25  270:14  270:25  275:23  295:8  299:21  299:23  300:13

**discriminatory**(1) 259:21

**discuss**(2) 155:2  182:15

**discussed**(7) 16:20  56:16  80:21  80:23  136:7  180:2  261:5

**discussing**(2) 57:7  211:21

**discussion**(11) 14:8  15:2  32:13  157:3  171:25  190:10  223:6  261:15  261:18  277:18  294:20

**discussions**(4) 103:10  157:8  204:17  204:18

**disjunctive**(3) 260:17  260:19  278:10

**dismiss**(1) 273:7

**dispose**(1) 14:1

**disposition**(7) 105:12  164:17  164:24  165:5  165:7  165:10  167:18

**dispositive**(3) 276:1  281:5  286:7

**dispute**(1) 22:11

**disputed**(1) 250:4

**disputes**(2) 259:12  272:15

**disputing**(2) 76:7  304:12

**disregards**(1) 240:2

**disrespect**(1) 203:14

**dissent**(3) 191:4  292:4  292:4

**dissolved**(1) 101:9

**distant**(1) 153:15

**distefano**(1) 5:7

**distinct**(2) 182:5  183:13

**distinction**(3) 221:13  221:20  252:11

**distinctly**(1) 289:15

**distinguishable**(1) 185:11

**distress**(1) 233:20

**distributable**(15) 52:11  53:15  54:3  54:4  81:1  81:2  108:17  108:20  109:15  110:22  147:17  207:14  209:2  209:3  209:7

**distribute**(1) 234:9

**distributed**(8) 108:3  108:8  108:23  114:24  115:23  118:14  156:9  174:15

**distribution**(7) 27:11  111:24  148:6  155:13  184:12  259:23  292:14

**distributions**(11) 115:19  115:23  186:15  194:6  200:11  210:14  210:15  245:5  250:9  259:22  264:7

**district**(59) 1:2  15:5  16:7  89:22  90:5  165:11  165:22  166:16  180:15  183:8  190:9  192:9  192:10  192:20  192:21  196:12  196:18  197:1  197:1  218:11  218:15  218:17  218:22  234:20  235:2  235:3  251:11  251:22  252:16  252:21  256:10  256:15  256:23  257:24  257:25  258:11  258:14  264:21  269:15  272:7  272:8  272:10  272:19  272:20  273:15  275:11  278:20  278:20  294:25  295:23  296:1  296:6  296:8  296:17  296:23  296:24  297:9  299:1  305:6

**districts**(1) 218:21

**dividends**(2) 156:2  156:11

**divisions**(1) 33:19

**dkt.no**(1) 1:7

**docketed**(1) 272:9

**doctrine**(4) 191:6  191:20  221:15  221:22

**document**(61) 18:16  20:6  22:20  23:2  23:25  24:5  24:13  24:21  25:12  39:6  39:12  39:17  39:19  48:24  49:12  50:6  50:8  50:2  50:17  50:25  51:10  53:1  53:3  53:5  56:4  57:21  57:24  59:4  65:16  65:17  65:20  65:22  65:25  66:3  66:8  81:16  94:11  94:13  94:14  94:21  95:1  95:2  98:15  98:17  103:15  104:11  104:18  104:19  105:24  106:2  107:2  107:4  107:9  124:9  127:13  127:22  127:24  152:14  152:22  154:2  168:2

**documentation**(2) 56:23  57:10

**documented**(1) 39:19

**documents**(6) 17:3  60:5  81:24  82:22  266:8  295:11

**dodgers**(2) 221:6  221:12

**dodgers'**(2) 221:7  221:16

**does**(65) 16:4  16:5  24:10  24:10  34:17  34:23  37:2  38:8  38:10  49:8  49:10  59:23  59:25  77:20  78:1  92:14  97:20  108:20  127:22  130:3  130:4  130:21  130:21  139:19  151:23  156:7  158:21  165:14  165:19  166:6  170:14  172:8  174:16  175:12  188:17  189:13  192:18  193:12  194:8  195:11  195:20  196:5  196:22  202:10  216:17  223:3  224:19  231:9  231:14  250:13  261:12  276:13  280:8  281:24  284:18  286:20  290:23  292:23  292:24  292:25  293:4  293:3  295:24  300:4  300:21

**doesn't**(55) 10:22  21:2  34:18  40:19  66:7  76:10  130:23  137:24  139:4  139:6  165:23  166:4  170:17  180:16  182:1  182:20  183:6  183:10  189:24  192:23  194:25  195:5  195:12  200:13  202:3  209:16  214:16  224:1  225:14  227:14  229:2  229:22  231:15  231:16  231:17  232:4  232:10  233:2  242:2  244:10  248:3  253:15  255:18  257:12  257:19  263:20  271:15  284:5  284:16  288:4  298:7  300:2  301:3  301:5  301:21

**doing**(31) 25:13  25:24  26:19  28:25  30:9  30:15  35:5  50:10  66:4  66:19  75:23  78:5  81:8  84:2  116:7  117:8  124:23  139:12  140:1  140:3  160:6  160:7  160:11  176:25  177:18  205:17  213:17  214:4  214:7  247:22  254:12

**dollar**(5) 73:15  73:18  197:20  215:13  236:8

**dollars**(9) 25:7  35:8  37:11  139:21  173:20  215:8  215:15  236:10  236:11

**domino**(2) 36:22  72:20

**don**(1) 4:39

**done**(53) 20:8  20:9  30:18  30:24  31:1  31:14  35:18  35:21  35:24  39:22  70:6  71:17  71:22  77:25  78:4  84:15  89:18  89:18  90:21  101:6  106:4  106:23  106:25  114:7  120:13  122:19  131:4  131:5  132:12  136:1  137:4  161:14  168:3  169:7  169:8  193:7  196:8  200:22  203:14  217:3  255:3  274:19  279:10  288:19  296:10  298:10  298:18  298:23  303:22  303:23  304:11  304:12  304:16

**don't**(164) 15:1  23:19  27:19  32:24  37:24  38:18  40:25  44:4  44:7  46:4  47:11  49:22  49:22  50:11  53:5  53:17  54:23  55:6  65:16  73:5  73:24  74:4  75:4  81:19  82:19  82:21  84:8  85:9  85:16  86:12  92:3  92:15  124:15  127:9  131:19  134:8  136:12  138:9  146:25  147:1  147:14  149:5  149:7  149:10  153:20  155:20  157:12  158:9  158:20  158:22  158:25  162:4  162:11  166:11  167:4  167:9  169:6  169:16  172:2  172:21  174:23  178:16  180:7  180:8  181:5  181:11  183:4  184:2  184:3  187:8  188:24  190:10  191:15  192:1  192:2  193:19  193:21  194:3  197:14  198:18  200:8  201:6  202:15  202:22  202:25  204:5  204:8  205:11  208:15  212:19  213:23  215:17  215:17  219:2  219:13  219:21  219:25  220:1  220:15  222:18  223:2  224:17  225:4  225:25  226:7  227:9  228:3  228:5  228:19  230:2  230:5  231:3  233:14  233:15  234:2  235:4  238:1  238:2  241:7  241:8  241:9  241:10  241:16  242:23  243:13  244:8  244:16  244:25  245:6  245:7  245:20  246:2  246:3  246:6  248:16  248:18  248:19  249:22  251:8  264:25  265:5  274:11  275:2  277:20  278:16  281:16  288:23  291:1  291:4  296:14  296:15  296:16  296:16  296:20  296:21  298:21  298:24  299:4  299:6  302:2  303:3  304:11  307:21  307:24

**door**(1) 232:16

**double**(2) 153:6  153:9

**doubled**(1) 249:3

**doubt**(6) 86:20  249:10  267:18  282:4  287:21  303:3

**dougherty**(1) 5:15

**douglas**(1) 5:3

**dow**(2) 7:46  7:47

**down**(45) 14:14  27:1  33:7  35:8  35:14  36:22  41:4  55:12  55:15  56:1  98:4  99:1  115:16  123:14  129:20  140:24  143:23  143:25  147:13  154:6  154:7  158:4  160:25  179:9  183:7  189:4  189:7  189:10  193:25  238:12  238:13  238:17  240:25  266:13  266:19  296:2  298:3  298:16  303:19

**downs**(1) 128:11

**downside**(5) 119:22  131:8  131:13  140:10  141:7

**downward**(2) 117:12  123:15

**drafted**(1) 273:25

**drafters**(2) 242:15  243:1

**drafter's**(1) 283:16

**drag**(1) 81:16

**dramatically**(1) 85:10

**dramatic**(2) 59:21  60:3

**draw**(4) 121:11  121:15  142:6  235:4

**drawing**(2) 177:13  177:21

**drew**(1) 2:29

**drift**(1) 223:7

**drill**(1) 143:17

**drip**(3) 29:2  29:2  29:2

**drip-by-drip**(1) 29:3

**driveway**(1) 237:18

**drop**(4) 231:4  231:5  231:9  296:10

**drugs**(1) 240:11

**ducayet**(1) 1:39

**due**(4) 58:20  58:22  67:9  69:8

**duly**(1) 288:13

**dunn**(1) 6:37

**duplicative**(1) 214:22

**duration**(11) 36:18  106:4  108:1  122:13  183:25  234:13  234:15  235:2  235:3  252:13  305:10

| Word | Page:Line |
| --- | --- |

**during**(44) 37:7 54:9 54:12 54:15 60:9 60:10 61:6 61:12 62:12 63:16 64:12 75:23 88:17 89:8 89:12 91:1 93:9 96:16 96:21 97:5 98:7 99:6 102:21 102:24 104:1 108:1 114:4 117:10 121:6 128:23 138:13 138:16 141:10 143:11 145:15 146:21 146:23 157:23 158:16 159:5 173:18 175:17 182:17 198:6

**dynamic**(2) 28:19 36:17

**d'agostino**(1) 8:17

**d's**(1) 153:6

**e-filed**(1) 307:7

**each**(16) 15:13 36:16 42:4 95:5 95:5 99:2 122:12 145:19 146:11 158:8 158:9 217:1 233:22 248:11 257:8 286:12

**eager**(1) 205:11

**earlier**(16) 39:19 52:5 54:18 56:16 60:9 69:12 112:18 136:7 181:17 190:19 206:8 240:22 244:23 274:4 303:8 307:19

**early**(7) 10:22 39:21 59:13 78:16 86:25 211:24 274:5

**earn**(5) 108:2 115:23 116:1 117:6 232:12

**earned**(5) 147:23 158:17 172:1 190:3 190:11

**earning**(4) 108:14 110:20 112:19 112:22

**earnings**(2) 116:3 188:23

**easier**(1) 77:18

**easiest**(1) 95:17

**easily**(1) 228:1

**eastern**(1) 22:14

**easy**(4) 235:5 235:7 237:1 237:3

**economic**(5) 67:9 69:8 186:1 199:10

**economy**(3) 40:15 69:10 209:10

**ecro**(1) 1:40

**eddy**(4) 16:23 17:9 18:16 309:3

**edgar**(1) 6:19

**effect**(23) 36:22 55:4 55:13 55:22 61:11 72:21 93:15 112:8 114:11 116:18 116:25 120:2 123:13 127:3 171:1 192:1 242:2 242:6 262:18 262:19 264:7 264:10 271:4

**effective**(12) 14:16 111:24 178:17 179:1 194:16 200:9 208:15 214:14 214:18 219:22 221:23 305:24

**effectively**(2) 227:14 239:14

**effectiveness**(1) 208:17

**effects**(1) 42:4

**efficiency**(1) 294:11

**efficient**(5) 13:5 15:9 27:10 276:4 304:13

**effort**(4) 88:2 218:6 231:23 239:23

**efforts**(1) 145:1

**egg**(4) 14:15 191:25 221:2 305:14

**eggs**(2) 210:9 210:9

**egi**(5) 276:12 294:1 295:6 297:4 304:5

**egi-trb**(4) 5:31 84:20 276:17 292:9

**ehmer**(1) 8:26

**eight**(1) 18:1

**either**(20) 14:8 21:22 50:14 87:1 98:19 111:18 116:14 117:2 117:14 118:17 168:20 168:20 168:21 197:16 203:2 228:10 240:3 240:3 249:21 277:14

**elaborate**(1) 90:16

**elaborates**(1) 48:7

**elden**(1) 5:14

**eldersveld**(1) 4:35

**elected**(1) 184:16

**election**(1) 40:18

**electronic**(2) 1:48 308:10

**element**(1) 280:9

**elements**(2) 93:7 189:3

**eli**(1) 2:23

**elicited**(1) 46:2

**eliminated**(2) 98:19 98:23

**elongated**(1) 126:24

**else**(11) 138:7 140:17 189:14 189:20 205:15 236:24 243:8 262:15 285:19 294:4 306:18

**email**(2) 307:7 307:8

**emails**(2) 22:11 307:5

**emanates**(2) 4:52

**embedded**(4) 19:7 110:1 116:19 237:19

**emblematic**(3) 221:8 225:11 255:15

**emerge**(15) 27:3 35:22 42:16 47:7 70:17 74:4 77:8 95:14 98:20 98:24 99:14 100:20 102:8 126:15 132:16

**emerged**(4) 100:16 125:11 175:16 280:6

**emergence**(14) 28:14 30:6 34:16 35:25 47:5 58:24 89:14 91:17 98:5 100:18 101:21 102:13 108:24 116:15

**emergency**(2) 274:1 275:7

**emerges**(6) 35:11 58:9 70:6 70:14 142:2 279:6

**emerging**(2) 125:16 161:4

**emphasis**(2) 219:19 293:13

**emphasize**(1) 139:23

**empirical**(5) 54:23 55:1 279:1

**employed**(2) 17:18 87:20

**employee**(4) 34:3 34:5 34:14 62:22

**employee-base**(1) 31:23

**employees**(10) 6:40 42:5 61:16 62:12 62:19 63:15 63:22 63:24 68:11 78:11

**empty**(1) 229:7

**enable**(1) 245:2

**enacted**(2) 288:2 288:14

**enacting**(1) 287:6

**encompassed**(1) 95:10

**end**(14) 51:2 113:24 121:3 125:1 140:3 145:7 196:3 196:11 220:18 226:12 269:21 269:22 275:8 278:14

**ended**(2) 96:25 228:12

**ending**(2) 105:3 269:23

**ends**(1) 125:9

**enemy**(2) 28:17 36:14

**enforced**(1) 266:16

**enforcement**(1) 213:11

**engage**(2) 99:5 100:10

**engaged**(3) 100:22 100:25 116:17

**english**(1) 3:38

**enhance**(3) 26:10 31:16 36:19

**enhancing**(2) 26:8 26:18

**enjoyed**(1) 188:16

**enjoys**(1) 272:21

**enormous**(1) 185:1

**enough**(14) 14:10 138:2 144:20 171:21 173:23 192:10 192:11 226:24 230:21 231:10 233:13 236:2 241:6 250:11

**enron**(2) 266:4 291:25

**ensure**(3) 138:24 201:23 201:24

**entails**(2) 27:9 32:15

**enter**(1) 27:16

**entered**(15) 48:6 52:15 125:13 128:8 128:9 129:15 195:3 219:9 223:3 234:6 234:8 243:25 245:24 250:23 305:2

**entering**(2) 60:14 254:11

**enterprise**(4) 67:24 68:22 122:25 309:26

**enterprises**(3) 77:14 82:17 222:16

**enterprise's**(1) 69:5

**enters**(1) 75:13

**entertain**(1) 171:10

**entertained**(1) 186:21

**entire**(6) 200:23 201:23 209:6 210:12 287:23 301:12

**entirely**(4) 113:14 178:22 195:15 242:2

**entirety**(1) 205:8

**entities**(5) 26:11 28:10 36:16 57:7 114:22 94:18 95:7 98:7 99:16 105:24 109:4 109:12 110:7 118:8 124:9 127:19 184:13 196:3 226:21 229:22 230:12 230:13 233:9 236:10 239:8 239:11 239:19 239:20 271:8 295:3

**entitlement**(2) 173:5 247:8

**entity**(6) 34:8 47:4 60:3 71:4 79:14 79:19

**environment**(3) 78:24 225:23 236:19

**environments**(1) 226:8

**ephraim**(1) 6:18

**equal**(5) 15:13 118:21 141:24 161:18

**equally**(6) 15:10 25:10 25:10 279:7 288:20 288:22

**equals**(1) 96:14

**equation**(2) 193:16 280:9

**equipoise**(1) 222:6

**equitable**(13) 166:5 188:25 189:18 191:6 191:15 191:20 219:20 221:1 221:16 221:22 277:19 301:10 301:11

**equitably**(2) 193:6 305:13

**equities**(2) 189:1 198:1

**equity**(46) 32:21 32:22 59:11 115:20 115:20 117:20 117:24 118:4 118:13 119:13 123:2 125:10 125:20 140:2 140:11 140:13 140:15 140:24 141:3 141:18 142:1 142:19 171:2 174:10 174:15 174:17 175:11 175:15 178:20 184:8 184:11 188:9 188:14 201:24 202:5 202:20 205:5 206:18 206:20 206:22 214:25 215:4 216:8 219:17 238:17 248:19

**equivalent**(3) 125:10 125:22 148:7

**equivocal**(1) 290:11

**eradicated**(1) 118:16

**eric**(2) 6:1 6:2

**erodes**(1) 34:6

**erosion**(4) 10:22 23:23 25:15 29:1 29:3 54:18 54:20 54:24 54:24 55:4 55:11 55:14 55:16 197:6 309:18

**err**(3) 97:6 235:10 237:5

**error**(5) 13:18 259:14 259:18 259:18

**esop**(5) 58:4 58:13 58:22 132:15 216:11

**especially**(1) 246:14

**esq**(68) 1:24 1:28 1:29 1:35 2:6 2:7 2:13 2:14 2:21 2:22 2:23 2:29 2:36 2:44 2:45 3:2 3:3 3:10 3:17 3:18 3:19 3:25 3:32 3:39 3:40 3:45 3:46 3:47 4:3 4:9 4:15 4:16 4:17 4:25 4:27 4:29 4:31 5:3 5:4 5:5 5:6 5:7 5:11 5:15 5:19 5:23 5:32 5:34 5:43 5:47 5:48 6:6 6:14 6:22 6:32 6:37 6:42 6:46 7:4 7:8 7:13 7:19 7:21 7:29 8:3 8:17 8:44 9:9

**essence**(1) 168:1

**essentially**(18) 25:14 44:18 50:18 95:2 95:3 95:25 113:12 120:13 122:2 122:14 141:17 156:3 174:11 197:17 206:25 247:21 247:22 303:12

**establish**(12) 65:19 93:15 95:2 102:23 112:5 114:8 120:5 120:8 121:4 226:11 272:19 273:16

**established**(6) 101:23 139:17 142:8 223:24 248:4 272:11

**establishes**(1) 192:15

**establishing**(5) 91:8 97:25 116:1 118:10 139:24

**establishment**(2) 20:18 131:25

**estate**(3) 31:16 36:6 243:3

**ester**(1) 5:19

**estimate**(25) 83:8 88:18 88:24 96:4 96:15 96:18 102:15 102:19 103:11 105:16 105:19 115:8 116:11 144:10 144:11 145:1 145:18 211:14 212:24 214:8 229:17 236:2 237:1 238:19 239:16

**estimated**(6) 109:19 142:25 147:20 156:1 207:9 235:2

**estimates**(3) 105:24 124:10 252:15

**estimating**(1) 145:18

**estimation**(1) 239:5

**eternity**(2) 41:23 41:24

**evaluation**(3) 161:14 161:23 239:25

**evaluations**(1) 71:2

**evan**(2) 6:6 6:32

**even**(39) 33:12 33:13 64:5 79:22 130:14 144:20 157:9 161:21 161:21 183:6 194:2 196:12 197:14 201:22 203:4 207:12 207:20 208:6 208:7 208:14 210:3 210:14 210:14 226:21 226:22 230:10 231:3 235:25 246:17 262:1 262:3 263:19 276:13 279:7 280:1 287:11 289:5 305:9 305:11

**evening**(2) 276:11 279:14

**event**(19) 93:2 93:18 95:13 96:17 99:14 100:22 101:1 108:8 111:2 118:6 118:17 142:9 144:14 168:22 216:25 217:2 239:22 264:4 293:17

**events**(5) 40:3 59:16 114:9 129:1 183:2

**eventually**(3) 170:14 170:21 170:23

**ever**(18) 47:7 75:10 111:11 136:21 169:1 169:6 204:9 204:21 204:22 212:17 218:4 225:13 233:25 236:3 236:4 262:24 280:4 291:18

**every**(16) 89:7 155:16 182:22 189:23 190:1 194:5 197:11 220:1 225:12 226:16 233:22 234:4 237:18 246:11 263:16 278:25

**everybody**(8) 11:15 148:15 209:7 209:11 209:11 239:15 262:15 301:14

**everybody's**(3) 78:20 90:21 234:1

**everyday**(1) 78:25

**everyone**(7) 189:14 196:5 224:6 231:7 237:15 243:8 269:21

**everything**(26) 21:11 29:19 40:16 78:23 133:21 182:14 213:14 216:5 216:22 223:13 223:23 224:15 225:16 226:1 231:24 257:20 257:22 258:1 258:3 258:22 259:2 259:8 276:4 281:18 296:3 296:4

**everything's**(1) 229:18

**evidence**(49) 10:17 11:6 30:19 44:4 47:3 47:20 48:9 49:12 54:23 68:12 71:14 81:24 86:23 129:2 152:12 152:14 162:9 162:12 172:17 194:22 194:24 194:25 195:15 195:19 216:1 217:4 217:11 223:18 223:19 226:13 226:17 227:18 227:23 229:6 229:11 235:11 235:14 235:24 240:5 248:24 254:22 254:23 254:23 254:24 279:2 284:21 290:10 290:12 298:9

**evidenced**(1) 66:25

**evidentiary**(3) 44:3 179:11 255:2

**evolve**(2) 114:10 118:17

**evolved**(1) 114:4

**exacerbate**(1) 33:14

**exact**(3) 213:23 273:20 274:3

**exactly**(12) 73:24 96:6 97:2 105:13 143:6 199:25 203:7 232:13 238:15 246:22 278:1 293:3

**examination**(19) 17:16 30:21 47:16 49:17 50:2 74:10 74:24 77:1 77:5 87:18 134:11 143:19 162:22 167:14 174:4 175:18 176:4 176:21 254:24

**examine**(1) 276:6

| Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|
| examiner(1) 144:7 | | factor(19) 13:11 14:6 14:11 14:14 14:18 15:3 16:12 16:12 118:11 122:22 139:3 139:11 159:6 194:1 214:19 247:11 265:17 266:24 266:24 | |
| examining(1) 212:10 | | | |
| example(17) 20:23 23:17 78:14 78:15 110:1 123:21 123:23 143:13 145:22 149:9 221:4 237:12 239:1 244:4 282:8 294:1 300:17 | | factors(10) 15:10 15:12 16:8 117:16 130:12 131:8 134:2 173:22 216:13 265:15 | |
| exceeds(2) 103:1 108:25 | | facts(17) 22:1 43:18 114:4 121:5 222:25 228:15 229:5 234:9 260:2 260:4 262:9 264:7 264:13 264:17 266:14 266:15 290:23 | |
| excellent(1) 296:24 | | | |
| except(2) 180:16 245:12 | | factual(4) 220:17 294:13 294:19 297:3 | |
| excerpt(2) 103:16 190:24 | | failed(2) 141:22 154:1 | |
| excess(3) 109:17 121:7 156:15 | | fair(12) 75:22 76:21 119:25 128:14 133:5 138:2 171:21 177:9 290:15 294:21 301:10 301:10 | |
| exchange(1) 119:23 | | | |
| exchanged(1) 189:25 | | fairly(4) 118:23 173:13 228:1 295:5 | |
| exclude(1) 300:21 | | faithful(1) 13:24 | |
| excludes(2) 81:13 81:14 | | fall(3) 36:22 210:16 226:12 | |
| excluding(1) 104:4 | | falling(2) 19:5 238:17 | |
| excuse(8) 53:4 99:23 115:20 213:22 236:14 236:18 255:24 273:9 | | falls(5) 109:14 194:9 237:21 237:25 280:14 | |
| | | false(1) 97:18 | |
| excused(1) 82:2 | | familiar(15) 24:25 37:12 42:10 45:3 45:14 64:1 67:24 90:18 106:21 111:14 113:20 184:25 185:6 261:10 278:9 | |
| execute(1) 28:19 | | | |
| executive(3) 25:20 35:9 67:11 | | familiarity(2) 42:12 68:1 | |
| executives(1) 21:1 | | family(1) 10:19 | |
| executory(1) 100:23 | | far(14) 30:3 34:25 35:3 40:15 41:3 47:15 128:6 138:3 164:10 217:4 217:25 234:23 274:24 291:19 | |
| exemplified(1) 22:8 | | | |
| exempt(4) 242:7 242:12 242:14 243:4 | | | |
| exemption(2) 66:8 243:6 | | fargo(1) 6:45 | |
| exercise(13) 13:15 16:10 109:25 118:3 122:15 122:18 122:19 123:2 227:1 227:16 249:2 249:5 255:7 | | farms(1) 78:24 | |
| | | farnan(1) 192:12 | |
| | | fashion(2) 44:1 275:8 | |
| | | fast(1) 304:15 | |
| exhibit(77) 18:19 18:21 18:24 19:23 19:25 20:3 22:21 22:22 23:24 24:17 25:25 31:17 36:7 39:15 48:21 48:22 49:20 50:1 50:5 50:18 52:18 52:22 52:23 55:5 55:17 57:19 64:15 65:2 65:4 68:19 68:21 68:23 72:1 79:25 80:21 80:23 81:7 86:10 94:8 94:9 94:22 94:23 98:11 98:11 98:13 104:12 104:12 104:13 105:23 105:23 106:10 107:5 107:7 107:19 109:18 116:8 121:21 121:22 121:23 121:24 122:1 122:2 124:19 124:21 127:12 127:12 127:13 127:17 129:24 151:17 152:20 162:11 162:18 163:1 163:2 167:16 167:16 | | fast-track(1) 278:23 | |
| | | faster(1) 304:2 | |
| | | fatally(1) 184:20 | |
| | | favor(4) 11:16 183:12 210:16 247:22 | |
| | | favorable(2) 160:4 185:24 | |
| | | favorite(1) 244:20 | |
| | | fcc(40) 42:9 42:13 42:15 42:17 42:22 42:25 43:11 43:18 43:20 44:17 45:1 45:2 45:11 45:15 46:10 47:1 73:21 73:24 74:3 75:4 75:9 75:14 82:16 82:17 101:5 101:7 183:16 193:19 194:8 194:12 195:4 195:16 210:15 213:21 213:22 213:24 214:14 214:17 249:8 249:10 | |
| exhibit7(1) 80:1 | | | |
| exhibits(18) 47:18 47:20 49:16 49:21 82:6 82:8 82:19 83:4 145:12 162:8 175:22 175:24 176:1 176:3 176:5 176:7 253:12 309:14 | | | |
| exist(3) 34:18 102:12 248:3 | | fealty(1) 184:22 | |
| existence(1) 221:21 | | fear(7) 36:18 72:20 73:16 73:18 195:7 195:9 195:17 | |
| existing(2) 33:12 34:3 | | | |
| exists(8) 16:8 108:22 132:11 156:7 247:16 247:18 268:8 281:15 | | feat(1) 56:14 | |
| | | february(4) 39:8 39:21 54:7 274:5 | |
| exit(11) 78:8 78:9 185:24 186:2 189:23 190:2 190:3 190:11 193:25 194:6 197:25 | | fed(3) 282:23 283:10 288:9 | |
| | | federal(3) 283:10 284:17 284:24 | |
| | | federal-mogul(13) 282:22 283:1 283:8 284:16 284:25 285:1 285:21 289:2 290:15 297:11 300:1 300:9 301:22 | |
| exits(3) 76:10 76:13 235:25 | | | |
| expect(12) 29:7 38:22 77:8 77:10 83:23 86:17 145:23 161:5 224:5 224:7 224:8 224:14 | | fee(1) 144:7 | |
| expectation(3) 35:12 35:16 43:8 | | feel(7) 14:8 40:23 205:15 220:9 269:10 269:10 302:8 | |
| expectations(2) 224:19 224:20 | | | |
| expected(7) 11:11 150:20 150:24 211:16 224:7 233:10 234:15 | | feels(2) 189:24 269:8 | |
| | | fees(26) 69:17 71:2 71:4 71:10 71:18 71:22 72:9 102:10 142:22 142:22 142:25 143:7 143:20 143:23 145:3 145:6 146:15 146:16 173:2 173:3 173:4 173:5 208:2 208:4 208:8 253:22 | |
| expects(2) 126:22 224:13 | | | |
| expedite(2) 165:20 200:18 | | | |
| expedited(1) 195:6 | | | |
| expended(1) 71:18 | | feld(4) 4:14 75:2 84:6 162:20 179:20 275:21 277:7 | |
| expense(8) 26:8 34:21 40:6 42:7 98:4 99:8 208:11 235:16 | | | |
| | | fell(1) 294:17 | |
| | | fellows(1) 48:8 | |
| expense-saving(1) 27:8 | | | |

| Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|
| expenses(28) 69:13 69:17 69:18 69:22 70:5 70:13 70:15 71:11 71:23 75:9 75:12 75:20 76:21 96:20 98:18 98:23 101:13 101:16 101:24 101:25 102:2 102:10 144:3 195:25 207:14 208:21 235:15 235:23 | | felt(3) 41:13 119:24 276:6 | |
| | | few(16) 17:3 31:13 31:14 40:3 42:8 62:15 66:13 75:3 85:6 85:7 146:7 162:19 210:14 224:7 224:8 273:10 | |
| experience(20) 18:9 43:25 45:21 45:25 46:14 46:18 88:5 88:13 90:13 97:9 97:17 114:18 114:21 128:13 147:8 168:6 168:25 171:5 172:3 297:2 | | | |
| | | field(1) 88:8 | |
| | | fields(1) 226:11 | |
| experienced(1) 29:15 | | fifth(3) 18:6 167:17 201:4 | |
| expert(7) 91:15 91:25 91:25 92:9 92:9 101:5 127:8 | | fight(4) 217:18 221:21 253:25 255:12 | |
| | | fights(1) 215:10 | |
| expertise(1) 79:6 | | figure(6) 202:9 212:6 212:22 216:24 233:5 234:1 | |
| experts(4) 36:4 203:13 203:14 203:16 | | | |
| explain(28) 20:5 20:14 25:3 26:4 26:17 28:1 31:21 90:22 94:25 95:23 96:11 98:15 99:1 99:19 101:4 106:2 107:9 107:22 115:9 117:10 122:5 124:21 155:22 174:3 216:19 225:14 225:24 261:12 | | figured(1) 228:6 | |
| | | figures(1) 236:24 | |
| | | file(5) 166:17 181:19 245:18 272:12 274:1 | |
| | | filed(34) 37:7 37:10 38:5 44:25 60:17 126:11 133:18 144:22 164:19 181:22 182:4 211:5 219:1 220:12 227:13 272:3 272:5 272:7 272:7 272:18 273:10 274:10 279:19 295:23 297:4 303:7 303:9 303:11 303:13 303:15 303:18 304:24 304:25 305:5 | |
| explained(2) 145:21 282:5 | | | |
| explanation(1) 249:9 | | | |
| explanations(1) 206:13 | | | |
| explicit(1) 186:2 | | | |
| explore(1) 228:16 | | filing(13) 61:3 68:7 82:16 82:17 106:17 113:3 164:17 165:4 165:7 165:8 165:9 165:10 273:17 | |
| explored(1) 205:14 | | | |
| expressed(1) 203:1 | | | |
| extend(2) 252:6 303:12 | | fill(2) 78:12 78:19 | |
| extended(7) 35:15 101:15 101:17 125:14 194:11 197:2 306:1 | | filled(1) 33:4 | |
| | | final(18) 15:3 86:25 105:12 133:17 164:17 164:24 165:7 165:8 165:10 167:18 181:15 182:6 240:10 252:4 254:21 256:16 256:17 257:1 | |
| extensions(1) 106:19 | | | |
| extensive(2) 14:7 44:3 | | | |
| extensively(1) 286:24 | | finally(5) 125:16 223:24 240:10 245:11 248:18 | |
| extent(10) 102:25 103:2 115:2 181:6 184:15 190:8 193:23 247:12 276:5 287:5 | | | |
| | | finances(1) 89:5 | |
| | | financial(26) 23:10 58:18 66:9 68:14 70:25 89:16 91:8 91:19 91:20 92:3 93:7 109:24 114:2 114:18 114:21 119:10 119:11 135:15 135:21 225:21 229:14 235:20 235:20 245:1 253:20 255:13 | |
| externally(1) 41:14 | | | |
| extra(1) 142:22 | | | |
| extraordinarily(1) 239:24 | | | |
| extraordinary(2) 108:14 247:7 | | | |
| extreme(3) 62:4 105:11 118:24 | | financially(1) 116:24 | |
| extremely(2) 231:20 302:22 | | financials(1) 53:11 | |
| exxon(6) 280:11 286:23 286:25 286:25 287:14 288:16 | | financing(7) 116:17 185:25 186:2 236:22 236:22 236:23 291:20 | |
| | | find(25) 16:3 16:7 36:23 78:17 79:7 114:21 181:7 182:9 192:3 197:7 212:9 212:9 220:25 221:2 227:25 238:19 239:12 239:13 241:13 241:14 249:8 256:11 260:23 285:20 301:5 | |
| face(6) 140:20 166:6 225:20 251:6 256:14 299:5 | | | |
| | | finding(3) 230:8 269:18 302:25 | |
| faces(1) 141:1 | | findings(1) 294:19 | |
| facilitate(2) 79:21 180:21 | | finds(1) 268:23 | |
| facilitating(1) 190:23 | | fine(9) 12:7 12:21 25:13 82:25 87:3 240:3 280:7 291:10 307:11 | |
| facility(7) 116:9 116:16 117:15 117:15 156:24 185:24 186:4 | | | |
| | | finer(1) 249:7 | |
| facing(1) 197:24 | | finger(1) 2:28 | |
| fact(90) 18:7 19:1 19:4 21:23 22:17 29:7 34:17 35:15 35:25 38:16 40:1 40:18 42:1 44:17 44:19 46:24 46:25 49:9 54:22 54:23 55:2 56:16 56:23 68:9 77:7 77:17 78:1 80:16 84:1 103:24 107:25 113:4 114:24 117:9 117:13 117:18 118:4 124:2 129:11 132:13 132:14 132:21 157:14 159:5 159:14 159:18 169:4 170:8 170:14 170:21 170:25 172:2 173:2 173:20 174:14 174:16 178:16 186:22 190:11 194:15 195:16 196:23 208:14 208:20 213:10 220:16 220:17 222:21 229:15 229:21 231:18 232:2 232:16 232:18 236:18 247:23 248:13 248:16 248:18 249:3 251:22 263:21 264:1 273:25 278:25 279:6 281:10 282:19 290:8 293:21 | | finish(2) 141:23 217:5 | |
| | | finished(1) 303:4 | |
| | | finite(1) 252:13 | |
| | | finova(6) 192:12 196:25 243:11 243:13 243:14 243:18 | |
| | | fire(1) 140:17 | |
| | | firm(9) 69:25 77:11 77:12 155:3 185:22 211:1 270:19 278:17 295:21 | |
| feld(4) 4:14 75:2 84:6 162:20 179:20 275:21 277:7 | | firms(3) 77:10 168:4 228:21 | |
| | | | |
| fell(1) 294:17 | | | |
| fellows(1) 48:8 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **first**(88) 10:15 11:6 12:2 12:4 12:7 12:10 12:12 12:14 13:1 13:9 13:11 14:4 17:5 20:11 21:2 23:5 26:25 33:16 37:10 38:5 50:11 51:9 53:11 53:18 53:24 54:5 55:5 55:6 65:13 67:10 67:11 76:2 80:12 82:2 84:4 95:7 97:1 103:20 108:12 108:17 127:7 138:3 155:3 168:17 176:18 181:23 183:9 185:5 202:2 204:9 207:15 211:13 219:16 223:9 227:17 232:8 241:1 241:21 255:5 255:25 260:9 260:11 260:18 260:18 264:3 264:14 265:15 265:17 266:24 270:23 271:13 272:17 274:17 277:1 277:2 281:14 281:25 283:2 284:7 288:25 289:9 291:13 291:15 294:12 294:23 302:10 305:7 305:20 | | **first-hand**(1) 43:21 **fist**(1) 242:22 **fit**(1) 33:6 **five**(11) 20:7 32:4 36:11 42:2 47:20 84:21 101:10 122:9 122:12 196:4 306:13 **five-and-a-half**(2) 216:21 217:13 **five-minute**(2) 255:22 256:2 **fixing**(1) 252:11 **flattened**(1) 66:23 **flexibility**(2) 248:21 248:21 **flip**(1) 119:19 **flom**(1) 9:7 **flood**(3) 140:17 213:6 213:7 **floor**(4) 2:8 3:5 3:27 3:41 **florida**(1) 41:1 **flow**(15) 38:14 38:18 42:23 51:11 62:3 62:8 110:1 115:16 155:13 155:19 155:24 156:2 156:15 158:1 226:1 **flower**(1) 2:8 **flows**(3) 62:7 115:8 155:3 **focus**(6) 14:22 124:1 182:25 254:13 255:7 260:12 **focused**(7) 88:10 109:10 132:2 132:3 174:1 206:12 231:13 **focuses**(1) 220:19 **focusing**(4) 221:9 239:14 240:1 254:15 **folks**(1) 255:17 **follow**(3) 12:23 105:14 196:17 **follow-up**(1) 176:14 **followed**(3) 196:18 273:17 274:4 **following**(4) 53:23 83:23 155:12 193:11 **follows**(3) 234:22 287:2 290:17 **footnote**(6) 57:24 103:18 103:20 103:20 104:16 286:24 **footprint**(1) 26:20 | | **for**(301) 1:2 1:23 2:4 2:20 2:35 3:1 3:9 3:31 3:38 3:44 4:1 4:13 4:24 4:44 5:1 5:13 5:18 5:26 5:31 5:37 5:42 5:46 6:1 6:8 6:13 6:17 6:20 6:31 6:35 6:40 6:45 6:49 7:2 7:7 7:10 7:17 7:28 7:32 7:37 7:41 7:46 8:1 8:6 8:12 8:16 8:20 8:24 8:29 8:34 8:38 8:43 8:47 9:1 9:6 10:6 10:12 12:21 13:12 13:14 14:1 16:4 16:17 16:20 18:5 18:18 18:19 18:24 19:10 19:10 19:23 20:9 20:16 20:20 21:18 22:21 22:24 23:17 24:5 25:7 25:11 26:6 26:9 26:20 27:11 28:6 28:8 29:15 31:8 32:2 32:7 32:24 33:3 33:4 33:12 34:14 34:15 34:16 38:17 39:17 39:21 40:1 40:17 41:3 41:17 41:19 42:15 42:16 43:2 43:9 43:17 44:20 45:7 46:5 47:14 47:18 49:23 50:5 50:8 50:10 51:1 51:3 51:8 51:15 51:15 51:21 52:21 53:16 54:4 56:15 57:9 59:25 60:17 61:3 62:1 62:23 63:8 64:1 64:9 64:18 64:19 65:19 65:22 67:10 67:22 68:7 68:17 68:22 70:21 71:7 72:9 73:4 74:22 75:2 75:13 76:17 76:19 77:9 77:18 78:9 78:16 78:22 79:7 79:8 79:19 80:24 81:9 82:10 82:12 82:12 82:15 82:22 83:15 83:16 84:5 84:19 84:21 85:1 85:5 85:7 85:18 85:19 87:10 88:8 90:8 90:25 91:17 91:23 92:2 92:5 92:7 94:8 94:19 94:22 97:7 97:24 98:11 98:22 99:11 99:11 100:22 101:2 101:14 101:15 102:1 102:2 102:23 104:1 104:5 105:3 105:6 105:19 105:24 106:4 106:8 106:9 106:18 107:5 107:19 109:8 109:9 109:25 110:8 111:4 112:5 112:10 113:16 115:18 116:2 116:7 117:4 118:3 118:10 118:11 118:12 118:21 119:14 119:23 120:1 120:3 120:25 121:2 121:15 122:16 122:23 123:21 123:23 124:23 124:23 125:19 125:15 129:22 129:25 131:23 133:20 134:6 134:14 134:18 134:25 135:4 135:7 135:9 135:12 135:13 136:3 138:13 138:15 138:19 139:7 139:11 139:18 142:1 142:2 142:4 143:13 143:13 143:21 143:24 145:5 145:19 145:22 146:11 147:3 148:15 149:9 151:2 152:2 152:23 153:12 155:10 155:14 155:23 156:5 156:7 156:22 158:25 159:10 159:21 161:13 162:20 163:2 163:11 | | **for**(206) 169:3 169:22 171:22 174:1 175:4 177:7 178:2 178:14 179:19 179:20 180:18 181:1 183:11 184:12 184:23 185:22 185:25 186:25 187:3 187:10 187:17 188:3 188:11 188:22 189:1 189:15 189:15 190:5 190:13 191:13 192:8 193:13 193:18 194:11 194:14 195:24 195:25 196:2 197:2 197:15 198:3 198:11 198:11 198:17 199:7 200:9 200:14 200:17 201:5 202:4 202:8 204:11 204:12 204:13 204:24 205:21 205:21 206:10 208:18 208:19 209:3 209:10 209:11 210:5 210:14 210:21 211:8 212:5 212:16 212:19 212:21 213:9 214:6 214:24 216:19 218:2 218:7 219:11 219:12 219:15 221:3 221:11 221:15 222:18 225:8 226:14 226:14 227:6 227:10 227:11 227:12 227:12 228:25 229:23 233:6 234:22 235:2 236:8 236:9 236:22 237:16 237:22 237:24 238:5 238:21 239:2 239:2 239:5 239:11 239:16 240:2 240:14 241:8 241:18 243:6 243:6 244:2 244:4 245:5 245:5 245:12 247:1 247:9 247:24 249:16 249:19 250:1 250:3 251:18 252:21 253:4 253:22 256:7 258:20 258:23 259:19 260:22 262:14 262:14 262:15 263:7 264:12 269:22 270:10 270:20 270:22 270:24 271:24 271:12 273:2 273:20 274:2 274:13 274:18 275:21 276:11 276:19 276:23 277:21 277:23 278:6 278:7 278:13 278:19 280:14 281:3 281:10 282:8 284:12 285:7 285:14 286:4 286:14 287:8 289:18 293:17 293:19 293:23 294:1 294:21 295:7 295:13 296:18 297:15 297:16 297:18 297:20 298:24 299:1 300:12 300:15 300:16 301:16 301:21 302:10 302:14 303:18 303:21 304:14 304:17 304:24 306:2 306:17 306:23 307:18 308:3 | | **four-year**(1) 199:8 **fourth**(4) 15:3 34:20 40:10 82:14 **frame**(1) 13:6 **frameworks**(1) 91:12 **framing**(1) 266:21 **frank**(2) 5:39 6:41 **frankly**(10) 23:19 30:8 41:3 99:25 122:18 131:24 165:15 252:14 271:10 275:10 **free**(11) 14:25 15:20 76:17 76:20 130:16 155:13 175:11 178:20 224:8 224:25 224:25 **freeze**(2) 64:12 67:8 **fresh**(2) 30:15 190:10 **friday**(4) 10:1 63:6 86:18 199:5 **friedman**(6) 2:42 8:2 91:23 134:14 198:10 256:6 **from**(195) 11:8 11:9 12:3 12:3 12:6 21:6 22:3 23:4 31:15 32:5 35:11 35:22 38:9 38:18 41:4 43:16 43:20 45:4 45:11 58:9 58:23 58:24 60:4 62:14 63:6 67:11 70:6 70:14 70:17 71:14 71:20 73:2 76:14 77:10 78:23 84:3 84:23 85:4 86:20 87:6 93:6 95:14 98:5 98:20 98:24 99:9 99:14 100:20 101:21 102:13 103:16 105:12 108:24 109:3 112:11 113:19 113:21 114:15 114:23 116:15 123:15 125:11 125:16 126:15 130:11 132:16 132:20 134:20 134:23 137:11 137:12 139:2 139:3 142:14 143:1 144:2 144:11 144:14 145:1 147:16 148:5 148:14 155:3 155:11 156:19 160:25 161:5 161:8 164:16 164:17 164:24 165:4 165:7 165:9 165:24 173:3 175:15 177:14 179:16 180:9 180:16 180:18 180:21 182:5 183:2 183:13 186:10 187:2 188:17 188:18 188:19 188:20 189:3 190:17 190:20 190:24 191:25 192:24 194:3 194:8 204:17 205:10 207:2 207:12 208:12 208:19 213:16 213:24 214:8 217:12 218:3 218:21 220:10 221:12 226:21 227:11 231:7 232:7 232:15 232:18 233:24 233:25 233:25 234:16 238:10 239:18 239:19 242:7 242:14 243:5 243:22 255:16 256:3 256:16 256:19 258:9 260:6 273:8 278:6 281:5 281:10 283:8 283:10 283:11 283:13 283:18 283:22 284:2 284:14 285:3 285:20 285:21 286:25 286:25 287:2 287:3 287:14 288:10 289:7 289:15 290:10 290:24 290:25 291:6 291:9 292:12 292:17 297:11 297:11 297:14 301:4 302:6 303:24 306:14 308:10 |
| | | | | **force**(1) 10:9 **forced**(2) 185:14 185:17 **forcing**(2) 187:4 187:22 **forecast**(1) 156:20 **forecasts**(2) 115:12 133:16 **foreclose**(1) 15:1 **foreclosed**(2) 197:10 221:15 **forego**(2) 240:15 240:18 **foregoing**(1) 308:9 **foregone**(1) 130:19 **forget**(1) 305:22 **forgive**(1) 211:18 **form**(4) 112:6 140:6 170:18 221:3 **forman**(1) 1:34 **former**(3) 5:13 9:6 252:15 **forming**(1) 294:9 **formula**(2) 15:14 123:5 **formulation**(2) 119:15 119:21 **forth**(10) 18:12 19:19 106:9 106:10 133:23 223:7 276:8 278:11 278:21 301:24 **forthwith**(1) 305:19 **fortunes**(1) 118:17 **forty**(1) 125:1 **forum**(1) 82:17 **forward**(20) 10:15 10:19 10:25 16:16 16:20 50:8 56:25 66:8 72:9 72:10 77:8 82:21 121:19 193:4 242:3 248:25 249:19 277:17 305:3 305:6 **forwards**(1) 112:7 **found**(6) 15:18 22:12 114:13 200:3 265:10 288:20 **foundation**(7) 7:11 7:12 21:25 65:19 127:9 171:8 172:13 **founded**(3) 180:13 181:7 226:20 **four**(15) 13:17 15:12 15:15 21:9 61:3 101:4 101:5 106:5 164:13 196:18 210:12 222:1 247:24 260:18 303:15 | | **front**(11) 22:24 24:19 48:18 80:2 80:7 90:5 153:2 163:8 218:25 253:6 269:12 **full**(19) 10:9 13:1 40:17 53:24 65:14 80:12 118:12 119:17 177:9 178:2 178:14 193:2 209:3 213:5 218:14 240:16 240:17 249:12 292:11 **fully**(3) 119:19 205:14 266:16 **fun**(2) 71:7 83:16 **function**(2) 99:25 131:1 **functions**(4) 101:22 142:17 142:19 172:10 182:22 253:21 **fundamental**(3) 21:19 38:12 267:25 **funding**(1) 186:13 **funds**(14) 23:8 102:1 171:6 172:3 172:7 172:7 172:9 209:14 227:8 241:25 242:11 243:7 253:17 254:1 **further**(20) 14:8 34:6 43:13 47:12 48:12 48:15 74:7 81:19 95:7 134:8 143:23 143:25 162:5 175:19 191:21 237:17 280:17 302:21 307:17 307:25 **future**(11) 29:18 29:19 93:13 114:7 115:8 121:18 145:2 146:9 155:3 188:12 273:8 **fuzzier**(1) 199:18 |

| Word | Page:Line |
|---|---|
| gaggle(1) 298:7 | |
| gain(3) 130:19 131:23 207:5 | |
| gambit(1) 296:13 | |
| game(1) 294:21 | |
| gap(1) 78:19 | |
| garrison(1) 7:18 | |
| gary(1) 4:37 | |
| gather(1) 278:5 | |
| gathering(1) 60:4 | |
| gave(8) 78:15 196:25 209:3 228:21 238:9 240:23 262:17 279:22 | |
| gavin(1) 7:43 | |
| gecker(1) 6:41 | |
| gee(1) 27:2 | |
| general(17) 21:5 42:22 44:17 46:3 46:8 78:6 90:23 172:6 172:10 180:3 189:2 266:24 266:25 267:1 267:6 267:6 290:7 | |
| generality(2) 268:13 268:14 | |
| generalized(1) 200:3 | |
| generally(12) 37:12 66:23 78:3 88:20 90:24 100:19 107:22 166:20 171:6 172:7 181:24 187:20 | |
| generate(3) 60:5 115:10 130:16 | |
| generated(2) 150:7 150:10 | |
| generating(3) 38:14 38:18 147:22 | |
| generic(2) 197:4 250:8 | |
| generis(2) 186:5 198:22 | |
| gentilotti(1) 2:35 | |
| gentlemen(1) 13:13 | |
| geofrey(1) 4:31 | |
| george(1) 5:15 | |
| gerber(1) 186:14 | |
| gerson(1) 8:40 | |
| get(96) 10:21 10:22 11:15 11:21 13:5 16:22 21:2 21:21 30:24 31:1 33:25 34:4 36:14 37:18 43:12 58:13 117:7 123:10 126:22 127:8 131:13 141:3 142:25 148:18 150:25 157:7 157:9 158:25 164:23 165:3 165:4 165:5 169:14 169:14 176:3 176:6 176:20 178:2 188:7 188:20 189:12 197:1 197:21 200:11 200:22 201:9 201:17 208:2 210:13 210:15 212:21 213:15 213:24 216:20 216:25 218:6 218:22 221:12 226:7 228:3 228:8 230:1 230:24 232:13 232:19 233:10 238:1 238:2 238:8 238:10 239:1 244:16 249:16 249:18 250:7 252:10 253:11 263:10 263:22 264:15 270:3 280:16 281:13 286:20 287:13 289:21 290:23 292:3 293:10 293:11 293:21 299:8 303:8 303:21 304:11 307:5 | |
| gets(6) 33:7 133:1 171:2 240:5 275:17 304:15 | |
| getting(19) 30:7 31:25 32:4 35:21 120:3 148:15 149:22 181:14 185:15 189:9 203:20 232:23 246:5 250:23 254:20 265:9 292:9 292:10 306:9 | |
| giant(2) 30:4 291:21 | |
| gigantic(1) 294:13 | |
| give(17) 13:25 20:23 26:21 73:25 78:14 83:8 86:22 92:4 92:8 131:14 131:22 148:7 198:5 202:10 228:23 250:21 299:3 | |
| given(19) 15:13 40:15 84:1 84:6 84:7 86:8 119:22 132:5 132:8 171:16 173:20 183:14 196:24 199:15 266:17 272:9 293:17 298:17 305:9 | |
| gives(6) 21:10 197:15 202:11 202:12 202:14 250:15 | |
| giving(6) 47:6 53:15 94:16 230:6 262:19 307:20 | |
| glance(1) 301:23 | |
| global(5) 8:38 8:39 87:24 88:1 282:22 | |

| Word | Page:Line |
|---|---|
| gnawing(1) 20:19 | |
| goal(1) 87:2 | |
| gobble(1) 11:25 | |
| god(1) 291:15 | |
| goes(33) 14:24 20:25 21:8 21:19 23:16 26:25 40:13 69:25 74:5 77:8 86:11 101:11 146:11 154:7 154:7 157:15 166:16 178:17 179:1 190:20 200:12 205:6 228:9 242:18 257:10 257:13 257:22 257:25 258:1 258:3 259:8 283:15 285:6 | |
| going(175) 10:23 10:25 11:3 11:19 11:21 11:24 12:7 12:23 12:25 17:3 21:4 21:21 23:20 23:20 27:2 27:2 27:16 27:18 27:25 28:11 34:8 35:12 35:16 36:2 38:19 38:25 40:16 41:19 43:2 46:19 46:20 47:7 48:11 53:25 58:9 63:13 71:16 72:9 72:9 75:5 76:17 76:18 76:21 85:17 85:23 85:23 85:24 85:24 86:16 108:13 117:5 118:25 119:5 122:5 122:7 123:13 126:22 128:24 135:20 141:1 143:13 152:11 160:17 166:25 176:2 180:17 184:11 190:2 190:2 193:19 193:22 194:2 194:12 197:11 197:20 200:11 201:16 202:13 202:20 202:21 205:4 205:5 206:15 207:21 208:13 208:18 208:23 209:14 209:25 211:15 211:23 212:22 213:20 213:24 214:15 214:17 214:20 214:22 216:18 216:20 217:2 217:5 217:7 217:7 217:9 217:11 217:22 218:22 219:17 220:5 220:20 223:4 223:6 223:13 224:15 224:15 226:17 228:24 230:10 230:20 232:16 233:10 234:1 234:3 234:4 234:9 234:9 235:24 236:20 236:21 237:2 237:3 238:18 238:23 239:22 241:19 242:8 244:1 244:5 248:14 249:11 254:7 254:8 256:8 262:9 265:8 266:9 266:12 267:20 267:23 268:9 268:10 268:20 268:25 268:25 269:2 269:2 279:15 283:19 291:17 293:10 293:11 294:5 294:14 294:15 294:18 297:21 298:8 298:25 300:5 302:1 302:6 302:25 304:4 304:11 | |
| golden(1) 4:15 | |
| goldfarb(1) 5:11 | |
| goldman(1) 8:34 | |
| gone(6) 37:8 128:2 160:24 201:3 249:8 300:10 | |
| good(43) 10:3 10:4 10:5 12:1 12:5 47:8 49:18 50:4 69:20 75:1 129:22 134:13 134:14 134:16 152:10 162:24 162:25 179:11 179:18 189:15 189:15 198:9 209:4 210:25 211:11 212:19 228:13 245:9 245:22 246:18 247:18 247:20 249:19 270:18 275:20 276:11 277:10 278:17 280:24 284:5 289:18 296:16 308:4 | |
| goody's(13) 261:8 261:9 262:16 280:21 280:23 281:1 282:6 284:5 284:5 288:25 290:17 297:11 299:24 | |
| gordon(7) 4:3 7:42 23:9 150:11 210:25 253:19 270:19 | |
| got(33) 11:13 53:5 57:6 57:8 113:12 134:20 145:20 145:21 146:25 149:19 156:19 173:22 194:11 194:12 194:18 212:8 213:13 213:20 215:12 222:1 225:14 232:1 245:19 248:12 249:1 265:3 265:3 269:15 280:19 291:6 291:9 294:16 307:5 | |
| gotshal(1) 8:43 | |
| gotten(4) 30:18 31:13 35:18 232:7 | |
| govern(1) 180:5 | |
| governance(1) 37:2 | |
| government(9) 132:25 133:1 133:11 186:13 221:19 242:19 242:22 243:4 244:14 | |
| governmental(1) 47:4 | |
| governs(4) 182:14 251:9 260:6 266:23 | |
| grabs(1) 286:4 | |

| Word | Page:Line |
|---|---|
| grace(4) 218:15 218:22 251:13 251:20 | |
| grade(1) 111:18 | |
| grammatical(1) 285:13 | |
| grammatically(1) 285:2 | |
| grandchildren(1) 196:10 | |
| grant(9) 14:0 7:34 90:7 93:3 200:20 234:11 252:3 252:17 257:20 | |
| granted(29) 13:10 14:13 14:23 18:11 19:4 20:9 21:14 29:8 41:8 42:1 46:24 49:9 76:13 89:25 95:14 118:6 126:20 127:3 129:12 171:13 183:19 185:1 185:22 185:4 186:7 219:23 258:20 259:2 305:9 | |
| granting(4) 33:13 34:6 196:23 221:23 | |
| grants(1) 69:1 | |
| great(5) 13:16 33:6 118:20 271:1 271:1 | |
| greater(4) 114:1 151:6 232:9 248:22 | |
| greatest(1) 205:20 | |
| greatness(1) 188:12 | |
| greissman(1) 6:46 | |
| grippo(1) 5:14 | |
| gropper(1) 4:46 | |
| ground(3) 204:23 276:23 281:9 | |
| grounds(3) 14:2 190:5 191:15 | |
| group(12) 3:44 6:41 25:11 79:17 87:24 97:22 149:16 202:22 245:11 246:7 256:13 283:25 | |
| groups(2) 89:10 100:15 | |
| grow(1) 232:4 | |
| guaranteed(4) 120:13 120:19 120:20 | |
| guaranty(3) 8:7 8:7 244:15 | |
| guess(14) 16:11 44:2 160:9 162:10 165:24 194:8 242:11 275:18 277:24 295:20 295:21 302:23 305:23 306:17 | |
| guidance(5) 134:21 281:21 295:13 304:10 307:20 | |
| guide(1) 13:3 | |
| guidelines(1) 113:1 | |
| gump(7) 4:14 75:2 84:6 162:20 179:19 275:21 277:7 | |
| guy(1) 245:18 | |
| guys(4) 21:21 147:12 228:11 245:18 | |
| gwen(1) 7:4 | |
| h-2(1) 50:14 | |
| h-6(1) 83:2 | |
| h-8(1) 83:3 | |
| h.r(1) 33:9 | |
| had(81) 10:13 12:9 22:9 22:10 22:13 30:18 33:19 34:2 40:3 40:6 41:2 41:3 41:4 44:20 52:8 52:8 64:11 67:8 68:9 68:13 69:21 71:21 72:16 73:6 73:8 76:24 78:6 79:14 79:14 79:18 80:16 89:8 89:12 90:13 91:2 96:25 112:19 115:1 115:23 128:1 130:16 150:13 157:3 157:7 158:17 167:12 168:6 173:21 177:12 182:4 203:24 204:1 204:4 206:12 214:3 215:7 217:18 223:21 225:13 228:11 236:15 241:23 247:24 252:3 252:5 252:8 274:23 277:17 279:14 280:18 282:25 285:24 289:20 290:21 291:8 291:14 295:7 302:12 303:7 307:19 | |
| hadn't(1) 303:19 | |
| hair(5) 230:17 230:21 230:22 230:23 232:4 | |
| half(5) 35:8 40:9 86:13 209:17 233:12 233:13 | |
| half-way(1) 39:24 | |
| hammer(1) 285:12 | |
| hampered(1) 275:3 | |
| hand(9) 15:7 17:2 64:14 180:7 184:18 273:5 289:2 292:15 292:17 | |
| handed(7) 50:4 52:21 63:3 64:17 151:14 295:1 302:1 | |

| Word | Page:Line |
|---|---|
| handing(3) 52:20 57:15 63:3 | |
| handle(1) 147:12 | |
| handles(1) 45:15 | |
| hands(5) 175:11 231:2 231:3 234:25 | |
| handy(1) 206:4 | |
| hang(2) 245:25 246:3 | |
| hanging(1) 245:7 | |
| happen(17) 27:2 35:12 35:16 69:21 125:23 127:3 147:13 169:6 186:20 207:21 207:22 239:17 239:18 241:5 241:6 249:11 268:25 | |
| happened(8) 96:22 213:7 220:2 220:2 236:5 254:10 266:18 282:21 | |
| happening(3) 22:18 194:14 224:18 | |
| happens(8) 133:10 213:5 213:8 225:13 231:6 231:21 242:13 290:22 | |
| happy(2) 241:14 291:1 | |
| hard(14) 17:6 21:12 27:19 28:24 31:12 31:13 32:7 40:14 219:22 234:17 290:17 290:18 293:17 293:19 | |
| hardly(3) 20:25 261:11 285:23 | |
| harm(138) 14:24 18:10 19:3 19:17 20:8 34:10 34:17 34:18 37:15 42:2 49:8 55:10 61:15 72:16 73:11 74:2 92:1 93:7 93:10 93:20 93:21 109:12 113:5 130:22 135:16 135:17 137:11 137:15 138:11 138:13 138:17 138:25 139:2 139:5 139:6 139:7 139:8 139:10 141:9 141:11 147:15 155:11 159:2 159:8 175:4 183:1 183:17 185:3 185:7 185:20 185:23 186:6 192:8 192:11 192:13 192:18 192:25 193:10 193:10 193:13 193:17 193:24 194:4 195:11 197:4 197:8 197:16 197:24 197:25 198:5 199:17 200:3 200:7 200:8 201:16 201:20 203:20 203:24 204:1 204:2 204:4 204:5 204:13 207:9 210:2 210:16 212:2 212:2 212:3 212:5 212:8 212:23 212:24 213:2 215:16 217:7 218:14 219:5 220:23 221:4 221:6 221:9 221:24 223:4 223:11 223:11 223:12 226:18 226:24 226:24 229:13 231:7 237:1 237:2 237:25 241:2 241:3 241:10 243:22 246:13 247:10 247:12 247:12 247:14 247:14 247:16 247:18 248:3 248:4 248:10 248:12 248:20 248:22 248:23 248:23 248:24 249:24 254:2 | |
| harm."(1) 192:16 | |
| harmed(3) 14:12 110:7 248:17 | |
| harms(20) 94:18 129:25 130:3 130:5 130:7 130:9 132:3 132:3 132:4 186:22 187:1 245:23 245:24 246:1 246:22 249:4 250:5 250:8 250:9 250:16 | |
| harrisburg(1) 1:44 | |
| hartensstein(1) 83:4 | |
| hartenstein(61) 10:18 10:19 12:11 16:23 17:4 17:9 17:18 18:16 18:19 18:21 18:23 19:23 19:25 20:22 21:21 22:22 22:24 24:5 24:17 24:19 30:14 39:11 39:15 49:16 50:1 50:4 50:5 50:25 52:22 52:23 55:18 57:16 57:19 64:21 66:18 68:21 68:23 71:6 75:1 82:2 82:11 82:13 82:14 82:15 82:16 86:9 130:8 130:12 131:9 142:15 175:17 185:9 193:20 224:23 226:14 229:12 253:5 253:12 307:5 309:3 309:16 | |
| hartenstein'(1) 65:4 | |
| hartenstein's(2) 223:21 229:24 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**has**(175) 10:17 10:19 11:23 12:15 12:15 13:12 14:2 20:16 20:23 23:20 26:22 29:14 29:14 31:8 31:11 31:13 31:14 31:25 34:3 35:21 36:24 37:8 38:4 38:9 39:22 42:15 44:8 46:10 46:18 47:4 54:3 54:24 56:24 57:25 59:9 59:12 60:6 61:11 61:20 62:11 65:25 66:20 67:1 72:23 73:1 77:21 88:10 89:6 97:5 100:22 100:25 101:6 101:8 101:9 105:22 110:2 113:8 116:17 120:19 125:10 125:14 126:16 126:23 128:2 128:14 128:23 138:10 139:10 146:23 147:2 147:5 153:1 153:4 153:21 154:12 154:21 155:1 159:12 172:10 172:17 175:16 178:15 178:15 178:24 189:23 190:11 190:15 192:6 194:10 195:3 195:8 198:5 200:14 201:1 203:14 203:15 204:9 204:22 205:13 207:8 208:14 208:14 210:16 211:22 212:12 214:16 215:13 217:4 217:20 218:13 219:9 220:24 224:4 224:18 226:18 229:6 229:10 235:7 236:16 239:3 240:10 243:13 246:16 248:12 251:2 253:6 255:16 256:16 256:25 257:17 258:24 258:25 260:18 261:4 262:1 263:12 264:18 269:9 269:21 271:4 271:6 272:8 272:9 272:19 272:20 273:1 273:12 273:15 274:22 280:10 282:9 282:21 283:15 286:2 286:17 288:18 289:16 291:17 291:20 291:21 293:2 293:5 293:7 293:10 295:1 295:15 297:25 298:10 298:11 298:18 298:18 299:14 300:24 303:15 304:12

**hasn't**(7) 227:7 239:3 258:20 258:24 273:16 283:9 298:9

**haste**(1) 277:7
**hathaway**(3) 212:19 212:20 212:21
**hauer**(7) 4:14 75:2 84:6 162:20 179:19 275:21 277:7

**have**(301) 10:9 10:16 10:17 11:8 11:14 11:21 11:24 12:11 12:16 12:20 13:2 13:14 13:22 13:25 14:7 16:5 16:21 17:2 17:2 18:3 18:5 18:12 18:14 19:3 19:13 19:16 19:18 21:23 22:2 22:24 23:18 24:19 25:10 25:12 25:21 26:9 26:13 27:6 28:6 28:8 28:15 30:12 31:1 32:3 32:12 32:24 33:10 33:11 33:24 33:25 34:13 35:1 35:24 36:4 36:4 36:10 37:7 38:13 38:14 38:16 38:18 40:4 40:25 41:13 41:15 41:18 41:25 42:14 45:13 45:17 46:4 46:13 46:16 47:11 48:8 48:18 49:21 49:23 50:11 50:14 52:6 53:1 53:5 54:23 55:11 55:14 57:21 57:22 58:17 59:11 62:14 62:15 62:15 62:16 62:20 62:22 62:22 63:15 64:4 64:7 64:7 64:22 65:16 66:23 66:25 67:1 68:12 68:16 70:13 70:15 70:18 70:19 70:20 70:23 71:7 71:12 71:14 71:17 73:17 74:7 76:10 76:19 77:18 78:4 78:17 78:18 79:7 79:16 79:22 80:1 80:2 80:7 80:7 81:7 81:19 83:25 84:11 85:5 85:12 85:16 85:17 86:24 88:3 88:14 88:16 88:21 89:3 89:8 89:12 90:3 91:2 91:6 95:16 95:20 101:1 101:7 102:2 102:6 102:20 103:1 103:13 106:4 106:23 106:25 107:10 109:2 114:2 114:13 114:23 115:8 117:2 117:22 119:6 120:24 121:1 121:2 121:4 122:11 122:11 122:16 122:19 123:19 125:23 128:10 129:10 129:19 130:9 130:15 131:4 131:5 131:24 132:5 132:8 132:16 133:10 134:2 134:8 136:1 136:7 137:9 137:24 138:6 139:16 141:24 142:18 144:15 144:22 145:23 146:1 146:6 146:9 147:4 147:6 149:8 149:14 149:15 150:5 150:18 151:3 151:5 151:10 151:21 151:23 156:7 156:17 157:7 157:16 158:14 158:25 160:24 162:4 162:5 162:8 163:8 163:24 164:18 165:24 166:18 166:18 167:9 168:1 168:17 169:1 171:1 171:18 172:2 172:20 174:17 175:9 175:13 175:14 175:15 175:19 176:5 178:16 178:17 178:18 180:12 180:23 181:4 181:17 181:22 182:3 182:6 184:11 184:21 185:1 185:14 186:3 186:4 186:14 187:3 188:22 189:13 189:19 189:22 190:1 190:6 190:10 190:16 191:7 191:10 192:10 192:15 194:18 195:21 196:8 196:15 196:24 197:14 198:2 200:3 200:9 200:17 200:18 200:18 201:10 201:18 202:25 204:5 204:5

**haven't**(25) 35:18 44:10 48:8 69:16 70:3 70:3 70:6 71:10 71:22 73:11 73:18 78:11 136:24 137:2 138:7 200:7 221:25 228:4 228:6 236:15 241:1 241:2 243:25 247:24 259:1

**having**(29) 55:4 60:3 77:17 86:21 86:23 89:18 92:9 92:9 92:15 125:10 129:9 132:20 201:8 203:1 205:20 211:20 215:15 222:15 242:21 262:22 276:22 278:11 289:10 293:20 296:15 297:16 300:10 305:12 305:12

**hazeltine**(2) 4:8 4:9
**hazy**(1) 195:15
**hbk**(1) 6:1
**head**(3) 87:23 202:9 298:16
**headed**(1) 86:24
**heading**(2) 196:15 196:16
**headings**(1) 164:12
**heads**(1) 27:1
**healthy**(1) 212:15
**hear**(19) 11:8 11:9 12:2 12:3 12:22 12:25 41:15 41:16 83:20 84:3 84:23 157:13 174:5 180:19 186:19 195:19 256:16 256:18 305:7
**heard**(34) 14:10 22:2 43:13 44:10 86:23 97:14 130:7 154:14 157:18 168:19 184:6 184:21 185:9 186:7 186:22 187:1 187:5 188:1 193:17 195:17 197:4 197:21 212:3 212:17 214:1 214:2 216:16 223:19 230:4 245:13 272:24 302:15 304:19 305:16
**hearing**(22) 15:25 44:21 76:3 84:7 84:8 84:11 96:25 135:8 169:4 186:12 194:18 198:6 212:18 216:20 217:10 254:19 256:9 279:18 280:22 303:13 308:2 308:6
**hearings**(4) 43:25 99:10 201:9 287:15
**hearsay**(9) 19:7 43:2 46:6 65:16 66:11 82:20 82:23 168:13 168:21
**heavily**(3) 40:12 223:6 270:13
**hedge**(12) 23:8 171:5 172:3 172:7 172:7 172:8 172:10 182:22 209:14 253:17 253:21 253:25

**have**(188) 204:21 206:3 206:3 206:5 206:23 207:8 207:13 208:4 208:16 209:21 209:24 210:19 210:21 211:3 211:6 211:16 211:23 212:17 212:21 212:25 213:23 215:6 216:1 216:1 216:18 216:23 217:8 217:9 217:10 217:10 217:11 217:17 217:18 217:25 218:1 218:4 218:25 219:2 219:10 220:20 221:4 221:14 222:1 222:10 222:11 222:16 222:18 222:21 223:20 224:19 226:1 226:2 226:13 229:8 229:9 229:13 229:16 229:25 230:5 233:17 234:3 235:6 235:16 238:1 239:2 240:13 240:13 241:15 241:16 244:16 244:18 244:23 244:25 245:2 245:14 245:16 245:20 245:23 247:7 247:8 248:19 247:20 247:22 248:7 248:16 248:18 248:19 248:20 248:21 248:21 248:23 249:16 250:3 250:5 251:14 251:16 252:3 252:22 256:9 256:18 262:22 258:22 260:7 260:8 260:21 262:4 262:13 263:2 263:8 264:2 264:25 266:8 266:15 268:1 268:1 269:2 270:6 271:12 271:12 271:23 274:10 274:18 274:25 275:10 275:18 276:8 278:7 278:17 279:2 279:12 279:17 281:9 281:16 281:21 282:13 284:11 285:17 285:20 286:4 286:21 287:4 288:19 288:22 288:23 288:24 289:2 291:4 291:22 293:15 294:14 294:15 294:23 296:15 297:18 298:23 299:2 299:8 299:15 300:3 300:3 300:8 300:10 301:8 301:18 301:19 302:3 303:9 303:14 303:20 304:6 305:5 305:25 307:21 307:24

**heels**(1) 290:17
**heiligman**(1) 6:42
**held**(9) 18:3 202:21 220:24 242:5 243:7 282:9 283:15 284:18 290:1

**help**(12) 40:19 40:22 41:8 71:1 80:4 199:24 221:6 225:18 225:18 244:10 290:25 298:21
**helped**(1) 40:4
**helpful**(4) 13:4 43:12 270:10 302:22
**helps**(2) 40:21 255:11
**her**(2) 65:16 213:13
**hercules**(1) 3:4
**here**(126) 10:18 13:25 14:13 14:22 15:10 22:8 23:20 23:20 28:17 31:14 33:25 44:4 53:17 72:23 80:3 92:16 93:14 93:25 103:23 104:7 105:14 106:3 107:13 107:24 108:16 110:12 110:24 111:25 114:1 114:6 115:17 115:25 117:5 120:4 120:19 120:23 120:24 120:24 136:1 138:24 139:22 141:12 141:15 141:21 142:7 145:2 154:10 156:22 160:18 164:21 167:24 169:11 169:15 169:20 174:9 175:5 176:25 177:19 181:15 182:7 182:14 182:20 187:6 187:14 188:2 194:1 194:19 196:7 199:11 200:10 200:13 202:19 204:5 206:19 211:17 213:20 214:9 217:17 218:24 220:3 222:14 223:18 224:6 227:3 229:1 229:3 229:19 230:22 231:6 232:17 232:22 242:21 243:14 248:3 248:10 248:23 249:1 249:8 249:16 252:14 258:21 258:21 259:2 261:7 264:7 264:12 264:24 267:13 267:15 271:5 272:7 278:5 282:18 283:11 287:1 288:24 291:24 292:6 292:12 293:15 297:1 297:23 298:6 298:10 298:12 306:10

**here's**(6) 204:3 239:7 283:9 287:3 288:11 301:23

**herring**(1) 291:21
**herrings**(1) 291:22
**hey**(3) 147:4 263:7 302:1
**he'd**(2) 10:21 45:20
**he's**(19) 17:1 29:13 29:15 43:3 46:4 65:17 66:1 70:22 92:1 127:7 128:17 223:25 226:15 229:1 229:2 232:11 233:22 250:24 269:2
**high**(18) 34:3 110:15 111:12 148:2 149:2 150:4 150:25 151:3 151:5 151:20 153:1 153:16 160:12 172:2 232:9 232:11 238:18 309:37
**high-yield**(1) 233:22
**higher**(8) 106:13 123:16 140:25 151:2 153:12 200:24 238:14 241:13

**highlights**(1) 225:21
**highly**(2) 50:9 281:4
**highway**(1) 298:17
**him**(6) 17:11 67:2 80:4 168:15 199:2
**hindsight**(2) 142:9 145:7
**hire**(1) 33:19
**hired**(6) 33:24 59:12 59:17 62:11 62:20 63:15

**hires**(1) 62:15
**hiring**(4) 60:23 61:11 61:16 63:23
**hirings**(1) 33:14
**his**(50) 10:20 10:20 10:22 17:1 17:2 24:14 43:8 43:12 47:25 65:17 66:2 66:3 66:3 72:12 83:10 83:12 83:13 86:8 91:19 97:1 114:17 168:15 175:18 198:14 203:23 204:3 206:14 206:15 207:3 213:13 214:23 223:24 224:1 243:3 243:10 245:19 249:2 250:18 251:13 277:2 280:3 280:4 280:8 280:13 280:16 280:18 280:18 292:3 302:20 302:25 304:15

| Word | Page:Line |
|---|---|
| **history**(24) 262:6 262:20 263:5 280:13 280:16 280:17 282:2 284:14 286:20 287:10 287:19 287:21 287:22 288:1 288:2 288:4 288:12 289:3 289:5 289:12 289:13 290:10 290:11 290:14 | |
| **hit**(3) 133:16 177:12 208:14 | |
| **hold**(10) 36:21 188:12 202:12 203:2 203:5 203:19 206:20 222:25 302:6 303:7 | |
| **holders**(7) 115:20 115:20 130:20 141:3 173:16 228:21 260:1 | |
| **holding**(5) 159:15 159:15 203:5 230:15 242:4 | |
| **holdings**(1) 201:13 | |
| **hole**(3) 78:5 251:13 251:19 | |
| **hole"**(2) 257:11 265:11 | |
| **holiday**(1) 40:13 | |
| **home**(4) 286:12 297:8 297:8 308:5 | |
| **honor**(292) 10:5 10:11 11:3 11:13 12:5 12:24 16:19 17:10 18:15 19:5 19:22 21:25 22:4 22:20 24:5 24:9 28:8 29:12 29:20 30:1 37:16 37:24 39:10 40:20 43:1 43:7 43:13 44:13 45:7 45:20 46:2 47:11 47:15 47:19 48:4 48:5 49:11 50:7 53:4 62:24 64:14 65:8 65:15 65:24 66:6 67:2 68:18 71:8 74:8 74:12 74:16 76:24 81:20 81:23 81:25 82:4 82:18 84:20 84:25 85:4 85:13 86:3 87:3 87:8 87:14 91:14 91:21 91:23 92:12 92:17 92:22 94:8 96:7 98:10 107:5 112:15 114:16 124:13 124:18 127:1 127:7 128:18 129:14 134:9 151:11 152:2 162:19 163:4 163:15 164:2 167:12 168:12 170:3 171:12 171:15 172:5 172:25 174:19 175:20 175:24 176:15 179:7 179:12 179:18 179:22 179:24 181:2 181:14 182:11 182:23 183:7 183:14 183:22 184:3 185:6 185:22 186:10 186:11 186:19 187:10 187:17 187:19 189:3 190:1 190:15 191:17 191:24 198:9 198:16 199:5 200:2 200:20 200:25 201:18 203:10 203:14 204:11 205:7 205:16 205:19 205:22 206:17 210:5 210:6 210:21 210:25 211:7 211:10 211:11 211:16 211:22 211:23 213:21 213:25 214:3 214:5 214:16 215:25 217:4 217:11 218:24 219:3 219:18 220:6 220:23 222:5 222:21 222:25 223:5 223:18 224:6 224:7 225:1 225:7 228:24 229:9 231:5 236:16 237:4 237:9 239:15 240:2 240:10 240:23 241:15 241:18 241:22 242:4 243:19 243:22 246:4 246:12 246:16 246:21 247:1 249:7 249:20 249:25 250:5 251:15 251:25 252:2 252:23 253:2 253:6 253:11 254:3 254:13 254:18 255:2 255:3 256:5 258:12 259:6 259:10 259:11 259:18 260:2 260:11 261:10 261:23 262:25 268:17 269:8 270:11 270:16 270:18 270:22 271:10 271:24 272:4 273:1 273:3 273:3 273:10 273:18 273:22 274:8 274:15 274:17 274:19 274:24 274:24 275:5 275:13 275:16 275:19 275:20 276:13 276:13 276:25 277:6 278:4 278:6 278:21 279:18 280:22 281:22 281:23 282:3 286:14 287:7 290:21 290:24 291:13 293:6 294:16 295:2 295:15 295:17 295:18 295:22 297:18 297:20 302:5 302:14 302:21 304:19 306:5 306:15 306:16 306:20 307:9 307:16 307:25 | |
| **honorable**(1) 1:19 | |
| **honor's**(16) 12:15 12:16 84:6 84:8 84:14 190:4 190:7 232:3 266:14 269:19 271:16 272:15 274:11 279:10 286:23 289:25 | |
| **hoops**(2) 27:5 31:1 | |
| **hope**(11) 13:3 34:16 86:21 203:21 206:17 209:25 254:13 260:12 261:23 291:1 297:1 | |

| Word | Page:Line |
|---|---|
| **hopefully**(4) 28:14 28:14 264:10 264:11 | |
| **hopes**(1) 30:9 | |
| **horizon**(2) 238:20 238:20 | |
| **hostility**(2) 181:6 190:19 | |
| **hour**(3) 83:11 86:13 277:8 | |
| **hours**(3) 83:17 85:23 296:14 | |
| **how**(103) 11:10 14:23 16:20 18:3 18:5 30:21 23:14 23:14 23:14 26:22 28:23 33:1 39:22 45:14 50:10 61:10 65:17 69:24 71:17 74:14 79:3 81:8 83:17 83:22 88:3 88:13 88:16 93:25 95:23 96:5 109:14 109:22 116:11 117:7 117:10 118:2 118:9 121:5 122:10 125:18 127:22 128:23 130:21 133:13 145:20 145:21 153:20 155:22 166:11 169:7 177:3 192:25 198:18 200:14 201:19 202:22 205:15 212:20 213:19 214:24 215:6 215:23 216:17 216:24 225:14 225:17 227:9 231:23 233:25 235:16 236:2 236:3 237:2 237:2 237:8 237:9 246:3 252:12 252:20 253:9 254:9 258:18 259:24 263:4 264:6 264:13 266:8 266:9 266:15 266:20 267:15 269:16 275:17 284:4 286:20 290:7 290:18 293:19 294:13 300:4 304:11 305:22 | |
| **howard**(1) 5:4 | |
| **however**(5) 16:3 102:9 257:11 262:25 273:15 | |
| **how's**(1) 277:11 | |
| **huge**(5) 28:9 31:8 32:5 216:14 229:20 | |
| **hundred**(3) 201:25 212:15 215:8 | |
| **hundreds**(1) 196:6 | |
| **hurry**(1) 166:2 | |
| **hurt**(3) 41:8 41:10 232:24 | |
| **husbanding**(1) 208:21 | |
| **hyper**(1) 60:1 | |
| **hyperbolic**(1) 201:7 | |
| **hypothetical**(5) 106:6 106:7 155:25 232:4 238:22 | |
| **idea**(14) 138:6 150:5 152:10 179:11 183:15 202:7 206:18 216:2 240:5 268:13 270:13 286:8 296:16 297:17 | |
| **ideas**(1) 189:25 | |
| **identical**(5) 89:24 122:25 125:19 277:23 282:12 | |
| **identifiable**(4) 183:17 185:3 185:19 197:24 | |
| **identifiably**(1) 112:2 | |
| **identification**(18) 18:19 18:24 19:23 22:21 22:24 24:6 47:18 64:20 94:8 94:22 98:12 107:6 107:19 163:2 | |
| **identified**(2) 15:6 248:12 | |
| **identifies**(1) 19:16 | |
| **identify**(6) 27:22 36:7 39:17 50:6 50:25 105:9 | |
| **idiosyncratic**(1) 294:9 | |
| **idly**(1) 148:10 | |
| **ignore**(1) 17:5 | |
| **ignored**(1) 249:4 | |
| **ignores**(2) 38:16 284:7 | |
| **iii**(1) 7:3 | |
| **iling**(1) 105:12 | |
| **ill**(1) 10:21 | |
| **illegal**(1) 296:7 | |
| **illiquidity**(2) 178:11 178:15 | |
| **illustrate**(1) 104:20 | |
| **imagination**(1) 286:6 | |
| **imagine**(5) 196:6 244:18 283:23 286:11 306:5 | |
| **imagined**(1) 285:23 | |
| **imagine"**(1) 283:23 | |
| **imbedded**(1) 283:11 | |
| **immediate**(4) 15:23 16:13 104:1 205:10 | |
| **immediately**(2) 108:24 304:24 | |

| Word | Page:Line |
|---|---|
| **impact**(14) 12:16 21:14 31:6 41:25 47:2 77:21 78:2 89:9 135:15 170:25 174:17 195:4 226:19 294:19 | |
| **impact/harm**(1) 135:22 | |
| **impacted**(4) 20:24 21:24 26:23 33:1 | |
| **impacts**(1) 89:4 | |
| **impeach**(1) 288:1 | |
| **impediment**(1) 272:1 | |
| **implemented**(2) 222:12 228:9 | |
| **implication**(1) 295:7 | |
| **implied**(1) 48:3 | |
| **implying**(1) 177:5 | |
| **importance**(7) 79:3 190:23 191:5 271:2 291:12 291:13 291:16 | |
| **important**(14) 15:10 43:9 131:4 139:23 175:5 194:1 195:2 220:1 231:12 237:14 246:6 247:6 280:7 287:1 | |
| **importantly**(8) 158:13 231:20 260:2 262:16 263:14 287:24 297:6 297:9 | |
| **impose**(8) 195:23 196:22 197:13 210:19 227:16 250:14 252:17 307:10 | |
| **imposed**(8) 69:14 113:2 133:1 133:11 133:22 194:18 196:13 230:17 | |
| **imposing**(3) 191:8 193:23 210:17 | |
| **imposition**(1) 71:11 | |
| **impossible**(2) 31:4 245:25 | |
| **improper**(2) 271:3 296:8 | |
| **improved**(1) 26:13 | |
| **improvements**(1) 40:6 | |
| **in-circuit**(1) 264:22 | |
| **inaccurately**(1) 229:3 | |
| **inc**(2) 5:42 282:22 | |
| **incentive**(4) 32:22 33:11 61:21 69:7 | |
| **incentives**(2) 64:9 64:9 | |
| **inches**(1) 126:14 | |
| **inching**(1) 161:4 | |
| **inclination**(1) 252:14 | |
| **inclined**(6) 12:22 93:3 252:3 273:4 296:2 296:5 | |
| **include**(2) 76:2 76:6 | |
| **included**(1) 75:22 | |
| **including**(7) 23:8 29:21 80:15 91:16 253:18 272:3 297:13 | |
| **income**(2) 147:21 157:17 | |
| **inconsistent**(2) 216:3 216:5 | |
| **inconvenience**(1) 181:14 | |
| **inconveniences**(1) 181:10 | |
| **incorporate**(1) 123:20 | |
| **incorporated**(3) 68:22 131:9 259:13 | |
| **incorrect**(4) 83:20 120:17 120:18 247:9 | |
| **increase**(10) 37:11 38:20 52:8 54:6 54:15 67:12 67:21 80:23 81:2 141:4 | |
| **increased**(3) 38:4 54:3 101:18 | |
| **increasing**(1) 126:14 | |
| **incredible**(1) 30:25 | |
| **incredibly**(1) 246:6 | |
| **incremental**(17) 95:18 98:7 99:13 102:3 102:8 102:9 102:15 103:1 145:5 145:15 207:14 207:19 207:20 207:21 208:11 208:21 218:2 | |
| **incur**(5) 75:8 99:8 144:21 144:23 208:13 | |
| **incurred**(16) 95:12 95:13 96:1 96:16 96:21 97:5 97:13 97:15 99:20 102:10 102:24 142:23 144:14 145:6 146:15 217:25 | |
| **indeed**(10) 40:14 46:13 183:5 251:19 279:1 279:21 281:5 281:8 289:6 291:19 | |
| **indemnify**(1) 198:2 | |

| Word | Page:Line |
|---|---|
| **indemnities**(1) 228:23 | |
| **indenture**(3) 271:4 271:7 294:7 | |
| **indentured**(16) 187:4 188:21 197:18 198:12 199:6 204:16 211:2 227:3 228:16 228:18 228:22 242:11 242:25 243:6 270:20 279:19 | |
| **independent**(2) 45:17 282:11 | |
| **index**(19) 110:15 110:18 110:20 111:12 111:20 148:2 148:19 149:11 149:13 149:15 149:25 150:4 151:20 153:19 153:21 153:24 154:2 160:12 309:1 | |
| **indexes**(1) 153:16 | |
| **indicate**(6) 55:15 78:4 181:3 210:4 273:3 273:23 | |
| **indicated**(12) 26:14 74:6 90:13 106:17 112:19 124:5 126:18 128:1 174:4 180:1 276:5 307:19 | |
| **indicates**(6) 25:9 45:2 95:11 186:11 199:16 203:12 | |
| **indicating**(1) 277:22 | |
| **indication**(2) 128:8 169:17 | |
| **indices**(1) 119:11 | |
| **indifferent**(1) 138:20 | |
| **indiscernible**(23) 20:11 93:6 95:25 96:1 96:13 96:17 96:20 97:20 97:21 97:23 110:10 120:9 127:4 143:16 151:14 215:14 237:10 241:25 247:20 295:25 298:15 306:24 308:3 | |
| **indistinguishable**(2) 285:3 285:13 | |
| **individual**(1) 246:19 | |
| **individuals**(2) 32:1 61:19 | |
| **industrial**(1) 266:6 | |
| **industries**(2) 124:7 125:3 | |
| **industry**(8) 64:2 66:5 66:19 69:9 119:23 122:21 131:3 131:7 | |
| **industry"**(1) 186:19 | |
| **ineffective**(1) 208:3 | |
| **inevitable**(1) 126:24 | |
| **influenced**(1) 239:6 | |
| **influx**(1) 68:4 | |
| **inform**(2) 237:10 237:11 | |
| **information**(17) 28:6 42:14 42:20 42:23 56:10 56:14 60:4 72:10 78:23 96:13 172:10 213:23 214:1 237:24 238:6 238:9 249:1 | |
| **inherent**(2) 119:13 289:13 | |
| **initial**(3) 16:15 129:24 249:20 | |
| **initially**(2) 147:19 159:19 | |
| **initiatives**(1) 32:3 | |
| **inject**(1) 280:9 | |
| **injected**(1) 281:11 | |
| **injunction**(2) 44:2 193:9 | |
| **injure**(2) 14:19 14:21 | |
| **injury**(1) 14:23 | |
| **innuendo**(1) 214:3 | |
| **input**(4) 100:14 122:10 135:19 135:19 | |
| **inputs**(3) 122:9 122:12 123:4 | |
| **inquisitor**(1) 47:14 | |
| **insidious**(1) 29:2 | |
| **insofar**(1) 176:7 | |
| **installed**(1) 216:11 | |
| **instance**(7) 201:8 221:21 222:24 266:13 268:11 294:12 294:23 | |
| **instances**(4) 21:22 27:22 201:13 283:19 | |
| **instructions**(1) 28:15 | |
| **instrument**(2) 188:12 188:18 | |
| **instruments**(5) 125:20 149:3 178:21 188:2 219:9 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**insurance**(23) 120:2 120:3 138:10 140:6 140:12 141:8 141:9 141:12 141:15 141:17 141:20 215:23 237:17 237:19 237:20 238:1 238:2 238:5 238:21 238:24 239:4 239:21 282:11

**insure**(2) 140:2 244:17
**insuring**(1) 244:19
**intelligently**(1) 209:13
**intend**(4) 14:4 157:4 259:5 284:22
**intended**(6) 26:5 98:17 110:13 110:25 274:23 282:13

**intent**(2) 285:23 290:13
**intention**(2) 283:16 305:20
**interactions**(2) 100:8 100:11
**interest**(46) 54:13 54:16 58:1 59:11 78:7 85:20 108:14 109:11 117:10 117:14 157:16 157:23 159:5 170:9 170:9 173:18 173:19 185:8 185:10 206:25 212:16 222:4 222:14 222:15 222:24 223:2 224:4 232:16 232:20 232:22 232:23 233:14 236:12 236:19 237:2 246:15 246:18 246:23 260:20 265:11 265:12 267:12 267:19 267:22 268:15 270:11

**interested**(4) 6:49 8:12 14:20 14:21
**interesting**(4) 125:5 126:16 203:21 258:12
**interestingly**(1) 219:4
**interests**(10) 18:2 93:17 111:23 182:21 182:21 219:13 227:9 230:13 267:7 275:9

**interests."**(1) 240:19
**interest"**(2) 182:19 231:15
**interim**(5) 184:14 188:15 188:18 188:23 196:8

**interlocutory**(5) 181:18 181:23 258:6 258:7 273:6

**intermediate**(1) 294:25
**internal**(2) 100:21 182:22
**internally**(1) 41:14
**interplays**(2) 263:4 264:6
**interpret**(3) 131:25 165:18 277:21
**interpretation**(5) 259:17 276:14 276:17 287:5 301:8

**interpreted**(8) 261:24 266:12 266:12 267:15 277:15 283:20 300:5 300:6

**interpreting**(3) 282:2 286:21 288:15
**interprets**(1) 275:25
**interrelated**(1) 275:12
**interrupt**(1) 228:24
**intervals**(1) 104:21
**into**(60) 23:6 27:15 27:16 30:7 41:2 47:20 48:6 49:12 52:15 65:18 68:15 75:24 79:13 79:15 79:20 80:20 81:12 81:24 109:15 112:4 116:23 117:3 117:8 117:18 130:22 133:24 134:3 152:11 152:14 158:3 159:4 162:9 162:12 173:24 180:1 182:5 188:2 190:5 197:12 218:23 222:13 227:5 238:4 242:22 243:3 244:10 246:1 246:22 247:15 250:12 256:19 264:1 267:1 280:9 281:11 289:12 292:22 294:19 298:22 300:4

**intrinsic**(5) 159:22 161:17 177:9 188:3 188:15

**introduce**(2) 229:5 287:10
**introduced**(1) 280:14
**intuitive**(1) 106:15
**invariably**(1) 33:5
**invented**(3) 204:7 204:10 204:12
**invest**(8) 110:17 111:11 111:18 113:12 148:6 149:2 171:7 248:16

**invested**(5) 113:4 149:25 172:9 182:23 233:3

**investigate**(1) 134:25
**investigation**(1) 75:24
**investing**(6) 149:8 149:10 150:3 171:9 209:8 233:21

**investment**(26) 68:10 87:23 113:1 113:16 115:7 147:21 149:5 150:22 154:8 155:2 159:8 161:14 161:23 168:3 168:25 169:2 173:16 175:6 178:9 178:13 188:19 189:16 195:25 234:4 243:7 246:19

**investments**(10) 108:17 149:20 149:23 155:10 150:16 150:21 154:13 172:3 172:10 233:20

**investors**(3) 227:11 233:22 243:24
**investors'**(1) 242:1
**invitation**(1) 200:2
**invite**(1) 196:14
**invited**(1) 171:17
**involuntary**(2) 244:15 246:14
**involve**(2) 19:7 279:16
**involved**(12) 32:10 70:23 70:23 71:21 88:23 89:21 89:24 99:24 137:14 171:6 185:23 221:10

**involves**(8) 60:2 60:3 61:18 257:12 257:14 257:15 261:21 276:17

**involving**(3) 147:6 221:18 226:10
**ion**(1) 291:25
**ipo**(2) 185:15 185:18
**irrational**(2) 236:5 236:6
**irregardless**(1) 193:20
**irrelevance**(1) 292:20
**irrelevant**(2) 254:12 292:13
**irreparable**(16) 192:8 192:11 192:13 192:16 192:18 192:25 193:10 193:13 220:23 221:4 221:5 221:9 221:24 241:10 247:10 247:12

**irreparably**(1) 14:12
**irrespective**(2) 166:2 194:1
**isn't**(25) 37:2 60:13 67:8 69:5 69:16 72:8 72:13 75:7 81:16 114:24 156:21 161:24 174:15 177:22 202:9 214:11 217:11 217:19 231:19 232:1 248:14 257:19 267:13 284:6 296:16

**issuance**(7) 14:19 14:21 104:2 118:7 118:23 219:11 219:24

**issue**(61) 11:8 15:21 16:6 35:25 43:10 43:12 43:17 75:5 75:24 84:1 89:6 89:6 90:17 93:25 133:11 172:21 173:17 181:15 188:14 195:15 195:20 196:11 200:10 200:13 208:1 208:22 210:11 213:19 220:6 220:13 235:15 237:8 248:7 249:14 256:19 257:1 264:4 264:11 265:11 265:16 267:8 268:24 269:18 270:7 270:14 270:25 271:1 271:21 272:20 278:8 279:25 280:19 285:1 286:7 286:15 286:19 291:7 291:16 297:23 304:9 305:15

**issued**(25) 13:17 21:16 22:13 91:9 91:10 115:13 116:21 118:5 125:14 126:10 157:21 158:7 180:12 185:20 186:1 186:21 188:6 201:2 201:21 214:5 217:16 272:8 272:17 281:21 282:24

**issues**(35) 10:20 11:24 13:6 13:14 13:16 45:15 63:10 76:7 84:22 89:3 89:13 89:23 91:16 91:16 175:17 191:10 201:1 201:10 218:9 220:13 222:9 229:24 272:2 272:16 274:22 275:11 275:25 276:7 276:18 279:4 281:15 281:22 281:24 297:4 306:12

**item**(12) 20:11 31:21 34:20 36:7 53:10 55:22 99:16 115:7 116:9 117:19 156:23 303:6

**items**(5) 81:14 81:14 145:19 146:11 281:7
**its**(47) 13:12 14:2 16:10 34:8 39:23 44:17 50:10 51:11 59:13 62:12 75:23 81:8 89:4 100:12 101:25 115:12 115:15 116:15 125:14 130:17 133:16 144:23 154:13 154:21 156:2 161:18 202:15 205:8 208:15 213:11 221:19 235:25 251:6 259:16 260:18 262:18 272:12 283:5 285:7 289:11 292:21 295:4 296:25 299:2 303:12 303:12 304:25

**itself**(15) 84:10 123:5 192:7 197:23 198:19 256:20 257:2 259:9 271:17 271:20 273:13 273:21 273:22 284:20 287:14

**it's**(301) 11:11 18:6 19:6 21:15 22:7 22:18 23:22 25:19 27:19 28:24 29:2 29:17 29:18 30:2 32:7 33:13 34:1 34:12 35:3 35:5 35:6 35:8 38:4 39:18 40:10 40:13 41:12 42:3 42:5 42:21 43:9 46:2 46:11 50:9 50:17 50:19 55:4 55:17 56:4 56:7 57:17 58:9 61:12 61:20 62:7 62:11 63:25 66:9 66:10 66:11 68:4 72:13 73:16 74:20 78:8 79:5 79:5 80:2 82:21 85:19 85:20 90:12 93:13 96:13 97:11 100:21 102:14 103:21 105:23 106:13 109:17 111:11 113:9 116:5 122:2 125:11 125:11 126:7 126:15 126:24 127:12 127:19 129:15 130:17 130:18 131:3 132:2 132:19 133:14 134:4 135:14 136:10 138:15 139:23 140:23 143:14 150:2 150:6 152:8 153:9 153:24 153:25 154:8 156:15 156:20 156:25 157:10 158:7 160:7 160:11 161:1 161:13 161:22 162:16 163:17 163:23 163:25 165:15 165:17 166:3 168:18 168:20 168:20 168:21 168:21 168:22 169:8 172:5 172:6 174:19 175:3 176:23 177:10 178:6 178:8 178:10 179:13 181:7 182:13 183:7 183:8 187:18 190:8 193:17 193:22 194:19 195:13 197:25 198:22 199:19 201:1 201:22 202:13 202:14 202:21 204:8 204:9 204:10 207:23 208:22 209:11 209:12 209:16 209:20 209:24 209:25 212:15 212:20 212:20 214:19 215:7 216:25 217:2 217:20 218:15 218:15 218:16 219:1 219:6 221:6 221:13 223:13 225:4 225:13 226:5 226:17 226:18 227:24 228:2 228:4 231:18 231:19 231:22 232:10 232:11 232:19 233:11 233:15 233:16 233:17 234:8 235:5 235:9 236:1 236:14 236:14 236:20 236:21 236:22 237:2 237:13 237:23 239:6 239:6 240:12 240:21 240:23 241:5 241:6 242:25 243:12 243:15 244:24 245:14 247:18 247:19 247:20 248:3 248:19 250:10 253:16 254:16 254:24 255:15 255:18 256:18 256:19 256:20 256:25 257:1 257:2 257:13 257:14 258:7 258:12 259:25 260:24 261:14 261:16 262:10 262:11 262:19 264:16 265:9 265:22 266:3 266:7 268:24 269:19 271:1 272:9 273:6 276:3 277:24 279:6 280:7 282:20 282:22 282:23 283:25 284:10 285:16 286:6 287:2 287:3 287:17 288:4 288:7 288:8 288:9 288:10 288:10 289:3 289:7 290:6 291:3 291:8 291:21 296:7 296:16 296:17 297:17 299:4 299:7 299:13 300:15 301:3

**it's**(6) 302:5 302:8 303:6 304:22 305:20 307:20

**i'd**(46) 14:5 14:22 24:4 24:4 39:10 39:11 42:8 45:20 47:20 48:14 49:11 52:21 65:15 91:14 94:3 94:7 94:21 94:25 98:10 104:11 107:4 118:1 124:1 124:10 127:15 165:24 176:3 196:9 205:17 205:22 241:21 242:4 246:20 250:7 271:13 278:21 282:2 282:21 283:8 284:25 286:5 295:17 296:11 302:4 302:14 305:25

**i'll**(42) 11:9 19:10 44:11 46:9 48:11 48:13 77:4 81:6 96:8 114:19 128:21 129:16 168:17 168:23 171:10 172:25 174:9 179:20 181:9 184:21 189:2 200:11 205:18 205:25 208:7 211:6 215:22 216:12 216:15 216:18 229:8 229:11 237:13 247:2 272:25 280:12 284:15 287:13 293:21 302:16 303:7 306:14

**i'm**(142) 12:18 13:23 16:15 16:18 17:21 28:12 32:19 35:20 37:25 43:7 43:8 46:19 46:25 48:11 51:13 51:15 51:15 52:13 52:20 53:5 53:19 53:25 55:19 57:15 60:23 63:3 63:6 63:13 68:4 68:13 68:15 68:21 80:1 80:2 80:3 83:7 86:10 101:5 108:11 112:12 121:23 135:20 135:24 139:12 142:16 145:13 151:14 155:12 155:12 155:13 157:19 163:15 163:17 164:1 165:23 166:20 166:25 168:14 168:15 172:19 176:25 178:10 178:11 178:21 180:23 181:2 190:15 191:17 194:9 194:19 194:22 205:11 206:12 208:1 208:4 208:6 211:6 211:15 211:25 214:20 214:21 218:18 218:19 218:19 218:22 219:17 219:17 220:21 223:4 223:6 228:10 228:24 229:3 234:2 238:5 238:15 238:18 241:14 243:23 243:25 246:8 246:23 248:16 250:19 251:12 251:21 251:23 252:18 253:3 256:7 257:5 265:8 267:18 268:17 268:19 268:20 268:21 268:25 277:6 280:8 281:23 283:13 285:1 289:22 289:24 290:17 290:25 294:14 294:24 297:21 300:9 300:17 302:18 302:19 302:25 304:7 304:25 306:9 307:22 307:23

**i've**(29) 13:18 14:10 16:18 42:3 50:4 63:3 64:17 88:18 91:6 98:21 115:1 135:17 154:14 166:11 214:1 218:8 218:9 225:13 226:6 230:25 243:16 269:1 269:3 289:17 291:9 295:16 297:10 297:13 297:17

**james**(4) 1:24 1:29 2:7 3:25
**jane**(1) 5:47
**january**(2) 272:4 274:5
**jason**(1) 7:38
**jeffrey**(1) 1:28
**jenner**(1) 5:31
**jeopardized**(1) 36:8
**jessica**(1) 4:29
**jim**(4) 10:5 87:10 247:1 297:20
**job**(9) 33:4 85:2 130:17 224:16 224:16 226:15 230:23 233:5 233:5

**john**(1) 7:13
**johnson's**(1) 221:6
**johnston**(1) 2:7
**join**(4) 211:3 270:23 271:18 271:19
**joinder**(1) 211:5
**joined**(2) 60:24 88:10
**joining**(2) 88:6 88:7
**joins**(1) 275:22
**joint**(2) 26:11 26:19
**jointly**(1) 1:6
**jones**(5) 2:5 6:6 6:32 7:46 7:47
**joshua**(2) 6:22 9:3
**jpmorgan**(2) 2:20 6:13
**judge**(20) 1:19 1:20 93:20 96:24 96:25 120:24 142:5 142:9 168:20 186:14 190:22 191:3 192:12 194:11 197:2 258:24 272:3 272:24 274:1 296:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**judges**(2) 182:15 296:18
**judge's**(1) 246:17
**judgment**(22) 212:13 212:15 212:18 212:24 213:5 213:6 213:13 219:9 219:10 228:9 231:2 231:21 232:4 233:11 233:12 240:19 240:20 250:22 250:22 251:5 252:4 255:6
**judgment."**(1) 215:2
**judgments**(1) 231:2
**judicial**(8) 103:24 181:6 228:3 228:14 236:18 271:25 279:10 294:11

**judicially**(1) 228:3
**judiciary**(1) 228:5
**july**(5) 73:7 128:9 129:4 181:16 289:7 288:10
**jump**(6) 27:5 256:20 284:1 287:3 287:18 288:10

**jumping**(2) 30:25 268:17
**jumps**(1) 200:6
**juncture**(3) 36:24 41:20 124:14
**june**(8) 53:15 53:17 53:17 53:19 54:6 57:17 64:25 219:1

**junior**(4) 292:3 292:18 301:13 301:16
**junk**(1) 233:3
**jurisdiction**(12) 180:15 196:20 252:5 256:16 256:18 256:22 256:25 257:4 257:17 258:20 258:22 274:2

**jurisdictional**(2) 180:4 271:11
**jurisdictionally**(1) 252:1
**jurisprudence**(1) 242:6
**jus**(1) 208:24
**just**(187) 11:10 11:21 15:11 16:22 20:5 21:19 25:3 25:7 25:20 27:12 27:19 30:9 31:9 31:11 34:6 34:24 35:5 35:6 35:19 36:1 36:2 36:5 39:17 40:24 41:16 42:3 44:6 45:5 50:8 51:17 57:8 60:23 63:21 66:10 68:3 69:7 69:8 70:5 71:19 73:16 74:16 78:20 81:23 82:9 83:14 83:15 83:16 85:25 86:7 86:10 90:21 99:1 105:9 105:14 108:13 116:6 122:5 123:10 124:1 125:14 128:4 129:3 130:13 130:18 135:12 135:20 135:24 140:16 143:4 147:4 147:5 147:7 148:10 148:19 152:2 152:8 154:8 155:24 156:11 156:19 157:10 160:13 160:21 161:1 161:2 162:3 162:4 162:11 162:19 166:1 168:13 169:20 171:15 173:22 176:6 176:14 176:18 176:24 177:24 178:3 180:3 181:9 183:15 189:14 191:8 192:24 197:21 200:12 202:9 203:4 205:17 205:17 205:17 205:23 206:21 207:15 209:16 211:7 214:25 216:16 218:23 219:20 219:21 220:9 221:21 224:1 225:12 226:22 229:4 229:8 230:2 236:13 236:14 238:10 238:20 238:21 239:8 239:17 241:5 242:8 243:12 244:18 244:24 245:7 246:7 246:22 249:9 249:19 251:25 253:3 255:13 255:18 257:5 258:4 260:4 265:8 266:22 268:24 272:12 272:25 273:10 276:5 278:1 278:4 278:16 278:22 285:12 287:13 287:21 289:1 290:6 291:12 295:1 295:16 296:12 296:19 298:22 298:24 299:11 299:11 299:15 300:7 301:17 304:10 304:12 304:21 307:23

**justice**(1) 191:3
**justify**(1) 250:17
**justin**(1) 9:9
**k-1**(1) 176:6
**k-2**(1) 176:8
**k-4**(3) 163:14 163:16 163:17 164:3
**k-7**(1) 176:8
**k-8**(2) 162:14 162:18
**k-n-e-p-p-e-r**(1) 288:8
**kalenchits**(1) 6:49
**karen**(1) 2:27
**kasowitz**(9) 2:42 8:2 12:6 86:6 91:22 134:13 198:10 253:4 256:6

**katharine**(1) 3:39
**katten**(1) 7:12
**kaye**(1) 5:46
**keep**(8) 36:1 85:13 114:14 141:4 217:25 238:23 247:2 302:25

**keeping**(1) 152:3
**keeps**(1) 302:24
**kelly**(2) 8:31 308:15
**kempner**(1) 6:17
**kenneth**(1) 6:26
**kerriann**(1) 4:27
**kevin**(1) 1:19
**key**(14) 31:24 32:1 34:2 64:9 184:7 184:9 184:10 184:17 199:11 254:3 254:4 254:4 286:25 290:4

**kick**(1) 258:22
**kind**(34) 23:14 23:22 28:21 29:2 34:5 34:5 68:4 117:16 171:5 199:16 201:15 207:18 211:23 213:15 214:3 215:1 222:5 223:7 226:5 228:15 229:16 233:21 233:21 239:25 243:17 244:15 245:24 246:13 266:4 282:20 298:20 300:12 300:14 304:16

**kinds**(8) 28:16 33:14 143:8 227:19 235:19 241:12 246:21 246:22

**king**(6) 2:16 2:31 2:37 3:33 3:41 4:31
**klauder**(1) 3:32
**knepper**(2) 288:8 297:14
**knew**(1) 194:2
**knock**(1) 222:13
**know**(204) 10:11 11:5 11:20 11:24 17:5 21:8 21:9 22:14 23:19 23:21 23:21 26:19 27:14 27:19 28:10 28:12 28:13 29:3 30:6 30:9 30:14 32:3 33:14 34:6 34:9 34:16 35:5 35:6 35:7 36:3 36:11 36:12 36:13 36:22 37:3 37:4 39:24 41:2 41:2 43:10 43:25 44:6 44:9 44:9 44:21 47:6 47:15 48:7 48:23 58:17 66:22 68:13 68:15 69:24 70:11 71:13 71:20 73:4 73:5 73:24 75:4 78:7 78:18 78:19 82:21 82:22 83:11 86:12 99:4 100:12 101:11 101:13 109:12 110:2 111:22 111:25 122:12 124:15 125:25 129:15 130:8 130:9 134:22 138:3 145:25 146:23 147:1 147:2 147:4 147:14 149:5 149:10 153:20 154:12 157:12 159:14 159:17 160:8 164:20 166:11 167:4 169:9 169:16 169:16 173:4 173:6 173:14 173:15 173:23 173:22 173:24 174:1 174:23 180:23 180:24 180:25 181:11 184:25 185:6 189:3 190:17 193:19 193:21 193:24 194:10 197:18 198:18 201:6 201:16 202:6 202:8 202:22 204:7 204:8 204:10 204:16 204:17 205:11 207:18 208:15 208:16 208:18 208:25 209:9 212:11 212:12 212:14 213:4 213:14 215:17 216:5 217:8 228:19 230:17 232:10 233:14 234:3 234:10 235:18 236:17 236:18 237:8 239:15 245:2 246:3 246:4 246:16 248:14 251:3 253:11 258:4 258:14 258:24 259:10 261:19 264:13 267:1 268:8 268:19 269:20 278:23 279:10 279:23 286:4 286:10 290:24 298:8 298:17 298:24 299:7 302:2 302:3 304:2 304:22

**knowing**(2) 244:6 244:21
**knowledge**(6) 43:21 65:17 66:4 71:3 165:19 172:18

**knowledgeable**(1) 66:1
**known**(2) 61:22 112:6
**knows**(10) 114:3 186:10 214:9 223:5 223:18 239:16 248:13 249:11 261:19 301:14
**korpurs**(1) 168:18

**korpus**(48) 3:47 86:3 86:4 86:6 91:22 91:22 92:7 92:12 127:1 129:14 134:12 134:13 136:15 148:25 151:10 151:13 151:23 151:25 152:6 152:10 152:13 152:17 152:19 152:21 162:3 162:7 162:8 162:10 168:12 169:14 169:15 170:3 170:16 171:8 171:11 171:12 172:5 172:22 174:4 175:22 176:9 176:14 176:17 176:20 176:22 179:4 309:8 309:10

**kovensky**(1) 6:10
**krakauer**(1) 4:25
**kurtz**(66) 10:18 72:11 86:8 87:11 87:13 87:20 91:15 91:24 94:5 94:8 94:9 94:11 94:22 94:23 98:11 98:13 104:12 104:13 107:5 107:7 112:10 124:11 124:13 124:19 127:16 127:17 134:15 152:14 152:19 152:20 152:22 162:7 162:24 163:1 163:2 166:9 184:7 187:5 189:17 196:2 205:21 203:21 205:21 206:1 206:3 206:6 206:7 206:24 207:4 207:15 209:12 214:22 215:4 218:4 232:9 232:10 233:19 236:19 237:12 238:5 238:16 238:25 246:2 248:11 309:7 309:28

**kurtz's**(2) 188:1 239:23
**label**(1) 255:12
**lacks**(1) 295:22
**ladies**(1) 13:13
**laid**(1) 276:7
**land**(1) 124:4
**landed**(3) 22:8 122:11 124:5
**landis**(2) 3:9 3:10
**landlords**(1) 263:7
**language**(5) 118:22 133:6 223:11 251:6 283:20

**language."**(1) 287:20
**large**(11) 13:15 24:22 25:8 55:23 118:20 154:10 159:12 173:15 173:23 180:5 236:2

**largely**(4) 159:1 159:2 159:6 244:3
**larger**(2) 26:20 239:20
**largest**(2) 25:7 56:8
**larzard**(1) 159:22
**lashko**(1) 7:21
**last**(35) 13:18 21:17 22:8 22:9 23:4 30:16 36:7 46:24 48:23 52:15 53:18 66:19 66:20 73:21 89:19 117:19 122:2 127:2 127:12 128:1 163:10 167:16 167:19 168:9 174:9 215:25 242:15 245:11 251:25 281:12 285:17 285:18 287:9 293:2 307:5

**lasts**(1) 305:24
**late**(5) 59:13 71:21 265:9 291:8 307:20
**later**(13) 137:8 170:9 180:20 183:7 186:17 190:10 200:21 214:21 250:7 277:21 290:9 296:11 304:5

**latest**(2) 214:1 284:2
**laughter**(21) 10:8 13:21 17:7 32:18 74:13 74:19 74:23 115:3 133:3 133:8 154:24 174:8 198:25 199:4 256:1 265:7 269:5 298:13 303:2 306:8 306:25

**launy**(2) 8:34 8:35
**laurie**(1) 3:3

**law**(85) 2:35 3:44 8:1 12:6 15:21 33:18 49:19 49:23 69:25 88:7 91:23 134:14 168:21 180:12 190:18 193:14 198:10 205:12 211:1 211:4 219:20 220:16 220:16 228:5 228:18 228:20 235:8 237:4 238:3 238:23 247:4 250:20 251:18 253:4 256:6 257:12 257:13 257:14 259:14 260:1 260:6 260:20 260:25 261:6 261:12 262:8 262:13 263:2 263:21 263:22 263:23 264:1 264:22 265:12 266:15 267:8 269:18 270:7 270:14 270:19 270:23 275:22 276:16 278:24 279:2 279:4 279:21 279:24 281:4 281:6 281:7 282:9 283:7 284:17 285:5 285:6 286:8 286:15 286:16 286:19 289:21 290:23 303:11 303:16 304:3

**law."**(2) 264:20 283:4 283:14 290:13
**laws**(1) 283:21
**lawyer**(7) 76:19 89:16 90:17 91:7 114:12 114:18 169:1

**lawyers**(6) 76:10 76:17 208:19 208:20 246:7 296:18
**lay**(1) 172:13
**layer**(1) 298:5
**laying**(1) 28:4
**layton**(1) 2:28
**lazard**(16) 52:6 52:15 71:1 71:3 87:21 87:22 88:3 88:6 88:7 88:10 114:13 122:11 161:12 168:3 204:7 205:21

**lazard's**(1) 88:1
**lead**(5) 12:24 47:5 88:1 182:2 194:25
**leading**(4) 96:7 128:17 133:10 170:16
**leap**(1) 234:23
**learn**(1) 225:19
**least**(20) 15:18 25:15 75:9 75:13 86:22 86:24 109:11 137:14 194:16 216:21 220:24 225:12 249:2 252:21 275:3 276:20 279:16 301:22 303:25 304:14

**leave**(7) 199:2 229:8 230:22 236:8 258:20 258:23 299:2
**leaves**(2) 14:25 300:22
**leaving**(1) 234:25
**leboeuf**(1) 6:21
**led**(4) 76:3 131:10 182:6 185:23
**ledger**(1) 89:1
**lee**(6) 6:28 67:24 69:5 77:14 82:16 309:26
**left**(10) 55:22 78:16 122:10 123:3 215:25 216:1 235:12 240:3 241:22 273:5

**left-hand**(2) 123:14 135:21
**leg**(4) 32:20 32:21 33:8 67:22
**legacy**(6) 57:25 58:1 58:12 58:24 77:25 78:6

**legal**(20) 13:8 37:17 37:22 37:25 70:25 71:18 92:5 168:13 182:25 184:13 220:11 221:15 259:18 259:18 259:24 264:4 264:16 281:9 281:15 302:24

**legally**(3) 218:7 221:14 264:9
**legion**(3) 203:10 266:4 287:14
**legislation**(1) 284:22
**legislative**(26) 262:5 262:18 262:19 262:20 263:5 263:5 280:13 280:16 280:17 282:1 284:14 286:20 287:10 287:19 287:21 287:22 288:1 288:2 288:3 288:12 289:3 289:5 289:11 289:13 290:10 290:11

**legislators**(1) 288:13
**legislature's**(1) 287:6
**legitimate**(1) 241:13
**legs**(4) 64:8 67:1 67:13 67:18

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **lemay**(26) 3:17 85:4 85:4 241:18 241:18 243:18 243:21 246:11 246:12 250:2 269:1 278:4 278:6 289:24 290:2 290:4 291:10 291:11 297:22 302:9 302:15 302:18 302:21 307:9 307:9 307:13 | | **likely**(6) 103:12 129:11 195:5 215:5 215:16 252:19 | | **look**(85) 22:19 23:24 24:14 25:23 33:24 55:2 55:9 58:20 65:7 65:9 65:12 69:3 71:5 72:6 89:9 89:13 94:3 94:17 97:23 98:6 103:15 103:17 104:10 105:11 105:19 110:4 116:8 119:10 121:21 122:9 127:12 134:1 142:24 143:12 149:11 150:7 150:10 151:10 160:12 160:20 161:22 162:4 163:1 164:12 167:16 178:1 180:6 180:14 180:19 182:10 190:23 192:18 195:17 196:13 196:17 200:6 202:4 207:15 212:6 212:7 215:2 215:19 218:1 219:21 225:16 235:9 238:13 242:15 253:12 254:7 254:10 257:5 257:10 260:17 263:8 265:14 265:17 266:24 267:20 275:14 284:5 285:24 290:5 301:1 302:4 | | **made**(37) 13:12 13:18 13:22 14:9 37:7 44:3 52:14 52:16 54:16 66:24 77:18 109:2 116:25 121:17 129:3 150:6 156:4 156:8 156:10 183:15 211:4 238:2 246:5 252:2 255:19 258:6 258:8 259:19 264:18 273:1 274:22 285:22 287:8 291:2 292:18 293:8 300:22 |
| **lend**(1) 268:6 | | **likes**(1) 100:14 | | | | **magnitude**(1) 185:2 |
| **lender**(6) 99:16 146:5 146:17 146:19 146:24 188:6 | | **liking**(1) 277:1 | | | | **main**(1) 127:25 |
| | | **limit**(4) 110:12 121:3 219:25 307:10 | | | | **maintain**(2) 43:22 46:6 |
| **lenders**(21) 2:5 7:42 98:3 98:22 99:12 99:22 102:11 143:22 147:4 159:14 173:3 184:19 187:7 187:25 189:17 202:21 202:23 202:24 207:25 208:1 259:21 | | **limited**(10) 22:1 99:22 103:4 121:11 183:18 184:11 200:17 200:17 264:12 305:10 | | **looked**(11) 70:13 122:20 125:23 128:10 145:8 160:4 243:12 247:4 263:11 300:7 302:3 | | **maintained**(1) 43:6 |
| | | **line**(10) 30:21 30:23 51:13 55:23 105:14 172:13 179:25 206:22 217:5 235:4 | | | | **major**(2) 20:7 213:18 |
| **lenders'**(2) 173:5 208:4 | | | | | | **majority**(2) 245:13 245:15 |
| **length**(7) 13:16 30:8 110:14 133:19 134:17 255:14 263:6 | | **link**(1) 142:12 | | **looking**(16) 51:15 66:9 93:12 114:3 121:18 124:5 142:10 145:6 152:22 163:20 167:17 237:10 238:5 289:8 303:20 304:17 | | **make**(60) 13:3 33:14 37:19 45:1 62:16 62:17 62:17 77:18 78:7 81:24 86:6 86:13 86:20 93:20 111:20 113:15 113:23 115:19 115:22 148:9 170:21 171:11 172:4 173:17 175:7 180:17 182:17 189:18 195:5 197:16 197:17 204:25 205:12 209:14 211:13 211:18 217:5 219:17 229:16 229:17 232:2 234:25 237:7 238:25 247:21 251:25 252:21 254:6 254:21 255:2 263:10 266:7 267:13 271:5 278:1 279:1 281:14 297:14 301:3 302:13 |
| | | **linked**(1) 62:6 | | | | |
| **lengthy**(2) 13:17 277:18 | | **liquid**(4) 188:1 202:7 202:7 203:18 | | | | |
| **leonard**(1) 1:34 | | **liquidate**(5) 159:8 178:8 178:13 186:14 205:4 | | **looks**(4) 67:11 80:2 128:25 149:5 | | **makers**(1) 242:21 |
| **leonardt**(1) 3:45 | | | | **los**(2) 2:9 79:17 | | **makes**(8) 12:14 23:20 31:3 185:13 221:20 257:8 278:13 280:12 |
| **less**(21) 23:21 25:10 25:10 70:17 70:19 79:20 84:21 85:8 85:10 102:17 111:6 121:10 123:17 130:11 133:12 195:5 208:23 230:8 232:1 248:21 248:21 | | **liquidation**(6) 119:1 119:3 119:4 119:5 215:20 243:14 | | **lose**(6) 33:16 113:19 113:22 148:20 179:3 202:15 | | |
| | | | | | | **making**(10) 17:1 17:6 85:20 170:20 177:7 178:11 178:21 197:2 259:3 272:1 |
| **let**(38) 11:10 12:2 12:3 13:6 14:11 14:18 15:16 16:2 31:9 32:1 48:10 82:1 83:18 84:23 96:8 112:9 127:9 128:19 129:24 147:11 170:20 172:14 174:21 174:25 176:6 176:20 184:23 189:1 190:13 191:11 191:23 193:15 215:20 227:2 232:6 261:5 261:6 306:11 | | **liquidity**(2) 178:6 178:24 | | **loses**(2) 40:5 228:7 | | **managed**(2) 38:15 227:9 |
| | | **list**(4) 29:22 99:1 146:12 309:37 | | **losing**(5) 114:15 151:6 193:12 204:15 212:23 | | **management**(22) 4:14 4:45 4:45 5:27 5:27 6:1 6:21 6:25 7:33 7:33 9:2 9:2 23:9 31:12 31:24 33:12 61:20 75:3 162:21 179:20 250:1 253:18 |
| | | **listed**(2) 145:14 153:1 | | | | |
| **letter**(5) 45:1 156:25 229:4 306:19 306:23 | | **listened**(1) 229:1 | | **loss**(55) 95:4 95:6 112:6 114:6 116:2 117:20 117:25 118:1 118:9 118:9 118:18 118:19 118:20 120:7 121:7 121:8 121:9 121:13 126:3 126:6 130:13 130:18 130:19 131:20 131:22 134:1 138:13 139:17 139:20 139:21 142:10 166:22 185:24 189:16 192:12 192:17 192:22 192:22 200:23 210:7 210:7 210:12 213:6 213:9 214:12 214:13 214:14 216:4 216:24 231:23 237:5 238:16 239:19 239:25 247:23 | | **managers**(5) 33:19 62:12 62:20 63:15 |
| **letters**(1) 228:22 | | **listening**(1) 203:16 | | | | **mandate**(2) 13:24 251:11 |
| **let's**(34) 12:11 12:20 27:12 82:1 83:14 83:15 83:16 84:3 116:6 134:17 137:8 142:21 147:4 151:10 155:2 156:21 156:23 159:7 160:17 181:13 185:21 189:8 194:24 208:10 217:3 223:12 227:2 228:15 237:15 238:25 239:13 255:21 265:14 265:15 | | **literal**(1) 118:22 | | | | **mandated**(3) 250:20 269:17 277:14 |
| | | **literally**(1) 266:3 | | | | **mandates**(1) 264:24 |
| | | **litigants**(2) 226:2 227:13 | | | | **mandatory**(6) 255:6 260:24 262:11 276:3 297:15 297:16 |
| | | **litigating**(1) 196:11 | | | | |
| | | **litigation**(5) 193:4 268:22 268:25 269:11 269:13 | | **losses**(7) 142:12 150:13 154:13 217:25 218:2 238:7 239:17 | | |
| **level**(13) 2:38 63:15 113:5 113:9 126:5 165:11 200:21 217:23 252:21 260:5 264:23 269:25 299:19 | | | | **lost**(19) 26:2 26:9 27:22 28:22 29:6 56:17 56:20 56:24 57:3 57:10 80:2 107:19 109:19 110:5 115:6 154:21 170:7 195:25 221:6 | | **maneuver**(1) 79:19 |
| | | **little**(40) 83:11 89:17 112:11 130:14 168:18 171:3 172:13 186:15 186:25 192:15 199:17 201:6 201:16 205:18 205:23 208:22 210:11 211:15 211:19 214:22 230:8 232:6 234:16 235:6 237:23 241:24 245:18 254:10 254:20 266:25 267:2 270:11 278:22 280:12 281:9 282:21 283:8 286:10 296:8 296:11 | | | | **manges**(1) 8:43 |
| **levels**(3) 62:4 205:10 258:23 | | | | | | **manifest**(1) 130:10 |
| **leverage**(1) 75:24 | | | | **lot**(20) 11:13 12:17 35:21 40:25 115:1 132:4 133:17 146:14 147:5 190:18 193:5 202:6 208:14 218:8 230:20 233:15 240:10 243:11 268:18 290:25 | | **manipulation**(1) 288:4 |
| **lexington**(1) 2:24 | | | | | | **manner**(5) 21:24 115:11 132:1 146:10 |
| **liang**(1) 6:26 | | **live**(2) 47:25 106:17 | | | | **many**(25) 20:16 27:4 28:7 36:16 41:22 86:13 88:13 88:16 91:6 91:7 99:20 110:2 111:22 111:22 114:13 114:22 159:14 166:11 172:11 172:11 208:20 217:1 284:21 303:17 307:5 |
| **lexis**(1) 218:17 | | **lives**(1) 61:19 | | | | |
| **libby**(1) 6:14 | | **llc**(5) 5:14 5:38 5:38 8:20 276:13 | | | | |
| **liberally**(1) 184:24 | | **llp**(19) 1:23 2:12 2:43 3:1 3:24 4:14 5:2 5:10 5:31 5:46 6:5 6:13 6:21 6:41 7:7 7:12 7:18 8:16 8:43 | | **lots**(2) 223:19 268:5 | | |
| **library**(1) 281:2 | | | | **loud**(2) 58:21 65:13 | | **marc**(2) 3:18 5:5 |
| **licenses**(1) 42:16 | | | | **low**(8) 97:8 125:1 150:18 232:11 236:12 236:20 237:22 239:6 | | **march**(1) 288:10 |
| **liebentritt**(1) 4:39 | | | | | | **maritime**(3) 262:2 284:17 284:19 |
| **life**(1) 208:17 | | **loaded**(2) 294:23 298:15 | | | | **mark**(7) 27:1 50:5 52:22 64:19 152:8 152:14 155:20 |
| **lifeblood**(1) 79:5 | | **loan**(5) 116:9 127:19 157:3 185:8 309:36 | | **low-risk**(1) 150:16 | | |
| **lifting**(1) 47:6 | | **local**(2) 60:1 60:1 | | **low-star**(1) 215:1 | | |
| **light**(4) 165:21 287:6 287:20 306:11 | | **lock**(4) 184:7 184:9 184:10 184:17 | | **lower**(10) 105:12 106:13 123:17 153:9 158:11 158:13 235:24 238:14 241:14 295:13 | | **marked**(40) 18:19 18:21 18:23 19:23 19:25 20:2 22:21 22:22 24:5 24:17 39:11 39:15 47:18 50:1 52:23 57:16 57:19 65:4 68:23 94:7 94:9 94:22 94:23 98:11 98:13 104:12 104:13 105:22 107:5 107:7 124:10 124:19 127:15 127:17 151:17 152:4 152:20 163:2 164:3 309:14 |
| **like**(93) 10:14 10:19 10:21 11:20 12:1 13:3 14:5 14:22 16:18 30:10 33:21 35:9 42:8 46:8 48:7 48:14 52:22 62:17 64:19 66:20 78:11 80:2 80:5 82:5 91:15 94:3 94:7 123:5 124:1 124:10 133:6 149:6 149:9 162:9 168:3 171:10 176:3 181:25 186:7 186:20 186:25 187:7 189:14 190:21 197:12 199:6 205:17 205:17 205:22 210:8 213:22 221:15 225:20 226:9 226:17 228:11 235:21 236:13 236:14 236:15 238:18 238:20 241:21 242:4 244:14 245:6 245:7 246:20 247:8 249:1 264:3 271:13 272:17 278:21 279:15 282:2 282:21 283:8 284:25 285:21 286:5 286:7 295:18 296:9 296:9 302:4 303:16 303:19 305:16 305:25 307:7 307:7 | | **lockbox**(1) 3:34 | | | | |
| | | **locked**(1) 232:18 | | | | |
| | | **long**(13) 18:3 18:5 31:2 88:3 167:23 194:13 214:15 226:10 233:25 241:20 250:3 252:12 252:20 | | **lots**(2) 223:19 268:5 | | |
| | | | | **luck**(5) 82:3 228:11 228:13 | | |
| | | **long-term**(7) 27:17 32:21 32:22 33:11 64:9 68:10 69:7 | | **luftglass**(1) 2:22 | | **market**(34) 1:12 3:5 3:11 3:48 4:10 25:24 27:14 28:19 28:19 33:16 10:16 125:15 126:20 126:22 140:10 157:5 159:9 159:16 161:10 161:18 170:1 175:12 177:2 177:22 188:1 202:7 202:8 203:9 203:12 203:17 203:18 230:3 238:6 244:10 |
| | | | | **lunch**(2) 85:18 85:22 | | |
| | | **longer**(13) 33:15 83:11 83:12 106:12 112:8 175:16 186:16 186:25 216:11 226:9 244:6 244:12 301:14 | | **luxury**(1) 241:23 | | |
| | | | | **lynch**(13) 3:1 5:46 110:15 110:18 111:12 111:20 148:2 148:19 148:21 149:24 149:25 150:3 151:20 | | |
| | | **longest**(1) 106:6 | | | | **market-to-market**(1) 25:23 |
| | | | | **madalyn**(1) 5:48 | | **market?"**(1) 254:6 |
| **likelihood**(4) 13:13 14:3 170:2 247:13 | | | | | | **marketing**(1) 27:14 |

| Word | Page:Line |
|---|---|

marketplace(9) 29:5 111:9 112:2 116:22 116:23 117:4 125:12 125:19 224:18

marketplaces(1) 27:10

markets(9) 40:25 60:1 60:1 118:17 119:11 125:21 266:8 291:18 301:20

market's(4) 114:1 161:25 254:7 267:23

marking(2) 68:21 152:4

marks(1) 258:17

marsal(2) 5:37 5:38

martin(1) 7:8

masked(1) 22:16

massachusetts(1) 196:19

masses(1) 31:10

master(1) 148:2

material(5) 197:21 214:18 293:5 293:9 293:15

materiality(1) 259:20 264:2 264:8 291:2 291:3

materially(4) 15:23 16:13 276:21 293:20

materials(1) 287:4

math(3) 35:5 209:19 249:2

matter(32) 10:10 16:24 36:3 69:25 92:11 92:14 112:19 146:21 186:22 209:16 211:7 213:5 231:22 247:23 248:14 251:18 252:7 257:15 258:21 259:25 260:19 262:8 273:13 273:14 273:21 286:15 288:6 294:12 296:12 299:11 307:2 308:11

matters(7) 99:22 100:4 131:25 144:8 180:1 252:6 281:8

matthew(3) 2:44 5:39 8:26

mauro(1) 5:43

maximum(11) 62:1 93:16 102:25 112:3 114:8 116:1 120:5 206:16 229:20 229:22 238:16

may(87) 11:4 15:23 17:10 17:12 17:13 17:14 18:4 19:6 19:9 29:24 43:13 43:14 43:18 44:14 45:1 46:9 52:17 52:19 57:13 57:14 62:24 63:1 64:14 65:21 68:18 68:20 77:17 77:17 80:4 82:2 85:12 86:3 86:5 87:8 87:14 87:16 91:13 92:21 113:24 121:7 121:9 127:5 130:13 137:11 138:11 138:25 139:1 139:14 141:9 141:23 142:13 143:5 146:1 151:11 151:12 162:6 176:14 176:17 176:17 179:8 182:15 183:5 194:2 210:13 218:19 225:25 229:14 229:14 237:10 242:17 244:23 251:7 251:20 271:5 272:4 279:9 282:24 282:24 288:7 288:19 302:3 302:15 302:16 304:19 306:19 306:22 307:6

maybe(18) 13:15 65:22 86:13 95:17 147:6 166:12 167:1 199:19 200:10 217:17 217:20 220:16 229:4 230:7 230:17 266:5 266:25 270:11

mayer(1) 3:39

mccarter(1) 3:38

mccloy(1) 7:28

mccormack(1) 5:6

mccormick(1) 7:10

mccutchen(1) 8:16

mcneill(1) 3:2

mdl-related(1) 101:22

meagher(1) 9:7

mean(48) 15:1 23:23 26:7 26:17 29:21 30:14 30:14 34:7 35:19 35:10 37:2 37:3 48:6 66:7 108:5 108:20 114:1 114:5 117:24 124:12 136:12 137:24 153:20 158:25 167:7 168:19 168:20 181:3 195:13 200:25 206:13 216:22 221:5 229:22 233:2 265:23 267:13 275:5 281:25 282:7 285:19 286:5 290:19 298:4 298:7 300:24 304:10 305:11

meaning(24) 92:11 259:16 261:2 261:20 262:13 262:22 262:22 263:3 263:14 263:23 264:5 280:24 280:24 282:14 284:11 284:13 285:15 286:2 290:12 297:12 299:20 299:23 301:18 301:19

meaningful(1) 231:11

meanings(1) 262:5

means(23) 45:6 45:18 46:1 46:6 112:2 191:17 229:16 233:18 240:18 240:19 240:20 240:23 240:25 261:20 283:6 284:3 284:4 285:19 286:7 290:17 293:3 299:25 300:16

meant(12) 28:11 31:21 164:4 255:19 263:20 278:23 278:24 280:1 282:6 284:10 286:11 295:12

measure(6) 164:24 200:6 215:18 215:19 217:23 239:5

measuring(1) 140:1

mechanics(2) 245:21 275:17

media(7) 18:2 20:16 32:23 42:15 44:17 79:17 221:11

median(3) 166:1 166:3 238:14

mediocre(1) 25:20

mediocrity(1) 31:11

medium(1) 104:21

medium-to-longer(1) 36:19

meet(5) 14:2 221:23 241:8 241:9 276:20

meeting(3) 21:2 21:10 41:9

meets(1) 66:7

mega(2) 185:21 186:8

meisel(1) 1:34

memorably(1) 292:6

memorandum(1) 181:20

memory(2) 59:2 220:10

men(1) 255:24

mendonce(1) 8:40

mention(4) 183:6 243:13 277:8 294:25

mentioned(15) 52:8 60:9 72:16 79:8 146:14 156:24 185:6 222:5 235:18 246:22 247:5 247:11 253:6 253:7 291:24

mentioning(1) 283:24

mere(3) 28:10 34:7 199:13

merely(4) 79:17 97:4 145:4 177:7

merit(1) 67:12

meritorious(1) 193:12

merits(4) 104:3 190:5 195:4 298:20

merrill(13) 3:1 5:46 110:15 110:18 111:12 111:20 148:2 148:19 148:21 149:24 149:25 150:3 151:20

mess(1) 293:23

message(1) 23:16

messy(1) 278:25

mester(1) 6:22

met(15) 16:4 62:4 75:1 76:19 221:25 225:8 241:7 263:16 263:17 263:17 277:3 285:10 293:1 300:20 301:5

metaphysics(1) 218:23

meter(1) 42:6

meters(1) 36:1

method(1) 138:10

methodologies(1) 169:9

methodology(15) 90:25 91:11 109:23 119:14 121:2 131:2 137:7 137:7 137:10 137:20 140:7 141:5 142:18 178:1 205:13

methods(1) 161:14

metro(1) 55:23

metropolitan(1) 25:9

metros/other(1) 24:23

mic(2) 37:19 112:11

michael(5) 2:21 4:41 5:7 8:17 8:31

mid-point(2) 53:15 54:3

middle(2) 200:21 237:13

midnight(3) 22:9 22:14 23:4

midpoints(1) 203:17

miff(1) 32:10

might(49) 22:2 41:1 41:21 44:10 66:15 68:16 72:17 73:13 83:25 91:10 97:13 105:19 113:19 114:3 117:9 117:11 132:6 166:6 167:1 167:1 169:18 169:22 170:11 179:11 180:10 180:11 181:14 182:6 187:14 193:23 196:11 199:17 212:8 215:24 217:14 221:12 223:1 223:11 223:12 226:22 226:25 227:20 227:20 231:7 241:15 245:8 260:14 279:1 307:20

millbank(1) 7:28

million(101) 35:3 35:6 35:7 35:8 62:1 75:19 95:20 95:23 96:12 96:13 96:14 96:14 96:18 97:5 97:25 98:3 102:16 102:17 102:18 102:19 102:20 103:1 103:3 103:5 107:15 107:17 109:20 109:22 110:24 111:7 115:8 116:11 117:7 117:13 117:22 118:19 119:24 120:7 120:22 121:1 121:8 121:10 123:7 123:23 126:8 126:13 131:11 133:14 135:16 136:4 136:6 136:6 137:6 137:6 139:18 139:19 139:20 139:20 142:2 142:20 143:18 143:19 145:4 146:15 154:15 154:18 156:12 156:14 185:7 185:17 186:4 187:6 189:12 193:2 206:16 206:18 206:22 206:23 207:1 207:2 207:3 207:5 207:7 207:8 207:10 207:11 207:12 207:13 207:16 207:17 208:9 208:10 208:12 208:23 209:1 209:1 209:4 209:5 209:6 209:18 230:7

millions(1) 253:22

mills(1) 4:27

mind(8) 34:18 36:10 169:2 195:1 242:21 291:8 292:8 297:24

minimum(2) 176:3 241:12

minority(4) 15:8 18:2 59:21 78:7

minuses(1) 153:6

minute(7) 112:10 176:19 184:23 185:22 189:1 190:13 216:15

minutes(11) 21:2 74:16 74:21 84:10 84:16 84:21 85:2 85:7 85:11 85:11 86:13

mip(3) 61:22 61:23 61:23

misapplication(1) 271:6

miscellaneous(1) 272:21

misleading(1) 22:15

misses(5) 38:12 38:12 38:20 111:17 113:14

missing(4) 32:21 32:21 139:22 218:19

misstating(1) 249:2

mistake(1) 164:2

mistaken(1) 251:14

mistakes(1) 14:9

misunderstand(1) 139:12

mitigate(2) 159:1 170:11

mitigated(2) 159:2 159:6

mitigating(2) 170:25 214:19

mix(1) 173:25

mixed(1) 220:16

mobil(1) 286:23

mobile(5) 280:11 286:25 287:1 287:14 288:16

model(5) 90:19 90:22 90:24 138:4 238:8

moderate(1) 239:13

mogul(1) 284:25

mohammad(1) 287:16

moment(11) 83:15 108:11 108:13 135:12 205:15 213:11 227:12 272:25 284:9 287:13 300:8

moments(1) 75:3

momentum(4) 21:18 41:13 223:25 223:25

monarch(2) 8:29 8:30

monday(3) 304:4 305:19 306:19

monetizing(1) 188:17

money(52) 71:17 107:25 108:4 109:14 112:6 113:12 113:19 113:22 113:23 114:14 120:8 141:24 141:25 142:7 145:5 148:20 150:3 151:6 154:21 154:25 155:1 170:14 170:21 172:1 184:15 189:13 193:5 196:8 197:19 202:16 209:8 216:10 216:11 221:21 231:21 232:13 232:13 232:16 232:18 234:9 236:25 242:1 247:21 247:23 247:24 248:16 249:19 250:22 251:2 251:4 251:6 263:11

monitoring(3) 99:25 100:7 146:7

montenegro(53) 2:45 29:10 29:17 37:16 37:21 47:23 49:13 49:18 49:19 49:22 49:25 50:3 50:21 50:24 52:17 52:20 52:25 53:7 57:13 57:15 57:20 62:24 63:2 63:8 63:9 64:14 64:17 64:20 64:21 64:24 65:2 65:5 65:9 65:11 65:24 66:13 66:16 66:17 67:2 67:6 67:7 68:18 68:21 68:24 71:9 74:7 77:13 81:23 82:5 82:7 82:11 82:25 309:4

month(15) 20:19 21:17 35:7 41:15 75:19 88:15 96:18 97:24 102:21 143:1 167:24 185:7 188:18 193:22 216:23

month-to-month(1) 41:23

monthly(3) 35:4 96:4 235:21

months(56) 21:8 30:4 34:15 35:6 41:21 41:23 41:24 51:9 61:3 96:16 102:21 104:4 105:8 105:17 106:24 107:11 107:12 107:16 114:10 135:4 135:9 135:13 136:1 136:2 139:1 143:4 143:5 145:24 146:2 146:8 167:20 169:11 183:18 188:19 188:20 194:19 197:3 200:10 205:4 205:5 206:11 206:12 207:17 207:18 207:22 207:23 208:13 210:14 216:20 216:21 217:6 217:12 233:24 233:25 248:1 285:18

moot(4) 193:6 219:17 273:7 305:13

mootness(10) 166:5 191:6 191:15 191:20 219:20 221:1 221:9 221:16 221:22 277:19

more(71) 12:14 13:4 13:5 16:3 26:21 27:10 34:14 34:15 44:6 46:8 47:6 59:25 74:5 84:9 85:6 89:17 102:16 102:17 104:4 106:19 111:5 123:16 130:14 130:14 149:9 151:5 153:25 154:14 154:17 154:19 154:20 158:13 160:7 167:23 179:4 180:20 182:11 183:11 186:10 189:12 206:16 211:6 211:15 214:21 215:21 215:21 215:23 217:1 218:9 218:10 230:7 232:11 233:13 236:21 238:22 239:25 243:19 252:19 255:16 266:25 267:12 273:21 276:4 279:7 280:12 286:3 286:12 287:24 291:6 307:15 307:20

morgan(3) 8:43 154:10 154:12

morning(17) 10:3 10:4 10:5 12:5 49:18 50:4 75:1 97:14 125:25 152:5 180:1 184:22 185:6 186:7 197:13 198:13 210:5

mortgage(1) 38:19

most(24) 31:23 40:7 40:8 40:9 40:10 41:18 106:16 118:2 119:9 119:24 119:25 160:4 160:21 214:5 233:9 260:2 268:18 279:3 279:10 287:14 288:11 289:15 297:5 297:9

mostly(1) 220:17

motion(40) 10:12 10:15 10:17 10:25 11:6 11:7 11:15 11:21 12:13 14:1 46:22 84:10 171:10 171:12 171:17 179:21 180:11 182:5 246:24 257:20 258:19 258:23 273:15 273:25 274:18 274:22 275:23 276:14 276:19 296:22 299:1 299:11 303:7 303:12 303:14 303:15 304:21 305:4 305:16 305:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **motions**(19) 10:12  10:12  11:14  11:19<br>11:19  16:17  16:20  18:18  50:11  179:12<br>198:15  198:15  211:13  258:25  259:1  279:19<br>303:9  306:1  306:2 | | **neither**(3) 177:17  261:4  266:16<br>**net**(1) 158:12<br>**never**(21) 21:21  57:2  57:6  57:8  76:19<br>88:18  114:25  131:24  133:6  136:16  137:4<br>137:10  137:10  204:21  231:1  247:4  247:11<br>251:14  263:19  273:12  288:2 | | **not**(301) 10:23  11:19  11:25  12:18  14:4<br>15:13  23:13  25:14  25:19  27:6  27:6  28:15<br>29:9  29:23  30:2  31:1  31:5  31:11  33:24<br>35:16  35:20  36:10  38:16  40:8  43:3<br>43:8  43:17  44:1  44:2  44:3  47:6  47:24<br>50:15  52:13  55:1  56:20  56:25  57:22  58:16<br>60:15  60:21  61:10  61:14  61:18  64:13  66:9<br>66:10  67:12  68:4  68:8  68:13  69:7  69:8<br>70:20  71:3  72:13  72:15  73:4  73:10  73:15<br>75:12  76:22  78:17  79:7  79:16  85:25  90:6<br>91:24  92:8  92:9  92:14  92:17  93:8  93:17<br>95:13  95:14  99:20  99:22  100:14  100:25<br>101:5  102:8  102:12  109:7  110:13  110:25<br>111:17  111:18  112:4  114:5  114:6  114:18<br>115:2  115:18  115:25  117:1  117:13  117:17<br>118:6  118:20  120:3  120:6  120:16  120:22<br>121:19  125:9  125:19  125:22  126:22  130:4<br>130:5  130:7  130:9  130:17  131:3  131:4<br>131:9  131:18  131:23  132:15  132:20  132:22<br>134:25  135:17  137:20  137:22  138:1<br>138:16  139:4  139:19  139:21  139:23  140:16<br>140:21  141:20  142:12  143:23  143:25<br>144:10  144:13  144:23  144:25  145:2  145:18<br>145:20  146:9  149:1  150:7  150:10  151:14<br>153:15  154:21  155:1  155:10  155:12  156:7<br>157:7  157:15  157:23  159:5  161:12  161:18<br>166:24  166:25  168:14  168:22  170:8  172:8<br>172:19  173:6  173:16  175:13  176:9  176:10<br>176:23  176:25  178:8  178:10  180:1  180:2<br>180:13  180:22  181:15  183:5  185:2  185:10<br>186:4  186:14  187:24  188:3  188:17  188:24<br>189:8  189:14  189:15  190:5  191:17  191:25<br>192:6  192:10  192:18  192:21  192:25  193:3<br>193:4  193:8  193:23  194:9  194:19  195:12<br>195:13  195:20  196:2  196:5  196:8  196:9<br>196:11  196:19  196:20  196:22  197:20  199:9<br>199:18  199:19  199:24  200:9  200:18<br>200:23  201:14  201:14  202:7  203:4  203:13<br>204:18  204:19  204:21  205:11  205:13<br>205:14  207:6  207:11  207:13  208:1  208:4<br>208:6  209:5  209:5  209:11  209:16  210:13<br>212:23  213:7  214:9  214:12  214:19  215:5<br>215:13  216:2  216:3  216:10  216:19  217:3<br>217:5  217:6  218:9  218:14  218:18  218:19<br>218:19  218:22  219:8  219:16  220:7  220:14<br>220:20  220:21  221:3  221:9  221:13  221:14<br>222:8  222:14  223:3  224:13  224:25  225:5<br>225:12  225:13  225:23  226:20  227:10<br>227:18  227:20  228:13  229:3  229:5  229:5<br>229:14  229:19  229:19 | | **note**(17) 24:4  50:8  126:16  155:16  157:21<br>157:22  158:6  158:7  164:24  203:22  203:22<br>240:10  260:1  284:16  284:20  284:25  295:1<br><br>**noteholder**(1) 245:17<br>**noteholders**(5) 109:3  109:16  169:13<br>235:18  245:15<br><br>**notes**(12) 116:21  116:21  116:23  116:24<br>117:3  162:4  171:4  171:7  189:6  193:3<br>245:14  292:9<br><br>**nothing**(25) 43:19  62:16  74:7  120:19<br>121:16  175:19  177:12  178:15  178:24  186:7<br>186:10  186:22  189:9  192:22  195:11<br>195:18  254:1  257:23  257:25  263:12  263:13<br>263:13  263:15  282:18  295:19<br><br>**nothing's**(1) 86:19<br><br>**notice**(14) 103:24  164:17  164:19  165:4<br>165:7  165:8  165:10  181:19  220:12  236:18<br>272:5  272:8  272:18  305:1<br><br>**noticed**(1) 10:7<br>**noting**(1) 283:19<br>**notion**(5) 11:10  46:10  242:21  277:12<br>**notwithstanding**(48) 259:17  261:2  261:15<br>261:16  261:24  262:4  263:3  263:14  263:23<br>264:5  270:15  279:23  279:25  280:3  280:21<br>280:24  281:1  281:2  281:25  282:3  282:6<br>283:15  283:17  283:20  284:3  284:14  284:20<br>285:16  286:1  286:3  286:11  286:13  286:15<br>288:25  289:16  290:6  290:8  290:16  290:19<br>293:3  297:12  299:20  299:25  300:2  300:6<br>300:14  300:21  300:23 |
| **movant**(1) 231:25<br>**movants**(11) 10:14  10:14  25:12  37:7  41:18<br>84:3  84:9  125:4  211:25  227:3  238:4<br><br>**move**(22) 10:19  16:16  16:20  46:19  47:20<br>50:7  81:24  82:6  82:7  127:1  155:2  156:21<br>172:25  174:9  175:22  175:23  206:22  229:11<br>255:21  255:23  265:8  305:3<br><br>**movements**(1) 187:14<br>**moving**(8) 36:16  47:17  60:23  99:8  147:16<br>173:7  218:9  273:7<br><br>**much**(44) 11:10  25:22  25:24  28:22  33:15<br>40:19  69:25  71:17  73:15  74:14  83:18<br>83:22  93:25  102:15  109:14  133:13  199:16<br>200:14  203:1  216:24  230:9  230:9  230:9<br>230:14  231:23  233:8  235:16  236:3  237:2<br>237:2  238:6  243:13  254:9  254:20  262:23<br>264:3  267:16  279:15  279:16  281:18  285:21<br>291:7  297:2  308:1<br><br>**muchin**(1) 7:12<br>**multiple**(5) 77:9  77:10  191:3  218:5  270:4<br>**multiplied**(4) 103:5  110:22  143:4  145:8<br>**multiply**(1) 96:4<br>**multiplying**(1) 144:15<br>**murky**(1) 289:12<br>**must**(23) 13:8  15:19  99:6  101:24  131:22<br>183:5  195:23  196:13  196:22  197:15  229:9<br>250:24  262:5  275:25  280:11  284:13  290:16<br>292:1  292:25  293:18  295:17  295:19<br>300:24<br><br>**mutual**(3) 246:12  272:25  274:4<br>**myers**(3) 5:22  6:5  6:31<br>**myself**(1) 298:3<br>**mystery**(1) 164:8<br>**nachman**(1) 7:34<br>**name**(3) 23:22  29:22  221:20<br>**named**(1) 67:11<br>**national**(2) 180:20  284:8<br>**natural**(1) 12:8<br>**nature**(4) 91:18  244:24  245:25  278:10<br>**ndas**(1) 28:8<br>**near**(2) 31:2  31:15<br>**necessarily**(10) 15:13  161:18  182:3  192:2<br>216:19  271:22  274:22  277:17  277:22<br>305:23<br><br>**necessary**(12) 79:22  82:21  187:25  204:20<br>214:12  231:19  232:1  240:21  276:6  302:5<br>302:5  302:8<br><br>**necessity**(1) 254:16<br>**need**(56) 13:5  14:8  15:13  32:2  32:5  33:4<br>33:15  33:17  37:18  62:17  65:22  74:15<br>78:24  91:17  100:10  100:19  142:16  146:25<br>168:16  171:20  172:13  173:23  176:16<br>176:17  176:17  176:19  180:2  193:18  194:17<br>196:4  203:25  204:2  204:3  240:14  246:1<br>252:10  253:3  257:7  260:21  260:22  264:14<br>264:14  266:7  268:8  269:21  269:22  278:4<br>281:13  286:12  288:15  291:9  291:23  296:9<br>296:11  304:10  307:14<br><br>**needed**(2) 280:15  290:25<br>**needn't**(1) 295:18<br>**needs**(6) 33:7  65:19  247:15  265:15  281:22<br>281:23<br><br>**negative**(4) 21:12  25:21  153:16  154:3<br>**negatively**(1) 21:24<br>**neglected**(1) 277:8<br>**negotiated**(1) 185:25<br>**negotiating**(1) 91:12 | | **nevertheless**(1) 220:9<br>**new**(40) 2:25  2:47  3:21  3:28  4:5  4:19<br>5:22  6:31  8:2  22:13  23:18  27:11  32:2  32:2<br>33:17  33:17  33:24  34:2  34:5  34:5  34:5<br>89:22  171:20  190:23  196:18  204:23  216:9<br>219:9  253:22  266:4  279:20  279:21  280:9<br>281:4  281:7  281:9  282:19  293:7  302:24<br>302:25<br><br>**newman**(4) 4:17  304:19  304:21  306:16<br>**news**(8) 7:46  18:1  25:8  25:9  190:14<br>219:14  219:16  255:16<br><br>**newspaper**(1) 32:7<br>**newspapers**(4) 24:23  27:13  55:24  56:8<br>**newswire**(1) 255:8<br>**next**(36) 12:3  12:22  19:10  83:9  87:1  87:11<br>88:15  100:18  114:2  114:10  115:7  115:12<br>118:16  121:14  139:1  145:24  146:1  146:7<br>156:10  156:23  183:18  193:22  193:22<br>193:22  200:9  205:4  207:22  207:22  208:13<br>217:8  218:2  220:23  223:4  230:1  252:10<br>302:7<br><br>**nexus**(2) 138:10  185:19<br>**nickel**(1) 215:13<br>**night**(16) 22:8  22:9  23:4  37:4  44:25  113:3<br>160:22  160:23  237:18  280:6  280:19  281:3<br>281:3  281:12  287:8  307:5<br><br>**night's**(1) 126:12<br>**nine**(3) 56:1  107:12  107:16<br>**nine-month**(1) 155:21<br>**nobody**(8) 111:20  200:13  205:3  214:9<br>249:11  291:18  291:19  301:25<br><br>**noise**(1) 22:17<br>**nolan**(1) 7:4<br>**nominal**(1) 187:17<br>**non**(4) 28:7  145:22  145:25  147:15<br>**non-appellant**(1) 118:8<br>**non-bankruptcy**(4) 283:14  285:5  285:6<br>290:13<br><br>**non-investment**(1) 111:18<br>**non-law**(1) 294:9<br>**non-movants**(1) 247:17<br>**non-moving**(3) 147:23  149:1  149:16<br>**non-operating**(1) 81:14<br>**non-ordinary**(1) 99:3<br>**non-taxpayer**(1) 222:22<br>**none**(6) 179:7  204:19  240:25  241:20<br>251:11  294:21<br><br>**noon**(1) 306:19<br>**nor**(6) 97:20  120:19  146:2  187:24  261:4<br>261:12<br><br>**nordoff**(1) 191:4<br>**norman**(1) 1:35<br>**north**(6) 2:16  2:31  2:37  3:5  3:41  161:1 | | | | **novel**(3) 136:7  136:13  204:23<br>**novo**(2) 190:7  220:21<br>**novod**(12) 4:3  210:25  211:1  211:10  270:18<br>270:19  274:8  274:11  274:15  275:5  275:16<br>275:19<br><br>**now**(169) 13:14  16:15  16:18  19:3  20:11<br>20:18  20:23  21:18  21:22  23:12  23:24  24:7<br>25:12  25:25  26:14  27:7  27:21  28:16  28:21<br>29:6  30:16  31:3  31:17  32:10  33:13  33:18<br>34:10  35:11  35:15  36:7  36:12  37:6  39:3<br>39:22  41:18  44:19  48:13  51:15  58:4  78:10<br>79:10  79:22  83:16  86:16  88:20  90:13  91:1<br>93:10  94:3  95:7  95:16  95:20  97:9  97:12<br>98:6  100:18  102:8  102:14  103:5  103:15<br>105:16  105:16  106:16  107:18  108:10<br>108:16  109:2  111:10  113:3  113:23  114:12<br>117:8  117:19  118:18  120:12  121:21  125:4<br>126:23  130:11  130:21  131:12  132:2  132:4<br>132:18  133:17  135:8  142:21  144:1  145:9<br>147:13  147:15  149:1  150:6  155:2  155:22<br>156:21  157:13  159:7  161:8  166:8  169:11<br>169:25  174:14  182:3  182:8  182:13  183:23<br>184:6  187:21  188:18  188:18  188:19  188:20<br>189:21  191:3  191:11  194:3  202:25  203:3<br>203:5  203:6  203:19  204:7  206:6  206:16<br>206:24  207:3  207:4  207:8  207:12  207:15<br>208:15  209:1  212:14  212:22  213:16  217:12<br>220:10  228:15  229:1  230:6  233:24  233:25<br>233:25  237:7  239:18  242:23  244:22  248:6<br>249:1  250:2  250:17  258:11  261:19  261:19<br>266:13  268:17  268:20  268:21  269:15  270:6<br>285:14  285:17  292:5  292:25  293:2  299:12  300:1<br>301:23  306:2<br><br>**nowhere**(1) 280:3 |
| | | | | **not**(151) 229:21  229:22  231:8  231:10<br>233:4  233:5  233:16  233:22  234:2  234:7<br>235:5  235:21  235:22  236:7  236:14  236:20<br>237:3  237:6  238:24  240:6  240:20  240:20<br>240:21  241:3  241:5  241:6  241:23  242:4<br>243:6  244:11  244:20  245:9  245:12  245:23<br>246:19  247:13  247:18  247:20  247:20<br>247:22  248:9  249:6  249:6  249:20  250:4<br>250:13  250:20  250:20  251:3  251:15  251:18<br>251:23  252:3  252:7  252:21  253:13  254:8<br>254:15  254:25  255:18  256:19  257:1  259:21<br>260:3  261:12  261:25  262:11  263:8  263:21<br>264:6  264:6  264:7  264:16  265:14  265:22<br>265:23  266:18  266:23  268:3  268:10  268:24<br>269:2  269:4  270:1  270:1  270:2  271:5<br>271:8  271:21  272:2  273:13  273:15  274:15<br>274:18  274:22  276:3  276:13  276:15  277:15<br>278:10  278:18  278:24  279:11  280:8<br>280:24  283:6  284:21  284:23  286:8  286:17<br>287:24  288:13  288:15  288:17  289:10<br>289:24  292:6  292:9  292:9  292:20  292:21<br>292:25  293:16  293:24  294:3  294:7  294:10<br>295:11  295:20  295:21  296:5  296:12  296:18<br>297:21  298:18  299:4  300:21  301:2  301:15<br>301:15  301:24  302:3  302:5  303:5  303:6<br>304:8  305:22  305:23  306:2  306:4  306:23 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**number**(80) 27:5 36:2 54:19 56:20 65:7 70:2 70:18 95:20 95:24 95:25 97:25 99:3 101:4 101:5 101:10 101:11 101:19 102:4 102:5 102:21 105:15 110:8 110:10 110:21 110:23 116:19 116:19 117:7 117:22 123:19 123:22 126:8 126:13 136:3 136:5 143:18 144:16 145:8 156:13 156:22 158:24 163:12 167:20 173:13 187:14 187:17 198:14 203:14 204:14 204:14 205:1 205:11 206:13 207:16 207:17 208:15 209:12 213:20 213:21 215:22 229:21 233:19 234:18 237:20 238:15 238:18 239:24 240:4 240:4 245:15 246:3 248:13 253:7 254:3 257:10 264:4 272:10 272:21 272:22 272:24

**numbers**(14) 53:5 54:21 61:14 62:16 80:3 133:18 161:8 177:21 206:15 210:3 236:4 238:11 241:13 241:14

**numerous**(7) 62:12 62:19 62:23 63:14 63:20 79:1 283:19

**oaktree**(6) 6:20 6:25 23:8 150:7 230:10 253:18

**oath**(1) 66:11
**object**(3) 65:15 82:18 82:19
**objection**(51) 18:17 19:5 19:9 21:25 29:10 29:24 37:16 37:20 37:21 43:1 43:22 45:8 46:4 46:7 47:22 47:23 48:11 49:13 50:20 65:23 83:3 92:6 92:7 92:18 96:7 103:17 114:16 127:1 128:17 129:14 136:9 162:16 167:6 168:12 170:3 170:16 171:8 171:15 172:5 172:22 172:23 174:19 176:2 176:8 176:13 180:10 192:19 195:18 196:14 196:16 303:18

**objections**(8) 37:19 67:5 82:20 143:14 162:13 162:15 208:18 232:7

**objector**(1) 180:18
**obligated**(2) 255:1 255:1
**obligation**(2) 101:17 200:4
**obscene**(1) 35:10
**observation**(1) 293:8
**observe**(2) 108:13 211:13
**observed**(2) 143:10 143:19
**obstacle**(1) 31:8
**obstacles**(1) 28:16
**obtain**(2) 182:12 251:7
**obtained**(3) 75:10 75:14 183:16
**obvious**(5) 207:19 235:17 237:13 301:7 304:25

**obviously**(10) 11:3 12:23 179:24 243:23 270:23 270:24 271:1 271:20 292:6 305:14

**occasion**(2) 89:8 91:2
**occasionally**(2) 202:17 202:18
**occur**(29) 76:22 94:18 99:23 114:10 116:14 118:18 121:6 121:8 129:11 129:11 129:25 132:6 138:13 138:15 161:5 174:12 194:2 194:3 212:8 214:12 216:24 217:19 223:11 223:12 226:22 226:25 231:7 239:7 270:5

**occurred**(5) 54:24 59:17 60:6 60:10 69:7
**occurring**(1) 161:6
**occurs**(2) 174:16 239:19
**october**(5) 96:22 129:4 143:2 143:8 246:4
**odious**(1) 287:22
**off**(15) 21:12 22:16 30:15 50:18 140:4 156:20 160:7 207:12 208:24 208:25 244:8 245:8 296:10 298:20 303:7

**offensive**(1) 26:6
**offer**(10) 48:1 49:12 86:7 91:15 152:13 162:9 162:11 215:21 216:17 296:19

**offered**(6) 152:11 167:4 176:7 214:24 245:3 253:8

**offering**(3) 54:19 61:10 86:10
**offers**(1) 254:1
**offhand**(1) 159:1
**office**(6) 3:31 6:31 103:25 104:8 104:19 309:33

**officer**(6) 42:21 58:18 70:24 70:25 78:16 78:21

**officers**(2) 5:14 67:11
**official**(1) 5:1
**offset**(4) 40:4 158:7 158:20 170:12
**offsetting**(1) 102:1
**often**(3) 40:8 40:8 279:4
**okay**(155) 12:25 18:20 19:24 30:4 33:7 41:6 43:25 45:23 49:23 50:16 50:19 50:19 54:1 54:15 54:22 55:2 58:4 65:2 66:16 67:2 67:6 67:21 69:12 70:2 70:9 74:7 74:9 74:10 75:7 75:12 75:18 75:22 76:9 76:17 76:21 76:24 80:7 82:1 82:5 82:9 82:25 83:5 83:14 83:18 83:22 84:13 84:17 84:23 85:14 92:10 92:13 99:3 106:16 112:13 112:25 116:8 117:19 121:25 124:18 133:7 133:17 135:20 136:19 137:6 137:23 138:7 138:22 139:8 140:20 142:21 144:1 144:18 145:22 146:5 146:14 146:14 147:2 147:10 147:15 148:5 150:6 151:16 151:19 152:19 153:15 153:9 155:10 155:18 155:22 156:16 156:18 157:13 158:19 159:2 159:7 159:18 160:15 160:19 161:2 161:17 162:3 163:19 164:5 164:7 164:9 164:12 164:16 164:21 165:9 165:12 165:19 166:14 166:21 168:1 171:4 171:21 176:6 176:11 181:13 185:8 186:4 187:22 191:21 191:23 194:21 198:16 199:2 205:19 206:6 219:6 219:7 224:21 229:12 231:12 237:19 238:15 241:4 243:18 243:20 252:24 253:1 255:21 258:2 265:1 265:3 265:3 265:4 267:10 267:11 275:4 275:19 299:17 306:17 307:17 307:17

**oksana**(1) 7:21
**old**(1) 284:16
**olivia**(1) 5:43
**on.''**(1) 204:3
**once**(14) 35:11 70:6 70:17 119:10 201:5 226:13 237:3 250:4 251:15 260:5 260:23 270:4 282:20 292:6

**one**(187) 1:30 2:30 4:18 13:18 14:4 15:7 15:20 16:3 16:6 16:7 17:6 19:11 21:1 21:1 28:10 30:16 33:20 36:20 36:23 37:5 37:9 42:4 44:6 46:24 49:23 55:2 67:13 67:18 68:16 71:3 72:23 73:15 77:11 77:12 78:6 80:9 80:16 80:21 80:22 81:6 85:25 86:21 89:22 90:3 99:3 100:18 101:12 107:11 108:15 108:17 111:11 112:20 112:24 113:12 116:13 116:19 118:12 118:21 119:3 122:12 125:22 129:16 130:10 132:1 137:14 148:6 148:14 148:15 149:16 155:7 158:20 160:8 161:9 162:3 162:12 164:13 164:16 166:12 166:13 171:11 171:25 177:1 180:10 180:11 185:25 189:19 194:10 195:3 195:8 195:10 198:14 202:20 205:11 206:13 206:22 207:15 211:17 211:17 211:24 212:7 212:11 212:14 213:21 214:21 215:18 215:21 215:25 216:15 219:1 220:9 220:13 220:23 221:3 223:16 224:11 225:7 227:6 228:2 229:10 230:4 233:11 233:12 233:23 235:12 235:15 235:19 238:22 239:3 239:6 240:21 245:22 245:22 247:10 248:8 249:3 254:4 254:4 256:11 256:24 257:8 257:10 257:10 259:22 260:12 260:18 260:18 260:21 260:22 261:24 263:18 263:21 264:1 264:2 264:3 264:3 266:6 268:24 269:3 269:7 269:9 269:16 269:17 273:2 273:12 274:22 276:22 277:8 278:11 278:18 281:24 285:17 288:24 288:24 290:8 290:24 292:15 292:17 296:23 300:6 300:8 302:11 305:11

**one-page**(1) 81:7
**one-time**(2) 40:3 294:9
**one-year**(1) 123:21
**oneal**(1) 4:41
**ones**(8) 201:13 201:14 203:11 235:13 235:17 254:4 256:23 268:12

**onex**(2) 6:8 6:9
**one's**(2) 184:13 238:3
**ongoing**(4) 42:9 70:5 70:14 146:16
**only**(41) 29:9 30:2 36:19 41:19 71:20 109:10 112:6 114:17 121:18 135:4 143:17 162:10 162:11 165:17 166:13 176:7 176:17 181:17 183:7 190:4 196:4 200:18 202:11 207:11 209:4 212:20 214:15 234:14 235:13 260:21 260:22 260:22 262:17 263:18 263:19 280:14 287:5 288:24 292:21 300:24 302:23

**onto**(1) 203:5
**on''**(1) 204:4
**open**(2) 12:21 190:23
**open-ended**(1) 19:6
**opening**(6) 16:22 43:4 179:25 272:12 278:13 280:4

**operate**(6) 14:25 36:17 115:11 124:6 125:2 225:15

**operates**(2) 122:21 124:7
**operating**(27) 24:1 25:19 29:13 35:9 38:14 38:18 39:5 39:7 39:20 40:11 51:2 51:11 51:14 62:3 62:7 62:8 115:15 131:7 147:20 175:16 178:18 201:24 229:3 309:21 309:22

**operations**(4) 17:25 81:9 82:12 89:5
**operator**(1) 22:13
**opinion**(19) 34:11 49:5 77:20 78:2 92:8 129:10 129:19 181:20 186:11 190:7 214:5 214:6 218:16 218:25 243:15 246:4 272:6 272:16 278:18

**opinions**(7) 11:8 13:17 54:19 61:10 92:4 167:3 201:2

**opponents**(2) 84:11 211:17
**opportunities**(24) 26:2 26:7 26:8 26:10 26:14 26:15 26:19 26:24 27:7 27:8 27:9 27:14 27:22 28:1 28:10 29:6 34:14 42:6 56:17 56:21 56:24 57:3 57:11 189:17

**opportunity**(15) 26:18 28:23 33:6 33:16 57:5 89:12 107:20 109:19 110:5 113:15 113:23 115:7 181:24 227:10 240:24

**oppose**(1) 189:6
**opposed**(10) 122:12 135:19 160:8 160:13 200:5 255:13 259:23 264:9 268:12 268:15

**opposing**(2) 109:10 144:21
**opposite**(1) 185:9
**opposition**(1) 181:22
**optimum**(1) 202:15
**option**(17) 122:3 136:7 136:10 140:1 140:12 141:17 173:9 173:11 174:10 175:9 204:1 204:4 204:6 204:7 204:20 204:25 205:6

**options**(2) 68:10 90:25
**oral**(2) 243:10 279:21
**order**(65) 10:10 12:8 79:21 90:1 97:6 102:23 119:17 122:8 128:4 128:8 128:9 129:4 129:5 131:13 131:21 134:7 142:8 152:8 180:24 181:16 181:24 182:6 182:13 182:16 182:17 191:10 199:9 213:1 214:6 234:11 256:17 256:17 256:18 256:20 257:1 257:2 257:3 257:4 257:9 257:12 257:14 257:16 257:17 258:9 259:13 263:17 269:23 271:14 271:15 271:16 271:16 271:19 271:20 271:21 271:22 273:2 273:12 273:12 273:15 273:6 273:24 275:13 280:16 294:15 305:2 306:6

**ordered**(3) 92:15 251:2 305:18
**ordering**(1) 252:13
**orders**(12) 92:15 104:23 180:17 180:21 190:20 190:24 191:2 197:17 201:5 201:7 225:7 256:16

**ordinary**(9) 99:5 100:5 145:23 146:1 183:2 213:15 215:1 225:16 272:10

**oregon**(2) 282:11 284:8
**organization**(2) 79:2 215:20
**organizations**(2) 25:8 211:16
**original**(3) 107:18 279:19 280:22
**originally**(2) 48:2 286:22
**other**(112) 10:24 14:20 14:21 22:3 25:8 26:11 27:12 28:10 31:10 36:3 43:3 43:10 43:16 44:2 44:6 44:25 55:23 74:5 74:9 76:25 77:25 80:17 81:6 90:13 97:22 98:18 98:22 100:1 105:19 107:11 109:16 109:24 113:3 118:24 119:21 123:8 125:22 129:2 130:13 136:21 137:14 139:3 139:11 144:8 158:8 158:9 158:21 166:21 167:3 182:16 182:17 183:20 184:17 186:22 191:13 191:18 193:15 194:4 199:24 201:14 202:23 202:23 203:11 215:19 216:2 217:1 217:15 218:21 218:21 220:25 221:8 222:6 223:1 223:4 223:24 226:8 226:12 226:13 233:1 234:24 235:11 238:3 240:18 240:19 240:23 240:25 241:10 242:17 243:23 243:23 247:17 253:22 262:3 263:18 265:18 265:24 266:17 273:5 282:7 282:17 283:21 285:4 285:8 285:10 289:2 292:16 293:1 294:8 300:12 300:19 300:25 301:12

**others**(17) 11:4 11:7 11:9 23:9 28:9 34:14 41:23 42:13 84:1 84:1 110:4 144:24 194:9 224:22 235:13 253:19 254:22

**otherwise**(13) 44:5 108:3 117:14 132:22 182:8 227:15 256:23 283:4 283:14 285:5 287:7 301:4 307:4

**otherwise''**(1) 283:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**ought**(8) 16:22 50:12 213:2 228:16 243:5 282:16 290:8 294:23

**our**(132) 10:18 11:1 11:2 17:25 18:1 18:1 20:16 20:18 20:20 20:20 20:20 20:21 21:1 21:1 21:5 21:6 21:19 22:16 23:17 26:13 27:1 28:17 29:4 29:4 30:9 31:9 31:10 31:23 31:24 32:23 33:9 33:12 33:16 33:16 34:3 34:7 36:12 36:14 38:15 40:6 41:2 41:22 42:6 42:13 42:13 42:21 42:22 42:22 47:3 47:4 57:6 58:1 63:21 70:24 70:24 70:25 78:25 79:1 79:5 81:24 82:7 82:19 87:11 91:24 109:12 110:6 111:6 166:17 179:25 180:11 181:23 184:16 187:16 187:19 188:13 189:3 190:6 190:15 190:25 192:6 192:23 196:10 198:15 199:7 206:12 207:17 209:10 210:7 210:7 211:17 212:4 213:13 214:23 215:1 218:16 224:14 228:2 228:13 229:18 230:23 235:12 236:3 236:10 239:1 240:7 249:21 251:3 254:25 259:24 264:11 266:7 268:3 268:19 268:20 269:22 270:2 270:24 273:17 273:21 276:6 276:7 276:8 276:19 276:24 277:3 277:21 278:12 282:10 286:21 300:13 303:24 304:22

**ours**(2) 53:4 236:9

**ourselves**(6) 22:12 36:23 181:7 182:9 192:3 299:5

**out**(104) 14:7 15:11 21:18 21:21 23:3 23:16 28:4 30:17 31:10 33:18 36:24 40:4 42:6 44:5 53:14 58:21 65:13 66:10 66:23 68:3 79:20 93:15 98:1 101:22 101:25 109:2 113:24 115:23 123:6 126:22 133:17 137:6 138:24 144:11 156:2 156:11 158:8 158:9 165:20 165:23 166:4 170:15 174:2 175:6 175:10 176:5 181:25 182:4 188:7 188:7 188:20 196:5 198:17 199:6 199:12 200:7 200:21 201:5 202:9 204:24 206:21 207:1 207:2 208:9 209:8 212:6 212:17 212:22 216:24 217:1 220:12 223:10 226:20 227:25 228:6 232:16 232:19 233:5 234:1 236:3 236:24 244:21 245:19 246:5 246:7 249:16 250:7 268:6 271:6 274:13 275:12 275:18 276:7 280:3 282:19 285:25 288:5 291:8 298:5 301:6 301:9 301:12 304:2

**out-of-the-money**(1) 189:8

**outcome**(5) 44:20 188:25 189:21 251:9 279:13

**outline**(1) 291:9

**outset**(4) 84:7 84:8 191:24 256:8

**outside**(9) 32:6 62:15 79:23 99:4 100:5 131:7 147:24 175:8 224:4

**outsourcing**(1) 60:2

**over**(67) 20:17 22:10 27:1 36:19 60:23 62:22 66:19 66:20 73:4 73:17 78:5 79:1 86:16 86:25 96:1 101:14 114:2 114:10 115:12 118:16 120:21 121:14 131:24 138:25 145:23 146:1 146:7 153:23 156:10 159:21 169:11 180:15 187:7 193:7 201:1 207:21 207:22 208:13 209:17 212:8 220:5 221:21 222:13 226:1 226:6 229:15 230:4 230:4 233:9 234:8 235:22 235:22 251:2 252:5 255:24 257:1 257:1 257:2 257:4 257:17 292:3 292:4 294:7 302:7 304:8 305:22 306:12

**over-secure**(1) 233:8
**over-securing**(1) 233:7
**over-security**(1) 237:6
**over-the-limit**(1) 111:1
**overall**(4) 69:9 80:23 93:24 105:6
**overcome**(2) 21:13 290:11
**overlapping**(1) 276:18
**overlaps**(1) 223:5
**overriding**(2) 283:17 285:23
**overriding**(1) 223:22

**overrule**(1) 19:10
**overruled**(4) 29:24 92:19 129:18 136:11
**overseeing**(1) 17:25
**overview**(1) 180:3
**overwhelmingly**(1) 189:5
**owes**(1) 217:4
**own**(22) 23:8 36:17 44:17 69:5 100:12 107:25 144:23 149:2 178:19 218:20 243:3 253:18 253:23 260:18 273:8 273:9 289:11 291:8 295:4 296:25 299:2 304:15

**owned**(3) 132:15 189:22 221:18
**owner**(1) 237:17
**owners**(1) 253:21
**ownership**(2) 79:15 222:17
**owning**(2) 188:9 202:10
**owns**(1) 237:16
**o'clock**(1) 279:13
**o'melveny**(3) 5:22 6:5 6:31
**p.m**(6) 87:6 179:16 179:16 256:3 256:3 308:6

**p.r**(1) 225:18
**package**(6) 33:7 59:5 68:2 68:6 79:9
**packages**(2) 64:1 64:5
**page**(40) 20:11 24:15 24:21 25:4 26:1 48:23 53:3 53:8 53:23 53:23 57:23 58:19 63:4 65:6 65:7 65:8 65:9 68:25 72:4 72:6 78:20 80:7 80:12 81:13 90:21 98:25 103:17 104:16 122:2 122:6 122:7 122:10 123:8 123:13 124:8 164:7 218:3 218:16 283:10 307:10

**pages**(2) 290:9 307:12
**paid**(19) 101:22 143:20 155:19 156:17 157:23 158:6 170:9 170:22 170:23 170:25 173:18 173:19 187:7 206:25 208:3 215:13 232:22 236:11 292:11

**palatable**(1) 239:25
**palestinian**(1) 287:16
**panel**(1) 190:21
**panel's**(1) 191:5
**paper**(5) 190:25 218:16 243:10 276:8 302:25

**papers**(35) 37:6 41:18 44:25 59:14 97:12 99:9 120:12 135:3 166:8 181:22 184:24 189:22 190:15 193:18 202:20 214:24 236:16 240:17 251:3 268:19 268:19 268:20 271:13 273:9 273:10 273:22 276:7 276:24 277:3 282:10 288:19 296:15 301:25 301:25 302:22

**par**(3) 116:22 116:23 116:24
**parade**(2) 44:18 229:24
**paragraph**(17) 53:12 53:18 53:24 65:14 69:3 72:6 80:12 80:17 104:10 192:19 195:17 196:14 218:16 285:10 300:19 302:8

**paragraph''**(1) 300:21
**paralysis**(1) 232:24
**paramount**(1) 28:20
**parcel**(1) 208:6
**pardon**(1) 274:8
**parents**(1) 233:8
**parity**(4) 259:23 261:8 266:2 268:7
**park**(1) 4:18
**parke**(4) 3:16 5:2 85:5 278:6
**parks**(1) 237:18
**part**(29) 13:15 13:15 15:20 34:9 44:9 46:19 50:13 59:5 110:17 116:7 116:20 125:25 153:2 162:2 169:22 185:16 187:18 198:15 208:5 208:7 208:8 223:15 224:16 224:16 231:13 283:9 285:7 287:24 289:5

**particular**(12) 142:13 213:17 216:13 222:24 226:10 284:18 291:2 294:2 294:2 294:3 294:6 300:16

**particularly**(3) 203:11 210:10 245:23
**parties**(36) 13:3 14:20 14:21 14:22 15:25 36:20 43:16 73:2 76:7 83:18 83:23 109:11 121:4 147:6 165:20 166:2 169:12 181:5 182:19 182:21 182:24 182:25 183:12 183:13 184:13 187:9 188:22 204:18 217:24 231:15 251:1 266:17 275:4 275:10 275:12 292:2

**parties'**(2) 195:22 271:13
**partner**(1) 28:3
**partners**(11) 6:9 6:9 6:17 6:36 7:37 7:37 8:39 8:39 8:47 8:47 20:21

**partnerships**(1) 26:10
**parts**(5) 14:5 36:16 228:2 282:13 284:10 250:16 257:20 299:14 302:10

**parver**(1) 5:47
**passed**(2) 73:8 180:20
**passing**(1) 44:19
**past**(5) 45:11 46:14 153:16 153:23 156:21
**patented**(1) 204:8
**path**(1) 21:17
**pattern**(1) 279:6
**paul**(2) 7:17 8:3
**pause**(1) 110:21
**pay**(28) 38:19 76:10 76:18 99:11 101:23 101:25 115:16 119:16 120:21 132:20 132:23 151:5 156:2 156:11 157:16 157:23 161:9 161:13 170:14 193:3 208:4 222:23 227:6 227:11 232:20 239:21 251:2 251:5

**paying**(17) 38:16 54:12 71:6 75:13 77:9 81:3 117:9 117:14 117:14 132:22 146:19 159:5 170:9 177:23 185:10 207:24 207:24

**payment**(8) 102:2 103:3 119:23 121:17 141:13 142:8 213:5 215:12

**payments**(4) 54:13 54:16 100:24 232:17
**payout**(2) 62:1 62:5
**payouts**(1) 62:6
**pays**(2) 213:8 237:16
**pecuniary**(1) 182:21
**peer**(5) 24:22 25:6 25:11 204:21 309:20
**peers**(3) 32:3 64:4 204:21
**peg**(1) 7:48
**pendency**(6) 93:9 97:6 99:7 114:5 121:6 182:18

**pending**(21) 13:9 14:1 18:18 89:21 90:1 93:18 114:11 136:17 138:3 194:16 212:13 218:13 232:5 236:1 250:24 258:11 258:14 273:4 295:23 296:1 306:1

**pennsylvania**(1) 1:44
**pension**(5) 8:6 8:7 244:14 244:17 244:19
**people**(49) 11:14 11:17 21:6 22:3 31:10 32:5 33:25 33:25 34:15 41:21 42:13 43:3 61:19 71:15 79:1 79:1 85:23 109:15 113:12 161:9 161:12 200:10 212:18 214:1 216:10 216:10 224:7 224:8 224:13 224:14 225:5 225:18 226:7 226:11 230:12 232:21 232:23 233:20 242:7 242:9 243:23 243:23 246:10 249:23 255:23 269:23 271:7 279:1 292:11

**per**(6) 96:18 102:20 131:3 143:1 177:2 276:8

**per/pro**(1) 8:13
**perceived**(2) 21:16 22:2

**percent**(42) 51:12 51:17 51:21 51:24 52:3 52:4 56:1 88:25 89:1 110:20 115:15 115:17 117:6 122:17 122:17 122:22 123:15 123:16 123:19 123:22 124:2 124:4 124:5 124:23 124:25 125:1 134:4 148:15 149:22 152:23 153:4 154:4 155:24 156:2 156:15 158:14 159:19 161:1 177:4 201:25 212:15 233:24

**percentage**(1) 161:1
**percents**(1) 238:11
**perception**(1) 161:25
**perfect**(1) 188:3
**perfectly**(2) 290:25 291:4
**perform**(1) 53:21
**performance**(10) 24:1 26:13 38:23 39:20 51:8 51:14 62:3 64:2 64:8 77:14

**performed**(2) 52:6 110:2
**performing**(1) 55:23
**perhaps**(6) 26:12 41:1 129:2 217:18 242:12 243:25

**period**(59) 30:8 36:20 38:17 73:5 76:2 76:6 79:20 88:17 96:22 97:3 97:24 101:3 101:14 101:15 102:24 103:8 103:10 103:23 104:4 104:21 104:25 105:2 105:3 105:6 106:6 106:7 106:8 106:12 111:4 117:10 138:14 138:16 139:1 140:3 143:10 143:10 145:16 146:24 155:10 155:14 155:23 156:22 157:24 158:16 159:6 159:21 164:23 167:22 167:24 194:11 200:23 216:23 218:2 218:8 234:5 237:24 238:25 302:22 303:24

**periodic**(4) 57:16 64:25 82:15 309:24
**periods**(5) 64:6 75:23 105:20 105:25
**permanent**(2) 78:17 79:7
**permissible**(1) 296:13
**permit**(1) 16:5
**permitted**(1) 193:20
**permitting**(1) 259:15
**pernick**(1) 1:35
**person**(6) 43:21 78:22 138:3 214:10 223:17 230:11 230:11 230:14

**personal**(2) 245:19 257:19
**personally**(3) 22:2 70:3 70:20
**persons**(2) 222:16 223:4
**perspective**(2) 43:12 243:22
**pertaining**(1) 118:7
**perverse**(1) 242:6
**phenomenon**(1) 161:5
**philadelphia**(6) 22:9 190:14 219:14 219:16 286:4 298:20

**phones**(11) 189:6 193:3 211:3 228:17 270:21 271:1 271:2 271:2 271:7 292:8 295:6

**phones'**(1) 271:4 292:7
**phrase**(8) 117:24 231:14 263:24 281:17 283:5 299:23 300:3 300:4

**phrasing**(1) 36:11
**physically**(1) 221:14
**pick**(6) 233:19 234:2 252:19 265:20 286:8 296:9

**picked**(3) 209:12 236:4 238:19
**picking**(2) 77:7 160:5
**piece**(3) 47:3 85:6 221:17
**piecemeal**(2) 269:14 269:24
**pieces**(2) 36:22 195:10
**pile**(3) 34:15 173:24 243:17
**piling**(2) 204:6 204:6
**place**(17) 13:20 102:22 122:16 156:25 212:7 213:21 232:5 232:14 232:15 235:3 236:5 236:6 238:7 269:16 269:17 278:14 278:18

**places**(1) 212:6

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| plain(2) 288:15 290:11 | | portion(3) 40:9 179:11 247:12 | | preliminary(6) 10:10 13:2 14:16 14:20 86:22 193:9 | | problem(13) 10:16 28:5 33:13 50:11 65:16 85:16 175:13 221:10 221:10 225:8 225:19 228:4 306:4 | |

plain(2) 288:15 290:11
plaintiff(2) 213:12 213:12
plan(126) 14:15 18:17 36:15 37:10 38:5 39:4 39:5 39:8 39:20 39:23 39:25 40:2 40:6 40:16 40:17 41:2 41:9 41:14 47:14 50:10 51:7 51:12 51:18 51:25 51:25 61:21 61:22 61:23 69:1 72:17 73:1 73:13 76:14 81:8 82:14 90:1 91:13 101:20 101:23 102:1 103:16 108:8 111:24 115:14 118:5 118:13 118:14 123:2 125:24 126:4 126:18 156:6 159:22 161:7 173:4 173:14 177:2 177:19 177:20 177:23 178:17 181:21 182:4 182:6 182:8 183:12 184:19 185:16 186:9 189:5 189:7 189:12 189:21 189:23 189:24 192:5 192:14 193:16 193:24 194:13 194:15 202:25 203:9 208:3 208:3 209:22 214:18 215:8 215:11 222:11 236:23 244:5 244:8 244:17 245:14 245:16 249:15 259:21 261:13 261:21 262:14 263:16 263:17 263:25 264:22 266:1 271:23 273:1 273:6 285:6 285:10 285:11 292:10 292:14 292:23 292:24 292:25 293:14 293:15 299:22 300:20 300:20 305:4 305:18 305:21 309:21

plan."(1) 285:12
plans(5) 69:7 91:9 91:10 129:6 191:2
platform(1) 226:12
plausible(3) 288:21 288:22 288:24
play(6) 27:16 43:22 83:14 182:3 292:22 300:4

plays(1) 50:18
plaza(3) 2:38 3:4 3:20
please(9) 17:5 17:8 23:6 37:20 50:6 50:25 52:18 55:8 112:16

plenary(1) 180:15
plus(8) 63:22 88:4 116:6 117:6 153:7 173:21 207:10 212:15

pocket(2) 101:25 238:4
pockets(2) 236:8 243:3
podium(1) 241:23
point(115) 8:24 8:25 16:16 26:1 31:18 37:7 37:9 38:12 38:12 38:21 39:24 44:5 45:1 48:4 49:6 54:24 56:24 57:6 57:8 75:9 85:17 93:7 96:21 101:8 101:11 108:15 110:4 110:9 111:17 112:1 112:24 113:13 113:14 114:5 119:12 121:18 125:9 126:15 128:4 133:9 136:20 139:22 141:22 142:13 147:25 148:1 157:19 172:1 177:7 177:10 177:23 178:3 178:12 178:14 178:21 179:21 181:5 185:12 191:25 192:20 192:23 193:7 194:22 195:19 198:7 199:6 200:4 202:10 203:15 203:20 209:15 214:8 214:9 214:20 218:10 219:18 220:9 228:12 228:15 230:1 230:3 230:21 232:12 237:14 238:2 239:10 240:9 249:7 251:13 251:25 252:9 254:13 254:21 255:19 258:6 260:9 260:11 264:20 267:4 267:12 268:1 268:13 273:8 275:6 277:3 277:9 280:7 285:12 285:22 286:9 290:8 294:17 296:14 300:13 306:18

pointed(5) 30:17 33:18 199:12 200:7 271:6
pointing(1) 211:25
points(12) 48:7 110:11 112:20 112:21 124:16 124:22 139:25 211:18 223:8 240:22 299:15 309:35

poised(1) 188:11
policy(14) 15:4 138:10 140:12 141:8 141:9 141:12 141:15 141:17 216:13 238:21 241:9 257:16 288:3 295:13

political(2) 40:21 41:3
polk(2) 2:20 6:13
pool(1) 32:24
poor(1) 269:6
portfolio(2) 149:5 245:19

portion(3) 40:9 179:11 247:12
pose(2) 186:18 194:8
posed(1) 63:13
position(28) 17:20 17:24 18:3 71:6 79:4 86:22 87:22 87:25 90:3 90:8 90:11 100:10 169:14 182:3 187:12 187:16 187:20 192:4 197:19 203:8 239:9 247:25 248:9 271:24 276:16 296:24 297:3 304:22

positions(1) 78:11
positive(2) 38:14 154:4
possibilities(1) 260:16
possibility(9) 36:19 72:20 113:19 113:22 186:17 187:19 197:10 216:22 220:8

possible(17) 10:23 33:4 79:22 111:11 121:12 140:23 150:13 150:14 161:24 209:10 209:11 215:5 215:7 215:7 229:23 278:16 305:3
possibly(5) 31:25 145:25 205:3 223:12 238:6

post(11) 102:2 197:19 197:20 204:16 227:4 227:8 227:14 236:9 249:14 250:24 251:8
post-bankruptcy(5) 100:12 101:14 102:7 173:19 175:15
post-confirmation(1) 293:13
post-emergence(4) 70:10 97:20 143:15 178:19

post-judgment(1) 212:16
posted(2) 94:2 212:12
posting(2) 204:3 234:12
posture(1) 181:7
pot(3) 93:16 114:8 116:1
potential(56) 14:24 28:3 28:17 33:6 62:5 91:12 93:7 95:4 96:15 105:24 110:11 118:1 120:15 130:3 130:5 130:8 130:22 131:8 131:14 131:23 132:3 132:3 132:4 132:6 132:9 132:11 134:1 139:7 139:8 139:17 140:13 141:18 153:12 156:24 175:4 188:9 190:22 192:8 192:22 193:10 212:5 212:8 212:23 214:13 215:16 216:4 218:14 219:5 226:22 226:24 229:13 229:13 230:7 238:7 249:24 277:18

potentially(2) 31:15 191:19
potentials(1) 229:23
potter(1) 3:1
powerful(1) 284:21
ppearances(2) 1:22 2:1
practical(1) 297:23
practice(1) 114:13
practiced(1) 88:7
pre-emergence(1) 70:12
precedence."(1) 284:22
precedent(2) 256:15 289:4
precedents(2) 181:4 192:24
precipous(1) 125:16
precise(2) 212:24 281:17
precisely(1) 235:16
precision(1) 114:6
preclude(1) 188:17
precludes(1) 197:8
predicated(1) 209:7
predict(7) 40:14 93:13 121:19 145:2 146:9 224:8 231:23

predictability(1) 266:8
predicted(2) 41:4 41:4
predictor(1) 69:21
preempt(1) 290:13
preemption(1) 284:19
preempts(1) 283:7
preference(1) 143:13
prejudicing(1) 184:20

preliminary(6) 10:10 13:2 14:16 14:20 86:22 193:9

premature(1) 181:21
prematurely(2) 185:14 185:18
premise(2) 227:18 227:19
premised(2) 170:13 173:15
premium(6) 237:19 237:20 237:21 239:1 239:2 239:2

preparation(1) 100:18
preparations(1) 100:22
prepared(9) 16:16 18:12 94:15 110:19 135:7 188:22 198:2 273:25 275:7

preparing(3) 42:14 99:8 132:4
presence(1) 10:20
present(7) 43:3 111:7 179:20 186:23 187:2 194:5 250:6

presentation(7) 10:10 11:25 13:4 198:13 198:14 250:4 250:18

presentations(1) 14:6
presented(11) 47:25 172:17 173:13 182:8 194:4 198:6 201:10 250:6 261:7 270:23 298:9
preserve(1) 28:17
president(1) 17:21
presidential(1) 40:23
press(9) 12:3 22:13 23:3 23:5 225:10 225:11 253:5 253:13 309:19

presses(1) 30:15
pressing(1) 303:6
prestige(1) 19:6
presumably(1) 217:23
presume(1) 11:22
presumption(3) 190:8 282:12 282:18
pretty(13) 69:20 153:19 153:20 232:11 235:10 237:22 262:23 279:7 280:2 281:18 282:14 291:7 293:23
prevail(2) 93:19 209:25
prevailed(1) 249:15
prevailing(3) 220:8 222:11 247:13
prevent(2) 191:1 221:22
prevented(1) 31:15
prevents(1) 73:2
previously(2) 43:5 220:24
price(29) 29:4 122:25 123:2 126:3 126:12 126:13 126:16 126:25 128:2 129:20 140:5 159:11 161:6 175:6 177:6 177:7 177:11 177:14 177:16 203:12 230:18 237:10 239:20 245:3 245:4 245:4 245:22 245:25 250:23
prices(7) 127:25 128:7 129:8 160:2 160:24 176:24 177:2

pricing(1) 127:19 237:24 309:36
primarily(2) 84:25 85:7
primoffr(1) 5:48
principal(1) 115:16
principally(1) 80:25
print(4) 59:12 59:13 59:13 59:17
prior(15) 58:24 60:14 61:13 88:7 88:6 88:7 104:15 271:15 271:25 272:3 279:17 281:7 281:8 289:20 290:14

private(1) 61:19
privileged(1) 43:6
pro(1) 8:13
probability(3) 36:20 118:20 119:12
probably(19) 12:13 83:11 84:15 84:21 86:12 152:13 208:20 211:15 217:13 222:2 223:25 234:21 244:19 246:9 252:19 254:20 276:25 304:2 304:6

problem(13) 10:16 28:5 33:13 50:11 65:16 85:16 175:13 221:10 221:10 225:8 225:19 228:4 306:4

problems(5) 23:10 224:1 253:16 253:20 255:13

procedural(1) 296:13
procedure(5) 217:24 273:18 273:22 274:3 275:7

proceed(9) 17:13 19:8 44:22 48:2 87:8 92:20 112:14 192:14 275:7

proceeding(3) 81:17 86:11 251:1
proceedings(12) 1:18 1:48 15:9 32:11 44:2 99:12 99:23 99:23 169:10 171:7 182:16 308:11
proceeds(2) 76:14 294:7
process(19) 42:9 42:10 43:18 44:9 44:18 44:23 47:5 73:22 101:7 103:13 126:1 195:9 234:15 252:12 252:20 275:9 276:22 288:14 295:25

procured(1) 291:17
produce(2) 78:25 106:24
produced(1) 1:49
productively(1) 253:24
products(2) 27:11 33:17
professional(5) 71:4 144:3 145:3 243:7 243:24

professionals(15) 97:22 98:2 98:21 98:22 99:11 99:11 99:17 99:21 100:15 143:21 146:6 146:17 146:20 146:24 147:3

professors(1) 228:6
profit(1) 170:8
program(1) 303:21
progress(3) 15:23 16:14 42:17
projected(1) 140:2
projection(1) 156:18
projections(3) 29:22 51:4 199:19
promise(3) 13:23 33:10
promises(1) 86:13
promoted(4) 61:7 62:12 62:20 63:16
promotions(1) 62:14
prong(7) 192:7 277:4 281:14 286:16 293:9 293:13 293:16

prongs(3) 247:9 257:6 278:11
pronouncing(1) 288:7
proof(9) 48:8 172:20 199:17 229:15 247:5 247:6 247:7 248:24 291:19

proper(3) 161:22 176:24 296:8
properly(3) 15:6 220:14 293:25
properties(3) 18:2 34:8 40:25
property(2) 221:17 221:18
proponent(3) 193:16 249:15 285:11
proponents(21) 18:17 36:15 47:14 72:17 73:13 166:22 181:21 182:4 184:19 186:9 189:21 193:24 194:15 211:12 263:25 264:22 271:23 273:2 273:6 305:18 305:21

proponents'(1) 103:16
proponent's(2) 195:11 305:4
proposal(3) 131:17 249:18 304:3
proposals(1) 235:12
propose(4) 12:17 12:23 201:19 240:22
proposed(3) 43:23 218:2 301:18
proposing(4) 167:24 169:15 292:17 298:10
proposition(4) 243:5 284:13 286:1 290:7
propounds(1) 265:21
prosecute(3) 181:16 183:20 195:6
prosecuting(2) 93:8 135:1
prospective(2) 34:14 42:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **protect**(25) 14:23 93:16 123:1 131:20 139:9 139:18 139:19 175:4 178:5 178:10 182:18 182:20 182:24 187:25 195:22 216:6 224:16 230:24 231:15 231:24 232:15 232:17 232:21 255:8 263:9 | | **pursuant**(1) 57:17 **pursue**(5) 26:23 48:12 48:14 66:3 172:12 **pursuing**(2) 109:9 117:1 **push**(1) 191:21 **put**(95) 11:1 11:2 16:6 16:22 19:16 42:3 48:8 63:21 65:18 66:8 70:18 73:18 78:24 79:13 79:14 79:19 82:21 119:17 119:19 123:2 122:24 122:25 123:1 123:7 123:17 123:17 123:22 123:22 130:24 136:7 136:10 136:13 136:14 136:16 137:7 137:9 137:10 137:20 138:9 138:24 139:9 139:24 140:1 140:5 140:6 140:12 140:14 141:5 141:16 141:19 141:20 141:24 142:4 173:9 173:11 174:10 175:3 177:25 187:5 194:25 196:4 197:12 197:15 203:25 204:4 204:6 204:7 204:20 204:24 205:6 206:1 206:2 206:18 210:5 228:8 229:10 231:25 232:14 232:14 237:1 237:14 241:25 242:1 242:3 242:12 243:4 243:16 248:25 251:7 253:6 258:15 269:12 269:16 269:16 290:18 | | **quo**(2) 36:13 71:14 **quote**(13) 177:10 204:3 218:20 240:16 253:16 258:17 283:8 283:10 283:11 285:20 287:2 287:19 288:16 | | **really**(74) 21:9 29:22 30:20 92:3 101:11 117:16 123:24 130:23 135:14 135:14 156:21 158:4 158:15 162:11 166:22 170:4 172:9 173:23 174:5 180:18 181:23 200:7 200:12 200:13 200:15 201:25 203:9 206:19 207:19 208:1 209:16 215:7 215:16 216:10 216:12 216:17 216:24 217:25 218:7 221:1 224:12 226:7 228:2 229:20 229:20 230:5 231:6 237:14 239:6 240:21 241:5 241:6 241:11 241:25 254:15 257:18 262:24 267:25 270:22 277:24 281:12 282:8 284:23 289:5 293:10 293:14 293:23 294:10 296:14 296:17 298:14 303:20 304:10 305:9 |
| **protected**(17) 24:13 109:8 109:13 110:7 114:15 118:9 119:19 125:6 131:22 181:19 219:11 226:19 229:25 230:13 231:7 232:3 240:8 | | | | **quoted**(8) 126:3 144:15 177:7 177:14 190:24 286:22 286:24 291:25 | | |
| **protecting**(3) 174:11 218:1 232:22 **protection**(20) 95:5 102:22 110:13 131:13 178:6 186:25 187:1 212:5 215:24 216:3 218:6 218:7 226:21 230:12 230:22 231:10 232:19 239:11 239:19 240:5 | | | | **quotes**(2) 23:7 258:16 **quote's**(1) 240:17 **quoting**(2) 283:21 285:22 **racing**(1) 281:2 **radio**(1) 33:20 **radlax**(1) 266:23 **raise**(3) 276:23 279:20 302:3 **raised**(10) 10:25 256:8 271:12 280:19 281:16 297:4 297:4 297:5 297:6 306:13 | | **realm**(3) 7:37 7:37 239:13 **reason**(37) 36:4 63:19 142:2 142:4 158:10 171:23 173:10 177:25 181:1 187:3 187:17 204:13 213:16 221:3 221:15 221:16 222:2 228:18 231:8 254:17 260:22 265:9 268:5 268:17 268:22 270:2 270:2 270:3 271:10 271:24 273:2 280:7 280:9 282:17 285:14 286:14 293:6 |
| **protective**(5) 184:18 187:8 187:24 213:9 263:7 | | | | | | |
| **protects**(2) 249:23 255:6 **protect"**(3) 231:16 231:16 231:17 **prove**(4) 214:16 218:13 233:23 248:7 **proved**(5) 214:19 216:1 235:24 236:1 254:25 | | **puts**(1) 307:10 **putting**(3) 42:20 229:10 242:14 242:20 252:18 | | **raises**(1) 294:12 **raising**(2) 265:17 302:24 **ran**(1) 160:3 **range**(4) 125:2 160:13 226:12 294:18 **rank**(1) 245:17 **rare**(2) 279:7 279:7 **rate**(26) 34:4 34:4 35:4 71:16 108:14 109:25 110:19 111:12 111:19 112:1 116:4 117:6 122:14 122:15 148:7 154:3 155:25 158:5 158:10 158:11 158:13 158:14 172:18 182:22 233:24 236:19 | | **reasonable**(21) 97:10 97:11 102:22 103:11 111:9 113:11 116:22 120:1 126:19 136:20 145:5 150:2 150:23 156:8 160:8 204:25 205:1 209:15 220:15 233:17 233:17 |
| **provide**(9) 17:11 28:1 33:12 45:21 56:13 57:1 89:17 92:25 277:17 | | **pvgc**(1) 242:8 **qualification**(2) 22:5 148:23 **qualified**(5) 63:23 92:2 92:4 114:17 127:8 **quantification**(9) 54:19 71:22 145:20 145:21 146:6 199:17 249:5 254:17 254:18 | | | | **reasonableness**(1) 294:18 **reasonably**(2) 134:6 147:23 **reasons**(11) 65:21 79:8 97:20 173:12 219:15 227:19 239:16 270:10 270:22 288:3 304:24 |
| **provided**(4) 56:10 59:3 141:8 261:5 **providers**(1) 255:17 **provides**(5) 15:17 42:20 62:1 92:13 180:15 256:15 290:12 | | | | **rates**(5) 111:8 116:6 147:22 236:12 237:2 **rath**(1) 3:9 **rather**(9) 112:7 133:10 196:9 198:16 250:7 250:7 271:22 278:20 303:20 | | **rebecca**(1) 7:25 **rebut**(1) 282:18 **recall**(18) 27:23 30:21 39:4 77:14 79:11 89:18 92:15 97:15 109:14 126:5 131:15 147:17 154:1 169:14 188:4 169:6 169:19 174:12 |
| **providing**(5) 27:14 29:15 61:14 61:18 **province**(1) 100:12 **proving**(1) 196:7 **provision**(7) 73:2 73:6 102:1 182:10 263:16 274:23 301:6 | | **quantified**(10) 14:23 34:10 69:16 71:10 72:14 73:11 73:16 130:9 195:12 207:7 **quantify**(18) 28:24 34:12 34:17 56:20 56:22 61:11 61:15 72:15 74:2 118:2 120:7 130:14 137:15 138:4 144:25 205:7 235:16 248:2 **quantifying**(1) 137:11 **quantitative**(1) 93:14 | | **ratings**(2) 153:4 153:9 **re-cross**(4) 81:21 175:21 176:21 179:6 **re-direct**(4) 77:3 77:5 167:13 167:14 **re-state**(1) 55:8 **reach**(6) 180:7 180:8 192:5 234:23 238:4 253:24 | | **receive**(3) 67:12 157:2 177:20 **received**(2) 134:21 271:6 **receiving**(1) 117:2 **recent**(12) 41:18 64:6 76:6 106:16 153:1 160:21 190:13 191:12 214:5 218:15 288:5 297:14 |
| **provisions**(8) 180:4 181:8 266:9 271:3 283:17 292:21 294:6 300:24 | | **quarter**(7) 40:10 51:2 51:6 51:8 81:9 82:13 309:22 | | | | **recently**(11) 57:25 59:20 61:23 63:10 78:12 154:12 159:25 255:16 287:14 288:11 289:1 |
| **provisions"**(1) 283:18 **proximate**(1) 138:20 **proxy**(5) 66:25 67:3 125:19 244:2 254:14 **prudence**(1) 296:12 **public**(30) 15:4 21:5 28:12 65:24 66:6 66:7 216:13 222:4 222:14 222:15 222:23 223:2 241:8 246:15 246:17 246:23 257:16 260:20 265:11 265:12 267:6 267:12 267:19 267:22 268:5 268:15 270:11 291:12 291:12 291:16 | | **question**(113) 11:1 11:4 14:13 14:15 19:6 19:10 19:13 27:1 29:23 30:16 37:25 38:1 41:10 43:22 44:15 45:22 46:4 46:20 46:24 53:25 55:6 55:8 55:9 63:13 67:4 70:8 76:12 79:25 97:4 114:19 127:9 129:17 133:10 133:17 138:1 138:22 138:23 155:12 168:2 168:23 169:20 169:24 170:7 171:4 171:19 171:20 172:6 172:7 172:9 172:15 173:2 173:7 174:2 174:7 174:9 174:20 175:1 181:12 184:3 197:22 198:3 199:23 201:19 217:21 217:22 220:15 220:16 220:18 220:19 224:12 224:17 225:2 225:4 225:5 227:2 227:12 234:22 241:21 243:9 247:17 248:6 248:17 254:3 256:8 257:12 257:13 257:14 259:7 259:13 260:19 261:1 263:21 263:22 264:1 264:1 267:13 268:16 269:1 269:11 269:15 271:17 274:12 279:24 281:11 287:12 289:25 291:11 295:15 295:20 298:3 298:24 299:6 | | **read**(32) 15:18 23:5 24:7 49:3 53:24 58:21 63:13 65:13 80:19 81:12 136:24 165:16 166:8 166:11 166:12 190:15 191:12 214:10 218:8 234:17 234:21 243:16 246:16 260:19 274:20 283:3 284:4 290:8 290:16 290:16 301:9 301:17 | | **recess**(6) 83:15 87:5 87:6 179:14 179:16 256:5 |
| **publically**(1) 60:4 **publications**(2) 18:1 25:9 **publishing**(7) 24:22 25:8 27:12 32:7 40:5 69:9 309:20 | | | | **readdressed**(1) 193:11 **reading**(8) 180:10 274:23 288:24 290:15 297:24 300:12 300:15 301:21 | | **recipe**(1) 196:1 **recited**(1) 288:3 **recognition**(1) 304:14 **recognize**(5) 18:23 20:2 94:11 107:1 120:3 **recognizing**(3) 110:12 118:15 120:3 |
| **puck**(1) 278:7 **pull**(1) 267:1 **pulling**(1) 267:6 **punished**(1) 240:2 **purchase**(1) 110:4 **purchased**(5) 140:14 141:12 141:15 141:19 141:21 | | | | **readings**(2) 288:21 288:23 **reads**(4) 31:18 36:8 103:22 285:4 **ready**(3) 35:22 100:20 222:22 **real**(11) 166:5 184:20 192:4 192:15 193:12 195:13 197:22 221:18 222:16 246:1 305:14 | | **recollection**(1) 66:3 **recommendation**(1) 133:20 **reconciliation**(1) 100:23 **reconsideration**(2) 13:19 272:6 **reconvene**(2) 83:16 86:17 **record**(43) 12:21 23:6 39:13 39:17 45:5 45:7 48:1 48:2 48:4 48:6 50:6 50:8 50:9 51:1 63:8 65:18 65:25 66:7 80:20 81:12 82:10 82:22 84:5 84:19 152:3 152:3 179:19 183:15 199:12 201:15 217:6 247:17 248:5 248:9 248:25 248:25 258:15 276:12 278:22 294:13 303:10 305:8 305:19 |
| **purchasing**(1) 159:15 **pure**(2) 220:15 243:14 **purely**(4) 100:12 127:2 131:1 199:10 **purport**(1) 127:22 **purports**(3) 20:6 98:16 127:24 **purpose**(19) 18:8 92:24 97:7 115:18 119:14 120:2 121:16 122:23 131:20 200:17 206:10 255:7 262:6 262:18 262:19 263:5 263:13 264:12 284:14 | | **questions**(31) 16:17 27:15 42:8 66:13 67:3 74:17 74:21 77:13 77:24 78:10 80:15 81:6 144:20 162:5 162:19 176:15 179:5 212:10 212:10 220:11 228:1 241:14 246:24 256:11 256:24 257:19 259:25 271:11 271:11 271:12 278:24 | | **reality**(1) 228:13 **realized**(1) 226:25 **realizing**(2) 280:15 280:17 | | **recorded**(1) 1:48 **recording**(2) 1:48 308:10 **records**(3) 44:3 66:7 69:6 **record's**(1) 229:7 **recourse**(2) 192:15 193:7 **recoveries**(2) 271:7 294:3 **recovery**(11) 93:16 93:22 114:8 116:2 120:5 139:24 158:15 260:2 271:5 271:7 292:7 |
| **purposes**(16) 97:25 116:7 118:3 118:10 135:18 138:19 152:2 169:3 193:13 198:11 227:12 236:23 256:7 274:2 301:17 | | **quibble**(1) 203:8 **quick**(3) 77:4 299:15 301:23 **quicker**(1) 298:4 **quickly**(3) 277:8 300:7 305:3 **quiet**(2) 97:3 143:10 **quite**(11) 11:12 30:8 41:2 68:15 74:20 215:5 217:5 228:4 232:10 243:11 243:12 274:11 291:8 | | | | **recross**(1) 309:2 |

| Word | Page:Line |
|---|---|

**recruit**(4) 32:2 33:2 33:3 77:18
**recruiting**(1) 31:18
**recurring**(1) 279:4
**red**(2) 291:21 291:22
**redirect**(1) 309:2
**redone**(3) 100:19 101:1 101:8
**reduce**(2) 158:21 208:20
**reduced**(7) 15:14 64:4 98:19 177:4 199:7 206:12 269:22
**reducing**(1) 59:25
**reed**(1) 6:42
**refer**(5) 53:10 123:6 164:4 196:24 272:25
**reference**(17) 46:12 51:7 52:14 104:15 110:4 110:9 110:11 111:25 119:11 124:16 124:22 136:20 147:25 148:1 183:8 261:2 309:35
**referred**(4) 239:10 246:15 270:9 292:7
**referring**(7) 51:13 55:5 67:13 67:16 108:22 242:25 250:21

**refers**(2) 165:8 242:24
**refi**(1) 158:9
**refinance**(1) 117:3
**refinanced**(1) 157:22
**refinancing**(4) 116:15 158:5 158:11 236:13
**reflect**(6) 49:8 161:25 169:19 239:25 255:18 255:19

**reflected**(2) 107:13 128:5
**reflecting**(1) 191:5
**reflects**(3) 190:22 199:12 201:15
**refresh**(1) 66:3
**refreshes**(1) 59:2
**regard**(10) 18:13 20:15 29:14 31:7 77:22 116:3 174:6 180:6 298:21 299:9

**regarding**(6) 10:10 112:18 171:25 173:7 176:18 256:9

**regardless**(5) 138:16 139:2 139:10 140:21 141:10

**regards**(2) 51:23 146:5
**regular**(1) 42:18
**regulation**(1) 140:25
**rehashing**(1) 13:15
**reimburse**(3) 188:22 189:20 195:24
**reimbursement**(1) 103:2
**reinforced**(2) 231:18 231:20
**reinvesting**(1) 147:16
**reiterate**(2) 51:17 270:24
**reiterated**(1) 289:1
**rejected**(2) 244:8 245:14
**rejects**(1) 215:25
**relate**(2) 34:23 215:24
**related**(7) 1:7 138:17 141:11 180:4 180:14 272:2 273:23

**relates**(3) 115:9 142:19 260:20
**relating**(3) 91:16 131:25 144:3
**relationship**(4) 21:4 100:2 125:21 188:4
**relationships**(1) 226:9
**relative**(3) 25:6 97:3 130:18
**relatively**(3) 143:10 150:18 198:12
**release**(8) 22:14 23:3 23:5 225:10 225:11 253:5 253:13 309:19

**relevance**(2) 254:11 254:19
**relevant**(13) 13:8 43:19 202:22 223:8 224:17 230:14 234:7 260:3 279:11 281:5 284:6 293:16 301:14

**reliable**(2) 56:13 287:6
**reliance**(1) 288:12
**relied**(4) 152:23 261:8 262:17 289:21
**relief**(4) 219:23 221:14 221:14 221:23
**relies**(1) 287:23
**relieved**(1) 242:19

**relinquish**(1) 188:8
**reluctant**(2) 28:2 28:13
**reluctantly**(1) 289:11
**rely**(4) 261:9 268:20 270:13 277:2
**relying**(1) 71:1
**remain**(4) 24:10 50:23 184:17 200:9
**remaining**(1) 207:6
**remains**(1) 101:24
**remand**(1) 296:1
**remanded**(1) 252:8
**remarkable**(2) 282:20 301:19
**remarkably**(1) 201:1
**remarks**(5) 13:2 13:7 243:11 247:2 288:12
**remedy**(1) 247:7
**remember**(15) 32:17 44:15 125:12 169:24 174:6 174:7 178:3 181:19 189:8 221:19 223:12 224:11 238:11 238:20 240:14

**remembering**(1) 238:15
**remind**(2) 32:14 223:9
**rendered**(2) 86:25 96:25
**renew**(1) 129:14
**renewal**(1) 217:17
**rent**(3) 261:9 261:11 261:14
**reorganization**(14) 81:15 90:2 91:10 91:11 91:13 101:20 101:23 115:14 118:5 118:14 126:19 173:15 191:2 230:7

**reorganized**(3) 53:11 140:2 201:23
**repeat**(6) 37:20 43:3 76:12 198:18 230:5 297:21

**repeatedly**(1) 289:18
**repeating**(2) 168:13 198:17
**repetitive**(1) 279:5
**rephrase**(5) 38:1 96:9 114:19 128:21
**replace**(3) 116:18 186:3 186:3
**replacement**(4) 78:17 79:7 117:15 156:24
**reply**(11) 97:12 113:17 135:3 166:8 166:19 190:15 211:5 243:10 276:8 287:8 302:25

**report**(7) 57:16 64:25 79:5 82:15 91:25 92:9 309:24

**reported**(7) 105:6 215:6 251:10 282:23 283:25 287:17 288:9

**reporter**(1) 287:17
**reporting**(5) 59:25 60:4 81:16 100:7 146:7
**reporting/monitoring**(1) 99:17
**represent**(2) 148:23 242:10
**representation**(1) 168:11
**representative**(1) 244:3
**represented**(4) 13:17 228:20 228:21 245:12
**representing**(5) 26:20 89:1 97:22 99:21 100:15

**represents**(1) 95:25
**request**(24) 81:24 119:7 174:1 199:7 206:12 269:22 270:25 274:6 274:9 274:22 276:9 285:11 299:8 299:14 299:16 300:8 300:11 301:23 301:24 302:9 302:10 302:11 302:20 305:17

**requesting**(4) 16:9 37:17 141:23 142:7
**requests**(4) 15:17 42:14 115:1 274:6
**require**(14) 10:20 27:4 44:5 84:9 100:13 140:10 195:21 249:22 250:11 250:14 251:18 251:20 281:19 294:7

**required**(28) 15:22 27:4 42:16 44:4 89:3 90:12 93:2 95:4 99:7 101:2 103:12 109:13 115:15 122:9 125:13 132:22 157:23 185:21 186:24 188:24 197:3 199:9 201:21 210:1 210:4 218:7 249:13 264:23

**required,"**(1) 242:18
**required."**(1) 196:16

**requirement**(10) 92:14 231:2 240:15 240:18 263:15 276:20 292:22 301:4 301:10 301:11
**requirements**(4) 205:13 285:9 293:1
**requires**(6) 37:21 37:25 246:18 268:2 281:16 289:14
**reserve**(4) 145:5 212:16 233:6 233:6
**reserved**(3) 111:1 112:3 112:4
**resides**(1) 258:21
**residual**(3) 232:15 232:17 232:24
**resolution**(10) 15:9 15:22 165:21 195:1 268:22 269:11 269:13 269:20 270:5 270:7
**resolve**(5) 269:24 273:20 280:14 281:22 281:23

**resolved**(8) 101:8 112:8 113:25 146:21 216:22 252:4 286:2 306:13

**resolving**(1) 272:16
**resources**(1) 208:22
**respect**(59) 16:8 16:24 25:15 28:25 29:6 33:20 34:1 34:2 35:25 40:23 43:18 57:7 61:16 71:18 78:2 93:24 95:3 100:3 103:14 105:5 110:15 114:17 117:17 122:11 129:3 133:19 139:17 145:3 172:20 173:4 180:5 180:17 184:8 184:14 186:20 190:12 199:9 205:21 218:4 220:7 235:23 247:11 248:15 248:25 260:10 261:14 265:16 272:5 272:13 272:14 272:22 272:24 274:10 277:4 277:20 285:10 291:24 300:20 303:10

**respected**(6) 196:20 267:24 267:25 268:9 268:10 292:2

**respectfully**(1) 271:18
**respecting**(2) 182:10 291:23
**respects**(1) 113:18
**respond**(9) 127:5 168:17 174:18 211:19 225:23 302:8 302:16 302:20 305:18

**responded**(1) 128:14
**responding**(1) 211:12
**response**(7) 29:11 37:23 66:12 77:2 82:24 84:11 233:1

**responsibilities**(2) 17:24 87:25
**responsible**(8) 78:22 85:1 85:7 189:20
**responsive**(7) 216:7 216:9 216:16 219:13 219:14 261:11 301:25

**rest**(4) 16:7 44:18 242:5 278:5
**restructuring**(10) 42:21 70:24 87:24 88:1 88:8 88:11 88:22 91:2 91:16 100:24

**restructurings**(1) 88:24
**result**(18) 45:14 55:11 56:17 137:11 139:11 140:16 140:16 140:17 140:24 185:13 216:24 218:18 219:10 230:24 275:14 278:15 278:16 289:22

**results**(8) 24:1 51:3 51:6 55:3 81:9 82:12 213:9 309:22

**resurrect**(1) 28:15
**retain**(2) 32:1 33:2
**retaining**(3) 31:18 61:16 78:10
**retention**(3) 60:23 61:11 197:6
**retirees**(4) 149:17 150:3 244:22 244:22
**retransmission**(1) 22:11
**return**(22) 109:25 110:20 111:8 111:19 112:1 116:4 117:6 120:13 147:22 148:7 148:16 150:25 152:23 155:25 172:18 182:22 197:8 232:9 233:24 234:2 252:7 274:1

**returns**(5) 149:19 150:7 150:10 150:21 196:1

**revenue**(5) 26:7 26:17 40:3 55:10 56:2

**revenue-enhancing**(1) 26:15
**revenues**(8) 25:11 26:10 51:23 51:24 52:2 55:12 55:15 133:12
**reversed**(1) 217:2
**review**(13) 104:5 180:21 181:18 190:7 191:1 191:6 191:10 201:6 204:21 220:20 222:10 228:10 279:2

**reviewed**(1) 228:4
**reviewing**(5) 14:14 132:2 180:11 228:10 281:23

**revisited**(1) 201:3
**revolves**(2) 211:17 211:18
**rewriting**(1) 197:10
**richards**(1) 2:8
**rid**(1) 281:13
**ridge**(1) 283:25
**rifkind**(1) 7:17
**right**(244) 11:9 12:2 17:15 24:16 39:1 39:14 43:24 44:18 47:16 48:16 50:22 58:4 81:4 83:2 83:8 86:2 86:15 96:8 99:18 105:11 105:15 105:17 106:3 106:20 107:24 110:10 110:24 112:25 113:8 113:18 117:12 117:21 123:10 123:11 124:3 127:14 128:3 128:6 130:2 130:25 132:20 134:18 134:20 134:22 134:23 135:1 135:5 135:9 135:16 135:23 135:25 136:4 136:5 136:8 136:17 136:19 136:22 136:25 137:1 137:4 137:5 137:12 137:14 137:16 137:19 137:21 138:8 139:7 140:15 140:18 140:22 141:5 141:11 141:25 143:2 144:4 144:22 145:1 145:3 145:16 145:20 146:4 146:12 147:18 147:24 147:25 148:1 148:3 148:8 148:9 148:11 148:12 148:20 149:3 149:9 149:11 149:14 149:16 149:17 149:18 150:8 150:11 150:13 150:19 150:20 150:22 150:24 150:25 151:3 151:4 151:6 152:24 153:2 153:4 153:10 153:13 153:17 153:19 154:1 154:4 154:7 154:10 154:13 154:22 155:11 155:16 156:25 157:5 157:6 157:11 157:16 157:21 159:10 159:12 159:16 159:23 159:24 160:2 160:13 160:16 161:3 161:8 161:10 161:11 161:15 161:21 163:6 163:11 163:12 164:1 164:7 164:10 164:16 164:18 164:22 164:22 164:4 167:18 167:19 167:24 169:23 170:10 170:12 171:18 174:13 174:25 175:5 178:6 178:14 178:23 179:2 179:4 179:8 179:13 179:23 182:2 182:9 187:6 189:22 190:1 190:3 190:3 190:4 190:11 191:11 192:18 192:23 193:12 198:3 200:6 202:11 202:11 202:12 202:14 202:25 203:9 206:22 206:18 211:24 212:7 212:14 213:21 214:8 214:9 216:19 220:10 222:10 222:11 223:10 225:4 225:15 228:11 228:12 229:1 230:6 233:18 233:19 236:13 242:3 245:4 248:8 248:13 250:13 250:20 250:24 251:24 255:5 256:4 265:4 265:9 266:13 268:21 269:15 273:13 273:14 280:8 289:22 293:14 295:4 296:17 296:25 303:3 306:21 308:1

**right-hand**(1) 123:9
**rightly**(1) 215:5
**rights**(19) 15:8 182:19 182:24 182:25 183:11 183:13 184:13 184:19 184:21 187:9 187:24 192:13 195:22 210:7 210:8 221:11 227:15 231:15 263:9

**rigid**(1) 15:14
**ripe**(1) 57:3
**ripple**(2) 223:13
**ripples**(1) 213:19
**rise**(7) 10:2 31:12 87:7 211:3 211:8 270:22 271:10

**rising**(1) 275:6

| Word | Page:Line |
|------|-----------|
| **risk**(55) 117:19 117:24 118:3 118:11 118:15 118:19 119:4 119:12 119:22 120:11 134:5 140:10 141:14 142:1 150:21 151:3 151:6 161:25 166:5 166:22 169:19 169:25 184:20 192:5 192:16 200:23 202:5 204:15 205:2 205:3 210:7 210:12 210:18 210:20 214:25 215:1 215:3 216:2 221:1 221:1 231:1 236:20 236:21 237:20 237:24 240:6 244:7 247:23 248:22 249:12 249:17 249:18 277:18 277:20 305:15 | |
| **risk-free**(1) 122:14 | |
| **risks**(5) 140:21 140:25 142:13 142:14 201:24 | |
| **risky**(1) 129:15 | |
| **rite**(1) 288:8 | |
| **robert**(3) 2:13 7:10 8:12 | |
| **robin**(1) 2:36 | |
| **rockefeller**(1) 3:20 | |
| **rodney**(2) 2:15 2:30 | |
| **roitman**(1) 3:18 | |
| **role**(4) 79:16 91:19 282:1 287:4 | |
| **rolling**(1) 218:5 | |
| **rome**(1) 276:12 | |
| **room**(8) 36:2 100:9 180:5 203:13 211:25 225:23 237:15 239:15 | |
| **rosenblatt**(1) 3:19 | |
| **rosenman**(1) 7:12 | |
| **rosner**(70) 3:44 3:46 11:22 12:5 12:6 12:20 84:14 84:18 85:9 198:9 198:10 198:20 198:22 199:1 199:5 199:22 200:1 202:18 205:9 205:16 205:22 205:25 206:6 209:23 210:24 227:6 228:24 249:1 253:3 253:4 256:5 256:6 257:22 257:25 258:3 258:12 258:17 260:11 260:15 262:25 265:3 265:6 265:8 265:19 265:22 267:3 267:5 267:10 267:18 269:6 271:6 276:1 280:3 290:21 291:7 291:14 291:24 297:7 298:23 299:3 299:13 299:18 302:14 302:16 302:19 306:17 306:20 307:2 307:14 307:16 | |
| **rosner's**(2) 276:14 277:1 | |
| **roughly**(9) 35:1 35:3 208:9 215:9 222:6 234:19 234:20 252:15 260:1 | |
| **roundabout**(1) 287:22 | |
| **rounded**(1) 228:13 | |
| **roundtrip**(1) 298:19 | |
| **rowe**(1) 8:16 | |
| **rudnick**(4) 4:2 7:7 211:1 270:19 | |
| **ruinous**(1) 191:8 | |
| **rule**(34) 92:13 92:14 182:19 183:4 183:7 183:10 187:10 188:24 193:19 195:20 196:21 197:15 197:23 201:25 202:2 202:4 205:12 211:3 231:13 233:15 242:13 242:14 242:16 242:21 243:1 250:15 250:25 251:9 257:4 258:19 259:9 264:14 264:16 274:25 | |
| **ruled**(3) 273:15 294:17 305:12 | |
| **rules**(12) 15:14 92:11 118:6 118:22 180:4 180:13 181:8 182:2 189:25 197:10 202:1 242:5 | |
| **ruling**(10) 48:12 86:20 180:10 180:19 181:25 213:24 272:1 291:16 295:4 302:6 | |
| **rulings**(2) 190:4 286:7 | |
| **rumors**(1) 214:3 | |
| **run**(7) 35:4 71:15 123:11 136:2 147:7 184:20 222:16 | |
| **running**(5) 18:9 69:20 79:17 185:8 292:12 | |
| **russano**(1) 2:21 | |
| **sp**  (2) 149:9 149:11 | |
| **saavedra**(1) 8:44 | |
| **sachs**(1) 8:34 | |
| **safe**(1) 308:5 | |
| **safely**(2) 184:9 184:10 | |

| Word | Page:Line |
|------|-----------|
| **safety**(1) 239:14 | |
| **said**(101) 12:11 15:25 16:18 27:25 41:19 46:13 53:17 56:23 71:8 75:21 77:7 85:10 86:21 112:20 133:21 137:9 147:19 159:25 173:10 177:24 177:24 178:3 184:9 186:13 186:14 192:10 192:12 195:3 196:2 200:8 200:25 201:5 201:25 202:1 203:21 203:23 206:19 207:8 208:9 209:13 209:14 214:22 215:1 216:7 219:19 219:21 219:21 220:6 221:8 222:5 226:14 227:6 229:19 231:18 232:10 237:22 238:5 238:24 240:24 241:4 248:23 251:3 251:10 251:12 251:12 251:14 251:14 251:17 254:22 260:16 262:1 262:1 262:18 262:20 263:1 264:3 266:6 266:23 267:16 271:23 273:16 273:18 278:12 279:25 280:20 284:5 284:9 285:19 288:11 288:18 291:15 293:12 295:5 297:22 298:2 298:3 298:11 298:16 300:9 302:1 305:13 | |
| **sampling**(1) 25:8 | |
| **sandbagged**(1) 211:14 | |
| **sat**(1) 229:1 | |
| **satisfactory**(1) 25:19 | |
| **satisfied**(2) 217:24 222:14 | |
| **satisfies**(1) 192:7 | |
| **satisfy**(3) 187:24 192:23 276:7 | |
| **saved**(3) 113:19 113:21 114:23 | |
| **savings**(1) 59:7 | |
| **saw**(3) 168:9 169:1 197:12 | |
| **say**(114) 11:16 11:17 11:23 13:8 15:12 21:9 21:20 27:12 48:11 49:10 74:19 75:8 75:22 76:21 83:15 83:16 84:12 97:19 118:1 128:14 137:13 146:24 147:3 147:11 154:18 157:2 157:18 160:17 165:14 167:1 167:2 180:16 181:9 182:11 182:20 183:10 184:7 188:4 189:24 190:2 192:11 194:7 194:9 195:12 195:15 196:22 199:1 200:2 200:5 200:6 201:8 201:14 201:15 201:18 202:1 202:3 202:3 204:24 205:20 208:10 211:6 212:18 214:15 215:17 216:4 217:3 219:15 222:1 223:14 223:20 225:4 227:3 227:13 227:17 231:16 231:16 231:17 231:25 238:16 239:13 239:22 240:7 241:25 242:2 242:18 248:6 250:20 253:15 254:8 257:12 259:5 259:22 259:25 260:14 260:20 263:6 263:20 264:1 264:2 264:25 265:15 268:8 268:14 269:9 270:10 272:15 273:6 284:4 288:20 290:9 290:10 292:1 301:22 302:24 | |
| **saying**(37) 12:19 33:24 177:19 177:22 178:5 178:6 178:10 178:13 189:10 189:14 196:2 197:14 210:17 233:4 233:22 234:2 235:5 238:7 238:23 250:9 250:16 267:5 267:6 267:11 267:11 267:18 268:20 268:21 269:21 272:9 277:15 289:19 309:12 303:16 304:1 | |

| Word | Page:Line |
|------|-----------|
| **says**(56) 39:18 53:22 55:22 67:12 80:19 108:16 122:12 135:21 173:4 173:6 182:15 182:24 183:5 192:17 192:22 195:23 196:12 196:15 202:20 207:23 218:12 219:15 219:16 222:20 228:10 231:17 234:19 240:11 242:16 249:20 250:7 251:6 251:7 251:20 251:21 251:23 253:16 253:17 256:21 257:5 258:19 259:9 262:24 263:20 267:24 285:7 287:18 293:4 298:1 299:14 300:11 300:17 300:18 301:2 301:4 303:21 | |
| **scenario**(5) 116:19 116:19 139:22 231:4 303:25 | |
| **scenarios**(2) 106:5 116:13 | |
| **scenes**(1) 100:8 | |
| **schedule**(12) 64:17 68:22 82:16 82:17 166:16 166:24 272:11 272:20 273:16 277:23 309:25 309:26 | |
| **scheduled**(1) 189:11 | |
| **scheduling**(1) 15:25 | |
| **scholer**(1) 5:46 | |
| **scholes**(17) 90:18 90:22 90:24 91:3 91:5 91:6 91:7 91:11 119:15 119:17 119:20 122:8 123:5 131:2 138:4 138:20 140:7 | |
| **school**(1) 228:5 | |
| **schotz**(1) 1:34 | |
| **schuylkill**(1) 1:43 | |
| **scientific**(1) 145:3 | |
| **scope**(1) 181:18 | |
| **scott**(2) 3:45 6:46 | |
| **scratching**(1) 202:9 | |
| **screen**(2) 23:17 206:3 | |
| **screwed**(1) 133:2 | |
| **scripps**(7) 64:11 64:18 67:1 67:8 67:21 77:14 82:16 | |
| **scripts**(1) 309:25 | |
| **seal**(3) 24:8 24:10 39:12 | |
| **sealed**(1) 309:20 | |
| **seasons**(1) 40:13 | |
| **second**(47) 14:10 26:1 27:7 40:9 46:19 51:2 51:6 51:8 65:13 80:19 81:9 82:12 99:16 107:19 119:7 162:3 162:4 164:16 167:19 192:7 200:12 211:6 213:3 213:18 213:22 222:4 223:15 223:24 239:7 241:4 243:10 254:9 259:17 260:9 265:9 266:6 271:10 272:14 274:19 277:1 278:4 282:1 293:22 295:15 295:20 302:9 302:10 | |
| **secondary**(1) 195:16 | |
| **secondly**(8) 86:24 185:13 193:5 213:1 219:20 222:21 301:7 301:7 | |
| **sect5ion**(41) 69:1 107:23 244:2 244:3 259:16 259:17 261:2 261:24 262:17 263:3 263:4 263:6 264:5 274:20 278:9 280:7 280:10 280:20 280:20 280:25 281:25 282:7 282:8 283:7 283:17 284:7 284:19 285:1 285:3 285:4 285:7 285:7 285:9 289:8 289:10 292:22 299:20 300:12 300:14 300:19 300:23 | |
| **sections**(3) 285:25 286:3 301:12 | |
| **secure**(2) 27:12 27:13 | |
| **secure**(6) 233:7 233:10 240:19 240:20 240:23 240:25 | |
| **secured**(1) 229:17 | |
| **secures**(1) 213:5 | |
| **secure"**(1) 240:20 | |
| **securities**(5) 8:20 8:20 91:9 129:8 182:23 | |
| **security**(12) 125:11 212:5 226:24 233:17 233:18 236:7 236:7 236:9 237:6 239:20 242:17 308:4 | |

| Word | Page:Line |
|------|-----------|
| **see**(73) 15:5 20:12 24:2 24:23 26:2 31:19 34:21 36:8 39:8 41:1 51:15 53:17 54:5 55:3 55:10 63:17 67:4 70:1 71:17 80:13 94:4 94:5 94:19 95:8 95:20 98:7 103:18 104:5 104:7 104:8 105:12 105:15 105:25 106:23 107:20 108:18 109:18 112:23 116:9 122:3 122:10 123:2 123:18 127:20 128:6 128:10 129:6 135:3 136:21 143:8 143:12 143:23 149:2 149:19 151:17 152:1 153:7 155:3 155:14 155:20 161:24 164:13 189:2 214:23 219:13 219:22 220:1 220:2 224:2 258:19 258:19 264:11 306:12 | |
| **seeing**(4) 67:10 169:6 208:18 208:19 | |
| **seek**(5) 99:9 229:20 259:9 271:15 298:1 | |
| **seeking**(17) 104:5 109:3 116:17 134:22 135:4 183:13 211:25 212:13 214:10 218:12 223:17 227:13 231:25 232:17 251:1 303:12 305:10 | |
| **seeks**(1) 271:14 | |
| **seem**(5) 16:1 211:20 213:22 265:5 301:21 | |
| **seemed**(1) 118:23 | |
| **seems**(4) 131:21 217:4 245:5 304:12 | |
| **seen**(14) 53:1 57:21 71:14 134:24 136:16 137:2 138:7 217:4 218:5 218:9 218:9 231:1 236:16 296:15 302:2 | |
| **segregate**(1) 144:13 | |
| **segregated**(1) 70:3 | |
| **segregating**(1) 174:2 | |
| **seife**(1) 5:4 | |
| **seizing**(1) 219:18 | |
| **selber**(1) 3:3 | |
| **select**(1) 124:25 | |
| **selected**(2) 124:2 216:9 | |
| **self-explanatory**(1) 123:24 | |
| **self-verified**(1) 156:18 | |
| **sell**(29) 60:13 60:21 125:5 125:8 125:13 157:3 157:4 157:6 175:6 177:8 177:12 178:16 178:17 178:25 188:2 202:14 203:3 203:6 203:6 203:10 203:18 206:20 230:2 230:5 230:10 230:11 244:7 244:9 245:8 | |
| **selling**(10) 26:19 58:23 117:3 125:9 159:8 161:13 202:8 216:15 245:3 245:22 | |
| **sells**(1) 226:7 | |
| **send**(9) 16:10 277:15 278:25 295:22 296:3 296:4 296:22 298:7 307:7 | |
| **sending**(3) 23:16 274:2 298:11 | |
| **sends**(2) 13:24 264:12 | |
| **senior**(48) 31:24 33:12 62:12 62:20 63:15 64:9 98:2 98:22 99:12 99:16 99:21 102:11 127:19 143:21 146:5 146:16 146:19 146:24 147:3 159:14 173:3 173:5 184:19 187:25 188:6 189:6 189:17 193:3 202:21 202:23 202:23 207:24 208:1 208:4 235:18 245:14 245:15 259:21 260:1 261:7 266:1 266:18 268:7 292:5 292:10 294:4 301:13 301:16 | |
| **seniority**(1) 295:3 | |
| **sense**(9) 12:14 46:3 46:9 176:1 203:12 269:2 276:25 278:13 291:6 | |
| **sensible**(2) 233:3 233:6 | |
| **sensitivities**(1) 107:11 | |
| **sensitivity**(3) 123:11 135:7 206:11 | |
| **sensitize**(1) 106:3 | |
| **sentence**(21) 23:5 53:18 54:5 58:21 67:11 80:19 80:20 103:21 103:21 108:21 182:14 183:6 223:22 223:24 242:16 242:24 250:12 250:13 251:9 286:25 298:1 | |
| **sentences**(3) 65:13 85:6 255:5 | |
| **separate**(7) 90:4 176:5 182:4 198:16 221:15 221:22 303:15 | |
| **separately**(1) 65:21 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| separates(1) 183:1 | | should(117) 12:8 12:12 13:9 16:1 16:9 20:9 31:1 47:24 48:3 48:6 85:16 89:25 90:12 92:3 92:8 94:1 95:4 103:23 103:24 109:7 109:13 119:16 119:21 120:20 127:3 131:13 133:22 133:23 135:15 139:9 142:6 142:20 151:17 152:3 178:5 182:11 182:24 183:11 183:19 197:22 198:2 198:23 199:20 200:20 201:9 201:22 202:1 203:2 203:10 204:25 205:1 205:8 206:8 207:9 210:9 213:17 218:13 222:3 222:13 223:3 228:4 229:4 230:21 231:3 231:7 232:1 233:2 233:4 234:13 237:11 242:12 242:23 243:3 243:24 243:7 249:6 249:13 249:14 249:15 249:21 249:22 253:10 253:23 255:24 259:5 259:6 262:7 266:15 267:25 270:12 271:25 272:15 273:3 273:5 277:15 277:16 278:18 278:19 279:13 282:7 284:4 284:24 287:24 295:13 295:20 296:20 296:21 296:21 296:22 297:7 297:8 297:23 298:22 300:25 301:1 304:15 304:24 | single(8) 16:6 24:14 26:20 154:2 182:14 194:5 234:4 236:8 | | some(105) 10:19 13:2 13:25 20:17 25:24 26:14 32:2 33:19 34:2 40:4 40:22 55:15 56:3 56:3 56:17 59:13 64:4 64:7 68:14 76:23 77:13 77:25 78:1 78:4 78:10 79:10 80:15 82:6 83:8 83:15 85:12 85:17 100:25 111:10 113:18 121:18 128:25 131:12 132:5 132:6 140:20 144:2 147:13 153:6 154:12 168:6 169:17 171:4 173:25 174:10 174:15 180:11 187:17 192:9 192:11 199:16 200:3 200:10 201:15 201:15 209:13 211:18 211:19 212:24 214:3 214:7 216:18 217:7 217:15 217:23 221:8 223:25 224:1 228:3 228:9 228:9 229:16 231:11 235:17 236:16 237:20 239:25 240:20 242:9 243:22 245:1 245:19 254:13 258:13 263:6 271:24 273:7 279:1 279:2 281:4 281:6 281:9 282:17 289:2 290:21 293:12 297:25 304:10 304:16 307:20 |
| september(2) 82:12 105:3 | | | | singular(1) 261:18 | | | |
| seriatim(1) 11:19 | | | | sir(29) 17:5 17:18 29:25 32:19 36:13 44:14 46:9 53:8 53:20 57:21 57:24 58:5 58:10 58:16 58:19 59:1 59:14 59:18 59:24 60:2 60:23 63:10 64:18 65:6 68:25 77:23 111:16 163:8 179:8 | | | |
| series(3) 77:24 218:21 220:11 | | | | | | | |
| serious(2) 129:7 169:25 | | | | | | | |
| seriously(1) 286:12 | | | | | | | |
| serve(3) 142:8 271:25 275:9 | | | | | | | |
| served(2) 91:25 92:9 | | | | | | | |
| server(1) 78:24 | | | | sister-in-law(1) 10:20 | | somebody(4) 177:11 253:14 286:10 306:18 |
| service(3) 1:42 1:49 38:16 | | | | sit(8) 26:25 72:23 147:12 148:10 189:13 205:18 205:25 252:14 | | somebody's(1) 177:11 | |
| services(3) 1:42 6:36 33:17 | | | | | | somehow(3) 111:12 183:1 264:23 | |
| set(26) 15:14 19:19 26:7 27:7 27:15 30:25 40:6 40:11 81:6 102:2 106:9 120:9 127:9 133:23 141:24 142:16 173:13 176:5 227:8 227:9 261:12 276:8 278:11 278:21 295:11 301:24 | | | | sitting(4) 35:19 203:13 241:22 297:1 | | someone(13) 27:17 34:8 71:6 119:21 147:11 212:13 221:19 228:7 230:11 237:16 237:24 239:18 250:23 | |
| | | | | situated(1) 251:12 | | | |
| | | | | situation(22) 29:7 30:13 36:12 37:11 39:1 71:5 82:3 89:7 89:23 90:2 90:10 169:1 188:16 194:7 213:16 237:23 247:20 250:22 251:1 251:4 273:20 303:11 | | | |
| setback(3) 41:15 41:16 224:2 | | | | | | something(32) 11:16 11:17 11:23 21:7 33:9 46:14 72:13 112:1 129:16 136:19 142:24 149:8 156:19 174:3 180:22 203:10 205:7 208:23 216:7 222:1 222:23 225:22 226:20 229:2 231:6 236:24 238:18 239:4 248:1 258:13 282:7 290:19 |
| sets(3) 106:9 138:24 203:12 | | | | | | | |
| setting(3) 18:12 141:13 292:4 | | | | | | | |
| settled(3) 282:4 286:16 286:19 | | | | situational(1) 28:18 | | | |
| | | | | situations(5) 15:17 88:23 100:1 212:10 212:11 | | sometime(1) 302:7 | |
| settlement(9) 182:5 189:4 189:7 193:1 193:3 208:2 208:6 220:14 294:17 | | | | | | sometimes(8) 28:7 71:6 100:8 100:9 212:9 225:24 225:24 227:8 | |
| | | | | six(41) 25:7 41:21 41:21 41:23 50:11 51:9 56:8 72:6 101:19 106:24 107:11 135:4 135:9 135:13 136:1 139:1 143:4 145:24 146:2 164:13 165:17 167:23 197:3 200:10 205:4 205:5 206:11 206:12 207:17 207:22 207:22 208:13 208:25 216:20 216:23 217:5 217:12 233:24 233:24 247:25 306:13 | | | |
| settlements(1) 36:8 | | | | | | | |
| seven(9) 4:4 72:4 102:4 102:5 124:9 145:19 166:17 303:23 303:24 | | show(12) 54:24 55:13 98:16 127:22 127:24 179:11 183:11 192:10 197:12 279:12 281:14 294:16 | | | | somewhat(5) 40:1 67:25 106:13 157:10 261:16 |
| | | | | | | | |
| | | | | | | somewhere(2) 88:19 230:6 | |
| several(10) 62:14 114:2 115:12 121:14 153:23 201:2 218:5 245:13 254:5 272:12 | | showed(2) 39:3 154:2 | | | | song(1) 7:25 | |
| | | showing(9) 13:12 25:6 56:4 57:10 69:6 160:1 186:5 253:9 255:2 | | six-month(14) 41:19 106:18 106:25 107:14 135:19 155:10 155:14 155:20 186:21 186:21 199:8 206:14 214:8 252:3 | | soon(2) 252:10 305:1 | |
| severe(1) 239:17 | | | | | | sooner(1) 250:7 | |
| shaded(1) 135:15 | | | | | | sophisticated(2) 245:1 245:21 | |
| shadow(1) 223:22 | | shown(5) 105:10 154:2 160:24 197:16 250:18 | | | | sorry(34) 32:19 35:20 51:13 51:15 53:6 53:19 55:19 63:6 80:1 80:3 83:7 104:21 108:11 108:12 112:12 121:23 155:12 157:19 163:15 163:17 164:1 181:2 234:6 253:3 257:5 269:6 277:6 281:23 283:13 285:1 294:14 294:24 300:17 302:18 |
| shall(3) 256:22 285:11 300:20 | | | | | | | |
| shall,"(1) 285:6 | | | | six-months(3) 155:4 155:17 156:22 | | | |
| shamah(1) 5:23 | | shows(8) 51:10 51:20 107:9 124:21 135:24 153:6 191:18 207:11 | | size(8) 35:1 173:21 187:22 212:22 218:6 224:9 233:12 241:12 | | | |
| share(1) 202:10 | | | | | | | |
| shares(2) 111:23 179:1 | | | | | | | |
| sharing(1) 249:17 | | shucks(1) 21:21 | | sizing(2) 89:14 122:3 | | sort(12) 46:5 244:2 244:25 245:17 247:2 278:22 279:12 294:9 294:10 294:22 295:11 296:6 |
| shave(1) 233:16 | | shut(2) 147:13 189:10 | | skadden(1) 9:7 | | | |
| she(8) 33:4 65:19 65:19 77:24 78:4 78:10 80:15 80:17 | | shy(1) 35:6 | | skip(2) 217:19 220:5 | | | |
| | | side(25) 10:24 38:18 40:3 84:18 89:1 93:17 97:7 119:20 119:21 122:10 123:3 123:9 184:15 184:16 191:13 191:18 193:15 193:16 199:25 211:24 223:17 233:1 235:10 235:11 236:10 | | slate(1) 9:7 | | sorted(1) 291:8 | |
| | | | | slater(1) 7:3 | | sorts(1) 174:11 | |
| shebang(1) 189:10 | | | | sleep(1) 37:4 | | sottile(1) 3:25 | |
| shed(1) 287:5 | | | | sleet(3) 258:24 272:23 274:1 | | sought(6) 30:12 165:20 166:2 200:17 200:18 200:19 | |
| sheffield(1) 8:48 | | | | slide(1) 145:10 | | | |
| sheron(4) 3:47 86:4 91:22 134:13 | | | | slight(1) 40:6 | | | |
| she's(2) 65:18 66:9 | | | | slightly(4) 19:8 39:25 40:14 219:18 | | sound(2) 1:48 308:10 | |
| shift(1) 32:5 | | sidelines(2) 147:12 189:14 | | sloan(1) 2:29 | | sounded(1) 46:8 | |
| shifting(1) 241:1 | | sides(2) 237:5 293:18 | | slope(1) 126:17 | | source(7) 93:22 103:2 120:25 121:17 139:24 141:13 142:8 | |
| shocked(1) 214:1 | | sidley(1) 1:23 4:24 | | slow(1) 298:3 | | | |
| sholes(1) 140:9 | | siegel(1) 7:8 | | slowing(1) 303:18 | | | |
| short(8) 26:6 87:2 103:23 218:7 247:2 259:7 306:19 306:23 | | sieger(1) 7:13 | | small(2) 60:1 245:18 | | sources(2) 161:9 180:6 | |
| | | signals(3) 22:16 245:16 283:16 | | smaller(5) 19:8 160:5 215:22 216:19 | | south(2) 1:30 2:28 | |
| | | signature(2) 49:1 94:14 | | smart(1) 177:24 | | southern(2) 89:22 196:18 | |
| shorten(2) 86:11 303:8 | | signed(2) 49:3 126:11 | | smoke(1) 22:17 | | sox(1) 226:8 | |
| shorter(4) 12:13 85:22 106:13 238:25 | | significance(1) 255:8 | | snippet(2) 287:21 287:23 | | space(2) 26:12 31:11 | |
| shortest(1) 106:5 | | significant(12) 58:23 59:6 59:7 100:4 101:3 129:1 130:13 173:20 222:15 247:13 248:4 249:23 | | so-called(3) 269:23 287:22 295:7 | | spaces(1) 26:12 | |
| shortly(3) 22:14 23:3 303:13 | | | | so."(1) 289:14 | | spaeder(3) 3:24 5:10 | |
| shot(2) 46:11 46:12 | | | | | | spam(2) 22:11 307:5 | |
| | | significantly(4) 35:14 98:19 126:23 249:4 | | sold(10) 57:25 58:1 116:21 116:23 125:20 125:24 126:2 159:11 203:7 244:24 | | sparing(1) 202:6 | |
| | | signifies(1) 153:12 | | | | speak(1) 259:4 | |
| | | silver(2) 8:24 8:25 | | | | speaking(2) 283:6 291:22 | |
| | | silverstein(1) 3:3 | | sole(4) 47:13 270:1 270:2 280:18 | | speaks(1) 263:19 | |
| | | similar(9) 100:1 101:11 109:23 266:22 267:2 276:15 277:1 283:20 284:6 | | solely(2) 91:18 197:24 | | spec(1) 239:11 | |
| | | | | solicitude(1) 183:11 | | | |
| | | | | solid(1) 47:3 | | | |
| | | similarly(2) 199:7 294:4 | | solutions(1) 27:15 | | | |
| | | simple(1) 216:5 | | solve(4) 23:10 224:1 253:19 255:13 | | | |
| | | simply(19) 10:16 14:14 94:25 107:10 118:21 125:5 125:19 141:23 211:3 211:7 271:5 271:16 281:10 286:5 286:6 287:24 292:12 303:21 306:5 | | solved(1) 164:8 | | | |
| sin(2) 233:7 237:6 | | | | | | | |
| | | since(11) 12:14 15:13 18:4 18:6 38:5 88:10 126:17 128:2 133:18 221:20 272:8 | | | | | |
| | | | | | | | |
| | | singh(3) 169:13 169:16 169:17 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **special**(4) 9:6 81:14 180:20 243:6 | | **statute**(35) 15:18 16:5 180:20 256:14 257:5 257:19 259:9 262:8 263:7 264:24 266:21 274:16 274:20 275:25 276:8 276:14 277:14 278:23 280:5 282:2 282:15 283:13 284:10 284:19 285:1 286:21 287:12 288:2 289:14 298:25 299:5 300:16 301:2 301:3 301:4 | | **stool**(1) 32:13 | | **successful**(4) 116:14 162:1 213:12 213:13 | |
| **specializing**(1) 88:7 | | | | **stop**(15) 46:15 46:17 48:10 81:6 186:13 201:17 235:22 237:13 237:14 253:23 272:7 294:24 294:24 294:25 298:20 | | **such**(20) 22:1 28:12 103:14 132:9 139:2 141:10 141:20 142:10 142:14 144:8 182:18 188:17 191:8 198:5 212:25 231:14 274:6 274:9 275:1 282:15 | |
| **specific**(31) 19:17 25:4 25:23 27:22 28:1 43:9 46:5 54:21 89:13 104:24 131:3 183:1 183:16 185:19 186:5 221:11 222:25 223:12 241:20 242:7 256:19 257:1 266:23 266:25 267:1 267:7 267:13 271:21 271:22 295:11 307:10 | | | | **stopped**(3) 47:5 213:10 213:11 | | **sudden**(1) 194:14 | |
| | | **statute."**(1) 288:16 | | **stopping**(2) 43:19 213:21 | | **suffer**(4) 126:3 138:25 147:16 189:16 | |
| | | **statutes**(1) 181:8 | | **stops**(1) 47:1 | | **suffered**(16) 93:8 93:21 108:6 111:3 114:7 121:1 121:9 121:13 121:20 130:19 138:11 139:10 139:21 141:9 142:11 154:12 | |
| | | **statute's**(2) 262:6 287:20 | | **stores**(1) 226:6 | | | |
| | | **statute"**(1) 284:15 | | **stories**(1) 60:5 | | | |
| **specifically**(14) 23:22 31:24 33:20 40:10 42:15 64:13 68:8 73:4 73:10 103:17 190:25 236:23 265:16 273:21 | | **statutory**(6) 16:12 281:17 287:5 288:14 288:21 288:23 | | **straight**(3) 140:4 152:3 268:2 | | **suffering**(3) 25:14 189:18 232:21 | |
| | | | | **strange**(2) 297:25 297:25 | | **suffers**(2) 132:24 213:6 | |
| **specificity**(2) 28:22 248:2 | | **stay**(228) 10:12 10:16 11:6 11:18 11:19 11:21 12:9 12:16 12:25 13:9 13:12 14:1 14:12 14:19 14:21 14:22 14:24 15:1 16:17 16:20 18:10 18:18 19:4 20:9 21:14 21:19 29:7 33:13 34:6 35:15 36:18 38:25 40:16 41:8 41:15 41:16 41:19 42:1 46:17 46:24 49:9 69:13 69:18 69:21 70:4 70:12 71:12 71:13 72:10 75:7 75:13 76:9 76:13 76:22 84:9 85:1 85:6 89:14 89:25 90:7 90:8 90:9 90:11 93:3 93:9 93:23 95:13 96:17 98:7 99:7 101:2 101:9 101:15 102:21 105:24 106:18 106:19 108:1 109:4 112:8 114:5 114:11 117:10 118:6 118:23 121:6 122:13 122:15 123:12 125:12 125:15 126:20 126:21 126:23 127:3 129:12 133:1 133:11 133:19 134:17 134:18 135:4 136:17 138:11 138:14 138:16 140:3 141:10 144:1 144:21 145:17 145:15 146:24 157:9 157:15 157:24 158:16 166:10 179:21 180:8 182:10 183:2 183:18 183:24 184:1 184:11 184:12 184:18 185:4 185:14 185:18 185:19 185:20 185:24 186:1 186:7 186:8 186:12 186:18 186:21 186:24 186:25 188:6 188:17 191:7 193:23 194:16 194:18 195:3 195:6 195:16 196:23 196:24 197:1 197:9 197:11 198:3 199:7 199:8 199:8 200:17 203:4 203:4 207:23 210:20 211:13 212:13 213:3 214:11 217:16 218:5 218:12 219:12 222:2 223:3 223:17 224:8 224:8 224:20 224:24 224:25 225:6 225:6 226:18 228:8 230:14 230:17 231:5 231:25 232:4 232:25 234:6 234:7 234:11 238:4 241:8 242:10 245:7 246:20 247:9 248:20 249:22 249:24 250:11 250:16 250:23 251:2 251:7 251:8 252:3 252:13 252:17 252:22 253:10 254:5 254:6 254:8 254:11 254:15 254:16 269:23 276:7 305:9 305:9 305:10 305:23 306:3 | | **strangers**(2) 292:16 292:19 | | **sufficient**(3) 25:14 189:18 232:21 | |
| **specifics**(1) 61:18 | | | | **strategic**(2) 26:2 42:5 | | **suffers**(2) 132:24 213:6 | |
| **specter**(1) 196:6 | | | | **strategy**(1) 78:9 | | **sufficient**(3) 192:13 | |
| **speculation**(1) 199:13 | | | | **strauss**(7) 4:14 75:2 84:6 162:20 179:19 275:21 277:7 | | **suggest**(20) 10:14 33:1 97:12 125:4 131:21 138:4 138:7 223:3 242:4 245:6 264:22 265:23 275:13 279:21 280:4 285:14 286:5 294:11 296:11 301:20 | |
| **speculative**(7) 29:17 29:20 73:12 127:2 170:4 172:6 199:19 | | | | | | | |
| **spelled**(1) 288:8 | | | | **streaming**(1) 294:20 | | **suggested**(12) 12:9 30:19 33:22 120:12 139:16 169:17 279:2 280:10 | |
| **spend**(2) 34:9 217:1 | | | | **street**(11) 1:12 1:25 1:43 2:16 2:31 2:37 3:5 3:11 3:33 3:41 4:10 | | | |
| **spending**(3) 40:21 40:24 41:3 | | | | | | **suggesting**(8) 40:21 120:20 136:24 137:2 142:16 142:18 145:4 177:5 | |
| **spent**(3) 118:2 202:6 254:20 | | | | **strike**(10) 54:22 70:2 84:7 122:24 127:2 171:12 193:21 294:8 294:21 295:24 | | | |
| **sperling**(1) 7:3 | | | | | | **suggestion**(7) 30:17 111:10 113:4 113:17 131:12 174:10 280:5 | |
| **spinning**(1) 42:6 | | | | **strikes**(3) 199:15 266:20 296:6 | | | |
| **split**(6) 15:5 15:5 16:5 256:10 256:19 276:15 | | | | **striking**(1) 171:15 | | **suggestive**(1) 218:24 | |
| | | | | **strikingly**(1) 266:21 | | **suggests**(2) 25:13 217:4 | |
| | | | | **strip**(5) 157:3 157:4 157:6 184:8 184:16 | | **sui**(2) 186:5 198:22 | |
| **spoke**(5) 12:10 52:5 54:18 250:3 250:3 | | | | **strong**(2) 13:12 199:20 | | **suite**(2) 3:12 3:33 | |
| **spoken**(3) 57:2 203:15 286:18 | | | | **stronger**(2) 230:9 260:8 | | **sullivan**(1) 4:8 | |
| **sponte**(2) 16:10 296:21 | | | | **struck**(4) 171:22 247:3 298:24 299:11 | | **summarize**(3) 20:7 88:5 223:21 | |
| **spot**(1) 293:8 | | | | **structure**(8) 58:5 58:14 58:22 237:3 262:6 266:2 268:8 284:15 | | **summarizes**(1) 115:6 | |
| **spurious**(1) 261:16 | | | | | | **summary**(3) 44:1 51:3 309:18 | |
| **square**(4) 2:15 2:30 4:4 36:23 | | | | **structured**(1) 91:13 | | **sun**(2) 59:12 59:17 | |
| **squarely**(1) 223:17 | | | | **stuart**(1) 6:10 | | **super**(1) 33:21 | |
| **staff**(3) 214:2 308:4 308:4 | | | | **stuck**(1) 292:8 | | **supersede**(1) 283:21 | |
| **stage-setting**(1) 278:22 | | | | **studied**(1) 129:10 | | **supplant**(1) 288:13 | |
| **stake**(4) 59:21 216:10 222:17 249:12 | | | | **stuff**(5) 171:5 225:20 291:5 298:11 304:14 | | **supplants**(1) 264:23 | |
| **staked**(1) 280:3 | | **stayed**(2) 94:18 129:25 | | **stump**(1) 303:1 | | **supplement**(1) 288:13 | |
| **stand**(10) 16:24 17:8 20:20 48:3 87:5 163:17 206:7 214:23 265:15 276:9 | | **staying**(4) 37:15 95:18 132:7 207:5 | | **style**(1) 279:10 | | **supplemental**(4) 52:21 82:13 115:19 309:23 | |
| | | **stays**(5) 118:7 132:18 182:11 185:1 190:20 | | **sua**(2) 16:10 296:21 | | **supplied**(1) 72:10 | |
| | | **ste**(2) 1:36 3:48 | | **subject**(17) 36:3 69:25 84:11 106:18 181:15 181:18 190:6 204:21 242:10 252:10 256:12 269:4 269:6 269:7 269:8 306:23 307:2 | | **support**(21) 18:17 37:14 38:8 72:18 72:24 73:3 73:7 73:8 73:14 90:3 94:15 103:22 106:9 195:18 239:9 260:11 270:24 277:21 300:11 300:15 301:20 | |
| **standard**(8) 131:24 218:20 220:20 220:21 222:4 226:23 241:3 241:4 | | **steege**(1) 5:34 | | | | | |
| | | **steen**(1) 1:28 | | | | | |
| | | **steering**(1) 97:23 | | | | | |
| **standards**(4) 16:4 219:12 241:8 243:8 | | **stein**(2) 2:44 | | **submission**(4) 19:20 132:12 249:21 297:24 | | **supported**(3) 218:20 227:18 235:13 | |
| **stands**(3) 180:24 198:19 280:14 | | **step**(8) 30:4 83:19 179:9 192:24 200:5 204:24 238:22 294:24 | | **submissions**(1) 14:7 | | **supporting**(1) 277:12 | |
| **standstill**(1) 189:19 | | | | **submit**(14) 86:7 86:9 193:11 204:11 210:6 210:9 222:12 246:21 247:5 255:2 282:2 302:7 306:18 307:6 | | **supports**(2) 259:8 275:22 | |
| **stanley**(1) 8:43 | | | | | | **suppose**(1) 187:18 | |
| **stargatt**(1) 2:12 | | **stephen**(2) 1:40 3:2 | | | | **supposed**(8) 141:25 205:6 216:6 230:23 230:24 235:10 237:5 255:7 | |
| **start**(12) 11:6 45:18 46:1 46:15 73:17 85:16 157:10 179:12 180:3 211:21 235:8 236:6 | | **steps**(2) 19:8 68:16 | | | | | |
| | | **stick**(2) 191:23 229:4 | | **submitted**(4) 24:7 90:2 166:8 166:12 | | **supreme**(23) 104:5 256:14 258:4 258:8 259:8 261:1 261:4 266:22 270:16 281:6 281:20 282:9 283:12 283:15 283:18 283:22 283:24 285:22 287:2 287:4 287:17 297:12 299:19 | |
| | | **still**(14) 10:24 40:15 141:3 144:21 169:18 171:2 171:18 174:14 209:4 215:5 225:9 258:21 258:21 258:22 | | **submitting**(2) 169:3 169:12 | | | |
| **started**(10) 45:2 46:13 46:16 148:14 214:2 214:4 223:10 247:3 247:3 259:9 | | | | **subordinate**(1) 294:3 | | | |
| | | | | **subordinated**(4) 261:7 266:2 268:6 268:7 | | | |
| | | | | **subordination**(29) 261:14 261:21 266:10 266:11 266:16 267:14 267:20 268:3 271:3 271:9 272:3 276:18 280:2 291:23 291:24 292:1 292:2 292:12 292:15 292:16 292:19 292:19 294:2 294:6 295:6 300:3 301:9 301:15 | | | |
| **starting**(4) 45:6 165:1 219:7 266:5 | | | | | | **sure**(41) 12:11 12:18 28:3 48:14 68:15 76:13 85:20 89:19 96:13 105:11 107:10 115:10 124:22 140:19 144:5 151:1 151:14 152:6 163:3 175:10 181:2 190:15 191:17 194:9 194:19 208:1 208:4 208:6 211:6 211:13 218:18 218:19 229:17 232:2 232:11 246:8 263:10 266:7 275:5 289:24 304:25 | |
| **starts**(7) 21:10 21:12 80:12 81:13 148:15 213:14 255:9 | | | | | | | |
| **state**(3) 43:21 82:9 283:7 | | **stephen**(2) 1:40 3:2 | | **subparagraph**(1) 256:21 | | | |
| **stated**(3) 70:16 218:21 288:25 | | | | **subscribers**(1) 20:20 | | | |
| **statement**(16) 16:15 58:2 58:20 59:1 62:21 65:18 66:25 67:3 80:1 127:2 141:16 220:13 253:8 283:22 283:23 285:23 | | | | **subsection**(2) 285:9 300:19 | | | |
| | | | | **subsections**(1) 278:12 | | | |
| **statements**(3) 23:15 66:10 227:24 | | | | **subsequent**(5) 132:12 281:7 282:24 287:15 288:6 | | **surprise**(1) 11:25 298:19 | |
| **states**(7) 1:1 1:20 40:24 103:25 242:19 261:1 281:20 | | | | | | **surprised**(2) 11:23 68:13 | |
| | | | | | | **surprising**(1) 288:17 | |
| **stating**(2) 283:21 290:7 | | **stilted**(1) 181:18 | | **substance**(1) 57:5 | | **survey**(1) 149:1 | |
| **station**(2) 23:18 33:21 | | **stipulate**(1) 166:15 | | **substantial**(7) 90:11 94:1 108:2 133:22 188:4 192:16 220:7 | | **susceptible**(1) 288:4 | |
| **stations**(5) 18:1 33:21 78:25 253:15 253:23 | | **stock**(12) 177:14 185:15 202:10 202:12 202:14 202:19 203:5 203:6 203:7 203:18 203:19 222:17 | | | | **suspect**(2) 224:6 286:9 | |
| **statistics**(1) 103:13 | | | | **substantially**(3) 14:19 121:7 121:10 | | **suspend**(1) 182:16 | |
| **statues**(1) 180:14 | | **stocks**(1) 124:6 | | **subtract**(2) 109:2 207:2 | | **suspended**(2) 64:5 68:10 | |
| **status**(3) 36:13 42:24 71:14 | | **stone**(2) 3:44 7:29 | | **succeed**(3) 13:13 294:14 294:15 | | **suspension**(1) 69:6 | |
| | | | | **success**(1) 14:3 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**sustain**(1) 48:11
**sustained**(11) 45:9 49:14 55:11 65:23 128:20 167:8 167:10 170:5 170:18 172:12 172:24
**sustaining**(2) 61:15 171:14
**suttonbrook**(2) 5:26 5:27
**swap**(4) 295:2 295:4 295:9 297:5
**sway**(1) 221:7
**swede**(1) 273:19
**sweep**(1) 115:15
**swept**(1) 295:10
**swift**(1) 15:8
**swing**(1) 40:24
**sworn**(3) 17:8 17:9 87:13
**symbol**(3) 225:21 225:22 225:22
**syntactically**(1) 285:2
**system**(3) 228:3 228:14 232:2
**systemic**(1) 186:18
**systems**(3) 22:12 23:4 78:23

**tab**(31) 18:15 19:19 19:22 22:19 23:24 26:1 31:17 34:20 39:6 48:19 55:19 55:20 58:19 94:3 94:17 98:6 103:16 104:10 107:1 124:12 127:13 135:11 135:13 145:10 145:11 145:14 155:6 155:8 163:25 164:4 167:16
**table**(5) 163:4 163:23 234:16 241:22
**tag**(1) 245:25
**tagalong**(1) 293:21
**tailor**(1) 179:24
**take**(82) 11:12 14:5 22:19 23:24 24:25 28:6 30:12 32:7 38:25 74:10 76:15 83:10 83:12 83:18 84:21 85:6 85:24 85:25 85:25 94:3 94:17 96:3 97:4 98:6 103:8 103:15 103:24 106:8 106:12 117:8 117:18 121:21 127:12 130:22 132:18 133:24 158:3 159:4 163:1 167:16 167:17 168:6 169:13 176:16 176:19 179:12 179:13 183:14 189:11 190:17 191:11 192:24 194:13 200:1 200:24 206:21 208:9 211:15 214:15 218:1 222:18 229:21 236:17 239:8 241:20 243:5 244:14 244:22 249:12 249:12 252:13 252:20 255:22 263:8 276:3 284:22 295:21 296:7 298:8 301:8 302:4 306:23

**taken**(9) 31:1 56:6 68:16 201:1 207:13 242:16 246:1 247:15 271:24

**takes**(3) 83:17 207:2 233:25
**taking**(9) 22:16 85:22 134:2 142:25 177:1 190:6 208:24 208:25 250:14

**talent**(4) 31:19 32:2 32:24 34:5
**talk**(41) 19:17 28:4 28:13 79:10 134:17 142:21 156:23 181:13 182:20 184:23 185:5 185:21 189:1 193:16 200:11 200:20 203:16 212:2 213:18 215:2 215:22 216:13 227:19 228:15 232:6 237:7 237:8 240:24 243:14 243:18 243:22 254:18 258:18 270:11 280:12 281:9 282:21 284:24 290:9 291:6 300:2

**talked**(22) 10:23 27:7 73:21 80:17 98:21 125:24 132:4 166:23 190:19 203:22 209:9 215:4 229:13 243:11 247:10 249:4 250:21 254:17 269:14 279:17 291:23 304:1

**talking**(37) 21:3 28:11 52:11 58:6 105:13 120:23 135:14 155:13 157:19 183:8 186:15 186:16 187:23 199:13 201:20 207:19 210:11 212:5 220:21 221:5 226:23 236:7 243:23 244:23 256:17 257:9 258:8 262:4 284:8 289:18 290:22 292:13 299:18 299:22 302:2 306:2 307:1

**talks**(5) 231:14 274:16 274:21 299:25
**tallied**(1) 88:18
**tammy**(1) 308:15
**tangible**(2) 183:1 226:16
**tantalizing**(1) 74:18
**target**(1) 182:22

**task**(1) 180:6
**tasked**(1) 29:13
**tasks**(1) 241:20
**tax**(7) 58:13 58:23 59:7 132:20 133:12 157:17 207:7

**taxes**(5) 132:22 222:23 249:3 290:1 290:2
**taxpayer**(3) 132:15 132:17 222:22
**taylor**(1) 2:12
**tci-ii**(1) 263:20
**team**(2) 78:19 221:11
**technically**(5) 112:4 202:1 244:24 245:8 251:23

**technology**(5) 59:24 78:16 78:21 78:22
**teeth**(1) 191:19
**telephone**(4) 87:1 100:8 204:14 305:22
**telephonic**(1) 4:22
**television**(3) 18:1 32:6 78:25
**tell**(25) 11:3 13:19 14:16 69:24 145:22 168:16 187:6 189:21 197:5 199:14 201:20 205:7 205:9 215:6 225:25 237:13 245:21 261:10 263:2 269:17 275:6 290:16 291:1 291:4 291:19

**telling**(5) 188:21 226:15 234:17 285:18 302:19

**tells**(4) 219:2 225:13 239:4 288:22
**temporal**(1) 252:21
**ten**(2) 88:4 194:3
**tend**(1) 220:4
**tended**(1) 86:20
**tens**(1) 253:22
**term**(18) 45:18 52:13 108:4 110:14 115:13 115:14 116:16 116:18 183:18 184:11 226:9 226:10 261:16 261:23 262:3 262:4 262:18 294:2

**terms**(18) 25:6 28:5 66:22 78:5 79:8 115:13 116:16 182:18 188:3 186:2 201:7 212:1 231:14 237:15 249:3 260:15 263:16 276:14
**terms."**(1) 287:7
**terrible**(2) 14:9 41:16
**terribly**(1) 219:14
**terrific**(1) 198:23
**test**(5) 200:5 221:24 221:25 222:14 278:10
**testified**(23) 66:1 69:12 75:4 110:3 134:3 137:16 141:3 142:23 143:18 147:5 147:15 147:19 159:18 159:19 172:8 204:9 206:7 206:24 207:4 207:16 207:18 210:2 215:4

**testify**(12) 16:24 18:9 130:8 132:5 142:15 157:13 185:9 193:20 204:2 205:3 229:6 246:2
**testifying**(6) 63:11 91:24 92:1 168:19 203:25 228:25 229:2 229:3

**testimonies**(1) 92:8
**testimony**(27) 18:8 31:3 33:22 47:25 48:3 75:19 81:3 83:24 86:1 86:8 92:24 92:25 94:15 97:15 102:14 112:18 132:19 147:17 173:8 188:1 193:18 199:15 199:16 203:23 210:4 218:4 223:21

**tests**(1) 219:11
**texas**(1) 196:19
**text**(10) 176:9 180:13 181:8 288:1 288:14 288:15 288:21 288:23 289:14 290:12

**texts**(1) 136:24
**textual**(3) 300:11 300:15 301:20

**than**(58) 22:8 25:11 27:12 43:10 71:15 84:10 84:21 85:7 85:9 97:4 102:17 102:18 104:4 109:16 112:7 121:10 122:18 122:24 129:3 130:11 133:10 151:7 153:9 153:25 154:16 154:17 154:19 154:20 158:14 167:23 186:11 186:22 186:25 189:12 191:21 194:4 198:16 202:23 208:23 211:15 223:5 226:14 232:11 233:13 239:20 244:12 250:7 260:9 263:18 264:25 267:16 281:1 282:8 285:10 300:19 300:25 303:20 304:2

**thank**(59) 22:6 30:1 41:5 44:12 44:13 49:15 52:19 59:2 65:3 68:20 76:25 82:4 87:16 87:17 92:22 112:13 124:18 151:12 162:7 162:17 176:12 179:4 179:8 179:15 184:5 198:7 198:8 205:16 205:22 210:23 210:24 211:9 211:10 241:16 241:17 246:12 246:25 249:24 253:1 255:3 255:4 255:20 270:16 270:17 275:19 276:10 277:4 277:5 277:12 278:3 291:10 297:19 298:11 298:22 298:23 299:12 306:16 306:20 308:1

**thanks**(1) 167:11
**that**(301) 10:14 10:16 10:19 10:20 10:22 10:24 10:24 11:2 11:5 11:14 11:15 12:9 12:15 12:18 12:24 13:2 13:3 13:6 13:7 13:22 13:24 14:2 14:5 14:6 14:9 14:11 14:14 14:17 14:24 14:25 14:25 15:2 15:3 15:12 15:20 15:20 15:21 15:22 16:1 16:1 16:3 16:7 16:13 16:13 16:15 16:19 16:21 16:23 17:2 17:2 17:24 18:3 18:10 18:13 18:18 18:18 19:1 19:7 19:16 19:19 19:22 20:8 20:12 20:15 20:22 20:25 20:25 21:2 21:4 21:4 21:6 21:8 21:11 21:15 21:17 21:19 22:4 22:11 22:14 22:17 22:20 23:9 23:8 23:12 23:19 24:2 24:5 24:12 24:13 24:15 24:23 24:25 25:9 25:11 25:12 25:13 25:13 25:14 25:16 25:22 26:2 26:7 26:12 26:12 26:14 26:21 27:9 27:10 27:23 28:2 28:3 28:5 28:6 28:11 28:11 28:12 28:17 28:25 29:13 29:14 29:14 29:15 30:5 30:6 30:15 30:19 30:19 30:19 30:21 30:23 30:23 31:1 31:2 31:3 31:12 31:13 31:19 31:21 31:25 32:2 32:3 32:8 32:11 32:14 32:24 33:1 33:5 33:6 33:8 33:9 33:10 33:12 33:14 33:15 33:15 33:17 33:18 34:5 34:5 34:8 34:10 34:17 34:21 34:23 35:17 36:1 36:4 36:4 36:4 36:8 36:18 36:21 36:21 37:2 37:2 37:6 37:7 37:9 37:9 37:10 37:14 37:14 37:19 37:21 38:4 38:5 38:8 38:8 38:11 38:13 38:13 38:15 38:16 38:17 38:23 39:1 39:4 39:8 39:10 39:11 39:11 39:19 39:20 40:1 40:4 40:7 40:12 40:13 40:16 40:18 40:19 40:21 40:21 40:21 40:23 41:2 41:8 41:10 41:11 41:12 41:13 41:20 41:21 41:25 42:2 42:10 42:15 42:20 42:23 43:16 44:2 44:4 44:16 44:20 44:25 45:1 45:2 45:3 45:12 45:14 45:20 45:21 45:21 46:9 46:13 46:14 46:14 46:16 46:17 46:17 46:25 47:4 47:5 47:7 47:8 47:18 48:1 48:4 48:5 48:12 49:6 49:11 50:8 50:17 50:20 51:5 51:11 51:18 51:20 51:25 52:3 52:5 52:6 52:8 52:12 52:13 52:15 53:14 53:20 53:24 54:2 54:5 54:7 54:9 54:10 54:12 54:13 54:15 54:16 54:23 54:25 55:13

**that**(301) 55:13 55:14 55:19 55:22 55:24 56:2 56:4 56:8 56:11 56:14 56:16 56:18 56:21 56:23 56:24 56:25 57:4 57:6 57:7 57:11 57:24 58:5 58:10 58:11 58:15 58:16 58:18 58:21 59:1 59:3 59:6 59:14 59:18 59:21 59:23 59:23 60:2 60:3 60:7 60:10 60:13 60:15 60:15 60:16 60:16 60:18 60:19 60:21 60:24 61:4 61:7 61:12 61:17 61:18 61:20 61:21 61:24 62:2 62:4 62:7 62:9 62:11 62:13 62:15 62:16 62:19 62:20 62:20 63:10 63:11 63:13 63:15 63:17 63:17 63:24 64:4 64:11 64:22 65:23 65:25 66:1 66:7 66:9 66:14 66:23 67:8 67:11 67:11 67:13 67:14 67:18 67:21 67:22 67:22 67:23 68:3 68:9 68:12 68:12 68:14 68:16 68:16 68:17 69:6 69:6 69:6 69:10 69:13 69:14 69:16 69:17 69:18 69:18 70:2 70:2 70:4 70:4 70:7 70:7 70:17 70:18 70:18 70:19 70:21 71:5 71:15 71:20 71:20 71:23 71:23 72:8 72:10 72:11 72:13 72:14 72:15 72:15 72:16 72:17 72:18 72:21 72:24 72:25 73:1 73:4 73:6 73:7 73:9 73:11 73:12 73:15 73:19 73:20 73:22 73:25 74:3 74:4 74:6 75:4 75:8 75:22 76:2 76:3 76:9 76:10 76:19 77:10 77:15 77:17 77:21 78:1 78:1 78:8 78:14 78:19 78:22 78:24 79:2 79:3 79:7 79:11 79:14 79:16 79:18 79:18 79:19 79:22 80:13 80:13 80:16 80:17 80:19 80:20 80:21 81:2 81:13 82:21 83:1 83:16 83:19 83:9 83:20 83:21 84:1 84:1 84:7 84:9 85:9 85:15 85:17 86:1 86:7 86:9 86:10 86:16 86:17 86:20 86:21 87:25 88:17 88:21 88:24 89:6 89:6 89:13 89:18 89:20 89:23 89:23 89:24 89:25 90:2 90:10 90:11 90:13 90:16 91:9 91:24 91:25 92:1 92:1 92:7 92:10 92:13 92:13 92:16 92:18 93:2 93:5 93:7 93:16 93:18 93:19 94:1 94:4 94:5 94:7 94:14 94:15 94:15 94:18 94:19 94:21 94:21 95:4 95:8 95:10 95:12 95:13 95:13 95:21 95:23 95:25 96:1 96:12 96:24 97:1 97:2 97:2 97:7 97:5 97:13 97:14 97:15 97:17 97:19 97:22 97:24 98:4 98:4 98:8 98:10 98:18 98:23 99:5 99:9 99:13 99:13 99:14

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(301) 99:19 99:23 99:23 99:25 100:4 | | **that**(301) 132:12 132:13 132:13 132:14 | | **that**(301) 178:16 178:20 179:10 180:1 | | **that**(301) 213:15 213:16 213:19 213:20 | |

that(301) 99:19 99:23 99:23 99:25 100:4
100:11 100:12 100:16 100:18 100:19
100:22 100:24 101:1 101:6 101:7 101:16
101:22 102:2 102:8 102:10 102:12 102:12
102:15 102:16 102:20 102:24 102:25 103:3
103:5 103:13 103:18 103:21 103:23
103:24 104:5 104:8 104:11 104:15 104:19
104:20 104:25 105:2 105:25 106:10 106:14
106:16 106:17 106:19 106:21 107:4
107:20 107:25 108:2 108:6 108:7 108:8
108:8 108:13 108:13 108:18 108:21 108:22
108:23 108:25 109:2 109:3 109:3 109:6
109:7 109:13 109:19 109:19 109:20 109:22
109:23 109:25 110:2 110:5 110:6 110:8
110:12 110:16 110:17 110:18 110:20
110:20 110:22 111:1 111:2 111:4 111:6
111:8 111:11 111:11 111:12 111:13 111:14
111:16 111:17 111:19 111:21 111:23 112:1
112:3 112:7 112:9 112:25 113:2 113:4
113:6 113:8 113:11 113:12 113:14 113:17
113:18 113:20 113:22 113:24 113:25 114:6
114:7 114:8 114:10 114:14 114:14 114:16
114:22 114:22 114:23 114:24 115:1 115:2
115:5 115:9 115:11 115:11 115:17 115:17
115:18 116:1 116:2 116:3 116:6 116:9
116:12 116:13 116:14 116:18 116:19
116:20 116:20 116:22 116:25 116:25 117:5
117:5 117:9 117:10 117:13 117:14 117:16
117:18 118:1 118:2 118:4 118:4 118:6
118:9 118:11 118:15 118:15 118:15 118:17
118:18 118:18 118:19 118:20 118:24 119:2
119:3 119:6 119:6 119:7 119:9 119:12
119:14 119:14 119:16 119:20 119:20
119:20 119:21 119:24 119:24 119:25 120:1
120:2 120:3 120:4 120:8 120:9 120:12
120:14 120:16 120:17 120:20 120:20
120:22 121:2 121:7 121:8 121:9 121:12
121:13 121:20 122:3 122:9 122:15 122:18
122:19 122:21 122:24 123:1 123:2 123:10
123:12 123:18 123:19 123:24 124:2 124:6
124:7 124:10 124:10 124:22 125:2 125:6
125:10 125:12 125:14 125:15 125:18
125:18 125:24 126:2 126:5 126:8 126:9
126:11 126:13 126:16 126:18 126:20
126:21 126:21 126:23 126:24 126:25 127:2
127:8 127:15 127:20 128:1 128:4 128:7
128:9 128:14 129:1 129:2 129:3 129:6
129:7 129:7 129:8 129:17 129:17 129:19
129:22 129:25 130:7 130:10 130:15 130:19
130:22 131:1 131:4 131:6 131:10 131:10
131:13 131:15 131:17 131:18 131:19
131:21 131:23 132:1 132:6 132:8 132:11

that(301) 132:12 132:13 132:13 132:14
132:19 132:21 132:22 132:24 133:5 133:6
133:11 133:13 133:19 133:23 133:24
133:25 134:2 134:5 134:6 134:21 134:22
135:3 135:6 135:7 135:15 135:16 135:17
135:18 135:18 136:1 136:6 136:7 136:19
136:20 136:24 136:24 137:2 137:8 137:9
137:9 137:11 137:13 137:16 137:24 137:24
138:1 138:4 138:9 138:11 138:13 138:15
138:25 139:9 139:16 139:18 139:21 139:22
140:3 140:4 140:9 140:9 140:15 141:1
141:3 141:9 141:16 141:20 141:23 141:25
142:7 142:9 142:10 142:13 142:14 142:16
142:17 142:18 142:18 142:19 142:22 143:4
143:9 143:10 143:10 143:13 143:19
143:20 143:22 144:2 144:13 144:15 144:22
145:4 145:6 145:14 146:10 146:14 146:15
146:21 147:1 147:9 147:11 147:12 147:14
147:15 147:17 147:19 147:19 147:21
147:22 148:5 148:9 148:18 149:13 149:13
149:13 150:2 150:6 150:13 150:15 151:3
151:21 151:23 152:1 152:22 153:12 153:21
154:2 154:2 154:6 154:12 154:16 154:17
154:19 154:20 155:4 155:5 155:7 155:11
155:23 156:1 156:1 156:3 156:5 156:6
156:6 156:7 156:8 156:8 156:10 156:18
156:18 156:19 156:21 156:22 156:25 157:2
157:3 157:4 157:10 157:12 157:13 157:21
157:23 158:1 158:2 158:3 158:6 158:10
158:14 158:16 158:17 158:20 158:24 159:1
159:2 159:3 159:5 159:6 159:9 159:14
159:15 159:17 159:18 159:19 159:21
159:25 159:25 160:1 160:4 160:5 160:7
160:9 160:17 160:18 160:24 161:17 161:20
161:21 161:22 161:24 161:24 162:1 162:2
162:11 163:8 163:12 164:18 164:20 164:23
165:7 165:14 165:25 166:5 166:8 166:12
166:14 166:19 166:20 166:23 167:5 167:16
167:17 167:17 167:22 167:22 167:24
168:2 168:4 168:7 169:4 169:6 169:9
169:14 169:18 169:18 169:18 169:19
169:20 169:22 169:24 170:1 170:2 170:8
170:11 170:13 170:14 170:14 170:20
170:21 170:23 171:5 171:6 172:2 172:8
172:19 173:3 173:6 173:14 173:16 173:18
173:19 173:20 173:21 173:22 173:23
173:25 174:5 174:6 174:10 174:12 174:12
174:16 174:20 175:3 175:4 175:9 175:13
175:16 175:17 176:2 176:25 176:25 177:1
177:3 177:5 177:7 177:7 177:7 177:8 177:9
177:11 177:12 177:14 177:17 177:17 177:18
177:20 177:22 177:25 178:3 178:5 178:10

that(301) 178:16 178:20 179:10 180:1
180:7 180:8 180:10 180:11 180:12 181:3
181:4 181:5 181:7 181:11 181:19 182:4
182:6 182:11 182:14 182:15 182:19 182:22
183:1 183:4 183:5 183:5 183:6 183:8
183:10 183:14 183:15 183:17 183:18
183:23 183:24 184:22 185:3 185:7 185:10
185:11 185:12 185:13 185:15 185:16
185:16 185:16 185:18 185:22 185:23
185:25 186:1 186:3 186:5 186:6 186:7
186:8 186:12 186:13 186:17 186:20 186:23
187:1 187:3 187:7 187:12 187:13 187:14
187:16 187:23 188:1 188:11 188:11 188:13
188:14 188:15 188:16 188:22 189:4 189:4
189:7 189:7 189:8 189:13 189:17 189:18
189:22 189:24 189:24 190:3 190:6 190:11
190:18 190:19 190:21 190:22 190:25 191:2
191:7 191:10 191:14 191:18 191:22
191:23 191:24 191:25 192:1 192:2 192:3
192:4 192:5 192:5 192:7 192:7 192:10
192:11 192:12 192:14 192:17 192:17
192:22 192:22 193:2 193:7 193:9 193:10
193:11 193:17 193:21 193:25 194:2 194:4
194:4 194:9 194:10 194:15 194:22 194:25
195:3 195:3 195:6 195:8 195:12 195:13
195:23 196:1 196:4 196:8 196:11 196:12
196:15 196:17 196:19 196:22 196:23 197:2
197:4 197:7 197:8 197:16 197:18 197:24
198:1 198:5 199:1 199:6 199:10 199:11
199:17 199:12 199:14 199:15 199:15
199:17 200:1 200:2 200:3 200:4 200:5
200:10 200:12 200:12 200:14 200:15
200:20 200:20 200:21 200:22 201:4 201:4
201:5 201:10 201:10 201:13 201:15 201:16
201:17 201:18 201:19 201:20 201:22
202:1 202:3 202:3 202:9 203:3 203:12
203:15 203:21 203:23 204:6 204:9 204:10
204:14 204:18 204:19 204:24 204:25 205:1
205:2 205:3 205:3 205:7 205:7 205:8
205:9 205:12 205:16 205:20 206:2 206:8
206:9 206:10 206:14 206:18 206:21 206:21
206:24 206:25 206:25 207:2 207:4 207:7
207:8 207:9 207:10 207:11 207:12 207:16
207:16 207:19 207:22 207:23 207:25 208:2
208:5 208:5 208:6 208:6 208:7 208:9
208:10 208:12 208:14 208:14 208:15
208:16 209:9 209:10 209:12 209:13 209:13
209:18 209:20 209:24 209:25 210:1 210:4
210:5 210:6 210:8 210:9 210:11 210:13
210:16 210:18 210:18 210:18 210:21 211:3
211:8 211:14 211:24 212:9 212:12 212:14
213:1 213:2 213:3 213:7 213:9 213:10

that(301) 213:15 213:16 213:19 213:20
213:23 214:1 214:4 214:8 214:11 214:12
214:12 214:17 214:18 214:18 215:6 215:7
215:12 215:18 215:21 215:21 215:23
215:23 215:25 216:2 216:7 216:22 216:25
217:2 217:4 217:7 217:14 217:18 217:19
217:24 218:11 218:12 218:18 218:20
218:25 219:1 219:2 219:3 219:5 219:8
219:9 219:10 219:10 219:15 219:16 219:16
219:19 219:23 219:25 220:2 220:6 220:10
220:15 220:15 220:16 220:17 220:19
220:21 220:24 220:25 221:1 221:2 221:10
221:19 221:25 221:25 222:2 222:5 222:6
222:12 222:13 222:13 222:14 222:20
222:20 222:21 222:22 222:23 222:25 223:3
223:8 223:11 223:11 223:12 223:20
223:22 223:23 223:25 224:17 225:5 225:13
225:14 225:17 225:18 225:20 226:3 226:6
226:13 226:15 226:18 226:19 226:20
226:25 227:4 227:12 227:14 227:17 227:19
228:3 228:4 228:6 228:12 228:13 228:16
228:21 228:23 229:5 229:6 229:8 229:9
229:12 229:13 229:14 229:15 229:17
229:21 229:25 229:25 230:4 230:10 230:11
230:11 230:22 230:24 231:7 231:12
231:14 231:16 231:18 232:2 232:2 232:3
232:8 232:9 232:13 232:14 232:14 232:16
232:18 232:24 233:13 233:10 233:19 233:20
233:23 234:15 234:16 234:17 234:17
234:17 234:22 234:23 234:25 235:1 235:4
235:6 235:24 236:4 236:5 236:6 236:9
236:10 236:17 236:19 236:20 236:20
236:21 236:25 237:4 237:16 237:17 237:20
237:22 237:24 238:8 238:10 238:12
238:20 239:16 239:20 239:22 239:24 240:2
240:5 240:12 240:14 240:14 240:15
240:20 241:21 242:2 242:4 242:7 242:11
242:16 242:18 242:22 242:24 242:24 243:1
243:2 243:5 243:5 243:8 243:9 243:12
244:2 244:4 244:7 244:7 244:8 244:11
244:11 244:18 244:19 244:21 244:23
244:25 245:1 245:2 245:3 245:13 245:15
246:4 246:5 246:7 246:13 246:15 246:17
246:20 246:21 246:22 246:23 247:12
247:14 247:15 247:16 247:18 247:19 248:1
248:2 248:4 248:7 248:10 248:11 248:17
248:18 248:20 248:25 249:1 249:3 249:4
249:13 249:14 249:17 249:17 249:20
249:20 249:21 249:21 249:22 249:23 250:5
250:5 250:8 250:12 250:13 250:15 250:19
250:25 251:3 251:9 251:11 251:12 251:13
251:13 251:16 251:17 251:21 251:21
251:23 252:2 252:5 252:9 252:18 252:24
253:6

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that(301)** 253:15 253:18 254:1 254:13 254:14 254:19 255:2 255:10 255:23 256:8 256:11 256:15 256:17 256:18 256:23 256:24 256:25 257:2 257:4 257:6 257:9 257:9 257:10 257:12 257:13 257:13 257:16 257:17 257:20 258:6 258:8 258:10 258:13 258:18 258:19 258:19 258:20 258:21 258:21 259:2 259:3 259:5 259:7 259:8 259:11 259:18 259:20 260:3 260:6 260:9 260:12 260:14 260:20 260:20 260:23 260:24 261:3 261:17 261:17 261:17 261:18 261:18 261:21 261:21 261:23 262:1 262:3 262:3 262:7 262:9 262:20 262:20 262:21 262:22 263:1 263:2 263:6 263:8 263:10 263:11 263:15 263:16 263:18 263:20 263:21 263:22 263:22 263:24 264:3 264:12 264:15 264:15 264:18 264:19 264:23 264:24 265:9 265:11 265:12 265:12 265:16 265:17 265:20 266:6 266:7 266:16 266:20 266:22 267:10 267:12 267:18 267:19 267:19 267:23 268:1 268:5 268:7 268:8 268:12 268:15 268:18 268:19 268:22 268:23 269:2 269:3 269:6 269:9 269:10 269:11 269:12 269:13 269:17 269:19 269:20 269:20 270:2 270:3 270:13 271:2 271:11 271:12 271:18 271:21 271:23 271:24 272:6 272:9 272:12 272:17 272:25 273:2 273:3 273:4 273:7 273:8 273:9 273:10 273:12 273:14 273:15 273:17 273:20 273:20 273:23 273:25 274:10 274:23 274:25 275:6 275:13 275:17 275:24 275:24 276:1 276:3 276:5 276:8 276:9 276:16 276:19 276:20 276:22 276:24 276:25 276:25 277:3 277:13 277:13 277:15 277:16 277:20 277:22 277:24 278:13 278:16 278:18 278:22 279:1 279:2 279:4 279:8 279:9 279:14 279:17 279:25 280:5 280:5 280:7 280:8 280:9 280:10 280:13 280:15 280:17 280:18 280:20 280:23 280:25 281:10 281:11 281:15 281:16 281:16 281:16 281:17 281:18 281:20 281:22 281:22 282:3 282:4 282:7 282:10 282:12 282:15 282:16 282:18 282:20 282:25 283:1 283:5 283:6 283:15 283:16 283:24 284:4 284:5 284:7 284:8 284:9 284:9 284:11 284:13 284:15 284:18 284:18 284:20 284:21 284:23 284:24 284:25 285:14 285:14 285:20 285:21 285:22 286:1 286:5 286:5 286:8 286:9 286:11 286:12 286:14 286:15 286:16 286:25 287:1 287:9 287:10 287:13 287:18 287:21 288:20 288:24 289:3 289:9 289:10 289:14 289:17 290:6 290:10 290:15 290:15 290:19 290:23 290:24 291:1 291:4

**that(124)** 291:6 291:7 291:7 291:7 291:9 291:16 291:19 291:22 292:1 292:1 292:4 292:18 292:22 293:3 293:9 293:12 293:17 293:18 293:22 294:10 294:10 294:16 294:17 294:18 294:19 294:19 294:22 295:2 295:3 295:5 295:8 295:9 295:17 295:24 295:25 296:1 296:2 296:3 296:5 296:6 296:6 296:11 296:12 297:7 297:8 297:9 297:13 297:15 297:16 297:21 297:23 298:1 298:2 298:4 298:6 298:11 298:19 298:21 298:21 298:22 298:24 298:25 299:4 299:7 299:8 299:13 299:24 300:1 300:4 300:8 300:9 300:11 300:11 300:12 300:14 300:17 300:21 300:23 300:24 300:25 301:3 301:3 301:4 301:5 301:6 301:12 301:14 301:18 301:19 301:24 301:24 302:11 302:21 303:7 303:9 303:21 303:25 304:8 304:12 304:14 304:14 304:23 304:25 305:2 305:7 305:10 305:13 305:15 305:15 305:15 305:17 305:17 305:24 305:25 305:25 306:5 306:11 307:2 307:22 307:23 308:2 308:2 308:9

**that,"(1)** 283:21

**that's(228)** 10:23 12:9 12:21 12:22 14:18 15:21 21:7 21:12 21:24 22:18 24:9 25:21 29:13 32:21 32:23 33:1 35:10 40:11 40:16 42:9 44:7 48:20 50:21 51:17 53:21 54:6 56:7 58:2 60:22 66:8 67:13 68:15 69:11 73:15 74:1 75:6 76:24 80:22 81:12 82:25 83:17 87:2 87:3 97:9 98:24 105:6 105:9 106:9 106:15 107:13 112:13 113:11 113:16 113:21 114:5 116:18 117:7 125:8 135:11 135:17 135:24 136:5 138:8 139:4 139:7 141:8 144:20 145:9 145:20 146:13 148:22 150:18 150:23 152:10 154:23 155:6 155:20 156:3 156:17 157:6 157:21 160:14 161:2 161:10 163:4 163:14 163:16 164:21 165:13 166:3 166:13 167:12 168:1 170:3 171:16 171:18 172:1 172:9 175:13 177:3 177:25 178:5 178:20 181:25 182:8 182:19 185:8 185:18 185:20 186:4 188:10 193:5 193:9 193:21 193:25 194:12 195:1 196:16 197:11 198:3 198:16 199:18 201:6 201:19 202:18 204:20 205:6 205:15 205:18 206:6 206:18 206:25 207:7 207:25 208:22 209:4 209:5 209:9 209:6 210:2 210:21 213:13 215:16 216:12 217:11 217:18 218:7 218:23 219:15 220:18 220:21 224:12 224:24 224:25 226:13 226:17 226:22 226:25 227:23 228:12 228:13 229:20 230:19 230:21 231:18 233:5 234:21 235:3 236:13 239:16 240:2 240:6 240:7 240:16 245:9 247:9 247:11 248:8 248:9 248:10 248:22 249:13 249:18 249:20 249:24 250:24 251:10 253:22 255:18 256:14 259:12 259:24 260:12 261:11 262:23 262:25 264:14 266:18 267:25 268:3 270:1 270:9 271:17 273:18 275:14 277:13 278:21 280:6 282:14 287:7 288:17 289:7 291:10 292:8 293:14 296:18 297:18 300:10 300:12 301:2 301:15 301:18 302:9 304:16 306:4 307:10 307:13

**the(301)** 1:1 1:2 1:19 3:9 3:26 10:2 10:3 10:6 10:7 10:10 10:13 10:14 10:15 10:15 10:16 10:23 10:24 10:24 11:1 11:5 11:5 11:6 11:6 11:7 11:9 11:15 11:18 11:18 11:19 11:20 11:21 12:1 12:1 12:2 12:7 12:7 12:11 12:12 12:13 12:16 12:18 12:20 12:21 12:22 12:25 12:25 13:3 13:6 13:7 13:7 13:7 13:11 13:11 13:14 13:15 13:18 13:22 13:22 13:25 14:1 14:4 14:7 14:8 14:9 14:11 14:12 14:13 14:14 14:15 14:15 14:18 14:19 14:20 14:22 14:23 14:24 14:24 15:7 15:7 15:8 15:9 15:12 15:12 15:16 15:18 15:19 15:21 15:23 15:25 15:25 16:1 16:2 16:3 16:4 16:5 16:5 16:6 16:7 16:7 16:8 16:9 16:10 16:11 16:12 16:12 16:13 16:14 16:16 16:20 16:22 16:23 16:24 16:25 17:4 17:5 17:8 17:10 17:12 17:12 17:14 16:14 16:19 16:20 16:24 16:24 17:2 16:24 16:25 17:1 17:1 17:2 17:6 17:13 17:13 17:14 17:16 17:17 17:20 17:21 17:22 17:25 18:8 18:9 18:10 18:17 18:18 18:18 18:20 19:1 19:7 19:9 19:9 19:10 19:13 19:16 19:19 19:24 20:5 20:7 20:9 20:11 20:11 20:14 20:17 20:21 20:3 20:20 21:2 21:5 21:8 21:10 21:14 21:16 21:17 21:23 21:24 22:3 22:7 22:13 22:16 22:17 23:5 23:5 23:6 23:7 23:10 23:15 23:17 23:21 23:21 23:22 24:7 24:8 24:10 24:10 24:16 24:21 25:3 25:4 25:4 25:6 25:12 25:13 25:21 26:1 26:4 26:12 26:22 26:22 26:23 27:7 27:10 27:12 27:13 27:15 27:18 28:10 28:15 28:22 29:4 29:7 29:7 29:11 29:13 29:18 29:19 29:21 29:23 29:24 30:2 30:15 30:18 30:18 30:20 30:24 31:6 31:10 31:16 31:17 31:21 31:24 31:25 32:2 32:4 32:5 32:8 32:10 32:14 32:17 32:19 32:20 32:20 32:21 32:23 32:24 33:3 33:4 33:6 33:7 33:18 33:21 33:21 34:2 34:7 34:15 34:17 34:17 34:18 34:20 34:24 35:1 35:4 35:5 35:11 35:15 35:21 35:25 36:1 36:2 36:3 36:5 36:5 36:7 36:13 36:15 36:15 36:19 36:22 36:25 37:6 37:7 37:7 37:7 37:8 37:8 37:9 37:10 37:14 37:18 37:19 37:23 37:24 38:1 38:2 38:4 38:4 38:5 38:8 38:8 38:12 38:12 38:16 38:18

**the(301)** 38:20 38:20 38:23 38:25 39:3 39:5 39:14 39:17 39:18 39:18 39:19 39:20 39:20 39:22 39:24 39:24 40:1 40:3 40:4 40:7 40:8 40:9 40:9 40:10 40:13 40:15 40:17 40:18 40:18 40:20 40:23 40:23 40:24 40:24 41:3 41:5 41:6 41:8 41:12 41:13 41:18 41:25 42:1 42:2 42:3 42:4 42:6 42:7 42:9 42:9 42:12 42:14 42:15 42:15 42:15 42:16 42:17 42:17 42:24 42:24 43:2 43:5 43:7 43:8 43:10 43:14 43:17 43:17 43:18 43:18 43:19 43:20 43:21 43:22 43:22 43:22 43:24 44:6 44:7 44:8 44:14 44:15 44:16 44:17 44:17 44:18 44:19 44:20 44:21 44:25 45:1 45:1 45:2 45:2 45:5 45:6 45:7 45:7 45:9 45:11 45:11 45:15 45:18 45:18 45:22 45:22 46:1 46:5 46:6 46:8 46:10 46:10 46:11 46:14 46:19 46:20 46:20 46:21 46:24 46:25 47:1 47:1 47:2 47:6 47:13 47:13 47:14 47:16 47:17 47:17 47:20 47:22 47:24 47:25 47:25 48:2 48:3 48:4 48:5 48:6 48:7 48:8 48:10 48:11 48:16 48:18 48:23 48:24 49:3 49:5 49:8 49:12 49:14 49:17 49:19 49:21 49:23 50:5 50:8 50:9 50:10 50:11 50:12 50:13 50:16 50:19 50:19 50:22 51:1 51:2 51:4 51:6 51:6 51:7 51:8 51:11 51:14 51:17 51:20 51:23 51:25 51:25 52:2 52:2 52:5 52:9 52:11 52:14 52:14 52:17 52:19 52:20 52:21 52:24 53:3 53:5 53:11 53:16 53:18 53:18 53:23 53:24 54:2 54:4 54:5 54:9 54:12 54:24 55:3 55:4 55:5 55:8 55:9 55:12 55:14 55:22 55:22 55:22 56:2 56:7 56:8 56:10 56:14 56:16 56:17 56:24 57:2 57:7 57:8 57:9 57:13 57:14 57:16 57:23 57:24 58:4 58:12 58:13 58:20 59:3 59:3 59:5 59:6 59:9 59:16 59:25 60:3 60:6 60:9 60:10 60:11 60:13 60:14 60:15 60:17 60:20 60:21 60:21 60:24 61:3 61:6 61:6 61:11 61:12 61:15 61:15 61:20 61:22 61:23 62:4 62:5 62:6 62:7 62:8 62:11 62:16 62:24 63:1 63:6 63:10 63:13 63:14 63:16 63:16 63:19 64:1 64:7 64:9 64:14 64:16 64:19 64:22 64:23 64:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) | | **the**(301) | | **the**(301) | | **the**(301) | |

the(301) 65:3 65:7 65:7 65:7 65:10 65:13
65:13 65:17 65:18 65:18 65:21 65:22
65:23 66:5 66:7 66:12 66:15 66:18 66:19
66:19 66:20 67:3 67:4 67:4 67:9 67:10
67:13 67:18 67:24 68:9 68:12 68:16 68:18
68:20 68:22 68:22 69:1 69:3 69:6 69:8
69:9 69:9 69:12 69:13 69:16 69:17 69:18
69:22 69:24 70:1 70:2 70:3 70:4 70:5
70:6 70:8 70:13 70:14 71:2 71:2 71:3
71:3 71:4 71:4 71:5 71:8 71:10 71:15
71:18 71:19 71:20 72:8 72:9 72:16 72:17
72:20 73:1 73:2 73:11 73:12 73:21 73:21
73:24 73:25 74:3 74:5 74:9 74:10 74:14
74:18 74:22 75:4 75:7 75:8 75:9 75:12
75:13 75:19 75:23 75:24 75:24 76:2 76:2
76:3 76:6 76:6 76:7 76:10 76:11 76:12
76:13 76:14 76:15 76:25 77:3 77:8 77:9
77:9 77:13 77:17 77:20 78:1 78:2 78:6
78:7 78:8 78:11 78:15 78:16 78:20 78:22
78:23 78:23 78:24 78:25 79:1 79:3 79:4
79:8 79:10 79:13 79:14 79:17 79:21 79:25
80:3 80:4 80:12 80:16 80:16 80:17 80:19
80:19 80:20 80:22 80:23 80:24 80:25 81:7
81:8 81:12 81:12 81:12 81:13 81:13 81:16
81:17 81:21 82:1 82:1 82:2 82:4 82:5
82:6 82:9 82:10 82:12 82:13 82:14 82:14
82:15 82:15 82:22 82:24 83:2 83:5 83:7
83:9 83:14 83:15 83:18 83:19 83:22 83:22
83:23 83:24 84:1 84:2 84:3 84:3 84:5
84:7 84:7 84:8 84:8 84:9 84:9 84:10 84:11
84:13 84:17 84:19 84:21 84:23 84:23 85:1
85:2 85:3 85:5 85:6 85:7 85:9 85:12
85:14 85:16 85:19 85:20 85:23 86:2 86:3
86:5 86:7 86:9 86:10 86:11 86:11 86:12
86:14 86:15 86:16 86:19 86:20 86:23
86:23 86:24 87:5 87:5 87:7 87:9 87:10
87:15 87:16 87:17 87:23 88:8 88:20 88:25
89:1 89:4 89:4 89:8 89:9 89:9 89:12
89:13 89:13 89:14 89:19 89:19 89:21
89:22 89:22 89:24 90:1 90:4 90:5 90:5
90:6 90:7 90:8 90:9 90:10 90:17 90:18
90:21 90:22 90:24 90:25 91:1 91:9 91:11
91:17 91:18 91:18 92:1 92:2 92:5 92:5
92:7 92:10 92:11

the(301) 92:11 92:13 92:15 92:18 92:18
92:21 92:24 92:25 93:1 93:1 93:2 93:2
93:2 93:3 93:4 93:7 93:8 93:9 93:13
93:17 93:17 93:17 93:18 93:18 93:19
93:19 93:21 93:23 93:23 93:25 94:3 94:15
94:18 94:25 95:4 95:5 95:7 95:11 95:12
95:13 95:13 95:14 95:17 95:17 95:23 96:5
96:11 96:11 96:15 96:16 96:16 96:17
96:18 96:20 96:21 96:21 96:22 96:24
96:24 96:25 97:3 97:4 97:5 97:5 97:6
97:6 97:6 97:7 97:8 97:12 97:21 97:21
97:22 97:22 97:23 97:24 97:24 97:25 98:1
98:1 98:2 98:2 98:7 98:15 98:18 98:19
98:21 98:21 98:22 98:23 99:1 99:4 99:6
99:7 99:7 99:8 99:8 99:9 99:10 99:11
99:11 99:12 99:14 99:14 99:16 99:20
99:20 99:21 99:21 99:24 100:3 100:5
100:6 100:7 100:8 100:9 100:13 100:13
100:14 100:14 100:15 100:16 100:18
100:21 100:22 100:25 101:1 101:2 101:7
101:8 101:8 101:9 101:12 101:12 101:14
101:16 101:17 101:18 101:20 101:21
101:21 101:23 101:24 102:1 102:1 102:5
102:6 102:6 102:7 102:9 102:10 102:11
102:13 102:21 102:21 102:23 102:24
102:25 102:25 103:1 103:2 103:3 103:3
103:4 103:4 103:8 103:10 103:11 103:12
103:13 103:15 103:16 103:20 103:22
103:23 103:24 103:25 103:25 104:1 104:2
104:3 104:5 104:15 104:15 104:16 104:19
104:20 104:21 104:21 104:22 105:3 105:5
105:5 105:9 105:11 105:11 105:14 105:15
105:15 105:19 105:19 106:4 106:5 106:6
106:8 106:8 106:9 106:9 106:12 106:12
106:13 107:11 107:13 107:14 107:16
107:19 107:24 107:25 108:1 108:1 108:1
108:4 108:6 108:6 108:8 108:8 108:11
108:12 108:13 108:14 108:16 108:22
108:24 108:25 109:3 109:3 109:4 109:7
109:8 109:9 109:10 109:11 109:13 109:15
109:16 109:18 109:19 109:23 110:5 110:6
110:14 110:17 110:17 110:18 110:19
110:19 110:21 110:22 110:23 110:24 111:1
111:2 111:2 111:3 111:4 111:5 111:5 111:6
111:8 111:13 111:17 111:19 111:20 111:23
111:23 111:24 112:2 112:3 112:4 112:7
112:7 112:8 112:9 112:11 112:12 112:13
112:16 112:19 112:21 113:1 113:2 113:3
113:4 113:4 113:5 113:9 113:10 113:10
113:12 113:14 113:14

the(301) 113:15 113:16 113:19 113:19
113:21 113:22 113:23 113:24 113:24
113:25 114:1 114:2 114:3 114:4 114:5
114:7 114:10 114:11 114:11 114:12 114:14
114:17 114:19 114:23 114:24 115:1 115:5
115:6 115:7 115:10 115:12 115:13 115:13
115:13 115:14 115:14 115:14 115:16
115:17 115:17 115:20 115:20 115:25 116:3
116:7 116:8 116:11 116:14 116:17 116:20
116:20 116:21 116:21 116:23 116:23
116:25 117:1 117:1 117:3 117:4 117:4
117:6 117:7 117:9 117:9 117:10 117:12
117:13 117:13 117:15 117:16 117:19
117:22 117:24 118:1 118:2 118:3 118:4
118:5 118:5 118:6 118:6 118:7 118:7 118:8
118:12 118:13 118:13 118:14 118:16
118:16 118:17 118:19 118:19 118:22
118:22 118:23 118:23 118:24 118:25
118:25 119:1 119:1 119:2 119:3 119:3
119:4 119:4 119:8 119:9 119:9 119:10
119:12 119:13 119:15 119:15 119:16
119:16 119:17 119:18 119:19 119:19
119:20 119:21 119:22 119:22 119:24
119:25 119:25 120:2 120:3 120:7 120:9
120:21 120:21 120:22 120:24 120:25
120:25 121:1 121:2 121:3 121:3 121:4
121:6 121:6 121:7 121:8 121:9 121:9
121:10 121:11 121:11 121:11 121:13
121:14 121:15 121:18 121:22 122:1 122:1
122:2 122:5 122:10 122:10 122:10 122:14
122:15 122:17 122:18 122:19 122:20
122:20 122:24 122:24 122:25 122:25 123:1
123:2 123:2 123:3 123:3 123:4 123:5
123:6 123:6 123:7 123:8 123:11 123:11
123:12 123:12 123:12 123:13 123:13
123:14 123:14 123:15 123:16 123:16
123:16 123:16 123:17 123:17 123:17
123:17 123:19 123:21 123:22 123:22
123:23 124:1 124:2 124:6 124:12 124:15
124:16 124:16 124:17 124:22 124:23
124:23 125:1 125:1 125:2 125:4 125:5
125:8 125:9 125:9 125:13 125:15 125:15
125:16 125:17 125:17 125:18 125:19
125:22 125:22 125:24 125:24 125:25 126:2
126:3 126:5 126:7 126:8 126:9 126:9
126:9 126:10 126:10 126:13 126:14 126:14
126:15 126:16 126:16 126:17 126:18
126:19 126:22 126:24 126:24 127:3 127:3
127:6 127:10 127:12 127:13 127:24 127:25
127:25 128:1 128:2 128:6 128:6 128:7
128:7 128:8 128:10 128:11 128:14 128:17
128:20 128:23 128:23 128:24 128:24 129:2
129:3 129:3 129:5 129:5 129:7 129:14
129:15 129:19 129:19 129:19 129:24

the(301) 129:25 130:3 130:7 130:10
130:12 130:13 130:14 130:15 130:18
130:18 130:19 130:20 130:21 130:23
130:24 130:24 131:1 131:2 131:6 131:7
131:8 131:8 131:10 131:10 131:13 131:14
131:14 131:20 131:22 131:22 131:23
131:23 131:25 132:13 132:13 132:14
132:14 132:16 132:18 132:19 132:19
132:21 132:21 132:24 132:25 133:1 133:1
133:11 133:11 133:16 133:19 133:19
133:20 133:21 133:23 134:1 134:2 134:5
134:5 134:6 134:10 134:17 134:17 134:17
134:18 134:22 134:23 134:25 135:3 135:7
135:8 135:13 135:14 135:15 135:17 135:18
135:20 135:20 135:21 136:2 136:5 136:9
136:10 136:11 136:12 136:14 137:6 137:9
137:11 137:15 137:18 137:20 138:3 138:4
138:11 138:11 138:11 138:14 138:14
138:16 138:16 138:17 138:17 138:17
138:19 138:22 138:24 138:24 138:25 139:1
139:1 139:2 139:7 139:8 139:10 139:11
139:18 139:21 139:22 139:22 140:1 140:1
140:2 140:3 140:3 140:5 140:5 140:5
140:6 140:6 140:6 140:8 140:9 140:10
140:10 140:13 140:25 141:4 141:4 141:6
141:10 141:11 141:16 141:16 141:24 142:1
142:1 142:5 142:6 142:6 142:9 142:9
142:13 142:14 142:14 142:17 142:19
142:19 142:21 142:22 142:22 142:25
142:25 143:5 143:11 143:12 143:13 143:14
143:15 143:17 143:17 143:20 143:21
143:21 143:21 144:1 144:3 144:6 144:7
144:13 144:14 144:15 144:21 144:23
144:25 145:2 145:7 145:7 145:8 145:15
145:19 145:19 145:20 145:21 145:24 146:1
146:2 146:5 146:6 146:7 146:9 146:9
146:11 146:11 146:14 146:15 146:16
146:16 146:16 146:19 146:19 146:21
146:22 146:23 146:24 146:24 147:1 147:2
147:3 147:3 147:3 147:6 147:12 147:14
147:15 147:15 147:17 147:19 147:20
147:21 147:21 147:22 147:23 148:1 148:1
148:6 148:6 148:9 148:9 148:19 148:21 148:23
149:1 149:2 149:9 149:11 149:16 149:17
149:24 149:25 150:2 150:3 150:7 150:10
150:15 150:15 150:20 150:20 150:21
150:21 150:22 150:24 151:2 151:2 151:2
151:3 151:10 151:11 151:11 151:12 151:20
151:23 151:24 152:3 152:3 152:7 152:11
152:22 153:2 153:15 153:16 153:23 154:2
154:25 155:1 155:2 155:10 155:13 155:14
155:16 155:16 155:20 155:21 155:23
155:24 155:25 156:1 156:3 156:3 156:5
156:6 156:6

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**the(301)** 156:10 156:11 156:13 156:15 156:19 156:20 156:22 156:23 157:4 157:5 157:6 157:7 157:12 157:14 157:15 157:15 157:21 157:21 157:22 157:22 157:23 158:1 158:2 158:4 158:5 158:6 158:6 158:6 158:9 158:10 158:10 158:11 158:11 158:13 158:13 158:14 158:14 158:15 158:16 158:16 158:16 158:17 158:17 158:17 158:20 158:21 159:5 159:5 159:7 159:7 159:9 159:10 159:14 159:15 159:15 159:18 159:20 159:20 159:21 159:22 159:22 159:22 160:3 160:4 160:4 160:5 160:6 160:6 160:7 160:12 160:20 160:21 160:24 160:24 161:4 161:5 161:6 161:6 161:7 161:9 161:10 161:12 161:13 161:14 161:17 161:18 161:22 161:23 161:23 161:25 161:25 162:6 162:8 162:13 162:13 162:16 163:4 163:5 163:6 163:10 163:11 163:11 163:11 163:14 163:16 163:19 163:22 163:23 163:23 163:25 164:3 164:5 164:7 164:10 164:12 164:12 164:14 164:16 164:16 164:18 164:23 164:24 164:24 165:4 165:6 165:9 165:10 165:10 165:11 165:13 165:14 165:16 165:17 165:17 165:20 165:20 165:21 165:21 166:2 166:6 166:8 166:9 166:13 166:14 166:16 166:16 166:17 166:18 166:21 166:22 167:3 167:7 167:8 167:11 167:13 167:19 167:19 167:20 167:22 167:22 167:23 168:3 168:7 168:9 168:10 168:16 168:23 169:4 169:5 169:8 169:12 169:13 169:14 169:19 169:22 170:1 170:5 170:7 170:7 170:8 170:8 170:9 170:13 170:14 170:15 170:18 170:24 171:1 171:1 171:2 171:2 171:5 171:9 171:10 171:13 171:16 171:16 171:17 171:20 171:22 171:22 171:25 172:1 172:1 172:2 172:7 172:8 172:9 172:12 172:18 172:20 172:24 173:2 173:2 173:3 173:3 173:4 173:4 173:4 173:8 173:9 173:11 173:11 173:17 173:18 173:20 173:21 173:22 173:24 174:1 174:1 174:3 174:4 174:7 174:14 174:15 174:16 174:16 174:17 174:17 174:23 175:3 175:4 175:10 175:12 175:12 175:14 175:15 175:17 175:21 175:25 176:2 176:4 176:6 176:6 176:7 176:9 176:9 176:11 176:13 176:16 176:18 176:19 176:24 176:25 177:1 177:1 177:1 177:2 177:2 177:2 177:3 177:6 177:6 177:6 177:7 177:7 177:13 177:18 177:19 177:20 177:20 177:21 177:22 177:24 177:25 178:1 178:5 178:8 178:16 178:17 178:18 178:19 178:20 178:25 179:1 179:1 179:3 179:6 179:8 179:10

**the(301)** 179:11 179:12 179:13 179:17 179:19 179:20 179:21 179:23 179:25 180:1 180:4 180:6 180:7 180:8 180:10 180:12 180:12 180:13 180:13 180:13 180:15 180:22 180:24 181:1 181:3 181:4 181:5 181:6 181:6 181:7 181:8 181:9 181:10 181:11 181:13 181:14 181:15 181:15 181:17 181:20 181:21 181:25 182:1 182:2 182:4 182:5 182:5 182:8 182:8 182:9 182:10 182:12 182:16 182:17 182:17 182:18 182:19 182:20 182:21 182:21 182:23 182:23 182:24 182:24 182:25 182:25 182:25 183:1 183:2 183:3 183:6 183:7 183:8 183:8 183:10 183:10 183:11 183:12 183:12 183:13 183:13 183:14 183:14 183:18 183:20 183:21 183:23 183:25 184:5 184:7 184:7 184:8 184:8 184:8 184:8 184:9 184:10 184:12 184:13 184:14 184:14 184:14 184:15 184:15 184:17 184:18 184:19 184:19 184:19 184:20 184:20 184:21 184:23 184:24 184:25 185:2 185:3 185:7 185:8 185:8 185:13 185:13 185:14 185:15 185:16 185:17 185:18 185:18 185:19 185:20 185:23 185:23 185:23 185:24 186:2 186:2 186:3 186:3 186:6 186:6 186:8 186:9 186:9 186:11 186:11 186:12 186:12 186:12 186:16 186:16 186:17 186:18 186:23 187:1 187:2 187:3 187:4 187:6 187:7 187:7 187:8 187:9 187:9 187:10 187:12 187:13 187:14 187:18 187:21 187:23 187:25 188:3 188:3 188:5 188:5 188:5 188:15 188:16 188:18 188:21 188:23 188:24 189:1 189:2 189:5 189:6 189:6 189:10 189:11 189:12 189:12 189:14 189:16 189:17 189:20 189:21 189:21 189:22 189:24 189:25 190:1 190:3 190:5 190:5 190:7 190:7 190:10 190:11 190:11 190:11 190:13 190:14 190:16 190:18 190:18 190:19 190:20 190:23 191:5 191:6 191:7 191:10 191:10 191:11 191:11 191:12 191:12 191:13 191:14 191:18 191:19 191:20 191:21 191:24 192:3 192:5 192:7 192:7 192:8 192:12 192:12 192:14 192:14 192:17 192:19 192:19 192:21 193:1 193:2 193:3 193:3 193:4 193:6 193:6 193:8 193:11 193:13 193:15 193:15 193:16 193:16 193:17 193:18 193:18 193:19 193:21 193:23 193:24 194:7 194:7 194:8 194:8 194:10 194:12 194:13 194:14 194:15 194:15 194:16 194:17 194:18 194:18 194:24 194:24 195:4 195:4 195:6 195:7 195:7 195:8 195:9 195:9 195:10 195:10

**the(301)** 195:15 195:15 195:20 195:20 195:21 195:22 195:24 196:2 196:3 196:3 196:4 196:6 196:8 196:8 196:9 196:13 196:16 196:17 196:21 196:24 196:25 197:1 197:1 197:4 197:5 197:6 197:8 197:10 197:10 197:11 197:15 197:15 197:22 197:22 197:23 198:1 198:1 198:2 198:3 198:4 198:4 198:6 198:7 198:15 198:18 198:21 198:23 199:2 199:6 199:7 199:11 199:11 199:12 199:14 199:15 199:16 199:17 199:18 199:22 199:24 199:24 200:4 200:6 200:7 200:14 200:18 200:18 200:16 200:19 200:19 200:23 200:23 200:23 201:4 200:24 200:25 201:2 201:13 201:14 201:15 201:17 201:18 201:20 201:20 201:21 201:23 201:25 202:1 202:5 202:8 202:11 202:11 202:12 202:12 202:14 202:14 202:17 202:19 202:20 202:20 202:21 202:23 202:23 202:24 202:24 202:25 203:5 203:6 203:7 203:7 203:8 203:9 203:9 203:10 203:12 203:13 203:15 203:16 203:20 203:23 203:20 203:21 203:25 204:2 204:4 204:5 204:5 204:7 204:8 204:16 204:18 204:18 204:19 204:20 204:24 205:2 205:3 205:4 205:4 205:6 205:9 205:12 205:13 205:15 205:20 205:20 205:24 206:1 206:5 206:7 206:8 206:9 206:9 206:10 206:11 206:12 206:13 206:14 206:16 206:18 206:19 206:22 206:23 206:23 207:1 207:2 207:5 207:7 207:8 207:9 207:10 207:10 207:13 207:13 207:14 207:15 207:19 207:20 207:20 207:21 207:22 207:24 207:24 208:1 208:1 208:2 208:3 208:3 208:4 208:6 208:7 208:12 208:12 208:13 208:13 208:20 208:23 209:2 209:2 209:3 209:4 209:5 209:6 209:13 209:15 209:18 209:20 209:20 209:21 210:3 210:4 210:7 210:7 210:9 210:9 210:12 210:12 210:15 210:16 210:16 210:17 210:20 210:20 210:23 211:1 211:2 211:2 211:3 211:4 211:5 211:6 211:9 211:13 211:20 211:24 211:25 212:1 212:1 212:7 212:8 212:9 212:11 212:11 212:12 212:12 212:14 212:15 212:18 212:22 212:22 212:23 212:23 213:1 213:2 213:3 213:4 213:4 213:4 213:5 213:6 213:6 213:8 213:8 213:10 213:10 213:10 213:11 213:12 213:19 213:21 213:21 213:24 213:25 214:2 214:6 214:7 214:9 214:10 214:10 214:10 214:10 214:14 214:17 214:18 214:21 214:23 214:25 214:25 214:25 215:2 215:2 215:3 215:4 215:5 215:10 215:10 215:11

**the(301)** 215:13 215:19 215:19 215:20 215:23 215:24 215:25 216:2 216:4 216:5 216:6 216:7 216:8 216:9 216:10 216:11 216:11 216:13 216:23 216:25 216:25 217:1 217:3 217:5 217:8 217:12 217:14 217:16 217:17 217:21 217:24 218:2 218:4 218:6 218:6 218:9 218:10 218:12 218:13 218:13 218:14 218:14 218:15 218:17 218:20 218:22 218:25 219:1 219:4 219:4 219:5 219:8 219:11 219:11 219:11 219:12 219:12 219:18 219:21 219:23 219:25 220:1 220:4 220:6 220:7 220:14 220:18 220:18 220:18 220:18 220:19 220:23 220:25 220:25 220:25 221:1 221:2 221:6 221:7 221:7 221:7 221:8 221:8 221:8 221:10 221:11 221:12 221:13 221:13 221:14 221:16 221:16 221:18 221:20 221:21 221:21 221:22 221:23 221:24 221:25 222:1 222:2 222:4 222:5 222:8 222:9 222:9 222:10 222:13 222:13 222:16 222:21 222:23 222:25 223:2 223:6 223:7 223:9 223:9 223:10 223:15 223:15 223:16 223:17 223:17 223:17 223:19 223:20 223:22 223:23 224:3 224:3 224:4 224:10 224:12 224:17 224:18 224:21 224:22 224:22 224:23 224:24 225:2 225:4 225:4 225:7 225:10 225:10 225:11 225:13 225:14 225:16 225:19 225:19 225:23 226:2 226:5 226:8 226:12 226:12 226:18 226:19 226:21 226:23 226:25 227:2 227:3 227:5 227:8 227:8 227:9 227:10 227:12 227:12 227:13 227:14 227:18 227:18 227:21 227:23 227:25 228:1 228:1 228:2 228:6 228:8 228:12 228:15 228:17 228:18 228:21 228:22 229:5 229:7 229:8 229:9 229:11 229:12 229:15 229:20 229:21 229:21 230:1 230:2 230:8 230:12 230:14 230:16 230:16 230:17 230:19 230:19 230:24 231:1 231:2 231:8 231:10 231:12 231:13 231:13 231:15 231:18 231:20 231:22 231:24 231:25 231:25 232:1 232:2 232:4 232:6 232:7 232:8 232:8 232:8 232:12 232:12 232:13 232:13 232:14 232:15 232:16 232:16 232:19 232:20 232:20 232:21 232:21 232:22 232:22 232:23 232:23 232:24 232:25 233:1 233:1 233:1 233:5 233:5 233:8 233:9 233:10 233:10 233:11 233:11 233:12 233:12 233:13 233:14 233:18 234:4 234:5 234:5 234:5 234:6 234:6 234:6 234:7 234:7 234:8 234:8 234:11 234:11 234:12 234:13 234:14 234:15 234:15 234:16 234:16 234:17 234:18 234:19 234:19 234:20 234:21

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**the**(301) 234:22 234:22 234:24 234:24 235:2 235:2 235:2 235:6 235:8 235:8 235:9 235:9 235:11 235:13 235:15 235:19 235:20 235:21 235:21 235:22 235:25 236:4 236:5 236:18 236:19 236:20 236:21 236:22 236:23 236:24 237:3 237:4 237:4 237:5 237:5 237:7 237:9 237:13 237:17 237:18 237:19 237:20 237:20 237:21 237:21 237:21 237:22 237:24 237:25 237:25 237:25 238:1 238:2 238:3 238:4 238:4 238:6 238:7 238:8 238:9 238:10 238:11 238:11 238:12 238:13 238:13 238:14 238:15 238:19 238:20 238:21 238:22 238:24 238:25 239:1 239:3 239:3 239:7 239:7 239:8 239:9 239:9 239:11 239:12 239:15 239:16 239:20 239:24 240:3 240:3 240:4 240:4 240:5 240:6 240:7 240:11 240:12 240:14 240:15 240:15 240:16 240:16 240:17 240:18 240:19 240:24 241:3 241:3 241:4 241:7 241:8 241:9 241:10 241:11 241:16 241:18 241:23 241:23 241:24 242:5 242:5 242:5 242:6 242:8 242:9 242:9 242:14 242:15 242:18 242:20 242:21 242:21 242:22 242:22 242:24 243:1 243:4 243:5 243:7 243:16 243:17 243:20 243:21 243:22 243:23 243:24 243:25 244:1 244:1 244:2 244:5 244:6 244:9 244:9 244:10 244:14 244:17 244:19 244:20 244:21 244:22 244:22 244:24 244:25 245:1 245:2 245:3 245:4 245:4 245:7 245:12 245:12 245:13 245:14 245:14 245:15 245:15 245:15 245:16 245:16 245:17 245:18 245:18 245:18 245:20 245:20 245:21 245:24 246:1 246:9 246:9 246:11 246:14 246:14 246:15 246:16 246:17 246:17 246:18 246:19 246:20 246:21 246:21 246:25 247:2 247:4 247:4 247:7 247:9 247:12 247:12 247:14 247:15 247:16 247:16 247:20 247:21 247:23 247:23 248:4 248:6 248:7 248:8 248:9 248:11 248:12 248:13 248:13 248:18 248:22 248:23 248:23 248:24 248:24 248:25 248:25 249:1 249:3 249:4 249:5 249:7 249:8 249:9 249:10 249:12 249:12 249:15 249:15 249:21 249:22 249:23 250:4 250:5 250:8 250:12 250:13 250:14 250:15 250:17 250:21 250:22 250:23 250:23 251:1 251:2 251:2 251:3 251:4 251:6 251:8 251:9 251:11 251:13 251:14 251:16 251:16 251:19 251:19 251:21 251:25 252:1 252:2 252:3 252:3 252:5 252:7 252:9 252:10 252:11 252:12 252:15 252:15 252:17 252:20 252:21 252:22 252:24 253:1 253:5 253:9 253:12

**the**(301) 253:17 253:20 253:25 254:2 254:2 254:3 254:4 254:4 254:6 254:7 254:7 254:9 254:12 254:14 254:14 254:16 254:17 254:19 254:21 255:4 255:6 255:7 255:8 255:8 255:9 255:9 255:15 255:15 255:16 255:17 255:17 255:19 255:21 255:23 255:24 255:24 256:4 256:8 256:9 256:9 256:10 256:11 256:11 256:12 256:13 256:13 256:14 256:14 256:15 256:17 256:17 256:18 256:19 256:20 256:21 256:23 256:23 256:24 256:25 256:25 257:1 257:1 257:2 257:3 257:3 257:4 257:5 257:6 257:6 257:6 257:8 257:9 257:9 257:11 257:12 257:13 257:13 257:14 257:16 257:16 257:18 257:19 257:23 257:23 257:25 258:2 258:3 258:4 258:5 258:7 258:8 258:10 258:11 258:14 258:15 258:15 258:16 258:16 258:17 258:19 258:23 258:25 259:7 259:8 259:8 259:9 259:11 259:12 259:13 259:13 259:16 259:16 259:19 259:19 259:20 259:22 259:23 260:1 260:2 260:4 260:6 260:6 260:8 260:12 260:14 260:17 260:17 260:18 260:20 260:25 260:25 261:1 261:2 261:3 261:4 261:4 261:7 261:8 261:8 261:9 261:11 261:12 261:13 261:13 261:15 261:16 261:17 261:19 261:20 261:22 261:23 261:23 261:24 261:25 262:1 262:2 262:4 262:5 262:6 262:6 262:7 262:8 262:9 262:10 262:11 262:12 262:13 262:18 262:19 262:20 262:23 263:2 263:3 263:5 263:5 263:6 263:7 263:13 263:14 263:18 263:19 263:23 263:25 264:1 264:3 264:4 264:5 264:6 264:7 264:7 264:8 264:9 264:9 264:10 264:11 264:12 264:13 264:14 264:15 264:16 264:20 264:20 264:21 264:24 265:12 265:9 265:10 265:12 265:14 265:14 265:15 265:16 265:17 265:18 265:20 265:22 265:23 265:24 265:25 266:2 266:4 266:5 266:6 266:8 266:12 266:13 266:15 266:17 266:20 266:21 266:21 266:22 266:23 266:23 266:24 266:25 267:1 267:1 267:2 267:4 267:6 267:6 267:7 267:7 267:9 267:13 267:16 267:19 267:19 267:21 267:22 267:22 267:24 267:25 268:4 268:4 268:5 268:6 268:11 268:11 268:11 268:12 268:13 268:13 268:14 268:14 268:16 268:17 268:18 268:21 268:22 268:24 269:1 269:9 269:11 269:11 269:12 269:13 269:15 269:17 269:19 269:20 269:24 269:25 270:1 270:1 270:2 270:3 270:5 270:6 270:6 270:7 270:8

**the**(301) 270:13 270:16 270:17 270:19 270:20 270:20 270:22 270:23 270:25 271:1 271:2 271:2 271:2 271:3 271:3 271:5 271:6 271:7 271:8 271:10 271:11 271:12 271:13 271:13 271:14 271:14 271:16 271:17 271:18 271:19 271:19 271:20 271:23 271:24 272:2 272:3 272:5 272:6 272:9 272:10 272:14 272:15 272:17 272:18 272:19 272:20 272:23 273:1 273:1 273:4 273:5 273:5 273:8 273:12 273:15 273:19 273:20 273:21 273:22 273:23 273:24 273:25 274:2 274:3 274:6 274:9 274:10 274:13 274:15 274:17 274:19 274:20 274:20 274:23 274:24 275:2 275:2 275:3 275:4 275:5 275:8 275:8 275:9 275:9 275:10 275:11 275:12 275:13 275:14 275:17 275:17 275:23 275:24 275:25 275:25 276:2 276:3 276:3 276:5 276:6 276:8 276:9 276:10 276:11 276:13 276:14 276:15 276:15 276:17 276:17 276:20 277:10 277:12 277:13 277:14 277:14 277:16 277:17 277:18 277:19 277:21 277:21 277:23 277:24 278:2 278:3 278:5 278:5 278:6 278:7 278:7 278:8 278:10 278:10 278:14 278:19 278:20 278:22 278:24 278:25 279:3 279:4 279:6 279:8 279:11 279:14 279:15 279:16 279:17 279:18 279:19 279:19 279:19 279:22 279:23 279:24 280:2 280:4 280:7 280:9 280:9 280:11 280:17 280:18 280:19 280:20 280:21 280:22 280:23 280:23 281:2 281:5 281:7 281:8 281:10 281:11 281:11 281:12 281:13 281:15 281:17 281:18 281:18 281:19 281:20 281:20 281:21 281:22 281:24 281:25 282:1 282:2 282:3 282:4 282:5 282:6 282:6 282:9 282:13 282:13 282:15 282:16 282:16 282:17 282:20 282:25 282:25 283:1 283:2 283:2 283:4 283:5 283:5 283:6 283:9 283:10 283:10 283:12 283:13 283:14 283:15 283:16 283:16 283:17 283:18 283:22 283:23 283:24 284:1 284:2 284:2 284:3 284:4 284:7 284:9 284:10 284:11 284:11 284:12 284:13 284:14 284:15 284:16 284:19 284:20 284:20 284:22 284:23 284:24 284:24 285:1 285:3 285:8 285:8 285:10 285:11 285:11 285:12 285:12 285:15 285:15 285:16 285:17 285:18 285:18 285:22 285:24 285:25 285:25 286:1 286:1 286:2 286:6 286:8 286:25 287:2 287:3 287:4 287:5 287:6 287:8 287:8 287:9 287:9 287:12 287:12 287:15

**the**(292) 287:15 287:19 287:20 287:21 287:22 287:23 287:23 288:1 288:1 288:1 288:2 288:3 288:5 288:6 288:6 288:10 288:11 288:12 288:13 288:14 288:15 288:15 288:16 288:17 288:18 288:25 289:1 289:2 289:5 289:6 289:8 289:8 289:12 289:13 289:13 289:14 289:15 289:16 289:17 289:20 289:21 289:22 290:1 290:1 290:3 290:4 290:5 290:5 290:9 290:10 290:10 290:11 290:12 290:17 290:25 291:1 291:2 291:4 291:6 291:10 291:11 291:13 291:15 291:17 291:17 291:22 291:23 291:22 292:2 292:3 292:5 292:7 292:8 292:9 292:10 292:10 292:11 292:13 292:15 292:16 292:16 292:17 292:18 292:18 292:19 292:19 292:21 292:22 292:23 292:24 292:25 293:1 293:2 293:2 293:5 293:7 293:8 293:9 293:9 293:13 293:15 293:16 293:18 293:20 293:22 294:3 294:4 294:9 294:10 294:12 294:13 294:15 294:17 294:17 294:17 294:19 294:19 294:22 294:22 294:23 294:24 294:25 295:2 295:4 295:6 295:7 295:8 295:10 295:11 295:12 295:13 295:13 295:15 295:17 295:18 295:20 295:22 295:23 295:23 295:24 295:25 296:3 296:4 296:6 296:8 296:17 296:17 296:20 296:23 296:23 297:3 297:4 297:4 297:5 297:6 297:8 297:8 297:10 297:11 297:11 297:11 297:12 297:13 297:14 297:19 297:21 298:3 298:5 298:7 298:10 298:15 298:15 298:17 298:17 298:20 298:23 298:25 299:1 299:2 299:4 299:5 299:5 299:5 299:10 299:14 299:14 299:17 299:20 299:21 299:22 299:23 299:24 299:25 300:1 300:4 300:5 300:5 300:7 300:8 300:10 300:10 300:20 300:22 301:2 301:2 301:4 301:4 301:9 301:10 301:12 301:15 301:16 301:17 301:20 301:22 301:23 301:24 301:25 301:25 302:4 302:8 302:9 302:10 302:10 302:12 302:12 302:16 302:19 302:23 303:3 303:6 303:9 303:10 303:17 303:19 303:22 304:3 304:8 304:14 304:18 304:20 304:21 304:23 304:25 305:1 305:2 305:2 305:3 305:4 305:6 305:7 305:7 305:8 305:8 305:8 305:9 305:10 305:10 305:11 305:14 305:15 305:17 305:20 305:21 305:22 306:1 306:2 306:2 306:7 306:9 306:11 306:12 306:12 306:17 306:21 307:1 307:3 307:6 307:12 307:14 307:17 307:20 307:22 308:1 308:3 308:6 308:9 308:10 308:10 308:11

**their**(121) 14:6 22:15 22:15 22:16 34:9 36:17 41:18 43:20 44:22 44:25 46:15 47:5 61:19 64:5 66:9 66:10 66:20 68:1 68:6 68:10 68:10 69:7 93:21 97:12 106:16 110:4 113:3 113:17 114:14 120:12 121:5 125:5 125:8 125:13 125:24 135:3 149:5 149:19 149:22 150:3 159:8 164:19 166:21 173:14 175:6 175:11 178:2 178:9 178:13 183:20 184:16 188:2 188:17 188:18 189:22 189:23 194:6 195:18 196:16 196:20 200:11 200:18 203:1 204:15 208:2 208:15 208:21 209:8 209:19 210:13 214:3 214:13 216:18 220:12 220:12 221:11 222:11 222:17 222:18 224:16 227:15 230:13 231:18 232:18 233:23 234:24 234:25 236:8 238:4 239:23 240:16 240:17 242:1 244:20 245:5 245:25 247:24 247:25 248:9 249:11 249:18 250:9 253:15 253:21 253:23 254:25 255:11 260:1 263:9 266:3 270:24 271:4 273:8 273:9 279:12 288:19 294:1 294:5 294:5 294:6 296:15

**theirs**(1) 240:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **them**(67) 11:8 11:20 14:7 16:18 23:21 29:22 37:5 44:20 46:17 47:6 50:11 64:5 64:7 68:14 76:18 76:23 85:13 117:5 118:7 144:11 145:15 145:19 152:8 166:15 175:7 176:16 184:25 187:24 192:11 206:5 209:3 212:9 214:7 222:17 225:18 225:18 226:8 227:14 233:23 240:23 242:2 242:5 244:10 245:2 245:6 245:21 246:2 246:3 250:2 255:11 260:21 262:11 263:9 269:9 269:16 269:16 277:16 277:23 292:20 294:7 294:23 301:12 303:18 304:8 307:6 307:7 307:8 | | **there**(250) 10:11 11:10 16:17 18:15 20:16 21:18 21:22 22:20 27:1 27:3 27:5 27:25 28:21 28:25 30:17 31:14 32:7 33:6 33:8 33:25 36:10 43:19 47:22 48:1 48:10 52:8 54:15 56:23 57:5 62:14 62:15 63:14 63:19 65:21 67:5 72:10 74:9 75:12 76:9 78:5 78:11 79:10 79:15 79:25 80:16 90:11 91:25 93:21 98:22 99:24 99:25 100:2 100:24 101:6 101:25 103:18 108:22 111:3 111:10 111:21 113:3 113:5 113:25 116:11 116:13 118:15 121:12 121:15 122:7 122:8 128:25 129:4 132:8 132:6 132:9 132:11 133:22 138:10 139:9 139:19 139:20 140:14 141:6 141:17 141:14 141:19 142:10 142:24 144:1 144:2 144:6 144:20 147:13 151:17 153:1 153:21 155:15 155:19 156:21 157:9 159:9 159:19 161:21 165:1 165:3 165:4 166:12 168:2 168:20 169:17 169:25 170:2 171:4 171:19 171:25 173:7 173:10 173:12 173:12 173:17 173:25 173:25 174:9 176:8 180:25 181:9 183:15 185:7 185:20 185:23 187:13 187:17 188:1 192:21 194:25 195:20 196:13 196:17 196:20 196:23 199:16 199:20 200:3 200:8 200:10 200:15 201:4 202:2 202:3 202:7 202:7 203:24 204:1 204:12 204:13 206:19 206:24 207:23 210:18 210:19 212:2 214:12 214:13 215:10 215:14 215:15 216:14 216:21 217:19 218:11 218:15 219:24 220:7 220:13 221:9 221:18 222:12 222:15 223:20 224:3 224:21 225:6 225:6 226:18 227:21 227:23 229:10 229:16 230:3 230:20 230:21 230:22 230:25 231:6 231:23 235:17 235:25 236:10 238:9 240:18 241:12 241:13 242:13 243:5 245:11 247:9 247:14 248:3 248:10 248:14 248:22 250:8 251:5 251:17 253:10 254:9 254:15 258:25 258:25 260:22 263:10 264:19 264:21 265:11 268:6 269:11 270:3 270:13 275:6 277:2 280:2 282:12 284:1 284:18 285:14 285:25 288:20 288:22 289:22 290:14 291:25 297:16 297:22 298:8 299:19 300:14 301:20 305:14 306:14 307:17 | | **these**(57) 11:14 13:14 15:4 23:14 26:14 29:24 30:3 32:1 42:4 43:25 45:15 48:7 48:7 57:3 64:5 99:2 100:3 100:15 101:13 102:15 105:6 111:7 117:3 122:12 124:16 124:22 129:10 133:24 142:12 148:7 152:11 153:9 161:8 171:6 184:25 200:16 204:15 206:15 208:16 209:22 212:10 229:15 246:13 247:24 252:6 262:9 268:9 269:3 278:13 278:19 281:7 281:8 293:18 294:20 296:23 297:7 303:9 **thesis**(2) 188:19 250:4 **they**(279) 10:14 10:24 21:9 22:13 23:16 27:17 28:4 28:6 30:15 30:17 30:19 33:6 35:14 37:6 37:9 37:14 39:3 41:15 41:22 43:11 44:20 44:22 44:25 44:25 46:13 46:13 46:13 46:14 46:15 46:16 48:8 55:10 57:3 66:23 66:24 68:3 68:9 68:13 68:16 69:11 70:15 70:23 71:7 73:6 73:8 74:4 77:17 82:9 82:20 82:22 86:7 86:9 99:24 106:17 113:18 113:19 113:21 113:22 113:22 114:4 114:15 115:23 115:24 116:1 117:5 125:6 125:8 125:23 132:10 149:8 149:19 149:22 149:24 149:24 149:25 150:13 150:18 157:4 157:6 157:9 158:8 158:9 166:23 166:24 166:25 167:1 167:1 167:4 167:24 170:1 172:20 172:21 173:16 175:8 175:8 175:12 175:13 175:14 175:15 177:8 177:12 177:20 178:8 178:13 178:16 178:17 178:19 178:23 178:23 178:25 181:21 185:17 188:20 188:20 188:22 189:22 191:14 192:19 192:20 193:18 193:25 195:5 195:18 196:7 196:15 200:7 200:8 200:8 202:25 203:24 204:1 204:3 204:4 204:13 204:16 204:16 204:17 204:20 208:4 208:16 208:20 212:2 212:17 213:22 214:1 214:4 214:6 214:15 214:15 214:19 220:12 220:19 221:5 221:17 221:25 223:18 223:23 225:9 225:15 225:17 225:17 225:17 225:19 225:24 226:12 227:4 227:5 227:13 227:15 228:7 228:8 228:22 228:9 229:7 229:9 230:16 230:17 230:18 230:24 231:9 232:19 232:3 233:3 233:4 235:22 235:24 236:3 236:9 238:24 239:18 240:14 240:16 240:24 241:1 241:2 241:3 241:4 241:8 241:9 241:25 242:1 242:2 242:3 242:12 244:5 244:8 244:8 244:10 244:11 244:12 244:16 244:16 244:18 244:20 244:21 244:22 244:23 244:25 245:8 245:19 245:20 247:6 247:8 247:13 247:21 248:6 248:23 249:12 249:13 250:7 253:6 253:23 253:23 254:1 254:22 254:22 254:23 255:10 255:11 255:11 256:18 258:19 259:5 259:24 262:2 262:11 262:12 263:1 263:20 264:20 266:10 267:24 269:4 269:8 270:4 274:23 274:25 277:16 279:25 284:5 286:5 287:5 287:10 288:16 289:20 289:21 290:6 290:9 290:10 291:25 298:1 298:2 298:2 298:15 304:4 305:21 306:13 **they'd**(2) 157:7 303:16 **they'll**(2) 35:17 41:16 **they're**(39) 44:1 66:22 68:4 69:6 114:23 125:20 133:20 149:10 175:11 178:21 180:13 185:10 185:10 187:23 210:14 212:19 224:15 227:7 228:21 229:16 230:10 242:10 242:19 244:6 244:15 245:3 247:8 247:21 254:8 254:12 254:14 254:15 260:10 260:18 289:18 292:20 292:21 298:10 303:17 **they've**(15) 10:25 106:17 120:12 190:2 204:8 210:5 212:7 225:14 241:7 245:4 248:23 262:1 272:23 291:15 295:25 | | **thing**(29) 11:18 34:12 47:8 47:9 47:10 73:21 129:22 203:21 210:17 220:9 234:14 239:7 239:12 241:4 243:21 244:20 248:8 255:9 266:7 271:13 277:14 290:4 291:15 292:22 294:10 294:22 295:11 302:7 302:24 **things**(38) 12:8 14:9 28:20 30:9 31:14 86:21 122:7 180:25 194:10 197:6 201:3 202:12 213:20 219:4 222:13 223:10 228:3 229:12 229:24 235:19 239:5 244:25 250:11 250:12 254:10 262:7 264:2 269:3 286:7 291:12 291:15 293:24 293:25 298:3 300:7 300:8 303:17 308:3 **think**(281) 10:24 11:12 12:7 12:12 12:14 12:14 14:13 15:5 15:10 15:11 16:21 19:9 19:13 21:5 22:7 23:21 25:21 26:9 28:9 29:14 29:23 33:20 37:9 37:14 40:11 41:10 41:16 41:25 42:2 43:1 43:9 43:10 43:11 43:15 44:7 46:3 48:5 51:5 64:22 66:22 69:20 70:8 70:16 70:22 74:14 75:3 75:18 76:23 83:10 83:12 84:15 84:20 85:1 85:3 85:9 85:10 85:21 86:25 91:20 95:17 97:3 97:4 97:24 106:15 112:20 113:11 113:14 114:16 116:5 118:9 118:25 123:23 125:9 126:7 126:12 126:24 133:9 134:1 136:12 139:12 139:23 140:24 144:19 144:20 147:4 154:4 156:14 158:23 159:4 163:14 163:16 164:3 164:20 165:15 165:16 165:25 168:16 168:18 168:19 170:1 171:1 172:13 180:10 180:11 180:25 181:11 181:14 182:24 187:19 190:21 191:16 192:2 192:24 196:1 196:10 197:9 199:11 199:12 199:22 200:3 200:4 200:20 201:4 201:6 201:25 202:13 202:14 202:19 202:19 202:25 203:11 205:11 206:7 206:10 209:12 209:14 209:15 212:3 213:14 216:17 216:18 217:17 219:21 220:17 220:17 220:24 221:13 221:24 222:14 222:24 223:2 223:20 224:7 224:8 224:12 224:17 225:3 225:3 225:4 225:4 225:10 226:8 226:12 227:4 227:6 228:5 228:19 228:9 230:5 231:3 231:9 231:20 232:9 233:15 234:14 234:17 235:1 235:4 235:12 236:3 236:17 237:12 237:14 238:15 239:9 240:12 241:7 241:8 241:9 241:23 242:23 242:25 243:4 243:13 244:3 245:22 245:24 246:2 246:6 246:8 246:13 254:19 255:11 255:11 257:8 258:13 259:4 259:6 260:8 261:1 261:11 261:16 262:9 266:4 267:2 267:5 268:18 270:9 275:2 275:14 275:18 277:3 278:12 278:16 278:19 281:4 281:13 282:15 284:11 284:22 284:23 286:9 286:14 287:1 288:3 288:18 289:3 289:14 289:18 289:21 290:4 290:6 290:15 290:23 291:1 291:4 291:13 291:21 291:24 293:6 293:8 293:14 293:16 293:24 295:9 295:15 295:16 296:16 296:16 296:20 296:21 296:22 297:22 297:23 298:5 298:21 298:22 299:4 299:5 299:6 299:7 304:10 304:11 304:13 307:14 **thinking**(7) 116:16 118:2 120:23 217:14 246:9 289:22 307:12 **thinks**(4) 43:17 44:8 85:15 231:5 |
| **theme**(2) 199:11 265:20 **themselves**(4) 113:16 114:23 130:10 249:17 **then**(116) 11:6 11:7 11:17 11:22 11:22 11:24 12:8 13:1 16:22 21:9 28:15 30:7 53:23 53:25 55:7 55:8 58:9 64:9 79:20 81:6 83:12 83:22 85:24 85:25 90:4 96:4 103:3 104:7 105:14 115:19 119:19 121:8 123:6 123:14 123:18 139:20 141:19 143:4 156:5 157:22 158:4 159:6 166:18 168:17 171:1 173:17 176:11 178:25 179:12 182:10 186:17 189:2 191:3 193:15 194:13 195:3 196:16 197:9 197:13 199:20 200:4 203:3 203:6 205:18 205:23 205:25 207:3 207:9 208:24 208:25 210:19 214:16 216:20 217:7 217:8 217:22 218:1 230:19 238:24 239:14 242:18 244:5 245:11 247:4 248:1 248:2 250:12 252:5 254:8 257:3 257:16 258:10 262:8 262:12 264:13 269:9 270:5 276:1 278:17 282:1 283:11 285:6 289:1 289:10 291:11 292:25 296:10 296:11 297:12 299:14 299:16 301:8 301:12 302:7 306:14 307:24 **theoretical**(1) 210:3 **theories**(1) 302:24 | | **thereby**(1) 110:7 **therefore**(9) 100:13 101:18 166:4 190:7 207:1 247:23 253:10 259:3 286:16 **therein**(1) 278:11 **there's**(141) 15:20 16:21 20:25 22:20 23:25 24:21 32:5 32:13 33:5 33:8 35:25 37:11 37:15 39:6 41:10 56:16 57:10 58:23 71:21 73:6 74:18 76:22 78:5 82:20 94:4 94:17 98:6 103:17 104:7 108:16 111:21 113:17 124:9 125:21 131:12 133:18 136:12 141:12 145:25 146:14 147:8 148:20 150:24 153:12 153:15 154:23 155:14 156:25 157:14 161:24 164:13 166:5 169:18 176:2 177:10 177:19 181:6 182:13 183:4 188:4 192:4 192:16 193:7 193:23 194:21 195:6 195:23 196:1 196:11 200:14 202:4 203:4 203:4 207:5 207:25 210:1 210:2 210:18 211:22 212:13 217:7 217:21 222:19 223:22 224:24 227:5 227:10 227:24 230:9 230:20 230:23 231:4 231:5 231:10 231:21 231:22 233:7 235:19 235:19 244:7 247:17 248:1 248:10 248:11 248:20 249:9 252:10 254:5 254:11 257:15 258:13 260:16 260:17 260:18 260:19 263:22 267:7 267:14 268:5 269:18 273:18 276:18 281:6 282:4 282:18 283:11 287:12 287:20 291:18 293:12 295:19 297:15 299:24 299:25 300:11 303:5 304:13 304:13 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**third**(94) 14:18 16:12 16:12 31:17 33:8 69:3 104:3 105:5 105:14 106:8 116:8 119:8 134:23 163:11 167:22 170:7 186:8 190:13 190:18 192:17 193:8 195:22 195:23 196:21 200:19 215:21 220:1 243:21 256:11 257:3 257:8 258:3 260:6 260:25 261:3 261:4 261:15 261:25 262:3 262:10 262:10 262:3 264:10 264:11 264:15 265:15 266:25 268:4 268:17 269:12 273:19 273:24 274:3 275:11 276:20 277:4 277:16 278:19 280:20 281:6 281:19 281:21 282:4 282:5 282:9 282:20 282:23 283:6 283:14 283:18 283:24 284:2 285:16 286:2 286:17 288:5 288:10 288:11 288:17 289:1 289:4 289:8 293:2 293:22 295:10 296:3 296:4 297:13 297:14 298:8 298:11 298:15 298:17 302:25

**this**(301) 11:4 11:8 16:3 16:16 16:24 17:4 19:10 20:6 20:9 21:16 22:1 23:2 23:16 24:5 24:7 24:13 24:25 25:5 25:12 26:1 26:4 28:12 29:13 30:10 30:16 31:7 31:16 32:11 32:13 34:10 34:13 34:24 35:18 36:2 36:24 37:2 37:4 37:16 38:13 39:1 39:11 39:12 39:17 39:20 39:22 40:18 41:9 41:14 41:20 41:25 43:1 43:12 43:17 44:8 44:21 46:6 46:10 46:25 49:1 50:6 50:8 50:25 51:2 51:4 51:10 52:22 53:1 53:21 56:4 56:10 56:15 57:16 57:21 59:3 59:3 59:4 59:5 59:20 60:6 61:25 63:6 64:19 65:15 65:19 65:24 66:2 66:8 66:25 67:10 73:18 75:5 75:20 80:4 80:15 81:16 81:16 84:18 87:11 88:14 89:25 90:14 91:14 91:18 92:10 94:11 94:13 94:14 94:16 95:1 95:2 97:7 97:14 97:14 98:11 98:15 98:17 98:25 99:24 100:1 100:25 101:11 102:3 102:24 103:20 103:23 104:11 104:15 104:18 104:19 104:24 105:3 106:2 106:23 107:1 107:4 107:9 107:10 107:23 108:7 109:25 110:3 110:13 110:12 110:13 111:12 112:18 115:17 116:15 116:18 117:8 117:11 117:17 117:19 118:3 118:11 119:13 119:23 119:23 121:3 121:15 121:16 122:6 122:7 122:23 122:24 123:4 123:8 123:8 124:14 125:4 125:25 126:1 127:15 127:22 127:24 128:5 128:10 128:13 128:15 129:2 129:9 130:3 130:23 131:4 131:6 132:3 135:5 136:7 136:19 137:7 137:7 137:10 137:20 138:7 138:9 138:13 138:19 138:19 139:17 141:5 141:8 142:13 146:11 146:25 146:25 147:6 148:7 148:24 152:4 152:4 152:13 152:17 152:19 152:22 152:23 155:23 157:2 157:14 157:19 159:5 163:20 164:12 164:19 165:6 165:9 165:13 165:19 165:24 166:1 166:4 166:9 167:4 168:13 171:14 171:25 172:7 172:9 172:13 172:17 172:20 173:9 173:24 174:25 176:20 177:19 177:23 178:2 178:14 179:21 179:25 180:5 180:12 180:22 181:3 181:9 181:23 181:25 182:3 182:13 183:17 184:22 185:6 185:9 186:5 186:7 186:10 186:12 189:25 190:18 190:24 191:5 191:25 192:2 192:9 192:10 192:20 192:22 192:23 194:17 195:19 196:3 197:13 197:23 198:6 198:13 199:9 199:13 200:22 200:24 200:25 200:25 201:3 201:8 201:9 201:21 202:7 203:11 203:19 204:11 204:12

**this**(194) 204:22 204:24 205:5 206:2 206:10 206:17 208:19 208:19 209:8 210:5 210:21 213:17 214:20 214:21 216:2 216:2 216:17 216:17 216:19 217:6 217:6 218:5 218:11 219:1 220:11 221:20 222:7 222:24 222:25 223:2 223:3 223:5 223:16 223:22 224:5 224:9 225:8 225:12 225:20 226:23 227:2 227:7 228:25 230:2 232:12 233:21 235:5 237:11 237:12 237:14 237:15 239:4 239:11 239:22 240:5 240:6 242:15 242:23 244:17 245:11 245:19 245:20 246:7 246:24 247:6 247:7 247:17 247:19 248:8 248:20 249:5 249:7 249:24 251:9 251:11 251:20 252:7 252:8 253:10 253:12 253:24 254:1 254:11 254:13 257:8 259:14 260:2 260:4 261:16 261:17 261:19 262:14 262:15 262:16 263:7 263:8 263:9 263:21 263:24 264:6 264:15 264:19 265:18 265:23 265:24 266:14 267:11 267:14 267:15 267:15 268:18 268:23 268:24 268:25 269:13 269:21 269:22 269:23 269:25 270:1 270:5 270:15 272:1 272:8 272:17 274:2 274:3 274:4 274:6 274:18 277:8 278:20 279:8 279:19 279:13 279:22 279:25 281:23 282:21 282:24 283:13 285:8 285:9 285:19 286:9 287:18 287:25 288:6 289:4 290:1 290:20 291:2 291:15 291:16 292:7 293:7 293:13 296:14 297:25 298:6 298:19 299:7 299:23 300:1 300:3 300:4 300:7 300:9 300:16 300:17 300:17 300:19 300:23 301:1 301:3 301:5 301:7 301:9 301:15 302:2 303:8 303:10 303:20 304:2 304:3 304:7 304:9 304:11 304:13 304:14 304:19 305:16 306:18 308:2

**thomas**(1) 5:6

**those**(112) 11:17 11:24 12:3 13:7 14:5 15:10 26:23 28:3 28:8 28:10 28:15 28:18 28:19 34:4 35:1 35:12 36:16 36:20 37:12 40:25 56:1 56:5 56:20 57:10 59:16 59:17 62:6 67:1 67:18 71:23 75:12 76:21 78:4 90:25 91:14 100:4 100:8 101:16 101:23 101:25 102:2 109:9 109:10 115:22 116:16 116:23 129:8 130:8 139:24 140:20 143:7 143:23 144:10 144:14 144:25 146:3 145:15 153:7 173:22 174:18 177:21 180:6 188:22 196:19 201:13 210:15 212:3 218:1 219:13 223:16 228:1 228:11 229:17 234:2 234:9 235:13 235:19 235:22 236:3 240:4 245:22 245:24 245:25 250:10 250:16 251:8 254:10 256:23 258:24 259:1 262:6 266:11 266:15 270:10 272:16 275:25 278:11 281:24 283:3 286:3 292:5 293:24 293:25 294:8 300:6

**though**(10) 128:25 142:4 197:14 207:20 226:21 226:22 243:21 263:19 290:4 291:9

**thought**(16) 73:12 74:18 118:21 118:24 132:5 133:25 157:18 170:2 177:9 206:8 208:5 238:7 242:15 243:1 260:14 279:14

**thousands**(3) 196:6 266:3 266:3

**threatened**(1) 36:24

**three**(26) 15:17 16:4 16:8 41:23 51:24 64:8 66:24 67:1 67:18 95:3 95:5 108:16 119:9 164:13 176:16 186:12 188:19 214:7 214:24 241:19 250:3 257:6 260:16 260:21 270:10 299:15

**three-and-a-half**(2) 201:2 209:17
**three-legged**(1) 32:13
**three-month**(1) 97:8
**three-prong**(1) 278:10
**threshold**(1) 241:9
**thresholds**(1) 62:8

**through**(22) 21:7 26:10 27:5 27:6 30:25 39:24 51:6 83:14 86:1 104:2 169:2 176:1 176:8 213:19 222:17 222:17 223:13 226:7 242:9 254:25 298:25 300:10

**thrown**(2) 30:7 133:17
**thwart**(1) 191:9
**tick**(1) 128:6
**tied**(1) 131:2
**tiers**(1) 218:6
**time**(109) 11:10 11:13 16:2 22:14 28:17 28:19 28:19 36:13 38:13 38:17 49:6 54:9 54:12 54:15 60:15 60:20 61:6 61:12 62:13 67:10 73:5 73:8 74:5 74:14 75:9 79:16 79:18 83:8 83:18 83:22 85:9 87:11 88:17 89:20 91:14 97:24 101:3 101:14 101:16 101:16 103:12 104:1 104:4 104:21 104:25 105:2 105:6 107:25 108:4 112:6 112:7 118:2 123:12 126:9 126:10 129:7 134:25 135:5 143:9 164:23 165:9 166:1 168:9 177:23 178:3 178:14 181:25 182:9 182:13 184:12 194:11 194:13 200:22 202:6 204:9 211:14 214:8 214:15 215:11 216:23 218:8 226:6 234:8 234:24 235:21 237:8 239:7 239:8 239:17 250:6 250:16 252:15 254:20 255:16 255:16 274:6 274:9 274:13 275:3 279:3 279:6 279:6 279:11 302:23 303:8 303:12 303:24 304:15 306:1

**time-to-time**(1) 21:7
**time3s**(1) 4:4
**timeframes**(1) 83:15
**timeline**(1) 128:10
**timely**(2) 274:7 274:10
**times**(18) 28:7 79:17 91:6 91:7 96:14 102:21 110:2 112:21 163:5 191:3 207:17 207:17 208:25 233:12 245:13 250:3 253:7 303:15
**timetable**(2) 274:25 277:17
**timing**(2) 225:11 274:17
**title**(4) 263:17 285:8 300:23 300:25
**today**(69) 10:12 11:11 13:4 14:4 18:7 18:8 19:17 33:10 44:21 63:11 63:20 72:16 72:23 83:20 86:11 86:18 86:21 89:14 92:24 120:22 130:8 130:12 130:18 132:5 133:21 134:3 135:15 145:9 159:9 159:10 175:13 175:13 177:3 178:16 178:25 180:7 180:20 182:15 191:24 193:17 194:17 195:19 197:5 197:16 206:7 211:4 211:7 219:15 230:15 230:25 233:5 233:5 243:14 249:5 249:9 252:14 254:17 277:18 279:14 302:1 302:6 302:9 304:1 304:9 304:14 305:13 305:16 305:24 307:18

**today's**(7) 103:16 126:3 135:8 198:11 254:19 256:7 303:13

**together**(9) 11:20 19:16 42:3 231:24 262:5 276:4 277:13 277:22 293:19

**told**(17) 12:10 43:3 44:20 60:15 194:10 195:8 200:14 213:1 218:10 226:1 226:2 236:19 250:19 251:16 269:1 269:3 293:2
**tolled**(1) 88:13
**tomorrow**(3) 230:10 230:12 239:18
**tonight**(1) 10:22
**too**(18) 19:6 27:19 49:24 83:12 86:13 153:15 215:3 216:15 230:12 231:3 232:9 232:11 232:11 233:8 246:13 254:20 265:5 290:11
**took**(11) 30:25 86:19 93:4 103:5 155:24 203:22 203:22 226:15 290:24 295:4 301:11
**tools**(1) 278:5
**top**(6) 21:19 81:13 123:14 164:12 164:14 207:13

**topic**(7) 115:2 184:22 191:24 205:12 216:16 273:9 299:22

**torres**(6) 2:42 8:2 91:23 134:14 198:10 256:6

**torturous**(1) 182:12
**total**(23) 25:7 51:11 51:14 51:23 51:24 52:2 52:11 53:15 54:2 54:4 66:22 66:22 66:24 79:9 135:15 135:17 135:21 136:3 144:11 144:14 197:2 215:4 238:13

**totally**(1) 11:10
**totals**(3) 69:24 70:1 237:21
**touchstone**(1) 187:10
**tough**(2) 228:11 228:13
**towards**(1) 30:5
**tower**(1) 3:44
**track**(3) 16:2 111:19 304:15
**tracks**(1) 118:22
**trade**(7) 116:24 119:21 125:18 175:12 242:8 245:9 278:5

**traded**(1) 159:12
**trading**(20) 110:16 126:9 126:16 126:24 127:24 128:7 128:11 128:14 128:24 129:8 129:20 159:20 160:20 161:6 161:10 161:23 168:2 168:10 169:5 177:6

**traditional**(2) 32:6 240:9
**train**(2) 225:18 225:18
**tranches**(1) 127:25
**tranquility**(1) 13:20
**transaction**(6) 60:16 78:6 79:10 79:21 99:4 185:16

**transactions**(6) 75:24 77:25 78:2 99:4 145:23 146:1

**transcriber**(1) 308:15
**transcript**(5) 1:18 1:49 63:4 280:2 308:10
**transcription**(2) 1:42 1:49
**transmission**(1) 255:17
**transmogrify**(1) 263:25
**transpire**(1) 129:1
**travel**(4) 277:13 293:19 297:7 308:5
**traveling**(1) 277:22
**trb**(1) 276:13
**treasuries**(3) 154:21 154:23 172:2
**treasury**(6) 122:14 150:16 150:25 171:4 171:7 171:9

**treasury's**(2) 151:7 153:25
**treat**(1) 276:4
**treated**(1) 233:2
**treating**(1) 247:8
**treats**(1) 296:8
**tree**(4) 237:18 237:20 237:25 238:17
**tremendous**(1) 26:9
**trend**(1) 69:20
**trial**(5) 180:23 180:24 193:11 296:25 297:1
**trials**(2) 203:15 297:2
**tribune**(59) 1:8 4:34 17:19 17:23 18:5 22:18 23:7 23:15 23:18 23:21 23:25 24:22 34:7 39:7 51:3 52:21 58:6 58:23 59:20 63:23 122:21 124:7 131:3 131:5 138:25 140:20 141:4 141:10 142:23 144:21 144:23 145:23 146:1 146:2 146:23 147:2 154:21 157:2 172:1 186:20 188:11 203:2 205:4 226:10 233:19 251:4 251:5 253:8 253:9 253:14 253:14 253:17 253:21 253:25 255:10 255:12 255:12 255:19 309:36

**tribune's**(10) 233:10 25:7 56:8 58:21 58:22 82:11 127:19 140:2 253:15 253:20

**tried**(9) 20:7 86:9 93:6 111:25 142:15 144:25 223:25 241:3 295:16

**triggered**(2) 214:7 297:24

| Word | Page:Line |
|---|---|
| trip(1) 281:19 | |
| triple(3) 153:6 153:7 153:9 | |
| truck(2) 298:15 298:16 | |
| true(31) 38:4 40:11 43:18 49:5 55:13 61:20 62:19 63:17 67:8 69:5 69:16 72:8 72:13 113:8 113:21 120:21 121:4 126:11 135:6 137:3 146:13 148:17 148:22 156:25 160:14 166:3 226:4 227:20 245:14 262:25 292:8 | |
| true-up(1) 155:16 | |
| truism(1) 204:10 | |
| truly(1) 120:11 | |
| trump(1) 9:3 | |
| trust(20) 4:1 7:7 8:1 11:23 28:9 211:2 228:20 241:5 258:18 259:4 270:20 272:12 273:25 290:1 294:5 295:24 297:5 303:8 303:15 304:5 | |
| trustee(12) 3:31 3:31 197:18 211:2 228:18 242:17 242:23 242:24 242:25 243:1 243:3 270:20 | |
| trustees(23) 97:12 134:22 135:4 187:4 188:21 198:12 199:6 204:17 227:3 228:22 241:24 242:11 243:6 245:12 279:20 284:4 284:12 287:9 287:23 288:19 289:6 295:8 | |
| trustees'(2) 279:22 282:6 | |
| trust's(2) 271:25 273:2 | |
| try(15) 20:22 27:16 37:4 56:13 98:24 119:11 144:13 174:3 177:12 197:21 219:22 223:7 229:5 238:19 263:25 | |
| trying(29) 21:11 23:9 23:12 27:10 27:11 33:3 60:13 93:5 107:22 107:24 114:6 120:6 120:6 120:8 121:19 142:12 145:2 196:7 202:9 229:19 229:21 233:16 233:17 238:16 239:12 239:13 253:19 255:13 267:12 | |
| turf(1) 280:3 | |
| turmoil(1) 301:19 | |
| turn(32) 13:1 14:11 14:18 15:3 15:16 21:9 24:21 34:4 39:6 48:23 53:3 53:23 55:17 57:23 58:19 63:4 65:6 68:25 72:1 191:11 193:15 212:17 223:4 236:3 294:7 298:16 | |
| turned(2) 22:10 289:11 | |
| turnover(1) 34:4 | |
| turns(3) 217:1 226:20 285:24 | |
| tweed(1) 7:28 | |
| twice(5) 167:23 167:23 220:24 253:7 293:2 | |
| two(87) 15:7 16:2 30:25 52:2 52:4 57:23 65:13 66:19 66:20 67:1 72:9 74:16 74:21 85:23 86:21 90:2 94:19 96:4 97:20 100:15 107:10 116:13 116:19 122:16 123:12 125:20 125:21 125:22 129:25 130:10 130:11 134:18 139:1 139:25 156:10 161:8 164:13 177:21 178:21 197:18 198:11 201:8 202:12 206:9 207:13 208:24 208:25 211:22 212:6 215:25 219:15 223:17 227:3 230:3 234:18 238:21 239:2 239:5 239:18 240:4 241:10 241:11 254:3 255:5 258:23 259:22 259:23 264:2 264:4 270:22 274:10 274:16 278:11 286:3 288:20 288:22 289:17 299:14 299:15 300:6 302:8 302:13 303:11 304:5 306:2 307:12 | |
| two-level(1) 270:6 | |
| two-page(1) 243:15 | |
| two-year(8) 106:8 122:13 122:14 123:18 238:19 238:20 239:14 240:1 | |
| type(11) 74:2 93:5 186:6 187:23 197:4 197:8 197:25 198:5 233:22 250:5 294:10 | |
| types(13) 26:23 43:25 45:15 88:20 105:6 129:10 130:15 171:6 172:3 172:11 197:15 250:10 259:22 | |

| Word | Page:Line |
|---|---|
| typically(3) 44:3 57:5 89:6 | |
| u.s(11) 3:31 104:20 148:2 150:15 186:12 186:18 218:17 282:10 284:1 284:7 287:3 | |
| u.s.c(6) 15:17 180:14 256:15 256:21 258:6 274:21 | |
| u.s.court(1) 309:33 | |
| ucc(9) 98:2 98:21 99:11 99:16 99:21 102:11 143:21 146:5 146:16 | |
| ultimate(2) 165:5 221:23 | |
| ultimately(6) 142:5 226:25 231:8 240:12 294:14 305:7 | |
| un-enacted(1) 289:3 | |
| unable(2) 227:4 227:7 | |
| unambiguous(2) 280:1 287:20 | |
| unbelievably(1) 226:16 | |
| uncertainty(6) 21:11 21:15 30:8 41:12 47:7 249:9 | |
| unclear(1) 300:16 | |
| under(71) 15:4 16:12 24:8 28:7 28:7 29:23 30:3 32:8 39:12 41:13 44:7 51:14 53:10 65:12 66:10 69:1 91:9 91:10 101:23 106:5 111:7 115:6 115:13 115:13 115:20 117:15 118:5 118:6 118:14 119:20 119:25 135:13 141:5 157:14 158:6 164:23 175:16 177:20 178:19 181:10 184:7 184:9 184:10 184:15 185:25 186:24 187:1 197:23 199:18 200:16 206:14 207:3 209:22 210:4 220:14 221:25 229:4 237:18 244:5 263:9 263:11 264:7 265:10 265:17 273:19 275:15 285:11 289:4 292:10 292:14 304:3 | |
| undercuts(2) 33:22 111:13 | |
| understand(38) 12:19 21:6 81:3 101:6 101:20 102:14 104:24 108:25 118:7 126:21 131:4 131:23 133:9 135:6 141:22 165:6 165:13 175:3 177:15 177:17 184:3 195:14 219:6 225:2 237:15 252:22 252:23 267:4 267:10 267:11 268:13 274:11 275:3 289:24 290:18 293:19 300:25 305:24 | |
| understanding(17) 42:24 44:8 44:16 45:6 45:17 45:25 46:5 54:2 58:11 72:8 76:9 79:18 91:24 208:2 267:22 267:23 287:6 | |
| understands(1) 187:19 | |
| understood(4) 46:21 92:1 263:1 266:9 | |
| understood"(1) 262:22 | |
| undertake(1) 185:14 | |
| undertaken(1) 143:8 | |
| undoubtedly(1) 102:10 | |
| unfair(21) 210:10 245:6 259:11 259:15 260:6 261:1 261:6 261:12 261:20 262:13 263:12 263:24 265:25 270:14 270:25 275:23 291:3 299:21 299:22 299:23 300:13 | |
| unfairly(4) 259:21 292:23 292:24 292:25 | |
| unfortunate(1) 228:2 | |
| unfortunately(1) 40:22 | |
| unified(1) 303:21 | |
| unilaterally(1) 147:14 | |
| union(1) 242:8 | |
| unique(4) 173:13 173:25 221:17 295:10 | |
| united(6) 1:1 1:20 103:25 242:18 261:1 281:20 | |
| units(1) 38:15 | |
| universe(1) 238:13 | |
| unknown(2) 74:20 194:1 | |
| unlawful(1) 251:17 | |
| unless(5) 92:15 252:7 287:11 291:5 292:5 | |
| unlike(3) 44:2 99:20 284:15 | |
| unlikely(1) 217:2 | |
| unnecessary(1) 287:19 | |
| unpleasant(1) 197:7 | |
| unprepared(2) 307:22 307:23 | |

| Word | Page:Line |
|---|---|
| unpunished(1) 277:11 | |
| unraveled(1) 13:14 | |
| unrealistic(1) 211:14 | |
| unreasonable(2) 117:18 201:22 | |
| unresolved(2) 217:21 217:22 | |
| unreviewable(1) 197:18 | |
| unscrambled(6) 14:15 192:1 210:9 210:10 221:2 305:14 | |
| unsecured(4) 5:2 97:21 215:8 215:11 | |
| unsuccessful(3) 187:8 188:13 243:2 | |
| until(18) 75:9 75:14 155:20 179:14 179:16 181:16 193:25 194:17 194:18 256:3 279:13 292:10 302:7 303:13 304:15 305:8 305:24 306:1 | |
| unwieldy(1) 293:23 | |
| unwilling(1) 227:7 | |
| up-to-date(1) 213:25 | |
| update(2) 53:11 80:13 | |
| updated(3) 53:11 101:1 126:11 | |
| upon(39) 28:14 44:9 98:4 101:20 102:12 103:10 103:13 108:24 114:9 116:15 119:16 121:5 121:13 126:9 131:5 131:6 132:12 140:6 147:8 156:6 198:12 199:15 207:16 209:7 210:15 212:23 213:25 230:8 234:12 252:12 252:15 252:19 260:13 261:17 263:5 264:2 266:14 274:22 294:23 | |
| upper(3) 62:4 110:12 121:3 | |
| ups(1) 128:11 | |
| upside(4) 131:14 141:4 188:9 188:11 | |
| upstairs(2) 258:22 258:23 | |
| uptake(1) 41:1 | |
| upward(3) 121:17 128:6 170:1 | |
| usb(2) 8:20 8:20 | |
| use(25) 17:3 65:25 66:2 107:16 108:4 110:12 111:25 120:1 126:7 133:6 137:20 156:7 160:8 160:12 173:11 205:1 212:3 222:6 223:25 244:1 261:23 284:20 286:13 287:25 288:1 | |
| used(38) 21:23 24:14 59:6 72:20 75:18 97:7 108:20 109:23 115:16 115:18 126:12 136:16 136:21 137:10 137:10 138:4 148:1 149:14 149:15 162:10 162:11 176:4 204:9 204:21 222:6 232:9 242:24 279:3 279:8 281:18 282:12 282:16 282:17 284:10 286:1 286:21 289:16 293:24 | |
| uselessness(1) 191:15 | |
| uses(4) 203:17 207:20 280:25 281:1 | |
| using(16) 50:12 110:10 111:7 119:15 123:18 135:18 135:24 147:25 151:15 161:14 176:24 203:17 209:19 239:4 254:14 254:16 | |
| usual(1) 161:14 | |
| usually(4) 17:5 169:7 169:8 233:18 | |
| utilize(4) 116:3 119:11 119:14 173:9 | |
| utilized(3) 116:6 122:23 124:22 | |
| utilizing(6) 91:11 118:24 121:2 131:1 142:17 173:22 | |
| vacancy(1) 62:15 | |
| vacuum(1) 214:17 | |
| vague(2) 172:6 174:20 | |
| vail(1) 5:32 | |
| valuable(2) 123:16 123:17 | |
| valuation(23) 52:9 52:15 53:14 80:17 80:24 90:18 90:22 110:1 122:3 122:19 123:1 125:25 159:23 161:12 168:7 168:10 168:11 169:3 169:8 169:12 203:15 203:16 204:25 | |
| valuations(1) 52:5 | |

| Word | Page:Line |
|---|---|
| value(74) 31:16 37:8 37:12 38:4 38:20 52:11 52:14 53:11 53:15 54:3 54:4 80:24 90:25 91:9 107:25 108:4 112:6 117:20 117:24 118:13 118:15 119:1 119:1 119:3 119:4 119:5 119:5 123:2 123:7 123:23 125:24 126:4 140:13 140:15 140:24 141:4 141:18 142:1 159:20 159:22 161:7 161:18 168:2 168:4 176:24 177:2 177:6 177:9 177:9 177:10 177:13 177:14 177:18 177:19 177:20 177:23 178:2 178:14 188:3 188:5 188:5 188:14 188:15 201:23 202:13 202:15 203:9 203:9 205:5 215:4 215:20 230:7 230:8 238:17 292:14 | |
| values(1) 128:24 | |
| valuing(1) 177:13 | |
| vantage(1) 191:25 | |
| variables(1) 123:12 | |
| variance(1) 119:2 | |
| varied(1) 128:24 | |
| varieties(1) 172:11 | |
| various(10) 18:2 36:1 89:9 99:10 104:22 115:6 127:25 163:5 228:7 303:9 | |
| vary(1) 123:15 | |
| vast(2) 245:13 245:15 | |
| vastly(1) 239:20 | |
| venon(1) 273:19 | |
| ventures(1) 26:11 | |
| veracity(1) 111:13 | |
| verge(1) 194:14 | |
| versa(1) 189:15 | |
| versus(7) 15:8 24:22 70:4 150:25 168:3 254:5 267:7 | |
| very(79) 10:21 10:21 10:21 16:25 21:12 22:15 26:8 28:13 28:24 31:12 31:13 32:7 34:3 34:4 34:12 34:13 36:14 40:14 66:1 67:10 79:6 79:19 93:13 108:2 114:22 125:4 128:7 133:22 139:25 154:8 172:2 173:15 173:20 173:25 174:19 184:20 185:24 185:24 191:19 191:19 192:4 193:12 200:17 200:17 203:18 203:21 210:4 211:21 217:2 223:5 226:10 235:6 236:20 236:20 238:18 241:20 245:9 246:1 246:5 246:12 250:1 270:9 270:13 278:17 279:4 279:10 279:15 279:16 280:12 281:4 289:1 289:4 290:6 293:17 293:19 297:13 297:14 302:15 308:1 | |
| viability(1) 34:7 | |
| vice(1) 189:15 | |
| vice-chairman(1) 87:23 | |
| vicinity(1) 234:18 | |
| view(32) 12:15 12:16 13:4 14:17 14:20 19:3 19:14 26:22 29:14 29:15 38:8 47:1 47:8 86:19 86:22 93:7 109:12 114:23 170:24 181:3 181:4 183:25 189:18 191:5 191:19 234:12 236:4 239:23 279:22 295:21 296:7 296:15 | |
| viewed(2) 187:18 262:5 | |
| viewers(1) 20:21 | |
| viewing(1) 262:19 | |
| views(4) 18:13 49:8 203:1 276:25 | |
| vindication(1) 15:8 | |
| violation(1) 28:9 | |
| virtually(2) 64:7 66:25 | |
| virtue(11) 93:23 117:13 132:14 132:21 206:24 207:4 207:6 208:3 208:13 254:2 299:6 | |
| vis-à-vis(2) 295:6 296:17 | |
| visit(1) 246:11 | |
| vitality(1) 293:13 | |
| vocabularies(1) 211:23 | |
| vocabulary(4) 211:22 211:24 212:4 212:6 | |
| volatile(5) 40:11 153:19 153:20 153:24 153:25 | |
| volatilities(3) 124:6 131:2 238:14 | |

| Word | Page:Line |
|------|-----------|
| **volatility**(22) 119:22 122:17 122:17 122:18 122:22 123:15 123:16 123:17 123:19 123:22 124:1 124:10 124:24 131:5 131:6 153:21 230:3 238:11 238:11 238:12 239:15 240:1 | |
| **volumes**(1) 129:10 | |
| **voluntarily**(3) 194:15 243:25 245:23 | |
| **voluntary**(1) 245:1 | |
| **vonnegut**(1) 2:23 | |
| **vote**(2) 216:7 216:8 | |
| **voted**(1) 189:5 | |
| **voting**(2) 202:22 203:1 | |
| **vouch**(1) 74:22 | |
| **vulnerable**(1) 28:5 | |
| **w.r**(2) 218:15 218:22 | |
| **wade**(1) 289:12 | |
| **wait**(5) 213:3 214:6 247:25 249:19 254:8 | |
| **waiting**(3) 44:20 245:5 249:16 | |
| **waits**(1) 47:1 | |
| **waivers**(1) 42:16 | |
| **walk**(2) 36:24 99:1 | |
| **walked**(1) 229:19 | |
| **walking**(1) 209:8 | |
| **want**(59) 11:1 11:2 11:3 11:4 11:8 11:17 21:5 24:14 28:16 35:7 70:11 81:23 85:23 86:17 142:24 155:5 172:12 174:5 175:22 180:3 188:6 188:7 188:8 188:10 188:20 190:2 194:6 198:17 199:25 200:8 202:15 203:6 206:20 211:13 211:18 211:19 211:21 212:2 213:18 223:9 224:1 227:18 230:1 234:23 237:7 237:11 242:10 243:21 244:20 245:19 249:12 251:7 257:11 270:3 277:20 287:10 294:25 303:14 304:9 | |
| **wanted**(10) 63:21 114:14 175:23 177:8 206:2 211:7 243:12 246:7 278:1 299:2 | |
| **wanting**(1) 250:9 | |
| **wants**(14) 11:16 34:9 65:18 65:19 177:11 194:5 198:3 220:11 236:25 236:25 244:11 250:16 304:6 306:18 | |
| **wardwell**(1) 6:13 | |
| **warned**(1) 190:25 | |
| **warning**(1) 191:13 | |

| Word | Page:Line |
|------|-----------|
| **was**(301) 19:13 21:16 21:18 24:7 24:14 28:11 30:6 30:17 30:19 36:14 36:16 37:10 38:5 39:20 41:8 41:14 43:19 46:20 47:25 48:1 48:2 49:5 49:7 50:10 51:11 52:14 52:14 52:16 54:9 54:15 56:10 56:15 57:8 59:5 60:6 60:11 60:13 60:15 60:16 60:16 61:3 61:7 61:23 61:25 63:13 68:6 69:7 69:8 70:2 72:10 72:10 72:16 73:21 75:23 78:6 78:16 79:10 79:15 79:17 79:18 79:25 89:23 89:24 90:10 90:10 91:3 91:24 91:25 91:25 93:6 93:15 93:20 94:15 95:14 95:24 96:24 96:24 97:2 97:2 97:3 97:24 103:8 103:10 104:19 105:16 108:13 110:14 110:20 111:10 111:25 112:1 112:8 112:8 112:19 113:3 113:25 114:17 116:3 116:13 116:19 118:3 118:21 118:25 119:7 119:10 119:15 119:24 119:25 123:10 125:24 125:25 126:8 126:10 126:10 126:22 127:22 129:5 129:6 132:12 136:20 138:23 139:20 140:21 143:10 143:18 143:20 146:21 147:13 148:1 149:13 149:13 151:17 154:2 154:4 155:7 155:22 156:3 156:5 156:14 157:22 159:19 163:1 164:3 165:16 166:12 167:9 168:2 168:9 168:10 169:4 169:5 169:20 169:25 170:2 171:2 171:4 171:16 171:25 173:7 173:10 173:15 173:17 173:18 173:22 174:3 174:6 174:7 174:9 174:11 176:25 177:1 177:6 177:9 177:22 177:22 181:3 181:21 181:23 182:8 183:15 183:15 183:5 185:7 185:7 185:16 185:21 185:22 185:24 185:25 186:1 186:5 186:7 186:8 187:6 187:17 187:18 189:4 189:7 189:9 192:14 193:4 193:6 193:8 193:9 193:18 193:20 194:2 194:11 194:14 197:3 197:16 198:19 199:15 201:4 202:8 203:24 204:1 204:1 204:7 204:10 204:12 206:9 206:11 207:16 207:23 208:2 208:5 208:10 209:2 209:12 211:14 215:10 215:18 215:19 215:21 215:21 216:7 217:14 217:16 218:11 218:21 219:1 219:23 219:24 220:5 220:7 220:13 220:13 220:14 221:9 221:9 221:10 221:16 221:18 221:19 223:24 224:23 232:14 232:15 232:16 232:21 232:22 233:24 234:2 238:2 238:8 238:9 238:10 238:12 243:1 243:14 246:6 246:7 246:15 246:20 247:2 249:5 250:5 251:16 251:17 253:7 253:8 254:9 254:19 259:21 262:17 262:20 262:21 263:1 263:8 263:9 263:10 263:11 266:16 266:17 269:6 272:6 272:7 272:14 272:16 | |
| **wash**(1) 207:1 | |
| **washington**(4) 1:26 42:13 272:25 274:4 | |
| **wasn't**(16) 54:12 67:21 79:15 79:16 170:25 177:5 177:8 209:14 214:19 215:9 219:20 230:25 232:20 232:20 284:5 290:24 | |
| **waters**(1) 289:13 | |
| **way**(82) 13:25 17:1 17:4 19:6 22:15 28:4 28:21 28:22 28:25 36:11 48:2 65:23 72:25 77:20 83:23 86:10 95:17 97:4 99:24 117:17 118:12 118:18 119:8 119:8 121:13 129:17 131:23 136:25 145:25 147:13 160:3 160:4 160:11 165:13 165:17 165:19 174:22 177:5 178:1 182:4 182:8 189:24 194:25 197:16 209:2 213:23 215:5 215:22 219:7 227:8 228:12 230:19 231:11 232:12 233:9 234:21 236:22 238:12 239:12 252:4 257:6 263:8 263:10 263:11 264:11 265:18 267:19 269:24 275:5 281:1 282:18 286:2 286:20 286:21 296:13 299:13 300:5 300:12 300:15 301:17 304:13 | |

| Word | Page:Line |
|------|-----------|
| **ways**(5) 42:2 130:10 139:5 241:13 241:13 | |
| **weakness**(2) 28:5 225:21 | |
| **wealth**(1) 297:3 | |
| **weapon**(2) 191:9 191:9 | |
| **weapons**(1) 190:25 | |
| **website**(1) 144:6 | |
| **websites**(1) 79:1 | |
| **wednesday**(8) 126:12 160:6 160:22 160:23 279:14 280:6 280:19 281:3 | |
| **week**(5) 87:1 193:22 302:7 303:8 305:11 | |
| **week-and-a-half**(1) 304:7 | |
| **week-to-week**(1) 41:22 | |
| **weekend**(4) 86:25 304:8 306:12 308:5 | |
| **weeks**(3) 194:19 272:12 303:11 | |
| **weighed**(1) 44:11 | |
| **weighing**(1) 11:14 | |
| **weight**(2) 15:13 29:23 | |
| **weil**(1) 8:43 | |
| **weiss**(1) 7:17 | |
| **weitman**(1) 4:37 | |
| **well**(157) 12:2 16:25 19:9 21:3 21:15 23:16 25:19 26:25 27:1 27:17 28:3 29:9 29:17 29:19 31:23 32:20 33:22 35:5 35:18 35:21 36:11 38:22 39:12 41:19 41:21 43:24 45:22 48:10 51:6 53:21 55:6 55:12 56:1 65:21 67:4 67:17 70:8 70:13 71:8 74:4 74:18 78:15 84:3 85:14 86:15 86:18 91:8 91:17 93:13 97:14 98:2 98:17 99:12 99:21 102:20 103:11 111:11 113:17 115:25 118:1 122:7 125:4 125:8 126:2 126:7 128:19 128:25 133:12 139:13 139:14 141:6 142:3 143:21 145:3 147:8 152:7 156:13 158:3 159:18 160:3 160:10 160:12 163:25 165:6 165:15 166:14 168:18 171:1 171:16 171:20 174:21 175:10 176:19 176:20 181:7 181:9 184:17 189:23 194:7 194:13 194:16 194:21 196:2 198:20 198:24 199:22 200:7 202:9 203:3 204:4 205:15 206:3 207:10 209:24 211:6 213:3 217:7 217:16 218:25 226:20 227:5 227:21 229:7 230:19 233:19 234:19 238:23 238:24 238:25 239:1 245:6 247:25 252:9 254:8 255:15 255:19 258:12 262:15 262:23 265:14 265:19 265:22 267:5 269:1 270:7 275:2 277:10 278:8 279:10 288:19 298:3 302:3 304:18 305:20 307:19 | |
| **well-established**(1) 169:9 | |
| **well-versed**(1) 69:22 | |
| **wells**(1) 6:45 | |
| **went**(10) 78:8 125:23 154:6 174:3 186:17 193:4 250:19 263:6 281:2 294:19 | |

| Word | Page:Line |
|------|-----------|
| **were**(144) 18:10 21:14 21:16 21:17 26:15 27:8 27:21 28:2 30:4 47:18 49:9 53:14 54:16 57:7 57:7 59:18 61:7 63:10 63:14 68:6 76:7 79:13 79:23 88:25 89:3 89:20 90:8 90:11 91:9 93:10 93:17 93:18 93:20 93:23 95:14 98:1 98:20 98:23 99:14 101:15 102:7 109:3 111:3 111:24 113:24 115:24 116:6 119:6 119:18 120:21 121:8 121:19 121:20 125:12 126:20 126:20 129:12 129:17 132:16 137:15 140:14 141:7 141:19 142:10 143:8 143:12 143:13 143:20 143:24 146:15 146:15 149:24 149:24 150:1 150:3 153:16 154:1 157:21 158:3 158:7 160:1 160:23 166:8 166:22 167:17 169:11 169:12 170:7 173:2 173:8 173:12 173:16 173:25 174:2 175:8 176:4 176:25 177:18 177:18 177:21 181:15 183:23 185:4 185:17 187:13 190:4 193:5 198:22 199:14 202:3 206:15 209:10 213:1 217:25 220:25 221:17 222:5 228:12 230:10 230:24 232:21 234:11 235:17 238:14 239:14 244:22 246:9 249:4 250:15 252:2 252:17 252:17 257:20 262:2 266:10 266:17 268:12 273:10 277:15 281:18 298:25 304:4 304:5 | |
| **weren't**(4) 30:20 38:22 57:3 68:9 | |
| **west**(1) 228:12 | |
| **we'd**(9) 10:18 11:4 16:23 18:18 19:22 24:12 87:11 129:17 306:5 | |
| **we'll**(27) 11:20 13:1 50:22 67:4 83:20 85:13 86:16 87:3 137:8 142:25 147:6 147:7 179:13 179:24 194:17 200:20 210:11 217:8 217:8 217:10 217:23 249:18 264:13 275:18 296:9 296:10 303:23 | |
| **we're**(95) 10:6 11:19 11:24 12:7 12:23 12:25 17:3 21:15 25:24 26:12 26:13 30:7 32:3 35:5 41:19 47:7 47:19 52:11 71:16 82:25 85:17 85:24 85:24 105:13 107:24 114:5 114:7 115:25 120:4 120:23 120:23 123:8 135:14 137:9 139:23 139:24 141:13 141:20 141:21 141:23 142:7 156:22 157:19 164:7 164:21 180:17 182:14 182:20 186:16 193:7 199:13 207:19 212:12 216:17 216:20 217:3 217:5 223:13 226:23 229:19 229:19 229:21 229:22 230:23 233:4 234:3 234:3 235:5 236:7 236:7 239:8 239:11 243:13 248:7 254:25 256:17 257:9 258:8 261:10 266:13 273:20 274:15 275:7 292:13 296:10 298:25 299:18 299:19 299:22 302:1 303:5 303:20 303:20 304:17 306:2 | |
| **we've**(37) 10:13 10:23 11:13 16:19 30:3 31:12 31:13 31:14 32:3 32:8 34:2 38:13 40:3 40:6 71:21 75:1 85:22 98:20 106:3 109:10 122:13 122:13 132:4 132:8 189:25 209:9 213:20 222:6 229:1 229:19 248:4 255:3 259:10 267:15 269:13 269:15 277:3 | |
| **wharton**(1) 7:17 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**what**(301) 11:3 12:16 12:19 12:22 13:4 14:5 16:17 17:20 17:24 19:3 20:5 20:14 20:19 21:3 21:14 22:2 22:10 23:2 23:12 23:19 23:20 23:23 26:4 26:17 27:9 27:18 29:6 29:15 30:3 31:11 31:15 31:21 32:14 32:23 34:23 35:1 35:11 35:16 35:24 36:10 37:3 39:18 40:1 41:3 41:4 41:25 42:24 43:3 43:8 43:17 43:18 44:8 45:6 45:18 46:1 46:6 47:1 49:8 50:5 52:14 53:22 54:19 54:24 55:3 55:4 55:10 55:13 56:24 65:8 65:17 66:4 66:18 66:20 68:6 68:15 69:11 69:21 69:22 69:24 70:13 70:14 71:2 71:10 71:23 72:8 73:4 74:2 77:7 77:20 82:9 84:11 84:13 87:22 87:25 89:17 90:8 90:22 91:5 92:24 93:6 93:14 93:15 94:13 94:25 96:3 96:11 96:18 98:13 98:24 99:1 100:19 102:4 102:9 102:20 103:8 104:18 105:2 105:5 105:13 105:19 106:2 106:3 106:23 107:9 107:13 107:16 107:22 107:24 108:4 108:20 109:23 110:8 110:11 111:24 112:21 114:3 115:9 115:19 115:22 115:22 116:3 116:13 117:24 119:4 119:8 120:4 120:6 120:6 120:7 120:10 120:12 120:23 120:23 120:24 122:14 122:21 125:19 125:23 126:5 127:3 127:22 129:11 129:11 130:5 130:7 132:10 133:10 135:14 135:24 138:23 139:12 139:16 140:1 140:3 141:24 142:5 142:7 142:16 143:8 143:12 143:18 143:23 145:9 145:22 146:3 146:6 146:19 149:5 149:10 149:19 151:17 152:14 156:5 156:17 158:4 158:5 158:12 158:24 160:24 161:9 161:12 163:1 164:16 164:23 165:23 166:25 168:1 168:10 168:13 168:16 168:19 169:4 169:16 170:13 170:20 170:24 172:3 172:8 172:18 173:4 173:6 174:6 174:7 175:13 177:17 178:16 180:5 180:23 180:25 183:3 184:23 186:20 187:10 191:17 192:4 193:19 194:11 195:2 195:21 196:7 199:13 199:14 199:20 200:2 200:13 202:10 203:2 203:9 203:12 203:13 203:25 205:6 206:20 207:18 207:21 207:25 208:11 208:15 211:17 213:5 213:8 213:17 216:4 216:6 216:16 217:6 217:22 217:24 219:16 220:2 220:21 221:5 224:14 225:3 225:12 226:14 226:15 226:17 231:21 231:22 233:14 234:1 234:3 234:12 235:12 236:9 237:8 238:5 238:6 238:16 240:8 243:13 244:10 245:16 248:14 249:9 251:14 251:16 252:6 253:16 254:9

**what**(79) 254:12 255:6 255:7 255:15 256:19 257:6 257:7 258:8 258:10 258:18 259:5 259:9 260:4 260:5 260:6 261:20 262:7 263:1 264:4 264:6 264:8 264:8 266:18 267:11 267:18 268:4 268:14 268:20 268:21 270:6 270:7 271:17 276:2 278:18 278:21 279:12 279:12 279:25 281:13 281:24 282:1 282:5 284:2 284:3 285:18 286:5 286:7 286:10 286:20 286:20 287:18 288:11 290:16 290:22 290:23 292:13 293:3 293:12 295:16 295:16 295:20 296:20 296:22 298:4 298:9 298:17 299:18 299:25 300:1 300:2 300:16 300:23 301:2 301:22 303:20 304:6 304:10 304:17

**whatever**(10) 97:13 139:1 143:5 144:15 156:13 212:17 218:2 234:6 234:15 298:6

**whatsoever**(1) 71:14

**what's**(53) 18:8 18:23 20:2 25:4 25:15 27:2 27:3 30:23 33:7 33:22 35:1 35:4 35:12 35:15 41:20 42:12 42:23 45:5 45:25 47:1 57:15 68:1 78:20 92:5 95:10 97:17 101:10 111:16 120:16 122:5 123:8 128:24 131:17 133:20 133:25 189:15 218:1 223:10 224:18 233:6 233:6 233:18 249:8 249:11 264:9 265:18 265:22 265:24 268:15 268:25 279:10 293:10 293:11

**when**(107) 11:15 13:8 21:16 22:9 26:25 27:2 27:16 28:3 28:13 31:1 33:3 33:5 34:13 37:4 37:19 40:10 41:14 44:22 52:14 52:15 56:6 57:5 58:9 62:14 63:20 70:14 70:18 73:24 75:4 79:15 100:20 108:4 110:18 113:25 160:12 160:20 160:23 164:24 168:9 168:15 169:11 179:1 180:6 180:9 181:19 181:24 183:7 183:15 188:13 189:13 193:19 194:2 196:17 198:1 199:2 200:16 203:22 203:24 212:12 213:12 213:12 213:24 214:2 214:2 214:4 215:11 216:12 220:10 220:12 221:5 226:1 228:2 231:21 235:8 235:21 235:22 235:25 240:18 246:4 247:3 247:3 250:20 252:4 253:11 262:19 266:1 267:3 267:5 267:24 271:5 274:21 279:18 279:22 282:2 282:16 283:19 284:9 286:3 286:22 288:20 290:17 290:22 294:16 296:9 296:10 303:11

**whenever**(3) 210:15 229:15 239:19

**where**(74) 13:5 21:22 23:17 26:13 36:12 40:25 54:15 57:8 63:25 76:6 86:24 87:1 89:3 100:9 100:10 101:8 105:9 116:1 122:11 122:15 123:11 123:21 125:8 128:4 130:18 134:1 135:21 137:15 143:19 153:16 165:14 165:20 166:5 166:16 169:1 180:17 180:24 183:15 184:6 185:1 186:23 192:19 194:5 194:9 196:25 212:11 212:11 212:18 213:13 217:19 219:24 223:16 224:17 225:23 226:11 231:4 235:9 237:4 237:23 247:3 250:18 250:19 250:22 251:1 262:2 266:13 268:3 279:5 285:21 285:25 290:24 294:20 296:14

**whereby**(1) 100:2

**whereupon**(1) 308:6

**where's**(1) 223:15

**whether**(75) 11:1 13:9 13:11 14:12 14:19 42:4 75:4 75:12 76:22 85:17 89:25 93:20 100:14 132:5 138:16 139:2 139:10 140:21 141:10 143:14 146:23 147:2 147:13 160:7 165:24 166:2 167:4 170:21 176:23 177:9 183:2 183:16 193:22 194:19 195:12 195:16 203:8 212:1 214:7 218:23 219:22 220:7 220:13 224:12 224:13 225:6 232:10 236:22 244:16 245:3 245:21 248:12 252:6 254:15 258:13 259:14 259:19 262:11 267:7 267:13 266:8 268:9 279:5 285:21 285:25 290:24 276:14 278:15 291:3 294:1 294:6 295:22 296:7 296:12 296:15

**which**(171) 12:13 13:16 13:18 14:4 15:18 25:25 27:5 28:14 36:15 36:17 43:5 44:9 46:3 50:14 51:3 55:19 69:25 69:25 71:7 72:2 75:23 79:25 80:9 81:7 84:7 85:6 89:24 91:12 96:22 102:21 103:16 105:13 105:22 107:18 112:6 118:13 118:22 119:8 120:25 121:10 121:14 122:1 122:14 122:21 123:1 123:5 123:7 123:13 126:8 126:15 129:5 130:9 130:13 131:2 135:13 138:20 140:5 148:7 151:20 153:12 154:3 155:7 156:23 161:6 175:5 175:6 176:4 180:4 180:19 181:10 182:24 184:24 185:5 187:10 187:17 188:2 190:14 193:8 197:5 205:2 205:12 205:13 206:23 209:15 211:24 212:8 212:23 213:4 214:21 216:11 217:10 220:10 220:15 221:8 221:1 221:10 223:10 224:22 224:23 224:24 225:10 226:9 227:5 227:15 229:18 230:1 230:5 231:14 231:21 234:24 235:10 238:10 239:12 241:20 243:7 245:24 249:6 250:5 251:21 251:22 253:5 257:14 258:10 260:19 261:9 261:10 262:2 262:16 263:18 265:10 266:2 266:22 266:23 268:22 272:16 273:17 274:18 274:20 276:23 279:23 280:11 280:12 280:13 280:13 280:21 280:22 281:4 286:19 287:13 287:23 288:18 288:25 289:3 289:8 289:16 289:21 290:12 293:8 293:21 293:23 294:21 294:21 295:9 295:12 295:25 296:24 301:13 301:13 301:19 301:21 302:13

**while**(27) 17:1 40:14 46:16 47:19 59:17 60:6 60:10 61:6 61:15 101:12 101:24 114:11 114:11 118:19 123:8 132:13 137:9 151:5 174:4 185:10 190:4 210:11 223:1 227:6 228:25 232:4 293:12

**white**(1) 6:45

**who**(50) 11:17 12:3 16:9 27:18 42:20 70:21 78:16 89:20 93:8 93:23 109:9 109:10 109:11 110:6 114:3 117:1 132:24 157:2 174:23 183:12 183:13 189:9 189:23 222:16 224:4 224:5 224:22 226:7 227:13 227:13 229:10 230:12 232:21 232:23 232:24 233:21 242:7 242:9 242:14 243:24 243:25 245:23 248:13 249:15 253:14 266:17 271:8 272:23 272:24 302:23

**whole**(22) 17:22 21:10 29:22 175:7 189:10 212:24 213:19 216:7 230:2 230:2 233:15 235:15 235:20 237:8 239:11 246:10 246:19 255:9 293:20 297:3 298:7 303:10

**whom**(4) 14:24 17:18 87:20 90:5

**whose**(4) 109:12 212:6 216:10 240:22

**who's**(3) 245:18 301:16 301:16

**why**(60) 12:4 12:9 22:18 25:18 28:1 38:11 41:11 55:6 85:25 93:12 97:19 109:6 112:25 116:16 116:22 120:18 123:1 124:4 124:25 127:9 131:19 150:18 155:20 162:11 164:21 167:1 171:17 173:10 173:12 177:25 185:20 203:25 204:20 208:4 216:19 218:13 222:2 222:8 227:19 227:23 228:18 230:2 231:23 234:23 234:23 249:14 249:15 251:10 253:10 255:10 264:14 287:7 288:3 291:1 291:4 297:17 298:1 298:24 300:8 300:10

**wide**(1) 111:21

**will**(161) 11:11 11:16 11:18 12:15 13:3 13:4 13:19 13:23 14:2 14:12 14:16 14:19 14:21 14:25 15:14 33:5 37:25 38:19 40:24 41:8 42:2 44:10 44:22 69:13 69:17 69:18 73:24 74:15 75:8 76:23 78:9 83:10 83:12 85:2 86:17 87:5 88:15 95:10 99:7 100:14 101:13 101:17 101:18 101:22 102:6 102:10 102:12 102:21 102:24 102:25 103:1 103:4 108:1 111:19 114:6 114:10 115:10 118:4 120:24 121:4 122:10 125:18 126:15 129:6 130:19 132:15 132:21 132:22 133:12 139:18 139:20 142:5 142:17 145:6 151:15 152:13 156:2 156:11 157:15 157:23 158:1 175:12 178:17 178:19 182:18 183:16 183:17 184:13 184:18 184:20 188:13 188:14 188:16 190:6 190:8 190:10 191:25 192:2 194:7 195:4 195:5 195:9 195:12 195:16 198:12 198:14 198:16 204:14 204:18 204:19 204:23 205:7 205:9 206:17 208:18 210:18 214:12 216:8 216:21 221:2 225:3 225:5 225:8 225:9 225:25 227:17 231:14 233:23 240:17 241:20 244:5 250:17 252:12 254:13 258:18 259:4 260:1 260:12 260:12 262:12 264:10 264:10 264:11 269:10 269:10 269:13 269:20 270:5 270:5 271:7 273:7 275:9 277:2 277:10 278:14 278:15 291:18 296:5 305:7 305:15 305:21

**william**(1) 4:9

**willing**(10) 16:18 36:21 106:17 119:22 131:14 161:13 189:13 222:22 303:25 304:7

**wilmington**(31) 1:13 1:37 2:17 2:32 2:39 3:6 3:13 3:35 3:42 3:49 4:1 4:11 7:7 10:1 11:23 211:2 228:20 258:18 259:4 270:20 271:25 272:11 273:2 273:12 273:24 294:4 295:24 297:5 303:8 303:15 304:4

**wilmington's**(2) 181:22 296:13

**win**(1) 201:18

**wind**(1) 236:8

**wineman**(1) 9:9

**wires**(1) 7:47

**wish**(11) 12:13 19:17 48:12 50:5 66:2 82:2 175:12 273:23 291:5 307:10 308:4

**wishes**(1) 99:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**with**(301) 10:13 10:15 10:16 10:17 11:6 11:18 12:7 12:10 12:18 15:19 16:8 16:16 16:19 16:20 16:23 16:24 17:11 20:16 20:22 20:25 22:12 22:17 24:25 25:15 26:11 27:17 27:18 27:20 28:5 28:21 28:25 29:6 29:13 33:16 33:20 34:1 34:2 34:3 34:24 35:24 37:12 38:15 40:21 40:22 41:13 41:22 42:9 42:10 42:17 43:18 43:21 44:4 44:17 45:3 45:11 45:12 45:12 45:14 49:20 50:11 50:19 51:23 52:17 54:3 54:20 54:24 55:13 56:2 56:25 57:7 58:12 58:13 58:17 58:20 59:23 61:16 63:19 64:1 65:16 67:24 68:1 68:19 69:7 69:13 69:17 69:18 71:1 71:2 71:11 71:18 71:19 73:12 74:3 75:20 78:2 78:8 80:4 81:13 82:3 82:25 85:16 87:2 87:14 88:21 89:14 90:18 91:2 91:5 91:6 91:7 91:8 92:25 93:13 93:24 95:2 99:8 99:10 99:22 100:3 100:21 101:7 101:21 102:5 102:11 103:10 103:14 104:22 105:5 106:18 106:21 107:25 109:19 109:22 110:3 110:8 110:15 110:23 111:14 113:20 114:6 114:17 115:12 116:12 117:3 117:17 118:3 120:9 120:10 122:11 122:19 125:17 125:17 129:3 131:8 131:18 131:19 133:19 134:17 135:12 136:3 136:19 137:9 139:16 140:11 142:9 144:6 144:7 145:3 145:3 145:6 145:10 145:13 146:3 146:5 146:16 148:10 150:15 150:22 151:3 152:23 156:23 157:3 157:8 159:9 161:17 161:20 163:4 166:9 167:3 168:6 172:20 173:4 175:10 175:11 175:11 177:3 177:13 177:18 178:15 178:16 178:24 179:25 180:3 180:16 184:8 184:14 184:25 185:6 185:23 186:20 189:19 190:8 191:23 192:2 194:4 194:7 196:8 197:6 198:16 201:12 202:24 203:1 204:4 204:14 204:17 204:20 205:16 205:19 205:23 208:17 209:13 209:15 210:21 211:3 213:15 214:20 214:25 215:17 215:25 216:1 216:1 216:3 216:5 216:8 217:1 217:11 217:23 218:3 218:20 219:18 220:6 221:6 221:17 223:10 223:18 224:19 224:22 224:24 226:16 230:17 231:12 233:18 235:4 235:9 235:12 235:23 235:24 237:5 237:12 238:8 239:11 240:3 241:22 242:1 242:3 243:13 244:6 244:12 245:9 247:11 248:1 248:12 248:15 248:20 248:25 249:2 249:13 249:14 250:6 250:25 252:1 254:5 255:9 255:12 258:5 258:6 258:7 259:2

**with**(67) 261:13 262:2 262:5 262:17 262:21 263:4 263:12 263:13 263:14 263:15 266:1 266:5 266:10 266:13 272:5 272:6 272:12 272:14 272:22 272:24 274:1 274:10 276:2 276:12 276:19 277:4 277:20 278:9 279:3 281:4 284:1 284:16 284:17 285:10 287:18 288:9 290:21 291:7 291:14 292:21 293:7 293:10 293:24 293:25 293:25 294:4 295:14 295:22 296:4 296:10 297:2 297:3 297:22 298:2 300:20 300:24 301:12 303:1 303:7 303:9 303:25 304:1 304:3 304:8 305:16 306:5 308:3

**withdraw**(4) 72:17 73:7 73:8 73:13
**withdrawing**(1) 73:2
**withdrawn**(6) 72:23 83:3 83:6 83:7 309:25 309:26

**withholding**(1) 74:3
**within**(17) 13:18 22:3 62:14 89:19 92:11 95:10 100:12 200:22 216:23 259:15 261:20 269:19 284:19 285:17 299:23 299:24 303:23

**without**(15) 25:3 83:3 103:22 162:16 176:11 183:21 196:24 214:11 225:7 249:17 254:6 265:16 294:23 298:19 300:9

**witness**(46) 16:24 17:9 17:11 22:1 22:7 30:2 32:20 40:20 41:6 43:2 44:8 44:16 46:10 47:25 49:20 52:17 52:24 57:13 62:25 64:15 68:19 71:8 82:1 82:4 82:21 83:9 85:16 87:12 87:13 87:17 91:25 92:9 112:12 114:17 124:12 124:16 128:17 129:19 136:12 151:11 163:6 163:22 167:7 167:11 171:9 214:23

**witnesses**(15) 10:18 11:1 11:2 11:5 12:7 12:11 12:12 12:21 16:22 44:6 83:19 187:2 254:25 255:1 309:2

**witness's**(1) 83:24
**won**(1) 231:8
**wonderful**(2) 14:9 209:10
**wondering**(1) 165:23
**won't**(14) 41:15 73:24 85:6 147:12 191:21 208:19 228:10 241:5 241:5 242:12 243:18 295:21 296:7 304:21

**woods**(1) 244:21
**word**(36) 59:6 63:19 72:20 81:13 180:8 180:9 183:6 207:20 212:8 219:8 222:6 222:18 242:24 261:18 279:23 281:24 281:25 282:3 282:16 284:2 284:2 284:10 284:20 285:15 285:19 285:25 286:7 286:10 286:13 288:25 289:15 290:5 297:25 299:25 300:1 300:5

**words**(13) 135:24 192:1 212:4 241:1 251:8 255:9 269:7 282:12 283:2 283:3 283:5 283:11 289:11

**work**(32) 35:18 35:21 35:24 42:24 45:12 45:14 76:17 76:19 77:9 88:5 88:10 88:20 91:13 91:5 100:6 100:18 100:21 100:21 101:1 101:6 101:22 117:16 122:9 196:5 214:4 214:7 216:17 253:24 288:4 303:25 304:2 304:8

**workable**(1) 234:14
**worked**(10) 18:5 31:12 31:13 88:3 88:17 88:21 89:3 91:6 91:7 275:18

**working**(3) 112:6 123:14 214:2
**works**(3) 230:24 253:21 255:11
**world**(6) 32:4 36:17 134:1 230:20 234:4 242:5

**worried**(1) 298:2
**worry**(3) 37:3 146:25 212:19
**worse**(3) 25:24 25:24 226:14
**worth**(3) 130:11 188:23 215:13
**worthy**(1) 216:3

**would**(301) 10:14 11:25 12:9 12:17 12:20 13:3 13:13 16:11 16:13 18:10 19:3 19:4 19:7 20:8 21:14 22:20 23:14 23:18 25:3 27:4 27:6 28:9 29:6 29:9 31:6 33:1 33:13 35:14 35:24 36:1 36:12 36:13 37:19 38:22 40:7 41:10 41:16 41:25 43:11 43:16 44:5 47:2 47:3 47:5 47:8 49:8 55:13 55:14 55:15 57:6 58:17 62:17 62:17 62:19 64:19 64:23 66:14 68:16 69:21 70:4 70:5 70:13 70:15 70:16 70:21 70:22 71:2 71:11 71:15 71:18 71:23 72:9 73:5 73:12 75:22 76:2 76:9 76:19 77:8 77:10 77:10 79:3 79:22 82:5 82:7 84:9 84:21 85:10 85:21 86:12 86:20 86:24 88:18 88:24 91:5 92:10 93:15 93:16 93:19 93:22 95:11 95:12 95:13 95:17 97:14 98:3 98:4 98:18 98:23 99:13 100:9 100:10 100:11 100:16 100:19 101:1 101:7 101:16 102:3 102:8 102:9 102:9 106:17 106:24 107:15 107:16 108:2 108:6 108:7 108:23 109:4 109:20 110:6 110:7 111:1 111:11 111:18 111:18 111:23 112:3 112:4 112:10 112:14 112:18 112:21 113:12 113:22 114:9 114:15 115:18 115:19 115:23 116:1 116:2 116:14 116:18 116:21 117:2 117:14 117:17 118:5 118:11 118:12 118:18 118:20 119:6 119:19 120:2 120:8 120:9 120:20 121:8 121:11 121:13 121:15 122:16 122:25 123:12 123:22 123:23 125:6 125:13 125:23 126:3 126:13 126:18 126:25 127:3 128:9 129:20 129:22 130:15 131:9 132:16 132:19 132:22 133:6 133:24 134:6 135:18 135:18 136:24 138:13 139:21 140:10 140:20 141:6 141:19 141:24 142:7 142:23 144:2 144:6 144:13 144:21 144:23 145:14 146:3 146:7 147:11 152:4 156:9 156:17 157:9 157:10 157:22 158:5 158:8 158:15 158:16 159:1 161:25 165:9 166:17 166:18 166:18 167:23 167:3 170:1 170:13 170:21 170:23 170:24 170:24 173:19 175:7 175:8 177:20 181:17 183:24 183:25 184:2 184:4 184:17 185:3 185:14 185:15 185:16 185:18 186:1 186:3 186:4 186:6 186:13 186:13 186:18 186:20 186:23 186:25 187:2 187:14 187:23 188:24 189:16 189:17 189:18 190:21 191:8 191:9 192:13 192:14 193:2 193:11 194:4 194:18 195:15 196:3 196:7 196:14 196:24 197:17 197:24 198:5 199:1 199:6 199:16 199:20 200:2 200:21 201:7 201:17

**would**(105) 201:19 201:20 204:11 204:11 205:17 206:16 208:7 208:8 208:9 208:10 208:12 208:24 208:25 209:9 210:6 217:17 217:18 217:19 218:3 222:12 224:21 224:23 227:15 232:25 234:23 239:21 239:24 242:6 243:8 245:2 251:17 251:25 252:5 252:14 252:20 253:10 254:12 254:21 257:2 257:3 257:7 257:21 257:23 258:10 258:21 259:2 259:3 259:5 260:4 261:10 263:1 263:25 265:23 268:4 268:8 268:14 269:17 270:10 270:12 271:19 273:22 274:1 274:6 274:9 274:13 274:25 275:13 276:1 276:4 276:7 276:20 276:21 277:13 277:25 277:25 281:19 282:14 285:14 286:9 286:9 293:20 293:22 294:11 296:1 296:25 297:2 298:2 298:8 298:14 298:19 298:21 299:1 301:8 301:18 301:19 301:20 302:10 302:19 302:24 305:5 305:16 305:17 305:25 306:7 307:9

**wouldn't**(18) 11:22 36:5 43:11 55:2 93:12 113:5 117:5 137:24 148:9 155:19 182:7 200:1 202:3 207:22 234:23 277:24 298:18 299:10

**wpix**(2) 23:17 253:22
**wpix-11**(1) 23:22
**wrapped**(1) 304:7
**wreck**(1) 291:17
**write**(1) 144:10
**writing**(3) 87:2 246:17 250:12

**written**(6) 13:17 14:7 260:16 274:25 291:20 299:13

**wrong**(13) 13:23 53:5 141:18 208:5 245:4 248:1 248:3 248:11 249:13 251:12 251:25 288:7 294:16

**wrote**(2) 166:14 246:4
**www.diazdata.com**(1) 1:46
**wyeth**(1) 288:22
**yamaha**(2) 258:5 270:9
**yeah**(4) 196:10 203:3 290:3 291:11
**year**(27) 13:18 18:6 39:22 39:24 40:9 40:17 40:19 41:3 41:9 59:20 64:8 78:17 133:14 169:12 193:22 219:1 233:25 234:19 234:20 237:16 237:23 239:3 252:16 252:16 272:17 274:4 282:24

**year-to-date**(2) 40:7 51:8
**years**(44) 13:14 20:17 20:17 20:17 21:9 30:25 32:4 41:21 66:19 66:21 72:9 88:4 88:9 88:13 88:15 89:19 94:19 96:5 114:2 114:10 115:12 118:16 121:14 122:16 130:1 130:11 134:18 139:1 153:15 153:23 156:11 201:2 206:9 210:12 217:1 234:18 238:21 239:2 239:18 245:5 247:24 249:17 285:17 293:3

**yes**(252) 14:20 17:23 18:14 18:25 19:2 19:13 19:15 19:18 19:21 20:4 20:13 22:7 23:1 23:7 24:3 24:12 24:20 24:24 25:2 26:3 26:16 27:24 29:12 29:21 30:15 30:22 30:24 31:20 32:12 34:22 35:23 36:9 37:13 38:7 39:2 39:5 39:9 39:18 42:11 42:19 44:16 45:4 45:13 45:16 45:19 47:19 48:21 48:25 49:2 49:4 49:7 49:10 49:21 49:25 51:16 51:19 51:22 52:1 52:4 52:7 52:10 52:24 53:9 53:13 53:19 53:19 54:5 54:8 55:16 55:21 55:25 56:6 56:9 56:12 56:15 56:19 56:22 58:3 58:7 58:8 58:11 58:22 59:2 59:5 59:8 59:11 59:15 59:19 59:22 60:8 60:12 60:25 61:2 61:5 61:9 61:22 61:25 62:10 63:5 63:8 63:8 63:12 63:18 64:3 64:16 64:21 67:17 67:17 67:18 68:17 69:2 69:4 69:15 70:16 72:3 72:5 72:7 72:12 72:19 72:22 72:25 72:25 73:23 74:11 74:12 75:11 75:15 75:17 76:1 76:16 77:16 78:13 79:12 80:10 80:11 80:14 80:18 81:10 81:11 82:7 88:12 89:11 89:16 90:15 90:20 91:4 92:12 94:6 94:12 94:20 95:9 96:6 97:16 98:9 99:20 101:15 101:20 103:7 103:19 104:6 104:9 104:17 105:1 105:18 105:21 106:1 106:11 106:15 106:22 107:3 107:21 108:19 109:5 109:17 111:15 112:16 113:7 116:10 117:23 122:4 124:13 127:6 127:21 128:12 128:16 129:13 134:19 134:24 135:10 135:12 136:12 137:17 138:8 138:22 139:15 143:3 145:17 146:18 150:17 151:8 151:22 152:13 152:25 153:3 153:5 153:8 153:11 153:14 153:18 153:22 154:11 154:14 154:19 155:6 156:15 157:1 157:20 159:4 161:4 162:10 163:9 163:13 177:22 178:4 179:3 198:21 216:8 216:14 224:13 228:2 230:16 241:24 256:13 258:16 267:17 290:2 290:14 299:24 304:20 306:7

**yet**(15) 14:1 30:7 57:3 76:19 86:19 192:6 204:23 207:13 215:14 236:9 236:16 272:19 272:20 273:15 283:9

**yield**(15) 110:16 111:12 119:6 149:2 150:4 150:18 150:25 151:3 151:5 151:20 153:1 153:16 160:12 206:16 309:37

**yields**(3) 123:19 172:2 206:14
**york**(14) 2:25 2:47 3:21 3:28 4:19 5:22 6:31 8:2 22:3 23:18 89:22 196:18 266:4

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **you**(301) 10:3 10:11 11:3 11:5 11:8 11:20 11:24 13:19 13:23 14:16 17:5 17:5 17:12 17:14 17:18 18:3 18:5 18:12 18:23 19:3 19:13 19:16 19:17 20:2 20:5 20:12 20:14 20:23 21:4 21:8 21:9 21:21 22:6 22:14 22:19 22:24 22:25 23:5 23:14 23:21 23:21 23:24 24:2 24:19 24:19 24:19 24:21 24:23 25:3 25:18 25:23 25:25 26:2 26:4 26:14 26:17 26:17 26:19 26:25 27:2 27:2 27:7 27:9 27:13 27:16 27:18 27:21 27:21 27:22 27:25 27:25 27:25 28:1 28:2 28:9 28:11 28:13 28:21 29:3 29:7 29:24 30:1 30:5 30:6 30:9 30:14 30:18 30:18 30:20 30:21 31:6 31:17 31:19 31:21 32:3 32:14 33:1 33:3 33:4 33:14 33:19 34:6 34:9 34:13 34:15 34:17 34:20 34:21 35:5 35:6 35:7 35:7 35:18 36:3 36:7 36:8 36:10 36:11 36:12 36:13 36:22 37:3 37:3 37:4 37:12 37:14 37:18 37:19 37:19 38:17 38:19 38:22 38:22 39:3 39:4 39:6 39:8 39:17 39:24 40:19 40:20 41:2 41:2 41:5 41:8 41:9 41:25 42:8 42:18 42:20 43:10 43:14 43:25 44:5 44:5 44:9 44:12 44:13 44:14 44:15 44:21 45:3 45:14 45:17 46:9 46:12 46:25 47:6 47:13 47:17 48:6 48:10 48:12 48:18 48:18 48:23 48:23 49:3 49:3 49:15 49:22 49:23 50:4 50:6 50:25 51:13 52:5 52:8 52:19 52:19 52:20 52:21 53:1 53:8 53:14 53:17 53:23 53:24 53:25 54:18 54:18 54:23 55:5 55:6 55:9 56:13 56:23 57:14 57:15 57:21 58:17 58:19 58:20 58:21 59:2 59:6 59:19 59:18 60:24 61:7 61:10 61:13 63:1 63:3 63:3 63:4 63:10 63:11 63:13 63:14 63:17 64:1 64:4 64:11 64:17 64:19 65:3 65:7 65:9 65:12 65:12 65:22 66:18 66:22 67:13 67:24 68:6 68:9 68:13 68:15 68:20 68:20 69:3 69:12 69:16 69:22 69:24 70:3 70:3 70:6 70:8 70:13 70:18 70:18 70:19 70:19 70:21 71:1 71:10 71:12 71:13 71:17 71:20 71:22 72:1 72:6 72:11 72:16 72:20 72:23 73:1 73:4 73:6 73:8 73:11 73:18 73:21 73:24 74:2 74:14 74:14 75:3 75:4 75:18 76:14 76:18 76:25 77:7 77:8 77:10 | | **you**(301) 77:13 77:14 77:18 77:24 78:7 78:9 78:10 78:11 78:14 78:18 78:19 79:3 79:11 79:23 80:1 80:2 80:4 80:7 80:8 80:13 80:15 80:19 81:3 81:6 81:12 82:2 82:2 82:4 82:5 82:9 82:22 83:11 86:5 86:12 87:16 87:16 87:17 87:20 88:3 88:5 88:10 88:13 88:17 88:20 88:21 89:3 89:3 89:8 89:12 89:17 89:18 90:8 90:13 90:13 90:16 90:18 90:21 91:2 91:5 92:10 92:17 92:21 92:22 93:4 93:4 93:10 93:12 93:24 94:3 94:5 94:11 94:17 94:19 94:25 95:8 95:10 95:16 95:20 95:20 95:23 96:3 96:3 96:5 96:18 97:9 97:13 97:15 97:19 97:23 97:25 98:7 98:15 99:1 99:19 100:11 101:4 101:11 101:13 103:5 103:8 103:15 103:18 104:5 104:8 105:9 105:11 105:14 105:16 105:19 105:25 106:2 106:21 106:23 107:1 107:1 107:9 107:20 107:22 107:22 108:4 108:5 108:18 109:2 109:6 109:12 109:14 109:22 110:2 110:8 110:17 110:22 111:4 111:13 111:22 111:25 112:9 112:10 112:13 112:14 112:19 112:20 113:6 113:11 113:20 114:13 114:21 115:5 115:6 115:8 115:9 115:22 116:8 116:9 116:11 117:8 117:10 117:22 117:24 120:13 121:21 121:22 122:3 123:18 124:2 124:4 124:8 124:12 124:18 124:25 125:6 125:25 125:25 126:2 126:5 126:11 127:9 127:12 127:19 128:1 128:4 128:6 128:6 128:10 129:6 129:10 129:15 130:7 130:8 131:13 131:15 131:19 132:5 133:18 133:23 134:18 134:22 134:25 135:3 135:7 135:12 136:3 136:7 136:19 136:21 136:24 137:2 137:9 137:19 137:15 137:20 138:1 138:3 138:3 138:7 138:9 139:12 140:1 140:24 141:3 142:24 142:25 143:4 143:7 143:12 143:23 144:2 144:10 144:13 144:15 144:15 145:8 145:8 145:9 145:9 145:13 145:15 145:20 145:22 145:23 147:5 147:7 147:12 147:15 147:17 147:19 147:19 148:1 149:1 149:5 149:8 149:11 149:13 149:14 149:19 149:22 150:2 150:6 150:6 150:10 150:15 150:25 151:3 151:5 151:9 151:12 151:12 151:14 151:17 151:20 152:1 152:9 152:22 153:7 153:24 154:2 154:1 154:12 154:18 155:4 155:5 155:10 155:14 155:20 155:22 155:23 156:1 156:10 156:18 | | **you**(301) 156:19 156:24 157:2 157:3 157:13 157:13 157:18 157:25 158:2 158:3 158:22 158:25 159:4 159:4 159:14 159:18 159:19 159:21 159:25 160:1 160:8 160:12 160:12 160:20 160:20 160:23 162:6 162:7 162:8 162:17 163:1 163:8 163:8 163:10 164:9 164:10 164:12 164:13 164:19 164:24 165:15 165:16 165:24 166:8 166:12 166:14 166:19 166:23 167:3 167:3 167:4 167:7 167:9 168:4 168:9 168:16 168:16 168:19 169:1 169:1 169:9 169:16 169:17 169:19 169:25 170:7 170:21 170:24 171:14 171:20 172:12 172:13 173:2 173:4 173:8 173:9 173:9 173:10 173:10 173:14 173:15 173:23 173:23 173:24 173:24 173:25 174:2 174:3 174:5 174:5 174:7 174:12 175:22 176:12 176:16 176:19 176:23 176:25 177:3 177:3 177:17 177:18 177:18 177:20 177:24 177:24 178:3 178:3 178:13 179:4 179:8 179:9 179:15 180:3 180:23 181:11 181:14 183:5 183:5 183:7 184:5 184:6 184:22 185:9 186:7 186:21 186:22 187:1 187:5 187:6 188:1 188:6 188:6 188:7 188:7 188:8 188:10 188:11 188:12 188:14 189:3 189:15 189:21 190:1 190:17 191:8 191:12 191:16 192:18 192:21 192:24 193:17 194:9 194:10 194:11 194:12 195:3 195:8 195:15 195:17 195:19 195:21 195:23 196:4 196:5 196:7 196:13 196:17 196:22 197:4 197:12 197:17 197:18 198:6 198:7 198:7 198:18 199:14 199:24 200:2 200:3 200:6 200:14 200:25 201:20 201:22 202:8 202:11 202:11 202:12 202:13 202:14 202:14 202:15 203:2 203:3 203:3 203:4 203:6 203:6 203:18 203:19 203:19 204:7 205:9 205:16 205:22 206:1 206:3 206:3 206:14 206:16 206:20 206:20 206:21 206:21 206:22 206:23 207:1 207:2 207:2 207:8 207:9 207:10 207:15 207:25 208:9 208:18 208:18 208:19 208:24 208:24 208:24 208:25 209:2 209:9 209:16 210:19 210:19 210:22 210:23 210:24 211:9 211:10 211:20 212:3 214:9 214:14 215:6 216:1 217:16 217:20 219:15 220:6 222:5 222:12 222:18 226:13 226:15 227:11 227:19 228:12 230:2 230:5 230:17 230:25 231:24 231:24 232:13 234:2 235:1 235:6 235:8 235:18 236:17 238:1 238:1 238:1 238:2 238:13 238:16 238:23 239:10 239:21 240:1 240:3 240:11 241:4 241:16 241:17 242:15 243:5 244:18 245:6 245:7 | | **you**(200) 245:7 246:3 246:5 246:7 246:8 246:8 246:12 246:16 246:25 247:9 247:22 247:22 247:25 248:2 249:19 249:21 249:22 249:22 249:24 250:3 250:5 250:12 250:14 250:14 250:15 250:15 250:19 250:21 250:24 251:3 251:6 251:7 251:7 251:8 251:10 251:16 251:18 252:9 252:22 253:1 253:11 253:11 254:3 255:3 255:4 255:20 256:8 256:9 256:11 256:20 256:24 257:5 257:7 257:10 257:11 257:11 257:16 257:18 258:4 258:14 258:22 258:24 259:3 259:6 259:10 260:8 260:9 260:12 260:14 260:15 260:17 260:22 260:23 260:23 261:23 263:2 263:10 264:2 264:3 264:25 265:3 265:3 265:17 266:24 267:1 267:4 267:16 268:1 268:19 269:1 269:3 269:10 269:14 269:18 269:20 270:5 270:9 270:12 270:16 270:17 271:12 273:23 274:10 274:13 274:20 275:6 275:6 275:10 275:19 276:5 276:7 276:10 277:4 277:5 277:12 277:15 278:3 278:14 279:12 279:23 281:15 282:14 286:8 287:25 290:5 290:24 290:25 291:1 291:2 291:4 291:5 291:7 291:8 291:10 291:14 292:24 292:25 293:7 293:12 294:13 294:16 295:1 295:19 295:20 296:2 296:2 296:2 296:3 296:9 296:9 296:10 296:10 296:11 296:20 296:21 296:22 297:19 297:23 298:4 298:6 298:6 298:8 298:11 298:17 298:22 298:22 298:23 298:24 299:3 299:7 299:8 299:12 300:3 300:3 301:5 301:11 301:17 302:3 302:3 302:12 302:13 302:16 304:1 304:9 304:9 304:22 306:14 306:19 306:20 307:4 307:6 307:7 307:10 307:14 307:19 307:20 308:1 308:2 308:4 |
| | | | | | | **young**(2) 2:12 7:19 |

08/20/12 15:10:08

| Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|

**your**(301) 10:5 10:11 11:3 11:13 12:5 12:15 12:16 12:23 12:24 16:19 17:10 17:20 17:24 18:8 18:12 18:15 19:1 19:5 19:22 20:14 21:3 21:25 22:4 22:20 23:25 24:4 24:9 25:15 26:22 26:23 27:3 27:21 29:12 29:20 30:1 30:12 30:12 30:16 30:23 31:3 33:1 33:19 33:20 33:22 33:23 34:10 34:18 35:12 35:15 37:6 37:19 37:20 37:24 38:8 39:3 39:10 40:20 41:9 41:20 42:12 42:23 43:1 43:7 43:13 44:13 45:5 45:7 45:12 45:20 45:25 45:25 46:2 47:1 47:8 47:11 47:15 47:19 48:4 48:5 49:1 49:5 49:8 49:11 49:21 50:7 51:20 53:3 53:4 53:10 54:2 54:22 55:17 55:18 57:23 58:19 59:12 60:9 61:6 61:11 62:24 63:3 64:2 64:4 64:14 64:18 65:6 65:8 65:15 65:24 66:6 67:2 68:1 68:18 68:25 70:2 71:6 71:8 72:1 72:2 72:8 74:8 74:12 74:16 76:9 76:17 76:24 77:20 77:21 78:2 78:3 81:3 81:3 81:20 81:23 81:24 82:3 82:4 82:18 84:6 84:7 84:14 84:20 84:25 85:4 85:13 86:3 87:3 87:8 87:14 87:22 87:25 88:5 88:10 88:21 89:8 89:12 91:1 91:14 91:21 91:23 92:6 92:12 92:17 92:22 92:24 93:24 94:7 96:7 97:9 97:17 97:17 98:10 102:14 102:14 102:19 105:16 105:16 105:22 105:23 107:5 107:18 111:10 111:13 111:16 112:15 112:18 114:12 114:16 114:21 120:16 121:21 121:21 124:13 124:18 127:1 127:7 128:1 128:13 128:18 129:9 129:14 130:5 131:12 131:17 132:2 132:19 133:9 133:18 133:20 133:25 134:9 135:11 135:24 138:23 140:4 141:16 141:22 144:11 145:1 145:12 145:18 148:5 151:6 151:11 151:18 152:2 154:1 155:4 155:12 156:14 160:1 160:21 160:23 162:19 163:4 163:15 164:2 165:19 167:12 168:12 168:25 169:2 170:3 170:24 171:5 171:12 171:15 172:3 172:5 172:18 172:25 173:7 174:5 174:6 174:10 174:19 175:19 175:22 176:15 179:7 179:12 179:18 179:21 179:24 181:12 181:14 182:11 182:23 183:6 183:14 183:22 183:25 184:2 184:3 185:5 185:22 186:10 186:11 186:19 187:10 187:12 187:16 187:19 188:12 189:3 190:1 190:4 190:7 190:15 191:17 191:24 191:25 192:25 194:12 195:14 196:1 196:14 197:23 198:9

**your**(201) 198:13 198:16 199:5 200:2 200:20 200:25 201:18 203:5 203:6 203:10 203:14 203:18 204:11 205:7 205:16 205:19 205:22 206:2 206:17 210:5 210:6 210:21 210:25 211:7 211:10 211:11 211:16 211:22 211:23 213:21 213:25 214:2 214:5 214:5 214:6 214:16 215:24 217:4 217:11 217:24 218:24 219:3 219:18 220:6 220:23 222:5 222:21 222:25 223:5 223:18 224:6 224:7 225:1 225:7 227:17 228:24 229:9 231:4 232:3 234:12 236:16 237:4 237:9 237:10 237:11 237:19 239:15 240:2 240:10 240:23 241:15 241:18 241:21 242:4 243:19 243:22 245:8 246:4 246:4 246:8 246:12 246:16 246:21 247:1 247:21 247:23 249:7 249:19 249:20 249:25 250:5 251:15 251:25 252:1 252:23 253:2 253:6 253:11 254:3 254:13 254:18 255:2 255:3 256:5 256:8 257:20 258:12 259:2 259:3 259:5 259:7 259:10 259:11 259:18 260:2 260:9 260:9 260:11 261:10 261:22 262:25 263:10 266:14 268:13 268:17 269:8 269:19 270:10 270:16 270:18 270:22 271:10 271:16 271:24 272:4 272:14 273:1 273:3 273:3 273:10 273:18 273:22 274:8 274:11 274:15 274:17 274:19 274:24 274:24 275:5 275:13 275:16 275:19 275:20 276:5 276:11 276:13 276:25 277:10 277:14 278:5 278:21 279:10 279:18 280:22 281:22 281:23 282:3 282:23 286:14 286:23 287:7 289:24 290:21 290:24 291:6 291:8 291:13 293:6 294:16 295:2 295:15 295:17 295:18 295:22 297:18 297:20 298:16 299:1 302:5 302:14 302:21 304:19 306:3 306:16 306:20 307:9 307:16 307:25 308:2

**yourself**(7) 71:22 134:25

**you'd**(16) 16:18 35:18 48:23 62:22 80:5 98:6 104:10 105:22 161:5 161:17 162:9 171:1 171:10 304:6 306:6 307:7

**you'll**(6) 94:4 105:12 105:15 159:9 180:19 181:19

**you're**(62) 11:21 12:19 12:21 15:20 17:6 21:23 23:12 24:25 25:13 25:14 33:3 38:19 38:25 40:1 43:24 44:14 56:20 58:6 58:16 61:14 67:16 75:13 83:21 106:16 129:9 140:3 142:12 160:17 164:1 164:18 165:6 185:6 197:9 197:14 203:5 203:7 203:15 207:3 209:1 209:4 209:17 209:18 225:23 226:5 230:6 235:10 235:12 238:23 238:24 265:16 266:1 266:21 267:5 267:6 267:11 267:11 267:12 290:22 296:5 298:5 306:23 307:1

**you've**(40) 28:22 32:10 33:5 45:11 57:2 72:13 77:25 78:1 89:17 108:20 109:18 120:13 133:17 133:21 134:20 135:8 135:16 136:16 137:4 137:10 137:14 137:15 142:22 144:25 145:14 159:25 168:6 194:3 195:17 197:10 201:2 201:3 203:7 215:25 222:1 230:4 232:1 232:7 245:13 302:2

**zenksy**(6) 184:2 187:16 195:2 198:8 275:20 278:1

**zensky**(96) 4:16 11:22 19:5 21:25 22:6 43:1 43:13 43:15 43:24 44:12 45:7 46:2 46:19 47:24 49:15 74:10 74:12 74:16 74:21 74:25 75:2 76:24 77:7 81:22 84:5 84:5 85:15 85:19 96:7 114:16 128:17 162:19 162:20 162:23 163:4 163:7 163:14 163:15 163:17 163:20 163:24 164:1 164:4 164:6 167:9 167:12 172:23 174:19 179:6 179:7 179:17 179:18 179:19 179:24 180:22 181:2 181:13 182:2 183:22 184:6 184:10 187:12 187:22 188:10 190:17 191:17 191:23 194:21 195:8 195:14 196:10 199:3 199:12 210:8 212:3 213:1 218:10 220:8 231:12 247:3 249:25 250:1 252:23 252:25 253:2 265:20 275:21 277:6 277:6 277:12 292:6 304:1 304:15 305:13 309:5 309:9

**zensky's**(5) 198:13 198:19 218:3 243:10 276:16

**zero**(11) 98:4 205:5 206:17 207:1 216:2 248:9 248:10 248:10 248:14 248:23 248:24

**zeros**(1) 241:11

**zip**(1) 296:9

**zuckerman**(2) 3:24 5:10

**"almost"**(1) 231:17

**"bankruptcy"**(1) 182:15

**"because"**(1) 288:12

**"best"**(1) 262:21

**"clearly"**(1) 283:16

**"courts"**(2) 240:17 284:13

**"does"**(1) 254:5

**"entire"**(1) 215:2

**"extrinsic"**(1) 287:4

**"governing"**(1) 287:11

**"grievous"**(1) 186:18

**"have"**(1) 283:20

**"here"**(1) 186:14

**"in-circuit"**(1) 264:19

**"likely"**(1) 231:16

**"may"**(1) 231:16

**"mights"**(1) 229:23

**"might"**(1) 223:11

**"must"**(1) 15:20

**"notwithstanding"**(5) 283:3 283:12 283:13 285:4 285:7

**"pile**(2) 204:3 204:3

**"protect"**(1) 231:17

**"reliance**(1) 287:19

**"reluctant**(1) 289:12

**"stub"**(3) 261:9 261:11 261:14

**"the**(4) 23:7 251:20 253:17 255:9

**"this**(1) 192:15

**"this"**(1) 300:17

**"when**(1) 242:16