## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: October 4, 2012 at 10:00 a.m. ET**<br>**Response Deadline: September 27, 2012 at 4:00 p.m. ET** |

## DEBTORS' OBJECTION TO CLAIM NO. 3045 OF JAMES GRIFFIN PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel,

hereby file this objection (the "Objection") to that certain proof of claim filed against The

Hartford Courant Company (the "Courant") by claimant James L. Griffin, being Claim No. 3045

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

(the "Griffin Claim"), a copy of which is attached hereto as Exhibit A. This Objection is filed on the basis that the Courant has no liability for such claim, for the reasons set forth herein.

This Objection is submitted pursuant to sections 502(b) and 558 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). By this Objection, the Debtors request the entry of an order disallowing and expunging the Griffin Claim in its entirety, as indicated in further detail below. In support of the Objection, the Debtors respectfully state as follows:

## INTRODUCTION

1.      The Griffin Claim is predicated on a Complaint dated October 27, 2008 (the "Complaint") filed by James Griffin against the Courant, a subsidiary of Tribune Company ("Tribune") that publishes the Hartford Courant newspaper, in the Hartford Superior Court, State of Connecticut. A copy of the Complaint was not attached to the Griffin Claim but is attached hereto as Exhibit B. The Griffin Claim appears to demand damages of $100,000 based on the Courant's publication of six (6) articles and editorials (the "Articles") regarding an October 4, 2006 letter written by Mr. Griffin (the "Griffin Letter") to the National Park Service ("Park Service") regarding the designation of the Colt armory building in Hartford, Connecticut as a National Historic Landmark. Copies of the articles on which the Complaint is based are attached hereto as Exhibit C. Although the articles and editorials were based on interviews and commentaries of public officials and private citizens, the Complaint asserts that the articles invaded Mr. Griffin's privacy. That assertion is not only unsupported in fact and unaccompanied by any legal basis in the Complaint or the Griffin Claim, but is demonstrably incorrect under Connecticut law, as described herein. The Debtors accordingly request that this Court disallow

and expunge the Griffin Claim from the claims register to reflect that such claim has no cognizable basis on which to be asserted against the Courant.

## STATUS OF THE CASE AND JURISDICTION

2.    On December 8, 2008 (the "Petition Date"), Tribune and certain of its subsidiaries, including the Courant, each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 110 entities.

3.    The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). (Docket Nos. 43, 2333.)

4.    The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Committee").

6.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

**FACTUAL BACKGROUND CONCERNING THE GRIFFIN CLAIM**

7.      The Griffin Claim was received on May 22, 2009 and recorded as Claim

No. 3045 on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy

Solutions, LLC, the agent retained by the Debtors to assist with claims processing in these

chapter 11 cases (the "Claims Agent").

8.      The Griffin Claim asserts neither facts nor arguments in support of the

claim, and states as its sole basis "personal injury CT Docket HHD-CV-08-5010232-S." (See

Exhibit A.) Based on this statement, the Debtors have determined that the basis of the Griffin

Claim is set forth in the Complaint, which commenced a prepetition cause of action pending in

Hartford Superior Court, State of Connecticut, styled James L. Griffin vs. The Hartford Courant,

Case No. HHD-CV-08-5010232-S.  (See Exhibit B.)  Paragraph Nine of the Complaint alleges

that the Articles, which were published by the Courant from October 13, 2006 to November 19,

2006, form the basis for an invasion of privacy claim.

9.      Those Articles concerned the role that the Griffin Letter may have played

in the Park Service advisory board's decision to reject the designation of the Colt armory

building as a National Historic Landmark, which was sought by the building's owner and had

been recommended by the Park Service staff.  The Debtors understand that Mr. Griffin operated

a nonprofit organization dedicated to constructing a museum inside the Colt armory, which

conflicted with the owner's development plans.  Mr. Griffin apparently sent the Griffin Letter to

the Park Service to urge the Park Service's advisory board to reject the designation, which the

Park Service advisory board ultimately did.  An investigation by the Courant revealed certain

inconsistencies in the Griffin Letter, which it brought to light in the Articles.  Specifically, the

Griffin Letter was purportedly signed by Anthony Autorino, a prominent Hartford businessman,

ostensibly in his  capacity as the chairman of the board of Mr. Griffin's nonprofit organization.

