## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x  Chapter 11

In re:                                                  :

                                      :  Case No. 08-13141 (KJC)

TRIBUNE COMPANY, et al.,                                :

                                      :  Jointly Administered

           Debtors.                                  :

                                        :  Objections Due:  September 13, 2012
                                        :  @ 4:00 p.m. (ET)

------------------------------------------------------- x  Hearing Date:  N/A

## FORTY-THIRD MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD <u>JULY 1, 2012 THROUGH JULY 31, 2012</u>

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, <u>nunc pro tunc</u> to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | July 1, 2012 through July 31, 2012 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $242,952.80   (80% of $303,691.00) |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $   2,495.23 |

This is a(n):    <u>  x  </u>Monthly        _____  Interim        _____  Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved* | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
|---|---|---|---|---|---|---|
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |
| 8/25/2010 | 5502 | 7/1/10 - 7/31/10 | $1,442,097.00 | $22,233.25 | $1,153,677.60 | $22,233.25 |
| 9/30/2010 | 5849 | 8/1/10 - 8/31/10 | $1,612,125.00 | $121,365.68 | $1,289,700.00 | $121,365.68 |
| 10/25/2010 | 6112 | 9/1/10 - 9/30/10 | $1,519,380.00 | $16,739.39 | $1,215,504.00 | $16,739.39 |
| 11/30/2010 | 6671 | 10/1/10 - 10/30/10 | $1,867,308.75 | $109,128.64 | $1,493,847.00 | $109,128.64 |
| 12/28/2010 | 7332 | 11/1/10 - 11/30/10 | $1,818,619.00 | $296,306.43 | $1,454,895.20 | $296,306.43 |
| 1/28/2011 | 7654 | 12/1/10 - 12/31/10 | $1,337,478.25 | $99,960.19 | $1,069,982.60 | $99,960.19 |
| 2/28/2011 | 8200 | 1/1/11 - 1/31/11 | $2,743,375.25 | $371,451.84 | $2,194,700.20 | $371,451.84 |
| 4/11/2011 | 8615 | 2/1/11 - 2/28/11 | $2,888,765.25 | $162,972.56 | $2,311,012.20 | $162,972.56 |
| 5/5/2011 | 8833 | 3/1/11 - 3/31/11 | $2,499,191.25 | $205,378.89 | $1,999,353.00 | $205,378.89 |
| 6/1/2011 | 9030 | 4/1/11 - 4/30/11 | $1,258,414.50 | $182,352.51 | $1,006,731.60 | $182,352.51 |
| 6/29/2011 | 9381 | 5/1/11 - 5/31/11 | $965,916.25 | $85,787.61 | $772,733.00 | $85,787.61 |
| 7/28/2011 | 9561 | 6/1/11 - 6/30/11 | $728,870.75 | $64,140.29 | $583,096.60 | $64,140.29 |
| 8/25/2011 | 9701 | 7/1/11 - 7/31/11 | $456,759.50 | $60,498.38 | $365,407.60 | $60,498.38 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/28/2011 | 9840 | 8/1/11 - 8/31/11 | $616,725.50 | $85,166.86 | $493,380.40 | $85,166.86 |
| 10/25/11 | 10064 | 9/1/11 - 9/30/11 | $450,088.50 | $56,800.73 | $360,070.80 | $56,800.73 |
| 11/23/11 | 10291 | 10/1/11 - 10/31/11 | $402,271.75 | $62,868.51 | $321,774.20 | $62,868.51 |
| 12/27/11 | 10511 | 11/1/11 - 11/30/11 | $676,518.00 | $34,425.04 | $541,214.40 | $34,425.04 |
| 1/31/12 | 10772 | 12/1/11 - 12/31/11 | $452,819.75 | $38,756.34 | $362,255.80 | $38,756.34 |
| 2/27/12 | 11023 | 1/1/12 - 1/31/12 | $547,104.00 | $9,615.03 | $437,683.20 | $9,615.03 |
| 3/27/12 | 11240 | 2/1/12 - 2/29/12 | $644,199.25 | $9,936.28 | $515,420.40 | $9,936.28 |
| 4/26/12 | 11476 | 3/1/12 - 3/31/12 | $592,148.75 | $28,148.76 | $473,719.00 | $28,148.76 |
| 5/25/12 | 11695 | 4/1/12 - 4/30/12 | $315,426.75 | $12,357.38 | $252,341.40 | $12,357.38 |
| 6/26/12 | 11896 | 5/1/12 - 5/31/12 | $337,692.50 | $4,191.40 | $270,154.00 | $4,191.40 |
| 7/26/12 | 12106 | 6/1/12 - 6/30/12 | $414,998.50 | $11,058.19 | $331,998.80 | $11,058.19 |

