# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE
## ELEVENTH INTERIM FEE APPLICATION OF ALIXPARTNERS, LLP

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Eleventh Interim Fee Application of AlixPartners, LLP* [Docket No. 9984] (the "**Fee Application**"). The Fee Application seeks

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

approval of fees that total $389,951.00 and reimbursement of expenses that total $2,367.63 for

the period from June 1, 2011 through August 31, 2011.    AlixPartners LLP ("**AlixPartners**")

serves as the financial advisor to the Official Committee of Unsecured Creditors (the

"**Committee**") in the above-captioned cases.

**Background**

1.    On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed

subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**") each commenced

with this Court a voluntary case under chapter 11 of the Bankruptcy Code.    Under this Court's

*Order Directing Joint Administration Chapter 11 Cases* dated December 10, 2009 [Docket

No. 43], these cases are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy

Rules.

2.    On January 16, 2009, the Committee filed the *Application of the Official*

*Committee of Unsecured Creditors of Tribune Company et al., Pursuant to 11. U.S.C. 327 and*

*1103 and Fed. R. Bankr. P. 2014, for Entry of an Order Authorizing the Employment and*

*Retention of AlixPartners, LLP, as Financial Advisor, Nunc Pro Tunc to December 19, 2008*

[Docket No. 245] (the "**Retention Application**").    By order dated February 20, 2009, this Court

approved the retention of AlixPartners [Docket No. 433] (the "**Retention Order**").

3.    AlixPartners submitted the Fee Application pursuant to the *Order Establishing*

*Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and*

*Committee Members under 11 U.S.C. §§ 105(a) and 331* [Docket No. 225] (the "**Interim**

**Compensation Order**").

## Applicable Standards

4.      In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5.      The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6.      Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the

time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F).*

7.    A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred.  A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules.  Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application.  A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8.    The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings and provided a Preliminary Report to AlixPartners for review and comment.  The firm provided a written response to the Preliminary Report.  After evaluation and consideration of the additional information provided by AlixPartners, the Fee Examiner submits this Final Report for the Court's consideration.  This Final Report is in a format designed to quantify and present factual data relevant to whether the requested fees and expenses of the applicant meet the applicable standards of section 330 of the Bankruptcy Code and Local Rule 2016-2, and will also

inform the Court of all proposed consensual resolutions of the fee and/or expense reimbursement request for the professional and the basis for such proposed consensual resolution.

## DISCUSSION OF FINDINGS

### Technical Requirements

9. **Reconciliation of Fees and Expenses.** The Fee Examiner compared the total amount of fees and expenses requested in the Fee Application ("**Fees Requested**" and "**Expenses Requested**") to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**" and "**Expenses Computed**"). The Fee Examiner identified no discrepancies between the Fees Requested and the Fees Computed, nor any discrepancies between the Expenses Requested and the Expenses Computed.

10. **Block Billing.**[2] The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*. The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[3] The Delaware Bankruptcy Court has found that time entries that generally only combine work on one issue, and a conference/communication with the client or

---

[2] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

[3] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

opposing counsel on the same issue, while technically block billing, will not be objectionable.[4] The Fee Examiner did not identify any objectionable block billing.

11.    **Time Increments.**  The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*.  The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines ¶(b)(4)(v)*.  The Fee Examiner reviewed the fee application and determined that the firm recorded time in tenths of an hour increments.

**Review of Fees**

12.    **Firm Staffing.**  The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*.  The Fee Application provided the names, positions, and hourly rates of the five AlixPartners professionals who billed to this matter, consisting of two managing directors, two directors, and one vice president.  A summary of hours and fees billed by each timekeeper is displayed in **Exhibit A**.[5]

---

[4] See *In re Worldwide Direct, Inc.*, 316 B.R. 637, 643 (Bankr. D. Del. 2004) (the court did disallow 100% of the block billed entries that combined more than one discrete task and issue from which it could not determine the amount of time that was allocated to each task).

[5] This Final Report includes exhibits that detail and support the findings discussed herein.  Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit.  The tasks included in a specific category are underlined in the fee exhibits.  For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

The firm billed a total of 656.50 hours with associated fees of $389,951.00. The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Managing Director | 21.80 | 3% | $  18,639.00 | 5% |
| Director | 632.30 | 96% | 370,136.00 | 95% |
| Vice President | 2.40 | * | 1,176.00 | * |
| TOTAL | 656.50 | 100% | $389,951.00 | 100% |

* Less than 1%

The blended hourly rate for the AlixPartners professionals is $593.98.

