# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Related to Docket No. 12338**<br>Hearing Date: October 4, 2012 at 10:00 a.m |

## OBJECTION OF DISCHARGED EXAMINER, KENNETH N. KLEE, ESQ. TO MOTION OF CHANDLER BIGELOW TO EXTEND INDEFINITELY THE RETENTION PERIOD FOR THE EXAMINER RECORD

Kenneth N. Klee, Esq., the former examiner (the "Examiner") appointed in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Tribune Company and its affiliates (collectively, the "Debtors"), by and through his undersigned counsel, respectfully submits this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); FORUM Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

617126.1 09/11/2012

objection to the *Motion of Chandler Bigelow To Extend The Initial Retention Period For The Complete Examiner Record* [Docket No. 12338] ("Motion"). By his Motion, Mr. Bigelow requests that the Court require the Examiner and his professionals to maintain *indefinitely* all of the documents comprising the Examiner's investigative record so that the "discoverability" of those documents may someday be assessed in connection with certain stayed litigation outside this Court.

The requested relief is unjustified, inconsistent with the spirit of the Court's discharge order, would impose an unnecessary burden, and would be bad policy. The Examiner's report ("Report") in these cases was the first of its kind to be publicly filed with each and every document on which it was based. The only documents not made public are documents that are freely discoverable from third parties, or are privileged materials of the Examiner and his professionals. Thus, no purpose would be served by extending the retention period, other than to expose the Examiner and his professionals *indefinitely* to potential harassment by litigants. It is time for the Examiner's obligations in connection with these cases to come to end.

In support of this Objection, the Examiner further states as follows:

## BACKGROUND

1. On April 20, 2010, the Court entered the *Agreed Order Directing the Appointment of an Examiner* [Docket No. 4120]. On April 30, 2010, the United States Trustee filed the *Notice of Appointment of Examiner* [Docket No. 4212] appointing Kenneth N. Klee, Esq. as the Examiner. On May 11, 2010, the Court entered the *Order Approving Appointment of Examiner* [Docket No. 4320].

2. On July 23, 2010, the Examiner filed the *Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq., for Order (I) Discharging Examiner; (II) Granting Relief From Third-*

*Party Discovery; (III) Approving the Disposition of Certain Documents and Information; and (IV) Granting Certain Ancillary Relief* ("Discharge Motion") [Docket No. 5115]. Among other things, the Discharge Motion sought to discharge the Examiner and his professionals following the filing of his report (the "Report"), grant certain protections from third-party discovery, and establish a reasonable limitation on the period in which the Examiner and his professionals are required to retain their files in connection with the investigation.

3. The Discharge Motion also advised that certain parties were asserting that information in the Report and certain of its exhibits were confidential and should not be made public. The Discharge Motion indicated that as a result of these assertions, the Examiner would be filing a redacted version of the Report, and thereafter seeking an order of this Court authorizing him to publicly file the unredacted Report and all of its exhibits. *Id.* at ¶ 20.

4. On July 26, 2010, the Examiner publicly filed a version of the Report that redacted the findings and conclusions that some parties had identified as potentially implicating confidential information. *See* Docket Nos. 5130, 5131, 5132, 5133.

5. As a result of the Examiner's efforts, the parties asserting confidentiality with respect to the Report and its exhibits ultimately withdrew their assertions of confidentiality. On August 3, 2010, the Examiner filed his unredacted Report in its entirety. *See* Docket Nos. 5247, 5248, 5249, 5250. Shortly thereafter, the Examiner also made public the exhibits to the Report, comprising approximately 1,100 documents and over 21,000 pages.

6. On August 13, 2010, the Debtors filed their response to the Discharge Motion [Docket No. 5382], suggesting that the Court adjourn the hearing on the Discharge Motion. *Id.* at ¶ 1. On August 17, 2010, the Examiner filed his reply, demonstrating why an adjournment

would be unnecessary, unfair, and inappropriate. Later that day, the Court held a hearing on the Discharge Motion, rejected the Debtors' position and granted the Discharge Motion.

7. On August 26, 2010, the Court entered its *Order Approving Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq., for Order (I) Discharging Examiner; (II) Granting Relief from Third-Party Discovery; (III) Approving the Disposition of Certain Documents and Information; and (IV) Granting Certain Ancillary Relief* [Docket No. 5541] (the "Discharge Order"). A copy of the Discharge Order is attached as **Exhibit 1**.

8. The Discharge Order provides that: "The Examiner and his Professionals shall maintain all Depository Documents, Third-Party Documents, Transcripts and Privileged Materials (collectively the "Complete Examiner Record") for a period of two years from the date of this Order (the "Initial Retention Period"), after which, the Examiner and his professionals may destroy any such materials without further order of the Court." Discharge Order at ¶ 4.

9. Within the meaning of the Discharge Order (and the Discharge Motion): (i) "Depository Documents" comprise 4.3 million pages of documents produced by various parties in these cases and maintained in the document depository created in these cases, to which the Examiner was granted access; (ii) "Third-Party Documents" comprise documents obtained by the Examiner directly from third parties; (iii) "Transcripts" comprise professionally transcribed, sworn transcripts of witness interviews; and (iv) "Privileged Materials" comprise documents created or compiled by the Examiner and his professionals that are protected by the attorney-client privilege and/or the work product doctrine. The Privileged Materials include internal correspondence and communications, legal and financial analysis, witness interview notes and drafts of the Report. *See* Discharge Order at ¶ 4 & n.2; Discharge Motion at ¶¶ 18-19.

