UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE ELEVENTH INTERIM FEE APPLICATION OF MOELIS & COMPANY LLC

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner** Order") in connection with the Eleventh Interim Fee Application of Moelis & Company LLC [Docket No. 10005] (the "**Fee Application**"). The Fee Application

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

seeks approval of fees that total $600,000.00 and reimbursement of expenses that total $47,753.49 for the period from June 1, 2011 through August 31, 2011. Moelis & Company LLC ("**Moelis**") serves as financial advisor and investment banker to the Official Committee of Unsecured Creditors (the "**Committee**").

### Background

1. On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**"), commenced a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2. On January 30, 2009, the Committee filed the *Application for Entry of an Order Pursuant to Sections 328(a) and 1103(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure Authorizing Employment of Moelis & Company LLC as Investment Banker to the Unofficial Committee of Unsecured Creditors Nunc Pro Tunc to January 6, 2009* [Docket No. 312] (the "**Retention Application**"). On March 12, 2009, this Court approved the retention of Moelis as investment banker to the Committee by entering the *Consent Order Pursuant to Sections 328(a) and 1103(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure Authorizing Employment of Moelis & Company LLC as Investment Banker to the Unofficial Committee of Unsecured Creditors Effective as of January 6, 2009* [Docket No. 523] (the "**Retention Order**").

3. The Retention Application requested the allowance of compensation and reimbursement of expenses in accordance with the terms of an engagement letter between the Committee and Moelis, originally dated and amended on January 30, 2009 (collectively the

"**Engagement Letter**").   The Engagement Letter established a fixed fee for Moelis of $200,000 per month, an additional fee of $7,500,000 upon consummation of reorganization or restructuring, and reimbursement for all reasonable and documented out-of-pocket expenses.

4.      Pursuant to the Retention Order, "Moelis shall be compensated in accordance with the terms of the Moelis Engagement Letter and, in particular, all of Moelis' fees and expenses in these cases including without limitation the Monthly Fee and the Restructuring Fee (as defined in the Engagement Letter) are approved pursuant to Bankruptcy Code section 328 (a)." The Retention Order also provided that the "Court will review Moelis' compensation (including any request for compensation under the fee 'tail' provision of paragraph 8(b) of the Engagement Letter) (i) under the standards set forth in 11 U.S.C. §§ 330 and 331 in the event that an objection is filed by the Office of the United States Trustee and (ii) under the standard set forth in 11 U.S.C. § 328(a) if an objection is filed by a party in interest other than the Office of the United States Trustee."

5.      Moelis submitted the Fee Application pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, (January 15, 2009) [Docket No. 225] (the "**Interim Compensation Order**").

## Applicable Standards

6.      In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

7.      The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

8.      Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

9.     A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred.  A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules.  Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application.  A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

10.    The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Engagement Letter, the Interim Compensation Order, and all related filings and provides this Preliminary Report to Moelis for review and comment.  The Fee Examiner will issue a final report (the "**Final Report**") with respect to each quarterly fee application and the firm's final fee application.  The Final Report "shall be in a format designed to opine whether the requested fees of the Case Professional meet the applicable standards of section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines." *Fee Examiner Order ¶5.*

## DISCUSSION OF FINDINGS

### Technical Requirements

11.    **Reconciliation of Fees and Expenses.**  Moelis requested fees in accordance with the terms and conditions set forth in the Engagement Letter.  The fee request for each month in this interim period is $200,000.00.  The Application did not include hourly rates for the firm timekeepers; however, the number of hours billed by each professional and paraprofessional and the total number of hours billed by the firm during this interim period were provided.  Using the fixed monthly fee, the total hours billed by the firm, and the hours billed by each timekeeper, the

Fee Examiner calculated a blended hourly rate for each month for the firm. The blended hourly rate assigned to each timekeeper was then used to calculate a fee for each entry. The calculation of the blended hourly rate resulted in a discrepancy of $0.04 that is attributed to rounding.

The Fee Examiner further determined that there is no discrepancy between the Expenses Requested and the Expenses Computed. The figures in this report and the accompanying exhibits reflect Fees Computed and Expenses Computed

12.  **Block Billing.**[2] The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*. The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[3] The Fee Examiner did not identify any block billed entries.

13.  **Time Increments.** The Court granted Moelis a limited waiver from the Local Rules, allowing Moelis to record time in one-half hour increments rather than the customary one-tenth hour increment.

