## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

In re:

TRIBUNE COMPANY, et al.,

        Debtors.

------------------------------------------------------- x

:   Chapter 11

:   Case No. 08-13141 (KJC)

:   Jointly Administered

:   Objections Due:  October 15, 2012
:   @ 4:00 p.m. (ET)
  Hearing Date:  N/A

## FORTY-FOURTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD AUGUST 1, 2012 THROUGH AUGUST 31, 2012

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | August 1, 2012 through August 31, 2012 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $427,445.40   (80% of $534,306.75) |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $  6,129.87 |

This is a(n):    __x__ Monthly      _____ Interim      _____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved* | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |
| 8/25/2010 | 5502 | 7/1/10 - 7/31/10 | $1,442,097.00 | $22,233.25 | $1,153,677.60 | $22,233.25 |
| 9/30/2010 | 5849 | 8/1/10 - 8/31/10 | $1,612,125.00 | $121,365.68 | $1,289,700.00 | $121,365.68 |
| 10/25/2010 | 6112 | 9/1/10 - 9/30/10 | $1,519,380.00 | $16,739.39 | $1,215,504.00 | $16,739.39 |
| 11/30/2010 | 6671 | 10/1/10 - 10/30/10 | $1,867,308.75 | $109,128.64 | $1,493,847.00 | $109,128.64 |
| 12/28/2010 | 7332 | 11/1/10 - 11/30/10 | $1,818,619.00 | $296,306.43 | $1,454,895.20 | $296,306.43 |
| 1/28/2011 | 7654 | 12/1/10 - 12/31/10 | $1,337,478.25 | $99,960.19 | $1,069,982.60 | $99,960.19 |
| 2/28/2011 | 8200 | 1/1/11 - 1/31/11 | $2,743,375.25 | $371,451.84 | $2,194,700.20 | $371,451.84 |
| 4/11/2011 | 8615 | 2/1/11 - 2/28/11 | $2,888,765.25 | $162,972.56 | $2,311,012.20 | $162,972.56 |
| 5/5/2011 | 8833 | 3/1/11 - 3/31/11 | $2,499,191.25 | $205,378.89 | $1,999,353.00 | $205,378.89 |
| 6/1/2011 | 9030 | 4/1/11 - 4/30/11 | $1,258,414.50 | $182,352.51 | $1,006,731.60 | $182,352.51 |
| 6/29/2011 | 9381 | 5/1/11 - 5/31/11 | $965,916.25 | $85,787.61 | $772,733.00 | $85,787.61 |
| 7/28/2011 | 9561 | 6/1/11 - 6/30/11 | $728,870.75 | $64,140.29 | $583,096.60 | $64,140.29 |
| 8/25/2011 | 9701 | 7/1/11 - 7/31/11 | $456,759.50 | $60,498.38 | $365,407.60 | $60,498.38 |

| 9/28/2011 | 9840 | 8/1/11 - 8/31/11 | $616,725.50 | $85,166.86 | $493,380.40 | $85,166.86 |
| 10/25/11 | 10064 | 9/1/11 - 9/30/11 | $450,088.50 | $56,800.73 | $360,070.80 | $56,800.73 |
| 11/23/11 | 10291 | 10/1/11 - 10/31/11 | $402,271.75 | $62,868.51 | $321,774.20 | $62,868.51 |
| 12/27/11 | 10511 | 11/1/11 - 11/30/11 | $676,518.00 | $34,425.04 | $541,214.40 | $34,425.04 |
| 1/31/12 | 10772 | 12/1/11 - 12/31/11 | $452,819.75 | $38,756.34 | $362,255.80 | $38,756.34 |
| 2/27/12 | 11023 | 1/1/12 - 1/31/12 | $547,104.00 | $9,615.03 | $437,683.20 | $9,615.03 |
| 3/27/12 | 11240 | 2/1/12 - 2/29/12 | $644,199.25 | $9,936.28 | $515,420.40 | $9,936.28 |
| 4/26/12 | 11476 | 3/1/12 - 3/31/12 | $592,148.75 | $28,148.76 | $473,719.00 | $28,148.76 |
| 5/25/12 | 11695 | 4/1/12 - 4/30/12 | $315,426.75 | $12,357.38 | $252,341.40 | $12,357.38 |
| 6/26/12 | 11896 | 5/1/12 - 5/31/12 | $337,692.50 | $4,191.40 | $270,154.00 | $4,191.40 |
| 7/26/12 | 12106 | 6/1/12 - 6/30/12 | $414,998.50 | $11,058.19 | $331,998.80 | $11,058.19 |
| 8/24/2012 | 12336 | 7/1/12 - 7/31/12 | $303,691.00 | $2,495.23 | $242,952.80 | $2,495.23 |

