# EXHIBIT

# A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Related to Docket No. 5115 |

**ORDER APPROVING MOTION OF COURT-APPOINTED EXAMINER, KENNETH N. KLEE, ESQ., FOR ORDER (I) DISCHARGING EXAMINER; (II) GRANTING RELIEF FROM THIRD-PARTY DISCOVERY; (III) APPROVING THE DISPOSITION OF CERTAIN DOCUMENTS AND INFORMATION; AND (IV) GRANTING CERTAIN ANCILLARY RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); FORUM Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Upon consideration of the Motion of Kenneth N. Klee, Esq. ("Examiner"), by and through his attorneys, for an Order granting the *Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq., for Order (I) Discharging Examiner; (II) Granting Relief from Third-Party Discovery; (III) Approving the Disposition of Certain Documents and Information; and (IV) Granting Certain Ancillary Relief* (the "Motion"); and, after due deliberation and sufficient cause appearing therefore; it is hereby ORDERED[2]:

1. The Motion is GRANTED.

2. The Examiner is discharged from his duties under the Examiner Order effective on August 20, 2010, and his appointment as Examiner is hereby terminated. The discharge of the Examiner is without prejudice to the entry of an order, in the future, reengaging the Examiner and the Examiner's Professionals to provide such services as the Court deems necessary and appropriate.

3. Notwithstanding paragraph 2 above, the Examiner shall respond in writing to reasonable written inquiries from the Parties concerning the Investigation and the Report, and such inquiries and responses will be posted on the Examiner's secure website for access and review by all Parties. Further, the Examiner will respond to reasonable inquiries from the Parties concerning documents received, maintained or created during the Investigation, and will otherwise assist and cooperate with the estate representatives and the Parties in the manner provided in this Order.

4. The Examiner and his Professionals shall maintain all Depository Documents, Third-Party Documents, Transcripts and Privileged Materials (collectively the "Complete

---

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion. The term "Parties" as used in this Order shall include Aurelius Capital Management, LP

596980.2 8/26/10

Examiner Record") for a period of two years from the date of this Order (the "Initial Retention Period"), after which, the Examiner and his Professionals may destroy any such materials without further order of the Court. At least thirty (30) calendar days prior to the last day of the Initial Retention Period, the Debtors, or a successor estate representative as applicable, shall serve and file a notice upon all Parties, the Office of the United States Trustee, and all parties requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, reminding them of the Examiner's ability to dispose of the Complete Examiner Record after the Initial Retention Period. Any party seeking to extend the Initial Retention Period, must file a motion requesting such relief prior to the expiration of the Initial Retention Period, with notice and an opportunity to object provided to all Parties, the Office of the United States Trustee, the estate representatives, the Examiner and his Professionals, and all parties requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Court will schedule a prompt hearing on any such motion, and the burden of extending the Initial Retention Period shall rest with the movant.

5. For purposes of clarity, the Complete Examiner Record includes the notes taken or created by the Examiner and his Professionals regarding non-transcribed witness interviews. It is the Examiner's position that such notes constitute attorney-work product and are privileged from disclosure to any of the Parties. It is the Debtors' position that notes taken by the Examiner and his Professionals that purport to record what the interviewee said do not constitute work product or otherwise privileged material. All issues related to whether or not such materials are protected from disclosure by the attorney work-product doctrine, or otherwise, and all other issues relating to claims of privilege (specifically including claims unrelated to interviews that

were not professionally transcribed), are expressly reserved, and the Court makes no ruling on this issue at this time.

6. Neither the Examiner nor his Professionals shall have or incur any liability with respect to (a) any act taken or omitted to be taken, (b) any statement or representation arising out of, relating to, or involving in any way, the Investigation, or (c) any report, pleading or other writing filed by the Examiner or the Examiner's Professionals in connection with, related to, or arising out of the Debtors' Chapter 11 Cases including, without limitation, the Report. Nothing contained in this paragraph, however, shall be construed to limit the liability of the Examiner or the Examiner's Professionals for violation of any applicable disciplinary rule or code of professional conduct or for any acts of willful misconduct or gross negligence.

7. Except as otherwise provided herein, the Examiner and his Professionals are relieved from any duty to respond, object or move for a protective order in response to any formal or informal discovery process, except that this prohibition shall not apply to (i) requests for documents, materials or information that the requesting party has demonstrated to this Court, upon notice to and an opportunity to object by the Examiner, cannot be reasonably obtained from any other source, (ii) production required in response to an order of a federal district court presiding over a criminal proceeding in which a party in interest is a defendant, which finds that the Examiner or his Professionals are obliged to produce documents or other materials to said defendant under the principles of *Brady v. Maryland*, 373 U.S. 83 (1963), as embodied in subsequent caselaw and the Federal Rules of Criminal Procedure, and (iii) discovery of information related to compensation applications filed by the Examiner or his Professionals.

8. The Examiner and his Professionals shall be entitled to reimbursement from the Debtors, their estates, and their successors in interest, for their reasonable fees and actual costs

after the date of the entry of this Order for (a) maintaining the Complete Examiner Record; (b) responding to reasonable inquiries as set forth in paragraph 3 above; (c) responding to any formal or informal discovery requests served on the Examiner or the Examiner's Professionals; (d) the preparation and prosecution of interim and final fee applications; and (e) such other actions undertaken by the Examiner or the Examiner's Professionals at the request or direction of the Court. To the extent that the Examiner and his Professionals are entitled to payment or reimbursement of their reasonable fees and costs incurred subsequent to the time period covered by their final fee applications, the Examiner and/or his Professionals shall present invoices to the Debtors, or a successor estate representative, as applicable, with copies to the Official Creditors' Committee and United States Trustee, with sufficient detail to determine the basis for the fees and expenses incurred (the "Notice Parties"). Absent receipt by the Examiner and his Professionals of a written objection to any such invoice within fourteen (14) calendar days, the Debtors are authorized to pay or reimburse the Examiner and his Professionals without the need to file fee applications and without the need for Court approval; provided, however, that (i) if a timely objection is raised to such invoice and the matter cannot be resolved consensually, the objection shall be presented to the Court for resolution and (ii) notwithstanding the foregoing, if any invoice exceeds $100,000, the Examiner and/or his Professionals shall be required to file an application and obtain approval from the Court, on reasonable notice to the Notice Parties, prior to payment.

9. The final fee applications of the Examiner and the Examiner's Professionals may be filed by August 31, 2010. Objections, if any, to any final fee applications filed by August 31, 2010, must be filed by September 21, 2010. A hearing to consider the final fee applications filed by August 31, 2010 will be held on October 22, 2010 at 2:00 p.m. EDT. To the extent that the

Examiner and/or any of his Professionals are unable to file their final fee applications by August 31, 2010, counsel shall contact the Court's Chambers to set an objection deadline and hearing for any such applications.

10. In the event of a conflict between this Order and any provision of a plan of reorganization confirmed in the Debtors' cases, this Order shall control as it pertains to the rights, duties and obligations of the Examiner and the Examiner's Professionals.

11. This Court shall retain jurisdiction to resolve professional compensation issues for the Examiner or his Professionals in connection with the Debtors' cases.

12. This Order shall survive confirmation of any plan or plans in the Debtors' bankruptcy cases, as well as the conversion of any of the Debtors' cases to cases under Chapter 7 of the Bankruptcy Code.

13. The Court reserves jurisdiction as to all matters related to and arising from the implementation, interpretation and enforcement of this Order including, without limitation, any requested revision or modification thereof.

Dated: Wilmington, Delaware
_____, 2010

Kevin J. Carey
United States Bankruptcy Judge