# VOLUNTARY RESIGNATION AGREEMENT

This Voluntary Resignation Agreement ("Agreement") is entered into by and between Pablo Alvarez, on behalf of himself, his agents, assignees, successors, heirs, executors, administrators, beneficiaries, trustees, and personal and legal representatives (collectively, Mr. Alvarez) and KTLA, INC. (the "Company").

WHEREAS, Mr. Alvarez desires to resign his employment from the Company; and

WHEREAS, Mr. Alvarez and the Company desire to enter into this Agreement setting forth the terms of Mr. Alvarez's voluntary resignation from the Company and a release of claims;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Company and Mr. Alvarez acknowledge and agree as follows:

1. *Separation Due to Resignation.* Mr. Alvarez resigns his employment effective as of the close of business on March 29, 2008 (the "Voluntary Resignation Date"). After the Voluntary Resignation Date, he shall not have authority to represent or bind the Company, and he shall not act or convey the impression that he is acting on the Company's behalf.

2. *Voluntary Resignation Benefits*. In consideration of the covenants set forth herein, provided that Mr. Alvarez timely returns a signed and dated copy of this Agreement to the Company within twenty-one days of receiving this Agreement or within five business days of the Voluntary Resignation Date, whichever is later, *but not before the Voluntary Resignation Date*, and provided that Mr. Alvarez does not revoke this Agreement following his execution and delivery of the Agreement as provided herein, the Company shall provide Mr. Alvarez with the following:

    (a) *Salary Continuation*: The Company shall retain Mr. Alvarez on its payroll for 52 weeks and pay him salary continuation through and including March 27, 2009 (the "Salary Continuation Date"), via bi-weekly payments of $2244.85, less applicable deductions and taxes, made at the time salary payments customarily are made. The gross amount of salary continuation shall not exceed $58,366.00; and

    (b) *Benefits:* Excluding short-term disability, long-term disability, 401(k) participation, business travel accident insurance and commuter reimbursement, Mr. Alvarez will continue to participate through the Salary Continuation Date, under the same terms and conditions as are then applicable to employees of the Company, in those benefits in which he participated as of the Voluntary Resignation Date, provided that he timely pays any required contributions for these benefits through authorized payroll deductions. Mr. Alvarez may choose to continue Flexible Spending Account ("FSA") contributions, if applicable, through the Salary Continuation Date. FSA-covered expenses may be incurred through the earlier of the Salary Continuation Date or Mr. Alvarez's election to discontinue contributions.



3. *Vacation Payment.* Mr. Alvarez will not accrue vacation pay after the Voluntary Resignation Date. Earned but unused vacation as of the Voluntary Resignation Date, if any, will be paid to Mr. Alvarez separate and apart from this Agreement and will not be contingent on signing this Agreement.

4. *Complete Agreement and Permanence.* Other than as set forth in this Agreement or in a defined benefit plan, if applicable, Mr. Alvarez will not be entitled to any salary, bonuses, benefits, perquisites, or other compensation whatsoever after the Voluntary Resignation Date. This Agreement constitutes the entire agreement and understanding between Mr. Alvarez and the Company regarding the separation of his employment with the Company. This Agreement totally replaces and supersedes any and all prior agreements, arrangements, representations and understandings between him and the Company, written or oral, express or implied. This Agreement cannot be amended, modified, supplemented or altered except by written amendment signed by him and an authorized representative of the Company. To the extent permitted by law, this Agreement shall be binding upon and inure to the benefit of the successors, representatives and assigns of the parties.

5. *Waiver and General Release of Claims*: (a) Excluding only claims which cannot be waived by law, Mr. Alvarez releases the Company and its parents, subsidiaries, predecessors, successors, affiliates, officers, directors, agents, shareholders, attorneys, employees, employee benefit plans, plan administrators, insurers, assignees, fiduciaries, administrators, trustees, and legal representatives, both past and present (collectively, the "Released Parties") from any and all claims, contracts, demands, damages, and other liabilities of whatever kind, whether now known or unknown, suspected or unsuspected, arising out of or in any way connected with his dealings with the Released Parties, his employment with the Company, the separation of his employment with the Company or advance notice of separation of employment, the resignation of his employment with the Company, or any other claim whatsoever to the date on which he signs this Agreement.

