# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. 12074**<br>**Hearing Date: November 7, 2012 at 1:00 p.m.**<br>**Objection Deadline: October 31, 2012 at 4:00 p.m.** |

## DEBTORS' MOTION FOR AN ORDER IN AID OF IMPLEMENTATION OF SENIOR NOTEHOLDER DISTRIBUTIONS PURSUANT TO CONFIRMED DCL PLAN

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a

"Debtor" and, collectively, the "Debtors") hereby file this motion (the "Motion") seeking entry

of an order, pursuant to sections 105 and 1142(b) of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 3021 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Bankruptcy Rules") and applicable sections of the DCL Plan and Confirmation Order (as both are defined herein), requesting entry of an order in the form attached hereto (the "Proposed Order"), (i) approving a procedure with respect to the Senior Noteholder Claims[2] held by Morgan Stanley Capital Services Inc. ("MSCS") for its own account until it is determined that such Senior Noteholder Claims are Allowed Claims and entitled to a distribution pursuant to Section 3.2.5(c) of the DCL Plan; and (ii) directing the Indenture Trustees (as defined herein) to provide the Debtors with their fee and expense claim calculations so that the Debtors can make calculations necessary for distributions to the Class of Senior Noteholder Claims. In support of this Motion, the Debtors respectfully state as follows:

## Preliminary Statement

1.      The Debtors seek the Court's assistance in resolving two procedural issues related to distributions to be made to Senior Noteholders under the confirmed DCL Plan. The first issue relates to a procedure to ensure that MSCS does not receive a distribution on account of any of the disputed Senior Noteholder Claims that it holds. For the last three months, in accordance with Section 3.2.5(c) of the DCL Plan, the Debtors, the Creditors' Committee, Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee under certain Senior Notes Indentures (the "DBTCA Indenture Trustee"), and MSCS (collectively, the "Parties") have discussed the potential mechanisms for accomplishing that objective but, to date, have not been able to reach agreement. This Motion seeks the Court's approval of a set of appropriate procedures.

2.      The second issue relates to the amount of the Indenture Trustees' asserted claims for fees and expenses. In order to calculate each Senior Noteholder's pro rata share of the

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the DCL Plan (as defined herein).

46429/0001-8846517v7

overall Senior Noteholder distribution, it is necessary to know the amount of the Indenture

Trustees' asserted claims.  Despite the request of the Debtors, however, the Indenture Trustees

have not committed to a time or process for providing the Debtors with that information.  This

Motion seeks an order directing the Indenture Trustees to do so upon notice that the Federal

Communications Commission (the "FCC") has issued the approvals and waivers necessary for

the Effective Date of the DCL Plan to occur.

       3.      This requested relief is appropriate to ensure that Senior Noteholders receive

timely distributions under the DCL Plan.  As the Court is aware, the Debtors intend to implement

the DCL Plan as soon as practicable following receipt of the FCC approvals and waivers, and to

make distributions promptly following the Effective Date.  The procedural issues described

above stand to prevent the Debtors from making distributions to Senior Noteholders at the same

time that they make distributions in respect of other classes of claims under the DCL Plan.

       4.      The purpose of this Motion is to finalize procedures that will enable Senior

Noteholders to receive their distributions as rapidly as possible.  The Debtors generally are

agnostic with respect to the specifics of the procedures themselves, and will work with the

Parties to reach agreement on acceptable procedures between now and the hearing on this

Motion.  The point is simply to have procedures in place so that Senior Noteholders can receive

distributions contemporaneously with, or as close in time as possible to, the distributions made to

all of the Debtors' other creditors.[3]

---

[3] This Motion, and the proposed procedures, implicate only the distributions to Senior Noteholders.  The Debtors intend to make distributions to other creditors promptly upon plan effectiveness, regardless of whether or not the issues relating to Senior Noteholder distributions have been resolved by that time.

## Status of Case and Jurisdiction

5.     On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[4] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.

6.     The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.     On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Creditors' Committee").

8.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Articles III and XII of the DCL Plan and paragraph IX of the Confirmation Order.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105 and 1142(b) of the Bankruptcy Code and Bankruptcy Rule 3021.

## General Background to the Motion

*Confirmation of the DCL Plan*

9.     On July 23, 2012, the Court entered the Order (the "Confirmation Order") Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "DCL Plan") [Docket No. 12074].

