## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket Nos. 12074 and _____** |

## ORDER IN AID OF IMPLEMENTATION OF SENIOR NOTEHOLDER
## DISTRIBUTIONS PURSUANT TO CONFIRMED DCL PLAN

Upon consideration of the Motion[2] of the Debtors, and it appearing that the Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Articles III and XII of the

DCL Plan and paragraph IX of the Confirmation Order; and the Court having reviewed the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Motion and all other related pleadings; and due and adequate notice of the Motion having been

given under the circumstances; and sufficient cause appearing thereof; it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED that the following Procedure shall be implemented pursuant to Section

3.2.5(c) of the DCL Plan:

1)      Within three (3) business days following entry of the Proposed Order, MSCS shall withdraw the Designated Debentures from DTC. Such withdrawal shall be in accordance with DTC's Deposit or Withdrawal at Custodian ("DWAC") function. Counsel for MSCS shall provide electronic notice of the initiation of the DWAC withdrawal to (i) Tribune Company, (ii) counsel for the Debtors, (iii) counsel for the Creditors' Committee, and (iv) counsel for the DBTCA Indenture Trustee.

2)      The DBTCA Indenture Trustee shall approve such DWAC withdrawal as soon as practicable after initiation by MSCS or upon receipt of electronic notice from MSCS of the initiation. The DBTCA Indenture Trustee shall provide electronic notice to (i) Tribune Company, (ii) counsel for the Debtors, (iii) counsel for the Creditors' Committee, and (iv) counsel for MSCS, of the effective completion of the DWAC withdrawal within 24 hours of the successful DWAC withdrawal

3)      Once the Designated Debentures have been withdrawn from DTC, the DBTCA Indenture Trustee shall cancel the Designated Debentures. Thereafter, the existence, treatment and ultimate resolution of the Designated Debentures shall be as follows:

- No distributions shall be made on account of the Designated Debentures unless and until it is determined (or the Parties[3] stipulate) that the Designated Debentures constitute Allowed Senior Noteholder Claims.

- Reorganized Tribune shall (i) withhold from the distributions provided for in Section 3.2.5(c) of the DCL Plan the amount of any consideration allocable to the Designated Debentures (the "Withheld Amount"), (ii) upon notification by the DBTCA Indenture Trustee of the amount of the charging lien attributable to the 7.5% Debentures due 2023 (if any), tender payment from the Withheld Amount to the DBTCA Indenture Trustee in an amount equal to the pro rata share of such charging lien

---

[3]  Following the Effective Date, the Litigation Trustee shall be substituted for the Creditors' Committee as a "Party."

attributable to the Designated Debentures, and (iii) hold the balance of the Withheld Amount in a segregated account (the "Reserve Fund"), for the benefit of MSCS or the other Holders of Allowed Senior Noteholder Claims, pending the determination of the allowance of MSCS's Senior Noteholder Claims ("MSCS's Claim") and MSCS's entitlement to a distribution.

- Any distributions made on account of the Designated Debentures, including a Pro Rata Share of the Class 1E Litigation Interests (or subsequent distributions made by the Litigation Trustee on account of such Class 1E Litigation Interests), shall also be deposited in the Reserve Fund pending a determination of the allowance of MSCS's Claim and MSCS's entitlement to a distribution. The Litigation Trustee shall provide written notice of any such distribution to the Reserve Fund to (i) Tribune Company, (ii) counsel for the Debtors, (iii) counsel for the Creditors' Committee, (iv) counsel for the DBTCA Indenture Trustee, and (v) counsel for MSCS.

- In the event that the MSCS Setoff is determined by the District Court to be valid, in whole or part, MSCS shall not have an Allowed Claim on account of the amount of Designated Debentures for which the MSCS Setoff is determined to be valid and Reorganized Tribune shall distribute the Reserve Fund (or the portion of the Reserve Fund on account of the amount of Designated Debentures for which the MSCS Setoff is determined to be valid) to the Indenture Trustees for the benefit of all other Holders (for the avoidance of doubt, excluding MSCS) of Allowed Senior Noteholder Claims as set forth in Section 3.2.5(c) of the DCL Plan; provided, however, that Reorganized Tribune will be authorized to credit the LD Indenture Trustee, at the expense of the DBTCA Indenture Trustee, for that portion of any charging lien that was asserted against distributions attributable to the Designated Debentures that would otherwise have been distributed to all other Holders of Allowed Senior Noteholder Claims for which the LD Indenture Trustee is Indenture Trustee.

- In the event that the MSCS Setoff (or any portion thereof) is determined not to be valid, MSCS shall have a Disputed Claim for the portion of the MSCS Setoff determined not to be valid, which shall remain subject to objection by Reorganized Tribune and/or the Litigation Trust as provided for in the DCL Plan. If the Bankruptcy Court or the District Court determines that MSCS's Claim (or any portion thereof) is an Allowed Claim (or Reorganized Tribune and/or the Litigation Trust determines that MSCS's Claim (or any portion thereof) is an Allowed Claim), Reorganized Tribune shall distribute the Reserve Fund, or such portion thereof that corresponds to what is determined to be an Allowed Claim, to MSCS promptly after that determination. Any remaining

3

portion of the Reserve Fund not allocable to MSCS shall be distributed to the Indenture Trustees for the benefit of the other Holders (for the avoidance of doubt, excluding MSCS) of Allowed Senior Noteholder Claims as set forth in Section 3.2.5(c) of the DCL Plan and provided for above; provided, however, that Reorganized Tribune shall be authorized to credit the LD Indenture Trustee, at the expense of the DBTCA Indenture Trustee, for that portion of any charging lien that was asserted against distributions attributable to the Designated Debentures that would otherwise have been distributed to all other Holders of Allowed Senior Noteholder Claims for which the LD Indenture Trustee is the Indenture Trustee.

- The Indenture Trustees shall provide the Debtors with their fee and expense claim amounts within five (5) business days following the receipt of notice from the Debtors of FCC Approval.

ORDERED that the Indenture Trustees shall provide the Debtors with their fee and expense claim amounts within five (5) business days following the receipt of notice from the Debtors of FCC Approval; and it is further

ORDERED that notwithstanding any provision in the Bankruptcy Rules to the contrary, including, without limitation, Bankruptcy Rule 6004(h): (i) this Order shall be effective immediately and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order; and it is further

46429/0001-8846517v7

ORDERED that this Court shall retain jurisdiction over all affected parties with respect to any matters, claims or rights arising from or related to the implementation and interpretation of this Order.

Dated: Wilmington, Delaware
      November __, 2012

 

_____
Kevin J. Carey
United States Bankruptcy Judge