## EXHIBIT 1

**Stipulation In Aid Of Implementation Of Senior Noteholder Distributions
Pursuant To Confirmed DCL Plan**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket Nos. 12072, 12074 and 12601** |

## STIPULATION IN AID OF IMPLEMENTATION OF SENIOR NOTEHOLDER DISTRIBUTIONS PURSUANT TO CONFIRMED DCL PLAN

This stipulation (the "Stipulation") is entered into by and among the debtors and debtors

in possession in the above captioned cases (collectively, the "Debtors"), the Official Committee

of Unsecured Creditors (the "Creditors' Committee"), Deutsche Bank Trust Company Americas,

in its capacity as successor indenture trustee ("DBTCA"), Law Debenture Trust Company of

New York, in its capacity as successor indenture trustee ("Law Debenture"; DBTCA and Law

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Debenture are collectively referred to as the "Indenture Trustees") and Morgan Stanley Capital Services Inc. ("MSCS")[2] (each, a "Party" and, collectively, the "Parties"), establishing (i) the procedure to be implemented prior to the Initial Distribution Date to ensure that MSCS does not receive a distribution on account of any Senior Noteholder Claims held by MSCS for its own account unless and until it is determined that such Senior Noteholder Claims are Allowed Claims and entitled to a distribution pursuant to Section 3.2.5(c) of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (As Modified July 19, 2012) (the "DCL Plan") [Docket No. 12072]; (ii) the formula and procedure for calculation and distribution of reserved amounts pending adjudication or resolution of the validity of the MSCS Setoff (as defined below) and/or the allowability of the Senior Noteholder Claims held by MSCS; and (iii) setting a deadline for the Indenture Trustees to provide the Debtors with their fee and expense calculations so that the Debtors can make the calculations necessary for distributions to the Class of Senior Noteholder Claims.

## RECITALS

WHEREAS, on December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An additional Debtor, Chicago National League Ball Club, LLC, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.

WHEREAS, DBTCA serves as the successor indenture trustee for the following indentures:  Indenture dated as of March 1, 1992, between Tribune and DBTCA (the "1992

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the DCL Plan as that term is defined herein.

Indenture"); Indenture dated as of January 30, 1995, between Tribune and DBTCA (the "1995 Indenture"); and Indenture dated as of January 1, 1997 between Tribune Company and DBTCA (the "1997 Indenture"; collectively the "DBTCA Indentures").

WHEREAS, as of the Petition Date, the principal and accrued but unpaid interest owed by Tribune under the DBTCA Indentures is $1,048,070,044.04 ("DBTCA Noteholder Claim"). If there were no dispute regarding the Designated Debentures (as defined and described below) the Allowed Claim of DBTCA would be equal to the DBTCA Noteholder Claim plus all other amounts due under the DBTCA Indentures (the "Allowed DBTCA Claim Before Any MSCS Setoff").

WHEREAS, Law Debenture serves as the successor indenture trustee under that indenture dated March 19, 1996, between Tribune Company and Law Debenture (the "1996 Indenture").

WHEREAS, as of the Petition Date, the principal and accrued but unpaid interest owed by Tribune under the 1996 Indenture is $234,985,699.73 (the "Law Debenture Noteholder Claim"). The Allowed Claim of Law Debenture is equal to the Law Debenture Noteholder Claim plus all other amounts due under the 1996 Indenture (the "Allowed Law Debenture Claim"; collectively the Allowed DBTCA Claim Before Any MSCS Setoff and the Allowed Law Debenture Claim shall be referred to as the "Allowed Senior Noteholder Claims Before Any MSCS Setoff").

WHEREAS, as of the Petition Date, MSCS held $38,365,000 in outstanding principal amount of the Tribune Company's 7.5% Debentures due 2023 issued pursuant to the 1995 Indenture, plus accrued pre-petition interest in the amount of $1,262,847.92 (the "Designated Debentures"). The CUSIP number for the Designated Debentures is 887364AB3.

46429/0001-8964698v11

WHEREAS, as set forth in the Joint Disclosure Statement dated December 15, 2010 [Docket No. 7232], on or about December 19, 1994, MSCS and Times Mirror entered into an interest rate swap which was memorialized in an ISDA Master Agreement, dated as of August 5, 1994, and a Confirmation to such agreement, dated as of December 19, 1994 (collectively, the "Swap Agreement"). Tribune's bankruptcy filing was an Event of Default under Section 5(a)(ii) of the Swap Agreement. By letter dated December 18, 2008, MSCS informed Tribune that it had set off the Designated Debentures against the $50,433,470.16 MSCS had determined, as the non-defaulting party under the Swap Agreement, it owed Tribune (the "MSCS Setoff").[3] Accordingly, MSCS asserts that it does not own any Designated Debentures for its own account nor does it have any Senior Noteholder Claims. While MSCS contends that its records reflect the MSCS Setoff, the Designated Debentures have not been cancelled and the position remains open at The Depository Trust Company ("DTC"). MSCS confirms that it has not sold the Designated Debentures.

WHEREAS, MSCS also filed certain unliquidated proofs of claim against Tribune asserting various claims arising from and relating to the terms and conditions of the Swap Agreement, Designated Debentures, and indemnity.[4]

WHEREAS, the Debtors and the Creditors' Committee dispute the validity of the MSCS Setoff and the related claims, including but not limited to the filed Proofs of Claim.

---

[3] By letter dated March 20, 2009, MSCS advised that the correct amount owing to Tribune under the Swap Agreement was $51,945,000 and the prior figure was the result of a calculation error.

[4] MSCS filed Claim No. 5027 against Tribune Company "arising from and relating to the terms and conditions of the Swap Agreement, the Bonds, and the Indemnity." Morgan Stanley & Co. Incorporated filed Claim No. 5034 against Tribune Company "arising from and relating to the terms and conditions of the Indemnity. Morgan Stanley & Co. Incorporated filed Claim No. 6708 against Tribune Company "arising from and relating to the rejection of that certain Engagement Letter, dated October 17, 2006, by and between the Tribune Company and Morgan Stanley." Claim Nos. 5027, 5034 and 6708 are collectively referred to as the "Proofs of Claim".

WHEREAS, the Creditors' Committee, on behalf of the Debtors' chapter 11 estates, filed a complaint in the Bankruptcy Court challenging, in part, the validity of the MSCS Setoff and seeking to equitably subordinate any claims MSCS may have against the Debtors (the "Shareholder/Advisor Action"), styled *The Official Committee of Unsecured Creditors of Tribune Company, on behalf of Tribune Company, et al. v. Dennis J. FitzSimons, et al.,* 10-54010 (KJC).

WHEREAS, the Shareholder/Advisor Action was transferred to the Southern District of New York for inclusion in the coordinated proceedings under 28 U.S.C. § 1407 being conducted by the Honorable William H. Pauley III.

WHEREAS, under the DCL Plan, objections to the Proofs of Claim and the Shareholder/Advisor Action are Preserved Causes of Action, that will be prosecuted by the Litigation Trust pursuant to Article XIII of the DCL Plan.

WHEREAS, due to the pendency of the Shareholder/Advisor Action, claims on account of the Senior Noteholder Claims held by MSCS are Disputed Claims under the DCL Plan.

WHEREAS, in the event it is determined that the MSCS Setoff is not valid, MSCS will own the Designated Debentures and, accordingly, will hold disputed Senior Noteholder Claims with respect to those debentures (the allowance, disallowance, or subordination of which may be separately determined).

WHEREAS, on July 23, 2012, the Bankruptcy Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 12074].

46429/0001-8964698v11

WHEREAS, the Debtors anticipate that the DCL Plan will become effective following receipt of the requisite FCC approvals and waivers ("FCC Approval") and they intend to make the distributions contemplated thereunder in accordance with the terms of the DCL Plan.

WHEREAS, Section 3.2.5(c) of the DCL Plan provides that "Reorganized Tribune shall (a) withhold from the distributions provided for in this Section 3.2.5(c) the amount of any consideration allocable to the Senior Noteholder Claims held by MSCS and (b) hold such amount in reserve pending a determination of the allowance of MSCS's Senior Noteholder Claims and MSCS's entitlement to such distribution."

WHEREAS, Section 3.2.5(c) of the DCL Plan also provides that "[t]he Debtors, the Creditors' Committee, the applicable Indenture Trustee and MSCS shall work in good faith to agree upon an appropriate procedure, which shall be implemented prior to the Initial Distribution Date, to [e]nsure that MSCS does not receive a distribution on account of any Senior Noteholder Claims held by MSCS for its own account unless and until it is determined that such Senior Noteholder Claims are Allowed Claims and entitled to a distribution pursuant to this Section 3.2.5(c)."

WHEREAS, the Debtors, the Creditors' Committee, DBTCA, Law Debenture and MSCS have negotiated the terms and conditions of such a procedure and have agreed to enter into this Stipulation to document such agreement.

NOW, THEREFORE, THE PARTIES STIPULATE AND AGREE AS FOLLOWS:

46429/0001-8964698v11

## **AGREEMENT**

1.      Within two (2) business days following the entry of an Order approving this
Stipulation, the parties to the Escrow Agreement (the "Escrow Parties"), excluding the Litigation
Trustee, shall execute an Escrow Agreement, designating the Litigation Trustee, as escrow agent
(the "Escrow Agent"), in order to implement and execute the terms of this Stipulation as set forth
below.  On the Effective Date, the Escrow Agent shall execute the Escrow Agreement.  A copy
of the form of the Escrow Agreement is attached hereto as Attachment "A".

