## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: January 16, 2013 at 11:00 a.m.**<br>**Objection Deadline: January 4, 2013 at 4:00 p.m.** |

## KTLA, INC.'S OBJECTION TO CLAIM NO. 4412 OF MARTA WALLER PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to Claim No. 4412 filed against Debtor KTLA, Inc. ("KTLA") by claimant Marta Waller (the "Waller Claim"), a copy of which is attached hereto as Exhibit A.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

This Objection is submitted pursuant to Sections 502(b) and 558 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  By this Objection, Debtors request the entry of an order disallowing and expunging the Waller Claim in its entirety, for reasons described in detail below.  In support of this Objection, the Debtors rely on the Declaration of Michael Bourgon, Vice President of Tribune Company (the "Bourgon Declaration"), attached hereto as Exhibit B.  In further support of this Objection, the Debtors respectfully state as follows:

## INTRODUCTION

1.      The Waller Claim against KTLA should be disallowed in its entirety on numerous grounds detailed in this Objection.  In summary, however, the Waller Claim should be disallowed because (i) Ms. Waller has no right to payment from KTLA and the entity that would have a right to payment under the applicable contract did not file a proof of claim by the bar date for filing claims in the Debtors' chapter 11 cases, (ii) the contract giving rise to the Waller Claim expired of its own accord prior to the Petition Date and had been fully performed, such that no further right to payment existed thereunder as of the Petition Date, (iii) nothing in the relevant contract required its extension upon expiration, and (iv) the Waller Claim alleges entirely employment-based causes of action notwithstanding the indisputable fact that Ms. Waller was not an employee of KTLA.  Even if Ms. Waller could overcome those obstacles – and she cannot – her claim also fails as a matter of applicable non-bankruptcy law (specifically, California law) because (i) failure to renew an employment contract does not give rise to a claim under California law, (ii) Ms. Waller has not sufficiently alleged either an age discrimination claim or a gender discrimination claim under California law, (iii) she does not have the predicate claims necessary to assert a failure-to-prevent-discrimination claim under the California Fair

2

Employment and Housing Act ("FEHA"), and (iv) she has not affirmatively alleged that she has exhausted the FEHA's administrative remedies as required by California law.  Finally, even if those defects in the Waller Claim could be overlooked, it remains that Ms. Waller has demonstrated no damages whatsoever from KTLA's alleged conduct, much less an entitlement to the $5,000,000 she seeks to be paid from KTLA's estate.

2.      Counsel for the Debtors has attempted to contact counsel for Ms. Waller on multiple occasions throughout the pendency of the Debtors' chapter 11 proceedings requesting that Ms. Waller provide additional supporting information regarding the grounds for the Waller Claim.  The Debtors have received no substantive response to such requests.  The Debtors accordingly request that this Court disallow and expunge the Waller Claim from the Claims Register to reflect the fact that such claim has no cognizable basis on which to be asserted against KTLA.

## STATUS OF CASE AND JURISDICTION

3.      On December 8, 2008 (the "Petition Date"), KTLA, Tribune Company ("Tribune"), the indirect parent company of KTLA, and certain of Tribune's other affiliates each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 12, 2009.

4.      The Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  (Docket Nos. 43, 2333.)

46429/0001-9080831v

5.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' Chapter 11 cases (the "Committee").

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, 3007.

## FACTUAL BACKGROUND CONCERNING THE WALLER CLAIM

### I.    Ms. Waller's Prepetition Services for KTLA and the PPI Contract

8.      Prior to the Petition Date, Ms. Waller performed various on-air services for KTLA, which operates a television station in the Los Angeles, California media market. Specifically, Ms. Waller provided KTLA with various reporting services, including preparing and presenting news reports and providing commentary and analysis on a variety of topics to KTLA's viewers.  Ms. Waller's services were provided pursuant to an agreement between KTLA and Persistence Pays, Inc. ("PPI") dated October 14, 2007 (the "PPI Contract").  A copy of the PPI Contract was not appended to the Waller Claim, but is attached hereto as Exhibit C. Of relevance to this Objection, the PPI Contract provided as follows:

- PPI would furnish Ms. Waller's services to KTLA in the capacities described above (PPI Contract at ¶ 1(a)).
- The PPI Contract began "as of October 18, 2007 and will continue until October 17, 2008" (PPI Contract at ¶ 2).
- PPI would be paid $200,000 in consideration for providing Ms. Waller's services to KTLA, in addition to a $3,000 payment to PPI as a clothing allowance for Ms.

4

Waller, and PPI would be reimbursed for travel expenses incurred (PPI Contract at ¶¶ 3(a), 4(a), 5).[2]

- PPI and KTLA entered into the PPI Contract "as independent contractors, rather than as employer and employee", and PPI assumed responsibility for all obligations imposed by law on employers, including filing federal and state tax returns on the basis of PPI's status as an independent contractor (PPI Contract at ¶ 21). The PPI Contract further stated that "neither [PPI] nor [Ms. Waller] will be treated as KTLA's employee for federal, state or local income or employment tax purposes" (Id.)

- KTLA had the right, but not the obligation, to negotiate with PPI and Ms. Waller during the term of the PPI Contract "with respect to the terms and conditions for [Ms. Waller's] rendering services on behalf of KTLA subsequent to" the term of the PPI Contract (PPI Contract at ¶ 24(a)).

