IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: January 16, 2013 at 11:00 a.m. ET<br>Response Deadline: January 4, 2013 at 4:00 p.m. ET |

## DEBTORS' SIXTY-SECOND OMNIBUS (SUBSTANTIVE) OBJECTION TO INSURANCE-RELATED CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to those certain proofs of claim (the "Insurance Claims," as described herein) filed by certain claimants (the "Insurance Claimants"), being

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-9081065v1

(i) Claim No. 6622 filed by Chartis Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., AIG Casualty Company, Lexington Insurance Company, and certain other related Chartis entities, ("Chartis," and the related "Chartis Claim" attached hereto as Exhibit A), (ii) Claim No. 1005 filed by certain members of the Kemper Insurance Companies[2] (collectively, "Kemper," and the related "Kemper Claim" attached hereto as Exhibit B), and (iii) Claim No. 3643 filed by Home Insurance Company in Liquidation ("Home Insurance," and the related "Home Insurance Claim," attached hereto as Exhibit C). By this Objection, the Debtors respectfully request that each of the Insurance Claims be disallowed and expunged from the Debtors' claims register as of the later of (i) entry of the order sustaining the Objection or (ii) the effective date of the Debtors' confirmed chapter 11 plan of reorganization. This Objection is submitted pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Objection, the Debtors rely on the Declaration of John Rodden, Vice President of Tribune Company (the "Rodden Declaration"), attached hereto as Exhibit D. In further support of the Objection, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[3] filed a voluntary petition for relief under

---

[2] According to the Kemper Claim (defined supra), these entities include American Manufacturers Mutual Insurance Company, American Motorists Insurance Company, American Protection Insurance Company, and Lumbermens Mutual Casualty Company. See Ex. B at ¶ 2.

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 110 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). (Docket Nos. 43, 2333.)

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Committee").

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007.

**BACKGROUND OF THE INSURANCE CLAIMS AND GENERAL OBJECTIONS**

6. The Chartis Claim was received on July 26, 2010, asserted against Tribune CNLBC, LLC, and recorded as Claim No. 6622 on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent"). The Kemper Claim was received on April 14, 2009, asserted against Tribune Company, and recorded as Claim No. 1005 on the Claims Register. The Home Insurance Claim was received on June 08, 2009,

46429/0001-9081065v1

asserted against "Tribune Company, et al."[4] and recorded as Claim No. 3643 on the Claims Register.

7. This Objection is based on section 502(b)(1) of the Bankruptcy Code, which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1). Section 502(b)(1) recognizes the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450-51 (2007) (citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)). A claim against the bankruptcy estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." In re Combustion Eng'g, Inc., 391 F.3d 190, 245 (3d Cir. 2004).

8. Generally speaking, the Insurance Claims are protective and unliquidated claims that should be disallowed as of the later of (i) the date of the order sustaining this Objection or (ii) the effective date of the Debtors' confirmed Fourth Amended Joint Plan of

---

[4] The Home Insurance Claim identifies eight "Name [sic] Insureds" in addition to Tribune Company. As identified in the Home Insurance Claim, those are: Sentinel Communications, Direct Mail Associates, Inc., Sun-Sentinel Company, Eagle Publishing, Times Mirror, GreenCo, Tribune Publishing Company, and Homeowners Realty, Inc. See Ex. C.

Reorganization (the "Fourth Amended DCL Plan").[5] The Insurance Claims should be disallowed as of that date because, as detailed further herein, (i) no amounts are due and owing under these claims at present, nor has any Insurance Claimant asserted otherwise, and (ii) the Fourth Amended DCL Plan provides that the Debtors' prepetition insurance policies and agreements shall continue in effect after the effective date of the Fourth Amended DCL Plan pursuant to their terms and conditions (as set forth in more detail in section 6.9 of the Fourth Amended DCL Plan). As a result, each Insurance Claimant has whatever reasonable protections it may need following the effective date of the Fourth Amended DCL Plan with respect to insurance policies that such Insurance Claimant has issued to the relevant Debtor or Debtors. In addition, one of the Insurance Claims is related to a policy for which none of the Debtors has legal responsibility, and hence none of the Debtors could be liable for any payments under such policy.

9.  The Debtors attempted prior to the filing of this Objection to resolve the Insurance Claims, and the claims of other similarly-situated insurers, on a consensual basis. Specifically, the Debtors included in the now-confirmed Fourth Amended DCL Plan a provision stating, among other things, that their prepetition insurance policies "shall continue in effect after the Effective Date pursuant to their respective terms and conditions, and nothing in the Plan Documents shall relieve any of the Reorganized Debtors from performing any of the Debtors' obligations under the Insurance Policies and Agreements...." Fourth Amended DCL Plan at § 6.9. Several of the Debtors' insurers that had filed protective proofs of claim similar to the Insurance Claims agreed that such language adequately preserved the parties' rights under the relevant prepetition insurance policies after the effective date of the Fourth Amended DCL Plan,

---

[5] See Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank N.A. (as Modified July 19, 2012) [Docket No. 12072].

