IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: January 16, 2013 at 11:00 a.m.<br>Objection Deadline: January 9, 2013 at 4:00 p.m. |

## MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 9019(a) AUTHORIZING ENTRY INTO, AND APPROVAL OF, A STIPULATION BETWEEN DEBTOR PARTIES AND UNIVERSAL CITY STUDIOS PRODUCTIONS, LLLP, NBC STUDIOS LLC, NBC NEWS, NBC SUBSIDIARY WTVJ-TV LP, AND UNIVERSAL WORLDWIDE TELEVISION INC. REGARDING RESOLUTION OF CERTAIN CLAIMS

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors") submit this motion (the "Motion") seeking entry of an order, pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing entry into a stipulation (the "Stipulation"), a copy of which is attached hereto as Exhibit 1, between WSFL, LLC (formerly known as Channel 39, Inc.), KTXL, LLC (formerly known as Channel 40, Inc.), Hoy Publications, LLC, KIAH, LLC (formerly known as KIAH, Inc.), KPLR, Inc., KSWB, LLC (successor-in-interest to KSWB, Inc.), KTLA, LLC (successor-in-interest to KTLA, Inc.), KWGN, LLC (formerly known as KWGN, Inc.), Tribune Broadcasting Company, LLC (successor-in-interest to Tribune Television Company), Tribune Television New Orleans, Inc., WDCW, LLC (formerly known as WDCW Broadcasting, Inc.), WGN Continental Broadcasting Company, LLC (formerly known as WGN Continental Broadcasting Company) and WPIX, LLC (formerly known as WPIX, Inc.), as debtors and debtors in possession, or successors-in-interest to debtors and debtors in possession, in the above-captioned chapter 11 cases (collectively, the "Debtor Parties")[2], on the one hand, and Universal City Studios Productions, LLLP ("Universal"), a subsidiary of NBCUniversal Media, LLC (formerly known as NBC Universal, Inc.) ("NBCU"), NBC Studios LLC, NBC News, NBC Subsidiary WTVJ-TV LP, and Universal Worldwide Television Inc. (collectively, the "Claimants," and together with the Debtor Parties, the "Parties"), on the other hand, regarding the modification, allowance, and treatment of those certain proofs of claim asserted by the Claimants against the Debtor Parties set forth on Exhibit A to the Stipulation. In support of this Motion, the Debtors respectfully state as follows:

---

[2] The Plan (as defined below) provides that one or more Debtors may undertake Restructuring Transactions (as defined in the Plan) on, prior to, or after the Effective Date, which may include, without limitation, mergers, consolidations, conversions, joint ventures, restructurings, recapitalizations, dispositions, liquidations or dissolutions. See Plan § 5.2, Ex. 5.2. Certain of the Debtor Parties will undertake or have undertaken certain of these Restructuring Transactions, pursuant to which they will be merged with and into direct or indirect wholly-owned subsidiaries of Tribune Company – in such instances, the merged Debtor Parties' respective successors-in-interest shall be required to satisfy such Debtor Parties' obligations under the Stipulation and otherwise shall be bound by the terms of the Stipulation.

## Status of the Case and Jurisdiction

1. On December 8, 2008 (the "Petition Date"), Tribune and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[3] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[4]

4. On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Committee").

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Relevant Background

### I. Information on the Debtors' Claims Process

6. On March 23, 2009, the Debtors filed their schedules of assets and liabilities and statements of financial affairs (Docket Nos. 567-789), which were subsequently amended on April 13, 2009 (Docket Nos. 894-957), June 12, 2009 (Docket Nos. 1343-1453), March 2, 2010

---

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

[4] See footnote 2.

