# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., [1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**Hearing Date: January 16, 2013 at 11:00 a.m.**
**Objection Deadline: January 9, 2013 at 4:00 p.m.**

## MOTION FOR AN OMNIBUS ORDER
## AUTHORIZING THE SUBSTITUTION OF THE
## REORGANIZED DEBTORS IN PLACE OF THE CREDITORS' COMMITTEE AS
## PLAINTIFFS IN CERTAIN ADVERSARY PROCEEDINGS
## AND APPROVING PROCEDURES TO EVIDENCE THIS SUBSTITUTION

Tribune Company ("Tribune") and the other debtors and debtors in possession

(each a "Debtor," and collectively the "Debtors") in the administratively consolidated chapter 11

cases pending in this Court hereby move pursuant to Federal Rule of Civil Procedure 25(c), as

---

[1] Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicagoland Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); ForSaleByOwner.com Corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

incorporated by Bankruptcy Rule 7025, for an order authorizing the substitution of the applicable

Reorganized Debtors[2] into the adversary proceedings detailed on the attached <u>Exhibit A</u> and

<u>Exhibit B</u> (the "<u>Substitution Adversaries</u>") as the successor-in-interest plaintiff(s) with respect to

the Ordinary Litigation Claims asserted therein pursuant to Section 5.16 of the Fourth Amended

Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors,

the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo,

Gordon & Co., L.P., and JPMorgan Chase Bank N.A. (as Modified July 19, 2012), [Docket No.

12072] (the "<u>DCL Plan</u>"), confirmed by order of this Court on July 23, 2012 (the "<u>Confirmation

Order</u>") [Docket No. 12074].  As set forth in more detail below, this Motion also seeks (i)

approval of procedures whereby, following the Effective Date, the applicable Reorganized

Debtors will file notices substantially in the form of the attached <u>Exhibit C</u> and <u>Exhibit D</u> in each

of the dockets of the Substitution Adversaries to evidence each substitution and (ii) authorization

for the substitution of the Reorganized Debtors in place of the Creditors' Committee as the

prospective plaintiffs in the tolled adversary proceedings asserting Ordinary Litigation Claims, as

detailed on <u>Exhibit E</u>.

       The Substitution Adversaries comprise 174 adversary proceedings that are

pending before this Court, and constitute a subset of the approximately 215 lawsuits originally

initiated on behalf of the Debtors' estates by the Creditors' Committee (the "<u>Committee-Filed

Adversaries</u>") against two groups of defendants: (i) current and former officers, directors and

employees (the "<u>Insider Defendants</u>") of Tribune or its subsidiaries and (ii) other third-party

defendants (the "<u>Third Party Defendants</u>").  All of the Substitution Adversaries contain

avoidance and recovery claims that constitute Ordinary Litigation Claims which will be owned

---

[2] All capitalized terms used, but not defined herein, shall have the meaning ascribed to them in the DCL Plan.

by the Reorganized Debtors as of the Effective Date pursuant to the DCL Plan, and this Motion

does not seek relief regarding the LBO-Related Causes of Action commenced by the Creditors'

Committee that constitute Preserved Causes of Action which will be transferred to the Litigation

Trust under the DCL Plan.

## STATUS OF THE CASE

1.       On December 8, 2008, Tribune and certain of its subsidiaries each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An additional Tribune

affiliate, Chicago National League Ball Club, LLC ("CNLBC"), filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  The chapter 11 cases were

consolidated for procedural purposes only and are being jointly administered pursuant to

Bankruptcy Rule 1015(b).

2.       On December 18, 2008, the Office of the United States Trustee appointed

the Creditors' Committee.

3.       On July 23, 2012, the Court entered the Confirmation Order confirming

the DCL Plan.

