## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE
## TENTH QUARTERLY FEE APPLICATION OF SEYFARTH SHAW LLP

Stuart Maue (the **"Fee Examiner"**) submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the **"Fee Examiner Order"**) in connection with the *Tenth Quarterly Fee Application of Seyfarth Shaw LLP* [Docket No. 11384] (the **"Fee Application"**). The Fee Application seeks

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

approval of fees that total $200,527.30 and reimbursement of expenses that total $5,415.87 for the period from December 1, 2011 through February 29, 2012. Seyfarth Shaw LLP ("**Seyfarth**") serves as special counsel in connection with labor and employment litigation matters for the debtors and debtors in possession (collectively the "**Debtors**").

## Background

1.　On December 8, 2008 (the "**Petition Date**"), the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. Under this Court's *Order Directing Joint Administration Chapter 11 Cases* on December 10, 2009, these cases are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules [Docket No. 43].

2.　On December 26, 2008, the Debtors filed their Motion for an Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code [Docket No. 148] (the "**OCP Motion**"). In the OCP Motion, the Debtors sought approval of this Court to employ and retain the Ordinary Course Professionals, including Seyfarth, to provide services to the Debtors as necessary for the day-to-day operations of the Debtor's businesses on terms substantially similar to those in effect prior to the Petition Date. On January 15, 2009, this Court granted the OCP Motion and issued an order approving procedures for the employment, retention, and compensation of the Ordinary Course Professionals [Docket No. 227] (the "**OCP Order**").

3.　The OCP Order provides that in the event the fees incurred and invoiced by any Ordinary Course Professional exceed the applicable Monthly Cap, such Ordinary Course Professional shall be required to seek this Court's approval of all fees invoiced for that month in accordance with sections 330 and 331 of the Bankruptcy Code, all applicable Bankruptcy Rules

and Local Rules, and the procedures set forth in the Interim Compensation Order and the Fee Examiner Order.

4.      In October 2009 and November 2009, Seyfarth exceeded the Monthly Cap. When the Debtors determined that Seyfarth would continually exceed the monthly cap, on January 8, 2010 the Debtors filed an *Application to Retain Seyfarth as Special Counsel for Certain Employment Litigation Matters* [Docket No. 3046] (the "**Retention Application**"). On January 25, 2010, this Court entered the *Order Authorizing Debtors and Debtors in Possession to Employ and Retain Seyfarth as Special Counsel for Certain Litigation Matters Pursuant to 11 U.S.C. §§ 327(e) and 1107, nunc pro tunc, to December 1, 2009* [Docket No. 3192] (the "**Retention Order**").

5.      Seyfarth submitted the Fee Application pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 225] (the "**Interim Compensation Order**").

## Applicable Standards

6.      In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

7.      The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for

the District of Delaware (the **"Local Rules"**), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the **"UST Guidelines"**). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

8.      Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

9.      A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must

comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules. Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application. A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

10.    The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Supplemental Retention Application, the Supplemental Retention Order, the Interim Compensation Order, and all related filings and provided a Preliminary Report to Seyfarth for review and comment. The firm submitted to the Fee Examiner a written response to the Preliminary Report. After consideration of the additional information provided by the firm, the Fee Examiner now issues this final report (the **"Final Report"**) "in a format designed to opine whether the requested fees of the Case Professional meet the applicable standards of section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines." *Fee Examiner Order ¶5.*

## DISCUSSION OF FINDINGS

### Fixed Fee Services

11.    The Fee Application requested a total of $1,500.00 for fixed fee services for the preparation of FCRA Compliance documents with regard to the East Coast Property matter. Upon request by the Fee Examiner, the firm provided additional information regarding the tasks performed in connection with this flat fee. The Fee Examiner makes no findings regarding the propriety of the fixed fee services. In the event the Court requests additional detail and/or information from Seyfarth, upon instruction the Fee Examiner will review such material and supplement this Report.

## Hourly Services

## Technical Requirements

12.   **Reconciliation of Fees and Expenses.**  The Fee Examiner compared the total amount of hourly fees ($199,027.30) and expenses ($5,415.87) requested in the Fee Application ("**Fees Requested**" and "**Expenses Requested**") to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**" and "**Expenses Computed**").  The recomputation of fees revealed that the Fees Requested were $355.50 more than the Fees Computed (after adjusting the hourly billing rates to reflect a 10% discount) resulting in an apparent overcharge.  The discrepancy was the result of task hours within several entries that were not equal to time billed for the entries as a whole.  The discrepancy and the related entries were displayed in **Exhibit A** to the Preliminary Report.  The firm agreed with the Fee Examiner, and accepted a fee reduction of $355.50.  Exhibit A has been omitted from the final report.

