## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re:

TRIBUNE COMPANY, et al.,[1]

Debtors.

Chapter 11

Case No. 08-13141 (KJC)

Jointly Administered

## FEE EXAMINER'S FINAL REPORT REGARDING
## THE FOURTEENTH INTERIM FEE APPLICATION OF
## PRICEWATERHOUSECOOPERS LLP

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order*

*Appointing Fee Examiner and Establishing Related Procedures for Compensation and*

*Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket

No. 546] (the "**Fee Examiner Order**") in connection with the *Fourteenth Interim Fee*

*Application of PricewaterhouseCoopers LLP* [Docket No. 12011] (the "**Fee Application**"). The

Fee Application seeks approval of fees that total $163,694.40 ($135,000.00 in fixed fee services

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

and $28,694.40 in hourly services) and reimbursement of expenses that total $3,294.00 for the period from March 1, 2012 through May 31, 2012. PricewaterhouseCoopers LLP ("**PwC**") serves as compensation and tax advisors and independent auditors to the Debtors and Debtors-in-Possession, as well as a provider of advisory services in connection with the application of fresh start accounting services and certain consulting services (i.e. "Records Management Services" and "BLM Services").

## **Background**

1.    On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Under this Court's *Order Directing Joint Administration Chapter 11 Cases* dated December 10, 2009 [Docket No. 43], these cases are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

2.    On December 26, 2008, the Debtors filed the *Application for an Order Authorizing Debtors to Retain and Employ PricewaterhouseCoopers LLP as Compensation and Tax Advisors and Independent Auditors to the Debtors Pursuant to 11 U.S.C. Sections 327(a) and 1107, Nunc Pro Tunc to the Petition Date* [Docket No. 143] (the "**Retention Application**"). On March 3, 2009, this Court approved the retention of PwC as compensation and tax advisors and independent auditors to the Debtors by entering the *Order Authorizing Debtors to Retain and Employ PricewaterhouseCoopers LLP as Compensation and Tax Advisors and Independent Auditors to the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 470] (the "**Retention Order**").

3.    On April 30, 2010, the Debtors filed the *Supplemental Application for an Order Modifying the Scope of the Retention of PricewaterhouseCoopers LLP to Include Certain Advisory Services in Connection with the Application of Fresh Start Accounting Services*

*Pursuant to 11 U.S.C. §§ 327(a) and 1107 Nunc Pro Tunc to February 8, 2010* [Docket No. 4216] (the "**Supplemental Application**"). On May 14, 2010, this Court modified the retention of PwC by entering the *Order Modifying the Scope of the Retention of PricewaterhouseCoopers LLP to Include Certain Advisory Services in Connection with the Application of Fresh Start Accounting Pursuant to 11 U.S.C. §§ 327(a) and 1107, Nunc Pro Tunc to February 8, 2010* [Docket No. 4414] (the "**Supplemental Retention Order**").

4.　　On January 11, 2011, PwC filed the Certification of William T. England in Support of Interim Fee Applications of PricewaterhouseCoopers LLP for Compensation for Services Rendered and Reimbursement of Expenses as Compensation and Tax Advisors and Independent Auditors to the Debtors and Debtors in Possession [Docket No. 7469] (the "**Fee Application Certification**") in response to the Court's request for clarification regarding PwC's fixed fee billing arrangements.

5.　　On November 4, 2011, the Debtors filed the *Second Supplemental Application for an Order Modifying the Scope of the Retention of PricewaterhouseCoopers LLP to Include Certain Advisory Services in Connection with Records Management, Payroll Processing, and Operations Management Pursuant to 11 U.S.C. §§ 327(a) and 1107 Nunc Pro Tunc to November 1, 2011* [Docket No. 10158] (the "**Second Supplemental Application**"). On November 18, 2011, this Court modified the retention of PwC by entering the *Order Modifying the Scope of the Retention of PricewaterhouseCoopers LLP to Include Certain Advisory Services in Connection with Records Management, Payroll Processing, and Operations Management Pursuant to 11 U.S.C. §§ 327(a) and 1107 Nunc Pro Tunc to November 1, 2011* [Docket No. 10259] (the "**Second Supplemental Retention Order**"). The order modified the scope of the retention of PwC to include certain consulting services related to (1) the review and revision of Tribune's records and information management policy (the "Records Management Services");

-3-

and (2) the review and revision of Blue Lynx Media, LLC's payroll processing and operations management (the "BLM Services").

6.     PwC submitted the Fee Application pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, (January 15, 2009) [Docket No. 225] (the "**Interim Compensation Order**").

