## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE
## SECOND QUARTERLY FEE APPLICATION OF SNR DENTON US LLP

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Second Quarterly Fee Application of SNR Denton US LLP for Compensation for Services Rendered and Reimbursement of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

*Expenses as Counsel to the Debtors and Debtors in Possession for the Period from December 1, 2011 Through February 29, 2012* [Docket No. 11385] (the "**Fee Application**"). The Fee Application seeks approval of fees that total $187,584.00 and reimbursement of expenses that total $1,497.91 for the period from December 1, 2011 through February 29, 2012. SNR Denton US LLP ("**SNR Denton**") serves as special counsel to the Debtors for certain litigation and transactional matters.

## Background

1.      On December 8, 2008 (the "**Petition Date**"), the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  Under this Court's *Order Directing Joint Administration Chapter 11 Cases* entered on December 10, 2009, these cases are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules [Docket No. 43].

2.      On December 26, 2008, the Debtors filed their *Motion for an Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code* [Docket No. 148] (the "**OCP Motion**").  In the OCP Motion, the Debtors sought approval from this Court to employ and retain Ordinary Course Professionals, including SNR Denton, to provide services to the Debtors as necessary for the day-to-day operations of the Debtor's businesses on terms substantially similar to those in effect prior to the Petition Date. On January 15, 2009, this Court granted the OCP Motion and issued an order approving procedures for the employment, retention, and compensation of the Ordinary Course Professionals [Docket No. 227] (the "**OCP Order**").

3.      On November, 23, 2011, the Debtors filed an application for an order authorizing the employment and retention of SNR Denton as special counsel for certain First Amendment,

publishing, outsourcing and other litigation and transactional matters pursuant to Sections 327(e) and 1107 of the Bankruptcy Code, *nunc pro tunc* to November 1, 2011 (Docket No. 10295] (the "**Special Counsel Application**"). The Special Counsel Application was filed for the limited purpose of converting SNR Denton's retention by the Debtors under this Court's OCP Order into a retention pursuant to Sections 327(e) and 1103 of the Bankruptcy Code, given that SNR Denton had exceeded the monthly cap on its services under the OCP Order for multiple consecutive months, and that the Debtors expect that SNR Denton may continue to exceed that monthly cap on a regular basis in the future.

4.      On December 12, 2011, the Court entered an order approving the Special Counsel Application and authorizing the Debtors to employ SNR Denton as special counsel to the Debtors for certain litigation and transactional matters in these cases *nunc pro tunc* to November 1, 2011 [Docket No. 10422] (the "**Retention Order**").

**Applicable Standards**

5.      In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

6.      The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for

Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

7.      Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

8.      A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must comply with the format and content requirements outlined in the applicable guidelines and

bankruptcy rules. Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application. A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

9.      The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings and provided a Preliminary Report to SNR Denton for review and comment. The firm submitted to the Fee Examiner a lengthy and detailed written response to the Preliminary Report. After consideration of the additional information provided by the firm, the Fee Examiner now issues this final report (the **"Final Report"**) "in a format designed to opine whether the requested fees of the Case Professional meet the applicable standards of section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines." *Fee Examiner Order* ¶5.

## DISCUSSION OF FINDINGS

### Technical Requirements

10.      **Reconciliation of Fees and Expenses.** The Fee Examiner compared the total amount of fees and expenses requested in the Fee Application (**"Fees Requested"** and **"Expenses Requested"**) to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm (**"Fees Computed"** and **"Expenses Computed"**). The Fee Examiner determined that the Fees Computed exceeded the Fees Requested by \$662.00, resulting in an apparent undercharge. The discrepancy was the result of task hours within several entries that do not equal the time billed for the entries as a whole. The discrepancy was displayed in **Exhibit A** to the Preliminary Report. The Fee Examiner requested comment from SNR Denton regarding the discrepancy. In response, SNR Denton agreed with the Fee Examiner's calculations and stated the discrepancy was the result of an inadvertent computing

-5-

error. The result is an increase in fees in the amount of $662.00. Exhibit A has been omitted from this Report.

The Fee Examiner further determined there were no discrepancies between the Expenses Requested and the Expenses Computed. The figures in this report and the accompanying exhibits reflect Fees Computed and Expenses Computed.

