## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | (Jointly Administered) |
| | **Hearing Date: January 16, 2013 at 11:00 a.m. (ET)**<br>**Obj. Deadline: January 14, 2013 at 11:00 a.m. (ET)**<br>**(as extended for the Litigation Trustee)** |

## LITIGATION TRUSTEE'S LIMITED OBJECTION TO MOTION FOR AN OMNIBUS ORDER AUTHORIZING THE SUBSTITUTION OF THE REORGANIZED DEBTORS IN PLACE OF THE CREDITORS' COMMITTEE AS PLAINTIFFS IN CERTAIN ADVERSARY PROCEEDINGS AND APPROVING PROCEDURES TO EVIDENCE SUCH SUBSTITUTIONS

Marc S. Kirschner, as Litigation Trustee of the Tribune Litigation Trust (the "Litigation Trustee"), hereby files this Limited Objection (the "Limited Objection") to the Motion for an Omnibus Order Authorizing the Substitution of the Reorganized Debtors In Place of The

---

[1] Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (55! 0); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicago Land Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); ForSaleByOwner.com Corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. ( 4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); N)1th Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931 ); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., nlk/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entettainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (l 035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Ttibune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., t/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WON Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0 191 ). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Creditors' Committee as Plaintiffs In Certain Adversary Proceedings and Approving Procedures to Evidence Such Substitutions (the "Debtors' Substitution Motion")[2] filed by Tribune Company ("Tribune") and the other debtors and debtors in possession (each a "Debtor," and collectively the "Debtors").    In support of the Limited Objection, the Litigation Trustee states as follows:

## BACKGROUND

1.    On December 8, 2008, Tribune and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[3]    The chapter 11 cases were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

2.    On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") in these cases.

3.    On July 23, 2012 The Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank N.A. (as Modified July 19, 2012), [Docket No. 12072] (the "DCL Plan") was confirmed by order of this Court [Docket No. 12074] (the "Confirmation Order").

4.    The Debtors filed the Debtors' Substitution Motion on December 27, 2012.

5.    All conditions precedent to the occurrence of the effective date of the DCL Plan (the "Effective Date") having been satisfied or waived, the Effective Date occurred on December 31, 2012 [Docket No. 12939].

---

[2] Capitalized terms not otherwise defined herein shall have the same meanings as ascribed to them in the Debtors' Substitution Motion.
[3] An additional Tribune affiliate, Chicago National League Ball Club, LLC ("CNLBC"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.

6.      Marc S. Kirschner was appointed as Litigation Trustee to the Litigation Trust pursuant to the Litigation Trust Agreement dated as of December 31, 2012 (the "Trust Agreement").

### History of the Insider Actions and Lender Actions

7.      By order dated October 27, 2010 [Docket No. 6150], the Court granted the Creditors' Committee authority to pursue claims arising from the leveraged buy-out of Tribune that occurred in 2007 (the "LBO").  Additionally, the Creditors' Committee was authorized by the Court to commence, prosecute and settle on behalf of the Debtors' estates various claims to avoid and recover prepetition transfers made by the Debtors to, *inter alia*, (i) certain insider defendants and certain third party defendants by order dated November 29, 2010 [Docket No. 6658], and (ii) certain other third party defendants by order dated November 29, 2010 [Docket No. 6657].

8.      Beginning on December 3, 2010, the Creditors' Committee initiated a number of avoidance actions against insider defendants (the "Insider Actions").   Additionally, the Committee commenced four LBO-related adversary proceedings (the "LBO-Related Actions"): *Official Committee of Unsecured Creditors of the Tribune Company v. FitzSimons, et al. (In re Tribune Co.)*, Adv. Proc. No. 10-54010 (Bankr. D. Del.) (KJC) (the "FitzSimons Action"); *Tribune Company, et al. v. Citigroup Global Markets Inc., et al.*, Adv. Proc. No. 12-50446 (the "Advisor Action"); *Official Committee of Unsecured Creditors v. JPMorgan Chase Bank, N.A., et al. (In re Tribune Co.)*, Adv. Proc. No. 10-53963 (Bankr. D. Del.) (KJC) (the "LBO Lender Action"); and *Official Committee of Unsecured Creditors v. JPMorgan Chase Bank, N.A., et al. (In re Tribune Co.)*, Adv. Proc. No. 10-55969 (Bankr. D. Del.) (KJC) (the "LBO Lender Preference Action," and together with the FitzSimons Action, Advisor Action, and LBO Lender

3

Action, the "LBO-Related Actions"). The FitzSimons Action and Advisor Action were subsequently transferred to the Federal District Court for the Southern District of New York. [*See* Fitzsimons Action Docket No. 495; Advisor Action Docket No. 10.] The Insider Actions, LBO Lender Action and LBO Lender Preference Action remain pending in this Court.

