**EXHIBIT B**

Wethekam Declaration

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**DECLARATION OF MARILYN A. WETHEKAM IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER (I) ENFORCING THE TERMS OF THE BANKRUPTCY COURT-APPROVED SETTLEMENT AGREEMENT WITH THE FRANCHISE TAX BOARD OF THE STATE OF CALIFORNIA, (II) DETERMINING THAT THE DEBTORS HAVE NO LIABILITY FOR TAX-RELATED PENALTY, AND (III) ORDERING THE RETURN OF FUNDS SETOFF IN VIOLATION OF THE AUTOMATIC STAY AND COURT ORDER**

I, Marilyn A. Wethekam, declare as follows:

1.  I am partner at the law firm Horwood Marcus & Berk Chartered. I have represented and advised the reorganized debtors in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors") as tax counsel with respect to with respect to state and local tax issues, including tax matters pending before the Franchise Tax Board of the State of California (the "FTB").

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

2. I have read the Debtors' Motion for an Order (I) Enforcing the Terms of the Bankruptcy Court-Approved Settlement Agreement with the Franchise Tax Board of the State of California, (II) Determining that the Debtors Have No Liability for Tax-Related Penalty, and (III) Ordering the Return of Funds Setoff in Violation of the Automatic Stay and Court Order (the "Motion") and am directly familiar with the information contained therein. I am authorized to submit this declaration (the "Declaration") in support of the Motion.

3. All matters set forth in this Declaration are based on: (a) my personal knowledge, (b) my review of relevant documents, (c) information supplied to me by others at the Debtors' request, or (d) as to matters involving United States bankruptcy law or rules, my reliance on the advice of counsel or other advisors to the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

*The Settlement Agreement*

4. The Settlement Agreement,[2] as detailed in the Motion and as attached to the Motion as Exhibit C, resolved disputes between the Taxpayers and the FTB concerning corporate income taxes of the Taxpayers that FTB asserted the Taxpayers owed for the Settled Tax Period. The Taxpayers are members of a unitary group for the purposes of filing a State of California combined unitary franchise (corporate income) tax return. The Taxpayers maintain a single account with the FTB and all tax liabilities are assessed against the Taxpayers as a whole, and not on an entity-by-entity basis. For the Settled Tax Period, Tribune was the key corporation for the Taxpayers' unitary group, meaning that all relevant notices were issued to Tribune on behalf of the Taxpayers, and all payments were made by Tribune on behalf of all Taxpayers.

5. The Settlement Agreement was the result of an extensive process that lasted over five years. The process began before the Reorganized Debtors' chapter 11 cases were filed when

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

2

the Taxpayers filed timely tax returns as a unitary tax group for the Settled Tax Period. After an FTB audit resulted in the assessment of additional taxes, the Taxpayers initiated an appeals process. The Taxpayers worked directly with the FTB's Settlement Bureau (the "Settlement Bureau") in that process. The FTB conducted audits that began in late 2006 and spanned nearly three years. The FTB filed proofs of claim in the Taxpayers' chapter 11 cases in June 2009, then filed amended proofs of claim (during the negotiation process) nearly two years later in March 2011. Such proofs of claim were asserted against the Debtors in the aggregate amount of $63,485,740.87 (the "California Tax Claims").

6. After much discussion and negotiation, the Taxpayers and the Settlement Bureau reached an agreement in principle on December 16, 2010 regarding the approach to determining the amount of the corporation taxes the Taxpayers owed the FTB for the Settled Tax Period. The Taxpayers continued to provide the FTB with considerable information and documentation over the following months. The Settlement Bureau and the Taxpayers ultimately agreed that the Taxpayers owed $3,245,097 in the aggregate for corporate income taxes for the Settled Tax Period, plus applicable interest (the "Tax Liability"). After the Settlement Bureau and the Taxpayers agreed to the amount of the tax liability, the parties continued negotiations over the next several months regarding the language of the Settlement Agreement and the application of certain overpayments held by FTB to offset the agreed-upon tax liability.

7. The Settlement Agreement provided that the FTB would set off the Tax Liability against three tax refunds owed by the FTB to the Taxpayers (the "Overpayments") that were being held by the FTB pending resolution of the Taxpayers' liabilities to the FTB. The Taxpayers and the FTB agreed that the FTB would refund the remaining Overpayments, plus

applicable interest, after the FTB offset the Tax Liability and amended the California Tax Claims.

8.   At the time the parties entered into the Settlement Agreement, the FTB had already received and audited the Taxpayers' amended tax returns for tax year 2003 reflecting certain adjustments made on account of final determinations of the Taxpayers' federal tax liability. The Taxpayers had filed an amended tax return for tax year 2003 with the FTB on February 11, 2010. The agreed upon Tax Liability relating to the 2003 tax year takes into account the amended tax return for the 2003 tax year, as reflected in Exhibit C to the Settlement Agreement (referencing "RAR Adjustments (PHONES)"). For tax years 2004 and 2005, although the FTB had received the Taxpayers' amended tax returns reflecting certain adjustments made on account of final determinations of the Taxpayers' federal tax liability, the FTB had not yet audited such amended tax returns. The Taxpayers filed amended tax returns for tax years 2004 and 2005 with the FTB on December 9, 2010. Subsequent to the approval of the Settlement Agreement, the Taxpayers' tax liability resulting from the amended tax returns for tax years 2004 and 2005 was satisfied in full by offsetting such liability against the Overpayments.

