Sent by certified mail, return receipt requested.

January 23, 2013

United States Bankruptcy Court
District of Delaware
824 Market Street, 5th Floor
Wilmington, Delaware 19801

Dear Sir,

In response regarding to the Tribune Bankruptcy case, I Edwin M. Foard III am filling this official response to the Sixty-Fifth Omnibus Objection regarding my claim(s) shown in Exhibit A (claim number 3228) in the Sixty-Fifth Omnibus Objection.

Attached is all the documentation in regards to my claim(s), plus a cover letter and further documentation confirming my claim(s), from Ann W. Barnes the Labor Relations Director at The Baltimore Sun.

A brief history of my claims:
In the Omnibus Objection 65, Exhibit A – Modified Amount Claims it shows a claim amount of $279,273.48 reduced to $12,471.07.

In my Voluntary Separation Agreement signed on January 14, 2008, in paragraph 3(a) it shows a 52 week salary continuation through and including January 9, 2009. When Tribune Company announced it was going Chapter 11, seven weeks of that salary continuation remained in the amount of $12,471.07. Also in the Voluntary Separation Agreement in paragraph 5 it states I would be paid the difference between two different pension calculations. In the documentation provided by Andrew Kulas at that time the Team Lead at the Tribune Service Center it shows an additional pension payment of $802.51 a month to commence as of February 1, 2009. The additional monthly pension amount of $802.51 calculated to the age of 80 comes to the claim amount of $279,273.48.

In closing the documentation which has been provided during the coarse of the chapter 11 was recorded as a claim $279,273.48 replacing a claim of $12,471.07 when in fact they were two different claims. Enclosed are copies of both claims. With all of the documentation provided, I'm asking the court to approve my two claims in the amount of $291,744.55.

Respectfully Yours,

*Edwin M. Foard III*

Edwin M. Foard III
2309 Da Lib Road
Finksburg, MD 21048
410-526-3766
ronnieandmorris@verizon.net

Enclosures



# THE BALTIMORE SUN
A TRIBUNE PUBLISHING COMPANY

501 N. Calvert Street
P.O. Box 1377
Baltimore, Maryland 21278-0001
tel: 410/332-6000
800/829-8000

January 18, 2013

Edwin Foard
2309 Dalib Road
Finksburg, MD 21048

Dear Mr. Foard,

In December 2007, you and The Baltimore Sun Company entered into a Voluntary Separation Agreement (copy enclosed), paragraph 5 of which provided, in part and under certain conditions, that you would be paid the difference between two different pension benefits calculations. The written commitment that appears in paragraph 5 of the 2007 Voluntary Separation Agreement put in writing a verbal commitment made to you in August 1990 when you left the press bargaining unit and union status to become a non-union supervisor. The 1990 commitment was made to you by two Baltimore Sun Vice Presidents (Lou Franconari, Vice President of Operations, and Stan Schwartz, Vice President for Human Resources).

In October 2008 I received by email a calculation made by Andrew Kulas, then Team Lead at the Tribune Benefits Service Center, of the $802.51 difference in monthly pension benefits to which you were entitled under the terms of paragraph 5 of your December 2007 Voluntary Separation Agreement. Payment of the $802.51 per month was to commence when you began drawing your company pension benefits. A copy of the October 8, 2008 email from Andy Kulas, and the calculation attached to his email showing the $802.51 per month are enclosed. The handwritten notes on the email were made by me.

Please let me know if I can be of any further assistance in documenting the financial commitments made to you by The Baltimore Sun Company.

Sincerely,

*Ann W. Barnes*
Ann W. Barnes
Labor Relations Director

Encl.

## Barnes, Ann

| | |
|---|---|
| **From:** | Kulas, Andrew |
| **Sent:** | Wednesday, October 08, 2008 10:43 AM |
| **To:** | Barnes, Ann |
| **Cc:** | Dansart, Kevin J |
| **Subject:** | Ed Foard |
| **Attachments:** | Foard Calc.xls |

Ann:

Attached is Ed Foard's calculation.
Thanks,
Andy

Andrew Kulas
Team Lead
Tribune Benefits Service Center
800/872-2222
312/222-4644 (fax)

*These payments will not begin until Ed starts drawing his pension (either @ age 61 - 2/22/09, or @ age 62 - 2/22/10).*

