# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al.,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**AFFIDAVIT OF MARC WILLIAM SALGANIK IN SUPPORT OF THE APPLICATION OF THE WASHINGTON-BALTIMORE NEWSPAPER GUILD PURSUANT TO 11 U.S.C. § 503(b)(3)(D) and (b)(4) FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION IN CONNECTION WITH ITS OBJECTION TO THE DEBTORS' MOTION TO IMPLEMENT A 2009 MANAGEMENT INCENTIVE PLAN AND TO PAY EARNED 2008 MANAGEMENT INCENTIVE PLAN AWARDS TO CERTAIN EXECUTIVES**

I, Marc William Salganik, being duly sworn, do depose and say as follows:

1. I am more than 18 years of age.

2. I submit this affidavit in support of the Application Of The Washington-Baltimore Newspaper Guild Pursuant To 11 U.S.C. § 503(b)(3)(D) And (b)(4) For Allowance Of Administrative Expenses Incurred In Making A Substantial Contribution In Connection With Its Objection To The Debtors' Motion To Implement A 2009 Management Incentive Plan And To Pay Earned 2008 Management Incentive Plan Awards To Certain Executives (the "Application").

3. I have reviewed the Application. To the best of my knowledge, information, and belief, the facts contained therein are true and correct.

4. I am a member of the Washington-Baltimore Newspaper Guild (the "WBNG"). The WBNG was a member of the Official Committee of Unsecured Creditors (the "Committee") in these chapter 11 cases. I was the WBNG representative who served on the Committee.

---

[1] The Debtors in these chapter 11 cases are identified at D.I. No. 1800, pg.1, footnote1.

5. After reviewing the 2009 Bonus Plan[2] (when initially presented to the Committee for consideration), the WBNG believed the Committee should object to the Bonus Motion. Based on the WBNG's understanding of the financial condition of the Debtors, the financial conditions and actions of the Debtors' peers, and the general condition of the Debtors' industry, the WBNG believed the 2009 Bonus Plan was an unnecessary and unjustified use of estate assets.

6. When other members of the Committee voted to support the Bonus Motion, the WBNG was forced to decide whether it would unilaterally oppose the Bonus Motion. The WBNG understood that, while the Committee might support the Bonus Motion, the WBNG was permitted to object to the Bonus Motion in its capacity as a creditor of the Debtors.

7. While the WBNG believed the Court should not approve the Bonus Motion, the WBNG was concerned about the impact such a unilateral objection could have on the WBNG's bargained relationship with the Debtors, its future relationship with the Debtors' management, and the WBNG's relationship with fellow members of the Committee.

8. Ultimately, the WBNG decided it was in the best interest of the Debtors' estates to object to the Bonus Motion. The WBNG believed that its actions were necessary to prevent the unwarranted expenditure of the Debtors' cash. The WBNG also believed that, ultimately, its efforts would prove an actual and demonstrable benefit to the Debtors' estates. Additionally, based on the advice of counsel, the WBNG believed that it could apply for reimbursement of its fees and expenses, and that the Court could, in fact, award the WBNG reimbursement if it found the WBNG's efforts constituted a substantial contribution to the Debtors' estates.

---

[2] Capitalized terms not defined herein have the meaning described in the Application.

9. I have reviewed the billing records attached to the Application. To the best of my knowledge, information and belief, the billing records are true and accurate copies of invoices presented for payment in connection with the objections to the Bonus Motion. The amount of $307,282.21 was paid to counsel and professionals in connection with its objections to the Bonus Motion.

10. I believe the time and expenses billed by the WBNG's counsel and professionals were reasonable, necessary and related to the extensive work and analysis of the WBNG reviewing, conducting discovery, and otherwise objecting to the Bonus Motion. Through the work of its attorneys and professionals, the WBNG was able to discover and expose crucial errors and omissions underpinning the evidence the Debtors' used to purportedly justify their record-breaking compensation plan. In the end, given the Debtors' operating cash flow for 2009, I believe the WBNG's objections saved the estate not less than $21.2 million in cash.

11. I continued to serve on the Committee until the Effective Date of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by The Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A. (the "Plan"). After the rulings of the Court relating to the Bonus Motion, the Debtors never again filed an application to pay bonuses based on OCF targets as low as those sought in 2009, or with cash outlays in line with the 2009 Bonus Plan, and the WBNG never objected to any other bonus plans adopted by the Debtors and submitted to the Court for approval.

12. I testified at the confirmation hearing in support of the Plan. The Plan did not contain any provision for bonuses payable for the Debtors' financial performance in 2009, including any compensation as set forth in the TMIP and KOB.

_____
Marc William Salganik

SWORN and SUBSCRIBED before me, this 5 day of February, 2013.

_____
Notary Public

TANYA M. BLAKELY
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires November 3, 2015

4