**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| ) | |
| **Tribune Company, et al.,** ) | Case No. 08-13141 (KJC) |
| ) | (Jointly Administered) |
| ) | |
| ) | RE: D.I. 12832 |
| Debtors. ) | Hearing Date: March 13, 2013 at 1:00 pm |
| | Response Deadline: March 5, 2013 @ 4:00 p.m. |

**MARTA WALLER'S (I) RESPONSE TO KTLA, INC.'S OBJECTION TO CLAIM NO. 4412 OF MARTA WALLER PURSUNT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003 AND 3007 AND (II) CROSS MOTION FOR LEAVE TO FILE AN AMENDED PROOF OF CLAIM AND FOR ABSTENTION PURSUANT TO 28 U.S.C. § 1334(c)**

Marta Waller ("Waller"), by and through undersigned counsel, hereby (I) responds to KTLA, Inc.'s Objection To Claim No. 4412 Of Marta Waller Pursuant To Sections 502(b) And 558 Of The Bankruptcy Code And Bankruptcy Rules 3001, 3003 And 3007 (the "Objection") (D.I. 824); and (II) moves for leave to file an amended proof of claim and abstention pursuant to 28 U.S.C. § 1334(c) (the "Response"), and, in support thereof, respectfully states as follows:

**JURISDICTION**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**I.    General Background**

2. On December 8, 2008 (the "Petition Date"), the above-captioned debtors (the "Debtors"), including KTLA, Inc. ("KTLA") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors have continued in

possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

## II. Waller's Claims

4. KTLA hired Waller in 1984 as a per diem writer in Los Angeles, California. Over the next 24 years, Waller worked her way up through the ranks to become a writer, producer, weekend reporter, full time reporter and television anchor.  During that time, Waller received multiple awards including Emmys and Golden Mike awards for her coverage of 9/11, the Mark Twain award for best webcasts, awards for her coverage of the Phil Spector murder trial, accolades for her coverage of the O.J. Simpson trial, amongst multiple other commendations as a KTLA employee and reporter.  Waller's employment with KTLA, Inc. continued until her involuntary termination on October 17, 2008.[1]

5. In connection with her work for KTLA, KTLA entered into an Agreement with Persistence Pays, Inc. ("PPI"), a company owned and controlled by Waller (the "Agreement"). Pursuant to the Agreement, which was prepared by KTLA, PPI agreed to provide Waller's services as

> a reporter, staff newsperson, commentator, correspondent, analyst, and in any like capacity, including anchoring on a fill-in basis as needed, on such programs as KTLA may determine in the field of news and public affairs programming, for broadcast over television, cable television, radio, the internet and other media as designated by KTLA.

---

[1] Notably, notwithstanding the Debtors' contention that Waller was not an employee of KTLA, Waller was offered severance pay by KTLA of thirteen weeks of union pay.

Waller was the sole owner and only employee of PPI. Waller's employment with KTLA continued until October 17, 2008 when her contract was not renewed.

6.  Waller's termination was in breach of an implied employment contract, in bad faith, and motivated, at least in part, by her age and sex in violation of state and federal anti-discrimination laws. As a result, Waller has asserted claims against KTLA, among other parties, for age discrimination, gender discrimination, tortious termination in violation of public policy under California law, and for violation of California Code section 12940(i).

7.  KTLA's unjust termination of Waller has caused her severe emotional and financial distress. She is the primary supporter of her husband and college age children. She has been compelled to deplete savings to pay the mortgage on the family home. She has been unable to obtain any comparable employment due to disabilities suffered while working for KTLA. In this time of financial turmoil, KTLA has cut her lose without consideration of the years of honest and devoted employment she had dedicated to KTLA.

8.  On June 10, 2009, Waller filed proof of claim 4412 in these cases asserting a general unsecured claim of $5 million against KTLA on account of her claims for age and gender discrimination (the "Claim").

### III. Claims Objection

9.  On December 11, 2012, The Debtors filed the Objection. By the Objection, the Debtors seek to disallow and expunge the Claim in full.

### RESPONSE

10. By the Objection, the Debtors seek the disallowance of the Claim based on the fact that (i) the Claim was asserted by the wrong party; and (ii) the Agreement expired by its terms prior to the Petition Date.

**IV.     Waller Was An Employee of KTLA Rather Than An Independent Contractor**

     **A.     Applicable Law**

11.     In California, the question of whether someone is an "independent contractor" or "employee" is determined by a number factors including the amount of control exercised by the employer.

12.     California Labor Code section 3351 defines an employee as "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed."  California Labor Code section 3353, on the other hand, defines an independent contractor as "any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished."

