IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: March 13, 2013 at 1:00 p.m.<br>Objection Deadline: March 6, 2013 at 4:00 p.m. |

**MOTION FOR AN ORDER AUTHORIZING THE REORGANIZED DEBTORS TO (I) LIQUIDATE AND ALLOW THE CLAIMS OF CERTAIN RETIREES IN ACCORDANCE WITH THE FORMULAS AND PRINCIPLES SET FORTH IN THE RETIREE CLAIMANT SETTLEMENT AGREEMENT INCORPORATED INTO THE CONFIRMED PLAN AND (II) OTHERWISE ADJUST SUCH CLAIMS AS NECESSARY TO CONFORM TO THE DEBTORS' RECORDS**

> Individuals receiving this Motion should locate their name on **Schedule 1** attached hereto to learn which of the lettered exhibits, **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, **Exhibit F**, **Exhibit G**, or **Exhibit H**, contains the grounds for the adjustment pertaining to their claim amount and the relief being sought by the Debtors.

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

The reorganized debtors in the above-captioned chapter 11 cases (each, a "Reorganized Debtor" and, collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby move this Court (the "Motion") for entry of an order (i) authorizing the Reorganized Debtors to (a) liquidate and allow eighty-six (86) retirement-related claims (the "Similar Retiree Claims") in accordance with the formulas and principles that were used to liquidate and allow the similarly situated retirement-related claims set forth in the retiree claimant settlement agreement (the "Retiree Settlement Agreement") attached as Exhibit 5.15.4 to the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 12072] (the "Plan") and incorporated therein by reference and (b) reduce, fix, reassign, change the classification of and/or priority of, and disallow portions of the Similar Retiree Claims as further specified herein; (ii) authorizing Epiq Bankruptcy Solutions, LLC (the "Claims Agent") to modify each of the Similar Retiree Claims on the official claims register maintained in these chapter 11 cases (the "Claims Register") in accordance with the relief requested herein; and (iii) waiving the requirements of Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 1009-2 and 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the extent such rules are not satisfied herein. The Similar Retiree Claims and the Reorganized Debtors' proposed modifications to such claims are set forth on Exhibit A through Exhibit H attached hereto.[2] In support of this Motion, the Reorganized Debtors (i) submit the declaration of Brian Whittman, Managing Director at Alvarez & Marsal North America, LLC,

---

[2] Certain of the Debtors listed on Exhibit A through Exhibit H have undertaken Restructuring Transactions (as described in Plan), pursuant to which they have been merged with and into direct or indirect wholly-owned subsidiaries of Tribune Company or have converted from corporations to limited liability companies.

(the "Whittman Declaration"), attached hereto as Exhibit I and (ii) respectfully represent as follows:[3]

## PRELIMINARY STATEMENT

1. The Reorganized Debtors seek the relief requested herein in order to provide all holders of similar, retirement-related claims against the Debtors with uniform treatment under the confirmed Plan. Pursuant to the terms of the Plan, certain claims related to former employment with the Debtors or their predecessors (the "Initial Retiree Claims") were allowed on the Effective Date in accordance with the formulas and principles set forth in the Retiree Settlement Agreement attached as Exhibit 5.15.4 to the Plan. The Initial Retiree Claims were comprised principally of non-qualified pension claims and deferred compensation claims.

2. As with the Initial Retiree Claims, the Similar Retiree Claims listed in Exhibit A through Exhibit H hereto generally relate to the claimants' former employment with the Debtors or their predecessors, and are comprised principally of non-qualified pension claims and deferred compensation claims.[4] However, the holders of the Similar Retiree Claims are not parties to the Retiree Settlement Agreement. As a result, the Similar Retiree Claims were filed or scheduled in amounts that were calculated based on formulas and principles that are inconsistent with those applied to the Initial Retiree Claims under the Retiree Settlement Agreement.

3. In connection with obtaining confirmation of the Plan, the Debtors made clear their intention to liquidate similar, retirement-related claims consistently.[5] Due to the

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[4] One (1) of the Similar Retiree Claims is a retirement-related claim in respect of a now-terminated pension plan held by a current employee of the Reorganized Debtors.

