## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered<br>**Objection Date: March 7, 2013 at 4:00 p.m.**<br>**Hearing Date: TBD** |

## FORTY-EIGHTH MONTHLY AND FINAL APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE REORGANIZED DEBTORS FOR THE MONTHLY PERIOD DECEMBER 1, 2012 THROUGH DECEMBER 31, 2012 AND THE FINAL FEE PERIOD FROM DECEMBER 8, 2008 THROUGH DECEMBER 31, 2012

| | |
|---|---|
| Name of Applicant: | **Sidley Austin LLP** |
| Authorized to Provide Professional Services to: | **Debtors** |
| Date of Retention: | **February 20, 2009 (nunc pro tunc to December 8, 2008)** |
| Period For Which Monthly Compensation and Reimbursement is Sought: | **December 1, 2012 through December 31, 2012** |

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

| | |
|---|---|
| Amount of Monthly Compensation Sought as Actual, Reasonable and Necessary: | **$1,567,750.94** |
| Amount of Monthly Expense Reimbursement Sought as Actual, Reasonable and Necessary: | **$155,546.84** |
| Period for Which Final Compensation and Reimbursement is Sought: | **December 8, 2008 through December 31, 2012** |
| Amount of Final Compensation Sought as Actual, Reasonable and Necessary: | **$100,655,700.22[2]** |
| Amount of Final Expense Reimbursement Sought as Actual, Reasonable and Necessary | **$5,413,007.39[3]** |

This is a(n):    X    monthly    _____ interim    X    final application

Requested Payment Amount for the Forty-Eighth Monthly Fee Period:

| | |
|---|---|
| Fees at 80% | **$1,254,200.75** |
| Expenses at 100% | **$155,546.84** |

---

[2] The amount of final compensation sought by Sidley is equal to the sum of all fees previously approved by this Court for Sidley's First Quarterly Fee Application Request through the Fourteenth Quarterly Fee Application Request, plus the fees requested by Sidley in its Fifteenth Quarterly Fee Application Request, Sixteenth Quarterly Fee Application Request, and Forty-Eighth Monthly Fee Application.

[3] The amount of final expense reimbursement sought by Sidley is equal to the sum of all expenses previously approved by this Court for Sidley's First Quarterly Fee Application Request through the Fourteenth Quarterly Fee Application Request, plus the expenses requested by Sidley in its Fifteenth Quarterly Fee Application Request, Sixteenth Quarterly Fee Application Request, and Forty-Eighth Monthly Fee Application.

46429/0001-9264008V1

## **Prior Applications**

| Quarter | Date Filed | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|---|
| | | | Fees | Expenses | Fees | Expenses |
| 1 | 4/15/2009 | 12/8/08-2/28/2009 | $3,897,043.25 | $165,360.71 | $3,886,289.75 | $158,441.67 |
| 2 | 7/16/2009 | 3/1/2009-5/31/2009 | $4,209,274.75 | $105,524.36 | $4,203,235.50 | $104,118.90 |
| 3 | 10/15/2009 | 6/1/2009-8/31/2009 | $4,513,018.00 | $99,429.34 | $4,510,127.00 | $99,253.67 |
| 4 | 1/15/2010 | 9/1/2009-11/30/2009 | $5,292,782.75 | $221,808.01 | $5,275,754.14 | $220,748.76 |
| 5 | 4/15/2010 | 12/1/2009-2/28/2010 | $5,426,757.50 | $205,852.05 | $5,412,303.00 | $201,565.16 |
| 6 | 12/14/2010 | 3/1/2010-5/31/2010 | $6,581,178.43 | $425,733.29 | $6,582,868.12 | $418,736.42 |
| 7 | 5/4/2011 | 6/1/2010-8/31/2010 | $7,081,656.37 | $310,093.90 | $7,077,989.87 | $304,357.14 |
| 8 | 7/1/2011 | 9/1/2010-11/30/2010 | $7,126,734.00 | $334,255.68 | $7,120,542.46 | $323,696.86 |
| 9 | 9/20/2011 | 12/1/2010-2/28/2011 | $14,478,878.00 | $599,999.17 | $14,448,735.77 | $585,309.27 |
| 10 | 1/27/2012 | 3/1/2011-5/31/2011 | $8,941,857.00 | $1,133,692.42 | $8,796,500.97 | $1,082,606.25 |
| 11 | 6/4/2012 | 6/1/2011-8/31/2011 | $5,073,861.25 | $445,493.14 | $5,063,659.56 | $442,659.63 |
| 12 | 7/20/2012 | 9/1/2011-11/30/2011 | $4,486,113.50 | $290,379.17 | $4,469,297.37 | $288,796.51 |
| 13 | 7/27/2012 | 12/1/2011-2/29/2012 | $5,331,970.50 | $168,703.44 | $5,327,855.00 | $167,328.06 |
| 14 | 8/21/2012 | 3/1/2012-5/31/2012 | $5,418,107.32 | $182,859.76 | $5,416,964.91 | $180,323.66 |
| 15 | 10/31/2012 | 6/1/2012-8/31/2012 | $6,260,291.50 | $438,845.57 | | |
| 16 | 1/23/2013 | 9/1/2012-11/30/2012 | $5,235,534.36 | $240,673.02 | | |

46429/0001-9264008V1

**Attachment A**

## FEE SUMMARY FOR THE PERIOD FROM
## DECEMBER 1, 2012 THROUGH DECEMBER 31, 2012

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Chris E. Abbinante | Partner/ Corporate/ 15 years. Admitted 1997. | $875 | 6.00 | $5,250.00 |
| Suresh T. Advani | Partner/ Tax/ 20 years. Admitted 1992. | $925 | 22.60 | $20,905.00 |
| Anthony J. Aiello | Partner/ Real Estate/ 26 years. Admitted 1986. | $850 | 17.40 | $14,790.00 |
| Larry A. Barden | Partner/ Corporate/ 30 years. Admitted 1982. | $1,000 | 24.40 | $24,400.00 |
| James F. Bendernagel, Jr. | Partner/ Litigation/ 35 years. Admitted 1977. | $900 | 69.20 | $62,280.00 |
| Kevin F. Blatchford | Partner/ Corporate/ 26 years. Admitted 1986. | $800 | 58.30 | $46,640.00 |

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Jessica C.K. Boelter | Partner/ Bankruptcy/ 10 years. Admitted 2002. | $725 | 34.20 | $24,795.00 |
| James F. Conlan | Partner/ Bankruptcy/ 24 years. Admitted 1988. | $1,000 | 26.30 | $26,300.00 |
| Aimee M. Contreras-Camua | Partner/ Real Estate/ 14 years. Admitted 1998. | $725 | 0.30 | $217.50 |
| William G. Dickett | Partner/ Environmental/ 23 years. Admitted 1989. | $675 | 2.80 | $1,890.00 |
| Max C. Fischer | Partner/ Employment/ 17 years. Admitted 1995. | $675 | 3.80 | $2,565.00 |
| Scott J. Heyman | Partner/ Tax/ 25 years. Admitted 1987. | $800 | 1.50 | $1,200.00 |
| Robert W. Hirth | Partner/ Litigation/ 33 years. Admitted 1979. | $950 | 0.40 | $380.00 |

46429/0001-9264008V1

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Matthew E. Johnson | Partner/ Employee Benefits/ 20 years. Admitted 1992. | $800 | 0.50 | $400.00 |
| Eamon P. Joyce | Partner/ Litigation/ 10 years. Admitted 2003. | $725 | 1.20 | $870.00 |
| Kenneth P. Kansa | Partner/ Bankruptcy/ 13 years. Admitted 1999. | $800 | 44.90 | $35,920.00 |
| John P. Kelsh | Partner/ Corporate/ 16 years. Admitted 1996. | $800 | 0.30 | $240.00 |
| Colleen M. Kenney | Partner/ Litigation/ 21 years. Admitted 1991. | $725 | 4.40 | $3,190.00 |
| Bryan Krakauer | Partner/ Bankruptcy/ 30 years. Admitted 1982. | $1,000 | 18.70 | $18,700.00 |
| Kevin T. Lantry | Partner/ Bankruptcy/ 21 years. Admitted 1991. | $950 | 127.20 | $120,840.00 |

3

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Scott R. Lassar | Partner/ Litigation/ 37 years. Admitted 1975. | $1,000 | 5.30 | $5,300.00 |
| Richard A. Leavy | Partner/ Tax/ 16 years. Admitted 1996. | $950 | 0.20 | $190.00 |
| Jonathan D. Lotsoff | Partner/ Employment/ 18 years. Admitted 1994. | $725 | 10.10 | $7,322.50 |
| Paul D. Monson | Partner/ Real Estate/ 30 years. Admitted 1982. | $800 | 23.00 | $18,400.00 |
| Larry J. Nyhan | Partner/ Bankruptcy/ 32 years. Admitted 1980. | $1,000 | 0.30 | $300.00 |
| Joel G. Samuels | Partner/ Bankruptcy/ 28 years. Admitted 1984. | $925 | 3.90 | $3,607.50 |
| Mark D. Schneider | Partner/ Communications/ 27 years. Admitted 1985. | $750 | 49.00 | $36,750.00 |
| Jeffrey C. Steen | Partner/ Bankruptcy/ 28 years. Admitted 1984. | $925 | 134.10 | $124,042.50 |

