## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Reorganized Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: March 13, 2013 at 1:00 p.m. (ET)**<br>**Obj. Deadline: March 6, 2013 at 4:00 p.m. (ET)** |

## LITIGATION TRUSTEE'S MOTION FOR AN OMNIBUS ORDER: (I) AUTHORIZING SUBSTITUTION OF THE LITIGATION TRUSTEE AS PLAINTIFF IN CERTAIN ADVERSARY PROCEEDINGS AND APPROVING PROCEDURES TO EVIDENCE SUCH SUBSTITUTIONS; (II) MODIFYING THE STAY OF SUCH PROCEEDINGS; AND (III) EXTENDING THE TIME TO EFFECT SERVICE IN SUCH PROCEEDINGS

---

[1] The Reorganized Debtors are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (55! 0); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicago Land Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); ForSaleByOwner.com Corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. ( 4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); N01th Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931 ); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., nlk/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entettainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (I 035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Ttibune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., t/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0 191 ). The Reorganized Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## TABLE OF CONTENTS

Page

JURISDICTION AND VENUE ........................................................................ 2

BACKGROUND ............................................................................................ 2

The Current Status Of The Bankruptcy Case ............................................. 2

The History Of The Trust Substitution Claims............................................ 3

The Treatment Of The Trust Substitution Claims Under The DCL Plan .................... 5

The Reorganized Debtors' Substitution Motion .......................................... 10

ARGUMENT ................................................................................................ 13

    I.    The Litigation Trustee Should Be Substituted As The Successor-In-Interest Plaintiff With Respect To The Trust Substitution Claims ............................ 13

        A.    The LBO Avoidance Actions .................................................... 14

        B.    The LBO Insider Actions.......................................................... 15

        C.    The Tolled Morgan Stanley Claims.......................................... 19

    II.    The Court Should Extend The Stay Of The Trust Substitution Adversaries And Permit Parties to File Motions Before the JPML Notwithstanding The Stay ...................................................................... 19

    III.    The Court Should Extend The Time To Complete Service of Process In The Trust Substitution Adversaries .......................................................... 21

NOTICE........................................................................................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allstate Prop. & Cas. Ins. Co. v. Squires,*
    667 F.3d 388 (3d Cir. 2012) ........................................................................16

*Baroda Hill Invs., Ltd. v. Telegroup, Inc. (In re Telegroup, Inc.),*
    281 F.3d 133 (3d Cir. 2002) ...................................................................16, 17

*Boley v. Kaymark,*
    123 F.3d 756 (3d Cir. 1997) ........................................................................21

*Cain v. Abraxas,*
    209 F.App'x 94 (3d Cir. 2006) .....................................................................22

*In re Chateaugay Corp.,*
    201 B.R. 48 (Bankr. S.D.N.Y. 1996) ..........................................................19

*In re Fibermark,*
    369 B.R. 761 (Bankr. D. Vt. 2007) ..............................................................19

*Golden v. Guardian,*
    319 B.R. 819 (Bankr. D. Del. 2005) .............................................................22

*Hutchinson v. Del. Sav. Bank FSB,*
    410 F. Supp. 2d 374 (D.N.J. 2006) ..............................................................13

*John F. Harkins Co., Inc. v. Waldinger Corp.,*
    796 F.2d 657 (3d Cir. 1986) ........................................................................18

*Langston Law Firm v. Miss.,*
    410 B.R. 150 (S.D.N.Y. 2008) .....................................................................19

*Luxliner P.L. Exp., Co. v. RDV Luxliner, Inc.,*
    13 F.3d 69 (3d Cir. 1993) ............................................................................13

*McCurdy v. Am. Bd. of Plastic Surgery,*
    157 F.3d 191 (3d Cir. 1998) ........................................................................21

*MCI Telecomm. Corp. v. Teleconcepts, Inc.,*
    71 F.3d 1086 (3d Cir. 1995) ........................................................................22

*Pac. Ins. Co. v. Liberty Mut. Ins. Co.,*
    956 A.2d 1246 (Del. 2008) ..........................................................................16

*PCT v. New England Confectionary Co.*,
    No. 05-78096, 2006 WL 1062476 (Bankr. D. Del. Apr. 20, 2006) ..................................21

*Petrucelli v. Bohringer & Ratzinger*,
    46 F.3d 1298 (3d Cir. 1995)..........................................................................................21

*Safeway, Inc. v. Liberty Mut. Ins. Co.*,
    No. 08–460, 2009 WL 1209068 (D. Del. Apr. 30, 2009)........................................................16

*Volvo White Truck Corp. v. Chambersburg Beverage, Inc.*,
    75 B.R. 944 (Bankr. N.D. Ohio 1987)..................................................................................19

## STATUTES

Fed. R. Bankr. P. 7025 ...........................................................................................................13

Fed. R. Civ. P. 4(m) ......................................................................................................21, 22, 23

Fed. R. Civ. P. 25(c) ...............................................................................................................13

## OTHER AUTHORITIES

ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 7025.04 ...........................13

Marc S. Kirschner, as Litigation Trustee (the "Litigation Trustee") for the Tribune

Litigation Trust (the "Litigation Trust"), hereby moves this Court (the "Motion") for entry of an

order, substantially in the form attached hereto as Exhibit A, and pursuant to the Fourth

Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (as Modified

July 19, 2012, the "DCL Plan") [D.I. 12072]:

(i)     authorizing the substitution of the Litigation Trustee as the successor-in-interest plaintiff in the adversary proceeding (the "LBO Lender Action") captioned *Official Committee of Unsecured Creditors v. JPMorgan Chase Bank, N.A., et al. (In re Tribune Co.)*, Adv. Proc. No. 10-53963 (Bankr. D. Del.) (KJC) solely with respect to Counts One, Two, Three, Six, Eight, Nine, and Eleven (the "LBO Lender Trust Claims"), as against the defendants listed on Exhibit B attached hereto (the "Non-Settling Step Two Payees");

(ii)    authorizing the substitution of the Litigation Trustee as the successor-in-interest plaintiff in the adversary proceeding (the "LBO Preference Action," and together with the LBO Lender Action, the "LBO Avoidance Actions") captioned *Official Committee of Unsecured Creditors v. JPMorgan Chase Bank, N.A., et al. (In re Tribune Co.)*, Adv. Proc. No. 10-55969 (Bankr. D. Del.) (KJC) solely with respect to Count One (the "LBO Preference Trust Claims"), as against the Non-Settling Step Two Payees;

(iii)   authorizing the substitution of the Litigation Trustee as the successor-in-interest plaintiff in the various adversary proceedings that are listed on Exhibit C hereto (the "LBO Insider Actions," and together with the LBO Lender Action and the LBO Preference Action, the "Trust Substitution Adversaries") solely with respect to the claims asserted therein that are owned by the Litigation Trust, which are listed on Exhibit C hereto (collectively with the LBO Lender Trust Claims and LBO Preference Trust Claims, the "Trust Substitution Claims");

