# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| -------------------------------------------------------- x | Chapter 11 | |
| In re: | : | |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Hearing Date:  To be Determined |
| -------------------------------------------------------- x | | Objections Due: March 20, 2013 @ 4:00 p.m.(ET) |

## FORTY-EIGHTH MONTHLY AND FINAL APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

| Name of Applicant: | Chadbourne & Parke LLP | | |
|---|---|---|---|
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors of Spiegel, Inc., et al. | | |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 | | |
| Period for Which Allowance and Approval is Sought: | **Forty-Eighth Monthly Period** December 1, 2012 through December 31, 2012 | **Post-Effective Date Period** January 1, 2013 through Final Fee Hearing Date | **Total Compensation Period** December 18, 2008 through Final Fee Hearing Date |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary: | $149,081.00 | $125,868.50 | $49,769,504.75 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $ 43,259.89 | $      56.45 | $ 3,125,011.94 |
| Total Hours: | 231.00 | 134.50 | 86,813.85 |
| This is a Monthly and Final Fee Application. | | | |
| **Requested Payment Amount for the Forty-Eighth Monthly Fee Period:** | | | |
| Fees at 80% | $119,264.80 | | |
| Expenses at 100% | $ 43,259.89 | | |

Prior Interim Applications

| Fee Period | Period Covered | Bankruptcy Court Approval Date (Docket No.) | Requested | | Approved/Paid | |
|---|---|---|---|---|---|---|
| | | | Fees | Expenses | Fees | Expenses |
| 1 | Dec. 18, 2008 - Feb. 28, 2009 | Dec. 15, 2009 (Docket No. 2857) | $1,668,062.00 | $63,179.22 | $1,662,858.25 | $60,967.33 |
| 2 | March 1, 2009 through May 31, 2009 | May 18, 2010 (Docket No. 4467) | $1,761,577.25 | $51,679.08 | $1,758,203.25 | $47,518.24 |
| 3 | June 1, 2009 through Aug. 31, 2009 | Oct. 22, 2010 (Docket No. 6078) | $3,630,934.25 | $122,055.78 | $3,618,232.50 | $116,215.57 |
| 4 | Sept. 1, 2009 through Nov. 30, 2009 | Aug. 24, 2011 (Docket No. 9697) | $4,550,813.75 | $165,377.40 | $4,533,419.75 | $155,883.43 |
| 5 | Dec. 1, 2009 through Feb. 28, 2010 | Oct. 19, 2011 (Docket No. 10020) | $4,996,359.50 | $234,831.16 | $4,973,445.00 | $224,530.37 |
| 6 | March 1, 2010 through May 31, 2010 | Dec. 12, 2011 (Docket No. 10418) | $3,743,887.25 | $227,476.68 | $3,741,912.75 | $218,663.44 |
| 7 | June 1, 2010 through Aug. 31, 2010 | Feb. 15, 2012 (Docket No. 10933) | $4,282,466.00 | $206,708.99 | $4,280,994.00 | $198,368.59 |
| 8 | Sept. 1, 2010 through Nov. 30, 2010 | April 24, 2012 (Docket No. 11464) | $5,205,307.75 | $422,174.46 | $5,203,023.75 | $407,580.76 |
| 9 | Dec. 1, 2010 through Feb. 28, 2011 | July 11, 2012 (Docket No. 11989) | $6,969,618.75 | $634,384.59 | $6,967,216.75 | $619,069.04 |
| 10 | March 1, 2011 through May 31, 2011 | July 11, 2012 (Docket No. 11990) | $4,723,522.00 | $473,519.01 | $4,723,822.50 | $444,926.05 |
| 11 | June 1, 2011 through Aug. 31, 2011 | October 2, 2012 (Docket No. 12500) | $1,802,355.75 | $209,805.53 | $1,803,125.75 | $206,780.69 |

