## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: March 21, 2013 at 4 p.m.** |

## COVER SHEETS FOR FORTY-EIGHTH MONTHLY AND FINAL APPLICATION OF MOELIS & COMPANY LLC FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

| | |
|---|---|
| Name of Applicant: | Moelis & Company LLC ("Moelis") |
| Authorized to provide professional services to: | Official Committee of Unsecured Creditors |
| Date of retention: | *Nunc Pro Tunc* to January 6, 2009 |
| Period for which monthly compensation and reimbursement are sought: | December 1, 2012 through December 31, 2012 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicagoland Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc, (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc, (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPLX, Inc. (0191); and WTXX Inc, (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

| | |
|---|---|
| Amount of monthly compensation sought as actual, reasonable, and necessary: | $200,000.00 |
| Amount of monthly expenses sought as actual, reasonable and necessary: | $12,032.48 |
| Period for which final compensation and reimbursement are sought: | January 6, 2009 through December 31, 2012[2] |
| Amount of final compensation sought as actual, reasonable, and necessary: | $13,467,741.94 |
| *Less*: amount previously paid: | $9,567,741.94 |
| Balance Outstanding: | $3,900,000.00 |
| Amount of final expense reimbursement sought as actual, reasonable and necessary: | $191,225.16 |
| *Less*: amount previously paid: | $169,192.68 |
| Balance Outstanding: | $22,032.48 |
| This is a(n): | Monthly and Final Application |

---

[2] This Application includes incurred and estimated expenses from outside legal counsel after December 31, 2012 (the "Effective Date") relating to the preparation of this Application and other fee-related issues. Moelis reserves the right to request from the Debtors additional expense reimbursement in connection with any fee application-related expenses or for expenses that have not yet posted at the time of the filing of this Application.

