# **EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
In re:                                                  :     Chapter 11 Cases
                                                        :     Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                                :     Jointly Administered
                                                        :
             Reorganized Debtors.                       :
                                                        :
---------------------------------------------------------x

**DECLARATION OF JAMES HEANEY IN SUPPORT OF
MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK
PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D), 503(b)(4) AND 503(b)(5)
FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES
INCURRED IN CONNECTION WITH MAKING A SUBSTANTIAL
CONTRIBUTION TO THE DEBTORS' CHAPTER 11 CASES**

I, JAMES HEANEY, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1. I am a managing director at Law Debenture Trust Company of New York ("Law Debenture"), successor indenture trustee under that certain indenture dated March 19, 1996 (the "1996 Indenture") between Tribune Company ("Tribune," and with its debtor subsidiaries, "Debtors") (successor to The Times Mirror Company) and Citibank, N.A. I submit this declaration in connection with the *Motion Of Law Debenture Trust Company Of New York Pursuant To 11 U.S.C. §§ 503(B)(3)(D), 503(B)(4) And 503(B)(5) For Allowance And Payment Of Fees And Expenses Incurred In Connection With Making A Substantial Contribution To The Debtors' Chapter 11 Cases,* filed contemporaneously herewith.

2. Except where otherwise stated, I make this declaration on the basis of my own personal knowledge and my review of pleadings, filings, letters and electronic communications, and other relevant documents. I am fully familiar with the facts set forth herein.

A.  **Law Debenture's Appointment And Initial Involvement.**

3. On May 7, 2009, Law Debenture retained Kasowitz, Benson, Torres & Friedman LLP ("KBTF") as its legal advisor in connection with its potential replacement as indenture trustee under the 1996 Indenture.

4. On June 5, 2009, Law Debenture retained Bifferato Gentilotti LLC ("BG") as local counsel and on August 1, 2009, Law Debenture retained The Michel-Shaked Group ("MSG") as a financial advisor.

5. On or about June 8, 2009, Law Debenture was appointed successor indenture trustee under the 1996 Indenture by a majority of the holders of the 6.61% debentures due 2027 and the 7.25% debenture due 2096 issued by Tribune. With its appointment, Law Debenture became the fiduciary for 18% of Tribune's senior noteholders.

6. Law Debenture and its Advisors spent the first few weeks of its involvement in the Debtors' chapter 11 cases reviewing Tribune's publicly filed documents surrounding the LBO to understand its intricate transactions fully. Law Debenture also devoted its efforts to speaking with parties already involved in the Debtors' bankruptcy cases to understand the LBO investigative progress made to date.

7. Law Debenture took deliberate actions to ensure the LBO Claims were properly investigated and analyzed for the benefit of all Tribune's creditors. Law Debenture first lobbied the Committee to hire special litigation counsel that could, if necessary, commence litigation against the perpetrators of the LBO. Concurrently, Law Debenture sent demand letters to at least six of the main targets of the LBO investigation seeking documents and other pertinent information related to the LBO.[1]

---

[1] During this same time period, Law Debenture also prepared a motion to obtain standing to prosecute claims arising out of the LBO in th event that the Debtors filed a plan severly discounting the value of the LBO Claims.

2

8.    While Law Debenture attempted to obtain consensual agreements to participate in discovery, the parties consistently and affirmatively ring-fenced Law Debenture out of any process to obtain and use discovery. Although one of the parties from which Law Debenture sought documents nominally agreed to provide all documents it had given to the Committee, it did so provided that Law Debenture not question the confidentiality designations or the prohibition against the documents' use in this Court. This proposal was unacceptable to Law Debenture as it defeated the very purpose for the discovery.

**B.    Law Debenture Files Its 2004 Motion And Joins The LBO Investigation.**

9.    By the end of August 2009, Law Debenture had not made significant progress in obtaining a participatory seat in the LBO investigation and remained unsatisfied with the quality of the discovery and investigation's pace.

10.    Therefore, on August 26, 2009, Law Debenture filed its *Motion For Leave To Conduct Discovery Pursuant To Rule 2004 Of The Federal Rules Of Bankruptcy Procedure Of Tribune Company, Its Affiliates, And Certain Third Parties, Or Alternatively, For The Appointment Of An Examiner* (the "2004 Motion").

