# **EXHIBIT E**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| TROPICANA ENTERTAINMENT, LLC, | . | Case No. 08-10856(KJC) |
| et al., | . | Jointly Administered |
| | . | |
| Debtors. | . | Sept. 10, 2009 (11 a.m.) |
| | . | (Wilmington) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT JUDGE

Appearances:

| | |
|---|---|
| For the Debtors: | Lee E. Kaufman, Esq.<br>Richards, Layton & Finger, P.A. |
| For the Ad Hoc Consortium: | Daniel J. Saval, Esq.<br>Brown, Rudnick |
| For OpCo Secured Lenders: | Mark Broude, Esq.<br>Latham & Watkins |
| For LandCo: | James O. Johnston, Esq.<br>Hennigan Bennett & Dorman |
| For William Yung: | Sandra Selzer, Esq.<br>Greenberg Traurig<br>Nancy Peterman, Esq.<br>Kirkland & Ellis |

| | |
|---|---|
| Audio Operator: | Lisa Dunwody |
| Transcriber: | Elaine M. Ryan<br>(302) 683-0221 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1  the argument, ought not to be rewarded. Do you understand
2  what I'm saying?
3           MR. SAVAL: No, I do understand, Your Honor, and
4  I've read the points raised, but I think it's important to
5  put it all in context. These cases, as Scott Butera said in
6  his first day declaration, flowed from a cascade of adverse
7  events directly attributable to the loss of the Atlantic City
8  license.
9           THE COURT: Well, let's say that's true, and let's
10 say that what your clients ended up precipitating ended up
11 being a good thing for the estate, let's just assume that for
12 the moment. I will tell you it's my impression that your
13 clients had such a bloodlust for Mr. Yung, that it would have
14 preceded to do what they did regardless of whether there was
15 a benefit shared by others who were constituents in the
16 estate, and I, frankly, don't think that's overstating the
17 case, but you're free to respond to that.
18          MR. SAVAL: Your Honor, I think that may be somewhat
19 overstated. Going back historically in this case, our
20 clients through the indenture trustee sought to protect their
21 rights after the loss of the Atlantic City license and it is
22 true, as the Steering Committee says, there was litigation
23 commenced. That was litigation to assert a default to
24 protect the rights of the noteholders under the indenture.
25 What happened after that is the noteholders voluntarily