**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, *et al.*,<br><br>                Reorganized Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br><br>Hearing Date: March 14, 2013 at 2:30 p.m. (ET)<br>Obj. Deadline: March 6, 2013 at 4:00 p.m. (ET)<br>Related to Docket No. 13210, 13291 |

**<u>CORRECTED</u> CERTAIN FORMER TRIBUNE EXECUTIVES'
OBJECTION TO THE LITIGATION TRUSTEE'S MOTION FOR AN
OMNIBUS ORDER:  (I) AUTHORIZING SUBSTITUTION OF THE
LITIGATION TRUSTEE AS PLAINTIFF IN CERTAIN
ADVERSARY PROCEEDINGS AND APPROVING PROCEDURES
TO EVIDENCE SUCH SUBSTITUTIONS; (II) MODIFYING THE
STAY OF SUCH PROCEEDINGS; AND (III) EXTENDING
<u>THE TIME TO EFFECT SERVICE IN SUCH PROCEEDINGS</u>**

# **TABLE OF CONTENTS**

I.   THE ISSUE.................................................................................................................1

II.  RELEVANT FACTS..................................................................................................4

    A.  The Former Executives....................................................................................4

    B.  Compensation From Plans Created Years Before The 2007 LBO Are Ordinary
        Litigation Claims. ...........................................................................................4

        1)   Claims For Stock Option Payments Are Ordinary Litigation Claims And Not
            The Property Of The Litigation Trustee. ..................................................5

        2)   Claims For Restricted Stock Unit Payments Are Ordinary Litigation Claims
            And Not The Property Of The Litigation Trustee. ....................................6

        3)   Claims For Deferred Bonus Compensation Are Ordinary Litigation Claims
            And Not The Property Of The Litigation Trustee. ....................................6

        4)   Claims For Transitional Compensation, Like The Other Compensation Plans
            Created Many Years Before The LBO, Are Not The Property Of The
            Litigation Trustee.....................................................................................7

    C.  Compensation Programs Developed In Connection With The 2007 LBO Give
        Rise to Preserved Causes Of Action. ..............................................................7

III. ARGUMENT ............................................................................................................8

    A.  The Plan Provides That The Transitional Compensation Claims Are Ordinary
        Litigation Claims. ...........................................................................................8

    B.  The Litigation Trustee's Arguments Fail.........................................................9

        1)   "Arising From" Is Not Ambiguous In This Context.................................10

        2)   "Arising From" Does Not Mean "But For" ..............................................11

        3)   The Allegations In The *FitzSimons* Complaint Are Not Dispositive ..........11

CONCLUSION................................................................................................................13

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*Baroda Hills Invs., Ltd. v. Telegroup, Inc.*, 281 F.3d 133 (3d Cir. 2002) ................................... 10

*Duphily v. Delaware Elec. Coop., Inc.*, 662 A.2d 821 (Del. 1995) ............................................. 11

*GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776 (Del. 2012) ............ 8

*In re Shenango Group, Inc.*, 501 F.3d 338 (3d Cir. 2007)............................................................. 8

*In re Sugarhouse Realty, Inc.*, 192 B.R. 355 (E.D. Pa. 1996) ...................................................... 8

### <u>Other Authorities</u>

Restatement (Second) of Contracts § 203(a) (1981)..................................................................... 8

Dennis FitzSimons, Donald Grenesko, David Hiller, Timothy Landon, Thomas Leach, Luis Lewin, Mark Mallory, Richard Malone, John Reardon, Irene Sewell, Scott Smith, John Vitanovec, and Kathleen Waltz (collectively, the "Former Executives") hereby submit this corrected[1] objection to the *Litigation Trustee's Motion for an Omnibus Order: (I) Authorizing Substitution of the Litigation Trustee as Plaintiff in Certain Adversary Proceedings and Approving Procedures to Evidence Such Substitutions; (II) Modifying the Stay of Such Proceedings; and (III) Extending the Time to Effect Service in Such Proceedings* ("Mot.") (Feb. 20, 2013) [D.I. 13210].

