## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Reorganized Debtors.[1] | (Jointly Administered) |

**Hearing Date: March 14, 2013 at 2:30 p.m. (ET)**
**Obj. Deadline: March 6, 2013 at 4:00 p.m. (ET)**
**Related to Docket Nos. 13210, 13289, 13291, 13293, 13294, 13297**

## LITIGATION TRUSTEE'S REPLY IN FURTHER SUPPORT OF AN OMNIBUS ORDER: (I) AUTHORIZING SUBSTITUTION OF THE LITIGATION TRUSTEE AS PLAINTIFF IN CERTAIN ADVERSARY PROCEEDINGS AND APPROVING PROCEDURES TO EVIDENCE SUCH SUBSTITUTIONS; (II) MODIFYING THE STAY OF SUCH PROCEEDINGS; AND (III) EXTENDING THE TIME TO EFFECT SERVICE IN SUCH PROCEEDINGS

---

[1] The Reorganized Debtors are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (551 0); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicago Land Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); ForSaleByOwner.com Corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. ( 4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); N01th Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931 ); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., nlk/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entettainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (I 035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Ttibune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., t/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0 191 ). The Reorganized Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ................................................................................................................. 4

I.    Executive Transition Claims Are Preserved Causes Of Action That Belong
      To The Litigation Trust................................................................................................ 4

      A.    The Plain Language Of The DCL Plan Unambiguously Provides that
            The Executive Transition Claims Are Preserved Causes Of Action ........................ 4

      B.    The Executive Defendants' Argument That The Executive Transition
            Claims Are Ordinary Litigation Claims Is Contrary To The Plain
            Language Of The DCL Plan And Well-Settled Principles Of
            Contract Construction ............................................................................................. 6

II.   The Argument That Certain Defendants Will Assert Claims For Setoff Is
      Premature And In Any Event Lacks Merit ................................................................. 12

CONCLUSION............................................................................................................... 15

104084667 v4

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Baroda Hill Invs., Ltd. v. Telegroup, Inc. (In re Telegroup, Inc.)*,
  281 F.3d 133 (3d Cir. 2002)...........................................................................................7

*DeSouza v. PlusFunds Grp.*,
  No. 05 Civ. 5990, 2006 WL 2168478 (S.D.N.Y. Aug. 1, 2006) ..............................15

*Gowan v. HSBC Mortg. Corp. (In re Dreier LLP)*,
  Bankr. No. 08–15051 (SMB), 2012 WL 4867376, at *3 (Bankr. S.D.N.Y. Oct. 12,
  2012) ........................................................................................................................16

*Duphily v. Del. Elec. Co-op., Inc.*,
  662 A.2d 821 (Del. 1995) ...........................................................................................8

*Greenmont Capital Partners I, LP v. Mary's Gone Crackers, Inc.*,
  No. 7265-VCP, 2012 WL 4479999 (Del. Ch. Sept. 28, 2012) .............................5, 11

*Lillis v. AT & T Corp.*,
  904 A.2d 325 (Del. Ch. 2006)......................................................................................7

*Osborn ex rel. Osborn v. Kemp*,
  991 A.2d 1153 (Del. 2010) ........................................................................................14

*Pac. Ins. Co. v. Liberty Mut. Ins. Co.*,
  956 A.2d 1246 (Del. 2008) .......................................................................................7, 8

*Premcor Ref. Grp., Inc. v. Matrix Serv. Indus. Contractors, Inc.*,
  No. 07C–01–095–JOH, 2009 WL 960567 (Del. Super. Ct. 2009).............................7

*Seidensticker v. Gasparilla Inn, Inc.*,
  No. 2555-CC, 2007 WL 4054473 (Del. Ch. Nov. 8, 2007)......................................10

*Sonitrol Holding Co. v. Marceau Investissements*,
  607 A.2d 1177 (Del. 1992) ........................................................................................14

## STATUTES

8 DEL. C.
  § 145...........................................................................................................................15

Bankruptcy Code § 502(h).............................................................................7, 15, 16, 17

Federal Rule of Civil Procedure 4(m)..............................................................................19

104084667 v4

Federal Rule of Civil Procedure 25(c) ........................................................................18

**OTHER AUTHORITIES**

ARTHUR L. CORBIN, 3 CORBIN ON CONTRACTS § 552 (1960) ........................................10

17A C.J.S. CONTRACTS § 415 ....................................................................................10

Marc S. Kirschner, Litigation Trustee (the "Litigation Trustee") for the Tribune

Litigation Trust (the "Litigation Trust"), submits this reply (the "Reply") in further support of the

Litigation Trustee's Motion For An Omnibus Order: (I) Authorizing Substitution Of The

Litigation Trustee As Plaintiff In Certain Adversary Proceedings And Approving Procedures To

Evidence Such Substitutions; (II) Modifying The Stay Of Such Proceedings; And (III) Extending

