# Exhibit C

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**SUPPLEMENTAL DISCLOSURE DOCUMENT RELATING TO FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A.**

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Jeffrey C. Steen
Dennis M. Twomey
Kerriann S. Mills
One South Dearborn Street
Chicago, IL 60603
Telecopier: (312) 853-7036

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telecopier: (302) 652-3117

*Counsel For Debtors and Debtors In Possession and Certain Non-Debtor Affiliates*

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telecopier: (212) 541-5369

LANDIS RATH & COBB LLP
Adam G. Landis
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telecopier: (302) 467-4450

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Telecopier: (202) 822-8106

*Counsel For the Official Committee of Unsecured Creditors*

DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telecopier: (213) 621-6100

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
Rodney Square; 1000 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 571-1253

*Counsel For Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.*

WILMER CUTLER PICKERING HALE & DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier: (212) 230-8888

*Co-Counsel For Angelo, Gordon & Co, L.P.*

DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Damian S. Schaible
450 Lexington Avenue
New York, New York 10017
Telecopier: (212) 701 5800

RICHARDS LAYTON & FINGER
Mark Collins
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 651-7701

*Counsel For JPMorgan Chase Bank, N.A.*

**DATED: April 12, 2012**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are listed on the next page.

i

# **EXHIBIT B**

*Estimated Recovery Appendix*

**TABLE OF CONTENTS**

A. Potential Impact of Unresolved Allocation Dispute on Allocation of Litigation Trust Recoveries. ..................................................................................................1
B. Certain Hypothetical Litigation Trust Recoveries. .................................................2
C. Recovery Chart and Related Assumptions. ............................................................3

The Fourth Amended Plan reflects the Bankruptcy Court's determinations in the Allocation Disputes Ruling and provides that the Holders of Claims shall receive the same initial recoveries as those provided in the Second Amended Plan (other than Creditors' Trust Interests, as discussed in the Supplement). In the Allocation Disputes Ruling, the Bankruptcy Court resolved each of the Allocation Disputes other than the EGI-TRB/PPI Dispute, upon which the Bankruptcy Court declined to rule on ripeness grounds.[1]

Because the EGI-TRB/PPI Dispute remains unresolved, Section A of this Exhibit briefly summarizes the potential impact that the hypothetical resolution of such issue may have on certain Litigation Trust distributions to certain affected Classes of Claims under the Fourth Amended Plan. Section B of this Exhibit describes the potential impact that certain hypothetical Litigation Trust recoveries may have on the distributions under the Fourth Amended Plan to the Holders of Senior Noteholder Claims and Other Parent Claims. Section C of this Exhibit contains a recovery chart (the "Recovery Chart") summarizing the estimated distributions to key creditor groups contemplated by the Fourth Amended Plan (taking into account the Allocation Disputes Ruling) and further describes certain key factors and assumptions utilized in connection with determining the estimated recoveries of the Holders of Claims under the Fourth Amended Plan set forth herein, in the Supplement, and in the Recovery Chart.

**A.    Potential Impact of Unresolved Allocation Dispute on Allocation of Litigation Trust Recoveries.**

As described in Section V.C of the Supplement, in the Allocation Disputes Ruling, the Bankruptcy Court ruled on all of the Allocation Disputes other than the EGI-TRB/PPI Dispute. In connection with the EGI-TRB/PPI Dispute, certain parties in interest have raised the issue of whether and to what extent postpetition interest accruing in respect of the Senior Noteholder Claims and Other Parent Claims (to the extent applicable) constitute "Senior Obligations"[2] for purposes of the EGI-TRB Subordination Provisions. Specifically, EGI-TRB LLC has argued that the beneficiaries of the EGI-TRB Subordination Provisions are not entitled to receive postpetition interest before the Holders of EGI-TRB LLC Notes Claims receive payment on their Claims.[3] Aurelius, Law Debenture and Oaktree, however, contend, among other things, that beneficiaries of the EGI-TRB Subordination Provisions are entitled to

