IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------X
In re:                                               :    Chapter 11 Cases
                                                     :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                             :    (Jointly Administered)
                                                     :
        Debtors.                                     :
                                                     :
                                                     :
                                                     :
-----------------------------------------------------X
```

## DECLARATION OF ROBERT J. STARK

Pursuant to 28 U.S.C. § 1746, Robert J. Stark, being duly sworn, deposes and says:

1.   I am a partner at the law firm of Brown Rudnick LLP ("Brown Rudnick"), attorneys for Wilmington Trust Company ("Wilmington Trust"), Successor Indenture Trustee for the Exchangeable Subordinated Debentures due 2029 (generally referred to as the "PHONES") issued in April 1999 by Tribune Company ("Tribune" and, together with its Chapter 11 affiliates, the "Debtors" or the "Company") in the above-referenced chapter 11 cases.

2.   I have more than 18 years of bankruptcy and restructuring experience. I have served as lead bankruptcy counsel for clients in notable in-court and out of court restructurings, including, without limitation: American Safety Razor, Central European Distribution Corp., Delta Petroleum, Energy Conversion Devices, Evergreen International Aviation, Falcon Products, Fedders, Flying J/Big West Oil, Green Valley Ranch Hotel and Casino, Hawkeye Renewables, InSight Health Services, Le-Nature's, Lionel Trains, Minneapolis Star Tribune, Motor Coach Industries, Newark Group, NV Broadcasting, Oakwood Homes Corporation, Oneida, Patriot Coal, Riverstone Networks, School Specialty, Spansion, Synagro Technologies,

1

TOUSA, Visteon, Washington Mutual and York Research.  I am familiar with the facts set forth herein based upon personal knowledge and my review of applicable records and documents.

3. I submit this declaration in support of Wilmington Trust's Claim Under Class 1F of the Plan (the "WTC Fee/Expense Claim") and in support of Wilmington Trust's Brief In Support of the WTC Fee/Expense Claim (the "Brief").

4. I am the lead partner responsible for the representation of Wilmington Trust, as successor indenture trustee, in the Debtors' bankruptcy cases.

5. I am familiar with the facts set forth in the Brief (and its attachments) and believe the facts to be true and correct to the best of my knowledge, information and belief.

6. Attached hereto as Exhibit A are true and correct copies of the billing records for Brown Rudnick LLP, Wilmington Trust's primary outside counsel for the Tribune matters.

7. I am familiar with the work performed on behalf of Wilmington Trust by the lawyers, legal assistants and other professionals of Brown Rudnick LLP.  The rates and charges set forth in Exhibit A are standard rates and charges for services provided by the respective lawyers, legal assistants and other professionals of Brown Rudnick.  The invoices contained in Exhibit A total 3,150 pages, and account for more than 34,000 hours of billable time.  Because of the voluminous size of these documents, they are being provided to the Court and to the Reorganized Debtors only.  The rates and charges of Brown Rudnick are competitive with Brown Rudnick's peer firms.

8. I am also familiar with the work performed on behalf of Wilmington Trust by its other professionals, including Benesch Friedlander Coplan & Aronoff LLP (Delaware counsel through August 2010); Sullivan Hazeltine Allinson LLC (Delaware counsel from August 2010); Garvey Schubert Barer (Federal Communications Commission counsel);  The Law Offices of

John Wells King, PLLC (Federal Communications Commission counsel); Mesirow Financial Consulting LLC (financial advisor); Morton Research, Inc. (newspaper valuation consultant); Hoffman Schutz Media Capital (broadcasting valuation consultant); and Cypress Holdings LLC (internet consultant) (collectively, with Brown Rudnick, the "Professionals"). Brown Rudnick has been informed by each Professional firm that the rates and charges set forth in the attachments to the Brief are standard rates and charges for services provided by each of these respective professionals.

9. I believe the time and expenses billed by the Professionals were reasonable, necessary and related to the extensive work and analysis of the Professionals in rendering services to Wilmington Trust under the PHONES Indenture. Within Brown Rudnick, the Tribune engagement was staffed with attorneys, legal assistants and other professionals as was required depending on the nature of the various tasks, so that each attorney's, legal assistant's or other professional's expertise and experience was at the level most appropriate for the particular task. In general, our core partner team of myself, Martin Siegel, William Dolan and Gordon Novod were responsible for strategic decisions, and matter management, relying on senior associates to lead and manage discovery efforts and associates generally to perform discovery work, utilizing junior associates whenever available and practicable.

10. Throughout Brown Rudnick's representation of Wilmington Trust, we were in frequent communication with holders of more than a majority of the PHONES, made recommendations directly to such holders, regularly received direction from the majority, and faithfully presented their views to this Court, in mediation, and at the bargaining table.

11. Wilmington Trust's level of activity and advocacy varied with the changing circumstances of this engagement. At times, Wilmington Trust had its views advanced through

its participation on the Official Committee of Unsecured Creditors (the "Official Committee"). At other times, Wilmington Trust -- told that, since the PHONES were so deeply subordinated, their case view was essentially irrelevant -- stood alone. Eventually, when parties refused to even talk to Wilmington Trust (and it was intentionally excluded from Official Committee meetings), Wilmington Trust was forced to seek the appointment of an examiner and initiate a direct lawsuit (seeking, among other relief, equitable subordination of claims) against the LBO lenders. After Professor Klee's appointment as Examiner, Wilmington Trust became a principal advocate for the Examiner to conclude (as he did) that aspects of the LBO were fraudulent conveyances and, as part of that process, Wilmington Trust, through its Professionals: (i) analyzed millions of pages of documents produced in discovery (in order to bring relevant documents to the Examiner's attention); and (ii) prepared for the Examiner hundreds of pages of case briefing. Later, Wilmington Trust aligned with its then majority holder of PHONES Notes, Aurelius Capital Management ("Aurelius"), and other PHONES Noteholders in opposition to a plan of reorganization that the vast majority of the PHONES Noteholders believed undervalued the PHONES' due value entitlements, and in support of a competing plan. Wilmington Trust also represented the PHONES interests in the hotly contested Allocation Disputes process.

12.  In sum, I believe (based on my career experience, frequent and direct interactions with majority owners of PHONES, and from close observation of the case facts and surrounding procedural circumstances) that Brown Rudnick and the other Professionals acted in a manner that was, at all times, tailored to Wilmington Trust's legal obligations, as this most complex bankruptcy case unfolded, in the same manner that a prudent man would act to protect its own investments.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 28, 2013

_/s/ Robert J. Stark_
Robert J. Stark