## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY, *et al* | : | |
| | : | Case Number 08-13141-KJC |
| | : | |
| | : | |
| Joint Debtors | : | **Status Conference:  April 17, 2013 at 2:00 p.m.** |
| | | **Objection Deadline: April 10, 2013 at 4:00 p.m.[1]** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF LAW
DEBENTURE TRUST COMPANY OF NEW YORK PURSUANT TO 11 U.S.C. §§
503(b)(3)(D), 503(b)(4), AND 503(b)(5) FOR ALLOWANCE AND PAYMENT OF FEES
AND EXPENSES INCURRED IN CONNECTION WITH MAKING A SUBSTANTIAL
CONTRIBUTION TO THE DEBTORS CHAPTER 11 CASES AND GRANTING
WAIVER OF COMPLIANCE WITH DEL. BANKR. L.R. 2016-2(d)(vii) IN
<u>ACCORDANCE WITH DEL. BANKR. L.R. 2016(2)(h) (D.E. 13274)</u>[2]**

In support of  her objection to the Motion Of Law Debenture Trust Company Of New York
Pursuant To 11 U.S.C. §§ 503(b)(3)(D), 503(b)(4), And 503(b)(5) For Allowance And Payment Of
Fees And Expenses Incurred In Connection With Making A Substantial Contribution To The
Debtors Chapter 11 Cases And Granting Waiver Of Compliance With Del. Bankr. L.R. 2016-
2(d)(vii) In Accordance With Del. Bankr. L.R. 2016(2)(h) (D.E. 13274, the "<u>Motion</u>") , Roberta A.
DeAngelis, United States Trustee for Region Three (the "<u>U.S. Trustee</u>"), by and through her
counsel, avers:

### <u>INTRODUCTION</u>

1.     Pursuant to 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and
determine this objection.  Pursuant to 28 U.S.C. § 586(a)(3)(A), the U.S. Trustee is charged with the
responsibility to review fee applications submitted under section 330 and when appropriate file

---

[1] Extended to April 10, 2013 for the U.S. Trustee.
[2] Terms shall have the same meaning given them in the Motion.

"with the court comments with respect to such application[s] and, if the United States Trustee considers it to be appropriate, objections to such application[s]." *See In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 842 (3d Cir. 1994) (section 586(a)(3) gives the U.S. Trustee "discretion" to review fee applications). Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

2.        Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to prosecute this objection.

## STATEMENT OF FACTS

*Background*

3.        These cases were filed on December 8, 2008 (the "Petition Date"). From the onset of these cases, the various constituencies : "understood that the investigation and resolution of the LBO-Related Causes of Action would be a central issue in the formulation of a plan of reorganization." *In re Tribune Company,* 464 B.R. 126, 142 (Bankr. D. Del. 2011). From the day of the creditor Committee's appointment on December 18, 2008, "issues arising from the LBO ha[d] been at the forefront of the Committee's agenda. . . . From the earliest months of the case, the Committee ha[d] directed and pursued a detailed and exhaustive investigation and review of the LBO and the issues and possible claims arising from the LBO."[3]

---

[3] *Creditors' Committee's Response and Partial Objection to Law Debenture's Rule 2004 Motion* [D.E. 2136, ¶ 15]. "From the inception of the Debtor's Chapter 11 Cases, it was clear to most pre-LBO creditors (like Law Debenture)

4.    As of the Petition Date, the 128 debtors in this case owed their creditors $12.7 billion, making this among the largest bankruptcies ever filed.   Over $10 billion of the total debt was secured.   Approximately $1.26 billion was owed to multiple tranches of bonds collectively referred to as the Senior Notes.

5.    In May 2009 Law Debenture became the Indenture Trustee for two tranches of Senior Notes issued in 1996 owed approximately $233 million on the Petition Date.[4]  According to the Motion, this amount represents about 18% of the Senior Notes.  Law Debenture became the Indenture Trustee under the 1996 Indenture "at the direction of the controlling noteholder, Centerbridge Partners, L.P." ("Centerbridge")[5]

6.    The Debtors retained of twenty firms, including Sidley Austin LLP ("Sidley"); Cole, Schotz, Meisel, Forman & Leonard, PA ("Cole Schotz"), Alvarez & Marsal North America ("Alvarez") and Lazard Freres & Co., LLC ("Lazard").  In January of 2009, the Committee retained the law firms of Chadbourne & Park LLP ("Chadbourne") and Landis, Rath & Cobb, LLP ("Landis"), to represent it as counsel, Alix Partners, LLP ("Alix") as financial advisor, and Moelis & Company, LLC as investment banker.  In August 2009, the law firm of Zuckerman Spader LLP "Zuckerman" was retained by the Committee as Special Counsel.[6]

7.    Allegedly dissatisfied with the progress of the Committee's LBO investigation, Law

---

that the main focus of the proceedings should have been Tribune's disastrous leveraged buyout transaction ("LBO") that was completed in December 2007…"  Motion at ¶8.  "As of the petition date, the non-LBO creditors, including the PHONES, were optimistic that the LBO would prove fertile ground for the investigation, development, and assertion of claims that could lead to a meaningful recovery for all non-LBO creditors."  *Application for Allowance of Claim Under 11 U.S.C. §§503(b)(3)(D) and 503(b)(4) in Connection with Wilmington Trust Company's Motion Requesting the Appointment of an Examiner and Wilington Trust Company's Participation in Examiner's Investigation and Granting Waiver of Compliance with Del. Bankr. L.R. 2016-2(d) in Accordance with Del. Bankr. L.R. 2016-2(g)* [D.E. 13272 at ¶24, "WTC Application"].

