# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 Cases |
|  | ) |  |
| TRIBUNE COMPANY, et al., | ) | Case No. 08-13141 (KJC) |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |

**WILMINGTON TRUST COMPANY'S BRIEF IN OPPOSITION
TO REORGANIZED DEBTORS' OBJECTION TO CLAIM FOR PAYMENT
OF FEES AND EXPENSES DUE TO ITS OUTSIDE LEGAL COUNSEL UNDER
<u>SECTION 9.1.3 OF THE PLAN OF REORGANIZATION FOR TRIBUNE COMPANY</u>**

SULLIVAN HAZELTINE ALLINSON LLC
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market Street, Suite 1300
Wilmington, DE 19801
302-428-8191

and

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

and

James W. Stoll
Ryan S. Moore
One Financial Center
Boston, MA 02111
617-856-8200

*Counsel for Wilmington Trust Company, solely
in its capacity as successor Indenture Trustee
for the PHONES Notes*

**INTRODUCTION**

Section 9.1.3 of the Fourth Amended Joint Plan Of Reorganization (the "Plan") [D.I. 12072] for Tribune Company and Its Subsidiaries (the "Reorganized Debtors" or the "Debtors") provides that "[n]o later than forty-five (45) days after the Effective Date, counsel to the Creditors' Committee shall submit to Reorganized Tribune…statements of the Creditors' Committee Member Fee/Expense Claims." Plan, § 9.1.3. Subject to that provision of the Plan, the "amount due under such statement…shall be repaid by Reorganized Tribune within thirty (30) days of submission of such statement." That section bifurcated fees into two categories: (i) "Service Fees" related to Committee service and (ii) "Confirmation Litigation Fees" related to "amounts incurred in connection with discovery (including deposition testimony) sought from members of the Creditors' Committee in connection with litigation related to confirmation of [the] Plan." Id.

Pursuant to that provision, on January 29, 2013, as a member of the Debtors' Official Committee of Unsecured Creditors (the "Committee"), Wilmington Trust Company ("Wilmington Trust" or "WTC"), as Successor Indenture Trustee for the Exchangeable Subordinated Debentures due 2029 (the "PHONES") issued pursuant to an indenture dated April 1, 1999, executed by the Tribune Company, submitted a request with accompanying time detail, attached as Exhibits 1 and 2 to the Declaration of Gordon Novod ("Novod Decl."),[1] comprised of $1,065,071.77 for Service Fees and $614,853.00 for Confirmation Litigation Fees. In response to that request, on February 28, 2011, the Reorganized Debtors sent a written response, attached hereto as Exhibit A, which agreed to the allowance of $763,208.47 of Service Fees (and on March 5, 2013, paid such amount), while objecting to the remaining balance of Service Fees

---

[1] The Novod Decl. is submitted contemporaneously herewith by WTC in support of the Opposition.

1

sought ($301,863.30), and the Confirmation Litigation Fees in their entirety. That letter objection rejected payment of Wilmington Trust's Confirmation Litigation Fees request for payment under Section 9.1.3 of the Plan for two primary reasons: (1) because Wilmington Trust's Confirmation Litigation Fees were not incurred solely in its capacity as a member of the Committee; and (2) because Wilmington Trust allegedly engaged in a "charade" in connection with the Aurelius Capital Management ("Aurelius") deposition subpoena while ignoring the fact that WTC incurred fees related to Aurelius' litigation hold, Committee clawback issues and the Debtors' Rule 30(b)(6) deposition notice to WTC. Both objections are unfounded. First, Wilmington Trust's Confirmation Litigation Fees were incurred in its capacity as a member of the Committee by responding to discovery materials that were served on it by the Reorganized Debtors on an expedited timeframe. Second, Wilmington Trust similarly incurred fees in response to a deposition subpoena served by Aurelius. Wilmington Trust did not have the power to control either of these parties. It incurred fees fairly, reasonably, and in response to the demands of others.

