# JONES DAY

555 SOUTH FLOWER STREET · FIFTIETH FLOOR · LOS ANGELES, CALIFORNIA 90071.2300

TELEPHONE: +1.213.489.3939 · FACSIMILE: +1.213.243.2539

Direct Number: (213) 243-2508
jmester@jonesday.com

February 28, 2013

<u>VIA E-MAIL</u>

David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

      Re:    <u>In re Tribune Company, et al. (Case No. 08-13141)</u>

Dear David:

      We have been retained to assist with various matters relating to the Reorganized Debtors. In that regard, working with Sidley Austin, we have reviewed the materials in your letter dated January 29, 2013, which submitted the Creditors' Committee Member Fee/Expense Claims pursuant to Section 9.1.3 of the Fourth Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries (As Modified July 19, 2012) (the "Plan").[1]

      Based upon that review, the Reorganized Debtors have a number of objections to the amounts requested by Deutsche Bank Trust Company Americas ("DBTCA") and Wilmington Trust Company ("WTC" and together with DBTCA, the "Trustees"). Those objections are summarized below.

      Upon your review, we invite you (or the Trustees) to discuss the objections with us in an effort to resolve some or all of them in the manner contemplated in the Plan.

      **A.**    **The Trustees' Litigation Expense Claims.**

      The Trustees seek reimbursement of fees and expenses incurred "in connection with litigation related to confirmation" of the Plan in the aggregate amount of $1,531,943.02, with DBTCA requesting $917,090.02 and WTC requesting $614,853.00 (collectively, the "<u>Litigation Expense Claims</u>"). These requests are inappropriate because such amounts are not "Creditors' Committee Member Fee/Expense Claims" as defined in the Plan.

      Specifically, the Creditors' Committee Member Fee/Expense Claims that are reimbursable pursuant to Section 9.1.3 of the Plan are limited to "amounts incurred by individual members of the Creditors' Committee *solely in their capacity as members of the Creditors'*

---

[1]   Capitalized terms not defined in this letter have the meanings given to them in the Plan.

ALKHOBAR · ATLANTA · BEIJING · BOSTON · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · DUBAI
DÜSSELDORF · FRANKFURT · HONG KONG · HOUSTON · IRVINE · JEDDAH · LONDON · LOS ANGELES · MADRID
MEXICO CITY · MILAN · MOSCOW · MUNICH · NEW YORK · PARIS · PITTSBURGH · RIYADH · SAN DIEGO
SAN FRANCISCO · SÃO PAULO · SHANGHAI · SILICON VALLEY · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON

JONES DAY

David M. LeMay, Esq.
February 28, 2013
Page 2

*Committee* on and after the Petition Date through and including the Effective Date for the reasonable and documented fees, costs and expenses of their individual outside legal and/or financial advisors." Plan § 1.1.52 (emphasis added).

In their Litigation Expense Claims, the Trustees attempt to circumvent that fundamental limitation, claiming that Section 9.1.3 of the Plan provides for reimbursement of *additional* amounts for any and all fees and expenses incurred in connection with discovery regarding the Plan, even where that discovery was not sought from the Trustees in their capacity as members of the Creditors' Committee. *See* DBTCA Request at 4; WTC Request at 5.

The Plan, however, does not provide for this, as shown by the first two sentences of Section 9.1.3:

> No later than forty-five (45) days after the Effective Date, counsel to the Creditors' Committee shall submit to Reorganized Tribune and the United States Trustee, *reasonably detailed statements of the Creditors' Committee Member Fee/Expense Claims*, which statements shall include descriptions of services provided in summary form without individual time records. Subject to the provisions of this Section 9.1.3, *amounts due under each such statement*, (up to an aggregate amount not to exceed $6,000,000, plus reasonable amounts incurred in connection with discovery (including deposition testimony) sought from members of the Creditors' Committee in connection with litigation related to confirmation of this Plan) *shall be paid* by Reorganized Tribune within thirty (30) days of submission of *such statement*.

Plan § 9.1.3 (emphasis added).

Contrary to the Trustees' contentions, the parenthetical language regarding discovery in the second sentence of Section 9.1.3 of the Plan does not create a new category of fees and expenses that are reimbursable without regard to whether they were incurred by the Trustees "solely in their capacity as members of the Creditors' Committee." Rather, that language merely provides that the $6,000,000 aggregate limit on Creditors' Committee Member Fee/Expense Claims does not apply to "reasonable amounts incurred in connection with discovery (including deposition testimony) sought from members of the Creditors' Committee in connection with litigation related to confirmation of this Plan." This is made clear by use of phrase "such statement" twice in the applicable sentence, in each case referring to the statements of Creditors' Committee Member Fee/Expense Claims required by the first sentence of Section 9.1.3.

