## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY, *et al* | : | |
| | : | Case Number 08-13141-KJC |
| | : | |
| | : | |
| Joint Debtors | : | **Status Conference: April 17, 2013 at 2:00 p.m.** |
| | | **Objection Deadline: April 10, 2013 at 4:00 p.m.[1]** |

**UNITED STATES TRUSTEE'S <u>AMENDED</u>[2] OBJECTION TO WILMINGTON TRUST COMPANY'S APPLICATION FOR ALLOWANCE OF CLAIM UNDER 11 U.S.C. §§503(b)(3)(D) AND 503(B)(4) AS A RESULT OF WILMINGTON TRUST COMPANY'S APPLICATION REQUESTING THE APPOINTMENT OF AN EXAMINER AND WILMINGTON TRUST COMPANY'S PARTICIPATION IN EXAMINER'S INVESTIGATION AND GRANTING WAIVER OF COMPLIANCE WITH DEL BANKR. L.R. 2016(d) IN ACCORDANCE <u>WITH DEL. BANKR. L.R. 2016-2(g) (D.E. 13272)</u>[3]**

In support of her amended objection to Wilmington Trust Company's Application For Allowance Of Claim Under 11 U.S.C. §§503(b)(3)(D) And 503(b)(4) As A Result Of Wilmington Trust Company's Application Requesting The Appointment Of An Examiner And Wilmington Trust Company's Participation In Examiner's Investigation And Granting Waiver Of Compliance With Del Bankr. L.R. 2016(D) In Accordance With Del. Bankr. L.R. 2016-2(G) (D.E. 13272, the "<u>Application</u>") Roberta A. DeAngelis, United States Trustee for Region Three ( the "<u>U.S. Trustee</u>"), by and through her counsel, avers:

### INTRODUCTION

1.     Pursuant to 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and

---

[1] Extended to April 10, 2013 for the U.S. Trustee.
[2] The United States Trustee objected to the above-referenced Section 503(b) application of Wilmington Trust Company on April 10, 2013 (D.E. 13435). The sole purpose of this amended objection is to amend paragraph 63, *infra*, as set forth herein.
[3] Terms shall have the same meaning given them in the Motion.

determine this objection.  Pursuant to 28 U.S.C. § 586(a)(3)(A), the U.S. Trustee is charged with

the responsibility to review fee applications submitted under section 330 and when appropriate file

"with the court comments with respect to such application[s] and, if the United States Trustee

considers it to be appropriate, objections to such application[s]."  *See In re Busy Beaver Building*

*Centers, Inc.*, 19 F.3d 833, 842 (3d Cir. 1994) (section 586(a)(3) gives the U.S. Trustee

"discretion" to review fee applications).  Such oversight is part of the U.S. Trustee's overarching

responsibility to enforce the laws as written by Congress and interpreted by the courts.  *See United*

*States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 33 F.3d 294,

295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C.

§ 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco*

*D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

2.        Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to prosecute this

objection.

## STATEMENT OF FACTS

*Background*

3.        These cases were filed on December 8, 2008 (the "Petition Date").  From the onset

of these cases, the various constituencies "understood that the investigation and resolution of the

LBO-Related Causes of Action would be a central issue in the formulation of a plan of

reorganization."  *In re Tribune Company,* 464 B.R. 126 (Bankr. D. Del. 2011).  From the day of the

creditor Committee's appointment on December 18, 2008, "issues arising from the LBO ha[d] been

at the forefront of the Committee's agenda.  .  .  . From the earliest months of the case, the

Committee ha[d] directed and pursued a detailed and exhaustive investigation and review of the

LBO and the issues and possible claims arising from the LBO."[4]  As Wilmington Trust notes in its

Application, "[a]s of the petition date, the non-LBO creditors, including the PHONES, were

optimistic that the LBO would prove fertile ground for the investigation, development, and

assertion of claims that could lead to a meaningful recovery for all non-LBO creditors."

Application ¶ 24.

4.      As of the Petition Date, the 128 debtors in this case owed their creditors $12.7

billion, making this among the largest bankruptcies ever filed.   Over $10 billion of the total debt

was secured.   Approximately $759 million was owed to a subordinated tranche of bonds referred

to as the PHONES Notes.  Wilmington Trust ("Wilmington") served as the Indenture Trustee of

the PHONES NOTES.

5.      On December 18, 2008, the U.S. Trustee appointed an Official Committee of 8

Unsecured Creditors (the "Committee").  On December 30, 2008, the U.S. Trustee amended the

Committee composition and added Wilmington to the Committee.

6.      The Debtors retained twenty professionals, including Sidley Austin LLP ("Sidley");

Cole, Schotz, Meisel, Forman & Leonard, PA ("Cole Schotz"), Alvarez & Marsal North America

("Alvarez") and Lazard Freres & Co., LLC ("Lazard").   In January of 2009, after Wilmington's

appointment, the Committee retained the law firms of Chadbourne & Park LLP ("Chadbourne")

and Landis, Rath & Cobb, LLP ("Landis"), to represent it as counsel, Alix Partners, LLP ("Alix")

as financial advisor, and Moelis & Company, LLC as investment banker.  In August 2009, the law

firm of Zuckerman Spader LLP ("Zuckerman") was retained by the Committee as Special

---

[4] *Creditors' Committee's Response and Partial Objection to Law Debenture's Rule 2004 Motion* [D.E. 2136 ¶ 15].
"From the inception of the Debtor's Chapter 11 Cases, it was clear to most pre-LBO creditors (like Law Debenture)
that the main focus of the proceedings should have been Tribune's disastrous leveraged buyout transaction ("LBO")
that was completed in December 2007…"  Motion ¶ 8.

Counsel.[5]

7.      Although a Committee member, and therefore well aware the Committee was investigating the LBO transactions through its retained professionals, "Wilmington Trust, as a member of the Official Committee, had observed the investigation conducted by the Official Committee and decided that it was prudent not only to seek the Examiner's appointment, but also to actively participate in that investigation." (Application ¶ 12).  Wilmington determined to act independently because, as paragraph 14 of the Application states: "The Debtors had proposed a plan, endorsed by the Official Committee, that did not provide a recovery to the PHONES-negating Wilmington Trust's charging lien- and classified Wilmington Trust's unsecured fee and expense claim in the PHONES subordinated class."  The Application further admits at paragraph 19 that during the course of the cases, Wilmington took direction from the holders of a majority of the PHONES notes: Camden Asset Management, L.P. and Suttonbrook Capital Management, LP.

