## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Status Conference: April 24, 2013 at 10:00 a.m. (ET)** |
| | **Related to D.I. 13327, 13328, 13436, 13438, and 13449** |

## REPLY IN SUPPORT OF REORGANIZED DEBTORS' OBJECTION TO CREDITORS' COMMITTEE MEMBER FEE/EXPENSE CLAIMS ASSERTED BY (A) DEUTSCHE BANK TRUST COMPANY AMERICAS AND (B) WILMINGTON TRUST COMPANY

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

The Reorganized Debtors hereby reply to the responses filed by Deutsche Bank Trust Company Americas ("DBTCA") and Wilmington Trust Company ("WTC" and together with DBTCA, the "Trustees") to the *Reorganized Debtors' Objection To Creditors' Committee Member Fee/Expense Claims Asserted By (A) Deutsche Bank Trust Company Americas And (B) Wilmington Trust Company* [D.I. 13327] (the "Objection").[2]

## I.    PRELIMINARY STATEMENT

The Plan provides for the Reorganized Debtors to reimburse Creditors' Committee members only for fees incurred "*solely* in their capacity as members of the Creditors' Committee."[3]   It does not provide for the recovery of fees incurred by a Committee member in its capacity as a creditor or as a plan proponent, particularly as a proponent of a plan opposed by the Committee.   Further, there is no right to reimbursement under the Plan for fees incurred in opposing actions taken by the Committee.

Notwithstanding this clear construct, the Trustees now seek to recover more than $1.5 million in fees that relate to activities undertaken predominantly, if not exclusively, in their capacity as a creditor and/or a plan proponent.   Approximately $1.2 million of those fees relate to the Trustees' efforts to respond to discovery propounded in connection with the plan confirmation process; the remaining $300,000 relate to various activities undertaken by WTC in opposition to various positions taken by the Committee.   Neither amount is properly reimbursable under the Plan.

---

[2]    Capitalized terms not defined in this Reply have the meanings given to them in the Objection.   DBTCA's brief and supporting Declaration are cited as the "DBTCA Response" and the "Adler Declaration", and WTC's brief and supporting Declaration are cited as the "WTC Response" and the "Novod Declaration."

[3]    Plan § 1.1.52 (emphasis added).

The Trustees attempt to justify recovery of such fees by taking a very expansive view of their role as Committee members. For example, they go so far as to argue that fees incurred in connection with positions taken in opposition to Committee actions qualify as fees incurred "solely in their capacity as members of the Creditors' Committee." However, this argument collapses under its own weight. Indeed, taken to its logical conclusion, it would justify reimbursement of any and all fees incurred in connection with the bankruptcy cases, which clearly is not Trustees' position.[4]

The Trustees also contend that the disputed fees relating to confirmation discovery are recoverable because such discovery was not expressly limited to non-Committee related activities and that, as such, the Trustees were required to review Committee-related material in order to respond. This position again proves too much. The fact that Committee-related material had to be reviewed in responding to the discovery does not mean that the fees were incurred "solely in their capacity as members of the Creditors' Committee." To the contrary, as explained in greater detail below, they incurred the fees in responding to discovery that clearly related to the Trustees' advocacy in opposition to the Plan and in support of the Noteholder Plan.

In sum, the Trustees' Responses have not come close to establishing that any of the disputed fees qualify for reimbursement under the Plan.[5]

---

[4]    Indeed, the Trustees have conceded as much by withdrawing substantial amounts of their Confirmation Litigation Fee/Expense Claims. WTC, for example, now has withdrawn more than $233,756 in Committee Litigation Fees, sheepishly explaining that it "voluntarily reduced [the claim] in an attempt to be conservative, because there is an argument that that time may not entirely fit under Section 9.1.3 of the Plan." Novod Decl. at ¶ 10. DBTCA similarly conceded that approximately $88,500 of its Confirmation Litigation Fee/Expense Claim (for fees relating to the Allocation Disputes) is not reimbursable. DBTCA Response at 3 n.3.

[5]    The Trustees' Responses are virtually identical. This Reply addresses the Responses together except where required to respond to a point unique to one of the Trustees.

