IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Ref. Docket Nos. 4091, 4349, 4350, 4394, 5016 and 13408. |

### REORGANIZED DEBTORS' SUPPLEMENTAL OBJECTION TO THE CLAIMS OF MARBURY VON BRIESEN AND HERBERT EYE PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1

The reorganized debtors in the above-captioned chapter 11 cases (the "Reorganized Debtors"), by and through their undersigned counsel, hereby submit this supplemental objection (the "Supplemental Objection") to Claim No. 5428 (the "von Briesen Claim") of Mr. Marbury von Briesen and Claim No. 3658 (the "Eye Claim" and together with the von Briesen Claim, the "von Briesen/Eye Claims") of Mr. Herbert Eye (together with Mr.

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

CH1 7401949

von Briesen, the "Claimants") asserted against the Debtors.[2] This Supplemental Objection (i) supplements the Debtors' previously-filed objection to the von Briesen/Eye Claims, as set forth in the *Debtors' Twenty-Fourth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1* [Docket No. 4091] (the "Objection")[3] and (ii) replies to the responses to the Objection filed by Mr. von Briesen [Docket Nos. 4349, 5016 and 13408] (the "Von Briesen Responses") and Mr. Eye [Docket Nos. 4350 and 4394] (the "Eye Responses" and, together with the Von Briesen Responses, the "Responses"). In support of this Supplemental Objection, the Reorganized Debtors rely on the *Supplemental Declaration of Michael Bourgon in Support of Reorganized Debtors' Supplemental Objection to Claims of Marbury Von Briesen and Herbert Eye*, a copy of which is attached hereto as Exhibit A.

## PRELIMINARY STATEMENT

1. The Claimants, two retired former employees of The Baltimore Sun Company (n/k/a The Baltimore Sun Company, LLC) ("The Baltimore Sun"), and their spouses, received post-retirement healthcare coverage from The Baltimore Sun, free of charge, prior to the Petition Date. Although the Debtors' retiree healthcare benefits plan had certain monetary costs, for over twenty years the Claimants' costs and those of their spouses were borne by the Debtors. Prior to the Petition Date, the Debtors notified the Claimants, and all other similarly-situated retirees, that the Debtors were changing the provider of their retiree healthcare benefits.

---

[2] As used herein, the term "Debtors" refers to Tribune Company and its affiliates, including The Baltimore Sun Company, that filed voluntary petitions for relief under chapter 11 on December 8, 2008 (the "Petition Date"), and "Reorganized Debtors" refers to the successors to the Debtors following their emergence from these chapter 11 cases on December 31, 2012, the effective date (the "Effective Date") of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Plan"), which was confirmed by this Court on July 23, 2012 [see Docket No. 12074].

[3] The Objection is supported by the *Declaration of Chandler Bigelow III in Support of Debtors' Twenty-Fourth Omnibus (Substantive) Objection*, attached thereto as Exhibit B.

The plan offered by such provider had a monthly cost of coverage which would be borne by the retirees, including the Claimants. The Debtors gave the Claimants the opportunity to elect to enroll in the new plan, or to forego receiving continued healthcare benefits from the Debtors. The Claimants elected not to continue participating in the Debtors' retiree healthcare benefits program.

        2.        Notwithstanding their choice, the Claimants filed proofs of claim in these chapter 11 cases on account of their purported go-forward health insurance costs. While the Debtors understand that the Claimants received no-cost healthcare benefits for many years and, of course, would have preferred to keep such benefits in place, the Debtors' prepetition transition to a substitute healthcare plan for their retirees, with certain costs to be borne by the Claimants and all other retirees, simply does not form the basis for claims against the Debtors. The Debtors were not obligated to offer a lifetime of free healthcare benefits to the Claimants, as such benefits were not provided pursuant to any contract nor was any consideration (other than, arguably, past consideration) provided by the Claimants for such benefits. Furthermore, the Claimants did not rely upon receipt of such benefits to their detriment. Finally, no documentation supports the Eye Claim, while the only documentation supporting the von Briesen Claim establishes that the Debtors had the right to make precisely the modification to Mr. von Briesen's benefits that is the basis for his claim. Accordingly, for the reasons discussed in this Supplemental Objection, the von Briesen/Eye Claims do not articulate valid rights to payment from any of the Debtors, and should be disallowed and expunged in their entirety.

