# KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

(212) 506-1700

FACSIMILE: (212) 506-1800

WRITER'S DIRECT DIAL NUMBER

ATLANTA
HOUSTON
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY

May 6, 2013

Honorable Kevin J. Carey
United States Bankruptcy Court
District of Delaware
824 North Market Street
Wilmington, Delaware 19801

    Re:    *In re Tribune Company, et al.*, Case No. 08-13141 (KJC)

Dear Judge Carey:

    We submit this letter on behalf of Law Debenture Trust Company of New York ("Law Debenture" and Deutsche Bank Trust Company Americas ("Deutsche Bank" and together "Trustees").

    At the April 24, 2013 status conference on, among other things, Law Debenture's Substantial Contribution Application and Deutsche Bank's Committee Fee Application (the "Applications") the Court requested, but did not order, the parties to mediation. Failing that, the Court indicated it would appoint an expert witness pursuant to Rule 706 of the Federal Rules of Evidence. The Company since has refused to mediate, leaving the Court's alternative of expert appointment.

    The Trustees respectfully request that the Court reconsider the appointment of an expert witness. The Trustees submit based on the nature and content of the pending Applications and the objections to them, that this Court is in the best position to decide the matters without assistance from a non-party witness uninvolved in the proceedings.[1] The Court very patiently oversaw the entirety of the 4-year Tribune bankruptcy. Inasmuch as the Applications seek recovery for actions and inactions taken during specified periods of the Tribune bankruptcy, and inasmuch as the Court is well-versed in the applicable law, having itself adjudicated and written opinions on similar applications in other cases, the Trustees submit that the Court has the unique experiential and knowledge bases to decide the Applications. It seems clear that with the

---

[1] In addition, Deutsche Bank notes that there are only legal issues that need to be resolved in its application for reimbursement under Section 9.1.3 of the Plan.

inclusion of an outside, as of yet uninformed third party, there will be some, perhaps material additional expense. In this regard, the Trustees sought agreement on a $200,000 capped budget for the expert. The Company rejected, finding that amount to be insufficient based on its view that the expert need be educated on much of the various proceedings and matters that took place in the Tribune cases. The Company also rejected both a $250,000 and a $300,000 budget, stating in addition to the foregoing reason that, like the examiner, the expert must set or at least agree to the work plan and determine its own costs. The costs contemplated by the Company may very well leave the Trustees without sufficient funds to pay any portion of the costs that the Court allocates to them. In addition, as indicated below, although the Trustees have a limited reserve for the pending appeals of the Confirmation Order and the pending Applications, the Trustees reserved this amount for the reasonably expected single hearing on the Applications, but not for the payment of an additional appointed expert. For the foregoing reasons and given the Company's unwillingness to set a capped budget for the expert, the Trustees respectfully request the Court reconsider its desire to appoint an expert and decide the Applications on the pleadings.

     If the Court continues to believe that the appointment of an expert is appropriate, the Trustees have discussed with the Reorganized Debtors and the United States Trustee a draft protocol for the expert witness that outlines a process for its work. Subject to favorable resolution of the cost matters, the Trustees are generally agreeable to the draft protocol and can support it once finalized.

     As to costs, the Trustees respectfully request that the Reorganized Debtors bear the expense of the expert. Rule 706 provides that the expert's compensation is payable "in the proportion and at the time that the court directs." Further, "[a] number of circuits have recognized that Rule [706(c)] grants a district court the discretion to apportion all the costs of an expert to one side." *Aiello v. Town of Brookhaven*, 149 F. Supp. 2d 11, 14 (E.D.N.Y. 2001) (quoting *Ledford v. Sullivan*, 105 F.3d 354, 360 (7th Cir. 1997)); *see also McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir.), *vacated and remanded on other grounds,* 502 U.S. 903, 112 S. Ct. 291, 116 L. Ed. 2d 236 (1991) (finding that the phrase "such proportion as the court directs," *in an appropriate case,* permits the district court to apportion all costs to one side); *Webster v. Sowders,* 846 F.2d 1032, 1038-39 (6th Cir. 1988) (stating that "[a] District Court has authority to apportion costs under this rule [706(c)], including excusing impecunious parties from their share"). Here, as the Court previously recognized in connection with the hearing on the Trustees' motions to stay implementation of the Confirmation Order, the indenture trustees have "no well of cash into which they can dig to pay" for an expert. *See* 8/17/12 Hrg. Tr. at 227: 2-6. In contrast, the Reorganized Debtors have the means to compensate the expert. Just as it appears unlikely that the Court would compel the United States Trustee to pay its share of the expert's compensation because of its inability to pay even though it is a party to the disputes, the Court should afford the same treatment to the Trustees.

     Alternatively, the Trustees request that any amounts that the Court decides the Trustees ultimately must pay be limited to and payable only from any recovery on the pending Applications. Thus, if the Court ultimately denies the Applications *in toto*, then the Reorganized Debtors would remain responsible for the compensation of the expert, as the Trustees would again have no source of payment. If the Trustees are awarded recovery, the Trustees would first use that recovery to pay the fees and expenses of the Trustees in the expert and adjudication processes and then make payment to the expert of its expenses limited to any recovery then

remaining. This approach enables sharing of the expenses but recognizes that, absent recovery, the Trustees are without funds to pay and that the recoveries are the only "well of cash" from which the Trustees can draw.

As mentioned above, the Trustees also request that pursuant to Rule 706(c) the Court fix a limit on the fees and expenses of the expert witness. *See* Fed. R. Evid. 706(c) ("[t]he expert is entitled to reasonable compensation, as set by the court."); 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure, § 6305 (1997) ("the courts have broad discretion to set compensation."). The legal and factual issues in dispute are discrete, discovery is very limited, and the parties have already completely briefed the issues. The Trustees do not agree that the period of time in question is all that lengthy as the Company submits. Accordingly, the Trustees propose that the Court set a cap on the expert's fees and expenses at $200,000.

                                      Respectfully,

                                      David S. Rosner
                                      David Adler

cc:     James O. Johnston
        James F. Bendernagel, Jr.
        David. L. Buchbinder
        Robert J. Stark