# BROWNRUDNICK

ROBERT J STARK
direct dial: (212) 209-4862
fax: (212) 209-4801
rstark@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

May 5, 2013

Honorable Kevin J. Carey
United States Bankruptcy court
District of Delaware
824 North Market Street
Wilmington, Delaware 19801

RE:   In re Tribune Company, Et al., Case No. 08-13141 (KJC)

Dear Judge Carey:

We submit this letter on behalf of Wilmington Trust Company ("Wilmington Trust") in connection with the Court's proposal to appoint an expert witness pursuant to Rule 706 of the Federal Rules of Evidence to issue a report with respect to certain disputes pending in the above-referenced cases.

In light of the Court's views expressed at the April 24th status conference, we have attempted in good faith to resolve all issues concerning the selection of an expert and the procedure for the issuance of a report by such expert. We have met and conferred on several occasions with counsel for reorganized Tribune Company (the "Reorganized Debtors"), the Office of the United States Trustee (the "UST"), counsel for Deutsche Bank Trust Company Americas ("DBTCA") and counsel for Law Debenture Trust Company of New York (with Wilmington Trust and DBTCA, the "Indenture Trustees") in order to find common ground and narrow the issues of disagreement. This process yielded consensus concerning (i) the selection of Judge Joseph J. Farnan, Jr. as expert, subject to confirmation of his availability for this engagement, and (ii) the form of a protocol to guide the expert's work.

Unfortunately, the Reorganized Debtors and the Indenture Trustees have been unable to reach common ground on how to allocate the expert's fees as well as how to fund such fees. The cost allocation and funding mechanism concerning an expert's fees is very important to Wilmington Trust and its professionals for two primary reasons.

First, as I mentioned at the April 24th status conference, Wilmington Trust and its professionals are the only parties to this dispute with invoices substantially unpaid with respect to Tribune's bankruptcy cases. As a matter of practice in the restructuring world, Wilmington Trust typically retains outside counsel to advise it concerning its service as indenture trustee in a restructuring, but does not advance its own funds to satisfy its professionals' fees and expenses since such fees and expenses are payable by the issuer under the applicable indenture. This case is no different, as

Wilmington Trust has stipulated in engagement letters with its professionals that it will not advance its own funds to satisfy professionals' invoices.

Second, while Wilmington Trust's claims under 11 U.S.C. §§503(b)(3)(D) and 503(b)(4) were the subject of colloquy at the April 24th status conference, those claims represent only a subset of the claims in dispute here. Wilmington Trust and its professionals have labored for more than four years without payment by Tribune of fees and expenses due under the PHONES Indenture. These claims are classified as a Class 1F Other Parent Claim under the plan and a portion of which are also are eligible for payment under plan section 9.1.3.

Pursuant to Rule 706(c), the Court retains discretion regarding from which parties and when the fees of an expert are paid. Initially, we would ask that the Court allocate the expert's fees heavily towards the Reorganized Debtors, given: (1) the considerations noted above; (2) the circumstances giving rise to these chapter 11 cases (a failed leveraged buyout that Professor Klee concluded was, in substantial part, a fraudulent conveyance) were created by the Debtors, not the Indenture Trustees; (3) bankruptcy generally imposes the costs of adjudicating non-frivolous matters on debtors because debtors rely on bankruptcy to exonerate them of their liabilities (as occurred here); and (4) the Indenture Trustees' involvement in these cases was mandated by federal law.

We would also ask that the Court not require the Indenture Trustees (but rather the Reorganized Debtors) to advance funds for the expert prior to ultimate determination by this Court. In this regard, we have extended the following proposal, which we understand is now under consideration by the Reorganized Debtors: Any expert funding allocated to Wilmington Trust prior to Court determination would come from the disputed claims reserve mandated by plan section 7.2.1 (the Disputed Other Parent Claims Reserve). The Reorganized Debtors are already required to

> ...*establish one or more **Other Parent Claims Reserve(s)** to make distributions to Holders of Disputed Claims that become Allowed Other Parent Claims after the Effective Date.* The amount of ... Distributable Cash ... contributed to the **Other Parent Claims Reserve(s) shall be equal to the sum** of ... *the amount of Distributable Cash necessary to satisfy the distributions required to be made pursuant to this Plan based upon the Face Amount of Disputed Other Parent Claims* the Holders of which did not elect the treatment set forth in Section 3.2.6(c)(ii) or Section 3.2.6(c)(iii) *if such Disputed Claims are subsequently Allowed Other Parent Claims.*

Plan § 7.2.1 *(emphasis added)*. Today, the reserve is at least $9 million. Thus, should Wilmington Trust and its professionals be entitled to receive distributions from the Reorganized Debtors following conclusion of this contested matter, the amount due from the Reorganized Debtors would be reduced by the amount advanced from the escrow on Wilmington Trust's behalf. In the event that Wilmington Trust and its professionals are not entitled to receive a distribution of a sufficient size to repay the Reorganized Debtors, then at that time, Wilmington Trust and its professionals would be required to repay the Reorganized Debtors per the Court's allocation of expert costs.

Wilmington Trust believes that this proposal is appropriate in light of the equities of the situation and avoids causing Wilmington Trust's professionals additional undue hardship. At the same time,

this resolution in no way unfairly impedes the Reorganized Debtors' use of their cash since establishment of the Other Parent Claims Reserve is something that the Debtors expressly proposed. Moreover, such a resolution permits Wilmington Trust to litigate the allowance of its claims -- arising under the PHONES Indenture, the plan and the Bankruptcy Code -- without unfairly shifting the playing field in favor of the Reorganized Debtors. Lastly, such a resolution will protect Wilmington Trust and its professionals from the case dynamic that has led to this present dispute -- where Wilmington Trust's efforts to satisfy its responsibilities under the PHONES Indenture and federal law are opposed by zealous and well-funded litigants at virtually every step.

Respectfully,

*[signature]*

Robert J. Stark

CC:   James O. Johnston
      James Bendernagel, Jr.
      David L. Buchbinder
      David Adler
      David S. Rosner

brownrudnick.com