IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY, *et al.*, | : | Case No. 08-13141 (KJC) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Objection Deadline: 6/7/13 at 4:00 p.m. |
| | : | Hearing Date: 6/26/13 at 1:00 p.m. |

**MOTION OF THE LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR FOR RELIEF FROM THE PERMANENT INJUNCTION OF THE FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO GORDAN & CO., L.P. AND JPMORGAN CHASE BANK, N.A., AS AMENDED JUNE 18, 2012**

The Los Angeles County Treasurer and Tax Collector ("County"), by and through its undersigned counsel, hereby moves the Court to enter an order granting relief from the permanent injunction ("Injunction") that was established by the *Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordan & Co., L.P. and JPMorgan Chase Bank, N.A., as Amended June 18, 2012* [Docket No. 11836] ("Plan") in order to permit the County to exercise any and all of its non-bankruptcy rights in and to the certain parcels of real estate ("Properties") owned by the above-captioned debtors ("Debtors"), including, but not limited to, proceeding to a tax sale of the Properties due to the Debtors' failure to pay secured real property taxes. In support of this Motion, the County respectfully states as follows:

## BACKGROUND

1. On December 8, 2008, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

2.     The Debtors owe the County for secured *ad valorem* taxes that relate to thirteen (13) real estate parcels located in Los Angeles County, California for the fiscal periods of July 1, 2007 to June 30, 2008 and July 1, 2008 to June 30, 2009 ("Secured Real Property Tax Claims"). The lien dates related to the Secured Real Property Tax Claims were January 1, 2007 and January 1, 2008 respectively. The first installment for payment of the Secured Real Property Tax Claims was due November 1, 2007 and November 1, 2008 respectively, and late penalties applied to the payment of the taxes after December 10, 2007 and December 10, 2008 respectively. *See* Declaration of Bonita Sandoz ("Sandoz Decl."), ¶ 2.

3.     The Debtors received permission from this Court in 2008 to pay taxes such as the Secured Real Property Tax Claims. *See Order Authorizing, But Not Directing the Payment of Certain Prepetition Sales, Use, Franchise and Property Taxes, Licensing Fees, and Similar Obligations*, dated December 10, 2008 [Docket No. 49].

4.     The Debtors purported to pay the principal tax amounts of the Secured Real Property Tax Claims in December 2008, however the Debtors' check was returned for insufficient funds and another check was issued to the County in February 2009 for the payment of the principal tax obligations of the Secured Real Property Tax Claims. *See* Sandoz Decl., ¶ 3. The Debtors owed but refused to pay the interest and penalties assessed by the County for the late payment of the principal of the secured real property taxes. Pursuant to the County's policy and the California Revenue and Taxation Code, the County applied the payment received from the Debtors first to penalties and interest and then to principal. *See* Sandoz Decl., ¶ 4.

5.     Since the County applied the payment received from the Debtors to penalties and interest and then to principal, there remained unpaid principal of the Secured Real Property Tax

Claims. *See* Sandoz Decl., ¶ 5. The taxes on the 13 parcels were reassessed in 2010. *See* Sandoz Decl., ¶ 6.

6. On June 19, 2012, the Debtors filed the Plan. On July 23, 2012, this Court confirmed the Plan [Docket No. 12074]. The Plan became effective on December 31, 2012. Sections 11.1.1 and 11.1.2 of the Plan contain a discharge and injunction against,

> [a]ll Persons that hold, have held, or may hold a Claim or other debt or liability that is discharged, . . . are permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims, debts or liabilities or terminated Interests or rights; (i) commencing or continuing any action or other proceeding against the Debtors, the Reorganized Debtors or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree, or order against the Debtors, the Reorganized Debtors or their respective property; (iii) creating, perfecting or enforcing any Lien or encumbrance against the Debtors or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Debtors, Reorganized Debtors or their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of this Plan;

Plan at Section 11.1.2.

7. The County seeks relief from the Injunction so that it may exercise all of its non-bankruptcy rights in and to the subject Properties, including proceeding to a tax sale of the Properties. The County intends to schedule a tax sale for October 2013, to satisfy the delinquent property taxes on these and other tax delinquent properties subject to the power-to-sell.[1] *See* Sandoz Decl., ¶ 9.

