**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |

**FEE EXAMINER'S FINAL REPORT REGARDING THE
FORTY-EIGHTH MONTHLY AND FINAL APPLICATION OF
ALVAREZ & MARSAL NORTH AMERICA, LLC**

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Forty-Eighth Monthly and Final Application of Alvarez & Marsal North America, LLC for Services Rendered and Reimbursement of Expenses in Their Capacity as Restructuring Advisors to the Reorganized Debtors for the Monthly Period December 1, 2012 Through December 30, 2012 and the Final Fee Period From*

---

[1] The Debtors, or successors-in-interest to the Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

*December 8, 2008 Through December 30, 2012*[2] [Docket No. 13238] (the "**Fee Application**"). The Fee Application seeks approval of monthly fees that total $918,740.00 and reimbursement of expenses that total $13,576.63 for the period from December 1, 2012 through December 30, 2012. The Fee Application seeks approval of final fees that total $29,533,056.05 and expenses that total $150,601.34 for the period from December 8, 2008 through December 30, 2012. Alvarez & Marsal North America, LLC ("**A&M**") acts as restructuring advisors to the Debtors and Debtors-in-Possession.

## Background

1.    On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**"), each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2.    On December 26, 2008, the Debtors filed the *Application of the Debtors Pursuant to 11 U.S.C. § 327(a) for Entry of an Order Authorizing the Employment and Retention of Alvarez & Marsal North America, LLC as Restructuring Advisors, Nunc Pro Tunc to the Petition Date* [Docket No. 140] (the "**Retention Application**"). By order dated February 11, 2009, this Court approved the retention of A&M (see Docket No. 362) (the "**Retention Order**").

3.    A&M submitted the Fee Application pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members under 11 U.S.C. §§ 105(a) and 331* [Docket No. 225] (the "**Interim Compensation Order**").

---

[2] Even though there were 31 days in the monthly billing period December 2012, A&M titled its fee application with an end date of December 30, 2012. Presumably this was because the firm's last billing day was December 30, 2012, which was one day prior to debtors' emergence.

## Applicable Standards

4.      In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5.      The Fee Examiner reviewed the Fee Application for compliance with Sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6.      Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the

time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F).*

7.    A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred.  A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules.  Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application.  A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8.    The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings and provided a Preliminary Report to A&M for review and comment.  The firm provided a written response to the Preliminary Report.  After evaluation and consideration of the additional information provided by A&M, the Fee Examiner submits this Final Report for the Court's consideration.  This Final Report is in a format designed to quantify and present factual data relevant to whether the requested fees and expenses of the applicant meet the applicable standards of section 330 of the Bankruptcy Code and Local Rule 2016-2, and will also inform

the Court of all proposed consensual resolutions of the fee and/or expense reimbursement request for the professional and the basis for such proposed consensual resolution.

## DISCUSSION OF FINDINGS – MONTHLY FEE APPLICATION

### Technical Requirements

9.    **Reconciliation of Fees and Expenses.**  The Fee Examiner compared the total amount of fees and expenses requested in the Fee Application ("**Fees Requested**" and "**Expenses Requested**") to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**" and "**Expenses Computed**").  The Fee Examiner determined that the Fees Requested exceeded the Fees Computed by $435.00, resulting in an apparent overcharge.  The discrepancy was the result of task hours within two entries that did not equal the time billed for the entry as a whole, which was displayed in **Exhibit A** to the Preliminary Report.  The firm agreed with the Fee Examiner's calculations, which resulted in a decrease in Fees Requested by an amount of $435.00.  Exhibit A has been omitted from the Final Report.

The Fee Examiner further determined there was no discrepancy between the Expenses Requested and the Expenses Computed.  The figures in this report and the accompanying exhibits reflect Fees Computed and Expenses Computed.

10.    **Block Billing.**[3]  The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*.  The UST Guidelines further provide that where a timekeeper's daily time

---

[3] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing.  Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry.  As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry.  This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[4]   The Delaware Bankruptcy Court has found that time entries that generally only combine work on one issue, and a conference/communication with the client or opposing counsel on the same issue, while technically block billing, will not be objectionable.[5] The Fee Examiner identified block billed time entries totaling 16.20 hours with associated fees of $9,057.50, which were displayed in **Exhibit B**[6] to the Preliminary Report.  Based upon precedent established by this Court, however, the Fee Examiner did not identify any objectionable block billed entries.  Exhibit B has been omitted from the Final Report.

