## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE FORTY-EIGHTH MONTHLY AND FINAL APPLICATION OF ALIXPARTNERS, LLP

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Forty-Eighth Monthly and Final Application of AlixPartners, LLP* [Docket No. 13235] (the "**Fee Application**"). The Fee Application seeks approval of monthly fees that total $84,840.50[2] and reimbursement of

---

[1] The Debtors, or successors-in-interest to the Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

expenses that total $464.40 for the period from December 1, 2012 through December 31, 2012. The Fee Application seeks approval of final fees that total $11,489,295.00 and expenses that total $118,490.60 for the period from December 19, 2008 through December 31, 2012. AlixPartners LLP ("**AlixPartners**") serves as the financial advisor to the Official Committee of Unsecured Creditors (the "**Committee**") in the above-captioned cases.

### Background

1.        On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**") each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. Under this Court's *Order Directing Joint Administration Chapter 11 Cases* dated December 10, 2009 [Docket No. 43], these cases are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

2.        On January 16, 2009, the Committee filed the *Application of the Official Committee of Unsecured Creditors of Tribune Company et al., Pursuant to 11. U.S.C. 327 and 1103 and Fed. R. Bankr. P. 2014, for Entry of an Order Authorizing the Employment and Retention of AlixPartners, LLP, as Financial Advisor, Nunc Pro Tunc to December 19, 2008* [Docket No. 245] (the "**Retention Application**"). By order dated February 20, 2009, this Court approved the retention of AlixPartners [Docket No. 433] (the "**Retention Order**").

3.        AlixPartners submitted the Fee Application pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members under 11 U.S.C. §§ 105(a) and 331* [Docket No. 225] (the "**Interim Compensation Order**").

---

[2] The Fees Requested includes $55,440.50 for the month of December 2012 and $29,400.00 in post-effective fees. As ordered, the Fee Examiner has reviewed and reported on fees and expenses through December 31, 2012 (the date of emergence).

## Applicable Standards

4.      In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5.      The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6.      Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the

time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F).*

7.     A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules. Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application. A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8.     The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings and provided a Preliminary Report to AlixPartners for review and comment. The firm and the Fee Examiner communicated regarding the issues raised in the Preliminary Report, and the firm also provided a formal written response to the Preliminary Report. After consideration of the additional information provided by the firm, the Fee Examiner now issues this final report (the "**Final Report**") "in a format designed to opine whether the requested fees of the Case Professional meet the applicable standards of section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines." *Fee Examiner Order ¶5.*

-4-

## DISCUSSION OF FINDINGS – MONTHLY FEE APPLICATION

### Technical Requirements

9.      **Reconciliation of Fees and Expenses.**  The Fee Examiner compared the total amount of fees and expenses requested in the Fee Application (**"Fees Requested"** and **"Expenses Requested"**) to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm (**"Fees Computed"** and **"Expenses Computed"**).  The Fee Examiner identified no discrepancies between the Fees Requested[3] and the Fees Computed, nor any discrepancies between the Expenses Requested and the Expenses Computed.

10.     **Block Billing.**[4]  The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*.  The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[5]  The Delaware Bankruptcy Court has found that time entries that generally only combine work on one issue, and a conference/communication with the client or

---

[3] The Fees Requested does not include the Post-Effective Fees.

[4] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

[5] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to a hundred percent. *See id.* at 495 n.7 and cases cited.

opposing counsel on the same issue, while technically block billing, will not be objectionable.[6] The Fee Examiner did not identify any objectionable block billing.

11.    **Time Increments.** The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*. The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines ¶(b)(4)(v)*. Billing in greater than 0.10 hour increments is a practice that lends itself to the potential of increased rounding of time, thereby increasing the likelihood that the reported time charged is inflated. It is a practice widely criticized by courts and legal scholars and is typically prohibited by sophisticated consumers of legal services, as it can result in the billing of time over and above the amount of time actually expended to perform a particular activity. One timekeeper billed 100% of his fee entries in whole hour time increments. A timekeeper recording such a large percentage of his fee entries in whole or half hour increments calls into question whether the timekeeper is accurately and contemporaneously recording his time in 0.10 hour increments. **Exhibit A** to the Preliminary Report displayed all of the questioned time entries, which totaled 21.00 hours with $13,020.00 in associated fees. The Fee Examiner requested AlixPartners explain the veracity of this billing pattern.

