# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | Hearing Date: July 30, 2013 at 2:00 p.m. ET |
| | Response Deadline: July 23, 2013 at 4:00 p.m. ET |

## REORGANIZED DEBTORS' OBJECTION TO CLAIM NO. 4454 OF MILTON V. JOHNSON, PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007

The reorganized debtors in the above-captioned chapter 11 cases (collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to Claim No. 4454 of Milton V. Johnson (the "Johnson Claim"), solely on the basis that the amounts due to Mr. Johnson for retirement benefits under the Tribune Company Cash Balance Pension Plan (the "Pension Plan") and the retiree life insurance policy referenced in the Johnson Claim, based on his former employment with Chicago Tribune Company

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

("CTC"), will be paid by the Pension Plan and the insurer, respectively, and not by the Debtors' bankruptcy estates.[2] A copy of Claim No. 4454 is attached hereto as <u>Exhibit A</u>.

The Reorganized Debtors respectfully submit that Mr. Johnson will not be prejudiced by the entry of an order disallowing the Johnson Claim because: (a) the Reorganized Debtors do not dispute that Mr. Johnson is entitled to the benefits set forth in the Johnson Claim in the amounts he describes therein, (b) the Debtors' bankruptcy cases did not affect or impair the Pension Plan or the life insurance policy that are the subjects of the Johnson Claim, (c) the Reorganized Debtors have assumed any obligation that the Debtors may have had under the Pension Plan and the retiree life insurance policy pursuant to the plan of reorganization confirmed for the Debtors in these chapter 11 cases, and (d) the obligation to pay the amounts represented in the Johnson Claim remains with the Pension Plan and the insurer under the retiree life insurance policy, respectively, and not with the Debtors' estates.

This Objection is submitted pursuant to section 502(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"). In support of the Objection, the Reorganized Debtors rely on the Declaration of Kevin Dansart in Support of the Reorganized Debtors' Objection to Claim No. 4454 of Milton V. Johnson (the "<u>Dansart Declaration</u>"), a copy of which is attached hereto as <u>Exhibit B</u>. In further support of the Objection, the Reorganized Debtors respectfully state as follows:

---

[2] This Court previously granted similar relief to the Debtors as to the two hundred and fifty-nine (259) protective claims of similarly-situated employees and retirees of the Debtors that were filed on account of one or more Employee Benefit Plans (as defined below) that were not impaired by the Debtors' chapter 11 proceedings, in connection with the Debtors' Fifty-Seventh Omnibus (Substantive) Objection to Claims. (<u>See</u> Order at Docket No. 12362.)

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008, Tribune Company ("Tribune") and certain of its affiliates, including CTC (collectively, the "Debtors"),[3] each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. (Docket Nos. 43, 2333.)

2. On July 23, 2012, the Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization (the "Plan") for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Docket No. 12074).[4]

3. The Effective Date of the Plan occurred on December 31, 2012.[5]

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007.

---

[3] As used herein, the term "Reorganized Debtors" refers to the entities that became successors to the Debtors upon the Debtors' emergence from their chapter 11 cases.

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[5] The Plan provides that one or more Debtors may undertake Restructuring Transactions on, prior to, or after the Effective Date, which may include, without limitation, mergers, consolidations, conversions, joint ventures, restructurings, recapitalizations, dispositions, liquidations or dissolutions. (See Plan § 5.2, Ex. 5.2 and Docket No. 12732.) Chicago Tribune Company, LLC became the successor-in-interest to CTC on the Effective Date, as a consequence of the Restructuring Transactions.

## BACKGROUND

5.  The Johnson Claim was filed on June 11, 2009 with Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors and the Reorganized Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent"). The Johnson Claim was asserted in the amount of "603.37/month till death $10,000 Death Benefit", allegedly based on an early retirement contract.[6] (See Ex. A at 1). No particular Debtor was identified in the Johnson Claim. (Id.)

6.  The Reorganized Debtors are in agreement with the retiree benefits and amounts stated on the Johnson Claim. Specifically, the Reorganized Debtors have reviewed their books and records and have determined that Mr. Johnson was a former employee of CTC and is a current participant in the Pension Plan, with a monthly benefit of $603.37, which is the amount stated on the Johnson Claim. (Dansart Decl. ¶ 4.) The Pension Plan provides retirement benefits to eligible employees of CTC (and other Debtors and Reorganized Debtors), in accordance with the terms of the Pension Plan and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). (Id.) The Pension Plan is sponsored by Tribune and is the primary pension plan established for the benefit of the Debtors' eligible employees. (Id.) The Pension Plan is a tax-qualified, noncontributory, defined benefit plan subject to ERISA, and is tax-qualified under the relevant provisions of the Internal Revenue Code. (Id.)

