## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Hearing Date: July 30, 2013 at 2:00 p.m. ET**<br>**Objection Deadline: July 23, 2013 at 4:00 p.m. ET** |

### REORGANIZED DEBTORS' OBJECTION TO THE CLAIMS OF THE TRUCK DRIVERS & HELPERS LOCAL UNION NO. 355 RETIREMENT PENSION FUND AND THE TRUCK DRIVERS & HELPERS LOCAL UNION NO. 355 HEALTH AND WELFARE FUND PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3003 AND 3007

The reorganized debtors in the above-captioned chapter 11 cases (the

"Reorganized Debtors"), hereby file this objection (the "Objection"), pursuant to section 502(b)

of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and

Rules 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to

proof of claim number 3505 (the "Pension Fund Claim") filed against Debtor The Baltimore Sun

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

Company (n/k/a The Baltimore Sun Company, LLC) (the "Baltimore Sun") by the Truck Drivers

& Helpers Local Union No. 355 ("Local 355") Retirement Pension Fund (the "Pension Fund")

and to proof of claim number 3506 (the "Welfare Fund Claim," and, collectively with the

Pension Fund Claim, the "Local 355 Claims", copies of which are attached hereto as Exhibit A)

filed against the Baltimore Sun by the Local 355 Health and Welfare Fund (the "Welfare Fund")

(the Pension Fund and the Welfare Fund will be collectively referred to herein as the "Local 355

Funds" or "Claimants") and request the entry of an order in the form submitted herewith

reducing and allowing the Welfare Fund Claim in the amount stated herein (i.e., $1,412.86) and

disallowing in full and expunging the Pension Fund Claim.  In support of this Objection, the

Reorganized Debtors rely on the *Declaration of Ann Barnes in Support of Reorganized Debtors'*

*Objection to the Local 355 Claims* (the "Barnes Declaration"), a copy of which is attached hereto

as Exhibit B.  In further support, the Reorganized Debtors respectfully represent as follows.

## PRELIMINARY STATEMENT

1.      Local 355's filing of the Local 355 Claims represents another in a series of

unsubstantiated attempts to manufacture unfulfilled contributions owed by the Baltimore Sun

premised on nothing more than Local 355's erroneous interpretation of a collective bargaining

agreement provision.  Local 355's interpretation is in direct contradiction to both the plain

language of that agreement and the historical course of dealing between the Baltimore Sun and

Local 355 (collectively, the "Parties").

2.      The Parties originally entered into the collective bargaining agreement

(the "CBA") in 1951 and have renegotiated and re-executed that CBA twenty-four (24) times

since its inception.[2]  The current CBA, among other things, requires that the Baltimore Sun make

---

[2] A summary of the relevant portions of the CBA over time, as well as the actual portions of the CBA as written since 1962, are included as Exhibit C to this Objection.

contributions to both of the Local 355 Funds for "each straight-time hour or fraction thereof paid to each employee . . . ." See Exhibit C at p. 55. Despite the explicit use of the term "straight-time hour," Local 355 has interpreted this term to mean "straight *and overtime* hours." See Welfare Fund Claim at p. 3 and Pension Fund Claim at p. 3 (omitting "straight-time" from the description and stating the Baltimore Sun is obligated to contribute "a specified amount per hour for *each hour* worked by each employee working in covered employment." (emphasis added)).

3.      The amounts sought by Local 355 in the Local 355 Claims relate solely to contributions based on overtime hours.  Since the CBA was first modified to contemplate contributions to either of the Local 355 Funds more than fifty (50) years ago, the Baltimore Sun has complied with the unequivocal language of the CBA and has never made contributions to the Pension Fund or Welfare Fund for overtime hours worked.  While Local 355 has begun to assert its erroneous interpretation in the recent past, the Baltimore Sun has consistently made contributions solely on account of straight time worked for the entire life of the CBA.  As noted above, the CBA has been renegotiated twenty-four times and, despite other modifications, Local 355 has executed each new iteration of the CBA maintaining the "straight-time hour" language in Section 12, rather than bargaining for an amendment to comport with its hopes for additional contributions.

