**EXHIBIT B**

**BARNES DECLARATION**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |

## DECLARATION OF ANN BARNES IN SUPPORT OF REORGANIZED DEBTORS' OBJECTION TO THE CLAIMS OF THE TRUCK DRIVERS & HELPERS LOCAL UNION NO. 355 RETIREMENT PENSION FUND AND THE TRUCK DRIVERS & HELPERS LOCAL UNION NO. 355 HEALTH AND WELFARE FUND

I, Ann Barnes, declare as follows:

1. I am the Labor Relations Director at the Baltimore Sun. In this position, I am responsible for the negotiation, implementation, management, and oversight of all union contracts to which the Baltimore Sun is a party.

2. I have read the Reorganized Debtors' *Objection to the Claims of the Truck Drivers & Helpers Local Union No. 355 Retirement Pension Fund and the Truck Drivers &*

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

*Helpers Local Union No. 355 Health and Welfare Fund Pursuant to Section 502(b) of the Bankruptcy Code, and Bankruptcy Rules 3003 and 3007* (the "Objection")[2] and am directly, or by and through the Reorganized Debtors' personnel and advisors, familiar with the information contained therein. I am authorized to submit this declaration (the "Declaration") in support of the Objection.

3. All matters set forth in this Declaration are based on: (a) my personal knowledge, (b) my review of relevant documents, or (c) information supplied to me by others at the Reorganized Debtors' request. If called upon to testify, I could and would testify competently to the facts set forth herein.

4. In connection with the Objection, the Baltimore Sun undertook a review of its records concerning the Local 355 Claims. The Baltimore Sun identified numerous records relating to the Local 355 Claims, which are attached to or otherwise referenced in the Objection as follows.

5. Sections 4(a) and 4(b) of the CBA for the period April 18, 2003 to December 31, 2007 (the CBA that is binding for the disputed claims) discuss holidays as follows:

> 4(a) . . . holidays shall include New Year's Day, Memorial Day, July Fourth, Labor Day, Thanksgiving Day, Christmas Day and/or days legally observed as such by the Publisher.
>
> (b). Regular employees shall receive a credit of seven and one-half (7 1/2) hours at straight time in each week in which a holiday occurs, provided that the employee works on the holiday if scheduled to work. If the employee is required to work more than seven and one-half (7 1/2) hours on the holiday, the holiday credit shall be equal to the hours actually worked. If the employee's day off falls on the holiday, and he does not work on the holiday, he shall receive the seven and one-half (7 1/2) hours credit provided he works his normally scheduled workweek of five (5) shifts.

---

[2] All capitalized terms used, but not defined herein, shall have the meanings ascribed to them in the Objection.

>Regular tractor-trailer drivers assigned to nine and one-half (9 ½) hour workdays will receive nine and one-half (9 ½) hours' pay for each recognized holiday taken.

6. Sections 12(a) and 12(b) of the of the CBA for the period April 18, 2003 to December 31, 2007 (the CBA that is binding for the disputed claims) discuss the Welfare Fund and the Pension Fund as follows:

> 12(a). The Publisher agrees that he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the total sum of $3.58 (to be increased by an additional $0.18 to $3.76 effective January 1, 2004; to be increased by an additional $0.20 to $3.96 effective January 1, 2005; to be increased by an additional $0.20 to $4.16 effective January 1, 2006; and to be increased by an additional $0.20 to $4.36 effective January 1, 2007) for Health and Welfare coverage provided, by the Plan for each straight-time hour or fraction thereof paid to each employee of the Publisher who is in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may, by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.
>
> 1. When an employee is out on a long injury or illness which exceeds the twenty-six (26) weeks sick and accident benefits, the Fund will carry the employee for the next twenty-six (26) weeks at no charge. The employee can continue coverage for an additional one (1) year provided the employee pays for the coverage himself as provided by the Agreement and Declaration of Trust.
>
> (b). The Publisher agrees that he will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of $2.00 (to be increased by $0.10 to $2.10 effective January 1, 2006) per hour for Retirement benefits provided by the Plan; for each straight-time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

7.  The first page of Exhibit C to the Objection is a summary of the twenty-four CBAs negotiated over the last sixty-two years as the language relates to the Local 355 Funds. Following the summary are excerpts from each of the CBAs, starting in with the contract for the period June 30, 1962 through June 30, 1965 and continuing through the current contract for the period January 1, 2011 through December 31, 2013, that contain language relating to the Local 355 Funds. Those excerpts show that the language has not substantively changed since it was first negotiated in 1962.

8.  The Baltimore Sun began paying into the Welfare Fund on July 1, 1962 and the Pension Fund on July 1, 1963. The Local 355 Funds are governed by a Board of Trustees, and that Board designates a third-party administrator to oversee the Local 355 Funds' day-to-day operations. The third-party administrator for the Local 355 Funds is the Benefits Administration Corporation, which is a separate entity from Local 355 and administers its welfare and retirement funds, which are funded under similar agreements to the Baltimore Sun's CBA.

