**<u>EXHIBIT C</u>**

**SUMMARY
AND RELEVANT PORTIONS OF THE
COLLECTIVE BARGAINING AGREEMENT**

## BALTIMORE SUN – TEAMSTERS LOCAL 355 DRIVER CONTRACTS
## PENSION/HEALTH & WELFARE CBA LANGUAGE HISTORY

| | CONTRACT TERM | AGREEMENT SIGNED | PENSION and/or HEALTH & WELFARE PROVISIONS |
|---|---|---|---|
| 1 | 6/30/51 – 6/30/53 | 11/07/51 | No provision in cba |
| 2 | 6/30/52 – 6/30/53 | 9/01/53 | No provision in cba |
| 3 | 6/30/52 – 6/30/54 | 6/10/53 | No provision in cba |
| 4 | 6/30/54 – 6/30/56 | 9/07/54 | No provision in cba |
| 5 | 6/30/56 – 6/30/58 | 1/07/57 | No provision in cba |
| 6 | 6/30/58 – 6/30/60 | 4/01/59 | No provision in cba |
| 7 | 6/30/60 – 6/30/62 | 6/19/61 | No provision in cba |
| 8 | 6/30/62 – 6/30/65 | 10/31/62 | Section 9(a) – effective as of July 1, 1962, health & welfare fund contributions "…for each straight time hour or fraction thereof paid to each employee…up to but not in excess of fifty (50) straight time hours for each work week of each such employee…" Section 9(b) – effective as of July 1, 1963, pension fund contributions "…for each straight time hour paid to each employee…up to but not in excess of forty (40) straight time hours for each work week of each such employee…" |
| 9 | 6/30/65 – 6/30/67 | 10/26/65 | Same language as quoted from 1962 – 1965 cba |
| 10 | 6/30/67 – 6/30/70 | 7/24/67 | Same language as quoted from 1962 – 1965 cba |
| 11 | 6/30/70 – 6/30/73 | 11/16/70 | Same language as quoted from 1962 – 1965 cba |
| 12 | 7/01/73 – 12/31/74 | 1/11/74 | Same language as quoted from 1962 – 1965 cba |
| 13 | 7/01/75 – 12/31/77 | 8/11/75 | Same language as quoted from 1962 – 1965 cba |
| 14 | 1/01/78 – 12/31/80 | 3/17/78 | Same language as quoted from 1962 – 1965 cba |
| 15 | 1/01/81 – 12/31/83 | 5/29/81 | Same language as quoted from 1962 – 1965 cba |
| 16 | 1/01/84 – 12/31/86 | 4/24/84 | Same language as quoted from 1962 – 1965 cba |
| 17 | 1/01/87 – 12/31/89 | 7/07/87 | Same language as quoted from 1962 – 1965 cba |
| 18 | 10/15/89 – 12/31/93 | 10/30/89 | Same language as quoted from 1962 – 1965 cba |
| 19 | 1/01/94 – 12/31/96 | 12/31/93 | Same language as quoted from 1962 – 1965 cba |
| 20 | 12/31/95 – 12/31/97 | 12/31/95 (mid-term written extension of 94-96 contract to 12/31/97) | (no change to pension or H&W language made in the brief extension agreement document) |
| 21 | 1/01/98 – 12/31/03 | 5/14/98 | Same language as quoted from 1962 – 1965 cba |
| 22 | 4/18/03 – 12/31/07 | 5/22/03 (early negotiation of successor agreement) | Same language as quoted from 1962 – 1965 cba |
| 23 | 1/01/08 – 12/31/10 | 5/22/08 | Same language as quoted from 1962 – 1965 cba |
| 24 | 1/01/11 – 12/31/13 | 7/15/11 | Same language as quoted from 1962 – 1965 cba |

6/30/62-
6/30/65

<u>AGREEMENT</u>

THIS AGREEMENT, made and entered into by and between THE A. S. ABELL COMPANY and BALTIMORE NEWS-AMERICAN DIVISION OF HEARST CONSOLIDATED PUBLICATIONS, INC. (Jointly), hereinafter known as the "COMPANIES", and TRUCK DRIVERS AND HELPERS LOCAL UNION NO. 355, Baltimore, Maryland, affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, hereinafter known as the "UNION" witnesseth:

THAT for the purpose of mutual understanding and in order that a harmonious relationship may exist between the Companies and the Union to the end that continuous and efficient service will be rendered to and by both parties for their mutual benefit, it is hereby agreed that:

1.  It shall be a condition of employment that all employees of the Employers covered by this Agreement who are members of the Union in good standing on the executed date of this Agreement, shall remain members in good standing, and those who are not members on the executed date of this Agreement shall, on or after the thirtieth day following the executed date of this Agreement, become and remain members in good standing in the Union.   It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its executed date shall, on or after the thirtieth day following the beginning of such employment, become and remain members in good standing in the Union.

The appropriate bargaining unit represented by the Union shall be comprised of Chauffeurs, Helpers, Dispatchers, Platform and Garage Employees, (Car Washers, Greasers and Gasoline Attendants).

2.  Thirty-seven and one-half hours shall constitute a full workweek.   For regular employees, all hours worked in excess of thirty-seven and one-half hours in any one fiscal workweek shall be considered overtime and shall be paid for at the rate of one and one-half times the normal straight time rate of pay.

Overtime rates for regular and/or extra employees shall apply for work in excess of 8 hours (excluding lunch), and $9\frac{1}{2}$ hours (excluding lunch) on one shift each week affected by delivery of Sunday newspapers.  [Effective January 1, 1963 overtime [       ] rates for regular and/or extra employees shall apply for work in excess of $7\frac{1}{2}$ hours (excluding lunch) and $9\frac{1}{2}$ hours (excluding lunch) on one shift each week affected by delivery of Sunday newspapers.]  It is understood that shift overtime pay provided for herein shall not be duplicated by overtime pay for work in excess of $37\frac{1}{2}$ hours per week.

1.



Extra or tranient employees shall not accumulate continuous  service credits for vacations until such time as they become regular employees.

The Company shall establish the regular vacation period, but employees shall be permitted to select their vacation week or weeks in order of their seniority during the period as established by the Companies.   The vacation schedule shall be posted thirty days prior to the vacation period.

[ An employee who has continuously held a regular full-time position with the same Company for twenty years prior to June 1, 1963 shall earn a fourth week of vacation during the twelve months preceding June 1, 1964.   An employee entitled to a fourth week of vacation shall receive such vacation in the vacation period beginning June 1, 1964.]

It shall be optional with the Company as to whether the third or fourth week of vacation shall be given at the  same time  as the other two weeks or at another time to be designated by the Company.

9. [ (a)    The Companies agree that effective as of July 1, 1962 they will respectively contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore Area, as the Companies, and Truck Drivers and Helpers Local Union No. 355, as Union, and James O. Scrimger and Harold J. Miller, as Trustees, the sum of eight cents (8¢) for each straight time hour or fraction thereof paid to each employee of the companies who are in the bargaining unit represented by Local Union No. 355, and such employees of the companies not within said bargaining unit, who may by the mutual consent of the company, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight time hours for  each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(b)    The companies agree that effective as of July 1, 1963 they will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore Area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referre d to as "Union" the sum of eleven and one-quarter cents (11.25c) for each straight time hour paid to each employee in the bargaining unit covered by this



6.

Agreement or by subsequent collective bargaining agreements among the parties hereto up to but not in excess of forty (40) straight time hours for each work week of each such employee.    The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(c)    The contributions as provided in Section 9(a) and 9(b) hereof shall be subject  to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the companies, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(d)    The  companies shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the  Board of Trustees as provided by the provisions of said Agreements respectively.]    [NEW]

10.    All employees shall exercise reasonable care in the protection of  the Companies' property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

11.    The Companies reserve the right to establish such rules as they may deem necessary for the proper function of their business, and all employees affected by this Agreement shall adhere to such rules when properly posted, provided, however, that such established rules shall not conflict with any of the provisions of this agreement.

12.    The representative of the Union shall be permitted to enter the Companies' garage or go on the Companies' premises for the purpose of conducting the affairs of the Union during regular business hours.

13.    The Union shall appoint one of [the employees in the bargaining unit] for each shift, to act as Garage Steward, whose duty it shall be to see that the conditions of this contract are  not broken by either the Companies or the Union or their Agents, and in case of slack season he shall be the last employee to be laid off, and under no circumstances shall he be discriminated against.

14.    No [employee of the company in the bargaining unit] shall be required to place himself in jeopardy when making every effort to make pick-ups or deliveries at points where a labor controversy may exist.

15.    In the event the Companies decide to reduce the number of delivery trucks, the consequent laying off of any employee because thereof, shall be in accordance with

21.  Should any article, section, paragraph or provision of this Agreement be declared legally invalid by any court or governmental agency of competent jurisdiction, such decision shall not invalidate any other article, section, paragraph or provision of this Agreement.

In the event any article, section, paragraph or provision of this Agreement is declared legally invalid, then such invalidated item shall immediately become subject to renegotiation upon notice from either party to this Agreement to the other party.

22.  This Agreement is effective as of the beginning of the night shift, June 30, 1962, and shall remain in full force and effect until the ending of the day shift, June 30, 1965.  Should either party hereto desire changes to any of the provisions herein after June 30, 1965, then said party shall notify the other of the desire for such changes at least sixty days prior to June 30, 1965.  Failing such notice, this Agreement  shall automatically renew itself and continue in full force and effect until the ending of the day shift, June 30, 1966, and yearly there-after until either party shall notify the other party of the desire for changes not later than May 1 of any yearly period.

Such notice shall be deemed to have been given when properly addressed to the Companies or the Union and deposited in the registered mails in the Post Office in Baltimore, Maryland.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals this _____31st_____ day of October, 1962.


WITNESS:                                          FOR THE COMPANIES:

                                                  BALTIMORE NEWS-AMERICAN DIVISION OF
                                                  HEARST CONSOLIDATED PUBLICATIONS, INC.

S/   John J. Banach                               S/     J. S. Becker


                                                  THE A. S. ABELL COMPANY

S/   John W. Kotun                                S/     Donald H. Patterson

WITNESS:                                          FOR THE UNION:

                                                  TRUCK DRIVERS AND HELPERS LOCAL UNION
                                                  NO. 355
S/   Harold J. Miller                             S/     Harry Cohen
                                                                     President


11.

*Chauffeurs.*

Rec'd 10/19/65 From J.J.Becker.
Contract Not Signed At That Date.
Signed ---/.../65

## AGREEMENT

THIS AGREEMENT, made and entered into by and between THE A. S. ABELL COMPANY and THE BALTIMORE NEWS AMERICAN DIVISION, THE HEARST CORPORATION (Jointly), hereinafter known as the "COMPANIES", and TRUCK DRIVERS AND HELPERS LOCAL UNION NO. 355, Baltimore, Maryland, affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, hereinafter known as the "UNION", witnesseth:

THAT for the purpose of mutual understanding and in order that a harmonious relationship may exist between the Companies and the Union to the end that continuous and efficient service will be rendered to and by both parties for their mutual benefit, it is hereby agreed that:

1. (a)  It shall be a condition of employment that all employees of the Companies covered by this Agreement who are members of the Union in good standing on the executed date of this Agreement, shall remain members in good standing, and those who are not members on the executed date of this Agreement shall, on the thirty-first (31st) day following the executed date of this Agreement, become and remain members in good standing in the Union.  It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its executed date shall, on the thirty-first (31st) day following the beginning of such employment, become and remain members in good standing in the Union.

