# EXHIBIT A

# GE CAPITAL CLAIM

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE | PROOF OF CLAIM |
|---|---|
| Name of Debtor: Chicago Trubune Co. | Case Number: 08-13152 |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
GE Capital Corp.
c/o Aaron B. Chapin
Reed Smith LLP
10 S. Wacker Dr., Chicago, IL 60606

Court Claim Number:_____
(*If known*)

Telephone number:

Filed on:_____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:**    $ 69,443.06 (see attached rider)

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** Master Lease Agreement
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____

   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe:

   Value of Property: $_____   Annual Interest Rate____%

   Amount of arrearage and other charges as of time case filed included in secured claim,
   if any: $_____   Basis for perfection: _____

   Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

   Specify the priority of the claim.

   ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

   ☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

   ☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted orders, invoices, itemized state[ments]... [promi]ssory notes, purchase [a]nd security agreements... perfection of a security [interest]... [destr]OYED AFTER

   Filed: USBC - District of Delaware
   Tribune Company, Et Al.
   08-13141 (KJC)    0000005578

   DO NOT SEND ORIGINAL D[OCUMENTS AFTER]
   SCANNING.

   If the documents are not available, please explain:

   Amount entitled to priority:
   $_____

   *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

Date: 6/11/09
Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
*[signature]* Attorney for GE Capital

FOR COURT USE ONLY

**FILED / RECEIVED**
JUN 1 2 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B10 (Official Form 10) (12/07) - Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

---

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

---

*SUBMITTING PROOF OF CLAIM FORM:*
*Submit original and one (1) copy of proof of claim form with any attachments to the Court at the below address. Do not include this page. To receive acknowledgment of receipt, an additional copy (original + 2 copies) must be provided along with a self-addressed stamped envelope.*

U.S. Bankruptcy Court, District of Delaware
ATTN: Claims
824 Market Street, 3rd Floor
Wilmington, DE 19801

# RIDER TO PROOF OF CLAIM
# FILED BY GENERAL ELECTRIC CAPITAL CORPORATION

United States Bankruptcy Court, District of Delaware
Debtor:   Chicago Tribune Company          Case No. 08-13152 (jointly administered)
Creditor: General Electric Capital Corporation

This proof of claim is filed by General Electric Capital Corporation ("**GE Capital**") pursuant to that certain Master Lease Agreement (the "Agreement") between GE Capital, directly or through various assignments and transfers, and Chicago Tribune Company ("**Debtor**"). A True and correct copy of the Agreement is attached hereto as "**Exhibit A.**"

- **With respect to Schedule 001 under the Agreement, payments are current and the Debtor is next due for a payment on June 10, 2009.**
- **With respect to Schedule 002 under the Agreement, payments are current and the Debtor is next due for a payment on June 1, 2009.**
- **With respect to Schedule 003 under the Agreement, the Debtor owes arrears in the amount of $38,700.82.**
- **With respect to Schedule 004 under the Agreement, the Debtor owes arrears in the amount of $30,635.86.**
- **With respect to Schedule 005 under the Agreement, payments are current and the Debtor is next due for a payment on June 1, 2009.**
- **With respect to Schedule 006 under the Agreement, the Debtor owes arrears in the amount of $106.38.**

**The Debtor is indebted or liable to GE Capital in the amount of $69,443.06 plus attorneys' fees, costs, insurance, taxes and other amounts, to the extent allowable in this case and under the Agreement.**

GE Capital reserves its right to amend this proof of claim and rider, as may be necessary to adjust the amount or priority asserted herein or to supplement this claim in any way, including, but not limited to, attorneys' fees, interest and other amounts, to the extent allowable in this case.

In the event that the Debtor, or anyone on the Debtor's behalf, asserts a claim against GE Capital in these proceedings, this claim may be secured by a right of setoff pursuant to sections 506(a) and 553 of Title 11, United States Code. All payments on this claim have been credited and deducted for the purpose of making this proof of claim.

Exhibit A

2/98(R040106)(11.)045304367  **\*LEAS1998\***

# MASTER LEASE AGREEMENT
dated as of __8\|1\|06__

    **THIS MASTER LEASE AGREEMENT** (as amended, supplemented or otherwise modified from time to time, this "Agreement") is between General Electric Capital Corporation (together with its successors and assigns, if any, "Lessor") and Chicago Tribune Company ("Lessee"). Lessor has an office at 1415 West 22nd Street, Suite 600, Oak Brook, IL 60523. Lessee is a corporation organized and existing under the laws of the state of Illinois. Lessee's mailing address and chief executive office is 435 N. Michigan Avenue, Tribune Tower Room 300, Chicago, IL 60611. This Agreement contains the general terms that apply to the leasing of certain equipment and personal property (the "Equipment") from Lessor to Lessee. Additional terms that apply to the Equipment and financial terms in relation to the lease of the Equipment (term, rent, options, etc.) shall be contained on an equipment schedule (each a "Schedule", and collectively the "Schedules"). This Agreement together with any Schedule shall constitute the "Lease" for any Equipment. Defined terms used and not defined in this Agreement shall have the meanings assigned to such terms set forth in the applicable Schedule(s).

### 1. LEASING:

    (a) Subject to the terms and conditions set forth below, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the Equipment described in any Schedule signed by both parties.

    (b) Lessor shall purchase Equipment from the manufacturer or supplier ("Supplier") and lease it to Lessee if on or before the Last Delivery Date Lessor receives (i) a Schedule for the Equipment, (ii) evidence of insurance which complies with the requirements of Section 9, and (iii) such other documents as Lessor may reasonably request. Each of the documents required above must be in form and substance satisfactory to Lessor. Lessor hereby appoints Lessee its agent for inspection and acceptance of the Equipment from Supplier. Once the Schedule is signed, Lessee may not cancel the Schedule.

### 2. TERM, RENT AND PAYMENT:

    (a) The rent ("Rent") payable for the Equipment and Lessee's right to use the Equipment shall begin on the earlier of (i) the date when Lessee signs the Schedule and accepts the Equipment or (ii) when Lessee has accepted the Equipment under a Certificate of Acceptance ("Lease Commencement Date"). The term of the Lease for any Equipment shall commence on the Basic Lease Commencement Date and shall continue, unless earlier terminated pursuant to the provisions of the applicable Schedule (the "Term"). If any term is extended or renewed, the word "Term" shall be deemed to refer to all extended or renewal terms, and all provisions of this Agreement shall apply during any such extension or renewal terms, except as may be otherwise specifically provided in writing.

