## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Hearing Date: July 30, 2013 at 2:00 p.m. ET**<br>**Response Deadline: July 23, 2013 at 4:00 p.m. ET** |

## REORGANIZED DEBTORS' OBJECTION TO CLAIM NO. 2540 OF PETER BOHM PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007

The reorganized debtors in the above-captioned chapter 11 cases (collectively, the

"Reorganized Debtors"), by and through their undersigned counsel, hereby file this objection

(the "Objection") to Claim No. 2540 filed against KTLA Inc. ("KTLA") by Peter Bohm (the

"Bohm Claim"), on the basis that KTLA has no liability for the employment-related benefits

payments sought by such claim.  A copy of the Bohm Claim is attached hereto as Exhibit A.

This Objection is submitted pursuant to sections 502(b) and 558 of title 11 of the

United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068).  The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  By this Objection, the Reorganized

Debtors request entry of an order disallowing and expunging the Bohm Claim in its entirety, as

indicated in further detail below, on the following grounds:

(i)     Mr. Bohm was compensated for all vacation, holidays, sick days, personal days, and/or bereavement leave ("Employee Benefit Days") that he earned during the periods he was actively working for KTLA;

(ii)    Mr. Bohm did not earn any Employee Benefit Days during his two leaves of absence in 2004-2006 and 2006-2010, which encompass nearly the entirety of the time period covered by the Bohm Claim;

(iii)   Mr. Bohm was not eligible to receive short-term disability benefits during his 2004-2006 leave of absence (and his demand for amounts due on account thereof were omitted in subsequent communications to KTLA);

(iv)    Even if Mr. Bohm has a valid claim for the employment-related benefits payments sought in the Bohm Claim (which he does not), there is no basis for his request of $6,680.30 in interest on such claim (and his demand for amounts due on account thereof were omitted in subsequent communications to KTLA); and

(v)     Mr. Bohm waived and released all claims against KTLA (other than for vacation benefits, as to which no amounts were due), for consideration, pursuant to that certain separation agreement entered into by Mr. Bohm and KTLA on April 21, 2010 (the "Separation Agreement").

In support of the Objection, the Reorganized Debtors submit the Declaration of

Barbara Lopez-Nash, Regional Human Resources Director for KTLA (the "Lopez-Nash

Declaration"), a copy of which is attached hereto as Exhibit B.  In further support of the

Objection, the Reorganized Debtors respectfully state as follows:

### STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), Tribune Company and certain

of its affiliates, including KTLA (collectively, the "Debtors") each filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  (Docket Nos. 43, 2333.)

2.      On July 23, 2012, the Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization (the "Plan") for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Docket No. 12074).[2]

3.      The Effective Date of the Plan occurred on December 31, 2012.[3]

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007.

## BACKGROUND CONCERNING THE BOHM CLAIM

### A.    The Bohm Claim

5.      Mr. Bohm filed the Bohm Claim against KTLA on May 7, 2009 in the amount of $93,560.89.[4]  (See Ex. A at 1.)  The Bohm Claim seeks payment from KTLA for employment-related benefits allegedly earned by Mr. Bohm during the years 2003 through 2009.  (Id. at 2-11.)  Specifically, Mr. Bohm seeks payments for (i) short-term disability benefits that he

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[3] The Plan provides that one or more Debtors may undertake Restructuring Transactions on, prior to, or after the Effective Date, which may include, without limitation, mergers, consolidations, conversions, joint ventures, restructurings, recapitalizations, dispositions, liquidations or dissolutions.  See Plan §5.2, Ex. 5.2 and Docket No. 12732.  KTLA, LLC became the successor-in-interest to KTLA on the Effective Date, as a consequence of the Restructuring Transactions.

[4] As set forth in the chart below, based on KTLA's calculations of the component amounts requested in the Bohm Claim, the aggregate amount sought by Mr. Bohm is actually $93,561.31.

