# EXHIBIT B

## Lopez-Nash Declaration

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |

## DECLARATION OF BARBARA LOPEZ-NASH IN SUPPORT OF REORGANIZED DEBTORS' OBJECTION TO CLAIM NO. 2540 OF PETER BOHM

I, Barbara Lopez-Nash, declare as follows:

33.  I am Regional Human Resources Director for KTLA, LLC (successor-in-interest to KTLA Inc. ("KTLA")), one of the reorganized debtors in the above-captioned chapter 11 cases (collectively, the "Reorganized Debtors"). In this position, I am responsible for the implementation, management, and oversight of KTLA's employment-related policies and programs.[2]

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] I also served as Regional Human Resources Director for KTLA prior to its emergence from these chapter 11 cases on December 31, 2012, the effective date (the "Effective Date") of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of

46429/0001-9663645V1

34. I have read the Reorganized Debtors' Objection to Claim No. 2540 of Peter Bohm Pursuant to Sections 502(b) and 558 of the Bankruptcy Code, and Bankruptcy Rules 3001, 3003 and 3007 (the "Objection")[3] and am directly, or by and through the Reorganized Debtors' personnel and advisors, familiar with the information contained therein and in all exhibits attached thereto, including the Bohm Claim. I am also familiar with the IATSE/KTLA Television Contract,[4] the collective bargaining agreement that related to Mr. Bohm's employment, and KTLA's employee benefits manual (the "Benefits Manual") (extracts of which are attached to the Bohm Claim), and Tribune Company's Short Term Disability Policy for California (the "STD Policy") (a true and correct copy of which is attached to the Objection as Exhibit C), which applies to employees of KTLA. I am authorized to submit this declaration (the "Declaration") in support of the Objection.

35. All matters set forth in this Declaration are based on: (a) my personal knowledge, (b) information supplied to me by the Reorganized Debtors' personnel, and (c) as to matters involving United States bankruptcy law or rules or other applicable laws, my reliance on the advice of counsel or other advisors to the Reorganized Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

a. **Mr. Bohm's Employment History Relevant to the Bohm Claim**

36. Mr. Bohm began his employment with KTLA as an audio engineer on October 29, 1997. Mr. Bohm was classified as a "daily call" employee from his hire date

---

Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Plan"), which was confirmed by the Bankruptcy Court on July 23, 2012 (see Docket No. 12074). As used herein, the term "Debtors" refers to Tribune Company and its affiliates, including KTLA, that filed voluntary petitions for relief under chapter 11 on December 8, 2008, and "Reorganized Debtors" refers to the successors to the Debtors following their emergence from chapter 11.

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Objection.

[4] "IATSE" refers to the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, Its Territories and Canada.

46429/0001-9663645V1

through February 11, 2001,[5] at which time Mr. Bohm was promoted to a full-time employee, with benefits. Mr. Bohm remained classified as a full-time employee until his separation from KTLA on February 28, 2010.

        37. I have reviewed KTLA's records pertaining to Mr. Bohm's employment with KTLA from 2003 through 2010. During all relevant periods covered by the Bohm Claim, short-term disability leave and vacation, holidays, sick days, personal days, and bereavement leave ("Employee Benefit Days") were tracked manually by KTLA in separate "banks" and were assigned category codes that appeared on an employee's earnings records, in addition to the hours for regular time and overtime worked by the employee. Based on my review of Mr. Bohm's earnings records (true and correct copies of which are attached to the Objection as Exhibits D-1 through D-8), Mr. Bohm's employment and compensation history for the years 2003 through 2010 can be summarized as follows:

    2003: KTLA's records show that Mr. Bohm worked throughout 2003. (See Ex. D-1.) Mr. Bohm's 2003 earnings records show that he was compensated for 80 hours of vacation pay (coded as "SVP"), 72 hours of holiday paybacks (coded as "HTO"), 32 hours of sick pay (coded as "SSP"), and 37.75 hours of holiday pay (coded as "HPO"). (Id.)

