**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Ref. Docket No. 13545** |

**REORGANIZED DEBTORS' OBJECTION TO THE MOTION OF THE LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR FOR RELIEF FROM THE PERMANENT INJUNCTION OF THE FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO GORDON & CO., L.P. AND JPMORGAN CHASE BANK, N.A., AS AMENDED JUNE 18, 2012**

The reorganized debtors in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the *Motion of the Los Angeles County Treasurer and Tax Collector for Relief from the Permanent Injunction of the Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official*

[1] The Reorganized Debtors, or successors-in-interest to the Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

*Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P. and JPMorgan Chase Bank, N.A., as Amended June 18, 2012* [Docket No. 13545] (the "Motion"). By the Motion, the Los Angeles County Treasurer and Tax Collector (the "County") states that it seeks relief from the Discharge Injunction (as defined below) obtained by the Debtors[2] in their confirmed Fourth Amended Joint Plan of Reorganization (the "Plan") so that it may exercise any non-bankruptcy rights it has relating to certain real property owned by Los Angeles Times Communications LLC (the "L.A. Times"), a Debtor and Reorganized Debtor in these chapter 11 cases. In support of this Objection, the Debtors submit the *Declaration of Steven Casey in Support of Reorganized Debtors' Objection to the Motion of the Los Angeles County Treasurer and Tax Collector for Relief from the Permanent Injunction of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A., as Amended June 18, 2012*, attached hereto as Exhibit A (the "Casey Declaration"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Motion should be denied for three reasons. First, the County has no allowed secured claim against the L.A. Times, as it failed to file a proof of claim in the L.A. Times's bankruptcy case (or any of the Debtors' bankruptcy cases) despite indisputable notice of the bar date and the requirement to file such a claim. Second, even if the County could overcome that hurdle, its claim is at base an impermissible attempt to impose a penalty on the L.A. Times for the L.A. Times's inability to make a postpetition payment on account of a

[2] As used herein, the term "Debtors" refers to Tribune Company and its affiliates that filed voluntary petitions for relief under chapter 11 on December 8, 2008 (the "Petition Date"), and "Reorganized Debtors" refers to the successors to the Debtors following their emergence from these chapter 11 cases on December 31, 2012, the effective date of the Debtors' plan of reorganization.

prepetition tax liability. Nothing in the Bankruptcy Code permits a taxing authority to collect penalties on account of a debtor's inability to make a postpetition payment of a prepetition liability, nor does the County make any credible showing to the contrary. Lastly, the County demonstrates no cause why it should be permitted relief from the Discharge Injunction. The County has no interest that must be adequately protected nearly a year after entry of the order confirming the Plan and more than six months after the effective date of the Plan, and its time to challenge the applicability of the Discharge Injunction is long past. Moreover, all of the County's legal bases for asserting any claim against the L.A. Times fail. The Debtors request that the Court deny the Motion and affirm that the Discharge Injunction bars any attempt by the County to take any actions against the Debtors or their properties aimed at collecting any prepetition tax obligations or penalties or interest relating thereto.

## RELEVANT BACKGROUND

### A. Commencement of the Debtors' Bankruptcy Cases, Confirmation of the Plan and the Discharge Injunction

2. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). An additional Debtor, Tribune CNLBC, LLC,[3] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.

3. The Debtors' chapter 11 cases were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 43, 2333].

4. On July 23, 2012, the Court entered the *Order Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by*

---

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

*the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.* [Docket No. 12074] (the "Confirmation Order"). On December 31, 2012 (the "Effective Date"), the Plan became effective and the Debtors emerged from bankruptcy.

5. The Plan provides, in relevant part, that "[a]s of the Effective Date . . . the distributions and rights afforded under this Plan and the treatment of Claims and Interests under this Plan shall be in exchange for, and in complete discharge of, all Claims against the Debtors . . . ." Plan Art. 11.1.1. The Confirmation Order approves and incorporates the foregoing discharge provision. See Confirmation Order at 27.

6. The Plan and Confirmation Order also provide, in relevant part, that "as of the Effective Date, all Persons that hold, have held, or may hold a Claim or other debt or liability that is discharged . . . are permanently enjoined from taking any of the following actions on account of, on or on the basis of, such discharged Claims, debts or liabilities . . . (i) commencing or continuing any action or other proceeding against the Debtors, the Reorganized Debtors or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Debtors, the Reorganized Debtors or their respective property; (iii) creating, perfecting or enforcing any Lien or encumbrance against the Debtors, the Reorganized Debtors or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Debtors, the Reorganized Debtors or their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of this Plan . . . ." Plan Art. 11.1.2; Confirmation Order at 29 (the "Discharge Injunction").

