**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | * | Chapter 11 |
| TRIBUNE COMPANY, *et al.*, | * | Case No. 08-13141 (KJC) |
| Debtors. | * | Jointly Administered |
| | * | **Hearing Date:  July 30, 2013 at 2:00 p.m.** |
| | * | |
| | * | **Objection Deadline:  July 23, 2013 at 4:00 p.m.** |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**TRUCK DRIVERS AND HELPERS LOCAL UNION NO. 355 HEALTH &**
**WELFARE FUND AND TRUCK DRIVERS AND HELPERS LOCAL 355**
**RETIREMENT PENSION FUNDS' OBJECTION TO REORGANIZED**
**<u>DEBTORS' OBJECTION TO CLAIMS</u>**

Truck Drivers and Helpers Local Union No. 355 Health & Welfare Fund ("Health

Fund") and Truck Drivers and Helpers Local 355 Retirement Pension Fund ("Pension

Fund") (collectively, the "Funds"), through the undersigned attorneys, file this Objection

to the Reorganized Debtors' Objection to the Claims of the Funds Pursuant to Section

502(b) of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007 in the above-

captioned matter.  ECF No. 13643.[1]  The Funds object to the extent that the Objection

seeks to disallow, release, dismiss, discharge or otherwise extinguish any claims the

Funds have against the Reorganized Debtors.

---

[1] The Reorganized Debtors include The Baltimore Sun Company, LLC ("the Sun").  <u>See</u> Reorganized Debtors' Objection to the Claims of the Funds Pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007 ("Debtors' Objection") at p. 1 n. 1.

# I.  BACKGROUND

**A.**     **The Parties, Related Entities, Collective Bargaining Agreements and Trust Agreements.**

   **1.**     **Truck Drivers, Helpers, Taxicab Drivers, Garage Employees and Airport Employees (Teamsters) Local Union No. 355.**

Truck Drivers, Helpers, Taxicab Drivers, Garage Employees and Airport Employees (Teamsters) Local Union No. 355 ("Local 355" or the "Union") is a labor organization that represents employees in certain industries operating in parts of Maryland, Delaware and Virginia.  Affidavit of Denis J. Taylor ("Taylor Aff."), attached hereto as Exhibit 1, at ¶ 2.  The Union serves as the bargaining agent for certain employees concerning those employees' wages, hours, and other terms and conditions of employment.  Taylor Aff. at ¶ 5.  It engages in collective bargaining with employers, and administers and enforces collective bargaining agreements to which is it a party.  Taylor Aff. at ¶ 5.  Through its history, Local 355 has negotiated and been a party to over a thousand collective bargaining agreements with hundreds of employers.  Taylor Aff. at ¶ 5.  Presently, Local 355 is a party to collective bargaining agreements with some seventy-five employers.  Taylor Aff. at ¶ 5.

   **2.**     **Local 355's Bargaining Relationship With The Baltimore Sun.**

Local 355 and the Sun—a news publisher—have maintained a collective bargaining relationship since the early 1950s.  Debtors' Objection at ¶ 10.  They have been parties to more than twenty separately negotiated collective bargaining agreements ("CBAs").  Debtors' Objection at ¶ 10.

The bargaining unit covered by the CBAs comprises principally employees working as drivers and dispatchers.  Taylor Aff. at ¶ 6.  Though they perform different

work, under the CBAs all members of the bargaining unit have historically been paid an

established normal hourly wage, as opposed to payment based on miles driven, product

handled, or other method.  Taylor Aff. at ¶ 6.

Pursuant to provisions of the CBAs, the Sun has continuously made contributions

to the Fund on behalf of covered employees since the early 1960s.  Debtors' Objection at

¶ 11.

**3.    The CBAs' Overtime Wage Rate Provisions.**

For the time period relevant to this matter, each of the CBAs has contained

materially identical language requiring the Sun to pay employees an overtime wage rate

for work performed beyond certain hours in a single day, or beyond certain hours during

a single work week.  Taylor Aff. at ¶ 7.  With certain exceptions detailed in the CBAs, for

employees who are assigned a five-day work week, pay at an overtime wage rate is

required when such employees work either more than (1) 7-1/2 hours in one day, or

(2) 37-1/2 hours in one work week.  Taylor Aff. at ¶ 7; CBA effective 4/18/03 –

12/31/07, excerpt attached hereto as Exhibit 2, at p. 5-6.  Similarly, with certain

exceptions, for employees who are assigned a four-day work week, pay at an overtime

wage rate is required when such employees work either more than (1) 9-1/2 hours in one

day, or (2) 38 hours in one work week.  Taylor Aff. at ¶ 7; Exhibit 2 at p. 5-6.

