IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | * | Chapter 11 |
| TRIBUNE COMPANY, *et al.*, | * | Case No. 08-13141 (KJC) |
| Debtors. | * | Jointly Administered |

\* \* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT OF DENIS J. TAYLOR

Denis J. Taylor, being duly sworn, deposes and says:

1. My name is Denis J. Taylor. I am over the age of 18 years. I have personal knowledge of the facts and matters recited in this affidavit. I am competent to testify in court to the matters stated in this affidavit.

2. I am the President of Truck Drivers, Helpers, Taxicab Drivers, Garage Employees and Airport Employees (Teamsters) Local Union No. 355 ("Local 355" or the "Union"). Local 355 is a labor organization engaged in the representation of employees in certain industries operating in parts of Maryland, Delaware and Virginia. I was elected to this office in late 1993, and took office in January, 1994. I have been reelected to this office several times since. In making this affidavit, I have reviewed certain business records and historical documents of Local 355.

3. Local 355 is an affiliate of the International Brotherhood of Teamsters ("IBT"). The IBT chartered Local 355 in 1933.

4. I am also a trustee on the Truck Drivers and Helpers Local 355 Retirement Pension Fund ("Pension Fund"). I began serving as a trustee on the Pension Fund in November, 2006.

5. The duties of my office as President of Local 355 include negotiating and administering collective bargaining agreements with employers on behalf of employees concerning those employees' terms and conditions of employment. The Union serves as the bargaining agent for certain employees concerning those employees' wages, hours, and other terms and conditions of employment. It engages in collective bargaining with employers, and administers and enforces collective bargaining agreements to which is it a party. Through its history, Local 355 has negotiated and been a party to over a thousand collective bargaining agreements with hundreds of employers. Presently, Local 355 is a party to collective bargaining agreements with some seventy-five employers, including The Baltimore Sun.

6. The bargaining unit covered by the Local 355-Sun CBAs comprises principally employees working as drivers and dispatchers. Though they perform different work, under the CBAs all members of the bargaining unit have historically been paid an established normal hourly wage, as opposed to payment based on miles driven, product handled, or other method.

7. For the time period relevant to this matter, each of the CBAs has contained materially identical language requiring the Sun to pay employees an overtime wage rate for work performed beyond certain hours in a single day, or beyond certain hours during a single work week. With certain exceptions detailed in the CBAs, for employees who are assigned a five-day work week, pay at an overtime wage rate is required when such employees work either more than (1) 7-1/2 hours in one day, or (2) 37-1/2 hours in one work week. Similarly, with certain exceptions, for employees who are assigned a four-day

work week, pay at an overtime wage rate is required when such employees work either more than (1) 9-1/2 hours in one day, or (2) 38 hours in one work week.

8. By the time the Funds came into existence, Local 355 had consistently negotiated collective bargaining agreements with employers that provided for the payment of an overtime rate to covered employees for certain designated hours of work. Collective bargaining agreements to which Local 355 was a party invariably defined the overtime wage rate as one-and-one-half times the normal (or basic) straight time hourly wage rate as set forth in the agreements.

9. Local 355 has been and is a party to collective bargaining agreements with employers other than the Sun that contain identical "straight-time hour" language as that contained in the Local 355-Sun CBAs. Specifically, Local 355 has had and continues to have collective bargaining relationships with employers wherein the health and welfare and pension articles of the collective bargaining agreements include the terms "straight time hour" or "straight time hours."

10. The genesis of the term "straight time hour" as used in the health and welfare and pension articles of these collective bargaining agreements was an attempt by the Union to make clear that, for hours for which an employee was paid the overtime rate, the employer was not obligated to pay contributions equal to one-and-one-half times the established contribution rate. Thus, for example, if the contribution rate was $1.00 per hour, for all overtime-paid hours the employer was obligated to pay $1.00 to the Funds for each of those hours, rather than $1.50, even though for those hours the employee earned one-and-one-half times his normal straight-time hourly rate.

11. In recent years, certain employers, in bargaining with Local 355, have indicated that the "straight time" language in the health and welfare articles of the collective bargaining agreements appeared ambiguous or confusing. With the exception of two employers—US Foods and the Sun—the employers that expressed concerns to Local 355 regarding the language have not refused to pay contributions on all hours paid up the weekly maximums. Local 355's current principal officers, who came to Local 355 in 1994, well after the "straight time" language was first used in the health and welfare and pension articles of any Local 355 agreement, have acknowledged that the language could have been written in clearer terms in order to show its proper intent. Accordingly, with respect to these employers, Local 355 has agreed to modify the language in the health and welfare and pension articles to more clearly reflect on the page the intent that the employer must contribute to the Funds on all hours paid to each covered employee, up to the maximum number of hours in a workweek as provided in the agreements (typically, 40 hours for the Pension Fund, and 50 hours for the Health Fund).

12. For example, for many years Local 355 had a collective bargaining relationship with the trucking company Mountainside Transport, Inc. ("Mountainside"). The Mountainside collective bargaining agreements prior to November 2006 required Mountainside to (1) pay employees 1-1/2 times their normal straight time hourly rate for all hours worked over forty in any work week, and (2) contribute a designated amount to the Health Fund for each "straight time hour" paid to each covered employee, but not in excess of fifty "straight time hours" in any work week. Under this language, Mountainside made contributions to the Funds for all hours paid to each employee, up to fifty in a workweek with respect to the Health Fund, and forty in a workweek with respect to the

Pension Fund, including hours for which employees had earned daily and weekly overtime pay. With the 1996-1999 collective bargaining agreement, Mountainside and Local 355 continued the same interpretation under the "straight time" language, but clarified that language by removing the "straight time" modifier.

I swear under the penalties of perjury that the foregoing affidavit is true and correct to the best of my personal knowledge.

_7/23/13_
Date

_____
Denis J. Taylor