A G R E E M E N T

THIS AGREEMENT, made and entered into by and between

MOUNTAINSIDE TRANSPORT, INC.

hereinafter referred to as the "COMPANY"

and

TRUCK DRIVERS, HELPERS, TAXICAB DRIVERS, GARAGE EMPLOYEES AND AIRPORT EMPLOYEES LOCAL UNION NO. 355, AT BALTIMORE, MARYLAND

affiliated with the

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA

hereinafter known as the "UNION"

W I T N E S S E T H: That for the purpose of mutual understanding and in order that a harmonious relationship may exist between the company and the Union to the end that continuous and efficient service will be rendered to and by both parties for the benefit of both, it is hereby agreed that:

The operation of the Company, direction of the workforce and the authority to execute all of the various duties, functions and responsibilities required to manage the business are vested in the Company, except where modified by this Agreement.

1) a) It shall be a condition of employment that all employees of the Company covered by this Agreement who are members of the Union in good standing on the date of execution of this Agreement shall remain members in good standing, and those who are not members on the date of execution of this Agreement, shall, on the thirty-first (31st) day following the date of execution of this Agreement, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees referred to above covered by this

Agreement and hired on or after its date of execution shall, on the thirty-first (31st) day following the beginning of such employment, become and remain members in good standing in the Union.

b) It being understood that all employees of the Company within the proper jurisdiction of this Local Union shall become members of the Union, in accordance with Article I of this Agreement.

c) A new employee shall work under the provision of this Agreement but shall be employed only on a eighty (80) calendar day trial basis, during which period he may be discharged without further recourse, provided, however, that the Employer may not discharge or discipline for the purpose of evading this Agreement or discriminating against Union members. After working eighty (80) calendar days on the drivers list, as in Article 8, section "h", the employee shall be placed on the regular seniority list and his seniority date shall be the first day worked on the drivers list. In case of discipline within the probationary period, the Employer shall notify the Local Union in writing, and Article #28 will not apply.

2) a) A week's work for full time employees shall consist of forty (40) hours per week, made up of five (5) eight (8) hour days, which may be non-consecutive during the Sunday through Saturday work week and shall receive a one-half (1/2) hour unpaid lunch during the shift which shall not be considered as time worked. Selection of the work week may change and will be at the Company's requirements.

b) All work performed in excess of eight (8) hours, with respect to five (5) day work week, in any one day or in excess of forty

(40) hours in any week, as required by the Company, shall be paid for at one and one-half (1-1/2) times the regular rate.

c) It is understood that daily and weekly overtime as such shall not be pyramided.

d) The Company shall post a regular day off schedule no later than Friday for all employees affected by this Agreement. Whenever any employee is required to work on any non-scheduled work day, he shall be paid at the rate of one and one-half (1-1/2) times his normal straight time rate of pay for all time worked outside of his regular scheduled time and such non-scheduled time worked shall not be computed into the guaranteed work week hours.

e) When an employee is required to work on his scheduled day off, he shall be paid for all work performed on such day at the rate of one and one-half (1-1/2) times his regular straight time rate of pay, and the eight (8) hour daily minimum guarantee shall apply. The Company shall post a List for all employees that request to work on their scheduled day off by seniority.

f) The Company shall first engage available unemployed qualified extra men who are referred by Local #355 for extra work.

g) The Company will comply with the employees' requests to change their scheduled day off, by seniority. One week's notice must be given.

h) Employees shall be notified of their daily starting time no later than the time they are relieved from duty on the previous day.

i) In the event an emergency arises or when an extra trip is to be made, either of which will create an additional earning,

On holiday week and week prior to holiday, the company has agreed to permit a minimum of five (5) drivers and one (1) loader/stower per week to be off on vacation.

The company has agreed to permit a minimum of one (1) mechanic and one (1) employee in other garage classification per week to be off on vacation.

