# Labor Agreement

*between*

# MOUNTAINSIDE TRANSPORT, INC.

*and*

# Truck Drivers, Helpers, Taxicab Drivers, Garage Employees and Airport Employees Local Union No. 355

# Baltimore, Maryland



November 10, 1996

November 9, 1999



# AGREEMENT

THIS AGREEMENT, made and entered into by and between MOUNTAINSIDE TRANSPORT INC. hereinafter referred to as the "COMPANY" and TRUCK DRIVERS, HELPERS, TAXICAB DRIVERS, GARAGE EMPLOYEES AND AIRPORT EMPLOYEES LOCAL UNION NO. 355 AT BALTIMORE. MARYLAND affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS OF AMERICA hereinafter known as the "UNION"

W I T N E S S E T H: That for the purpose of mutual understanding..and in order that a harmonious relationship may exist between the company and the Union .to.. the end that continuous and efficient service will be rendered to and by both parties for the benefit of both, it is hereby agreed that: The operation of the Company, direction of the workforce and the authority to execute all of the various duties, functions and responsibilities required to manage the business are vested in the Company, except where modified by this Agreement.

## ARTICLE 1 - RECOGNITION & UNION SECURITY

a) It shall be a condition of employment that all employees of the Company covered by this Agreement who are members of the Union in good standing on the date of execution of this Agreement shall remain members in good standing, and those who are not members on the date of execution of this Agreement, shall, on the thirty-first (31st) day following the date of execution of this Agreement, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees referred to above covered by this Agreement and hired on or after its date of execution shall, on the thirty-first (s) day following the beginning of such employment, become and remain members in good standing in the Union.

b) It being understood that all employees of the Company within the proper jurisdiction of this Local Union shall become members of the Union, in accordance with Article I of this Agreement.

c) A new employee shall work under the provision of this Agreement but shall be employed only on a eighty (80) calendar day trial basis, during which period he may be discharged without further recourse, provided, however, that the Employer may not discharge or discipline for the purpose' of evading this Agreement or discriminating against Union members. After working eighty (80) calendar days on the drivers list, the employee shall be placed on the regular-seniority list and his seniority date shall be the first day worked on the drivers list. In case of discipline within the probationary period, the Employer shall notify the Local Union in writing, and Article #29 will not apply.

## ARTICLE 2 - HOURS OF WORK

a) A week's work for full time employees shall consist of forty (40) hours per week, made up of five (5) eight (8) hour days, which may be non-consecutive during the Sunday through Saturday work week and shall receive a one-half (½) hour unpaid lunch during the shift which shall not be considered as time worked. Selection of the work week may change and will be at the Company's requirements.

b) All work performed in excess of eight (8) hours, with respect to five (5) day work week, in any one day or in excess of forty (40) hours in any week, as required by the Company, shall be paid for at one and one-half (1-1/2) times the regular rate.

c) It is understood that daily and weekly overtime as such shall not be pyramided.

d) The Company shall post a regular day off schedule no later than Friday for all employees affected by this Agreement. Whenever any employee is required to work on any non-scheduled work day, he shall be paid at the rate of one and one-half (1-1/2) times his normal straight time rate of pay for all time worked outside of his regular scheduled time and such non-scheduled time worked shall not be computed into the guaranteed work week hours. The Company shall post a list for all employees that request to work on their scheduled day off by seniority.

e) The Company shall first engage available unemployed qualified extra men who are referred by Local #355 for extra work.

f) The Company will comply with the employees' requests to change their scheduled day off, by seniority. One week's notice must be given.

g) Employees shall be notified of their daily starting time no later than the time they are relieved from duty on the previous day.

h) In the event an emergency arises or when an extra trip is to be made, 'either of which will create an additional earning opportunity, then the senior man available who is also eligible within D.O.T. regulations shall be offered such additional earning opportunity.

## ARTICLE 3 - HOLIDAYS

a) Holidays shall include New Year's Day, Easter Monday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day and/or any day celebrated as one of the above holidays-, and effective January 1, 1991, six (6) Personal Holidays for employees with 80 calendar days. All requests must be submitted within 72 hours notice in advance and company agrees to provide answer within 24 hours and shall be during the twenty-four (24) hour period beginning with the normal starting time of employee's regular scheduled shift. Personal holidays allowed according to seniority. All requests for Personal Holidays shall be submitted in writing on the form supplied by the Company. Extra employees must work 60 days to earn a personal holiday.

