**EXHIBIT A**

**GE CAPITAL CLAIM**

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Chicago Trubune Co. | Case Number: 08-13152 |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br><br>GE Capital Corp.<br>c/o Aaron B. Chapin<br>Reed Smith LLP<br>10 S. Wacker Dr., Chicago, IL  60606<br>Telephone number: | **Court Claim Number:**_____<br>*(If known)*<br><br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:      $ 69,443.06 (see attached rider) | Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 2. Basis for Claim:  Master Lease Agreement<br>    (See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4). |
| 3. Last four digits of any number by which creditor identifies debtor: _____<br><br>3a. Debtor may have scheduled account as: _____<br>    (See instruction #3a on reverse side.) | ☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5). |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe:<br><br>Value of Property: $_____  Annual Interest Rate____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $_____  Basis for perfection: _____<br><br>Amount of Secured Claim: $_____  Amount Unsecured: $_____ | ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |

| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:** |
|---|---|
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary.<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | $_____ <br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.<br><br>FOR COURT USE ONLY |

Filed: USBC - District of Delaware<br>Tribune Company, Et Al.<br>08-13141 (KJC)      0000005578

| Date: 6/11/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | **FILED / RECEIVED**<br><br>**JUN 1 2 2009**<br><br>**EPIQ BANKRUPTCY SOLUTIONS, LLC** |
|---|---|---|

Aaron Chapin   Attorney for GE Capital

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

**B10 (Official Form 10) (12/07) - Cont.**

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien

documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

**DEFINITIONS**

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)** Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**INFORMATION**

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

---

*SUBMITTING PROOF OF CLAIM FORM:*
*Submit original and one (1) copy of proof of claim form with any attachments to the Court at the below address. Do not include this page. To receive acknowledgment of receipt, an additional copy (original + 2 copies) must be provided along with a self-addressed stamped envelope.*

U.S. Bankruptcy Court, District of Delaware
ATTN: Claims
824 Market Street, 3rd Floor
Wilmington, DE 19801

## RIDER TO PROOF OF CLAIM
## FILED BY GENERAL ELECTRIC CAPITAL CORPORATION

United States Bankruptcy Court, District of Delaware
Debtor:    Chicago Tribune Company                    Case No. 08-13152 (jointly administered)
Creditor:  General Electric Capital Corporation

This proof of claim is filed by General Electric Capital Corporation ("**GE Capital**") pursuant to that certain Master Lease Agreement (the "Agreement") between GE Capital, directly or through various assignments and transfers, and Chicago Tribune Company ("**Debtor**"). A True and correct copy of the Agreement is attached hereto as "**Exhibit A.**"

- **With respect to Schedule 001 under the Agreement, payments are current and the Debtor is next due for a payment on June 10, 2009.**
- **With respect to Schedule 002 under the Agreement, payments are current and the Debtor is next due for a payment on June 1, 2009.**
- **With respect to Schedule 003 under the Agreement, the Debtor owes arrears in the amount of $38,700.82.**
- **With respect to Schedule 004 under the Agreement, the Debtor owes arrears in the amount of $30,635.86.**
- **With respect to Schedule 005 under the Agreement, payments are current and the Debtor is next due for a payment on June 1, 2009.**
- **With respect to Schedule 006 under the Agreement, the Debtor owes arrears in the amount of $106.38.**

**The Debtor is indebted or liable to GE Capital in the amount of $69,443.06 plus attorneys' fees, costs, insurance, taxes and other amounts, to the extent allowable in this case and under the Agreement.**

GE Capital reserves its right to amend this proof of claim and rider, as may be necessary to adjust the amount or priority asserted herein or to supplement this claim in any way, including, but not limited to, attorneys' fees, interest and other amounts, to the extent allowable in this case.

In the event that the Debtor, or anyone on the Debtor's behalf, asserts a claim against GE Capital in these proceedings, this claim may be secured by a right of setoff pursuant to sections 506(a) and 553 of Title 11, United States Code. All payments on this claim have been credited and deducted for the purpose of making this proof of claim.

Exhibit A

2/98(R040106)(11.)045304367                                                    **LEAS1998***

# MASTER LEASE AGREEMENT

dated as of   8|1|06

**THIS MASTER LEASE AGREEMENT** (as amended, supplemented or otherwise modified from time to time, this "Agreement") is between   General Electric Capital Corporation (together with its successors and assigns, if any, "Lessor") and Chicago Tribune Company ("Lessee"). Lessor has an office at 1415 West 22nd Street, Suite 600, Oak Brook, IL 60523.  Lessee is a corporation organized and existing under the laws of the state of Illinois.  Lessee's mailing address and chief executive office is 435 N. Michigan Avenue, Tribune Tower Room 300, Chicago, IL 60611.  This Agreement contains the general terms that apply to the leasing of certain equipment and personal property (the "Equipment") from Lessor to Lessee. Additional terms that apply to the Equipment and financial terms in relation to the lease of the Equipment (term, rent, options, etc.) shall be contained on an equipment schedule (each a "Schedule", and collectively the "Schedules").  This Agreement together with any Schedule shall constitute the "Lease" for any Equipment. Defined terms used and not defined in this Agreement shall have the meanings assigned to such terms set forth in the applicable Schedule(s).

## 1.  LEASING:

(a)  Subject to the terms and conditions set forth below, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the Equipment described in any Schedule signed by both parties.

(b)  Lessor shall purchase Equipment from the manufacturer or supplier ("Supplier") and lease it to Lessee if on or before the Last Delivery Date Lessor receives (i) a Schedule for the Equipment, (ii) evidence of insurance which complies with the requirements of Section 9, and (iii) such other documents as Lessor may reasonably request. Each of the documents required above must be in form and substance satisfactory to Lessor.  Lessor hereby appoints Lessee its agent for inspection and acceptance of the Equipment from Supplier. Once the Schedule is signed, Lessee may not cancel the Schedule.

## 2.  TERM, RENT AND PAYMENT:

(a)  The rent ("Rent") payable for the Equipment and Lessee's right to use the Equipment shall begin on the earlier of (i) the date when Lessee signs the Schedule and accepts the Equipment or (ii) when Lessee has accepted the Equipment under a Certificate of Acceptance ("Lease Commencement Date"). The term of the Lease for any Equipment shall commence on the Basic Lease Commencement Date and shall continue, unless earlier terminated pursuant to the provisions of the applicable Schedule (the "Term").  If any term is extended or renewed, the word "Term" shall be deemed to refer to all extended or renewal terms, and all provisions of this Agreement shall apply during any such extension or renewal terms, except as may be otherwise specifically provided in writing.

(b)  Lessee shall pay rent to Lessor at its address stated above, unless otherwise directed by Lessor.  Each payment of Rent (each a "Rent Payment") shall be in the amount set forth in, payable at such intervals and in accordance with the provisions of the applicable Schedule.  If any Interim Rent and/or any Advance Rent is payable in respect of any Equipment, such Interim Rent and/or Advance Rent shall be set forth in the applicable Schedule and shall be due and payable in accordance with the terms of the Schedule. Upon Lessor's receipt of the Interim Rent and the Advance Rent, (i) the Interim Rent shall be applied to the Rent Payment due for the Interim Period, if any, set forth in the Schedule, and (ii) the Advance Rent shall be applied to the first Rent Payment due for the Basic Term, and (iii) the remaining balance, if any, shall be applied to the next scheduled Rent Payment under such Schedule.  In no event shall any Interim Rent, Advance Rent or any other Rent Payments be refunded to Lessee.  If Lessor does not receive from Lessee payment in full of any scheduled Rent Payment or any other sum due under any Lease within ten (10) days after it is due date, Lessee agrees to pay, a late fee equal to five percent (5%) on such unpaid Rent Payment or other sum, but not exceeding any lawful maximum. Such late fee will be immediately due and payable, and is in addition to any other costs, fees and expenses that Lessee may owe as a result of such late payment.

## 3.  RENT ADJUSTMENT:

(a)  If, solely as a result of Congressional enactment of any law (including, without limitation, any modification of, or amendment or addition to, the Internal Revenue Code of 1986, as amended, ("Code")), the maximum effective corporate income tax rate (exclusive of any minimum tax rate) for calendar-year taxpayers ("Effective Rate") is higher than thirty-five percent (35%) for any year during the Term for any Lease, then Lessor shall have the right to increase such rent payments by requiring payment of a single additional sum.  The additional sum shall be equal to the product of (i) the Effective Rate (expressed as a decimal) for such year less 0.35 (or, in the event that any adjustment has been made hereunder for any previous year, the Effective Rate (expressed as a decimal) used in calculating the next previous adjustment) times (ii) the adjusted Termination Value (defined below), divided by (iii) the difference between the new Effective Rate (expressed as a decimal) and one (1).  The adjusted Termination Value shall be the Termination Value (calculated as of the first rental due in the year for which such adjustment is being made) minus the Tax Benefits that would be allowable under Section 168 of the Code (as of the first day of the year for which such adjustment is being made and all future years of the Term for any Lease).  The Termination Values and Tax Benefits are defined on the Schedule. Lessee shall pay to Lessor the full amount of the additional rent payment on the later of (i) receipt of notice or (ii) the first day of the year for which such adjustment is being made.

(b)  Lessee's obligations under this Section 3 shall survive any expiration or termination of any Lease.

## 4.  TAXES AND FEES:

(a)  If permitted by law, Lessee shall report and pay promptly all taxes, fees and assessments due, imposed, assessed or levied against any Equipment (or purchase, ownership, delivery, leasing, possession, use or operation thereof), this Agreement (or any rents or receipts hereunder), any Schedule, Lessor or Lessee, by any domestic or foreign governmental entity or taxing authority during or related to the Term of any Lease, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (collectively "Taxes").  Lessee shall have no liability for Taxes imposed by the United States of America or any state or political subdivision thereof which are on or measured by the net income of Lessor except as provided in Sections 3 and 14(c).  Lessee shall promptly reimburse (on an after tax basis) Lessor for any Taxes charged to or assessed against Lessor. Lessee shall show Lessor as the owner of the Equipment on all tax reports or returns, and send Lessor a copy of each report or return and evidence of Lessee's payment of Taxes upon request.

(b)  Lessee's obligations, and Lessor's rights, privileges and indemnities, contained in this Section 4 shall survive the expiration or other termination of this Agreement.

**5. REPORTS:**

(a) If any tax or other lien shall attach to any Equipment, Lessee will notify Lessor in writing, within ten (10) days after Lessee becomes aware of the tax or lien. The notice will include the full particulars of the tax or lien and the location of such Equipment on the date of the notice.

(b) Lessee will deliver or make available to Lessor, Lessee's and any Guarantor's, if applicable, complete financial statements prepared in accordance with generally accepted accounting principles, consistently applied, certified by a recognized firm of certified public accountants within ninety (90) days of the close of each fiscal year of Lessee, together with a certificate of an authorized officer of Lessee stating that such officer has reviewed the activities of Lessee and that to the best of such officer's knowledge, there exists no Event of Default or event which with notice or lapse of time (or both) would become an Event of Default. In addition, Lessee will deliver to Lessor copies of Lessee's and any Guarantor's, if applicable, quarterly financial report certified by the chief financial officer of Lessee, within ninety (90) days of the close of each fiscal quarter of Lessee. Lessee will deliver or make available to Lessor all Forms 10-K and 10-Q, if any, filed with the Securities and Exchange Commission within thirty (30) days after the date on which they are filed.

(c) Lessor may inspect any Equipment during normal business hours after giving Lessee reasonable prior notice.

(d) Lessee will keep the Equipment under any Lease at the Equipment Location specified in the applicable Schedule and will give Lessor at least thirty (30) days' prior written notice of any relocation of such Equipment. If Lessor asks, Lessee will promptly notify Lessor in writing of the location of any Equipment.

(e) If any Equipment is lost or damaged (where the estimated repair costs would exceed the greater of ten percent (10%) of the original Equipment cost or ten thousand and 00/100 dollars ($10,000)), or is otherwise involved in an accident causing personal injury or property damage, Lessee will promptly and fully report the event to Lessor in writing within ten (10) days of the occurrence of any such incident.

(f) Upon Lessor's request, Lessee will provide within ten (10) days of such request, copies of the insurance policies or other evidence required by the terms hereof.

(g) Upon reasonable request by Lessor, Lessee will furnish a certificate of an authorized officer of Lessee stating that he has reviewed the activities of Lessee and that, to the best of his knowledge, no Event of Default or event which with notice or lapse of time (or both) would become an Event of Default within thirty (30) days of Lessor's request.

(h) Lessee will promptly notify Lessor of any change in Lessee's state of incorporation or organization, in any case within thirty (30) days of such change.

(i) Upon reasonable request by Lessor, Lessee will provide Lessor such other reports or information in relation to the Equipment and the maintenance thereof.

**6. DELIVERY, USE AND OPERATION:**

(a) All Equipment shall be shipped directly from Supplier to Lessee (unless the Equipment is being leased pursuant to a sale-leaseback transaction in which case Lessee represents and warrants that it is in possession of the Equipment as of the Lease Commencement Date).

(b) Lessee agrees that the Equipment will be used by Lessee solely in the conduct of its business, and in a manner complying with all applicable laws, regulations and insurance policies, and in compliance with manufacturer's recommendations. Lessee further agrees that it shall not discontinue use of any Equipment.

(c) Lessee will not (i) move any Equipment from the location specified on the Schedule, without the prior written consent of Lessor, or (ii) part with possession of any of the Equipment (except to Lessor or for maintenance or repair).

(d) Lessee will keep the Equipment free and clear of all liens, claims and encumbrances other than those which result from acts of Lessor.

(e) Lessor shall not disturb Lessee's quiet enjoyment of the Equipment during the term of the Agreement unless an Event of Default has occurred and is continuing under this Agreement.

**7. MAINTENANCE:**

(a) Lessee will, at its sole expense, maintain each unit of Equipment in good operating order and repair, normal wear and tear excepted. Lessee shall also maintain the Equipment in accordance with manufacturer's recommendations. Lessee shall make all alterations or modifications required to comply with any applicable law, rule or regulation during the Term of any Lease. If Lessor requests, Lessee shall affix plates, tags or other identifying labels showing ownership thereof by Lessor. The tags or labels shall be placed in a prominent position on each unit of Equipment.

(b) Lessee will not attach or install anything on any Equipment that will impair the originally intended function or use of such Equipment without the prior written consent of Lessor. All additions, parts, supplies, accessories, and equipment ("Additions") furnished or attached to any Equipment that are not readily removable shall become the property of Lessor. All Additions shall be made only in compliance with applicable law. Lessee will not attach or install any Equipment to or in any other personal or real property without the prior written consent of Lessor.

**8. STIPULATED LOSS VALUE:** If for any reason any unit of Equipment becomes worn out, lost, stolen, destroyed, irreparably damaged or unusable ( "Casualty Occurrences") Lessee shall promptly and fully notify Lessor in writing. Lessee shall pay Lessor the sum of (i) the Stipulated Loss Value (see Schedule) of the affected unit determined as of the rent payment date prior to the Casualty Occurrence; and (ii) all rent and other amounts which are then due under this Agreement on the Payment Date (defined below) for the affected unit. The "Payment Date" for purposes of this Section 8 shall be the next scheduled Rent Payment date after the Casualty Occurrence. Upon payment of all sums due hereunder, the term of the Lease as to such unit shall terminate.

**9. INSURANCE:**

(a) Lessee shall bear the entire risk of any loss, theft, damage to, or destruction of, any unit of Equipment from any cause whatsoever from the time the Equipment is shipped to Lessee.

(b) Lessee shall secure and maintain in effect at its own expense throughout the Term of any Lease of the Equipment, insurance for such amounts and

against such hazards as Lessor may reasonably require. All such policies shall be with companies, and on terms, reasonably satisfactory to Lessor. The insurance shall include coverage for damage to or loss of the Equipment, liability for personal injuries, death or property damage. Lessor shall be named as additional insured with a loss payable clause in favor of Lessor, as its interest may appear, irrespective of any breach of warranty or other act or omission of Lessee. The insurance shall provide for liability coverage in an amount equal to at least ONE MILLION U.S. DOLLARS ($1,000,000.00) total liability per occurrence, unless otherwise stated in any Schedule. The casualty/property damage coverage shall be in an amount equal to the higher of the Stipulated Loss Value or the full replacement cost of the Equipment. No insurance shall be subject to any co-insurance clause. The insurance policies shall provide that the insurance may not be altered or canceled by the insurer until after thirty (30) days written notice to Lessor. Lessee agrees to deliver to Lessor evidence of insurance reasonably satisfactory to Lessor.

(c) Lessee hereby appoints Lessor as Lessee's attorney-in-fact to make proof of loss and claim for insurance, and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with insurance payments. Lessor shall not act as Lessee's attorney-in-fact unless Lessee is in default. Lessee shall pay any reasonable expenses of Lessor in adjusting or collecting insurance. Lessee will not make adjustments with insurers except with respect to claims for damage to any unit of Equipment where the repair costs for such unit of Equipment are the lesser of (x) ten percent (10%) of the Original Equipment Cost (as stipulated in the applicable Schedule for such Equipment), or (y) ten thousand and 00/100 dollars ($ 10,000). Lessor may, at its option, apply proceeds of insurance, in whole or in part, to (I) repair or replace Equipment or any portion thereof, or (II) satisfy any obligation of Lessee to Lessor under this Agreement.

## 10. RETURN OF EQUIPMENT:

(a) Upon the expiration or termination of this Agreement or any Lease (including any termination pursuant to Section 17 hereof or any termination occurring after or in connection with an Event of Default hereunder), Lessee shall perform any testing and repairs required to place the units of Equipment in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order for the original intended purpose of the Equipment. If required the units of Equipment shall be detasseled, disassembled and crated by an authorized manufacturer's representative or such other service person as is reasonably satisfactory to Lessor. Lessee shall remove installed markings that are not necessary for the operation, maintenance or repair of the Equipment. All Equipment will be cleaned, cosmetically acceptable, and in such condition as to be immediately installed into use in a similar environment for which the Equipment was originally intended to be used. All waste material and fluid must be removed from the Equipment and disposed of in accordance with then current waste disposal laws. Lessee shall return the units of Equipment to a location within the continental United States as Lessor shall direct. Lessee shall obtain and pay for a policy of transit insurance for the redelivery period in an amount equal to the replacement value of the Equipment. The transit insurance must name Lessor as the loss payee. Lessee shall pay for all costs to comply with this Section 10.

(b) Until Lessee has fully complied with the requirements of Section 10(a) above, Lessee's rent payment obligation and all other obligations under this Agreement shall continue from month to month notwithstanding any expiration or termination of the lease term. Lessor may terminate Lessee's right to use the Equipment upon ten (10) days notice to Lessee.

(c) Lessee shall provide to Lessor a detailed inventory of all components of the Equipment including model and serial numbers. Lessee shall also provide an up-to-date copy of all other documentation pertaining to the Equipment. All service manuals, blue prints, process flow diagrams, operating manuals, inventory and maintenance records shall be given to Lessor at least ninety (90) days and not more than one hundred twenty (120) days prior to lease termination.

(d) Lessee shall make the Equipment available for on-site operational inspections by potential purchasers at least one hundred twenty (120) days prior to and continuing up to lease termination. Lessor shall provide Lessee with reasonable notice prior to any inspection. Lessee shall provide personnel, power and other requirements necessary to demonstrate electrical, hydraulic and mechanical systems for each item of Equipment.

## 11. DEFAULT AND REMEDIES:

(a) Lessee shall be in default under this Agreement and under any Lease upon the occurrence of any of the following (each an "Event of Default", and collectively, the "Events of Default"):

(i) Lessee fails to pay within ten (10) days after its due date, any Rent or any other amount due under this Agreement or any Lease;

(ii) Lessee breaches any of its insurance obligations under this Agreement or any other Document (as defined in Section 16 hereof);

(iii) Lessee breaches any of its other obligations under any Lease (other than those described in Section 11(a)(i) and (ii) above), and fails to cure that breach within thirty (30) days after written notice from Lessor;

(iv) any representation, warranty or covenant made by Lessee or any guarantor or surety for the obligations under any Lease (each a "Guarantor", and collectively, the "Guarantors") in connection with this Agreement or under any Lease shall be false or misleading;

(v) any Equipment is illegally used;

(vi) Lessee or any Guarantor becomes insolvent or ceases to do business as a going concern;

(vii) if Lessee or any Guarantor is a natural person, any death or incompetency of Lessee or such Guarantor;

(viii) a receiver is appointed for all or of any part of the property of Lessee or any Guarantor, or Lessee or any Guarantor makes any assignment for the benefit of its creditors;

(ix) Lessee or any Guarantor files a petition under any bankruptcy, insolvency or similar law, or in the event an involuntary petition is filed against Lessee or any Guarantor under any bankruptcy or insolvency laws and in the event of an involuntary petition, such petition is not dismissed within forty-five (45) days of the filing date;

(x) Lessee and/or any Guarantor breaches or is in default under any other agreement by and between Lessor (or any of its affiliates or parent entities) on the one hand, and Lessee and/or such Guarantor (or any of their respective parent or affiliates) on the other hand; provided however that any such default under this Section 11(a)(x) is not solely related to a material adverse change in Lessee's financial condition;

(xi) any Guarantor revokes or attempts to revoke its obligations under its guaranty or any related document to which it is a party, or fails to observe or perform any covenant, condition or agreement to be performed under such guaranty or other related document to which it is a party;

(xii) Lessee defaults under any other material obligation for (A) borrowed money, (B) the deferred purchase price of property, or (C) payments due under lease agreements; provided however that any such default under this Section 11(a)(xii) is not solely related to a material adverse change in Lessee' s financial condition;

(xiii) there is any dissolution or termination of existence of Lessee or any Guarantor;

(xiv) there is any dissolution, termination of existence, merger, consolidation or change in controlling ownership of Lessee or any Guarantor, or either Lessee or any Guarantor sells or leases all, or substantially all, of its assets;

(xv) there is a material adverse change in Lessee's financial condition as determined solely by Lessor; or

(xvi) Lessee is declared in default under any contract or obligation requiring the payment of money in an original principal amount greater than $50,000.

