<u>EXHIBIT C</u>

MUTUAL SEPARATION AGREEMENT

## MUTUAL SEPARATION AGREEMENT

This Mutual Separation Agreement (the "Agreement") is entered into by and between **Timothy Kennedy**, on behalf of himself, his agents, assignees, successors, heirs, executors, administrators, beneficiaries, trustees, and personal and legal representatives (collectively "Employee") and **The Morning Call, Inc.** (the "Company"). Employee and the Company acknowledge and agree as follows:

1. *Separation.*

Employee's position will be eliminated and his employment with the Company will terminate as of the end of business on July 5, 2010 (the "Separation Date"). After the Separation Date, Employee will not have authority to represent or bind the Company and shall not act or convey the impression that he is acting on behalf of the Company.

2. *Eligibility For Separation Payments and Benefits.*

To be eligible to receive separation payments and benefits under this Agreement, Employee must: (a) assist in the transition of his responsibilities and continue to satisfactorily perform his current responsibilities or such other duties as may from time to time be assigned to him by the Company up to and including the Separation Date; (b) not in any manner whatsoever, denigrate, disparage, or otherwise convey or cause to be conveyed an unfavorable impression of the Company or any of the Released Parties, as defined in Section 9(a) below; (c) sign, date and return a copy of this Agreement to the Company within five (5) business days after the Separation Date, but not before the Separation Date, and (d) not revoke this Agreement following his execution and delivery of the Agreement as provided herein.

3. *Separation Payments and Benefits.*

Provided that Employee meets all of the eligibility requirements set forth in Section 2 above, consistent with the February 4, 2009 Order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") authorizing the implementation of a severance policy for non-union employees:

(a) the Company shall pay Employee sixteen (16) weeks of severance pay in the form of salary continuation via bi-weekly payments of $10,000, less applicable deductions and taxes, said payments to be made through and including October 25, 2010 (the "Salary Continuation Date") at the time salary payments customarily are made. The gross amount of salary continuation shall not exceed $80,000; and

(b) through the Salary Continuation Date, Employee will continue to be eligible to participate, under the same terms and conditions as are then applicable to employees of the Company, in those medical, dental and vision coverages in which he participated as of the Separation Date (the "Continued Benefits"), provided he timely pays any required contributions for the Continued Benefits through authorized payroll deductions.

4. *Relocation.*

The Company will reimburse up to $25,000 in reasonable and customary moving expenses, including the cost to move Employee's household goods and up to two (2) automobiles to any city in the United States, provided such expenses are incurred within one (1) year of the Salary Continuation Date. Employee must provide adequate supporting documentation of the expenses incurred to obtain reimbursement of his moving expenses.

5. *Key Operators Bonus.*

If, but only if, the Bankruptcy Court authorizes and approves payment of 2009 Key Operators Bonuses, the Company shall pay Employee a 2009 Key Operators Bonus in such amount as is approved by the Bankruptcy Court, said payment to be made, if made, less applicable deductions and taxes, at the time such bonus payments are made following Bankruptcy Court approval to other participants in the Key Operators Bonus plan.

6. *Unemployment.*

The Company will not contest any valid claim that Employee may make for unemployment benefits.

7. *Vacation Payment.*

Earned but unused vacation as of the Separation Date, if any, will be paid to Employee separate and apart from this Agreement and will not be contingent on signing this Agreement.

8. *No Other Compensation or Benefits.*

The Company will provide Employee with information regarding any benefits for which he may be eligible or which may be continued or converted to individual coverage in accordance with the Consolidated Omnibus Budget Reconciliation Act (COBRA) and/or the terms of the applicable benefit plans ("Continued or Converted Benefits"). The Company will not oppose Employee's application for COBRA benefits. Other than as expressly provided in this Agreement, Continued or Converted Benefits or defined benefit plan benefits, if applicable, Employee will not be entitled to any salary, bonuses, stock, benefits, severance pay or other compensation or perquisites whatsoever after the Separation Date.

