## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Hearing Date: TBD**<br>**Related to Docket Nos. 13643 and 13661** |

## REORGANIZED DEBTORS' REPLY IN SUPPORT OF THE OBJECTION TO THE CLAIMS OF THE TRUCK DRIVERS & HELPERS LOCAL UNION NO. 355 RETIREMENT PENSION FUND AND THE TRUCK DRIVERS & HELPERS LOCAL UNION NO. 355 HEALTH AND WELFARE FUND PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3003 AND 3007

The reorganized debtors in the above-captioned chapter 11 cases (collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby file this reply (the "Reply") to the response of Truck Drivers & Helpers Local Union No. 355 Health & Welfare Fund and Truck Drivers & Helpers Local Union No. 355 Retirement Pension Fund (Docket No. 13661) (the "Response") to the Reorganized Debtors' Objection to the Claims of the Truck Drivers & Helpers Local Union No. 355 Retirement Pension Fund and the Truck Drivers &

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

Helpers Local Union No. 355 Health and Welfare Fund Pursuant to Section 502(b) of the

Bankruptcy Code and Bankruptcy Rules 3003 and 3007 (Docket No. 13643) (the "Objection").[2]

In support of this Reply, the Reorganized Debtors rely on the Supplemental Declaration of Ann

Barnes in Support of the Reorganized Debtors' Objection to the Claims of the Truck Drivers &

Helpers Local Union No. 355 Retirement Pension Fund and the Truck Drivers & Helpers Local

Union No. 355 Health and Welfare Fund (the "Supplemental Barnes Declaration"), a copy of

which is attached hereto as Exhibit A, and the Declaration of Robert Rosier in Support of the

Reorganized Debtors' Objection to the Claims of the Truck Drivers & Helpers Local Union No.

355 Retirement Pension Fund and the Truck Drivers & Helpers Local Union No. 355 Health and

Welfare Fund (the "Rosier Declaration"), a copy of which is attached hereto as Exhibit B.

## PRELIMINARY STATEMENT

1.      As discussed in the Objection, the Local 355 Claims represent an

unsubstantiated attempt to manufacture unfulfilled contributions owed by the Baltimore Sun

premised on nothing more than Local 355 Funds' erroneous interpretation of a collective

bargaining agreement provision – an interpretation unsupported by the plain language in the

relevant CBA and a half-century of practice under the CBA.[3]

2.      The Response opposes the relief requested in the Objection.  The

Reorganized Debtors submit this Reply in support of the following counter-arguments: (1) the

Local 355 Funds' Trustees' (the "Trustees") interpretations of the CBA are not entitled to

deference; (2) the CBA does not require the Baltimore Sun to contribute to the Local 355 Funds .

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

[3] Copies of the Local 355 Claims were submitted to the Court on June 26, 2013 in Exhibit A to the Objection (Docket No. 13643).

for overtime pay;[4] (3) the relevant history and course of dealing between the Parties supports the Baltimore Sun's position and contradicts the Local 355 Funds' position; and (4) the Fourth Circuit's opinion in U.S. Foodservice v. Truck Drivers & Helpers Local Union No. 355 Health & Welfare Fund, 700 F.3d 743 (4th Cir. 2012) [hereinafter US Foodservice] is not materially similar to this case.

        3.     The Reorganized Debtors propose to adjourn the hearing on the Objection originally scheduled for October 8, 2013 to December 11, 2013, the next-scheduled hearing in these cases, or such other date and time as the Court selects for the holding of an evidentiary hearing on the Objection, in accordance with Local Rule 3007-1(i). The Reorganized Debtors intend to confer with the Local 355 Funds to reach a statement of undisputed facts respecting this matter. If such efforts are unsuccessful, the Reorganized Debtors intend to seek discovery from the Local 355 Funds concerning certain of the factual assertions made in the Response prior to any such evidentiary hearing.

