**EXHIBIT B**

**ROSIER DECLARATION**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |

**DECLARATION OF ROBERT ROSIER IN SUPPORT OF THE REORGANIZED DEBTORS' OBJECTION TO THE CLAIMS OF THE TRUCK DRIVERS & HELPERS LOCAL UNION NO. 355 RETIREMENT PENSION FUND AND THE TRUCK DRIVERS & HELPERS LOCAL UNION NO. 355 HEALTH AND WELFARE FUND**

I, Robert Rosier, declare as follows:

1.      I began working for the Baltimore Sun in January 1977 as a Manager in Circulation. In February 1992, I became the Distribution Manager in Transportation. From that point until my voluntary separation from the Baltimore Sun in January 2006 (except for a brief 10-month return to Circulation), I held various management-level positions in Transportation. During that fourteen-year period, I was responsible for setting driver schedules and approving overtime, and, in that capacity, am extremely knowledgeable about the straight-time and

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

overtime provisions of the CBA. I am also familiar with the Baltimore Sun's employment practices towards the Local 355 employees, including their schedules, as well as the various changes negotiated by the Parties in the CBAs during my time at the Baltimore Sun.

2. I have read the *Reorganized Debtors' Reply in Support of the Objection to the Claims of the Truck Drivers & Helpers Local Union No. 355 Retirement Pension Fund and the Truck Drivers & Helpers Local Union No. 355 Health and Welfare Fund Pursuant to Section 502(b) of the Bankruptcy Code, and Bankruptcy Rules 3003 and 3007* (the "Objection")[2] and am directly, or by and through the Reorganized Debtors' personnel and advisors, familiar with the information contained therein. I am authorized to submit this declaration (the "Declaration") in support of the Objection.

3. All matters set forth in this Declaration are based on my personal knowledge and my review of relevant documents. If called upon to testify, I could and would testify competently to the facts set forth herein.

4. Based on my personal experience in management at the Baltimore Sun, both prior to and after the time I moved into Transportation management in February 1992, the Baltimore Sun needed its drivers to work overtime on a fairly regular basis. Overtime was routinely paid for work on the weekly shift involving the Sunday newspaper delivery, and many of the drivers, especially on Thursdays, were regularly working shifts that lasted longer than the 7.5 hour straight-time day. The nightly "Ocean City" long-distance run routinely resulted in overtime for its drivers, and on Wednesdays and Fridays the "Eastern Shore" run often resulted in overtime. Because of the expectation of regular overtime on these two long-distance runs, senior drivers who did not use their seniority to pick the dispatch job (paid at a higher hourly

---

[2] All capitalized terms used, but not defined herein, shall have the meanings ascribed to them in the Objection and the Reply.

2

rate), would often pick one of these two routes as an "earning opportunity." Additionally, drivers on Thursdays often earned overtime due to the delivery and unloading of the "Sun Plus" product at multiple U.S. post office locations and completion of the complicated "comics runs," which contained the Sunday advertising inserts. The need for overtime hours would be further increased on any Thursday when production issues arose with the printing or insertion of the Sunday sections, causing a ripple effect that would result in the drivers leaving the printing plant later than scheduled.

5.    The mid-term "tractor-trailer" agreement negotiated by the Baltimore Sun and Local 355, which became effective on February 4, 2000 (during the 1998-2003 contract term) and of which I am personally familiar, specifically addressed the overtime problem. One of the provisions in the tractor-trailer agreement changed many truck drivers to a four-day work week with 9.5 hour straight-time shifts. By moving from a 7.5 straight-time hour day to the 9.5 hour straight-time day in 2000, the Baltimore Sun eliminated much of the issuance of overtime, and drivers could count on a more regular schedule.

6.    Beginning in the mid-1990's and continuing through when I left the Baltimore Sun in 2006, a number of changes were made in transportation and distribution operations which reduced the number of overtime hours that were being worked by the Local 355 drivers: changing deliveries from hundreds of individual drop points to relatively few large distribution centers, changing the type and size of trucks from smaller trucks to tractor-trailers and straight trucks, changing from individually handled bundles of newspapers to palletized skids of papers moved with motorized jacks and forklifts, increasing the straight-time workday for many drivers from 7.5 hours to 9.5 hours, and reducing (by filling with assignments) the number of unworked straight-time hours occurring in drivers' shifts.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 2 day of October 2013.

By: Robert Rosier