# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered **Related to Docket Nos.** 2781, 2782, and 2785 |

## ORDER (I) AUTHORIZING THE DEBTORS TO ESTABLISH A DOCUMENT DEPOSITORY AND DIRECTING THE COMMITTEE TO DELIVER CERTAIN DOCUMENTS TO THE DEPOSITORY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 AND (II) ESTABLISHING SETTLEMENT NEGOTIATION PROTECTIONS PURSUANT TO 11 U.S.C. § 105(A)

Upon the Motion[2] of the debtors and debtors in possession in the above-captioned

chapter 11 cases (each a "Debtor" and collectively, the "Debtors") for entry of an order (i)

authorizing the Debtors to establish and maintain a centralized document depository program to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

store certain documents produced to the Official Committee of Unsecured Creditors (the

"Committee") in connection with the Committee's analysis of the Leveraged ESOP Transactions,

as described herein, and directing the Committee to deliver such documents to the centralized

document depository program, pursuant to Bankruptcy Rule 2004 and (ii) establishing certain

settlement negotiation protections pursuant to section 105(a) of the Bankruptcy Code; and upon

consideration of the Motion and all pleadings related thereto; and the Court finding that (a) the

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this matter is a

core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and (c) notice of the Motion was

due and proper under the circumstances; and it appearing that the relief requested in the Motion

is in the best interests of the Debtors and their estates and creditors; and after due deliberation,

and good and sufficient cause appearing therefor, it is hereby:

ORDERED that the Motion is granted as modified herein; and it is further

ORDERED that, as used herein, "Negotiating Parties" shall mean such persons

and their representatives and professionals who appear to be material to negotiations with regard

to addressing the Leveraged ESOP Transactions and plan negotiations, and who are designated

by the Debtors from time to time, in consultation with the Initial Negotiating Parties (as defined

below), and who agree to be Negotiating Parties. Together with the Debtors and the Committee,

JPM, Angelo Gordon & Co., Bank of America N.A., Eaton Vance Management, Kohlberg

Kravis Roberts & Co., Oaktree Capital Management, L.P., Law Debenture, and Centerbridge

(each on behalf of itself and its affiliates) are collectively, the "Initial Negotiating Parties"; and it

is further

2

ORDERED that the Debtors are authorized to establish and maintain, in

consultation with the Committee, a centralized document depository program (the "Depository"),

subject to the protocols and procedures set forth herein:

a.   The Depository shall store all Discovery Documents produced to the Committee (either prior or subsequent to the entry of this Order) by any individual or entity (a "Producing Party") in connection with the Committee's analysis of the Leveraged ESOP Transactions. The Committee shall deliver such Discovery Documents (as may then exist) to the Debtors within three (3) business days of the entry of this Order so that the Debtors may place such documents in the Depository. When the Committee receives additional Discovery Documents, it shall deliver such documents to the Debtors within three (3) business days of receipt so the Debtors may place such documents in the Depository. The Committee shall identify the Producing Party with respect to each such document;

b.   Upon entry of the order granting this Motion, the Initial Negotiating Parties; and also the Robert R. McCormick Foundation and Cantigny Foundation, shall have access to all of the Discovery Documents in the Depository,[3] provided that each such entity signs the Acknowledgment attached to this Order as Exhibit A (the "Acknowledgment"), and subject to the provisions of this Order. Other entities that the Debtors may designate from time to time, in consultation with the Initial Negotiating Parties, shall have access to some or all of the Discovery Documents in the Depository upon signing the Acknowledgment and subject to the provisions of this Order. For purposes of this Order, an entity, upon signing the Acknowledgment, shall be referred to as a "Depository Designee";

c.   As to the Initial Negotiating Parties, further written notice need not be provided to the Producing Parties for such Initial Negotiating Parties to have access to all of the Discovery Documents in the Depository. As regards to any additional Depository Designees, the Debtors shall provide written notice, which may be via e-mail, to the Committee and each of the Producing Parties of any such newly added Depository Designee. If any Producing Party fails to inform the Debtors of its objection to any newly added Depository Designee reviewing such Producing Party's Discovery Documents within five (5) days of its receipt of notice of such designation, then the newly added Depository Designee shall be able to review such Discovery Documents provided that it has signed the Acknowledgment. If any Producing Party timely objects to a newly added Depository Designee reviewing such Producing Party's Discovery Documents, then the Court shall resolve whether or not such newly added Depository Designee shall be able to review the documents of such

---

[3] Such access shall be accomplished by providing such entity with copies of the Discovery Documents to which such entity has been granted access.

