# EXHIBIT C



**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*Executive Protection Portfolio* SM
*General Terms and Conditions Section*

---

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under
the laws of Indiana, herein called the Company

Policy Number: 8130-1880

THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY, FIDUCIARY LIABILITY, OUTSIDE DIRECTORSHIP LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE APPLICABLE LIMIT(S) OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF "DEFENSE COSTS" UNLESS OTHERWISE SPECIFIED HEREIN. "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.

Item 1.  **Parent Organization:**      Tribune Company
         Principal Address:             435 North Michigan Ave
                                        Chicago, IL 60611

Item 2.  **Policy Period:**    From  12:01 A.M. on    August 31, 2007
                               To    12:01 A.M. on    August 31, 2008
                               Local time at the address shown in Item 1.

Item 3.  Coverage Summary
         Description:
           GENERAL TERMS AND CONDITIONS
           EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY

Item 4.  Termination of
         Prior Bonds or Policies: 8130-1880  (Aug 31, 2006 - Aug 31, 2007)

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

**Executive Protection Portfolio** SM
*General Terms and Conditions Section*

In witness whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

## FEDERAL INSURANCE COMPANY

W. andrew Macon

Secretary

Thomas F. Motauned
President

09/24/07

Date

Authorized Representative

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this policy, the Company and the Insureds agree as follows:

### Territory

1.    Coverage shall extend anywhere in the world.

### Terms and Conditions

2.    Except for these General Terms and Conditions or unless stated to the contrary in any coverage section of this policy, the terms and conditions of each coverage section shall apply only to that coverage section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any coverage section, the terms and conditions of such coverage section shall control for purposes of that coverage section. Any defined term referenced in these General Terms and Conditions but defined in a coverage section shall, for purposes of coverage under that coverage section, have the meaning set forth in that coverage section.

### Definitions

3.    When used in this policy:

**Claim** shall have the meaning set forth in the applicable coverage section.

**Insured** shall have the meaning set forth in the applicable coverage section.

**Parent Organization** means the organization designated in Item 1 of the Declarations of these General Terms and Conditions.

**Policy Period** means the period of time specified in Item 2 of the Declarations of these General Terms and Conditions, subject to prior termination in accordance with Subsection 11 below. If this period is less than or greater than one year, then the limits of liability specified in the Declarations for each coverage section shall be the Company's maximum limit of liability under such coverage section for the entire period.

### Limits of Liability and Retentions

4.    Unless stated to the contrary in any coverage section, the limits of liability and retentions shown for each coverage section are separate limits of liability and separate retentions pertaining to the coverage section for which they are shown. Unless stated to the contrary in any coverage section of this policy, the payment of a retention under one coverage section shall not constitute payment of, and shall not reduce, the applicable retention under any other coverage section.

### Notice

5. Any notice to the Company with respect to any coverage section shall designate the coverage section under which notice is being given and shall be treated as notice only under the coverage section(s) so designated.

   Notice to the Company of a **Claim**, or of circumstances which could give rise to a **Claim**, shall be given in writing addressed to:

   > Attn: Claims Department
   > Chubb Group of Insurance Companies
   > 82 Hopmeadow Street
   > Simsbury, Connecticut 06070-7683

   All other notices to the Company shall be given in writing addressed to:

   > Attn: Underwriting
   > Chubb Group of Insurance Companies
   > 82 Hopmeadow Street
   > Simsbury, Connecticut 06070-7683

   Any such notice shall be effective on the date of receipt by the Company at such address.

### Valuation and Foreign Currency

6. All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any coverage section, if a judgment is rendered, a settlement is denominated or any element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the judgment becomes final, the amount of the settlement is agreed upon or the element of loss is due, respectively.

### Subrogation

7. In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insured**'s rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured**.

### Action Against the Company

8.   No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. No person or entity shall have any right under this policy to join the Company as a party to any action against any **Insured** to determine such **Insured**'s liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

## Parent Organization Rights and Obligations

9.   By acceptance of this policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice provided for in this policy (except the giving of notice to apply for an Extended Reporting Period); the adjustment of loss amounts; and the receipt or enforcement of payment of loss (and the **Parent Organization** further agrees that it shall be responsible for application of any such payment as provided in this policy). Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

## Alteration and Assignment

10.   No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

## Termination of Policy or Coverage Section

11.   This policy or any coverage section shall terminate at the earliest of the following times:

(a)   sixty days after receipt by the **Parent Organization** of written notice of termination from the Company for any reason other than non-payment of premium;

(b)   twenty days after receipt by the **Parent Organization** of written notice of termination from the Company for non-payment of premium;

(c)   upon receipt by the Company of written notice of termination from the **Parent Organization**; provided that this policy may not be terminated by the **Parent Organization** after the effective date of any acquisition of the **Parent Organization** as described in the Changes in Exposure subsection of the applicable coverage section of this policy;

(d)   upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations of these General Terms and Conditions; or

(e)   at such other time as may be agreed upon by the Company and the **Parent Organization**.

The Company shall refund the unearned premium computed at customary short rates if this policy or any coverage section is terminated by the **Parent Organization**. Under any other

circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of a notice of termination, but such payment shall be made as soon as practicable thereafter.

### *Termination of Prior Bonds or Policies*

12. Any bonds or policies issued by the Company or its affiliates and specified in Item 4 of the Declarations of these General Terms and Conditions shall terminate, if not already terminated, as of the inception of this policy.

### *Bankruptcy*

13. Bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this policy.

### *Headings*

14. The descriptions in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.


CHUBB

# Schedule of Forms

To be attached to and form part of
Policy No.    8130-1880

Company:    Federal Insurance Company

Issued to:    Tribune Company

Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

14-02-7461 (11/02 ed.)

14-02-9228 (4/04 ed.)

14-02-9956 (8/04 ed.)

Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

14-02-10630 (11/04 ed.)

14-02-11393 (9/05 ed.)

14-02-11402 (9/05 ed.)

14-02-11478 (9/05 ed.)

14-02-12095 (6/06 ed.)

14-02-12147 (6/06 ed.)

14-02-12497 (10/06 ed.)

14-02-7462 (1/07 ed.)

14-02-8522 (6/03 ed.)

14-02-8559 (6/03 ed.)

14-02-8560 (5/06 ed.)

14-02-8762 (8/03 ed.)

14-02-8821 (9/03 ed.)

14-02-9090 (12/03 ed.)

Q06-1774 (9/06 ed.)

Q07-2247 (9/07 ed.)

QTRIBUNE10 (12/04 ed.)

QTRIBUNE12 (12/04 ed.)

QTRIBUNE3 (11/04 ed.)

QTRIBUNE4 (11/04 ed.)

QTRIBUNE5 (12/04 ed.)

QTRIBUNE6 (12/04 ed.)

QTRIBUNE7 (12/04 ed.)

Form 14-02-0854 (Ed. 04-01)

# Schedule of Forms

To be attached to and form part of
Policy No.    8130-1880

Company:    Federal Insurance Company

Issued to:    Tribune Company

QTRIBUNE8 (12/04 ed.)
QTRIBUNE9 (12/04 ed.)



**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007                    Company: Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

## ILLINOIS AMENDATORY ENDORSEMENT
## TO THE GENERAL TERMS AND CONDITIONS SECTION

In consideration of the premium charged, it is agreed that:

1.    Subsection 11. Termination of Policy or Coverage Section (a) of the General Terms and
      Conditions Section is amended by adding the following at the end of such paragraph (a):

      "provided that, if any Executive Liability and Entity Securities Liability Coverage Section, Outside
      Directorship Liability Coverage Section, Fiduciary Liability Coverage Section or Employment
      Practices Liability Coverage Section is issued as part of this policy and is in effect for more than
      sixty (60) days, the Company may cancel any such coverage section, other than for non-payment
      of premium, only for one or more of the following reasons:

      (1)   such coverage section was obtained through a material misrepresentation;

      (2)   any Insured violated any of the terms and conditions of such coverage section;

      (3)   the risk originally accepted has measurably increased;

      (4)   the Company certifies to the Director of Insurance the loss of reinsurance by the Company
            which provided coverage to the Company for all or a substantial part of the underlying risk
            insured; or

      (5)   the Director of Insurance determines that the continuation of such coverage section could
            place the Company in violation of the insurance laws of the state of Illinois;"

2.    With respect to each coverage section of this policy, other than the Crime Coverage Section and
      the Kidnap/Ransom and Extortion Coverage Section, Section 11. Termination of Policy or
      Coverage Section (d) of the General Terms and Conditions Section is amended to add the
      following to such paragraph (d):

      "provided that non-renewal by the Company is effective only if the Company mails sixty (60) days
      advance written notice of non-renewal to the Parent Organization at its last known address,
      stating the reason(s) for such non-renewal.  A copy of such notice will be sent to the agent or
      broker of record, if any, and any mortgagee or lienholder, if known; or"

14-02-7461 (11/2002 ed.)              Page 1

3.      Subsection 11. Termination of Policy or Coverage Section of the General Terms and Conditions
        Section is amended further by adding the following paragraphs at the end of such Subsection:

        "Any notice of cancellation by the Company will state the specific reason for cancellation.

        The Company may condition renewal of the Executive Liability and Entity Securities Liability
        Coverage Section, the Outside Directorship Liability Coverage Section, the Fiduciary Liability
        Coverage Section or the Employment Practices Liability Coverage Section upon an increase in
        premium of 30% or more, or a change in deductible or coverage, by mailing to the Parent
        Organization at the last mailing address known to the Company, with a copy to the agent or
        broker of record, if any, at least sixty (60) days advance written notice of such renewal change(s).
        If the Company provides such notice between thirty-one and sixty (60) days before the expiration
        of the Policy Period, the Company will offer the Parent Organization a sixty (60)-day extension of
        the applicable coverage section at a pro-rated premium based upon the expiring policy premium.
        If the Company provides less than thirty-one (31) days' notice of non-renewal, the Company will
        offer the Parent Organization a one (1)-year extension of the applicable coverage section at a
        premium not to exceed 29.9% of the premium for the expiring policy."

4.      Nothing in this Amendatory Endorsement amends the provisions of Section 11. Termination of
        Policy or Coverage Section of the General Terms and Conditions Section as such Section applies
        to the Crime Coverage Section or the Kidnap/Ransom and Extortion Coverage Section.

5.      References in this Amendatory Endorsement to a particular coverage section are applicable only to
        the extent that such coverage section has been issued to the Parent Organization. The coverage
        sections issued to the Parent Organization are those set forth in the applicable Declarations and
        nothing herein is intended to, nor does it, establish coverage under any coverage section that has
        not been issued to the Parent Organization as part of the policy.

