IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY, *et al.*, | : | Case No. 08-13141 (KJC) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | Hearing Date: 11/12/13 at 10:00 a.m. |

**TRIAL BRIEF IN SUPPORT OF EVIDENTIARY HEARING ON THE MOTION OF THE LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR FOR RELIEF FROM THE PERMANENT INJUNCTION OF THE FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO GORDAN & CO., L.P. AND JPMORGAN CHASE BANK, N.A., AS AMENDED JUNE 18, 2012; AND DECLARATIONS OF KATHY GLOSTER AND BARRY S. GLASER IN SUPPORT THEREOF**

The Los Angeles County Treasurer and Tax Collector ("County"), by and through its undersigned counsel, hereby submits its *Trial Brief in Support of Evidentiary Hearing on the Motion of the Los Angeles County Treasurer and Tax Collector for Relief From the Permanent Injunction of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordan & Co., L.P. and JPMorgan Chase Bank, N.A., as Amended June 18, 2012* (the "Motion") [Docket No. 13545]. In support of this Trial Brief, the County respectfully represents, as follows:

I.

INTRODUCTION

On December 8, 2008, Tribune Company, *et al.,* (collectively, the "Debtors" or "Reorganized Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the

United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases were consolidated for procedural purposes and jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 43 and 2333]. On July 23, 2012, the Court entered an *Order Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angel Gordan & Co., L.P. and JPMorgan Chase Bank, N.A.* [Docket No. 12074].

On May 21, 2013, the County filed a *Motion of the Los Angeles County Treasurer and Tax Collector for Relief from the Permanent Injunction of the Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angel Gordan & Co., L.P. and JPMorgan Chase Bank, N.A., as Amended June 18, 2012* (the "Motion") [Docket No. 13545]. In the Motion, the County sought relief from the permanent injunction in order to permit the County to exercise any and all of its non-bankruptcy rights in and to certain parcels of real estate (the "Properties") owned by the Reorganized Debtors, including, but not limited to, proceeding to a tax sale of the Properties due to the Reorganized Debtors' failure to pay secured real property taxes.

On July 19, 2013, the Reorganized Debtors filed their *Objection to the Motion of the Los Angeles County Treasurer and Tax Collector for Relief from the Permanent Injunction of the Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angel Gordan & Co., L.P. and JPMorgan Chase Bank, N.A., as Amended June 18, 2012* (the "Objection") [Docket No. 13659]. The Reorganized Debtors argued that the Motion should be denied for three (3) reasons. First, the Reorganized Debtors asserted that

County did not possess an allowed secured claim against the Debtor, L.A. Times, as it failed to file a proof of claim in L.A. Times' bankruptcy case. Second, the Reorganized Debtors argued that even if the County could overcome that hurdle, its claim was an impermissible attempt to impose a penalty on L.A. Times for L.A. Times' inability to make a post-petition payment on account of pre-petition tax liability. Lastly, the Reorganized Debtors contended that the County had demonstrated no cause why it should be permitted relief from the discharge injunction as set forth under the Reorganized Debtors' *Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angel Gordan & Co., L.P. and JPMorgan Chase Bank, N.A., as Amended June 18, 2012* (the "Fourth Amended Plan").

On July 25, 2013, the County filed a *Reply In Support of Los Angeles County Treasurer and Tax Collector's Motion for Relief from the Permanent Injunction of Debtors' Plan of Reorganization* (the "Reply") [Docket No. 13662]. In the Reply, the County argued that even if the County did not file a proof of claim, which the County did not dispute, the County's lien survived and passed through the bankruptcy. *See e.g., Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct . 773, 116 L.Ed.2d 903 (1992) ("Unless avoided by the Court, a creditor's lien will pass through bankruptcy unaffected."); *In re Hamlet,* 322 F.3d 342, 350 (4th Cir. 2003) (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("liens pass through bankruptcy unaffected"); *In re MacKenzie,* 314 B.R. 277 (Bankr. D.N.H. 2004); *In re Strategic Labor, Inc.,* 467 B.R. 11 (Bankr.D.Mass. 2012). Moreover, the failure to file a claim does not extinguish a valid lien. *See Shelton v. Citi Mortgage, Inc. (In re Shelton),* 477 B.R. 749, 751 (8th Cir. BAP 2012) ("[t]he failure to file a timely claim, like the

failure to file a claim at all, does not constitute sufficient grounds for extinguishing a perfectly valid lien.").

