## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Ref. Docket Nos. 13545, 13659, 13662, 13759 and 13775** |

**REORGANIZED DEBTORS' BRIEF IN SUPPORT OF OBJECTION TO THE MOTION OF THE LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR FOR RELIEF FROM THE PERMANENT INJUNCTION OF THE FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO GORDON & CO., L.P. AND JPMORGAN CHASE BANK, N.A., AS AMENDED JUNE 18, 2012**

November 7, 2013

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Matthew G. Martinez
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

COLE, SCHOTZ,
MEISEL, FORMAN &
LEONARD, P.A.
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

ADDITIONAL RELEVANT BACKGROUND ......................................................................... 3

ARGUMENT .............................................................................................................................. 5

      A.    The Equities Disfavor Allowing the County to Assess Redemption
            Penalties Against the L.A. Times ......................................................................... 6

      B.    The County Does Not Have an Allowed Secured Claim and is Therefore
            Not Entitled to the Benefits of Section 506(b) of the Bankruptcy Code ................ 8

      C.    The Delinquent Penalties and Redemption Penalties are Penalties, and are
            Therefore Not Allowable Interest Under Section 506(b) of the Bankruptcy
            Code ................................................................................................................... 13

      D.    The Delinquent Penalties and Redemption Penalties are not "Reasonable"
            "Fees, Costs or Charges" Under Section 506(b) of the Bankruptcy Code ........... 19

CONCLUSION ......................................................................................................................... 25

The reorganized debtors in the above-captioned chapter 11 cases (each a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>"),[1] by and through their undersigned counsel, hereby submit this brief (this "<u>Brief</u>") in support of the *Reorganized Debtors' Objection to the Motion of the Los Angeles County Treasurer and Tax Collector for Relief from the Permanent Injunction of the Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P. and JPMorgan Chase Bank, N.A., as Amended June 18, 2012* [Docket No. 13659] (the "<u>Objection</u>").  In support of the Objection, the Debtors respectfully represent as follows:

## <u>PRELIMINARY STATEMENT</u>[2]

1.      The undisputed facts of this matter are that the L.A. Times attempted to make a tax payment for a prepetition period immediately after the Petition Date, but could not do so because of the imposition of the bar on postpetition payments of prepetition indebtedness and

---

[1] The Reorganized Debtors, or successors-in-interest to the Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068).  The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms used anywhere throughout this Brief but not defined herein shall have the meanings ascribed to them in the Joint Pretrial Memo (as defined below) or elsewhere in this Brief.

the freezing of the Debtors' bank accounts as a result.  When the Bankruptcy Court issued its order permitting postpetition tax payments, the L.A. Times promptly paid its tax bill in accordance with that order.  The County accepted such payments, and then imposed a penalty based on the late payment resulting from the bankruptcy filing.  When the County notified the L.A. Times of this, months after the County accepted payment, the L.A. Times promptly protested.  The County did not respond for over two years, meanwhile, it continued to assess penalties upon penalties with no word to the L.A. Times or to this Court.  Now, after years in which the County has purported to continue accruing 18% annual penalties on this matter while communicating sporadically and often not at all with the L.A. Times, the County asks this Court as a matter of equity to modify the Discharge Injunction to permit it to proceed with a tax sale of certain of the L.A. Times's properties.

2.    The County has not met its burden to establish entitlement to such relief.  Accepting the County's status as a lienholder, the question remains as to whether the County is entitled to any allowed secured claim against the L.A. Times based on its initial imposition of penalties against the L.A. Times and its subsequent compounding of those penalties, even after the L.A. Times had repeatedly made its position known to the County and the County had not responded.  The County also has the burden to demonstrate that (i) its penalties should be accepted by this Court as interest notwithstanding their non-bankruptcy designation as penalties and clearly punitive purpose, (ii) if this Court does not accept that the applicable penalties are interest, that such penalties are "fees, costs or charges" within the meaning of section 506(b) of the Bankruptcy Code, and (iii) that if they are fees, costs or charges," their 18% rate is "reasonable" under section 506(b).  The County has carried none of that burden.  Instead, the County has relied on its secured status to attempt to impose penalties on the L.A. Times for not

making a tax payment in violation of the Bankruptcy Code, and then has asserted that it has the ability to collect those penalties, plus penalties upon penalties, post-bankruptcy, after years of disregarding the L.A. Times's efforts to communicate regarding the matter.  Such a result is neither required by, nor consistent with, the Bankruptcy Code, and the County's Motion should be denied as a result.

### ADDITIONAL RELEVANT BACKGROUND

3.      After the Debtors filed the Objection, on July 25, 2013, the County filed the *Reply in Support of Los Angeles County Treasurer and Tax Collector's Motion for Relief from the Permanent Injunction of Debtors' Plan of Reorganization* [Docket No. 13662] (the "Reply").

4.      A hearing was held on the Motion on August 2, 2013 (the "Initial Hearing").  At the Initial Hearing, the Court did not adjudicate any of the disputed issues.  The Court did not determine that the County has a claim; however, the Court expressed general support for the idea that liens pass through bankruptcy unless otherwise affected by such bankruptcy.  Tr. 8/2/13: 29:11-13 ("And I tend to agree with the long-settled law and that is the lien passes through unless it's avoided in an adversary action in the bankruptcy.").  Counsel to the Debtors expressed that, even if the County has a lien which passed through bankruptcy, there are certain issues which are yet undecided.  Namely, one such issue is whether the County can impose postpetition penalties on prepetition amounts that were not past due until the postpetition period.  Tr. 8/2/13: 32:13-17 ("MR. KANSA: . . . I think the Court's comments are very helpful for us -- but it's the question of whether the County taxing authority was entitled to impose a postpetition penalty when that penalty came -- first came to postpetition on account of prepetition tax amounts.").  Another such issue is whether the tax penalties sought to be imposed by the County are allowable under section 506(b) of the Bankruptcy Code.  Tr. 8/2/13: 32:34-

33:6 ("MR. KANSA:  And, Your Honor, our assessment is that Section 506(b) of the Bankruptcy Code on its face allows for interest plus reasonable fees, costs, and charges.  And we would take issue both with the proposition that these penalties are interest and we would take issue with the proposition that these are either fees, costs, or charges in the first instance or, if not, they certainly aren't reasonable fees, costs, and charges.").  The Court then framed the issues going forward:

> THE COURT: . . . Okay.  Well, here's what I'd like to suggest.  Understanding that I'm of the belief that you have a lien and that you should be treated as a secured party, that should help form the basis of some reason to talk about resolution
>
> With respect to the penalty aspect, it seems to me it's left to this Court if the parties can't agree to determine whether what's called a penalty is in fact a penalty or interest.

