## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | CHAPTER 11 |
|  | : | (Jointly Administered) |
| **TRIBUNE COMPANY,** *et al.*[1] | : |  |
|  | : | Case No. 08-13141 (KJC) |
| Debtors | : | (Re: D.I. 10053) |

## MEMORANDUM SUSTAINING OBJECTION TO
## CLAIM OF JOANN PARKER[2]

**BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

Joann Parker is a former employee of Chicago Tribune Company ("CTC"), one of the

Debtors that filed a chapter 11 bankruptcy petition in this Court. (Case No. 08-13152). In

September 2011, Ms. Parker filed three claims against CTC, alleging damages occasioned by

employment discrimination.   Currently before the Court are: (i) the Debtors' objection to Ms.

Parker's claims; and (ii) Ms. Parker's *pro se* motion for leave to file a late proof of claim.[3]

---

[1]The chapter 11 case filed by Tribune Media Services, Inc. (Bky. Case No. 08-13236) is being jointly administered with the Tribune Company bankruptcy case and 109 additional affiliated debtors pursuant to the Order dated December 10, 2008 (docket no. 43).   An additional debtor, Tribune CNLBC, LLC (formerly known as Chicago National League Baseball Club, LLC) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009 (Bky. Case No. 09-13496), and also is being jointly administered with the Tribune Company bankruptcy case pursuant to this Court's Order dated October 14, 2009 (docket no. 2333). The debtors in the jointly administered cases are referred to herein as the "Debtors."

[2]This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the matters before it pursuant to 28 U.S.C. §1334 and §157(a).   This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(B).

[3]On October 21, 2011, the Debtors filed the Debtors' Forty-Eighth Omnibus (Non-Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1 (D.I. 10053) (the "Claim Objection").   Attached to claim number 6797, received by the Debtors' claims agent (Epiq Bankruptcy Solutions, LLC, hereinafter, "Epiq") on or about September 1, 2011, was Ms. Parker's "Pro Se Motion For Leave to File Late Proof of Claim" (the "Pro Se Motion").   The Pro Se Motion was not docketed in the main bankruptcy case, but will be considered along with the Claim Objection.

On March 21, 2012, the Debtors and Ms. Parker filed a Joint Pretrial Memorandum Regarding Evidentiary Hearing on Debtors' Forty-Eighth Omnibus (Non-Substantive) Objection to Claims (the "JPM") (D.I. 11207). An evidentiary hearing on the Claim Objection and Pro Se Motion was held on March 22, 2012, at which Ms. Parker was represented by counsel and testified.

For the reasons set forth below, the Debtors' objection to Ms. Parker's claims will be sustained, and Ms. Parker's motion to file a late proof of claim will be denied.

## Background

1.    Ms. Parker's employment and illness.

Ms. Parker was employed by CTC from 1985 until her employment was terminated on February 6, 2009. (JPM, ¶9). Ms. Parker has been diagnosed with Bipolar Disorder. (JPM, ¶10). From February through August of 2008, CTC placed Ms. Parker on short-term disability leave due to her mental condition. (JPM, ¶ 11). She returned to work, but she says that on December 8, 2008, she suffered a "bipolar crisis" and an anxiety attack that required hospitalization for about one week. (Tr. 32:25 - 33:23, 34:6 - 34:17).[4] After December 8, 2008, she was placed on long term disability leave until her employment terminated on February 6, 2009. (JPM, ¶11). Ms. Parker testified that when she returned home after her hospitalization in December 2008, her condition made it difficult for her to focus and perform everyday activities, such as cooking, bathing, reading mail, or watching the news. (Tr. 38:10 - 39:2). Mostly, she said, she slept. (*Id.*). Ms. Parker was prescribed medication to help her condition, but it did not

---

[4]Unless otherwise indicated, "Tr." indicates a reference to the transcript of the hearing held on March 22, 2012 (D.I. 11313).

help her manage day-to-day activities. (Tr. 55:21 - 56:3). She had to stop taking the medication after she lost her insurance coverage. (Tr. 56:12 - 56:21). Ms. Parker lived alone during the period from 2008 to 2010, but no guardian was appointed to help Ms. Parker. (Tr. 47:18 - 47:20, 54:2 - 54:8).

