# EXHIBIT A

**In Re. Tribune Company, et al.,**
**Case No. 08-13141 (KJC)**

# Tribune Litigation Trust

QUARTERLY SUMMARY REPORT

*Prepared Pursuant to Section 8.1 of the Tribune Litigation Trust Agreement*

*For reporting period beginning July 1, 2013 and ending September 30, 2013*

# Tribune Litigation Trust

**September 2013 Quarterly Summary Report – UNAUDITED**

## Table of Contents

A. Background / Disclaimer ..... 3

B. a. Schedule of Cash Receipts and Disbursements – Quarterly ..... 6

b. Schedule of Cash Receipts and Disbursements – Cumulative ..... 7

C. Statement of Net Assets in Liquidation ..... 8

D. Statement of Changes in Net Assets in Liquidation ..... 9

E. Notes to the Financial Statements ..... 10

Note 1: Background to Establishing the Trust ..... 10

Note 2: Status of Prosecuting Litigation Claims ..... 11

Note 3: Liquidation Basis Accounting ..... 13

Note 4: Distributions to Liquidation Trust Interest Holders ..... 14

Note 5: Disputed Claims Reserve ..... 14

Note 6: Reserve for Litigation Costs ..... 15

Note 7: Taxes ..... 16

Note 8: Interests in the Trust ..... 16

Note 9: Litigation Trustee Fees ..... 17

F. Claims Analysis ..... 18

## A. Background / Disclaimer

(Unless otherwise defined herein, all capitalized terms have the same meaning as defined in the Plan.)

This Quarterly Summary Report of Tribune Litigation Trust (the "Trust"), established pursuant to the Trust Agreement (as defined below) for the purposes of administering the Litigation Trust Assets and making distributions on account of Litigation Trust Interests ("LTI") as provided for under the Fourth Amended Joint Plan of Reorganization for Tribune Company and its subsidiaries proposed by the Debtors, the official committee of unsecured creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P., and JPMorgan Chase Bank, N.A., (as modified July 19, 2012), (the "Plan"), to the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") covering the period from July 1, 2013 through September 30, 2013, was prepared pursuant to Section 8.1 of the Litigation Trust Agreement. This Quarterly Summary Report is limited in scope and covers only a limited time period. This Quarterly Summary Report was prepared in accordance with liquidation basis accounting. The financial data reflected in this document were not audited or reviewed by an independent registered public accounting firm and are subject to future adjustment, reclassification and/or reconciliation. Given its special purpose and limited scope, this report does not include all adjustments and notes that would be required to be reported in accordance with U. S. Generally Accepted Accounting Principles as adopted by the Financial Accounting Standards Board ("FASB"). Results set forth in the Quarterly Summary Report should not be viewed as indicative of future results. This disclaimer applies to all information contained herein.

On December 8, 2008 (the "Petition Date"), the Debtors commenced voluntary cases under Chapter 11 of title 11 of the United States Code with the Bankruptcy Court, Case No. 08-13141 (KJC). The Bankruptcy Court confirmed the Fourth Amended Joint Plan pursuant to Chapter 11 of the United States Bankruptcy Code that the Debtors filed with the Bankruptcy Court on July 20, 2012, by order, dated July 23, 2012, (the "Confirmation Order") [Docket No: 12074]. After the satisfaction or waiver of the conditions described in the Plan, the transactions contemplated by the Plan were consummated on December 31, 2012 (the "Effective Date").

The Plan provided for the creation of the Trust which was formed on December 31, 2012, pursuant to the execution of the Litigation Trust Agreement dated December 31, 2012 (the "Litigation Trust Agreement"), by and among the Tribune Company (for itself and on behalf of the other Debtors, as Debtors and Debtors in Possession, and the Guarantors Non-Debtors and Non-Guarantors Non Debtors) and Marc S. Kirschner, as the litigation trustee ("Litigation Trustee"). The beneficiaries of the Litigation Trust Assets (as defined below) include creditors of Tribune who have unsatisfied claims. The "Litigation Trust Assets" include any and all claims of the Debtors' Estates against (a) any person (including advisors to the Debtors) arising from the leveraged buy-out of Tribune that occurred in 2007, including, without limitation, the purchase by Tribune of its common stock on or about June 4, 2007, the merger and related transactions involving Tribune on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction; (b) Morgan Stanley Capital Services, Inc. ("MSCS") relating to (i) the acquisition, sale or disposition of any notes, bonds or other indebtedness of the Debtors held by MSCS, (ii) the interest rate swap transaction executed pursuant to the ISDA Master

Agreement dated as of August 5, 1994 between The Times Mirror Company and MSCS and (iii) any advisory engagement and/or advice given by, or information or analyses withheld, by MSCS; and (c) claims and causes of action against Non-Settling Step Two Payees to the extent such claims or causes of action seek recovery of payments (i) under the Senior Loan Agreement on account of the Incremental Senior Loans or (ii) under the Bridge Loan Agreement.

On the Effective Date, as per the Confirmation Order or the Litigation Trust Agreement, in accordance with section 1141 of the Bankruptcy Code, all of the Litigation Trust Assets, as well as the rights and powers of the Debtors' Estates applicable to the Litigation Trust Assets, automatically vested in the Trust, free and clear of all Claims and Interests for the benefit of the Litigation Trust Beneficiaries. Additionally, effective on the Effective Date, the initial members of the Litigation Trust Advisory Board: (i) Rodney Gaughan, representative of Deutsche Bank Trust Company Americas, as Successor Indenture Trustee for Certain Series of Senior Notes; (ii) Julie Becker, representative of Wilmington Trust Company, as Successor Indenture Trustee for the PHONES Notes; and (iii) William Niese ("Initial Members") serve as members of the Litigation Trust Advisory Board in accordance with the terms of the Plan and the Litigation Trust Agreement. In August 2013, Wilmington Trust Company replaced its original designee with Steven M. Cimalore to represent Wilmington Trust Company as its representative on the Litigation Trust Advisory Board. Furthermore, on the Effective Date, Reorganized Tribune, as lender, and the Litigation Trust, as borrower, became parties to the Trust Loan Agreement. The Trust Loan Agreement contains terms that are consistent with the terms set forth in Section 5.13 of the Plan.

The Trust is a successor-in-interest to the Debtors pursuant to the Plan and the Litigation Trust Agreement. The Trust has an initial term of five years from the Effective Date. However, the Bankruptcy Court may extend the term of the Trust for a finite period if certain conditions as set forth in Article 9 of the Litigation Trust Agreement are met.

