## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Hearing Date: April 16, 2014 at 10:00 a.m. ET**<br>**Objection Deadline: April 9, 2014 at 4:00 p.m. ET** |

### REORGANIZED DEBTORS' OBJECTION TO CLAIM NOS. 3263, 3264, AND 3266 OF JAYNE CLEMENT PURSUANT TO SECTIONS 502(b), 524, 558, AND 1141 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3007, 7023, AND 9014

The reorganized debtors in the above-captioned chapter 11 cases (collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to Claim Nos. 3263, 3264, and 3266 of Jayne Clement asserted against Tribune Company ("Tribune"), Los Angeles Times Communications LLC ("LATC"), and Tribune Media Net, Inc. ("TMN") (collectively, the "Clement Claims"), on the grounds that (i) such claims should be disallowed and expunged to the extent they purport to assert recovery by a putative class of claimants; (ii) none of the Debtors (defined below) have any liability for such claims

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

asserted by Ms. Clement in an individual capacity; and (iii) the Clement Claims are not entitled

to priority treatment, each as discussed in greater detail below.  Copies of the Clement Claims

are attached hereto as <u>Exhibits A-C</u>.

       This Objection is submitted pursuant to sections 502(b) and 558 title 11 of the

United States Code (the "<u>Bankruptcy Code</u>") and Rules 3001, 3007, 7023, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  In support of the Objection,

the Reorganized Debtors rely on (i) the Declaration of Susan O'Connor, Director, Compensation

and Benefits of Tribune Company (the "<u>O'Connor Declaration</u>"), a copy of which is attached

hereto as <u>Exhibit D</u>; (ii) the Declaration of Timothy Hix, a partner in the law firm of Seyfarth

Shaw, LLP and outside defense counsel to the Reorganized Debtors in the Lawsuit (defined

below) (the "<u>Hix Declaration</u>"), a copy of which is attached hereto as <u>Exhibit E</u>; and (iii) the

Declaration of Jodi Ehrenhofer, Director of Alvarez & Marsal North America, LLC, a financial

advisor to the Debtors and Reorganized Debtors (the "<u>Ehrenhofer Declaration</u>"), a copy of which

is attached hereto as <u>Exhibit F</u>.  In further support of the Objection, the Reorganized Debtors

respectfully state as follows:

## INTRODUCTION

       1.      The Clement Claims were filed on account of a prepetition lawsuit

commenced by Ms. Clement against Tribune, LATC, TMN, and Tribune Interactive, Inc. ("<u>TI</u>"),

a non-debtor subsidiary of Tribune (the "<u>Lawsuit</u>"), in the Superior Court of the State of

California for the County of Los Angeles, Central District (the "<u>California Court</u>") on May 15,

2008.  In the Lawsuit, Ms. Clement alleges that that the defendants failed to pay commissions

that were purportedly due to her after she resigned from her employment effective August 30,

2005, in violation of California law.  The Lawsuit was stayed during the pendency of the

Debtors' chapter 11 cases.

2.      Recently, Ms. Clement has taken actions to continue the Lawsuit in the California Court, including seeking discovery from Tribune regarding the identification of certain current and former employees of the Debtors whom Ms. Clement seeks to join as a putative class in the Lawsuit.  Although the Reorganized Debtors do not oppose resolving the Lawsuit (and, thus, the Clement Claims) in the California Court as to the causes of action raised by Ms. Clement in her individual capacity (and, as described below, have communicated to Ms. Clement that they would be willing to stipulate to that relief), neither the Lawsuit nor the Clement Claims may proceed as a class action because the Clement Claims were not timely certified as class proofs of claim in this Court in accordance with Bankruptcy Rule 7023; indeed, Ms. Clement has never even sought to certify the Clement Claims as class proofs of claim. Accordingly, the claims of putative class members are precluded by this Court's prior Bar Date Order (defined below) and the discharge provided for in the Confirmation Order (defined below), the Plan (defined below), and sections 524(a) and 1141(d)(1)(A) of the Bankruptcy Code.  Stated differently, even if Ms. Clement were successful in certifying a class in the California Court and obtained a favorable judgment in the Lawsuit – which the Debtors dispute – the claims of the class members have been discharged and barred and there can be no recovery thereon from the Debtors' estates.

3.      To the extent the Clement Claims assert causes of action by Ms. Clement in her individual capacity, the Reorganized Debtors dispute (i) Ms. Clement's assertion that she was "jointly employed" by Tribune, LATC, TMN, and TI; (ii) the other factual circumstances recited in the operative complaint; and (iii) the legal conclusion that Ms. Clement was entitled to receive additional commissions following her resignation from TMN, based on California law. Because the parties had not yet completed discovery at the time the Lawsuit was stayed, the

Reorganized Debtors request that the Court establish a discovery and briefing schedule for the adjudication of the Clement Claims to the extent such claims are asserted by Ms. Clement in her individual capacity.  The Reorganized Debtors reserve the right to raise any and all applicable factual and legal arguments in opposition to the Clement Claims in such further proceedings.

4.      Finally, the Reorganized Debtors dispute that the Clement Claims are entitled to priority treatment under section 507(a)(4) of the Bankruptcy Code because Ms. Clement did not earn any wages, salary, or commissions within 180 days of the Petition Date; in fact, she resigned her employment with TMN in 2005.

