### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Hearing Date: September 23, 2014 at 10:00 a.m. ET**<br>**Response Deadline: August 18, 2014 at 4:00 p.m. ET** |

**REORGANIZED DEBTORS' SEVENTY-SECOND OMNIBUS
(SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO
SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE,
BANKRUPTCY RULES 3001, 3003 AND 3007, AND LOCAL RULE 3007-1**

**("DISPUTED EMPLOYEE BENEFIT CLAIMS")**

> **Claimants receiving this objection should locate their name(s) and
> claim number(s) on <u>Exhibit A</u> to this Objection. The grounds for the
> Objection are set forth herein.**

The reorganized debtors in the above-captioned chapter 11 cases (collectively, the

"<u>Reorganized Debtors</u>"), by and through their undersigned counsel, hereby file this seventy-

second omnibus objection (the "<u>Objection</u>"), which Objection covers each of the two (2) claims

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

set forth on <u>Exhibit A</u> attached hereto and to the proposed form of order submitted herewith (collectively, the "<u>Disputed Employee Benefit Claims</u>"), pursuant to sections 502(b) and 558 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

By this Objection, the Reorganized Debtors request the entry of an order disallowing and expunging each of the Disputed Employee Benefit Claims, as indicated in further detail below.  In support of the Objection, the Reorganized Debtors submit the declaration of Kevin J. Dansart, Director, Benefits Administration of Tribune Company (the "<u>Dansart Declaration</u>"), a copy of which is attached hereto as <u>Exhibit B</u>.  In further support of the Objection, the Reorganized Debtors respectfully state as follows:

## STATUS OF THE CASE

1.  On December 8, 2008 (the "<u>Petition Date</u>"), Tribune Company ("<u>Tribune</u>") and certain of its affiliates (collectively, the "<u>Debtors</u>")[2] each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) (Docket Nos. 43, 2333).

3.  On July 23, 2012, the Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization (the "<u>Plan</u>") for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital

---

[2] As used herein, the term "Debtors" refers to the entities that filed the above-captioned chapter 11 cases and the term "Reorganized Debtors" refers to the entities that became successors to the Debtors upon the Debtors' emergence from their chapter 11 cases.

46429/0001-10812322V1

Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Docket No. 12074).[3]

4.      The Effective Date of the Plan occurred on December 31, 2012.[4]

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1.

## FACTUAL BACKGROUND TO THE DEBTORS' CLAIMS PROCESS

6.      On March 23, 2009, the Debtors filed their schedules of assets and liabilities and statements of financial affairs (Docket Nos. 567-789), which were subsequently amended on April 13, 2009 (Docket Nos. 894-957), June 12, 2009 (Docket Nos. 1343-1453), March 2, 2010 (Docket Nos. 3548-3599), May 13, 2010 (Docket No. 4388), and January 28, 2011 (Docket Nos. 7661-7671) (collectively, the "Schedules").

7.      On March 25, 2009, the Court entered an order (the "Bar Date Order") (i) establishing June 12, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11 cases and (ii) approving the form and manner of notice of the Bar Date.

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[4] The Plan provides that one or more Debtors may undertake Restructuring Transactions on, prior to, or after the Effective Date, which may include, without limitation, mergers, consolidations, conversions, joint ventures, restructurings, recapitalizations, dispositions, liquidations or dissolutions.  See Plan § 5.2, Ex. 5.2 and Docket No. 12732.  Certain of the Debtors against which the Unclaimed Property Claims were filed undertook Restructuring Transactions, pursuant to which they merged with and into direct or indirect wholly-owned subsidiaries of Tribune or converted into limited liability companies.  A notice with information respecting each Debtor's post-emergence entity following the consummation of the Restructuring Transactions was filed with the Bankruptcy Court on November 16, 2012 (Docket No. 12732).

8.      Written notice of the Bar Date was mailed to, among others, all known creditors listed on the Schedules, as amended, and the Bar Date Order was served on all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date Order.  In addition to mailing such actual notice, the Debtors also published notice of the Bar Date in the National Editions of the Wall Street Journal and the New York Times and in the Chicago Tribune and Los Angeles Times on May 12, 2009.

