## EXHIBIT E

**Spano Claim**

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
Tribune Company Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5069
New York, NY 10150-5069

**PROOF OF CLAIM**

Filed: USBC - District of Delaware
Tribune Company, Et Al.
08-13141 (KJC)    0000002736

| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
|---|---|
| | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

TRB (CREDITOR.DBF,CREDNUM)CREDNUM # 1000033055******
JOHN SPANO
9606 OAKMORE ROAD
LOS ANGELES, CA 90035

Telephone number:          Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____
063137

Name and address where payment should be sent (if different from above)

Telephone number: 310-202-6891   Email Address: JohnSpanoEsq@[illegible]

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ _____

   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
   If all or part of your claim is entitled to priority, complete Item 5.

   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.
   ☐ Check this box if claim is for a claim related to goods delivered during the twenty (20) days prior to December 8, 2008 (the "Petition Date"), pursuant to 11 U.S.C. §503(b)(9). Please indicate amount entitled to 503(b)(9) $ _____

2. **Basis for Claim:** See Attachment One
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____
   Value of Property: $_____   Annual Interest Rate _____%

   Amount of arrearage and other charges as of time case filed included in secured claim, if any:

   $_____   Basis for perfection: _____

   Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim:

   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
   ☐ Wages, salaries or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

   **Amount entitled to priority:**
   $_____

   *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

Date: 5/7/09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
[signature]

FOR COURT USE ONLY

**FILED / RECEIVED**

MAY 1 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

Spano claim – attachment One

Tribune company claims processing center

This is the basis for my claim:  My ESOP interest was compromised and debased, after 24 years of employment by Tribune and its precessors, by ESOP trustees (1) breach of fiduciary duties owing to me and my family and (2) failure to respond to my questions presented in 2007.

Tribune and its predecessor GreatBanc Trust Inc. and ESOP trustees failed to act solely in the interests of ESOP participants and beneficiaries before as the Zell purchase was being pursued. These parties breached, or their successors breached, duties under federal law, including but not limited to 29 U.S.C. 1001 et seq., of prudence, loyalty, to monitor investments and to avoid conflicts of interest.  Under California law, these parties failed to fulfill the duty of care and the duty of loyalty imposed thereby, by failing to act in good faith as a prudent person would with regard to her own investment, and by failing to act in good faith and in a reasonable belief that what she does is in the corporations's best interest.

My damages are yet to be determined, as they include false valuations of ESOP assets that remain to be fixed.

There are two attachments:  (Attachment A):  copy of email questions sent to Chandler Bigelow on April 19, 2007 and (Attachment B) page 45 of "tender offer" of 2007.

*Attachment A*

# Spano, John

**From:** Spano, John
**Sent:** Thursday, April 19, 2007 2:16 PM
**To:** Bigelow, Chandler
**Cc:** Spano, John

Mr. Bigelow:

I believe you are listed as the trustee for the times-Mirror ESOP. I am a long time employe of the Los Angeles times. When an executive was asked about the impact of the ownership changes on the existing ESOP and its contributors/beneficiaries, he had no information.
Therefore, I am contacting you as the official representative of the plan in hopes that you may be able to answer the following questions. I notice also that you are trustee for at least one other Times retirement funding entity.

First, a substantial portion of my anticipated retirement is in the existing esop, which is exclusively times-mirror/tribune stock. If the the esop stocks are bought out and replaced with new company stock, then I understand I would be forced to trade my stock for stock in the new ESOP. Can you compare the indebtedness for each?

Second, I'm concerned about what is being done to fulfill fiduciary duties owed to me as esop participant. Has independent counsel been selected? Has a fairness opinion been sought? Do you intend to do so?

An acquaintance who is a lawyer cited an 83 federal advisory opinion that holds that "procedural prudence requires independent financial and legal counsel" when dealing with ESOP changes. Are you familiar with this opinion, and what impact does it have on the duties you owe to plan participants such as myself, if any?

Have you done any projections of future value of assets of the existing esop, and of the new esop?

What plans if any are in the works for a merger of the tribune pension with any other entity? I am concerned about what has been described by Tribune executives as "overfunding" in the fixed-benefit pension, of which i am a beneficiary. Are any changes related to that pension contemplated in the ownership change of Tribune?

Are there any plans to hold company stock in the new 401k? How does the ownership change impact my rights to diversify 1/3 of my holdings next year, and each year thereafter, should that occur?.

any comments would be much appreciated, john spano 213-237-7286

1

*[handwritten: From "Tender offer" 2007. Attachment B]*

believes, however, that the proposed Leveraged ESOP Transactions, including the Tender Offer and the Merger, are fair to the Company's unaffiliated stockholders based on the following factors:

- the consideration offered in the Tender Offer and the Merger of $34.00 per share represents a premium of approximately 5.9% to the closing price of Company Common Stock on March 30, 2007, the last trading day before the proposal was made public, and approximately 12.5% to the average closing price of Company Common Stock for the 30 calendar day period ending on March 30, 2007;

- the $34.00 per share consideration offered in the Tender Offer and the Merger and other terms and conditions of the Merger Agreement resulted from extensive arm's-length negotiations among the Special Committee and its advisors, the ESOP and its advisors, and the Zell Entity and its advisors;

- the Merger is conditioned upon the approval of the holders of a majority of the outstanding shares; the ESOP assumes that the Company's stockholders are capable of evaluating the fairness of the Tender Offer and further assumes that an informed decision by holders of a majority of outstanding shares provides meaningful procedural protections for the Company's stockholders;

- the Special Committee consists solely of directors who are not officers or significant stockholders of the Company, or affiliated with the ESOP or its affiliates, or the Zell Entity or its affiliates;

- the Special Committee determined that the Merger Agreement and the Tender Offer and the Merger are fair to the unaffiliated stockholders of the Company and in the best interests of such stockholders;

- the Board determined, based on the recommendation of the Special Committee, that the Merger Agreement and the Tender Offer and the Merger are fair to the unaffiliated stockholders of the Company and in the best interests of such stockholders;

- the Tender Offer and the Merger will provide consideration to the stockholders entirely in cash, which provides certainty of value;

- the Special Committee and the Board received the advice of financial and legal advisors, each of which has extensive experience in going-private transactions; the Special Committee retained and received financial advice from Morgan Stanley, and the Board retained and received financial advice from Citi and Merrill Lynch, which included receipt of the fairness opinions referred to above under "Special Factors—Opinion of the Special Committee's Financial Advisor" and "Special Factors—Opinion of the Company's Financial Advisor;" the Company and the Board retained and received legal advice from Wachtell, Lipton, Rosen & Katz, Sidley Austin LLP and, for ESOP matters, McDermott Will & Emery; and the Special Committee retained and received legal advice from Skadden, Arps, Slate, Meagher & Flom LLP;

- the fact that the ESOP did not participate in the deliberative process of, or the conclusions reached by, the Special Committee or the negotiating positions of the Special Committee;

- the fact that appraisal rights under Delaware law are available to holders of shares of Company Common Stock who do not vote in favor of the Merger and comply with all of the required procedures under Delaware law, which provides stockholders who dispute the fairness of the Merger consideration with an opportunity to have a court determine the fair value of their shares, which may be more than, less than, or the same as the amount such stockholders would have received under the Merger Agreement; and

- the fact that the Merger Agreement allows the Board or the Special Committee to withdraw or change its recommendation of the Merger Agreement, and to terminate the Merger Agreement and to accept a Superior Proposal (as described below under "Special Factors—The Merger

45

