## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Hearing Date: September 23, 2014 at 10:00 a.m. ET**<br>**Response Deadline: August 27, 2014 at 4:00 p.m. ET** |
| | **Related to Docket Nos. 8065, 8289, 8325, 8523, and 8623** |

## REORGANIZED DEBTORS' SUPPLEMENTAL OBJECTION TO THE PROOFS OF CLAIM FILED BY CAROL WALKER PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007

The reorganized debtors in the above-captioned chapter 11 cases (collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby file this supplemental objection (the "Supplemental Objection") to Claim No. 6601 filed by Carol Walker, which Supplemental Objection also covers the subsequently-filed Claim Nos. 6780, 6786, and 7092 (collectively, the "Walker Claims"), copies of which are appended hereto as Exhibits A-D. The Reorganized Debtors submit this Supplemental Objection on the grounds that such claims were

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

untimely filed and the Reorganized Debtors have no liability for such claims. The Reorganized Debtors submit that this Court may sustain this Supplemental Objection as a matter of law.

This Supplemental Objection supplements the Debtors' previously-filed objection to Claim No. 6601 dated February 18, 2011 (Docket No. 8065) (the "Initial Objection")[2] and is brought pursuant to sections 502(b) and 558 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Supplemental Objection, the Reorganized Debtors rely on the Declaration of Kathleen Kearney, Director of Benefits for Tribune Publishing Company (the "Kearney Declaration"), attached hereto as Exhibit E.

## INTRODUCTION

1.    Ms. Walker was previously employed by Los Angeles Times Communications LLC (the "Times"), the publisher of the Los Angeles Times newspaper, but has not performed any work for the Times since July 1994, when she began a disability-related leave of absence. In December 2009, the Times discovered through an audit process that, notwithstanding the fact that Ms. Walker's eligibility for disability leave and benefits had terminated in May 1997 and she had not returned to work as required, she had nonetheless remained listed in the Times' system as an "inactive employee." The Times further discovered that during the twelve-year period between May 1997 and December 2009, Ms. Walker and her family had continued to receive company-provided health care benefits at no cost to her, to which she was not entitled to receive because she was no longer eligible for disability leave, had not returned to work, and had made no contributions (via payroll or otherwise) to cover the premiums for such benefits.

---

[2] The Initial Objection was included as part of the Debtors' Forty-Second Omnibus (Substantive) Objection to Claims (Docket No. 8065), which sought to expunge approximately fifteen (15) claims for which no liability was reflected in the Debtors' books and records, including Claim No. 6601 filed by Ms. Walker.

2.      Immediately upon discovering that Ms. Walker was listed as an inactive employee in its computer records and was receiving free health care benefits to which she was not entitled, the Times contacted Ms. Walker.  Following several communications between the Times and Ms. Walker's putative attorneys, the Times, at its discretion, treated Ms. Walker as having retired effective February 28, 2010, and gave Ms. Walker the option of enrolling in its Pre-65 Retiree Benefits Program, which provides retirees with health care benefits at a reduced cost compared to market rates for comparable coverage.  Ms. Walker did so (with a reservation of rights) and is currently receiving health care benefits from this program.  Ms. Walker is required to contribute a share of the cost of the premiums for her health care benefits, as is every participant in the program.

3.      In July 2010, more than seven months after the initial communications between the Times and Ms. Walker regarding the modification of her health care benefits, Ms. Walker filed Claim No. 6601, the first of the four Walker Claims.  The Walker Claims appear to assert liability on the part of the Times under two principal theories: (1) that Ms. Walker "detrimentally relied" on receiving cost-free health care coverage since going on disability leave in 1994 and should therefore be provided with ongoing cost-free health care coverage, or the estimated value thereof, and (2) that she was wrongfully terminated from the Times when it deemed her as having retired in February 2010.

4.      As to the first theory, Ms. Walker asserts in effect that because the Times made an administrative error in her favor for more than twelve years, it now has an obligation to continue making that error in perpetuity.  Common sense suggests otherwise, and nothing in the applicable facts or law is to the contrary.  On the second theory – wrongful termination – Ms.

Walker fails to plead each of the required elements of such a claim under California law.  The Walker Claims should accordingly be disallowed and expunged.

## STATUS OF THE CASE AND JURISDICTION

5.      On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its affiliates, including the Times (collectively, the "Debtors"),[3] each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  (Docket Nos. 43, 2333.)

6.      On July 23, 2012, the Bankruptcy Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization (the "Plan") for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Docket No. 12074).[4]

7.      The Effective Date of the Plan occurred on December 31, 2012.

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007.

---

[3] As used herein, the term "Debtors" refers to the entities that filed the above-captioned chapter 11 cases and the term "Reorganized Debtors" refers to the entities that became successors to the Debtors upon the Debtors' emergence from their chapter 11 cases.

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

## I.    FACTUAL AND PROCEDURAL BACKGROUND TO THE SUPPLEMENTAL OBJECTION

9.    Except as otherwise noted herein, the facts relevant to the Walker Claims and this Supplemental Objection are not in dispute.[5]

### A.    Ms. Walker's Employment At The Times And Disability Leave

10.    Ms. Walker was previously employed by the Times as an Assistant Telemarketing Manager in the Times' circulation department.  (See Kearney Decl. ¶ 4.)  Ms. Walker last worked at the Times in July 1994, at which time she took a short-term disability leave of absence.  (Id.)  On or about May 4, 1995, while still on short-term disability leave from the Times, Ms. Walker became eligible for the Times' long-term disability ("LTD") leave program.  (Kearney Decl. ¶ 5.)  The Times filed a corresponding insurance claim for LTD benefits on Ms. Walker's behalf with its LTD insurance carrier at the time, AMEX Life Assurance Company, through which Ms. Walker received LTD salary continuation benefits from May 1995 to May 1997.  (Id.)

