## EXHIBIT E

**Kearney Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |

## DECLARATION OF KATHLEEN KEARNEY IN SUPPORT OF REORGANIZED DEBTORS' SUPPLEMENTAL OBJECTION TO CLAIMS OF CAROL WALKER

I, Kathleen Kearney, declare as follows:

1.     I am Director of Benefits for Tribune Publishing Company, LLC, one of the reorganized debtors in the above-captioned chapter 11 cases (collectively, the "Reorganized Debtors"). In this position, I am responsible for the implementation, management, and oversight of the employment-related policies and programs of Tribune's publishing entities.

2.     I have read the Reorganized Debtors' Supplemental Objection to the Proofs of Claim Filed by Carol Walker (the "Supplemental Objection")[2] and am directly, or by

---

[1]  The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2]  All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Supplemental Objection.

and through the Reorganized Debtors' personnel and advisors, familiar with the information contained therein. I have also read the Walker Claims and am familiar with the materials appended thereto. The Reorganized Debtors believe, and I agree, that the Walker Claims are not properly asserted against the Reorganized Debtors for the reasons set forth in the Supplemental Objection. I am authorized to submit this declaration (the "<u>Declaration</u>") in support of the Supplemental Objection.

3.      All matters set forth in this Declaration are based on: (a) my personal knowledge, (b) my review of relevant documents, (c) my view, based on my experience and knowledge of the Reorganized Debtors' operations and personnel, (d) information supplied to me by others at the Reorganized Debtors' request, or (e) as to matters involving United States bankruptcy law or rules or other applicable laws, my reliance on the advice of counsel or other advisors to the Reorganized Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

**A.      Ms. Walker's Employment at the Los Angeles Times and Disability Leave**

4.      Carol Walker was previously employed by Los Angeles Times Communications LLC (the "<u>Times</u>"), the publisher of the <u>Los Angeles Times</u> newspaper, as an Assistant Telemarketing Manager in the Times' circulation department. Ms. Walker last worked at the Times in July 1994, at which time she took a short-term disability leave of absence.

5.      On or about May 4, 1995, while still on short-term disability leave from the Times, Ms. Walker became eligible for the Times' long-term disability ("<u>LTD</u>") leave program. The Times filed a corresponding insurance claim for LTD benefits on Ms. Walker's behalf with its LTD insurance carrier at the time, AMEX Life Assurance Company, through which Ms. Walker received LTD salary continuation benefits from May 1995 to May 1997.

2

6.      In addition to LTD salary continuation benefits that Ms. Walker received through insurance, under the Times' discretionary policy in effect at the time, Ms. Walker and her family also received continued health care benefits from the Times (the "Continued Benefits"). Because Ms. Walker was on LTD leave and was not on the Times' payroll during this time, no deductions for health care contributions were taken by the Times and the Times did not otherwise require Ms. Walker to make contributions towards the cost of the Continued Benefits.[3] Thus, the Times assumed the full cost of Ms. Walker's Continued Benefits.[4]

**B.      Ms. Walker's Eligibility For LTD Leave Terminated in May 1997 and She Did Not Return to Work As Required**

7.      Ms. Walker's eligibility for LTD leave and benefits—and the payments from the Times' LTD insurance carrier—terminated in May 1997, i.e., after two years of LTD leave. It was the Times' policy that if employees failed to report for work following the end of an authorized disability leave of absence, they would be terminated. Ms. Walker did not return to work at the Times in May 1997 or at any time thereafter.[5]

8.      The Times has no record indicating that Ms. Walker was under a doctor's care or continued to suffer from any disability after May 1997.

---

[3] It is the Reorganized Debtors' current policy that Continued Benefits are offered to employees on LTD leave at the same cost as those provided to active employees, i.e., they are required to make monthly contributions towards the cost of coverage while on leave.

[4] During the period of 2000-2010, the Times paid approximately $82,000 to cover Ms. Walker's Continued Benefits, which is greater than the face amount of the Walker Claims (asserted at $65,000). The Times has determined that the value of the contributions that Ms. Walker ought to have made for her health care coverage under the Reorganized Debtors' current policy (see n.3, supra) was approximately $31,000 for that same period. The Times has not been able to determine the monthly employee contribution rates that were in effect for its health care coverage "family" plan for the period of 1997-2000. Accordingly, the actual value of the health care costs paid for by the Times and the applicable contributions that Ms. Walker ought to have made are higher than the figures set forth herein.

[5] Ms. Walker has alleged in the Walker Responses and the Walker Complaint (each defined below) that she submitted an employment application on June 12, 2000 to another office location at the Times and was not re-hired. The Reorganized Debtors no record of this application, allegedly submitted more than three years after Ms. Walker's LTD eligibility terminated, nor has Ms. Walker provided a copy thereof to the Reorganized Debtors.

46429/0001-10838802V1

C.   **Following a 2009 Audit, the Times Terminated the Continued Benefits, Treated Ms. Walker as Having Retired From the Times, and Enrolled Her in the Pre-65 Retiree Benefits Program**

9.    In late 2009, in the ordinary course of their businesses, the Debtors performed a comprehensive audit of the employees listed in their records as being on leave-of-absence status.  As part of this review, the Times discovered that Ms. Walker had ceased being eligible for LTD leave in May 1997 and had not returned to work, but had nonetheless remained listed in the Times' system as an inactive employee receiving Continued Benefits at no charge.

10.    Based on further investigation, the Times found that it had not received timely notice from its LTD insurance carrier that Ms. Walker's LTD benefits claim had terminated.[6]  Typically, when a Times employee is placed on LTD leave, the Times' LTD insurance carrier pays salary continuation benefits under the company's LTD program until such time as the employee's eligibility for such benefits terminates, whether because the employee has recovered and is able to return to work or because the employee has taken the maximum two years of available LTD leave.  At that time, the LTD insurance carrier would notify the Times that the LTD leave and benefits claim terminated, so that the Times could update the employee's employment status in its system to reflect that the employee had returned to active status or had been terminated for failure to return to work following leave.  None of those procedures were followed in Ms. Walker's case.

11.    Effective February 28, 2010, the Times elected, at its discretion, to treat Ms. Walker as having "retired" rather than having been "terminated," which made her eligible for the company's "Pre-65 Retiree Benefits Program."  The Times offered to enroll Ms. Walker in the Pre-65 Retiree Benefits Program to provide her with continued access to health care

---

[6] Upon the Reorganized Debtors' information and belief, the Times' LTD insurance carrier went through a series of acquisitions and mergers beginning in 1995 that may have contributed to this failure of communications.

coverage at reduced cost compared to market rates, effective March 1, 2010.  In the Pre-65

Retiree Benefits Program, the Debtors (and now Reorganized Debtors) pay 50% of a retired

employee's health care premiums and the retired employee pays the remaining 50%.

[Remainder of Page Intentionally Left Blank]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of July 2014.

By: Kathleen Kearney

ACTIVE 7363602V.2