

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELEWARE
The Honorable Judge Kevin J. Carey

In Re:  TRIBUNE COMPANY, et.al

Chapter 11
Case no. 08-13141 (KJC)
Claims Nos. 6601,6780,6786,7092
 Related to Docket Nos 13936 filled 7/28/14
8065,8289,8325,8523, and 8623
Response Deadline:  August 27, 2014 at 4:00 p.m. ET
Hearing Date: September 23, 2014 at 10:00 a.m. ET

CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS
SUPPLEMENTAL OBJECTION TO THE PROOFS OF CLAIM

Case No. 08-13141 (KJC)

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELEWARE

| | |
|---|---|
| In Re: ) | Chapter 11 |
| ) | |
| TRIBUNE COMPANY, et.al ) | Case No. 08-13141 (KJC) |
| ) | |
| _____ ) | Related to Docket Nos. |

8065,8289,8325,8523 and 8623

## CAROL WALKER'S SUPPLEMENTAL RESPONSE TO REORGANIZED DEBTORS'
## SUPPLEMENTAL OBJECTION TO THE PROOFS OF CLAIM

I, Carol Walker, in propria persona, hereby file my response to Reorganized debtors supplemental objection to the proofs of claims In the above-captioned case.

The Reorganized Debtors' supplemental objection to the proofs of claim doc 13936 filed 07/28/14 has many false and misleading statements. It is my effort not to bring forward all of them and reserve the right to bring them forward in the future if needed. I am filing this response propria persona and that in the future do not give up my rights to bring in counsel.    Pursuant to California law CCP Sec. 438:California Code-Section 438 leave to amend. If the court finds my response to reorganized Debtors' claim insufficient I reserve my right to amend my response. Evidence to support such a request.  <u>Dunzweiler v. Superior court 1968 267Cal.APP.2d569</u>    California has developed a policy of great Liberality in allowing amendments at any stage of the proceeding.

<u>With respect to the amendment of pleadings there has developed in California policy of great liberality in allowing amendments at any stage of the proceeding so as to dispose of cases upon their substantial merits where the authorization does not prejudice the substantial rights of others. (Hayutin v. Weintraub, supra, 207 Cal. App. 2d 497, 505; Rabe v. Western Union Tel. Co., 198 Cal. 290, 300 [244 P. 1077]; Golden v. Penland, 143 Cal. App. 2d 583, 588 [300 P.2d 279]; Bank of America etc. Assn. v. Goldstein, 25 Cal. App. 2d 37, 46 [76 P.2d 545]; McDougald v. Hulet, 132 Cal. 154, 162 [64 P. 278].) The rule of liberality is particularly important where, as in the present case, an amendment is sought to an answer. (Gould v. Stafford, 101 Cal. 32, 34 [35 P. 429]; Hyman v. Tarplee, supra, 64 Cal. App. 2d 805, 813-</u>

1

<u>814.)</u>

Case 08-13141-KJC    Doc 13936-6 Filed 07/28/14

## INTRODUCTION

I am filling this response to the reorganized Debtors' Supplemental Objection to my proofs of claims on my own. I am not an attorney and do not have any experience in filling such a claim. All matters set forth in this document are true to the best of my recollection. I ask the Courts understanding if proper procedures are not followed, and reserve my right to amend the claim if it is insufficient.

In support of the Supplemental Objection filled by the Reorganized Debtors objection of claims for Carol Walker. The Reorganized Debtors' state they rely on the Declaration of Kathleen Kearney, Director of Benefits for the Tribune Publishing Company. (the "Kearney Declaration")
(Exhibit E in Doc 139360) Being that it is so heavily relied upon in the supplemental objection I would like to first point out some of it's untrue statements.

**Correction and Clarification of False statements in Exhibit E Doc 13936 "Kearney Declaration"**

A. Ms. Walker's Employment at the Los Angeles Times and Disability Leave.

    4. Incorrect statement: "Carol Walker was previously employed by Los Angels Times Communications LLC (the "Times"), the publisher of the Los Angeles Times newspaper, as an Assistant Telemarketing Manager in the Times' circulation department."
    I was a Telemarketing Manager rating grade 33 821E.
    Exhibit (A ) Change of Status voucher  9-1-92 Exhibit (B) Inter-office correspondence 3-18-92
    6. "Because Ms. Walker was on LTD leave and was not on the Times' payroll during the time, no deductions for health care contributions were taken by the Times and the Times did not otherwise require Ms. Walker to make contributions towards the cost of the Continued Benefits. Thus, the Times assumed the full cost of Ms. Walker's continued Benefits."
    As per the above statement and (footnote 4) the Times assumed the full cost of My continued benefits.  It is immaterial to this case how much was paid.  I was

2

never asked to contribute to the cost of my benefits. I was never notified of any change in that policy.  Exhibit (C) letter from Karon Gilles 5-5-2000. stating "You currently have medical coverage through CIGNA for yourself, your husband and two sons. Also according to our records, you have basic life insurance coverage in the amount of $72,000."

**No other notification of discontinuing coverage was ever sent to me until letter from Marcello Sawyer, (Exhibit G Doc 13936-8) December 29, 2009. "you will be terminated from our system and your medical benefits will cease effective January 1, 2010.** I did not receive the letter until January 02, 1010.

B. Ms. Walker's Eligibility for LTD Leave Terminated in May 1997 and she Did Not Return to Work as Required.
Ms. Kearny also stated in C 10 of this document that "Based on further investigation , the Times found that it had not received timely notice from its LTD insurance carrier that Ms. Walker's LTD benefits claim had terminated (6) How can a exact date of May 1997 be stated, if the Times did not receive notification from the LTD carrier.

In reference to the Kearny Declaration: B. 7. It was the Times' policy that if employees failed to report for work following the end of an authorized disability leave of absence, they would be terminated.  Ms. Walker did not return to work at the Times in May of 1997 or at any time thereafter.        (Foot note 5) Ms. Walker has alleged in the Walker Response and the Walker Complaint (each defined below) that she submitted an employment application on June 12, 2000. to another office location at the Times and was not re-hired.  The Reorganized Debtors have no record of the application, allegedly submitted more that three years after Ms. Walker's LTD eligibility terminated, nor has Ms. Walker provided a copy thereof to the Reorganized Debtors."
The Reorganized Debtors received some exhibits of proof of my job interview on June 12, 2000 in my response (Docket 8325) to Debtor's exhibits of response of forty-second Omnibus.

FOOTNOTE 5 of the Kearny Declaration is not correct: "Ms. Walker has alleged that she submitted an employment application on June 12, 2000."

## PROOF OF EMPLOYMENT APPLICATION AND INTERVIEW
Please except  the five exhibits bellow as proof of my application in June of 2000:
Exhibit (D)  Job Opportunities Bulletin Week of April 24, 2000 Telesales Manager Job
Exhibit (E)  cover fax page to Carol O'Green human resources

3

Exhibit (F) resume

Exhibit (G) (also in Exhibits of response of forty-Second  Omnibus objection Docket 8325) Netscape Maps & Driving Directions to Los Angeles Times office 2001 Cashdan St. Rancho Dominquez, Ca.   Dated 6/11/00  with interview date of Monday June 12 printed on it.

Exhibit (H) (also in Exhibits Docket 8325 of response to forty-Second Omnibus objection) Postcard from Los Angeles I received the card June 16, 2000.  Stating they will keep resume in our active file.

Exhibit (I)  Gmail dated March 10, 2010 at 2:26 to Scotttimmons@latimes .com  failed

Exhibit (J) gmail dated March 10 at 2:39 to Scott.timmons@latimes.com plus resume.

(I called Mr. Timmons to verify he had received my resume as the first try failed.)

Exhibit (K)  Resume sent in email to Scott.timmons@latimes.com

8.  As stated in the Kearney Declaration  **"The Times has no record indicating that Ms. Walker was under a doctor's care or continued to suffer any disability after May 1997."**  (That is simply because the Times did not interactively follow up on my well being. Between May 1997 and 2000, then from summer of 2000 till 2010.  I did everything that was requested of me.)

(exhibit L) January 13, 2000 Letter from Judy Wong, "According to our records, you are still on disability leave of absence.  In accordance with our policy, if you have been trained or educated, your inactive employment status may continue.

If you are still disabled, we need you and your doctor to fill out the enclosed form to certifying your continued disability,   If we don't hear from you and your Doctor by January 27, 2000, or if you haven't been continuously disabled your employment with the Times will be reviewed for termination."

(Exhibit M) January 18, 2000 Physician's Certification of Disability signed request for consent to release information.

The response would have been returned to the Los Angels Times.  If Dr. Deemer did not respond (which I am sure he did) I would have been terminated as stated by Ms. Wong letter.   (Exhibit T)  March 30, 2000.  Letter from Karon Gilles "Call me within the next 7 days and let me know your status.  If I don't hear from you by then, I'll assume you are no longer eligible for disability leave nor interested in working for the Times and your employment will be terminated." the information obviously was returned because she sent the following letter

(Exhibit in Docket 8325 )  May 5, 2000 letter from Karon Gilles  "You currently have medical coverage through CIGNA for yourself, your husband and two sons.

4

Also, according to our records, you have basic life insurance coverage in the amount of $72,000."
(Exhibit in Docket 8325)  July 20, 2000 Letter to Rudy Pulido via Certified mail requesting my file in it's entirety.  Including my work file and also any medical records. **Date of injury stated as ongoing.**  I finally received a copy of my employment file from Debtors' counsel in May  2011.
I received no answer from Rudy Pulido.


