Case 08-13141-KJC

CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS' SUPPLEMENTAL
OBJECTION TO THE PROOFS OF CLAIM

Exhibit AA

January 13, 2000

Letter from Judy Wong
still on disability leave of absence

**Los Angeles Times**

Times Mirror Square
Los Angeles, CA 90053
213 237-5000

January 13, 2000

Ms. Carol H. Walker
3561 W. Hemlock
Oxnard, CA 93035

Dear Ms. Walker:

It has been some time since we have heard from you. According to our rec___ you are still on disability leave of absence. In accordance with our policy, if you have been continuously disabled and unable to perform any job for which you have been trained or educated, your inactive employment status may continue.

If you are still disabled, we need you and your doctor to fill out the enclosed form certifying your continued disability. It's very important that your doctor fax it back to us within the next couple of weeks for review by The Times Medical Director, Joseph M. Hughes, M.D. Our fax number is (213) 237-2350.

**If we don't hear from you and your doctor by January 27** or if you haven't been continuously disabled or are working elsewhere, **your employment with The Times will be reviewed for termination.**

Please call me at (213) 237-5769 if I can be of further help.

Sincerely,

Judy Wong
Employee Benefits

enclosure

(ltdcertupdate)

Case 08-13141-KJC

CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS' SUPPLEMENTAL
OBJECTION TO THE PROOFS OF CLAIM

Exhibit AC

June 6, 2011

Carol Walker Gmail to Jillian Ludwig

# Jillian K. Ludwig

Sidley Austin LLP | One South Dearborn | Chicago, IL 60603
jillian.ludwig@sidley.com | p. 312.853.7523 | f. 312.853.7036

**From:** Ludwig, Jillian
**Sent:** Tuesday, May 17, 2011 11:51 AM
**To:** 'stevewalkergolf@gmail.com'
**Cc:** Robinson, Steve
**Subject:** In re Tribune Company, et al. - Claim of Carol Walker

[Quoted text hidden]

[Quoted text hidden]

**Steve and Carol Walker** <stevewalkergolf@gmail.com>                                    Sun, May 22, 2011 at 5:51 PM
To: "Ludwig, Jillian" <jillian.ludwig@sidley.com>

Thank you for your Email.  I will reply to your request in the next
few days.  Thank you for your consideration.

Carol Walker
[Quoted text hidden]

**Steve and Carol Walker** <stevewalkergolf@gmail.com>                                    Mon, Jun 6, 2011 at 4:07 PM
To: "Ludwig, Jillian" <jillian.ludwig@sidley.com>

Dear Ms. Ludwig,

Thank you, for the email and sending me a copy of my employment file
in it's entirety.  I had requested numerous times as far back as April
2000.
As of today, I have not received a return call from my phone call to
you May 26th.  I will attempt to answer your questions in writing and
trust you will answer mine.

a)  Long-Term disability status, including the date when your LTD salary continuation benefits ceased:
I am not sure what you are asking.  I was under the impression that part of my LTD salary continuation benefits was that my insurance benefits were being paid by the company.  I was never notified of anything differently until 2010.

b)  Any attempts you made to return to active employment with the LA Times prior to when your supplemental health insurance was terminated:
I had a formal interview with Cora Williams for the open Circulation Manager Grade 07 20H12/Rancho Dominguez June 12, 2000.  I received a card several days later stating  "Currently, your credentials are being reviewed in light of our present and future needs."

January 14, 2010 in a letter, from John Futoran Sr., asking to "please reinstate the previously provided reasonable accommodation (Unpaid leave;paid health benefits), identify possible positions she could preform, identify the essential functions of these positions and engage in the timely, good faith interactive process to identify what, if any reasonable accommodation would be required to enable her to return to work."

As soon as I received notification I could re apply for my position. I contacted Kelly Rimzzy of the Los Angeles Times.  I was given Scott Timmons name.  I spoke to him, he ask me for my resume.  I emailed my resume and my subsequent calls were not returned.

In the letter Dated March 30, 2010 from Maury Mills, "I am mindful of the letter from John A Futoran, Sr. categorizing her continued leave of absence as a reasonable accommodation and your response.  Whether this matter is analyzed as an accommodation issue or detrimental reliance, I believe the Times should take responsibility for the situation and ask that you take whatever steps are necessary to assure the family's medical coverage is maintained.  Ms. Walker informs me she is ready, able and willing to return to work if that is what it takes to
accomplish this goal.  Please also be informed that she applied for and open telemarketing management position with the times in Rancho Dominguez, June 12, 2000  but was not re-instated.  She also submitted a resume to Scott Timmons of the Times recruiting in March 2010."

Ms. Ludwig, In closing I need the following from you:

a) The official procedure of the Los Angeles Times regarding an employee going on and off LTD and on and of LOA (i.e. medical clearance, job accommodations, etc.)

b) What is the current pay and benefits for an active employee, also recently retired grade 33 exempt management employee. Employed with the times since 1990.

c) Any other records held by the Times/Tribune regarding me; for example, the interactive process for me to return to active employment, also the debtors books and records that were referred to in the proposed dis allowance in Omnibus Objection 42 Exhibit A.

d) What exactly did Amy Foran mean when she made the following statement in her letter of February 4, 2010? "The benefits provided to Ms. Walker were not a "reasonable accommodation" as you suggest, but rather were mistakenly provided to her through a "glitch" in the company's benefit tracking system." Is this an error or and omission?

I am still on a Pro Se basis and will alert you if my status has changed.

Respectfully,

Carol Walker
[Quoted text hidden]

Case 08-13141-KJC

CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS' SUPPLEMENTAL
OBJECTION TO THE PROOFS OF CLAIM

Exhibit AE

Tribune Company
Dear Former Employee

Tribune Company
435 North Michigan Avenue
Chicago, Illinois 60611

# TRIBUNE

Benefits Service Center
Telephone: 800/872-2222
FAX: 312/222-4644

Dear Former Tribune Employee:

As a result of your recent retirement, you will no longer be eligible to participate in the active group insurance plans, the reimbursement accounts or the group legal plan. The following information applies to you, if you were actively participating in these plans.

**Active Medical, Dental and Vision Plans**
Your active group medical, dental and vision coverage end on your retirement date. You will receive information directly from Ceridian on how to continue your group insurance coverage, and if applicable, your health care reimbursement account, under COBRA.

**PLEASE NOTE: If you elect to continue your medical coverage under COBRA and turn age 65 while on COBRA, you should sign up for Medicare even if you are continuing medical coverage under COBRA. If a Medicare eligible person does not apply for Medicare within their initial enrollment eligibility period, even if they are receiving COBRA, they will be penalized and have to pay higher Medicare premiums and will not be able to enroll in Medicare until Medicare's next general enrollment period. Please contact your local Social Security Administration office for more information on Medicare.**

**Retiree Medical Plans**
You may be eligible to continue medical coverage under our retiree medical plan. Please contact the Tribune Benefits Service Center at 800-872-2222 for more information.

