# EXHIBIT A

## Supplemental Giannini Declaration

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |

## SUPPLEMENTAL DECLARATION OF VINCENT GIANNINI IN SUPPORT OF REORGANIZED DEBTORS' OBJECTION TO CLAIM NO. 3333 OF KEITH YOUNGE

I, Vincent Giannini, declare as follows:

1.  I am Vice President/General Manager of WPHL, LLC (successor-in-interest to the assets and liabilities of Tribune Television Company that comprise the business and operations of WPHL-TV) ("WPHL"), one of the reorganized debtors in the above-captioned chapter 11 cases (collectively, the "Reorganized Debtors"). In this position, I am responsible for all aspects of the management of WPHL-TV.[2]

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] I also served as Vice President/General Manager of WPHL-TV prior to its emergence from these chapter 11 cases on December 31, 2012, the effective date of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A., which was confirmed by the Bankruptcy Court on July 23, 2012 (see Docket No. 12074). As used herein, the term "Debtors" refers to Tribune

2.  This declaration (the "Supplemental Declaration") supplements my prior Declaration in support of the Reorganized Debtors' Objection to Claim No. 3333 of Keith Younge Pursuant to Sections 502(b) and 558 of the Bankruptcy Code, and Bankruptcy Rules 3001, 3003 and 3007 (Docket No. 13715) (the "Objection").[3] I am directly, or by and through the Reorganized Debtors' personnel and advisors, familiar with the information contained in the Objection, the Original Response filed by Keith Younge, the Original Reply filed by the Reorganized Debtors, the Supplemental Response filed by Keith Younge, and the Supplemental Reply filed by the Reorganized Debtors concurrently herewith. I am authorized to submit this Supplemental Declaration in support of the Objection and the Supplemental Reply.

3.  All matters set forth in this Supplemental Declaration are based on my personal knowledge and information supplied to me by the Reorganized Debtors' personnel. If called upon to testify, I could and would testify competently to the facts set forth herein.

4.  As stated in my prior Declaration, I personally made the decision to terminate Mr. Younge and Mr. Schultz following the altercation that occurred on May 7, 2008. That determination was based upon my consideration of the facts and circumstances involving Mr. Younge's and Mr. Schultz's conduct on the night of May 7, 2008, including the results of the investigation conducted by Shalona Douglas, WPHL's Human Resource Coordinator, and her interviews with Mr. Younge, Mr. Schultz, Mr. Rivera, and other witnesses to the altercation and my review of the video from the surveillance camera located outside the door to the tape prep room from the night of May 7, 2008. I determined that the actions of both men, including the degree to which the yelling, profanity, and, in the case of Mr. Younge, threatening and

---

Company and its affiliates, including Tribune Television Company, that filed voluntary petitions for relief under chapter 11 on December 8, 2008, and "Reorganized Debtors" refers to the successors to the Debtors following their emergence from chapter 11.

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Objection.

intimidating conduct had escalated in this altercation, violated WPHL's Anti-Harassment Policy and the Standards of Conduct and Corrective Action, could not be tolerated in the workplace, and warranted both men's discharge. The race of either individual had nothing to do with my decision.

5. In the Supplemental Response, at paragraph 13, Mr. Younge states, in relevant part, that "the Station knew that Mr. Schultz was a white bigot who used racial slurs, hostility, and disparaging comments, some of which were directed at Mr. Younge personally and solely because Mr. Younge was African American." I did not know Mr. Schultz to be a "white bigot" and I did not know Mr. Schultz to have "used racial slurs, hostility, and disparaging comments" to WPHL's African American employees. I had no knowledge, or reason to know, of any remarks made by Mr. Schultz to or about Mr. Younge prior to their altercation on the night of May 7, 2008, including any remarks that were racially biased in nature.

6. In the Supplemental Response, at paragraph 23, Mr. Younge states, in relevant part, that "Mr. Schultz was known to have . . . exhibited a racial animus while working with the Station." My understanding is that Mr. Younge is referring to a letter in Mr. Schultz's personnel file dated October 21, 1994, a copy of which is attached to the Supplemental Response as Exhibit G (the "1994 Letter"). I have reviewed the 1994 Letter, and have found no statements from which I can conclude that Mr. Schultz "exhibited a racial animus" towards Ms. Klink (or any other person). Ms. Klink, referred to in the 1994 Letter, is Caucasian. Ms. Klink was still employed by WPHL as an Operations Technician during Mr. Younge's tenure as Summer Relief Technician at WPHL.

7. In the Supplemental Response, at paragraph 26, Mr. Younge states, in relevant part, that "Mr. Schultz stated in an email, 'I'm not training no hoop! . . . Where does a hoop

3

get a car like that?'" I was not and am not aware of this alleged email from Mr. Schultz. I have never received or seen such an email, directly from Mr. Schultz or indirectly from any other person at WPHL, either prior to or following the altercation between Mr. Schultz and Mr. Younge on the night of May 7, 2008. No such email appears in WPHL's paper or electronic records maintained in connection with this matter or in Mr. Schultz's personnel file.

8. In the Supplemental Response, at paragraph 43, Mr. Younge states, in relevant part, that "Mr. Schultz has a documented history of using . . . racial slurs (2002), and demeaning other employees of a different race (2002)." My understanding is that Mr. Younge is referring to the alleged September 28, 2002 incident with another employee, Bill Groves, referred to in paragraph 20 of the Supplemental Response. I have reviewed Mr. Schultz's personnel file, including the copy of a letter dated October 4, 2002 from Gunnar Rieger, a former director of engineering of WPHL, to Mr. Schultz that is attached as Exhibit D to the Supplemental Response, concerning that alleged incident (the "2002 Letter"). Based on my review of WPHL's employee records, Mr. Groves is Caucasian.

9. I am not aware of any incident (involving Mr. Groves or anyone else) that occurred in 2002 or around that time in which Mr. Schultz used racial slurs or demeaned another WPHL employee based on their race. The 2002 Letter, which Mr. Younge relies on, makes no mention of any such slurs or racially-motivated conduct by either party. No such incidents are documented anywhere in Mr. Schultz's personnel file, a complete copy of which was provided to the PCHR in response to that agency's request and was attached to the Original Response filed by Mr. Younge. Also, while the 2002 Letter indicates that some profanity was used by both parties at that time, there is no indication in the letter that either individual were found to have made threats or that the incident involved the degree of screaming, yelling, profanity, and

4

disruptive and disorderly conduct as the May 7, 2008 altercation between Mr. Schultz and Mr. Younge. In fact, the 2002 Letter specifically indicates that there was insufficient evidence to substantiate Mr. Schultz's allegation that *he* was threatened by Mr. Groves.

10. In the Supplemental Response, at paragraph 49, Mr. Younge states, in relevant part, that "the Debtor knew that Mr. Schultz has a history of violating company policies, including confrontations with at least one other African American employee." I am not aware of any incident, other than the incident involving Mr. Younge on the night of May 7, 2008, in which Mr. Schultz had a confrontation with any of WPHL's African American employees where it was determined by WPHL that Mr. Schultz violated company policies. No such incidents are documented in Mr. Schultz's personnel file, a complete copy of which was provided to the PCHR in response to that agency's request and was attached to the Original Response filed by Mr. Younge.

[Remainder of Page Intentionally Left Blank]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5 day of September 2014.

By: Vincent Giannini

ACTIVE 203472889v.6