# EXHIBIT A

**Claim No. 6704**

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE<br>Tribune Company Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5069<br>New York, NY 10150-5069 | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor Against Which Claim is Held: Tribune Company | Case No. of Debtor: 08-13141 (KJC) |
|---|---|

Filed: USBC - District of Delaware
Tribune Company, Et Al.
08-13141 (KJC)    0000006704

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Kamakazee Kiwi Corp.
3835 R E. Thousand Oaks Blvd #343
Westlake Village, Ca 91362

Telephone number: (805) 557-0980   Email Address: sorbos@me.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ _____

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

☐ Check this box if claim is for a claim related to goods delivered during the twenty (20) days prior to December 8, 2008 (the "Petition Date"), pursuant to 11 U.S.C. §503(b)(9). Please indicate amount entitled to 503(b)(9) $ _____

2. Basis for Claim: Contracts - attached and highlighted
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: N/A
   3a. Debtor may have scheduled account as: Kevin Sorbo
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $_____   Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

| Date: 2/8/11 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. [signature] V.P. KKC |
|---|---|

FOR COURT USE ONLY

[stamp: RECEIVED FEB 28 2011 EPIQ BANKRUPTCY SOLUTIONS]

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the name of the debtor in the bankruptcy case and the bankruptcy case number. The full list of debtors is provided under the general information section on the Claims Agent's website http://chapter11.epiqsystems.com/tribune.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim. Also, check the appropriate box if all or a portion of your claim qualifies as an Administrative Expense priority under 11 U.S.C. § 503(b)(9) and provide the amount that is related to such priority.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

___DEFINITIONS___

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at one of the following addresses:

*If by first-class mail:*
Tribune Company Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5069
New York, NY 10150-5069

*If by hand delivery or overnight mail:*
Epiq Bankruptcy Solutions, LLC
Attn: Tribune Company Claims Processing Center
757 Third Avenue, 3rd Floor
New York, NY 10017

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.
A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials

___INFORMATION___

of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the Claims Agent's website: (http://chapter11.epiqsystems.com/tribune) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.



Tribune Entertainment Company
5800 Sunset Boulevard
Los Angeles, CA 90028
(323) 460-5800

Dated: as of December 9, 1999

KAMAKAZEE KIWI CORPORATION
c/o International Creative Management, Inc.
8942 Wilshire Boulevard
Beverly Hills, California 90211
Attention: Mr. Steve Wohl

Re:   "GENE RODDENBERRY'S ANDROMEDA"/Exploitation Agreement

Gentlemen:

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, you and we now agree as follows with respect to various aspects of the exploitation of the television series named above (the "Series") to be produced by Andromeda Productions Ltd. ("Producer") and distributed throughout the United States and its territories, possessions and military bases (collectively, the "United States") by us:

1.   Promotional Services.   We hereby engage you to provide such promotional services of Kevin Sorbo ("Kevin") as we may reasonably request and he may approve in connection with our distribution of the Series in the United States, subject to and in accordance with the following understandings:

(a)   For purposes hereof, "promotional services" refers to services (including, but by no means limited to, personal appearance services) in connection with the advertising, publicity and promotion of the Series in the United States;

(b) This agreement covers promotional services to be rendered by Kevin in, and only in, the United States and he shall have no obligation to render any services anywhere outside the United States hereunder;

(c) Kevin shall have the right to approve or disapprove in his sole and absolute discretion the services to be rendered by him hereunder, except only that he may not withhold his approval in bad faith; and

(d) Appearance arrangements for Kevin (including such matters as transportation to and from airports) will be negotiated in good faith between you and us, with the understanding that we will make reasonable efforts to accommodate his wishes and that, without limiting the foregoing, Kevin shall pursuant to such arrangements be entitled to a first class hotel suite (or comparable accommodations), use of two first class roundtrip tickets (by air if appropriate) and a per diem of at least US$100 in connection with each "round" of personal appearances by him.

You hereby accept such engagement and agree that any and all services to be provided by you and rendered by Kevin hereunder shall be performed in a first class manner.

2. Your Compensation. For the services to be provided by you and rendered by Kevin hereunder, you shall be entitled to compensation as follows:

(a) $200,000 upon the execution hereof, receipt of which you hereby acknowledge; and

(b) With respect to each and every episode of the Series, the following:

(i) $30,000 for each first season episode (i.e., each of the first 22 episodes of the Series);

(ii) $33,000 for each second season episode (i.e., each of the 23rd through 44th episodes of the Series);

2

(iii)   $36,300 for each third season episode (i.e., each of the 45th through 66th episodes of the Series);

(iv)   $39,930 for each fourth season episode (i.e., each of the 67th through 88th episodes of the Series); and

(v)   $43,923 for each fifth season episode (i.e., each of the 89th through 110th episodes of the Series); and

(b)   <u>Backend</u>.

