# EXHIBIT 1

Proposed *Order (I) Establishing Schedule with Respect to Wilmington Trust Company's Class 1F Other Parent Claim, (II) Disallowing Remaining Creditors' Committee Member Fee/Expense Claim Asserted by Wilmington Trust Company; and (III) Allowing, in part, Wilmington Trust Company's 503(b)(3)(D) and 503(b)(4) Claim*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY, <u>et al.</u>,[1] (f/k/a Tribune Company) | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | Related to Docket Nos. 13272, 13327, 13338, 13642, 13982, and _____ |

### ORDER (I) ESTABLISHING SCHEDULE WITH RESPECT TO WILMINGTON TRUST COMPANY'S CLASS 1F OTHER PARENT CLAIM, (II) DISALLOWING REMAINING CREDITORS' COMMITTEE MEMBER FEE/EXPENSE CLAIM ASSERTED BY WILMINGTON TRUST COMPANY; AND (III) ALLOWING, IN PART, WILMINGTON TRUST COMPANY'S 503(b)(3)(D) AND 503(b)(4) CLAIM

This matter having come before the Court on a telephonic status conference on

December 18, 2014 (the "<u>Status Conference</u>") with respect to the contested Fee Matters (as

defined in the *Amended Order Appointing Mediator Regarding Contested Fee Matters* [Docket

No. 13642] (the "<u>Mediation Order</u>")); and the Court having considered the Mediator's Report

and Recommendation, dated October 24, 2014, a copy of which is attached hereto as <u>Exhibit A</u>

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Media Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Content Agency, LLC (2931); Tribune Content Agency London, LLC (6079); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

and made a part of the record with respect to the Fee Matters; and the Court having considered the statements of counsel for the Reorganized Debtors and Wilmington Trust Company at the Status Conference; and the Court finding that good and sufficient cause appearing therefor, it is hereby:

ORDERED that Wilmington Trust Company shall file and serve any additional submission in support of its Class 1F Other Parent Claim[2] (the "Supplemental Submission") **on or before January 20, 2015**.

ORDERED that Reorganized Debtors' response (the "Response"), if any, to the Supplemental Submission must be filed and served **on or before February 20, 2015**.

ORDERED that Reorganized Debtors shall file a Notice of Completion of Briefing within two (2) business days following the filing of the Response.

ORDERED that the unpaid portion of the Creditors' Committee Member Fee/Expense Claim asserted by Wilmington Trust Company, currently subject to the Objection of the Reorganized Debtors [Docket No. 13327], is withdrawn, denied, and disallowed.

ORDERED that the *Application For Allowance Of Claim Under 11 U.S.C. §§ 503(b)(3)(D) And 503(b)(4) In Connection With Wilmington Trust Company's Motion Requesting The Appointment Of An Examiner And Wilmington Trust Company's Participation In Examiner's Investigation And Granting Waiver Of Compliance With Del. Bankr. L.R. 2016-2(d) In Accordance With Del. Bankr. L.R. 2016-2(g)* [Docket No. 13272] is (a) granted to the extent of an administrative claim in the amount of $496,592.22, and (b) withdrawn, denied and disallowed with respect to all other amounts requested.

---

[2] Capitalized terms not defined in this Order have the meanings given to them in the Mediation Order and the *Fourth Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries (As Modified July 19, 2012)*, as confirmed by Order entered on July 23, 2012 [Docket No. 12074].

46429/0001-11341188v1

ORDERED that, this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: December ___, 2014

_____
The Honorable Kevin J. Carey
United States Bankruptcy Judge

3

## EXHIBIT A

Mediator's Report and Recommendation, dated October 24, 2014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELWARE

In re:                                          :
                                                :        Chapter 11
TRIBUNE COMPANY, et al.,                        :
                                                :        Case NO. 08-13141 (KJC)
                    Reorganized Debtors.[1]      :
                                                :        Jointly Administered
                                                :
                                                :

## MEDIATOR'S REPORT AND RECOMMENDATION

I.    PRELIMINARY STATEMENT

By agreement of the parties, Wilmington Trust Company ("WTC"), Law Debenture Trust

Company of New York ("Law Debenture"), Deutsche Bank Trust Company ("DBTC"), and the

Reorganized Debtors, and pursuant to Del. Bankr. L.R. 9019-5 and the Order of the Bankruptcy

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Company (0355); California Community News, LLC (5306), Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Lost Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marking, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (108); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

Court dated June 20, 2013 (D.I. 13624) and amended June 26, 2013 (D.I. 13642), I was appointed mediator in this case to resolve certain contested fee matters filed by the parties.

