**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11 Cases** |
| | : | **Case No. 08-13141 (KJC)** |
| **TRIBUNE COMPANY, et al.,** | : | **(Jointly Administered)** |
| | : | |
| **Debtors.** | : | **Re: D.I. 14011** |

**WILMINGTON TRUST COMPANY'S LIMITED OBJECTION TO THE MEDIATOR'S REPORT AND RECOMMENDATION AND BRIEF IN FURTHER SUPPORT OF ITS OPPOSITION TO REORGANIZED DEBTORS' OBJECTION TO CLASS 1F OTHER PARENT CLAIM ASSERTED BY WILMINGTON TRUST COMPANY**

SULLIVAN HAZELTINE ALLINSON LLC
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market Street, Suite 1300
Wilmington, DE 19801
302-428-8191

and

BROWN RUDNICK LLP
Robert J. Stark
James W. Stoll
Seven Times Square
New York, NY 10036
212-209-4800

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*

January 20, 2015

**INTRODUCTION**

Wilmington Trust Company ("WTC") submits this *Limited Objection to the Mediator's Report and Recommendation and Brief in Further Support of Its Opposition to Reorganized Debtors' Objection to Class 1F Other Parent Claim Asserted by Wilmington Trust Company* (the "Supplemental Memorandum") in accordance with the *Order (i) Establishing Schedule with Respect to Wilmington Trust Company's Class 1F Other Parent Claim, (ii) Disallowing Remaining Creditors' Committee Member Fee/Expense Claim Asserted by Wilmington Trust Company; and (iii) Allowing, in Part, Wilmington Trust Company's 503(b)(3)(D) and 503(b)(4) Claim* [Docket No. 14011]. WTC's unsecured fee claim (the "Unsecured Fee Claim") is supported by the complete time detail (over 3,150 pages) from its principal counsel, Brown Rudnick LLP ("Brown Rudnick"), all additional invoices and time detail (to the extent maintained) of the other professionals hired, including Delaware counsel, Mesirow Financial Consulting LLC, and other non-legal experts, a draft brief analyzing the services rendered during different phases of the case (the "Draft Brief"), WTC's *Opposition to Reorganized Debtors' Objection to Class 1F Other Parent Claim Asserted by Wilmington Trust Company* (the "Original Opposition") [Docket No. 13397], the Declaration of Robert J. Stark (the "Stark Declaration") [Docket No. 13399] and supporting exhibits, the Declaration of Gordon Z. Novod (the "Novod Declaration") [Docket No. 13400] and supporting exhibits (and, together with the invoices, time detail, Draft Brief, Original Opposition, and Stark Declaration, the "Original Submission").[1]

[1] In addition, during the course of the Mediation, the Mediator requested additional submissions from the parties. These consisted of (i) the *Declaration of James W. Stoll* (produced via e-mail to the Mediator on July 10, 2013) (the "Stoll Declaration") and (ii) *Wilmington Trust Company's Letter Addressing Certain Questions Concerning its Fee Applications* (produced via e-mail to the Mediator on August 13, 2014). WTC will provide the Court with copies of these documents upon request.

WTC submits this Supplemental Memorandum primarily to advise the Court on the development in the case law since the Supreme Court of the United States decided Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co., 549 U.S. 443 (2007). Although much of this case law was decided at the time of the parties' final submissions here, March 2013, substantial additional decisional law has emerged since. As will be explicated below, the overwhelming majority of case law since Travelers supports WTC's fee application. Judge Farnan's recommendation is supported by a small minority of cases that are not only inconsistent with the underlying rationale of Travelers, but also unlikely to be adopted by the Third Circuit Court of Appeals.

As set forth in the copious briefing, Travelers held that a creditor with a pre-petition, contractual entitlement to recover attorneys' fees, was entitled to an allowed, unsecured claim for those fees under Section 502(b)(1) even though incurred post-petition, unless there was a specific provision in the Code that prohibited allowance. At issue in Travelers was the judicially-created Fobian rule, which disallowed post-petition attorneys' fees to the extent they were incurred litigating purely bankruptcy issues. The Supreme Court struck down that rule because it found no textual support for it in the Code. See Travelers, 549 U.S. at 452. The Supreme Court did not, however, decide whether Section 506(b) of the Code expressly negates the allowance of an unsecured claim for post-petition attorneys' fees recoverable under a pre-petition contract, because that argument was raised for the first time at oral argument. See id. at 454-56. That opening has been seized upon by four courts and the Mediator as the avenue to disallow unsecured claims like the one presented here. WTC has fully briefed the various arguments raised by courts and parties seeking disallowance on this basis at pages 9 – 19 of its Original Opposition, and will not repeat those arguments here. Rather, WTC wishes to alert the Court to

the fact that since Travelers was decided, twelve courts, including three Circuit Courts of Appeals, have not only ruled that such fees are allowable under Section 502(b)(1), but also have rejected the various arguments relied on by the four courts and the Mediator here to disallow such claims.

