# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY, et al.,[1]<br>(f/k/a Tribune Company), | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Related to D.I. 14011 and 14028** |

# REPLY OF THE REORGANIZED DEBTORS
## TO WILMINGTON TRUST COMPANY'S LIMITED OBJECTION
### TO MEDIATOR'S REPORT AND RECOMMENDATION

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Media Company (0355); California Community News, LLC (5306); Chicago Tribune Company, LLC (3437); Chicagoland Publishing Company, LLC (3237); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); ForSaleByOwner.com Referral Services LLC (9205); Hoy Publications, LLC (2352); Internet Foreclosure Service, LLC (6550); KDAF, LLC (6969); KIAH, LLC (4014); KPLR, Inc. (7943); KRCW, LLC (1772); KSWB, LLC (7035); KTLA, LLC (3404); KTXL, LLC (3844); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Magic T Music Publishing Company, LLC (6522); NBBF, LLC (0893); Oak Brook Productions, LLC (2598); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Daily Press, LLC (9368); The Hartford Courant Company, LLC (3490); The Morning Call, LLC (7560); TMS News and Features, LLC (2931); Tower Distribution Company, LLC (9066); Towering T Music Publishing Company, LLC (2470); Tribune 365, LLC (7847); Tribune Broadcasting Company, LLC (2569); Tribune Broadcasting Hartford, LLC (1268); Tribune Broadcasting Indianapolis, LLC (6434); Tribune Broadcasting Seattle, LLC (2975); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, LLC (1479); Tribune Entertainment Company, LLC (6232); Tribune Investments, LLC (6362); Tribune Media Services, LLC (1080); Tribune Media Services London, LLC (6079); Tribune ND, LLC (4926); Tribune Publishing Company, LLC (9720); Tribune Television New Orleans, Inc. (4055); Tribune Washington Bureau, LLC (1088); WDCW, LLC (8300); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191); WPMT, LLC (7040); WSFL, LLC (5256); WXMI, LLC (3068).  The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ..................................................................................... 1

II.  JUDGE FARNAN CORRECTLY CONCLUDED THAT
     THE CLAIM FOR POSTPETITION FEES UNDER
     THE PREPETITION INDENTURE MUST BE DISALLOWED ............................. 4

    A.   The Text And Purpose Of The Bankruptcy Code
          Prohibit Unsecured Claims For Postpetition Fees
          Under A Prepetition Contract ............................................................................ 4

        1.   Judge Farnan's Recommendation Is Consistent With
               Sections 502(b), 506(a), And 506(b) Of The Bankruptcy Code ............... 4

        2.   Judge Farnan's Recommendation Is Consistent With Other Sections
               Of The Bankruptcy Code And The Policies Underlying Them ................ 7

    B.   Judge Farnan Correctly Concluded That *Travelers*
          Did Not Change The Majority Rule .................................................................. 10

    C.   Post-*Travelers* Authority Does Not Compel A Different Result ................... 14

        1.   All Of The Authority Cited By Wilmington Trust Was Published
               Before Judge Farnan Issued His Recommendation ................................. 14

        2.   Many Courts Have Continued To Apply The Majority Rule ................. 15

        3.   Unpublished Post-*Travelers* Decisions Within The Third Circuit
               Have Not Questioned, Much Less Rejected, The Majority Rule ........... 16

        4.   The Other Authority Cited By Wilmington Trust Is
               Irrelevant To This Fee Dispute ................................................................. 18

III. THE INDENTURE LIMITS WILMINGTON TRUST
     TO A MAXIMUM CLAIM OF $1.74 MILLION ................................................... 23

IV.  WILMINGTON TRUST'S FEES ARE UNREASONABLE ................................... 26

V.   THE CLAIM FOR POST-EFFECTIVE DATE FEES
     MUST BE DISALLOWED ....................................................................................... 30

VI.  CONCLUSION ......................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 268 Ltd.*, 789 F.2d 674 (9th Cir. 1986) .......................................................................... 20

*In re Agway, Inc.*, Case No. 02-65872,
    2008 WL 2827439 (Bankr. N.D.N.Y. July 18, 2008) ................................................... 15,19

*In re American Home Mort. Holdings, Inc.*, 501 B.R. 44 (Bankr. D. Del. 2013) ........................ 9

*In re Bailey*, Case No. 12-60253-7, 2013 WL 3380168 (Bankr. D. Mont. July 8, 2013) .......... 18

*Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*,
    73 F.3d 150 (7th Cir. 1996) ....................................................................................... 27

*In re Busch*, 369 B.R. 614 (BAP 10th Cir. 2007) ................................................................... 18

*In re Busson-Sokolic*, 635 F.3d 261 (7th Cir. 2011) ............................................................... 19

*In re Castillo*, 488 B.R. 441 (Bankr. C.D. Cal. 2013) ............................................................ 20

*In re Ceda Mills, Inc.*, Case No. 04-24452JAD,
    2009 WL 8556804 (Bankr. W.D. Pa. Feb. 11, 2009) ................................................... 17

*In re Electric Mach. Enters.*, 371 B.R. 549 (Bankr. M.D. Fla. 2007) .................................. 15,21

*Fishman v. Fox River Commons Shopping Ctr., LLC*, Case No. 2-12-0281,
    2012 Ill. App. Unpub. LEXIS 3057 (Ill. App. Ct. Dec. 14, 2012) ................................... 28

*In re Gencarreli*, 501 F.3d 1 (1st Cir. 2007) ......................................................................... 19

*In re Global Indus. Techs.*, 327 B.R. 230 (Bankr. W.D. Pa. 2005) ...................................... 7,10

*In re Global Indus. Techs.*, 344 B.R. 382 (Bankr. W.D. Pa. 2006) ...................................... 5,7,9

*In re Hitch*, Case No. 07-70803,
    2009 Bankr. LEXIS 1232 (Bankr. C.D. Ill. May 29, 2009) ........................................... 16

*In re Holden*, 491 B.R. 728 (Bankr. E.D.N.C. 2013) .............................................................. 18

*In re Jimenez*, 472 B.R. 106 (Bankr. M.D. Fla. 2012) ............................................................ 16

*In re Kindred Healthcare, Inc.*, Case No. 99-3199 (MFW),
    2003 Bankr. LEXIS 969 (Bankr. D. Del. Aug. 18, 2003) .............................................. 10

**Page(s)**

*In re Kroh Bros. Dev. Co.*, 105 B.R. 515 (Bankr. W.D. Mo. 1989) ............................................. 27

*In re LMR, LLC*, 496 B.R. 410 (Bankr. W.D. Tex. 2013) ............................................................ 16

*In re Loewen Grp. Int'l*, 274 B.R. 427 (Bankr. D. Del. 2002) ................................................ 7,17

*Medcom Holding Co. v. Baxter Travenol Labs.*, Inc., 200 F.3d 518 (7th Cir. 1999) ................. 28

*In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162 (Bankr. S.D.N.Y. 1985) ...................................... 27

*In re Oakwood Homes Corp.*, 394 B.R. 352 (Bankr. D. Del. 2008) .......................................... 17

*Ogle v. Fidelity Deposit Co.*, 586 F.3d 143 (2d Cir. 2009) ................................................... 15,19

*In re Old Colony, LLC*, 476 B.R. 1 (Bankr. D. Mass. 2012) ..................................................... 15

*In re Olde Prairie Block Owner LLC*, 460 B.R. 201 (Bankr. N.D. Ill. 2011) ............................ 16

*In re Qmect, Inc.*, 368 B.R. 882 (Bankr. N.D. Cal. 2007) ........................................................ 20

*Quick v. NLRB*, 245 F.3d 231 (3d Cir. 2001) ........................................................................... 23

*Randolph v. Scruggs*, 190 U.S. 533 (1903) ................................................................................. 8

*In re Rubin Family Irrevocable Stock Trust*, 516 B.R. 221 (Bankr E.D.N.Y. 2014) ........ 18,19-20

*In re Ryker*, Case No. 06-1872, 2007 WL 2138590 (3d Cir. July 26, 2007) ............................. 22

*In re School Specialty, Inc.*, Case No. 13-10125 (KJC),
2013 Bankr. LEXIS 1897 (Bankr. D. Del. Apr. 22, 2013) ................................................... 22

*In re Seda France, Inc.*, Case No. 10-12948-CAG,
2011 WL 3022563 (Bankr. W.D. Tex. July 22, 2011) ....................................................... 15

*In re SNTL Corp.*, 571 F.3d 826 (9th Cir. 2009) ..................................................................... 20

*Texas v. Cobb*, 532 U.S. 162 (2001) ....................................................................................... 14

*Travelers Cas. & Sur. Co. v. Pacific Gas & Elec. Co.*, 549 U.S. 443 (2007) .................... *passim*

*United Merchants & Manufacturers, Inc. v. Equitable Life Assurance Society*,
674 F.2d 134 (2d Cir. 1982) ............................................................................................... 19

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988) .............................................................................................................. 7

*United States v. Harrison*, 296 F.3d 994 (10th Cir. 2002) ................................................. 13-14

**Page(s)**

*In re WCS Enters.*, 381 B.R. 206 (Bankr. E.D. Va. 2007)............................................................8

