**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY, et al.,[1]<br>(f/k/a Tribune Company) | Case No. 08-13141 (KJC) |
| | Jointly Administered |
| Reorganized Debtors. | **Hearing Date: July 28, 2015 at 10:00 a.m. ET**<br>**Response Deadline: July 21, 2015 at 4:00 p.m. ET** |

**REORGANIZED DEBTORS' SECOND MOTION FOR ENTRY OF A FINAL DECREE
(I) CLOSING CERTAIN OF THE REORGANIZED DEBTORS' CHAPTER 11 CASES
PURSUANT TO SECTIONS 105(a) AND 350(a) OF THE BANKRUPTCY CODE,
BANKRUPTCY RULE 3022, AND LOCAL RULE 3022-1 AND (II) DIRECTING THE
USE OF AN AMENDED CAPTION IN THE REORGANIZED DEBTORS' CASES
PURSUANT TO SECTIONS 105(a) AND 342(c)(1) OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULES 1005, 2002(m), AND 2002(n)**

The reorganized debtors in the above-captioned chapter 11 cases (collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby submit this motion (the "Motion") pursuant to sections 105(a), 342(c), and 350(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 1005, 2002(m), 2002(n), and 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3022-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of a final decree (i) closing eight (8) of the former Debtors' twenty-two (22) remaining chapter 11 cases, which are listed on Appendix 1 hereto (the "Specified Cases"), (ii) providing that, to the extent necessary, any further proceedings in this Court with respect to (a) unresolved claims asserted against the

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Media Company (0355); Chicago Tribune Company, LLC (3437); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); KTLA, LLC (3404); KWGN, LLC (5347); Los Angeles Times Communications LLC (1324); Orlando Sentinel Communications Company, LLC (3775); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); The Hartford Courant Company, LLC (3490); Tribune CNLBC, LLC (0347); Tribune Content Agency, LLC (2931); Tribune Media Services, LLC (1080); Tribune ND, LLC (4926); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

former Debtors in the Specified Cases (the "Specified Debtors") and (b) other remaining matters that may potentially impact the estates of the Specified Debtors shall be administered in the chapter 11 case of Tribune Media Company (f/k/a Tribune Company) (No. 08-13141-KJC) (the "Lead Case"), and (iii) directing the use of an amended caption upon the entry of an order approving this Motion.  The Reorganized Debtors are not seeking at this time to close the Lead Case or the other cases identified on Appendix 2 hereto (collectively, the "Remaining Cases"). In support of this Motion, the Reorganized Debtors respectfully represent as follows:[2]

## PRELIMINARY STATEMENT

1.      The Reorganized Debtors have made significant progress to date with respect to implementing the Plan and resolving all outstanding matters in these chapter 11 cases.  The Plan has been substantially consummated and the overwhelming majority of prepetition claims and contested proceedings have been resolved.  Given this progress, in February of this year, by their Motion for Entry of a Final Decree (I) Closing Certain of the Reorganized Debtors' Chapter 11 Cases Pursuant to Sections 105(a) and 350(a) of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 3022-1 and (II) Directing the Use of an Amended Caption in the Reorganized Debtors' Cases Pursuant to Sections 105(a) and 342(c)(1) of the Bankruptcy Code and Bankruptcy Rules 1005, 2002(m), and 2002(n) [Docket No. 14055] (the "Initial Case Closure Motion"), the Reorganized Debtors petitioned this Court to enter final decrees closing eighty-eight (88) of the one hundred and ten (110) then-pending chapter 11 cases (the "Closed Cases"). The Court granted the requested relief on March 16, 2015.  See Docket No. 14078 (the "Initial Case Closure Order").

---

[2]   Capitalized terms use but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan (as defined herein).

2.     The Reorganized Debtors propose at this time to close eight (8) of the remaining

twenty-two (22) pending chapter 11 cases.  The relief sought herein is appropriate because the

Reorganized Debtors have resolved substantially all of the Proofs of Claim against the Specified

Debtors since the Initial Case Closure Order, such that, as in each of the Closed Cases, there are

no pending Proofs of Claim against the Specified Debtors or adversary proceedings in which the

applicable Specified Debtor has been named, other than Claims or adversary proceedings

relating to the leveraged buy-out of Tribune Company that occurred in 2007 (the "LBO

Transaction").  Those Proofs of Claim and adversary proceedings are expected to be resolved as

part of, or following the conclusion of, multidistrict litigation that is pending in the United States

District Court for the Southern District of New York (the "MDL Proceedings").[3]  To the extent

those proceedings and their resolution have a potential impact on the Reorganized Debtors, that

impact falls almost exclusively on Tribune Media Company, as the ultimate Tribune parent

company at the time of the LBO Transaction and throughout the period prior to the Effective

Date.  The Reorganized Debtors do not seek to close or otherwise affect Tribune Media

Company's chapter 11 case (or the other Remaining Cases) via this Motion.

