## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY, et al.,[1] (f/k/a Tribune Company) | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Related to DI 14175** **Response Deadline:  December 18, 2015** |

## REORGANIZED DEBTORS' OBJECTION TO REQUEST FOR ORDER CERTIFYING DIRECT APPEAL OF ORDER DISALLOWING WILMINGTON TRUST'S CLASS 1F OTHER PARENT CLAIM

The Reorganized Debtors object to the *Request For Order Certifying Order Sustaining The Reorganized Debtors' Objection To The Class 1F Other Parent Claim Asserted By Wilmington Trust Company For Direct Appeal To The Court Of Appeals For The Third Circuit* [DI 14175] (the "Request").

## PRELIMINARY STATEMENT

1.      Certification of a direct appeal to the Third Circuit is a "rare" and unusual exception to the normal course of appellate proceedings in bankruptcy.  There is no basis here for deviating from the ordinary procedure for WTC's routine appeal of the Fee Order.[2]

2.      WTC's Fee Claim presents a mixed question of law and fact involving the application of sections 502, 503, and 506 of the Bankruptcy Code to a set of disputed facts.  That is neither a pure question of law nor an open issue lacking controlling authority.  To the contrary,

---

[1]   The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Media Company (0355); Chicago Tribune Company, LLC (3437); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); KTLA, LLC (3404); KWGN, LLC (5347); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); Tribune CNLBC, LLC (0347); Tribune Content Agency, LLC (2931); Tribune Media Services, LLC (1080); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191).  The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2]   Capitalized terms not defined here have the meanings given in the Request and the Court's Opinion [DI 14166].

there are three opinions of the Supreme Court, *Travelers Casualty and Surety Company v. Pacific Gas and Electric Company*, 549 U.S. 443 (2007), *United Savings Association v. Timbers of Inwood Forest Associates*, 484 U.S. 365 (1988), and *Randolph v. Scruggs*, 190 U.S. 533 (1903), that lead directly to the result reached by the Court, and there are no relevant conflicting decisions within the Third Circuit.

3.      This is just a run-of-the-mill dispute regarding allowance of a disputed unsecured claim. Nothing about it transcends the litigants or otherwise advances the cause of jurisprudence to a degree that usually is not the case. Moreover, because the Reorganized Debtors have multiple grounds for disallowance or reduction of the Fee Claim in addition to those addressed in the Opinion, the best possible result that WTC now can attain is reversal and remand for further proceedings. A direct appeal therefore cannot, and will not, materially advance the progress of the case.

4.      Accordingly, none of the applicable statutory criteria are present here. The Court should exercise its important "gatekeeping" function and deny WTC's Request for certification of a direct appeal of the Fee Order, thereby keeping WTC's appeal on the usual appellate course and enabling the District Court to adjudicate the matter in the first instance.

## ARGUMENT

5.      The Court may certify a direct appeal only if it is persuaded that "(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken[.]" 28 U.S.C. § 158(d)(2)(A).

6.    Those statutory criteria are construed narrowly and certification is rarely appropriate. *See, e.g., In re Motors Liquidation Co.*, 486 B.R. 596, 646 (Bankr. S.D.N.Y. 2013) (direct appeal appropriate only "[o]n rare occasions"), *rev'd on other grounds*, 777 F.3d 100 (2d Cir. 2015). "Congress was aware of the dangers of leapfrogging the district court in the appeals process" and "did not wish us to privilege speed over other goals." *Weber v. United States Trustee*, 484 F.3d 154, 160 (2d Cir. 2007). Because "[c]ourts of appeals benefit immensely from reviewing the efforts of the district court," the strong preference is for bankruptcy appeals "to percolate through the normal channels." *Id.* Accordingly, the Court performs a "gate-keeping function" by prohibiting direct appeals in all but a very limited category of cases. *In re Fisker Automotive Holdings, Inc.*, No. 14-CV-99 (GMS), 2014 WL 576370, *4 n.3 (D. Del. Feb. 12, 2014). This is not one of those cases.

**A.    WTC's Appeal Does Not Involve A "Question Of Law" Lacking "Controlling" Authority Or Requiring "Resolution Of Conflicting Decisions."**

7.    To start, this dispute does not involve "a pure legal issue [and therefore] is not appropriate for direct appeal." *In re Tribune Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012); *see, e.g., Weber*, 484 F.3d at 158 ("Congress intended . . . to facilitate our provision of guidance on pure questions of law.").

