## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRIBUNE MEDIA COMPANY, *et al.,* | ) | Case No. 08-13141 (KJC) |
| | ) | |
| Reorganized Debtors | ) | |
| | ) | |

## NOTICE OF APPEAL OF KEITH YOUNGE

Pursuant to 28 U.S.C. § 158(a)(1) and Bankruptcy Rule 8003(a), creditor Keith Younge ("Younge"), does hereby appeal the Order Sustaining the Reorganized Debtors' Objection to Claim No. 3333 of Keith Younge [D.I. 14221] of the bankruptcy court entered on March 18, 2016 in the above-captioned case.

The names of the parties to the above ruling appealed from and the names, addresses, and telephone numbers of their respective attorneys are set forth below:

| **Party** | **Counsel** |
|---|---|
| Debtor | Cole Schotz P.C. <br> Norman L. Pernick <br> Patrick J. Reilley <br> J. Kate Stickles <br> 500 Delaware Avenue, Suite 1410 <br> Wilmington, DE 19801 <br> 302-652-3131 <br> Fax : 302-652-3117 <br> Email: npernick@coleschotz.com <br> Email: preilley@coleschotz.com <br> Email: kstickles@coleschotz.com |
| Appellant/Creditor Keith Younge | Werb & Sullivan <br> "J" Jackson Shrum (DE No. 4757) <br> 300 Delaware Avenue, Suite 1300 <br> Wilmington, DE 198991 <br> Tel: (302) 652-1100 <br> Fax: (302) 652-1111 |

Case 08-13141-KJC   Doc 14227-1   Filed 04/01/16   Page 2 of 27

Dated:  April 1, 2016

Respectfully submitted,

WERB & SULLIVAN

By:  /s/ Jack Shrum
"J" Jackson Shrum (DE No. 4757)
300 Delaware Avenue, Suite 1300
Wilmington, DE 19801
Tel: (302) 652-1100
Fax: (302) 652-1111

*Attorneys for Keith Younge*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:                                    :        CHAPTER 11
                                          :
TRIBUNE MEDIA COMPANY, et al.,[1]         :
                                          :        Case No. 08-13141 (KJC)
        Reorganized Debtors               :        (D.I. 13715)

## ORDER SUSTAINING THE REORGANIZED DEBTORS' OBJECTION
## TO CLAIM NO. 3333 OF KEITH YOUNGE

AND NOW, this 18th day of March, 2016, upon consideration of the Reorganized

Debtors' Objection to Claim No. 3333 of Keith Younge (the "Claim Objection"), and the

responses thereto, and for the reasons set forth in the foregoing Memorandum, it is hereby

ORDERED that:

1.      The Claim Objection is SUSTAINED;

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases are: Tribune Media Company; California Community News, LLC; Chicago Tribune Company, LLC; Chicagoland Publishing Company, LLC; Chicagoland Television News, LLC; forsalebyowner.com, LLC; ForSaleByOwner.com Referral Services LLC; Hoy Publications, LLC; Internet Foreclosure Service, LLC; KDAF, LLC; KIAH, LLC; KPLR, Inc.; KRCW, LLC; KSWB, LLC; KTLA, LLC; KTXL, LLC; KWGN, LLC; Los Angeles Times Communications LLC; Magic T Music Publishing Company, LLC; NBBF, LLC; Oak Brook Productions, LLC; Orlando Sentinel Communications Company, LLC; Sun-Sentinel Company, LLC; The Baltimore Sun Company, LLC; The Daily Press, LLC; The Hartford Courant Company, LLC; The Morning Call, LLC; Tower Distribution Company, LLC; Towering T Music Publishing Company, LLC; Tribune 365, LLC; Tribune Broadcasting Company, LLC; Tribune Broadcasting Hartford, LLC; Tribune Broadcasting Indianapolis, LLC; Tribune Broadcasting Seattle, LLC; Tribune CNLBC, LLC; Tribune Content Agency, LLC, LLC; Tribune Content Agency London, LLC; Tribune Direct Marking, LLC; Tribune Entertainment Company, LLC; Tribune Investments, LLC; Tribune Media Services, LLC; Tribune ND, LLC; Tribune Publishing Company, LLC; Tribune Television New Orleans, Inc.; Tribune Washington Bureau, LLC; WDCW, LLC; WGN Continental Broadcasting Company, LLC; WPHL, LLC; WPIX, LLC; WPMT, LLC; WSFL, LLC; WXMI, LLC.

Case 08-13141-KJC   Doc 14221   Filed 04/04/16   Page 2 of 2

2.      Claim No. 3333 of Keith Younge is DISALLOWED and expunged in its entirety; and

3.      The Claims Agent is authorized to amend the official claims register maintained in these chapter 11 cases to comport with the entry of this Order.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

cc: J. Kate Stickles, Esquire[2]

---

[2] Counsel shall serve a copy of this Memorandum and Order upon all interested parties and file a Certificate of Service with the Court.

