## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY, et al.,[1]<br>(f/k/a Tribune Company) | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Related to Docket Nos. 12072, 12074, 12601, 12726, and 12734** |

**MOTION OF THE LITIGATION TRUSTEE FOR THE TRIBUNE LITIGATION
TRUST FOR AN ORDER (A) PURSUANT TO SECTION 13.3.3 OF THE
DCL PLAN AND FED. R. BANKR. P. 9019(a) AUTHORIZING ENTRY INTO
SETTLEMENT AGREEMENT WITH MORGAN STANLEY CAPITAL SERVICES LLC
AND MORGAN STANLEY & CO. LLC AND (B) APPROVING AMENDMENT
TO STIPULATION IN AID OF IMPLEMENTATION OF SENIOR NOTEHOLDER
DISTRIBUTIONS PURSUANT TO CONFIRMED DCL PLAN**

Marc S. Kirschner, as Litigation Trustee for the Tribune Litigation Trust (the "Litigation

Trustee"),[2] by and through his undersigned counsel, hereby submits this motion (the "Motion")

for entry of an order in the form submitted herewith (a) pursuant to Section 13.3.3 of the DCL

Plan and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

authorizing the Litigation Trustee to settle certain Preserved Causes of Action against Morgan

Stanley Capital Services LLC f/k/a Morgan Stanley Capital Services Inc. ("MSCS") and Morgan

Stanley & Co. LLC f/k/a Morgan Stanley & Co. Incorporated ("Morgan Stanley," and together

with MSCS, the "Morgan Stanley Parties") pursuant to that certain Settlement Agreement, dated

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are:  Tribune Media Company (0355); Chicago Tribune Company, LLC (3437); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); KTLA, LLC (3404); KWGN, LLC (5347); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); Tribune CNLBC, LLC (0347); Tribune Content Agency, LLC (2931); Tribune Media Services, LLC (1080); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191).  The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the DCL Plan, as defined below.

3188243.2

April 25, 2016, attached hereto as <u>Exhibit 1</u> (the "<u>Settlement Agreement</u>"); and (b) approving an

amendment (the "<u>Amendment</u>"), substantially in the form attached to the Settlement Agreement

as Exhibit B, to that certain Stipulation in Aid of Implementation of Senior Noteholder

Distributions Pursuant to Confirmed DCL Plan (the "<u>MSCS Stipulation</u>"), which had been

entered into by the Debtors, the Creditors' Committee, Deutsche Bank Trust Company Americas

("<u>DBTCA</u>"), in its capacity as successor indenture trustee, Law Debenture Trust Company of

New York ("<u>Law Debenture</u>," together with DBTCA, the "<u>Indenture Trustees</u>"), in its capacity

as successor indenture trustee, and MSCS.  In support of this Motion, the Litigation Trustee

respectfully states as follows:

### STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "<u>Petition Date</u>"), Tribune Company ("<u>Tribune</u>") and

certain of its subsidiaries (collectively, the "<u>Debtors</u>") each filed a voluntary petition for relief

under chapter 11 of the Bankruptcy Code.  An additional Debtor, Chicago National League Ball

Club, LLC (n/k/a Tribune CNLBC, LLC) filed a voluntary petition for relief under chapter 11 of

the Bankruptcy Code on October 12, 2009.  The chapter 11 cases were consolidated for

procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule

1015(b).

2.      On July 23, 2012, the Bankruptcy Court entered an Order [Docket No. 12074]

(the "<u>Confirmation Order</u>") confirming the Fourth Amended Joint Plan of Reorganization for

Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of

Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and

JPMorgan Chase Bank, N.A. [Docket No. 12072] (the "<u>DCL Plan</u>").  The DCL Plan became

effective in accordance with its terms on December 31, 2012 (the "<u>Plan Effective Date</u>").

3.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, which jurisdiction was retained pursuant to Article IX of the Confirmation Order and Article XII of the DCL Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are Section 13.3.3 of the DCL Plan and Bankruptcy Rule 9019.