In an interview with the Courant, Mr. Autorino stated that he was not in fact the chairman of the nonprofit, did not sign the Griffin Letter, and did not sanction its content. Mr. Griffin acknowledged in an interview with the Courant that he signed the Griffin Letter on Mr. Autorino's behalf and "had signed for [him] hundreds of times letters that have gone out for us." (See Exhibit C-1, Special Status at Colt Denied; Fake Signature on Letter of Protest Draws Anger.) The Courant also contacted individuals who were named in the Griffin Letter as being supporters of Mr. Griffin's agenda, who disclaimed such support. (See Exhibit C-3, Big Guns Must Unite: Time for a Full Colt Press; Exhibit C-6, Give Colt Factory A Reprieve.)

10.    The Complaint takes issue with several statements made in the Articles regarding Mr. Griffin and the Griffin Letter. These quotes are set forth in Paragraphs Three through Eight of the Complaint. (See Exhibit B, Complaint at ¶¶ 3- 8.) By way of example, the Complaint alleges that the Articles "falsely and maliciously" implied that Mr. Griffin was a "thief", was guilty of "fraud", "illegality", and "deception", "is violating state law concerning the governance of non-stock corporations, fundraising and charitable activities", and "misrepresented his authority" in connection with the Griffin Letter. (Id.)

11.    The Griffin Claim is asserted against the Courant in the amount of $100,000.00. (See Exhibit A.) The Griffin Claim asserts neither facts nor arguments in support of the amount sought by Mr. Griffin. (Id.) The Complaint does not make a specific monetary demand, but requests "compensatory and punitive damages." (See Exhibit B, Complaint at p. 3.) Prior to the Petition Date, the Courant had not filed an answer or other dispositive pleading in respect of the Complaint, and the matter is presently stayed pursuant to 11 U.S.C. § 362(a).

## RELIEF REQUESTED

12.    By this Objection, the Debtors seek entry of an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003 and 3007, disallowing

5

and expunging the Griffin Claim in its entirety on the basis that the Griffin Claim fails to state a

claim for which relief can be granted under applicable non-bankruptcy law.[3]  The Debtors also

seek an order authorizing the Claims Agent to expunge the Griffin Claim from the Claims

Register so that the Claims Register accurately reflects the claims outstanding against the

Debtors' estates.

## APPLICABLE LAW

13.    This Objection is based on section 502(b)(1) of the Bankruptcy Code,

which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a
> hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the
> petition, and shall allow such claim in such amount, except to the
> extent that—
> > (1)    such claim is unenforceable against the debtor and
> > property of the debtor, under any agreement or applicable
> > law for a reason other than because such claim is
> > contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).  Section 502(b)(1) recognizes the settled principle that "[c]reditors'

entitlements in bankruptcy arise in the first instance from the underlying substantive law creating

the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy

Code." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450-51 (2007)

(citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)).  A claim against the bankruptcy

estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be

enforceable against the debtor outside of bankruptcy." In re Combustion Eng'g, Inc., 391 F.3d

190, 245 (3d Cir. 2004).  In proceedings to determine whether a claim is enforceable against the

estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any

---

[3] Although this Objection should be sustained on the grounds that the Griffin Claim fails to state a claim upon which relief can be granted, the Debtors reserve the right to object to the Griffin Claim on any other applicable grounds.

entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other

personal defenses" pursuant to section 558 of the Bankruptcy Code. See 11 U.S.C. § 558. Here,

making all reasonable inferences in favor of Mr. Griffin, and taking full account of the

allegations set forth in the Complaint and the statements made in the Articles, there is no

actionable "right to payment" that could be asserted against the Courant based on the Griffin

Claim or the underlying Complaint, for the reasons set forth below.

A.    **Elements Of An Invasion Of Privacy By False Light Claim**

14.    Mr. Griffin first alleges in the Complaint that the Courant invaded his

privacy by portraying him in a false light through the statements set forth in Paragraphs Three

through Eight of the Complaint. (See Exhibit B, Complaint at ¶ 9.) The Connecticut Supreme

Court first recognized the tort of invasion of privacy by false light in Goodrich v. Waterbury

Republican-American, Inc., 188 Conn. 107 (1982). The court in Goodrich affirmed the

judgment of the Connecticut Superior Court, which had granted the defendant newspaper's

motion for a directed verdict in an action by the plaintiff developer to recover damages for

allegedly libelous statements made about him and his shopping center that were printed in the

Waterbury Republican-American newspaper. Id. at 134. Under Goodrich, to establish invasion

of privacy by false light, a plaintiff must show "(a) the false light in which the other was placed

would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in

reckless disregard as to the falsity of the publicized matter and the false light in which the other

would be placed." Id. at 132; see also Jonap v. Silver, 1 Conn. App. 550, 557-558 (Conn. App.