*Monthly approved fees are subject to holdbacks which were to be reviewed by the Bankruptcy Court following the completion of each quarterly fee application. Such holdbacks have been reviewed and approved for payment by the Bankruptcy Court as set forth below:

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Amount Approved |
|---|---|---|---|
| 1 | December 18, 2008 through February 28, 2009 | December 14, 2009 | $326,196.76 |
| 2 | March 1, 2009 through May 31, 2009 | May 18, 2010 | 344,7890.61 |
| 3 | June 1, 2009 through August 31, 2009 | October 22, 2010 | $707,644.89 |
| 4 | September 1, 2009 through November 30, 2009 | August 24, 2011 | $883,274.78 |
| 5 | December 1, 2009 through February 28, 2010 | October 19, 2011 | $966,056.61 |
| 6 | March 1, 2010 through May 31, 2010 | December 12, 2011 | $737,989.71 |
| 7 | June 1, 2010 through August 31, 2010 | February 15, 2012 | $846,680.80 |
| 8 | September 1, 2010 through November 30, 2010 | April 24, 2012 | $1,024,183.85 |
| 9 | December 1, 2010 through February 28, 2011 | July 11, 2012 | $1,376,206.20 |
| 10 | March 1, 2011 through May 31, 2011 | July 11, 2012 | $915,810.94 |

# TRIBUNE COMPANY, et al.

## SUMMARY OF HOURS

### July 1, 2012 through July 31, 2012

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|------|-----------|-------------------|------------------|-------------|-------|
| **Partner*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | $995 | 25.70 | 25,571.50 |
| Richard M. Leder (1998) | Tax | 1962 (NY) | $995 | 1.60 | 1,592.00 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 925 | 48.70 | 43,660.00 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 875 | 5.80 | 5,075.00 |
| Sey-Hyo Lee (2000) | Corporate | 1992 (NY) 1994 (DC) | 795 | 1.20 | 954.00 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 745 | 44.90 | 33,450.50 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 745 | 22.00 | 16,390.00 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 695 | 38.80 | 26,966.00 |
| Christy L. Rivera | Bankruptcy and Financial Restructuring | 2002 (NY) | 665 | 1.40 | 931.00 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 645 | 27.10 | 17,479.50 |
| | | | | | |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Associate:** | | | | | |
| Robert M. Kirby | Litigation | 2008 (NY) | 595 | 20.10 | 11,959.50 |
| Caroline Pignatelli | Litigation | 2007 (NJ) 2008 (NY) | 595 | 5.50 | 3,272.50 |
| Kimberly Zafran | Litigation | 2009 (NY) | 565 | 64.90 | 36,668.50 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 64.00 | 31,088.00 |
| Andrea Voelker | Litigation | 2010 (NY) | 495 | 6.90 | 3,415.50 |
| Pooja Asnani | Litigation | 2011 (NY) | 435 | 6.50 | 2,827.50 |
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 41.70 | 18,139.50 |
| Nicholas Stebinger | Litigation | 2011 (NY) | 435 | 6.30 | 2,740.50 |
| Erin Shinneman | Litigation | 2012 (NY) | 395 | 10.80 | 4,266.00 |
| | | | | | |
| **Law Clerks:** | | | | | |
| Sara Nichols | n/a | n/a | 285 | 10.40 | 2,964.00 |
| | | | | | |
| **Paraprofessional:** | | | | | |
| Lori Moloney | Litigation | n/a | 330 | 14.20 | 4,686.00 |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 295 | 17.00 | 5,015.00 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 295 | 16.20 | 4,779.00 |
| | | | | | |
| **TOTAL:** | | | | 501.70 | $303,691.00 |