13.     **Hourly Rate Increases.**  AlixPartners did not increase the hourly rates of firm timekeepers during this interim period.

14.     **Timekeepers' Roles.**  A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4)*.  With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts.  On the whole, each AlixPartners timekeeper appeared to perform either core team responsibilities necessary to the engagement; or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.

15.     **Meetings, Conferences, Hearings, and Other Events.**  The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*.  While it may be appropriate to have multiple attendees at

some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions where two or more timekeepers attended the same meeting, conference, or other event. Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. The entries, totaling 20.50 hours with $12,610.50 in associated fees, were displayed in **Exhibit B** to the Preliminary Report. In each instance where multiple timekeepers attended a meeting, conference, hearing, or other event, the Fee Examiner identified the timekeeper who appeared most responsible for the matter or the particular event (*i.e.*, the individual leading rather than observing a conference), typically the most senior attendee with the highest billing rate. The potentially duplicative and unnecessary timekeepers' entries total 11.00 hours with $6,168.00 in associated fees, and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested the firm provide what the Local Rules and UST Guidelines mandate -- an explanation of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

AlixPartners responded to the Fee Examiner's request by providing a detailed explanation of the firm's staffing of the Tribune cases, the necessity of multiple timekeepers attending certain meetings and events, and the nature and purpose of various categories of meetings and calls. The firm also produced a spreadsheet of the fee entries with reference back to the firm's written explanation of the meetings. After analysis of the extensive supplemental information provided, the Fee Examiner makes no recommendation for a fee reduction. Exhibit B is omitted from this report.

16.     **Intraoffice Conferences.**    Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner reviewed the fee application and determined that the firm did not bill any fees for intraoffice conferences.

17.     **Complete and Detailed Task Descriptions.**    Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix).* The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v).* AlixPartners timekeepers sufficiently described the activities performed.

18.     **Administrative Activities.**    Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. The Fee Examiner reviewed each timekeeper's billing activities and did not identify any billing for administrative activities.

19.     **Clerical Activities.**  Clerical activities are tasks that do not require legal acumen and may be effectively performed by administrative assistants, secretaries, or support personnel.[6] The Fee Examiner reviewed each timekeeper's billing activities and did not identify any billing for clerical activities.

20.     **Travel.**  The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii)*.  The Fee Examiner verified that all non-working travel time was billed at 50% of the timekeeper's regular hourly rates.

21.     **AlixPartners Retention/Compensation.**  AlixPartners billed 45.60 hours with associated fees of $28,601.50 to prepare the firm's applications for compensation, representing approximately 7% of the total fees billed.   The fee entries describing AlixPartners' retention/compensation activities are displayed in **Exhibit C**, which is included in the Final Report for the Court's reference.

**Review of Expenses**

22.     **Itemization of Expenses.**  The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii)*.   The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all

---

[6] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable; *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates).  These overhead activities may include: mailing; photocopying; word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense. Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii).* AlixPartners provided an itemization for its expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge

23. **Local Transportation.** AlixPartners requested reimbursement of charges for local transportation totaling $22.00. The Fee Examiner requested AlixPartners provide additional detail and an explanation for the purpose of the charges, which were displayed in **Exhibit D** to the Preliminary Report. In response, the firm indicated the $22.00 charge related to overtime transportation. While the firm disagrees with the Fee Examiner, in that such overtime expenses are not compensable, AlixPartners is willing to make a voluntary expense reduction in the amount of $22.00. Exhibit D is omitted from the Final Report.

24. **In Town Meals.** AlixPartners requested reimbursement of $82.32 for in town meals. It was not possible to determine if the meals related to meetings with people outside the firm or meals solely for employees of AlixPartners. The Fee Examiner requested AlixPartners provide additional detail and an explanation for the purpose of the meal charges that were displayed in **Exhibit E** to the Preliminary Report. In response, the firm indicated the $82.32 related to in-town meals incurred by one professional. While the firm disagrees with the Fee Examiner, in that such meals are not compensable, AlixPartners is willing to make a voluntary expense reduction in the amount of $82.32. Exhibit E is omitted from the Final Report.

## CONCLUSION

The Fee Examiner submits this Final Report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $389,951.00 and reimbursement of expenses in the amount of $2,263.31 ($2,367.63 minus $104.32) for the interim period from June 1, 2011 through August 31, 2011. The findings are set forth in the summary on the following page.