10. The Discharge Order requires the Debtor to give parties in interest at least 30 days' notice of the expiration of the Initial Retention Period and permits a party in interest to request an extension of the Initial Retention Period by filing and serving a motion making such request. *Id.* The Discharge Order makes clear, however, that "the burden of extending the Initial Retention Period shall rest with the movant." *Id.*

11. On July 24, 2012, the Debtor filed and served its *Notice of Expiration of the Initial Retention Period for the Complete Examiner Record*, providing notice of the expiration of the Initial Retention Period pursuant to the Discharge Order. *See* Docket Nos. 12095, 12122.

12. On August 25, 2012, Mr. Bigelow filed the Motion. As demonstrated below, however, the Motion fails to satisfy Mr. Bigelow's burden to demonstrate that he is entitled to the relief he has requested.

## **OBJECTION**

13. Mr. Klee was the first examiner ever to insist that his Report be accompanied by a copy of each and every document on which it relied, and fought to ensure that the *entirety* of the Report and its documentary basis be made public. As a result of his efforts, all parties in interest in these cases, potential litigants in related disputes and the public have unprecedented access to the unredacted report and approximately 1,100 source documents, comprising 21,000 pages.

14. The only documents that are part of the Complete Examiner Record that were not made public are (i) Privileged Materials, (ii) Depository Documents that were not used in the Report, and (iii) Third-Party Documents that were not used in the Report (collectively, the "Non-Public Materials"). The first category comprises documents to which no party is entitled to access. The second and third categories comprises documents that are capable of independent discovery by potential litigants, including Mr. Bigelow.

15. Not surprisingly, the parties in interest in these cases have been able over the last two years – without seeking leave to obtain any Non-Public Materials from the Examiner – to engage expert witnesses, analyze the Report and its supporting documentation, conduct their own massive, independent discovery, and litigate extensively some of the factual and legal conclusions set forth in the Report.

16. There is no basis to conclude that Mr. Bigelow is in any different position. If, as and when the stayed litigation in which he is a defendant moves forward, he will have the benefit of the Report and its exhibits *and* be able to conduct his own discovery.

17. The Examiner and his professionals should not be required to facilitate Mr. Bigelow's discovery efforts. Neither the Examiner nor his professionals were involved in or percipient witnesses to any of the underlying events that were the subject of the Examiner's investigation. The investigation was forensic in nature, with the Examiner acting as an officer of the Court.[2] Mr. Bigelow is capable of conducting his own discovery and will not be prejudiced if the retention period is not extended.

18. That proceedings presently are stayed in the fraudulent conveyance action in which Mr. Bigelow is named as a defendant is not a justification for extending the retention period. Mr. Bigelow has been on notice – at least since the filing of the Report two years ago – that he might become a defendant in litigation arising from his involvement in events described in the Report. Mr. Bigelow apparently has been named in an action that is now stayed. During that period, however, he made no inquiry or request in respect of the Non-Public Materials. Instead, Mr. Bigelow filed his Motion on the very last day of the two-year Initial Retention Period.

---

[2] *See, e.g., In re New Century Holdings, Inc.*, 407 B.R. 558, 566 (Bankr. D. Del. 2009); *In re Baldwin United Corp.*, 46 B.R. 314, 316-17 (Bankr. S.D. Ohio 1985).

19. Under these circumstances, and given that any non-privileged material is discoverable from third parties, there is no justification for maintaining a continued restriction on the ability of the Examiner and his professionals to dispose of their records. The two-year period under the Initial Retention Period was intended to give parties an opportunity to seek any relief to which the party believed it was entitled with respect to the Non-Public Materials. Mr. Bigelow made no effort to do so.

20. At this point, the only purpose served by extending the retention period would be to leave the Examiner and his professionals hanging in limbo and expose them to potential harassment by litigants. This is directly at odds with the purpose of the Discharge Order, which was to terminate definitively any obligations of the Examiner and his professionals in connection with the work performed on behalf of the Court.

21. Moreover, the requested relief would make bad policy. Leaving open the potential for discovery against the Examiner (who is, after all, an officer of the Court) is neither necessary nor appropriate. These cases have been highly litigious and Mr. Bigelow's motion portends more litigation on the horizon. Litigants should not be able to use the threat of making the Examiner a pawn in negotiations undertaken against the backdrop of litigation. Subjecting examiners to such harassment for years following the conclusion of an investigation will discourage the most qualified individuals from serving in future cases.

## **RESERVATION OF RIGHTS**

22. The Examiner expressly reserves the right, on behalf of himself and his professionals, to payment from Mr. Bigelow, the Debtors or their successors in interest for all fees and expenses incurred in connection the Motion, the hearing on the Motion, and any relief in

respect of the Motion, pursuant to Paragraph 8 of the Discharge Order and as otherwise provided by law.

## CONCLUSION

WHEREFORE, for all the reasons set forth above, the Examiner respectfully requests that the Court deny the Motion.

Dated: September 13, 2012

Respectfully Submitted,

KLEE TUCHIN BOGDANOFF & STERN LLP

Lee R. Bogdanoff (CA. Bar No. 119542)
Martin R. Barash (CA Bar No. 162314)
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067-6059
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090

*Counsel to the Former Examiner*

and

SAUL EWING LLP

_____
Mark Minuti (Bar No. 2659)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone:    (302) 421-6840
Facsimile:    (302) 421-5873
Email: mminuti@saul.com

*Delaware Counsel to the Former Examiner*