### Review of Fees

14.  **Firm Staffing.** The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time,

---

[2] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

[3] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

[an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*. The Fee Application provided the names and positions of the four Moelis timekeepers who billed to this matter, consisting of one managing director, one senior vice president,[4] one associate, and one analyst. A summary of hours and fees billed by each timekeeper is displayed in **Exhibit A**.[5]

The firm billed a total of 177.50 hours. The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Computed Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Managing Director | 30.00 | 17% | $100,874.23 | 17% |
| Senior Vice President | 44.50 | 25% | 150,657.87 | 25% |
| Associate | 29.50 | 17% | 99,646.16 | 17% |
| Analyst | 73.50 | 41% | 248,821.78 | 41% |
| **TOTAL** | 177.50 | 100% | $600,000.04 | 100% |

15.     **Meetings, Conferences, Hearings, and Other Events.** The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*. While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

---

[4] The Fee Examiner notes that one timekeeper was promoted to senior vice president effective August 1, 2011.

[5] This Final Report includes exhibits that detail and support the findings discussed herein. Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

The Fee Examiner identified occasions where two or more timekeepers attended the same meeting, conference, hearing, or other event. Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. The entries, totaling 73.50 hours, were displayed in **Exhibit B** to the Preliminary Report. In each instance where multiple timekeepers attended a meeting, conference, hearing or other event, we identified the timekeeper who appeared most responsible for the matter or the particular event (*i.e.*, the individual leading rather than observing a conference). The potentially duplicative and unnecessary timekeepers' entries totaled 52.50 hours, and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested that the firm provide what the Local Rules and UST Guidelines mandate -- an explanation of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

In response to the Preliminary Report, Moelis described the firm's team approach of staffing the matter with distinct timekeepers responsible for various aspects of the firm's restructuring and media work. The firm asserted that if multiple team members were not present at certain meetings there would be a negative impact on the efficiency of the work performed on behalf of the Committee. As in past responses, the firm emphasized the flat fee compensation and the resulting benefits offered by the participation of multiple timekeepers that does not carry corresponding costs to the Debtors. After consideration of all the responsive information provided, the Fee Examiner makes no recommendation for a fee reduction resulting from multiple Moelis personnel attending the same meeting, conference, or event. Exhibit B is omitted from the Final Report.

16.    **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm.    The Fee Examiner did not identify any time entries describing administrative activities.

17.    **Clerical Activities.** Typically, clerical activities are those tasks that do not require legal acumen and may effectively be performed by administrative assistants, secretaries, or support personnel, and like administrative activities are generally reflected in the hourly rates charged by a firm.    In the 3rd Circuit, however, clerical-type activities performed by professionals and/or paraprofessionals are subject to a reduced billing rate.    The Fee Examiner did not identify any fee entries describing clerical activities.

18.    **Travel.** The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii).* The Fee Examiner did not identify any time entries describing travel.

19.    **General Reasonableness of Fees.** Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A).*    The Fee Examiner notes that Moelis only spent 177.50 hours, with associated fees of $600,000.00 in this interim fee period.    The Fee Examiner has also computed the hours billed, calculated a blended hourly rate per fee period and overall, and compared these numbers with the amount charged to the estate.    The data is displayed in the chart below.    The Fee Examiner requests Moelis comment on the reasonableness of the monthly and overall fees generated in light of the hours billed.    Pending comment and/or additional information from the firm, the Fee Examiner may recommend an appropriate fee reduction.

| Interim Period | Amount Billed | Hours Computed | Blended Hourly Rate |
|---|---|---|---|
| 1st | $ 367,741.94 | 617.50 | $595.53 |
| 2nd | 600,000.00 | 770.00 | $779.22 |
| 3rd | 600,000.00 | 1,215.00 | $493.83 |
| 4th | 600,000.00 | 667.00 | $899.55 |
| 5th | 600,000.00 | 756.00 | $793.65 |
| 6th | 600,000.00 | 815.00 | $736.20 |
| 7th | 600,000.00 | 655.50 | $915.33 |
| 8th | 600,000.00 | 761.50 | $787.92 |
| 9th | 600,000.00 | 693.50 | $865.18 |
| 10th | 600,000.00 | 504.00 | $1,190.48 |
| 11th | 600,000.00 | 177.50 | $3,380.28 |
| 12th | 600,000.00 | 221.50 | $2,708.80 |
| 13th | 600,000.00 | 220.50 | $2,721.09 |
| 14th | 600,000.00 | 142.50 | $4,210.53 |
| TOTALS | $8,167,741.94 | 8,217.00 | $994.01 |