*Monthly approved fees are subject to holdbacks which were to be reviewed by the Bankruptcy Court following the completion of each quarterly fee application. Such holdbacks have been reviewed and approved for payment by the Bankruptcy Court as set forth below:

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Amount Approved |
|---|---|---|---|
| 1 | December 18, 2008 through February 28, 2009 | December 14, 2009 | $326,196.76 |
| 2 | March 1, 2009 through May 31, 2009 | May 18, 2010 | 344,7890.61 |
| 3 | June 1, 2009 through August 31, 2009 | October 22, 2010 | $707,644.89 |
| 4 | September 1, 2009 through November 30, 2009 | August 24, 2011 | $883,274.78 |
| 5 | December 1, 2009 through February 28, 2010 | October 19, 2011 | $966,056.61 |
| 6 | March 1, 2010 through May 31, 2010 | December 12, 2011 | $737,989.71 |
| 7 | June 1, 2010 through August 31, 2010 | February 15, 2012 | $846,680.80 |
| 8 | September 1, 2010 through November 30, 2010 | April 24, 2012 | $1,024,183.85 |
| 9 | December 1, 2010 through February 28, 2011 | July 11, 2012 | $1,376,206.20 |
| 10 | March 1, 2011 through May 31, 2011 | July 11, 2012 | $915,810.94 |

# TRIBUNE COMPANY, et al.

## SUMMARY OF HOURS

### August 1, 2012 through August 31, 2012

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | $995 | 32.60 | 32,437.00 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 925 | 189.20 | 174,316.25 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 875 | 5.60 | 4,900.00 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 745 | 44.50 | 33,152.50 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 745 | 75.90 | 55,875.00 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 695 | 52.10 | 36,209.50 |
| Christy L. Rivera | Bankruptcy and Financial Restructuring | 2002 (NY) | 665 | 1.20 | 798.00 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 645 | 59.90 | 38,635.50 |
| | | | | | |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Associate:** | | | | | |
| Robert M. Kirby | Litigation | 2008 (NY) | 595 | 2.80 | 1,666.00 |
| Bonnie Dye | Bankruptcy & Financial Restructuring | 2009 (NY) | 565 | 9.50 | 5,367.50 |
| Kimberly Zafran | Litigation | 2009 (NY) | 565 | 58.00 | 32,770.00 |
| Eric Daucher | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 32.60 | 16,137.00 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 139.50 | 68,904.00 |
| Andrea Voelker | Litigation | 2010 (NY) | 495 | 0.80 | 396.00 |
| Pooja Asnani | Litigation | 2011 (NY) | 435 | 2.10 | 913.50 |
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 43.10 | 18,748.50 |
| Nicholas Stebinger | Litigation | 2011 (NY) | 435 | 0.70 | 304.50 |
| | | | | | |
| **Paraprofessional:** | | | | | |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 295 | 17.70 | 5,221.50 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 295 | 22.90 | 6,755.50 |
| Jason Lopez | Litigation | n/a | 235 | 3.40 | 799.00 |
| | | | | | |
| **TOTAL:** | | | | 794.10 | $534,306.75 |

BLENDED RATE:    $674.75

---

\* Includes year elected Partner at firm or joined firm as Partner.