(b) This release includes, without limitation, any and all claims under the following statutes, as amended: Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act ("ADEA"), the Employee Retirement Income Security Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Illinois Human Rights Act, the Cook County Human Rights Ordinance, the Chicago Human Rights Ordinance, the California Fair Employment and Housing Act, the California Family Rights Act, any claims or potential claims under California Labor Code Section 132a, and any other federal, state or local human rights, civil rights, wage and hour, pension or labor law, rule and/or regulation, any public policy, contract or tort claim (regardless of whether of statutory or common law origin), or any other action against the Released Parties based upon any conduct or omission up to and including the date on which Mr. Alvarez signs this Agreement.

Nothing in this Agreement shall preclude Mr. Alvarez from exercising his rights to receive (i) any sums or benefits to be paid or provided under this Agreement, or (ii) any vested,

accrued benefits to which he is (or becomes) otherwise entitled (collectively, the "Exempted Claims").

**MR. ALVAREZ UNDERSTANDS AND AGREES THAT, OTHER THAN THE EXEMPTED CLAIMS AND CLAIMS THAT CANNOT BE WAIVED BY LAW, HE IS WAIVING AND RELEASING ANY AND ALL CLAIMS AGAINST THE RELEASED PARTIES (INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT) TO THE DATE OF THIS AGREEMENT IN EXCHANGE FOR CONSIDERATION TO WHICH HE IS NOT OTHERWISE ENTITLED.**

(c)  Mr. Alvarez agrees that he waives any and all entitlement to relief, including, but not limited to, any monetary damages and equitable relief, with respect to any claim or cause of action released under this Paragraph (or any of its subparagraphs).

(d)  Mr. Alvarez acknowledges that nothing in this Paragraph or any of its subparagraphs shall be construed to prevent him from filing a charge with, or participating in any investigation conducted by, the U.S. Equal Employment Opportunity Commission ("EEOC") or applicable state agency, or to prevent any challenge by him to the waiver and release of any claim under the ADEA.

(e)  Mr. Alvarez agrees that his waiver and release of rights under this Agreement is knowing and voluntary and in compliance with the Older Workers Benefit Protection Act of 1990, and he covenants and agrees that:

1. He has been given 21 days in which to consider, sign and return this Agreement to the Company;
2. He is hereby being advised in writing to consult with an attorney concerning this Agreement to ensure he fully understands the significance of all the terms and conditions of this Agreement; and
3. He will have 7 days from the date of signing to revoke this Agreement if he so desires. Any revocation must be in writing, signed by him and must be received by Barbara Lopez Nash, <u>5800 Sunset Blvd. Los Angeles, CA 90028</u> fax 323-460-5527, within the revocation period to be deemed effective.

6. *Waiver*. Mr. Alvarez is aware of California Civil Code Section 1542, which provides as follows:

" A *general* release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

To the extent, if any, which California Civil Code Section 1542 might be applicable, Mr. Alvarez knowingly and intentionally waives and relinquishes all rights thereunder. In connection with such waiver and relinquishment, Mr. Alvarez acknowledges that he is aware that he may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which he now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is Mr. Alvarez's intention to fully, finally and forever release all such matters, and all potential claims relative thereto, which do now exist, may exist or heretofore have existed against the Company.

7. *Non-Disclosure*. Mr. Alvarez will keep confidential all confidential and trade secret information (hereinafter "Confidential Information") he acquired about any of the Released Parties including, without limitation, the Company's finances, systems, operations, dealings, assets, capabilities, plans, strategies, personnel and compensation, pricing, customer lists, and mailing information. Mr. Alvarez will not disclose Confidential Information to anyone until, if ever, such information becomes public knowledge or as required in a formal legal proceeding.