---

[4]  Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

4

10.     The Debtors anticipate that the DCL Plan will become effective following receipt of the requisite FCC approvals and waivers (the "FCC Approval") and they intend to make the distributions contemplated thereunder as promptly as practicable after the Effective Date.

**MSCS Senior Noteholder Claims**

11.     As of the Petition Date, MSCS held $38,365,000 in outstanding principal amount of the Tribune Company's 7.5% Debentures due 2023 (the "Designated Debentures"). The 7.5% Debentures due 2023, including the Designated Debentures, fall within the definition of "Senior Noteholder Claims" under the DCL Plan. MSCS asserts that, after the Petition Date, it properly setoff claims due to it by Tribune Company on account of the Designated Debentures against obligations it owed to Tribune under a certain swap agreement (the "MSCS Setoff"). Accordingly, MSCS maintains that it does not now own any Designated Debentures for its own account and that it does not have any other Senior Noteholder Claims. Based upon available information and confirmation by MSCS, however, the Designated Debentures remain in the name of MSCS at The Depository Trust Company ("DTC").

12.     MSCS filed proofs of claim against Tribune Company asserting various claims arising from and relating to the terms and conditions of the swap agreement referred to above, the Designated Debentures, and certain other claims.

13.     The Creditors' Committee, on behalf of the Debtors' chapter 11 estates, filed a complaint challenging the validity of the MSCS Setoff and seeking to equitably subordinate MSCS's claim (the "Shareholder/Advisor Action"), styled *The Official Committee of Unsecured Creditors of Tribune Company, on behalf of Tribune Company, et al. v. Dennis J. FitzSimons, et al.*, pending in the United States District for the Southern District of New York (the "District Court").

46429/0001-8846517v7

14.     Under the DCL Plan, because Morgan Stanley Claims and the

Shareholder/Advisor Action are Preserved Causes of Action, the Litigation Trust has authority to

object to MSCS's claims and to prosecute the Shareholder/Advisor Action.  See DCL Plan at

Article XIII.

15.     Due to the pendency of the Shareholder/Advisor Action, claims on account of the

Designated Debentures are Disputed Claims under the DCL Plan.

***Relevant DCL Plan Provision***

16.     Section 3.2.5(b) of the DCL Plan provides, in part, that the Senior Noteholder

Claims shall together be deemed Allowed in the aggregate amount of $1,283,055,743.77 (a) plus

the amount (if any) of any other Claims arising under or evidenced by the Senior Notes

Indentures and related documents (such as the fee and expense claims of the Indenture Trustees'

professionals), solely to the extent any such Claims are Allowed and (b) less any Senior

Noteholder claims held by MSCS.

17.     The DCL Plan further provides that: "Reorganized Tribune shall (a) withhold

from the distributions provided for in this Section 3.2.5(c) the amount of any consideration

allocable to the Senior Noteholder Claims held by MSCS and (b) hold such amount in reserve

pending a determination of the allowance of MSCS's Senior Noteholder Claims and MSCS's

entitlement to such distribution."  DCL Plan at Section 3.2.5(c) (emphasis added).  Because

MSCS did not make an election for treatment under the DCL Plan, the applicable reserve will

consist of a Pro Rata share of (a)  $431,041,451 in Distributable Cash, and (b) a Pro Rata share

of the Class 1E Litigation Trust Interests, as set forth in Section 3.2.5(c)(ii) of the DCL Plan.

18.     Pursuant to the DCL Plan, distributions to Holders of Senior Noteholder Claims

will be made by means of book-entry exchange through the facilities of DTC in accordance with

46429/0001-8846517v7

customary practices of DTC.  DCL Plan at Section 7.7.2.  DTC, however, cannot make distributions to Senior Noteholders with the same security held by MSCS without also making a distribution to MSCS.  Accordingly, a process must be implemented to prevent distributions to MSCS while still allowing distributions to the other Senior Noteholders with the same security.

19.    The DBTCA Indenture Trustee initially objected to the proposed mechanics of distributions to holders of Tribune's 7.5% Debentures due 2023, and argued that the DCL Plan "should be modified to require that MSCS remove its holdings from DTC prior to any distribution." [Docket No. 11667].  In response to that objection, Section 3.2.5(c) of the DCL Plan was modified to provide that:

> The Debtors, the Creditors' Committee, the applicable Indenture Trustee and MSCS shall work in good faith to agree upon an appropriate procedure, which shall be implemented prior to the Initial Distribution Date, to insure that MSCS does not receive a distribution on account of any Senior Noteholder Claims held by MSCS for its own account unless and until it is determined that such Senior Noteholder Claims are Allowed Claims and entitled to a distribution pursuant to this Section 3.2.5(c), provided, however, if such parties are unable to agree upon an appropriate procedure, upon notice and an opportunity to be heard, the Debtors, the Creditors' Committee, the applicable Indenture Trustee or MSCS may seek an order in aid of confirmation of this Plan resolving any disputes and implementing an appropriate procedure.