2.      The Litigation Trustee is authorized and directed to, as soon as reasonably
practical on or after the Effective Date, establish a segregated account (the "Account" or the
"Escrow Account") with a DTC participant (the "Escrow DTC Participant") to receive and hold
in escrow (a) the Designated Debentures, (b) distributions under the DCL Plan on account of the
Designated Debentures (consisting of cash and Class 1E Litigation Trust Interests), and (c) any
future distributions with respect to the Designated Debentures or the Class 1E Litigation Trust
Interests held in the Escrow Account.  The Escrow Account (and any property contained therein)
shall not constitute an asset of the Litigation Trust.  The Litigation Trustee shall take action to (i)
inform the financial institution holding the Escrow Account in writing that the Escrow Account
does not constitute an asset of the Litigation Trust; and (ii) clearly delineate in the title of the
Escrow Account that the Account does not constitute property of the Litigation Trust.  Counsel
for the Litigation Trustee shall within twenty-four (24) hours of the creation of the Escrow
Account provide electronic notice to the Parties (the "Notice Parties") set forth on Attachment
"B" of the creation of the Escrow Account and sufficient delivery instructions so as to allow
MSCS to deliver the Designated Debentures to the Escrow Account (the "Escrow Account
Notice").

3.      As soon as reasonably practical after receipt of the Escrow Account Notice, MSCS shall deliver the Designated Debentures to the Escrow Account via "free delivery." Counsel for MSCS shall promptly provide electronic notice of such delivery to the Notice Parties.

4.      Within five (5) business days following the receipt of notice from the Debtors of FCC Approval, the Indenture Trustees shall provide the Notice Parties with (i) their respective total fee and expense claim amounts and their shared fee and expense claim amounts being charged to the Senior Noteholders and (ii) a reasonable estimate of the projected fees and expenses that will be charged to the Senior Noteholders in connection with the Indenture Trustees' continued performance of their obligations under the Senior Notes Indentures so that the Debtors can make the calculations necessary for distributions to the Class of Senior Noteholder Claims.  The fee and expense claim amounts provided by the Indenture Trustees as set forth in (i) and (ii) above shall constitute Allowed Senior Noteholder Claims for purposes of Section 3.2.5 of the DCL Plan, subject to the rights of the Senior Noteholders to object to the projected fees and expenses referenced in (ii) above.

5.      In accordance with Section 7.7 of the DCL Plan, Reorganized Tribune shall make the distribution on account of the Senior Noteholder Claims, including the amount allocable to the Designated Debentures (the "Initial Designated Debenture Distribution"), to the Indenture Trustees and the Indenture Trustees, after exercising their charging lien rights under the Senior Notes Indentures, shall make a distribution through DTC and/or the other holders of record to the Senior Noteholders (the "Initial Noteholder Distribution").  The portion of the Initial Noteholder Distribution allocable to the Designated Debentures shall be delivered through DTC to the Escrow Account; provided however, that distributions of Class 1E Litigation Trust Interests that cannot be distributed through DTC may be delivered or deemed delivered directly to the Escrow Agent.

6.       The Escrow Account shall serve as the "reserve" contemplated by Section 3.2.5(c) of the DCL Plan.  Any distributions made on account of the Designated Debentures pursuant to Section 3.2.5(c)(ii) of the DCL Plan, or any subsequent distributions (in any form and from any source) with respect to the Designated Debentures or the Class 1E Litigation Trust Interests on deposit in the Escrow Account, in each case after deducting from such distributions the pro rata share of any charging lien asserted by DBTCA (on behalf of itself or Law Debenture under any shared fee arrangement), in respect of the Designated Debentures shall be delivered through DTC to the Escrow Account or, in the case of the Class 1E Litigation Trust Interests that cannot be delivered through DTC, delivered or deemed delivered directly to the Escrow Agent (the "Reserved Distribution") pending a determination of the allowance of MSCS's Claim and MSCS's entitlement to distributions under the DCL Plan or in respect of Class 1E Litigation Trust Interests.  For illustrative purposes, a draft calculation of the Initial Designated Debenture Distribution and Reserved Distribution is set forth on page 1 of Attachment "C" and on page 1 of Attachment "D". [5]  The Reserved Distribution shall also include any interest that accrues on account of the Escrow Account that is not used to pay the costs of the Escrow Agent.  The Escrow Agent is authorized to use interest earned on the cash in the Escrow Account to pay the reasonable and necessary costs of maintaining the Escrow Account; provided that, the Escrow Agent provides the Escrow Parties with ten (10) days advance written notice of such withdrawal.

---

[5]  Attached hereto as Attachment "C" are calculations based on several different hypothetical distribution scenarios illustrating how DCL Plan distributions other than Litigation Trust Interests will occur pursuant to this Stipulation. Attached hereto as Attachment "D" are calculations based on several different hypothetical distribution scenarios illustrating how distributions of Litigation Trust Interests will occur pursuant to this Stipulation.  Certain defined terms identified herein are referenced in bold print in Attachment "C" and Attachment "D".  The Debtors will provide updated calculations reflecting the actual Initial Designated Debenture Distribution and actual Reserved Distribution (based on Indenture Trustee fee and expense claim amounts provided to the Notice Parties in accordance with paragraph 4) to the Escrow Parties and the Escrow Agent as soon as practicable after receiving such information from the Indenture Trustees.

9

7.      In the event of the entry of a Final Order determining that the MSCS Setoff is valid, in whole or in part, or the entry of an order approving a settlement between the Litigation Trustee and MSCS, the terms of which provide that the MSCS Setoff is valid, in whole or in part, MSCS shall not have an Allowed Claim on account of the amount of Designated Debentures for which the MSCS Setoff is determined to be valid (the "Initial MSCS Reduction").  The Escrow DTC Participant (at the direction of the Escrow Agent) and, to the extent necessary DBTCA, shall take such actions as necessary to authorize DTC, in writing, to delete that portion of Designated Debentures represented by the Initial MSCS Reduction from its books and records.  For the avoidance of doubt, the Class 1E Litigation Trust Interests or proceeds thereof allocable to the Initial MSCS Reduction will not be canceled but will instead be distributed in accordance with paragraph 8 below.

8.      In the event of the entry of a Final Order determining that the MSCS Setoff is valid, in whole or in part, or the entry of an order approving a settlement between the Litigation Trustee and MSCS, the terms of which provide that the MSCS Setoff is valid, in whole or in part, the Escrow Agent, shall distribute that portion of the Reserved Distribution that corresponds to the Initial MSCS Reduction to Law Debenture (the "Initial Law Debenture Escrow Distribution") and DBTCA (the "Initial DBTCA Escrow Distribution") in the amounts determined by using the formulas underlying the calculations on page 2 of Attachment "C" and on page 2 of Attachment "D".  Upon receipt of such distributions from the Escrow Agent, each of the Indenture Trustees shall make a distribution to their respective Senior Noteholders pursuant to Section 3.2.5 of the DCL Plan and the Senior Notes Indentures.  For the avoidance of doubt, any amount of the Initial DBTCA Escrow Distribution attributable to any remaining Allowed or Disputed Claims on account of the Designated Debentures held by the Escrow Agent

shall be distributed by DBTCA, after exercising any applicable charging lien, through DTC to

the Escrow Account for subsequent distribution in accordance with the terms hereof (the "MSCS

Pro Rata Share For Disputed Claim"); provided however, that distributions of Class 1E

Litigation Trust Interests that cannot be distributed through DTC may be delivered or deemed

delivered directly to the Escrow Agent.  The portion of the Reserved Distribution that is not

distributed to Law Debenture or DBTCA pursuant to paragraph 8, plus the MSCS Pro Rata Share

For Disputed Claim, shall constitute the "Remaining Reserve".

     9.     In the event of the entry of a Final Order determining that the MSCS Setoff is not

valid, in whole or in part, or the entry of an order approving a settlement between the Litigation

Trustee and MSCS, the terms of which provide that the MSCS Setoff is not valid, in whole or in

part, MSCS shall have a Disputed Claim, on account of the Designated Debentures, for the

portion of the MSCS Setoff determined or agreed not to be valid, which shall remain subject to

objection by the Litigation Trust.

     a.     In the event of the entry of a Final Order determining that the remaining Disputed

Claim of MSCS is Allowed, in whole or in part, or the entry of an order approving a

settlement between the Litigation Trustee and MSCS, the terms of which provide that the

remaining Disputed Claim of MSCS is Allowed, in whole or in part (the "Allowed MSCS

Claim"), the Escrow Agent shall distribute such portion of the Remaining Reserve that

corresponds to the Allowed MSCS Claim, to MSCS promptly after that event (the

"MSCS Escrow Distribution"), in the amount determined by using the formulas

underlying the calculations on page 3 of Attachment "C" and on page 3 of Attachment

"D".  The Escrow Agent shall promptly deliver the contents of the Escrow Account

applicable to that portion of the Designated Debentures that represents the Allowed

MSCS Claim, to MSCS and shall provide electronic notice of such delivery to the Notice Parties.

b.      In the event of the entry of a Final Order determining that the remaining Disputed Claim of MSCS is disallowed or subordinated, in whole or in part, or the entry of an order approving a settlement between the Litigation Trustee and MSCS, the terms of which provide that the remaining Disputed Claim of MSCS is disallowed or subordinated, in whole or in part (the "Additional MSCS Reduction"), the Escrow DTC Participant (at the direction of the Escrow Agent) and, to the extent necessary DBTCA, shall take such actions as necessary to authorize DTC, in writing, to delete that portion of the Designated Debentures represented by the Additional MSCS Reduction from its books and records.  For the avoidance of doubt, the Class 1E Litigation Trust Interests or proceeds thereof allocable to the portion of the Designated Debentures represented by the Additional MSCS Reduction will not be canceled but will instead be distributed in accordance with this paragraph 9(b).  Following any Additional MSCS Reduction, any portion of the Remaining Reserve not distributed on account of the MSCS Escrow Distribution shall be distributed by the Escrow Agent to Law Debenture (the "Final Law Debenture Escrow Distribution") and DBTCA (the "Final DBTCA Escrow Distribution") for the benefit of the holders of the Allowed Senior Noteholder Claims, in the amounts determined by using the formulas underlying the calculations on page 3 of Attachment "C" and on page 3 of Attachment "D".  For the avoidance of doubt, any amount of the Final DBTCA Escrow Distribution attributable to any remaining Allowed Claims held by MSCS on account of the Designated Debentures shall be distributed by DBTCA, after exercising any applicable charging lien, through DTC to MSCS (the "MSCS Pro Rata

12

Share for Allowed Claim"); provided however, that distributions of Class 1E Litigation

Trust Interests that cannot be distributed through DTC may be delivered or deemed

delivered directly to MSCS.