- If the contract term expired with no agreement for any further services to be provided by Ms. Waller to KTLA, KTLA would have a right of first refusal for Ms. Waller's services for a period of six months after the expiration date of the PPI Contract's term or Ms. Waller's last day of work for KTLA, whichever was later (PPI Contract at ¶24(b)).

- The PPI Contract constituted the entire agreement between PPI, Ms. Waller, and KTLA (PPI Contract at ¶27).

Ms. Waller is not a party to the PPI Contract, although she executed the PPI Contract on behalf of PPI.

9.    In accordance with the PPI Contract, Ms. Waller provided services to KTLA throughout the term of the PPI Contract. KTLA, in turn, paid the amounts set forth therein to PPI. Prior to the expiration of the PPI Contract's term in October 2008 – approximately two months before the Petition Date – KTLA advised Ms. Waller that it did not intend to renew the PPI Contract; in other words, the PPI Contract was allowed to expire in accordance with its terms. *See* Bourgon Declaration at ¶ 5. Ms. Waller performed no services for KTLA after the expiration of the PPI Contract in October 2008.[3] *See* Bourgon Declaration at ¶ 6. To the best of

---

[2] KTLA had no ability to determine the salary, nor did it have knowledge as to the salary, if any, that Ms. Waller received from PPI. *See* Bourgon Declaration at ¶ 7.

[3] In correspondence addressed to the Court that was submitted at the same time as a predecessor claim to the Waller Claim was filed (see ¶ 15, below), Ms. Waller's counsel stated that such counsel's "independent" investigation concluded that Ms. Waller's "termination" was "in breach of an implied employment contract...." *See* Letter from Law Offices of Michael J. Piuze dated Jan. 9, 2009, appended to Claim No. 263. This argument is inconsistent with

KTLA's knowledge, all amounts that were owed to PPI under the PPI Contract were paid to PPI

prior to the Petition Date, and the PPI Contract was fully performed by both PPI and KTLA prior

to the Petition Date. *See* Bourgon Declaration at ¶ 8.

## II.    The Bar Date and Notice Thereof to PPI

10.    On March 26, 2009, the Court entered an order (the "Bar Date Order") (i)

establishing June 12, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final

date and time for all persons and entities holding or asserting a claim against the Debtors (other

than Tribune CNLBC, LLC)  arising on or before the Petition Date to file proofs of claim in

these chapter 11 cases and (ii) approving the form and manner of notice of the Bar Date.  Written

notice of the Bar Date was mailed to, among others, all known creditors listed on the Debtors'

Schedules of Assets and Liabilities, as amended, and the Bar Date Order was served on all

parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar

Date Order.  In addition to mailing such actual notice, the Debtors also published notice of the

Bar Date in the National Editions of the *Wall Street Journal*, *New York Times*, *Chicago Tribune*,

and *Los Angeles Times* on May 12, 2009.

11.    Of particular relevance to this Objection, the Debtors served notice of the Bar

Date on both (i) Ms. Waller, at the address of her counsel set forth in a predecessor to the Waller

Claim filed by Ms. Waller,[4] and (ii) PPI, at the address set forth in the PPI Contract (4158

Farmdale Avenue, Studio City, CA 91604).  Proof of service of notice of the Bar Date on PPI is

attached to this Objection as Exhibit D.

---

the provision in the PPI Contract that provides that the PPI Contract contains the entire agreement between PPI,
KTLA, and Ms. Waller.  (*See* PPI Contract at ¶ 27.)  The Waller Claim provides no support for any assertion that an
implied employment contract may have existed, nor has any supplemental information been received from Ms.
Waller or her counsel on the subject.
[4] Notice of the Bar Date was served on Ms. Waller because she filed a proof of claim against Tribune on January 13,
2009, prior to distribution of the bar date notice. *See* discussion at ¶ 15, below.

### III.    Filing of the Waller Claim

12.    The Waller Claim was received on June 10, 2009 and recorded as Claim No. 4412 on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors to assist with claims processing in the Debtors' Chapter 11 cases (the "Claims Agent").  The Waller Claim is asserted against KTLA in the amount of $5,000,000.00, which makes it among the highest-value individual claims presently asserted in the Debtors' Chapter 11 cases.

13.    Appended to the Waller Claim is a draft civil complaint dated January 7, 2009, apparently prepared by counsel for Ms. Waller (the "Proposed Complaint").  The Proposed Complaint names KTLA, Tribune, and certain other named and unnamed individual defendants. *See* Exhibit A, Proposed Complaint at ¶¶ 1-7.  To the best of the Debtors' knowledge, the Waller Claim was not filed with any court prior to the Petition Date.