46429/0001-9081065v1

such that those insurers consented to relief in this Court's order confirming the Fourth Amended DCL Plan that their proofs of claim would be deemed withdrawn on the effective date of such plan without the need for further action by the insurers, the Debtors, or the Court. See Confirmation Order at § VIII.B.2[6] ("On the Effective Date, as a result of the inclusion of Section 6.9 in the DCL Plan, all proofs of claim asserted against any of the Debtors by [three insurance companies] shall be deemed withdrawn by the relevant claimant(s) without the need for further action by any of the Debtors, [or the three insurance companies], and the Court-appointed claims agent is authorized to modify the claims register in these cases to remove such claims from the claims register.").[7]

10. As discussed below in the specific objections, all of the Insurance Claims appear to be protective and unliquidated in nature; however, given this Court's confirmation of the Fourth Amended DCL Plan and the reasonable protections provided to all parties therein with respect to the Debtors' prepetition insurance contracts, no good reason appears for the Insurance Claims to remain on the Claims Register following the effective date. Indeed, as described above, several of the Debtors' prepetition insurers agreed to withdraw their claims on the effective date based on the terms of the Fourth Amended DCL Plan. There is no reason to treat the Insurance Claims differently, and the Debtors accordingly request that such claims be disallowed as of the effective date and removed from the Claims Register.

---

[6] "Confirmation Order" refers to the Order Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 12074].

[7] The Debtors have previously objected to certain insurance-related claims asserted against certain of the Debtors on the grounds that, among other things, the applicable insurers had adequate protections under the Fourth Amended DCL Plan, such that the protective claims asserted by such insurers were unnecessary. That objection was sustained by the Bankruptcy Court. See Order Sustaining Debtors' Objection to Claim Nos. 5017-5026 of AIG Casualty Company et al. Pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, entered on Oct. 2, 2012 (Docket No. 12502).

46429/0001-9081065v1

## SPECIFIC OBJECTIONS TO THE INSURANCE CLAIMS

### A. Objection to the Chartis Claim

11. The Chartis Claim includes a table listing eight (8) insurance policies allegedly forming the basis for the claim. See Ex. A at 5. Specifically, the Chartis Claim lists six (6) policies purportedly written for insured "Chicago National League Ball Club, LLC" for excess-liability coverage, with policy numbers 9835540, 2227205, 9834644, 4485176, 4484593, and 2860543, (collectively, the "Excess Policies"). See Ex. A at 5. The Chartis Claim also lists a healthcare policy purportedly written for insured "Chicago Clubs – C/," with policy number 9101863 (the "Healthcare Policy"). Id. Finally, the Chartis Claim lists an accident and health policy written for insured "Chicago Cubs Baseball Club," with policy number 6796459 (the "Accident Policy," and together with the Health Care Policy and the Excess Policies, the "Chartis Policies"). Id.

12. The basis for the Chartis Claim is alleged to be (i) claims for "certain premiums, deductibles, self-insured retention, reimbursement obligations, fees, expenses and related costs," and "other or different insurance (including excess coverages or renewals)," (see Ex. A at ¶¶ 5(a)-(b)); (ii) claims for amounts under certain fidelity and surety bonds that Chartis asserts it has issued on behalf of Tribune CNLBC, LLC (see Ex. A at ¶ (c)); and (iii) various rights to relief under theories of quantum meruit, joint liability, indemnity, and similar theories in connection with the Chartis Policies. See Ex. A at ¶¶ 5(d)-(g).

13. As a preliminary matter, although Chartis has not identified any specific basis for a right to payment and the Debtors dispute that any such a right to payment exists, to the extent that Chartis holds any claim in connection with the Healthcare Policy, such a claim is not properly asserted against Tribune CNLBC, LLC or any other Debtor. Specifically, the Healthcare Policy, as described in the Chartis Claim, was issued to a non-Debtor, Chicago Cubs

Baseball Club, LLC (see Ex. A), which is a subsidiary of Chicago Baseball Holdings, LLC, which is also a non-Debtor. See Rodden Declaration at ¶ 6. Thus, the Chartis Claim, as it relates to the Healthcare Policy, is improperly asserted against Tribune CNLBC, LLC, which has no liability for policies issued to the non-Debtors described herein.

14. In any event, and more generally, the purported bases for the Chartis Claim described in ¶¶ 5(a)-(b) and ¶¶ 5(d)-(g)[8] thereof are entirely unliquidated and protective in nature, and Chartis does not state anywhere in the Chartis Claim that any specific premium, deductible or other amounts are in fact owed to it on any basis. See Ex. A. Chartis has not amended the Chartis Claim in the more than two years since it was filed, nor has Chartis taken any other steps of which the Debtors are aware to liquidate the Chartis Claim. See Rodden Declaration at ¶ 5; see also Ex. A. Although the Chartis Claim is supported by documentation outlining the various insurance policies that Chartis purportedly provided to Tribune CNLBC, LLC, and other information that purports to describe the business relationship between Chartis and Tribune CNLBC, the Chartis Claim otherwise provides no support for any current right to payment on the part of Chartis. See Ex. A. Moreover, according to their books and records, the Debtors have paid all outstanding premium payments, and are not aware of any amounts owing related to the Chartis Policies. See Rodden Declaration at ¶ 5.