(Docket Nos. 3548-3599), May 14, 2010 [Docket Nos. 4388], and January 28, 2011 [Docket Nos. 7661-7671] (collectively, the "Schedules").[5]

7. On March 26, 2009, the Court entered an order (the "Bar Date Order") (i) establishing June 12, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11 cases, and (ii) approving the form and manner of notice of the Bar Date.[6]

8. Written notice of the Bar Date was mailed to, among others, all known creditors listed on the Schedules, as amended, and the Bar Date Order was served on all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date Order. In addition to mailing such actual notice, the Debtors also published notice of the Bar Date in the National Editions of The Wall Street Journal and the New York Times and in the Chicago Tribune and Los Angeles Times on May 12, 2009.

II. **Information on the Universal Claims and the NBC Claims and the Stipulation**

9. Claimants collectively assert twenty (20) proofs of claim, as reflected on Exhibit A to the Stipulation, against the various Debtor Parties, in the aggregate face amount of $15,321,587.58, plus unliquidated amounts (the "Filed Claims").[7] The Filed Claims were assigned Claim Nos. 5161, 5644, 5647, 5648, 5650, 5653, 5654, 6751, 6753, 6755, 6757, 6759,

---

[5] Tribune CNLBC, LLC filed its schedules of assets and liabilities and statements of financial affairs on October 12, 2009 [CNLBC Docket Nos. 8 and 9], which were subsequently amended on December 9, 2009 [Docket No. 2779], May 14, 2010 [Docket No. 4389], and January 28, 2011 [Docket No. 7665].

[6] The Bar Date for the filing of Proofs of Claim against Tribune CNLBC, LLC was July 26, 2010. See Order Establishing Bar Date for Filing Proofs of Claim in the Tribune CNLBC, LLC Bankruptcy Case and Approving the Form and Manner of Notice Thereof entered on June 7, 2010 [Docket No. 4709].

[7] The Universal Claims and NBC Claims (as defined herein) are collectively referred to as the "Filed Claims."

4

6761, 6763, 6765, 4675, 4676, 4680, 4681 and 4689 by the Bankruptcy Court-appointed claims agent, Epiq Bankruptcy Solutions, LLC (the "Claims Agent").

10. Fifteen of the Filed Claims (the "NBC Claims")[8] were filed by Warner Bros. Domestic Television Distribution ("Warner Bros.") against the various Debtor Parties asserting prepetition and postpetition amounts due in the aggregate amount of $12,124,904.64, plus unliquidated amounts, with respect to various program license agreements between Warner Bros. and the Debtor Parties (the "WB Agreements").[9]

11. The other five Filed Claims[10] were filed by Universal (the "Universal Claims") against the various Debtor Parties asserting prepetition amounts due in the aggregate amount of $3,196,682.94, with respect to certain program license agreements between Universal and the Debtor Parties (the "Universal Agreements").

12. The Debtor Parties also scheduled four unsecured claims in their respective Schedule of Assets and Liabilities, in the aggregate amount of $236,616.66, which are listed on Exhibit A to the Stipulation in the column "Claim/Schedule" (the "Scheduled Claims," and together with the Filed Claims, the "Filed and Scheduled Claims").[11] The Scheduled Claims were assigned Schedule No. 175000960, 148000980, 241008410 and 241008420.

---

[8] The proofs of claim that were filed by Warner Bros., and subsequently transferred to NBC, were assigned Claim Nos. 5161, 5644, 5647, 5648, 5650, 5653, 5654, 6751, 6753, 6755, 6757, 6759, 6761, 6763, and 6765 by the Claims Agent.

[9] On or about May 26, 2011, Warner Bros. transferred the claims to NBC Studios LLC and a Transfer of Claim Other Than For Security was filed with the Court [Docket No. 9026].

[10] The proofs of claim filed by Universal were assigned Claim Nos. 4675, 4676, 4680, 4681 and 4689 by the Claims Agent.

[11] The Scheduled Claims are listed on the claims register under the following creditor names: NBC News, NBC Subsidiary WTVJ-TV LP, and Universal Worldwide Television Inc., each a party to this Stipulation.