## BACKGROUND

I.    **History of the Committee-Filed Adversaries, the Substitution Adversaries and the Tolled Ordinary Litigation Claims**

4.       The Creditors' Committee was authorized by this Court to commence,

prosecute and settle on behalf of the Debtors' estates various claims to avoid and recover pre-

petition transfers made by the Debtors to, inter alia, (i) certain Insider Defendants and certain

3

Third Party Defendants by order dated November 29, 2010 [Docket No. 6658], and (ii) certain

other Third Party Defendants by order dated November 29, 2010 [Docket No. 6657].[3]

       5.      Beginning on December 3, 2010, the Creditors' Committee initiated the

Committee-Filed Adversaries, comprised of approximately 215[4] avoidance actions, which

include (i) the 170 pending Substitution Adversaries asserted against Insider Defendants and (ii)

the four (4) pending Substitution Adversaries asserted against Third Party Defendants.  During

approximately the same time period, the Creditors' Committee entered into tolling agreements

with ten (10) other Third Party Defendants which tolled the statutes of limitations for certain

Ordinary Litigation Claims that could have been asserted against such defendants (the "Tolled

Ordinary Litigation Claims").  The Substitution Adversaries were initiated – and the Tolled

Ordinary Litigation Claims were tolled – just prior to the expiration of the applicable statutes of

limitations in order to preserve such claims.

       6.      After the filing of the Committee-Filed Adversaries, each such adversary

(including each Substitution Adversary) was immediately stayed and, with respect to the

Substitution Adversaries, to date no responsive pleadings or dispositive motions have been filed.[5]

The stay of the Substitution Adversaries expires 90 days after the Effective Date in accordance

with this Court's July 9, 2012 order amending the previously entered orders (see supra at ¶ 4)

---

[3] By motions dated February 1, 2010 (supplemented on September 14, 2010), and September 13, 2010 (collectively the "LBO Standing Motions," Docket Nos. 3281, 5668, and 5698, respectively) the Creditors' Committee also sought standing to pursue certain avoidance actions claims and counterclaims arising out of or in connection with the Debtors 2007 Leveraged ESOP transactions.  The Court granted the LBO Standing Motions on October 27, 2010. [Docket No. 6150].  This Motion does not seek relief regarding any of these LBO-Related Causes of Action.

[4] As discussed further infra, 16 of these actions were subsequently dismissed.

[5] Fifteen (15) of the Committee-Filed Adversaries were dismissed on October 21, 2011 pursuant to Court authorization obtained by the Creditors' Committee. [Docket No. 10025, Ex. 1].  One (1) additional Committee-Filed Adversary was dismissed on February 29, 2012.

granting the Creditors' Committee standing to pursue the Substitution Adversaries [Docket No. 11968].[6]

## II.    The Ownership of the Committee-Filed Adversaries Post-Effective Date

7.    Pursuant to the DCL Plan, as of the Effective Date the Creditors' Committee will no longer have authority to act in its prior role as plaintiff in the Committee-Filed Adversaries or as a prospective plaintiff in the Tolled Ordinary Litigation Claims.  See DCL Plan § 15.2.

8.    Section 5.16 of the DCL Plan provides that, as of the Effective Date, the Debtors will become the owners[7] of certain estate causes of action, defined as Ordinary Litigation Claims in the DCL Plan as follows:

> the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Person as of the Petition Date including, without limitation, any and all claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold under chapter 5 of the Bankruptcy Code that do not arise from the leveraged buy-out of Tribune that occurred in 2007.

See DCL Plan § 1.1.156; see also Confirmation Order at § M.  Ordinary Litigation Claims include certain types of avoidance actions for compensation paid to the Insider Defendants, including ". . . any action for avoidance and recovery of payments arising from stock options, restricted stock units and/or deferred compensation."  DCL Plan § 1.1.156.

---

[6] Specifically, the Order granted the Creditors' Committee motion to amend the definition of the term "Termination Event" in the previously entered standing orders to be 90 days after the Effective Date, the occurrence of said Termination Event lifting the stay on the prosecution of the Substitution Adversaries.  See Motion of The Official Committee of Unsecured Creditors to (I) Amend the Definition of the "Termination Event" in Standing Orders and (II) for Further Extension of Time to Effect Service of Original Process Filed by The Official Committee of Unsecured Creditors of Tribune Company, on behalf of Tribune Company, et al. [Docket No. 11732].