The Fee Examiner further determined that there was not a discrepancy between the Expenses Requested and the Expenses Computed.  The figures in this report and the accompanying exhibits reflect Fees Computed and Expenses Computed.

13.   **Block Billing.**[2]  The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*.  The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not

---

[2] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[3]    The Delaware Bankruptcy Court has found that time entries that generally only combine work on one issue, and a conference/communication with the client or opposing counsel on the same issue, while technically block billing, will not be objectionable.[4] Seyfarth block billed entries totaling 9.60 hours and $3,931.20 in associated fees.    The questioned entries were displayed in **Exhibit B** to the Preliminary Report.    With one minor exception, the block billed entries related to the same issue and are not objectionable.    Therefore, the Fee Examiner does not recommend a related fee reduction.    Exhibit B has been omitted from the Final Report.

14.    **Time Increments.**    The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*.    The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines ¶(b)(4)(v)*.    Seyfarth complied with the applicable rules regarding time increments.

### Review of Fees

15.    **Firm Staffing.**    The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*.    The

---

[3] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g., In re Brous,* 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g., In re Baker,* 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007).    Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

[4] See *In re Worldwide Direct, Inc.,* 316 B.R. 637, 643 (Bankr. D. Del. 2004) (the court did disallow 100% of the block billed entries that combined more than one discrete task and issue from which it could not determine the amount of time that was allocated to each task).

Fee Application provided the names, positions, and hourly rates of the 38 Seyfarth professionals and paraprofessionals who billed to this matter, consisting of 15 partners, 3 senior counsel, 11 associates, 5 paralegals, 2 IT staff, 1 librarian, and 1 case assistant.  A summary of hours and fees billed by each timekeeper is displayed in **Exhibit C**.[5]

The firm billed a total of 452.60 hours with associated fees of \$198,671.80[6] for the hourly services.  The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Partner | 203.70 | 45% | \$115,107.70 | 58% |
| Senior Counsel | 9.90 | 2% | 4,659.75 | 2% |
| Associate | 179.70 | 40% | 65,929.90 | 33% |
| Paralegal | 36.70 | 8% | 9,315.45 | 5% |
| IT Staff | 12.90 | 3% | 2,670.30 | 1% |
| Case Assistant | 8.60 | 2% | 812.70 | * |
| Librarian | 1.10 | * | 176.00 | * |
| **TOTAL** | 452.60 | 100% | \$198,671.80 | 100% |

* Less than 1%

The blended hourly rate[7] for the Seyfarth professionals is \$472.15 and the blended hourly rate for professionals and paraprofessionals is \$438.96.

16.   **Hourly Rate Increases.**   Seyfarth increased the hourly rates of timekeepers during this interim period, effective January 1, 2012.

17.   **Timekeepers' Roles.**   A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4)*.  With this directive in mind, the Fee

[5] This Final Report includes exhibits that detail and support the findings discussed herein.  Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit.  The tasks included in a specific category are underlined in the fee exhibits.  For purpose of context, other tasks within the same time entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

[6] This amount reflects the Fees Computed (after adjustment for discount).

[7] The blended hourly rates were calculated using the hourly rates adjusted to reflect the 10% discount.

Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts.    Although many Seyfarth timekeepers appeared to perform either core team responsibilities necessary to the engagement, or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals, there are those whose functions appear to be arguably duplicative and unnecessary.  During this interim period, Seyfarth staffed this matter with a total of 38 professionals and paraprofessionals.  Seventeen of these 38 timekeepers (or 45%) were firm professionals, who each billed less than a total of 10.00 hours during this interim period. Further, six of these 17 professional timekeepers did not bill to the bankruptcy estate in any prior billing period.  The billing entries of those 17 timekeepers were for multiple attendances at conferences or activities such as legal research and reviewing discovery responses to discovery requests.  These questioned entries, totaling 39.80 hours with $18,261.90 in associated fees, were displayed in **Exhibit D** to the Preliminary Report.  The Fee Examiner invited comment from the firm.

In response, Seyfarth stated that some of the timekeepers were already assigned to the case but simply had less of a role during this interim period, while others were asked to perform discrete tasks based upon their extensive experience and knowledge in a particular area of law. The additional information from the firm also provided more depth into the timekeepers' roles, as well as more information regarding the tasks in question. After considering the additional information provided by the firm, the Fee Examiner does not make a recommendation for a fee reduction. Exhibit D is omitted from this report.