## Applicable Standards

7.     In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

8.     The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

9.     Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11   U.S.C.*

-4-

*§ 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

10.     A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules. Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application. A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

11.     The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Supplemental Application, the Supplemental Retention Order, the Interim Compensation Order, the Fee Application Certification, and all related filings. The Fee Examiner reviewed the Application and did not question any of the fees or expenses. So, upon agreement with the firm, no preliminary report was issued to PwC. The Fee Examiner now issues this final report (the "**Final Report**") "in a format designed to opine

whether the requested fees of the Case Professional meet the applicable standards of section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines." *Fee Examiner Order ¶5.*

## DISCUSSION OF FINDINGS

### Fixed Fee Services

12.     The Fee Application requested a total of $135,000.00 for fixed fee services for the 2011 Consolidated Audit and provided a summary displaying the professionals, their positions, and the associated hours, totaling 2,210.00. Concerning fixed-fee engagements, the Retention Order requires only that PwC submit time records in a summary format. As the firm met this minimal requirement, the Fee Examiner makes no findings regarding the propriety of the fixed fee services. However, the Fee Examiner notes that the Court expressed concern over PwC's flat fee arrangement as addressed in the Fee Examiner's report for the firm's second fee application. If the Court requests additional detail and/or information from PwC upon instruction, the Fee Examiner will review such material and supplement this report.

### Hourly Services

### Technical Requirements

13.     **Reconciliation of Fees and Expenses.** The Fee Examiner compared the total amount of hourly fees ($28,694.40) and expenses ($3,294.00) requested in the Fee Application ("**Fees Requested**" and "**Expenses Requested**") to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**" and "**Expenses Computed**"). The Fee Examiner identified no discrepancies between the Fees Requested and the Fees Computed, nor any discrepancies between the Expenses Requested and the Expenses Computed.

14.     **Block Billing.**[2]   The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*. The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[3]  The Fee Examiner did not identify any block billed entries.

15.     **Time Increments.**  The PwC Retention Order indicates that "for hourly rate engagements, PwC may submit time records in ½-hour increments" effectively waiving the Local Rules and UST Guidelines requiring professionals to bill in tenths of an hour. *Retention Order* at 4.

## Review of Hourly Fees

16.     **Firm Staffing.**  The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines* ¶(b)(1)(iii). The Fee Application provided the names, positions, and hourly rates of the 13 PwC timekeepers who

---

[2] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

[3] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

billed to this matter, consisting of 2 partners, 7 directors, 1 senior manager, and 3 managers. A summary of hours and fees billed by each timekeeper is displayed in **Exhibit A**.[4]

The firm invoiced a total of 65.20 hours with associated fees of $28,694.40 for the hourly services. The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Partner | 5.80 | 9% | $ 4,054.40 | 14% |
| Director | 28.40 | 43% | 13,075.00 | 45% |
| Senior Manager | 1.00 | 2% | 475.00 | 2% |
| Manager | 30.00 | 46% | 11,090.00 | 39% |
| **TOTAL** | 65.20 | 100% | $28,694.40 | 100% |

The blended hourly rate for the PwC professionals is $440.10.

17.    **Hourly Rate Increases.**    PwC did not increase the hourly rate of timekeepers during this interim period.

18.    **Timekeepers' Roles.**    A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4).* With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution, including a comparison to others' efforts. The activities of those timekeepers whose participation appears to be limited and sporadic become questionable if the value of their involvement and necessity of their contribution is unclear. PwC timekeepers appeared to perform either core team responsibilities necessary to the engagement, or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.

---

[4] This Final Report includes exhibits that detail and support the findings discussed herein. Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

19.     **Meetings, Conferences, Hearings, and Other Events.** The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v).* While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified a single instance of multiple attendance at a non-firm conference. Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. Due to the isolated multiple attendance and the minimal fees at issue, the Fee Examiner does not recommend a fee reduction. The Fee Examiner will continue to monitor nonfirm multiple attendance in future applications.

20.     **Intraoffice Conferences.** Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified billing activities by PwC timekeepers describing intraoffice conferences. However, because of the minimal amount invoiced, the Fee Examiner makes no recommendation for a fee reduction. The Fee Examiner will continue to monitor intraoffice multiple attendance in all future fee applications.

21.     **Complete and Detailed Task Descriptions.** Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each

activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*. The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*. PwC timekeepers sufficiently described the efforts performed.

22.     **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. The Fee Examiner did not identify any administrative activities.

23.     **Clerical Activities.** Typically, clerical activities are those tasks that do not require legal acumen and may effectively be performed by administrative assistants, secretaries, or support personnel, and like administrative activities are generally reflected in the hourly rates charged by a firm.   In the 3rd Circuit, however, clerical-type activities performed by professionals and/or paraprofessionals are subject to a reduced billing rate. The Fee Examiner did not identify any clerical-type activities.