11.     **Pre-Retention Fees.** The Fee Examiner identified one billing entry totaling 0.50 hour with $102.50 in associated fees incurred prior to November 1, 2011, the firm's effective date of retention. These fees were displayed in **Exhibit B** to the Preliminary Report. For purposes of this interim application, SNR Denton has agreed to waive the OCP/pre-retention fees, which results in a fee reduction of $102.50. Exhibit B has been omitted from this Report.

12.     **Block Billing.**[2]  The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii).* The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[3]  The Delaware Bankruptcy Court has found that time entries that generally only combine work on one issue, and a conference/communication with the client or

---

[2] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

[3] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g., In re Brous,* 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g., In re Baker,* 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

-6-

opposing counsel on the same issue, while technically block billing, will not be objectionable.[4] The Fee Examiner identified block billed time entries totaling 9.10 hours with associated fees of $5,288.00, which were displayed in **Exhibit C** to the Preliminary Report. Based upon precedent established by this Court, however, there were no objectionable block billed entries. Thus, no fee reduction is warranted and Exhibit C has been omitted from this Report.

13.     **Time Increments.** The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv).* The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines ¶(b)(4)(v).* The Fee Examiner confirmed that the firm recorded time entries in one-tenth hour time increments.

14.     **Redacted Fee Entries.** SNR Denton provided the Fee Examiner with certain un-redacted copies of its billing invoices. However, the Fee Examiner still identified a number of redacted entries that did not coincide with an un-redacted invoice. The redacted entries totaled 5.50 hours and $3,449.50 in associated fees, and were displayed in **Exhibit D** to the Preliminary Report. To avoid a recommendation for a fee reduction, resulting from the redacted billing entries, the Fee Examiner requested SNR Denton submit the un-redacted invoices for the entries in the exhibit. Further, the Fee Examiner requested SNR Denton ensure that it provide all un-redacted versions of its redacted invoices with all future fee application submissions. SNR Denton provided the invoices as requested, and after a full review of the same the Fee Examiner did not identify any non-compliant entries. Exhibit D has been omitted from the Final Report.

---

[4] See *In re Worldwide Direct, Inc.,* 316 B.R. 637, 643 (Bankr. D. Del. 2004) (the court did disallow 100% of the block billed entries that combined more than one discrete task and issue from which it could not determine the amount of time that was allocated to each task).

## Review of Fees

15.    **Firm Staffing.** The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*. The Fee Application provided the names, positions, and hourly rates of the 18 SNR Denton timekeepers who billed to this matter, consisting of 7 partners, 1 counsel, 1 senior managing associate, 2 managing associates, 3 associates, 1 law clerk, 2 librarians, and 1 research analyst. A summary of hours and fees billed by each timekeeper is displayed in **Exhibit E**.[5]

The firm invoiced a total of 372.20 hours with associated fees of $188,246.00. The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Partner | 228.90 | 61% | $136,170.50 | 72% |
| Counsel | 10.40 | 3% | 5,408.00 | 3% |
| Senior Managing Associate | 0.30 | * | 156.00 | * |
| Managing Associate | 10.70 | 3% | 5,568.00 | 3% |
| Associate | 111.50 | 30% | 38,673.00 | 21% |
| Law Clerk | 0.90 | * | 265.50 | * |
| Librarian | 8.50 | 2% | 1,860.00 | * |
| Research Analyst | 1.00 | * | 145.00 | * |
| **TOTAL** | 372.20 | 100% | $188,246.00 | 100% |

*Less than 1%

---

[5] This Final Report includes exhibits that detail and support the findings discussed herein. Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

The blended hourly rate for the SNR Denton professionals is $514.03 and the blended hourly rate for professionals and paraprofessionals is $505.77.

16.   **Hourly Rate Increases.**   SNR Denton increased the hourly rates of some timekeepers effective January 1, 2012.

17.   **Timekeepers' Roles.**   A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4)*. With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts. On the whole, each SNR Denton timekeeper appeared to perform either core team responsibilities necessary to the engagement, or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.