**Ownership of the Insider Actions and LBO-Related Actions After the Effective Date**

9.      Pursuant to the DCL Plan, the appointment of the Creditors' Committee was terminated as of the Effective Date, and the Creditors' Committee's continued existence thereafter is limited to only certain enumerated purposes that do not include continuing to act as the plaintiff in the Insider Actions or the LBO-Related Actions. DCL Plan § 15.2.

10.      The DCL Plan provides for the creation of the Tribune Litigation Trust ("the "Litigation Trust") "for the purposes of administering the Litigation Trust Assets and making all distributions on account of Litigation Trust Interests as provided for under the Plan." DCL Plan § 13.1. Litigation Trust Assets include "Preserved Causes of Action." DCL Plan § 1.124.

11.      As of the Effective Date, the Litigation Trustee became vested with the right to act with respect to "Preserved Causes of Action" on behalf of the Litigation Trust, *see* DCL Plan §§ 1.1.124, 13.2.1, 13.2.4, 13.3.2, and is authorized, on behalf of the Litigation Trust, to provide for "the prosecution, settlement, adjustment, retention, and enforcement of the [Preserved Causes of Action]." *Id.* at § 13.2.4. "Preserved Causes of Action" are defined by the DCL Plan as:

> (a) any and all LBO-Related Causes of Action that the Tribune Entities or the Debtors' Estates may have or are entitled to assert on behalf of their respective Estates (whether or not asserted) against the Non-Settling Defendants under any provision of the Bankruptcy Code or any applicable nonbankruptcy law including, without limitation, any and all claims under chapter 5 of the Bankruptcy Code; (b) Advisor Claims; (c) Morgan Stanley Claims; and (d) claims and causes of action against Non-Settling Step Two Payees to the extent such claims or causes of action seek recovery of payments (i) under the Senior Loan Agreement on account of the Incremental Senior Loans or (ii) under the Bridge Loan Agreement, in

4

> each case whether based on avoidance and disallowance of Senior Loan
> Claims or Bridge Loan Claims or any other theory; provided, however,
> that Preserved Causes of Action shall not include the Disclaimed State
> Law Avoidance Claims or any claims, causes of action, suits or
> proceedings that have been released or settled on or prior to the Effective
> Date. For avoidance of doubt, all claims that were asserted against any
> Person (except for Released Stockholder Parties) in the complaint filed by
> the Creditors' Committee on January 11, 2012, in the lawsuit entitled
> *Official Committee of Unsecured Creditors of the Tribune Company v.*
> *FitzSimons, et al. (In re Tribune Co.),* Adv. Proc. No. 10-54010 (Bankr. D.
> Del.) (KJC) are Preserved Causes of Action and are not released pursuant
> to this Plan or the Confirmation Order. For the avoidance of doubt,
> nothing in this Plan is intended to determine whether any defendant
> properly faces liability with respect to a Preserved Cause of Action.

DCL Plan § 1.1.174. The LBO-Related Actions, among other actions, are Preserved Causes of

Action.

12.     As set forth more fully in the Debtors' Substitution Motion, the DCL Plan vests

the Reorganized Debtors with the authority to prosecute certain "Ordinary Litigation Claims," as

that term is defined in the DCL Plan. *See* DCL Plan § 5.16. Additionally, the Debtors assert

that:

> Apart from claims which are Ordinary Litigation Claims or Preserved
> Causes of Action, the Committee-Filed Adversaries also assert two
> categories of claims whose future ownership may not be fully resolved
> (the "Unresolved Claims") as of the Effective Date. Specifically, although
> the DCL Plan provides that five categories of claims against Insider
> Defendants are either owned by the Debtors or the Litigation Trust as of
> the Effective Date, it is less explicit regarding (i) the allocation of claims
> asserted for the avoidance and recovery of executive transition payments,
> and (ii) whether preference claims asserted against Insider Defendants
> who are also defendants in the adversary proceeding captioned as *Official*
> *Committee of Unsecured Creditors of the Tribune Company v. FitzSimons*
> (the "FitzSimons Adversary") are allocated between the Debtors and the
> Litigation Trust in the same manner as the categories of preference claims
> asserted in the other [Debtor] Substitution [Claims] . . . .

Debtors' Substitution Motion at ¶ 11 (footnotes omitted). The Debtors' Substitution Motion

does "not seek any relief with respect to the Unresolved Claims," and states that the Debtors

"anticipate that after the Effective Date the Reorganized Debtors, the Litigation Trustee, and the applicable defendants will attempt to reach a resolution of the ownership of the Unresolved Claims." Debtors' Substitution Motion at ¶ 12.