***The Taxpayers' Penalties Under Section 19138***

9.   At no point during the initial audits, the appeals process or the negotiations leading to the Settlement Agreement did the FTB raise the issue of a Large Corporation Understatement Penalty ("LCUP") or the FTB's intent to assess and collect an LCUP for the 2003, 2004 or 2005 tax years.

10.   In mid-2012, the FTB informed me and the Taxpayers of its position that the Taxpayers had an LCUP in the aggregate amount of $857,702.20 (the "Disputed Amount") related to taxable years 2003, 2004 and 2005 as the result of adjustments to the Taxpayers'

liability made on account of federal determinations as reflected in the amended tax returns filed by the Taxpayers. The LCUP for tax year 2003 is asserted in the amount of $304,821.90 (the "2003 LCUP"), the LCUP for tax year 2004 is asserted in the amount of $290,053.80 (the "2004 LCUP") and the LCUP for 2005 is asserted in the amount of $262,826.60 (the "2005 LCUP"). Attached hereto as Exhibit 1 is schedule detailing the calculations of the LCUP provided by the FTB.

11. On June 4, 2012, I sent a letter on behalf of the Taxpayers to an FTB settlement officer disputing on the merits the validity of the LCUP assessed against Tribune. In further discussions with the FTB settlement officer, I informed the FTB that (i) even if any the Debtors were subject to a valid LCUP, because of the Debtors' bankruptcy they could not have complied with, nor could they have been compelled by the FTB to comply with, the procedures put in place by Section 19138 of the California Revenue and Tax Code ("Section 19138"), nor could they pay the potential tax liabilities for the 2003-2005 tax years during the pendency of the Debtors' chapter 11 cases, and (ii) the Disputed Amount was settled as part of the Settlement Agreement.

12. The FTB insisted that the Disputed Amount must remain as a valid penalty and on June 19, 2012, an FTB settlement officer informed me, by e-mail, that to prevent imposition of the LCUP, the Taxpayers would have had to file an amended return and pay the full amount of their potential tax liabilities for 2003-2005 to the FTB for the FTB's retention pending resolution of the Taxpayers' tax liabilities for those years. The amount of the Taxpayers' potential tax liabilities for 2003-2005 tax years was over $8.5 million in the aggregate. In subsequent discussions with the FTB settlement officer, the FTB took the position that the Taxpayers could have filed an amended return accompanied by an explanation that the Debtors were barred from

making the payment in question. The FTB did not state that such a course of action would have prevented its attempts to impose the LCUP.

13. On August 7, 2012, Tribune sent a letter to the FTB setting forth the Debtors' position that the FTB miscalculated the Taxpayers' tax liability. On August 14, 2012, the FTB informed Tribune that it had reviewed the August 7, 2012 letter and made certain adjustments to the Taxpayers' tax liability, but that the Disputed Amount remained as a penalty it sought to collect from the Taxpayers. On August 22, 2012, Tribune informed the FTB that it continued to disagree that the FTB had any right to collect the Disputed Amount. Tribune further reminded the FTB that it could not have paid the potential tax liabilities as a result of these chapter 11 cases, and, further, because the FTB had stated its intent to offset the Disputed Amount against the amounts payable to Tribune under the Settlement Agreement, Tribune would seek resolution of the dispute before this Court if necessary.

14. In September, the FTB notified Tribune that it would be sending Tribune offset notices which would provide for the return of the Overpayments to Tribune, including offset of the Disputed Amount, notwithstanding Tribune's position.

15. On October 23, 2012, the FTB issued a check to Tribune consisting of a refund of the Overpayments, but which refund payment had been reduced by the Disputed Amount.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of January 2013.

By: Marilyn A. Wethekam

6

## Exhibit 1

*20% Understatement Penalty*

LCUP calculations for CCN 2198052  Tribune Company TYE 12/03-05

```
12/03:   $792,275      NPA TAX
         $731,834      100X RECD 02/24/10
         ----------
         $1,524,109
         X  20%
         ----------
         $304,821.80   LCUP

12/04:   $508,625      NPA TAX
         $941,644      100X RECD 02/24/10
         ----------
         $1,450,269
         X  20%
         ----------
         $290,053.80   LCUP

12/05:   $433,589      NPA TAX
         $880,544      100X RECD 12/15/10
         ----------
         $1,314,133
         X  20%
         ----------
         $262,826.60   LCUP
```

5/31/12 Received from Melissa Laue