*AWB*
*10/08/08*

10/8/2008

Ed Foard 089385

|  | Current benefits |  |  | What he would have if he remained in the union |
|---|---|---|---|---|
| BSERP | $308.65 | | BSERP | $750.10 |
| TRIBUNE | $1,149.34 | | TRIBUNE | N/A |
| GCIU | $476.19 | | GCIU | $1,986.59 * |
| SUM | $1,934.18 | | SUM | $2,736.69 |

**Difference:**     $802.51 to commence 2/1/09

\* I used Bob Bowings estimate of $2,709 as a baseline, then reduced to 73.333% based on the GCIU pension plan document. 73.333% is the reduction factor for age 61; Ed doesn't technically turn 61 until later in February.

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
Tribune Company Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5069
New York, NY 10150-5069

# PROOF OF CLAIM

| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
|---|---|
| THE BALTIMORE SUN COMPANY | 08-13209 (KJC) |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)
TRB (MERGE2.DBF,SCHED_NO) SCHEDULE #: 209018330*****
FOARDIII,EDWINM
2309 DALIB ROAD
FINKSBURG, MD 21048

Telephone number:           Email Address:

Name and address where payment should be sent (if different from above)

Telephone number:           Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Your claim is schedules By the Debtor as:

$12,471.07 UNSECURED ✓

1. **Amount of Claim as of Date Case Filed:** $ _____

   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

   If all or part of your claim is entitled to priority, complete Item 5.

   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

   ☐ Check this box if claim is for a claim related to goods delivered during the twenty (20) days prior to December 8, 2008 (the "Petition Date"), pursuant to 11 U.S.C. §503(b)(9). Please indicate amount entitled to _____ 503(b)(9) $_____.

2. **Basis for Claim:** _____
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____

   Value of Property: $_____ Annual Interest Rate _____%

   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____ Basis for perfection: _____

   Amount of Secured Claim: $_____ Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim:

   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

   ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

   **Amount entitled to priority:**
   $_____

   *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**FOR COURT USE ONLY**

Date:    Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | |
|---|---|
| Tribune Company Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5069<br>New York, NY 10150-5069 | **PROOF OF CLAIM** |

| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
|---|---|
| THE BALTIMORE SUN | 08-13209 (KJC) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

EDWIN M. FOARD III
2309 DALIB RD.
FINKSBURG, MD 21048

Telephone number: 410-526-3766   Email Address:

Name and address where payment should be sent (if different from above)

rDnnieandmorris@verizon.net

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 279,273.48

   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
   If all or part of your claim is entitled to priority, complete Item 5.

   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

   ☐ Check this box if claim is for a claim related to goods delivered during the twenty (20) days prior to December 8, 2008 (the "Petition Date"), pursuant to 11 U.S.C. §503(b)(9). Please indicate amount entitled to 503(b)(9) $ _____

2. Basis for Claim: Loss of pension as per written agreement
   (See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
   3a. Debtor may have scheduled account as: _____
       (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____
   Value of Property: $_____   Annual Interest Rate ____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____   Basis for perfection: _____
   Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim:

   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
   ☐ Wages, salaries or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

   **Amount entitled to priority:**
   $_____

   *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

FOR COURT USE ONLY

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|
| 5/27/09 | Edwin M. Foard III |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## VOLUNTARY SEPARATION AGREEMENT

This Voluntary Separation Agreement ("Agreement") is entered into by and between Edwin Foard, on behalf of himself, his agents, assignees, successors, heirs, executors, administrators, beneficiaries, trustees, and personal and legal representatives (collectively, Mr. Foard), and the Baltimore Sun Company (the "Company").

WHEREAS, Mr. Foard desires to resign his employment from the Company; and

WHEREAS, Mr. Foard and the Company desire to enter into this Agreement setting forth the terms of Mr. Foard's voluntary resignation from the Company and a release of claims;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Mr. Foard and the Company acknowledge and agree as follows:

1. *Separation Due to Resignation.* Mr. Foard resigns his employment effective as of the close of business on January 10, 2008 (the "Separation Date"). After the Separation Date, he shall not have authority to represent or bind the Company, and he shall not act or convey the impression that he is acting on the Company's behalf.