13.     Under California law, Waller must be considered an employee of KTLA. California case law lists factors to be considered in determining if there is an employer - employee relationship.  These factors include: whether the work was usually done under direction or without supervision; the skill required; who supplied the tools and place of work; length of time required; method of payment; whether the work was at the principal's regular place of business; and whether the parties believed that they had an employer - employee relationship.  See Perguica v. Industrial Acc. Comm., 29 Cal.2d 857, 860 (1947).  Waller's work was done under the direction of KTLA management, KTLA supplied the facilities and media equipment necessary for Waller's job, the work was done at KTLA's regular place of business, and the parties believed that they had an employer-employee relationship (based upon, among other things, KTLA's offer of severance to Waller upon her termination).  Examining these factors, it is evident that Waller must be considered an "employee" of KTLA.

14.    <u>Vernon v. State</u>, 116 Cal. App. 4th 114, 123-31 (2004), cited by KTLA, does not support KTLA's position. In <u>Vernon</u>, there was no employer - employee relationship found, as: the appellant / employee was not trained by the respondent State; the State had no apparent authority or discretion to discipline, promote, transfer, or terminate appellant; the appellant also was not covered by personnel policies that specifically govern State employees; the State did not set appellant's work schedule, determine the specific nature of the daily work he performed, or supervise the execution of his employment duties. The opposite was so with Waller in every respect.

### B.    Waller Was An Employee Of KTLA

15.    Waller was KTLA's employee. In 2000, PPI was included in the employment equation for tax purposes. Even if Waller was now paid by PPI, she was still was KTLA's employee. In California, a person can have more than one employer for purposes of FEHA. See <u>Matthieu v Norrell Corporation</u>, 115 Cal. App. 4th 1174 (2004). In <u>Matthieu</u>, the court stated:

> In the context of an individual who is employed by a temporary agency and assigned to work on the premises of the agency's client, we believe the purpose of FEHA to safeguard an employee's right to hold employment without experiencing discrimination is best served by applying the traditional labor law doctrine of "dual employers," holding both the agency and the client are employers and considering harassment by an employee of the client coworker harassment rather than harassment by a third party.

<u>Matthieu</u> at 1183, citing <u>Kowalski v. Shell Oil Co.</u>, 23 Cal.3d 168, 174 (1979) ("The possibility of dual employment is well recognized in the case law. 'Where an employer sends an employee to do work for another person, and both have the right to exercise certain powers of control over the employee, that employee may be held to have two employers--his original or "general" employer and a second, the "special" employer.'"); <u>Riley v. Southwest Marine, Inc.</u>, 203 Cal. App. 3d 1242, 1247-1248 (1988) ("when an employer lends an employee to another employer

and relinquishes to the borrowing employer all right of control over the employee's activities" a two-employer situation is created).

16. As noted above, Waller was employed by KTLA from 1984 until her wrongful termination in 2008. During this time, KTLA always treated Waller as its employee. It issued her an employee number which she retained until terminated. It directed all of her employment functions including wardrobe, schedules and topics to report on. Moreover, It required that she be subject the KTLA employee rules.

17. None of this changed in 2000, when KTLA prepared the Agreement for tax reasons. KTLA continued to employ Waller in the identical fashion, merely contracting with an entity, PPI for its only employee (who was the same KTLA employee), Waller.

18. KTLA argues that changing tax responsibility to PPI transformed its employee automatically to an independent contractor in all aspects of her employment. This is incorrect. If KTLA's argument is followed to a logical conclusion, KTLA would have employed a news reporter at its station who could refuse to be supervised on any level regarding what was to be reported to the public; a news reporter at its station who could wear whatever she wanted and disregard hair and makeup directives; a news reporter at its station who could refuse to take any assignments the station required while insisting that the station report on any item she preferred; a news reporter at its station who could use any news filming personal at any rate she wanted- at any time and at any place. If that scenario was plausible, then Waller would have been an independent contractor under California law. But that was not the case.

    **C.    The Fact That Waller, Through PPI, Had An Employment Contract With KTLA, Does Not Negate Her Claims Against KTLA**

19. California statutory law prohibits employers from discriminating against older workers (statutorily defined as workers over the age of 40) because of their age. "Specifically,

the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) makes it "an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action." (*Id.*, § 12941, subd. (a).)[1] The FEHA defines an "employer" as a person "regularly employing five or more persons." (*Id.*, § 12926, subd. (d).)" Stevenson v. Superior Court, 16 Cal. 4th 880, 883.