[5] See Specific Disclosure Statement Relating to First Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 7135] ("With respect to claims that are similar in nature to the [Initial] Retiree Claims but not a part of the [Retiree Settlement Agreement] ('Similar Claims'), the Debtors intend to liquidate such Similar Claims

similar nature of the Initial Retiree Claims and the Similar Retiree Claims, and consistent with the Debtors' prior representations to this Court and parties-in-interest, the Reorganized Debtors seek entry of an order authorizing them to liquidate and allow the Similar Retiree Claims pursuant to the same formulas and principles that were applied to the Initial Retiree Claims under the Retiree Settlement Agreement, as well as to make other necessary adjustments to conform the Similar Retiree Claims to the Debtors' records. As detailed in Exhibit A through Exhibit H attached hereto, if granted, the relief requested herein will result in an increased claim amount for the majority of the Similar Retiree Claims and a reduction of claim amount, and/or change in priority or status, and/or liquidation of unliquidated claim amounts for others.

## STATUS OF THE CASE AND JURISDICTION

4.  On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). An additional Debtor, Tribune CNLBC, LLC,[6] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.

5.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.  On July 23, 2012, the Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 12074].

---

consistent with the formulas and principles applicable to the Retiree Claims under [Retiree Settlement Agreement] . . . In order to achieve this result, the Debtors will engage in negotiations with holders of Similar Claims and, as necessary, employ the procedures for objecting to claims described in this Specific Disclosure Statement and the Debtor/Committee/Lender Plan.").

[6] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

7.  The Effective Date of the Plan occurred on December 31, 2012.

8.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, which jurisdiction was retained pursuant to Article IX of the Confirmation Order and Section 12.1 of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 1009.

## RELEVANT BACKGROUND

### A. The Retiree Settlement Agreement[7]

9.  In June 2009, approximately 195 former employees of the Debtors (the "Initial Retiree Claimants"), collectively represented by Teitelbaum and Baskin, LLP, filed the Initial Retiree Claims. Although the Debtors' Schedules of Assets and Liabilities (as amended, the "Schedules") listed prepetition amounts due to the Initial Retiree Claimants in an aggregate amount of approximately $82 million,[8] the Initial Retiree Claims were asserted in an aggregate amount of approximately $113 million.

10. The Debtors and the Initial Retiree Claimants had several disputes regarding the amount of the Initial Retiree Claims, including: (i) the discount rates and mortality tables most appropriately applied to those Initial Retiree Claims that are based in whole or in part on future annuity payments; (ii) whether Initial Retiree Claims for deferred compensation are entitled to interest in the amount of approximately $1.74 million, based upon a contract interest rate of 8.4% for the prepetition period of the 2008 calendar year; and (iii) with respect to some of

---

[7]  The description of the terms of the Retiree Settlement Agreement contained herein are summary in nature, and are qualified in their entirety by the Retiree Settlement Agreement, attached to the Plan as Exhibit 5.15.4.

[8]  On March 23, 2009, the Debtors filed their Schedules [Docket Nos. 567-789], which were subsequently amended on April 13, 2009 [Docket Nos. 894-957], June 12, 2009 [Docket Nos. 1343-1453], March 2, 2010 [Docket Nos. 3548-3599], May 14, 2010 [Docket Nos. 4388], and January 28, 2011 [Docket Nos. 7661-7671].

the Initial Retiree Claims, the factual basis for such claims, including whether the claimant was entitled to annuity or other benefit payments, the type of annuity or other benefit, and the specific amounts owed.

11.     On May 18, 2010, following good faith negotiations, the Debtors and the Initial Retiree Claimants entered into the Retiree Settlement Agreement. The Retiree Settlement Agreement fixed the Allowed amount of each Initial Retiree Claim. Specifically, as set forth in paragraph 3 of the Retiree Settlement Agreement, to the extent any Initial Retiree Claim was a claim for future annuity payments, the Allowed amount of such claim was calculated pursuant to a formula specified in the Retiree Settlement Agreement for determining the present value of future annuity payments and applying certain mortality factors.[9]

12.     Importantly, the Retiree Settlement Agreement also provides that, with respect to claims that are similar in nature to the Initial Retiree Claims but not a part of the Retiree Settlement Agreement, the Debtors intend, in the interests of fairness and equity, to liquidate such similar claims consistent with the formulas and principles applicable to the Initial Retiree Claims set forth in paragraph 3 of the Retiree Settlement Agreement (the "<u>Retiree Claims Calculation</u>").