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Dennis M. Twomey | Partner/ Bankruptcy/ 12 years. Admitted 2000. | $750 | 41.90 | $31,425.00 |
| Jay H. Zimbler | Partner/ Tax/ 37 years. Admitted 1975. | $950 | 2.10 | $1,995.00 |
| Ronald S. Flagg | Senior Counsel/ Litigation/ 31 years. Admitted 1981. | $725 | 31.60 | $22,910.00 |
| Lawrence R. Fullerton | Senior Counsel/ Litigation/ 34 years. Admitted 1978. | $900 | 1.00 | $900.00 |
| David M. Miles | Counsel/ Financial Institution Regulation/ 33 years. Admitted 1979. | $750 | 41.10 | $30,825.00 |
| Robin Parsons | Counsel/ Bankruptcy/ 39 years. Admitted 1973. | $918.40 £575 | 0.20 | $183.68 |
| Mark A. Biggar | Associate/ Real Estate/ 2 years. Admitted 2010. | $390 | 7.80 | $3,042.00 |

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Katie L. Brown | Associate/ Real Estate/ >1 year. Admitted 2012. | $340 | 13.10 | $4,454.00 |
| Mark C. Brown | Associate/ Litigation/ 1 year. Admitted 2012. | $400 | 1.50 | $600.00 |
| Leslie Carter | Associate/ Tax/ 3 years. Admitted 2009. | $435 | 12.40 | $5,394.00 |
| Kristopher J. Clemmons | Associate/ Real Estate/ 5 years. Admitted 2007. | $475 | 9.30 | $4,417.50 |
| Christina M. Craige | Associate/ Bankruptcy/ 6 years. Admitted 2007. | $655 | 0.10 | $65.50 |
| Nathan J. Davis | Associate/ Corporate/ >1 year. Admitted 2012. | $325 | 48.30 | $16,422.00 |
| Bret T. Diskin | Associate/ Corporate/ 3 years. Admitted 2009. | $435 | 22.00 | $9,570.00 |
| Jenna M. Gallagher | Associate/ Corporate/ 1 year. Admitted 2011. | $340 | 65.40 | $22,236.00 |

6

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Anna Gumport | Associate/ Bankruptcy/ 2 years. Admitted 2010. | $450 | 7.70 | $3,465.00 |
| Michael T. Gustafson | Associate/ Bankruptcy/ 2 years. Admitted 2010. | $450 | 70.70 | $31,815.00 |
| Jacqueline A. Hairston | Associate/ Real Estate/ 3 years. Admitted 2009. | $435 | 6.90 | $3,001.50 |
| Steffen Hemmerich | Associate/ Regulatory/ 6 years. Admitted 2006. | $555 | 11.10 | $6,160.50 |
| Christine M. Herbas | Associate/ Corporate/ 1 year. Admitted 2011. | $340 | 75.80 | $25,772.00 |
| Geoffrey M. King | Associate/ Bankruptcy/ 3 years. Admitted 2009. | $500 | 94.10 | $47,050.00 |
| Candice L. Kline | Associate/ Bankruptcy/ 4 years. Admitted 2008. | $555 | 76.80 | $42,624.00 |
| Christopher S. Krueger | Associate/ Corporate/ 4 years. Admitted 2008. | $475 | 38.80 | 18,430.00 |

46429/0001-9264008V1

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Francis S. Lam | Associate/ Employment/ 1 year. Admitted 2011. | $355 | 55.90 | $19,844.50 |
| James P. Langdon | Associate/ Corporate/ 6 years. Admitted 2006. | $550 | 159.00 | $87,450.00 |
| Matthew W. Lee | Associate/ Real Estate/ 3 years. Admitted 2009. | $435 | 4.70 | $2,044.50 |
| Matthew E. Linder | Associate/ Bankruptcy/ >1 year. Admitted 2012. | $325 | 37.50 | $15,000.00 |
| Patrick L. Liu | Associate/ Bankruptcy/ >1 year. Admitted 2012. | $340 | 43.40 | $14,756.00 |
| Matthew G. Martinez | Associate/ Bankruptcy/ 4 years. Admitted 2008. | $555 | 40.50 | $22,477.50 |
| Elizabeth L. Massaro | Associate/ Tax/ 1 year. Admitted 2011. | $340 | 1.50 | $510.00 |
| Kerriann S. Mills | Associate/ Bankruptcy/ 7 years. Admitted 2005. | $675 | 203.90 | $137,632.50 |

46429/0001-9264008V1

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Anna M. Mommsen | Associate/ Real Estate/ 2 years. Admitted 2010. | $390 | 12.60 | $4,914.00 |
| Sophia Park Mullen | Associate/ Bankruptcy/ 5 years. Admitted 2008. | $535 | 7.30 | $3,780.00 |
| Brett H. Myrick | Associate/ Bankruptcy/ 3 years. Admitted 2009. | $500 | 71.10 | $35,550.00 |
| Erin F. Natter | Associate/ Real Estate/ 6 years. Admitted 2006. | $590 | 6.20 | $3,658.00 |
| Drew A. Norman | Associate/ Real Estate/ 5 years. Admitted 2007. | $590 | 35.80 | $21,122.00 |
| Molly C. Novy | Associate/ Real Estate/ 2 years. Admitted 2010. | $390 | 9.60 | $3,744.00 |
| Andrew P. Propps | Associate/ Bankruptcy/ 3 years. Admitted 2010. | $500 | 4.80 | $2,400.00 |
| Daniel H. Render | Associate/ Corporate/ 1 year. Admitted 2012. | $340 | 28.10 | $9,554.00 |

46429/0001-9264008V1

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Steve W. Robinson | Associate/ Bankruptcy/ 3 years. Admitted 2010. | $500 | 107.80 | $53,900.00 |
| Jed Rosenkrantz | Associate/ Corporate/ 3 years. Admitted 2009. | $435 | 100.20 | $43,587.00 |
| Thomas E. Ross | Associate/ Litigation/ 3 years. Admitted 2009. | $445 | 73.50 | $32,707.50 |
| Tomer Sachar | Associate/ Real Estate/ 5 years. Admitted 2007. | $475 | 7.70 | $3,657.50 |
| Richard M. Silverman | Associate/ Tax/ 5 years. Admitted 2007. | $525 | 40.90 | $21,472.50 |
| Lindsey A. Smith | Associate/ Corporate/ 4 years. Admitted 2008. | $600 | 0.90 | $539.06 |
| Kate L. Steffy | Associate/ Real Estate/ 6 years. Admitted 2006. | $475 | 100.00 | $47,500.00 |
| Allison Ross Stromberg | Associate/ Bankruptcy/ 4 years. Admitted 2008. | $555 | 46.90 | $26,029.50 |

46429/0001-9264008V1

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Helena G. Tseregounis | Associate/ Bankruptcy/ > 1 year. Admitted 2012. | $340 | 40.50 | $13,770.00 |
| Patrick J. Wackerly | Associate/ Litigation/ 5 years. Admitted 2007. | $525 | 11.00 | $5,775.00 |
| Angela M. Eavy | Staff Attorney/ Litigation/ 8 years. Admitted 2004. | $375 | 0.50 | $187.50 |
| Sarah Lainchbury | Solicitor Trainee/ >1 year. | $287.49 £180 | 5.50 | $1,581.20 |
| Victoria L. Caputo | Senior Legal Assistant/ Real Estate/ 32 years. | $310 | 0.30 | $93.00 |
| Russell J. Coutinho | Senior Legal Assistant/ Real Estate/ 15 years. | $265 | 12.30 | $3,259.50 |
| David J. Lutes | Senior Legal Assistant/ Bankruptcy/ 26 years. | $315 | 54.10 | $17,041.50 |

11

| Name of Professional/ Individual | Position, Area of Expertise, Number of Years in Position, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Branka V. Nastasic | Senior Legal Assistant/ Corporate/ 10 years. | $250 | 98.50 | $24,625.00 |
| Karen A. Nelms | Senior Legal Assistant/ Litigation/ 16 years. | $270 | 12.20 | $3,294.00 |
| James P. Platt | Senior Legal Assistant/ Litigation/ 9 years. | $235 | 18.80 | $4,418.00 |
| Susan L. Summerfield | Legal Assistant/ Bankruptcy/ 19 years. | $210 | 20.90 | $4,389.00 |
| Tiffany Katata | Project Assistant/ 4 years. | $120 | 9.30 | $1,116.00 |
| Hilary E. Peterson | Project Assistant/ 1 year. | $205 | 1.80 | $369.00 |
| Diliana Stamatova | Project Assistant/ 7 years. | $120 | 14.10 | $1,692.00 |
| **Sub Total** | | | 2,869.60 | $1,635,883.44 |
| **Blended Rate** | | $570.07 | | |
| **Less Voluntary Reduction** | | | | ($68,132.50) |
| **Grand Total** | | | | $1,567,750.94 |

12

46429/0001-9264008V1

## COMPENSATION BY PROJECT CATEGORY FOR THE PERIOD FROM
## DECEMBER 1, 2012 THROUGH DECEMBER 31, 2012

| Matter Description | Total Hours | Total Fees |
|---|---|---|
| Post-Confirmation Matters (13730) | 1,343.60 | $737,802.00 |
| FCC Matters (20100) | 49.00 | $36,750.00[1] |
| Fee Applications (30390) | 266.10 | $110,862.18 |
| Executory Contracts and Leases (30410) | 22.50 | $14,050.00 |
| Insurance Matters (30450) | 0.40 | $380.00 |
| Litigated Matters (30470) | 754.60 | $489,202.50 |
| Travel Time (30480) | 2.00 | $600.00 |
| Professional Retention (30510) | 18.50 | $9,886.00 |
| Tax Matters (30520) | 133.00 | $77,386.00 |
| Claims Processing (30530) | 169.50 | $91,370.00 |
| Business Operations (30550) | 49.00 | $26,077.26 |
| Case Administration (30560) | 40.00 | $17,073.50 |
| Creditor Communications (30570) | 1.60 | $922.50 |
| Employee Matters (30590) | 22.50 | $18,580.00 |
| Exit Facility (13700) | 7.30 | $4,941.50 |
| **SUB TOTAL** | **2,869.60** | **$1,635,883.44** |
| **Less Voluntary Reduction** | | **($68,132.50)** |
| **GRAND TOTAL** | | **$1,567,750.94** |

---

[1] $2,475.00 of this amount represents professional fees for FCC-related services attributable to Newspaper Crossownership (3.30 hrs., $2,475.00 fees) which have been separately invoiced at the request of the Debtors.