(iv)    authorizing the substitution of the Litigation Trustee as a party to the Morgan Stanley Tolling Agreement, and the prospective plaintiff with respect to the Tolled Morgan Stanley Claims, each as defined below;

(v)     approving procedures to evidence each substitution whereby the Litigation Trustee will file notices substantially in the forms attached hereto as Exhibit D, Exhibit E, or Exhibit F on the dockets of the Trust Substitution Adversaries;

(vi)    modifying the stay of the Trust Substitution Adversaries in order to (a) permit all parties to the Trust Substitution Claims to file notices and pleadings before the Judicial Panel on Multidistrict Litigation (the "JPML") with respect to those claims notwithstanding the stay; and (b) extend the stay until the earlier of

1

September 30, 2013 or the date that the Trust Substitution Claims are transferred by order of the JPML; and

(vii)    extending the time to complete service of process with respect to the Trust Substitution Claims through and including a date that is 120 days after the Court issues an order on this Motion.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### THE CURRENT STATUS OF THE BANKRUPTCY CASE

2.      On December 8, 2008, Tribune Company ("Tribune") and certain of its subsidiaries (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").[2]  The chapter 11 cases were consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b).

3.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") in these cases.

4.      On July 23, 2012, the Court entered an order (the "Confirmation Order") [D.I. 12074] confirming the DCL Plan.

5.      On December 31, 2012 (the "Effective Date"), the DCL Plan became effective. *See* Notice of (I) Effective Date of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries; and (II) Bar Date for Certain Claims (Dec. 31, 2012) [D.I. 12939].

---

[2] An additional Tribune affiliate, Chicago National League Ball Club, LLC ("CNLBC"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.

2

**THE HISTORY OF THE TRUST SUBSTITUTION CLAIMS**

6.      On October 27, 2010, the Court entered an order [D.I. 6150] granting the

Committee authority to pursue various claims relating to the leveraged buy-out of Tribune that

occurred in 2007 (the "LBO").  On November 29, 2010, the Court entered two additional orders

[D.I. 6657 and 6658] authorizing the Committee to pursue claims to avoid and recover

preferential transfers made by the Debtors to current and former officers, directors and

employees of Tribune.  These three orders are collectively referred to herein as the "Standing

Orders."

7.      Beginning on December 3, 2010, and pursuant to the Standing Orders, the

Committee initiated several avoidance actions (the "Committee-Filed Adversaries") against,

among others, various third parties as well as current and former officers, directors, employees,

and shareholders of Tribune.

8.      The following two Committee-Filed Adversaries were subsequently transferred to

the United States District Court for the Southern District of New York (the "Southern District")

for coordinated and consolidated pretrial proceedings with other related actions: (i) *Official

Committee of Unsecured Creditors of the Tribune Company v. FitzSimons, et al.*, Adv. Proc. No.

10-54010 (Bankr. D. Del.) (KJC) (the "FitzSimons Action"); and (ii) *Tribune Company, et al. v.

Citigroup Global Markets Inc., et al.*, Adv. Proc. No. 12-50446 (Bankr. D. Del.) (KJC) (the

"Advisor Action," and together with the FitzSimons Action, the "Transferred Actions").

9.      On January 11, 2013, the Honorable William H. Pauley III of the Southern

District issued an order substituting the Litigation Trustee as the successor-in-interest

plaintiff in the Transferred Actions.  *See* Order, *In re: Tribune Fraudulent Conveyance

Litig.*, 11-md-02296-WHP (S.D.N.Y. Jan 11, 2013) [D.I. 2179].

3

10.    The following Committee-Filed Adversaries remain pending before this Court:

(i)    The LBO Lender Action, which was commenced by the Committee against, among others, the agents and lenders who provided the financing for the LBO (the "LBO Debt") and the parties who purchased the debt thereafter (collectively, the "LBO Lenders"), and asserts claims to avoid, subordinate, disallow and/or recover payments made under the loan agreements governing the LBO Debt (the "LBO Loan Agreements") under theories including constructive and intentional fraudulent conveyance, estoppel, unjust enrichment, preference, and aiding and abetting breach of fiduciary duty;

(ii)    The LBO Preference Action, which was commenced by the Committee against the LBO Lenders, and asserts claims to avoid and recover payments made under the LBO Loan Agreements as preferences; and

(iii)    The LBO Insider Actions, which were commenced by the Committee against current and former officers, directors and employees of Tribune, and assert claims to avoid and recover certain pre-petition transfers as preferences and/or fraudulent conveyances. 37 of these adversary proceedings assert Trust Substitution Claims.

11.    In addition, on December 6, 2010, the Debtors and the Committee entered into an agreement (the "Morgan Stanley Tolling Agreement") with Morgan Stanley & Co., Inc. and its affiliates (collectively, "Morgan Stanley") to toll the statute of limitations that would apply to various preference actions (the "Tolled Morgan Stanley Claims") that may be brought on behalf of the Debtors' estates against Morgan Stanley. The Tolled Morgan Stanley Claims are separate and apart from claims that have been asserted against Morgan Stanley in the FitzSimons Action.

12.    The Standing Orders broadly stayed all litigation of the Committee-Filed Adversaries, including the Trust Substitution Adversaries. Specifically, the Standing Orders provided that all of the Committee-Filed Adversaries:

> shall be deemed stayed, . . . until a Termination Event occurs . . . . All applicable deadlines, other than those applicable to the discovery permitted in this Order, are suspended during the period of the Stay. All motion practice (other than motions respecting confidentiality, motions to lift, extend or otherwise respecting the Stay, motions with respect to the discovery permitted by this Order, motions to intervene and motions

.

regarding settlements consistent with the terms of this Order) and
contested hearings or trials are prohibited.

Standing Orders, 3, 4. The Standing Orders originally defined the term "Termination Event" to

mean the earlier of (i) the date on which the "Committee and/or the Debtors withdraw their

support for the [DCL Plan]"; (ii) the date on which "the Court declines to confirm the [DCL

Plan]"; or (iii) April 1, 2011. *See* Standing Orders, 2, 3.

13.       On July 9, 2012, the Court issued an order (the "Extension Order") [Docket No.

11968] modifying the definition of "Termination Event" (and, thereby extending the stay) to "a

date that is ninety (90) days after the effective date of a confirmed plan of reorganization for

Tribune." *See* Extension Order, 2. Under this amended definition of "Termination Event," the

stay of the Committee-Filed Adversaries is currently set to lift on March 31, 2013. The Court

also granted the Committee's request for an extension of time to complete service of process

with respect to the Committee-Filed Adversaries "until a date that is ninety (90) days after the

effective date of a confirmed plan of reorganization for Tribune," so that the Committee would

have additional time to identify and locate certain defendants. *See id.* Consequently, the time to

complete service of process with respect to the Committee-Filed Adversaries is set to expire on

March 31, 2013.