CPAM: 5210913.3

| 12 | Sept. 1, 2011 through Nov. 30, 2011 | November 6, 2012 (Docket No. 12691) | $1,528,824.25 | $154,094.28 | $1,528,725.25 | $151,441.56 |
| 13 | Dec. 1, 2011 through Feb. 29, 2012 | January 15, 2013 (Docket No. 13054) | $1,644,199.25 | $58,307.65 | $1,640,416.00 | $54,936.23 |
| 14 | March 1, 2012 through May 31, 2012 | February 11, 2013 (Docket No. 13181) | $1,245,268.00 | $44,697.54 | $1,245,280.00 | $42,108.39 |
| 15 | June 1, 2012 through Aug. 31, 2012 | Hearing: 4/17/13 | $1,252,996.25 | $19,683.29 | | |
| 16 | Sept. 1, 2012 through Nov. 30, 2012 | Hearing Pending | $560,883.50 | $113,022.62 | | |

CPAM: 5210913.3

# TRIBUNE COMPANY, et al.

## SUMMARY OF HOURS

### December 1, 2012 through December 31, 2012

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner\*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | $995 | 6.40 | $ 6,368.00 |
| Richard M. Leder (1988) | Tax | 1962 (NY) | 995 | 6.10 | 6,069.50 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 925 | 20.00 | 18,500.00 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 745 | 56.80 | 42,316.00 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 745 | 35.00 | 26,075.00 |
| David Gallai (2008) | Employee Benefits | 2000 (NY) | 705 | 2.00 | 1,410.00 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 695 | 2.60 | 1,807.00 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 645 | 1.20 | 774.00 |
| | | | | | |
| **Associate:** | | | | | |
| Kimberly Zafran | Litigation | 2009 (NY) | 565 | 12.00 | 6,780.00 |
| Eric Daucher | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 9.10 | 4,504.50 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 39.70 | 19,651.50 |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 21.40 | 9,309.00 |
| | | | | | |
| **Paraprofessional:** | | | | | |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 295 | 10.40 | 3,068.00 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 295 | 8.30 | 2,448.50 |
| | | | | | |
| TOTAL: | | | | 231.00 | $149,081.00 |

BLENDED RATE:    $645.37

---

\* Includes year elected Partner at firm or joined firm as Partner.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------- x
In re:

TRIBUNE COMPANY, et al.,

                  Debtors.

---------------------------------------------------- x

Chapter 11

Case No. 08-13141 (KJC)

Jointly Administered

Hearing Date:  To be Determined
Objections Due: March 20, 2013 @ 4:00 p.m.(ET)

### FORTY-EIGHTH MONTHLY AND FINAL APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the "Debtors"), hereby submits this Forty-Eighth Monthly and Final Application of Chadbourne & Parke LLP, as Co-Counsel to the Official Committee of Unsecured Creditors of Tribune Company, et al., for Allowance of Compensation and Reimbursement of Expenses (the "Application").  This Application is submitted pursuant to sections 330, 331 and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and with the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331, dated June 5, 2009 (the "Compensation Order").  Chadbourne requests entry of an order allowing Chadbourne (a) compensation in the amount of $49,769,504.75 for professional services rendered and (b) reimbursement of expenses incurred in connection therewith in the amount of $3,125,011.94 during the period from

December 18, 2008 through the final fee hearing on the Application (the "Total Application Period"). The amounts requested consist of:

(a)  compensation for professional services rendered during the period December 1, 2012 through December 31, 2012 (the "Monthly Application Period") in the amount of $149,081.00 and reimbursement of actual and necessary expenses incurred during the Monthly Application Period in the amount of $43,259.89, which amounts are fully described in this Application;

(b)  compensation for professional services rendered during the period December 18, 2008 through November 30, 2012 (the "Prior Applications Period") in the amount of $49,494,555.25 [1] and reimbursement of actual and necessary expenses incurred during the Prior Applications Period in the amount of $3,081,695.60. [2]

(c)  compensation for professional services rendered during the period January 1, 2013 through the final hearing on the Application (the "Post-Effective Date Period") in the amount of $125,868.50, and reimbursement of actual and necessary expenses incurred during the Post-Effective Date Period in the amount of $56.45, which amounts are fully described in this Application;[3]

In support of the Application, Chadbourne respectfully represents as follows:

---

[1]  The amounts sought for compensation during the Prior Applications Period reflect all fees previously approved by the Bankruptcy Court for Chadbourne's First Interim Fee Application through its Fourteenth Interim Fee Application, plus the fees requested in Chadbourne's Fifteenth Interim Fee Application and Sixteenth Interim Fee Application (which hearings are currently pending).