## PRIOR MONTHLY APPLICATION HISTORY

| Date Filed | Period Covered | Requested 100% Fees | Requested Expenses | Approved 80% Fees | Approved Expenses | CNO Filed |
|---|---|---|---|---|---|---|
| 04/16/09 | 01/06/09 – 01/31/09 | $167,741.94 | $10,672.19 | $134,193.55 | $10,672.19 | #1162 (05/08/09) |
| 04/16/09 | 02/01/09 – 02/28/09 | $200,000.00 | $9,149.52 | $160,000.00 | $9,149.52 | #1163 (05/08/09) |
| 04/29/09 | 03/01/09 – 03/31/09 | $200,000.00 | $11,052.03 | $160,000.00 | $11,052.03 | #1217 (05/21/09) |
| 06/09/09 | 04/01/09 – 04/30/09 | $200,000.00 | $7,676.92 | $160,000.00 | $7,676.92 | #1674 (07/01/09) |
| 07/01/09 | 05/01/09 – 05/31/09 | $200,000.00 | $1,874.08 | $160,000.00 | $1,874.08 | #1808 (07/23/09) |
| 07/30/09 | 06/01/09 – 06/30/09 | $200,000.00 | $10,379.83 | $160,000.00 | $10,379.83 | #1994 (08/21/09) |
| 09/18/09 | 07/01/09 – 07/31/09 | $200,000.00 | $11,286.60 | $160,000.00 | $11,286.60 | #2321 (10/12/09) |
| 10/14/09 | 08/01/09 – 08/31/09 | $200,000.00 | $6,975.90 | $160,000.00 | $6,975.90 | #2506 (11/05/09) |
| 11/09/09 | 09/01/09 – 09/30/09 | $200,000.00 | $2,687.21 | $160,000.00 | $2,687.21 | #2714 (12/02/09) |
| 12/15/09 | 10/01/09 – 10/31/09 | $200,000.00 | $0.00 | $160,000.00 | $0.00 | #3021 (01/06/10) |
| 01/05/10 | 11/01/09 – 11/30/09 | $200,000.00 | $484.35 | $160,000.00 | $484.35 | #3244 (01/27/10) |
| 02/03/10 | 12/01/09 – 12/31/09 | $200,000.00 | $602.00 | $160,000.00 | $602.00 | #3537 (02/25/10) |
| 03/10/10 | 01/01/10 – 01/31/10 | $200,000.00 | $6,754.08 | $160,000.00 | $6,754.08 | #3918 (04/01/10) |
| 04/07/10 | 02/01/10 – 02/28/10 | $200,000.00 | $0.00 | $160,000.00 | $0.00 | #4202 (04/29/10) |
| 05/20/10 | 03/01/10 – 03/31/10 | $200,000.00 | $8,862.15 | $160,000.00 | $8,862.15 | #4760 (06/11/10) |
| 06/30/10 | 04/01/10 – 04/30/10 | $200,000.00 | $4,722.38 | $160,000.00 | $4,722.38 | #5103 (07/22/10) |
| 07/13/10 | 05/01/10 – 05/31/10 | $200,000.00 | $0.00 | $160,000.00 | $0.00 | #5271 (08/04/10) |
| 08/20/10 | 06/01/10 – 06/30/10 | $200,000.00 | $1,954.18 | $160,000.00 | $1,954.18 | #5673 (09/13/10) |
| 08/25/10 | 07/01/10 – 07/31/10 | $200,000.00 | $0.00 | $160,000.00 | $0.00 | #5717 (09/16/10) |
| 10/12/10 | 08/01/10 – 08/31/10 | $200,000.00 | $3,049.45 | $160,000.00 | $3,049.45 | #6230 (11/03/10) |
| 11/01/10 | 09/01/10 – 09/30/10 | $200,000.00 | $2,065.70 | $160,000.00 | $2,065.70 | #6638 (11/26/10) |
| 11/29/10 | 10/01/10 – 10/31/10 | $200,000.00 | $352.11 | $160,000.00 | $352.11 | #7282 (12/22/10) |
| 1/6/11 | 11/01/10 – 11/30/10 | $200,000.00 | $239.85 | $160,000.00 | $239.85 | #7657 (1/28/11) |
| 1/26/11 | 12/01/10 – 12/31/10 | $200,000.00 | $0.00 | $160,000.00 | $0.00 | #8045 (2/17/11) |
| 3/8/11 | 1/01/11 – 1/31/11 | $200,000.00 | $0.00 | $160,000.00 | $0.00 | #8526 (3/30/11) |
| 3/29/11 | 2/01/11 – 2/28/11 | $200,000.00 | $97.80 | $160,000.00 | $97.80 | #8721 (4/20/11) |
| 4/25/11 | 3/01/11 – 3/31/11 | $200,000.00 | $8,985.52 | $160,000.00 | $8,985.52 | #8945 (5/18/11) |
| 5/26/11 | 4/01/11 – 4/30/11 | $200,000.00 | $132.91 | $160,000.00 | $132.91 | #9277 (6/17/11) |

| | | | | | |
|---|---|---|---|---|---|
| 6/28/11 | 5/01/11 – 5/31/11 | $200,000.00 | $6,347.98 | $160,000.00 | $6,347.98 | #9505 (7/20/11) |
| 7/25/11 | 6/01/11 – 6/30/11 | $200,000.00 | $27.90 | $160,000.00 | $27.90 | #9669 (8/17/11) |