11.    After a month of negotiations with the Debtors, the Committee, and other relevant parties, Law Debenture entered into a stipulation consensually resolving the 2004 Motion. Approximately one week after the Court approved the stipulation, Law Debenture's Advisors met with special litigation counsel to the Committee and began coordinating efforts to ensure the production of all relevant documents and their thorough review.

12.    For the next three months, Law Debenture's Advisors and counsel to the Committee worked closely together, sharing documents, legal research, memoranda and financial analyses to build a case in support of the LBO Claims. The parties' resources were

pooled and ideas were exchanged, improving the quality and efficiency of work performed.

13. The Committee and Law Debenture collaborated in taking seven depositions relating to the LBO during the Application Period. Similarly, the Committee and Law Debenture determined that it would be most beneficial to the analysis of the LBO Claims if both parties were involved in analyzing the documents, researching the legal issues and drafting a complaint. Ultimately, Law Debenture's Advisors prepared a twenty-five count, one hundred forty-two page complaint that it shared with the Committee (and later, used to present its case to the Examiner).

14. By late January when the parties shared their respective complaints, Law Debenture was able to address the gaps in the Committee's complaint and provided suggestions to improve it.

15. Specifically, Law Debenture suggested that the Committee add a declaratory judgment cause of action for equitable relief pertaining to certain holding companies that were set up in connection with the LBO, causes of action for negligence and misrepresentation, breaches of fiduciary duty and aiding and abetting breaches of fiduciary duty, and expand the universe of defendants liable for unjust enrichment.

16. In October 2009, Law Debenture discovered that the Debtors and JPMorgan Chase Bank, N.A. ("JPM"), one of the LBO Lenders, had agreed that a non-debtor affiliate of Tribune would reimburse JPM's fees and expenses related to its claim against the estate, including those fees and expenses incurred in defending against the LBO Claims, though JPM was an unsecured creditor. Consequently, on October 23, 2009, Law Debenture filed a motion seeking to terminate the payments and disgorge past payments. Dkt. No. 2407.

C.     **Law Debenture Presents The LBO Claims To The Debtors And The Committee.**

17.    By December 2009, Law Debenture again discovered that the Debtors were pressured to file a plan of reorganization that would undervalue the LBO Claims and distribute to Tribune's creditors only pennies on the dollar.

18.    In response, Law Debenture's Advisors prepared and presented separate presentations to the Debtors and the Committee in an effort to demonstrate the viability and value of the LBO Claims and the connection between the realization of such claims and the performance of fiduciary obligations to the estates.

19.    The presentations included a description of the LBO, utilizing many of the documents that Law Debenture had reviewed to provide color and culpability to the targets of the potential LBO Claims. The presentations also included an initial overview and analysis of the main legal issues presented by the potential LBO Claims.

20.    On February 1, 2010, the Committee filed its *Motion For Entry Of An Order Granting Leave, Standing And Authority To Commence, Prosecute And Settle Claims And Counterclaims Of The Debtors' Estates* [Dkt. No. 3281] (the "Standing Motion") to obtain standing to prosecute the LBO claims. In filing its February 16, 2010 response in support of the Standing Motion, Law Debenture hoped that the submission of additional detail in support of the Standing Motion would help underscore the value and merits of the LBO Claims and provide the parties with the requisite incentive to achieve a negotiated settlement or litigate, if necessary.

21.    After successfully convincing the Committee to file the Standing Motion, Law Debenture continued its efforts to work with the Debtors and the Committee to develop a plan of reorganization that would enable the Debtors to emerge from bankruptcy quickly while resolving most, if not all, of the LBO Claims in a manner that would garner the support of multiple creditor

constituencies.

22. Over the next six weeks, Law Debenture and its directing noteholder, Centerbridge, took an active role in the negotiations.

**D. The Examiner Enlists Law Debenture's Help Preparing His Report.**

23. During three months following the Court's April 20, 2010 appointment of the examiner ("Examiner"), Law Debenture's Advisors worked tirelessly at the Examiner's request to provide him with all the results of its investigation of the LBO and factual and legal research into the LBO Claims, including the support underlying Law Debenture's twenty-five cause of action complaint.

24. Law Debenture's efforts to respond to the Examiner's requests included meetings, conversations, emails, and culminated with the submission of two highly detailed and substantive briefs which provided detailed factual and legal analysis of over thirty-four discrete issues identified by the Examiner.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 1, 2013
New York, New York

Respectfully submitted,

/s/ James Heaney
JAMES HEANEY