The Former Executives of Tribune Company are defendants in adversary actions that the Official Committee of Unsecured Creditors (the "Committee") filed in 2010 and are still pending in this Court. They object to the Litigation Trustee's request that he be allowed to substitute for the Committee on claims to avoid or recover payments made to them under Tribune's Transitional Compensation Plan for Executive Employees (the "Transitional Compensation Plan"). This Plan was created in 1985, years before the 2007 LBO. Under the Confirmed Plan[2], claims for transition payments do not arise from the 2007 LBO, are not Preserved Causes of Action, and are not the property of the Litigation Trustee. His request to take them over should be denied.

## I.    THE ISSUE

In the pending adversary actions, the Committee seeks to avoid or recover six types of compensation the Former Executives received: 1) for the exercise of their stock options; 2) for

---

[1] This version corrects a proofreading error in the originally filed version of the Objection [D.I. 13291]. On page 3, line 8 of this version, the word "not" has been deleted. This version is otherwise identical to the originally filed version.

[2] Confirmed Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee Of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.

equity in the new, privately held Tribune.  Each of these types of compensation, except for

deferred bonus compensation, was subject to certain excise taxes.[2]

The Confirmed Plan provides that, after its Effective Date, certain of the adversary

actions – the "Ordinary Litigation Claims" – would be assigned to the Reorganized Debtors.

(Confirmed Plan § 5.16.)  Other claims, called "Preserved Causes of Action," would be taken by

the Litigation Trustee.  (*Id.* §§ 1.1.124, 13.2.)

The Confirmed Plan specifically classifies three types of payments as Ordinary Litigation

Claims, *i.e.*, claims that do not arise from the 2007 LBO.  (*Id.* § 1.1.156.)  These are post-LBO

payments arising from:  1) the exercise of stock options pursuant to the Company's incentive

compensation plan, first created in 1976 ("Incentive Compensation Plan"); 2) payments for

restricted stock units awarded pursuant to the same Incentive Compensation Plan; and

3) payment of deferred compensation pursuant to the Company's "Bonus Deferral Plan," first

created in 1993.  (*See id.*)  The Incentive Compensation Plan and the Bonus Deferral Plan, as

well as the Transitional Compensation Plan (first created in 1985) were put in place by Tribune's

Board years before the 2007 LBO.  Each of the plans conditioned certain payments on a change

in control.  These payments (as well as transition payments) were made pursuant to plans that

predated the 2007 LBO.  Claims to recover or avoid them should all be treated the same –

because they do not arise from the 2007 LBO, they are <u>all</u> Ordinary Litigation Claims, which are

the property of the Reorganized Debtors, not the Litigation Trustee.

In contrast, the Confirmed Plan specifies that two types of compensation-related claims

are <u>not</u> Ordinary Litigation Claims.  These are payments for:  1) success bonuses adopted in the

---

[2] As the Litigation Trustee agrees, claims to recover or avoid payments the Company made to offset those
excise taxes should be assigned to whichever party owns the claims pertaining to the corresponding type
of compensation.  (Mot. at 8–9.)

In contrast, the Confirmed Plan specifies that two types of compensation-related claims are not Ordinary Litigation Claims. These are payments for: 1) success bonuses adopted in the spring of 2007 and payable solely for work on the 2007 LBO; and 2) phantom equity grants negotiated in the spring of 2007 that would be approved on December 20, 2007, as part of Step Two of the LBO. (*See id.* ("Ordinary Litigation Claims shall not include" claims "for payments on any phantom equity grant pursuant to the 2007 Management Equity Incentive Plan or success bonus compensation arising from the leveraged buy-out of Tribune that occurred in 2007.").) Unlike the claims described in the previous paragraph, these claims do arise from the 2007 LBO. (*See id.*) They are therefore Preserved Causes of Action, which are assigned to the Litigation Trustee under the Confirmed Plan. (*Id.* §§ 1.1.119, 1.1.174.)

Claims for one of the six types of compensation are not specifically allocated – payments made pursuant to the Transitional Compensation Plan. The agreements embodied in the Confirmed Plan make the proper characterization of these claims clear – the Transitional Compensation Plan shares the essential characteristics of the Incentive Compensation Plan and Bonus Deferral Plan. All were first created by the Board long before the 2007 LBO. Accordingly, claims for post-LBO payments made pursuant to these plans (deferred bonuses, stock options, restricted stock units, and transition payments) "do not arise from" the 2007 LBO and do not belong to the Litigation Trustee. (*See id.* §§ 1.1.156, 5.16.) These claims stand in sharp contrast to claims seeking success bonuses and phantom equity payments. Those two types of payments were made pursuant to arrangements put into place in the spring of 2007, specifically as part of the LBO. Under the Confirmed Plan, claims to avoid success bonuses and phantom equity "arise from" the 2007 LBO. Those (and only those) belong to the Litigation Trustee.