The Time To Effect Service In Such Proceedings (the "Motion")[2] [D.I. 13210], and in response

to the objections to the Motion filed by certain former Tribune executives (the "Executive

Defendants") [D.I. 13291] and Timothy P. Knight [D.I. 13289], and the joinders thereto filed by

certain former subsidiary directors and officers (the "Former Director and Officer Defendants")

[D.I. 13293] and David P. Murphy and James L. Ellis (collectively with Knight and the Former

Director and Officer Defendants, the "Subsidiary Defendants") [D.I. 13294].[3]

## PRELIMINARY STATEMENT

1.      This is a procedural motion, which addresses only the Litigation Trustee's

substitution as plaintiff with respect to the Trust Substitution Claims and Tolled Morgan Stanley

Claims, as well as the time to complete service of process and the stay governing the Trust

Substitution Claims.

2.      The only parties who have objected the Motion are a collection of defendants (the

"Objecting Defendants") to the Substitution Claims for which the Litigation Trustee is requesting

---

[2] All capitalized terms not defined herein have the meaning ascribed to them in the Motion.

[3] The objection filed by the Executive Defendants [D.I. 13291] is referred to herein as the "Executive Defendants' Objection" or "Exec. Defs.' Obj." The opposition filed by Timothy P. Knight [D.I. 13289] ("Knight Obj."), and the joinders filed by the Subsidiary Defendants and the Former Director and Officer Defendants are collectively referred to herein as the "Subsidiary Defendants' Objection" or "Sub. Defs.' Obj."

to be substituted as plaintiff.[4]  Collectively, these defendants received more than $143 million in

special compensation as a result of Tribune's disastrous LBO.  Under the DCL Plan, claims to

avoid and recover more than $50 million of these payments now belong to the Reorganized

Debtors, who have represented that they intend to dismiss most of those claims.[5]  However, the

Objecting Defendants now seek to skirt liability of more than $90 million of claims,

notwithstanding that the DCL Plan expressly, clearly, and unambiguously provides that they may

be pursued by the Litigation Trustee on behalf of the Debtors' former creditors, including

hundreds of Tribune pensioners who received only cents on the dollar in consideration of their

claims against the Debtors and, unlike the Objecting Defendants, were not enriched with multi-

million-dollar compensation and severance packages as a result of the LBO.  *See* DCL Plan §§

1.1.125, 1.1.127, 1.1.157, 1.1.194, 3.2.6, Ex. 5.15.4.  Notably, the transfer of the Trust

Substitution Claims to the Litigation Trust was a negotiated part of the DCL Plan, and was cited

by the Debtors—who have not objected to the Motion—as a basis on which the DCL Plan should

be approved.[6]

---

[4] No party has objected to the Litigation Trustee's requests that the Court: (i) substitute the Litigation Trustee as successor plaintiff-in-interest in the LBO Avoidance Actions solely with respect to the LBO Avoidance Actions Trust Substitution Claims; (ii) substitute the Litigation Trustee as a successor plaintiff-in-interest in the LBO Insider Actions with respect to the claims to avoid and recover Phantom Equity Payments and Success Bonus Payments at the Tribune parent; (iii) substitute the Litigation Trustee as a party to the Morgan Stanley Tolling Agreement, and as the prospective plaintiff with respect to the Tolled Morgan Stanley Claims; (iv) modify the stay of the Trust Substitution Adversaries in order to (a) permit all parties to the Trust Substitution Claims to file notices and pleadings before the JPML with respect to those claims notwithstanding the stay; and (b) extend the stay until the earlier of September 30, 2013 or the date that the Trust Substitution Claims are transferred by order of the JPML; and (v) extend the time to complete service of process with respect to the Trust Substitution Claims through and including a date that is 120 days after the Court issues an order on the Motion.

[5] *See* Motion for An Omnibus Order Authorizing the Substitution of the Reorganized Debtors in Place of the Creditors' Committee as Plaintiffs in Certain Adversary Proceedings and Approving Procedures to Evidence this Substitution (Feb. 25, 2013) [D.I. 13223], Proposed Order ¶ 3.

[6] *See, e.g.*, Post-Trial Brief in Support of Confirmation of Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as Modified April 26, 2011), In re Tribune Co., No. 08-13141 (Bankr. D. Del. May 11, 2011), ECF No. 8897, at 2 , 21 n.68, 27.