---

[1]   The Bankruptcy Court determined that it was not necessary to decide whether or the extent to which the Retiree Claims and Other OP Claims fall within the PHONES Indenture's definition of "Senior Indebtedness" or the EGI-TRB Subordination Agreement's definition of "Senior Obligations" in light of the Bankruptcy Court's ruling on unfair discrimination (as discussed in Section V.C.2 of the Supplement). The adjudication or resolution of the EGI-TRB/PPI Dispute will not impact the initial recoveries of any Holders of Claims or (except as noted below) the distribution of potential Litigation Trust recoveries to the Holders of Senior Noteholder Claims, Other Parent Claims, PHONES Notes Claims and EGI-TRB LLC Notes Claims under the Fourth Amended Plan in relation to the recoveries provided under the Second Amended Plan.

[2]   "Senior Obligations" is defined in the EGI-TRB Subordination Agreement to include "all obligations, indebtedness and other liabilities of the Company other than (i) any such obligations, indebtedness or liabilities that by their express terms rank pari passu or junior to the Company obligations under the [EGI-TRB LLC Notes] and (ii) trade payables and accrued expenses incurred in the ordinary course of business . . ." (EGI-TRB Subordination Agreement at 1).

[3]   See EGI-TRB Preliminary Statement, Opening Brief, and Response Brief [Docket Nos. 10791, 10800, 11001, 11065].

1

receive postpetition interest prior to the Holders of EGI-TRB LLC Notes Claims receiving payment on their Claims.[4]

As noted above, in the Allocation Disputes Ruling, the Bankruptcy Court declined to rule on the EGI-TRB/PPI Dispute because the Bankruptcy Court found that it was not yet ripe for determination. The adjudication or resolution of the EGI-TRB/PPI Dispute will not impact the initial recoveries to any Holders of Allowed Claims under the Fourth Amended Plan. Moreover, the adjudication or resolution of the EGI-TRB/PPI Dispute should not have any effect upon the distribution of Litigation Trust recoveries to the Holders of Senior Noteholder Claims, Other Parent Claims, PHONES Notes Claims, and EGI-TRB LLC Notes Claims under the Fourth Amended Plan unless the net amount of such potential Litigation Trust recoveries substantially exceeds the hypothetical recoveries denoted in Section B below. For example, and solely for purposes of illustration, in the event that the net amount of potential Litigation Trust recoveries under the Fourth Amended Plan were ultimately to exceed substantially the hypothetical recoveries denoted in Section B below, if a court of competent jurisdiction were to determine that postpetition interest accruing in respect of the Senior Noteholder Claims, the Other Parent Clams (if and to the extent such claims have been or are later determined to constitute "Senior Obligations"[5]), and/or the PHONES Notes Claims constitutes "Senior Obligations" for purposes of the EGI-TRB Subordination Provisions, then the Holders of such Senior Noteholder Claims, Other Parent Claims and/or the PHONES Notes Claims (as the case may be) would be entitled to receive Litigation Trust recoveries on account of such postpetition interest before the Holders of EGI-TRB LLC Notes Claims would be entitled to receive Litigation Trust recoveries on account of their claims.[6]

**B.    Certain Hypothetical Litigation Trust Recoveries.**

In connection with the Allocation Dispute litigation, certain parties assessed the potential impact that certain hypothetical Litigation Trust recoveries may have on the distributions under the Fourth Amended Plan to the Holders of Senior Noteholder Claims and Other Parent Claims. A summary of such hypothetical outcomes follows. For example, and solely for illustrative purposes, in the event that the Litigation Trust were to hypothetically recover gross proceeds ranging between $0 and $750 million, then the Holders of Senior Noteholder Claims and Other Parent Claims would potentially receive the following distributions (expressed in terms of percentage of claims) under the Fourth Amended Plan:[7,8]

---

[4]   See Aurelius Preliminary Statement, Opening Brief, and Response Brief [Docket Nos. 10789, 11007, 11072]; Law Debenture Preliminary Statement, Opening Brief, and Response Brief [Docket Nos. 10784, 11010, 11069]; Oaktree Preliminary Statement, Opening Brief, and Response Brief [Docket Nos. 10782, 11003, 11067].