[4] General Disclosure Statement dated December 15, 2010 at page 21.  See also,  *In re Tribune Company,* 464 B.R. 126, 141 (Bankr. D. Del. 2011).

[5] Motion at ¶13.

Debenture, in mid-2009, "determined that it needed to take a more active role."[7]  Paragraphs 26 through 29 of the Motion contain numerous statements admitting to duplication of work by Committee counsel:  "Zuckerman, KBTF and MSG worked closely together . . . ." (Motion ¶ 26); "Zuckerman and KBTF also collaborated . . . ." (Motion at ¶27); "Similarly, Zuckerman and KBTF determined that it would be most beneficial . . . if both parties analyzed the documents, researched the legal issues and drafted a complaint." (Motion ¶ 28).

8.        After the Committee filed its *Motion for Entry Of an Order Granting Leave, Standing And Authority To Commence, Prosecute And Settle Claims and Counterclaims Of the Debtor's Estates* ("Standing Motion") in February of 2010, Law Debenture filed a joinder.  Then, after a number of weeks in which the various constituencies spent significant time in negotiations (Motion ¶ 40), a proposed settlement was agreed to (the "April 2010 Settlement").  This settlement would provide the Senior Notes with a dividend of approximately 35.2 % of their claims, or roughly $82 million of the Law Debenture claim.  The confirmed plan will pay this class a cash dividend of approximately $431 million dollars, or 33.6% of the claims.[8]  Eighteen percent of $431 million is $77.6 million.

9.        On May 10, 2010, the United States appointed Kenneth N. Klee as examiner ("Examiner").  In connection with his investigation, the Examiner invited the parties to provide submissions on the subject matter of the examination.[9]

10.      The Examiner filed his report with the Court on July 26, 2010.  In his report, the

---

[6] General Disclosure Statement dated December 15, 2010 at pages 44-45.

[7] Motion at ¶17.

[8] Supplemental Disclosure Statement *Relating to Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A* filed April 17, 2012 ("Supplemental Disclosure Statement", DE 11400).

[9] *In re Tribune Co., supra,* 464 B.R. at 142-143.

Examiner explained his methodology: "The Examiner determined that the most sensible way to approach the Investigation in the limited time given was to capitalize on the work performed by the Parties, and, at least in the first instance, to look to the Parties in the adversarial process to flesh out the issues and facts in dispute and the relative strengths and weaknesses of the positions of the Parties. **These contributions were intended to supplement, rather than replace, the Examiner's independent investigation.**" Report of Kenneth N Klee, As Examiner ("Examiner Report", D.E. 5130 at p. 30) (emphasis added). The Examiner solicited the input of numerous parties, including the Debtors, the Committee, Law Debenture, and Centerbridge Credit. In addition to soliciting the parties' input, the Examiner conducted 38 interviews. The Examiner also utilized his own financial advisor, LECG. "To a great extent, LECG utilized and built on analyses prepared by the various financial advisors for the Parties, although, as the Report amply illustrates, LECG conducted its own independent investigation of the financial matters at issue on behalf of the Examiner." (Examiner Report at p. 37).

11.    This case has featured competing Chapter 11 plans of reorganization. The DCL Plan, proposed by the Debtor, Committee and Lenders, with amendments occasioned by the Court's opinion of October 31, 2011 ("Confirmation Opinion"), was ultimately confirmed. Law Debenture, along with its controlling noteholder, Centerbridge, were co-proponents of the unsuccessful Noteholder Plan. The Court observed in the Confirmation Opinion: "The voting results reveal that creditors overwhelmingly prefer the DCL Plan over the Noteholder Plan. Out of 128 classes of claims in which creditors actually voted, 125 classes (97.66%) voted to accept the DCL Plan. . . . In contrast, out of 243 classes of claims in which creditors actually voted, only three classes (1.2%) voted to accept the Noteholder Plan." *In re Tribune Co.*, 464 B.R. at 207.

12.    In the Confirmation Opinion, the Court rejected the Noteholders' contention that the Committee failed to represent all creditors.  "This position is not supported by the evidence.  . . . The record here reflects that the Committee considered all of the unsecured creditors' interests. Failure to advocate the Noteholders' position above interests of other creditor constituencies is not a breach of the Committee's fiduciary duties." *In re Tribune Co.*, 464 B.R. at 156-57.

13.    Law Debenture seeks substantial contribution compensation for three professionals: the law firm of Kasowitz, Benson, Torres & Friedman ("Kasowitz); the law firm of Bifferato & Gentilotti LLC ("Bifferato"); the financial advisory firm of Michael Shaked Group ("MSG"); and, finally Law Debenture itself.  Kasowitz seeks compensation of $5,233,521 and an expense reimbursement of $178,649.44.  Bifferato seeks compensation of $45,530 and an expense reimbursement of $6,926.35.  MSG seeks compensation of $605,667.25 and an expense reimbursement of $23,382.55.  MSG is not an attorney or an accountant.  Law Debenture also seeks $13,470 for its services.

14.    The Motion is accompanied by 160 pages of time sheets from the four entities. Overwhelmingly, the time entries are vague, and where numerous services are performed by the same person over a number of hours, the entries are lumped together.  The various services allegedly performed have not been categorized.  Travel time appears to have been billed at the professional's full hourly rate.  Expense records are not properly itemized.