On March 15, 2013, the Reorganized Debtors followed up their letter objection with the formal filing to the Court, entitled Reorganized Debtors' Objection to Creditors' Committee Member Fee/Expense Claims Asserted by (A) Deutsche Bank Trust Company Americas and (B) Wilmington Trust Company (the "Objection"). The Objection reiterates these earlier arguments as well as the argument that the unpaid portion of WTC's Services Fees were not performed in WTC's capacity as a member of the Committee. This opposition (the "Opposition") to the Objection follows. WTC hereby seeks $376,894.50 in Confirmation Litigation Fees[2] and the balance of WTC's claim for its Service Fees, $301,863.30.

---

[2] After thoroughly reviewing the time in support of WTC's claim for Confirmation Litigation Fees, WTC hereby withdraws $237,958.50 for the reason set forth in paragraph 10 of the Novod Decl.

**RELEVANT FACTUAL BACKGROUND**

On October 15, 2010, Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), as counsel to Aurelius, served Wilmington Trust and Brown Rudnick, as Wilmington Trust's counsel, with "litigation hold" notices. Novod Decl., ¶16. Substantially similar notices were served on Chadbourne & Parke LLP ("Chadbourne"), as Committee's counsel, as well as all other Committee professionals. Id. Aurelius served "litigation hold" notices on the other members of the Committee. Id. On November 2, 2010, Wilmington Trust and Brown Rudnick also received "litigation hold" notices from counsel for Angelo Gordon and Oaktree. Id.

Upon receipt of the litigation hold notices, Wilmington Trust and its counsel, Brown Rudnick, incurred fees and expenses related to prompt compliance with the litigation hold notices. Id. at ¶17. Brown Rudnick and Wilmington Trust each took steps to implement a "lock" on all documents to ensure document preservation. Id. In addition, Brown Rudnick attorneys conferred with Wilmington Trust's in-house counsel concerning compliance with the litigation hold notices. Id. Wilmington Trust, through counsel and in its capacity as a member of the Committee, received numerous inquiries from Chadbourne with respect to compliance with Aurelius' "litigation hold" notice. Id. Brown Rudnick incurred $5,413 in fees for services related to this issue. Id.

From December 9, 2010 through December 17, 2010, document requests and subpoenas from Aurelius and/or Law Debenture were served upon a number of members of the Committee. Id. at ¶23. These subpoenas and document requests sought discovery of documents on a wide range of topics concerning the Debtors, the LBO and other topics and did not distinguish whether such documents were being sought from the recipient solely in their capacity as a Committee

member or as a creditor of the Debtors. Id. Nowhere in the instructions to the subpoenas are the document requests limited to each creditor solely in their capacities as Committee members. Id.

On December 17, 2010, the Debtors served a subpoena duces tecum on Brown Rudnick and on December 19, 2010, the Debtors served a separate document request on Wilmington Trust, in its capacity as the successor indenture trustee for the PHONES. Id. The Debtors' document demands of Wilmington Trust and subpoena of Brown Rudnick each contained 55 different requests. Id. Of these requests, 33 were plainly applicable to Wilmington Trust in all capacities, including as a Committee member, and the remaining 22 were related to activity as a Noteholder Plan Proponent. Id. Following the receipt of the Debtors' subpoena and document requests, Brown Rudnick provided copies of the document request and subpoena to Committee's counsel and to the Committee co-chairs. Id. at ¶24. That transmittal was required pursuant to the Committee's Bylaws. Id. In the face of wide ranging and broad discovery served on the Committee members and their individual counsel by both Aurelius and the Debtors, Wilmington Trust was well aware of its fiduciary duties and obligations as it responded to document requests. Id. This communication underscored Committee counsel's concern that each member had to preserve the Committee's privileges. Id. Following the receipt of the Debtors' subpoena and document requests, Brown Rudnick, as counsel to Wilmington Trust, incurred fees and expenses related to the compliance with the subpoena and document request. Id. at ¶25. These fees were the result of Brown Rudnick's (i) preparation and service of objections and responses to these demands, (ii) creation and negotiation of search terms and protocols, (iii) coordination of information technology support, and (iv) research of privilege questions and subsequent privilege determinations. Id. It is estimated that Brown Rudnick's fees and expenses for these activities were at least $68,000. Id.