JONES DAY

David M. LeMay, Esq.
February 28, 2013
Page 3

Because the term "Creditors' Committee Member's Fee/Expense Claims" includes a fundamental limitation that reimbursable fees and expenses must be incurred solely in the claimant's capacity as a member of the Creditors' Committee, fees and expenses incurred in other capacities are not reimbursable under Section 9.1.3. Any other reading would be nonsensical, as it would mean that the Proponents prospectively agreed to pay fees and expenses incurred by the Trustees in their efforts to defeat confirmation of the Plan.

As shown below, the Trustees did not incur the fees and expenses that are the subject of the Litigation Expense Claims in their capacities as members of the Creditors' Committee, but rather in their capacities as indenture trustees under their respective indentures and/or as co-proponents of the Noteholder Plan – neither of which are reimbursable under Section 9.1.3.[2]

### 1. DBTCA's Litigation Expenses Were Not Incurred Solely In Its Capacity As A Creditors' Committee Member.

DBTCA's Litigation Expense Claim seeks $884,613.50 in fees and $32,476.52 in expenses. It is evident from DBTCA's description of those fees and expenses that they were not incurred solely in DBTCA's capacity as a member of the Creditors' Committee.

First, DBTCA seeks reimbursement for fees and expenses incurred in responding to the Debtors' (a) First Request for Production of Documents to DBTCA and (b) First Request for Production of Documents to McCarter & English LLP. Those document requests were not directed to DBTCA in its capacity as a member of the Creditors' Committee. Rather, the Debtors expressly sought documents from DBTCA "*in its capacity as successor indenture trustee* for certain series of Senior Notes." (emphasis added). Moreover, the discovery requests had nothing to do with DBTCA's service as a Committee member. Rather, the Debtors sought discovery from DBTCA for the purpose of opposing the Noteholder Plan (of which DBTCA was a co-proponent) and responding to DBTCA's objections to confirmation of the Plan. Given that the Creditors' Committee was a co-proponent of the Plan, there was no need for the Debtors to take discovery of members of the Creditors' Committee in their capacities as such.

Next, DBTCA seeks reimbursement for fees and expenses incurred in responding to Aurelius Capital Management's ("Aurelius") subpoena of David Adler. DBTCA Request at 6. Here too, this request had nothing to do with DBTCA's service as a member of the Creditors' Committee, and DBTCA hardly can claim fees and expenses incurred in responding to a subpoena manufactured by its co-proponent to further its efforts to confirm the Noteholder Plan.

---

[2] In contrast, the confirmation related litigation expenses incurred by the other members of the Creditors' Committee all appear to be incurred solely in their capacities as members and therefore fall within the scope of reimbursable Creditors' Committee Member Fee/Expense Claims.

LAI-3186586v3

David M. LeMay, Esq.
February 28, 2013
Page 4

Had Aurelius truly sought information from DBTCA in its capacity as a member of the Creditors' Committee, it would have sought to depose DBTCA, the actual member of the Creditors' Committee, rather than its outside counsel Mr. Adler. Moreover, the Creditors' Committee successfully quashed the subpoena. DBTCA had no reason to incur, and should not have incurred, any fees preparing for a deposition until resolution of the Creditors' Committee's motion to quash.

Finally, DBTCA seeks reimbursement of fees and expenses incurred in responding to discovery served by WTC on DBTCA in connection with the Allocation Disputes. Here again, DBTCA has no basis for seeking reimbursement of these amounts. To start, WTC's Request for Production of Documents and First Set of Interrogatories propounded on DBTCA in connection with the Allocation Disputes expressly state that they were directed to DBTCA "*in its capacity as former Indenture Trustee* under the PHONES Indenture." (emphasis added). Moreover, none of the discovery requests sought information related to DBTCA's participation on the Creditors' Committee, but rather only sought information regarding the attempted exchange of PHONES Notes during the time (before the bankruptcy cases were even commenced) in which DBTCA was the PHONES Indenture Trustee.

Accordingly, Reorganized Tribune objects to the entirety of DBTCA's Litigation Expense Claim of $884,613.50 in fees and $32,476.52 in expenses.

### 2.  WTC's Litigation Expenses Were Not Incurred Solely In Its Capacity As A Creditors' Committee Member.

WTC asserts a Litigation Expense Claim of $614,853.00. This claim suffers from the same infirmities as DBTCA's Litigation Expense Claim, as WTC did not incur the requested fees and expenses solely in its capacity as a member of the Creditors' Committee but rather as a co-proponent of the Noteholder Plan and as the PHONES Indenture Trustee.