8.      Wilmington retained six Professionals for whom it now seeks to recover substantial contribution compensation:  the law firm of Brown Rudnick LLP ("Brown Rudnick"); the law firm of Benesch, Friedlander, Coplan & Aronoff LLP("Benesch"); Mesirow Financial Consulting LLC as financial advisor ("Mesirow"); Morton Research, Inc. ("Morton") as a newspaper valuation consultant; Hoffman Schulz Media Capital ("Hoffman") as a broadcast valuation consultant; Cypress Associates, LLC as an internet consultant; and, finally Wilmington itself.  Brown Rudnick seeks compensation and expenses of $4,557,975.  Benesch seeks compensation and expenses of $40,655.79.   Mesirow  seeks  compensation  of  $2,335,327.   Mesirow  is  not  an  attorney  or accountant.  Morton seeks compensation and expenses of $22,504.90.  Morton is not an attorney or accountant.  Hoffman seeks compensation and expenses of $13,950.  Hoffman is not an attorney or

---

5 General Disclosure Statement dated December 15, 2010 at pages 44-45.

accountant.  Cypress seeks compensation and expenses of $76,080.06.  Cypress is not an attorney or accountant.  Wilmington seeks $100,000 on its own account.  The total requested is $7,146,492.75.

9.      On January 13, 2010, Wilmington filed a motion to appoint an examiner to investigate the LBO matters.  After a number of weeks in which the various constituencies spent significant time in negotiations, a proposed settlement was agreed to (the "April 2010 Settlement").  This settlement would not provide the PHONES notes with a dividend.  The plan that was ultimately confirmed retains the PHONES notes as a subordinated class but provides it with the opportunity to recover a pro rata share of the Litigation Trust created by the Plan.[6]

10.     On May 10, 2010, the United States Trustee appointed Kenneth N. Klee as examiner (the "Examiner").  In connection with his investigation, the Examiner invited the parties to provide submissions on the subject matter of the examination.[7]

11.     The Examiner filed his report with the Court on July 26, 2010.  In his report, the Examiner explained his methodology: "The Examiner determined that the most sensible way to approach the Investigation in the limited time given was to capitalize on the work performed by the Parties, and, at least in the first instance, to look to the Parties in the adversarial process to flesh out the issues and facts in dispute and the relative strengths and weaknesses of the positions of the Parties.  **These contributions were intended to supplement, rather than replace, the Examiner's independent investigation.**"  Report of Kenneth N Klee, As Examiner (the "Examiner Report", D.E. 5130 at 30) (emphasis added).  The Examiner solicited the input of

---

[6] *Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., and Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A* dated July 19, 2012 at 3.2.9 .

[7] *In re Tribune Co., supra,* 464 B.R. at 142-143.

numerous parties, including the Debtors, the Committee, and Wilmington.  In addition to soliciting

the parties' input, the Examiner conducted 38 interviews.  The Examiner also utilized his own

financial advisor, LECG.  "To a great extent, LECG utilized and built on analyses prepared by the

various financial advisors for the Parties, although, as the Report amply illustrates, LECG

conducted its own independent investigation of the financial matters at issue on behalf of the

Examiner." (Examiner Report at 37).

12.    This case has featured competing Chapter 11 plans of reorganization.  The DCL

Plan, proposed by the Debtor, Committee and Lenders, with amendments occasioned by the

Court's opinion of October 31, 2011 ("Confirmation Opinion"), was ultimately confirmed.

Wilmington was a co-proponent of the Noteholder Plan.[8]  In the Confirmation Opinion, the Court

observed: "The voting results reveal that creditors overwhelmingly prefer the DCL Plan over the

unsuccessful Noteholder Plan.  Out of 128 classes of claims in which creditors actually voted, 125

classes (97.66%) voted to accept the DCL Plan.  . . . In contrast, out of 243 classes of claims in

which creditors actually voted, only three classes (1.2%) voted to accept the Noteholder Plan." *In

re Tribune Co.*, 464 B.R. at 207.

13.  In the Confirmation Opinion, the Court rejected the Noteholders' contention that the

Committee failed to represent all creditors.  "This position is not supported by the evidence.  . . .

The record here reflects that the Committee considered all of the unsecured creditors' interests.

Failure to advocate the Noteholders' position above interests of other creditor constituencies is not

a breach of the Committee's fiduciary duties." *In re Tribune Co.*, 464 B.R. at 156-57.

---

[8] Law Debenture, who has also filed a motion seeking substantial contribution compensation, Deutsche Bank and
Aurelius Capital were the remaining co-proponents of the Noteholder Plan.  *See In re Tribune Company,* 464
B.R.126 (Bankr. D. Del. 2011) at footnote 5.

14.     The Application is accompanied by upwards of 200 pages of time sheets and invoices from the seven entities.  Overwhelmingly, the time entries are vague, and where numerous services were performed by the same person over a number of hours, the entries are lumped.  The various services allegedly performed have not been categorized.  Travel time in most instances appears to have been billed at the professional's full hourly rate.  Expense records are not properly itemized.

## PRELIMINARY STATEMENT

15.     As a matter of law, to the extent Wilmington incurred attorney or accountant fees or expenses in performing its duties as a Committee member, Wilmington is barred from substantial contribution recovery under Section 503(b)(4).  Even if Wilmington were eligible to recover under Section 503(b), Wilmington has failed to carry its burden of showing that it made a substantial contribution to the Debtors' estates, because (1) Wilmington has not rebutted the presumption that it acted in its own interests; (2) any contribution that Wilmington made lacks a causal connection to confirmation of the Plan because of the participation of many parties; (3) Wilmington has not adequately shown that the tasks Brown Rudnick or Benesch billed for were not duplicative of the work performed by firms retained by the estate and/or the committee; and (4) the fees sought are unreasonable.  Additionally, and assuming that Wilmington can show that some of the services may have provided a substantial contribution to the estate, the Application fails to comply with the applicable local bankruptcy rules and the guidelines of the U.S. Trustee.  Moreover, any recovery Wilmington may be entitled to is limited to the actual expenses of Wilmington and the allowable fees and costs of its attorneys and accountants.  Because Mesirow, Morton, Cypress, Hoffman, and Wilmington are not attorneys or accountants, Wilmington may not seek recovery of these fees as a matter of law.  The Application should be denied.