LAI-3190306v4

## II.    THE TRUSTEES DID NOT INCUR THE CONFIRMATION LITIGATION FEE/EXPENSE CLAIMS SOLELY IN THEIR CAPACITY AS MEMBERS OF THE CREDITORS' COMMITTEE

To start, the Trustees' argument that the Debtors are somehow attempting to limit their ability to "dissent[] from the majority position of the committee" is utter nonsense.[6] The Trustees clearly had that right.  However, it is equally clear that once a dissenting member takes its dispute beyond the confines of committee deliberations and acts independently, *as a creditor*, to oppose the committee's chosen course of action – as ratified by a majority of its members – the dissenting member does so in its own capacity and not as a committee member.

That is exactly what happened in these cases.  The Creditors' Committee settled certain LBO-Related Causes of Action and became a co-proponent of the Plan.  The Trustees disagreed with the Committee's decision to do so and took actions *as creditors* to oppose the Plan and prosecute the competing Noteholder Plan.  In the process, the Trustees received and responded to plan-related discovery from the Debtors.  They did so as proponents of the Noteholder Plan and opponents to the Plan, not as members of the Committee.

Nevertheless, the Trustees continue to argue for payment of fees they allegedly incurred in connection with responding to confirmation-related discovery.  Specifically, the Trustees contend that, because some of the discovery directed to them as proponents of the Noteholder Plan allegedly implicated information they received as members of the Committee, the Reorganized Debtors should be forced to bear the entire cost of their production.[7]  In so arguing, the Trustees ignore two critical facts.

---

[6]    WTC Response at 9; DBTCA Response at 8.

[7]    WTC Response at 9-10; DBTCA Response at 8-9.

- 3 -

*First*, the discovery the Debtors served on the Trustees was virtually identical to the discovery that the Debtors served on Aurelius and Law Debenture, the co-proponents of the Noteholder Plan who were not members of the Committee.[8]  Thus, the Trustees' assertion that "[m]ore than 60% of the Debtors' document requests were framed in [a] fashion that implicated [the Trustees'] membership on the Committee"[9] is demonstrably false.

*Second*, the Debtors did not serve discovery on the other members of the Committee. This conclusively proves that the discovery for which the Trustees now seek reimbursement had nothing to do with the Trustees' service as Committee members, much less that their fees were incurred *solely* in their capacity as members.  Had the Debtors sought information relating to membership on the Committee, they would have propounded discovery on *all* the Committee members, not just the two members who were proponents of the Noteholder Plan.

Rather than confront these dispositive facts, the Trustees instead misleadingly assert that *Aurelius and Law Debenture* served discovery "on *a number of members* of the Creditors' Committee" regarding "a wide range of topics concerning the Debtors, the LBO and other topics and did not distinguish whether such documents were being sought from the recipient solely in their capacity as a Committee member or as a creditor of the Debtors," noting that "[n]owhere in the instructions to the subpoenas are the document requests limited to each creditor solely in their capacities as Committee members."[10]  Remarkably, the Trustees fail to disclose that Aurelius and Law Debenture only served those document requests on *other* members of the

---

[8]   Objection at 7-8.

[9]   Novod Decl. ¶ 33; Adler Decl. ¶ 13 ("The Document Requests each contained 55 different requests.  Of these requests, 33 were plainly applicable to DBTCA in all capacities, including as a Committee member, and the remaining 22 were related to activity as a proponent of the Noteholder Plan.").

[10]  WTC Response at 3-4 (emphasis added); DBTCA Response at 3-4; Novod Decl. ¶ 23; Adler Decl. ¶ 12.

- 4 -

Committee and *not* on the Trustees themselves.  Accordingly, the discovery served by Aurelius and Law Debenture is completely irrelevant to the question of whether the fees purportedly incurred by the Trustees in response to discovery from *the Debtors* were incurred solely in the Trustees' capacity as members of the Committee.