CH1 7401949

## RELEVANT BACKGROUND[4]

### A. The Claimants' Retiree Healthcare Benefits

3. The Claimants are former employees of The Baltimore Sun, a Debtor in these chapter 11 cases. Mr. Eye retired from The Baltimore Sun in September 1984, and Mr. von Briesen retired from The Baltimore Sun in January 1990.

4. Prior to Mr. von Briesen's retirement, on December 19, 1989, Pat Klemens, then the Director of Human Resources at The Baltimore Sun, sent an inter-office memo, a copy of which is attached hereto as Exhibit B (the "Internal Memorandum") and which attached to the von Briesen Claim, to Dick Basoco, then a Senior Vice President at The Baltimore Sun, providing that "in recognition" of Mr. von Briesen's service with The Baltimore Sun, the human resources department recommended that he and his wife continue to receive medical benefits under the Blue Cross Wrap-Around Plan (the "Blue Cross Plan") as though he were still actively employed [see Docket Nos. 4349 and 13408.] The Internal Memorandum further provided that "Mr. von Briesen would be responsible for quarterly payments to the payroll department only for the contribution portion required of active employees" and that upon Mr. von Briesen turning age 65, such payments would be assumed by The Baltimore Sun. Shortly thereafter, on December 29, 1989, Mr. von Briesen signed a form, a copy of which is attached hereto as Exhibit C (the "Election Form"), which detailed the insurance and medical coverage that Mr. von Briesen would continue to receive upon his retirement from The Baltimore Sun. Notably, the Election Form provided that "[The Baltimore Sun] reviews its benefit packages periodically and reserves the right to change or amend any of the benefits. You would be notified prior to January 1st in any year in which a benefit change will occur."

---

[4] The material facts presented in this Supplemental Objection are not in dispute. Accordingly, the dispute presented herein can be adjudicated as a matter of law.

4

CH1 7401949

5.	To the best of the Debtors' knowledge, and based upon the information included with the Eye Claim, upon Mr. Eye's retirement, he also enrolled in the Blue Cross Plan under similar circumstances. Neither Mr. Eye nor the Debtors have identified any contract or other agreement pursuant to which the Debtors were obligated to provide health benefits to Mr. Eye or his spouse indefinitely, nor has Mr. Eye pointed to any other basis on which the Debtors were obligated to do so.

**B.	The Change to the SecureHorizons Plan**

6.	Prior to the Petition Date, on October 30, 2008, the Debtors sent a notice (the "Plan Change Notice") to all retirees enrolled in the Debtors' retiree healthcare plans, a copy of which is attached hereto as Exhibit D. The Plan Change Notice advised retirees that beginning on January 1, 2009, the Debtors' retiree healthcare benefits would be offered exclusively through UnitedHealthcare under the SecureHorizons MedicareDirect plan (the "SecureHorizons Plan"). Both Claimants received the Plan Change Notice. As provided in the Plan Change Notice, the SecureHorizons Plan had a $246.05 monthly cost to participants. The Plan Change Notice further provided that recipients had until December 31, 2008 (the "Enrollment Deadline") to enroll in the SecureHorizons Plan, and if a recipient did not enroll by the Enrollment Deadline, such recipient "will not have Tribune medical coverage." Neither of the Claimants chose to enroll in the SecureHorizons Plan. Accordingly, the Debtors discontinued the provision of healthcare benefits to the Claimants.[5]

---

[5] On the Petition Date, the Debtors filed a motion seeking, among other things, authority to continue their employee benefit programs in the ordinary course [see Docket No. 9] (the "Employee Wages/Benefits Motion"). The Employee Wages/Benefits Motion disclosed the change of retiree healthcare benefits to the SecureHorizons Plan. Specifically, the Employee Wages/Benefits Motion provided that "[t]he Debtors modified their self-insured and insured healthcare programs for Employees and retirees prior to the Petition Date by making arrangements for all healthcare to be provided by one administrator and carrier, United Healthcare. Employees and retirees were notified of these changes a number of months prior to the Petition Date, and the overall changes were orchestrated prepetition. These changes to the Debtors' healthcare programs will be fully operational as of January 1, 2009." See Employee Wages/Benefits Motion ¶ 47 n. 11; see also, *Affidavit of Chandler Bigelow III, Senior Vice President*