---

[1] The County submits that the County's act of scheduling the tax sale is not deemed to be a violation of the automatic stay nor the Injunction because there are two exceptions under Section 362 of the Bankruptcy Code which are specifically designed to protect ad valorem taxing authorities. First, Section 362(b)(9)(D) provides that the filing of a bankruptcy claim does not stay the making of an assessment for any tax and issuance of a notice and demand for payment of such assessment. In addition, Section 362(b)(18) expressly provides that the creation or perfection of a statutory ad valorem tax lien or a special assessment on real property does not violate the automatic stay. Thus, as a practical matter, the Debtors' bankruptcy filing only stays the County's ability to seize, sue, foreclose or hold a tax sale – not to impose the related lien or notice upon the property of the Debtors or of the Debtors' estate.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## RELIEF REQUESTED AND BASIS THEREFOR

9. First and foremost, the County does not believe that the Injunction precludes the County from conducting the tax sales of the Properties. Nevertheless, out of abundance of caution and to avoid the risk posed by the Debtors' threat to seek sanctions against the County, the County is seeking relief from the Injunction, to the extent it does apply. The County respectfully requests that this Court enter an order, to the extent necessary, granting relief from the Injunction, to allow the County to exercise any and all of its non-bankruptcy rights in and to the Properties, including, but not limited to, proceeding to a tax sale of the Properties.

### A. Cause Exists to Grant the County Relief from the Injunction

10. As the court that issued the Injunction, this Court has the authority to modify such injunction for good cause on the motion of a person that is adversely affected by it. *Pettibone Corporation v. Hawxhurst*, 163 B.R. 989, 996 (N.D. Ill. 1994) (citing *In re Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993)); see also *In re Fucilo*, 2002 WL 1008935, at * 9 (Bankr. S.D.N.Y. Jan. 24, 2002) ("Determining whether relief from the permanent injunction is warranted under appropriate circumstances should be analyzed pursuant to a cause standard."). Whether "cause" exists must be determined on a case-by-case basis. *See In re Rexene Products Co.*, 141 B.R. 574, 576 (Bank. D. Del. 1992) (citing *Matter of Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991)). If this Court determines that the Injunction does apply, relief from the Injunction is appropriate and warranted because sufficient cause exists.

4

11.  Cause exists to grant relief from the Injunction due to the lack of adequate protection for the County's Secured Real Property Tax Claims. The County's claims for *ad valorem* real property taxes are entitled to senior priority over all other secured claims. *See* Cal Rev. & Tax. Code § 2192.1. The County is entitled to the Secured Real Property Tax Claims being paid in full, including pre-petition and post-petition interest and penalties. As a secured creditor, the County is entitled to adequate protection of its interest. The County is entitled to lien retention and the payment of interest on its claims to protect the value as of the effective date, pursuant to 11 U.S.C. § 1129(b)(2)(A). Property taxes are usually only a fraction of the value of the property, so the Secured Real Property Tax Claims are entitled to interest pursuant to 11 U.S.C. § 506(b), which becomes part of the allowed secured claim to be paid pursuant to the Plan. *See Rake v. Wade*, (1993) 508 U.S. 464, 471, 124 L.Ed.2d 424, 113 S.Ct. 2187.

**B. The County is Owed Pre-Petition and Post-Petition Interest for the Secured Real Property Tax Claims at the Rate Prescribed by the California Revenue and Taxation Code**

12.  In 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Title VII of the Act contained twenty separate sections that closed loopholes that debtors had exploited in using bankruptcy to reduce the amounts that they would have to pay to taxing agencies. One of the problems in bankruptcy had been determining the appropriate interest rate on tax claims. In response to these concerns, the BAPCPA added Section 511 to the Bankruptcy Code which provides that "the rate of interest shall be determined under non-bankruptcy law." In other words, bankruptcy should not affect the amount that the taxpayer is obligated to pay to the taxing agencies under the appropriate state law.

13. Under BAPCPA, one of the most significant changes to the Bankruptcy Code included the rate of "interest" on tax claims. Under "new" Section 511:

> (a) If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, ***the rate of interest shall be rate determined under applicable nonbankruptcy law***.
>
> (b) In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.