11.   **Potential Double Billing.**  The Fee Examiner identified billing entries that appear to be duplicative (i.e., on the same date by the same timekeeper with identical or nearly identical descriptions and time increments).   The questioned tasks, totaling 0.80 hour with $310.00 in associated fees, were highlighted in bold and marked with an ampersand [&] in **Exhibit C** to the Preliminary Report.   The Fee Examiner requested the firm review the entries and either (i) confirm the tasks were inadvertently billed twice, or (ii) provide an explanation for the duplication.  In response, A&M verified that one of the questioned time entries was the continuation of similar, but not duplicative activities.   The firm also stated that the other

---

[4] The judicial response to block billing varies.  Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007).  Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

[5] See *In re Worldwide Direct, Inc.*, 316 B.R. 637, 643 (Bankr. D. Del. 2004) (the court did disallow 100% of the block billed entries that combined more than one discrete task and issue from which it could not determine the amount of time that was allocated to each task).

[6] This Final Report includes exhibits that detail and support the findings discussed herein.  Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit.  The tasks included in a specific category are underlined in the fee exhibits.  For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

questioned entry was inadvertently duplicated, which resulted in a $212.50 fee reduction. Exhibit C has been omitted from the Final Report.

12.     **Time Increments.** The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*. The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines ¶(b)(4)(v)*. A&M timekeepers invoiced their fees in one-tenth hour increments.

## Review of Fees

13.     **Firm Staffing.** The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*. The Fee Application provided the names, positions, and hourly rates of the 20 A&M professionals and paraprofessionals who billed to this matter, consisting of 2 managing directors, 3 senior directors, 3 directors, 3 managers, 4 senior associates, 1 associate, 1 consultant, 2 analysts, and 1 paraprofessional.  A summary of hours and fees billed by each timekeeper is displayed in **Exhibit D**.

The firm billed a total of 2,050.40 hours with associated fees of $918,305.00.[7]  The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

---

[7] This amount reflects the Fees Computed.

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Managing Director | 194.00 | 10% | $135,800.00 | 15% |
| Senior Director | 213.00 | 10% | 127,356.00 | 14% |
| Director | 508.30 | 25% | 235,215.00 | 25% |
| Manager | 56.10 | 3% | 23,842.50 | 3% |
| Senior Associate | 440.40 | 21% | 184,122.50 | 20% |
| Associate | 28.20 | 1% | 10,575.00 | 1% |
| Consultant | 170.50 | 8% | 63,937.50 | 7% |
| Analyst | 435.70 | 21% | 136,637.50 | 15% |
| Paraprofessional | 4.20 | * | 819.00 | * |
| **TOTAL** | 2,050.40 | 100% | $918,305.00 | 100% |

\* Less than 1%

The blended hourly rate for the A&M professionals is $448.39 and the blended hourly rate for professionals and paraprofessionals is $447.87.

14.    **Hourly Rate Increases.**  A&M did not increase the hourly rates of timekeepers during this interim period.

15.    **Timekeepers' Roles.**    A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4)*.  With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts.   On the whole, each A&M timekeeper appeared to perform either core team responsibilities necessary to the engagement, or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.

16.    **Extended Hours.**  The Fee Examiner identified one day where two timekeepers invoiced 17.80 hours and 16.80 hours.   The entries billed by these timekeepers for this day totaled $15,965.00 in associated fees.  The questioned entries were displayed in **Exhibit E** to the Preliminary Report.  The Fee Examiner recognizes that in certain isolated instances, the demands of a case may require a timekeeper to put in long hours far in excess of a normal working day.

However, the Fee Examiner requested an explanation from the firm regarding the necessity of the extended hours invoiced by each of these timekeepers on this day, or whether the time was the result of billing errors.

In its response A&M verified the nature and purpose of the activities that required the long billing day for both of the timekeepers. Based on the firm's detailed response, the Fee Examiner makes no recommendation for a fee reduction. Exhibit E has been omitted from the Final Report.