AlixPartners responded by providing additional information and an exhibit regarding the questioned timekeeper's entries. The questioned time entries were described as consistent with a large document review project that required larger periods of billed time. AlixPartners and the timekeeper verified the time was properly billed in 0.10 hour increments – not rounded. Based

---

[6] See *In re Worldwide Direct, Inc.*, 316 B.R. 637, 643 (Bankr. D. Del. 2004) (the court did disallow a hundred percent of the block billed entries that combined more than one discrete task and issue from which it could not determine the amount of time that was allocated to each task).

upon the information and verification provided by the firm, the Fee Examiner makes no recommendation for a fee reduction.  Exhibit A has been omitted from this Final Report.

**Review of Fees**

12.    **Firm Staffing.**  The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii).*  The Fee Application provided the names, positions, and hourly rates of the eight AlixPartners professionals who billed to this matter, consisting of one managing director, five directors, and two associates.  A summary of hours and fees billed by each timekeeper is displayed in **Exhibit B.**[7]

The firm billed a total of 88.60 hours with associated fees of $55,440.50.  The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Managing Director | 0.50 | * | $    460.00 | * |
| Director | 85.00 | 96% | 54,207.50 | 98% |
| Associate | 3.10 | 4% | 773.00 | 1% |
| **TOTAL** | 88.60 | 100% | $55,440.50 | 100% |

* Less than 1%

The blended hourly rate for the AlixPartners professionals is $625.74.

[7] This Final Report includes exhibits that detail and support the findings discussed herein.  Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit.  The tasks included in a specific category are underlined in the fee exhibits.  For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

13.    **Hourly Rate Increases.**  AlixPartners did not increase the hourly rates of firm timekeepers during this interim period.

14.    **Timekeepers' Roles.**    A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4)*.  With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts.  On the whole, each AlixPartners timekeeper appeared to perform either core team responsibilities necessary to the engagement; or performed limited, but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.

15.    **Meetings, Conferences, Hearings, and Other Events.**  The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*.  While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner did not identify any occasions where two timekeepers attended the same meeting, conference, hearing, or other event.

16.    **Intraoffice Conferences.**    Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner did not identify an inappropriate level of intraoffice conferencing.

17.     **Complete and Detailed Task Descriptions.**   Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*. The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v).*

The Fee Examiner identified entries totaling 2.10 hours with $1,396.50 in associated fees in which a conference or other communication was not described with sufficient detail. This lack of detail hinders a reviewer's ability to determine the reasonableness and necessity of the activity, and is in violation of the applicable guidelines. The entries were displayed in **Exhibit C** to the Preliminary Report. The Fee Examiner requested the firm comment on or provide the missing information to bring the questioned time entries into compliance. In response, the firm provided the additional detail that brought the entries into accord with the guidelines and local rules. No recommendation for a fee reduction is appropriate. Exhibit C is omitted from this Final Report.

18.     **Administrative Activities.**   Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates

charged by the firm. The Fee Examiner did not identify any administrative activities billed by
the firm.

19.     **Clerical Activities.**   Clerical activities do not require legal acumen, and may be
effectively performed by administrative assistants, secretaries, or support personnel. Similar to
administrative activities, clerical activities are generally not billable and are considered to be part
of the firm's overhead. In the 3rd Circuit, however, some clerical and non-clerical activities may
be compensable at a rate commensurate with the level of expertise or knowledge typically found
to be necessary to complete the task. The questioned entries were displayed in **Exhibit D** to the
Preliminary Report and totaled 3.10 hours with $773.00 in associated fees.

AlixPartners provided a substantive explanation for most of the questioned activities and
stated the legal acumen/training that was required to complete the activities. AlixPartners
recognized that certain entries could have been described more thoroughly to allow the Fee
Examiner and the Court to evaluate the necessity and/or reasonableness of the fees sought. The
detailed information provided by AlixPartners in its formal response provided the necessary
clarification for the Fee Examiner to remove those entries from the clerical category. Exhibit D
has been omitted from the Final Report.