7.  The Reorganized Debtors have further determined that Mr. Johnson has a $10,000 retiree life insurance policy in place, which is likewise reflected on the Johnson Claim. (Dansart Decl. ¶ 5.) The Debtors provided, and Reorganized Debtors continue to provide, company-paid basic life insurance coverage to eligible employees under a group policy in

---

[6] The Reorganized Debtors have been unable to locate a copy of the "early retirement contract" referenced in the Johnson Claim, but nonetheless have determined that the benefits claimed by Mr. Johnson therein are consistent with their books and records.

4

46429/0001-9640437V1

Tribune's name. (Id.) The Debtors did not have, nor do the Reorganized Debtors have, any interest in the proceeds of the retiree life insurance policy. (Id.) Benefits under the policy will be paid by the insurer to Mr. Johnson's designated beneficiary upon his death, in accordance with the terms of the policy. (Id.)

8. The Plan provides that all Employee Benefit Plans,[7] including the Pension Plan and the retiree life insurance policy, shall be assumed by the applicable Reorganized Debtor(s) on the Effective Date. (See Docket No. 12072, Plan §§ 1.1.82, 6.5.)[8] The Plan further provides that all insurance policies of the Debtors "shall continue in effect after the Effective Date pursuant to their respective terms and conditions, and nothing in the [Plan] shall relieve any

---

[7] "Employee Benefit Plans" are defined in Section 1.1.82 of the Plan as "*any employment, compensation, tax-qualified or non-tax qualified pension plan*, defined benefit plan, multiemployer plan, healthcare, bonus, incentive compensation, sick leave and other leave, vacation pay, expense reimbursement, dependent care, retirement, savings, workers compensation, *life insurance*, disability, dependent care, dependent healthcare, education, severance or other benefit plan or any individual contract or agreement that has not been rejected or terminated prior to the Confirmation Date [i.e., July 23, 2012] for the benefit of the directors, officers or employees (whether salaried or hourly) of the applicable Debtor, or maintained by any Debtor for employees of non-Debtor direct or indirect subsidiaries of a Debtor, and any retiree benefit program of the applicable Debtor...." (emphasis added).

[8] Section 6.5 of the confirmed Plan additionally provides as follows, with respect to the assumption of Employee Benefit Plans:

> Except as set forth in Article II.F.4 of the specific portion of the disclosure statement relating to the Second Amended Plan and such other Employee Benefit Plans as may be disclosed in the Plan Supplement, the Reorganized Debtors shall continue to perform their obligations under all Employee Benefit Plans and all such Employee Benefit Plans shall be assumed by the applicable Reorganized Debtors; provided, however, that nothing in the Plan shall limit, diminish or otherwise alter the Reorganized Debtors' defenses, claims, causes of action, or other rights with respect to the interpretation, application or enforcement of any such Employee Benefit Plan or the payment of any Employee Benefit Claim, including the Reorganized Debtors' rights to amend, modify or terminate any such Employee Benefit Plan either prior to or after the Effective Date.

In turn, Article II.F.4 of the specific disclosure statement provides as follows:

> With the exception of the Compensation and Benefit Programs described in Article III.C.6– III.C.11 of the General Disclosure Statement (i.e., the Management Equity Incentive Program, the Equity-Based Compensation Provisions of the Incentive Compensation Plan, the Employee Stock Ownership Plan, the Transitional Compensation Plan, the Nonqualified Retirement / Deferred Compensation Plans, and Certain Individual Letter Agreements), the Reorganized Debtors shall continue to perform their obligations under all Employee Benefit Plans and all such Employee Benefit Plans shall be assumed by the applicable Reorganized Debtors; provided, however, that nothing in the Debtor/Committee/Lender Plan shall limit, diminish or otherwise alter the Reorganized Debtors' defenses, claims, causes of action, or other rights with respect to the interpretation, application or enforcement of any such Employee Benefit Plan or the payment of any Employee Benefit Claim, including the Reorganized Debtors' rights to amend, modify or terminate any such Employee Benefit Plan either prior to or after the Effective Date.