4.      Following review of its audits for the years 2006 and 2007, the Baltimore Sun agrees that an additional $1,412.86 is due to the Welfare Fund, unrelated to contributions based on "overtime" hours.  The Reorganized Debtors are therefore seeking to reduce and allow the Welfare Fund Claim in the amount of $1,412.86.  Audits of the Pension Fund do not show any deficient contributions and the Reorganized Debtors are therefore seeking to disallow in full and expunge the Pension Fund Claim.

## STATUS OF THE CASE

5.      On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) (Docket No. 43, 2333).

7.      On July 23, 2012, the Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization (the "Plan") for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Docket No. 12074).

8.      The Effective Date of the Plan occurred on December 31, 2012.

9.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 502 of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007.

## RELEVANT BACKGROUND

a.      **Background Related to the Collective Bargaining Agreement and the Welfare and Pension Funds.**

10.      Local 355 is a labor organization, commonly known as the Teamsters, representing workers in various industries in parts of Maryland, Delaware, and Virginia. Local 355 and the Baltimore Sun first executed a CBA in 1951. The CBA was renegotiated and re-

4

executed in 1953 (twice), 1954, 1957, 1959, 1961, 1962, 1965, 1967, 1970, 1974, 1975, 1978, 1981, 1984, 1987, 1989, 1993, 1995, 1998, 2003, 2008, and 2011.  See Exhibit C at p. 1.

11.    Pursuant to the terms first added to the CBA in connection with its renegotiation in 1962, the Baltimore Sun has been making contributions on behalf of its employees to the Welfare Fund, a multiemployer welfare benefit plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., since July 1, 1962.[3]  Also pursuant to the language added in 1962, the Baltimore Sun started making contributions to the Pension Fund on July 1, 1963.  See Exhibit C at pp. 1 & 3 and Barnes Declaration at ¶ 7.

12.    Both Local 355 Funds are governed by a board of trustees, and the trustees of both funds designate a third-party administrator to oversee their day-to-day operations.  The third-party administrator for the Local 355 Funds is the Benefits Administration Corporation ("BAC").  The BAC is a separate entity from Local 355 and administers its welfare and retirement funds, which are funded under similar agreements to the Baltimore Sun's CBA.  See Barnes Declaration at ¶ 8.

13.    Since the CBA negotiated for the 1962-1965 period, first section 9(a) then section 12(a) has governed the Baltimore Sun's contributions to the Welfare Fund and states:

> The Publisher agrees that he will contribute monthly to the Health and Welfare Fund . . . *for each straight-time hour or fraction thereof paid to each employee . . .*

See Exhibit C at pp. 3, 7, 12, 17, 22, 25, 27, 30, 33, 36-37, 39, 42, 46, 49, 52, and 55 (emphasis added).

14.    Since the CBA negotiated for the 1962-1965 period, first section 9(b) then section 12(b) has governed the Baltimore Sun's contributions to the Pension Fund and states:

---

[3] The Welfare Fund became subject to ERISA upon ERISA's enactment in 1974.

> The Publisher agrees that he will contribute monthly to the Pension Fund . . . *for each straight-time hour or fraction thereof paid to each employee* . . .

See Exhibit C at pp. 3, 7, 12, 17, 23, 25, 27, 30, 33, 37, 39, 42, 47, 50, 52-53, and 55 (emphasis added).

15.    The language defining the Local 355 Funds in the CBA has not changed since its inception in 1962. See Exhibit C at pp. 1, 3, 7, 12, 17, 22-23, 25, 27, 30, 33, 36-37, 39, 42, 46-47, 49-50, 52-53, and 55.

**b.    Background Related to Past Requests for Overtime Contributions and CBA Renegotiations**

16.    David White, a trustee for the Local 355 Funds and secretary-treasurer of Local 355, sent the Baltimore Sun a letter dated August 8, 2006[4] (the "August 2006 Letter", a copy of which is attached hereto at Exhibit D) which claimed contributions for overtime hours worked during the 2004-2005 audit period. The Baltimore Sun responded to the August 2006 Letter on May 3, 2007 with a letter back to Mr. White (a copy of which is attached hereto at Exhibit E). The Baltimore Sun stated in the May 3, 2007 letter that the CBA does not require contributions on overtime hours and requested written documentation in support of the Local 355 Funds' assertion to the contrary. The Baltimore Sun has received no such documentation. See Barnes Declaration at ¶ 10.