9.  Exhibit D is a true and correct copy of the letter from David White, Trustee of the Local 355 Funds to the Baltimore Sun dated August 8, 2006 and received by the Baltimore Sun on February 5, 2007. Attached to the letter is a true and correct copy of the audit results from the contribution period January 1, 2004 through December 31, 2005 as sent from Mr. White to the Baltimore Sun.

10. Exhibit E is a true and correct copy of the letter from Donna Schultheis, Payroll Manager for the Baltimore Sun, to Mr. White dated May 3, 2007. This letter requested written documentation of the basis for Pension Fund and Welfare Fund contributions on overtime hours. Such documentation was never received by the Baltimore Sun.

11.     The CBA was renegotiated in 2008 for the period from January 1, 2008 to December 31, 2010. Aside from various contribution rate adjustments, no language related to the hours upon which contributions to the Pension Fund or the Welfare Fund were based was modified, nor was the issue discussed during negotiations.

12.     On June 4, 2008, Ms. Schultheis of the Baltimore Sun received an email request from Sev James of Handwerger, Cardegna, Funkhouser & Lerman, P.A., the Local 355 Funds' auditors, to perform an audit of the 2006 and 2007 payroll records. I replied with a letter on June 5, 2008, requesting the purpose of the audit. As of August 4, 2008, the Baltimore Sun had not received a response, and to my knowledge the Baltimore Sun still has not received a response. The Baltimore Sun agreed to the audit despite the lack of explanation.

13.     Exhibit F is a true and correct copy of the March 12, 2009 letter from Ms. Schultheis of the Baltimore Sun to Ms. James, the Local 355 Funds' auditor, stating that the language in sections 12(a) and 12(b) of the CBA refers only to straight-time hours. The letter also states that this position was laid out to Mr. White in the letter sent on May 3, 2007 (Exhibit E, above) and that the Baltimore Sun never received a response.

14.     Exhibit G is a true and correct copy of the letter sent to Ms. Schultheis of the Baltimore Sun from Claire M. Kratz, Administrator at the Benefits Administration Corp., Inc. on March 20, 2009 in reference to the 2006 – 2007 contribution period. The letter makes no reference to the correspondence from Ms. Schultheis to the trustee, Mr. White, and the auditor, Ms. James, concerning sections 12(a) and 12(b) of the CBA. Instead, it requests immediate payment of $54,136.15 to the Welfare Fund and $12,949.13 to the Pension Fund.

15.     Exhibit H is a true and correct copy of the letter Ms. Schultheis of the Baltimore Sun sent to Ms. Kratz of BAC on March 30, 2009 in response to the March 20 letter,

above. While Ms. Schultheis requested the time to complete a review of the audit, she also stated that an initial review revealed that a bulk of the difference came from Local 355's insistence that the Baltimore Sun pay premiums on overtime hours, which was in conflict with the CBA.

16. Exhibit I is a true and correct copy of the follow-up letter Ms. Schultheis of the Baltimore Sun sent to Ms. Kratz of BAC on August 31, 2009 following her review of the results of the audit for the 2006 to 2007 contribution periods. It affirms that a bulk of the discrepancy resulted from "the auditor's incorrect assumption that contributions are due and owing on overtime hours." This letter did acknowledge an under-contribution to the Welfare Fund in the amount of $1,412.86 and an over-contribution to the Pension Fund in the amount of $4.62 for the 2006-2007 audit period. The Baltimore Sun has not received a response from the BAC, the auditors, or Local 355 providing support for contributions based on overtime hours.

17. In 2010, the auditors for the Local 355 Funds asked to review the Baltimore Sun's payroll records in relation to an audit of the 2008 and 2009 periods. The Baltimore Sun agreed to the review but never received a copy of the audit or a letter revealing its results.

18. The CBA was renegotiated in 2011 for the period from January 1, 2011 to December 31, 2013. Aside from various contribution rate adjustments, no language related to the hours upon which contributions to the Pension Fund or the Welfare Fund were based was modified, nor was the issue discussed during negotiations.

19. Exhibit J is a true and correct copy of the email Ms. Schultheis of the Baltimore Sun received from Travis T. Klein of the Local 355 Funds' auditor, Handwerger, Cardegna, Funkhouser & Lurman, P.A. on June 6, 2012. Attached to the email is the result of

the audit performed for the contribution periods of 2010 through 2011, asserting that the Baltimore Sun owes the Local 355 Funds additional money relating to overtime hours. The cover email acknowledges that the Baltimore Sun and the auditors interpret the CBA differently on the issue, but that the auditors assessed the issue utilizing Local 355's interpretation of the CBA.

20. Exhibit K is a true and correct copy of the letter the Baltimore Sun sent to the auditor, Mr. Klein, on June 11, 2012 in response to his email to Ms. Schultheis, above. In this letter the Baltimore Sun denied that it owes the Local 355 Funds any money related to overtime hours. The letter also stated that there is no question of interpretation over the meaning of "straight-time" hours because the language of the CBA is clear and unequivocal. The Baltimore Sun never received a response to this letter.

[Remainder of Page Intentionally Left Blank]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 26 day of June 2013.

_____
By: Ann Barnes