   (b)  The appropriate bargaining unit represented by the Union shall be comprised of Chauffeurs, Helpers, Dispatchers, Platform and Garage Employees (Car Washers, Greasers and Gasoline Attendants).

2. (a)  Thirty-seven and one-half ($37\frac{1}{2}$) hours shall constitute a full workweek.  For regular employees, all hours worked in excess of thirty-seven and one-half hours in any one fiscal workweek shall be considered overtime and shall be paid for at the rate of one and one-half times the normal straight time rate of pay.

   (b)  Overtime rates for regular and/or extra employees shall

1.

paid to his beneficiary, if designated on Company records, or to his
estate.]                                                        [ NEW ]

9.  (a)  The Companies agree that effective as of July 1, 1962
they will respectively contribute monthly to the Health and Welfare
Fund established by the Agreement and Declaration of Trust dated
May 14, 1953 between the Voluntary Association of Contract Carriers
in the Baltimore Area, as the Companies, and Truck Drivers and
Helpers Local Union No. 355, as Union, and James O. Scrimger and
Harold J. Miller, as Trustees, the sum of eight cents (8¢) for each
straight time hour or fraction thereof paid to each employee of the
Companies who are in the bargaining unit represented by Local Union
No. 355, and such employees of the Companies not within said bar-
gaining unit, who may by the mutual consent of the Company, and
the Union, be included in the benefits of such fund up to but not
in excess of fifty (50) straight time hours for each work week of
each such employee.  The purpose of such contributions is to pro-
vide benefits as provided under said Agreement and Declaration of
Trust.

(b)  The Companies agree that effective as of July 1, 1963
they will contribute monthly to the Pension Fund established under
the Agreement and Declaration of Trust dated April 2, 1959 between
the Voluntary Association of Contract Carriers in the Baltimore
Area, therein referred to as "Association" and Truck Drivers and
Helpers Local Union No. 355 of Baltimore, Maryland, therein re-
ferred to as "Union" the sum of eleven and one-quarter cents
(11.25¢) for each straight time hour paid to each employee in the
bargaining unit covered by this Agreement or by subsequent collec-
tive bargaining agreements among the parties hereto up to but not
in excess of forty (40) straight time hours for each work week of
each such employee.  The purpose of such contributions is to pro-
vide benefits as provided under said Agreement and Declaration of
Trust.

(c)  The contributions as provided in Section 9 (a) and
9 (b) hereof shall be subject to their deductibility under the
Internal Revenue Code (and the Rules and Regulations issued pursuant

8.

thereto) by the Companies, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(d)   The Companies shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

10.   All employees shall exercise reasonable care in the protection of the Companies' property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

11.   The Companies reserve the right to establish such rules as they may deem necessary for the proper function of their business, and all employees affected by this Agreement shall adhere to such rules when properly posted, provided, however, that such established rules shall not conflict with any of the provisions of this Agreement.

12.   The representative of the Union shall be permitted to enter the Companies' garage or go on the Companies' premises for the purpose of conducting the affairs of the Union during regular business hours.

13.   The Union shall appoint one of the employees in the bargaining unit for each shift, to act as Garage Steward, whose duty it shall be to see that the conditions of this contract are not broken by either the Companies or the Union or their Agents, and in case of slack season he shall be the last employee to be laid off, and under no circumstances shall he be discriminated against.

14.   No employee of the Company in the bargaining unit shall be required to place himself in jeopardy when making every effort to make pick-ups or deliveries at points where a labor controversy may exist.

15.   In the event the Companies decide to reduce the number of delivery trucks, the consequent laying off of any employee because

9.

to hear the matter in question and shall continue such hearings from day to day until presentation of the matter in question shall have been completed. The Board of Arbitration shall render its decision in writing and such decision shall be final and binding upon the parties hereto.

(f) Whatever expenses may be involved in carrying out the aforementioned arbitration procedure, they shall be borne half by the Company or Companies involved and half by the Union.

21. In the event that the parties hereto have been unable to consummate a renewal to this Agreement prior to July 1, 1967, then in that event the parties shall continue to make every effort to reach an Agreement, and to this end the Union agrees that there will be no cessation of the normal course of the Companies' business until such time as an International Representative has met with the negotiating committees, and in the event of failure to consummate a renewal agreement, and then not until the International Representative has rendered his report to the General President of the International Brotherhood and the Chairman of the Eastern Conference of Teamsters.

22. (a) Should any article, section, paragraph or provision of this Agreement be declared legally invalid by any court or governmental agency of competent jurisdiction, such decision shall not invalidate any other article, section, paragraph or provision of this Agreement.

(b) In the event any article, section, paragraph or provision of this Agreement is declared legally invalid, then such invalidated item shall immediately become subject to renegotiation upon notice from either party to this Agreement to the other party.

23. (a) This Agreement is effective as of the beginning of the night shift, June 30, 1965, and shall remain in full force and effect until the ending of the day shift, June 30, 1967. Should either party hereto desire changes to any of the provisions herein after June 30, 1967, then said party shall notify the other of the desire for such changes at least sixty days prior to June 30, 1967. Failing such notice, this Agreement shall automati-

13.

cally renew itself and continue in full force and effect until the ending of the day shift, June 30, 1968, and yearly thereafter until either party shall notify the other party of the desire for changes not later than May 1 of any yearly period.

(b) Such notice shall be deemed to have been given when properly addressed to the Companies or the Union and deposited in the registered mails in the Post Office in Baltimore, Maryland.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals this _26 th_ day of _OCTOBER,_ 1965.

WITNESS:                              FOR THE COMPANIES:

THE BALTIMORE NEWS AMERICAN DIVISION, THE HEARST CORPORATION

___John J. Banach___                  ___W. H. Mills___

THE A. S. ABELL COMPANY

___John W. Kotun___                   ___J. S. Becker___

WITNESS:                              FOR THE UNION:

TRUCK DRIVERS & HELPERS LOCAL UNION NO. 355

___Norman Phillips___                 ___Harry Cohen - President___

14.

6/30/1967 —
6/30/1970

## AGREEMENT

THIS AGREEMENT, made and entered into by and between THE A. S. ABELL COMPANY
AND THE BALTIMORE NEWS AMERICAN DIVISION, THE HEARST CORPORATION (Jointly), herein-
after known as the "COMPANIES", and TRUCK DRIVERS AND HELPERS LOCAL UNION NO. 355,
Baltimore, Maryland, affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, hereinafter known as the "UNION",
witnesseth:

THAT for the purpose of mutual understanding and in order that a harmonious
relationship may exist between the Companies and the Union to the end that con-
tinuous and efficient service will be rendered to and by both parties for their
mutual benefit, it is hereby agreed that:

1.   (a)   It shall be a condition of employment that all employees of the
Companies covered by this Agreement who are members of the Union in good standing
on the executed date of this Agreement, shall remain members in good standing,
and those who are not members on the executed date of this Agreement shall, on
the thirty-first (31st) day following the executed date of this Agreement, become
and remain members in good standing in the Union.  It shall also be a condition
of employment that all employees covered by this Agreement and hired on or after
its executed date shall, on the thirty-first (31st) day following the beginning
of such employment, become and remain members in good standing in the Union.

(b)   The appropriate bargaining unit represented by the Union shall
be comprised of Chauffeurs, Helpers, Dispatchers, Platform and Garage Employees
(Car Washers, Greasers and Gasoline Attendants).

2.   (a)   Thirty-seven and one-half (37½) hours shall constitute a full work-
week.  For regular employees, all hours worked in excess of thirty-seven and one-
half hours in any one fiscal workweek shall be considered overtime and shall be paid
for at the rate of one and one-half times the normal straight time rate of pay.

(b)   Overtime rates for regular and/or extra employees shall apply for
work in excess of 7½ hours (excluding lunch) and 9 (effective July 1, 1969, 8½)
hours (excluding lunch) on one shift each week affected by delivery of Sunday news-
papers.  It is understood that shift overtime pay provided for herein shall not be
duplicated by overtime pay for work in excess of 37½ hours per week, except that
extra and/or transient employees shall continue to work 9½ hours at straight time
on one shift each week affected by delivery of Sunday newspapers.

1.



continuous availability he shall become a regular employee and his seniority shall begin on the anniversary date of his initial employment as a regular shaper.

(f)  The regular vacation period shall be from January 1 to December 31 and employees shall be permitted to select their vacation week or weeks in order of their seniority during such established period.  Not later than the preceding December 1, the office shall post the number of employees permitted vacations during each week of the vacation period.  After December 20, employees who have not made their vacation selection shall be assigned their vacation weeks by the office.

(g)  When an employee resigns, retires or is laid off to reduce the force he shall be paid earned vacation credits.  In the event of death of an employee, earned vacation credits shall be paid to his beneficiary, if designated on Company records, or to his estate.

9.  (a)  The Companies agree that effective as of July 1, 1962 they will respectively contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore Area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the sum of eight (8¢) cents (effective July 1, 1968, thirteen (13¢) cents; and effective July 1, 1969, seventeen (17¢) cents) for each straight time hour or fraction thereof paid to each employee of the Companies who are in the bargaining unit represented by Local Union No. 355, and such employees of the Companies not within said bargaining unit, who may by mutual consent of the Company, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight time hours for each work week of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(b)  The Companies agree that effective as of July 1, 1963 they will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore Area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of eleven and one-quarter (11.25¢) cents (effective July 1, 1969, twenty (20¢) cents) for each straight time hour paid to each employee in the bargaining unit covered by this Agreement or by subsequent collective bargaining agreements among the parties hereto up to but not in excess of forty (40) straight time hours

7.



for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(c)  The contributions as provided in Section 9 (a) and 9 (b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Companies, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(d)  The Companies shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

10.  All employees shall exercise reasonable care in the protection of the Companies' property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

11.  The Companies reserve the right to establish such rules as they may deem necessary for the proper function of their business, and all employees affected by this Agreement shall adhere to such rules when properly posted, provided,however, that such established rules shall not conflict with any of the provisions of this Agreement.

12.  The representatives of the Union shall be permitted to enter the Companies' garage or go on the Companies' premises for the purpose of conducting the affairs of the Union during regular business hours.

13.  The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by either the Companies or the Union or the Agents of either, and in case of slack season he shall be the last employee to be laid off and under no circumstances shall he be discriminated against.

The authority of the Shop Steward so designated by the Union shall be limited to and shall not exceed, the following duties and activities:

(1)  the investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement:

(2)  the collection of dues when authorized by appropriate Local Union action;

(3)  the transmission of such messages and information which shall originate

8.

not less than ten days prior to the expiration of each period of one year or of each collective bargaining agreement between my employer and the Union whichever occurs sooner.

(Signature)_____

(Address) _____

Date_____-9__    (Soc. Sec. No.)_____

All deductions shall be forwarded to the Union, at its established address as promptly as possible each month, in care of the Secretary-Treasurer.