    (b) Lessee shall pay rent to Lessor at its address stated above, unless otherwise directed by Lessor. Each payment of Rent (each a "Rent Payment") shall be in the amount set forth in, payable at such intervals and due in accordance with the provisions of the applicable Schedule. If any Interim Rent and/or any Advance Rent is payable in respect of any Equipment, such Interim Rent and/or Advance Rent shall be set forth in the applicable Schedule and shall be due and payable in accordance with the terms of the Schedule. Upon Lessor's receipt of the Interim Rent and the Advance Rent, (i) the Interim Rent shall be applied to the Rent Payment due for the Interim Period, if any, set forth in the Schedule, and (ii) the Advance Rent shall be applied to the first Rent Payment due for the Basic Term, and (iii) the remaining balance, if any, shall be applied to the next scheduled Rent Payment under such Schedule. In no event shall any Interim Rent, Advance Rent or any other Rent Payments be refunded to Lessee. If Lessor does not receive from Lessee payment in full of any scheduled Rent Payment or any other sum due under any Lease within ten (10) days after its due date, Lessee agrees to pay, a late fee equal to five percent (5%) on such unpaid Rent Payment or other sum, but not exceeding any lawful maximum. Such late fee will be immediately due and payable, and is in addition to any other costs, fees and expenses that Lessee may owe as a result of such late payment.

### 3. RENT ADJUSTMENT:

    (a) If, solely as a result of Congressional enactment of any law (including, without limitation, any modification of, or amendment or addition to, the Internal Revenue Code of 1986, as amended, ("Code")), the maximum effective corporate income tax rate (exclusive of any minimum tax rate) for calendar-year taxpayers ("Effective Rate") is higher than thirty-five percent (35%) for any year during the Term for any Lease, then Lessor shall have the right to increase such rent payments by requiring payment of a single additional sum. The additional sum shall be equal to the product of (i) the Effective Rate (expressed as a decimal) for such year less 0.35 (or, in the event that any adjustment has been made hereunder for any previous year, the Effective Rate (expressed as a decimal) used in calculating the next previous adjustment) times (ii) the adjusted Termination Value (defined below), divided by (iii) the difference between the new Effective Rate (expressed as a decimal) and one (1). The adjusted Termination Value shall be the Termination Value (calculated as of the first rental due in the year for which such adjustment is being made) minus the Tax Benefits that would be allowable under Section 168 of the Code (as of the first day of the year for which such adjustment is being made and all future years of the Term for any Lease). The Termination Values and Tax Benefits are defined on the Schedule. Lessee shall pay to Lessor the full amount of the additional rent payment on the later of (i) receipt of notice or (ii) the first day of the year for which such adjustment is being made.

    (b) Lessee's obligations under this Section 3 shall survive any expiration or termination of any Lease.

### 4. TAXES AND FEES:

    (a) If permitted by law, Lessee shall report and pay promptly all taxes, fees and assessments due, imposed, assessed or levied against any Equipment (or purchase, ownership, delivery, leasing, possession, use or operation thereof), this Agreement (or any rents or receipts hereunder), any Schedule, Lessor or Lessee, by any domestic or foreign governmental entity or taxing authority during or related to the Term of any Lease, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (collectively "Taxes"). Lessee shall have no liability for Taxes imposed by the United States of America or any state or political subdivision thereof which are on or measured by the net income of Lessor except as provided in Sections 3 and 14(c). Lessee shall promptly reimburse (on an after tax basis) Lessor for any Taxes charged to or assessed against Lessor. Lessee shall show Lessor as the owner of the Equipment on all tax reports or returns, and send Lessor a copy of each report or return and evidence of Lessee's payment of Taxes upon request.

    (b) Lessee's obligations, and Lessor's rights, privileges and indemnities, contained in this Section 4 shall survive the expiration or other termination of this Agreement.

## 5. REPORTS:

(a) If any tax or other lien shall attach to any Equipment, Lessee will notify Lessor in writing, within ten (10) days after Lessee becomes aware of the tax or lien. The notice shall include the full particulars of the tax or lien and the location of such Equipment on the date of the notice.

(b) Lessee will deliver or make available to Lessor, Lessee's and any Guarantor's, if applicable, complete financial statements prepared in accordance with generally accepted accounting principles, consistently applied, certified by a recognized firm of certified public accountants within ninety (90) days of the close of each fiscal year of Lessee, together with a certificate of an authorized officer of Lessee stating that such officer has reviewed the activities of Lessee and that to the best of such officer's knowledge, there exists no Event of Default or event which with notice or lapse of time (or both) would become an Event of Default. In addition, Lessee will deliver to Lessor copies of Lessee's and any Guarantor's, if applicable, quarterly financial report certified by the chief financial officer of Lessee, within ninety (90) days of the close of each fiscal quarter of Lessee. Lessee will deliver or make available to Lessor all Forms 10-K and 10-Q, if any, filed with the Securities and Exchange Commission within thirty (30) days after the date on which they are filed.

(c) Lessor may inspect any Equipment during normal business hours after giving Lessee reasonable prior notice.

(d) Lessee will keep the Equipment under any Lease at the Equipment Location specified in the applicable Schedule and will give Lessor at least thirty (30) days' prior written notice of any relocation of such Equipment. If Lessor asks, Lessee will promptly notify Lessor in writing of the location of any Equipment.

(e) If any Equipment is lost or damaged (where the estimated repair costs would exceed the greater of ten percent (10%) of the original Equipment cost or ten thousand and 00/100 dollars ($10,000)), or is otherwise involved in an accident causing personal injury or property damage, Lessee will promptly and fully report the event to Lessor in writing within ten (10) days of the occurrence of any such incident.

(f) Upon Lessor's request, Lessee will provide within ten (10) days of such request, copies of the insurance policies or other evidence required by the terms hereof.

(g) Upon reasonable request by Lessor, Lessee will furnish a certificate of an authorized officer of Lessee stating that he has reviewed the activities of Lessee and that, to the best of his knowledge, no Event of Default or event which with notice or lapse of time (or both) would become an Event of Default within thirty (30) days of Lessor's request.

(h) Lessee will promptly notify Lessor of any change in Lessee's state of incorporation or organization, in any case within thirty (30) days of such change.