46429/0001-9663645V1

was allegedly entitled to receive during a leave of absence taken by Mr. Bohm from February

2004 through January 2006 (id. at 2); (ii) vacation, holidays, sick days, and personal days

allegedly earned but not taken by Mr. Bohm in the years 2003-2009 (including while he was on

leaves of absence from February 12, 2004 through January 17, 2006 and July 3, 2006 through

February 28, 2010) (id. at 2-3); and (iii) 5 days of bereavement leave that was allegedly taken by

Mr. Bohm in March 2004 (i.e., while he was on a leave of absence) (id. at 4).  In addition, Mr.

Bohm asserts that he is entitled to $6,680.30 in interest on the foregoing amounts.  (Id. at 4.)  The

Bohm Claim asserts $10,950 as being entitled to priority under section 507(a)(4) of the

Bankruptcy Code and the balance as a general unsecured claim.  (Id. at 1.)[5]

      6.     A summary of the payments requested by Mr. Bohm in the Bohm Claim,

by category, is as follows:

| Benefit Category | Amount[6] | Description |
|---|---|---|
| short-term disability | $28,049.19 | 26 weeks of short-term disability benefits during 2004-2006 leave of absence |
| Employee Benefit Days | $58,831.82 | Employee Benefit Days (vacation, holidays, sick leave, and personal days allegedly earned but not taken for each of the years 2003-2009 and bereavement leave allegedly taken but not paid in March 2004 while on leave of absence) |
| interest | $6,680.30 | |
| **Total** | **$93,561.31** | |

Mr. Bohm asserts that he is entitled to receive payments from KTLA on account of those

benefits pursuant to the IATSE/KTLA Television Contract,[7] the collective bargaining agreement

---

[5] KTLA disputes in this Objection that *any* amounts are due to Mr. Bohm, and therefore no amounts were earned by Mr. Bohm within 180 days of the Petition Date that would be entitled to priority treatment pursuant to section 507(a)(4) of the Bankruptcy Code.  Even if Mr. Bohm did have a valid claim, KTLA disputes that $10,950 of such claim relates to amounts earned by Mr. Bohm within 180 days of the Petition Date.

[6] The amounts for vacation, holidays, sick days, and personal days are allegedly calculated based on an hourly rate of $35.96 and a corresponding daily rate of $287.68.  (Ex. A at 3.)  Because KTLA disputes in this Objection that *any* amounts are due to Mr. Bohm, KTLA hereby reserves its rights to dispute Mr. Bohm's calculations in the event that further proceedings are required.

[7] "IATSE" refers to the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists

relating to his employment, and KTLA's employee benefits manual (the "Benefits Manual").  In

addition to the IATSE/KTLA Television Contract and Benefits Manual, extracts of which are

attached to the Bohm Claim (see Ex. A at 6-11), Tribune Company's Short Term Disability

Policy for California (the "STD Policy"), which applies to employees of KTLA, is also relevant

to the Bohm Claim.  A copy of the STD Policy is attached hereto as Exhibit C.

**B.**     **Mr. Bohm's Employment History Relevant to the Bohm Claim**

7.     Mr. Bohm began his employment with KTLA as an audio engineer on

October 29, 1997.  (See Lopez-Nash Decl. ¶ 4.)  Mr. Bohm was classified as a "daily call"

employee from his hire date through February 11, 2001,[8] at which time Mr. Bohm was promoted

to a full-time employee, with benefits.  (Id.)  Mr. Bohm remained classified as a full-time

employee until his separation from KTLA on February 28, 2010.  (Id.)

8.     KTLA has reviewed its records pertaining to Mr. Bohm's employment

with KTLA from 2003 through 2010.  (See Lopez-Nash Decl. ¶ 5.)  During all relevant periods

covered by the Bohm Claim, short-term disability leave and Employee Benefit Days were

tracked manually by KTLA in separate "banks" and were assigned category codes that appeared

on an employee's earnings records, in addition to the hours for regular time and overtime worked

by the employee.  (Id.)  Copies of Mr. Bohm's earnings records from the years 2003 through

2010 are attached hereto as Exhibits D-1 through D-8 and an analysis of those records as they

pertain to the Bohm Claim is provided in the Lopez-Nash Declaration at ¶ 5.