    2004-2005: KTLA's records show that in 2004, Mr. Bohm worked from approximately January 1 through February 12. (See Ex. D-2 (showing 376 hours worked)). Mr. Bohm was compensated for 8 hours of sick leave (coded as "SSP"). (Id.) Thereafter, Mr. Bohm took a leave of absence which lasted until January 17, 2006. Mr. Bohm earned 1 vacation day for the period he worked in 2004 (pro-rated based on seniority and hours worked) and did not earn any vacation days or other paid days off for the remainder of 2004 or for 2005 while he remained out on short-term disability leave. (See Ex. D-3 (showing 0 hours worked in 2005)).

    2006: KTLA's records show that in 2006, Mr. Bohm worked from approximately January 17 through June 21, when he took a sick leave. (See Ex. D-4 (showing 768 hours worked in 2006)). Beginning on July 3, 2006, Mr. Bohm took a short-term disability leave of absence, which lasted until his separation from KTLA in 2010. Mr. Bohm earned 7.5 vacation days for the period he worked in 2006 (pro-rated) and KTLA's records show that he took 9 vacation days. Mr. Bohm was compensated for 40 hours of sick leave

---

[5] During the time that Mr. Bohm was classified as a "daily call" employee, he worked as required by KTLA and was subject to a separate IATSE/KTLA contract applicable to daily call employees.

(coded as "SSP"), 66 hours of vacation (coded as "SVP"), 8 hours of holiday (coded as "HTO"), and 8 hours of personal leave (coded as "HPO"). (See Ex. D-4.) Mr. Bohm did not earn any pay or Employee Benefit Days for the remainder of 2006 while he remained out on short-term disability leave.

2007-2010: Mr. Bohm did not earn any vacation days or other paid days off for the years 2007 through 2010 while he remained out on short-term disability leave. (See Ex. D-5 (showing 0 hours worked in 2007), Ex. D-6 (showing 0 hours worked in 2008), Ex. D-7 (showing 80 hours worked in 2009, coded and paid in error), Ex. D-8 (showing 0 hours worked in 2010)).

38. In 2007, Mr. Bohm communicated to KTLA that he believed he was entitled to receive compensation for certain vacation and holiday benefits that he earned in 2004 and 2006. On March 27, 2007, I sent Mr. Bohm a letter by fax (the "March 27, 2007 Letter"), a true and correct copy of which is attached to the Objection as Exhibit H, in which I confirmed that Mr. Bohm had earned 1 vacation day in 2004 and 2 "holiday paybacks" in 2006 for which he had not been paid, but that he took 1.5 vacation days more than he had earned in 2006. (See Ex. H at 2.) KTLA offset the 3 days' pay earned by Mr. Bohm in 2004 and 2006 (i.e., 1 day of vacation plus 2 holiday paybacks) against the 1.5 days of vacation taken in excess of what was earned in 2006 and processed a payment to Mr. Bohm equal to 1.5 days' pay. (See Ex. D-5 (showing payment for 4 hours of vacation and 8 hours of holiday payback in 2007)). Mr. Bohm accepted this payment. KTLA has no contemporaneous records that suggest that Mr. Bohm believed any additional amounts were outstanding for the years 2003-2007 at the time the March 27, 2007 Letter was sent to him.

b. **KTLA Policies and Contract Provisions Relevant to the Bohm Claim**

(vi) Employee Benefit Days

39. Vacation is considered a vested benefit. Section 4.12(b) of the IATSE/KTLA Television Contract provides that "[e]mployees who complete one (1) to three (3) years of service shall receive two (2) weeks of vacation in the following calendar year." The

"regular employees" to whom this vacation policy applies are full-time employees, which in Mr. Bohm's case was as of February 2001, and the "years of service" for purposes of calculating the number of vacation days to which Mr. Bohm was entitled are based on that date (and not on his original hire date in 1997, when he was classified as a daily call employee). By contrast, holidays, sick days, personal days, and bereavement leave are not considered vested benefits and KTLA generally does not pay out any amounts to employees for any earned but unused days off in those categories. The one exception applies to situations where an employee is required to work on certain designated holidays. In such cases, KTLA compensates employees for their earned holiday, by what is referred to by KTLA as a "holiday payback." Employee Benefit Days do not carry over to subsequent periods. (See Ex. C at 6 (providing that "In no event can unused sick days, personal days, or holidays be carried over from one year to the next.")).[6]

(vii)    Leaves of Absence

40.    Generally, when a KTLA employee takes a leave of absence (whether short-term disability leave, long-term disability leave, workers' compensation leave, or otherwise), they do not receive their regular pay. Instead, KTLA provides benefits equal to all or a portion of an eligible employee's pay under the short-term disability program, long-term disability program, and/or workers' compensation program, as applicable. Short-term disability benefits are not automatic; an employee must apply for such benefits and submit a medical certification concerning the disability. (See Ex. C.)