**B. Payment of the Property Taxes**

7. The taxes at issue in the Motion arise out of the County's prepetition relationship with the L.A. Times. Specifically, the taxes relate to thirteen real estate parcels located in Los Angeles County, and are for the fiscal period from July 1, 2008 to June 30, 2009. The assessment date and the lien date related to the real property taxes owing on the parcels is January 1, 2008. The first installment for payment of the taxes was due on November 1, 2008; however, as discussed below, payments would not be considered untimely until after December 10, 2008, which was after the Petition Date.

8. An explanatory chart depicting each property location, the timing of installment due dates, the timing of installment delinquency dates, and the timing of attempted payments and successful payments is attached hereto as Exhibit B. As can be seen thereon, the Motion is simply incorrect and misleading regarding the timing of relevant due dates and the timing of related late penalties. For example, the Motion and the supporting Sandoz Declaration suggest that late penalties were due and payable on December 10, 2007. (See Motion ¶ 2; Sandoz Declaration ¶ 2.) That is not true. The first installment payment on each parcel became due and payable on November 1, 2008. Casey Declaration ¶ 4. None of these installments would have been considered delinquent under applicable non-bankruptcy law until after December 10, 2008, two days after the Petition Date. Prior to the Petition Date, on December 4, 2008, the Debtors scheduled the payments for a December 10, 2008 settlement date using the California Automated Property Tax Payment Service.[4] Id. ¶ 6.

9. On the Petition Date, because of the commencement of these chapter 11 cases, the Debtors' prepetition bank accounts were frozen to prevent the inadvertent or

[4] The process of receiving internal authorization within the L.A. Times to schedule a particular tax payment is usually initiated a few weeks before the payment's due date. Upon receipt of the requisite approvals, the payment is then scheduled to be made on, or within a few days of, the due date. Casey Declaration ¶ 6 n.3.

unauthorized payment of prepetition liabilities. The Debtors obtained certain "first-day" relief from this Court on December 10, 2008, which relief permitted the Debtors to pay certain prepetition tax obligations, among other things. Specifically, the Court entered (i) the *Order (I) Approving Cash Management Systems, (II) Authorizing Use of Prepetition Bank Accounts and Business Forms, (III) Waiving the Requirements of 11 U.S.C. §345(b) on an Interim Basis, and (IV) Granting Administrative Expense Status to Postpetition Intercompany Transactions* [Docket No. 56] (the "Cash Management Order"), which allowed, in part, the Debtors to continue use of their prepetition bank accounts, and (ii) the *Order Authorizing, But Not Directing The Payment of Certain Prepetition Sales, Use, Franchise and Property Taxes, Licensing Fees, and Similar Obligations* [Docket No. 49] (the "Tax Order") which, in part, authorized, but not directed, the Debtors to pay certain prepetition taxes up to a Court-imposed cap.

10. As discussed above, on the date the Tax Order was entered, December 10, 2008, an electronic funds transfer ("EFT") to pay each of the thirteen installments to the County was scheduled to occur. Because the Debtors' bank accounts were not yet unfrozen, the L.A. Times was later informed that the EFT was not successful. On February 10, 2009, the L.A. Times reissued the installment payments, however, the County began accruing penalties and interest after the first unsuccessful EFT, even though the first installment was not delinquent until after the Petition Date. Casey Declaration ¶ 6. On April 9, 2009, the L.A. Times timely paid the second installment on each of the thirteen parcels without penalties or interest. Id. As set forth in the Motion, the County accepted this payment; however, it appears to have applied the payment first to the postpetition penalties and interest, and then has applied the balance to the principal amount of the tax obligation.[5] Id.

---

[5] The Motion also references a reassessment in 2010. After the Petition Date, the County reassessed the July 1, 2007 to June 30, 2008 tax bill for certain properties because of a prepetition change in ownership occurring in April 2008.