**4.    The Health Fund.**

The Health Fund has been in existence since the early 1950s.  Affidavit of David

A. White Sr. ("White Aff."), attached hereto as Exhibit 3, at ¶ 4.  The Health Fund is an

employee health benefit plan that exists for the purpose of providing health and welfare

benefits to participants.  White Aff. at ¶ 4.  Participants in the Health Fund are employees

or former employees of employers that, through a collective bargaining relationship with Local 355, are obligated to pay contributions to the Health Fund.  White Aff. at ¶ 4.

The Health Fund is an "employee welfare benefit plan" as defined in the Employee Retirement Income Security Act of 1974 ("ERISA").  See 29 U.S.C. § 1002(1).  The Health Fund is a multiemployer Taft-Hartley trust fund established for the sole and exclusive benefit of employees of contributing employers and their families and dependents.  White Aff. at ¶ 5.  See also 29 U.S.C. § 186(c)(5) (authorizing the establishment of employee benefits funds such as the Health Fund).  It is administered by a joint board of trustees composed of equal numbers of management and union representatives.  White Aff. at ¶ 5.  The Health Fund collects monies from contributing employers, as specified in collective bargaining agreements and the Health Fund's governing trust agreement, and uses those monies to furnish health and welfare benefits to participants and their eligible beneficiaries.  White Aff. at ¶ 5.  The trustees are fiduciaries of the Health Fund, and are required to discharge their duties solely in the interest of the participants and beneficiaries.  See 29 U.S.C. §§ 1102-1104.

**5.      The Pension Fund.**

The Pension Fund has been in existence since the late 1950s.  White Aff. at ¶ 6. The Pension Fund is a multiemployer employee retirement benefit plan that exists for the purpose of providing post-employment income to participants and designated beneficiaries.  White Aff. at ¶ 6.  Participants in the Pension Fund are employees or former employees of employers that, through a collective bargaining relationship with Local 355, are obligated to pay contributions to the Pension Fund.  White Aff. at ¶ 6. The Pension Fund is an "employee pension benefit fund" as defined in ERISA.  See 29

U.S.C. § 1002(2).  It is a Taft-Hartley trust fund, administered by a joint board of trustees

consisting of equal numbers of management and union representatives.  White Aff. at ¶ 6.

See also 29 U.S.C. § 186(c)(5).  The Pension Fund's trustees are fiduciaries who are

required to discharge their duties solely in the interest of the participants and

beneficiaries.  See 29 U.S.C. §§ 1102-1104.

      **6.**      **The Sun's Obligation to Contribute to the Health Fund Under the CBAs and the Trust Agreement.**

With respect to the Health Fund, for the time period relevant to this matter each of

the CBAs has contained materially identical language, as follows:

> The Publisher agrees that he will contribute monthly to the
> Health and Welfare Fund established by the [Health Fund
> trust agreement] … the total sum of $[_.__] … for Health
> and Welfare coverage provided, by the Plan for each
> straight-time hour or fraction thereof paid to each employee
> of the Publisher who is in the bargaining unit represented
> by Local Union No. 355, and such employees of the
> Publisher not within said bargaining unit, who may, by
> mutual consent of the Publisher, and the Union, be included
> in the benefits of such fund up to but not in excess of fifty
> (50) straight-time hours for each work week of each such
> employee.  The purpose of such contributions is to provide
> benefits as provided under said [Trust] Agreement [].

Debtors' Objection at Exhibit C.[2]

The Health Fund is governed by the Truck Drivers and Helpers Local Union No.

355 Health & Welfare Fund Restated Agreement and Declaration of Trust ("Health Fund

Trust Agreement").  White Aff. at ¶ 5.  The Health Fund Trust Agreement has been

amended and restated a number of times; it was most recently restated in 2008.  White

Aff. at ¶ 5.