13)   a)   The Company agrees to the establishment and maintenance of a Health and Welfare Fund for the purpose of providing life, health and accident insurance, medical care and hospitalization benefits for the employees of the Company who are in the bargaining unit represented by Local Union No. 355, and such employees of the Company who are not within the bargaining unit represented by Local Union No. 355, who by the mutual consent of the Company and the Union, may be included in the Health and Welfare Fund and also such of these benefits for their dependents as the Trustees may from time to time determine, in accordance with the provisions of an Agreement and Declaration of Trust, which Company hereby authorizes a Board of Trustees hereinafter provided for to make and execute and which Agreement and Declaration of Trust setting forth the rules and regulations governing the administration of said Fund shall be incorporated herein by reference hereto.

   b)   The Board of Trustees shall consist of two (2) persons who shall be elected annually, one by a majority of the Companies contributing to the Health and Welfare Fund who are present at the annual meeting called for the purpose of electing an Employer Trustee and one to be elected by the Union. In the event a majority of the Companies and the Union agree, the number of Trustees may be increased

to four (4), two (2) of whom shall be elected by a majority of the Companies and two (2) of whom shall be elected by the Union. The Trustees shall have the power from time to time to define the terms "employees" and "dependents" as referred to in this Agreement.

    c)    Increase Company contributions to the Health and Welfare Fund effective November 8, 1992 by Fifty Cents (50¢) per hour for M.O.B. for a total of Three Dollars Thirty-Four Cents ($3.34) per hour for each straight time hour or fraction thereof paid to each employee covered by this Agreement or by subsequent collective bargaining Agreements between the parties hereto, up to but not in excess of fifty (50) straight time hours in any one work week in the case of each employee. (Plan #12, with Legal and Prescription Plan for Retirees).

    d)    Increase Company contributions to the Health and Welfare Fund effective November 7, 1993, up to and not exceeding Fifty Cents (50¢) per hour for M.O.B. for Plan #12 w/l and R.X.

    e)    Increase Company contributions to the Health and Welfare Fund effective November 6, 1994 up to and not exceeding Fifty Cents (50¢) per hour for M.O.B. for Plan #12 w/l and R.X.

    f)    Increase Company contributions to the Health and Welfare Fund effective November 5, 1995 up to and not exceeding Fifty Cents (50¢) per hour for M.O.B. for Plan #12 w/l and R.X.

    g)    Health and Welfare and Pension contributions can be applied from rate increases offered during the term of the agreement. The up to and not exceeding Fifty Cents (50¢) per hour maintenance of benefits that could be paid in each year of this four (4) year agreement cannot be applied or used in any way other than M.O.B.; with no

diversion to wages or pension. Increases in 1993, 1994, and 1995 are subject to verification by the Company.

```
11/8/92 - $3.34 per hour (H&W)=$1.89, (SIP)=$1.32,(legal)=.05,(RX)=.08
11/7/93 - $3.84 per hour (H&W)=$2.39, (SIP)=$1.32,(legal)=.05,(RX)=.08
11/6/94 - $4.34 per hour (H&W)=$2.89, (SIP)=$1.32,(legal)=.05,(RX)=.08
11/5/95 - $4.84 per hour (H&W)=$3.39, (SIP)=$1.32,(legal)=.05,(RX)=.08
```

The total per hour and Health and Welfare amounts shown in section are only applicable if Fifty Cents (50¢) per hour is actually applied in 1993, 1994, and 1995.

h)  Payments by the Company into the Funds shall not be deemed wages due to the employees and no individual employee shall have any right, title or interest in or claim against such payments, the Fund or the Company on account thereof, except as may be provided for in said Agreement and Declaration of Trust, or by the rules and regulations governing the Fund duly adopted by the Trustees.

i)  After payment into the Fund as aforesaid, the Company shall have no right, title or interest in the Fund. The Union shall have no right, title or interest in the Fund. The payments made into the Fund and the Fund itself shall vest in the Board of Trustees and the Fund shall not be diverted or applied in any degree whatsoever (except for the payment of reasonable and necessary expenses incident thereto), to any purpose other than the procurement or payment of benefits by the trustees as provided in said Agreement and Declaration of Trust, and the Trustees shall have full power to demand, receive, collect and sue for any monies due thereto.

j)  The Trustees shall have full power to designate the benefits hereunder and to fix the date on which such benefits shall be effective. The Trustees shall have full power to establish, increase

and decrease from time to time reserves for the Fund and shall meet as often as they deem necessary to determine the amount, purpose and manner of use of such reserves.

k) The Company shall continue to maintain any group insurance plan covering its employees which is now in effect until the effective date of an insurance plan procured by the Trustees, providing for the payment of benefits hereunder. The Company shall not be precluded from providing any additional group insurance benefits for its employees.

l) The employer must pay the agreed upon contributions on time to meet requirements of the health and welfare and/or pension plans in order for the employees to be eligible for the agreed upon benefits.