The Company agrees during the normal work week it will permit the four (4) most senior men off on a personal holiday on Fridays and the three (3) most senior men off Monday thru Thursday. The Company also agrees the week of a holiday and the week prior to a holiday the two (2) most senior men off per day and the three (3) most senior men on Friday; provided all notices are received 72 hours in advance.

(5) drivers per week to be off on vacation.

The company has agreed to permit a minimum of one (1) mechanic and one (1) employee in other garage classification per week to be off on vacation.

## ARTICLE 12 - HEALTH & WELFARE

a) The Company agrees to the establishment and maintenance of a Health and Welfare Fund for the purpose of providing life, health and accident insurance, medical care and hospitalization benefits for the employees of the Company who are in the bargaining unit represented by Local Union No. 355, and such employees of the Company who are not within the bargaining unit represented by Local Union No. 355, who by the mutual consent of the Company and the Union, may be included in the Health and Welfare Fund and also such of these benefits for their dependents as the Trustees may from time to time determine, in accordance with the provisions of an Agreement and Declaration of Trust, which Company hereby authorizes a Board of Trustees hereinafter provided for to make and execute and which Agreement and Declaration of Trust setting forth the rules and regulations governing the administration of said Fund shall be incorporated herein by reference hereto.

b) The Board of Trustees shall consist of two (2) persons who shall be elected annually, one by a majority of the Companies contributing to the Health and Welfare Fund who are present at the annual meeting called for the purpose of electing an Employer Trustee and one to be elected by the Union. In the event a majority of the Companies and the Union agree, the number of Trustees may be increased to four (4), two (2) of whom shall be elected by a majority of the Companies and two (2) of whom shall be elected by the Union. The Trustees shall have the power from time to time to define the terms "employees" and "dependents" as referred to in this Agreement.

c) Company contributions to the Health and Welfare Fund shall be paid as follows:

       Effective November 10, 1996 -     $3.78/hour
       Effective November 9, 1997 -      $3.94/hour
       Effective November 8, 1998 -      $4.09/hour

d) The Employer shall pay the above amounts for each hour paid to each employee covered by this Agreement to the Truck Drivers and Helpers Local Union No. 355 Health and Welfare Plan up to fifty (50) hours each week.

## ARTICLE 13 - DEFINED BENEFIT PENSION

a) The Company agrees that it will contribute to Truck Drivers and Helpers Local Union No. 355 Pension Fund established by an Agreement and Declaration of Trust for the purpose of providing Pension Retirement benefits for the employees of the Company in the bargaining unit covered by

this agreement, as hereinafter provided.

b) The Company agrees that the Agreement and Declaration of Trust and the rules and regulations governing the administration of said Fund shall be incorporated by reference hereto.

c) Effective November 10, 1996, the Company shall contribute to the Truck Drivers and Helpers Local Union No. 355 Retirement Pension Plan Three Dollars Forty Cents ($3.40) per hour for each hour paid to each employee referred to above, not exceeding forty (40) straight time hours for each work week.

### ARTICLE 14 - DEFINED CONTRIBUTION PENSION

a) The Company agrees that it will contribute to the Teamsters Local Union No. 355 Defined Contribution Pension Fund established by an Agreement and Declaration of Trust for the purpose of providing Pension Retirement benefits for the employees of the Company in the bargaining unit covered by this agreement, as hereinafter provided.

b) The Company agrees that the Agreement and Declaration of Trust and the rules and regulations governing the administration of said Fund shall be incorporated by reference hereto.

c) Effective November 10, 1996, the Company shall contribute to the Teamsters Local Union No. 355 Defined Contribution Fund Seventy-six Cents ($.76) per hour for each hour paid to each employee referred to above, not exceeding forty (40) straight time hours for each work week.

### ARTICLE 15 - LEGAL FUND

The Company agrees to pay each employee ten dollars ($10.00) per month for the legal service plan. The Company agrees to deduct the sum of ten dollars ($10.00) per month from the wages of each employee covered by this Agreement, who agrees in writing to such deduction, and shall pay all such amounts deducted to the Teamsters Local 355 Legal Service Fund. It is agreed that the fund may not be used for actions against the employer except in the event of actions involving worker's compensation claims.

### ARTICLE 16 - BENEFIT PAYMENT SUBMISSION

All payments required by Articles 12, 13, 14 and 15 and all reports required by the Funds shall be made promptly, but in no event later than the fifteenth (15th) day of each month after the end of the month for which payment is due, on which date said payments, if not then paid in full, and said reports, if not completed in full, shall be delinquent. No payment will be accepted unless all payments required above and the reports required are also correct and completed in full.