The default declaration shall apply to all Schedules unless specifically excepted by Lessor.

(b) Upon the occurrence of any Event of Default and so long as the same shall be continuing, Lessor may, at its option, at any time thereafter, exercise one or more of the following remedies set forth in this Section 11, as Lessor in its sole discretion shall lawfully elect. (i) Upon the request of Lessor, Lessee shall immediately comply with the provisions of Section 10((b), (ii) Lessee shall authorize Lessor to peacefully enter any premises where any Equipment may be and take possession of the Equipment, (iii) Lessee shall immediately pay to Lessor without further demand as liquidated damages, for loss of a bargain and not as a penalty, an amount equal to (x) the Stipulated Loss Value of the Equipment (calculated as of the Rent Payment date prior to the declaration of default), plus (y) all Rents and other sums then due under this Agreement, any Lease and all Schedules, (iv) Lessor may terminate the Lease as to any or all of the Equipment, and any termination of Leases shall occur only upon written notice by Lessor to Lessee and only as to the units of Equipment specified in any such notice, (v) Lessor may, but shall not be required to, sell Equipment at private or public sale, in bulk or in parcels, with or without notice, and without having the Equipment present at the place of sale, (vi) Lessor may also, but shall not be required to, lease, otherwise dispose of or keep idle all or part of the Equipment, (vii) Lessor may use Lessee's premises for a reasonable period of time for any or all of the purposes stated above without liability for rent, costs, damages or otherwise, (viii) Lessee shall have the right to apply the proceeds of any sale, lease or other disposition, if any, in the following order of priorities: (1) to pay all of Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of Equipment; then, (2) to the extent not previously paid by Lessee, to pay Lessor all sums due from Lessee under this Agreement; then (3) to reimburse to Lessee any sums previously paid by Lessee as liquidated damages; and (4) any surplus shall be retained by Lessor. Lessee shall immediately pay any deficiency in (1) and (2) above, to the extent any exists, (ix) Lessor shall be entitled to collect from Lessee all costs, charges, and expenses, including actual legal fees and disbursements, incurred by Lessor by reason of any Event of Default under the terms of this Agreement to be a default under any other agreement between Lessor (or any of its affiliates or parent entities), on the one hand, and Lessee and/or Guarantor (or any of their respective affiliates or parent entities), on the other hand, (x) Lessor may proceed by appropriate court action, either by law or in equity, to enforce the performance by Lessee of the applicable covenants of this Agreement and any Lease or to recover damages for breach hereof, and (xi) Lessor may exercise any rights it may have against any security deposit or other collateral pledged to it by Lessee, any Guarantor or any of their respective affiliates or parent entities.

(c) In addition to Lessor's remedies set forth above, any rent or other amount not paid when due shall bear interest, from the due date until paid, at a per annum rate equal to the lesser of eighteen percent (18%) or the maximum rate not prohibited by applicable law (the "Per Diem Interest Rate"). The application of such Per Diem Interest Rate shall not be interpreted or deemed to extend any cure period set forth herein, cure any default or otherwise limit Lessor's rights or remedies hereunder. Notwithstanding anything to the contrary contained in this Agreement or any Schedule, in no event shall this Agreement or any Schedule require the payment or permit the collection of amounts in excess of the maximum permitted by applicable law.

(d) The foregoing remedies are cumulative, and any or all thereof may be exercised instead of or in addition to each other or any remedies at law, in equity, or under any applicable statute, or international treaty, convention or protocol. Lessee waives notice of sale or other disposition (and the time and place thereof), and the manner and place of any advertising. Lessee shall pay Lessor's actual attorney's fees incurred in connection with the enforcement, assertion, defense or preservation of Lessor's rights and remedies under this Agreement, or if prohibited by law, such lesser sum as may be permitted. Waiver of any default shall not be deemed to be a waiver of any other or subsequent default.

(e) Any Event of Default under the terms of this Agreement, any Lease or any other agreement between Lessor and Lessee may be declared by Lessor a default under this Agreement, any Lease and any such other agreement between Lessor and Lessee.

**12. ASSIGNMENT:** LESSEE SHALL NOT SELL, TRANSFER, ASSIGN, ENCUMBER OR SUBLET ANY EQUIPMENT OR THE INTEREST OF LESSEE IN THE EQUIPMENT WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR. Lessor may, without the consent of Lessee, assign this Agreement, any Schedule or the right to enter into a Schedule. Lessee agrees that if Lessee receives written notice of an assignment from Lessor, Lessee will pay all rent and all other amounts payable under any assigned Schedule to such assignee or as instructed by Lessor. Lessee also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. Lessee hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Lessee has or may at any time have against Lessor for any reason whatsoever.

**13. NET LEASE:** Any Lease entered into pursuant to the terms and provisions of this Agreement is a net lease. Lessee acknowledges and agrees that its obligations to pay Rent and any and all amounts due and owing in accordance with the terms hereof and under any Schedule shall be absolute and unconditional, and such obligations shall not be released, discharged, waived, reduced, set-off or affected by any circumstances whatsoever, including, without limitation, any damage to or destruction of any Equipment, defects in the Equipment or Lessee no longer can use such Equipment. Lessee further acknowledges that Lessee is not entitled to reduce or set-off against Rent or any other amounts due to Lessor or to any assignee under Section 12, whether or not Lessee's claim arises out of this Agreement, any Lease, any statement by Lessor, Lessor's liability or any Supplier's liability, strict liability, negligence or otherwise. Lessor shall have no obligation, liability or responsibility to Lessee or any other person with respect to the operation, maintenance, repairs, alterations, modifications, correction of faults or defects (whether or not required by applicable law) or insurance with respect to any Equipment, all such matters shall be, as between Lessee and Lessor, the sole responsibility of Lessee, regardless upon whom such responsibilities may fall under applicable law or otherwise, and the Rent payable hereunder has been set in reliance of Lessee's sole responsibility for such aforementioned matters.

**14. INDEMNIFICATION:**

(a) Lessee hereby agrees to indemnify and save, on a net after-tax basis, Lessor and its affiliates, and all of Lessor's and such affiliates' respective directors, shareholders, officers, employees, agents, employees, predecessors, attorneys-in-fact, lawyers, successors and assigns (each an "Indemnitee") harmless from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including reasonable attorneys' fees and legal expenses, of whatsoever kind and nature and other costs of investigation or defense, including those incurred upon any appeal arising out of or relating to the Equipment, this Agreement or any Lease or any other Document (as defined in Section 16 hereof) (collectively, "Claims") whether in law or equity, or in contract, tort or otherwise.

This indemnity shall include, but is not limited to, Lessor's strict liability in tort or otherwise, including Claims that may be imposed on, incurred by or asserted against an Indemnitee in any way arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this Agreement, and the delivery, lease, sublease, chartering, possession, maintenance, use, non-use, financing, mortgaging, control, insurance, testing, condition, return, sale (including all costs, incurred in making the Equipment ready for sale after the exercise of remedies as a result of an Event of Default), operation or design of the Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark or copyright infringement or environmental damage), any interchanging or pooling of any parts of the Equipment, if applicable; (ii) the condition of Equipment sold or disposed of after use by Lessee, any sublessee or employees of Lessee; (iii) any breach of Lessee's or any Guarantor's representations or obligations under any Lease or any other Document or any guaranty, or the failure by Lessee to comply with any term, provision or covenant contained in any Lease or any other Document or the Equipment or with any applicable law, rule or regulation with respect to the Equipment, or the nonconformity of the Equipment or its operation with any applicable law; (iv) any actions brought against any Indemnitee that arise out of Lessee's or any Guarantor's actions or omissions (or actions or omissions of Lessee's or Guarantor's agents); or (v) any Indemnitee on any representation or warranty made or deemed made by Lessee or any Guarantor (or any of their officers) under or in connection with any Lease or any other Document, or any report or other information delivered by Lessee or Guarantor pursuant hereto which shall have been incorrect in any material respect when made or deemed made or delivered; provided, that Lessee shall not be obligated to pay and shall have no indemnity liability for any Claims (x) imposed on or against an Indemnitee to the extent that such Claims are caused by the gross negligence or willful misconduct of such Indemnitee, or (y) to the extent imposed with respect to any Claim solely based on

events occurring after the earlier of (A) the expiration or other termination of the Term of any Lease in circumstances not requiring the return of the Equipment and payment in full of all amounts due from Lessee under such Lease and any other Document, and (B) the satisfaction in full by Lessee of all its obligations under Section 10 "Return of Equipment" hereof in respect of any Lease, and the payment in full of all amounts due from Lessee under any Lease and related Documents, except in each case to the extent such Claims result from an exercise of remedies under this Agreement and any Lease following the occurrence of an Event of Default. Lessee shall pay on demand to each Indemnitee any and all amounts necessary to indemnify such Indemnitee from and against any Claims. Lessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing.

(b) Lessee hereby represents, warrants and covenants that (i) on the Lease Commencement Date for any unit of Equipment, such unit will qualify for all of the items of deduction and credit specified in Section C of the applicable Schedule ("Tax Benefits") in the hands of Lessor, and (ii) at no time during the term of this Agreement will Lessee take or omit to take, nor will it permit any sublessee or assignee to take or omit to take, any action (whether or not such act or omission is otherwise permitted by Lessor or by this Agreement), which will result in the disqualification of any Equipment for, or recapture of, all or any portion of such Tax Benefits.

(c) If as a result of a breach of any representation, warranty or covenant of Lessee contained in this Agreement or any Schedule (i) tax counsel of Lessor shall determine that Lessor is not entitled to claim on its Federal income tax return all or any portion of the Tax Benefits with respect to any Equipment, or (ii) any Tax Benefit claimed on the Federal income tax return of Lessor is disallowed or adjusted by the Internal Revenue Service, or (iii) any Tax Benefit is recalculated or recaptured (any determination, disallowance, adjustment, recalculation or recapture being a "Loss"), then Lessee shall pay to Lessor, as an indemnity and as additional rent, an amount that shall, in the reasonable opinion of Lessor, cause Lessor's after-tax economic yields and cash flows to equal the Net Economic Return that would have been realized by Lessor if such Loss had not occurred. Such amount shall be payable upon demand accompanied by a statement describing in reasonable detail such Loss and the computation of such amount. The economic yields and cash flows shall be computed on the same assumptions, including tax rates as were used by Lessor in originally evaluating the transaction ("Net Economic Return"). If an adjustment has been made under Section 3 then the Effective Rate used in the next preceding adjustment shall be substituted.

(d) All references to Lessor in this Section 14 include Lessor and the consolidated taxpayer group of which Lessor is a member. All of Lessor's rights, privileges and indemnities contained in this Section 14 shall survive the expiration or other termination of this Agreement. The rights, privileges and indemnities contained in this Agreement are expressly made for the benefit of, and shall be enforceable by Lessor, its successors and assigns.

**15. DISCLAIMER:** LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED UNDER THIS AGREEMENT OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by Lessee. Without limiting the foregoing, Lessor shall have no responsibility or liability to Lessee or any other person with respect to any of the following: (i) any liability, loss or damage caused or alleged to be caused directly or indirectly by any Equipment, any inadequacy thereof, any deficiency or defect (latent or otherwise) of the Equipment, or any other circumstance in connection with the Equipment; (ii) the use, operation or performance of any Equipment or any risks relating to it; (iii) any interruption of service, loss of business or anticipated profits or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement or replacement of any Equipment. If, and so long as, no default exists under this Agreement, Lessee shall be, and hereby is, authorized during the Term of any Lease to assert and enforce whatever claims and rights Lessor may have against any Supplier of the Equipment leased hereunder at Lessee's sole cost and expense, in the name of and for the account of Lessor and/or Lessee, as their interests may appear.

**16. REPRESENTATIONS, WARRANTIES AND COVENANTS OF LESSEE:**

(a) Lessee makes each of the following representations and warranties to Lessor on the date hereof and on the Lease Commencement Date.

(i) Lessee has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "Documents"). Lessee is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction(s) where the Equipment is or is to be located.

(ii) The Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws.

(iii) No approval, consent or withholding of objections is required from any governmental authority or entity with respect to the entry into or performance by Lessee of the Documents except such as have already been obtained.

(iv) The entry into and performance by Lessee of the Documents do not, and will not: (i) violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's organizational documents; or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Lessee is a party.

(v) There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Lessee, which if decided against Lessee will have a material adverse effect on the ability of Lessee to fulfill its obligations under this Agreement.

(vi) Each financial statement delivered to Lessor has been prepared in accordance with generally accepted accounting principles consistently applied. Since the date of the most recent financial statement, there has been no material adverse change.

(vii)      Lessee's exact legal name is as set forth in the first sentence of this Agreement.

(b) Lessee hereby covenants to Lessor that at all times during the Term of any Lease:

(i) The Equipment accepted under any Certificate of Acceptance is and will remain tangible personal property.

(ii) Lessee is and will be at all times validly existing and in good standing under the laws of its state of incorporation or organization (specified in the first sentence of this Agreement).

(iii) The Equipment will at all time be used for commercial or business purposes.

(iv) Lessee shall not consolidate, reorganize or merge with any other corporation or entity, or sell, convey, transfer or lease all or substantially all of its property during the Term of any Lease.

(v) Lessee shall maintain all books and records (including any computerized maintenance records) pertaining to the Equipment during the Term of any Lease in accordance with applicable rules and regulations.

(vi) Lessee is and will remain in full compliance with all laws and regulations applicable to it including, without limitation, (i) ensuring that no person who owns a controlling interest in or otherwise controls Lessee is or shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders, and (ii) compliance with all applicable Bank Secrecy Act ("BSA") laws, regulations and government guidance on BSA compliance and on the prevention and detection of money laundering violations.

## 17. EARLY TERMINATION:

(a) On or after the First Termination Date (specified in the applicable Schedule), Lessee may, so long as no Event of Default (or event or circumstance which with the giving of notice or passage of time or both, would result in an Event of Default) exists and no Casualty Occurrence has occurred, terminate this Agreement as to all (but not less than all) of the Equipment on such Schedule as of a rent payment date ("Termination Date"). Lessee must give Lessor at least ninety (90) days', but no more than one hundred eighty (180) days' prior written notice of the termination.

(b) Lessee shall, and Lessor shall have the right to, solicit cash bids for the Equipment on an AS IS, WHERE IS BASIS without recourse to or warranty from Lessor, express or implied ("AS IS BASIS"). Prior to the Termination Date, Lessee shall (i) certify to Lessor any bids received by Lessee and (ii) pay to Lessor (1) the Termination Value (calculated as of the Rent due on the Termination Date) for the Equipment, and (2) all Rent and other sums due and unpaid as of the Termination Date.

(c) If all amounts due hereunder have been paid on the Termination Date, Lessor shall (i) sell the Equipment on as AS IS BASIS for cash to the highest bidder and (ii) refund the proceeds of such sale (net of any related expenses) to Lessee up to the amount of the Termination Value. If such sale is not consummated, no termination shall occur and Lessor shall refund the Termination Value (less any expenses incurred by Lessor) to Lessee.

(d) Notwithstanding the foregoing, Lessor shall have the right to elect by written notice, at any time prior to the Termination Date, not to sell the Equipment. In that event, on the Termination Date Lessee shall (i) return the Equipment (in accordance with Section 10) and (ii) pay to Lessor an amount equal to the sum of (x) the Termination Value (calculated as of the Termination Date) for the Equipment as required under Section 17(b)(ii)(1) above less the amount of the highest bid certified by Lessee to Lessor, plus (y) all Rent and other amounts due and unpaid as of the Termination Date as required under Section 17(b)(ii)(2) above.

## 18. END OF LEASE PURCHASE OPTION:

(a) On the expiration of any Lease, Lessee may, so long as no Event of Default (or event or circumstance which with the giving of notice or passage of time or both, would result in an Event of Default) exists thereunder, and such Lease has been earlier terminated, purchase all (but not less than all) of the Equipment set forth in any Schedule on an AS IS BASIS for cash equal to its then Fair Market Value (plus all applicable sales taxes). Lessee must notify Lessor of its intent to purchase the Equipment in writing at least one hundred eighty (180) days prior to the expiration date of such Lease. If Lessee is in default, or if the Lease or this Agreement has already been terminated, Lessee may not purchase the Equipment.

(b) "Fair Market Value" shall mean the price that a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell. In determining the Fair Market Value, (i) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under the Lease, (ii) if the Equipment is installed it shall be valued on an installed basis, and (iii) the costs of removal of the Equipment from current location shall not be a deduction from the value of the Equipment. If Lessor and Lessee are unable to agree on the Fair Market Value at least one hundred thirty-five (135) days prior to the expiration of the Lease, Lessor shall appoint an independent appraiser (reasonably acceptable to Lessee) to determine Fair Market Value, at Lessee's sole cost, and such independent appraiser's determination shall be final, binding and conclusive.

(c) Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within fifteen (15) days after Fair Market Value is told to Lessee.

## 19. MISCELLANEOUS:

(a) LESSEE AND LESSOR UNCONDITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN LESSEE AND LESSOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN LESSEE AND LESSOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT. THIS WAIVER IS IRREVOCABLE. THIS WAIVER MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING. THE WAIVER ALSO SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(b) The Equipment shall remain Lessor's property unless Lessee purchases the Equipment from Lessor in accordance with the terms hereof, and until such time Lessee shall only have the right to use the Equipment as a lessee. Any cancellation or termination by Lessor of this Agreement, any Schedule, supplement or amendment hereto, or the lease of any Equipment hereunder shall not release Lessee from any then outstanding obligations to Lessor hereunder. All Equipment shall at all times remain personal property of Lessor even though it may be attached to real property. The Equipment shall not become part of any other property by reason of any installation in, or attachment to, other real or personal property.

(c) Time is of the essence of this Agreement. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right at any other time to demand strict compliance with this Agreement and any Lease. Lessee will promptly, upon Lessor's request and at Lessee's sole cost and expense, execute, or otherwise authenticate, any document, record or instrument necessary or expedient for filing, recording or perfecting the interest of Lessor or to carry out the intent of this Agreement and any Lease (including filings to evidence amendments to this Agreement and any Lease, and acknowledgments of assignments), and will take such further action as Lessor may reasonably request in order to carry out more effectively the intent and purposes of this Agreement and any Lease and to establish Lessor's rights and remedies under this Lease, or otherwise with respect to the Equipment. In addition, Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in any and all Schedules now and hereafter executed pursuant hereto and adding any other collateral described therein and containing any other information required by the applicable Uniform

Commercial Code. Lessee irrevocably grants to Lessor the power to sign Lessee's name and generally to act on behalf of Lessee to execute and file financing statements and other documents pertaining to any or all of the Equipment. Lessee hereby ratifies its prior authorization for Lessor to file financing statements and amendments thereto describing the Equipment and containing any other information required by any applicable law (including without limitation the Uniform Commercial Code) if filed prior to the date hereof. All notices required to be given hereunder shall be deemed adequately given if delivered by hand, or sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have designated in writing. This Agreement and any Schedules and Annexes thereto constitute the entire agreement of the parties with respect to the subject matter hereof. NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS, SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

(d)  If Lessee does not comply with any provision of this Agreement, Lessor shall have the right, but shall not be obligated, to effect such compliance, in whole or in part. All reasonable amounts spent and obligations incurred or assumed by Lessor in effecting such compliance shall constitute additional rent due to Lessor. Lessee shall pay the additional rent within five (5) days after the date Lessor sends notice to Lessee requesting payment. Lessor's effecting such compliance shall not be a waiver of Lessee's default.

(e)  Any provisions in this Agreement and any Schedule that are in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

(f)  Lessee hereby irrevocably authorizes Lessor to adjust the Capitalized Lessor's Cost up or down by no more than ten percent (10%) within each Schedule to account for equipment change orders, equipment returns, invoicing errors, and similar matters. Lessee acknowledges and agrees that the rent shall be adjusted as a result of the change in the Capitalized Lessor's Cost. Lessor shall send Lessee a written notice stating the final Capitalized Lessor's Cost, if it has changed.

(g)  THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF CONNECTICUT (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE EQUIPMENT. LESSEE IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF CONNECTICUT TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH (COLLECTIVELY, THE "PROCEEDINGS"), AND LESSEE FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). LESSEE IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. LESSEE ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO LESSOR WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, LESSEE AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH LESSOR MAY BE ENTITLED AT LAW OR IN EQUITY, LESSOR WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, each of Lessee and Lessor shall have the right to apply to a court of competent jurisdiction in the United States or abroad for equitable relief as is necessary to preserve, protect and enforce their rights under this Agreement and any Lease, including but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against Lessee, any Guarantor or the Equipment or to gain possession of the Equipment.

(h)  Any cancellation or termination by Lessor, pursuant to the provisions of this Agreement, any Schedule, supplement or amendment hereto, of the lease of any Equipment hereunder, shall not release Lessee from any then outstanding obligations to Lessor hereunder.

(i)  To the extent that any Schedule would constitute chattel paper, as such term is defined in the Uniform Commercial Code as in effect in any applicable jurisdiction, no security interest therein may be created through the transfer or possession of this Agreement in and of itself without the transfer or possession of the original of a Schedule executed pursuant to this Agreement and incorporating this Agreement by reference; and no security interest in this Agreement and a Schedule may be created by the transfer or possession of any counterpart of the Schedule other than the original thereof, which shall be identified as the document marked "Original" and all other counterparts shall be marked "Duplicate".

(j)  This Agreement and any amendments, waivers, consents or supplements hereto or in connection herewith may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document. Delivery of an executed signature page of this Agreement or any delivery contemplated hereby by facsimile transmission shall be as effective as delivery of a manually executed counterpart thereof.