9. *Waiver and General Release of Claims.*

(a) In exchange for the promises made by the Company in this Agreement, Employee unconditionally waives and releases all known and unknown, suspected and unsuspected, accrued and unaccrued, fixed and contingent claims and causes of action of any kind that he has or may have against the Company, its parents (Tribune Company and Tribune Publishing Company), subsidiaries, affiliates, predecessors, successors, divisions, affiliates, and its/their respective officers, directors, agents, shareholders, attorneys, employees, employee benefit plans, plan administrators, insurers, assignees, fiduciaries, administrators, trustees, and legal representatives, both past and present (collectively the "Released Parties") which have been or could be asserted against the Released Parties or any of them arising out of or related to his employment with and/or termination from employment with the Company and/or any other occurrence up to and including the date on which he signs this Agreement.

(b) The claims and causes of action Employee is releasing and waiving include, but are not limited to, any and all claims and causes of action that the Released Parties or any of them:

(i) have violated any type of written or unwritten contract, agreement, understanding, policy, benefit, retirement and/or pension plan, promise and/or covenant of any kind, including any covenant of good faith and fair dealing;

(ii) have discriminated against Employee on the basis of any characteristic or trait protected under any law, including but not limited to race, color, sex, sexual orientation, national origin, ancestry, disability, religion, marital or parental status, citizenship, age, source of income, or entitlement to benefits, in violation of any of the following statutes, as amended, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act ("ADEA"), the Employee Retirement Income Security Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the

2

Pennsylvania Human Rights Act, the Worker Adjustment and Retraining Notification Act, or any other federal, state or local human rights, civil rights, wage and hour, pension or labor law, rule and/or regulation;

(iii) have violated public policy or common law, including but not limited to claims for personal injury, invasion of privacy, retaliatory discharge, negligent hiring, retention or supervision, defamation, intentional or negligent infliction of emotional distress and/or mental anguish, intentional interference with contract, negligence, detrimental reliance, loss of consortium to Employee or any member of his family, promissory estoppel, and/or

(iv) are in any way obligated for any reason to pay Employee damages, expenses, litigation costs (including attorney's fees), wages, bonuses, severance pay, separation pay, termination pay, any type of payments or benefits based on Employee's separation from employment, incentive pay, commissions, disability benefits or sick pay, compensatory damages, punitive damages, and/or interest.

Nothing in this Agreement shall preclude Employee from asserting any claim that cannot be waived by law, or from exercising his rights to receive any sums or benefits to be paid or provided under this Agreement, or to any vested, accrued benefits to which he is (or becomes) otherwise entitled pursuant to the terms of the employee benefit plans in which he participated (collectively "Exempted Claims").

**EMPLOYEE UNDERSTANDS AND AGREES THAT, OTHER THAN EXEMPTED CLAIMS, HE IS WAIVING AND RELEASING ANY AND ALL CLAIMS AGAINST THE RELEASED PARTIES AND EACH OF THEM TO THE DATE HE SIGNS THIS AGREEMENT IN EXCHANGE FOR CONSIDERATION TO WHICH HE IS NOT OTHERWISE ENTITLED.**

(c) Nothing in this Agreement shall be construed to prevent Employee from filing a charge with, or participating in any investigation conducted by the U.S. Equal Employment Opportunity Commission ("EEOC") or applicable state agency, or to prevent any challenge by him to the waiver and release of any claim under the ADEA. Employee, however, expressly and unconditionally waives any and all entitlement to relief, including, but not limited to, any monetary damages and equitable relief, with respect to any claim or cause of action released in this Agreement.

(d) Employee agrees that his waiver and release of rights under this Agreement is knowing and voluntary and he covenants and agrees that he:

(i) has been given at least twenty one (21) days in which to consider, sign and return this Agreement to the Company;

(ii) has hereby been advised in writing to consult with an attorney concerning this Agreement and has consulted with the attorney of his choice; and

(iii) will have seven (7) days from the date of signing to revoke this Agreement if he so desires. Any revocation must be in writing, signed by him and must be received by Susan Mitchell, Vice President Human Resources, Tribune Publishing Company, 435 North Michigan Avenue, Chicago, IL 60611, facsimile number 312-222-4971, within the revocation period to be deemed effective.