## ARGUMENT

## I.    The Trustees' Interpretations of the CBA are Not Entitled to Deference

        4.     The CBA sets forth the terms on which the Baltimore Sun will make contributions to the Local 355 Funds. The language of the CBA is clear – the Baltimore Sun will contribute monthly to the Local 355 Funds for coverage provided by the applicable plan "for each straight-time hour or fraction thereof paid to each employee" of the Baltimore Sun, "up to but not in excess of fifty (50) straight-time hours for each work week of each such employee[]" in the case of the Welfare Fund and "up to but not in excess of forty (40) straight-time hours for each work week of each such employee[]" in the case of the Pension Fund. See Ex. C to Obj. at

---

[4] A copy of the relevant portions of every collective bargaining agreement between the Parties was submitted to the Court on June 26, 2013 as Exhibit C of the Objection (Docket No. 13643).

49-50. The Baltimore Sun has complied with the plain meaning of that language, and has made contributions to the Local 355 Funds "for each straight-time hour or fraction thereof paid to each employee," up to 40 or 50 straight-time hours per work week for the Pension Fund and the Welfare Fund, respectively.

5.      All of the Local 355 Funds' arguments attempt to obscure that fact. The Local 355 Funds' first argument is that the plain language of the CBA should be disregarded because the Local 355 Funds are entitled to interpret the CBA, which interpretation in turn must be given great deference by the Court. Resp. at 11-12. This argument is wrong. Nothing in the CBA, the Trust Agreements,[5] ERISA, or other law entitles the Local 355 Funds to deference in their interpretations of *the CBA*. The Local 355 Funds point out that, under the Trust Agreements, the Trustees of the Local 355 Funds "shall have full power to construe the provisions of [the Trust Agreements], the terms used herein, and the Plan, by-laws, and regulations thereunder." Ex. 4 to Resp. § 4.1(a); Ex. 5 to Resp. § 4.1(a). Nowhere does it say "and the CBA," nor does the CBA fall into any of the categories of documents that the Trust Agreements entitle the Trustees to construe. The CBA is not a "plan document" to be interpreted by the Trustees with "great deference" to their views; it is a carefully negotiated bilateral contract between the union and the employer that is subject to interpretation under relevant nonbankruptcy law.[6]

---

[5] A copy of the Truck Drivers and Helpers Local Union No. 355 Health & Welfare Fund Restated Agreement and Declaration of Trust (the "Health Fund Trust Agreement") and a copy of the Truck Drivers and Helpers Local Union No. 355 Retirement Pension Fund Restated Agreement and Declaration of Trust (the "Pension Fund Trust Agreement," and, collectively with the Health Fund Trust Agreement, the "Trust Agreements") were submitted to the Court on July 23, 2013 as Exhibits 4 and 5 (respectively) of the Response (Docket No. 13661).

[6] See Teamsters Indus. Employees' Welfare Fund v. Rolls Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993) ("Although federal law governs the construction of collective bargaining agreements, traditional rules of contract interpretation apply when not inconsistent with federal labor law."). Indeed, neither the Trustees nor the Local 355 Funds are even parties to the CBA (although Local 355 of course is). There is no legal requirement that this Court defer to the contested interpretations of a non-party to the contract.

6.      The Trust Agreements, to the extent they are relevant, are noteworthy in that they defer to the CBA rather than trump it.  Specifically, each Trust Agreement provides, at section 4.1(a), that "[e]ach Employer shall make prompt contributions or payments to the [relevant Trust Fund] in such amounts and *under the terms as are provided for in the applicable Collective Bargaining Agreement* or other written agreement specified herein."  Ex. 4 to Resp. § 4.1(a); Ex. 5 to Resp. § 4.1(a) (emphasis added).  Similarly, each Trust Agreement provides, in section 4.1(e), that "[e]ach Employer shall make contributions to the Trust Fund on behalf of employees for all 'hours worked' and/or 'hours paid' *as these terms may be employed in any collective bargaining agreement*."  Ex. 4 to Resp. § 4.1(e); Ex. 5 to Resp. § 4.1(e) (emphasis added).  The Response concedes this point when it states that the language of the Trust Agreements does not "contravene the provisions of the CBA, [which] prescribe[es] maximum numbers of weekly hours of contributions."  Resp. at 14.  By the Local 355 Funds' own words, if the Trust Agreements do not "contravene the provisions of the CBA," then the CBA is binding when it describes the number and type of hours that the Baltimore Sun must use when it calculates its contribution.