3

Producing Party on expedited motion of any of the Debtors, the Committee, such newly added Depository Designee, or such Producing Party, and such newly added Depository Designee shall not have access to the Discovery Documents of such Producing Party unless such Producing Party consents or a court order allows such access;

d.   The Committee (or a designated representative) shall provide periodic notification to the Debtors and each Depository Designee of the addition of Discovery Documents to the Depository, which notification shall include the identification of the Producing Party and any transmittal information provided by the Producing Party with respect to such added Discovery Documents;

e.   Any Depository Designee and its Designated Representatives (as that term is defined in the Acknowledgment) shall be permitted to exchange and/or discuss any and all of the Discovery Documents with any and all of the other Depository Designees and/or their respective Designated Representatives subject to the terms of the Acknowledgment and provided that "Financial Institution Highly Confidential Documents" (as defined in the Acknowledgment) may not be provided to (whether by the Debtors or by a Depository Designee or its Designated Representatives) or viewed by any Designated Representative who is an employee not functioning as an attorney of any Depository Designee; provided, however, that the Court shall retain jurisdiction to address any issues regarding the disclosure or confidentiality of any documents;

f.   No Depository Designee or its Designated Representatives may use Discovery Documents or Depository Information stamped or otherwise designated as "Financial Institution Highly Confidential Documents", "Highly Confidential – Attorneys' Eyes Only", or "Confidential" in a court filing in these chapter 11 cases unless such documents are filed under seal;

g.   Committee member Pension Benefit Guaranty Corporation ("PBGC"), as a governmental agency, may disclose documents designated "Highly Confidential – Attorneys' Eyes Only" or "Confidential" and/or information contained therein: (i) to the Executive Branch of the United States, the PBGC and PBGC Board of Directors' officials, advisors, consultants, and representatives who have a need to know the information as part of their job responsibilities; (ii) in the context of a court proceeding relating to the termination of a defined benefit plan sponsored by any of the Debtors, after PBGC has sought an order providing that such information shall be filed under seal and has given notice of the filing of such motion to the Debtors, the Committee, and the Producing Party, or (iii) upon request from Congress or any committee, joint committee or subcommittee thereof or the Comptroller General, provided, that in the event of disclosure pursuant to this subsection (iii), PBGC will attempt to give reasonable advanced notice under the circumstances to the Committee and Producing Party. Any party authorized to receive access to the Discovery Documents from the Pension Benefit

Guaranty Corporation pursuant to the terms of the Acknowledgment and this Order shall be bound by the terms thereof; and

h.  Any party executing the Acknowledgment shall be bound by the terms thereof; and it is further

ORDERED that any and all communications, whether written or oral, occurring on or after December 7, 2009, between and among the Negotiating Parties, or their representatives, in connection with discussions of the Leveraged ESOP Transactions, whether (a) in connection with the discussion of any plan or plans of reorganization in these cases, or (b) in connection with a discussion among the Negotiating Parties regarding any legal or factual issues related to such plan or plans, or (c) in connection with any analysis or documents prepared by a Negotiating Party or their representatives after the Petition Date and shared on or after December 7, 2009, between and among the Negotiating Parties, which, at or prior to the time communicated or shared, is designated as a "Settlement Communication" (such communications and materials are referred to herein collectively as the "Settlement Material") shall be deemed confidential and subject to the restrictions contained in this Order. Unless the person who originates such Settlement Material otherwise agrees in writing, the Settlement Material (i) may not be used except in connection with such settlement discussions; (ii) may not be disclosed other than in such settlement discussions except as authorized by the Negotiating Party originating such Settlement Material; and (iii) may not be introduced at any trial or hearing or deposition. Notwithstanding anything herein to the contrary, no Discovery Document deposited in the Depository and designated a "Settlement Communication" shall be found to be inadmissible at trial or deposition solely because it was designated as a "Settlement Communication". Likewise, facts which are discoverable under the Federal Rules of Civil Procedure or Federal Rules of Evidence from a source other than the Settlement Material shall not be found to be inadmissible at trial or deposition solely because such facts were discussed in

the context of settlement discussions or were designated as a "Settlement Communication" or Settlement Material. Without limitation, any and all Settlement Material shall be treated as constituting a compromise/settlement negotiation and shall also be subject to the protections of Federal Rule of Evidence 408 and any work product or other privilege pertaining to any such communications or materials. Nothing herein is intended to, or shall modify the rights of any persons to object to the application of Federal Rule of Evidence 408 or any work product or other privilege pertaining to any communications and materials shared prior to December 7, 2009. The communication of any Settlement Material shall not result in the waiver of any work product, attorney client, or other privilege with respect to the Settlement Material or any related subject matter. The provisions of this Paragraph shall be binding upon all persons and upon all parties-in-interest in connection with these cases, whether or not such person or party-in-interest is a Negotiating Party; and it is further

ORDERED, that that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware

_____Dec 15____, 2009

The Honorable Kevin J. Carey
Chief United States Bankruptcy Judge

**EXHIBIT A**

**ACKNOWLEDGMENT**

## ACKNOWLEDGMENT

WHEREAS an Order dated ___ has been entered in the matter of *In re Tribune Company, et al.*, Case No. 08-13141(KJC), currently pending before the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), establishing a document depository ("Depository") containing certain documents (the "Discovery Documents") produced to the Official Committee of Unsecured Creditors ("Committee") in connection with the Committee's analysis of the series of transactions that returned Tribune Company to private ownership in 2007 (such transactions, collectively, the "Leveraged ESOP Transactions");

WHEREAS prior to placement in the Depository, the Discovery Documents were originally produced to the Committee by various individuals or entities (individually, a "Producing Party" and collectively, "Producing Parties");

WHEREAS the chapter 11 cases in the above referenced matter, together with any adversary proceedings and contested matters brought therein, are hereinafter collectively referred to as the "Cases"; and

WHEREAS the undersigned has been designated as an entity entitled to access to the Discovery Documents in the Depository and upon signing this Acknowledgment will be deemed a "Depository Designee";

The undersigned hereby acknowledges and agrees to the following terms and conditions:

1.    Subject to the terms and conditions of this Acknowledgment, the undersigned shall have full and unfettered access to the Discovery Documents in the Depository.