The policy is amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence
over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent
with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement
provisions comply with the applicable insurance laws of the state of Illinois.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

_____
Authorized Representative



CHUBB

**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement/rider: August 31, 2007          Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

## COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other laws
or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

14-02-9228 (04/2004)          Page 1



**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company:  Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

---

## FULLY-EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The entire premium for this policy shall be deemed to be fully earned as of the policy Inception Date set forth
        in Item 2 of the Declarations of these General Terms and Conditions.

(2)     The final paragraph of Subsection 11, Termination of Policy or Coverage Section, of these General Terms
        and Conditions is deleted in its entirety.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

_____
Authorized Representative



Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

*Executive Protection Portfolio* SM
*Executive Liability and Entity Securities*
*Liability Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under
the laws of Indiana, herein called the Company

THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.

Item 1. **Parent Organization:**
Tribune Company
435 North Michigan Ave
Chicago, IL 60611

Item 2. Limits of Liability:

| | |
|---|---|
| (A) Each **Claim**: | $15,000,000.00 |
| (B) Each **Policy Period**: | $15,000,000.00 |
| (C) Sublimit for all **Securityholder Derivative Demands** under Insuring Clause 4: | $250,000.00 |

Item 3. Coinsurance Percentage:

| | |
|---|---|
| (A) **Securities Claims**: | 0.00% |
| (B) **Claims** other than **Securities Claims**: | 0.00% |

Item 4. Retention:

| | |
|---|---|
| (A) Insuring Clauses 1 and 4: | None |
| (B) Insuring Clause 2 (**Claims** other than **Securities Claims**): | $25,000,000.00 |
| (C) Insuring Clauses 2 and 3 (**Securities Claims** only): | $25,000,000.00 |

Item 5. **Organization:**

Tribune Company and its Subsidiaries

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*Executive Protection Portfolio* <sup>SM</sup>
*Executive Liability and Entity Securities
Liability Coverage Section*

Item 6.   Extended Reporting Period:

    (A) Additional Period:      one year
    (B) Additional Premium:    200 % of Annualized Premium for the Expiring **Policy Period**

Item 7.   Pending or Prior Date:    None

In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:

## Insuring Clauses

*Executive Liability Coverage Insuring Clause 1*

1.  The Company shall pay, on behalf of each of the **Insured Persons, Loss** for which the **Insured Person** is not indemnified by the **Organization** and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Executive Indemnification Coverage Insuring Clause 2*

2.  The Company shall pay, on behalf of the **Organization, Loss** for which the **Organization** grants indemnification to an **Insured Person**, as permitted or required by law, and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Entity Securities Coverage Insuring Clause 3*

3.  The Company shall pay, on behalf of the **Organization, Loss** which the **Organization** becomes legally obligated to pay on account of any **Securities Claim** first made against the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Organization** or the **Insured Persons** before or during the **Policy Period**, but only if such **Securities Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Securityholder Derivative Demand Coverage Insuring Clause 4*

4.  The Company shall pay, on behalf of the **Organization, Investigative Costs** resulting from a **Securityholder Derivative Demand** first received by the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted before or during the **Policy Period**, but only if such **Securityholder Derivative Demand** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

## Definitions

5.   When used in this coverage section:

**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement.

**Application** shall also include, for each **Organization**, all of the following documents whether or not submitted with or attached to any such signed application: (i) the Annual Report (including financial statements) last issued to shareholders before this policy's inception date; (ii) the report last filed with the Securities and Exchange Commission on Form 10-K before this policy's inception date; (iii) the report last filed with the Securities and Exchange Commission on Form 10-Q before this policy's inception date; (iv) the proxy statement and (if different) definitive proxy statement last filed with the Securities and Exchange Commission before this policy's inception date; (v) all reports filed with the Securities and Exchange Commission on Form 8-K during the twelve months preceding this policy's inception date; and (vi) all reports filed with the Securities and Exchange Commission on Schedule 13D, with respect to any equity securities of such **Organization**, during the twelve months preceding this policy's inception date. All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this coverage section.

**Claim** means:

(1)   when used in reference to the coverage provided by Insuring Clause 1 or 2:

  (a)   a written demand for monetary damages or non-monetary relief;

  (b)   a civil proceeding commenced by the service of a complaint or similar pleading; or

  (c)   a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

  against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

(2)   when used in reference to the coverage provided by Insuring Clause 3:

  (a)   a written demand for monetary damages or non-monetary relief;

  (b)   a civil proceeding commenced by the service of a complaint or similar pleading; or

  (c)   a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**,

  against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

(3)   when used in reference to the coverage provided by Insuring Clause 4, a **Securityholder Derivative Demand**.

Except as may otherwise be provided in Subsection 12, Subsection 13(g),or Subsection 15(b) of this coverage section, a **Claim** will be deemed to have first been made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand, including but not limited to any **Securityholder Derivative Demand**, when such demand is first received by an **Insured**).

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Organization**.

**Financial Impairment** means the status of an **Organization** resulting from:

(a)   the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(b)   such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Insured** means the **Organization** and any **Insured Person**.

**Insured Capacity** means the position or capacity of an **Insured Person** that causes him or her to meet the definition of **Insured Person** set forth in this coverage section. **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization.

**Insured Person** means any natural person who was, now is or shall become:

(a)   a duly elected or appointed director, officer, **Manager**, or the in-house general counsel of any **Organization** chartered in the United States of America;

(b)   a holder of a position equivalent to any position described in (a) above in an **Organization** that is chartered in any jurisdiction other than the United States of America; or

(c)   solely with respect to **Securities Claims**, any other employee of an **Organization**, provided that such other employees shall not, solely by reason of their status as employees, be **Insured Persons** for purposes of Exclusion 6(c).

**Investigative Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, or benefits of the directors, officers or employees of the **Organization**) incurred by the **Organization** (including its Board of Directors or any committee of its Board of Directors) in investigating or evaluating on behalf of the **Organization** whether it is in the

best interest of the **Organization** to prosecute the claims alleged in a **Securityholder Derivative Demand**.

**Loss** means:

(a)  the amount that any **Insured Person** (for purposes of Insuring Clauses 1 and 2) or the **Organization** (for purposes of Insuring Clause 3) becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages, if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**; or

(b)  for purposes of Insuring Clause 4, covered **Investigative Costs**.

**Loss** does not include:

(a)  any amount not indemnified by the **Organization** for which an **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

(b)  any costs incurred by the **Organization** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c)  any amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that is not then a **Claim** even if (i) such amount also benefits the defense of a covered **Claim**, or (ii) such action, proceeding or demand subsequently gives rise to a **Claim**;

(d)  taxes, fines or penalties, or the multiple portion of any multiplied damage award, except as provided above with respect to punitive or exemplary damages;

(e)  any amount not insurable under the law pursuant to which this coverage section is construed, except as provided above with respect to punitive or exemplary damages;

(f)  any amount allocated to non-covered loss pursuant to Subsection 17 of this coverage section; or

(g)  any amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets.

**Manager** means any natural person who was, now is or shall become a manager, member of the Board of Managers or equivalent executive of an **Organization** that is a limited liability company.

**Organization** means, collectively, those organizations designated in Item 5 of the Declarations for this coverage section, including any such organization in its capacity as a

debtor in possession under the United States bankruptcy law or in an equivalent status under the law of any other country.

**Pollutants** means (a) any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof, including, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, or (b) any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products or any noise.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Securities Claim** means that portion of a **Claim** which:

    (a)    is brought by a securityholder of an **Organization**

        (i)    in his or her capacity as a securityholder of such **Organization**, with respect to his or her interest in securities of such **Organization**, and against such **Organization** or any of its **Insured Persons**; or

        (ii)    derivatively, on behalf of such **Organization**, against an **Insured Person** of such **Organization**; or

    (b)    alleges that an **Organization** or any of its **Insured Persons**

        (i)    violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or

        (ii)    committed a **Wrongful Act** that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such **Organization**,

provided that **Securities Claim** does not include any **Claim** by or on behalf of a former, current, future or prospective employee of the **Organization** that is based upon, arising from, or in consequence of any offer, grant or issuance, or any plan or agreement relating to the offer, grant or issuance, by the **Organization** to such employee in his or her capacity as such of stock, stock warrants, stock options or other securities of the **Organization**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Organization**; and provided, further, that **Securities Claim** does not include any **Securityholder Derivative Demand**.

**Securityholder Derivative Demand** means:

    (a)    any written demand, by a securityholder of an **Organization**, upon the Board of Directors or Board of **Managers** of such **Organization** to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**; or

    (b)    any lawsuit by a securityholder of an **Organization**, brought derivatively on behalf of such **Organization** against an **Insured Person** for a **Wrongful Act** without first making a demand as described in (a) above,

provided such demand or lawsuit is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured Person**.

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors or **Managers** of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Wrongful Act** means:

(a)     any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Insured Capacity**, or for purposes of coverage under Insuring Clause 3, by the **Organization**; or

(b)     any other matter claimed against an **Insured Person** solely by reason of his or her serving in an **Insured Capacity**.

---

## Exclusions

*Applicable To All Insuring Clauses*

6.     The Company shall not be liable for **Loss** on account of any **Claim**:

(a)     based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice given under any policy or coverage section of which this coverage section is a direct or indirect renewal or replacement;

(b)     based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(c)     brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to:

(i)     a **Claim** brought or maintained derivatively on behalf of the **Organization** by one or more securityholders of the **Organization**, provided such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured Person**;

(ii)     an employment **Claim** brought or maintained by or on behalf of an **Insured Person**;

(iii)     a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this coverage section; or

(iv)     a **Claim** brought by an **Insured Person** who has not served in an **Insured Capacity** for at least four (4) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, the **Organization** or any other **Insured**

CHUBB

> **Person** who is serving or has served in an **Insured Capacity** within such four (4) year period;

  (d)  based upon, arising from, or in consequence of:

      (i)  any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

      (ii)  any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

  including but not limited to any **Claim** for financial loss to the **Organization**, its securityholders or its creditors based upon, arising from, or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 6(d);

  (e)  for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 6(e) shall not apply to mental anguish or emotional distress for which a claimant seeks compensation in an employment **Claim**;

  (f)  for an actual or alleged violation of the responsibilities, obligations or duties imposed on fiduciaries by the Employee Retirement Income Security Act of 1974, or any amendments thereto, or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

  (g)  for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor or employee of any entity other than the **Organization**, even if the **Insured Person's** service in such capacity is with the knowledge or consent or at the request of the **Organization**; or

  (h)  made against a **Subsidiary** or an **Insured Person** of such **Subsidiary** for any **Wrongful Act** committed, attempted, or allegedly committed or attempted during any time when such entity was not a **Subsidiary**.