On August 2, 2013, the Court held a hearing to consider the County's Motion. With regard to the issue of whether the County's lien survived and passed through the bankruptcy irrespective of whether the County filed a proof of claim, the Court determined that the County held a lien and thus, should be treated as a secured party. *See* Declaration of Barry S. Glaser (the "Glaser Decl."), Exhibit "A", Transcript, p. 37, lns. 14-18. The Reorganized Debtors argued, however, that the Court needed to decide the issue of whether the County was entitled to impose a post-petition alleged penalty of eighteen percent (18%) per annum on account of pre-petition tax claims pursuant to California Revenue and Taxation Code § 4103(a). This statute provides that:

> (1) Beginning July 1st of the year of the declaration of tax default, on the declared amount of defaulted taxes at the rate of 1½ percent a month to the time of redemption. If the last day of any month falls on a Saturday, Sunday, or legal holiday, the additional penalty of 1½ percent shall attach after the close of business on next business day.
>
> (2) Beginning July 1st of each subsequent year, on the unpaid taxes for which the property would have been declared in default if there had not been a previous declaration, 1½ percent a month to the time of redemption. If the last day of any month falls on Saturday, Sunday, or a legal holiday, the additional penalty of 1½ percent shall attach after 5 p.m. on the next business day. If the board of supervisors, by adoption of an ordinance or resolution, closes the county's offices for business prior to the time of delinquency on the "next business day" or for that whole day, that day shall be considered a legal holiday for purposes of this section.

California Revenue and Taxation Code § 4103(a).

Under California Revenue and Taxation Code § 4103(b), the "penalties" described in Section 4103(a) are deemed to be the "assessment of interest" with respect to a claim in a bankruptcy proceeding with respect to the redemption of that property, as follows:

> (b) For purposes of an administrative hearing or any claim in a bankruptcy proceeding pertaining to the property being redeemed, the assessment of penalties determined pursuant to subdivision (a) with respect to the redemption of that property constitutes the assessment of interest.

California Revenue and Taxation Code § 4103(b).

Accordingly, the Court held that it needed to determine whether the County's 18% per annum charge, which, according to the County, constituted "interest" under California Revenue and Taxation Code § 4103(b), was in fact a "penalty" or "interest", and scheduled an evidentiary trial on this matter. *See* Glaser Decl., Exhibit "A", p. 37, lns. 19-22.

As described herein, the County submits that the 18% per annum charge constitutes "interest" based upon the following grounds. First, 11 U.S.C. § 511 requires that the payment of interest on tax claims must be determined under non-bankruptcy law, or state law. Under state law, the County is entitled to charge 18% per annum on delinquent tax claims to the time of redemption. As set forth above, the California state legislature determined that in a bankruptcy proceeding, this 18% per annum charge constitutes the assessment of "interest".

Second, Section 506(b) of the Bankruptcy Code permits an oversecured creditor to obtain "reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose". In this case, there is no dispute that the County is an oversecured creditor. As described below in greater detail, the 18% per annum redemption interest is "reasonable" and not punitive by nature, and numerous courts which have considered whether statutory rates of interest constitute true interest or provide for a penalty have determined that statutory rates of

interest do not constitute a penalty. Accordingly, the County respectfully requests that the Court enter an Order requiring the Reorganized Debtors to pay eighteen percent (18%) per annum (or 1.5% per month) in redemption charges pursuant to California Revenue Taxation Code § 4103(a), which charges are characterized as the "assessment of interest" under RTC § 4103(b). The County further requests a determination by this Court confirming that the eighteen percent (18%) interest is a "reasonable" charge and is not punitive by nature.