Tr. 8/2/13: 37:14-22.

5.     The Court continued the dispute and requested that the parties confer and submit a form of order scheduling an evidentiary hearing (the "Evidentiary Hearing") for October 8, 2013.  By agreement of the parties and with the permission of the Court, the Evidentiary Hearing was rescheduled to November 12, 2013.

6.     Despite the parties' efforts to consensually resolve their disputes and exchange of settlement positions, no resolution has been reached.  Accordingly, the parties implemented a limited discovery and briefing schedule in anticipation of the Evidentiary Hearing.  On October 17, 2013, the Court entered the *Scheduling Order for Evidentiary Hearing on the Motion of the Los Angeles County Treasurer and Tax Collector for Relief from the Permanent Injunction of the Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors,*

*Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P. and JPMorgan Chase Bank,*

*N.A., as Amended June 18, 2012* [Docket No. 13759] (the "Scheduling Order").

7.     In accordance with the Scheduling Order, over the last few weeks, the

parties engaged in an expedited discovery and briefing process.  The parties also worked together

on a joint pretrial memorandum in accordance with this Court's general order regarding pretrial

procedures for adversary proceedings.  Accordingly, on November 7, 2013, the parties filed the

*Joint Pretrial Memorandum Regarding Evidentiary Hearing on the Motion of the Los Angeles*

*County Treasurer and Tax Collector for Relief from the Permanent Injunction of the Fourth*

*Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by*

*the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P.,*

*Angelo Gordon & Co., L.P. and JPMorgan Chase Bank, N.A., as Amended June 18, 2012*

[Docket No. 13775] (the "Joint Pretrial Memo").

## ARGUMENT

8.     In addition to each of the reasons for denying the Motion that are

discussed in the Objection previously filed by the L.A. Times, the County is not entitled to

collect the Delinquent Penalties or the Redemption Penalties for the reasons discussed in this

Brief.  The Court has three (3) separate and distinct avenues for denying the County's ability to

collect such penalties.  They are as follows: (i) determining that the equities disfavor allowing

the County to recover any further monetary sums from the L.A. Times; (ii) determining that,

even if the Delinquent Penalties and the Redemption Penalties are determined to be "interest" or

"reasonable fees, costs, or charges[,]" because the County does not have an "allowed secured

claim" it is not entitled to take advantage of the benefits of section 506(b); or (iii) determining

that the Delinquent Penalties and Redemption Penalties are not "interest" or "reasonable fees,

costs, or charges" such that they are not allowable under section 506(b) of the Bankruptcy Code.

Each of these potential determinations should be made even accepting that the County has a lien which rode through the Debtors' chapter 11 cases unaffected.  Each of these avenues is discussed in greater detail, below.

> **A.    The Equities Disfavor Allowing the County to Assess Redemption Penalties Against the L.A. Times**

9.    The County is not entitled to the relief it seeks from the Discharge Injunction on equitable grounds.  The Discharge Injunction prohibits a wide range of actions on account of pre-Effective Date indebtedness, and among the acts proscribed is "creating, perfecting or enforcing any Lien or encumbrance against the Debtors, the Reorganized Debtors or their respective property."  Plan at § 11.1.2.  Accordingly, and notwithstanding its contentions, the County is prohibited by the Plan and this Court's Confirmation Order from undertaking the tax sale it proposes, notwithstanding that, as discussed below, it retains a lien.

10.    As discussed in the Objection, there is a longstanding sentiment that penalties are disfavored in bankruptcy cases.  See Objection ¶ 24.  Additionally, it is black-letter bankruptcy law that a debtor's estate is ordinarily not liable for interest and penalties which accrue postpetition on a prepetition tax claim.  The fact that the party seeking to impose the penalty may have a secured claim does not change this analysis, as section 506(b) of the Bankruptcy Code does not expressly allow for penalties, and the logic for such penalties' disallowance – that it enriches one creditor at the expense of others – is unaffected.  The disfavor towards penalties is particularly strong where, as here, certain penalties are imposed solely because a debtor complied with restrictions imposed by its bankruptcy filing.

11.    Even if the Court determines that the Redemption Penalties and/or the Delinquent Penalties are interest (which they are not, for reasons discussed in section C below), considering the timeline and facts of this dispute, the County should not be entitled to any further

payment from the L.A. Times on account of the taxes at issue.  The L.A. Times did what it was

supposed to do as a responsible debtor in possession – not just in the County's case, but with

regards to all taxing authorities.  Here, the L.A. Times properly closed its accounts on the

Petition Date to ensure compliance with the Bankruptcy Code.  When it received proper Court

approval (not a mandate), via the Tax Order, to make certain tax payments, it voluntarily

attempted to pay the taxes in full on the exact date of such order.  Joint Pretrial Memo ¶ 15.

         12.     When the L.A. Times's first payment attempt did not succeed, due to no

fault of the Debtors, the L.A. Times then made the payment in full, even though it was not

directed to do so.  Id. at 16.  In light of that, and considering the numerous attempts the L.A.

Times made to contact the County and to resolve this matter, attempts which were ignored for a

number of years, the County should not now be allowed to collect penalties which have

continued to compound since such time.  The record before the Court shows that from the time

the County first sent any notice of the Redemption Penalties and the Delinquent Penalties to the

L.A. Times (at which time the L.A. Times immediately reached out to the County to try to

resolve the matter), to the time the County finally sent its first and only response to the L.A.