On July 22, 2009 and February 24, 2010, Ms. Parker was seen by a psychiatrist who diagnosed her with severe depression, poor motivation, and overall functional impairment. (JPM, ¶10). Her functional impairment may affect her ability to pay bills, open mail and other activities of daily living. (*Id.*). The psychiatrist did not testify at the evidentiary hearing.

2.    The Debtors' Bankruptcy Case.

CTC filed a chapter 11 bankruptcy petition in this Court on December 8, 2008 (the "Petition Date"). Ms. Parker was included on the Debtors' master creditor matrix, and the Debtors' claims agent, Epiq, mailed the Notice of Commencement of the Debtors' Chapter 11 Cases to Ms. Parker on December 24, 2008. (JPM, ¶21a). This Court established a bar date of June 12, 2009 (the "Bar Date") for filing proofs of claim against the Debtors.[5] (JPM, ¶21b). Written notice of the Bar Date was mailed on April 22, 2009 to, among others, all known creditors listed on the Debtors' Schedules, including Ms. Parker. (*Id.*). Ms. Parker did not file a proof of claim prior to the Bar Date. (*Id.*).

---

[5]Although paragraph 21b of the JPM states that the Bar Date is June 6, 2009, this Court's Order dated March 26, 2009 (D.I. 813) (the "Bar Date Order") provides that the general bar date for filing proofs of claim against the Debtors is **June 12, 2009**. Elsewhere in the JPM, the Bar Date is stated as June 12, 2009. (*See* JPM, ¶s 16, 17, and 18). Accordingly, I conclude that reference of June 6, 2009 in paragraph 21b of the JPM is a typographical error. Moreover, upon review of the Bar Date Order, I take judicial notice that the Bar Date is June 12, 2009. *In re Indian Palms Assoc., Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995) (The Third Circuit Court of Appeals decided that a court may take judicial notice of an adjudicative fact under Federal Rule of Evidence 201 that is not subject to reasonable dispute "as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority.")

On March 2, 2010, the Debtors filed Amended Schedules of Assets and Liabilities (the "Amended Schedules") with the Bankruptcy Court. (JPM, ¶21c). CTC's Amended Schedules reflected a claim by Ms. Parker in the amount of $2.35 relating to an uncashed payroll check as of the Petition Date. (*Id.*). In accordance with the Bar Date Order, Epiq mailed the Notice of Amendment to Schedules of Assets and Liabilities to all affected parties, including Ms. Parker (*Id.*).[6] Ms. Parker was afforded until April 6, 2010 (the "Supplemental Bar Date") to file a proof of claim on account of the Amended Schedules. (*Id.*). Ms. Parker did not file a proof of claim prior to April 6, 2010. (*Id.*).

3.    The Parker Litigation.

On May 22, 2009, and again on August 27, 2009, Ms. Parker filed charges with the Equal Employment Opportunity Commission ("EEOC") against CTC alleging race, age, and disability discrimination based on actions occurring between August 2008 and the Petition Date. (JPM, ¶12).

Ms. Parker received the EEOC Notice of Right to Sue and acted within the time period prescribed therein by filing a *pro se* complaint on August 24, 2009 in the Circuit Court of Cook County, Illinois (the "Illinois State Court"). (JPM, ¶13). The EEOC Notice of Right to Sue states that it was issued on request and was mailed on May 28, 2009. (*Id.*). Ms. Parker had a summons issued and served on CTC in connection with the commencement of the litigation. (*Id.*).

On September 30, 2009, CTC filed a motion to dismiss the litigation in Illinois State

---

[6]When CTC filed its Amended Schedules, CTC knew that Ms. Parker was represented by counsel in the litigation against CTC ; however, CTC did not list Ms. Parker's counsel on the master creditor matrix and did not provide Ms. Parker's counsel with notice of the Amended Schedules. (JPM, ¶22 and ¶23).