The transfer of each of the Litigation Trust Assets to the Trust is treated for U.S. federal income tax purposes as a transfer of the Litigation Trust Assets (other than the amounts set aside in the LT Reserves if the LT Reserves are subject to an entity level tax) to the Litigation Trust Beneficiaries, followed by a transfer of the Litigation Trust Assets by the Litigation Trust Beneficiaries to the Trust. The Litigation Trust Beneficiaries are the grantors, deemed owners and beneficiaries of the Trust. The Debtors retained a valuation expert ("Valuation Expert") who as of the Effective Date determined solely for tax purposes and provided to the Debtors an estimated fair market value of the Litigation Trust Assets to be transferred to the Trust of $358.4 million. Notice of such valuation was filed with the Bankruptcy Court on January 4, 2013. The Valuation Expert's determination of the fair market value as of the Effective Date of all Litigation Trust Assets transferred to the Trust is being used by the Trust, the Litigation Trustee, and the Litigation Trust Beneficiaries for all U.S. federal income tax purposes, including for determining tax basis and gain or loss. The Trust was not involved in preparation of the valuation, and has no access to its underlying calculations.

The Litigation Trustee will file federal income tax returns for the Trust as a grantor trust in accordance with United States Treasury Regulation Section 1.671-4 and report, but not pay tax on, the Trust's tax items of income, gain, loss, deductions and credits ("LT Tax Items"). The holders of Trust

Interests shall report such LT Tax Items on their federal income tax returns and pay any resulting federal income tax liability on a pro rata basis.

As a successor-in-interest to certain litigation claims transferred from the Debtor, the Trust bears the responsibility for future reporting to the Bankruptcy Court. The Trust reports in accordance with liquidation basis accounting, which requires the reporting entity to report its assets and liabilities based on net realizable values. For purposes of the Quarterly Summary Report, the Trustee has assigned a value of $358.4 million to the assets for tax reporting purposes, based upon the Valuation Expert's conclusion. Recoveries of assets for the Trust are subject to the outcome of litigation and are speculative.

Valuation of assets requires making difficult estimates and judgments. The Debtor used the services of an independent valuation firm to make its estimates solely for tax purposes for Litigation Trust's assets. Estimates necessarily require assumptions, and changes in such assumptions over time could materially affect the results. Due to the inherently uncertain nature of estimates and the underlying assumptions, the actual cash to be received by the Trust from liquidation of assets and liabilities will likely be different than estimated. As the Trust has recoveries in respect of Litigation Trust Assets, the remaining value of the Trust's assets will be reduced by such amount from the Valuation Expert's determined value of $358.4 million of the Trust assets. The information provided in the notes to the financial statements is provided to offer additional information to the readers of this report. However, the information is not complete and should be read in conjunction with the Plan and Disclosure Statement. In addition, readers are encouraged to visit the Trust's website at www.TribuneTrustLitigation.com.

# B. a. Schedule of Cash Receipts and Disbursements – Quarterly

**Tribune Litigation Trust**
**September Quarterly 2013 Summary Report - UNAUDITED**
*Schedule of Cash Receipts and Disbursements - Quarterly*
For Quarter Ending September 30, 2013

| $ Actual | | Wilmington Trust - Disbursement Agent Account | Deutsche Bank - Trust Account | Deutsche Bank - Investment Account | Expense Fund | Total |
|---|---|---|---|---|---|---|
| **Beginning Cash - July 1, 2013** | | $ 4,854,822 | $ 175 | $ 9,999,995 | $ - | $ 14,854,992 |
| **Receipts** | | | | | | |
| Interest / Investment Income Received | (1) | $ 103 | $ - | $ - | $ - | $ 103 |
| Claim Liquidation - Other | (2) | $ 619,658 | $ - | $ - | | $ 619,658 |
| **Total Receipts** | | $ 619,761 | $ - | $ - | $ - | $ 619,761 |
| **Transfers** | | | | | | |
| Transfer Between Accounts | (2) | $ (619,658) | $ - | $ - | $ 619,658 | $ - |
| Transfer Between Accounts | (3) | $ (1,766) | $ - | $ - | $ 1,766 | $ - |
| **Total Transfers** | | $ (621,424) | $ - | $ - | $ 621,424 | $ - |
| **Disbursements / Payments** | | | | | | |
| Board Fees | (4) | $ (45,000) | $ - | $ - | $ - | $ (45,000) |
| Step Two Arrangers | (3) | $ (15,890) | $ - | $ - | $ - | $ (15,890) |
| Litigation Trustee Fees and Expenses | (5) | $ (106,894) | $ - | $ - | $ - | $ (106,894) |
| Litigation Trustee Professionals Fees and Expenses | (6) | $ (1,309,926) | $ - | $ - | $ - | $ (1,309,926) |
| Other Outside Services | (7) | $ (36,086) | $ - | $ - | $ - | $ (36,086) |
| | | $ - | $ - | $ - | $ - | $ - |
| **Total Disbursements and Payments** | | $ (1,513,795) | $ - | $ - | $ - | $ (1,513,795) |
| **Ending Cash - September 30, 2013** | | $ 3,339,364 | $ 175 | $ 9,999,995 | $ 621,424 | $ 13,960,958 |

**Notes:**

(1) Dividend / Interest Earned.

(2) Per the Litigation Trust Agreement 3.4(b), funds held in reserve from the Litigation Trust share of recoveries pursuant to (a) the Preserved Causes of Action against the Non-Settling Step Two Payees; and (b) global settlement with: (i) a number of clawback defendants who were sued by the Litigation Trust; and (ii) state court defendants.

(3) Per Litigation Trust Agreement, ninety percent of the proceeds received by the Litigation Trust from the pursuit of Preserved Causes of Action against the Non-Settling Step Two Payees is to be distributed to Step Two Arrangers. Remaining 10% of payment from (i) Knighthead Master Fund's of $9,415; and (ii) Allstate Life Insurance Co. of $8,240 to resolve the dispute over the Step Two Disgorgement is retained in the Trust Expense Fund.

(4) Tribune Litigation Trust Board Member's fee paid for the second quarter of 2013 pursuant to Section 4.8(a) of the Litigation Trust.

(5) Payment for 80% of Litigation Trustee's post Effective Date services.

(6) Disbursements made on account of professional services rendered.

(7) Disbursements made on account of web hosting, internet and computing expenses.