### STATUS OF THE CASE AND JURISDICTION

5.      On December 8, 2008 (the "Petition Date"), Tribune and certain of its affiliates, including LATC and TMN (collectively, the "Debtors"),[2] each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  (Docket Nos. 43, 2333.)

6.      On July 23, 2012, the Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization (the "Plan") for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Docket No. 12074) (the "Confirmation Order").[3]

7.      The Effective Date of the Plan occurred on December 31, 2012.[4]

---

[2] As used herein, the term "Debtors" refers to the entities that filed the above-captioned chapter 11 cases and the term "Reorganized Debtors" refers to the entities that became successors to the Debtors upon the Debtors' emergence from their chapter 11 cases.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[4] The Plan provides that one or more Debtors may undertake Restructuring Transactions on, prior to, or after the Effective Date, which may include, without limitation, mergers, consolidations, conversions, joint ventures, restructurings, recapitalizations, dispositions, liquidations or dissolutions.  (See Plan § 5.2, Ex. 5.2 and Docket No.

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 502(b), 524, 558, and 1141 of the Bankruptcy Code, Bankruptcy Rules 3001, 3007, 7023, and 9014, the Court's Bar Date Order (defined below), the Confirmation Order, and the Plan.

## PROCEDURAL BACKGROUND

I.    **BACKGROUND RELATING TO THE DEBTORS' CLAIMS PROCESS AND THE BAR DATE ORDER**

9.      On March 23, 2009, the Debtors filed their schedules of assets and liabilities and statements of financial affairs (Docket Nos. 567-789), which were subsequently amended on April 13, 2009 (Docket Nos. 894-957), June 12, 2009 (Docket Nos. 1343-1453), March 2, 2010 (Docket Nos. 3548-3599), May 13, 2010 (Docket No. 4388), and January 28, 2011 (Docket Nos. 7661-7671) (collectively, the "Schedules").

10.     On March 25, 2009, the Court entered an order (Docket No. 813) (the "Bar Date Order") (i) establishing June 12, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11 cases and (ii) approving the form and manner of notice of the Bar Date.

11.     Written notice of the Bar Date was mailed to, among others, all known creditors listed on the Schedules, as amended, all current employees of the Debtors as of the Petition Date, all former employees of the Debtors as of two years prior to the Petition Date, and

---

12732.)  On the Effective Date, TMN underwent Restructuring Transactions pursuant to which it was converted to a limited liability company and renamed Tribune 365, LLC.  TI, a non-debtor affiliate of the Debtors, also converted to a limited liability company and is now known as Tribune Interactive, LLC.

all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date Order.  (See Affidavit of Mailing, Docket No. 1073, Exs. E, F, and G, as supplemented at Docket No. 1129.)  In addition to mailing such actual notice, the Debtors also published notice of the Bar Date in the National Editions of the Wall Street Journal and the New York Times and in the Chicago Tribune and Los Angeles Times on May 12, 2009.  (See Certificate of Publication, Docket No. 1280.)

12.     As of the Effective Date, approximately 7,165 Proofs of Claim were filed in these chapter 11 cases.  The Proofs of Claim are recorded on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors and the Reorganized Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent").

## II.    BACKGROUND RELATING TO THE CLEMENT CLAIMS

13.     Ms. Clement is a former employee of TMN, and was employed as an account executive.  (O'Connor Decl. ¶ 4.)  Ms. Clement resigned her employment effective August 30, 2005, more than three years prior to the Petition Date.  (Id. at ¶ 5.)

### A.    The Clement Claims

14.     Ms. Clement filed the Clement Claims against Tribune, LATC, and TMN, respectively, on May 29, 2009.  Each of the Clement Claims was asserted by Ms. Clement in an unliquidated amount and stated as its basis "Violations of Labor Code & Business & Professions Code."  (See Ex. A-C at 1.)  The Clement Claims were each asserted as priority claims, in unliquidated amounts, pursuant to section 507(a)(4) of the Bankruptcy Code, i.e., for wages, salaries, or commissions earned within 180 days of the Petition Date.  (Id.)

6

B.    **The Lawsuit**

15.    Appended to each of the Clement Claims was a two-count complaint filed in the Lawsuit by Ms. Clement in the California Court on May 15, 2008 against Tribune, TMN, LATC, TI, "Los Angeles Times,"[5] and certain "Doe" defendants (collectively, the "Defendants"), which was assigned Case No. BC390943.  (See Exs. A-C at 2-10.)  Ms. Clement filed a First Amended Complaint on October 2, 2008, and purported to amend the Complaint further by filing a Second Amended Complaint (notwithstanding the imposition of the automatic stay) on December 15, 2008.  (Hix. Decl. ¶ 6.)  A copy of the Second Amended Complaint is attached hereto as Exhibit G (the "Second Amended Complaint").  (See also Docket No. 1233 at Ex. A.)

16.    The Second Amended Complaint asserts causes of action against the Defendants for: (1) violations of California Labor Code sections 200, 201, 202, and 203; and (2) violations of California Business & Professions Code sections 17200 and 17203.  Both counts arise out of Ms. Clement's contention that the Defendants failed to pay commissions that were purportedly due to her after she resigned from her employment in August 2005, in violation of California law.  (See Ex. G, 2d Am. Compl. ¶¶ 1, 6, 20-36.)