9.      As of the Effective Date, approximately 7,165 Proofs of Claim were filed in these chapter 11 cases.  The Proofs of Claim are recorded on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors and the Reorganized Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent").

## RELIEF REQUESTED

10.      By this Objection, the Reorganized Debtors seek entry of an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1, (i) disallowing and expunging in their entirety each of the Disputed Employee Benefit Claims identified on Exhibit A on the grounds set forth herein with respect to each such claim, and (ii) authorizing the Claims Agent to modify each of the Disputed Employee Benefit Claims on the Claims Register in accordance with the proposed Order.

11.      This Objection complies with Local Rule 3007-1 in all respects.

## BASIS FOR OBJECTION

12.      This Objection is based on section 502(b)(1) of the Bankruptcy Code, which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a
> hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the

4

petition, and shall allow such claim in such amount, except to the extent that—

> (1)    such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).  Section 502(b)(1) recognizes the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450-51 (2007) (citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)).  A claim against the bankruptcy estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." In re Combustion Eng'g, Inc., 391 F.3d 190, 245 (3d Cir. 2004).  In proceedings to determine whether a claim is enforceable against the estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses" pursuant to section 558 of the Bankruptcy Code.  See 11 U.S.C. § 558.

13.    "The burden of proof for claims brought in the bankruptcy court . . . rests on different parties at different times." Lampe v. Lampe, 665 F.3d 506, 514 (3d Cir. 2011) (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992)).  A claimant must first allege facts sufficient to support his claim.  Only once he has done so will his claim be deemed prima facie valid.  "The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim." Allegheny, 954 F.2d at 173 ("Initially, the claimant must allege facts sufficient to support the claim.  If the averments in his filed claim meet this standard of sufficiency, it is 'prima facie' valid.").  However, in circumstances "where the proof of claim does not adhere to the requirements of Rule 3001 by

5

providing the facts and documents necessary to support the claim, it is not entitled to the presumption of prima facie validity." In re Kincaid, 388 B.R. 610, 614 (Bankr. E.D. Pa. 2008).

14.    In connection with their review of all Proofs of Claim filed to date against the Debtors' estates, the Reorganized Debtors have identified two (2) claims, which are listed on Exhibit A hereto and described in detail below, as Disputed Employee Benefit Claims.[5]  Based upon the Reorganized Debtors' review of such claims and the books and records maintained by the Debtors and Reorganized Debtors relating to the subject matter of these claims, the Reorganized Debtors have determined that they have no liability to the claimants on account of such Disputed Employee Benefit Claims.  For the reasons set forth below with respect to each of the Disputed Employee Benefit Claims, the Reorganized Debtors request entry of an order sustaining this Objection and disallowing and expunging in their entirety each of the Disputed Employee Benefit Claims.  The Reorganized Debtors also request that the Court authorize the Claims Agent to expunge the Disputed Employee Benefit Claims from the Claims Register so that the Claims Register reflects more accurately the claims legitimately asserted and outstanding against the Debtors' estates.

A.    **Claim No. 1575 of Albert L. Hurt**

a.    **Background to the Hurt Claim**

15.    Albert L. Hurt filed a Proof of Claim on April 23, 2009 in the amount of $10,745.21 against Tribune, which was assigned Claim No. 1575 by the Claims Agent (the "Hurt Claim").  A copy of the Hurt Claim is attached hereto as Exhibit C.  The Hurt Claim asserts that the entire amount of such claim is entitled to priority treatment pursuant to section 507(a)(5) of the Bankruptcy Code.  See Ex. C at 1.

---

[5] The Reorganized Debtors do not concede that the amounts stated on the Proofs of Claim reflect the amounts due from the Debtors or the Reorganized Debtors on account of such claims.

16.     Mr. Hurt cited "LOSS OF ESOP 100% VESTMENT [sic] 2003 & 2004" as the basis for the Hurt Claim and attached a single-page document setting forth a summary of account activity from January 1, 2004 through December 31, 2004 for a "401(k) Savings Plan Account." See Ex. C.[6]  The account statement purports to show an investment loss of $8,354.81 for calendar year 2004.  See Ex. C at 2.