11.    In addition to LTD salary continuation benefits that Ms. Walker received through insurance, under the Times' discretionary policy in effect at the time, Ms. Walker and her family also received continued health care benefits from the Times (the "Continued Benefits").  (Kearney Decl. ¶ 6.)  Because Ms. Walker was on LTD leave and was not on the Times' payroll during this time, no deductions for health care contributions were taken by the Times and the Times did not otherwise require Ms. Walker to make contributions towards the

---

[5] The Debtors provided Ms. Walker with a copy of her employment file on May 17, 2011.  On May 20, 2011, the Debtors requested that Ms. Walker provide certain information, including Ms. Walker's LTD claim status and the date when Ms. Walker's LTD salary continuation benefits ceased.  To date, Ms. Walker has not provided this information.  The Reorganized Debtors reserve all rights to take discovery, present evidence, and make all arguments in opposition to the Walker Claims if this Supplemental Objection is not sustained as a matter of law.

cost of the Continued Benefits.[6] (Id.) Thus, the Times assumed the full cost of Ms. Walker's

Continued Benefits.[7] (Id.)

### B. Ms. Walker's Eligibility For LTD Leave Terminated In May 1997 And She Did Not Return To Work As Required

12.    Ms. Walker's eligibility for LTD leave and benefits—and the payments

from the Times' LTD insurance carrier—terminated in May 1997, i.e., after two years of LTD

leave. (Kearney Decl. ¶ 7.) It was the Times' policy that if employees failed to report for work

following the end of an authorized disability leave of absence, they would be terminated. (Id.)

Ms. Walker did not return to work at the Times in May 1997 or at any time thereafter.[8] (Id.)

The Times has no record indicating that Ms. Walker was under a doctor's care or continued to

suffer from any disability after May 1997. (Kearney Decl. ¶ 8.)

### C. Following A 2009 Audit, The Times Terminated The Continued Benefits, Treated Ms. Walker As Having Retired From The Times, And Enrolled Her In The Pre-65 Retiree Benefits Program

13.    In late 2009, in the ordinary course of their businesses, the Debtors

performed a comprehensive audit of the employees listed in their records as being on leave-of-

---

[6] It is the Reorganized Debtors' current policy that Continued Benefits are offered to employees on LTD leave at the same cost as those provided to active employees, i.e., they are required to make monthly contributions towards the cost of coverage while on leave.

[7] During the period of 2000-2010, the Times paid approximately $82,000 to cover Ms. Walker's Continued Benefits, which is greater than the face amount of the Walker Claims (asserted at $65,000). (Kearney Decl. ¶ 6 n.4.) The Times has determined that the value of the contributions that Ms. Walker ought to have made for her health care coverage under the Reorganized Debtors' current application (see n.6, supra) was approximately $31,000 for that same period. (Id.) The Times has not been able to determine the monthly employee contribution rates that were in effect for its health care coverage "family" plan for the period of 1997-2000. (Id.) Accordingly, the actual value of the health care costs paid for by the Times and the applicable contributions that Ms. Walker ought to have made are higher than the figures set forth herein. (Id.) In the event that the Walker Claims are not disallowed by this Court, the Times reserves the right to offset any allowed claim against the aggregate value of the contributions that were unpaid by Ms. Walker between 1997 and 2010, subject to proof.

[8] Ms. Walker has alleged in the Walker Responses and the Walker Complaint (each defined below) that she submitted an employment application on June 12, 2000 to another office location at the Times and was not re-hired. The Reorganized Debtors have no record of this application, allegedly submitted more than three years after Ms. Walker's LTD eligibility terminated, nor has Ms. Walker provided a copy thereof to the Reorganized Debtors. (Kearney Decl. ¶ 7 n.5.) As discussed in ¶ 52, infra, Ms. Walker later submitted her resume to the Times in March 2010, after Ms. Walker was deemed to have retired from the Times.

absence status. (Kearney Decl. ¶ 9.) As part of this review, the Times discovered that Ms.

Walker had ceased being eligible for LTD leave in May 1997 and had not returned to work, but

had nonetheless remained listed in the Times' system as an inactive employee receiving

Continued Benefits at no charge. (Id.)

14.    Based on further investigation, the Times found that it had not received

timely notice from its LTD insurance carrier that Ms. Walker's LTD benefits claim had

terminated.[9] (Kearney Decl. ¶ 10.) Typically, when a Times employee is placed on LTD leave,

the Times' LTD insurance carrier pays salary continuation benefits under the company's LTD

program until such time as the employee's eligibility for such benefits terminates, whether

because the employee has recovered and is able to return to work or because the employee has

taken the maximum two years of available LTD leave. (Id.) At that time, the LTD insurance

carrier would notify the Times that the LTD leave and benefits claim terminated, so that the

Times could update the employee's employment status in its system to reflect that the employee

had returned to active status or had been terminated for failure to return to work following leave.

(Id.) None of those procedures were followed in Ms. Walker's case. (Id.)

15.    Immediately after completing the audit and investigation, the Times sent a

letter to Ms. Walker, dated December 29, 2009, which provided in relevant part:

> You currently do not have an active long-term disability (LTD)
> claim and are not receiving any known LTD benefit. As a result,
> you are not eligible to continue receiving health & welfare benefits
> through Tribune. Pursuant to Tribune's policy, employment
> terminates after LTD has ended and the employee has not returned
> to work. Therefore you will be terminated from our system and
> your medical benefits will cease effective January 1, 2010.

---

[9] Upon the Reorganized Debtors' information and belief, the Times' LTD insurance carrier went through a series of
acquisitions and mergers beginning in 1995 that may have contributed to this failure of communications. (Kearney
Decl. ¶ 10 n.6.)