**C. Following a 2009 Audit, the Times Terminated the Continued Benefits, Treated Ms. Walker as Having Retired from the Times, and Enrolled Her in the Pre 65-Retiree Benefits Program.**


In Section C. 10 of the Kearney declaration it is stated **"Based on further investigation, the Times found that it had not received timely notice from its LTD insurance carrier that Ms. Walker's LTD benefits claim had terminated.** (footnote 6) "Upon the Reorganized Debtors' information and belief, the Times' LTD insurance carrier went through a series of acquisitions and mergers beginning in 1995 that may have contributed to this failure of communications. Typically, when a Times employee is placed on LTD leave, the Times' LTD insurance carrier pays salary continuation benefits under the company's LTD insurance program until such time as the employee's eligibility for such benefits terminates, whether because the employee has recovered and is able to return to work or because the employee has taken the maximum two years of available LTD leave.  As that time, the LTD insurance carrier would notify the Times that the LTD leave and benefits claim terminated.  So that the Times could update the employee's employment status in it's system to reflect that the employee had returned to active status or had been terminated for failure to return to work following leave.  <u>None of those procedures were followed in Ms. Walker's Case."</u>


11. **Effective February 28, 2010, the Times elected, at its discretion, to treat Ms. Walker as having "retired" rather than having been "terminated," which made her eligible for the company's "Pre-65 Retiree Benefits Program." The Times offered to enroll Ms. Walker in the Pre-65 Retiree Benefits Program to provide her with continued access to health care coverage at reduced cost compared to market rates, effective March 1, 2010,  In the Pre-65 Retiree Benefits Program, the Debtors (and now Reorganized Debtors) all pay 50% of a retired employee's health care premiums and the retired employee pays the remaining 50%.**

5

The Times/Tribune allegedly pay 50% of the premiums. The first time I was made aware of the alleged copay was in this document.  I have never been informed of that prior.   I challenge the statement made above in ¶ 11 of the Kearney Declaration" **Effective 28, 2010, the Times elected, at its discretion, to treat Ms. Walker as having "retired" rather than having been "terminated"** (As stated in the above statement  I would tend to ask why the Tribune/Times would rush to put me on the pre-65 retiree Benefits Program at such a cost to them.  I challenge the validity to the  Date of retirement (proof on inconsistency's are brought out  throughout this document especially under 17) and also "at the Times discretion" is under challenge".)

**As I have indicated above.   I have found many inconsistency's and wrong statements of facts in this Kearney Declaration hereto referred to as Exhibit E.  I would request of the court, to consider that when relying on any statements made within The Kearney Declaration.**

## OBJECTION OT STATEMETS IN INTRODUCTION

1. **" Ms. Walker's disability leave and benefits had terminated in May 1997 and she had not returned to work as required.**  **<u>Not Correct</u>**
   (Exhibit L)  January 13, 2000 letter from Judy Wong.  "According to our records you are still on disability leave of absence."
   (Exhibit E Kearney Declaration) C. 10 "Based on further investigation, the Times found that it had not received timely notice from its LTD insurance carrier that Ms. Walker's LTD benefits claim had terminated6. (If they did not receive timely notice they are unclear of the date)

   "she had nonetheless remained listed in Times' system as an "inactive employee." The Times further discovered that during the twelve year period between May 1997 and December 2009, Ms. Walker and her family had continued to receive company provided health care benefits at no cost to her, to which she was not entitled to receive because she was no longer eligible for disability leave, and had not returned to work, and had made no contributions to cover the premiums for such benefits."

   ¶6 of the Kearny Declaration **"Because Ms. Walker was on ltd leave and was not on the Times' payroll during this time, no deductions for health care contributions were taken by the Times and the Times did not otherwise**

require Ms. Walker to make contributions toward the cost of the Continued Benefits. **Thus, the Times assumed the full cost of Ms Walker's Continued Benefits.**" .

In footnote 4 of the Kearney Declaration page 3.it is immaterial how much was paid by the Times as nothing was required or even requested.

2. **"Immediately upon discovering that Ms. Walker was listed as an inactive employee in its computer records:**
(Immediately, after 12 years)
**and was receiving free heath care benefits to which she was not entitled.'**
(See ¶6 of Kearny Declaration)
**"Following several communications between the Times and Ms. Walker's putative attorneys,"** (Exhibit G. of Doc. 13936-8) Letter from Mr. Futoran, Sr.
" ¶ 2 "I have not undertaken formal representation of Ms. Walker")
**"the Times, at its discretion"** (It is an unlawful employment practice for an employer to refuse to hire or employ the person or to select the person for a training program leading to employment, or to bar or to discharge the person from employment.)  California Government Code Section 12940 et.seq
**"treated Ms. Walker as having retired effective February 28, 2010"** (Many exhibits challenge the effective date of February 28, 2010 a more accurate statement would be sometime between March 04, 2010 and March 25, 2010)
exhibit (N) "Your profile" dated March 4, 2010 stating employment Category Unpaid LOA exhibit (O) "Your profile"dated March 25, 2010 stating employment category Retired. (both exhibits also in Docket No. 8325)  exhibit (P) Dated March 04, 2010 "You can't change or cancel your retirement because you haven't started the retirement process."
Exhibit (N)(O) (P) all show that a later date than February 28th was listed.   To my knowledge I did not receive and direct correspondence telling me I was retired.   At no time did I asked to be retired I was just placed on retirement. No "interactive process" 1 was entered into when I ask for a position.
(Exhibit F doc 13936-7 filled 07/28/14) letter dated December 29, 2009.
"You currently do not have an active long-term disability (LTD) claim and are not receiving any known LTD benefit, as a result, you are not eligible to continue receiving health & welfare benefits through Tribune. Pursuant to Tribune's policy, employment terminates after LTD has ended and the employee has not returned to work. Therefore , **you will be terminated from our system and your medical benefits will cease effective January 1, 2010.**"

7

**"Ms Walker is required to contribute a share of the cost of the premiums for her health care like every Participant in the program."**  I was never made aware of any Co-pay until I received this Supplemental Objection. In further disclosure I would like to know if every other participant in the pre-65 retirement plan has Life insurance, vision and dental coverage.

I was under the impression, and had never been made aware of anything different that the fact that the Times/Tribune continuation of payment of my Health, Life insurance, dental and Vision coverage **was** my LTD benefits.  I never received notification of any change since I received the letter May 5, 2000 from Karon Gilles (Exhibit Q)  stating "You currently have medical overage through CIGNA for yourself, your husband and two sons. Also according to our records, you have basic life insurance coverage in the amount of $72,000."  The May 5, 2000 date being well past the date of May 1997 as referred to in the Kearney Declaration  (A. ¶ 5)  As it is evident I was never informed on any change and detrimentally relied on the belief that this was a long term benefit.  This believe went on for years.  Whether it would be termed an error, omission or just a "glitch" as stated in (Exhibit H Doc 13936-9)  Times / Media Group, letter stating that my employment and benefits would be discontinued Jan. 01, 2010.( I received on January 2, 2010 by regular US mail.)

This substantiated belief went on for years. And effected me and my family's choice in health care.  If I had been made aware, that my healthcare was not continued at a younger age we wold not have been placed in such a precarious position.  As we are both in our Sixty's and have pre exciting conditions.  Again, I am not asking or saying that the Tribune/Times has the legal responsibility  to pay my health care for the rest of my life.  I am saying I was hurt because of my belief that the Times was doing the right thing and paying my health care.  I relied on the statements in many many corresponds sent out by the Times.  A few examples in Docket No. 8325 and exhibits also stating many times as in the August 2002 letter addressed to fellow employee:  **"Integrity is one of our fundamental values in carrying out our missions as a news organization. The Code of Business Conduct affirms that Strong commitment to honesty, credibility and trustworthiness in all our business dealings.  It is the responsibility of every employee to understand and adhere to the code."**  When I took the Telemarketing Managers position and as a Telemarketer, I was proud of the fact that the Times had such high standards of integrity.  My trust was shattered with some of the tactics that arose while closing the "Gold Coast" office.

3.

      **(1) "Ms. Walker "detrimentally relied" on receiving cost-free health care coverage since going on disability leave in 1994 and should**

8

therefore be provided with ongoing cost-free health care coverage, or the estimated value thereof, and (2) that she was wrongfully terminated from the Times when it deemed her as having retired in February 2010." After I received the notification Jan. 02, 2010, I immediately asked for my position back. I immediately hoped to get my position back. Exhibit (I) Doc 13936-10 March 30, 2010 letter from Maury Mills. "But for the Times keeping her as an employee with medical coverage, she long ago could have sought alternative medical insurance, which insurance is now prohibitively expensive. I am mindful of the letter from John A. Futuran categorizing her continued leave of absence as a reasonable accommodation and your response, Whether the matter is analyzed as an accommodation issue or detrimental reliance, I believe The Times should take responsibility for the situation and ask that you take whatever steps are necessary to assure the family's medical coverage is maintained. **Ms. Walker informs me she is ready, able and willing to return to work if that is what it takes to accomplish the goal.** As per California Government Code Section 12940 et. Seq. I was never engaged into a "Interactive Process" 1 to be able to return to an active position with the Times/Tribune. "Please also be informed that she applied for an open telemarketing management position with The Times in Rancho Dominquez on June 12, 2000 but was not re-instated. She also contacted Kelly Rimzey in the Telemarketing office of the Los Angeles Times on March 2, 2010. Submitted a resume to Scott Timmons of the Times recruiting on March 10, 2010." (Exhibits I, J and K)

## Americans with Disabilities Act (1990) mandates, by California Government Code Section 12940 et. Seq

4. **"As to the first theory, Ms. Walker asserts in effect that because the Times made an administrative error in her favor for more than twelve years, it now has an obligation to continue making that error in perpetuity.** That is not what I am saying. I am saying I was harmed by the Times and Tribune not following the "Interactive process"1 as required by law,  as the  .Americans with Disabilities Act (1990) mandates, by California Government Code Section 12940 et. Seq

I am not, nor have I ever to my knowledge asked for my Healthcare to be paid for in perpetuity. **That is just a gross misrepresentation of my claim.** I am asking for damages because I was not allowed the right to a "Interactive Process"1. As referenced

9

in:

## 1 California Government Code Section 12926©, 12940et.seq,12941

### 12940. It is an unlawful employment practice, unless based upon a

bona fide occupational qualification, or, except where based upon
applicable security regulations established by the United States or
the State of California:
(a) For an employer, because of the race, religious creed, color,
national origin, ancestry, physical disability, mental disability,
medical condition, genetic information, marital status, sex, gender,
gender identity, gender expression, age, sexual orientation, or
military and veteran status of any person, to refuse to hire or
employ the person or to refuse to select the person for a training
program leading to employment, or to bar or to discharge the person
from employment or from a training program leading to employment, or
to discriminate against the person in compensation or in terms,
conditions, or privileges of employment.