**Life Insurance Plans**
Your life insurance coverage ends on the last day of the month in which you retire. You may choose to convert your basic life insurance and/or convert or port your supplemental, spouse and/or dependent life insurance. The rates are based on age and the amount of coverage. If you would like to convert or port your life insurance coverage, you must call Minnesota Life at 866-293-6047 within 31 days of the last day of the month in which you retire in order to request coverage.

**Accidental Death & Dismemberment Insurance Plans (AD&D)**
Your AD&D insurance coverage ends the last day of the month in which you retire. You may choose to convert your AD&D insurance, your spouse AD&D and your dependent AD&D insurance. The rates are based on age and the amount of coverage. If you would like to convert your AD&D insurance coverage, you must call AC Newman at 877-226-8711 within 31 days of the last day of the month in which you retire in order to request coverage.

**Health Care and Dependent Care Reimbursement Accounts**
You will have until March 31st of the year after your retirement to submit claims for your health care or dependent care reimbursement account. You may submit claims for eligible health care expenses incurred prior to your last day worked and up to the annual amount you elected. Claims for eligible dependent care expenses incurred during the current calendar year may be submitted up to the total amount you had contributed to your account at the time of your last day worked.

**Group Legal Plan**
Your group legal plan through ARAG Group ends on your retirement date. You have 31 days from your retirement date to contact ARAG Group to obtain individual coverage. The member services phone number for ARAG Group is 800-247-4184.

TRIBUNE BENEFITS SERVICE CENTER
800-872-2222
8:00AM – 6:00PM CT, Monday through Friday

Under65

HR99 05/04

Case 08-13141-KJC

CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS' SUPPLEMENTAL
OBJECTION TO THE PROOFS OF CLAIM

Exhibit AF

Date of Cert 03/12/2010
Ceridian HIPAA Certification

Ceridian HIPAA Certification Services
P.O. Box 534022
St Petersburg Fl 33747-4022

161439-00025

CAROL H. WALKER   and/or Other Individual(s) Named Below
3561 W HEMLOCK
OXNARD CA 93035-3113

Date of Certificate: 03/12/2010

## CERTIFICATE OF GROUP HEALTH PLAN COVERAGE

**Name of Employer:**  TRIBUNE COMPANY

**Group Health Plan:**  TRIBUNE COMPANY MEDICAL PLAN

Medical Coverage End Date: 03/01/2010

**Family Status:** FAMILY

| Participant's Name | ID | Waiting Period Begin Date | Medical Coverage Begin Date: |
|---|---|---|---|
| *WALKER, CAROL H | ***-**-**** | | 01/01/1994 |

| Dependent's Name | ID | Waiting Period Begin Date | Medical Coverage Begin Date: |
|---|---|---|---|
| *WALKER, STEVEN | ***-**-**** | | 01/01/1994 |
| *WALKER, ANDREW | ***-**-**** | | 01/01/1994 |

*Employee Curves*

The certificate(s) listed above has completed at least 18 months of creditable coverage

For further information, call the Certificate Hotline: 1-800-525-5249

For Statement of HIPAA Portability Rights see reverse side.          © Copyright 2009 Ceridian Corporation.

Case 08-13141-KJC

CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS' SUPPLEMENTAL
OBJECTION TO THE PROOFS OF CLAIM

Exhibit AG

March 25, 2010
Minnesota Life Insurance Company
Life insurance continuation options

Minnesota Life Insurance Company - A Securian Company
Group Division
400 Robert Street N
St. Paul, MN 55101

March 25, 2010

CAROL WALKER
3561 W HEMLOCK
OXNARD, CA 93035

LIFE INSURANCE CONTINUATION OPTIONS

Thank you for your inquiry regarding continuing your current life insurance policy. You are eligible to continue your term life insurance coverage provided by your former employer under the provisions of your contract.

To continue your coverage, you have 31 days from the date your group term life insurance ended to make your election. Your coverage is eligible for the following option(s).

**Conversion**

- The conversion option allows you to convert your term life insurance coverage to an Adjustable Life Legend contract, which differs from term insurance in that it allows for cash value growth and, if funded appropriately, can be permanent insurance coverage. Review the enclosed conversion information to help you determine coverage amounts, types of coverage that may be converted, premium rates for converted coverage, and application requirements to complete your request.

If you choose to convert any portion of your coverage, please review the following requirements and guidelines.

- Complete the enclosed conversion application.
- Your first quarterly, semiannual, or annual premium must be submitted with your conversion application. Please reference the rates and calculation worksheet included in the packet to determine your premium amount.
- Complete the enclosed Identity Verification form if you are requesting coverage for a dependent under the age of 18 or if you are power of attorney for the employee and/or spouse. Please include a copy of the Power-of-Attorney document(s) if applicable.
- Minnesota Life must receive your conversion application and first premium within 31 days from the date your group term life insurance ended with your employer.

Thank you for your continued interest in Minnesota Life. If you have any questions regarding your option to continue your life insurance, please call us toll-free at (866) 293-6047.

Group Customer Service
Minnesota Life

Enclosures

Case 08-13141-KJC

CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS' SUPPLEMENTAL
OBJECTION TO THE PROOFS OF CLAIM

Exhibit AH


March 05, 2010


John Futoran, Sr. letter to Ms. Foran

Notification of not receiving letter



# LAW OFFICES OF JOHN A. FUTORAN, SR.

674 County Square Drive, Suite 201      Telephone:    (805) 654-8198
Ventura, CA 93003-0442                  Facsimile:    (805) 654-8199

March 5, 2010

Amy M.  Foran
Senior Labor & Employment Counsel
Tribune Company
435 North Michigan Ave.
Chicago, Ill.  60611

Re:  Carol H. Walker:  Employment/Medical Benefits

Dear Ms. Foran:

I am writing in response to your letter of February 4, 2010 regarding
discontinuation of medical benefits and employment of Ms. Walker.

As I stated in my January 14, 2010 letter, I have not taken on formal
representation of Ms. Walker. Thus, your letter should have been
sent to Ms. Walker also.

Unfortunately, I did not realize that Ms. Walker did not have your
letter until the end of February at which time I sent her a copy. Ms.
Walker did not receive notification until March 1, 2010.

She asked me to inform you of the delay, and of her intention to
respond to your third paragraph regarding return to work and to
request an extension of time for her to respond. She is aware that
you want this information and documentation as soon as possible.