(i)   17% of 100% of AGR (i.e., adjusted gross receipts defined as worldwide gross receipts credited to or received by Producer or any of Producer's licensed distribution companies (including, but not necessarily limited to, Fireworks Entertainment Inc. and us and their and our respective affiliated distribution companies) from exploitation of the Series or any of the elements thereof by any means whatsoever, which gross receipts remain after deducting actual out-of-pocket distribution expenses and production costs with 10% overhead and interest at prime-plus-two, but without deduction of any distribution fees whatsoever and with no interest on overhead or overhead on interest) non-reducible; and

(ii)   If the average United States NTI household rating is 3.5 or greater for any season of the Series (i.e., 52-week broadcast year, taking "double runs" into account), then the following non-returnable but fully recoupable advance against the aggregate 20% of 100% participation of Eric Gold ("Eric") and you in AGR (payable promptly following release of the last NTI "ratings book" for the applicable season):

(A)   3.5 to 3.9 NTI -- $150,000;

(B)   4.0 to 4.4 NTI -- $225,000;

(C)   4.5 to 4.9 NTI -- $300,000; or

(D)   5.0 or greater NTI -- $400,000.

3

3. <u>Merchandising.</u> With respect to merchandising uses of Kevin's name, voice and/or likeness (including use in connection with items of merchandise as well as the packaging and advertising therefor), you shall be entitled to an 8% of 100% royalty, reducible by royalties actually paid to other cast members for use of their names, voices and/or likenesses on the merchandise involved to a floor of 5% of 100%, based upon the gross receipts credited to or received by Producer or any of Producer's licensed distribution companies (including, but not necessarily limited to, Fireworks Entertainment Inc. and us and their and our respective affiliated distribution companies) from the uses involved less only their and our actual out-of-pocket costs of generating/collecting the same (i.e., without deduction of fees or commissions of any kind).

4. <u>Other Compensation.</u>

   (a) <u>Eric Gold</u>. We acknowledge and agree that Eric shall be entitled to compensation with respect to the Series as follows:

      (i) <u>Fees</u>.

         (A) $15,000 for each first season episode;

         (B) $15,750 for each second season episode;

         (C) $16,537.50 for each third season episode;

         (D) $17,364.38 for each fourth season episode; and

         (E) $18,232.60 for each fifth season episode; and

      (ii) <u>Backend</u>. 3% of 100% of AGR (defined exactly as set forth in Paragraph 2(b)(i) above) non-reducible.

You have informed us, and we understand, that the sums referred to in (i) and (ii) immediately above are in lieu of any other payments to be made by Kevin or you to or for the benefit of Eric or The Gold/Miller Company in any connection with the Series.

4

(b) <u>ICM</u>. We acknowledge and agree that International Creative Management, Inc. ("ICM"), as "packager" of the Series, shall be entitled to a "packaging fee" with respect to the Series as follows:

(i) 1.5% of the approved production budget for each first season episode, 1.75% of the approved production budget for each second season episode, 2% of the approved production budget for each third season episode, 2.5% of the approved production budget for each fourth season episode and 3% of the approved production budget for each fifth season episode produced; and

(ii) 10% of net profits.

You have informed us, and we understand, that the sums referred to in (i) and (ii) immediately above are in lieu of any other payments to be made by Kevin or you to or for the benefit of ICM in any connection with the Series.

5. <u>Rights</u>. We will own throughout the universe and in perpetuity all rights in and to the results and proceeds of the services to be performed or provided by Kevin and you hereunder, all of which results and proceeds will constitute a work made for hire for us or else will be deemed to have been assigned to us during and from their creation for all purposes hereof.

6. <u>Other</u>.

(a) <u>Publicity</u>. The Lippin Group ("Lippin") has been engaged to handle all publicity for the Series and Kevin shall have the right to approve the individual Lippin publicist in charge of such publicity. Kevin and you shall have the right to consult with us fully, meaningfully and in advance regarding any other public relations firm to be engaged to publicize the Series and the right to approve the individual publicist in charge of such other firm's activities relating thereto.

(b) <u>Security</u>. We shall cause such security to be provided for Kevin's personal appearances hereunder as may be needed in our reasonable determination made in good faith.

5

(c) <u>Disability insurance</u>. We will continue Kevin's disability insurance coverage for each season of the Series at a premium not to exceed $5,000 per year.

(d) <u>Eric travel and attachment</u>. We acknowledge and agree that Eric will be entitled to the use of two first class roundtrip tickets (by air if appropriate) between Las Vegas or Los Angeles and the production location during each season of the Series. Furthermore, Eric will be attached to "spin-offs" (i.e., derivative productions spun off from the Series), with respect to which he will be entitled to a fee and backend to be agreed.