## II.    RESULTS OF MEDIATION

After several meetings and follow-up conversations with the parties, settlements have been reached with regard to the contested fee matters between the Reorganized Debtors and Law Debenture, and the Reorganized Debtors and DBTC. Accordingly, only the disputes between the Reorganized Debtors and WTC remain unresolved and are the subject of this Report.

## III.    BACKGROUND

The background relevant to this action has been set forth in detail by the Bankruptcy Court in several opinions including, the Confirmation Opinion dated October 31, 2011; *In re Tribune Co.*, 464 B.R. 126 (Bankr. D. Del. 2011), the Memorandum on Reconsideration dated December 29, 2011, *In re Tribune Co.*, 464 B.R. 208 (Bankr. D. Del. 2011), and the Memorandum Regarding Allocation Disputes dated April 9, 2012, *In re Tribune Co.,* 472 B.R. 223 (Bankr. D. Del. 2012). Accordingly, all interested parties are well versed in the circumstances leading to the instant disputes, and therefore, I will move directly to the remaining legal and factual issues.

I begin by noting that by e-mail dated June 18, 2014, counsel for WTC informed me that WTC "is voluntarily withdrawing so much of its Application under § 503(b) of the Code as related to the fees and expenses incurred for the time period after the appointment of the Examiner." However, "the fees and expenses incurred in connection with seeking and securing the appointment of the Examiner remain the subject of the application for reimbursement" under Section 503(b) of the Bankruptcy Code. The withdrawal of the cited portion of WTC's Section 503(b) application does not affect WTC's remaining applications for fees and expenses under

Section 9.1.3 of the Plan and for its Class 1F Other Parent Claim under Section 502(b) of the Bankruptcy Code.

## IV.    ISSUES

WTC and the Reorganized Debtors, present three issues, which have not settled and require resolution.  These three issues are:

(1)    whether WTC is entitled to payment of its general unsecured Class 1F Other Parent Claim under the Plan, in the amount of $31,295,605.49  pursuant to Section 502(b);

(2)    whether WTC is entitled to payment of its Section 9.1.3 claim under the Plan for the reimbursement of Creditors' Committee member fees and expenses in the total amount of $678,757.80, comprising $376,894.50 in Confirmation Litigation Fees and $301,863.30 in Service Fees; and

(3)    whether WTC is entitled to payment of its "substantial contribution" claim pursuant to Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code for attorneys' fees and expenses in the amount of $496,592.22[2], related to seeking and securing the appointment of the Examiner in this action.

## III.    LEGAL STANDARDS

A.    General Unsecured Claims Under Section 502(b) of the Bankruptcy Code

Pursuant to Section 101(5)(A) of the Bankruptcy Code, a claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

---

[2]  WTC voluntarily reduced its substantial contribution and Section 9.1.3 claims.  The amounts now sought by WTC have been confirmed by correspondence from James W. Stoll, Esquire dated August 13, 2014.  Although the initial briefing on the substantial contribution claim included fees and expenses of a variety of professionals, I understand from the citations provided by WTC in its August 13th correspondence that the fees and expenses now sought relate only to Brown Rudnick, and not to any non-attorney or non-accountant professionals such as financial advisors.  (D.I. 13272, Exh. A and D.I. 13458 at ¶¶ 14-34.)

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."

Section 502(a) of the Bankruptcy Code provides that a claim is allowed, unless a party in interest

objects to the claim.  If an objection is made, the court must determine the amount of the allowed

claim, as of the date of the filing of the petition, unless one of the following exceptions applies to

disallow the claim:

> (1) such claim is unenforceable against the debtor . . . under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;
>
> (2) such claim is for unmatured interest;
>
> (3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;
>
> (4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;
>
> (5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;
>
> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property . . .;
>
> (7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract . . .;
>
> (8) such claim results from reduction, due to late payment, in the amount of . . . credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or (9) proof of such claim is not timely filed. . ..

11 U.S.C. § 502(b).  Because a claim is presumptively valid under Section 502(a), the party

objecting to the allowance of a claim must introduce evidence to rebut the claim's validity.  *See*

*e.g., In re 710 Long Ridge Road Operating Company, II, LLC,* 505 B.R. 163, 172 (Bankr. D.N.J.

2014); *Matter of Burger,* 125 B.R. 894, 902 (Bankr. D. Del. 1991).  Ultimately, however, if

rebuttal evidence is presented, the claimant bears the burden of proving the amount and validity

of the claim by a preponderance of the evidence. *710 Long Ridge Road*, 505 B.R. at 172; *Burger*, 125 B.R. at 902.