In addition, although there is little case law in this Circuit on the matter,[2] and specifically no decision by the Third Circuit Court of Appeals, WTC believes that at least one decision from that Court, addressing the secured/unsecured status of attorneys' fees for a secured creditor, suggests that, if presented with the issue, the Third Circuit would allow pre-petition, contractually-based attorneys' fees incurred post-petition, as an unsecured claim under Bankruptcy Code Section 502(b).

Because the Mediator's Report and Recommendation (the "Report") is grounded in case law inconsistent with the rationale of Travelers and the great weight of authority that has since emerged, WTC objects to its adoption by this Court. As to the remainder of arguments briefed by the parties but not addressed by the Mediator, WTC submits on its brief and requests that the Court allow its unsecured claim in the amount of $30,799,013.27.[3]

---

2 Compare OHC Liquidation Trust v. U.S. Fire Ins. Co. (In re Oakwood Homes Corp.), 394 B.R. 352, 356 (Bankr. D. Del. 2008) (Walsh, J.) ("[T]he Supreme Court has held that attorneys' fees authorized by prepetition contracts may be awarded even if they are incurred in post-petition litigation.") (citing Travelers, 549 U.S. 443), with In re Loewen Grp. Int'l, Inc., 274 B.R. 427, 444 n.36 (Bankr. D. Del. 2002) (Walsh, J.) (determining, in a pre-Travelers case, that "the creditor's right to assert [unsecured] claims [for attorneys' fees] *is limited by the provisions of the Bankruptcy Code*") (emphasis added); but see Travelers, 549 U.S. at 453 ("[T]he Code says *nothing* about unsecured claims for contractual attorneys' fees[.]") (emphasis in original).

3 On July 10, 2013, WTC produced the Stoll Declaration (which is attached hereto as **Exhibit A**) to the Mediator. The Stoll Declaration explains that WTC's original Unsecured Fee Claim totaled $30,289,093 and was comprised of $21,170,779.77 of fees and expenses of Brown Rudnick (WTC's primary counsel); $7,537,015.00 of fees and expenses of Mesirow Financial Consulting LLC (WTC's financial advisor); $346,294.48 of fees and expenses of Benesch Friedlander Coplan & Aronoff LLP (WTC's original local counsel); $238,920.65 of fees and expenses of Sullivan Hazeltine Allinson LLC (WTC's current local counsel); $3,475.00 of fees and expenses of The Law Offices of John Wells King, PLLC (Federal Communications Commission counsel); $8,005.02 of fees and expenses of Garvey Schubert Barer (Federal Communications Commission counsel); $35,433.79 of fees and expenses of Morton Research, Inc. (WTC's newspaper valuation consultant); $13,950.00 of fees and expenses of Hoffman Schutz Media Capital

## ARGUMENT

### I. The Overwhelming Majority of Post-Travelers Courts That Have Considered the Issue at Bar Have Adopted the New Majority Rule.

Since the Supreme Court's opinion in Travelers, the weight of authority has held that post-petition fees and expenses are properly allowable as an unsecured claim under Section 502(b) of the Bankruptcy Code. See Original Opposition, at 9-19 (discussing pre- and post-Travelers opinions). Sixteen (16) courts have considered the impact Travelers has on allowing unsecured claims for attorneys' fees. See **Exhibit B** (compiling post-Travelers cases deciding the issue). Eleven (11) of those courts, including the three Circuit Courts to adjudicate the matter, have held that attorneys' fees incurred post-petition are allowable as an unsecured claim if they are traceable to a pre-petition contract making those fees the debtor's responsibility.[4] See Busson-Sokolik v. Milwaukee Sch. of Eng'g (In re Sokolik), 635 F.3d 261 (7th Cir. 2011); Ogle v. Fidelity & Deposit Co. of Md., 586 F.3d 143, 148 (2d Cir. 2009); SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.), 571 F.3d 826, 841 (9th Cir. 2009); In re Rubin Family Irrevocable Stock Trust, 516 B.R. 221 (Bankr. E.D.N.Y. 2014); In re Castillo, 488 B.R. 441 (Bankr. C.D. Cal. 2013); In re Holden, 491 B.R. 728, 737 (Bankr. E.D.N.C. 2013); Hunt v. Bailey (In re Bailey), No. 12-60253, 2013 WL 3380168 (Bankr. D. Mont. July 8, 2013); Rockland Credit Fin., LLC v. Ceda Mills, Inc. (In re Ceda Mills, Inc.), No. 04-24452, 2009 WL 8556804, at *6 n.3