*Waltuch v. ContiCommodity Servs., Inc.*, 833 F. Supp. 302 (S.D.N.Y. 1993),
    *aff'd in part, rev'd in part*, 88 F.3d 87 (2d Cir. 1996) .........................................24

*Wetzel v. Advocate Realty Investments, LLC*, 275 F.3d 1308 (11th Cir. 2001).........................22

*Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590 (2000) .............................28

*In re Worldwide Direct, Inc.*, 334 B.R. 112 (Bankr. D. Del. 2005).............................................27

**Statutes**

11 U.S.C. § 502(b) ..................................................................................................................5

11 U.S.C. § 506(b) ...........................................................................................................6,20-21

11 U.S.C. § 1141 ....................................................................................................................31

**Other Authority**

Mark S. Scarberry, *Interpreting Bankruptcy Code Sections 502 And 506:*
    *Post-Petition Attorneys' Fees In A Post-Travelers World*,
    15 AM. BANKR. INST. L. REV. 611 (2007).....................................................................*passim*

Jennifer M. Taylor and Christopher J. Mertens, *Travelers And The Implications*
    *On Allowability Of Unsecured Creditor Claims For Post-Petition Attorneys' Fees*
    *Against The Bankruptcy Estate*, 81 AM. BANKR. L.J. 123 (2007) ..........................5,7,8,12,21

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 993 (1990) ............................................23-24

## I.    PRELIMINARY STATEMENT

With the consent of the parties, the Court appointed Judge Farnan to mediate certain "Fee Matters" between the Reorganized Debtors, Wilmington Trust, Law Debenture, and Deutsche Bank, and directed him to "issue a report and recommendation . . . with respect to the disputed factual and legal issues raised by the Fee Matters to the extent not otherwise settled or consensually resolved during the mediation process."[1]

Judge Farnan received extensive briefing, conducted multiple mediation sessions, and had follow-up meetings and other conversations with the parties.  With Judge Farnan's assistance, the Reorganized Debtors ultimately reached settlements with Law Debenture and Deutsche Bank, but the dispute with Wilmington Trust remained unresolved.  Accordingly, on October 24, 2014, Judge Farnan issued a *Report and Recommendation* in which he recommended <u>disallowance</u> of both Wilmington Trust's $30 million Class 1F Other Parent Claim (the "Claim") and the unpaid balance of Wilmington Trust's Creditors Committee Member/Fee Expense Claim, together with allowance of the remaining portion of Wilmington Trust's substantial contribution claim (the large majority of which had been withdrawn).[2]

Wilmington Trust does not challenge Judge Farnan's recommended disallowance of its Creditors Committee Member/Fee Expense Claim or his determination regarding the remaining substantial contribution claim (which the Reorganized Debtors have now paid).  Wilmington Trust, however, does take issue with Judge Farnan's recommendation that Wilmington Trust's

---

[1]    *Amended Order Appointing Mediator Regarding Contested Fee Matters* [D.I. 13642] ¶ 1.

[2]    *Mediator's Report And Recommendation* ("Rec.").  A copy of the Mediator's Recommendation is attached to the Court's Scheduling Order with respect to this matter. [D.I. 14011].  Capitalized terms not defined in this Reply have the meanings given to them in the Mediator's Recommendation or in the *Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries* [D.I. 12072] (the "Plan").  Wilmington Trust's Objection [D.I. 14028] is cited as "WTC Obj."

$30 million Claim be disallowed based on the majority rule that "an *unsecured* claim for *postpetition* fees under a prepetition contract is not allowable when asserted against an *insolvent* debtor." Rec. at 12 (emphasis in original). Specifically, Wilmington Trust criticizes Judge Farnan's application of the Supreme Court's *Travelers*[3] decision and contends that a number decisions since *Travelers* have rejected that majority rule. *See* WTC Obj. at 3-4.

Wilmington Trust's criticisms are meritless. As explained below, Judge Farnan's findings are fully consistent with the text and purpose of the Bankruptcy Code. *Travelers* did not change the majority rule, and the post-*Travelers* decisions cited by Wilmington Trust – all of which were issued prior to Judge Farnan's Recommendation – do not undermine Judge Farnan's conclusion that allowance of Wilmington Trust's Claim would "thwart" the "core bankruptcy principle" of "equal distribution among creditors." Rec. at 14. Likewise misplaced is Wilmington Trust's attempt to recast the majority rule as "a small minority of cases." The weight of authority addressing the question since *Travelers* continues to hold that unsecured creditors do not have a blank check to inflate prepetition claims through unchecked and unfettered postpetition fees.

Moreover, even if the Court disagrees with Judge Farnan's Recommendation and concludes that an unsecured claim for postpetition fees may be allowed under other circumstances, Wilmington Trust's Claim here nevertheless must be disallowed or substantially reduced for several reasons:

- <u>First</u>, the Reorganized Debtors have no liability under Wilmington Trust's Indenture – the prepetition contract at issue – for fees that Wilmington Trust itself has not paid and is not liable. As a consequence, even if otherwise allowable, the Claim cannot

---

[3]    *Travelers Cas. & Sur. Co. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 447 (2007).

exceed the $3 million paid by Wilmington Trust to its professionals, less the $1.26

million that the Reorganized Debtors already have reimbursed Wilmington Trust on

account of those fees, for a maximum total Claim of $1.74 million.  The remainder of the

Claim is for contingency fees as to which no amount is due and fees incurred by

professionals who worked for, took direction from, and were paid by parties other than

Wilmington Trust.

- •    <u>Second</u>, the fees for which Wilmington Trust seeks reimbursement are not

reasonable.  Under the circumstances of this case, there was no legitimate basis for

Wilmington Trust to permit professionals allegedly under its supervision to run up more

than $30 million in alleged fees.  A $30 million fee claim is patently unreasonable

considering that the subordinated PHONES Notes were always out of the money, that

holders of PHONES Notes refused to pay more than $3 million for Wilmington Trust's

professionals, and that those professionals – facing no realistic prospect of payment from

the bankruptcy estate –negotiated for contingency fees or arranged for payment from

more senior stakeholders.

- •    <u>Third</u>, the Plan disallows all claims for fees incurred after the Effective

Date.  Wilmington Trust is not entitled to a seven-figure claim for litigating over its

Claim after Tribune's reorganization became effective.

Accordingly, the Court should adopt Judge Farnan's Recommendation and disallow the

Claim in its entirety.  Alternatively, the Court should limit the Claim to no more than

$1.74 million to reflect the unreimbursed fee liability actually incurred by Wilmington Trust.

## II.   JUDGE FARNAN CORRECTLY CONCLUDED THAT THE CLAIM FOR POSTPETITION FEES UNDER THE PREPETITION INDENTURE MUST BE DISALLOWED

Judge Farnan correctly applied the majority rule in finding that Wilmington Trust's Claim should be disallowed in its entirety.  As explained below, Judge Farnan's conclusion is wholly consistent with the statutory scheme, applicable case law, and the underlying purpose and policy of the Bankruptcy Code.  Sections 502(b), 506(a), and 506(b) of the Bankruptcy Code – among others – support the majority rule that unsecured claims for postpetition fees under a prepetition contract are prohibited.  Contrary to Wilmington Trust's assertion, the Supreme Court did not overturn the majority rule when it decided *Travelers* nearly eight years ago, and the post-*Travelers* decisions cited by Wilmington Trust do not compel a different result.

### A.   The Text And Purpose Of The Bankruptcy Code Prohibit Unsecured Claims For Postpetition Fees Under A Prepetition Contract.

Judge Farnan's Recommendation is grounded in the text of the Bankruptcy Code – particularly section 506(b), which he found to have the "effect of limiting an unsecured creditors' post-petition claim for attorneys' fees against an insolvent debtor."  Rec. at 14.  In reaching that conclusion, Judge Farnan considered and properly rejected Wilmington Trust's contention that disallowance of its Claim would be inconsistent with sections 502 and 506 of the Code.  *See id*. at 9-14.

#### 1.   Judge Farnan's Recommendation Is Consistent With Sections 502(b), 506(a), And 506(b) Of The Bankruptcy Code.

"The Bankruptcy Code provides a clear textual basis for precluding addition of [postpetition] fees to the allowed amount of an unsecured claim. . . .  When read together, sections 502(b), 506(a), and 506(b) have a plain meaning that precludes the allowance of post-petition attorneys' fees on unsecured claims."  Mark S. Scarberry, *Interpreting Bankruptcy Code*

*Sections 502 And 506:  Post-Petition Attorneys' Fees In A Post-Travelers World*, 15 AM.

BANKR. INST. L. REV. 611, 615, 636 (2007) [*Post-Travelers World*].[4]

      a.    <u>Section 502(b)</u>.  To start, section 502(b) generally governs the allowance of

unsecured claims.  It provides for the Court to "determine the amount [of a prepetition claim] <u>as</u>

<u>of the date of the filing of the petition</u>, and [to] allow such claim <u>in such amount</u>" unless an

exception enumerated in ensuing subsections applies.  11 U.S.C. § 502(b) (emphasis added).