3.     Moreover, the Reorganized Debtors are not seeking in this Motion to

substantively alter the rights of any parties to the unresolved claims or matters involving the

Specified Debtors.  Rather, given the relatively small number of such claims and other matters,

and because the former Debtors' chapter 11 cases were jointly administered, further proceedings

in this Court with respect to any remaining matters that might impact the estates of the Specified

Debtors may be administered in the Lead Case, without the need to keep open the Specified

Cases.  Approval of this Motion will, therefore, reduce the administrative burden on the Court

---

[3]    See In re Tribune Co. Fraudulent Conveyance Litig., No. 12 MC 2296 (RJS), MDL No. 11 MD 2296 (RJS)
(S.D.N.Y.).

and the Clerk of the Court, and will also allow the Reorganized Debtors to avoid unnecessarily

incurring approximately $72,000 per quarter for United States Trustee fees for the currently-

pending chapter 11 cases.  Instead, the Reorganized Debtors will continue to pay quarterly fees

for only the Remaining Cases.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, which jurisdiction was retained pursuant to Article IX of the Confirmation Order and

Section 12.1 of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The

statutory and legal predicates for the relief requested herein are sections 105(a), 342(c)(1), and

350 of the Bankruptcy Code, Bankruptcy Rules 1005, 2002(m), 2002 (n), and 3022, and Local

Rule 3022-1.

## STATUS OF THESE CHAPTER 11 CASES

6.      On December 8, 2008 (the "Petition Date"), Tribune Company (n/k/a Tribune

Media Company) and certain of its subsidiaries each filed a voluntary petition for relief under

chapter 11 Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC,[4] filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  The chapter 11

cases were consolidated for procedural purposes only and are being jointly administered pursuant

to Bankruptcy Rule 1015(b).

7.      On July 23, 2012, the Court entered an order [Docket No. 12074] (the

"Confirmation Order") confirming the Fourth Amended Joint Plan of Reorganization for Tribune

Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured

---

[4]    Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

4

Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 12072] (the "Plan").[5]  The Plan became effective in accordance with its terms on December 31, 2012 (the "Effective Date").

8.      The Plan was substantially consummated following the Effective Date.  For example, the Reorganized Debtors consummated the various settlements incorporated into the Plan.  The Reorganized Debtors also distributed approximately $3.6 billion to approximately 17,000 creditors and issued new stock and warrants to creditors in accordance with the terms of the Plan.

9.      In the over two and a half years since the Effective Date, the Reorganized Debtors have been engaged in fulfilling their commitments and responsibilities under the Plan, as well as otherwise continuing their business operations.  As further discussed below, with the exception of relatively few unresolved matters, no other motions, contested matters, or adversary proceedings remain pending in the Specified Cases.  Also, the overwhelming majority of proofs of claim that were filed in the former Debtors' chapter 11 cases (the "Proofs of Claim") have been resolved.

---

[5]   The Plan provides for, among other things, Restructuring Transactions including, without limitation, mergers, consolidations, conversions, joint ventures, restructurings, recapitalizations, dispositions, liquidations or dissolutions. See Plan Exhibit 5.2; Notice Respecting Restructuring Transactions [Docket No. 12732] (the "Restructuring Transactions Notice").  Following entry of the Confirmation Order, the former Debtors began implementing the Restructuring Transactions described in the Plan and the Restructuring Transactions Notice, as authorized by the Confirmation Order.  The Restructuring Transactions were largely consummated prior to the Effective Date (as defined herein), resulting in the 110 former Debtor entities becoming 52 post-transaction entities.

In addition, on August 4, 2014, the Reorganized Debtors completed a spin-off of their publishing businesses. Following the spin-off, Reorganized Tribune Company was split into two independent companies: Tribune Media Company, which is now the ultimate parent company of the Reorganized Debtors that operate or are associated with broadcasting and other non-publishing activities, and Tribune Publishing Company, which now is the ultimate parent company of the Reorganized Debtors that operate or are associated with publishing activities.