8.    The Reorganized Debtors objected to the Fee Claim on four distinct grounds:  that sections 502, 503, and 506 of the Bankruptcy Code disallow WTC's unsecured claim for postpetition fees under the PHONES Notes Indenture; that the Indenture itself limits WTC to a maximum claim of $1.74 million; that WTC's claimed fees are not reasonable; and that the Plan prohibits WTC's claim for millions of dollars of post-Effective Date fees incurred in litigating

the Fee Claim.[3]  That objection raised issues regarding interpretation of the Bankruptcy Code,

the Plan, and the PHONES Notes Indenture; application of the Bankruptcy Code, the Plan, and

the Indenture to the facts of the Fee Claim; and consideration of WTC's alleged fees and the

work associated with them.

9.    Clearly, determination of WTC's Fee Claim requires, at least in part, a "fact-

intensive" analysis regarding WTC's ability to recover under the sections of the Bankruptcy

Code at issue in the Court's Opinion.  Consequently, this is not an appropriate case for

certification.  *See, e.g.*, *Tribune*, 477 B.R. at 472 (no certification for appeal regarding

section 1129(b)'s unfair discrimination standard due to "fact-intensive" inquiry; no certification

for appeal regarding subordination because "[i]nterpretation of the PHONES Indenture requires

application of state law and is not appropriate for direct appeal to the Third Circuit"); *In re*

*American Home Mortg. Inv. Corp.*, 408 B.R. 42, 44 (D. Del 2009) ("mixed questions that

implicate the particular circumstances of this case . . . are not pure legal questions warranting

certification").

10.    Further, there *is* controlling authority on the issue of statutory interpretation raised

by WTC in its appeal.  Specifically, the Court considered and applied both *Travelers* and

*Timbers* in disallowing the Fee Claim.  Opinion at 6, 8-9.  The Reorganized Debtors also cited

*Randolph* for the proposition that unsecured claims for postpetition fees are allowable only "for

services which were beneficial to the estate" (*i.e.*, in cases where the claimant has made a

substantial contribution).  Reply at 8 (quoting *Randolph*, 190 U.S. at 210).  The Court's Opinion

clearly was "informed by" those Supreme Court decisions, which constitute controlling authority

for purposes of the certification statute.  *See, e.g.*, *Tribune*, 477 B.R. at 471 (no certification

---

[3]    *See Reply Of The Reorganized Debtors To Wilmington Trust Company's Limited Objection To Mediator's Report And Recommendation* ("Reply") [DI 14046].

- 4 -

where Court's analysis of section 1129(b) was "informed by" a Third Circuit opinion interpreting another provision of the Code). WTC "is not arguing the absence of controlling law; rather [it] is arguing the absence of a decision that adopts [its] position." *In re Conex Holdings*, 534 B.R. 606, 611 (D. Del. 2015). That is not sufficient for certification.

11.     Similarly, allowance of WTC's Fee Claim does not require "resolution of conflicting decisions." WTC cites *Ceda Mills* and *Oakwood Homes* for the proposition that "there is a split in decisions within the Third Circuit." Request ¶ 16 (citing *In re Ceda Mills, Inc.*, No. 04-24452, 2009 WL 8556804 (Bankr. W.D. Pa. Feb. 11, 2009), and *In re Oakwood Homes Corp.*, 394 B.R. 352 (Bankr. D. Del. 2008)). The Court, however, correctly observed that those cases "involve *oversecured* creditors' claims" and are not relevant to consideration of WTC's wholly-*unsecured* Fee Claim. Opinion at 9 & n.28. Thus, there are no conflicting decisions on point within the Third Circuit, which WTC concedes to be the relevant inquiry for certification. Request ¶ 15 ("To satisfy this condition, the conflict must exist within the particular circuit.") (quotation omitted).

**B.     WTC's Appeal Does Not Involve "A Matter Of Public Importance."**

12.     WTC's appeal also does not involve a matter of public importance. "To constitute an issue of 'public importance,' the issue on appeal must transcend the litigants and involve a legal question, the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *Tribune*, 477 B.R. at 472 (quotations and citations omitted) (no "public importance" associated with question of unfair discrimination where the Court's ruling followed controlling law within the Third Circuit and the appeal involved application of that law to the facts of the case);[4] *see, e.g.*, *In re General Motors Corp.*, 409 B.R. 24, 28 (Bankr.