2

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| TRIBUNE MEDIA COMPANY, *et al.*,[1] | : | |
| | : | Case No. 08-13141 (KJC) |
| Reorganized Debtors | : | (D.I. 13715) |

## MEMORANDUM SUSTAINING OBJECTION TO
## CLAIM OF KEITH YOUNGE[2]

# BY:  KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the Reorganized Debtors' Objection to Claim No. 3333 of Keith

Younge Pursuant to Sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules

3001, 3003, and 3007 (D.I. 13715) (the "Claim Objection"). The claimant, Keith Younge

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases are: Tribune Media Company; California Community News, LLC; Chicago Tribune Company, LLC; Chicagoland Publishing Company, LLC; Chicagoland Television News, LLC; forsalebyowner.com, LLC; ForSaleByOwner.com Referral Services LLC; Hoy Publications, LLC; Internet Foreclosure Service, LLC; KDAF, LLC; KIAH, LLC; KPLR, Inc.; KRCW, LLC; KSWB, LLC; KTLA, LLC; KTXL, LLC; KWGN, LLC; Los Angeles Times Communications LLC; Magic T Music Publishing Company, LLC; NBBF, LLC; Oak Brook Productions, LLC; Orlando Sentinel Communications Company, LLC; Sun-Sentinel Company, LLC; The Baltimore Sun Company, LLC; The Daily Press, LLC; The Hartford Courant Company, LLC; The Morning Call, LLC; Tower Distribution Company, LLC; Towering T Music Publishing Company, LLC; Tribune 365, LLC; Tribune Broadcasting Company, LLC; Tribune Broadcasting Hartford, LLC; Tribune Broadcasting Indianapolis, LLC; Tribune Broadcasting Seattle, LLC; Tribune CNLBC, LLC; Tribune Content Agency, LLC, LLC; Tribune Content Agency London, LLC; Tribune Direct Marking, LLC; Tribune Entertainment Company, LLC; Tribune Investments, LLC; Tribune Media Services, LLC; Tribune ND, LLC; Tribune Publishing Company, LLC; Tribune Television New Orleans, Inc.; Tribune Washington Bureau, LLC; WDCW, LLC; WGN Continental Broadcasting Company, LLC; WPHL, LLC; WPIX, LLC; WPMT, LLC; WSFL, LLC; WXMI, LLC.

[2] This Memorandum constitutes the findings of fact and conclusions of law, as required by Fed. R. Bankr. P. 7052. This Court has jurisdiction to decide this claim objection pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

("Younge"), filed a Proof of Claim against Tribune Television Company referencing a complaint that he filed with the Philadelphia Commission on Human Relations (the "Commission") alleging claims based on employment discrimination and hostile work environment.

In the Claim Objection, the Reorganized Debtors argue that Younge's claim fails as a matter of law. Younge opposed the Claim Objection and filed a response attaching documents in further support of his claim, including materials that were provided by Tribune Televisions Company to the Commission as part of its factual investigation. The Reorganized Debtors filed a Reply in support of the Claim Objection. Thereafter, Younge asked to continue the hearing date that had been set to consider the Claim Objection due to health problems and to obtain new counsel. Younge's new counsel attended the rescheduled hearing, but it was unclear when Younge would be well enough to attend a hearing. I permitted Younge's new counsel to make additional submissions, to which the Reorganized Debtors replied. Then I took the matter under advisement to determine whether the matter could be determined as a matter of law, without an evidentiary hearing.

Accordingly, I am reviewing the Claim Objection as a motion for summary judgment under Fed.R.Bankr.P. 7056, made applicable to contested matters pursuant to Fed.R.Bankr.P. 9014(c), because the Reorganized Debtors argue that there is no genuine dispute as to material facts, and they are entitled to judgment as a matter of law. Younge filed a response and supplemental materials opposing the Claim Objection. For the reasons set forth below, the Debtors' objection to Younge's claim is sustained and Claim No. 3333 of Younge is disallowed and expunged in its entirety.

# FACTS

In April 2008, Younge was hired to work at WPHL-TV (the "Station"), a television

station in Philadelphia, Pennsylvania that was owned by debtor Tribune Television Company.[3]

Younge started on a 30-day probationary period and was training 3-4 days per week.[4]

Younge is an African-American male.  During his first week of employment, Younge

trained with technician, Sandy Kerr (Caucasian) on how to operate master control, and with

technician Steve Leff (Caucasian) on how to operate tape prep on second shift.[5]  On May 7,

2008, Younge was assigned to train with Rick Schultz (Caucasian) on how to operate tape prep on

third shift (10:00 pm to 6:00 a.m.).[6]  Younge and Schultz had an altercation that evening.  In the

Commission Statement, Younge reported his account of the altercation, including the following:

- Prior to training with Schultz on May 7, 2008, Kerr told Younge, "If you run into any trouble tonight make sure you tell me tomorrow."  Younge then asked Leff why Kerr made that statement.  Leff replied that Schultz has a problem; Younge asked, "With me?"  Leff replied, "No, he just has a problem." [7]

- At approximately 10:50 p.m., Schultz entered the training room and said to Younge, "Hey, Spike, you want to get this off the table?" (referring to Younge's briefcase).   Younge assumed Schultz did not know his name and introduced himself as Keith.  Schultz responded, "As far as [I] am concern[ed] you are Spike Lee." [8]

- Younge reported that the matter escalated to a lot of yelling by both parties, including additional comments by Schultz that Younge should "take that [expletive] back to the ghetto, homie."  Younge replied that he lived in King of Prussia and did not know that was the ghetto.[9]

---

[3] Declaration of Vincent Giannini in Support of Reorganized Debtors' Objection to Claim No. 3333 of Keith Younge (the "Giannini Decl.") (D.I. 13715-3), ¶1, ¶7; Commission Statement of Particulars (the "Commission Statement") (D.I. 13755, Ex. A), ¶1.
[4] Giannini Decl., ¶7; Commission Statement, ¶2.
[5] Giannini Decl., ¶7.
[6] Id., Commission Statement, ¶3.
[7] Commission Statement, ¶3, ¶4.
[8] Id., ¶5, ¶6, ¶7.
[9] Id., ¶8.