## BACKGROUND OF THE MOTION

### The Swap Agreement and MSCS Setoff

4.     On or about December 19, 1994, MSCS and The Times Mirror Company, a predecessor to Tribune, entered into an interest rate swap in respect of a $100 million notional amount, which swap was memorialized in an ISDA Master Agreement, dated as of August 5, 1994, and a Confirmation to such agreement, dated as of December 19, 1994 (together, the "Swap Agreement").

5.     On April 17, 2006, Morgan Stanley purchased $9.5 million (face value) of Tribune 7.5% debentures due July 1, 2023 ("Tribune Debentures"), for $9.8 million. On April 11 and April 15, 2008, Morgan Stanley made two additional purchases of Tribune Debentures totaling $18,865,000 (face value) for a total of $7,840,000. On April 21, 2008, Morgan Stanley transferred those debentures to MSCS. Four days earlier, on April 17, 2008, Morgan Stanley transferred to MSCS the $9,500,000 (face value) of Tribune Debentures that Morgan Stanley had purchased in April 2006. On November 20, 2008, Morgan Stanley purchased an additional $5,000,000 (face amount) of Tribune Debentures for $601,041. Morgan Stanley transferred those debentures to MSCS on the same day. On November 26, 2008, Morgan Stanley purchased an additional $5,000,000 (face amount) of Tribune Debentures for $644,795. On March 20, 2009 Morgan Stanley transferred those debentures to MSCS. In total,

Morgan Stanley purchased and transferred to MSCS an aggregate of $38,365,000 in face value of Tribune Debentures (the "Designated Debentures").[3]

6.      On October 17, 2006, Morgan Stanley was engaged by Tribune as a financial advisor to the Special Committee of Tribune's Board of Directors in connection with "(i) a possible sale, merger or other strategic business combination involving a change of control of the Company . . . or (ii) a potential recapitalization or restructuring plan . . . for Tribune, including any potential spin-off, split-off or significant asset sale program involving a Tribune business."

7.      On or about November 10, 2008, the Company engaged Morgan Stanley to provide financial advisory services relating to a possible bankruptcy filing by the Company. Further, on November 30, 2008, Morgan Stanley and Tribune executed an indemnification letter that confirmed Tribune engaged Morgan Stanley "to advise [Tribune] in connection with certain restructuring matters commencing on November 10, 2008" (the "Indemnity Agreement").

8.      Tribune filed for bankruptcy on December 8, 2008. The bankruptcy filing was an "Event of Default" under the terms of the Swap Agreement. By letter dated December 9, 2008, MSCS notified Tribune that MSCS was designating December 9, 2008 as the Early Termination Date with respect to the Swap Agreement. By letter dated December 18, 2008, MSCS informed Tribune that it had set off the full $38,365,000 face value of the Designated Debentures (the "MSCS Setoff") against the amount MSCS had determined, as the non-defaulting party under the Swap Agreement, it owed Tribune – an amount that MSCS, by letter dated March 20, 2009, corrected to $51,945,000 (the "Termination Amount"). On May 29, 2009, MSCS paid Tribune $9,500,000 in partial satisfaction of the amount owing under the Swap Agreement.

---

[3] The purchase amounts set forth in this paragraph are based on the allegations contained in paragraphs 364 and 366-67 of the *FitzSimons* Complaint, as defined below.

9.      On or about June 12, 2009, MSCS filed with this Court Proof of Claim No. 5027 against Tribune asserting various claims arising from and relating to the terms and conditions of the Swap Agreement, the Designated Debentures, the MSCS Setoff, and the Indemnity Agreement.[4]  On or about June 12, 2009, Morgan Stanley filed Proof of Claim No. 5034 against Tribune asserting its own claims for indemnification under the Indemnity Agreement. On or about January 30, 2013, MSCS filed with this Court Proof of Claim No. 7161 and Morgan Stanley filed Proof of Claim No. 7162, which amended Claim Nos. 5027 and 5034, respectively, by asserting claims for damages resulting from the potential rejection of the Indemnity Agreement by the terms of the DCL Plan.  Claim Nos. 5027 and 7161 are hereafter collectively referred to as the "Swap-Related Proofs of Claim." Claim Nos. 5034 and 7162 are hereafter collectively referred to as the "Indemnity Proofs of Claim."