Ct. 1984); Honan v. Dimyan, 52 Conn. App. 123, 132-133 (Conn. App. Ct. 1999); Restatement

(Second) of Torts § 652E. The court in Goodrich further explained that the "essence of a false

light privacy claim is that the matter published concerning the plaintiff (1) is not true; and (2) is

such a major misrepresentation of his character, history, activities or beliefs that serious offense

7

may reasonably be expected to be taken by a reasonable man in his position." <u>Goodrich</u>, 188

Conn. at 132; <u>see also</u> Restatement (Second) of Torts § 652E, cmt. a ("it is essential to the rule

stated in this Section that the matter published concerning the plaintiff is not true").

       15.    In <u>Jonap v. Silver</u>, the Connecticut Superior Court stated that the

published information must be of such a major misrepresentation of the plaintiff's character,

history, activities, or beliefs that serious offense may reasonably be expected to be taken by a

reasonable man in the plaintiff's position. <u>Jonap</u>, 1 Conn. App. at 557-558. Whether a plaintiff's

complaint alleges sufficient facts to rise to the level of "highly offensive to a reasonable person"

can be determined by the court as a matter of law. <u>See, e.g.</u>, <u>Bennett v. Lindsay</u>, No. 389401,

1999 Conn. Super. LEXIS 1835, *13 (Conn. Super. Ct. July 6, 1999) (Levin, J.) (defendant's

motion for summary judgment on plaintiff's claim for invasion of privacy granted because as a

matter of law the statements on which plaintiff predicated his action were not highly

objectionable); <u>Southern New England Telephone Co. v. F. Woodward Lewis, Jr., P.C.</u>, No.

CV98-0408723S, 2003 Conn. Super. LEXIS, *29 (Conn. Super. Ct. February 18, 2003)

(Robinson-Thomas, J.) (same).

       16.    In <u>Herring v. Signs</u>, No. CV99-0427523, 2000 Conn. Super. LEXIS 285,

*4-5 (Conn. Super. Ct. Feb. 9, 2000) (Alander, J.), the Connecticut Superior court stated that

"the standard governing the tort of false light invasion of privacy is similar to the standard

governing the tort of defamation concerning a public official or public figure: that the publisher

of the false statement knew that the statement was false or acted in reckless disregard of the

falsity of the statement." <u>Id.</u> at *4. A finding of reckless disregard requires "sufficient evidence

to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his

publication." <u>Id.</u> (citing <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731, 20 L. Ed. 2d 262, 88 S. Ct.

1323 (1968)). "Reckless disregard is said to exist…when there is a high degree of awareness of probable falseness of the statement, or there are serious doubts as to its truth." Id. at *5. Consequently, an insufficient attempt to determine the truth of a matter prior to publishing was not dispositive of liability. Id. at *4-5 (citing Woodcock v. Journal Publishing Co., 230 Conn. 525 (1994)).

17.    Additionally, as the name suggests, a cause of action for false light *invasion of privacy* protects an individual's right to be let alone. Thus, to state a cause of action for false light invasion of privacy, the publicity that places a person in a false light in the public eye must relate to the plaintiff's private life. In essence, a plaintiff must have a reasonable expectation of privacy or a legitimate privacy interest for the claim to stand. A finding that the publicity related to a matter of legitimate public concern is fatal to any claim. See, e.g., 62A Am. Jur 2d. Privacy § 126 (1990) ("In order to be actionable, an action for false light must involve the private affairs of the subject, and cannot relate to any matter which is inherently 'public' or 'of legitimate interest to the public.'"); Sturgeon v. Retherford Publications, Inc., 987 P.2d 1218, 1227 (Okla. App. 1999) (in a false light invasion of privacy case, "[t]he disclosure must be a public disclosure, and the facts must be private and of no legitimate public concern"); Cox Communications, Inc. v. Lowe, 328 S.E.2d 384, 386 (Ga. App. 1985) (rejecting false light claim because it was "based upon [defendant's] publication of [plaintiff's] likeness in the course of a news report about a subject of legitimate public interest").