BLENDED RATE:      $609.67

--------

\* Includes year elected Partner at firm or joined firm as Partner.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------  x    Chapter 11
In re:                                             :
                                                   :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                           :
                                                   :    Jointly Administered
                       Debtors.                    :
                                                   :    Objections Due: September 13, 2012
                                                   :    @ 4:00 p.m.(ET)
-------------------------------------------------  x    Hearing Date:  N/A
```

**FORTY-THIRD MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP,
AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
JULY 1, 2012 THROUGH JULY 31, 2012**

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the

"Debtors"), hereby submits this Application (the "Application") for approval and allowance of

compensation for services rendered in the amount of $303,691.00 (80% of which equals

$242,952.80) and reimbursement of expenses incurred in the amount of $2,495.23 during the

period commencing July 1, 2012 through and including July 31, 2012 (the "Application Period").

This Application is submitted pursuant to sections 330 and 331 of title 11 of the United States

Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§

105(a) and 331 (the "Compensation Order").  In support of the Application, Chadbourne

respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for relief requested herein are Sections 105(a), 330, 331 and 1103(a) of the Bankruptcy Code.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

4.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On December 18, 2009, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

6.      On February 20, 2009, the Bankruptcy Court authorized the employment and retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.      On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth N. Klee, Esquire as Examiner in these Chapter 11 cases.

8.    Plan confirmation hearings for both the DCL Plan and the Noteholder Plan[1] commenced on March 7, 2011 and continued daily through March 18, 2011.  The next phase of the confirmation hearings -- which included rebuttal witnesses, non-proponent objections to the DCL and the Noteholder Plans and certain legal arguments -- resumed on April 12, 2011 and concluded on April 14, 2011.  Closing confirmation arguments were held on June 27, 2011.

9.    On October 31, 2011, the Court entered its Opinion on Confirmation denying both the DCL Plan and the Noteholder Plan.  The Opinion noted, however, that should the proponents of both the DCL Plan and the Noteholder Plan seek to address the flaws identified by the Court in the Opinion and resubmit otherwise confirmable plans, the Court would be required to select one plan to confirm.  See Section 1129(c).  The Court stated that, given those options, it would select the DCL Plan.

10.    On April 17, 2012, the proponents of the DCL Plan filed their Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (the "Fourth Amended DCL Plan").  A hearing on confirmation of the Fourth Amended DCL Plan was held on June 7, 2012 and concluded on June 8, 2012.

---

[1]    The DCL Plan is supported by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, Angelo, Gordon & Co., and JPMorgan Chase Bank (the "DCL Plan Proponents").  The Noteholder Plan is supported by Aurelius Capital Management, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York and Wilmington Trust Company (the "Noteholder Plan Proponents").

11.    On July 23, 2012, the Court entered the Order Confirming Fourth Amended Joint

Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the

Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo

Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.

## COMPENSATION PAID AND ITS SOURCES

12.    All services for which compensation is requested by Chadbourne were performed

for or on behalf of the Committee.

13.    During the Application Period, Chadbourne has received no payment and no

promise of payment from any source for services rendered or to be rendered in any capacity

whatsoever in connection with the matters covered by this Application.  There is no agreement

or understanding between Chadbourne and any other person, other than members of the firm,

for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

14.    The fee statement for the Application Period is attached hereto as Exhibit A.  This

statement contains daily time logs describing the time spent by each attorney and

paraprofessional for this period.  To the best of Chadbourne's knowledge, this Application

complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the

Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2

(the "Guidelines"), and the Compensation Order.

## SUMMARY OF SERVICES

15.    As set forth in the detailed statement of fees attached hereto as Exhibit A, fees

incurred by Chadbourne during the Application Period total $303,691.00.  The services

rendered by Chadbourne during the Application Period are grouped into specific project categories as set forth in Exhibit A.  The attorneys and paraprofessionals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category.

16.    The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

A.    **Bankruptcy General (Matter 002)**

Fees: $11,827.00          Total Hours:    23.80

17.    During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these Chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

18.    Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents

and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**B.**    **Committee Meetings (Matter 003)**

Fees: $11,650.00          Total Hours:    17.40

19.    Regular meetings of the Committee (the "Committee Meetings") were held during the Application Period to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to key issues.   In particular, the Committee and its professionals continued to review and address pending motions, litigation matters, and provide updates and discuss the plan confirmation process.

20.    Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' Chapter 11 cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