**ALIXPARTNERS, LLP**

**SUMMARY OF FINDINGS**

**Eleventh Interim Fee Application (June 1, 2011 through August 31, 2011)**

**A.      Amounts Requested and Computed**

| | | |
|---|---|---|
| Fees Requested | $389,951.00 | |
| Expenses Requested | 2,367.63 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $392,318.63 |
| | | |
| Fees Computed | $389,951.00 | |
| Expenses Computed | 2,367.63 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $392,318.63 |

**B.      Recommended Fee Allowance and Expense Reimbursement**

| | | | |
|---|---|---|---|
| Fees Requested | $389,951.00 | | |
| | | | |
| RECOMMENDED FEE ALLOWANCE | | | $389,951.00 |
| | | | |
| Expenses Requested | $2,367.63 | | |
| *Agreed Reduction for Local Transportation* | | *($  22.00)* | |
| *Agreed Reduction for In Town Meals* | | *(82.32)* | |
| Subtotal | | *($104.32)* | |
| | | | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | | 2,263.31 |
| | | | |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | | $392,214.31 |

Respectfully submitted,

**STUART MAUE**

By: _____
    John F. Theil, Esq.
    3840 McKelvey Road
    St. Louis, Missouri  63044
    Telephone:  (314) 291-3030
    Facsimile:  (314) 291-6546
    tribunebkr@smmj.com

    *Fee Examiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on this 31st day of August, 2012.

David Klauder, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
(US Trustee)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
(Counsel to Creditors' Committee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY  10019-5820
(Counsel to Barclays Bank PLC)

Stuart M. Brown, Esq.
William E. Chipman Jr., Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE  19801
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE  19801-1496
(Co-Counsel to Debtors)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE  19899-0511
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY  10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.'
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603
(Counsel to Debtors)

Alan D. Holtz
Managing Director
AlixPartners, LLP
40 West 57th Street
New York, NY  10019

_____
John F. Theil, Esq.

## SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL

## COMPUTED AT STANDARD RATES

### AlixPartners, LLP

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| 553 | Murphy, Michael P. | MANAG DIRECTOR | $855.00 | $855.00 | 18.00 | $15,390.00 |
| 1211 | Holtz, Alan | MANAG DIRECTOR | $855.00 | $855.00 | 3.80 | $3,249.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $855.00 | | 21.80 | $18,639.00 |
| | | | | % of Total: | 3.32% | % of Total: 4.78% |
| 398 | Leung, Albert | DIRECTOR | $560.00 | $560.00 | 443.50 | $248,360.00 |
| 1244 | Hall, Brad | DIRECTOR | $645.00 | $645.00 | 188.80 | $121,776.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $585.38 | | 632.30 | $370,136.00 |
| | | | | % of Total: | 96.31% | % of Total: 94.92% |
| 1484 | Kim, Young | VICE PRESIDENT | $490.00 | $490.00 | 2.40 | $1,176.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $490.00 | | 2.40 | $1,176.00 |
| | | | | % of Total: | 0.37% | % of Total: 0.30% |
| | Total No. of Billers: 5 | Blended Rate for Report: | $593.98 | | 656.50 | $389,951.00 |

EXHIBIT C

ALIXPARTNERS RETENTION/COMPENSATION

AlixPartners, LLP

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Hall, B | 8.30 | 5,353.50 |
| Leung, A | 29.30 | 16,408.00 |
| Murphy, M | 8.00 | 6,840.00 |
| | 45.60 | $28,601.50 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Billing and Retention | 45.60 | 28,601.50 |
| | 45.60 | $28,601.50 |