In response, Moelis provided the following justifications for the reasonableness of its fees: (1) The Committee agreed to Moelis' fees and has not terminated the firm; (2) its fees were competitive with the other firms in the pre-selection process and are comparable with fees charged by investment bankers for a matter of similar size and complexity; (3) 50% of the fees in this fee application are credited against any Restructuring Fee; (4) the fee applications do not capture all of the time expended by Moelis; (5) Moelis' work in the current period was more limited, because of the plan confirmation and the pending appeal; and (6) the fact the hours can fluctuate substantially is one of the reasons the market favors a flat monthly fee.

The Fee Examiner is concerned about the reasonableness of the fees being charged to the debtor (with no voluntary fee reduction) when compared to the services rendered and in light of the fact only 50% of the total fees being charged are credited against the Restructuring Fee, which is yet to come. Under the circumstances, the two forms of compensation (without some reduction) could be construed as a windfall. The Fee Examiner will continue to monitor the

services performed and compare them to the fees requested/received and may make a recommendation to the Court when reporting on Moelis' final fee application.

20.    **Moelis Retention/Compensation.** The Fee Examiner did not identify any entries related to the firm's retention/compensation.

### Review of Expenses

21.    **Itemization of Expenses.** The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii).*    The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense.  Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii).*  Moelis provided an itemization for the firm expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.  The Fee Examiner notes that the firm adjusted airfare, lodging, and meal charges to comply with the applicable limits.

22.    **Legal Services.**  Moelis requested reimbursement for "DLA Piper Legal Services" totaling $47,725.59, which were displayed in **Exhibit C** to the Preliminary Report. The Fee Examiner requested that Moelis provide additional information and/or supporting

documentation with regard to these charges, including an explanation for the necessity and purpose of the legal services/charges.

In response, Moelis discussed the role of its counsel, in that the firm was used to Moelis in retention related matters, which was allowed under Moelis' engagement letter. After reviewing the materials, the Fee Examiner makes no recommendation for an expense reduction. Exhibit C has been omitted from this Final Report.

## CONCLUSION

The Fee Examiner submits this Final Report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends approval of fees in the amount of $600,000.00 and reimbursement of expenses that total $47,753.49 for the period from June 1, 2011 through August 31, 2011.

Respectfully submitted,

**STUART MAUE**

By: _____
John F. Theil, Esq.
3840 McKelvey Road
St. Louis, Missouri  63044
Telephone:  (314) 291-3030
Facsimile:  (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 25th day of September, 2012.

David Klauder, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
William E. Chipman Jr., Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE 19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE 19899-0511
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE 19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Mr. Thane W. Carlston
Moelis & Company LLC
1999 Avenue of the Stars, 19th Floor
Los Angeles, CA 90067

_____
John F. Theil, Esq.

-13-

## SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL
### COMPUTED AT STANDARD RATES
### Moelis & Company LLC

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| ZJAM | Jamal, Zul | MANAG DIRECTOR | $3,125.00 | $3,773.58 | 30.00 | $100,874.23 |
| | No. of Billers for Position: 1 | Blended Rate for Position: $3,362.47 | | | 30.00 | $100,874.23 |
| | | | | % of Total: | 16.90% | % of Total: 16.81% |
| AAJM | Ajmera, Ashish | SR VICE PRES | $3,125.00 | $3,773.58 | 44.50 | $150,657.87 |
| | No. of Billers for Position: 1 | Blended Rate for Position: $3,385.57 | | | 44.50 | $150,657.87 |
| | | | | % of Total: | 25.07% | % of Total: 25.11% |
| JOLS | Olson, Jens | ASSOCIATE | $3,125.00 | $3,773.58 | 29.50 | $99,646.17 |
| | No. of Billers for Position: 1 | Blended Rate for Position: $3,377.84 | | | 29.50 | $99,646.17 |
| | | | | % of Total: | 16.62% | % of Total: 16.61% |
| SSIS | Sistla, Sandhya | ANALYST | $3,125.00 | $3,773.58 | 73.50 | $248,821.78 |
| | No. of Billers for Position: 1 | Blended Rate for Position: $3,385.33 | | | 73.50 | $248,821.78 |
| | | | | % of Total: | 41.41% | % of Total: 41.47% |
| | Total No. of Billers: 4 | Blended Rate for Report: $3,380.28 | | | 177.50 | $600,000.04 |