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ----------------------------------------------------- x | Chapter 11 | |
| In re: | : | |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Objections Due: October 15, 2012 @ 4:00 p.m.(ET) |
| ----------------------------------------------------- x | | Hearing Date: N/A |

## FORTY-FOURTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD AUGUST 1, 2012 THROUGH AUGUST 31, 2012

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the

"Debtors"), hereby submits this Application (the "Application") for approval and allowance of

compensation for services rendered in the amount of $534,306.75 (80% of which equals

$427,445.40 and reimbursement of expenses incurred in the amount of $6,129.87 during the

period commencing August 1, 2012 through and including August 31, 2012 (the "Application

Period"). This Application is submitted pursuant to sections 330 and 331 of title 11 of the

United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals and Committee Members

Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order"). In support of the

Application, Chadbourne respectfully represents as follows:

CPAM: 4907150.1

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

2.      The statutory bases for relief requested herein are Sections 105(a), 330, 331 and

1103(a) of the Bankruptcy Code.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the

Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

4.      The Debtors have continued in possession of their respective properties and have

continued to operate and maintain their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

5.      On December 18, 2009, the Office of the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

6.      On February 20, 2009, the Bankruptcy Court authorized the employment and

retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.      On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth

N. Klee, Esquire as Examiner in these Chapter 11 cases.

8.     Plan confirmation hearings for both the DCL Plan and the Noteholder Plan[1] commenced on March 7, 2011 and continued daily through March 18, 2011.  The next phase of the confirmation hearings -- which included rebuttal witnesses, non-proponent objections to the DCL and the Noteholder Plans and certain legal arguments -- resumed on April 12, 2011 and concluded on April 14, 2011.  Closing confirmation arguments were held on June 27, 2011.

9.     On October 31, 2011, the Bankruptcy Court entered its Opinion on Confirmation denying both the DCL Plan and the Noteholder Plan.  The Opinion noted, however, that should the proponents of both the DCL Plan and the Noteholder Plan seek to address the flaws identified by the Bankruptcy Court in the Opinion and resubmit otherwise confirmable plans, the Bankruptcy Court would be required to select one plan to confirm.  See Section 1129(c). The Bankruptcy Court stated that, given those options, it would select the DCL Plan.

10.     On April 17, 2012, the proponents of the DCL Plan filed their Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (the "Fourth Amended DCL Plan").  A hearing on confirmation of the Fourth Amended DCL Plan was held on June 7, 2012 and concluded on June 8, 2012.

---

[1]     The DCL Plan is supported by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, Angelo, Gordon & Co., and JPMorgan Chase Bank (the "DCL Plan Proponents").  The Noteholder Plan is supported by Aurelius Capital Management, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York and Wilmington Trust Company (the "Noteholder Plan Proponents").

11.     On July 23, 2012, the Bankruptcy Court entered the Order Confirming Fourth

Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by

the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management,

L.P., Angelo Gordon & Co., L.P., and JPMorgan Chase Bank, N.A (the "Confirmation Order").

As described in more detail below, the Confirmation Order was subsequently appealed.

## COMPENSATION PAID AND ITS SOURCES

12.     All services for which compensation is requested by Chadbourne were performed

for or on behalf of the Committee.

13.     During the Application Period, Chadbourne has received no payment and no

promise of payment from any source for services rendered or to be rendered in any capacity

whatsoever in connection with the matters covered by this Application.  There is no agreement

or understanding between Chadbourne and any other person, other than members of the firm,

for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

14.     The fee statement for the Application Period is attached hereto as Exhibit A.  This

statement contains daily time logs describing the time spent by each attorney and

paraprofessional for this period.  To the best of Chadbourne's knowledge, this Application

complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the

Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2

(the "Guidelines"), and the Compensation Order.

## SUMMARY OF SERVICES

15.     As set forth in the detailed statement of fees attached hereto as Exhibit A, fees

incurred by Chadbourne during the Application Period total $534,306.75.  The services

rendered by Chadbourne during the Application Period are grouped into specific project

categories as set forth in Exhibit A.  The attorneys and paraprofessionals who rendered services

relating to each category are identified, along with the number of hours for each individual and

the total compensation sought for each category.