8. *Confidentiality*. Except as may be required by law, neither Mr. Alvarez nor any person acting by, through, or in concert with him, shall directly or indirectly, publish, disseminate, disclose, or cause or permit to be published, disseminated, or disclosed to any individual or entity, any information relating to the existence or content of this Agreement or the circumstances and discussions that led up to it, including, without limitation, the fact or amount of payment provided herein. This paragraph shall not be construed, however, to prevent Mr. Alvarez from disclosing information to any attorney, accountant or tax advisor with whom he may consult for the purpose of obtaining professional advice or services, or to any governmental taxing authority, or to his spouse.

9. *Injunctive Relief and Attorneys' Fees*. Because monetary relief alone cannot adequately remedy a violation of Paragraphs 7 or 8, the Company shall be entitled to injunctive or other equitable relief to prevent any such violation and, if relief is pursued, the Company shall be entitled to recover its reasonable attorneys' fees and costs incurred should it prevail. The Company's resort to such relief will not waive any other rights it may have to damages or other relief it may have.

10. *Cooperation*. Mr. Alvarez will continue to reasonably cooperate with the Company in connection with any and all matters that have arisen or may arise out of events that occurred during his employment.

11. *Severability.* If any provision of this Agreement is deemed invalid or unenforceable for any reason by a court or other tribunal of competent jurisdiction, it shall not be stricken in its entirety or held void or unenforceable, but rather shall be deemed modified to make it enforceable to the maximum extent legally permissible, and the remaining provisions of this Agreement shall continue to be in full force and effect.

12. *Company Property.* Within five days of the Voluntary Resignation Date, Mr. Alvarez will return all equipment and other property in his possession belonging to the Company, including, without limitation, all cellular telephones, computers, pagers, keys, key cards, tangible proprietary information, documents, books, records, reports, contracts, lists, computer equipment, credit cards, telephone cards, computer disks (or other computer-generated files or data), software, or copies thereof, created on any medium, prepared or obtained by him or the Company in the course of or incident to his employment with the Company.

13. *Discontinuation of Salary and Benefits Continuation.* If Mr. Alvarez becomes reemployed by any of the Released Parties, the salary and benefit continuation provided for in Paragraph 2 shall cease on the date that Mr. Alvarez is put on the payroll in the new position and Mr. Alvarez shall not be entitled to any further salary continuation and shall receive such benefits as are then provided by the hiring entity.

14. *Non-Disparagement.* Mr. Alvarez will not in any manner whatsoever denigrate, disparage, or otherwise convey or cause to be conveyed an unfavorable impression of any of the Released Parties to a third party or parties. Nothing in this Paragraph, however, shall be construed to prevent Mr. Alvarez from providing truthful testimony or information to a court or governmental agency, including the EEOC or applicable state agency.

15. *Non-Admissions.* Nothing in this Agreement constitutes or shall be interpreted as an admission of liability or wrongdoing on the part of Mr. Alvarez or any of the Released Parties.

16. *Non-Use.* This Agreement may not be used as evidence in any subsequent proceeding of any kind (without the written consent of all other parties) except one which any party institutes alleging a breach of this Agreement.

17. *Recitals.* The recitals set forth above are intended by the parties to evidence their intent in executing this Agreement and to describe the circumstances surrounding its execution. The parties intend that this Agreement be construed in a manner consistent with the recitals. Accordingly, these recitals are, by express reference, made a part of the covenants herein, and this Agreement shall be construed in this light.

18.  *Knowing and Voluntary Execution*.  Mr. Alvarez covenants that he is legally and mentally competent to enter into this Agreement, and that he is entering into this Agreement knowingly, voluntarily and with full knowledge of its significance and the rights he is waiving, that no other promises or representations whatsoever have been made to induce Mr. Alvarez to sign this Agreement and that he has not been coerced, threatened, or intimidated into signing the Agreement.

PABLO ALVAREZ                                KTLA, INC.


_____          By_____

_____, 2008                        _____, 2008

6