### Efforts to Secure Agreement as to the Appropriate Procedure

20.    In June 2012, the Parties commenced discussions to formulate the appropriate procedure to ensure that MSCS does not receive a distribution on account of any Senior Noteholder Claims held by MSCS for its own account unless and until it is determined that such Senior Noteholder Claims are Allowed Claims and entitled to a distribution.  In July 2012, prior to the entry of the Confirmation Order, the Debtors circulated a draft stipulation to the Parties setting forth a procedure for the withdrawal of the Designated Debentures from DTC so that MSCS would not receive a distribution.  Following receipt of the draft stipulation, which the

7

Debtors understand was acceptable in principle to MSCS, the DBTCA Indenture Trustee proposed an alternative procedure (the "Alternative Procedure").

21.     In August 2012, the Parties discussed the Alternative Procedure (as well as a potential third option) and, following a series of conversations leading into September, the Debtors understood the Alternative Procedure to be acceptable in principle to MSCS.  In September, Aurelius Capital Management L.P. ("Aurelius") also became involved in various communications addressing the Alternative Procedure.  On September 20, 2012, the Debtors circulated to the Parties and Aurelius a proposed stipulation that addressed the Alternative Procedure.  Thereafter, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee under a certain Senior Notes Indenture (the "LD Indenture Trustee")[5] became involved in the discussions.  On the eve of filing this Motion, the DBTCA Indenture Trustee provided written comment to the stipulation circulated on September 20.  The revised stipulation, however, remains subject to review and comment by all of the Parties, including the DBTCA Indenture Trustee, and references two operational documents that were not included with the revised stipulation.

22.     The result is that, despite the Debtors' best efforts, the Parties have yet to agree on the specific terms of a procedure to effectuate Section 3.2.5 of the DCL Plan three months following the entry of the Confirmation Order.  The Debtors are amenable, and believe that MSCS is amenable in principle, to both alternatives that were proposed in the draft stipulations, including the Alternative Procedure proposed by the DBTCA Indenture Trustee.  The procedures must be resolved before distributions can be made to Senior Noteholders.  Accordingly, the

---

[5]  The DBTCA Indenture Trustee and LD Indenture Trustee are referred to collectively herein as the "Indenture Trustees."

8

Debtors seek the direction of the Court now so that they can make distributions to Senior

Noteholders as soon as possible upon the effectiveness of the DCL Plan.

***Distribution Calculations and Indenture Trustees' Fees and Expenses and Charging Liens***

23.    Section 3.2.5 of the DCL Plan contemplates that the fee and expense claims of the

Indenture Trustees may become Allowed Senior Noteholder Claims for purposes of sharing in

the overall distribution to the Senior Noteholder Class.  Accordingly, in order to calculate each

Senior Noteholder's pro rata share of the initial distributions, it is necessary to know the amount

of the fee and expense claims asserted by the Indenture Trustees.

24.    The Debtors therefore have requested the Indenture Trustees provide their final

fee and expense claim calculations within a date certain so that the Debtors can make the

necessary distribution calculations.  To date, however, the Indenture Trustees have not

committed to a time or process for providing that necessary information.

25.    Accordingly, in their effort to ensure that Senior Noteholders receive timely

distributions, the Debtors seek an order of the Court requiring the Indenture Trustees to provide

such information promptly upon receipt of notice from the Debtors of FCC Approval.

## Relief Requested

26.    By this Motion, the Debtors respectfully request that the Court enter the Proposed

Order (i) authorizing the procedure set forth below (the "Procedure"), to insure that MSCS does

not receive a distribution on account of any Senior Noteholder Claims held by MSCS for its own

account unless and until it is determined that such Senior Noteholder Claims are Allowed Claims

and entitled to a distribution pursuant to Section 3.2.5(c) of the DCL Plan; and (ii) directing the

Indenture Trustees to provide the Debtors with their fee and expense claim amounts within five

(5) business days following the receipt of notice from the Debtors of FCC Approval.