10.    In accordance with the procedures set forth in the Escrow Agreement, the Escrow

Agent shall provide the Escrow Parties with information regarding the Escrow Account so that

they may review the Account balance and any deposits, distributions or other Escrow Account

activity.

11.    For the avoidance of doubt, nothing herein shall affect, alter, or amend in any way

any of the Parties' defenses, counterclaims, or rights in the Shareholder/Advisor Action or with

respect to any pleading seeking the allowance or disallowance of a claim, and, further, no Party

hereto shall argue otherwise in either the Shareholder/Advisor Action or in any other matter

before the Bankruptcy Court or any other court, and the Parties agree that all factual recitations

and stipulations set forth herein cannot be used against any Party by any other Party as an

admission or otherwise in the Shareholder/Advisor Action or in any other current litigation

concerning the Debtors and MSCS.

12.    The undersigned persons represent and warrant that they have full authority to

execute this Stipulation on behalf of each of the respective Parties and, subject to Bankruptcy

Court approval of the Stipulation, bind such Parties to the contents hereof.

13.    This Stipulation may be executed in counterparts, all of which may be transmitted

by facsimile or electronic mail, and each of which shall be deemed an original and all of which

together shall constitute one and the same instrument.

46429/0001-8964698v11

14. This Stipulation may not be amended without the express written consent of all Parties hereto and at least five (5) business days advance written notice to Aurelius Capital Management, LP at the following address:

> Dan Gropper
> Aurelius Capital Management, LP
> 535 Madison Avenue
> 22nd Floor
> New York, NY 10022
> Facsimile: (212) 786-5870
> dgropper@aurelius-capital.com

With a copy to:

> Philip Dublin, Esquire
> Akin Gump Strauss Hauer & Feld LLP
> One Bryant Park
> New York, NY 10036-6745
> Facsimile: (212) 872-1002
> pdublin@akin.com

15. The Parties acknowledge that they have each participated in and jointly consented to the drafting of this Stipulation and that any claimed ambiguity shall not be construed for or against any Party on account of such drafting on the basis that the Party was the drafter.

16. This Stipulation and its terms and conditions are subject to the approval of the Bankruptcy Court and shall not be effective unless and until the Effective Date of the DCL Plan.

17. The Bankruptcy Court shall retain jurisdiction to enforce the terms and provisions of this Stipulation and to hear and determine any issue or dispute arising with respect to the interpretation of this Stipulation.

46429/0001-8964698v11

IN WITNESS WHEREOF, the Parties have executed this Agreement as of this 15th day

of November, 2012.

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

_____
Norman L. Pernick (DE 2290)
J. Kate Stickles (DE 2917)
Patrick J. Reilley (DE 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117
npernick@coleschotz.com
kstickles@coleschotz.com
preilley@coleschotz.com

Counsel for Debtors and Debtors in Possession

LANDIS RATH & COBB LLP

_____
Adam G. Landis (DE 3407)
Matthew B. McGuire (DE 4366)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com

Counsel to the Official Committee of Unsecured Creditors

-and-

ZUCKERMAN SPAEDER LLP
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C.  20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106
jsottile@zuckerman.com

Special Counsel to the Official Committee of Unsecured Creditors

IN WITNESS WHEREOF, the Parties have executed this Agreement as of this 15th day

of November, 2012.

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

_____

Norman L. Pernick (DE 2290)
J. Kate Stickles (DE 2917)
Patrick J. Reilley (DE 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
npernick@coleschotz.com
kstickles@coleschotz.com
preilley@coleschotz.com

Counsel for Debtors and Debtors in Possession

LANDIS RATH & COBB LLP

_____

Adam G. Landis (DE 3407)
Matthew B. McGuire (DE 4366)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com

Counsel to the Official Committee of Unsecured Creditors

-and-

ZUCKERMAN SPAEDER LLP
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106
jsottile@zuckerman.com

Special Counsel to the Official Committee of Unsecured Creditors

15

46429/0001-8964698v11

BARNES & THORNBURG LLP

David M. Powlen (DE 4978)
1000 North West Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 300-3434
Facsimile: (302) 300-3456
david.powlen@btlaw.com

  - and –

WEIL, GOTSHAL & MANGES LLP
Michael F. Walsh
Jonathan D. Polkes
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
michael.walsh@weil.com
jonathan.polkes@weil.com

Counsel to MSCS

McCARTER & ENGLISH LLP


Katherine L. Mayer (DE 3758)
405 N. King Street, 8th Floor
Wilmington, DE 19899
Telephone: (302) 984-6300
Facsimile: (302) 984-6399
kmayer@mccarter.com

  - and -

David J. Adler
245 Park Avenue, 27th Floor
New York, NY 10167
Telephone: (212) 609-6800
Facsimile: (212) 609-6921
dadler@mccarter.com

Counsel to Deutsche Bank Trust Company Americas,
solely in its capacity as successor Indenture Trustee for certain series of Senior Notes

16

46429/0001-8964698v11

BARNES & THORNBURG LLP

_____
David M. Powlen (DE 4978)
1000 North West Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 300-3434
Facsimile: (302) 300-3456
david.powlen@btlaw.com

 - and –

WEIL, GOTSHAL & MANGES LLP
Michael F. Walsh
Jonathan D. Polkes
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
michael.walsh@weil.com
jonathan.polkes@weil.com

Counsel to MSCS

McCARTER & ENGLISH LLP

*/s/    Katherine L. Mayer____*
Katherine L. Mayer (DE 3758)
405 N. King Street, 8th Floor
Wilmington, DE 19899
Telephone: (302) 984-6300
Facsimile: (302) 984-6399
kmayer@mccarter.com

 - and -

David J. Adler
245 Park Avenue, 27th Floor
New York, NY 10167
Telephone: (212) 609-6800
Facsimile: (212) 609-6921
dadler@mccarter.com

Counsel to Deutsche Bank Trust Company Americas,
solely in its capacity as successor Indenture Trustee for certain series of Senior Notes

16

BIFFERATO GENTILOTTI LLC

*/s/  Garvan F. McDaniel*
Garvan F. McDaniel (DE 4167)
800 N. King Street, Plaza Level
Wilmington, DE 19801
Telephone: (302) 429-1900
Facsimile:  (302) 429-8600
gmcdaniel@bglawde.com

- and -

KASOWITZ, BENSON,
TORRES & FRIEDMAN LLP
David S. Rosner
Matthew B. Stein
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
drosner@kasowitz.com
mstein@kasowitz.com

Counsel for Law Debenture Trust Company of New York,
solely in its capacity as successor Indenture Trustee for certain series of Senior Notes

## Attachment "A"

### Escrow Agreement

# ESCROW AGREEMENT

THIS ESCROW AGREEMENT, dated as of November _____2012, (the "Agreement") by and among (i) Morgan Stanley Capital Services Inc., a Delaware corporation ("MSCS"),[1] (ii) Law Debenture Trust Company of New York, a New York banking corporation ("Law Debenture"), (iii) Deutsche Bank Trust Company Americas, a New York banking corporation ("DBTCA"; collectively Law Debenture and DBTCA are referred to herein as the "Indenture Trustees"); and (iv) the Litigation Trustee (the "Litigation Trustee") of the Litigation Trust established under the Litigation Trust Agreement, dated _____, 2012, pursuant to the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (As Modified July 19, 2012) (the "DCL Plan") [Docket No. 12072], as escrow agent (the "Escrow Agent") (MSCS, the Indenture Trustees and the Escrow Agent are each an "Escrow Party" and collectively referred to herein as the "Escrow Parties").

RECITALS:

WHEREAS, on December 8, 2008 (the "Petition Date"), Tribune and certain of its direct and indirect subsidiaries (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). An additional Debtor, Tribune CNLBC, LLC, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, 110 entities are currently Debtors in the chapter 11 cases. The Debtors' chapter 11 cases are jointly administered under case number 08-13141 (KJC).

WHEREAS, on July 23, 2012, the Bankruptcy Court entered an Order confirming the DCL Plan [Docket No. 12074].

WHEREAS, on November __, 2012, the Bankruptcy Court entered an order (the "Order Approving Stipulation") [Docket No. ___] approving that certain Stipulation in Aid of Implementation of Senior Noteholder Distributions Pursuant to Confirmed DCL Plan (the "Stipulation").