14.    The Waller Claim asserts on its face that it is based on "wrongful termination/age and gender discrimination" and refers to the Proposed Complaint.  *See* Exhibit A.  The Proposed Complaint alleges, in relevant part, that:

- Ms. Waller was employed with KTLA from 1984 through 2008, and that her "employment with KTLA, INC. continued until her involuntary termination which led to her leaving her work with KTLA, INC. on October 17, 2008" (Exhibit A, Proposed Complaint at ¶ 9).
- KTLA "implemented a systematic firing of reporters who are near or over the age of fifty and is replacing these reporters with employees in their twenties" (Exhibit A, Proposed Complaint at ¶ 10).  The Proposed Complaint also identifies six individuals that Ms. Waller believes were terminated by KTLA without cause, five of whom appear – based on the names provided by Ms. Waller – to be male. (Exhibit A, Proposed Complaint at ¶ 12).
- KTLA advised Ms. Waller in August 2008 that the contract pursuant to which she provided services to KTLA was not being renewed "with no good cause provided" (Exhibit A, Proposed Complaint at ¶¶ 14, 19).
- KTLA's "claim that [Ms. Waller] was being terminated as her contract was up was a pretext designed to conceal [KTLA's] practice of discriminating against

7

[Ms. Waller] on the basis of her gender" (Exhibit A, Proposed Complaint at ¶ 19).

- Ms. Waller "filed a Complaint with the California Department of Fair Employment and Housing and received a right-to-sue letter" within the time required by California law (Exhibit A, Proposed Complaint at ¶ 27).

As a result of the foregoing, Ms. Waller asserts in the Proposed Complaint causes of action for age discrimination and gender discrimination, in violation of public policy and applicable California employment laws. *See* Exhibit A, Proposed Complaint at ¶¶ 9-28.

15.    In addition to the Waller Claim, Ms. Waller also filed two proofs of claim against Tribune (the "Tribune Claims"), the first of which was received on January 13, 2009 and recorded as Claim No. 263 on the Claims Register, and the second of which was received on June 10, 2009 (contemporaneously with the Waller Claim) and recorded as Claim No. 4411 on the Claims Register.  On February 21, 2012, the Debtors filed an Objection to Claim Nos. 263 and 4411 of Marta Waller on behalf of Tribune (Docket No. 10963) (the "Tribune Claims Objection"), the basis for which was that no facts were evident from the Tribune Claims suggesting that those claims could properly be sustained against Tribune.  Ms. Waller filed no response to the Tribune Claims Objection with the Court, nor are the Debtors aware of any informal response made by Ms. Waller to the Tribune Claims Objection.  As a result, the Tribune Claims Objection was uncontested, and on March 22, 2012, the Court entered an order sustaining the Tribune Claims Objection and disallowing the Tribune Claims asserted by Ms. Waller (Docket No. 11216).

16.    On several occasions since the Waller Claim was filed, counsel for the Debtors has attempted to contact counsel for Ms. Waller in an effort to obtain additional information regarding the Waller Claim, including, without limitation, (i) bases for many of the allegations set forth in the Proposed Complaint, (ii) explanations of inconsistencies between the allegations

set forth in the Proposed Complaint and the PPI Contract, (iii) a copy of the complaint Ms.

Waller alleges that she filed with the California Department of Fair Employment and Housing

and the corresponding right-to-sue letter, and (iv) support for the $5,000,000 damages figure set

forth in the Waller Claim.  Such inquiries have not met with a substantive response, and neither

KTLA nor Tribune have ever been provided with any such materials or information.  *See*

Bourgon Declaration at ¶ 9.

## RELIEF REQUESTED

17.    By this Objection, the Debtors seek entry of an order, pursuant to sections 502(b)

and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, disallowing and

expunging the Waller Claim in its entirety on the basis that the Waller Claim fails to state a

*prima facie* claim as required by the Bankruptcy Code.  As summarized at the outset of this

Objection, the Waller Claim is both facially and factually without merit under applicable non-

bankruptcy law.  The Debtors also seek an order authorizing the Claims Agent to expunge the

Waller Claim from the Claims Register so that the Claims Register accurately reflects the claims

outstanding against Debtors' estates.

## APPLICABLE LAW AND DEFENSES

**I.      Applicable Law and Legal Standards**

18.    This Objection is based on section 502(b)(1) of the Bankruptcy Code, which

provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall
> determine the amount of such claim in lawful currency of the United States as of the date
> of the filing of the petition, and shall allow such claim in such amount, except to the
> extent that—
>
>               (1)     such claim is unenforceable against the debtor and property of the
> debtor, under any agreement or applicable law for a reason other than because such claim
> is contingent or unmatured . . . .

11 U.S.C. §502(b)(1).  Section 502(b)(1) recognizes the settled principle that "[c]reditors'

entitlements in bankruptcy arise in the first instance from the underlying substantive law creating

the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy

Code." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007)

(citing *Raleigh v. Ill. Dep.'t of Revenue*, 530 U.S. 15, 20 (2000)).  A claim against the

bankruptcy estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim

would not be enforceable against the debtor outside of bankruptcy." *In re Combustion Eng'g,*

*Inc.,* 391 F.3d 190, 245 (3d Cir. 2004).

19.    A party asserting a claim against a debtor must initially allege sufficient facts to

support its claim, and only if this standard of sufficiency is met is the claim entitled to a

presumption of validity.  *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-174 (3d Cir. 1992).  As

the Third Circuit further observed in *Allegheny Int'l*:

> If the averments in [a claimant's] filed claim meet this standard of sufficiency, it
> is "*prima facie*" valid. *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L.
> King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991)).  In other
> words, a claim that alleges facts sufficient to support a legal liability to the
> claimant satisfies the claimant's initial obligation to go forward.