15. Similarly, the basis for the Chartis Claim described in paragraph 5(c) is premised on the issuance of fidelity and surety bonds to Tribune CNLBC, LLC, but Chartis has failed to identify any such bonds that would give rise to any right to payment. See Ex. A.

---

[8] The Chartis Claim asserts numerous theories of recovery, including unspecified and unliquidated claims for contribution, reimbursement, equitable claims, and indemnity. See, e.g., Ex. A at ¶ 5(f) (asserting claim for indemnification to the extent Debtors have any obligation to indemnify Claimant), ¶ 5(g) (asserting claim for, among other things, "indemnification or contribution."). Because the Chartis Claims do not provide any greater specificity respecting such claims, the Debtors are unable to determine whether such claims are subject to disallowance under section 502(e)(1) of the Bankruptcy Code. The Debtors reserve all rights to supplement this Objection with respect to such issue.

Moreover, the Debtors are not aware of any fidelity or surety bonds issued to Tribune CNLBC, LLC by Chartis, and therefore are not aware of any amounts owing in respect of same. See Rodden Declaration at ¶ 5.

### B. Objection to the Kemper Claim

16.  The Kemper Claim asserts a claim for "premium and/or other sums now or hereafter owing under the Policies." Ex. B at ¶ 3. It also provides that "[t]he debt underlying this claim incurred during the relevant terms of coverage and as liabilities materialized." Id. at ¶ 4. However, the Kemper Claim is entirely unliquidated, and Kemper does not state anywhere in the Kemper Claim that any amounts are in fact owed to it on any basis. See id. Kemper has not amended the Kemper Claim in the three years since it was filed, nor has Kemper taken any other steps of which the Debtors are aware to liquidate the Kemper Claim. See Rodden Declaration at ¶ 7; see also Ex. B. No specific policies are referenced by the Kemper Claim, nor is there any additional documentation attached to the claim, and, in any event, the Debtors are not aware of any amounts owing with respect to policies written by Kemper for Tribune Company. See Rodden Declaration at ¶ 7; see also Ex. B. According to the Debtors' books and records, the Debtors have made all applicable premium payments respecting any policies issued by Kemper. See Rodden Declaration at ¶ 7.

### C. Objection to the Home Insurance Claim

17.  Home Insurance states that the Home Insurance Claim is asserted for "Insurance Premiums," and provides a list of insurance policies it purportedly issued to nine entities, some of which are Debtors, while others appear to be shortened names of certain of the Debtors. See Ex. C.[9] However, the Home Insurance Claim neither alleges that any premiums

---

[9] The Home Insurance Claim lists seventy-three (73) insurance policies purportedly issued, including "Automobile," "Excess Liability," "Worker's Compensation," "Package," "Reinsurance," "Inland Marine," and "General

46429/0001-9081065v1

Case 08-13141-BLS  Doc 12833  Filed 12/11/12  Page 10 of 12

are owed or specifies an amount thereof. See id. Thus, the Home Insurance Claim appears to be entirely protective.

19. Moreover, although the Home Insurance Claim is supported by documentation outlining the various insurance policies that Home Insurance purportedly provided to the Debtors against which the Home Insurance Claim is asserted, and other information that purports to describe the business relationship between Home Insurance and the Debtors, it provides no support for any current right to payment on the part of Home Insurance. See id. Additionally, Home Insurance has not amended the Home Insurance Claim in the three years since it was filed, nor has Home Insurance taken any other steps of which the Debtors are aware to liquidate the Home Insurance Claim. See Rodden Declaration at ¶ 8; see also Ex. C. In any event, the Debtors are not aware of any amounts owing to policies written by Home Insurance and, according to their books and records, have made all applicable premium payments. See Rodden Declaration at ¶ 8.

## RESERVATION OF RIGHTS

19. The Debtors have based this objection on section 502(b) of the Bankruptcy Code given that (i) the Insurance Claimants have not identified any right to payment of any identifiable amount in the Insurance Claims, and the Debtors have been unable to identify any such right to payment in their books and records, and (ii) that the Fourth Amended DCL Plan provides reasonable protections to all parties, including the Insurance Claimants, with respect to the Debtors' prepetition insurance contracts, including those forming the basis for the Insurance Claims. The Debtors reserve all of their rights to supplement this Objection in the event the

---

Liability." See Ex. C at 2-3. Each of the policies is listed as having an amount owed as "Unknown." Id.

10

46429/0001-9081065v1

Insurance Claimants identify any such rights to payment, or otherwise modify or amend any of the Insurance Claims.

## NOTICE

20. Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) the Insurance Claimants through their authorized representatives; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

21. No previous application for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, (i) disallowing in full and expunging the Insurance Claims as of the later of (i) the date of the Order sustaining this Objection and (ii) the effective date of the Fourth Amended DCL Plan; (ii) directing the Claims Agent to expunge the Insurance Claims from the Claims Register; and (iii) granting such other and further as the Court deems just and proper.

Dated: Wilmington, Delaware
December 11, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Steven W. Robinson
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-9081065v1