46429/0001-8727888v2

13. The Debtor Parties and the Claimants have engaged in further reconciliation and negotiation of the Filed and Scheduled Claims, concerning (i) the identification of the Filed and Scheduled Claims; (ii) the prepetition amount due with respect to such Filed and Scheduled Claims; and (iii) the identification of the Debtor Parties against which each of the Filed and Scheduled Claims is properly asserted.

14. The Parties have reached an agreement as to the amount and treatment of the Filed and Scheduled Claims, and have agreed to enter into the Stipulation to document their agreement. Specifically, the Stipulation provides as follows:[12]

- The Filed Claims, originally asserted in the aggregate amount of $15,321,587.58, plus unliquidated amounts, and the Scheduled Claims, scheduled in the aggregate amount of $236,616.66, shall be allowed in the aggregate reduced general unsecured amount of $12,622,813.30, each in the respective amounts and against the respective Debtor Parties as set forth on Exhibit A to the Stipulation.

- The Filed and Scheduled Claims shall be satisfied in accordance with the provisions for the payment of general unsecured claims as set forth in the chapter 11 plan of reorganization, and any amendments thereto, that is confirmed and becomes effective for the Debtor Parties (the "Plan").

- The satisfaction of the Filed and Scheduled Claims in accordance with the Plan shall be in full and final satisfaction of all prepetition claims arising out of or relating to the subject matter of the WB Agreements and the NBC Claims and the Universal Agreements and Universal Claims. The Claimants agree not to file any other or further proofs of claim in any of the Debtors' chapter 11 cases arising out of or relating to the subject matter of the WB Agreements and the NBC Claims and the Universal Agreements and the Universal Claims.

- Notwithstanding any other provision contained in the Stipulation, Claimants or their successors or assigns shall remain entitled to assert (i) a claim or claims for rejection damages as provided under section 502(g) of the Bankruptcy Code should one or more of the Universal Agreements be rejected; and (ii) an application for recovery of any administrative expense as

---

[12] The terms as set forth in this Motion are intended only as a summary of the terms of the Stipulation. The Motion shall not in any way supersede or alter the terms of the Stipulation. In the event of any conflict between the summary herein and the Stipulation itself, the terms of the Stipulation shall control.

46429/0001-8727888v2

provided under Section 503 of the Bankruptcy Code, including any damages resulting from any post-petition default by the Debtors under the Universal Agreements.

- The Parties acknowledge and agree that the Claimants do not need to take any further action to seek to allow the Filed Claims in the Debtors' chapter 11 cases in the reduced amounts stipulated. The Debtors and/or the Claims Agent may amend the claims register to reflect that the Filed Claims are to be allowed against the Debtor Parties and their estates in the amounts stipulated.

- Notwithstanding anything to the contrary in the Stipulation, the Debtors expressly reserve their right to file an objection to any of the Filed Claims pursuant to section 502(d) of the Bankruptcy Code, or to exercise such other rights of set-off or recoupment authorized by applicable law or by the Plan, provided, however, that the Debtors will not file an objection to any of the Filed Claims corresponding to the WB Agreements and/or the Universal Agreements, respectively, in the event that the WB Agreements or Universal Agreements are assumed by the Debtors pursuant to the Plan.

- Nothing contained in the Stipulation shall be construed as a waiver of any rights that the Debtors or the estates may have to bring any causes of actions, including, but not limited to, causes of action under 11 U.S.C. §§ 544, 547 and 548.

**Relief Requested**

15. By this Motion, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to enter into the Stipulation; (ii) approving the Stipulation; and (iii) authorizing the Claims Agent to amend the claims register to reflect the terms of the Stipulation.

16. This Motion is filed to comply with this Court's Order Granting Debtors (I) Limited Waiver of Requirements of Local Rule 3007-1(f) and (II) Authority to Settle Disputed Claims [Docket No. 2657], which provides, in part, that if a proposed settlement amount of a Disputed Claim (as defined therein) is equal to or greater than $1,000,000 the Debtors are authorized to settle a Disputed Claim and execute necessary documents, including a stipulation of settlement or release, provided that they first obtain approval of the Bankruptcy Court.