[7] See DCL Plan § 5.16 ("Debtors and their Estates shall retain the Ordinary Litigation Claims.")

46429/0001-9128342v1

9.    The DCL Plan also provides for the creation of a Litigation Trust, and the transfer of certain "Preserved Causes of Action" to the Litigation Trust.  See DCL Plan § 1.1.121; see also DCL Plan, Attachment V, the Litigation Trust Agreement at § 1.2.  Preserved Causes of Action are those that arose from the leveraged buy-out of Tribune that occurred in 2007 and include, inter alia, "any claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any of the Debtors' current or former officers, directors and/or employees for payments on any phantom equity grant pursuant to the 2007 Management Equity Incentive Plan or success bonus compensation arising from the leveraged buy-out of Tribune that occurred in 2007."  DCL Plan § 1.1.156.[8]  This motion does not seek any relief with respect to the Preserved Causes of Action asserted in the Committee-Filed Adversaries that will be transferred to the Litigation Trust, and only seeks relief with respect to Ordinary Litigation Claims.

10.    In connection with the above-described compensation payments to some Insider Defendants (the recovery of each such payment being classified as either an Ordinary Litigation Claim or a Preserved Cause of Action), the Debtors also paid additional amounts to offset excise taxes (the "Excise Tax Transfers") that would arise from certain types of compensation payments.  Under the terms of the DCL Plan, the recovery of these Excise Tax Transfers is allocated in the same manner as the recovery of the underlying type of compensation for which each Excise Tax Transfer was made.  For example, if an Excise Tax Transfer was made to offset an excise tax arising from a deferred compensation, restricted stock unit or stock

---

[8] The definition of Ordinary Litigation Claim excludes claims for these enumerated types of transfers to Insider Defendants because they arose "from the leveraged buy-out of Tribune that occurred in 2007," and the Preserved Causes of Action in turn are specifically defined to include ". . . any and all LBO-Related Causes of Action that the Tribune Entities or the Debtors' Estates may have or are entitled to assert on behalf of their respective Estates (whether or not asserted) against the Non-Settling Defendants under any provision of the Bankruptcy Code or any applicable nonbankruptcy law including, without limitation, any and all claims under chapter 5 of the Bankruptcy Code." § 1.1.174.

option payment, then a claim seeking to recover such an Excise Tax Transfer will be classified

and treated as an Ordinary Litigation Claim.[9]  Conversely, if an Excise Tax Transfer was made to

offset an excise tax arising from a success bonus or a phantom equity grant, then a claim seeking

to recover such an Excise Tax Transfer will be classified and treated as a Preserved Cause of

Action.

11.    Apart from claims which are Ordinary Litigation Claims or Preserved

Causes of Action, the Committee-Filed Adversaries also assert two categories of claims whose

future ownership may not be fully resolved (the "Unresolved Claims") as of the Effective Date.

Specifically, although the DCL Plan provides that five categories of claims[10] against Insider

Defendants are either owned by the Debtors or the Litigation Trust as of the Effective Date, it is

less explicit regarding (i) the allocation of claims asserted for the avoidance and recovery of

executive transition[11] payments, and (ii) whether preference claims asserted against Insider

Defendants who are also defendants in the adversary proceeding captioned as *The Official*

*Committee of Unsecured Creditors of Tribune Company v. FitzSimons*, (the "FitzSimons

Adversary")[12] are allocated between the Debtors and the Litigation Trust in the same manner[13] as

---

[9] While the Excise Tax Transfers are typically listed as a single transfer on each complaint in the Substitution Adversaries, the Debtors have disaggregated any claims for the recovery of the Excise Tax Transfers and allocated such disaggregated amounts to the enumerated categories of claims described in this motion – Ordinary Litigation Claims, Preserved Causes of Action, and Unresolved Claims (as defined infra). These allocations reflect a tax analysis provided to the Debtors by the accounting firm Deloitte and Touche LLP, who calculated the amount of excise taxes attributable to certain compensation payments. Only one of the Substitution Adversaries involves a claim for the recovery of Excise Tax Transfers, and the allocation of such a claim is described on Exhibit B at notes 3-5.