18.    **Meetings, Conferences, Hearings, and Other Events.**  The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant,

-9-

the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*. While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions where two or more Seyfarth timekeepers attended the same meeting, conference, hearing, or other event. Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. The entries, totaling 12.80 hours with $5,680.80 in associated fees, were displayed in **Exhibit E** to the Preliminary Report. In each instance where multiple timekeepers attended a meeting, conference, hearing, or other event, the Fee Examiner identified the timekeeper who appeared most responsible for the matter or the particular event (*i.e.*, the attorney leading rather than observing a conference). The potentially duplicative and unnecessary timekeepers' entries totaled 5.60 hours with $2,193.75 in associated fees, and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested that the firm provide what the Local Rules and UST Guidelines mandate -- an explanation of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

In response to the Preliminary Report, Seyfarth provided the requested detail for each of the fee entries in question, which brought them into compliance with Local Rules and UST Guidelines. The Fee Examiner makes no recommendation for a fee reduction. Exhibit E is omitted from this Report.

19.    **Intraoffice Conferences.**    Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified billing activities by Seyfarth timekeepers describing intraoffice conferences totaling 21.10 hours with $9,179.00 in associated fees, or approximately 5% of the total Fees Computed, as were displayed in **Exhibit F** to the Preliminary Report.   The Fee Examiner observed that in certain instances, two or more timekeepers invoiced fees associated with the same intraoffice conference. The entries describing intraoffice conferences invoiced by two or more firm personnel totaled 14.40 hours with $6,170.60 in associated fees and were highlighted in bold and marked with an ampersand [&] in the exhibit.   The Fee Examiner requested that Seyfarth strive to eliminate unnecessary intraoffice conferencing, and further requested the firm provide an explanation for the necessity of more than one participant billing for the same intraoffice conference. In response to the Preliminary Report, Seyfarth provided the requested detail for each of the questioned entries. After reviewing Seyfarth's detailed response regarding each questioned entry, the Fee Examiner makes no recommendation for a fee reduction. Exhibit F is omitted from this Report.

20.    **Complete and Detailed Task Descriptions.**    Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi,*

-11-

*and ix)*.  The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.  Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*.

    a.  **Vague Communications.**  The Fee Examiner identified entries totaling 5.40 hours with \$2,628.50 in associated fees in which the task description for a conference or other communication did not identify the participants to or the subject matter of the communication.    This lack of detail hinders the Fee Examiner's ability to determine the reasonableness and necessity of the activity and is in clear violation of the applicable guidelines. The questioned entries were displayed in **Exhibit G** to the Preliminary Report.    The Fee Examiner invited comment from Seyfarth and requested that, in the future, the firm disclose all participants to a conference or other communication and also provide the subject matter of the communication.  Seyfarth responded by providing the missing participant and/or subject matter for each of the questioned entries.    As the entries are now compliant, no fee reduction is warranted. Exhibit G has been omitted from this Report.

    b.  **Vague Tasks.**  The Fee Examiner reviewed the substantive detail of each billing entry and identified 6.80 hours with \$4,141.35 in associated fees where the Fee Examiner could not determine the precise nature of the services performed by the timekeeper.  The entries were displayed in **Exhibit H** to the Preliminary Report. As reflected in the Local Rules and UST Guidelines, billing entries must adequately describe the services actually performed to allow a determination of whether the task was staffed appropriately, whether the task involved the exercise of legal judgment, and/or whether the task was duplicated by other timekeepers.[8]  The

---

[8] Vague entries do not allow the court to determine the reasonableness and necessity of the effort expended, and fees may be denied or reduced when insufficiently documented.  *E.g., In re Bennett Funding, Inc.*, 213 B.R. 234, 245-46

Fee Examiner invited comment from the firm. In response, Seyfarth supplemented each of the questioned tasks with the missing information, which brought the entries into compliance with the Local Rule and UST Guidelines. The Fee Examiner makes no recommendation for a fee reduction, and Exhibit H is omitted from this Report.

21.    **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. The Fee Examiner identified 7.80 hours with $2,714.80 in associated fees describing what appeared to be administrative functions. The entries were displayed in **Exhibit I** to the Preliminary Report. The Fee Examiner invited comment from the firm. The firm provided additional information for the questioned activities, which clarified the entries and removed them from the administrative classification. The Fee Examiner does not make a recommendation for a fee reduction, and has omitted Exhibit I from this Report.

22.    **Clerical Activities.** Clerical activities are tasks that do not require legal acumen and may be effectively performed by administrative assistants, secretaries, or support personnel[9] or support tasks for which the firm charged greater than market rate. The Fee Examiner reviewed each timekeeper's billing activities and identified entries that describe clerical tasks. The questioned entries were displayed in **Exhibit J** to the Preliminary Report and totaled 5.10 hours with $1,055.70 in associated fees. The Fee Examiner invited comment from the firm. The firm provided additional information for the questioned entries, which explained the legal

---

(Bankr. N.D.N.Y. 1997). Entries for legal research must identify the issue and explain the research need. *In re Fibermark, Inc.*, 349 B.R. 385, 397 (Bankr. D. Vt. 2006).