24.     **Travel.** The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii)*. The Fee Examiner did not identify any billing entries describing travel by firm timekeepers.

25.     **PwC Retention/Compensation.** The firm invoiced 22.30 hours with associated fees of $9,115.00 to prepare the firm's documents regarding retention and/or compensation. As

stated in prior reports, the Fee Examiner is concerned about the fees incurred to prepare task descriptions and firm invoices, and will continue to monitor the hours and fees devoted to such efforts and may make a recommendation to the Court when reporting on PwC's final fee application. The fee entries for these activities are set forth in **Exhibit B**, which is included in the Final Report.

## Review of Expenses

26.     **Itemization of Expenses.**  The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the charge, if available." *Local Rule 2016-2(e)(i-ii)*.   The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense.  Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii)*.   PwC provided an itemization for the firm expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.  The Fee Examiner found no objectionable expense items.

## CONCLUSION

The Fee Examiner submits this final report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $163,694.40 ($135,000.00 in fixed fee services and $28,694.40 in hourly services) and reimbursement of expenses in the amount of $3,294.00 for the period from March 1, 2012 through May 31, 2012.

Respectfully submitted,

**STUART MAUE**

By: _____
    John F. Theil, Esq.
    3840 McKelvey Road
    St. Louis, Missouri  63044
    Telephone:  (314) 291-3030
    Facsimile:  (314) 291-6546
    tribunebkr@smmj.com

*Fee Examiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 4th day of January, 2013.

David Buchbinder, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
R. Craig Martin, Esq.
DLA Piper LLP (US)
919 North Market Street, Suite 1500
Wilmington, DE 19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE 19899-0511
(Counsel to Administrative Agent for Prepetition
Lenders, JP Morgan Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Douglas E. Deutsch, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE 19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Ms. Shonda M. Finseth
PricewaterhouseCoopers LLP
225 South Sixth Street, Suite 1400
Minneapolis, MN 55402

John F. Theil, Esq.

## SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL
## COMPUTED AT STANDARD RATES
### PricewaterhouseCoopers LLP

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| RCWH | Whitley, Robert C. | PARTNER | $700.00 | $700.00 | 5.00 | $3,500.00 |
| CLSM | Smith, Cody L. | PARTNER | $693.00 | $693.00 | 0.80 | $554.40 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $699.03 | | 5.80 | $4,054.40 |
| | | | % of Total: | 8.90% | % of Total: | 14.13% |
| DGOE | Goerlich, Daniel | DIRECTOR | $475.00 | $475.00 | 17.00 | $8,075.00 |
| TLAB | Abrahams, Timothy L. | DIRECTOR | $350.00 | $350.00 | 3.50 | $1,225.00 |
| SBDA | Danton, Stephen B. | DIRECTOR | $500.00 | $500.00 | 2.00 | $1,000.00 |
| JBEN | Benedetti, John | DIRECTOR | $475.00 | $475.00 | 2.00 | $950.00 |
| BJSM | Smith, Betsy J. | DIRECTOR | $475.00 | $475.00 | 1.60 | $760.00 |
| ACSM | Smith, Andrea Clark | DIRECTOR | $550.00 | $550.00 | 1.30 | $715.00 |
| JDSI | Sinor, Julie D. | DIRECTOR | $350.00 | $350.00 | 1.00 | $350.00 |
| | No. of Billers for Position: 7 | Blended Rate for Position: | $460.39 | | 28.40 | $13,075.00 |
| | | | % of Total: | 43.56% | % of Total: | 45.57% |
| PRRO | Rossi, Phillip Ryan | SR. MANAGER | $475.00 | $475.00 | 1.00 | $475.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $475.00 | | 1.00 | $475.00 |
| | | | % of Total: | 1.53% | % of Total: | 1.66% |
| SMFI | Finseth, Shonda M. | MANAGER | $400.00 | $400.00 | 21.00 | $8,400.00 |
| RMAY | Mayer, Rudolph | MANAGER | $295.00 | $295.00 | 5.50 | $1,622.50 |
| JASP | Spahn, Justin A. | MANAGER | $305.00 | $305.00 | 3.50 | $1,067.50 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $369.67 | | 30.00 | $11,090.00 |
| | | | % of Total: | 46.01% | % of Total: | 38.65% |
| | Total No. of Billers: 13 | Blended Rate for Report: | $440.10 | | 65.20 | $28,694.40 |