18.   **Meetings, Conferences, Hearings, and Other Events.**   The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*. While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions where two or more SNR Denton timekeepers attended the same meeting, conference, hearing, or other event. Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. The entries, totaling 10.10 hours with

$5,331.50 in associated fees, were displayed in **Exhibit F** to the Preliminary Report. In each instance where multiple timekeepers attended a meeting, conference, hearing, or other event, we identified the timekeeper who appeared most responsible for the matter or the particular event (*i.e.*, the attorney leading rather than observing a conference). The potentially duplicative and unnecessary timekeepers' entries totaled 5.00 hours with $2,642.00 in associated fees, and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested that the firm provide what the Local Rules and UST Guidelines mandate -- an explanation of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

In response to the Preliminary Report, SNR Denton provided a detailed explanation of the roles played by its professionals in the questioned entries, and the need for more than one timekeeper at each of the questioned meetings, conferences, and/or events. With the additional information provided, SNR Denton has substantially complied with the Local Rules and UST Guidelines and, accordingly, a fee reduction is not appropriate. Exhibit F is omitted from this Report.

19.   **Intraoffice Conferences.**   Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified billing activities by SNR Denton timekeepers describing intraoffice conferences that totaled 9.24 hours with $4,895.08 in associated fees, or approximately 3% of the total Fees Computed. The entries were displayed in **Exhibit G** to the Preliminary Report. The Fee Examiner observed that in certain instances, two or more timekeepers invoiced fees associated with the same intraoffice conference. The entries describing intraoffice conferences invoiced by two or more firm personnel totaled 4.05 hours with $1,726.00 in associated fees and

were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested that SNR Denton strive to eliminate unnecessary intraoffice conferencing, and further requested the firm provide an explanation for the necessity of more than one participant billing for the same intraoffice conferences identified in the exhibit.

SNR Denton first responded by stating it would strive to eliminate unnecessary intraoffice conferencing. The firm also provided additional information for each questioned entry, in support of its position that more than one SNR Denton attorney was required at each intraoffice conference in order to most effectively and efficiently provide counsel to the Debtors. Based upon the explanation and additional detail provided by SNR Denton, the Fee Examiner makes no recommendation for a fee reduction. Exhibit G has been omitted from this Report.

20.    **Complete and Detailed Task Descriptions.**  Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*. The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v).*

a. **Vague Communications.** The Fee Examiner identified entries totaling 15.50 hours with $9,407.00 in associated fees in which a conference or other communication was not described with sufficient detail. This lack of detail hinders a reviewer's ability to determine the reasonableness and necessity of the activity, and is in clear violation of the applicable guidelines. The vague entries were displayed in **Exhibit H** to the Preliminary Report. SNR Denton was invited to comment on or provide the missing participant and/or subject matter to bring the questioned time entries into compliance. In response, SNR Denton provided the missing participant and/or subject matter information for each of the questioned entries, which brought them into compliance. No fee reduction is recommended, and Exhibit H has been omitted from the Final Report.

b. **Other Vague Tasks.** The Fee Examiner reviewed the substantive detail of each billing entry and identified 5.50 hours with $2,535.00 in associated fees where the Fee Examiner could not determine the precise nature of the services performed by the timekeeper. The entries were displayed in **Exhibit I** to the Preliminary Report. As reflected in the Local Rules and UST Guidelines, billing entries must adequately describe the services actually performed to allow a determination of whether the task was staffed appropriately, whether the task involved the exercise of legal judgment, and/or whether the task was duplicated by other timekeepers.[6] The Fee Examiner suggested SNR Denton comment on or provide the missing information to bring the questioned tasks into compliance. In response, SNR Denton provided the missing information, which brought each of the vague tasks into compliance. As such, no fee reduction is recommended, and Exhibit I has been omitted from the Final Report.

---

[6] Vague entries do not allow the court to determine the reasonableness and necessity of the effort expended, and fees may be denied or reduced when insufficiently documented. *E.g., In re Bennett Funding, Inc.*, 213 B.R. 234, 245-46 (Bankr. N.D.N.Y. 1997). Entries for legal research must identify the issue and explain the research need. *In re Fibermark, Inc.*, 349 B.R. 385, 397 (Bankr. D. Vt. 2006).

21.     **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. The Fee Examiner did not identify any fee entries describing administrative activities.