13.    By the Debtors' Substitution Motion, the Debtors request permission to substitute the applicable Reorganized Debtor(s) as plaintiffs (i) in 156 adversary proceedings (the "Full Substitution Adversaries") that the Debtors assert are comprised only of Ordinary Litigation Claims, and (ii) with respect to the Ordinary Litigation Claims asserted in an additional 18 adversary proceedings (the "Split Substitution Adversaries," and, together with the Full Substitution Adversaries, the "Substitution Adversaries") that assert both (i) Ordinary Litigation Claims and (ii) Preserved Causes of Action and/or Unresolved Claim(s).  *See* Debtors' Substitution Motion at ¶¶ 14, 15, Exs. A, B.

14.    Upon information and belief, approximately twenty-four (24) defendants in the Substitution Adversaries also are defendants in the FitzSimons Action (the "FitzSimons Overlap Defendants").  A list of the Substitution Adversaries in which a FitzSimons Overlap Defendant is named is attached hereto as Exhibit A.

## LIMITED OBJECTION

15.    Although the Litigation Trustee does not object generally to the relief being sought by the Debtors in the Debtors' Substitution Motion, he does have concerns with respect to certain aspects of the requested relief.  Specifically, at the time the Ordinary Litigation Claims and Preserved Causes of Action were commenced against the FitzSimons Overlap Defendants, they were brought by and/or on behalf of the same parties.  The Litigation Trustee has reason to believe that if the Debtors' Substitution Motion is granted, the Debtors intend to dismiss the Ordinary Litigation Claims.  For a variety of reasons, the Litigation Trustee believes that, as a

matter of law, such dismissals would not prejudice his ability to pursue any Preserved Causes of Action, including those pending against the FitzSimons Overlap Defendants. The Litigation Trustee is concerned, however, that the FitzSimons Overlap Defendants may nevertheless seek to avoid their liability on the Preserved Causes of Action by raising res judicata and/or other related arguments. *See, e.g., Gambocs v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972); *Nemaizer v. Banker*, 793 F.2d 58, 60 (2d Cir. 1986).

16.    Such a result cannot be permitted, as the Plan is designed to ensure that the Litigation Trustee will have the right to prosecute the Preserved Causes of Action (and any Unresolved Claims ultimately categorized as or determined to be Preserved Causes of Action). Thus, in order to avoid any risk to the Preserved Causes of Action pending against the FitzSimons Overlap Defendants and the Litigation Trustee's right to pursue them, the Debtors should be directed to dismiss the Ordinary Litigation Claims against the FitzSimons Overlap Defendants only *without* prejudice, unless the applicable FitzSimons Overlap Defendants first stipulate in writing that the dismissal is without prejudice to the Preserved Causes of Action pending against them. This will enable the Debtors to achieve any goal they may have of terminating their pursuit of the Ordinary Litigation Claims, while simultaneously protecting the Litigation Trustee from any argument by the FitzSimons Overlap Defendants that such termination has prejudiced the Litigation Trustee's right to pursue the Preserved Causes of Action pending against them.

17.    Additionally, any Order granting the Substitution Motion should provide that (i) in the event that the Debtors dismiss any defendant to a Substitution Adversary, such dismissal shall expressly state that it is without prejudice to the Litigation Trustee's right to continue to pursue any Preserved Causes of Action pending against such defendant, or any Unresolved

Claims pending against such defendant that are ultimately categorized as or determined to be Preserved Causes of Action, and (ii) any action by the Debtors with respect to any defendant to a Substitution Adversary, including without limitation any dismissal of the Substitution Adversary, shall have no effect whatsoever on any Preserved Cause of Actions pending against such defendant, and any Unresolved Claims pending against such defendant that may ultimately be categorized as or determined to be a Preserved Cause of Action.

18.    The Litigation Trustee also objects to the Substitution Motion to the extent that it asserts that the defendants to Unresolved Claims may or have any right to participate in discussions between the Debtors and the Litigation Trustee that are aimed at determining whether an Unresolved Claim should be categorized as a Preserved Cause of Action or an Ordinary Litigation Claim.  To the extent that the Debtors are seeking this Court's approval of such an assertion, such approval should be denied.

## NOTICE

19.    Notice of this Limited Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the administrative agent for Tribune's prepetition loan facilities; (iii) counsel to the administrative agent for the Debtors' postpetition financing facility; (iv) all parties having requested notice in the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 2002; and (v) the defendants in the Substitution Adversaries.  The Litigation Trustee submits that no other or further notice is necessary.

WHEREFORE, the Litigation Trustee respectfully requests that in the event that the Court grants the Substitution Motion, the Court enter an order (i) substantially in the form set forth at Exhibit B[4] hereto, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: January 14, 2013
      Wilmington, Delaware

LANDIS RATH & COBB LLP

Richard S. Cobb (No. 3157)
J. Landon Ellis (No. 4852)
Jeffrey R. Drobish (No. 5437)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*Counsel to the Litigation Trustee*

---

[4] Attached hereto as Exhibit C is a blackline against the form of order filed by the Debtors in connection with the Debtors' Substitution Motion.