2. *Eligibility for Separation Payments and Benefits:* To be eligible to receive separation payments and benefits under this Agreement, Mr. Foard must: (a) continue to satisfactorily perform his current responsibilities or such other duties as may from time to time be assigned to him by the Company up to and including the Separation Date; (b) return a signed and not revoked copy of the Waiver and General Release ("Waiver"), a copy of which is attached hereto and incorporated by reference herein, to the Company within twenty-one days of receiving this Agreement or within five (5) business days of the Separation Date, whichever is later, *but not before the Separation Date*; and (c) not have accepted another position with any of the Released Parties (as defined in the attached Waiver).

3. *Separation Payments and Benefits.* Provided that Mr. Foard meets all of the eligibility criteria set forth in Paragraph 2 above, the Company shall provide him with the following:

   (a) *Salary Continuation:* The Company shall retain Mr. Foard on its payroll for 52 weeks and pay him salary continuation through and including January 9, 2009 (the "Salary Continuation Date"), via bi-weekly payments of $3,667.98, less applicable deductions and taxes, made at the time salary payments customarily are made. The gross amount of salary continuation shall not exceed $95,367.56; and

   (b) *Benefits:* Excluding sick pay, long-term disability, 401(k) participation, business travel accident insurance and commuter reimbursement, Mr. Foard will continue to participate through the Salary Continuation Date, under the same terms and conditions as are then applicable to employees of the Company, in those benefits in which he participated as of the Separation Date, provided that he timely pays

any required contributions for these benefits through authorized payroll deductions. In addition, provided that he otherwise complies with the terms of the applicable benefit plans, on the Salary Continuation Date Employee may elect to continue medical and dental benefits coverage through the "60/20" retiree medical health insurance benefit, which is continued medical and dental benefits under active employee coverages at active employee rates until age 65. Coverage under the "60/20" benefit will cease upon Employee's death or when Employee is no longer eligible under the plan. Mr. Foard may choose to continue Flexible Spending Account ("FSA") contributions, if applicable, through the Salary Continuation Date. FSA-covered expenses may be incurred through the earlier of the Salary Continuation Date or Mr. Foard's election to discontinue contributions.

The payments and benefits set forth in this Paragraph exceed any amounts otherwise due to Mr. Foard upon the separation of his employment with the Company. Mr. Foard also recognizes that the cash advance of $1,789.26 he received on or about January 4, 2004 will be deducted from his final salary continuation payment pursuant to the Employee Lag Payroll Conversion Advance Request he previously signed.

4.   *Vacation Payment.*   Mr. Foard will not accrue vacation pay after the Separation Date. Earned but unused vacation as of the Separation Date, if any, will be paid to Mr. Foard separate and apart from this Agreement and will not be contingent on signing this Agreement.

5.   *Complete Agreement and Permanence.*   Other than as set forth in this Agreement or in a defined benefit plan, if applicable, Mr. Foard will not be entitled to any salary, bonuses, benefits, perquisites, or other compensation whatsoever after the Separation Date. This Agreement constitutes the entire agreement and understanding between Mr. Foard and the Company regarding the termination of his employment with the Company. This Agreement totally replaces and supersedes any and all prior agreements, arrangements, representations and understandings between him and the Company, written or oral, express or implied. This Agreement cannot be amended, modified, supplemented or altered except by written amendment signed by him and an authorized representative of the Company. To the extent permitted by law, this Agreement shall be binding upon and inure to the benefit of the successors, representatives and assigns of the parties.

In addition, during the period of employment when Mr. Foard was a union employee in the pressroom bargaining unit, he was a participant in The Baltimore Sun Employees Retirement Plan (the "BSERP Plan") and the GCIU-Employer Retirement Plan (the "GCIU Plan"). Any benefits earned through the date that he transferred from union to non-union employee status which are vested are non-forfeitable. Once Mr. Foard transferred to a merit position, pension benefits became calculated based on the BSERP Plan, GCIU Plan and Tribune Company Pension Plan's (the "Tribune Plan") formulae as governed by the Plans' documents. However, as of his Separation Date, if the sum of the benefits provided under the BSERP, GCIU and Tribune Plans is less than the combined benefit he would have received under the BSERP and GCIU Plans if he had remained a union employee through the Separation Date, the Baltimore Sun will pay him an amount equal to the difference. This difference shall be payable only so long as the benefits are payable under all of the BSERP, GCIU and Tribune Plans.