20. Waller's wrongful termination claim is not only premised on the claim that KTLA terminated her long standing renewable contract. Waller's claim is that KTLA terminated her, in part, in violation of FEHA (sex and age discrimination). The case cited by KTLA, Touchstone Television Productions v. Superior Court, 208 Cal. App. 4th 676 (2012), supports this argument. Although Touchstone involves a different fact pattern (an employee alleged her employment contract was not renewed because she had complained about a battery, not because of sex and age discrimination), Ms. Sheridan, the Desperate Housewife contract employee in that case, was allowed to file an amended complaint alleging a cause of action under California Labor Code section 6310, to allege that Touchstone retaliated against her for complaining about unsafe working conditions by deciding not to exercise its option to renew her contract. Id. at 678.

## V. The Objection Elevates Form Over Substance

21. Although the counter party to the Agreement was PPI, the substance of the Agreement and the fact that Waller was the sole shareholder and only employee of PPI support that Waller is a proper party to assert the Claim. The Agreement itself plainly indicates that it is for Waller's services as a media personality. No other individual radio or television personalities are the subject of the Agreement. As a result, the Agreement is a contract for Waller's services.

22. The Debtors' position that Waller is not the counterparty to the Agreement, while technically correct, elevates form over substance. While PPI is technically the counterparty to

the Agreement, Waller is the sole shareholder and only employee of PPI. In fact, Waller is the actual signatory to the Agreement. Moreover, Waller is the only media personality that is the subject of the Agreement. Consequently, the Court should disregard the formality posed by the Debtors and allow the Claim as filed.[2]

## VI. Waller Has Sufficiently Pled Claims For Discrimination and Violations of California Employment Law

23. In California, a complaint will be upheld if it provides defendant "with notice of the issues sufficient to enable preparation of a defense." Doe v. City of Los Angeles, 42 Cal.4th 531, 549-550 (2007).

24. KTLA claims that Waller's proposed complaint has not properly pled causes of action. As support for this claim, it steers the Court in the wrong direction by citing Mixon v. Fair Employment & Housing Com.,192 Cal.App.3d 1306 (1987). However, Mixon is not an age discrimination case. Rather, it is a racial discrimination case dealing with a petition for writ of mandate to overturn a determination of the Fair Employment and Housing Commission that an employee of a union was not discharged for racially discriminatory reasons. Based on these facts, Mixon is not on point.

25. KTLA likewise also erroneously relies Guz v. Betche Nat. Inc., 24 Cal.4th 317 (2000). Guz presented questions about the law governing claims of wrongful discharge from employment as it applies to an employer's Motion for Summary Judgment where the standard is entirely different.

26. Waller has sufficiently pled the facts as she knows them at this stage of the pleadings. Proof of discriminatory intent often depends on inferences rather than direct evidence. See Spitzer v. Good Guys, Inc., 80 Cal.App.4th 1376, 1386 (2000). "Many

---

2 PPI was created by Waller at the behest of KTLA.

employment cases present issues of intent, and motive, and hostile working environment, issues not determinable on paper." Nazir v United Airlines, Inc., 178 Cal. App. 4th 243, 331 (2009). One of those issues is pretext. "Pretext may ... be inferred from the timing of the company's termination decision, by the identity of the person making the decision, and by the terminated employee's job performance before termination." Flait v. North American Watch Corp. 3 Cal.App.4th 467, 479 (1992). At this stage, Waller has adequately pled claims for discrimination and violations of California employment law.

### CROSS MOTION FOR LEAVE TO FILE AMNEDED PROOF OF CLAIM AND FOR ABSTENTION

27. Should the Court agree with the Debtors' position that the Claim must be asserted by PPI rather than Waller, Waller seeks leave to amend the Claim to identify PPI as a claimant. In addition, Waller requests that the Court abstain from adjudicating the Claim.

**I.      The Court Should Granted Waller Leave to Amend the Claim.**

28. Federal Rule of Bankruptcy Procedure 7015, which incorporates Federal Rule of Civil Procedure 15, has been used by courts to determine whether proofs of claim can be amended after the claims bar date. See In re marchFirst, Inc., 431 B.R. 436, 443 (Bankr. N.D. Ill. 2010; In re MK Lombard Group I, Ltd., 301 B.R. 812, 815 Bankr. E.D. Pa. 2003). "Amendments to timely proofs of claim have been liberally allowed where the amendment would not work any prejudice or be otherwise inequitable." In re MK Lombard Group I, Ltd., 301 B.R. at 815. Moreover, leave should be "freely given when justice so requires." Gens v. Resolution Trust Corp., 112 F.3d 569, 575 (1st Cir. 1997). A claim amendment should be permitted if the amendment does not substantively change the claim. In re Bender Shipbuilding and Repair Co., Inc., no. 09-12616, 2012 Bankr. LEXIS 4298 (Bankr. S.D. Ala. September 17, 2012).