---

[9] The formula utilizes applicable interest rate and applicable mortality table required to be used under § 417(e) of the Internal Revenue Code of 1986, as amended, to calculate lump sum distributions from tax-qualified defined benefit plans for 2008 plan year payments, with (i) applicable interest rate for 2008 plan year payments determined as of January 1, 2008 with a two-month lookback to the November 2007 segment rates of 4.60%, 4.82% and 4.91%, and (ii) the RP-2000 healthy mortality table (weighted 50% male and 50% female), using scale AA for (x) seven (7) years from the valuation date for annuitants and (y) fifteen (15) years from the valuation date for non-annuitants. In addition, a further amount equal to 5.165% of the present value of the future annuity payments was added to the present value calculation in the Allowed amount of the Initial Retiree Claims involving future annuity payments.

13.     The Plan incorporates by reference the terms of the Retiree Settlement Agreement.[10] The Confirmation Order specifically authorizes the Debtors to implement the terms of the Retiree Settlement Agreement.[11]

### B.     The Similar Retiree Claims

14.     Following the execution of the Retiree Settlement Agreement, and since the entry of the Confirmation Order, the Debtors and the Reorganized Debtors have devoted considerable time and resources to reviewing the Debtors' Schedules and the claims filed in these chapter 11 cases to determine which retirement-related claims are similar to the Initial Retiree Claims. Specifically, this review focused on identifying filed claims and/or scheduled amounts arising under the plans and agreements that were the subject of the Initial Retiree Claims, including (i) The Times Mirror Deferred Compensation Plan for Executives effective as of April 1, 1994 and amended effective as of January 1, 2005; (ii) The Times Mirror Company Supplemental Retirement Plan for Certain Times Mirror Officers as of January 1, 1993; (iii) The Times Mirror Company Excess Pension Plan as of January 1, 1994; (iv) Times Mirror Company Pension Plan for Directors as amended and restated on March 5, 1987; (v) Tribune Company Supplemental Defined Contribution Plan; (vi) certain deferred compensation plans for non-employee directors of The Times Mirror Company; and (vii) various individual agreements. As a result of these efforts, and using these criteria, the Reorganized Debtors identified the Similar Retiree Claims listed in <u>Exhibit A</u> through <u>Exhibit H</u> as claims that are similar in nature to the Initial Retiree Claims.[12]

---

[10]  <u>See</u> Plan § 5.15.4.

[11]  Confirmation Order at page 22.

[12]  The Debtors also identified the claims held by six (6) additional claimants (the "<u>Additional Retiree Claimants</u>") who retained Teitelbaum and Baskin, LLP following execution of the Retiree Claim Settlement as claims that were similar in nature to the Initial Retiree Claims. On July 3, 2012, in accordance with the Order Granting the Debtors Authority to Settle Disputed Claims [Docket No. 2657] (the "<u>Claims Settlement Order</u>"), the Debtors

15. The Similar Retiree Claims are asserted in an aggregate face amount of $9,227,503.05 (plus certain undetermined amounts).[13] Forty-eight (48) of the Similar Retiree Claims are asserted pursuant to proofs of claim filed in these chapter 11 cases (the "Filed Similar Retiree Claims"). Six (6) of the Filed Similar Retiree Claims were filed after applicable bar date.[14] Thirty-eight (38) of the Similar Retiree Claims are asserted in the amount set forth in the Schedules (the "Scheduled Similar Retiree Claims"). Thirty-two (32) of the Scheduled Similar Retiree Claims were scheduled in an amount that was designated as unliquidated.[15]

## RELIEF REQUESTED

16. The Reorganized Debtors believe that the allowance of all Similar Retiree Claims in accordance the formulas and principles set forth in the Retiree Settlement Agreement is necessary to comply with the underlying objectives of the confirmed Plan. Accordingly, by this Motion, the Reorganized Debtors seek entry of an Order, pursuant to sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 1009 authorizing the Reorganized Debtors to apply the Retiree Claims Calculation to the Similar Retiree Claims and to change the classification of, asserted liable Debtor for, and/or change the priority of certain such claims, as specified herein. Additionally, as discussed in paragraphs 24-28, infra, to the extent applicable, the Reorganized

---

circulated among certain parties-in-interest a proposed stipulation to be entered by and among the Debtors and the Additional Retiree Claimants (the "Additional Retiree Stipulation") if no objections were received to the stipulation within the ten (10) business day objection period set forth in the Claims Settlement Order. No such objections were received. Accordingly, on July 23, 2012, the Debtors entered the Additional Retiree Stipulation, providing for, among other things, the claims of the Additional Retiree Claimants to be liquidated in accordance with the Retiree Claims Calculation.