46429/0001-9264008V1

**Attachment B**

**EXPENSE SUMMARY FOR THE PERIOD FROM
DECEMBER 1, 2012 THROUGH DECEMBER 31, 2012**

| Expense Category | Service Provider (if applicable) | Total Expenses |
|---|---|---|
| Duplicating Charges[1] | | $1,895.47 |
| Document Delivery Services | | $325.79 |
| Document Services | | $503.09 |
| Filing Fees | | $2,224.13 |
| Ground Transportation | | $32.00 |
| Lexis Research Service[2] | Lexis | $2,434.07 |
| Legal Support Services | | $20,025.84 |
| Meals | | $72.00 |
| Messenger Services | | $1,529.48 |
| Overtime | | $2,087.99 |
| Search Services | | $121,430.85 |
| Telephone Tolls | | $410.41 |
| Westlaw Research Service[2] | Westlaw | $2,839.42 |
| | | |
| **SUB TOTAL** | | **$155,810.54** |
| **Less Voluntary Reduction** | | **($263.70)** |
| **GRAND TOTAL** | | **$155,546.84** |

---

[1] Sidley's rate for standard (non-color) copying is $0.10 per page and is in compliance with the rates as required by Local Rule 2016-2(e)(iii).

[2] Sidley charges its clients for computer-assisted legal research at a rate that recovers no more than the Firm's cost.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered<br>**Objection Date: March 7, 2013 at 4:00 p.m.**<br>**Hearing Date: TBD** |

### FORTY-EIGHTH MONTHLY AND FINAL APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE REORGANIZED DEBTORS FOR THE MONTHLY PERIOD DECEMBER 1, 2012 THROUGH DECEMBER 31, 2012 AND THE FINAL FEE PERIOD FROM DECEMBER 8, 2008 THROUGH DECEMBER 31, 2012

Sidley Austin LLP ("Sidley"), attorneys for Tribune Company ("Tribune") and the other affiliated reorganized debtors in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] respectfully submits this application (the "Application") to this Court, pursuant to (i) sections 327, 331, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] As used herein, the term "Debtors" includes the entities that are successors-in-interest to the Debtors as of the Effective Date of the DCL Plan (as defined herein), after taking into account the Restructuring Transactions (as described in the DCL Plan).

2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "Local Rules"), (iv) the Order Establishing Procedures for

Interim Compensation and Reimbursement of Expenses of Professionals and Committee

Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (Docket No. 225) (the "Interim

Compensation Order"), as amended, and (v) the Order Appointing Fee Examiner and

Establishing Related Procedures for Compensation and Reimbursement of Expenses for

Professionals and Consideration of Fee Applications (Docket No. 546) (the "Fee Examiner

Order") for (a) approval of compensation for professional legal services and reimbursement of

expenses incurred for the period from December 1, 2012 through December 31, 2012 (the

"Forty-Eighth Monthly Fee Period"), and (b) approval of final compensation and reimbursement

of expenses for the period from December 8, 2008 through December 31, 2012 (the "Final Fee

Period").  In support of the Application, Sidley respectfully states as follows:[3]

## FACTUAL BACKGROUND OF THE CASES

1.      On December 8, 2008 (the "Petition Date"), Tribune and certain of its

subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

An additional Debtor, Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club, LLC)

("Tribune CNLBC"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy

Code on October 12, 2009.[4]  On March 22, 2010, this Court entered an order dismissing the

chapter 11 petition of New River Center Maintenance Association, Inc. (Docket No. 3805).  On

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[4] Orders of the Court applicable to this Application have subsequently been extended to Tribune CNLBC.  (See Order Directing (I) Joint Administration of Chapter 11 Cases and (II) that Certain Orders and Other Pleadings Entered or Filed in the Chapter 11 Cases of Tribune Company, et al. be Made Applicable to the Chapter 11 Case of Chicago National League Ball Club, LLC (entered Oct. 14, 2009) (Docket No. 2333) (the "CNLBC Joint Administration Order")).

May 24, 2011, this Court entered an order dismissing the chapter 11 petition of Publishers Forest Products Co. of Washington (Docket No. 11688).

2.        The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). (Docket Nos. 43, 2333.)

3.        On July 23, 2012, the Court entered the Order (Docket No. 12074) (the "2012 Confirmation Order") Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Docket No. 11354) (the "DCL Plan").

4.        The Effective Date of the Plan occurred on December 31, 2012 (the "Effective Date").[5]

5.        On March 19, 2009, pursuant to Fee Examiner Order, the Court appointed Stuart Maue as fee examiner (the "Fee Examiner") to act as special consultant to the Court for professional fee and expense analysis and review, effective nunc pro tunc to February 20, 2009. (Docket No. 546.)

6.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 327, 331, and 503 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-2 of the Local Rules.

---

[5] See Notice of (I) Effective Date of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A. and (II) Bar Date for Certain Claims (Docket No. 12939).

## PROCEDURAL BACKGROUND FOR THE APPLICATION

7.      The Debtors sought approval of this Court to retain Sidley as general reorganization and bankruptcy counsel, pursuant to 11 U.S.C. §§ 327(a) and 1107, by application filed on December 26, 2008. As set forth in the application seeking such approval, Sidley's services to the Debtors encompass a wide range of legal services, focused upon restructuring and insolvency issues but also encompassing certain general corporate, litigation, tax, media law and regulatory, employee-related, and real estate matters. In particular, Sidley's retention application sets forth the following scope of services:

a) to provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business;

b) to take all necessary action on behalf of the Debtors to protect and preserve the Debtors' estates, including prosecuting actions on behalf of the Debtors, negotiating any and all litigation in which the Debtors are involved, and objecting to claims filed against the Debtors' estates;

c) to prepare on behalf of the Debtors all necessary motions, answers, orders, reports, and other legal papers in connection with the administration of the Debtors' estates;

d) to attend meetings and negotiate with representatives of creditors and other parties in interest, attend court hearings, and advise the Debtors on the conduct of their chapter 11 cases;

e) to perform any and all other legal services for the Debtors in connection with both their chapter 11 cases and with the formulation and implementation of the Debtors' plan of reorganization;

f) to advise and assist the Debtors regarding all aspects of the plan confirmation process, including, but not limited to, negotiating and drafting a plan of reorganization and accompanying disclosure statement, securing the approval of a disclosure statement, soliciting votes in support of plan confirmation, and securing confirmation of the plan;

g) to provide legal advice and representation with respect to various obligations of the Debtors and their managers and officers;

h) to provide legal advice and perform legal services with respect to matters involving the negotiation of the terms of and the issuance of corporate securities, matters related to corporate governance, and the interpretation, application, or amendment of the Debtors' organizational documents, including their limited liability company agreements, material contracts, and matters involving the fiduciary duties of the Debtors and their officers and managers;

4

i) to provide legal advice and perform legal services with respect to litigation, tax (state and federal income tax and local property tax assessment matters) and other general non-bankruptcy legal issues for the Debtors to the extent requested by the Debtors; and

j) to render such other services as may be in the best interests of the Debtors in connection with any of the foregoing and all other necessary or appropriate legal services in connection with these chapter 11 cases, as agreed upon by Sidley and the Debtors.

Sidley's retention, nunc pro tunc to the Petition Date, was approved by this Court by order dated February 20, 2009. (Docket No. 435.)

8.    The Interim Compensation Order and the Fee Examiner Order (together, the "Fee Orders") provide that all professionals retained in these cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code (the "Case Professionals") must file with the Court and provide to the Fee Examiner monthly applications for interim allowance of compensation for services rendered and reimbursement of expenses incurred, together with the applicable time entries and itemized expenses (the "Monthly Fee Application"). The notice parties specified in the Fee Orders (the "Notice Parties") have twenty (20) days after service of a Monthly Fee Application to object to such Monthly Fee Application (the "Objection Deadline"). Upon expiration of the Objection Deadline, the applicable Case Professional must certify in writing that no objection or partial objection has been filed with the Court relative to that professional's Monthly Fee Application, whereupon the Debtors are authorized to pay such professional an amount equal to the lesser of (i) 80% of the fees and 100% of the expenses requested in the Monthly Fee Application or (ii) 80% of the fees and 100% of the expenses not subject to an objection.

9.    Pursuant to the procedures set forth in the Fee Orders, Sidley prepared, filed with the Court, and served upon the Notice Parties and the Fee Examiner Monthly Fee Applications for the periods commencing December 8, 2008 through and including November

30, 2012, which Monthly Fee Applications are incorporated herein by reference.[6] Sidley has accordingly submitted all of its Monthly Fee Applications for the Debtors' chapter 11 cases.