14.       The Extension Order further provided that the order was "without prejudice to the

right of the Committee (or any successor to the Committee . . .) to request additional extensions

to the stays in the [Committee-Filed Adversaries] or enlargements of time for service of process

or any other deadline(s) in the [Committee-Filed Adversaries] in the future . . . ." *Id.*

THE TREATMENT OF THE TRUST SUBSTITUTION CLAIMS UNDER THE DCL PLAN

15.       The DCL Plan provides that, on the Effective Date, the appointment of the

Committee terminates and the Committee's continued existence shall be limited to only certain

enumerated purposes — none of which include continuing to act as plaintiff in the Committee-Filed Adversaries or as a prospective plaintiff in the Tolled Morgan Stanley Claims. *See* DCL Plan § 15.2. The DCL Plan further provides that either the Litigation Trustee or the Reorganized Debtors shall succeed as the successor-in-interest plaintiff in the Committee-Filed Adversaries with respect to certain claims that are preserved under the DCL Plan, depending upon the type of claim asserted.

16.     Specifically, the DCL Plan states that, as of the Effective Date, the Litigation Trust owns all "Preserved Causes of Action." *See* DCL Plan §§ 13.2.1, 13.2.4. The DCL Plan defines the term "Preserved Causes of Action" as:

> **(a) *any and all LBO-Related Causes of Action that the Tribune Entities or the Debtors' Estates may have or are entitled to assert on behalf of their respective Estates (whether or not asserted) against the Non-Settling Defendants under any provision of the Bankruptcy Code or any applicable nonbankruptcy law including, without limitation, any and all claims under chapter 5 of the Bankruptcy Code*;** (b) Advisor Claims; (c) ***Morgan Stanley Claims***; and (d) ***claims and causes of action against Non-Settling Step Two Payees to the extent such claims or causes of action seek recovery of payments (i) under the Senior Loan Agreement on account of the Incremental Senior Loans or (ii) under the Bridge Loan Agreement, in each case whether based on avoidance and disallowance of Senior Loan Claims or Bridge Loan Claims or any other theory***; provided, however, that Preserved Causes of Action shall not include the Disclaimed State Law Avoidance Claims or any claims, causes of action, suits or proceedings that have been released or settled on or prior to the Effective Date. ***For avoidance of doubt, all claims that were asserted against any Person (except for Released Stockholder Parties) in the complaint filed by the Creditors' Committee on January 11, 2012, in the lawsuit entitled Official Committee of Unsecured Creditors of the Tribune Company v. FitzSimons, et al. (In re Tribune Co.), Adv. Proc. No. 10-54010 (Bankr. D. Del.) (KJC) are Preserved Causes of Action*** and are not released pursuant to this Plan or the Confirmation Order. . . .

DCL Plan § 1.1.174 (emphasis added).

17.     The DCL Plan defines "LBO-Related Causes of Action" as

> ***all claims*** (including, without limitation, claims for pre- and post-judgment interest to the extent allowable), obligations, suits, judgments, damages, debts,

6

rights, remedies, causes of action, avoidance powers or rights, liabilities of any nature whatsoever, and legal or equitable remedies *against any Person arising from the leveraged buy-out of Tribune that occurred in 2007*, including, without limitation, the purchase by Tribune of its common stock on or about June 4, 2007, the merger and related transactions involving Tribune on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction, regardless of whether such claims, causes of action, avoidance powers or rights, or legal or equitable remedies may be asserted pursuant to the Bankruptcy Code or any other applicable law.

DCL Plan § 1.1.119 (emphasis added).

18.     The DCL Plan defines "Non-Settling Step Two Payees" as LBO Lenders who received pre-petition payments in connection with the LBO Debt that was issued in connection with the second step of the LBO, and who did not contribute to a settlement set forth in the DCL Plan that released the step two LBO Lenders from claims to avoid and recover such prepetition payments. DCL Plan § 1.1.154. A list of the Non-Settling Step Two Payees is attached hereto as Exhibit B.

19.     Additionally, as relevant to this Motion, "Morgan Stanley Claims" are defined by the DCL Plan as:

all claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, and including any and all rights, claims and actions (including avoidance actions arising under chapter 5 of the Bankruptcy Code) that Tribune or any of its Affiliates may have against [Morgan Stanley Capital Services Inc. or its affiliates ("MSCS")] except for claims against MSCS arising solely in its capacity as a holder of Senior Loan Claims that do not arise from trading by MSCS in Senior Loan Claims.

DCL Plan § 1.1.138.

20.     Conversely, the DCL Plan provides that, on the Effective Date, the Reorganized Debtors retain the right to "enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Ordinary Litigation Claims." *See* DCL Plan § 5.16. The DCL Plan defines the term "Ordinary Litigation Claims" as:

the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold

against any Person as of the Petition Date including, without limitation, any and all claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold under chapter 5 of the Bankruptcy Code that do not arise from the leveraged buy-out of Tribune that occurred in 2007. Notwithstanding anything to the contrary in this definition, Ordinary Litigation Claims shall include, without limitation, any action for avoidance and recovery of payments arising from stock options, restricted stock units and/or deferred compensation paid to the Debtors' current or former officers, directors and/or employees; provided, however, *Ordinary Litigation Claims shall not include* (a) any claim, right of action, suit or proceeding that has been settled on or prior to the Effective Date, (b) the Released LBO-Related Causes of Action, (c) other claims, rights of action, suits or proceedings waived or released pursuant to Article XI of this Plan, (d) *the Preserved Causes of Action against the Non-Settling Defendants, except, for the avoidance of doubt, the actions described in this sentence preceding the word "provided"*, (e) the Disclaimed State Law Avoidance Claims, and (f) *any claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any of the Debtors' current or former officers, directors and/or employees for payments on any phantom equity grant pursuant to the 2007 Management Equity Incentive Plan or success bonus compensation arising from the leveraged buy-out of Tribune that occurred in 2007.*

DCL Plan § 1.1.156 (emphasis added).