[2]  The amounts sought for expenses during the Prior Applications Period reflect all expenses previously approved by the Bankruptcy Court for Chadbourne's First Interim Fee Application through its Fourteenth Interim Fee Application, plus the expenses requested in Chadbourne's Fifteenth Interim Fee Application and Sixteenth Interim Fee Application (which hearings are currently pending).

[3]  The Post-Effective Date Period fees and expense requests set forth in this paragraph include estimated fees and expenses for the period beginning the date of the Application through and including the final fee hearing on the Application, and are fully described herein.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

3.      The statutory bases for relief requested herein are Sections 105(a), 330, 331 and

1103(a) of the Bankruptcy Code.

## BACKGROUND

4.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the

Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

5.      The Debtors have continued in possession of their respective properties and have

continued to operate and maintain their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

6.      On December 18, 2009, the Office of the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

7.      On February 20, 2009, the Bankruptcy Court authorized the employment and

retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

8.      On March 19, 2009, the Bankruptcy Court entered an order appointing Stuart

Maue as Fee Examiner in these Chapter 11 cases.

9.      On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth

N. Klee, Esquire as Examiner in these Chapter 11 cases.

10.    Plan confirmation hearings for both the DCL Plan and the Noteholder Plan[4]

commenced on March 7, 2011 and continued daily through March 18, 2011.  The next phase of

the confirmation hearings -- which included rebuttal witnesses, non-proponent objections to the

DCL and the Noteholder Plans and certain legal arguments -- resumed on April 12, 2011 and

concluded on April 14, 2011.  Closing confirmation arguments were held on June 27, 2011.

11.    On October 31, 2011, the Bankruptcy Court entered its Opinion on Confirmation

denying both the DCL Plan and the Noteholder Plan.  The Opinion noted, however, that should

the proponents of both the DCL Plan and the Noteholder Plan seek to address the flaws

identified by the Bankruptcy Court in the Opinion and resubmit otherwise confirmable plans,

the Bankruptcy Court would be required to select one plan to confirm.  See Section 1129(c).

The Bankruptcy Court stated that, given those options, it would select the DCL Plan.

12.    On April 17, 2012, the proponents of the DCL Plan filed their Fourth Amended

Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (the "Fourth Amended

DCL Plan").  A hearing on confirmation of the Fourth Amended DCL Plan was held on June 7,

2012 and concluded on June 8, 2012.

---

[4]    The DCL Plan is supported by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital
Management, Angelo, Gordon & Co., and JPMorgan Chase Bank (the "DCL Plan Proponents").  The
Noteholder Plan is supported by Aurelius Capital Management, Deutsche Bank Trust Company Americas, Law
Debenture Trust Company of New York and Wilmington Trust Company (the "Noteholder Plan Proponents").

13.     On July 23, 2012, the Bankruptcy Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.

14.     The Effective Date for the Fourth Amended DCL Plan occurred on December 31, 2012.

### Compliance With Guidelines Governing
### Applications for Compensation and Reimbursement of Expenses

15.     This Application has been prepared in accordance with local rule 2016-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "UST Guidelines" and, together with the Local Rules, the "Guidelines").

### COMPENSATION PAID AND ITS SOURCES

16.     All services for which compensation is requested by Chadbourne were performed for or on behalf of the Committee.

17.     During the Application Period, Chadbourne has received no payment and no promise of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.  There is no agreement or understanding between Chadbourne and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

## SUMMARY OF APPLICATIONS

## FORTY-EIGHTH MONTHLY PERIOD

18.     Chadbourne seeks compensation for professional services rendered to the Committee during the Monthly Application Period in the amount of $149,081.00 and reimbursement of actual and necessary expenses incurred in connection with the rendition of services during the Monthly Application Period in the amount of $43,259.89.