| | | | | | |
|---|---|---|---|---|---|
| 8/25/11 | 7/01/11 – 7/31/11 | $200,000.00 | $47,725.59 | $160,000.00 | $47,725.59 | #9784 (9/16/11) |
| 9/25/11 | 8/01/11 – 8/31/11 | $200,000.00 | $0.00 | $160,000.00 | $0.00 | #10071 (10/26/11) |
| 10/26/11 | 9/01/11 – 9/30/11 | $200,000.00 | $0.00 | $160,000.00 | $0.00 | #10244 (11/17/11) |
| 11/28/11 | 10/01/11 – 10/31/11 | $200,000.00 | $0.00 | $160,000.00 | $0.00 | #10494 (12/21/11) |
| 12/27/11 | 11/01/11 – 11/30/11 | $200,000.00 | $2,228.70 | $160,000.00 | $2,228.70 | #10647 (1/19/12) |
| 1/25/12 | 12/01/11 – 12/31/11 | $200,000.00 | $519.45 | $160,000.00 | $519.45 | #10944 (2/16/12) |
| 3/7/12 | 1/01/12 – 1/31/12 | $200,000.00 | $27.97 | $160,000.00 | $27.97 | #11291 (4/2/12) |
| 3/27/12 | 2/01/12 – 2/29/12 | $200,000.00 | $1,055.84 | $160,000.00 | $1,055.84 | #11427 (4/18/12) |
| 5/1/12 | 3/01/12 – 3/31/12 | $200,000.00 | $1,202.49 | $160,000.00 | $1,202.49 | #11679 (5/23/12) |
| 5/29/12 | 4/01/12 – 4/30/12 | $200,000.00 | $0.00 | $160,000.00 | $0.00 | #11874 (6/21/12) |
| 6/29/12 | 5/01/12 – 5/31/12 | $200,000.00 | $0.00 | $160,000.00 | $0.00 | #12076 (7/23/12) |
| 7/26/12 | 6/01/12 – 6/30/12 | $200,000.00 | $0.00 | Pending | Pending | #12289 (8/17/12) |
| 8/29/12 | 7/01/12 – 7/31/12 | $200,000.00 | $0.00 | Pending | Pending | #12446 (9/21/12) |
| 9/28/12 | 8/01/12 – 8/31/12 | $200,000.00 | $0.00 | Pending | Pending | #12611 (10/23/12) |
| 10/26/12 | 9/01/12 – 9/30/12 | $200,000.00 | $0.00 | Pending | Pending | #12744 (11/20/12) |
| 11/30/12 | 10/01/12 – 10/31/12 | $200,000.00 | $0.00 | Pending | Pending | #12885 (12/26/12) |
| 12/2612 | 11/1/12- 11/30/12 | $200,000.00 | $0.00 | Pending | Pending | #13068 (1/17/13) |

**SUMMARY OF PROFESSIONALS' TIME DURING THE MONTHLY
COMPENSATION PERIOD OF DECEMBER 1, 2012 THROUGH DECEMBER 31, 2012**

Moelis & Company
Summary of Hours Worked
December 1, 2012 - December 31, 2012

| Name | Position | Hours Worked |
|------|----------|-------------:|
| Thane Carlston | Managing Director, Restructuring Group | 0.0 |
| Navid Mahmoodzadegan | Managing Director, Media | 0.0 |
| Zul Jamal | Managing Director, Restructuring Group | 2.0 |
| Jason Warsavsky | Associate | 2.0 |
| Aashish Shah | Analyst | 6.0 |
| | **Total Moelis Team Hours** | **10.0** |

## SUMMARY OF PROFESSIONALS' TIME DURING THE FINAL COMPENSATION PERIOD OF JANUARY 6, 2009 THROUGH DECEMBER 31, 2012

**Moelis & Company**
**Summary of Hours Worked**
**January 6, 2009 - December 31, 2012**

| Name | Position | Hours Worked |
|------|----------|-------------:|
| Thane Carlston | Managing Director, Restructuring Group | 545.0 |
| Bill Derrough | Managing Director, Restructuring Group | 10.0 |
| Navid Mahmoodzadegan | Managing Director, Media | 512.5 |
| John Momtazee | Managing Director, Media | 239.0 |
| Zul Jamal | Managing Director, Restructuring Group | 1,006.5 |
| Larry Kwon | Senior Vice President, Restructuring Group | 412.0 |
| Ashish Ajmera | Senior Vice President, Media | 1,427.5 |
| Evan Glucoft | Associate | 1,618.5 |
| Jens Olson | Associate | 112.0 |
| Jason Warsavsky | Associate | 124.0 |
| Vishal Patel | Analyst | 1,224.5 |
| Sandhya Sistla | Analyst | 850.0 |
| Aashish Shah | Analyst | 86.0 |
| Janet Jin | Analyst | 83.0 |
| Michael Cronin | Summer Associate | 15.0 |
| Sakya Duvvuru | Summer Analyst | 80.5 |
| | **Total Moelis Team Hours** | **8,346.0** |