3

## II.    RELEVANT FACTS

### A.    The Former Executives.

This objection is filed on behalf of more than a dozen former top Tribune executives, most of whom had been with the Company for over 20 years, some for over 30. (The Former Executives, their titles at the time of their departure, and their length of service are identified in Ex. A). These executives were not late arrivals who joined the Company with an eye toward a future LBO; they are men and women who devoted most, if not all, of their working lives to the Company and its operating subsidiaries.

### B.    Compensation From Plans Created Years Before The 2007 LBO Are Ordinary Litigation Claims.

Under the Confirmed Plan, Ordinary Litigation Claims are claims that "do not arise from" the 2007 Tribune LBO. (Confirmed Plan § 1.1.156.) By express agreement, claims arising from pre-existing compensation programs – stock options, restricted stock units and deferred compensation – are Ordinary Litigation Claims and therefore "do not arise from" the 2007 LBO. (*Id.*)

Tribune's obligations with respect to all three types of compensation expressly categorized under the Confirmed Plan as "Ordinary Litigation Claims" arose under plans that were first created long before the 2007 LBO. Tribune executives were recruited and remained with the Company based on these programs. These programs are (and were) typical at large corporations, including the Company's peers and other competitors. They were instituted by the Tribune Board for reasons that had nothing to do with the LBO. The Incentive Compensation Plan, which pertained to stock options and restricted stock units, was designed to "to provide officers [and] other employees . . . various forms of stock and cash incentive awards . . . thereby attracting, retaining and rewarding such persons and strengthening the mutuality of interests

between such persons and the Company's stockholders." (Incentive Compensation Plan, Ex. B.) The Bonus Deferral Plan under which deferred compensation arose was intended "to offer a select group of senior officers" and other employees "the opportunity to defer the receipt of all or a portion of any Qualifying Bonus" and invest those funds in stock or cash. (Bonus Deferral Plan, Ex. C.)

As shown in Exhibit A, the Former Executives served the Company and participated in these programs for decades before the 2007 LBO, and received payments under them after the LBO. The specifics of each plan follow:

       1)     Claims For Stock Option Payments Are Ordinary Litigation Claims And Not The Property Of The Litigation Trustee.

Tribune granted stock options to its executives pursuant to an incentive compensation plan dating back to at least 1976. (*See* Tribune Company Incentive Compensation Plan, as most recently amended in 2004, Ex. B.) For more than 30 years, Tribune granted stock options to help attract, retain, and reward key executives and align their interests with the Company's stockholders. (*Id.* at Art. 1.) The Compensation & Organization Committee of Tribune's Board of Directors approved and administered this plan for over 30 years before the LBO. (*See id.* at Art. 3.) The Incentive Compensation Plan, like similar plans offered by Tribune's competitors, included a change-in-control provision. (*Id.* at Art. 13.) Under the terms of the Incentive Compensation Plan, payment for all outstanding stock-based compensation came due upon the completion of the 2007 LBO. Although the 2007 LBO triggered the right to payment, the Confirmed Plan provides that claims pertaining to these payments are Ordinary Litigation Claims that expressly "do not arise from" the 2007 LBO. Thus, the fact that stock option payments were made after the 2007 change in control does not mean that they "arise from" the 2007 LBO. They have been classified as Ordinary Litigation Claims.

    2)      Claims For Restricted Stock Unit Payments Are Ordinary
             Litigation Claims And Not The Property Of The Litigation Trustee.

The Company granted restricted stock units pursuant to the same Incentive Compensation

Plan under which it granted stock options. (*E.g.*, *id.* at Art. 6.) The restricted stock units, like

the stock options, were used to attract, retain, and reward key executives and align their interests

with stockholders. Under the change-in-control provision in the Incentive Compensation Plan,

all earned restricted stock units were payable upon the completion of the 2007 LBO. (*See id.* at

Art. 13.) Yet, notwithstanding that such payments were made following the LBO's change in

control, the Confirmed Plan provides that these payments are Ordinary Litigation Claims, not

claims "arising from" the 2007 LBO.