2

3.      The Objecting Defendants' efforts to rewrite the DCL Plan, and select a plaintiff of their liking, must be rejected.   The Executive Defendants assert that claims to avoid and recover Executive Transition Payments and related Excise Tax Payments (the "Executive Transition Claims") should be prosecuted by the Reorganized Debtors as Ordinary Litigation Claims, because the Executive Transition Claims share characteristics with *other* claims to recover payments arising from *other* compensation agreements that are deemed Ordinary Litigation Claims under the DCL Plan.   But the Executive Transition Claims fall squarely within the DCL Plan's definition of Preserved Causes of Action, as they "arise from" the LBO, as that phrase is interpreted under applicable Delaware Law, and 13 of them are asserted in the FitzSimons Action.  *See* DCL Plan §§ 1.1.174, 1.1.119 (defining "Preserved Causes of Action" as, *inter alia*, claims arising from the LBO, or claims asserted in the FitzSimons Action).   The fact that the DCL Plan carves *other* types of claims out of Preserved Causes of Action and classifies them as Ordinary Litigation Claims does not mean that Executive Transition Claims are (or should have been) treated the same way.   To the contrary, under well-settled principles of contract interpretation, the exclusion of the Executive Transition Claims from these provisions shows that the Executive Transition Claims were not intended to receive such treatment.  *See Greenmont Capital Partners I, LP v. Mary's Gone Crackers, Inc.*, No. 7265-VCP, 2012 WL 4479999, at *7 (Del. Ch. Sept. 28, 2012).

4.      The Subsidiary Defendants' argument is equally without basis.   The Subsidiary Defendants assert that the Litigation Trustee should not be substituted as plaintiff with respect to *any* of the Substitution Claims against subsidiary directors and officers (and, presumably, that these claims should be abandoned), because the Debtor subsidiary directors and officers may have claims for setoff against the Litigation Trust that will equal the amount of any judgment

3

against them.  But the express language of the DCL Plan provides that Substitution Claims

against Debtor subsidiary directors and officers are to be transferred to the Litigation Trust, and

that the Litigation Trustee may determine how best to pursue or resolve these claims.  DCL Plan

§ 13.3.2.  The DCL Plan further provides that the Litigation Trust may object to and assert all

available defenses against claims for setoff that are filed against it.  *Id.* at § 7.11.2.  The

Litigation Trust possesses several such defenses and objections to claims for setoff that may be

asserted by the Debtor subsidiary directors and officers, including that the Debtor subsidiary

directors and officers may not be entitled to indemnification under Delaware law, that the Debtor

subsidiary directors and officers do not have valid claims against the Litigation Trust under

section 502(h) of the Bankruptcy Code because they provided no value to the Debtors, and that

even if the Debtor subsidiary directors and officers do have claims under section 502(h), such

claims are not entitled to a 100% recovery.  However, it is premature to determine the merits of

setoff claims and defenses on this procedural motion—which addresses only the Litigation

Trustee's substitution as plaintiff with respect to the Substitution Claims and Tolled Morgan

Stanley Claims, the stay governing the Substitution Claims, and the time to complete service of

process.

## ARGUMENT

**I.    EXECUTIVE TRANSITION CLAIMS ARE PRESERVED CAUSES OF ACTION THAT BELONG TO THE LITIGATION TRUST**

    **A.**    **THE PLAIN LANGUAGE OF THE DCL PLAN UNAMBIGUOUSLY PROVIDES THAT THE EXECUTIVE TRANSITION CLAIMS ARE PRESERVED CAUSES OF ACTION**

    5.    As set forth in greater detail in the Motion, under the plain language of the DCL

Plan, Executive Transition Claims are Preserved Causes of Action that belong to the Litigation

Trust.  Specifically, the DCL Plan provides that Preserved Causes Action include both: (i)

"LBO-Related Causes of Action," which are defined as "claims arising from the leveraged buy-

out of Tribune that occurred in 2007"; and (ii) "all claims that were asserted against any Person .

. . in the [FitzSimons Action] . . . ." DCL Plan §§ 1.1.119, 1.1.174. The Executive Transition

Claims satisfy both of these criteria.

6.      First, the Supreme Court of Delaware has held that "the term 'arising out of' is

one that lends itself to uncomplicated, common understanding." *Pac. Ins. Co. v. Liberty Mut.*

*Ins. Co.*, 956 A.2d 1246, 1256-57 (Del. 2008). Under Delaware law, if there is "some

meaningful linkage" between two events, then "the 'arising out of' language unambiguously

applies." *Id.*; *see also Premcor Ref. Grp., Inc. v. Matrix Serv. Indus. Contractors, Inc.*, No. 07C–

01–095–JOH, 2009 WL 960567, at *7 (Del. Super. Ct. 2009) ("In Delaware, the phrase 'arising

out of' is unambiguous in contract interpretation."); *Lillis v. AT & T Corp.*, 904 A.2d 325, 331

(Del. Ch. 2006) (in interpreting agreement, noting that "under Delaware law, the phrases

'connecting with,' 'relating to,' and 'arising out of,' . . . are paradigmatically broad terms" and

finding agreement required successor-in-interest to pay costs and fees "in connection with" the

agreement).[7]

7.      Here, the Executive Transition Payments were paid pursuant to the Debtors'

Transitional Compensation Plan, which required that such payments be made if an employee was

terminated within 36 months after a "Change in Control." *See* Motion ¶ 39. The Agreement and