[5]   In the Allocation Disputes Ruling, the Bankruptcy Court determined that the Swap Claim falls within the definition of "Senior Obligations" for purposes of the EGI-TRB Subordination Provisions. The Bankruptcy Court further determined, however, that for purposes of resolving the other Allocation Disputes, it was not necessary to decide whether or the extent to which the Retiree Claims and Other OP Claims constitute "Senior Obligations" for purposes of the EGI-TRB Subordination Provisions.

[6]   The EGI-TRB LLC Notes Claims are subject to challenge by the Litigation Trust pursuant to Article XIII of the Fourth Amended Plan, and the allowance of such Claims was not subject to the Allocation Dispute litigation. Moreover, the Allocation Dispute litigation did not address issues raised in the lawsuit titled *Official Committee of Unsecured Creditors of the Tribune Company v. FitzSimons, et al. (In re Tribune Co.)*, Adv. Proc. No. 10-54010 (Bankr. D. Del.) (KJC).

[7]   For purposes of this Section B only, it is assumed that (i) the Holders of Retiree Claims and Other OP Claims elect to participate in the Litigation Trust recoveries and (ii) the Holders of the Swap Claim elect not to participate in the Litigation Trust recoveries.

[8]   Various parties to the Allocation Disputes agreed to the admissibility for purposes of the March 5, 2012 Allocation Dispute hearing a chart regarding the hypothetical Litigation Trust recovery scenarios set forth

2

- the Holders of Senior Noteholder Claims, Retiree Claims and Other OP Claims would potentially receive approximately 33.6% in the event the Litigation Trust were to recover no gross proceeds, approximately 46.6% in the event the Litigation Trust were to recover $250 million of gross proceeds, approximately 58.2% in the event the Litigation Trust were to recover $500 million of gross proceeds, and approximately 69.8% in the event the Litigation Trust were to recover $750 million of gross proceeds; and

- projected distributions to the Holders of the Swap Claim would equal approximately 36.0% in the event the Litigation Trust were to recover no gross proceeds, $250 million of gross proceeds, $500 million of gross proceeds, or $750 million of gross proceeds.[9]

**C.  Recovery Chart and Related Assumptions.**

The Recovery Chart below sets forth projected initial recoveries under the Fourth Amended Plan for Holders of Claims against the Debtors. These projected recoveries reflect the determinations made by the Bankruptcy Court in the Allocation Disputes Ruling and therefore are the same as the projected recoveries under the Second Amended Plan.

---

  herein. See Appendix B to Memorandum of Law of the Official Committee of Unsecured Creditors on Unfair Discrimination Allocation Dispute [Docket No. 11015]. The estimated hypothetical recoveries in this Section B are the same as the recoveries listed in the foregoing chart in the column titled "Plan (11/18/11)".

[9]  This estimate assumes that the Holders of the Swap Claim elect Option 1 pursuant to Section 3.2.6(c)(i) of the Fourth Amended Plan, which provides for the Holders of the Swap Claim to receive a higher initial distribution on account of their claim against Tribune Company in lieu of receiving Litigation Trust recoveries.

3

**Tribune Company Recovery Chart**
*$ in Thousands*

|  | Claim $ | Per Fourth Amended Plan Recovery $ | Recovery % |
|---|---:|---:|---:|
|  | (1) | (2) | (2) |
| Senior Loan Claims | $ 8,571,192 | $ 93,092 | 1.1% |
| Senior Guarantee Claim - Swap Claims | 150,949 | 96,546 | 64.0% |
| Senior Guarantee Claim - Loan Claims | 8,571,192 | 6,004,407 | 70.1% |
| Bridge Loan Claims | 1,619,507 | 64,500 | 4.0% |
| Senior Noteholder Claims | 1,283,056 | 431,041 | 33.6% |
| Phones Notes Claims (1) | 760,697 | - | 0.0% |
| EGI-TRB LLC Notes Claims | 235,300 | - | 0.0% |
| Other Parent Claims - Retirees Claims (3) | 105,000 | 37,843 | 36.0% |
| Other Parent Claims - Trade & Other Claims (3) | 8,794 | 3,169 | 36.0% |
| Other Parent Claims - Swap Claims (3) | 150,949 | 54,403 | 36.0% |
| Subsidiary General Unsecured Claims | 85,000 | 85,000 | 100.0% |