## PRELIMINARY STATEMENT

15.     Law Debenture fails to show that it is entitled to compensation for rendering a substantial contribution to the case pursuant to 11 U.S.C. §§ 503(b)(3) and (b)(4).  The Motion admits that Law Debenture, the holder of $233 million in notes, decided to act on its own because it was dissatisfied with the pace of the case.  Its activities and those of its professionals were undertaken primarily in Law Debenture's own self-interest.  To the extent that services could have benefitted the creditor body of the whole, the Committee itself was acting on those creditors behalf, and the services provided by Law Debenture's professionals were duplicative.  The confirmed Plan provides Law Debenture with the right to share in the proceeds of litigation, but with a cash dividend not materially different from that projected in the original April 10, 2010 Settlement.  Law Debenture may have participated extensively in the proceedings, but extensive participation in a case by a party does not entitle a party to substantial contribution compensation.

16.     Even if Law Debenture can show that some of its services provided a substantial contribution to the estate, any recovery is limited to the actual expenses of Law Debenture and the allowable fees and costs of attorneys and accountants.  Because MSG is a financial advisory firm, Law Debenture may not seek recovery of MSG's fees as a matter of law.

17.     Assuming that Law Debenture can show that some of its services may have provided a substantial contribution to the estate, the Motion fails to comply with the applicable rules and guidelines of the U.S. Trustee in that fee statements are not divided into categories, are replete with vague and lumped entries, and costs are often not properly itemized.  Contrary to the assertions in the Motion, a substantial contribution applicant is held to the same standards in seeking compensation from the estate as retained court approved professionals.

18.    Law Debenture has failed to carry its burden of showing that it made a substantial contribution to the Debtors' estates, because (1) Law Debenture has not rebutted the presumption that it acted in its own interests; (2) any contribution that the Applicants made lacks a causal connection to confirmation of the Plan because of the participation of many parties; (3) Law Debenture has not adequately shown that the tasks Kasowitz or Bifferato billed for were not duplicative of the work retained firms performed or were retained to perform in these cases; and (4) the fees sought are unreasonable.  The Application should be denied.

## **ARGUMENT**

## **I. LAW DEBENTURE DID NOT MAKE A SUBSTANTIAL CONTRIBUTION**

### **A.  The Legal Standard**

19.    Bankruptcy Code Section 503(b) provides in pertinent part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> [ . . . ]
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> > (A) a creditor that files a petition under section 303 of this title;
> >
> > (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
> >
> > (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

Case 08-13141-BLS    Doc 13434    Filed 04/10/13    Page 9 of 27

     (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

     (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

     (F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

     (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

To the extent the Court determines Law Debenture is eligible to seek reimbursement of its attorneys' actual, necessary expenses and reasonable fees under Sections 503(b)(3)(D) and 503(b)(4), the U.S. Trustee submits that Law Debenture has failed to carry its burden of showing that it made a substantial contribution in these cases.

    20.    Section 503(b)(3)(D) provides administrative-expense status for the actual, necessary expenses of a creditor, indenture trustee, equity security holder, or ad hoc committee that makes a substantial contribution in a chapter 9 or 11 case. Section 503(b)(4) provides administrative-expense status for the reasonable fees and actual, necessary expenses of such entity's attorneys and accountants.

21.     Section 503(b)(3)(D) must be narrowly construed.  *See In re Worldwide Direct, Inc.*, 334 B.R. 112, 122 (Bankr. D. Del. 2005) (quoting *In re Granite Partners*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997)).

22.     Section 503(b)(3)(D) has two purposes: (1) to encourage creditors to participate meaningfully in the reorganization process; and (2) to minimize fees and administrative expenses and thereby maximize creditor recoveries.  *Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 944 (3d Cir. 1994).   A creditor makes a substantial contribution if its efforts provide an "actual and demonstrable benefit to the debtor's estate and the creditors."  *Lebron v. Mechem Financial Inc.*, 27 F.3d at 943-44 (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)).  *See also In re Worldwide Direct, Inc.*, 334 B.R. at 121.

23.     A benefit that the estate receives as an incident to a creditor's protecting its own interests is not substantial.  *See Lebron v. Mechem Financial Inc.*, 27 F.3d at 944.  *See also In re Essential Therapeutics, Inc.,* 308 B.R. 170, 174 (Bankr. D. Del. 2004):  "Inherent in substantial contribution, however, is the requirement that the benefit received by the estate be more than incidental to the applicant's self-interest."

24.     Creditors are presumed to act in their own interest "until they satisfy the court that their efforts have transcended self-protection."  *Lebron v. Mechem Financial Inc.*, 27 F.3d at 944 (citations omitted).   The activities that a Section 503(b)(3)(D) applicant has engaged in are "presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services 'directly and materially contributed' to the reorganization."  *Lebron v. Mechem Financial Inc.*, 27 F.3d at 943-44 (citation omitted).

25.     Law Debenture must prove by a preponderance of the evidence that it made a substantial contribution.  *See In re Buckhead America Corp.*, 161 B.R. 11, 15 (Bankr. D. Del. 1993).

26.     When determining if a claimant has met its burden, courts consider whether the services provided—

> 1)  were only for the benefit of the client or were for the benefit of all parties in the case;
>
> 2)  directly, significantly and demonstrably benefited the estate; and
>
> 3)  were duplicative of the services provided by attorneys for the committee, the committees themselves, or the debtor and its attorneys.