In spite of WTC's efforts to narrow the search protocols, on January 6, 2011, WTC gave in to the Debtors' demands and initiated a search using eighty search terms for each of Brown Rudnick and Wilmington Trust. Id. at ¶¶27-31. Brown Rudnick worked with an e-discovery vendor to process the emails of nine Brown Rudnick custodians. Id. at ¶¶30-31. On January 14, 2011, Brown Rudnick, on behalf of itself and Wilmington Trust, met and conferred with counsel for the Debtors, counsel for JPMorgan, counsel for the Committee and counsel for Oaktree. Id. at ¶26. During that meet and confer, the topic of the production of documents that may contain Committee privileged information was discussed. Id. Brown Rudnick advised the DCL Plan Proponents that Brown Rudnick and Wilmington Trust would produce a privilege log on behalf of Brown Rudnick which would include documents that the Committee had asserted were privileged. Id.

From January 11, 2011 through January 18, 2011, Wilmington Trust and Brown Rudnick incurred substantial fees reviewing 73,399 Wilmington Trust documents and 95,055 Brown Rudnick documents in order to meet the January 18, 2011 production deadline. Id. at ¶32. In order to accomplish this review in the time frame requested, Brown Rudnick utilized twenty-seven timekeepers and expended 438.5 hours (an average of 16.24 hours per timekeeper) at a cost of $212,301. Id. As WTC had previously warned the Debtors, the search parameters were unnecessarily broad and captured many unresponsive documents. For example, because the Debtors insisted that Brown Rudnick and Wilmington Trust search the word "Committee," Brown Rudnick was forced to review approximately 20,000 documents that contained this word, and ultimately determined that substantially all of such documents would be excluded as either non-responsive or privileged Committee communications. Id. at ¶31. Ultimately, Brown Rudnick and Wilmington Trust produced collectively just over 4,000 pages of documents to the

Debtors. Id. at ¶32. Consistent with the requests of Committee counsel and with Wilmington Trust's obligations under the Committee's bylaws, as well as by agreement with the Debtors and Oaktree, Wilmington Trust withheld all Committee communications. Id.

After Wilmington Trust completed its own document production, on January 26, 2011, the Debtors served Wilmington Trust with a Rule 30(b)(6) deposition notice. Id. Ultimately the Debtors agreed to withdraw their Rule 30(b)(6) notice upon confirmation that no Wilmington Trust employee would be a witness at the confirmation trial. Id. Brown Rudnick incurred approximately $5,661 in fees accounting for 6.0 hours associated with preparing for meet and confers, meeting and conferring with the Debtors and follow-up tasks related thereto concerning the Debtors' Rule 30(b)(6) notice served upon Wilmington Trust. Id.

On February 8, 2011, Wilmington Trust's counsel learned that Committee's counsel had produced privileged communications between counsel for the Committee and counsel for Wilmington Trust. Id. at ¶18. To that end, Brown Rudnick raised the issue with Committee counsel who in return requested that Brown Rudnick provide it with the bates stamp numbers of the documents that Brown Rudnick believed should be clawed back. Id. Later that day, Brown Rudnick provided Chadbourne with the bates stamp ranges for twelve documents that Brown Rudnick believed should be clawed back. Id. On February 9, 2011, Committee counsel agreed with Brown Rudnick and indicated that it would claw back all the documents identified by Brown Rudnick. Id. Brown Rudnick incurred $7,035 in fees and expenses associated with the claw back of privileged Committee communications. Id.