Specifically, the discovery for which WTC now seeks reimbursement was directed to WTC "*in its capacity as the successor indenture trustee* for the PHONES notes dated April 1, 1999." (emphasis added). The fact that WTC needed to segregate Creditors' Committee privileged communications from other WTC documents does not mean that WTC incurred the fees and expenses solely in its capacity as a member of the Creditors' Committee. Rather, such activity is no different than the privilege review required in connection with any discovery request.

Moreover, like DBTCA's fees related to Aurelius' subpoena of Mr. Adler, WTC also cannot be reimbursed for fees and expenses incurred in addressing Aurelius' subpoena to Gordon Novod, WTC's outside counsel. The charade of this subpoena – whereby one proponent of the Noteholder Plan sought to subpoena counsel for a co-proponent of the same plan – is illustrated

David M. LeMay, Esq.
February 28, 2013
Page 5

by the fact that Aurelius did not seek to depose WTC, but rather its outside counsel. Similarly, WTC should not have incurred any fees in responding to a subpoena that was successfully opposed by the Creditors' Committee (an expense already borne by the estates).

Accordingly, Reorganized Tribune objects to the entirety of WTC's Litigation Expense Claim of $614,853.00.

### B.   WTC's Fee Claim For Committee Service Is Excessive, And Portions Of The Claim Relate To Fees And Expenses Not Incurred Solely In WTC's Capacity As A Creditors' Committee Member.

WTC seeks an additional $1,065,071.77 in fees and expenses for "Committee Service." These costs are plainly excessive. WTC billed far more than any other member of the Creditors' Committee for such work, including (a) *40% more* ($300,000) than the next-highest biller (DBTCA), (b) *50% more* ($350,000) than the third-highest biller (William Niese), and (c) *double* the total amount billed by the four remaining members ($540,000). This excessiveness is explained, in part, by WTC's inclusion of certain tasks under "Committee Service" that do not relate to WTC's capacity as a Creditors' Committee member and often were in direct opposition to the actions of the Creditors' Committee. WTC performed these tasks not in its capacity as a member of the Creditors' Committee, but rather in its role as the PHONES Indenture Trustee.

For example, WTC includes in its description of the services that it alleges to be reimbursable the following: "Aurelius' [sic] Capital Management's request to disqualify Chadbourne & Parke from participation in the mediation and Aurelius' motion for appointment of a chapter 11 trustee." You will recall, of course, that WTC affirmatively supported and joined Aurelius' disqualification motion. It goes without saying that fees and expenses incurred in connection with a motion to disqualify counsel hired and supported by a majority of members of a creditors' committee cannot possibly qualify as fees and expenses incurred solely in the movant's capacity as a member of that creditors' committee. That WTC's actions in this regard were taken not in its capacity as a member of the Creditors' Committee – but rather in its capacity as the PHONES Indenture Trustee – is made clear by the fact that the disqualification motion itself was brought by Aurelius, which was never a member of the Creditors' Committee. Other examples of costs that either are excessive or relate to WTC's role as the PHONES Indenture Trustee include those incurred by WTC, *inter alia*, (a) opposing the Creditors' Committee's standing motions, (b) defending against motions claiming that WTC violated the automatic stay by filing its Senior Lender complaint, (c) "formulati[ng] and revisi[ng] . . . the proposed [Litigation Trust] forms," and (d) conducting document reviews.

Based upon our review of materials provided by WTC, we estimate that more than $300,000 in costs claimed to be "Committee Service" either are excessive or do not qualify as

LAI-3186586v3

**JONES DAY**

David M. LeMay, Esq.
February 28, 2013
Page 6

reimburseable Creditors' Committee Member Fee/Expense Claims. Accordingly, there is no reason WTC should receive reimbursement greater than DBTCA for Committee-related work.

\*             \*             \*

      In conclusion, the Reorganized Debtors object to portions of the Creditors' Committee Member Fee/Expense Claim submitted by the Trustees for the reasons set forth herein. The Reorganized Debtors, however, are open to a dialogue with you (or the Trustees) in an effort to resolve some or all of these objections, and encourage you (or them) to contact us as soon as practicable to conduct settlement discussions. Pursuant to Section 9.1.3, the Reorganized Debtors intend to pay the undisputed portions of the Creditors' Committee Member Fee/Expense Claims promptly upon receipt of the information required for submitting payment.

                                  Sincerely,

                                  Joshua M. Mester

cc:    David Buchbinder, Esq.
        David J. Adler, Esq.
        Gordon Z. Novod, Esq.
        James F. Bendernagel, Esq.