7

**ARGUMENT**

**I.  WILMINGTON CANNOT RECOVER FEES AND EXPENSES OF ITS OWN PROFESSIONALS WHO PERFORM WORK FOR WILMINGTON THAT FALLS WITHIN THE SCOPE OF THE COMMITTEE'S OWN ACTIVITY**

16.     Bankruptcy Code Section 503(b) provides in part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> [ . . . ]
>
>> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>>
>>> (A)     a creditor that files a petition under section 303 of this title;
>>>
>>> (B)     a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
>>>
>>> (C)     a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;
>>>
>>> (D)     a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
>>>
>>> (E)     a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or
>>>
>>> (F)     a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

8

> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under <u>subparagraph (A), (B), (C), (D), or (E) of</u> paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

(Emphasis added).

17.    Section 503(b)(4) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act ("<u>BAPCPA</u>") in 2005 to include the underlined language above.  *See* Pub. L. 109-8 § 1208 (2005).  The House Judiciary Report on BAPCPA states:

> "Section 1208 of the Act amends section 503(b)(4) of the Bankruptcy Code to limit the types of compensable professional services rendered by an attorney or accountant that can qualify as administrative expenses in a bankruptcy case.  **Expenses for attorneys or accountants incurred by individual members of creditors' or equity security holders' committees are not recoverable** . . . ." (emphasis added).

Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. (2005) at 142.

18.    BAPCPA amended Section 503(b)(4) "by adding specific references to subparagraphs (A), (B), (C), (D) and (E) of section 503(b)(3).  By excluding 503(b)(3)(F) from 503(b)(4), it is clear that a committee member is not entitled to reimbursement as an administrative expense for professional fees incurred by the committee member."  4 COLLIER ON BANKRUPTCY ¶ 503.LH[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed).  A member of an official committee generally is not entitled to receive administrative-expense status for its professional fees.  *See id.* ¶ 503.11[6]. *See also In re Adelphia Communications Corp.*, 441 B.R. 6, 12 (Bankr. S.D.N.Y. 2010) ("Sections

503(b)(3)(D) and 503(b)(4) provide express authority for the payment of a <u>nonfiduciary</u> creditor or equity security holder's fees.")(emphasis added).

19.     From the plain language of Section 503(b)(4), it is clear that the fees and expenses of attorneys and accountants for official committee members are no longer allowable as administrative expenses, at least to the extent that the services are within the scope of professional work done at the request of the Committee and its members.   Section 503(b)(4) specifically omits reference to Section 503(b)(3)(F), precluding recovery by a committee member for professional services on behalf of the committee member.

20.     Section 1103(c) provides that official committees may (1) consult with the debtor about the administration of the case; (2) investigate the acts, conducts, assets, liabilities, business operations of the debtor and any other matter relevant to the formulation of a plan; (3) participate in the formulation of a plan; (4) request the appointment of a trustee; and (5) perform such other duties as are in the interest of those represented.   Here, to the extent the activities Wilmington undertook fall within the scope of the powers and duties delineated in Section 1103(c), Wilmington is not entitled to recover its attorney or accountant fees or expenses under Sections 503(b)(3)(F) and (b)(4).

## II. WILMINGTON DID NOT MAKE A SUBSTANTIAL CONTRIBUTION

21.     In the alternative, if the Court determines that Wilmington is eligible to recover the reasonable fees or actual, necessary expenses of its attorneys or accountants, then the U.S. Trustee submits that Wilmington did not make a substantial contribution in these cases.

### A.     The Legal Standard

22.     Bankruptcy Code Section 503(b) provides in pertinent part:

10

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

[ . . . ]

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

To the extent the Court determines Wilmington is eligible to seek reimbursement of its attorneys' actual, necessary expenses and reasonable fees under Sections 503(b)(3)(D) and 503(b)(4), the U.S. Trustee submits that Wilmington has failed to carry its burden of showing that it made a substantial contribution in these cases.

23.    Section 503(b)(3)(D) provides administrative-expense status for the actual, necessary expenses of a creditor, indenture trustee, equity security holder, or ad hoc committee that

11

makes a substantial contribution in a chapter 9 or 11 case. Section 503(b)(4) provides administrative-expense status for the reasonable fees and actual, necessary expenses of such entity's attorneys and accountants.

24.     Section 503(b)(3)(D) must be narrowly construed. *See In re Worldwide Direct, Inc.*, 334 B.R. 112, 122 (Bankr. D. Del. 2005) (quoting *In re Granite Partners*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997)).

25.     Section 503(b)(3)(D) has two purposes: (1) to encourage creditors to participate meaningfully in the reorganization process; and (2) to minimize fees and administrative expenses and thereby maximize creditor recoveries. *Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 944 (3d Cir. 1994). A creditor makes a substantial contribution if its efforts provide an "actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Financial Inc.*, 27 F.3d at 943-44 (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). *See also In re Worldwide Direct, Inc.*, 334 B.R. at 121.

26.     A benefit that the estate receives as an incident to a creditor's protecting its own interests is not substantial. *See Lebron v. Mechem Financial Inc.*, 27 F.3d at 944. *See also In re Essential Therapeutics, Inc.,* 308 B.R. 170, 174 (Bankr. D. Del. 2004): "Inherent in substantial contribution, however, is the requirement that the benefit received by the estate be more than incidental to the applicant's self-interest."

27.     Creditors are presumed to act in their own interest "until they satisfy the court that their efforts have transcended self-protection." *Lebron v. Mechem Financial Inc.*, 27 F.3d at 944 (citations omitted). The activities that a Section 503(b)(3)(D) applicant has engaged in are "presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if,

the services 'directly and materially contributed' to the reorganization." *Lebron v. Mechem Financial Inc.*, 27 F.3d at 943-44 (citation omitted).

28.     Wilmington must prove by a preponderance of the evidence that it made a substantial contribution. *See In re Buckhead America Corp.*, 161 B.R. 11, 15 (Bankr. D. Del. 1993).

29.     When determining if a claimant has met its burden, courts consider whether the services provided—

> 1)  were only for the benefit of the client or were for the benefit of all parties in the case;
>
> 2)  directly, significantly and demonstrably benefited the estate; and
>
> 3)  were duplicative of the services provided by attorneys for the committee, the committees themselves, or the debtor and its attorneys.