The Trustees also make much of the time and expense incurred in complying with the Debtors' document requests, complaining about the number of custodians to be searched and the number and choice of search terms.[11]  Here again, the fact that the Debtors requested the Trustees to conduct searches for documents similar to those demanded by Aurelius and Law Debenture only serves to underscore the point that the Debtors did not seek discovery from the Trustees in their capacity as members of the Committee but rather in their capacity as objecting creditors and proponents of the Noteholder Plan.  This point is further shown by the fact that the Debtors withdrew their deposition notice to DBTCA upon the agreement that no DBTCA employee would be a witness at the confirmation hearing.[12]

Finally, the fact that the Trustees were required to preserve privileged Committee information in the course of responding to discovery requests does not magically transform the Trustees' alleged fees into reimbursable Creditors' Committee Member Fee/Expense Claims.  To the contrary, fees associated with a review for privileged Committee materials are no different than fees incurred in connection with any privilege review required by any discovery.

Simply put, the Trustees' Confirmation Litigation Fee/Expense Claims arose as a consequence of the Trustees' prosecution of the Noteholder Plan and opposition to the Plan.

---

[11]  WTC Response at 5; DBTCA Response at 4-5; Novod Decl. ¶¶ 26-31; Adler Decl. ¶¶ 13-17.
[12]  Adler Decl. ¶ 19.

LAI-3190306v4

They were not incurred solely in the Trustees' "capacity as members of the Creditors' Committee" and therefore are not subject to reimbursement pursuant to Section 9.1.3 of the Plan.

## III.   THE TRUSTEES' FEES RELATING TO THE QUASHED AURELIUS SUBPOENAS (TO WHICH THEY CONSENTED) ARE NOT REIMBURSABLE

The Trustees next claim that they should be reimbursed for their alleged fees related to subpoenas issued by Aurelius, one of their co-proponents of the Noteholder Plan, because Aurelius sought information about Committee deliberations.[13]

Those subpoenas, however, were an obvious charade. They were issued by Aurelius, *with the support of the Trustees*,[14] in an effort to obtain confidential Committee information because Aurelius was dissatisfied with testimony from other Committee members. The Committee promptly and successfully sought to quash both subpoenas.[15] The Trustees should not have spent time preparing for depositions given the likelihood that they would not go forward, and the Reorganized Debtors should not be forced to bear the cost of this failed strategic maneuver by the co-proponents of the Noteholder Plan.

## IV.   THE PLAN HAS BEEN APPLIED CONSISTENTLY

The Trustees further complain that the Reorganized Debtors are discriminating against them by paying the fee requests of other members of the Creditors' Committee while objecting to portions of the Trustees' claims.[16] Not so.

For one thing, as explained in the Objection, the amount of the Creditors' Committee Member Fee/Expense Claims asserted by the Trustees are vastly greater than the amount of the claims submitted by other members. In fact, the claim asserted by each Trustee is nearly equal to

---

[13]  WTC Response at 10-11; DBTCA Response at 9-10.

[14]  Mester Decl. Ex. F at 2.

[15]  [D.I. 8240]. Tellingly, neither of the Trustees joined the Committee's motion to quash.

[16]  WTC Response at 11-12; DBTCA Response at 10-11.

the *combined* total of the claims asserted by the other five members of the Committee. Moreover, unlike the Trustees, the other members of the Committee clearly limited themselves to fees relating solely to their service as Committee members.

In an attempt to show alleged discriminatory treatment, the Trustees assert that the Reorganized Debtors paid the claim filed by William Niese notwithstanding that "[t]he subpoenas for Mr. Niese and Teitlebaum and Baskin were not limited to Committee service; . . . the requests went far beyond Mr. Niese's capacity as a Committee member."[17]  In so arguing, however, the Trustees ignore the basic fact that the only reason that Mr. Niese and his counsel received discovery in the first place was because Mr. Niese was a member of the Creditors' Committee, a co-proponent of the Plan that was opposed by the entity that served the discovery (Aurelius).  Tellingly, as established in the Objection (and ignored by the Trustees), the discovery that Mr. Niese received was virtually identical to the discovery received by the other members of the Committee targeted by Aurelius in connection with the confirmation litigation, making clear that the discovery was propounded to the Committee members in their capacities as Committee members.