5

CHI 7401949

### C. The Von Briesen/Eye Claims and the Status of the Dispute

7. On June 8, 2009, Mr. Eye filed the Eye Claim. On June 12, 2009, Mr. von Briesen filed the von Briesen Claim. Neither of the von Briesen/Eye Claims is asserted against a particular Debtor. Each of the von Briesen/Eye Claims is asserted by the Claimants to be for the go-forward costs of healthcare benefits after the Claimants elected not to enroll in the SecureHorizons Plan. The Eye Claim appears to be calculated based on what Mr. Eye alleges the cost would be for he and his spouse to be enrolled in the SecureHorizons Plan for the remainder of their lives. Mr. von Briesen appears to have calculated the von Briesen Claim based on the purported cost of obtaining a healthcare plan on the open market for Mr. von Briesen and his spouse for the remainder of their lives, which healthcare plan is similar to the Blue Cross Plan in which Mr. von Briesen was enrolled prior to his election not to enroll in the SecureHorizons Plan.

8. The Debtors filed the Objection on April 16, 2010. The Objection seeks to expunge, among other claims, the von Briesen/Eye Claims as claims for which the Debtors have no liability. Mr. von Briesen filed the three von Briesen Responses on May 3, 2010, July 12, 2010 and April 1, 2013. [See Docket Nos. 4349, 5016 and 13408]. Mr. Eye filed the two Eye Responses on May 10, 2010 and May 14, 2010. [See Docket Nos. 4350 and 4394.] The Responses appear only to restate the arguments made in the von Briesen/Eye Claims, without providing any additional relevant support; namely, that the relevant Debtors had been paying for the Claimants' healthcare benefits for many years, and are therefore obligated to continue doing so.

---

*and Chief Financial Officer of Tribune Company in Support of First Day Motions* ¶ 203 n. 32.

9. After the filing of the initial Responses, the parties agreed to continue the Objection with respect to the Claimants' claims, during which time the Debtors' counsel has engaged in discussions with each of the Claimants regarding a consensual resolution. Those discussions have not resulted in a consensual resolution of the Objection as it relates to the Claimants' claims.

## ARGUMENT

10. A "claim" in bankruptcy is a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5). The Supreme Court has held that a "'right to payment' [means] nothing more nor less than an enforceable obligation." See Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) (internal citation omitted); see also In re Rodriguez, 629 F.3d 136, 139 (3d Cir. 2010) (citing Johnson). Under section 502(b)(1) of the Bankruptcy Code, a claim is allowable unless it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1); In re W.R. Grace & Co., 346 B.R. 672, 674 (Bankr. D. Del. 2006) ("Section 502(b)(1) requires disallowance of a claim to the extent that 'such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such a claim is contingent or unmatured'"). Further, "what claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 161 (1946) (footnote omitted) (partially superseded by statute but not judicially overturned). This approach is also followed in this jurisdiction. See, e.g., W.R. Grace at 674 ("The validity and legality of claims generally is determined by applicable nonbankruptcy law.").

7

11. The Debtors have no liability for the von Briesen/Eye Claims because neither claim is based on an obligation of any of the Debtors which was enforceable prior to the Petition Date. The Claimants received many years of cost-free healthcare benefits at the sole discretion of The Baltimore Sun, based solely on their past services to the Debtors, and not pursuant to any contractual or other ongoing obligation of The Baltimore Sun or any of the other Debtors. The Debtors were entitled at any time to modify the benefits, rescind the benefits, or to require the Claimants to abide by the terms on which healthcare benefits are provided to their other retirees; namely, by requiring the Claimants to pay a portion of the costs of such benefits. After the relevant plans were modified to require all retirees to pay a portion of their healthcare benefit costs, the Claimants elected not to continue receiving retiree healthcare benefits based on that cost. The Claimants must now accept the results of that decision, but they cannot decline to enroll in the Debtors' retiree healthcare and then choose their own preferred healthcare plan while imposing the costs of that new plan on the Debtors. In attempting to do so, the Claimants seek to put themselves in a more favorable position than similarly-situated retirees. Those other retirees had the same options as those presented to the Claimants, and chose to either continue with the Debtors' preferred healthcare provider or seek an alternative option at their own expense. Those retirees did not file claims in these chapter 11 cases. The Claimants, on the other hand, both seek to have alternative coverage, and to have the Debtors' estates bear the burden of the costs. No agreement or applicable law can support such an outcome.