11 U.S.C. § 511 (emphasis added).

14. Since there is no uniform rate of interest applicable to tax claims, Section 511 of the Bankruptcy Code was added to simplify the calculation rate. Under Section 511, the House Report stated:

> Sec. 704. Rate of Interest on Tax Claims. Under current law, there is no uniform rate of interest applicable to tax claims. As a result, varying standards have been used to determine the applicable rate. Section 704 of the Act amends the Bankruptcy Code to add Section 511 for the purpose of simplifying the interest rate calculation. (H. Rpt. No. 109-31, § 256, 109th Cong. 1st Sess. (2005) p. 101.)

15. Thus, Section 511 of the Bankruptcy Code mandates that "non-bankruptcy law" applies to all taxes where "interest" is required, and the filing of the Debtors' bankruptcy cannot affect the amount that the taxpayer is obligated to pay to the taxing authorities, in accordance with applicable law. Section 511 was enacted to simplify the administration of bankruptcy cases in which state, local and/or federal taxes may be payable. Congress found that existing law was deficient in that although bankruptcy judges had certain equitable powers to alter the statutory interest rates provided for under applicable state or local law, the exercise of that power resulted in inconsistencies among the numerous courts hearing and deciding those issues and, thus, it would be a benefit to establish a uniform rule for fixing interest allowed on taxes owed by

debtors.

16. The interest rates stated pursuant to California Revenue and Taxation Code sections 4102 and 4103 are the proper rates of interest. California Revenue and Taxation Code section 4102 requires payment of delinquent penalties and redemption penalties in order to redeem tax defaulted property. Thus, beginning July 1 of the year of the declaration of tax default, the County assesses and 18 percent per year (1.5 percent per month) penalty on the delinquent property tax claim. *See* Cal. Rev. & Tax Code § 4103(a). In a bankruptcy proceeding, California Revenue and Taxation Code section 4103(b) characterizes redemption penalties as the "assessment of interest." Also, California Revenue and Taxation Code sections 2617 and 2618 provide for a 10 percent delinquent penalty in the event that the Debtors fail to submit their first or second installment payment of real property taxes by December 10 or April 10 of each year respectively.

17. Moreover, Section 506(b) of the Bankruptcy Code provides for "interest on such claim, **_and_** any reasonable fees, costs or charges provided under the agreement or State statute under which such claim arose". 11 U.S.C. § 506(b) (emphasis added). The Debtors cannot purport to receive special treatment and avoid having to pay interest and penalties on its taxes under Sections 506(b) and 511 of the Bankruptcy Code just because the Debtors have filed for bankruptcy. Clearly, Congress intended that delinquent debtors should not gain an unfair advantage with regard to claims of governmental entities, such as the County, by filing bankruptcy.

18. In sum, substantial cause exists to grant the County relief from the Injunction to proceed with the tax sale because the County's interests are not adequately protected due to the Debtors' continued failure to pay the secured real property taxes owed to the County. Granting

7

the County relief from the Injunction will not usurp or jeopardize the Debtors' efforts to reorganize within the context of their cases. The Debtors' Plan has already gone effective and the Secured Real Property Tax Claims should have been fully paid in December 2008 and at the latest upon the effective date of the Plan.

19. Despite efforts by counsel for the County to resolve these issues with counsel for the Debtors, the Debtors have not responded to such efforts and it is time for the Debtors to either pay the County for the Secured Real Property Tax Claims or for the County to be allowed to exercise any and all of its non-bankruptcy rights arising under and related to the Properties, including, but not limited to, proceeding to a tax sale of the Properties. Continued delay in the payment and/or satisfaction of the Secured Real Property Tax Claims is both unnecessary and prejudicial to the County and its residents.

## CONCLUSION

20. Based upon the foregoing, the County respectfully requests that the Court enter an Order modifying the Injunction in order for the County to exercise any and all of its non-bankruptcy rights arising under and related to the Properties, including, but not limited to, proceeding to a tax sale of the Properties and granting such other and further relief as is just and proper.

Dated: May 21, 2013

REGER RIZZO & DARNALL LLP

Marc J. Phillips (No. 4445)
1001 North Jefferson Street, Suite 202
Wilmington, Delaware 19801
Telephone: (302) 652-3611
Facsimile: (302) 652-3620
Email: mphillips@regerlaw.com

-and-

Barry S. Glaser
STECKBAUER WEINHART, LLP
333 S. Hope Street, 36th Floor
Los Angeles, CA  90071
Telephone: (213) 229-2868
Facsimile: (213) 229-2870
Email: bglaser@swesq.com

*Attorneys for Los Angeles County Treasurer and Tax Collector*