17. **Meetings, Conferences, Hearings, and Other Events.** The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*. While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions where two or more A&M timekeepers attended the same meeting, conference, hearing, or other event. Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. The entries, totaling 134.00 hours with $68,505.00 in associated fees, were displayed in **Exhibit F** to the Preliminary Report. In each instance where multiple timekeepers attended a meeting, conference, hearing or other event, the Fee Examiner identified the timekeeper who appeared most responsible for the matter or the particular event (*i.e.*, the individual leading rather than observing a conference). The potentially

duplicative and unnecessary timekeepers' entries totaled 50.90 hours with $23,990.00 in associated fees were highlighted in bold and marked with an ampersand [&] in the Exhibit. Any related travel was also included. The Fee Examiner requested that the firm provide what the Local Rules and UST Guidelines mandate -- an explanation of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

In response to the Preliminary Report, A&M first stated that it endeavors to minimize the number of attendees at any meeting, but seeks to balance minimization with the scope of the meeting, number of individuals requested by Debtors, and the need for certain individuals to have firsthand knowledge of the issues presented. The firm also explained that due to the size and complexity of these cases, and the substance of the matters being addressed, the matters often require different A&M personnel to focus on different areas. The firm then addressed, in detail, the questioned timekeepers with more than 10.00 hours of "multiple attendance" by providing additional information regarding each of their respective roles. After consideration of the supplemental information, the Fee Examiner makes no recommendation for a fee reduction. Exhibit F has been omitted from the Final Report.

18.    **Intraoffice Conferences.**    Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified intraoffice conferences totaling 212.60 hours with $105,032.50 in associated fees, which were displayed in **Exhibit G** to the Preliminary Report. In certain instances, two or more timekeepers invoiced fees associated with the same intraoffice conference. The entries describing intraoffice conferences invoiced by two or more firm personnel totaled 193.20 hours with $96,510.00 in associated fees and were highlighted in bold and marked with an ampersand [&] in the Exhibit. The Fee Examiner requested that the firm

provide an explanation of the timekeeper's roles and an explanation of the necessity of the attendance of the timekeepers.

In response, A&M claimed that it strives to eliminate unnecessary intraoffice conferencing. The firm, however, stated the intraoffice conferences are generally utilized to collaborate, to efficiently and effectively serve the client, and to keep others apprised of progress that directly impacts related work streams. A&M also provided additional detail regarding the timekeepers involved and the necessity and purpose of the conferences and their attendance. For these reasons, the Fee Examiner makes no recommendation for a fee reduction, and omits Exhibit G from the Final Report.

19.    **Complete and Detailed Task Descriptions.**  Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*.  The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*.

The Fee Examiner identified entries totaling 4.10 hours with $1,802.50 in associated fees in which a conference or other communication was not described with sufficient detail. This

lack of detail hinders a reviewer's ability to determine the reasonableness and necessity of the activity, and is in clear violation of the applicable guidelines. The entries were displayed in **Exhibit H** to the Preliminary Report. The Fee Examiner requested A&M provide the missing detail (i.e. participant or subject matter information) that is required by the Local Rules and UST Guidelines. The firm responded by providing the missing subject matter and/or participant information, which brought the questioned entries into compliance. No fee reduction is appropriate and Exhibit H is omitted from the Final Report.

20. **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. The Fee Examiner reviewed each timekeeper's billing activities and identified entries describing administrative activities, including tasks related to scheduling, incorporating data into the claims system, and supervising other timekeepers. The questioned entries were displayed in **Exhibit I** to the Preliminary Report and totaled 37.20 hours with $13,095.00 in associated fees. In response, the firm provided additional information and background regarding the questioned activities. And, although A&M disagreed that the questioned activities were administrative in nature, it, nonetheless, agreed to a voluntarily fee reduction in the amount of $1,500.00. Based upon A&M's response, the Fee Examiner agrees with the firm's voluntary fee reduction and does not believe a further fee reduction is warranted. Exhibit I has been omitted from this Report.

21. **Clerical Activities.** Clerical activities do not require legal acumen, and may be effectively performed by administrative assistants, secretaries, or support personnel. Similar to administrative activities, clerical activities are generally not billable and are considered to be part of the firm's overhead. In the 3rd Circuit, however, some clerical and non-clerical activities may

be compensable at a rate commensurate with the level of expertise or knowledge typically found to be necessary to complete the task. The Fee Examiner reviewed each timekeeper's billing descriptions and did not identify any clerical-type activities.

22. **Travel.** The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii).* A&M's timekeepers indicated in their fee entries that they invoiced their nonworking travel at half time.

23. **A&M Retention/Compensation.** A&M billed 12.60 hours with associated fees of $3,719.00 to prepare the firm's retention documents and applications for compensation, less than 1% of the Fees Computed. The fee entries describing A&M's retention/compensation activities are displayed in **Exhibit J**, which is included in the Final Report.