20.     **Travel.**   The Local Rules provide that nonworking travel time "shall be separately
described and may be billed at no more than 50% of regular hourly rates." *Local
Rule 2016-2(d)(viii)*. The Fee Examiner verified that AlixPartners did not bill for nonworking
travel.

21.     **AlixPartners Retention/Compensation.**   AlixPartners billed 13.80 hours with
associated fees of $8,587.50 to prepare the firm's applications for compensation. The fee entries

-10-

describing AlixPartners' retention/compensation activities are displayed in **Exhibit E**, which is included in the Final Report for the Court's reference.

**Review of Expenses**

22.    **Itemization of Expenses.** The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii).*    The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense. Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii).*    AlixPartners provided an itemization for its expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.  The Fee Examiner found no objectionable expense items.

**CONCLUSION – MONTHLY FEE APPLICATION**

The Fee Examiner submits this Final Report regarding AlixPartners Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $55,440.50[8] and reimbursement of expenses in the amount of $464.40 for the period December 1, 2012 through December 31, 2012.

---

[8] See footnote 2, *supra.*

## DISCUSSION OF FINDINGS – FINAL FEE APPLICATION

The Fee Examiner compared the fees and expenses requested in the Final Fee Application with the fees and expenses requested in the underlying interim fee applications and those approved by the Court (through the date of the filing of the Final Fee Application). As mentioned above in footnote 2, AlixPartners requested $29,400.00 in post-effective fees. As ordered, the Fee Examiner did not review and is not reporting on post-effective fees or expenses.

## CONCLUSION – FINAL FEE APPLICATION

The Fee Examiner submits this Final Report regarding AlixPartners, LLP's Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $11,459,895.00[9] and reimbursement of expenses in the amount of $118,409.60[10], for the period December 19, 2008 through December 31, 2012.


Respectfully submitted,

**STUART MAUE**

By: _____

John F. Theil, Esq.
3840 McKelvey Road
St. Louis, Missouri 63044
Telephone: (314) 291-3030
Facsimile: (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

---

[9] This is the amount of AlixPartner's final fee request ($11,489,295.00) less Post-Effective Fees ($29,400.00) (see footnote 2, supra).

[10] This is the amount of AlixPartner's final expense request ($118,490.60); adjusted by the expense reductions from the Fifteenth Interim Application ($27.00) and Sixteenth Interim Application ($54.00), as these amounts were not approved as of the date the Final Fee Application was filed.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 17th day of June, 2013.

David Buchbinder, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
R. Craig Martin, Esq.
DLA Piper LLP (US)
919 North Market Street, Suite 1500
Wilmington, DE 19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE 19899-0511
(Counsel to Administrative Agent for Prepetition
  Lenders, JP Morgan Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Douglas E. Deutsch, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE 19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017
(Counsel to Administrative Agent for Prepetition
  Lenders, JP Morgan Chase Bank, N.A.)

Alan D. Holtz
Managing Director
AlixPartners, LLP
40 West 57th Street
New York, NY 10019

John F. Theil, Esq.

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**AlixPartners, LLP**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| 1211 | Holtz, Alan | MANAG DIRECTOR | $920.00 | $920.00 | 0.50 | $460.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $920.00 | | 0.50 | $460.00 |
| | | | | % of Total: | 0.56% | % of Total: 0.83% |
| 1244 | Hall, Brad | DIRECTOR | $665.00 | $665.00 | 31.50 | $20,947.50 |
| 398 | Leung, Albert | DIRECTOR | $620.00 | $620.00 | 28.70 | $17,794.00 |
| MFR | Rule, Mark F. | DIRECTOR | $620.00 | $620.00 | 21.00 | $13,020.00 |
| AH | Hsu, Allan | DIRECTOR | $665.00 | $665.00 | 2.00 | $1,330.00 |
| 1484 | Kim, Young | DIRECTOR | $620.00 | $620.00 | 1.80 | $1,116.00 |
| | No. of Billers for Position: 5 | Blended Rate for Position: | $637.74 | | 85.00 | $54,207.50 |
| | | | | % of Total: | 95.94% | % of Total: 97.78% |
| KG | Galbraith, Kristina | ASSOCIATE | $305.00 | $305.00 | 1.60 | $488.00 |
| QS | Sam, Quinton | ASSOCIATE | $190.00 | $190.00 | 1.50 | $285.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $249.35 | | 3.10 | $773.00 |
| | | | | % of Total: | 3.50% | % of Total: 1.39% |
| | Total No. of Billers: 8 | Blended Rate for Report: | $625.74 | | 88.60 | $55,440.50 |