46429/0001-9640437V1

of the Reorganized Debtors from performing any of the Debtors' obligations" thereunder. (See Docket No. 12072, Plan § 6.9.) The payment of retirement benefits to participants in the Debtors' Employee Benefit Plans has not been interrupted or affected by the Debtors' chapter 11 bankruptcy proceedings. None of the Employee Benefit Plans is or was a Debtor in these chapter 11 cases.

## BASIS FOR OBJECTION

9. A "claim" for bankruptcy purposes means a "right to payment", whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5).

10. Section 502(b) of the Bankruptcy Code provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1). Section 502(b)(1) recognizes the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450-51 (2007) (citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)). A claim against the bankruptcy estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." In re Combustion Eng'g, Inc., 391 F.3d 190, 245 (3d Cir. 2004). In proceedings to determine whether a claim is enforceable against the estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any

6

entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses" pursuant to section 558 of the Bankruptcy Code. See 11 U.S.C. § 558.

11. In this case, the Reorganized Debtors believe that the Johnson Claim was filed by Mr. Johnson on a protective basis to preserve a right of recovery against the Debtors in the event that the Debtors had elected to terminate their Employee Benefit Plans and deprive the beneficiaries thereunder, including Mr. Johnson, of the benefits to which they were entitled under such Employee Benefit Plans. However, the Debtors did not terminate any of the applicable Employee Benefit Plans. The Employee Benefit Plans, including the Pension Plan and the retiree life insurance policy that are the subjects of the Johnson Claim were instead assumed by the Reorganized Debtors, pursuant to the Plan, on the Effective Date.

12. The Reorganized Debtors furthermore do not dispute that Mr. Johnson is entitled to retiree benefits in the amounts stated on the Johnson Claim. However, the obligation to pay those benefits is not an obligation of the Debtors' chapter 11 bankruptcy estates. Rather, amounts due to Mr. Johnson for pension benefits based on an employment relationship with the Debtors have been and will continue to be paid by the Pension Plan, in accordance with the terms of the Pension Plan and ERISA, and not by any of the Debtors.[9] (Dansart Decl. ¶ 4.) The same is true with respect to the amounts sought in the Johnson Claim as it relates to the retiree life insurance policy held by Mr. Johnson. The policy provides for payment of the proceeds solely to Mr. Johnson's designated beneficiaries upon his death. The Debtors did not have, nor do the Reorganized Debtors have, any interest in the proceeds of the retiree life insurance policy and the proceeds of the policy were not property of the Debtors' estates. Mr. Johnson and his

---

[9] The benefits paid to participants and beneficiaries in the Pension Plan are paid by and through the Pension Plan, which is a tax-qualified trust that is not under the Debtors' control and whose assets are not assets of the Debtors' estates. See 11 U.S.C. § 541(b)(7) (contributions to ERISA-governed employee benefit plans excluded from property of the estate); see also Helfrich v. Carle Clinic Ass'n, P.C., 328 F.3d 915, 916 (7th Cir. 2003) (pension plan is a separate trust, a legal entity distinct from the employer-sponsor).

7

beneficiaries under the policy will continue to have all their respective rights and remedies respecting the retiree life insurance policy, in accordance with the terms of the policy.

13. Accordingly, the Johnson Claim should be disallowed and expunged against the Debtors' estates. Mr. Johnson will not be prejudiced by the relief requested in this Objection, because his rights to receive the retiree benefits identified in the Johnson Claim were not impaired by the Debtors' chapter 11 bankruptcy proceedings and will continue to be honored by the Pension Plan, the Reorganized Debtors' insurers, and the Reorganized Debtors in the future in accordance with the terms and conditions of the Pension Plan and the retiree life insurance policy.

## NOTICE

14. Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) Mr. Johnson; and (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Reorganized Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

15. No previous application for the relief sought herein has been made to this Court or to any other court.

[Remainder of page intentionally left blank]

46429/0001-9640437V1

WHEREFORE, for the reasons set forth herein, the Reorganized Debtors respectfully request that the Court enter the Order, pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, (i) disallowing and expunging Claim No. 4454 in its entirety; (ii) authorizing the Claims Agent to expunge Claim No. 4454 from the official claims register maintained in these chapter 11 cases; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
June 20, 2013

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR REORGANIZED DEBTORS

46429/0001-9640437V1