17.    The CBA was renegotiated in 2008 for the period from 2008 to 2010. Aside from various contribution rate adjustments, no language related to the hours upon which contributions to the Pension Fund or the Welfare Fund were based was modified, nor was the issue discussed. See Exhibit C at p. 1; Barnes Declaration at ¶ 11.

18.    Notwithstanding the Baltimore Sun's May 2007 letter to Mr. White making its position clear, and the absence of any response to that letter from Local 355, the

---

[4] Despite a date of August 6, 2006, this letter was not received by the Baltimore Sun until February 5, 2007.

6

Baltimore Sun received a request from Local 355's auditors to examine payroll records on June 4, 2008. The Baltimore Sun requested the purpose for the audit on June 5, 2008 and received no response. <u>See</u> Barnes Declaration at ¶ 12.

           19.      On March 12, 2009, the Baltimore Sun sent a letter to the auditor of the Local 355 Funds (a copy of which is attached hereto at <u>Exhibit F</u>), which stated the terms of the CBA and again requested any documentation supporting the assertion that contributions should be made based on overtime hours as opposed to straight-time hours. In response, Claire M. Kratz of the BAC sent a letter on March 20, 2009 (a copy of which is attached hereto at <u>Exhibit G</u>) indicating that the audit for "Contribution Period – January 1, 2006 through December 31, 2007" revealed that there were deficiencies totaling just over $67,000 to the Local 355 Funds. The BAC requested that the Baltimore Sun forward the amount directly to the Local 355 Funds. <u>See Exhibit G</u>. The Baltimore Sun responded to Ms. Kratz on March 30, 2009 (a copy of which is attached hereto at <u>Exhibit H</u>) requesting the time to complete a review of the audit, but noting that an initial review revealed that a bulk of the difference came from Local 355's insistence that the Baltimore Sun pay premiums on overtime hours, which was in conflict with the CBA. On August 31, 2009, the Baltimore Sun sent a follow-up letter to Ms. Kratz (a copy of which is attached hereto at <u>Exhibit I</u>) affirming that a bulk of the discrepancy resulted from "the auditor's incorrect assumption that contributions are due and owing on overtime hours." This letter did acknowledge an under-contribution to the Welfare Fund in the amount of $1,412.86 and an over-contribution to the Pension Fund in the amount of $4.62 for the 2006-2007 audit period. <u>See Exhibit I</u>. The Baltimore Sun received no responses providing support for contributions based on overtime hours from either the auditors or the BAC. <u>See</u> Barnes Declaration at ¶ 16.

20.    In 2010, the auditors for the Local 355 Funds again asked to review the

Baltimore Sun's payroll records in relation to an audit of the 2008 and 2009 periods.  The

Baltimore Sun agreed to the review but never received a copy of the audit or a letter revealing its

results.  See Barnes Declaration at ¶ 17.

21.    The CBA was again renegotiated in 2011 for the period from 2011 to

2013.  As with the preceding renegotiation of the CBA, aside from various contribution rate

adjustments, no language related to the hours upon which contributions to the Pension Fund or

the Welfare Fun were based was modified, nor was the issue discussed.  See Exhibit C at p. 1;

Barnes Declaration at ¶ 18.

22.    On June 6, 2012, the Baltimore Sun received the results of the audit for the

period 2010 to 2011 (a copy of which is attached hereto at Exhibit J).  In the cover email, the

auditors stated that they "assessed [the straight-time versus overtime hours issue] based on how

the Union interpreted the CBA and 'straight-time' hours."  See Exhibit J.  On June 11, 2012, the

Baltimore Sun responded to the audit again stating that the CBA "requires contributions only for

'straight-time' hours paid to each employee" (a copy of which is attached hereto at Exhibit K).