23.   (a)  Should any article, section, paragraph or provision of this Agreement be declared legally invalid by any court or governmental agency of competent jurisdiction, such decision shall not invalidate any other article, section, paragraph or provision of this Agreement.

(b)  In the event any article, section, paragraph or provision of this Agreement is declared legally invalid, then such invalidated item shall immediately become subject to renegotiation upon notice from either party to this Agreement to the other party.

24.  (a)  This Agreement is effective as of the beginning of the night shift, June 30, 1967, and shall remain in full force and effect until the ending of the day shift, June 30, 1970.   Should either party hereto desire changes to any of the provisions herein after June 30, 1970, then said party shall notify the other of the desire for such changes at least sixty days prior to June 30, 1970.   Failing such notice, this Agreement shall automatically renew itself and continue in full force and effect until the ending of the day shift, June 30, 1971, and yearly thereafter until either party shall notify the other party of the desire for changes not later than May 1 of any yearly period.

(b)  Such notice shall be deemed to have been given when properly addressed to the Companies or the Union and deposited in the registered mails

13.

in the Post Office in Baltimore, Maryland.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals

this _____ day of _____, 1967.

WITNESS:                                FOR THE COMPANIES:

                                        THE BALTIMORE NEWS AMERICAN DIVISION,
                                        THE HEARST CORPORATION

_____       _____
          John J. Banach                          W. Melvin Street

                                        THE A. S. ABELL COMPANY

_____       _____
          John W. Kotun                           J. Stephen Becker

WITNESS:                                FOR THE UNION:

                                        TRUCK DRIVERS & HELPERS LOCAL UNION
                                        NO. 355

_____       _____
          Norman Phillips                      John Sullivan - President

14.

6/30/70—
6/30/73

## AGREEMENT

THIS AGREEMENT, made and entered into by and between THE A. S. ABELL COMPANY AND THE BALTIMORE NEWS AMERICAN DIVISION, THE HEARST CORPORATION (Jointly), hereinafter known as the "COMPANIES", and TRUCK DRIVERS AND HELPERS LOCAL UNION NO. 355, Baltimore, Maryland, affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, hereinafter known as the "UNION", witnesseth:

THAT for the purpose of mutual understanding and in order that a harmonious relationship may exist between the Companies and the Union to the end that continuous and efficient service will be rendered to and by both parties for their mutual benefit, it is hereby agreed that:

1.  (a)  It shall be a condition of employment that all employees of the Companies covered by this Agreement who are members of the Union in good standing on the executed date of this Agreement, shall remain members in good standing, and those who are not members on the executed date of this Agreement shall, on the thirty-first (31st) day following the executed date of this Agreement, become and remain members in good standing in the Union.  It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its executed date shall, on the thirty-first (31st) day following the beginning of such employment, become and remain members in good standing in the Union.

(b)  The appropriate bargaining unit represented by the Union shall be comprised of Chauffeurs, Helpers, Dispatchers, Platform and Garage Employees (Car Washers, Greasers and Gasoline Attendants).

2.  (a)  Thirty-seven and one-half (37½) hours shall constitute a full workweek.  For regular employees, all hours worked in excess of thirty-seven and one-half hours in any one fiscal workweek shall be considered overtime and shall be paid for at the rate of one and one-half times the normal straight time rate of pay.

-1-

9.   (a)   The Companies agree that effective as of July 1, 1962 they will respectively contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore Area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the sum of seventeen (17¢) cents (effective October 2, 1970, the date of ratification of this agreement, twenty (20¢) cents and effective July 1, 1972, twenty-five (25¢) cents for each straight time hour or fraction thereof paid to each employee of the Companies who are in the bargaining unit represented by Local Union No. 355, and such employees of the Companies not within said bargaining unit, who may by mutual consent of the Company, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight time hours for each workweek of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(b)   The Companies agree that effective as of July 1, 1963 they will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore Area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of twenty (20¢) cents (effective December 31, 1970, twenty-five (25¢) cents) for each straight time hour paid to each employee in the bargaining unit covered by this Agreement or by subsequent collective bargaining agreements among the parties hereto up to but not in excess of forty (40) straight time hours for each workweek of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(c)   The contributions as provided in Section 9 (a) and 9 (b) hereof shall be subject to their deductibility under the Internal

-10-

Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Companies, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(d)    The Companies shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

(e)    Three months (or earlier) prior to an interim negotiated wage increase provided in Section 4 herein, the Union may by written notice to the Companies, divert any portion of such increase to the Health and Welfare Fund and/or Pension Fund as provided in Section 9 hereof.

10.    All employees shall exercise reasonable care in the protection of the Companies' property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

11.    The Companies reserve the right to establish such rules as they may deem necessary for the proper function of their business, and all employees affected by this Agreement shall adhere to such rules when properly posted, provided, however, that such established rules shall not conflict with any of the provisions of this Agreement.

12.    The representatives of the Union shall be permitted to enter the Companies' garage or go on the Companies' premises for the purpose of conducting the affairs of the Union during regular business hours.

13.    The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by either the Companies or the Union or the Agents of either, and in

-11-

the ensuing month in advance.

This authorization shall be irrevocable for a period of one year or until the termination date of the collective bargaining agreement between my employer and this Union, whichever occurs sooner, and I agree and direct that this authorization shall be automatically renewed and shall be irrevocable for successive periods of one year or for the period of each succeeding collective bargaining agreement between my employer and this Union, whichever shall be sooner, unless written notice is given by me to the employer and the Union not more than twenty days and not less than ten days prior to the expiration of each period of one year or of each collective bargaining agreement between my employer and the Union whichever occurs sooner.

(Signature)_____

(Address)  _____

Date_____ 19__  (Soc. Sec. No._____

All deductions shall be forwarded to the Union, at its established address as promptly as possible each month, in care of the Secretary-Treasurer.

23.  (a)  Should any article, section, paragraph or provision of this Agreement be declared legally invalid by any court or governmental agency of competent jurisdiction, such decision shall not invalidate any other article, section, paragraph or provision of this Agreement.

(b)  In the event any article, section, paragraph or provision of this Agreement is declared legally invalid, then such invalidated item shall immediately become subject to renegotiation upon notice from either party to this Agreement to the other party.

24.  (a)  This Agreement is effective as of the beginning of the night shift, June 30, 1970, and shall remain in full force and

-18-

effect until the ending of the day shift, June 30, 1973.  Should either
party hereto desire changes to any of the provisions herein after
June 30, 1973, then said party shall notify the other of the desire
for such changes at least sixty days prior to June 30, 1973.  Failing
such notice, this Agreement shall automatically renew itself and
continue in full force and effect until the ending of the day shift,
June 30, 1974, and yearly thereafter until either party shall notify
the other party of the desire for changes not later than May 1 of any
yearly period.

      (b)  Such notice shall be deemed to have been given when
properly addressed to the Companies or the Union and deposited in the
registered mails in the Post Office in Baltimore, Maryland.

    IN WITNESS WHEREOF, the parties hereto have set their hands
and seals this __16th__ day of <u>NOVEMBER</u>, 1970.

<u>WITNESS:</u>

<u>FOR THE COMPANIES:</u>

BALTIMORE NEWS AMERICAN DIVISION,
THE HEARST CORPORATION

/s/ Richard L. Friedman

/s/ W. M. Street

THE A. S. ABELL COMPANY

/s/ John J. Banach

/s/ J. Stephen Becker

<u>WITNESS:</u>

<u>FOR THE UNION:</u>

TRUCK DRIVERS & HELPERS LOCAL UNION
NO. 355

/s/ Robert Robinson

/s/ John Sullivan
                 President

-19-

## A G R E E M E N T

July 1, 1973, to and including December 31, 1974

THIS AGREEMENT, made and entered into by and between
THE A. S. ABELL COMPANY, hereinafter known as the "PUBLISHER",
through its agent, THE BALTIMORE DAILY NEWSPAPER PUBLISHERS
ASSOCIATION, and TRUCK DRIVERS, HELPERS, TAXICAB DRIVERS AND
GARAGE EMPLOYEES AND AIRPORT EMPLOYEES LOCAL UNION NO. 355,
Baltimore, Maryland, affiliated with the INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS
OF AMERICA, hereinafter known as the "UNION", witnesseth:

THAT for the purpose of mutual understanding and in
order that a harmonious relationship may exist between the
Publisher and the Union to the end that continuous and
efficient service will be rendered to and by both parties
for their mutual benefit, it is hereby agreed that:

1.    (a)  It shall be a condition of employment that all employees of the
Publisher covered by this Agreement who are members of the Union in good standing
on the executed date of this Agreement, shall remain members in good standing,
and those who are not members on the executed date of this Agreement shall, on
the thirty-first (31st) day following the executed date of this Agreement, become
and remain members in good standing in the Union.   It shall also be a condition
of employment that all employees covered by this Agreement and hired on or after
its executed date shall, on the thirty-first (31st) day following the beginning
of such employment, become and remain members in good standing in the Union.

(b)  The appropriate bargaining unit represented by the Union shall be
comprised of Chauffeurs, Helpers, Dispatchers, Platform and Garage Employees
(Car Washers, Greasers and Gasoline Attendants).

2.    (a)  Thirty-seven and one-half (37½) hours shall constitute a full
workweek.  For regular employees, all hours worked in excess of thirty-seven and
one-half hours in any one fiscal workweek shall be considered overtime and shall
be paid for at the rate of one and one-half times the normal straight time rate
of pay.

-1-

(f)  Whenever employees are unable to observe their scheduled lunch period during their daily working hours, they shall be paid time and one-half (1-1/2) times their regular rate for lunch period cancelled by the Publisher. This shall be in addition to their guaranteed 37½ hours weekly.   This shall not apply to non-scheduled lunch periods counted as time worked in 37½ hour workweek.

(g)  Dispatchers, truck drivers and platform men shall not be required to grease equipment nor shall they do any cleaning in or around the garage.

(h)  In the allocation of all earning opportunities, promotion (if qualified after 30 days trial period), lay-off and re-employment, the ordinary rules of seniority as to length of service with the Publisher shall prevail.

(i)  All employees in the bargaining unit represented by the Union shall be permitted to select between day and night work in accordance with seniority as of November 1, and each November 1 thereafter, or when a full-time permanent position becomes available or for vacation relief.

8.  (a)  All employees who have been in continuous service of the Publisher for a period of ten years prior to June 1, 1973, or ten years prior to June 1 of any subsequent year, shall receive four (4) full workweeks' vacation with pay during 1973 or in any subsequent year.

(b)  All employees affected by this Agreement who have been in continuous service of the Publisher for three years prior to June 1, 1973, or three years prior to June 1 of any subsequent year, shall receive three (3) full workweeks' vacation with pay during 1973 or in any subsequent year.

(c)  All employees affected by this Agreement who have been in continuous service of the same Company for a period of one year prior to June 1, 1973, or one year prior to June 1 of any subsequent year, shall receive two (2) full work-weeks' vacation with pay during 1973 or in any subsequent year.

(d)  All other employees affected by this Agreement shall receive one day of vacation for each five weeks of continuous employment completed prior to June 1 subsequent to employment.   For such employees each day of vacation shall be seven and one-half (7½) hours.

(e)  Extra or transient employees shall not receive vacation credits.