(i) Upon reasonable request by Lessor, Lessee will provide Lessor such other reports or information in relation to the Equipment and the maintenance thereof.

## 6. DELIVERY, USE AND OPERATION:

(a) All Equipment shall be shipped directly from Supplier to Lessee (unless the Equipment is being leased pursuant to a sale-leaseback transaction in which case Lessee represents and warrants that it is in possession of the Equipment as of the Lease Commencement Date).

(b) Lessee agrees that the Equipment will be used by Lessee solely in the conduct of its business, and in a manner complying with all applicable laws, regulations and insurance policies, and in compliance with manufacturer's recommendations. Lessee further agrees that it shall not discontinue use of any Equipment.

(c) Lessee will not (i) move any Equipment from the location specified on the Schedule, without the prior written consent of Lessor, or (ii) part with possession of any of the Equipment (except to Lessor or for maintenance or repair).

(d) Lessee will keep the Equipment free and clear of all liens, claims and encumbrances other than those which result from acts of Lessor.

(e) Lessor shall not disturb Lessee's quiet enjoyment of the Equipment during the term of the Agreement unless an Event of Default has occurred and is continuing under this Agreement.

## 7. MAINTENANCE:

(a) Lessee will, at its sole expense, maintain each unit of Equipment in good operating order and repair, normal wear and tear excepted. Lessee shall also maintain the Equipment in accordance with manufacturer's recommendations. Lessee shall make all alterations or modifications required to comply with any applicable law, rule or regulation during the Term of any Lease. If Lessor requests, Lessee shall affix plates, tags or other identifying labels showing ownership thereof by Lessor. The tags or labels shall be placed in a prominent position on each unit of Equipment.

(b) Lessee will not attach or install anything on any Equipment that will impair the originally intended function or use of such Equipment without the prior written consent of Lessor. All additions, parts, supplies, accessories, and equipment ("Additions") furnished or attached to any Equipment that are not readily removable shall become the property of Lessor. All Additions shall be made only in compliance with applicable law. Lessee will not attach or install any Equipment to or in any other personal or real property without the prior written consent of Lessor.

## 8. STIPULATED LOSS VALUE:
If for any reason any unit of Equipment becomes worn out, lost, stolen, destroyed, irreparably damaged or unusable ("Casualty Occurrences") Lessee shall promptly and fully notify Lessor in writing. Lessee shall pay Lessor the sum of (i) the Stipulated Loss Value (see Schedule) of the affected unit determined as of the rent payment date prior to the Casualty Occurrence; and (ii) all rent and other amounts which are then due under this Agreement on the Payment Date (defined below) for the affected unit. The "Payment Date" for purposes of this Section 8 shall be the next scheduled Rent Payment date after the Casualty Occurrence. Upon payment of all sums due hereunder, the term of the Lease as to such unit shall terminate.

## 9. INSURANCE:

(a) Lessee shall bear the entire risk of any loss, theft, damage to, or destruction of, any unit of Equipment from any cause whatsoever from the time the Equipment is shipped to Lessee.

(b) Lessee shall secure and maintain in effect at its own expense throughout the Term of any Lease of the Equipment, insurance for such amounts and

against such hazards as Lessor may reasonably require. All such policies shall be with companies, and on terms, reasonably satisfactory to Lessor. The insurance shall include coverage for damage to or loss of the Equipment, liability for personal injuries, death or property damage. Lessor shall be named as additional insured with a loss payable clause in favor of Lessor, as its interest may appear, irrespective of any breach of warranty or other act or omission of Lessee. The insurance shall provide for liability coverage in an amount equal to at least ONE MILLION U.S. DOLLARS ($1,000,000.00) total liability per occurrence, unless otherwise stated in any Schedule. The casualty/property damage coverage shall be in an amount equal to the higher of the Stipulated Loss Value or the full replacement cost of the Equipment. No insurance shall be subject to any co-insurance clause. The insurance policies shall provide that the insurance may not be altered or canceled by the insurer until after thirty (30) days written notice to Lessor. Lessee agrees to deliver to Lessor evidence of insurance reasonably satisfactory to Lessor.

(c) Lessee hereby appoints Lessor as Lessee's attorney-in-fact to make proof of loss and claim for insurance, and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with insurance payments. Lessor shall not act as Lessee's attorney-in-fact unless Lessee is in default. Lessee shall pay any reasonable expenses of Lessor in adjusting or collecting insurance. Lessee will not make adjustments with insurers except with respect to claims for damage to any unit of Equipment where the repair costs for such unit of Equipment are the lesser of (x) ten percent (10%) of the Original Equipment Cost (as stipulated in the applicable Schedule for such Equipment), or (y) ten thousand and 00/100 dollars ($10,000). Lessor may, at its option, apply proceeds of insurance, in whole or in part, to (i) repair or replace Equipment or any portion thereof, or (ii) satisfy any obligation of Lessee to Lessor under this Agreement.

## 10. RETURN OF EQUIPMENT:

(a) Upon the expiration or termination of this Agreement or any Lease (including any termination pursuant to Section 17 hereof or any termination occurring after or in connection with an Event of Default hereunder), Lessee shall perform any testing and repairs required to place the units of Equipment in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order for the original intended purpose of the Equipment. If required the units of Equipment shall be deinstalled, disassembled and crated by an authorized manufacturer's representative or such other service person as is reasonably satisfactory to Lessor. Lessee shall remove installed markings that are not necessary for the operation, maintenance or repair of the Equipment. All Equipment will be cleaned, cosmetically acceptable, and in such condition as to be immediately installed into use in a similar environment for which the Equipment was originally intended to be used. All waste material and fluid must be removed from the Equipment and disposed of in accordance with then current waste disposal laws. Lessee shall return the units of Equipment to a location within the continental United States as Lessor shall direct. Lessee shall obtain and pay for a policy of transit insurance for the redelivery period in an amount equal to the replacement value of the Equipment. The transit insurance must name Lessor as the loss payee. Lessee shall pay for all costs to comply with this Section 10.

(b) Until Lessee has fully complied with the requirements of Section 10(a) above, Lessee's rent payment obligation and all other obligations under this Agreement shall continue from month to month notwithstanding any expiration or termination of the lease term. Lessor may terminate Lessee's right to use the Equipment upon ten (10) days notice to Lessee.