---

and Allied Crafts of the United States, Its Territories and Canada.

[8] During the time in which Mr. Bohm was classified as a "daily call" employee, he worked as needed by KTLA and was subject to a separate IATSE/KTLA contract applicable to daily call employees.

46429/0001-9663645V1

**C.**    **KTLA Policies and Contract Provisions Relevant to the Bohm Claim**

    **a)  Employee Benefit Days**

        9.      Vacation is considered a vested benefit.  (Lopez-Nash Decl. ¶ 7.)  Section 4.12(b) of the IATSE/KTLA Television Contract provides that "Regular employees who complete one (1) to three (3) years of service shall receive two (2) weeks of vacation in the following calendar year."  (See Ex. A at 9 (extract of IATSE/KTLA Television Contract)).  The "regular employees" to whom this vacation policy applies are full-time employees, which in Mr. Bohm's case was as of February 2001, and the "years of service" for purposes of calculating the number of vacation days to which Mr. Bohm was entitled are based on that date (and not on his original hire date in 1997, when he was classified as a daily call employee).  (See Lopez-Nash Decl. ¶ 7.)  By contrast, holidays, sick days, personal days, and bereavement leave are not considered vested benefits and KTLA generally does not pay out any amounts to employees for any earned but unused days off in those categories.  (Id.)  The one exception applies to situations where an employee is required to work on certain designated holidays.  In such cases, KTLA compensates employees for their earned holiday, by what is referred to by KTLA as a "holiday payback."  (Id.)  Employee Benefit Days do not carry over to subsequent periods.  (Id.; see also Ex. C at 6 (providing that "In no event can unused sick days, personal days, or holidays be carried over from one year to the next.")).[9]

    **b)  Leaves of Absence**

        10.     Generally, when a KTLA employee takes a leave of absence (whether short-term disability leave, long-term disability leave, workers' compensation leave, or otherwise), they do not receive their regular pay.  (Lopez-Nash Decl. ¶ 8; see also Ex. A at 10

---

[9] The STD Policy, at 6, provides that vacation benefits earned by an employee prior to taking a leave of absence covered by short-term disability benefits or long-term disability benefits are not forfeited and can be carried over to a subsequent period.

(extract of IATSE/KTLA Television Contract Section 4.14, providing that: "The employee shall not receive pay during the leave of absence.")) Instead, KTLA provides benefits equal to all or a portion of an eligible employee's pay under the short-term disability program, long-term disability program, and/or workers' compensation program, as applicable. (Lopez-Nash Decl. ¶ 8.) Short-term disability benefits are not automatic; an employee must apply for such benefits and submit a medical certification concerning the disability. (Id.; see also Ex. C.)

11.     KTLA's employees do not continue to earn Employee Benefit Days while they are on a leave of absence and not working. (Lopez-Nash Decl. ¶ 9; see also Ex. C at 3 (providing that "While you are on STD, whether during the paid or unpaid portion of STD, you will not be paid for any Company holidays or personal days. If you are still certified as disabled but are no longer eligible for STD pay, you will be required to use your remaining sick and personal days, if any."); Ex. C at 6 (providing that "You cannot receive vacation benefits if you are already receiving STD benefits. You may, however, use vacation, sick and personal days if you are out on STD but are not eligible for STD benefits.").

**D.     The Separation Agreement**

12.     On April 21, 2010, after the Bohm Claim was filed, Mr. Bohm and KTLA entered into the Separation Agreement, pursuant to which Mr. Bohm resigned from his employment with KTLA effective on February 28, 2010. (See Lopez-Nash Decl. ¶ 11.) A copy of the Separation Agreement is attached hereto as Exhibit E. Under the terms of the Separation Agreement, KTLA paid Mr. Bohm a separation payment and obtained from Mr. Bohm a broad release of claims, including, inter alia, any and all claims "arising out of or in any way connected to his … employment with the Company, the termination of his employment with the Company, including, without limitation, short-term and long-term disability, or advance notice of termination, or any other claim whatsoever to the date on which he signs this Agreement." (Ex.