41.    KTLA's employees do not continue to earn Employee Benefit Days while they are on a leave of absence and not working. (See Ex. C at 3 (providing that "While you are on STD, whether during the paid or unpaid portion of STD, you will not be paid for any

---

[6] The STD Policy, at 6, provides that vacation benefits earned by an employee prior to taking a leave of absence covered by short-term disability benefits or long-term disability benefits are not forfeited and can be carried over to a subsequent period.

Company holidays or personal days. If you are still certified as disabled but are no longer eligible for STD pay, you will be required to use your remaining sick and personal days, if any."); Ex. C at 6 (providing that "You cannot receive vacation benefits if you are already receiving STD benefits. You may, however, use vacation, sick and personal days if you are out on STD but are not eligible for STD benefits.").

42. Mr. Bohm's 2004-2006 leave of absence was covered by a workers' compensation claim, for which Mr. Bohm received benefit payments. KTLA's records do not reflect that Mr. Bohm applied for short-term disability benefits (with supporting medical certification) to supplement or replace the workers' compensation payments he received during his 2004-2006 leave of absence.

(viii)    The Separation Agreement

43. On April 21, 2010, after the Bohm Claim was filed, Mr. Bohm and KTLA entered into the Separation Agreement, pursuant to which Mr. Bohm resigned from his employment with KTLA effective on February 28, 2010. A true and correct copy of the Separation Agreement is attached to the Objection as <u>Exhibit E</u>.

(ix) The Subsequent Demand Letter

44. On or about July 16, 2010, Mr. Bohm sent a letter to me asserting that he was due $67,450.08 on account of earned but unused Employee Benefit Days as of the date of his separation from KTLA (the "<u>Subsequent Demand Letter</u>"). A true and correct copy of the Subsequent Demand Letter is attached to the Objection as <u>Exhibit F</u>. On July 22, 2010, I responded to the Subsequent Demand Letter (the "<u>Response Letter</u>"), in which I disputed that any further amounts were due from KTLA to Mr. Bohm. A true and correct copy of the Response Letter is attached to the Objection as <u>Exhibit G</u>. The Response Letter further states that KTLA experienced a computer error in 2009 that resulted in Mr. Bohm being credited with

80 regular-time hours, which he did not in fact work, and for which he was paid $2,232.75 in error. Mr. Bohm did not return that amount to KTLA at KTLA's request. I have not had any further communications with Mr. Bohm since that time.

        45. Based on its analysis of KTLA's corporate policies, the terms of the IATSE/KTLA Television Contract, the provisions of the Benefits Manual, and Mr. Bohm's earnings records, KTLA has determined, and I agree, that Mr. Bohm was compensated for all Employee Benefit Days that he earned during the periods covered by the Bohm Claim in which he was actively working for KTLA (i.e., (i) the entirety of 2003, (ii) January 1, 2004 through February 11, 2004, and (iii) January 18, 2006 through July 2, 2006). KTLA has further determined, and I agree, that Mr. Bohm was not eligible to earn or be compensated for any Employee Benefit Days during his two leaves of absence from KTLA in which he was not actively working, which encompassed nearly the full time period covered by the Bohm Claim (i.e., (i) February 12, 2004 through January 17, 2006 and (ii) July 3, 2006 through February 28, 2010, the date of his separation from KTLA). In addition, Mr. Bohm was not eligible to receive short-term disability benefits during his 2004-2006 leave of absence, which was instead covered by a workers' compensation claim. For the foregoing reasons, KTLA respectfully urges the Court to disallow and expunge the Bohm Claim in its entirety.

        [Remainder of Page Intentionally Left Blank]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26 day of June 2013.

_____
By: Barbara Lopez-Nash

8

CH1 7775079v.1