**C. Schedules, Bar Date and the County's Failure to File a Proof of Claim**

11. On March 23, 2009, the L.A. Times filed its *Schedules of Assets and Liabilities* [Docket No. 583] (the "Schedules"). The County was listed on Schedule E, at two addresses, as having an unsecured priority claim. The County's claims were identified on the Schedules as "unliquidated."

12. On March 25, 2009, the Court entered the *Order Pursuant to Sections 501, 502, and 1111(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3), and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 813] (the "Bar Date Order"). The Bar Date Order established June 12, 2009 as the bar date (the "Bar Date") for filing proofs of claim in the Debtors' cases. As is customary, the Bar Date Order listed categories of claimants that did not need to file proofs of claim. However, those claimants whose claims were scheduled thereon as "disputed," "contingent," or "unliquidated" were required to file a proof of claim. (See Bar Date Order at 3-4.)

13. Accordingly, because the County's claim was explicitly scheduled as "unliquidated," the County needed to file a proof of claim to assert or preserve the claim for property taxes (and/or related penalties and interest) that is the subject of the Motion. The Bar Date Order is clear regarding the consequences of failing to timely file a proof of claim. (See Bar Date Order at 6-7) ("any person or entity that is required to file a timely Proof of Claim in the form and manner specified by this Order and who fails to do so on or before the date associated with such claim shall not be treated as a creditor in these chapter 11 proceedings and therefore, shall not be permitted to (i) vote on any plan of reorganization or plan of liquidation or

---

The first installments for such reassessments were due (but not delinquent) on May 31, 2009. The L.A. Times paid such installments via EFT on May 28, 2009. The second installment was due (but not delinquent) on September 30, 2009, and currently remains unpaid. Casey Declaration ¶ 6 n.4.

(ii) receive any distribution under any confirmed plan."). The County did not file a proof of claim on account of the taxes.

**D. The County's Automatic Stay Violations and the Debtors' Numerous Attempts to Reach the County**

14. In September 2010, the County sent a statement to the L.A. Times assessing penalties for the late payment of the property taxes. On September 23, 2010, bankruptcy counsel to the L.A. Times sent a certified letter (the "2010 Letter") to the County, a copy of which is attached hereto as Exhibit C (without enclosures). The 2010 Letter advised the County that (i) the County's underlying tax claims are pre-bankruptcy claims that are subject to the automatic stay imposed by section 362 of the Bankruptcy Code, (ii) the County is prohibited by law from imposing penalties for non-payment of pre-bankruptcy claims as a result of the L.A. Times's bankruptcy filing, (iii) the underlying tax liabilities were later paid, minus unlawfully-imposed penalties, pursuant to the Tax Order, and (iv) the County improperly applied the payment made by the L.A. Times on account of the tax liabilities. In addition, the L.A. Times advised the County that notwithstanding numerous prior notices to the County of the L.A. Times's bankruptcy filing, the County failed to file a timely proof of claim with the Bankruptcy Court on account of the amounts it believed were owed by the L.A. Times. Finally, the L.A. Times reminded the County that its actions were in violation of the automatic stay. The County never responded to the 2010 Letter. Casey Declaration ¶ 8.

15. On June 11, 2011, local tax counsel to the L.A. Times sent another letter (the "2011 Letter") to the County, a copy of which is attached hereto as Exhibit D (without enclosures). The 2011 Letter reminded the County that federal law prohibits the imposition of penalties during a bankruptcy case, and that a response to the 2010 Letter was never received. Casey Declaration ¶ 8.

16. Despite receiving the 2010 Letter and the 2011 Letter and without the County having responded to either, in August 2012, the County sent the L.A. Times certain *Notices of Power to Sell Tax-Defaulted Property* (the "Sale Notices"). Upon receipt of the Sale Notices, on September 5, 2012, the Debtors' bankruptcy counsel promptly sent a third letter (the "2012 Letter") to multiple contacts at the County, a copy of which is attached hereto as Exhibit E (without enclosures). The 2012 Letter (i) again reminded the County of the Debtors' chapter 11 filing and the automatic stay, (ii) explained in detail the 2010 Letter and provided another copy thereof, (iii) explained that the Debtors filed the Plan and that the Court entered the Confirmation Order, (iv) stated that the Effective Date of the Plan was forthcoming, (v) explained that the Plan discharged all pre-Effective Date claims, debts and interests and enjoined collection actions, (vi) reminded the County of its repeated violations of the automatic stay and (vii) informed the County that, in the event of any further collection efforts from the County, the L.A. Times reserved its rights to seek relief from the Court, including, but not limited to, seeking the repayment of the L.A. Times's costs in dealing with this matter.[6]