---

[2] The quoted language, as indicated, has remained materially unchanged across each of the relevant CBAs,
with the exception of the bracketed language concerning the contribution amount, which typically changes
from one CBA to the next.  See, e.g., Debtors' Objection at Exhibit C at p. 49, 52, 55.

By virtue of its agreement with Local 355 to contribute to the Health Fund, the Sun is bound by the terms of the Health Fund Trust Agreement.  See Health Fund Trust Agreement, attached hereto as Exhibit 4, at section 1.5(a), (c) (by making payments to Health Fund pursuant to collective bargaining agreement, employer "shall … be deemed to have accepted and be bound by this Trust Agreement").

Section 4.1 of the Health Fund Trust Agreement requires contributing employers to make contributions for all hours worked by covered employees for which wages are owed:

> (e)    Each Employer shall make contributions to the Trust Fund on behalf of employees for all "hours worked" and/or all "hours paid" as these terms may be employed in any collective bargaining agreement.  The terms "hours worked" or "hours paid" shall mean and include from the first day hired through the date of termination:
>
> (i)    All hours worked and required to be paid for by the Collective Bargaining Agreement; …

Exhibit 4 at pp. 13-14.

**7.    The Sun's Obligation to Contribute to the Pension Fund Under the CBAs and the Trust Agreement.**

With respect to the Pension Fund, for the time period relevant to this matter each of the CBAs has contained materially identical language, as follows:

> The Publisher agrees that he will contribute monthly to the Pension Fund established under the [Pension Fund trust agreement] … the total sum of $[_.__] … per hour for Retirement benefits provided by the Plan; for each straight-time hour paid to each employee in the bargaining unit covered by this Agreement up to but not in excess of forty (40) straight-time hours for each work week of each such employee.  The purpose of such contributions is to provide benefits as provided under said Agreement and Declaration of Trust.

Debtors' Objection at Exhibit C.[3]

The Pension Fund is governed by the Truck Drivers and Helpers Local 355 Retirement Pension Fund Restated Agreement and Declaration of Trust ("Pension Fund Trust Agreement").  White Aff. at ¶ 6.  The Pension Fund Trust Agreement has been amended and restated a number of times; it was most recently restated in 2008.  White Aff. at ¶ 6.

By virtue of its agreement with Local 355 to contribute to the Pension Fund, the Sun is bound by the terms of the Pension Fund Trust Agreement.  See Pension Fund Trust Agreement, attached hereto as Exhibit 5, at section 1.5(a), (c) (by making payments to Pension Fund pursuant to collective bargaining agreement, employer "shall … be deemed to have accepted and be bound by this Trust Agreement").

Section 4.1 of the Pension Fund Trust Agreement requires contributing employers to make contributions for all hours worked by covered employees for which wages are owed:

> (e)    Each Employer shall make contributions to the Trust Fund on behalf of employees for all "hours worked" and/or all "hours paid" as these terms may be employed in any collective bargaining agreement.  The terms "hours worked" or "hours paid" shall mean and include from the first day hired through the date of termination:
>
> (i)    All hours worked and required to be paid for by the Collective Bargaining Agreement; …

Exhibit 5 at pp. 13-14.

---

[3] The quoted language, as indicated, has remained materially unchanged across each of the relevant CBAs, with the exception of the bracketed language concerning the contribution amount, which typically changes from one CBA to the next.  See, e.g., Debtors' Objection at Exhibit C at p. 50, 52-53, 55.

8.    **The History of the Term "Straight Time Hour" as Used in Local 355's Collective Bargaining Agreements with Other Contributing Employers.**

By the time the Funds came into existence, Local 355 had consistently negotiated collective bargaining agreements with employers that provided for the payment of an overtime rate to covered employees for certain designated hours of work.  Taylor Aff. at ¶ 8.  Collective bargaining agreements to which Local 355 was a party invariably defined the overtime wage rate as one-and-one-half times the normal (or basic) straight time hourly wage rate as set forth in the agreements.  Taylor Aff. at ¶ 8.