14) a) The Company agrees that it will contribute to Truck Drivers and Helpers Local Union No. 355 Pension Fund established by an Agreement and Declaration of Trust for the purpose of providing Pension Retirement benefits for the employees of the Company in the bargaining unit covered by this agreement, as hereinafter provided.

b) The Company agrees that the Agreement and Declaration of Trust and the rules and regulations governing the administration of said Fund shall be incorporated by reference hereto.

c) Effective May 3, 1992, the Company shall contribute to Local No. 355 Pension Fund Two Dollars Eighty-Four Cents ($2.84) per hour for each hour paid to each employee referred to above, not exceeding forty (40) straight time hours for each work week. (Plan "AB").

d) Health and Welfare and Pension contributions can be applied from rate increases offered during the term of this Agreement.

e) The employer must pay the agreed upon contributions on time to meet requirements of the health and welfare and/or pension plans in order for the employees to be eligible for the agreed upon benefits.

f) There shall be no Pension increases during the life of this Agreement.

15) Notwithstanding anything herein contained, it is agreed that in the event any Employer is delinquent at the end of a period in the payments of his contributions to the Health and Welfare or Pension Fund or Funds created under this Agreement, in accordance with the rules and regulations of the Trustees of such Funds, after the proper official of the Local Union has given seventy-two (72) hours notice to the Employer of such delinquency in Health and Welfare or Pension payments, the employees or their representatives shall have the right to take such action as may be necessary until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for losses resulting therefrom.

16) Employees shall be allowed time off with pay not to exceed three (3) scheduled working days because of a death occurring in the employee's immediate family, provided proof of the necessity for such time off is submitted as may be required. For the purpose of this provision, the immediate family of an employee shall be his wife, children, mother, father, sister, brother, mother-in-law, father-in-law, and grandparents.

trucking operations, such operations shall continue to be subject to the terms and conditions of this Agreement for the life thereof.

d) Subject to the requirements of the business of the new Employer, employees of the present Employer shall be assigned according to their seniority rights under this Agreement.

31) The Company shall not require, request or suggest that an employee or applicant take a polygraph or any other form of lie detector test. The Employer and the Union are firmly committed to a policy of affording equal opportunity to all employees in a manner fully consistent with the Local, State and Federal laws. This means that in all manners affecting employment, the Employer and the Union will assure that everyone is afforded equal treatment regardless of race, color, creed, national origin, sex or age. All employees covered under this agreement shall be covered under the National Master Freight <u>Alcohol and Drug Agreement</u>. Copies may be obtained at the Union hall.

32) a) Should any article, paragraph or provision of this Agreement be declared legally invalid by any Tribunal or competent jurisdiction, such invalidation shall not invalidate any other article, paragraph or provision of this Agreement.

b) In the event any article, paragraph or provision of this Agreement is declared legally invalid, then such invalidated item shall immediately become subject to renegotiations upon notice from either party to this Agreement to the other party.

33) a) This Agreement shall become effective as of 12:01 A.M., November 8, 1992, and shall remain in full force and effect until 12:00 Midnight, November 9, 1996. Should either party hereto desire changes

to any of the provisions herein after 12:00 Midnight November 9, 1996, then said party shall notify the other of the desire for such changes at least sixty (60) days prior to Midnight, November 9, 1996.

  b) Failing such notice, this Agreement shall automatically renew itself and continue in full force and effect until 12:00 Midnight, November 9, 1997 and yearly thereafter, unless either party hereto shall notify the other party of the desire for such changes not later than September 9, 1997 of any yearly period.

  c) Such notice shall be deemed to have been given when properly addressed to the company or the Union and deposited in the registered mails at the Post Office in Baltimore, Maryland.

I N  W I T N E S S  W H E R E O F, the parties hereto have set their hands and seals this _24TH_ day of ___MARCH___, 1993.

W I T N E S S:  
_/George W. Cobb - DIP_

F O R  T H E  C O M P A N Y:  
_[signature]_

W I T N E S S:  
_[signature]_

F O R  T H E  U N I O N:  
_[signature]_  
_Harry E. Craft_  
_Robert R. Dunaway III_  
_[signature]_  
_Milton J. Kirk Jr._  
_Tony F. Malinowski_