The employer shall also send with the payments described above a monthly statement, on a form prescribed by each fund, setting forth for each employee for whom payment is made, his/her

13

name, social security number and hours worked during the month for which payment is made.

## ARTICLE 17 - TRUST AGREEMENT

a) It is understood and agreed that the employer, by its signature to this Agreement, accepts the terms and provisions of the Agreements and Declarations of Trust of each of the Funds set forth in Article 12, 13, 14 and 15 above, as said Agreements and Declarations of Trust have been amended heretofore or may be amended hereafter, and said Agreements and Declarations of Trust are made a part of this Agreement as if specifically set forth herein.

b) The employer further agrees with respect to each fund set forth in Articles 12, 13, 14 and 15:

(1) that the employer trustees named in said Agreements and Declarations of Trust, and additional employer trustees appointed pursuant to the terms of the Agreements and Declarations of Trust, and their successors in trust, are and shall be its representative.

(2) that the employer approves and consents to the appointment of the Trustees of said Fund heretofore appointed and hereafter selected as provided for in said Agreements and Declarations of Trust; and

(3) that the employer further ratifies, confirms, approves and consents to all of the lawful acts of the said trustees or their duly appointed successors, heretofore or hereafter taken in the creation and administration of the said funds, including, without limitation, the establishment, maintenance, modification and termination of plans for each of said funds, the amount and type of benefits which may be provided thereunder, the crediting of service for the purpose of determining the benefits of individual employees, and the method of funding and paying benefits, and

(4) that the employer further ratifies, confirms, approves and consents to all amendments of said Agreements and Declarations of Trust that may hereafter be made in accordance with the provisions of said Agreements and Declarations of Trust.

(5) Not withstanding the provisions of paragraphs (a) and (b) of this Article, it is specifically understood and agreed by and between the employer and the union that the provisions of this Article are superior to and supersede any provisions contained in the Agreements and Declarations of Trust and the plans adopted pursuant thereto of each of the funds set forth n Article 12,13,14 and 15 and any provisions in said Agreements and Declarations of Trust and plans which are contradictory to or conflicting with the provisions of this article shall be null and void to the full extent necessary to comply with the provisions of this Article.

c) At any time upon two (2) work days' notice, in writing, to the employer, the union or a Board of Trustees may cause an audit to be made by a Certified Public Accountant of its choice of all books and records of the employer pertaining to the fringe benefit contributions required to be

14

made by the employer pursuant to the provisions of this Article. The Certified Public Accountant shall determine what books and records it needs in making the audit and the employer shall cooperate to the fullest extent possible in making all requested books and records available.

### ARTICLE 18 - FUNERAL LEAVE

Employees shall be allowed time off with pay up to four (4) days not to extend past the day of the funeral unless an additional day is needed for long distance travel because of a death occurring in the employee's immediate family. Verification of attendance at the funeral may be required. For the purpose of this provision, the immediate family of an employee shall be his wife, children, mother, father, sister, brother, mother-in-law, father-in-law, and grandparents.

### ARTICLE 19 - JURY DUTY

a) Employees who are required to serve on a jury shall be granted an excused absence for such time as is needed in connection with jury duty and the employee shall receive the difference between his regular straight pay and the amount allowed by the Court for his jury service.

b) Any day an employee is not required to serve on a jury panel, when he is relieved for the day, he shall call the Company and make himself available for work.

### ARTICLE 20 - ADDITIONS

The Company agrees that whenever it hires any trucks, first consideration will be given to companies who observe not less than the wages, hours and conditions of this Agreement.

### ARTICLE 21 - PICKET LINES

It shall not be a violation of this Agreement and it shall not be cause of discharge or disciplinary action in the event an employee refuses to enter. upon any property involved in a lawful primary labor dispute, or refuses to go through or work behind any lawful primary picket line, including the lawful primary picket line of Unions party to this Agreement, and including the lawful primary picket lines at Company's places of business.

### ARTICLE 22- DAMAGE TO COMPANY PROPERTY

All employees shall exercise reasonable care in the protection of the Company's property, equipment and merchandise, but shall not be held responsible for accidents, damage or other loss to the Company's property, equipment or merchandise, unless such accident, damage or loss shall have been caused by the employee's negligence. There shall be no disciplinary action until a complete investigation has been completed and the steward and business agent have the