(k)  Each party hereto agrees to keep confidential, the terms and provisions of the Documents and the transactions contemplated hereby and thereby (collectively, the "Transactions"); provided that either party may disclose the terms and provisions of the Documents and transactions contemplated hereby and thereby (collectively, "Confidential Information") (i) to its or its controlling entities' employees, officers, directors, agents, consultants, auditors, attorneys and accountants, (ii) if it is reasonably believed by it to be compelled by any court decree, subpoena or other legal or administrative order or process, (iii) on the advice of its counsel, otherwise required by law or necessary or appropriate in connection with any litigation or other proceeding to which it or its affiliates is a party, or (iv) which becomes available to such party from a third party on a non-confidential basis. Notwithstanding the foregoing, the obligations of confidentiality contained herein, as they relate to the Transactions, shall not apply to the federal tax structure or federal tax treatment of the Transactions, and each party hereto (and any employee, representative, or agent of any party hereto) may disclose to any and all persons, without limitation of any kind, the federal tax structure and federal tax treatment of the Transactions. The preceding sentence is intended to cause each Transaction to be treated as not having been offered under conditions of confidentiality for purposes of Section 1.6011-4(b)(3) (or any successor provision) of the Treasury Regulations promulgated under Section 6011 of the Internal Revenue Code of 1986, as amended, and shall be construed in a manner consistent with such purpose. In addition, each party hereto acknowledges that it has no proprietary or exclusive rights to the federal tax structure of the Transactions or any federal tax matter or federal tax idea related to the Transactions.

(l)  Lessee hereby acknowledges and agrees that Lessor reserves the right to impose fees or charges for returned checks and certain optional services that Lessor may offer or provide to Lessee during the term of this Agreement. Lessor will notify Lessee the amount of the applicable fee or charge if Lessee requests such optional services. In addition, Lessor may make available to Lessee a schedule of fees or charges for such optional services from time to time or upon demand, provided, however, that such fees and charges are subject to change in Lessor's sole discretion without notice to Lessee.

**IN WITNESS WHEREOF**, Lessee and Lessor have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

LESSOR:
General Electric Capital Corporation
By: _Kurt Scheblein_

Name:___Kurt Scheblein_____

Title:___Sr. Risk Analyst_____

LESSEE:
Chicago Tribune Company
By: _Michael DiMaria_

Name:_Michael D. Maria_____

Title:_Transportation Director_

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Chicago Trubune Co. | Case Number: 08-13152 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br><br>GE Capital Corp.<br>c/o Aaron B. Chapin<br>Reed Smith LLP<br>10 S. Wacker Dr., Chicago, IL  60606<br>Telephone number: | **Court Claim Number:**_____<br>*(If known)*<br><br><br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| 1. **Amount of Claim as of Date Case Filed:**   $ 69,443.06  (see attached rider | **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** |
|---|---|
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 2. **Basis for Claim:**   Master Lease Agreement<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4). |
| 3. **Last four digits of any number by which creditor identifies debtor:** _____<br><br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | ☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5). |
| 4. **Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other<br>**Describe:**<br><br>**Value of Property: $**_____  **Annual Interest Rate**___%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $_____  **Basis for perfection:** _____<br><br>**Amount of Secured Claim: $**_____  **Amount Unsecured: $**_____ | ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| 6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:**<br><br>$_____ |
| 7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. (*See definition of "redacted" on reverse side.*)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | *\*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| Date: 6/11/0*<br><br>*[signature]*   Attorney for GE Capital | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B10 (Official Form 10) (12/07) – Cont.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien

documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)** Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documents or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

---

*SUBMITTING PROOF OF CLAIM FORM:*
*Submit original and one (1) copy of proof of claim form with any attachments to the Court at the below address. Do not include this page. To receive acknowledgment of receipt, an additional copy (original + 2 copies) must be provided along with a self-addressed stamped envelope.*
U.S. Bankruptcy Court, District of Delaware
ATTN: Claims
824 Market Street, 3rd Floor
Wilmington, DE 19801

# ReedSmith

Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
+1 312 207 1000
Fax +1 312 207 6400
reedsmith.com

Aaron B. Chapin
Direct Phone: +1 312 207 2452
Email: achapin@reedsmith.com

June 11, 2009

**Via Overnight Mail**

Tribune Company Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, Third Floor
New York, NY 10017

     **Re:**    **In re Tribune Company - Case No. 08-13141 (Bankr. D. Del)**

Dear Sir/Madam:

Please find the enclosed two proofs of claim to be filed in the above referenced bankruptcy case on behalf of creditor General Electric Capital Corporation. Once filed, please return the file stamped copy of each of the claims to the attention of the undersigned in the enclosed postage-paid, self-addressed envelope. Please direct all questions to the undersigned.

Thank you very much for your attention to this matter.

Very truly yours,

*[signature]*

Aaron B. Chapin

Enclosures

ABC/rrm

US_ACTIVE-101777268.1



**SHIP TO:**
CICHRA, JESSICA L.
(312) 201-1624
REED SMITH LLP - CHICAGO
10 SOUTH WACKER DRIVE
CHICAGO IL 60606

C/O EPIQ BANKRUPTCY SOLUTIONS, LLC
(312) 207-1000
TRIBUNE COMPANY CLAIMS PROCESSING
THIRD FLOOR
757 THIRD AVENUE
NEW YORK NY 10017-2072

2 LBS

1 OF 1

**UPS NEXT DAY AIR**
TRACKING #: 1Z 615 140 01 9899 2523

NY 100 7-02

1

BILLING: P/P

Client / Matter / Attorney Number: 515998/00115/005645

08 11.1.66      WINBOW V9.0A-0/2009

TM

FOLD HERE

---

**UPS CampusShip: View/Print Label**

1. **Print the label(s):** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the dotted line.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**

   **Customers without a Daily Pickup**
   o Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   o Hand the package to any UPS driver in your area.
   o Take your package to any location of The UPS Store®, UPS Drop Box, UPS Customer Center, UPS Alliances (Office Depot® or Staples®) or Authorized Shipping Outlet near you. Items sent via UPS Return Services℠ (including via Ground) are also accepted at Drop Boxes.
   o To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.

   **Customers with a Daily Pickup**
   o Your driver will pickup your shipment(s) as usual.

# EXHIBIT B

## PROTECTION ONE CLAIM

B10(Official Form 10)
(Rev. 6/91)

| United States Bankruptcy Court | PROOF OF CLAIM |
|---|---|
| District of___DELAWARE___ | CHAPTER 11 |

| In re (Name of Debtor) | Case Number |
|---|---|
| TRIBUNE COMPANY | 08-13141 (KCJ) |

NOTE: This form should not be used to make a claim for an administrative expense arising after commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to U.S.C § 503.

Name of Creditor
*(The person or entity to whom the debtor owes money or property)*
PROTECTION ONE

Name and Addresses Where Notices Should be Sent

PROTECTION ONE
c/o CREDITORS BANKRUPTCY SERVICE
P. O. BOX 740933
DALLAS, TX  75374
Telephone No.    (972) 644-1127

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statements giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:
XXXX2386

Check here if this claim: ☐ replaces    ☐ amends    a previously filed claim, dated:_____

**1. BASIS FOR CLAIM:**
- ☒ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other (Describe briefly)

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensations (Fill out below)
Your social security number _____
Unpaid compensations for services performed
from _____ to _____
(date)         (date)

**2. DATE DEBT WAS INCURRED:**

**3. IF COURT JUDGMENT, DATE OBTAINED:**

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another.
CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM.

☐ SECURED CLAIM $ _____
Attach evidence of perfection of security interest
Brief description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☐ Other (Describe briefly)

Amount of arrearage and other charges included in secured claim above, if any $ _____

☒ UNSECURED NONPRIORITY CLAIM $ 2,679.97
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM $ _____
Specify the priority of the claim
☐ Wages, salaries, or commissions (up to $2000), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier--11 U.S.C. § 507(a)(4)
☐ Contributions to an employee benefit plan--11 U.S.C. § 507(a)(4)
☐ Up to $900 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use-11 U.S.C. § 507(a)(6)
☐ Taxes or penalties of government units-- 11 U.S.C. § 507(a)(8)
☐ Other--11 U.S.C. § § 507(a)(2),(a)(5)-Describe briefly

| 5. TOTAL AMOUNT OF CLAIM AT THE TIME CASE FILED: | $ 2,679.97 (Unsecured) | $ (Secured) | $ (Priority) | $ 2,679.97 (Total) |
|---|---|---|---|---|

☐ Check this box if claim includes prepetition charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6. CREDITS AND SETOFFS:** Th[...] of making this proof of claim [...]

Filed: USBC - District of Delaware
Tribune Company, Et Al.
08-13141 (KJC)        0000002960

[barcode]

[...]d and deducted for the purpose [...] that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS**
invoices, itemized statement [...]
the documents are not avail[...]

[...]omissory notes, purchase orders, [...]vidence of security interests. If [...] summary.

**8. TIME-STAMPED COPY:** To r[...] envelope and copy of this pr[...]

[...]nclose a stamped, self-addressed

THIS SPACE IS FOR COURT USE ONLY

**FILED / RECEIVED**

MAY 18 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power attorney, if any) |
|---|---|
| 05/14/09 | D. M. MASON - AGENT |

1549108

*Penalty for presenting fraudulent claim: fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C § § 152 and 3571.*

**MASterMind Business – Version 6.18.01 (12)**   _ □ ×

Function   Command   Report   Help

| THE HARTFORD COURANT | Branch 11665-Connecticut |
|---|---|
| 285 BROAD ST | A/R 1,463.60 |
| ATTN: LISA CARDINI | Status Inactive |
| HARTFORD CT 06115-3785 | Type Protection One ☺ |
| Level Inactive 45 Day Call | Customer# ████2386   1 Site |

| THE HARTFORD COURANT | Branch 11665-Connecticut (1) |
|---|---|
| 40 SOUTH STREET | CS# 891-5385 |
|  | Status Inactive |
| NEW BRITAIN CT 06051-0000 | Type Commercial |
| ████████ RETAIL CX1 | Time 2:56pm   1 Customer |

**A/R History**                                                          arhist ×  ×

| 0-29 | 30-59 | 60-89 | 90-119 | 120-149 | 150-179 | 180-209 | 210-239 | Unapplied | Deposit |
|---|---|---|---|---|---|---|---|---|---|
|  |  | 1,374.97 | 50.88 | 37.75 |  |  |  |  |  |

Start Date   3/7/2001

End Date

— View —
- ○ Balance Forward
- ○ Application
- ○ Site Application

- ☐ Debits Only
- ☐ Credits Only
- ☐ Open Items Only
- ☑ Include Reversals and Transfers

Site Summary

Print History

Balance   1,463.60

---

**MASterMind Business – Version 6.18.01 (12)**   _ □ ×

Function   Command   Report   Help

| TRIBUNE NEWSPAPER | Branch 11305-Phoenix |
|---|---|
| 2873 N NEVADA | A/R 1,216.37 |
|  | Status Active |
| CHANDLER AZ 85225 | Type Protection One ☺ |
| Level | Customer# ████3582  1 Site |

| TRIBUNE NEWSPAPER | Branch 11305-Phoenix (4) |
|---|---|
| 2873 N NEVADA | CS# CN1 5487 |
|  | Status Active |
| CHANDLER AZ 85225 | Type Commercial |
| ████████ | Time 11:50am   1 Customer |

**A/R History**                                                          arhist ×

| 0-29 | 30-59 | 60-89 | 90-119 | 120-149 | 150-179 | 180-209 | 210-239 | Unapplied | Deposit |
|---|---|---|---|---|---|---|---|---|---|
| 609.73 |  |  | 606.64 |  |  |  |  |  |  |

Start Date

End Date

— View —
- ○ Balance Forward
- ○ Application
- ○ Site Application

- ☐ Debits Only
- ☐ Credits Only
- ☐ Open Items Only
- ☑ Include Reversals and Transfers

Site Summary

Print History

Balance   1,216.37

### CREDITORS BANKRUPTCY SERVICE

P.O. Box 741026
Dallas, TX  75374
972/644-1127

Dated: 05/14/09

UNITED STATES BANKRUPTCY COURT
FOR THE  DISTRICT OF DELAWARE
U.S. COURTHOUSE
824 MARKET ST, STE 850
WILMINGTON, DE 19801

Re:    TRIBUNE COMPANY
Case # 08-13141 (KCJ)

Please file the enclosed Proof of Claim and return the file-
stamped Creditor's copy in the stamped, self-addressed
envelope also enclosed.  Thank you for your assistance.

Thank you for your prompt attention.

_____
Creditor's Agent

CREDITORS BANKRUPTCY SERVICE

P.O. Box 741026
Dallas, TX  75374
972/644-1127

Dated: 05/14/09

UNITED STATES BANKRUPTCY COURT
FOR THE  DISTRICT OF DELAWARE
U.S. COURTHOUSE
824 MARKET ST, STE 850
WILMINGTON, DE 19801

Re: Case #      08-13141 (KCJ)

    Debtor      TRIBUNE COMPANY

Please correct the creditor's address on this case as
shown below for all checks and notices.

PROTECTION ONE
P.O. Box 740933
Dallas, TX  75374

Thank you for your prompt attention.

D. M. Mason
Creditor's Authorized Agent



## EXHIBIT C

**TOYOTA MOTOR CREDIT CLAIM NO. 5665**

**UNITED STATES BANKRUPTCY COURT**
For the District of Delaware

**SUPPLEMENTAL PROOF OF CLAIM**

In re: Insertco. Inc.

Case Number 08-13176 *08-13141*

NOTE: This claim should not be used to make a claim for an administrative expense arising after the commencement of the case.
A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Creditor Name
(Person or entity debtor owes) **Toyota Motor Credit Corporation (TMCC)**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach Copy of statement giving particulars.

Address Line 1 **19001 S. Western Ave WF-21**

☐ Check box if you have never received any notices from the bankruptcy court in this case.

Address Line 2

Address Line 3

☐ Check box if the address differs from the address on the envelope sent to you by the court.

City, ST ZIP **Torrance, CA 90509**

**THIS SPAC IS FOR COURT USE ONLY**

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:
**1/1-57625-001**

Check here is claim ☐ replaces ☐ amends a previously filed claim dated:

**1. BASIS FOR CLAIM**

☒ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other (Describe Briefly)
☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, Salaries, and compensation (Fill out below)
Your social security No. _____
Unpaid compensation for services performed from _____ to _____ (date)    (date)

**2. Date Debt Incurred (MMDDYY):** 0 5  0 9  0 6

**3. If Court Judgment, Date Obtained:**

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority. (2) Unsecured Priority. (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☒ SECURED CLAIM: $732.25*
Attach evidence of perfection of security interest
Brief Description of Collateral:
☐ Real Estate  ☒ Motor Vehicle  ☐ Other (Describe briefly)
Amount of arrearage and other charges at time case filed included in secured Claim, above, if any $0.0

☐ UNSECURED NONPRIORITY CLAIM: $
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

~~ORIGINAL~~

☐ UNSECURED PRIORITY CLAIM – Specify the priority of the claim.
☐ Wages, salaries, or commissions (up to $4300), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3)
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4)
☐ Up to $1,950 of deposits toward purchase, lease or rental or property or services for personal, family or household use – 11 U.S.C. § 507(a)(6)
☐ Taxes or penalties of governmental units – 11 U.S.C. § 507(a)(7)
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)____

**5. AMOUNT OF CLAIM AT TIME CASE FILED:**

| 7 3 2 . 2 5 | | |
|---|---|---|
| (Secured) | (Unsecured Nonpriority) | (Unsecured Priority) |

☐ Check this box is claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**\*\*Represents payoff including residual. At maturity on 05/09/09, equipment must either be returned or purchased in full. Debtor to make post-petition payments directly to TMCC.**

**THIS SPACE IS FOR COURT USE ONLY**

**6. CREDITS AND SETOFFS:** The amount of all ...... ....ted for the purpose of making this proof of claim. In filing this claim, clain

Filed: USBC - District of Delaware
Tribune Company, Et Al.
08-13141 (KJC)         0000005665

**7. SUPPORTING DOCUMENTS** statements of running accounts, oc documents are unavailable, attach

purchase orders, invoices, itemized ...uments are not available, explain. If the

**8. TIME-STAMPED COPY: To r** of this proof of claim.

...amped, self-addressed envelope and copy

Date **May 29, 2009**

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)

Pete Athey  Asset Protection Administrator (800) 231-9785 x65913

E

**TOYOTA**
FINANCIAL SERVICES

44503 / 51793

# COMMERCIAL LEASE AGREEMENT
## (EQUIPMENT)

LEASE NO. ___LA44503___    LEASE DATE: ___04/27/2006___

| LESSEE NAME AND ADDRESS OF PRINCIPAL OFFICE |
|---|

INSERTCO, INC.

57-11 49TH PLACE
MASPETH NY 11378

☐ SOLE PROPRIETOR   ☐ PARTNERSHIP   ☑ CORPORATION   ☐ OTHER

| LESSOR NAME AND ADDRESS |
|---|

TOYOTA LIFT OF NEW YORK
20 B CENTRAL AVENUE
FARMINGDALE NY 11735

| ADDRESS OF LOCATION OF EQUIPMENT |
|---|

57-11 49TH PLACE              QUEENS
MASPETH NY 11378

RECEIVED

| INSURANCE COMPANY OR AGENT |
|---|

SAPERSTEIN AGENCY

(516) 795 4100

This Agreement ☐ is   ☑ is not a **FULL SERVICE MAINTENANCE AGREEMENT.**

The following Exhibits, if any, are attached hereto and incorporated herein by this reference:

Exhibit "A" _N/A_
Exhibit "B" _N/A_

## 1. LEASE OF EQUIPMENT.

Subject to the terms and conditions of this Commercial Lease Agreement ("Agreement"), Lessor hereby rents to Lessee and Lessee hereby rents from Lessor, the following material handling vehicle(s) complete with all additions, attachments and accessories and all other material handling vehicle(s) described on a Notice of Delivery ("Notice of Delivery") executed by Lessor and Lessee from time to time in the form of Supplement(s) attached hereto and incorporated herein by this reference (collectively referred to as the "Equipment"):

| # OF UNITS | MAKE | MODEL | MONTHLY RENTAL PER UNIT (PLUS APPLICABLE TAXES) | INITIAL TERM | SECURITY DEPOSIT | HOURLY OVERTIME RATE PER UNIT |
|---|---|---|---|---|---|---|
| 1 | Toyota | 7FGCU25 | $725.20 | 36 | $0.00 | $0.00 |

| SERIAL NUMBERS |
|---|
| 30104 |

| ATTACHMENTS |
|---|
| |

44503 / 51793

All Equipment rented hereunder is rented f.o.b., at 'Lessor's address set forth above and will be used by Lessee in Lessee's operation at the address set forth above and as described in a Survey Report executed by Lessor and Lessee (the "Survey Report"). Lessee shall not remove any of the Equipment to any other place without Lessor's prior written consent.

Where battery powered Equipment is rented, any additional batteries and chargers other than those provided above and included in the monthly rental per item shall be rented at the additional sole cost and expense of Lessee.

If an hourly overtime rate is shown above, the hourly overtime rate will apply to each hour of use of any Equipment in excess of _____0_____ hours in any calendar quarter as determined by the hour meter or other mechanical device used to record hours of use supplied with the Equipment ("hour meter"). Readings of the hour meter will be taken and billed by Lessor quarterly. If any hour meter on any Equipment fails to function, thereby rendering an hour meter reading unavailable for such Equipment, the hours of use will be ascertained by computing the average number of hours per month that the Equipment was used during the previous 3 months of recorded usage (or in case such previous period of recorded use shall be less than 3 months, then during such lesser period) and multiplying the monthly average so computed by the number of months, or fractions thereof, during which said hour meter for such Equipment shall have failed to function. Lessee agrees to pay said overtime rental charges within 10 days from the date of Lessor's invoice for such charges.

The monthly rentals and estimated annual running hours have been calculated on the basis of information supplied by Lessee and data developed by Lessor as set forth in the Survey Report.

**2.   TERM AND RENEWAL.**

  2.1   The original term of rental of the Equipment will commence with the delivery thereof and, unless sooner terminated as provided herein, will continue for the number of months set forth above under "Initial Term" (the "Initial Term").

  2.2   The Initial Term will be extended automatically from month to month after the expiration thereof unless either of the parties gives notice to the other of an intention to terminate such rental at least 60 days prior to the expiration of the Initial Term, or at least 10 days prior to the expiration of any extended term.

**3.   RENT.**

  Lessee will pay the Monthly Rental Per Unit stated in Article 1 with respect to each item of Equipment commencing on the day of delivery and continuing on the same day of the month of each successive month thereafter during the Initial Term, as extended pursuant to Section 2.2 above, until the Equipment is returned to Lessor. All rent and other sums payable to Lessor will be paid to Toyota Motor Credit Corporation at the address set forth below its signature or at such other address as Toyota Motor Credit Corporation may provide in writing.

**4.   DELIVERY.**

  When Equipment is delivered to Lessee, Lessor will prepare and deliver to Lessee a Notice of Delivery which will set forth separately for each item the following information: number of units, a description of the Equipment, serial number(s) and delivery date. Although Lessor will try to deliver the Equipment by the delivery date requested, TIME OF DELIVERY IS *NOT* OF THE ESSENCE AND LESSOR ASSUMES NO LIABILITY FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR FAILURE TO MAKE DELIVERY ON SUCH DATE. Lessee or Lessee's authorized representative will execute such Notice of Delivery and return it to Lessor.

**5.   RETURN OF EQUIPMENT.**

  5.1   Lessee will return all of the Equipment at the expiration or earlier termination of the lease term, freight prepaid to a point designated by Lessor. The designated point will be in no event farther than Lessor's place of business. The Equipment will be returned in safe operating condition.