This Agreement shall be void and of no force and effect if Employee revokes it, but if he signs and does not revoke it, then it shall then become effective and enforceable. If Employee revokes this Agreement, he will not receive the separation payments and benefits provided under Section 3 of this Agreement.

3

10. *Restrictive Agreements*.

Employee stipulates and agrees to the following Restrictive Agreements necessary to protect the legitimate business interests of the Company.

(a)  During his employment with the Company, Employee was privy to the highest level of confidential and proprietary business information of the Company and its affiliated companies, not generally known by the public or within the industry and which thereby gives the Company and its affiliated companies a competitive advantage and which has been the subject of reasonable efforts by the Company and its affiliated companies to maintain such confidentiality, including, but not limited to, trade secrets, information regarding the Company and its affiliated companies' assets, finances, compensation information, business operations and strategies, marketing and advertising strategies, plans and/or pricing ("Confidential Information"). Employee agrees that he shall not, directly or indirectly, divulge, disclose or communicate such Confidential Information to or for the benefit of any person, entity, firm, corporation, or other third party for any purpose whatsoever, nor make use of any Confidential Information for his own purposes, at any time hereafter, unless and until such Confidential Information is published and becomes public knowledge other than through acts by or on behalf of Employee, or as required by law. Confidential Information does not include information Employee knew about before his employment with the Company or information that can be developed without reference to the Company's or its affiliated companies' Confidential Information as documented by competent evidence.

(b) Through the date that is one (1) year from the Separation Date, Employee will not employ, either directly or indirectly, any person previously employed by the Company or any of its affiliated companies, unless at such time such person has not been employed the Company or any of its affiliated companies for at least six (6) months, or in any way solicit, entice, persuade or induce any person to terminate or refrain from renewing or extending their employment with the Company or any of its affiliated companies.

(c)  The amount of actual or potential damages resulting from Employee's breach of any of the Restrictive Agreements set forth herein will be inherently difficult to determine with precision and, further, any breach could not be reasonably or adequately compensated in money damages. Accordingly, any breach by Employee of the Restrictive Agreements set forth herein will result in immediate and irreparable injury and harm to the Company for which the Company will have no adequate remedy at law. The Company, thus, will be entitled to injunctive or other equitable relief to prevent or to remedy any such breach of the Restrictive Agreements set forth in this Section. The Company's resort to such equitable relief will not waive any other rights it may have to damages or other relief.

11. *Non-Disparagement*.

Employee will not, in any manner whatsoever, denigrate, disparage, or otherwise convey or cause to be conveyed an unfavorable impression of any of the Released Parties to a third party or parties. Nothing in this Paragraph, however, shall be construed to prevent Employee from providing truthful testimony or information to a court or governmental agency, including the EEOC or applicable state agency. Employee's receipt (or continued receipt) of the salary and benefit continuation provided-for in Paragraph 3 above is expressly conditioned on him honoring and abiding by this non-disparagement covenant and if he breaches this non-disparagement covenant, the Company shall have the right to discontinue salary and/or benefit continuation provided-for herein. The Company, acting in its corporate capacity, will not, in any manner whatsoever, denigrate, disparage, or otherwise convey or cause to be conveyed an unfavorable impression of Employee to a third party or parties.

4

12. *Cooperation.*

Employee agrees to continue to cooperate reasonably with the Company in connection with any and all matters that have arisen or may arise out of events that occurred during his employment. The Company will pay Employee $75 per hour for time spent cooperating with the Company at the Company's request after the Salary Continuation Date.

13. *Company Property.*

Employee will return all equipment and other property in his possession belonging to the Company, including, without limitation, all keys and access cards, cellular telephones, BlackBerries, pagers, credit cards, tangible proprietary information, documents, books, records, reports, contracts, lists, computer equipment, computer disks (or other computer-generated files or data), software, or copies thereof, created on any medium, prepared or obtained by Employee or the Company in the course of or incident to his employment with the Company. Employee will be allowed to copy or otherwise retain any personal, non-business related documents or information contained on his Company computer or Droid. Employee covenants that he will not copy or retain any business related documents or information.

14. *Non-Admission.*

Nothing in this Agreement constitutes or shall be interpreted as an admission of liability or wrongdoing on the part of Employee or any of the Released Parties.