7.      The Local 355 Funds attempt to evade the CBA's plain language.  They contend that the Trust Agreements require that "great deference is accorded the Local 355 Funds' interpretation of documents affecting them."  Id. at 12.  The Trust Agreements require no such thing.  Instead, the Trust Agreements provide the Trustees with the power to interpret the documents identified in the Trust Agreements.  Those documents do not include the CBA.  Neither the Trust Agreements nor the CBA vest the Local 355 Funds with the free-floating ability to interpret any document that affects them.

8.    Furthermore, Section 5.17 of the Trust Agreements provides that the Trustees "shall have full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters." Ex. 4 to Resp. § 5.17; Ex. 5 to Resp. § 5.17.  This full and exclusive authority does not extend to determinations relating to the negotiated level of employer contributions to the Local 355 Funds as set forth in the CBA.  If that were the case, then the parties to the CBA (which do not include the Local 355 Funds) would not have explicitly provided in the Trust Agreements that they that must seek to enforce all rights and liabilities relating to contributions to the Local 355 Funds pursuant to the grievance and arbitration procedures in the CBA; rather, they would have merely deferred to the interpretive authority of the Trustees that otherwise applies to benefit determinations.  See id.  The Local 355 Funds are attempting to bootstrap an issue of CBA interpretation to the discretionary authority of the Trustees to determine plan benefits.

9.    The Local 355 Funds also attempt to argue that the CBA language must not be afforded its plain meaning because CBAs are only interpreted in accordance with traditional contract principles "when they do not conflict with federal labor law." Resp. at 11.  The Local 355 Funds' argument fails because there is no conflict with federal labor law here.  The Local 355 Funds cite only to "ERISA" for such a conflict, but there is no conflict with ERISA here, only a conflict between the plain language of the CBA and the Parties' half-century of practice on the one hand, and the Local 355 Funds' preferred outcome on the other.  That does not justify disregarding elementary principles of contract interpretation.

## II.    The CBA Only Requires Contributions for "Straight-Time," Not Overtime, Pay

10.    The Response argues that the "straight-time" language is meant to establish that the contribution rate does not increase to one-and-one-half times for overtime hours, or, at the very least, that their adoption of that interpretation is reasonable.  Resp. at 14-15.

This assertion is based on the affidavit of Denis Taylor, which states that "[t]he genesis of the term 'straight-time hour' as used in the health and welfare and pension articles of these collective bargaining agreements was an attempt by the Union to make clear that, for hours for which an employee was paid the overtime rate, the employer was not obligated to pay contributions equal to one-and-one-half times the established contribution rate." Ex. 2 to Resp. ¶ 10.

11.    In his affidavit Mr. Taylor is stating his opinion, not a fact based on first-hand personal knowledge, as to the reasoning behind contract language that was originally drafted in 1962. See Ex. C to Obj. at 1, 3-4 (the first collective bargaining agreement that contains this language was signed in 1962). Mr. Taylor is not competent to make such an assertion because he cannot plausibly have any personal knowledge of the reasoning behind language drafted over fifty years ago. See Maldonado v. Ramirez, 757 F.2d 48, 50 (3d Cir. 1985) (stating that an "affidavit must be made 'on personal knowledge,' must set forth 'such facts as would be admissible in evidence' and must 'show affirmatively that the affiant is competent to testify to the matters stated therein[.]'") (quoting Fed. R. Civ. P. 56).[7] Further, Mr. Taylor states his opinion on the genesis of the language as a fact, which is impermissible. See id. at 51 ("An affidavit that is 'essentially conclusory and lacking in specific facts' is inadequate to satisfy the movant's burden.") (quoting Drexel v. Union Prescription Centers, Inc., 582 F.2d 781, 789-90 (3d Cir. 1978)).