2.    The undersigned may provide for access to and/or use of the Discovery Documents in the Depository by its legal advisors (both outside and in-house attorneys) and/or financial advisors and up to five (5) additional persons who shall be employees of the undersigned (collectively, the "Designated Representatives"), subject to the following conditions: (a) the undersigned shall inform the Debtors in a timely fashion of the names of the Designated Representatives to whom it has granted access and/or use; (b) those Designated Representatives shall agree to be bound by the terms of this Acknowledgment; and (c) the undersigned may not provide any Financial Institution Highly Confidential Documents to any of its employees who are not functioning as attorneys, and no employees of the undersigned other than those functioning as attorneys may view Financial Institution Highly Confidential Documents. For the purposes hereof, "Financial Institution Highly Confidential Documents" shall mean any Discovery Document or Depository Information stamped or otherwise designated as "Highly Confidential – Attorneys' Eyes Only", with respect to which a Financial Institution[4] is the Producing Party, and which (i) is in a native file format (unless

---

[4] For the purposes of this Acknowledgment, "Financial Institution" shall have that meaning ascribed to it in 11 U.S.C. § 101(22).

such Financial Institution upon further review informs the undersigned that such document is re-designated as "Confidential"), or (ii) discloses the name of a client of the Financial Institution or of any of its affiliates (other than the Debtors or any affiliate of the Debtors) or any financial information regarding such a client, or (iii) discloses or discusses the rating methodology used by the Financial Institution or any of its affiliates or any aspect thereof or, with respect to any entity, the risk rating or "loss given default" ("LGD") estimate assigned to such entity by the Financial Institution or its affiliates (collectively, the "Rating Information"), or (iv) the Financial Institution upon further review informs the undersigned is categorized as a Financial Institution Highly Confidential Document because such Financial Institution is precluded by law or regulation from disclosing such information. Notwithstanding the foregoing, Financial Institution Highly Confidential Documents shall not include (a) hard copy print outs of documents produced in native file format; or (b) documents that disclose or discuss the name of a client of the Financial Institution or such Financial Institution's Rating Information provided such names and Rating Information have been redacted from such documents. The undersigned shall be held responsible for the failure of any such Designated Representatives to abide by, or otherwise breach, the terms of this Acknowledgment.

3.     The Discovery Documents will be used by the undersigned and its Designated Representatives solely in connection with the Cases, including in connection with filings with the Bankruptcy Court.

4.     Discovery Documents that are stamped or otherwise designated as "Highly Confidential – Attorneys' Eyes Only" shall be considered documents that the Producing Party believes constitute or contain non-public information that is competitively sensitive and/or proprietary to the Producing Party or its respective clients, or from which competitively sensitive and/or proprietary information belonging to the Producing Party or its respective clients could be derived. Discovery Documents that are stamped or otherwise designated as "Confidential" shall be considered documents that the Producing Party believes constitute or contain non-public information, including, without limitation, to the Producing Party or its respective clients.

5.     The undersigned and its Designated Representatives shall maintain Discovery Documents stamped or otherwise designated as "Highly Confidential – Attorneys' Eyes Only" as Highly Confidential, and shall not provide such Discovery Documents or any information contained in such Discovery Documents, or any information that can be derived from such Discovery Documents, including, without limitation, any information in the form of notes, spreadsheets, summaries, analyses, compilations, memoranda, minutes or other materials derived from, disclosing, discussing or otherwise using information (collectively, "Depository Information") to any person who is not: (i) the Court, any Appellate Court, and their employees, (ii) a court reporter or videographer employed to transcribe or record a deposition in these Cases, (iii) a Depository Designee, or (iv) a Designated Representative.

6.    The undersigned and its Designated Representatives shall keep Discovery Documents stamped or otherwise designated as "Confidential," as Confidential, and shall not provide such Discovery Documents or Depository Information to any person or entity other than the Depository Designees (as may then exist) and their respective Designated Representatives.

7.    The undersigned and its Designated Representatives may not use Discovery Documents or Depository Information stamped or otherwise designated as "Financial Institution Highly Confidential Documents", "Highly Confidential – Attorneys' Eyes Only", or "Confidential" in a court filing in these Cases unless such documents are filed under seal. Nothing in this paragraph is meant to restrict or otherwise limit the undersigned's ability to object to any such designation pursuant to paragraph 10.

8.    Subject to the provisions of paragraphs 2, 4, and 5, nothing in this Acknowledgment shall be interpreted to limit the ability of the undersigned or its Designated Representatives to exchange and/or discuss any and all of the Discovery Documents and/or Depository Information with any and all of the other Depository Designees (as may then exist) and their respective Designated Representatives.

9.    Nothing in this Acknowledgment shall prohibit or preclude any individual or entity, regardless of whether such individual or entity is a Depository Designee, from accessing and/or using the Discovery Documents produced by a specific Producing Party pursuant to any other written agreement with such Producing Party.