---

*Applicable To Insuring Clauses 1 and 2 Only*

  7.  The **Company** shall not be liable under Insuring Clause 1 or 2 for **Loss** on account of any **Claim** made against any **Insured Person**:

    (a)  for an accounting of profits made from the purchase or sale by such **Insured Person** of securities of the **Organization** within the meaning of Section 16(b) of the Securities Exchange Act of 1934, any amendments thereto, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world; or

    (b)  based upon, arising from, or in consequence of:

      (i)  the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**; or

(ii)   such **Insured Person** having gained in fact any profit, remuneration or
advantage to which such **Insured Person** was not legally entitled,

as evidenced by (A) any written statement or written document by any **Insured** or (B)
any judgment or ruling in any judicial, administrative or alternative dispute resolution
proceeding.

*Applicable To Insuring Clause 3 Only*

8.   The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any
**Securities Claim** made against any **Organization**:

   (a)   based upon, arising from, or in consequence of:

      (i)   the committing in fact of any deliberately fraudulent act or omission or any
willful violation of any statute or regulation by an **Organization** or by any past,
present or future chief financial officer, in-house general counsel, president,
chief executive officer or chairperson of an **Organization**; or

      (ii)   such **Organization** having gained in fact any profit, remuneration or advantage
to which such **Organization** was not legally entitled,

   as evidenced by (A) any written statement or written document by any **Insured** or (B)
any judgment or ruling in any judicial, administrative or alternative dispute resolution
proceeding; or

   (b)   for any actual or alleged liability of an **Organization** under any contract or agreement
that relates to the purchase, sale, or offer to purchase or sell any securities; provided
that this Exclusion 8(b) shall not apply to liability that would have attached to such
**Organization** in the absence of such contract or agreement.

## Severability of Exclusions

9.   (a)   No fact pertaining to or knowledge possessed by any **Insured Person** shall be
imputed to any other **Insured Person** for the purpose of applying the exclusions in
Subsection 7 of this coverage section.

   (b)   Only facts pertaining to and knowledge possessed by any past, present, or future chief
financial officer, in-house general counsel, president, chief executive officer or
chairperson of an **Organization** shall be imputed to such **Organization** for the purpose
of applying the exclusions in Subsection 8 of this coverage section.

## Spouses, Estates and Legal Representatives

10.   Subject otherwise to the General Terms and Conditions and the limitations, conditions,
provisions and other terms of this coverage section, coverage shall extend to **Claims** for
the **Wrongful Acts** of an **Insured Person** made against:

(a)    the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is incompetent, insolvent or bankrupt; or

(b)    the lawful spouse or **Domestic Partner** of such **Insured Person** solely by reason of such spouse or **Domestic Partner's** status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**.

All terms and conditions of this coverage section, including without limitation the Retention, applicable to **Loss** incurred by the **Insured Persons**, shall also apply to loss incurred by the estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of such **Insured Persons**. The coverage provided by this Subsection 10 shall not apply with respect to any loss arising from an act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

---

### Coordination With Employment Practices Liability Coverage Section

11.    Any **Loss** otherwise covered by both (i) this coverage section and (ii) any employment practices liability coverage section or policy issued by the Company or by any affiliate of the Company (an "Employment Practices Liability Coverage") first shall be covered as provided in, and shall be subject to the limit of liability, retention and coinsurance percentage applicable to such Employment Practices Liability Coverage. Any remaining **Loss** otherwise covered by this coverage section which is not paid under such Employment Practices Liability Coverage shall be covered as provided in, and shall be subject to the Limit of Liability, Retention and Coinsurance Percentage applicable to this coverage section; provided the Retention applicable to such **Loss** under this coverage section shall be reduced by the amount of **Loss** otherwise covered by this coverage section which is paid by the **Insureds** as the retention under such Employment Practices Liability Coverage.

---

### Extended Reporting Period

12.    If the Company or the **Parent Organization** terminates or does not renew this coverage section, other than termination by the Company for nonpayment of premium, the **Parent Organization** and the **Insured Persons** shall have the right, upon payment of the additional premium set forth in Item 6(B) of the Declarations for this coverage section, to an extension of the coverage granted by this coverage section for **Claims** that are (i) first made during the period set forth in Item 6(A) of the Declarations for this coverage section (the "Extended Reporting Period") following the effective date of termination or nonrenewal, and (ii) reported to the Company in writing within the time provided in Subsection 15(a) of this coverage section, but only to the extent such **Claims** are for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before the earlier of the effective date of termination or nonrenewal or the date of the first merger, consolidation or acquisition event described in Subsection 21 below. The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew. The right to purchase an extension of coverage as described in this Subsection shall lapse unless written notice of election to purchase the extension, together with payment of the additional premium due, is received by the Company within thirty (30) days after the effective date of termination or nonrenewal. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

## Limit of Liability, Retention and Coinsurance

13.  (a)  The Company's maximum liability for all **Loss** on account of each **Claim**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability set forth in Item 2(A) of the Declarations for this coverage section. The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the **Policy Period**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability for each **Policy Period** set forth in Item 2(B) of the Declarations for this coverage section.

(b)  The Company's maximum aggregate liability under Insuring Clause 4 for all **Investigative Costs** on account of all **Securityholder Derivative Demands** shall be the Sublimit set forth in Item 2(C) of the Declarations for this coverage section. Such Sublimit is part of, and not in addition to, the Limits of Liability set forth in Items 2(A) and 2(B) of the Declarations.

(c)  **Defense Costs** are part of, and not in addition to, the Limits of Liability set forth in Item 2 of the Declarations for this coverage section, and the payment by the Company of **Defense Costs** shall reduce and may exhaust such applicable Limits of Liability.

(d)  The Company's liability under Insuring Clause 2 or 3 shall apply only to that part of covered **Loss** (as determined by any applicable provision in Subsection 17 of this coverage section) on account of each **Claim** which is excess of the applicable Retention set forth in Item 4 of the Declarations for this coverage section. Such Retention shall be depleted only by **Loss** otherwise covered under this coverage section and shall be borne by the **Insureds** uninsured and at their own risk. Except as otherwise provided in Subsection 14, no Retention shall apply to any **Loss** under Insuring Clause 1 or 4.

(e)  If different parts of a single **Claim** are subject to different Retentions, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(f)  To the extent that **Loss** resulting from a **Securities Claim** is covered under Insuring Clause 2 or 3 (as determined by Subsection 17(a) of this coverage section) and is in excess of the applicable Retention, the **Insureds** shall bear uninsured and at their own risk that percentage of such **Loss** specified as the Coinsurance Percentage in Item 3(A) of the Declarations for this coverage section, and the Company's liability shall apply only to the remaining percentage of such **Loss**. To the extent that **Loss** resulting from a **Claim** other than a **Securities Claim** is covered under Insuring Clause 2 or 3 (as determined by Subsection 17(b) of this coverage section) and is in excess of the applicable Retention, the **Insureds** shall bear uninsured and at their own risk that percentage of such **Loss** specified as the Coinsurance Percentage in Item 3(B) of the Declarations for this coverage section, and the Company's liability shall apply only to the remaining percentage of such **Loss**.

(g)  All **Related Claims** shall be treated as a single **Claim** first made on the date the earliest of such **Related Claims** was first made, or on the date the earliest of such **Related Claims** is treated as having been made in accordance with Subsection 15(b) below, regardless of whether such date is before or during the **Policy Period**.

(h)  The limit of liability available during the Extended Reporting Period (if exercised) shall be part of, and not in addition to, the Company's maximum aggregate limit of liability for all **Loss** on account of all **Claims** first made during the immediately preceding **Policy Period**.

*Presumptive Indemnification*

14.  If the **Organization** fails or refuses, other than for reason of **Financial Impairment**, to indemnify an **Insured Person** for **Loss**, or to advance **Defense Costs** on behalf of an **Insured Person**, to the fullest extent permitted by statutory or common law, then, notwithstanding any other conditions, provisions or terms of this coverage section to the contrary, any payment by the Company of such **Defense Costs** or other **Loss** shall be subject to:

(i)  the applicable Insuring Clause 2 Retention set forth in Item 4 of the Declarations for this coverage section; and

(ii)  the applicable Coinsurance Percentage set forth in Item 3 of the Declarations for this coverage section.

*Reporting and Notice*

15.  (a)  The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company written notice of any **Claim** as soon as practicable, but in no event later than the earliest of the following dates:

(i)  sixty (60) days after the date on which any **Organization's** chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson first becomes aware that the **Claim** has been made;

(ii)  if this coverage section expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased, sixty (60) days after the effective date of such expiration or termination; or

(iii)  the expiration date of the Extended Reporting Period, if purchased;

provided that if the Company sends written notice to the **Parent Organization**, at any time before the date set forth in (i) above with respect to any **Claim**, stating that this coverage section is being terminated for nonpayment of premium, the **Insureds** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(b)  If during the **Policy Period** an **Insured**:

(i)  becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company;

(ii)  receives a written request to toll or waive a statute of limitations applicable to **Wrongful Acts** committed, attempted, or allegedly committed or attempted before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Acts** to the Company; or

(iii)   gives written notice to the Company of a **Securityholder Derivative Demand**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above, from the **Wrongful Acts** referred to in (ii) above, or from the **Securityholder Derivative Demand** referred to in (iii) above, shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i), (ii) or (iii) above was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company as set forth in Subsection 15(a) above. With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made.

(c)   The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company such information, assistance, and cooperation as the Company may reasonably require, and shall include in any notice under Subsection 15(a) or (b) a description of the **Claim**, circumstances, or **Securityholder Derivative Demand**, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances, or **Securityholder Derivative Demand**.

## *Defense and Settlement*

16.   (a)   It shall be the duty of the **Insureds** and not the duty of the Company to defend **Claims** made against the **Insureds**.

(b)   The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent. The Company shall not be liable for any element of **Loss** incurred, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent. Provided the **Insureds** comply with Subsections 16(c) and (d) below, the Company shall not unreasonably withhold any such consent.

(c)   With respect to any **Claim** that appears reasonably likely to be covered in whole or in part under this coverage section, the Company shall have the right and shall be given the opportunity to effectively associate with the **Insureds**, and shall be consulted in advance by the **Insureds**, regarding the investigation, defense and settlement of such **Claim**, including but not limited to selecting appropriate defense counsel and negotiating any settlement.