## II.

## THE COUNTY'S SECURED TAX CLAIMS

The Debtors owe the County for secured ad valorem taxes that relate to thirteen (13) parcels located in Los Angeles County, California for the fiscal year 2008-2009 ("Secured Real Property Tax Claims"). The lien dates related to the Secured Real Property Tax Claims was January 1, 2008. In California, the basis for property taxes is the assessed value of the parcel on the lien date, namely, the January 1 preceding the fiscal year. The first installment for payment of the Secured Real Property Tax Claims was due November 1, 2008, and late penalties applied to the payment of the taxes after December 10, 2008. The taxes for the 2007 fiscal years on the thirteen (13) parcels were reassessed in 2008 due to a change in ownership of certain parcels. The Reorganized Debtors claim they paid the first installment of the tax obligations regarding the reassessments and failed to pay the second installment.

The Reorganized Debtors attempted to pay the principal tax amounts in December 2008, however, the Debtors' check was returned for insufficient funds. In February 2009, the Reorganized Debtors sent another check to the County for their principal tax amounts. Pursuant to the California Revenue and Taxation Code, the County applied the February 2009 payment from the Reorganized Debtors first to penalties and interest and then to principal. Since the

County applied the February 2009 payment to penalties and interest and then to principal, there remained unpaid principal of the Secured Real Property Tax Claims. When the second installment was paid in April 2009, the payment was applied to cure the outstanding balance of the prior installment, thus leaving an unpaid principal amount.

A breakdown of the amounts due with respect to each of the parcels was set forth on Exhibit "A" and attached to the Motion, the County's Reply in support of the Motion and updated in Los Angeles County's production of documents in response to the Debtors' discovery requests. In addition, attached hereto as Exhibit "A" to the Declaration of Kathy Gloster (the "Gloster Decl.") is a chart depicting the total amount of delinquent taxes owed on each of the thirteen (13) parcels representing the total sum of $263,979.30, which amount includes the principal taxes, interest and penalties, through November 30, 2013.

Lastly, the parcels became subject to the power-to-sell on July 1, 2009 and were recorded in a power-to-sell status on May 6, 2013.

## III.

## THE PAYMENT OF AD VALOREM REAL PROPERTY, TAXES, PENALTIES AND INTEREST UNDER CALIFORNIA LAW

In California, real property taxes for each tax year are payable in two (2) separate installments and there are two types of charges which are imposed by operation of law if property taxes are not paid on time. The first payment is due on November 1 and is not considered "delinquent" until 5:00 p.m. on December 10, resulting in approximately a forty (40) day grace period on behalf of the taxpayer, during which the applicable installment may be paid without penalty. The second installment is due on February 1 and is not considered delinquent until 5:00 p.m. on April 10, resulting in approximately a seventy (70) day grace period. If a

taxpayer's first installment is not paid by December 10, it is considered delinquent and a 10 percent (10%) delinquent penalty attaches. *See* RTC § 2617. Similarly, in the event a taxpayer's second installment is similarly not paid by April 10, it is similarly considered delinquent and a 10 percent (10%) delinquent penalty attaches. *See* RTC § 2618.

Pursuant to California law, California Revenue and Taxation Code §4102 requires payment of "delinquent" penalties and "redemption" penalties in order to redeem tax defaulted property. Thus, beginning July 1 of the year of the declaration of tax default, the County also assesses an 18 percent (18%) per annum (1.5% per month) redemption penalty on the delinquent property tax claim. *See* RTC § 4103(a). However, it is clear that the 10% delinquent penalty is assessed separately from the 18% redemption penalty because the County assesses a one-time 10% tax solely on the "principal" amount of unpaid taxes in accordance with RTC §§ 2617 and 2618 and the 18% redemption penalty under RTC § 4103(a) is also applied solely to the principal amounts owed. In other words, redemption penalties are not charged against delinquency penalties, and do not constitute or consist of compounded interest charged to the taxpayer. Thus, after the 10 percent (10%) charge on April 10, the Debtor did not incur any interest or charges until July 1st, when the 1.5 percent per month (1.5%) redemption penalty attaches resulting in an additional eighty-one (81) day grace period.