Times, the purported amounts owing to the County increased from $176,967.58 to $232,939.59.

See, e.g., Joint Pretrial Memo at Ex. 12 (attaching charts showing purported default amounts

from September 1, 2010 and December 1, 2012).  Furthermore, since such time, the County has

continued to run the meter and now asserts that the L.A. Times owes it $263,979.30.  See Joint

Pretrial Memo at Ex. 13.  Even though the County is owed nothing further by the L.A. Times,

the County's act of burying its head in the sand, on its own, has caused almost $100,000 of

additional penalties to accrue.  The County asserts that it is entitled to enrich itself through its inaction at the expense of the Debtors' other creditors.  It should not be.[3]

13.     The County has collected the principal amount of the original taxes in its entirety, and has been paid on time and in full for every installment since the February 2009 tax payment.  See Joint Pretrial Memo ¶ 21.  This is despite the County's failure to file a proof of claim on account of the taxes (even though it filed other claims in the Debtors' cases) or to engage in any resolution of this matter until long after the Debtors emerged from chapter 11 protection.  See Joint Pretrial Memo ¶ 24, 25-29.  The County's failure to file a proof of claim is entirely consistent with the Debtors' view of the instant matter; namely, that any liability of the L.A. Times for the underlying tax obligations here was fully satisfied by the L.A. Times February 2009 payment.  The equities stand firmly against allowing the County to collect any more from the Debtors in this dispute.

**B.     The County Does Not Have an Allowed Secured Claim and is Therefore Not Entitled to the Benefits of Section 506(b) of the Bankruptcy Code**

14.     The Debtors concede that the County's lien survived the L.A. Times's bankruptcy proceeding.  That fact does not resolve the issue of what allowed claim of the County's – if any – is secured by such lien, and under the unique facts of this case, the Court should find that the County has no allowed secured claim.  The Bankruptcy Code states that "to the extent that an allowed secured claim is [oversecured] . . . there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges . . . ."  11 U.S.C.

_____

[3] In light of this timeline, the County's Motion and its attempted collection of penalties should also be barred by the doctrine of laches.  This Court previously stated that "[t]he essential elements of laches are (1) a defendant with knowledge of a right, and (2) prejudice to the plaintiff arising from an unreasonable delay in exercising that right." In re Tribune Co., 476 B.R. 843, 861 (Bankr. D. Del. 2012) (citing Lawhon v. Winding Ridge Homeowners Ass'n Inc., 2008 WL 5459246 at *9 n.78 (Del. Ch. Dec. 31, 2008)).  The County was well aware of its purported right to penalize the L.A. Times and of the fact that it was actually doing so.  It also was aware that the L.A. Times was actively seeking to resolve this matter.  Despite that, the County ignored the matter while simultaneously prejudicing the L.A. Times by continuing to compound interest as described in paragraph 12 of this Brief.  The County should not be able to reap the benefits of its purposeful delay and evasion.

§ 506(b) (underline added).  The Bankruptcy Code is clear, then, that in order to take advantage of section 506(b), a creditor must first hold an allowed secured claim.  The County does not have an allowed secured claim, therefore, it is not entitled to any interest or reasonable fees, costs, or charges.

15.     Supreme Court precedent highlights the fact that "allowed secured claim" is a critical component of section 506(b).  In Dewsnup v. Timm, the Supreme Court was faced with the question of whether a debtor could "strip down" a creditor's lien on real property when the value of the collateral was less than the amount of the claim secured by the lien.  502 U.S. 410, 411-412 (1992).  While the Dewsnup case focuses on the interplay of sections 506(a) and 506(d) of the Bankruptcy Code, which is not at issue here, the Supreme Court's analysis is instructive.  The United States and certain *amicus curiae* argued:

> [T]he words "allowed secured claim" in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision.  Rather, the words should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured.  Because there is no question that the claim at issue here has been "allowed" pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have not been allowed and secured.  This reading of § 506(d), according to respondents and the United States, gives the provision the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed.

502 U.S. at 415-416.  The Supreme Court then concluded that it agreed with this position.  See id. at 417 ("We conclude that respondents' alternative position, espoused also by the United States, although not without its difficulty, generally is the better of the several approaches.").  While the Supreme Court also stated that it was not opining on what "allowed secured claim" means in other sections of the Bankruptcy Code, Dewsnup highlights that the phrase "allowed

secured claim" has an independent meaning in section 506, and that 506(b) cannot be read as

providing interest and reasonable fees, costs or charges to an oversecured creditor without first

determining if such creditor has an allowed secured claim.  See id. at n.3 (stating that the

Supreme Court is not opining whether "allowed secured claim" has different meanings in other

provisions of the Bankruptcy Code, but by implication highlighting that such words must be

given meaning).

      16.     Other precedent supports the same approach of first determining whether a

creditor has an "allowed secured claim" pursuant to section 506(b).  See, e.g. DeNofa v. Nat'l

Loan Investors, L.P. (In re Denofa), 2005 U.S. App. LEXIS 2872, Case No. 04-1686, *6 (3d Cir.

Feb. 17, 2005) ("Section 506(b) only permits post-petition interest where an 'allowed secured

claim is secured by property' which exceeds the value of the 'allowed secured claim.'  The

meaning of 'allowed secured claim' dictates the outcome here."); In re Hernandez, 303 B.R. 342,

345 (Bankr. S.D. Ohio 2003) ("When claiming interest, fees, and expenses, the creditor carries

the burden of showing that it has met the elements of section 506(b).  In order to do so the

creditor must show that (1) it has an allowed secured claim; (2) the claim is over secured . . . .");

10 Collier on Bankruptcy ¶ 506.04[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013)

("In general, section 506(b) provides for the allowance of fees (including attorney's fees) costs

and charges provided that (i) the claim is an allowed, secured claim; (ii) the creditor holding the

claim is oversecured; (iii) . . . .").