Court for failure to state a claim (the "2009 Motion to Dismiss") (JPM, ¶14). In footnote 2 to

the 2009 Motion to Dismiss, CTC raised the affirmative defense that "Plaintiff is barred from

pursuing damages for any claims that arose prior to December 8, 2008. CTC filed a petition for

bankruptcy protection on December 8, 2008 and Plaintiff did not file a Proof of Claim for any

claims preceding that date by the bar date of June 12, 2009, as required." (*Id.*).

On or about January 12, 2010, Ms. Parker retained counsel, who filed a notice of

appearance in the Illinois State Court litigation on February 25, 2010. (JPM, ¶15). Thereafter,

CTC served notices concerning the litigation on counsel, not on Ms. Parker directly. (*Id.*). The

litigation was subsequently removed to the United States District Court for the Northern District

of Illinois (the "Illinois District Court"). (*Id.*). In August 2010, Ms. Parker filed a second lawsuit

alleging employment discrimination on the basis of disability, which was consolidated with her

existing litigation and remains pending in the Illinois District Court (the "Parker Litigation").

(*Id.*).

On March 22, 2010, after Ms. Parker retained counsel, CTC filed a partial motion to

dismiss the Parker Litigation (the "2010 Motion to Dismiss") (JPM, ¶16). In footnote 1 of the

2010 Motion to Dismiss, CTC again raised the affirmative defense that "Plaintiff is barred from

pursing damages for any claims that arose prior to December 8, 2008. Defendant filed a petition

for bankruptcy protection on December 8, 2008 and Plaintiff did not file a Proof of Claim for any

claims preceding that date by the bar date of June 12, 2009, as required." (*Id.*).

On May 7, 2010, CTC filed an answer to the First Amended Complaint. (JPM, ¶17).

The first affirmative defense relates to Ms. Parker's failure to file a proof of claim with the

Bankruptcy Court prior to the Bar Date. (*Id.*).

On November 29, 2010, CTC filed an answer to the Second Amended Complaint.  (JPM, ¶18).  Similar to its answer to the First Amended Complaint, CTC's answer included a first affirmative defense related to Ms. Parker's failure to file a proof of claim prior to the Bar Date. (*Id.*).

On March 30 and 31, 2011, CTC deposed Ms. Parker in the Parker Litigation.  (JPM, ¶19).  At the deposition, which was attended by Ms. Parker's counsel, Ms. Parker was presented with the Bar Date Notice and a proof of claim form concerning the Bar Date of June 12, 2009. (*Id.*).  Ms. Parker testified that it was possible she received correspondence from CTC advising her of the Bar Date and the requirement to file a proof of claim. (*Id.*).

On July 8, 2011, CTC filed a motion for summary judgment in the Parker Litigation seeking: (i) summary judgment as to all prepetition claims and causes of action in the Parker Litigation on the grounds that such claims were barred due to Ms. Parker's failure to file a proof of claim prior to the Bar Date, and (ii) summary judgment dismissing all post-petition claims and causes of action in the Parker Litigation.  (JPM, ¶20).  By Order dated November 22, 2011, the Illinois District Court granted, in part, CTC's motion for summary judgment by dismissing certain causes of action alleged by Ms. Parker that arose after the Petition Date. (JPM, ¶15, n.4).

4.      Ms. Parker's proofs of claim and related motions.

On August 29, 2011, Ms. Parker mailed a proof of claim to Epiq, which attached the Pro Se Motion seeking allowance of a late-filed proof of claim on grounds of excusable neglect due to Ms. Parker's "bi-polar and depression." (JPM, ¶4).[7]  Epiq received the proof of claim on

---

[7]Although the procedural background of this matter is not part of the JPM's Statement of Uncontested Facts, it appears that there is no dispute about the procedural background.