# b. Schedule of Cash Receipts and Disbursements – Cumulative

**Tribune Litigation Trust**
**September Quarterly 2013 Summary Report - UNAUDITED**
*Schedule of Cash Receipts and Disbursements - Cumulative*

For Period Beginning December 31, 2012 and Ending September 30, 2013

| $ Actual | | Wilmington Trust - Disbursement Agent Account | Deutsche Bank - Trust Account | Wilmington Trust - Investment Account | Deutsche Bank - Investment Account | Expense Fund | Total |
|---|---|---|---|---|---|---|---|
| **Beginning Cash - December 31, 2012** | | $ - | $ - | $ - | $ - | $ - | $ - |
| **Receipts** | | | | | | | |
| Proceeds from Litigation Trust Term Loan | (1) | $ 20,000,000 | $ - | $ - | $ - | $ - | $ 20,000,000 |
| Interest / Investment Income Received | (2) | $ 875 | $ 170 | $ - | $ - | $ - | $ 1,045 |
| Claim Liquidation - Non-Settling LBO Lenders | (3) | $ 17,655 | $ - | $ - | $ - | $ - | $ 17,655 |
| Claim Liquidation - Other | (4) | $ 619,658 | $ - | $ - | $ - | $ - | $ 619,658 |
| | | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Receipts** | | $ 20,638,189 | $ 170 | $ - | $ - | $ - | $ 20,638,359 |
| **Transfers** | | | | | | | |
| Transfer Between Two Trust Accounts | (5) | $ (10,000,000) | $ 10,000,000 | $ - | $ - | $ - | $ - |
| Investments of Trust Funds | (6) | $ (4,999,522) | $ (9,999,995) | $ 4,999,522 | $ 9,999,995 | $ - | $ (0) |
| Redemption of Trust Investments | | $ 4,999,522 | $ - | $ (4,999,522) | $ - | $ - | $ - |
| Transfer Between Accounts | (4) | $ (619,658) | $ - | $ - | $ - | $ 619,658 | $ - |
| Transfer Between Accounts | (3) | $ (1,766) | $ - | $ - | $ - | $ 1,766 | $ - |
| | | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Transfers** | | $ (10,621,424) | $ 5 | $ - | $ 9,999,995 | $ 621,424 | $ (0) |
| **Disbursements / Payments** | | | | | | | |
| Board Fees | (7) | $ (90,000) | $ - | $ - | $ - | $ - | $ (90,000) |
| Legal Counsel to Trust Board Fees | (8) | $ (9,684) | $ - | $ - | $ - | $ - | $ (9,684) |
| Step Two Arrangers | (3) | $ (15,890) | $ - | $ - | $ - | $ - | $ (15,890) |
| Litigation Trustee Fees and Expenses | (9) | $ (415,150) | $ - | $ - | $ - | $ - | $ (415,150) |
| D&O Insurance | (10) | $ (752,550) | $ - | $ - | $ - | $ - | $ (752,550) |
| Litigation Trustee Professionals Fees and Expenses | (11) | $ (5,276,897) | $ - | $ - | $ - | $ - | $ (5,276,897) |
| Other Outside Services | (12) | $ (85,375) | $ - | $ - | $ - | $ - | $ (85,375) |
| Bank Fees and Expenses | (13) | $ (31,856) | $ - | $ - | $ - | $ - | $ (31,856) |
| **Total Disbursements and Payments** | | $ (6,677,400) | $ - | $ - | $ - | $ - | $ (6,677,400) |
| **Ending Cash - September 30, 2013** | | $ 3,339,364 | $ 175 | $ - | $ 9,999,995 | $ 621,424 | $ 13,960,958 |

**Notes:**

(1) The Tribune Litigation Plan became effective on December 31, 2012. This is the initial funding for the Tribune Litigation Trust. There is no interest expense on the loan.

(2) Dividend / interest earned.

(3) Per Litigation Trust Agreement, ninety percent of the proceeds received by the Litigation Trust from the pursuit of Preserved Causes of Action against the Non-Settling Step Two Payees is to be distributed to Step Two Arrangers. Accordingly, 90% of payment from (i) Knighthead Master Fund's of $9,415; and (ii) Allstate Life Insurance Co. of $8,240 to resolve the dispute over the Step Two Disgorgement was paid to Step Two Arrangers; 10% retained in the Trust Expense Fund.

(4) Per the Litigation Trust Agreement 3.4(b), funds to be held in reserve from the Litigation Trust share of recoveries pursuant to (a) the Preserved Causes of Action against the Non-Settling Step Two Payees; and (b) global settlement with: (i) a number of clawback defendants who were sued by the Litigation Trust; and (ii) state court defendants.

(5) Funds Transfer of $ 10,000,000 from the funds at Wilmington to Tribune Litigation Trust Account at Deutsche Bank.

(6) (i) $5 million T-Bills due 6/13/13 purchased at a discount rate of 0.04%, cost: $4,999,522.22; and
(ii) $10,007,000 T-Bills due 01/09/2014 purchased to yield 0.09%, cost: $9,999,995.10.

(7) Tribune Litigation Trust Board Member's fee paid for the first and second quarters of 2013 pursuant to Section 4.8(a) of the Litigation Trust.

(8) Payment made to counsel to Tribune Litigation Trust Board Member for the first quarter of 2013 fee pursuant to Section 4.8(b)(ii) of the Litigation Trust, as amended.

(9) Payment for 80% of Litigation Trustee's post Effective Date services.

(10) Prepaid D&O Policy through December 28, 2015. 1/12th of the initial payment amount is expensed for each quarter and the remainder is carried as prepaid expense.

(11) Disbursements made on account of professional services rendered.

(12) Disbursements made on account of web hosting, internet and computing expenses, postage and printing.

(13) Includes bank fees to administer the Trust disbursement accounts as well as fees paid to bank's counsel. In addition to the fees for Trust accounts, The Tribune Litigation Trust advanced a $4,000 fee for a special escrow account established pursuant to Court Order with respect to a dispute with Morgan Stanley Capital Services, Inc. ("MS Escrow"). Paragraph 6 of the MS Escrow Agreement permits fees for the Morgan Stanley related segeragated account only to be paid out of interest earned on that account. When there is sufficient interest, the advance will be repaid out of the segregated account. Assets in the MS Escrow account are not Trust assets.

# C. Statement of Net Assets in Liquidation

**Tribune Litigation Trust**
**September Quarterly 2013 Summary Report - UNAUDITED**
**Statement of Net Assets in Liquidation**
**(Liquidation Basis)**