17.    The Second Amended Complaint also seeks relief against the Defendants on behalf of a purported class, defined as follows:

> All persons employed by the defendants as account executives and/or other positions engaged in the same sales functions as account executives who, from May 15, 2004 through May 14, 2008 were not paid post-employment commission wages for commissions earned before the termination of their employment when they were either discharged, they quit or they were forced to resign.

(See Ex. G, 2d Am. Compl. ¶ 14.)

---

[5] The Los Angeles Times is not a corporate entity.  It is a trade name of the newspaper published by LATC.

18.     On May 27, 2008, Ms. Clement served her First Set of Special

Interrogatories on Tribune (the "First Interrogatories").  (Hix Decl. ¶ 7.)  The First

Interrogatories sought, among other things, the names, addresses, telephone numbers, and email

addresses of all Account Executives employed by Tribune or any of its subsidiaries, which

include TMN, LATC, and TI, in California.  (Id.)  On July 1, 2008, Tribune responded to the

First Interrogatories by raising various objections, including the privacy rights of current and

former employees.  (Id.)  On or about July 22, 2008, Ms. Clement filed a Motion to Compel

responses to the First Interrogatories.  (Id.)

19.     On August 13, 2008, the Defendants filed a Motion for Judgment on the

Pleadings (the "Dismissal Motion"), seeking dismissal of the Lawsuit to the extent it asserted

claims against LATC.  (Hix Decl. ¶ 8.)  Specifically, in a June 18, 2008 deposition taken in other

pending litigation against the Debtors, Ms. Clement admitted she did not work for LATC during

the putative class period or within the applicable statute of limitations.[6]  (Id.)  On September 30,

2008, the California Court issued a ruling denying the Defendants' Dismissal Motion and

partially granting Ms. Clement's Motion to Compel (the "Order").  (Id.)  The Defendants timely

sought a Writ of Mandate from the Court of Appeal of the State of California (the "Appeal").

(Id.)

20.     On December 15, 2008, the Debtors filed a notice of stay in the California

Court, which stayed the Lawsuit pending the Debtors' chapter 11 proceedings.[7]  (Hix Decl. ¶ 9.)

---

[6] On August 16, 2007, prior to the Petition Date, Ms. Clement commenced a lawsuit in the California Court (Case No. BC376036) alleging claims of wrongful termination, defamation, and breach of implied contract arising from her employment with TMN.  Those causes of action were also asserted against Tribune, LATC, and TI on a "joint employer" theory.  That lawsuit is the subject of Claim Nos. 3265, 3267, and 3268, which claims are not the subject of this Objection.  The Debtors and Reorganized Debtors reserve all of their rights and defenses with respect to such claims.

[7] Ms. Clement filed a motion to lift the automatic stay on May 22, 2009, prior to the Bar Date.  (See Docket No. 1233, amended at Docket No. 1307.)  That motion was denied on July 21, 2009 following briefing and oral argument.  (Docket No. 1781.)  A subsequent motion for relief from stay was filed on July 6, 2011, but was not

The Appeal was likewise stayed.  (Id.)  No class has been certified in the Lawsuit as of the date

of this Objection.  (Id.)

### C.    Subsequent Events Occurring in the Lawsuit

21.    On May 3, 2013, the California Court of Appeal denied the Defendants'

Writ of Mandate to reverse the California Court's decision partially granting Ms. Clement's

Motion to Compel, which required that Defendants respond to the First Interrogatories.  (Hix

Decl. ¶ 10.)  On July 29, 2013, Defendants provided supplemental discovery responses, subject

to certain objections and reservations of rights, which related to the identification of potential

putative class members.  (Id.)

22.    On or about September 27, 2013, Ms. Clement filed a motion seeking

leave to file an amended complaint.  The proposed amended complaint sought to expand the

class definition to include a larger period of time.  (Hix Decl. ¶ 11.)  The Lawsuit then remained

largely dormant until earlier this year.  (Id.)  Counsel for Ms. Clement transmitted a letter to

counsel for the Defendants dated January 6, 2014 (the "Jan. 6 Letter"), requesting that the

Defendants agree to stipulate to permit Ms. Clement to file a Third Amended Complaint.  (Id.)

The Jan. 6 Letter, together with the proposed stipulation and a copy of the proposed Third

Amended Complaint, are attached hereto as Exhibit H.  The proposed stipulation stated that the

Third Amended Complaint seeks to expand the definition of the putative class "from individuals

employed as account executives or other individuals selling advertise [sic] space from May 15,

2004 through May 15, 2008 to from May 15, 2004 through January 3, 2014."  (See Ex. H at 5.)

23.    On January 8, 2014, Ms. Clement served her Third Set of Special

Interrogatories on Tribune (the "Third Interrogatories"), a copy of which is attached hereto as

Exhibit I.  (Hix Decl. ¶ 12.)  Like the First Interrogatories, the Third Interrogatories seeks the

pursued by Ms. Clement.  (Docket No. 9414.)

identification of, and disclosure of personal information pertaining to, the members of the putative class.  (See Ex. I.)