**b.     The Hurt Claim is Not _Prima Facie_ Valid**

17.     The Hurt Claim does not allege facts sufficient to allow the Reorganized Debtors to understand the factual or legal basis for the claim, how the asserted claim amount was calculated,[7] or why the claim may be valid.  Neither the claim nor the accompanying documentation offer any factual or legal theory of liability on account of which Tribune could plausibly owe any amounts to Mr. Hurt.  For all of these reasons, the Hurt Claim is not _prima facie_ valid, Mr. Hurt has not met his burden of going forward, and the Hurt Claim should be disallowed.

18.     Notwithstanding the facial deficiencies of the Hurt Claim, given Mr. Hurt's _pro se_ status and making all reasonable inferences in his favor, the Reorganized Debtors have assumed, solely for purposes of this Objection, that Mr. Hurt is seeking recovery of the value of investment losses sustained by his 401(k) Savings Plan account during years 2003 and 2004.  Based on that assumption, Mr. Hurt's claim fails because ordinary investment losses

---

[6] The Reorganized Debtors have reviewed their books and records pertaining to the Tribune Company 401(k) Savings Plan and have confirmed that the account statement appended to the Hurt Claim is consistent with those sent by their third-party benefits administrator to participants in the Tribune Company 401(k) Savings Plan; however, no identifying information for Mr. Hurt is included on this summary page and the Reorganized Debtors were not able to verify its authenticity.  See Dansart Decl. ¶ 5.  Solely for purposes of this Objection, the Reorganized Debtors do not contest that the account statement appended to the Hurt Claim is a statement pertaining to Mr. Hurt's 401(k) Savings Plan account. The Reorganized Debtors reserve all of their rights to contest the admissibility of the document in any other proceedings that may occur with respect to the Hurt Claim if this Objection is not sustained.

[7] For example, the accompanying documentation purports to show a loss of $8,354.81 to Mr. Hurt's 401(k) Savings Plan account for calendar year 2004 but provides no explanation or documentation for the additional $2,390.40 purportedly sought to be recovered by the Hurt Claim.

sustained by a participant in a company-sponsored 401(k) plan are not recoverable against the plan sponsor.  Under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA"), the federal law governing tax-qualified retirement plans, a 401(k) plan is an "individual account plan."  See 29 U.S.C. § 1002(34).  The benefits in an individual account plan are "based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account."  See 29 U.S.C. § 1002(34) (emphasis added).  Individual account plans have inherent risk because they rely on investments in securities that are not guaranteed to increase over time.  Put simply, if the amounts sought by the Hurt Claim are for ordinary market losses in Mr. Hurt's 401(k) plan, such losses resulted from ordinary market fluctuations, not any action by any of the Debtors.  ERISA's comprehensive civil remedies statutes do not provide for a cause of action by a participant in an individual account plan against the plan sponsor or plan fiduciaries for ordinary investment losses.  On the contrary, section 404(c)(1)(B) of ERISA provides that a fiduciary is not responsible for any losses in an individual account plan "which results from the participant's . . . exercise of control."  29 U.S.C. § 1104(c)(1)(B); see also LaRue v. DeWolff, Boberg & Assoc., Inc., 128 S.Ct 1020, 1025 (2008) (recognizing that section 404(c) "exempts fiduciaries from liability for losses caused by participants' exercise of control over asserts in their individual accounts.").  Losses as a result of market fluctuations, although unfortunate, are generally not recoverable from a plan sponsor.[8]  For such reasons, the Hurt Claim must be disallowed and expunged.

---

[8] Should Mr. Hurt articulate a cognizable claim based on information included in the Hurt Claim, the Reorganized Debtors reserve their rights to argue that the cause(s) of action upon which the Hurt Claim is based were not timely asserted as of the Petition Date under applicable non-bankruptcy law.

19.    The Reorganized Debtors have attempted to contact Mr. Hurt to obtain more information about the Hurt Claim.  Specifically, on December 2, 2013, counsel for the Reorganized Debtors sent a letter via registered mail to Mr. Hurt, explaining the Reorganized Debtors' objection to the Hurt Claim and requesting Mr. Hurt provide additional information (the "December 2013 Letter").  A copy of the December 2013 Letter (without enclosures) is attached hereto as Exhibit D.  The Reorganized Debtors have received no response from Mr. Hurt to the December 2013 Letter.  See Dansart Decl. ¶ 6.