(<u>See</u> Letter from Marcello Sawyer to Carol Walker, Dec. 29, 2009, a copy of which is attached hereto as <u>Exhibit F</u>.)  Ms. Walker responded, through a putative attorney, that it was her position that she remained on leave with Continued Benefits at no cost as an "accommodation to her disability."  (<u>See</u> Letter from John A. Futoran to Marcello Sawyers [sic], Jan. 14, 2010, a copy of which is attached hereto as <u>Exhibit G</u>.)  Amy Foran, Tribune's senior labor and employment counsel, replied that it was the Times' position that Ms. Walker had been receiving benefits to which she was not otherwise entitled and to which she had not contributed and that "Ms. Walker continued to accept benefits without notifying the company that she was and is able to work."  (<u>See</u> Letter from Amy Foran to John A. Futoran, Feb. 4, 2010, a copy of which is attached hereto as <u>Exhibit H</u>.)  The Times informed Ms. Walker that it would provide the Continued Benefits until February 28, 2010.  (<u>Id.</u>)  The Times did not request that Ms. Walker reimburse the share of contributions that she otherwise would have been obligated to pay in connection with her health care benefits from 1997 to 2009.  (<u>Id.</u>)

        16.     Ms. Walker subsequently retained attorney Maury Mills, who continued corresponding with Ms. Foran regarding the termination of the Continued Benefits.  (<u>See</u> Letter from Maury Mills to Amy Foran, Mar. 30, 2010, a copy of which is attached hereto as <u>Exhibit I</u>.)[10]  In that letter, Ms. Walker alleged that "[b]ut for The Times keeping her as an employee with medical coverage, she long ago could have sought alternative medical insurance, which insurance is now prohibitively expensive."  (<u>See</u> Ex. I at 2.)  The letter further requested that the Times "take whatever steps are necessary to assure the family's medical coverage is maintained."  (<u>Id.</u>)

---

[10] This letter was also filed by Ms. Walker as pages 2-3 of the First Response (defined below), Docket No. 8325.

17.     Effective February 28, 2010, the Times elected, at its discretion, to treat Ms. Walker as having "retired" rather than having been "terminated," which made her eligible for the company's "Pre-65 Retiree Benefits Program." (See Kearney Decl. ¶ 11.)  The Times offered to enroll Ms. Walker in the Pre-65 Retiree Benefits Program to provide her with continued access to health care coverage at reduced cost compared to market rates, effective March 1, 2010.  (See id.; see also Letter from Maury Mills to Amy Foran, April 5, 2010, a copy of which is attached hereto as Exhibit J.)  In correspondence to the Times, Mr. Mills acknowledged that Ms. Walker had enrolled in the Pre-65 Retiree Benefits Program and that "the cost of the retiree medical benefits are less onerous than the COBRA plan she was offered and that was welcome news." (See Ex. J.)  Mr. Mills noted that "[Ms. Walker's] *primary concern is to be able to afford medical coverage for herself and her family, not necessarily going back to work*." (Id.) (emphasis added.)  Mr. Mills proposed that the Times consider making "a contribution to the Retiree Medical Plan to put this matter to rest." (Id.)  However, by enrolling Ms. Walker in the Pre-65 Retiree Benefits Program, the Times had indeed already committed to contributing a share of the costs of Ms. Walker's health care on an ongoing basis.  Specifically, in the Pre-65 Retiree Benefits Program, the Debtors (and now Reorganized Debtors) pay 50% of a retired employee's health care premiums and the retired employee pays the remaining 50%. (See Kearney Decl. ¶ 11.)

### D.     The Bar Date Order

18.     On March 26, 2009, the Court entered an order (Docket No. 813) (the "Bar Date Order") (i) establishing June 12, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim in these chapter 11 cases and (ii) approving the form and manner of notice of the Bar Date that was provided to the

Debtors' creditors and other parties in interest, including Ms. Walker.  (See Docket No. 1073,

Affidavit of Mailing, Ex. F at 292.)

19.    The Bar Date Order exempted current employees from filing claims based

on the payments of wages and other benefits authorized to be paid by the Court and contingent

claims for future wages and benefits arising in the ordinary course of business.  (See Bar Date

Order at 4-5.)  The Reorganized Debtors do not dispute for purposes of this Supplemental

Objection that this exemption to the general Bar Date applied to Ms. Walker, who at the time

remained listed in the Times' system as an employee (albeit with "inactive" status).  However,

the Bar Date Order further provided that "if the Debtors provide written notice stating that the

Debtors do not intend to exercise their authority to pay any [otherwise-authorized employee

wage or benefits claim], the affected current employee shall have the later of (i) the Bar Date and

(ii) thirty (30) days from the date of service of such written notice to file a Proof of Claim."  (Id.)

(emphasis added).  As discussed supra at ¶ 15, the Times first notified Ms. Walker that it was

terminating the Continued Benefits in writing on December 29, 2009.

**E.    The Walker Claims, Initial Objection, And Responsive Pleadings**

20.    Ms. Walker filed Claim No. 6601 pro se on July 19, 2010 more than seven

months after she received written notice that the Continued Benefits were being terminated by

the Times.  Claim No. 6601 asserts a claim against "Tribune Company, et. al" in the amount of

$65,000 for alleged "wrongful termination."  (See Ex. A.)  The claim attached no supporting

documentation.  (Id.)

21.    On February 18, 2011, the Debtors filed the Initial Objection, which

sought disallowance of Claim No. 6601 on the following grounds:

> Claimant and her family were receiving employee medical benefits
> from Debtor to which they were not entitled.  Such benefits were
> discontinued, and Claimant and spouse are currently receiving

retiree medical benefits from Debtor.  No liability owed to
claimant per Debtors' books and records.

(See Initial Objection, Ex. A at 2.)

22.     On March 9, 2011, Ms. Walker filed a response to the Initial Objection
(Docket No. 8325) (the "First Response"), to which she appended 72 pages of materials,
including the correspondence attached hereto as Exhibits F-J.[11]  The Debtors and Ms. Walker
agreed to adjourn the hearing on the Initial Objection as it related to Claim No. 6601 so that the
parties could exchange further information.[12]  On April 11, 2011, Ms. Walker filed an additional
response to the Initial Objection, pro se (Docket No. 8623) (the "Second Response" and, together
with the First Response, the "Walker Responses").

23.     On June 1, 2011, Ms. Walker submitted a second proof of claim, Claim
No. 6780, purporting to amend Claim No. 6601 and to assert the claim against Los Angeles
Times Newspapers, Inc.[13]  (See Ex. B.)  On June 16, 2011, Ms. Walker submitted another proof
of claim, Claim No. 6786, which purported to further amend Claim No. 6601, although such
claim is substantially identical to Claim No. 6601.  (See Ex. C.)  Neither of these claims attached
any additional supporting documentation.  (See Ex. B, Ex. C.)