When I filled this claim I needed to state a monetary amount that I was harmed. What price do you put on twenty years of your life?  I could have asked for back pay. Bonuses, 401k contributions that I had missed out on, Continuation of Life insurance, dental, vision insurance. I came up with a reasonable modest amount of 65,000 for the Tribune/Times.

**As per (Exhibit E) C. 10 In the Kearney Declaration "None of those procedures were followed in Ms. Walker's Case. The Times/Tribune is clearly taking responsibility for the error or omission that was perpetrated.**

In the event that my claims are disallowed by this court, I reserve the right to offer claims for other monetary harm that was brought on by the error of the Times/Tribune in not entering into the interactive process as required by law.

All Employers must engage in an interactive process to determine if a **reasonable accommodation** of the employee's disabilities can be made.

1 The(EEOC) defines the interactive process as:

"an informal, interactive process ... [to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."

Prudence Kay Poppink act. (California Government Code Section 12940) AB2222 Liability for failing to engage in a good faith, interactive process.  AB2222 imposes liability on employers that fail to do this.

The burden falls on the employer to prove that the employer has

10

entered into an interactive process with the employee.


# I. FACTUAL AND PROCEDURAL BACKGROUND TO THE SUPPLEMENTAL OBJECTION

**9. "Except as otherwise noted herein, the facts relevant to the Walker Claims and Supplemental Objection are not in dispute.**

I dispute some facts listed within this document.

**( footnote 5 page 5) On May 20, 2011, the Debtors requested that Ms. Walker provide certain information, including Ms. Walker's LTD claim status and the date when Ms. Walker's LTD salary continuation benefits ceased.  To date, Ms. Walker has not provided this information.    In B. ¶ 12. "Ms. Walker's eligibility for LTD leave and benefits---and the payments form the Times' LTD insurance carrier----- terminated in May 1997 , ie., after two years of LTD leave.** The Reorganized Debtors are stating this as fact when in truth they are not sure of the exact date as per their many inquires. **(Kearney Decl. ¶7.)**  How could they make such a statement as "Factual" when in I 9. footnote 5 of the Reorganized Debtors' Supplemental Objection to the Proofs of Claim Filed by Carol Walker the debtors  state that "On May 20, 2011, the Debtors requested that Ms. Walker provide certain information, including Ms. Walker's LTD claim status and the date when Ms. Walker's LTD salary continuation benefits ceased."  Exhibit (L) dated January 13, 2000 from Judy Wong Employee Benefits states"According to our records, you are still on disability leave of absence."  **The January 13, 2000 date being much after the May 1997 date quoted.**  Exhibit (M) Physician's Certification of Disability request from Dr. Deamer dated **Jan.18, 2000.** Exhibit (Q) **May 5, 2000** letter from Karon Gilles stating;

"In your letter to me dated April 10, 2000 you asked what benefits you have with The Times.  You currently have medical coverage through CIGNA for yourself, your husband and your two sons.  Also, according to our records, you have basic life insurance coverage in the amount of $72,000."  This letter was cc: to Cecilia Hernandez, Worker's Compensation and Debbie Larson, Group Insurance.


Incorrect statement:  **10.  Ms. Walker was previously employed by the Times as an Assistant Telemarketing Manager in the Times' circulation department. (See Kearney Decl. ¶ 4.)**    I was a Telemarketing Manager rating grade 33 07.  Exhibit (B) Inter-office correspondence 3-18-92. supra in Correction and Clarification of False statements in "Kearney Declaration".


If they had engaged me into an "Interactive Process" 1 to determine if a "reasonable

accommodation" was available there would be no question, as referenced in footnote 5 page 5. when my LTD claim status and the date when my LTD salary continuation benefits ceased. That in my opinion, one of the main reasons that such a law is on the books. I was just left hanging. Not once but twice. In 1997 and again in 2000.

Footnote 5. I did provide the Debtors Counsel with the information they requested, via email 06/06/11. (Exhibit AC) "I was under the impression that part of my Salary continuation benefits was that my insurance benefits were being paid by the company. I was never notified of anything different until 2010." In that email I have also asked some questions that have not as yet been answered:

a) The official procedure of the Los Angeles Times regarding and employee going on and off LTD and on and off of LOA (ie. Medical clearance, job accommodations, etc)
b)What is the current pay and benefits for an active employee, also recently retired grade 33 exempt management employee, employed with the Times/Tribune since 1990.
c)      Any other records held by the Times/Tribune regarding me; for example, the interactive process for me to return to active employment, also the debtors books and records that were referred to in the proposed dis allowance in Omnibus Objection 42 Exhibit A.
d) What exactly did Amy Foran mean when she made the following statement in her letter of February 4, 2010? "The benefits provided to Ms. Walker were not a "reasonable accommodation" as you suggest, but rather were mistakenly provided to her through a "glitch" in the company's benefit tracking system." Is this an error or an omission?

## B.  Ms, Walker's Eligibillity for LTD Leave Terminated in May 1997 and She Did not return to Work as Required

12.   Ms. Walker's eligibility for LTD leave and benefits----and the payments from the Times' LTD insurance carrier-----terminated in May 1997, i.e. after two years of LTD leave. (Kearney Decl.¶ 7.)  It was the Times ' policy that if employees failed to report for work following the end of an authorized disability leave of absence, they would be terminated. (Id.)  Ms. Walker did not return to work at he Times in May 1997 or at any time thereafter. 8 (Id.) "Ms. Walker has alleged in the Walker Responses and the Walker Complaint that she submitted an employment application on June 12, 2000 to another office location at the Times and was not re-hired.  The Reorganized debtors have no record of this application, allegedly submitted more than three years after Ms. Walker's LTD eligibility terminated, nor has Ms. Walker provided a copy thereof to the Reorganized Debtors. (Kearney Decl. ·¶ 7 n.5).
(footnote 8)

12

**As clearly demonstrated <u>supra</u> in <u>CORRECTION OF FALSE STATEMENTS IN</u> <u>"Kerarney Declaration"</u>   Unquestionable Proof of Employment Application and Interview in 2000 and request for employment in 2010.**

I had a meeting with Cora Williams on Monday June 12, 2000 for the open position of Telesales manager grade 07 the same as I had held in the Gold Coast office.. I was under the impression that I had the position and was going to be transferred down to Rancho Dominguez. I even went as far as to look for a place to live in the area on June 12th. Cora told me "She would get back to me with all the particulars" I then received the postcard on June 16, 2000. I just wanted a chance to return to work. It was devastating not to have that chance. As per exhibit (S) Telemarketing Manager Performance Appraisal dated January 19, 1993 and exhibit (R) dated 12/92 I deserved a Merit rate increase for both years of my performance appraisal. Also listed in (Exhibits Docket 8325) I was previously good at my job. I was the only Manager that was asked to move to another office with the anticipation of closing. My immediate supervisor was fired for insubordination, Of my two fellow Managers, one was let go and the other resigned in solidarity. (Exhibit U) Mark Lewis who I replaced went out on MLOA I did everything in my power to keep the office together. For the benefit of my crew, they were depending on me. I failed them and let them down when Dr. Avery took me of work I was sick both physically and mentally.

"The Times has no record indicating that Ms. Walker was under a doctor's care or continued to suffer from any disability after May 1997. (Kearney Decl. ¶ 8.) See <u>supra</u> in **Correction and Clarification of False Statements in "Kearney Declaration"** I am still suffering in accordance with Title 20, Code of Federal Regulations, § 404.942and/or 416.1442 (Exhibit X)

I requested to return to work after 2009.
Exhibit G Doc 13936-8 of Reorganized Debtors' Supplemental Objection January 14, 2010 letter from John Futorian, Sr. stating **"If the L.A. Times is taking the position that these accommodations are no longer reasonable, they are under the affirmative obligation to engage the <u>interactive process</u> (1) to determine if other reasonable accommodations are available that would allow her to preform the essential functions of her position" So, please reinstate the previously provided reasonable accommodation (Unpaid leave; paid health benefits), identify possible positions she could preform, identify the essential functions of those positions and engage in the timely, good faith interactive process to identify what, if any, reasonable accommodation would be required to enable her to return to work.**

In the (Kearney Decl. ¶ 8) "The Times has no record indicating that Ms. Walker

13

was under a doctor's care or continued to suffer from any disability after May 1997."
This statement is proven false:
As per Exhibits in Carol Walker's Response to Debtor's Forty-Second omnibus
objection to claim docket 8325 dated 03/09/2011  1 and 2

1. Exhibit (W)Access Benefits  October 21, 1997 letter addressed to "Employees on
Long Term Disability leave."
2. Exhibit (T)April 10, 2000 letter to Ms. Gilles, Employee benefits  stating "I am
awaiting a call from Dr. Hughes."
3. Exhibit (M) January 18, 2000  Physician's Certification of Disability request to
release any and all medical and mental health information pertaining to my condition to
the Los Angels Times/The Times Mirror Company and its authorized agents and
employees for employment-related purpose including determining my eligibility benefits
and/or ability to work.
4. Exhibit (V)  August 3, 2000 "This is to remind you of your examination scheduled
with John Barta, MD on 8/11/00 at 1:00".  See c: Cindy Ratermann, Allsup Incorporated
(A representative of the Times)

""**The Times has no record indicating that Ms. Walker was under a doctor's care or
continued to suffer from any disability after May 1997. (Kearny Decl. ¶ 8.)**
Exhibit (W)  Oct. 21, 1997 letter from Access Benefits Times Mirror to Employees on
Long Term Disability Leave. ,   **I DID EVERYTHING THAT WAS ASKED OF ME,
I SAW EVERY DOCTOR , I RESPONDED TO EVERY QUESTION**.  Does the
burden lay with the employee or with the employer?  The problem I was never followed
up with any interaction in person between the Times and myself.