Thank you in advance for your consideration.

Very truly yours,

John A. Futoran, Sr.

Gmail

# Tribune Letter: Overpayment of Medical Benefits

**Agassiz Rich** <arich@caemploymentlaw.com>
To: STEVEWALKERGOLF@gmail.com
Cc: jfutoran@caemploymentlaw.com, arich@caemploymentlaw.com

Mon, Mar 1, 2010 at 11:29 AM

Ms. Walker:

As promised, I have attached said letter from the Tribune, dated February 4, 2010, re: *"Overpayment of Medical Benefits."*

If you have any questions or concerns, please do not hesitate to contact our office.

Respectfully,

Ms. Agassiz Rich, Paralegal

**LTR_TRIBUNE.tif**
46K

**Steve and Carol Walker** <stevewalkergolf@gmail.com>
To: aforan@tribune.com

Mon, Mar 1, 2010 at 1:01 PM

[Quoted text hidden]

**LTR_TRIBUNE.tif**
46K

Case 08-13141-KJC

CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS' SUPPLEMENTAL
OBJECTION TO THE PROOFS OF CLAIM

Exhibit AI

February 20, 1997

Allsup, Inc. letter from Mary Wilson



## Allsup Inc.

*Disability Coordination Services*

Allsup Incorporated
Suite 180
16935 West Bernardo Drive
San Diego, CA 92127-1635
Toll Free: (800) 648-3873
(619) 487-1992
FAX: (619) 487-5105

February 20, 1997

Ms. Carol Walker
3561 W. Hemlock
Oxnard, CA   93035

Dear Ms. Walker

I am pleased that your Social Security disability claim has been successfully resolved.

You should soon receive a notice from Social Security giving detailed information about your benefits. You will also be receiving your first check from Social Security around the same time. I would suggest that you deposit this check into your bank account. Your insurance company will be contacting you shortly and will be requesting that you send a portion of this check to them.

Please forward a copy of that Notice of Award/Award Certificate as soon as it is received so that I can review the accuracy of the information it contains and assist with resolving any discrepancies. We will notify your insurance company that your Social Security claim was approved. We will also inform them as to the amount of your retroactive check as well as the amount of your future monthly payment from Social Security.

If you have any questions regarding your Social Security claim, please do not hesitate to contact me.

Sincerely,

Mary Wilson
Senior Claim Consultant

Case 08-13141-KJC

CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS' SUPPLEMENTAL
OBJECTION TO THE PROOFS OF CLAIM

Exhibit AJ

February 11, 1997

Department of Health and Human Services
Notice of Attorney Advisory Decision – Fully Favorable

DEPARTMENT OF
HEALTH AND HUMAN SERVICES             Social Security Administration

Refer to: ~~████████~~                Office of Hearings and Appeals
                                      222 E. Carrillo St. Ste. 206
                                      Santa Barbara, CA 93101
                                      Date:
                                             FEB 1 1 1997

NOTICE OF ATTORNEY ADVISOR DECISION - FULLY FAVORABLE

Carol H. Walker
3561 W HEMLOCK
OXNARD, CA 93035

Recently, you requested a hearing before an Administrative Law
Judge (ALJ). Sometimes we look at claims again before the ALJ
holds a hearing.

A decision has been made in your case in accordance with Title
20, Code of Federal Regulations, § 404.942 and/or 416.1442.
Please read this notice and the decision carefully.

**This Decision Is Fully Favorable To You**

Another office will process the decision and send you a letter
about your benefits. Your local Social Security office or
another office may first ask you for more information. If you do
not hear anything for 60 days, contact your local office.

**If You Disagree With The Decision**

Because this decision is in your favor, we do not plan to hold
the hearing you requested. If you still want that hearing, you
must contact any Social Security office within 30 days of the
date you receive this letter. Your request to go on with the
hearing must be in writing. An Administrative Law Judge will
dismiss the hearing request unless you request that the hearing
proceed.

Once we dismiss the hearing request, you can still ask for a new
hearing before an ALJ. You can do this if you decide later that
you disagree with any part of our decision. Your new hearing
request must be made in writing within 60 days of the date you
receive this letter.

**The Appeals Council May Review The Decision On Its Own Motion**

If an Administrative Law Judge dismisses your request for hearing
following issuance of this decision, the Appeals Council may
decide to review this decision. To do that, the Council must
mail you a notice about its review within 60 days from the date
of the dismissal order. Review at the Council's own motion could
make the decision less favorable or unfavorable to you.

Case 08-13141-KJC

CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS' SUPPLEMENTAL
OBJECTION TO THE PROOFS OF CLAIM

Exhibit AK

February 11, 1997

Allsup Inc. letter regarding fee



**Allsup Inc.®**
*Disability Financial Services*

Boston
San Diego
Orlando
Seattle
Washington, D.C.

Allsup Incorporated
300 Allsup Place
Belleville, IL 62223-8526
Toll Free: (800) 854-1418
(618) 234-8434
FAX: (618) 236-5778
(618) 234-7837

Social Security requires that these forms be filed although we are <u>NOT</u> charging you a fee. Please sign the three copies: <u>retain one for your file,</u> <u>return the other two to me.</u> I will keep one in your file in our office and send the other to Social Security. Thank you for your assistance in this matter.

Case 08-13141-KJC

CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS' SUPPLEMENTAL
OBJECTION TO THE PROOFS OF CLAIM

Exhibit AL

Social Security Administration
notice of disability continuing

**SOCIAL SECURITY ADMINISTRATION**
**RETIREMENT, SURVIVORS, AND DISABILITY INSURANCE**
Important Information

Telephone: (805) 486-4829

Date: AUG 2 2 2000

Claim Number: ~~████████~~

CAROL H WALKER
3561 W HEMLOCK
OXNARD  CA    93035

We recently reviewed the evidence in your Social Security disability claim and find that your disability is continuing.    Here is some important information about your claim.    We have also enclosed information about working that explains some of the terms we use.

Your claim will be reviewed from time to time to see if you are still eligible for benefits based on disability or blindness.  When your claim is reviewed, you will be contacted if there is any question as to whether your eligibility continues.

If you are receiving Supplemental Security Income payments, any decision about that claim will be sent to you in a separate notice.

Things to Remember

You must tell us right away about any changes that may affect your benefits.    If you don't, you may have to repay any benefits you are not due.  Let us know if:

- o    You went to work since your last report or you return to work in the future (no matter how little you earn); or

- o    You already reported your work, but your duties or pay changed.    (Remember to keep records of your work and earnings such as pay statements from your employer.); or

- o    Your doctor says your condition has improved (even if you don't work now); or

- o    You apply for, start getting, or have a change in the amount of worker's compensation or another public benefit; or

- o    You start paying for work expenses related to your disability (for example, you may need special transportation) or the amount you pay for such expenses changes or you no longer pay for such expenses. (Remember to keep proof of payment for any work expenses.)