(e) <u>Eric credit</u>. We acknowledge and agree that Eric will be entitled to the following credit in each and every episode of the Series:

(i) "Co-executive producer" credit if such credit is available under applicable CAVCO or co-production treaty regulations; or

(ii) Otherwise, an alternative credit to be agreed between Eric and us;

it being understood that availability of the credit referred to in (i) immediately above shall be determined after all other creative and/or producing credits have been set in good faith.

(f) <u>Construction</u>. This agreement shall be construed in accordance with the laws of the State of California governing contracts entered into and to be wholly performed therein and may be altered only by a writing signed by the party to be bound.

//

//

6

Please confirm your agreement to the foregoing by signing where indicated below.

Very truly yours,

TRIBUNE ENTERTAINMENT COMPANY

By 

Its

Agreed to and accepted:

KAMAKAZEE KIWI CORPORATION

By 

Its  PRESIDENT

As a material inducement for Tribune Entertainment Company to enter into the foregoing agreement (the "Agreement"), I hereby acknowledge and agree that I am familiar with and will benefit from the Agreement, that Kamakazee Kiwi Corporation as my loanout company has full power and authority to enter into the Agreement and that I consent to and approve all of the provisions of the Agreement and shall comply therewith and be bound thereby to the same extent as if I were a direct party thereto.

Kevin Sorbo

7



Tribune Entertainment Company
5800 Sunset Boulevard
Los Angeles, CA 90028
(323) 460-5800

Dated: as of December 9, 1999

MR. KEVIN SORBO
c/o International Creative Management, Inc.
8942 Wilshire Boulevard
Beverly Hills, California 90211
Attention: Mr. Steve Wohl

    Re:   "GENE RODDENBERRY'S ANDROMEDA" / Guarantee

Dear Mr. Sorbo:

Please refer to the agreement in the form of a deal memo dated as of December 9, 1999 between Andromeda Productions Ltd. and you with respect to your acting and other services in connection with the television series named above (the "Agreement").

As a material inducement for you to enter into the Agreement, we hereby acknowledge and agree as follows:

1. We are familiar with the Agreement which is beneficial to us.

2. We shall and do hereby guarantee each and all of the obligations of Andromeda Productions Ltd. under the Agreement, including, but not necessarily limited to, its obligations to render accountings, make payments and accord credit thereunder.

Very truly yours,

TRIBUNE ENTERTAINMENT COMPANY

By _____

Its _____

Tribune Company Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5069
New York, NY 10150-5069

Santa Clarita P&DC 913
FRI 25 FEB 2011 PM

RECEIV-
FEB 28 2011

## EXHIBIT B

**Gupta Declaration**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE MEDIA COMPANY, et al.[1]<br>(f/k/a Tribune Company)<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered |

## DECLARATION OF TONY GUPTA IN SUPPORT OF REORGANIZED DEBTORS' OBJECTION TO CLAIM NO. 6704 OF KAMAKAZEE KIWI CORP.

I, Tony Gupta, declare as follows:

1. I am Director of Financial Systems & Reporting at Tribune Broadcasting Company LLC ("Tribune Broadcasting"), one of the reorganized debtors in the above-captioned chapter 11 cases (collectively, the "Reorganized Debtors"). In this position, I have personal knowledge of the financial records maintained by Tribune Broadcasting and its affiliates, including Tribune Entertainment Company, LLC (f/k/a Tribune Entertainment Company) ("Tribune Entertainment").

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Media Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Content Agency, LLC, LLC (2931); Tribune Content Agency London, LLC (6079); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-11235408v1

2.      I have read the Reorganized Debtors' Objection to Claim No. 6704 of Kamakazee Kiwi Corp. (the "Objection")[2] and am directly, or by and through the Debtors' personnel and advisors, familiar with the information contained therein and the Exhibit attached thereto. I am authorized to submit this declaration (the "Declaration") in support of the Objection.

3.      All matters set forth in this Declaration are based on: (a) my personal knowledge, (b) my review of relevant documents, and (c) information supplied to me by others at the Reorganized Debtors' request. If called upon to testify, I could and would testify competently to the facts set forth herein.

4.      In the ordinary course of its business Tribune Entertainment maintains books and records relating to, inter alia, the financial information of the Show and, by extension, the Agreement. I have reviewed financial records prepared by employees of Tribune Entertainment relating to the Show and these records reflect that no amounts are due and owing to Claimant under the Agreement, particularly for the pre-Petition Date period. On information and belief, these records have been shared by Tribune Entertainment with the Claimant

[Remainder of Page Intentionally Left Blank]

---

[2] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Objection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of November 2014

By: Tony Gupta