In *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 443 (2007), the Supreme Court addressed an unsecured creditor's claim for contractual attorneys' fees incurred post-petition. The Supreme Court rejected a distinction made by the Court of Appeals for the Ninth Circuit, which had disallowed contractual claims for attorneys' fees if the fees were incurred litigating issues of bankruptcy law. *Id.* at 451-452. In reaching this conclusion, the Supreme Court noted that "under the terms of the current Bankruptcy Code, it remains true that an otherwise enforceable contract allocating attorney's fees (i.e. one that is enforceable under substantive, nonbankrupty law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." *Id.* at 448. However, the Supreme Court declined to address whether other principles of bankruptcy law might provide an independent basis for disallowing a claim for such post-petition attorneys' fees, including the argument that Section 506(b) precludes such unsecured claims. *Id.* at 456.

B.    Reimbursement Of Creditors' Committee Member Fees And Expenses Under Section 9.1.3 Of The Plan

WTC's claim for reimbursement of Creditors' Committee member fees and expenses is governed by two sections of the Plan, Section 9.1.3 and Section 1.1.52. Section 9.1.3 provides the mechanism for submission of the claim:

> No later than forty-five (45) days after the Effective Date, counsel to the Creditors' Committee shall submit to Reorganized Tribune and the United States Trustee, reasonably detailed statements of the Creditors' Committee Member Fee/Expense Claims, which statements shall include descriptions of services provided in summary form without individual time records. Subject to the provisions of this Section 9.1.3 amounts due under each such statement, (up to an aggregate amount not to exceed $6,000,000, plus reasonable amounts incurred in connection with discovery (including deposition testimony) sought from members of the Creditors' Committee in connection with litigation related to confirmation

5

of this Plan) shall be paid by Reorganized Tribune within thirty (30) days of submission of such statement.  If, prior to the end of such thirty day period, Reorganized Tribune or the United States Trustee disputes in writing the reasonableness of any amounts due under any such statements, the applicable parties will attempt in good faith to resolve any such dispute.  If the applicable parties are unable to resolve the dispute, any such party may, within fifteen (15) days after disputing the reasonableness of any such amounts, seek review of the reasonableness of the disputed amounts by the Bankruptcy Court pursuant to Section 1129(a)(4) of the Bankruptcy Code, and the undisputed amounts shall be paid without delay. . . .

Section 1.1.52 of the Plan provides the substantive definition of "Creditors' Committee

Member Fee/Expense Claims:"

Amounts incurred by individual members of the Creditors' Committee **solely in their capacity as members of the Creditors' Committee** on and after the Petition Date through and including the Effective Date for the reasonable and documented fees, costs and expenses of their individual outside legal and/or financial advisors.

(emphasis added).

C.      Substantial Contribution Claims Under Sections 503(b)(3) and (4) of the Bankruptcy Code

Pursuant to Sections 503(b)(3) and (4), the Court is authorized, after notice and a hearing,

to allow as administrative expenses reasonable compensation for professional services rendered

by attorneys or accountants for "a creditor, an indenture trustee, an equity security holder, or a

committee representing creditors or equity security holders other than a committee appointed

under section 1102 of this title" for making "a substantial contribution" to a Chapter 11 case.  11

U.S.C. §§ 503(b)(3)(D) and (4).  Awards under Section 503(b)(4) are only authorized in

circumstances falling under the scope of Section 503(b)(3).  *See Lebron v. Mechem Financial,*

*Inc.*, 27 F.3d 937, 943 (3d Cir. 1994).

The test for determining "whether there has been a 'substantial contribution' pursuant to

section 503(b)(3)(D), . . . is whether the efforts of the applicant resulted in <u>an actual and</u>

demonstrable benefit to the debtor's estate and the creditors." *Id.* at 944 (emphasis added). The term "substantial" means that the "benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *Id.* The Court must presume that creditors are acting in their own interests, until they demonstrate to the Court's satisfaction[3] that "their efforts have transcended self-protection." *Id.* The Third Circuit has further explained that the "substantial contribution" inquiry "should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate." *Id.* Thus, the Court may consider whether an applicant has an expectation of reimbursement from the estate in determining whether the applicant acted in his/her self-interest. *In re Tropicana Entertainment LLC*, 2010 WL 3522332, *2 (D. Del. Sept. 2, 2010) (Robinson, J.), *aff'd* 498 Fed. Appx. 150, 152 (3d Cir. 2012). Other factors relevant to determining whether an applicant's efforts substantially contributed to the estate include: (1) "whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case;" (2) "whether the services conferred a direct benefit upon the estate;" (3) whether services were duplicative of services performed by others;" and (4) the motivation of the applicant. *In re Summit Metals, Inc.*, 379 B.R. 40, 50 (Bankr. D. Del. 2007) (Carey, C.J.) (citations omitted).