---

(WTC's broadcasting valuation consultant); and $92,162.56 of fees and expenses of Cypress Holdings LLC (WTC's internet consultant). On July 10, 2013, WTC revised its claim to include fees and expenses incurred prosecuting the Unsecured Fee Claim from the period January 2, 2013 until June 30, 2013. The revised claim totaled $31,295,605.49 and is comprised of the original claim as well as $976,741.38 of fees and expenses of Brown Rudnick, and $29,771.11 of fees and expenses of Sullivan Hazeltine Allinson LLC. WTC has reduced the Unsecured Fee Claim by $496,592.22, the amount received in satisfaction of WTC's allowed Substantial Contribution Claim, for a total of $30,799,013.27. Pursuant to Section 3.2.6 of the Confirmed Plan, an allowed Class 1F Other Parent Claim is entitled to a distribution equal to $0.32 on the dollar.

[4] A twelfth court, the Bankruptcy Appellate Panel for the Tenth Circuit, has applied Travelers to allow attorneys' fees incurred post-petition and awarded under a state statute. See Busch v. Hancock (In re Busch), 369 B.R. 614, 618 (B.A.P. 10th Cir. 2007).

(Bankr. W.D. Pa. Feb. 11, 2009); In re Agway, Inc., Nos. 02-65872, 02-65877, 2008 WL 2827439 (Bankr. N.D.N.Y. July 18, 2008); OHC Liquidation Trust v. U.S. Fire Ins. Co. (In re Oakwood Homes Corp.), 394 B.R. 352, 356 (Bankr. D. Del. 2008); Qmect, Inc. v. Burlingame Capital Partners II, LP (In re Qmect, Inc.), 368 B.R. 882, 884-86 (Bankr. N.D. Cal. 2007); see also 4 Collier on Bankruptcy ¶ 502.03[2][b][iv] (16th ed. 2013) ("In light of the holdings in Travelers and SNTL, the trend seems to be moving towards courts allowing claims for attorneys' fees where permitted by state law or contractual agreement."). These courts have all held that under the rationale of Travelers, because a pre-petition contract shifting responsibility to the debtor for a creditor's attorneys' fees is enforceable under state law, and because there is no textual support in the Code for the disallowance of such attorneys' fees incurred post-petition, such fees must be allowed as an unsecured claim under Section 502(b)(1). Moreover, these courts have also held that Section 506(b) cannot be read to negate the allowance of such a claim under 502(b)(1), because Section 506(b) is not concerned with the allowance of a claim, only with whether such a claim is entitled to secured status. See Welzel v. Advocate Realty Invs., LLC (In re Welzel), 275 F.3d 1308 (11th Cir. 2001); see also UPS Capital Bus. Credit v. Gencarelli (In re Gencarelli), 501 F.3d 1 (1st Cir. 2007).

The Mediator adopted the minority position that only four (4) courts have endorsed. See In re Old Colony, LLC, 476 B.R. 1 (Bankr. D. Mass. 2012); In re Seda France, Inc., No. 10-12948, 2011 WL 3022563 (Bankr. W.D. Tex. July 22, 2011); In re Elec. Mach. Enters., Inc., 371 B.R. 549 (Bankr. M.D. Fla. 2007); In re WCS Enters., Inc., 381 B.R. 206 (Bankr. E.D. Va. 2007). Three of these four cases (Seda France, Electric Machinery, and WCS Enterprises) find that Section 506(b) expressly negates 502(b)(1) insofar as an unsecured creditor's application for allowance of attorneys' fees is concerned. Old Colony takes a slightly different route, holding

that such fees are allowable only if the debtor is solvent and all creditors are paid in full. Again, these arguments have been fully briefed at pages 13 - 15 of WTC's Original Opposition.