"Because postpetition attorneys' fees have not been incurred on the date the bankruptcy is filed,

a claim cannot include postpetition fees."  *In re Global Indus. Techs.*, 344 B.R. 382, 386 (Bankr.

W.D. Pa. 2006) [*Global Indus. II*]; *Post-Travelers World*, 15 AM. BANKR. INST. L. REV. at 639

("There is a rule in the Bankruptcy Code – in section 502(b) – that the allowable amount of a

claim is to be determined as of the petition date.  That amount would not seem to include

attorneys' fees that have not yet been incurred as of the petition date.  If Congress intended to

make an exception to this rule, it would have done so 'clearly and explicitly.'") (footnote

omitted).[5]

---

[4]   "A holistic interpretation of the Code with respect to the issue of an unsecured creditor's
claim for post-petition fees necessarily leads one to the conclusion that such a claim must be
disallowed.  Section 502(b)(1) expressly incorporates applicable law, including § 506(b),
which limits the recovery of post-petition attorneys' fees to oversecured creditors."  Jennifer
M. Taylor and Christopher J. Mertens, *Travelers And The Implications On Allowability Of
Unsecured Creditor Claims For Post-Petition Attorneys' Fees Against The Bankruptcy
Estate*, 81 AM. BANKR. L.J. 123, 163 (2007) [*Travelers Implications*].  Copies of *Post-
Travelers World*, *Travelers Implications*, and unpublished authority not otherwise included
with Wilmington Trust's Objection are attached as <u>Exhibit B</u>.

[5]   It has been suggested that, because section 502(b)(1) contemplates allowance of contingent
claims, section 502(b) does not operate to disallow claims for postpetition fees.  This
misapprehends the statute.  A contractual claim for postpetition fees is not a contingent claim
"when its very existence, and its amount, are within the control of the creditor, and not
subject to the occurrence of any event other than the creditor's choice.  The right to fees –
past and future – is indeed a claim as of the petition date, and thus it is discharged, but that
does not mean that its allowable amount must be determined as of any date other than the
petition date.  Fees incurred to that point are part of the allowable amount of the pre-petition

b.      Section 506(a).  For creditors with a security interest, section 506(a) then "determines the amount of the creditor's secured claim and the amount of the creditor's unsecured claim, if any." *Post-Travelers World*, 15 AM. BANKR. INST. L. REV. at 649.  It does so with reference to the creditor's "allowed claim," thus invoking section 502(b).  Specifically, section 506(a) "takes the amount of the section 502(b) allowed claim and either treats it as wholly secured (if the value of the collateral . . . is equal to or greater than the amount of the allowed claim), or else bifurcates it (if the value of the collateral . . . is less than the amount of the allowed claim.)  As a result, section 506(a) deals with every dollar of claim that is allowed under section 502(b)." *Id.*

c.      Section 506(b).  Finally, section 506(b) "takes the third step" by authorizing "allowance of an additional amount beyond the amount allowed under section 502(b)." *Id.* (emphasis added).  Specifically, section 506(b) provides that claims for reasonable contractual attorneys fees "shall be allowed," but only "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim."  11 U.S.C. § 506(b).  In other words, claims for postpetition attorney fees are allowed only in respect of oversecured claims.  "The clear implication is that post-petition . . . fees . . . cannot already be part of the section 502(b) claim if they are to be added to it by section 506(b)." *Post-Travelers World*, 15 AM. BANKR. INST. L. REV. at 649; *id.* at 639-40 ("The Code does not provide 'clearly and explicitly' for post-petition fees to be allowed on unsecured claims; instead it provides explicitly only for post-petition fees to be allowed on oversecured claims, leaving a strong negative impression with regard to allowance of post-petition fees on unsecured claims.").

---

claim; fees incurred after that point are not allowable, except as provided by section 506(b)." *Post-Travelers World*, 15 AM. BANKR. INST. L. REV. at 653 (footnotes omitted).

As Judge Farnan observed, "it is a reasonable conclusion that Congress would not have to expressly provide for the recovery of post-petition fees by oversecured creditors, if such fees were generally recoverable by all creditors."  Rec. at 13; *see, e.g.*, *Global Indus. II*, 344 B.R. at 385 ("[T]he maxim of *expressio unius est exclusio alterius* (the expression of one is the exclusion of the alternatives) applie[s] to analysis of § 506(b) attorneys' fees claims.  Because Congress specifically authorized payment of postpetition attorneys' fees for oversecured creditors and said nothing about allowance of such fees for unsecured creditors, there is no clear entitlement to such fees for unsecured creditors."); *In re Loewen Grp. Int'l*, 274 B.R. 427, 444 n.36 (Bankr. D. Del. 2002) ("If post-petition fees and costs were generally recoverable by all creditors, then Congress would not [have] expressly provided for their recovery by oversecured creditors in § 506(b).").[6]  Thus, "[b]ecause post-petition fees are not allowed by section 502(b) but rather by section 506(b), we are left with the clear conclusion that post-petition fees cannot be allowed in favor of undersecured creditors or wholly unsecured creditors, neither of whom receive any benefit from section 506(b)."  *Post-Travelers World*, 15 AM. BANKR. INST. L. REV. at 651.

### 2.    Judge Farnan's Recommendation Is Consistent With Other Sections Of The Bankruptcy Code And The Policies Underlying Them.

The foregoing textual analysis is supported by other provisions of the Bankruptcy Code and the policies underlying the Code itself.  For example, Judge Farnan pointed out that the Code

---

[6]    In *Timbers*, the Supreme Court held that section 506(b) also has the "substantive effect of denying undersecured creditors postpetition interest on their claims."  *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988).  "This rationale applies equally to claims for post-petition fees and costs."  *Loewen*, 274 B.R. at 444 n.36; *In re Global Indus. Techs.*, 327 B.R. 230, 240 (Bankr. W.D. Pa. 2005) [*Global Indus. I*] (*Timbers* "supports the majority position"); *Travelers Implications*, 81 AM. BANKR. L.J. at 149 ("There is no reason why Justice Scalia's argument [in *Timbers*] should not apply equally to attorneys' fees.").

specifically provides a "mechanism for seeking postpetition fees and expenses" through the "'substantial contribution' provisions of Section 503(b)(3)(D) and (4)."  Rec. at 14.  Allowance of a claim for postpetition fees in favor of every creditor with a prepetition contract containing an attorneys' fees clause would render that statutory mechanism meaningless.  *See In re WCS Enters.*, 381 B.R. 206, 210 (Bankr. E.D. Va. 2007) (allowance of unsecured claims for postpetition fees would conflict with the requirement that unsecured creditors establish a "substantial contribution" as a condition to reimbursement); *Travelers Implications*, 81 Am. Bankr. L.J. at 148 ("Congress has clearly expressed its intent to award post-petition attorneys' fees to parties in several circumstances – none of which applies as a general matter to an unsecured creditor's claim for post-petition attorneys' fees.") (also citing sections 330, 362(k), and 523(d) of the Code).

Judge Farnan's recognition of the policy embodied in sections 503(b)(3)(D) and (4) is supported by more than a century of jurisprudence, dating back to *Randolph v. Scruggs*, 190 U.S. 533 (1903), in which Justice Holmes held that an unsecured claim for postpetition fees was allowable only "for services which were beneficial to the estate."  *Id.* at 539; *see WCS*, 381 B.R. at 210 ("The policy articulated in *Randolph v. Scruggs* is currently reflected in § 503(b)(3) and (4) of the Bankruptcy Code.").  Here, Wilmington Trust has conceded that only $496,592 of its requested fees meet the high "substantial contribution" burden, and the Reorganized Debtors already have paid Wilmington Trust that amount.  Wilmington Trust is not entitled to any additional claim for services that, by definition, did not result in a substantial contribution.

Moreover, as Judge Farnan explained, the prohibition of unsecured claims for postpetition fees is consistent with "the Bankruptcy Code's premise of equal distribution among

creditors."  Rec. at 14.  Judge Farnan quoted with approval Judge Fitzgerald's "cogent" analysis in this regard:

> If we were to permit unsecured contractual creditors to recover, as a prepetition claim, their legal fees for actions taken postpetition, debtors would never be out from under the burden of on-going costs, the claims would continue to rise throughout the case, and the universe of prepetition claims would never be ascertainable.  Thus, the Debtor's fresh start and discharge would be impaired.  The concept of parity of distribution among similarly situated creditors would evaporate because some unsecured creditors would be "more equal" than others by virtue of the ability to have the claim continue to grow postpetition.  <u>It is difficult to envision anything more at odds with the spirit of the Bankruptcy Code's scheme for payment to creditors</u>.

*Global Indus. II*, 344 B.R. at 385; *see In re American Home Mortg. Holdings, Inc.*, 501 B.R. 44, 59 (Bankr. D. Del. 2013) ("One of the primary goals – if not the primary goal – of the Code is to ensure that similarly-situated creditors are treated fairly and enjoy an equality of distribution from a debtor absent a compelling reason to depart from this principle.").