46429/0001-12022401v1

A.   **Confirmation Order Appeal**

10.     On July 24, 2012, a notice of appeal of the Confirmation Order was filed by

Aurelius Capital Management, LP ("Aurelius"), on behalf of its managed entities that were

holders of certain Senior Notes and PHONES Notes, Law Debenture Trust Company of New

York ("Law Debenture"), successor trustee under the indenture for certain Senior Notes, and

Deutsche Bank Trust Company Americas ("Deutsche Bank"), successor trustee under certain

Senior Notes Indentures.  Additional notices of appeal of the Confirmation Order were filed on

August 2, 2012 by Wilmington Trust Company ("WTC"), as successor indenture trustee for the

PHONES Notes, and on August 3, 2012 by EGI-TRB, L.L.C., a Delaware limited liability

company wholly-owned by a trust established for the benefit of Samuel Zell and his family (the

"Zell Entity" and, together with Aurelius, Law Debenture, Deutsche Bank and WTC, the

"Appellants").  The appeals of the Confirmation Order were consolidated by the United States

District Court for the District of Delaware (the "District Court") under the caption Wilmington

Trust Co. v. Tribune Co. (In re Tribune Co.), No. 1:12-cv-00128-GMS (the "District Court

Confirmation Order Appeals").

11.     On January 18, 2013, the Reorganized Debtors filed a motion to dismiss the

District Court Confirmation Order Appeals as equitably moot, based on the substantial

consummation of the Plan.  On June 18, 2014, the District Court entered an order (the "District

Court Order") dismissing all but one of the District Court Confirmation Order Appeals as

equitably moot.[6]

---

[6]     The District Court affirmed on the merits with respect to the appeal brought by the Zell Entity, except that the
District Court vacated the portion of the Court's "Allocation Ruling" relating to subordination of recoveries from
the Creditor Trust that was included in a prior version of the Plan (on the ground that it was an advisory opinion
due to the fact that the Creditor Trust concept ultimately had been removed from the Plan before confirmation).

46429/0001-12022401v1

12.     On July 16, 2014, notices of appeal of the District Court Order were filed with the

United States Court of Appeals for the Third Circuit (the "Third Circuit") by Aurelius, Law

Debenture, and Deutsche Bank (the "Third Circuit Confirmation Order Appeals").[7]  The Third

Circuit Confirmation Order Appeals are fully briefed and oral argument was held on April 15,

2015.  At the time of this filing, no opinion has been issued by the Third Circuit.

**B.    Pending Adversary Proceedings**

13.     There are several adversary proceedings that remain pending in the Lead Case.

On November 1, 2010 and December 8, 2010, the Creditors' Committee initiated adversary

proceedings asserting causes of action related to the LBO Transaction against various parties,

including, among others, certain of the former Debtors' senior lenders and current and former

officers and directors. See Official Comm. of Unsecured Creditors v. JPMorgan Chase Bank,

N.A. (In re Tribune Co.), Adv. Pro No. 10-53963 (KJC) (Bankr. D. Del. Nov. 1, 2010) (the "First

Lender Proceeding"); Official Comm. of Unsecured Creditors v. FitzSimons (In re Tribune Co.),

Adv. Pro. No. 10-54010 (KJC) (Bankr. D. Del. Nov. 1, 2010) (the "FitzSimons Proceeding");

Official Comm. of Unsecured Creditors v. JPMorgan Chase Bank, N.A. (In re Tribune Co.),

Adv. Pro. No. 10-55969 (KJC) (Bankr. D. Del. Dec. 8, 2010) (the "Second Lender Proceeding"

and, together with the First Lender Proceeding, the "Lender Proceedings").  Certain of the claims

asserted in the Lender Proceedings were settled pursuant to the Plan.  Consequently, the

Creditors' Committee sought and received approval from the Court to sever and reassert the

claims asserted in the First Lender Proceeding that were not settled pursuant to the terms of the

Plan (the "Non-Settled Advisor Claims").[8]  On April 2, 2012, the Creditors' Committee initiated

---

[7]  No notices of appeal of the District Court Order were filed by WTC or the Zell Entity and, consequently, those entities are no longer Appellants.

[8]  See Order Partially Lifting Stay of Adversary Proceedings and State Law Constructive Fraudulent Conveyance Actions [Docket No. 11158].

an additional adversary proceeding restating the Non-Settled Advisor Claims. See Official

Comm. of Unsecured Creditors v. Citigroup Global Markets, Inc. and Merrill Lynch, Pierce,

Fenner & Smith Inc. (In re Tribune Co.), Adv. Pro. No. 12-50446 (KJC) (Bankr. D. Del. Apr. 2,

2012) (the "Advisor Proceeding" and, together with the FitzSimons Proceeding, the "LBO

Transaction Adversaries"). The LBO Transaction Adversaries, which are currently being

prosecuted by the Litigation Trustee, have been consolidated with the MDL Proceedings.[9]

14.     Beginning on December 3, 2010, the Creditors' Committee also initiated

avoidance actions against certain of the former Debtors' past executives who purportedly

received special compensation in connection with the LBO Transaction (the "Insider Actions").