---

[4]    The Court's prior certification opinion in this case makes clear that WTC is wrong in suggesting that "the monetary value of the matters at issue and the prominence of the case from which the appeal emanates" make

S.D.N.Y. 2009) (no "public importance" where appeal was "ultimately a matter of statutory interpretation and common law analysis – as contrasted, for example, to constitutional issues").

13.     The question on appeal here is a "private contract dispute that is not the type of 'matter of public importance' that is within the meaning of section 158(d)(2)(A)(i)." *In re Johns-Manville Corp.*, 449 B.R. 31, 34 (S.D.N.Y. 2011).  WTC's warning that the Court's Opinion will limit creditor participation in bankruptcy cases "if adopted by other courts within this jurisdiction" (Request ¶ 13) is unavailing given that courts within the Third Circuit *unanimously* have disallowed unsecured claims for postpetition fees.  "While the outcome of this litigation is of great importance to the parties involved, its conclusion does not rise to the level contemplated" by the statute.  *In re Brannan*, No. 04-01037, 2013 WL 1352350, *3 (Bankr. S.D. Ala. Apr. 3, 2013).

**C.     A Direct Appeal Will Not "Materially Advance The Progress Of The Case."**

14.     Finally, a direct appeal will not materially advance the progress of the case.  WTC asserts that certification is appropriate because it ultimately will appeal any unfavorable District Court decision to the Third Circuit.  Request ¶ 18.  However, "it is not enough to rely on the truism that leapfrogging district-court review always advances litigation." *WestLB AG v. Kelley*, 514 B.R. 287, 292-293 (D. Minn. 2014).  "That argument can be made in every case involving a final judgment of the Bankruptcy Court." *Johns-Manville*, 449 B.R. at 34; *e.g. In re Lehman Bros., Inc.*, No. 13-5381, 2013 WL 5272937, *5 (S.D.N.Y. Sept. 18, 2013) ("If the mere expectation of advancement to a circuit court was sufficient to establish material advancement,

---

its appeal a matter of public importance.  Request ¶¶ 12, 14.  Given that the Indenture Trustees' appeal of the unfair discrimination issue did not rise to an adequate level of importance, WTC's appeal of a claim with lesser "monetary value" in the same case cannot constitute a sufficiently-important matter to justify certification.

46429/0001-12613211v1

Section 158(d)(2)(A) would effectively eliminate the district court from the bankruptcy review process altogether.").

16. More broadly, as the Court noted in denying certification of an appeal of a confirmation order, chapter 11's "emphasis really is . . . on plan confirmation." *In re New Century TRS Holdings, Inc.*, No. 07-10416 (KJC), Tr. 66:3-4, Aug. 13, 2008 (Bankr. D. Del. 2008) [DI 8743]. The Plan here was confirmed and consummated long ago, meaning that a direct appeal will do nothing to advance the bankruptcy case itself. There simply "is nothing extraordinary or urgent about this situation that recommends departing from the standard appellate process." *Conex*, 534 B.R. at 611.

15. Moreover, there is no ruling on appeal that could result in allowance of the Fee Claim. Rather, if the Fee Order is reversed, the case will be remanded for the Court to adjudicate the remaining objections to the Fee Claim on which the Court made no ruling. Opinion at 10 n.29. As a consequence, a direct appeal cannot terminate the case in WTC's favor. *See, e.g.*, *Brannan*, 2013 WL 1352350 at *4 (no certification where "[t]he court will still have to try the case even if the circuit court reverses").

## CONCLUSION

For all of these reasons, the Reorganized Debtors respectfully request that the Court deny WTC's Request for certification of a direct appeal of the Fee Order.

Dated: Wilmington, Delaware
      December 18, 2015

Respectfully submitted,

JONES DAY
James O. Johnston
Joshua M. Mester
555 South Flower Street, 50th Floor
Los Angeles, CA 90071-2300
Telephone: (213) 489-3939

-and-

46429/0001-12613211v1

SIDLEY AUSTIN LLP
Jillian K. Ludwig
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000

-and-

James F. Bendernagel Jr.
1501 K Street N.W.
Washington, D.C.  20005
Telephone:  (202) 736-8000

-and-

COLE SCHOTZ  P.C.

By: _ /s/ J. Kate Stickles_____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131

*Attorneys For Reorganized Debtors*

46429/0001-12613211v1