3

- Younge told Schultz that all he had to do was train him. Schultz responded that Younge was only an intern, and the conversation got more heated. [10]

- A security officer was called and Younge walked outside with him. Schultz went into another office but returned to hand Younge a cell phone to speak to the Engineering Manager, who was apologetic, said Schultz was "way out of line," and told Younge to contact Human Resources, the Union and the General Manager the next morning.[11]

- The next day, Younge contacted his supervisor, the Engineering Manager and the Human Resources Department to report the incident. Younge was told, "You should have never had to deal with that; we have had problems with Schultz before."[12]

- On May 12, 2008, Younge had not been contacted so he called his supervisor, Michael Hort, and got his voicemail. Two hours later, a Human Resources Manager called Younge to ask a few questions, including: (i) "Did you curse at [Schultz]?" to which he responded "yes." (ii) "Do you remember what you said?" to which he responded "No, I was angry; I don't remember." (iii) "Did you spit on him?" to which he responded "absolutely not."[13]

- On May 15, 2008, Younge called Michael Hort again to check on his status. Younge was told that, based on the Human Resources investigation, Younge's employment was being terminated for violating the company's code of conduct.[14]

On May 8, 2008, Vincent Giannini, the Vice President and General Manager of the Station, was informed of the altercation between Younge and Schultz.[15] On May 12, 2008, Giannini spoke to the Human Resources Coordinator about the results of her investigation into the altercation, which was based upon discussions with Younge, Schultz and other witnesses.[16] Giannini reviewed a copy of the video from the surveillance camera located outside the door of the training room for May 7, 2008.[17] Based on his review of the investigation's findings and the

---

[10] *Id.,* ¶9.
[11] *Id.,* ¶10, ¶11, ¶12.
[12] *Id.,* ¶13.
[13] *Id.,* ¶15.
[14] *Id.,* ¶17.
[15] Giannini Decl., ¶8.
[16] *Id.*
[17] *Id.*

surveillance camera video, Giannini determined that both Younge and Schultz had violated the Station's Anti-Harassment Policy and/or its Standards of Conduct.[18]  As a result, Giannini decided that both men should be discharged.[19]  By letters dated May 15, 2008, Younge and Schultz were each informed of their respective employment termination.[20]

On June 9, 2008, Younge filed a complaint with the Philadelphia Commission on Human Relations, alleging that he was subjected to a hostile work environment, discriminated against and terminated because of his race and/or color.[21]  By letter to the Station dated June 20, 2008, the Commission advised that it was commencing its fact-finding investigation.[22]

On December 8, 2008, Tribune Company and certain of its affiliates (the "Debtors"), including Tribune Television Company, filed voluntary chapter 11 bankruptcy petitions in this Court.  On June 1, 2009, Younge filed his proof of claim in the amount of $75,000.  On July 23, 2012, this Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization (the "Plan") for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P.,  Angelo, Gordon & Co., L.P., and JP Morgan Chase Bank, N.A.[23]   The Plan became effective on December 31, 2012.[24]

On September 6, 2013, the Reorganized Debtors filed an objection to Younge's proof of claim (the "Claim Objection").  Younge filed a response opposing the Claim Objection, and the Reorganized Debtors filed a Reply.  After Younge sought to continue the hearings to consider the

---

[18] *Id.,* ¶10.
[19] *Id.*
[20] *Id.*
[21] D.I. 13715-2, Ex. A, at 5. Younge also requested that the complaint be filed with the U.S. Equal Employment Opportunity Commission, Philadelphia Office ("EEOC"). *Id.* at 6-8. The complaint was sent to the EEOC for dual-filing, but the EEOC advised that it would refrain from processing the charge until the Commission completed its factual investigation. *Id.*
[22] *Id.* at 3.
[23] D.I. 12074.
[24] D.I. 12939.

Claim Objection, the Court held a hearing and granted Younge the opportunity to file additional

submissions.  Younge filed his Supplemental Response on August 21, 2014, and the Reorganized

Debtors filed a reply in support of the Claim Objection on September 5, 2014.

## STANDARDS

(1)    Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of

Bankruptcy Procedure 7056 and 9014(c), provides that "[t]he court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."[25]  At the summary judgment stage, the court's function is

not to weigh the evidence and determine the truth of the matter, but to determine whether there is

a genuine issue for trial.[26]

The moving party bears the burden of establishing the absence of a genuine dispute as to a

material fact.[27]  When the nonmoving party bears the burden of persuasion at trial, the moving

party "may meet its burden . . . by showing that the nonmoving party's evidence is insufficient to

carry that burden."[28]

Once the moving party has carried its initial burden, the opposing party "must do more

than simply show that there is some metaphysical doubt as to the material facts."[29]  Summary

---

[25] Fed. R. Civ. P. 56(a).