10.      The Debtors and the Creditors' Committee disputed the validity of the MSCS Setoff and allowance of the Swap-Related Proofs of Claim.  They also disputed the allowance of the Indemnity Proofs of Claim.  In any event, the Designated Debentures have not been cancelled and the position remains open at The Depository Trust Company ("DTC").

**The Swap-Related Litigation Between Tribune and the Morgan Stanley Parties**

11.      On November 1, 2010, the Creditors' Committee, on behalf of the Debtors' chapter 11 estates, filed a complaint in this Court styled *The Official Committee of Unsecured Creditors of Tribune Company, on behalf of Tribune Company, et al. v. Dennis J. FitzSimons, et al.,* No. 10-54010 (KJC) (Bankr. D. Del. Nov. 1, 2010) (the "*FitzSimons* Action") against certain of Tribune's officers and directors, its controlling shareholders, numerous financial advisors, MSCS, and thousands of former shareholders.  Among other things, the *FitzSimons* Action

---

[4] On or about March 2, 2011, Morgan Stanley filed Proof of Claim No. 6708, asserting claims relating to the rejection of the engagement letter between Tribune and Morgan Stanley dated October 17, 2006.  This claim is not part of or subject to the Settlement Agreement or this Motion.

challenges the validity of the MSCS Setoff and seeks to equitably subordinate any claims MSCS may have against the Debtors.  The gravamen of these claims is that Morgan Stanley, while in possession of material non-public information concerning Tribune's financial condition and bankruptcy plans, purchased Tribune's publicly traded debt at a steep discount, with the intent to transfer the debt to MSCS, and that MSCS, in breach of the covenant of good faith and fair dealing inherent in the Swap Agreement, then set off the full face value of the debt against the amount MSCS owed to Tribune under the Swap Agreement in the event of Tribune's bankruptcy.  Morgan Stanley and MSCS vigorously dispute the validity of each of these claims.

12.     The *FitzSimons* Action was transferred to the United States District Court for the Southern District of New York (the "District Court") for inclusion in the coordinated proceedings under 28 U.S.C. § 1407 (the "MDL"), where it is presently being prosecuted by the Litigation Trustee before the Honorable Richard J. Sullivan.[5]  The Litigation Trustee has filed the Fifth Amended Complaint in the *FitzSimons* Action (the "*FitzSimons* Complaint"), which includes allegations at paragraphs 16, 91, 361-69, 372-75, 568-75, 580-82, and 585-607 concerning the Swap Agreement, the Designated Debentures, the purchase of the Designated Debentures by Morgan Stanley, the transfer of the Designated Debentures to MSCS, the MSCS Setoff, and Morgan Stanley's role as a financial advisor to Tribune in 2008 in connection with a possible bankruptcy filing (the "Swap-Related Allegations").  Based on the Swap-Related Allegations, the *FitzSimons* Complaint asserts claims against the Morgan Stanley Parties in Counts 24, 25 (the portion relating to Morgan Stanley's purchase and/or transfer of the Designated Debentures), 26, 27, 28, 29, and 30 (collectively, the "Swap-Related Claims").[6]  Due

---

[5] Pursuant to Section 1.1.138 of the DCL Plan, the claims against the Morgan Stanley Parties in the *FitzSimons* Action are Preserved Causes of Action, to be prosecuted by the Tribune Litigation Trust.

[6] The *FitzSimons* Complaint also includes claims against Morgan Stanley relating to, *inter alia*, Morgan Stanley's role as advisor to Tribune and its Special Committee leading up to the leveraged buyout of Tribune's shares,

3188243.2

to the pendency of the *FitzSimons* Action, claims on account of the Designated Debentures held by MSCS are Disputed Claims under the DCL Plan.