**B.    First Amendment Considerations Mandate Heightened Scrutiny Of Invasion Of Privacy By False Light Actions Against Newspapers**

18.    In Goodrich, the court held that the plaintiff developer's claim for false light invasion of privacy was defeated because to allow recovery upon such a claim would violate the defendant newspaper's First Amendment rights, since "[t]he choice of material to go

into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials -- whether fair or unfair -- constitute the exercise of editorial control and judgment." Goodrich, 188 Conn. at 132.  The court in Goodrich further held that "[u]nder the first amendment, a media defendant can be liable for a false light invasion of privacy only where it publishes highly offensive material without regard to its falsity, and to the false impression relayed to the public.  As long as the matter published is substantially true, [a media] defendant [i]s constitutionally protected from liability for a false light invasion of privacy, regardless of its decision to omit facts that may place [a] plaintiff under less harsh public scrutiny." Id. at 133.

C.    **Failure To Plead Essential Elements Of False Light Claim Will Result In Dismissal Of Complaint**

19.    Courts applying the principles outlined in Goodrich dismiss complaints for invasion of privacy by false light when they fail to plead the essential elements.  See, e.g., Brooks v. New Mass. Media, Inc., No. CV92 029 67 36, 1993 Conn. Super. LEXIS 840, *11 (Conn. Super. Ct. Apr. 2, 1993) (Leheny, J.) (striking plaintiffs' claim for invasion of privacy by false light for their failure to allege the "essential element" that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other party would be placed).[4]  In Herring, the court dismissed the plaintiff's invasion of privacy false light claim because the plaintiff failed to allege any facts that showed that the defendant knew that the published material concerning the plaintiff was false or that it published the material with reckless disregard for its falsity.  Herring, Conn. Super. LEXIS 285, *4-5. Moreover, there was no factual allegation in Herring that the defendant entertained any serious

---

[4] New Mass. Media, Inc. is also a Debtor in these chapter 11 cases.

46429/0001-8794031v1

doubts as to the truth of the publication or had any reason to believe that the material was false in any respect. Id.

20.     Under Connecticut law, a motion to strike a complaint similarly does not admit legal conclusions and "a motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novmetrix Medical Sys., Inc. v. BOC Group, Inc., 224 Conn. 210, 215 (1992).

**D.     Neither The Griffin Claim Nor The Complaint Alleges The Essential Elements Of An Invasion Of Privacy By False Light Claim**

21.     The Complaint on which the Griffin Claim is based cannot give rise to a cognizable claim for invasion of privacy by false light.  As an initial matter, a claim for invasion of privacy by false light must be predicated on a false statement. Goodrich, 188 Conn. at 132. However, the complained-of statements set forth in the Complaint were either true, were the accurately-reported statements of third parties, or were statements of opinion.  None of the foregoing are actionable as a matter of law, and for this reason the Complaint fails to state a claim for which relief can be granted.

22.     Even if the Complaint's allegations that the Courant published false statements were assumed to be true for the sake of argument, the Complaint is still insufficient to state a cause of action for invasion of privacy.  Mr. Griffin does not allege in the Complaint any facts to support the allegation that the Courant (i) knew that the alleged false statements were false or (ii) that it acted with reckless disregard for the alleged falsity of the statements or the alleged false light in which Mr. Griffin was cast (the "actual malice" standard), nor does Mr. Griffin allege any facts to support the conclusion that the published statements would be highly offensive to a reasonable person.

46429/0001-8794031v1

23.    Instead, Mr. Griffin merely alleges a "formulaic recitation of the elements" of a cause of action.  (See Exhibit B, Complaint at ¶ 9, which states in full: "In the manner described above in Paragraphs 3 though 8, the defendant knowingly, unreasonably, maliciously and in reckless disregard of the falsity of its implications and allegations, invaded the plaintiff's privacy by placing him before the general public in a false light in a manner that would be highly offensive to a reasonable person.")  These conclusory allegations are not entitled to be assumed true without supporting allegations, of which there are none in this case. Ashcroft v. Iqbal, 556 U.S. 662 (2009) ("These bare assertions [of knowledge and other conduct], much like the pleading of conspiracy in Twombly, amount to nothing more than a "formulaic recitation of the elements" of [the claim].").  Because the allegations contained in the Complaint are legally insufficient to support a cause of action for invasion of privacy by false light under Connecticut law, the cause of action must be dismissed and the Griffin Claim must be disallowed.[5]

### i.    *The Articles Do Not Contain False Statements And Are Therefore Not Actionable As A Matter Of Law*

24.    The Complaint alleges in a conclusory manner that the Courant made statements that "falsely implied" that Mr. Griffin had engaged in wrongful conduct, "falsely described" Mr. Griffin and/or his conduct, and/or "falsely accused" Mr. Griffin of wrongful conduct.  (See Exhibit B, Complaint at ¶¶ 3-8.)[6]  However, the statements made in the Articles concerning Mr. Griffin's fraud, deception, and misrepresentation with respect to the Griffin

---

[5] Given the procedural posture in the underlying state court action, where no answer or dispositive pleading has yet been filed, this Court is easily as well-situated as the Connecticut state court to make a determination that the Griffin Claim must be dismissed on this basis.