**C.**    **Creditor Communications (Matter 004)**

Fees: $1,264.00          Total Hours:   1.60

21.    Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

**D.**    **Business Operations (Matter 007)**

Fees:  $23,105.50          Total Hours:  35.90

22.    During the Application Period, professionals from Chadbourne's Communications Media and Technology ("CMT") Group continued their efforts in preparation for obtaining FCC approval of the Debtors' FCC exit applications.  Chadbourne's CMT attorneys performed legal research and analyzed the potential impact of the appeal process (as defined in Section K) on the exit applications.  Chadbourne's CMT attorneys prepared for and attended a meeting with the FCC staff and the Debtor's FCC counsel to update the FCC on the status of confirmation and pending appeals.

23.    In addition, Chadbourne also continued to review weekly operations and financial reports prepared by the Committee's financial advisors.

**E.**    **Claims Administration/Bar Date (Matter 009)**

     Fees:  $8,384.00                Total Hours:   16.40

     24.    During the Application Period, Chadbourne attorneys expended further time in reviewing a number of objections to claims filed by the Debtors.  Efforts included reviewing the Debtors' (i) Fifty-Fifth Omnibus (Substantive) Objection to Claims; (ii) Fifty-Sixth Omnibus (Substantive) Objection to Claims; (iii) Objection to Claim of the Department of Revenue for the State of Florida; and (iv) Objection to Claim of the New York City Department of Finance. Chadbourne attorneys preformed a review of the facts as well as the bases and processes followed by the Debtors in pursuing the objections.  Following consultation with the Committee's financial advisors regarding their analysis, Chadbourne summarized its analyses and recommendations in memoranda to the Committee.

**F.**    **Fee/Retention Applications (Matter 010)**

     Fees:   $10,765.00                Total Hours:   24.60

     25.    Chadbourne expended further time during the Application Period in compliance with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparing and filing Chadbourne's forty-second monthly fee application and fourteenth interim fee application. Further, Chadbourne reviewed and provided comments on the draft omnibus fee orders in connection with the July 11, 2012 hearing on the ninth and tenth interim fee applications.

     26.    In continuance of an ongoing process, Chadbourne also expended time on the treatment of ordinary course professionals.  These efforts included the review and analysis of

filed affidavits to ensure qualification criteria were satisfied and the monitoring of related spending and monthly fee caps.

**G.**     **Employee Issues (Matter 014)**

     Fees: $3,169.50      Total Hours:   4.70

27.     During the Application Period, Chadbourne attorneys prepared for and participated in the hearing on the motion of three former employees of the Debtors who had been identified in the Examiner's Report for an order requiring the Debtors to pay 2010 MIP awards for these employees into rabbi trusts. The former employees argued that they had "earned" the DIP awards and, therefore, should be paid the sums subject to the terms established for current employees identified in the Examiner's Report. In response, Chadbourne argued on behalf of the Committee that there was a legal distinction between paying 2010-related benefits that had not previously been Court-authorized to current employees, as they continued to provide benefits to the Debtors' estates, and former employees, who no longer provided any benefit to the Debtors' estates. The Court took the matter under advisement.

**H.**     **Travel (Matter 018)**

     Fees: $2,179.50      Total Hours:   6.20

28.     During the Application Period, Chadbourne travelled to Wilmington, Delaware to attend an omnibus hearing at the Bankruptcy Court. The hours reflect non-working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

**I.**     <u>**Review of Pre-Petition Financings (Matter 019)**</u>

      Fees:  $79,878.50          Total Hours:  151.30

29.      Pursuant to the confirmation order, to facilitate the implementation of the Fourth Amended DCL Plan, the Committee and Litigation Trustee entered into an agreement (the "Privilege Transfer Agreement") where the Committee will share with the Trustee documents and information relevant to the claims the Trustee will be pursuing (*FitzSimons* and the claims against the financial advisors), including privileged work product reflecting the Committee's assessment of the LBO transaction and the claims arising from it.  During the Application Period, Chadbourne began preparing for the process of collecting and reviewing the relevant documents and creating the necessary protocols for the task.  In addition, Chadbourne's litigation team began the review and preparation of necessary procedures to implement a document repository for collection and review of documents.  (These detailed steps and procedures are necessary because some, but not all, of the privileged documents created by the Committee are to be shared with the Litigation Trustee.)   Document review also commenced during this time period.

**J.**     <u>**Shareholder Claims (Matter 020)**</u>

      Fees:  $14,850.50          Total Hours:  24.10

30.      During the Application Period, Chadbourne attorneys continued to work with the Committee's special counsel regarding a proposed joint offer to certain parties to settle certain litigation claims.  Chadbourne reviewed and commented on special counsel's analysis regarding the proposed settlement which was presented to the Committee for its review and consideration.

In connection therewith, Chadbourne commenced polling of the individual Committee members on the proposed settlement.

31.    During this time, Sam Zell and several related parties (the "Zell Parties") served on the Committee, the Committee's special counsel and the Committee's local counsel, a motion for relief under Rule 11 of the Federal Rules of Civil Procedure (the "Motion"). The Motion claims that the Committee and its counsel have no reasonable factual or legal basis for certain of the claims in the *FitzSimons* complaint against the Zell Parties, and thus violates Rule 11 of the Federal Rules of Civil Procedure. In connection therewith, Chadbourne expended time reviewing and analyzing the Motion and participated in discussions with counsel regarding an appropriate response to the motion.