EXHIBIT C  PAGE 1 of  5

EXHIBIT C

ALIXPARTNERS RETENTION/COMPENSATION

AlixPartners, LLP

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | | DESCRIPTION |
|------|-----------------|-------------|-------|------|---|-------------|
| 06/01/11 Wed | Hall, B 201106-17/119 | 2.40 | 2.40 | 1,548.00 | 1 | MATTER NAME: Billing and Retention REVIEW APRIL FEE APPLICATION. |
| 06/01/11 Wed | Leung, A 201106-17/120 | 1.20 | 1.20 | 672.00 | 1 | MATTER NAME: Billing and Retention PREPARED APRIL 2011 FEE APPLICATION. |
| 06/01/11 Wed | Murphy, M 201106-17/118 | 2.10 | 2.10 | 1,795.50 | 1 | MATTER NAME: Billing and Retention REVIEWED APRIL 2011 FEE APPLICATION AND EXHIBITS. |
| 06/13/11 Mon | Murphy, M 201106-17/121 | 0.90 | 0.90 | 769.50 | 1 | MATTER NAME: Billing and Retention REVIEWED MAY 2011 FEE APPLICATION AND EXHIBITS. |
| 06/17/11 Fri | Leung, A 201106-17/122 | 2.20 | 2.20 | 1,232.00 | 1 | MATTER NAME: Billing and Retention PREPARED MAY 2011 FEE APPLICATION. |
| 06/20/11 Mon | Murphy, M 201106-17/123 | 1.80 | 1.80 | 1,539.00 | 1 | MATTER NAME: Billing and Retention REVIEWED MAY 2011 FEE APPLICATION AND EXHIBITS. |
| 06/23/11 Thu | Leung, A 201106-17/124 | 1.90 | 1.90 | 1,064.00 | 1 | MATTER NAME: Billing and Retention PREPARED MAY 2011 FEE APPLICATION. |
| 06/24/11 Fri | Hall, B 201106-17/126 | 0.60 | 0.60 | 387.00 | 1 | MATTER NAME: Billing and Retention REVIEW MAY FEE APPLICATION. |
| 06/24/11 Fri | Leung, A 201106-17/125 | 3.10 | 3.10 | 1,736.00 | 1 | MATTER NAME: Billing and Retention PREPARED MAY 2011 FEE APPLICATION. |
| 06/27/11 Mon | Hall, B 201106-17/127 | 1.20 | 1.20 | 774.00 | 1 | MATTER NAME: Billing and Retention REVIEW MAY FEE APPLICATION. |
| 06/27/11 Mon | Leung, A 201106-17/128 | 1.60 | 1.60 | 896.00 | 1 | MATTER NAME: Billing and Retention PREPARED MAY 2011 FEE APPLICATION. |
| 06/28/11 Tue | Leung, A 201106-17/129 | 1.50 | 1.50 | 840.00 | 1 | MATTER NAME: Billing and Retention PREPARED MAY 2011 FEE APPLICATION. |
| 07/12/11 Tue | Leung, A 201107-17/133 | 1.80 | 1.80 | 1,008.00 | 1 | MATTER NAME: Billing and Retention PREPARED 10TH INTERIM FEE APPLICATION. |

EXHIBIT C  PAGE 2 of 5

EXHIBIT C

ALIXPARTNERS RETENTION/COMPENSATION

AlixPartners, LLP

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | DESCRIPTION |
|------|-----------------|-------------|-------|------|-------------|
| 07/13/11 Wed | Hall, B 201107-17/135 | 1.30 | 1.30 | 838.50 | *MATTER NAME: Billing and Retention*<br>1 REVIEW 10TH FEE APPLICATION |
| 07/13/11 Wed | Leung, A 201107-17/134 | 0.80 | 0.80 | 448.00 | *MATTER NAME: Billing and Retention*<br>1 PREPARED 10TH INTERIM FEE APPLICATION. |
| 07/14/11 Thu | Leung, A 201107-17/136 | 0.50 | 0.50 | 280.00 | *MATTER NAME: Billing and Retention*<br>1 PREPARED JUNE 2011 FEE APPLICATION. |
| 07/14/11 Thu | Murphy, M 201107-17/137 | 0.80 | 0.80 | 684.00 | *MATTER NAME: Billing and Retention*<br>1 REVIEWED 10TH INTERIM FEE APPLICATION AND EXHIBITS. |
| 07/15/11 Fri | Leung, A 201107-17/138 | 0.60 | 0.60 | 336.00 | *MATTER NAME: Billing and Retention*<br>1 PREPARED JUNE 2011 FEE APPLICATION. |
| 07/18/11 Mon | Murphy, M 201107-17/139 | 1.20 | 1.20 | 1,026.00 | *MATTER NAME: Billing and Retention*<br>1 REVIEWED JUNE 2011 PUBLISHING AND BROADCASTING RESULTS. |
| 07/22/11 Fri | Leung, A 201107-17/140 | 1.20 | 1.20 | 672.00 | *MATTER NAME: Billing and Retention*<br>1 PREPARED JUNE 2011 FEE APPLICATION. |
| 07/25/11 Mon | Hall, B 201107-17/142 | 1.20 | 1.20 | 774.00 | *MATTER NAME: Billing and Retention*<br>1 REVISE JUNE FEE APPLICATION. |
| 07/25/11 Mon | Leung, A 201107-17/141 | 1.20 | 1.20 | 672.00 | *MATTER NAME: Billing and Retention*<br>1 PREPARED JUNE 2011 FEE APPLICATION. |
| 07/25/11 Mon | Murphy, M 201107-17/143 | 0.70 | 0.70 | 598.50 | *MATTER NAME: Billing and Retention*<br>1 REVIEWED JUNE 2011 FEE APPLICATION. |
| 07/26/11 Tue | Leung, A 201107-17/144 | 0.60 | 0.60 | 336.00 | *MATTER NAME: Billing and Retention*<br>1 PREPARED JUNE 2011 FEE APPLICATION. |
| 08/04/11 Thu | Leung, A 201108-17/134 | 0.70 | 0.70 | 392.00 | *MATTER NAME: Billing and Retention*<br>1 PREPARED FEE APPLICATION. |
| 08/16/11 Tue | Leung, A 201108-17/135 | 0.50 | 0.50 | 280.00 | *MATTER NAME: Billing and Retention*<br>1 REVIEWED 4TH INTERIM FEE MOTION AND EXHIBIT. |