16.     The following is a summary of the activities performed by Chadbourne attorneys

and paraprofessionals during the Application Period, organized by project category.

A.     **Bankruptcy General (Matter 002)**

Fees: $11,326.00          Total Hours:   24.00

17.     During the Application Period, Chadbourne devoted numerous hours to the

fulfillment of its professional duties and responsibilities in connection with the administration

of these Chapter 11 cases including: (i) meetings with and addressing the inquiries of the

Debtors and the Debtors' professionals, other Committee professionals, the United States

Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence,

pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court

conferences on behalf of the Committee; and (iv) disseminating information to the Committee

and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks

account in order to provide a repository for memoranda and pleadings readily accessible by

members of the Committee.

18.     Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**B.     Committee Meetings (Matter 003)**

Fees:  $9,711.00            Total Hours:    13.80

19.     Regular meetings of the Committee (the "Committee Meetings") were held during the Application Period to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to key issues.   In particular, the Committee and its professionals continued to review and address pending motions, litigation matters, and provide updates and discuss the plan confirmation process.

20.     Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' Chapter 11 cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among

other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

**C.    Creditor Communications (Matter 004)**

   Fees: $1,047.50    Total Hours:   2.10

  21.  Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

**D.    Business Operations (Matter 007)**

   Fees: $49,632.00    Total Hours:   75.00

  22.  During the Application Period, professionals from Chadbourne's Communications Media and Technology ("CMT") Group continued their efforts to obtain FCC approval of the Debtors' FCC exit applications.  Chadbourne's CMT attorneys performed legal research and analyzed the potential impact of the appeal process (as defined in Section K) on the exit applications.   Further, Chadbourne reviewed supplemental objections to the exit applications filed with the FCC and reviewed and commented on a proposed response to same. Chadbourne's CMT and bankruptcy attorneys participated in frequent correspondence and conferences with FCC staff, the Debtor's FCC counsel and the other DCL Plan Proponents to discuss the bankruptcy appeal process and its affect on obtaining FCC approval.   In connection therewith, Chadbourne prepared a detailed analysis for the Committee outlining the remaining

hurdles to the FCC's approval of the exit applications, the Committee's next steps with the FCC

and the estimated timing for FCC approval.

23.     In addition, Chadbourne also continued to review weekly operations and financial

reports prepared by the Committee's financial advisors.

**E.     Claims Administration/Bar Date (Matter 009)**

Fees:  $5,734.00                  Total Hours:  11.40

24.     During the Application Period, Chadbourne attorneys expended further time in

reviewing a number of objections to claims filed by the Debtors.  Efforts included review of the

Debtors (i) Fifty-Seventh Omnibus (Substantive) Objection to Claims; (ii) Fifty-Eighth

Omnibus (Substantive) Objection to Claims; and (iii) Fifty-Ninth Omnibus (Non-Substantive)

Objection to Claims.  Chadbourne attorneys preformed a review of the facts as well as the bases

and processes followed by the Debtors in pursuing the objections.  Following consultation with

the Committee's financial advisors regarding their analysis, Chadbourne summarized its

analyses and recommendations in memoranda to the Committee.

**F.     Fee/Retention Applications (Matter 010)**

Fees:   $11,163.00                Total Hours:  28.20

25.     Chadbourne expended further time during the Application Period in compliance

with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparing and filing

Chadbourne's forty-third monthly fee application.

26.    During the Application Period, further efforts were expended in reviewing and responding to professional retention/employment matters.   Specifically, Chadbourne reviewed the Debtors' application authorizing the retention of Paul, Weiss, Rifkind, Wharton & Garrison, as special counsel for certain financing matters.  The Debtors stated the retention was for the limited purpose of advising the Debtors on transactional and financial matters related to the Debtors' exit financing facilities.   Based on its review and analysis of the relief requested, Chadbourne, working with the Committee's local counsel, provided a written report to the Committee.