27.     The Procedure is substantially similar to the procedure that was initially proposed

to the Parties in June 2012, with certain modifications incorporated from the latest proposal.  The

Debtors are aware that the DBTCA Indenture Trustee does not agree with Procedure to the

extent it requires a DWAC and that it prefers the Alternative Procedure.  The Debtors, however,

believe that the Procedure is the least complicated, most efficient process to ensure compliance

with Section 3.2.5 of the DCL Plan.  Nevertheless, as noted above, the Debtors' primary concern

is to have a set of procedures in place so that the Senior Noteholders can receive distributions,

and the Debtors intend to continue to work with the Parties to reach an agreement between now

and the hearing on the Motion.

28.     The proposed Procedure is as follows:

> 1)      Within three (3) business days following entry of the Proposed Order,
> MSCS shall withdraw the Designated Debentures from DTC.  Such withdrawal
> shall be in accordance with DTC's Deposit or Withdrawal at Custodian
> ("DWAC") function.  Counsel for MSCS shall provide electronic notice of the
> initiation of the DWAC withdrawal to (i) Tribune Company, (ii) counsel for the
> Debtors, (iii) counsel for the Creditors' Committee, and (iv) counsel for the
> DBTCA Indenture Trustee.

> 2)      The DBTCA Indenture Trustee shall approve such DWAC withdrawal as
> soon as practicable after initiation by MSCS or upon receipt of electronic notice
> from MSCS of the initiation.  The DBTCA Indenture Trustee shall provide
> electronic notice to (i) Tribune Company, (ii) counsel for the Debtors, (iii)
> counsel for the Creditors' Committee, and (iv) counsel for MSCS, of the effective
> completion of the DWAC withdrawal within 24 hours of the successful DWAC
> withdrawal.

> 3)      Once the Designated Debentures have been withdrawn from DTC, the
> DBTCA Indenture Trustee shall cancel the Designated Debentures.  Thereafter,
> the existence, treatment and ultimate resolution of the Designated Debentures
> shall be as follows:

- No distributions shall be made on account of the Designated Debentures unless and until it is determined (or the Parties[6] stipulate) that the Designated Debentures constitute Allowed Senior Noteholder Claims.

- Reorganized Tribune shall (i) withhold from the distributions provided for in Section 3.2.5(c) of the DCL Plan the amount of any consideration allocable to the Designated Debentures (the "Withheld Amount"), (ii) upon notification by the DBTCA Indenture Trustee of the amount of the charging lien attributable to the 7.5% Debentures due 2023 (if any), tender payment from the Withheld Amount to the DBTCA Indenture Trustee in an amount equal to the pro rata share of such charging lien attributable to the Designated Debentures, and (iii) hold the balance of the Withheld Amount in a segregated account (the "Reserve Fund"), for the benefit of MSCS or the other Holders of Allowed Senior Noteholder Claims, pending the determination of the allowance of MSCS's Senior Noteholder Claims ("MSCS's Claim") and MSCS's entitlement to a distribution.

- Any distributions made on account of the Designated Debentures, including a Pro Rata Share of the Class 1E Litigation Interests (or subsequent distributions made by the Litigation Trustee on account of such Class 1E Litigation Interests), shall also be deposited in the Reserve Fund pending a determination of the allowance of MSCS's Claim and MSCS's entitlement to a distribution.  The Litigation Trustee shall provide written notice of any such distribution to the Reserve Fund to (i) Tribune Company, (ii) counsel for the Debtors, (iii) counsel for the Creditors' Committee, (iv) counsel for the DBTCA Indenture Trustee, and (v) counsel for MSCS.

- In the event that the MSCS Setoff is determined by the District Court to be valid, in whole or part, MSCS shall not have an Allowed Claim on account of the amount of Designated Debentures for which the MSCS Setoff is determined to be valid and Reorganized Tribune shall distribute the Reserve Fund (or the portion of the Reserve Fund on account of the amount of Designated Debentures for which the MSCS Setoff is determined to be valid) to the Indenture Trustees for the benefit of all other Holders (for the avoidance of doubt, excluding MSCS) of Allowed Senior Noteholder Claims as set forth in Section 3.2.5(c) of the DCL Plan; provided, however, that Reorganized Tribune will be authorized to credit the LD Indenture Trustee, at the expense of the DBTCA Indenture Trustee, for that portion of any charging lien that was asserted against distributions attributable to the Designated Debentures that would

---

[6] Following the Effective Date, the Litigation Trustee shall be substituted for the Creditors' Committee as a "Party."