WHEREAS, the Stipulation establishes, *inter alia*, (i) the procedure to be implemented to ensure that MSCS does not receive a distribution on account of any Senior Noteholder Claims held by MSCS for its own account unless and until it is determined that such Senior Noteholder Claims are Allowed Claims and entitled to a distribution pursuant to Section 3.2.5(c) of the DCL Plan; (ii) the formula and procedure for calculation and distribution of reserved amounts after adjudication or resolution of the validity of the MSCS Setoff and/or the allowability of any Senior Noteholder Claims held by MSCS; and (iii) a deadline for the

---

[1] Capitalized terms not otherwise defined shall have the same meaning ascribed to such terms in the Stipulation (referred to in the Recitals hereof) or the DCL Plan.

Indenture Trustees to provide the Debtors with their fee and expense calculations so that the Debtors can make calculations necessary for distributions to the Class of Senior Noteholder Claims.

AGREEMENT:

**NOW, THEREFORE,** for purposes of implementing and executing the terms of the Stipulation and facilitating the implementation of the DCL Plan, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by each of the Escrow Parties hereto, the Escrow Parties hereto, intending to be legally bound, do hereby agree as follows:

Section 1.  Appointment of Escrow Agent.  The Escrow Parties hereby appoint the Litigation Trustee as Escrow Agent in accordance with the terms and conditions set forth in this Agreement, the Stipulation and the Order Approving Stipulation, and the Escrow Agent hereby accepts such appointment.

Section 2.  Creation of Escrow Account.  The Escrow Agent shall comply with paragraph 2 of the Stipulation in establishing a segregated account (the "Account" or the "Escrow Account") with a DTC participant to receive and hold in escrow, pursuant to the Stipulation, the Designated Debentures, distributions under the DCL Plan of cash and Class 1E Litigation Trust Interests on account of the Designated Debentures, any future distributions with respect to the Designated Debentures or the Class 1E Litigation Trust Interests held in the Escrow Account, and any interest accruing on the cash in the Escrow Account (the "Escrow Property").

Section 3.  Deposit of the Designated Debentures into the Escrow Account.  MSCS shall comply with the requirements of paragraph 3 of the Stipulation in order to deposit the Designated Debentures into the Escrow Account.

Section 4.  The Escrow Account as Reserve.  Any and all distributions made on account of the Designated Debentures pursuant to Section 3.2.5(c)(ii) of the DCL Plan shall be delivered consistent with paragraph 6 of the Stipulation.

Section 5.  Investment of the Escrow Property.  During the term of this Agreement, the Escrow Agent shall hold the cash portion of the Escrow Property in an interest bearing account, which account shall be part of the Escrow Account.  The cash in the interest bearing account shall be invested in securities that are issued by the United States Treasury or are directly and fully guaranteed or insured by the United States Government or agent or instrumentality thereof or securities that have been rated Baa2 or better by Moody's Investors Services and BBB or better by Standard and Poor's.

Section 6.  Deletion of Position with respect to Designated Debentures.  The Escrow DTC Participant (at the direction of the Escrow Agent) and, to the extent necessary DBTCA, shall take such actions as necessary to authorize DTC, in writing, to delete that portion of Designated Debentures represented by the Initial MSCS Reduction and/or Additional MSCS Reduction from its books and records in accordance with the terms of paragraphs 7 and 9 of the Stipulation.

2

Section 7. <u>Distribution of Escrow Property</u>. The Escrow Agent shall hold and distribute the Escrow Property in accordance with paragraphs 8 and 9 of the Stipulation. The Escrow Agent shall provide the Escrow Parties with advance written notice of his intent ("<u>Notice of Intent</u>") to distribute the Escrow Property or any portion thereof (the "<u>Proposed Distribution</u>") in accordance with paragraphs 8 and 9 of the Stipulation. The Notice of Intent shall identify the Escrow Property to be distributed and reflect the calculations supporting the amounts to be distributed (utilizing the formulas set forth on <u>Attachment "C"</u> and <u>Attachment "D"</u> to the Stipulation). The Escrow Parties shall have five (5) business days to object, in writing, to the Notice of Intent. Absent a timely written objection, the Escrow Agent shall distribute the Escrow Property in accordance with the terms of the Notice of Intent. In the event an Escrow Party objects to the Proposed Distribution and the Escrow Parties are unable to consensually resolve the objection within fifteen (15) days, the dispute shall be adjudicated by the court approving the Stipulation.

Section 8. <u>Termination</u>. This Agreement shall terminate upon the distribution of all Escrow Property from the Escrow Account established hereunder.

Section 9. <u>Resignation or Removal of Escrow Agent</u>. The Escrow Agent may resign and be discharged from its duties hereunder at any time by giving thirty (30) calendar days' prior written notice of such resignation to the Escrow Parties. The Escrow Parties may remove the Escrow Agent at any time by giving thirty (30) calendar days' prior written notice to the Escrow Agent. Upon such notice, a successor escrow agent shall be appointed by the Escrow Parties who shall provide written notice of such to the resigning Escrow Agent. Such successor escrow agent shall become the escrow agent hereunder upon the resignation or removal date specified in such notice. If the Escrow Parties are unable to agree upon a successor escrow agent within thirty (30) days after such notice, the Escrow Agent may, in its sole discretion, apply to the Bankruptcy Court for the appointment of a successor escrow agent or for other appropriate relief. Upon receipt of the identity of the successor escrow agent from the Escrow Parties, the Escrow Agent shall either deliver the Escrow Property then held hereunder to the successor Escrow Agent, less the Escrow Agent's costs to be paid from the interest that accrues on account of the Escrow Account. Upon its resignation and delivery of the Escrow Property as set forth in this Section, the Escrow Agent shall be discharged of and from any and all further obligations arising in connection with the Escrow Property or this Agreement.

Section 10. <u>The Escrow Agent</u>.

(a)    <u>Duties</u>. The duties, responsibilities and obligations of Escrow Agent shall be limited to those expressly set forth in the Escrow Agreement and Stipulation and no duties, responsibilities or obligations shall be inferred or implied against the Escrow Agent. The Escrow Agent shall not be subject to, nor be required to comply with, any other agreement to which the Escrow Parties are a party, even though reference thereto may be made herein, or to comply with any direction or instruction (other than those contained herein or delivered in accordance with this Agreement) from the Escrow Parties or an entity acting on their behalf.

3

(b)    Costs of Operating Escrow Account.    The Escrow Agent shall be authorized to use the interest earned on the cash in the Escrow Account to pay the reasonable and necessary costs of maintaining the Escrow Account, subject to compliance with the requirements of paragraph 6 of the Stipulation.

(c)    Accounting.    In accordance with paragraph 12 of the Stipulation, the Escrow Agent shall provide the Escrow Parties with access to information regarding the Escrow Account so that they may review the Account balance and any deposits, distributions or other Escrow Account activity.

(d)    Liability.    The Escrow Agent shall not be liable for any action taken or omitted or for any loss or injury resulting from its actions or its performance or lack of performance of its duties hereunder in the absence of gross negligence or willful misconduct on its part.    In no event shall the Escrow Agent be liable (i) for acting in accordance with or conclusively relying upon any instruction, notice, demand, certificate or document from the Escrow Parties or any entity acting on behalf of the Escrow Parties, (ii) for any indirect, consequential, punitive or special damages, regardless of the form of action and whether or not any such damages were foreseeable or contemplated, (iii) for the investment or reinvestment of any cash held hereunder, in each case in good faith, in accordance with the terms hereof, including without limitation any liability for any delays (not resulting from its gross negligence or willful misconduct) in the investment or reinvestment of the Escrow Property, or any loss of interest or income incident to any such delays, or (iv) for an amount in excess of the value of the Escrow Property, valued as of the date of deposit, but only to the extent of direct money damages.

The Escrow Agent shall not incur any liability for not performing any act or fulfilling any duty, obligation or responsibility hereunder by reason of any occurrence beyond the control of the Escrow Agent (including but not limited to any act or provision of any present or future law or regulation or governmental authority, any act of God or war, civil unrest, local or national disturbance or disaster, any act of terrorism, or the unavailability of the Federal Reserve Bank wire or facsimile or other wire or communication facility).

(e)    Instruction.    When the Escrow Agent acts on any information, instructions, communications, (including, but not limited to, communications with respect to the delivery of securities or the wire transfer of funds) sent by telex, facsimile, e-mail or other form of electronic or data transmission, the Escrow Agent, absent gross negligence, shall not be responsible or liable in the event such communication is not an authorized or authentic communication of the Escrow Parties or is not in the form the Escrow Parties sent or intended to send (whether due to fraud, distortion or otherwise).

(f)    Ambiguous Instruction.    In the event of any ambiguity or uncertainty hereunder or in any notice, instruction or other communication received by the Escrow Agent hereunder, the Escrow Agent may, in its sole discretion, refrain from taking any action other than to retain possession of the Escrow Property, unless the Escrow Agent receives written instructions, signed by the Escrow Parties which eliminates such ambiguity or uncertainty.

4

(g)     <u>Dispute Regarding Distribution of Escrow Property</u>.   In the event of any dispute between or conflicting claims between and among the Escrow Parties  and any other person or entity with respect to any Escrow Property, the Escrow Agent shall be entitled, in its sole discretion, to refuse to comply with any and all claims, demands or instructions with respect to such Escrow Property so long as such dispute or conflict shall continue, and the Escrow Agent shall not be or become liable in any way to the Escrow Parties for failure or refusal to comply with such conflicting claims, demands or instructions.  The Escrow Agent shall be entitled to refuse to act until either (i) such conflicting or adverse claims or demands shall have been determined by a final order, judgment or decree of the court adjudicating the Shareholder/Advisor Action or the court approving the Stipulation, which order, judgment or decree is not subject to appeal, or settled by agreement between the conflicting parties as evidenced in a writing satisfactory to the Escrow Agent, or (ii) the Escrow Agent shall have received security or an indemnity satisfactory to him sufficient to hold him harmless from and against any and all losses which he may incur by reason of so acting.