*Id.*  In proceedings to determine whether a claim is enforceable against the estate, "[t]he estate

shall have the benefit of any defense available to the debtor as against any entity other than the

estate, including statutes of limitation, statutes of fraud, usury, and other personal defenses

pursuant to section 558 of the Bankruptcy Code.  11 U.S.C. § 558.

20.    The Proposed Complaint seeks relief based on substantive California law.  *See*

*generally* Proposed Complaint.  Ms. Waller was, upon information and belief, a resident of

California at the time during which the events in the Proposed Complaint allegedly occurred.

The PPI Contract was entered into in California.  *See* Exhibit C.  KTLA also has its principal

place of business in California.  Thus, California law governs the causes of action for which Ms. Waller alleges a right to relief.

21.     In California, a complaint will be dismissed at the initial pleading stage if it fails to set forth facts sufficient to constitute a cause of action.  CAL. CODE CIV. PROC. §430.10(e). California courts have long recognized that they employ a "fact pleading" standard distinct from the less onerous "notice pleading" standard employed in federal courts.  *See Diodes Inc. v. Franzen*, 260 Cal. App. 2d 244, 250 (1968); *see also Lim v. TV Corp. Intern.*, 99 Cal. App. 4th 684, 690 (2002) ("California law emphasizes ultimate fact pleading . . .").  California's fact-pleading standard requires that the plaintiff state a set of material facts that, if accepted as true, ultimately amount to a legal claim as a matter of law.  *See Morningstar Inc. v. Superior Court,* 23 Cal. App. 4th 676, 686 (1994).  Thus, a plaintiff must allege all the essential facts of her case with enough particularity to acquaint the defendant with the nature, source, and extent of her cause of action.  *See Ludgate Ins. Co. v. Lockheed Martin Corp.* 82 Cal. App. 592, 606-08 (2000).  Indeed, even the under the less onerous notice-pleading standard employed in federal courts, courts will not consider a plaintiff's conclusory allegations of discriminatory animus or "defendant-unlawfully harmed me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Zelig v. County of Los Angeles,* 27 Cal. 4th 1112, 1126 (2002) (noting that courts do not consider a complaint's contentions, deductions, or conclusions of fact or law).  Against this pleading standard, Ms. Waller's Proposed Complaint falls far short of stating an actionable claim against KTLA.

## II.     The Waller Claim Could Only Have Been Asserted by PPI, Which Failed to File a Claim by the Bar Date

22.     The Waller Claim should be disallowed for many reasons, which are detailed below.  The first of such reasons is that PPI, not Ms. Waller, is the proper party to assert the

11

Waller Claim.  There can be no dispute that the KTLA contracted only with PPI for Ms. Waller's services; KTLA did not enter into any applicable contract with Ms. Waller directly for her services, nor did KTLA enter into any other contract, agreement, or employment relationship with Ms. Waller covering the provision of Ms. Waller's services during the period covered by the PPI Contract.  *See* Bourgon Declaration at ¶ 4.  The PPI Contract expressly provides that "neither [PPI] nor [Ms. Waller] will be treated as KTLA's employee for federal, state or local income or employment tax purposes…"  PPI Contract at ¶ 21.  Furthermore, the PPI Contract provides that it constitutes the entire agreement between PPI, Ms. Waller, and KTLA with respect to the provision of Ms. Waller's services to KTLA during the relevant period.  *See* PPI Contract at ¶ 27.

      23.    Ms. Waller accordingly has no right to payment from KTLA on account of any employment relationship, because any right to payment for her services to KTLA is held by PPI and not Ms. Waller directly.  PPI, however, has filed no proof of claim in the Debtors' chapter 11 cases.  PPI was served with mailed notice of the Bar Date and provided an opportunity to file a claim against KTLA in accordance with the Bar Date Order in April 2009 – more than three-and-a-half years prior to the date of this Objection – as evidenced by the applicable affidavit of service filed with the Court in the Debtors' chapter 11 cases.  *See* Affidavit of Mailing dated April 22, 2009 (Docket No. 1073) (as superseded by Corrected Affidavit of Mailing dated Jan. 12, 2012 (Docket No. 10609).  PPI did not respond to this notice, nor has it sought leave of the Court to file a late proof of claim.  The Waller Claim should accordingly be disallowed because (i) Ms. Waller is not the proper party to assert such a claim and (ii) PPI, which would be the proper party to assert any claim relating to the PPI Contract, has not filed a proof of claim in KTLA's chapter 11 case.

46429/0001-9080831v

III.    **The Waller Claim Must be Disallowed Because the PPI Contract Expired Prior to the Petition Date and No Justification is Present for Extending It**

24.    The Waller Claim should also be disallowed because there was no right to payment that existed under the PPI Contract as of the Petition Date, as the PPI Contract had expired nearly two months before the Petition Date.  The PPI Contract provides clearly that "[t]he term of this Agreement ("Term") will begin as of October 18, 2007 and will continue until October 17, 2008."  PPI Contract at ¶ 2.  Nothing in the PPI Contract provides for the extension of that contract beyond that term, other than the bargained-for right (but not the obligation) held by KTLA to negotiate with PPI prior to the expiration of the PPI Contract for the extension of Ms. Waller's services to KTLA.  (PPI Contract at ¶ 24(a)).  KTLA elected not to seek to extend Ms. Waller's services beyond the period of the PPI Contract negotiated by the parties, as was indisputably its right.  Accordingly, the PPI Contract expired on October 17, 2008, just as the parties negotiated for it to do.