17. The Court has discretion to approve settlements pursuant to section 363 of the Bankruptcy Code after notice and a hearing. See Myers v. Martin (In re Martin), 91 F.3d 389,

394, 395 n.2 (3d Cir. 1996). The procedure for approving a settlement in bankruptcy is set forth by Bankruptcy Rule 9019, which provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). The United States Court of Appeals for the Third Circuit has stated that section 363 of the Bankruptcy Code is the substantive provision requiring a hearing and court approval of settlements, while Bankruptcy Rule 9019 establishes the procedure by which such approval may be secured. See In re Martin, 91 F.3d at 395 n. 2 (distinguishing the substance of section 363 from the procedural effect of Bankruptcy Rule 9019).

18. In determining whether to approve a settlement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Third Circuit has stated that a bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Id. at 393. In making this determination, a court should consider four criteria: "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay…; and (4) the paramount interest of the creditors." Id. (referencing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)); see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (listing the Anderson factors as controlling whether a settlement should be approved). The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the estate. See In re Louise's, Inc., 221 B.R. 798, 801 (D. Del. 1997).

19. Here, all factors weigh in favor of authorizing the Debtor Parties to enter into the Stipulation. The compromise proposed in the Stipulation is fair, reasonable, and in the best

interests of the Debtors' estates. The Stipulation reflects a reduction of the Filed Claims with the consent of the Claimants and the affected Debtor Parties, based on arm's-length negotiations between the business representatives and advisors of the Debtor Parties and the Claimants. During the course of the negotiations, the Parties exchanged relevant information in support of their respective views on the prepetition amounts owed by the Debtor Parties to the Claimants. As a result of the negotiations, the Parties agreed to the modification, allowance and treatment of the Filed and Scheduled Claims as set forth in the Stipulation.

20. While the Debtors are prepared to formally object to, and litigate, the Filed Claims, such litigation would result in the expenditure of considerable additional legal fees by the Debtor Parties' estates. The Debtors also recognize that litigation of the claims carries with it inherent uncertainties and there can be no assurance that litigation would achieve a better result than the result embodied in the Stipulation. The settlement reflected in the Stipulation, and the resolution achieved thereby, fairly balances the Debtor Parties' likelihood of success on the merits of the claims against their interests in avoiding the uncertainty of litigation.

21. Finally, the interests of creditors weighs in favor of the Debtor Parties' entry into the Stipulation because those interests are served by the prompt and efficient resolution of the Filed Claims and the avoidance of litigation risks and the legal expenses that would be incurred if the claims were litigated. The Debtor Parties' creditors as a whole will benefit from the reduction of the Filed Claims.

46429/0001-8727888v2

### Notice

22. Notice of this Motion has been provided to: (i) the Claimants; (ii) the Office of the United States Trustee; (iii) counsel for the Committee; (iv) counsel to the administrative agent for Tribune's prepetition loan facilities; (v) counsel to the administrative agent for the Debtors' postpetition financing facility; and (vi) all parties having requested notice in the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

### No Prior Request

23. No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) authorizing the Debtors to enter into the Stipulation; (ii) approving the Stipulation; (iii) authorizing the Debtors and/or the Claims Agent to amend the claims register to reflect the terms of this Stipulation; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware  
December 26, 2012

Respectfully submitted,

COLE, SCHOTZ, MEISEL,  
FORMAN & LEONARD, P.A.

By: _____  
Norman L. Pernick (No. 2290)  
J. Kate Stickles (No. 2917)  
Patrick J. Reilley (No. 4451)  
500 Delaware Avenue, Suite 1410  
Wilmington, DE 19801  
Telephone: (302) 652-3131  
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS  
AND DEBTORS IN POSSESSION

46429/0001-8727888v2