[10] The DCL Plan provides that the Preserved Causes of Action include phantom equity claims and success bonus claims, while the Ordinary Litigation Claims include restricted stock unit claims, restricted stock option claims, and deferred bonus claims. See DCL Plan §§ 1.1.156 and 1.1.174.

[11] As discussed supra, the recovery of any Excise Tax Transfers associated with executive transition transfers shall also be classified as Unresolved Claims.  See Ex. B at n.5.

[12] The FitzSimons Adversary was originally docketed as Adv. Pro. No. 10-54010 when pending before this Court, but is now consolidated under Case No. 12-cv-02652 (WHP) in the MDL proceedings pending before Judge William H. Pauley, III in the United States District Court for the Southern District of New York.

[13] The preference claims asserted against Insider Defendants who are also defendants in the FitzSimons Adversary seek recovery of the same types of compensation as those sought in the Substitution Adversaries, including payments of success bonuses, phantom equity, restricted stock units, stock options, deferred compensation, executive transition payments, and Excise Tax Transfers related to same.

7

the categories of preference claims asserted in the other Substitution Adversaries, as described supra at ¶¶ 8-10.

12.     The Debtors anticipate that after the Effective Date the Reorganized Debtors, the Litigation Trustee, and the applicable defendants will attempt to reach a resolution of the ownership of the Unresolved Claims.[14] For the avoidance of doubt, the Debtors do not seek any relief with respect to the Unresolved Claims asserted within the Substitution Adversaries. In addition, the relief sought by this Motion should not impair or alter any of the parties' interests with regard to the determination of whether the Unresolved Claims constitute Ordinary Litigation Claims or Preserved Causes of Action.

13.     In addition to the requested relief with respect to the Substitution Adversaries detailed herein, by this motion the Debtors request that the Court enter an order clarifying that following the Effective Date, the Reorganized Debtors will be substituted in to replace the Creditors' Committee as the prospective plaintiffs in the ten (10) Tolled Ordinary Litigation Claims as set forth on Exhibit E.

## III.     Specific Details about the Substitution Adversaries

14.     As set forth on Exhibit A, 156 of the Substitution Adversaries seek avoidance and recovery of only Ordinary Litigation Claims,[15] and therefore all of the claims asserted in these Substitution Adversaries will be owned in full by the Reorganized Debtors following the Effective Date (the "Full Substitution Adversaries"). In accordance with the substitution of the Reorganized Debtors as plaintiff(s) into the Full Substitution Adversaries, the

---

[14] The Debtors, in consultation with the Creditors' Committee, decided that it would be preferable to engage in discussions regarding the Unresolved Claims with the Litigation Trustee, who will be appointed by the Litigation Trust Advisory Board on the Effective Date. See DCL Plan at § 13.3.1.

[15] See, e.g., Ex. A at § 1 (columns titled "Deferred Bonus Transfers" and "Stock Unit or Option Transfers"); see also Ex. A at § 2(column titled "Total Complaint Amount Asserted (Total of Ordinary Litigation Claims)"). None of the Full Substitution Adversaries assert claims for the recovery of Excise Tax Transfers.

Debtors seek approval of a procedure whereby the applicable Reorganized Debtor or Reorganized Debtors will file a notice of substitution ("Full Substitution Notice"), in a form substantially similar to Exhibit C, on the docket of each of the Full Substitution Adversaries to evidence that such Reorganized Debtor or Reorganized Debtors have been substituted by order of this Court as the plaintiff(s) in each Full Substitution Adversary.