[9] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates). These overhead activities may include: mailing; photocopying; word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

acumen and skill required for each particular activity. As such no fee reduction is recommended, and the Fee Examiner omits Exhibit J from this Report.

23.    **Travel.**  The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii)*.  Seyfarth did not bill for nonworking travel.

24.    **Seyfarth Retention/Compensation.**  Seyfarth billed 29.40 hours with associated fees of $6,623.55 to prepare the firm's retention documents and applications for compensation, or approximately 3% of the Fees Computed.    The fee entries describing Seyfarth's retention/compensation activities are displayed in **Exhibit K**, which is included in the Final Report for the Court's reference.

**Review of Expenses**

25.    **Itemization of Expenses.**  The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii)*.    The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense.    Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii)*.  Seyfarth provided an itemization for its expenses

that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.

26.    **Photocopies.**  The Local Rules provide that copying charges shall not exceed $0.10 per page. *Local Rule 2016-2(e)(iii)*.  Seyfarth stated in the Application that the firm's rate for copying charges is $0.10 per page.

27.    **Facsimile.**  The Local Rules provide that outgoing facsimile transmission charges shall not exceed $1.00 per page. *Local Rule 2016-2(e)(iii)*.  Seyfarth stated in the Application that the firm's rate for facsimile charges is $1.00 per page for outgoing facsimiles.

28.    **Computer-Assisted Legal Research.**    The Local Rules provide that computer-assisted legal research charges "shall not be more than the actual cost." *Local Rule 2016-2 (e)(iii)*.  Seyfarth requested reimbursement for computer-assisted legal research charges, and the firm's interim application stated that "[c]omputer research is charged on a time, item and/or search-type basis which takes advantage of certain discounts that Seyfarth is able to negotiate with its service providers due to the Firm's size and volume of usage.  The Firm's charges for computerized legal research such as Westlaw or Lexis are based on a rate that recovers no more than the Firm's actual costs."

29.    **Local Travel.**  Seyfarth requested reimbursement for charges classified as "local travel" totaling $139.41.    The Fee Examiner requested that Seyfarth provide additional information with regard to these charges, which were displayed in **Exhibit L** to the Preliminary Report, including an explanation as to the necessity and purpose of each charge.  Seyfarth provided the information and documentation requested, which verified the expenses were necessary and proper.  No expense reduction is appropriate, and Exhibit J has been omitted from the Final Report.

## CONCLUSION

The Fee Examiner submits this final report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $200,171.80 ($200,527.30 minus $355.50) and reimbursement of expenses in the amount of $5,415.87 for the period from December 1, 2011 through February 29, 2012. The findings are set forth in the summary on the following page.

**SEYFARTH SHAW LLP**

**SUMMARY OF FINDINGS**

**Tenth Quarterly Fee Application (December 1, 2011 through February 29, 2012)**

**A.    Amounts Requested and Computed**

| | | |
|---|---|---|
| Fees Requested: | | |
| Fixed Fee Services | $  1,500.00 | |
| Hourly Services | 199,027.30 | |
| Expenses Requested | 5,415.87 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $205,943.17 |
| | | |
| Fixed Fee Services | $  1,500.00 | |
| Hourly Fees Computed | 198,671.80 | |
| Expenses Computed | 5,415.87 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $205,587.67 |
| | | |
| Discrepancy in Fees | $    355.50 | |
| | | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | $    355.50 |

**B.    Recommended Fee Allowance and Expense Reimbursement**

| | | |
|---|---|---|
| Fees Requested (Fixed Fee Services) | $  1,500.00 | |
| Fees Requested (Hourly Services) | 199,027.30 | |
| *Agreed Reduction for Discrepancy in Fees* | | *($355.50)* |
| Subtotal | | *($355.50)* |
| | | |
| RECOMMENDED FEE ALLOWANCE | | $200,171.80 |
| | | |
| Expenses Requested | $5,415.87 | |
| | | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | 5,415.87 |
| | | |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | $205,587.67 |

Respectfully submitted,

**STUART MAUE**

By: _____

John F. Theil, Esq.
3840 McKelvey Road
St. Louis, Missouri  63044
Telephone:   (314) 291-3030
Facsimile:    (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 31st day of December, 2012.

David Buchbinder, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
R. Craig Martin, Esq.
DLA Piper LLP (US)
919 North Market Street, Suite 1500
Wilmington, DE 19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE 19899-0511
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Douglas E. Deutsch, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE 19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Jeremy P. Sherman, Esq.
Partner
Seyfarth Shaw LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603-5577

John F. Theil, Esq.

# SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL

## COMPUTED AT STANDARD RATES

### Seyfarth Shaw LLP

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| ECER | Cerasia II, Edward | PARTNER | $657.00 | $688.50 | 38.10 | $26,137.35 |
| KEMI | Michaels, Kristin | PARTNER | $522.00 | $544.50 | 46.20 | $25,092.90 |
| JPSH | Sherman, Jeremy | PARTNER | $625.50 | $652.50 | 25.10 | $15,924.15 |
| AGRE | Greetis, Adam | PARTNER | $459.00 | $459.00 | 26.80 | $12,301.20 |
| THAL | Haley, Timothy | PARTNER | $585.00 | $603.00 | 19.40 | $11,518.20 |
| LOHA | O'Hara, Lorraine | PARTNER | $455.00 | $455.00 | 24.20 | $11,011.00 |
| JCOL | Collins, John | PARTNER | $513.00 | $522.00 | 12.10 | $6,307.20 |
| PMIL | Miller, Peter | PARTNER | $576.00 | $576.00 | 5.30 | $3,052.80 |
| KSUL | Sulzer, Kenneth | PARTNER | $634.50 | $634.50 | 3.20 | $2,030.40 |
| COLS | Olson, Camille | PARTNER | $621.00 | $648.00 | 0.80 | $504.90 |
| TLHI | Hix, Timothy | PARTNER | $468.00 | $468.00 | 1.00 | $468.00 |
| JDME | Meer, Jon | PARTNER | $531.00 | $531.00 | 0.70 | $371.70 |
| RKRA | Kramer, Ronald | PARTNER | $486.00 | $486.00 | 0.30 | $145.80 |
| PDEV | Devata, Pamela | PARTNER | $450.00 | $450.00 | 0.30 | $135.00 |
| GPAU | Pauling II, Gerald | PARTNER | $535.50 | $535.50 | 0.20 | $107.10 |
| | No. of Billers for Position: 15 | Blended Rate for Position: | $565.08 | | 203.70 | $115,107.70 |
| | | | | % of Total: | 45.01% | % of Total: 57.94% |
| DHOW | Howells, Dana | SENIOR COUNSEL | $508.50 | $508.50 | 3.80 | $1,932.30 |
| FISS | Issa, Fazilla | SENIOR COUNSEL | $396.00 | $396.00 | 4.00 | $1,584.00 |
| JLIC | Lichter, Jason | SENIOR COUNSEL | $544.50 | $544.50 | 2.10 | $1,143.45 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $470.68 | | 9.90 | $4,659.75 |
| | | | | % of Total: | 2.19% | % of Total: 2.35% |
| AIAN | Ianni, Allison | ASSOCIATE | $319.50 | $355.50 | 79.00 | $27,810.90 |
| JCHY | Chylinksi, Jeremi | ASSOCIATE | $369.00 | $369.00 | 28.70 | $10,590.30 |
| JBRO | Brodsky, Julia | ASSOCIATE | $455.00 | $455.00 | 19.70 | $8,963.50 |
| NBRI | Riesco, Natascha | ASSOCIATE | $351.00 | $360.00 | 23.70 | $8,329.50 |
| ACAB | Cabrera, Anjanette | ASSOCIATE | $396.00 | $418.50 | 9.70 | $3,967.20 |
| ZROB | Robert, Zachariah | ASSOCIATE | $328.50 | $328.50 | 10.50 | $3,449.25 |
| AWAR | Warshaw, Aaron | ASSOCIATE | $319.50 | $355.50 | 2.90 | $1,016.55 |

### SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL
### COMPUTED AT STANDARD RATES
### Seyfarth Shaw LLP

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| MSAN | Sank, Max | ASSOCIATE | $369.00 | $369.00 | 2.20 | $811.80 |
| ILAZ | Lazar, Isabel | ASSOCIATE | $274.50 | $274.50 | 2.20 | $603.90 |
| ABAN | Banas, Andrew | ASSOCIATE | $360.00 | $360.00 | 0.60 | $216.00 |
| JDOW | Downing, John | ASSOCIATE | $342.00 | $342.00 | 0.50 | $171.00 |
| | No. of Billers for Position: 11 | Blended Rate for Position: | $366.89 | | 179.70 | $65,929.90 |
| | | | | | % of Total: 39.70% | % of Total: 33.19% |
| JMCM | McManus, Jennifer | PARALEGAL | $247.50 | $261.00 | 19.50 | $5,057.10 |
| OGOL | Golinder, Olia | PARALEGAL | $270.00 | $270.00 | 10.90 | $2,943.00 |
| ABAL | Balint, Alayna | PARALEGAL | $216.00 | $216.00 | 3.80 | $820.80 |
| MITR | Truong, Mia | PARALEGAL | $193.50 | $193.50 | 1.30 | $251.55 |
| ACAS | Castillo, Arthur | PARALEGAL | $202.50 | $202.50 | 1.20 | $243.00 |
| | No. of Billers for Position: 5 | Blended Rate for Position: | $253.83 | | 36.70 | $9,315.45 |
| | | | | | % of Total: 8.11% | % of Total: 4.69% |
| RSCH | Schley, Rebecca | IT STAFF | $207.00 | $207.00 | 9.20 | $1,904.40 |
| MKEE | Keeton, Mark | IT STAFF | $207.00 | $207.00 | 3.70 | $765.90 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $207.00 | | 12.90 | $2,670.30 |
| | | | | | % of Total: 2.85% | % of Total: 1.34% |
| ASHE | Shepro, Alice | CASE ASSISTANT | $94.50 | $94.50 | 8.60 | $812.70 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $94.50 | | 8.60 | $812.70 |
| | | | | | % of Total: 1.90% | % of Total: 0.41% |
| KARG | Argudo, Kathy | LIBRARIAN | $160.00 | $160.00 | 1.10 | $176.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $160.00 | | 1.10 | $176.00 |
| | | | | | % of Total: 0.24% | % of Total: 0.09% |

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**Seyfarth Shaw LLP**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| | Total No. of Billers:  38 | Blended Rate for Report: | $438.96 | | 452.60 | $198,671.80 |

EXHIBIT K

SEYFARTH RETENTION/COMPENSATION

Seyfarth Shaw LLP

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Banas, A | 0.60 | 216.00 |
| McManus, J | 19.30 | 5,007.60 |
| Shepro, A | 8.60 | 812.70 |
| Sherman, J | 0.90 | 587.25 |
| | 29.40 | $6,623.55 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Tribune - Bankruptcy Fee Application | 29.40 | 6,623.55 |
| | 29.40 | $6,623.55 |

EXHIBIT K

SEYFARTH RETENTION/COMPENSATION

Seyfarth Shaw LLP

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|
| 12/11/11 Mon | McManus, J 1941704/26 | 1.30 | 1.30 | 321.75 | 0.10 0.10 1.10 | F F F | 1 2 3 | *MATTER NAME: Tribune - Bankruptcy Fee Application* REVIEW COURT'S AGENDA REGARDING FEE APPLICATIONS HEARING (.10); PREPARE FOR HEARING (.10); PREPARE TWENTY-FIFTH MONTHLY FEE APPLICATION (1.10). |
| 12/21/11 Wed | McManus, J 1941704/27 | 0.90 | 0.90 | 222.75 | 0.20 0.70 | F F | 1 2 | *MATTER NAME: Tribune - Bankruptcy Fee Application* ATTEND TO FEE PAYMENT MATTERS (.20); REVISE TWENTY-FIFTH MONTHLY FEE APPLICATION (.70). |
| 01/03/12 Tue | McManus, J 1952237/1 | 0.60 | 0.60 | 156.60 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application* PREPARE SEYFARTH'S TWENTY-FIFTH MONTHLY FEE APPLICATION. |
| 01/06/12 Fri | McManus, J 1952237/2 | 0.50 | 0.50 | 130.50 | 0.40 0.10 | F F | 1 2 | *MATTER NAME: Tribune - Bankruptcy Fee Application* REVISE TWENTY-FIFTH SEYFARTH FEE APPLICATION (.40); CONFERENCE WITH A. SHEPRO REGARDING SAME (.10). |
| 01/08/12 Sun | McManus, J 1952237/3 | 2.00 | 2.00 | 522.00 | 0.40 0.90 0.70 | F F F | 1 2 3 | *MATTER NAME: Tribune - Bankruptcy Fee Application* REVISE TWENTY-FIFTH FEE APPLICATION (.40); PREPARE TWENTY-SIXTH FEE APPLICATION (.90); REVISE RESPONSE TO FEE EXAMINER'S REPORT REGARDING SEYFARTH'S INTERIM FEES (.70). |
| 01/08/12 Sun | Shepro, A 1952237/4 | 2.00 | 2.00 | 189.00 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application* COMPILE ATTORNEY, MATTER AND COMPENSATION CHARTS FOR TWENTY-SIXTH MONTHLY FEE APPLICATION. |
| 01/09/12 Mon | McManus, J 1952237/6 | 4.30 | 4.30 | 1,122.30 | 0.40 0.10 0.40 1.20 0.50 1.70 | F F F F F F | 1 2 3 4 5 6 | *MATTER NAME: Tribune - Bankruptcy Fee Application* ASSEMBLE TWENTY-FIFTH MONTHLY FEE APPLICATION FOR FILING (.40); CONFERENCE WITH J. SHERMAN REGARDING SAME (.10); REVISE EXHIBIT A TO SAME (.40); REVISE TWENTY-SIXTH MONTHLY FEE APPLICATION (1.20); REVISE EXHIBIT A TO SAME (.50); DRAFT NINTH QUARTERLY FEE APPLICATION (1.70). |
| 01/09/12 Mon | Shepro, A 1952237/7 | 1.30 | 1.30 | 122.85 | 1.30 | F | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application* EDIT PLEADING OF TWENTY-SIXTH MONTHLY FEE APPLICATION (1.30). |
| 01/09/12 Mon | Sherman, J 1952237/5 | 0.30 | 0.30 | 195.75 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application* REVIEW TWENTY-FIFTH MONTHLY FEE APPLICATION. |
| 01/10/12 Tue | McManus, J 1952237/9 | 1.60 | 1.60 | 417.60 | 0.20 0.10 1.30 | F F F | 1 2 3 | *MATTER NAME: Tribune - Bankruptcy Fee Application* ASSEMBLE TWENTY-SIXTH MONTHLY FEE APPLICATION FOR FILING (.20); SUBMIT SAME TO LOCAL COUNSEL (.10); REVISE NINTH QUARTERLY FEE APPLICATION (1.30). |
| 01/10/12 Tue | Shepro, A 1952237/10 | 3.20 | 3.20 | 302.40 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application* COMPILE CHARTS FOR NINTH QUARTERLY FEE APPLICATION. |