EXHIBIT B

PWC RETENTION/COMPENSATION

PricewaterhouseCoopers LLP

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Finseth, S | 21.00 | 8,400.00 |
| Smith, A | 1.30 | 715.00 |
| | 22.30 | $9,115.00 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Monthly, Interim and Final Fee Applications | 22.30 | 9,115.00 |
| | 22.30 | $9,115.00 |

EXHIBIT B
PWC RETENTION/COMPENSATION

PricewaterhouseCoopers LLP

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | DESCRIPTION |
|------|----------------|-------------|-------|------|-------------|
| 03/07/12 Wed | Finseth, S 201205-40/13 | 3.80 | 3.80 | 1,520.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0033: PREPARE THE FEBRUARY 2012 MONTHLY FEE APPLICATION. |
| 03/21/12 Wed | Finseth, S 201205-40/10 | 1.60 | 1.60 | 640.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0036: PERFORM A REVIEW OF THE FEBRUARY 2012 MONTHLY FEE APPLICATION NARRATIVE. |
| 03/21/12 Wed | Finseth, S 201205-40/11 | 1.00 | 1.00 | 400.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0035: PREPARE THE FEBRUARY 2012 MONTHLY FEE APPLICATION NARRATIVE TO DISTRIBUTE TO THE BANKRUPTCY COURT. |
| 03/21/12 Wed | Finseth, S 201205-40/12 | 4.40 | 4.40 | 1,760.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0034: PREPARE THE FEBRUARY 2012 MONTHLY FEE APPLICATION. |
| 03/22/12 Thu | Finseth, S 201205-40/9 | 0.30 | 0.30 | 120.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0037: PROCESS THE REVISIONS TO THE FEBRUARY 2012 MONTHLY FEE APPLICATION PROVIDED BY J. SPAHN (PWC) AND PROVIDE TO A. CLARK SMITH (PWC) FOR REVIEW. |
| 03/27/12 Tue | Finseth, S 201205-40/7 | 1.30 | 1.30 | 520.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0039: PREPARE RESPONSES TO THE NINTH INTERIM FEE APPLICATION REPORT. |
| 03/27/12 Tue | Finseth, S 201205-40/8 | 1.60 | 1.60 | 640.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0038: PROCESS THE CHANGES TO THE FEBRUARY 2012 MONTHLY FEE APPLICATION AND SEND TO J. SPAHN (PWC) FOR REVIEW. |
| 04/02/12 Mon | Finseth, S 201205-40/6 | 2.10 | 2.10 | 840.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0040: FINALIZE THE FEBRUARY 2012 MONTHLY FEE APPLICATION AND DISTRIBUTE TO COUNSEL. |
| 04/05/12 Thu | Finseth, S 201205-40/5 | 2.30 | 2.30 | 920.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0041: PREPARE THE THIRTEENTH INTERIM FEE APPLICATION. |
| 04/11/12 Wed | Smith, A 201205-40/4 | 1.30 | 1.30 | 715.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0042: REVIEW THE THIRTEENTH INTERIM FEE APPLICATION PRIOR TO DISTRIBUTION TO THE PARTNER FOR EXECUTION TO ENSURE COMPLIANCE WITH BANKRUPTCY GUIDELINES. |
| 04/13/12 Fri | Finseth, S 201205-40/3 | 0.90 | 0.90 | 360.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0043: REVISE THE THIRTEENTH INTERIM FEE APPLICATION AND DISTRIBUTE TO COUNSEL FOR FILING. |
| 05/01/12 Tue | Finseth, S 201205-40/2 | 0.50 | 0.50 | 200.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0044: MEETING WITH J. SPAHN (PWC) TO DISCUSS THE NEW ENGAGEMENT LETTERS. |
| 05/07/12 Mon | Finseth, S 201205-40/1 | 1.20 | 1.20 | 480.00 | MATTER NAME: Monthly, Interim and Final Fee Applications<br>1 0512H0045: REVIEW THE TENTH INTERIM FEE AUDITOR'S REPORT. |

EXHIBIT B
PWC RETENTION/COMPENSATION
PricewaterhouseCoopers LLP

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | DESCRIPTION |
|------|-----------------|-------------|-------|------|-------------|
| | | | | | |
| Total | | | 22.30 | $9,115.00 | |
| Number of Entries: | 13 | | | | |

EXHIBIT B

PWC RETENTION/COMPENSATION

PricewaterhouseCoopers LLP

SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Finseth, S | 21.00 | 8,400.00 |
| Smith, A | 1.30 | 715.00 |
| | 22.30 | $9,115.00 |

SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Monthly, Interim and Final Fee Applications | 22.30 | 9,115.00 |
| | 22.30 | $9,115.00 |