22.     **Clerical Activities.** Clerical activities do not require legal acumen, and may be effectively performed by administrative assistants, secretaries, or support personnel. Similar to administrative activities, clerical activities are generally not billable and are considered to be part of the firm's overhead. In the 3rd Circuit, however, some clerical and non-clerical activities may be compensable at a rate commensurate with the level of expertise or knowledge typically found to be necessary to complete the task. The questioned entries were displayed in **Exhibit J** to the Preliminary Report and totaled 3.70 hours with $1,034.00 in associated fees. The firm provided additional information regarding the questioned entries. After further discussions between the Fee Examiner and SNR Denton a compromise was reached wherein the firm agreed to a voluntary fee reduction of $350.00. Exhibit J has been omitted from this Report.

23.     **Travel.** Local Rule 2016-2 (d)(viii) provides that nonworking travel time "may be billed at no more than 50% of regular hourly rates." SNR Denton did not submit any time entries describing travel.

24.     **SNR Denton Retention/Compensation.** The Fee Examiner did not identify any time entries describing activities relating to the preparation and filing of SNR Denton's retention documents and applications for compensation.

## Review of Expenses

25.     **Itemization of Expenses.** The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize

each expense within each category, including the date the expense was incurred, the charge and the individual incurring the charge, if available." *Local Rule 2016-2(e)(i-ii)*.    The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense. Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii)*.  SNR Denton provided an itemization for the firm expenses that included the category, the date, the description, and the amount.

26.      **Pre-Retention Expenses.**  The Application included a request for reimbursement of two charges incurred prior to November 1, 2011, the firm's effective date of retention. These expenses were displayed in **Exhibit K** to the Preliminary Report. The firm provided additional information regarding the charges in question.  Based on the firm's response, which in part discusses delayed invoicing of expenses, the charges cannot conclusively be classified as pre-retention expenses.  As such, an expense reduction is not warranted, and Exhibit K is omitted from this Report.

27.      **Photocopies.**  The Local Rules provide that copying charges shall not exceed $0.10 per page. *Local Rule 2016-2(e)(iii)*.  SNR Denton stated in the Application that the firm's rate for duplication is $0.10 per page.

28.      **Computer-Assisted Legal Research.**       The Local Rules provide that computer-assisted legal research charges "shall not be more than the actual cost." *Local Rule 2016-2 (e)(iii)*.  The firm billed $124.76 for computer-assisted legal research and the

-14-

Application failed to indicate how the firm calculated this cost. The Fee Examiner requested that SNR Denton provide additional information regarding the costs associated with the firm's computer-assisted research and how the costs were determined. SNR Denton verified that it bills its computer-assisted research at cost minus any applicable SNR Denton discounts. The firm's response satisfied the Fee Examiner's concerns.

## CONCLUSION

The Fee Examiner submits this final report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of SNR Denton's fees in the amount of $187,793.50 ($187,584.00 plus $662.00 minus $452.50) and reimbursement of expenses in the amount of $1,497.91 for the period from December 1, 2011 through February 29, 2012. The findings are set forth in the summary on the following page.

**SNR DENTON US LLP**

**SUMMARY OF FINDINGS**

**Second Quarterly Fee Application (December 1, 2011 through February 29, 2012)**

**A.** **Amounts Requested and Computed**

| | | |
|---|---:|---:|
| Fees Requested | $187,584.00 | |
| Expenses Requested | 1,497.91 | |
| TOTAL FEES AND EXPENSES REQUESTED | | $189,081.91 |
| Fees Computed | $188,246.00 | |
| Expenses Computed | 1,497.91 | |
| TOTAL FEES AND EXPENSES COMPUTED | | $189,743.91 |
| Discrepancy in Fees | ($ 662.00) | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | ($ 662.00) |

**B.** **Recommended Fee Allowance and Expense Reimbursement**

| | | | |
|---|---:|---:|---:|
| Fees Requested | $187,584.00 | | |
| *Discrepancy in Fees* | | *$662.00* | |
| *Agreed Reduction for Pre-Retention Fees* | | *(102.50)* | |
| *Agreed Reduction for Clerical Activities* | | *(350.00)* | |
| Subtotal | | *$209.50* | |
| RECOMMENDED FEE ALLOWANCE | | | $187,793.50 |
| Expenses Requested | $1,497.91 | | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | | 1,497.91 |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | | $189,291.41 |

Respectfully submitted,

**STUART MAUE**

By: _____

John F. Theil, Esq.
3840 McKelvey Road
St. Louis, Missouri 63044
Telephone: (314) 291-3030
Facsimile: (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 7th day of January, 2013.