2

6. *Non-Disclosure*. Mr. Foard will keep confidential all confidential and trade secret information (hereinafter "Confidential Information") he acquired about any of the Released Parties including, without limitation, the Company's finances, systems, operations, dealings, assets, capabilities, plans, strategies, personnel and compensation, pricing, customer lists, and mailing information. Mr. Foard will not disclose Confidential Information to anyone until, if ever, such information becomes public knowledge or as required in a formal legal proceeding.

7. *Confidentiality*. Except as may be required by law, neither Mr. Foard nor any person acting by, through, or in concert with him, shall directly or indirectly, publish, disseminate, disclose, or cause or permit to be published, disseminated, or disclosed to any individual or entity, any information relating to the existence or content of this Agreement or the circumstances and discussions that led up to it, including, without limitation, the fact or amount of payment provided herein. This paragraph shall not be construed, however, to prevent Mr. Foard from disclosing information to any attorney, accountant or tax advisor with whom he may consult for the purpose of obtaining professional advice or services, or to any governmental taxing authority, or to his spouse.

8. *Injunctive Relief and Attorneys' Fees*. Because monetary relief alone cannot adequately remedy a violation of Paragraphs 6 or 7, the Company shall be entitled to injunctive or other equitable relief to prevent any such violation and, if relief is pursued, which may include an injunction preventing Mr. Foard from working for a competitor for a reasonable period of time, the Company shall be entitled to recover its reasonable attorneys' fees and costs incurred should it prevail. The Company's resort to such relief will not waive any other rights it may have to damages or other relief it may have.

9. *Cooperation*. Mr. Foard will continue to reasonably cooperate with the Company in connection with any and all matters that have arisen or may arise out of events that occurred during his employment.

10. *Options*. Provided that the exercise of Mr. Foard's options otherwise complies with all the prerequisites, terms and conditions of the applicable stock option plan(s), he may exercise stock options through the earlier of (i) three (3) years from the Separation Date, except for options granted in 2002 or later, which may be exercised up to five (5) years from the Separation Date, and converted Times Mirror options which may be exercised within ten (10) years of the date of the original grant; or (ii) the date on which the leveraged acquisition of Tribune Company closes (the "Closing Date"). Any in-the-money options outstanding on the Closing Date shall be converted to their then cash value and such value shall be paid to Mr. Foard.

11. *Severability.* If any provision of this Agreement is deemed invalid or unenforceable for any reason by a court or other tribunal of competent jurisdiction, it shall not be stricken in its entirety or held void or unenforceable, but rather shall be deemed modified to make it enforceable to the maximum extent legally permissible, and the remaining provisions of this Agreement shall continue to be in full force and effect.

3

12. *Company Property*. On or before the Separation Date, Mr. Foard will return all equipment and other property in his possession belonging to the Company, including, without limitation, all cellular telephones, computers, pagers, keys, key cards, tangible proprietary information, documents, books, records, reports, contracts, lists, computer equipment, credit cards, telephone cards, computer disks (or other computer-generated files or data), software, or copies thereof, created on any medium, prepared or obtained by him or the Company in the course of or incident to his employment with the Company.

13. *No Re-Employment*. Mr. Foard will not apply for or otherwise seek employment or re-employment or contract with the Company or any of the other Released Parties for eighteen months. The Released Parties shall not be under any obligation to employ him, to re-employ him, or to consider him for future employment or re-employment.

14. *Non-Disparagement*. Mr. Foard will not in any manner whatsoever denigrate, disparage, or otherwise convey or cause to be conveyed an unfavorable impression of any of the Released Parties to a third party or parties. Nothing in this Paragraph, however, shall be construed to prevent Mr. Foard from providing truthful testimony or information to a court or governmental agency, including the EEOC or applicable state agency.

15. *Non-Admissions*. Nothing in this Agreement constitutes or shall be interpreted as an admission of liability or wrongdoing on the part of Mr. Foard or any of the Released Parties.

16. *Non-Use*. This Agreement may not be used as evidence in any subsequent proceeding of any kind (without the written consent of all other parties) except one which any party institutes alleging a breach of this Agreement.