29. Courts have recognized that merely amending a proof of claim to substitute a party does not result in a substantive change to the claim and, consequently, is a permissible amendment. Bender Shipbuilding and Repair Co., 2012 Bankr. LEXIS 4298; Gens, 112 F.3d at 575. Moreover, as evidenced by the Objection and the allegations contained therein, the Debtors were aware that PPI is the legal counterparty to the Agreement. In addition to being aware of the proper legal counterparty to the Claim, the Debtors have long been aware of the basis of the Claim. As a result, and given that the Debtors will have a full opportunity to contest the merits of the Claim, the Debtors cannot complain of prejudice in granting leave to amend the Claim in order to identify the proper counter party to the Agreement.

## II.    The Court Should Abstain From Adjudicating the Claim.

30. Pursuant to 28 U.S.C. § 1334(c)(I), the Court should abstain from hearing a matter arising under the Bankruptcy Code or arising in or related to a bankruptcy case, in "the interest of comity with state courts or respect for State law." Courts generally apply a twelve factor test when determining whether abstention is warranted. See In re LaRoche Indus., 312 B.R. 249, 253-254 (Bankr. D. Del. 2004). Of the twelve factors, the following three factors are considered more substantial than the others: 1) effect on administration of the estate; 2) predominance of state law issues; and 3) whether the claim is "core" or "non-core." See Fruit of the Loom, 407 B.R. 593, 602 (Bankr. D. Del. 2009); In re Holiday RV Stores, Inc., 362 B.R. 126, 130-31 (D. Del. 2007).

31. **Effect on administration of the estate**. Waller is entitled to a jury trial on the claim. To the extent this Court did not abstain from adjudicating the Claim, Waller would be entitled to have her claims heard before the District Court of Delaware. As a result, there would be little, if any, effect on the prompt resolution of claims against the Debtors' estates and no impact on the administration of the estates.

32.     **Predominance of state law issues**.  Waller has asserted only claims under California law.  Specifically, Waller has asserted claims of age discrimination, gender discrimination, and violations of employment laws – all under California law.  Abstention is, therefore, appropriate.  See Fruit of the Loom, 407 B.R. at 600, 602; In re Holiday RV Stores, Inc., 362 B.R. 126, 130-31 (D. Del. 2007).

33.     **The Claim is substantively non-core**.  A claim is "core" if it "invokes a substantive right provided by the [Bankruptcy Code] or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."  Torkelson v. Maggio (In re Guild & Gallery Plus, Inc.), 72 F.3d 1171, 1178 (3d Cir. 1996).  If the claim does not invoke a substantive right provided by the [Bankruptcy Code] or if it is not a proceeding that could only arise in the context of a bankruptcy case, then it is "non-core."  Id.  Because the Claim neither invokes a substantive right under the Bankruptcy Code nor could arise only in the context of a bankruptcy case, the claims are non-core.

34.     An analysis of the following remaining abstention factors also weighs heavily in favor of abstention:  1) difficult nature of applicable state law; 2) jurisdictional basis other than 28 U.S.C. § 1334; 3) lack of relatedness between claims and the Debtors' bankruptcy; 4) feasibility of severing stte law claims from "core" bankruptcy matters; 5) burden on Court's docket; 6) the existence of the right to a jury trial; and 7) the presence of non-debtor parties.

35.     Considering all of the factors, permissive abstention is plainly warranted in this case.

## RESERVATION OF RIGHTS

36. Waller expressly reserves the right to amend and/or supplement this Response in response to any reply papers filed by the Trustee or any other party, or in the event of other developments in these cases.

## CONCLUSION

WHEREFORE, Marta Waller respectfully request that the Court (a) overrule the Objection, (b) allow the Claim in the full amount asserted and (c) provide such other and further relief as the Court deems just and appropriate.

Date: February 7, 2013

GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael Busenkell*
Michael Busenkell (DE 3933)
913 N. Market Street, 10th Floor
Wilmington, DE 19801
(302) 425-5800
(302) 425-5814 Facsimile
mbusenkell@gsbblaw.com

Counsel for Marta Waller

**CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I caused true and correct copies of the foregoing document to be served via first-class mail, postage prepaid upon the following:

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Normal L. Pernick
J. Kate Stickles
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

| | |
|---|---|
| Sidley Austin LLP | Sidley Austin LLP |
| James F. Conlan | Max C. Fischer |
| Kenneth P. Kansa | Francis S. Lam |
| One South Dearborn Street | 555 West Fifth Street |
| Chicago, IL 60603 | Los Angeles, CA 90013 |

Date: February 7, 2013            */s/ Michael Busenkell*
                                                       Michael Busenkell (DE 3933)