[13] The Schedules, which were superseded by these proofs of claim, include an estimate for the undetermined portions of the claims in an aggregate amount of $1,384,734.62.

[14] See Order Pursuant to Sections 501, 502, and 1111 (a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3), and Local Rule 2002-L(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Docket No. 813].

[15] The Scheduled Retiree Claims were scheduled in a specified amount that was also designated as "unliquidated," solely because the claims included certain annuity amounts that were subject to an actuarial determination.

Debtors seek a waiver of certain provisions of Bankruptcy Rule 3007 and Local Rules 1009-2 and 3007-1.

    17.    Because of the numerous ways which the Similar Retiree Claims have been filed or scheduled, the Reorganized Debtors have attached a series of exhibits specifying the relief requested among groups of Similar Retiree Claims. The Reorganized Debtors request entry of an Order, granting the following relief with respect to the proofs of claim asserted in these chapter 11 cases (the "Proofs of Claim") and the Schedules:

    a)    adjusting the amount of each of the sixty-three (63) Similar Retiree Claims identified on Exhibit A (the "Modified Amount Claims") and asserted in the aggregate face amount of $6,419,960.86 (including certain undetermined amounts), to the aggregate amount of $8,918,348.70, and to the individual claim amounts listed under the column heading "Modified Amount" on Exhibit A, which reflect re-calculation of such claims in accordance with the Retiree Settlement Calculation;

    b)    (i) adjusting the amount of each of six (6) Similar Retiree Claims identified on Exhibit B (the "Modified Amount, Modified Priority Claims") and asserted in the aggregate face amount of $712,150.91, to the aggregate amount of $1,059,201.21, and to the individual claim amounts listed under the column heading "Modified Amount" on Exhibit B, which reflect re-calculation of such claims in accordance with the Retiree Settlement Calculation; and (ii) modifying the priority, in whole or in part, of each of such claims from "priority" to "unsecured" as indicated under the column heading "Modified Priority Status" on Exhibit B, to reflect the claim's accurate priority status;

    c)    (i) adjusting the amount of each of the two (2) Similar Retiree Claims identified on Exhibit C (the "Modified Amount, Modified Priority, Modified Debtor Claims") and asserted in the aggregate face amount of $1,374.58, to the aggregate amount of $130,590.54, and to the individual claim amounts listed under the column heading "Modified Amount" on Exhibit C, which reflect re-calculation of such claims in accordance with the Retiree Settlement Calculation; and (ii) modifying the priority, in whole or in part, of each of such claims from "priority" to "unsecured" as indicated under the column heading "Modified Priority Status" on Exhibit C, to reflect the claims' accurate priority status; and (iii) reassigning each of such claims to the Debtor listed under the column heading "Modified Debtor" on Exhibit C;

d)     (i) adjusting the amount of each of ten (10) Similar Retiree Claims identified on Exhibit D (the "Modified Amount, Modified Debtor Claims") and asserted in the aggregate face amount of $1,494,998.11 (including certain undetermined amounts), to the aggregate amount of $1,592,382.75, and to the individual claim amounts listed under the column heading "Modified Amount" on Exhibit D, which reflect re-calculation of such claims in accordance with the Retiree Settlement Calculation; and (ii) reassigning such claims to the Debtor listed under the column heading "Modified Debtor" on Exhibit D;

e)     (i) adjusting the amount of the one (1) Similar Retiree Claim identified on Exhibit E (the "Modified Amount, Reclassified Claim") and asserted in the face amount of $218,750.25, to the amount of $199,974.99, listed under the column heading "Modified Amount" on Exhibit E, which reflects re-calculation of such claim in accordance with the Retiree Settlement Calculation; and (ii) reclassifying such claim from "secured" to "unsecured" as indicated under the column heading "Modified Class" on Exhibit E;