10. In addition to the Monthly Fee Applications, beginning with the three-month period ending February 28, 2009, and each three-month period thereafter, all Case Professionals were required to file with the Court and serve on the Notice Parties interim applications for allowance of compensation and reimbursement of expenses of the amounts sought in the Monthly Fee Applications filed during such period (a "Quarterly Fee Application Request"). See Interim Compensation Order at ¶ 3. Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local Rules. Id. Sidley prepared, filed with the Court, and served upon the Notice Parties and the Fee Examiner Quarterly Fee Application Requests for the interim periods commencing December 8, 2008 through and including November 30, 2012, which Quarterly Fee Application Requests are incorporated herein by reference.[7] Sidley has accordingly submitted all of its Quarterly Fee Application Requests for the Debtors' chapter 11 cases.

11. Section 9.2 of the DCL Plan provides that all Case Professionals must file with the Court and serve on the Debtors and their counsel, the Fee Examiner, and the Office of the United States Trustee, final requests for compensation or reimbursement (a "Final Fee Application") not later than sixty (60) days after the Effective Date of the DCL Plan. This Application represents Sidley's Final Fee Application in the Debtors' chapter 11 cases.

---

[6] The docket numbers of Sidley's Monthly Fee Applications are: 819, 888, 1098, 1100, 1273, 1631, 1837, 2017, 2262, 2443, 2660, 2909, 3458, 3701, 3904, 4820, 5329, 6088, 6655, 6758, 6759, 7099, 7100, 7871, 8278, 8764, 8774, 8802, 9018, 9419, 9613, 9749, 9917, 10314, 10326, 10632, 11117, 11118, 11472, 11631, 11807, 12248, 12250, 12439, 12579, 12715, 12927, and 12928.

[7] The docket numbers of Sidley's Quarterly Fee Application Requests are: 1031, 1757, 2365, 3130, 4059, 7189, 8827, 9403, 9797, 10743, 11752, 12008, 12121, 12307, 12648, and 13098.

**REQUEST FOR APPROVAL OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE FORTY-EIGHTH MONTHLY FEE PERIOD**

12.    By this Application, Sidley respectfully requests that the Court approve the allowance and award of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by Sidley as general bankruptcy counsel to the Debtors during the Forty-Eighth Monthly Fee Period.  The amount of fees sought for services rendered during the Forty-Eighth Monthly Fee Period is $1,567,750.94, representing 2,869.60 hours in professional and paraprofessional time for such services.  Reimbursement of actual, necessary expenses incurred by Sidley during the Forty-Eighth Monthly Fee Period in connection with these services is requested in the amount of $155,546.84.  Sidley seeks the allowance of such compensation and this Court's authorization for payment of such amounts by the Debtors to Sidley.

13.    The hourly rates charged by Sidley's professionals and paraprofessionals during the Forty-Eighth Monthly Fee Period are no greater than the customary hourly rates for such individuals both inside and outside of bankruptcy cases.  The highest billing rate charged by any Sidley attorney for services rendered under Sidley's current billing rates that became effective on January 1, 2012 is $1,000 per hour.  See Supplemental Affidavit (Second) of James F. Conlan in Support of Application for an Order Authorizing the Employment and Retention of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession at ¶ 3 (Docket No. 424).  Sidley believes these rates are comparable to those charged by the bankruptcy and other professionals of other firms of comparable size, stature, and experience.

14.    Sidley has received no payment and no promises for payment from any source other than the Debtors for services rendered in these chapter 11 cases.  There is no agreement between Sidley and any other party for the sharing of compensation to be received for the services rendered by Sidley in these chapter 11 cases.  All professional and paraprofessional

7

services for which compensation is sought herein were rendered solely on behalf of the Debtors in these cases.

**I.    Services Rendered in the Forty-Eighth Monthly Fee Period**

15.    Sidley has rendered substantial services to the Debtors in connection with these chapter 11 cases during the period covered by this Application, both in its capacity as general bankruptcy counsel to the Debtors and continuing in its capacity as corporate, litigation, and transactional counsel to the Debtors in their ordinary course of business. The services performed by Sidley's professionals and paraprofessionals during the period covered by this Application were necessary and have directly contributed to the effective administration of the Debtors' chapter 11 cases.

16.    A breakdown of the total hours expended by each professional on all matters and a breakdown of amounts sought by each matter category covered herein are included as a part of Attachment A to this Application, as required by Local Rule 2016-2. The time detail describing the services provided to the Debtors during the Forty-Eighth Monthly Fee Period is provided in Exhibit 1 to this Application. The following is a summary of the activities performed by Sidley's professionals and paraprofessionals during the Forty-Eighth Monthly Fee Period:

**A.    Post-Confirmation Matters (13730):   Hours:  1,343.60   Fees:  $737,802.00**

17.    Sidley's professionals expended considerable efforts during the Forty-Eighth Monthly Fee Period preparing the Debtors for emergence from their chapter 11 cases, which occurred on December 31, 2012. This work was comprised primarily of (i) taking all necessary steps to prepare the Debtors efficiently to implement the restructuring transactions (the "Restructuring Transactions") envisioned under the DCL Plan and (ii) efforts to address a

number of issues potentially arising in connection with the Debtors' emergence from chapter 11 on the Effective Date of the DCL Plan (collectively, the "Emergence Issues").[8]

  a)  The Restructuring Transactions

18.     The Restructuring Transactions, set forth and described in detail in Exhibit 5.2 to the DCL Plan and the Additional Restructuring Transactions Notice,[9] involved substantial work primarily performed by Sidley's professionals in the Corporate and Real Estate practice groups during the Forty-Eighth Monthly Fee Period.  Sidley's professionals continued to advise and assist the Debtors with respect to implementing the Restructuring Transactions, and prepared substantial volumes of documentation necessary to consummate the Restructuring Transactions, which were completed prior to or on the Effective Date.  These efforts required substantial organization, communication, and coordination across the Debtors' various internal departments (including tax, real estate, employee benefits, payroll, intellectual property, legal, regulatory and financial reporting) and business units (including publishing, digital, broadcasting, and other operations).  Sidley's professionals also continued to provide assistance and advice to the Debtors with respect to the impact of the Restructuring Transactions on other facets of the reorganization process, including the FCC application and approval process, the financing and credit facilities to be implemented in connection with emergence, and financial reporting and securities matters.

19.     As described in Sidley's Sixteenth Quarterly Fee Application Request, the DCL Plan provided for a seven-calendar-day window prior to the Effective Date within which

---

[8]  Prior to the issuance of the 2012 Confirmation Order, all work related to the Restructuring Transactions and Emergence Issues was recorded under the "Plan and Disclosure Statement" and "Business Operations" matter numbers.  To allow greater specificity for Sidley's timekeepers and ease of review for the Fee Examiner and the Court, following the issuance of the 2012 Confirmation Order in late July 2012, time entries related to the Restructuring Transactions and Emergence Issues were recorded in the "Post-Confirmation Matters" matter number.

[9]  The Additional Restructuring Transactions Notice is defined and described Sidley's Sixteenth Quarterly Fee Application Request (Docket No. 13098).

9

nearly all of the Restructuring Transactions were required to be completed.[10]  This timing

necessitated significant planning and collaboration among Sidley's professionals, the Debtors,

and the Debtors' corporate agent, Corporation Service Company, given that the Restructuring

Transactions consisted of more than one hundred individual transactions and involved

substantially all of the entities within the Debtors' corporate structure, a number of investments

and joint venture interests, and more than two dozen newly-formed entities.  The timing of the

Restructuring Transactions was made all the more complex due to the voluminous

documentation that must be filed with secretary of state offices, state and local tax offices,

registrars of deeds, and other governmental authorities throughout the United States and in

certain foreign jurisdictions in order to form new entities, effect mergers, effect conversions,

effect certain transfers of title, assets, and liabilities, and withdraw, qualify, and re-qualify the

Debtors to do business where necessary.  As a result, it was necessary for Sidley's professionals

to undertake substantial work on the Restructuring Transactions during the Forty-Eighth

Monthly Fee Period.

        20.     The documentation required to consummate the Restructuring

Transactions included, but was not limited to, certificates of formation, certificates and articles of

incorporation, certificates of merger, agreements and plans of merger, plans of conversion, asset

transfer agreements, equity transfer agreements, written consents and corporate approvals

(including, but not limited to consents of boards of directors, boards of managers, member

consents and stockholder consents) for all transactions and preliminary corporate matters

(including, but not limited to, the approval of mergers, conversions, asset transfer agreements

---

[10] Exhibit 5.2 to the DCL Plan provides that unless otherwise agreed by the Debtors and the Creditor Proponents, the consummation of any Restructuring Transactions prior to the Effective Date was subject to, among other things, the Debtors' reasonable belief that the Effective Date would occur within seven (7) calendar days from the date on which any such transaction was to become effective.

and equity transfer agreements, and appointment of officers), required notices to certain

commercial and governmental third parties, tax forms (including approval requests submitted to

certain tax authorities, Forms SS-4 and other correspondence and forms), limited liability

company agreements, by-laws, limited liability company membership certificates, stock

certificates and other corporate documentation.  Preparation and necessary revision of all of these

documents required substantial, sustained efforts on the part of Sidley's corporate professionals

throughout the Forty-Eighth Monthly Fee Period.

   *b) Emergence Issues*

  21. Throughout the Forty-Eighth Monthly Fee Period, Sidley's professionals

in a variety of practice groups, including Corporate Reorganization and Bankruptcy, Corporate,

Tax, and Litigation, worked to prepare the Debtors to implement the terms of the DCL Plan in

accordance with the terms of the 2012 Confirmation Order and cause the DCL Plan to become

effective, which occurred on December 31, 2012.  The Emergence Issues addressed by Sidley's

Professionals included planning and preparing for the implementation of the DCL Plan,

including the issuance and distribution of securities, establishing the litigation trust pursuant to

section 13.1 of the DCL Plan (the "Litigation Trust"), and finalizing the agreements and other

corporate documentation required under the DCL Plan.  In addition, Sidley's professionals

prepared and filed the Notice of Effective Date on December 31, 2012, which gave notice to all

parties in interest in the Debtors' chapter 11 cases that the Effective Date had occurred.  (See

Docket No. 12939.)