21.     Based upon these definitions, the Reorganized Debtors and the Litigation Trustee agree that: (i) the Reorganized Debtors now own all claims to avoid and recover payments relating to any stock options, restricted stock units and/or deferred compensation paid to the Debtors' current or former officers, directors and/or employees, and all payments made to offset excise taxes that arose in connection with these payments; and (2) the Litigation Trust now owns claims to avoid and recover payments made to the Debtors' current or former officers, directors and/or employees for phantom equity grants made pursuant to the 2007 Management Equity Incentive Plan ("Phantom Equity Payments") or success bonus compensation ("Success Bonus Payments") arising from the LBO, and all payments made to offset excise taxes ("Phantom Equity And

Success Bonus Excise Tax Payments") that arose in connection therewith. *See* Reorganized Debtors' Substitution Motion, Ex. B. There also appears to be no dispute that the claims against the Non-Settling Step Two Payees that are asserted in the LBO Avoidance Actions now belong to the Litigation Trust.

22.     The Litigation Trustee's understanding is that the sole dispute respecting ownership of claims that are preserved under the DCL Plan respects approximately $46 million in severance payments (the "Executive Transition Payments") that were made to 18 of the Debtors' insiders pursuant to the Debtors' Transitional Compensation Plan, and payments made to offset excise taxes ("Executive Transition Excise Tax Payments," and together with the Phantom Equity and Success Bonus Excise Tax Payments, the "Excise Tax Payments") that arose in connection therewith. The Transitional Compensation Plan required that such payments be made if an employee was terminated within 18 to 36 months (depending upon the type of employee) after the occurrence of a "Change in Control." *See* Ex. G (official summary of the Debtors' Transitional Compensation Plan).

23.     As relevant here, the term "Change in Control" is defined to mean: (i) the acquisition by any person, entity or group — other than Tribune, The Robert R. McCormick Tribune Foundation, the Cantigny Foundation, or any employee benefit plan or trust of Tribune or its subsidiaries — of 20 percent or more of either the then outstanding shares of common stock or the combined voting power of Tribune Company's then outstanding voting securities entitled to vote; or (ii) consummation of a reorganization, merger, consolidation or other transaction whereby the shareholders of Tribune immediately prior to such transaction do not, immediately thereafter, own, directly or indirectly, 50% or more of the combined voting power of the reorganized,

merged or consolidated company. *See id.* The LBO triggered this payment obligation,

because all of the outstanding shares of Tribune were sold to an Employee Stock

Ownership Plan (the "ESOP") as part of the LBO. *See generally* Current Report (Form

8-K), Tribune Company (Dec. 20, 2007).

24.     Pursuant to the Debtors' Transitional Compensation Plan, the company

paid more than $10 million to defendant Dennis FitzSimons, the former CEO and

Chairman of Tribune, seven days after the second step of the LBO closed. An additional

$19.3 million was paid to 6 defendants over the course of the next three months. By the

end of September 2008, an additional $26.4 million had been paid to the remaining 12

defendants who received Executive Transition Payments.

## THE REORGANIZED DEBTORS' SUBSTITUTION MOTION

25.     On December 27, 2012, the Debtors (n/k/a the Reorganized Debtors) filed the

*Motion for an Omnibus Order Authorizing the Substitution of the Reorganized Debtors in Place*

*of the Creditors' Committee as Plaintiffs in Certain Adversary Proceedings and Approving*

*Procedures to Evidence this Substitution* (the "Reorganized Debtors' Substitution Motion") [D.I.

12922]. On January 14, 2013, the Litigation Trustee filed a limited objection to the Reorganized

Debtors' Substitution Motion. *See* Objection to Motion for an Omnibus Order Authorizing the

Substitution of the Reorganized Debtors In Place of the Creditors Committee as Plaintiffs In

Certain Adversary Proceedings and Approving Procedures to Evidence Such Substitutions (Jan

14, 2013) [D.I. 13035].

26.     The Reorganized Debtors' Substitution Motion requested permission to substitute

the Reorganized Debtors as the successor-in-interest plaintiff in certain adversary proceedings

(the "Full Substitution Adversaries") that assert only Ordinary Litigation Claims to avoid and

recover payments made to the Debtors' current or former officers, directors and/or employees

arising from stock options, restricted stock units and/or deferred compensation. *See* Reorganized Debtors' Substitution Motion, Ex. A.

27.     The Reorganized Debtors' Substitution Motion also requested permission to substitute the Reorganized Debtors as the successor-in-interest plaintiff in certain adversary proceedings (the "Split Substitution Adversaries") that assert both: (i) Ordinary Litigation Claims to avoid and recover payments made to the Debtors' current or former officers, directors and/or employees arising from stock options, restricted stock units and/or deferred compensation; and (ii) Preserved Causes of Action to avoid and recover the Phantom Equity Payments or Success Bonus Payments and all Phantom Equity And Success Bonus Excise Tax Payments that arose in connection with therewith. *See* Reorganized Debtors' Substitution Motion, Ex. B. ***The Reorganized Debtors' Substitution Motion did not seek any relief with respect to the Preserved Causes of Action asserted in the Split Substitution Adversaries, which are addressed by this Motion.***

28.     The Reorganized Debtors contended in the Reorganized Debtors' Substitution Motion that the DCL Plan did not resolve the question of whether the Reorganized Debtors or the Litigation Trust own claims to avoid and recover: (i) Executive Transition Payments and Executive Transition Excise Tax Payments; and (ii) stock options, restricted stock units and/or deferred compensation paid to the Debtors' current or former officers, directors and/or employees that are duplicative of claims asserted in the FitzSimons Action.

29.     The Litigation Trustee does not dispute that claims to avoid and recover stock options, restricted stock units and/or deferred compensation paid to the Debtors' current or former officers, directors and/or employees are Ordinary Litigation Claims that belong to the Reorganized Debtor, regardless of whether those claims are asserted in the FitzSimons Action.

The DCL Plan makes clear, however, that claims to avoid and recover the more than $46 million in Executive Transition Payments and related Executive Transition Excise Tax Payments are Preserved Causes of Action that belong to the Litigation Trust. None of these payments would have been made but for the LBO. As such, all of the claims "aris[e] from" the LBO, and thus fall within the definition of Preserved Causes of Action. *See* DCL Plan 1.1.174; 1.1.119. Moreover, all but 5 of the claims to recover Executive Transition Payments and related Executive Transition Excise Tax Payments are duplicative of claims asserted in the FitzSimons Action. Accordingly, these claims fall within the definition of Preserved Causes of Action for that reason as well. *See* DCL Plan 1.1.174.

30.    As such, by this Motion, the Litigation Trustee requests that he be substituted as the potential successor-in-interest plaintiff with respect to the Tolled Morgan Stanley Claims, and the successor-in-interest plaintiff in the Trust Substitution Adversaries with respect to the Tolled Substitution Claims, which comprise (i) claims to avoid and recover Phantom Equity Payments, Success Bonus Payments, Executive Transition Payments, and Excise Tax Payments, and (ii) the claims asserted against the Non-Settling Step Two Payees in the LBO Avoidance Actions. Additionally, the Litigation Trustee seeks: (i) the approval of certain procedures to evidence such substitutions; (ii) an extension of the stay governing these claims (with the exception that parties may file notices and pleadings before the JPML) until the earlier of September 30, 2013 or the date on which the Trust Substitution Claims are transferred by order of the JPML; and (iii) an extension of the time to complete service of process with respect to these claims through and including a date that is 120 days after the Court issues an order on this Motion.