19.     During the Monthly Application Period, Chadbourne attorneys and paraprofessionals expended a total of 231.00 hours for which compensation is requested. The fee statement for the Monthly Application Period is attached hereto as Exhibit A. This statement contains daily time logs describing the time spent by each attorney and paraprofessional for this period. To the best of Chadbourne's knowledge, this Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines and the Compensation Order.

### Summary of Services

20.     As set forth in the detailed statement of fees attached hereto as Exhibit A, fees incurred by Chadbourne during the Monthly Application Period total $149,081.00. The services rendered by Chadbourne during the Monthly Application Period are grouped into specific project categories as set forth in Exhibit A. The attorneys and paraprofessionals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category.

21.     The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Monthly Application Period, organized by project category.

**B.** **Bankruptcy General (Matter 002)**

Fees: $7,038.50         Total Hours:   15.90

22.     During the Monthly Application Period, Chadbourne devoted time to the fulfillment of its professional duties and responsibilities in connection with the administration of these Chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

23.     Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**C.**    **Committee Meetings (Matter 003)**

      Fees:  $13,841.50        Total Hours:   18.70

      24.    Regular meetings of the Committee (the "Committee Meetings") were held during the Monthly Application Period to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to key issues.  In particular, during the Application Period, the Committee was required to perform an in-depth review of all options related to Effective Date timing and the related tax implications. The result of this review was reported to the Committee at a meeting.

      25.    Committee Meetings are the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' Chapter 11 cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

**D.**    **Creditor Communications (Matter 004)**

      Fees:  $3,326.50        Total Hours:   5.30

      26.    Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Monthly Application Period, Chadbourne attorneys reviewed and responded to inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

Given the number of Effective Date timing issues, as well as Effective Date implementation issues, these communications were especially frequent during this period.

**E.**  **Business Operations (Matter 007)**

Fees:  $2,562.00          Total Hours:   3.60

27.     During the Monthly Application Period, Chadbourne attorneys reviewed and discussed next steps with respect to the FCC decision on the Debtors' exit applications and related effective date issues.

28.     During this time, Chadbourne attorneys continued to review and monitor issues involving the Debtors' day-to-day business operations including reviewing weekly operations and financial reports prepared by the Committee's financial advisors.

**F.**  **Claims Administration/Bar Date (Matter 009)**

Fees:  $8,893.50          Total Hours:   15.10

29.     During the Monthly Application Period, Chadbourne expended further efforts in connection with the disposition of claims.  Efforts included reviewing (i) the Debtors' sixty-second omnibus objection to claims (for insurance-related claims); (ii) the Debtors' sixty-third omnibus (substantive) objection to claims; and (iii) the Debtors' objection to claim of Marta Waller.   Chadbourne reviewed and evaluated the relief requested in the motions as well as the bases and processes followed by the Debtors in pursuing the objections.  Committee counsel summarized their analysis in written reports to the Committee.

30.     During the Monthly Application Period, Chadbourne expended further time in reviewing the Debtors' efforts to settle certain claims brought against the Debtors.  In particular,

this work included review and analysis of a proposed stipulation settling claims with NBC Studios and certain entities in connection with particular prepetition programming agreements. Chadbourne reviewed and analyzed details of the underlying contracts and the terms of the proposed settlement and prepared a detailed report to the Committee summarizing its analysis and recommendation on same.

**G.     Fee/Retention Applications (Matter 010)**

    Fees:   $16,735.50          Total Hours:  33.90

31.     Chadbourne expended further time during the Monthly Application Period in compliance with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparing and filing Chadbourne's forty-seventh monthly fee application and sixteenth interim fee application.

32.     During the Monthly Application Period, Chadbourne also expended time reviewing, revising and finalizing a response to address the concerns raised in the Fee Examiner's preliminary report concerning Chadbourne's thirteenth interim fee application.

33.     During this time, Chadbourne prepared a memorandum to the Committee regarding procedures for Committee member fee and expense reimbursement under the Fourth Amended DCL Plan.