## SUMMARY OF EXPENSES DURING THE FINAL COMPENSATION PERIOD OF JANUARY 6, 2009 THROUGH DECEMBER 31, 2012

Moelis & Company
Summary of Expenses
January 6, 2009 - December 31, 2012

| | |
|---|---|
| Airfare | $55,052.73 |
| Lodging | 23,797.18 |
| Travel / Overtime / Weekend meals | 6,307.08 |
| Taxi / Transportation / Parking | 14,069.52 |
| Telephone | 1,736.95 |
| Presentations | 18,451.27 |
| Other | 61,810.43 |
| Total Expenses | $181,225.16 |

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: March 21, 2013 at 4 pm** |

## FORTY-EIGHTH MONTHLY AND FINAL APPLICATION OF MOELIS & COMPANY LLC FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Pursuant to sections 328 and 331 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1532, as amended (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-2 of the Local Rules of

Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of

Delaware (the "Local Bankruptcy Rules"), Moelis & Company LLC ("Moelis"), investment

banker to the Official Committee of Unsecured Creditors (the "Committee") appointed in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicagoland Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc, (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc, (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc, (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPLX, Inc. (0191); and WTXX Inc, (1268).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

above-captioned cases, hereby submits this forty-eighth monthly and final application (this "Application") for the allowance of compensation for professional services performed by Moelis for the period commencing December 1, 2012 through and including December 31, 2012 (the "Monthly Compensation Period") and for the period commencing January 6, 2009 through and including December 31, 2012 (the "Final Compensation Period"), and reimbursement of its actual and necessary expenses incurred during the Monthly and Final Compensation Periods. By this Application, Moelis seeks (a) allowance of payment of compensation for services rendered in the amount of $200,000 (less any crediting as set forth below) and reimbursement of actual and necessary expenses in the amount of $12,032.48 incurred during the Monthly Compensation Period and (b) allowance of payment of compensation for services rendered in the amount of $13,467,741.94 and reimbursement of actual and necessary expenses in the amount of $191,225.16 incurred during the Final Compensation Period. In support of this Application, Moelis respectfully represents as follows:

## BACKGROUND

1.    On December 8, 2008, (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or the "Company") commenced these chapter 11 cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.    The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.    On December 18, 2008, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the Committee. On December 18, 2008, the Committee

met with and selected Chadbourne & Park LLP ("Chadbourne") as its counsel and Landis Rath & Cobb LLP as its co-counsel.

4.     On January 6, 2009, the Committee selected Moelis as its investment banker.

5.     On March 13, 2009, this Court entered an order authorizing the employment and retention of Moelis as investment banker to the Committee *nunc pro tunc* to January 6, 2009 (the "Retention Order") [Docket No. 523]. The Retention Order is annexed hereto as Exhibit C. The terms and conditions of Moelis' engagement in these cases, which are embodied in the Retention Order are based upon Moelis & Company's Engagement Letter with the Committee dated as of January 6, 2009 (the "Engagement Letter"), attached as Exhibit D.

6.     On March 19, 2009, this Court appointed Stuart Maue as the fee examiner (the "Fee Examiner") in these cases *nunc pro tunc* to February 20, 2009 pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "Fee Examiner Order").

7.     On July 23, 2012, the Court entered the *Order Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P. and JPMorgan Chase Bank, N.A.* [Docket No. 12074] and such plan became effective on December 31, 2012 (the "Effective Date").

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157

and 1334.  Venue of this proceeding and this Application is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2)(A) and (M).

9.      The statutory bases for relief requested herein are sections 105(a), 328, 330 and

331 of the Bankruptcy Code.

## COMPENSATION REQUESTED FOR SERVICES RENDERED
## DURING THE MONTHLY COMPENSATION PERIOD

10.     Pursuant to the Engagement Letter, the Committee agreed to pay Moelis a

monthly fee of $200,000 per month for the duration of its engagement.

11.     The following is a summary of the tasks Moelis performed during the Monthly

Compensation Period.[2]

(a)     **Prepared Information for the Committee**.  During the Monthly
Compensation Period, Moelis prepared information relating to the
chapter 11 cases for the Committee and its professionals, including
but not limited to updates and reports on the status of the industry
and the Company on a regular basis.  Additionally, Moelis was
responsive to and conducted analysis based on the needs of the
Committee, including participating on calls and reviewing various
materials.