    3)      Claims For Deferred Bonus Compensation Are Ordinary Litigation
             Claims And Not The Property Of The Litigation Trustee.

Tribune's Bonus Deferral Plan allowed certain executives to defer and invest portions of

their annual bonuses. (*See* Bonus Deferral Plan, as most recently amended in 2006, Ex. C,

§ 1.2.) The Bonus Deferral Plan existed for nearly 15 years before the 2007 LBO. (*Id.* § 1.1.)

Like the Incentive Compensation Plan, it was developed and implemented by the Compensation

& Organization Committee of Tribune's Board. (*Id.* § 1.4.) As with the Incentive Compensation

Plan, the Company's obligation to pay outstanding deferred bonus compensation was triggered

by a change in control; accordingly, this obligation came due upon the change in control that

occurred with the 2007 LBO. (*See id.* § 5.6.) The Confirmed Plan nonetheless specifies that

claims for Deferred Bonus compensation constitute Ordinary Litigation Claims that "did not

arise from" the LBO.

4)      Claims For Transitional Compensation, Like The Other
Compensation Plans Created Many Years Before The LBO, Are
Not The Property Of The Litigation Trustee.

The Transitional Compensation Plan for Tribune executives was established in 1985,

more than twenty years before the 2007 LBO.  (Transitional Compensation Plan, as most

recently amended in 2006, Ex. D, at 1.)  The Transitional Compensation Plan was designed to

help "to attract and retain executives of outstanding competence and to provide additional

assurance that they will remain with Tribune Company and its subsidiaries on a long-term basis."

(*Id.*)  As shown by the chart at Exhibit A, this incentive worked – the Tribune executives did

serve the Company on a long-term basis.

Like the Incentive Compensation Plan and the Bonus Deferral Plan, the Compensation &

Organization Committee of Tribune's Board of Directors approved and administered the

Transitional Compensation Plan and all executive transition payments.  (*Id.* § 2.)  Any change in

control, not just the 2007 LBO, would provide a necessary pre-condition for triggering the plan.

(*Id.* § 4.)  Accordingly, the Transitional Compensation Plan shares all the key features of the

plans for stock options, restricted stock units, and deferred bonus compensation.  Like them,

claims for payments under the Transition Plan do not "arise from" the 2007 LBO.  They arose

from a plan first adopted in 1985, and thus are Ordinary Litigation Claims and the property of the

Reorganized Debtors, not the Litigation Trustee.

C.      **Compensation Programs Developed In Connection With The 2007
LBO Give Rise to Preserved Causes Of Action.**

Two forms of compensation negotiated and implemented as part of the 2007 LBO

process are not categorized in the Confirmed Plan as Ordinary Litigation Claims: 1) success

bonuses and 2) phantom equity.  (Confirmed Plan § 1.1.156.)  These compensation items were

approved in the spring of 2007.  They were designed to reward individuals "who were critical to

the strategic review process and . . . who were directly involved with the ESOP transaction."

Such awards, the Compensation & Organization Committee said, were "to be made, in each case,

in respect of past and future services as employees of the Company" and "as a long term

incentive" to continue to provide such services after Tribune became privately held.  (Minutes of

April 1, 2007 Meeting of Compensation & Organization Committee, Ex. E.)  Further, these

specific awards were "in connection with, and conditioned upon consummation of," the 2007

LBO.  (*Id.*)  Thus, the success bonuses and phantom equity awards were created as part of the

2007 LBO itself and were paid or awarded only if it was completed.  Accordingly, the

Confirmed Plan provides that these two types of claims are not Ordinary Litigation Claims.

Instead, they "arise from" the 2007 LBO, fall into the category of Preserved Causes of Action,

and are properly assigned to the Litigation Trustee.