Plan of Merger that governed the second step of the LBO expressly provided that the LBO would

constitute a "Change of Control" under the Transitional Compensation Plan. All of the 18

defendants who received Executive Transition Payments were terminated within eight months of

---

[7] The Executive Defendants argue that *Baroda Hill Invs., Ltd. v. Telegroup, Inc. (In re Telegroup, Inc.)*,
281 F.3d 133, 138 (3d Cir. 2002) supports the proposition that the phrase "arising from" is ambiguous and must be
interpreted "in the context of the surrounding provisions" of the DCL Plan. Exec. Defs.' Obj. at 10. However,
*Telegroup* addresses the proper interpretation of a federal statute, and thus applies federal law, while the DCL Plan
is governed by Delaware law. *Telegroup*, 281 F.3d at 136; DCL Plan § 15.13. But even if this Court were to follow
*Telegroup*, the context of the DCL Plan shows that the Executive Transition Claims are Preserved Causes of Action.

the LBO. *See id.* ¶ 40; Ex. A (attaching a true and correct copy of the Agreement and Plan of Merger), at § 5.5(b)(iii). It cannot be credibly disputed that but for the LBO, these defendants would not have received the Executive Transition Payments upon their terminations.[8] Accordingly, there is clearly a "meaningful linkage" between the Executive Transition Payments and the LBO, and the Executive Transition Claims unambiguously "arise from the LBO" as that phrase is defined under Delaware law.

8.        Second, 13 of the Executive Transition Claims are also asserted in the FitzSimons Action. Thus, under the plain language of the DCL Plan, these claims are Preserved Causes of Action that belong to the Litigation Trust irrespective of the fact that they "arise from" the LBO. *See* DCL Plan § 1.1.174 (defining Preserved Causes of Action as, *inter alia*, claims that were asserted in the FitzSimons Action).

> **B.        THE EXECUTIVE DEFENDANTS' ARGUMENT THAT THE EXECUTIVE TRANSITION CLAIMS ARE ORDINARY LITIGATION CLAIMS IS CONTRARY TO THE PLAIN LANGUAGE OF THE DCL PLAN AND WELL-SETTLED PRINCIPLES OF CONTRACT CONSTRUCTION**

9.        Notwithstanding the foregoing, the Executive Defendants argue that the Executive Transition Claims are Ordinary Litigation Claims that belong to the Reorganized Debtors rather than Preserved Causes of Action belonging to the Litigation Trust. The Executive Defendants argue that the Executive Transition Claims are Ordinary Litigation Claims because (i) the Executive Transition Payments originated from a compensation plan that pre-dated the LBO, and

---

[8] It is not clear whether the Executive Defendants concede that the LBO was a "but for" cause of the Executive Transition Payments, or argue that this is not the case because the "LBO was neither the first nor the last act required to activate the provisions of the Transitional Compensation Plan." Exec. Defs.' Obj. at 11. If it is the latter, the Executive Defendants are plainly incorrect because a "but for" analysis does not require that an event be the first or the last to occur in a chain of events. Rather, as even the case cited by Executive Defendants makes clear, all that matters is whether the cause "is one which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *Duphily v. Del. Elec. Co-op., Inc.*, 662 A.2d 821, 829 (Del. 1995). Moreover, even if the LBO was not a "but for" cause of the Executive Transition Payments—which it was—under Delaware law, an "arising out of" determination requires only a "meaningful linkage," not "but for" causation. Pac. Ins. Co., 956 A.2d at 1256-57.

6

(ii) the DCL Plan expressly deems claims to avoid and recover payments arising from *other*
employee benefit plans that pre-dated the LBO (specifically, stock options, restricted stock units,
and deferred compensation) as Ordinary Litigation Claims.  The Executive Defendants thus
conclude that when "read in the context of the DCL Plan," the phrase "arising from" must not
have been intended to include payments that arose from obligations that pre-dated the LBO,
notwithstanding that the payments were triggered by the LBO.  Exec. Defs.' Obj. at 10–11.

10.     This argument is based on a faulty premise. Contrary to the Executive
Defendants' assertion, the DCL Plan does not provide that "[c]laims arising from obligations
existing before the 2007 LBO are plainly and consistently deemed to be Ordinary Litigation
Claims 'not arising' from the LBO." Exec. Defs.' Obj. at 10.  Rather, the DCL Plan provides
that claims to recover payments arising from stock options, restricted stock units and/or deferred
compensation are deemed Ordinary Litigation Claims, *notwithstanding* that they arose out of the
LBO and are Preserved Causes of Action.  Specifically, after stating that "Ordinary Litigation
Claims" are claims that "do not arise from the leveraged buy-out of Tribune that occurred in
2007," the DCL Plan goes on to provide that "*[n]otwithstanding anything to the contrary in this*
*definition*, Ordinary Litigation Claims shall include, without limitation, any action for avoidance
and recovery of payments arising from stock options, restricted stock units and/or deferred
compensation . . ." DCL Plan § 1.1.156 (emphasis added).  The DCL Plan provides further that
"Ordinary Litigation Claims shall not include . . . the Preserved Causes of Action against the
Non-Settling Defendants, *except, for the avoidance of doubt,* [any action for avoidance and
recovery of payments arising from stock options, restricted stock units and/or deferred
compensation . . . ]." *Id.*