(1) Basis of the Claim amounts are set forth in the Expert Report of Brian Whittman (DCL Exhibit 1110, page 15) except for the PHONES Notes Claim amount which is based upon the Order Regarding Allocation Disputes plus the Debtors' estimate of pre-petition accrued interest.

(2) The recoveries for the Senior Noteholder Claims and Other Parent Claims assume they elect to receive their recovery in cash. For discussion of potential value of the strip election, see Distributable Value and Treatment Elections below.

(3) This estimate assumes that all Holders of Other Parent Claims (Retirees, Trade & Other, and Swap) elect Option 1 pursuant to Section 3.2.6(c)(i) of the Fourth Amended Plan, which provides for the Holders to receive a higher initial distribution on account of their claim against Tribune Company in lieu of receiving Litigation Trust recoveries.

\* \* \* \* \* \* \*

The projected recoveries set forth in the Recovery Chart above are provided solely for illustrative purposes and are subject to a number of variables, including, among other things, the amount of Allowed Claims within any particular Class. As a result of the foregoing and other uncertainties which are inherent in such estimates, the projected recoveries set forth in the Recovery Chart may vary from the actual recoveries.

Certain key factors and assumptions utilized in connection with determining the projected recoveries set forth in the Supplement and in the Recovery Chart above include the following:

Distributable Enterprise Value and Treatment Elections

- The projected recoveries in the Supplement and this <u>Exhibit B</u> are based, solely for illustrative purposes, upon an assumed Distributable Enterprise Value ("<u>DEV</u>") of $6.870 billion, comprised of Total Distributable Value of $6.75 billion and $120 million of Step Two Disgorgement Settlement proceeds. The $6.870 billion DEV number was previously utilized in the General Disclosure Statement and is the DEV at which the cash and Strip treatment options for Senior Noteholders and

4

    Holders of Other Parent Claims have identical value.  As noted below, the Bankruptcy Court found in the Confirmation Opinion that the Debtors' Total Distributable Value as of January 19, 2011 was $7.019 billion.  As set forth in Section VI of the Supplement, the Debtors estimate that, based on the valuation methodology approved by the Bankruptcy Court, as of February 16, 2012, the Reorganized Debtors' Total Distributable Value is a range of $6.917 billion to $7.826 billion, with an approximate mid-point of $7.372 billion, subject to adjustment for certain potential liabilities.

- The Second Amended Plan permitted the Senior Noteholders and Holders of Other Parent Claims to elect to receive in lieu of an all-cash distribution, a "strip" of consideration consisting of a portion of Distributable Cash, New Senior Secured Term Loan and New Common Stock (a "Strip").  This option to receive a Strip distribution was added to the Second Amended Plan in part to address concerns about potential changes to the DEV, and such option is preserved in the Fourth Amended Plan.  To the extent that the Holders of Other Parent Claims or Senior Noteholder Claims elect to receive a Strip, their ultimate recovery percentages may potentially be higher or lower than the projected recoveries set forth in the Supplement and the Recovery Chart due to, for example, potential variations between the *estimated* value of the New Common Stock or *estimated* amount of Distributable Cash utilized for purposes of estimating the Debtors' Total Distributable Value (as reflected in the Recovery Chart) and the *actual* value on the Effective Date of the New Common Stock issued and amount of Distributable Cash distributed to the Holders of such Claims.