*See In re Worldwide Direct, Inc.*, 334 B.R. at 122 (citing *In re Buckhead America Corp.*, 161 B.R. at 15).

27.     In attempting to meet its burden, the applicant must introduce more than self-serving statements about its involvement in the case.  *In re Worldwide Direct, Inc.*, 334 B.R. at 123 (citing *In re Buckhead America Corp.*, 161 B.R. at 15).  "'Corroborating testimony by a *disinterested* party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding compensation to activities which otherwise might not constitute a 'substantial contribution.'" *In re Worldwide Direct, Inc.*, 334 B.R. at 123 (citing *In re Buckhead America Corp.*, 161 B.R. at 15).

28.     Extensive participation in a case is not enough to justify a substantial-contribution award.  *In re Worldwide Direct, Inc.*, 334 B.R. at 123 (citing *In re Granite Partners*, 213 B.R. at 445); *see also In re Summit Metals, Inc.*, 379 B.R. 40, 53 (Bankr. D. Del. 2007).

29.     Law Debenture has the burden of establishing that a "causal connection" exists between service provided and contribution to the estate.  *See In re Worldwide Direct, Inc.*, 334 B.R. at 121-22.

30.     For an applicant's reasonable attorney fees to be allowable under Section 503(b)(4), the court must find that the applicant has a claim under Section 503(b)(3).  *See In re Worldwide Direct, Inc.*, 334 B.R. at 120-21.

## B.     Law Debenture's Activities Were Primarily For Its Benefit

31.     Law Debenture has not shown that its activities benefitted all parties in the Tribune case.  *See In re Worldwide Direct, Inc.*, 334 B.R. at 122 (citing *In re Buckhead America Corp.*, 161 B.R. at 15) (one thing courts consider when determining if a substantial-contribution claimant has met its burden is whether the services provided were only for the benefit of the client or were for the benefit of all parties in the case).

32.     Law Debenture has not rebutted the presumption that it acted primarily in its own interest.  Law Debenture recognized that  "from day one, the job of investigating, prosecuting and maximizing the value of the LBO Claims fell to the Committee." (Motion ¶ 10).  The Motion avers that the Committee could not or would not do its job as a result of alleged conflicts, and, "not satisfied with the direction and speed of the LBO investigation, Law Debenture determined that it needed to take a more active role." (Motion ¶ 17).   The Court rejected the Noteholders claims of conflict.  "The Noteholders argue that the DCL Plan Settlements must be rejected because they are not the result of good-faith, arms-length negotiations.  The Noteholders contend that the settlement process was tainted by conflicts of interest, one-sided negotiations, and other irregularities.  These assertions are unsupported by the evidentiary record."  *In re Tribune Co.*,464 B.R. at 155.  The

Court also rejected any assertion that the Committee somehow did not take an adequate role in the matter: "The record here reflects that the Committee considered all of the unsecured creditors' interests. Failure to advocate the Noteholders' position above interests of other creditor constituencies is not a breach of the Committee's fiduciary duties." *In re Tribune Co.*, 464 B.R. at 157. Law Debenture's decision to play an aggressive and active role in this case was not predicated out of eleemosynary motives for other creditors, but rather, was at the direction of its controlling Noteholder, Centerbridge. *See* Motion ¶ 13.

33.   Law Debenture is the Indenture Trustee for a $233 million claim, representing 18% of the Senior Notes. Given the sheer size of the claim, it strains credulity for Law Debenture to assert that its own professionals were not acting primarily for the benefit of the economic interests it serves. Any benefit its own professionals may have conferred upon other creditor constituencies should be purely incidental. *See In re American Plumbing & Mechanical, Inc.,* 327 B.R. 273 (Bankr. W.D. Tex. 2005) ($95 million bondholder claim Substantial contribution application denied for $95 million bondholder claim: "Choosing to not hold hostage the reorganization process does not make for substantial contribution." 327 B.R. at 291). *In re Tropicana Entertainment LLC,* 2012 WL 3776531 (3d Cir. 2012) (Denial of substantial contribution application for creditors holding 65% of bondholder debt affirmed). *In re Northwestern Corporation,* 2007 U.S. Dist. Lexis 24167 at 8-9 (D. Del. 2007) (Denial of substantial contribution application by Law Debenture for fees incurred by Kasowitz affirmed: "In this case, Appellant acted as Indenture Trustee for the QUIPS holders and its actions were taken to benefit the QUIPS holders.").

34.   Although Law Debenture represented significant economic interests in the case, it

was only one of multiple participants in the process that led to confirmation of a plan.  The genesis of what ultimately became the plan in this case evolved from the April 10, 2010 Settlement.  According to the Motion, the April 10, 2010 Settlement was the result of negotiations which took place over many weeks with multiple parties (Motion ¶ 40).  The subsequent appointment of the Examiner, his report and the subsequent mediation all contributed to the evolution of the plan, which became the resolution of this case.  *See In re Tribune Company*, *supra*, at 146.  *See In re Summit Metals, Inc.*, *supra*, at 53:  "extensive participation in a case, without more, is insufficient to compel compensation."  *See also In re Granite Partners, L.P.*, 213 B.R. 440, 449 (Bankr. S.D.N.Y. 1997)("Mere participation in the negotiation, drafting and confirmation of the plan is not sufficient.").