In the months and weeks leading up to the 2011 confirmation trial, Aurelius served deposition notices upon five attorneys to various members of the Committee as well as six members of the Committee. Id. at ¶19. In that regard, one of the attorneys served was Gordon

6

Novod. Id. The subpoena, served on February 15, 2011 required Mr. Novod to sit for a deposition noticed for February 24, 2011, the second to last day of the discovery period under the plan scheduling order. Id. at ¶20. As required by the Committee's bylaws, Brown Rudnick promptly notified Committee counsel regarding the receipt of a subpoena, and participated in various conference calls with Committee counsel concerning Wilmington Trust's and Brown Rudnick's obligations under the Committee bylaws. Id. On February 17, 2011, the Committee filed a letter brief seeking to quash the subpoenas of Mr. Novod and Mr. Adler on a number of grounds. Id. Information Aurelius sought to solicit from Mr. Novod and Mr. Adler was based solely upon their representation of their respective clients as members of the Committee and as fact witnesses to events that transpired in the Committee room. Id. at ¶19. In the written papers and at oral argument on February 22, 2011, Aurelius' counsel stated, without qualification, that it sought to depose Adler and Novod solely to discover details concerning Committee deliberations and/or settlement negotiations and to test the veracity and credibility of Committee members who had already been deposed, regardless of whether they would support the Committee's contentions. Id. at ¶20. Moreover, Aurelius sought the depositions to discover Committee deliberations because the Committee's bylaws prohibited its members or counsel from discussing Committee deliberations without a subpoena. Id.

Wilmington Trust and Brown Rudnick incurred substantial fees in connection with the subpoena of Mr. Novod. Id. at ¶22. In particular, Brown Rudnick conducted various conference calls with Committee counsel and McCarter & English (Mr. Adler's firm) and prepared for the deposition during the ten day period leading up the Court's ruling on February 25, 2011. Id. at ¶21. Mr. Novod reviewed numerous documents in anticipation of his deposition and he and other Brown Rudnick attorneys further reviewed Committee minutes and memoranda, transcripts

7

of other Committee members who had been deposed, the Committee bylaws for privilege issues, and appeared at the Court's hearing on February 22, 2011 in connection with the Committee request to quash the Novod subpoena.  Id.  Brown Rudnick incurred approximately $47,666 in fees and expenses associated with the subpoena of Mr. Novod.  Id. at ¶ 21-22.

In addition, WTC seeks reimbursement for the unpaid balance of the Service Fees, which relates to, among other things, the disqualification of Chadbourne as Committee counsel at the mediation and Committee standing issues.  Novod Decl., Exhibit G to Exhibit 1, p. 4.

## ARGUMENT

A. **Brown Rudnick is entitled to payment of Confirmation Litigation Fees in connection with responding to Debtors' discovery.**

The Reorganized Debtors refuse to pay any of the Confirmation Litigation Fees related to discovery they served on WTC on the ground that the fees incurred were not solely in connection with WTC's status as a Committee member.  They support this position with two arguments.  First they say that in the opening paragraph of the pertinent document request they identify WTC as "WTC solely in its capacity as Indenture Trustee of the PHONES."  Their second argument is that they served WTC discovery because it was opposing the plan; thus, it could not be related to WTC as a Committee member.  Both arguments are unavailing.  The notion that sending a document request which names WTC "solely in its capacity as indenture trustee under the PHONES" somehow decides the issue of whether WTC was acting as a Committee member is preposterous.  Wilmington Trust was always identified as acting solely in its capacity as indenture trustee for the PHONES throughout these cases.  That's how it acts; it is a trustee.  That is, it does not appear in its corporate capacity; it appears solely in its trust capacity, whether acting as a Committee member or as the fiduciary to the PHONES note holders.  In fact, the Office of the United States Trustee appointed Wilmington Trust to the Committee "solely in its

8

capacity as successor indenture trustee for the PHONES and in no other capacity." Novod Decl., ¶23.  Even Brown Rudnick, counsel to WTC, routinely referred to WTC in briefs as "solely in its capacity as Indenture Trustee under the PHONES." Id.