*See In re Worldwide Direct, Inc.*, 334 B.R. at 122 (citing *In re Buckhead America Corp.*, 161 B.R. at 15).

30.     In attempting to meet its burden, the applicant must introduce more than self-serving statements about its involvement in the case. *In re Worldwide Direct, Inc.*, 334 B.R. at 123 (citing *In re Buckhead America Corp.*, 161 B.R. at 15). "'Corroborating testimony by a *disinterested* party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding compensation to activities which otherwise might not constitute a 'substantial contribution.'" *In re Worldwide Direct, Inc.*, 334 B.R. at 123 (citing *In re Buckhead America Corp.*, 161 B.R. at 15).

31.     Extensive participation in a case is not enough to justify a substantial-contribution award.  *In re Worldwide Direct, Inc.*, 334 B.R. at 123 (citing *In re Granite Partners*, 213 B.R. at 445); *see also In re Summit Metals, Inc.*, 379 B.R. 40, 53 (Bankr. D. Del. 2007).

32.     Wilmington has the burden of establishing that a "causal connection" exists between service provided and contribution to the estate.  *See In re Worldwide Direct, Inc.*, 334 B.R. at 121-22.

33.     For an applicant's reasonable attorney fees to be allowable under Section 503(b)(4), the court must find that the applicant has a claim under Section 503(b)(3).  *See In re Worldwide Direct, Inc.*, 334 B.R. at 120-21.

### B.     Wilmington's Activities Were Primarily For Its Benefit

34.     Wilmington has not shown that its activities benefitted all parties in the Tribune case.  *See In re Worldwide Direct, Inc.*, 334 B.R. at 122 (citing *In re Buckhead America Corp.*, 161 B.R. at 15) (one thing courts consider when determining if a substantial-contribution claimant has met its burden is whether the services provided were only for the benefit of the client or were for the benefit of all parties in the case).

35.     Wilmington has not rebutted the presumption that it acted primarily in its own interest.  The Application avers that Wilmington, a committee member, decided to act independently.  "While the Official Committee commenced a preliminary investigation of LBO-related causes of action in March 2009, Wilmington Trust did not believe such investigation was as complete as it should be" (Application ¶ 25).  "Wilmington Trust stood virtually alone as the advocate for the pursuit of various claims and causes of action not preserved for non-LBO creditors . . . ." (Application ¶ 25).  "With the Debtors, the Official Committee, Law Debenture,

14

Centerbridge, and the TM Retirees all lining up in support of the First Plan, Wilmington Trust determined that it was required to seek the appointment of an examiner to protect the interests of non-LBO creditors, including the PHONES." (Application ¶ 26).   The Court rejected the Noteholders claims of conflict: "The Noteholders argue that the DCL Plan Settlements must be rejected because they are not the result of good-faith, arms-length negotiations.  The Noteholders contend that the settlement process was tainted by conflicts of interest, one-sided negotiations, and other irregularities.  These assertions are unsupported by the evidentiary record."  *In re Tribune Co.*, 464 B.R. at 155.  The Court also rejected any assertion that the Committee somehow did not take an adequate role in the matter: "The record here reflects that the Committee considered all of the unsecured creditors' interests.  Failure to advocate the Noteholders' position above interests of other creditor constituencies is not a breach of the Committee's fiduciary duties."  *In re Tribune Co.*, 464 B.R. at 157.  Wilmington's decision to play an aggressive and active role in this case was not predicated on eleemosynary motives for other creditors, but rather, because its $759 million claim was subordinate to virtually every other claim in the estate.

36.    Wilmington is the Indenture Trustee for a $759 million claim classified alone in a subordinated class.  Given the sheer size of the claim, it strains credulity for Wilmington to assert that its own professionals were not acting primarily for the benefit of the economic interests it serves.   Any benefit its own professionals may have conferred upon other creditor constituencies should be purely incidental.  *See In re American Plumbing & Mechanical, Inc.,* 327 B.R. 273 (Bankr. W.D. Tex. 2005) ($95 million bondholder claim Substantial contribution application denied for $95 million bondholder claim:  "Choosing to not hold hostage the reorganization process does not make for substantial contribution." 327 B.R. at 291).   *In re Tropicana*

*Entertainment LLC,* 2012 WL 3776531 (3d Cir. 2012) (Denial of substantial contribution application for creditors holding 65% of bondholder debt affirmed). *In re Northwestern Corporation*, 2007 U. S. Dist. Lexis 24167 at 8-9 (D. Del. 2007) (Denial of substantial contribution application by Wilmington affirmed: "In this case, Appellant acted as Indenture Trustee for the QUIPS holders and its actions were taken to benefit the QUIPS holders.").

37.     Although Wilmington represented a significant economic interest in the case, it was only one of multiple participants in the process that led to confirmation of a plan. The genesis of what ultimately became the plan in this case evolved from the April 10, 2010 Settlement. The April 10, 2010 Settlement was the result of negotiations which took place over many weeks with multiple parties. The subsequent appointment of the Examiner, his report and the subsequent mediation all contributed to the evolution of the plan which became the resolution of this case. *See In re Tribune Company*, *supra*, at 146. *See In re Summit Metals, Inc., supra*, at 53 ("extensive participation in a case, without more, is insufficient to compel compensation."). *See also In re Granite Partners, L.P.*, 213 B.R. 440, 449 (Bankr. S.D.N.Y. 1997) ("Mere participation in the negotiation, drafting and confirmation of the plan is not sufficient.").

## C.  Wilmington's Activities Duplicated Those of Others

38.     By Wilmington's own admission, many of its professionals' activities were significantly duplicative of what retained professionals did or were retained to do in these cases. "Although the Official Committee and Law Debenture participated in the examination process, their ultimate stake in theExaminer's conclusions differed from those of Wilmington Trust, as the Official Committee and Law Debenture had already settled the claims that the Examiner was

16

reviewing and, in certain circumstances, agreed to support the release of other claims for no additional consideration." (Application ¶ 31).   There is no evidence in the record to suggest that Wilmington was requested to perform services the Committee was not or could not perform.[9] To the contrary, as noted above, the Court rejected Wilmington's contentions in the Confirmation Opinion.  The Examiner invited the primary constituencies to submit evidence and present legal arguments so as to take advantage of discovery undertaken prior to his appointment.