In any event, contrary to the Trustees' assertions, the discovery propounded on Mr. Niese related almost exclusively to his service as a Committee member.  The Trustees claim that "the requests went far beyond Mr. Niese's capacity as a Committee member."[18]  However, in support of this position, they point only to "request number 73 [, which] seeks all documents relating to the Retiree Claimant Settlement Agreement."[19]  As explained in the Objection (and ignored by the Trustees), that was the *only* request (out of *seventy-five* total requests) concerning the Retiree

---

[17]  WTC Response at 11; DBTCA Response at 10.

[18]  WTC Response at 11; DBTCA Response at 10.

[19]  WTC Response at 11; DBTCA Response at 11.

Claimant Settlement Agreement, which itself formed a part of the Plan.  Moreover, the Trustees

simply disregard the fact that Aurelius made the same request for information relating to the

Retiree Claimant Settlement Agreement to other members of the Committee who were not

parties to the settlement, making clear that the request made to Mr. Niese was made in his

capacity as a member of the Committee.[20]

In short, the Reorganized Debtors have applied the Plan consistently as to all members of

the Committee, and their payment of the legitimate Creditors' Committee Fee/Expense Claims

(including payment of more than $1.5 million to the Trustees themselves) does nothing to

support the Trustees' demand for payment of more than $1.5 million of their remaining,

illegitimate claims.

## V.    WTC HAS NOT JUSTIFIED ITS DISPUTED COMMITTEE SERVICE FEE/EXPENSE CLAIM

The Reorganized Debtors also objected to approximately $300,000 of fees that WTC

characterized as a Committee Service Fee/Expense Claim on the grounds that the fees were for

actions taken in opposition to the Committee (such as supporting Aurelius' motion to disqualify

counsel to the Committee) and were unreasonably disproportionate to the fees incurred by other

members of the Committee.[21]

WTC's only response to this objection is that it had "fiduciary responsibilities" and that

"simply because the majority approves the course does not mean that the course is the right one

or in the best interests of creditors."[22]  That is true enough.  However, as explained above, once a

dissenting member of a committee takes its dispute beyond the confines of committee

---

[20]    Mester Decl. Ex. M at 11; Ex. N at 13.

[21]    Objection at 12-14.

[22]    WTC Response at 12-13.

- 8 -

deliberations and acts independently as a creditor by opposing the committee's chosen course of action – such as, for example, by supporting disqualification of the counsel chosen by a majority of the committee's members – the dissenting member does so in its own creditor capacity and not as a committee member.

Here, it cannot possibly be said that WTC's actions in seeking disqualification of counsel to the Committee, in opposing the Committee's motion for standing to prosecute the LBO-Related Causes of Action, and in defending against the Committee's motion for an order finding that WTC had violated the automatic stay by pursuing estate claims against the Senior Lenders were incurred "solely in [its] capacity as a member of the Creditors' Committee." As a result, WTC's disputed Committee Service Fee/Expense Claim of $301,863.30 is not reimbursable under the Plan and should be disallowed.

## VI.    CONCLUSION

Accordingly, for all of the foregoing reasons and for the reasons set forth in the Objection, the Reorganized Debtors request that the Court deny the unpaid portions of the Creditors' Committee Fee/Expense Claims of the Trustees as set forth herein.

Dated:  April 22, 2013

SIDLEY AUSTIN LLP
James F. Conlan
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000

-and-

James F. Bendernagel, Jr.
Ronald S. Flagg
1501 K Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 736-8000

-and-

LAI-3190306v4

JONES DAY
Bruce Bennett
James O. Johnston
Joshua M. Mester
555 South Flower Street, 50th Floor
Los Angeles, CA  90071-2300
Telephone:  (213) 489-3939

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
     Norman L. Pernick (No. 2290)
     J. Kate Stickles (No. 2917)
     Patrick J. Reilley (No. 4451)
     500 Delaware Avenue, Suite 1410
     Wilmington, DE  19801
     Telephone:  (302) 652-3131

ATTORNEYS FOR REORGANIZED DEBTORS

- 10 -