### A. Free Healthcare to the Claimants was Provided Solely at the Debtors' Discretion

12. Prior to the Petition Date, the Debtors never had an enforceable obligation to provide the Claimants with healthcare benefits under the law of any state whose law might be

CH1 7401949

applicable.[6] As a matter of straightforward contract law, "[t]he mere fact that one person promises something to another creates no legal duty and makes no legal remedy available in case of non-performance." 2-5 Corbin on Contracts § 5.2. A bedrock principle of contract law is that to be enforceable, a contract must be supported by consideration. Further, "consideration is designed primarily to protect the promisor from being compelled to perform donative promises." Id.

13. The Claimants' argument that they are entitled to a lifetime of free healthcare benefits is based principally on their years of service for The Baltimore Sun. Under state law, their past performance is not adequate consideration for a present obligation. See, e.g., Continental Ins. Co. v. Rutledge & Co., 750 A.2d 1219, 1232 (Del. Ch. 1999) ("Delaware courts define consideration as a benefit to a promisor or a detriment to a promisee pursuant to the promisor's request. Past consideration, as opposed to true consideration, however, cannot form the basis for a binding contract"); Reece v. Reece, 212 A.2d 468, 475 (Md. 1965) ("The general rule is that past consideration is insufficient to support a present promise"); Johnson v. Johnson, 614 N.E.2d 348, 355 (Ill. App. Ct. 1993) ("However, the general rule dictates that if the alleged consideration for a promise has been conferred prior to the promise upon which alleged agreement is based, there is no valid contract.").

14. There is no agreement pursuant to which the Claimants are entitled to receive healthcare benefits from any of the Debtors, and no valid consideration being provided by either of the Claimants even if such an agreement could be said to exist. The only form of consideration provided by the Claimants is past consideration in the form of the work they performed while employed by The Baltimore Sun. Accordingly, as a matter of contract law, at

---

[6] In this Supplemental Objection, the Debtors have presented case law from state courts in Delaware, Maryland and Illinois.

any point before or after the Petition Date, the provision of healthcare benefits at no charge to the Claimants was not an enforceable obligation. The Debtors were entitled to modify the terms on which they provided healthcare benefits to the Claimants. The Debtors did so as part of a modification applicable to all retirees. The Claimants then elected not to continue receiving healthcare benefits on the modified terms, as was their right.

15. The von Briesen/Eye Claims, and the subsequently filed Responses, also rely, in part, on the mere fact that the Claimants were provided free healthcare benefits for numerous years. The Claimants essentially argue that the Debtors were estopped from modifying the terms of or discontinuing their health benefits. However, the von Briesen/Eye Claims are not supportable on promissory estoppel grounds. Although The Baltimore Sun provided the Claimants with continued healthcare benefits, and the Claimants likely expected these benefits to continue, the Claimants did not rely on The Baltimore Sun to their detriment. See Newton Tractor Sales, Inc. v. Kubota Tractor Corp., 906 N.E.2d 520, 523-24 (Ill. 2009) (to establish a promissory estoppel claim "the plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment."); Chrysler Corp. v. Chaplake Holdings, Ltd., 822 A.2d 1024, 1032 (Del. 2003) (setting forth the plaintiff's burden with respect to promissory estoppel); Pavel Enters. v. A. S. Johnson Co., 647 A.2d 521, 532 (Md. 1996) (same); Beatty v. Western College, 52 N.E. 432, 436 (Ill. 1898) ("It is the expending of money, etc., or incurring a legal liability on the faith of the promise, which gives the right of action.").