24. **Other Firms' Retention/Compensation.** A&M billed 3.90 hours with associated fees of $1,462.50 for activities relating to other firms' retention and compensation, less than 1% of the Fees Computed. The fee entries are displayed in **Exhibit K**.

**Review of Expenses**

25. **Itemization of Expenses.** The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii).* The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense. Itemized expenses should be identified by their nature (*e.g.*, long

distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii)*.   A&M provided an itemization for the firm expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.

26.    **Airfare.**  The descriptions for the airfare charges did not include the fare class at which the tickets were purchased.  The Fee Examiner requested A&M provide receipts or other documentation regarding the fare class for all air travel charges, which were displayed in **Exhibit L** to the Preliminary Report.  In response, A&M verified in writing and with supporting documentation that all the airfare was charged at the economy fare class.  Exhibit L has been omitted from the Final Report.

27.    **Travel – Lodging.**  The Fee Examiner has recommended and the Court has followed a domestic lodging ceiling of $350.00 per night.  A&M requested reimbursement for one lodging charge that appeared to be in excess of the ceiling.  The Fee Examiner requested additional information from A&M with regard to the charge displayed in **Exhibit M** to the Preliminary Report.  In response, A&M disagreed with the Fee Examiner's position but did agree to reduce its expense request by an amount of $272.01.  Exhibit M has been omitted from the Final Report.

28.    **Potentially Duplicative Charges.**  The Fee Examiner noted taxi charges that appeared to be duplicative.  The charges were displayed in **Exhibit N** to the Preliminary Report. The Fee Examiner requested that the firm provide supporting documentation for each of the charges.  In response, A&M agreed the second charge was duplicative, which results in an expense reduction of $40.00.  Exhibit N has been omitted from the Final Report.

29. **Working Meals.** The firm requested reimbursement of working meals, which were displayed in **Exhibit O** to the Preliminary Report. The Fee Examiner requested that A&M verify that these meal charges related to meetings with people from outside the firm, as opposed to solely involving employees of A&M. In response, A&M disagreed with the Fee Examiner's position but, nevertheless, agreed to reduce its expense request by an amount of $448.35. Exhibit O has been omitted from the Final Report.

30. **Overtime Expenses.** The firm requested reimbursement of taxis for A&M personnel between office and home totaling $171.59 and working late dinners totaling $286.56. Although a firm may have a policy that personnel may be reimbursed for travel home when working late and meals for employees while working late, such charges are generally considered part of the firm's overhead. These charges, totaling $458.15, were displayed in **Exhibit P** to the Preliminary Report. In response, A&M disagreed with the Fee Examiner's position but did agree to reduce its expense request by an amount of $458.15. Exhibit P has been omitted from the Final Report.

## CONCLUSION – MONTHLY FEE APPLICATION

The Fee Examiner submits this Final Report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $916,592.50 ($918,740.00 minus $2,147.50) and reimbursement of expenses in the amount of $12,358.12 ($13,576.63 minus $1,218.51) for the period December 1, 2012 through December 30, 2012. The findings are set forth in **Exhibit Q**.

## DISCUSSION OF FINDINGS – FINAL FEE APPLICATION

The Fee Examiner compared the fees and expenses requested in the Final Fee Application with the fees and expenses requested in the underlying interim fee applications and

those approved by the Court (through the date of the filing of the Final Fee Application).  The
Fee Examiner agrees with A&M's calculation of the final fees and expenses requested.

## CONCLUSION – FINAL FEE APPLICATION

The Fee Examiner submits this final report regarding the Fee Application and the fees
and expenses discussed above.  The Fee Examiner recommends the approval of fees in the
amount of $29,520,758.55[8] and reimbursement of expenses in the amount of $146,983.57[9] for
the period December 8, 2008 through December 30, 2012.

Respectfully submitted,

**STUART MAUE**

By: _____

John F. Theil, Esq.
38404McKelvey Road
St. Louis, Missouri  63044
Telephone:  (314) 291-3030
Facsimile:  (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

---

[8] This is the amount of A&M's final fee request ($29,533,056.05) adjusted by the fee reductions from the Fifteenth
Interim Fee Application ($5,460.00), Sixteenth Interim Fee Application ($4,690.00), and Forty-Eighth Monthly Fee
Application ($2,147.50) as these amounts were not approved as of the date the Final Fee Application was filed.