EXHIBIT E

ALIXPARTNERS RETENTION/COMPENSATION

AlixPartners, LLP

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Hall, B | 0.70 | 465.50 |
| Kim, Y | 1.80 | 1,116.00 |
| Leung, A | 11.30 | 7,006.00 |
| | 13.80 | $8,587.50 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Billing and Retention | 13.80 | 8,587.50 |
| | 13.80 | $8,587.50 |

EXHIBIT E

ALIXPARTNERS RETENTION/COMPENSATION

AlixPartners, LLP

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | | DESCRIPTION |
|------|-----------------|-------------|-------|------|---|-------------|
| 12/08/12 Sat | Leung, A 201212-17/51 | 2.20 | 2.20 | 1,364.00 | 1 | *MATTER NAME: Billing and Retention*<br>PREPARED RESPONSE TO FEE EXAMINER 13TH INTERIM PERIOD REPORT. |
| 12/10/12 Mon | Hall, B 201212-17/53 | 0.70 | 0.70 | 465.50 | 1 | *MATTER NAME: Billing and Retention*<br>REVIEW REPORT TO FEE EXAMINER. |
| 12/10/12 Mon | Leung, A 201212-17/52 | 1.10 | 1.10 | 682.00 | 1 | *MATTER NAME: Billing and Retention*<br>PREPARED RESPONSE TO FEE EXAMINER 13TH INTERIM PERIOD REPORT. |
| 12/12/12 Wed | Leung, A 201212-17/54 | 1.30 | 1.30 | 806.00 | 1 | *MATTER NAME: Billing and Retention*<br>PREPARED NOVEMBER 2012 FEE APPLICATION AND EXHIBITS. |
| 12/18/12 Tue | Kim, Y 201212-17/55 | 1.80 | 1.80 | 1,116.00 | 1 | *MATTER NAME: Billing and Retention*<br>PREPARED NOVEMBER 2012 FEE APPLICATION. |
| 12/18/12 Tue | Leung, A 201212-17/56 | 1.10 | 1.10 | 682.00 | 1 | *MATTER NAME: Billing and Retention*<br>PREPARED NOVEMBER 2012 FEE APPLICATION AND EXHIBITS. |
| 12/27/12 Thu | Leung, A 201212-17/57 | 1.80 | 1.80 | 1,116.00 | 1 | *MATTER NAME: Billing and Retention*<br>PREPARED NOVEMBER 2012 FEE APPLICATION AND EXHIBITS. |
| 12/29/12 Sat | Leung, A 201212-17/58 | 1.50 | 1.50 | 930.00 | 1 | *MATTER NAME: Billing and Retention*<br>PREPARED NOVEMBER 2012 FEE APPLICATION AND INTERIM FEE APPLICATION. |
| 12/31/12 Mon | Leung, A 201212-17/59 | 2.30 | 2.30 | 1,426.00 | 1 | *MATTER NAME: Billing and Retention*<br>PREPARED NOVEMBER 2012 FEE APPLICATION AND INTERIM FEE APPLICATION. |
| Total | | | 13.80 | $8,587.50 | | |
| Number of Entries: | 9 | | | | | |

EXHIBIT E

ALIXPARTNERS RETENTION/COMPENSATION

AlixPartners, LLP

SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Hall, B | 0.70 | 465.50 |
| Kim, Y | 1.80 | 1,116.00 |
| Leung, A | 11.30 | 7,006.00 |
| | 13.80 | $8,587.50 |

SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Billing and Retention | 13.80 | 8,587.50 |
| | 13.80 | $8,587.50 |