The letter further states that "[y]ou suggest that a question of interpretation exists over the

meaning of 'straight-time' hours.  We disagree.  The language of the collective bargaining

agreement is clear and unequivocal and neither you nor the Union can ignore the clear-cut

contractual language."  See Exhibit K.  The Baltimore Sun never received a response.  See

Barnes Declaration at ¶ 20.

c.    **Background Related to the Local 355 Claims.**

23.    Local 355 filed the Pension Fund Claim in the Baltimore Sun's chapter 11

bankruptcy case in the amount of $22,790.09 on June 4, 2009.  The Pension Fund Claim was

assigned Claim No. 3505 by the Debtors' claims agent Epiq Bankruptcy Solutions, LLC

("Epiq").  Local 355 asserted that $3,237.30 of the Pension Claim was entitled to unsecured

priority treatment as a contribution under an employee benefit plan (11 U.S.C. § 507(a)(5)).

24.    Local 355 filed the Welfare Fund Claim in the Baltimore Sun's chapter 11

bankruptcy case in the amount of $95,279.59 on June 4, 2009.  The Welfare Fund Claim was

assigned Claim No. 3506 by Epiq.  Local 355 asserted that $13,534.02 of the Pension Claim was

entitled to unsecured priority treatment as a contribution under an employee benefit plan (11

U.S.C. § 507(a)(5)).

**d.     Recent Applicable Case Law**

25.    In June 2010, Judge Motz of the United States District Court for the

District of Maryland issued his opinion in U.S. Foodservice, Inc. v. Truck Drivers & Helpers

Local Union No. 355 Health & Welfare Fund, 2010 U.S. Dist. LEXIS 60983 (D. Md., June 21,

2010) ("US Foodservice"), which is instructive.  Similar to the dispute between Baltimore Sun

and Local 355, US Foodservice involved a disagreement between Local 355 and a CBA

counterparty, U.S. Foodservice ("USF"), over the provision governing contributions to the

Welfare Fund and the Pension Fund.  Id. at 1-2.  Since first executing its collective bargaining

agreement with Local 355, USF had been paying contributions to the Welfare Fund and Pension

Fund on both straight time and overtime hours, despite the language of the collective bargaining

agreement stating contributions were only due on "each straight time hour."  Id. at 2-3.

Following this discovery in 2007, USF commenced the action to recover the overpaid amounts.

Id. at 4.  The Local 355 Funds suggested a different interpretation to the Court, arguing that the

use of "straight time" in the language of the contract was ambiguous.  They argued that it

modified the contribution rate, not the type of hour.  Id. at 4-5.

26.    The District Court granted USF's motions for summary judgment as to

both funds, holding that the "CBA language is clear and unambiguous."  Id. at 7.  Using a

dictionary, the words of the Local 355 Secretary-Treasurer, David White, and the contract itself,

the Court stated that "straight-time" modifies the word "hour" and not the rate of pay. Id. at 9.

Further, the Court found that the Local 355 Funds cite

> no objectively reasonable source for the proposition that "straight time" means
> "flat rate." . . . Second, construing the CBA in the manner sought by the funds[]
> would require reading the term "straight time" out of the agreement altogether:
>
>> . . . agrees to pay into the Fund . . . ($3.95) for each ~~straight time~~ hour or
>> fraction thereof paid to each employee . . . up to 50 ~~straight time~~ hours in
>> any one week.
>
> . . . Third, every contribution provision, from 1957 to the present, included a
> single specific dollar contribution. A contract term indicating that contributions
> were to be made at a flat rate is redundant. Finally, the term "straight time" is
> disconnected from the specified rate of pay. Only by deconstructing the clause
> and rearranging terms could I produce the result the Funds seek.

Id. at 9-10 (internal citations omitted).

27.    US Foodservice was later overruled on other grounds by the United States

Court of Appeals for the Fourth Circuit. On appeal, the Fourth Circuit found that the textual

analysis that the District Court employed was unnecessary because the only issue was whether

the administrator of the benefit plan in that case had abused its discretion in refusing to return

amounts that had been paid by the employer based on the employer's mistaken assumption that it

was obligated to make payments on account of both straight-time and overtime hours. U.S.