(f)  The regular vacation period shall be from January 1 to December 31 and employees shall be permitted to select their vacation week or weeks in order of their seniority during such established period.   Not later than the preceding December 1, the office shall post the number of employees permitted vacations during each week of the vacation period.   After December 20, employees who have not made their vacation selection shall be assigned their vacation weeks by the office.

(g)  When an employee resigns, retires or is laid off to reduce the force he shall be paid earned vacation credits.   In the event of death of an employee, earned vacation credits shall be paid to his beneficiary, if designated on Company records, or to his estate.

9.  (a)  The Publisher agrees that effective as of July 1, 1962 he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore Area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the sum of twenty-five (25¢) cents for each straight time hour or fraction thereof paid to each employee of the Publisher who are in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight time hours for each workweek of each such employee.   The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

-5-

(b)  The Publisher agrees that effective as of July 1, 1963 he will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore Area, therein referred to as "Association" and Trust Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of twenty-five (25¢) cents (effective September 29, 1973, thirty-five (35¢) cents) for each straight time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight time hours for each workweek of each such employee.    The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(c)  The contributions as provided in Section 9 (a) and 9 (b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(d)  The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

(e)  Three months (or earlier) prior to an interim negotiated wage increase provided in Section 4 herein, the Union may by written notice to the Publisher, divert any portion of such increase to the Health and Welfare Fund and/or Pension Fund as provided in Section 9 hereof.

10.    All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

11.    The Publisher reserves the right to establish such rules as it may deem necessary for the proper function of its business, and all employees affected by this Agreement shall adhere to such rules when properly posted, provided, however, that such established rules shall not conflict with any of the provisions of this Agreement.

12.    The representatives of the Union shall be permitted to enter the Publisher's garage or go on the Publisher's premises for the purpose of conducting the affairs of the Union during regular business hours.

13.    The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by either the Publisher or the Union or the Agents of either, and in case of slack season he shall be the last employee to be laid off and under no circumstances shall he be discriminated against.

The authority of the Shop Steward so designated by the Union shall be limited to and shall not exceed, the following duties and activities:

(1)  the investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

(2)  the collection of dues when authorized by appropriate Local Union action;

(3)  the transmission of such messages and information which shall originate with and are authorized by the Local Union or its Officers, provided such messages and information:

(a)  have been reduced to writing, or

Page 23

-6-

# A G R E E M E N T

January 1, 1975, to and including December 31, 1977

THIS AGREEMENT, made and entered into by and between

THE A. S. ABELL COMPANY, hereinafter known as the "PUBLISHER",

through its agent, THE BALTIMORE DAILY NEWSPAPER PUBLISHERS

ASSOCIATION, and TRUCK DRIVERS, HELPERS, TAXICAB DRIVERS AND

GARAGE EMPLOYEES AND AIRPORT EMPLOYEES LOCAL UNION NO. 355,

Baltimore, Maryland, affiliated with the INTERNATIONAL

BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS

OF AMERICA, hereinafter known as the "UNION", witnesseth:

THAT for the purpose of mutual understanding and in

order that a harmonious relationship may exist between the

Publisher and the Union to the end that continuous and

efficient service will be rendered to and by both parties

for their mutual benefit, it is hereby agreed that:

1.    (a)  It shall be a condition of employment that all employees of the Publisher covered by this Agreement who are members of the Union in good standing on the executed date of this Agreement, shall remain members in good standing, and those who are not members on the executed date of this Agreement shall, on the thirty-first (31st) day following the executed date of this Agreement, become and remain members in good standing in the Union.  It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its executed date shall, on the thirty-first (31st) day following the beginning of such employment, become and remain members in good standing in the Union.

(b)  The appropriate bargaining unit represented by the Union shall be comprised of Chauffeurs, Helpers, Dispatchers, Platform and Garage Employees (Car Washers, Greasers and Gasoline Attendants).

2.    (a)  Thirty-seven and one-half (37½) hours shall constitute a full workweek.  For regular employees, all hours worked in excess of thirty-seven and one-half hours in any one fiscal workweek shall be considered overtime and shall be paid for at the rate of one and one-half times the normal straight time rate of pay.

-1-

(d)  All other employees affected by this Agreement shall receive one day of vacation for each five weeks of continuous employment completed prior to June 1 subsequent to employment.  For such employees each day of vacation shall be seven and one-half (7½) hours.

(e)  Extra or transient employees shall not receive vacation credits.

(f)  The regular vacation period shall be from January 1 to December 31 and employees shall be permitted to select their vacation week or weeks in order of their seniority during such established period.  Not later than the preceding December 1, the office shall post the number of employees permitted vacations during each week of the vacation period.  After December 20, employees who have not made their vacation selection shall be assigned their vacation weeks by the office.

(g)  When an employee resigns, retires or is laid off to reduce the force he shall be paid earned vacation credits.  In the event of death of an employee, earned vacation credits shall be paid to his beneficiary, if designated on Company records, or to his estate.

9.  (a)  The Publisher agrees that effective as of July 1, 1962 he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore Area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the sum of twenty-five (25¢) cents (effective 12-1-75, thirty (30¢) cents; effective 12-1-76, thirty-four (34¢) cents; effective 4-1-77, forty-four (44¢) cents; effective 12-1-77, forty-eight (48¢) cents) for each straight time hour or fraction thereof paid to each employee of the Publisher who are in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight time hours for each workweek of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(b)  The Publisher agrees that effective as of July 1, 1963 he will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore Area, therein referred to as "Association" and Trust Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of thirty-five (35¢) cents (effective 1-1-76, forty (40¢) cents; effective 12-1-77, fifty-five (55¢) cents) for each straight time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight time hours for each workweek of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(c)  The contributions as provided in Section 9(a) and 9(b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(d)  The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

(e)  Three months (or earlier) prior to an interim negotiated wage increase provided in Section 4 herein, the Union may by written notice to the Publisher, divert any portion of such increase to the Health and Welfare Fund and/or Pension Fund as provided in Section 9 hereof.

-7-

<u>AGREEMENT</u>

Between

Truck Drivers, Helpers, Taxicab Drivers
and Garage Employees and Airport Employees
Local Union No. 355

<u>Term: January 1, 1978 to December 31, 1980</u>

| <u>Contents</u> | <u>Section</u> | <u>Pages</u> |
|---|---|---|
| Board of Arbitration | 20 | 10-11 |
| Classifications | 7 | 6 |
| Consolidation or Merger | 18 | 9 |
| Deliveries | 5 | 5 |
| Discharges | 6 & Exhibit "A" | 5 & 13 |
| Dues Authorization | 22 | 11 |
| Financial Work Week | 4 | 5 |
| Funeral Leave | 17 | 9 |
| Grievances | 13 & 20 | 8 & 10 |
| Health & Welfare | 9 | 7- 8 |
| Holidays | 3 | 2 |
| Jurisdiction | 1 & MEMO | 1 |
| Lunch Period | 7 | 6 |
| Off Day(s) | 7 | 5 |
| Overtime | 2 | 2 |
| Pension Plan | 9 | 7- 8 |
| Personal Leave | 3 | 2- 3 |
| Probationary Period | 6 | 5 |
| Renewal | 21 | 11 |
| Shifts | 2 & MEMO | 2 |
| Sickness and Non-Occupational Accident Plan | 19 | 9-10 |
| Transient and Extra Employees | 4 | 4 |
| Union Security | 1 | 1 |
| Vacations | 8 & MEMO | 6- 7 |
| Wage Scales | 4 | 3-4-5 |
| Work Day & Week | 2 | 1- 2 |

(c)  All employees affected by this Agreement who have been in con-
tinuous service of the same Company for a period of one year prior to June 1, 1975,
or one year prior to June 1 of any subsequent year, shall receive two (2) full
workweeks' vacation with pay during 1975 or in any subsequent year.

(d)  All other employees affected by this Agreement shall receive one
day of vacation for each five weeks of continuous employment completed prior to
June 1 subsequent to employment.  For such employees each day of vacation shall
be seven and one-half (7½) hours.

(e)  Extra or transient employees shall not receive vacation credits.

(f)  The regular vacation period shall be from January 1 to December 31
and employees shall be permitted to select their vacation week or weeks in order
of their seniority during such established period.  Not later than the preceding
December 1, the office shall post the number of employees permitted vacations
during each week of the vacation period.  After December 20, employees who have
not made their vacation selection shall be assigned their vacation weeks by the
office.

(g)  When an employee resigns, retires or is laid off to reduce the
force he shall be paid earned vacation credits.  In the event of death of an
employee, earned vacation credits shall be paid to his beneficiary, if designated
on Company records, or to his estate.

9.  (a)  The Publisher agrees that effective as of July 1, 1962 he will
contribute monthly to the Health and Welfare Fund established by the Agreement and
Declaration of Trust dated May 14, 1953 between the Voluntary Association of
Contract Carriers in the Baltimore Area, as the Companies and Truck Drivers and
Helpers Local Union No. 355, as Union and its Trustees the sum of forty-eight
(48¢) cents for Health and Welfare coverage provided by Plan 6; effective December
1, 1978, fifty-eight (58¢) cents for Health and Welfare coverage provided by
Plan 7; effective December 1, 1979, sixty-two (62¢) cents; effective January 1,
1980, sixty-seven (67¢) cents; effective July 1, 1980, seventy-seven (77¢) cents
for Health and Welfare coverage provided by Plan 8; effective December 1, 1980,
eighty-one (81¢) cents for each straight-time hour or fraction thereof paid to
each employee of the Publisher who are in the bargaining unit represented by Local
Union No. 355, and such employees of the Publisher not within said bargaining unit,
who may by mutual consent of the Publisher, and the Union, be included in the
benefits of such fund up to but not in excess of fifty (50) straight time hours
for each workweek of each such employee.  The purpose of such contributions is to
provide benefits as provided under said Agreement and Declaration of Trust.

1.  When an employee is out on a long injury or illness which exceeds
the 20 weeks sick and accident benefits, the Fund will carry the employee for the
next 32 weeks at no charge.  The employee can continue coverage for an additional
one year provided the employee pays for the coverage himself as provided by the
Agreement and Declaration of Trust.

(b)  The Publisher agrees that effective as of July 1, 1963, he will con-
tribute monthly to the Pension Fund established under the Agreement and Declaration
of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers
in the Baltimore Area, therein referred to as "Association" and Truck Drivers and
Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union"
the sum of fifty-five (55¢) cents for Retirement benefits provided by Plan H;
effective July 1, 1979, sixty-seven (67¢) cents for Retirement benefits provided
by Plan J; effective December 1, 1979, seventy-two (72¢) cents for each straight
time hour paid to each employee in the bargaining unit covered by this Agreement
up to but not in excess of forty (40) straight time hours for each workweek of
each such employee.  The purpose of such contributions is to provide benefits as
provided under said Agreement and Declaration of Trust.

1.  Employees shall retire from active employment no later than the
first day of the month following the month in which the employee attains age 65.

(c)  The contributions as provided in Section 9(a) and 9(b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(d)  The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

(e)  Three months (or earlier) prior to an interim negotiated wage increase provided in Section 4 herein, the Union may by written notice to the Publisher, divert any portion of such increase to the Health and Welfare Fund and/or Pension Fund as provided in Section 9 hereof.