(c) Lessee shall provide to Lessor a detailed inventory of all components of the Equipment including model and serial numbers. Lessee shall also provide an up-to-date copy of all other documentation pertaining to the Equipment. All service manuals, blue prints, process flow diagrams, operating manuals, inventory and maintenance records shall be given to Lessor at least ninety (90) days and not more than one hundred twenty (120) days prior to lease termination.

(d) Lessee shall make the Equipment available for on-site operational inspections by potential purchasers at least one hundred twenty (120) days prior to and continuing up to lease termination. Lessor shall provide Lessee with reasonable notice prior to any inspection. Lessee shall provide personnel, power and other requirements necessary to demonstrate electrical, hydraulic and mechanical systems for each item of Equipment.

## 11. DEFAULT AND REMEDIES:

(a) Lessee shall be in default under this Agreement and under any Lease upon the occurrence of any of the following (each an "Event of Default", and collectively, the "Events of Default"):

(i) Lessee fails to pay within ten (10) days after its due date, any Rent or any other amount due under this Agreement or any Lease;
(ii) Lessee breaches any of its insurance obligations under this Agreement or any other Document (as defined in Section 16 hereof);
(iii) Lessee breaches any of its other obligations under any Lease (other than those described in Section 11(a)(i) and (ii) above), and fails to cure that breach within thirty (30) days after written notice from Lessor;
(iv) any representation, warranty or covenant made by Lessee or any guarantor or surety for the obligations under any Lease (each a "Guarantor", and collectively, the "Guarantors") in connection with this Agreement or under any Lease shall be false or misleading;
(v) any Equipment is illegally used;
(vi) Lessee or any Guarantor becomes insolvent or ceases to do business as a going concern;
(vii) if Lessee or any Guarantor is a natural person, any death or incompetency of Lessee or such Guarantor;
(viii) a receiver is appointed for all or of any part of the property of Lessee or any Guarantor, or Lessee or any Guarantor makes any assignment for the benefit of its creditors;
(ix) Lessee or any Guarantor files a petition under any bankruptcy, insolvency or similar law, or in the event an involuntary petition is filed against Lessee or any Guarantor under any bankruptcy or insolvency laws and in the event of an involuntary petition, such petition is not dismissed within forty-five (45) days of the filing date;
(x) Lessee and/or any Guarantor breaches or is in default under any other agreement by and between Lessor (or any of its affiliates or parent entities) on the one hand, and Lessee and/or such Guarantor (or any of their respective parent or affiliates) on the other hand; provided however that any such default under this Section 11(a)(x) is not solely related to a material adverse change in Lessee's financial condition;
(xi) any Guarantor revokes or attempts to revoke its obligations under its guaranty or any related document to which it is a party, or fails to observe or perform any covenant, condition or agreement to be performed under such guaranty or other related document to which it is a party;
(xii) Lessee defaults under any other material obligation for (A) borrowed money, (B) the deferred purchase price of property, or (C) payments due under lease agreements; provided however that any such default under this Section 11(a)(xii) is not solely related to a material adverse change in Lessee's financial condition;
(xiii) there is any dissolution or termination of existence of Lessee or any Guarantor;
(xiv) there is any dissolution, termination of existence, merger, consolidation or change in controlling ownership of Lessee or any Guarantor, or either Lessee or any Guarantor sells or leases all, or substantially all, of its assets;
(xv) there is a material adverse change in Lessee's financial condition as determined solely by Lessor; or
(xvi) Lessee is declared in default under any contract or obligation requiring the payment of money in an original principal amount greater than $50,000.

The default declaration shall apply to all Schedules unless specifically excepted by Lessor.

(b) Upon the occurrence of any Event of Default and so long as the same shall be continuing, Lessor may, at its option, at any time thereafter, exercise one or more of the following remedies set forth in this Section 11, as Lessor in its sole discretion shall lawfully elect. (i) Upon the request of Lessor, Lessee shall immediately comply with the provisions of Section 10((b), (ii) Lessee shall authorize Lessor to peacefully enter any premises where any Equipment may be and take possession of the Equipment, (iii) Lessee shall immediately pay to Lessor without further demand as liquidated damages, for loss of a bargain and not as a penalty, an amount equal to (x) the Stipulated Loss Value of the Equipment (calculated as of the Rent Payment date prior to the declaration of default), plus (y) all Rents and other sums then due under this Agreement, any Lease and all Schedules, (iv) Lessor may terminate the Lease as to any or all of the Equipment, and any termination of Leases shall occur only upon written notice by Lessor to Lessee and only as to the units of Equipment specified in any such notice, (v) Lessor may, but shall not be required to, sell Equipment at private or public sale, in bulk or in parcels, with or without notice, and without having the Equipment present at the place of sale, (vi) Lessor may also, but shall not be required to, lease, otherwise dispose of or keep idle all or part of the Equipment, (vii) Lessor may use Lessee's premises for a reasonable period of time for any or all of the purposes stated above without liability for rent, costs, damages or otherwise, (viii) Lessee shall have the right to apply the proceeds of any sale, lease or other disposition, if any, in the following order of priorities: (1) to pay all of Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of Equipment; then, (2) to the extent not previously paid by Lessee, to pay Lessor all sums due from Lessee under this Agreement; then (3) to reimburse to Lessee any sums previously paid by Lessee as liquidated damages; and (4) any surplus shall be retained by Lessor. Lessee shall immediately pay any deficiency in (1) and (2) above, to the extent any exists, (ix) Lessor shall be entitled to collect from Lessee all costs, charges, and expenses, including actual legal fees and disbursements, incurred by Lessor by reason of any Event of Default under the terms of this Agreement to be a default under any other agreement between Lessor (or any of its affiliates or parent entities), on the one hand, and Lessee and/or Guarantor (or any of their respective affiliates or parent entities), on the other hand, (x) Lessor may proceed by appropriate court action, either by law or in equity, to enforce the performance by Lessee of the applicable covenants of this Agreement and any Lease or to recover damages for breach hereof, and (xi) Lessor may exercise any rights it may have against any security deposit or other collateral pledged to it by Lessee, any Guarantor or any of their respective affiliates or parent entities.