7

E at 2.)  Paragraph 3 of the Separation Agreement carved out vacation benefits from the otherwise-applicable waiver and release of claims, providing that "[e]arned but unused vacation as of the Separation Date, if any, will be paid to Mr. Bohm separate and apart from this Agreement and will not be contingent on signing this Agreement."  (Ex. E at 1.)  The Separation Agreement stated in conspicuous type that "Mr. Bohm understands and agrees that, other than claims that cannot be waived by law and the workers' compensation claim that is being settled pursuant to [a separate compromise and release], he is waiving and releasing any and all claims against [KTLA] to the date of this Agreement in exchange for consideration to which he is not otherwise entitled."  (Ex. E at 2-3.)

**E.     The Subsequent Demand Letter**

13.     On or about July 16, 2010, Mr. Bohm sent a letter to Ms. Lopez-Nash asserting that he was due $67,450.08 on account of earned but unused Employee Benefit Days as of the date of his separation from KTLA (the "Subsequent Demand Letter").  (See Lopez-Nash Decl. ¶ 12.)  A copy of the Subsequent Demand Letter (with notations made by KTLA) is attached hereto as Exhibit F.  The categories of compensation included therein include vacation days, holidays, personal days, and sick days.  (See Ex. F.)  The Subsequent Demand Letter omits any claims for short-term disability leave benefits, bereavement leave, or interest.  (Id.)  The time period purportedly covered by the Subsequent Demand Letter includes the years 2003 through 2010, i.e., one more year than the Bohm Claim.  (Id.)

14.     A comparison of the amounts asserted in the Bohm Claim and in the Subsequent Demand Letter, by category, is as follows:

| Benefit Category | Amount in Bohm Claim | Amount in Subsequent Demand Letter[10] | Description |
|---|---|---|---|
| short-term disability | $28,049.19 | $0.00 | Omitted |
| Employee Benefit Days | $58,831.82 | $67,449.20 | Employee Benefit Days (vacation, holidays, sick leave, and personal days allegedly earned but not taken for each of the years 2003-2010 (with bereavement leave omitted)) |
| interest | $6,680.30 | $0.00 | Omitted |
| **Total** | **$93,561.31** | **$67,449.20** | |

Mr. Bohm did not formally amend the Bohm Claim to reflect the revised amounts asserted in the Subsequent Demand Letter. Solely for purposes of this Objection, the Reorganized Debtors treat the Subsequent Demand Letter as an informal amendment to the Bohm Claim.[11]

15.    On July 22, 2010, Ms. Lopez-Nash responded to the Subsequent Demand Letter (the "Response Letter"), a copy of which is attached hereto as Exhibit G, in which she disputed that any further amounts were due from KTLA to Mr. Bohm. (Lopez-Nash Decl. ¶ 10; see also Ex. G.)[12] The parties have not had any further communications regarding the Bohm Claim since that time.

## RELIEF REQUESTED

16.    By this Objection, the Debtors seek entry of an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007 disallowing

---

[10] The amounts for vacation, holidays, sick days, and personal days are calculated based on an hourly rate of $38.15 and a corresponding daily rate of $305.20, which rates are greater than the rates used to calculate the Bohm Claim. Because KTLA disputes in this Objection that *any* amounts are due to Mr. Bohm, KTLA hereby reserves its rights to dispute Mr. Bohm's calculations in the event that further proceedings are required.

[11] The substance of the Reorganized Debtors' objection to the Bohm Claim remains the same regardless of whether the amounts sought therein are treated as having been amended by the Subsequent Demand Letter.

[12] The Response Letter further states that KTLA experienced a computer error in 2009 that resulted in Mr. Bohm being credited with 80 regular-time hours, which he did not in fact work, and for which he was paid $2,232.75 in error. (Lopez-Nash Decl. ¶ 12; see also Ex. G.) Mr. Bohm did not return that amount to KTLA at KTLA's request. (Lopez-Nash Decl. ¶ 12.) KTLA hereby reserves all of its rights with respect to the recovery of that amount from Mr. Bohm (including by offset in the event this Objection is for any reason not sustained).

in full and expunging the Bohm Claim in its entirety on the basis that no employee benefits are

due and owing from KTLA to Mr. Bohm.  The Debtors also seek an order authorizing the Claims

Agent to expunge the Bohm Claim from the claims register so that the claims register accurately

reflects the claims outstanding against the Debtors' estates.