17. On December 18, 2012, after years of continued automatic stay violations by the County and attempts by the Debtors' counsel to contact the County, the County's counsel sent a letter to the Debtors' bankruptcy counsel in response to the 2012 Letter, a copy of which is attached hereto as Exhibit F. Counsel to each of the parties thereafter discussed the matter on several occasions without any resolution. Finally, the County filed the Motion on May 21, 2013.[7]

---

[6] The Debtors continue to reserve any and all rights to seek reimbursement of all costs and expenses, including without limitation, legal fees, incurred in connection with this matter.

[7] Remarkably, the County states that "[d]espite efforts by counsel for the County to resolve these issues with counsel for the Debtors, the Debtors have not responded to such efforts . . ." and that "continued delay [in satisfying the claims] is both unnecessary and prejudicial to the County and its residents." Motion ¶ 19. Given the Debtors' above-discussed letter campaign, lasting greater than two years, and repeated efforts to reach the County, all of

## OBJECTION

**A. The County Did Not File a Proof of Claim on Account of the Taxes and is Barred from Seeking Recoveries from the L.A. Times or Maintaining a Lien on the L.A. Times's Property**

18. The Motion fails, first and foremost, because the County failed to file a proof of claim against the L.A. Times for the taxes (and/or associated penalties or interest) that are the subject of the Motion, and accordingly has no valid claim to assert against the L.A. Times. As evidenced in the *Affidavit of Mailing* [Docket No. 1073] filed on April 22, 2009, the relevant pages of which are attached hereto as Exhibit G, notice of the Bar Date and proof of claim forms were sent to the County. The County did not file a proof of claim against the L.A. Times for the taxes despite having actual notice of the Bar Date. Accordingly, the County has no allowed claim against the L.A. Times.

19. The Motion offers no basis for the County's non-compliance with the Bar Date Order, nor does it even mention that the County never filed a proof of claim for the taxes, despite having been notified of this fact in the 2010 Letter and in the 2012 Letter. Notwithstanding the County's omission of the issue from the Motion, however, the fact remains that the County does not have an allowed tax claim against the L.A. Times, and any efforts by the County to assert any such claim are barred by the Bar Date Order and the Discharge

---

which were ignored, the County's statement is demonstrably untrue.

Injunction.[8] Furthermore, the plain language of the Discharge Injunction requires that the county remove any lien or encumbrance that it currently has on the Debtors' property.[9]

20. The County cannot plausibly assert that it was unaware of the Bar Date. It was served with the Court-mandated notice of the Bar Date and the requirement to file a proof of claim. Notably, the County filed timely proofs of claim for unrelated property taxes assessed against other Debtors, including Tribune Media Services, Inc. and California Community News Corporation (See Proofs of Claim 693 and 768.) This evidences that the County was aware of the Bar Date and the procedures for filing proofs of claim in the chapter 11 cases.[10]

**B. The County is Prohibited from Collecting Postpetition Penalties**

21. Even if this Court were to assume for sake of argument – and against the facts – that the County had a claim at issue in this matter, that claim should be disallowed because it is an attempt to collect postpetition penalties relating to the non-payment of a prepetition obligation. The underlying tax obligations in this matter were unpaid because the Debtors' bank accounts were frozen upon their chapter 11 filing, as is required to prevent the unauthorized or inadvertent payment of prepetition obligations from those accounts. See 11 U.S.C. § 549(a) (allowing the trustee to avoid unauthorized postpetition transfers of property of the estate). The L.A. Times later paid those obligations, once it received Court approval to do

---

[8] As this Court is well aware, a proof of claim may be filed untimely only upon a showing of "excusable neglect" by the party seeking to effect the untimely filing. See Fed. R. Bankr. P. 9006(b) (setting the "excusable neglect" standard); Pioneer Inv. Servs. v. Brunswick Assoc. Ltd., 507 U.S. 380, 395 (1993) (holding that determination of "excusable neglect" is, at bottom, an equitable one, taking account of all relevant circumstances surrounding the party's omission, including the danger of prejudice to the debtor, the reason for the delay, and whether the party acted in good faith). Here, the County has made no showing of any kind as to why it failed to comply with the Bar Date Order, nor does it seek authority to file a late proof of claim.