Local 355 has been and is a party to collective bargaining agreements with employers other than the Sun that contain identical "straight-time hour" language as that contained in the Local 355-Sun CBAs (quoted above at section I.A.6, 7).  Taylor Aff. at ¶ 9.  Specifically, Local 355 has had and continues to have collective bargaining relationships with employers wherein the health and welfare  and pension articles of the collective bargaining agreements include the terms "straight time hour" or "straight time hours."  Taylor Aff. at ¶ 9.[4]

The genesis of the term "straight time hour" as used in the health and welfare and pension articles of these collective bargaining agreements was an attempt by the Union to make clear that, for hours for which an employee was paid the overtime rate, the employer was not obligated to pay contributions equal to one-and-one-half times the established contribution rate.  Taylor Aff. at ¶ 10.  Thus, for example, if the contribution rate was $1.00 per hour, for all overtime-paid hours the employer was obligated to pay

---

[4] The employers are:  US Foods, United Parcel Service, Acme Paper & Supply Co., AmTote International, Avis Rent-A-Car, Airborne Freight, Perishable Deliveries, Inc., and The Hertz Corporation.  White Aff. at ¶ 7.  US Foods as a contributing employer under the "straight-time hour" language is separately discussed, below.

$1.00 to the Funds for each of those hours, rather than $1.50, even though for those hours the employee earned one-and-one-half times his normal straight-time hourly rate.

In recent years, certain employers, in bargaining with Local 355, have indicated that the "straight time" language in the health and welfare articles of the collective bargaining agreements appeared ambiguous or confusing. Taylor Aff. at ¶ 11. With the exception of two employers—US Foods and the Sun—the employers that expressed concerns to Local 355 regarding the language have not refused to pay contributions on all hours paid up the weekly maximums. Local 355's current principal officers, who came to Local 355 in 1994, well after the "straight time" language was first used in the health and welfare and pension articles of any Local 355 agreement, have acknowledged that the language could have been written in clearer terms in order to show its proper intent. Taylor Aff. at ¶ 11. Accordingly, with respect to these employers, Local 355 has agreed to modify the language in the health and welfare and pension articles to more clearly reflect on the page the intent that the employer must contribute to the Funds on all hours paid to each covered employee, up to the maximum number of hours in a workweek as provided in the agreements (typically, 40 hours for the Pension Fund, and 50 hours for the Health Fund). Taylor Aff. at ¶ 11.

For example, for many years Local 355 had a collective bargaining relationship with the trucking company Mountainside Transport, Inc. ("Mountainside"). Taylor Aff. at ¶ 12. The Mountainside collective bargaining agreements prior to November 2006 required Mountainside to (1) pay employees 1-1/2 times their normal straight time hourly rate for all hours worked over forty in any work week, and (2) contribute a designated amount to the Health Fund for each "straight time hour" paid to each covered employee,

but not in excess of fifty "straight time hours" in any work week.  Taylor Aff. at ¶ 12;

1992-1996 Mountainside-Local 355 CBA, attached hereto as Exhibit 6, at p. 23-27.

Under this language, Mountainside made contributions to the Funds for all hours paid to

each employee, up to fifty in a workweek with respect to the Health Fund, and forty in a

workweek with respect to the Pension Fund, including hours for which employees had

earned daily and weekly overtime pay.  Taylor Aff. at ¶ 12.  With the 1996-1999

collective bargaining agreement, Mountainside and Local 355 continued the same

interpretation under the "straight time" language, but clarified that language by removing

the "straight time" modifier.  Taylor Aff. at ¶ 12; 1996-1999 Mountainside-Local 355

CBA, attached hereto as Exhibit 7, at p. 12-13.

     The Local 355-Mountaide agreements provide but one example of parties

understanding the meaning of the "straight time hours" language but modifying that

language to more clearly express their intent.