  5.2   For purposes of this Article the phrase "safe operating condition" means that the Equipment loaded to its rated capacity: (i) has no missing or broken components or accessories; (ii) starts under its own power and idles; (iii) does not leak oil, water, fuel, or any other fluids; (iv) moves through its normal speed ranges in both forward and reverse; (v) steers normally right and left in both forward and reverse; (vi) is able to stop by means of service brakes in a safe distance in both forward and reverse; (vii) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (viii) its attachments, if so equipped, perform all of their required functions. In addition, to be in safe operating condition, Equipment will have: (a) serviceable tires with some remaining tread and without chunking or flat spots; and (b) operational horn, parking brake and lights.

  5.3   If all of the Equipment is not returned in safe operating condition, Lessor will bill Lessee for the amount of Lessor's then normal charge to its customers for any repairs necessary to place the Equipment in safe operating condition, regardless of whether Lessor actually performs such repairs, and Lessee will pay such bill within 30 days after its receipt thereof.

44503 / 51793

## 6. MAINTENANCE, CARE AND INSPECTION.

6.1    Lessee will keep the Equipment in a covered area when not in use. Lessee will cause the Equipment to be operated only by competent, fully-trained-in-use employees of Lessee. Lessee will also assure that the Equipment is operated with driver's overhead guard and load backrest extension installed. Lessee agrees to operate the Equipment within its rated capacity and not to alter or modify the Equipment.

If this Agreement is a **FULL SERVICE MAINTENANCE AGREEMENT**, the following provisions will also apply:

6.2A    Subject to the performance by Lessee of its obligations with respect to the Equipment, Lessor will service and maintain the Equipment in proper working condition. Lessee agrees to make the Equipment available for servicing by representatives of Lessor at reasonable times during Lessor's business hours. Lessee will provide, without charge to Lessor, a suitable area within Lessee's premises in order that Lessor's agents or employees may service each unit of Equipment and perform such repairs as can reasonably be made without removing the Equipment from Lessee's premise. The space will be well lighted, heated and ventilated. Where the number and type of Equipment warrants, Lessee will provide an adequate, protected storage area and facilities, without charge, in order that Lessor may maintain an inventory of supplies or parts required in the servicing of the Equipment.

6.3A    If any item of Equipment is out of service for needed repairs, due to normal use, Lessor will promptly, after notice by Lessee, arrange to repair such Equipment. If Lessor deems it impracticable to promptly repair any such item of disabled Equipment, Lessor will temporarily substitute similar Equipment in good operating condition until the rented Equipment is put into proper operating condition. The substituted Equipment will be as nearly practicable of the same capacity and general specifications as the rented Equipment; provided, that Lessor will not be required to provide specialized attachments or accessories, or to make special alterations to the substituted Equipment. Such substituted Equipment will, while in the service of Lessee, be subject to the terms and conditions and the payment of rentals and charges provided in this Agreement.

6.4A    Lessee, at its own cost and expense, will be responsible for the normal needs required for the Equipment in its daily operation, including; (i) the making of a routine check of each unit at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. gas Equipment is rented furnishing and storing L. P. gas fuel and cylinders and changing such cylinders as required.

If this Agreement is **NOT A FULL SERVICE MAINTENANCE AGREEMENT**, the following provisions will apply:

6.2B    Lessor will inspect the Equipment periodically during the lease term. Lessor will furnish to Lessee a report after each such inspection on the condition of each unit of Equipment and any repair work that may be required.

6.3B    Lessee agrees to perform, at its own cost and expense, according to Lessor's manuals for maintenance and operation, all Equipment maintenance, service and repair (including both labor and materials) including, but not limited to:

(i)    Daily maintenance such as (i) the making of a routine check of each item at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. gas equipment is rented, furnishing and storing the L. P. gas fuel and cylinders and changing such cylinders as required.

(ii)    Preventive maintenance service (per lubrication charts in manual).

(iii)    Repairing, overhauling or adjusting of drive line, drive axle, uprights, steering gear, steering axle, hydraulic system brakes, power steering components, chains; and on gas-powered Equipment, the engine, engine accessories, belts, clutch and transmissions; and on battery-powered Equipment, the electric drive and pump motors, and all other routine repair work required to keep the Equipment in good operating condition.

(iv)    Repairing, overhauling or adjusting of battery and charging Equipment, where battery-powered Equipment is rented.

(v)    Replacing or repairing of tires.

(vi)    Repairs that may be required as determined by Lessor during its periodic inspection and report to Lessee.

44503 / 51793

6.4B  Lessee will, at its own expense and until the return of the Equipment at the expiration of the lease term, maintain the Equipment in good operating order, repair, and appearance and, in effecting maintenance and repairs, will have such work performed only by qualified persons who are satisfactory to Lessor. If Lessor, during any inspection, determines that Lessee has failed to perform its obligations as set forth above with respect to any item of Equipment, Lessor will give Lessee written notice thereof. Unless Lessee performs such obligations within 30 days from the date of such notice, Lessor will have the right, but not the obligation, to terminate the Lease and/or to perform the maintenance, service and repair required to be performed by Lessee under this Agreement. If Lessor performs such maintenance, service or repair, Lessee will pay Lessor an amount equal to Lessor's then normal charge to its customers for similar services, such payment to be made within thirty (30) days after Lessee receives Lessor's invoice with respect thereto.

## 7.  TAXES.

Lessee will be responsible for and pay when billed by Lessor any and all taxes, fees, or assessments, however designated, levied, or based, relating to the transfer, use, possession or operation of the Equipment, including but not limited to personal property taxes, gross receipts taxes, privilege taxes, excise taxes, license taxes, and sales and use taxes, together with any penalties, times or interest thereon, and excluding only franchise taxes and taxes measured by the net income of the Lessor. When personal property taxes are not billed on an item basis by the respective governmental authority, Lessor will determine the appropriate tax liabilities attributable to the leased Equipment on a reasonable basis. Lessee will give immediate notice to Lessor of any attachment, tax notice, or inquiries from taxing authorities concerning the Equipment.

## 8.  LIABILITY OF LESSEE.

Lessee assumes all risks and liabilities arising from Lessee's possession, use and operation of the Equipment from the moment of delivery to Lessee to the moment of return to Lessor. Unless directly caused by Lessor's sole negligence, Lessee agrees to indemnify and hold Lessor, its officers, directors, stockholders, employees, agents and representatives harmless from any and all of the following whether the same be actual or alleged: all loss, damage, claims, suits, taxes, liens, penalties, fines, liability and expense (including attorneys' fees) arising in any manner as a result of the breach by Lessee, any agent, employee or servant of Lessee, any assignee of Lessee and any other person using or in possession of the Equipment, of any term of this Agreement, or relating directly or indirectly to the possession, use and operation of the Equipment including, but not limited to injuries or death to persons or damages to or destruction of property, claims and liens for storage, labor and materials and all loss of and damage to the Equipment. Should Lessor assign any of its rights or delegate any of its obligations under this Agreement, Lessee agrees that Lessor, Lessor's assignee and the officers, directors, stockholders, employees, agents and representatives of Lessor's assignee, will be entitled to the indemnity provided hereunder.

## 9.  INSURANCE.

Lessee will provide and pay for an all-risk insurance insuring against physical loss or damage to the Equipment in an amount satisfactory to Lessor. Lessee will also provide and pay for public bodily injury and property damage liability insurance against loss caused by or arising from Lessee's possession, use or operation of the Equipment. The minimum limits for such liability insurance shall be not less than One Million Dollars combined single limit. Lessee will furnish Lessor with certificates of insurance evidencing such coverages and designating both Lessor and its assigns as additional insureds and loss payees under the policy. Such certificates shall provide for 30 days prior written notice by registered mail to Lessor of any cancellation or change reducing coverage. The insurance so provided will be effective during the period from the moment of delivery of each item of Equipment under lease to Lessee until the moment of return receipt by Lessor. Lessor reserves the right, but not the obligation, upon failure of Lessee to furnish such certificates of insurance or upon receipt of a notice of cancellation or change reducing coverage to make such arrangements for insurance as Lessor believes necessary. Lessee will pay for the cost of such insurance upon demand.

## 10.  THEFT OR DESTRUCTION.

If any of the Equipment is stolen or disappears or is damaged to the extent that it is impossible to place it back into the same condition as when received (ordinary wear and tear excepted) ("Casualty Occurrence"), Lessee agrees to reimburse Lessor immediately for the loss of the Equipment by paying Lessor an amount equal to the then unpaid balance of aggregate rental for such Equipment plus the fair market value at the expiration of the Lease. Fair market value is the value of the Equipment obtained in an arms length transaction between an informed and willing buyer and seller, valued at its highest and best use and not valued at a forced sale or liquidation value, without deduction for the costs of removal of Equipment from its current location at expiration of the Lease. Upon receipt of such payment, Lessor will assign title of the Equipment to Lessee and Lessee's obligations to pay rent shall cease upon such assignment and this Agreement will terminate.

44503 / 51793

## 11. OWNERSHIP.

It is expressly understood and agreed that this Agreement is a lease only and Lessee does not acquire title to any of the Equipment. Lessee will not cause or allow any liens or mortgages of any kind whatsoever to be placed on the Equipment. Lessee agrees that it will not take any position on any tax returns or other filings with any taxing authority which is inconsistent with the status of this Agreement as a lease or Lessor's status as the owner of the Equipment for income tax purposes. Lessee will not make any improvements other than ordinary maintenance and repairs to the Equipment without the prior written approval of Lessor.  Lessee authorizes Lessor to take any actions reasonably necessary to perfect Lessor's interest in the Equipment, including, but not limited to the filing of any financing statements, or other documents, with or without Lessee's signature. If Lessee's signature is required, Lessee hereby appoints Lessor as its attorney-in-fact to execute any such documents or financing statements.  In the event that Lessor prepares and files such financing statements, Lessee agrees to pay Lessor a fee of $50, plus actual filing costs.

## 12. DEFAULT.

Any one or more of the following shall constitute an Event of Default:

12.1  Failure by Lessee to make any payment when it is due, if such default shall continue for a period of 10 days after the date such payment is due;

12.2  Default by Lessee in the performance of any other provision of this Agreement, if such default shall continue for a period of 10 days after written notice of such default is given by Lessor to Lessee;

12.3  Institution of a proceeding in reorganization, bankruptcy or insolvency by or against Lessee or its property in any court, which proceeding is not dismissed within a period of 30 days; or.

12.4  Lessee (i) is unable to pay its debts as they become due, (ii) makes an assignment for the benefit of creditors, (iii) consents to the appointment of a receiver of itself or of the whole or any substantial part of its property;

12.5  Any material misrepresentation of fact, circumstance or breach of any warranty or covenant by Lessee.

## 13. REMEDIES.

13.1  If an Event of Default occurs, Lessor may, at its option, exercise any one or more of the following remedies:

a. Proceed by appropriate court action or actions, either at law or in equity, to enforce performance by Lessee of the applicable covenants and terms of this Agreement or to recover damages for the breach of such covenants and terms;

b. By notice in writing to Lessee, terminate this Agreement as to all or any of the Equipment, whereupon all right and interest of Lessee to or in the use of said Equipment will cease. In such event, Lessee will deliver the Equipment as specified in Article 5.1 , or such other place as may be designated by Lessor, without relieving Lessee of its other obligations under this Agreement. Lessor may, directly or by its agents, peacefully enter upon the premises of Lessee without demand or notice, or other premises where any of the said Equipment may be or is reasonably believed to be without demand or notice, and take possession thereof;

c. Sell any of the Equipment at public or private sale, as Lessor may determine, free and clear of any rights of Lessee and without any duty to account to Lessee with respect to such sale or for the proceeds thereof; or

d. Hold, keep idle or lease to others any of the Equipment, as Lessor in its sole discretion may determine, free and clear of any rights of Lessee and without any duty to account to Lessee with respect to such action or for any proceeds with respect thereto.

13.2  In an Event of Default, Lessor shall have the right to immediately terminate this Agreement and accelerate all payments, charges and other amounts due. Lessee agrees that it will pay any expenses including reasonable attorneys fees incurred by Lessor in the repossession or seizure of the Equipment or in the enforcement of any right hereunder.

13.3  The remedies provided by this Agreement in favor of Lessor will not be deemed exclusive, but will be cumulative and will be in addition to all other remedies in Lessor's favor existing at law or in equity. Lessee hereby waives any and all rights of setoff. The exercise of any right or remedy available to Lessor will not operate as a waiver of any other right or remedy. The failure of Lessor to exercise or a delay by Lessor in exercising any right or remedy will not operate as a waiver of such right or any other right.

## 14. COLLECTION COSTS.

If Lessee breaches any term or condition of this Agreement or otherwise defaults, Lessee agrees to pay all of Lessor's expenses incurred in exercising any of Lessor's rights under this Agreement, including but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorney's fees paid to an attorney who is not a salaried employee, not to exceed the amount permitted by applicable law.

## 15. LATE CHARGE.

If a payment due hereunder is received by Lessor more than 10 days after its scheduled due date Lessee shall pay a late charge equal to 5% of the unpaid amount of the late payment or maximum allowed by law, whichever is less, but only once for each such late payment.

44503 J 51793

## 16. WARRANTY SERVICE.

Lessor will deliver to Lessee the factory limited warranty for the Equipment to enable Lessee to obtain customary warranty service furnished on the Equipment. Other than delivering said factory warranty, there are no representations, promises, statements or warranties, express or implied, unless endorsed hereon in writing, and **THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL LESSOR BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM THE EQUIPMENT OR LESSEE'S USE THEREOF.**

## 17. ASSIGNMENT.

17.1  Lessee will not assign, mortgage or encumber this Agreement or any Equipment leased hereunder, nor sublet or suffer or permit the Equipment to be used by others without the prior written consent of Lessor which consent shall not be unreasonably withheld. As to any assignment consented to by Lessor (i) the term of such assignment will not extend beyond the final day of the term of this Agreement and (ii) the rights of the assignee will be expressly subject to all of the terms of this Agreement. Lessee understands and agrees that it will remain liable as a principal hereunder and will be bound by all the terms and conditions of this Agreement notwithstanding any express consent by Lessor to any such assignment.

17.2  Lessor will have the right to assign any or all of its rights and obligations at any time without notice to Lessee and without Lessee's consent.  Lessee acknowledges that Lessor will promptly assign this Agreement to Toyota Motor Credit Corporation.

## 18. SECURITY DEPOSIT.

Lessor may use the Security Deposit to pay all amounts due under this Agreement. If Lessee performs all of its obligations under this Agreement, the Security Deposit will be returned to Lessee at the expiration or termination of this Agreement. No interest, increase or profits will be paid to the Lessee on the Security Deposit.

## 19. REPRESENTATIONS AND WARRANTIES.

19.1  Lessee represents and warrants that any financial information or other information provided to Lessor is true and accurate, and any information provided to Lessor for inclusion in the Survey Report is a true and accurate statement of Lessee's anticipated use of the Equipment.

19.2  Lessee represents and warrants to Lessor that the Equipment shall only be used in Lessee's trade or business and in compliance with all federal, state and local laws and regulations. Lessee agrees to maintain in good and legible condition any identification numbers, labels, tags and other markings used to identify the Equipment as Lessor's property.

## 20. NOTICES.

All notices or demands pursuant to this Agreement shall be in writing, and deemed made when sent by regular United States mail, registered or certified mail, return receipt requested, or other overnight or express delivery, or electronically with confirmation of receipt to the sender, to the address set herein or such other address as advised of in writing.

## 21. GOVERNING LAW.

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the state of the Lessor's place of business.

## 22. FURTHER ASSURANCES.

From time to time each party will execute and deliver such further instruments and will take such other action as any other party reasonably may request in order to discharge and perform their respective obligations and agreements hereunder.

## 23. DELAYS.

Lessor will not incur any liability to Lessee for any obligations, if prevented by wars, fires, strikes or other labor disputes, accidents, acts of God, governmental regulations or interference, shortages of labor or materials, delays in transportation, non-availability of same from the manufacturer, or other causes beyond Lessor's control. IN NO EVENT SHALL LESSOR BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES.

## 24. SEVERABILITY AND WAIVER.

Any provision of this Agreement prohibited by applicable law will be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof.  The failure of either party to require strict performance of any provision will not diminish that party's right thereafter to require strict performance of any operation.

44503 , 51793

**25. PRIOR APPROVAL.**

This Agreement shall not be effective until reviewed and accepted by Toyota Motor Credit Corporation. Lessee shall not take delivery of the Equipment until such time.

**26. SUCCESSORS AND ASSIGNS.**

This Agreement shall be binding on, and will inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

**27. SURVIVAL OF COVENANTS, REPRESENTATIONS AND WARRANTIES.**

The covenants, representations, warranties and indemnities of Lessee set forth in this Agreement shall survive the termination of this Agreement.

**28. AMENDMENTS OR MODIFICATIONS.**

This Agreement constitutes the entire agreement of the parties.  No modification or amendment shall be effective unless made in writing and signed by both parties.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be duly executed as of the day and year first above written.

Lessee:    INSERTCO, INC.

By: _____    Title: _Vice President_    Date: _5/8/06_

**Assignment of Lease Agreement:**

The authorized signature of the Lessor below has the effect of:

1.  Accepting the terms and conditions of this Agreement; and
2.  Assigning to Toyota Motor Credit Corporation all of Lessor's right, title and interest in and to the leased Equipment and this Agreement, including all amounts to become due under it.

Lessor:    TOYOTA LIFT OF NEW YORK

By: _____    Title: _Cont_    Date: _5/10/06_

**Acceptance of Assignment of Lease Agreement:**

**TOYOTA MOTOR CREDIT CORPORATION**

By: _____

Title: _____

Address:  P.O. Box 3457
Torrance, California  90510

445t3 / 51793

**⊕TOYOTA**
FINANCIAL SERVICES

# ADDENDUM TO LEASE AGREEMENT
# WITH OPTION TO PURCHASE

This Addendum to Lease Agreement is incorporated into and made a part of that certain Commercial Lease Agreement (Equipment) dated as of ___04/27/2006___ (the "Lease"), by and between ___INSERTCO, INC.___

as Lessee ("Lessee"), and ___TOYOTA LIFT OF NEW YORK___
as Lessor ("Lessor").

The following provisions are added to the terms of the Lease:

### 29.  OPTION TO PURCHASE.

Lessor hereby grants to Lessee the option (the "Option") to purchase the Equipment described in the Lease upon termination of the Lease, subject to the terms and conditions set forth herein. The Option shall be exercised, if at all, by written notice to Lessor on or before the date that is 60 days prior to the expiration date of the term of the Lease. If Lessee is in default under any of the terms, covenants and conditions of the Lease at the time that Lessee exercises the Option or any time thereafter, Lessor shall have, in addition to all of Lessor's rights and remedies provided in the Lease, the right to terminate the Option. In the event Lessee exercises the Option within the time period set forth above, Lessee shall deliver to Lessor, upon termination of the Lease and payment in full of all rents and obligations due under the Lease, the amount of _____ ONE _____ Dollars ( ___$1.00___ ) for each unit of Equipment purchased by Lessee hereunder, plus applicable sales or use tax. Lessor shall execute and deliver to Lessee all documents necessary to effect transfer of ownership of the Equipment upon such payment by Lessee. **LESSOR MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONDITION OF THE EQUIPMENT AS OF THE TERMINATION DATE OF THE LEASE AND LESSEE SHALL PURCHASE THE EQUIPMENT IN ITS "AS-IS", "WHERE-IS" CONDITION.** In the event Lessee does not elect to exercise the Option, the Equipment shall be returned to Lessor upon termination of the Lease pursuant to the terms of the Lease.

### 30.  USE OF EQUIPMENT

Lessee hereby warrants and represents that Lessee is not leasing the Equipment for personal, family, household or agricultural purposes.

In WITNESS WHEREOF, the undersigned have executed this Addendum to Lease Agreement as of the date first set forth in the Lease.

Lessee
INSERTCO, INC.