15. *Choice of Law/Jurisdiction.*

This Agreement shall be governed by and interpreted under the laws of the State of Pennsylvania applicable to contracts made and to be performed entirely within Pennsylvania. Employee and the Company consent to the personal jurisdiction of the Court of Common Pleas of Lehigh County or U.S. District Court for the Eastern District of Pennsylvania in any proceeding to enforce this Agreement and agree not to interpose any objection or defense based on lack of personal jurisdiction or improper venue in any such proceeding.

16. *Indemnification.*

The Company shall indemnify Employee with respect to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative brought by reason of the fact of his employment with the Company against expenses (including attorneys' fees), judgments, fines and amounts paid in settlements to the extent that Employee acted in good faith and in a manner he reasonably believed to be in the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.

17. *Reference Letter/Response to Prospective Employers.*

The Company will provide Employee with a letter of reference, the terms of which will be mutually agreed-upon by the parties. If contacted by prospective employers, the Company will provide only dates of employment and positions held, consistent with its policy. Employee will direct prospective employers to contact only Susan Mitchell,  Vice President Human Resources, Tribune Publishing Company, 435 North Michigan Avenue, Chicago, IL 60611, telephone number 312-222-5876.

18. *Complete Agreement.*

This Agreement constitutes the entire agreement and understanding between Employee and the Company regarding the termination of his employment. This Agreement totally replaces and supersedes any and all prior agreements, arrangements, representations and understandings between Employee and the Company, written or oral, expressed or implied. This Agreement cannot be amended, modified, supplemented or altered except by written amendment signed by Employee and an authorized representative of the Company.

19. *Binding on Successors and Assigns.*

This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Company and shall inure to the benefit of and be binding upon Employee's heirs, executors, administrators, successors and assigns.

20. *Non-Disclosure/Non-Use.*

Except as may be required by law, neither Employee nor any person acting by, through, or in concert with him, shall directly or indirectly, publish, disseminate, disclose, or cause or permit to be published, disseminated, or disclosed to any individual or entity, any information relating to the existence or content of this Agreement or the circumstances and discussions that led up to it, including, without limitation, the fact or amount of payments provided herein.   This paragraph shall not be construed, however, to prevent Employee from disclosing information to any attorney, accountant or tax advisor with whom he may consult for the purpose of obtaining professional advice or services, or to any governmental taxing authority, or to his spouse. This Agreement may not be used as evidence in any subsequent proceeding of any kind (without the written consent of the other party) except one that either party institutes alleging a breach of this Agreement.

21. *Interpretation of the Agreement.*

Employee and the Company acknowledge that each party had an equal opportunity to review and/or modify the provisions set forth in this Agreement.   Thus, in the event of any misunderstanding, ambiguity or dispute concerning this Agreement's provisions or their interpretation, no rule of construction shall be applied that would result in having this Agreement interpreted against either party. The language of all parts in this Agreement shall be construed as a whole, according to fair meaning, and not strictly for or against any party.   The headings provided in boldface are inserted for the convenience of the parties and shall not be construed to limit or modify the text of this Agreement.

22. *Severability/Reformation.*

Employee and the Company agree that if any provision of this Agreement is deemed invalid or unenforceable for any reason by a court or other tribunal of competent jurisdiction, it shall not be stricken in its entirety or held void or unenforceable, but rather shall be deemed modified to make it enforceable to the maximum extent legally permissible, and the remaining provisions of this Agreement shall continue to be in full force and effect.

23. *Prevailing Party.*

In the event that there is any litigation arising out of or relating to this Agreement, the prevailing party shall recover, in addition to any and all other relief, his or its attorney's fees and costs.

24. *Knowing and Voluntary Execution*.

Employee covenants that he is legally and mentally competent to enter into this Agreement, and acknowledges that he is entering into this Agreement knowingly, voluntarily and with full knowledge of its significance and the rights he is waiving, that no other promises or representations whatsoever have been made to induce him to sign this Agreement and that he has not been coerced, threatened, or intimidated into signing this Agreement.

Timothy Kennedy

July 10, 2010

The Morning Call, Inc.

By

July 17, 2010

7