12.    Instead of granting relevance to supposition, the Third Circuit has stated that "[t]o provide a measure of predictability for contracting parties, the objective manifestations of intent, rather than the unknowable subjective intent of the parties, govern this inquiry." Rolls

---

[7] The Notes of the Advisory Committee on Rules state that "[t]he contested matter initiated by an objection to a claim is governed by rule 9014 . . . ." See Fed. R. Bankr. P. 3007, Adv. Comm. Note. Therefore, through Bankruptcy Rule 9014, Bankruptcy Rule 7056 applies to this proceeding, which has adopted in its entirety Federal Rule of Civil Procedure 56. See Fed. R. Bankr. P. 9014 & 7056; see also IRS v. CM Holdings, Inc. (In re CM Holdings, Inc.), 221 B.R. 715, 717 n.5 (D. Del. 1998).

Royce, 989 F.2d at 137 (citing Gulf Oil Corp. v. Comm'r, 914 F.2d 396, 407 (3d Cir. 1990).

Here, the "objective manifestations of intent" support the opposite conclusion than the one

reached by the Local 355 Funds.  In records dating back to the CBA signed in late 1993, there is

no indication that the Local 355 Funds ever requested a change to the straight-time language.

See Barnes Supp. Decl. ¶ 6.  In particular, the Local 355 Funds did not request a change to the

straight-time language or even bring up the issue in two rounds of negotiations starting in 2008,

*after* the Local 355 Funds began requesting the payments at issue.  Id. ¶ 7.  Therefore, the history

of the Parties behavior states that the "straight-time" language means exactly that: straight-time

hours, not overtime hours.

**III.    Relevant History Supports the Baltimore Sun's Position and Contradicts the Local
355 Funds' Position**

    **A.    The Past Practice Between the Baltimore Sun and the Local 355 Funds is
Compelling and Favors the Baltimore Sun**

        13.    There is no dispute between the Parties that the Baltimore Sun has not

made contributions to the Local 355 Funds for anything other than "straight-time" hours during

the entire existence of the Local 355 Funds.  Obj. ¶ 32 and Resp. at 17 n.10.  As a result, even if

the CBA's language were considered to be ambiguous and the Court determined it was necessary

to look beyond that language, the most relevant practice – how the Parties have acted with

respect to one another for roughly half a century – also supports the Baltimore Sun's

interpretation that contributions should be made based only on straight-time hours.

        14.    The Local 355 Funds largely ignore this.  They instead focus on how

Local 355 and other employers have interpreted "straight-time" language in other CBAs.  Even if

the experience of Local 355 and employers other than the Baltimore Sun were more relevant

than the way the Parties have actually interpreted the CBAs in question here for decades, which

it is not, the Response makes clear that Local 355 and other employers have not viewed the

CBAs as invariably favoring the Local 355 Funds' position. Instead, the Local 355 Funds say that Local 355 has negotiated for changes in CBAs with other employers to advance their view of what contributions should be made. Resp. at 9. The Objection notes, and the Local 355 Funds do not dispute, that Local 355 has never sought nor obtained any such changes to the relevant CBA between it and the Baltimore Sun. Thus, the Local 355 Funds have established only that (i) language similar to the "straight-time" language in the CBA at issue is present in CBAs that Local 355 has negotiated with other employers and (ii) the Local 355 Funds have concluded that the language in question is sufficiently ambiguous that Local 355 has sought to renegotiate it with other employers. This Court can then consider the undisputed fact that such revised language has not been included in CBAs between Local 355 and the Baltimore Sun – including those under which the Local 355 Funds asserts their claims – despite Local 355's knowledge of the Baltimore Sun's position and practice and failure to respond to it for more than two years prior to the petition date.

15.     In the US Foodservice case relied upon heavily by the Local 355 Funds, the Local 355 Funds agreed with the Baltimore Sun's position that the Parties' course of dealing is highly relevant. In US Foodservice, the employer sought the return of contributions on account of non-straight-time hours that it had made over a long period of time – in other words, the employer sought to reverse a longstanding practice between the parties. The Local 355 Funds contended that that longstanding practice was highly relevant, stating in their briefs on appeal, as examples:

> How the parties acted, especially over a long period, reveals what they intended their argument to mean, as the Third Circuit noted: "The past dealings of contracting parties pursuant to an agreement are probative of the parties' intent. Evidence of a course of conduct is particularly compelling when it occurs over a substantial time period." Teamsters Industrial Employees' Welfare Fund v. Rolls

Royce Motor Cars, Inc., 989 F.2d 132, 137 (3d Cir. 1993) (interal [sic] quotation marks and citations omitted). . . .