10.    If the undersigned objects on any basis to the designation of any Discovery Document or Depository Information as "Financial Institution Highly Confidential Documents", "Highly Confidential – Attorneys' Eyes Only", or "Confidential," or seeks a waiver of such designation, then it will initially contact the counsel to the Producing Party in a good faith effort to resolve the dispute. If, after two business days, the dispute cannot be resolved, then the undersigned may apply to the Bankruptcy Court (or the United States District Court for the District of Delaware if then presiding over the Cases or the relevant proceeding within the Cases) for relief. Absent a written waiver or agreement from the Producing Party or an order of the court overseeing the Cases to the contrary, Discovery Documents or Depository Information marked or otherwise designated as "Financial Institution Highly Confidential Documents", "Highly Confidential – Attorneys' Eyes Only", or "Confidential" may be used only in the matters otherwise permissible under this Acknowledgment.

11.    Should access to Discovery Documents or Depository Information stamped or otherwise designated as "Financial Institution Highly Confidential Documents", "Highly Confidential – Attorneys' Eyes Only", or "Confidential," be sought from the undersigned, by any person or entity other than a Depository Designee (as may then exist) or their respective Designated Representatives,

pursuant to subpoena or other legal process under applicable law, rule, or regulation, then the undersigned, unless prohibited by applicable law or regulation shall: (a) promptly notify the counsel to the Producing Party in writing of the requested access; and (b) prior to producing any such Discovery Documents or Depository Information, provide the Producing Party with a reasonable opportunity to seek a court order preventing or limiting the production of such Discovery Documents or Depository Information.

12.     To the extent that the undersigned concludes that certain Discovery Documents contain privileged information that was inadvertently produced, such inadvertent production shall not constitute a waiver of any applicable privilege. Upon identifying the privileged but inadvertently produced materials, the undersigned will promptly notify the Producing Party, the Committee and the Debtors of such discovery. Upon receiving such notification, the Debtors shall remove the privileged but inadvertently produced materials from the Depository and notify the other Depository Designees (as may then exist) of the fact that the identified privileged materials have been inadvertently produced and request that they be returned to the Debtors. Upon being so notified, the other Depository Designees (as may then exist) shall return such privileged but inadvertently produced materials to the Producing Party. Such privileged but inadvertently produced materials shall not be used by undersigned, the Debtors, the Committee, or any other Depository Designee in the Bankruptcy Court or any other proceeding or forum.

13.     Notwithstanding anything otherwise contained in any confidentiality agreement with any Producing Party, Committee member Pension Benefit Guaranty Corporation ("PBGC"), as a governmental agency, may disclose documents designated "Highly Confidential – Attorneys' Eyes Only" or "Confidential" and/or information contained therein: (i) to the Executive Branch of the United States, the PBGC and PBGC Board of Directors' officials, advisors, consultants, and representatives who have a need to know the information as part of their job responsibilities; (ii) in the context of a court proceeding relating to the termination of a defined benefit plan sponsored by any of the Debtors, after PBGC has sought an order providing that such information shall be filed under seal and has given notice of the filing of such motion to the Debtors, the Committee, and the Producing Party, or (iii) upon request from Congress or any committee, joint committee or subcommittee thereof or the Comptroller General, provided, that in the event of disclosure pursuant to this subsection (iii), PBGC will attempt to give reasonable advanced notice under the circumstances to the Committee and Producing Party. Any party authorized to receive access to the Discovery Documents from the Pension Benefit Guaranty Corporation pursuant to this Acknowledgment shall be bound by the terms hereof.

14.     The terms of this Acknowledgment shall apply to the use of any and all Discovery Documents notwithstanding the terms of any confidentiality agreement entered into previously by the undersigned.

15.     Within sixty (60) days after the later to occur of (i) the consummation of a plan of reorganization for the Debtors pursuant to a final confirmation order that is no longer subject to appeal, (ii) the conclusion of any litigation in the Cases for which use of the Discovery Documents remains necessary, or (iii) the conversion, discharge, dismissal, or other such termination of the Cases, the Debtors shall close the Depository and the undersigned shall return all Discovery Documents, and all copies thereof, in their possession, to counsel for the Producing Party or, in lieu thereof, certify in writing that such Discovery Documents have been destroyed. Notwithstanding the foregoing, the undersigned may retain documents containing confidential or highly confidential material that have been filed with the Court.

16.     The undersigned acknowledges that irreparable damage would occur to the Producing Party if any of the provisions of this Acknowledgment were not performed in accordance with their specific terms or were otherwise breached and that remedies at law for any actual or threatened breach by it of the covenants contained in this Acknowledgment shall be inadequate and that the Producing Party will be entitled to equitable relief, including injunction and specific performance, in the event of any breach of the provisions of this Acknowledgment, in addition to all other remedies available to the Producing Party. During the pendency of the Cases, the undersigned consents to the jurisdiction and venue of the Bankruptcy Court (or the District Court if then presiding over the Cases or the relevant proceeding within the Cases) with respect to any controversy or claims arising out of or related to this Acknowledgment. Upon conclusion of the Cases, the undersigned consents to the jurisdiction and venue of the federal and state courts located in the State of New York with respect to any controversy or claims arising out of or related to this Acknowledgment. THE UNDERSIGNED HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF BREACHES OF THIS ACKNOWLEDGMENT.