(d)   The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree that in the event of a **Claim** the **Insureds** will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

(e)   Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this coverage section.

## *Allocation*

17. (a)  If in any **Securities Claim** the **Insureds** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss as follows:

   (i)   The portion, if any, of such amount that is in part covered and in part not covered under Insuring Clause 2 shall be allocated in its entirety to covered **Loss**, subject, however, to the applicable Retention and Coinsurance Percentage set forth in Items 4(C) and 3(A) of the Declarations for this coverage section, respectively; and

   (ii)  The portion, if any, of such amount that is in part covered and in part not covered under Insuring Clause 1 or 3 shall be allocated between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the **Insureds** to covered and non-covered matters and, in the event of a settlement in such **Securities Claim**, based also on the relative benefits to the **Insureds** from settlement of the covered matters and from settlement of the non-covered matters; provided that the amount so allocated to covered **Loss** under Insuring Clause 3 shall be subject to the Retention and Coinsurance Percentage set forth in Items 4(C) and 3(A) of the Declarations for this coverage section, respectively.

   The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss. The allocation described in (i) above shall be final and binding on the Company and the **Insureds** under Insuring Clause 2, but shall not apply to any allocation under Insuring Clauses 1 and 3.

   (b)  If in any **Claim** other than a **Securities Claim** the **Insured Persons** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, either because such **Claim** includes both covered and non-covered matters or because such **Claim** is made against both **Insured Persons** and others (including the **Organization**), the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, based also on the relative benefits to the parties from such settlement. The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss.

   (c)  If the **Insureds** and the Company agree on an allocation of **Defense Costs**, the Company shall advance on a current basis **Defense Costs** allocated to the covered **Loss**. If the **Insureds** and the Company cannot agree on an allocation:
      (i)   no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

      (ii)  the Company shall advance on a current basis **Defense Costs** which the Company believes to be covered under this coverage section until a different allocation is negotiated, arbitrated or judicially determined; and

      (iii) the Company, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

(d)   Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** on account of a **Claim** shall be applied retroactively to all **Defense Costs** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Costs** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim**.

### Other Insurance

18.   If any **Loss** under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Any payment by **Insureds** of a retention or deductible under such other insurance shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

### Payment of Loss

19.   In the event payment of **Loss** is due under this coverage section but the amount of such **Loss** in the aggregate exceeds the remaining available Limit of Liability for this coverage section, the Company shall:

(a)   first pay such **Loss** for which coverage is provided under Insuring Clause 1 of this coverage section; then

(b)   to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such **Loss** for which coverage is provided under any other Insuring Clause of this coverage section.

Except as otherwise provided in this Subsection 19, the Company may pay covered **Loss** as it becomes due under this coverage section without regard to the potential for other future payment obligations under this coverage section.

### Changes in Exposure

Acquisition /Creation of Another Organization

20.   If before or during the **Policy Period** any **Organization**:

(a)   acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

(b)   acquires another organization by merger into or consolidation with an **Organization** such that the **Organization** is the surviving entity,

such other organization and its **Insured Persons** shall be **Insureds** under this coverage section, but only with respect to **Wrongful Acts** committed, attempted, or allegedly committed or attempted after such acquisition or creation unless the Company agrees, after presentation of a complete application and all other appropriate information, to provide coverage by endorsement for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insureds** before such acquisition or creation.

If the total assets of any such acquired organization or new **Subsidiary** exceed ten percent (10%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation. Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

*Acquisition by Another Organization*

21.   If:

   (a)   the **Parent Organization** merges into or consolidates with another organization and the **Parent Organization** is not the surviving entity; or

   (b)   another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of or to appoint directors or **Managers** of the **Parent Organization**,

coverage under this coverage section shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition. Upon the occurrence of any event described in (a) or (b) of this Subsection 21, the entire premium for this coverage section shall be deemed fully earned. The **Parent Organization** shall give written notice of such merger, consolidation or acquisition to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such merger, consolidation or acquisition, together with such other information as the Company may require. Upon receipt of such notice and information and at the request of the **Parent Organization**, the Company shall provide to the **Parent Organization** a quotation for an extension of coverage (for such period as may be negotiated between the Company and the **Parent Organization**) with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition. Any coverage extension pursuant to such quotation shall be subject to such additional or different terms, conditions and limitations of coverage, and payment of such additional premium, as the Company in its sole discretion may require.

*Cessation of Subsidiary*

22.   In the event an organization ceases to be a **Subsidiary** before or during the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted while such organization was a **Subsidiary**.

*Related Entity Public Offering*

23.   If any **Organization** files or causes to be filed, with the United States Securities and Exchange Commission or an equivalent agency or government department in any country other than the United States of America, any registration statement in contemplation of a public offering of equity securities by any entity other than the **Parent Organization** (irrespective of whether such public offering is an initial public offering or a secondary or other offering subsequent to an initial public offering), then the Company shall not be liable for **Loss** on account of any **Claim** based upon, arising from, or in consequence of such registration statement or the sale, offer to sell, distribution or issuance of any securities pursuant to such registration statement, unless (i) the Company receives written notice at least thirty (30) days prior to the effective date of such registration statement providing full details of the contemplated offering, and (ii) the Company, in its sole discretion, agrees by written endorsement to this coverage section to provide coverage for such **Claims** upon such terms and conditions, subject to such limitations and other provisions, and for such additional premium as the Company may require. If the Company in its sole discretion agrees to provide coverage for such **Claims**, the additional premium specified by the Company shall be payable to the Company in full not later than the date on which such registration statement becomes effective.

*Representations and Severability*

24.   In issuing this coverage section the Company has relied upon the statements, representations and information in the **Application**. All of the **Insureds** acknowledge and agree that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the Company to issue this coverage section, and (iii) are material to the Company's acceptance of the risk to which this coverage section applies.

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this coverage section shall be void with respect to (i) any **Insured** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application**) or to whom knowledge of such facts is imputed, and (ii) the **Organization** under Insuring Clause 2 to the extent it indemnifies an **Insured Person** who had such actual or imputed knowledge. For purposes of the preceding sentence:

(a)   the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**;

(b)   the knowledge of the person(s) who signed the **Application** for this coverage section shall be imputed to all of the **Insureds**; and

(c)   except as provided in (a) above, the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.



**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company: Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

## AMEND CHANGES IN EXPOSURE ENDORSEMENT

In consideration of the premium charged, it is agreed that the second full paragraph of Subsection 20 of this coverage section, Changes in Exposure: Acquisition/Creation of Another Organization, is amended to read in its entirety as follows:

If the total assets of any such acquired organization or new **Subsidiary** exceed twenty percent (20%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than ninety (90) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than ninety (90) days after such acquisition or creation. Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

Authorized Representative



**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: August 31, 2007                    Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

---

AMEND INSURED VERSUS INSURED EXCLUSION (WHISTLEBLOWER) ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection 6 Exclusions (c)(i) of this coverage section is amended to read in its entirety as follows:

(i)        a **Claim** that is a securityholder derivative action brought and maintained on behalf of the **Organization** without any active assistance or participation of, or solicitation by, any **Insured Person** (other than assistance, participation or solicitation for which Section 806 of the Sarbanes-Oxley Act of 2002, or any similar "whistleblower" protection provision of an applicable federal, state, local or foreign securities law, affords protection to such **Insured Person**).

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Robert Hamburger

_____

Authorized Representative



**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company:  Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

---

AMEND INSURED VERSUS INSURED EXCLUSION FOR
NON-COMMON LAW COUNTRIES ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Solely with respect to a **Claim** that (i) is not venued in the United States of America, Canada, Australia or any other common law jurisdiction and (ii) is instigated solely by a **Third Party** without any solicitation by an **Insured**, Exclusion 6(c) of this coverage section is amended by adding the following:

    (v).    a **Claim** brought by the Supervisory Board of an **Organization** against an **Insured Person** in his or her capacity as a member of such **Organization's** Management Board, if the Supervisory Board is legally required to bring and maintain the **Claim**; or

    (vi).    a **Claim** brought by an **Organization** against an **Insured Person** of such **Organization**, if the **Organization** brings the **Claim**:

        (A)    to implement a shareholder resolution adopted at the **Organization's** Annual General Meeting; or

        (B)    to implement a judicial or arbitration decision concluding that information required to be presented at the **Organization's** Annual General Meeting would, had it been so presented, have led to the adoption of a shareholder resolution demanding that the **Claim** be made.

(2)    Section (1) of this Endorsement shall apply only to a **Claim** that is:

    (a)    a civil proceeding commenced by the service of a complaint or similar pleading;

    (b)    a criminal proceeding commenced by the return of an indictment;

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document; or

    (d)    an appeal from a proceeding described in (2)(a), (2)(b) or (2)(c) above.

With respect to any other **Claim**, section (1) of this Endorsement shall be inapplicable and Exclusion 6(c) of this coverage section shall not be amended as described in section (1) of this Endorsement.

14-02-11402 (9/2005) REV.                    Page 1

(3)     As used in this Endorsement, the term **"Third Party"** means:

    (a)      a natural person who is not a director or an officer of an **Organization**; or

    (b)      an entity that is not an **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative



**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section
(Federal & Vigilant)

Effective date of
this endorsement/rider: August 31, 2007           Federal Insurance Company

                                                  Endorsement/Rider No. 4

                                                  To be attached to and
                                                  form a part of Policy No. 8130-1880

Issued to:  Tribune Company

---

## AMEND DEFINITION OF LOSS PARAGRAPH (g) ENDORSEMENT

In consideration of the premium charged, it is agreed that paragraph (g) of the definition of Loss in Subsection 5
Definitions of this coverage section is amended to read in its entirety as follows:

  (g)      any amount that represents or is substantially equivalent to an increase in the
           consideration paid (or proposed to be paid) by an **Organization** in connection with its
           purchase of any securities or assets; provided that this paragraph (g) shall not apply to
           **Defense Costs** or to amounts for which an **Insured Person** (and not the **Organization**)
           is liable.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Robert Hamburger

_____
Authorized Representative



**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: August 31, 2007

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

---

AMEND DEFINITION OF APPLICATION ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of **Application** in Subsection 5., Definitions, of this coverage section is deleted and replaced with the following:

**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section.

**Application** shall also include, for each **Organization**, all of the following documents whether or not submitted with or attached to any such signed application: (i) the Annual Reports (including financial statements) issued to shareholders during the twelve months preceding this policy's inception date; (ii) the reports filed with the Securities and Exchange Commission on Form 10-K during the twelve months preceding this policy's inception date; (iii) the reports filed with the Securities and Exchange Commission on Form 10-Q during the twelve months preceding this policy's inception date; (iv) the proxy statements and (if different) definitive proxy statements filed with the Securities and Exchange Commission during the twelve months preceding this policy's inception date; (v) all reports filed with the Securities and Exchange Commission on Form 8-K during the twelve months preceding this policy's inception date; and (vi) all reports filed with the Securities and Exchange Commission on Schedule 13D, with respect to any equity securities of such **Organization**, during the twelve months preceding this policy's inception date. All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this coverage section.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*

Authorized Representative



**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: August 31, 2007

Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

---

### AMEND REPRESENTATIONS AND SEVERABILITY WITH ABSOLUTE NON-RESCINDABLE COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)   Subsection 24., Representations and Severability, of this coverage section is deleted and replaced with the following:

    (a)   The **Insureds** acknowledge and agree that, in issuing this coverage section, the Company has relied on all statements, representations and information contained in the **Application** as being true and accurate. All such statements, representations and information are the basis for this coverage section and are to be considered incorporated into this coverage section.