Moreover, the applicable lien date in California is the first day of January preceding the fiscal year for which the taxes are levied. *See* RTC § 2192. Thus, despite the fact that the tax bills may not have been generated until later in a specific year, the Debtors' tax liability for that particular year accrues on January 1 of that same year. Property tax collections are a primary source of funding for local governmental operations in California, including cities, counties, schools, community colleges, and many special districts. If property owners do not pay their

taxes timely, local government agencies must attempt to identify alternate sources of cash to meet current payment obligations. In many cases, operating cash is borrowed pending receipt of taxes and other revenues that ultimately fund the government.

Both the delinquency and redemption penalties constitute interest, which primarily serve to compensate for lost monetary value, to compensate local government for the cost of obtaining cash from alternative sources to fund operations that otherwise would be funded from property tax receipts, and for the additional administrative workload caused by the taxpayers' delinquencies (mostly in the areas of accounting and enforcement).

## IV.

## 11 U.S.C. § 511 REQUIRES THAT THE PAYMENT OF INTEREST ON TAX CLAIMS BE DETERMINED UNDER STATE LAW

In 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). One of the fundamental problems in bankruptcy had been the determination of interest rates on tax claims. Section 511 of the Bankruptcy Code was amended to provide for the rate of interest on tax claims, which shall be determined under "applicable nonbankruptcy law". A clear purpose of BAPCPA was to ensure that except where there was a clear, overriding policy to the contrary, taxpayers would not fare better in bankruptcy than they would outside it. *See Weller, Things Local Government Wish Bankruptcy Attorneys Knew about Property Taxes* (2009) 28-4 American Bankruptcy Institute Journal 12, 60 ("We have all heard that bankruptcy is a process that gives a debtor a 'fresh start,' but it does not give a 'head start' or otherwise provide an advantage in ongoing operations, at least as far as taxes are concerned").

With regard to real estate property taxes, California Revenue and Taxation Code §§ 4102 and 4103(a) and (b) constitute "applicable nonbankruptcy law" under California law. RTC §

4102 requires the payment of delinquent penalties and redemption penalties in order to redeem tax-defaulted property. Beginning July 1 of the year of the declaration of tax default, the Tax Collector assesses an 18 % per annum (1.5% per month) penalty on the delinquent tax claim. *See* RTC § 4103(a). However, it is clear that under California law, § 4103(b) characterizes such redemption penalties as "the assessment of interest." As such, pursuant to Section 511 of the Bankruptcy Code, Congress intended for the County to assess an 18% "interest" on delinquent tax payments involving the Debtor. *See In re McConville*, No. 11-50149, Docket No. 58 at 4-5 (Bankr. N.D. Cal. July 7, 2011) ("[i]n bankruptcy cases, the [r]edemption [p]enalty is called 'interest'").

It is clear that since the enactment of Section 511 pursuant to BAPCPA, the Bankruptcy Court is no longer permitted to exercise its own discretion in determining the appropriate rate on interest on state tax claims. By the Reorganized Debtor's complete and utter disregard of the specified rate in Section 4103(b) of the California Revenue and Taxation Code, their position is entirely contrary to the purpose of Section 511. The House Report analyzed the reason for the proposed addition of this particular statute:

> *Sec. 704. Rate of Interest on Tax Claims.* Under current law, there is no uniform rate of interest applicable to tax claims. As a result, varying standards have been used to determine the applicable rate. Section 704 of the Act amends the Bankruptcy Code to add section 511 for the purpose of simplifying the interest rate calculation.

(H. Report No. 109-31, § 704 to accompany S. 256, 109th Cong., 1st Sess. (2005) p. 101).) In other words, Debtors would have the law as set forth in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004) continue for bankruptcies involving California property taxes, notwithstanding the fact that the purpose of the addition of Bankruptcy Code section 511 was to reverse that case.