      17.     Before allowing the County to obtain any interest, fees, costs or charges

under section 506(b), the Court should first separately determine that the County has an "allowed

secured claim."  The County does not.  "Allowed" is not a defined term listed in section 101 of

the Bankruptcy Code.  However, section 502 of the Bankruptcy Code states that "(a) a claim or

interest, <u>proof of which is filed</u> under section 501 of this title, is deemed allowed, unless a party

in interest . . . objects." 11 U.S.C. § 502(a) (underline added).  The County concedes that it filed

no proof of claim, so its claim is accordingly not deemed allowed under section 502.

        18.    The Court should then look to whether the Plan allows a claim for the

County that is not otherwise allowed by the Bankruptcy Code.  The Plan defines "Other Secured

Claim" as "a Secured Claim, other than an Administrative Expense Claim, a DIP Facility Claim,

a Priority Tax Claim, a Senior Loan Claim (other than a right to setoff) or a Senior Noteholder

Claim (other than a right to setoff)."  Plan § 1.1.159.  Additionally, the Plan defines "Secured

Claim" as:

> a Claim (a) secured by a Lien on collateral to the extent of the
> value of such collateral (i) as set forth in this Plan, (ii) as agreed to
> by the Holder of such Claim and the Debtors, which agreement is
> approved or otherwise permitted by a Final Order of the
> Bankruptcy Court or is an ordinary course agreement, or (iii) as
> determined by a Final Order in accordance with section 506(a) of
> the Bankruptcy Code, or (b) that is subject to setoff under section
> 553 of the Bankruptcy Code, to the extent of such setoff

Plan § 1.1.197.  Finally, the Plan incorporates the definition of "Claim" provided by section

101(5) of the Bankruptcy Code.  <u>See</u> Plan § 1.1.32.  Accordingly, if the County has any Allowed

Claim against the L.A. Times, it would be an Other Secured Claim.  To determine whether such

claim would be an Allowed Other Secured Claim, the Plan defines Allowed as:

> with respect to a Claim or Interest, or any portion thereof, in any
> Class or category specified, a Claim or Interest (a) that is
> evidenced by a Proof of Claim or Interest and as to which no
> objection or request for estimation has been filed on or before any
> objection deadline established pursuant to <u>Section 8.1</u> of this Plan
> or the expiration of such other applicable period fixed by the
> Bankruptcy Court, (b) that is listed on the pertinent Debtor's
> schedules but is not listed as disputed, contingent or unliquidated,
> that is not otherwise subject to an objection and as for which no
> contrary or superseding Proof of Claim or Interest has been filed,
> (c) as to which any objection has been settled, waived, withdrawn

> or overruled by a Final Order; or (d) that is expressly allowed (i) by a Final Order, (ii) pursuant to the terms of the Claims Settlement Order, (iii) solely with respect to those Claims that are not pre-petition Claims and are not required under applicable bankruptcy law to be allowed pursuant to an order of the Bankruptcy Court, by an agreement between the Holder of such Claim and the pertinent Debtor or Reorganized Debtor pursuant to an agreement which was approved or otherwise permitted by a Final Order of the Bankruptcy Court or is an ordinary course agreement that, unless *de minimis* in nature, has been provided to and has not been objected to in writing by the Proponents, or (iv) pursuant to the terms of this Plan. For the avoidance of doubt, to the extent a Claim is not Allowed, such Claim is still subject to objection based upon potentially applicable rights of avoidance, setoff, subordination, and any other defenses.

Plan § 1.1.6.  None of these categories is applicable save potentially for subsection (d), which provides that any Claim that is allowed by a Final Order of the Court is an Allowed Claim.  No such order has been entered by this Court, and it is not clear whether the County seeks such an order through this proceeding.

19.     Here, the County does not have an allowed secured claim because any original prepetition claim it may have had was paid in full by the L.A. Times as soon as it had authority to do so.  See Joint Pretrial Memo ¶¶ 14-15.  The County then accepted such payment and remained silent for the next approximately 18 months.  See id. ¶¶ 16, 25.  However, the County immediately penalized the L.A. Times after the first unsuccessful funds transfer, repeatedly compounded penalties from month-to-month for not paying previously asserted penalty amounts in full, and simultaneously waited approximately 21 months into the Debtors' bankruptcy cases to state that it was attempting to assert penalties (via the September 2010 Statements), then ignored the L.A. Times's communications for more than two years after that, all while continuing to compound penalties.  See id. ¶¶ 16, 21, 24-29.  None of these actions actually gives rise to an allowed secured claim under section 506(b), or any other section, of the

Bankruptcy Code, nor does it give rise to an Allowed Other Secured Claim under the Plan.

Accordingly, on the unique facts of this case, the County's lien may ride through the Debtors

bankruptcy, but there should be no allowed secured claim which it secures.  Because there is no

allowed secured claim, the County cannot reap the benefits of section 506(b).

      **C.**      **The Delinquent Penalties and Redemption Penalties are Penalties, and are Therefore Not Allowable Interest Under Section 506(b) of the Bankruptcy Code**

      20.      Section 506(b) of the Bankruptcy Code provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).  The text of the statute is clear, then, that holders of allowed secured claims,

which are over-secured, can seek only "interest" and "reasonable fees, costs, or charges . . . ."

Id.

      21.      The Delinquent Penalties and the Redemption Penalties are not "interest"

under section 506(b) of the Bankruptcy Code; accordingly, the County cannot recover them from

the L.A. Times.  The County argues that it is entitled to collect each of the penalties that it has

asserted against the L.A. Times because section 4103(b) of the CA Tax Code characterizes

redemption penalties as interest in a bankruptcy proceeding.  See Motion ¶ 16 ("In a bankruptcy

proceeding, [CA Tax Code] section 4103(b) characterizes redemption penalties as 'the

assessment of interest.'"); Reply ¶ 9 (same).  As is discussed below, the County's argument

should fail with respect to both the Delinquent Penalties and the Redemption Penalties.