September 1, 2011 and assigned it Claim Number 6797. (*Id.*). Epiq also received a copy of the

proof of claim (without the Pro Se Motion) on September 1, 2011 from Ms. Parker and assigned

it Claim Number 6798. (*Id.*). On September 6, 2011, the Clerk of the Bankruptcy Court

forwarded a copy of Ms. Parker's proof of claim to Epiq, which was marked as Claim Number

6801. (*Id.*). (Claim Nos. 6797, 6798, and 6801 are referred to collectively herein as the "Parker

Claims"). Each of the Parker Claims asserts claims based on the causes of action pled in the

Parker Litigation in an unliquidated amount, estimated by Ms. Parker to be $125,000. (*Id.*).

On October 21, 2011, the Debtors filed the Claim Objection. (JPM, ¶5; D.I. 10053). Ms.

Parker filed a response to the Claim Objection on November 10, 2011 (JPM, ¶6; D.I. 10193).

Ms. Parker attached supporting documents to her Response, including an "Attending Physician

Statement" and excerpts from Ms. Parker's deposition taken by CTC's counsel in the Parker

Litigation. (JPM, ¶6).

On January 11, 2012, this Court held a preliminary hearing on the Claim Objection and

Response, at which the parties presented oral argument. (JPM, ¶7). On March 16, 2012, this

Court held a teleconference on Ms. Parker's Motion for Leave to Allow Expert Witness Opinion

Testimony Telephonically or, in the Alternative, for an Extension of Time to Take the

Evidentiary Deposition of her Expert Witness for Admission of Testimony Pursuant to Federal

Rule of Civil Procedures 32(a)(3)(B) (D.I. 11145) and the Debtors' objection thereto (D.I.

11150). At the teleconference, the Debtors stipulated to the facts as set forth in the Attending

Physician Statement regarding Ms. Parker's condition, although the Debtors did not stipulate that

her condition resulted in her inability to meet the proof of claim filing deadline. (Tr. 3/16/2012

at 8 - 9).

## Discussion

1. <u>Excusable Neglect</u>

In the Claim Objection, the Debtors ask this Court to disallow and expunge the Parker Claims because those claims were filed after the applicable Bar Date.[8] Ms. Parker asserts that she should be permitted to file a late proof of claim in CTC's bankruptcy case because she meets the standard for "excusable neglect."

Bankruptcy Rule 3003(c)(3), applicable to chapter 11 bankruptcy cases, provides that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Fed.R.Bankr.P. 3003(c)(3). Bankruptcy Rule 9006(b)(1) provides, in pertinent part, that "when an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed.R.Bankr.P. 9006(b)

The United States Supreme Court articulated the now well-known standard for excusable neglect in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). When deciding whether a party's neglect of a deadline was "excusable," the *Pioneer* Court held that the determination was "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The *Pioneer* Court then listed four factors for consideration: (i) the danger of prejudice to the debtor; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including

---

[8]The Debtors also seek disallowance of Claim Numbers 6798 and 6801 as duplicative of Claim Number 6797. Ms. Parker does not contest that the claims are duplicative.

whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. *Id.* "All factors must be considered and balanced; no one factor trumps the others." *Hefta v. Off'l Comm. Of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127, 133 (3d Cir. 2005) citing *George Harms Constr. Co., Inc. v. Chao*, 371 F.3d 156, 164 (3d Cir. 2004).

      (A)    <u>Prejudice</u>

The first *Pioneer* factor, prejudice, does not refer to an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence. *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl Energy, Inc.)*, 188 F.3d 116, 127 (3d Cir. 1999) . When addressing the issue of prejudice under the *Pioneer* test, the *O'Brien* Court discussed several relevant considerations, including: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor; and (v) whether allowance of the claim would open the floodgates to other late claims. *Pro-Tec Serv., LLC v. Inacom Corp. (In re Inacom Corp.)* No. 00-2426, 2004 WL 2283599 at *4 (D.Del. Oct. 4, 2004) *citing O'Brien Envtl.*, 188 F.3d at 126-28.

The Debtors do not argue strenuously that (i), (ii), (iii) or (iv) of the *O'Brien* prejudice factors are present in this case. Instead, the Debtors argue that allowing Ms. Parker to file late proofs of claim would "open the floodgates" to the filing of other late claims. (Tr. 3/22/2012 at 82 - 84). However, there is no evidence in the record showing that concern about a possible

deluge of late-filed unsecured claims is real and not merely hypothetical. *See American Classic Voyages*, 405 F.3d at 133-34 (concluding that allowing a late-filed claim would prejudice the debtor when the debtor stated that over $5 million of late claims had been filed, and both the debtor and official committee of unsecured creditors continued to receive numerous inquiries from prospective claimants).