| ($ Actual) | | September 30, 2013 | June 30, 2013 |
|---|---|---|---|
| **ASSETS** | | | |
| Assets | | | |
| Bank Accounts | | | |
| Deutsche Bank Trust Account | | $ 175 | $ 175 |
| Wilmington Trust - Disbursing Agent Account | | $ 3,339,364 | $ 4,854,822 |
| Deutsche Bank - Investment Account | (1) | $ 9,999,995 | $ 9,999,995 |
| Trust Expense Fund Reserve | (2) | $ 621,424 | $ - |
| Total Cash and Cash Equivalents | | $ 13,960,958 | $ 14,854,992 |
| Prepaid Expenses & Other Assets | | | |
| D&O and E&O Insurance | (3) | $ 501,412 | $ 591,125 |
| Total Assets | | $ 14,462,371 | $ 15,446,117 |
| **TOTAL ASSETS** | | **$ 14,462,371** | **$ 15,446,117** |
| | | | |
| **LIABILITIES** | | | |
| Liabilities | | | |
| Current Liabilities | | | |
| Accounts Payable | | | |
| Counsel to Litigation Trustee | | $ 248,577 | $ 704,447 |
| Step Two Arrangers | (4) | $ - | $ 15,890 |
| Testimonial Expert | | $ - | $ 37,713 |
| Litigation Trustee | | $ 26,790 | $ 59,242 |
| Trust Administrator | | $ 14,998 | $ 25,473 |
| Vendors | | $ 9,767 | $ - |
| Total Accounts Payable | | $ 300,131 | $ 842,765 |
| Total Current Liabilities | | $ 300,131 | $ 842,765 |
| | | | |
| Long Term Liabilities | | | |
| Professional Fee Holdback | (5) | $ 907,088 | $ 759,090 |
| Litigation Trustee Fee Holdback | (6) | $ 225,910 | $ 207,300 |
| Term Loan | (7) | $ 20,000,000 | $ 20,000,000 |
| Total Long Term Liabilities | | $ 21,132,998 | $ 20,966,389 |
| **Total Liabilities** | | | $ 21,809,154 |
| | | | |
| **NET ASSETS** | | | |
| Surplus / (Deficit) | (8) | $ (6,970,758) | $ (6,363,038) |
| **TOTAL LIABILITIES & NET ASSETS** | | **$ 14,462,371** | **$ 15,446,117** |

**Notes:**

(1) $10,007,000 T-Bills due 01/09/2014 purchased to yield 0.09%, cost: $9,999,995.10.

(2) Per the Litigation Trust Agreement 3.4(b), held in reserve from the Litigation Trust share of recoveries of (a) $1,766 from the Preserved Causes of Action against the Non-Settling Step Two Payees; and (b) $619,658 from global settlement with: (i) a number of clawback defendants who were sued by the Trust; and (ii) state court defendants.

(3) Prepaid D&O Policy through December 28, 2015. 1/12th of the initial payment amount is expensed for each quarter and the remainder is carried as prepaid expense.

(4) Per Litigation Trust Agreement, ninety percent of the proceeds received by the Litigation Trust from the pursuit of Preserved Causes of Action against the Non-Settling Step Two Payees is to be distributed to Step Two Arrangers. Accordingly, 90% of payment from (i) Knighthead Master Fund's of $9,41 and (ii) Allstate Life Insurance Co. of $8,240 to resolve the dispute over the Step Two Disgorgement is to be paid to Step Two Arrangers; 10% will be retained in the Trust Expense Fund.

(5) Certain professional fees are deferred pursuant to agreement with counsel.

(6) Litigation Trustee fees are subject to Board approval. On an interim basis the Litigation Trustee is billing the trust at the rate of $950 an hour, subject to a 20% holdback. Fees for the period prior to the effective date will not be paid to the Litigation Trustee until the Trust loan has been paid in full.

(7) Payable without interest as provided in the Trust Loan Agreement.

(8) Does not include the Litigation Trust Assets contributed by the Litigation Trust Interest Holders. These assets were estimated for tax purposes at $358.4 million. At this time, the actual amount of recoveries cannot be determined with any certainty. Accordingly, no value is attributed to Net Assets for the Litigation Trust Assets.

# D. Statement of Changes in Net Assets in Liquidation

**Tribune Litigation Trust**
**September Quarterly 2013 Summary Report - UNAUDITED**
**Statement of Changes in Net Assets in Liquidation**
**(Liquidation Basis)**

| | Quarter ended September 30, 2013 | December 31, 2012 through September 30, 2013 | |
|---|---|---|---|
| **Income** | | | |
| **Revenue & Receipts** | | | |
| Claim Liquidation | | | |
| Non-Settling LBO Lenders | $ - | $ 17,655 | (1) |
| Other | $ 619,658 | $ 619,658 | (2) |
| Interest / Investment Income | $ 103 | $ 1,045 | |
| Total Income | $ 619,761 | $ 638,359 | |
| **Expenses** | | | |
| **Fees** | | | |
| **Board Fees and Expenses** | | | |
| Legal Counsel to Trust Board | $ - | $ 9,684 | |
| Board Fees and Expenses - Other | $ 45,000 | $ 90,000 | |
| Total Board Fees and Expenses | $ 45,000 | $ 99,684 | |
| **Litigation Trustee & Professional Fee & Expenses** | | | |
| Counsel to Litigation Trustee Fees & Expenses | $ 732,662 | $ 5,171,727 | |
| Professional Fee Holdback | $ 147,998 | $ 907,088 | (3) |
| Testimonial Expert Fees & Expenses | $ - | $ 37,713 | |
| Tax Advisory Fees | $ 12,800 | $ 12,800 | |
| Trust Administrator Fees & Expenses | $ 60,406 | $ 318,231 | |
| Litigation Trustee Fees and Expenses | $ 93,053 | $ 667,850 | (4) |
| Total Litigation Trustee & Professional Fee & Expenses | $ 1,046,917 | $ 7,115,409 | |
| Total Fees | $ 1,091,917 | $ 7,215,092 | |
| **Other Expenses** | | | |
| Bank Service Charges | $ - | $ 31,856 | (5) |
| Computer and Internet Expenses | $ 45,852 | $ 94,255 | |
| Insurance Expense | $ 89,713 | $ 251,138 | (6) |
| Postage and Delivery | $ - | $ 436 | |
| Printing and Reproduction | $ - | $ 451 | |
| Total Other Expenses | $ 135,565 | $ 378,135 | |
| Total Expenses | $ 1,227,482 | $ 7,593,227 | |
| **Net Surplus / (Deficit)** | $ (607,721) | $ (6,954,869) | |

**Notes:**

(1) Per Litigation Trust Agreement, ninety percent of the proceeds received by the Litigation Trust from the pursuit of Preserved Causes of Action against the Non-Settling Step Two Payees is to be distributed to Step Two Arrangers. Accordingly, 90% of payment from (i) Knighthead Master Fund's of $9,415; and (ii) Allstate Life Insurance Co. of $8,240 to resolve the dispute over the Step Two Disgorgement is to be paid to Step Two Arrangers; 10% will be retained in the Trust Expense Fund.

(2) Litigation Trust share of recoveries pursuant to global settlement with: (i) a number of clawback defendants who were sued by the Trust; and (ii) state court defendants.

(3) Certain professional fees are deferred pursuant to agreement with counsel.

(4) Litigation Trustee fees are subject to Board approval. On an interim basis the Litigation Trustee is billing the trust at the rate of $950 an hour, subject to a 20% holdback.