24.     On January 9, 2014, counsel for the Defendants responded to both the Jan. 6 Letter and the Third Interrogatories, by letter to counsel for Ms. Clement (the "Jan. 9 Response"), explaining that the discharge injunction applicable to the Clement Claims and the Lawsuit prohibited the Lawsuit from being continued in the California Court as a general matter, and that any putative class claims had been barred and discharged.  (Hix Decl. ¶ 13.)  A copy of the Jan. 9 Response is attached hereto as Exhibit J.  In the Jan. 9 Response, the Reorganized Debtors proposed to counsel for Ms. Clement that the parties stipulate to agree to have the Clement Claims liquidated in the California Court solely as to Ms. Clement on an individual basis and in accordance with the terms of the Plan.  (Id.; Ex. J)  Ms. Clement has not replied to the Jan. 9 Response.  (Hix Decl. ¶ 13.)  The Defendants timely objected to the Third Interrogatories on February 10, 2014, including on the grounds that the claims of putative class members were barred and discharged.  (Id.)

## REQUEST FOR RELIEF

25.     By this Objection, the Reorganized Debtors seek entry of an order, substantially in the form attached hereto, (i) disallowing in full and expunging the Clement Claims to the extent such claims purport to seek recovery on behalf of a putative class of claimants; (ii) establishing a discovery and briefing schedule for the adjudication of the Clement Claims to the extent such claims are asserted by Ms. Clement in her individual capacity; (iii) reclassifying the Clement Claims as general unsecured claims; and (iv) directing the Claims Agent to modify the Claims Register as necessary to comport with the relief requested herein.

## BASIS FOR OBJECTION

I. **THE CLEMENT CLAIMS HAVE NOT BEEN CERTIFIED AS "CLASS PROOFS OF CLAIM" AND THEREFORE THE PUTATIVE CLASS CLAIMS SHOULD BE DISALLOWED**

### A. Ms. Clement Was Required To Timely Seek Certification Of A Class Proof Of Claim But Did Not Do So

26.     The treatment of a proof of claim as a "class proof of claim" is subject to Bankruptcy Rule 9014, which provides that that a bankruptcy court *may* apply Bankruptcy Rule 7023—and, by extension, Federal Rule of Civil Procedure 23—to contested matters.  See Fed. R. Bankr. P. 7023, 9014(c).  Thus, the filing of a proof of claim by a claimant "on behalf of others similarly situated" does not, by itself, entitle the putative class to receive a recovery from a debtor's bankruptcy estate.  See In re Am. Reserve Corp., 840 F.2d 487, 492 (7th Cir. 1988) (noting that "both Rule 9014 and Rule 23 give the court substantial discretion to consider the benefits and costs of class litigation"); In re W.R. Grace & Co., 398 B.R. 368, 377 (D. Del. 2008); In re Bally Total Fitness of Greater N.Y., Inc., 402 B.R. 616, 619 (Bankr. S.D.N.Y. 2009) ("There is no absolute right to file a class proof of claim under the Bankruptcy Code."); In re Computer Learning Ctrs., Inc., 344 B.R. 79, 85-86 (Bankr. E.D. Va. 2006) ("[A]lthough class proofs of claim may be permitted, they are not a matter of right.").  Instead, bankruptcy courts exercise discretion in determining whether to grant or deny class certification pursuant to Rule 23 upon a ***timely-filed motion*** by the proponent of the class proof of claim.  In re Computer Learning Ctrs., 344 B.R. at 86 ("The applicability of Rule 7023 is raised by motion.").  Ms. Clement has made no such request.[8]

---

[8] Had Ms. Clement timely filed a motion in this Court for the application of Bankruptcy Rule 7023 to the Clement Claims (which she did not), the Debtors would have disputed that cause exists for the Bankruptcy Court to exercise its discretion to apply Bankruptcy Rule 7023 or that the requirements of Bankruptcy Rule 7023 are met by the Clement Claims.  The Reorganized Debtors do not address the requirements of Bankruptcy Rule 7023 in detail in this Objection, as it would necessarily require fact-intensive consideration and because Ms. Clement has not raised those issues by motion, as is required of the proponent of a putative class proof of claim.  However, the Reorganized Debtors reserve their rights to object to the Clement Claims on all applicable grounds, including, without limitation,

27.     Federal Rule of Civil Procedure 23 requires that the court make its

certification determination "[a]t an early practicable time after a person sues or is sued as a class

representative."  Fed. R. Civ. P. 23(c)(1).  Here, an early practicable time to file a motion seeking

class certification of the Clement Claims would have been at the time the Clement Claims were

filed in June 2009, or when Ms. Clement first actively participated in the Debtors' cases in May

2009 (when she filed a motion for relief from the automatic stay).  See, e.g., In re Computer

Learning Ctrs., 344 B.R. at 89 (emphasizing that early application of Rule 7023 "furthers the

policy of an orderly and expeditious administration of the bankruptcy estate"); In re Thomson

McKinnon Secs. Inc., 150 B.R. 98, 101 (Bankr. S.D.N.Y. 1992) ("The fact that the plaintiffs did

not move for class certification promptly after filing their purported class claim detracts from the

discretionary factors to be considered in determining class certification.").  There is no plausible

basis on which to conclude, however, that over five years after the Petition Date, nearly four

years after the Bar Date, and more than one year after the Debtors' discharge is "an early

practicable time."