### c.    The Hurt Claim Also is Not Entitled to Priority Treatment

20.    Mr. Hurt has asserted the Hurt Claim as being entitled to priority treatment under section 507(a)(5) of the Bankruptcy Code, which provides, in relevant part, that priority will be granted to:

> [a]llowed unsecured claims for contributions to an employee benefit plan—
>
> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first [.]

11 U.S.C. § 507(a)(5).  In order to qualify for section 507(a)(5) priority, benefits must relate to "services rendered" within the 180-day priority period.  Here, Mr. Hurt is seeking a claim for losses in his 401(k) Savings Plan account in 2003 and 2004.  These amounts therefore were not contributed for services rendered by Mr. Hurt to Tribune within 180 days of the Petition Date (December 8, 2008).  As a result, the Reorganized Debtors believe that even if the Hurt Claim is not disallowed as filed (which it should be), it should be modified on the Claims Register to be a general unsecured non-priority claim.

B.    **Claim No. 2736 of John Spano**

a.    **Background to the Spano Claim**

21.    John Spano filed a Proof of Claim on May 12, 2009 in an unliquidated amount, which was assigned Claim No. 2736 by the Claims Agent (the "Spano Claim").  A copy of the Spano Claim is attached hereto as Exhibit E.  The Spano Claim was not asserted against any particular Debtor.  The Reorganized Debtors have determined that, based on the apparent subject matter of the Spano Claim, Tribune is the only entity against which the Spano Claim could plausibly be asserted.  See Dansart Decl. ¶ 8.

22.    Appended to the Spano Claim are (i) a statement that purports to set out the basis for the Spano Claim (the "Spano Statement"); (ii) a copy of an email allegedly sent by Mr. Spano to Chandler Bigelow III, then-Vice President/Treasurer of Tribune, on April 19, 2007; and (iii) an extract of the Tender Offer Statement filed by Tribune with the United States Securities and Exchange Commission concerning the Leveraged ESOP Transactions that were consummated by Tribune in 2007.  See Ex. E.[9]  The Spano Claim appears to be for an alleged breach of fiduciary duties by Tribune under ERISA, based on Mr. Spano's contention in the Spano Statement that his "ESOP interest was compromised and debased."  See Ex. E at 2.[10]  The Spano Statement states that "damages are yet to be determined, as they include false valuations of ESOP assets that remain to be fixed."  Id.  No further explanation of the Spano Claim is provided.

---

[9] See Tribune Co., Tender Offer Statement (Schedule TO) (Apr. 25, 2007) for a complete copy of the Tender Offer Statement as filed with the Securities and Exchange Commission.

[10] The Spano Claim states that it is also based on a purported "failure to respond to my questions presented in 2007," but the Reorganized Debtors are not able to discern the legal or factual basis under which Tribune might have any liability to Mr. Spano in this regard.  Additionally, the Spano Claim references principles of California law, including the duties of care and loyalty, but does not articulate any facts or legal theory that would form the basis for any such state law claims, nor does it explain how California state law might be applicable to the Spano Claim, particularly given that Tribune is not a California corporation and that ERISA preempts state law in respect of claims relating to tax-qualified retirement plans.

### b.    The Spano Claim is not Prima Facie Valid

23.    The Spano Claim states neither facts nor a legal theory of liability

sufficient to allow the Reorganized Debtors to understand the basis for the claim, and therefore

fails to meet the threshold requirements to be considered a prima facie valid claim.  The Spano

Statement refers to "breach of fiduciary duties" and alleges that "Tribune and its predecessor

GreatBanc Trust Inc. and ESOP trustees failed to act solely in the interests of ESOP participants

and beneficiaries before as the Zell purchase [i.e., the Leveraged ESOP Transactions] was being

pursued."  See Ex. E at 2.[11]  However, the Spano Statement provides no explanation of exactly

what Tribune is alleged to have done, or not done, that might have constituted a breach of

fiduciary duty to Mr. Spano.  Nor does it clarify which "ESOP" Mr. Spano is referring to in the

Spano Statement as being at issue.  Given the dates of Mr. Spano's employment (i.e., 1983

through 2008), the Reorganized Debtors have assumed that Mr. Spano may be referring to the

Times Mirror Employee Stock Ownership Plan, but that plan was not in existence in 2007.  See

Dansart Decl. ¶ 10.  Mr. Spano was never a participant in the Tribune Employee Stock

Ownership Plan, which was formed as a part of the Leveraged ESOP Transactions in 2007.  Id.