---

[11] The Reorganized Debtors have attached such correspondence as exhibits to this Supplemental Objection for the
convenience of the parties and the Court.  To the extent that the Reorganized Debtors rely on certain of the
documents submitted by Ms. Walker in connection with the First Response, the Debtors do not contest the
authenticity of such materials.  However, the Reorganized Debtors reserve their rights to contest certain others of the
documents submitted by Ms. Walker, on any applicable evidentiary grounds, should the Court schedule an
evidentiary hearing on the Walker Claims.  Furthermore, as noted supra in footnote 5, the Debtors have sought
certain information from Ms. Walker in connection with the Walker Claims, to which Ms. Walker has not
responded.

[12] On March 30, 2011, the Court entered an order sustaining the Initial Objection, except as to the claim of Ms.
Walker and the claims of certain other creditors enumerated therein.  (Docket No. 8523.)

[13] Los Angeles Times Communications LLC, and not Los Angeles Times Newspapers, Inc., is the Debtor entity that
operates the Los Angeles Times newspaper.  To the extent Ms. Walker has a valid claim that arose from her
employment at the Times—which the Reorganized Debtors dispute—the Reorganized Debtors believe such claim
could be asserted only against Los Angeles Times Communications LLC.

24.    On January 4, 2012, Mr. Mills, as counsel for Ms. Walker, advised counsel for the Debtors that, due to a perceived impasse in the parties' discussions regarding a consensual resolution of the Walker Claims, Ms. Walker had filed a pro se complaint ("Walker Complaint") in the Superior Court of California, on October 5, 2011, initiating suit against "Los Angeles Times," Tribune, and twenty (20) Doe defendants.[14]  By letter, Ms. Walker sent a copy of the Walker Complaint to the Bankruptcy Court, which letter was treated as a proof of claim and assigned Claim No. 7092 on January 9, 2012.  (See Ex. D.)  On January 24, 2012, at the request of the Debtors, Ms. Walker dismissed the Walker Complaint, without prejudice.

25.    Following the Effective Date, counsel for the Reorganized Debtors communicated to counsel for Ms. Walker on several occasions with a proposed stipulation to permit Ms. Walker to re-file an action concerning the Walker Claims in California state court and, if a judgment or settlement favorable to Ms. Walker was obtained, then the Walker Claims would be liquidated and allowed in such amount, subject in all respects to the terms of the Plan. To date, Ms. Walker has not accepted the Reorganized Debtors' proposal.  The parties' efforts to otherwise reach a consensual resolution of the Walker Claims have not been successful.  This Supplemental Objection follows.

**RELIEF REQUESTED**

26.    By this Supplemental Objection, the Reorganized Debtors seek entry of an order, substantially in the form attached hereto, (i) disallowing and expunging the Walker Claims pursuant to sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, and (ii) authorizing Epiq Bankruptcy Solutions LLC (the "Claims Agent") to expunge the Walker Claims from the claims register maintained by the Claims Agent so that the claims

---

[14] Although the Walker Complaint is styled as being filed pro se, each page of the document except the first page bears attorney Maury Mills's name in the bottom left corner.  Accordingly, the Walker Complaint should be treated by the Court as would any other pleading prepared by counsel.

register reflects more accurately the claims legitimately asserted and outstanding against the

Debtors.

**ARGUMENT**

**I.    LEGAL BASIS FOR RELIEF REQUESTED**

27.    A "claim" in bankruptcy is a "right to payment" or a "right to an equitable

remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C.

§ 101(5).  The Supreme Court has held that a "'right to payment' [means] nothing more nor less

than an enforceable obligation."  See Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)

(internal citation omitted); see also In re Rodriguez, 629 F.3d 136, 139 (3d Cir. 2010) (citing

Johnson).

28.    Section 502(b) of the Bankruptcy Code provides in pertinent part:

> [I]f [an] objection to a claim is made, the court, after notice and a
> hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the
> petition, and shall allow such claim in such amount, except to the
> extent that—
>
> > (1)    such claim is unenforceable against the debtor and
> > property of the debtor, under any agreement or applicable
> > law for a reason other than because such claim is
> > contingent or unmatured
> >
> > . . .
> >
> > (9)    proof of such claim is not timely filed . . . .

11 U.S.C. § 502(b).  Section 502(b)(1) recognizes the settled principle that "[c]reditors'

entitlements in bankruptcy arise in the first instance from the underlying substantive law creating

the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy

Code."  Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443,450-51 (2007)

(citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)).  A claim against the bankruptcy

estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." In re Combustion Eng'g, Inc., 391 F.3d 190, 245 (3d Cir. 2004).  In proceedings to determine whether a claim is enforceable against the estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses" pursuant to section 558 of the Bankruptcy Code.  See 11 U.S.C. § 558.

29.    "When a claim objection is filed in a bankruptcy case, the burden of proof as to the validity of the claim shifts between the parties." In re Tribune Co., No. 08-13141, 2013 Bankr. LEXIS 1798, at *6-7 (Bankr. D. Del. May 2, 2013).  As to the initial burden, the Third Circuit has explained that

> the claimant must allege facts sufficient to support the claim.  If the averments in his filed claim meet this standard of sufficiency, it is "prima facie" valid.  In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward.

In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); see also In re New Century TRS Holdings, Inc., No. 07-104516, Slip Op. (Bankr. D. Del. Apr. 11, 2011) (Carey, J.).  If a claimant satisfies its initial burden, "[t]he burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim." Id.  The burden of persuasion is always on the claimant.  Id. at 174.  Courts should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions." R2 Invs. LDC v. Phillips, 401 F.3d 638, 642 (5th Cir. 2005).