No direct  interaction from 1997-2000    (Was that in error?)
No direct  interaction from  June 2000-December 2009  (Was that again in error?)
I was left on the employee list twice (in error?). I have countless letters addressed to
"Dear Fellow Employee,  Dear Employee, Dear Tribune Employee etc. as found in
(EXHIBITS in Carol Walker's Response to Debtor's Forty-Second Omnibus objection to
claim Docket 8325.)

**C.      Following a 2009 Audit, The Times Terminated the Continued Benefits,
Treated Ms. Walker as Having Retired From the Times, and Enrolled Her in The
Pre-65 Retiree Benefits Program.**
13 and 14   In making this statement "but, nonetheless remained listed in the Times'
system as an inactive employee receiving Continued Benefits at no charge." (footnote 9
of the Kearney Declaration) The Times/Tribune take responsibility for the error.

14

17.  Effective February 28, 2010, the Times elected, at its discretion, to treat Ms. Walker as having "retired" rather than having been "terminated", which made her eligible for the Company's pre-65 retiree Benefits Program."

I was not asked if I wanted to retire I was just placed on retirement. No Interactive Process (1) was followed.

Many inconsistency's were found in the actual date that my termination ended and my retirement began:

Exhibit (P)  Retire now- Change or Cancel Your Retirement  Carol H. Walker Hewett Associates 03-04-2010 9:59 am Central Standard Time.   Clearly states that "You can't change or cancel your retirement because you haven't started the retirement process.

As per the Exhibit G docket 13936-8 Letter from John A. Futoran to Marcello Sawer, Jan. 14, 2010. No request to be placed onto retirement.  Mr. Futoran request that **"if the the Los Angeles Times is taking this position that these accommodations are no longer reasonable, they are under an affirmative obligation to engage in the interactive process to determine if other reasonable accommodations are available that would allow her to perform the essential functions of her position."**
     **Fortunately, Ms. Walker's prior work experience, record or superior performance and willingness to accept a new assignment create numerous possibilities for the L.A. Times to employ her.**
     **So, please reinstate the previously provided reasonable accommodation (unpaid leave; paid health benefits), identify possible positions she could perform, identify the essential functions of those positions and engage in the timely, good faith interactive process to identify what, if any reasonable accommodation would be required to enable her to return to work."**

I was never asked if I wanted to be placed on retirement.  The Times/Tribune first terminated me.  As noted in exhibit (Y) as late as 03/18/10  they had me listed as Terminated.  Also see exhibit (N) Your profile dated **03/04/2010  employment category Unpaid leave of absence** .  Exhibit (P) change or cancel your retirement dated **03/04/20 You can't change or cancel your retirement because you haven't started the retirement process.**  exhibit (O) your profile dated **03/25/2010 employment category Retired.**
The Tribune had no intention of placing me on retirement. he first intention was to terminate my employment. (Exhibit F doc 13936-7) and (Exhibit H doc 1396-7)   This was also stated very clearly in
Exhibit (Y) 03/18/10 Cobra Service Important notice.  Employer:  Tribune Company

15

Qualifying Event:  Termination of Employment **Date of Notice**      **03/18/10**
                                            Qualifying event      03/01/10
                                            Benefits Termination  03/01/10
                                            Election Rights Expire    05/17/10

As stated in (Kearney Decl. ¶9.) "As part of this review, the Times discovered that Ms. Walker had ceased being eligible for LTD leave in May 1997 and had not returned to work, but had nonetheless remained listed in the Times' system as an inactive employee receiving continued benefits at no charge. Footnote 6 "upon the reorganized debtor' information and belief, the Times' LTD insurance carrier went through a series of acquisitions and mergers beginning in 1995 that may have contributed to this failure of communications." (Kearney Decl.¶ 10 n.6

At that time, the LTD insurance carrier would notify the Times that the LTD leave and benefits claim terminated, so that the Times could update the employee's employment status in its system to reflect that the employee had returned to active status or had been terminated for failure to return to work following leave. **(Id.) <u>NONE OF THOSE PROCEDURES WERE FOLLOWED IN MS. WALKER'S CASE.</u>**

THIS HAPPEND TWICE IN 1997 AND IN 2000.  That is why it should not be difficult to see why I would of thought that the Times was doing the right thing and keeping me on as an employee with Benefits. As stated in (Doc 13936-10 EXHIBIT I) Letter from Maury Mills to Amy Foran, March, 30 2010.

     "Because of the events of 1994 surrounding the closing of the "Gold Coast" office and the related depression she was suffering, Ms. Walker believed the Times was doing the right thing and keeping her as and employee with benefits.  That belief was supported by numerous communications from the Times to her addressed as "Dear Employee."  I have included several of those for you reference.

     Based on the foregoing, I believe that Ms. Walker held a reasonable belief that she continued to be an employee of the Los Angeles Times with medical benefits for her husband,  who is now 57 and her children, sons 25 and 20.  Based on that reasonable belief she took no steps to look for other insurance for the family."

**<u>AS PER THE KEARNEY DECLARATION THE TIMES IS ADMITING AN ERROR.  BE IT BY AN OMMISION OR AN ERROR.  I WAS HARMED BY "FAILURE OF COMMUNICATIONS."No "INTERACTIVE PROCESS"1</u>**

D.    The Bar Date Order
I did file a case  with the Superior Court of California for the County of Ventura  Carol Walker, plaintiff, vs. THE LOS ANGELES TIMES, a business entity unknown; TRIBUNE COMPANY, a business entity unknown;  DOES 1-20 inclusive, defendants.

I was informed that since the Tribune was in Bankruptcy I had to proceed through the Bankruptcy court in Delaware.  Claim no. 7092 (Exhibit D)

18  On March 26, 2009, the Court entered  and order (Docket no. 813) (the "Bar Date Order") If a letter was  mailed out to me, I don't remember receiving it, I don't have a copy which I have most of my correspondence from the Times/Tribune in a big box. As referenced in D. 18 it was long before I was harmed and my claim was submitted, way before the Times/Tribune did not inter into a "Interactive Process" (1). As is stated,  the Times/Tribune  first notified me that it was terminating the Continued Benefits in writing in January 2000. I was and still am hoping for a reinstatement of my position. Therefore, 30 days after notification I was still hopping for a position with the times. Furthermore 30 days from the date of the December 29, 2009 letter  I was still listed as an employee.  (The fact that a letter was alleged to being mailed to me (see docket No. 1073, affidavit of mailing, Ex. F at 292) was more proof I was listed as an employee.  It is not reasonable that I would take note of a Bar Date long before any claim was filled.

19.    As in reference to Docket no. 1073 " the affected current employee shall have the later of (I) the Bar Date and (ii) thirty (30) days from the date of serves of such written notice of file proof of claim." As discussed supra at ¶ 15, the Times first notified Ms. Walker that it was terminating the Continued Benefits in writing on December 29, 2009.  I had just started my correspondence with the Tribune.  Would it not have been the responsibility or at least a courtesy to let me know of the Bar date order at that time.  For them not to inform me that I only had thirty days to file a complaint seems unreasonable.  Furthermore how was I supposed to know that an interactive process was not going to happen as stated in (exhibit H letter from Futoran and exhibit I as stated in letter from Mills ).  I had asked for my position back and had hopes that it would be reinstated.  In fact, as of this date I still hold out a slim hope that my position will be reinstated as per exhibit (Z) **Please note:  I am accepting this Tribune company 2010 pre-Retiree Heathcare plan out of necessity.  By taking it I don't waive my right to contest my retirement.**

21 As stated in claim 6601 the amount of 65,000 was because of Wrongful Termination not for demand of payment of health benefits in perpetuity as claimed by the Reorganized Debtors.

 In response to (Footnote 11 page 11 of Doc 13936) In an email addressed to Ms. Ludwig sent on 06/06/11 a) answer to LTD status.
In that email (exhibit AC) email stream between Jillian Ludwig and me. I answered the best I could the question referenced in footnote 11 in 22 page 11.
    I have sought certain information from Ms. Ludwig debtors counsel. Via 6/6/11 email.