(SSA-L1013)

Case 08-13141-KJC
CAROL WALKER'S RESPONSE TO
REORGANIZED DEBTORS' SUPPLEMENTAL
OBJECTION TO THE PROOFS OF CLAIM

Exhibit AM

LEAVE AS A RESONABLE ACCOMMODATION
UNDER THE AMERICANS WITH DISABILITIES ACT
By Ramit Mizzahi
Allred, Maroko & Goldberg
March 2012

# LEAVE AS A REASONABLE ACCOMMODATION UNDER THE AMERICANS WITH DISABILITIES ACT

**Ramit Mizrahi**
**Allred, Maroko & Goldberg**
**March 2012**

## I.    INTRODUCTION

All too often, employers assume that if employees have exhausted their twelve weeks of leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the employees are not entitled to additional leave time and can be terminated if they cannot return to work immediately. However, even if an employee's leave is no longer covered by the FMLA (or was not covered in the first place), other protections may apply, including those created by the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.* This article explores leave as a reasonable accommodation under the ADA.[1]

## II.    LEAVE IS A RECOGNIZED REASONABLE ACCOMMODATION UNDER THE ADA

It is well-settled that leave can be a reasonable accommodation under the ADA. The EEOC has spoken extensively about the topic. *See* Written Testimony of Brian East (Senior Attorney, Texas Disability Rights) ("East Testimony") (June 8, 2011), http://www.eeoc.gov/eeoc/meetings/6-8-11/east.cfm, Section 1 (collecting EEOC sources in which leave as a reasonable accommodation is discussed). For example, in its Interpretive Guidance on Title I of the ADA ("Interpretive Guidance"), the EEOC identifies as possible reasonable accommodations "permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment." 29 C.F.R. Pt. 1630 App. § 1630.2(o).

Leave has also been explicitly identified as a reasonable accommodation under the ADA in nearly every circuit. *See, e.g., Garcia-Ayala v. Lederle Parenterals, Inc.* 212 F.3d 638, 648-50 (1st Cir. 2000); *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 185 & n.5 (2d Cir. 2006); *Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 671 (3d Cir. 1999); *Myers v. Hose*, 50 F.3d 278 (4th Cir. 1995) (rejecting unaccrued paid leave as a reasonable accommodation, but citing with approval the EEOC Interpretive Guidance regarding unpaid leave and accrued paid leave as reasonable accommodations); *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781-83 (6th Cir. 1998); *Haschmann v. Time Warner Ent Co.*, 151 F.3d 591, 601 (7th Cir. 1998); *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 n.3 (8th Cir. 1999); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 967 (10th Cir. 2002); *Holly v. Clairson Indus, LLC*, 492 F.3d 1247, 1263 (11th Cir. 2007); *Taylor v. Rice*, 451 F.3d 898, 910 (D.C. Cir. 2006).

---

[1] This paper will not cover other statutes which may entitle an employee to leave, including Title VII of the Civil Rights Act of 1964, state analogs to the FMLA, ADA, and Title VII, state workers compensation statutes, or other state statutes that provide for pregnancy, parental, bereavement, and other such leaves.

## III.    ADA LEAVE COVERS SITUATIONS WHERE FMLA LEAVE DOES NOT APPLY

In order for an employee to be entitled to leave under the FMLA, he must be deemed an eligible employee, and must: (1) have been employed by a covered employer for at least 12 months; (2) have had at least 1,250 hours of service during the 12-month period immediately before the leave started; and (3) be employed at a worksite where the employer employs 50 or more employees within 75 miles or at a public agency, public school board, or elementary or secondary school. 29 C.F.R. §§ 825.104; 825.110; 825.600.

The ADA poses no such requirements. Instead, a qualified employee with a disability may be entitled to leave as a reasonable accommodation under the ADA even if:

- The employer has less than 50–but at least 15–employees;
- The employee has not worked at the company for twelve months;
- The employee has not worked at the company for the requisite 1250 hours; or
- The employee has already exhausted twelve weeks of FMLA leave.

The only basis for a denial of leave as a reasonable accommodation is through a showing that it would be an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). Thus, a qualified individual with a disability is entitled to additional leave time beyond the twelve weeks permitted under the FMLA so long as that additional leave time would not constitute an undue hardship on the employer.[2] See 29 C.F.R. § 825.702(b) ("[T]he ADA allows an indeterminate amount of leave, barring undue hardship, as a reasonable accommodation.").

## IV.    THE ADA OPERATES INDEPENDENTLY OF THE FMLA

### A.    A Request for Leave Is a Triggering Event with Respect to the ADA.

When an employee requests time off for a reason related or possibly related to a disability, the employer should determine the employee's rights under all of the relevant statutes. See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA ("Reasonable Accommodation Guidance") (Oct. 17, 2002), http://www.eeoc.gov/policy/docs/accommodation.html, at Q&A 21. The request should be deemed one for a reasonable accommodation under the ADA as well as a request for FMLA leave. The Family and Medical Leave Act, the Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964 ("FMLA, ADA, and Title VII") (1995), http://www.eeoc.gov/policy/docs/fmlaada.html, at Q&A 16. Thus, the employer should "initiate an informal, interactive process with the individual with a disability. . . [to] identify the precise

---

[2] A person with a "serious health condition" eligible for FMLA is not necessarily a "qualified individual with a disability" entitled to ADA protections; each statute has its own requirements for coverage.

**Leave as a Reasonable Accommodation under the ADA** – Ramit Mizrahi                                    2

limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

## B.    The Greater Protection Applies to Cover the Employee.

Given that the ADA and FMLA operate independently of each other, "[a]n employer must therefore provide leave under whichever statutory provision provides the greater rights to employees." 29 C.F.R. § 825.702(a). For example, although the FMLA permits the employer to place an employee returning from a covered leave in an "equivalent" position, 29 C.F.R. § 825.215, the ADA requires that the person returning from leave be returned to her original position. Reasonable Accommodation Guidance, at Q&A 21, Example B.[3] Therefore, an employee covered by both statutes would need to be returned to her original position following a return from a medical leave, absent the employer demonstrating undue hardship.