In bankruptcy reorganizations, "[t]he services engaged by creditors, creditor committees and other parties interested in [the] reorganization are presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services 'directly and materially

---

[3] The Court's satisfaction has been described as a preponderance of the evidence standard, meaning that the applicant seeking payment must show a substantial contribution by a preponderance of the evidence. *See e.g. In re Tropicana*, 2010 WL 3522332 at *2; In *re Syntax-Brillian Corp.,* 2009 WL 1606474, *2 (Bankr. D. Del. June 5, 2009) (Shannon, J.).

contributed' to the reorganization." *Id.* at 943-944. Thus, "[s]ervices which foster and enhance

the reorganization process are considered to be services which substantially contribute to a case,"

but actions which disrupt the estate will not be considered a substantial benefit. *In re*

*Northwestern Corp.,* 365 B.R. 453, 457 (D. Del. 2007) (Farnan, J.) (affirming bankruptcy court's

conclusion that numerous objections to Plan and filing of two adversary proceedings against the

Debtor amounted to a disruption to the estate rather than a substantial contribution); *see also In*

*re Summit Metals, Inc.*, 379 B.R. at 50 (a claimant's "activities must 'facilitate progress in the

case, rather than ... retard or interrupt.'") (citations omitted).

## IV.    RECOMMENDATIONS

### A.    WTC's Class 1F Unsecured Claim Should Be Disallowed

#### 1.    Parties' Arguments

The parties acknowledge a conflict in the case law regarding how WTC's Class 1F Other

Parent Claim should be treated.  The Reorganized Debtors advocate, what they characterize as

the majority rule, the rule that "absent a consensual arrangement, an unsecured claim for

postpetition fees arising under a prepetition contract is not allowable when asserted against an

insolvent debtor." (D.I. 13402 at 11.)  This rule had been adopted, prior to the Supreme Court's

decision in *Travelers*, by Judge Walsh in this District[4] and Judge Fitzgerald in the Western

District of Pennsylvania.[5]  Consistent with the rationales espoused by these decisions and other

post-*Travelers* decisions[6], the Reorganized Debtors further contend that a contrary holding

---

[4] *See In re Loewen Grp. Int'l*, 274 B.R. 427  (Bankr. D. Del. 2002),
[5] *See Global Indus. Tech., Inc. v. J.P. Morgan Trust Co. (In re Global Indus. Techs., Inc.)*, 344 B.R. 382, 385 (Bankr. W.D. Pa. 2006) [*JPMorgan*]; *Global Indus. Tech., Inc. v. Tanglewood Invs., Inc. (In re Global Indus. Techs., Inc.)*, 327 B.R. 230, 239 (Bankr. W.D. Pa. 2005) [*Tanglewood*].
[6] *See e.g. In re Old Colony, LLC*, 476 B.R. 1 (Bankr. D. Mass. 2012); *In re WCS Enterprises*, 381 B.R. 206 (Bankr. E.D. Va. 2007).

would be inconsistent with Section 506(b) of the Bankruptcy Code, which expressly provides for the recovery of fees by oversecured creditors, and Section 502(b) of the Bankruptcy Code which sets the petition date as the date upon which the calculation of the amount of a claim is made. If post-petition fees were recoverable by all creditors, the Reorganized Debtors maintain that Section 506(b) would be superfluous. The Reorganized Debtors also contend that post-petition fees cannot be calculated as of the Petition Date, and therefore, the Reorganized Debtors further contend that such post-petition fees must logically be excluded under Section 502(b).

The Reorganized Debtors also point out that Sections 503(b)(3)(D) and (4) of the Bankruptcy Code already provide a mechanism for an unsecured creditor to obtain post-petition fees and expenses, and that mechanism requires a "substantial contribution" to the bankruptcy estate. According to the Reorganized Debtors, their position is consistent with the Bankruptcy Code's policy of providing equal distributions among similarly situated creditors.

In addition, the Reorganized Debtors contend that the fee at issue in this case is based on a contingency arrangement with counsel which allows for "10% of all recoveries obtained by [WTC] or the holders on account of the PHONES, with no ceiling or maximum." (WTC1F06137.) Because the sought after recoveries were not obtained, the Reorganized Debtors argue that WTC should not be indemnified for fees it is not liable for and has not paid. Alternatively, the Reorganized Debtors contend that the fees sought by WTC are not reasonable given the economic realities of this case.