Although neither this Court nor the Third Circuit appears to have ruled on the issue, the Mediator supports his recommendation with two pre-Travelers decisions from within the Third Circuit, both of which have subsequently been rejected by the very courts that originally authored those opinions. Specifically, Judge Farnan cites to In re Loewen Group International, Inc., 274 B.R. 427, 444 n.36 (Bankr. D. Del. 2002) (Walsh, J.) and Global Industrial Technologies v. JP Morgan Trust Co., N.A. (In re Global Industrial Technologies, Inc.), 344 B.R. 382, 385 (Bankr W.D. Pa. 2006) (Fitzgerald, J.) to support his "conclusion that Congress would not have to expressly provide for the recovery of post-petition fees by oversecured creditors [under Section 506(b)], if such fees were generally recoverable by all creditors[.]" Report, at 13 (quoting JP Morgan, 344 B.R. at 385). The Mediator's reliance on these pre-Travelers cases is misplaced. For example, in Oakwood Homes, Judge Walsh abandoned his pre-Travelers footnote in Loewen explaining that "the Supreme Court has held that attorneys' fees authorized by prepetition contracts may be awarded even if they are incurred in post-petition litigation." Oakwood Homes, 394 B.R. at 356 (citing Travelers, 549 U.S. 443).

Similarly, the Bankruptcy Court for the Western District of Pennsylvania departed from its pre-Travelers ruling in JP Morgan and subsequently held that "even if the Rockland claim is deemed to be wholly unsecured, Rockland would be permitted to add post-petition . . . attorneys' fees to its claim. The Court reaches this conclusion because nothing in the Bankruptcy Code prohibits the inclusion of attorneys' fees from being a part of the claim when such fees are incurred in connection with defending the allowance and payment of the claim in the bankruptcy case." Ceda Mills, 2009 WL 8556804, at *6 n.3 (citing Ogle, 586 F.3d 143, and Travelers, 549

U.S. 443)). Thus, both courts on which the Mediator relied have subsequently reached opposite conclusions concerning the allowability of an unsecured claim for post-petition attorneys' fees.

Judge Farnan's recommendation is also inconsistent with this Court's decision in In re School Specialty, Inc., No. 13-10215, 2013 WL 1838513, at *4 (Bankr. D. Del. Apr. 22, 2013), in which His Honor noted that "§ 502 and § 506 'should be read in tandem with one another,' as § 502 deals with the threshold question of whether a claim should be allowed or disallowed, then §506 deals with the narrow issue of whether certain types of claims should be considered secured or unsecured" (quoting Welzel, 275 F.3d at 1318); see also In re Nixon, No. 09-417, 2009 WL 1845229, at *7 (E.D. Pa. June 25, 2009) ("Section 506(b) should be read against the backdrop of general instructions enunciated in § 502.") (citations and quotations omitted). The Reorganized Debtors and the Mediator continue to wrongly conflate Section 506(b)'s purpose of determining whether an allowed claim is secured, with the allowance function of Section 502(b). No Third Circuit case law is cited or supports Judge Farnan's conclusion that "Section 506(b)'s explicit reference to oversecured creditors has the concomitant effect of limiting an unsecured creditors' post-petition claim for attorneys' fees against an insolvent debtor." Report, at 14.

In reaching his recommendation, Judge Farnan concluded that the "maxim of *expression unius est exclusion alterius* [*sic*] (the expression of one is the exclusion of the alternatives) applie[s] to [the] analysis of § 506(b) attorneys' fee claims." Report, at 13. Quoting the pre-Travelers JP Morgan decision, the Mediator concluded that "[b]ecause Congress specifically authorized payment of postpetition attorneys' fees for oversecured creditors and said nothing about allowance for unsecured creditors, there is no clear entitlement to such fees for unsecured creditors." Id. (quoting JP Morgan, 344 B.R. at 385). This is an incorrect application of the maxim. The Supreme Court has instructed that the doctrine of *expressio unius est exclusio*

*alterius* does not apply "unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it." Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003) (citing United Dominion Industries, Inc. v. United States, 532 U.S. 822, 836 (2001)). Judge Farnan does not point to any legislative history suggesting that Congress considered – let alone rejected – whether to include language specifically providing for, or prohibiting, unsecured fee claims. Moreover, because Section 502(b) and 506(b) serve entirely different functions, it is a dubious application of the doctrine. See Ogle, 586 F.3d at 148-49 (declining to draw "an inference by silence or omission"); SNTL, 571 F.3d at 842-43 (Section 506(b) "is completely silent with regard to the allowance/disallowance issue. This silence suggests that [section] 506(b) is meant not to displace the general instructions laid down in [section] 502, but to be read together in a complementary manner.") (citation and quotations omitted).