To that end, one commentator has noted the perverse, discriminatory impact of the contrary rule advanced by Wilmington Trust:

> The equality concerns are equally real.  The Code does not, on its face, discriminate against tort claimants, except that they are not likely to be oversecured creditors entitled to post-petition interest and fees.  Thus the Code on its face leaves tort creditors on a level playing field with most contract creditors.  The minority position [allowing claims for fees], if accepted, would put tort creditors (and others without attorneys' fee clauses) at a real disadvantage, especially in cases in which there are substantial assets available to provide value for unsecured claim holders.  The contract creditors who have attorneys' fee clauses could be reimbursed for a substantial part of their cost of participating in the case, but tort creditors would not (unless their claims arose under a statute that provided broadly for fees).

*Post-Travelers World*, 15 Am. Bankr. Inst. L. Rev. at 642-43.

**B.      Judge Farnan Correctly Concluded That *Travelers*
          Did Not Change The Majority Rule.**

There is no dispute that, before the Supreme Court's *Travelers* decision in 2007, the

"majority rule" categorically disallowed unsecured claims for postpetition fees arising under a

prepetition contract.  *Global Indus. I*, 327 B.R. at 239 ("The court agrees with the majority of

courts that unsecured creditors may not include postpetition attorneys' fees in their claims from a

bankruptcy estate."); *Post-Travelers World*, 15 AM. BANKR. INST. L. REV. at 638-39 ("The clear

majority of the courts that have rendered holdings on the . . . issue under the Code, where the

debtor is insolvent, have refused to allow post-petition fees on unsecured claims, and that is often

called the 'majority position.'") (footnote omitted).  Nor is there any dispute that, as Judge

Farnan observed, the majority rule had been adopted in this District and Circuit in at least three

published opinions.  Rec. at 8 (citing *Loewen*, *Global Indus. I*, and *Global Indus. II*).[7]

There is also no dispute, as Judge Farnan explained, that *Travelers* did not decide

whether the majority rule was or was not correct.  WTC Obj. at 3; Rec. at 12-13.  Rather, the

Supreme Court in *Travelers* merely overruled the Ninth Circuit's "*Fobian* rule," which drew an

unsupportable distinction between contractual attorneys fees incurred in litigating "basic contract

enforcement questions" under state law (held to be allowable) and those incurred in litigating

"issues peculiar to federal bankruptcy law" (held not to be allowable).  *Travelers*, 549 U.S. at

447.  The Court expressly declined to consider whether unsecured claims for prepetition fees are

allowable at all:  "we express no opinion with regard to whether, following the demise of the

*Fobian* rule, other principles of bankruptcy law might provide an independent basis for

---

[7]      Judge Walrath also had adopted the majority rule in an unpublished opinion.  *In re Kindred
Healthcare, Inc.*, Case No. 99-3199 (MFW), 2003 Bankr. LEXIS 969, at *13 (Bankr. D. Del.
Aug. 18, 2003) ("We concur in this reasoning [of *Loewen*].  Thus, we conclude that post-
petition attorneys' fees are not recoverable by an unsecured creditor, even where they have a
contractual or other legal basis for their allowance.").

disallowing Travelers' claim for attorney's fees.  We conclude <u>only</u> that the Court of Appeals erred in disallowing that claim based on the fact that the fees at issue were incurred in litigating issues of bankruptcy law." *Id.* at 456 (emphasis added).[8]

Given these statements, Judge Farnan concluded that the *Travelers* holding was "very narrow," Rec. at 12-13, in that "the Court did not foreclose any arguments independent of the *Fobian* rule for disallowance of post-petition fees incurred by unsecured claim holders." *Post-Travelers World*, 15 AM. BANKR. INST. L. REV. at 635.  In fact, the Court concluded that the question at issue here – whether an unsecured claim for postpetition fees is allowable at all – is "analytically distinct" from the narrow question actually before it in *Travelers* (where the Court had "granted certiorari to resolve a conflict among the lower courts regarding the *Fobian* rule"). *Travelers*, 549 U.S. at 455; *see id.* at 449 ("This case requires us to consider whether the Bankruptcy Code disallows contract-based claims for attorneys' fees based solely on the fact that the fees at issue were incurred litigating issues of bankruptcy law.  We conclude that it does not.").

Despite all this, Wilmington Trust argues that the Supreme Court effectively <u>did</u> decide the issue as to which the Court expressed "no opinion," asserting that the majority rule is "inconsistent with the underlying rationale of *Travelers*."  WTC Obj. at 3, 4.  Wilmington Trust claims that, notwithstanding the Court's description of the issue as "analytically distinct," the question of whether an unsecured claim may be allowed for postpetition fees somehow was "implicit in the presentation of the issue to the Court in *Travelers*."  *Id*. at 12.

---

[8]    The Court specifically declined to address arguments "that § 506(b) categorically disallows unsecured claims for contractual attorney's fees" and "that Travelers' claim should be denied based on the theory that the fees at issue were incurred in connection with activities that were not reasonably necessary to preserve Travelers' rights and, alternatively, were not authorized by Travelers' contract with [the debtor]."  *Id.* at 454, 455 n.5.

Specifically, Wilmington Trust relies on the statement in *Travelers* that "the basic federal rule in bankruptcy is that state law governs the substance of claims" and that, because contractual fee clauses can overcome the American Rule, "under the terms of the current Bankruptcy Code, it remains true that an otherwise enforceable contract allocating attorney's fees (*i.e.*, one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy <u>except where the Bankruptcy Code provides otherwise</u>." *Travelers*, 549 U.S. at 448, 450 (emphasis added) (quotations omitted).

That passage does not support Wilmington Trust.  It merely restates the rule embodied in section 502(b)(1) of the Code, which provides for the disallowance of any claim that is unenforceable under "applicable law" except for a reason other than because such claim is contingent or unmatured.  11 U.S.C. § 502(b)(1).  Critically, as the Court recognized in *Travelers*, "applicable law" includes the bankruptcy law.  *Travelers Implications*, 81 AM. BANKR. L.J. at 145 ("in *Travelers*, the Supreme Court put forth the idea that a provision of the Bankruptcy Code may render a claim unenforceable under § 502(b)(1)").  Thus, "if another provision of the Bankruptcy Code provide[s] a basis for not allowing a claim, the claim could be disallowed under section 502(b)(1)."  *Post-Travelers World*, 15 AM. BANKR. INST. L. REV. at 632.

As explained above, sections 502(b) and 506 of the Code provide exactly that basis with respect to unsecured claims for postpetition fees.  *Travelers Implications*, 81 AM. BANKR. L.J. at 146-47 ("The question follows:  With respect to an unsecured creditor's claim for post-petition attorneys' fees, does the Code provide otherwise?  Because § 506(b) provides otherwise, the answer is yes.").  Thus, Judge Farnan correctly concluded that the Supreme Court's restatement of a general principle of bankruptcy law, when coupled with its express caveat "except where the

Bankruptcy Code provides otherwise" and considering the "very narrow context" of the question actually before it (the circuit split regarding *Fobian*), did not cause the sea change in bankruptcy law now urged by Wilmington Trust:

> I reject the notion that the use or statement by the Supreme Court of a general principle that "remains true" was intended to be an unraveling of years of jurisprudence by these courts in the bankruptcy area or a definitive resolution of the well-know majority/minority split on this issue. Indeed there is no indication in *Travelers* that the Supreme Court meant anything other than to reject the Ninth Circuit's *Fobian* rule.

Rec. at 12.

Judge Farnan further noted that "[t]he Supreme Court did not address <u>any</u> of the underlying bases for the prevailing view prior to *Travelers* (*i.e.*, the disallowance of unsecured claims for post-petition attorneys' fees against an insolvent debtor), including, *inter alia*, the implications of Section 506(b) and the overarching purpose of the Bankruptcy Code in providing equal distribution among similarly situated creditors." *Id.* at 13 (emphasis added). From this, he correctly concluded that *Travelers* did not – expressly or by implication – hold that claims like Wilmington Trust's are allowable.[9]

Wilmington Trust asserts that Judge Farnan somehow drew an "improper" inference "from the Supreme Court's silence" on the question at hand. However, the cases that Wilmington Trust cites stand for the exact opposite proposition. WTC Obj. at 11-12. As Wilmington Trust's own brief make clear, "a prior opinion cannot stand as precedent for a proposition of law not explored in the opinion, even when the facts stated in the opinion would support consideration of the proposition." *United States v. Harrison*, 296 F.3d 994, 1005 (10th

---

[9]    To the contrary, it has been observed that *Travelers* stands for the opposite position. *Travelers Implications*, 81 AM. BANKR. L.J. at 162 (under *Travelers*, "the Supreme Court should and likely will disallow an unsecured creditor's claim for post-petition attorneys' fees against the bankruptcy estate").

Cir. 2002); *e.g.*, *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("rights are not defined by inferences from opinions which did not address the question at issue").

That is precisely the point made by Judge Farnan.  Because the Supreme Court expressly did <u>not</u> consider the question of whether an unsecured claim for postpetition fees may be allowed, Wilmington Trust's attempt to divine a binding rule of law by implication from *Travelers* must fail.

### C.   Post-*Travelers* Authority Does Not Compel A Different Result.

Wilmington Trust spends much of its brief trying to create the impression that courts since *Travelers* have roundly rejected the majority rule.  In doing so, Wilmington Trust purports to "alert the Court" to post-*Travelers* case law that was available to Judge Farnan when he authored the Recommendation.