Eighteen of the Insider Actions remain pending, and are currently being prosecuted by the

Litigation Trustee in conjunction with the MDL Proceedings.

## C.    Initial Case Closure Motion

15.     On February 25, 2015, the Reorganized Debtors filed the Initial Case Closure

Motion seeking the entry of a final decree closing eighty-eight (88) of the one hundred and ten

(110) then-pending chapter 11 cases. Just as with the Specified Debtors, all eighty-eight (88)

chapter 11 cases had no pending proofs of claim against the applicable Debtors or adversary

proceedings in which the applicable Debtors had been named, other than claims or adversary

proceedings relating to the LBO Transaction.

---

[9]     Additionally, on March 4, 2010, WTC initiated an adversary proceeding seeking equitable subordination, disallowance of claims, damages and a constructive trust against certain of the former Debtors' senior lenders Wilmington Trust Company v. JPMorgan Chase Bank, N.A, Case No. 10-50732 (KJC) (Bankr. D. Del. Mar. 4, 2010) (the "WTC Adversary Proceeding"). None of the former Debtors was named in the WTC Adversary Proceeding, which is alleged to arise out of the LBO Transaction. By order entered on October 8, 2010, the WTC Adversary Proceeding was stayed pending further order of this Court. See Order Regarding Wilmington Trust Adversary Proceeding, Case No. 10-50732 (KJC) [Docket No. 39]. No pleadings have been filed in the WTC Adversary Proceeding since November 1, 2010; however, the adversary proceeding has not yet been formally closed.

16.     Prior to entry of the Initial Case Closure Order, the Reorganized Debtors engaged in discussions regarding the relief requested in the Initial Case Closure Motion with the Litigation Trustee, Aurelius, Law Debenture, Deutsche Bank, and the Office of the United States Trustee (the "U.S. Trustee").  In response to these discussions and the informal comments provided by those parties, the Reorganized Debtors consensually modified the proposed order originally attached to the Initial Case Closure Motion.  See Docket No. 14074.  On March 16, 2015, the Court entered the revised version of the Initial Case Closure Order without objections. The form of proposed order submitted with this Motion also reflects the comments made by those parties that were incorporated into the Initial Case Closure Order.

## D.    **Remaining Proofs of Claim**

17.     The vast majority of the Proofs of Claim filed in the former Debtors' chapter 11 cases have been resolved.  More specifically, approximately 94.1% of the 7,191 Proofs of Claim that were filed in the former Debtors' chapter 11 cases have been resolved.

18.     Nearly all of the approximately 423 Proofs of Claim that remain outstanding (the "Unresolved Claims") are claims related to the ongoing litigation involving the LBO Transaction that will be resolved as a part of, or following, that litigation.  These claims are principally indemnification, reimbursement, or contribution claims filed by current or former directors or officers of or advisors to the former Debtors and/or the Reorganized Debtors, many of whom are named as defendants in the MDL Proceedings or who allege that they might otherwise be impacted by such proceedings.  Section 7.11.2 of the Plan provides that, to the extent such unresolved indemnification, reimbursement, or contribution claims are Allowed, they will be setoff against any recovery by the Litigation Trustee against the holders of such claims.[10]

---

[10]   Specifically, section 7.11.2 of the Plan provides, in relevant part, as follows: "To the extent that any Person has either (i) an Allowed Other Parent Claim against Tribune, (ii) an Allowed General Unsecured Claim against any

Section 7.11.2 of the Plan further authorizes the Litigation Trustee to object to the allowance of such claims.[11] Accordingly, the Reorganized Debtors anticipate that the overwhelming majority of the Unresolved Claims will ultimately be adjudicated or resolved in conjunction with the MDL Proceedings.[12]

19.    Twenty-two (22) Proofs of Claim (the "Non-LBO Claims") remain outstanding other than the claims related to the ongoing litigation involving the LBO Transaction.[13] Many of these claims are close to resolution.  Three (3) claims are under advisement with the Court.[14] An objection to an additional Non-LBO Claim has been filed with a response deadline of July 21,

---

of the Filed Subsidiary Debtors or (iii) a valid and enforceable claim against any other direct or indirect subsidiary of the Debtors, in each case for (a) indemnification, reimbursement, contribution or claims pursuant to Bankruptcy Code section 502(h), and (b) arising from or relating to the assertion of any claim or cause of action by the Litigation Trust or the Litigation Trustee against such Person or any of its Related Persons, such Allowed Claim shall be setoff against any recovery by the Litigation Trust against such Person. For the purposes of this Section 7.11.2, "setoff against" shall mean that the Litigation Trust shall either use Litigation Trust Assets to pay such Claim or shall take actions necessary to cause the release or waiver of such Claim." Plan § 7.11.2.