[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249,106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

[28] *Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252, 258 n.5 (3d Cir. 1998) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

[29] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

judgment cannot be avoided by introducing only "a mere scintilla of evidence," or by relying on "conclusory allegations, improbable inferences and unsupported speculation."[30] "Brash conjecture coupled with earnest hope that something concrete will materialize, is insufficient to block summary judgment."[31]

Substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit will preclude summary judgment.[32] Moreover, a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[33] The Court must resolve all doubts and consider the evidence in the light most favorable to the nonmoving party.[34]

(2)     Objection to a Proof of Claim

A claim that is properly filed under Rule 3001 and Bankruptcy Code § 501 is deemed allowed unless a party in interest objects.[35] When a claim objection is filed in a bankruptcy case, the burden of proof as to the validity of the claim "rests on different parties at different times."[36] The Court of Appeals for the Third Circuit described the burden shifting as follows:

> Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie* " valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector

---

[30] *Sarko v. Penn-Del Directory Co.,* 968 F.Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted), *aff'd* 189 F.3d 464 (3d Cir. 1999); *J.Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996).

[31] *Id.* (quoting *Dow v. United Bhd. of Carpenters*, 1 F.3d 56, 58 (1st Cir. 1993)).

[32] *Anderson,* 477 U.S. at 248.

[33] *Id. See also Delta Mills, Inc. v. GMAC Commercial Fin., LLC (In re Delta Mills, Inc.)*, 404 B.R. 95, 105 (Bankr. D. Del. 2009) (An issue is genuine "when reasonable minds could disagree on the result.").

[34] *Anderson,* 477 U.S. at 255 ("[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

[35] 11 U.S.C. §§ 501, 502(a); Fed. R. Bankr. P. 3001.

[36] *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992).

must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. . . . The burden of persuasion is always on the claimant.[37]

## DISCUSSION

Younge's proof of claim asserts claims based upon Title VII of the Federal Civil Rights Act of 1964 and Pennsylvania statutory and common law.[38]  More specifically, Younge's complaint filed with the Commission asserts that he was "subjected to a hostile work environment, discriminated against and terminated all because of his race and/or color."

(1)     Hostile Work Environment Claim

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[39]  The United States Supreme Court has held that a hostile or abusive work environment violates Title VII, writing:

> [T]his language [of Title VII] "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment," which includes requiring people to work in a

---

[37] *Id.* (citations omitted).

[38] Applicable Pennsylvania law prohibiting employment discrimination is the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 - 963.  The PHRA provides, in relevant part, that "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer because of the race, color, religious creed, ancestry, age, sex, national origin . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract if the individual or independent contractor is the best able and most competent to perform the services required." 43 Pa. Cons. Stat. § 955(a) (2016). When the language of PHRA is substantially similar to federal anti-discrimination laws, the PHRA will be interpreted identically to the federal laws and will be governed by the same set of precedents. *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 567 (3d Cir. 2002) (citing *Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542, 552 (3d Cir. 1996). Here, the statutory language at issue is substantially the same and, therefore, the PHRA will be interpreted consistently with Title VII.

[39] 42 U.S.C. § 2000e-2(a)(1).

discriminatorily hostile or abusive environment. When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated.[40]

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances . . . [which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[41] The Court of Appeals for the Third Circuit has considered the following five-part test to determine whether a plaintiff may prevail on a hostile work environment claim:

1) the employee suffered intentional discrimination because of his or her membership in a protected class,

2) the discrimination was severe or pervasive,

3) the discrimination detrimentally affected the plaintiff,

4) the discrimination would detrimentally affect a reasonable person in like circumstances, and

5) the existence of *respondeat superior* liability.[42]

"The first four elements establish a hostile work environment, and the fifth element determines employer liability."[43]

---

[40] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.3d.2d 49 (1986)) (internal citations omitted.)

[41] *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

[42] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). *See also Monaco v. Limestone Veterinary Hospital,* Civ. No. 13-1184, 2016 WL 304938, *6 (3d Cir. Jan. 25, 2016).

[43] *Mandel*, 706 F.3d at 167 (citing *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)).

The Reorganized Debtors argue that Younge fails to allege that the offensive conduct was pervasive in the work place, because his complaint contains no allegations of any discriminatory conduct prior to the altercation with Schultz on the night of May 7, 2008. "Title VII is not violated by '[m]ere utterance of an . . . epithet which engenders offensive feelings in an employee' or by mere 'discourtesy or rudeness,' unless so severe or pervasive as to constitute an objective change in the conditions of employment."[44]

In his response to the Claim Objection, Younge alleges that the harassment was not a single incident because: (i) in the fourteen days that Younge was employed at the Station, Schultz referred to him as *hoop, hoops, homie, homeboy, Spike* and *Spike Lee;* and (ii) prior to the altercation, Schultz referred to Younge as a "hoop" in a conversation with a fellow technician. The Reorganized Debtors assert that nothing in the alleged facts supports Younge's claims that (i) Schultz made any remarks directly to Younge prior to the altercation, or (ii) Younge was aware of remarks that Schultz made to other technicians prior to the altercation. However, even if I determined that the assertions in Younge's response raise an issue of fact for trial, the Reorganized Debtors also argue that Younge's hostile work environment claim fails because no alleged facts establish employer liability under the fifth element of a hostile work environment claim: *respondeat superior.*