**The MSCS Stipulation**

13.     In the event of a determination that the MSCS Setoff is not valid, MSCS would own the Designated Debentures and, accordingly, would hold disputed Senior Noteholder Claims with respect to those debentures (the allowance, disallowance, or subordination of which would be separately determined).

14.     On November 19, 2012, this Court entered an Order [Docket No. 12734] approving the MSCS Stipulation.  Among the stated purposes of the MSCS Stipulation was to establish (i) a procedure for ensuring that MSCS does not receive a distribution on account of any Senior Noteholder Claims it holds for its own account unless and until it is determined that such Senior Noteholder Claims are Allowed Claims and entitled to a distribution pursuant to Section 3.2.5(c) of the DCL Plan, and (ii) a formula and procedure for calculation and distribution of reserved amounts pending adjudication or resolution of the validity of the MSCS Setoff and/or the allowability of the Senior Noteholder Claims held by MSCS.

15.     In order to implement and execute the terms of the MSCS Stipulation, MSCS, DBTCA, Law Debenture, and the Litigation Trustee also executed a certain Escrow Agreement, effective as of the Plan Effective Date (the "Escrow Agreement"), designating the Litigation Trustee as Escrow Agent.  Pursuant to the terms of the MSCS Stipulation, the Litigation Trustee was authorized and directed to establish a segregated account (the "Escrow Account") to receive and hold in escrow (a) the Designated Debentures, (b) distributions under the DCL Plan on

---

including claims for professional malpractice, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty, among others.  These claims against Morgan Stanley are asserted at Counts 1, 20, 21, 22, 23, 25 (the portion relating to Morgan Stanley's conduct other than its purchase and/or transfer of the Designated Debentures), and 31 of the *FitzSimons* Complaint, are not part of or subject to the Settlement Agreement or this Motion, and will continue to be prosecuted by the Litigation Trustee.

account of the Designated Debentures (consisting of cash and Class 1E Litigation Trust

Interests), and (c) any future distributions with respect to the Designated Debentures or the Class

1E Litigation Trust Interests held in the Escrow Account.

16.     Also pursuant to the terms of the MSCS Stipulation, the Designated Debentures

and $12,628,518.81 (the "Escrow Amount") were delivered to the Escrow Account.  The Escrow

Amount represents that portion of the Initial Distribution made on account of the Senior

Noteholder Claims, in accordance with Section 7.7 of the DCL Plan, that is allocable to the

Designated Debentures, less MSCS's *pro rata* portion of certain fees and expenses.  The Escrow

Amount is not part of, and is segregated from, the Litigation Trust Assets.  The Escrow Account

was to be held in reserve, in accordance with Section 3.2.5(c) of the DCL Plan, pending a

determination of the allowance of MSCS's Senior Noteholder Claims and MSCS's entitlement to

distributions under the DCL Plan or in respect of Litigation Trust Interests.  The MSCS

Stipulation provides for the disposition of the Escrow Account in the event of, *inter alia*, the

entry of an order approving a settlement between the Litigation Trustee and MSCS, the terms of

which provide that the MSCS Setoff is valid, in whole or in part.

**Settlement Discussions**

17.     After an initial meeting in mid-March 2015, the Morgan Stanley Parties and the

Litigation Trustee engaged in a series of settlement discussions, with multiple proposals and

counterproposals being exchanged and considered over the course of a year.

18.     On April 25, 2016, after a year of negotiations focusing on the Swap-Related

Claims, the Swap-Related Allegations, the Swap-Related Proofs of Claim, and the Escrow

Account, the parties agreed to enter into the Settlement Agreement.

## RELIEF REQUESTED

19.     Pursuant to Section 1.1.138 of the DCL Plan, the Swap-Related Claims against the Morgan Stanley Parties are Preserved Causes of Action.  Pursuant to Section 13.3.3 of the DCL Plan, "Bankruptcy Court authority must be obtained to settle, dispose of or abandon any affirmative Preserved Causes of Action where the stated face amount in controversy exceeds $5,000,000."