[6] The Courant has merits-based factual and legal defenses to each and every one of the allegations regarding the statements made in the Articles that are set forth in Paragraphs Three through Eight of the Complaint.  The examples set forth in this Objection are intended to be illustrative, in support of the Objection that the Griffin Claim and the Complaint fail to state a cause of action against the Courant.  The Courant reserves the right to raise and assert any and all defenses that it has to the specific allegations in the Complaint.

Letter are demonstrably true, insofar as Mr. Griffin signed Mr. Autorino's name on behalf Mr. Griffin's nonprofit, without his knowledge or consent, and misrepresented that Mr. Autorino was the chairman of the nonprofit, which Mr. Autorino denied in an interview with the Courant.  In fact, the signature on the Griffin Letter prompted Connecticut's Attorney General to initiate an investigation.

       25.     The Complaint also alleges in numerous instances that the Courant "falsely and maliciously" accused Mr. Griffin of "illegality."  (See Exhibit B, Complaint at ¶¶ 6, 7.)  That complained-of statement was a direct quotation of a letter from the Connecticut Attorney General to the National Park Service requesting reconsideration of the rejection of the National Historic Landmark designation for the Colt armory building, on the grounds that the decision could have been "inadvertently tainted by illegality."  (See Exhibit C-4, Blumenthal Seeks Colt Action; Wants Agency to Reconsider Denial of Landmark Status for Complex.)  The statement concerning potential "illegality" was made by a public official in his official capacity in a letter to a Federal agency, and cannot be attributed to the Courant.  Moreover, the Complaint has not, and cannot, allege that the Attorney General's statement was inaccurately quoted by the Courant.  Similarly, the Complaint alleges that the Courant "falsely and maliciously implied that [Griffin] 'is violating state law concerning the governance of non-stock corporations, fundraising, and charitable activities'."  (See Exhibit B, Complaint at ¶¶ 6, 7.)  Again, the complained-of statement is an accurate description of the scope of the Connecticut Attorney General's investigation into Mr. Griffin, and cannot be attributed to the Courant.

       26.     Statements in the Courant's Articles to the effect that Mr. Griffin "played spoiler" in the Park Service proceedings, is involved in "fantasies", created a "smoke screen", or

13

should "properly" be investigated by the Attorney General were statements of opinion, not fact, that are not actionable and are protected by the First Amendment.

### ii.    The Complaint Fails To Satisfy The "Actual Malice" Element That The Courant Acted With Reckless Disregard

27.    Mr. Griffin's failure to allege facts that support the allegation that the Courant had knowledge of or acted in reckless disregard as to the alleged falsity of the publicized matter and the alleged false light in which Mr. Griffin would be placed—the "actual malice" element—is fatal to his claim.  Mr. Griffin has likewise failed to allege any facts that the Courant "entertained serious doubts as to the truth of [its] publication." Herring, 2000 Conn. Super. LEXIS 285 at *4-5.

### iii.    The Complaint Fails To Allege Facts To Support The Allegation That The Published Statements Would Be Highly Offensive To A Reasonable Person

28.    The Restatement (Second) of Torts defines a communication as highly offensive to a reasonable person "when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." Restatement (Second) of Torts § 625E cmt. c.  This element of a false light claim is highly subjective, in that the Court must decide whether the alleged falsehood qualifies as "highly offensive."[7]  In this case, there has been no falsehood or misrepresentation by the