**K.    Plan Litigation (Matter 021)**

Fees:  $136,617.60        Total Hours:  195.70

32.    During the Application Period, Chadbourne attorneys continued to be engaged in advancing the Fourth Amended DCL Plan to confirmation and advising the Committee with respect to related appeals.  Chadbourne attorneys participated in frequent discussions with the Committee's co-counsel and the DCL Plan Proponents regarding related strategies.

33.    On July 11, 2012, Chadbourne participated in a hearing where Judge Carey stated his intention to enter an opinion on confirmation by the end of the week, but raised two remaining concerns with respect to the Fourth Amended DCL Plan.  Chadbourne, on behalf of the DCL Plan Proponents, provided clarification with respect to treatment of certain former employee claims, which resulted in the former employees withdrawing their plan objection. Next, at the Court's suggestion, Chadbourne conferred with Aurelius's counsel - and ultimately

11

reached a resolution - regarding whether the Litigation Trustee would be permitted to seek discovery against the Committee, its members and its professionals without their consent.

34.    On July 13, 2012, the Court rendered the Memorandum Opinion and Order Overruling Objections to Confirmation of the DCL Plan.  In his Opinion, Judge Carey overruled all unresolved objections that were argued at the confirmation hearing and stated that the Fourth Amended DCL Plan will be confirmed, subject to submission of final documents. Accordingly, Chadbourne attorneys continued to review and provide comments to the proposed confirmation order as well as further modifications to the amended plan and related documents. Chadbourne participated in numerous discussions with the DCL Plan Proponents to address unresolved issues and finalize the documents.  These discussions often included the objecting parties in an effort to reach consensual resolution prior to filing the final documents.

35.    On July 23, 2012, the Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Confirmation Order").

36.    Thereafter, Chadbourne advised the Committee that Aurelius and the Senior Indenture Trustees (Law Debenture and Deutsche Bank) filed notices of appeals to the Confirmation Order and also filed motions seeking to stay the Confirmation Order pending resolution of their appeals (the "Stay Motions").  Both Stay Motions seek stays without any requirement to post a bond.  Law Debenture and Deutsche Bank also filed papers which seek direct certification of their appeal to the Third Circuit Court of Appeals (the "Direct Appeal Motion").

37.     In response to the appellants' requests to expedite the process, the Bankruptcy Court scheduled a telephonic hearing for July 25, 2012 to address scheduling of the Stay Motions and the Direct Appeal Motion.  Chadbourne conferred with the other DCL Plan proponents who concurred that the expedited process was in the best interests of the company, the Committee and creditors.  To that end, Chadbourne worked with the DCL Plan proponents in preparation and filing of a response proposing a scheduling timeline in connection with the Stay Motions and the Direct Appeal Motion.

38.     Chadbourne participated in the July 25, 2012 telephonic hearing where the Court scheduled the hearing on the Stay Motions and the Direct Appeal Motion for August 17, 2012. Judge Carey asked the parties to submit a consensual briefing schedule leading up to the August 17th hearing on the Stay Motions and the Direct Appeal Motion as soon as possible and further requested that the parties' responses to the motions specifically address (i) whether any stay should be conditioned upon the posting a bond, and (ii) the appropriate size of such a bond. Accordingly, Chadbourne began research and analysis of issues raised by the appeals as well as the issues the Court specifically requested they address.

## ACTUAL AND NECESSARY EXPENSES

39.     A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $2,495.23 is attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page.

Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions. For purposes of these cases, the firm has reduced this charge to $1.00/per page.

40.     Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required. In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers. Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

41.     With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services. In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

42.     The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

43.     In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

44.     Attorneys and paraprofessionals of Chadbourne have expended a total of 501.70 hours in connection with the matter during the Application Period.  The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto.  These are Chadbourne's normal hourly rates for work of this character.  The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $303,691.00.

45.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

46.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period July 1, 2012 through July 31, 2012:  (a) authorizing compensation in the amount of $303,691.00 (80% of which equals $242,952.80) for professional services rendered and reimbursement of expenses incurred in connection therewith in the amount of $2,495.23 for a total of $306,186.23; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:   August 17, 2012
         New York, New York

CHADBOURNE & PARKE LLP

By: _____
     Douglas E. Deutsch
     (A Member of the Firm)

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Co-Counsel to The Official Committee of
Unsecured Tribune Company, et al.

16

## VERIFICATION

STATE OF NEW YORK      :
                                     :  ss:
COUNTY OF NEW YORK  :

Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

(a)      I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been admitted to the bar of the State of New York since 1997.

(b)      I am familiar with the work performed on behalf of the Committee by the lawyers in the firm.

(c)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

_____
Douglas E. Deutsch

Sworn to before me this
17th day of August 2012

_____
Francisco Vazquez
Notary Public, State of New York
No. 31-6013920
Qualified in New York County
Commission Expires December 27, 2014

CPAM: 4861332.3