EXHIBIT C  PAGE 3 of 5

EXHIBIT C

ALIXPARTNERS RETENTION/COMPENSATION

AlixPartners, LLP

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | DESCRIPTION |
|------|-----------------|-------------|-------|------|-------------|
| 08/23/11 Tue | Leung, A 201108-17/136 | 1.80 | 1.80 | 1,008.00 | *MATTER NAME: Billing and Retention*<br>1 PREPARED JULY 2011 FEE APPLICATION. |
| 08/26/11 Fri | Leung, A 201108-17/137 | 0.60 | 0.60 | 336.00 | *MATTER NAME: Billing and Retention*<br>1 PREPARED JULY 2011 FEE APPLICATION. |
| 08/29/11 Mon | Hall, B 201108-17/139 | 1.60 | 1.60 | 1,032.00 | *MATTER NAME: Billing and Retention*<br>1 REVIEW FEE APPLICATION. |
| 08/29/11 Mon | Leung, A 201108-17/138 | 2.20 | 2.20 | 1,232.00 | *MATTER NAME: Billing and Retention*<br>1 PREPARED JULY 2011 FEE APPLICATION. |
| 08/30/11 Tue | Leung, A 201108-17/140 | 1.20 | 1.20 | 672.00 | *MATTER NAME: Billing and Retention*<br>1 REVIEWED FEE EXAMINERS REPORT FOR THE 6TH AND 7TH PERIODS. |
| 08/30/11 Tue | Leung, A 201108-17/141 | 2.50 | 2.50 | 1,400.00 | *MATTER NAME: Billing and Retention*<br>1 PREPARED JULY 2011 FEE APPLICATION AND EXHIBITS FOR FILING. |
| 08/30/11 Tue | Murphy, M 201108-17/142 | 0.50 | 0.50 | 427.50 | *MATTER NAME: Billing and Retention*<br>1 REVIEWED JULY 2011 FEE APPLICATION. |
| 08/31/11 Wed | Leung, A 201108-17/143 | 1.60 | 1.60 | 896.00 | *MATTER NAME: Billing and Retention*<br>1 REVIEWED FEE EXAMINERS REPORT FOR THE 6TH AND 7TH PERIODS. |
| Total | | | 45.60 | $28,601.50 | |

Number of Entries:    34

EXHIBIT C  PAGE 4 of 5

EXHIBIT C

ALIXPARTNERS RETENTION/COMPENSATION

AlixPartners, LLP


SUMMARY OF HOURS AND FEES BY INDIVIDUAL


| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Hall, B | 8.30 | 5,353.50 |
| Leung, A | 29.30 | 16,408.00 |
| Murphy, M | 8.00 | 6,840.00 |
| | 45.60 | $28,601.50 |


SUMMARY OF HOURS AND FEES BY MATTER


| MATTER NAME | HOURS | FEES |
|---|---|---|
| Billing and Retention | 45.60 | 28,601.50 |
| | 45.60 | $28,601.50 |

EXHIBIT C  PAGE 5 of  5