27.    In continuance of an ongoing process, Chadbourne also expended time on the treatment of ordinary course professionals.  These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of related spending and monthly fee caps.

**G.    Travel (Matter 018)**

Fees:  $1,512.75              Total Hours:  3.90

28.    During the Application Period, Chadbourne travelled to Wilmington, Delaware to attend an omnibus hearing at the Bankruptcy Court.  The hours reflect non-working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

**H.    Review of Pre-Petition Financings (Matter 019)**

Fees:  $43,549.00         .    Total Hours:  77.20

29.    Pursuant to the confirmation order, to facilitate the implementation of the Fourth Amended DCL Plan, the Committee and Litigation Trustee entered into an agreement  (the

"Privilege Transfer Agreement") whereby the Committee agreed to turn over documents and information relevant to the claims the Trustee will be pursuing, including privileged work product reflecting the Committee's assessment of the LBO transaction and the claims arising from it. However, the Committee will not share documents that are unrelated to the LBO-related claims (for example, privileged documents related to plan confirmation issues). During the Application Period, Chadbourne continued the process of collecting, reviewing and identifying relevant documents for submission to the Trustee that satisfy the above-referenced criteria.

## I.    Shareholder Claims (Matter 020)

Fees:  $9,005.50          Total Hours:  15.50

30.    During the Application Period, Chadbourne attorneys continued to work with the Committee's special counsel and the Committee's local counsel to address the Rule 11 motion for sanctions (the "Motion") filed by Sam Zell, EGI, EGI-TRB, and Sam Investment Trust (the "Zell Parties"). The Motion seeks dismissal of six of the nine counts in *FitzSimons* against the Zell Parties, and seeks reimbursement for the fees and costs of bringing the Motion. In connection therewith, Chadbourne reviewed and commented on a memorandum prepared by Committee counsel setting forth an analysis of the counts challenged in the Motion and a proposed response to same. In connection therewith, Chadbourne commenced polling of the individual Committee members on the proposed response to the Motion.

**J.**     **Plan Litigation (Matter 021)**

Fees:  $391,626.00          Total Hours:  543.00

31.     During the Application Period, Chadbourne attorneys continued to be engaged in advising the Committee with respect to confirmation related appeals.  Chadbourne attorneys participated in frequent discussions with the Committee's co-counsel and the DCL Plan Proponents regarding related strategies.

32.     Following the Bankruptcy Court's entry of the Confirmation Order, Aurelius and the Senior Indenture Trustees (Law Debenture and Deutsche Bank) (the "Plan Adversaries") filed notices of appeals to the Confirmation Order and also filed motions seeking to stay the Confirmation Order pending resolution of their appeals (the "Stay Motions").  Both Stay Motions seek stays without any requirement to post a bond.  Law Debenture and Deutsche Bank also filed papers which seek direct certification of their appeal to the Third Circuit Court of Appeals (the "Direct Appeal Motion").   Working with the other DCL Plan Proponents, Chadbourne attorneys researched, reviewed and commented on objections to the Stay Motions and Direct Appeal Motion as well as declarations in support.  The objection to the Stay Motions argues that no stay should be granted, but that if the Bankruptcy Court is willing to consider a stay, the Court should require a bond of at least $3 billion based on a potential two-year stay period.

33.     On August 17, 2012, the Bankruptcy Court heard arguments on the Stay Motions and the Direct Appeal Motion.  Chadbourne participated at the hearing on behalf of the Committee and provided argument with respect to conditioning a stay pending appeal on the posting of a bond and provided further argument on the direct certification issue.  At the

conclusion of the hearing, the Bankruptcy Court took the matters under advisement and obliged

the request of the Plan Adversaries that parties be permitted to submit two-page reply letters

regarding the direct appeal issue.  Accordingly, Chadbourne prepared and filed a letter on

behalf of the DCL Plan Proponents in support of their position on the direct appeal issue.

Chadbourne also reviewed and analyzed the letter response filed by the Plan Adversaries.