46429/0001-8846517v7

otherwise have been distributed to all other Holders of Allowed Senior Noteholder Claims for which the LD Indenture Trustee is Indenture Trustee.

- In the event that the MSCS Setoff (or any portion thereof) is determined not to be valid, MSCS shall have a Disputed Claim for the portion of the MSCS Setoff determined not to be valid, which shall remain subject to objection by Reorganized Tribune and/or the Litigation Trust as provided for in the DCL Plan. If the Bankruptcy Court or the District Court determines that MSCS's Claim (or any portion thereof) is an Allowed Claim (or Reorganized Tribune and/or the Litigation Trust determines that MSCS's Claim (or any portion thereof) is an Allowed Claim), Reorganized Tribune shall distribute the Reserve Fund, or such portion thereof that corresponds to what is determined to be an Allowed Claim, to MSCS promptly after that determination. Any remaining portion of the Reserve Fund not allocable to MSCS shall be distributed to the Indenture Trustees for the benefit of the other Holders (for the avoidance of doubt, excluding MSCS) of Allowed Senior Noteholder Claims as set forth in Section 3.2.5(c) of the DCL Plan and provided for above; provided, however, that Reorganized Tribune shall be authorized to credit the LD Indenture Trustee, at the expense of the DBTCA Indenture Trustee, for that portion of any charging lien that was asserted against distributions attributable to the Designated Debentures that would otherwise have been distributed to all other Holders of Allowed Senior Noteholder Claims for which the LD Indenture Trustee is the Indenture Trustee.

- The Indenture Trustees shall provide the Debtors with their fee and expense claim amounts within five (5) business days following the receipt of notice from the Debtors of FCC Approval.

## Basis For Relief Requested

29.    Section 105(a) of the Bankruptcy Code provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Further, section 1142(b) of the Bankruptcy Code provides, in relevant part, that "[t]he court may direct the debtor and any other necessary party to execute … any instrument required to affect a transfer of property dealt with by a confirmed plan, and to perform any other act … that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). Bankruptcy Rule 3021 states, in relevant part, "[a]fter a plan is confirmed,

12

distribution shall be made to creditors whose claims have been allowed … ." Fed. R. Bankr. P. 3021. Finally, this Court has retained exclusive jurisdiction over all matters arising out of, and related to, these chapter 11 cases and the DCL Plan, including jurisdiction to: (i) ensure the distributions to Holders of Allowed Claims are accomplished pursuant to provisions of the DCL Plan and; (ii) enter such orders as may be necessary or appropriate to implement, enforce, or consummate the provisions of the DCL Plan. See DCL Plan at Sections 12.1.3 and 12.1.5; Confirmation Order at paragraph IX

30.    The Debtors believe that the relief requested in this Motion is in the best interests of the Debtors, their estates and all creditor constituencies. Although the Parties have conferred for several months regarding the appropriate procedure to be implemented to effectuate the terms of Section 3.2.5 of the DCL Plan with the Debtors circulating two proposed draft stipulations setting forth alternative procedures, the Parties still have not reached consensus with respect to the appropriate procedure.

31.    The relief sought in this Motion is consistent with the Debtors' duty under Section 3.2.5 of the DCL Plan, and important to enable Senior Noteholders to receive prompt distributions.

32.    Prior to filing this Motion, the Parties were advised that the Debtors would seek entry of an order in aid of confirmation. During the pendency of this Motion, the Debtors will continue to work in good faith to agree on an appropriate procedure in attempt to consensually resolve this Motion.

46429/0001-8846517v7

## Notice

33.      Notice of this Motion has been provided to: (a) the Office of the United States Trustee; (b) counsel for the Creditors' Committee; (c) counsel to MSCS; (d) counsel to the Indenture Trustees, (e) counsel for the administrative agents for Tribune Company's prepetition loan facilities; (f) counsel for the administrative agent for Debtors' post-petition loan facility; (g) counsel for the Exit Facility Parties; (h) counsel for the Term Loan Facility Arrangers; and (i) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request the Court enter the attached Order (i) authorizing the Procedure; (ii) directing the Indenture Trustees to provide the Debtors with their fee and expense claim amounts within five (5) business days following the receipt of notice from the Debtors of FCC Approval; and (iii) granting such other and further relief as is just and proper.

Dated:  October 19, 2012

Respectfully submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

*Attorneys for the Debtors and Debtors in Possession*

14