Section 11.  <u>Miscellaneous</u>.

(a)     <u>Entire Agreement</u>.   This Agreement, and its incorporation of all the provisions of the Stipulation, embodies the entire agreement and understanding among the Escrow Parties relating to the subject matter hereof.

(b)     <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without reference to the principles of conflict of laws.

(c)     <u>Jurisdiction</u>.  By the execution and delivery of this Agreement, the Escrow Parties hereto submit to the personal jurisdiction of the court adjudicating the Shareholder/Advisor Action and waive any and all objections to such jurisdiction, including any claim or objection that such court is in an inconvenient forum.

(d)     <u>Notice</u>.  All notices and other communications under this Agreement shall be in writing in English and shall be deemed given when delivered personally, on the next Business Day after delivery to a recognized overnight courier or mailed first class (postage prepaid) or when sent by facsimile or electronic mail to the Escrow Parties (which facsimile or electronic mail copy shall be followed, in the case of notices or other communications sent to the Escrow Agent, by delivery of the original) at the following addresses (or to such other address as an Escrow Party may have specified by notice given to the other Escrow Parties pursuant to this provision):

46429/0001-8964782v10

If to MSCS, to:

MORGAN STANLEY CAPITAL SERVICES, INC.
Franci He
James Monahan
1585 Broadway
New York, NY 10036
Facsimile: (212) 507-2860 (Franci He)
Facsimile: (212) 507-6456 (James Monahan)

With a copy to:

WEIL, GOTSHAL & MANGES LLP
Michael F. Walsh
Jonathan D. Polkes
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
michael.walsh@weil.com
jonathan.polkes@weil.com

If to DBTCA, as indenture trustee, to:

DEUTSCHE BANK TRUST COMPANY AMERICAS
c/o Deutsche Bank National Trust Company
Trust & Agency Services
Stanley Burg
Rodney Gaughan
100 Plaza One, 6th Floor, Mailstop JCY03-0699
Jersey City, NJ 07311-3901
Facsimile: (732) 380-2345
rodney.gaughan@db.com

With a copy to:

McCARTER & ENGLISH LLP
David J. Adler
245 Park Avenue, 27th Floor
New York, NY 10167
Telephone: (212) 609-6800
Facsimile: (212) 609-6921
dadler@mccarter.com

If to Law Debenture, as indenture trustee, to:

LAW DEBENTURE TRUST COMPANY OF NEW YORK
Law Debenture
James Heaney, CCTS, Sr. Trust Officer
400 Madison Avenue
Suite 4D
New York, NY  10017
James.Heaney@lawdeb.com

With a copy to:

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David S. Rosner
Matthew B. Stein
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
drosner@kasowitz.com
mstein@kasowitz.com

If to the Escrow Agent, to:

Marc S. Kirschner
KIRSCHNER CONSULTING COMPANY
18 E 94th Street
Suite 1A
New York, NY  10128
Telephone: (212) 348-2803
Facsimile: (212) 722-0349
mskirschner@kirschnerconsulting.com

With a copy to:

[]

or to such other address as the person to whom notice is to be given may have specified in a notice duly given to the sender as provided herein.


(e)    Headings.    The headings of the Sections of this Agreement have been inserted for convenience and shall not modify, define, limit or expand the express provisions of this Agreement.

46429/0001-8964782v10

(f)    <u>Amendments and Modifications</u>.  This Agreement may not be amended, supplemented or otherwise modified without the prior written consent of the Escrow Parties hereto.

(g)    <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts and any party hereto may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument.  Facsimile or electronic mail transmission of any signed original document, and retransmission of any facsimile or electronic mail transmission, shall be the same as delivery of any original document.  At the request of any Escrow Party, the other Escrow Parties shall confirm facsimile transmitted signatures and electronically mailed signatures by signing an original document.

(h)    <u>Severability</u>.  The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

(i)    <u>Authorized Representatives</u>.  For purposes of sending and receiving instructions or directions hereunder, all such instructions or directions shall be, and the Escrow Agent may conclusively rely upon such instructions or directions, delivered, and executed by representatives of the Escrow Parties designated on <u>Schedule 1</u> attached hereto and made a part hereof (each such representative, an "<u>Authorized Representative</u>") which such designation shall include specimen signatures of such representatives, as such <u>Schedule 1</u> may be updated from time to time.

(j)    <u>Effective Date of Agreement</u>.  This Agreement shall not be effective unless and until the Effective Date of the DCL Plan.

[SIGNATURES ON NEXT PAGE]

46429/0001-8964782v10

   IN WITNESS WHEREOF, the Escrow Parties hereto have caused this Agreement to be executed as of the day and year first above written.

      MORGAN STANLEY CAPITAL SERVICES INC.


      By_____
       Name:
       Title:


      LAW DEBENTURE TRUST COMPANY OF NEW YORK in its capacity as indenture trustee for certain Senior Notes


      By_____
       Name:
       Title:


      DEUTSCHE BANK TRUST COMPANY AMERICAS, in its capacity as indenture trustee for certain Senior Notes

      By Deutsche Bank National Trust Company

      By_____
       Name:
       Title:


      By_____
       Name:
       Title:


      LITIGATION TRUSTEE, as Escrow Agent


      By_____
       Name:
       Title:

## SCHEDULE 1

**Authorized Representatives**

<u>Name</u>                                    <u>Title</u>                              <u>Specimen Signature</u>

**Attachment "B"**

**Notice Parties**

## Notice Parties

TRIBUNE COMPANY
Attn: David Eldersveld, General Counsel
435 North Michigan Avenue
Chicago, IL 60611
Facsimile:  (312) 222-4206
deldersveld@tribune.com

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attn: Norman L. Pernick, Esquire
Attn: J. Kate Stickles, Esquire
Attn: Patrick J. Reilley, Esquire
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Facsimile:  (302) 652-3117
npernick@coleschotz.com
kstickles@coleschotz.com
preilley@coleschotz.com

Counsel for Debtors and
Debtors in Possession

ALVAREZ & MARSAL
NORTH AMERICA, LLC
Attn: Brian Whittman
Attn: Justin Schmaltz
55 West Monroe Street, Suite 4000
Chicago, IL  60603
bwhittman@alvarezandmarsal.com
jschmaltz@alvarezandmarsal.com

Restructuring Advisor for Debtors
and Debtors in Possession

ZUCKERMAN SPAEDER LLP
Attn: James Sottile, Esquire
1800 M Street, N.W., Suite 1000
Washington, D.C.  20036
Facsimile: (202) 822-8106
jsottile@zuckerman.com

Special Counsel to the Official Committee
of Unsecured Creditors

DEUTSCHE BANK TRUST COMPANY
AMERICAS
c/o Deutsche Bank National Trust Company
Trust & Agency Services
Attn: Stanley Burg
Attn: Rodney Gaughan
100 Plaza One, 6th Floor, Mailstop JCY03-0699
Jersey City, NJ 07311-3901
Facsimile: (732) 380-2345
rodney.gaughan@db.com

McCARTER & ENGLISH LLP
Attn: David J. Adler, Esquire
245 Park Avenue, 27th Floor
New York, NY 10167
Facsimile: (212) 609-6921
dadler@mccarter.com

Counsel to Deutsche Bank Trust Company Americas

MORGAN STANLEY CAPITAL SERVICES, INC.
Attn:  Franci He
Attn:  James Monahan
1585 Broadway
New York, NY 10036
Facsimile: (212) 507-2860 (He)
Facsimile: (212) 507-6456 (Monahan)

WEIL, GOTSHAL & MANGES LLP
Attn: Michael F. Walsh, Esquire
Attn: Jonathan D. Polkes, Esquire
767 Fifth Avenue
New York, NY 10153
Facsimile: (212) 310-8007
michael.walsh@weil.com
jonathan.polkes@weil.com

Counsel to Morgan Stanley Capital Services Inc.

LAW DEBENTURE TRUST COMPANY OF
NEW YORK
Attn: James Heaney, CCTS, Sr. Trust Officer
400 Madison Avenue
Suite 4D
New York, NY 10017
James.Heaney@lawdeb.com

KASOWITZ, BENSON,
TORRES & FRIEDMAN LLP
Attn: David S. Rosner, Esquire
Attn: Matthew B. Stein, Esquire
1633 Broadway
New York, NY 10019
Facsimile: (212) 506-1800
drosner@kasowitz.com
mstein@kasowitz.com

Counsel for Law Debenture Trust
Company of New York

KIRSCHNER CONSULTING COMPANY
Attn: Marc S. Kirschner
18 E 94th Street, Suite 1A
New York, NY 10128
Facsimile: (212) 722-0349
mskirschner@kirschnerconsulting.com

Litigation Trustee as Escrow Agent

<u>Attachment "C"</u>

**Hypothetical Calculations – DCL Plan Distributions Other Than Litigation Trust Interests**

(***Prepared for Illustrative Purposes Only***)