25.    There is no allegation in the Waller Claim or the Proposed Complaint that PPI was not paid all of the amounts it was due under the PPI Contract.  Indeed, to the best of the Debtors' knowledge, the PPI Contract was fully performed by PPI and KTLA prior to the Petition Date.  *See* Bourgon Declaration at ¶ 8.  Similarly, there is no basis set forth in the Waller Claim or the Proposed Complaint to imply the extension of the PPI Contract beyond the term clearly established by the text of that contract.  Indeed, the Waller Claim and the Proposed Complaint ignore the PPI Contract entirely, while providing no justification for doing so.  The plain language of the PPI Contract, together with the absence of any justification – plausible or otherwise – for disregarding it demonstrates that any right to payment from KTLA held by PPI or Ms. Waller ended on or about October 17, 2008, and hence did not exist as of the Petition Date.  The Waller Claim should be disallowed for this reason as well.

13

**IV.    The Waller Claim Should be Disallowed Because Ms. Waller Was Not an Employee of KTLA**

26.    The Waller Claim should also be disallowed because it asserts entirely employment-based claims, yet Ms. Waller was not an employee of KTLA. Specifically, the discrimination claims set forth in the Proposed Complaint require that KTLA have been Ms. Waller's employer. *See, e.g., Vernon v. California*, 116 Cal. App. 4th 114, 123 (2004) ("[t]he FEHA . . . prohibits only an employer from engaging in improper discrimination").

27.    KTLA was not Ms. Waller's employer, and she was not KTLA's employee. The PPI Contract, which Ms. Waller signed as the representative of PPI, stated that PPI and KTLA entered into the PPI Contract "as independent contractors, rather than as employer and employee", and PPI assumed responsibility for all obligations imposed by law on employers, including filing federal and state tax returns on the basis of PPI's status as an independent contractor (PPI Contract at ¶ 21). The PPI Contract further stated that "neither [PPI] nor [Ms. Waller] will be treated as KTLA's employee for federal, state or local income or employment tax purposes." (*Id.*) These provisions make clear that Ms. Waller was not KTLA's employee; rather, her services were provided solely through PPI.[5]

28.    Neither the Waller Claim nor the Proposed Complaint addresses these provisions of the PPI Contract. Instead, the Proposed Complaint simply assumes that Ms. Waller was an employee of KTLA while ignoring the PPI Contract. *See, e.g.,* Proposed Complaint at ¶ 9 ("Plaintiff's employment with KTLA, INC. continued until her involuntary termination which led to her leaving her work with KTLA, INC. on October 17, 2008."). This statement is demonstrably false, as evidenced by the PPI Contract. PPI had a one-year contract with KTLA

---

[5] The Proposed Complaint provides no insight as to Ms. Waller's relationship with PPI. In the event Ms. Waller responds to this Objection, the Debtors intend to seek, among other things, records from PPI and/or Ms. Waller detailing such relationship, including, but not limited to, corporate records and tax records.

to provide Ms. Waller's services to KTLA, and that contract was not renewed.  Nothing in the

Waller Claim or the Proposed Complaint explains why Ms. Waller believes that she was an

employee of KTLA or otherwise justifies disregarding the plain language of the PPI Contract

under which PPI accepted the benefits of its bargain.  The Waller Claim should accordingly be

disallowed on this ground as well.

**V.     Even if Ms. Waller Was Considered to be an Employee of KTLA, the Waller Claim Should Be Disallowed Because it Does Not Meet the Requirements of California Law**

29.     The Debtors have demonstrated in the preceding paragraphs and their

corresponding supporting materials that (i) Ms. Waller is not the proper party to bring the Waller

Claim, (ii) PPI – which would at least have the ability to bring the Waller Claim – failed to file a

proof of claim by the Bar Date despite receiving notice of the Bar Date, (iii) the PPI Contract,

which is the only legitimate basis for any claim asserted by PPI and/or Ms. Waller, expired by its

own terms prior to the Petition Date, and (iv) Ms. Waller was not an employee of KTLA.  Even

if the Court were to assume for sake of argument – which it should not – that Ms. Waller is an

employee of KTLA, however, the Waller Claim should still be disallowed, because (i) failure to

renew an employment contract does not give rise to a claim under California law, (ii) Ms. Waller

has not sufficiently alleged either age discrimination or gender discrimination claims, (iii) Ms.

Waller's does not have the necessary predicate claims for discrimination to sustain a claim under

the California FEHA for alleged failure to prevent discrimination, and (iv) Ms. Waller has not

demonstrated the required exhaustion of administrative remedies under California law.  Although

the Debtors believe that Ms. Waller cannot properly be considered to be an employee of KTLA,

the Debtors address each of the foregoing points in turn below.