15.    As set forth on Exhibit B, the remaining 18 Substitution Adversaries[16] assert both (i) Ordinary Litigation Claims and (ii) Preserved Causes of Action and/or Unresolved Claim(s) (collectively the "Split Substitution Adversaries").  By way of example, a number of the Split Substitution Adversaries assert a count for the avoidance and recovery of both restricted stock units and success bonus transfers.  This motion only seeks relief with respect to the Ordinary Litigation Claims asserted in the Split Substitution Adversaries, as detailed on Exhibit B in the column titled "*Ordinary Litigation Claim Amounts,*" and the sub-columns thereunder titled "*Deferred Bonus Transfers,*" and "*Restricted Stock Unit or Option Transfers.*"  In accordance with the substitution of the Reorganized Debtors as plaintiff(s) with respect to the Ordinary Litigation Claims in the Split Substitution Adversaries, the Debtors seek approval of a procedure whereby the applicable Reorganized Debtor or Reorganized Debtors will file a notice of substitution ("Split Substitution Notice")[17] in each of the Split Substitution Adversaries, in a form substantially similar to Exhibit D, on the docket of each of the Split Substitution Adversaries to evidence that such Reorganized Debtor or Reorganized Debtors have been

---

[16] All of the Split Substitution Adversaries are asserted against Insider Defendants.

[17] The central difference between the two substitution notices is that the Split Substitution Notice will include a specification of the categories of claims and amounts that unequivocally constitute Ordinary Litigation Claims in the Split Substitution Adversaries.

substituted by order of this Court as the plaintiff(s) solely with respect to the Ordinary Litigation

Claims as enumerated in categories and amounts specified in Exhibit B.[18]

## RELIEF REQUESTED

16.    The Debtors request that the Court enter an order, substantially in the form

attached hereto, (i) authorizing the substitution of each applicable Reorganized Debtor or

Reorganized Debtors as the plaintiff(s) in each Full Substitution Adversary as detailed on Exhibit

A by inserting the name(s) of each applicable Reorganized Debtor(s) as the plaintiff(s) into the

caption of each of the Full Substitution Adversaries in place of the Creditors' Committee, as

illustrated on Exhibit C, and approving the filing of the Full Substitution Notice evidencing such

substitution in the dockets of each Full Substitution Adversary; (ii) authorizing the substitution

of each applicable Reorganized Debtor or Reorganized Debtors as the plaintiff(s) in each of the

Split Substitution Adversaries solely with respect to the Ordinary Litigation Claims as detailed

on Exhibit B by inserting the name(s) of each applicable Reorganized Debtor(s) as the

plaintiff(s) into the caption of each of the Split Substitution Adversaries in place of the Creditors'

Committee solely with respect to the Ordinary Litigation Claims, as illustrated on Exhibit D, and

approving the filing of the Split Substitution Notice in the dockets of each Split Substitution

Adversary to evidence such substitution; and (iii) providing that the Reorganized Debtors are

substituted as the prospective plaintiffs of the Tolled Ordinary Litigation Claims as detailed on

Exhibit E.

---

[18] The Debtors anticipate that the Litigation Trustee may file a motion similar to the instant motion in the Split Substitution Adversaries which assert Preserved Causes of Action after the Effective Date, seeking to have the Litigation Trustee substituted as the plaintiff with respect to the Preserved Causes of Action in the Split Substitution Adversaries.  See Ex. B (column titled *"Preserved Cause of Action Amounts"* and the sub-columns thereunder titled *"Phantom Equity Transfers,"* and *"Success Bonus Transfers"* ).

**BASIS FOR RELIEF**

17.     Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  Rule 25(c) is made applicable in each of the above adversary proceedings by Bankruptcy Rule 7025, which states that "[s]ubject to the provisions of Rule 2012, Rule 25 F. R. Civ. P. applies in adversary proceedings."

18.     The Third Circuit has stated that Rule 25(c) "does not ordinarily alter the substantive rights of parties" but instead is "merely a procedural device designed to facilitate the conduct of a case. . ." Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc., 13 F.3d 69, 72 (3d Cir. 1993); see also COLLIER ON BANKRUPTCY, 16TH ED. at ¶ 7025.04 ("When the transfer of the interest takes place during the action, Rule 25(c) becomes applicable and provides that the action may be continued by or against the original party unless the court directs that the transferee of the interest be substituted or joined.").