~  See the last page of exhibit for explanation

EXHIBIT K

SEYFARTH RETENTION/COMPENSATION

Seyfarth Shaw LLP

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | | DESCRIPTION |
|------|-----------------|-------------|-------|------|------------|---|---|-------------|
| 01/10/12 Tue | Sherman, J 1952237/8 | 0.30 | 0.30 | 195.75 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>REVIEW TWENTY-SIXTH MONTHLY FEE APPLICATION. |
| 01/11/12 Wed | McManus, J 1952237/11 | 0.60 | 0.60 | 156.60 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>PREPARE NINTH QUARTERLY FEE APPLICATION. |
| 01/11/12 Wed | Shepro, A 1952237/12 | 1.90 | 1.90 | 179.55 | 1.70<br>0.20 | F<br>F | 1<br>2 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>CONTINUE WITH COMPILATION OF CHARTS FOR NINTH QUARTERLY FEE APPLICATION (1.70);<br>REVIEW DELAWARE BANKRUPTCY DOCKET FOR PREVIOUSLY APPROVED QUARTERLY FEE APPLICATION (.20). |
| 01/12/12 Thu | McManus, J 1952237/14 | 1.00 | 1.00 | 261.00 | 0.80<br>0.20 | F<br>F | 1<br>2 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>REVISE/FINALIZE SEYFARTH'S NINTH QUARTERLY FEE APPLICATION (.80);<br>COMMUNICATIONS WITH LOCAL COUNSEL REGARDING FILING SAME (.20). |
| 01/12/12 Thu | Shepro, A 1952237/15 | 0.20 | 0.20 | 18.90 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>COMPILE NINTH QUARTERLY FEE APPLICATION. |
| 01/12/12 Thu | Sherman, J 1952237/13 | 0.30 | 0.30 | 195.75 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>REVIEW NINTH QUARTERLY FEE APPLICATION. |
| 01/18/12 Wed | McManus, J 1952237/16 | 0.50 | 0.50 | 130.50 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>REVIEW/REDACT TIME DETAIL FOR SEYFARTH'S TWENTY-SEVENTH MONTHLY FEE APPLICATION. |
| 01/29/12 Sun | McManus, J 1952237/17 | 0.50 | 0.50 | 130.50 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>REVIEW/EDIT DETAIL AS PART OF EXHIBIT A TO SEYFARTH'S TWENTY-SEVENTH MONTHLY FEE APPLICATION. |
| 01/31/12 Tue | McManus, J 1952237/18 | 0.50 | 0.50 | 130.50 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>DRAFT PLEADING PORTION OF SEYFARTH'S TWENTY-SEVENTH MONTHLY FEE APPLICATION. |
| 02/01/12 Wed | McManus, J 1964047/28 | 0.80 | 0.80 | 208.80 | 0.10<br>0.70 | F<br>F | 1<br>2 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>CONFER WITH J. THIEL REGARDING RESPONSE TO REPORT OF SIXTH INTERIM FEE APPLICATION (.10);<br>PREPARE SEYFARTH'S TWENTY-SEVENTH MONTHLY FEE APPLICATION (.70). |
| 02/09/12 Thu | McManus, J 1964047/29 | 0.60 | 0.60 | 156.60 | 0.10<br>0.10<br>0.40 | F<br>F<br>F | 1<br>2<br>3 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>REVIEW OMNIBUS FEE ORDER FOR HEARING ON FOURTH INTERIM FEES (.10);<br>RESPOND TO LOCAL COUNSEL REGARDING SAME (.10);<br>REVIEW/REVISE RESPONSE TO FEE EXAMINER REPORT REGARDING FIFTH INTERIM FEES (.40). |
| 02/13/12 Mon | Banas, A 1964047/30 | 0.10 | 0.10 | 36.00 | | | 1 | *MATTER NAME: Tribune - Bankruptcy Fee Application*<br>WORK WITH PARALEGAL J. MCMANUS TO PREPARE FOR APPEARANCE AT OMNIBUS FEE APPLICATION HEARING ON FEBRUARY 15, 2012. |