David Buchbinder, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
R. Craig Martin, Esq.
DLA Piper LLP (US)
919 North Market Street, Suite 1500
Wilmington, DE 19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE 19899-0511
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Douglas E. Deutsch, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE 19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Ms. Stefanie L. Wowchuk McDonald
SNR Denton US LLP
233 South Wacker Drive, Suite 7800
Chicago, IL 60606-6306

John F. Theil, Esq.

-18-

## SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL

## COMPUTED AT STANDARD RATES

### SNR Denton US LLP

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| RGUL | Gullikson, Rosemary L. | PARTNER | $575.00 | $575.00 | 92.80 | $53,360.00 |
| NSPE | Spears, Natalie J. | PARTNER | $545.00 | $575.00 | 70.80 | $40,653.00 |
| JKLE | Klenk, James A. | PARTNER | $625.00 | $650.00 | 56.30 | $36,577.50 |
| MWEI | Weinstein, Margo | PARTNER | $650.00 | $650.00 | 3.90 | $2,535.00 |
| LBRU | Bruno, Leah | PARTNER | $590.00 | $590.00 | 2.50 | $1,475.00 |
| SFIF | Fifer, Samuel | PARTNER | $625.00 | $625.00 | 1.50 | $937.50 |
| CBEE | Been, Carol Anne | PARTNER | $575.00 | $575.00 | 1.10 | $632.50 |
| | No. of Billers for Position: 7 | Blended Rate for Position: | $594.89 | | 228.90 | $136,170.50 |
| | | | | % of Total: | 61.50% | % of Total: 72.34% |
| GNAR | Naron, Gregory R. | COUNSEL | $520.00 | $520.00 | 10.40 | $5,408.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $520.00 | | 10.40 | $5,408.00 |
| | | | | % of Total: | 2.79% | % of Total: 2.87% |
| DNEA | Neathery, Derek T. | SR MANAG ASSOC | $520.00 | $520.00 | 0.30 | $156.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $520.00 | | 0.30 | $156.00 |
| | | | | % of Total: | 0.08% | % of Total: 0.08% |
| JGMA | Gutman Mann, Jillian E. | MANAG ASSOC | $540.00 | $540.00 | 8.60 | $4,644.00 |
| JMAR | Margolis, Justine N. | MANAG ASSOC | $440.00 | $440.00 | 2.10 | $924.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $520.37 | | 10.70 | $5,568.00 |
| | | | | % of Total: | 2.87% | % of Total: 2.96% |
| KROD | Rodriguez, Kristen C. | ASSOCIATE | $335.00 | $335.00 | 73.90 | $24,756.50 |
| KSTA | Staba, Katherine L. | ASSOCIATE | $295.00 | $380.00 | 35.20 | $13,112.50 |
| MDOM | Domanskis, Maria L. | ASSOCIATE | $335.00 | $335.00 | 2.40 | $804.00 |

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**SNR Denton US LLP**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| | No. of Billers for Position: 3 | Blended Rate for Position: | $346.84 | | 111.50 | $38,673.00 |
| | | | | % of Total: | 29.96% | % of Total: 20.54% |
| AGRA | Graham, Aimee | LAW CLERK | $295.00 | $295.00 | 0.90 | $265.50 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $295.00 | | 0.90 | $265.50 |
| | | | | % of Total: | 0.24% | % of Total: 0.14% |
| JCOL | Collins, Janice A. | LIBRARIAN | $220.00 | $220.00 | 7.50 | $1,650.00 |
| NHEN | Henry, Nancy J. | LIBRARIAN | $205.00 | $215.00 | 1.00 | $210.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $218.82 | | 8.50 | $1,860.00 |
| | | | | % of Total: | 2.28% | % of Total: 0.99% |
| GBEN | Bent, Geoffrey S. | RESEARCH ANALYS | $145.00 | $145.00 | 1.00 | $145.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $145.00 | | 1.00 | $145.00 |
| | | | | % of Total: | 0.27% | % of Total: 0.08% |
| | Total No. of Billers: 18 | Blended Rate for Report: | $505.77 | | 372.20 | $188,246.00 |