17. *Knowing and Voluntary Execution*. Mr. Foard covenants that he is legally and mentally competent to enter into this Agreement, and that he is entering into this Agreement knowingly, voluntarily and with full knowledge of its significance and the rights he is waiving, that no other promises or representations whatsoever have been made to induce Mr. Foard to sign this Agreement and that he has not been coerced, threatened, or intimidated into signing the Agreement.

**EDWIN FOARD**                                    **THE BALTIMORE SUN COMPANY**

_Edwin M. Foard_                                   By _[signature]_

_Dec. 21_, 200_7_                                  _December 21_, 200_7_

4

## EXHIBIT A

### Waiver and General Release

(a) In consideration for the payments and benefits by the Company (as defined in the attached Agreement), excluding only claims which cannot be waived by law, Mr. Foard (as defined in the attached Agreement) releases the Company and its parents, subsidiaries, predecessors, successors, affiliates, officers, directors, agents, shareholders, attorneys, employees, employee benefit plans, plan administrators, insurers, assignees, fiduciaries, administrators, trustees, and legal representatives, both past and present (collectively, the "Released Parties"), from any and all claims, contracts, demands, damages, and other liabilities of whatever kind, whether now known or unknown, suspected or unsuspected, arising out of or in any way connected with his dealings with the Company, his employment with the Released Parties, the termination of his employment with the Company or advance notice of termination, or any other claim whatsoever to the date on which he signs this Waiver and General Release ("Waiver").

(b) This release includes, without limitation, any and all claims under the following statutes, as amended: Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act ("ADEA"), the Employee Retirement Income Security Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, Illinois Human Rights Act, the Cook County Human Rights Ordinance, the Chicago Human Rights Ordinance, the Maryland Fair Employment Practices Act, the Maryland Equal Pay for Equal Work Act, and any other federal, state or local human rights, civil rights, wage and hour, pension or labor law, rule and/or regulation, any public policy, contract or tort claim (regardless of whether of statutory or common law origin), or any other action against the Released Parties based upon any conduct or omission up to and including the date on which Mr. Foard signs this Waiver.

Nothing in this Agreement shall preclude Mr. Foard from exercising his rights to receive (i) any sums or benefits to be paid or provided under this Agreement, or (ii) any vested, accrued benefits to which he is (or becomes) otherwise entitled (collectively, the "Exempted Claims").

**MR. FOARD UNDERSTANDS AND AGREES THAT, OTHER THAN THE EXEMPTED CLAIMS AND CLAIMS THAT CANNOT BE WAIVED BY LAW, HE IS WAIVING AND RELEASING ANY AND ALL CLAIMS AGAINST THE RELEASED PARTIES (INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT) TO THE DATE OF THIS AGREEMENT IN EXCHANGE FOR CONSIDERATION TO WHICH HE IS NOT OTHERWISE ENTITLED.**

(c) Mr. Foard agrees that he waives any and all entitlement to relief, including, but not limited to, any monetary damages and equitable relief, with respect to any claim or cause of action released under this Paragraph (or any of its subparagraphs).

(d) Mr. Foard acknowledges that nothing in this Paragraph or any of its subparagraphs shall be construed to prevent him from filing a charge with, or participating in any investigation conducted by, the U.S. Equal Employment Opportunity Commission ("EEOC") or applicable state agency, or to prevent any challenge by him to the waiver and release of any claim under the ADEA.

(e) Mr. Foard agrees that his waiver and release of rights under this Waiver is knowing and voluntary and in compliance with the Older Workers Benefit Protection Act of 1990, and he covenants and agrees that:

1. he has been given 21 days in which to consider, sign and return this Waiver to the Company;
2. he is hereby being advised in writing to consult with an attorney concerning this Waiver to ensure he fully understands the significance of all of the terms and conditions of this Agreement; and
3. he will have 7 days from the date of signing to revoke this Waiver if he so desires. Any revocation must be in writing, signed by him and must be received by Kevin Scanlon, Vice President, Human Resources, 501 N. Calvert Street, Baltimore, MD 21278, fax (410) 783-2575, within the revocation period to be deemed effective.

**EDWIN FOARD**

*Edwin M. Foard III*

Jan. 14, 2008

**THE BALTIMORE SUN COMPANY**

By _[signature]_

1/14, 2008

6