f)     (i) adjusting the amount of the one (1) Similar Retiree Claim identified on Exhibit F (the "Modified Amount, Reclassified, Modified Debtor Claim") and asserted in the face amount of $143,055.00, to the aggregate amount of $70,964.29, listed under the column heading "Modified Amount" on Exhibit F, which reflects re-calculation of such claim in accordance with the Retiree Settlement Calculation; (ii) reclassifying such claim from "secured" to "unsecured" as indicated under the column heading "Modified Class" on Exhibit F; and (iii) reassigning such claim to the Debtor listed under the column heading "Modified Debtor" on Exhibit F;

g)     (i) adjusting the amount of the one (1) Similar Retiree Claim identified on Exhibit G (the "Modified Amount, Reclassified, Modified Debtor, Modified Priority Claim") and asserted in the face amount of $236,568.00, to the amount of $148,364.68, listed under the column heading "Modified Amount" on Exhibit G, which reflects re-calculation of such claim in accordance with the Retiree Settlement Calculation; (ii) reclassifying such claim from "secured" to "unsecured" as indicated under the column heading "Modified Class" on Exhibit G; (iii) reassigning such claim to the Debtor listed under the column heading "Modified Debtor" on Exhibit G; and (iv) modifying the priority, in whole or in part, of such claim from "priority" to "unsecured" as indicated under the column heading "Modified Priority Status" on Exhibit G;

h)     modifying the priority only of each of two (2) Similar Retiree Claims identified on Exhibit H (the "Modified Priority Claims") and asserted in the aggregate face amount of $645.34 from "priority" to "unsecured" as indicated under the column heading "Modified Priority Status" on Exhibit H, to reflect the claims' accurate priority status;

i)     in each case, disallowing the portions of the Similar Retiree Claims in excess of the allowed amounts as set forth on the applicable Exhibits; and

j)     authorizing the Claims Agent to modify each of the Similar Retiree Claims on the Claims Register in accordance with the proposed Order.

18. As noted above, the Similar Retiree Claims are asserted in the aggregate face amount of $9,227,503.05 (plus certain undetermined amounts), of which $5,473.672.25 (plus certain undetermined amounts) is asserted against Tribune and $3,753,830.30 (plus certain undetermined amounts) is asserted against the Filed Subsidiary Debtors. If the relief requested herein is granted, the Similar Retiree Claims will be modified, liquidated and allowed in the aggregate amount of $12,120,472.90, of which $4,389,421.25 will be allowed against Tribune and $7,731,051.65 will be allowed against the Filed Subsidiary Debtors.

## BASIS FOR RELIEF REQUESTED

19. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). While the Reorganized Debtors believe that section 105(a) of the Bankruptcy Code provides the requisite basis for the relief requested in this Motion, in an abundance of caution, the Reorganized Debtors further submit that, with respect to the Filed Similar Retiree Claims, the relief requested herein is also consistent with section 502(b) of the Bankruptcy Code. Section 502(b) of the Bankruptcy Code provides, in relevant part, as follows with respect to proofs of claim that are the subject of an objection:

> . . . if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b).

20.   In addition, while the Reorganized Debtors are not seeking authority herein to modify the Schedules, the relief requested herein with respect to the Scheduled Similar Retiree Claims is consistent with Bankruptcy Rule 1009(a), which provides that a debtor's schedules "may be amended by the debtor as a matter of course at any time before the case is closed" by giving notice of the amendment to the Trustee and any entity affected thereby. Bankruptcy Rule 1009(a).[16]

21.   The relief requested herein is necessary to implement the underlying objective of the Plan to treat the holders of similar, retirement-related claims against the Debtors consistently.[17] As noted above, the Similar Retiree Claims are similar in nature to the Initial Retiree Claims that were liquidated and Allowed pursuant to the Retiree Settlement Agreement. However, absent approval of the relief requested herein, the Similar Retiree Claims will be liquidated in a manner that is inconsistent with the Retiree Settlement Agreement, and that will likely result in the majority of the Similar Retiree Claims being Allowed in amounts that are proportionally lower than those provided to the holders of similar claims under the Retiree Settlement Agreement. Indeed, a failure to modify the Similar Retiree Claims as set forth herein and on Exhibit A through Exhibit H would result in each claimant receiving a recovery against the relevant Debtor's estate that is either (i) in many instances insufficient, as it is lower than the