  22. Sidley's role in advising and assisting the Debtors with respect to the

issuance and distribution of securities involved analyzing matters relating to securities laws,

coordinating Depository Trust Company ("DTC") eligibility and the exchange of securities

through the facilities of DTC, preparing arrangements and documentation with the transfer agent

11

and the warrant agent for the issuance of the New Common Stock and New Warrants, preparing summary information with respect to the rights and terms of the New Common Stock and New Warrants, addressing FCC regulatory compliance issues relating to the New Common Stock and New Warrants, including monitoring and compliance programs, and preparing forms and information for holders of New Common Stock and New Warrants in anticipation of emergence and post-Effective Date trading.

23.     Sidley's role in advising and assisting the Debtors with respect to establishing the Litigation Trust included finalizing the Litigation Trust Agreement and the litigation trust loan agreement, preparing summary information with respect to the rights, obligations and terms of the Litigation Trust Agreement and the litigation trust loan agreement and coordinating with and assisting the Litigation Trustee on matters relating to allocation of Litigation Trust Interests and certain preliminary matters to be addressed by the Litigation Trustee and the Litigation Trust Advisory Board.

24.     In addition to the foregoing, Sidley's professionals assisted in addressing corporate governance matters and finalizing certain agreements and corporate documentation necessary to implement the DCL Plan, including the new certificate of incorporation and by-laws of Tribune, the registration rights agreement and other certificates and agreements relating to the issuance of the New Common Stock and the New Warrants, and preparing and coordinating information with securities regulators.

**B.     FCC Matters (20100):   Hours: 49.00   Fees: $36,750.00**

25.     During the Forty-Eighth Monthly Fee Period, Sidley's professionals continued to represent the Debtors' broadcast stations on several matters as communications regulatory counsel.  $2,475.00 of the fees incurred by Sidley's professionals in this category during the Forty-Eighth Monthly Fee Period relate to the Newspaper Cross-ownership litigation

12

matter, which, as described in Sidley's prior Quarterly Fee Application Requests, involves

participation in, and monitoring of, the Federal Communications Commission's ("FCC") 2010

Quadrennial Review of its newspaper-broadcast cross-ownership regulations, and allegations

related to Tribune's cross-ownerships made in that proceeding.  The 2010 Quadrennial Review

proceeding involves the reevaluation of various rules that continued to prohibit owners of

newspapers, including the Debtors, from also holding licenses to operate certain television or

radio stations within the same markets.  Sidley's professionals monitored the filings reflected in

the docket in that proceeding, and advised the Debtors with respect to several filings of relevance

to the Debtors or their arguments before the FCC.  Sidley's professionals also reported on the

rules likely to be considered for adoption by the FCC.

    26.  Sidley's professionals also provided assistance with FCC issues that arose

related to the emergence of the Debtors from bankruptcy, including reviewing and advising the

Debtors on the conditions placed on FCC approval of the transfer of the Debtors' broadcast

licenses to the Reorganized Debtors and the successors to the Reorganized Debtors, after giving

effect to the Restructuring Transactions.  As described in Sidley's Sixteenth Quarterly Fee

Application Request, such FCC approval was granted in November 2012 and was a precondition

to the DCL Plan going effective.  Finally, Sidley's professionals provided assistance with respect

to FCC application certifications in preparation for emergence from bankruptcy, including the

FCC's requirements and practices for compliance with foreign ownership limits and other

regulations as they are impacted by the issuance and transfer of securities.  Specifically, Sidley's

professionals reviewed the post-emergence ownership structure of Tribune and provided advice

regarding the development and drafting of FCC application surveys and questionnaires to ensure

compliance with FCC requirements post-emergence.  Sidley's professionals focused on FCC

issues also simultaneously consulted with Sidley's corporate and bankruptcy professionals and

13

creditors' counsel on the timing of the FCC approval process, its impact on the bankruptcy process, and the need to establish post-emergence FCC ownership rule compliance procedures.

**C.    Fee Applications (30390):   Hours: 266.10   Fees: $110,862.18**

27.    This matter category encompasses all tasks relating to the preparation and filing of Sidley's Monthly Fee Applications and Quarterly Fee Application Requests with the Court.  In the Forty-Eighth Monthly Fee Period, Sidley's professionals and paraprofessionals drafted and filed Sidley's forty-sixth and forty-seventh Monthly Fee Applications, drafted Sidley's Sixteenth Quarterly Fee Application Request (which was filed in January 2013), and reviewed and complied with the Court's Fee Orders respecting all of the foregoing.  In addition, Sidley reviewed and drafted responses to the Fee Examiner's preliminary report with respect to Sidley's Fourteenth Quarterly Fee Application Request.  The level of activity relating to the preparation and finalization of monthly and quarterly fee applications during this period was necessary and reasonable in order to bring the fee application process to a prompt conclusion following the Debtors' emergence from their chapter 11 cases, in accordance with the terms of the DCL Plan.

**D.    Executory Contracts and Leases (30410):   Hours: 22.50   Fees: $14,050.00**

28.    As of the Petition Date, the Debtors in these cases were party to approximately 45,000 executory contracts and unexpired leases.  The DCL Plan provides for the assumption on the Effective Date of all executory contracts and unexpired leases, with the exception of those categories of executory contracts and unexpired leases specified in Section 6.1.1 of the DCL Plan.[11]

---

[11] Section 6.1.1 of the DCL Plan provides that on the Effective Date, each executory contract or unexpired lease of the Debtors will be deemed assumed unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is an executory contract or unexpired lease that is included in the Global Contract Order, (iv) is an executory contract or unexpired lease that is expressly excluded from the assumptions set forth in Section 6.5 of the DCL Plan or is set forth on

14

29.    On April 25, 2011, the Court entered the Order Establishing Procedures (I) Fixing Cure Amounts and (II) Providing Notice of Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases by a Successor Reorganized Debtor Pursuant to Sections 365, 1123 and 1129 of the Bankruptcy Code (the "Global Contract Order") (Docket No. 8745).  The Global Contract Order sets forth, among other things, (i) the cure amounts for certain of the Debtors' executory contracts and unexpired leases and (ii) the procedures for modifying such cure amounts following entry of the Global Contract Order.  During the Forty-Eighth Monthly Fee Period, Sidley's professionals analyzed and addressed certain issues related to preparing and filing an updated list of cure amounts for certain executory contracts in accordance with the terms of the Global Contract Order, which was filed on December 30, 2012.  (See Docket No. 12937.)

**E.    Insurance Matters (30450):    Hours: 0.40    Fees: $380.00**

30.    During the Forty-Eighth Monthly Fee Period, Sidley's professionals continued to work with the Debtors, their outside insurance counsel, and various insurance providers to resolve certain insurance coverage issues, and to advise the Debtors regarding the impact of the chapter 11 cases on the Debtors' insurance and risk management procedures.  In particular during the Forty-Eighth Monthly Fee Period, one of Sidley's professionals advised the Debtors with respect to the insurance coverage applicable to certain claims and with respect to the claims of insurers.

**F.    Litigated Matters (30470):    Hours: 754.60    Fees: $489,202.50**

31.    The "Litigated Matters" category encompasses all of Sidley's activities relating to actual and potential litigation, contested matters, and adversary proceedings, which

---

Exhibit 6.3 to the DCL Plan, or (v) is an executory contract or unexpired lease that is included in a pending motion to reject such executory contract or unexpired lease.

continued to require substantial attention from Sidley, the Debtors' senior management, and the Debtors' key creditor constituencies during the Forty-Eighth Monthly Fee Period. This category also includes fees incurred by Sidley's professionals in the Litigation and Corporate Restructuring and Bankruptcy practice groups in connection with litigation-related activities concerning the Debtors' opposition to various efforts by certain of their creditors to delay the effectiveness of the DCL Plan by pursuing appeals of the 2012 Confirmation Order.

   a) *Confirmation Order Appeals*[12]

   32.    During the Forty-Eighth Monthly Fee Period, Sidley's professionals continued to spend a significant amount of time representing the Debtors in connection with the six appeals of the 2012 Confirmation Order and prior related orders of the Bankruptcy Court (collectively, the "Confirmation Order Appeals")[13] that were filed by Wilmington Trust Company ("Wilmington Trust"), Aurelius Capital Management, LP ("Aurelius"), Law Debenture Trust Company of New York ("Law Debenture") and Deutsche Bank Trust Company Americas ("Deutsche Bank," and, together with Law Debenture, the "Trustees"), and EGI-TRB, L.L.C. ("EGI-TRB", and together with Wilmington Trust, Aurelius, Law Debenture, and Deutsche Bank, the "Objecting Parties").

   33.    Sidley's professionals continued to research and analyze numerous legal issues arising, or potentially arising, in connection with the Confirmation Order Appeals. On December 6, 2012, the Delaware District Court entered an order denying the Trustees' District Court Stay Motion, which had requested the District Court to modify the Bankruptcy Court's

---

[12] A detailed description of the Confirmation Order Appeals (as defined herein) is provided in Sidley's Sixteenth Quarterly Fee Application Request. Capitalized terms used but not defined in this section have the meanings assigned to them in Sidley's Sixteenth Quarterly Fee Application Request.