## ARGUMENT

**I.** **THE LITIGATION TRUSTEE SHOULD BE SUBSTITUTED AS THE SUCCESSOR-IN-INTEREST PLAINTIFF WITH RESPECT TO THE TRUST SUBSTITUTION CLAIMS**

31.     Federal Rule of Civil Procedure 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." FED. R. CIV. P. 25(c). Rule 25(c) is made applicable in each of the Trust Substitution Adversaries by Bankruptcy Rule 7025, which states that "Rule 25 F.R.Civ.P. applies in adversary proceedings" subject to certain restrictions not applicable here. Fed. R. Bankr. P. 7025.

32.     The Third Circuit has stated that Rule 25(c) "does not ordinarily alter the substantive rights of parties" but, instead, is "merely a procedural device designed to facilitate the conduct of a case . . . ." *Luxliner P.L. Exp., Co. v. RDV Luxliner, Inc.*, 13 F.3d 69, 71–72 (3d Cir. 1993); *accord* ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 7025.04 (16th ed. 2012) ("When the transfer of the interest takes place during the action, Rule 25(c) becomes applicable and provides that the action may be continued by or against the original party unless the court directs that the transferee of the interest be substituted or joined.").

33.     Courts have routinely found that Rule 25(c) substitution is appropriate where bankruptcy causes of action are transferred. *See, e.g., Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 382 (D.N.J. 2006) ("When, as here, Plaintiffs' causes of action vest in the bankruptcy trustee after the initiation of the lawsuit, Rule 25(c) ensures that the proper person litigates the claims.").

34.     As discussed below, the Trust Substitution Claims are Preserved Causes of Action. Therefore, under the DCL Plan and pursuant to Federal Rule of Civil Procedure 25(c),

this Court should substitute the Litigation Trustee as the successor-in-interest plaintiff with respect to the Trust Substitution Claims.

A.    **The LBO Avoidance Actions**

35.    Counts One, Two, Three, Six, Eight, Nine, and Eleven of the LBO Lender Action, and Count One of the LBO Preference Action assert claims (collectively, the "LBO Avoidance Actions Trust Substitution Claims") against the Non-Settling Step Two Payees to avoid and recover payments made under the Senior Loan Agreement, on account of the Incremental Senior Loans, and the Bridge Loan Agreement (all as defined in the DCL Plan). The DCL Plan expressly provides that these types of claims are Preserved Causes of Action that are not released under the DCL Plan. *See* DCL Plan § 1.1.174 (providing that Preserved Causes of Action include "claims . . . against Non-Settling Step Two Payees to the extent such claims . . . seek recovery of payments: (i) under the Senior Loan Agreement on account of the Incremental Senior Loans; or (ii) under the Bridge Loan Agreement, in each case whether based on avoidance and disallowance of Senior Loan Claims or Bridge Loan Claims or any other theory"). As such, in accordance with the Litigation Trust's ownership of and right to act with respect to Preserved Causes of Action, the Litigation Trustee seeks an order substituting the Litigation Trustee as the successor-in-interest plaintiff in the LBO Avoidance Actions with respect to the LBO Avoidance Actions Trust Substitution Claims asserted against the Non-Settling Step Two Payees.

36.    The Litigation Trustee also seeks approval of a procedure whereby the Litigation Trustee will file: (i) a notice of substitution (the "LBO Lender Action Trust Substitution Notice"), in a form substantially similar to Exhibit D attached hereto, on the docket of the LBO Lender Action to evidence that the Litigation Trustee has been substituted by order of this Court as the successor-in-interest plaintiff with respect to Counts One, Two, Three, Six, Eight, Nine,

14

and Eleven of the complaint pending in that action; and (ii) a notice of substitution (the "LBO Preference Action Trust Substitution Notice"), in a form substantially similar to Exhibit E appended thereto, on the docket of the LBO Preference Action to evidence that the Litigation Trustee has been substituted by order of this Court as the successor-in-interest plaintiff with respect to Count One of the complaint pending in that action.

### B.    The LBO Insider Actions

37.    The LBO Insider Actions assert, *inter alia*, the following claims (the "LBO Insider Actions Trust Substitution Claims"): (i) claims to avoid and recover Phantom Equity Payments; (ii) claims to avoid and recover Success Bonus Payments; and /or (iii) claims to avoid and recover Executive Transition Payments (as well as claims to avoid and recover related Excise Tax Payments).  All of these claims are Preserved Causes of Action that belong to the Litigation Trust.

38.    Claims to avoid and recover the Phantom Equity Payments and Success Bonus Payments are "Preserved Causes of Action" that belong to the Litigation Trust under the express terms of the DCL Plan.  DCL Plan §§ 1.1.119, 1.1.174; *see* Reorganized Debtors' Substitution Motion at 7 n.10 ("The DCL Plan provides that the Preserved Causes of Action include phantom equity claims and success bonus claims . . . .").  Additionally, the DCL Plan expressly provides that Ordinary Litigation Claims owned by the Reorganized Debtors ***do not include*** "any claims. . . that any Debtor or Estate may hold against any of the Debtors' current or former officers, directors and/or employees for payments on any phantom equity grant pursuant to the 2007 Management Equity Incentive Plan or success bonus compensation arising from the leveraged buy-out of Tribune that occurred in 2007."  DCL Plan § 1.1.156.

39.     Claims to recover Executive Transition Payments "ar[ose] from" the LBO, and thus also constitute Preserved Causes of Action belonging to the Litigation Trust that are not included within the definition of "Ordinary Litigation Claims" owned by the Reorganized Debtors.  *See* DCL Plan §§ 1.1.119, 1.1.174 (providing that Preserved Causes Action include "LBO-Related Causes of Action," which are defined as "claims arising from the leveraged buy-out of Tribune that occurred in 2007"); § 1.1.156 (stating that "Ordinary Litigation Claims do not include "claims . . . arising from the leveraged buy-out of Tribune that occurred in 2007"). Under Delaware law, which governs the DCL Plan, *see id.* § 15.13, the phrase 'arising out of'" is interpreted to have a "broad meaning" that "includes 'growing out of,' 'flowing from,' 'done in connection with,' 'incident to,' and 'broader than 'caused by.'"  *Safeway, Inc. v. Liberty Mut. Ins. Co.*, No. 08–460, 2009 WL 1209068, at *3 (D. Del. Apr. 30, 2009); *accord Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391-92 (3d Cir. 2012) (finding that the interpretation of the phrase "arising out of" as meaning "causally connected with, not proximately caused by," is well-settled); *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1256-57 (Del. 2008); *Baroda Hill Invs., Ltd. v. Telegroup, Inc. (In re Telegroup, Inc.)*, 281 F.3d 133, 138 (3d Cir. 2002).