34.     In continuance of an ongoing process, Chadbourne also expended time on the treatment of ordinary course professionals.  These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of related spending and monthly fee caps.

**H.**   **Avoidance Issues (Matter 013)**

Fees:  $3,067.50          Total Hours:   4.70

35.     During the Monthly Application Period, Chadbourne was engaged in follow-up related to the Committee's pending stayed Preference Actions against the Debtors' professionals and certain officers and directors of the Debtors.  Efforts included review of expiring tolling agreements with certain of the Debtors' professionals and conferences with the Committee's co-counsel and Debtors' counsel to coordinate efforts to obtain extensions of those tolling agreements.

**I.**   **Employee Issues (Matter 014)**

Fees:  $3,528.50          Total Hours:   6.30

36.     During the Monthly Application Period, professionals from Chadbourne's Employee Benefits and Bankruptcy Groups were engaged in employee-related matters.  Efforts included review and analysis of the terms of a severance agreement with a departing senior executive of Tribune.  In connection therewith, Chadbourne reviewed and analyzed the economic terms and business rationale of the departure and consulted with the Committee's financial advisors about their analysis of the departure arrangements.  Chadbourne summarized its analysis and recommendations in a memorandum to the Committee.

**J.** **General Litigation (Matter 017)**

  Fees:  $1,429.00   Total Hours:   2.20

  37.  During the Monthly Application Period, individual defendants (the "D&O

Defendants") named in the Committee's complaint against shareholders and other third parties

in connection with the LBO/ESOP transaction ("*FitzSimons*") and the Preference Actions

submitted their quarterly report to the Committee of fees and costs submitted for payment to the

Debtors' D&O liability insurance providers (the "D&O Insurance Providers").  These reports

were required by the Bankruptcy Court's March 29, 2011 Order modifying the automatic stay to

allow the D&O Defendants payment and advancement of defense costs, fees, and expenses by

the D&O Insurance Providers.  Chadbourne reviewed the report and prepared a summary

analysis thereon for the Committee's review.

**K.** **Review of Pre-Petition Financings (Matter 019)**

  Fees:  $8,448.00   Total Hours:  14.40

  38.  During the Monthly Application Period, Chadbourne continued the process of

reviewing and preparing documents identified and culled from Committee's counsel and the

Committee's financial advisors for submission to the Litigation Trustee.  As described in

previous fee applications, this work was performed in accordance with the Privilege Transfer

Agreement whereby the Committee agreed to turn over documents and information relevant to

the claims the Trustee will be pursuing, including certain privileged work product reflecting the

Committee's assessment of the LBO transaction and the claims arising from it.

**L.**    **Shareholder Claims (Matter 020)**

   Fees:   $1,700.00         Total Hours:   3.00

   39.      During the Monthly Application Period, Chadbourne attorneys continued to
review and address developments in the multidistrict litigation which consolidated and
transferred the state law constructive fraudulent conveyance lawsuits filed by the Retirees and
the Noteholders to the Southern District of New York (*In re Tribune Company Fraudulent
Conveyance Litigation*), Master Case No. 12-2296 (S.D.N.Y) (the "MDL Actions").

   40.      During the Monthly Application Period, Chadbourne reviewed the status of
settlement activity in connection with the October 1, 2012 joint settlement offer made by the
Committee, the Noteholders and the Retirees to LBO shareholder defendants and consulted
with the Committee's special counsel on a related report to the Committee.


**M.**    **Plan Litigation/Implementation (Matter 021)**

   Fees:   $78,510.50        Total Hours:  107.90

   41.      Chadbourne attorneys spent substantial time at the beginning of the Monthly
Application Period reviewing and exploring numerous options related to the timing of the
Effective Date.  One of the most important issues was to review related tax implications and
ensure that the Effective Date occurred in 2012  for all tax purposes.  The goal was satisfied.