(b)     **Meetings with other Committee professionals.**  Moelis and the
other Committee professionals, including AlixPartners, LLP,
Chadbourne, Landis Rath & Cobb LLP and Zuckerman Spaeder
LLP, worked closely in analyzing various issues relevant to the
Committee in these chapter 11 cases.  To that end, the Committee
professionals held meetings on a regular basis to discuss issues
facing the Committee that required the expertise of each
Committee professional.

---

[2] This summary is not intended to be a detailed description of the work performed by Moelis, and is merely a
guideline offered to the Court and other interested parties with respect to the services performed by Moelis during
the Monthly Compensation Period.

12.     Pursuant to the Retention Order, the requirements of the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines and Local Rule 2016-2 have been modified such that Moelis restructuring professionals are required only to keep summary time records in one-half hour increments and are excused from complying with the information requirements contained in Local Rule 2016-2(d).   However, a summary of the time expended by Moelis restructuring professionals during the Monthly Compensation Period is attached hereto as Exhibit A.   During the Compensation Period, Moelis rendered services on behalf of the Debtors totaling 10.0 hours.

13.     To the extent this Application does not comply in every respect with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines and Local Rule 2016-2 (as modified by the Retention Order), Moelis respectfully requests a waiver for any such technical non-compliance.

## COMPENSATION REQUESTED FOR
## SERVICES RENDERED DURING THE FINAL COMPENSATION PERIOD

14.     Set forth below is a table calculating the aggregate compensation Moelis is requesting hereunder.

*[Remainder of page intentionally left blank]*

**Moelis & Company**
**Summary of Final Fee Request**

*Total Fees Requested by Moelis:*

**I. Monthly Fees**

| | |
|---|---|
| January 2009 - December 2012 Monthly Fees | $9,567,741.94 |
| **Total Monthly Fees** | **$9,567,741.94** |

**II. Restructuring Fee**

| | |
|---|---|
| Gross Restructuring Fee | $7,500,000.00 |
| **Total Restructuring Fee** | **$7,500,000.00** |

**III. Credits**

| | |
|---|---|
| *Less: 50% Crediting for January 2010 Monthly Fee* | ($100,000.00) |
| *Less: 50% Crediting for February 2010 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for March 2010 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for April 2010 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for May 2010 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for June 2010 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for July 2010 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for August 2010 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for September 2010 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for October 2010 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for November 2010 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for December 2010 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for January 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for February 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for March 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for April 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for May 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for June 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for July 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for August 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for September 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for October 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for November 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for December 2011 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for January 2012 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for February 2012 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for March 2012 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for April 2012 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for May 2012 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for June 2012 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for July 2012 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for August 2012 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for September 2012 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for October 2012 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for November 2012 Monthly Fee* | (100,000.00) |
| *Less: 50% Crediting for December 2012 Monthly Fee* | (100,000.00) |
| **Total Credits** | **($3,600,000.00)** |
| **Net Restructuring Fee** | **$3,900,000.00** |

**Fee Summary**

| | |
|---|---|
| *Monthly Fees* | $9,567,741.94 |
| *Plus: Net Restructuring Fee* | 3,900,000.00 |
| *Less: Amount Previously Paid* | (9,567,741.94) |
| **Balance Outstanding** | **$3,900,000.00** |

15.    Moelis has been advising the Committee on strategic and restructuring initiatives since its initial engagement in January 2009.  The following summaries highlight certain key areas in which Moelis provided essential services to the Committee during the Final Compensation Period.[3]

(a)    **Analysis of long-term business plan, valuations and forecasts for the Company**.  Moelis reviewed various iterations of the Debtors' long-term business plan, operating plans, financial statements and financial projections prepared by the Debtors and their professionals.  Moelis utilized the Company's long-term business plan to provide a valuation summary to the Committee and updated such valuation based on revised versions of the long-term business plan. Moelis held diligence discussions with the Debtors' advisors to understand the drivers behind the changes in the various projections.  Moelis also provided the Committee with a presentation of possible recoveries to constituents represented by the Committee based on potential valuations and legal outcomes. Moelis also conducted analysis on industry-wide forecasts and trends, including preparing weekly updates on news and comparable company trends in the television broadcasting and newspaper industries.  Moelis researched news and trends for key markets in which the Debtors had operations and assets to gain a further understanding of the Debtors' performance against certain benchmarks.