## III.    ARGUMENT

### A.    The Plan Provides That The Transitional Compensation Claims Are Ordinary Litigation Claims.

When interpreting a plan of reorganization, general principles of contract interpretation

apply.  *E.g.*, *In re Shenango Group, Inc.*, 501 F.3d 338, 344 (3d Cir. 2007).  The language of the

plan must be interpreted as a whole, giving effect to all terms and the overall plan.  *E.g.*, *GMG

Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) ("The

meaning inferred from a particular provision cannot control the meaning of the entire agreement

if such an inference conflicts with the agreement's overall scheme or plan."); *In re Sugarhouse

Realty, Inc.*, 192 B.R. 355, 363 (E.D. Pa. 1996) (all portions of a confirmed reorganization plan

"must be construed together to determine the intent of the parties"); Restatement (Second) of

Contracts § 203(a) (1981) ("an interpretation which gives a reasonable, lawful and effective

8

meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").

Thus, to determine whether the claims seeking to avoid or recover payments under the Transitional Compensation Plan constitute Ordinary Litigation Claims, one must look at how the Confirmed Plan treats the five other types of compensation that it expressly addresses. Under the Confirmed Plan, claims for compensation paid out pursuant to plans the Company created long before the LBO – including those for stock options, restricted stock units, and deferred compensation – are Ordinary Litigation Claims; they "do not arise from" the LBO. In contrast, claims for compensation paid out pursuant to plans the Company created during the LBO – success bonuses and phantom equity – do "arise from" the 2007 LBO and are expressly not categorized as Ordinary Litigation Claims.

The Transitional Compensation Plan payments at issue here were made pursuant to a plan the Company adopted over 20 years before it began to even think about the LBO. Claims arising from executive transition payments fit the mold of those for stock options, restricted stock units, and deferred compensation, and fall solidly within Ordinary Litigation Claims.

### B.    The Litigation Trustee's Arguments Fail.

The Litigation Trustee asserts three grounds for this Court to find that claims to recover or avoid payments made pursuant to the Transitional Compensation Plan are Preserved Causes of Action that should be given to him. First, he states without support (other than bold-face type and italics) that such claims "arise from" the 2007 LBO. (Mot. at 16–17.) Second, he then quickly pivots to offer a "but for" test, a test that does not appear in the Confirmed Plan. (*Id.*) Third, the Litigation Trustee argues that, because many of the same claims are made in another

avoidance action, the *FitzSimons* Action[3], the Confirmed Plan grants him the right to pursue all

such claims here.  (*Id.* at 16–17.)  None of these arguments is well-founded.

1)    "Arising From" Is Not Ambiguous In This Context

The Litigation Trustee's proposed interpretation of the words "arising from" seeks to

create an ambiguity where none would otherwise exist.  Claims arising from obligations existing

before the 2007 LBO are plainly and consistently deemed to be Ordinary Litigation Claims "not

arising" from the LBO.  However, the Litigation Trustee argues that a stand-alone reading of the

phrase enables him to ignore the rest of the Confirmed Plan.  Standing alone, the phrase "arising

from" provides no useful guidance, as the Third Circuit held in the one non-insurance case cited

by the Litigation Trustee.  *Baroda Hills Invs., Ltd. v. Telegroup, Inc.* (*In re Telegroup, Inc.*), 281

F.3d 133, 138 (3d Cir. 2002) ("We conclude that the phrase 'arising from' is ambiguous.").[4]

Even if the Litigation Trustee could establish that the "arising from" language is similarly

ambiguous on its face, the Court should follow the example of the Third Circuit and interpret the

language in the context of the surrounding provisions and overall purpose of the text.  Here, the

Confirmed Plan's treatment of other compensation claims provides the context for that analysis.

The Confirmed Plan looks to the time of creation of the various compensation programs as the

---

[3] "*FitzSimons* Action" refers to an adversary action that was originally filed in this Court but subsequently transferred to the Southern District of New York for MDL proceedings.  It is currently pending as *Official Committee of Unsecured Creditors of Tribune Co., et al. v. Dennis J. FitzSimons, et al.*, C.A. No. 12-2652-WHP.