7

11.    Importantly, unlike actions to avoid and recover payments arising from stock options, restricted stock units and/or deferred compensation, the DCL Plan does not include Executive Transition Claims within the definition of Ordinary Litigation Claims "notwithstanding" that Ordinary Litigation Claims are otherwise defined as claims that do not arise from the LBO. *Id.* Similarly, unlike actions to avoid and recover payments arising from stock options, restricted stock units and/or deferred compensation, the DCL Plan does not carve Executive Transition Claims out of the Preserved Causes of Action that are then carved out of Ordinary Litigation Claims. *Id.*

12.    Under well-settled principles of contract construction, the fact that actions to avoid and recover stock options, restricted stock units and deferred compensation—*but not* Executive Transition Claims—are expressly carved out of Preserved Causes of Action and included within the definition of Ordinary Litigation Claims, shows that Executive Transition Claims are not entitled to such treatment. *See* 17A C.J.S. CONTRACTS § 415 ("Under the maxim '*expressio unius est exclusio alterius*,' when certain things are specified in detail in a contract, other terms of the same general character relating to the same matter generally are excluded by implication."); ARTHUR L. CORBIN, 3 CORBIN ON CONTRACTS § 552 at 206 (1960) (explaining that under the rule of *expressio unius est exclusio alteris*, "[i]f one subject is specifically named, or if several subjects of a larger class are specifically enumerated, and there are no general words to show that other subjects of that class are included, it may reasonably be inferred that the subjects not specifically named were intended to be excluded"); *Seidensticker v. Gasparilla Inn, Inc.*, No. 2555-CC, 2007 WL 4054473 (Del. Ch. Nov. 8, 2007) (interpreting a contract by applying the rule of "*expressio unius est exclusio alterius*," and concluding that items not included in a list were excluded). The Delaware Chancery Court recently applied this maxim in

8

*Greenmont Capital Partners I, LP*, where it was called upon to determine whether a corporate

charter required a majority vote of holders of series B preferred stock before the preferred stock

could be automatically converted into common stock. 2012 WL 4479999, at *7. The court

found that because the charter provision addressing the circumstances in which a majority vote

of the series B holders was required listed the increase or decrease of common stock, but not an

automatic conversion, the automatic conversion did not require such a vote. The court stated:

> Had the drafters intended for the Automatic Conversion provision to be subject to
> an additional vote of a majority of the Series B Preferred, they could have listed it
> expressly in the Voting Provision as they did with the provision regarding an
> increase or decrease in authorized Common Stock. By expressly including [the
> provision regarding an increase or decrease in authorized Common Stock] as an
> enumerated action under the Voting Provision, but not including [the automatic
> conversion provision], the drafters implicitly excluded [the automatic conversion
> provision].

*Id.* The same is true here. Had the drafters of the DCL Plan intended to carve Executive

Transition Claims out of Preserved Causes of Action and include them within Ordinary

Litigation Claims, they could have done so expressly, as they did with actions to avoid

and recover payments arising from stock options, restricted stock units and/or deferred

compensation. The fact that they did not shows that Executive Transition Claims are

Preserved Causes of Action.

13.     As this Court knows, the DCL Plan is the product of long and hard-fought

negotiations among constituencies, including the Executive Defendants, who had disparate and

often conflicting interests. The fact that some claims, but not others, were carved out of the

definition of Preserved Causes of Action and included within the definition of Ordinary

Litigation Claims is indicative of the compromises that were struck as part of those negotiations.

The Executive Defendants, most of whom actively participated in the confirmation process and

had the opportunity to (and did) engage in plan negotiations and object to the DCL Plan,[9] should

not now be heard to argue that those balances should be ignored, and that the DCL Plan should

be rewritten in a manner that conflicts with its express language.