- In the Confirmation Opinion, the Bankruptcy Court found the Total Distributable Value to be $7.019 billion as of January 19, 2011, which when added to the Step Two Disgorgement Settlement proceeds yields a DEV of $7.139 billion.  If the DEV as of the Effective Date were $7.139 billion rather than $6.870 billion, Holders of Senior Noteholder Claims who elect to receive a Strip would receive their pro rata share of $447.9 million of consideration (6.27425% of DEV), whereas those electing cash would receive their pro rata share of $431.0 million of cash (a fixed amount that does not vary with DEV).  Consequently, the estimated recovery percentage for Holders of Senior Noteholder Claims that receive a Strip would be approximately 1.3 percentage points higher than the recovery percentage of those who elect cash.  Similarly (and based upon the foregoing assumptions), the estimated recovery percentage for Holders of Other Parent Claims who elect to receive a Strip would be approximately 1.4 percentage points higher than the recovery percentage of those who elect cash.  As discussed in Section VII of the Supplement, the Debtors estimate that, as of February 16, 2012, the Reorganized Debtors' Total Distributable Value is a range of $6.917 billion to $7.826 billion, with an approximate mid-point of $7.372 billion, subject to adjustment for certain potential liabilities.  Assuming a DEV as of the Effective Date of $7.492 billion (comprised of Total Distributable Value of $7.372 billion and $120 million of Step Two Disgorgement Settlement proceeds) rather than $6.870 billion, the value of the Strip option for Holders of Senior Noteholder Claims would exceed the value of the cash distribution option.  At this DEV, Holders of Senior Noteholder Claims who elect to receive a Strip would receive their pro rata share of consideration valued at $470.1 million in the aggregate (6.27425% of DEV), whereas those electing cash would receive their pro rata share of $431.0 million of cash (a fixed amount that does not vary with DEV).  As a result, the estimated recovery percentage for Holders of Senior Noteholder Claims that receive a Strip would be approximately 3.0 percentage points higher than the recovery percentage of those who elect cash, and the estimated recovery percentage for Holders of Other Parent Claims who elect to receive a Strip would be approximately 3.3 percentage points higher than the recovery percentage of those who elect cash.

Other Notes and Assumptions

- Except where inconsistent with the Notes and Assumptions in this Exhibit B, the key factors and assumptions underlying the projected recoveries in the Supplement and in the Recovery Chart include the Key Factors and Assumptions set forth in Article II.C of the Specific Disclosure Statement, which are hereby incorporated herein by reference (Specific Disclosure Statement at 11-12).

- The projected recoveries assume that the aggregate consideration provided pursuant to the DCL Plan Settlement is $534.9 million of which $452 million is allocable to the Holders of Claims against Tribune, as further described in Article II.A of the Specific Disclosure Statement, including $13.3 million from the settlement reached with the Bridge Lenders pursuant to the Bridge Settlement Term Sheet. (Specific Disclosure Statement at 3-6 and Exhibit B to the Order Approving the Mediators 3rd Report [Docket No. 7656 at 1]).

- The projected recoveries assume that no Claim will receive value in excess of 100% of the Allowed amount of such Claim.

- The Holders of Allowed General Unsecured Claims against Tribune that elect, pursuant to Section 3.2.6(c) of the Fourth Amended Plan, to forego receiving Litigation Trust Interests receive a 2.45% greater distribution than those who do not elect to forego Litigation Trust Interests.  Specifically, those who forego Litigation Trust Interests receive an estimated recovery of approximately 36% (comprised of 35.18% of their Allowed Claim plus a Pro Rata Share of the Bridge Settlement Proceeds), while those who elect to receive trust interests receive 32.73% of their Allowed Claim plus a Pro Rata Share of the Bridge Settlement Proceeds.  The estimated recovery percentages set forth in the Supplement and the Recovery Chart for the Holders of Other Parent Claims assume that all such Holders elected to forego receiving trust interests and instead receive approximately 36% of their Allowed Other Parent Claim.

- The estimated recoveries in the Supplement and in the Recovery Chart, and the assumptions underlying that chart, are consistent with, among other things, the Bankruptcy Court's decisions to date and do not take into account any potential disposition of any existing or subsequent appeals.