## C.  Law Debenture's Activities Duplicated Those of Others

35.     By Law Debenture's own admission, many of its professionals' activities were significantly duplicative of what other retained professionals did or were retained to do in these cases.  *See* paragraph 7, *supra*, outlining the Motion's multiple admissions of duplicated services.  Law Debenture claims that it collaborated with Committee counsel, but there is no evidence in the record to suggest that Law Debenture was requested to perform services the Committee was not or could not perform.[10]  To the contrary, as noted in paragraph 32 above, the Court rejected Law Debenture's contentions.  The Examiner invited the primary constituencies to submit evidence and present legal arguments so as to take advantage of discovery undertaken prior to his appointment.

---

[10]  The 160 pages of timesheets included in the Motion are not divided into categories, are vague and are lumped, all in violation of the applicable U. S. Trustee fee Guidelines.  Absent compliance with the Guidelines, the amount of time spent on given activity cannot be ascertained.  It is the proponents of the Motion who have the burden of proof on this issue.  See below.

36.    The Motion at paragraphs 44-47 attempts to create the impression that but for Law Debenture, the Examiner could not have performed his duties.  However, the massive duplication admitted to at paragraphs 26-29 and the Examiner's Report belie this impression:  "The Examiner determined that the most sensible way to approach the Investigation in the limited time given was to capitalize on the work performed by the Parties, and, at least in the first instance, to look to the Parties in the adversarial process to flesh out the issues and facts in dispute and the relative strengths and weaknesses of the positions of the Parties.  These contributions were intended to supplement, rather than replace, the Examiner's independent investigation." (Examiner's Report at 30).

37.    The *Agreed Order Directing the Appointment of an Examiner,* dated April 20, 2010 (D.E. 4120), provided in pertinent part at paragraph 3:  "[t]he parties shall use their respective best efforts to coordinate with the Examiner and to avoid unnecessary interference with, or duplication of, the Investigation, and the Examiner, in his or her conduct of the Investigation, shall use best efforts to utilize relevant materials obtained by the Parties via informal and/or formal discovery to avoid unnecessary duplication of work performed to date."   In addition to admitting significant duplication of services with the Committee, Law Debenture has failed to address what it did to comply with the Court order to avoid duplication.

38.    Law Debenture characterizes its independent actions as "collaborating" with counsel for the Committee (Motion ¶¶ 26-29).  There is no showing that the Committee professionals could not perform their services. The Court found otherwise in the Confirmation Opinion.   Paragraphs 22-24 of the Motion suggest that the Committee opposed Law Debenture.  When the parties did stipulate to let Law Debenture participate in the process, Law Debenture refers to its subsequent

activities as "collaborating" with the Committee, but the Committee did not ask for Law Debenture's assistance. The Motion at paragraphs 35-40 admits to further extensive duplication in connection with the Committee's Standing Motion and Law Debenture's subsequent joinder in the Standing Motion.

### D. There is No Causal Connection Between Tasks Performed and Benefit to the Estates

39.     Any contribution made by Law Debenture lacks a clear causal connection to the outcome of these cases. *See In re Worldwide Direct, Inc.*, 334 B.R. at 121-22 (applicant has the burden of establishing a "causal connection" between service provided and contribution to the estate). As discussed at paragraphs 33 and 34, *supra*, the resolution of this case was the result of the many efforts of multiple parties over many months. During this period, Law Debenture and its professionals may have zealously represented their client, but as noted at paragraph 34, *supra*, participating in litigation and negotiations is insufficient to satisfy the substantial contribution standard.

40.     The Motion suggests that Law Debenture performed services at the specific request of the Examiner who relied upon "the parties' invaluable contribution" (Motion ¶ 47). The Examiner Report thanked the parties for the input provided to the Examiner but did not single out any particular party as making a contribution greater or less than any other party. The Examiner did not specifically request Law Debenture's assistance. Law Debenture was merely one of many parties the Examiner invited to submit materials relevant to the examination ("These contributions were intended to supplement, rather than replace, the Examiner's independent investigation." (Examiner's Report at 30)).

41.     While the Confirmation Opinion rejected confirmation of both the Noteholder and DCL Plans, the Confirmation Opinion noted the overwhelming creditor approval of the DCL Plan, which with modifications suggested in the Confirmation Opinion, was the plan ultimately confirmed in this case.  The Noteholders, including Law Debenture, opposed confirmation.  The Confirmation Opinion rejected all of the Noteholders' arguments and approved the Settlement ("I conclude that the DCL Plan Settlement should be approved because it is fair, reasonable and in the best interest of the Debtor's estates and it is properly part of the DCL Plan pursuant to Bankruptcy Code § 1123(b)(3)(A)." *In re Tribune Co.*, 464 B.R. at 176).  The ultimate result, the fruits of many parties' efforts over many months, was opposed vigorously by Law Debenture.  The vigorous pursuit of one's own interests does not translate into a substantial contribution.

## II.  The Fees Requested are Unreasonable

### A.     An Application for Substantial Contribution Must Comply With Compensation Rules and Guidelines

42.     Should the Court determine that (1) Law Debenture is eligible to receive administrative expense status for its professionals' reasonable fees and actual, necessary expenses under Section 503(b); (2) Law Debenture has made a substantial contribution; and (3) that  Law Debenture is entitled to receive administrative-expense status for its professionals reasonable fees or actual, necessary expenses, then the U.S. Trustee submits that the fees submitted by Law Debenture are not reasonable and should not be allowed.