In addition to their circular argument focusing on the words "indenture trustee" in the document requests at issue, the Reorganized Debtors argue that because Wilmington Trust opposed DCL plan, the discovery had nothing to do with its status as a Committee member. That argument cannot be taken seriously.  The Reorganized Debtors cite no case law to support the suggestion that a committee member acts in anything other than its capacity as a committee member simply because it dissents from the majority position of the committee.  If that were the case, the concept of a democratically run committee (i.e., majority rule) would be a farce. Moreover, simply because a committee member opposes positions taken by the committee does not suggest it is acting in anything other than its position as a committee member.  Each committee member has fiduciary responsibilities -- simply because the majority approves the course does not mean that the course is the right one or in the best interests of all creditors.  The process of securing the Examiner in this case establishes that proposition.

Finally, the document requests served by the Debtors belie their current position.  Out of the 55 requests, 33 implicated Wilmington Trust's role as a member of the Committee.  Novod Decl., ¶23.  It is only two years later, and now with the counsel of the attorneys who represented Oaktree throughout these cases, that Debtors characterize the request as being non-committee member related.  Had the Debtors wished to restrict their document request of Wilmington Trust and Brown Rudnick to non-Committee activities, the Debtors could have and should have done so.  Rather, the Debtors sent a substantial document request of which a minimum of 60% of the requests were framed so as to implicate Wilmington Trust's membership on the Committee, and

9

the remaining 40% were arguably applicable to Noteholder Plan issues only. Novod Decl., ¶23. The Debtors' approach caused the fees incurred to be intertwined between Committee-related activities (i.e., interaction with Committee counsel, Committee privilege issues, review of documents for production related to Committee issues, etc.), and arguably non-Committee related activities (i.e., review of documents related to Plan opposition). Id.

As a result of the sweeping document requests served by the Debtors on WTC, and the insistence on overly-broad electronic search terms (including the word "Committee" itself), Brown Rudnick was required to review more than 165,000 documents in less than a 10 day period. Novod Decl., ¶32. Foreseeably, Brown Rudnick utilized a substantial number of reviewers (27) to meet this deadline, resulting in approximately $212,000 in expense. Id. For the Reorganized Debtors to now suggest that the document requests were not solely related to WTC's role as a Committee member because the Debtors chose to mingle requests that also implicated WTC's role as the fiduciaries of its bondholders is underhanded.

B. **The Confirmation Litigation Fees incurred in connection with the Aurelius subpoena are recoverable.**

The Reorganized Debtors also attempt to avoid reimbursing WTC for fees and expenses incurred in connection with the Aurelius subpoena by declaring it a "charade."[3] It is not clear what the Reorganized Debtors mean by that, but the undisputed facts are that Aurelius subpoenaed various Committee members and their attorneys (Brown Rudnick had no involvement in or control over that decision), that Aurelius represented to the Court that it sought Mr. Novod's testimony solely with respect to Committee deliberations, and that every

---

[3] The Reorganized Debtors ignore the fact that WTC incurred fees related to Aurelius' litigation hold, Committee clawback issues and the Debtors' Rule 30(b)(6) deposition notice to WTC.

10

Committee member's fees relating to that subpoena have been reimbursed, except for WTC's. Novod Decl., ¶¶19-20.

The Reorganized Debtors also challenge the fees on the grounds that Mr. Novod should have done nothing to prepare for the deposition until after the court ruled on the Committee's motion to quash. Objection at 9, 11. The Reorganized Debtors' suggested approach would have been highly irresponsible. The deposition subpoena was served on Mr. Novod on February 15, scheduling his deposition for February 24th. Novod Decl., ¶¶20, 22. The Committee filed its motion to quash on the 17th; the Court heard oral argument on the 22nd and ruled on the 25th. Id. Given the tight timeframe, the uncertainty of when the deposition would take place, and the typically large amount of materials to be reviewed, reasonable expenses of $47,666 were incurred. Id. at ¶22.