39.    The Application at paragraphs 31-35 gives the impression that but for Wilmington, the Examiner could not have performed his duties.[10]   However, the massive duplication and the Examiner's Report belie this impression.  "The Examiner determined that the most sensible way to approach the Investigation in the limited time given was to capitalize on the work performed by the Parties, and, at least in the first instance, to look to the Parties in the adversarial process to flesh out the issues and facts in dispute and the relative strengths and weaknesses of the positions of the Parties.  These contributions were intended to supplement, rather than replace, the Examiner's independent investigation." (Examiner's Report at 30).

40.    The *Agreed Order Directing the Appointment of an Examiner,* dated April 20, 2010 (D.E. 4120), provided in pertinent part at paragraph 3, that "[t]he parties shall use their respective best efforts to coordinate with the Examiner and to avoid unnecessary interference with, or duplication of, the Investigation, and the Examiner, in his or her conduct of the Investigation, shall

---

[9]  The hundreds of pages of timesheets included in the Motion are not divided into categories, are vague and are lumped, all in violation of the applicable U.S. Trustee Fee Guidelines.  Absent compliance with the Guidelines, the amount of time spent on given activity cannot be ascertained.  It is the proponents of the Motion who have the burden of proof on this issue.  See below.

[10] Law Debenture makes the same argument at paragraphs 44-47 in its Motion Of Law Debenture Trust Company Of New York Pursuant To 11 U.S.C. §§ 503(b)(3)(D), 503(b)(4), And 503(b)(5) For Allowance And Payment Of Fees And Expenses Incurred In Connection With Making A Substantial Contribution To The Debtors Chapter 11 Cases And Granting Waiver Of Compliance With Del. Bankr. L.R. 2016-2(d)(vii) In Accordance With Del. Bankr. L.R.

use best efforts to utilize relevant materials obtained by the Parties via informal and/or formal discovery to avoid unnecessary duplication of work performed to date." In addition to admitting to significant duplication of services with that of the Committee, Wilmington has failed to address what it did to comply with the Court order to avoid duplication.

41.    Wilmington admits it determined to act independent of the Committee (Application ¶ 31). There is no showing that the Committee professionals could not perform their services. The Court found otherwise in the Confirmation Opinion. There is no evidence of any request by the Committee for assistance.

**D. There is No Causal Connection Between Tasks Performed and Benefit to the Estates**

42.    Any contribution made by Wilmington lacks a clear causal connection to the outcome of these cases. *See In re Worldwide Direct, Inc.*, 334 B.R. at 121-22 (applicant has the burden of establishing a "causal connection" between service provided and contribution to the estate). As discussed at paragraphs 34-36, supra, the resolution of this case was the result of the many efforts of multiple parties over many months. During this period, Wilmington and its professionals may have zealously represented their client, but as noted at paragraph 36, *supra*, participating in litigation and negotiations is insufficient to justify the substantial contribution standard.

43.    The Application suggests that Wilmington performed services at the specific request of the Examiner. The Examiner Report thanked the parties for the input provided to the Examiner, but did not single out any particular party as making a contribution greater or lesser

---

2016(2)(h)  (D.E. 13274, "Law Debenture Motion").

than any other party.  The Examiner did not specifically request Wilmington's assistance. Wilmington was merely one of many parties the Examiner invited to submit materials relevant to the examination ("These contributions were intended to supplement, rather than replace, the Examiner's independent investigation." (Examiner's Report at 30)).  The Application at paragraph 30 notes Wilmington's true motivation, a recovery on its subordinated claim of $759 million: "Wilmington Trust and its Professionals had little choice but to be responsive to the Examiner, as it stood along in arguing that the LBO-related causes of action had value beyond the settlement under the First Plan."

44.    While the Confirmation Opinion rejected confirmation of both the Noteholder and DCL Plans, the Confirmation Opinion noted the overwhelming creditor approval of the DCL Plan, which with modifications suggested in the Confirmation Opinion, was ultimately confirmed.  The Noteholders, including Wilmington, opposed confirmation.  The Confirmation Opinion rejected all of the Noteholders' arguments and approved the Settlement ("I conclude that the DCL Plan Settlement should be approved because it is fair, reasonable and in the best interest of the Debtor's estates and it is properly part of the DCL Plan pursuant to Bankruptcy Code § 1123(b)(3)(A)." *In re Tribune Co.*, 464 B.R. at 176).  The ultimate result, the fruits of many parties' efforts over many months, was opposed vigorously by Wilmington.  The vigorous pursuit of one's own interests does not translate into a substantial contribution.

## II.  The Fees Requested are Unreasonable

### A.    An Application for Substantial Contribution Must Comply With Compensation Rules and Guidelines

45.     Should the Court determine that (1) Wilmington is eligible to receive administrative

expense status for its professionals reasonable fees and actual, necessary expenses under Section

503(b); (2) Wilmington has made a substantial contribution; and (3) Wilmington is entitled to

receive administrative-expense status for its professional's reasonable fees or actual, necessary

expenses, then the U.S. Trustee submits that the fees submitted by Wilmington are not reasonable

and should not be allowed.

46.     Section 503(b)(4) of the Bankruptcy Code provides for the allowance of reasonable

compensation for the "attorney or accountant" of parties who have made a substantial contribution

in a case.  A party rendering a substantial contribution in a case may not seek recovery of the fees of

professionals who are not attorneys or accountants.  *See In re Summit Metals, Inc., supra* (fees of

management consulting firm denied); *In re Granite Partners, supra* (fees of financial advisor

disallowed).

47.     An entity seeking compensation for a substantial contribution must comply with the

same standards as retained professionals in any application for reimbursement.  *See In re Worldwide

Direct, Inc.,* 334 B.R. 112, 120 (Bankr. D. Del. 2005) ("a request for an administrative claim under

section 503(b) requires the same level of documentation and substantiation as a request for

compensation under section 330.   Del Bankr. L.R. 2016-2(a)(ii)."); *In re Syntax-Brillian

Corporation,* 2009 WL 1606474 (Bankr. D. Del. 2009); *In re Granite Partners*, 213 B.R. at 447

("[T]he same documentation and substantiation requirements apply to substantial contribution

claims as apply to requests for compensation under section 330.").  Paragraphs 72 and 73 of the

Application request a waiver of timekeeping requirements and suggest that *In re Worldwide Direct,

Inc.* stands for the proposition that such a waiver can be granted.  The holding in *Worldwide Direct,*

20

*Inc.* was exactly the opposite of what Wilmington suggests.  Brown Rudnick, Mesirow and Wilmington Trust are all experienced before this Court.  These firms have appeared in numerous cases and hold themselves out to be experienced bankruptcy professionals.  It is disingenuous for Wilmington to claim that its professionals cannot comply with the applicable rules and guidelines.