16. The Debtors covered the cost of the Claimants' healthcare coverage for many years solely in recognition of the Claimants' past service to The Baltimore Sun. At no

point, however, did the Claimants' election to accept such benefits prevent them from obtaining, or impede their ability to obtain, alternative healthcare. Moreover, the Claimants' reliance on the continuous receipt of healthcare coverage could not possibly have been to their detriment. The applicable proofs of claim state that each of the Claimants have expended no money during such time, and they also did not forego more desirable options. For these reasons, the fact that the Claimants benefited from years of no-cost healthcare benefits does not entitle the Claimants to the continuation of such benefits, or entitle them to claims against the Debtors in these chapter 11 cases.

### B. The Documentation Supporting the Von Briesen/Eye Claims Does Not Evidence a Binding Obligation to Provide Healthcare Benefits

17. In the Third Circuit, a claim must be supported by sufficient factual evidence to support such claim. See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992) ("[T]he claimant must allege facts sufficient to support the claim. If the averments in [the claimant's] filed claim meet this standard of sufficiency, it is '*prima facie*' valid."). The Eye Claim fails to provide any documentation providing that The Baltimore Sun was obligated to provide Mr. Eye with a lifetime of healthcare benefits, nor does it allege facts evidencing such an obligation. Instead, the Eye Claim (i) simply states that Mr. Eye was provided with a prepaid health benefits package for life and (ii) is supported by an Explanation of Benefits dated March 1, 2007, which is attached thereto. On the other hand, Mr. von Briesen attached to his claim the Internal Memorandum as support for his assertion that The Baltimore Sun was legally bound to provide him with a lifetime of free healthcare benefits.

18. The Claimants have not provided evidence sufficient to establish that their claims are *prima facie* valid. The Eye Claim is supported only in narrative and is devoid of documentary support of a binding obligation. Furthermore, the Debtors have reviewed their

11

books and records, and are unable to find any contracts or agreements memorializing a legal obligation to provide Mr. Eye with free healthcare benefits for the remainder of his life. Mr. von Briesen, on the other hand, has provided only the Internal Memorandum in support of his claim. Through a search of their own books and records, the Debtors were also able to obtain the Election Form. Both of these documents support the Debtors' objection. First, the Internal Memorandum is not a contract and is not signed by Mr. von Briesen. Second, it makes clear that the continued medical coverage is provided solely "in recognition of Mr. von Briesen's 20 years of service." In light of the discussion above, his prior service, for which he was compensated and provided benefits, is not consideration for a lifetime of paid medical coverage. Third, nowhere does the Internal Memorandum state that his medical benefits will continue for life or for any specified duration. As for the Election Form, which was signed by Mr. von Briesen, it explicitly provides that "The company reviews its benefit packages periodically and reserves the right to change or amend any of the benefits. You would be notified prior to January 1st in any year in which a benefit change will occur." The Baltimore Sun complied with this statement. Specifically, the Plan Change Notice was dated October 30, 2008 and provided that a benefit change would occur on January 1, 2009. The Plan Change Notice, which was sent to both of the Claimants and was applicable to The Baltimore Sun's retirees generally, provided that the Claimants could elect to change to the SecureHorizons Plan, or could forego Tribune medical coverage. Both of the Claimants elected to forego Tribune coverage. Accordingly, the Claimants have provided no adequate documentary evidence to supports their claims, and the only documentary evidence that exists supports the Objection.

      19. In summary, the Debtors did not have an obligation to provide the Claimants with a lifetime of free healthcare benefits, as there was no consideration for such a

promise. Furthermore, the Claimants did not rely upon receipt of such benefits to their detriment. Finally, the little documentary support provided by the Claimants does not support the von Briesen/Eye Claims. For these reasons, the Objection should be sustained.

## **NOTICE**

20. Notice of this Supplemental Objection has been provided to: (i) the Office of the United States Trustee, (ii) the Claimants, and (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **NO PRIOR REQUEST**

21. Other than in the Objection, no previous request for the relief sought in this Supplemental Objection has been made to this Court or any other Court.

CH1 7401949

WHEREFORE, for the reasons set forth herein and in the Objection, the Debtors respectfully request that the Court overrule the Responses and sustain the Objection as it relates to the von Briesen/Eye Claims.

Dated: Wilmington, Delaware
April 22, 2013

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
Matthew G. Martinez
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: __/s/ J. Kate Stickles__
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR REORGANIZED DEBTORS

CH1 7401949