[9] This is the amount of A&M's final expense request ($150,601.34) adjusted by the expense reductions from the
Fifteenth Interim Fee Application ($1,418.16), Sixteenth Interim Fee Application ($981.10), and Forty-Eighth
Monthly Fee Application ($1,218.51)  as these amounts were not approved as of the date the Final Fee Application
was filed.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 6th day of June, 2013.

David Buchbinder, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
R. Craig Martin, Esq.
DLA Piper LLP (US)
919 North Market Street, Suite 1500
Wilmington, DE 19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE 19899-0511
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Douglas E. Deutsch, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE 19801
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Thomas E. Hill, Esq.
Alvarez & Marsal North America, LLC
55 West Monroe Street, Suite 4000
Chicago, IL 60603

John F. Theil, Esq.

### SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL
### COMPUTED AT STANDARD RATES
**Alvarez & Marsal North America, LLC**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| BWHI | Whittman, Brian | MANAG DIRECTOR | $700.00 | $700.00 | 172.20 | $120,540.00 |
| LRYA | Ryan, Laureen | MANAG DIRECTOR | $700.00 | $700.00 | 21.80 | $15,260.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $700.00 | | 194.00 | $135,800.00 |
| | | | | % of Total: | 9.46% | % of Total: 14.79% |
| JSCH | Schmaltz, Justin | SENIOR DIRECTOR | $600.00 | $600.00 | 187.50 | $112,500.00 |
| JFOR | Forte, John | SENIOR DIRECTOR | $575.00 | $575.00 | 24.60 | $14,145.00 |
| MSPI | Spittell, Mark | SENIOR DIRECTOR | $790.00 | $790.00 | 0.90 | $711.00 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $597.92 | | 213.00 | $127,356.00 |
| | | | | % of Total: | 10.39% | % of Total: 13.87% |
| RSTO | Stone, Richard | DIRECTOR | $500.00 | $500.00 | 253.70 | $126,850.00 |
| JEHR | Ehrenhofer, Jodi | DIRECTOR | $425.00 | $425.00 | 248.20 | $105,485.00 |
| MZEI | Zeiss, Mark | DIRECTOR | $450.00 | $450.00 | 6.40 | $2,880.00 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $462.75 | | 508.30 | $235,215.00 |
| | | | | % of Total: | 24.79% | % of Total: 25.61% |
| DBUS | Busse, Damon | MANAGER | $425.00 | $425.00 | 29.50 | $12,537.50 |
| BBOU | Boudouris, Bradley | MANAGER | $425.00 | $425.00 | 20.90 | $8,882.50 |
| JBRE | Brennan, James | MANAGER | $425.00 | $425.00 | 5.70 | $2,422.50 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $425.00 | | 56.10 | $23,842.50 |
| | | | | % of Total: | 2.74% | % of Total: 2.60% |
| MFRA | Frank, Matt | SR. ASSOCIATE | $425.00 | $425.00 | 202.90 | $86,232.50 |
| PGON | Gondipalli, Prasant | SR. ASSOCIATE | $425.00 | $425.00 | 187.60 | $79,730.00 |
| AGER | Gershner, Alexander | SR. ASSOCIATE | $375.00 | $375.00 | 27.80 | $10,425.00 |
| ABUC | Buchler, Adam | SR. ASSOCIATE | $350.00 | $350.00 | 22.10 | $7,735.00 |

### SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL
### COMPUTED AT STANDARD RATES
**Alvarez & Marsal North America, LLC**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | | HOURS COMPUTED | | FEES COMPUTED |
|----------|------|----------|--------------|--------------|---|----------------|---|---------------|
| | No. of Billers for Position: 4 | Blended Rate for Position: | $418.08 | | | 440.40 | | $184,122.50 |
| | | | | | % of Total: | 21.48% | % of Total: | 20.05% |
| MBER | Berger, Mark | ASSOCIATE | $375.00 | $375.00 | | 28.20 | | $10,575.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $375.00 | | | 28.20 | | $10,575.00 |
| | | | | | % of Total: | 1.38% | % of Total: | 1.15% |
| MWIL | Williams, Matthew | CONSULTANT | $375.00 | $375.00 | | 170.50 | | $63,937.50 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $375.00 | | | 170.50 | | $63,937.50 |
| | | | | | % of Total: | 8.32% | % of Total: | 6.96% |
| DTOR | Torres, Diego | ANALYST | $325.00 | $325.00 | | 237.10 | | $77,057.50 |
| DHIN | Hingtgen, Dwight | ANALYST | $300.00 | $300.00 | | 198.60 | | $59,580.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $313.60 | | | 435.70 | | $136,637.50 |
| | | | | | % of Total: | 21.25% | % of Total: | 14.88% |
| MNAP | Napoliello, Mary | PARAPROFESSIONA | $195.00 | $195.00 | | 4.20 | | $819.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $195.00 | | | 4.20 | | $819.00 |
| | | | | | % of Total: | 0.20% | % of Total: | 0.09% |
| | Total No. of Billers: 20 | Blended Rate for Report: | $447.87 | | | 2,050.40 | | $918,305.00 |