Foodservice, Inc. v. Truck Drivers & Helpers Local Union No. 355 Health & Welfare Fund, 700

F.3d 743, 748-750 (4th Cir. 2012). The Fourth Circuit concluded that there was no abuse of

discretion. Id. at 751. That fact pattern is not present here, where the Baltimore Sun never made

the payments that the Local 355 Funds assert are owed in the proofs of claim.[5]

---

[5] The Fourth Circuit found in part that the language in the CBA at issue in US Foodservice was capable of more than
one reading because it focused on certain language in the CBA – which is also present in the CBA at issue here –
that "The Company . . . agrees to pay into the Fund, [amount] for each straight time hour or fraction thereof paid to
each employee covered by this Agreement . . . up to but not in excess of fifty (50) straight time hours in any one (1)
work week in the case of each employee." US Foodservice, 700 F.3d at 746-47. The Fourth Circuit then found to

**ARGUMENT**

28.     A "claim" in bankruptcy is a "right to payment" or a "right to an equitable

remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. §

101(5).  The Supreme Court has held that a "'right to payment' [means] nothing more nor less

than an enforceable obligation."  See Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)

(internal citation omitted); see also In re Rodriguez, 629 F.3d 136, 139 (3d Cir. 2010) (citing

Johnson).  Under section 502(b)(1) of the Bankruptcy Code, a claim is allowable unless it is

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. §

502(b)(1); In re W.R. Grace & Co., 346 B.R. 672, 674 (Bankr. D. Del. 2006) ("Section 502(b)(1)

requires disallowance of a claim to the extent that 'such claim is unenforceable against the debtor

and property of the debtor, under any agreement or applicable law for a reason other than

because such claim is contingent or unmatured.'").  Further, "what claims of creditors are valid

and subsisting obligations against the bankrupt at the time a petition is filed, is a question which,

in the absence of overruling federal law, is to be determined by reference to state law." Vanston

Bondholders Protective Comm. v. Green, 329 U.S. 156, 161 (1946) (footnote omitted) (partially

---

be at least arguable Local 355's contention that:

> To interpret the CBA as limiting contributions to the Health Fund for hours worked by employees
> to forty (40) hours per week because U.S. Foodservice was paying its employees time and one half
> for hours in excess of forty (40) per week is contrary to the terms of the CBA which requires
> contributions on up to fifty (50) hours.  Such an interpretation would negate any obligation of an
> employer to make contributions on hours beyond forty (40) per week, and would render the plain
> language of the CBA meaningless.  This was not the intention of the bargaining parties and is
> contrary to well settled tenets of contract interpretation.

Id. at 750-51.  The Reorganized Debtors respectfully submit that this argument, even if sufficient to sustain the
administrator's decision not to return money paid on account of non-straight-time hours in U.S. Foodservice, is not
plausible here.  The plain language of the CBA provides that the Baltimore Sun will pay monies into the Local 355
Funds on account of "straight-time" hours.  The language requiring payments on account of straight-time hours up
to 50 hours per week is intended to address situations where a covered employee may accrue hours in excess of a
full work week but nonetheless receive payment at a straight-time rate.  This situation occurs when an employee
works one of her five (5) 7.5 hour shifts (five shifts are a full work-week) on a holiday or if her day off falls on a
holiday.  In that instance, the employee would receive a full week's salary in addition to an extra 7.5 hours of
straight-time pay, giving her 45 hours of straight-time pay in one week.  See Barnes Declaration at ¶ 5.

superseded by statute but not judicially overturned). This approach is also followed in this jurisdiction. See, e.g., W.R. Grace at 674 ("The validity and legality of claims generally is determined by applicable nonbankruptcy law.").