10.  All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

11.  The Publisher reserves the right to establish such rules as it may deem necessary for the proper function of its business, and all employees affected by this Agreement shall adhere to such rules when properly posted, provided, however, that such established rules shall not conflict with any of the provisions of this Agreement.

12.  The representatives of the Union shall be permitted to enter the Publisher's garage or go on the Publisher's premises for the purpose of conducting the affairs of the Union during regular business hours.

13.  The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by either the Publisher or the Union or the Agents of either, and in case of slack season he shall be the last employee to be laid off and under no circumstances shall he be discriminated against.

The authority of the Shop Steward so designated by the Union shall be limited to and shall not exceed, the following duties and activities:

1.  the investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

2.  the collection of dues when authorized by appropriate Local Union action;

3.  the transmission of such messages and information which shall originate with and are authorized by the Local Union or its Officers, provided such messages and information:

(a)  have been reduced to writing, or

(b)  if not reduced to writing, are of a routine nature and do not involve work stoppage, slow downs, refusal to handle goods, or any other interference with the Publisher's business.

The Shop Steward has no authority to take strike action or any other action interrupting the Publisher's business, except as authorized by official action of the Union.

-8-

<u>AGREEMENT</u>

Between

Truck Drivers, Helpers, Taxicab Drivers
and Garage Employees and Airport Employees
Local Union No. 355

<u>Term:  January 1, 1981 to December 31, 1983</u>

| <u>Contents</u> | <u>Section</u> | <u>Pages</u> |
|---|---|---|
| Board of Arbitration | 20 | 9 |
| Classifications | 7 | 4-5 |
| Consolidation or Merger | 18 | 9 |
| Deliveries | 5 | 3 |
| Discharges | 6 & Exhibit "A" | 3 & 12 |
| Dues Authorization | 22 | 10 |
| Financial Workweek | 4 | 3 |
| Funeral Leave | 17 | 8 |
| Grievances | 13 & 20 | 7 & 9 |
| Health & Welfare | 9 | 6-7 |
| Holidays | 3 | 2 |
| Jurisdiction | 1 & Memo | 1 & 13 |
| Lunch Period | 7 | 4 |
| Off Day(s) | 7 | 4 |
| Overtime | 2 | 1 |
| Pension Plan | 9 | 6 |
| Personal Leave | 3 | 2 |
| Probationary Period | 6 | 3 |
| Renewal | 21 | 10 |
| Shifts | 2 & Memo | 1 & 13 |
| Sickness and Non-Occupational Accident Plan | 19 | 8-9 |
| Transient and Extra Employees | 4 & 6 | 3-4 |
| Union Security | 1 | 1 |
| Vacations | 8 & Memo | 5-6 & 13 |
| Wage Scales | 4 | 3 |
| Workday & Week | 2 | 1 |

8. (f)  The regular vacation period shall be from January 1 to December 31 and employees shall be permitted to select their vacation week or weeks in order of their seniority during such established period.  Not later than the preceding December 1, the office shall post the number of employees permitted vacations during each week of the vacation period.  After December 20, employees who have not made their vacation selection shall be assigned their vacation weeks by the office.

(g)  When an employee resigns, retires or is laid off to reduce the force, he shall be paid earned vacation credits.  In the event of death of an employee, earned vacation credits shall be paid to his beneficiary, if designated on Company records, or to his estate.

9. (a)  The Publisher agrees that effective as of July 1, 1962 he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees the sum of eighty-one (81¢) cents for Health and Welfare coverage provided by Plan 8 with legal for each straight-time hour or fraction thereof paid to each employee of the Publisher who are in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may, by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each workweek of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

1.  When an employee is out on a long injury or illness which exceeds the 20 weeks sick and accident benefits, the Fund will carry the employee for the next 32 weeks at no charge.  The employee can continue coverage for an additional one year provided the employee pays for the coverage himself as provided by the Agreement and Declaration of Trust.

(b)  The Publisher agrees that effective as of July 1, 1963, he will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of seventy-two (72¢) cents for Retirement benefits provided by Plan J; effective January 1, 1981, seventy-eight (78¢) cents for Retirement benefits provided by Plan K; effective January 1, 1982, eighty-four (84¢) cents for Retirement benefits provided by Plan L; effective January 1, 1983, ninety (90¢) cents for Retirement benefits provided by Plan M for each straight-time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight-time hours for each workweek of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

1.  Employees shall retire from active employment no later than the first day of the month following the month in which the employee attains age 70.

(c)  The Publisher agrees that effective as of January 1, 1982 he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore Area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the sum of seven cents (7¢) per hour for retiree's prescription plan; effective January 1, 1983 one cent (1¢) per hour (total contributions eight cents (8¢) per hour) for retiree's prescription plan, for each straight-time hour or fraction thereof paid to each employee of the Publisher who are in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may by mutual consent of the Publisher and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each workweek of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.  Should the cost of this Retiree's Prescription Plan increase beyond eight (8¢) cents per hour up to 50 straight-time hours in one financial week for any reason, such increase shall be diverted from the pay of members of the bargaining unit.

9. (d)  The contributions as provided in Section 9(a) and (b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(e)  The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

(f)  Three months (or earlier) prior to an interim negotiated wage increase provided in Section 4 herein, the Union may by written notice to the Publisher, divert any portion of such increase to the Health and Welfare Fund and/or Pension Fund as provided in Section 9 hereof.

10.  All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

11.  The Publisher reserves the right to establish such rules as it may deem necessary for the proper function of its business, and all employees affected by this Agreement shall adhere to the Office Rules printed in the Driver's Manual dated 7-22-76 (copy attached).  The Publisher shall notify the Union of any change in the Office Rules should such change, modification or addition become necessary during the term of this Agreement.

12.  The representatives of the Union shall be permitted to enter the Publisher's garage or go on the Publisher's premises for the purpose of conducting the affairs of the Union during regular business hours.

13.  The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by either the Publisher or the Union or the Agents of either, and in case of slack season he shall be the last employee to be laid off and under no circumstances shall he be discriminated against.

The authority of the Shop Steward so designated by the Union shall be limited to and shall not exceed, the following duties and activities:

1.  the investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

2.  the collection of dues when authorized by appropriate Local Union action;

3.  the transmission of such messages and information which shall originate with and are authorized by the Local Union or its Officers, provided such messages and information:

(a)  have been reduced to writing, or

(b)  if not reduced to writing, are of a routine nature and do not involve work stoppage, slowdowns , refusal to handle goods, or any other interference with the Publisher's business.

The Shop Steward has no authority to take strike action or any other action interrupting the Publisher's business, except as authorized by official action of the Union.

14.  No employee of the Publisher in the bargaining unit shall be required to place himself in jeopardy when making every effort to make pick-ups or deliveries at points where a labor controversy may exist.

15.  In the event the Publisher decides to reduce the number of delivery trucks the consequent laying off of any employee because thereof, shall be in accordance with principles of seniority, as defined in Section 7 hereof.

-7-

AGREEMENT

BETWEEN

THE. A.S. ABELL PUBLISHING COMPANY

AND

TRUCK DRIVERS, HELPERS,
TAXICAB DRIVERS AND GARAGE EMPLOYEES
AND AIRPORT EMPLOYEES

LOCAL UNION NO. 355

BALTIMORE, MARYLAND

OF

I.B.T.C.W.H.A.

TERM:   January 1, 1984 through December 31, 1986

## VACATION

11(a).   All employees who have been in continuous service of the Publisher for ten (10) years prior to June 1, shall receive four (4) full workweeks' vacation with pay in any subsequent year.

(b).   All employees who have been in continuous service of the Publisher for three (3) years prior to June 1, shall receive three (3) full workweeks' vacation with pay in any subsequent year.

(c).   All employees who have been in continuous service of the Publisher for one (1) year prior to June 1, shall receive two (2) full workweeks' vacation with pay in any subsequent year.

(d).   All other employees shall receive one (1) day of vacation for each five (5) weeks of continuous employment completed prior to June 1 subsequent to employment.  For such employees, each day of vacation shall be seven and one-half (7 1/2) hours.

(e).   Extra or transient employees shall not receive vacation credits. Effective 6/1/82, extra/transient employees shall commence earning vacation credits on the basis of one shift (7 1/2) hours) of paid vacation for each twenty-five (25) fully paid straight-time shifts worked during the period June 1, 1982 through May 31, 1983 and each June 1 through May 31 thereafter.  Paid vacations will begin January 1, 1983.  Extra/transient chauffeur employees will be paid their earned vacation pay the first full week after January 1 and July 1, 1983, and each first full week after January 1 and July 1 thereafter.

(f).   The regular vacation period shall be from January 1 to December 31 and employees shall be permitted to select their vacation week or weeks in order of their seniority during such established period.  Not later than the preceding December 1, the office shall post the number of employees permitted vacations during each week of the vacation period.  After December 20, employees who have not made their vacation selection shall be assigned their vacation weeks by the Office.

(g).   When an employee resigns, retires, or is laid off to reduce the force, he shall be paid earned vacation credits.  In the event of death of an employee, earned vacation credits shall be paid to his beneficiary, if designated on Company records, or to his estate.

12(a).   The Publisher agrees that effective as of July 1, 1962, he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees the sum of ninety-six cents ($.96) for Health and Welfare coverage provided by Plan 9 with legal for each straight-time hour or fraction thereof paid to each employee of the Publisher who are in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may, by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not i excess of fifty (50) straight-time hours for each workweek of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

1.   When an employee is out on a long injury or illness which exceeds the twenty (20) weeks sick and accident benefits, the Fund will carry the employee for the next thirty two (32) weeks at no charge. The employee can continue coverage for an additional one (1) year provided the employee pays for the coverage himself as provided by the Agreement and Declaration of Trust.

(b).   The Publisher agrees that effective as of July 1, 1963, he will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of ninety cents ($.90) for Retirement benefits provided by Plan M; effective July 1, 1984, ninety-seven cents ($.97) per hour for Plan "N"; effective December 29, 1985, one dollar and four cents ($1.04) per hour for Plan "O"; effective December 28, 1986, one dollar and eleven cents ($1.11) per hour for Plan "P" for each straight-time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight-time hours for each workweek of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

1.  Employees shall retire from active employment no later than the first day of the month following the month in which the employee attains age 70.

(c).  The Publisher agrees that effective as of January 1, 1982, he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore Area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the sum of eight ($.08) cents per hour for retiree's prescription plan, for each straight-time hour or fraction thereof paid to each employee of the Publisher who are in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may by mutual consent of the Publisher and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each workweek of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.  Should the cost of this Retiree's Prescription Plan increase beyond eight ($.08) cents per hour up to fifty (50) straight-time hours in one financial week for any reason, such increase shall be diverted from the pay of members of the bargaining unit.

(d).  The contributions as provided in Section 12(a) and (b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(e).  The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

## RULES AND REGULATIONS

13(a).  All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

(b).  The Publisher reserves the right to establish such rules as it may deem necessary for the proper function of its business, and all employees affected by this Agreement shall adhere to the Office Rules printed in the Driver's Manual dated 7/22/76 (copy attached).  The Publisher shall notify the Union of any change in the Office Rules should change, modification or addition become necessary during the term of this Agreement.

(c).  The representatives of the Union shall be permitted to enter the Publisher's garage or go on the Publisher's premises for the purpose of conducting the affairs of the Union during regular business hours, provided this will not result in any interference of the Publisher's business.