(c) In addition to Lessor's remedies set forth above, any rent or other amount not paid when due shall bear interest, from the due date until paid, at a per annum rate equal to the lesser of eighteen percent (18%) or the maximum rate not prohibited by applicable law (the "Per Diem Interest Rate"). The application of such Per Diem Interest Rate shall not be interpreted or deemed to extend any cure period set forth herein, cure any default or otherwise limit Lessor's rights or remedies hereunder. Notwithstanding anything to the contrary contained in this Agreement or any Schedule, in no event shall this Agreement or any Schedule require the payment or permit the collection of amounts in excess of the maximum permitted by applicable law.

(d) The foregoing remedies are cumulative, and any or all thereof may be exercised instead of or in addition to each other or any remedies at law, in equity, or under any applicable statute, or international treaty, convention or protocol. Lessee waives notice of sale or other disposition (and the time and place thereof), and the manner and place of any advertising. Lessee shall pay Lessor's actual attorney's fees incurred in connection with the enforcement, assertion, defense or preservation of Lessor's rights and remedies under this Agreement, or if prohibited by law, such lesser sum as may be permitted. Waiver of any default shall not be deemed to be a waiver of any other or subsequent default.

(e) Any Event of Default under the terms of this Agreement, any Lease or any other agreement between Lessor and Lessee may be declared by Lessor a default under this Agreement, any Lease and any such other agreement between Lessor and Lessee.

12. ASSIGNMENT: LESSEE SHALL NOT SELL, TRANSFER, ASSIGN, ENCUMBER OR SUBLET ANY EQUIPMENT OR THE INTEREST OF LESSEE IN THE EQUIPMENT WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR. Lessor may, without the consent of Lessee, assign this Agreement, any Schedule or the right to enter into a Schedule. Lessee agrees that if Lessee receives written notice of an assignment from Lessor, Lessee will pay all rent and all other amounts payable under any assigned Schedule to such assignee or as instructed by Lessor. Lessee also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. Lessee hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Lessee has or may at any time have against Lessor for any reason whatsoever.

13. NET LEASE: Any Lease entered into pursuant to the terms and provisions of this Agreement is a net lease. Lessee acknowledges and agrees that its obligations to pay Rent and any and all amounts due and owing in accordance with the terms hereof and under any Schedule shall be absolute and unconditional, and such obligations shall not be released, discharged, waived, reduced, set-off or affected by any circumstances whatsoever, including, without limitation, any damage to or destruction of any Equipment, defects in the Equipment or Lessee no longer can use such Equipment. Lessee further acknowledges that Lessee is not entitled to reduce or set-off against Rent or any other amounts due to Lessor or to any assignee under Section 12, whether or not Lessee's claim arises out of this Agreement, any Lease, any statement by Lessor, Lessor's liability or any Supplier's liability, strict liability, negligence or otherwise. Lessor shall have no obligation, liability or responsibility to Lessee or any other person with respect to the operation, maintenance, repairs, alterations, modifications, correction of faults or defects (whether or not required by applicable law) or insurance with respect to any Equipment, all such matters shall be, as between Lessee and Lessor, the sole responsibility of Lessee, regardless upon whom such responsibilities may fall under applicable law or otherwise, and the Rent payable hereunder has been set in reliance of Lessee's sole responsibility for such aforementioned matters.

14. INDEMNIFICATION:

(a) Lessee hereby agrees to indemnify and save, on a net after-tax basis, Lessor and its affiliates, and all of Lessor's and such affiliates' respective directors, shareholders, officers, employees, agents, employees, predecessors, attorneys-in-fact, lawyers, successors and assigns (each an "Indemnitee") harmless from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including reasonable attorneys' fees and legal expenses, of whatsoever kind and nature and other costs of investigation or defense, including those incurred upon any appeal arising out of or relating to the Equipment, this Agreement or any Lease or any other Document (as defined in Section 16 hereof) (collectively, "Claims") whether in law or equity, or in contract, tort or otherwise.

This indemnity shall include, but is not limited to, Lessor's strict liability in tort or otherwise, including Claims that may be imposed on, incurred by or asserted against an Indemnitee in any way arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this Agreement, and the delivery, lease, sublease, chartering, possession, maintenance, use, non-use, financing, mortgaging, control, insurance, testing, condition, return, sale (including all costs, incurred in making the Equipment ready for sale after the exercise of remedies as a result of an Event of Default), operation or design of the Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark or copyright infringement or environmental damage), any interchanging or pooling of any parts of the Equipment, if applicable; (ii) the condition of Equipment sold or disposed of after use by Lessee, any sublessee or employees of Lessee; (iii) any breach of Lessee's or any Guarantor's representations or obligations under any Lease or any other Document or any guaranty, or the failure by Lessee to comply with any term, provision or covenant contained in a Lease or any other Document or the Equipment or with any applicable law, rule or regulation with respect to the Equipment, or the nonconformity of the Equipment or its operation with any applicable law; (iv) any actions brought against any Indemnitee that arise out of Lessee's or any Guarantor's actions or omissions (or actions or omissions of Lessee's or Guarantor's agents); or (v) reliance by any Indemnitee on any representation or warranty made or deemed made by Lessee or any Guarantor (or any of their officers) under or in connection with any Lease or any other Document, or any report or other information delivered by Lessee or Guarantor pursuant hereto which shall have been incorrect in any material respect when made or deemed made or delivered; provided, that Lessee shall not be obligated to pay and shall have no indemnity liability for any Claims (x) imposed on or against an Indemnitee to the extent that such Claims are caused by the gross negligence or willful misconduct of such Indemnitee, or (y) to the extent imposed with respect to any Claim solely based on

events occurring after the earlier of (A) the expiration or other termination of the Term of any Lease in circumstances not requiring the return of the Equipment and payment in full of all amounts due from Lessee under such Lease and any other Document, and (B) the satisfaction in full by Lessee of all its obligations under Section 10 "Return of Equipment" hereof in respect of any Lease, and the payment in full of all amounts due from Lessee under any Lease and related Documents, except in each case to the extent such Claims result from an exercise of remedies under this Agreement and any Lease following the occurrence of an Event of Default. Lessee shall pay on demand to each Indemnitee any and all amounts necessary to indemnify such Indemnitee from and against any Claims. Lessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing.

(b) Lessee hereby represents, warrants and covenants that (i) on the Lease Commencement Date for any unit of Equipment, such unit will qualify for all of the items of deduction and credit specified in Section C of the applicable Schedule ("Tax Benefits") in the hands of Lessor, and (ii) at no time during the term of this Agreement will Lessee take or omit to take, nor will it permit any sublessee or assignee to take or omit to take, any action (whether or not such act or omission is otherwise permitted by Lessor or by this Agreement), which will result in the disqualification of any Equipment for, or recapture of, all or any portion of such Tax Benefits.