## BASIS FOR OBJECTION

17.    A "claim" for bankruptcy purposes means a "right to payment", whether

or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.  11 U.S.C. § 101(5).

18.    Section 502(b) of the Bankruptcy Code provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a
> hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the
> petition, and shall allow such claim in such amount, except to the
> extent that—
> > (1)    such claim is unenforceable against the debtor and
> > property of the debtor, under any agreement or applicable
> > law for a reason other than because such claim is
> > contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).  Section 502(b)(1) recognizes the settled principle that "[c]reditors'

entitlements in bankruptcy arise in the first instance from the underlying substantive law creating

the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy

Code." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450-51 (2007)

(citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)).  A claim against the bankruptcy

estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be

enforceable against the debtor outside of bankruptcy."  In re Combustion Eng'g, Inc., 391 F.3d

190, 245 (3d Cir. 2004).  In proceedings to determine whether a claim is enforceable against the

estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any

entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other

10

personal defenses" pursuant to section 558 of the Bankruptcy Code.  See 11 U.S.C. § 558.  Here, the Bohm Claim must be disallowed and expunged because there is no "right to payment" that can be asserted by Mr. Bohm.

19.       Based on its analysis of KTLA's corporate policies, the terms of the IATSE/KTLA Television Contract, the provisions of the Benefits Manual, the STD Policy, and Mr. Bohm's earnings records, KTLA has determined that Mr. Bohm was compensated for all Employee Benefit Days that he earned during the periods covered by the Bohm Claim in which he was actively working for KTLA (i.e., (i) the entirety of 2003, (ii) January 1, 2004 through February 11, 2004, and (iii) January 18, 2006 through July 2, 2006).  KTLA has further determined that Mr. Bohm was not eligible to earn or be compensated for any Employee Benefit Days during his two leaves of absence from KTLA in which he was not actively working, which encompassed nearly the full time period covered by the Bohm Claim (i.e., (i) February 12, 2004 through January 17, 2006 and (ii) July 3, 2006 through February 28, 2010, the date of his separation from KTLA).  In addition, Mr. Bohm was not eligible to receive short-term disability benefits during his 2004-2006 leave of absence, which was instead covered by a workers' compensation claim.  Accordingly, and as described in greater detail below, no further amounts are due and owing to Mr. Bohm and the Bohm Claim should be disallowed and expunged.

### c) Mr. Bohm Was Compensated For All Employee Benefit Days That He Earned And Used During The Periods He Was Actively Working For KTLA

20.       During the year 2003 and the limited portions of years 2004 and 2006 in which Mr. Bohm worked, KTLA's records demonstrate that Mr. Bohm was compensated for all of the Employee Benefit Days that Mr. Bohm earned and used.  Specifically, KTLA's 2003 earnings records for Mr. Bohm shows that he worked throughout the year.  (Lopez-Nash Decl.

11

¶ 5; Ex. D-1.) Mr. Bohm was compensated for 80 hours of vacation pay,[13] 37.75 hours of

holiday pay, 72 hours of "holiday paybacks", and 32 hours of sick pay. (Id.) The apparent

contention made in the Bohm Claim that Mr. Bohm either was not properly compensated for the

Employee Benefit Days he used in 2003, or was entitled to compensation for any unused

Employee Benefit Days (in addition to the compensation he received for working those days),

finds no support in Mr. Bohm's earnings records, the IATSE/KTLA Television Contract, or the

Benefits Manual. The $8,199.00 requested in the Bohm Claim attributable to 2003 is

accordingly not recoverable.