[9] The Debtors request that any order denying the relief requested in the Motion also mandate the removal of any Lien.

[10] The County's failure to file a proof of claim is entirely consistent with the Debtors' view of the instant matter; namely, that any liability of the L.A. Times for the underlying tax obligations here was fully satisfied by the L.A. Times's February 2009 payment made under the authorization provided by the Tax Order.

so. In the interim, however, the County purportedly assessed postpetition penalties arising from the L.A. Times's statutory inability to make the earlier payment. The County has thereafter elected not to remove the penalties as invalidly assessed, but instead has treated them as paid by the L.A. Times's payment and left a corresponding portion of the underlying tax liability outstanding, and has then assessed additional postpetition penalties and interest thereon. See Motion ¶¶ 4-5. The Debtors' repeated efforts to address this matter with the County were not responded to for years, and only resulted in engagement from the County comparatively recently. As evidenced by the filing of the Motion, those discussions have not resulted in a consensual resolution of the matter.

22. The County cannot validly impose a penalty on a debtor for failing to make a postpetition payment on account of a prepetition liability. Under section 502(b) of the Bankruptcy Code, the bankruptcy court "shall determine the amount of [a] claim in lawful currency of the United States *as of the date of the filing of the petition*..." 11 U.S.C. § 502(b) (emphasis added). Here, that requires a determination of the County's claim – again assuming that it had validly asserted one – as of December 8, 2008. On that date, the County had no right to payment of any interest or penalties from the L.A. Times. It had only a right to payment of the principal amount of the taxes. That amount was paid by the L.A. Times following receipt of this Court's authorization to make such payment in the Tax Order. The County accepted that payment and elected to file no further claim in the Debtors' chapter 11 cases.

23. The applicable case law supports the L.A. Times's position. It is black-letter bankruptcy law that "a debtor's estate is ordinarily not liable for interest and penalties which accrue postpetition on a prepetition tax claim." In re Mike Rose Oil Co., L.P., 1991 WL 110209, *4 (Bankr. W.D. Tenn.) (citing In re Boston and Maine Corp., 719 F.2d 493, 496 (1st

Cir. 1983); In re Snyder Farms, Inc., 83 B.R. 977, 988 (Bankr. N.D. Ind. 1988) and additional cases). The logic here is simple – a debtor should not be penalized for failure to make a payment it is legally barred from making.

24. That logic is consistent with the overall disfavoring of penalties in bankruptcy cases. See In re Klefstad, 92 B.R. 622, 625 (Bankr. W.D. Wis. 1988) ("[p]enalties are not in harmony with the overall philosophy of the Bankruptcy Code which is to effectuate a fair and equitable distribution of the assets of the estate to creditors. A penalty is discordant with this philosophy because it serves the function of preferring one creditor at a detriment to other creditors of the estate."); see also id. at 626 ("penalties assessed on tax deficiencies are punitive and the taxing entity must show otherwise in order to rebut this presumption. When a taxing entity assesses penalties and interest it is unlikely that a compensatory role is provided by both the penalty and the interest.") (internal citations omitted); In re Patco Photo Corp., 82 B.R. 192, 196 (Bankr. E.D.N.Y. 1988) ("It is common to view fines and penalties assessed on tax deficiencies with a presumption they are punitive and the governmental unit needs to show otherwise to rebut the presumption.").

25. Here, the entire claim asserted by the County stems from the County's mistaken imposition of a postpetition penalty on the L.A. Times, and its compounding of that mistake by applying the L.A. Times's payment of its taxes to the penalty instead of the principal and then charging interest on the alleged deficiency. Exhibit A to the Motion shows that the alleged deficiency increased by nearly $60,000 just during the period from September 2010 through December 2012. Nothing in the Bankruptcy Code or logic requires or even permits this result. Indeed, if the County's argument is taken to its logical conclusion, then if this Court had not entered the Tax Order authorizing the L.A. Times to pay the County, the County would have

been authorized to charge penalties (and accrue interest thereon) for the entire duration of the Debtors' chapter 11 cases. This result is absurd and should be rejected by the Court.