**B.**      **Basis for the Funds' Proofs of Claim.**

     The Funds filed separate proofs of claim in this Court on June 4, 2009.  See

Debtors' Objection at Exhibit A.  The Funds' claims relate to unpaid delinquent

contributions owed by the Sun to the Funds, as well as liquidated damages and interest

assessed in connection with the delinquencies.[5]  As the Sun points out, virtually all of the

unpaid contributions the Funds have made claims for relate to contributions for overtime-

paid hours.  See Debtor's Objection at ¶¶ 3-4.  The Sun asserts that no such contributions

---

[5] Monthly employer contributions to the Funds become delinquent when an employer fails to make them by the 15th day of the month following the month in which the applicable hours are worked.  See Exhibit 4 at section 4.5; Exhibit 5 at section 4.5.  Both the Funds' trust agreements and ERISA provide for the assessment of liquidated damages and interest in actions to recover unpaid or delinquent employer contributions to multiemployer employee benefit plans.  See 29 U.S.C. §§ 1132(g)(2), 1145; Exhibit 4 at section 4.5; Exhibit 5 at section 4.5.

are owed based on the "straight-time hour" language in the CBAs.  See Debtor's

Objection at pp. 11-14.  As shown below, the Sun owes contributions to the Funds on

such overtime-paid hours (hereafter referred to as the "overtime contributions").

## II. ARGUMENT

**A.     The Sun is Bound by the Funds' Trust Agreements, and the Funds' Trustees' Interpretations of the Trust Agreements and the CBA are Reasonable.**

**1.     The Trust Agreements Require Contributions on All Hours Paid.**

The Sun asserts that the CBA language at issue should be examined in light of

usual principles of contract interpretation.  See Debtors' Objection at p. 12.  This

assertion is incorrect.  The matter of a participating employer's contribution obligations

to a multiemployer (i.e., Taft-Hartley) ERISA-governed employee benefit fund under any

given contract language is governed by the federal policies prescribed by ERISA.  See

Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118

F.3d 1018, 1025 (4th Cir. 1997) ("Traditional rules of contract construction … apply to

collective bargaining agreements only when they do not conflict with federal labor

law.").  Here, federal labor law, specifically ERISA, applies.[6]

The trust agreements, which the Sun is bound by, give the Trustees broad

discretion to interpret plan documents.  Both trust agreements contain the following

identical language:

---

[6] Indeed, the Sun cites to authority that supports the Funds' position on the issue of governing law.  It states:

> Further, "what claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, *in the absence of overruling federal law*, is to be determined by referenced to state law."

Debtors' Objection at p. 11 (quoting Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 161 (1946)) (emphasis added).

> [The Fund's Trustees] shall have full power to construe the
> provisions of this Agreement, the terms used herein, and
> the Plan, by-laws and regulations issued thereunder.

Exhibit 4 at section 5.17; Exhibit 5 at section 5.17.  Immediately thereafter, both trust

agreements further state:

> Any such determination and any such construction adopted
> by the Trustees in good faith shall be binding upon all of
> the parties hereto …

Id.  Accordingly, traditional rules of contract construction do not apply.  Instead, great

deference is accorded the Funds' interpretation of documents affecting them.  See, e.g.,

West v. Local 710, Int'l Bhd. of Teamsters Pension Plan, 528 F.3d 1082 (8th Cir. 2008)

(court limited to reviewing a pension plan for abuse of discretion where plan gives

trustees complete discretion to interpret plan's language); Carpenters Pension Trust Fund

for N. Cal. v. Underground Constr. Co., 31 F.3d 776 (9th Cir. 1994) (courts must defer to

trustees' interpretation of trust agreement if interpretation is reasonable, especially if

agreement gives trustees broad discretion).

In passing ERISA, Congress invoked the common law of trusts to define the

general scope of the authority and responsibility of trustees and fiduciaries, rather than

explicitly enumerating all of their powers and duties.  Central States, Southeast and

Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570 (1985).

Under the common law of trusts, trustees are understood to have all "such powers as are

necessary or appropriate for the carrying out of the purposes of the trust."  Id. (citation

omitted).  ERISA clearly assumes that trustees will act to ensure that a plan receives all

the assets to which it is entitled.  Id. at 571.  In Central Transport, the Supreme Court

upheld the right of trustees to adopt audit procedures.  In that case, as here, the employer

became signatory to a CBA in which it agreed to be bound by the trust agreement governing the fund.  Id. at 565, 568 n.8.