By: _____          Title: _Vice President_____

Lessor
TOYOTA LIFT OF NEW YORK

By: _____          Title: _GNL_____

TOYOTA MOTOR CREDIT CORPORATION

By: _____          Title: _____

## UCC FINANCING STATEMENT
FOLLOW  INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Phone (800) 331-3282    Fax (818) 662-4141

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

NY, Secretary of State

**FILING NUMBER:  200605125462761**

**FILING DATE:  12-MAY-2006**

**IMAGE REFLECTS DATA FROM AN ELECTRONIC FILING**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Insertco, Inc | | | | |

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 57-11 49th Place | Maspeth | NY | 11378 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Corporation | NY | ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Toyota Motor Credit Corporation | | | | |

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P. O. Box 3457 | Torrance | CA | 90510-3457 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**
ONE (1) NEW TOYOTA FORKLIFT
MODEL # 7FGCU25
SERIAL # 96794

**5. ALTERNATIVE DESIGNATION [if applicable]:** ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

**6.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable]   **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** (ADDITIONAL FEE) [optional]  ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA** retail

20943357

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

| UNITED STATES BANKRUPTCY COURT<br>For the District of Delaware | SUPPLEMENTAL<br>PROOF OF CLAIM |
|---|---|

| In re: Insertco, Inc. | Case Number 08-13176 |
|---|---|

NOTE: This claim should not be used to make a claim for an administrative expense arising after the commencement of the case.
A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Creditor Name**
(Person or entity
debtor owes)    **Toyota Motor Credit Corporation (TMCC)**

Address Line 1    19001 S. Western Ave WF-21

Address Line 2

Address Line 3

City, ST ZIP    Torrance, CA 90509

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach Copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**THIS SPAC IS FOR COURT USE ONLY**

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:

1/1-57625-001

Check here is claim ☐ replaces ☐ amends    a previously filed claim dated: _____

**1. BASIS FOR CLAIM**

☒ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other (Describe Briefly)
☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☒ Wages, Salaries, and compensation (Fill out below)
Your social security No. _____
Unpaid compensation for services performed
from _____ to _____
(date)      (date)

**2. Date Debt Incurred: (MMDDYY)**
0 5  0 9  0 6

**3. If Court Judgment, Date Obtained:**
_____

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority. (2) Unsecured Priority. (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☒ SECURED CLAIM: $732.25*
Attach evidence of perfection of security interest
Brief Description of Collateral:
☐ Real Estate   ☒ Motor Vehicle   ☐ Other (Describe briefly)
Amount of arrearage and other charges at time case filed included in secured Claim above, if any $0.00

☐ UNSECURED NONPRIORITY CLAIM: $
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM – Specify the priority of the claim.
☐ Wages, salaries, or commissions (up to $4300), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3)
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4)
☐ Up to $1,950 of deposits toward purchase, lease or rental or property or services for personal, family or household use – 11 U.S.C. § 507(a)(6)
☐ Taxes or penalties of governmental units – 11 U.S.C. § 507(a)(7)
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)_____

**5. AMOUNT OF CLAIM AT TIME CASE FILED:**

| | 7 3 2 . 2 5 | | |
|---|---|---|---|
| | (Secured) | (Unsecured Nonpriority) | (Unsecured Priority) |

☐ Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.
**Represents payoff including residual. At maturity on 05/09/09, equipment must either be returned or purchased in full. Debtor to make post-petition payments directly to TMCC.**

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**THIS SPACE IS FOR COURT USE ONLY**

**7. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. TIME-STAMPED COPY:** To receive an acknowledgment of the filing of your claim, enclosed a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br><br>May 29, 2009 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>Pete Athey  Asset Protection Administrator (800) 451-9785 x65913 |
|---|---|

**TOYOTA** FINANCIAL SERVICES

44503 / 51793

# COMMERCIAL LEASE AGREEMENT
## (EQUIPMENT)

LEASE NO. _LA44503_    LEASE DATE: _04/27/2006_

| LESSEE NAME AND ADDRESS OF PRINCIPAL OFFICE |
|---|
| INSERTCO, INC.<br><br>57-11 49TH PLACE<br>MASPETH NY 11378<br><br>☐SOLE PROPRIETOR  ☐PARTNERSHIP  ☑CORPORATION  ☐OTHER |

| LESSOR NAME AND ADDRESS |
|---|
| TOYOTA LIFT OF NEW YORK<br>20 B CENTRAL AVENUE<br>FARMINGDALE NY 11735 |

| ADDRESS OF LOCATION OF EQUIPMENT |
|---|
| 57-11 49TH PLACE      QUEENS<br>MASPETH NY 11378 |

RECEIVED

| INSURANCE COMPANY OR AGENT |
|---|
| SAPERSTEIN AGENCY<br><br>(516) 795 4100 |

This Agreement ☐is  ☑is not a **FULL SERVICE MAINTENANCE AGREEMENT.**

The following Exhibits, if any, are attached hereto and incorporated herein by this reference:

Exhibit "A" _N/A_
Exhibit "B" _N/A_

## 1. LEASE OF EQUIPMENT.

Subject to the terms and conditions of this Commercial Lease Agreement ("Agreement"), Lessor hereby rents to Lessee and Lessee hereby rents from Lessor, the following material handling vehicle(s) complete with all additions, attachments and accessories and all other material handling vehicle(s) described on a Notice of Delivery ("Notice of Delivery") executed by Lessor and Lessee from time to time in the form of Supplement(s) attached hereto and incorporated herein by this reference (collectively referred to as the "Equipment"):

| # OF UNITS | MAKE | MODEL | MONTHLY RENTAL PER UNIT (PLUS APPLICABLE TAXES) | INITIAL TERM | SECURITY DEPOSIT | HOURLY OVERTIME RATE PER UNIT |
|---|---|---|---|---|---|---|
| 1 | Toyota | 7FGCU25 | $725.20 | 36 | $0.00 | $0.00 |

| SERIAL NUMBERS |
|---|
| 50734 |

| ATTACHMENTS |
|---|
| |

44503 / 51793

All Equipment rented hereunder is rented f.o.b., at Lessor's address set forth above and will be used by Lessee in Lessee's operation at the address set forth above and as described in a Survey Report executed by Lessor and Lessee (the "Survey Report"). Lessee shall not remove any of the Equipment to any other place without Lessor's prior written consent.

Where battery powered Equipment is rented, any additional batteries and chargers other than those provided above and included in the monthly rental per item shall be rented at the additional sole cost and expense of Lessee.

If an hourly overtime rate is shown above, the hourly overtime rate will apply to each hour of use of any Equipment in excess of _____ 0 _____ hours in any calendar quarter as determined by the hour meter or other mechanical device used to record hours of use supplied with the Equipment ("hour meter"). Readings of the hour meter will be taken and billed by Lessor quarterly. If any hour meter on any Equipment fails to function, thereby rendering an hour meter reading unavailable for such Equipment, the hours of use will be ascertained by computing the average number of hours per month that the Equipment was used during the previous 3 months of recorded usage (or in case such previous period of recorded use shall be less than 3 months, then during such lesser period) and multiplying the monthly average so computed by the number of months, or fractions thereof, during which said hour meter for such Equipment shall have failed to function. Lessee agrees to pay said overtime rental charges within 10 days from the date of Lessor's invoice for such charges.

The monthly rentals and estimated annual running hours have been calculated on the basis of information supplied by Lessee and data developed by Lessor as set forth in the Survey Report.

2. **TERM AND RENEWAL.**
   2.1  The original term of rental of the Equipment will commence with the delivery thereof and, unless sooner terminated as provided herein, will continue for the number of months set forth above under "Initial Term" (the "Initial Term").
   2.2  The Initial Term will be extended automatically from month to month after the expiration thereof unless either of the parties gives notice to the other of an intention to terminate such rental at least 60 days prior to the expiration of the Initial Term, or at least 10 days prior to the expiration of any extended term.

3. **RENT.**
   Lessee will pay the Monthly Rental Per Unit stated in Article 1 with respect to each item of Equipment commencing on the day of delivery and continuing on the same day of the month of each successive month thereafter during the Initial Term, as extended pursuant to Section 2.2 above, until the Equipment is returned to Lessor. All rent and other sums payable to Lessor will be paid to Toyota Motor Credit Corporation at the address set forth below its signature or at such other address as Toyota Motor Credit Corporation may provide in writing.

4. **DELIVERY.**
   When Equipment is delivered to Lessee, Lessor will prepare and deliver to Lessee a Notice of Delivery which will set forth separately for each item the following information: number of units, a description of the Equipment, serial number(s) and delivery date. Although Lessor will try to deliver the Equipment by the delivery date requested, TIME OF DELIVERY IS *NOT* OF THE ESSENCE AND LESSOR ASSUMES NO LIABILITY FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR FAILURE TO MAKE DELIVERY ON SUCH DATE. Lessee or Lessee's authorized representative will execute such Notice of Delivery and return it to Lessor.

5. **RETURN OF EQUIPMENT.**
   5.1  Lessee will return all of the Equipment at the expiration or earlier termination of the lease term, freight prepaid to a point designated by Lessor. The designated point will be in no event farther than Lessor's place of business. The Equipment will be returned in safe operating condition.
   5.2  For purposes of this Article the phrase "safe operating condition" means that the Equipment loaded to its rated capacity: (i) has no missing or broken components or accessories; (ii) starts under its own power and idles; (iii) does not leak oil, water, fuel, or any other fluids; (iv) moves through its normal speed ranges in both forward and reverse; (v) steers normally right and left in both forward and reverse; (vi) is able to stop by means of service brakes in a safe distance in both forward and reverse; (vii) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (viii) its attachments, if so equipped, perform all of their required functions.  In addition, to be in safe operating condition, Equipment will have: (a) serviceable tires with some remaining tread and without chunking or flat spots; and (b) operational horn, parking brake and lights.
   5.3  If all of the Equipment is not returned in safe operating condition, Lessor will bill Lessee for the amount of Lessor's then normal charge to its customers for any repairs necessary to place the Equipment in safe operating condition, regardless of whether Lessor actually performs such repairs, and Lessee will pay such bill within 30 days after its receipt thereof.

44503 / 51793

## 6.  MAINTENANCE, CARE AND INSPECTION.

6.1   Lessee will keep the Equipment in a covered area when not in use.  Lessee will cause the Equipment to be operated only by competent, fully-trained-in-use employees of Lessee.  Lessee will also assure that the Equipment is operated with driver's overhead guard and load backrest extension installed.  Lessee agrees to operate the Equipment within its rated capacity and not to alter or modify the Equipment.

If this Agreement is a **FULL SERVICE MAINTENANCE AGREEMENT**, the following provisions will also apply:

6.2A  Subject to the performance by Lessee of its obligations with respect to the Equipment, Lessor will service and maintain the Equipment in proper working condition. Lessee agrees to make the Equipment available for servicing by representatives of Lessor at reasonable times during Lessor's business hours.  Lessee will provide, without charge to Lessor, a suitable area within Lessee's premises in order that Lessor's agents or employees may service each unit of Equipment and perform such repairs as can reasonably be made without removing the Equipment from Lessee's premise.    The space will be well lighted, heated and ventilated. Where the number and type of Equipment warrants, Lessee will provide an adequate, protected storage area and facilities, without charge, in order that Lessor may maintain an inventory of supplies or parts required in the servicing of the Equipment.

6.3A  If any item of Equipment is out of service for needed repairs, due to normal use, Lessor will promptly, after notice by Lessee, arrange to repair such Equipment. If Lessor deems it impracticable to promptly repair any such item of disabled Equipment, Lessor will temporarily substitute similar Equipment in good operating condition until the rented Equipment is put into proper operating condition. The substituted Equipment will be as nearly practicable of the same capacity and general specifications as the rented Equipment; provided, that Lessor will not be required to provide specialized attachments or accessories, or to make special alterations to the substituted Equipment. Such substituted Equipment will, while in the service of Lessee, be subject to the terms and conditions and the payment of rentals and charges provided in this Agreement.

6.4A  Lessee, at its own cost and expense, will be responsible for the normal needs required for the Equipment in its daily operation, including; (i) the making of a routine check of each unit at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. gas Equipment is rented furnishing and storing L. P. gas fuel and cylinders and changing such cylinders as required.

If this Agreement is **NOT A FULL SERVICE MAINTENANCE AGREEMENT**, the following provisions will apply:

6.2B  Lessor will inspect the Equipment periodically during the lease term.  Lessor will furnish to Lessee a report after each such inspection on the condition of each unit of Equipment and any repair work that may be required.

6.3B  Lessee agrees to perform, at its own cost and expense, according to Lessor's manuals for maintenance and operation, all Equipment maintenance, service and repair (including both labor and materials) including, but not limited to:

    (i)    Daily maintenance such as (i) the making of a routine check of each item at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. gas equipment is rented, furnishing and storing the L. P. gas fuel and cylinders and changing such cylinders as required.

    (ii)   Preventive maintenance service (per lubrication charts in manual).

    (iii)  Repairing, overhauling or adjusting of drive line, drive axle, uprights, steering gear, steering axle, hydraulic system brakes, power steering components, chains; and on gas-powered Equipment, the engine, engine accessories, belts, clutch and transmissions; and on battery-powered Equipment, the electric drive and pump motors, and all other routine repair work required to keep the Equipment in good operating condition.

    (iv)  Repairing, overhauling or adjusting of battery and charging Equipment, where battery-powered Equipment is rented.

    (v)   Replacing or repairing of tires.

    (vi)  Repairs that may be required as determined by Lessor during its periodic inspection and report to Lessee.

14503 / S1793

6.4B Lessee will, at its own expense and until the return of the Equipment at the expiration of the lease term, maintain the Equipment in good operating order, repair, and appearance and, in effecting maintenance and repairs, will have such work performed only by qualified persons who are satisfactory to Lessor.  If Lessor, during any inspection, determines that Lessee has failed to perform its obligations as set forth above with respect to any item of Equipment, Lessor will give Lessee written notice thereof. Unless Lessee performs such obligations within 30 days from the date of such notice, Lessor will have the right, but not the obligation, to terminate the Lease and/or to perform the maintenance, service and repair required to be performed by Lessee under this Agreement. If Lessor performs such maintenance, service or repair, Lessee will pay Lessor an amount equal to Lessor's then normal charge to its customers for similar services, such payment to be made within thirty (30) days after Lessee receives Lessor's invoice with respect thereto.

## 7.  TAXES.

Lessee will be responsible for and pay when billed by Lessor any and all taxes, fees, or assessments, however designated, levied, or based, relating to the transfer, use, possession or operation of the Equipment, including but not limited to personal property taxes, gross receipts taxes, privilege taxes, excise taxes, license taxes, and sales and use taxes, together with any penalties, times or interest thereon, and excluding only franchise taxes and taxes measured by the net income of the Lessor. When personal property taxes are not billed on an item basis by the respective governmental authority, Lessor will determine the appropriate tax liabilities attributable to the leased Equipment on a reasonable basis. Lessee will give immediate notice to Lessor of any attachment, tax notice, or inquiries from taxing authorities concerning the Equipment.

## 8.  LIABILITY OF LESSEE.

Lessee assumes all risks and liabilities arising from Lessee's possession, use and operation of the Equipment from the moment of delivery to Lessee to the moment of return to Lessor. Unless directly caused by Lessor's sole negligence, Lessee agrees to indemnify and hold Lessor, its officers, directors, stockholders, employees, agents and representatives harmless from any and all of the following whether the same be actual or alleged: all loss, damage, claims, suits, taxes, liens, penalties, fines, liability and expense (including attorneys' fees) arising in any manner as a result of the breach by Lessee, any agent, employee or servant of Lessee, any assignee of Lessee and any other person using or in possession of the Equipment, of any term of this Agreement, or relating directly or indirectly to the possession, use and operation of the Equipment including, but not limited to injuries or death to persons or damages to or destruction of property, claims and liens for storage, labor and materials and all loss of and damage to the Equipment. Should Lessor assign any of its rights or delegate any of its obligations under this Agreement, Lessee agrees that Lessor, Lessor's assignee and the officers, directors, stockholders, employees, agents and representatives of Lessor's assignee, will be entitled to the indemnity provided hereunder.

## 9.  INSURANCE.

Lessee will provide and pay for an all-risk insurance insuring against physical loss or damage to the Equipment in an amount satisfactory to Lessor. Lessee will also provide and pay for public bodily injury and property damage liability insurance against loss caused by or arising from Lessee's possession, use or operation of the Equipment. The minimum limits for such liability insurance shall be not less than One Million Dollars combined single limit. Lessee will furnish Lessor with certificates of insurance evidencing such coverages and designating both Lessor and its assigns as additional insureds and loss payees under the policy. Such certificates shall provide for 30 days prior written notice by registered mail to Lessor of any cancellation or change reducing coverage. The insurance so provided will be effective during the period from the moment of delivery of each item of Equipment under lease to Lessee until the moment of return receipt by Lessor. Lessor reserves the right, but not the obligation, upon failure of Lessee to furnish such certificates of insurance or upon receipt of a notice of cancellation or change reducing coverage to make such arrangements for insurance as Lessor believes necessary. Lessee will pay for the cost of such insurance upon demand.

## 10.  THEFT OR DESTRUCTION.

If any of the Equipment is stolen or disappears or is damaged to the extent that it is impossible to place it back into the same condition as when received (ordinary wear and tear excepted) ("Casualty Occurrence"), Lessee agrees to reimburse Lessor immediately for the loss of the Equipment by paying Lessor an amount equal to the then unpaid balance of aggregate rental for such Equipment plus the fair market value at the expiration of the Lease.  Fair market value is the value of the Equipment obtained in an arms length transaction between an informed and willing buyer and seller, valued at its highest and best use and not valued at a forced sale or liquidation value, without deduction for the costs of removal of Equipment from its current location at expiration of the Lease. Upon receipt of such payment, Lessor will assign title of the Equipment to Lessee and Lessee's obligations to pay rent shall cease upon such assignment and this Agreement will terminate.

44503 / 51703

## 11. OWNERSHIP.

It is expressly understood and agreed that this Agreement is a lease only and Lessee does not acquire title to any of the Equipment. Lessee will not cause or allow any liens or mortgages of any kind whatsoever to be placed on the Equipment. Lessee agrees that it will not take any position on any tax returns or other filings with any taxing authority which is inconsistent with the status of this Agreement as a lease or Lessor's status as the owner of the Equipment for income tax purposes. Lessee will not make any improvements other than ordinary maintenance and repairs to the Equipment without the prior written approval of Lessor.  Lessee authorizes Lessor to take any actions reasonably necessary to perfect Lessor's interest in the Equipment, including, but not limited to the filing of any financing statements, or other documents, with or without Lessee's signature.  If Lessee's signature is required, Lessee hereby appoints Lessor as its attorney-in-fact to execute any such documents or financing statements.  In the event that Lessor prepares and files such financing statements, Lessee agrees to pay Lessor a fee of $50, plus actual filing costs.

## 12. DEFAULT.

Any one or more of the following shall constitute an Event of Default:

12.1  Failure by Lessee to make any payment when it is due, if such default shall continue for a period of 10 days after the date such payment is due;

12.2  Default by Lessee in the performance of any other provision of this Agreement, if such default shall continue for a period of 10 days after written notice of such default is given by Lessor to Lessee;

12.3  Institution of a proceeding in reorganization, bankruptcy or insolvency by or against Lessee or its property in any court, which proceeding is not dismissed within a period of 30 days; or.

12.4  Lessee (i) is unable to pay its debts as they become due, (ii) makes an assignment for the benefit of creditors, (iii) consents to the appointment of a receiver of itself or of the whole or any substantial part of its property;

12.5  Any material misrepresentation of fact, circumstance or breach of any warranty or covenant by Lessee.

## 13. REMEDIES.

13.1  If an Event of Default occurs, Lessor may, at its option, exercise any one or more of the following remedies:

a. Proceed by appropriate court action or actions, either at law or in equity, to enforce performance by Lessee of the applicable covenants and terms of this Agreement or to recover damages for the breach of such covenants and terms;

b. By notice in writing to Lessee, terminate this Agreement as to all or any of the Equipment, whereupon all right and interest of Lessee to or in the use of said Equipment will cease. In such event, Lessee will deliver the Equipment as specified in Article 5.1 , or such other place as may be designated by Lessor, without relieving Lessee of its other obligations under this Agreement. Lessor may, directly or by its agents, peacefully enter upon the premises of Lessee without demand or notice, or other premises where any of the said Equipment may be or is reasonably believed to be without demand or notice, and take possession thereof;

c. Sell any of the Equipment at public or private sale, as Lessor may determine, free and clear of any rights of Lessee and without any duty to account to Lessee with respect to such sale or for the proceeds thereof; or

d. Hold, keep idle or lease to others any of the Equipment, as Lessor in its sole discretion may determine, free and clear of any rights of Lessee and without any duty to account to Lessee with respect to such action or for any proceeds with respect thereto.

13.2  In an Event of Default, Lessor shall have the right to immediately terminate this Agreement and accelerate all payments, charges and other amounts due. Lessee agrees that it will pay any expenses including reasonable attorneys fees incurred by Lessor in the repossession or seizure of the Equipment or in the enforcement of any right hereunder.

13.3  The remedies provided by this Agreement in favor of Lessor will not be deemed exclusive, but will be cumulative and will be in addition to all other remedies in Lessor's favor existing at law or in equity. Lessee hereby waives any and all rights of setoff. The exercise of any right or remedy available to Lessor will not operate as a waiver of any other right or remedy. The failure of Lessor to exercise or a delay by Lessor in exercising any right or remedy will not operate as a waiver of such right or any other right.

## 14. COLLECTION COSTS.

If Lessee breaches any term or condition of this Agreement or otherwise defaults, Lessee agrees to pay all of Lessor's expenses incurred in exercising any of Lessor's rights under this Agreement, including but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorney's fees paid to an attorney who is not a salaried employee, not to exceed the amount permitted by applicable law.

## 15. LATE CHARGE.

If a payment due hereunder is received by Lessor more than 10 days after its scheduled due date  Lessee shall pay a late charge equal to 5% of the unpaid amount of the late payment or maximum allowed by law, whichever is less, but only once for each such late payment.

44503 / 94793

**16. WARRANTY SERVICE.**
Lessor will deliver to Lessee the factory limited warranty for the Equipment to enable Lessee to obtain customary warranty service furnished on the Equipment. Other than delivering said factory warranty, there are no representations, promises, statements or warranties, express or implied, unless endorsed hereon in writing, and **THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL LESSOR BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM THE EQUIPMENT OR LESSEE'S USE THEREOF.**

**17. ASSIGNMENT.**
17.1 Lessee will not assign, mortgage or encumber this Agreement or any Equipment leased hereunder, nor sublet or suffer or permit the Equipment to be used by others without the prior written consent of Lessor which consent shall not be unreasonably withheld. As to any assignment consented to by Lessor (i) the term of such assignment will not extend beyond the final day of the term of this Agreement and (ii) the rights of the assignee will be expressly subject to all of the terms of this Agreement. Lessee understands and agrees that it will remain liable as a principal hereunder and will be bound by all the terms and conditions of this Agreement notwithstanding any express consent by Lessor to any such assignment.

17.2 Lessor will have the right to assign any or all of its rights and obligations at any time without notice to Lessee and without Lessee's consent. Lessee acknowledges that Lessor will promptly assign this Agreement to Toyota Motor Credit Corporation.

**18. SECURITY DEPOSIT.**
Lessor may use the Security Deposit to pay all amounts due under this Agreement. If Lessee performs all of its obligations under this Agreement, the Security Deposit will be returned to Lessee at the expiration or termination of this Agreement. No interest, increase or profits will be paid to the Lessee on the Security Deposit.

**19. REPRESENTATIONS AND WARRANTIES.**
19.1 Lessee represents and warrants that any financial information or other information provided to Lessor is true and accurate, and any information provided to Lessor for inclusion in the Survey Report is a true and accurate statement of Lessee's anticipated use of the Equipment.

19.2 Lessee represents and warrants to Lessor that the Equipment shall only be used in Lessee's trade or business and in compliance with all federal, state and local laws and regulations. Lessee agrees to maintain in good and legible condition any identification numbers, labels, tags and other markings used to identify the Equipment as Lessor's property.