USF's new theory of how the contract should be interpreted, which is at odds with the interpretation that it, Local 355, and the Health Fund employed for over fifty years, should fail, just as the fund's new interpretation failed in Rolls Royce. . . .

Opening Br. of Appellant at 20-21, US Foodservice (No. 12-1108) (attached hereto as Exhibit

C).

16.    The Local 355 Funds were right about that.  A new interpretation, offered

for the first time after decades of consistent practice, should fail.  Here, this mandates rejection

of the Local 355 Funds' brand-new argument, and denial of their claim, as supported by the

Fourth Circuit in US Foodservice:

To hold that the Health Fund's determination was unreasonable would require us to infer that USF itself acted with great imprudence for at least two and perhaps as many as five decades by ignoring a clear error in the Health Fund's interpretation and by mistakenly contributing hundreds of thousands of dollars per year for overtime hours.  Such an inference is untenable, given the sophistication of the parties and their ongoing review of the CBA terms as part of periodic renegotiations.  Were the Health Fund's determination patently unreasonable, as USF would have us hold, one must wonder why the alleged mistake took decades to come to light.

US Foodservice, 700 F.3d at 750.  Here, it is the Local 355 Funds that now try to maintain that

Local 355 "acted with great imprudence" for years, if not decades, by ignoring what they

believed to be a clear error in the Baltimore Sun's interpretation of the CBA.  That inference,

upon which the Local 355 Funds rely, is indeed untenable, just as the Fourth Circuit stated in US

Foodservice.

**B.    The Local 355 Funds' Attempt to Explain Away Their Inaction is Unpersuasive**

17.    The Local 355 Funds contend in a footnote that they "did not discover that

the Sun had failed to pay on overtime hours until 2006," and that this is because "operationally,

the Sun did not historically assign overtime work to bargaining unit employees prior to the late

1990s or early 2000s." Resp. at 17 n.10.  The statement that the Baltimore Sun did not

historically assign overtime work to bargaining unit employees prior to the late 1990s is not true.

The Baltimore Sun has a long history of paying its Local 355 employees significant overtime

dating back to periods well before the late 1990s.  Rosier Decl. ¶ 4.  Indeed, beginning with a

mid-term change to the CBA effective in February 2000, some Local 355 employees moved to a

new four-day work week with 9.5 straight-time hour days precisely to help offset the amount of

overtime that the Baltimore Sun typically paid to its Local 355 employees.  Id. ¶¶ 5-6; see also

Supp. Barnes Decl. ¶ 8.  In contrast to these facts, the Affidavit of David A. White, Sr. (the

"White Affidavit"), which is the sole basis for the Local 355 Funds' statements, is not credible

on its face.  Nothing in the White Affidavit suggests that Mr. White has any personal knowledge

of the Baltimore Sun's overtime practices whatsoever or any basis for such knowledge, much

less that such knowledge is first-hand knowledge dating back to the period before the late 1990s.

See generally Ex. 3 to Resp.

         18.     Furthermore, even accepting the facts as asserted by the Local 355 Funds

as true, which they are not, they offer no explanation as to why their "discovery" of the

Baltimore Sun's payment patterns was delayed until 2006 if they had been aware that overtime

work was being assigned to bargaining unit employees in the late 1990s and early 2000s.  The

unambiguous fact remains that the Baltimore Sun has acted in accordance with its interpretation

of the CBA for over fifty years, and the Local 355 Funds have acted consistently with that

interpretation as well until quite recently.  The Local 355 Funds observed in their briefing in US

Foodservice that "such an egregious lapse of time by USF in seeking to recover contributions

weighs heavily against an entitlement to them."  Opening Br. of Appellant at 51, US Foodservice

(No. 12-1108).  The same argument prevails here.  The Local 355 Funds' forty-plus-year course

of conduct weighs heavily against any right of payment in their favor.