Dated:

_____, 20__

_____

5

## EXHIBIT B

**Black Lined Revised Order and Acknowledgment**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>Related to Docket Nos. 2781, 2782, and 2785 |

### ORDER (I) AUTHORIZING THE DEBTORS TO ESTABLISH A DOCUMENT DEPOSITORY AND DIRECTING THE COMMITTEE TO DELIVER CERTAIN DOCUMENTS TO THE DEPOSITORY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 AND (II) ESTABLISHING SETTLEMENT NEGOTIATION PROTECTIONS PURSUANT TO 11 U.S.C. § 105(A)

Upon the Motion[2] of the debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors") for entry of an order (i) authorizing the Debtors to establish and maintain a centralized document depository program to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (1280); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

store certain documents produced to the Official Committee of Unsecured Creditors (the "Committee") in connection with the Committee's analysis of the Leveraged ESOP Transactions, as described herein, and directing the Committee to deliver such documents to the centralized document depository program, pursuant to Bankruptcy Rule 2004 and (ii) establishing certain settlement negotiation protections pursuant to section 105(a) of the Bankruptcy Code; and upon consideration of the Motion and all pleadings related thereto; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and (c) notice of the Motion was due and proper under the circumstances; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their estates and creditors; and after due deliberation, and good and sufficient cause appearing therefor, it is hereby:

ORDERED that the Motion is granted as modified herein; and it is further

ORDERED that, as used herein, "Negotiating Parties" shall mean such persons and their representatives and professionals who appear to be material to negotiations with regard to addressing the Leveraged ESOP Transactions and plan negotiations, and who are designated by the Debtors from time to time, in consultation with the Initial Negotiating Parties (as defined below), and who agree to be Negotiating Parties. Together with the Debtors and the Committee, JPM, ~~Silver Oak Capital, LLC~~Angelo Gordon & Co., Bank of America N.A., Eaton Vance Management, Kohlberg Kravis Roberts & Co. ~~(Fixed Income) LLC~~, Oaktree ~~Value Opportunities Fund~~Capital Management, L.P., Law Debenture, and Centerbridge (each on behalf of itself and its affiliates) are collectively, the "Initial Negotiating Parties"; and it is further

2

ORDERED that the Debtors are authorized to establish and maintain, in

consultation with the Committee, a centralized document depository program (the "Depository"),

subject to the protocols and procedures set forth herein:

a.  The Depository shall store all Discovery Documents produced to the
Committee (either prior or subsequent to the entry of ~~the order granting~~ this
~~Motion~~Order) by any individual or entity (a "Producing Party") in connection
with the Committee's analysis of the Leveraged ESOP Transactions. The
Committee shall deliver such Discovery Documents (as may then exist) to the
Debtors within three (3) business days of the entry of this Order so that the
Debtors may place such documents in the Depository. When the Committee
receives additional Discovery Documents, it shall deliver such documents to
the Debtors within three (3) business days of receipt so the Debtors may place
such documents in the Depository. The Committee shall identify the
Producing Party with respect to each such document;

b.  Upon entry of the order granting this Motion, the Initial Negotiating Parties,
and also the Robert R. McCormick Foundation and Cantigny Foundation,
shall have access to all of the Discovery Documents in the Depository,[3]
provided that each such entity signs the Acknowledgment attached to ~~the
Motion and~~ this Order as Exhibit A (the "Acknowledgment"), and ~~also~~ subject
to the provisions of ~~the following subparagraph (c)~~this Order. Other entities
that the Debtors may designate from time to time, in consultation with the
Initial Negotiating Parties, shall have access to some or all of the Discovery
Documents in the Depository upon signing the Acknowledgment and subject
to the provisions of this Order. For purposes of this Order, an entity, upon
signing the Acknowledgment, shall be referred to as a "Depository Designee";

c.  As to the Initial Negotiating Parties, further written notice need not be
provided to the Producing Parties for such Initial Negotiating Parties to have
access to all of the Discovery Documents in the Depository. As regards to any
additional Depository Designees, the Debtors shall provide written notice,
which may be via e-mail, to the Committee and each of the Producing Parties
of any such newly added Depository Designee. If any Producing Party fails to
inform the Debtors of its objection to any newly added Depository Designee
reviewing such Producing Party's Discovery Documents within ~~three~~five (3̶5)
days of its receipt of notice of such designation, then the newly added
Depository Designee shall be able to review such Discovery Documents
provided that it has signed the Acknowledgment. If any Producing Party
timely objects to a newly added Depository Designee reviewing such
Producing Party's Discovery Documents, then the Court shall resolve whether
or not such newly added Depository Designee shall be able to review the

---

[3] Such access shall be accomplished by providing such entity with copies of the Discovery Documents to which
such entity has been granted access.