    (b)   With respect to any statements, representations and information contained in the **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**. However, in the event that any of the statements, representations or information is not truthfully and accurately disclosed in the **Application**, no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any untruthful or inaccurate statements, representations or information under:

        (i)   Insuring Clause 1 of this coverage section, with respect to any **Insured Person** who knew of such untruthful or inaccurate statements, representations or information (whether or not such individual knew of such untruthful or inaccurate statements, representations or information in the **Application**);

        (ii)   Insuring Clause 2 of this coverage section, with respect to any **Organization** to the extent it indemnifies any **Insured Person** in subsection (i) above; and

        (iii)   Insuring Clause 3 or 4 of this coverage section, with respect to any **Organization** if any past or present chief executive officer or chief financial officer of the **Parent Organization** knew of such untruthful or inaccurate statements, representations or information (whether or not such individual knew of such untruthful or inaccurate statements, representations or information in the **Application**);

14-02-12147 (06/2006)          Page 1

(2)   The following Subsection is added to this coverage section as follows:

### Non-Rescindable

The Company shall not be entitled under any circumstances to rescind this coverage section with respect to any **Insured**.

Nothing contained herein shall limit or waive any other rights or remedies available to the Company.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative



Case 08-13141-BLS   Doc 13769-4   Filed 10/25/13   Page 43 of 83

**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability
Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: August 31, 2007

Federal Insurance Company

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

## EXTRADITION COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection 5., Definitions, of this coverage section is amended as follows:

(1)     The term **Claim** is amended to add the following:

**Claim**, when used in reference to the coverage provided by Insuring Clause 1 or 2, also means:

    (i)     an official request for **Extradition** (as defined below) of an **Insured Person**; or
    (ii)    the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

(2)     The term **Defense Costs** is amended to add the following:

**Defense Costs** also means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorney's fees and experts' fees) and expenses incurred through the use of legal counsel and consented to by the Company resulting from an **Insured Person** lawfully:

    (i)     opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of such **Insured Person**; or
    (ii)    appealing any order or other grant of **Extradition** of such **Insured Person**.

(3)     For purposes of this endorsement, the term **Extradition** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Robert Hamburger

Authorized Representative



**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company: Federal Insurance Company

Endorsement No. 8

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

## ILLINOIS AMENDATORY ENDORSEMENT
## TO THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABIITY COVERAGE SECTION

In consideration of the premium charged, it is agreed that:

1. The definition of "Defense Costs" in Subsection 5. Definitions of the Executive Liability and Entity Securities Liability Coverage Section is amended to add the following at the end of such definition:

   "Defense Costs do not include remuneration, salaries, wages, fees, expenses, overhead, or benefit expenses or other fees or charges of the Company"

2. The definition of "Loss" in Subsection 5. Definitions of the Executive Liability and Entity Securities Liability Coverage Section is amended so that the third parenthetical phrase in the first paragraph (a) thereof reads as follows:

   "(including punitive or exemplary damages, if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to the damages; provided further, however, that under Illinois law punitive damages are insurable only if such damages are based on vicarious liability for another's acts or omissions)"

3. The definition of "Loss" in Subsection 5. Definitions of the Executive Liability and Entity Securities Liability Coverage Section is further amended by deleting the reference to pre-judgment or post-judgment interest.

4. Subsection 12. Extended Reporting Period of the Executive Liability and Entity Securities Liability Coverage Section is amended by deleting the first sentence thereof and replacing it with the following:

   "If the Company or the Parent Organization terminate or do not renew this coverage section, the Parent Organization and the Insured Persons shall have the right, upon payment of the additional premium set forth in Item 6(B) of the Declarations for this coverage section, to an extension of the coverage granted by this coverage section for Claims that are (i) first made during the period set forth in Item 6(A) of the Declarations for this coverage section (the "Extended Reporting Period") following the effective date of termination or non-renewal, and (ii) reported to the Company in

writing within the time provided in Subsection 15(a) of this coverage section, but only to the extent such Claims are for Wrongful Acts committed, attempted, or allegedly committed or attempted before the earlier of the effective date of termination or non-renewal or the date of the first merger, consolidation or acquisition event described in Subsection 21 below. Such Extended Reporting Period shall be for a period of one (1) year or such other time period as agreed upon by the Company and the Parent Organization and the Insured Persons."

5.      Subsection 12. Extended Reporting Period of the Executive Liability and Entity Securities Liability Coverage Section is further amended by adding the following at the end of such Subsection:

"An Extended Reporting Period will not take effect until the premium for the Extended Reporting Period coverage is paid promptly when due.  For the purposes of this Subsection 12, the policy shall not be deemed issued until the initial premium for the policy is paid.  In the event that such premium is not paid, the Parent Organization and the Insured shall have no right to purchase such extension of coverage."

6.      Subsection 18. Other Insurance of the Executive Liability and Entity Securities Liability Coverage Section is amended to read as follows:

"If any Loss under this coverage section is insured under any other valid insurance policy (ies) subject to the same terms, conditions and provisions as the insurance provided by this coverage section, prior or current, then this coverage section shall cover its share of such Loss, subject to its limitations, conditions, provisions and other terms, in an amount equal to the proportion that the then-available Limit of Liability provided in this coverage section bears to the aggregate of all limits of liability of all insurance covering such Loss, whether such other policy(ies) is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy(ies) is written only as specific excess insurance over the Limits of Liability provided in this coverage section.  If any Loss under this coverage section is insured under any valid insurance policy(ies) other than as described above, then this coverage section shall cover such Loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such Loss is in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section.  Any payment by Insureds of a retention or deductible under such other insurance shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section."

The policy is amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Illinois.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative



**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: August 31, 2007

Company:  Federal Insurance Company

Endorsement/Rider No. 9

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

## AMEND ITEM 5 OF THE DECLARATIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that Item 5 of the Declarations for this coverage section is amended to include the following organization(s):

Fairfax Media, Inc.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Robert Hamburger

Authorized Representative





Case 08-13141-BLS   Doc 13769-4   Filed 10/25/13   Page 48 of 83

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company: Federal Insurance Company

Endorsement No. 10

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

AMEND DEFINITION OF SECURITYHOLDER DERIVATIVE DEMAND ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of "**Securityholder Derivative Demand**" in Subsection 5. Definitions of this coverage section is amended to read in its entirety as follows:

**Securityholder Derivative Demand** means any written demand, by a securityholder of an **Organization**, upon the Board of Directors or Board of **Managers** of such **Organization** to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**, provided such demand is made and maintained without any active assistance or participation of, or solicitation by, any **Insured Person**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative

14-02-8559 (6/2003)                    Page I



**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: August 31, 2007

Federal Insurance Company

Endorsement/Rider No. 11

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

## AMEND EXCLUSION 6(C) ENDORSEMENT

In consideration of the premium charged, it is agreed that paragraph (c) of Subsection 6. Exclusions Applicable to All Insuring Clauses of this coverage section is amended by adding the following new subparagraph (v):

(v)   a **Claim** brought against **Insured Persons** of any **Organization** by a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, supervise, manage or liquidate the **Parent Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Robert Hamburger

Authorized Representative

14-02-8560 (05/2006) rev          Page 1



**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company: Federal Insurance Company

Endorsement No. 12

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

---

### AMEND REPORTING AND NOTICE (a)(i) ENDORSEMENT

In consideration of the premium charged, it is agreed that clause (a)(i) of Subsection 15 Reporting and Notice of this coverage section is amended to read in its entirety as follows:

(i)   ninety (90) days after the date on which any **Organization's** chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson first becomes aware that the **Claim** has been made;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative



**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company:  Federal Insurance Company

Endorsement No. 13

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

## AMEND EXCLUSION 6(E) ENDORSEMENT

In consideration of the premium charged, it is agreed that paragraph (e) of Subsection 6. Exclusions Applicable to All Insuring Clauses of this coverage section is amended to read in its entirety as follows:

(e)      based upon, arising from, or in consequence of bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 6(e) shall not apply to:

       (i)      mental anguish or emotional distress for which a claimant seeks compensation in an employment **Claim**; or

       (ii)      **Loss** which is on account of a **Securities Claim** brought by a securityholder of the **Organization** in his capacity as such, whether in his own right or on behalf of the **Organization**, provided that such **Securities Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative



**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company:  Federal Insurance Company

Endorsement No. 14

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

---

## AMEND SUBSECTION 15(b) REPORTING AND NOTICE ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (b) of Subsection 15 Reporting and Notice of this coverage section is amended to read in its entirety as follows:

(b)    If during the **Policy Period** an **Insured**:

    (i)    becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company;

    (ii)    receives a written request to toll or waive a statute of limitations applicable to **Wrongful Acts** committed, attempted, or allegedly committed or attempted before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Acts** to the Company; or

    (iii)    gives written notice to the Company of a **Securityholder Derivative Demand**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above, from the **Wrongful Acts** referred to in (ii) above, or from the **Securityholder Derivative Demand** referred to in (iii) above, shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i), (ii) or (iii) above was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company as set forth in Subsection 15(a)(i) above.  With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

Authorized Representative



**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: August 31, 2007

Federal Insurance Company

Endorsement/Rider No. 15

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

## AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged, it is agreed that sections (1) and (2) of the definition of **Claim** as set forth in Subsection 5 of this coverage section are deleted and replaced with the following:

(1)    when used in reference to the coverage provided by Insuring Clause 1 or 2:

   (a)    a written demand for monetary damages or non-monetary relief;

   (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

   (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document;

   (d)    a criminal proceeding commenced by the return of an indictment; or

   (e)    an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

   against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom; or

   (f)    a civil, criminal, administrative or regulatory investigation of an **Insured Person** for a **Wrongful Act**, where:

      (i)    such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in paragraph (b) (c) or (d) above may be commenced; or

      (ii)    in the case of an investigation by the SEC or a similar state or foreign government authority, such **Insured Person** is served with a subpoena by such investigating authority.