Furthermore, if Section 511 is disregarded by the Reorganized Debtors and/or by this Court, then Section 4103(b) of the California Revenue and Taxation Code becomes meaningless because it will never apply. But to do so would violate the principles of comity that govern our federal system. Generally, the federal government will not interfere with certain core state functions unless there is an overriding reason. One of those core functions is tax administration. (*See, e.g. National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 586-587, 590; 115 S.Ct. 2351; 132 L.Ed.2d 509 (1995).) The bankruptcy clause of the Constitution, of course, does give Congress the power to authorize the bankruptcy courts to intrude in state tax matters. However, because of the competing principle of comity, that intrusion should be as limited as possible in order to accomplish the necessary bankruptcy goals. (*See, e.g. Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 48-51; 128 S.Ct. 2326, 2337-2339; 171 L.Ed.2d 203, 217-219 (2008).) Reading Section 511 as nullifying Section 4103(b) accomplishes no federal purpose, and thus, Section 511 should be interpreted so that Section 4103(b) is deemed "nonbankruptcy law".

Moreover, to the extent the Debtors erroneously contend that Section 4103 of the California Revenue and Taxation Code was preempted by the Bankruptcy Code under *In re Collier*, 416 B.R. 713 (Bankr. N.D. Cal. 2008), or otherwise, this argument must fail. On January 5, 2009, Judge Tchaikovsky issued a "Rescission Notice to the Attorney General and Order Sustaining Objections to Confirmation" in connection with her earlier ruling in the *Collier* case. *See In re Collier*, 2009 Bankr. LEXIS 4270 (Bankr. N.D. Cal. Jan. 5, 2009). In doing so, she reversed herself. In particular, the Court sustained the Alameda County Tax Collector's objection to the *Collier* confirmation plan on grounds that it did not provide interest at 18% per

annum, as provided in RTC § 4103. A copy of Judge Tchaikovsky's January 5, 2009 Order is attached to the Glaser Decl., as Exhibit "B".

Furthermore, in rescinding her earlier opinion, Judge Tchaikovsky found that the cases she relied upon in the earlier ruling, which held that the 18% was not part of the County's secured claim under 11 U.S.C. § 506(b), no longer valid. Specifically, Judge Tchaikovsky found *In re County of Orange,* 262 F.3d 1014 (9th Cir. 2001), to be legislatively overruled by Cal. Gov. Code § 43001 and Cal. Rev. & Tax. Code § 2187. Judge Tchaikovsky ruled that while the penalties may not qualify as "fees" or "costs", they clearly qualify as "charges". She not only allowed the 18% penalty, but stated that regardless of whether the 18% per annum charge is properly characterized as a penalty or interest, the plan must provide for such payment in full and to be compensated under Section 506(b) of the Bankruptcy Code.

In light of the plain language of 11 U.S.C. § 511, the validity of Section 4103 of the California Revenue and Taxation Code, this Court should award the County's real property tax claims in full, and find that the County's 18% redemption penalties qualify as "interest" under applicable nonbankruptcy law.

V.

## THE COUNTY'S INTEREST/PENALTIES ARE SIMILARLY AUTHORIZED PURSUANT TO SECTION 506(B) OF THE BANKRUPTCY CODE

Generally, interest stops accruing on pre-petition claims upon the filing of bankruptcy. 11 U.S.C. § 502(b)(2). However, Section 506(b) of the Bankruptcy Code provides an exception to this rule when the value of the collateral exceeds the principal and interest due on a claim.

As amended as part of the BAPCPA, Congress amended Section 506(b) to read, as follows (Pub. Law 109-8, § 712(d)(1), emphasis added to show additional language added by amendment):

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or *State statute* under which such claim arose.

The legislative history of the amendment makes it clear that the interest is to be determined by state law. Specifically, H. Rpt. 109-31, in discussing the amendment states: "Section 712(d)(1) amends section 506(b) to provide that to the extent that an allowed claim is oversecured, the holder is entitled to interest and any reasonable fees, costs, or charges provided for under state law." Here, state law (RTC § 4103(b)) says that for bankruptcy purposes, the redemption penalties are to be considered interest.