      22.      First, accepting the County's arguments on their face, nothing in

California law even *attempts* to recharacterize the Delinquent Penalty as an interest charge.  As is

spelled out in detail in the Joint Pretrial Memo, the Delinquent Penalty that the County charged the L.A. Times arose under sections 2617 and 2618 of the CA Tax Code.  Joint Pretrial Memo ¶ 18.  On its face, section 4103(b) of the CA Tax Code only pertains to, and only attempts to recharacterize, penalties arising under *section 4103(a)* of the CA Tax Code (i.e., the separate Redemption Penalties) as interest in a bankruptcy proceeding and says nothing about the distinct penalties arising under sections 2617 or 2618 of the CA Tax Code (i.e., the separate Delinquent Penalties).[4]  See Cal. Rev. & Tax. Code § 4103(b).  For this reason, the Delinquent Penalty cannot be assessed against the L.A. Times under section 506(b) of the Bankruptcy Code as "interest."

23.     Second, the Redemption Penalty charged to the L.A. Times pursuant to section 4103(a) of the CA Tax Code fails because it is in substance a penalty which is not allowable under section 506(b) of the Bankruptcy Code.  The Redemption Penalties are denominated in the CA Tax Code as penalties.  See Cal. Rev. & Tax. Code § 4103(a).  The County does not attempt to explain that the purpose of the Redemption Penalties is anything other than punitive.  The County must advance evidence that the penalties are compensatory in nature for some loss suffered by the County, as opposed to being strictly intended to punish.  See PNC Bank, Nat'l Ass'n v. Bucks County Tax Claim Bureau (In re Toc Assocs.), 181 B.R. 205, 209 (Bankr. E.D. Pa. 1995) ("Generally, some proof must be advanced to show that a penalty represents actual pecuniary loss because interest serves to compensate for the out-of-pocket loss. When penalties and interest are charged, the penalties typically are not considered to be

---

[4] The California legislature clearly considers delinquent penalties and redemption penalties to be separate and distinct penalties, as is evidenced by, among other things, the fact that section 4102 of the CA Tax Code enumerates that base taxes, section 2617-2618 delinquent penalties, section 4103(a) redemption penalties, section 4102(d) redemption fees, and section 4102(b) costs, are separate parts of taxpayer's total liability.  See Cal. Rev. & Tax. Code § 4102.

compensatory."). There can be no serious argument that the Redemption Penalties of 18% per annum operate in fact and in intent as penalties.[5]

24.     The County relies on section 4103(b) of the CA Tax Code to support its claim, which provides in relevant part that "for purposes of … any claim in a bankruptcy proceeding pertaining to the property being redeemed, the assessment of penalties determined pursuant to [section 4103(a)] with respect to the redemption of that property constitutes the assessment of interest." Cal. Rev & Tax Code § 4103(b). The aim of that statute is plain. Bankruptcy courts justifiably disfavor claims for penalties in bankruptcy proceedings because, among other things, they skewer one group of creditors to the benefit of the creditor seeking to impose the penalty. See, e.g., Simonson v. Granquist, 369 U.S. 38, 40 (1962) ("the prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some default or wrong. Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors.").

25.     Claims for postpetition penalties on account of prepetition claims are particularly disfavored because, as here, the penalty is imposed on a debtor for not making a payment that it was legally barred from making. See, e.g., In re Mike Rose Oil Co., L.P., Case No. 91-0006, 1991 WL 110209, *4 (Bankr. W.D. Tenn. June 17, 1991) (citing In re Boston and Maine Corp., 719 F.2d 493, 496 (1st Cir. 1983); In re Snyder Farms, Inc., 83 B.R. 977, 988 (Bankr. N.D. Ind. 1988)). Yet while penalties are disfavored under bankruptcy law, post-petition

---

[5] The 18% amount alone, when compared to prevailing market rates of interest, is evidence of punitive intent to any observer. Cf. Tr. 8/2/13: 36:8-9 ("THE COURT: Mr. Glaser, I don't even think the hedge funds are charging 18 percent these days.").

interest on oversecured claims is permitted under section 506(b).[6]  As a result, California enacted

section 4103(b) of the CA Tax Code, which says that penalties are penalties in all situations

except for certain administrative proceedings and "any claim in a bankruptcy proceeding", in

which penalties intended to punish non-compliance with the law are transformed into non-

punitive interest solely by changing their name.[7]  The County now asks this Court to give effect

to that blindly.

        26.     The Court should decline.  The mere relabeling of the Redemption

Penalties as interest by section 4103(b) does not change the reality that they are penalties.  The

Ninth Circuit has recognized this fact in Fed. Deposit Ins. Corp. v. County of Orange (In re

County of Orange), 262 F.3d 1014 (9th Cir. 2001), in which it emphasized that the Redemption

Penalties are penalties.  See id. at 1021 ("It is clear from the face of the California statute that the

redemption penalties are just that, penalties, and not interest").[8]  Nothing in section 4103(b)

changes the punitive purpose of the Redemption Penalties nor explains why the purposes served

by penalties outside of bankruptcy and the purpose served by interest on a claim in a bankruptcy

proceeding are one and the same.[9]  This Court is well-equipped to see substance over form.  Cf.

---

[6] The practical effect is that essentially every property tax claim is oversecured and subject to 506(b) because the value of the property will generally exceed the value of any tax liabilities.

[7] The limited legislative history behind section 4103(b) provides no basis on which one could conclude that the California legislature made any findings at all as to why the punitive purpose of the Redemption Penalties became a compensatory purpose once a claim for property taxes became a claim in a bankruptcy proceeding.  See, e.g., Cal. B. An., S. Comm, 1995-1996 Reg. Sess., S.B. 1836 (S. Rev. & Tax. Comm. Aug. 28, 1996); Cal. B. An., S. Comm, 1995-1996 Reg. Sess., S.B. 1836 (S. Rev. & Tax. Comm. Apr. 17, 1996); 1996 Cal. Legis. Serv. Ch. 800 (S.B. 1836) (West).