There is no denying the importance of a bar date in a chapter 11 bankruptcy case. As stated in *In re U.S. Airways, Inc.*, 2005 WL 3676186 (Bankr. E.D.Va. Nov. 21, 2005):

> The establishment and enforcement of a bar date for filing claims "furthers the policy of finality designed to protect the interests of a debtor and his diligent creditors and the expeditious administration of the bankruptcy case." *In re Peters*, 90 B.R. 588, 597 (Bankr. N.D.N.Y. 1988). Furthermore, "to allow the debtor to be continually pursued by his creditors ad infinitum ... would be to sanction a form of slow torture contrary to the spirit and purposes of the bankruptcy laws." *Id.* (quoting *Maine Bonding & Casualty Co. v. Grant (In re Grant)*, 45 B.R. 262, 264 (Bankr. D.Me.1984)).

*U.S. Airways*, 2005 WL 3676186 at *7 - *8. However, without specific evidence demonstrating more concretely any prejudice to the Debtors, this factor does not weigh heavily against a finding of excusable neglect.

(B)    Length of delay and impact on judicial proceedings

The second *Pioneer* factor to consider is the length of the delay in filing the proof of claim and the impact of the delay on the judicial proceedings. Here, the Parker Claims were filed over two years after the Bar Date. The parties have stipulated that on at least five occasions during that time, the Debtors filed various motions and answers in the Parker Litigation noting Ms. Parker's failure to file a timely proof of claim and arguing that this failure prevented her from pursuing any claims based upon the Debtors' prepetition actions. Specifically, the Debtors

noted Ms. Parker's failure to file a proof of claim in the following pleadings: (i) a motion to

dismiss filed on September 30, 2009; (ii) a partial motion to dismiss filed on March 22, 2010;

(iii) an answer to the first amended complaint filed on May 7, 2010; (iv) an answer to the second

amended complaint filed on November 29, 2010; and (v) a motion for summary judgment filed

on July 8, 2011. Ms. Parker's failure to file a timely proof of claim was also discussed at

depositions in the Parker Litigation held on March 30 and 31, 2011.

Although Ms. Parker filed her original complaint against the Debtors *pro se*, she was

represented by counsel after January 12, 2010.  The Parker Claims were not filed for another year

and eight months after Ms. Parker hired counsel. In absolute terms, the delay of over two years

after the Bar Date, and one year and eight months after hiring counsel, is significant.

However, the impact of the delay on the Debtors' bankruptcy case is less significant.

Although the Debtors and numerous other parties endeavored mightily to obtain confirmation of

a plan of reorganization throughout the two-year period, plan confirmation was not achieved until

July 23, 2012 (D.I. 12074), *after* the Parker Claims were filed. Following a hotly contested trial

on plan confirmation, I determined that the Debtors' total distributable value based upon reports

dated January 2011 was $7.019 billion. *In re Tribune Co.,* 464 B.R. 126, 151 (Bankr. D.Del.

2011).  Therefore, on this record, I cannot conclude that Ms. Parker's claim, which she estimated

to be $125,000, would have had a meaningful impact on the plan negotiations and anticipated

distributions.  The lateness of the claim filing is offset by the minimal impact on the Debtors'

bankruptcy case, meaning that this factor also does not weigh heavily either for or against a

finding of excusable neglect.

(C)    <u>Good faith of the movant</u>

There is nothing in the record to indicate that Ms. Parker acted in bad faith.

(D)    <u>Reason for the delay, including whether it was within the reasonable control of the movant.</u>

The crux of the parties' arguments in this case center around the third *Pioneer* factor, which, under these circumstances, is the determining factor: the reason for the delay in filing the Parker Claims and whether that delay was within Ms. Parker's reasonable control. Ms. Parker argues that the delay was not within her control due to her illness, which affected her daily activities. This issue requires a review of the specific facts in evidence regarding Ms. Parker's condition during the relevant time period.