(5) Includes bank fees to administer the Trust disbursement accounts as well as fees paid to bank's counsel. In addition to the fees for Trust accounts, The Tribune Litigation Trust advanced a $4,000 fee for a special escrow account established pursuant to Court Order with respect to a dispute with Morgan Stanley Capital Services, Inc. ("MS Escrow"). Paragraph 6 of the MS Escrow Agreement permits fees for the Morgan Stanley related segeragated account only to be paid out of interest earned on that account. When there is sufficient interest, the advance will be repaid out of the segregated account. Assets in the MS Escrow account are not Trust assets.

(6) Prepaid D&O Policy through December 28, 2015. 1/12th of the initial payment amount is expensed for each quarter and the remainder is carried as prepaid expense.

## E. Notes to the Financial Statements

### Note 1: Background to Establishing the Trust

On December 8, 2008, the Tribune Company and its various debtor-subsidiaries (collectively, the "Debtors" or "Tribune") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[1] On December 18, 2008, the Office of the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors of Tribune Co. (the "Committee").[2]

On October 27, 2010, the Bankruptcy Court issued an order (the "Standing Order") granting the Committee standing, on behalf of the Debtors' estates, to commence various adversary proceedings that assert claims relating to the leveraged buyout of Tribune in 2007.[3]

On November 1, 2010, the Committee commenced one such adversary proceeding in the Bankruptcy Court (the "FitzSimons Action") against Tribune's former shareholders, advisors, officers, and directors that participated in the LBO.[4] In addition, the Committee commenced two other adversary proceedings in the Bankruptcy Court (collectively, the "Lender Actions") against the lenders that financed the LBO.[5] Finally, the Committee commenced numerous adversary proceedings in the Bankruptcy Court against certain former executives of Tribune (collectively, the "Insider Actions") who received special compensation in connection with the LBO.

On March 15, 2012, the Bankruptcy Court issued an order permitting the Committee to sever certain claims (the "Advisor Claims") from the Lender Action.[6] On April 2, 2012, the Committee commenced an adversary proceeding in the Bankruptcy Court (the "Advisor Action," and together with

---

[1] Voluntary Petition, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. Dec. 8, 2008), ECF No. 1.

[2] Notice of Appointment of Committee of Unsecured Creditors, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. Dec. 18, 2008), ECF No. 101.

[3] Order Granting Unsecured Creditors Committee's Standing Motions, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. Oct. 27, 2010), ECF No. 6150.

[4] Complaint, Official Committee of Unsecured Creditors of Tribune Co. v. FitzSimons, et al., Adv. Proc. No. 10-54010 (Bankr. D. Del. Nov. 1, 2010), ECF No. 1. A fourth amended complaint was filed on November 8, 2012. Complaint, Official Committee of Unsecured Creditors of Tribune Co. v. FitzSimons, et al., Case No. 1:11-md-02296-WHP (S.D.N.Y. Nov. 8, 2012), ECF No. 1826.

[5] Complaint, Official Committee of Unsecured Creditors of Tribune Company v. JPMorgan Chase Bank, N.A., et al., Adv. Proc. No. 10-53963 (Bankr. D. Del. Nov. 1, 2010), ECF No. 1; Complaint, Official Committee of Unsecured Creditors of Tribune Company v. JPMorgan Chase Bank, N.A., et al., Adv. Proc. No. 10-55969 (Bankr. D. Del. Dec. 8, 2010), ECF No. 1.

[6] Order Partially Lifting Stay of Adversary Proceedings and State Law Constructive Fraudulent Conveyance Actions, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. March 15, 2012), ECF No. 11158.

the FitzSimons Action, the Lender Actions, and the Insider Actions, collectively the "Actions") asserting the severed Advisor Claims.[7]

On March 20, 2012, the United States Judicial Panel for Multidistrict Litigation ("JPML") transferred the FitzSimons Action to the United States District Court for the Southern District of New York (the "District Court") for coordinated and consolidated pretrial proceedings with various related actions.[8] On August 3, 2012, the JPML also transferred the Advisor Action to the District Court for similarly coordinated and consolidated pretrial proceedings.[9]

On July 20, 2012, the Debtors, the Committee, and various co-proponents filed the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (the "Plan") in the Bankruptcy Court.[10] The Bankruptcy Court confirmed the Plan on July 23, 2012.[11]

The Plan approved the creation of a litigation trust (the "Litigation Trust") to pursue the claims asserted in the Actions. The Plan became effective on December 31, 2012.[12] On that date, the Litigation Trust was created, and a Litigation Trustee succeeded the Committee as plaintiff in the Actions.

## Note 2: Status of Prosecuting Litigation Claims

As discussed above, the Plan became effective on December 31, 2012. On that date, the Litigation Trustee succeeded the Committee as plaintiff in the Actions. On January 10, 2013, the Trustee filed in the District Court a notice to substitute the Trustee as successor-in-interest plaintiff in the FitzSimons Action and Advisor Action. The District Court approved the substitution on January 11, 2013.[13] Subsequently, on February 20, 2013, the Litigation Trustee moved the Bankruptcy Court for entry of an order (the "Substitution Motion"), among other things, authorizing substitution of the Litigation Trustee as the successor-in-interest plaintiff in: (i) the Lender Actions solely with respect to certain counts against certain defendants; and (ii) the various Insider Actions solely with respect to the claims asserted therein that are owned by the Litigation Trust.[14] On March 21, 2013, the Bankruptcy Court issued an order granting the Substitution Motion.[15]

---

[7] Complaint, Official Committee of Unsecured Creditors of Tribune Company v. Citigroup Global Markets Inc., et al., 08-bk-13141 (Bankr. D. Del. April 2, 2012), ECF No. 11303.
[8] Order Lifting Stay of Conditional Transfer Order, In re Tribune Co. Fraudulent Conveyance Litig., MDL No. 2296 (J.P.M.L. Mar. 20, 2012), ECF No. 992.
[9] Transfer Order, In re Tribune Co. Fraudulent Conveyance Litig., MDL No. 2296 (J.P.M.L. Aug. 3, 2012), ECF No. 1015.
[10] Certification of Counsel Regarding (i) Proposed Confirmation Order and (ii) Amended Plan and Related Documents, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. July 20, 2012), ECF No. 12072.
[11] Order Confirming Fourth Amended Joint Plan of Reorganization, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. July 23, 2012), ECF No. 12074.
[12] Notice of (i) Effective Date of the Fourth Amended Joint Plan of Reorganization and (ii) Bar Date for Certain Claims, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. Dec. 31, 2012), ECF No. 12939.
[13] Memo Endorsement on Notice of Substitution of Party, Counsel, and Liaison Counsel, In re Tribune Co. Fraudulent Conveyance Litig., 11-mc-2296 (S.D.N.Y. Jan. 11, 2013), ECF No. 2179.
[14] Motion to Authorize Omnibus Order: (I) Authorizing Substitution of the Litigation Trustee as Plaintiff in Certain Adversary Proceedings and Approving Procedures to Evidence Such Substitutions; (II) Modifying the Stay of Such

In early 2013, the Litigation Trustee discovered that the Committee — in connection with a previous amendment to the complaint filed in the FitzSimons Action — inadvertently had omitted 39 defendants (the "Omitted Defendants") that were previously named in an earlier version of the complaint filed in the FitzSimons Action. In addition, the Litigation Trustee discovered that the Committee inadvertently had dismissed 5 Omitted Defendants without prejudice pursuant to an order of the District Court. On March 4, 2013, counsel for the Litigation Trustee requested relief from the District Court, pursuant to Rule 60 of the Federal Rules of Civil Procedure, to: (i) restore the 39 Omitted Defendants as defendants nunc pro tunc; and (ii) disregard the inadvertent dismissal of the 5 Omitted Defendants. The District Court has not ruled on the Litigation Trustee's request, but the Omitted Defendants have been added as defendants in Fifth Amended Complaint, described below.