28.     As noted by the United States Bankruptcy Court for the Southern District

of New York, "the mere failure to seek certification does not mandate denial" of a class action

proceeding generally, but "[i]n bankruptcy, however, the delay may impact on the entire case—

not just the affected claim—and provides grounds to refuse to make Rule 23 applicable to the

claims process."  In re Woodward & Lothrop Holdings, Inc., 205 B.R. 365, 370 (Bankr.

S.D.N.Y. 1997) (denying application of Rule 7023 to putative class proof of claim).  Cf. E. Tex.

Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 404-05 (1977) ("The named plaintiffs'

failure to protect the interests of class members by moving for certification surely bears strongly

on the adequacy of the representation that those class members might expect to receive.").  The

that the particular requirements of Federal Rule of Civil Procedure 23 have not been satisfied.

Woodward & Lothrop court cautioned that "[i]f the claimant waits until a post confirmation claim objection to first bring the issue to a head, serious prejudice may result to the other creditors and the estate."  In re Woodward & Lothrop Holdings, 205 B.R. at 370.  Indeed, bankruptcy courts rarely grant class certification where the motion for class certification was filed for the first time postpetition and well after the bar date.  See, e.g., In re W.R. Grace, 389 B.R. at 376 n.5 (denying class certification motion filed over two and a half years after the bar date); In re Ephedra Prods. Liab. Litig., 329 B.R. 1, 5 (S.D.N.Y. 2005) (denying class certification requested after plan submitted to creditors for vote); In re Bicoastal Corp., 133 B.R. 252, 256 (Bankr. M.D. Fla. 1991) (denying class certification requested 15 months after debtor's objection to claim).  Similarly, here, due to Ms. Clement's failure to even seek certification of the Clement Claims as class proofs of claim, the Clement Claims should be disallowed and expunged to the extent they purport to seek recovery on behalf of a putative class.

**B.      The Claims Of Putative Class Members Have Been Discharged And Cannot Now Be Asserted**

29.      The Confirmation Order, the Plan, and the Bankruptcy Code each provide that debts, claims, liabilities, and causes of action against the Debtors that arose prior to the Effective Date of the Plan are discharged.  See Confirmation Order at ¶¶ V.A.1.a (providing for the discharge of all claims that arose prior to the Effective Date), V.A.1.b (providing that the Confirmation Order constitutes a judicial determination of the discharge of prepetition claims); Plan § 11.1; 11 U.S.C. § 1141(d)(1) (providing that the confirmation of a plan of reorganization discharges the debtor from any debt that arose before the date of such confirmation).

30.      The discharge is enforced by a broad permanent injunction prohibiting, among other things, the commencement or continuation of judicial proceedings to assert a pre-petition claim against the Debtors.  See Confirmation Order at ¶¶ V.A.1.b (precluding the

assertion of discharged claims), V.A.2. (enjoining holders of discharged claims from taking specified actions on account thereof, including commencing or continuing actions against the Debtors or enforcing or recovering any judgment against the Debtors, Reorganized Debtors, or their respective property); Plan § 11.1; 11 U.S.C. § 524(a)(2) (enjoining the commencement or continuation of an action to collect, recover, or offset any discharged debt as a personal liability of a debtor).

31.     Notwithstanding Ms. Clement's failure to timely comply with Rule 7023 and to move to certify the Clement Claims as class proofs of claim, she has nonetheless demonstrated her apparent intention to pursue the Lawsuit on a class basis in the California Court via the Jan. 6 Letter, the proposed Third Amended Complaint, and the Third Interrogatories.  (See Exs. F and G.)  However, because the Clement Claims are not "class proofs of claim," as a matter of bankruptcy law neither the Clement Claims nor the Lawsuit may be pursued on a class basis at this late juncture in the Reorganized Debtors' chapter 11 cases—more than five years after their commencement, more than three and a half years after the Bar Date, and more than one year after the Effective Date of the Plan.[9]

32.     This is particularly true here, where Ms. Clement seeks to assert claims on behalf of a putative class of current and former employees of certain of the Debtors.  These are not "unknown claimants" that the class device is arguably better-suited to serve.[10]  Actual notice of the Bar Date was provided to all employees of the Debtors who were employed as of the Petition Date and all former employees of the Debtors as of two years prior to the Petition Date

_____

[9] The Plan has been substantially consummated, and the Debtors' claims process is nearing a conclusion. Specifically, as of the date of this Objection, the Debtors and Reorganized Debtors have made four (4) quarterly distributions to holders of Allowed claims against the Debtors' estates and have resolved approximately 92.3% of the approximately 7,189 proofs of claim filed in these chapter 11 cases.

[10] As discussed below, nor are there high opportunity costs in asserting a claim compared to the potential recovery if such a claim actually had merit, which is another factor that weighs against a class claim in these circumstances.

(see Docket Nos. 1073, 1129).  Such notice covered most of the individuals listed in Tribune's

response to the First Interrogatories, by which Ms. Clement sought to ascertain the scope of the

putative class.[11]  (Ehrenhofer Decl. ¶¶ 4-6.)  The pool of potential members of the proposed class

who thus did not receive actual notice of the Bar Date and an opportunity to assert claims in the

Debtors' chapter 11 cases is thus very small to non-existent.