Mr. Spano has failed to articulate any cognizable legal or factual bases for the Spano Claim.

This in turn effectively deprives the Reorganized Debtors from being able to evaluate, and, if

necessary, present an appropriate defense to such claim.  The deficiencies in the Spano Claim

compel its disallowance.

---

[11] GreatBanc Trust Inc. is not a predecessor of, or otherwise affiliated with, Tribune.  GreatBanc was trustee of the Tribune Employee Stock Ownership Trust, which was formed as a part of the Leveraged ESOP Transactions.  See Dansart Decl. ¶ 9.  As noted below, Mr. Spano was not a participant in this plan.

      c.      **The Reorganized Debtors Also Have No Liability for the Spano Claim because Mr. Spano Waived and Released Claims Against the Debtors, Including Claims Relating to Benefit Plans**

      24.      Even if the Spano Claim presented a plausible legal or factual bases for liability on the part of Tribune to which Tribune could respond and defend, any claim by Mr. Spano arising in connection with his participation in company-sponsored benefit plans (including an employee stock ownership plan) has been waived and released. On these alternative grounds, the Spano Claim should be disallowed and expunged.

      25.      Mr. Spano was a former employee of Los Angeles Times Communications LLC (the "Times"), publisher of the Los Angeles Times newspaper. See Dansart Decl. ¶ 7. Mr. Spano was hired on or about October 10, 1983 and voluntarily separated from the Times on or about March 28, 2008. Id. At that time, Mr. Spano executed a Waiver and Release under the company's Employee Voluntary Separation Plan. A copy of the Waiver and Release is attached hereto as Exhibit F. The Waiver and Release provided that Mr. Spano waived "known or unknown actions, causes of action, claims or liabilities of any kind . . . arising out of or related to [his] employment" against the Times and "its parent(s), subsidiaries, affiliates, including but not limited by [his] employing business unit, predecessors, successors, divisions, affiliates, officers, directors, agents, shareholders, attorneys, employees, employee benefit plans, plan administrators, insurers, assignees, fiduciaries, administrators, trustees, and legal representatives, both past and present . . . ." See Ex. F at 1. This Waiver and Release, made for consideration received by Mr. Spano, precludes and bars the assertion of the Spano Claim or any other claim against the Times or its parent, Tribune, in connection with allegations concerning his participation in company-sponsored employee benefit plans. For this reason, the Spano Claim should be disallowed.

## RESERVATION OF RIGHTS

26.    The Reorganized Debtors hereby reserve their right to amend, modify, and/or supplement this Objection at any time prior to the hearing on this Objection. The Reorganized Debtors further reserve their right to adjourn the hearing on this Objection as it pertains to any or all of the Disputed Employee Benefit Claims. In the event that the Reorganized Debtors so adjourn the hearing, they will state that the hearing on the Objection and/or any response filed in connection therewith and/or all applicable deadlines for responsive pleadings have been adjourned on the agenda for the hearing, which agenda will be served on any party affected by such adjournment.

## NOTICE

27.    Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) the claimants listed on Exhibit A; and (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Reorganized Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

28.    No previous application for the relief sought herein has been made to this Court or to any other court.

13

WHEREFORE, for the reasons set forth herein, the Reorganized Debtors respectfully request that the Court enter an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1, (i) disallowing in full and expunging the Disputed Employee Benefit Claims set forth on <u>Exhibit A</u>; (ii) directing the Claims Agent to modify the Disputed Employee Benefit Claims on the Claims Register; and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  Wilmington, Delaware
       July 17, 2014

Respectfully submitted,

SIDLEY AUSTIN LLP
Kenneth P. Kansa
Jillian K. Ludwig
Michael T. Gustafson
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR REORGANIZED DEBTORS

46429/0001-10812322V1