30.    The Reorganized Debtors have reviewed the Walker Claims and the Walker Responses and, as best as they can discern, Ms. Walker asserts that she is entitled to receive health care benefits from the Times indefinitely at no cost, or the value thereof.  In addition to the claim for no-cost health care benefits, the Walker Claims appear to assert that the

Times wrongfully terminated Ms. Walker's employment at the Times when it treated her as having retired effective February 28, 2010.  See, e.g., Second Response ("1: The Tribune Company is not currently paying my retiree benefits, after paying them since early 1992. (Detrimental Reliance) 2: After applying for my position back after being on non contested Leave of Absence, I was not reinstated and placed on retirement. (Wrongful Termination)").

31.    For the reasons set forth below, the Reorganized Debtors request that the Court disallow and expunge the Walker Claims.  Even being mindful of the pro se nature of the Walker Claims[15] and making all reasonable inferences in favor of Ms. Walker, Ms. Walker is not entitled to the damages she seeks and has failed to state sufficient legal and factual grounds to satisfy her burden on any cognizable theory of recovery.

## II.    THE WALKER CLAIMS SHOULD BE DISALLOWED AS UNTIMELY

### A.    The Walker Claims Were Not Timely Filed As Required By The Bar Date Order

32.    The Bar Date Order makes clear that, even though Ms. Walker was a "current employee" as of the date of the Bar Date Order and was exempted from filing a proof of claim at that time, "if the Debtors provide written notice stating that the Debtors do not intend to exercise their authority to pay any [otherwise-authorized employee wage or benefits claim]," Ms. Walker would "have the later of (i) the Bar Date and (ii) thirty (30) days from the date of service of such written notice to file a Proof of Claim."  See Bar Date Order at 4-5.  As noted above, Claim No. 6601 was filed on July 19, 2010, more than seven months after Ms. Walker was notified by letter dated December 29, 2009 that the Times was discontinuing her benefits.  (See

---

[15] The Reorganized Debtors understand that Ms. Walker is not currently being represented by counsel in connection with the adjudication of the Walker Claims in this Court; however, as discussed supra, Ms. Walker has in the past been represented by counsel in connection with this matter.

Ex. F.)[16]  For this reason, the Walker Claims should be disallowed as untimely.  11 U.S.C.

§ 502(b)(9).

**B.     Claim No. 7092 Raises Entirely New Claims And Does Not Relate Back To The Earlier-Filed Walker Claims**

33.     Even assuming that the Court treats Ms. Walker's initial proof of claim as

timely filed notwithstanding Ms. Walker's failure to comply with the Bar Date Order, it should

strike the entirety of Claim No. 7092 (containing the Walker Complaint).  The Walker Complaint

was filed in the California State Court in violation of the automatic stay and is void <u>ab</u> <u>initio</u>.  11

U.S.C. § 362(a).  It was then submitted to this Court on January 9, 2012, nearly 17 months after

Ms. Walker's original proof of claim was filed and several months after both the Walker

Responses and two prior amended claims were filed by Ms. Walker.  Although amendments to

proofs of claim are generally accepted pursuant to the same liberal standards governing

amendments to complaints, Claim No. 7092 impermissibly attempts to introduce new claims and

theories of alleged employment discrimination on the part of the Times that were not previously

articulated in any of Ms. Walker's prior claims or pleadings.

34.     Specifically, the Walker Complaint includes a new claim asserted under

the Fair Employment and Housing Act, Cal. Gov. Code § 12900 <u>et</u> <u>seq.</u> ("<u>FEHA</u>"), alleging that

the Times terminated Ms. Walker's employment in contravention of public policy based on an

unspecified alleged mental disability.  <u>See</u> Walker Complaint at ¶¶ 10,[17] 19.  Courts have refused

to permit such untimely amendments to claims which are in fact "new" claims directed at

circumventing the Bar Date.  <u>See, e.g.</u>, <u>In re Edison Bros. Stores, Inc.</u>, 2002 WL 999260 (Bankr.

---

[16] Even if this Court were to construe February 28, 2010 (the effective date of Ms. Walker's retirement and enrollment in the Pre-65 Retiree Benefits Program) as the operative date from which to calculate the deadline for filing claims, the Walker Claims were still not timely filed, as the first of the Walker Claims was not filed until July 2010.

[17] Cal. Gov. Code Section 12941, cited therein, is related to age discrimination and not disability.  Ms. Walker has presented no factual basis for an assertion of age discrimination on the part of the Times.

D. Del. May 15, 2002) ("Amendments are generally disallowed where a claimant attempts to change the nature of the proof of claim."). Here, the Court should similarly strike Claim No. 7092, which represents an impermissible attempt to assert a new claim for employment discrimination.

35.     Although the Reorganized Debtors submit that all four of the Walker Claims should be disallowed as untimely, particularly Claim No. 7092, even if the Court were to consider such claims on the merits, for all of the reasons stated below, the Walker Claims fail to state valid claims for relief.

## III.    MS. WALKER IS NOT ENTITLED TO RECEIVE FREE HEALTH CARE BENEFITS OR THE VALUE THEREOF

36.     As this Court held in <u>New Century</u>, a claim is invalid if it fails to state a legally cognizable basis for liability. <u>See New Century</u>, No. 07-104516, Slip Op. at 11 (rejecting fraud claim based on federal statute because "[n]o private right of action is provided under this statute,"); <u>see also id.</u> at 12 (rejecting alternative theories of fraud and bad faith because claimant "has not provided any reasonable legal theory to support his assertion"). Here, in addition to being untimely, the Walker Claims fail to state facts or a cognizable legal theory that supports relief in the form of providing Ms. Walker with cost-free health care benefits for life, or the value thereof.

### A.    Nothing In The Walker Claims Or The Walker Responses Evidences A Legal Duty On The Part Of The Times To Provide Free Health Care Benefits

37.     In the Third Circuit, a claim must be supported by sufficient factual evidence to support such a claim. <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 173 (3d Cir. 1992); <u>New Century</u>, No. 07-104516, Slip Op. (Bankr. D. Del. Apr. 11, 2011). Like the claimant in <u>New Century</u>, Ms. Walker has filed a large number of documents purportedly in support of her claim, including a 72-page exhibit to the First Response that attaches an array of

communications, legal records, medical records, and other documents.  (<u>See</u> First Response,

Exs.)  As this Court explained in <u>New Century</u>, voluminous submissions of notices, letters, and

documents drafted by a claimant with legalistic language are insufficient to establish the validity

of a claim unless such documents <u>in substance</u> support the claim.  <u>See</u> <u>New Century</u>, No. 07-

104516, Slip Op. at 8 (emphasis added).