17

In which Debtors Council  has not responded.

a) The official procedure of the Los Angeles Times regarding an employee going on and off of LTD and on and Off of LOA (i.e. medical clearance, job accommodations, etc.

b) What is the current pay and benefits for an active employee, also recently retired grade 33 exempt management employee.  Employed with the Times since 1990.

c) Any other records held be the Times/Tribune regarding me; for example, the interactive process for me to return to active employment, also the debtors books and records that were referred to in the proposed dis allowance in Omnibus Objection 42 Exhibit A.

d) What exactly did Amy Foran mean when she made the following statement in her letter of February 4, 2010.  "The benefits provided to Ms. Walker were not a "reasonable accommodation" as you suggest, but rather were mistakenly provided to her through a "glitch" in the company's benefit tracking system."  Is this an error or and omission?

As I have found many incorrect statements in Doc 13936.  I reserve the right to contest any documents submitted by the Reorganized Debtors. On any applicable grounds, should the court schedule an evidential hearing.  Furthermore, as noted supra I have sought certain information from the Reorganized Debtors  that they have not responded as of yet.

24  In reference to footnote 14 I am filling this claim pro se.  Mr. Mills is not a Bankruptcy attorney nor has he ever suggested he was.   In giving any advice or help he has made it very clear he is NOT a bankruptcy attorney, therefore he has no legal right or knowledge of bankruptcy law.  I do however, not relinquish my rights if I so desire, to acquire adequate counsel at any time.  It has been cost prohibitive for me at this time.

25  At this date  I am still willing to entertain a consensual resolution of my claim.

## RELIEF REQUESTED

26  I hereby request that the Supplemental Objection the Reorganized Debtors seek entry of an order, substantially in the form attached hereto the supplemental objection Doc 13936 be denied.  I feel that I have presented adequately that I was harmed by the Reorganized Debtors.  I do request per . California CCP .CODE§438:California Code-sec. 438 provides court leave to amend at any time.   Per Dunzwiler Superior Court 1968 267CAL.APP.2d. 569 574.  California has developed a policy of great liberality in allowing amendments at any stage of the proceeding.

## RESPONSE TO ARGUMENT

18

"The supreme Court has held that a "right to payment" {means} nothing more nor less than an enforceable obligation,"

    A.  The Times/Tribune was under legal obligation to inter into an <u>Interactive Process</u> (1)as required by law.  <u>California Government Code. Section 12940 et.seq  Section 12926© and Section 12941 </u>

    B.  As very clearly stated in the Declaration of Kathleen Kearney in (Doc. 13936-6 exhibit E) that **none of the procedures were carried out.** **"Based on further investigation, the Times found that it had not received timely notice from its LTD insurance carrier that Ms. Walker's LTD benefits clam had terminated."** Footnote (6) "Upon the Reorganized Debtors' information and belief, the Times' LTD insurance carrier went through a series of acquisitions and mergers beginning in 1995 that may have contributed to this failure of communications." THE TIMES/TRIBUNE CLEARLY TAKING RESPONSIBILITY FOR THE ERROR OF KEEPING ME AS AN INACTIVE EMPLOYEE.  I was harmed by this and still am to this day.


28 (1) "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured"


Not until December of 2009 was the error found.  For years no attempt was made to contact me and question my well being.  If the Times/Tribune had legally entered into into the Good faith  "<u>Interactive Process</u>" (1) we would not be in litigation today.  I have brought forward sufficient evidence to prove the Times/Tribune is at fault. In the Kearney Declaration (Exhibit E Doc 13936-6)  Ms. Kearney acknowledges that  the Times/Tribune were at fault ¶ 9 and 10.  As proven <u>supra</u> in this objection many untruthful statements were bought in as evidence by the Reorganized Debtors.
It is very clearly proven throughout this objection that the Times/Tribune did not follow the "<u>Interactive Process</u>" 1 that is required by law.

30.   "The Reorganized Debtors have reviewed the Walkers claims and the Walker Responses and, as best as they can discern, Ms. Walker asserts that she is entitled to receive health care benefits from the Times indefinitely at no cost, or the value thereof."
**THIS IS AN UNTRUE STATEMENT**
As clearly stated in Doc 13936-8 (Exhibit G) Letter from John A. Futoran to Marcello Sawyer, January 14, 2010. "So, please reinstate the previously provided reasonable accommodation (unpaid leave; paid health benefits), **identify possible positions** she could preform, identify the essential functions of those positions and **engage in the timely, good faith interactive process (1) to identify what, if any reasonable accommodation would be required to enable her to return to work."** It is very clear

19

that I am asking to be given the chance to return to work or at least engage in a timely, good faith "Interactive Process". (1)

As clearly **NOT** in evidence, did I ask to receive health care benefits from the Times indefinitely at no cost, or the value thereof.  **The amount of my claim would be much much higher.  However, the fact the so called "Glitch/mistake" went on for twelve years a reasonable person would assume that they would continue until a Qualifying Event ie. Being healthy enough to return to work and get off disability would stop it.**  Since this "Glitch/mistake" happened twice  In 1997 and then again in 2000.  ( Doc 13936-9 Exhibit I) letter from Maury Mills to Amy Foran, March 30, 2010 states.  " Because of the events of 1994 surrounding the closing of the "Gold Coast" office and the related depression she was suffering, Ms. Walker believed the Times was doing the right thing in  keeping her as an employee with benefits.  That belief was supported by numerous communications from the Times to her addressed as "Dear Employee."  several examples are listed in (EXHIBITS Docket 8325 Carol Walker's Response to Debtor's Forty-Second omnibus objection to claim.)

As stated in Document 13936-5 page 11 of 16  filed with the Superior Court of California for the County of Ventura Complaint for Statutory Mental Disability Discrimination; Wrongful Termination in Violation of Public Policy; Negligent Misrepresentation.
**"WHEREFORE, WALKER prays for judgment against Defendants jointly and separately and on each cause of action as follows:**

**1.     For Compensatory damage for losses resulting from embarrassment, humiliation, mental anguish and emotional distress according to proof in excess of the jurisdictional limit of the Municipal Court:**
**2.     For damages according to proof for loss of earnings, relocation expenses, bonuses, deferred compensation and other employee benefits;**
**3.     For interest on the amount of losses incurred in earnings, deferred compensation and other employee benefits at the prevailing legal rate;**
**4.     For attorneys' fees and cost as provided for by statute and contact; and for such other and further relief as the Court may deem just and proper.**

In reference to the (Wrongful Termination).  As before mentioned in (Exhibit D claim no. 7092 "At all times herein mentioned, the Public Policy of the State of California, pursuant to California Government Code Section 12940et.seq was to prohibit an employer from discriminating against and/or discharging an employee because of the employee's mental disability Notwithstanding the public of the State of California,

defendants have discriminated against WALKER by failing to accommodate her and then terminating WALKER at least in part because of WALKER'S physical or mental disability."

(Exhibit K) As is clearly written on the the resume faxed to Scott Timmons March 10, 2010 "Employment History" 3/92-Present: Telemarketing Manager, Los Angeles Times currently on LOA." (exhibit AD) Hand written notes on print out of 3/1/2010 March 2nd, 2010 I was able to make contact with the Telemarketing off by phone 213 237 3751 and spoke to Kelly Rimzy and told her I was a current employee on MLOA . She then gave me Mr. Timmons number to contact.

Both times, employees in just doing a minimum amount of due diligence as required by their positions, would have found out that I had a history and was out on a medical disorder. After receiving my resume I never spoke to either again.(Interactive Process 1) First off, as per my employment file(finally a copy was provided to me via email from debtors council in May of 2011) and my Telemarketing Manager performance appraisals (Exhibit R and S) in there was nothing that would keep them from entering into a" interactive process" (1). I had nothing in my employee file that would prohibit them from giving me a interview. Except the fact that I was on leave of absence because of medical reasons. I was never engaged in the "Interactive Process". (1)

Times/Tribune have discriminated against me on the basis of mental disability in violation of California Government Code, Section 12941, by engaging in a course of conduct which included failing to accommodate my disability and then terminating/retiring me. The Reorganized Debtor's have not given any other viable reason for my termination/retirement.

   I was hired by the Times, on or about 1987 and was an employee until I was forced into retirement/terminated (actual date is in question supra ) At all times herein mentioned, the *public Policy of the State of California, pursuant to California Government Code Section 12940 et.seq. At all times material hereto, I was an employee, covered by California Government Code, Section 12926©, and as such, barred from discriminating in employment decisions on the basis of mental disability as set forth in California Government Code, Section 12941*. This pubic policy is to prohibit an employer from discriminating against and/or discharging an employee because of the employee's mental disability. Notwithstanding the public policy of the State of California, defendants have discriminated against me by failing to accommodate me and then terminating me at least in part because of my disability.

   I would like to cite (exhibit D Doc 13936-5 claim no. 7092) in it's entirety, my case with the Superior Court of California Case No. 56-2011-00404806-CU-WT-VTA and all like. Carol Walker, Plaintiff, vs. THE LOS ANGELES TIMES, a business entity unknown; TRIBUNE COMPANY, a business entity unknown; DOES; 1-20 inclusive. As filled in (Docket 13936-5 exhibit D)

Also mentioned on page 15 of 29  30;  "Times wrongfully terminated Ms. Walker's employment at the Times/Tribune when it treated her as having retired effective February 28, 2010.  Many dates listed as fact in this Document 13936 are very much in question as to their accuracy. As mentioned supra throughout this document Please note the discrepancy in the following documents;

 Exhibit (P )  Hewett report   dated 03/04/2010 stating " You can't change or cancel your retirement because you haven't started the retirement process "

Exhibit (Y)  Cobra Notification dated 03/18/10  Qualifying Event 03/01/10  Qualifying Event: TERMINATION OF EMPLOYMENT  As of March 03/18/10 I was still listed as a Termination not a Retiree.

Exhibit (N)  "Your Profile" dated 03/04/2010 Unpaid LOA

Exhibit (F)   Doc. 13936-7  December 29, 2009 letter from Marcello Sawyer
        "You will be terminated from our system and your medical benefits will
        cease effective January 1, 2010.