The following examples, found at 29 C.F.R. § 825.702(c), illustrate the interplay between the statutes and are therefore quoted at length:

(1) A reasonable accommodation under the ADA might be accomplished by providing an individual with a disability with a part-time job with no health benefits, assuming the employer did not ordinarily provide health insurance for part-time employees. However, FMLA would permit an employee to work a reduced leave schedule until the equivalent of 12 workweeks of leave were used, with group health benefits maintained during this period. FMLA permits an employer to temporarily transfer an employee who is taking leave intermittently or on a reduced leave schedule for planned medical treatment to an alternative position, whereas the ADA allows an accommodation of reassignment to an equivalent, vacant position only if the employee cannot perform the essential functions of the employee's present position and an accommodation is not possible in the employee's present position, or an accommodation in the employee's present position would cause an undue hardship. . . .

(2) A qualified individual with a disability who is also an "eligible employee" entitled to FMLA leave requests 10 weeks of medical leave as a reasonable accommodation, which the employer grants because it is not an undue hardship. The employer advises the employee that the 10 weeks of leave is also being designated as FMLA leave and will count towards the employee's FMLA leave entitlement. This designation does not prevent

---

[3] An employee who is granted leave as a reasonable accommodation under the ADA is "entitled to return to the same position unless the employer demonstrates that holding open the position would impose an undue hardship." Reasonable Accommodation Guidance, at Q&A 18. It is the EEOC's position that if holding the position open would be an undue hardship, or the employee is no longer qualified to hold the position, the employer must reassign the employee to a vacant equivalent position for which he or she is qualified. Id. at Q&A 21. If such a position is unavailable, then the employer must reassign the employee to a vacant position at a lower level if one is available. FMLA, ADA, and Title VII, at Q&A 14.

**Leave as a Reasonable Accommodation under the ADA** – Ramit Mizrahi                    3

the parties from also treating the leave as a reasonable accommodation and reinstating the employee into the same job, as required by the ADA, rather than an equivalent position under FMLA, if that is the greater right available to the employee. At the same time, the employee would be entitled under FMLA to have the employer maintain group health plan coverage during the leave, as that requirement provides the greater right to the employee.

(3) If the same employee needed to work part-time (a reduced leave schedule) after returning to his or her same job, the employee would still be entitled under FMLA to have group health plan coverage maintained for the remainder of the two-week equivalent of FMLA leave entitlement, notwithstanding an employer policy that part-time employees do not receive health insurance. This employee would be entitled under the ADA to reasonable accommodations to enable the employee to perform the essential functions of the part-time position. In addition, because the employee is working a part-time schedule as a reasonable accommodation, the FMLA's provision for temporary assignment to a different alternative position would not apply. Once the employee has exhausted his or her remaining FMLA leave entitlement while working the reduced (part-time) schedule, if the employee is a qualified individual with a disability, and if the employee is unable to return to the same full-time position at that time, the employee might continue to work part-time as a reasonable accommodation, barring undue hardship; the employee would then be entitled to only those employment benefits ordinarily provided by the employer to part-time employees.

29 C.F.R. § 825.702. (Further examples can be found in sections (b) through (e).)

## V.    A REQUESTED ACCOMMODATION MUST BE GRANTED UNLESS IT WOULD CAUSE THE EMPLOYER AN UNDUE HARDSHIP

### A.    The ADA Requires A Fact-Specific, Individualized Inquiry to Determine Whether a Requested Accommodation Must Be Provided.

An employer must provide a reasonable accommodation to a qualified employee under the ADA unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 42 U.S.C. § 12112(b)(5)(A); *see also* 29 C.F.R. § 1630.9(a). A requested accommodation would impose an "undue hardship" where it requires "significant difficulty or expense." 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1630.2(p)(1).

The ADA requires an interactive, fact-specific process to be used in determining whether an accommodation is reasonable or would impose an undue hardship. The following factors are to be considered:

(i) The nature and net cost of the accommodation needed under this part, taking into consideration the availability of tax credits and deductions, and/or outside funding;

(ii) The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation, the number of persons employed at such facility, and the effect on expenses and resources;

(iii) The overall financial resources of the covered entity, the overall size of the business of the covered entity with respect to the number of its employees, and the number, type and location of its facilities;

(iv) The type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and

(v) The impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.

29 C.F.R. § 1630.2(p)(2).

According to Christopher Kuczynski, Assistant Legal Counsel, EEOC, cost is rarely asserted by employers as the basis for a claim of undue hardship. Written Testimony of Christopher Kuczynski ("Kuczynski Testimony") (June 8, 2011), http://www.eeoc.gov/eeoc/meetings/6-8-11/kuczynski.cfm. Instead, "[i]n certain circumstances, undue hardship will derive from the disruption to the operations of the entity that occurs because the employer can neither plan for the employee's return nor permanently fill the position." Reasonable Accommodation Guidance, at Q&A 44.

In addition to the payroll costs incurred in having an employee on leave (for example, the additional costs of hiring a temporary employee), the following may be incurred:

- Significant losses in productivity because work is completed by less effective, temporary workers or last-minute substitutes, or overtired, overburdened employees working overtime who may be slower and more susceptible to error;
- Lower quality and less accountability for quality;
- Lost sales;
- Less responsive customer service and increased customer dissatisfaction;
- Deferred projects;
- Increased burdens on management staff required to find replacement workers, or readjust workflow or readjust priorities in light of absent employees; and
- Increased stress on overburdened co-workers.

Written Testimony of Ellen McLaughlin (Partner, Seyfarth Shaw LLP) ("McLaughlin Testimony") (June 8, 2011), http://www.eeoc.gov/eeoc/meetings/6-8-11/mclaughlin.cfm, Section F (citing Mercer Health, Productivity, and Absence Management Programs 2006 Survey Report; Mercer 2010 Survey on the Total Financial Impact of Employee Absences).

**Leave as a Reasonable Accommodation under the ADA** – Ramit Mizrahi                    5

Thus, a leave is more likely to be deemed an undue hardship the more complex the nature of the employee's work, the more difficult it would be to replace the employee, or the more difficult it would be to redistribute that employee's work.[4]

According to the EEOC, an employer cannot base an assertion of undue hardship on the negative effect an accommodation would have on the morale of other employees, but may claim undue hardship when the accommodation sought would be "unduly disruptive" to other employees' ability to do their jobs. Reasonable Accommodation Guidance. Where an employee has already received a 12-week FMLA leave and seeks additional time, "[t]o evaluate whether additional leave would impose an undue hardship, the employer may consider the impact on its operations caused by the employee's initial 12-week absence, along with the undue hardship factors specified in the ADA." FMLA, ADA, and Title VII, at Q&A 12.