In response, WTC contends that this purported "majority rule" is no longer effective as a result of the Supreme Court's decision in *Travelers* and several post-*Travelers* decisions by Circuit Courts, including the Second, Ninth, First and Eleventh Circuits, as well as numerous District Courts. Specifically, WTC contends that the Circuit Courts that have considered this

9

issue have rejected the argument that Section 506(b) negates unsecured claims for post-petition attorneys' fees, and in any event, the Reorganized Debtors should be judicially estopped from making this argument based upon contrary arguments made by the Reorganized Debtors during the Plan confirmation process. In addition, WTC argues that the Second and Ninth Circuits have rejected the argument that Section 502(b) precludes payment of their post-petition attorneys' fees claims, because the Bankruptcy Code's definition of the term "claim" embraces unliquidated and unmatured claims. Therefore, WTC maintains that if the right to collect payment existed prepetition, the fees are still recoverable even if they were incurred post-petition. WTC further contends that post-petition fees, as an unsecured claim under Section 502(b), are not subject to the substantial contribution mechanism because such fees are limited by a contractual provision interpreted under state law. Finally, WTC contends that it acted reasonably at all times and that the fees it seeks to recover are reasonable.

2.    Recommendation for Disallowance

The contractual basis for WTC's attorneys' fees claim is the PHONES Indenture dated April 1, 1999 (the "Indenture), which is governed by Illinois law (Indenture at ¶ 1.12, WTC0000019.) Specifically, Section 5.03 of the Indenture provides that in the event of certain enumerated defaults, "the Company [which is defined as Tribune Company and any successor corporation] will, upon demand of the Trustee, pay to it, for the benefit of the Holders of such Securities, . . . such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel." (WTC0000038-39.) Section 5.04 further allows the Trustee to file and prove a proof of claim in bankruptcy proceedings "in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and

10

advances of the Trustee, its agents and counsel) and of the Holders allowed in such judicial proceeding," and to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute the same . . ." (WTC0000039.) And, pursuant to Section 6.07(2), "[t]he Company agrees . . . except as otherwise expressly provided herein, to reimburse the Trustee in Dollars upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel) . . ." (WTC0000047.)

Through the Indenture, WTC, as the Trustee, has demanded payment for fees billed by Brown Rudnick pursuant to a series of Engagement Letters between WTC and Brown Rudnick for the provision of attorneys' services in connection with this matter. The Initial Engagement letter was entered into between WTC and Brown Rudnick on December 22, 2008 (WTC1F06083), and was amended and/or replaced four times thereafter by subsequent engagement letters.[7] The Noteholders consented to the terms of the engagements between WTC and Brown Rudnick by separately executed agreements and further agreed to indemnify WTC for Brown Rudnick's fees and expenses. (*E.g.* WTC1F06100, WTC1F06087, WTC1F06104, WTC1F06109, WTC1F06128.) Thus, the fee agreements between WTC and Brown Rudnick and the Indemnification Agreements between WTC and the Noteholders are all post-petition agreements. However, the Indenture, which governs any potential claim here by WTC against the Reorganized Debtors is a prepetition contract.

---

[7] Multiple copies of the engagement letters are provided in the record; however, each time it appears that a copy of the Second Amended Engagement Letter dated February 10, 2010 is missing. The general terms of the Second Amended Engagement Letter can be discerned from the corresponding Indemnification Agreement letter between WTC and the Noteholders dated February 10, 2010 (WTC1F06105). The First, Third and Fourth Engagement letters can be found at WTC1F06094, WTC1F06122, and WTC1F06135.

In *Travelers*, the Supreme Court stated that "under the terms of the current Bankruptcy Code, it remains true that an otherwise enforceable contract allocating attorney's fees (i.e. one that is enforceable under substantive, nonbankrupty law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." 549 U.S. at 448. This statement of general principle was made in the very narrow context of rejecting the *Fobian* rule, a Ninth Circuit construction which distinguished between fees incurred litigating bankruptcy issues and those incurred litigating nonbankruptcy issues, and precluded recovery of the former. Further, the Supreme Court's reiteration of this general principle was made without qualifiers (such as without reference to the debtor's solvency, for example) and with the added notation that this general principle "remains true." *Id.* The Supreme Court was surely aware, at the time of its decision in *Travelers*, that a number (if not a majority) of courts had held that absent a consensual arrangement, an *unsecured* claim for *postpetition* fees under a prepetition contract is not allowable when asserted against an *insolvent* debtor. Therefore, in my view, I reject the notion that the use or statement by the Supreme Court of a general principle that "remains true" was intended to be an unraveling of years of jurisprudence by these courts in the bankruptcy area or a definitive resolution of the well-known majority/minority split on this issue. Indeed, there is no indication in *Travelers* that the Supreme Court meant anything other than to reject the Ninth Circuit's *Fobian* rule, and the Court made this abundantly clear when it expressly declined to address the appellant's remaining arguments based on the operation of Section 506(b) and the general "structure and purpose of the Bankruptcy Code." *Id.* at 456. In this regard, the Supreme Court stated:

> Accordingly, we express no opinion with regard to whether, following the demise of the *Fobian* rule, other principles of bankruptcy law might provide an independent basis for disallowing Travelers' claim for attorney's fees. <u>We</u>

> conclude only that the Court of Appeals erred in disallowing that claim based on
> the fact that the fees at issue were incurred litigating issues of bankruptcy law.