Further undercutting application of the maxim in this context is the fact that where a secured creditor's attorneys' fees are not afforded secured status (i.e., because they might be deemed unreasonable), they are allowed as an unsecured claim under Section 502(b). See Welzel, 275 F.3d at 1318 ("Reasonable fees are then to be treated as a secured claim. If a portion of the fees are deemed unreasonable, however, the fees should be bifurcated between the reasonable portion, treated as a secured claim, and the unreasonable portion, treated as an unsecured claim."); Gencarelli, 501 F.3d at 6 (adopting Welzel and explaining that, "[t]o the extent that the contract between the parties calls for unreasonable fees, the fees should be bifurcated and the unreasonable portion should be treated as an unsecured claim"). WTC has found only one Third Circuit case addressing the issue of bifurcating a secured creditor's attorneys' fees into secured and unsecured claims. See In re Ryker, No. 06-1872, 2007 WL 2138590 (3d Cir. July 27, 2007), aff'g sub nom Ryker v. Current, 338 B.R. 642 (D.N.J. 2006)

See **Exhibit C** (compiling the Ryker decisions). In Ryker, the District court for the District of New Jersey held that a secured creditor could bifurcate its claim for attorneys' fees, recovering reasonable attorneys' fees as a secured claim under Section 506(b) and unreasonable fees as an unsecured claim under Section 502(b). See Ryker, 338 B.R. at 653. The Third Circuit affirmed, stating "[a]s we have noted, '[t]he Bankruptcy Code does not speak of secured and unsecured creditors, but of allowed secured and unsecured claims.'" 2007 WL 2138590, at *3 n.6 (quoting In re Indian Palms Assocs., Ltd., 61 F.3d 197, 202 n.6 (3d Cir. 1995)); see also Welzel, 275 F.3d at 1318 ("If a portion of the fees are deemed unreasonable, however, the fees should be bifurcated between the reasonable portion, treated as a secured claim, and the unreasonable portion, treated as an unsecured claim."); Gencarelli, 501 F.3d at 6 (same).

Based on its decision in Ryker, it is unlikely that the Third Circuit would adopt the Mediator's position that Section 506(b) negates the allowance of attorneys' fees for unsecured creditors but does not negate such claims for undersecured creditors. There is no rational basis for allowing as an unsecured claim a secured creditor's attorneys' fees but categorically disallowing the attorneys' fees of an entirely unsecured creditor. The Court should therefore reject the Mediator's recommendation and, consistent with the suggestion of Third Circuit precedent, join the vast majority of post-Travelers courts who have concluded "that section 506(b) does not implicate unsecured claims for post-petition attorneys' fees, and it therefore interposes no bar to recovery." Ogle, 586 F.3d at 148.

## II. The Mediator Improperly Drew an Inference from the Supreme Court's Silence.

What appears to have under-girded the Mediator's recommendation was an improper inference that he drew from the fact that the Supreme Court did not resolve the 506(b) negation argument in its decision. See Travelers, 549 U.S. at 454-56. In his Report, the Mediator concluded that, because "[t]he Supreme Court was surely aware, at the time of its decision in

Travelers, that a number (if not a majority) of courts had held that absent a consensual arrangement, an *unsecured* claim for *postpetition* fees under a prepetition contract is not allowable when asserted against an *insolvent* debtor," he should "reject the notion that the use or statement by the Supreme Court of a general principle that 'remains true' was intended to be an unraveling of years of jurisprudence by these courts in the bankruptcy area or a definitive resolution of the well-known majority/minority split on this issue." Report, at 12 (emphasis in original). What it appears the Mediator is saying is that Travelers did nothing to change the legal landscape (e.g., because it was specifically addressing only the Fobian rule and refused to resolve the 506(b) negation argument) and thus the Mediator could ignore the rationale of the opinion and choose, if he so elected (as he did), to adopt the pre-Travelers' rationale of several courts.