Wilmington Trust's argument is groundless.  Numerous courts since *Travelers* – including in four decisions that Wilmington Trust cites and four others that it ignores – have <u>affirmed</u> the majority rule.  Further, the pre-*Travelers* decisions within the Third Circuit cited by Judge Farnan remain good law and have not been "rejected" by the courts that authored them. Finally, the remaining cases identified by Wilmington Trust are factually inapposite (involving, for example, solvent debtors), originate from circuits that had adopted the <u>minority rule</u> prior to *Travelers* and continue to adhere to it, or are based on flawed rationales.

### 1.   All Of The Authority Cited By Wilmington Trust Was Published Before Judge Farnan Issued His Recommendation.

In support of its argument that *Travelers* overruled the majority rule and dramatically altered bankruptcy law, Wilmington Trust devotes pages to "advis[ing] the Court on the development in the case law since" *Travelers* was decided in 2007.  WTC Obj. at 3, 5-10.  But the fact is that there has been no such "development" that was unavailable to Judge Farnan.

Rather, as Wilmington Trust concedes, "much of this case law was decided at the time of the parties' final submissions here." *Id.* at 3. Only <u>three</u> of the eleven cases it cites were issued after Wilmington Trust submitted its brief to the Court (which included citations to seven of the cases),[10] and <u>all eleven</u> were decided before Judge Farnan issued his Recommendation.[11]

## 2.    Many Courts Have Continued To Apply The Majority Rule.

Likewise deficient is Wilmington Trust's assertion that "the overwhelming majority of case law since *Travelers* supports WTC's fee application." WTC Obj. at 3. To the contrary, Wilmington Trust itself cites four decisions that have <u>rejected</u> the broad reading of *Travelers* advanced in the Objection. *In re Old Colony, LLC*, 476 B.R. 1, 31-32 (Bankr. D. Mass. 2012) ("where the bankruptcy estate is unable to pay all other creditors in full, postpetition attorneys' fees are not allowable as part of an unsecured claim even where provided for in the underlying contract"); *WCS*, 381 B.R. at 209 ("The Supreme Court, however, expressly declined to reach the issue of whether Travelers, as an unsecured creditor, could recover post-petition attorney's fees . . . ."); *In re Seda France, Inc.*, Case No. 10-12948-CAG, 2011 WL 3022563, at *3 (Bankr. W.D. Tex. July 22, 2011) ("The Supreme Court's holding in *Travelers* is carefully limited to striking down the *Fobian* Rule."); *In re Electric Mach. Enters.*, 371 B.R. 549, 552 (Bankr. M.D. Fla. 2007) ("[t]he Court adopts the majority rule") ("while the Supreme Court recently declined to express an opinion on whether unsecured creditors are entitled to post-petition attorneys' fees in a case under the Bankruptcy Code, existing Supreme Court precedent under pre-Code law supports the majority view") (citations omitted).

---

[10]   Wilmington Trust filed its original brief on March 28, 2013. [D.I. 13397]. Only *Rubin Family* (September 2014), *Holden* (April 2013), and *Bailey* (July 2013) – each cited on page 5 of the Wilmington Trust Objection – were issued after that date.

[11]   Two of the eleven decisions cited by Wilmington Trust are actually the same case. *In re Agway, Inc.*, Case No. 02-65872, 2008 WL 2827439 (Bankr. N.D.N.Y. July 18, 2008), *aff'd Ogle v. Fidelity Deposit Co.*, 586 F.3d 143 (2d Cir. 2009).

Moreover, contrary to Wilmington Trust's claim that "only [those] four (4) courts have endorsed" the majority rule after *Travelers*, WTC Obj. at 6, at least <u>another four</u> cases decided since *Travelers* have continued to follow the majority rule.  *In re LMR, LLC*, 496 B.R. 410, 426 n.9 (Bankr. W.D. Tex. 2013) ("As AVF is undersecured (its collateral is worth less than its debt), AVF is not entitled to recover post-petition, pre-confirmation interest or attorneys fees."); *In re Jimenez*, 472 B.R. 106, 110 (Bankr. M.D. Fla. 2012) ("Alafaya as an unsecured creditor is not entitled to the portion of its claim for post-petition fees and expenses because § 506(b) of the Bankruptcy Code authorizes a creditor to recover post-petition fees, costs, and other expenses only if the creditor holds an over-secured claim.") (following *Electric Machinery*) (footnote omitted); *In re Olde Prairie Block Owner LLC*, 460 B.R. 201, 206 (Bankr. N.D. Ill. 2011) ("An undersecured creditor is not entitled to recover its attorneys' fees.  It is generally recognized that unsecured and undersecured creditors are not entitled to recover post-petition attorneys' fees and similar costs.") (following *Electric Machinery*); *In re Hitch*, Case No. 07-70803, 2009 Bankr. LEXIS 1232, at *1, *9-*10, *15-*16 (Bankr. C.D. Ill. May 29, 2009) ("§ 506(b) bars an under-secured or totally unsecured creditor from recovering such costs when the costs are incurred post-petition.") (following *Electric Machinery*).

### 3.  Unpublished Post-*Travelers* Decisions Within The Third Circuit Have Not Questioned, Much Less Rejected, The Majority Rule.

There is also no merit to Wilmington Trust's claim that the cases within the Third Circuit cited by Judge Farnan (*Loewen*, *Global Indus. I*, and *Global Indus. II*) "have subsequently been rejected by the very courts that originally authored those opinions."  WTC Obj. at 7.  That is simply not accurate.

Wilmington Trust first claims that Judge Walsh's decision in *Oakwood Homes* overruled his prior opinion in *Loewen*.  *Id.*  *Oakwood Homes*, however, involved a <u>secured</u> creditor that

drew on collateral to reimburse itself for postpetition fees, and the holding in *Oakwood Homes* was based upon Judge Walsh's conclusion that the agreement at issue did not provide for payment of the requested fees.  *In re Oakwood Homes Corp.*, 394 B.R. 352, 358 (Bankr. D. Del. 2008).  Judge Walsh did not need to, and did not, address the question of whether an <u>unsecured</u> creditor could assert a claim for postpetition fees.

Regarding *Travelers*, Judge Walsh merely noted that "the Supreme Court has held that attorneys' fees authorized by prepetition contracts may be awarded even if they are incurred in postpetition litigation."  *Id.* at 356.  Judge Walsh said nothing about the circumstances in which such fees "may be awarded," and there is no basis for Wilmington Trust's bald assertion that Judge Walsh "abandoned" his <u>holding</u> in *Loewen* that postpetition fees "may only be recovered by creditors to the extent their claims are oversecured."  *Loewen*, 274 B.R. at 444.  Indeed, Judge Walsh did not cite *Loewen* in *Oakwood Homes*, making clear that the issue was not before him.

Wilmington Trust also asserts that the Bankruptcy Court for the Western District of Pennsylvania "departed" from Judge Fitzgerald's published opinions in *Global Industries I* and *Global Industries II* through the unpublished *Ceda Mills* decision.  WTC Obj. at 7.  *Ceda Mills*, however, involved an <u>unimpaired</u>, <u>secured</u> claim.  The Court concluded that, due to its unimpaired treatment of the claim, the plan at issue "affords [the secured creditor] the right to assess attorneys' fees and interest on account of its unpaid claim."  *In re Ceda Mills, Inc.*, Case No. 04-24452JAD, 2009 WL 8556804, at *4 (Bankr. W.D. Pa. Feb. 11, 2009).  The footnote regarding *Travelers* cited by Wilmington Trust is *dicta* not necessary to the holding, a fact made clear by the Court's failure to reference, much less overrule, the existing precedent in the District.  *Id.* at *6 n.3.

Further, the debtor in *Ceda Mills* was <u>solvent</u>, all creditors were to be paid in full, and "there will be a surplus paid to equity holders in the case." *Id.* This fact alone renders the decision inapplicable to cases like this one, where the Court found Tribune to be insolvent by billions of dollars and equity was discharged without any distribution.