[11]    Id. ("The Litigation Trust shall be authorized to object to the allowance of, and entitled to assert any claim, counterclaim, or defense of the Debtors or applicable direct or indirect subsidiary of a Debtor to, any such indemnification, reimbursement, contribution or Bankruptcy Code section 502(h) claim.").

[12]    See Litigation Trustee's Motion for an Order Extending the Deadline to Object to Claims [Docket No. 13651] at ¶ 12 ("To the extent any defendants. . . have asserted Setoff Claims against the Debtors or attempt to assert Setoff Claims against the Litigation Trust upon answering or otherwise moving to dismiss, the Litigation Trustee intends to object to such Claims."); see also Litigation Trustee's Motion for an Order Further Extending the Deadline to Object to Claims [Docket No. 14033] at ¶ 13 (same).

[13]    This number does not include the claim filed by WTC seeking allowance of an administrative expense claim under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for fees and expenses incurred as a result of WTC's motion for the appointment of an examiner and WTC's participation in the Examiner's investigation [Docket No. 13272] as it does not appear on the claims register in the Debtors' cases. Following the filing with the Court of the Mediator's Report respecting such claim on December 19, 2014 [Docket No. 14010], the issue has been fully briefed and is now under advisement before the Court. See Notice of Completion of Briefing with Respect to Reorganized Debtors' Objection to Class 1F Other Parent Claim Asserted by Wilmington Trust Company [Docket No. 14054].

[14]    See Notice of Completion of Briefing Regarding Reorganized Debtors' Objection to Claim No. 3333 of Keith Younge, Pursuant to Sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007 [Docket No. 13964]; Debtors' Objection to Claim No. 3697 of Robert Henke Pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007 [Docket No. 3796] and subsequent related pleadings; Debtors' Supplemental Objection to Claims of Robert Henke Pursuant to Sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1 [Docket No. 11792] and subsequent related pleadings.

46429/0001-12022401v1

2015.[15] The remaining eighteen (18) Non-LBO Claims are principally made up of (i) claims that were disputed prior to the Petition Date and were the subject of prepetition litigation or disputes between one or more Debtors and the claimant, which claims remain subject to pending litigation and/or ongoing negotiations between the Reorganized Debtors and the applicable claimant, (ii) certain federal tax Claims, (iii) claims based on disputed contribution amounts allegedly owed by the Debtors to certain union benefit funds, and (iv) certain other miscellaneous claims.  The Reorganized Debtors are not seeking at this time to close any of the chapter 11 cases of the former Debtors against which any of the Non-LBO Claims are asserted.

## RELIEF REQUESTED

20.    By this Motion, the Reorganized Debtors request the entry of a final decree pursuant to sections 105(a), 342(c)(1), and 350(a) of the Bankruptcy Code, Bankruptcy Rules 1005, 2002(m), 2002 (n), and 3022, and Local Rule 3022-1, in substantially the form attached hereto as Exhibit A (the "Proposed Final Decree"), (i) closing the chapter 11 cases of the Specified Debtors, (ii) providing that, to the extent necessary, further proceedings in this Court with respect to (a) the unresolved Proofs of Claim asserted against the Specified Debtors and (b) other matters that may potentially impact the estates of the Specified Debtors shall be administered in the Lead Case, and (iii) directing the use of an amended caption in the Remaining Cases, as follows:

---

[15]    See Reorganized Debtors' Objection to Claim No. 3031 of Anthony LaMantia Pursuant to Sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007 [Docket No. 14093] and supplemental notice thereof [Docket No. 14112].

46429/0001-12022401v1

In re:

TRIBUNE MEDIA COMPANY, et al.[FN]
(f/k/a Tribune Company)

                Reorganized Debtors.

Chapter 11

Case No. 08-13141 (KJC)

Jointly Administered

[FN] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Media Company (0355); Chicago Tribune Company, LLC (3437); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); KTLA, LLC (3404); KWGN, LLC (5347); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); Tribune CNLBC, LLC (0347); Tribune Content Agency, LLC (2931); Tribune Media Services, LLC (1080); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191). The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