---

[44] *Lawrence v. F.C. Kerbeck & Sons,* 134 F. App'x 570, 572 (3d Cir. 2005) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). In *Lawrence,* the Third Circuit determined that the plaintiff did not establish a hostile work environment based upon one argument between the plaintiff and a payroll manager who made a racial remark. *See also Harris v. Cobra Const.,* 273 F. App'x 193, 195 (3d Cir. 2008) (deciding that a single racial slur combined with a death threat did not establish the severe or pervasive discrimination necessary to support a hostile work environment claim); *Sherrod v. Philadelphia Gas Works,* 57 F. App'x 68, 76 (3d Cir. 2003) (deciding that two incidents were not sufficiently severe and pervasive enough to establish a hostile work environment, even assuming that the comments were racially motivated).

An employer's liability for a hostile work environment claim changes based on whether the harasser is the victim's supervisor or merely a co-worker.[45]  An employer can be vicariously liable for unlawful harassment by a "supervisor," which is an employee who is empowered by the employer "to take tangible employment actions against the victim, *i.e.,* to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[46]

However, an employer is not automatically liable for a hostile work environment created by a victim's non-supervisory co-workers.[47]  "Rather, employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."[48]

Here, Schultz was not a supervisor because he was not empowered to take any "tangible employment action" against Younge.  When Younge complained of Schultz's actions, the Station took prompt remedial action by terminating Schultz's employment.

Younge, however, argues that Schultz's personnel file proves that the Station knew or should have known of Schultz's racial animus.  However, a review of the documents provided by Younge do not support this claim.

- Despite Younge's selection of words out of context, there is nothing in Schultz's performance review from 1973 which mentions any hint of racial animus and, in fact, states under "Personality" that "[Schultz] is somewhat volatile and free, but works well with others" and under "Courtesy" that "[Schultz] works out relationships with people well.  This is an obvious attribute."[49]

---

[45] *Huston v. Procter & Gamble Paper Prods. Co.,* 568 F.3d 100, 104 (3d Cir. 2009).
[46] *Vance v. Ball State University,* 133 S.Ct. 2434, 2443, 186 L.Ed.2d 565 (2013).
[47] *Huston,* 568 F.3d at 104.
[48] *Id.*
[49] D.I. 13751-2, Ex. B at 3-4.

- A 1993 letter indicates that Schultz was accused of racial bias in connection with an incident in which another employee confronted Schultz about tripping a door alarm that escalated into a shouting match.[50]   While troubling, I cannot conclude that a letter disputing allegations of racial bias written 15 years prior to the altercation with Younge provided the Station with notice or reason to know that Schultz would create a hostile work environment for Younge.

- A 2002 letter from the Station's director of engineering discusses the result of an investigation into Schultz's complaint that another employee made threatening comments to Schultz, finding that "both parties, based on their own admissions, used profane language in the workplace during an argument" and warned Schultz that "such behavior is prohibited and a violation of the Company's Zero Tolerance Policy," and that "further behavior of this kind could result in further corrective action, up to and including termination."[51]   Nothing in this letter indicates any racial bias by Schultz and, in fact, the Reorganized Debtors provided a supplemental declaration stating that the other person involved in the 2002 incident was Caucasian.[52] I cannot conclude that the 2002 letter demonstrated that the Station knew or had reason to know that Schultz would create a hostile work environment for Younge.

Viewing all facts in the light most favorable to Younge, I conclude that the facts do not support Younge's hostile work environment claim because there are no facts to demonstrate that the Station knew or should have known that Schultz would harass Younge with racial slurs in May 2008.  The Reorganized Debtors' objection to Younge's hostile work environment claim will be sustained.

(2)   Claim for Discriminatory Termination of Employment

Younge's claim also asserts a claim for wrongful termination based on discrimination. After the Station investigated the altercation, both Schultz and Younge were terminated for violating the Station's Anti-Harassment Policy and Standards of Conduct.  Younge argues that the

---

[50] D.I. 13751-3, Ex. C.
[51] D.I. 13951-4, Ex. D.
[52] Supp. Decl. of Vincent Giannini, D.I. 13963-1, ¶ 8.

Station's reasons for firing him are a pretext and that his employment was terminated due to his race and/or color.

"Title VII provides, in pertinent part, that it shall be unlawful for an employer to 'discharge any individual . . . because of such individual's race[.]'"[53]   Courts analyze discrimination claims based on the *McDonnell Douglas* standard:

> In the absence of direct evidence of discrimination, a plaintiff may prove race discrimination through the familiar burden-shifting analysis developed by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas,* a plaintiff must first establish a *prima facie* case of race discrimination by a preponderance of the evidence. If the plaintiff successfully establishes her *prima facie* case, the burden shifts to the defendant employer to proffer a legitimate, non-discriminatory reason for the adverse employment action. If defendant employer can provide such a reason, the burden shifts back to plaintiff to demonstrate, by a preponderance of the evidence, that the reasons offered by defendant were not its true reasons for the adverse employment action, but were instead a pretext for discrimination.[54]