20.     By this Motion, the Litigation Trustee respectfully requests that the Court enter an order, in the form submitted herewith, approving the Settlement Agreement (attached hereto as Exhibit 1) and the Amendment (attached to the Settlement Agreement as Exhibit B), in all respects and authorizing the Litigation Trustee to carry out the terms of the Settlement Agreement and Amendment and take all other actions necessary or desirable to implement their provisions.

**The Settlement Agreement**

21.     The Settlement Agreement has the following principal terms:

- Settlement Amount.  Within three business days of the date the order of this Court approving the Settlement Agreement becomes a final, non-appealable order (the "Effective Date"), MSCS shall pay the Litigation Trustee, by wire transfer in same-day funds, $23,700,000, (the "Settlement Payment").

- Waiver of Claims.  Within three business days after the Effective Date, MSCS shall be deemed to have forever waived, relinquished, forfeited, and abandoned to the Litigation Trustee any claim to all property in the Escrow Account or held by the Litigation Trustee as Escrow Agent, including the Designated Debentures, the Escrow Amount, any interest or dividends that have accrued on the Escrow Amount that have not been used to pay the costs of the Escrow Agent, all other distributions under the DCL Plan on account of the Designated Debentures (consisting of cash or Class 1E Litigation Trust Interests), and any other distributions with respect to the Designated Debentures or the Class 1E Litigation Trust Interests held in the Escrow Account or by the Litigation Trustee as Escrow Agent.

3188243.2

- <u>Dismissal of Swap-Related Claims</u>.  Simultaneously with the execution of the Settlement Agreement, the parties shall execute a stipulation, in the form attached as Exhibit A to the Settlement Agreement, (i) dismissing with prejudice the Swap-Related Claims asserted in the *FitzSimons* Complaint, and (ii) providing that the Swap-Related Allegations shall not be deemed repeated and realleged in the remaining counts of the *FitzSimons* Complaint against Morgan Stanley or any of its affiliates and shall not be used or referred to in any filings or further proceedings in the *FitzSimons* Action (except to note that they have been settled and dismissed), with each party bearing its own costs, expenses, and attorneys' fees (the "<u>Stipulation of Dismissal</u>").  Attorneys for the Morgan Stanley Parties shall hold the fully executed Stipulation of Dismissal in escrow pending receipt by the Litigation Trustee of the Settlement Payment.  Upon receipt by the Litigation Trustee of the Settlement Payment, attorneys for the Morgan Stanley Parties are authorized to submit the Stipulation of Dismissal to the District Court.

- <u>Withdrawal of Swap-Related Proofs of Claim</u>.  Promptly after the execution of the Settlement Agreement, the Morgan Stanley Parties shall move this Court for an order, pursuant to Bankruptcy Rule 3006, authorizing withdrawal of the Swap-Related Proofs of Claim with prejudice, such withdrawal to be conditioned and effective upon the occurrence of the Effective Date.

- <u>Cancellation of the Designated Debentures</u>.  Within three business days after the Effective Date, the Litigation Trustee as Escrow Agent shall deliver a letter instructing Wilmington Trust, National Association ("Wilmington"), a DTC participant acting as custodian of the Designated Debentures, to deliver a letter authorizing DTC to remove the Designated Debentures from Wilmington's account and cancel the Designated Debentures.

- <u>Litigation Trustee Release of Certain Claims</u>.  Upon the Effective Date, the Litigation Trustee and the Litigation Trust, and each of their predecessors, successors, and assigns, including, without limitation, the Debtors (the "<u>Litigation Trust Releasors</u>"), shall fully and forever release and discharge the Morgan Stanley Parties, and each of their respective past and present officers, directors, employees, affiliates, agents, representatives, attorneys, parents, subsidiaries, partners, predecessors, successors, and assigns, from any and all claims, demands, losses, costs, damages, actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, liabilities, and obligations solely arising out of or relating, directly or indirectly, to the Swap Agreement, the Designated Debentures, the MSCS Setoff, the Swap-Related Claims, and/or the Swap-Related Proofs of Claim, at law or in equity, which the Litigation Trust Releasors ever had or now have, whether known or unknown, from the beginning of the world through the date of the Settlement Agreement.