---

[7] Many courts and scholars are highly critical of false light claims because unlike defamation law, which protects reputation (by premising liability on the publication of false, defamatory speech), the interest protected by false light is hard to pin down.  For example, "[s]cholars writing on false light variously describe the protected interest as 'peace of mind,' 'injury to the inner person,' 'freedom from scorn and ridicule, freedom from embarrassment, humiliation and harassment, freedom from personal outrage, freedom from injury to feelings, freedom from mental anguish, freedom from contempt and disgrace, and the right to be let alone.'" Denver Publishing Co. v. Bueno, 54 P. 3d 893, 901 (Col. 2002) (en banc) (quoting Nathan E. Ray, Let There be False Light:  Resisting the Growing Trend Against an Important Tort, 84 Minn. L. Rev. 713, 726 (2000)).  Or, as one court expressed it, "[f]alse light may be brought against any untruth to which the subject of the speech takes umbrage." Cain v. Hearst Corp., 878 S.W.2d 577, 583 (Tx. 1994).  See also Baggett v. Bullitt, 377 U.S. 360 (1964) ("A law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process.").  In this case, however, where Mr. Griffin has neither identified a particular false statement nor asserted facts to support the conclusion that such a statement would be considered highly offensive to

14

Courant as to Mr. Griffin's character, history, activities, or beliefs, much less any that could be

considered "highly offensive" to a reasonable person.  Moreover, there are no facts alleged in the

Complaint to support Mr. Griffin's bald recitation of that element of the cause of action.  <u>See</u>

<u>Southern New England Telephone Co.</u>, 2003 Conn. Super. LEXIS at *29 ("The complaint must

allege facts demonstrating an intrusion upon a privacy interest that is highly offensive to a

reasonable person.").  For example, as described above, the Courant did not "accuse" Mr. Griffin

of "illegality"; the Courant accurately quoted a letter written by the Connecticut Attorney

General to the Park Service that stated that the Park Service's process might have been

"inadvertently tainted by illegality."  Mr. Griffin may disagree with and be offended by the

*Attorney General's* conclusions in this regard, but there is no basis for a cause of action against

the Courant for the accurate publication of the Attorney General's statements, and there is

nothing to suggest that Mr. Griffin would be justified in the eyes of the community in feeling

seriously offended and aggrieved by such publicity.

      E.      <u>**There is No Basis in the Griffin Claim to Support Damages**</u>

      29.      Finally, neither the Griffin Claim nor the Complaint set forth any facts

regarding the harm allegedly suffered by Mr. Griffin resulting from the Courant's publications,

apart from the conclusory statement that "the plaintiff has suffered injury to his reputation,

economic losses and emotional distress."  (<u>See</u> <u>Exhibit B</u>, Complaint at ¶ 10.)  There is simply

no basis on which to award Mr. Griffin the $100,000 he seeks in the Griffin Claim for an

invasion of privacy, because no such invasion took place.  Mr. Griffin had no reasonable

expectation of privacy or a legitimate privacy interest in the Griffin Letter or his actions before

the Park Service, all of which were a matter of public record and of substantial interest to the

---

a reasonable person, Mr. Griffin's failure to satisfy this standard is easily determined.

46429/0001-8794031v1

people of Hartford insofar as they related to the proposed development of the Colt armory

building.  The Articles (which included news articles and editorials) reported on Mr. Griffin's

public business activities, and not his personal or private life.  Moreover, the award of any

damages to Mr. Griffin on account of the Griffin Claim and the Complaint would violate the

Courant's First Amendment rights, because the Courant's choice of material to go into its

newspaper, and the decisions made as to the content of the paper and treatment of public issues,

such as the Courant's coverage regarding Mr. Griffin and the outcome of the Park Service's

deliberations concerning the Colt armory buidling, constitute the exercise of editorial control and

judgment.  See Goodrich, 188 Conn. at 132.

       30.     Accordingly, the Griffin Claim is not an allowable claim and is not

entitled to any distribution in these chapter 11 cases.  The Debtors request that the Griffin Claim

be disallowed in its entirety and expunged.  The Debtors also request that the Court authorize the

Claims Agent to expunge the Griffin Claim from the Claims Register as sought by this Objection

so that the Claims Register reflects more accurately the claims asserted and outstanding against

the Debtors.

## NOTICE

       31.     Notice of this Objection has been provided to: (i) the Office of the United

States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for

Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors'

postpetition financing facility; (v) James L. Griffin through his attorney John R. Williams; and

(vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local

Rule 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no

other or further notice is necessary.

46429/0001-8794031v1

## NO PRIOR REQUEST

32.     No previous application for the relief sought herein has been made to this

Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that the Court enter an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code and

Bankruptcy Rules 3001, 3003, and 3007, (i) disallowing in full and expunging the Griffin Claim;

(ii) directing the Claims Agent to expunge the Griffin Claim from the Claims Register; and (iii)

granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
          August 23, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois  60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

46429/0001-8794031v1