34.    On August 22, 2012, the Bankruptcy Court entered its opinion and order (i)

denying certification for direct appeal to the Third Circuit, and (ii) granting the request that stay

pending appeal be conditioned upon posting of a supersedeas bond in the amount of

$1.5 billion.  On August 24, 2012, both Aurelius and the Senior Indenture Trustees filed

emergency motions with the District Court seeking an order extending the stay and modifying

the Bankruptcy Court order regarding stay and supersedeas bond.  The District Court promptly

responded in its August 27, 2012 order denying the emergency motion of Aurelius.  In

summarily dispensing with Aurelius's arguments, the District Court squarely declared that "the

Bankruptcy Court's order was appropriate . . . with regard to the duration of the stay and the

supersedeas bond."   The District Court has not yet ruled on the similar motion filed by the

Senior Indenture Trustees.  Accordingly, Chadbourne and the other DCL Plan Proponents

expended time drafting, revising and filing the DCL Plan Proponents' opposition to the

emergency motion of the Senior Indenture Trustees.

35.    Aurelius immediately filed a notice of appeal from the District Court Order with

the U.S. Court of Appeals for the Third Circuit.  The next day, the clerk of the Third Circuit

issued an order suggesting a lack of jurisdiction over Aurelius' appeal but requiring that the

jurisdictional issue be addressed in Aurelius' emergency motion for a stay (filed later that

evening) and in any responses to the motion.  Accordingly, Chadbourne and the other DCL

Plan Proponents began drafting an appropriate response.

### ACTUAL AND NECESSARY EXPENSES

36.    A summary of the actual and necessary expenses and daily logs of expenses

incurred by Chadbourne during the Application Period in the amount of $6,129.87 is attached

hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For

purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page.

Chadbourne customarily charges its clients $1.25/per page for out-going facsimile

transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

37.    Due to the national nature of the Debtors' business and the Committee's

participation in weekly meetings by telephone, long distance telephone and conference call

services have been required.  In accordance with the Guidelines, in seeking reimbursement for

long distance telephone charges, Chadbourne currently charges clients its approximate actual

cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call

services and requests reimbursement only for the amount billed to Chadbourne by the third-

party vendors.

38.    With respect to legal research expenses, Chadbourne has entered into flat-fee

contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order

to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis

and Westlaw are allocated among those clients based on the actual number and scope of

searches conducted on behalf of those clients.

39.     The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

40.     In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

41.     Attorneys and paraprofessionals of Chadbourne have expended a total of 794.10 hours in connection with the matter during the Application Period.  The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto.  These are Chadbourne's normal hourly rates for work of this character.  The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $534,306.75.

42.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

43.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the

services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period August 1, 2012 through August 31, 2012:  (a) authorizing compensation in the amount of $534,306.75 (80% of which equals $427,445.40) for professional services rendered and reimbursement of expenses incurred in connection therewith in the amount of $6,129.87 for a total of $540,436.62; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:    September 24, 2012
       New York, New York

                                     CHADBOURNE & PARKE LLP

                                     By: _____
                                         Douglas E. Deutsch
                                         (A Member of the Firm)

                                     Chadbourne & Parke LLP
                                     30 Rockefeller Plaza
                                     New York, New York  10112
                                     (212) 408-5100

                                     Co-Counsel to The Official Committee of
                                     Unsecured Tribune Company, et al.

## VERIFICATION

STATE OF NEW YORK      :
                                          :  ss:
COUNTY OF NEW YORK  :

Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

(a)       I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been

admitted to the bar of the State of New York since 1997.

(b)       I am familiar with the work performed on behalf of the Committee by the lawyers

in the firm.

(c)       I have reviewed the foregoing Application and the facts set forth therein are true

and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed

Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

_____
Douglas E. Deutsch

Sworn to before me this
24th day of September 2012

_____
Francisco Vazquez
Notary Public, State of New York
No. 31-6013920
Qualified in New York County
Commission Expires December 27, 2014

CPAM: 4907150.1