**Attachment C Part 1 - Draft Calculation of Reserved Distribution Amount - DCL Plan Distributions Other Than Litigation Trust Interest**

| | | | |
|---|---|---|---|
| DBTCA Noteholder Claim | $ 1,048,670,044.04 | [A] | |
| plus: DBTCA Fees Not Shared | $ 6,700,000.00 | [B] | Note: hypothetical estimate; for illustrative purposes only |
| plus: DBTCA Fees Shared | $ 8,168,546.45 | [C] | Note: hypothetical estimate; for illustrative purposes only |
| Allowed DBTCA Claim Before Any MSCS Setoff | $ 1,062,938,590.49 | [D] | |
| | | | |
| Law Debenture Noteholder Claim | $ 234,985,699.73 | [E] | |
| plus: Law Debenture Fees Not Shared | $ 10,000,000.00 | | Note: hypothetical estimate; for illustrative purposes only |
| plus: Law Debenture Fees Shared | $ 1,311,453.55 | [F] | Note: hypothetical estimate; for illustrative purposes only |
| Allowed Law Debenture Claim | $ 246,817,153.28 | [G] | |
| | | | |
| Allowed Senior Noteholder Claims Before Any MSCS Setoff | $ 1,309,755,743.77 | [H] = [D] + [G] | |
| Designated Debentures | $ 39,627,847.92 | [I] | |
| *Initial Designated Debenture Percentage* | 3.03% | [I] / [H] | |
| 3. Senior Noteholder Distributable Cash Amount ($431,041,451) | $ 431,041,451.00 | = [J] | |
| Initial Designated Debenture Distribution | $ 13,041,550.04 | [J] | |
| | | | |
| DBTCA Fees Not Shared | 6,700,000.00 | | |
| less: Distribution on Account of DBTCA Fees Not Shared | $ 2,204,974.28 | = [B] / [H] * [J] | Note: hypothetical estimate; for illustrative purposes only |
| DBTCA Fees Not Shared Charging Lien Amount | $ 4,495,025.72 | [K] | |
| | | | |
| DBTCA and Law Debenture Fees Shared | 10,000,000.00 | | |
| less: Distribution on Account of DBTCA and Law Debenture Fees Shared | $ 3,291,006.38 | [L] = [C] + [F] | Note: hypothetical estimate; for illustrative purposes only |
| DBTCA and Law Debenture Fees Shared Charging Lien Amount | $ 6,708,993.62 | [M] | [L] / [H] * [J] |
| | | | |
| Law Debenture Fees Shared | 1,311,453.55 | | |
| less: Distribution on Account of Law Debenture Fees Shared | 602,732.53 | = [F] / [H] * [J] | Note: hypothetical estimate; for illustrative purposes only |
| Law Debenture Fees Shared Charging Lien Amount | 1,228,721.02 | [M] | |
| | | | |
| *Designated Debenture Percentage of DBTCA Noteholder Claim* | 3.78% | [N] = [I] / [A] | |
| *Designated Debenture Percentage of DBTCA and Law Debenture Noteholder Claims* | 3.09% | [O] = [I] / ([A] + [E]) | |
| | | | |
| Initial Designated Debenture Distribution | 13,041,550.04 | | |
| less: Pro Rata Portion of DBTCA Fees Not Shared Charging Lien | 169,958.29 | = [K] * [N] | |
| less: Pro Rata Portion of DBTCA and Law Debenture Fees Shared Charging Lien | 207,210.78 | = [M] * [O] | |
| Reserved Distribution | 12,664,380.97 | | |

*Note: Line items in bold are defined terms in the Stipulation*

**Attachment C Page 2 - Hypothetical Setoff Valid Calculations - DCL Plan Distributions Other Than Litigation Trust Interests**

| | Scenario 1 | Scenario 2 | Scenario 3 | Scenario 4 | Scenario 5 | |
|---|---|---|---|---|---|---|
| **Assumptions** | | | | | | |
| % of MSCS Setoff Valid | 100.00% | 75.00% | 50.00% | 25.00% | 0.00% | [P] |
| **Initial MSCS Reduction** | | | | | | |
| Initial MSCS Claim | $ 39,627,847.92 | $ 29,720,885.94 | $ 19,813,923.96 | $ 9,906,961.98 | $ - | [Q] = [II] * [P] |
| Disputed MSCS Claim | $ - | $ 9,906,961.98 | $ 19,813,923.96 | $ 29,720,885.94 | $ 39,627,847.92 | [R] = [JJ] - [Q] |
| Revised Allowed Senior Noteholder Claims | $ 1,270,127,893.85 | $ 1,280,034,857.83 | $ 1,289,941,819.81 | $ 1,299,848,781.79 | $ 1,309,755,743.77 | [S] = [H] - [Q] |
| Revised DBTCA Noteholder Claim | $ 1,008,442,196.12 | $ 1,018,349,158.10 | $ 1,028,256,120.08 | $ 1,038,163,082.06 | $ 1,048,070,044.04 | [T] = [A] - [Q] |
| Revised MSCS Noteholder Claim | $ 1,243,427,895.85 | $ 1,253,334,857.83 | $ 1,263,241,819.81 | $ 1,273,148,781.79 | $ 1,283,055,743.77 | [U] = [E] + [T] |
| Revised Law Debenture Fees Shared Percentage | 0.14% | 0.14% | 0.14% | 0.14% | 0.14% | [V] = [F] / [S] |
| Revised DBTCA and Law Debenture Fees Shared Percentage | 0.79% | 0.78% | 0.78% | 0.77% | 0.76% | [W] = [U] / [S] |
| **Initial Law Debenture Escrow Distribution** | | | | | | |
| Initial Designated Debenture Distribution | $ 13,041,550.04 | $ 13,041,550.04 | $ 13,041,550.04 | $ 13,041,550.04 | $ 13,041,550.04 | |
| x % of MSCS Setoff Valid | 100.00% | 75.00% | 50.00% | 25.00% | 0.00% | |
| x Revised Law Debenture Percentage | 19.43% | 19.28% | 19.13% | 18.99% | 18.84% | = [G] / [S] |
| Initial Incremental Law Debenture Escrow Distribution | $ 2,534,294.59 | $ 1,886,010.12 | $ 1,247,683.50 | $ 619,087.06 | $ - | |
| Initial Incremental DBTCA Escrow Distribution | $ 6,606,314.59 | $ 6,632,580.37 | $ 6,658,442.70 | $ 6,683,910.80 | $ 6,708,993.62 | |
| x (Revised Law Debenture Notes % of Total Notes) | 18.90% | 18.75% | 18.60% | 18.46% | 18.31% | = [B] / [U] |
| x (Initial Law Debenture and Law Debenture Fees Shared Charging Lien Amount) | $ 6,706,993.62 | $ 6,708,993.62 | $ 6,708,993.62 | $ 6,708,993.62 | $ 6,708,993.62 | = [L] - [U] * [W] |
| x (Initial DBTCA and Law Debenture Notes % of Total Notes) | 18.31% | 18.31% | 18.31% | 18.31% | 18.31% | = [E] / ([A] + [E]) |
| less: Initial Law Debenture Fees Shared Charging Lien Amount | $ 1,238,721.02 | $ 1,238,721.02 | $ 1,238,721.02 | $ 1,238,721.02 | $ 1,238,721.02 | |
| plus: Revised Initial Law Debenture Fees Shared Charging Lien Amount | $ 1,209,915.83 | $ 1,214,726.29 | $ 1,219,462.85 | $ 1,224,127.22 | $ 1,228,721.02 | = [F] - [J] * [V] |
| Initial Law Debenture Escrow Distribution | $ 2,495,734.77 | $ 1,857,204.77 | $ 1,228,556.25 | $ 609,561.56 | $ - | |
| **Initial DBTCA Escrow Distribution** | | | | | | |
| Reserved Distribution | $ 12,664,380.97 | $ 12,664,380.97 | $ 12,664,380.97 | $ 12,664,380.97 | $ 12,664,380.97 | = [M] |
| x % of MSCS Setoff Valid | 100.00% | 75.00% | 50.00% | 25.00% | 0.00% | |
| less: Initial Law Debenture Escrow Distribution | $ 2,495,734.77 | $ 1,857,204.77 | $ 1,228,556.25 | $ 609,561.56 | $ - | |
| (Initial DBTCA Charging Lien (if any)) | $ 10,168,646.20 | $ 7,641,080.96 | $ 5,103,654.24 | $ 2,556,533.68 | $ - | |
| x MSCS Share of Revised DBTCA Noteholder Claims | 0.00% | 0.97% | 1.93% | 2.86% | 3.78% | = [R] / [T] |
| x MSCS Pro Rata Share for Disputed Claim | $ - | $ 74,335.50 | $ 98,344.20 | $ 73,189.32 | $ - | |
| **Remaining Reserve** | | | | | | |
| Reserved Distribution | $ 12,664,380.97 | $ 12,664,380.97 | $ 12,664,380.97 | $ 12,664,380.97 | $ 12,664,380.97 | |
| less: Initial Law Debenture Escrow Distribution | $ 2,495,734.77 | $ 1,857,204.77 | $ 1,228,556.25 | $ 609,561.56 | $ - | |
| less: Initial DBTCA Escrow Distribution | $ 10,168,646.20 | $ 7,641,080.96 | $ 5,103,654.24 | $ 2,556,533.68 | $ - | |
| plus MSCS Pro Rata Share for Disputed Claim | $ - | $ 74,335.50 | $ 98,344.20 | $ 73,189.32 | $ - | |
| Remaining Reserve | $ - | $ 3,240,431.14 | $ 6,430,534.68 | $ 9,571,475.05 | $ 12,664,380.97 | = [R] / [T] |