46429/0001-9080831v

**A.      Failure to Renew an Employment Contract Does Not Give Rise to a Claim Under California Law**

30.      Ms. Waller has no right to payment on account of her alleged tortuous wrongful termination in violation of public policy claim because a defendant's refusal to renew an employment contract is not an actionable ground for wrongful termination under California law. California recognizes a narrow common law cause of action for tortuous wrongful discharge where an employee can sufficiently establish a causal connection between his or her termination and an alleged refusal to violate a statute, performance of a statutory obligation, exercise of a statutory right, or report of an alleged violation of a statute of public importance.  *See Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 177 (1980); *Gantt v. Sentry Ins.,* 1 Cal. 4th 1083, 1090-91 (1992).  It is well settled, however, that no tortuous wrongful discharge in violation of public policy claim exists when the employee's employment was terminated due to the expiration of a fixed-term contract and an employer simply declines to renew that contract.  *See Touchstone Tel. Productions v. Sup. Ct. Los Angeles County*, 208 Cal. App. 4th 676, 680 (2012) ("Decisional law does not allow a plaintiff to sue for wrongful termination in violation of public policy based upon an employer's refusal to renew an employment contract"); *see also Daly v. Exxon Corp.*, 55 Cal. App. 4th 39, 45-56 (rejecting employee's claim for wrongful termination in violation of public policy based on employer's refusal to renew a contract that expired at the end of a fixed term).

31.      The Third Cause of Action in the Proposed Complaint is premised on KTLA's alleged refusal to renew the PPI Contract when it expired at the end of its term; i.e., on October 17, 2008.  *See* Proposed Complaint at ¶¶14, 24.  KTLA had that right under the PPI Contract; otherwise, the parties would have bargained for a longer term, automatic extension, or similar provisions.  Setting that aside, however, under California law KTLA's refusal to renew the PPI Contract, even if motivated by gender or age discrimination – which it was not – still does not

16

give rise to a wrongful termination claim as a matter of law because no wrongful termination

claim can exist that is premised on an employer's failure to renew a contract.  *See Touchstone*

*Tel. Productions*, 208 Cal. App. 4th at 680.  Thus, under applicable non-bankruptcy law Ms.

Waller is not entitled to any payment on account of her wrongful termination claim.

### B.      Ms. Waller Has Not Sufficiently Alleged an Age Discrimination Claim

32.      Neither the Waller Claim nor the Proposed Complaint contain the requisite factual

allegations to constitute a cause of action for age discrimination under the California FEHA

because Ms. Waller does not set forth facts in the Proposed Complaint establishing a prima facie

case of age discrimination.

33.      The ultimate burden of proving age discrimination lies with the plaintiff.  *Mixon*

*v. Fair Employment & Housing Com.*, 192 Cal. App. 3d. 1306, 1318-1319 (1987).  To survive

the initial pleading stage under California law, a plaintiff such as Ms. Waller must set forth facts

establishing a *prima facie* case of discrimination by demonstrating that: (1) she was a member of

a protected class; (2) she was performing competently in the position held; (3) she suffered an

adverse employment action; and (4) some other circumstance suggests a discriminatory motive.

*Guz v. Bechtel Nat., Inc.*, 24 Cal. 4th 317, 354-356 (2000).  If a plaintiff succeeds in establishing

a *prima facie* case, the burden of producing evidence shifts to the employer to articulate a

legitimate, non-discriminatory reason for the adverse employment action.  *Mixon*, 192 Cal. App.

3d. at 1318.  Once the employer has set forth a non-discriminatory reason for its decision, the

burden shifts back to the employee to prove that the employer's stated reasons are pretextual and

that the real reason is intentional discrimination.  *Id.* at 1318-1319.  Importantly, an employee

cannot establish that an employer's reasons for terminating her were pretextual by simply

demonstrating that it was the "wrong" decision or a "bad reason." *Hersant v. Dept. of Social Services*, 57 Cal. App. 4th 997, 1005 (1997).

34.     Although the Proposed Complaint contains many conclusory allegations, it does not contain factual allegations sufficient to establish a *prima facie* case of age discrimination respecting Ms. Waller.  The first step a court takes in reviewing the sufficiency of a complaint's allegations is to "identify the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679.  Here, the Proposed Complaint contains allegations that: (1) KTLA implemented a systemic firing of reporters who were near or over the age of fifty and replaced them with employees in their twenties; (2) KTLA was actively recruiting only talent that was substantially under the age of thirty; (3) the older the worker, the more likely they were to be "terminated;"[6] (4) employees over the age of fifty were "terminated" without good cause; and (5) Plaintiff's age was a factor in KTLA's alleged refusal to renew her contract.  All of these statements are conclusory and unsupported by any factual allegations. Accordingly, these statements cannot be afforded the presumption of truth.  *See* Proposed Complaint at ¶¶ 10, 12, 14.

35.     Indeed, the only factual allegations in Ms. Waller's Proposed Complaint are: (1) she had worked at KTLA for nearly twenty-four years; (2) six individuals over the age of fifty were terminated in the months before the PPI Contract was not renewed;[7] (3) the PPI Contract was not renewed; and (4) KTLA told her its decision not to renew the PPI Contract was because

---

[6] Just as the Proposed Complaint does not explain how Ms. Waller was an "employee" of KTLA, neither does it explain whether any of the other "employees" of KTLA it discusses were in fact employees.