19.     Courts have routinely found that rule 25(c) substitution is appropriate where bankruptcy causes of action are transferred.  See, e.g., Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 382 (D.N.J. 2006) ("When, as here, Plaintiffs' causes of action vest in the bankruptcy trustee after the initiation of the lawsuit, Rule 25(c) ensures that the proper person litigates the claims.").

20.     Substitution is particularly appropriate where the transferor-party ceases to exist, or where the plan of reorganization provides for the transfer of the causes of action.  See, e.g., In re Graceway Pharmaceuticals, LLC, Case No. 11-13036, Docket No. 551 (Bankr. D. Del. May 2, 2012) (PJW) (confirmation order provides for substitution of Liquidating Trustee pursuant to Bankruptcy Rule 7025 and Fed. R. Civ. P. 25(c)); Bisaria v. Official Comm. of

11

<u>Unsecured Creditors of Shubh Hotels Pittsburgh, LLC</u>, 2011 U.S. Dist. LEXIS 86600, 1-2 (W.D. Pa. Aug. 5, 2011) ("the Court having considered the Motion to Substitute…. [substituted litigants] have, by virtue of the terms of the confirmed and effective plan, and the [termination] of the Committee's authority, succeeded to and become the real parties in interest from the Appellee's side of the case… [a]ccordingly, the Court does, in accord with F.R.C.P. Rule 25(c) substitute [the substituted litigants]."); <u>Blixseth v. Official Comm. of Unsecured Creditors (In re Yellowstone)</u>, Adv. Pro. No. 09-00014, Docket No. 305 (Bankr. D. Mont. 2009) (Order granting substitution motion under Rule 7025 for Creditors' Committee for Liquidating Trust to pursue counterclaims previously transferred by the Plan of Reorganization).

21.    Here, as discussed <u>supra</u>, the Creditors' Committee, as of the Effective Date, will no longer have the authority to continue in its role as plaintiff in the Substitution Adversaries, and the Ordinary Litigation Claims asserted within the Substitution Adversaries will be owned by the Reorganized Debtors.  Thus, substitution is appropriate and warranted under Federal Rule of Civil Procedure 25(c), following the Effective Date for each applicable Reorganized Debtor in each Substitution Adversary with respect to the Ordinary Litigation Claims.

<strong><u>NOTICE</u></strong>

Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Creditors' Committee; (iii) counsel to the administrative agent for Tribune's prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition financing facility; (v) all parties having requested notice in the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 2002; and (vi) the defendants in the Substitution Adversaries identified on <u>Exhibits A</u> and <u>B</u> and the parties to the tolling agreements identified on <u>Exhibit E</u>.

12

In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to Federal Rule of Civil Procedure 25(c),

(i) authorizing substitution of each applicable Reorganized Debtor or Reorganized Debtors as the plaintiff(s) in each of the Full Substitution Adversaries as detailed on Exhibit A by inserting the name(s) of each applicable Reorganized Debtor(s) as the plaintiff(s) into the caption of each of the Full Substitution Adversaries in place of the Creditors' Committee, as illustrated on Exhibit C, and approving the filing of a Full Substitution Notice evidencing such substitution in the dockets of each Full Substitution Adversary;

(ii) authorizing the substitution of each applicable Reorganized Debtor or Reorganized Debtors as the plaintiff(s) in each of the Split Substitution Adversaries solely with respect to the Ordinary Litigation Claims as detailed on Exhibit B by inserting the name(s) of each applicable Reorganized Debtor(s) as the plaintiff(s) into the caption of each of the Split Substitution Adversaries in place of the Creditors' Committee solely with respect to the Ordinary Litigation Claims, as illustrated on Exhibit D, and approving the filing of a Split Substitution Notice evidencing such substitution in the dockets of each Split Substitution Adversary;

(iii) providing that the Reorganized Debtors are substituted as the prospective plaintiffs of the Tolled Ordinary Litigation Claims as detailed on Exhibit E; and

(iv) granting such other and further relief as the Court deems just and proper.

46429/0001-9128342v1

Dated: Wilmington, Delaware
         December 27, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kevin T. Lantry
Steven W. Robinson
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

14

46429/0001-9128342v1