~  See the last page of exhibit for explanation

EXHIBIT K

SEYFARTH RETENTION/COMPENSATION

Seyfarth Shaw LLP

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | | DESCRIPTION |
|------|-----------------|-------------|-------|------|------------|---|---|-------------|
| | | | | | | | | *MATTER NAME: Tribune - Bankruptcy Fee Application* |
| 02/13/12 | McManus, J | 0.30 | 0.30 | 78.30 | 0.10 | F | 1 | REVIEW HEARING AGENDA REGARDING SEYFARTH'S FOURTH INTERIM FEE APPLICATION (.10); |
| Mon | 1964047/31 | | | | 0.20 | F | 2 | REVIEW/REDACT TIME DETAIL FOR TWENTY-EIGHTH MONTHLY FEE APPLICATION (.20). |
| | | | | | | | | *MATTER NAME: Tribune - Bankruptcy Fee Application* |
| 02/14/12 | McManus, J | 1.10 | 1.10 | 287.10 | 0.20 | F | 1 | PREPARE FOR FEBRUARY 15, 2012 MEETING REGARDING SEYFARTH'S FOURTH INTERIM FEE APPLICATION (.20); |
| Tue | 1964047/32 | | | | 0.10 | F | 2 | CONFERENCE WITH A. BANAS REGARDING SAME (.10); |
| | | | | | 0.80 | F | 3 | PREPARE TWENTY-EIGHTH MONTHLY FEE APPLICATION (.80). |
| | | | | | | | | *MATTER NAME: Tribune - Bankruptcy Fee Application* |
| 02/15/12 | Banas, A | 0.50 | 0.50 | 180.00 | | | 1 | PREPARE FOR AND APPEAR AT FEBRUARY 15 OMNIBUS HEARING REGARDING PROFESSIONAL FEE APPLICATIONS VIA COURTCALL. |
| Wed | 1964047/33 | | | | | | | |
| | | | | | | | | *MATTER NAME: Tribune - Bankruptcy Fee Application* |
| 02/23/12 | McManus, J | 0.60 | 0.60 | 156.60 | 0.10 | F | 1 | ATTEND TO FEE PAYMENT MATTERS (.10); |
| Thu | 1964047/34 | | | | 0.50 | F | 2 | DRAFT SEYFARTH'S TWENTY-EIGHTH MONTHLY FEE APPLICATION (.50). |
| | | | | | | | | *MATTER NAME: Tribune - Bankruptcy Fee Application* |
| 02/27/12 | McManus, J | 0.60 | 0.60 | 156.60 | | | 1 | PREPARE TWENTY-EIGHTH MONTHLY FEE APPLICATION. |
| Mon | 1964047/35 | | | | | | | |
| | | | | | | | | *MATTER NAME: Tribune - Bankruptcy Fee Application* |
| 02/29/12 | McManus, J | 1.00 | 1.00 | 261.00 | 0.50 | F | 1 | FINALIZE TWENTY-SEVENTH MONTHLY FEE APPLICATION (.50); |
| Wed | 1964047/36 | | | | 0.50 | F | 2 | PREPARE TWENTY-EIGHTH MONTHLY FEE APPLICATION (.50). |
| | | | 29.40 | $6,623.55 | | | | |
| Total | | | | | | | | |
| Number of Entries: | 29 | | | | | | | |

~ See the last page of exhibit for explanation

EXHIBIT K

SEYFARTH RETENTION/COMPENSATION

Seyfarth Shaw LLP

## SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Banas, A | 0.60 | 216.00 |
| McManus, J | 19.30 | 5,007.60 |
| Shepro, A | 8.60 | 812.70 |
| Sherman, J | 0.90 | 587.25 |
| | 29.40 | $6,623.55 |

## SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Tribune - Bankruptcy Fee Application | 29.40 | 6,623.55 |
| | 29.40 | $6,623.55 |

(-) REASONS FOR TASK HOUR ASSIGNMENTS

F        FINAL BILL