---

[16] Section 1009(a) authorizes debtors to amend their schedules without the need to file a motion. However, because the Reorganized Debtors seek to implement a uniform process for liquidating all similar, retirement-related claims, instead of modifying the Schedules to reflect the adjustments set forth on Exhibit A through Exhibit H hereto, the Reorganized Debtors are seeking the relief requested herein with respect to all Similar Retiree Claims, including those that appear on the Schedules.

[17] The Debtors described this underlying objective in the Debtors' Response Brief Regarding Allocation Disputes [Docket No. 11066], in which the Debtors expressly stated that a prior version of the Plan [Docket No. 10958] (the "Third Amended Plan") was "designed to permit retirees who are not parties to the Retiree Settlement Agreement to have their claims allowed in the same quantifiable way as the [holders of Initial Retiree Claims] who are parties to the Retiree Settlement Agreement. . ."). The Plan provides the same treatment to the holders of Initial Retiree Claims as that provided to such holders under the Third Amended Plan.

amount the claimant would be entitled to after application of the Retiree Claims Calculation or (ii) unwarranted, as it is higher than the amount the claimant would be entitled to after application of the Retiree Claims Calculation, which would be to the detriment of other creditors in these chapter 11 cases, and therefore inconsistent with the objective of the Plan to treat similarly situated claim holders consistently. The relief requested herein is designed to avoid this inequitable result, as well as to minimize the cost and delay that would be associated with liquidating the Similar Retiree Claims through an individualized claim adjudication process.

22.     The relief requested herein is also necessary to conform the Similar Retiree Claims to the Debtors' records. Specifically, the Debtors believe that the amount of each Similar Retiree Claim, as well as the applicable priority and Debtor for each such claim, should be modified as specified in <u>Exhibit A</u> through <u>Exhibit H</u> hereto.

### **WAIVER OF BANKRUPTCY RULE 3007 AND LOCAL RULES 1009-2 and 3007-1**

23.     Because the relief requested herein seeks to adjust the amount of certain claims, the Reorganized Debtors request that, to the extent applicable, but not otherwise satisfied herein, the Court waive the claims objection and schedule amendment requirements set forth in Bankruptcy Rule 3007 and Local Rules 1009-2 and 3007-1.

24.     Bankruptcy Rule 3007(d) allows a debtor to file an omnibus objection to claims subject to, among other things, the requirements provided in Bankruptcy Rule 3007(e). <u>See</u> Bankruptcy Rule 3007(d). Bankruptcy Rule 3007(e) requires an omnibus objection to:

- a) state in a conspicuous place that claimants receiving the objection should locate their names and claims in the objection;
- b) list claimants alphabetically, provide a cross-reference to claim numbers, and, if appropriate, list claimants by category of claims;
- c) state the grounds of the objection to each claim and provide a cross-reference to the pages in the omnibus objection pertinent to the stated grounds;

  d)  state in the title the identity of the objector and the grounds for the objections;

  e)  be numbered consecutively with other omnibus objections filed by the same objector; and

  f)  contain objections to no more than 100 claims.

Bankruptcy Rule 3007(e). Additionally, Local Rule 3007-1(c) provides that "[i]f a claim has been scheduled on the debtor's schedules of liabilities and is not listed as disputed, contingent or unliquidated and a proof of claim has not been filed under Fed. R. Bankr. P. 3003, 3004 and/or 3005, the debtor may not object to the claim. Instead, the debtor must amend the schedules under Fed. R. Bankr. P. 1009 and provide notice as required by Local Rule 1009-2."[18] Local Rule 3007-1(c). Local Rule 3007(e)(i)(E) requires an omnibus objection to claims to "include a statement by the objector or the objector's counsel that the [o]bjection complies with [Local Rule 3007-1]." Local Rule 3007-1(e)(i)(E).