[13] The Confirmation Order appeals have been consolidated in the United States District Court for the District of Delaware under the case caption *Wilmington Trust Company v. Tribune Co. (In re Tribune Co.)*, Case Nos. 12-cv-128, 12-mc-108, 12-cv-1072, 12-cv-1073, 12-cv-1100, and 12-cv-1106.

Stay Order, including to eliminate or reduce the bond requirement. Shortly thereafter, on

December 12, 2012, the Delaware District Court entered an order denying Aurelius's request for

oral argument on the appeals on an expedited basis. In light of these developments, and the fact

that the Debtors contemplated a possible emergence from their chapter 11 cases on December

31, 2012, Sidley's professionals researched and drafted a motion on behalf of the Debtors to

dismiss the Confirmation Order Appeals as equitably moot (the "Dismissal Motion"). The

Dismissal Motion and Memorandum in Support of the Dismissal Motion (the "Memorandum in

Support") were ultimately filed with the Delaware District Court on January 18, 2013. (See Case

No. 12-cv-128, Docket Nos. 58 and 59.) Preparation of the Dismissal Motion and Memorandum

in Support required substantial coordination between Sidley's professionals in the Litigation and

Corporate Reorganization and Bankruptcy practice groups. In addition, Sidley's professionals

worked closely with the Debtors' investment bankers at Lazard Frères and financial advisors at

Alvarez & Marsal in connection with the preparation of the declarations of David Kurtz of

Lazard Frères and Brian Whittman of Alvarez & Marsal in support of the Dismissal Motion,

which were filed concurrently with the Dismissal Motion and Memorandum in Support.

> b)  *The State Law Constructive Fraudulent Conveyance Actions*[14]

34.       During the Forty-Eighth Monthly Fee Period, on behalf of the Debtors,

Sidley's professionals in the Litigation and Corporate Reorganization and Bankruptcy practice

groups spent considerable time reviewing and analyzing the various motions and responses filed

in the state law constructive fraudulent transfer actions (collectively, the "SLCFC Actions")

currently pending in a single multi-district litigation ("MDL") proceeding (the "Consolidated

Action") in the United States District Court for the Southern District of New York (the "MDL

---

[14] A detailed description of the SLCFC Actions (as defined herein) is provided in Sidley's Sixteenth Quarterly Fee Application Request. Capitalized terms used but not defined in this section have the meanings assigned to them in Sidley's Sixteenth Quarterly Fee Application Request.

Court"). Specifically, in the Sixteenth Interim Fee Period, counsel for certain of the defendants filed motions to dismiss the SLCFC Actions based on statutory and jurisdictional defenses, including section 546(e) of the Bankruptcy Code. The plaintiffs filed their responsive briefs on December 21, 2012. The MDL Court has scheduled oral arguments on the defendants' motions to dismiss to occur on March 1, 2013. During the Forty-Eighth Monthly Fee Period, Sidley's professionals also reviewed various amended complaints filed in the Consolidated Action to discern whether additional Tribune employees had been made parties to the litigation.

35.     Additionally, Sidley's professionals reviewed and analyzed the various master case orders and advised Tribune regarding important dates for appearances and other deadlines, and reviewed and analyzed certain legal issues relating to the interplay between the confirmed DCL Plan and the Consolidated Action, particularly with respect to the three "tag-along" actions that were consolidated with the SLCFC Actions: Official Committee Of Unsecured Creditors v. JPMorgan Chase Bank, N.A. (In re Tribune Co.), Case No. 10-53963 (KJC), Official Committee Of Unsecured Creditors v. FitzSimons (In re Tribune Co.), Case No. 10-54010 (KJC), and Official Comm. Of Unsecured Creditors v. Citigroup Global Markets, Inc. and Merrill Lynch, Pierce, Fenner & Smith Inc. (In re Tribune Co.), Case No. 12-50446. The complicated nature of the MDL proceedings and their interplay with the Debtors' ongoing bankruptcy proceedings necessitated both bankruptcy and litigation teams working in concert.

36.     Sidley's professionals also continued to monitor the pleadings filed in the various state courts in which actions were pending that were not transferred to the Consolidated Action, for the purpose of alerting the Debtors to pleadings which might impact Eagle New Media Investments, LLC (a Debtor named in certain of the SLCFC Actions), the current and former employees of the Debtors named in the SLCFC Actions, or any Tribune-related entity or party. These monitoring activities, performed at the request of the Debtors' senior management,

required coordination with support staff to review dockets across the United States. At the Debtors' request, Sidley's professionals prepared daily updates, with cumulative updates provided to Tribune's senior management following important milestones in the SLCFC Actions.

### c) Litigation Trust Agreement

37.     During the Forty-Eighth Monthly Fee Period, Sidley's professionals continued to evaluate various legal issues arising in connection with the creation of the Litigation Trust on the Effective Date, including finalizing the terms of the Litigation Trust Agreement. The Litigation Trust was a point of considerable negotiation during the DCL Plan confirmation process. Following confirmation of the DCL Plan, additional negotiations and consultations among the Debtors and various other parties-in-interest, including the Noteholders (who would ultimately receive any recoveries from the Litigation Trust), continued with respect to certain implementation issues and the valuation of the claims that would be transferred from Tribune's bankruptcy estate to the Litigation Trust. Sidley's professionals worked diligently with the Debtors' financial advisors, Alvarez & Marsal, to assign dollar values (using certain probability models) to further this valuation process. Certain aspects of the Litigation Trust Agreement required the input of Sidley's litigation professionals, including issues related to attorney-client privilege, discovery, valuation, and various other litigation-oriented components of the Litigation Trust Agreement. In these efforts, Sidley's Litigation professionals continued to work together with Sidley's Corporate Reorganization and Bankruptcy practice group to finalize the Litigation Trust Agreement and resolve related issues.

### d) Committee-Filed Adversary Proceedings

38.     Prior to the end of the two-year period following the Petition Date, the Committee was authorized by the Court to commence, prosecute and settle on behalf of the Debtors' estates various claims to avoid and recover potentially preferential transfers made by

19

the Debtors to, inter alia, (i) current and former officers, directors and employees (the "Insider Defendants") of Tribune or the other Debtors and (ii) other third-party defendants (the "Third Party Defendants").[15] Beginning on December 3, 2010, the Committee initiated approximately 215 avoidance actions ("Committee-Filed Adversaries").

      39.    Pursuant to the DCL Plan, as of the Effective Date, the Committee no longer has authority to act in its prior role as plaintiff in the Committee-Filed Adversaries.  See DCL Plan § 15.2.  Specifically, Section 5.16 of the DCL Plan provides that, as of the Effective Date, the Debtors will retain certain estate causes of action, including the Committee-Filed Adversaries that are not LBO-Related Causes of Action.[16]  During the Forty-Eighth Monthly Fee Period, Sidley's professionals continued to analyze and prepare procedures to facilitate the substitution of the Reorganized Debtors in place of the Committee as successor-in-interest plaintiffs or prospective plaintiffs, as applicable, in 174 adversary proceedings and with respect to certain tolled avoidance actions, which assert causes of action that will be partially or fully retained by the Debtors as of the Effective Date.  On December 27, 2012, Sidley's professionals filed the Debtors' Motion for an Omnibus Order Authorizing the Substitution of the Reorganized Debtors in Place of the Creditors Committee as Plaintiffs in Certain Adversary Proceedings and Approving Procedures to Evidence this Substitution (Docket No. 12922).   The motion was granted, with certain modifications resulting from discussions between Sidley's professionals and counsel for the Litigation Trustee, following the January 16, 2013 omnibus hearing (Docket No. 13099).

---

[15] See Order authorizing suit against certain Insider Defendants and certain Third Party Defendants dated November 29, 2010 (Docket No. 6658) and order authorizing suit against certain other Third Party Defendants dated November 29, 2010 (Docket No. 6657).

[16] See DCL Plan § 5.16 ("Debtors and their Estates shall retain the Ordinary Litigation Claims.")

46429/0001-9264008V1

e) *Other Pending Litigation*

40.     Prior to the Petition Date and since, Sidley has served the Debtors as defense counsel with respect to a number of non-bankruptcy litigation matters pending in all levels of state and federal courts across the country.  Sidley continued to represent the Debtors and their non-Debtor affiliates in connection with various litigation matters during the Forty-Eighth Monthly Fee Period, to the extent such matters were not stayed by section 362(a) of the Bankruptcy Code, and also provided advice to the Debtors in connection with certain proofs of claim filed by the plaintiffs on account of such litigated matters.

**G.     Travel Time (30480):   Hours: 2.00  Fees: $600.00**

41.     The time billed to this matter during the Forty-Eighth Monthly Fee Period relate to local travel within New York, New York for the purpose of effectuating distributions on account of allowed claims on the Effective Date.  The hours reflect non-working travel time and the fees requested in this matter category have been reduced by 50% in accordance with Local Rule 2016-2(d)(viii).

**H.     Professional Retention (30510):   Hours: 18.50    Fees: $9,886.00**

42.     The Debtors' large and diverse businesses require the employment and retention of a variety of professionals to support these bankruptcy proceedings and to continue managing the litigation, real estate, tax, accounting, and other needs of their business operations in the ordinary course.  Sidley has advised the Debtors as they have requested throughout these chapter 11 cases with respect to the retention and continued employment of various professionals to perform those tasks.