40.     Here, as noted, the $46 million of Executive Transition Payments sought to be recovered by the Insider Actions were made pursuant to the Debtors' Transitional Compensation Plan, which required that such payments be made if an employee was terminated within 18 to 36 months (depending upon the type of employee) after the occurrence of a "Change in Control." *See* Ex. G.  As relevant here, the term "Change in Control" is defined to mean: (i) with certain enumerated exceptions, the acquisition by any person, entity or group of 20 percent or more of either the then outstanding shares of common stock or the combined voting power of Tribune Company's then outstanding voting securities entitled to vote; or (ii) consummation of a

16

reorganization, merger, consolidation or other transaction whereby the shareholders of Tribune immediately prior to such transaction do not, immediately thereafter, own, directly or indirectly, 50% or more of the combined voting power of the reorganized, merged or consolidated company. *See id.* In connection with the LBO, all of the outstanding shares of Tribune were sold to the ESOP. *See generally* Current Report (Form 8-K), Tribune Company (Dec. 20, 2007). Thus, the LBO triggered the payment obligation under the Debtors' Transitional Compensation Plan with respect to any Tribune employees that were terminated during the following 36 months, which gave rise to the Executive Transition Payments. *But for* the LBO, the Executive Transition Payments would not have been made. Additionally, given that all of the 18 defendants who received Executive Transition Payments were terminated within eight months of the LBO, it is reasonable to infer that such terminations, as well as the payments themselves, were caused by the LBO. Claims to recover the Executive Transition Payments thus "ar[ose] from" the LBO, and are Preserved Causes of Action that belong to the Litigation Trust. *See, e.g., Telegroup*, 281 F.3d at 138 (broadly interpreting the phrase "arising from" to encompass claims that "would not have arisen *but for*" the triggering event) (emphasis added).

41.    Additionally, the DCL Plan expressly provides that "all claims that were asserted against any Person . . . in the [FitzSimons Action] are Preserved Causes of Action." DCL Plan § 1.1.174. Of the total number of claims to avoid and recover the Executive Transition Payments, all but 5 are also asserted in the FitzSimons Action against the same defendants for the same amounts. *See* Ex. H (exhibits D through G to the complaint filed in the FitzSimons Action). Under the explicit terms of the DCL Plan, the claims asserted in the LBO Insider Actions that

seek to avoid and recover Executive Transition Payments are Preserved Causes of Action that belong to the Litigation Trust.[3]

42.    Because claims asserted in the LBO Insider Actions that seek to avoid and recover Phantom Equity Payments, Success Bonus Payments, and Executive Transition Payments are Preserved Causes of Action, claims to avoid and recover the Excise Tax Payments made in connection with those payments are Preserved Causes of Action as well.  As the Reorganized Debtors stated in the Reorganized Debtors' Substitution Motion, "[u]nder the terms of the DCL Plan, the recovery of these Excise Tax Transfers is allocated in the same manner as the recovery of the underlying type of compensation for which each Excise Tax Transfer was made." Reorganized Debtors' Substitution Motion, at 6.

43.    In light of the foregoing, the Litigation Trustee seeks an order substituting the Litigation Trustee as the successor-in-interest plaintiff in the LBO Insider Actions with respect to the LBO Insider Actions Trust Substitution Claims, each of which is listed on Exhibit C attached hereto.  ***For the avoidance of doubt, the Litigation Trustee does not seek any relief with respect to the claims asserted in the LBO Insider Actions that do not seek to avoid and recover Phantom Equity Payments, Success Bonus Payments, Executive Transition Payments, or payments made to offset excise taxes that arose in connection with Phantom Equity Payments, Success Bonus Payments or Executive Transition Payments.***

---

[3] Certain claims to avoid and recover restricted stock units and/or deferred compensation paid to the Debtors' current or former officers, directors and/or employees are also asserted in the FitzSimons Action.  Thus, these claims could be considered Preserved Causes of Action, which includes "all claims . . . asserted against any Person (except for Released Stockholder Parties) in the" FitzSimons Action.  DCL Plan § 1.1.174.  However, the DCL Plan also explicitly provides that "Ordinary Litigation Claims" include "action[s] for avoidance and recovery of payments arising from stock options, restricted stock units and/or deferred compensation paid to the Debtors' current or former officers, directors and/or employees." *Id.* § 1.1.156.  Thus, under well-settled principles of contract interpretation providing that "specific language in a contract governs over more general language," *John F. Harkins Co., Inc. v. Waldinger Corp.*, 796 F.2d 657, 664 (3d Cir. 1986), as well as the parties' express intention, it is clear that these types of claims belong to the Reorganized Debtors.  It is equally clear under the language of the DCL Plan that claims to recover Executive Transition Payments — which expressly are included in the definition of Preserved Causes of Action, and are neither expressly nor impliedly included in the definition of Ordinary Litigation Claims — belong to the Litigation Trustee.

44.     In addition, the Litigation Trustee seeks the approval of a procedure whereby the Litigation Trustee will file a notice of substitution (the "LBO Insider Actions Trust Substitution Notice"), in a form substantially similar to Exhibit F attached hereto, on the docket of each LBO Insider Action to evidence that the Litigation Trustee has been substituted by order of this Court as the successor-in-interest plaintiff with respect to the LBO Insider Actions Trust Substitution Claims.

### C.     The Tolled Morgan Stanley Claims

45.     The DCL Plan expressly provides that Preserved Causes of Action include Morgan Stanley Claims.  DCL Plan § 1.1.174.  Therefore, in accordance with the Litigation Trustee's ownership of and right to act with respect to the Preserved Causes of Action, the Litigation Trustee seeks an order substituting the Litigation Trustee as the prospective plaintiff to the Tolled Morgan Stanley Claims, and as a party to the Morgan Stanley Tolling Agreement.

### II.     THE COURT SHOULD EXTEND THE STAY OF THE TRUST SUBSTITUTION ADVERSARIES AND PERMIT PARTIES TO FILE MOTIONS BEFORE THE JPML NOTWITHSTANDING THE STAY

46.     The Court has inherent authority and jurisdiction to consider and enforce the terms of the orders it enters, including the Standing Orders.  *See Langston Law Firm v. Miss.*, 410 B.R. 150, 155 (S.D.N.Y. 2008) ("Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334.") (quoting *In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996)); *see also In re Fibermark*, 369 B.R. 761, 765 (Bankr. D. Vt. 2007); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 947-48 (Bankr. N.D. Ohio 1987).  Moreover, the Standing Orders carve out from the broad stay of litigation, any motion — such as this one — that seeks "to extend or otherwise respecting the

19

stay . . . ." *See* Standing Orders, 3–4. Consequently, the Court's consideration of the relief sought herein is appropriate at this time.