   42.      Thereafter, and for much of the remainder of the month, Chadbourne worked with
the Debtors and the other DCL Plan Proponents on the logistics of implementation of the
Fourth Amended DCL Plan.  Given the end-of-year deadline, these tasks were not small
hurdles.  Among other things, for example, Chadbourne worked with the other DCL Plan

Proponents to create an information fact sheet for creditors on the distribution process and other

Effective Date issues.  Chadbourne also reviewed numerous versions of revised corporate

documents and reviewed and edited numerous iterations of agreements transferring assets to the

Litigation Trust.  Finally, at the end of the month, Chadbourne was involved with the Debtors

in verifying that the implementation tasks were completed as planned.

## Actual and Necessary Expenses

43.     A summary of the actual and necessary expenses and daily logs of expenses

incurred by Chadbourne during the Monthly Application Period in the amount of $43,259.89 is

attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.

For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page.

Chadbourne customarily charges its clients $1.25/per page for out-going facsimile

transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

44.     Due to the national nature of the Debtors' business and the Committee's

participation in weekly meetings by telephone, long distance telephone and conference call

services have been required.  In accordance with the Guidelines, in seeking reimbursement for

long distance telephone charges, Chadbourne currently charges clients its approximate actual

cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call

services and requests reimbursement only for the amount billed to Chadbourne by the third-

party vendors.

45.     In order to fulfill the obligations under the Privilege Transfer Agreement (as

described in Section H herein), Chadbourne resumed the use of the services of Complete

Document Source Inc. ("CDS") for electronic data discovery services in connection with its

14

document review process. The CDS charges incurred during the Application Period represent a monthly hosting fee, processing fees for loading data and/or converting data to a searchable format and culling the larger data set into a much smaller subset. The expense identified in this Application covers a two-month period. In seeking reimbursement for these outside services, Chadbourne requests reimbursement for the actual costs incurred.

46.     Because of the numerous documents that continue to be shared with the Committee and analyzed by Chadbourne and other Committee professionals, it is necessary to maintain the Intralinks workspace. The amount requested for reimbursement reflects the final Intralinks extension fee, which includes the cost of appropriate data disks once the Intralinks workspace services are terminated. Again, Chadbourne believes that Intralinks is an invaluable tool that allows the Committee members to easily access all background information in these Chapter 11 cases and allows Chadbourne to carefully control access to that data when conflicts or other issues arise. In seeking reimbursement for this service, Chadbourne requests reimbursement for the actual costs incurred.

47.     Chadbourne has made every effort to minimize its disbursements in these cases. The actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Committee.

## POST-EFFECTIVE DATE PERIOD

48.     Chadbourne seeks compensation for professional services rendered during the Post-Effective Date Period in the amount of $125,868.50 (which includes an estimate of $52,000.00 for future services, as detailed below) and reimbursement of actual and necessary expenses incurred in connection with the rendition of services during the Post-Effective Date Period in the amount of $56.45. These fees and expenses are incurred pursuant to Section 15.2

15

of the Fourth Amended DCL Plan which provides, in relevant part, that the appointment of the

Creditors Committee shall terminate on the Effective Date,

> "except that the Creditors Committee shall continue in existence after the
> Effective Date for the sole purposes of preparing and prosecuting applications for
> the payments of fees and reimbursement of expenses and evaluating the
> reasonableness of fees payable under Section 9.1, solely to the extent in the
> interests of unsecured creditors generally.  As to post-emergence matters and
> issues covered by this Section, the [Committee's] attorneys … shall continue to be
> compensated and reimbursed for their reasonable and documented expenses after
> the Effective Date pursuant to the procedures set forth in the Fee Procedures
> Orders as though the Effective Date had not occurred … . [although] the
> Bankruptcy Court-appointed fee examiner shall not apply to the reimbursement of
> fees and expenses pursuant to this Section 15.2."


49.     The Post-Effective Date Period fee statement detail is attached hereto as

Exhibit C.  The statement contains daily time logs describing the time spent by each attorney

and paraprofessional for this period.  In addition, fees requested for the Post-Effective Date

Period includes an estimate of $52,000.00 for future services and expenses incurred.