(b)    **Review of potential litigation recoveries**.  Moelis analyzed the potential recoveries to different parties involved in the chapter 11 cases in connection with potential litigation concerning the employee stock ownership plan ("ESOP") and the leveraged buy-out of the Company that occurred in 2007, including, without limitation, the purchase by the Company of its common stock on or about June 4, 2007, the merger and related transactions involving the Company on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction (the "LBO Transaction").  Moelis reviewed presentations from various parties regarding the validity of such litigation, the likelihood of success and potential recoveries for unsecured creditors in the event such litigation was successful.

---

[3] This summary is not intended to be a detailed description of the work Moelis has performed during the Final Compensation Period, but rather is a guideline offered to the Court and other interested parties with respect to the services performed by Moelis.

(c) **Review of various LBO Transaction-related documents.** Moelis reviewed various documents in connection with the LBO Transaction, including solvency documents created at the time of such transaction. Moelis worked with other Committee professionals regarding a solvency and recovery analysis in connection with any potential claims or causes of action in connection with the LBO Transaction. Moelis also analyzed the financial and economic conditions existing at the time of the LBO Transaction.

(d) **Review of Disclosure Statement and Plan of Reorganization.** Moelis spent significant time engaging in discussions and negotiations with the Debtors and certain creditor constituencies regarding a potential plan of reorganization and settlement of potential litigation related to the LBO Transaction. As a result of these discussions, Moelis also spent significant time reviewing the Debtors' plan of reorganization filed on April 12, 2010, and the accompanying disclosure statement. Moelis reviewed drafts of the plan of reorganization prior to the filed version, as well as the version filed with the Court and any amendments thereto. Primarily focusing on the relevant financial/business matters, Moelis spent a majority of its time reviewing the valuation, recovery and value allocation portions of these documents.

(a) **Review of Examiner Report.** Moelis spent considerable time reviewing the report by the examiner appointed in these chapter 11 cases evaluating the potential claims and causes of action held by the Debtors' estates in connection with the LBO Transaction and the ESOP, including, among other things, claims for fraudulent conveyance, breach of fiduciary duty, aiding and abetting breach of fiduciary duty and equitable subordination, and the potential defenses against such claims. Moelis also discussed the findings in the examiner's report with the Committee and other professionals and analyzed potential impacts to recovery.

(b) **Committee Draft Plan.** Moelis worked closely with the other Committee professionals on a potential Committee plan of reorganization. This included identifying potential distribution structures and recoveries to each class. In coordination with the analysis of competing plans (described below), Moelis also helped the other Committee professionals draft responsive statements based on its analysis.

(c) **Competing Plans Analysis.** Moelis analyzed the different distribution structures and recoveries presented in various competing plans of reorganization filed with this Court, including the plan of reorganization proposed by the Debtors, the

Committee, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P. and JPMorgan Chase Bank, NA (as amended, modified or supplemented to date, the "DCL Plan"), the plan of reorganization proposed by certain of the Company's noteholders including, among others, Aurelius Capital Management, LP. (the "Aurelius Plan") and the plan of reorganization proposed by certain lenders under the Company's bridge loan agreement (the "Bridge Lender Plan"). This analysis included meeting with potential proponents of competing plans prior to their being filed. In addition, Moelis evaluated the settlement with the proponents of the Bridge Lender Plan. Moelis reviewed updates, objections and various other drafts and filings related to the DCL Plan, Aurelius Plan and Bridge Lender Plan.