[4]  The other cases the Litigation Trustee cites are insurance-related cases that interpret "arising out of," but do not resolve this facial ambiguity or provide an acceptable alternative framework.  Insurance contracts are to be liberally and broadly construed in favor of coverage, a factor not present here.  Even there, however, the cases describe the concept of "arising out of" in ways that include "originated from," "growing out of," and "flowing from," – as one court described it, a "meaningful linkage."  *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1256–57 (Del. 2008); *Safeway, Inc. v. Liberty Mut. Ins. Co.*, CIV.A.08-460, 2009 WL 1209068, at *3 (D. Del. Apr. 30, 2009); *see also Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391–92 (3d Cir. 2012) (applying Pennsylvania law).

basis to resolve the issue of whether or not a compensation-related claim "arises from" the 2007 LBO.

2)    "Arising From" Does Not Mean "But For"

The Litigation Trustee also attempts to transform the "arising from" language to mean "but for" causation: "***But for*** the LBO, the Executive Transition Payments would not have been made." (Mot. at 17 (emphasis in original).)  "But for" causation, however, is not a term or a concept found anywhere in the Confirmed Plan.  This makes sense because the Confirmed Plan clearly did not contemplate such an approach; it categorizes payments for stock options, restricted stock units, and deferred compensation as "*not* arising from" the LBO, even though each was activated by – and thus would not have occurred but for –  the 2007 LBO.

Under Delaware law, "but for" refers to "that direct cause without which [the event] would not have occurred."  *Duphily v. Delaware Elec. Coop., Inc.*, 662 A.2d 821, 828–29 (Del. 1995) (noting that Delaware uses the "but for" test for proximate causation).  The Litigation Trustee attempts to counter this basic fact by suggesting, without any support, that "it is reasonable to infer that such terminations, as well as the payments themselves, were caused by the LBO." (Mot. at 17.)  There is no basis for such a speculative and attenuated inference.  The 2007 LBO was neither the first nor the last act required to activate the provisions of the Transitional Compensation Plan.  It was, at most, an event along the way.  It is not reasonable to suggest (or infer) that the payments under the Plan were caused by the LBO itself.

3)    The Allegations In The *FitzSimons* Complaint Are Not Dispositive

Finally, the Litigation Trustee asserts that because certain claims to avoid or recover the transition payments are purportedly already pending in the *FitzSimons* Action, similar claims in other actions should belong to him as well.  Obviously, however, it is not that simple.  The Litigation Trustee himself acknowledges that there is a "dispute respecting ownership of claims"

11

arising from the Transitional Compensation Plan. (Mot. at 9, ¶ 22). The Reorganized Debtors also recognize that ownership of these claims "has not yet been resolved." (Reorganized Debtors' Motion To Shorten Notice[5] at 2–3, ¶ 2; Reorganized Debtor's Motion for an Omnibus Order[6] at 6, ¶ 11.) It remains for this Court to decide.

The Litigation Trustee's position that it owns the Transitional Compensation Plan claims is belied by the consistent and organized allocation of claims in the Confirmed Plan. Claims that are asserted in the *FitzSimons* Action are conceded to be Ordinary Litigation Claims by the Litigation Trustee, despite their pendency in the *FitzSimons* Action: "The Litigation Trustee does not dispute that [certain] claims . . . are Ordinary Litigation Claims that belong to the Reorganized Debtor, regardless of whether those claims are asserted in the *FitzSimons* Action." (Mot. at 11.) The key is whether such claims do, or do not, arise from the LBO.

As demonstrated above, the Confirmed Plan assigns claims pertaining to compensation plans originating prior to the 2007 LBO to the category of Ordinary Litigation Claims. Claims arising from compensation plans originating as part of the 2007 LBO are treated as Preserved Causes of Action. The Transitional Compensation Plan claims – arising from a plan adopted in 1985 and in place continuously since then – are thus Ordinary Litigation Claims.

Finally, the complaint in the *FitzSimons* Action itself fails to comprehensively address all claims for Transitional Compensation Plan payments. The Litigation Trustee concedes that the *FitzSimons* Action does not name at least five former executives who received Transitional Compensation Plan payments. (Mot. at 17, ¶ 41.) Thus, since at least these five executives are

---

[5] Motion to Shorten Notice with Respect to Motion for an Omnibus Order Authorizing the Substitution of the Reorganized Debtors in Place of the Creditors' Committee as Plaintiffs in Certain Adversary Proceedings and Approving Procedures to Evidence this Substitution (Feb. 25, 2013) [D.I. 13224].