14.    Additionally, the Executive Defendants overstate the similarities between

Executive Transition Claims and claims to avoid and recover payments arising from stock

options, restricted stock units, and deferred compensation, and ignore the similarities between

Executive Transition Claims and claims to avoid and recover success bonuses and phantom

equity—which the Executive Defendants concede to be Preserved Causes of Action.  Unlike the

Executive Transition Payments, the payments arising from stock options, restricted stock units,

and deferred compensation were merely *accelerated* by the LBO, but would have been paid to

the Executive Defendants at some point *regardless* of whether a change of control occurred.  *See*

Ex. B (attaching a true and correct copy of the Form 10-K, Tribune Company (Dec. 30, 2007)),

at 179, 182, 184.  Conversely, like the phantom equity payments and success bonuses, the

---

[9] *See, e.g.*, Objection Of Certain Current And Former Officers And Directors To: (I) Second Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed By The Debtors, The Official Committee Of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., And JP Morgan Chase Bank, N.A., And (II) Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed By Aurelius Capital Management, LP, On Behalf Of Its Managed Entities, Deutsche Bank Trust Company Americas, In Its Capacity As Successor Indenture Trustee For Certain Series Of Senior Notes, Law Debenture Trust Company Of New York, In Its Capacity As Successor Indenture Trustee For Certain Series Of Senior Notes And Wilmington Trust Company, In Its Capacity As Successor Indenture Trustee For The PHONES Notes (Feb. 15, 2011) [D.I. 7981] *(filed by FitzSimons, Grenesko, Hiller, Landon, Leach, Lewin, Mallory, Malone, Reardon, Smith, Vitanovec, Waltz)*; Joinder Of Timothy P. Knight To Objection Of Certain Current And Former Officers And Directors (Feb. 16, 2011) [D.I. 8016] *(filed by Knight)*; Letter To Chief Judge Kevin J. Carey Regarding Objections Of Certain Current And Former Officers And Directors (May 11, 2011) [D.I. 8888] *(filed by FitzSimons, Grenesko, Hiller, Landon, Leach, Lewin, Mallory, Malone, Reardon, Smith, Vitanovec, Waltz)*; Objection Of Certain Former Directors And Officers To Fourth Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed By The Debtors, The Official Committee Of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., And JPMorgan Chase Bank, N.A. (Bankr. D. Del. May 21, 2012) [D.I. 11657] *(filed by FitzSimons, Grenesko, Hiller, Landon, Leach, Lewin, Mallory, Malone, Reardon, Vitanovec, Waltz)*; Certain Directors' And Officers' Reply To The Objection Of Aurelius Capital Management, LP To Confirmation Of The Fourth Amended Joint Plan Of Reorganization (June 1, 2012) [D.I. 11739] *(filed by FitzSimons, Grenesko, Hiller, Knight, Landon, Leach, Lewin, Mallory, Malone, Reardon, Smith, Vitanovec, Waltz)*; Certain Directors' And Officers' Joinder To The Statement Of The Robert R. McCormick Tribune And Cantigny Foundations (June 1, 2012) [D.I. 11740] *(filed by FitzSimons, Grenesko, Hiller, Knight, Landon, Leach, Lewin, Mallory, Reardon, Vitanovec, Waltz)*.

Executive Transition Payments would not have been paid to the Executive Defendants *but for* a change of control like the LBO. *See* Report of Kenneth N. Klee, As Examiner Volume 1 (Bankr. D. Del. July 26, 2010) [D.I. 5130] at 431-35.

15.     Regardless of which category of claims the Executive Transition Claims most closely resemble, however, the DCL Plan provides that Executive Transition Claims are Preserved Causes of Action.

16.     The Executive Defendants' argument that the Court should ignore the fact that 13 of the 18 Executive Transition Claims are asserted in the FitzSimons Action should also be rejected.  Exec. Defs.' Obj. at 11–13.  As noted above, the DCL Plan provides that all claims that were asserted in the FitzSimons Action are Preserved Causes of Action.  DCL Plan § 1.1.174. Once again, however, the Executive Defendants argue that the Executive Transition Claims asserted in the FitzSimons Action should nevertheless be treated as Ordinary Litigation Claims, because they are more similar to claims to avoid and recover payments arising from stock options, restricted stock units, and deferred compensation than they are to claims to avoid and recover success bonuses and phantom equity payments.

17.     As discussed above, however, the DCL Plan expressly provides that payments arising from stock options, restricted stock units, and deferred compensation are Ordinary Litigation Claims.  Conversely, there are no such provisions with respect to Executive Transition Claims, and Executive Transition Claims fall squarely within the definition of Preserved Causes of Action.  Thus, under well-settled principles of contract interpretation (and common sense), there is no basis for treating Executive Transition Payments as Ordinary Litigation Claims. Treating the Executive Transition Claims asserted in the FitzSimons Action as Ordinary Litigation Claims would further conflict with accepted principles of contract interpretation, by

11

rendering meaningless the provision of the DCL Plan providing that claims asserted in the FitzSimons Action are Preserved Causes of Action. *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage."); *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992) ("Under general principles of contract law, a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless.").