43.     Section 503(b)(4) of the Bankruptcy Code provides for the allowance of reasonable compensation for the "attorney or accountant" of  parties who have made a substantial contribution in a case.  A party rendering a substantial contribution in a case may not seek recovery of the fees of

professionals who are not attorneys or accountants. *See In re Summit Metals, Inc., supra* (fees of management consulting firm denied); *In re Granite Partners, supra* (fees of financial advisor disallowed).

44.    An entity seeking compensation for a substantial contribution must comply with the same standards as retained professionals in any application for reimbursement. *See In re Worldwide Direct, Inc.*, 334 B.R. 112, 120 (Bankr. D. Del. 2005) ("a request for an administrative claim under section 503(b) requires the same level of documentation and substantiation as a request for compensation under section 330.    Del Bankr. L.R. 2016-2(a)(ii)."); *In re Syntax-Brillian Corporation,* 2009 WL 1606474 (Bankr. D. Del. 2009); *In re Granite Partners*, 213 B.R. at 447 ("[T]he same documentation and substantiation requirements apply to substantial contribution claims as apply to requests for compensation under section 330.").  Paragraph 93 of the Motion states that Law Debenture and its professionals "do not keep time records differentiated by activity on a daily basis in the ordinary course of business," requests a waiver of timekeeping requirements, and suggests that *In re Worldwide Direct, Inc.* stands for the proposition that such a waiver can be granted.  The holding in *Worldwide Direct, Inc.*,  was exactly the opposite of what Law Debenture suggests.  The professionals Law Debenture is seeking compensation for are well known to the Court.  These firms have appeared in numerous cases before the court and hold themselves out to be experienced bankruptcy professionals.   It is disingenuous for Law Debenture to claim its professionals do not ordinarily keep time records  complying with the applicable rules and guidelines.

45.    Section 330(a)(3) of the Code provides that, "in determining the amount of compensation to be awarded, the court shall consider the nature, the extent, and the value of such

services, taking into account all relevant factors, including:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the service was rendered toward the completion of,
> or beneficial at the time at which the service was rendered
> toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed; and
> (E) whether the compensation is reasonable
> based on the customary compensation charged
> by comparably skilled practitioners in cases
> other than cases under this title.

11 U.S.C. § 330(a)(3).

46.    Section 330(a)(2) provides that "[t]he court may, on its own motion or on the motion

of the United States Trustee for the District or Region, the trustee for the estate, or any other party in

interest, award compensation that is less than the amount of compensation that is requested."  In *In*

*re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994), the Third Circuit identified

the Bankruptcy Court's independent duty to review fee requests: "[W]e think the bankruptcy court

has a *duty* to review fee applications, notwithstanding the absence of objections by the United States

trustee, creditors, or any other interested party, a duty which the Code does not expressly lay out but

which we believe derives from the court's inherent obligation to monitor the debtor's estate and to

serve the public interest."

47.    Services rendered that are necessary, duplicative or that are not reasonably likely to

benefit the debtor's estate are not compensable.  In *In re Top Grade Sausage, Inc.*, 227 F. 3d 123 (3d

Cir. 2000), services rendered by debtor's counsel where a trustee had been appointed were

disallowed in their entirety.   "[T]he debtor's attorney must show that the representation was

reasonably likely to benefit the debtor's estate." *Id.* at 132.

19

48.    Federal Rule of Bankruptcy Procedure 2016(a) provides in pertinent part: "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Local Bankruptcy Rule 2016-2(a)(ii) applies to "Any request of an entity for payment of an administrative expense under 11 U.S.C. §503(b)(3) or 503(b)(4)." Local Bankruptcy Rule 2016-2 (d) specifies the information to be included in the application, including but not limited to disclosing the activity (e.g. phone call or research; Local Rule 2016-2(d)(v)), the subject of the activity (e.g. exclusivity motion, section 341 meeting; Local Rule 2016-2(d)(vi), identification of all meetings and participant at the meeting (Local Rule 2016-2(d)(ix)), and entries should not be lumped- each activity shall have a separate description and a time allotment  (Local Rule 2016-2(d)(vii).

49.    The U.S. Trustee Guidelines For Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330 (Appendix A to 28 C.F.R. §58; the "U.S. Trustee Guidelines" ) provide: "Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the subject of the hearing or conference. If more than one professional from the applicant or firm attends a hearing or conference, the applicant should explain the need for multiple attendees."

### B.      KBTF's Fees Are Unreasonable

50.    Exhibit G attached to the Motion contains over 160 pages of KBTF timesheets and expenses. Attached hereto as Exhibit "A" is a copy of KBTF's representations about its extensive bankruptcy experience.[11] Notwithstanding its extensive bankruptcy experience, the KBTF time and

---

11 Page 3 of Exhibit A identifies KBTF's participation in this case.  The last sentence of the Tribune Company entry reads:  "Kasowitz is currently appealing certain aspects of the confirmed plan."

expense submissions fail to comply with the applicable rules and guidelines.