C. **Debtors should be compelled to treat WTC consistently with other Committee members.**

In assessing the Reorganized Debtors' objection to Wilmington Trust's Confirmation Litigation Fees, it is fair to compare what it argues is deficient with WTC's claim and how it has treated others. One example will suffice.

Committee member, William Niese, is a party to the Retiree Claimant Settlement Agreement and a member of the TM Retirees' ad hoc group represented by Teitelbaum & Baskin LLP ("Teitelbaum & Baskin"). Novod Decl., ¶36. Teitelbaum represented Niese on the Committee. Id. at ¶34. The subpoenas for Mr. Niese and Teitelbaum and Baskin were not limited to Committee service; as with subpoenas served on WTC, the requests went far beyond Mr. Niese's capacity as a Committee member. Id. at ¶36.

For example, request number 73 seeks all documents relating to the Retiree Claimant Settlement Agreement. Id. Mr. Niese did not have any Committee documents related to this

topic, as he was clearly conflicted from Committee's deliberation concerning his own settlement with the Reorganized Debtors and acted in his individual capacity in determining whether to settle with the Reorganized Debtors.  Id.  Similarly, the Teitelbaum & Baskin subpoena was served upon Teitelbaum and Baskin, and, by its terms, was not limited to Teitelbaum & Baskin's representation of Mr. Niese solely in his capacity as a Committee member.  Id.  Counsel to Law Debenture, conducting a meet and confer for Aurelius with Mr. Niese, rejected attempts to limit discovery to documents received in any other capacity than a Committee member.  Id.  Therefore, Mr. Teitelbaum undisputedly incurred Confirmation Litigation Fees that were paid by the Debtors' estates when he was not acting for Mr. Niese solely in his capacity as a member of the Committee.  Yet the Reorganized Debtors paid all of Mr. Niese's Confirmation Litigation Fees, including those of Teitelbaum and Baskin.  Given that fact, the Reorganized Debtors' objection to Wilmington Trust's claim appears plainly based on something other than a belief that it falls outside of the language of § 9.1.3 of the Plan.  The Reorganized Debtors ought not to be allowed to treat Committee members differently as some sort of exercise in subjective punitive judgment.

D.     **Brown Rudnick is entitled to payment of the unpaid remainder of the Service Fees.**

The Reorganized Debtors object to the unpaid remainder of Service Fees (i.e., fees relating to, among others, the disqualification of Chadbourne as Committee counsel at the mediation and Committee standing issues) because these fees were incurred arguably in dissent of the Committee and therefore "cannot be said to have been incurred solely in WTC's capacity as a Creditors' Committee member."  Objection at 13.  As discussed earlier, the Reorganized Debtors cite no case law to support the suggestion that a committee member acts in anything other than its capacity as a committee member simply because it dissents from the majority position of the committee.  WTC, as a Committee member, has fiduciary responsibilities --

simply because the majority approves the course does not mean that the course is the right one or in the best interests of all creditors.

## CONCLUSION

WHEREAS, for the foregoing reasons, Wilmington Trust respectfully requests payment for the Confirmation Litigation Fees and Service Fees described herein.

Date:   April 10, 2013
        Wilmington, DE                    **SULLIVAN · HAZELTINE · ALLINSON LLC**

                                          */s/ William D. Sullivan*
                                          William D. Sullivan (No. 2820)
                                          901 North Market Street, Suite 1300
                                          Wilmington, DE 19801
                                          Tel: (302) 428-8191
                                          Fax: (302) 428-8195

                                          and

                                          BROWN RUDNICK LLP
                                          Robert J. Stark
                                          Martin S. Siegel
                                          Gordon Z. Novod
                                          Seven Times Square
                                          New York, NY 10036
                                          212-209-4800

                                          and

                                          James W. Stoll
                                          Ryan S. Moore
                                          One Financial Center
                                          Boston, MA 02111
                                          617-856-8200

                                          *Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*