48.    Section 330(a)(3) of the Code provides that, "in determining the amount of compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the service was rendered toward the completion of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

11 U.S.C. § 330(a)(3).

49.    Section 330(a)(2) provides that "[t]he court may, on its own Application or on the Application of the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested."  In *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994), the Third Circuit identified the Bankruptcy Court's independent duty to review fee requests: "[W]e think the bankruptcy court has a *duty* to review fee applications, notwithstanding the absence of objections by the United States trustee, creditors, or any other interested party, a duty which the Code does not

expressly lay out but which we believe derives from the court's inherent obligation to monitor the

debtor's estate and to serve the public interest."

50.     Services rendered that are necessary, duplicative or that are not reasonably likely to

benefit the debtor's estate are not compensable.  In *In re Top Grade Sausage, Inc.*, 227 F. 3d 123 (3d

Cir. 2000), services rendered by debtor's counsel where a trustee had been appointed were disallowed

in their entirety.  "[T]he debtor's attorney must show that the representation was reasonably likely to

benefit the debtor's estate." *Id.* at 132.

51.     Federal Rule of Bankruptcy Procedure 2016(a) provides in pertinent part:  "An entity

seeking interim or final compensation for services, or reimbursement of necessary expenses, from the

estate shall file with the court an application setting forth a detailed statement of (1) the services

rendered, time expended and expenses incurred, and (2) the amounts requested.  Local Bankruptcy

Rule 2016-2(a)(ii) applies to:  "Any request of an entity for payment of an administrative expense

under 11 U.S.C. §503(b)(3) or 503(b)(4)."   Local Bankruptcy Rule 2016-2 (d) specifies the

information to be included in the application, including but not limited to disclosing the activity (e.g.

phone call or research; Local Rule 2016-2(d)(v)), the subject of the activity (e.g. exclusivity

Application, section 341 meeting; Local Rule 2016-2(d)(vi), identification of all meetings and

participant at the meeting (Local Rule 2016-2(d)(ix)), and entries should not be lumped- each activity

shall have a separate description and a time allotment  (Local Rule 2016-2(d)(vii).

52.     The U.S. Trustee Guidelines For Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. §330 (Appendix A to 28 C.F.R. §58; the "U.S.

Trustee Guidelines") provide:  "Time entries for telephone calls, letters, and other communications

should give sufficient detail to identify the subject of the hearing or conference.  If more than one

professional from the applicant or firm attends a hearing or conference, the applicant should explain

22

the need for multiple attendees."

## B.    Brown Rudnick's Fees Are Unreasonable

53.    Exhibit A attached to the Application contains over 160 pages of Brown Rudnick timesheets and expenses.    Attached hereto as Exhibit "A" is a copy of Brown Rudnick's representations about its extensive bankruptcy experience.  Notwithstanding its extensive bankruptcy experience, the Brown Rudnick time and expense submissions fail to comply with the applicable rules and guidelines.

54.    Brown Rudnick's timesheets have not divided the activities into project categories as required by Local Rule 2016-2(d)(i) and (b)(4) of the U.S. Trustee Guidelines.  Without dividing the request into categories, it is not possible to determine what services were performed in what category. Paragraph 72 of the Application alleges this is not necessary here:  "since all of the time clearly was in furtherance of the appointment of the Examiner and his investigation."  A cursory review of the timesheets indicates it was not.  There are time entries relating to a Standing Motion ( Ex. "A" WTC1F03164 Siegel 2/12/10); a Complaint (Ex. "A" WTC1F03165 Siegel 2/14/10); a Stay Violation Motion (Ex. "A" WTC1F03175 Pereira 4/12/10, WTC1F03199 Egan 5/4/10); Equitable Subordination (Ex. "A" WTC1F03198 Kletter 5/4/10);  and Training (Ex. "A" WTC1F03185 St. Hilaire 4/27/10), among others.  On page WTC1F03175, Novod billed 2.5 hours for "Monitor Hearing; Internal discussions re:  same" on April 13, 2010.  With whom were the discussions held?  On page WTC1F03284, Dolan III logged 10 hours with charges of $7250 on June 4, 2010, to "edit and revise stay and sanctions submissions."  There are significant travel entries.  Brown Rudnick personnel billed approximately 280 hours incurring charges of $163,744 reviewing the Examiner's Report between July 23 and July 31, 2010.  Additional charges of $24,892 were incurred by the appearance of five attorneys either in person or telephonically appearing at the July 29, 2010 hearing on the Examiner's Report.

23

These are representative examples.  Because the Application fails to comply with the rules, it is not possible to ascertain the time and charges associated with the activities conducted to determine their reasonableness.  *See In re Worldwide Direct*, 334 B.R. at 120 ("The Court will consider the time records as submitted, but 'should not be obliged to pick apart the fee application to explain which services are not compensable; the [applicant] is required to prove, by a preponderance of the evidence, which services are."); *see also In re Summit Metals, Inc.*, 379 B.R. at 54("Local Rule 2016-2 provides guidance to applicants.").

55.    Brown Rudnick's failure to divide its activities into categories makes it difficult to ferret out time that may be unrelated to the subject matter of the Application.  The many pages of timesheets contain, as noted above, contain entries that do not appear to be related to the subject matter of the Application.

56.    Local Bankruptcy Rule 2016-2 (d) (ii), (v) and (vi) require, respectively, that timesheets be detailed, include the type of activity, and describe the subject matter.  The U.S. Trustee Guidelines at (b)(4)(v) contain similar requirements.  The Application is replete with vague or incomplete entries on virtually every page.  Some representative examples follow.  On page WTC1F03153, Dolan III made the following entry on January 11, 2010:  "Edit and revise motion papers."  On page WTC1F03162, Muska made the following entry on February 1, 2010:  "Review and analyze documents and correspondences for evidence in support of Examiner Motion; Participate in Conference Call re:  Strategy".  The participants are not identified.  This vague entry (which is also lumped) resulted in charges of $3,344.    On June 4, 2010, Rivera billed 5.2 hours incurring charges of $2,730 with this cryptic entry:  "Research and cite in support of filings" (Ex. "A" WTC1F03283).  On June 5, 2010, Novod logged 15 hours assessing charges of $9,300 to:  "Draft reply; research, meetings re:  same." (WTC1F03286).  The subject of the research and the identities of those who were met with

24

are not disclosed.