EXHIBIT J

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

| TIMEKEEPER NAME | HOURS | FEES |
|-----------------|-------|------|
| Frank, M | 1.30 | 552.50 |
| Hingtgen, D | 5.90 | 1,770.00 |
| Napoliello, M | 4.20 | 819.00 |
| Torres, D | 0.70 | 227.50 |
| Whittman, B | 0.50 | 350.00 |
| | 12.60 | $3,719.00 |

| MATTER NAME | HOURS | FEES |
|-------------|-------|------|
| Fee Application | 12.60 | 3,719.00 |
| | 12.60 | $3,719.00 |

EXHIBIT J

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | DESCRIPTION |
|------|-----------------|-------------|-------|------|-------------|
| 12/03/12 Mon | Whittman, B 123112-130/2140 | 0.20 | 0.20 | 140.00 | MATTER NAME: *Fee Application*<br>1 REVIEW DRAFT FEE APPLICATION. |
| 12/04/12 Tue | Frank, M 123112-130/538 | 0.50 | 0.50 | 212.50 | MATTER NAME: *Fee Application*<br>1 REVIEW OF SEPTEMBER ALVAREZ FEE APPLICATION FOR TRIBUNE. |
| 12/17/12 Mon | Whittman, B 123112-130/2341 | 0.10 | 0.10 | 70.00 | MATTER NAME: *Fee Application*<br>1 CORRESPONDENCE WITH K. STICKLES (COLE SCHOTZ) RE: FEE APP PROCEDURE. |
| 12/21/12 Fri | Hingtgen, D 123112-130/1129 | 3.00 | 3.00 | 900.00 | MATTER NAME: *Fee Application*<br>1 BEGIN PREPARING 14TH INTERIM FEE EXAMINER RESPONSE. |
| 12/21/12 Fri | Hingtgen, D 123112-130/1130 | 2.90 | 2.90 | 870.00 | MATTER NAME: *Fee Application*<br>1 CONTINUE PREPARING 14TH INTERIM FEE EXAMINER RESPONSE. |
| 12/21/12 Fri | Torres, D 123112-130/2078 | 0.70 | 0.70 | 227.50 | MATTER NAME: *Fee Application*<br>1 PREPARE RESPONSE TO FEE EXAMINER'S 14TH PRELIMINARY REPORT. |
| 12/24/12 Mon | Frank, M 123112-130/706 | 0.80 | 0.80 | 340.00 | MATTER NAME: *Fee Application*<br>1 UPDATES TO FEE EXAMINERS PRELIMINARY RESPONSE TO 14TH INTERIM FEE APPLICATION. |
| 12/24/12 Mon | Whittman, B 123112-130/2452 | 0.20 | 0.20 | 140.00 | MATTER NAME: *Fee Application*<br>1 REVIEW RESPONSE TO 14TH FEE EXAMINER REPORT. |
| 12/28/12 Fri | Napoliello, M 123112-130/1163 | 2.60 | 2.60 | 507.00 | MATTER NAME: *Fee Application*<br>1 FINALIZE FIRST DRAFT OF EXHIBITS FOR FEE STATEMENT. |
| 12/28/12 Fri | Napoliello, M 123112-130/1164 | 1.60 | 1.60 | 312.00 | MATTER NAME: *Fee Application*<br>1 PREPARE EXHIBITS FOR FEE STATEMENT. |
| Total Number of Entries:    10 | | | 12.60 | $3,719.00 | |