29.    "A collective bargaining agreement is a contract between the parties, and must be examined in light of the usual principles of contract interpretation, as well as in light of federal policy. Where the language of a contract is clear and unambiguous, and leads to a meaning which is both reasonable and sensible there is no need to look beyond it in search of some other intention." F. D. Rich Company v. Wilmington Housing Authority, 392 F.2d 841, 842 (3d Cir. 1968); accord Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1284 (3d Cir. 1991).

30.    A collective bargaining agreement "is an agreement creating relationships and interests under the federal common law of labor policy." Sternitzke v. Yellow Freight Sys., 2008 U.S. Dist. LEXIS 8801, 30-31 (W.D. Pa. Feb. 6, 2008) (quoting Bowen v. United States Postal Serv., 459 U.S. 212, 220, 103 S. Ct. 588, 74 L. Ed. 2d 402 (1983)). In determining if an ambiguity in a collective bargaining agreement exists, a court does not view the language in a vacuum. Rather, it must examine both sides' interpretations and "determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." Sheet Metal Workers, 949 F.2d at 1284 (citing Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980)). A court's finding must take into account the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. Teamsters Industrial Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993) (citing Int'l Union, United Auto., etc. v. Mack Trucks, Inc., 917 F.2d 107, 111 (3d Circ. 1990)). "Extrinsic

evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning." <u>Teamsters</u>, 989 F.2d at 135.

31.     Here the language in the CBA is unambiguous. Sections 12(a) and 12(b) each state that contributions will be paid only for "each straight-time hour or fraction thereof." <u>See</u> Sections 12(a) and 12(b) at <u>Exhibit C</u> at pp. 49-50. The term "straight-time" is used to modify "hour" and is done so to designate the type of hour for which contributions must be made. Had the CBA been negotiated to require contributions be paid on all hours, then no modifier would be used for the term "hour." It is Local 355's intention that the term "straight-time" be omitted, as it has done on the attachments to both Local 355 Claims, where Local 355 wrote that "The Baltimore Sun Company is obligated to contribute to the [relevant fund] a specified amount per hour for each hour worked by each employee working in covered employment." <u>See</u> Welfare Fund Claim at p. 3 and Pension Fund Claim at p. 3. This intention fails upon review of the CBA itself, where the term "straight-time" is clearly present. Further, the District Court in <u>US Foodservice</u> declared that the same language in a contract between Local 355 and a different party is "unambiguous" and does not encompass overtime hours. <u>See</u> <u>US Foodservice</u>, 2010 U.S. Dist. LEXIS 60983 at *12.

32.     Additionally, in the event that the clear language of the CBA is deemed to be ambiguous, it is incumbent upon this Court to note the Parties' course of dealing, which clearly weighs in favor of the Baltimore Sun's interpretation of the CBA. The CBA, and specifically the language of Sections 12(a) and 12(b), has been unmodified in relevant part since the early 1960s and at no time has the Baltimore Sun paid contributions based on overtime hours. It was not until 2006, after four decades of operating under the "no overtime contributions" structure, that Local 355 began to demand these contributions. The language at issue has not

13

changed over the lifetime of the Parties' relationship, including two negotiations since Local 355's demand.

33.    The language of the CBA is unambiguous and fully comports with the Parties' course of dealing over the life of the agreement.  The Baltimore Sun is not responsible for overtime payments to the Local 355 Funds, and the Local 355 Claims should accordingly be disallowed save for a claim for $1,412.86 in favor of the Welfare Fund, which the Baltimore Sun concedes is owing on grounds other than those set forth in the Local 355 Claims.

## NOTICE

34.    Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) Local 355; and (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Reorganized Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

35.    No previous application for the relief sought herein has been made to this Court or to any other court.

14

WHEREFORE, for the reasons set forth herein, the Reorganized Debtors respectfully request that the Court sustain the Objection as it relates to the Local 355 Claims and enter the order submitted herewith reducing and allowing the Welfare Fund Claim in the amount of $1,412.86 and disallowing in full and expunging the Pension Fund Claim.

Dated: Wilmington, Delaware
      June 26, 2013

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kenneth P. Kansa
Jillian K. Ludwig
Lydia Hill Slaby
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By:   _/s/ J. Kate Stickles_
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR REORGANIZED DEBTORS