(d).  The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by either the Publisher or the Union or the Agents of either, and in case of slack season he shall be the last employee to be laid off and under no circumstances shall he be discriminated against.

The authority of the Shop Steward so designated by the Union shall be limited to and shall not exceed, the following duties and activities:

1.  the investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

2.  the collection of dues when authorized by appropriate Local Union action;

3.  the transmission of such messages and information which shall originate with and are authorized by the Local Union or its Officers, provided such messages and information:

*Original Agreement*
*1987 – 1989*

AGREEMENT

BETWEEN

THE BALTIMORE SUN COMPANY

AND

TRUCK DRIVERS, HELPERS,
TAXICAB DRIVERS AND GARAGE EMPLOYEES
AND AIRPORT EMPLOYEES

LOCAL UNION NO. 355

BALTIMORE, MARYLAND

OF

I.B.T.C.W.H.A.

TERM:  January 1, 1987 through December 31, 1989

(j). All regular employees who do not make selections in (i) above shall be classed as city chauffeurs and shall be permitted to select between day and night work in accordance with their seniority on an annual basis, each November 1 and also choose two additional classifications from the following:

Road
Garage Attendant—1st, 2nd & 3rd Shift
Baler/Shredder Attendant

1. Employees who choose a classification other than city chauffeur, shall be trained to perform that job; however, if the employee refuses to be trained or fails to satisfactorily perform the duties of the new job within a period of thirty (30) days or less, such employee may be transferred back to original classification of city chauffeur without penalty.

2. After November 15, employees who have not made their classification selections in (i) above or herein, shall be assigned by the Fleet Manager or his assistants as city chauffeurs.

3. In accordance with the employee's selection, seniority and qualifications, the Fleet Manager or his assistants shall make classification assignments no later than the first full financial work week in January.

(k). The Transportation Department Fleet Manager or his assistants, shall hire all employees to perform assigned work in the bargaining unit and shall determine the number of employees needed to perform the work in each classification. Selection of such number of employees shall be based upon the employee's ability to satisfactorily perform the job in accordance with the employee's seniority.

## VACATION

11(a). All employees who have been in continuous service of the Publisher for ten (10) years prior to June 1, shall receive four (4) full work weeks' vacation with pay in any subsequent year.

(b). All employees who have been in continuous service of the Publisher for three (3) years prior to June 1, shall receive three (3) full work weeks' vacation with pay in any subsequent year.

(c). All employees who have been in continuous service of the Publisher for one (1) year prior to June 1, shall receive two (2) full work weeks' vacation with pay in any subsequent year.

(d). All other employees shall receive one (1) day of vacation for each five (5) weeks of continuous employment completed prior to June 1 subsequent to employment. For such employee, each day of vacation shall be seven and one-half (7 1/2) hours.

(e). Extra or transient employees shall not receive vacation credits. Effective 6/1/82, extra/transient employees shall commence earning vacation credits on the basis of one shift (7 1/2 hours) of paid vacation for each twenty-five (25) fully paid straight-time shifts worked during the period June 1, 1982 through May 31, 1983 and each June 1 through May 31 thereafter. Paid vacations will begin January 1, 1983. Extra/transient chauffeur employees will be paid their earned vacation pay the first full week after January 1 and July 1, 1983, and each first full week after January 1 and July 1 thereafter.

(f). The regular vacation period shall be from January 1 to December 31 and employees shall be permitted to select their vacation week or weeks in order of their seniority during such established period. Not later than the preceding December 1, the office shall post the number of employees permitted vacations during each week of the vacation period. After December 20, employees who have not made their vacation selection shall be assigned their vacation weeks by the Office.

(g). When an employee resigned, retires, or is laid off to reduce the force, he shall be paid earned vacation credits. In the event of death of an employee, earned vacation credits shall be paid to his beneficiary, if designated on Company records, or to his estate.

12(a). The Publisher agrees that effective as of July 1, 1962, he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the

Baltimore area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees the sum of ninety-six cents ($.96) for Health and Welfare coverage provided by Plan 9 with legal plus two cents ($.02) for maintenance of benefits effective 1/1/87; an additional one cent ($.01) for maintenance of benefits effective 1/3/88; and an additional one cent ($.01) for maintenance of benefits effective 1/1/89 and effective 1/1/89 the total sum of one dollar and ten cents ($1.10) for Health and Welfare coverage provided by Plan 10 with legal for each straight-time hour or fraction thereof paid to each employee of the Publisher who are in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may, by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each work week of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

    1.    When an employee is out on a long injury or illness which exceeds the twenty (20) weeks sick and accident benefits, the Fund will carry the employee for the next thirty-two (32) weeks at no charge.  The employee can continue coverage for an additional one (1) year provided the employee pays for the coverage himself as provided by the Agreement and Declaration of Trust.

    (b).  The Publisher agrees that effective as of July 1, 1963, he will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of one dollar and eighteen cents ($1.18) for Retirement benefits provided by Plan "Q"; effective January 3, 1988, one dollar and twenty-five cents ($1.25) per hour for Plan "R"; effective January 1, 1989, one dollar and thirty-two cents ($1.32) per hour for Plan "S" for each straight-time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight-time hours for each work week of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

    (c).  The Publisher agrees that effective as of January 1, 1982, he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore Area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the sum of eight ($.08) cents per hour for retiree's prescription plan, for each straight-time hour or fraction thereof paid to each employee of the Publisher who are in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may by mutual consent of the Publisher and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each work week of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.  Should the cost of this Retiree's Prescription Plan increase beyond eight ($.08) cents per hour up to fifty (50) straight-time hours in one financial week for any reason, such increase shall be diverted from the pay of members of the bargaining unit.

    (d).  The contributions as provided in Section 12(a) and (b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

    (e).  The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

## RULES AND REGULATIONS

    13(a).  All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

    (b).  The Publisher reserves the right to establish such rules as it may deem necessary for the proper function of its business, and all employees affected by this Agreement shall adhere to the Office Rules printed in the Driver's Manual dated 7/22/76 (copy attached).  The Publisher shall notify the Union of any change in the Office Rules should change, modification or addition become necessary during the term of this Agreement.

AGREEMENT

BETWEEN

THE BALTIMORE SUN COMPANY

AND

TRUCK DRIVERS, HELPERS,
TAXICAB DRIVERS AND GARAGE EMPLOYEES
AND AIRPORT EMPLOYEES

LOCAL UNION NO. 355

BALTIMORE, MARYLAND

OF

I.B.T.C.W.H.A.

TERM: October 15, 1989 through December 31, 1993

(d). All other employees shall receive one (1) day of vacation for each five (5) weeks of continuous employment completed prior to June 1 subsequent to employment. For such employee, each day of vacation shall be seven and one-half (7 1/2) hours.

(e). Extra/transient employees shall earn vacation credits on the basis of one shift (7 1/2 hours) of paid vacation for each twenty-five (25) fully paid straight-time shifts worked. Extra/transient chauffeur employees will be paid their earned vacation pay the first full week after each January 1 and each July 1.

(f). The regular vacation period shall be from January 1 to December 31 and employees shall be permitted to select their vacation week or weeks in order of their seniority during such established period. Not later than the preceding December 1, the office shall post the number of employees permitted vacations during each week of the vacation period. After December 20, employees who have not made their vacation selection shall be assigned their vacation weeks by the Office.

(g). When an employee resigns, retires, or is laid off to reduce the force, he shall be paid earned vacation credits. In the event of death of an employee, earned vacation credits shall be paid to his beneficiary, if designated on Company records, or to his estate.

12(a). The Publisher agrees that effective as of January 1, 1989, he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the total sum of one dollar and ten cents ($1.10) for Health and Welfare coverage provided by Plan 10 with legal; effective January 7, 1990 the total sum of one dollar and thirteen cents ($1.13) for Health and Welfare coverage provided by Plan 10 with legal; effective January 6, 1991 the total sum of one dollar and sixteen cents ($1.16) for Health and Welfare coverage provided by Plan 10 with legal; effective January 5, 1992 the total sum of one dollar and nineteen cents ($1.19) for Health and Welfare coverage provided by Plan 10 with legal; and effective January 3, 1993 the total sum of one dollar twenty-two cents ($1.22) for Health and Welfare coverage provided by Plan 10 with legal for each straight-time hour or fraction thereof paid to each employee of the Publisher who is in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may, by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

1.   When an employee is out on a long injury or illness which exceeds the twenty (20) weeks sick and accident benefits, the Fund will carry the employee for the next thirty-two (32) weeks at no charge. The employee can continue coverage for an additional one (1) year provided the employee pays for the coverage himself as provided by the Agreement and Declaration of Trust.

(b). The Publisher agrees that effective as of January 1, 1989, he will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of one dollar and thirty-two cents ($1.32) per hour for Retirement benefits provided by "S"; effective January 7, 1990, one dollar and forty-one cents ($1.41) per hour for Plan "T"; effective January 6, 1991, one dollar and fifty cents ($1.50) per hour for Plan "U"; effective January 5, 1992, one dollar and fifty-eight cents ($1.58) per hour for Plan "V"; effective January 3, 1993, one dollar and sixty-five cents ($1.65) per hour for Plan "W" for each straight-time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(c). The Publisher agrees that effective as of January 1, 1982, he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore Area, as the Companies and Truck Drivers and Helpers Local Union No. 355,

as Union and its Trustees, the sum of eight ($.08) cents per hour for retiree's prescription plan, for each straight-time hour or fraction thereof paid to each employee of the Publisher who are in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may by mutual consent of the Publisher and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust. Should the cost of this Retiree's Prescription Plan increase beyond eight ($.08) cents per hour up to fifty (50) straight-time hours in one financial week for any reason, such increase shall be diverted from the pay of members of the bargaining unit.

(d). The contributions as provided in Section 12(a) and (b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(e). The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

## RULES AND REGULATIONS

13(a). All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

(b). The Publisher reserves the right to establish such rules as it may deem necessary for the proper function of its business, and all employees affected by this Agreement shall adhere to the Office Rules printed in the Driver's Manual dated October 1989 (copy attached). The Publisher shall notify the Union of any change if the Office Rules should change, or modification or addition become necessary during the term of this Agreement.

(c). The representatives of the Union shall be permitted to enter the Publisher's garage or go on the Publisher's premises for the purpose of conducting the affairs of the Union during regular business hours, provided this will not result in any interference of the Publisher's business.

(d). The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by either the Publisher or the Union or the Agents of either, and in case of slack season he shall be the last employee to be laid off and under no circumstances shall he be discriminated against.

The authority of the Shop Steward so designated by the Union shall be limited to and shall not exceed, the following duties and activities:

1. the investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

2. the collection of dues when authorized by appropriate Local Union action;

3. the transmission of such messages and information which shall originate with and are authorized by the Local Union or its Officers, provided such messages and information:

(a) have been reduced to writing, or

(b) if not reduced to writing, are of a routine nature and do not involve work stoppage, slowdowns, refusal to handle goods, or any other interference with the Publisher's business.

The Shop Steward has no authority to take strike action or any other action interrupting the Publisher's business, except as authorized by official action of the Union.