(c) If as a result of a breach of any representation, warranty or covenant of Lessee contained in this Agreement or any Schedule (i) tax counsel of Lessor shall determine that Lessor is not entitled to claim on its Federal income tax return all or any portion of the Tax Benefits with respect to any Equipment, or (ii) any Tax Benefit claimed on the Federal income tax return of Lessor is disallowed or adjusted by the Internal Revenue Service, or (iii) any Tax Benefit is recalculated or recaptured (any determination, disallowance, adjustment, recalculation or recapture being a "Loss"), then Lessee shall pay to Lessor, as an indemnity and as additional rent, an amount that shall, in the reasonable opinion of Lessor, cause Lessor's after-tax economic yields and cash flows to equal the Net Economic Return that would have been realized by Lessor if such Loss had not occurred. Such amount shall be payable upon demand accompanied by a statement describing in reasonable detail such Loss and the computation of such amount. The economic yields and cash flows shall be computed on the same assumptions, including tax rates as were used by Lessor in originally evaluating the transaction ("Net Economic Return"). If an adjustment has been made under Section 3 then the Effective Rate used in the next preceding adjustment shall be substituted.

(d) All references to Lessor in this Section 14 include Lessor and the consolidated taxpayer group of which Lessor is a member. All of Lessor's rights, privileges and indemnities contained in this Section 14 shall survive the expiration or other termination of this Agreement. The rights, privileges and indemnities contained in this Agreement are expressly made for the benefit of, and shall be enforceable by Lessor, its successors and assigns.

15. DISCLAIMER: LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED UNDER THIS AGREEMENT OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by Lessee. Without limiting the foregoing, Lessor shall have no responsibility or liability to Lessee or any other person with respect to any of the following; (i) any liability, loss or damage caused or alleged to be caused directly or indirectly by any Equipment, any inadequacy thereof, any deficiency or defect (latent or otherwise) of the Equipment, or any other circumstance in connection with the Equipment; (ii) the use, operation or performance of any Equipment or any risks relating to it; (iii) any interruption of service, loss of business or anticipated profits or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement or replacement of any Equipment. If, and so long as, no default exists under this Agreement, Lessee shall be, and hereby is, authorized during the Term of any Lease to assert and enforce whatever claims and rights Lessor may have against any Supplier of the Equipment leased hereunder at Lessee's sole cost and expense, in the name of and for the account of Lessor and/or Lessee, as their interests may appear.

16. REPRESENTATIONS, WARRANTIES AND COVENANTS OF LESSEE:

(a) Lessee makes each of the following representations and warranties to Lessor on the date hereof and on the Lease Commencement Date.

(i) Lessee has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "Documents"). Lessee is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction(s) where the Equipment is or is to be located.

(ii) The Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws.

(iii) No approval, consent or withholding of objections is required from any governmental authority or entity with respect to the entry into or performance by Lessee of the Documents except such as have already been obtained.

(iv) The entry into and performance by Lessee of the Documents do not, and will not: (i) violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's organizational documents; or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Lessee is a party.

(v) There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Lessee, which if decided against Lessee will have a material adverse effect on the ability of Lessee to fulfill its obligations under this Agreement.

(vi) Each financial statement delivered to Lessor has been prepared in accordance with generally accepted accounting principles consistently applied. Since the date of the most recent financial statement, there has been no material adverse change.

(vii)     Lessee's exact legal name is as set forth in the first sentence of this Agreement.

(b) Lessee hereby covenants to Lessor that at all times during the Term of any Lease:

(i) The Equipment accepted under any Certificate of Acceptance is and will remain tangible personal property.

(ii) Lessee is and will be at all times validly existing and in good standing under the laws of its state of incorporation or organization (specified in the first sentence of this Agreement).

(iii) The Equipment will at all time be used for commercial or business purposes.

(iv) Lessee shall not consolidate, reorganize or merge with any other corporation or entity, or sell, convey, transfer or lease all or substantially all of its property during the Term of any Lease.

(v) Lessee shall maintain all books and records (including any computerized maintenance records) pertaining to the Equipment during the Term of any Lease in accordance with applicable rules and regulations.

(vi) Lessee is and will remain in full compliance with all laws and regulations applicable to it including, without limitation, (i) ensuring that no person who owns a controlling interest in or otherwise controls Lessee is or shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders, and (ii) compliance with all applicable Bank Secrecy Act ("BSA") laws, regulations and government guidance on BSA compliance and on the prevention and detection of money laundering violations.

## 17. EARLY TERMINATION:

(a) On or after the First Termination Date (specified in the applicable Schedule), Lessee may, so long as no Event of Default (or event or circumstance which with the giving of notice or passage of time or both, would result in an Event of Default) exists and no Casualty Occurrence has occurred, terminate this Agreement as to all (but not less than all) of the Equipment on such Schedule as of a rent payment date ("Termination Date"). Lessee must give Lessor at least ninety (90) days', but no more than one hundred eighty (180) days' prior written notice of the termination.

(b) Lessee shall, and Lessor shall have the right to, solicit cash bids for the Equipment on an AS IS, WHERE IS BASIS without recourse to or warranty from Lessor, express or implied ("AS IS BASIS"). Prior to the Termination Date, Lessee shall (i) certify to Lessor any bids received by Lessee and (ii) pay to Lessor (1) the Termination Value (calculated as of the Rent due on the Termination Date) for the Equipment, and (2) all Rent and other sums due and unpaid as of the Termination Date.

(c) If all amounts due hereunder have been paid on the Termination Date, Lessor shall (i) sell the Equipment on an AS IS BASIS for cash to the highest bidder and (ii) refund the proceeds of such sale (net of any related expenses) to Lessee up to the amount of the Termination Value. If such sale is not consummated, no termination shall occur and Lessor shall refund the Termination Value (less any expenses incurred by Lessor) to Lessee.

(d) Notwithstanding the foregoing, Lessor shall have the right to elect by written notice, at any time prior to the Termination Date, not to sell the Equipment. In that event, on the Termination Date Lessee shall (i) return the Equipment (in accordance with Section 10) and (ii) pay to Lessor an amount equal to the sum of (x) the Termination Value (calculated as of the Termination Date) for the Equipment as required under Section 17(b)(ii)(1) above less the amount of the highest bid certified by Lessee to Lessor, plus (y) all Rent and other amounts due and unpaid as of the Termination Date as required under Section 17(b)(ii)(2) above.