      21.    KTLA's records show that in 2004, Mr. Bohm worked from

approximately January 1 through February 12. (Lopez-Nash Decl. ¶ 5; Ex. D-2 (showing 376

hours worked)). Mr. Bohm was compensated for 8 hours of sick leave and earned 1 vacation day

for the period he worked in 2004 (pro-rated based on seniority and hours worked). (Id.)

Thereafter, Mr. Bohm took a leave of absence – covered by workers' compensation – which

lasted until January 17, 2006. (Lopez-Nash Decl. ¶¶ 5, 10.) In 2006, KTLA's records show that

Mr. Bohm worked from approximately January 17 through June 21, when he took a sick leave.

(Lopez-Nash Decl. ¶ 5; Ex. D-4 (showing 768 hours worked in 2006)). Beginning on July 3,

2006, Mr. Bohm took a second leave of absence – covered by short-term disability benefits –

which lasted until his separation from KTLA in 2010. (Lopez-Nash Decl. ¶ 5.) Mr. Bohm

earned 7.5 vacation days for the period he worked in 2006 (pro-rated based on seniority and

---

[13] Mr. Bohm is incorrect that he was entitled to 15 days of vacation for 2003. Section 4.12(b) of the IATSE/KTLA Television Contract provides that "[e]mployees who complete one (1) to three (3) years of service shall receive two (2) weeks [i.e., 10 days] of vacation in the following calendar year." (See Ex. A at 9.) Mr. Bohm's employment status was "full time with benefits" as of February 2001, and his "years of service" for purposes of calculating the number of vacation days to which he was entitled are based on that date (and not on his original hire date in 1997, when he was classified as a daily call employee). (See Lopez-Nash Decl. ¶ 7.) Based on his level of seniority, Mr. Bohm was entitled to 10 days of vacation and was compensated for those days. (See Ex. D-1 (showing compensation for 80 hours of vacation)).

hours worked) and took 9 vacation days. (Id.) Mr. Bohm was compensated for 40 hours of sick leave, 66 hours of vacation, 8 hours of holiday, and 8 hours of personal leave in 2006. (Lopez-Nash Decl. ¶ 5; Ex. D-4.)

22.    In 2007, Mr. Bohm communicated to KTLA that he believed he was entitled to receive compensation for certain vacation and holiday benefits that he earned in 2004 and 2006. (Lopez-Nash Decl. ¶ 6.) On March 27, 2007, Ms. Lopez-Nash sent Mr. Bohm a letter by fax (the "March 27, 2007 Letter"), a copy of which is attached hereto as Exhibit H, in which she confirmed that Mr. Bohm had earned 1 vacation day in 2004 and 2 "holiday paybacks" in 2006 for which he had not been paid, but that he took 1.5 vacation days more than he had earned in 2006. (See Ex. H at 2.) KTLA offset the 3 days' pay earned by Mr. Bohm in 2004 and 2006 (i.e., 1 day of vacation plus 2 holiday paybacks) against the 1.5 days of vacation taken in excess of what was earned in 2006 and processed a payment to Mr. Bohm equal to 1.5 days' pay. (See Lopez-Nash Decl. ¶ 6; Ex. H at 2; see also Ex. D-5 (showing payment for 4 hours of vacation and 8 hours of holiday payback in 2007)). Mr. Bohm accepted this payment.[14] (See Lopez-Nash Decl. ¶ 6.)

23.    Accordingly, and based on the facts that KTLA does not pay out any amounts to employees for unused Employee Benefit Days (other than vacation and holiday paybacks, which have already been paid to Mr. Bohm to the extent applicable) and that Employee Benefit Days do not carry over to subsequent periods, Mr. Bohm is not entitled to receive any further compensation for the periods covered by the Bohm Claim in which he was actively working, and any requests in the Bohm Claim related to those periods should be denied.

---

[14] KTLA has no contemporaneous records that suggest that Mr. Bohm believed any additional amounts were outstanding for the years 2003-2007 at the time the March 27, 2007 Letter was sent to him. (See Lopez-Nash Decl. ¶ 6.)