26. The County offers nothing to address these arguments. It has not even *attempted* to explain to the Court what legal bases it has, if any, for its efforts to collect postpetition penalties. Instead, the Motion examines at length how interest rates are determined according to nonbankruptcy law as set forth in section 511 of the Bankruptcy Code. See Motion ¶¶ 12-17. That discussion is irrelevant, because section 511 applies only where a provision of the Bankruptcy Code requires the payment of interest on a tax claim. Here, the County has no claim and, even if it did, that claim is for an impermissible penalty. Nothing in section 511 confers any independent right to payment on the County's part.

### C. The County Has Not Established Cause for Relief from the Discharge Injunction

27. Given the County's failure to file a proof of claim and the absence of any proper basis for any claim, the County cannot establish cause for relief from the Discharge Injunction. "The existence of circumstances warranting any modification of [the discharge afforded under] section 524(a)(2) must be clear." In re Gibellino-Schultz, 446 B.R. 733, 740 (Bankr. E.D. Pa. 2011). Here, the County has made no showing that such circumstances exist. The only basis for relief set forth by the County is that it has a secured interest which is not adequately protected. The entire premise for this argument is faulty because the County has *no* interest, secured or otherwise. The County never asserted a secured claim, nor a claim of any kind, against the L.A. Times. Therefore, the County has no interest to adequately protect.

28. The County's argument is also fatally flawed by its untimeliness. The Plan was confirmed nearly a year ago and became effective more than six months ago, following the Debtors' four-year stay in chapter 11. The County had years to argue that it has an interest

that is not adequately protected, but never did so. The County has also cited no example of a case where an adequate protection demand is made after a debtor emerged from bankruptcy. The County's demand for "adequate protection" is instead a demand to seize the L.A. Times's property long after a discharge was granted in order to obtain payment on an invalid claim that was never properly asserted in the first place. This cannot constitute cause for relief from the Discharge Injunction.

29. The Debtors would be greatly prejudiced if the County were given relief from the Discharge Injunction. If the Motion is successful, the L.A. Times will have to either pay baseless penalties and interest amounts that have been rapidly increasing while the County disregarded numerous warnings from the Debtors, or, in the alternative, the L.A. Times will risk having its properties sold in satisfaction of this amount. Additionally, relief from the Discharge Injunction would undercut the Bar Date Order, the Plan, and the Confirmation Order, which are the key documents on which the Reorganized Debtors' fresh start depends. Such prejudice, among many other reasons, supports denying the Motion.

**D. The Discharge Injunction Bars the Seizure and Sale of the Debtors' Property to Satisfy Prepetition Debts**

30. The Debtors reject the County's unsupported assertion in the Motion (at ¶ 9) that the Discharge Injunction does not bar the County from seizing the L.A. Times's property and selling it to satisfy pre-bankruptcy debts. The Discharge Injunction on its face bars all persons from, among other things, commencing or continuing proceedings against any of the Debtors on account of prepetition claims, enforcing any purported liens against any of the Debtors or their property, or commencing or continuing any proceedings that are inconsistent with the Plan. See Plan at 11.1.1 and 11.1.2; Confirmation Order at 27-29; Bankruptcy Code § 524(a) (providing that a chapter 11 discharge "operates as an injunction against the

commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived"). The County points neither to facts nor to law suggesting that the Discharge Injunction did not discharge its claims. Moreover, the County was unquestionably aware of the Discharge Injunction's entry, both from the standard notice provided to parties in interest in the Debtors' chapter 11 cases and from the 2012 Letter drawing the County's attention to it. The Discharge Injunction thus operates to stay the County from any action against the L.A. Times or its property on account of the obligations the County asserts are owed to it in the Motion. The Debtors accordingly request that the order denying the Motion also provide that the Discharge Injunction bars the County's claims and operates to enjoin the County from exercising any non-bankruptcy rights it may claim with respect to the Properties or the claims described in the Motion.

WHEREFORE, for the reasons set forth herein, the Reorganized Debtors respectfully request that the Court (i) deny the Motion in its entirety, (ii) affirm that the Discharge Injunction bars the County's claims and operates to enjoin the County from exercising any non-bankruptcy rights it may claim with respect to the Properties or the claims described in the Motion, and (iii) grant such other and further relief as is just and proper.

Dated: Wilmington, Delaware
July 19, 2013

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Matthew G. Martinez
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: ______________________
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR REORGANIZED DEBTORS