It is a settled principle of trust law that the powers of trustees are determined by the terms of the trust document.  Bidwill v. Garvey, 943 F.2d 498, 506 (4th Cir. 1991), cert. denied, 502 U.S. 1099 (1992).  The provisions of a trust agreement provide the framework with which a court should analyze an employer's obligation to the fund. Central Pennsylvania Teamsters Pension Fund v. W&L Sales, Inc., 778 F. Supp. 820, 829 (E.D. Pa. 1991) (citing Indiana State Council of Roofers v. Adams Roofing, 753 F.2d 561, 564 (7th Cir. 1985)).  "Trusts are to be administered according to trust fund agreements."  W&L Sales, 778 F. Supp. at 829 (quoting Gainey v. Vemo, 627 F. Supp. 408, 410 (W.D. Wash. 1986)).  Trustees are charged with the duty to enforce the terms of their trust fund agreements.  Id.  Similarly, employers contributing to a fund are bound by the trust agreements that govern the fund, particularly in the situation in which an employer has signed a collective bargaining agreement that expressly binds the parties to the trust agreement that governs the fund.  New York State Teamsters Conference Pension and Retirement Fund v. Boening Bros., Inc., 891 F. Supp. 81, 85 (N.D.N.Y. 1995) (citing Central Transport, 472  U.S. at 562, 568 n.8).[7]

The language of the trust agreements thus provide an additional source of support for reasonableness of the Funds' determination that the Sun is obligated to contribute for

---

[7] Even if a collective bargaining agreement does not explicitly require an employer to adopt trust agreement, by virtue of making contributions to a benefit fund on its employees an employer becomes bound by the fund's trust agreement and governing documents.  Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491 (9th Cir. 1990), cert. denied, 501 U.S. 1232 (1991); Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co., 932 F.2d 1443 (11th Cir. 1991).  An employer and its employees cannot receive the benefits of participating in a fund without also being subject to the rules that govern them.  Miramar, 920 F.2d at 1494; Vertex, 932 F.2d at 1450-1451.  Here, of course, as noted above, the Sun is explicitly bound by the terms of the Funds' trust agreement.

the overtime contributions.  The language of the trust agreements mandates that

contributions are to be paid on all hours worked or paid under applicable collective

bargaining agreements.  See Funds' Objection at section I.A.6-7.  This would not

contravene the provisions of the CBAs, prescribing maximum numbers of weekly hours

of contributions (fifty hours to the Health Fund; forty hours to the Pension Fund), but

rather makes plain that contributions should be made on all hours worked or paid—at

least up to the weekly limits set forth in the CBAs.  In U.S. Foodservice, Inc. v. Truck

Drivers & Helpers Local Union No. 355 Health & Welfare Fund, 700 F.3d 743 (4th Cir.

2012), the Fourth Circuit found as much, stating:

> Finally, the trust agreement itself—incorporated by
> reference into each CBA—also supports the Health Fund's
> interpretation.  Section 4.1(e) states that each employer
> "shall make contributions to the Trust Fund on behalf of
> employees for all 'hours worked' and/or all 'hours paid' as
> these terms may be employed in any collective bargaining
> agreement."  Although the CBA is clear that USF need not
> contribute to the Health Fund for more than fifty hours per
> week per employee, the references to "all hours worked"
> and "all hours paid" reasonably support the Health Fund's
> conclusion that contributions are due and owing regardless
> of whether a particular hour was paid at the straight-time
> rate or the overtime rate.

 U.S. Foodservice, 700 F.3d at 751.

> **2.     The "Straight Time" Language Was the Effort to Show That
> Contribution Rates Did Not Increase Coincident with the
> Underlying Wage Rate; the Funds' Adoption of That
> Interpretation is, at the Least, Reasonable.**

As noted above at section I.A.8., "straight time hour" as used in the employee

benefit fund articles of the CBAs was an attempt by the Union to make clear that, for

certain hours of an employee's basic work week (i.e., hours for which an employee was

paid one-and-one-half times his normal straight-time hourly rate), the employer was not

obligated to pay contributions equal to one-and-one-half times the established

contribution rate.  Taylor Aff. at ¶ 10.  The modifier "straight time" "indicates that

contributions for each employee's first [forty or] fifty hours of work each week are owed

at the applicable contribution rate and not at any premium contribution rate regardless of

the rate of pay earned by the company's employee for the particular hour."  U.S.