**20. NOTICES.**
All notices or demands pursuant to this Agreement shall be in writing, and deemed made when sent by regular United States mail, registered or certified mail, return receipt requested, or other overnight or express delivery, or electronically with confirmation of receipt to the sender, to the address set herein or such other address as advised of in writing.

**21. GOVERNING LAW.**
This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the state of the Lessor's place of business.

**22. FURTHER ASSURANCES.**
From time to time each party will execute and deliver such further instruments and will take such other action as any other party reasonably may request in order to discharge and perform their respective obligations and agreements hereunder.

**23. DELAYS.**
Lessor will not incur any liability to Lessee for any obligations, if prevented by wars, fires, strikes or other labor disputes, accidents, acts of God, governmental regulations or interference, shortages of labor or materials, delays in transportation, non-availability of same from the manufacturer, or other causes beyond Lessor's control. IN NO EVENT SHALL LESSOR BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES.

**24. SEVERABILITY AND WAIVER.**
Any provision of this Agreement prohibited by applicable law will be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof. The failure of either party to require strict performance of any provision will not diminish that party's right thereafter to require strict performance of any operation.

44503 . 51793

**25. PRIOR APPROVAL.**
This Agreement shall not be effective until reviewed and accepted by Toyota Motor Credit Corporation. Lessee shall not take delivery of the Equipment until such time.

**26. SUCCESSORS AND ASSIGNS.**
This Agreement shall be binding on, and will inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

**27. SURVIVAL OF COVENANTS, REPRESENTATIONS AND WARRANTIES.**
The covenants, representations, warranties and indemnities of Lessee set forth in this Agreement shall survive the termination of this Agreement.

**28. AMENDMENTS OR MODIFICATIONS.**
This Agreement constitutes the entire agreement of the parties.  No modification or amendment shall be effective unless made in writing and signed by both parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the day and year first above written.

Lessee:  INSERTCO, INC.

By: _____    Title: _Vice President_    Date: _5/3/06_

**Assignment of Lease Agreement:**

The authorized signature of the Lessor below has the effect of:

1. Accepting the terms and conditions of this Agreement; and
2. Assigning to Toyota Motor Credit Corporation all of Lessor's right, title and interest in and to the leased Equipment and this Agreement, including all amounts to become due under it.

Lessor:  TOYOTA LIFT OF NEW YORK

By: _____    Title: _CONT_    Date: _5/10/06_

**Acceptance of Assignment of Lease Agreement:**

**TOYOTA MOTOR CREDIT CORPORATION**

By: _____

Title: _____

Address:  P.O. Box 3457
          Torrance, California  90510

445L3 / 51793

# TOYOTA
**FINANCIAL SERVICES**

## ADDENDUM TO LEASE AGREEMENT
## WITH OPTION TO PURCHASE

This Addendum to Lease Agreement is incorporated into and made a part of that certain Commercial Lease Agreement (Equipment) dated as of ___04/27/2006___, (the "Lease"), by and between ___INSERTCO, INC.___

as Lessee ("Lessee"), and ___TOYOTA LIFT OF NEW YORK___
as Lessor ("Lessor").

The following provisions are added to the terms of the Lease:

### 29. OPTION TO PURCHASE.

Lessor hereby grants to Lessee the option (the "Option") to purchase the Equipment described in the Lease upon termination of the Lease, subject to the terms and conditions set forth herein. The Option shall be exercised, if at all, by written notice to Lessor on or before the date that is 60 days prior to the expiration date of the term of the Lease. If Lessee is in default under any of the terms, covenants and conditions of the Lease at the time that Lessee exercises the Option or any time thereafter, Lessor shall have, in addition to all of Lessor's rights and remedies provided in the Lease, the right to terminate the Option. In the event Lessee exercises the Option within the time period set forth above, Lessee shall deliver to Lessor, upon termination of the Lease and payment in full of all rents and obligations due under the Lease, the amount of ___ONE___ Dollars (___$1.00___) for each unit of Equipment purchased by Lessee hereunder, plus applicable sales or use tax. Lessor shall execute and deliver to Lessee all documents necessary to effect transfer of ownership of the Equipment upon such payment by Lessee. **LESSOR MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONDITION OF THE EQUIPMENT AS OF THE TERMINATION DATE OF THE LEASE AND LESSEE SHALL PURCHASE THE EQUIPMENT IN ITS "AS-IS", "WHERE-IS" CONDITION.** In the event Lessee does not elect to exercise the Option, the Equipment shall be returned to Lessor upon termination of the Lease pursuant to the terms of the Lease.

### 30. USE OF EQUIPMENT

Lessee hereby warrants and represents that Lessee is not leasing the Equipment for personal, family, household or agricultural purposes.

In WITNESS WHEREOF, the undersigned have executed this Addendum to Lease Agreement as of the date first set forth in the Lease.

Lessee
INSERTCO, INC.

By: _____        Title: _Vice President_

Lessor
TOYOTA LIFT OF NEW YORK

By: _____        Title: _GenL_

TOYOTA MOTOR CREDIT CORPORATION

By: _____        Title: _____

## EXHIBIT D

### TOYOTA MOTOR CREDIT CLAIM NO. 5666

46429/0001-9660159V1

**UNITED STATES BANKRUPTCY COURT**
For the District of Delaware

**SUPPLEMENTAL PROOF OF CLAIM**

In re: Insertco, Inc.

Case Number 08-13176 *08-13141*

NOTE: This claim should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Creditor Name
(Person or entity debtor owes)    **Toyota Motor Credit Corporation (TMCC)**

Address Line 1    **19001 S. Western Ave WF-21**

Address Line 2

Address Line 3

City, ST ZIP    **Torrance, CA  90509**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach Copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**THIS SPAC IS FOR COURT USE ONLY**

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:

I/1-57625-002

Check here is claim    ☐ replaces    ☐ amends    a previously filed claim dated:

**1. BASIS FOR CLAIM**

☒ Goods sold
☐ Services performed
☐ Money loaned

☐ Personal injury/wrongful death
☐ Taxes
☐ Other (Describe Briefly)

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)

☐ Wages, Salaries, and compensation (Fill out below)
Your social security No. _____

Unpaid compensation for services performed
from _____ to _____
(date)    (date)

**2. Date Debt Incurred: (MMDDYY)** 1 0   0 9   0 6

**3. If Court Judgment, Date Obtained:**

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority. (2) Unsecured Priority. (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☒ SECURED CLAIM: **$7,727.75***
Attach evidence of perfection of security interest
Brief Description of Collateral:

**ORIGINAL**

☐ Real Estate    ☒ Motor Vehicle    ☐ Other (Describe briefly)

Amount of arrearage and other charges at time case filed included in secured Claim above, if any $0.0

☐ UNSECURED NONPRIORITY CLAIM: $
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM – Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4300), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3)

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4)

☐ Up to $1,950 of deposits toward purchase, lease or rental or property or services for personal, family or household use – 11 U.S.C. § 507(a)(6)

☐ Taxes or penalties of governmental units – 11 U.S.C. § 507(a)(7)

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a) _____

**5. AMOUNT OF CLAIM AT TIME CASE FILED:**

7 7 2 7 . 7 5 (Secured)    (Unsecured Nonpriority)    (Unsecured Priority)

☐ Check this box is claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**Represents payoff including residual. At maturity on 10/09/09, equipment must either be returned or purchased in full. Debtor to make post-petition payments directly to TMCC.**

**6. CREDITS AND SETOFFS.** The amount of all payments ~~within this claim~~ ~~and deducted for the purpose of making this proof~~ of claim. In filing this cl~~

7. SUPPORTING DOCU~~ ~~ry notes, purchase orders, invoices, itemized statements of running ac~~ If the documents are not available, explain. If the documents are volumino~~

8. TIME-STAMPED C(~~ closed a stamped, self-addressed envelope and copy of this proof of claim.

Filed: USBC - District of Delaware
Tribune Company, Et Al.
08-13141 (KJC)    0000005666

**THIS SPACE IS FOR COURT USE ONLY**

Date
May 29, 2009

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)

Pete Athey  Asset Protection Administrator (800) 551-9785 x65913

E

**TOYOTA**
FINANCIAL SERVICES SM

44505 / 54075

# COMMERCIAL LEASE AGREEMENT
## (EQUIPMENT)

LEASE NO. ___LA44505___    LEASE DATE: ___07/10/2006___

| LESSEE NAME AND ADDRESS OF PRINCIPAL OFFICE |
|---|

INSERTCO, INC.

57-11 49TH PLACE
MASPETH NY 11378

☐ SOLE PROPRIETOR  ☐ PARTNERSHIP  ☑ CORPORATION  ☐ OTHER

| LESSOR NAME AND ADDRESS |
|---|

TOYOTA LIFT OF NEW YORK
20 B CENTRAL AVENUE
FARMINGDALE NY 11735

| ADDRESS OF LOCATION OF EQUIPMENT |
|---|

57-11 49TH PLACE                    QUEENS
MASPETH NY 11378

RECEIVED
SEP 19 2006
COMMERCIAL FINANCE

| INSURANCE COMPANY OR AGENT |
|---|

SAPERSTEIN AGENCY

(516) 795 4100

This Agreement ☐ is  ☑ is not a **FULL SERVICE MAINTENANCE AGREEMENT.**

The following Exhibits, if any, are attached hereto and incorporated herein by this reference:

Exhibit "A" __N/A__
Exhibit "B" __N/A__

## 1. LEASE OF EQUIPMENT.

Subject to the terms and conditions of this Commercial Lease Agreement ("Agreement"), Lessor hereby rents to Lessee and Lessee hereby rents from Lessor, the following material handling vehicle(s) complete with all additions, attachments and accessories and all other material handling vehicle(s) described on a Notice of Delivery ("Notice of Delivery") executed by Lessor and Lessee from time to time in the form of Supplement(s) attached hereto and incorporated herein by this reference (collectively referred to as the "Equipment"):

| # OF UNITS | MAKE | MODEL | MONTHLY RENTAL PER UNIT (PLUS APPLICABLE TAXES) | INITIAL TERM | SECURITY DEPOSIT | HOURLY OVERTIME RATE PER UNIT |
|---|---|---|---|---|---|---|
| 2 | Toyota | 7FBEHU18 | $759.79 | 36 | $0.00 | $0.00 |

| SERIAL NUMBERS |
|---|
| 11794, 11972 |

| ATTACHMENTS |
|---|
| 2-Battery-MODEL 18-85-21 S/N 3577EP 6943CP, 2-Charger-MODEL 18R087523 S/N 06L34152 06L34153 |

44505 / 54075

All Equipment rented hereunder is rented f.o.b., at Lessor's address set forth above and will be used by Lessee in Lessee's operation at the address set forth above and as described in a Survey Report executed by Lessor and Lessee (the "Survey Report"). Lessee shall not remove any of the Equipment to any other place without Lessor's prior written consent.

Where battery powered Equipment is rented, any additional batteries and chargers other than those provided above and included in the monthly rental per item shall be rented at the additional sole cost and expense of Lessee.

If an hourly overtime rate is shown above, the hourly overtime rate will apply to each hour of use of any Equipment in excess of _____0_____ hours in any calendar quarter as determined by the hour meter or other mechanical device used to record hours of use supplied with the Equipment ("hour meter"). Readings of the hour meter will be taken and billed by Lessor quarterly. If any hour meter on any Equipment fails to function, thereby rendering an hour meter reading unavailable for such Equipment, the hours of use will be ascertained by computing the average number of hours per month that the Equipment was used during the previous 3 months of recorded usage (or in case such previous period of recorded use shall be less than 3 months, then during such lesser period) and multiplying the monthly average so computed by the number of months, or fractions thereof, during which said hour meter for such Equipment shall have failed to function. Lessee agrees to pay said overtime rental charges within 10 days from the date of Lessor's invoice for such charges.

The monthly rentals and estimated annual running hours have been calculated on the basis of information supplied by Lessee and data developed by Lessor as set forth in the Survey Report.

## 2. TERM AND RENEWAL.

2.1   The original term of rental of the Equipment will commence with the delivery thereof and, unless sooner terminated as provided herein, will continue for the number of months set forth above under "Initial Term" (the "Initial Term").

2.2   The Initial Term will be extended automatically from month to month after the expiration thereof unless either of the parties gives notice to the other of an intention to terminate such rental at least 60 days prior to the expiration of the Initial Term, or at least 10 days prior to the expiration of any extended term.

## 3. RENT.

Lessee will pay the Monthly Rental Per Unit stated in Article 1 with respect to each item of Equipment commencing on the day of delivery and continuing on the same day of the month of each successive month thereafter during the Initial Term, as extended pursuant to Section 2.2 above, until the Equipment is returned to Lessor. All rent and other sums payable to Lessor will be paid to Toyota Motor Credit Corporation at the address set forth below its signature or at such other address as Toyota Motor Credit Corporation may provide in writing.

## 4. DELIVERY.

When Equipment is delivered to Lessee, Lessor will prepare and deliver to Lessee a Notice of Delivery which will set forth separately for each item the following information: number of units, a description of the Equipment, serial number(s) and delivery date. Although Lessor will try to deliver the Equipment by the delivery date requested, TIME OF DELIVERY IS *NOT* OF THE ESSENCE AND LESSOR ASSUMES NO LIABILITY FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR FAILURE TO MAKE DELIVERY ON SUCH DATE. Lessee or Lessee's authorized representative will execute such Notice of Delivery and return it to Lessor.

## 5. RETURN OF EQUIPMENT.

5.1   Lessee will return all of the Equipment at the expiration or earlier termination of the lease term, freight prepaid to a point designated by Lessor. The designated point will be in no event farther than Lessor's place of business. The Equipment will be returned in safe operating condition.

5.2   For purposes of this Article the phrase "safe operating condition" means that the Equipment loaded to its rated capacity: (i) has no missing or broken components or accessories; (ii) starts under its own power and idles; (iii) does not leak oil, water, fuel, or any other fluids; (iv) moves through its normal speed ranges in both forward and reverse; (v) steers normally right and left in both forward and reverse; (vi) is able to stop by means of service brakes in a safe distance in both forward and reverse; (vii) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (viii) its attachments, if so equipped, perform all of their required functions. In addition, to be in safe operating condition, Equipment will have: (a) serviceable tires with some remaining tread and without chunking or flat spots; and (b) operational horn, parking brake and lights.

5.3   If all of the Equipment is not returned in safe operating condition, Lessor will bill Lessee for the amount of Lessor's then normal charge to its customers for any repairs necessary to place the Equipment in safe operating condition, regardless of whether Lessor actually performs such repairs, and Lessee will pay such bill within 30 days after its receipt thereof.

44505 / 54075

## 6. MAINTENANCE, CARE AND INSPECTION.

6.1   Lessee will keep the Equipment in a covered area when not in use.  Lessee will cause the Equipment to be operated only by competent, fully-trained-in-use employees of Lessee.  Lessee will also assure that the Equipment is operated with driver's overhead guard and load backrest extension installed.  Lessee agrees to operate the Equipment within its rated capacity and not to alter or modify the Equipment.

If this Agreement is a **FULL SERVICE MAINTENANCE AGREEMENT**, the following provisions will also apply:

6.2A  Subject to the performance by Lessee of its obligations with respect to the Equipment, Lessor will service and maintain the Equipment in proper working condition. Lessee agrees to make the Equipment available for servicing by representatives of Lessor at reasonable times during Lessor's business hours.  Lessee will provide, without charge to Lessor, a suitable area within Lessee's premises in order that Lessor's agents or employees may service each unit of Equipment and perform such repairs as can reasonably be made without removing the Equipment from Lessee's premise.   The space will be well lighted, heated and ventilated. Where the number and type of Equipment warrants, Lessee will provide an adequate, protected storage area and facilities, without charge, in order that Lessor may maintain an inventory of supplies or parts required in the servicing of the Equipment.

6.3A  If any item of Equipment is out of service for needed repairs, due to normal use, Lessor will promptly, after notice by Lessee, arrange to repair such Equipment. If Lessor deems it impracticable to promptly repair any such item of disabled Equipment, Lessor will temporarily substitute similar Equipment in good operating condition until the rented Equipment is put into proper operating condition. The substituted Equipment will be as nearly practicable of the same capacity and general specifications as the rented Equipment; provided, that Lessor will not be required to provide specialized attachments or accessories, or to make special alterations to the substituted Equipment. Such substituted Equipment will, while in the service of Lessee, be subject to the terms and conditions and the payment of rentals and charges provided in this Agreement.

6.4A  Lessee, at its own cost and expense, will be responsible for the normal needs required for the Equipment in its daily operation, including; (i) the making of a routine check of each unit at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. gas Equipment is rented furnishing and storing L. P. gas fuel and cylinders and changing such cylinders as required.

If this Agreement is **NOT A FULL SERVICE MAINTENANCE AGREEMENT**, the following provisions will apply:

6.2B  Lessor will inspect the Equipment periodically during the lease term.  Lessor will furnish to Lessee a report after each such inspection on the condition of each unit of Equipment and any repair work that may be required.

6.3B  Lessee agrees to perform, at its own cost and expense, according to Lessor's manuals for maintenance and operation, all Equipment maintenance, service and repair (including both labor and materials) including, but not limited to:

(i)    Daily maintenance such as (i) the making of a routine check of each item at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. gas equipment is rented, furnishing and storing the L. P. gas fuel and cylinders and changing such cylinders as required.

(ii)   Preventive maintenance service (per lubrication charts in manual).

(iii)  Repairing, overhauling or adjusting of drive line, drive axle, uprights, steering gear, steering axle, hydraulic system brakes, power steering components, chains; and on gas-powered Equipment, the engine, engine accessories, belts, clutch and transmissions; and on battery-powered Equipment, the electric drive and pump motors, and all other routine repair work required to keep the Equipment in good operating condition.

(iv)   Repairing, overhauling or adjusting of battery and charging Equipment, where battery-powered Equipment is rented.

(v)    Replacing or repairing of tires.

(vi)   Repairs that may be required as determined by Lessor during its periodic inspection and report to Lessee.

4450# / 54075

6.4B  Lessee will, at its own expense and until the return of the Equipment at the expiration of the lease term, maintain the Equipment in good operating order, repair, and appearance and, in effecting maintenance and repairs, will have such work performed only by qualified persons who are satisfactory to Lessor.  If Lessor, during any inspection, determines that Lessee has failed to perform its obligations as set forth above with respect to any item of Equipment, Lessor will give Lessee written notice thereof. Unless Lessee performs such obligations within 30 days from the date of such notice, Lessor will have the right, but not the obligation, to terminate the Lease and/or to perform the maintenance, service and repair required to be performed by Lessee under this Agreement. If Lessor performs such maintenance, service or repair, Lessee will pay Lessor an amount equal to Lessor's then normal charge to its customers for similar services, such payment to be made within thirty (30) days after Lessee receives Lessor's invoice with respect thereto.

7.  **TAXES.**
Lessee will be responsible for and pay when billed by Lessor any and all taxes, fees, or assessments, however designated, levied, or based, relating to the transfer, use, possession or operation of the Equipment, including but not limited to personal property taxes, gross receipts taxes, privilege taxes, excise taxes, license taxes, and sales and use taxes, together with any penalties, fines, times or interest thereon, and excluding only franchise taxes and taxes measured by the net income of the Lessor. When personal property taxes are not billed on an item basis by the respective governmental authority, Lessor will determine the appropriate tax liabilities attributable to the leased Equipment on a reasonable basis.  Lessee will give immediate notice to Lessor of any attachment, tax notice, or inquiries from taxing authorities concerning the Equipment.

8.  **LIABILITY OF LESSEE.**
Lessee assumes all risks and liabilities arising from Lessee's possession, use and operation of the Equipment from the moment of delivery to Lessee to the moment of return to Lessor. Unless directly caused by Lessor's sole negligence, Lessee agrees to indemnify and hold Lessor, its officers, directors, stockholders, employees, agents and representatives harmless from any and all of the following whether the same be actual or alleged: all loss, damage, claims, suits, taxes, liens, penalties, fines, liability and expense (including attorneys' fees) arising in any manner as a result of the breach by Lessee, any agent, employee or servant of Lessee, any assignee of Lessee and any other person using or in possession of the Equipment, of any term of this Agreement, or relating directly or indirectly to the possession, use and operation of the Equipment including, but not limited to injuries or death to persons or damages to or destruction of property, claims and liens for storage, labor and materials and all loss of and damage to the Equipment. Should Lessor assign any of its rights or delegate any of its obligations under this Agreement, Lessee agrees that Lessor, Lessor's assignee and the officers, directors, stockholders, employees, agents and representatives of Lessor's assignee, will be entitled to the indemnity provided hereunder.

9.  **INSURANCE.**
Lessee will provide and pay for an all-risk insurance insuring against physical loss or damage to the Equipment in an amount satisfactory to Lessor. Lessee will also provide and pay for public bodily injury and property damage liability insurance against loss caused by or arising from Lessee's possession, use or operation of the Equipment. The minimum limits for such liability insurance shall be not less than One Million Dollars combined single limit. Lessee will furnish Lessor with certificates of insurance evidencing such coverages and designating both Lessor and its assigns as additional insureds and loss payees under the policy. Such certificates shall provide for 30 days prior written notice by registered mail to Lessor of any cancellation or change reducing coverage. The insurance so provided will be effective during the period from the moment of delivery of each item of Equipment under lease to Lessee until the moment of return receipt by Lessor. Lessor reserves the right, but not the obligation, upon failure of Lessee to furnish such certificates of insurance or upon receipt of a notice of cancellation or change reducing coverage to make such arrangements for insurance as Lessor believes necessary. Lessee will pay for the cost of such insurance upon demand.