**IV.**    **US Foodservice is Not Materially Similar to this Case**

        19.    The Local 355 Funds' final argument is that the facts of US Foodservice

are "materially similar" to those here.  Resp. at 17.  While that dispute has a number of

similarities to the instant one, it differs in material respects.  US Foodservice was an action

brought under ERISA by the titular employer for recovery of contributions it alleged it had

mistakenly made to the Local 355 Funds over many years.  That action was brought under a

provision of ERISA permitting the return of an employer's plan contribution resulting from a

mistake of fact or law, but only "after the plan administrator determines that the contribution was

made by such a mistake."  29 U.S.C. § 1103(c)(2)(A)(ii).  The Local 355 Funds concluded that

there was no such mistake based on their interpretation of the relevant CBA.  The Fourth Circuit

held that that conclusion was not an abuse of discretion, nothing more.  To quote the Fourth

Circuit:

> In sum, section 403(c) is clear that it is the plan administrator – not a reviewing
> court – that determines in the first instance (1) whether a given contribution was
> made by mistake and (2) if so, whether it should be returned to the contributing
> employer.  A court may review the administrator's determinations for an abuse of
> discretion, but that standard has always been synonymous with deference.

US Foodservice, 700 F.3d at 749; see also id. at 750 ("We need not decide whether the Health

Fund's interpretation is the best one, the better one, or the one that we would reach were we

construing the contract de novo.  Rather, we need decide only whether the Health Fund acted

reasonably when it determined that the overtime contributions were not the result of a mistake.").

        20.    The Local 355 Funds would now have this Court believe that precisely the

same regime of deference applies, and that this Court should simply follow US Foodservice.

They are wrong.  There is a clear distinction between an employer making a commitment to

contribute to a plan – whether that commitment is negotiated with a union or whether it is

voluntary – and an employer's attempt to recover assets from a plan that it alleges were made by

mistake.  In the first instance, the agreement or decision to contribute to a plan is action taken by

the employer, as employer.  Once a contribution is made, however, and the contribution has

become part of the plan's trust assets, the contribution may be recovered only within the

limitations of section 403(c) of ERISA, which entitles the trustee to greater administrative

authority and deference.  The Local 355 Funds, not the Baltimore Sun, assert a right to payment

here and bear the burden of establishing an entitlement thereto, not under the terms of the Trust

Agreements or ERISA, but under the terms of the applicable CBA.[8]  The deference afforded a

trustee when an employer attempts to recover a mistaken contribution is completely irrelevant to

the attempt by the Local 355 Funds to enforce what it believes to be the commitment made by

The Baltimore Sun when it entered into the CBA.  The Local 355 Funds cannot meet their

burden of proof by simply articulating a claim and then asserting that this Court must defer to the

Local 355 Funds' belief unless it is arbitrary and capricious.  Instead, they face precisely the

same burdens as any other claimant in this Court.

21.    Here, those burdens include showing that the plain language of the CBA

must be disregarded in favor of the Local 355 Funds' strained interpretation, and – if the inquiry

does not end there – showing that the Parties' decades-long course of dealing is not relevant.

The Local 355 Funds have not carried those burdens, nor have they met their ultimate burden to

demonstrate that the Local 355 Claims should be allowed.  Instead, they direct this Court to

inapplicable legal standards and away from the relevant facts.  The Local 355 Claims should be

disallowed.

---

[8] Although the Local 355 Claims cite to section 502 of ERISA as their statutory basis, nothing in that section – or to
the Reorganized Debtors' knowledge, elsewhere in ERISA – mandates that this Court afford "great deference" to
whatever the Local 355 Funds have to say about those claims.

Dated: Wilmington, Delaware
      October 3, 2013

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kenneth P. Kansa
Jillian K. Ludwig
Lydia Hill Slaby
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By:  ___/s/ J. Kate Stickles___
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR REORGANIZED DEBTORS