documents of such Producing Party on expedited motion of any of the Debtors, the Committee, such newly added Depository Designee, or such Producing Party, and such newly added Depository Designee shall not have access to the Discovery Documents of such Producing Party unless such Producing Party consents or a court order allows such access;

d.    The Committee (or a designated representative) shall provide periodic notification to the Debtors and each Depository Designee of the addition of Discovery Documents to the Depository, which notification shall include the identification of the Producing Party and any transmittal information provided by the Producing Party with respect to such added Discovery Documents;

e.    Any Depository Designee and its Designated Representatives (as that term is defined in the Acknowledgment) shall be permitted to exchange and/or discuss any and all of the Discovery Documents with any and all of the other Depository Designees and/or their respective Designated Representatives subject to the terms of the Acknowledgment and provided that "Financial Institution Highly Confidential Documents" (as defined in the Acknowledgment) may not be provided to (whether by the Debtors or by a Depository Designee or its Designated Representatives) or viewed by any Designated Representative who is an employee not functioning as an attorney of any Depository Designee; provided, however, that the Court shall retain jurisdiction to address any issues regarding the disclosure or confidentiality of any documents;

f.    No Depository Designee or its Designated Representatives may use Discovery Documents or Depository Information stamped or otherwise designated as "Financial Institution Highly Confidential Documents", "Highly Confidential – Attorneys' Eyes Only", or "Confidential" in a court filing in these chapter 11 cases unless such documents are filed under seal;

g.    Committee member Pension Benefit Guaranty Corporation ("PBGC"), as a governmental agency, may disclose documents designated "Highly Confidential – Attorneys' Eyes Only" or "Confidential" and/or information contained therein: (i) to the Executive Branch of the United States, the PBGC and PBGC Board of Directors' officials, advisors, consultants, and representatives who have a need to know the information as part of their job responsibilities; (ii) in the context of a court proceeding relating to the termination of a defined benefit plan sponsored by any of the Debtors, after PBGC has sought an order providing that such information shall be filed under seal and has given notice of the filing of such motion to the Debtors, the Committee, and the Producing Party, or (iii) upon request from Congress or any committee, joint committee or subcommittee thereof or the Comptroller General, provided, that in the event of disclosure pursuant to this subsection (iii), PBGC will attempt to give reasonable advanced notice under the circumstances to the Committee and Producing Party. Any party authorized to receive access to the Discovery Documents from the Pension Benefit

Guaranty Corporation pursuant to the terms of the Acknowledgment and this Order shall be bound by the terms thereof; and

h.    Any party executing the Acknowledgment shall be bound by the terms thereof; and it is further

ORDERED that any and all communications, whether written or oral, occurring on or after December 7, 2009, between and among the Negotiating Parties, or their representatives, in connection with discussions of the Leveraged ESOP Transactions, whether (a) in connection with the discussion of any plan or plans of reorganization in these cases, or (b) in connection with a discussion among the Negotiating Parties regarding any legal or factual issues related to such plan or plans, or (c) in connection with any analysis or documents prepared by a Negotiating Party or their representatives after the Petition Date and shared on or after December 7, 2009, between and among the Negotiating Parties, which, at or prior to the time communicated or shared, is designated as a "Settlement Communication" (such communications and materials are referred to herein collectively as the "Settlement Material") shall be deemed confidential and subject to the restrictions contained in this Order. Unless the person who originates such Settlement Material otherwise agrees in writing, the Settlement Material (i) may not be used except in connection with such settlement discussions; (ii) may not be disclosed other than in such settlement discussions except as authorized by the Negotiating Party originating such Settlement Material; and (iii) may not be introduced at any trial or hearing or deposition. Notwithstanding anything herein to the contrary, no Discovery Document deposited in the Depository and designated a "Settlement Communication" shall be found to be inadmissible at trial or deposition solely because it was designated as a "Settlement Communication". Likewise, facts which are discoverable under the Federal Rules of Civil Procedure or Federal Rules of Evidence from a source other than the Settlement Material shall not be found to be inadmissible at trial or deposition solely because such facts were discussed in

the context of settlement discussions or were designated as a "Settlement Communication" or Settlement Material. Without limitation, any and all Settlement Material shall be treated as constituting a compromise/settlement negotiation and shall also be subject to the protections of Federal Rule of Evidence 408 and any work product or other privilege pertaining to any such communications or materials. Nothing herein is intended to, or shall modify the rights of any persons to object to the application of Federal Rule of Evidence 408 or any work product or other privilege pertaining to any communications and materials shared prior to December 7, 2009. The communication of any Settlement Material shall not result in the waiver of any work product, attorney client, or other privilege with respect to the Settlement Material or any related subject matter. The provisions of this Paragraph shall be binding upon all persons and upon all parties-in-interest in connection with these cases, whether or not such person or party-in-interest is a Negotiating Party; and it is further

ORDERED, that that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware

_____, 20___

_____
The Honorable Kevin J. Carey
Chief United States Bankruptcy Judge

**EXHIBIT A**

**ACKNOWLEDGMENT**

## ACKNOWLEDGMENT

WHEREAS an Order dated ___ has been entered in the matter of *In re Tribune Company, et al.*, Case No. 08-13141(KJC), currently pending before the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), establishing a document depository ("Depository") containing certain documents (the "Discovery Documents") produced to the Official Committee of Unsecured Creditors ("Committee") in connection with the Committee's analysis of the series of transactions that returned Tribune Company to private ownership in 2007 (such transactions, collectively, the "Leveraged ESOP Transactions");

WHEREAS prior to placement in the Depository, the Discovery Documents were originally produced to the Committee by various individuals or entities (individually, a "Producing Party" and collectively, "Producing Parties");

WHEREAS the chapter 11 cases in the above referenced matter, together with any adversary proceedings and contested matters brought therein, are hereinafter collectively referred to as the "Cases"; and

WHEREAS the undersigned has been designated as an entity entitled to access to the Discovery Documents in the Depository and upon signing this Acknowledgment will be deemed a "Depository Designee";

The undersigned hereby acknowledges and agrees to the following terms and conditions:

1.      Subject to the terms and conditions of this Acknowledgment, the undersigned shall have full and unfettered access to the Discovery Documents in the Depository.