(2)    when used in reference to the coverage provided by Insuring Clause 3:

   (a)    a written demand for monetary damages or non-monetary relief;

   (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**;

(d)     a criminal proceeding commenced by the return of an indictment; or

(e)     an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Robert Hamburger

_____
Authorized Representative



**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section
(Federal & Vigilant)

Effective date of
this endorsement/rider: August 31, 2007

Federal Insurance Company

Endorsement/Rider No. 17

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

AMEND LOSS DEFINITION AND CONDUCT EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The definition of **Loss** in Subsection 5 Definitions of this coverage section is amended by adding the following:

**Loss** also does not include disgorgement by any **Insured** or any amount reimbursed by an **Insured Person**
pursuant to Section 304 of the Sarbanes-Oxley Act of 2002.

(2)     Subsection 7 Exclusions Applicable to Insuring Clauses 1 and 2 Only of this coverage section is deleted and
replaced with the following:

7.      The Company shall not be liable under Insuring Clause 1 or 2 for **Loss** on account of any **Claim**
made against any **Insured Person**:

(a)     for an accounting of profits made from the purchase or sale by such **Insured Person** of
securities of the **Organization** within the meaning of Section 16(b) of the Securities
Exchange Act of 1934, any amendments thereto, or any similar provision of any federal,
state, or local statutory law or common law anywhere in the world; or

(b)     based upon, arising from, or in consequence of any deliberately fraudulent act or omission or
any willful violation of any statute or regulation by such **Insured Person**, if a judgment or
other final adjudication adverse to such **Insured Person** establishes such a deliberately
fraudulent act or omission or willful violation; or

(c)     based upon, arising from, or in consequence of such **Insured Person** having gained any
profit, remuneration or other advantage to which such **Insured Person** was not legally
entitled, if a judgment or other final adjudication adverse to such **Insured Person** establishes
the gaining of such a profit, remuneration or advantage.

For purposes of paragraphs 7(b) and 7(c) above:

(i)     If an **Insured Person** pleads guilty or no contest or nolo contendere or enters any similar
plea in a criminal proceeding, the elements of each of the offenses to which such plea relates
shall, as of the date of such plea, be deemed to have been established by a final
adjudication; and

(ii)    If, by written agreement or consent order with any federal or state prosecutorial authority or
regulatory agency, an **Insured Person** agrees to facts, charges or allegations of conduct set
forth in paragraph 7(b) and 7(c) above, then the facts, charges or allegations to which such

> > **Insured Person** has agreed in such written agreement or consent order shall, as of the date of the agreement, be deemed to have been established by a final adjudication.
>
> > Notwithstanding the foregoing, for the purposes of this subsection (ii), a final adjudication shall not include any facts, charges, or allegations to which the **Insured Person** has not agreed in the written agreement or consent order or to which the **Insured Person** has expressly indicated neither agreement nor disagreement in such written agreement or consent order.

(3)   Subsection 8 Exclusions Applicable to Insuring Clause 3 Only of this coverage section is deleted and replaced with the following:

> 8.   The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Securities Claim** made against any **Organization**:
>
> > (a)   based upon, arising from or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by an **Organization** or by any past, present or future chief financial officer, in-house general counsel, president, chief executive officer or chairperson of an **Organization**, if a judgment or other final adjudication adverse to such **Insureds** establishes such a deliberately fraudulent act or omission or willful violation; or
> >
> > (b)   based upon, arising from or in consequence of such **Organization** having gained in fact any profit, remuneration or other advantage to which such **Organization** was not legally entitled; or
> >
> > (c)   for any actual or alleged liability of an **Organization** under any contract or agreement that relates to the purchase, sale, or offer to purchase or sell any securities; provided that this Exclusion 8(c) shall not apply to liability that would have attached to such **Organization** in the absence of such contract or agreement.
>
> For purposes of paragraph 8(a) above:
>
> > (i)   If any **Insured** referenced in 8(a) above pleads guilty or no contest or nolo contendere or enters any similar plea in a criminal proceeding, the elements of each of the offenses to which such plea relates shall, as of the date of such plea, be deemed to have been established by a final adjudication; and
> >
> > (ii)   If, by written agreement or consent order with any federal or state prosecutorial authority or regulatory agency, any **Insured** referenced in 8(a) above agrees to facts, charges or allegations of conduct set forth in paragraph 8(a) above, then the facts, charges or allegations to which such **Insured** has agreed in such written agreement or consent order shall, as of the date of the agreement, be deemed to have been established by a final adjudication.
> >
> > Notwithstanding the foregoing, for the purposes of this subsection (ii), a final adjudication shall not include any facts, charges, or allegations to which such **Insured** has not agreed in the written agreement or consent order or to which such **Insured** has expressly indicated neither agreement nor disagreement in such written agreement or consent order.



The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Robert Hamburger

Authorized Representative



**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007                Company: Federal Insurance Company

                                                 Endorsement No. 18

                                                 To be attached to and
                                                 form a part of Policy No. 8130-1880

Issued to:  Tribune Company

---

## AMEND PAYMENT OF LOSS ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection 19 Payment of Loss is deleted and replaced with the following:

(1)   Whenever payment of **Loss** is due under this coverage section the Company shall:

    (a)   first pay such **Loss** for which coverage is provided under Insuring Clause 1 of this coverage section; then

    (b)   to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such **Loss** for which coverage is provided under any other Insuring Clause of this coverage section; provided, however, that the Company shall withhold payment of such **Loss** for which coverage is provided under Insuring Clause 2 or 3 of this coverage section if, before making such payment, the Company receives a written request signed by the Chief Executive Officer of the **Parent Organization** requesting that the payment be withheld.

If the Company withholds payment pursuant to a written request as described in (b) above, the Company shall thereafter release such payment when the Chief Executive Officer of the **Parent Organization**, in a subsequent written request, requests that the payment be released either to an **Organization** (for **Loss** covered under Insuring Clause 2 or 3 of this coverage section) or to an **Insured Person** (for **Loss** covered under Insuring Clause 1 of this coverage section).

(2)   Nothing in this endorsement shall be construed to increase the Limit of Liability of the Company under this coverage section. The order of payment described in this endorsement shall be applicable notwithstanding any filing of a bankruptcy petition by the **Organization**; provided, however, that in the event of bankruptcy of the **Organization**, nothing in this endorsement shall be construed to require the Company to (i) make or withhold any payment in the absence of any necessary authorization by the bankruptcy court or (ii) in any way violate applicable bankruptcy law or an order of the bankruptcy court.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

Authorized Representative



**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section
(Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company: Federal Insurance Company

Endorsement No. 19

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

---

### AMEND ALLOCATION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Paragraph (a) (ii) of Subsection 17. Allocation of this coverage section is amended to read in its entirety
as follows:

(ii)    The portion, if any, of such amount that is in part covered and in part not covered under
Insuring Clause 1 or 3 shall be allocated between covered **Loss** and non-covered loss based
on the relative legal exposures of the **Insureds** to covered and non-covered matters and, in
the event of a settlement in such **Securities Claim**, based also on the relative benefits to the
**Insureds** from settlement of the covered matters and from settlement of the non-covered
matters; provided that the amount so allocated to covered **Loss** under Insuring Clause 3 shall
be subject to the Retention and Coinsurance Percentage set forth in Items 4(C) and 3(A) of
the Declarations for this coverage section, respectively.

(2)    Paragraph (b) of Subsection 17. Allocation of this coverage section is amended to read in its entirety as
follows:

(b)    If in any **Claim** other than a **Securities Claim** the **Insured Persons** incur both **Loss**
that is covered under this coverage section and loss that is not covered under this
coverage section, either because such **Claim** includes both covered and non-covered
matters or because such **Claim** is made against both **Insured Persons** and others
(including the **Organization**), the **Insureds** and the Company shall allocate such
amount between covered **Loss** and non-covered loss based on the relative legal
exposures of the parties to covered and non-covered matters and, in the event
of a settlement in such **Claim**, based also on the relative benefits to the parties from
such settlement. The Company shall not be liable under this coverage section for the
portion of such amount allocated to non-covered loss.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and
conditions of coverage.

QTRIBUNE12 (12/2004)                Page 1

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

Authorized Representative



## ENDORSEMENT

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company:  Federal Insurance Company

Endorsement No. 20

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

### AMEND POLLUTION EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Paragraph (d) of Subsection 6. Exclusions Applicable to All Insuring Clauses of this coverage section is amended to read in its entirety as follows:

(d)    based upon, arising from, or in consequence of:

(1)    any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

(2)    any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request.

including but not limited to any **Claim** for financial loss to the **Organization**, its securityholders or its creditors based upon, arising from or in consequence of any matter described in clause (1) or clause (2) of this Exclusion 6(d). However, this Exclusion 6(d) shall not apply to **Loss** (i) which is on account of any **Securities Claim** brought by any securityholder of the **Organization** in his capacity as such, whether in his own right or on behalf of the **Organization**, provided that such **Securities Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured**, and (ii) for which the **Organization** either is not legally permitted, or fails or refuses by reason of **Financial Impairment**, to indemnify the **Insured Person(s)**.