Thus, a creditor is entitled to post-petition interest on its oversecured claim whether the lien arose voluntarily, or as in this case, by operation of law. In this case, there can be no dispute that the County is an oversecured creditor. Property taxes are usually only a fraction of the value of the property, so these claims are entitled to interest pursuant to 11 U.S.C. § 506(b), which becomes part of the allowed secured claim to be paid pursuant to a confirmed plan. *See Rake v. Wade*, 508 U.S. 464, 471, 124 L.Ed.2d 424 (1993).

Section 506(b) of the Bankruptcy Code permits an oversecured creditor to obtain "reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose". As set forth above, In *Collier II*, Judge Tchaikovsky specifically ruled that while the penalties may not qualify as "fees" or "costs", they clearly qualified as "charges". Thus, Judge Tchaikovsky allowed the 18% charge, and stated that regardless of whether the 18%

per annum charge is properly characterized as a penalty or interest, the plan must provide for such payment in full and to be compensated under Section 506(b) of the Bankruptcy Code. Therefore, Section 506(b) provides further support for the County's argument that the County's interest and penalties must be paid as provided for by "State Statute".

## VI.

## 18% PER ANNUM REDEMPTION INTEREST IS REASONABLE AND NOT PUNITIVE BY NATURE

Several courts which have considered whether statutory rates of interest constitute true interest or provide for a penalty have determined that statutory rates of interest do not constitute a penalty. *See In re Anthony Liuzzo*, 204 B.R. 235, 240 (Bankr. N.D. Fla. 1996). In *Liuzzo*, the bankruptcy court was confronted with the issue of determining whether the 18% statutory interest rate set forth in Florida Statute § 197.172 was in the nature of a "penalty". The debtor argued that the statutory interest rate provided in the state statute constituted a penalty, and thus, should not be applied to the tax collector's claim. After careful consideration and comparison between the statutory rate of interest and mortgage interest rates, the *Liuzzo* court concluded that the 18% statutory interest did not constitute a penalty based on the following rationale:

> First, the 18 percent statutory interest rate may appear high on its face when compared to current mortgage interest rates. However, this is not a typical real estate loan because title insurance, hazard insurance, and other lender protections, which are included in standard mortgage agreements, are lacking in this case. Also, standard mortgage agreements provide that creditors are entitled to all collection fees and costs as part of the obligation secured by the mortgage. The Tax Collector does not receive these benefits under Florida law. Such costs are, therefore, borne by the taxpayers. Thus, current mortgage interest rates are not a reliable bench-mark from which I can determine if the statutory rate constitutes a penalty. Further, the statutory rate is not high relative to consumer loan transactions with similar risk of non-payment, given the Debtor's history of non—payment of taxes over a period of several

> years. . . . . Finally, the Debtor has not presented any evidence, in the form of state case law, legislative history or otherwise, which supports his position that the statutory rate of interest provided in § 197.172 is in the nature of a penalty. Having considered all of the above, I cannot find that the statutory rate of interest provided in § 197.172 constitutes a penalty with regard to either the pre-petition taxes or the post-petition taxes.

*Id.* at 240.