[8] The dispute in County of Orange, although in a bankruptcy proceeding, did not relate to a "claim in a bankruptcy proceeding," and the Ninth Circuit accordingly did not address directly the question of whether section 4103(b)'s relabeling of penalties as interest would change the penalties' substance in an enforceable manner.  See 262 F.3d at 1021.

[9] But see In re Fowler, 493 B.R. 148 (Bankr. E.D. Cal. 2012).  In Fowler, the court held that section 4103(b) of the CA Tax Code was "applicable nonbankruptcy law" within the meaning of section 511(a) of the Bankruptcy Code, and that it was not preempted.  Id. at 149 ("the court holds that § 4103(b) is 'applicable nonbankruptcy law' within the meaning of 11 U.S.C. § 511(a), that [CA Tax Code] § 4103(b) is therefore not pre-empted by the Bankruptcy Code and that [CA Tax Code] § 4103(b) does control the interest rate to be paid on a secured real property tax claim

Tidelands Marine Serv. v. Patterson, 719 F.2d 126, 128 n.3 (5th Cir. 1983) ("That which looks like a duck, walks like a duck, and quacks like a duck will be treated as a duck even though some would insist upon calling it a chicken"); BMC Indus., Inc. v. Barth Indus, Inc., 160 F.3d 1322, 1337 n.28 (11th Cir. 1998) ("The 'duck test' has received wide support from the courts."). The Redemption Penalties are penalties in substance, and should be treated by this Court accordingly.

27.     At least one court has applied such a substantive analysis.  See In re Collier, 416 B.R. 713 (Bankr. N.D. Cal. 2008) ("Collier I").  In Collier I, the court held, in relevant part, that section 4103(b) of the CA Tax Code was preempted by the Supremacy Clause of the United States Constitution.  See id. at 717 ("The question is whether Congress's intent in enacting § 511(a) [of the Bankruptcy Code] was to permit states to enact a bankruptcy specific interest rate or merely to subject bankruptcy debtors to the same interest rate imposed on nonbankruptcy debtors under state law.  The Court concludes that Congress intended the latter, not the former.  As a result, it concludes that § 4103(b) [of the CA Tax Code] violates the Supremacy Clause of the United States Constitution and is a nullity as applied to bankruptcy debtors").[10]  This result was appropriate and correct.  It requires no leap of logic to infer that

---

in a chapter 13 plan.").  The debtor argued that the payment of an interest rate by debtors, and the payment of a penalty by non-debtors, was disparate treatment in violation of section 511 of the Bankruptcy Code.  See id. at 152. The court rejected this argument, stating that there is no legislative history showing that section 511 of the Bankruptcy Code was intended to prevent distinction between debtors and non-debtors, but rather that "the purpose of § 511 was to prevent debtors from proposing varying interest rates to be paid on tax claims."  Id. at 155. Moreover, the court did not believe that section 4103(b) of the CA Tax Code caused the disparate treatment of debtors and non-debtors.  Id. at 156.  While the court also stated, in dicta and while discussing County of Orange, that section 2187 of the CA Tax Code (which legislatively overruled County of Orange) evidenced the legislature's intent that redemption penalties are effectively an interest rate, this was not a part of its holding.  See id. at 157-158. The LA Times respectfully disagrees with the Fowler court's conclusion and submits that the conflation of penalties and interest into the same thing has been repeatedly rejected by bankruptcy courts for precisely the reasons present here – i.e., it penalizes debtors for doing what they ought to do.

[10] Separately, the Collier I court determined that redemption penalties sought to be imposed by Alameda County, California were not recoverable under section 506(b) of the Bankruptcy Code because, based on County of Orange, the redemption penalties were unsecured.  Id. at 720 ("As a result, although the Court concludes that Alameda County's redemption penalties continue to accrue post-petition, it concludes that they constitute a general, unsecured claim as do the redemption penalties that accrued pre-petition.  As such, Alameda County is entitled to receive its pro rata share of any payments made by the debtors to general, unsecured creditors on account of these redemption

California sought to relabel its impermissible penalties on secured tax claims as interest that was facially permissible under section 506(b), and hoped that the analysis would cease at "interest." It should not, and the general impermissibility of penalties under federal bankruptcy law should trump the state law relabeling such penalties as "interest."

        28.     The County has also failed to explain why section 4103(b) is applicable in this instance. That statute on its face applies only to "any claim in a bankruptcy proceeding". The County maintains that it has asserted no claim in the bankruptcy proceeding. Reply at ¶ 2 ("The County admits that it did not file a proof of claim . . . ."). Instead, the County claims to be asking this Court to permit the enforceability of its non-bankruptcy rights after the bankruptcy proceeding has concluded and the County has declined to participate in it. If the County's argument is accepted, then the issue for this Court to determine is whether the County has a lien on account of the penalties it has validly imposed, or whether that lien was imposed on account of penalties that could not be imposed in the first place because of the L.A. Times's bankruptcy proceeding. What the County has not explained is how it never asserted a claim in the L.A. Times's bankruptcy proceeding, yet now asserts that it is doing so in order to get the benefit of section 4103(b).

---

penalties."). The <u>Collier I</u> court later overturned <u>Collier I</u> in <u>In re Collier</u>, 2009 Bankr. LEXIS 4270, Case No. 08-43740 (Bankr. N.D. Cal. Jan. 5, 2009) ("<u>Collier II</u>"). In <u>Collier II</u>, the bankruptcy court did not readdress its holding in <u>Collier I</u> that section 4103(b) of the CA Tax Code was preempted by the Constitution. <u>Id.</u> at *1-2 ("In [<u>Collier I</u>], the Court tentatively held that Cal. Rev. & Tax. Code § 4103(b) violated the Supremacy Clause of the United States Constitution and was therefore void. Before making its ruling final, the Court gave notice to the California Attorney General of its right to intervene and brief the issue pursuant to 28 U.S.C. § 2403(b). The Court now rescinds that notice, having concluded that the issue is moot in the context of a chapter 13 plan."). It instead overturned <u>Collier I</u> because it discovered through supplemental briefing that, as discussed above, <u>County of Orange</u>, in which it based a portion of its <u>Collier I</u> opinion, was legislatively overruled. <u>See</u> 2009 Bankr. LEXIS at *2-3. With little to no explanation, the <u>Collier II</u> court then determined that the redemption penalties could be "charges," and therefore allowable under section 506(b). <u>See id.</u> at *3.