The parties have stipulated that Ms. Parker was listed on the Debtors' master creditor matrix and was mailed notice of the Debtors' bankruptcy filing and of the Bar Date. (JPM, ¶21a, ¶21b). Ms. Parker testified, however, that her condition affected her ability to collect and read her mail. (Tr. 38:20 - 39:2). She stated that she would "eventually" collect mail that was delivered to her door, stating: "I would go and open the door and there would be a lot of [mail] there and it would fall in when I opened the door." (Tr. 39:3 - 39:14). She kept the piles, but did not open and read the mail. (Tr. 45:6 - 45:25). However, she also testified she was able to recognize and open certain mail, such as gas or electric bills, and disability checks. (Tr. 45:7 - 45:17; 54:14 - 55:3).[9] Ms. Parker has also been able to pay her gas and electric bills and her taxes. (Tr. 55:4 - 55:16).

---

[9]The Debtors' attorney asked Ms. Parker, "[H]ow did you know to pay your utilities?" and Ms. Parker responded "Well, you're not insane or crazy or anything. You are aware that you have to exist somehow. So you know that you have to do something about lights and then gas. But that was after a couple months [after hospitalization] even with that." (Tr. 43:21 - 44:1).

Ms. Parker said that she did not recall getting mail in 2009 or 2010 that identified Tribune as the sender. (Tr. 46:5- 46:7). The Debtors notified Ms. Parker by telephone that her employment was being terminated in February 2009, and the Debtors mailed forms to her in connection with the termination, but she did not open those letters for a few weeks. (Tr. 46:8 - 47:7).

In May of 2009, Ms. Parker was able to leave her house and travel to the EEOC to file a charge against CTC. (Tr. 48:25 - 49:22). After filing the charge, the EEOC sent Ms. Parker a "Right to Sue" letter, which she opened because it was delivered by certified mail and she was notified by telephone that it was coming. (Tr. 49:23 - 50:11; 58:13 - 59:1). On August 24, 2009, Ms. Parker filed a *pro se* complaint against CTC in Illinois State Court with the help of a friend. (JPM, ¶13; Tr. 51:5 - 52:1).

Based upon this record, I conclude that it was within Ms. Parker's control to file a claim during the period of mid-April 2009 and the Bar Date of June 12, 2009.[10] Although she asserts that her condition prevented her from opening mail during that time, she was able to open mail that she determined was important - - those for utility bills and disability checks. She was able to pay her utility bills and her taxes. Also, during that time, she traveled to the EEOC to file a claim against CTC. Later, in August 2009, albeit with help from a friend, she prepared and filed a *pro se* complaint against the Debtors in Illinois State Court. When she was told to appear in court or face dismissal of her case against CTC, she went to court. (Tr. 50:20 - 51:4). Although Ms. Parker testified that she still suffers from her illness (Tr. 40:14 - 40:17), I observe that she was

---

[10]Ex. 3, admitted by agreement, is a copy of the Affidavit of Mailing of the Bar Date Order, showing that the Order was mailed to creditors on April 13, 2009.

alert and responsive during direct examination by her counsel and particularly keen in responding to Debtors' counsel on cross-examination.

In short, despite her illness, she reviewed her mail and acted purposefully and selectively. She made conscious decisions about which bills and other matters required her attention and action. She was able to avail herself of EEOC assistance and commenced a lawsuit in state court against CTC. Accordingly, although I am not unsympathetic to Ms. Parker's plight, I conclude that the evidence relating to the third *Pioneer* factor precludes a finding of excusable neglect pursuant to Bankruptcy Rule 9006(b)(1).

2.      Bankruptcy Rule 3003(c)(3)

Also at issue is whether Ms. Parker is entitled to an extension of time to file a proof of claim pursuant to Bankruptcy Rule 3003(c)(3), which incorporates Bankruptcy Rule 3002(c)(2):

> In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.