On May 21, 2013, the Litigation Trustee transferred – via the JPML and the multidistrict litigation mechanism – 18 of the Insider Actions that were pending in the Bankruptcy Court (the "Tag Along Actions") to the District Court for coordinated or consolidated pretrial proceedings with the other related actions, including the FitzSimons Action and the Advisor Action. The Tag Along Actions were brought by the Trustee as successor to the Committee against various Tribune Company insiders asserting insider claw back claims substantially identical to those in the pending FitzSimons Action. As of June 18, all of the Tag-Along Actions had been docketed in the S.D.N.Y., and service is being effectuated on any outstanding defendants. On July 31, the Litigation Trustee, along with all other plaintiffs with Tribune avoidance claims consolidated before the S.D.N.Y. moved to extend the time period for service of summonses and complaints through January, 2014, to allow for the service of any unserved defendants in the Tag-Along Actions and the FitzSimons action. This motion was granted on October 21, 2013 as part of a broader scheduling order.

Additionally, on May 17, the Litigation Trust sought leave to file a motion to amend the Fourth Amended Complaint in the FitzSimons Action and the initial Complaint in the Citigroup Action. That request was granted on May 29, and on June 4, 2013 the Litigation Trustee filed its motion to amend, which included a copy of the proposed Fifth Amended Complaint in the FitzSimons Action and the First Amended Complaint in the Citigroup Action. The Shareholder Defendants Executive Committee and Named Defendants Executive Committee did not oppose the motion, nor did any individual defendants file timely oppositions, as memorialized in a letter to the court dated July 19. On July 22, the Court granted the motion, and on August 1, the Litigation Trustee filed the Fifth Amended Complaint and the First Amended Complaint under seal with the Court and posted redacted versions on the Tribune Trust Litigation website, along with a redlined copy of the Fifth Amended Complaint.

On July 9, the Litigation Trustee moved to extend the deadline to object to claims in the Bankruptcy Court. This motion joined a similar motion by the Reorganized Debtors, and permits the Trustee to

---

Proceedings; and (III) Extending the Time to Effect Service in Such Proceedings, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. Feb. 20, 2013), ECF No. 13210.

[15] Order Granting Litigation Trustees Motion for an Omnibus Order: (I) Authorizing Substitution of the Litigation Trustee as Plaintiff in Certain Adversary Proceedings and Approving Procedures to Evidence Such Substitutions; (II) Modifying the Stay of Such Proceedings; and (III) Extending the Time to Effect Service in Such Proceedings, In re Tribune Co., 08-bk-13141 (Bankr. D. Del. Mar. 21, 2013), ECF No. 13351.

oppose any late-filed claims by defendants in any of the Actions for indemnification, reimbursement, or contribution. This motion was granted on July 26, 2013.

Finally, on September 23, the Court dismissed for lack of standing the Individual Creditor Actions that asserted parallel constructive fraudulent transfer claims against Tribune shareholders that received LBO-related transfers. As part of that order the Court ordered the Litigation Trustee to determine whether it intended to continue pursuing its fraudulent conveyance claims or amend its complaints to abandon those claims. The Litigation Trustee intends to proceed with its fraudulent conveyance claims, and notified the court of this decision in a scheduling letter dated October 8. Now that the motions to dismiss in the Individual Creditor Actions have been resolved, the Litigation Trustee expects preliminary discovery and motion practice to commence in the FitzSimons Action and Advisor Action once a new Master Case Order is so-ordered by the court.

### Note 3: Liquidation Basis Accounting

Given the liquidating nature of the Trust, the liquidation basis of accounting was adopted by the Trust for all periods subsequent to the Effective Date, and will continue as the basis of accounting for the Trust. Liquidation basis accounting may be considered for entities that do not intend to continue as a going concern.

Instead of a balance sheet, income statement and cash flow statement, the Trust provides a Statement of Net Assets in Liquidation, a Statement of Changes in Net Assets in Liquidation and a Schedule of Cash Receipts and Disbursements.

Typically under Liquidation Basis Accounting, assets and liabilities should be reported at their net realizable values, which requires the preparer to make estimates and judgments that affect the reported values of assets (including net assets in liquidation), liabilities and expenses from time to time. However, the Trust will recognize financial transactions in accordance with generally accepted accounting principles ("GAAP"). The financial data reflected in the financial statements and notes appearing elsewhere in this report were not audited or reviewed by an independent registered public accounting firm.

In footnotes where appropriate it is noted that a Valuation Expert hired by the Debtors determined for tax purposes as of the Effective Date and provided to the Debtors an estimated fair market value of the Litigation Trust Assets to be transferred to the Trust of $358.4 million. Notice of such value was filed with the Bankruptcy Court on January 4, 2013. The Trust recorded a liability for the $20.0 million loan from the Debtors on the Effective Date as provided by the Plan to operate the Trust. As of September 30, 2013, the remaining liability is $20.0 million. No interest accrues on the loan.

The precise nature, amount and timing of any future distribution to the holders of LTIs is speculative and will depend on, and could be delayed by, among other things, final settlements regarding litigation, proceeds from pursuing litigation against third parties, and unexpected or greater than expected expenses incurred to administer the Trust. The costs of administration of the Trust and prosecution of

litigation claims will reduce the amount of net assets available for ultimate distribution to the holders of LTIs.