          33.     The current and former employees of the Debtors were provided due and

adequate notice of their right to assert claims against the Defendants' estates if they believed

they had cause to do so, in accordance with the Bar Date Order and consistent with the Debtors'

obligation to provide actual or constructive notice to their creditors.  In addition, constructive

notice of the Bar Date was provided by publication, including the *Los Angeles Times* in the

greater Los Angeles region, and the Debtors' bankruptcy proceedings were widely covered in the

media.  No former employee, other than Ms. Clement, filed a proof of claim regarding the same

subject matter as the Clement Claims, i.e., payment for unpaid commissions allegedly due

following termination or resignation of employment.  (Ehrenhofer Decl. ¶ 7.)  Similarly, no

employee with the relevant job description that was a current employee of any of the Defendants

as of the Bar Date or was subsequently hired and ceased to be employed by the Defendants after

the Bar Date has sought to sue the Defendants on grounds similar to Ms. Clement.  (See Hix

Decl. ¶ 14.)  The Reorganized Debtors are entitled, given that years have passed since the

---

[11] As noted above, the First Interrogatories sought disclosure of all Account Executives employed by Tribune or any of its subsidiaries in California during a specified time period.  Although the Defendants were required to respond to the First Interrogatories due to the denial of the Writ of Mandate in the Appeal, they neither admit nor concede that the individuals disclosed pursuant to the First Interrogatories corresponds to the putative class as defined by Ms. Clement in the Second Amended Complaint.  For example, the First Interrogatories were not limited to individuals employed by the Defendants, but included "any" of Tribune's subsidiaries.  Additionally, the First Interrogatories were not limited to individuals whose employment had terminated during the class period, including those who allegedly failed to receive post-termination commission payments.  Thus, the Defendants believe that the  response to the First Interrogatories is not a reliable indication of the individuals that might fall within the class definition.

expiration of the Bar Date, to rely upon the election of their former employees not to assert

claims in the Debtors' chapter 11 cases.

34.     The U.S. Bankruptcy Court for the District of Delaware confronted a

similar circumstance in the W.R. Grace bankruptcy proceedings.  In those proceedings a Rule

7023 motion was filed, albeit late.  The court noted that:

> [W]e have been presented with no persuasive authority or
> argument to show (1) how the bar date can or ought to be by-
> passed in this case so that claimants who did not file a proof of
> claim by the bar date . . . could now participate in a class proof of
> claim, a motion for which was filed over two years after the bar
> date . . .; (2) why the extensive notice procedures already utilized
> in this case are insufficient or would be substantially enhanced by
> class certification and notice process; or (3) why any remaining
> claims cannot be timely adjudicated through the  . . . process
> already established and working in this case.

In re W.R. Grace & Co., 389 B.R. 373 (Bankr. D. Del. 2008).  The same facts are presented here.

There is no showing in Ms. Clement's proofs of claim why a class certification – which has not

yet even been requested – should be granted by this Court over three and a half years after the

Bar Date.  There is likewise no basis to conclude that the notice procedures approved by this

Court in connection with the Bar Date were inadequate to provide notice to the proposed class

members nor any suggestion that the Debtors' claims resolution process was insufficient for

these particular claims while being adequate to process nearly 7,200 other claims.  Even if a class

were now sought to be certified, no legitimate purpose is served by doing so.

35.     In addition, the Debtors are entitled to rely upon the finality of the Bar

Date Order and the terms of the Plan in assessing the totality of the claims asserted against their

respective estates, particularly following the Effective Date of the Plan.  For example, the

Confirmation Order provides that the Reorganized Debtors "will be entitled for all purposes ***to

recognize and distribute only to*** those Holders of Allowed Claims or interests (including

Holders of Claims and Interests that become Allowed after the Distribution Record Date) that are

Holders of such Claims or Interests, *or participants therein*, as of the close of business on the

Distribution Record Date [i.e., the date of the Confirmation Order, July 23, 2012]."

(Confirmation Order at 20 emphasis added); see also Plan § 7.7.1 (same).)[12]  Because no class

proof of claim has been certified, the putative class members are neither holders of nor

"participants" in the Clement Claims.  Accordingly, the Debtors cannot be required to make any

distributions on account of any discharged claims – whatever they may be – that may have been

held by such putative class members.

### C.    Even If Ms. Clement Had Filed A Timely Motion To Apply Bankruptcy Rule 7023 To The Clement Claims, The Denial Of Such Motion Would Have Been Proper

36.    Procedurally, in exercising its discretion to certify a class proof of claim,

the "bankruptcy court first decides under Rule 9014 whether or not to apply Rule 23, Fed. R.