>       *a)      Ms. Walker Is No Longer Eligible For Continued Benefits*
>               *Because Her Eligibility For LTD Leave Terminated in 1997*

38.      Rather than support her claim, the materials provided by Ms. Walker make

clear that the Continued Benefits are provided only to eligible employees, <u>i.e.</u>, employees

actively participating in the LTD leave program and receiving LTD benefits.  <u>See</u> First

Response, Exs. at 45, letter from Kathy M. Rodriguez to Carol Walker, Oct. 20, 1994

("Supplemental Benefits are payable to employees who are medically unable to work as a result

of injury or illness, are receiving proper care, and are available for examinations by the Times'

medical department or designated consultants.").  Ms. Walker was no longer an eligible

employee under the terms of the LTD leave program as of May 1997.  Furthermore, nothing in

the materials submitted by Ms. Walker requires the Times to provide health care benefits at no

cost to its employees, even if they are on LTD leave.  In fact, during the time that Ms. Walker

was receiving Continued Benefits, the Times changed its policy to require that employees on

LTD leave continue to make contributions towards their health care benefits.  (Kearney Decl. ¶ 6

n.3.)  It was only due to the failure of the Times' LTD insurance carrier to notify the Times that

Ms. Walker's LTD leave had terminated, combined with the ongoing administrative oversight

relating to Ms. Walker's employment and benefit status, that the Times did not enforce that

policy with respect to the benefits received by Ms. Walker for more than twelve years, which

error inured to Ms. Walker's benefit.  Nothing in the materials submitted by Ms. Walker could

plausibly require the Times to continue this error in perpetuity.  Ms. Walker's current enrollment

in the Pre-65 Retiree Benefits Program is (and should be) subject to all applicable terms and

conditions of that Program, including that Ms. Walker must contribute a portion of the premiums

for health care coverage.

> ### b)    Health Care Benefits Were Provided To Ms. Walker Solely At The Times' Discretion And Not Pursuant To An Enforceable Obligation

39.    The Times is not obligated to offer a lifetime of no-cost health care

benefits to Ms. Walker.  Prior to the Petition Date, and continuing through February 2010, the

Times never had an enforceable obligation to provide Ms. Walker with health care benefits under

California law.[18]  The Times' benefit plans and programs were, at all times, provided to eligible

employees at the Times' discretion and remained subject to modification by the Times.  As a

matter of contract law, "[t]he mere fact that one person promised something to another creates no

legal duty and makes no legal remedy available in case of non-performance."  2-5 Corbin on

Contracts § 5.2.  A bedrock principle of contract law is that to be enforceable, a contract must be

supported by consideration.  Further, "consideration is designed primarily to protect the promisor

from being compelled to perform donative promises."  Id.  Ms. Walker's past benefits were not

provided pursuant to any contract nor was any consideration (other than, arguably, past

consideration) provided by Ms. Walker for such benefits.

## B.    Nothing In The Walker Claims Or The Walker Responses Support A Claim Based On Detrimental Reliance Or Any Other Equitable Theory

40.    Ms. Walker states that she is entitled to relief based on a theory of

"detrimental reliance," i.e., that she relied on the Times continuing to provide her with cost-free

health insurance since 1994 and therefore did not seek alternative coverage in the marketplace.

---

[18] The Reorganized Debtors have assumed, solely for purposes of this Supplemental Objection, that the laws of California apply, based on Ms. Walker's prepetition employment with the Times in that State.

Ms. Walker cites no law in support of this theory, nor does she articulate how these circumstances caused her any "detriment" in monetary terms, particularly once the Times enrolled her in the Pre-65 Retiree Benefits Program following communications with her counsel. The Reorganized Debtors located no authority to support that detrimental reliance, standing alone, is a valid cause of action in the state of California, and Ms. Walker has identified none. See, e.g., Smith v. City and County of San Francisco, 225 Cal. App. 3d 38, 48 (Cal. App. 1st Dist. 1990) (detrimental reliance is only one element of promissory estoppel). However, even if the Walker Claims are construed generously to attempt to state a claim for promissory estoppel, Ms. Walker has failed to allege facts sufficient to establish such a claim.

41.     In California the elements of promissory estoppel are as follows: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." Advanced Choices, Inc. v. State Dept. of Health Svcs., 182 Cal. App. 4th 1661, 1672 (Cal. App. 4th Dist. 2010); see also 30 Cal. Jur. Estoppel and Waiver § 24 ("A mere conclusory allegation of reasonable and justifiable reliance on the other party's promise does not sufficiently allege detrimental reliance by the promissee.").

42.     None of the elements of promissory estoppel are met here other than Ms. Walker's alleged reliance, nor does Ms. Walker allege that they are. The Times made no promises to Ms. Walker that she would receive cost-free benefits indefinitely, let alone a "clear and unambiguous" one. Ms. Walker's purported reliance on a non-existent promise is by definition neither reasonable nor foreseeable. That conclusion is reinforced by the fact that the health care benefits provided by the Times to Ms. Walker were always expressly subject to modification at the Times' discretion. Lastly, Ms. Walker has suffered no legitimate detriment

from the Times' conduct in this matter; to the contrary, she benefited from an administrative

error that went unnoticed for more than twelve years.  When the Times corrected that error, Ms.

Walker started having to bear the same portion of her health care costs that all similarly-situated

Times employees and retirees do.  No legally-cognizable injury stems from Ms. Walker being

put into the same position as her peers, and the Court should reject Ms. Walker's assertions of

promissory estoppel here.