Exhibit (G)  Doc. 13936-7 Jan. 14, 2010 letter from John Futoran to Marcello Sawyer
        "Ms. Walker is an employee of the L.A. Times.  She has been on unpaid    1
        leave of absence since becoming disabled and Being taken off of work by
        her physician.  As accommodation for her disability, the L.A. Times has
        continued to keep her on the rolls as an employee and has continued to
        pay her health insurance premium.    If the L.A. Times is taking the
position that these  accommodations are no longer reasonable, they are **under an affirmative obligation to engage in the "Interactive Process"**1 to determine if other reasonable
        accommodations are available that would allow her to perform the essential
        functions of her position.
        So, please reinstate the previously provided reasonable accommodation
        (unpaid leave; paid health benefits), identify possible positions she could
        perform, identify the essential functions of those positions and engage in
        the timely, good faith interactive process to identify what, if any reasonable
        accommodation would be required to enable her to return to work."

## II.   The Walker Claims should be Disallowed as Untimely

        As soon as I received notification of being terminated January 02, 2010.  I immediately went to Mr. Futoran, Sr. for help.  He then sent a letter January 14, 2010 (Exhibit G) ¶3 "She has been out on unpaid leave since becoming disabled and being taken of work by her physician.  As accomodtion for her disabiliy, the Times has continued to keep her on the rolls as an employee and has continued to pay her health insurance premium." "If the Times is taking the position that these accommodations are

22

no longer reasonable, they are under an affirmative obligation to engage in the interactive process to determine if other reasonable accommodations are available that would allow her to perform the essential functions of her position." ¶6 "Please reinstate the previously provided reasonable accommodation (unpaid leave;paid health benefits), identify possible positions she could perform, identify the essential functions of those positions and engage in the timely, good faith interactive process to identify what, if any, reasonable accommodation would be required to enable her to return to work.

Please reference Exhibit I letter from Mr. Mills to Amy Foran, Mar. 30, 2010  In his letter he list in essence what claim No. 7092 Raises.  ¶ 6"Whether this matter is analyzed as an accommodation issue or detrimental reliance, I believe The times should take responsibility for the situation and ask that you take whatever steps are necessary to assure the family's medical coverage is maintained.  Ms. Walker informs me she is ready , able and willing to return to work if that is what it takes to accomplish the goal.  Please also be informed that she applied for an open telemarketing management position with The Times at Rancho Dominguez on June 12, 2000 but was not re-instated.  She also submitted a resume to Scott Timmons of the Times recruiting on March 10, 2010."

I am in an ongoing  informal back and forth with the Debtors counsel to try to both agree on a solution since January of  2010.  I was informed that I can't have a case in both California and the Bankruptcy court, that it was precluded.  I don't know what else I could have done to be more timely.  I have been very active in doing things as quickly as possible.  I never anticipated  that it would take this long to plead my case.

To my knowledge no new charges have been brought forward.

III      Since my claim in not based on free healthcare in perpetuity as falsely brought into evidence by the "Reorganized Debtors" the objection brought forth in 36,37and 38 is irrelevant and should be discarded.

    a) Ms. Walker is No Longer Eligible for Continued Benefits because her Eligibility for LTD Leave Terminated in 1997. Reorganized Debtors'

Many dates and facts presented in this Document 13936 by the Reorganized Debtors' are subject to question and are False in many instances.  As proven throughout the objection supra.  As exampled bellow:

    (Exhibit AA) **January 13, 2000** letter from Judy Wong employee Benefits the Los Angles Times, ¶ 1 "According to our records, you are still on disability leave of absence."

23

(Exhibit AB) **March 30, 2000** letter from Karon Gilles, Employee Benefits
"According to our records, you have been on disability leave since 7/28/94.

40,41 and 42. My allegation of of Detrimental Reliance is first brought into light in the
(Exhibit G in Doc. 13936) Letter from John A. Futoran to Marcello Sawyer, Jan. 14,
2010. "Ms. Walker is an employee of the L.A. Times. She has been on unpaid leave
since becoming disabled and being taken off of work by her physician. As
accommodation for her disability, the L.A. Times has continued to keep her on the rolls
as an employee and has continued to pay her health insurance premium." My income
was drastically reduced when I was unable to work. I relied heavily on the ability to
provide healthcare for my family. My husband is an independent contractor that does
not have access to healthcare. If I had not continued to receive healthcare for all those
years, he might have made other employment decisions. Since the 100% payment of the
premiums were ongoing and even though I was left on the employment list in 1997 and
in 2000 I was under the reasonable believe that it would continue. Now at this time in
our lives healthcare is a primary concern and expense.

(Exhibit I Doc. 13936) March 30th. 2010 letter from Maury Mills to Amy Foran.
"Because of the events of 1994 surrounding the closing of the "Gold Coast" office and
the related depression she was suffering, Ms. Walker believed the Times was doing the
right thing and keeping her as an employee with paid benefits. That belief was
supported by numerous communications from the Times to her address as "Dear
Employee."
"Based on the foregoing, I believe that Ms. Walker held a reasonable belief that she
continued to be an employee. Based on that reasonable belief she took no steps to look
for other insurance for the family. But for the Times keeping her as an employee with
medical coverage, she long ago could have sought alternative medical insurance, which
insurance is now prohibitively expensive."

If I had been reinstated as I had asked for, I would not be similarly-situated as a retiree.
I hopefully would be an active employee with an income. I would finally be off of
Disability. This last four years have been a nightmare for me. Everyday looking on
computer to read Dockets and other information I don't understand. Waiting months on
end to see if I have to appear in court across the country. Not knowing until one or two
days before I would have to leave. I The injury has been ongoing.

   Detrimental reliance is a term commonly used to force another to perform their obligations under a
contract, using the theory of promissory estoppel. Promissory estoppel may apply when the following
elements are proven:
   •A promise was made
   •Relying on the promise was reasonable or foreseeable

24

•There was actual and reasonable reliance on the promise

•The reliance was detrimental

•Injustice can only be prevented by enforcing the promise

Detrimental reliance must be shown to involve reliance that is reasonable, which is a determination made on an individual case-by-case basis, taking all factors into consideration. Detrimental means that some type of harm is suffered.

## IV.    THE TIMES IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON MS. WLAKER'S WRONGFUL TERMINATION CLAIMS

As it has been well established in this Response, I am in propria persona and don't pretend to know all the intricacies in the laws involving my case.  I am siting the information in (Exhibit AM) written by Ms. Ramit Mizzahi as some additional legal substantiation to my case.   This article has open access by the Washington College of Law Journals & Law Reviews at Digital Commons @ American University Washington College of Law.  It has been accepted for inclusion in Labor & Employment Law Forum by an authorized administrator of Digital Commons @ American University Washington College of Law.

43.    Claim no. 6601 and all subsequent clams states as its basis "Wrongful Termination," The sole focus of my case was not for free healthcare as stated by the Reorganized Debtors, but for me to retain a position with the Times/Tribune.

As clearly stated in the March 30, 2010 letter from Mr. Mills to Ms. Foran (Exhibit I) Doc 13936-10 "She also submitted a resume to Scott Timmons of the Times recruiting on March 10, 2010. see exhibit (I and J) copy of resume and gmail. Sent March 10, 2010 (as previously mentioned in Correction and Clarification of Kearney Declaration) **Mr. Timmons in doing the minimum amount of due diligence would see on my resume employment history 3/92-Present :Telemarketing Manager, Los Angeles Times currently on LOA** he would go to my employee file and see that I had a  satisfactory evaluation and had received many awards and certifications. (exhibit   ) He would also see that I had been on Long Term Disability leave. **To this date I have not been given a reasonable explanation as to why I was not given a chance to return to work, at least given the chance to enter into an  "Interactive Process" 1 to regain any job with the Times.  I wanted so much to gain back control of my life.** in (Exhibit J) Doc 13936-10 April 5, 2010 letter from Maury Mills to Amy Foran. " Ms. Walker has now been contacted by the Tribune Company via form letter Exhibit(AE) "As a result of your recent retirement, you will no longer be eligible to participate in the active group insurance plans, the reimbursement accounts or the group legal plan.  The following information applies to you, if you were actively participating in these plans.  You will receive information directly from Ceridian on how to continue

25

your group insurance coverage.

**(1)The employer also has a duty to engage in an"interactive process" 1 with employees about potential accommodations.  It is unlawful for an employer to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or know medical condition." (Government Code §12940et.seq)**

Notwithstanding the public policy of the State of California, defendants have discriminated against me by failing to accommodate me, not interring into an "interactive process"1 and then terminating me at least in part because of my disability.

44. Many statements made by the Reorganized Debtors are facticous. "The Reorganized Debtors assume that Ms. Walker is referring to the submission of her resume to the Times on March 10, 2010, more than three months after she learned that the Debtors had terminated her Continued Benefits and her status as an inactive employee."

a.  March 10, 2010 is NOT more than three months after I had learned that the Debtors had terminated my Continued Benefits and my status as an inactive employee.  I did not receive the first notificaiton of my termination by regular mail until Jan. 2, 2010. (one day after my health benefits were cancelled)  Exhibit (AH) Mr. Futoran stated that I did not receive notification of the February 04 letter from Ms. Foran until March 1, 2010.  I called the Times Telemarketing office imediatly.

b.  The actural date of my retirement is in question:  as per exhibits bellow:
Exhibit (Y)  from CobraService National Service Ctr.
Date of notice ....................................................................................03/18/10
Qualifying Event Termination of employement (not retirement)..........03/01/10
Benefits Termination...........................................................................03/01/10
Exhibit (AF) Certification of Group health plan coverage  date of Certificate
         showing ( termination of employee not retirement)         03/12/10
Exhibit (Z) to Tribune Benefits my letter to contest retirement     03/31/10
Exhibit (AG) "Former employee" life insurance continuation eligiblities

         If the letter is dated March 25th. I would have received it in 4 or 5 days, that would mean I did not receive in untill after the option had already expired. If my date of termination was March 01, 2010.  this very much leaves a question as to what the actural date  I was put on pre65retirment..