**B.    The Employee Need Only Show That a Requested Accommodation Is Generally Reasonable; It Is the Employer's Obligation to Demonstrate Specifically That a Request Would Create an Undue Hardship.**

An employee requesting a reasonable accommodation, such as a leave, need only show that the requested accommodation is "reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002). Once that is accomplished, the employer must either grant the request, or "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances."[5] *Id.* at 402. As explained by the EEOC's Interpretive Guidance:

> Whether a particular accommodation will impose an undue hardship for a particular employer is determined on a case by case basis. Consequently, an accommodation that poses an undue hardship for one employer at a particular time may not pose an undue hardship for another employer, or even for the same employer at another time. Likewise, an accommodation that poses an undue hardship for one employer in a particular job setting, such as a temporary construction worksite, may not pose an undue hardship for another employer, or even for the same employer at a permanent worksite.

29 C.F.R. Pt. 1630 App. § 1630.15(d). This can make it difficult to look to case law for guidance.

## VI.    AN INFLEXIBLE MAXIMUM LEAVE POLICY CAN VIOLATE THE ADA

Because the employer has an obligation to assess each requested accommodation on a case-by-case basis, it may not apply a maximum leave policy (under which employees are

---

[4] If an employer has vacancies for comparable positions, it may have a more difficult time demonstrating that permitting the employee a leave would be an undue hardship. *Cf.* Transcript of EEOC Meeting of June 8, 2011 to Examine Use of Leave as a Reasonable Accommodation (comment by Stuart Isler that he asks employers whether they have vacancies when they are considering whether to terminate an employee seeking leave as an accommodation).

**Leave as a Reasonable Accommodation under the ADA** – Ramit Mizrahi                6

automatically terminated after they have been on leave for a certain period of time) to an employee with a disability who needs additional leave, unless there is another effective accommodation or granting the additional leave would cause an undue hardship. Reasonable Accommodation Guidance, at Q&A 17. "Modifying workplace policies, including leave policies, is a form of reasonable accommodation." *Id.*; *see also Barnett*, 535 U.S. at 397-98 (stating that an employer may be required to modify a disability-neutral policy so as to create a reasonable accommodation for an employee).

Even if the employer is generous in the amount of leave time it permits as compared to FMLA requirements (for example, permitting employees on short-term disability to be out on leave for a year), a maximum leave policy does not satisfy an employer's obligation to provide a reasonable accommodation to an employee who needs additional leave.

In fact, the EEOC has vigorously challenged such policies. For example, Sears had a maximum one-year leave policy in which any employee who did not return to work at the end of the year was automatically terminated. The EEOC filed suit against Sears in 2004. In 2009, after extensive litigation, the EEOC entered into a $6.3 million consent decree with Sears, which among other things required Sears to:

- Designate a core group of individuals who would review accommodations requests and would have to approve terminations caused by exhaustion of leave;
- Change the way it communicates with employees on medical leave, including informing them by certified mail of their rights to request accommodations, and identifying accommodations options;
- Communicate directly with employees' doctors about possible accommodations; and
- Seek updates from its workers compensation carrier when medical releases are obtained.

*See* Written Testimony of John Hendrickson (Regional Attorney, EEOC) ("Hendrickson Testimony") (June 8, 2011), http://www1.eeoc.gov/eeoc/meetings/6-8-11/hendrickson.cfm.

The EEOC also sued Supervalu over a similar one-year maximum disability leave policy, and entered into a $3.2 million dollar consent decree with the company. The consent decree required that Supervalu hire a consultant to develop a list of accommodations for employees with common restrictions and that it hire a job descriptions consultant to review the company's job descriptions to ensure that they accurately described what was actually done within each position. *Id.*

Thus, to comply with the ADA, an employer with a maximum leave policy should amend its policy to allow an employee who needs additional leave time beyond the maximum amount stated in the policy to take that time so long as it would not create an undue hardship. In addition, throughout the leave process, employers should communicate with employees, physicians, and other to determine whether other accommodations are needed that would enable employees to return to work. *See* Center Testimony. Employers should be careful if they separate leave

**Leave as a Reasonable Accommodation under the ADA** – Ramit Mizrahi          7

administration related to FMLA, workers compensation, or disability benefits from ADA administration because it creates a risk that there will be a lack of information flow between the two. *See Hendrickson Testimony.*

## VII.    A "NO FAULT" ATTENDANCE POLICY CAN VIOLATE THE ADA

Also subject to challenge are "no fault" attendance policies in which employees are subject to discipline for reaching a certain number of absences, regardless of the cause of the absences. Such policies adversely affect people with disabilities, and can evidence a failure to accommodate if they do not make exceptions for individuals whose "chargeable absences" were caused by their disabilities. The EEOC's largest settlement to date has been with Verizon, which recently paid $20 million to settle a nationwide class disability discrimination lawsuit that challenged its no-fault attendance policy. *See* EEOC Press Release: Verizon to Pay $20 Million to Settle Nationwide EEOC Disability Suit, *available at* http://www.eeoc.gov/eeoc/newsroom/release/7-6-11a.cfm.

## VIII.    LEAVES OF VARYING DURATIONS HAVE BEEN DEEMED REASONABLE

As noted above, the ADA does not identify any amount of leave time that would automatically be deemed an undue hardship. As the court explained in *Garcia-Ayala v. Lederle Parenterals, Inc.,* "[t]hese are difficult, fact intensive, case-by-case analyses, ill-served by per se rules or stereotypes." 212 F.3d 638, 50 (1st Cir. 2000); *see also* East Testimony, Section 5 (collecting appellate and district court cases with varying ranges of leave time deemed reasonable); Center Testimony (citing cases that state that lengthy leaves, including in excess of a year, may be found to be reasonable accommodations). While a comprehensive analysis of the case law is beyond the scope of this paper, below are examples of cases in which appellate courts addressed situations where leaves of varying durations were sought as reasonable accommodations.

The following cases found that the requested leaves could be reasonable accommodations:

- In *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638 (1st Cir. 2000), the employee was a clerical worker who took a medical leave of absence for cancer treatment. The court held that that plaintiff's request for an additional two-month leave after 15 months of leave did not constitute an undue hardship. The court pointed to the fact that the company had been using temporary employees to cover in her absence and there was no evidence that they cost the company more or were unsatisfactory in their performance.

- In *Nunes v. Wal-Mart Stores*, 164 F.3d 1243 (9th Cir. 1999), the court reversed summary judgment in a case where the employee, who suffered from fainting episodes, had taken a two-month leave, returned to work for six months, then went out on another leave. She had been on this second leave for approximately eight months and sought an additional one to two months of leave through the

holiday season as a reasonable accommodation. The court noted that the defendant's own policy of allowing eligible employees up to one year of unpaid leave and its regular practice as a large retailer of hiring temporary workers factored into the analysis regarding whether the accommodation sought would impose an undue hardship.