*Id.* (emphasis added). Thus, the Supreme Court did not address any of the underlying bases for

the prevailing view prior to *Travelers* (i.e. the disallowance of unsecured claims for post-petition

attorneys' fees against an insolvent debtor), including, *inter alia*, the implications of Section

506(b) and the overarching purpose of the Bankruptcy Code in providing equal distribution

among similarly situated creditors. *See generally In re American Home Mortgage, Holdings,

Inc.*, 501 B.R. 44, 59 (Bankr. D. Del. 2013) ("'One of the primary goals—if not the primary

goal—of the Code is to ensure that similarly-situated creditors are treated fairly and enjoy an

equality of distribution from a debtor absent a compelling reason to depart from this principle.'")

(quoting *In re SemCrude, L.P.*, 399 B.R. 388, 399 (Bankr. D. Del. 2009)).

Pursuant to Section 506(b), an oversecured creditor is entitled to a claim for "reasonable

fees, costs, or charges provided for under the agreement . . . under which such claim arose."

Reading this provision of the Bankruptcy Code, it is a reasonable conclusion that Congress

would not have to expressly provide for the recovery of post-petition fees by oversecured

creditors, if such fees were generally recoverable by all creditors, an observation made by both

Judge Walsh and Judge Fitzgerald. *See In re Loewen Grp., Int'l.*, 274 B.R. at 444 n. 36; *JP

Morgan*, 344 B.R. at 385 ("[T]he maxim of *expression unius est exclusion alterius* (the

expression of one is the exclusion of the alternatives) applie[s] to [the] analysis of § 506(b)

attorneys' fees claims. Because Congress specifically authorized payment of postpetition

attorneys' fees for oversecured creditors and said nothing about allowance of such fees for

unsecured creditors, there is no clear entitlement to such fees for unsecured creditors.").

Accordingly, I conclude that Section 506(b)'s explicit reference to oversecured creditors has the

concomitant effect of limiting an unsecured creditors' post-petition claim for attorneys' fees against an insolvent debtor.

In my opinion, the disallowance of an unsecured creditors' claim for fees incurred post-petition against an insolvent debtor is not only consistent with Section 506(b), but with the Bankruptcy Code's premise of equal distribution among creditors. As Judge Fitzgerald cogently explained, this core bankruptcy principle would be thwarted by the allowance of an unsecured contractual claim for post-petition attorneys' fees:

> When proofs of claim are filed, the unsecured creditors stand in parity—all seek to share in the distribution from the estate based on what they were owed on the day the bankruptcy was filed. If we were to permit certain unsecured creditors to recover fees incurred postpetition, as part of their prepetition claims, for actions taken with respect to the bankruptcy case such as to monitor the unsecured claim or protect the distribution, imposition of a bar date would be meaningless. Thereafter, every unsecured contractual creditor could continue to "monitor" the bankruptcy at the expense of the estate. If we were to permit unsecured contractual creditors to recover, as a prepetition claim, their legal fees for actions taken postpetition, debtors would never be out from under the burden of on-going costs, the claims would continue to rise throughout the case, and the universe of prepetition claims would never be ascertainable. Thus, the Debtor's fresh start and discharge would be impaired. The concept of parity of distribution among similarly situated creditors would evaporate because some unsecured creditors would be "more equal" than others by virtue of the ability to have the claim continue to grow postpetition. It is difficult to envision anything more at odds with the spirit of the Bankruptcy Code's scheme for payment to creditors.

*J.P. Morgan*, 344 B.R. at 385.

Lastly, this approach does not leave unsecured creditors without a mechanism for seeking postpetition fees and expenses. Indeed, the Bankruptcy Code provides a pathway through the "substantial contribution" provisions of Section 503(b)(3)(D) and (4) for unsecured creditors to assert and recover a postpetition claim for fees and expenses. Thus, for the reasons discussed, it is my recommendation that WTC's claim for postpetition attorneys' fees under the Indenture not be allowed.