The inference that the Mediator drew from the Supreme Court's silence is improper in at least two respects. First, in Travelers, the Supreme Court expressly declined to address multiple arguments, including whether Section 506(b) can be read to mean that Congress intended to not allow unsecured creditors to recover attorneys' fees, because those arguments were not raised or addressed below. See Travelers, 549 U.S. at 455 ("[W]e ordinarily do not consider claims that were neither raised nor addressed below."). Second, the Supreme Court's decision not to address "whether, following the demise of the Fobian rule, other principles of bankruptcy law might provide an independent basis for allowing Travelers' claim for attorney's fees," id. at 456, creates no inference as to its opinion on the matter, since "rights are not defined by inferences from opinions which did not address the question at issue." Texas v. Cobb, 532 U.S. 162, 169 (2001); see also Cohen v. De La Cruz, 106 F.3d 52, 58 (3d Cir. 1997) ("The [Supreme] Court's mere acknowledgment of an arguable position not only is dicta, but also does not suggest any

future direction of the Court."); see generally Hagans v. Lavine, 415 U.S. 528, 535 n.5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."); United States v. More, 3 Cranch 159, 172 (1805) (where a matter passes "*sub silentio*, [ ] the court does not consider itself as bound by that case"); United States v. Harrison, 296 F.3d 994, 1005 (10th Cir. 2002) ("[A] prior opinion cannot stand as precedent for a proposition of law not explored in the opinion, even when the facts stated in the opinion would support consideration of the proposition."); United States v. Stewart, 650 F.2d 178, 180 (9th Cir. 1981) (where an issue is not properly before the Supreme Court, "it would be improper to draw any inference from the Court's silence on that issue"); Michigan v. U.S. Army Corps of Eng'rs, 911 F. Supp. 2d 739, 753 (N.D. Ill. 2012) ("Drawing inferences from the absence of discussion in a case can be a misleading interpretive methodology[.]") (citing Affymax, Inc. v. Ortho–McNeil–Janssen Pharm., Inc., 660 F.3d 281, 285 (7th Cir. 2011)); Spence v. Sheets, 675 F. Supp. 2d 792, 820 (S.D. Ohio 2009) (courts are "not bound by any perceived implications that may have been inferred" from a prior opinion) (citing Lopez v. Monterey Cnty., 525 U.S. 266, 281 (1999)); Cash v. Califano, 469 F. Supp. 129, 132 (W.D. Va. 1979) ("[T]his court is unaware of any authority for the proposition that the Supreme Court's silence as to the question will serve to create a presumption or inference[.]"). By concluding that because the Travelers' decision did not reach certain issues, the import of its decision should be limited, is nonsensical. The Travelers' Court plainly held that contracts shifting responsibility for attorneys' fees to the debtor are enforceable in bankruptcy, and that, absent a clear limitation in some other section of the Code, Section 502(b) requires that such a claim be allowed. Travelers, 549 U.S. at 448 & 452-53. Moreover, implicit in the presentation of the issue to the Court in Travelers, as well in

pre-Travelers Ninth Circuit application of the Fobian rule, is that post-petition attorneys' fees subject to a pre-petition contract were recoverable if they were incurred litigating non-bankruptcy issues.

In any event, as set forth above, the vast majority of courts have rejected the 506(b) negation argument, as well as the several other rationales relied upon by Judge Farnan in recommending disallowance of the entirety of WTC's unsecured claim under 502(b). Although the Third Circuit has yet to rule on the issue, its decision in Ryker suggests strongly that it will follow the Second, Seventh, and Ninth Circuits, as well as the many lower courts, in finding in favor of allowance of an unsecured creditor's claim for attorneys' fees incurred post-petition pursuant to a pre-petition contract.

## CONCLUSION

The Mediator's recommendation to disallow WTC's Unsecured Fee Claim is contrary to the teachings of Travelers and against the great weight of authority that has developed in its wake. Although it did not explicitly rule on the issue now before the Court, the rationale of Travelers has caused twelve of sixteen courts who have reached the issue to conclude that contractually-based post-petition fees and expenses of an unsecured creditor are properly allowable under Bankruptcy Code Section 502(b). Every Circuit Court to reach the issue since Travelers (three in total) has so found. At least one Delaware bankruptcy judge (Judge Walsh) acknowledged the change effected by Travelers and reversed himself. And, though the Third Circuit has yet to rule on the issue, its decision in Ryker suggests that it will ultimately agree with the great weight of authority. As a result, WTC objects to the Mediator's recommendation and urges this Court to reject it and rule that WTC's claim is allowed for the reasons set forth in WTC's Original Submission.

Dated: Wilmington, Delaware
January 20, 2015

Respectfully submitted,

SULLIVAN HAZELTINE ALLINSON LLC

*/s/ William D. Sullivan*

William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market Street, Suite 1300
Wilmington, DE 19801
302-428-8191

and

BROWN RUDNICK LLP
Robert J. Stark
James W. Stoll
Seven Times Square
New York, NY 10036
212-209-4800

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*