### 4. The Other Authority Cited By Wilmington Trust Is Irrelevant To This Fee Dispute.

The remaining cases cited by Wilmington Trust are categorically inapposite.

a. <u>Cases Where Allowance Of Fees Did Not Impact Unsecured Creditors</u>. In addition to *Ceda Mills*, several of the cases cited by Wilmington Trust are off point because they involved solvent debtors, oversecured creditors, or other circumstances in which the payment of postpetition fees would have no impact on other unsecured creditors. *In re Rubin Family Irrevocable Stock Trust*, 516 B.R. 221, 222-23 (Bankr E.D.N.Y. 2014) ("The question for this Court to decide is whether, under sections 502 and 506 of the Bankruptcy Code, an <u>oversecured</u> creditor in a chapter 11 case can asset a claim . . . for post-petition attorneys' fees . . . .") (emphasis added) (footnote omitted); *In re Holden*, 491 B.R. 728, 729 (Bankr. E.D.N.C. 2013) ("The question presented . . . was whether an unsecured creditor is entitled to post-petition attorney's fees under a confirmed Chapter 11 plan if the debtor is <u>solvent</u>, as the Debtor is in this case, and all creditors will be paid in full.") (emphasis added); *In re Bailey*, Case No. 12-60253-7, 2013 WL 3380168, *3 (Bankr. D. Mont. July 8, 2013) (postpetition fees may be allowed "in dischargeability cases where the litigation ordinarily has <u>no direct impact on the bankruptcy estate</u>") (emphasis added) (quotation omitted); *In re Busch*, 369 B.R. 614, 626 (BAP 10th Cir. 2007) (same).[12]

---

[12]   Similarly, the Seventh Circuit's decision in *Busson-Sokolik* is not helpful to Wilmington Trust because the Court did not consider whether "the Bankruptcy Code specifically

Courts widely recognize that, in such cases, "the equities strongly favor holding the debtor to his contractual obligations as long as those obligations are legally enforceable under applicable non-bankruptcy law." *In re Gencarreli*, 501 F.3d 1, 7 (1st Cir. 2007). Indeed, several provisions of the Bankruptcy Code embody that equitable principle, including sections 726(a)(5) (postpetition interest allowed against solvent estates) and 1126(b) (fair and equitable treatment and absolute priority rule). As a consequence, "the decisions allowing post-petition fees where the debtor is solvent may, to the extent they are correct, be consistent with the 'majority' rule." *Post-Travelers World*, 15 AM. BANKR. INST. L. REV. at 655. At bottom, "[t]here does not seem to be such an inconsistency that it would be necessary to consider abandoning the plain meaning of sections 502(b), 506(a), and 506(b)" by allowing contractual postpetition fees in favor of unsecured creditors in <u>insolvent</u> cases. *Id.*

b.      <u>Cases From Circuits That Had Adopted The Minority Rule Prior To *Travelers*</u>. A number of the other cases cited by Wilmington Trust rely on – and generally considered themselves bound by – pre-*Travelers* decisions that followed the <u>minority</u> rule rejected in this District, in the process improperly finding support in *Travelers* where there is none.

For example, Wilmington Trust cites to *Ogle* and other cases within the Second Circuit. Each of those cases adhered to what was believed to be binding, pre-*Travelers* precedent of *United Merchants & Manufacturers, Inc. v. Equitable Life Assurance Society*, 674 F.2d 134 (2d Cir. 1982). *See Ogle*, 586 F.3d at 148 ("*United Merchants* is therefore dispositive if it survives *Travelers*. We conclude that it does."), *aff'g Agway*, 2008 WL 2827439, at *5 (*United Merchants* is "one of the minority line of cases"); *Rubin*, 516 B.R. at 227 (noting that,

---

prohibits a court from awarding [postpetition] fees under a contract theory." *In re Busson-Sokolic*, 635 F.3d 261, 267 (7th Cir. 2011).

"[a]lthough the Second Circuit appears to hold the minority view on this issue, it is nonetheless

precedent which is binding on this Court").

Similarly, the Ninth Circuit's decision in *SNTL* followed the pre-*Travelers* case of *In re*

*268 Ltd.*, 789 F.2d 674 (9th Cir. 1986), *In re SNTL Corp.*, 571 F.3d 826, 841 (9th Cir. 2009), and

the bankruptcy court in *Castillo* then followed *SNTL, In re Castillo*, 488 B.R. 441, 446 (Bankr.

C.D. Cal. 2013).  *Qmect*, decided before *SNTL*, followed the minority rule of *United Merchants*.

*In re Qmect, Inc.*, 368 B.R. 882, 885-86 (Bankr. N.D. Cal. 2007).

c.      Cases Premised On A Flawed Reading Of *Travelers*.  Finally, the analysis of

*Travelers* by the remaining cases on which Wilmington Trust relies is plainly flawed.

Wilmington Trust asserts that those cases have "held that under the rationale of *Travelers*,

because a pre-petition contract shifting responsibility to the debtor for a creditor's attorneys' fees

is enforceable under state law, and because there is no textual support in the Code for the

disallowance of such attorneys' fees incurred post-petition, such fees must be allowed as an

unsecured claim under Section 502(b)(1).  Moreover, these courts have also held that

Section 506(b) cannot be read to negate the allowance of such a claim under section 502(b)(1),

because Section 506(b) is not concerned with the allowance of a claim, only with whether such a

claim is entitled to secured status."  WTC Obj. at 6.

However, as explained above, there is "textual support in the Code for the disallowance"

of an unsecured creditor's claim for postpetition fees.  Sections 502, 506(a), and 506(b)

specifically operate to disallow such claims.  And the argument that section 506(b) "is not

concerned with the allowance of a claim" is simply wrong.

Rather, section 506(b) specifically provides that, "[t]o the extent that an allowed secured

claim is secured by property the value of which . . . is greater than the amount of such claim,

<u>there shall be allowed</u> to the holder of such claim . . . any reasonable fees, costs, or charges

provided for under the agreement . . . under which such claim arose." 11 U.S.C. § 506(b)

(emphasis added); *see Travelers Implications*, 81 AM. BANKR. L.J. at 151 ("§ 506 does not

merely determine secured status").

> The emphasized language of section 506(b) demonstrates the
> congressional intent to create an exception to the general rule that claims
> are to be determined as of the petition date, exclusive of post-petition
> interest, attorneys' fees, and other charges. <u>The use of the words "to the
> extent" a claim is oversecured, and "there shall be allowed" interest and
> fees, mandates the conclusion that in all other circumstances, post-petition
> interest, attorneys' fees, and charges shall not be allowed</u>. . . . [I]f
> Congress intended for unsecured creditors to receive post-petition
> attorneys' fees, then it would have done so explicitly by authorizing
> unsecured creditors to collect fees under section 506(b).

*Electric Mach.*, 371 B.R. at 551 (emphasis added). As one commentator observed:

> [S]ome of the courts that take the "minority" position [hold] that
> section 506(b) does not add or allow any amount of claim; all such
> amounts are added or allowed by section 502(b), and section 506(b)'s
> function is only to classify such amounts as secured or unsecured. That
> argument is plainly wrong with respect to post-petition interest, which
> cannot be allowed under section 502(b), as noted above. It could only be
> accepted with regard to post-petition fees if there were a basis for
> interpreting section 506(b) as *adding* post-petition interest but only
> *classifying* post-petition fees. <u>There is no reasonable interpretation of the
> three words "shall be allowed" that would cause them to "allow" post-
> petition interest but only "classify" post-petition fees</u>.

*Post-Travelers World*, 15 AM. BANKR. INST. L. REV. at 651-52 (italics in original, underlining

added) (footnotes omitted) (also explaining how this argument leads to "an absurd circular

application of section 506(b)").

Wilmington Trust asserts that this Court itself previously adopted such an interpretation

of section 506(b) in its *School Specialty* decision, which Wilmington Trust quotes for the

proposition that "§ 502 and § 506 'should be read in tandem with one other,' as "§ 502 deals

with the threshold question of whether a claim should be allowed or disallowed, then § 506 deals

with the narrow issue of whether certain types of clams should be considered secured or unsecured.'" WTC Obj. at 8 (quoting *In re School Specialty, Inc.*, Case No. 13-10125 (KJC), 2013 Bankr. LEXIS 1897, at *16 (Bankr. D. Del. Apr. 22, 2013)).  As the Court is well aware, *School Specialty* holds no such thing.

At issue in *School Specialty* was whether a claim for a <u>prepetition</u> "make whole" fee needed to satisfy the reasonableness requirement of section 506(b).  The passage quoted by Wilmington Trust comes from a *compare with* citation in which the Court compared conflicted precedent on the issue, citing *Wetzel v. Advocate Realty Investments, LLC*, 275 F.3d 1308 (11th Cir. 2001), for what is identified as a minority view.  *Id.* at *15-16.  The Court ultimately never decided the issue because it found that "the § 506(b) reasonableness standard may be met in any event."  *Id.* at *17.  The Court never mentioned *Travelers* and certainly never held that section 506(b) did not operate to disallow unsecured claims for postpetition fees.

Similarly, the Third Circuit's unpublished memorandum in *Ryker* addresses an <u>oversecured</u> creditor's entitlement fees under section 506(b).  *In re Ryker*, Case No. 06-1872, 2007 WL 2138590, at *3 (3d Cir. July 26, 2007).  The Court's statement that "the Bankruptcy Code does not speak of secured and unsecured creditors, but of allowed secured and unsecured claims," *Id.* at *3 n.6 (citation omitted), is nothing more than a summary of the operation of section 506.  Contrary to Wilmington Trust's assertion (WTC Obj. at 10), it is not indicative of any holding regarding allowance of postpetition fees in favor of <u>unsecured</u> creditors, particularly given that the Court did not mention *Travelers* at all.

For all of these reasons, Judge Farnan correctly concluded that Wilmington Trust's Claim for postpetition fees arising under the prepetition Indenture must be disallowed.