      21.     As noted in paragraph 16, in seeking the Initial Case Closure Order, the Reorganized Debtors engaged in discussions with various parties, which led to a number of consensual modifications that were reflected in the Initial Case Closure Order that was entered by the Court. In preparing the Proposed Final Decree attached to this Motion, the Reorganized Debtors have incorporated those consensual modifications as follows:

        a.   the Proposed Final Decree orders that closure of the Specified Cases shall not alter or modify the terms of the Plan, Confirmation Order, any supplement, exhibit, appendix or schedule to the Plan, or any other contract, instrument, release or other agreement executed or created pursuant to the Plan, including but not limited to the Litigation Trust Agreement (as defined in the Plan) or LT Agreement (as defined in the Plan);

        b.   the Proposed Final Decree orders that closure of the Specified Cases shall not affect the ability of the Litigation Trustee (as defined in the Plan) to amend any Preserved Causes of Action (as defined in the Plan) or assert any LBO-Related

Causes of Action (as defined in the Plan) pursuant to, <u>inter alia</u>, section 550 of the Bankruptcy Code;

c.  the Proposed Final Decree orders that entry of the final decree is without prejudice to any pending appeals taken from the Confirmation Order, and from the orders incorporated therein, including, for the avoidance of doubt, the District Court Confirmation Order Appeals or the Third Circuit Confirmation Order Appeals (together, the "<u>Confirmation Appeals</u>");

d.  the Proposed Final Decree orders that entry of the final decree shall have no effect on the availability of relief, if any, as a consequence of the Confirmation Appeals, and shall not be evidence that such appeals are equitably moot; and

e.  the Proposed Final Decree orders that, for the avoidance of doubt, the Specified Debtors shall continue to comply with any current or future obligations they may have under the LT Agreement, and shall maintain their rights under the LT Agreement, as if they were still Reorganized Debtors.

The relief sought in the Proposed Final Decree thus tracks the relief granted in the Initial Case Closure Order in all material respects.

22.     For the purposes of calculating fees which are due and payable pursuant to 28 U.S.C. § 1930 in connection with the Specified Cases, (a) disbursements made by the Specified Debtors prior to the entry of the final decree will be included in the calculation of quarterly fees for the third quarter of 2015, (b) the Reorganized Debtors shall pay the appropriate quarterly fees within 30 days of the entry of the final decree, and (c) no disbursements made by the Specified Debtors following entry of the final decree will be included in the subsequent fees which are due and payable pursuant to 28 U.S.C. § 1930 in connection with the Remaining Cases, and no

13

minimum quarterly fees shall be payable with respect to the Specified Cases for periods thereafter.

23.    To preserve the rights of the holders of unresolved Proofs of Claim asserted against the Specified Debtors, as well as the rights of parties to other unresolved matters involving the Specified Debtors, the Reorganized Debtors propose that the order approving this Motion provide that (a) it is without prejudice to the rights of any party to seek to reopen any or all of the Specified Cases closed pursuant to the final decree for cause, including, but not limited to, the Reorganized Debtors' failure to either file a final report as set forth above or pay fees due and payable pursuant to 28 U.S.C. § 1930; and (b) any claim that is subsequently Allowed pursuant to the Plan by this Court against any Specified Debtor whose case was closed pursuant to such final decree shall be paid in accordance with the Plan as applicable to such Specified Debtor.

## BASIS FOR RELIEF REQUESTED

### A.    Closure of Specified Cases

24.    Section 350(a) of the Bankruptcy Code provides that "[a]fter the case is fully administered and the court has discharged the trustee, the court shall close the case."[16]  11 U.S.C. § 350.  Bankruptcy Rule 3022 provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court . . . shall enter a final decree closing the case."  Fed. R. Bankr. P. 3022.

25.    Neither the Bankruptcy Code nor the Bankruptcy Rules define the term "fully administered."  The Advisory Committee Note to the 1991 amendment to Bankruptcy Rule 3022

---

[16]  The status of the debtor in possession as a trustee normally is deemed terminated upon confirmation of the plan of reorganization.  See In re Jay Bee Enter., Inc., 207 B.R. 536, 538 (Bankr. E.D. Ky. 1997).

46429/0001-12022401v1

provides a list of six factors that a court may consider in determining whether an estate has been fully administered for final decree purposes. The six factors are: (a) whether the order confirming the plan has become final; (b) whether deposits required by the plan have been distributed; (c) whether the property proposed by the plan to be transferred has been transferred; (d) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan; (e) whether payments under the plan have commenced; and (f) whether all motions, contested matters, and adversary proceedings have been finally resolved. See Advisory Committee Note to Fed. R. Bankr. P. 3022.