(a)      Younge's *prima facie* case

To establish a *prima facie* case, Younge must show that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances that support an inference of unlawful discrimination.[55]   Younge meets the first three requirements (i.e., he is African-American, he has years of experience in the industry, and he was fired).[56]   The Reorganized Debtors argue that Younge has failed to establish the fourth element, which has also been described as requiring evidence that either (i) non-members of the protected class were treated more favorably than the

---

[53] *Smith v. Walgreen Co.,* 964 F.Supp.2d 338, 344 (D. Del. 2013) (quoting 42 U.S.C. § 2000e-2(a)(1)).
[54] *Walgreen,* 964 F.Supp.2d at 344-45 (internal citations omitted).
[55] *Id.* at 345.
[56] The Reorganized Debtors dispute that Younge was qualified for the job because, at the relevant time, he had only completed ten days of training.   However, Younge's resume, showing years of experience in broadcasting, combined with the Station's hiring Younge for the position, give rise to an inference that he was qualified for the position. (D.I. 13951-1, Ex. A.)

plaintiff; or (ii) the circumstances of the plaintiff's termination give rise to an inference of discrimination.[57] The Reorganized Debtors argue that both Younge and Schultz were terminated after the altercation and, therefore, Schultz, as a non-member of the protected class, was not treated more favorably, and there is no inference of racial discrimination.

Younge contends, however, that he meets the fourth element by showing that he was replaced by someone outside of his protected class.[58] While some courts have found that such evidence can satisfy the fourth element of a *prima facie* case,[59] other courts have decided that replacement by someone outside of the protected class can provide only an inference of discrimination and the "elements of [a] *prima facie* case must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination."[60]

Considering the facts before me, I do not find that any inference arising from the hiring of a replacement outside of the protected class outweighs the equal treatment surrounding the altercation and subsequent termination of both Schultz and Younge, two individuals of different races. Younge has failed to demonstrate a *prima facie* case of discrimination.

(b)     The Station's non-discriminatory reasons for Younge's termination

However, assuming *arguendo* that Younge can establish a *prima facie* case, the burden shifts to the Reorganized Debtors to provide a legitimate, non-discriminatory reason for Younge's

---

[57] *In re Safety-Kleen Corp.*, 381 B.R. 119, 125 (Bankr.D.Del. 2008) (citing *Anderson v. McIntosh Inn*, 295 F.Supp.2d 412, 418-19 (D. Del. 2003)).

[58] In their Supplemental Reply brief, the Reorganized Debtors admit that on June 1, 2008, approximately three weeks after Younge and Schultz were terminated, the Station hired a summer relief technician, who was Caucasian. (D.I. 13963, ¶23.)

[59] *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007); *Walgreen*, 964 F.Supp.2d at 345.

[60] *Anthony v. Duff & Phelps Corp.*, Civ. No. 09-3918, 2010 WL 3222188, *7 (E.D.Pa. Aug. 12, 2010). In *Anthony*, however, the Court determined that the plaintiff was not *replaced* by someone outside of the protected class. The new employee was an intern who was hired by the company nine months before the plaintiff's firing.

Case 08-13141-BLS   Doc 14227-1   Filed 04/04/16   Page 19 of 21

termination.[61] "This 'relatively light burden' is satisfied 'by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'"[62] "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."[63]

The letter terminating Younge's employment states that, after conducting an investigation, the Manager concluded that Younge's "conduct in this incident [the altercation with Schultz] is in violation of our Code of Conduct and Anti-Harassment policies."[64]

The Station's Anti-Harassment Policy states in relevant part that "Any conduct, whether verbal, physical, or visual, that creates a hostile, offensive or intimidating work environment constitutes harassment under this policy. . . . Violations of this policy will result in disciplinary action, including possible discharge."[65] The Station's Standards of Conduct and Corrective Action policy states that prohibited/unacceptable work conduct includes "[f]ighting or threatening behavior, and disorderly or disruptive conduct" and "[i]nappropriate or profane language."[66] When an employee engaged in unacceptable conduct, "[t]he following forms of corrective action may be used in succession, in combination or bypassed *as [the] supervisor/manager deems appropriate*: counseling, verbal warning, written warning, last & final warning, suspension without pay, probation or *termination*."[67]

---

[61] *Walgreen,* 964 F.Supp.2d at 345 (citing *McDonnell Douglas,* 411 U.S. at 802). *See also Safety-Kleen,* 381 B.R. at 126.
[62] *Walgreen,* 964 F.Supp.2d at 345 (quoting *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994)).
[63] *Id.* (emphasis in original).
[64] D.I. 13951-8, Ex. H.
[65] D.I. 13715-4, Ex. C, at 2.
[66]D.I. 13715-5, Claim Ex. D, at 2.
[67] *Id.* (emphasis added).

15

The Declaration of the Station's General Manager states that he decided to terminate Younge for violating the Station's Anti-Harassment Policy and Standards of Conduct after he considered the results of the investigation conducted by the human resources coordinator and after viewing the video of the altercation from the surveillance camera on the premises. [68]   In Younge's complaint filed with the Commission, he admitted he engaged in a heated conversation with Schultz which "escalated to a lot of yelling [and] screaming by both parties" during which he cursed at Schultz.[69]

Firing Younge for violating the Station's Anti-Harassment Policy and Standards of Conduct provides a legitimate, non-discriminatory reason for Younge's firing.[70]   The Reorganized Debtors have satisfied their burden.