- <u>Morgan Stanley Parties Release of Certain Claims</u>.  Upon the Effective Date, the Morgan Stanley Parties, and each of their respective predecessors, successors, and assigns (the "<u>Morgan Stanley Releasors</u>"), shall fully and forever release and

10

discharge the Litigation Trustee, the Litigation Trust, the Litigation Trust Advisory Board, and the Escrow Agent, and each of their past and present beneficiaries, members, officers, directors, employees, affiliates, agents, representatives, attorneys, predecessors, successors, and assigns, including, without limitation, the Debtors, from any and all claims, demands, losses, costs, damages, actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, liabilities, and obligations solely arising out of or relating, directly or indirectly, to the Swap Agreement, the Designated Debentures, the MSCS Setoff, the Swap-Related Claims, and/or the Swap-Related Proofs of Claim, at law or in equity, which the Morgan Stanley Releasors ever had or now have, whether known or unknown, from the beginning of the world through the date of the Settlement Agreement. In addition, Morgan Stanley waives, and agrees not to pursue, any indemnification claims under the Indemnity Proofs of Claim related to the Swap Agreement, the Designated Debentures, the MSCS Setoff, the Swap-Related Claims, the Swap-Related Allegations, and/or the Swap-Related Proofs of Claim.

- **Amendment to the MSCS Stipulation**. Simultaneously with the execution of the Settlement Agreement, MSCS shall execute the Amendment.

22.     The Amendment is necessitated by the fact that the MSCS Stipulation currently provides for the disposition of the Escrow Account in the event of the entry of an order approving a settlement between the Litigation Trustee and MSCS, the terms of which provide that the MSCS Setoff is valid, in whole or in part. However, the Settlement Agreement takes a different approach to resolving the claims in the *FitzSimons* Action against MSCS: It provides for the Escrow Amount and other property to be relinquished by MSCS to the Litigation Trustee in their entirety, without addressing the validity of the MSCS Setoff.

23.     The purpose of the Amendment is to ensure that this resolution is treated in a manner consistent with the intent and purpose of the DCL Plan and the MSCS Stipulation so as to fairly and reasonably allocate the property relinquished by MSCS as between the Litigation Trustee, on the one hand, for distribution in accordance with the Litigation Trust Distribution Schedule (the "LT Distribution Schedule") attached as Exhibit C to the Litigation Trust

11

3188243.2

Agreement, and the Litigation Trustee acting as Escrow Agent, on the other hand, for distribution to the Indenture Trustees.[7]

24.     In particular, the Amendment provides that the Escrow Amount, any interest or dividends that have accrued on the Escrow Amount that have not been used to pay the costs of the Escrow Agent, all other distributions under the DCL Plan on account of the Designated Debentures (consisting of cash or Class 1E Litigation Trust Interests), and any other distributions with respect to the Designated Debentures or the Class 1E Litigation Trust Interests held in the Escrow Account or by the Litigation Trustee as Escrow Agent, shall be allocated 50% to the Litigation Trustee, for distribution in accordance with the LT Distribution Schedule, and 50% for distribution to the Indenture Trustees in accordance with the formulas set forth in Attachments "C" and "D" to the Amendment.