*Note: Line items in bold are defined terms in the Stipulation*

**Attachment C Page 3 - Hypothetical Allowed Claim Calculations - DCL Plan Distributions Other Than Litigation Trust Interests**

| | Scenario 3a | Scenario 3b | Scenario 5a | Scenario 5b | Scenario 5c | |
|---|---|---|---|---|---|---|
| **Assumptions** | | | | | | |
| % Setoff Valid (from prior page) | 50.00% | 50.00% | 0.00% | 0.00% | 0.00% | = [P] |
| % of Remaining MSCS Claim Allowed | 50.00% | 100.00% | 75.00% | 100.00% | 0.00% | [X] |
| Additional MSCS Reduction | $ 9,906,961.98 | $ - | $ 9,906,961.98 | $ - | $ - | |
| Total MSCS Reduction | $ 29,720,885.94 | $ 19,813,923.96 | $ 29,720,885.94 | $ 39,627,847.92 | $ 39,627,847.92 | [Y] = (1 - [X]) * [R] |
| Allowed MSCS Claim | $ 9,906,961.98 | $ 19,813,923.96 | $ 9,906,961.98 | $ 39,627,847.92 | $ 39,627,847.92 | = [Q] + (1 - [X]) * [R] |
| Final Allowed Senior Noteholder Claims | $ 1,380,034,857.83 | $ 1,289,941,819.81 | $ 1,299,848,781.79 | $ 1,309,755,743.77 | $ 1,270,127,895.85 | [Z] = [I] - [Y] |
| Final DBTCA Noteholder Claim | $ 1,018,349,158.10 | $ 1,028,256,120.08 | $ 1,038,163,082.06 | $ 1,048,070,044.04 | $ 1,008,442,196.12 | [AA] = [H] - [Y] |
| Final DBTCA Noteholder Claim and Law Debenture Noteholder Claim | $ 1,253,134,857.83 | $ 1,263,241,819.81 | $ 1,273,148,781.79 | $ 1,283,055,743.77 | $ 1,243,427,895.85 | [BB] = [A] - [Y] |
| *Final Law Debenture and Law Debenture Fees Shared Percentage* | 0.14% | 0.14% | 0.14% | 0.14% | 0.14% | [CC] = [E] + [BB] |
| *Final DBTCA and Law Debenture Fees Shared Percentage* | 0.78% | 0.78% | 0.77% | 0.76% | 0.79% | [DD] = [F] / [AA] |
| | | | | | | [EE] = [L] / [AA] |
| **MSCS Escrow Distribution** | | | | | | |
| Initial Designated Debenture Distribution | $ 6,430,534.68 | $ 6,430,534.68 | $ 12,664,380.97 | $ 12,664,380.97 | $ 13,041,550.04 | |
| Remaining Reserve | $ 6,430,534.68 | $ 6,430,534.68 | $ 9,498,285.73 | $ 12,664,380.97 | $ 12,664,380.97 | |
| % of Remaining MSCS Claim Allowed | 50.00% | 100.00% | 75.00% | 100.00% | 0.00% | = [X] |
| MSCS Escrow Distribution | $ 3,215,267.34 | $ 6,430,534.68 | $ 9,498,285.73 | $ 12,664,380.97 | $ - | |
| **Final Law Debenture Escrow Distribution** | | | | | | |
| Initial Designated Debenture Distribution | $ 13,041,550.04 | $ 13,041,550.04 | $ 13,041,550.04 | $ 13,041,550.04 | $ 13,041,550.04 | |
| % % of MSCS Setoff Valid / Claim Disallowed | 75.00% | 50.00% | 25.00% | 0.00% | 100.00% | |
| % Final Percentage | 19.28% | 19.13% | 18.99% | 18.84% | 19.43% | = [G] / [AA] |
| Total Incremental Law Debenture Escrow Distribution | $ 1,886,010.12 | $ 1,247,683.59 | $ 619,087.06 | $ - | $ 2,534,294.59 | = [P] * (1 - [P]) * (1 - [X]) |
| less (Final Law Debenture Notes % of Total Notes) | 18.75% | 18.40% | 18.46% | 18.31% | 18.90% | = [E] / [CC] |
| & Final DBTCA and Law Debenture Fees Shared Charging Lien Amount | $ 6,632,580.37 | $ 6,658,442.70 | $ 6,683,910.80 | $ 6,708,993.62 | $ 6,606,314.59 | = [L] - [J] * [EE] |
| plus (Initial Law Debenture Notes % of Total Notes) | 18.31% | 18.31% | 18.31% | 18.31% | 18.31% | = [E] / [CC] |
| & Initial DBTCA and Law Debenture Fees Shared Charging Lien Amount) | $ 6,708,993.62 | $ 6,708,993.62 | $ 6,708,993.62 | $ 6,708,993.62 | $ 6,708,993.62 | = [L] / [AA] * [EE] |
| less Initial Law Debenture Fees Shared Charging Lien Amount | $ 1,228,721.02 | $ 1,228,721.02 | $ 1,228,721.02 | $ 1,228,721.02 | $ 1,228,721.02 | = [M] |
| plus Final Law Debenture Fees Shared Charging Lien Amount | $ 1,214,726.29 | $ 1,219,460.85 | $ 1,224,127.22 | $ 1,228,721.02 | $ 1,209,915.83 | |
| less Law Debenture Escrow Distribution | $ 1,228,556.25 | $ 1,228,556.25 | $ 1,228,556.25 | $ 1,228,556.25 | $ 1,228,556.25 | |
| Final Law Debenture Escrow Distribution | $ 628,648.52 | $ 628,648.52 | $ 609,561.56 | $ - | $ 2,495,734.77 | = [F] - [J] * [DD] |
| **Final DBTCA Escrow Distribution** | | | | | | |
| Remaining Reserve | $ 6,430,534.68 | $ 6,430,534.68 | $ 12,664,380.97 | $ 12,664,380.97 | $ 12,664,380.97 | |
| less MSCS Escrow Distribution | $ 3,215,267.34 | $ 6,430,534.68 | $ 9,498,285.73 | $ 12,664,380.97 | $ - | |
| less Final Law Debenture Escrow Distribution | $ 628,648.52 | $ 628,648.52 | $ 609,561.56 | $ - | $ 2,495,734.77 | |
| Final DBTCA Escrow Distribution | $ 2,586,618.82 | $ - | $ 2,556,533.68 | $ - | $ 10,168,646.20 | |
| less Incremental DBTCA Charging Lien (if any) | $ - | $ - | $ - | $ - | $ - | |
| ½ MSCS Share of Final DBTCA Noteholder Claims | 0.97% | 1.93% | 2.86% | 3.78% | 0.00% | = [Z] / [BB] |
| MSCS Pro Rata Share for Allowed Claim | $ 25,163.80 | $ - | $ 73,189.32 | $ - | $ - | = [Z] / [BB] |
| **Summary - Total Stipulation Distributions** | | | | | | |
| MSCS (1) | $ 3,240,431.14 | $ 6,430,534.68 | $ 9,571,475.05 | $ 12,664,380.97 | $ - | |
| Law Debenture (2) | $ 1,857,204.77 | $ 1,228,556.25 | $ 609,561.56 | $ - | $ 2,495,734.77 | |
| DBTCA (3) | $ 7,566,745.06 | $ 5,005,290.04 | $ 2,483,344.36 | $ - | $ 10,168,646.20 | |
| Total Stipulation Payments | $ 12,664,380.97 | $ 12,664,380.97 | $ 12,664,380.97 | $ 12,664,380.97 | $ 12,664,380.97 | |

*Note: Line items in bold are defined terms in the Stipulation*

(1) MSCS Escrow Distribution plus MSCS Pro Rata Share for Allowed Claim
(2) Initial Law Debenture Escrow Distribution plus Final Law Debenture Escrow Distribution
(3) Initial DBTCA Escrow Distribution plus Final DBTCA Escrow Distribution less MSCS Pro Rata Share for Disputed Claim less MSCS Pro Rata Share for Allowed Claim

## Attachment "D"

**Hypothetical Calculations – Distributions of Litigation Trust Interests**

***(Prepared for Illustrative Purposes Only)***

**Attachment D Page 1 - Draft Calculation of Reserved Distribution Amount – Distributions of Litigation Trust Interests (expressed as %)**

| | | | | |
|---|---|---|---|---|
| DBTCA Noteholder Claim | $ | 1,048,070,044.04 | [A] | |
| plus: DBTCA Fees Not Shared | $ | 6,700,000.00 | [B] | Note: hypothetical estimate; for illustrative purposes only |
| plus: DBTCA Fees Shared | $ | 8,168,546.45 | [C] | Note: hypothetical estimate; for illustrative purposes only |
| **Allowed DBTCA Claim Before Any MSCS Setoff** | $ | 1,062,938,590.49 | [D] | |
| | | | | |
| Law Debenture Noteholder Claim | $ | 234,985,699.73 | [E] | |
| plus: Law Debenture Fees Not Shared | $ | 10,000,000.00 | | Note: hypothetical estimate; for illustrative purposes only |
| plus: Law Debenture Fees Shared | $ | 1,831,453.55 | | Note: hypothetical estimate; for illustrative purposes only |
| **Allowed Law Debenture Claim** | $ | 246,817,153.28 | [F] | |
| | | | | |
| **Allowed Senior Noteholder Claims Before Any MSCS Setoff** | $ | 1,309,755,743.77 | [G] = [D] + [F] | |
| **Designated Debentures** | $ | 39,627,847.92 | [H] | |
| | | | | |
| (Initial Designated Debenture Percentage | | 3.03% | = [H] / [G] | |
| plus: (MSCS% of DBTCA Noteholder Claim | | 3.78% | = [H] / [A] | |
| x DBTCA Fees % of Allowed Senior Noteholder Claims Before Any MSCS Setoff)) | | 1.14% | = ([B] + [C]) / [G] | |
| x Class 1E Litigation Trust Interest (expressed as %) | | 100% | | |
| **Reserved Distribution - Litigation Trust Interest (%)** | | 3.07% | | |