[7] The Proposed Complaint refers generically to "her contract…", which appears intended to imply some contract between Ms. Waller and KTLA. *See, e.g.*, Proposed Complaint at ¶¶ 12 ("…her contract was not being renewed…"), 15 ("…refusal to renew her contract…").  Neither the Waller Claim nor the Proposed Complaint identify any relevant contract other than the PPI Contract, however, and the PPI Contract, which Ms. Waller signed on behalf of PPI, disclaims the existence of any such other contract.  Accordingly, the Debtors presume that references to any contract between Ms. Waller and KTLA are erroneous references to the PPI Contract.

18

of cutbacks. *See* Proposed Complaint at ¶¶ 9, 12, 14. These allegations, even if true, are wholly insufficient to suggest a discriminatory motive on the part of KTLA, as all Ms. Waller has asserted thereby is that KTLA declined to renew the PPI Contract and that KTLA terminated, out of its hundreds of employees, six individuals who were over the age of fifty. Ms. Waller does not allege facts demonstrating that similarly-situated individuals not in her protected class were treated any differently.

36.     Moreover, Ms. Waller affirmatively states in the Proposed Complaint that she was given a non-discriminatory reason for KTLA's declining to renew the PPI Contract; specifically, that KTLA was in the midst of cutbacks. *See* Proposed Complaint at ¶ 14. Although she then alleges in conclusory manner that the stated reason was pretextual, Ms. Waller provides no facts that would support such a conclusion. *See id.* In sum, the Proposed Complaint is devoid of the essential facts necessary to maintain a viable age discrimination claim against KTLA.

### C.     Ms. Waller Has Not Sufficiently Alleged a Gender Discrimination Claim

37.     Ms. Waller has similarly failed to set forth a facially sufficient gender discrimination claim against KTLA; indeed, the few factual allegations provided by Ms. Waller in the Proposed Complaint work to disprove her gender discrimination claim. Ms. Waller alleges, again in a conclusory manner, that KTLA had a scheme to remove women who are near or over the age of fifty from KTLA and to replace them with younger women. *See* Proposed Complaint at ¶ 19. Ms. Waller further alleges that during the course of her alleged employment, KTLA preferred to place women under forty in the public eye as reporters and anchors while allowing men over fifty to continue in the public eye as reporters. *Id.* From these bare and conclusory allegations, Ms. Waller concludes that KTLA's decision not to renew the PPI Contract was motivated by discrimination on the basis of her gender and that the stated reasons

for its decisions were pretextual. *Id.* Ms. Waller provides absolutely no factual allegations to support these conclusions, without which she cannot sustain a gender discrimination cause of action against KTLA.

38.    Moreover, Ms. Waller's affirmative allegations tend to disprove her gender discrimination claim. Ms. Waller's purported basis for her gender discrimination claim is that KTLA allows men over the age of fifty to remain as reporters, but has a scheme to remove women near or over the age of fifty. *Id.* Yet, of the six persons Ms. Waller identifies as employees who wherever terminated in an effort to support her age discrimination claim, five were men. *See* Proposed Complaint at ¶12. Ms. Waller's own factual allegations—the few that are contained in her Proposed Complaint—contradict her threadbare conclusion that KTLA had a pattern of discriminating against women over the age of fifty by removing them from reporter positions while retaining men over the age of fifty. When taken together with the fact that Ms. Waller has alleged no facts that establish her gender discrimination claim on a *prima facie* basis, these facts likewise support the conclusion that the Waller Claim cannot stand under applicable non-bankruptcy law and should be disallowed.

**D.    Ms. Waller's Failure to Prevent Discrimination Claim under the FEHA Fails Because She Does Not Have the Requisite Predicate Claims for Discrimination**

39.    The Proposed Complaint's Fourth Cause of Action, which is for Failure to Prevent Discrimination under CAL. GOV'T CODE §12940(i), fails as well because Ms. Waller has no viable claim for discrimination. Under the FEHA, an employee can bring an independent cause of action against an employer who "fail[ed] to take all reasonable steps necessary to prevent discrimination . . . from occurring." CAL. GOV'T CODE §12940(k). However, where, as is the case here, there is no viable claim for discrimination in violation of the FEHA, there can be no independent cause of action for failure to prevent discrimination. *See Trujillo v. N. County*

46429/0001-9080831v

*Trans. Dist.,* 63 Cal. App. 4th 280, 289 (1998) ('[T]here's no logic that says an employee who

has not been discriminated against can sue an employer for not preventing discrimination that

didn't happen, for not having a policy to prevent discrimination when no discrimination occurred

. . . .' Employers should not be held liable to employees for failure to take necessary steps to

prevent such conduct, except where the actions took place and were not prevented.").  In a

circumstance such as this, where there is no viable claim of discrimination, there can be no

private right of action for a failure to prevent predicate offenses that never occurred.  Thus, Ms.

Waller has no right to payment from KTLA for its alleged failure to prevent discrimination.

      **E.**    **Ms. Waller has not Affirmatively Alleged Exhaustion of the FEHA's
Administrative Remedies**

      40.    Ms. Waller also has no right to payment from KTLA for alleged violations of the

FEHA because the Waller Claim and the Proposed Complaint fail to allege that Ms. Waller has

exhausted the FEHA's administrative remedies as required by California law.  Before filing a

civil action against an employer for violating the FEHA, an employee must follow the FEHA's

administrative procedures and, within one year of the last alleged date of violation, file a charge

with the Department of Fair Employment and Housing ("DFEH") identifying the individuals she

alleges to have violated the FEHA and providing sufficient notice of the incidents that gave rise

to the complaint.  CAL. GOV'T. CODE §§12960, 12965(b); *Grant v. Comp USA, Inc.,* 109 Cal.