  25. While the relief requested herein does not specifically comply with Bankruptcy Rule 3007 and Local Rules 1009-2 and 3007-1 in all respects, the Reorganized Debtors believe that, based on the relevant circumstances, a waiver of such rules is warranted. The uniform procedures proposed herein for liquidating and allowing the Similar Retiree Claims are necessary to minimize the administrative burden on the Debtors' estates and the Court, and to minimize confusion to the holders of the Similar Retiree Claims.

  26. The relief requested herein is consistent with the objectives of Bankruptcy Rule 3007 and Local Rule 3007-1, which are intended to protect the due process rights of claimants while allowing for efficient claims administration procedures. In accordance with these

---

[18] Local Rule 1009-2 provides that "[w]henever the debtor or trustee in a chapter 11 case amends the debtor's schedules to change the amount, nature, classification or characterization of a debt owing to a creditor, the debtor or trustee shall, within fourteen (14) days, transmit notice of the amendment to the creditor and notice of the creditor's right to file a proof of claim by the later of the bar date (if any) or twenty-one (21) days from the date of the notice." Local Rule 1009-2.

objectives, the Reorganized Debtors will provide notice of this Motion to each holder of a Similar Retiree Claim. The notice served in connection with this Motion will contain the following language informing the holders of Similar Retiree Claims that the Motion seeks to adjust the amount of such claims:

> The Motion seeks to adjust the amount of certain retirement-related claims against the Debtors. Your rights may be affected by the Motion. Individuals receiving the Motion should locate their name on Schedule 1 attached to the Motion to learn which of the lettered exhibits, Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit G, or Exhibit H, contains the grounds for the adjustment pertaining to their claim amount and the relief being sought by the Reorganized Debtors. If you disagree with the amount, classification, or the priority of your claim as it is listed in the Exhibits attached to the Motion, you MUST file an objection to the Motion in accordance with the procedures set forth herein.

Consistent with Bankruptcy Rule 3007 and Local Rule 3007-1, the Motion also states in a conspicuous place that claimants receiving the Motion should locate their names and claims in the attachments to the Motion. See paragraph 1, supra. Additionally, the Exhibits to the Motion list the holders of Similar Retiree Claims alphabetically and detail, with respect to each such holder, the relevant claim or schedule number, as applicable, and the requested adjustment to such holder's claim.

27. The Reorganized Debtors believe that the procedures for adjusting the Similar Retiree Claims proposed herein preserve the due process rights of the Similar Retiree Claimants. Accordingly, the Reorganized Debtors request that, to the extent not otherwise satisfied herein, the Court waive the requirements of Bankruptcy Rule 3007 and Local Rules 1009-2 and 3007-1.

**RESERVATION OF RIGHTS**

28.     The Reorganized Debtors hereby reserve their rights to (i) amend, modify, and/or supplement this Motion and (ii) adjourn the hearing on this Motion as it pertains to any or all of the Similar Retiree Claims.  In the event that the Reorganized Debtors so adjourn the hearing, they will state that the hearing on the Motion and/or any response filed in connection therewith has been adjourned on the agenda for the hearing, which agenda will be served on any party affected by such adjournment.

**NOTICE**

29.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the claimants listed on Exhibit A through Exhibit H and (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Reorganized Debtors submit that no other or further notice is necessary.

WHEREFORE, for the reasons set forth herein and on <u>Exhibit A</u>, <u>Exhibit B</u>, <u>Exhibit C</u>, <u>Exhibit D</u>, <u>Exhibit E</u>, <u>Exhibit F</u>, <u>Exhibit G</u>, and <u>Exhibit H</u> attached hereto, the Reorganized Debtors respectfully request that the Court enter an Order, pursuant to sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 1009(a), modifying each of the Similar Retiree Claims as set forth on <u>Exhibit A</u>, <u>Exhibit B</u>, <u>Exhibit C</u>, <u>Exhibit D</u>, <u>Exhibit E</u>, <u>Exhibit F</u>, <u>Exhibit G</u>, and <u>Exhibit H</u> attached hereto; (ii) authorizing the Claims Agent to modify each of the Similar Retiree Claims on the Claims Register in accordance with the Order; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       February 11, 2013

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kevin T. Lantry
Kenneth P. Kansa
Kerriann S. Mills
Michael T. Gustafson
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: */s/ J. Kate Stickles*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR REORGANIZED DEBTORS