43.     Specifically, during the Forty-Eighth Monthly Fee Period, Sidley's professionals (i) coordinated with the Debtors' legal department and financial advisors to prepare and file a quarterly report of proposed payments to ordinary course professionals ("OCPs")

21

(Docket No. 12943); (ii) coordinated with certain OCP firms retained by the Debtors to assist

such professionals with preparing and filing fee applications on behalf of their firms; (iii) drafted

and filed a Supplemental Application for an Order Modifying the Scope of the Debtors'

Retention of Paul, Weiss, Rifkind, Wharton & Garrison LLP as Special Counsel to Include

Certain Real Estate Emergence Matters (Docket No. 12405), and (iv) addressed other legal

issues relating to the retention and payment of professionals as they arose.

**I.**    **Tax Matters (30520):   Hours: 133.00   Fees: $77,386.00**

        44.    During the Forty-Eighth Monthly Fee Period, Sidley's tax professionals

continued to advise the Debtors with respect to a variety of discrete tax issues, both arising from

and in connection with the Debtors' chapter 11 cases and in connection with Sidley's

representation of the Debtors in tax matters in the ordinary course of the Debtors' business.  For

example, Sidley's professionals reviewed and analyzed tax-related claims and liabilities,

considered the tax implications of proposed transactions, handled appeals of tax assessments,

advised the Debtors with respect to potential settlements of tax claims, and communicated with

taxing authorities concerning all such matters.

        45.    Much of the time of Sidley's Tax and Corporate Reorganization and

Bankruptcy professionals in this category during the Forty-Eighth Monthly Fee Period was

dedicated to extensive research, internal memoranda and meetings regarding post-emergence tax

issues.  Of particular importance was the analysis and assessment of the tax consequences of the

Restructuring Transactions.  Sidley's tax professionals also advised the Debtors and consulted

with the other DCL Plan Proponents with respect to the tax implications of the Litigation Trust

that was established by the DCL Plan.  Sidley spent considerable time researching these issues

and advising the Debtors on the potential tax consequences of the Restructuring Transactions and

the Litigation Trust structure.

46429/0001-9264008V1

46.     Furthermore, Sidley's Corporate Reorganization and Bankruptcy professionals continued to spend considerable time researching complex and interconnected state tax law and bankruptcy law issues and continued preparing a motion (the "CA Tax Motion") seeking (i) the enforcement of a tax settlement with the California State Franchise Tax Board, (ii) a determination that the Debtors have no liability for certain tax related penalties, and (iii) ordering the return of funds held by California by way of unauthorized setoff.  The Debtors ultimately filed the CA Tax Motion after the Effective Date (See Docket No. 13108).  The complexity of the tax and bankruptcy legal issues presented by the CA Tax Motion required extensive research and analysis as well as coordination between Sidley's professionals and the Debtors' management and outside state tax counsel.

**J.     Claims Processing (30530):   Hours: 169.50   Fees: $91,370.00**

47.     During the Forty-Eighth Monthly Fee Period, Sidley's professionals continued evaluating, researching, and analyzing the treatment of various types of claims arising in the Debtors' chapter 11 cases.  To date, over 7,150 proofs of claim have been filed in the Debtors' chapter 11 cases.  Sidley's professionals assigned to handle claims-related matters participated in regular conference calls with the Debtors' financial advisors, Alvarez & Marsal, in order to coordinate the processing of the proofs of claim, evaluation of the legal sufficiency of the claims, and the preparation of objections thereto.

48.     Specifically, Sidley's professionals, working together with the Debtors' management, business personnel, and Alvarez & Marsal, researched, prepared, and filed the Debtors' sixty-second and sixty-third omnibus objections to claims (Docket Nos. 12833 and 12554, respectively) and a stand-alone objection to the $5 million employment litigation-related claim of Marta Waller (Docket No. 12832).  Sidley's professionals also continued their efforts to negotiate and resolve claims objections that had been previously filed by Sidley on behalf of the

23

Debtors.  For example, Sidley's professionals negotiated and filed stipulations, notices, and/or

certifications of counsel resolving (i) a claim from the forty-second omnibus objection to claims

(see Docket No. 12812, approved by order at Docket No. 12822), (ii) the Debtors' objection to

the claim of James Griffin (see Docket No. 12866, approved by order at Docket No. 12874), and

(iii) a claim from the fortieth omnibus objections to claims (see Docket No. 12941).

      49.    Sidley's professionals also assisted the Debtors with negotiating and

implementing agreements and stipulations settling disputed claims on a consensual basis, in

accordance with the Order approving claims settlement procedures that was entered by the Court

to facilitate consensual resolution of claims (Docket No. 2657).[17]  In connection therewith,

during the Forty-Eighth Monthly Fee Period, Sidley's professionals negotiated, prepared, and

filed a motion to approve a stipulation between certain of the Debtors and Universal City Studios

Productions, LLLP, NBC Studios LLC, NBC News, NBC Subsidiary WTVJ-TV LP, and

Universal Worldwide Television Inc. regarding the resolution of certain claims (Docket No.

12887).

      50.    In addition, Sidley's professionals performed significant work to analyze

and attempt to resolve claims informally with claimants or their counsel.  Although this work is

often not memorialized by filings with the Bankruptcy Court, such as a stipulation or filed

objection, it nevertheless added significant value to the Debtors' chapter 11 cases and will aid the

Debtors by continuing to reduce the unresolved claims that remain on the claims register.  This

will be beneficial to the Debtors as they transition into post-bankruptcy operations and allow the

---

[17] Those procedures provided the Debtors with authority during the chapter 11 cases to settle or compromise disputed claims of less than $50,000 in their discretion, claims equal to or greater than $50,000 but less than $1,000,000 upon notice to the United States Trustee and counsel to the Committee and certain senior lenders, and claims equal to or greater than $1,000,000 with the approval of the Court pursuant to Bankruptcy Rule 9019.

46429/0001-9264008V1

Debtors to focus on the prospective operations of their various business rather than expending time and efforts on legacy bankruptcy issues.

**K.**   **Business Operations (30550):   Hours:  49.00   Fees:  $26,077.26**

51.   The Business Operations matter category encompasses the activities of Sidley's professionals with respect to their representation of the Debtors in corporate and transactional matters in the ordinary course of the Debtors' business, as well as other general corporate law and transactional advice, both related to these chapter 11 cases and otherwise related to the Debtors' businesses.  These services were necessary to facilitate the Debtors' efforts to reposition their businesses through cost saving and revenue enhancing strategies, as well as to prepare the Debtors for their emergence from chapter 11.

52.   During the Forty-Eighth Monthly Fee Period, Sidley's professionals expended substantial time and effort to prepare, research, and analyze potential value maximization strategies regarding the Debtors and certain of the Debtors' properties.  Sidley's professionals also addressed a variety of discrete matters arising postpetition in the ordinary course of the Debtors' business, including the review of certain potential transactions, joint-venture related issues, utility supply agreements, contracts, leases, licenses, and general corporate governance and business planning matters.

**L.**   **Case Administration (30560):   Hours:  40.00   Fees:  $17,073.50**

53.   During the Forty-Eighth Monthly Fee Period, Sidley's professionals engaged in various general case administration tasks, including reviewing and reporting on docketed filings to the Debtors' senior management and maintaining a schedule of critical dates and deadlines.  Specifically, Sidley's paraprofessionals were responsible for monitoring the main case docket as well as adversary and appeals dockets for all filed pleadings and preparing and distributing a daily status report to the Debtors' senior management and Sidley professionals, at

25

the request of the Debtors' senior management. Sidley's professionals also prepared and filed a motion to amend the case caption as of the Effective Date, to reflect the successor corporate entities following the consummation of the Restructuring Transactions (see Docket No. 12915).

**M.    Creditor Communications (30570):   Hours: 1.60   Fees: $922.50**

54.    During the Forty-Eighth Monthly Fee Period, Sidley's professionals responded to inquiries and communications from individual creditors as well as from representatives of larger groups of the Debtors' creditor constituencies regarding the status of the Debtors' chapter 11 cases. As a convenience to individual creditors, particularly individuals who are generally new to and/or unfamiliar with the bankruptcy process and their role therein, the Debtors established a dedicated Tribune bankruptcy "hotline." This toll-free number connects directly to a voice mailbox maintained by Sidley. Since the inception of the hotline, typical callers have been bond holders, brokerage firms calling on behalf of clients, former employees of the Debtors, pro se creditors, and attorneys for creditors. Questions posed to Sidley's professionals by the Debtors' creditors ranged from specific questions regarding claims treatment under the DCL Plan to general inquiries regarding the status of the chapter 11 cases.

**N.    Employee Matters (30590):   Hours: 22.50   Fees: $18,580.00**

55.    During the Forty-Eighth Monthly Fee Period, Sidley's professionals in the Corporate Reorganization and Bankruptcy and Employment practice groups continued to advise the Debtors with respect to various legal issues pertaining to employee-related matters, including negotiating employment contracts and negotiating termination and severance of former employees. Sidley's professionals also advised the Debtors with respect to the structure and implementation of their tax-qualified and non-tax-qualified employment-related incentive, benefit, pension, and severance plans, addressed inquiries from the Debtors' management and creditors regarding those plans, and made appropriate adjustments to such plans in response. In

26

addition to the foregoing, Sidley's professionals responded to inquiries from the Debtors'

management and in-house employment lawyers regarding various employment issues, reviewed

consulting contracts, responded to numerous information requests from and/or regarding current

and former employees, and handled various other issues in connection with the Debtors'

employees.