47.     All parties in interest will benefit from an extension of the stay governing the Trust Substitution Adversaries until September 30, 2013 or the date on which the Trust Substitution Claims are transferred by order of the JPML, for two reasons.  First, resolution of this Motion may eliminate, reduce or moot certain of the claims set forth in the Trust Substitution Adversaries.  For example, several of the Trust Substitution Claims asserted in the Trust Substitution Adversaries are also asserted in the FitzSimons Action against the same defendants for the same amounts. *See* Ex. H (exhibits D through G to the complaint filed in the FitzSimons Action).  As such, the Litigation Trustee is considering whether simply to dismiss without prejudice from the Trust Substitution Adversaries the claims that are duplicated in the FitzSimons Action.  In the interim, neither the litigants nor the Court should be required to expend time or resources litigating these claims.

48.     Second, if the Court grants the Litigation Trustee's request that parties be permitted to file notices and pleadings before the JPML notwithstanding the stay, then the Litigation Trustee intends to promptly request that the JPML transfer the Trust Substitution Claims that will not be dismissed to the Southern District for coordinated pretrial proceedings with 51 related actions (the "MDL Actions"). It is unlikely, however, that the JPML will address the Litigation Trustee's transfer request until the May 2013 or July 2013 hearings.  Ordering that litigation of the Trust Substitution Claims must proceed in this Court beginning on April 1, 2013, when the claims may ultimately be transferred to the Southern District, would make little sense.

49.     Finally, the Litigation Trustee seeks entry of an order modifying the stay of the Trust Substitution Claims in order to permit the parties thereto to file notices and pleadings

20

before the JPML notwithstanding the stay.  Because the MDL Actions and the Trust Substitution

Claims share a common nucleus of operative facts (*i.e.*, the LBO and the harm that it caused to

Tribune and its then-existing creditors), they present the ideal case for coordinated pretrial

proceedings.  Simultaneously litigating these cases in two federal courts would significantly and

unnecessarily drain judicial resources, as well as those of the parties and numerous third-parties

who have knowledge of the LBO and Tribune's business.  Such piecemeal litigation also would

expose the parties and numerous witnesses to the inevitable risk of inconsistent rulings and

incompatible discovery obligations.  Accordingly, all parties in interest will benefit if the stay

applicable to the Trust Substitution Claims is extended through and including the earlier of

September 30, 2013 or the date on which the Trust Substitution Claims are transferred by order

of the JPML, with the exception that the parties to such claims may file notices and pleadings

before the JPML.

### III.  THE COURT SHOULD EXTEND THE TIME TO COMPLETE SERVICE OF PROCESS IN THE TRUST SUBSTITUTION ADVERSARIES

50.    Federal Rule of Civil Procedure 4(m) provides that:

> If a defendant is not served within 120 days after the complaint is
> filed, the court — on motion or on its own after notice to the
> plaintiff — must dismiss the action without prejudice against that
> defendant or order that service be made within a specified time. But
> *if the plaintiff shows good cause for the failure, the court must extend the
> time for service for an appropriate period.*  (emphasis added).

51.    In other words, if good cause is shown, the Court *must* extend the time for

service pursuant to Rule 4(m).  *See McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191,

196 (3d Cir. 1998); *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997); *Petrucelli v.

Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).  And even if good cause is not

shown, the Court has discretion to extend the time for service.  *See PCT v. New England

Confectionary Co. (In re Fleming Cos.)*, No. 05-78096, 2006 WL 1062476, at *1 (Bankr.

D. Del. Apr. 20, 2006). To establish good cause, the plaintiff must demonstrate "good faith and some reasonable basis for noncompliance within the time specified by the rule." *See Cain v. Abraxas*, 209 F.App'x 94, 96 (3d Cir. 2006) (citing *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995)); *Golden v. Guardian (In re Lenox Healthcare, Inc.)*, 319 B.R. 819, 822-23 (Bankr. D. Del. 2005).

52.     The time for service under Rule 4(m) in the Trust Substitution Adversaries will expire on March 31, 2013. *See* Extension Order, 2. Good cause for extending this period exists.

53.     It is the Litigation Trustee's understanding that service of process in the Trust Substitution Adversaries was not perfected prior to the Effective Date for the reasons set forth in the prior motions to extend the time for service under Rule 4(m).[4] The Litigation Trustee was only recently appointed and has now had sufficient time to understand the basis for and merits of the Trust Substitution Adversaries. The Litigation Trustee has decided to pursue the Trust Substitution Adversaries and, as stated in this Motion, will need to be substituted as successor-in-interest plaintiff in order to do so. This will require a further brief extension of the time for

---

[4] *See, e.g.*, Motion of the Official Committee of Unsecured Creditors for Extension of Time to Complete Service, *The Official Committee of Unsecured Creditors of Tribune Company, et al. v. JPMorgan Chase Bank, N.A., et al. (In re Tribune Co.)*, Case No. 08-13141 (KJC), Adv. No. 10-53963 (KJC) (Bankr. D. Del. Dec. 9, 2010) [D.I. No. 7]; Motion of the Official Committee of Unsecured Creditors for Extension of Time to Complete Service, *The Official Committee of Unsecured Creditors of Tribune Company, et al. v. FitzSimons, et al. (In re Tribune Co.)*, Case No. 08-13141 (KJC), Adv. No. 10-54010 (KJC) (Bankr. D. Del. Dec. 9, 2010) [D.I. 69]; Second Motion of the Official Committee of Unsecured Creditors for Extension of Time to Complete Service, *The Official Committee of Unsecured Creditors of Tribune Company, et al. v. FitzSimons, et al. (In re Tribune Co.)*, Case No. 08-13141 (KJC), Adv. No. 10-54010 (KJC) (Bankr. D. Del. July 8, 2011) [D.I. 133]; Second Motion of the Official Committee of Unsecured Creditors for Extension of Time to Complete Service, *The Official Committee of Unsecured Creditors of Tribune Company, et al. v. JPMorgan Chase Bank, N.A., et al. (In re Tribune Co.)*, Case No. 08-13141 (KJC), Adv. No. 10-53963 (KJC) (Bankr. D. Del. July 8, 2011) [D.I. 658]; Third Motion of the Official Committee of Unsecured Creditors for Extension of Time to Complete Service, *The Official Committee of Unsecured Creditors of Tribune Company, et al. v. FitzSimons, et al. (In re Tribune Co.)*, Case No. 08-13141 (KJC), Adv. No. 10-54010 (KJC) (Bankr. D. Del. Dec. 23, 2011) [D.I. 395]; Third Motion of the Official Committee of Unsecured Creditors for Extension of Time to Complete Service, *The Official Committee of Unsecured Creditors of Tribune Company, et al. v. JPMorgan Chase Bank, N.A., et al. (In re Tribune Co.)*, Case No. 08-13141 (KJC), Adv. No. 10-53963 (KJC) (Bankr. D. Del. Feb. 29, 2012) [D.I. 1219].

service under Rule 4(m).  Barring unforeseen circumstances, the Litigation Trustee does not anticipate needing an extension beyond that requested in this Motion.