Chadbourne has proposed these estimates to compensate it for the additional time and expenses

involved in reviewing and responding to the Fee Examiners' final two reports, holding related

discussions and attending a final hearing on this Application.  (Should substantial additional

activities be required to be undertaken by Chadbourne that were not contemplated by this

estimate, Chadbourne reserves the right to file a supplemental request for allowance and

reimbursement.)  Chadbourne believes that such estimating is an appropriate and reasonable

approach to addressing the final activities that the Fourth Amended DCL Plan tasks

Chadbourne with completing and for which Chadbourne is entitled to be compensated.

## **LEGAL STANDARD**

50.    Section 330(a)(1) of the Bankruptcy Code allows the payment of:

(A)    reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B)    reimbursement for actual, necessary expenses.

11 U.S.C. §330(a)(1).  Reasonableness of compensation is driven by the "market-driven approach" which considers the nature, extent and value of services provided by the professional and the cost of comparable services in non-bankruptcy contexts.  See Zolfo Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253, 258 (3d Cir. 1995); In re Busy Beaver Bldg. Ctr., Inc., 19 F.3d 833, 849 (3d Cir. 1994).  Thus, the "baseline rule is for firms to receive their customary rates." Zolfo Cooper, 50 F.3d at 259.

51.    In accordance with its practices in non-bankruptcy matters, Chadbourne has calculated its compensation requested in this Application by applying its standard hourly rates. Chadbourne's calculation is base upon hourly rates that are well within the range of rates that are charged by comparable firms in similar bankruptcy cases.  Accordingly, Chadbourne's rates should be determined to be reasonable under Section 330 of the Bankruptcy Code.

52.    Chadbourne's fees during the Application Periods are also reasonable under the prevailing legal standard and should be allowed.  The amount of these fees is not unusual given the complexity and size of the Debtors' Chapter 11 cases.  Chadbourne's fees are commensurate with fees that other attorneys of comparable experience and expertise have charged and been awarded in similar Chapter 11 cases.  Accordingly, Chadbourne's fees are reasonable pursuant to section 330 of the Bankruptcy Code.

53.    Section 330(a)(1)(B) of the Bankruptcy Code permits for reimbursement for actual, necessary expenses. Chadbourne's legal services and expenses incurred during the Total Compensation Period constitute only those necessary expenses that were incurred for the benefit of the Debtors' estates. Chadbourne has properly requested reimbursement of only actual, necessary and appropriate legal expenses.

54.    Except as permitted by rule 2016 of the Federal Rules of Bankruptcy Procedure, no agreement or undertaking exists between Chadbourne and/or any third person for the sharing or division of compensation. All of the services for which compensation is requested in this Application were rendered at the request of and solely on behalf of the Committee.

55.    Pursuant to the standards set forth in sections 330 and 331 of the Bankruptcy Code, Chadbourne submits that the compensation requested is for actual and necessary services and expenses, and is reasonable, based upon the nature, extent and value of such services, the time spent thereon, and the costs of comparable services in a case under the Bankruptcy Code.

## NOTICE AND NO PRIOR APPLICATION

56.    Notice of this Application has been given to (i) co-counsel to the Debtors; (ii) the Office of the United States Trustee; (iii) the Fee Examiner; (iv) co-counsel to the Lender, Funding Agent and Administrative Agent; (v) co-counsel to the Administrative Agent for the Prepetition Lenders; and (vi) co-counsel to the Official Committee of Unsecured Creditors; and (vii) any party requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Chadbourne submits that no further or other notice is required.

57.    No previous application for relief sought herein has been made to this or any other court.

WHEREFORE, Chadbourne respectfully requests that this Court issue and enter an order (i) authorizing compensation in the amount of $49,769,504.75 for professional services rendered and reimbursement of actual and necessary expenses incurred in connection therewith in the amount of $3,125,011.94 during the Total Application Period; (ii) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein, less all amounts previously paid on account of such fees and expenses; and (ii) granting such other and further relief as this Court deems just and proper.

Dated:   February 27, 2013
         New York, New York

CHADBOURNE & PARKE LLP

By: _____
     Douglas E. Deutsch
     (A Member of the Firm)

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Co-Counsel to The Official Committee of
Unsecured Tribune Company, et al