(d)    **Settlement Negotiations**. Moelis spent considerable time participating in negotiations for a proposed plan settlement, including attending non-binding mediation concerning the terms of a plan of reorganization in-person. Additionally, significant time was spent analyzing the economic impact of potential plans on the various parties subject to the mediation. Moelis analyzed the effects of the settlement plan on different classes as well as reviewed the updated financial projections, valuation and liquidation analysis included as part of updated disclosure filings.

(e)    **Expert Rebuttal Report**. Moelis discussed an expert rebuttal report that was considered and evaluated as a potential submission by one of the managing directors of Moelis in connection with the competing plan process. Moelis conducted in-depth research and drafted the report. Moelis also reviewed expert and rebuttal reports from various parties.

(f)    **Confirmation**. Moelis attended the confirmation hearing in Wilmington, Delaware and worked with Committee professionals to provide various analyses in connection therewith. Moelis reviewed Judge Carey's confirmation opinion and assisted Committee professionals on potential DCL Plan modifications by analyzing recoveries to various classes under several scenarios.

(g)    **Analysis of potential cable investments.** Moelis engaged in discussions with the Company and its advisors with respect to a potential investment in the launch of a new cable network, including the timing of such investment, the amount of investment required and the current views of the Company and its advisors regarding such investment.

(h)    **Discovery**. Moelis discussed the terms and appropriate responses to discovery requests with its internal and external counsel, as well

as with Committee counsel.    Moelis recovered all relevant documents and emails.

(i)    **Providing guidance to the Committee regarding the disposition of the Chicago Cubs and related assets (the "Cubs Disposition").**    Since the beginning of Moelis' engagement, Moelis led the process of conducting diligence and negotiations regarding the Cubs Disposition. To that end, during the Final Compensation Period, Moelis participated in numerous discussions and meetings with the Debtors, the Debtors' professionals, Committee professionals and other creditor groups' professionals regarding the process, including issues surrounding current bids, financing terms and Major League Baseball (the "MLB"). Additionally, Moelis conducted its own independent analysis of the disposition and the process conducted by the Debtors, including an analysis of precedent transactions concerning MLB teams as well as an analysis of regional sports networks to further understand the Debtors' disposition process. Specifically, Moelis analyzed updated media rights agreements, formation and tax matters agreements.

(j)    **Participating in meetings held by the Debtors and the Debtors' professionals.**    As requested by the Committee, Moelis was actively involved in performing the necessary due diligence to understand the Debtors' business plan and strategies, including the Cubs Disposition, in meetings both in person and telephonically. Moelis held various telephonic diligence sessions regarding the recovery model as well as long-term projections.

(k)    **Participating in meetings with the Committee.** Moelis provided updates and reports on the status of its engagement on a regular basis during Committee meetings.    Additionally, Moelis was responsive to and conducted analysis based on the requests of the Committee. Moelis participated in substantially all Committee meetings.  Moelis also held regular meetings with other Committee professionals to ensure workflows remained on track.

16.    During the Final Compensation Period, Moelis restructuring professionals rendered approximately 8,346.0 hours of services to the Committee based on the summary time records those professionals maintained pursuant to the Retention Order.

## REQUEST FOR REIMBURSEMENT OF EXPENSES

17.     The Engagement Letter also entitled Moelis to receive reimbursement of all reasonable out-of-pocket expenses in connection with performing services pursuant to the Engagement Letter.  Expenses incurred by Moelis for the Monthly Compensation Period and prior expenses not previously requested for reimbursement totaled $12,032.48.  A summary of the expenses Moelis incurred during the Monthly Compensation Period is annexed hereto as Exhibit B.

18.     Moelis further seeks approval of all expenses incurred during the Final Application Period in the amount of $191,225.16, which includes $10,000 in estimated fees and expenses of its external legal counsel incurred after the Effective Date in connection with the preparation of this Application and reviewing and responding to the Fee Examiner's reports.[4]  Expenses incurred by Moelis during the Monthly and Final Compensation Periods include long distance telephone calls, overnight delivery, travel expenses, local messenger service, meals, facsimiles, postage, duplicating and presentation expenses, and the fees and expenses of its external legal counsel, which the Debtors are authorized to reimburse Moelis pursuant to the Retention Order.