[6] Motion for an Omnibus Order Authorizing the Substitution of the Reorganized Debtors in Place of the Creditors' Committee as Plaintiffs in Certain Adversary Proceedings and Approving Procedures to Evidence this Substitution (Feb. 25, 2013) [D.I. 13223].

not parties to the *FitzSimons* Action, this Court must still decide, based on the language of the Confirmed Plan, whether claims for transition payments do or do not "arise from" the LBO. If they are not Preserved Causes of Action under this standard, the pendency of the allegations in the *FitzSimons* Action cannot be used to bootstrap Ordinary Litigation Claims into something else. Therefore, the plain meaning of the categories set forth in the Confirmed Plan demonstrates that the Transitional Compensation Plan payment claims belong to the category of Ordinary Litigation Claims that do not arise from the LBO. They do not belong to the Litigation Trustee.

## CONCLUSION

The Former Executives served Tribune for many years; indeed, most of them had been with the Company for twenty years or more. Throughout that time, the Company maintained its plan to provide transition payments if its key, long-serving executives were ever involuntarily terminated following a change in control. The Former Executives did their jobs for many years with this compensation in place, just as they did with respect to stock options, restricted stock units, and deferred compensation. All of these plans were put into place years before the 2007 LBO. Accordingly, claims for the transition payments do not arise under the LBO and should be treated in the same manner as those for stock options, restricted stock units, and deferred compensation. They are not the property of the Litigation Trustee.

For the foregoing reasons, the undersigned Former Executives ask that this Court deny the Litigation Trustee's Motion insofar as it seeks to authorize the Litigation Trustee as Plaintiff in any action against the Former Executives in connection with any payments made under the Transitional Compensation Plan.[7]

---

[7] This Court has repeatedly made clear that its orders are not intended to resolve or impact issues more appropriately within the province of either Judge Pauley or other courts that may entertain Tribune-related litigation. (*E.g.*, 6/28/2011 Order [D.I. 9380] at 4 ("Nothing in the Order shall prejudice or impair any claims or defenses of any defendant in any proceeding in respect of a SLCFC Claim or any objection to

Dated:  March 8, 2013

Respectfully submitted,

**CONNOLLY GALLAGHER LLP**

By: _____

Of Counsel:

John R. McCambridge
Charles S. Bergen
George R. Dougherty
**GRIPPO & ELDEN LLC**
111 S. Wacker Drive
Chicago, IL 60606
Telephone:  (312) 704-7700
Facsimile:  (312) 558-1195

#05045711

Jeffrey C. Wisler (#2795)
N. Christopher Griffiths (#5180)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 757-7300
Facsimile:  (302) 658-0380

Attorneys for Certain Former Executives

---

any plan of reorganization currently before this Court"; *see also* 3/15/2012 Order [D.I. 11158] at 3
("ORDERED that the stays imposed . . . are hereby lifted to the extent necessary to allow the parties in
those actions to comply with the Master Case Order and any other orders issued by the MDL Court, and
to comply with orders issued by any court, other than the MDL Court, that is also overseeing an SLCFC
Action").)  The Former Executives have defenses to the Litigation Trustee's and/or Reorganized Debtors'
alleged claims for avoidance or recovery and, correspondingly, potentially valuable indemnification rights
relating to those claims that have been preserved as part of this bankruptcy.  No party should be able to
use this Court's ruling on what the Litigation Trustee presents as a procedural issue as a ruling on the
merits of any part of these claims or a predetermination of such complicated matters.  Therefore,
consistent with past practice, the Former Executives request that any order the Court may enter resolving
the Trustee's motion contain the following language:

> Notwithstanding the foregoing, and for the avoidance of doubt, nothing in this
> Order is intended to decide, prejudice, or impair any claims or defenses that any
> party may have to any of the potential claims for which substitution is granted.
> Nor is this Order intended to affect or determine any rights to advancement,
> indemnity, offset, or reimbursement, if any, that may exist in favor of any person
> under applicable law or with respect to any corporate bylaw or resolution, or any
> agreement.  Such matters are appropriately addressed by the court wherein such
> issues may eventually be raised, and this Court intends, by this Order, no
> determination with respect to them.

The above-requested language will allow the Court to resolve the matter before it but avoid the Court's
Order from being used as a determination of issues not currently raised.