II.    **THE ARGUMENT THAT CERTAIN DEFENDANTS WILL ASSERT CLAIMS FOR SETOFF IS PREMATURE AND IN ANY EVENT LACKS MERIT**

18.    The Subsidiary Defendants' assertion that the Motion should be denied with respect to all claims for avoidance and recovery against directors and officers of the Debtor subsidiaries is also without merit. In support of this assertion, the Subsidiary Defendants contend that if the Litigation Trust's claims against them are successful, then they will be entitled to full indemnification for the amounts that they are ordered to pay in connection with the Litigation Trust's claims. Knight Obj. ¶¶ 10–11. The Subsidiary Defendants also assert that "section 502(h) [of the Bankruptcy Code] may provide Knight [and the other Subsidiary Defendants] with an alternative claim against the Subsidiary Debtors." Knight Obj. ¶ 12. The Subsidiary Defendants assert further that any such 502(h) claim would constitute an Allowed General Unsecured Claim that would be entitled to a recovery of 100 cents on the dollar under sections 3.3.5 and 7.11.2 of the DCL Plan. Knight Obj. ¶¶ 13, 15.

19.    As the Subsidiary Defendants' Objections concede, however, it is unclear at this time whether the Subsidiary Defendants' claims for indemnification will be allowed, or whether the Executive Defendants will in fact have valid claims against the debtors under section 502(h). *See* Knight Obj. ¶ 11 ("*If* Knight's claims are deemed Allowed") (emphasis added), ¶ 12

12

("Section 502(h) *may* provide Knight with an alternative claim against the subsidiary Debtors") (emphasis added).  In fact, the FitzSimons Action asserts claims to mandatorily subordinate, equitably subordinate, and disallow "[a]ll claims" of the D&O Defendants or Subsidiary Defendants "reflected on . . . any proofs of claim filed by, or on behalf of," any of the D&O Defendants or Subsidiary Defendants—including their existing claims for indemnification or any ultimate setoff claim pursuant to section 502(h).  *See Marc S. Kirschner, as Litig. Tr. for the Tribune Litig. Trust v. FitzSimons, et al.*, 12-cv-02652 (S.D.N.Y. Nov. 8, 2012) [D.I. 547] Counts 21 & 22.  Moreover, there are several defenses that the Litigation Trustee may assert to any such indemnification claims.

20.    For example, as to indemnification, the Delaware General Corporation Law (the "DGCL") provides that a corporation may only indemnify a director or officer to the extent that such director or officer acted in good faith and in a manner reasonably believed to be in the best interests of the corporation.  *See* 8 DEL. C. § 145.  Here, the Litigation Trust has asserted claims for breach of fiduciary duty against all but six of the Subsidiary Defendants, and has also asserted claims for intentional fraudulent conveyance that implicate the actions of several of the Subsidiary Defendants.  If the Litigation Trust is successful on these claims, then it is likely that the Subsidiary Defendants' claims for indemnification will not be allowed.  *See, e.g., DeSouza v. PlusFunds Grp.*, No. 05 Civ. 5990, 2006 WL 2168478 (S.D.N.Y. Aug. 1, 2006) (providing that indemnification may not be permitted where fraudulent conveyance claims rest upon the directors' own breaches of duty).  Additionally, it is far from clear—and the Executive Defendants cite no cases to support the proposition—that the Debtors' indemnification obligations extend to fraudulent conveyance and preference claims.  *See* 8 DEL. C. § 145.

13

21.     Further, only the Tribune parent was obligated to pay the Executive Transition Payments and Phantom Stock. Thus, any 502(h) claim asserted in connection with these payments would constitute an Other Parent Claim—not an Allowed General Unsecured Claim that could be asserted against a Subsidiary Debtor. And the DCL Plan provides that Other Parent Claims are entitled to a recovery of approximately 36 cents on the dollar—not a full recovery. *See* Ex. C (attaching a true and correct copy of the Estimated Recovery Appendix, Exhibit B to the Supplemental Disclosure Document Relating to Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (April 12, 2012) [D.I. 11355]) at 4. Moreover, Section 502(h) of the Bankruptcy Code entitles a transferee who returns a transfer to a debtor "to the return of the consideration it paid" to the debtor—not the full amount of the recovered property. *Gowan v. HSBC Mortg. Corp. (In re Dreier LLP)*, Bankr. No. 08–15051 (SMB), Adv. Pr. No. No. 10–5456 (SMB), 2012 WL 4867376, at *3 (Bankr. S.D.N.Y. Oct. 12, 2012). Here, the Litigation Trust has alleged that the Subsidiary Defendants did not provide any value to the Debtor making the applicable payment. *See* Fourth Amended Complaint, *Marc S. Kirschner, as Litig. Tr. for the Tribune Litig. Trust v. FitzSimons, et al.*, 12-cv-02652 (S.D.N.Y. Nov. 8, 2012) [D.I. 547] ¶ 324. In the event that the Litigation Trust prevails on these allegations, then the Subsidiary Defendants will not be entitled to any recoveries under section 502(h).