51.     KBTF's timesheets have not divided the activities into project categories as required by Local Rule 2016-2(d)(i), and (b)(4) of the U.S. Trustee Guidelines.  Without dividing the request into categories, it is not possible to determine what services were performed in what category.  For example, paragraphs 21 through 25 discuss Law Debenture's activities in connection with the 2004 Motion.  Because these paragraphs do not comply with the rules, it is not possible to ascertain whether the time and charges associated with this activity to determine their reasonableness.  *See In re Worldwide Direct*, 334 B.R. at 120 ("The Court will consider the time records as submitted, but 'should not be obliged to pick apart the fee application to explain which services are not compensable; the [applicant] is required to prove, by a preponderance of the evidence, which services are.'"); *see also In re Summit Metals, Inc.*, 379 B.R. at 54 ("Local Rule 2016-2 provides guidance to applicants.").

52.     KBTF's failure to divide its activities into categories makes it difficult to ferret out time that may be unrelated to the subject matter of the Motion.  For example, page 12 contains a number of entries related to  "work on Cubs issues."  The entries on page 12 referencing the Cubs total 19.3 hours and seek payment of $13,192.50.  Nowhere in the Motion is there any discussion of the Cubs or any services that Law Debenture or its professionals allegedly rendered regarding the Cubs that may amount to a substantial contribution.  The 120 pages of timesheets contain many other entries that do not appear related to the subject matter of the Motion.  Another example of billing time unrelated to the subject matter of the services for which compensation is sought appears on page 100.  On April 5, 2010, $1,898 was charged for "Review of Centerbridge documents."  Centerbridge was the controlling Noteholder.

53.     Local Bankruptcy Rule 2016-2(d)(ii), (v) and (vi) require, respectively, that

timesheets be detailed, include the type of activity, and describe the subject matter. The U.S. Trustee Guidelines at (b)(4)(v) contain similar requirements. The Motion is replete with vague or incomplete entries on virtually every page. Some representative examples follow. On page 2, Andrew Glenn made the following entry on May 27, 2009: "Work on discovery; mtgs. w/DSR." On page 12, Michael Rosenbloom made the following entry on September 17, 2009: "Review transaction documents; draft memo re transactions." What transactions were reviewed? To whom was the memo written? This vague entry resulted in charges of $5,265. On page 19, Yanina Markova billed 8.4 hours for "Document review" on October 13, 2009. On page 42, David Rosner billed $4,725 on November 30, 2009 to "Address motions/prep/hearings, discovery analysis, 2019 issues." On page 43, Sheron Korpus billed $4,125 on December 1, 2009, for "Review background materials." On January 22, 2010, on page 77, David Rosner billed 1.1 hour for "Work re depos, discovery, emails re MIP, calls re same." The subject matter of the depositions and discovery is not disclosed, nor are the recipients or senders of emails and phone calls. On page 89, Andrew Glenn billed 1.5 hours to "Prepare for hearing; related calls/e-mails." The subject matter of the hearing is not disclosed. The subject matter of the emails and the identities of the senders or recipients are not disclosed. On page 100, David Rosner logged an entry on April 29, 2010, reading only "Call w/Viv". On page 118, David Rosner billed 1 hour to "Call w/creditors, call w/litigation team re strategy meet re same; outline case responses and points for M-S." The creditors are not identified.

54.    Local Rule 2016-2(d)(vii) bars lumping--each activity shall have its own time allotment. The U. S. Trustee Guidelines state: "Services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." Lumping is permitted only when the total time logged is .5 of an hour or less. Virtually every page of the KBTF timesheets contains lumped entries. Some representative examples follow. On page 2, Andrew Glenn lumped

22

two hours on May 26, 2009: "Review UST notice of appointment; internal mtgs; work on 2004; call w/clients." This entry suffers from vagueness as well. At page 17, on October 7, 2009, David Rosner lumped 9 hours of time for charges of $7,875: "Work re fact, legal issue memo, prep re committee meeting, theories of liability, meet w/CB, call emails w/team, review standing case law, meet w/Committee." On December 7, 2009, Christine Montenegro lumped 9.8 hours on what appear to be six discrete matters: "Conf. w/M. Stein re potential causes of action and drafting of the complaint; conf. with K. Hardiman re aiding and abetting and breach of fiduciary duty research; conf. w. P. Burgo re research re badges of fraud, Bank holdings act and equitable disallowance; review Tribune Board minutes and director related documents; draft complaint." On Jaunary 13, 2010, David Rosner made the following lumped entry on page 69: "TRB meeting w/company, meet w/client, review outcomes, assess basis for settlement, call w/company, review examiner motion, work re related matters." This entry also suffers from vagueness. On page 98, Christine Montenegro lumped 6.2 hours of time on March 23, 2010: "Conf. w/S. Korpus and M. Stein re objection to debtor's plan and offer of proof; research and review case law/statutes re objection to plan; conf. w/M. Stein re offer of proof evidence." On May 24, 2010, Andrew Glenn lumped 8.9 hours of time shown on page 109 as follows: "E-mails w/examiner re: briefing issues; work on brief; internal mtgs; finalize; calls w/Akin, CB."

55.     Local Rule 2016-2(d)(viii) requires travel time to be billed at no more than 50% of regular hourly rates. It is unclear if this has been done. On December 1, 2009, for example, David Rosner billed 9.1 hours: "Travel to/from, prep for hearings on TRB motions; outline litigation and strategy." It is not possible to tell if travel time has been billed at half-time since this entry is lumped. Matthew Stein billed 9.7 hours on the same date including: "Hearing in Delaware re bank fee motion." Since this entry is also lumped, it is not possible to tell if travel time has been billed at

50%.  Matthew Stein lumped 10.9 hours on February 18, 2010, including "Hearing re:  Debtor's exclusivity motion."  It is unclear how much of this lumped time entry involves travel and if it was billed at half rate.  On March 26, 2010, as shown on page 99, Daniel Filman, David Rosner and Sheron Korpus all attended a hearing in Delaware logging 7.5, 11 and 8 hours respectively.  It is impossible to tell how the travel time was billed.  Matthew Stein and Andrew Glenn billed 9.7 and 6.5 hours respectively on July 29, 2010, to attend the hearing on the Examiner's Report.  It is impossible to tell if travel time has been billed at half rate.