57.    Local Rule 2016-2(d)(vii) bars lumping--each activity shall have its own time allotment. The U.S. Trustee Guidelines state: "Services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." Lumping is permitted, however, when the total time logged is .5 of an hour or less. Virtually every page of the Brown Rudnick timesheets contains lumped entries. Some representative examples follow. Many of the examples given in the two paragraphs 54 and 56, *supra*, are also lumped entries. On page WTC1F03151, Cafaro lumped 4.5 hours on January 4, 2010: "Confer with M. Siegel re: re-draft of motion for appointment of examiner; review and revise motion for appointment of examiner and case law re: LBO". On page WTC1F032154, Varella logged 10.5 hours with charges of $6,615 for conducting a number of activities including phone calls, emails and reviewing documents. One portion of the entry reads: "numerous emails and telephone calls to local counsel." At page WTC1F03179, on April 19, 2010, Bromberg lumped 11.1 hours of time for charges of $6,882: "Prepare for and attend hearing on examiner with R. Stark; meeting with M. Siegel and R. Stark re: Examiners; prepare for and participate and confer with Centerbridge and Credit Agreement lenders; meeting re: discovery; revise discovery responses; emails with team." Portions of this entry also suffer from vagueness. On April 27, 2010, Medeiros lumped 5 hours of time: "Prepare index of documents to substantiate claims in amended complaint; continue review of amended complaint (of 4/5) and identify documents to support allegations cited therein; communicate with attorney Jundze re: same." (WTC1F03184). Note that the time here is spent on a complaint and not on examiner issues. On May 3, 2010, Varella made the following lumped entry for 8.7 hours and $5,481 of charges on page WTC1F03196: "Review insert to facts re: Board; telephone conference with A. Elias; emails to and from M. Sgro; telephone conference with Debtor's counsel re: Discovery Schedule; Draft Proposed Order re: same and circulate; review

25

W. Dolan edits to same; conference call to clients; continue reviewing fact statement."    On page WTC1F03235, Varella lumped 15.1 hours of time on May 18, 2010, performing what appears to be 17 discrete tasks on 28 lines.    On June 1, 2010 Elstad lumped 10.2 hours of time shown on page WTC1F03273 performing what appears to be five discrete tasks.    On July 13, 2010, at page WTC1F03303, Novod lumped 4 hours as follows:  "Telephone call with K. Bromberg; email to M. Siegel, K. Bromberg re:  Examiner issues; Review documents re:  same; email to R. Stark; review documents re: Examiner documents; telephone call with A. Varella."  This entry also suffers from vagueness.  The U.S. Trustee submits that the amount of lumping in the Brown Rudnick timesheets is astounding, particularly for a firm which holds itself out as an experienced bankruptcy professional in complex cases such as this.

58.    Local Rule 2016-2(d)(viii) requires travel time to be billed at no more than 50% of regular hourly rates.  It appears that Brown Rudnick has not done this.  On April 13, 2010, for example, Stark billed 12 hours:  "Prepare for and conduct examiner hearing; travel time (at ½)."  Notwithstanding the "at ½" entry, it is not possible to tell if travel time has been billed at half-time, because this entry is lumped.  Matthew Stein billed 9.7 hours on the same date including:  "Hearing in Delaware re bank fee Application." (WTC1F03175)  Since this entry is lumped, it is not possible to tell if travel time has been billed at 50%.  Jundze billed 4.1 hours on the same date for the same event:  "Commute to and From Delaware; prepare for and attend hearing." (WTC1F03175).  On May 10, 2010, Stark billed 10 hours with charges of $8,950:  "Prepare for and attend hearing; working travel to and from Delaware; Office conference with A. Dash, telephone call with M. Siegel re:  next steps."  (WTC1F03210).    It is unclear how much of this lumped time entry involves travel, and there is no indication that travel was billed at half rate.  Similarly, Siegel billed 8.6 hours on the same date also to attend the hearing.  There is no indication in the lumped entry that travel was billed at half rate.

26

(WTC1F03211).  There has also been no explanation offered for multiple attorneys attending the same hearing.

59.     There is duplication within the Application.  The most extensive duplication takes place in connection with members of Brown Rudnick reviewing the Examiner's Report.  Between July 23 and July 31, 2010, Brown Rudnick personnel billed approximately 280 hours resulting in charges of $163,744 for reviewing the report.  In addition to the unreasonableness of these charges, it is difficult to fathom how reviewing the Examiner's Report after the report had been filed rendered a substantial contribution to the estate or assisted the Examiner in any way.  Similarly, the approximately $24,892 charged by Brown Rudnick for five of its attorneys to appear at the July 29, 2010 hearing on the Examiner's Report is not reasonable.  There is also no explanation why it was necessary for five attorneys to participate in the hearing.  Since the Examiner had retained his own professionals, Brown Rudnick's appearance at the hearing was not to aid the Examiner.

60.     Brown Rudnick does not appear to be seeking recovery for reimbursement of costs advanced in the Application.  Brown Rudnick's timesheets contain no expense items.

### C.     The Fees of Benesch Are Unreasonable

61.     Benesch has not categorized its time as required by the applicable rules.  Benesch appears to have incurred charges in connection with not only the Examiner motion, but also with the filing of a complaint, a motion to compel, and an exclusivity motion, among others. Since the express subject of the Application is the recovery of fees incurred solely in connection with the appointment of the Examiner and participation in the Examiner's investigation, fees incurred for other matters are outside the scope of the Application.  Without categorization, Benesch cannot show which of its

27

services are within the scope of the Application and which are not.

62.     The Benesch time sheets contain lumped charges for costs, and do not provide required itemizations.  See, for example, on WTC1F00139 there are Document Reproduction charges for the month of March 2010 of $327.96 and Hotel/Lodging charges of $438.90, among others.  Local Bankruptcy Rule 2016-2(e)(ii) requires that requests for reimbursement of expenses be itemized "within each category, including the date the expense was incurred, the charge and the individuals incurring the expense, if available."  Local Bankruptcy Rule 2016-2(e)(iii) limits copy charges to ten cents per page and outgoing fax transmissions to $1 per page.  The Benesch time sheets do not comply with these rules.  There is no way to determine the reasonableness of the requested expense reimbursement.