EXHIBIT J

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Frank, M | 1.30 | 552.50 |
| Hingtgen, D | 5.90 | 1,770.00 |
| Napoliello, M | 4.20 | 819.00 |
| Torres, D | 0.70 | 227.50 |
| Whittman, B | 0.50 | 350.00 |
| | 12.60 | $3,719.00 |

SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Fee Application | 12.60 | 3,719.00 |
| | 12.60 | $3,719.00 |

EXHIBIT K

OTHER FIRMS' RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Berger, M | 3.90 | 1,462.50 |
| | 3.90 | $1,462.50 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| AP/Vendor Issues | 3.90 | 1,462.50 |
| | 3.90 | $1,462.50 |

EXHIBIT K

OTHER FIRMS' RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | DESCRIPTION |
|------|-----------------|-------------|-------|------|-------------|
| 12/12/12 Wed | Berger, M 123112-30/11 | 1.10 | 1.10 | 412.50 | *MATTER NAME: AP/Vendor Issues*<br>1 COMMUNICATE WITH AND PRODUCE ANALYSIS FOR R. MARIELLA (TRIB LEGAL) RELATED TO PRODUCING FEE APPLICATIONS FOR OCP VENDORS WITH CAP OVERAGES. |
| 12/17/12 Mon | Berger, M 123112-30/13 | 1.30 | 1.30 | 487.50 | *MATTER NAME: AP/Vendor Issues*<br>1 REVIEW OF INVOICES AND COMMUNICATION WITH RELEVANT PARTIES (VENDOR, TRIB LEGAL, TRIB FINANCIAL REPORTING) RELATED TO CAP OVERAGE AT REQUEST OF OCP FIRM (AJALAT & POLLEY) TO SETTLE DISPUTE OVER NEED TO FILE FEE APPLICATION FOR PAYMENT OF POST-PETITION WORK. |
| 12/18/12 Tue | Berger, M 123112-30/14 | 1.50 | 1.50 | 562.50 | *MATTER NAME: AP/Vendor Issues*<br>1 ANALYSIS OF APPROVED FEE APPLICATION LEADING TO CALLS WITH M. REGALA (TRIB FINANCIAL REPORTING) AND R. MARIELLA (TRIB LEGAL) RELATED TO PAYMENT OF LOEB & LOEB POST-PETITION INVOICES WHICH HAD BEEN INCORRECTLY REPORTED IN THE FIRM'S FEE APPLICATION. |
| Total Number of Entries: 3 | | | 3.90 | $1,462.50 | |

EXHIBIT K

OTHER FIRMS' RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

## SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Berger, M | 3.90 | 1,462.50 |
| | 3.90 | $1,462.50 |

## SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| AP/Vendor Issues | 3.90 | 1,462.50 |
| | 3.90 | $1,462.50 |

**EXHIBIT Q**

**ALVAREZ & MARSAL NORTH AMERICA, LLC**

**SUMMARY OF FINDINGS**

**Forty-Eighth Monthly Fee Application (December 1, 2012 through December 30, 2012)**

**A.    Amounts Requested and Computed**

| | | |
|---|---|---|
| Fees Requested | $918,740.00 | |
| Expenses Requested | 13,576.63 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $932,316.63 |
| | | |
| Fees Computed | $918,305.00 | |
| Expenses Computed | 13,576.63 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $931,881.63 |
| | | |
| Discrepancy in Fees | $    435.00 | |
| | | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | $    435.00 |

**B.    Recommended Fee Allowance and Expense Reimbursement**

| | | |
|---|---|---|
| Fees Requested | $918,740.00 | |
| *Agreed Reduction for Discrepancy in Fees* | | *($ 435.00)* |
| *Agreed Reduction for Potential Double Billing* | | *(212.50)* |
| *Agreed Reduction for Administrative Activities* | | *(1,500.00)* |
| Subtotal | | *($2,147.50)* |
| | | |
| RECOMMENDED FEE ALLOWANCE | | $916,592.50 |
| | | |
| Expenses Requested | $13,576.63 | |
| *Agreed Reduction for Travel - Lodging* | | *($ 272.01)* |
| *Agreed Reduction for Potentially Duplicative Charges* | | *(40.00)* |
| *Agreed Reduction for Working Meals* | | *(448.35)* |
| *Agreed Reduction for Overtime Expenses* | | *(458.15)* |
| Subtotal | | *($1,218.51)* |
| | | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | 12,358.12 |
| | | |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | $928,950.62 |