AGREEMENT

BETWEEN

THE BALTIMORE SUN COMPANY

AND

TRUCK DRIVERS, HELPERS,
TAXICAB DRIVERS AND GARAGE EMPLOYEES
AND AIRPORT EMPLOYEES

LOCAL UNION NO. 355

BALTIMORE, MARYLAND

OF

I.B.T.

Term: January 1, 1994 through December 31, 1996

order of their seniority during such established period. Not later than the preceding December 1, the office shall post the number of employees permitted vacations during each week of the vacation period. After December 20, employees who have not made their vacation selection shall be assigned their vacation weeks by the Office.

(g). When an employee resigns, retires, or is laid off to reduce the force, he shall be paid earned vacation credits. In the event of death of an employee, earned vacation credits shall be paid to his beneficiary, if designated on Company records, or to his estate.

12(a). The Publisher agrees that effective as of January 2, 1994, he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the total sum of one dollar and sixty-four cents and seven tenths of a cent ($1.647) for Health and Welfare coverage provided by Plan 10 with legal; effective January 1, 1995 the total sum of two dollars and eight cents and four tenths of a cent ($2.084) for Health and Welfare coverage provided by Plan 10 with legal; and effective January 7, 1996 the total sum of two dollars and fifty-two cents and one tenth of a cent ($2.521) for Health and Welfare coverage provided by Plan 10 with legal for each straight-time hour or fraction thereof paid to each employee of the Publisher who is in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may, by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

1. When an employee is out on a long injury or illness which exceeds the twenty (20) weeks sick and accident benefits, the Fund will carry the employee for the next thirty-two (32) weeks at no charge. The employee can continue coverage for an additional one (1) year provided the employee pays for the coverage himself as provided by the Agreement and Declaration of Trust.

(b). The Publisher agrees that effective as of January 2, 1994, he will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of one dollar and sixty-five cents ($1.65) per hour for Retirement benefits provided by Plan "W"; effective January 1, 1995, one dollar and seventy-two cents ($1.72) per hour for Plan "X" and effective January 7, 1996, one dollar and seventy-nine cents ($1.79) per hour for Plan "Y" for each straight-time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(c). The Publisher agrees that effective as of January 1, 1982, he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore Area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the sum of eight ($.08) cents per hour for retiree's prescription plan, for each straight-time hour or fraction thereof paid to each employee of the Publisher who are in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may by mutual consent of the Publisher and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said

9

benefits as provided under said Agreement and Declaration of Trust. Should the cost of this Retiree's Prescription Plan increase beyond eight ($.08) cents per hour up to fifty (50) straight-time hours in one financial week for any reason, such increase shall be diverted from the pay of members of the bargaining unit.

(d). The contributions as provided in Section 12(a) and (b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(e). The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

## RULES AND REGULATIONS

13(a). All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

(b). The Publisher reserves the right to establish such rules as it may deem necessary for the proper function of its business, and all employees affected by this Agreement shall adhere to the posted Office Rules. The Publisher shall notify the Union of any change if the Office Rules should change, or modification or addition become necessary during the term of this Agreement.

(c). The representatives of the Union shall be permitted to enter the Publisher's garage or go on the Publisher's premises for the purpose of conducting the affairs of the Union during regular business hours, provided this will not result in any interference of the Publisher's business.

(d). The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by either the Publisher or the Union or the Agents of either, and in case of slack season he shall be the last employee to be laid off and under no circumstances shall he be discriminated against.

The authority of the Shop Steward so designated by the Union shall be limited to and shall not exceed, the following duties and activities:

1.  the investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

2.  the collection of dues when authorized by appropriate Local Union action;

3.  the transmission of such messages and information which shall originate with and are authorized by the Local Union or its Officers, provided such messages and information:

    (a) have been reduced to writing, or

    (b) if not reduced to writing, are of a routine nature and do not involve work stoppage, slowdowns, refusal to handle goods, or any other interference with the Publisher's business.

The Shop Steward has no authority to take strike action or any other action interrupting the Publisher's business, except as authorized by official action of the Union.

(e) No employee of the Publisher in the bargaining unit shall be required to place himself in jeopardy when making every effort to make pick-

10

December 31, 1995

Denis Taylor
Truck Drivers, Helpers,
Taxicab Drivers and Garage Employees
and Airport Employees
Local Union No. 355

Re:    Contract Extension Agreement

Dear Denis:

A.    The parties agree to extend the duration of their collective bargaining agreement through December 31, 1997. Provisions of the agreement which state the contract will be in effect until December 31, 1996, shall be modified to reflect the new expiration date of December 31, 1997. Similarly, Section 20 of the agreement shall be amended to change the date from "January 1, 1997" to "January 1, 1998". The parties agree that the consideration for this extension agreement is limited to the promises set forth below.

B.    On January 10, 1997, the Publisher will pay to each eligible regular bargaining unit employee a one time lump sum bonus of Eight Hundred Fifty Dollars ($850.00), less applicable payroll deductions. To be eligible for this one time bonus, the employee must be on the Company's payroll on January 1, 1997 and have worked at least one hundred (100) shifts during calendar year 1996. Employees who are on lay-off on January 1, 1997 are not eligible for this bonus.

Eligible casual and extra employees will receive on January 19, 1997, a pro rata portion of this $850.00 bonus, less applicable payroll deductions. The appropriate pro rata amount will be determined by the Publisher based upon each casual and extra employee's average number of weekly shifts worked during the period September 1, 1996 through December 29, 1996. For example, if the extra or casual employee averaged four shifts a week during that period, he/she would be eligible for 80% of the bonus. If he/she averaged one shift a week during the period, he would be eligible for 20% of the bonus. To be eligible for the pro rata bonus, each casual and extra employee must be on the active payroll on January 1, 1997 and have averaged a minimum of at least one shift a week throughout the September 1 – December 29, 1996 period.

AGREEMENT

BETWEEN

THE BALTIMORE SUN COMPANY

AND

TRUCK DRIVERS, HELPERS,
TAXICAB DRIVERS AND GARAGE EMPLOYEES
AND AIRPORT EMPLOYEES

LOCAL UNION NO. 355

BALTIMORE, MARYLAND

OF

I.B.T.

Term:   January 1, 1998 through December 31, 2003

(c). All employees who have been in continuous service of the Publisher for one (1) year prior to June 1, shall receive two (2) full work weeks' vacation with pay in any subsequent year.

(d). All other employees shall receive one (1) day of vacation for each five (5) weeks of continuous employment completed prior to June 1 subsequent to employment. For such employee, each day of vacation shall be seven and one-half (7 1/2) hours.

(e). Extra/transient employees shall earn vacation credits on the basis of one shift (7 1/2 hours) of paid vacation for each twenty-five (25) fully paid straight-time shifts worked. Extra/transient chauffeur employees will be paid their earned vacation pay the first full week after each January 1 and each July 1.

(f). The regular vacation period shall be from January 1 to December 31 and employees shall be permitted to select their vacation week or weeks in order of their seniority during such established period. Not later than the preceding December 1, the office shall post the number of employees permitted vacations during each week of the vacation period. After December 20, employees who have not made their vacation selection shall be assigned their vacation weeks by the Office.

(g). When an employee resigns, retires, or is laid off to reduce the force, he shall be paid earned vacation credits. In the event of death of an employee, earned vacation credits shall be paid to his beneficiary, if designated on Company records, or to his estate.

(h). Employees entitled to four (4) weeks of vacation only may take one (1) week of vacation in units of less than five (5) consecutive shifts, (but not less than full shifts) subject to approval by the Publisher. It is understood that vacation requests in units of days must be submitted two (2) weeks in advance. Existing policies regarding personal days shall apply to daily vacation, such that a maximum of two (2) employees per shift requesting personal and/or vacation days will be permitted off at any point in time.

(i). The Publisher will agree to pay up to four (4) employees as Road Drivers, up to three (3) employees as Assistant Dispatchers and up to three (3) employees as Dispatchers, at such job classification rates when they are on vacation.

## HEALTH & WELFARE/PENSION

12(a). The Publisher agrees that effective as of January 4, 1998, he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the total sum of two dollars and sixty-eight cents and one tenth of a cent ($2.681) for Health and Welfare coverage provided, by the Plan for each straight-time hour or fraction thereof paid to each employee of the Publisher who is in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may, by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

1.   When an employee is out on a long injury or illness which exceeds the twenty-six (26) weeks sick and accident benefits, the Fund will carry the employee for the next twenty-six (26) weeks at no charge. The employee can continue coverage for an additional one (1) year provided the employee pays for the coverage himself as provided by the Agreement and Declaration of Trust.

10

(b). The Publisher agrees that effective as of January 4, 1998, he will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of one dollar and ninety-three cents ($1.93) per hour for Retirement benefits provided by the Plan; for each straight-time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(c). The contributions as provided in Section 12(a) and (b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(d). The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

## RULES AND REGULATIONS

13(a). All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

(b). The Publisher reserves the right to establish such rules as it may deem necessary for the proper function of its business, and all employees affected by this Agreement shall adhere to the posted Office Rules. The Publisher shall notify the Union of any change if the Office Rules should change, or modification or addition become necessary during the term of this Agreement.

(c). The representatives of the Union shall be permitted to enter the Publisher's garage or go on the Publisher's premises for the purpose of conducting the affairs of the Union during regular business hours, provided this will not result in any interference of the Publisher's business.

## SHOP STEWARDS

(d). The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by either the Publisher or the Union or the Agents of either, and in case of slack season he shall be the last employee to be laid off and under no circumstances shall he be discriminated against.

The authority of the Shop Steward so designated by the Union shall be limited to and shall not exceed, the following duties and activities:

1. the investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

2. the collection of dues when authorized by appropriate Local Union action;

11

# AGREEMENT

BETWEEN

# THE BALTIMORE SUN COMPANY

AND

# TRUCK DRIVERS, HELPERS, TAXICAB DRIVERS

AND

# GARAGE EMPLOYEES

AND

# AIRPORT EMPLOYEES

LOCAL UNION NO. 355

BALTIMORE, MARYLAND

OF

I.B.T

April 18, 2003 – December 31, 2007

(d). All other employees shall receive one (1) day of vacation for each five (5) weeks of continuous employment completed prior to June 1 subsequent to employment. For such employee, each day of vacation shall be seven and one-half (7 1/2) hours.

(e). Extra/transient employees shall earn vacation credits on the basis of one shift (7 1/2 hours) of paid vacation for each twenty-five (25) fully paid straight-time shifts worked. Extra/transient employees will be paid their earned vacation pay the first full week after each January 1 and each July 1.

(f). The regular vacation period shall be from January 1 to December 31 and employees shall be permitted to select their vacation week or weeks in order of their seniority during such established period. Not later than the preceding December 1, the office shall post the number of employees permitted vacations during each week of the vacation period. After December 20, employees who have not made their vacation selection shall be assigned their vacation weeks by the Office.

(g). When an employee resigns, retires, or is laid off to reduce the force, he shall be paid earned vacation credits. In the event of death of an employee, earned vacation credits shall be paid to his beneficiary, if designated on Company records, or to his estate.

(h). Employees entitled to four (4) weeks of vacation only may take one (1) week of vacation in units of less than five (5) consecutive shifts, (but not less than full shifts) subject to approval by the Publisher. It is understood that vacation requests in units of days must be submitted by noon on Wednesday prior to posting the weekly work schedule. Existing policies regarding personal days shall apply to daily vacation, such that a maximum of two (2) employees per shift requesting personal and/or vacation days will be permitted off at any point in time.