## 18. END OF LEASE PURCHASE OPTION:

(a) On the expiration of any Lease, Lessee may, so long as no Event of Default (or event or circumstance which with the giving of notice or passage of time or both, would result in an Event of Default) exists thereunder, and such Lease has been earlier terminated, purchase all (but not less than all) of the Equipment set forth in any Schedule on an AS IS BASIS for cash equal to its then Fair Market Value (plus all applicable sales taxes). Lessee must notify Lessor of its intent to purchase the Equipment in writing at least one hundred eighty (180) days prior to the expiration date of such Lease. If Lessee is in default, or if the Lease or this Agreement has already been terminated, Lessee may not purchase the Equipment.

(b) "Fair Market Value" shall mean the price that a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell. In determining the Fair Market Value, (i) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under the Lease, (ii) if the Equipment is installed it shall be valued on an installed basis, and (iii) the costs of removal of the Equipment from current location shall not be a deduction from the value of the Equipment. If Lessor and Lessee are unable to agree on the Fair Market Value at least one hundred thirty-five (135) days prior to the expiration of the Lease, Lessor shall appoint an independent appraiser (reasonably acceptable to Lessee) to determine Fair Market Value, at Lessee's sole cost, and such independent appraiser's determination shall be final, binding and conclusive.

(c) Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within fifteen (15) days after Fair Market Value is told to Lessee.

## 19. MISCELLANEOUS:

(a) LESSEE AND LESSOR UNCONDITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN LESSEE AND LESSOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN LESSEE AND LESSOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT. THIS WAIVER IS IRREVOCABLE. THIS WAIVER MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING. THE WAIVER ALSO SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(b) The Equipment shall remain Lessor's property unless Lessee purchases the Equipment from Lessor in accordance with the terms hereof, and until such time Lessee shall only have the right to use the Equipment as a lessee. Any cancellation or termination by Lessor of this Agreement, any Schedule, supplement or amendment hereto, or the lease of any Equipment hereunder shall not release Lessee from any then outstanding obligations to Lessor hereunder. All Equipment shall at all times remain personal property of Lessor even though it may be attached to real property. The Equipment shall not become part of any other property by reason of any installation in, or attachment to, other real or personal property.

(c) Time is of the essence of this Agreement. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right at any other time to demand strict compliance with this Agreement and any Lease. Lessee will promptly, upon Lessor's request and at Lessee's sole cost and expense, execute, or otherwise authenticate, any document, record or instrument necessary or expedient for filing, recording or perfecting the interest of Lessor or to carry out the intent of this Agreement and any Lease (including filings to evidence amendments to this Agreement and any Lease, and acknowledgments of assignments), and will take such further action as Lessor may reasonably request in order to carry out more effectively the intent and purposes of this Agreement and any Lease and to establish Lessor's rights and remedies under this Lease, or otherwise with respect to the Equipment. In addition, Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in any and all Schedules now and hereafter executed pursuant hereto and adding any other collateral described therein and containing any other information required by the applicable Uniform

Commercial Code. Lessee irrevocably grants to Lessor the power to sign Lessee's name and generally to act on behalf of Lessee to execute and file financing statements and other documents pertaining to any or all of the Equipment. Lessee hereby ratifies its prior authorization for Lessor to file financing statements and amendments thereto describing the Equipment and containing any other information required by any applicable law (including without limitation the Uniform Commercial Code) if filed prior to the date hereof. All notices required to be given hereunder shall be deemed adequately given if delivered by hand, or sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have designated in writing. This Agreement and any Schedules and Annexes thereto constitute the entire agreement of the parties with respect to the subject matter hereof. NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS, SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

(d) If Lessee does not comply with any provision of this Agreement, Lessor shall have the right, but shall not be obligated, to effect such compliance, in whole or in part. All reasonable amounts spent and obligations incurred or assumed by Lessor in effecting such compliance shall constitute additional rent due to Lessor. Lessee shall pay the additional rent within five (5) days after the date Lessor sends notice to Lessee requesting payment. Lessor's effecting such compliance shall not be a waiver of Lessee's default.

(e) Any provisions in this Agreement and any Schedule that are in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

(f) Lessee hereby irrevocably authorizes Lessor to adjust the Capitalized Lessor's Cost up or down by no more than ten percent (10%) within each Schedule to account for equipment change orders, equipment returns, invoicing errors, and similar matters. Lessee acknowledges and agrees that the rent shall be adjusted as a result of the change in the Capitalized Lessor's Cost. Lessor shall send Lessee a written notice stating the final Capitalized Lessor's Cost, if it has changed.

(g) THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF CONNECTICUT (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE EQUIPMENT. LESSEE IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF CONNECTICUT TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH (COLLECTIVELY, THE "PROCEEDINGS"), AND LESSEE FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). LESSEE IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. LESSEE ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO LESSOR WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, LESSEE AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH LESSOR MAY BE ENTITLED AT LAW OR IN EQUITY, LESSOR WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, each of Lessee and Lessor shall have the right to apply to a court of competent jurisdiction in the United States or abroad for equitable relief as is necessary to preserve, protect and enforce their rights under this Agreement and any Lease, including but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against Lessee, any Guarantor or the Equipment or to gain possession of the Equipment.

(h) Any cancellation or termination by Lessor, pursuant to the provisions of this Agreement, any Schedule, supplement or amendment hereto, of the lease of any Equipment hereunder, shall not release Lessee from any then outstanding obligations to Lessor hereunder.

(i) To the extent that any Schedule would constitute chattel paper, as such term is defined in the Uniform Commercial Code as in effect in any applicable jurisdiction, no security interest therein may be created through the transfer or possession of this Agreement in and of itself without the transfer or possession of the original of a Schedule executed pursuant to this Agreement and incorporating this Agreement by reference; and no security interest in this Agreement and a Schedule may be created by the transfer or possession of any counterpart of the Schedule other than the original thereof, which shall be identified as the document marked "Original" and all other counterparts shall be marked "Duplicate".

(j) This Agreement and any amendments, waivers, consents or supplements hereto or in connection herewith may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document. Delivery of an executed signature page of this Agreement or any delivery contemplated hereby by facsimile transmission shall be as effective as delivery of a manually executed counterpart thereof.