46429/0001-9663645V1

### d) Mr. Bohm Did Not Earn Any Employee Benefit Days During His Two Leaves Of Absence

24.     Much of the Bohm Claim relates to compensation for Employee Benefit Days that Mr. Bohm alleges he earned while he was on leaves of absence in 2004-2006 and 2006-2010.  (See Ex. A at 2-4; Lopez-Nash Decl. ¶ 5; Ex. D-2 (showing 376 hours worked in 2004, for which Mr. Bohm was compensated as described above), Ex. D-3 (showing 0 hours worked in 2005), Ex. D-4 (showing 768 hours worked in 2006, for which Mr. Bohm was compensated as described above), Ex. D-5 (showing 0 hours worked in 2007), Ex. D-6 (showing 0 hours worked in 2008), Ex. D-7 (showing 80 hours worked in 2009, coded and paid in error),[15] and Ex. D-8 (showing 0 hours worked in 2010)).  To the extent Mr. Bohm is seeking payment for Employee Benefit Days allegedly earned when he was out of work on his two disability leaves of absence, those requests should be denied.

25.     As stated above, KTLA's employees do not continue to earn Employee Benefit Days while they are on a leave of absence and not working.  For example, with respect to vacation, the STD Policy is clear that employees "cannot receive vacation benefits if [they] are already receiving STD benefits."  (See Ex. C at 6.)  Mr. Bohm's contract also provides that vacation benefits accrue based on hours worked by an employee, and Mr. Bohm worked no hours during the periods when he was on leaves of absence.  (See Ex. A at 9 (extract of IATSE/KTLA Television Contract Section 4.12(c), providing that "[a]ny employee leaving KTLA payroll before taking vacation shall receive pro rata payment *for that portion of the year worked.*") (emphasis added)).  With respect to the bereavement leave allegedly taken by Mr. Bohm in March 2004, that is not a vested benefit for which he would be entitled to receive any compensation over and above the workers' compensation benefits that he was receiving while on

---

[15] See footnote 12, supra.

46429/0001-9663645V1

leave at the time.  With respect to all other categories of Employee Benefit Days, nothing in the

IATSE/KTLA Television Contract, the Benefits Manual, or the STD Policy provides for an

employee to earn or be compensated for Employee Benefit Days while on a leave of absence

from the company, and Mr. Bohm has identified no such contractual or policy provision.  To the

contrary, the STD Policy provides that while an employee is on a leave of absence, "whether

during the paid or unpaid portion of STD, [they] will not be paid for any Company holidays or

personal days."  (See Ex. C at 3.)

### e)  Mr. Bohm Was Not Eligible To Receive Short-Term Disability Benefits During His 2004-2006 Leave Of Absence

26.     The Bohm Claim seeks $28,049.19 in short-term disability leave benefits

allegedly attributable to Mr. Bohm's 2004-2006 leave of absence.  That leave of absence was

covered by a workers' compensation claim, for which Mr. Bohm received benefit payments.

(Lopez-Nash Decl. ¶ 10.)  As stated in the Benefits Manual and the STD Policy, KTLA's short-

term disability leave program applies to employees with a medically-certified short-term

disability.  (See Ex. A at 6; Ex. C at 1-4.)  KTLA's records do not reflect that Mr. Bohm applied

for short-term disability benefits (with supporting medical certification) to supplement or replace

the workers' compensation payments he received during his 2004-2006 leave of absence.[16]

(Lopez-Nash Decl. ¶ 10.)  Therefore, he was only entitled to receive workers' compensation

benefits, and not short-term disability benefits.  Moreover, in accordance with the terms of the

Separation Agreement, Mr. Bohm expressly waived and released any claims for short-term

disability benefits.  (See Ex. E at 2-3.)  The waiver and release of Mr. Bohm's claim for short-

---

[16] Section 5.05(b) of the IATSE/KTLA Television Contract provides that "[u]pon the utilization of all previously-accumulated sick leave, … an employee covered by this Agreement will be provided benefits under the same terms and conditions as those applicable to the Employer's non-represented employees for medically-certified short-term disability."  (See Ex. A at 8.)  As described in ¶ 21, supra, Mr. Bohm was compensated for 40 hours of earned sick leave prior to taking his short-term disability leave of absence in 2006.