Foodservice, 700 F.3d at 746, 749 (internal quotation omitted).  To read the CBA as

limiting contributions to the Funds on hours for which a straight time wage rate was paid

would render the plain language of the contract meaningless.  See id. at 749-50 (wherein

the Fourth circuit determined the Funds' explanation and interpretation of the term

"straight time hours" was reasonable).

> **3.**     **The Uniform Practice in the Industry Supports the Conclusion That "Straight Time Hours" Means All Hours.**

Numerous contributing employers, all parties to collective bargaining agreements

containing the term "straight-time hours" in the health and welfare and/or pension

articles, have consistently and continue to make contributions on all hours worked or

paid, including overtime hours.  This fact further supports the reasonableness of the

Funds' interpretation of the disputed language, since industry practice is instructive in

interpreting language in collective bargaining agreements.

In Brown v. Health Care and Retirement Corp. of America, 25 F.3d 90 (2d Cir.

1994), a collective bargaining agreement required Health Care and Retirement

Corporation of America ("HCRC") to contribute to a health fund a percentage of the

"gross payroll of all Employees who work twenty hours per week or more."  Brown, 25

F.3d at 92.  From the inception of that agreement until June, 1989, HCRC contributed to

the Fund for all employees regardless of the number of weekly hours worked.  In June

15

1989, however, HCRC began contributing only for employees who were "regularly scheduled" to work twenty or more hours per week, even where employees were regularly scheduled to work fewer than twenty but ultimately worked twenty or more hours.  Id.  The health fund sued, alleging underpayment by HCRC in violation of the agreement.

The district court granted summary judgment for the fund, finding that the phrase at issue required contributions for all employees who actually worked twenty hours or more per week.  The Second Circuit affirmed.  Analyzing the contested language in the agreement, the court, inter alia, examined the practice in the industry:

> We note that HCRC is the only employer of the many who are parties to the collective bargaining agreement that has asserted this construction of the agreement.  Every other employer has at all times calculated its contributions due the Fund using the number of hours an employee actually worked.  The industry's uniform construction of this clause to the contrary of HCRC is, in the collective bargaining agreement setting, to be given evidentiary significance by the Courts, and we do.

Id. at 93 (citing United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 580-81 (1960)).[8]

Under this contract interpretation principle, the term "straight-time hours" in the health and welfare and pension articles of the Local 355-Sun CBAs should be construed to mean all paid hours, including overtime hours.  While, as indicated, over the years Local 355 and certain employers have removed from the health and welfare and/or

---

[8] See also New England Healthcare Employees Welfare Fund v. iCare Management, LLC, 2009 WL 3571311, 47 Empl. Benefits Cas. (BNA) 2727 (D. Conn. 2009)(court ruled in favor of benefits funds in dispute over language on contribution obligation where defendant was sole employer, among dozens who paid under same language, claiming language required payment under alternative method from that paid by other employers).

pension articles of their collective bargaining agreements the "straight time" modifier of

the term "hours" in order to more clearly manifest their intent, numerous employers and

Local 355 have continued to include the "straight time" modifier in their agreements.

Taylor Aff. at ¶ 16.  These employers have historically made and, with the exception of

the Sun, continue to make contributions to the Health Fund and/or Pension Fund based on

all hours—straight time and overtime—paid to employees, up to the weekly maximums.

White Aff. at ¶ 7.[9]  Thus here, as in Brown, there has existed an industry practice

between Local 355 and nearly all of the employers, who agreed to the term "straight time

hours" in the health and welfare and pension articles whereby they uniformly interpreted

that term to mean all hours.[10]

### 4.    The Fourth Circuit Has Ruled in Favor of the Funds on Materially Similar Facts as Those Present Here.

The Reorganized Debtor's objections to the 355 Funds' Proofs of Claim are

virtually identical to the claims raised by U.S. Foodservice in 2009.  The CBA between

Local 355 and U.S. Foodservice contained the following language relative to employee

benefit fund contributions:

---

[9] After making contributions to the Health Fund on all hours up the weekly maximum for more than fifty years, in 2008 one of the employers, US Foods (formerly U.S. Foodservice), stopped making contributions for overtime hours under the same theory as the Sun here.  As further described below, it was recently ordered to resume contributions on those hours.  See U.S. Foodservice, Inc. v. Truck Drivers & Helpers Local Union No. 355 Health & Welfare Fund, 700 F.3d 743 (4th Cir. 2012).  Because of its decades-long practice, see U.S. Foodservice, 700 F. 3d at 746, US Foods fairly is includible as one of the eight employers besides the Sun that have historically paid contributions on the overtime hours.