10.  **THEFT OR DESTRUCTION.**
If any of the Equipment is stolen or disappears or is damaged to the extent that it is impossible to place it back into the same condition as when received (ordinary wear and tear excepted) ("Casualty Occurrence"), Lessee agrees to reimburse Lessor immediately for the loss of the Equipment by paying Lessor an amount equal to the then unpaid balance of aggregate rental for such Equipment plus the fair market value at the expiration of the Lease. Fair market value is the value of the Equipment obtained in an arms length transaction between an informed and willing buyer and seller, valued at its highest and best use and not valued at a forced sale or liquidation value, without deduction for the costs of removal of Equipment from its current location at expiration of the Lease. Upon receipt of such payment, Lessor will assign title of the Equipment to Lessee and Lessee's obligations to pay rent shall cease upon such assignment and this Agreement will terminate.

44505 / 5 x075

## 11. OWNERSHIP.

It is expressly understood and agreed that this Agreement is a lease only and Lessee does not acquire title to any of the Equipment. Lessee will not cause or allow any liens or mortgages of any kind whatsoever to be placed on the Equipment. Lessee agrees that it will not take any position on any tax returns or other filings with any taxing authority which is inconsistent with the status of this Agreement as a lease or Lessor's status as the owner of the Equipment for income tax purposes. Lessee will not make any improvements other than ordinary maintenance and repairs to the Equipment without the prior written approval of Lessor.  Lessee authorizes Lessor to take any actions reasonably necessary to perfect Lessor's interest in the Equipment, including, but not limited to the filing of any financing statements, or other documents, with or without Lessee's signature.  If Lessee's signature is required, Lessee hereby appoints Lessor as its attorney-in-fact to execute any such documents or financing statements.  In the event that Lessor prepares and files such financing statements, Lessee agrees to pay Lessor a fee of $50, plus actual filing costs.

## 12. DEFAULT.

Any one or more of the following shall constitute an Event of Default:

12.1  Failure by Lessee to make any payment when it is due, if such default shall continue for a period of 10 days after the date such payment is due;

12.2  Default by Lessee in the performance of any other provision of this Agreement, if such default shall continue for a period of 10 days after written notice of such default is given by Lessor to Lessee;

12.3  Institution of a proceeding in reorganization, bankruptcy or insolvency by or against Lessee or its property in any court, which proceeding is not dismissed within a period of 30 days; or.

12.4  Lessee (i) is unable to pay its debts as they become due, (ii) makes an assignment for the benefit of creditors, (iii) consents to the appointment of a receiver of itself or of the whole or any substantial part of its property;

12.5  Any material misrepresentation of fact, circumstance or breach of any warranty or covenant by Lessee.

## 13. REMEDIES.

13.1  If an Event of Default occurs, Lessor may, at its option, exercise any one or more of the following remedies:

a. Proceed by appropriate court action or actions, either at law or in equity, to enforce performance by Lessee of the applicable covenants and terms of this Agreement or to recover damages for the breach of such covenants and terms;

b. By notice in writing to Lessee, terminate this Agreement as to all or any of the Equipment, whereupon all right and interest of Lessee to or in the use of said Equipment will cease. In such event, Lessee will deliver the Equipment as specified in Article 5.1 , or such other place as may be designated by Lessor, without relieving Lessee of its other obligations under this Agreement. Lessor may, directly or its agents, peacefully enter upon the premises of Lessee without demand or notice, or other premises where any of the said Equipment may be or is reasonably believed to be without demand or notice, and take possession thereof;

c. Sell any of the Equipment at public or private sale, as Lessor may determine, free and clear of any rights of Lessee and without any duty to account to Lessee with respect to such sale or for the proceeds thereof; or

d. Hold, keep idle or lease to others any of the Equipment, as Lessor in its sole discretion may determine, free and clear of any rights of Lessee and without any duty to account to Lessee with respect to such action or for any proceeds with respect thereto.

13.2  In an Event of Default, Lessor shall have the right to immediately terminate this Agreement and accelerate all payments, charges and other amounts due. Lessee agrees that it will pay any expenses including reasonable attorneys fees incurred by Lessor in the repossession or seizure of the Equipment or in the enforcement of any right hereunder.

13.3  The remedies provided by this Agreement in favor of Lessor will not be deemed exclusive, but will be cumulative and will be in addition to all other remedies in Lessor's favor existing at law or in equity. Lessee hereby waives any and all rights of setoff. The exercise of any right or remedy available to Lessor will not operate as a waiver of any other right or remedy. The failure of Lessor to exercise or a delay by Lessor in exercising any right or remedy will not operate as a waiver of such right or any other right.

## 14. COLLECTION COSTS.

If Lessee breaches any term or condition of this Agreement or otherwise defaults, Lessee agrees to pay all of Lessor's expenses incurred in exercising any of Lessor's rights under this Agreement, including but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorney's fees paid to an attorney who is not a salaried employee, not to exceed the amount permitted by applicable law.

## 15. LATE CHARGE.

If a payment due hereunder is received by Lessor more than 10 days after its scheduled due date, Lessee shall pay a late charge equal to 5% of the unpaid amount of the late payment or maximum allowed by law, whichever is less, but only once for each such late payment.

44505 / 54075

## 16. WARRANTY SERVICE.

Lessor will deliver to Lessee the factory limited warranty for the Equipment to enable Lessee to obtain customary warranty service furnished on the Equipment: Other than delivering said factory warranty, there are no representations, promises, statements or warranties, express or implied, unless endorsed hereon in writing, and **THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL LESSOR BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM THE EQUIPMENT OR LESSEE'S USE THEREOF.**

## 17. ASSIGNMENT.

17.1   Lessee will not assign, mortgage or encumber this Agreement or any Equipment leased hereunder, nor sublet or suffer or permit the Equipment to be used by others without the prior written consent of Lessor which consent shall not be unreasonably withheld. As to any assignment consented to by Lessor (i) the term of such assignment will not extend beyond the final day of the term of this Agreement and (ii) the rights of the assignee will be expressly subject to all of the terms of this Agreement. Lessee understands and agrees that it will remain liable as a principal hereunder and will be bound by all the terms and conditions of this Agreement notwithstanding any express consent by Lessor to any such assignment.

17.2   Lessor will have the right to assign any or all of its rights and obligations at any time without notice to Lessee and without Lessee's consent.   Lessee acknowledges that Lessor will promptly assign this Agreement to Toyota Motor Credit Corporation.

## 18. SECURITY DEPOSIT.

Lessor may use the Security Deposit to pay all amounts due under this Agreement. If Lessee performs all of its obligations under this Agreement, the Security Deposit will be returned to Lessee at the expiration or termination of this Agreement. No interest, increase or profits will be paid to the Lessee on the Security Deposit.

## 19. REPRESENTATIONS AND WARRANTIES.

19.1   Lessee represents and warrants that any financial information or other information provided to Lessor is true and accurate, and any information provided to Lessor for inclusion in the Survey Report is a true and accurate statement of Lessee's anticipated use of the Equipment.

19.2   Lessee represents and warrants to Lessor that the Equipment shall only be used in Lessee's trade or business and in compliance with all federal, state and local laws and regulations. Lessee agrees to maintain in good and legible condition any identification numbers, labels, tags and other markings used to identify the Equipment as Lessor's property.

## 20. NOTICES.

All notices or demands pursuant to this Agreement shall be in writing, and deemed made when sent by regular United States mail, registered or certified mail, return receipt requested, or other overnight or express delivery, or electronically with confirmation of receipt to the sender, to the address set herein or such other address as advised of in writing.

## 21. GOVERNING LAW.

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the state of the Lessor's place of business.

## 22. FURTHER ASSURANCES.

From time to time each party will execute and deliver such further instruments and will take such other action as any other party reasonably may request in order to discharge and perform their respective obligations and agreements hereunder.

## 23. DELAYS.

Lessor will not incur any liability to Lessee for any obligations, if prevented by wars, fires, strikes or other labor disputes, accidents, acts of God, governmental regulations or interference, shortages of labor or materials, delays in transportation, non-availability of same from the manufacturer, or other causes beyond Lessor's control. IN NO EVENT SHALL LESSOR BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES.

## 24. SEVERABILITY AND WAIVER.

Any provision of this Agreement prohibited by applicable law will be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof.  The failure of either party to require strict performance of any provision will not diminish that party's right thereafter to require strict performance of any operation.

44505 / 54075

**25. PRIOR APPROVAL.**
This Agreement shall not be effective until reviewed and accepted by Toyota Motor Credit Corporation. Lessee shall not take delivery of the Equipment until such time.

**26. SUCCESSORS AND ASSIGNS.**
This Agreement shall be binding on, and will inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

**27. SURVIVAL OF COVENANTS, REPRESENTATIONS AND WARRANTIES.**
The covenants, representations, warranties and indemnities of Lessee set forth in this Agreement shall survive the termination of this Agreement.

**28. AMENDMENTS OR MODIFICATIONS.**
This Agreement constitutes the entire [agreement] of the parties.  No modification or amendment shall be effective unless made in writing and signed by both parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the day and year first above written.

Lessee:    INSERTCO, INC.

By: _____    Title: _VICE PRESIDENT_    Date: _9/15/06_

**Assignment of Lease Agreement:**

The authorized signature of the Lessor below has the effect of:

1. Accepting the terms and conditions of this Agreement; and
2. Assigning to Toyota Motor Credit Corporation all of Lessor's right, title and interest in and to the leased Equipment and this Agreement, including all amounts to become due under it.

Lessor:    TOYOTA LIFT OF NEW YORK

By: _____    Title: _General Mgr_    Date: _9/14/06_

**Acceptance of Assignment of Lease Agreement:**

**TOYOTA MOTOR CREDIT CORPORATION**

By: _____

Title: _Fleet Sup_

Address:    P.O. Box 3457
            Torrance, California  90510

44305 / 54075

 **TOYOTA**
FINANCIAL SERVICES ₘ

## ADDENDUM TO LEASE AGREEMENT
## WITH OPTION TO PURCHASE

This Addendum to Lease Agreement is incorporated into and made a part of that certain Commercial Lease Agreement (Equipment) dated as of ___07/10/2006___ , (the "Lease"), by and between
INSERTCO, INC.

as Lessee ("Lessee"), and_TOYOTA LIFT OF NEW YORK
as Lessor ("Lessor").

The following provisions are added to the terms of the Lease:

**29.  OPTION TO PURCHASE.**

Lessor hereby grants to Lessee the option (the "Option") to purchase the Equipment described in the Lease upon termination of the Lease, subject to the terms and conditions set forth herein. The Option shall be exercised, if at all, by written notice to Lessor on or before the date that is 60 days prior to the expiration date of the term of the Lease. If Lessee is in default under any of the terms, covenants and conditions of the Lease at the time that Lessee exercises the Option or any time thereafter, Lessor shall have, in addition to all of Lessor's rights and remedies provided in the Lease, the right to terminate the Option. In the event Lessee exercises the Option within the time period set forth above, Lessee shall deliver to Lessor, upon termination of the Lease and payment in full of all rents and obligations due under the Lease, the amount of _____ONE_____ Dollars ( $1.00 ) for each unit of Equipment purchased by Lessee hereunder, plus applicable sales or use tax. Lessor shall execute and deliver to Lessee all documents necessary to effect transfer of ownership of the Equipment upon such payment by Lessee. **LESSOR MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONDITION OF THE EQUIPMENT AS OF THE TERMINATION DATE OF THE LEASE AND LESSEE SHALL PURCHASE THE EQUIPMENT IN ITS "AS-IS", "WHERE-IS" CONDITION.** In the event Lessee does not elect to exercise the Option, the Equipment shall be returned to Lessor upon termination of the Lease pursuant to the terms of the Lease.

**30.  USE OF EQUIPMENT**

Lessee hereby warrants and represents ⸱ ⸱⸱ ⸱ leasing the Equipment for personal, family, household or agricultural purposes.

In WITNESS WHEREOF, the undersigned have executed this Addendum to Lease Agreement as of the date first set forth in the Lease.

Lessee
INSERTCO, INC.

By: _____    Title: _Vice President_____

Lessor
TOYOTA LIFT OF NEW YORK

By: _____    Title: _____

TOYOTA MOTOR CREDIT CORPORATION

By: _____    Title: _Fleet  fp_____

36200 (06/03)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. SEND ACKNOWLEDGEMENT TO: (Name and Address)**

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

9299155

NY, Secretary of State

UCC Direct Services
Representation of filing

**This filing is Completed**
File Number : 200609205914258
File Date   : 20-SEP-2006

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name(1a or 1b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| **1a. ORGANIZATION NAME** Insertco, Inc | | | | |
| **1b. INDIVIDUAL LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** | |

| **1c. MAILING ADDRESS** 57-11 49th Place | **CITY** Maspeth | **STATE** NY | **POSTAL CODE** 11378 | **COUNTRY** US |
|---|---|---|---|---|

| **1d. SEE INSTRUCTIONS** | **ADD'L INFO RE ORGANIZATION DEBTOR** | **1e. TYPE OF ORGANIZATION** Corporation | **1f. JURISDICTION OF ORGANIZATION** NY | **1g. ORGANIZATIONAL ID#, if any** ☒ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name(2a or 2b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| **2a. ORGANIZATION NAME** | | | | |
| **2b. INDIVIDUAL LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** | |

| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|

| **2d. SEE INSTRUCTIONS** | **ADD'L INFO RE ORGANIZATION DEBTOR** | **2e. TYPE OF ORGANIZATION** | **2f. JURISDICTION OF ORGANIZATION** | **2g. ORGANIZATIONAL ID#, if any** ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)**

| | | | | |
|---|---|---|---|---|
| **3a. ORGANIZATION NAME** Toyota Motor Credit Corporation | | | | |
| **3b. INDIVIDUAL LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** | |

| **3c. MAILING ADDRESS** P. O. Box 3457 | **CITY** Torrance | **STATE** CA | **POSTAL CODE** 90510-3457 | **COUNTRY** US |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral**

TWO (2) NEW TOYOTA FORKLIFT
MODEL # 7FBEHU18
SERIAL # 11794, 11972

TWO (2) BATTERY
MODEL # 18-85-21
SERIAL # 3577EP, 6943CP

TWO (2) CHARGER
MODEL # 18RO875E3
SERIAL # 06L34152, 06L34153

| 5. ALTERNATE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG.LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS    Attach Addendum    (if applicable) | Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**  retail
22056491

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1)  (REV. 05/02/02)

## UNITED STATES BANKRUPTCY COURT
For the District of Delaware

**SUPPLEMENTAL PROOF OF CLAIM**

In re: Insertco. Inc.

Case Number 08-13176

NOTE: This claim should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Creditor Name | |
|---|---|
| (Person or entity debtor owes) | Toyota Motor Credit Corporation (TMCC) |
| Address Line 1 | 19001 S. Western Ave WF-21 |
| Address Line 2 | |
| Address Line 3 | |
| City, ST ZIP | Torrance, CA 90509 |

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach Copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**THIS SPAC IS FOR COURT USE ONLY**

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:

1/1-57625-002

Check here is claim ☐ replaces ☐ amends    a previously filed claim dated:

### 1. BASIS FOR CLAIM

☒ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other (Describe Briefly)
☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, Salaries, and compensation (Fill out below)
Your social security No.
Unpaid compensation for services performed
from (date) to (date)

**2. Date Debt Incurred: (MMDDYY)**
1 0 0 9 0 6

**3. If Court Judgment, Date Obtained:**

### 4. CLASSIFICATION OF CLAIM. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority. (2) Unsecured Priority. (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☒ SECURED CLAIM: $7,727.75*
Attach evidence of perfection of security interest
Brief Description of Collateral:
☐ Real Estate   ☒ Motor Vehicle   ☐ Other (Describe briefly)
Amount of arrearage and other charges at time case filed included in secured Claim above. if any $0.0

☐ UNSECURED NONPRIORITY CLAIM: $
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

CO.Y

☐ UNSECURED PRIORITY CLAIM – Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4300), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3)

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4)

☐ Up to $1,950 of deposits toward purchase, lease or rental or property or services for personal, family or household use – 11 U.S.C. § 507(a)(6)

☐ Taxes or penalties of governmental units – 11 U.S.C. § 507(a)(7)

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)

### 5. AMOUNT OF CLAIM AT TIME CASE FILED:

| 7 7 2 7 . 7 5 | | |
|---|---|---|
| (Secured) | (Unsecured Nonpriority) | (Unsecured Priority) |

☐ Check this box is claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.
**Represents payoff including residual. At maturity on 10/09/09, equipment must either be returned or purchased in full. Debtor to make post-petition payments directly to TMCC.

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. TIME-STAMPED COPY:** To receive an acknowledgment of the filing or your claim, enclosed a stamped, self-addressed envelope and copy of this proof of claim.

**THIS SPACE IS FOR COURT USE ONLY**

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|
| May 29, 2009 | |

Pete Athey  Asset Protection Administrator (800) 551-9785 x65913

**TOYOTA**
FINANCIAL SERVICES ℠

44505 / 54075

# COMMERCIAL LEASE AGREEMENT
## (EQUIPMENT)

LEASE NO. _LA44505_   LEASE DATE: _07/10/2006_

| LESSEE NAME AND ADDRESS OF PRINCIPAL OFFICE |
|---|
| INSERTCO, INC.<br><br>57-11 49TH PLACE<br>MASPETH NY 11378<br><br>☐ SOLE PROPRIETOR   ☐ PARTNERSHIP   ☑ CORPORATION   ☐ OTHER |

| LESSOR NAME AND ADDRESS |
|---|
| TOYOTA LIFT OF NEW YORK<br>20 B CENTRAL AVENUE<br>FARMINGDALE NY 11735 |

| ADDRESS OF LOCATION OF EQUIPMENT |
|---|
| 57-11 49TH PLACE            QUEENS<br>MASPETH NY 11378 |

RECEIVED
SEP 19 2006
COMMERCIAL FINANCE

| INSURANCE COMPANY OR AGENT |
|---|
| SAPERSTEIN AGENCY<br><br>(516) 795 4100 |

This Agreement ☐ is   ☑ is not a **FULL SERVICE MAINTENANCE AGREEMENT.**

The following Exhibits, if any, are attached hereto and incorporated herein by this reference:

Exhibit "A" _N/A_
Exhibit "B" _N/A_

1. **LEASE OF EQUIPMENT.**
   Subject to the terms and conditions of this Commercial Lease Agreement ("Agreement"), Lessor hereby rents to Lessee and Lessee hereby rents from Lessor, the following material handling vehicle(s) complete with all additions, attachments and accessories and all other material handling vehicle(s) described on a Notice of Delivery ("Notice of Delivery") executed by Lessor and Lessee from time to time in the form of Supplement(s) attached hereto and incorporated herein by this reference (collectively referred to as the "Equipment"):

| # OF UNITS | MAKE | MODEL | MONTHLY RENTAL PER UNIT (PLUS APPLICABLE TAXES) | INITIAL TERM | SECURITY DEPOSIT | HOURLY OVERTIME RATE PER UNIT |
|---|---|---|---|---|---|---|
| 2 | Toyota | 7FBEHU18 | $759.79 | 36 | $0.00 | $0.00 |

| SERIAL NUMBERS |
|---|
| 11794, 11972 |

| ATTACHMENTS |
|---|
| 2-Battery-MODEL 18-85-21 S/N 3577EP 6943CP, 2-Charger-MODEL 18RO875E3 S/N 06L34152 06L34153 |

44505 / 54075

All Equipment rented hereunder is rented f.o.b., at Lessor's address set forth above and will be used by Lessee in Lessee's operation at the address set forth above and as described in a Survey Report executed by Lessor and Lessee (the "Survey Report"). Lessee shall not remove any of the Equipment to any other place without Lessor's prior written consent.

Where battery powered Equipment is rented, any additional batteries and chargers other than those provided above and included in the monthly rental per item shall be rented at the additional sole cost and expense of Lessee.

If an hourly overtime rate is shown above, the hourly overtime rate will apply to each hour of use of any Equipment in excess of ____0____ hours in any calendar quarter as determined by the hour meter or other mechanical device used to record hours of use supplied with the Equipment ("hour meter"). Readings of the hour meter will be taken and billed by Lessor quarterly. If any hour meter on any Equipment fails to function, thereby rendering an hour meter reading unavailable for such Equipment, the hours of use will be ascertained by computing the average number of hours per month that the Equipment was used during the previous 3 months of recorded usage (or in case such previous period of recorded use shall be less than 3 months, then during such lesser period) and multiplying the monthly average so computed by the number of months, or fractions thereof, during which said hour meter for such Equipment shall have failed to function. Lessee agrees to pay said overtime rental charges within 10 days from the date of Lessor's invoice for such charges.

The monthly rentals and estimated annual running hours have been calculated on the basis of information supplied by Lessee and data developed by Lessor as set forth in the Survey Report.

2. **TERM AND RENEWAL.**
   2.1 The original term of rental of the Equipment will commence with the delivery thereof and, unless sooner terminated as provided herein, will continue for the number of months set forth above under "Initial Term" (the "Initial Term").
   2.2 The Initial Term will be extended automatically from month to month after the expiration thereof unless either of the parties gives notice to the other of an intention to terminate such rental at least 60 days prior to the expiration of the Initial Term, or at least 10 days prior to the expiration of any extended term.

3. **RENT.**
   Lessee will pay the Monthly Rental Per Unit stated in Article 1 with respect to each item of Equipment commencing on the day of delivery and continuing on the same day of the month of each successive month thereafter during the Initial Term, as extended pursuant to Section 2.2 above, until the Equipment is returned to Lessor. All rent and other sums payable to Lessor will be paid to Toyota Motor Credit Corporation at the address set forth below its signature or at such other address as Toyota Motor Credit Corporation may provide in writing.

4. **DELIVERY.**
   When Equipment is delivered to Lessee, Lessor will prepare and deliver to Lessee a Notice of Delivery which will set forth separately for each item the following information: number of units, a description of the Equipment, serial number(s) and delivery date. Although Lessor will try to deliver the Equipment by the delivery date requested, TIME OF DELIVERY IS *NOT* OF THE ESSENCE AND LESSOR ASSUMES NO LIABILITY FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR FAILURE TO MAKE DELIVERY ON SUCH DATE. Lessee or Lessee's authorized representative will execute such Notice of Delivery and return it to Lessor.