2.      The undersigned may provide for access to and/or use of the Discovery Documents in the Depository by its legal advisors (both outside and in-house attorneys) and/or financial advisors and up to ~~three~~five (5) additional persons who shall be employees of the undersigned (collectively, the "Designated Representatives"), subject to the following conditions: (a) the undersigned shall inform the Debtors in a timely fashion of the names of the Designated Representatives to whom it has granted access and/or use; (b) those Designated Representatives shall agree to be bound by the terms of this Acknowledgment; and (c) the undersigned may not provide any Financial Institution Highly Confidential Documents to any of its employees who are not functioning as attorneys, and no employees of the undersigned other than those functioning as attorneys may view Financial Institution Highly Confidential Documents. For the purposes hereof, "Financial Institution Highly Confidential Documents" shall mean any Discovery Document or Depository Information stamped or otherwise designated as "Highly Confidential -- Attorneys' Eyes Only", with respect to which a Financial Institution[4] is the Producing Party, and which (i) is in a native

---

[4] For the purposes of this Acknowledgment, "Financial Institution" shall have that meaning ascribed to it in 11 U.S.C. § 101(22).

file format (unless such Financial Institution upon further review informs the undersigned that such document is re-designated as "Confidential"), or (ii) discloses the name of a client of the Financial Institution or of any of its affiliates (other than the Debtors or any affiliate of the Debtors) or any financial information regarding such a client, or (iii) discloses or discusses the rating methodology used by the Financial Institution or any of its affiliates or any aspect thereof or, with respect to any entity, the risk rating or "loss given default" ("LGD") estimate assigned to such entity by the Financial Institution or its affiliates (collectively, the "Rating Information"), or (iv) the Financial Institution upon further review informs the undersigned is categorized as a Financial Institution Highly Confidential Document because such Financial Institution is precluded by law or regulation from disclosing such information. Notwithstanding the foregoing, Financial Institution Highly Confidential Documents shall not include (a) hard copy print outs of documents produced in native file format; or (b) documents that disclose or discuss the name of a client of the Financial Institution or such Financial Institution's Rating Information provided such names and Rating Information have been redacted from such documents. The undersigned shall be held responsible for the failure of any such Designated Representatives to abide by, or otherwise breach, the terms of this Acknowledgment.

3.    The Discovery Documents will be used by the undersigned and its Designated Representatives solely in connection with the Cases, including in connection with filings with the Bankruptcy Court.

4.    Discovery Documents that are stamped or otherwise designated as "Highly Confidential – Attorneys' Eyes Only" shall be considered documents that the Producing Party believes constitute or contain non-public information that is competitively sensitive and/or proprietary to the Producing Party or its respective clients, or from which competitively sensitive and/or proprietary information belonging to the Producing Party or its respective clients could be derived. Discovery Documents that are stamped or otherwise designated as "Confidential" shall be considered documents that the Producing Party believes constitute or contain non-public information, including, without limitation, to the Producing Party or its respective clients.

5.    The undersigned and its Designated Representatives shall maintain Discovery Documents stamped or otherwise designated as "Highly Confidential – Attorneys' Eyes Only" as Highly Confidential, and shall not provide such Discovery Documents or any information contained in such Discovery Documents, or any information that can be derived from such Discovery Documents, including, without limitation, any information in the form of notes, spreadsheets, summaries, analyses, compilations, memoranda, minutes or other materials derived from, disclosing, discussing or otherwise using information (collectively, "Depository Information") to any person who is not: (i) the Court, any Appellate Court, and their employees, (ii) a court reporter or videographer

employed to transcribe or record a deposition in these Cases, (iii) a Depository Designee, or (iv) a Designated Representative.

6.   The undersigned and its Designated Representatives shall keep Discovery Documents stamped or otherwise designated as "Confidential," as Confidential, and shall not provide such Discovery Documents or Depository Information to any person or entity other than the Depository Designees (as may then exist) and their respective Designated Representatives.

7.   The undersigned and its Designated Representatives may not use Discovery Documents or Depository Information stamped or otherwise designated as "Financial Institution Highly Confidential Documents", "Highly Confidential – Attorneys' Eyes Only", or "Confidential" in a court filing in these Cases unless such documents are filed under seal.  Nothing in this paragraph is meant to restrict or otherwise limit the undersigned's ability to object to any such designation pursuant to paragraph 10.

8.   Subject to the provisions of paragraphparagraphs 2, 4, and 5, nothing in this Acknowledgment shall be interpreted to limit the ability of the undersigned or its Designated Representatives to exchange and/or discuss any and all of the Discovery Documents and/or Depository Information with any and all of the other Depository Designees (as may then exist) and their respective Designated Representatives.

9.   Nothing in this Acknowledgment shall prohibit or preclude any individual or entity, regardless of whether such individual or entity is a Depository Designee, from accessing and/or using the Discovery Documents produced by a specific Producing Party pursuant to any other written agreement with such Producing Party.