(2)    Section (1) of this endorsement shall apply, and Exclusion 6(d) of this coverage section shall be deemed amended as provided in section (1) of this endorsement, only with respect to **Claims** first made in fact during the **Policy Period**. Section (1) of this endorsement shall not apply, and Exclusion 6(d) of this coverage section shall not be deemed amended as provided in section (1) of this endorsement, with respect to any other **Claim** including, but not limited to, any **Claim** first made in fact after the **Policy Period** but considered pursuant to Subsection 15(b) of this coverage section to have been made during the **Policy Period** because it arises from circumstances or a tolling or waiver request or a derivative demand noticed to the Company during the **Policy Period**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

Authorized Representative



**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section
(Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company: Federal Insurance Company

Endorsement No. 21

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

## AMEND "SECURITIES CLAIM" DEFINITION ENDORSEMENT

In consideration of the premium charged, it is agreed that subpart (b)(i) of the definition of **"Securities Claim"** in
subsection 5 of this coverage section is amended to read in its entirety as follows:

   (i)     violated a federal, state, local or foreign securities law (whether statutory or common law) or a rule or
          regulation promulgated under any such securities law; or

The title and any headings in this endorsement are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative



**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company: Federal Insurance Company

Endorsement No. 22

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

---

OUTSIDE DIRECTORSHIP LIABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Solely for purposes of the coverage provided under Insuring Clause 1 and Insuring Clause 2 of this coverage section, the definition of "**Insured Capacity**" in Subsection 5. Definitions is amended to read in its entirety as follows:

"**Insured Capacity** means:

(a)     a position as a duly elected or appointed director, officer or **Manager**, or as the in-house general counsel, of any **Organization** chartered in the United States of America;

(b)     a position equivalent to one of the positions described in (a) above in an **Organization** that is chartered in a jurisdiction other than the United States of America;

(c)     an **Outside Directorship** held by a duly elected or appointed director, officer or **Manager** of an **Organization** or other employee of an **Organization**; or

(d)     solely with respect to **Securities Claims**, a position as an employee of an **Organization**.

Except as specifically provided in part (c) of this definition, **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization."

For purposes of any coverage that may be provided under Insuring Clause 3 or Insuring Clause 4 of this coverage section, the definition of "**Insured Capacity**" in Subsection 5. Definitions shall remain unchanged.

(2)     "**For-Profit Outside Entity**" means an entity or organization that (i) is not an **Organization** and (ii) is not a **Non-Profit Outside Entity**.

(3)     **"Non-Profit Outside Entity"** means a non-profit corporation, community chest, fund or foundation that is (i) not an **Organization** and (ii) is exempt from federal income tax pursuant to Section 501(c)(3) of the U.S. Internal Revenue Code of 1986, as amended.

(4)     "**Outside Directorship**" means a position held by an **Insured Person**, with the knowledge and consent of the **Organization** or at the request of the **Organization**, as a director, officer, trustee, governor or equivalent executive of an **Outside Entity**.

(5)     **"Outside Entity"** means any **Non-Profit Outside Entity**, **Private For-Profit Outside Entity** or **Public For-Profit Outside Entity**; provided, however, that **Outside Entity** shall not include:

    (a)     any financial institution, including but not limited to any bank, savings and loan company, trust company, credit union, investment company, investment banker or advisor, securities underwriter or analyst, securities fund, securities broker or dealer, mutual fund, pension fund, stock broker, insurance company, insurance agent or broker, credit card company or any other similar enterprise; or

    (b)     any governmental entity, including but not limited to any federal, state or local governmental, quasi-governmental, regulatory, self-regulatory or supervisory agency or any entity created by any federal, state or local statute, rule, regulation, ordinance, directive or order.

(6)     "**Private For-Profit Outside Entity**" means a **For-Profit Outside Entity** whose securities are not traded on a domestic or foreign exchange.

(7)     "**Public For-Profit Outside Entity**" means a **For-Profit Outside Entity** whose securities are traded on a domestic or foreign exchange and whose market capitalization does not exceed one billion dollars ($1,000,000,000).

(8)     The Company shall not be liable for **Loss** on account of any **Claim** against an **Insured Person** for **Wrongful Acts** of such **Insured Person** in an **Outside Directorship**, if such **Claim** is brought or maintained by or on behalf of (i) an **Outside Entity** or (ii) any director, officer, trustee, governor or equivalent executive of an **Outside Entity** in any capacity; this exclusion shall not, however, apply to:

    (a)     a **Claim** brought or maintained derivatively on behalf of an **Outside Entity** by one or more securityholders of the **Outside Entity** who are not directors, officers, trustees, governors or equivalent executives of the **Outside Entity**, provided that such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any director, officer, trustee, governor or equivalent executive of the **Outside Entity**; or

    (b)     an employment **Claim** brought or maintained by or on behalf of a director, officer, trustee, governor or equivalent executive of an **Outside Entity** who is not an **Insured Person**.

(9)     Notwithstanding anything in Endorsement No. 12 (the "Amend Pollution Exclusion Endorsement") to this coverage section, with respect to any **Claim** against an **Insured Person** for **Wrongful Acts** of such **Insured Person** in an **Outside Directorship**, Exclusion 6(d) of this coverage section is amended to read in its entirety as follows:

    "(d)    based upon, arising from, or in consequence of:

        (i)     any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or



(ii)     any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

including but not limited to any **Claim** for financial loss to the **Outside Entity** or any securityholder, creditor or member of the **Outside Entity** based upon, arising from, or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 6(d)."

(10)     Exclusion 6(g) of this coverage section is amended to read in its entirety as follows:

"(g)     for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor or employee of any entity other than the **Organization**. This Exclusion 6(g) shall not apply to **Claims** for **Wrongful Acts** of an **Insured Person** in an **Outside Directorship** but shall apply to any **Claim**, or portion thereof, that is for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insured Person** before beginning to serve in the **Outside Directorship** or after ceasing to serve in the **Outside Directorship**."

(11)     Exclusion 7(a) of this coverage section is amended to read in its entirety as follows:

"(a)     for an accounting of profits made from the purchase or sale by such **Insured Person** of securities of the **Organization** or securities of an **Outside Entity**, within the meaning of Section 16(b) of the Securities Exchange Act of 1934, any amendments thereto, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world."

(12)     Subsection 18. Other Insurance of this coverage section, as amended by Endorsement No. 25 (the Illinois Amendatory Endorsement) to this coverage section, is further amended by adding the following:

"With respect to **Loss** resulting from a **Claim** against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Directorship**, coverage for any such **Loss** under this coverage section shall also be specifically excess of any indemnification (other than indemnification by the **Organization**) that is available to such **Insured Person** by reason of his or her service in such **Outside Directorship**, including indemnification available from or provided by the **Outside Entity**. The **Insureds** agree that they will use their best efforts promptly to enforce any right of an **Insured Person** to obtain indemnification from an **Outside Entity** or any other organization."

(13)     Solely with respect to **Loss** resulting from a **Claim** against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Directorship** with a **Non-Profit Outside Entity**, Item 4 of the Declarations of this coverage section is amended to read in its entirety as follows:

Item 4: Retention

(A) Insuring Clause 1:                          None

(B) Insuring Clause 2 (all **Claims**):          $25,000,000.00

(14)     Nothing in this endorsement is intended, nor shall anything herein be construed, to increase any of the Company's Limits of Liability shown in Item 2 of the Declarations for this coverage section.

(15)     If the Company or any of its subsidiaries or affiliated companies makes payment under another policy, or under another coverage section of this policy, on account of a **Claim** that (i) is also covered under this coverage section and that (ii) is made against an **Insured Person** for his or

her **Wrongful Acts** in an **Outside Directorship**, then this coverage section's Limit of Liability with respect to that **Claim** (as set forth in Item 2(A) of the Declarations for this coverage section) shall be reduced by the amount of the payment so made under such other policy or other coverage section.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative



**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section
(Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company:  Federal Insurance Company

Endorsement No. 23

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

## AMEND DEFINITION OF LOSS ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Loss** as defined in Subsection 5 Definitions of this
coverage section is amended to read in its entirety as follows:

**Loss** means:

(a)    the amount that any **Insured Person** (for purposes of Insuring Clauses 1 and 2) or the
        **Organization** (for purposes of Insuring Clause 3) becomes legally obligated to pay on
        account of any covered **Claim**, including but not limited to damages (including punitive or
        exemplary damages, if and to the extent that such punitive or exemplary damages are
        insurable under the law of the jurisdiction most favorable to the insurability of such
        damages provided such jurisdiction has a substantial relationship to the relevant
        **Insureds**, to the Company, or to the **Claim** giving rise to the damages), judgments,
        settlements, pre-judgment and post-judgment interest and **Defense Costs**; or

(b)    for purposes of Insuring Clause 4, covered **Investigative Costs**.

**Loss** does not include:

(a)    any amount not indemnified by the **Organization** for which an **Insured Person** is
        absolved from payment by reason of any covenant, agreement or court order;

(b)    any costs incurred by the **Organization** to comply with any order for injunctive or other
        non-monetary relief, or to comply with an agreement to provide such relief, provided that
        this paragraph (b) shall not apply to **Defense Costs**;

(c)    any amount incurred by an **Insured** in the defense or investigation of any action,
        proceeding or demand that is not then a **Claim** even if (i) such amount also benefits the
        defense of a covered **Claim**, or (ii) such action, proceeding or demand subsequently
        gives rise to a **Claim**;

(d)    taxes, fines or penalties, or the multiple portion of any multiplied damage award, except
        as provided above with respect to punitive or exemplary damages;

(e) any amount not insurable under the law pursuant to which this coverage section is construed, except as provided above with respect to punitive or exemplary damages;

(f) any amount allocated to non-covered loss pursuant to Subsection 17 of this coverage section; or

(g) any amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets, provided that this paragraph (g) shall not apply to **Defense Costs**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative



**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company:  Federal Insurance Company

Endorsement No. 24

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

## PRIOR NOTICE EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion 6(a) is deleted and replaced with the following:

(a)    based upon, arising from, or in consequence of any circumstance if written notice of such circumstance has been given under any policy or coverage section of which this coverage section is a renewal or replacement and if such prior policy or coverage section affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Loss**, in whole or in part, as a result of such notice;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative

 Case 08-13141-BLS   Doc 13769-4   Filed 10/25/13   Page 74 of 83

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company: Federal Insurance Company

Endorsement No. 25

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

## MEDIA E&O EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1) No coverage will be available under this coverage section for **Loss** on account of any **Claim**, other than a **Securities Claim**, that arises out of any **Newsmedia Activities** of an **Insured**.