Similarly, numerous other courts have determined the statutory interest rate of 18% to be compensatory and not punitive by nature. *See e.g., In re Anthony Liuzzo*, 204 B.R. 235, 241 (Bankr. N.D. Fla. 1996) (court held that 18% statutory interest rate on behalf of Alachua County Tax Collector did not constitute a penalty*); In re Marfin Ready Mix Corp.,* 220 B.R. 148, 157 (Bankr. E.D.N.Y. 1998) (court allowed 18% statutory interest under Section 506(b) during the pre-petition period and the post-petition period respecting taxes which accrued pre-petition); *In re Chang,* 274 B.R. 295, 304 (Bankr. D. Mass. 2002) (court allowed 18% interest for delinquent taxes during the post-petition period on behalf of Pinellas County); *Mulberry Corp. v. John Brook, Jr. (In re Mulberry Corp.),* 344 B.R. 176, 178 (Bankr. M.D. Fla. 2006) (court recognized that taxing authority's responsibility to meet the "obligations and costs" of operating the government "weighed heavily in favor of recognizing the validity of the eighteen percent (18%) interest rate and conclude that it is not a penalty"); *In re Cone Constructors, Inc.,* 304 B.R. 513, 518 (Bankr. M.D. Fla. 2003) (bankruptcy court held that the tax collector was entitled to 18% interest rate on secured tax claims because "such a rate is not wholly disproportionate or excessive in relation to market risks and conditions, and no evidence has been presented to indicate that the provision was intended to penalize delinquent taxpayers, rather than compensate the taxing authority for delayed payment of the taxes"); *Town of Monroe v. 837 Main Street Corp.,* 45 Conn. Supp. 283, 712 A.2d 996, 1000 (Conn. Super. Ct. 1997) ("[T]he court concludes

that the interest imposed on delinquent taxes is compensatory, and not punitive in nature. The eighteen percent interest per annum was imposed primarily to ensure that municipalities receive fair compensation for delayed payment of taxes in light of fluctuating market rates, inflation, and collections costs").

In this matter, the charges in question specifically serve to compensate the County for lost monetary value, and also serve to compensate local governments for having to obtain operating cash from alternative sources (sometimes being forced to borrow money) and manage an increased work load, and to primarily ensure that municipalities receive fair compensation for delayed payment of taxes in light of fluctuating market rates, inflation and collection costs. *See* Gloster Decl., ¶ 5. *Ad valorem taxes, i.e.,* taxes assessed based on the value of property (as opposed to income or sales taxes), are the primary source of revenue for counties, cities and towns, and there can be no question that these charges strictly serve as an enforced contribution to provide support for the County.

Moreover, there are several important policy reasons as to why both delinquency charges and redemption charges must be fixed in amount and cannot feasibly be calculated based upon some variable index. First, as set forth above, because such charges are intended to compensate local governments for having to obtain operating cash and managing an increased workload, the only logical variable rate would reflect each individual county's cost of working capital and its administrative costs. These amounts could vary widely across the state and over time, and would undoubtedly create enormous confusion for taxpayers who own property in more than one county. Second, a variable rate would also present great technical and administrative challenges because counties would be required to periodically recalculate their costs and re-program their computer systems to reflect adjustments to their interest rates. In Los Angeles County, and

possibly all other counties as well, such re-programming would be prohibitively costly, if it could be done at all. Finally, because property taxes may remain unpaid for many years, a variable interest rate would be difficult (if not impossible) to audit, and taxpayers would be similarly unable to identify and challenge errors in billing.

Accordingly, the fixed 18% per annum interest charged by the County is reasonable and not punitive under any circumstances.

## VII.

## CONCLUSION

WHEREFORE, the County respectfully requests that the Court (i) enter an Order requiring the Reorganized Debtors to pay eighteen percent (18%) per annum (or 1.5% per month) in redemption charges pursuant to California Revenue Taxation Code 4103(a), which charges are characterized as the "assessment of interest" under RTC § 4103(b); (ii) enter an Order determining that the eighteen percent (18%) interest is "reasonable" and not punitive by nature; and (iii) grant such other and further relief as is just and proper.

Dated: November 7, 2013

COOLEY MANION JONES LLP

Marc J. Phillips (No. 4445)
1105 North Market Street, Suite 200
Wilmington, Delaware 19801
Telephone: (302) 657-2100
Facsimile: (302) 657-2104
Email: mphillips@cmjlaw.com

-and-

Barry S. Glaser
Email: bglaser@swesq.com
Jacquelyn H. Choi
Email: jchoi@swesq.com
STECKBAUER WEINHART, LLP
333 S. Hope Street, 36th Floor
Los Angeles, CA 90071
Telephone: (213) 229-2868
Facsimile: (213) 229-2870

*Attorneys for Los Angeles County Treasurer and Tax Collector*