**D.    The Delinquent Penalties and Redemption Penalties are not "Reasonable"**
**"Fees, Costs or Charges" Under Section 506(b) of the Bankruptcy Code**

29.    Assuming that the Redemption Penalties are, in fact, penalties, then those

penalties can be the basis for a claim by the County only if they are "fees, costs or charges"

within the meaning of section 506(b) of the Bankruptcy Code, and, if they are, only if they are

"reasonable" fees, costs or charges.  Specifically, under section 506(b), if a holder of an allowed

secured claim is oversecured, "there shall be allowed to the holder of such claim . . . any reasonable

fees, costs, or charges provided for under the agreement or State statute under which such claim

arose."  11 U.S.C. § 506(b).  The burden is on the County to establish every element of section

506(b), therefore, it must prove that the penalties are "fees, costs, or charges" and, if they are, that

they are "reasonable."  See, e.g., In re Hernandez, 303 B.R. 342, 345 (Bankr. S.D. Ohio 2003)

("When claiming interest, fees, and expenses, the creditor carries the burden of showing that it has

met the elements of section 506(b).  In order to do so the creditor must show that (1) it has an

allowed secured claim; (2) the claim is over secured; (3) the underlying agreement provides for the

borrower to pay the lender's fees; and (4) the fees are reasonable.").

30.    There is no universally accepted definition of "fees, costs, or charges."  In

one recent case, the court analyzed a long line of prior cases in its attempt to determine if a

penalty was a fee, cost or charge under section 506(b).  See In re Gift, 469 B.R. 800 (Bankr.

M.D. Tenn. 2012).  After a lengthy discussion, the court determined that "the term penalty has a

distinct meaning that does not properly fit within the parameters of 'fees, costs, or charges.'"  Id.

at 808.  The Gift court set out the numerous reasons why penalties are not fees, costs, or charges,

namely because (i) "[t]he drafters of the Bankruptcy Code elsewhere used the words 'penalties,'

'fees,' 'costs' or 'charges' as if their meanings are distinct, (ii) "in many other contexts,

Congress has recognized that 'penalties' are different from 'fees', 'costs' or 'charges' and (iii)

dictionary definitions show that "a penalty is inherently different from a fee, cost, or charge[.]" See id. at 806-807 (addressing at length In re Brentwood Outpatient, Ltd., 134 B.R. 267 (Bankr. M.D. Tenn. 1991), aff'd, 152 B.R. 727 (M.D. Tenn. 1993), rev'd on other grounds, 43 F.3d 256 (6th Cir. 1994)) (additional citations omitted).  On this final point, the court supported Brentwood's belief that penalties conventionally include some concept of punishment, while charges involve ordinary duties, burdens or obligations, fees usually include compensation for goods, and costs typically include reimbursement of expenses.  Id. at 807 (citing Brentwood, 134 B.R. at 271-273; Black's Law Dictionary 1290 (4th ed. rev. 1968)).

31.    Here, the Redemption Penalties and the Delinquent Penalties are not fees, costs or charges.  If the penalties were intended to be fees, costs or charges, the California legislature could have so provided.  Section 4102 of the CA Tax Code provides that the amount necessary to redeem property taxes is the sum of: "(a) The total amount of all prior year defaulted taxes[,] (b)  Delinquent penalties and costs[,] (c) Redemption penalties[, and] (d) . . . A redemption fee of five dollars ($5) . . . ."  Cal. Rev. & Tax. Code § 4102.  It is clear, then, that the legislature understood that "costs" and "fees" are distinct from "penalties" because they are separately enumerated.  As for charges, for the same reasons discussed above in the discussion of Gift, the Delinquent Penalties and the Redemption Penalties are not charges.[11]  They have no other purpose but to be punitive.

32.    Finally, the L.A. Times notes that even if the Delinquent Penalties and the Redemption Penalties are fees, costs, or charges, the County has not met its burden of proving that they are reasonable.  A 506(b) reasonableness determination is one of federal law.  See, e.g.,

---

[11] The Gift court recognized in a footnote that in Collier II, the U.S. Bankruptcy Court for the Northern District of California determined that postpetition penalties are not fees or costs, but qualify as charges.  See Gift, 469 B.R. at 809 n.6; Collier II, 2009 Bankr. LEXIS at *3.  Collier II's conclusion that post-petition penalties are charges is, however, unsupported by any analysis in the court's opinion.

In re Ryker, 2007 U.S. App. LEXIS 17993, Case No. 06-1872, *10 (3d Cir. July 26, 2007) ("Because § 506(b) is applicable here, the Bankruptcy Court was not required to look to state law in determining what was reasonable."); 10 Collier on Bankruptcy ¶ 506.04[3][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) ("The courts have been fairly uniform in holding that they have inherent power to determine the reasonableness of the amount of any attorney's fees to be allowed under section 506(b) and that reasonableness is to be determined in accordance with federal standards.").

33.     There is no universally accepted standard for what is "reasonable" for purposes of section 506(b).  Here, if the Court determines that the Delinquent Penalties and the Redemption Penalties are allowable under 506(b) and that they are fees, costs or charges, the Court will make an independent determination of reasonableness.  The County has produced no evidence in the record regarding the reasonableness of the amount of such penalties, only that the amount is mandated by the CA Tax Code, and that similar *interest rates*, as opposed to the penalties currently before the Court, have been allowed in other cases.  Furthermore, the reasonableness of the penalties sought to be imposed by the County must be considered in light of the facts of this case.  The L.A. Times attempted to pay its property tax obligation to the County, but was blocked by the fact of its chapter 11 filing.  Joint Pretrial Memo ¶ 15.  When the L.A. Times's accounts were unfrozen, it had obtained authorization from this Court to pay its prepetition tax obligations, and it had learned that its prior efforts to make the payment were unsuccessful, the L.A. Times promptly paid the full principal amount of its tax obligations.  Id.