Fed.R.Bankr.P. 3002(c)(2). There is nothing in the record to indicate that Ms. Parker was ever determined to be an incompetent person or had a representative appointed for her. As discussed above, the evidence demonstrated that Ms. Parker was able to open and cash disability checks, pay utility bills and taxes, and meet deadlines and file a lawsuit regarding her EEOC claims. Therefore, it is not in the "interests of justice" to extend the Bar Date for Ms. Parker.

3.      Due Process Issues Arising from the Supplemental Bar Date

The Court also is asked to determine whether Ms. Parker was denied due process of law when the Debtors provided notice of the filing of their Amended Schedules upon Ms. Parker, but not upon Ms. Parker's attorney. The parties do not dispute that, at the time notice of the Debtors'

14

Amended Schedules was served, Ms. Parker was represented by counsel. The Debtors did not

add Ms. Parker's counsel to the master creditor matrix and did not provide Ms. Parker's counsel

with notice of the Amended Schedules. (JPM, ¶22).  When the Debtors referred to the original

Bar Date in a number of their filings in the Parker Litigation, and during a deposition of Ms.

Parker in March 2011, the Debtors did not refer to the Supplemental Bar Date of April 6, 2010.

(JPM, ¶17, ¶18, and ¶19).

The Debtors argue that they were not required to provide notice to Ms. Parker's counsel

or to cite to the Supplemental Bar Date in the Parker Litigation because the claim of $2.35 listed

in the Amended Schedules for Ms. Parker was based upon an uncashed check, and did not affect

Ms. Parker's pre-petition employment discrimination claim.

The Bar Date Order provided in relevant part:

> Amended Schedules Bar Date.  If, on or after the date on which the Debtors serve this
> Notice, the Debtors amend or supplement their schedules of assets and liabilities, list
> of equity holders, and statements of financial affairs (collectively, the "Schedules")
> (i) to reduce the undisputed, noncontingent and liquidated amount of a claim, (ii) to
> change the nature or characterization of a claim, or (iii) to add a new claim to the
> Schedules, the affected claimant is required to file a proof of claim or amend any
> previously filed proof of claim in respect of the amended schedules claim so that the
> proof of claim is actually received by Epiq on or before the later of (x) the General
> Bar Date or (y) thirty (30) days after the claimant is served with notice of the
> applicable amendment or supplement to the Schedules.

(D.I. 813).  The Bar Date Order permits post-Bar Date filing of proofs of claim based only on the

"amended schedules claim."  Ms. Parker's employment discrimination claim does not arise out of

the same facts or circumstances as the uncashed check claim listed on the Amended Schedules,

thus the amendment did not extend the time for filing her employment discrimination claim.[11]

Therefore, the Debtors' oversight in serving the Amended Schedules on Ms. Parker's counsel is irrelevant.

### Conclusion

For the foregoing reasons, the Debtors' objection to the Parker Claims will be sustained, and Ms. Parker's motion for leave to file a late proof of claim will be denied. An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: November 8, 2013

---

[11]If Ms. Parker had filed a timely claim related to the uncashed check before the Supplemental Bar Date, she could not then amend the timely claim to add a claim that does not arise out of the same facts or circumstances as the timely filed claim. *See In re Ben Franklin Hotel Assoc.,* 186 F.3d 301, 309 (3d Cir. 1999) (deciding that a bankruptcy court did not abuse its discretion when holding that amendments to proofs of claim should be freely allowed where the purpose is to cure defects in a claim as originally filed, to describe a claim with greater particularity, or to plead new theories of recovery *on facts set forth in the original claim.*) (emphasis added); *Plains Marketing, L.P. v. Bank of America, N.A. (In re SemCrude, L.P.),* 443 B.R. 472, 477 (Bankr. D.Del. 2011) ("Once the deadline to file claims has passed, 'an amendment to a claim filed post bar date must be scrutinized to assure that it is not an attempt to file a new claim.'") quoting *Hatzel & Buehler, Inc. v. Station Plaza Assoc., L.P.,* 150 B.R. 560, 562 (Bankr. D.Del. 1993).