## Note 4: Distributions to Liquidation Trust Interest Holders

Distributions of Net Litigation Trust Proceeds will only be made to holders of LTIs after the Trust successfully achieves settlement or judgment on claims it has against third parties and after deducting certain fees and the Expense Reserve of $25 million. Distributions of Net Litigation Trust Proceeds will be made to holders within each class of Interests pursuant to the waterfall distribution schedule in Exhibit C of the Trust Agreement. Distributions will be made directly to beneficial holders in Classes 1C, 1D, 1F and 1L and will be made to the indenture trustees for Classes 1E and 1J. In general, distributions of Net Litigation Trust Proceeds after fees and the Expense Reserve will be made in the following priority:

a) the first $90 million to holders of Class 1E Litigation Trust Interests and Class 1F Interest Litigation Trust Interests, after giving effect to the turnover from Class 1I Litigation Trust Interests and Class 1J Litigation Trust Interests;

b) repayment of the $20 million loan;

c) (i) 65% to holders of Class 1E Litigation Trust Interests, Class 1F Interest Litigation Trust Interests, Class 1I Litigation Trust Interests and Class 1J Litigation Trust Interests, subject to turnover from the holders of Class 1I Litigation Trust Interests and Class 1J Litigation Trust Interests, in accordance with the Bankruptcy Court's reconsideration and allocation disputes opinions [Docket No. 10531, 10532, 11337, 11338]; and (ii) 35% to the holders of Class 1C Litigation Trust Interests and Class 1D Litigation Trust Interests; and

d) after the holders of Class 1E Litigation Trust Interests, Class 1F Litigation Trust Interests, Class 1I Litigation Trust Interests and Class 1J Litigation Trust Interests have received payment in full of the allowed amount of such holders' claims plus allowable interest, all remaining proceeds shall be distributed to the holders of Class 1C Litigation Trust Interests and Class 1D Litigation Trust Interests.

## Note 5: Disputed Claims Reserve

Pursuant to the Plan and Litigation Trust Agreement, at the time the Trustee has proceeds of litigation claims to distribute the Trustee will set aside amounts otherwise distributable to holders of disputed claims, if any, into a disputed claims reserve ("LT Reserve").[16] The amount set aside for each disputed claim will be such amount otherwise distributable assuming the maximum amount claimed would be allowed. If the maximum amount claimed is unknown, contingent and/or the claim is unliquidated, the Trustee may, pursuant to the Plan, request that the Bankruptcy Court estimate the Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or Reorganized Debtors have previously objected to such Claim.

[16] P 1.1.135, LTA 3.2(i)

At the time and to the extent that disputed claims are disallowed, any funds already set aside in the LT Reserve on their account will be reallocated pro rata among allowed claims and any remaining disputed claims. Funds reallocated to allowed claims will be withdrawn from the LT Reserve, and distributed when the Trustee makes a subsequent distribution.

At the time and to the extent that disputed claims are allowed, any funds already set aside in the LT Reserve on account of the portion of such disputed claims that are allowed will be withdrawn from the LT Reserve and distributed to the newly allowed claimant(s).

Pursuant to the Plan and Litigation Trust Agreement, the Trustee: (i) will treat the LT Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and 1.468B-2 (and will make any appropriate elections), and (ii) to the extent permitted by applicable law, will report consistently with the foregoing for state and local income tax purposes. Accordingly, the LT Reserve will be taxable as a separate entity for U.S. federal, state and/or local income tax purposes. Any distributions from the LT Reserve will be treated for U.S. federal, state and/or local income tax purposes as if received directly by the recipient from the Debtors on the original Claim or Equity Interest of such recipient. If the LT Reserve is taxable as a corporation, all in kind distributions from such reserve would be taxable to such reserve as if sold at fair market value. If the LT Reserve is taxable as a trust, no such gain will be taxable to the LT Reserve and Holders of allowed claims that receive distributions of funds would receive a credit for any income taxes paid by the LT Reserve for the taxable year of distribution on account of such funds. The Trustee has not yet determined whether the LT Reserve should be treated as a corporation or a trust for tax purposes.

As determined by the Trustee, no funds are available for distribution, and no LT Reserve has yet been established.

### Note 6: Reserve for Litigation Costs

Pursuant to the Plan, on the Effective Date the Reorganized Debtors provided a non interest bearing loan to the Trust in the amount of $20 million ("Trust Loan") to provide for expenses of administration of the Trust and pursuit of recoveries from pending and future litigations.[17] Because it has not been determined whether and to what extent such funds will actually be used, the Trustee did not, upon emergence, record a liability for such costs and the Trust will report costs as incurred. However, the Trust does report the cash as a separate line item on the Statement of Net Assets and the activity is disclosed on the Schedule of Cash Receipts and Disbursements. As of September, 2013, $5.8 million had been paid to administration and litigation professionals and total expenses paid were $6.7 million.

In addition, pursuant to the Plan and Litigation Trust Agreement, the Trustee is authorized to set aside funds out of litigation recoveries into an Expense Fund to cover the expenses of administration of the Trust and pursuit of recoveries from pending and future litigations.[18]

---

[17] Plan 1.1.236, 5.13
[18] LTA 3.4(b)

Accordingly $619,658 received for the Litigation Trust share of recoveries pursuant to the global settlement with: (i) a number of claw back defendants who were sued by the Litigation Trust; and (ii) state court defendants - are held in Expense Fund. Additionally, $1,766 of the proceeds received by the Litigation Trust from the pursuit of Preserved Causes of Action against the Non-Settling Step Two Payees to resolve the dispute over the Step Two Disgorgement is also retained in the Trust Expense Fund.

Until the Trust Loan is fully repaid, the amount that may be set aside in the Expense is capped at $25 million.[19] Once the Trust Loan has been repaid, there is no limit to the amount the Trustee may set aside for expenses.[20]

## Note 7: Taxes

The Trust will file federal income tax returns on IRS Form 1041 as a grantor trust and report, but not pay tax on, its respective items of income, gain, loss deductions and credits (the "Tax Items"). As a grantor trust, the Trust is not required to prepare Schedules K-1 for the beneficiaries. Rather, the Trust will provide each beneficiary with a "Grantor Letter" detailing the beneficiary's pro-rata share of such Tax Items for federal income tax purposes. Each holder of an LTI will be required to report his, her, or its proportionate share of such Tax Items, as reported on the Grantor Letter, on his, her, or its federal and, if required, state income tax returns, and pay any resulting federal, and if required, state income tax liability, regardless of whether the Trustee distributes sufficient cash to pay such taxes.

The Trustee has not yet determined whether the LT Reserve should be treated as a corporation or a trust for tax purposes. In either event, it will pay taxes currently on any income it earns prior to making distributions, *provided that* if the LT Reserve is taxable as a trust, Holders of allowed claims that receive distributions of funds would receive a credit for any income taxes paid by the LT Reserve for the taxable year of distribution on account of such funds.

## Note 8: Interests in the Trust

The Plan provides that former creditors of the Debtors received LTIs in accordance with the class of their allowed claims against the Debtors. The LTIs are recorded and maintained on a class by class basis based on the allowed amount of total claims in each class. The percentage of each class of claims held by any one beneficial holder is the amount of the creditor's allowed claim in each class divided by the total allowed claims in each class.