Civ. P., to a "contested matter," *i.e.*, the purported class claim; if and only if the court decides to

apply Rule 23, does it then determine whether the requirements of Rule 23 are satisfied."  In re

Ephedra Prods. Liab. Litig., 329 B.R. 1, 4 (S.D.N.Y. 2005); see also 10 Collier on Bankruptcy

¶ 7023.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) ("Consideration of a class

action motion in bankruptcy or an objection to a class action claim will trigger a two-step

process.  First, the court must exercise its discretion as to whether to apply Rule 23 to the

contested proceeding.  If it determines to apply Rule 23, then the court must determine if the

proposed class action/proceeding and class representative satisfy the requirements of Rule 23 for

class certification.") (collecting cases).  Even if Ms. Clement has filed a timely motion seeking

---

[12] As of the Effective Date, the Debtors were only aware of one class claimant who had sought and obtained permission, by agreement with the Debtors, to assert a class proof of claim.  See Docket Nos. 4513 (James Allen's Motion for Class Certification); Docket No. 10917 (Final Order Approving the Settlement Agreement and Class Certification).

authorization to file a class proof of claim in these cases, which she did not, the proper exercise

of this Court's discretion would have dictated that the motion be denied.

> **a)      Proceeding With A Class Claim Is Inferior To Individual Claim Adjudication**

37.      The circumstances under which class certification is granted for proofs of

claim in bankruptcy are narrowly defined.  See In re Sacred Heart Hosp. of Norristown, 177 B.R.

16, 22 (Bankr. E.D. Pa. 1995) (cautioning that the class proof of claim should be used "most

sparingly").  The best candidates for class certification are cases in which a nonbankruptcy court

certified the class prepetition and the class members received inadequate actual or constructive

notice of the bankruptcy case and bar date, i.e., where the class members are "unknown

claimants."  See In re Bally Total Fitness of Greater N.Y., Inc., 402 B.R. 616, 620 (Bankr.

S.D.N.Y. 2009).  As discussed above, the opposite is true here:  no such class was certified

prepetition and the putative class members all received actual or constructive notice of the

Debtors' bankruptcy proceedings.

38.      Bankruptcy courts that deny class certification recognize that the

procedural advantages of a class action in civil litigation are greatly diminished in the bankruptcy

context.  See, e.g., In re Am. Reserve Corp., 840 F.2d 487, 489 (7th Cir. 1988) (discussing

factors that favor class actions, including low potential recovery compared to the cost of bringing

suit, widely dispersed and unknown claimants, consolidation in a single proceeding); In re

Ephedra Prods. Liab. Litig., 329 B.R. at 9 (noting that the superiority of the class action

mechanism "is lost in bankruptcy");  In re Woodward & Lothrop Holdings, 205 B.R. at 376 ("A

bankruptcy proceeding offers the same procedural advantages as the class action because it

concentrates all the disputes in one forum.").  Specifically, bankruptcy proceedings are designed

to handle numerous individual claims against the debtor via an efficient claims resolution

process in a single forum that, prior to the applicable bar date, permits creditors to participate in the claims process for the cost of a stamp, without the need to hire a lawyer and with the benefit of prima facie validity (and deemed allowance if no objection is filed) upon a timely and properly-filed proof of claim.  The Bankruptcy Rules and Local Rules of this Court contemplate the adjudication and resolution of claims having similar characteristics by means of an omnibus objection to claims, and seventy one (71) such omnibus objections have been filed in these cases to date.  The Bankruptcy Rules also permit a single attorney to represent multiple creditors (subject to Rule 2019 disclosure requirements).  The claims resolution process in the bankruptcy context is therefore well suited to handle individual claims against the Debtors without the costs and burdens of class action litigation.

39.   The Debtors would incur substantial additional costs in defending the class action, including potential liability for Clement's attorneys' fees in the putative class claims are not disallowed.  See In re Bally Total Fitness, 402 B.R. at 621 n.4 ("Bally would be forced to incur substantial legal fees defending a class action – fees that would not be incurred if class members were required to file individual proofs of claim.  Were Plaintiffs to prevail, their attorneys would seek payment of their fees from the Debtors' estates, necessarily diminishing . . . the distributions available to other creditors.").  Numerous courts have denied postpetition class certification after finding that "[t]he only real beneficiaries of applying Rule 23 would be the lawyers representing the class" and that the defense costs to the estate outweigh any potential benefits to the proposed class.  In re Ephedra Prods. Liab. Litig., 329 B.R. at 10; In re Woodward & Lothrop Holdings, 205 B.R. at 376-77 ("The only beneficiaries of class certification, therefore, are Sager's lawyers.").

40.    The Clement Claims were hotly contested by the parties in the California Court prior to the imposition of the automatic stay, and were already the subject of appeal proceedings relating to the putative class.  Ms. Clement's recent efforts to expand the class definition and pursue the Litigation in the California Court on a class basis, despite the Reorganized Debtors' communications that no class recovery has been preserved via a timely-certified class proof of claim, indicate that these issues of bankruptcy law and the interpretation of this Court's orders will not be resolved without direction from this Court.  Thus, the Reorganized Debtors have filed this Objection to obtain a prompt determination from this Court that the Clement Claims should be disallowed and expunged to the extent they purport to assert claims on behalf of a putative class.

## II.    THE DEBTORS HAVE NO LIABILITY FOR THE CLEMENT CLAIMS ASSERTED BY MS. CLEMENT IN HER INDIVIDUAL CAPACITY

41.    A "claim" for bankruptcy purposes means a "right to payment", whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.  11 U.S.C. § 101(5).