## IV.    THE TIMES IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON MS. WALKER'S WRONGFUL TERMINATION CLAIMS

43.    Claim No. 6601 states as its basis "wrongful termination," but includes no

further information to support that claim.  Although the First Response filed with this Court

appears to have been cut off after the first page, nothing in the substance of the response or in the

March 30, 2010 letter from Mr. Mills to Ms. Foran attached thereto raises any claim for wrongful

termination; the sole focus is on the termination of free health care benefits.  (See First Response

at 1-3.)  In the Second Response, Ms. Walker alleges that "[a]fter applying for my position back

after being on non contested Leave of Absence, I was not reinstated and placed on Retirement."

(See Second Response at 1.)

44.    The Reorganized Debtors assume that Ms. Walker is referring to the

submission of her resume to the Times on March 10, 2010, more than three months after she

learned that the Debtors had terminated her Continued Benefits and her status as an inactive

employee.  (See First Response at 3; see also Walker Complaint ¶ 20).  Ms. Walker does not

allege that there was a vacant position at the Times for which she was qualified.  Moreover,

under applicable California law, the Times was under no legal or contractual obligation to

reinstate Ms. Walker's employment at that time.

**A.    The Times Did Not Terminate Ms. Walker's Employment In Violation Of Public Policy**

45.    California is an at-will employment state.  Absent an express or implied agreement otherwise, an employee may be terminated for any reason, so long as that reason is not discriminatory.  <u>See</u> Cal. Lab. Code § 2922 (2011) ("An employment, having no specified term, may be terminated at the will of either party on notice to the other"); <u>see also</u> <u>Arteaga v. Brink's, Inc.</u>, 163 Cal. App. 4th 327, 344 (Cal. App. 2d Dist. 2008) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").  California law permits a wrongful termination claim only if a plaintiff proves that (1) there was an employment relationship between the plaintiff and the defendant; (2) the defendant terminated the plaintiff's employment; and (3) the termination was in violation of some policy of public importance.  <u>See</u> <u>Tameny v. Atlantic Richfield Co.</u>, 27 Cal.3d 167, 177 (1980).  To establish that the termination violated a policy of public importance, the plaintiff must prove that there was a causal nexus between the termination and the employee's exercise of a protected right of public importance.  <u>See</u> <u>Turner v. Anheuser-Busch, Inc.</u>, 7 Cal. 4th 1238, 1253 (1994) (plaintiff's wrongful discharge in violation of public policy claim failed because he did not establish the required nexus between his alleged protected activity and his termination).

46.    Here, Ms. Walker does not allege, and could not in any event prove, that there was a nexus between the Times' decision to treat her as having retired and any protected activity or trait.  Ms. Walker's claim and documents submitted in support of that claim demonstrate that, as a matter of law, the Times treated Ms. Walker as having retired based on a legitimate, lawful reason: Ms. Walker had not performed any work for the Times since 1994 and had not returned to work for the intervening years between when her LTD leave eligibility ended

in May 1997 and when the Times completed its internal audit and investigation in December

2009.  When Ms. Walker failed to return to work upon the expiration of her LTD leave and

failed to inform the Times that she was capable of working, the Times was entitled to terminate

her employment.  Ms. Walker's claims that she was wrongfully terminated thus have no basis in

fact or law, and are inconsistent with her conduct, where she sought reinstatement only after the

Times informed her that it intended to terminate her cost-free health care benefits.

     **B.**      **The Times Did Not Terminate Ms. Walker's Employment In Violation Of The FEHA**

       47.     Claim No. 7092 and the Walker Complaint introduce, for the first time, an

allegation that Ms. Walker was terminated because of a disability in contravention of the FEHA.

The Walker Complaint alleges, without any further factual support, that the Times discriminated

against Ms. Walker by "failing to accommodate [her] disability," that the Times "never

contacted her to discuss what accommodation if any she would need to return to work," and thus

failed to engage in an "interactive process with [her] as required by law."  (See Ex. D, Walker

Compl. at ¶¶ 10-11.)  As discussed supra, the Reorganized Debtors believe that the Walker

Complaint should be stricken as an untimely and improper attempt to amend the Walker Claims

to add new claims.  See ¶¶ 33-34.  However, even if the Walker Complaint is considered by this

Court, Ms. Walker has failed to establish a prima facie case of wrongful termination based on a

violation of the FEHA and such claim should be disallowed and expunged.

       48.     California has adopted the burden-shifting framework established for

discrimination claims by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411

U.S. 792, 802 (1973).  See Sandell v. Taylor-Listug, Inc., 188 Cal. App. 4th 297, 307 (2010).  In

order to state a claim for employment discrimination because of a disability, a plaintiff bears the

burden of pleading a prima facie case.  Id.  Specifically, to state a discrimination claim under

FEHA, the plaintiff must allege facts plausible to demonstrate the plaintiff "(1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." Id. at 310. "If . . . the plaintiff establishes a prima facie case, a presumption of discrimination arises . . . [and] the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason." Id. at 307-08 (quoting Guz v. Bechtel Nat'l, Inc., 24 Cal. App. 4th 317, 354 (2000)) (internal citations omitted.). "If the employer sustains this burden, the presumption of discrimination disappears.  The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive.  In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias." Id. at 308 (citing Guz, 24 Cal. App. 4th at 356). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors.  These include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . . ." Id. at 309 (citing Guz, 24 Cal. App. 4th at 362).

49.     Here, because Ms. Walker has failed to allege the necessary facts for that claim, including that Ms. Walker was disabled at the time any purported adverse employment action occurred, that she could perform the essential duties of her job, or that she was subjected to an adverse employment action because of any purported disability, Ms. Walker has neither stated a prima facie claim for wrongful termination in contravention of FEHA nor any other

public policy.  In sum, the Walker Complaint's conclusory allegations that the Times

discriminated against Ms. Walker based on a disability are insufficient and must be rejected for

failing to state a claim for which relief can be granted by this Court.

> a)    *Ms. Walker Has Not Adequately Plead That She Was Disabled At Any Time Relevant To The Claims*

50.    The Walker Complaint states that Ms. Walker "became depressed" in

1994, which the Times concedes for purposes of this Supplemental Objection.  However, nothing

in the Walker Complaint or any of Ms. Walker's other submissions alleges – much less

demonstrates – that Ms. Walker suffered from any cognizable disability during late 2009 and

early 2010 (i.e., the time periods relevant to the Walker Claims), that she informed the Times

that she was disabled at those times, or that the Times perceived her to be disabled at those times.