26

Exhibit (N) As of March 04, 2010 at 9:24 am I was still listed as Unpaid LOA
Exhibit (P) As of March 04, 2010 9:49 am you can't change or cancel your
          retirement becasue you haven't started the retirement process.
Exhibit (O) As of March 25, 2010 at 1:24 I am listed as Retired
Exhibit (H Doc 13936-9) Letter from Amy Foran to John A. Futoran, 02/04/10
    "We will continue Ms. Walker's benefits through February 28, 2010. No mention
of retirment only termination.
Exhibit (AH) Letter to Ms. Foran from Mr. Futoran stateing I did not receive the
Febuary 4th. Letter from Ms. Foran utill March 1st. "As I said in the letter I have
not taken on formal representation of Ms. Walker. Thus, your letter should have
been sent to Ms. Walker also.

**In the Febuary 04 letter from Ms. Foran no mention of retirement only that
was a "Glitch in the Tracking system. She made no reference to my retirement.
This was the first time after receiving the rejection post card in 2000 (exhibit H)
that any mention of my returning to work was offered by the Times/Tribune.** Only
that they would countinue My benefits through Febuary 28, 2010. The indication was
that I was not considered an employee only a "Glitch" She made no reference to me
intering into a "Interactive process"1 Only like anyone else in the country could I apply
on line. Nothing to accomodate my special circumstance. I do not remember receiving
any notification from the Tribune or Times that I was being retired. I just started to
receive information from the insurance as listed above. I did not even receive the
Febuary 4, letter from Ms. Foran (exhibit H Doc 13936-9) untill March 01, 2010. It
should have been sent directly to me as I had not retained Mr. Futoran. He stated that
clearly in (exhibit G doc. 13936-8) January 14, 2010 letter ¶2.
see Exhibit (AH) March 5, 2010 Letter from John Futoran, Sr. To Ms. Foran. ¶3
**"Stateing I did not receive letter untill March 01, 2010."** ¶4 "She asked me to
inform you of the delay, and of her intention to respond to your parapraph regarding
return to work and to requst an extension of time for her to respond.

**"Moreover, under applicable California law, the Times was under no legal or
contractual obligation to reinstae Ms. Walker's employment at that time."**
My question is, if the Tribune/Times was under no applicable California law, the Times
was under no legal or contractual obligation to reinstate my employment at that time.
Why did they put me on retirment with no direct communicaiton? Why did the date of
my Termination/retirement keep changing? Why did they not enter into an "Interacve
Process"1 as requred in __Calfiornia Government Code Section 12940 et.seq 1__

A.   "The Times Did not Terminate Ms. Walker's Employment in Violation of Public

27

Policy."
45 Yes, California is an at-will employment state. As you state in your objection
"Absent an express or implied agreement otherwise, an employee may be terminated for
any reason, so long as the reason is not <u>discriminatory</u>."

I was hired by the Times in 1997 and was an employee until Spring of 2010. When I was
abuptly listed as retired by the Times/Tribune as mentioned Supra in this response.
(question of actual date of retirment.)

As all times material hereto, I was an employee, covered by the <u>California Government
Code,</u>  prohibiting discrimination in employment on the basis of a mental disability.

Defendants, and each of them, were and are at all times material hereto, employers
within the meaning of the <u>California Government Code, Section 12926©</u>), and as such,
barred from discriminating in employment decisions on the basis of mental disability as
set forth in <u>California Government Code,</u> Section 12941.

Defendants have discriminated against Me on the basis of mental disability in violation
of <u>California Government Code, Section 12941,</u> by engaging in a course of conduct
which included failing to accommodate My disability and then terminating me at least in
part beause of my mental disability.

I ask the Defendants what other information in my file would keep the TimesTribune
from wellcoming me back with open arms.  The telemarketing operation is not that
complicated I had passed my " Managment Contact System" testing before with no
problems and very high scores.  If any new system was being used I should be given the
chance to conqure it as well.

46.  The statement that the Times treated me as having retired based on a legitimate,
lawful reason is just NOT true.  Yes it is true I have not performed any work for the
Times since 1994 and had not returned to work for the intervening years between when
my LTD leave eligibility allegedly ended in May 1997 and when the Times completed
its internal audit and investigation in December of 2009.  I informed the times that I felt
I was capable of working in 2000.  <u>Supra</u> (12) my previous answer Exhibits (D,E,F,G
and H)
I was not given the change to return to work.  I really wanted to.  I felt that I was able to
handle the position.  When I left the interview I was sure I had reclaimed my position.  I
even went so far as to look for places to live in the area.  Before all the upheaval with

28

the closing of the "Gold Coast" office and the firing and laying off of everyone around me. I really enjoyed my job. I liked the fact that I was helping people provide for their families. I liked my diverse crew of people that worked for me. In some cases they were one step away from being homeless. I had done a good job in the "Gold Coast office" and was the only Telemarketing Manager to be asked to move to another office when ours was closing. As fully explained in (Exhibit D Doc. 13936-5) Claim No. 7092 Superior Court of California for the County of Ventura. An explanation of my experience with the Times. I was devastated when I received the postcard stating that I was not put back on active status. I just wanted a chance to prove to myself and my family that I again could provide for them. I wanted to get off Social Security and become a member of society again. I felt I could overcome the dark place I had been in. I had never wanted to be on Social Security in the first place it made me feel very ashamed and worthless.

As has been mentioned in this Response I have also sent a Resume to Scott Timmons (Exhibit I and J) I contacted the Times Telemarketing office (Kelly Rimzy)  213 237 3751 on March 2, 2010 after I had received the letter stating that I could apply for any position as per Ms. Forans letter. (Exhibit H ) Mr. Futorian stateing I did not receive the go ahead to apply in Ms. Forans letter till March 1, 2010.  She gave me Scott Timmons name and number I called him and thus sent my Resume to him via Email (exhibit I, J and K).

TAKE NOTE, I WAS NEVER ASKED BY THE TRIBUNE/TIMES TO APPLY FOR ANY OTHER JOBS OR POSSITONS, see any Doctors, provide any documentation of my disability, pay any premiums. BETWEEN JUNE 2000 AND  MARCH 2010. AS I HAVE ALWAYS STATED "I HAVE DONE EVERTHING THAT HAS BEEN ASKED OF ME"

B. 47 and 48,49,50 and 51   Claim no.7092 and the Walker Complaint was NOT the first time and allegation that I was terminated because of a disability in contravention of the FEHA. was stated and requested numerous times by  me and my representatives prior to the filling of Calm no. 7092 requesting that the Times/Tribune enter into an "Interactive Process"1

(Exhibit G in doc 13936-8) ¶4 On January 14, 2010 Mr. Futoran clearly request" If the L.A. Times is taking the position that these accommodations are no longer reasonable, they are under an affirmative obligation to engage in the **interactive process** to determine if other reasonable accommodations are available that would allow her to preform the essential functions of her position."  "Obviously, the first step would be to identify a position for her. Fortunately, Ms. Walker's prior work experience, record of

superior performance and willingness to accept a new assignment create numerous possibilities for the LA Times to employ her. So, Please reinstate the previously provided reasonable accommodation (unpaid leave; paid health benefits), identify possible positions she could perform, identify the essential f unctions of those positions and engage in the **timely, good faith interactive process** to identify what, if any, reasonable accommodation would be requited to enable her to return to work.

(Exhibit H doc. 13936-9) February 4, 2010 Letter from Ms. Foran stating that a mistake was made in the tracking system and that I was provided my benefits through a "glitch" in the Company's benefit tracking system. As discussed supra this happened twice once in 1997 and again in 2000. Also when Ms. Foran wrote the February 4th. Letter It not entering into a "interactive Process"1 by simply stating I may apply on-line for any open position within the company. As per the company policy I should have been asked to contact Human Resources since I was listed as an employee in their records. (clearly in evidence, supra ) It was very clear to her at that time I had been on leave because of a medical condition. As per evidence in my employment file that was finally provided to me by Debtors Council in May of 2011.

(Exhibit I in doc 13936-8) March 30, 2010 letter from Maury Mills. Mr. Mills sets out to introduce some history stating that in 1994, "Ms. Walker applied for long term disability with the Time's insurance carrier. Thereafter the Times retained counsel for Ms. Walker apply for Social Security Disability which was ultimately granted in Feb. of 1997. Ms. Walker has since that time made efforts to ascertain her employment status with the Times. In May of 2000, in response to an inquiry, she received a letter from the Times confirming her then current medical coverage. (exhibit C ) "Ms. Walker informs me she is ready, able and willing to return to work if that is what it takes to accomplish this goal. So Please also be informed that she applied for an open telemarketing management position with The Times in Rancho Dominguez on June 12, 2000 but was not re-instated. She also submitted a resume to Scott Timmons of the Times recruiting on March 10, 2010." (As proof thereof Exhibit D,E,F,G,H,I,J and K) as mentioned supra in this response. I have also clearly stated in both my resumes that were sent, in 2000 and in 2010. I was a current employee. As stated  supra in this response that doing any due diligence after receiving the resume would result in finding out the ONLY reason that I would not be fit to retain any position at the times would be because of my Disability.
As  Defined under the Social Security act and regulations. Social Security Administration Retirement, Survivors, and Disability Insurance "Notice of Attorney Adviser  Decision-Fully Favorable February 11, 1997   (Exhibit X) Aug 22, 2000 Social Security Administration Retirement, Survivors, and Disability Insurance Important information.  "We recently reviewed the evidence in your Social Security

30

disability claim and find that your disability is continuing." Please note it is cc: Cindy Ratermann, Allsup Incorporated, who is an agent representing the Times. Being paid by the Times to assist them on getting people on Social Security.   Exhibit (AL) Exhibit (AI)
February 20, 1997 letter from Mary Wilson of Allsup, inc. That my claim has been successfully resolved.