- In *Dark v. Curry Cnty.*, 451 F.3d 1078 (9th Cir. 2006), the court found that there was an issue of material fact regarding whether employee's use of 89 days of accumulated sick leave to allow him to adjust his medication was a reasonable accommodation.

- In *Criado v. IBM*, 145 F.3d 437 (1st Cir. 1998), the employee, whose leave was approved for approximately five weeks, was terminated after employer claimed it had not received paperwork from employee's physician requesting additional time. In affirming a jury verdict in the employee's favor, the court pointed out that the employer provides all employees with 52 weeks of paid disability leave, precluding it from asserting that the requested leave would have created an undue hardship.

- In *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955 (10th Cir. 2002), the employee took a medical leave for approximately six weeks. She was terminated upon her return. In evaluating her ADA claim, the court determinated that where the amount of leave sought by the employee fell within the FMLA leave time the employee was entitled to receive, and therefore it could not conclude that the length was unreasonable or would cause an undue hardship on the employer.

The following cases rejected the requested leaves:

- In *Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 671 (3d Cir. 1999), the court held that it would have been an undue hardship for the employer to extend the employee's unpaid leave beyond the approximately nine weeks already given where the employee was a program director in charge of managing a program and overseeing staff.

- In *Byrne v. Avon Prods. Inc.*, 328 F.3d 379 (7th Cir. 2003), the court rejected a 2+ month leave as a reasonable accommodation. The court stated that extended leaves of absence are not reasonable accommodations because reasonable accommodations are intended to allow an employee to perform his essential job functions and "[n]ot working is not a means to perform the job's essential functions."

- In *Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir. 2000), the court held that where the employee had already received 18 months of leave and was seeking additional time for medical evaluations, said request was unreasonable because the employee could not show that the delay in getting the information was due to

his disability. The employee's request was deemed to be a request for indefinite leave.

## IX.    UNCERTAINTY IS COMMON WHEN IT COMES TO MEDICAL LEAVES

In seeking leave as a reasonable accommodation, the employee need not show that the leave is certain or even likely to be successful to prove that it is a reasonable accommodation, only that it would plausibly enable the employee to return and perform his job. *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001). Oftentimes, an employee (or her physician) cannot give a precise date when she will be able to return to work. Generally speaking, an employer has no obligation to provide an indefinite leave. *See, e.g., Myers v. Hose*, 50 F.3d 278, 280 (4th Cir. 1995) (holding that employer has no obligation to provide an employee with an indefinite leave); *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900 (8th Cir.), cert. denied, 130 S. Ct. 243 (2009) (affirming summary judgment where employee requested an indefinite medical leave and could not say when, if ever, she could return to work); *Monette v. Electronic Data Sys.*, 90 F.3d 1173 (6th Cir. 1996) (holding that it would have been an undue hardship to place an employee on an indefinite leave until another position opened up where the employee had already been on eight months of leave and had not advised his employer of his desire or intentions to return to work); The Americans With Disabilities Act: Applying Performance And Conduct Standards To Employees With Disabilities ("ADA: Performance and Conduct"), http://www.eeoc.gov/facts/performance-conduct.html, at Q&A 21.[5] However, an indefinite leave must be distinguished from one where an employee gives an approximate return date or where the situation changes and the original return date has been revised. *See* ADA: Performance and Conduct, at Q&A 21.

A leave request is not "indefinite" simply because the nature of the employee's condition is such that only an approximate return date is provided. *See Garcia-Ayala v. Lederle Parenterals, Inc.* (1st Cir. 2000) 212 F.3d 638, 648; *see also* East Testimony, Section 9 (citing cases holding that a probable return date is adequate for the purposes of the accommodation being a reasonable one). In *Garcia-Ayala*, the employer argued that because the plaintiff's "doctor could not give absolute assurances that she would be fit to return to work [on the stated return date], the request was per se for an indefinite leave and so was unreasonable." *Id.* The appellate court rejected this argument:

---

[5] *But see Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 782 (6th Cir. 1998) (quoting with approval the following language from *Norris v. Allied-Sysco Food Services, Inc.*, 948 F.Supp. 1418, 1439 (N.D. Cal. 1996), where the district court made the following observation: "Upon reflection, we are not sure that there should be a per se rule that an unpaid leave of indefinite duration (or a very lengthy period, such as one year) could never constitute a 'reasonable accommodation' under the ADA."). An employer may be hard-pressed to explain why it would be an undue hardship to allow an employee an indefinite leave if the person is working in a position where she has numerous peers and where there is extremely high turnover and/or the role has little specialization.

---

Similarly, the court viewed García's requested accommodation—additional leave time with a specific date for return—as a request that her job be held open indefinitely. Lederle had argued that since García's doctor could not give absolute assurances that she would be fit to return to work on July 30th, the request was per se for an indefinite leave and so was unreasonable. García specified, however, when she would return, and her doctor released her for return several weeks thereafter. There is no evidence that either July 30th or the August 22nd date of medical release, would have imposed any specific hardship on Lederle. Some employees, by the nature of their disability, are unable to provide an absolutely assured time for their return to employment, but that does not necessarily make a request for leave to a particular date indefinite. Each case must be scrutinized on its own facts. An unvarying requirement for definiteness again departs from the need for individual factual evaluation.

*Id.* The EEOC has made the same point: "In certain situations, an employee may be able to provide only an approximate date of return. Treatment and recuperation do not always permit exact timetables. Thus, an employer cannot claim undue hardship solely because an employee can provide only an approximate date of return." Reasonable Accommodation Guidance, at Q&A 44. The EEOC gives the example of an employee who, while originally scheduled for an eight-week leave for surgery, develops complications that then require an anticipated additional ten to fourteen weeks of leave. That additional time would be deemed a reasonable accommodation unless it would cause an undue hardship. *Id.*[6]

Other cases have also found that approximate return to work dates do not make the leave request indefinite. For example, in *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591 (7th Cir. 1998), the court rejected employer's contention that an it would be an undue hardship to give an employee an additional two to four weeks of medical leave on the grounds that the approximate return to work date would create uncertainty. The court pointed out that the employer had not made any inquiry about what accommodations might be needed, and did not make any efforts to independently assess the employee's prognosis and the reasonableness of the request for leave. The court also highlighted evidence that the job had been vacant for many months before the employee had been hired, that the company took almost six months to fill her position after her discharge, and that subordinates handled the job in the interim. Similarly, in *Graves v. Finch Pruyn & Co.*, 457 F.3d 181 (2d Cir. 2006), the court held that a where an employee already on a medical leave asked for "more time" to schedule an appointment with a specialist and said it would take "maybe a couple of weeks," the request was not one for an indefinite leave.