B.     WTC Should Not Recover Objected To Creditors' Committee Member Fees And Expenses

In objecting to WTC's claim for Creditors' Committee member fees and expenses under Section 9.1.3 of the Plan, the Reorganized Debtors contend that the services for which WTC seeks compensation are not limited to amounts incurred by WTC "solely in their capacity as members of the Creditors' Committee" as required by the definition of "Creditors' Committee Member Fee/Expense Claims" in Section 1.1.52 of the Plan.  According to the Reorganized Debtors the language of Section 9.1.3 does not contemplate the category of fees coined "Confirmation Litigation Fee/Expense Claims" by counsel for the Creditors' Committee, because these claims were defined by counsel as "the claims of the individual members of the Creditors' Committee for fees, costs and expenses of their individual outside legal and/or financial advisors incurred in connection with discovery (including deposition testimony) sought from members of the Creditors' Committee in connection with litigation related to confirmation of the Confirmed and Effective Plan of Reorganization."  (D.I. 13327 at 4, quoting Committee Letter at 2 n.i and ii.)  As a result, these claims expressly lack the link to "sole capacity as Creditors' Committee members" that is required by the Plan.  Applying the Plan language, the Reorganized Debtors contend that, WTC incurred the Confirmation and Service Fees it now seeks as a co-proponent of the Noteholder Plan and as Indenture Trustee for the PHONES Notes, and not solely in its capacity as a member of the Creditors' Committee.  In particular, the Reorganized Debtors maintain that the fees were incurred as a result of actions taken in opposition to positions argued by the Creditors' Committee, and thus, these actions can only be characterized as being maintained by WTC in its capacity as Indenture Trustee, and not in its capacity as a member of the Creditors' Committee.

In response, WTC contends that it did not cease to function as a Creditors' Committee member solely because it dissented from the majority position of the Committee. WTC points out that each Creditors' Committee member also had underlying fiduciary duties, and just because the majority approves a course of action, does not mean that the course of action is in the best interests of all creditors. WTC contends that the discovery that was propounded by the Reorganized Debtors was intertwined with Committee related activities and arguably non-Committee related activities, and therefore, the Reorganized Debtors should bear the expense incurred from such overlap. Further, WTC contends that it should be treated consistently with other Creditors' Committee members who have been reimbursed for their fees and expenses.

After considering the nature and course of conduct engaged in by WTC in connection with the Reorganized Debtors' bankruptcy, I find that the $376,894.50 in Confirmation Litigation Fees and the $301,863.30 in Service Fees[8] incurred by WTC were not incurred "**solely** in [its] capacity as [a] member[] of the Creditors' Committee." The plain and ordinary meaning of the word "solely" is "without anything or anyone else involved" or "to the exclusion of all else." http://www.merriam-webster.com/dictionary/solely. In this case, WTC actively dissented from the Creditors' Committee's stated positions by, *inter alia*, seeking disqualification of counsel to the Committee and prosecuting the Noteholder Plan, a plan which was expressly opposed by the Creditors' Committee. WTC's actions necessitated discovery, which was not propounded on all members of the Creditors' Committee, but only on the two members who were supporting the Noteholder Plan. On these facts, I find that, with respect to the remaining Confirmation Litigation Fees and Service Fees, WTC did not act solely in its capacity as a member of the Creditors' Committee, and further that the ensuing discovery expenses were

---

[8] It is worth noting that the Reorganized Debtors have already paid WTC $763,208.47 in Service Fees, acknowledging that certain other actions taken by WTC were incurred solely in its capacity as members of the Creditors' Committee. (D.I. 13327 at 14.)

likewise incurred as a result of and in the context of WTC's clear divide from the Creditors' Committee's positions. Accordingly, I conclude that WTC is not entitled to Confirmation Litigation Fees or Service Fees under Section 9.1.3 of the Plan, and therefore, I recommend that payment of WTC's claim for attorneys' fees and costs be denied.

        C.      <u>WTC Should Recover $496,592.22 On Its Substantial Contribution Claim</u>

In objecting to WTC's substantial contribution claim under Section 503(b)(3) and (4), the Reorganized Debtors contend that WTC obstructed the progress of their reorganization, duplicated the efforts of the estates and the Creditors' Committee in the examination process, and served primarily the interests of the PHONES Noteholders to whom WTC owed a fiduciary duty, and not the bankrupt estates. The Reorganized Debtors point out that WTC was not the lone voice in opposition to the April 2010 plan, and that the holders of the Senior Loan Claims (in amounts in excess of $3 billion) also opposed the plan and advocated the creation of the Litigation Trust. The Reorganized Debtors also contend that WTC cannot overcome the presumption that it acted in its self-interest and would not have acted without an expectation of reimbursement from the estates. According to the Reorganized Debtors, the contingency fee agreement between WTC and Brown Rudnick demonstrate that WTC had no right to expect reimbursement. Further, as a policy matter, the Reorganized Debtors suggest that out-of-money indenture trustees, like WTC, should not be able to hire counsel on a contingency fee basis and then have counsel rack up fees and prolong the bankruptcy case in the hope that other constituents will buy off their subordinated positions, and then be reimbursed from the bankruptcy estate for millions of dollars in hourly fees. Lastly, the Reorganized Debtors contend that even if fees are permitted, the amount sought by WTC is unreasonable, excessive and inadequately documented.