III.    **THE INDENTURE LIMITS WILMINGTON TRUST TO
A MAXIMUM CLAIM OF $1.74 MILLION**

Judge Farnan noted that the Reorganized Debtors objected to the Claim on two other

grounds but ultimately did not make a recommendation regarding those other objections given

his recommendation for total disallowance.  Rec. at 9.  Wilmington Trust did not respond to the

other grounds on which the Reorganized Debtors objected, opting instead to "submit[] on its

[prior] brief."  WTC Obj. at 4.  Given the length of time that has elapsed since the prior briefing,

the Reorganized Debtors summarize their additional objections in this Section and the next and,

where appropriate, direct the Court to the applicable portions of their previous submissions that

provide more fulsome argument on these points.[13]

The first additional ground for objection is that the Indenture – the contract in which

Wilmington Trust grounds its request for fees – does not obligate the Reorganized Debtors

to reimburse or indemnify Wilmington Trust for fees that it has not paid and for which it is

not responsible.

Specifically, Wilmington Trust's Claim arises under Section 6.07(2) of the Indenture,

which provides a right to reimbursement "for all reasonable expenses, disbursements and

advances <u>incurred or made</u> by [Wilmington Trust] in accordance with any provision of this

Indenture (including the reasonable compensation and the expenses and disbursements of its

agents and counsel)."  Claim Obj. at 6, 16-17; Claim Obj. Rpy. at 9-10.  Wilmington Trust

therefore is limited to a claim for reimbursement of fees actually "incurred" or payments on fees

actually "made" by it.  *Quick v. NLRB*, 245 F.3d 231, 256 (3d Cir. 2001) ("'[r]eimburse' means

'to pay back to someone.'") (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 993

---

[13]    The Reorganized Debtors' prior submissions are the Objection to the Claim [D.I. 13402]
("<u>Claim Obj.</u>") and the Reply in support of that Objection [D.I. 13463] ("<u>Claim Obj. Rpy.</u>").
Wilmington Trust's response to the Objection [D.I. 13397] is cited as "<u>WTC Rpy.</u>"

(1990)); *Waltuch v. ContiCommodity Servs., Inc.*, 833 F. Supp. 302, 314 (S.D.N.Y. 1993) ("[t]he word 'incurred' means 'to become liable for'") (citation omitted), *aff'd in part, rev'd in part on other grounds*, 88 F.3d 87 (2d Cir. 1996).

Wilmington Trust, however, only "made" total payments of $3 million in fees and "incurred" no additional liability for the additional $27.8 million in alleged fees it has included as part of its Claim.  This is because the holders of PHONES Notes advanced only $3 million to Wilmington Trust for purposes of paying professional fees, Claim Obj. at 10; Claim Obj. Rpy. at 24, and Wilmington Trust is not and never has been responsible for the remaining fees for which it now seeks "reimbursement" via the Claim, which consist of alleged fees of Brown Rudnick and Mesirow Financial Consulting.

- <u>Brown Rudnick's Fees</u>.  The fees of Wilmington Trust's counsel, Brown Rudnick, comprise the largest component of the Claim (approximately $22 million).  Brown Rudnick agreed that Wilmington Trust only would be liable to it for amounts received from holders of the PHONES Notes.  Claim Obj. at 8-9.  However, because holders of the PHONES Notes were unwilling to pay more than $3 million in total fees for all of Wilmington Trust's professionals, Brown Rudnick negotiated to be paid a contingency fee of "10% of all recoveries obtained by [WTC] or the holders on account of the PHONES, with no ceiling or maximum."  *Id.* at 10.[14]

Brown Rudnick thus assumed the risk of non-payment in exchange for the potential of an unlimited fee "with no ceiling or maximum."  The contingency on which Brown Rudnick's fee was based – payment on the PHONES Notes – has not occurred and is unlikely to ever occur.

---

[14] As the prospect for payment on the PHONES Notes became dimmer during the bankruptcy case, Brown Rudnick renegotiated its fee, increasing it from a fee of 10% of the first $50 million in recoveries and 5% of recoveries over $50 million (with a maximum fee of $15 million) to the 10% with "no ceiling or maximum" fee described above.  Claim Obj. Rpy. at 10-11, 23-24.

Yet, Wilmington Trust now asserts a claim for nearly $22 million in Brown Rudnick's <u>hourly</u> fees.  Despite Brown Rudnick having bet and lost on a contingency that has not yet come to pass, Wilmington Trust seeks to collect on a claim for hourly fees that Brown Rudnick allegedly would have charged if it was not working on a contingency basis.

Wilmington Trust previously attempted to justify this by pointing to the Brown Rudnick engagement agreement, which provides for Brown Rudnick to receive <u>the higher of</u> an unlimited contingency fee or its hourly fees.  Claim Obj. Rpy. at 30-31.  That provision, however, is a sham.  Had holders of PHONES Notes deemed it prudent to pay for all of Brown Rudnick's services, they would have negotiated a reasonable hourly fee (or, alternatively, a straight contingency fee) – no client with actual responsibility for fees would agree to pay the <u>higher</u> of full hourly fees or a contingency fee.

The out-of-the-money bondholders and their indenture trustee cannot put the bankruptcy estate in a "heads I win, tails you lose" position where professionals can obtain an unlimited contingency fee if success is achieved <u>and</u> be paid from the estate on a claim for full hourly fees in the event of failure.  The only plausible reason such an unreasonable provision was included in the Brown Rudnick engagement agreement is because it was negotiated by parties with no actual responsibility for the fees.

- <u>Mesirow's Fees</u>.  Another material component of Wilmington Trust's Claim is $4.9 million in fees that Mesirow billed for services as an expert in support of the Noteholder Plan.  Mesirow rendered those services at a time when it was retained jointly by counsel for the Senior Notes Indenture Trustees, Aurelius Capital Management, and Wilmington Trust pursuant to an agreement under which Mesirow's fees were <u>the sole and exclusive liability of Aurelius, a</u>

Senior Noteholder.  Claim Obj. at 10-11, 30-31; Claim Obj. Rpy. at 12-13.  Aurelius directed

Mesirow's services and paid all of Mesirow's fees in connection with the Noteholder Plan.[15]

Similarly, Aurelius paid Mesirow an additional $1.25 million "initial work fee" in

connection with the Noteholder Plan on account of fees that Mesirow has charged to Wilmington

Trust but holders of the PHONES Notes had refused to pay.  Claim Obj. at 10-11, 30-31.  By

asserting a Claim for those fees, Wilmington Trust seeks to force the estate to pay for fees

incurred by a professional hired to advance the interests of other constituents in the case.  That is

patently inappropriate.[16]

In sum, Wilmington Trust has not paid and is not liable for fees exceeding the $3 million

advanced by holders of PHONES Notes.  Accordingly, Wilmington Trust has no contractual

authority under the Indenture to assert a claim in excess of $3 million less the $1.26 million that

the Reorganized Debtors already have reimbursed Wilmington Trust on account of those fees.[17]

Thus, in the event the Court determines that Wilmington Trust is entitled to any claim at all for

postpetition fees, the portion of the Claim exceeding $1.74 million must be disallowed.

## IV.    WILMINGTON TRUST'S FEES ARE UNREASONABLE

The Reorganized Debtors' other ground for objection to the Claim is that the fees for

which Wilmington Trust seeks reimbursement are plainly unreasonable.

---

[15]   The Court will recall that it was counsel for Aurelius (not Wilmington Trust) who presented
Mesirow's testimony at the confirmation hearing, and that Mesirow's work had nothing to do
with any issue specific to the PHONES Notes.

[16]   Moreover, the Indenture only permits Wilmington Trust to seek reimbursement for "the
reasonable compensation and the expenses and disbursements of its agents and counsel."
Mesirow, as a financial advisor, is neither.  *See* Claim Obj. Rpy. at 31-33.

[17]   The Reorganized Debtors previously paid Wilmington Trust $763,208.47 on account of its
Creditors Committee Member/Fee Expense Claim and $496,592.22 on account of its
substantial contribution claim.

Wilmington Trust is limited to a "reasonable" fee by the express terms of the Indenture and applicable provisions of the Bankruptcy Code and Illinois law.  Claim Obj. at 19-21; Claim Obj. Rpy. at 18-23.  "Reasonable" fees are those that an owner of the PHONES Notes would have been willing to pay in light of the economics of the situation, taking into consideration the fact of subordination, the minimal prospect of recovery, and the similar objectives of other in-the-money constituents with incentives to pay for whatever work needed to be done.  Claim Obj. at 22-26; Claim Obj. Rpy. at 18-29.

For example, under the "prudent person" standard, Wilmington Trust was "required to act with the same care as if it owned the investment."  *In re Worldwide Direct, Inc.*, 334 B.R. 112, 129 (Bankr. D. Del. 2005).  But the <u>actual</u> "owners of the investment" here – holders of the PHONES Notes – chose to contribute only $3 million to pay fees for which Wilmington Trust now claims more than $30 million.  "[T]he best guarantee of reasonableness is willingness to pay."  *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996).  By the same token, unwillingness to pay is a strong indicator of unreasonableness and evidence that a fee is not justified by the economics of the situation

In fact, "[i]t is inherently unreasonable . . . to seek reimbursement for fees 'that are not cost justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved.'"  *In re Kroh Bros. Dev. Co.*, 105 B.R. 515, 520-21 (Bankr. W.D. Mo. 1989) (quoting *In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 169 (Bankr. S.D.N.Y. 1985)).  Here, given the slim chance of obtaining any recovery on the deeply-subordinated PHONES Notes, *see* Claim Obj. Rpy. at 25-26, no prudent person would have

permitted the accrual of more than $30 million in fees toward such a lost cause.[18]  That actual

holders of PHONES Notes chose to advance only $3 million proves this fact.