26.     Courts have frequently applied the six factors set forth in the Advisory Committee Note in determining whether a case has been fully administered. See, e.g., In re Kliegl Bros. Univ. Elec. Stage Lighting Co., Inc., 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999); In re SLI, Inc., No. 02-12608 (WS), 2005 Bankr. LEXIS 1322, at *5 (Bankr. D. Del. June 24, 2005). These factors are employed by courts as a guide to assist the determination of whether a case is fully administered although each of the factors need not be present in order for a court to enter a final decree. See, e.g, Walnut Assocs. v. Saidel, 164 B.R. 487, 493 (E.D. Pa. 1994); In re JMP-Newcor Int'l, Inc., 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998) (finding that case was fully administered despite pending adversary proceeding).

27.     The Specified Debtors' cases have been or, upon entry of the requested order, will be, "fully administered" within the meaning of section 350 of the Bankruptcy Code when the foregoing factors are taken into account. First, the Confirmation Order became final more than two and a half years ago, and the Reorganized Debtors also assumed the management of the property dealt with by the Plan more than two and a half years ago. Second, thousands of Proofs of Claim asserted against the Specified Debtors have been resolved, with the exception of the

15

Unresolved Claims, which, to the extent necessary, will be administered in the Lead Case, and, if

Allowed, paid in accordance with the Plan's provisions applicable to the Specified Debtor

against which the claim was properly asserted. With respect to Proofs of Claim that have been

Allowed, all distributions have been made in accordance with the terms of the Plan. Third, all

costs required by the Plan to be paid by the Specified Debtors have been paid. Lastly, all

motions, contested matters or adversary proceedings related to the Specified Debtors' cases have

either been resolved or, to the extent further proceedings in this Court with respect to such

matters are necessary, such proceedings may be administered in the Lead Case.

28.    Given the fully administered status of the Specified Debtors' chapter 11 cases,

there is no practical benefit to leaving the cases open. Closing the cases, however, will allow the

Reorganized Debtors to save nearly $72,000 per quarter in U.S. Trustee fees allocable to those

cases, while reducing this Court's docket and reducing the attendant burden on this Court as well

as the Clerk of the Court's office. There are thus real benefits to closing the Specified Cases and

no countervailing reasons to keep them open.

29.    In light of the foregoing, entry of a final decree is appropriate at this time for each

of the Specified Cases. The particular relief requested by this Motion tracks the relief this Court

granted the Reorganized Debtors in the Initial Case Closure Order and is also similar to the relief

granted to debtors in other chapter 11 cases. See, e.g., In re NewPage Corp., No. 11-12804 (KG)

(Bankr. D. Del. Nov. 12, 2013) [Docket No. 4482] (closing certain chapter 11 cases

notwithstanding pending adversary proceedings and pending claims); In re AbitibiBowater, No.

09-11296 (KJC) (Bankr. D. Del. Dec. 18, 2012) [Docket No. 5282] (closing certain chapter 11

cases despite pending appeals, pending avoidance actions, and pending claims pursuant to

section 502(d) of the Bankruptcy Code); In re Dura Automotive Sys., Inc., No. 06-11202 (KJC)

16

(Bankr. D. Del. Dec. 27, 2011) [Docket No. 4273] (closing certain chapter 11 cases despite a pending avoidance action for which a written settlement agreement remained in process). Accordingly, the Reorganized Debtors respectfully request that the Court enter the Proposed Final Decree pursuant to section 350(a) of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 3022-1 closing each of the Specified Cases.

**B.    Use of Amended Caption**

30.    The Court has the authority to direct the use of an amended caption under sections 105(a) and 342(c)(1) of the Bankruptcy Code, as well as Bankruptcy Rules 1005, 2002(m), and 2002(n). Section 342(c) of the Bankruptcy Code requires, in relevant part, that notices "required to be given by the debtor to a creditor…shall contain the name, address, and last 4 digits of the taxpayer identification number of the debtor." 11 U.S.C. § 342(c)(1). Similarly, Bankruptcy Rule 1005 requires that a proper caption include the name of the debtor and last 4 digits of the taxpayer identification number of the debtor. Section 105(a) provides this Court with the authority to issue orders that are necessary to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 2002(m) provides that the "court may from time to time enter orders designating…the form and manner in which notices shall be sent" and Bankruptcy Rule 2002(n) requires that the caption of every notice include the information required to be in the notice by section 342(c) of the Bankruptcy Code and Bankruptcy Rule 1005. Similarly, Del. Bankr. L.R. 9004-1 provides that "[d]ocuments submitted for filing shall contain in the caption the name of the debtor, the case number, the initials of the Judge to whom the case has been assigned, the docket number assigned to the case and, if applicable, the adversary proceeding number."