(c)     Pretext

"Once the employer has articulated a legitimate, non-discriminatory reason for the plaintiff's termination, the plaintiff then carries the burden of proving that this reason was a pretext for discrimination."[71]   A plaintiff can establish pretext through the two-prong test enunciated in the Third Circuit's *Fuentes* decision, which requires the plaintiff to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[72]

---

[68] D.I. 13963-1, ¶4.
[69] D.I. 13715-2 at 9-10.
[70] *Walgreen,* 964 F.Supp.2d at 345-46 ("[D]ismissal for violating an employer's policy prohibiting workplace violence is 'clearly a legitimate nondiscriminatory reason for terminating an employee.'") (quoting *Money v. Provident Mut. Life. Ins. Co.,* 189 F. App'x 114, 116 (3d Cir. 2006)). *See also Safety-Kleen,* 381 B.R. at 127.
[71] *Walgreen,* 964 F.Supp.2d at 346.
[72] *Id.* (quoting *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994)).

For the first prong of the test, a plaintiff must demonstrate, through admissible evidence, that the "employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason.'"[73]  Younge disputes that the altercation involved physical abuse or violence, and argues that the interaction between Schultz and Younge that night have been "grossly mischaracterized" to suggest that Younge was the agitator of the argument or threatened Schultz with physical violence.   Younge points to the surveillance video in support of his interpretation of the events, claiming that the video shows there was no physical violence or threats of physical violence.

In *Walgreen*, the Court reviewed the video of the incident at issue, which the employer claimed showed the plaintiff involved in a "violent act" that violated the employer's policy against workplace violence, but which the plaintiff claimed showed an "inconsequential" incident that was playful.[74]  The *Walgreen* Court determined there was no dispute that the co-workers seen in the video were smiling or laughing, and none of them "reacted in a viscerally negative way after the incident."[75]  Therefore, the Court wrote, "drawing all reasonable inferences in Plaintiff's favor, the videotape could be viewed as depicting a brief, playful interaction between Plaintiff and [her co-worker] of the kind Plaintiff suggests."[76]  Based on the video and other evidence presented by the plaintiff to highlight the inconsequential nature of the incident, the *Walgreen* Court denied the employer's motion for summary judgment.

In this case, the Court has reviewed the video and finds that, even viewing it in the light most favorable to Younge, the video shows a heated altercation between Schultz and Younge in which both parties were clearly agitated.  The incident required physical intervention by the

---

[73] *Id.*(quoting *Jones v. School Dist. Of Philadelphia,* 198 F.3d 403, 413 (3d Cir. 1999)).
[74] *Id.*
[75] *Id.*  at 347.
[76] *Id.*

security guard, who interposed himself between the two, and without whom Younge and Schultz would surely have been in contact chest to chest. The video shows a hostile verbal exchange and disorderly conduct. The parties admit there was shouting and profane language. Younge asserts that his dismissal for violating the company policies was a pretext because the interaction did not involve physical violence and because Younge should not be blamed when he did not initiate the argument, but reacted to the Schultz's offensive comments. However, the company policies neither require physical violence, nor focus on who initiated the confrontation, in determining what action to take.[77] Instead, the altercation captured on the video, even viewed in the light most favorable to plaintiff, falls within the type of conduct prohibited by the Station's Anti-Harassment Policy or Code of Conduct.

Therefore, Younge cannot meet the first *Fuentes* prong by showing that the proffered reason for terminating his employment was so plainly wrong that it could not have been the employer's real reason.

For the second *Fuentes* prong, "a plaintiff must show that an employer's discriminatory reason was more likely than not a motivating cause of the employer's action."[78] A plaintiff may prove this by showing, for example, that "an employer has previously discriminated against her, that the employer has previously discriminated against other persons within the protected class, or that the employer has treated other similarly situated employees not within the protected class more favorably."[79]

---

[77] In *Money,* the Court determined that the plaintiff did not establish pretext by arguing that he acted in self-defense. The Court wrote that the co-worker's "status as the person initiating the violence is not, alone, a basis on which a jury could find in [plaintiff's] favor. [Plaintiff] admits that he struck [the co-worker]: a violent act that was forbidden by an established policy, regardless of the provocation. The fact that [the co-worker] struck first does nothing to cast doubt on [the employer's] explanation that [plaintiff] was fired for striking [the co-worker]." *Money,* 189 F. App'x at 116.
[78] *Walgreen,* 964 F.Supp.2d at 348.
[79] *Id.*

To meet this prong, Younge argues that the Station has treated other similarly situated employees not within the protected class more favorably. In particular, Younge argues that the letter dated October 4, 2002 in Schultz's personnel file shows that Schultz was treated more favorably when, in response to a prior altercation involving the use of profanity, the Station did not fire Schultz, but only issued a written warning that his conduct was in violation of the company's zero tolerance policy.[80] Since the 2008 altercation between Younge and Schultz was Younge's first altercation, he argues that he, too, should have received a warning, rather than termination of his employment.