## **BASIS FOR RELIEF REQUESTED**

25.     The Court has discretion to approve settlements after notice and a hearing. *See Myers v. Martin (In re Martin),* 91 F.3d 389, 395 n.2 (3d Cir. 1996).  The procedure for approving a settlement in bankruptcy is set forth by Bankruptcy Rule 9019, which provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

---

[7] The original signatories to the MSCS Stipulation, which was executed and approved prior to the Plan Effective Date, consisted of the Debtors, the Creditors' Committee, the Indenture Trustees, and MSCS.  Pursuant to Section 15.2 of the DCL Plan, the appointment of the Creditors' Committee terminated on the Plan Effective Date, except for certain limited purposes not relevant here.  Pursuant to Section 13.2.1 of the DCL Plan, all of the Litigation Trust Assets, as well as the rights and powers of the Debtors' Estates applicable to the Litigation Trust Assets, automatically vested in the Litigation Trust on the Plan Effective Date.  Although not a signatory to the MSCS Stipulation, the Litigation Trustee would be a signatory to the Amendment by virtue of the establishment of the Litigation Trust for the purpose of administering the Litigation Trust Assets and making all distributions on account of the Litigation Trust Interests as provided for under the DCL Plan.

Fed. R. Bankr. P. 9019(a).

26.    Approval of a proposed settlement is within the "sound discretion" of the bankruptcy court. *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). In determining whether to approve a settlement pursuant to Rule 9019, a bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Martin,* 91 F.3d at 393. The bankruptcy court will consider four criteria in applying this balancing test: "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.* (*citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25 (1968); *In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 803 (E.D. Pa. 1986)); *see also In re Marvel Entm't Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998) (relying on the same four factors to determine the fairness, reasonableness, and adequacy of a settlement); *In re Northwestern Corp.*, No. 03-12872, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) (Carey, J.) (same). "The court must also consider 'all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" *Marvel,* 222 B.R. at 249 (citing *TMT Trailer,* 390 U.S. at 424). The ultimate inquiry is whether, in the court's discretion, the compromise embodied in the settlement "is fair, reasonable, and in the best interest of the estate." *In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1977).

27.    In this case, the value to the Tribune Litigation Trust from the acceptance of the Settlement Agreement represents a substantial percentage of the maximum amount that the Litigation Trust could have obtained by prosecuting the Swap-Related Claims to completion.

13

The Litigation Trustee believes the settlement is justified for a number of reasons. First, the Litigation Trustee's probability of success in litigation with the Morgan Stanley Parties with respect to the Swap-Related Claims and Swap-Related Proofs of Claim is uncertain. While the Litigation Trustee is confident that his position would be sustained in litigation respecting those claims, he recognizes that proceeding to judgment carries risks that the Litigation Trustee might obtain an unfavorable result.

28.    On May 23, 2014, the Morgan Stanley Parties filed a motion in the District Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seeking dismissal of, *inter alia*, the Swap-Related Claims. The brief submitted by the Morgan Stanley Parties in support of the dismissal of the Swap-Related Claims (11 MD 2296 ECF 5952, at 18-29), and the opposing brief of the Litigation Trustee with respect to those claims (11 MD 2296 ECF 6130, at 64-68, 71-84), demonstrate the complexity and contested nature of the claims at issue.[8] By contrast, the compromise embodied in the Settlement Agreement represents, in the Litigation Trustee's view, a favorable resolution of the parties' mutual claims surrounding the Swap Agreement and MSCS Setoff that eliminates any such risks and secures a near-term cash benefit for the Litigation Trust and its beneficiaries.

29.    As a result of the settlement, the Litigation Trustee currently anticipates distributing approximately $20 million to the trust beneficiaries in accordance with the LT Distribution Schedule, and approximately $6.3 million of the Escrow Amount to the Indenture Trustees in accordance with the Amendment.

---

[8] The Morgan Stanley Parties' motion is *sub judice*. Any grant of the motion would be subject to appeal, and any denial of the motion would still require the Litigation Trustee to prove his claims by summary judgment or at trial. Moreover, absent the proposed settlement, the parties would still be required to litigate the Swap-Related Proofs of Claim and the Litigation Trustee's objections thereto.

3188243.2

30.    The value of a near-term resolution is especially heightened in this case because the Swap-Related Claims represent a relatively small, and *sui generis*, component of the MDL pending in the District Court, which is still at an early stage.  Absent the pending settlement, it is likely that these claims would not be adjudicated for many years.