Note: Line items in bold are defined terms in the Stipulation
Note: Model assumes that (1) Indenture Trustee fees are paid in full by exercising charging liens against cash distributions and (2) Litigation Trust Interests distributed to Indenture Trustees for fee claims are distributed to each Indenture Trustee's Senior Noteholders

**Attachment D Page 2 - Hypothetical Setoff Yield Calculations - Distributions of Litigation Trust Interests (expressed as %)**

| | Scenario 1 | Scenario 2 | Scenario 3 | Scenario 4 | Scenario 5 | [1] |
|---|---|---|---|---|---|---|
| **Assumptions** | | | | | | |
| % of MSCS Setoff Valid | 100.00% | 75.00% | 50.00% | 25.00% | 0.00% | |
| | | | | | | |
| Initial MSCS Reduction | $ 39,627,847.92 | $ 29,720,885.94 | $ 19,813,923.96 | $ 9,906,961.98 | $ - | |
| Disputed MSCS Claim | $ - | $ 9,906,961.98 | $ 19,813,923.96 | $ 29,720,885.94 | $ 39,627,847.92 | |
| Revised Allowed Senior Noteholder Claims | $ 1,270,127,395.85 | $ 1,280,034,357.83 | $ 1,289,941,319.81 | $ 1,299,848,781.79 | $ 1,309,755,743.77 | |
| Revised DBTCA Noteholder Claim | $ 1,008,442,196.12 | $ 1,018,349,158.10 | $ 1,028,256,120.08 | $ 1,038,163,082.06 | $ 1,048,070,044.04 | |
| | | | | | | |
| **Initial Law Debenture Escrow Distribution** | | | | | | |
| Initial Designated Debenture Distribution - Litigation Trust Interests (%) | 3.07% | 3.07% | 3.07% | 3.07% | 3.07% | |
| x % of MSCS Setoff Valid | 100.00% | 75.00% | 50.00% | 25.00% | 0.00% | [J] = [H] * [I] |
| x Revised Law Debenture Percentage | 19.43% | 19.28% | 19.13% | 18.99% | 18.84% | [K] = [H] - [J] |
| **Initial Law Debenture Escrow Distribution - Litigation Trust Interests (%)** | 0.60% | 0.44% | 0.29% | 0.15% | 0.00% | [L] = [G] - [J] |
| | | | | | | [M] = [A] - [J] |
| **Initial DBTCA Escrow Distribution** | | | | | | |
| Reserved Distribution - Litigation Trust Interests (%) | 3.07% | 3.07% | 3.07% | 3.07% | 3.07% | |
| x % of MSCS Setoff Valid | 100.00% | 75.00% | 50.00% | 25.00% | 0.00% | |
| less: Initial Law Debenture Escrow Distribution - Litigation Trust Interests (%) | 0.60% | 0.44% | 0.29% | 0.15% | 0.00% | |
| Initial DBTCA Escrow Distribution - Litigation Trust Interests (%) | 2.47% | 1.86% | 1.24% | 0.62% | 0.00% | |
| x MSCS Share of Revised DBTCA Noteholder Claims | 0.00% | 0.97% | 1.93% | 2.86% | 3.78% | |
| MSCS Pro Rata Share for Disputed Claim - Litigation Trust Interests (%) | 0.00% | 0.02% | 0.02% | 0.02% | 0.00% | = [K] / [M] |
| | | | | | | |
| **Remaining Reserve** | | | | | | |
| Reserved Distribution - Litigation Trust Interests (%) | 3.07% | 3.07% | 3.07% | 3.07% | 3.07% | |
| less: Initial Law Debenture Escrow Distribution - Litigation Trust Interests (%) | 0.60% | 0.44% | 0.29% | 0.15% | 0.00% | |
| less: Initial DBTCA Escrow Distribution - Litigation Trust Interests (%) | 2.47% | 1.86% | 1.24% | 0.62% | 0.00% | |
| plus: MSCS Pro Rata Share for Disputed Claim - Litigation Trust Interests (%) | 0.00% | 0.02% | 0.02% | 0.02% | 0.00% | |
| Remaining Reserve - Litigation Trust Interests (%) | 0.00% | 0.79% | 1.56% | 2.32% | 3.07% | |

*Note: Line items in bold are defined terms in the Stipulation*

*Note: Model assumes that (1) Indenture Trustee fees are paid in full by exercising charging liens against cash distributions and (2) Litigation Trust Interests distributed to Indenture Trustees for fee claims are distributed to each Indenture Trustee's Senior Noteholders*

## Attachment D Page 3 - Hypothetical Allowed Claim Calculations – Distributions of Litigation Trust Interests (expressed as %)

| | Scenario 3a | Scenario 3b | Scenario 5a | Scenario 5b | Scenario 5c | |
|---|---|---|---|---|---|---|
| **Assumptions** | | | | | | |
| % Setoff Valid (from prior page) | 50.00% | 50.00% | 0.00% | 0.00% | 0.00% | [N] |
| % of Remaining MSCS Claim Allowed | 50.00% | 100.00% | 75.00% | 100.00% | 0.00% | |
| | | | | | | |
| **Additional MSCS Reduction** | $ 9,906,961.98 | $ 19,813,923.96 | $ 9,906,961.98 | $ - | $ 39,627,847.92 | = (1 - [N]) * [K] |
| Total MSCS Reduction | $ 29,720,885.94 | $ 19,813,923.96 | $ 29,720,885.94 | $ 39,627,847.92 | $ 39,627,847.92 | [O] = [J] + (1 - [N]) * [K] |
| Allowed MSCS Claim | $ 9,906,961.98 | $ 19,813,923.96 | $ 9,906,961.98 | $ - | $ - | [P] = [H] / [O] |
| Final Allowed Senior Noteholder Claims | $ 1,280,034,857.83 | $ 1,289,941,819.81 | $ 1,299,848,781.79 | $ 1,309,755,743.77 | $ 1,270,127,895.85 | [Q] = [G] + [H] |
| Final DBTCA Noteholder Claim | $ 1,018,349,158.10 | $ 1,028,256,120.08 | $ 1,038,163,082.06 | $ 1,048,070,044.04 | $ 1,008,442,196.12 | [R] = [A] - [O] |
| | | | | | | |
| **MSCS Escrow Distribution** | | | | | | |
| Remaining Reserve – Lit Trust Interest (%) | 1.56% | 1.56% | 3.07% | 3.07% | 3.07% | [N] |
| x % of Remaining MSCS Claim Allowed | 50.00% | 100.00% | 75.00% | 100.00% | 0.00% | |
| MSCS Escrow Distribution - Litigation Trust Interest (%) | 0.78% | 1.56% | 2.30% | 3.07% | 0.00% | |
| | | | | | | |
| **Final Law Debenture Escrow Distribution** | | | | | | |
| (Reserved Distribution - Litigation Trust Interest (%) | 3.07% | 3.07% | 3.07% | 3.07% | 3.07% | |
| x % of MSCS Setoff Valid / Claim Disallowed) | 75.00% | 50.00% | 25.00% | 0.00% | 100.00% | = (1 - [J]) * (1 - [N]) |
| x Final Law Debenture Percentage) | 19.28% | 19.13% | 18.99% | 18.84% | 19.45% | = [F] / [O] |
| less Initial Law Debenture Escrow Distribution - Litigation Trust Interest (%) | 0.29% | 0.29% | 0.00% | 0.00% | 0.00% | |
| Final Law Debenture Escrow Distribution - Litigation Trust Interest (%) | 0.15% | 0.29% | 0.15% | 0.00% | 0.00% | |
| | | | | | | |
| **Final DBTCA Escrow Distribution** | | | | | | |
| Remaining Reserve - Litigation Trust Interest (%) | 1.56% | 1.56% | 3.07% | 3.07% | 3.07% | |
| less MSCS Escrow Distribution - Litigation Trust Interest (%) | 0.78% | 1.56% | 2.30% | 3.07% | 0.00% | |
| less Final Law Debenture Escrow Distribution - Litigation Trust Interest (%) | 0.15% | 0.29% | 0.15% | 0.00% | 0.00% | |
| Final DBTCA Escrow Distribution - Litigation Trust Interest (%) | 0.63% | 0.00% | 0.62% | 0.00% | 2.47% | |
| x MSCS Share of Final DBTCA Noteholder Claims | 0.97% | 1.93% | 2.86% | 3.78% | 0.00% | = [F] / [R] |
| MSCS Pro Rata Share for Litigation Trust Interest (%) | 0.01% | 0.00% | 0.02% | 0.00% | 0.00% | |
| | | | | | | |
| **Summary - Total Stipulation Litigation Trust Interest Distributions** | | | | | | |
| MSCS (1) | 0.79% | 1.56% | 2.32% | 3.07% | 0.00% | |
| Law Debenture (2) | 0.44% | 0.29% | 0.15% | 0.00% | 0.00% | |
| DBTCA (3) | 1.84% | 1.22% | 0.60% | 0.00% | 2.47% | |
| Total Stipulation Litigation Trust Interest Distributions | 3.07% | 3.07% | 3.07% | 3.07% | 3.07% | |

(1) MSCS Distribution plus MSCS Pro Rata Share for Allowed Claim
(2) Initial Law Debenture Escrow Distribution plus Final Law Debenture Escrow Distribution
(3) Initial DBTCA Escrow Distribution plus Final DBTCA Escrow Distribution less MSCS Pro Rata Share for Allowed Claim

*Note: Line items in bold are defined items in the Stipulation*
*Note: Model assumes that (1) Indenture Trustee fees are paid in full by exercising charging liens against cash distributions and (2) Litigation Trust Interests distributed to Indenture Trustees for fee claims are distributed to each Indenture Trustee's Senior Noteholders*