App. 4th 637, 643 (2003).  The employee must then affirmatively plead facts in her complaint

demonstrating that she timely exhausted the FEHA's administrative remedies.  *See Shuer v.*

*County of San Diego*, 117 Cal. App. 4th 476, 482 (2004) ("A demurrer may be properly granted

based on the failure to adequately plead an exhaustion of administrative remedies").  The court

has no subject-matter jurisdiction over the claim until such allegations are made.  *See Hood v.*

*Hacienda La Puente United School District,* 65 Cal. App. 4th 435, 441 (1998).

41.     Although Ms. Waller alleges in her Proposed Complaint that she filed a complaint with the DFEH within the time provided by law and in full compliance with the statutory provisions of the FEHA, Ms. Waller alleges no facts supporting this legal conclusion. *See* Proposed Complaint at ¶ 11. Ms. Waller does not allege when she filed the complaint with the DFEH, what she stated in her complaint with the DFEH, or when she received her "right-to-sue" letter from the DFEH. Moreover, despite requests from the Debtors' counsel, Ms. Waller has not produced the complaint she filed with the DFEH or the accompanying "right-to-sue" letter. Without such affirmative factual allegations, a court has no subject-matter jurisdiction over Ms. Waller's FEHA claims. Accordingly, Ms. Waller's FEHA claims are facially insufficient and would be dismissed under California law.

## VI.     The Waller Claim Should Also be Disallowed Because No Support is Provided for the Damages Sought

42.     The Waller Claim seeks damages of $5,000,000 on its face. *See* Exhibit A. Neither the proof of claim itself nor the Proposed Complaint appended thereto provide any support for that figure, nor is any basis for that figure readily ascertainable from the materials provided. Instead, the Proposed Complaint states in generic terms that Ms. Waller seeks damages in various categories; *e.g.*, "general damages in an amount in excess of the minimum jurisdiction" of the California state court, punitive and exemplary damages,[8] medical expenses, loss of earnings and earning capacity, post-filing interest, and costs and attorney's fees. *See* Proposed Complaint at 8 (prayer for relief).

---

[8] The Debtors reserve their rights to argue in any further proceedings respecting this Objection that, among other things, any punitive damages claims asserted by Ms. Waller should be disallowed, subordinated, or otherwise limited by the Bankruptcy Court. *See, e.g., In re Keene Corp.*, 162 B.R. 935, 947 (Bankr. S.D.N.Y. 1994) ("a Bankruptcy Court can subordinate, disallow or limit punitive damage claims"); *In re Allegheny Int'l, Inc.*, 106 B.R. 75, 79 (Bankr. W.D. Pa. 1989) (a bankruptcy court's equitable powers allow it to eliminate, subordinate, or limit claims for punitive damages).

43.     These unsupported demands for vaguely-described damages do not even approach the requirements imposed on Ms. Waller by the Bankruptcy Code to provide *prima facie* support for the damages she seeks.  *See Allegheny Int'l*, 954 F.2d at 173-74 (claimant must allege facts sufficient to support its claim to be entitled to presumption of claim's validity).  Ms. Waller alleges no facts that support the $5,000,000 damages figure anywhere in the Waller Claim or the Proposed Complaint, and the Debtors are entirely without knowledge as to how that number may have been calculated.[9]  Counsel for the Debtors has attempted prior to the filing of this Objection to contact Ms. Waller's counsel and obtain any additional support for the Waller Claim (including support for the damages figure sought), but those efforts have resulted in no substantive response.  As a result of the absence of any factual support for the Waller Claim or the amounts sought thereby, the Debtors submit this Objection seeking disallowance of the Waller Claim.

## **RESERVATION OF RIGHTS**

44.     For the reasons set forth above, the Waller Claim should be disallowed by the Court because it fails to assert any cognizable right to payment from KTLA.  However, in the event the Court does not do so and wishes to have the Debtors respond in further detail to the allegations contained in the Waller Claim (including the Proposed Complaint), the Debtors reserve their rights to assert any other argument(s) or defense(s) to the Waller Claim.

---

[9] The $5,000,000 damages figure is suspect for a number of reasons, including (i) the fact that Ms. Waller cannot have had any reasonable expectation that the PPI Contract would be continued beyond the term for which the parties bargained for it to be in force, and (ii) the fact that the $5,000,000 amount claimed is equal to approximately 25 years' consideration under the one-year PPI Contract.

## NOTICE

45.     Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune Company's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) counsel for Marta Waller; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

46.     No previous application for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to Sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, (i) disallowing in full and expunging the Waller Claim; (ii) directing the Claims Agent to expunge the Waller Claim from the Claims Register; and (iii) granting such other and further as the Court deems just and proper.

Dated: Wilmington, Delaware
       December 11, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kenneth P. Kansa
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

SIDLEY AUSTIN LLP
Max C. Fischer
Francis S. Lam
555 West Fifth Street
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile:  (213) 896-6600

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-9080831v