**O.      Exit Credit Facility (13700):   Hours: 7.30   Fees: $4,941.50**

        56.      During the Forty-Eighth Monthly Fee Period, Sidley's professionals

continued to provide services to the Debtors relating to the evaluation, negotiation, and expected

implementation of financing facilities to provide a source of funding for the reorganized Debtors

upon their emergence from their chapter 11 cases.  The DCL Plan authorizes the Debtors to

procure exit financing on terms consistent with an exit financing term sheet in the Plan

Supplement (the "Exit Facility").  (See DCL Plan §§ 1.1.87, 1.1.88, 5.10, and Exhibit 5.10.)  The

DCL Plan also contemplates that the Debtors will enter into a new senior secured term loan or a

replacement facility in addition to the Exit Facility (the "Term Loan Facility" and together with

the Exit Facility, the "Proposed Facilities").  (See DCL Plan §§ 1.1.145, 1.1.146, 5.6, and Exhibit

5.6.)

        57.      Sidley's professionals, together with the Debtors' outside counsel for

certain financing matters, continued to review and analyze potential financing terms and

alternatives for each of the Proposed Facilities and advised the Debtors' senior management

regarding their post-emergence liquidity needs and financing options.  Sidley's professionals also

continued drafting and completed documentation seeking approval of entry into certain letter

agreements in connection with the Proposed Facilities.  The bulk of the work done by Sidley's

professionals concerned the finalization of letters of credit, engagement letters, commitment

letters, fee letters, and expense letters in connection with the Proposed Facilities.

27

## II.    Expenses Incurred in the Forty-Eighth Monthly Fee Period

58.    Sidley incurred expenses of $155,546.84 in connection with its services rendered to the Debtors during the Forty-Eighth Monthly Fee Period.  These expenses represent actual out-of-pocket costs for items incurred exclusively for the direct benefit of the Debtors, including, but not limited to, duplicating charges, document delivery and messenger services, telephone and facsimile charges, computer-assisted legal research, travel-related expenses, overtime services, in-house document production, and professional services from contract attorneys relating to discovery activities.

59.    Sidley submits that all such expenses are necessary and actual expenses for the performance of its services in these cases, and further submits that many of such expenses were necessitated by the time constraints under which Sidley's professionals and staff have operated in these cases.  Additional information respecting certain categories of expenses are described below.  A summary of all expenses incurred by type of expense is incorporated into this Application as part of Attachment B hereto.  The invoices detailing the expenses incurred by Sidley in connection with its services rendered to the Debtors during the Forty-Eighth Monthly Fee Period is provided in Exhibit 1 to this Application.

a)    "Search Services"

60.    Approximately 78%, or $121,413.55, of the expenses incurred by Sidley during the Forty-Eighth Monthly Fee Period related to corporate records services that were required to consummate the Restructuring Transactions as of the Effective Date of the DCL Plan. As described above in ¶ 19, the Restructuring Transactions consisted of more than one hundred individual transactions and involved substantially all of the entities within the Debtors' corporate structure, a number of investments and joint venture interests, and more than two dozen newly-formed entities.  The completion of the Restructuring Transactions required voluminous

28

documentation to be filed with secretary of state offices, state and local tax offices, registrars of deeds, and other governmental authorities throughout the United States and in certain foreign jurisdictions in order to form new entities, effect mergers, effect conversions, effect certain transfers of title, assets, and liabilities, and withdraw, qualify, and re-qualify the Debtors to do business where necessary.  The charges in this category reflect the filing fees and other charges incurred in connection with those filings.

### b)  Document-Related Expenses

61.    Sidley's normal billing practices, as set forth in the pleadings supporting its retention in these chapter 11 cases, include standard secretarial services as part of normal overhead.  For certain projects involving large and/or time-sensitive administrative and logistical requirements resulting from client needs, Sidley utilizes the services of third-party providers in the place of clerical personnel on staff during normal business hours and bills those services to the client at Sidley's cost for such services.  During the Forty-Eighth Monthly Fee Period, Sidley charged a total of $2,398.56 relating to in-house duplication, outside document production, document processing and/or document binding/drilling services that were billed to the Debtors at cost; that is, no markup for such services is applied by Sidley.[18]

### c)  Computer-Assisted Research

62.    Computer research and information retrieval services are charged on a time, item and/or search-type basis which takes advantage of certain discounts that Sidley is able to negotiate with the relevant service providers because of the Firm's size and volume of usage. The Firm's charges for computerized legal research such as Westlaw or Lexis are based on a rate that recovers no more than the Firm's costs.

---

[18] By agreement between Sidley and the Office of the United States Trustee, Sidley has not charged the Debtors for any expenses relating to third-party proof-reading services.

### d) Overtime

63.     It is Sidley's standard practice and policy to reimburse professionals and

staff for overtime meals and overtime transportation home when working late, provided such

professional or staff member has worked a certain number of hours per day on a particular client

matter.  Additionally, Sidley provides overtime pay to certain eligible staff employees when they

are required to work past normal business hours on a particular client matter.  Sidley incurred

$2,087.99 in overtime expenses during the Forty-Eighth Monthly Fee Period.  Sidley submits

that all requested overtime expenses are reasonable given the time demands in these cases during

the Forty-Eighth Monthly Fee Period.

### e) Legal Support Services

64.     During the Forty-Eighth Monthly Fee Period, Sidley charged a total of

$20,025.84 for Legal Support Services, which were billed to the Debtors at cost.  In connection

with Sidley's ongoing maintenance of the Document Depository, in which the equivalent of

approximately 5.82 million pages of documents relating to the Leveraged ESOP Transactions are

electronically stored, Sidley utilized the services of an outside vendor, LD Discovery, to host and

process electronic data files for production upon request to Depository Designees and creditor

constituencies authorized to receive such documents.  Consistent with past Applications, the vast

majority of expenses incurred by Sidley in connection with Legal Support Services ($12,877.50)

relates to the services provided by LD Discovery.  Sidley also incurred $1,759.50 in out-of-

pocket costs to host the electronic transcripts from the two confirmation-related trials in 2011

and 2012, which are charged on a monthly basis by Trial Graphix, Inc.

## REQUEST FOR FINAL APPROVAL OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

65.     By this Application, Sidley requests final approval of all fees and expenses

incurred by Sidley in this case during the Final Fee Period of December 8, 2008 through and

including December 31, 2012 in the amount of $100,655,700.22[19] together with reimbursement for actual and necessary expenses incurred in the amount of $5,413,007.39.[20]  In support of its request for the final allowance of all fees and expenses incurred by Sidley during the Final Fee Application, Sidley incorporates herein by reference each of its Monthly Fee Applications and Quarterly Fee Application Requests, together with the certifications of counsel, reports of the Fee Examiner, and orders of this Court relating to the same.  A complete list of such filings is attached hereto as Exhibit 2.

66.    During the Final Fee Period, Sidley performed necessary services and incurred out-of-pocket disbursements for the Debtors and their estates.  As set forth in prior Monthly Fee Applications, Quarterly Fee Application Requests, and in this Application, in accordance with the factors enumerated in 11 U.S.C. § 330, approval of the fees requested for the Final Fee Period is fair and reasonable given (a) the complexity of this case, (b) the time expended by Sidley's professionals and paraprofessionals on behalf of the Debtors and their estates, (c) the nature and extent of the services rendered, (d) the value of such services to the Debtors and their estates, and (e) the costs of comparable services other than in a case under this title.  In addition, the out-of-pocket disbursements for which reimbursement is sought were actual, reasonable, and necessary costs (i) incurred by Sidley while representing the Debtors and (ii) of preserving the value of the Debtors' estates.

_____

[19] The amount of final compensation sought by Sidley is equal to the sum of all fees previously approved by this Court for Sidley's First Quarterly Fee Application Request through the Fourteenth Quarterly Fee Application Request, plus the fees requested by Sidley in its Fifteenth Quarterly Fee Application Request, Sixteenth Quarterly Fee Application Request, and Forty-Eighth Monthly Fee Application.

[20] The amount of final expense reimbursement sought by Sidley is equal to the sum of all expenses previously approved by this Court for Sidley's First Quarterly Fee Application Request through the Fourteenth Quarterly Fee Application Request, plus the expense requested by Sidley in its Fifteenth Quarterly Fee Application Request, Sixteenth Quarterly Fee Application Request, and Forty-Eighth Monthly Fee Application.

## REVIEW OF APPLICABLE LOCAL RULE

67.    The undersigned has reviewed the requirements of Local Rule of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware 2016-2 and certifies to the best of his information, knowledge and belief that this Application substantially complies with Rule 2016-2.

## NOTICE

68.    Notice of this Application has been served upon the Notice Parties specified in the Fee Orders.  In accordance with the terms of the Fee Orders, Sidley respectfully submits that no other or further notice is required.

## NO PRIOR REQUEST

69.    Other than the applicable Monthly Fee Applications, no previous application respecting the relief requested herein has been made to this or any other Court.

46429/0001-9264008V1

WHEREFORE, Sidley Austin LLP respectfully requests the Court (i) to approve, pursuant to 11 U.S.C. §§ 327, 331, and 503, (a) approval of compensation for professional legal services in the amount of $1,567,750.94 and reimbursement of expenses incurred in the amount of $155,546.84 for the Forty-Eighth Monthly Fee Period, and (b) approval of final compensation for professional legal services in the amount of $100,655,700.22 and reimbursement of expenses incurred in the amount of $5,413,007.39 for the Final Fee Period, (ii) to authorize the payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley for the periods covered by this Application pursuant to the procedures set forth in the Interim Compensation Order and the Fee Examiner Order, and (iii) to grant such further relief as is just and proper.

Dated: February 14, 2013

Respectfully submitted,

James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Attorneys for Reorganized Debtors