54.     Because the Trust Substitution Adversaries have all been pending for nearly two years during the plan process, there can be no prejudice to any defendant if a short extension of the time for service under Rule 4(m) is granted.  On the other hand, denying the Litigation Trust an opportunity to serve these defendants now would be extremely inequitable and prejudicial to the Litigation Trust and its beneficiaries, given that the Litigation Trust had no say prior to the Effective Date as to whether these defendants would be served.  And this is especially so, given that the transfer of the Trust Substitution Claims to the Litigation Trust — for the benefit of creditors who received only cents on the dollar under the DCL Plan — was a negotiated part of the DCL Plan that the Debtors cited as a basis on which the DCL Plan should be approved.[5] Refusing to provide the Litigation Trust with a reasonable time period to serve defendants would effectively nullify this aspect of the DCL Plan.

---

[5] *See, e.g.*, Post-Trial Brief in Support of Confirmation of Second Amended  Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as Modified April 26, 2011), *In re Tribune Co.*, No. 08-13141 (Bankr. D. Del. May 11, 2011), ECF No. 8897, at 2 ("As demonstrated at trial and shown below, the DCL Plan settlement is a fair and reasonable resolution of the LBO-Related Causes of Action against two major creditor constituencies, the Senior Lenders and Bridge Lenders.  It couples substantial guaranteed immediate distributions - more than 33% on the unsecured claims of Tribune's Non-LBO Creditors and payment in full of unsecured claims against the Subsidiary Debtors - with the prospect of potentially significant additional recoveries from claims against defendants other than the settling lenders, including selling shareholders, officers, directors, Mr. Zell and EGI-TRB LLC, and various professionals and advisors. All recoveries obtained by the Litigation Trust are allocated predominantly to Non-LBO Creditors.") *id.* at 21 n.68 ("[The DCL expert] Professor Black estimated at least $300 million in third-party recoveries based on his evaluation of settlement values for the preserved causes of action. In particular, Professor Black focused on potential claims against Tribune's officers and directors, who are covered by a $200 million D&O insurance policy, actions to recover insider payments made in connection with the Leveraged ESOP Transactions, and claims against VRC and the financial advisors who assisted Tribune during the Leveraged ESOP Transactions. Professor Black testified that $300 million was a conservative estimate given that he did not include any potential recoveries from third-party shareholders who sold stock during the Leveraged ESOP Transactions."); *id.* at 27 ("If the Litigation Trust nets a combined $300 million on the numerous preserved claims (determined by Black to be a reasonable assumed recovery), Senior Noteholder and Other Parent Claim recoveries go up to 51% (an additional $226.5 million). This is the appropriate measure of the reasonableness of the DCL Plan settlement.").

55.     Accordingly, all parties in interest will benefit from an extension of the time to complete service of process in the Trust Substitution Adversaries through and including a date that is 120 days after the Court issues an order on this Motion.

## NOTICE

56.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the administrative agent for Tribune's prepetition loan facilities; (iii) counsel to the administrative agent for the Debtors' postpetition financing facility; (iv) all parties having requested notice in the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 2002; (v) the defendants in the Trust Substitution Adversaries; and (vi) parties to the Morgan Stanley Tolling Agreement.  The Litigation Trustee submits that no other or further notice is necessary.


WHEREFORE, the Litigation Trustee respectfully requests that the Court enter an order substantially in the form appended hereto as Exhibit A:

(i)     pursuant to Federal Rule of Civil Procedure 25(c) and the DCL Plan–

   (a)     authorizing the substitution of the Litigation Trustee as the successor-in-interest plaintiff in the LBO Lender Action with respect to Counts One, Two, Three, Six, Eight, Nine, and Eleven, as against the Non-Settling Step Two Payees only, by inserting the name of the Litigation Trustee as the plaintiff into the caption (and elsewhere, as applicable) solely with respect to those Counts and those defendants, and approving the filing of the LBO Lender Action Trust Substitution Notice evidencing such substitution on the docket of the LBO Lender Action,

   (b)     authorizing the substitution of the Litigation Trustee as the successor-in-interest plaintiff in the LBO Preference Action with respect to Count One, as against the Non-Settling Step Two Payees only, by inserting the name of the Litigation Trustee as the plaintiff into the caption (and elsewhere, as applicable) of the LBO Preference Action solely with respect to that Count and those defendants, and approving the filing of the LBO Preference Action Trust Substitution Notice evidencing such substitution on the docket of the LBO Preference Action,

24

(c)    authorizing the substitution of the Litigation Trustee as the plaintiff in each of the LBO Insider Actions by inserting the name of the Litigation Trustee as the plaintiff into the caption (and elsewhere, as applicable) of each of the LBO Insider Actions solely with respect to the LBO Insider Actions Trust Substitution Claims owned by the Litigation Trust (which are listed on Exhibit C attached hereto), and approving the filing of the LBO Insider Actions Trust Substitution Notice in the dockets of each LBO Insider Action to evidence such substitution, and

(d)    substituting the Litigation Trustee as a party to the Morgan Stanley Tolling Agreement and as the prospective plaintiff with regard to the Tolled Morgan Stanley Claims; and

(ii)    pursuant to the Court's inherent authority and the Standing Orders, modifying the stay of the Trust Substitution Adversaries in order to–

(a)    extend such stay to the earlier of September 30, 2013 or the date on which the Trust Substitution Claims are transferred by order of the JPML, and

(b)    permit all parties in the Trust Substitution Adversaries to file notices and pleadings before the JPML; and

(iii)    pursuant to Federal Rule of Civil Procedure 4(m), extending the time to complete service of process in the Trust Substitution Adversaries through and including a date that is 120 days after the Court issues an order on this Motion; and

(iv)    granting such other and further relief as the Court deems just and proper.

Dated: February 20, 2013
       Wilmington, Delaware

LANDIS RATH & COBB LLP

Richard S. Cobb (No. 3157)
J. Landon Ellis (No. 4852)
Jeffrey R. Drobish (No. 5437)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

*Counsel to the Litigation Trustee*