19.     All of the fees and expenses for which allowance and payment is requested by Moelis in this Application are reasonable and necessary and Moelis' work was performed for and on behalf of the Debtors during the Monthly and Final Compensation Periods.  In seeking reimbursement of an expenditure, Moelis is requesting reimbursement "at cost" and does not make a profit on such expenditure.

---

[4] Should additional activities by required to be undertaken by Moelis or its advisors that were not contemplated by this estimate, Moelis reserves the right to file a supplemental request for allowance and reimbursement.

## LEGAL STANDARDS

20.     Moelis was retained pursuant to section 328(a) of the Bankruptcy Code, and

pursuant to the Retention Order all of its requested fees and expense reimbursements are

subject to review under the standards of section 328(a) of the Bankruptcy Code, and not

section 330.  Only the Office of the United States Trustee, and the Fee Examiner pursuant to

the Fee Examiner Order, may object to Moelis' fees and expenses pursuant to section 330 of

the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides, in pertinent part:

> The trustee, or a committee appointed under section 1102 of this
> title, with the Court's approval, may employ or authorize the
> employment of a professional person under section 327 or 1103 of
> this title, as the case may be, on any reasonable terms and
> conditions of employment, including on a retainer, on an hourly
> basis, on a fixed or percentage fee basis, or on a contingent fee
> basis.

11 U.S.C. § 328(a).

21.     Section 328(a) of the Bankruptcy Code further provides that the Court may

allow compensation different from the compensation provided under the previously-approved

terms and conditions after the conclusion of such employment, only if such terms and

conditions "prove to have been improvident in light of developments not capable of being

anticipated at the time of the fixing of such terms and conditions." *Id.*  While the bankruptcy

court has discretion to alter fee agreements when the circumstances warrant, such alteration

must be supported by evidence that the fee terms proved to have been improvident by reason of

subsequent developments not capable of being anticipated at the time of the order fixing the

compensation arrangement. *See, e.g., In re Confections By Sandra, Inc.,* 83 B.R. 729 (9th Cir.

B.A.P. 1987) (absent evidence of unanticipated developments, a bankruptcy court abuses its

discretion by altering a previously approved fee arrangement).  Where the court specifically

approved a professional's employment and its compensation arrangement under section 328(a)

of the Bankruptcy Code and there is no evidence that unexpected or unforeseen circumstances have occurred that would cause the compensation arrangement to be improvident, the Court cannot conduct a section 330 reasonableness review of the fees requested. *See, e.g., In re Olympia Holding Corp.,* 176 B.R. 962, 966 (Bankr. M.D. Fla. 1994).

22.     As described above, Moelis has provided valuable services to the Committee during these complex and lengthy chapter 11 cases, and Moelis respectfully submits that the professional services for which it requests compensation, and the expenditures for which it seeks reimbursement, in this Application materially aided the Committee in maximizing distributions to unsecured creditors and were necessary for and substantially benefited the orderly administration of the Debtors' estates.  Moelis professionals worked assiduously to anticipate or respond to the needs of the Committee and to assist the Committee throughout these cases.   Moelis' services and expenditures were necessary to, and in the best interests of, the Committee, the Debtors' estates and their creditors.   Accordingly, Moelis respectfully submits that the compensation and expense reimbursements it requests hereunder are fair and reasonable given (a) the complexity of these cases, (b) the nature and extent of the services rendered, (c) the value of such services, and (d) the costs of comparable services other than in a case under the Bankruptcy Code.

WHEREFORE, Moelis respectfully requests that this Court enter an order approving: (a) the allowance to Moelis of $200,000 of fees and $12,032.48 of expenses incurred during the Monthly Compensation Period, (b) the allowance to Moelis of $13,467,741.94 of fees and $191,225.16 of expenses incurred during the Final Compensation Period and (b) such other and further relief as is just and appropriate.

Dated: March 1, 2013
New York, New York

MOELIS & COMPANY LLC

By: _____
Name: Thane Carlston
Title: Managing Director
399 Park Avenue, 5th Floor
New York, New York 10022
(212) 883-3530

Investment Banker to the Official Committee of
Unsecured Creditors of Tribune Company, et al.