22.     The plain text of the DCL Plan expressly provides that the Litigation Trust is entitled to assert these and other available defenses or counterclaims to any claims for setoff that the Subsidiary Defendants assert. *See* DCL Plan § 7.11.2. The appropriate time to determine the merits of such claims and defenses is when the claims are actually litigated—not on a procedural

Motion filed for the sole purpose of substituting the Litigation Trustee as the plaintiff with respect to Preserved Causes of Action and other procedural matters. As Knight himself argued in his response to the Reorganized Debtor's substitution motion, "substantive relief" that impacts the parties' "litigation rights in the Adversary Proceeding[s]" should not be afforded on this type of "procedural" motion. Timothy P. Knight's Limited Response To The Motion For An Omnibus Order Authorizing Substitution Of The Reorganized Debtors In Place Of The Creditors Committee As Plaintiffs In Certain Adversary Proceedings And Approving Procedures To Evidence This Substitution [D.I. 13290] ¶ 10.

23.     At bottom, the Subsidiary Defendants invite this Court to rewrite the DCL Plan in a manner that fully releases former officers and directors of Tribune subsidiaries from any and all claims asserted by the Litigation Trustee. There is no basis for doing so.

## CONCLUSION

WHEREFORE, for the reasons set forth in this Reply and the Motion, the Litigation Trustee respectfully requests that the Court enter an order substantially in the form appended to the Motion as Exhibit A:[10]

    (i)     pursuant to Federal Rule of Civil Procedure 25(c) and the DCL Plan–

        (a)     authorizing the substitution of the Litigation Trustee as the successor-in-interest plaintiff in the LBO Lender Action with respect to Counts One, Two, Three, Six, Eight, Nine, and Eleven, as against the Non-Settling Step Two Payees only, by inserting the name of the Litigation Trustee as the plaintiff into the caption (and elsewhere, as applicable) solely with respect to those Counts and those defendants, and approving the filing of the LBO

---

[10] The Executive Defendants request that any order issued by the Court in connection with the Motion contain a provision clarifying that nothing in the order is intended to decide, prejudice, or impair any claims or defenses that any party may have to any of the Trust Substitution Claims and the Tolled Morgan Stanley Claims, or affect or determine any rights to advancement, indemnity, offset, or reimbursement. *See* Executive Defendants' Objection, at 13 n.7. The Litigation Trustee agrees with the Executive Defendants that such matters are appropriately addressed by the court where such issues may eventually be raised, but objects to the Executive Defendants' request to the extent it is implies that this Court's resolution of the Motion does not constitute a final determination of the ownership of the Trust Substitution Claims and the Tolled Morgan Stanley Claims that is binding upon all parties in all courts.

Lender Action Trust Substitution Notice evidencing such substitution on the docket of the LBO Lender Action,

(b)     authorizing the substitution of the Litigation Trustee as the successor-in-interest plaintiff in the LBO Preference Action with respect to Count One, as against the Non-Settling Step Two Payees only, by inserting the name of the Litigation Trustee as the plaintiff into the caption (and elsewhere, as applicable) of the LBO Preference Action solely with respect to that Count and those defendants, and approving the filing of the LBO Preference Action Trust Substitution Notice evidencing such substitution on the docket of the LBO Preference Action,

(c)     authorizing the substitution of the Litigation Trustee as the plaintiff in each of the LBO Insider Actions by inserting the name of the Litigation Trustee as the plaintiff into the caption (and elsewhere, as applicable) of each of the LBO Insider Actions solely with respect to the LBO Insider Actions Trust Substitution Claims owned by the Litigation Trust (which are listed on Exhibit C appended to the Motion), and approving the filing of the LBO Insider Actions Trust Substitution Notice in the dockets of each LBO Insider Action to evidence such substitution, and

(d)     substituting the Litigation Trustee as a party to the Morgan Stanley Tolling Agreement and as the prospective plaintiff with regard to the Tolled Morgan Stanley Claims; and

(ii)     pursuant to the Court's inherent authority and the Standing Orders, modifying the stay of the Trust Substitution Adversaries in order to–

(a)     extend such stay to the earlier of September 30, 2013 or the date on which the Trust Substitution Claims are transferred by order of the JPML, and

(b)     permit all parties in the Trust Substitution Adversaries to file notices and pleadings before the JPML; and

(iii)     pursuant to Federal Rule of Civil Procedure 4(m), extending the time to complete service of process in the Trust Substitution Adversaries through and including a date that is 120 days after the Court issues an order on this Motion; and

(iv)     granting such other and further relief as the Court deems just and proper.[11]

---

[7] The Litigation Trustee's request for the relief sought in sub-clauses (i)(a), (i)(b), (i)(d), (ii) and (iii) is uncontested. Additionally, the Litigation Trustee's request for the relief sought in sub-clause (i)(c) is uncontested with respect to claims to avoid and recover Phantom Equity Payments and Success Bonus Payments at the Tribune parent.

16

Dated: March 11, 2013
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Richard S. Cobb (No. 3157)
J. Landon Ellis (No. 4852)
Jeffrey R. Drobish (No. 5437)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*Counsel to the Litigation Trustee*

104084667 v4