56.     There are time entries where the time spent may have been excessive.  For example, on page 56, Michelle Vladimirsky billed $1,296 for 3.6 hours of research on December 21, 2009, to "Research re standing and whether section 550 applies to avoidance actions."  The beginning of Bankruptcy Code Section 550(a) reads: "Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover . . . ."  It should not have taken 3.6 hours to determine that Section 550 applies to avoiding actions.  Maybe it did not in fact take that much time, but the entry is lumped.

57.     There is duplication within the Motion.  The most extensive duplication takes place in connection with members of KBTF reviewing the Examiner's Report.  Between July 26 and August 31, 2010, KBTF billed a collective 295.2 hours resulting in charges of $143,675 for reviewing the report.  In addition to the unreasonableness of these charges, it is difficult to fathom how review of the Examiner's report by KBTF personnel rendered a substantial contribution to the estate.

58.     Expenses submitted for meals or hotels do not provide adequate information to determine the reasonable value per person of the meal.  For example, page 33 of the KBTF expense summary shows that on February 5, 2010, three business meals were charged at $98.61, $246.83 and $138.24, respectively.  The number of people attending has not been disclosed so it is not possible to

24

determine if these expenses comply with the applicable guidelines.

59.    Pages 66-71 contain $57,562.41 in Document Reproduction charges.    Local Bankruptcy Rule 2016-2(e)(iii) limits copy charges to ten cents per page and outgoing fax transmissions to $1 per page.    The pages in question do not indicate the number of copies made. There is no way to determine from the Exhibits whether or not the Local Rules have been complied with.

## C.  Law Debenture Did Not Make A Substantial Contribution

60.    Law Debenture itself seeks reimbursement of $13,470 in substantial contribution compensation for time spent by its personnel.    Even if it were shown to have made a substantial contribution, which Law Debenture has not, it may only recover the fees of its attorneys and accountants. It may not recover charges for time spent by its own personnel. *See In re Syntax-Brillian Corporation,* 2009 WL 1606474 (Bankr. D. Del. 2009) (creditor denied compensation for own time); *In re Granite Partners*, *supra* (fees of financial advisor denied).  Law Debenture was not a member of the Committee and may only recover, if at all, under Section 503(b)(4) of the Code. Section 503(b)(4) limits recovery to attorneys and accountants fees.  Law Debenture's request for $13,470 in substantial contribution compensation for its own time must be denied.

## D.  MSG Is Not Entitled to Compensation

61.    MSG is a financial advisor.  Even if Law Debenture prevails on its claim that it made a substantial contribution herein, being neither an attorney or accountant, Law Debenture may not seek compensation for its services pursuant to the plain meaning of 11 U.S.C. §503(b)(4).  *See In re Syntax-Brillian, supra*; *In re Granite Partners*, *supra* (fees of financial advisor denied).

62.     Even if MSG may be entitled to compensation, MSG's timesheets, attached to the Motion as Exhibit "I", do not comply with the Local Rules or U.S. Trustee Guidelines discussed above. Every entry is vague. "Reviewed Documents", "Analyzed Data", or "Conducted Research" are typical entries. This is as vague as it gets. The services have not been placed into categories. There is simply no way to determine what if anything MSG did other than review documents.

## V. CONCLUSION

63.     Law Debenture did not make a substantial contribution to this case. Law Debenture, holder of a $233 million claim representing by its own admission 18% of the senior bondholder debt, acted primarily in its own interest.   Although it participated in this case to advance its position, extensive participation does not translate into a substantial contribution. The record shows that many parties participated in this case over an extended period. Law Debenture has appealed the very results it claims credit for in the Motion. Law Debenture and its professionals massively duplicated the efforts of other parties, primarily the efforts of the Committee.

64.     The Motion does not comply with the Local Bankruptcy Rules for the District of Delaware or the U.S. Trustee Guidelines governing fee applications. The exhibits do not comply with the applicable rules. and it is impossible to determine the reasonableness of the compensation sought. Even if it can be found that Law Debenture made a substantial contribution in this case, the Motion should be denied because Law Debenture has not met its burden of proof.

65.     Finally, as a matter of law, even if Law Debenture is found to have made a substantial contribution in this case, Section 503(b)(4) limits recovery to the reasonable fees of its attorneys and

accountants only.  Fees for time spent by Law Debenture's own personnel and the fees of MSG, a

financial advisor and not an accountant, are not recoverable.

WHEREFORE the U.S. Trustee requests that this Court issue an order denying the Motion

and for such other and further relief as the court deems just and proper.

Respectfully submitted,

**Roberta A. DeAngelis**
**UNITED STATES TRUSTEE REGION THREE**


Date: April 8, 2013          **BY:**_____/s/_____

David L. Buchbinder., Esquire
Trial Attorney
J. Caleb Boggs Federal Building
844 King Street, Room 2207, Lockbox 35
Wilmington, DE  19801
(302) 573-6491
(302) 573-6497 (Fax)