### D.  Wilmington Is Not Entitled to Compensation

63.     Wilmington itself seeks reimbursement of $100,000 in substantial contribution compensation.  Although Bankruptcy Code Section 503(b)(5) authorizes compensation to an indenture trustee that makes a substantial contribution, Wilmington, for the reasons set forth above, has not made a substantial contribution.  Moreover, Wilmington's exhibits do not comply with the applicable rules; no time sheet or other evidence to support its charges has been submitted other than a single-page invoice that states in part: "Extraordinary Fee related to investigation and motion for the appointment of Examiner $100,000."  Wilmington has made no legal or factual showing that it is entitled to reimbursement.

### D.  Mesirow Is Not Entitled to Compensation

64.     Mesirow is a financial advisor.  Even if Wilmington prevails on its claim that it made a substantial contribution herein,  since Mesirow is not an attorney or accountant, Wilmington may not

28

seek compensation for Mesirow's services pursuant to the plain meaning of 11 U.S.C. §503(b)(4).  *See In re Syntax-Brillian*, *supra*; *see also In re Granite Partners*, *supra* (fees of financial advisor denied).

65.     Even if Mesirow were entitled to compensation, Mesirow's timesheets, attached to the Application as Exhibit "C", do not comply with the Local Rules or U.S. Trustee Guidelines discussed above.   Entries are vague:  "Analyze financial projections", "Attend calls/meetings with counsel", and "Review documents" are typical entries.  This is as vague as it gets.  The services have not been placed into categories.  There is simply no way to determine what if anything Mesirow did other than review documents and attend meetings.

66.     The Mesirow time sheets contain $29,006 in charges for costs.  There is no documentation of any kind to support this request.  Local Bankruptcy Rule 2016-2(e) requires that requests for reimbursement of expenses be summarized by category and be itemized "within each category, including the date the expense was incurred, the charge and the individuals incurring the expense, if available."  The Mesirow time sheets do not comply with these rules.  There is no way to determine the reasonableness of the requested expense reimbursements.  To the extent they may be otherwise allowable, the request for expense reimbursement for Mesirow must be denied.

### E.     Morton is Not Entitled To Compensation

67.     Morton is a newspaper valuation consultant.  It is not an attorney or accountant.  Even if Wilmington prevails on its claim that it made a substantial contribution herein, because Morton is neither an attorney nor an accountant, Wilmington may not seek compensation for Morton's services pursuant to the plain meaning of 11 U.S.C. §503(b)(4).  *See In re Syntax-Brillian*, *supra*; *In re Granite Partners*, *supra* (fees of financial advisor denied).

## F.    Cypress is Not Entitled to Compensation

68.    Cypress is an internet consultant.  Even if Wilmington prevails on its claim that it made a substantial contribution herein, because Cypress is neither an attorney nor an accountant, Wilmington may not seek compensation for Cypress' services pursuant to the plain meaning of 11 U.S.C. §503(b)(4).  *See In re Syntax-Brillian*, *supra*; *In re Granite Partners*, *supra* (fees of financial advisor denied).

69.    Even if Cypress were entitled to compensation, Cypress' timesheets, attached to the Motion as Exhibit "E", do not comply with the Local Rules or U.S. Trustee Guidelines discussed above.    Entries are vague:  "Discovery review", "Doc Review/ research", and "Prep and review" are typical entries.  The services have not been placed into categories.  There is simply no way to determine what Cypress may have done to provide a substantial contribution to the estate.

## G.    Hoffman is Not Entitled to Compensation

70.    Hoffman is a broadcast valuation consultant.  Even if Wilmington prevails on its claim that it made a substantial contribution herein, because Hoffman is neither an attorney nor an accountant, Wilmington may not seek compensation for Hoffman's services pursuant to the plain meaning of 11 U.S.C. §503(b)(4).  *See In re Syntax-Brillian*, *supra*; *In re Granite Partners*, *supra* (fees of financial advisor denied).

## V. CONCLUSION

71.    Wilmington was a member of the Committee in this case.  The Bankruptcy Code was amended in 2005 to preclude official committee members from receiving substantial contribution compensation for the attorney or accountant fees or expenses they incurred in the performance of

30

their duties as a committee member.  11 U.S.C. 503(b)(3)(D) and 503(b)(4).  As the Third Circuit observed in *First Merchants Acceptance Corp. v. J. C. Bradford & Co.*, 198 F.3d at 400: "if every member of a committee were to claim attorney's and accountant's fees, there would be a proliferation of administrative expenses which could unnecessarily drain estate assets."

72.     Even if Wilmington is eligible to recover under Section 503(b), Wilmington did not make a substantial contribution to this case.  Wilmington, the holder of a $759 million subordinated claim, acted primarily in its own interest.   Although it participated extensively in this case to advance its position, extensive participation does not translate into a substantial contribution.  The record shows that many parties participated in this case over an extended period of time.  Wilmington has appealed from the very results it claims credit for in the Application.  Wilmington and its professionals massively duplicated the efforts of other parties, primarily the efforts of the Committee.

73.     The Application does not comply with the Local Bankruptcy Rules for the District of Delaware or the U.S. Trustee Guidelines governing fee applications.  The exhibits do not comply with the applicable rules, and it is not possible to determine the reasonableness of the compensation sought.  Even if it can be found that Wilmington made a substantial contribution in this case, the Application should be denied because Wilmington has not met its burden of proof.

74.     Finally, as a matter of law, even if Wilmington is found to have made a substantial contribution in this case, Section 503(b)(4) limits recovery to the reasonable fees of its attorneys and accountants only.  Fees for time spent by Wilmington's own personnel and the fees of Mesirow, Morton, Cypress and Hoffman are not recoverable.

WHEREFORE the U.S. Trustee requests that this Court issue an order denying the

Application and for such other and further relief as the court deems just and proper.

Respectfully submitted,

**Roberta A. DeAngelis**
**UNITED STATES TRUSTEE REGION THREE**


Date: April 11, 2013          **BY:**_____/s/  David L. Buchbinder_____
David L. Buchbinder., Esquire
Trial Attorney
J. Caleb Boggs Federal Building
844 King Street, Room 2207, Lockbox 35
Wilmington, DE  19801
(302) 573-6491
(302) 573-6497 (Fax)