(i). Employees whose full-time job is dispatcher shall be paid at such classification rate when they are on vacation.

(j). Regular full-time tractor-trailer drivers scheduled to work a four-day week will be compensated nine and one-half hours a day or 38 hours a week when they are off on vacation.

## HEALTH & WELFARE/PENSION

12(a). The Publisher agrees that he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the total sum of $3.58 (to be increased by an additional $0.18 to $3.76 effective January 1, 2004; to be increased by an additional $0.20 to $3.96 effective January 1, 2005; to be increased by an additional $0.20 to $4.16 effective January 1, 2006; and to be increased by an additional $0.20 to $4.36 effective January 1, 2007) for Health and Welfare coverage provided, by the Plan for each straight-time hour or fraction thereof paid to each employee of the Publisher who is in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may, by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

15

1.    When an employee is out on a long injury or illness which exceeds the twenty-six (26) weeks sick and accident benefits, the Fund will carry the employee for the next twenty-six (26) weeks at no charge. The employee can continue coverage for an additional one (1) year provided the employee pays for the coverage himself as provided by the Agreement and Declaration of Trust.

(b). The Publisher agrees that he will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of $2.00 (to be increased by $0.10 to $2.10 effective January 1, 2006) per hour for Retirement benefits provided by the Plan; for each straight-time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(c). The contributions as provided in Section 12(a) and (b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(d). The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

## RULES AND REGULATIONS

13(a). All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

(b). The Publisher reserves the right to establish such rules as it may deem necessary for the proper function of its business, and all employees affected by this Agreement shall adhere to the posted Office Rules. The Publisher shall notify the Union of any change if the Office Rules should change, or modification or addition become necessary during the term of this Agreement.

(c). The representatives of the Union shall be permitted to enter the Publisher's garage or go on the Publisher's premises for the purpose of conducting the affairs of the Union during regular business hours, provided this will not result in any interference of the Publisher's business.

## SHOP STEWARDS

(d). The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by

16



# AGREEMENT

## BETWEEN

## THE BALTIMORE SUN COMPANY

### AND

## TRUCK DRIVERS, HELPERS, TAXICAB DRIVERS

### AND

## GARAGE EMPLOYEES

### AND

## AIRPORT EMPLOYEES

## LOCAL UNION NO. 355

## BALTIMORE, MARYLAND

### OF

### I.B.T

## January 1, 2008 – December 31, 2010

_____ days to be used immediately before or after a scheduled week of vacation must be _____ than thirty (30) days prior to the start of the scheduled vacation week. Barring unusual _____ such requests will be approved. Other vacation requests in units of days must be _____ by noon on Wednesday prior to posting the weekly work schedule. Other than for individual _____ days taken immediately before or after a scheduled week of vacation, existing policies regarding _____ sonal days shall apply to daily vacation, such that a maximum of two (2) employees per shift requesting personal days or vacation days will be permitted off at any point in time.

(i). Employees whose full-time job is dispatcher shall be paid at such classification rate when they are on vacation.

(j). Regular full-time employees scheduled to work a four-day week will be compensated nine and one-half (9½) hours a day or thirty-eight (38) hours a week when they are off on vacation.

## HEALTH & WELFARE/PENSION

12(a). The Publisher agrees that he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the total sum of $5.12 effective January 1, 2008 (to be increased by an additional $0.76 to $5.88 effective January 4, 2009; and to be increased by an additional $0.76 to $6.64 effective January 3, 2010) for Health and Welfare coverage provided, by the Plan for each straight-time hour or fraction thereof paid to each employee of the Publisher who is in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may, by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

1. When an employee is out on a long injury or illness which exceeds the twenty-six (26) weeks sick and accident benefits, the Fund will carry the employee for the next twenty-six (26) weeks at no charge. The employee can continue coverage for an additional one (1) year provided the employee pays for the coverage himself as provided by the Agreement and Declaration of Trust.

2. The following amounts shall be deducted from the pay of employees to defray the Publisher's cost of health and welfare contributions:

| Effective Date | Full Time | Part-time (7.5 hour shifts) | Part-time (9.5 hour shifts) |
|---|---|---|---|
| January 4, 2009 | $10.00 per week | $2.00 per shift | $2.50 per shift |
| January 3, 2010 | $15.00 per week | $3.00 per shift | $3.75 per shift |

(b). The Publisher agrees that he will contribute monthly to the Pension Fund established under the Agreement and Declaration of Trust dated April 2, 1959 between the Voluntary Association of Contract Carriers in the Baltimore area, therein referred to as "Association" and Truck Drivers and Helpers Local Union No. 355 of Baltimore, Maryland, therein referred to as "Union" the sum of $2.31

15

effective January 1, 2008 (to be increased by $0.23 to $2.54 effective January 4, 2009; and to be increased by $0.25 to $2.79 effective January 3, 2010) per hour for Retirement benefits provided by the Plan; for each straight-time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

(c). The contributions as provided in Section 12(a) and (b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(d). The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

## RULES AND REGULATIONS

13(a). All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

(b). The Publisher reserves the right to establish such rules as it may deem necessary for the proper function of its business, and all employees affected by this Agreement shall adhere to the posted Office Rules. The Publisher shall notify the Union of any change if the Office Rules should change, or modification or addition become necessary during the term of this Agreement.

(c). The representatives of the Union shall be permitted to enter the Publisher's garage or go on the Publisher's premises for the purpose of conducting the affairs of the Union during regular business hours, provided this will not result in any interference of the Publisher's business.

## SHOP STEWARDS

(d). The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by either the Publisher or the Union or the Agents of either, and in case of slack season he shall be the last employee to be laid off and under no circumstances shall he be discriminated against.

The authority of the Shop Steward so designated by the Union shall be limited to and shall not exceed, the following duties and activities:

1.  the investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

2.  the collection of dues when authorized by appropriate Local Union action;

3.  the transmission of such messages and information which shall originate with and are authorized by the Local Union or its Officers, provided such messages and information:

16

# AGREEMENT

## BETWEEN

## THE BALTIMORE SUN COMPANY

### AND

## TRUCK DRIVERS, HELPERS, TAXICAB DRIVERS

### AND

## GARAGE EMPLOYEES

### AND

## AIRPORT EMPLOYEES

## LOCAL UNION NO. 355

## BALTIMORE, MARYLAND

### OF

### I.B.T

## January 1, 2011 – December 31, 2013

## HEALTH & WELFARE/PENSION

12(a). The Publisher agrees that he will contribute monthly to the Health and Welfare Fund established by the Agreement and Declaration of Trust dated May 14, 1953 between the Voluntary Association of Contract Carriers in the Baltimore area, as the Companies and Truck Drivers and Helpers Local Union No. 355, as Union and its Trustees, the total sum of $6.64 for Health and Welfare coverage provided, by the Plan for each straight-time hour or fraction thereof paid to each employee of the Publisher who is in the bargaining unit represented by Local Union No. 355, and such employees of the Publisher not within said bargaining unit, who may, by mutual consent of the Publisher, and the Union, be included in the benefits of such fund up to but not in excess of fifty (50) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

1. When an employee is out on a long injury or illness which exceeds the twenty-six (26) weeks sick and accident benefits, the Fund will carry the employee for the next twenty-six (26) weeks at no charge. The employee can continue coverage for an additional one (1) year provided the employee pays for the coverage himself as provided by the Agreement and Declaration of Trust.

2. The following amounts shall be deducted from the pay of employees to defray the Publisher's cost of health and welfare contributions:

| Effective Date | Full Time | Part-time (7.5hour shifts) | Part-time (9.5 hour shifts) |
|---|---|---|---|
| January 3, 2010 | $15.00 per week | $3.00 per shift | $3.75 per shift |

(b). (i).  The Publisher agrees that he will contribute monthly to the Truck Drivers and Helpers Local Union No. 355 Retirement Pension Fund (the "Pension Fund") the sum as set forth in Section 12(b)(ii) below for Retirement benefits provided by the Pension Fund; for each straight-time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight-time hours for each work week of each such employee. The purpose of such contributions is to provide benefits as provided under the Agreement and Declaration of Trust dated April 2, 1959, and subsequent updated Agreement and Declarations of Trust.

(ii).  The Publisher agrees to adopt the Alternative Schedule in the Rehabilitation Plan for the Pension Fund as set forth in the letter to contributing employers dated June 10, 2010.  Accordingly, the Publisher's required contribution will be increased by 6.6% ($0.18) per hour effective July 1, 2011.  In addition to the foregoing required increase under the Alternative Schedule, the Publisher agrees to contribute an additional $0.03 per hour, bringing the total contribution to the Pension Fund to $3.00 per hour effective July 1, 2011.

Effective January 1, 2012, and on January 1 of each succeeding year thereafter for the duration of the Rehabilitation Plan (i.e., through December 31, 2022), the Publisher's total contribution (including the required annual increased contribution under the Rehabilitation Plan) will be increased by an additional $0.30 per hour.  In accordance with the foregoing, the Publisher's total contribution shall be as follows:

January 1, 2012         $3.30

16

| January 1, 2013 | $3.60 |
| January 1, 2014 | $3.90 |
| January 1, 2015 | $4.20 |
| January 1, 2016 | $4.50 |
| January 1, 2017 | $4.80 |
| January 1, 2018 | $5.10 |
| January 1, 2019 | $5.40 |
| January 1, 2020 | $5.70 |
| January 1, 2021 | $6.00 |
| January 1, 2022 | $6.30 |

If at any time during its term the Rehabilitation Plan is amended by the Trustees of the Pension Fund and the required annual increased contribution under the Alternative Schedule becomes greater than the original 6.6% per hour, the annual increase in the Publisher's total contribution to the Fund shall remain at $0.30 per hour, unless the required annual increased contribution under the Alternative Schedule exceeds $0.30 per hour in which case the Publisher's contribution shall be increased only to the amount required by the Alternative Schedule.

(c). The contributions as provided in Section 12(a) and (b) hereof shall be subject to their deductibility under the Internal Revenue Code (and the Rules and Regulations issued pursuant thereto) by the Publisher, of the amount of such contributions respectively, and to the continuing qualification of each plan, under applicable laws, covering the deductibility of payments or contributions thereunder.

(d). The Publisher shall participate with other companies, parties to the Agreements and Declarations of Trust respectively in the election of the Board of Trustees as provided by the provisions of said Agreements respectively.

## RULES AND REGULATIONS

13(a). All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

(b). The Publisher reserves the right to establish such rules as it may deem necessary for the proper function of its business, and all employees affected by this Agreement shall adhere to the posted Office Rules. The Publisher shall notify the Union of any change if the Office Rules should change, or modification or addition become necessary during the term of this Agreement.

(c). The representatives of the Union shall be permitted to enter the Publisher's garage or go on the Publisher's premises for the purpose of conducting the affairs of the Union during regular business hours, provided this will not result in any interference of the Publisher's business.

## SHOP STEWARDS

(d). The Union shall appoint one of the employees in the bargaining unit to act as Shop Steward (one day, one night), whose duty it shall be to see that the conditions of this Agreement are not broken by