(k) Each party hereto agrees to keep confidential, the terms and provisions of the Documents and the transactions contemplated hereby and thereby (collectively, the "Transactions"); provided that either party may disclose the terms and provisions of the Documents and transactions contemplated hereby and thereby (collectively, "Confidential Information") (i) to its or its controlling entities' employees, officers, directors, agents, consultants, auditors, attorneys and accountants, (ii) if it is reasonably believed by it to be compelled by any court decree, subpoena or other legal or administrative order or process, (iii) on the advice of its counsel, otherwise required by law or necessary or appropriate in connection with any litigation or other proceeding to which it or its affiliates is a party, or (iv) which becomes available to such party from a third party on a non-confidential basis. Notwithstanding the foregoing, the obligations of confidentiality contained herein, as they relate to the Transactions, shall not apply to the federal tax structure or federal tax treatment of the Transactions, and each party hereto (and any employee, representative, or agent of any party hereto) may disclose to any and all persons, without limitation of any kind, the federal tax structure and federal tax treatment of the Transactions. The preceding sentence is intended to cause each Transaction to be treated as not having been offered under conditions of confidentiality for purposes of Section 1.6011-4(b)(3) (or any successor provision) of the Treasury Regulations promulgated under Section 6011 of the Internal Revenue Code of 1986, as amended, and shall be construed in a manner consistent with such purpose. In addition, each party hereto acknowledges that it has no proprietary or exclusive rights to the federal tax structure of the Transactions or any federal tax matter or federal tax idea related to the Transactions.

(l) Lessee hereby acknowledges and agrees that Lessor reserves the right to impose fees or charges for returned checks and certain optional services that Lessor may offer or provide to Lessee during the term of this Agreement. Lessor will notify Lessee the amount of the applicable fee or charge if Lessee requests such optional services. In addition, Lessor may make available to Lessee a schedule of fees or charges for such optional services from time to time or upon demand, provided, however, that such fees and charges are subject to change in Lessor's sole discretion without notice to Lessee.

**IN WITNESS WHEREOF**, Lessee and Lessor have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

LESSOR:
General Electric Capital Corporation
By: _____
Name: Kurt Scheblein
Title: Sr. Risk Analyst

LESSEE:
Chicago Tribune Company
By: _____
Name: MICHAEL D. MARIA
Title: TRANSPORTATION DIRECTOR

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE | PROOF OF CLAIM |
|---|---|
| Name of Debtor: Chicago Trubune Co. | Case Number: 08-13152 |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>GE Capital Corp.<br>c/o Aaron B. Chapin<br>Reed Smith LLP<br>10 S. Wacker Dr., Chicago, IL 60606<br>Telephone number: | Court Claim Number:_____<br>(*If known*)<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

**1. Amount of Claim as of Date Case Filed:** $ 69,443.06 (see attached rider)

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Master Lease Agreement
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

  **3a. Debtor may have scheduled account as:** _____
  (See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:   ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:

Value of Property: $_____   Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed included in secured claim,
if any: $_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

Date: 6/11/09   Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. [signature] Attorney for GE Capital

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B10 (Official Form 10) (12/07) - Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

___DEFINITIONS___     ___INFORMATION___

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)** Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

---

*SUBMITTING PROOF OF CLAIM FORM:*
*Submit original and one (1) copy of proof of claim form with any attachments to the Court at the below address. Do not include this page. To receive acknowledgment of receipt, an additional copy (original + 2 copies) must be provided along with a self-addressed stamped envelope.*

U.S. Bankruptcy Court, District of Delaware
ATTN: Claims
824 Market Street, 3rd Floor
Wilmington, DE 19801

# ReedSmith

**Aaron B. Chapin**
Direct Phone: +1 312 207 2452
Email: achapin@reedsmith.com

Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
+1 312 207 1000
Fax +1 312 207 6400
reedsmith.com

June 11, 2009

**Via Overnight Mail**

Tribune Company Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, Third Floor
New York, NY 10017

      Re:    **In re Tribune Company - Case No. 08-13141 (Bankr. D. Del)**

Dear Sir/Madam:

Please find the enclosed two proofs of claim to be filed in the above referenced bankruptcy case on behalf of creditor General Electric Capital Corporation. Once filed, please return the file stamped copy of each of the claims to the attention of the undersigned in the enclosed postage-paid, self-addressed envelope. Please direct all questions to the undersigned.

Thank you very much for your attention to this matter.

Very truly yours,

*[signature]*

Aaron B. Chapin

Enclosures

ABC/rrm

US_ACTIVE-101777268.1

NEW YORK ♦ LONDON ♦ HONG KONG ♦ CHICAGO ♦ WASHINGTON, D.C. ♦ BEIJING ♦ PARIS ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ PHILADELPHIA ♦ PITTSBURGH
OAKLAND ♦ MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ SILICON VALLEY ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE

https://www.campusship.ups.com/cship/create?ActionOriginPair=print... Printer... 06/11/2009

**UPS CampusShip: View/Print Label**

1. **Print the label(s):** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the dotted line.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**

   **Customers without a Daily Pickup**
   o Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   o Hand the package to any UPS driver in your area.
   o Take your package to any location of The UPS Store®, UPS Drop Box, UPS Customer Center, UPS Alliances (Office Depot® or Staples®) or Authorized Shipping Outlet near you. Items sent via UPS Return Services℠ (including via Ground) are also accepted at Drop Boxes.
   o To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.

   **Customers with a Daily Pickup**
   o Your driver will pickup your shipment(s) as usual.

FOLD HERE

SHIP TO:
CICIURA, JESSICA L.
(312) 651-1624
C/O EPIQ BANKRUPTCY SOLUTIONS, LLC
(312) 207-1000
TRIBUNE COMPANY CLAIMS PROCESSING
THIRD FLOOR
757 THIRD AVENUE
NEW YORK NY 10017-2072

2 LBS       1 OF 1

NY 100 7-02

UPS NEXT DAY AIR       1
TRACKING #: 1Z 615 140 01 9899 2523

BILLING: P/P

Client / Matter / Attorney Number: 515998/00115/009545

CS 11.1.05.    WNTE70 06.0A 04/2009

REED SMITH LLP - CHICAGO
10 SOUTH WACKER DRIVE
CHICAGO IL 60606