46429/0001-9663645V1

term disability benefits is consistent with the Subsequent Demand Letter, which omits any claim

for short-term disability benefits.  (See Ex. F.)

   **f)  Mr. Bohm Is Not Entitled To Interest On Any Amounts Asserted In The Bohm
        Claim**

   27.    There is no basis for Mr. Bohm's request for $6,680.30 in interest on his

claim, under his contract, the Benefits Manual, or otherwise, and Mr. Bohm has not identified

any basis for that request.  The Subsequent Demand Letter omits any claim for interest, which

suggests that Mr. Bohm is no longer seeking that amount in connection with the Bohm Claim.

(See Ex. F.)[17]

   **g)  Mr. Bohm Waived And Released All Claims Against KTLA (Other Than For
        Vacation Benefits, As To Which No Amounts Were Due), For Consideration,
        Pursuant To The Separation Agreement**

   28.    Finally, for consideration given to Mr. Bohm in the form of a separation

payment, KTLA obtained a full waiver and release of any and all claims arising out of or in any

way connected to Mr. Bohm's employment with KTLA, other than a workers' compensation

claim that was addressed by a separate agreement and vested vacation benefits, if any, that were

preserved in paragraph 3 of the Separation Agreement.  The claims that were waived and

released by Mr. Bohm include, without limitation, the amounts sought in the Bohm Claim for

short-term disability leave, holidays, sick days, personal days, and bereavement leave.  The

Separation Agreement was entered into by the parties having full knowledge of the

compensation and benefits claims asserted by Mr. Bohm in the Bohm Claim.

   29.    Mr. Bohm's statement in the Subsequent Demand Letter that paragraph 3

of the Separation Agreement provides that KTLA would pay Mr. Bohm for "*off-time*" accrued

but not used as of the date of his separation is incorrect.  (See Ex. F.)  Rather, paragraph 3 carves

---

[17] In addition, section 7.4 of the Plan and section 502(b)(2) of the Bankruptcy Code generally bar post-petition
interest on unsecured claims.

16

out only earned but unused *vacation* from the broad waiver and release of claims.  (See Ex. E at 1.)  The distinction is significant because, according to KTLA's stated policy, only accrued but unused vacation is considered a vested benefit that is paid to an employee upon the employee's separation from the company.  (See Ex. A at 9 (extract of IATSE/KTLA Television Contract Section 4.12(c), providing that "[a]ny employee leaving KTLA payroll before taking vacation shall receive pro rata payment for that portion of the year worked."))  Neither the IATSE/KTLA Television Contract nor the Benefit Manual provides that any other category of Employee Benefit Days is entitled to the same treatment.  Accordingly, the Separation Agreement is dispositive of all demands made by Mr. Bohm in the Bohm Claim other than for vacation benefits.  All amounts asserted to be due to Mr. Bohm in the Bohm Claim on account of short-term disability leave, holidays, sick days, personal days, and bereavement leave, totaling $56.674.19 in the aggregate, plus the $6,680.30 sought for interest, must be disallowed as having been waived and released pursuant to the Separation Agreement.  Moreover, as described above in detail, at the time of his separation from KTLA in February 2010, Mr. Bohm had no outstanding earned but unused vacation days that fell under the ambit of paragraph 3 of the Separation Agreement.

        30.     For the foregoing reasons, KTLA respectfully urges the Court to disallow and expunge the Bohm Claim in its entirety.

## NOTICE

        31.     Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) Mr. Bohm; and (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Reorganized Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

32.     No previous application for the relief sought herein has been made to this

Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Reorganized Debtors

respectfully request that the Court enter an Order in the form submitted herewith, pursuant to

section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, (i)

disallowing and expunging the Bohm Claim in its entirety; (ii) authorizing the Claims Agent to

expunge the Bohm Claim from the Claims Register; and (iii) granting such other and further

relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      June 27, 2013

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR REORGANIZED DEBTORS

46429/0001-9663645V1