[10]  Although the straight-time-hours language has existed in the Local 355-Sun CBAs for decades, the Funds did not discover that the Sun had failed to pay on overtime hours until 2006, when it conducted employer payroll audits for the years 2004-2005.  White Aff. at ¶ 8.  See also Debtors' Objection at Ex. E. While the Funds had audited the Sun's payroll records in the past, such audits did not reveal a failure to pay on overtime hours because, operationally, the Sun did not historically assign overtime work to bargaining unit employees prior to the late 1990s or early 2000s.  White Aff. at ¶ 8.  It was only beginning with that period that unit employees earned overtime pay.  White Aff. at ¶ 8.  The 2004-2005 records audit thus represented the first time the Funds audited the Sun's records following its operational changes.  White Aff. at ¶ 8.

> "The Company, as of [date], agrees to pay into the Fund,
> [amount] for each straight time hour or fraction thereof
> paid to each employee covered by this Agreement or by
> subsequent collective bargaining Agreements between the
> parties hereto up to but not in excess of fifty (50) straight
> time hours in any one (1) work week in the case of each
> employee."

U.S. Foodservice, 700 F.3d at 745-46 (bracketed language in original).  Similarly, the

CBA between Local 355 and the Baltimore Sun establishes:

> [t]he Publisher agrees that he will contribute monthly to the
> Health and Welfare Fund established by the [Health Fund
> Trust Agreement] … for each straight-time hour or fraction
> thereof paid to each employee of the Publisher who is in
> the bargaining unit … up to but not in excess of fifty (50)
> straight-time hours for each work week of each such
> employee.

Reorganized Debtors' Objection at Exhibit C, p. 52 (pension language at p. 52-53).

In U.S. Foodservice, the Fourth Circuit determined that Health Fund's

interpretation of CBA was "reasonable"—the standard applicable in this proceeding—for

four reasons:  (1) the contract language standing alone, (2) the course of dealing between

the Health Fund and the employer; (3) evidence that numerous other employers paid on

all hours under identical contract language; and (4) language in the Health Fund's trust

agreement.  U.S. Foodservice, 700 F.3d at 750-751.  Three of the four bases for the

Fourth Circuit's ruling in favor of the Health Fund's interpretation of "straight time" are

present here.

First, the CBA language is identical to the language in the Local 355-U.S.

Foodservice agreements.

Second, the trust agreement language, providing for employer contributions for all

hours, applies with equal force to the Sun as it did to U.S. Foodservice.

Third, eight employers paid on overtime hours under identical contract language.

The only factual distinction between this matter and U.S. Foodservice involves course of dealing, which was present there but absent here since the Sun did not have overtime prior to the late 1990s or early 2000s, and the Fund did not discover the Sun's failure to make overtime contributions until 2006. See footnote 10, above. Such absence—not an affirmative course of dealing that favors the Sun, but merely the absence of any course of dealing—does not render the Funds' Trustees' interpretation of the language in dispute unreasonable. This Court should so find.

### III. **CONCLUSION**

For the foregoing reasons, this Court should deny the Debtors' Objection to the Funds' claims.

Dated: July 23, 2013                             Respectfully submitted,

/s/ Paul D. Starr
Paul D. Starr
Federal Bar No. 024789 (D. Md.)
E-mail:  pstarr@abato.com

/s/ Corey Smith Bott
Corey Smith Bott
Federal Bar No. 025673 (D. Md.)
E-mail:  csbott@abato.com

/s/ Brian G. Esders
Brian G. Esders
Federal Bar No. 028745 (D. Md.)
E-mail:  besders@abato.com

Abato, Rubenstein and Abato, P.A.
809 Gleneagles Court, Suite 320
Baltimore, Maryland  21286
Telephone:  (410) 321-0990
Facsimile:  (410) 321-1419

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of July, 2013, a copy of the foregoing was served, via the Court's CM/ECF system, on all parties requesting notice.

/s/ Brian G. Esders