5. **RETURN OF EQUIPMENT.**
   5.1 Lessee will return all of the Equipment at the expiration or earlier termination of the lease term, freight prepaid to a point designated by Lessor. The designated point will be in no event farther than Lessor's place of business. The Equipment will be returned in safe operating condition.
   5.2 For purposes of this Article the phrase "safe operating condition" means that the Equipment loaded to its rated capacity: (i) has no missing or broken components or accessories; (ii) starts under its own power and idles; (iii) does not leak oil, water, fuel, or any other fluids; (iv) moves through its normal speed ranges in both forward and reverse; (v) steers normally right and left in both forward and reverse; (vi) is able to stop by means of service brakes in a safe distance in both forward and reverse; (vii) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (viii) its attachments, if so equipped, perform all of their required functions. In addition, to be in safe operating condition, Equipment will have: (a) serviceable tires with some remaining tread and without chunking or flat spots; and (b) operational horn, parking brake and lights.
   5.3 If all of the Equipment is not returned in safe operating condition, Lessor will bill Lessee for the amount of Lessor's then normal charge to its customers for any repairs necessary to place the Equipment in safe operating condition, regardless of whether Lessor actually performs such repairs, and Lessee will pay such bill within 30 days after its receipt thereof.

44505 / 54075

## 6.  MAINTENANCE, CARE AND INSPECTION.

6.1   Lessee will keep the Equipment in a covered area when not in use.  Lessee will cause the Equipment to be operated only by competent, fully-trained-in-use employees of Lessee.  Lessee will also assure that the Equipment is operated with driver's overhead guard and load backrest extension installed.  Lessee agrees to operate the Equipment within its rated capacity and not to alter or modify the Equipment.

If this Agreement is a **FULL SERVICE MAINTENANCE AGREEMENT**, the following provisions will also apply:

6.2A   Subject to the performance by Lessee of its obligations with respect to the Equipment, Lessor will service and maintain the Equipment in proper working condition. Lessee agrees to make the Equipment available for servicing by representatives of Lessor at reasonable times during Lessor's business hours. Lessee will provide, without charge to Lessor, a suitable area within Lessee's premises in order that Lessor's agents or employees may service each unit of Equipment and perform such repairs as can reasonably be made without removing the Equipment from Lessee's premise.   The space will be well lighted, heated and ventilated. Where the number and type of Equipment warrants, Lessee will provide an adequate, protected storage area and facilities, without charge, in order that Lessor may maintain an inventory of supplies or parts required in the servicing of the Equipment.

6.3A   If any item of Equipment is out of service for needed repairs, due to normal use, Lessor will promptly, after notice by Lessee, arrange to repair such Equipment. If Lessor deems it impracticable to promptly repair any such item of disabled Equipment, Lessor will temporarily substitute similar Equipment in good operating condition until the rented Equipment is put into proper operating condition. The substituted Equipment will be as nearly practicable of the same capacity and general specifications as the rented Equipment; provided, that Lessor will not be required to provide specialized attachments or accessories, or to make special alterations to the substituted Equipment. Such substituted Equipment will, while in the service of Lessee, be subject to the terms and conditions and the payment of rentals and charges provided in this Agreement.

6.4A   Lessee, at its own cost and expense, will be responsible for the normal needs required for the Equipment in its daily operation, including; (i) the making of a routine check of each unit at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. gas Equipment is rented furnishing and storing L. P. gas fuel and cylinders and changing such cylinders as required.

If this Agreement is **NOT A FULL SERVICE MAINTENANCE AGREEMENT**, the following provisions will apply:

6.2B   Lessor will inspect the Equipment periodically during the lease term.  Lessor will furnish to Lessee a report after each such inspection on the condition of each unit of Equipment and any repair work that may be required.

6.3B   Lessee agrees to perform, at its own cost and expense, according to Lessor's manuals for maintenance and operation, all Equipment maintenance, service and repair (including both labor and materials) including, but not limited to:

(i)   Daily maintenance such as (i) the making of a routine check of each item at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. gas equipment is rented, furnishing and storing the L. P. gas fuel and cylinders and changing such cylinders as required.

(ii)   Preventive maintenance service (per lubrication charts in manual).

(iii)   Repairing, overhauling or adjusting of drive line, drive axle, uprights, steering gear, steering axle, hydraulic system brakes, power steering components, chains; and on gas-powered Equipment, the engine, engine accessories, belts, clutch and transmissions; and on battery-powered Equipment, the electric drive and pump motors, and all other routine repair work required to keep the Equipment in good operating condition.

(iv)   Repairing, overhauling or adjusting of battery and charging Equipment, where battery-powered Equipment is rented.

(v)   Replacing or repairing of tires.

(vi)   Repairs that may be required as determined by Lessor during its periodic inspection and report to Lessee.

44505 / 54075

6.4B  Lessee will, at its own expense and until the return of the Equipment at the expiration of the lease term, maintain the Equipment in good operating order, repair, and appearance and, in effecting maintenance and repairs, will have such work performed only by qualified persons who are satisfactory to Lessor.  If Lessor, during any inspection, determines that Lessee has failed to perform its obligations as set forth above with respect to any item of Equipment, Lessor will give Lessee written notice thereof. Unless Lessee performs such obligations within 30 days from the date of such notice, Lessor will have the right, but not the obligation, to terminate the Lease and/or to perform the maintenance, service and repair required to be performed by Lessee under this Agreement. If Lessor performs such maintenance, service or repair, Lessee will pay Lessor an amount equal to Lessor's then normal charge to its customers for similar services, such payment to be made within thirty (30) days after Lessee receives Lessor's invoice with respect thereto.

## 7.  TAXES.

Lessee will be responsible for and pay when billed by Lessor any and all taxes, fees, or assessments, however designated, levied, or based, relating to the transfer, use, possession or operation of the Equipment, including but not limited to personal property taxes, gross receipts taxes, privilege taxes, excise taxes, license taxes, and sales and use taxes, together with any penalties, times or interest thereon, and excluding only franchise taxes and taxes measured by the net income of the Lessor. When personal property taxes are not billed on an item basis by the respective governmental authority, Lessor will determine the appropriate tax liabilities attributable to the leased Equipment on a reasonable basis.  Lessee will give immediate notice to Lessor of any attachment, tax notice, or inquiries from taxing authorities concerning the Equipment.

## 8.  LIABILITY OF LESSEE.

Lessee assumes all risks and liabilities arising from Lessee's possession, use and operation of the Equipment from the moment of delivery to Lessee to the moment of return to Lessor. Unless directly caused by Lessor's sole negligence, Lessee agrees to indemnify and hold Lessor, its officers, directors, stockholders, employees, agents and representatives harmless from any and all of the following whether the same be actual or alleged: all loss, damage, claims, suits, taxes, liens, penalties, fines, liability and expense (including attorneys' fees) arising in any manner as a result of the breach by Lessee, any agent, employee or servant of Lessee, any assignee of Lessee and any other person using or in possession of the Equipment, of any term of this Agreement, or relating directly or indirectly to the possession, use and operation of the Equipment including, but not limited to injuries or death to persons or damages to or destruction of property, claims and liens for storage, labor and materials and all loss of and damage to the Equipment.  Should Lessor assign any of its rights or delegate any of its obligations under this Agreement, Lessee agrees that Lessor, Lessor's assignee and the officers, directors, stockholders, employees, agents and representatives of Lessor's assignee, will be entitled to the indemnity provided hereunder.

## 9.  INSURANCE.

Lessee will provide and pay for an all-risk insurance insuring against physical loss or damage to the Equipment in an amount satisfactory to Lessor. Lessee will also provide and pay for public bodily injury and property damage liability insurance against loss caused by or arising from Lessee's possession, use or operation of the Equipment. The minimum limits for such liability insurance shall be not less than One Million Dollars combined single limit. Lessee will furnish Lessor with certificates of insurance evidencing such coverages and designating both Lessor and its assigns as additional insureds and loss payees under the policy. Such certificates shall provide for 30 days prior written notice by registered mail to Lessor of any cancellation or change reducing coverage. The insurance so provided will be effective during the period from the moment of delivery of each item of Equipment under lease to Lessee until the moment of return receipt by Lessor. Lessor reserves the right, but not the obligation, upon failure of Lessee to furnish such certificates of insurance or upon receipt of a notice of cancellation or change reducing coverage to make such arrangements for insurance as Lessor believes necessary. Lessee will pay for the cost of such insurance upon demand.

## 10. THEFT OR DESTRUCTION.

If any of the Equipment is stolen or disappears or is damaged to the extent that it is impossible to place it back into the same condition as when received (ordinary wear and tear excepted) ("Casualty Occurrence"), Lessee agrees to reimburse Lessor immediately for the loss of the Equipment by paying Lessor an amount equal to the then unpaid balance of aggregate rental for such Equipment plus the fair market value at the expiration of the Lease.  Fair market value is the value of the Equipment obtained in an arms length transaction between an informed and willing buyer and seller, valued at its highest and best use and not valued at a forced sale or liquidation value, without deduction for the costs of removal of Equipment from its current location at expiration of the Lease. Upon receipt of such payment, Lessor will assign title of the Equipment to Lessee and Lessee's obligations to pay rent shall cease upon such assignment and this Agreement will terminate.

44505 / 5 :075

**11. OWNERSHIP.**

It is expressly understood and agreed that this Agreement is a lease only and Lessee does not acquire title to any of the Equipment. Lessee will not cause or allow any liens or mortgages of any kind whatsoever to be placed on the Equipment. Lessee agrees that it will not take any position on any tax returns or other filings with any taxing authority which is inconsistent with the status of this Agreement as a lease or Lessor's status as the owner of the Equipment for income tax purposes. Lessee will not make any improvements other than ordinary maintenance and repairs to the Equipment without the prior written approval of Lessor. Lessee authorizes Lessor to take any actions reasonably necessary to perfect Lessor's interest in the Equipment, including, but not limited to the filing of any financing statements, or other documents, with or without Lessee's signature. If Lessee's signature is required, Lessee hereby appoints Lessor as its attorney-in-fact to execute any such documents or financing statements. In the event that Lessor prepares and files such financing statements, Lessee agrees to pay Lessor a fee of $50, plus actual filing costs.

**12. DEFAULT.**

Any one or more of the following shall constitute an Event of Default:

12.1   Failure by Lessee to make any payment when it is due, if such default shall continue for a period of 10 days after the date such payment is due;

12.2   Default by Lessee in the performance of any other provision of this Agreement, if such default shall continue for a period of 10 days after written notice of such default is given by Lessor to Lessee;

12.3   Institution of a proceeding in reorganization, bankruptcy or insolvency by or against Lessee or its property in any court, which proceeding is not dismissed within a period of 30 days; or.

12.4   Lessee (i) is unable to pay its debts as they become due, (ii) makes an assignment for the benefit of creditors, (iii) consents to the appointment of a receiver of itself or of the whole or any substantial part of its property;

12.5   Any material misrepresentation of fact, circumstance or breach of any warranty or covenant by Lessee.

**13. REMEDIES.**

13.1   If an Event of Default occurs, Lessor may, at its option, exercise any one or more of the following remedies:

a. Proceed by appropriate court action or actions, either at law or in equity, to enforce performance by Lessee of the applicable covenants and terms of this Agreement or to recover damages for the breach of such covenants and terms;

b. By notice in writing to Lessee, terminate this Agreement as to all or any of the Equipment, whereupon all right and interest of Lessee to or in the use of said Equipment will cease. In such event, Lessee will deliver the Equipment as specified in Article 5.1 , or such other place as may be designated by Lessor, without relieving Lessee of its other obligations under this Agreement. Lessor may, directly or by its agents, peaceably enter upon the premises of Lessee without demand or notice, or other premises where any of the said Equipment may be or is reasonably believed to be without demand or notice, and take possession thereof;

c. Sell any of the Equipment at public or private sale, as Lessor may determine, free and clear of any rights of Lessee and without any duty to account to Lessee with respect to such sale or for the proceeds thereof; or

d. Hold, keep idle or lease to others any of the Equipment, as Lessor in its sole discretion may determine, free and clear of any rights of Lessee and without any duty to account to Lessee with respect to such action or for any proceeds with respect thereto.

13.2   In an Event of Default, Lessor shall have the right to immediately terminate this Agreement and accelerate all payments, charges and other amounts due. Lessee agrees that it will pay any expenses including reasonable attorneys fees incurred by Lessor in the repossession or seizure of the Equipment or in the enforcement of any right hereunder.

13.3   The remedies provided by this Agreement in favor of Lessor will not be deemed exclusive, but will be cumulative and will be in addition to all other remedies in Lessor's favor existing at law or in equity. Lessee hereby waives any and all rights of setoff. The exercise of any right or remedy available to Lessor will not operate as a waiver of any other right or remedy. The failure of Lessor to exercise or a delay by Lessor in exercising any right or remedy will not operate as a waiver of such right or any other right.

**14. COLLECTION COSTS.**

If Lessee breaches any term or condition of this Agreement or otherwise defaults, Lessee agrees to pay all of Lessor's expenses incurred in exercising any of Lessor's rights under this Agreement, including but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorney's fees paid to an attorney who is not a salaried employee, not to exceed the amount permitted by applicable law.

**15. LATE CHARGE.**

If a payment due hereunder is received by Lessor more than 10 days after its scheduled due date, Lessee shall pay a late charge equal to 5% of the unpaid amount of the late payment or maximum allowed by law, whichever is less, but only once for each such late payment.

44505 / 54075

**16. WARRANTY SERVICE.**

Lessor will deliver to Lessee the factory limited warranty for the Equipment to enable Lessee to obtain customary warranty service furnished on the Equipment. Other than delivering said factory warranty, there are no representations, promises, statements or warranties, express or implied, unless endorsed hereon in writing, and **THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL LESSOR BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM THE EQUIPMENT OR LESSEE'S USE THEREOF.**

**17. ASSIGNMENT.**

17.1   Lessee will not assign, mortgage or encumber this Agreement or any Equipment leased hereunder, nor sublet or suffer or permit the Equipment to be used by others without the prior written consent of Lessor which consent shall not be unreasonably withheld. As to any assignment consented to by Lessor (i) the term of such assignment will not extend beyond the final day of the term of this Agreement and (ii) the rights of the assignee will be expressly subject to all of the terms of this Agreement. Lessee understands and agrees that it will remain liable as a principal hereunder and will be bound by all the terms and conditions of this Agreement notwithstanding any express consent by Lessor to any such assignment.

17.2   Lessor will have the right to assign any or all of its rights and obligations at any time without notice to Lessee and without Lessee's consent.   Lessee acknowledges that Lessor will promptly assign this Agreement to Toyota Motor Credit Corporation.

**18. SECURITY DEPOSIT.**

Lessor may use the Security Deposit to pay all amounts due under this Agreement. If Lessee performs all of its obligations under this Agreement, the Security Deposit will be returned to Lessee at the expiration or termination of this Agreement. No interest, increase or profits will be paid to the Lessee on the Security Deposit.

**19. REPRESENTATIONS AND WARRANTIES.**

19.1   Lessee represents and warrants that any financial information or other information provided to Lessor is true and accurate, and any information provided to Lessor for inclusion in the Survey Report is a true and accurate statement of Lessee's anticipated use of the Equipment.

19.2   Lessee represents and warrants to Lessor that the Equipment shall only be used in Lessee's trade or business and in compliance with all federal, state and local laws and regulations. Lessee agrees to maintain in good and legible condition any identification numbers, labels, tags and other markings used to identify the Equipment as Lessor's property.

**20. NOTICES.**

All notices or demands pursuant to this Agreement shall be in writing, and deemed made when sent by regular United States mail, registered or certified mail, return receipt requested, or other overnight or express delivery, or electronically with confirmation of receipt to the sender, to the address set herein or such other address as advised of in writing.

**21. GOVERNING LAW.**

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the state of the Lessor's place of business.

**22. FURTHER ASSURANCES.**

From time to time each party will execute and deliver such further instruments and will take such other action as any other party reasonably may request in order to discharge and perform their respective obligations and agreements hereunder.

**23. DELAYS.**

Lessor will not incur any liability to Lessee for any obligations, if prevented by wars, fires, strikes or other labor disputes, accidents, acts of God, governmental regulations or interference, shortages of labor or materials, delays in transportation, non-availability of same from the manufacturer, or other causes beyond Lessor's control. IN NO EVENT SHALL LESSOR BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES.

**24. SEVERABILITY AND WAIVER.**

Any provision of this Agreement prohibited by applicable law will be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof.  The failure of either party to require strict performance of any provision will not diminish that party's right thereafter to require strict performance of any operation.

44505 / 54075

**25. PRIOR APPROVAL.**

This Agreement shall not be effective until reviewed and accepted by Toyota Motor Credit Corporation. Lessee shall not take delivery of the Equipment until such time.

**26. SUCCESSORS AND ASSIGNS.**

This Agreement shall be binding on, and will inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

**27. SURVIVAL OF COVENANTS, REPRESENTATIONS AND WARRANTIES.**

The covenants, representations, warranties and indemnities of Lessee set forth in this Agreement shall survive the termination of this Agreement.

**28. AMENDMENTS OR MODIFICATION.**

This Agreement constitutes the entire of the parties. No modification or amendment shall be effective unless made in writing and signed by both

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the day and year first above written.

Lessee:   INSERTCO, INC.

By: _____   Title: _Vice President_   Date: _9/15/06_

**Assignment of Lease Agreement:**

The authorized signature of the Lessor below has the effect of:

1. Accepting the terms and conditions of this Agreement; and
2. Assigning to Toyota Motor Credit Corporation all of Lessor's right, title and interest in and to the leased Equipment and this Agreement, including all amounts to become due under it.

Lessor:   TOYOTA LIFT OF NEW YORK

By: _____   Title: _General Mgr_   Date: _9/18/06_

**Acceptance of Assignment of Lease Agreement:**

**TOYOTA MOTOR CREDIT CORPORATION**

By: _____

Title: _____

Address:   P.O. Box 3457
Torrance, California  90510

44505 / 54075

 **TOYOTA**
FINANCIAL SERVICES ℠

# ADDENDUM TO LEASE AGREEMENT
# WITH OPTION TO PURCHASE

This Addendum to Lease Agreement is incorporated into and made a part of that certain Commercial Lease Agreement (Equipment) dated as of ___07/10/2006___, (the "Lease"), by and between
  INSERTCO, INC.

as Lessee ("Lessee"), and ___TOYOTA LIFT OF NEW YORK___
as Lessor ("Lessor").

The following provisions are added to the terms of the Lease:

## 29.  OPTION TO PURCHASE.

Lessor hereby grants to Lessee the option (the "Option") to purchase the Equipment described in the Lease upon termination of the Lease, subject to the terms and conditions set forth herein. The Option shall be exercised, if at all, by written notice to Lessor on or before the date that is 60 days prior to the expiration date of the term of the Lease. If Lessee is in default under any of the terms, covenants and conditions of the Lease at the time that Lessee exercises the Option or any time thereafter, Lessor shall have, in addition to all of Lessor's rights and remedies provided in the Lease, the right to terminate the Option. In the event Lessee exercises the Option within the time period set forth above, Lessee shall deliver to Lessor, upon termination of the Lease and payment in full of all rents and obligations due under the Lease, the amount of _____ONE_____ Dollars ( _____$1.00_____ ) for each unit of Equipment purchased by Lessee hereunder, plus applicable sales or use tax. Lessor shall execute and deliver to Lessee all documents necessary to effect transfer of ownership of the Equipment upon such payment by Lessee. **LESSOR MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONDITION OF THE EQUIPMENT AS OF THE TERMINATION DATE OF THE LEASE AND LESSEE SHALL PURCHASE THE EQUIPMENT IN ITS "AS-IS", "WHERE-IS" CONDITION.** In the event Lessee does not elect to exercise the Option, the Equipment shall be returned to Lessor upon termination of the Lease pursuant to the terms of the Lease.

## 30.  USE OF EQUIPMENT

Lessee hereby warrants and represents ... t leasing the Equipment for personal, family, household or agricultural purposes.

In WITNESS WHEREOF, the undersigned have executed this Addendum to Lease Agreement as of the date first set forth in the Lease.

Lessee
INSERTCO, INC.

By: _____      Title: _____Vice President_____

Lessor
TOYOTA LIFT OF NEW YORK

By: _____      Title: _____

TOYOTA MOTOR CREDIT CORPORATION

By: _____      Title: _____Fleet hp_____

16200 (05/00)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

**9299155**

NY, Secretary of State

UCC Direct Services
Representation of filing

**This filing is Completed**
File Number : 200609205914258
File Date : 20-SEP-2006

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name(1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION NAME | | | |
|---|---|---|---|
| Insertco, Inc | | | |
| 1b. INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 57-11 49th Place | Maspeth | NY 11378 | US |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID#, if any    ☒ NONE |
|---|---|---|---|---|

2. **ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name(2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any    ☐ NONE |
|---|---|---|---|---|

3. **SECURED PARTY'S** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | |
|---|---|---|---|
| Toyota Motor Credit Corporation | | | |
| 3b. INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| P. O. Box 3457 | Torrance | CA 90510-3457 | US |

4. This FINANCING STATEMENT covers the following collateral

TWO (2) NEW TOYOTA FORKLIFT
MODEL # 7FBEHU18
SERIAL # 11794, 11972

TWO (2) BATTERY
MODEL # 18-85-21
SERIAL # 3577EP, 6943CP

TWO (2) CHARGER
MODEL # 18RO875E3
SERIAL # 06L34152, 06L34153

| 5. ALTERNATE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | ☐ Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2 |
|---|---|---|

8. OPTIONAL FILER REFERENCE DATA   retail
22056491

FILING OFFICE COPY- UCC FINANCING STATEMENT (FORM UCC1)   (REV. 05/02/02)