10.   If the undersigned objects on any basis to the designation of any Discovery Document or Depository Information as "Financial Institution Highly Confidential Documents", "Highly Confidential – Attorneys' Eyes Only", or "Confidential," or seeks a waiver of such designation, then it will initially contact the counsel to the Producing Party in a good faith effort to resolve the dispute.  If, after two business days, the dispute cannot be resolved, then the undersigned may apply to the Bankruptcy Court (or the United States District Court for the District of Delaware if then presiding over the Cases or the relevant proceeding within the Cases) for relief.  Absent a written waiver or agreement from the Producing Party or an order of the court overseeing the Cases to the contrary, Discovery Documents or Depository Information marked or otherwise designated as "Financial Institution Highly Confidential Documents", "Highly Confidential – Attorneys' Eyes Only", or "Confidential" may be used only in the matters otherwise permissible under this Acknowledgment.

11.   Should access to Discovery Documents or Depository Information stamped or otherwise designated as "Financial Institution Highly Confidential

<u>Documents", "</u>Highly Confidential – Attorneys' Eyes Only", or "Confidential," be sought from the undersigned, by any person or entity other than a Depository Designee (as may then exist) or their respective Designated Representatives, pursuant to subpoena or other legal process under applicable law, rule, or regulation, then the undersigned, unless prohibited by applicable law or regulation shall: (a) promptly notify the counsel to the Producing Party in writing of the requested access; and (b) prior to producing any such Discovery Documents or Depository Information, provide the Producing Party with a reasonable opportunity to seek a court order preventing or limiting the production of such Discovery Documents or Depository Information.

12.     To the extent that the undersigned concludes that certain Discovery Documents contain privileged information that was inadvertently produced, such inadvertent production shall not constitute a waiver of any applicable privilege. Upon identifying the privileged but inadvertently produced materials, the undersigned will promptly notify the Producing Party, the Committee and the Debtors of such discovery. Upon receiving such notification, the Debtors shall remove the privileged but inadvertently produced materials from the Depository and notify the other Depository Designees (as may then exist) of the fact that the identified privileged materials have been inadvertently produced and request that they be returned to the Debtors. Upon being so notified, the other Depository Designees (as may then exist) shall return such privileged but inadvertently produced materials to the Producing Party. Such privileged but inadvertently produced materials shall not be used by undersigned, the Debtors, the Committee, or any other Depository Designee in the Bankruptcy Court or any other proceeding or forum.

13.     Notwithstanding anything otherwise contained in any confidentiality agreement with any Producing Party, Committee member Pension Benefit Guaranty Corporation ("<u>PBGC</u>"), as a governmental agency, may disclose documents designated "Highly Confidential – Attorneys' Eyes Only" or "Confidential" and/or information contained therein: (i) to the Executive Branch of the United States, the PBGC and PBGC Board of Directors' officials, advisors, consultants, and representatives who have a need to know the information as part of their job responsibilities; (ii) in the context of a court proceeding relating to the termination of a defined benefit plan sponsored by any of the Debtors, after PBGC has sought an order providing that such information shall be filed under seal and has given notice of the filing of such motion to the Debtors, the Committee, and the Producing Party, or (iii) upon request from Congress or any committee, joint committee or subcommittee thereof or the Comptroller General, provided, that in the event of disclosure pursuant to this subsection (iii), PBGC will attempt to give reasonable advanced notice under the circumstances to the Committee and Producing Party. Any party authorized to receive access to the Discovery Documents from the Pension Benefit Guaranty Corporation pursuant to this Acknowledgment shall be bound by the terms hereof.

14.     The terms of this Acknowledgment shall apply to the use of any and all Discovery Documents notwithstanding the terms of any confidentiality agreement entered into previously by the undersigned.

15.     Within sixty (60) days after the later to occur of (i) the consummation of a plan of reorganization for the Debtors pursuant to a final confirmation order that is no longer subject to appeal, (ii) the conclusion of any litigation in the Cases for which use of the Discovery Documents remains necessary, or (iii) the conversion, discharge, dismissal, or other such termination of the Cases, the Debtors shall close the Depository and the undersigned shall return all Discovery Documents, and all copies thereof, in their possession, to counsel for the Producing Party or, in lieu thereof, certify in writing that such Discovery Documents have been destroyed. Notwithstanding the foregoing, the undersigned may retain documents containing confidential or highly confidential material that have been filed with the Court.

16.     The undersigned acknowledges that irreparable damage would occur to the Producing Party if any of the provisions of this Acknowledgment were not performed in accordance with their specific terms or were otherwise breached and that remedies at law for any actual or threatened breach by it of the covenants contained in this Acknowledgment shall be inadequate and that the Producing Party will be entitled to equitable relief, including injunction and specific performance, in the event of any breach of the provisions of this Acknowledgment, in addition to all other remedies available to the Producing Party. During the pendency of the Cases, the undersigned consents to the jurisdiction and venue of the Bankruptcy Court (or the District Court if then presiding over the Cases or the relevant proceeding within the Cases) with respect to any controversy or claims arising out of or related to this Acknowledgment. Upon conclusion of the Cases, the undersigned consents to the jurisdiction and venue of the federal and state courts located in the State of New York with respect to any controversy or claims arising out of or related to this Acknowledgment. THE UNDERSIGNED HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TOBREACHES OF THIS AGREEMENTACKNOWLEDGMENT.

Dated:

_____, 20__

_____