(2) For purposes of this Endorsement, "**Newsmedia Activities**" means, in connection with the **Covered Media**, any **Wrongful Act** arising out of or committed or allegedly committed in the course of:

    (a) The gathering, recording or collection of **Matter** for inclusion in the **Covered Media**, including but not limited to any actual or alleged:

        (i) invasion or infringement of the right of privacy or publicity, including the torts of intrusion upon seclusion, publication of private facts, false light, or misappropriation of name or likeness;

        (ii) outrage, infliction of emotional distress or prima facie tort;

        (iii) false arrest, detention or imprisonment;

        (iv) trespass, wrongful entry or eviction, eavesdropping, or other invasion of the right of private occupancy; or

        (v) copyright infringement, plagiarism, or misappropriation of property rights, information or ideas; or

    (b) the publication, dissemination or release of Matter in the Covered Media, by any form, method or medium of communication, including but not limited to any actual or alleged:

        (i) libel, slander or any other form of defamation or harm to the character or reputation of any person or entity;

QTRIBUNE8 (12/2004)          Page 1

(ii) invasion or infringement of the right of privacy or publicity, including the torts of intrusion upon seclusion, publication of private facts, false light, or misappropriation of name or likeliness;

(iii) outrage, infliction of emotional distress or prima facie tort;

(iv) product disparagement, trade libel, dilution or infringement of title, slogan, trademark, trade name, service mark or service name;

(v) copyright infringement, plagiarism, or misappropriation of property rights, information or ideas; or

(vi) negligence in connection with the content of **Matter** published, disseminated or released by the **Insured**, including but not limited to a claim alleging harm to any person or entity who acted or failed to act in reliance upon the content of such **Matter**; or

(c) the publication, dissemination or release of **Matter** by any party with whom the **Insured** has entered into a written, oral or implied-in-fact indemnification or hold harmless agreement regarding claims arising out of the publication, dissemination or release of such **Matter**.

(3) For purposes of this Endorsement, **"Covered Media"** means any publication, program, broadcast or cable station or other medium of communications owned or controlled by any **Organization**.

(4) For purposes of this Endorsement, **"Matter"** means news, information, or any other communication of any kind whatsoever, regardless of the nature or form of such **Matter** or the medium by which such **Matter** is communicated, including but not limited to language, data, facts, fiction, computer coding, music, photographs, images, advertisements, artistic expression or visual or graphical materials.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

_____

Authorized Representative



**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007

Company: Federal Insurance Company

Endorsement No. 26

To be attached to and
form a part of Policy No. 8130-1880

Issued to: Tribune Company

---

### EFFECT OF BANKRUPTCY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)   Bankruptcy or insolvency of an **Insured** shall neither relieve the Company of its obligations nor deprive the Company of its rights or defenses under this coverage section.

(2)   It is understood that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. If a liquidation or reorganization proceeding is commenced by or against the **Organization** pursuant to the United States Bankruptcy Code, as amended, or any similar state or local law, the **Insureds** hereby (a) waive and release any automatic stay or injunction which may apply in such proceeding to this coverage section or its proceeds under such Bankruptcy Code or law, and (b) agree not to oppose or object to any efforts by the Company or any **Insureds** to obtain relief from any such stay or injunction.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: October 29, 2007                Company:  Federal Insurance Company

Endorsement No. 27

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

_____

ADD ORGANIZATION(S) WITH PENDING OR PRIOR DATE(S) ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Item 5 of the Declarations for this coverage section is amended to include each Entity listed in the following Schedule as an **Organization**:

**SCHEDULE**

| Entity | Pending or Prior Date |
|--------|----------------------|
| Metromix LLC | October 29, 2007 |

(2)     Solely with respect to each **Organization** listed in the Schedule preceding this paragraph and the **Insured Persons** of each such **Organization**, the Pending or Prior Date in Item 7 of the Declarations for this coverage section is deleted and replaced with the Pending or Prior Date that appears opposite such **Organization's** name in the Schedule.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

14-02-9144 (2/2004)            Page 1

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: December 20, 2007

Federal Insurance Company

Endorsement/Rider No. 28

To be attached to and
form a part of Policy No. 8130-1880

Issued to:  Tribune Company

---

EXTENDED REPORTING PERIOD ("RUN-OFF" RESULTING FROM ACQUISITION OR BANKRUPTCY REORGANIZATION) ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Solely for the purposes of this endorsement, the following definitions are added to this coverage section:

"**Run-Off Period**" means the period commencing on 12:01 a.m. (Local time at the address shown in Item 1 of the Declarations) on 12/20/2007 to the Expiration Date of this Policy stated in Item 2 of the Declarations of the General Terms and Conditions Section of this Policy (as amended pursuant to paragraph (2) of this endorsement).

"**Acquirer**" means:

(a)     the organization with whom the **Parent Organization** merges or consolidates;

(b)     the person, entity, or organization or group of persons, entities or organizations or persons who have acquired securities or voting rights which result in ownership or voting control of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of or appoint directors or **Managers** of the **Parent Organization;**

(c)     the entity or organization that emerges from the finalization of any Bankruptcy Proceedings in the United States Bankruptcy Court involving the **Parent Organization**, including any entity or organization commonly referred to as a Reorganized Parent or Reorganized Debtor in any Joint Plan of Reorganization submitted in any bankruptcy court proceeding involving the **Parent Organization**; or

(d)     any entity or organization that assumes an obligation to defend, indemnify, reimburse, or limit the liability of any **Insured Person** pursuant to any Joint Plan of Reorganization (including any amendments, supplements or exhibits thereto) submitted in any bankruptcy court proceeding involving the **Parent Organization**, in the event such entity or organization is different from the entity or organization identified in (c) above.

(2)     Solely with respect to this coverage section, Item 2 of the Declarations of the General Terms and Conditions Section of this Policy is amended to read in its entirety as follows:

Q07-2200 (09/2007)                    Page 1

Item 2. **Policy Period:**      From    12:01 A.M. on 08/31/2007
                                To      12:01 A.M. on 12/20/2013
                                Local time at the address shown in Item 1.

(3)     It is expressly understood and agreed that the Limit of Liability set forth in Item 2(B) of the Declarations for this coverage section shall remain the Company's maximum aggregate Limit of Liability for all **Loss** on account of all **Claims** first made during the **Policy Period** specified in Item 2 of the Declarations of the General Terms and Conditions Section (as amended pursuant to paragraph (2) of this endorsement).

4)      No coverage will be available under this coverage section for **Loss** on account of any **Claim** based upon, arising from or in consequence of any **Wrongful Act** committed, attempted, or allegedly committed or attempted on or after the inception of the **Run-Off Period**. However, in the event of a **Loss** on account of any **Claim** that is based upon, arising from or in consequence of **Wrongful Acts** that are committed, attempted, or allegedly committed or attempted both prior to and on or after the inception of the **Run-Off Period**, this exclusion shall apply only to that portion of such **Loss** based upon, arising from or in consequence of **Wrongful Acts** committed, attempted, or allegedly committed or attempted on or after the inception of the **Run-Off Period**.

(5)     Insuring Clause 1. Executive Liability Coverage of this coverage section is amended to read in its entirety as follows:

        The Company shall pay, on behalf of each of the **Insured Persons**, **Loss** for which the **Insured Person** is not indemnified by the **Organization**, the **Acquirer** or other source and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period**, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** prior to the **Run-Off Period**, but only if such **Claim** is reported to the Company in the manner and within the time provided in Subsection 15 of this coverage section.

(6)     Insuring Clause 2. Executive Indemnification Coverage of this coverage section is amended to read in its entirety as follows:

        The Company shall pay, on behalf of the **Organization**, **Loss** for which the **Organization**, the **Acquirer** or other source grants indemnification to an **Insured Person**, as permitted or required by law, and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period**, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** prior to the **Run-Off Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

(7)     Insuring Clause 3. Entity Securities Coverage of this coverage section is amended to read in its entirety as follows:

        The Company shall pay, on behalf of the **Organization**, **Loss** which the **Organization** becomes legally obligated to pay on account of any **Securities Claim** first made against the **Organization** during the **Policy Period**, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Organization** or the **Insured Persons** prior to the **Run-Off Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

(8)     Insuring Clause 4. Securityholder Derivative Demand Coverage of this coverage section is amended to read in its entirety as follows:

The Company shall pay, on behalf of the **Organization**, **Investigative Costs** resulting from a **Securityholder Derivative Demand** first received by the **Organization** during the **Policy Period**, but only if such **Securityholder Derivative Demand** requests that a civil action be commenced against an **Insured Person** for a **Wrongful Act** committed, attempted, or allegedly committed by such **Insured Person** prior to the **Run-Off Period**, and is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

(9)    The *second* part (a) of the definition of **Loss** in Subsection 5., Definitions, of this coverage section is amended to read in its entirety as follows:

    (a)    any amount not indemnified by the **Organization**, the **Acquirer** or other source, for which an **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

(10)    Section 14., Presumptive Indemnification, of this coverage section is amended to read in its entirety as follows:

    14.    If the **Organization**, **Acquirer** and any other source obligated to provide such indemnification fail or refuse, other than for reason of **Financial Impairment**, to indemnify an **Insured Person** for **Loss**, or to advance **Defense Costs** on behalf of an **Insured Person**, to the fullest extent permitted by statutory or common law, then, notwithstanding any other conditions, provisions or terms of this coverage section to the contrary, any payment by the Company of such **Defense Costs** or other **Loss** shall be subject to:

        (i)    the applicable Insuring Clause 2 Retention set forth in Item 4 of the Declarations for this coverage section; and

        (ii)    the applicable Coinsurance Percentage set forth in Item 3 of the Declarations for this coverage section.

(11)    The **Insureds** shall have no right to purchase an extension of the coverage granted by this coverage section after the expiration of the **Policy Period** specified in Item 2 of the Declarations of the General Terms and Conditions Section (as amended pursuant to paragraph (2) of this endorsement).  Accordingly, Subsection 12 Extended Reporting Period of this coverage section is deleted; Items 6(A) and 6(B) of the Declarations for this coverage section are deleted; and all other references in this coverage section to an "Extended Reporting Period" are also deleted.

(12)    Subsection 21 of this coverage section is deleted.

(13)    Solely with respect to this coverage section, Subsection 11 of the General Terms and Conditions Section is amended to read in its entirety as follows:

    11.    This policy or any coverage section shall terminate at the earliest of the following times:

        (a)    twenty days after receipt by the **Parent Organization** of written notice of termination from the Company for non-payment of premium;

        (b)    upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations of these General Terms and Conditions (as amended pursuant to paragraph (2) of this endorsement); or

    The entire premium shall be deemed fully earned as of the inception of the **Run-Off Period**.  The Company will not be required to renew this policy upon its expiration.

(14)     In no event shall the Company be liable under this coverage section for **Loss** on account of any **Claim** for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Acquirer**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: August 31, 2007            Company:  Federal Insurance Company

                                             Endorsement No. 29

                                             To be attached to and
                                             form a part of Policy No. 8130-1880

Issued to:  Tribune Company

---

DELETE ENDORSEMENT(S)

In consideration of the premium charged, it is agreed that Endorsement Number(s) 16 is/are deleted.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-6365 (12/2001)            Page 1