34.     In contrast, the County took 18 months to raise any issues respecting that payment, was silent for more than two years after being advised by the L.A. Times of the bankruptcy's impact on this matter, and then waited another two years – until five months after

confirmation of the Plan – to engage with the L.A. Times, after which it took several more months to file its motion seeking relief from the Discharge Injunction it had notice of but did not oppose.  Id. at ¶¶ 2, 25-29.  The County maintains that through the over four-and-a-half year period after the L.A. Times paid the principal amount of its taxes, the County is entitled to "reasonable" penalties of 18% per annum.  There is no reasonable basis for this Court to concur.

35.  An illustrative comparison to the instant case is the Third Circuit's opinion in In re Nixon, 2010 U.S. App. LEXIS 25551, Case No. 09-3135 (3d Cir. Dec. 15, 2010).  In Nixon, a chapter 13 debtor defaulted on a bank loan.  The bank obtained a judgment against the debtor and assigned it to a third party.  After the debtor then filed bankruptcy, the third party filed a proof of claim for the amount of the judgment plus interest, fees and costs.  Id. at *1-5. The bankruptcy court noted that the third party had asked for extended briefing while continuing to charge interest and also noted the third party creditor's lack of diligence in pursuing the claim. Id. at *3-5.  Although the bankruptcy court determined that the contract rate of interest was appropriate, using its powers under section 105 of the Bankruptcy Code, it nonetheless modified the 506(b) interest award.  See id. at *10 ("Here, both the Bankruptcy Judge and the District Court Judge evidently believed that [creditor] was 'running up the tab' at the expense of others.").  The Third Circuit affirmed, stating: "The Bankruptcy Court's modification of the interest awarded to [creditor] under § 506(b) was within its discretion and the parameters of the [Bankruptcy] Code.  [Creditor] received interest on his claim until September 11, 2008, at which point the Bankruptcy Court tolled the interest due to '[creditor's] purposeful delay of the proceedings.'  [Creditor's] purposeful delay can be fairly categorized as an 'abuse of process,' something that § 105(a) specifically empowers the Bankruptcy Court to address.").  Id.

36.     Here, and again assuming that the Redemption Penalties and the Delinquent Penalties are not interest but "fees, costs or charges" that must be "reasonable" under section 506(b), the Court should apply a similar analysis.  Similar to the <u>Nixon</u> case, the L.A. Times paid the principal amount of the first installment of the taxes, in full, in February 2009 and timely paid the second installment in full.  The County, after having filed a proof of claim with respect to other taxes, decided not to file a claim with respect to the taxes at issue in this dispute and then, after waiting over a year past the Bar Date, sent a statement to the L.A. Times assessing penalties.  Joint Pretrial Memo ¶ 23-25.  The L.A. Times then sent the 2010 Letter to the County within days of receipt of such statement.  <u>Id.</u> ¶ 25.  The County then waited over an additional two years past the date of the 2010 Letter to retain counsel and to respond to the L.A. Times, all while the L.A. Times continued to try to reach out to the County via the 2011 Letter and the 2012 Letter.  <u>Id.</u> ¶ 26-29.  Throughout this entire time, the Redemption Penalties have purportedly continued to compound month after month.  This is the exact sort of "abuse of process" and "purposeful delay" proscribed by the Third Circuit in <u>Nixon</u>, and denial of the County's request should result therefrom.

37.     Third, and finally, the Delinquent Penalties, by their very nature, are unreasonable because they allow for double recovery or double penalization by the County.  In <u>In re 785 Partners,</u> the U.S. Bankruptcy Court for the Southern District of New York disallowed a contracted-to 5% late payment premium which was asserted on top of a contracted-to default rate of interest.  470 B.R. 126, 137-138 (Bankr. S.D.N.Y. 2012).  The court stated, in relevant part:

> On a separate note, the secured creditor is limited under 11 U.S.C. § 506(b) to recovering "reasonable" fees provided for in the agreement. "The decisional law is uniform that oversecured creditors may receive payment of either default interest or late

> charges, but not both."  The reason is that the late fee and default
> interest are designed to compensate the lender for the same injury,
> and awarding both amounts to double recovery.

Id. at 137 (internal citations omitted).  Here, the County is seeking to collect the Redemption

Penalties, which themselves are not interest, and is also seeking to collect the 10% Delinquent

Penalties, which is the same "double recovery" forbidden by In re 785 Partners.  Accordingly, at

a minimum, even if the County is authorized to collect Redemption Penalties from the L.A.

Times, the Delinquent Penalties should be disallowed.

[Remainder of Page Left Intentionally Blank]

## CONCLUSION

38.    For the above-stated reasons, the Debtors respectfully request that the Court (i) deny the Motion in its entirety, (ii) affirm that the Discharge Injunction bars the County's claims and operates to enjoin the County from exercising any non-bankruptcy rights it may claim with respect to the Properties or the claims described in the Motion, (iii) determine that the County is not entitled to collect the Delinquent Penalty or the Redemption Penalties, and (iv) grant such other and further relief as is just and proper.


Dated: Wilmington, Delaware            Respectfully submitted,
       November 7, 2013

                                       SIDLEY AUSTIN LLP
                                       James F. Conlan
       Bryan Krakauer
       Kenneth P. Kansa
       Matthew G. Martinez
       One South Dearborn Street
       Chicago, Illinois 60603
       Telephone: (312) 853-7000
       Facsimile:  (312) 853-7036

            -and-

       COLE, SCHOTZ, MEISEL,
       FORMAN & LEONARD, P.A.

       By: __/s/ J. Kate Stickles____
       Norman L. Pernick (No. 2290)
       J. Kate Stickles (No. 2917)
       500 Delaware Avenue, Suite 1410
       Wilmington, Delaware 19801
       Telephone: (302) 652-3131
       Facsimile:  (302) 652-3117

       ATTORNEYS FOR REORGANIZED DEBTORS