Noteholder claims in classes 1E and 1J (excluding claims in Class 1J held by noteholders who have tendered their notes) are in turn broken down by original CUSIP number and the successor escrow CUSIP number. The percentage ownership of each CUSIP (or escrow CUSIP) held by any owner is the amount of the Noteholder's allowed claim divided by the total notes represented by that CUSIP number.

a) Holders of Senior Loan Claims are entitled to a Pro Rata share of Class 1C Litigation Trust Interests based on the aggregate amount of all allowed Senior Loan Claims as of the record date of November 19, 2012;

[19] LTA 3.4(c)
[20] Ibid

b) Holders of Bridge Loan Claims are entitled to a Pro Rata share of Class 1D Litigation Trust Interests based on the aggregate amount of all allowed Bridge Loan Claims as of the record date of July 23, 2012;
c) Holders of Senior Noteholder Claims that elected treatment Option 1 or 2 are entitled to a Pro Rata share of Class 1E Litigation Trust Interests based on the aggregate amount of all allowed Senior Noteholder Claims on a cusip by cusip basis as of the record date of December 31, 2012;
d) Holders of allowed Other Parent Claims that elected treatment Option 3 or 4 are entitled to a Pro Rata share of Class 1F Litigation Trust Interests based on the aggregate amount of all allowed Other Parent Claims as of the record date of July 23, 2012;
e) Holders of PHONES Notes Claims are entitled to a Pro Rata share of Class 1J Litigation Trust Interests based on the aggregate amount of all allowed PHONES Notes Claims on a cusip by cusip basis as of the record date of December 31, 2012; and
f) Holders of EGI Notes Claims are entitled to a Pro Rata share of Class 1I Litigation Trust Interests based on the aggregate amount of all allowed EGI Notes Claims as of the record date of July 23, 2012.

The value of the Trust Assets at the Effective Date is treated as the tax basis of the LTIs for tax purposes only and is allocated among holders of LTIs in accordance with Exhibit C of the Trust Agreement. LTIs which have an allocation below the value for tax purposes only of the Trust Assets at the Effective Date will have a zero tax basis.

### Note 9: Litigation Trustee Fees

Litigation Trustee fees are subject to Board approval. On an interim basis, the Litigation Trustee is billing the Trust at a rate of $950 an hour, subject to a 20% holdback. Fees billed are as follows:

a. $115,425 for the period prior to the effective date from June, 2012 through December 30, 2012;

b. $272,080 for January 1, 2013 through March 31, 2013;

c. $215,128 for April 1, 2013 through June 30, 2013; and

d. $96,045 for July 1, 2013 through September 30, 2013.

The fees for the period prior to the effective date will not be paid to the Litigation Trustee until the Trust Loan has been paid in full.

# F. Claims Analysis

**Tribune Litigation Trust**
**Claims and Distribution Schedule**
***(as of June 30, 2013)***

| Claimant | (1) | Claim Amount | Initial Distribution Per Plan | Distribution From State Action | Distribution From Trust | Shortfall |
|---|---|---|---|---|---|---|
| Class 1 C - Senior Loan Claims | (2) | $ 8,573,431,045 | $ 7,394,135,002 | $ - | $ - | $ 1,179,296,043 |
| Class 1 D - Bridge Loan Claims | (3) | $ 1,619,060,109 | $ 64,500,000 | $ - | $ - | $ 1,554,560,109 |
| Class 1 E - Senior Noteholder Claims | | | | | | |
| Class 1 E - Electing Noteholders | (4) | $ 96,584,459 | $ 36,782,197 | | | $ 59,802,262 |
| Class 1 E - Non Electing Noteholders | | $ 1,186,471,284 | $ 370,652,849 | | | $ 815,818,436 |
| Class 1 E - Law Debenture | (5) | $ 14,665,492 | $ 14,665,492 | $ - | $ - | $ - |
| Class 1 E - Deutsche Bank | (5) | $ 15,074,600 | $ 15,074,600 | $ - | $ - | $ - |
| | | $ 1,312,795,835 | $ 437,175,138 | $ - | $ - | $ 875,620,698 |
| Class 1 F - Other Parent Claims | | | | | | |
| Class 1 F - Allowed | (6) | $ 64,047,275 | $ 21,038,307 | $ - | $ - | $ 43,008,969 |
| Class 1 F - To be Allowed | (7) | $ 33,481,552 | $ 22,005 | $ - | $ - | $ 33,459,547 |
| | | $ 97,528,827 | $ 21,060,312 | $ - | $ - | $ 76,468,516 |
| PHONES | (8) | $ 760,697,492 | $ - | $ - | $ - | $ 760,697,492 |
| EGI-TRB LLC Notes Claims | (9) | $ 235,300,418 | $ - | $ - | $ - | $ 235,300,418 |
| **Total** | | **$ 12,598,813,727** | **$ 7,916,870,451** | **$ -** | **$ -** | **$ 4,681,943,276** |

**Notes:**

(1) All Senior Noteholders, Senior Loan Claims and Bridge Loan Claims receive Litigation Trust Interests. Only those Other Parent Claimants ("OPC's") electing Options 3 & 4 receive Litigation Trust Interests. Allowed Claim amounts for Classes 1C, 1D and 1E is final. Allowed Claim amount for Class 1F is estimated. and subject to ongoing resolution of disputed claims.

(2) Per JPM senior lender list (Holdings as of the Distribution Record Date 11/19/2012) as amended.

(3) Per Proof of Claim amount filed.

(4) Noteholders who elected treatment option 1 under the Plan

(5) Includes Indenture Trustee Fees of $29.74 million.

(6) Class 1F Claim amounts are as of July 15, 2013 and include since the Effective Date: (i) claims that have become allowed; (ii) newly filed claims; and (iii) claims that have been expunged through the objection process.

(7) Final determination of these claims is still outstanding, including that of the Wilmington Trust Fee claim of $30.2 million. This amount does not include unliquidated claims.

(8) PHONES Notes Claims (Allowed in the Aggregate amount of $759,252,932.00. Also included is Debtors scheduled pre-petition interest of $1,444,560.45 accrued between 11/15/2008 and 12/8/2008). The value of the Class 1J LT Interests is contingent and treated as zero. PHONES Notes Claims are split between Exchanged ($56 million) and Un-Exchanged Claims ($705 million).

(9) EGI Notes Claims which are subject to challenge by the Litigation Trust pursuant to Article XIII of the Plan and scheduled at $235.3 million. The value of the Class 1I LT Interests is contingent and treated as zero.

The foregoing quarterly report for the period commencing July 1, 2013 and ending September 30, 2013 was prepared in accordance with Section 8.1 of the Litigation Trust Agreement and is hereby distributed as of the date set forth below, by Marc S. Kirschner solely in his capacity as the Litigation Trustee, in accordance with the Plan and the Litigation Trust Agreement.

December 2, 2013
Date

Marc S. Kirschner, Litigation Trustee