42.    Section 502(b) of the Bankruptcy Code provides in pertinent part:

> [I]f [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> > (1)    such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b).  Section 502(b)(1) recognizes the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy

Code." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443,450-51 (2007)

(citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)).  A claim against the bankruptcy

estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be

enforceable against the debtor outside of bankruptcy." In re Combustion Eng'g, Inc., 391 F.3d

190, 245 (3d Cir. 2004).  In proceedings to determine whether a claim is enforceable against the

estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any

entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other

personal defenses" pursuant to section 558 of the Bankruptcy Code.  See 11 U.S.C. § 558.

      43.    To the extent the Clement Claims assert causes of action by Ms. Clement

in her individual capacity, the Reorganized Debtors dispute (i) Ms. Clement's assertion that she

was "jointly employed" by Tribune, LATC, TMN, and TI; (ii) the factual circumstances recited

in the operative complaint; and (iii) the legal conclusion that Ms. Clement was entitled to receive

additional commissions following her resignation from TMN, based on the plain terms of her

employment contract with TMN.  Additionally, pursuant to the terms of the Plan and the

Confirmation Order, the Reorganized Debtors dispute that, even if Ms. Clement were to obtain a

favorable judgment on the merits, she would be entitled to receive any distribution from the

Debtors' estates other than for compensatory damages.  The Second Amended Complaint seeks

"special damages," "exemplary damages," pre-judgment and post-judgment interest, attorneys'

fees, and costs of suit, in addition to restitution (Ex. G, 2d Am. Compl. at 9), which are not

recoverable under the terms of the Plan.  See Plan § 11.4 ("The Confirmation Order . . . shall

constitute an Order: . . . disallowing or subordinating to all other Claims, as the case may be, any

Claims for penalties, punitive damages or any other damages not constituting compensatory

damages to the extent permissible under the Bankruptcy Code and applicable non-bankruptcy

law."); Plan § 3.3.5 (providing that post-petition interest shall not accrue or be paid on any

general unsecured claim against a subsidiary Debtor); Plan § 7.4 (providing that post-petition

interest shall not be paid on any claim).  Claims for unmatured interest are also not permitted

under the Bankruptcy Code.  11 U.S.C. § 502(b)(2).

44.     However, because the parties had not yet had a full opportunity to

exchange discovery at the time the Lawsuit was stayed, adjudication of the Clement Claims

requires further proceedings in this Court to permit the parties to complete discovery and for the

parties to file one or more pre-trial dispositive motions, including motions to dismiss and/or

motions for summary judgment (each a "Dispositive Motion").  Accordingly, the Reorganized

Debtors request that the Court establish an initial discovery and briefing schedule in the attached

Order for the adjudication of the Clement Claims to the extent such claims continue to be

asserted by Ms. Clement in her individual capacity.  The Reorganized Debtors reserve the right

to raise any and all applicable factual and legal arguments in opposition to the Clement Claims in

such further proceedings and to seek additional scheduling orders as may be necessary to

facilitate the resolution of the Clement Claims.

## III.   THE CLEMENT CLAIMS SHOULD BE RECLASSIFIED AS GENERAL UNSECURED NON-PRIORITY CLAIMS

45.     Finally, Ms. Clement has asserted the Clement Claims as being entitled to

priority treatment under section 507(a)(4) of the Bankruptcy Code, which provides, in relevant

part, that priority will be granted to:

> [a]llowed unsecured claims, but only to the extent of $10,950 for
> each individual or corporation, as the case may be, earned within
> 180 days before the date of the filing of the petition or the date of
> the cessation of the debtor's business, whichever occurs first,
>
> for—

(A) wages, salaries, or commissions, including vacation,
severance, and sick leave pay earned by an individual[.]

11 U.S.C. § 507(a)(4).  In order to qualify for section 507(a)(4) priority, wages, salaries, or

commissions must be "earned" within the 180-day priority period.  Here, Ms. Clement did not

earn wages, salary, or commissions within 180 days before the Petition Date, because Ms.

Clement resigned her employment with TMN in August 2005, more than three years prior to the

Petition Date.  Nothing in the Clement Claims suggests otherwise or provides any factual basis

for priority treatment.  As a result, the Reorganized Debtors believe that the Clement Claims

should be modified on the Claims Register to reflect that they are asserted as general unsecured

non-priority claims.

## NOTICE

46.     Notice of this Objection has been provided to: (i) the Office of the United

States Trustee; (ii) counsel for Ms. Clement as identified on the Clement Claims; and (iii) all

parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule

2002-1(b).  In light of the nature of the relief requested herein, the Reorganized Debtors submit

that no other or further notice is necessary.

## NO PRIOR REQUEST

47.     No previous application for the relief sought herein has been made to this

Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Reorganized Debtors respectfully request that the Court enter an order in the form submitted herewith, pursuant to sections 502(b), 524, 558, and 1141 of the Bankruptcy Code and Bankruptcy Rules 3001, 3007, 7023 and 9014, (i) disallowing in full and expunging the Clement Claims to the extent such claims purport to seek recovery on behalf of a putative class of claimants; (ii) establishing a discovery and briefing schedule for the adjudication of the Clement Claims to the extent such claims are asserted by Ms. Clement in her individual capacity; (iii) reclassifying the Clement Claims as general unsecured claims; (iv) directing the Claims Agent to modify the Claims Register to comport with the relief requested herein; and (v) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
March 17, 2014

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By:   _J. Kate Stickles_____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR REORGANIZED DEBTORS