As noted above, the Times has no record indicating that Ms. Walker was under a doctor's care or

continued to suffer from any disability whatsoever after May 1997, when her eligibility for LTD

leave terminated.

51.    The requirement that a plaintiff plead the existence of a disability or

perceived disability is particularly important in discrimination suits because it serves to

"eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member

of the protected class . . . ."  Sandell, 188 Cal. App. 4th at 307.  Here, the generalized and

conclusory allegations regarding Ms. Walker's purported mental disability – which are supported

only by statements referring to her 1994-1997 disability – are insufficient to state a prima facie

claim.  See Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d. 590, 608, 613 (1989)

(demurrer properly sustained in FEHA action where allegations of unlawful conduct were made

"in a most conclusory manner."); Carter v. Prime Healthcare Paradise Valley LLC, 198 Cal.

App. 4th 396, 410 (2011) ("[W]here, as here, statutory remedies are invoked, the facts must be

pleaded with particularity.") (internal quotations omitted); see also Walker Complaint (alleging, at ¶ 10, that Ms. Walker was terminated "at least in part because of her mental disability," but describing, at ¶ 11, alleged stress and depression that occurred in 1994 through 1997, not at any time relevant to the claims).

>    *b)    Ms Walker Has Not Adequately Plead That There Was An Available Job Position Or That She Could Perform The Essential Duties Of A Job With Or Without Reasonable Accommodations*

52.    Notwithstanding Ms. Walker's admission that "her primary concern is to be able to afford medical coverage for herself and her family, not necessarily going back to work" (see Ex. J), Ms. Walker alleges that she applied for a position with the Times in March 2010 "and was not reinstated."  (See Second Response at 1.)  Ms. Walker does not allege in the Walker Complaint that there was a position available at the Times for which she was qualified (particularly after not having worked since 1994), or that she could perform the essential duties of a job at the Times with or without any reasonable accommodation.  See, e.g., Sandell, 188 Cal. App. 4th at 310; Green v. State, 42 Cal. App. 4th 254, 258 (2007) (noting that "FEHA requires employees to prove that they are qualified individuals under the statute just as the federal ADA requires").  Accordingly, Ms. Walker has not alleged facts sufficient to raise a prima facie case of employment discrimination under the FEHA.

>    *c)    Ms. Walker Has Not Adequately Plead The She Suffered An Adverse Employment Action Because Of Her Purported Disability*

53.    Likewise as to prong three of a FEHA discrimination claim, Ms. Walker cursorily alleges that she was terminated "because of" her purported mental disability.  Under California law the plaintiff must plead with specificity facts that give rise to a reasonable inference of discrimination.  See Fisher, 214 Cal. App. 3d. 590 at 613; Carter, 198 Cal. App. 4th at 410.

54.    As an initial matter, the Times' decision to treat Ms. Walker as having
retired did not alter any terms or conditions of her employment, and therefore cannot be
considered an "adverse employment action." From the time that she first went on disability
leave in July 1994, and continuing thereafter through her retirement in early 2010, Ms. Walker
was an "inactive employee." She did not work any hours for the Times and did not receive any
wages – a situation that is identical to her current "retired" status. The Times' termination of
Ms. Walker's cost-free health care benefits was not in any way related to her employment status;
those cost-free benefits would have ended regardless of whether Ms. Walker retired, was
terminated outright, or remained an "inactive" employee. All active, inactive, and retired
employees of the Times are required to make monthly contributions towards the cost of health
care coverage, under the Times' current policies. This is precisely the position in which Ms.
Walker is today: she obtained health care coverage under the Pre-65 Retiree Benefits Plan and
bears the same portion of the cost of that coverage as other retirees covered by that plan.

55.    Furthermore, even if Ms. Walker's retirement from the Times was an
"adverse employment action," as described above in ¶ 50, supra, Ms. Walker does not even
allege that she was disabled at the time of her retirement; the scant allegations refer only to the
alleged stress and depression that she suffered in 1994 through 1997, more than twelve years
prior. Nor does Ms. Walker allege that the Times knew or perceived of any disability that she
may have had at the time of her retirement. There is also no factual allegation connecting Ms.
Walker's unspecified alleged mental disability to the Times' decision to modify her employment
status, on which element Ms. Walker bears the burden of pleading and proof. In summary, there
is nothing in Ms. Walker's allegations from which the Court could plausibly infer that the Times
was aware of any alleged disability Ms. Walker may have had in late 2009 and early 2010 or that

any such alleged disability played any role whatsoever in its decision to end Ms. Walker's employment with the company. Even if the Court were to consider the employment discrimination claim and conclude that there was an adverse employment action here, the undisputed facts demonstrate that the Times had a legitimate business reason for modifying Ms. Walker's employment status – that Ms. Walker had been an inactive employee *since 1994* and had not returned to work following the end of her LTD leave as required.

56.     Finally, Ms. Walker cannot hinge her FEHA discrimination claim on the Times' alleged failure to hire her in another position after she was retired from the Times. Ms. Walker did not raise her desire for another position with the Times until after her retirement was effective and she was no longer an employee of the Times. To the extent Ms. Walker is claiming a failure to hire or re-hire claim against the Times under the FEHA, Ms. Walker has made no allegation that the Times' refusal to hire/re-hire her was motivated by any alleged disability or perceived disability.

## NOTICE

57.     Notice of this Supplemental Objection has been provided to: (i) the Office of the United States Trustee; (ii) Carol Walker; (iii) last-known counsel to Carol Walker; and (iv) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Reorganized Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

58.     Other than the Initial Objection, no previous application for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Reorganized Debtors respectfully request that the Court enter an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, (i) disallowing in full and expunging the Walker Claims; (ii) directing the Claims Agent to expunge the Walker Claims from the Claims Register; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       July 28, 2014

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR REORGANIZED DEBTORS