My understanding (which is limited) of a prima facie case of wrongful termination based on a violation for the FEHA such claim should not be disallowed and expunged as per the evidence in this response provides. I was never told why I did not receive my position back in 2000 or in 2010. I was qualified as per my employee file. A position was available, or I would not have been asked to send in a resume or apply. Or as Ms. Furan suggested to apply online like anyone else.   The appropriate course would be to go through Human Resources to see what was available and jobs that I could preform with or without additional training.

 It can be said, that the The Times/Tribune were surprised that I was not placed in a position when I asked for it back in 2000. They went so far as to have denial that I could have possibly applied for the position. Be it not for the evidence I have presented them, validating the interview and my request they would still question it's authenticity.

In December 29, 2009 when Marcello Sawyer (exhibit F Doc 13936-7) first notified me of my termination and my health benefits being canceled immediately  it was "cut and dry"  I was off the books and no longer listed as an employee.  No" Interactive Process". nothing just you can go on Cobra for  a limited amount of time.

 After that, Mr. Sawyer must have realized that I had been terminated in error as he called upon Amy Foran, **Senior labor & Employment Counsel with the Tribune.** She then in (exhibit H doc 13936-9)  ¶2 stated that it was all a "Glitch" What does that mean?  ¶4 She states" we will continue Ms. Walker's benefits through February 28, 2010." What is the meaning of that? Am I terminated? No mention of retirement was n given. Why was I not sent her February letter directly, as Mr. Futoran, Sr. had stated in ¶2 of (exhibit G Doc 13936-8). "I have not undertaken formal representation of Ms. Walker".
b) "Ms. Walker has not adequately plead that there was an available Job Position or that She Could perform The Essential Duties of a Job With or without Reasonable Accommodations."
Even if it is considered a "interactive process "1 That she said I could go on the careers-tribune.icims.com/jobs/info. ¶4. that is open to everyone and since I was listed as an employee as per Times/Tribune employment policy and procedures  I should have been

refereed over to Human Resources. Which I was not. No direct interaction took place with me. I did not ask for a particular job, ie Telemarketing or Management position.

When I talked to Kelly Rimzzy on March 2, 2010 one day after receiving the Feb. 4th. Letter from Ms. Foran. The fact that she gave me Scott Timmons name and number indicated that they had positions available. and talking to Scott Timmons (I am not sure of the date. Between March 2 and March 10) when he asked me to send my resume. After he received my resume clearly stating I was a current employee. He did NOTHING with me no interaction at all, no call back NOTHING. Why would that be, other than he knew I was on medical leave? Mr. Timmons would have had a question if I was marked as resently retired why would I be asking for a position now.

I would like to submit (Exhibit D Doc 13936-5) as evidence of a FEHA violation.

To this date I have met all the United States Social Security Regulations requited by law. In accordance with Title 20, Code of Federal Regulations, §404.942 and /or 416.1442 disability commencing July 28, 1994 and ongoing.


52  The need for affordable medical coverage is a primary need and concern for anyone, especially at my age 60 and my husband age 61. Both having pre existing problems. When the initial correspondence arrived stating that the Times had canceled my insurance without any warning or compassion on what a position they were putting us in. Of course my primary concern was Health Care.

I do not (allege), I applied for a position with the Times in March 2010, I did apply for a position see (Exhibit, I, J and K.) This is clearly demonstrated in the Gmail stream dated Mar. 10, 2010. from Me to Mr. Timmons, Referencing the prior call. I don't remember the exact day and time, I called him. I seem to remember calling once before he returned the call. I am sorry I have no proof of the date. The proof I have is that I referenced (Exhibit I)"per his request I am sending my resume."

In my past as a very successful telemarketer and manager. I had done extremely well, receiving many employee of the month awards and accommodations. The fact that I was asked to become a Manager is proof of my abilities and positive attitude. In my employee file my performance evaluation as a Manager stand alone as a reason to give me a chance at either a telemarketer or a Manager or any other job at the Times. (I did not specifically request a Telemarketing Managers position). I simply wanted to have the chance at a job. The Times/Tribune had never before asked me to reapply again after I was rejected in 2000. I applied the morning after, (March 02, 2010) calling Mr.

32

Futorian and receiving the letter via email in the afternoon of March 01, 2010. the delayed letter from Ms. Foran. (Exhibit H doc 13936-).

The mere fact that the Times/Tribune had a Telemarketing operation was proof to me that I was qualified. How much technology could change in the telemarketing world? I might not have worked since 1994 but things in that department do not change that rapidly. I was only asking for the chance and enter into a "interactive process"1 to try I wanted a chance to be productive again. The fact that Kelly Rimzzy (Telemarketing Manager) gave me Scott Timmons number and said to contact him would lead a reasonable person to believe that their was a job available. He then asked me to send a resume. (Exhibit I and K) That again said that they had something available. As mentioned Supra Mr. Timmons would have had to do very little due diligence to see that I was a current employee. Listed on the resume that was emailed to Mr. Timmons was that I was a current employee. I was never given a reason for not being called back.

The question has come up as to when I was actually put in the system as retired. that has been discussed at length supra in this response.   That has no baring on the fact that I was not allowed to have an "Interactive process"1 If I was a employee or a retired employee. I should be given the chance to interact with the powers at be, and see if I had the ability to return to work. That was not done. The question is why? The only answer I can come up with is what was in my file. I have a medical disability. The question would arise, if I was retired in the last day or two why was I asking for a position back. I don't think that my profile had changed on or before March 10th.

## Disability Discrimination

Title I of the Americans with Disabilities Act of 1990 prohibits private employers, state and local governments, employment agencies and labor unions from discriminating against qualified individuals with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of employment. The ADA covers employers with 15 or more employees, including state and local governments. It also applies to employment agencies and to labor organizations. The ADA's nondiscrimination standards also apply to federal sector employees under section 501 of the Rehabilitation Act, as amended, and its implementing rules.

An individual with a disability is a person who:

• Has a physical or mental impairment that substantially limits one or more major life

33

activities;

• Has a record of such an impairment; or

• Is regarded as having such an impairment.

A qualified employee or applicant with a disability is an individual who, with or without reasonable accommodation, can perform the essential functions of the job in question.

54. Of course the Times/Tribune decision to treat me as having retired altered the conditions of my employment.   I wanted to return to active employment, at least the chance to try. How could it not be considered a "adverse employment action"? As stated numerous times <u>supra</u>  that I was not given the chance to return to work.

As clearly brought forward in (Exhibit D  Doc 13936-5) Claim no. 7092 I. 12-15 As a direct and proximate result of Defendants' wrongful conduct, I have suffered and continue to suffer loss of earning, bonuses, deferred compensation and other employee benefits.  I have lost my Life insurance policy Dental and Vision coverage as listed (exhibit C) May 5, 2000 letter from Karon Gilles. embarrassment, humiliation, and mental anguish all to my damages and in amount according to proof. I have only requested 65,000 from the Times/Tribune.

Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring me, from the improper and evil motive amounting to malice, and in conscious disregard to my rights.  I am thus entitled to recover punitive damages from the Defendants discriminatory acts as alleged herein.

Yes, that is true I  obtained health care coverage under the Pre-65 Retiree Benefits Plan and have lost my Dental and Vision coverage.  I now have to pay as of 2014  $618 per Month for health coverage for myself and husband.  I just found out reading this "Reorganized Debtors' supplemental objection to the proofs of claim in the Kearney document. (Exhibit E) Page 6 footnote 7 that the Tribune alleges they have been making like payments.  I was never made aware of any payment of 50% made by the Tribune/Times until stated in the Document.
I would also like to know the standing of the other Pre-65 retires as far as their Life Insurance, stock, vision and dental are concerned. I would like to know how much I would be receiving if I had been given the opportunity to return to work in 2000 and in 2010.

Yes, I agree that the "undisputed facts demonstrate that the Times/Tribune had a business reason for modifying my employment status.  I was discriminated against, hurt financially and emotionally  because of an error made and admitted to by the

34

Tribune/Times. (exhibit E Doc 13936-6)    There is a reason for the law of a "good faith interactive process" 1. I am the prime example. I was left in limbo all those years. If the Tribune/Times had entered into the interactive process I could have moved on with my life and felt that I am a worthwhile productive individual and not let down everyone around me.

55. As I have <u>supra</u> in this response hopefully clarified every allegation put forward to me in all points of this REORGANIZED DEBTORS' SUPPLEMENTAL OBJECTION TO THE PROOFS OF CLAIM FILED BY ME.
I again request that per California CCP Sec. 438 if the court finds my response incomplete that I be granted leave to amend.

As per the Dunzweiler supreme court 1968  267CAL.APP.2d 569 574. California has developed a policy of great liberality in allowing amendments at any state of the proceeding.

I have set forth several grounds to overrule the Debtors' Objection to my claim. Wherefore, I respectfully request that the Court Overrule the Debtors' Objection to my claim. Further, I reserve the right to set forth a more detailed explanation of my claim if needed.

Respectfully submitted, Carol Walker

35