---

[6] In the event that the employee's return date changes, "the employer may seek medical documentation to determine whether it can continue providing leave without undue hardship or whether the request for leave has become one for leave of indefinite duration." ADA: Performance and Conduct, at Q&A 21.

**Leave as a Reasonable Accommodation under the ADA** – Ramit Mizrahi                    11

## X.    "INTERMITTENT" LEAVES AND MODIFIED SCHEDULES CAN BE REASONABLE ACCOMMODATIONS

Sometimes, employees with disabilities seek "intermittent" medical leaves or modified schedules as a reasonable accommodation for their disabilities. These situations are among the toughest for employers to assess, particularly when the leave sought is unplanned. *See* Written Testimony of Edward Isler (Partner, Isler Dare Ray Radcliffe & Connolly, P.C.) ("Isler Testimony") (June 8, 2011), http://www.eeoc.gov/eeoc/meetings/6-8-11/isler.cfm, Section 2; McLaughlin Testimony, Section D.) Again, the analysis is a fact-specific one, and there are no bright-line rules that can be followed. Certainly, some positions are much better suited to flexible hours and schedule than others are.

*Ward v. Massachusetts Health Research Inst., Inc.*, 209 F.3d 29 (1st Cir. 2000) is a prime example of a situation where flexible hours/schedules appear reasonable. In *Ward*, the employee was a lab assistant/data entry assistant. He was often late to work due to arthritis, but each day he put in a full day of work. He sought a flexible schedule that allowed him an exception to the employer's policy that work must begin at 9am each day. The request was rejected and the employee was terminated for tardiness. The court reversed summary judgment in favor of the employer, refusing to hold that a flexible schedule is per se unreasonable or that a modified schedule must be regular or predictable. An employer must show evidence of undue hardship, such as that accommodating the employee would have required shifting duties to a colleague or keeping the lab open at significant cost. *See also Ralph v. Lucent Technologies, Inc.*, 135 F.3d 166 (1st Cir. 1998) (stating that allowing an employee to return to work on provisional, part-time basis for four weeks, even after the employer gave him a year of leave with pay and changed his work assignment and supervisor, was a reasonable accommodation under the ADA).

However, a number of cases have determined that specific requests for leave taken on an as-needed basis would create an undue hardship for employers. Undue hardship is often found where the absenteeism is excessive or where jobs require physical presence at set times:

- In *EEOC v. Yellow Freight Sys. Inc.*, 253 F.3d 943 (7th Cir. 2001) (en banc), the court determined that where the employee was a dockworker–a position that required him to be present at the worksite–and where he had significant absenteeism that was erratic and unpredictable, attendance was an essential function of his job. The court noted that the employee had rejected the 90-day leave of absence offered to him, and had instead sought unlimited absences on an as-needed basis.

- In *Wood v. Green*, 323 F.3d 1309 (11th Cir. 2003), the employee suffered from cluster headaches. He was routinely granted discretionary leaves over the course of several years (usually of one to three month durations) and missed substantial amounts of work throughout that time. He was later terminated one month into a discretionary leave with no termination date. The court held that indefinite leaves are not reasonable accommodations. The court looked to the employee's history of repeated requests for leaves as evidence that there was no indication that he would

be able to return to work within a reasonable time period. The court also held that the fact that he received prior accommodations did not make the accommodation sought reasonable.

- In *Maziarka v. Mills Fleet Farm, Inc.*, 245 F.3d 675 (8th Cir. 2001), the court determined that the accommodation sought by an employee with irritable bowel–the ability to be absent from his position as receiving clerk and to be allowed to make up the time later–would constitute an undue hardship, as the unpredictability interfered with employer's ability to schedule employees to efficiently receive and process merchandise.

- In *Corder v. Lucent Tech., Inc.*, 162 F.3d 924 (7th Cir. 1998), an employee who had repeated, extended, and unpredictable absences due to depression and anxiety over the course of several years was ultimately terminated by her employer. The employer had previously given her numerous extended leaves, adjusted her schedule, and make other work accommodations. The employee requested further leave as needed; the court found this to be an indefinite leave that the employer did not need to provide.

- In *Buckles v. First Data Res., Inc.*, 176 F.3d 1098 (8th Cir. 1999), the court reversed a denial of judgment as a matter of law following a jury verdict in the employee's favor where the employee, who had acute recurrent rhinosinusitis, had sought a workplace free of irritants and unlimited leave so that he could leave work whenever he thought he would be exposed to potential irritants. The court rejected these requests as causing an undue hardship.

- In *Pickens v. Soo Line R.R.*, 264 F.3d 773 (8th Cir. 2001), the employee repeatedly excercised his right to withdraw his name from the list of employees available for job assignments 29 times within a ten month period. The court held that he was not a qualified individual, and his request to work at his discretion was not reasonable.

## XI.    FURTHER GUIDANCE FROM THE EEOC IS FORTHCOMING

As has been reiterated throughout this paper, the requirement that each determination regarding whether to provide leave as a reasonable accommodation be individualized and fact-specific has led to much uncertainty. There is often confusion with respect to whether requested leaves must be granted or whether they may, in fact, be denied as undue hardships. As a result, on June 8, 2011, the EEOC held a public meeting to discuss the subject. Written and oral testimony were provided by EEOC attorneys and counsel representing both employees and employers (this testimony has been cited extensively in this paper). Comments were also solicited from the general public. A written guidance is expected by spring or summer 2012. The written testimony, video of the meeting, and transcripts are available online at http://www.eeoc.gov/eeoc/meetings/6-8-11/index.cfm. They are extremely helpful as we await the EEOC's guidance.

**Leave as a Reasonable Accommodation under the ADA** – Ramit Mizrahi                    13

## XII.   CLOSING

The following are the main takeaway points of this paper:

- An employer must assess a request for a medical leave under all of the applicable statutes, determining which statutes cover the employee and the benefits to which he is entitled.
- The employer must provide the employee with the greater protections of each applicable statute.
- As soon as there is a triggering event (*e.g.*, a request for leave), the employer must engage in the interactive process with the employee, taking steps to determine whether any accommodations exist that would enable the employee to perform the essential functions of his job.
- The determination of whether a requested leave must be granted as a reasonable accommodation or whether it can be denied because it would cause an undue hardship is one which requires a fact-intensive inquiry.
- Employers must think twice about having leave policies that terminate employees once they have exhausted a maximum, pre-determined amount of leave. The fact that the leave time allowed by the policy exceeds the FMLA requirements does not provide a defense where the employer cannot establish that additional leave sought by an employee would create an undue hardship.
- Employers must re-examine "no fault" attendance policies that penalize employees with disabilities for absences related to their disabilities.