In response, and in support of its substantial contribution claim, WTC contends that its actions benefitted the estates in several ways. Specifically, WTC maintains that it was the principal advocate for the appointment of the Examiner and the principal proponent for the Examiner's ultimate conclusions that portions of the LBO were fraudulent conveyances. As a result of its positions and the Examiner's findings and conclusions, WTC contends that the Plan was renegotiated to provide greater benefits for the non-LBO creditors, and the Plan presented with a stronger basis for confirmation given its consistency with the Examiner's findings. Accordingly, WTC seeks attorneys' fees and expenses in the amount of $496,592.22, as a result of the time and effort devoted to seeking the appointment of the Examiner.

After consideration of the unique circumstances in this case, I conclude that WTC is entitled to the recovery of its claim for the services of Brown Rudnick in the amount currently being sought of of $496,592.22, as a substantial contribution to the estates. While WTC's actions in pursuing an Examiner and advocating the Fourth Plan certainly benefitted its own fiduciaries, the benefit to the Reorganized Debtors' estates is clear. The Debtors' non-LBO unsecured creditors, including WTC's fiduciaries, the PHONES Noteholders, received a potentially enhanced economic situation through the creation of the Litigation Trust which permits the pursuit of claims valued at $358 million, that would have otherwise been released under the First Plan. The Plan also increased the distributable enterprise value by $1.27 billion and included an explicit agreement by the LBO Lenders to waive their right to enforce contractual subordination against the PHONES Noteholders, thereby, improving the economics for non-LBO creditors. The Plan further included settlement with Bridge Lenders, which increased settlement proceeds available for non-LBO creditors. Finally, as noted by counsel during hearings before the Bankruptcy Court, the Examiner's Report improved the overall

18

bankruptcy process for the Reorganized Debtors and all parties involved.  (*See* D.I. 9619 at

17:19-23, 18:12-19:4, 75:10-16, 197:14-18, 205:8-11, 205:18-22 (remarks of counsel for the

Creditors' Committee, the Debtors, JPMorgan, and Oaktree praising the work of the Examiner

and noting the "valuable assistance" and "essential guidance" of the Examiner's Report, and

advocating the Examiner's Report as the "evidentiary backbone" and "basis of the decision here,

whichever way it goes").)  The Examiner's opinions regarding the law and/or the facts were

admissible by any entity in connection with the Confirmation Hearing, and consistent with the

parties' perspectives, the Court referred extensively to the Examiner's work as a basis for its

confirmation decision.  *In re Tribune Co.*, 464 B.R. 126 (D. Del. Oct. 31, 2011).  Indeed, the

Court ultimately approved the Plan based "upon consideration of the Examiner's extensive

exercise . . . alternate theories of recovery . . . and the record made." *Id.* at 175.

    Although WTC did not stand entirely alone in pursuit of the Examiner, I find it was the

primary voice in an uncrowded field.  I also find that the services provided on behalf of WTC

and the PHONES Noteholders by Brown Rudnick were not unnecessarily duplicative of the

efforts of others with regard to seeking the appointment of an Examiner.  Accordingly, I

recommend that WTC's claim for its substantial contribution be allowed in the amount of

$496,592.22.

    As part of my work regarding WTC's substantial contribution claim, I considered

whether the fees and expenses sought by WTC were actual and necessary.  *Summit Metals*, 379

B.R. at 53.  In this regard, I conducted a review of the billing records submitted in support of

WTC's fee and expense claim.  Although certain discrepancies were found, these discrepancies

have either been explained by WTC in a letter to me dated August 13, 2014, or are otherwise, in

my view, *de minimus,* such that they do not affect the overall reasonableness of the sums requested by WTC.

In sum, I find that the fees and expenses sought by WTC were reasonable and necessary and that WTC's efforts conferred a substantial contribution to the estates and the administration of this bankruptcy proceeding.  Accordingly, I recommend that WTC be permitted to recover its administrative expense claim in the amount of $496,592.22.

In conclusion, for the reasons discussed, I recommend that:

1)    WTC's Class 1F unsecured claim be disallowed;

2)    WTC not recover Creditors' Committee member fees and expenses under Section 9.1.3 of the Plan; and

3)    WTC's $496,592.22 substantial contribution claim be allowed.

Finally, I commend counsel for all the parties and the U.S. Trustee for their professionalism and exceptional cooperation throughout the mediation process.

Date October 24, 2014

Respectfully submitted,

Joseph J. Farnan, Jr.