In any event, given that neither Wilmington Trust nor holders of the PHONES Notes had

any liability for fees in excess of $3 million, "stricter scrutiny of the fee request is warranted" –

> In fee-shifting cases where attorney fees are being imposed on a third
> party, many of the usual motivations to rein in excessive fees may be
> lacking.  In such cases stricter scrutiny of the fee request is warranted
> "because the attorney submitting billing statements . . . has no fiduciary
> relationship with the party ultimately liable for payment" of those fees.

*Fishman v. Fox River Commons Shopping Ctr., LLC*, Case No. 2-12-0281, 2012 Ill. App. Unpub.

LEXIS 3057, at *78 (Ill. App. Ct. Dec. 14, 2012) (citing *Wildman, Harrold, Allen & Dixon v.*

*Gaylord*, 317 Ill. App. 3d 590, 596-97 (2000)) (emphasis added).  In such circumstances, the

Court must "guard against moral hazard – the tendency to take additional risks (or run up extra

costs) if someone else pays the tab."  *Medcom Holding Co. v. Baxter Travenol Labs.*, Inc., 200

F.3d 518, 521 (7th Cir. 1999) (interpreting Illinois law).

Under this rubric, the $30 million in fees sought by Wilmington Trust is demonstrably

unreasonable.  In their Objection to the Claim, the Reorganized Debtors grouped Wilmington

Trust's fees into ten categories, provided twenty pages of detailed analysis regarding the

unreasonableness of each category, and made a recommendation regarding a reasonable amount

of fees under the circumstances.  Claim Obj. at 26-46.  The Objection included a table

summarizing those recommendations, which is copied here as Exhibit A.  Tellingly, Wilmington

Trust never responded to that analysis and, among other things, it failed to justify –

---

[18]  WTC acknowledged that, from the earliest days of the bankruptcy cases, it "was cognizant of
the fact that its avenues to recovery [of] its fees and expenses, including those of outside
counsel, were limited."  In particular, "recovering on a claim against the Debtors' estates
under the PHONES Indenture was unavailable absent changes to the First Plan.  Similarly,
because there was no distribution to the PHONES, Wilmington Trust could not rely on its
charging lien to pay its fees and expenses."  [D.I. 13272] ¶ 60.

- Mesirow's $4.9 million in Noteholder Plan fees (for which no time records were submitted) and $2.6 million in fees for work that duplicated work performed by the financial advisors employed by the Creditors' Committee and the Examiner. *Id.* at 29-31.

- Brown Rudnick's $4 million in fees for reviewing LBO documents at a time when the Creditors' Committee, the Senior Notes Indenture Trustees and the Examiner were performing the same investigation. *Id.* at 31-35.

- Brown Rudnick's $2.5 million in fees for briefing submitted to, and interaction with, the Examiner, which was duplicative of efforts of the Creditors' Committee, the Senior Notes Indenture Trustees, and Centerbridge – all in-the-money stakeholders with ample incentive to advance the best possible arguments. *Id.* at 35-36.

- Brown Rudnick's $9.7 million in fees relating to the Noteholder Plan, which were unnecessary given that Aurelius and the Senior Notes Indenture Trustees would have prosecuted the Plan without Wilmington Trust's involvement. *Id.* at 37-38.

- Brown Rudnick's fees relating to the Allocation Disputes, which were unreasonable given that Wilmington Trust was not involved in disputes over the "high/low" PHONES Notes amount and the relative priorities of the Other Parent Claims vis-à-vis the Senior Notes. *Id.* at 39-40.

- Brown Rudnick's fees relating to Wilmington Trust's premature interlocutory appeals. *Id.* at 40-41.

- Brown Rudnick's fees relating to abandoned litigation against Senior Lenders. *Id.* at 41-43.

Instead, in an effort to avoid scrutiny, Wilmington Trust suggested that a detailed examination of its activity in the bankruptcy case was unnecessary and that the Court should apply a "typical" reduction of 10%-20% of the amount of its Claim. WTC Rpy. at 45-46. However, a 20% reduction of a patently-unreasonable fee results in a fee that remains patently unreasonable, if only slightly less so.

The Reorganized Debtors also previously demonstrated that it is impossible to assess the reasonableness of Wilmington Trust's fees given the inadequate time records of its professionals. For example, Brown Rudnick's billing is replete with vague service descriptions covering huge blocks of time. Claim Obj. at 27. This prompted the U.S. Trustee to describe Brown Rudnick's poor timekeeping as "astounding, particularly for a firm which holds itself out as an experienced

bankruptcy professional in complex cases such as this."[19]  Even worse, Mesirow submitted <u>no time detail</u> whatsoever for services rendered after August 31, 2010 – a period for which Wilmington Trust asserts a Claim of nearly $5 million.  Claim Obj. at 29.

Wilmington Trust conceded that the Court should "'trim the fat' on the Fee Claim for any vagueness or lumping that may exist."  WTC Rpy. at 33.  As noted above, the Reorganized Debtors provided a detailed summary of Wilmington Trust's fees for precisely that purpose.  Wilmington Trust never responded to it.

For all of these reasons, Wilmington Trust has not established the reasonableness of the fees that comprise its Claim.

## V.    THE CLAIM FOR POST-EFFECTIVE DATE FEES MUST BE DISALLOWED

The amount of the Claim that Wilmington Trust now asserts is <u>$1 million greater</u> than the Claim it originally asserted.  Wilmington Trust increased its Claim "to include fees and expenses incurred in prosecuting" the Claim from January 2, 2013 through June 30, 2103.  WTC Obj. at 4-5 n.3 and Ex. A.  In fact, Wilmington Trust claims to have incurred $2.1 million in fees during that six-month period but then "voluntarily" reduced its reimbursement request by $1.1 million. *Id.*, Ex. A at ¶ 3.

That Wilmington Trust incurred $2.1 million in fees in just six months of "prosecuting" its unsecured claim speaks volumes about the unreasonable nature of its fees in general.  It also proves the wisdom of the majority rule.  Absent a rule disallowing postpetition fee claims,

---

[19]    [D.I. 13443] ¶ 57; *id*. ¶ 14 ("Overwhelmingly, the time entries are vague, and where numerous services were performed by the same person over a number of hours, the entries are lumped."); ¶ 53 ("Notwithstanding its extensive bankruptcy experience, the Brown Rudnick time and expense submissions fail to comply with the applicable rules and guidelines."); ¶ 56 ("The Application is replete with vague or incomplete entries on virtually every page."); ¶ 57 ("Virtually every page of the Brown Rudnick timesheets contains lumped entries.").

unsecured creditors like Wilmington Trust can take a "sky's the limit" approach, sparing no expense because the estate ultimately would be responsible for at least a portion of the tab.

In any event, there is no ground for any claim for fees incurred after the December 31, 2012, Effective Date of Tribune's Plan.  Pursuant to sections 1141 of the Bankruptcy Code and Section 11.1.1 of the confirmed Plan, all prepetition claims (including claims under the Indenture) have been discharged.  *See* 11 U.S.C. § 1141; Plan §§ 11.1.1, 5.8.2.  Confirmation expressly "discharge[d] the Debtors from all Claims or other debts that arose before the Effective Date."  Plan § 11.1.1.  In addition, under Section 3.2.9(c) of the Plan, the treatment of the PHONES Notes Claims is "in full satisfaction, settlement, release and discharge of and in exchange for Allowed PHONES Notes Claims against Tribune." *Id.* § 3.2.9(c).

Accordingly, there is no remaining right to reimbursement under the Indenture, and Wilmington Trust is not entitled to a claim for fees incurred after the Effective Date.

## VI.    CONCLUSION

For all of these reasons, Judge Farnan's recommendation that the Claim be disallowed in its entirety, because Wilmington Trust is not entitled to an unsecured claim for postpetition fees, is correct and should be adopted.  Alternatively, the Claim should be limited to a maximum of $1.76 million.

Dated:  February 20, 2015                    JONES DAY
                                             Bruce Bennett
                                             James O. Johnston
                                             Joshua M. Mester
                                             555 South Flower Street, 50th Floor
                                             Los Angeles, CA  90071-2300
                                             Telephone:  (213) 489-3939

                                                        -and-

SIDLEY AUSTIN LLP
James F. Bendernagel, Jr.
1501 K Street NW
Washington, DC  20005
Telephone:  (202) 736-8000

-and-

COLE SCHOTZ P.C.

By: _____*/s/ J. Kate Stickles*_____
    Norman L. Pernick (No. 2290)
    J. Kate Stickles (No. 2917)
    500 Delaware Avenue, Suite 1410
    Wilmington, DE  19801
    Telephone:  (302) 652-3131

ATTORNEYS FOR REORGANIZED DEBTORS