46429/0001-12022401v1

31.     The use of the amended caption proposed herein is necessary to reflect the closure of the Specified Cases.  Specifically, the proposed caption will accurately reflect that, following entry of the relief requested herein, the Reorganized Debtors or successors to Reorganized Debtors identified on the caption are the only entities with Remaining Cases open and pending in these chapter 11 proceedings.  Accordingly, the Reorganized Debtors submit that it is necessary and appropriate to modify the caption of the Remaining Cases as set forth herein.

## C.     **Administration of Unresolved Matters**

32.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Closing the Specified Cases and administering any unresolved matters with respect to such cases in the Lead Case is an appropriate use of the Court's equitable powers under section 105(a) of the Bankruptcy Code.

33.     A principal purpose behind this Motion – other than the reduction of administrative burdens on this Court and the Clerk of the Court – is to limit the incurrence of quarterly fees payable to the Office of the United States Trustee.  At present, the Reorganized Debtors' cases accrue approximately $72,000 per quarter in fees attributable to the Specified Cases.  This is a substantial ongoing financial burden for the Reorganized Debtors.  Moreover, it is a burden that provides little by way of corresponding benefit to the Reorganized Debtors or to any remaining creditors, including potential creditors of the Specified Debtors' estates.  All of the Specified Debtors' cases sought to be closed by this Motion have little or no activity in them each quarter, nor are they expected to have any substantial activity in the future.  In all such cases, there remains only one claim, or a handful of claims, all of which are contingent and relate

to the LBO Transaction, and all of which will not be addressed except as part of, or following the conclusion of, the MDL Proceedings.

34.     It is unnecessary to keep the Specified Cases open on account of the relatively few unresolved matters remaining in the Specified Cases, particularly when the Court can continue to address such matters under the umbrella of the Lead Case.  Indeed, as long the Lead Case remains open, closure of the Specified Cases will not affect the resolution of the outstanding Proofs of Claim asserted against, or other matters involving, the Specified Debtors. Rather, upon entry of the relief requested herein, any remaining matters that might potentially impact the estates of the Specified Debtors can either be addressed adequately in the Lead Case or, if necessary, with the reopening of the chapter 11 case or cases of the relevant Specified Debtor(s).

35.     The proposed form of order attached hereto provides for the Court to retain jurisdiction over the Specified Cases in the event that the Reorganized Debtors or any other party in interest seeks to reopen any of the Specified Cases for cause.  The retention of jurisdiction by the Court for such purpose is appropriate, and consistent with the terms of the Confirmation Order.  See 28 U.S.C. § 1334(b) (granting courts "related to" jurisdiction); Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1985) (providing definition of "related to" for jurisdictional purposes); see also Confirmation Order at § IX (describing the Court's retention of jurisdiction for the purposes set forth in Article XII of the Plan).  In any event, if necessary, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b); see also In re Gates Cmty. Chapel of Rochester, Inc., 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) ("the entry of a final decree in no way completely deprives the court of jurisdiction to reopen the case, enforce or interpret an Order or

46429/0001-12022401v1

determine a pertinent issue"). Therefore, granting the relief requested herein would not foreclose the possibility of reopening the Specified Cases should the need arise.

## FINAL REPORT

36.     Pursuant to Local Rule 3022-1, all fees required to date pursuant to 28 U.S.C. § 1930 have been paid, or will be paid, by the Specified Debtors. The Proposed Final Decree waives the requirement under Local Rule 3022-1(c) to file a final report with respect to the Specified Cases prior to the hearing on this Motion. The Reorganized Debtors instead propose to file a consolidated final report with respect to all of the Debtors in connection with a motion seeking to close the final Remaining Case(s).

## NOTICE

37.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the parties holding Unresolved Claims; and (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rules 2002-1(b) and 3022-1. In light of the nature of the relief requested herein, the Reorganized Debtors submit that no other or further notice is necessary.

WHEREFORE the Reorganized Debtors respectfully request that the Court (i) enter the Proposed Final Decree closing the Specified Cases and providing that, to the extent necessary, further proceedings in this Court with respect to (a) the unresolved Proofs of Claim asserted against the Specified Debtors and (b) other remaining matters that may potentially impact the estates of the Specified Debtors shall be administered in Lead Case, (ii) direct the use of the amended caption proposed herein, and (iii) grant such other and further relief as the Court may deem just and proper.

Dated: Wilmington, Delaware
      July 7, 2015

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kenneth P. Kansa
Kerriann S. Mills
Jillian K. Ludwig
Michael T. Gustafson
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000

-and-

JONES DAY
Bruce Bennett
James O. Johnston
Joshua M. Mester
555 South Flower Street, 50th Floor
Los Angeles, CA  90071-2300
Telephone:  (213) 489-3939

-and-

COLE SCHOTZ P.C.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131

ATTORNEYS FOR REORGANIZED
DEBTORS