"Whether a comparator is truly similarly-situated to [a] plaintiff is an issue of law."[81] "[S]ummary judgment is appropriate where there is no evidence from which a jury could conclude the parties were similarly situated."[82] When analyzing such a claim, a court should focus on whether the comparators committed offenses of comparable seriousness.[83]

"Context matters in assessing the factors relevant to the inquiry of whether two employees are similarly situated. In this particular context—workplace disciplinary and/or personnel actions—relevant factors include a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'"[84] The relevant factual inquiry to determine if employees are similarly situated in a discipline case includes whether: the employees worked in the same department; held

---

[80] D.I. 13951-4, Ex. D.
[81] *Walgreen,* 964 F.Supp.2d at 350 (quoting *Moore v. Shinseki,* 487 F. App'x 697, 698 (3d Cir.2012)).
[82] *Id.* (quoting *Fiala v. Bogdanovic,* Civ. No. 1:07-cv-02041, 2009 WL 3260585 at *4 (M.D. Pa. Oct. 8, 2009)).
[83] *Id.* (citing *Opsatnik v. Norfolk S. Corp.,* 335 F.App'x 220, 223 (3d Cir. 2009).
[84] *McCullers v. Napolitano,* 427 F. App'x 190, 195 (3d Cir. 2011) (quoting *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617–18 (7th Cir.2000)).

19

similar positions; reported to the same supervisor; were subject to the same policies; and engaged in similar offending conduct."[85]

Here, Younge does not provide sufficient evidence on which a factfinder could conclude that the 2002 and the 2008 incidents are comparable. First, there is no evidence that the acts were of comparable seriousness. Although both incidents involved the use of profanity, there is nothing in the letter or elsewhere in the record to indicate that the 2002 incident involved the degree of shouting, yelling, and disruptive or disorderly conduct as occurred in the 2008 altercation between Schultz and Younge. The 2002 letter states that, after investigating the matter and interviewing witnesses, there was no corroboration of Schultz's claim that he was threatened.

Second, the incidents - - occurring over five years apart - - are too remote in time to be comparable.[86] There is nothing in the record on which to determine whether the policies or manner in which the Station made disciplinary decisions changed over the years. Instead, the best comparator for Younge's firing is the Station's treatment of Schultz, who participated in the same incident and was investigated at the same time by the same people. It is undisputed that Schultz and Younge received the same treatment.

Younge has not met his burden under either *Fuentes* prong. Accordingly, he has not proven by a preponderance of admissible evidence that the Station's reasons for firing Younge were a pretext for racial discrimination.

---

[85] *Epps v. First Energy Nuclear Operating Co.,* No. CIV.A. 11-1462, 2013 WL 1216858, at *18 (W.D. Pa. Mar. 25, 2013).

[86] *Epps,* 2013 WL 1216858, at *19 (deciding, together with other factors, that episodes that occurred four and a half years apart could not raise an inference of discrimination); *Iuorno v. DuPont Pharmaceuticals Co.,* 129 F. App'x 637, 641 n. 6 (2d Cir. 2005) (declining to conclude that an incident that occurred four years earlier was sufficiently similar to permit a reasonable jury to draw an inference of pretext).

CONCLUSION

For the reasons set forth above, I conclude that Younge has failed to provide admissible evidence to support his claim for hostile work environment or discriminatory termination of employment.

An appropriate order will follow.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

DATED: March 18, 2016

21

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRIBUNE MEDIA COMPANY, *et al.,* | ) | Case No. 08-13141 (KJC) |
| | ) | |
| Reorganized Debtors | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

The undersigned, "J" Jackson Shrum, certifies that on April 1, 2016, I caused a true and correct copy of the foregoing to be served upon all parties via CM/ECF and upon the persons listed below via first class mail.

Dated: April 1, 2016

Respectfully submitted,

WERB & SULLIVAN

By: /s/ Jack Shrum
"J" Jackson Shrum (DE No. 4757)
300 Delaware Avenue, Suite 1300
Wilmington, DE 19801
Tel: (302) 652-1100
Fax: (302) 652-1111

*Attorneys for Keith Younge*

**VIA First Class Mail:**

**Cole Schotz P.C.**
Attn:   Norman L. Pernick
        Patrick J. Reilley
        J. Kate Stickles
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

**Sidley Austin LLP**
Attn:   Matthew G. Martinez
One South Dearborn Street
Chicago, IL 60603

**Landis Rath & Cobb LLP**
Attn:   Richard Scott Cobb
        Jeffrey R. Drobish
        J. Landon Ellis
        James S. Green, Jr.
919 Market Street
Suite 1800
P.O. Box 2087
Wilmington, DE 19801

**Landis Rath & Cobb LLP**
Attn:   Kimberly A. Brown
919 N. Market Street
Suite 1800
PO Box 2087
Wilmington, DE 19899

**Akin Gump Strauss Hauer & Feld LLP**
Attn:   Jason Goldsmith
        Deborah J. Newman
        David M. Zensky
One Bryant Park
New York, NY 10036-6745

**Office of the U.S. Trustee**
Attn:   David L. Buchbinder
J. Caleb Boggs Federal Building
Suite 2207
Wilmington, DE 19801

**Epiq Bankruptcy Solutions LLC**
777 Third Avenue, 12th Floor
New York, NY 10017

**Landis Rath & Cobb LLP**
Attn:   Matthew B. McGuire
P.O. Box 2087
919 Market Street, Suite 1800
Wilmington, DE 19899