31.    Second, the complexity, expense, and inconvenience of litigation also counsel in favor of settlement.  Continued litigation respecting the Swap-Related Claims and Swap-Related Proofs of Claim would inevitably entail substantial additional professional costs to the Litigation Trust, as well as requiring a significant commitment of time and resources on the part of the Litigation Trustee.  And because these claims are factually and legally distinct from the other claims in the MDL, their litigation would entail substantial additional discovery and fact development, and would not fully benefit from the efficiencies typically attending the consolidation of common or similar claims.  The compromise embodied in the Settlement Agreement eliminates the swap-related dispute between the Litigation Trustee and the Morgan Stanley Parties, and enhances the ability of the Litigation Trustee to focus on the other significant claims in the MDL.

32.    Courts generally defer to a trustee's business judgment where there is a legitimate business justification for the trustee's decision.  *Martin*, 91 F.3d at 393; *see also In re Still*, 444 B.R. 520, 523 (Bankr. E.D. Pa. 2010).  Here, the Litigation Trustee, Marc S. Kirschner, has substantial experience dealing with complex litigations such as the claims against the Morgan Stanley Parties.  Mr. Kirschner spent most of his 40-year career as an attorney in private practice specializing in bankruptcy and reorganization, with a heavy emphasis on complex bankruptcy litigation.  From 1987 through January 25, 2001, he was the head of the Bankruptcy and Restructuring Practice, and from January 1, 1997, the Business Practice Group, in the New York

3188243.2

office of the global law firm Jones Day.  In addition to serving as Litigation Trustee for the Tribune Litigation Trust, Mr. Kirschner also was the Liquidation Trustee for the SNTL Litigation Trust (formerly, Superior National Insurance Group), in Los Angeles, and the Le-Nature's Liquidation Trust in the Western District of Pennsylvania, and currently is the Litigation Trustee for matters arising from the Refco Inc. bankruptcy in New York, and the Litigation Trustee for the Millennium Health Corporate Claim Trust and Lender Claim Trust recently formed under the plan of reorganization of Millennium Health LLC in Delaware. Mr. Kirschner is currently Senior Managing Director of Goldin Associates LLC, a restructuring firm specializing in financial advisory, interim management, litigation support, strategic valuation, governance, independent monitoring, and fiduciary services.

33.     The Settlement Agreement is the product of arm's-length negotiations between the parties that took place over an entire year (as well as several additional months in 2009 and 2010) and involved numerous meetings and exchanges between the parties' representatives and counsel, during which the parties put forth facts, assertions, and legal analyses in support of their opposing positions.  Throughout the negotiations, the Litigation Trustee was advised by able counsel, who were fully versed in the complex factual and legal issues involved in the dispute. The end result of the negotiations is a compromise that the Litigation Trustee believes, in his business judgment, is fair and reasonable and should be approved by the Court.

## NO PRIOR REQUEST

34.     No previous request for the relief requested in this Motion has been made in this or any court.

## NOTICE

35.     Notice of this Motion has been provided to (i) the United States Trustee; (ii) the Reorganized Debtors; (iii) the Indenture Trustees; (iv) the Morgan Stanley Parties; and (v) all

16

other parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Litigation Trustee submits that no further notice need be given.

WHEREFORE, the Litigation Trustee respectfully requests that the Court enter an order, in the form submitted herewith, authorizing the Litigation Trustee to enter into the Settlement Agreement, approving the Amendment, and granting such other and further relief as the Court may deem just and proper.

Dated: April 25, 2016
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Richard S. Cobb (No. 3157)
James S. Green Jr. (No. 4406)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: cobb@lrclaw.com
      green@lrclaw.com

-and-

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**
Robert J. Lack
Hal Neier
Jeffrey R. Wang
7 Times Square
New York, NY 10036
Telephone: (212) 833-1100
Facsimile: (212) 833-1250
Email: rlack@fklaw.com
      hneier@fklaw.com
      jwang@fklaw.com

*Counsel for Marc S. Kirschner, as Litigation Trustee for the Tribune Litigation Trust*

3188243.2