# Exhibit 1

EXECUTION COPY

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is entered into by and between Marc S. Kirschner, as Litigation Trustee for the Tribune Litigation Trust (the "Litigation Trustee") and as escrow agent (the "Escrow Agent") under that certain Escrow Agreement effective as of December 31, 2012 (the "Escrow Agreement"), Morgan Stanley Capital Services LLC f/k/a Morgan Stanley Capital Services Inc. ("MSCS"), and Morgan Stanley & Co. LLC f/k/a Morgan Stanley & Co. Incorporated ("Morgan Stanley," and together with MSCS, the "Morgan Stanley Parties").  The Litigation Trustee, MSCS, and Morgan Stanley are each referred to as a "Party," and collectively referred to as the "Parties."

## RECITALS

WHEREAS, on December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 23, 2012, the Bankruptcy Court entered an order confirming the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "DCL Plan") (capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the DCL Plan).

WHEREAS, as of the Petition Date, MSCS held $38,365,000 in outstanding principal amount of Tribune 7.5% Debentures due 2023, CUSIP number 887364AB3,  issued pursuant to an Indenture dated as of January 30, 1995 between Tribune and Deutsche Bank Trust Company Americas ("DBTCA") (the "Designated Debentures"), plus accrued pre-petition interest.

3187689.1

WHEREAS, on or about December 19, 1994, MSCS and The Times Mirror Company, a predecessor to Tribune, entered into an interest rate swap in respect of a $100 million notional amount, which swap was memorialized in an ISDA Master Agreement, dated as of August 5, 1994, and a Confirmation to such agreement, dated as of December 19, 1994 (together, the "Swap Agreement").

WHEREAS, Tribune's bankruptcy filing was an Event of Default under Section 5(a)(vii) of the Swap Agreement.

WHEREAS, by letter dated December 18, 2008, MSCS informed Tribune that it had set off the principal amount and interest accrued on the Designated Debentures (the "MSCS Setoff") against the amount MSCS had determined, as the non-defaulting party under the Swap Agreement, it owed Tribune, an amount that MSCS, by letter dated March 20, 2009, corrected to $51,945,000.

WHEREAS, notwithstanding MSCS's assertion of the MSCS Setoff, the Designated Debentures have not been cancelled and the position remains open at The Depository Trust Company ("DTC").

WHEREAS, MSCS filed in the Bankruptcy Court Claims Nos. 5027 and 7161 against Tribune, asserting various claims arising from and relating to the terms and conditions of the Swap Agreement, the Designated Debentures, and a certain indemnity agreement between Tribune and Morgan Stanley, executed on November 30, 2008, and for damages resulting from the potential rejection of that indemnity agreement by the terms of the DCL Plan (the "Swap-Related Proofs of Claim"). Separately, Morgan Stanley filed in the Bankruptcy Court Claims Nos. 5034 and 7162 against Tribune, asserting various claims for reimbursement of legal fees and other expenses pursuant to the same indemnity agreement referred to in the Swap-Related

3187689.1

Proofs of Claim and for damages resulting from the potential rejection of that indemnity agreement by the terms of the DCL Plan (the "Indemnity Proofs of Claim").

WHEREAS, the Debtors and the Official Committee of Unsecured Creditors of Tribune Company (the "Creditors' Committee") disputed the validity of the MSCS Setoff and the related claims, including but not limited to Claims Nos. 5027 and 7161.

WHEREAS, on May 29, 2009, MSCS paid Tribune $9,500,000, pursuant to a letter agreement dated May 27, 2009, in partial satisfaction of the amount owing under the Swap Agreement (including any interest accruing on such payment).

WHEREAS, the Creditors' Committee, on behalf of the Debtors' chapter 11 estates, filed a complaint in the Bankruptcy Court styled *The Official Committee of Unsecured Creditors of Tribune Company, on behalf of Tribune Company, et al. v. Dennis J. FitzSimons, et al.,* No. 10-54010 (KJC) (the "*FitzSimons* Action"), challenging, among other things, the validity of the MSCS Setoff and seeking to equitably subordinate any claims MSCS may have against the Debtors.

WHEREAS, under the DCL Plan, objections to the Proofs of Claim and the *FitzSimons* Action are Preserved Causes of Action, to be prosecuted by the Tribune Litigation Trust pursuant to Article XIII of the DCL Plan.

WHEREAS, the *FitzSimons* Action was transferred to the United States District Court for the Southern District of New York (the "District Court") for inclusion in the coordinated proceedings under 28 U.S.C. § 1407, where it is presently being prosecuted by the Litigation Trustee before the Honorable Richard J. Sullivan.

WHEREAS, the Litigation Trustee has filed the Fifth Amended Complaint in the *FitzSimons* Action (the "*FitzSimons* Complaint"), which includes allegations in paragraphs 16,

3

3187689.1

91, 361-69, 372-75, 568-75, 580-82, and 585-607 concerning the Swap Agreement, the

Designated Debentures, the purchase of the Designated Debentures by Morgan Stanley, the

transfer of the Designated Debentures to MSCS, the MSCS Setoff, and Morgan Stanley's role as

a financial advisor to Tribune in 2008 in connection with a possible bankruptcy filing (the

"Swap-Related Allegations").

WHEREAS, the *FitzSimons* Complaint asserts claims against the Morgan Stanley Parties

in Counts 24, 25 (the portion of Count 25 relating to Morgan Stanley's purchase and/or transfer

of the Designated Debentures), 26, 27, 28, 29, and 30 arising out of or relating to, directly or

indirectly, the Swap-Related Allegations (the "Swap-Related Claims") and repeats and realleges

the Swap-Related Allegations in each of the other Counts against Morgan Stanley in the

*FitzSimons* Complaint.  For the avoidance of doubt, this Agreement does not cover Counts 1, 20,

21, 22, 23, 25 (the portion of Count 25 relating to Morgan Stanley's conduct other than its

purchase and/or transfer of the Designated Debentures), and 31 of the *FitzSimons* Complaint.

WHEREAS, due to the pendency of the *FitzSimons* Action, claims on account of the

Designated Debentures held by MSCS are Disputed Claims under the DCL Plan.

WHEREAS, in the event of a determination that the MSCS Setoff is not valid, MSCS

would own the Designated Debentures and, accordingly, would hold disputed Senior Noteholder

Claims with respect to those debentures (the allowance, disallowance, or subordination of which

would be separately determined).

WHEREAS, on November 19, 2012, the Bankruptcy Court entered an order approving a

certain Stipulation in Aid of Implementation of Senior Noteholder Distributions Pursuant to

Confirmed DCL Plan, which had been entered into by the Debtors, the Creditors' Committee,

DBTCA, in its capacity as successor indenture trustee, Law Debenture Trust Company of New

4

York ("Law Debenture"), in its capacity as successor indenture trustee, and MSCS (the "MSCS Stipulation").

WHEREAS, MSCS, DBTCA, Law Debenture, and the Litigation Trustee executed the Escrow Agreement, designating the Litigation Trustee as Escrow Agent, in order to implement and execute the terms of the MSCS Stipulation.

WHEREAS, pursuant to the terms of the MSCS Stipulation, the Litigation Trustee was authorized and directed to establish a segregated account (the "Escrow Account") with a DTC participant (the "Escrow DTC Participant") to receive and hold in escrow (a) the Designated Debentures, (b) distributions under the DCL Plan on account of the Designated Debentures (consisting of cash and Class 1E Litigation Trust Interests), and (c) any future distributions with respect to the Designated Debentures or the Class 1E Litigation Trust Interests held in the Escrow Account.

WHEREAS, pursuant to the terms of the MSCS Stipulation, the Designated Debentures and $12,628,518.81 (representing that portion of the Initial Distribution made on account of the Senior Noteholder Claims, in accordance with Section 7.7 of the DCL Plan, that is allocable to the Designated Debentures, less MSCS's *pro rata* portion of certain DBTCA and Law Debenture fees) were delivered to the Escrow Account to be held in accordance with the Escrow Agreement.  The Escrow Account was to be held in reserve, in accordance with Section 3.2.5(c) of the DCL Plan, pending a determination of the allowance of MSCS's Senior Noteholder Claims and MSCS's entitlement to distributions under the DCL Plan or in respect of Litigation Trust Interests.  After adding interest and dividends received on the escrowed funds and subtracting amounts owed to the Litigation Trust for advances and amounts reserved for taxes, the escrowed funds currently total $12,625,169.97  (the "Escrow Amount").

WHEREAS, the Parties have negotiated the terms and conditions of a resolution of the Swap-Related Claims and the Swap-Related Proofs of Claims, and have entered into this Agreement.

NOW, THEREFORE, in consideration of the mutual obligations, promises, covenants, and conditions described in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## TERMS

1.      The Recitals above are incorporated herein by reference.

2.      This Agreement shall be subject to the approval of the Bankruptcy Court and shall be effective upon the date the order of the Bankruptcy Court approving this Agreement becomes a final, non-appealable order (the "Effective Date").  This Agreement and all documents executed pursuant to and obligations arising under this Agreement shall become null and void and of no force or effect if the Effective Date does not occur within six months of the date of the execution of this Agreement.  In the event the Effective Date does not occur, this Agreement shall not be admissible as evidence in any proceeding and, in that event, all Parties reserve all rights, claims, setoffs, and defenses they would otherwise have.

3.      Within three business days after the Effective Date, MSCS shall:

(a)      pay the Litigation Trustee, by wire transfer in same-day funds, $23,700,000 (the "Settlement Payment"); and

(b)      be deemed to have forever waived, relinquished, forfeited, and abandoned to the Litigation Trustee any claim to all property in the Escrow Account or held by the Litigation Trustee as Escrow Agent, including the Designated Debentures, the Escrow Amount, any additional interest or dividends that have accrued on the Escrow Amount

that have not been used to pay the costs of the Escrow Agent, all other distributions under the DCL Plan on account of the Designated Debentures (consisting of cash or Class 1E Litigation Trust Interests), and any other distributions with respect to the Designated Debentures or the Class 1E Litigation Trust Interests held in the Escrow Account or by the Litigation Trustee as Escrow Agent.

4.    Simultaneously with the execution of this Agreement, the Parties shall execute a stipulation, in the form attached hereto as Exhibit A, (i) dismissing with prejudice the Swap-Related Claims asserted in the *FitzSimons* Complaint, and (ii) providing that the Swap-Related Allegations shall not be deemed repeated and realleged in the remaining Counts in the *FitzSimons* Complaint against Morgan Stanley or any of its affiliates and shall not be used or referred to in any filings or further proceedings in the *FitzSimons* Action (except to note that they have been settled and dismissed), with each Party bearing its own costs, expenses, and attorneys' fees (the "Stipulation of Dismissal").  Attorneys for the Morgan Stanley Parties shall hold the fully executed Stipulation of Dismissal in escrow pending receipt by the Litigation Trustee of the Settlement Payment.  Upon receipt by the Litigation Trustee of the Settlement Payment, attorneys for the Morgan Stanley Parties are authorized to submit the Stipulation of Dismissal to the District Court.

5.    The Parties agree to take all actions reasonably necessary to carry out the provisions and purpose of this Agreement, including that:

(a)    simultaneously with the execution of this Agreement, MSCS shall execute an amendment to the MSCS Stipulation substantially in the form attached hereto as Exhibit B (the "Amendment");

3187689.1

(b)      promptly after the execution of this Agreement, the Litigation Trustee shall move the Bankruptcy Court for an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving this Agreement and the Amendment by filing a motion with the Bankruptcy Court substantially in the form attached hereto (without exhibits) as Exhibit C (the "Approval Motion");

(c)      promptly after the filing of the Approval Motion, the Morgan Stanley Parties shall advise the Bankruptcy Court that they fully support approval of this Agreement and the Amendment; and

(d)      promptly after the execution of this Agreement, the Morgan Stanley Parties shall move the Bankruptcy Court for an order, pursuant to Rule 3006 of the Federal Rules of Bankruptcy Procedure, authorizing withdrawal of the Swap-Related Proofs of Claim with prejudice, such withdrawal to be conditioned and effective upon the occurrence of the Effective Date, by filing a motion with the Bankruptcy Court substantially in the form attached hereto as Exhibit D;

(e)      promptly after the execution of this Agreement, the Parties shall jointly advise the District Court that the Parties have resolved, subject to the approval of the Bankruptcy Court, the Swap-Related Claims that are the subject of a motion to dismiss filed by the Morgan Stanley Parties pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Motion No. 11), which motion is currently pending before the District Court;

(f)      within three business days after the Effective Date, the Litigation Trustee as Escrow Agent shall deliver a letter substantially in the form attached to the Amendment as Exhibit A instructing Wilmington Trust, National Association

8

("Wilmington"), acting as the Escrow DTC Participant, to deliver a letter authorizing DTC to remove the Designated Debentures from Wilmington's account and cancel the Designated Debentures.  For the avoidance of doubt, the Class 1E Litigation Trust Interests or proceeds thereof allocable to the Designated Debentures will not be canceled but will instead be waived, relinquished, forfeited, and abandoned to the Litigation Trustee in accordance with paragraph 3(b) of this Agreement.

6.      For good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, including the promises, obligations, and other consideration set forth in this Agreement, the Litigation Trustee and the Litigation Trust, and each of their predecessors, successors, and assigns, including, without limitation, the Debtors (the "Litigation Trust Releasors"), hereby fully and forever release and discharge the Morgan Stanley Parties, and each of their respective past and present officers, directors, employees, affiliates, agents, representatives, attorneys, parents, subsidiaries, partners, predecessors, successors, and assigns, from any and all claims, demands, losses, costs, damages, actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, liabilities, and obligations solely arising out of or relating, directly or indirectly, to the Swap Agreement, the Designated Debentures, the MSCS Setoff, the Swap-Related Claims, the Swap-Related Allegations, and/or the Swap-Related Proofs of Claim, including, without limitation, interest on any such amounts, at law or in equity, which the Litigation Trust Releasors ever had or now have, whether known or unknown, from the beginning of the world through the date of this Agreement.  This is a specific and not a general release.  For the avoidance of doubt, nothing herein shall prevent the Litigation Trust Releasors from (a) prosecuting claims arising under, or enforcing the terms of, this Agreement; (b) prosecuting the claims against Morgan Stanley or any of its affiliates (other

than MSCS) asserted in Counts 1, 20, 21, 22, 23, 25 (the portion of Count 25 relating to Morgan

Stanley's conduct other than its purchase and/or transfer of the Designated Debentures), or 31 of

the *FitzSimons* Complaint, provided that the Litigation Trust Releasors shall not use or refer to

the Swap-Related Allegations as part of such prosecution (except to note that they have been

settled and dismissed); provided further, however, that nothing herein shall prevent the Litigation

Trust Releasors from using or referring to any allegations in paragraphs 1-15, 17-90, 92-360,

370-71, 376-567, 576-79, 583-84, or 608-54 of the *FitzSimons* Complaint; or (c) objecting to

and/or defending against Claim No. 6708 and (to the extent not waived pursuant to paragraph 7

of this Agreement) Claims Nos. 5034 and 7162.

    7.    For good and valuable consideration, the receipt and adequacy of which is hereby

acknowledged, including the promises, obligations, and other consideration set forth in this

Agreement, the Morgan Stanley Parties, and each of their respective predecessors, successors,

and assigns (the "Morgan Stanley Releasors"), hereby fully and forever release and discharge the

Litigation Trustee, the Litigation Trust, the Litigation Trust Advisory Board, and the Escrow

Agent, and each of their past and present direct and indirect beneficiaries, members, officers,

directors, employees, affiliates, agents, representatives, attorneys, predecessors, successors, and

assigns, including, without limitation, the Debtors, from any and all claims, demands, losses,

costs, damages, actions, causes of action, suits, proceedings, debts, dues, contracts, judgments,

damages, liabilities, and obligations solely arising out of or relating, directly or indirectly, to the

Swap Agreement, the Designated Debentures, the MSCS Setoff, the Swap-Related Claims, the

Swap-Related Allegations, and/or the Swap-Related Proofs of Claim, including, without

limitation, interest on any such amounts, at law or in equity, which the Morgan Stanley Releasors

ever had or now have, whether known or unknown, from the beginning of the world through the

date of this Agreement.  This is a specific and not a general release.  In addition, Morgan Stanley

waives, and agrees not to pursue, any indemnification claims it may have against Tribune under

the Indemnity Proofs of Claim related to the Swap Agreement, the Designated Debentures, the

MSCS Setoff, the Swap-Related Claims, the Swap-Related Allegations, and/or the Swap-Related

Proofs of Claim.  For the avoidance of doubt, nothing herein shall prevent the Morgan Stanley

Releasors from (a) prosecuting claims arising under, or enforcing the terms of, this Agreement;

(b) prosecuting Claim No. 6708 and (to the extent not waived pursuant to this paragraph 7 of this

Agreement) Claims Nos. 5034 and 7162; or (c) defending against the claims asserted in Counts

1, 20, 21, 22, 23, 25 (the portion of Count 25 relating to Morgan Stanley's conduct other than its

purchase and/or transfer of the Designated Debentures), or 31 of the *FitzSimons* Complaint,

provided that the Morgan Stanley Releasors shall not use or refer to the Swap-Related

Allegations as part of such defense (except to note that they have been settled and dismissed).

8.      Each Party hereto acknowledges that this Agreement has been reached to

compromise, settle, and resolve the Swap-Related Claims and Swap-Related Proofs of Claim,

and to avoid the future costs of litigation relating thereto.  None of the Parties hereto admits or

acknowledges any wrongdoing or liability whatsoever.  Each Party hereto expressly agrees that

nothing contained in this Agreement may be used by any person in any proceeding as an

admission of any liability, or of any fact, or of any wrongdoing of any of the Parties to this

Agreement.  Nothing contained herein shall prevent any Party from using this Agreement or any

term or matter referenced herein in any proceeding to enforce the terms hereof or from bringing

any claim arising from a breach hereof.

11

9.      This Agreement is binding upon and shall inure to the benefit of the Parties and their respective executors, administrators, personal representatives, predecessors, successors, and assigns.

10.     Each Party acknowledges and agrees that it entered into this Agreement after full negotiations in which each Party was represented by counsel. The Parties shall jointly be deemed to be the drafters of this Agreement; the rule that any ambiguity in a contract shall be construed against the drafter of the contract shall not apply to this Agreement.

11.     The Parties hereby consent to the jurisdiction of the Bankruptcy Court, and agree that the Bankruptcy Court shall have exclusive jurisdiction over the terms of this Agreement and any action seeking to enforce the terms of this Agreement.

12.     The failure by any of the Parties to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement, or a course of dealing between the Parties, shall not be a waiver of such terms or conditions or of such Party's right thereafter to enforce each and every term and condition of this Agreement.

13.     This Agreement constitutes the entire understanding between the Parties concerning the subject matter hereof.  There are no representations, understandings, or agreements of any kind or nature whatsoever, oral or written, which are not included herein, or which were relied upon by the Parties in entering into this Agreement.  This Agreement cannot be changed, modified, or amended except by a writing executed by all Parties, and, if necessary, approved by the Bankruptcy Court.

14.     Each Party, on his or its own behalf, represents and warrants that the signatories to this Agreement have the authority to execute this Agreement, including the releases in paragraphs 6 and 7, on behalf of the respective Party and its associated releasors.  The Litigation

Trustee represents and warrants that the Tribune Litigation Trust has not assigned, transferred, or granted an interest in any of the claims released or waived by this Agreement to any other person or entity. This Agreement may be executed in one or more counterparts and by facsimile, all of which shall be considered effective as an original signature.

15.    The substantive and procedural laws of the State of New York shall govern the interpretation and enforcement of this Agreement, without regard to any conflict of law principles.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

MARC S. KIRSCHNER, as Litigation
Trustee for the Tribune Litigation Trust

Marc S. Kirschner
Date: Apr. / 25, 2016

MORGAN STANLEY CAPITAL SERVICES LLC
f/k/a MORGAN STANLEY CAPITAL SERVICES
INC.

By:_____
    Name:
    Title:
    Date:

MORGAN STANLEY & CO. LLC f/k/a MORGAN
STANLEY & CO. INCORPORATED

By:_____
    Name:
    Title:
    Date:

13

3187689.1

Trustee represents and warrants that the Tribune Litigation Trust has not assigned, transferred, or granted an interest in any of the claims released or waived by this Agreement to any other person or entity. This Agreement may be executed in one or more counterparts and by facsimile, all of which shall be considered effective as an original signature.

15.     The substantive and procedural laws of the State of New York shall govern the interpretation and enforcement of this Agreement, without regard to any conflict of law principles.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

MARC S. KIRSCHNER, as Litigation
Trustee for the Tribune Litigation Trust

_____
Marc S. Kirschner
Date:

MORGAN STANLEY CAPITAL SERVICES LLC
f/k/a MORGAN STANLEY CAPITAL SERVICES
INC.

By: _____
Name: JAMES J ADANGAN
Title: COUNSEL
Date: APRIL 22, 2016

MORGAN STANLEY & CO. LLC f/k/a MORGAN
STANLEY & CO. INCORPORATED

By: _____
    Name:
    Title:
    Date:

13

3187689.1

Trustee represents and warrants that the Tribune Litigation Trust has not assigned, transferred, or granted an interest in any of the claims released or waived by this Agreement to any other person or entity. This Agreement may be executed in one or more counterparts and by facsimile, all of which shall be considered effective as an original signature.

15.     The substantive and procedural laws of the State of New York shall govern the interpretation and enforcement of this Agreement, without regard to any conflict of law principles.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

MARC S. KIRSCHNER, as Litigation          MORGAN STANLEY CAPITAL SERVICES LLC.
Trustee for the Tribune Litigation Trust          f/k/a MORGAN STANLEY CAPITAL SERVICES INC.


_____          By:_____
Marc S. Kirschner                                                Name:
Date:                                                                     Title:
                                                                               Date:


                                                              MORGAN STANLEY & CO. LLC f/k/a MORGAN
                                                              STANLEY & CO. INCORPORATED

                                                              By: _____
                                                                  Name: Eric Gross
                                                                  Title: Chief Legal Officer
                                                                  Date: April 25, 2016

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:  TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Action 11 MD 2296 (RJS) |
| MARC S. KIRSCHNER, as Litigation Trustee for the TRIBUNE LITIGATION TRUST, <br><br>                                     Plaintiff, <br><br>             -against- <br><br> DENNIS J. FITZSIMONS, *et al.*, <br><br>                                     Defendants. | 12 CV 2652 (RJS) |

**STIPULATION AND NOTICE OF DISMISSAL**

Plaintiff Marc S. Kirschner, as Litigation Trustee for the Tribune Litigation Trust ("Plaintiff"), and defendants **Morgan Stanley & Co. LLC f/k/a Morgan Stanley & Co. Incorporated** ("Morgan Stanley") and **Morgan Stanley Capital Services LLC f/k/a Morgan Stanley Capital Services Inc.** ("MSCS," together with Morgan Stanley, "the Morgan Stanley Defendants," and collectively with Morgan Stanley and Plaintiff, the "Parties"), through the Parties' respective undersigned counsel, for good and valuable consideration, the receipt of which is hereby acknowledged, hereby enter into this Stipulation and Notice of Dismissal.

WHEREAS, the Morgan Stanley Defendants are named defendants in the above-captioned action (the "Action"), a civil action that was filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in connection with a bankruptcy case captioned *In re: Tribune Company, et al.,* Case No. 08-13141 (KJC), and currently is pending in the United States District Court for the Southern District of New York;

WHEREAS, the Parties have executed a Settlement Agreement, which Settlement Agreement was approved by the Bankruptcy Court on _____, 2016 and became effective on _____, 2016;

WHEREAS, pursuant to the Settlement Agreement, the Parties have agreed to enter into this stipulation dismissing with prejudice certain, but not all, of the claims asserted by Plaintiff against the Morgan Stanley Defendants in the Fifth Amended Complaint filed in the Action; and

WHEREAS, the Morgan Stanley Defendants have not filed an answer or a motion for summary judgment in the Action;

IT IS HEREBY STIPULATED AND AGREED, by and between the Parties, as follows:

1.      Pursuant to Federal Rule of Civil Procedure 41(a)(1), Plaintiff hereby dismisses the following claims in the Fifth Amended Complaint with prejudice solely against the Morgan Stanley Defendants: Counts 24, 26, 27, 28, 29, and 30.  Plaintiff further dismisses with prejudice so much of Count 25 as relates to Morgan Stanley's purchase and/or transfer of certain Tribune Company 7.5% debentures.   Further, Plaintiff dismisses with prejudice MSCS as a defendant from the Action.

2.      This dismissal does not apply to any other claims in the Fifth Amended Complaint asserted against Morgan Stanley or any of its affiliates (other than MSCS), including, for the avoidance of doubt, claims against Morgan Stanley or any of its affiliates asserted in Counts 1, 20, 21, 22, 23, 25 (the portion of Count 25 relating to Morgan Stanley's conduct other than its purchase and/or transfer of Tribune Company 7.5% debentures), or 31; *provided, however,* that such claims shall not include, rely on, or otherwise be based on the allegations in

2

paragraphs 16, 91, 361-69, 372-75, 568-75, 580-82, and 585-607 concerning the Swap Agreement (as defined in the Fifth Amended Complaint), the Tribune 7.5% Debentures held by MSCS referred to therein (the "Designated Debentures"), the purchase of the Designated Debentures by Morgan Stanley, the transfer of the Designated Debentures to MSCS, the setoff of the Designated Debentures against obligations owed to Tribune under the Swap Agreement, and Morgan Stanley's role as a financial advisor to Tribune in 2008 in connection with a possible bankruptcy filing (the "Swap-Related Allegations").  The Swap-Related Allegations shall not be deemed repeated and realleged in the remaining Counts in the Fifth Amended Complaint against Morgan Stanley or any of its affiliates and shall not be used or referred to in any filings or further proceedings in the Action (except to note that they have been settled and dismissed).  For the avoidance of doubt, nothing herein shall prevent Plaintiff from using or referring to any allegations in paragraphs 1-15, 17-90, 92-360, 370-71, 376-567, 576-79, 583-84, or 608-54 of the Fifth Amended Complaint.

3.    Each Party shall bear its own costs, expenses, and attorneys' fees in connection with the claims dismissed pursuant to this Stipulation.

Dated:  April 25, 2016


_____          _____
Robert J. Lack                           Jonathan D. Polkes
Hal Neier                                Michael F. Walsh
Jeffrey R. Wang                          Stacy Nettleton
FRIEDMAN KAPLAN SEILER &                 WEIL, GOTSHAL & MANGES LLP
ADELMAN LLP                              767 Fifth Avenue
7 Times Square                           New York, NY 10153
New York, NY 10036-6516                  (212) 310-8000
(212) 833-1100                           michael.walsh@weil.com
rlack@fklaw.com                          jonathan.polkes@weil.com
hneier@fklaw.com                         stacy.nettleton@weil.com
jwang@fklaw.com

*Counsel for Plaintiff*                  *Counsel for the Morgan Stanley Defendants*


SO ORDERED.

Dated:  _____, 2016
        New York, New York


                                         _____
                                         RICHARD J. SULLIVAN
                                         United States District Judge


4

<u>**EXHIBIT B**</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY, <u>et al.</u>,[1] (f/k/a Tribune Company) | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Related to Docket Nos. 12072, 12074, 12601, 12726, and 12734** |

**AMENDMENT TO STIPULATION**
**IN AID OF IMPLEMENTATION OF**
**SENIOR NOTEHOLDER DISTRIBUTIONS**
**PURSUANT TO CONFIRMED DCL PLAN**

This amendment (the "<u>Amendment</u>") is entered into by and among Marc S. Kirschner, as

Litigation Trustee for the Tribune Litigation Trust (the "<u>Litigation Trustee</u>") and as escrow agent

(the "<u>Escrow Agent</u>") under that certain Escrow Agreement effective as of December 31, 2012

(the "<u>Escrow Agreement</u>"), Deutsche Bank Trust Company Americas, in its capacity as

successor indenture trustee ("<u>DBTCA</u>"), Law Debenture Trust Company of New York, in its

capacity as successor indenture trustee ("<u>Law Debenture</u>"; DBTCA and Law Debenture are

collectively referred to as the "<u>Indenture Trustees</u>"), and Morgan Stanley Capital Services LLC

f/k/a Morgan Stanley Capital Services Inc. ("<u>MSCS</u>") (each, a "<u>Party</u>" and collectively, the

"<u>Parties</u>"), modifying that certain Stipulation in Aid of Implementation of Senior Noteholder

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are:  Tribune Media Company (0355); Chicago Tribune Company, LLC (3437); Chicagoland Television News, LLC (1352; forsalebyowner.com, LLC (4276); KTLA, LLC (3404); KWGN, LLC (5347); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); Tribune CNLBC, LLC (0347); Tribune Content Agency, LLC (2931); Tribune Media Services, LLC (1080); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191).  The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

Distributions Pursuant to Confirmed DCL Plan [Docket No. 12734-1] (the "Stipulation")[2] for the

purpose of implementing the terms of a certain Settlement Agreement entered into on or about

April 25, 2016 (the "Settlement Agreement") by the Litigation Trustee, MSCS, and Morgan

Stanley & Co. LLC f/k/a Morgan Stanley & Co. Incorporated ("Morgan Stanley," and together

with MSCS, the "Morgan Stanley Parties").[3]

## RECITALS

WHEREAS, on December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune")

and certain of its subsidiaries (collectively, the "Debtors") each filed a voluntary petition for

relief under chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for

the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 23, 2012, the Bankruptcy Court entered an Order [Docket No.

12074] confirming the Fourth Amended Joint Plan of Reorganization for Tribune Company and

Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors,

Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank,

N.A. [Docket No. 12072] (the "DCL Plan").

WHEREAS, as of the Petition Date, MSCS held $38,365,000 in outstanding principal

amount of Tribune 7.5% Debentures due 2023, CUSIP number 887364AB3,  issued pursuant to

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Stipulation and/or the DCL Plan, as defined below.

[3] The signatories to the Stipulation, which was executed and approved prior to the December 31, 2012 effective date of the DCL Plan (the "Plan Effective Date"), consisted of the Debtors, the Creditors' Committee, the Indenture Trustees, and MSCS.  Pursuant to Section 15.2 of the DCL Plan, the appointment of the Creditors' Committee terminated on the Plan Effective Date, except for certain limited purposes not relevant to this Amendment.  Pursuant to Section 13.2.1 of the DCL Plan, all of the Litigation Trust Assets, as well as the rights and powers of the Debtors' Estates applicable to the Litigation Trust Assets, automatically vested in the Litigation Trust on the Plan Effective Date.  Although not a signatory to the Stipulation, the Litigation Trustee is a signatory to this Amendment by virtue of the establishment of the Litigation Trust, pursuant to the DCL Plan and the Litigation Trust Agreement, for the purpose of administering the Litigation Trust Assets and making all distributions on account of the Litigation Trust Interests as provided for under the DCL Plan.

3188422.1

an Indenture dated as of January 30, 1995 between Tribune and DBTCA (the "<u>Designated</u>

<u>Debentures</u>"), plus accrued pre-petition interest.

WHEREAS, on or about December 19, 1994, MSCS and The Times Mirror Company, a

predecessor to Tribune, entered into an interest rate swap in respect of a $100 million notional

amount, which swap was memorialized in an ISDA Master Agreement, dated as of August 5,

1994, and a Confirmation to such agreement, dated as of December 19, 1994 (together, the

"<u>Swap Agreement</u>").

WHEREAS, Tribune's bankruptcy filing was an Event of Default under Section 5(a)(vii)

of the Swap Agreement.

WHEREAS, by letter dated December 18, 2008, MSCS informed Tribune that it had set

off the Designated Debentures (the "<u>MSCS Setoff</u>") against the amount MSCS had determined,

as the non-defaulting party under the Swap Agreement, it owed Tribune, an amount that MSCS,

by letter dated March 20, 2009, corrected to $51,945,000.

WHEREAS, notwithstanding MSCS's assertion of the MSCS Setoff, the Designated

Debentures have not been cancelled and the position remains open at The Depository Trust

Company ("<u>DTC</u>").

WHEREAS, MSCS filed in the Bankruptcy Court Claims Nos. 5027 and 7161 against

Tribune, asserting various claims arising from and relating to the terms and conditions of the

Swap Agreement, the Designated Debentures, and a certain indemnity agreement between

Tribune and Morgan Stanley, executed on November 30, 2008, and for damages resulting from

the potential rejection of that indemnity agreement by the terms of the DCL Plan (the "<u>Swap-</u>

<u>Related Proofs of Claim</u>").

3

WHEREAS, the Debtors and the Creditors' Committee disputed the validity of the MSCS Setoff and the Swap-Related Proofs of Claim.

WHEREAS, on May 29, 2009, MSCS paid Tribune $9,500,000 in partial satisfaction of the amount owing under the Swap Agreement.

WHEREAS, the Creditors' Committee, on behalf of the Debtors' chapter 11 estates, filed a complaint in the Bankruptcy Court styled *The Official Committee of Unsecured Creditors of Tribune Company, on behalf of Tribune Company, et al. v. Dennis J. FitzSimons, et al.,* No. 10-54010 (KJC) (the "*FitzSimons* Action"), challenging, among other things, the validity of the MSCS Setoff and seeking to equitably subordinate any claims MSCS may have against the Debtors.

WHEREAS, under the DCL Plan, objections to the Proofs of Claim and the *FitzSimons* Action are Preserved Causes of Action, to be prosecuted by the Tribune Litigation Trust pursuant to Article XIII of the DCL Plan.

WHEREAS, the *FitzSimons* Action was transferred to the United States District Court for the Southern District of New York (the "District Court") for inclusion in the coordinated proceedings under 28 U.S.C. § 1407, where it is presently being prosecuted by the Litigation Trustee before the Honorable Richard J. Sullivan.

WHEREAS, the Litigation Trustee has filed the Fifth Amended Complaint in the *FitzSimons* Action, which asserts claims against the Morgan Stanley Parties arising out of or relating, directly or indirectly, to the Swap Agreement, the Designated Debentures, and/or the MSCS Setoff in Counts 24, 25 (the portion of Count 25 relating to Morgan Stanley's purchase and/or transfer of the Designated Debentures), 26, 27, 28, 29, and 30 (the "Swap-Related Claims").

4

WHEREAS, due to the pendency of the *FitzSimons* Action, claims on account of the Designated Debentures held by MSCS are Disputed Claims under the DCL Plan.

WHEREAS, in the event of a determination that the MSCS Setoff is not valid, MSCS would own the Designated Debentures and, accordingly, would hold disputed Senior Noteholder Claims with respect to those debentures (the allowance, disallowance, or subordination of which would be separately determined).

WHEREAS, on November 19, 2012, the Bankruptcy Court entered an Order [Docket No. 12734] approving the Stipulation.

WHEREAS, MSCS, the Indenture Trustees, and the Litigation Trustee executed the Escrow Agreement, designating the Litigation Trustee as Escrow Agent, in order to implement and execute the terms of the Stipulation.

WHEREAS, pursuant to the terms of the Stipulation, the Litigation Trustee was authorized and directed to establish a segregated account (the "Escrow Account") with a DTC participant (the "Escrow DTC Participant") to receive and hold in escrow (a) the Designated Debentures, (b) distributions under the DCL Plan on account of the Designated Debentures (consisting of cash and Class 1E Litigation Trust Interests), and (c) any future distributions with respect to the Designated Debentures or the Class 1E Litigation Trust Interests held in the Escrow Account.

WHEREAS, pursuant to the terms of the MSCS Stipulation, the Designated Debentures and $12,628,518.81 (representing that portion of the Initial Distribution made on account of the Senior Noteholder Claims, in accordance with Section 7.7 of the DCL Plan, that is allocable to the Designated Debentures, less MSCS's *pro rata* portion of certain DBTCA and Law Debenture fees) were delivered to the Escrow Account to be held in accordance with the Escrow

Agreement.  The Escrow Account was to be held in reserve, in accordance with Section 3.2.5(c) of the DCL Plan, pending a determination of the allowance of MSCS's Senior Noteholder Claims and MSCS's entitlement to distributions under the DCL Plan or in respect of Litigation Trust Interests.  After adding interest and dividends received on the escrowed funds and subtracting amounts owed to the Litigation Trust for advances and amounts reserved for taxes, the escrowed funds currently total $12,625,169.97 (the "Escrow Amount").

WHEREAS, the Stipulation provides, *inter alia*, for the disposition of the Escrow Account in the event of the entry of an order approving a settlement between the Litigation Trustee and MSCS, the terms of which provide that the MSCS Setoff is valid, in whole or in part.

WHEREAS, the Litigation Trustee and the Morgan Stanley Parties have negotiated the terms and conditions of a resolution of the Swap-Related Claims and the Swap-Related Proofs of Claim, and executed the Settlement Agreement, which Settlement Agreement is subject to the approval of the Bankruptcy Court and shall be effective upon the date the order of the Bankruptcy Court approving the Settlement Agreement becomes a final, non-appealable order (the "Settlement Effective Date").

WHEREAS, the Settlement Agreement provides, *inter alia*, that MSCS shall be deemed to have forever waived, relinquished, forfeited, and abandoned to the Litigation Trustee any claim to all property in the Escrow Account or held by the Litigation Trustee as Escrow Agent, including the Designated Debentures, the Escrow Amount, any interest that has accrued on the Escrow Amount that has not been used to pay the costs of the Escrow Agent, all other distributions under the DCL Plan on account of the Designated Debentures (consisting of cash or Class 1E Litigation Trust Interests), and any other distributions with respect to the Designated

6

Debentures or the Class 1E Litigation Trust Interests held in the Escrow Account or by the Litigation Trustee as Escrow Agent (collectively, the "Designated Property").

WHEREAS, the Settlement Agreement is silent regarding whether or to what extent the MSCS Setoff is valid, in whole or in part.

WHEREAS, the Parties wish to provide for the disposition of the Designated Property in a manner consistent with the intent and purpose of the DCL Plan and Stipulation so as to fairly and reasonably allocate such property as between the Litigation Trustee, on the one hand, for distribution in accordance with the Litigation Trust Distribution Schedule attached as Exhibit C to the Litigation Trust Agreement (the "LT Distribution Schedule"), and the Litigation Trustee acting as Escrow Agent, on the other hand, for distribution to the Indenture Trustees.

NOW, THEREFORE, the Parties hereby stipulate and agree as follows:

## AGREEMENT

1.      The Recitals above are incorporated herein by reference.

2.      This Amendment shall be subject to the approval of the Bankruptcy Court and shall be conditioned upon the occurrence and effective upon the Settlement Effective Date.

3.      Paragraphs 7, 8, 9, and 11 of the Stipulation and Attachments "C" and "D" thereto are hereby amended and replaced in their entirety with the following:

7.      Upon the Settlement Effective Date,  the Escrow Amount, any interest or dividends that have accrued on the Escrow Amount that have not been used to pay the costs of the Escrow Agent, all other distributions under the DCL Plan on account of the Designated Debentures (consisting of cash or Class 1E Litigation Trust Interests), and any other distributions with respect to the Designated Debentures or the Class 1E Litigation Trust Interests held in the Escrow Account or by the Litigation Trustee as Escrow Agent, shall be allocated 50% to the Litigation Trustee, for distribution in

7

accordance with the LT Distribution Schedule, and 50% to the Litigation Trustee acting as Escrow Agent, for distribution to the Indenture Trustees in accordance with paragraph 8 of the Stipulation, as amended.

8.    The Escrow Agent shall distribute the portion of the Designated Property to be distributed to the Indenture Trustees in the amounts determined by using the formulas underlying the calculations set forth in Attachment "C" and Attachment "D" to the Stipulation, as amended.  Upon receipt of such distributions from the Escrow Agent, and upon confirmation that DTC has removed and/or cancelled the Designated Debentures in accordance with paragraph 9 of the Stipulation, as amended, each of the Indenture Trustees shall promptly and without any reserve or deduction make a distribution to their respective Senior Noteholders pursuant to Section 3.2.5 of the DCL Plan and the Senior Notes Indentures.

9.    Within three business days of the Settlement Effective Date, the Litigation Trustee as Escrow Agent shall deliver a letter substantially in the form attached hereto as Exhibit A instructing Wilmington Trust, National Association ("Wilmington"), acting as the Escrow DTC Participant, to deliver a letter (substantially in the form attached thereto as Attachment A) authorizing DTC to remove the Designated Debentures from Wilmington's account and cancel the Designated Debentures.  For the avoidance of doubt, the Class 1E Litigation Trust Interests or proceeds thereof allocable to the Designated Debentures will not be canceled but will instead be distributed in accordance with paragraphs 7 and 8 of the Stipulation, as amended.

11.    For the avoidance of doubt, except as provided in the Settlement Agreement, nothing herein shall affect, alter, or amend in any way any of the Parties'

8

defenses, counterclaims, or rights in the *FitzSimons* Action or with respect to any

pleading seeking the allowance or disallowance of a claim, and, further, no Party hereto

shall argue otherwise in either the *FitzSimons* Action or in any other matter before the

Bankruptcy Court or any other court, and the Parties agree that all factual recitations and

stipulations set forth herein shall not be used against any Party by any other Party as an

admission or otherwise in the *FitzSimons* Action, any matter before the Bankruptcy

Court, or in any other litigation in any other court concerning the Reorganized Debtors,

the Litigation Trustee, and the Morgan Stanley Parties.

> *[Amended Attachments "C" and "D" follow the signature pages.]*

4.     Upon the Settlement Effective Date, MSCS shall be deemed not to have any

Claim on account of the Designated Debentures.

5.     This Amendment shall serve as the Notice of Intent (as defined in and pursuant to

Section 7 of the Escrow Agreement) of the Escrow Agent's intent to distribute the Designated

Property in accordance with paragraphs 7, 8, and 9 of the Stipulation as amended herein.

6.     The Parties agree to take any and all other actions reasonably necessary to carry

out the provisions and purpose of this Amendment.

7.     Except as expressly amended or modified by this Amendment, the terms of the

Stipulation shall remain in full force and effect.

8.     The Parties acknowledge that they have each participated in and jointly consented

to the drafting of this Amendment and that any claimed ambiguity shall not be construed for or

against any Party on account of such drafting on the basis that the party was the drafter.

9.      The Bankruptcy Court shall retain jurisdiction to enforce the terms and provisions of this Amendment and to hear any issue or dispute arising with respect to the interpretation of this Amendment.

10.      Each Party, on his or its own behalf, represents and warrants that the signatories to this Amendment have the authority to execute this Amendment on behalf of the respective Party.  This Amendment may be executed in one or more counterparts and by facsimile, all of which shall be considered effective as an original signature.

*(Remainder of page intentionally left blank.)*

10

IN WITNESS WHEREOF, the Parties hereto have executed this Amendment on the dates indicated below.

Dated:  April __, 2016                              **LANDIS RATH & COBB LLP**
          Wilmington, Delaware

                                                      _____
                                                      Richard S. Cobb (No. 3157)
James S. Green Jr. (No. 4406)
919 Market Street, Suite 1800
Wilmington, DE  19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
Email: cobb@lrclaw.com
        green@lrclaw.com

-and-

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**
Robert J. Lack
Hal Neier
Jeffrey R. Wang
7 Times Square
New York, NY 10036
Telephone: (212) 833-1100
Facsimile: (212) 833-1250
Email: rlack@fklaw.com
        hneier@fklaw.com
        jwang@fklaw.com

*Counsel for Marc S. Kirschner, as Litigation Trustee for the Tribune Litigation Trust*

11

Dated:  April __, 2016
        Wilmington, Delaware

**BARNES & THORNBURG LLP**

_____

David M. Powlen (No. 4978)
1000 North West Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 300-3434
Facsimile: (302) 300-3456
Email: david.powlen@btlaw.com

-and-

**WEIL, GOTSHAL & MANGES
LLP**
Michael F. Walsh
Jonathan D. Polkes
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: michael.walsh@weil.com
        jonathan.polkes@weil.com

*Counsel for Morgan Stanley Capital
Services LLC f/k/a Morgan Stanley
Capital Services Inc.*

Dated:  April __, 2016
        Wilmington, Delaware

**McCARTER & ENGLISH LLP**

_____

Katherine L. Mayer (No. 3758)
405 N. King Street, 8th Floor
Wilmington, DE 19899
Telephone: (302) 984-6300
Facsimile: (302) 984-6399
Email: kmayer@mccarter.com

-and-

12

**McCARTER & ENGLISH LLP**
David J. Adler
245 Park Avenue, 27th Floor
New York, NY 10167
Telephone: (212) 609-6800
Facsimile: (212) 609-6921
Email: dadler@mccarter.com

*Counsel for Deutsche Bank Trust
Company Americas, solely in its
capacity as successor Indenture
Trustee for certain series of Senior
Notes*

Dated:  April __, 2016
      Wilmington, Delaware

**BIFFERATO GENTILOTTI LLC**

_____
Garvan F. McDaniel (DE 4167)
800 N. King Street, Plaza Level
Wilmington, DE 19801
Telephone: (302) 429-1900
Facsimile: (302) 429-8600
Email: gmcdaniel@bglawde.com

-and-

**KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP**
David S. Rosner
Matthew B. Stein
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Email: drosner@kasowitz.com
       mstein@kasowitz.com

*Counsel for Law Debenture Trust
Company of New York, solely in its
capacity as successor Indenture
Trustee for certain series of Senior
Notes*

13

3188422.1

**Attachment C, as Amended - Calculation of Escrow Amount - DCL Plan Distributions Other Than Litigation Trust Interests**

| | | | |
|---|---|---:|---|
| DBTCA Noteholder Claim | $ | 1,048,070,044.04 | [A] |
| plus: DBTCA Fees Not Shared | $ | 6,906,053.71 | [B] |
| plus: DBTCA Fees Shared | $ | 8,168,546.45 | [C] |
| **Allowed DBTCA Claim** | $ | 1,063,144,644.20 | [D] |
| | | | |
| Law Debenture Noteholder Claim | $ | 234,985,699.73 | [E] |
| plus: Law Debenture Fees Not Shared | $ | 12,834,037.95 | |
| plus: Law Debenture Fees Shared | $ | 1,831,453.55 | [F] |
| **Allowed Law Debenture Claim** | $ | 249,651,191.23 | [G] |
| | | | |
| **Allowed Senior Noteholder Claims** | $ | 1,312,795,835.43 | [H] = [D] + [G] |
| **Designated Debentures** | $ | 39,627,847.92 | [I] |
| *Designated Debenture Percentage* | | 3.02% | = [I] / [H] |
| x Senior Noteholder Distributable Cash Amount ($431,041,451) | $ | 431,041,451.00 | [J] |
| **Initial Designated Debenture Distribution** | $ | 13,011,349.22 | |
| | | | |
| DBTCA Fees Not Shared | $ | 6,906,053.71 | |
| less: Distribution on Account of DBTCA Fees Not Shared | $ | 2,267,523.50 | = ([B] / [H]) * [J] |
| DBTCA Fees Not Shared Charging Lien Amount | $ | 4,638,530.21 | [K] |
| | | | |
| DBTCA and Law Debenture Fees Shared | $ | 10,000,000.00 | [L] = [C] + [F] |
| less: Distribution on Account of DBTCA and Law Debenture Fees Shared | $ | 3,283,385.27 | = ([L] / [H]) * [J] |
| DBTCA and Law Debenture Fees Shared Charging Lien Amount | $ | 6,716,614.73 | [M] |
| | | | |
| Law Debenture Fees Shared | $ | 1,831,453.55 | |
| less: Distribution on Account of Law Debenture Fees Shared | $ | 601,336.76 | = ([F] / [H]) * [J] |
| Law Debenture Fees Shared Charging Lien Amount | $ | 1,230,116.79 | |
| | | | |
| *Designated Debenture Percentage of DBTCA Noteholder Claim* | | 3.78% | [N] = [I] / [A] |
| *Designated Debenture Percentage of DBTCA and Law Debenture Noteholder Claims* | | 3.09% | [O] = [I] / ([A] + [E]) |
| | | | |
| Designated Debenture Distribution | $ | 13,011,349.22 | |
| less: Pro Rata Portion of DBTCA Fees Not Shared Charging Lien | $ | 175,384.24 | = [K] * [N] |
| less: Pro Rata Portion of DBTCA and Law Debenture Fees Shared Charging Lien | $ | 207,446.16 | = [M] * [O] |
| less: Adjusting entry | $ | 0.01 | |
| Opening escrow balance | $ | 12,628,518.81 | |
| plus: Interest and dividends received on Escrow Amount from 2/1/13 to 4/1/16 | $ | 32,216.16 | |
| less: Amount owed to Trust for advances | $ | 21,565.00 | |
| less: Reserve for 2014-16 taxes | $ | 14,000.00 | |
| **Escrow Amount to Be Distributed** | $ | 12,625,169.97 | |

**Attachment C, as Amended - Calculations - DCL Plan Distributions Other Than Litigation Trust Interests**

| | | | |
|---|---|---:|---|
| Assumptions | | | |
| % of Designated Property Distributed to Indenture Trustees | | 50.00% | [P] |
| | | | |
| **Designated Debentures Allocated to Indenture Trustees** | $ | 19,813,923.96 | [Q] = [I] * [P] |
| Designated Debentures Allocated to Litigation Trust | $ | 19,813,923.96 | [R] = [I] - [Q] |
| Revised Allowed Senior Noteholder Claims | $ | 1,292,981,911.47 | [S] = [H] - [Q] |
| Revised DBTCA Noteholder Claim | $ | 1,028,256,120.08 | [T] = [A] - [Q] |
| Revised DBTCA Noteholder Claim and Law Debenture Noteholder Claim | $ | 1,263,241,819.81 | [U] = [E] + [T] |
| *Revised Law Debenture Fees Shared Percentage* | | 0.14% | [V] = [F] / [S] |
| *Revised DBTCA and Law Debenture Fees Shared Percentage* | | 0.77% | [W] = [L] / [S] |
| | | | |
| **Law Debenture Escrow Distribution** | | | |
| Designated Debenture Distribution | $ | 13,011,349.22 | |
| x % of Designated Property Distributed to Indenture Trustees | | 50.00% | |
| x Revised Law Debenture Percentage | | 19.31% | = [G] / [S] |
| Incremental Law Debenture Escrow Distribution | $ | 1,256,126.94 | |
| less: Revised Law Debenture Notes % of Total Notes | | 18.60% | = [E] / [U] |
| x Revised DBTCA and Law Debenture Fees Shared Charging Lien Amount | $ | 6,666,299.45 | = [L] - ([J] * [W]) |
| plus: Law Debenture Notes % of Total Notes | | 18.31% | = [E] / ([A] + [E]) |
| x DBTCA and Law Debenture Fees Shared Charging Lien Amount | $ | 6,716,614.73 | = [M] |
| less: Law Debenture Fees Shared Charging Lien Amount | $ | 1,230,116.79 | |
| plus: Revised Law Debenture Fees Shared Charging Lien Amount | $ | 1,220,901.78 | = [F] - ([J] * [V]) |
| **Law Debenture Escrow Distribution** | $ | 1,236,977.12 | |
| | | | |
| **DBTCA Escrow Distribution** | | | |
| Escrow Amount | | 12,625,169.97 | |
| x % of Designated Property Distributed to Indenture Trustees | | 50.00% | |
| less: Initial Law Debenture Escrow Distribution | $ | 1,236,977.12 | |
| **DBTCA Escrow Distribution** | $ | 5,075,607.87 | |
| | | | |
| **Litigation Trust Escrow Distribution** | | | |
| Escrow Amount to Be Distributed | $ | 12,625,169.97 | |
| less: Law Debenture Escrow Distribution | $ | 1,236,977.12 | |
| less: DBTCA Escrow Distribution | $ | 5,075,607.87 | |
| **Remaining Amount to Litigation Trust** | $ | 6,312,584.98 | |

**Attachment D, as Amended - Draft Calculation of Distributions of Litigation Trust Interests (expressed as %)**

| | | | |
|---|---|---:|---|
| **DBTCA Noteholder Claim** | $ | 1,048,070,044.04 | **[A]** |
| plus: DBTCA Fees Not Shared | $ | 6,906,053.71 | [B] |
| plus: DBTCA Fees Shared | $ | 8,168,546.45 | [C] |
| **Allowed DBTCA Claim** | $ | 1,063,144,644.20 | **[D]** |
| | | | |
| **Law Debenture Noteholder Claim** | $ | 234,985,699.73 | **[E]** |
| plus: Law Debenture Fees Not Shared | $ | 12,834,037.95 | |
| plus: Law Debenture Fees Shared | $ | 1,831,453.55 | |
| **Allowed Law Debenture Claim** | $ | 249,651,191.23 | **[F]** |
| | | | |
| **Allowed Senior Noteholder Claims** | $ | 1,312,795,835.43 | **[G] = [D] + [F]** |
| **Designated Debentures** | $ | 39,627,847.92 | **[H]** |
| | | | |
| *(Designated Debenture Percentage* | | *3.02%* | *= [H] / [G]* |
| plus *: (Designated Debentures % of DBTCA Noteholder Claim* | | *3.78%* | *= [H] / [A]* |
| x *DBTCA Fees % of Allowed Senior Noteholder Claims))* | | *1.15%* | *= ([B] + [C]) / [G]* |
| x Class 1E Litigation Trust Interests (expressed as %) | | 100% | |
| **Distribution - Litigation Trust Interests (%)** | | **3.06%** | |

**Attachment D, as Amended - Hypothetical Calculations - Distributions of Litigation Trust Interests (expressed as %)**

| | | | |
|---|---|---:|---|
| Assumptions | | | |
| % of Designated Property Distributed to Indenture Trustees | | 50.00% | [I] |
| | | | |
| **Designated Debentures Allocated to Indenture Trustees** | $ | 19,813,923.96 | **[J] = [H] * [I]** |
| Designated Debentures Allocated to Litigation Trust | $ | 19,813,923.96 | [K] = [H] - [J] |
| Revised Allowed Senior Noteholder Claims | $ | 1,292,981,911.47 | [L] = [G] - [J] |
| Revised DBTCA Noteholder Claim | $ | 1,028,256,120.08 | [M] = [A] - [J] |
| | | | |
| **Law Debenture Escrow Distribution** | | | |
| Designated Debenture Distribution - Litigation Trust Interests (%) | | 3.06% | |
| x % of Designated Property Distributed to Indenture Trustees | | 50.00% | |
| x Revised Law Debenture Percentage | | 19.31% | *= [F] / [L]* |
| **Law Debenture Escrow Distribution - Litigation Trust Interests (%)** | | **0.30%** | |
| | | | |
| **DBTCA Escrow Distribution** | | | |
| Reserved Distribution - Litigation Trust Interests (%) | | 3.06% | |
| x % of Designated Property Distributed to Indenture Trustees | | 50.00% | |
| less: Law Debenture Escrow Distribution - Litigation Trust Interests (%) | | 0.30% | |
| **DBTCA Escrow Distribution - Litigation Trust Interests (%)** | | **1.24%** | |
| | | | |
| **Litigation Trust Distribution** | | | |
| Reserved Distribution - Litigation Trust Interests (%) | | 3.06% | |
| less: Law Debenture Escrow Distribution - Litigation Trust Interests (%) | | 0.30% | |
| less: DBTCA Escrow Distribution - Litigation Trust Interests (%) | | 1.24% | |
| **Remaining Amount to Litigation Trust - Litigation Trust Interests (%)** | | **1.53%** | |

*Note: Model assumes that Litigation Trust Interests distributed to Indenture Trustees for fee claims are distributed to each Indenture Trustee's Senior Noteholders*

## AMENDMENT EXHIBIT A

TRIBUNE LITIGATION TRUST
c/o Marc S. Kirschner, Trustee
1120 Park Avenue, Apt. 18A
New York, NY 10128

[DATE]

Wilmington Trust, National Association
Global Capital Markets
166 Mercer Street, Suite 2R
New York, NY 10012
Attn:  Mr. Joseph Clark

Re:  Custody Agreement for Segregated Account Holding Non-Trust Assets

Dear Mr. Clark:

Reference is made to that certain Custody Agreement for Segregated Account Holding Non-Trust Assets, dated December 31, 2012 (the "Custody Agreement"), by and among the Tribune Litigation Trust (the "Litigation Trust") and Wilmington Trust, National Association ("Wilmington").[1]  Pursuant to Sections III and IV of the Custody Agreement, I hereby instruct Wilmington to deliver to The Depository Trust Company ("DTC") a letter in the form attached hereto as Attachment A (the "DTC Letter") authorizing DTC to remove all of the Designated Debentures  (*i.e.,* $38,365,000 in principal amount of CUSIP#: 88ESC5AB0) from its account (the "Instruction").  Upon Wilmington's delivery to DTC of the DTC Letter, the Designated Debentures held by Wilmington pursuant to Section II of the Custody Agreement shall be deemed cancelled.  I am on this date delivering a letter in the form attached hereto as Attachment B to Deutsche Bank Trust Company Americas and Law Debenture Trust Company of New York, in their capacity as successor indenture trustees, confirming that no future distributions from the Litigation Trust are to be made to Wilmington on account of the Designated Debentures.

In accordance with Section IV(f) of the Custody Agreement, the Litigation Trust hereby agrees to indemnify Wilmington, its directors, officers, employees and agents (collectively, the "Indemnified Parties"), and hold the Indemnified Parties harmless from any and against all liabilities, losses, actions, suits or proceedings at law or in equity, and any other expenses, fees or charges of any character or nature, including without limitation, reasonable attorney's fees and expenses, which an Indemnified Party may incur or with which it may be threatened by reason of Wilmington's carrying out the Instruction, including any liabilities, losses, suits, proceedings, expenses, fees, or charges that the Indemnified Parties may incur by reason of the

---

[1] Unless other defined herein, capitalized terms used in this direction letter shall have the meanings assigned to such terms in the Custody Agreement.

3175574.1

indemnification set forth in the DTC Letter, except to the extent the same shall be caused by Wilmington's gross negligence or willful misconduct.

Sincerely,


Marc S. Kirschner
Litigation Trustee, Tribune Litigation Trust

Attachments

2



Wilmington Trust FSB
166 Mercer Street, Suite 2R
New York, NY 10012-3249
Tel: +212 941-4400
Fax: +212 343-1079
www.wilmingtontrust.com

## ATTACHMENT A

Date: _____

Depository Trust & Clearing Corp.
55 Water Street
New York, NY 10041
Attn: Mandatory Reorganization Department

      Re: Tribune Co. Escrow in Default 7/1/2023   CUSIP#: 88ESC5AB0

Dear Mr. Edward Lopez:

Please accept this letter as our authorization to remove from our account $38,365,000 principal amount of the above referenced CUSIP from our position, and cancel that position.  We are participant 0990.

Wilmington Trust National Association hereby agrees to jointly and severally indemnify and defend DTC and Cede & Co., and each of their respective subsidiaries and affiliates, officers, directors, employees, agents and attorneys, (the "Indemnitees") against, and hold the Indemnitees harmless from, any Losses[1] and Legal Actions[2] suffered or incurred by the Indemnitees resulting from, relating to, arising out of or in connection with our request to remove the $38,365,000 principal amount of the above referenced CUSIP from our position (the "Request"), except as a result of the Indemnitees' willful misconduct or gross negligence or fraud.  By way of example but not by way of limitation, this indemnity applies to Legal Actions between and/or among Wilmington Trust National Association and/or Indemnitees.

Wilmington Trust National Association represents and warrants that we are duly authorized to execute this indemnity.

Sincerely,

Place Medallion Signature Guarantee State Here

Name: Joseph Clark
Title: Vice President
Company Name: Wilmington Trust National Association
Phone #: 212-941-4439
E-mail: jhclark@wilmingtontrust.com

---

[1] "Losses" means and includes all losses, liabilities, damages, judgments, liabilities, payments, obligations, costs and expenses (including, without limitation, any costs of investigation and legal fees and expenses incurred in connection with, resulting from, relating to, arising out of or in connection with the Request), regardless of whether or not any liability, payment, obligation or judgment is ultimately imposed against the Indemnitees.
[2] "Legal Action" means and includes any claim, counterclaim, demand, action, suit, countersuit, arbitration, inquiry, proceeding or investigation before any federal, state or foreign court or other tribunal, or any investigative or regulatory agency or self regulatory organization.

ATTACHMENT B

TRIBUNE LITIGATION TRUST
c/o Marc S. Kirschner, Trustee
1120 Park Avenue, Apt. 18A
New York, NY 10128

[DATE]

Deutsche Bank Trust Company Americas, as Successor Trustee
c/o Deutsche Bank National Trust Company
Trust & Agency Services
100 Plaza One, 6th Floor, Mailstop JCY03-0699
Jersey City, NJ 07311
Attn:  Messrs. Stanley Burg and Rodney Gaughan

Law Debenture Trust Company of New York, as Successor Trustee
400 Madison Avenue, Suite 4D
New York, NY 10017
Attn:  Mr. James Heaney

       Re:  Stipulation in Aid of Implementation of Senior Noteholder
           Distributions Pursuant to Confirmed DCL Plan

Dear Sirs:

Reference is made to that certain Stipulation in Aid of Implementation of Senior Noteholder
Distributions Pursuant to Confirmed DCL Plan, effective December 31, 2012, as amended by
Amendment to Stipulation in Aid of Implementation of Senior Noteholder Distributions Pursuant
to Confirmed DCL Plan, effective May __, 2016 (together, the "Amended Stipulation").[1]  This
letter confirms that, pursuant to paragraph 9 (as amended) of the Amended Stipulation, I am
delivering on this date a letter in the form attached hereto instructing Wilmington Trust, National
Association ("Wilmington"), acting as the Escrow DTC Participant, to deliver to The Depository
Trust Company ("DTC") a letter authorizing DTC to remove the Designated Debentures (*i.e.,*
$38,365,000 in principal amount of CUSIP#: 88ESC5AB0) from Wilmington's account and
cancel the Designated Debentures.  This letter further confirms that no future distributions from
the Litigation Trust are to be made to Wilmington on account of the Designated Debentures.  For
the avoidance of doubt, the Class 1E Litigation Trust Interests or proceeds thereof allocable to
the Designated Debentures will not be canceled but will instead be distributed in accordance with
paragraphs 7 and 8 (as amended) of the Amended Stipulation.

---

[1] Unless other defined herein, capitalized terms used in this direction letter shall have the meanings assigned to such
terms in the Amended Stipulation.

Sincerely,


Marc S. Kirschner
Litigation Trustee, Tribune Litigation Trust

Attachment

Cc:  David J. Adler, Esq.
       McCarter & English LLP

       David S. Rosner, Esq.
       Kasowitz, Benson, Torres & Friedman LLP

       Mr. Joseph Clark
       Wilmington Trust, National Association

<u>**EXHIBIT C**</u>

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY, <u>et al.</u>,[1]<br>(f/k/a Tribune Company) | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Related to Docket Nos. 12072, 12074, 12601, 12726, and 12734** |

**MOTION OF THE LITIGATION TRUSTEE FOR THE TRIBUNE LITIGATION
TRUST FOR AN ORDER (A) PURSUANT TO SECTION 13.3.3 OF THE
DCL PLAN AND FED. R. BANKR. P. 9019(a) AUTHORIZING ENTRY INTO
SETTLEMENT AGREEMENT WITH MORGAN STANLEY CAPITAL SERVICES LLC
AND MORGAN STANLEY & CO. LLC AND (B) APPROVING AMENDMENT
TO STIPULATION IN AID OF IMPLEMENTATION OF SENIOR NOTEHOLDER
<u>DISTRIBUTIONS PURSUANT TO CONFIRMED DCL PLAN</u>**

Marc S. Kirschner, as Litigation Trustee for the Tribune Litigation Trust (the "<u>Litigation</u>

<u>Trustee</u>"),[2] by and through his undersigned counsel, hereby submits this motion (the "<u>Motion</u>")

for entry of an order in the form submitted herewith (a) pursuant to Section 13.3.3 of the DCL

Plan and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"),

authorizing the Litigation Trustee to settle certain Preserved Causes of Action against Morgan

Stanley Capital Services LLC f/k/a Morgan Stanley Capital Services Inc. ("<u>MSCS</u>") and Morgan

Stanley & Co. LLC f/k/a Morgan Stanley & Co. Incorporated ("<u>Morgan Stanley</u>," and together

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are:  Tribune Media Company (0355); Chicago Tribune Company, LLC (3437); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); KTLA, LLC (3404); KWGN, LLC (5347); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); Tribune CNLBC, LLC (0347); Tribune Content Agency, LLC (2931); Tribune Media Services, LLC (1080); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191).  The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the DCL Plan, as defined below.

with MSCS, the "Morgan Stanley Parties") pursuant to that certain Settlement Agreement, dated
April 25, 2016, attached hereto as Exhibit 1 (the "Settlement Agreement"); and (b) approving an
amendment (the "Amendment"), substantially in the form attached to the Settlement Agreement
as Exhibit B, to that certain Stipulation in Aid of Implementation of Senior Noteholder
Distributions Pursuant to Confirmed DCL Plan (the "MSCS Stipulation"), which had been
entered into by the Debtors, the Creditors' Committee, Deutsche Bank Trust Company Americas
("DBTCA"), in its capacity as successor indenture trustee, Law Debenture Trust Company of
New York ("Law Debenture," together with DBTCA, the "Indenture Trustees"), in its capacity
as successor indenture trustee, and MSCS.  In support of this Motion, the Litigation Trustee
respectfully states as follows:

<div align="center">**STATUS OF THE CASE AND JURISDICTION**</div>

1.      On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and
certain of its subsidiaries (collectively, the "Debtors") each filed a voluntary petition for relief
under chapter 11 of the Bankruptcy Code.  An additional Debtor, Chicago National League Ball
Club, LLC (n/k/a Tribune CNLBC, LLC) filed a voluntary petition for relief under chapter 11 of
the Bankruptcy Code on October 12, 2009.  The chapter 11 cases were consolidated for
procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule
1015(b).

2.      On July 23, 2012, the Bankruptcy Court entered an Order [Docket No. 12074]
(the "Confirmation Order") confirming the Fourth Amended Joint Plan of Reorganization for
Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of
Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and
JPMorgan Chase Bank, N.A. [Docket No. 12072] (the "DCL Plan").  The DCL Plan became
effective in accordance with its terms on December 31, 2012 (the "Plan Effective Date").

<div align="center">2</div>

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, which jurisdiction was retained pursuant to Article IX of the Confirmation Order and

Article XII of the DCL Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal

predicates for the relief requested herein are Section 13.3.3 of the DCL Plan and Bankruptcy

Rule 9019.

## BACKGROUND OF THE MOTION

### The Swap Agreement and MSCS Setoff

4.      On or about December 19, 1994, MSCS and The Times Mirror Company, a

predecessor to Tribune, entered into an interest rate swap in respect of a $100 million notional

amount, which swap was memorialized in an ISDA Master Agreement, dated as of August 5,

1994, and a Confirmation to such agreement, dated as of December 19, 1994 (together, the

"Swap Agreement").

5.      On April 17, 2006, Morgan Stanley purchased $9.5 million (face value) of

Tribune 7.5% debentures due July 1, 2023 ("Tribune Debentures"), for $9.8 million.  On

April 11 and April 15, 2008, Morgan Stanley made two additional purchases of Tribune

Debentures totaling $18,865,000 (face value) for a total of $7,840,000.  On April 21, 2008,

Morgan Stanley transferred those debentures to MSCS.  Four days earlier, on April 17, 2008,

Morgan Stanley transferred to MSCS the $9,500,000 (face value) of Tribune Debentures that

Morgan Stanley had purchased in April 2006.  On November 20, 2008, Morgan Stanley

purchased an additional $5,000,000 (face amount) of Tribune Debentures for $601,041.  Morgan

Stanley transferred those debentures to MSCS on the same day.  On November 26, 2008,

Morgan Stanley purchased an additional $5,000,000 (face amount) of Tribune Debentures for

$644,795.  On March 20, 2009 Morgan Stanley transferred those debentures to MSCS.  In total,

3188243.2

Morgan Stanley purchased and transferred to MSCS an aggregate of $38,365,000 in face value of Tribune Debentures (the "Designated Debentures").[3]

6.        On October 17, 2006, Morgan Stanley was engaged by Tribune as a financial advisor to the Special Committee of Tribune's Board of Directors in connection with "(i) a possible sale, merger or other strategic business combination involving a change of control of the Company . . . or (ii) a potential recapitalization or restructuring plan . . . for Tribune, including any potential spin-off, split-off or significant asset sale program involving a Tribune business."

7.        On or about November 10, 2008, the Company engaged Morgan Stanley to provide financial advisory services relating to a possible bankruptcy filing by the Company. Further, on November 30, 2008, Morgan Stanley and Tribune executed an indemnification letter that confirmed Tribune engaged Morgan Stanley "to advise [Tribune] in connection with certain restructuring matters commencing on November 10, 2008" (the "Indemnity Agreement").

8.        Tribune filed for bankruptcy on December 8, 2008.  The bankruptcy filing was an "Event of Default" under the terms of the Swap Agreement.  By letter dated December 9, 2008, MSCS notified Tribune that MSCS was designating December 9, 2008 as the Early Termination Date with respect to the Swap Agreement. By letter dated December 18, 2008, MSCS informed Tribune that it had set off the full $38,365,000 face value of the Designated Debentures (the "MSCS Setoff") against the amount MSCS had determined, as the non-defaulting party under the Swap Agreement, it owed Tribune – an amount that MSCS, by letter dated March 20, 2009, corrected to $51,945,000 (the "Termination Amount").  On May 29, 2009, MSCS paid Tribune $9,500,000 in partial satisfaction of the amount owing under the Swap Agreement.

---

[3] The purchase amounts set forth in this paragraph are based on the allegations contained in paragraphs 364 and 366-67 of the *FitzSimons* Complaint, as defined below.

9.      On or about June 12, 2009, MSCS filed with this Court Proof of Claim No. 5027 against Tribune asserting various claims arising from and relating to the terms and conditions of the Swap Agreement, the Designated Debentures, the MSCS Setoff, and the Indemnity Agreement.[4]  On or about June 12, 2009, Morgan Stanley filed Proof of Claim No. 5034 against Tribune asserting its own claims for indemnification under the Indemnity Agreement. On or about January 30, 2013, MSCS filed with this Court Proof of Claim No. 7161 and Morgan Stanley filed Proof of Claim No. 7162, which amended Claim Nos. 5027 and 5034, respectively, by asserting claims for damages resulting from the potential rejection of the Indemnity Agreement by the terms of the DCL Plan.  Claim Nos. 5027 and 7161 are hereafter collectively referred to as the "Swap-Related Proofs of Claim." Claim Nos. 5034 and 7162 are hereafter collectively referred to as the "Indemnity Proofs of Claim."

10.      The Debtors and the Creditors' Committee disputed the validity of the MSCS Setoff and allowance of the Swap-Related Proofs of Claim.  They also disputed the allowance of the Indemnity Proofs of Claim.  In any event, the Designated Debentures have not been cancelled and the position remains open at The Depository Trust Company ("DTC").

**The Swap-Related Litigation Between Tribune and the Morgan Stanley Parties**

11.      On November 1, 2010, the Creditors' Committee, on behalf of the Debtors' chapter 11 estates, filed a complaint in this Court styled *The Official Committee of Unsecured Creditors of Tribune Company, on behalf of Tribune Company, et al. v. Dennis J. FitzSimons, et al.,* No. 10-54010 (KJC) (Bankr. D. Del. Nov. 1, 2010) (the "*FitzSimons* Action") against certain of Tribune's officers and directors, its controlling shareholders, numerous financial advisors, MSCS, and thousands of former shareholders.  Among other things, the *FitzSimons* Action

---

[4] On or about March 2, 2011, Morgan Stanley filed Proof of Claim No. 6708, asserting claims relating to the rejection of the engagement letter between Tribune and Morgan Stanley dated October 17, 2006.  This claim is not part of or subject to the Settlement Agreement or this Motion.

challenges the validity of the MSCS Setoff and seeks to equitably subordinate any claims MSCS may have against the Debtors.  The gravamen of these claims is that Morgan Stanley, while in possession of material non-public information concerning Tribune's financial condition and bankruptcy plans, purchased Tribune's publicly traded debt at a steep discount, with the intent to transfer the debt to MSCS, and that MSCS, in breach of the covenant of good faith and fair dealing inherent in the Swap Agreement, then set off the full face value of the debt against the amount MSCS owed to Tribune under the Swap Agreement in the event of Tribune's bankruptcy.  Morgan Stanley and MSCS vigorously dispute the validity of each of these claims.

12.     The *FitzSimons* Action was transferred to the United States District Court for the Southern District of New York (the "<u>District Court</u>") for inclusion in the coordinated proceedings under 28 U.S.C. § 1407 (the "<u>MDL</u>"), where it is presently being prosecuted by the Litigation Trustee before the Honorable Richard J. Sullivan.[5]  The Litigation Trustee has filed the Fifth Amended Complaint in the *FitzSimons* Action (the "<u>*FitzSimons* Complaint</u>"), which includes allegations at paragraphs 16, 91, 361-69, 372-75, 568-75, 580-82, and 585-607 concerning the Swap Agreement, the Designated Debentures, the purchase of the Designated Debentures by Morgan Stanley, the transfer of the Designated Debentures to MSCS, the MSCS Setoff, and Morgan Stanley's role as a financial advisor to Tribune in 2008 in connection with a possible bankruptcy filing (the "<u>Swap-Related Allegations</u>").  Based on the Swap-Related Allegations, the *FitzSimons* Complaint asserts claims against the Morgan Stanley Parties in Counts 24, 25 (the portion relating to Morgan Stanley's purchase and/or transfer of the Designated Debentures), 26, 27, 28, 29, and 30 (collectively, the "<u>Swap-Related Claims</u>").[6]  Due

---

[5] Pursuant to Section 1.1.138 of the DCL Plan, the claims against the Morgan Stanley Parties in the *FitzSimons* Action are Preserved Causes of Action, to be prosecuted by the Tribune Litigation Trust.

[6] The *FitzSimons* Complaint also includes claims against Morgan Stanley relating to, *inter alia*, Morgan Stanley's role as advisor to Tribune and its Special Committee leading up to the leveraged buyout of Tribune's shares,

to the pendency of the *FitzSimons* Action, claims on account of the Designated Debentures held

by MSCS are Disputed Claims under the DCL Plan.

**The MSCS Stipulation**

13.     In the event of a determination that the MSCS Setoff is not valid, MSCS would

own the Designated Debentures and, accordingly, would hold disputed Senior Noteholder

Claims with respect to those debentures (the allowance, disallowance, or subordination of which

would be separately determined).

14.     On November 19, 2012, this Court entered an Order [Docket No. 12734]

approving the MSCS Stipulation.  Among the stated purposes of the MSCS Stipulation was to

establish (i) a procedure for ensuring that MSCS does not receive a distribution on account of

any Senior Noteholder Claims it holds for its own account unless and until it is determined that

such Senior Noteholder Claims are Allowed Claims and entitled to a distribution pursuant to

Section 3.2.5(c) of the DCL Plan, and (ii) a formula and procedure for calculation and

distribution of reserved amounts pending adjudication or resolution of the validity of the MSCS

Setoff and/or the allowability of the Senior Noteholder Claims held by MSCS.

15.     In order to implement and execute the terms of the MSCS Stipulation, MSCS,

DBTCA, Law Debenture, and the Litigation Trustee also executed a certain Escrow Agreement,

effective as of the Plan Effective Date (the "Escrow Agreement"), designating the Litigation

Trustee as Escrow Agent.  Pursuant to the terms of the MSCS Stipulation, the Litigation Trustee

was authorized and directed to establish a segregated account (the "Escrow Account") to receive

and hold in escrow (a) the Designated Debentures, (b) distributions under the DCL Plan on

---

including claims for professional malpractice, breach of fiduciary duty, and aiding and abetting breach of fiduciary
duty, among others.  These claims against Morgan Stanley are asserted at Counts 1, 20, 21, 22, 23, 25 (the portion
relating to Morgan Stanley's conduct other than its purchase and/or transfer of the Designated Debentures), and 31
of the *FitzSimons* Complaint, are not part of or subject to the Settlement Agreement or this Motion, and will
continue to be prosecuted by the Litigation Trustee.

account of the Designated Debentures (consisting of cash and Class 1E Litigation Trust

Interests), and (c) any future distributions with respect to the Designated Debentures or the Class

1E Litigation Trust Interests held in the Escrow Account.

16.     Also pursuant to the terms of the MSCS Stipulation, the Designated Debentures

and $12,628,518.81 (the "Escrow Amount") were delivered to the Escrow Account.  The Escrow

Amount represents that portion of the Initial Distribution made on account of the Senior

Noteholder Claims, in accordance with Section 7.7 of the DCL Plan, that is allocable to the

Designated Debentures, less MSCS's *pro rata* portion of certain fees and expenses.  The Escrow

Amount is not part of, and is segregated from, the Litigation Trust Assets.  The Escrow Account

was to be held in reserve, in accordance with Section 3.2.5(c) of the DCL Plan, pending a

determination of the allowance of MSCS's Senior Noteholder Claims and MSCS's entitlement to

distributions under the DCL Plan or in respect of Litigation Trust Interests.  The MSCS

Stipulation provides for the disposition of the Escrow Account in the event of, *inter alia*, the

entry of an order approving a settlement between the Litigation Trustee and MSCS, the terms of

which provide that the MSCS Setoff is valid, in whole or in part.

**Settlement Discussions**

17.     After an initial meeting in mid-March 2015, the Morgan Stanley Parties and the

Litigation Trustee engaged in a series of settlement discussions, with multiple proposals and

counterproposals being exchanged and considered over the course of a year.

18.     On April 25, 2016, after a year of negotiations focusing on the Swap-Related

Claims, the Swap-Related Allegations, the Swap-Related Proofs of Claim, and the Escrow

Account, the parties agreed to enter into the Settlement Agreement.

## **RELIEF REQUESTED**

19.     Pursuant to Section 1.1.138 of the DCL Plan, the Swap-Related Claims against the Morgan Stanley Parties are Preserved Causes of Action.  Pursuant to Section 13.3.3 of the DCL Plan, "Bankruptcy Court authority must be obtained to settle, dispose of or abandon any affirmative Preserved Causes of Action where the stated face amount in controversy exceeds $5,000,000."

20.     By this Motion, the Litigation Trustee respectfully requests that the Court enter an order, in the form submitted herewith, approving the Settlement Agreement (attached hereto as Exhibit 1) and the Amendment (attached to the Settlement Agreement as Exhibit B), in all respects and authorizing the Litigation Trustee to carry out the terms of the Settlement Agreement and Amendment and take all other actions necessary or desirable to implement their provisions.

**The Settlement Agreement**

21.     The Settlement Agreement has the following principal terms:

- <u>Settlement Amount</u>.  Within three business days of the date the order of this Court approving the Settlement Agreement becomes a final, non-appealable order (the "<u>Effective Date</u>"), MSCS shall pay the Litigation Trustee, by wire transfer in same-day funds, $23,700,000, (the "<u>Settlement Payment</u>").

- <u>Waiver of Claims</u>.  Within three business days after the Effective Date, MSCS shall be deemed to have forever waived, relinquished, forfeited, and abandoned to the Litigation Trustee any claim to all property in the Escrow Account or held by the Litigation Trustee as Escrow Agent, including the Designated Debentures, the Escrow Amount, any interest or dividends that have accrued on the Escrow Amount that have not been used to pay the costs of the Escrow Agent, all other distributions under the DCL Plan on account of the Designated Debentures (consisting of cash or Class 1E Litigation Trust Interests), and any other distributions with respect to the Designated Debentures or the Class 1E Litigation Trust Interests held in the Escrow Account or by the Litigation Trustee as Escrow Agent.

9

- <u>Dismissal of Swap-Related Claims</u>.  Simultaneously with the execution of the Settlement Agreement, the parties shall execute a stipulation, in the form attached as Exhibit A to the Settlement Agreement, (i) dismissing with prejudice the Swap-Related Claims asserted in the *FitzSimons* Complaint, and (ii) providing that the Swap-Related Allegations shall not be deemed repeated and realleged in the remaining counts of the *FitzSimons* Complaint against Morgan Stanley or any of its affiliates and shall not be used or referred to in any filings or further proceedings in the *FitzSimons* Action (except to note that they have been settled and dismissed), with each party bearing its own costs, expenses, and attorneys' fees (the "<u>Stipulation of Dismissal</u>").  Attorneys for the Morgan Stanley Parties shall hold the fully executed Stipulation of Dismissal in escrow pending receipt by the Litigation Trustee of the Settlement Payment.  Upon receipt by the Litigation Trustee of the Settlement Payment, attorneys for the Morgan Stanley Parties are authorized to submit the Stipulation of Dismissal to the District Court.

- <u>Withdrawal of Swap-Related Proofs of Claim</u>.  Promptly after the execution of the Settlement Agreement, the Morgan Stanley Parties shall move this Court for an order, pursuant to Bankruptcy Rule 3006, authorizing withdrawal of the Swap-Related Proofs of Claim with prejudice, such withdrawal to be conditioned and effective upon the occurrence of the Effective Date.

- <u>Cancellation of the Designated Debentures</u>.  Within three business days after the Effective Date, the Litigation Trustee as Escrow Agent shall deliver a letter instructing Wilmington Trust, National Association ("Wilmington"), a DTC participant acting as custodian of the Designated Debentures, to deliver a letter authorizing DTC to remove the Designated Debentures from Wilmington's account and cancel the Designated Debentures.

- <u>Litigation Trustee Release of Certain Claims</u>.  Upon the Effective Date, the Litigation Trustee and the Litigation Trust, and each of their predecessors, successors, and assigns, including, without limitation, the Debtors (the "<u>Litigation Trust Releasors</u>"), shall fully and forever release and discharge the Morgan Stanley Parties, and each of their respective past and present officers, directors, employees, affiliates, agents, representatives, attorneys, parents, subsidiaries, partners, predecessors, successors, and assigns, from any and all claims, demands, losses, costs, damages, actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, liabilities, and obligations solely arising out of or relating, directly or indirectly, to the Swap Agreement, the Designated Debentures, the MSCS Setoff, the Swap-Related Claims, and/or the Swap-Related Proofs of Claim, at law or in equity, which the Litigation Trust Releasors ever had or now have, whether known or unknown, from the beginning of the world through the date of the Settlement Agreement.

- <u>Morgan Stanley Parties Release of Certain Claims</u>.  Upon the Effective Date, the Morgan Stanley Parties, and each of their respective predecessors, successors, and assigns (the "<u>Morgan Stanley Releasors</u>"), shall fully and forever release and

discharge the Litigation Trustee, the Litigation Trust, the Litigation Trust Advisory Board, and the Escrow Agent, and each of their past and present beneficiaries, members, officers, directors, employees, affiliates, agents, representatives, attorneys, predecessors, successors, and assigns, including, without limitation, the Debtors, from any and all claims, demands, losses, costs, damages, actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, liabilities, and obligations solely arising out of or relating, directly or indirectly, to the Swap Agreement, the Designated Debentures, the MSCS Setoff, the Swap-Related Claims, and/or the Swap-Related Proofs of Claim, at law or in equity, which the Morgan Stanley Releasors ever had or now have, whether known or unknown, from the beginning of the world through the date of the Settlement Agreement. In addition, Morgan Stanley waives, and agrees not to pursue, any indemnification claims under the Indemnity Proofs of Claim related to the Swap Agreement, the Designated Debentures, the MSCS Setoff, the Swap-Related Claims, the Swap-Related Allegations, and/or the Swap-Related Proofs of Claim.

- <u>Amendment to the MSCS Stipulation</u>.  Simultaneously with the execution of the Settlement Agreement, MSCS shall execute the Amendment.

22.     The Amendment is necessitated by the fact that the MSCS Stipulation currently provides for the disposition of the Escrow Account in the event of the entry of an order approving a settlement between the Litigation Trustee and MSCS, the terms of which provide that the MSCS Setoff is valid, in whole or in part.  However, the Settlement Agreement takes a different approach to resolving the claims in the *FitzSimons* Action against MSCS:  It provides for the Escrow Amount and other property to be relinquished by MSCS to the Litigation Trustee in their entirety, without addressing the validity of the MSCS Setoff.

23.     The purpose of the Amendment is to ensure that this resolution is treated in a manner consistent with the intent and purpose of the DCL Plan and the MSCS Stipulation so as to fairly and reasonably allocate the property relinquished by MSCS as between the Litigation Trustee, on the one hand, for distribution in accordance with the Litigation Trust Distribution Schedule (the "<u>LT Distribution Schedule</u>") attached as Exhibit C to the Litigation Trust

11

Agreement, and the Litigation Trustee acting as Escrow Agent, on the other hand, for

distribution to the Indenture Trustees.[7]

24.     In particular, the Amendment provides that the Escrow Amount, any interest or

dividends that have accrued on the Escrow Amount that have not been used to pay the costs of

the Escrow Agent, all other distributions under the DCL Plan on account of the Designated

Debentures (consisting of cash or Class 1E Litigation Trust Interests), and any other distributions

with respect to the Designated Debentures or the Class 1E Litigation Trust Interests held in the

Escrow Account or by the Litigation Trustee as Escrow Agent, shall be allocated 50% to the

Litigation Trustee, for distribution in accordance with the LT Distribution Schedule, and 50% for

distribution to the Indenture Trustees in accordance with the formulas set forth in Attachments

"C" and "D" to the Amendment.

## BASIS FOR RELIEF REQUESTED

25.     The Court has discretion to approve settlements after notice and a hearing.  *See*

*Myers v. Martin (In re Martin),* 91 F.3d 389, 395 n.2 (3d Cir. 1996).  The procedure for

approving a settlement in bankruptcy is set forth by Bankruptcy Rule 9019, which provides, in

relevant part:

> On motion by the trustee and after notice and a hearing, the court
> may approve a compromise or settlement.  Notice shall be given to
> creditors, the United States trustee, the debtor, and indenture
> trustees as provided in Rule 2002 and to any other entity as the
> court may direct.

---

[7] The original signatories to the MSCS Stipulation, which was executed and approved prior to the Plan Effective Date, consisted of the Debtors, the Creditors' Committee, the Indenture Trustees, and MSCS.  Pursuant to Section 15.2 of the DCL Plan, the appointment of the Creditors' Committee terminated on the Plan Effective Date, except for certain limited purposes not relevant here.  Pursuant to Section 13.2.1 of the DCL Plan, all of the Litigation Trust Assets, as well as the rights and powers of the Debtors' Estates applicable to the Litigation Trust Assets, automatically vested in the Litigation Trust on the Plan Effective Date.  Although not a signatory to the MSCS Stipulation, the Litigation Trustee would be a signatory to the Amendment by virtue of the establishment of the Litigation Trust for the purpose of administering the Litigation Trust Assets and making all distributions on account of the Litigation Trust Interests as provided for under the DCL Plan.

Fed. R. Bankr. P. 9019(a).

26.      Approval of a proposed settlement is within the "sound discretion" of the

bankruptcy court. *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*,

336 B.R. 87, 92 (Bankr. D. Del. 2005).  In determining whether to approve a settlement pursuant

to Rule 9019, a bankruptcy court is required to "assess and balance the value of the claim that is

being compromised against the value to the estate of the acceptance of the compromise

proposal." *Martin,* 91 F.3d at 393.  The bankruptcy court will consider four criteria in applying

this balancing test:  "(1) the probability of success in the litigation; (2) the likely difficulties in

collection; (3) the complexity of the litigation involved, and the expense, inconvenience and

delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.* (*citing*

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414,

424-25 (1968); *In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 803 (E.D. Pa. 1986)); *see*

*also In re Marvel Entm't Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998) (relying on the same

four factors to determine the fairness, reasonableness, and adequacy of a settlement); *In re*

*Northwestern Corp.*, No. 03-12872, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008)

(Carey, J.) (same).  "The court must also consider 'all other factors relevant to a full and fair

assessment of the wisdom of the proposed compromise.'" *Marvel,* 222 B.R. at 249 (citing *TMT*

*Trailer,* 390 U.S. at 424).  The ultimate inquiry is whether, in the court's discretion, the

compromise embodied in the settlement "is fair, reasonable, and in the best interest of the

estate." *In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1977).

27.      In this case, the value to the Tribune Litigation Trust from the acceptance of the

Settlement Agreement represents a substantial percentage of the maximum amount that the

Litigation Trust could have obtained by prosecuting the Swap-Related Claims to completion.

13

The Litigation Trustee believes the settlement is justified for a number of reasons. First, the Litigation Trustee's probability of success in litigation with the Morgan Stanley Parties with respect to the Swap-Related Claims and Swap-Related Proofs of Claim is uncertain. While the Litigation Trustee is confident that his position would be sustained in litigation respecting those claims, he recognizes that proceeding to judgment carries risks that the Litigation Trustee might obtain an unfavorable result.

28.     On May 23, 2014, the Morgan Stanley Parties filed a motion in the District Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seeking dismissal of, *inter alia*, the Swap-Related Claims. The brief submitted by the Morgan Stanley Parties in support of the dismissal of the Swap-Related Claims (11 MD 2296 ECF 5952, at 18-29), and the opposing brief of the Litigation Trustee with respect to those claims (11 MD 2296 ECF 6130, at 64-68, 71-84), demonstrate the complexity and contested nature of the claims at issue.[8] By contrast, the compromise embodied in the Settlement Agreement represents, in the Litigation Trustee's view, a favorable resolution of the parties' mutual claims surrounding the Swap Agreement and MSCS Setoff that eliminates any such risks and secures a near-term cash benefit for the Litigation Trust and its beneficiaries.

29.     As a result of the settlement, the Litigation Trustee currently anticipates distributing approximately $20 million to the trust beneficiaries in accordance with the LT Distribution Schedule, and approximately $6.3 million of the Escrow Amount to the Indenture Trustees in accordance with the Amendment.

---

[8] The Morgan Stanley Parties' motion is *sub judice*. Any grant of the motion would be subject to appeal, and any denial of the motion would still require the Litigation Trustee to prove his claims by summary judgment or at trial. Moreover, absent the proposed settlement, the parties would still be required to litigate the Swap-Related Proofs of Claim and the Litigation Trustee's objections thereto.

30.     The value of a near-term resolution is especially heightened in this case because the Swap-Related Claims represent a relatively small, and *sui generis*, component of the MDL pending in the District Court, which is still at an early stage.  Absent the pending settlement, it is likely that these claims would not be adjudicated for many years.

31.     Second, the complexity, expense, and inconvenience of litigation also counsel in favor of settlement.  Continued litigation respecting the Swap-Related Claims and Swap-Related Proofs of Claim would inevitably entail substantial additional professional costs to the Litigation Trust, as well as requiring a significant commitment of time and resources on the part of the Litigation Trustee.  And because these claims are factually and legally distinct from the other claims in the MDL, their litigation would entail substantial additional discovery and fact development, and would not fully benefit from the efficiencies typically attending the consolidation of common or similar claims.  The compromise embodied in the Settlement Agreement eliminates the swap-related dispute between the Litigation Trustee and the Morgan Stanley Parties, and enhances the ability of the Litigation Trustee to focus on the other significant claims in the MDL.

32.     Courts generally defer to a trustee's business judgment where there is a legitimate business justification for the trustee's decision.  *Martin*, 91 F.3d at 393; *see also In re Still*, 444 B.R. 520, 523 (Bankr. E.D. Pa. 2010).  Here, the Litigation Trustee, Marc S. Kirschner, has substantial experience dealing with complex litigations such as the claims against the Morgan Stanley Parties.  Mr. Kirschner spent most of his 40-year career as an attorney in private practice specializing in bankruptcy and reorganization, with a heavy emphasis on complex bankruptcy litigation.  From 1987 through January 25, 2001, he was the head of the Bankruptcy and Restructuring Practice, and from January 1, 1997, the Business Practice Group, in the New York

15

office of the global law firm Jones Day.  In addition to serving as Litigation Trustee for the

Tribune Litigation Trust, Mr. Kirschner also was the Liquidation Trustee for the SNTL

Litigation Trust (formerly, Superior National Insurance Group), in Los Angeles, and the Le-

Nature's Liquidation Trust in the Western District of Pennsylvania, and currently is the

Litigation Trustee for matters arising from the Refco Inc. bankruptcy in New York, and the

Litigation Trustee for the Millennium Health Corporate Claim Trust and Lender Claim Trust

recently formed under the plan of reorganization of Millennium Health LLC in Delaware.

Mr. Kirschner is currently Senior Managing Director of Goldin Associates LLC, a restructuring

firm specializing in financial advisory, interim management, litigation support, strategic

valuation, governance, independent monitoring, and fiduciary services.

33.    The Settlement Agreement is the product of arm's-length negotiations between

the parties that took place over an entire year (as well as several additional months in 2009 and

2010) and involved numerous meetings and exchanges between the parties' representatives and

counsel, during which the parties put forth facts, assertions, and legal analyses in support of their

opposing positions.  Throughout the negotiations, the Litigation Trustee was advised by able

counsel, who were fully versed in the complex factual and legal issues involved in the dispute.

The end result of the negotiations is a compromise that the Litigation Trustee believes, in his

business judgment, is fair and reasonable and should be approved by the Court.

## NO PRIOR REQUEST

34.    No previous request for the relief requested in this Motion has been made in this

or any court.

## NOTICE

35.    Notice of this Motion has been provided to (i) the United States Trustee; (ii) the

Reorganized Debtors; (iii) the Indenture Trustees; (iv) the Morgan Stanley Parties; and (v) all

16

other parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule

2002.  In light of the nature of the relief requested, the Litigation Trustee submits that no further

notice need be given.

WHEREFORE, the Litigation Trustee respectfully requests that the Court enter an order,

in the form submitted herewith, authorizing the Litigation Trustee to enter into the Settlement

Agreement, approving the Amendment, and granting such other and further relief as the Court

may deem just and proper.

Dated:  April 25, 2016
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Richard S. Cobb (No. 3157)
James S. Green Jr. (No. 4406)
919 Market Street, Suite 1800
Wilmington, DE  19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
Email: cobb@lrclaw.com
       green@lrclaw.com

-and-

**FRIEDMAN KAPLAN SEILER &
ADELMAN LLP**
Robert J. Lack
Hal Neier
Jeffrey R. Wang
7 Times Square
New York, NY 10036
Telephone: (212) 833-1100
Facsimile: (212) 833-1250
Email: rlack@fklaw.com
      hneier@fklaw.com
      jwang@fklaw.com

*Counsel  for Marc S. Kirschner, as Litigation
Trustee for the Tribune Litigation Trust*

17


## EXHIBIT D

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY, et al.,[1] (f/k/a Tribune Company) | Case No. 08-13141 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Related to Docket Nos. 12072, 12074, 12601, 12726, and 12734** |

## MOTION OF MORGAN STANLEY CAPITAL SERVICES FOR AN ORDER PURSUANT TO FED. R. BANKR. P. 3006 APPROVING WITHDRAWAL OF CERTAIN PROOFS OF CLAIM

Morgan Stanley Capital Services LLC, f/k/a Morgan Stanley Capital Services, Inc., ("MSCS") by and through its undersigned counsel, submits this motion for entry of an order authorizing MSCS to withdraw two proofs of claim MSCS filed in the chapter 11 cases of the Tribune Company (Claim Nos. 5027 and 7161) pursuant to Rule 3006 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and in connection with that certain Settlement Agreement, dated April 25, 2016, among MSCS, Morgan Stanley & Co. LLC f/k/a Morgan Stanley & Co. Incorporated ("Morgan Stanley"), and Marc S. Kirschner, as Litigation Trustee

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are:  Tribune Media Company (0355); Chicago Tribune Company, LLC (3437); Chicagoland Television News, LLC (1352); forsalebyowner.com, LLC (4276); KTLA, LLC (3404); KWGN, LLC (5347); Sun-Sentinel Company, LLC (2684); The Baltimore Sun Company, LLC (6880); Tribune CNLBC, LLC (0347); Tribune Content Agency, LLC (2931); Tribune Media Services, LLC (1080); WGN Continental Broadcasting Company, LLC (9530); WPHL, LLC (6896); WPIX, LLC (0191).  The corporate headquarters and the mailing address for each entity listed above is 435 North Michigan Avenue, Chicago, Illinois 60611.

for the Tribune Litigation Trust[2] (the "Settlement Agreement") that has been submitted to the

Court for approval. In support of this Motion, the MSCS respectfully states as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008, Tribune Company ("Tribune") and certain of its

subsidiaries (collectively, the "Debtors") each filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code.  An additional Debtor, Chicago National League Ball Club,

LLC (n/k/a Tribune CNLBC, LLC) filed a voluntary petition for relief under chapter 11 of the

Bankruptcy Code on October 12, 2009.  The chapter 11 cases were consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

2.      On July 23, 2012, the Bankruptcy Court entered an Order [Docket No. 12074]

(the "Confirmation Order") confirming the Fourth Amended Joint Plan of Reorganization for

Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of

Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and

JPMorgan Chase Bank, N.A. [Docket No. 12072] (the "DCL Plan").  The DCL Plan became

effective in accordance with its terms on December 31, 2012.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, which jurisdiction was retained pursuant to Article IX of the Confirmation Order and

Article XII of the DCL Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal

predicates for the relief requested herein are Section 13.3.3 of the DCL Plan and Bankruptcy

Rule 9019.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the DCL Plan, as defined below.

2

**BACKGROUND**

4.      The full context for the relief requested by this Motion is set forth in the Litigation Trustee's motion seeking approval of the Settlement Agreement (Motion of the Litigation Trustee for the Tribune Litigation Trust for an Order (A) Pursuant to Section 13.3.3 of the DCL Plan and Fed. R. Bankr. P. 9019(a) Authorizing Entry into Settlement Agreement with Morgan Stanley Capital Services LLC and Morgan Stanley & Co. LLC and (B) Approving Amendment to Stipulation in Aid of Implementation of Senior Noteholder Distributions Pursuant to Confirmed DCL Plan), filed with the Court on April 25, 2016. The following is a summary of that background as it relates specifically to the relief requested herein.

5.      In 1994, MSCS and the predecessor to Tribune entered into an ISDA interest rate swap agreement. MSCS terminated the agreement on December 9, 2008, based on the commencement of the chapter 11 cases. As of the date of termination, MSCS owed Tribune $51,945,000. At that time MSCS held $38,365,000 face amount of Tribune Debentures (the "Designated Debentures") that it had acquired prior to the commencement of the chapter 11 cases. MSCS announced it had set off the face amount and accrued interest on those Designated Debentures against its obligations to Tribune under the terminated swap agreement (the "MSCS Setoff") and paid Tribune $9,500,000 in partial satisfaction of the remaining balance. In light of Tribune's dispute of the validity of the MSCS Setoff, MSCS filed a protective proof of claim (Claim No. 5027) based on, among other things, the face amount and accrued interest on the Designated Debentures and an indemnification agreement between Tribune and Morgan Stanley. Claim No. 5027 was subsequently amended by Claim No. 7161 to add claims for damages for potential rejection of the indemnification agreement by the DCL Plan (together with Claim No. 5027, the "Swap-Related Proofs of Claim").

3

6.      On November 1, 2010, the Creditors' Committee, on behalf of the Debtors'

chapter 11 estates, commenced an adversary proceeding in this Court styled *The Official*

*Committee of Unsecured Creditors of Tribune Company, on behalf of Tribune Company, et al. v.*

*Dennis J. FitzSimons, et al.,* No. 10-54010 (KJC) (Bankr. D. Del. Nov. 1, 2010) (the "*FitzSimons*

Action") against certain of Tribune's officers and directors, its controlling shareholders,

numerous financial advisors, MSCS, and thousands of former shareholders. Among other things,

the *FitzSimons* Action challenges the validity of the MSCS Setoff and seeks to equitably

subordinate claims asserted by MSCS in the Swap-Related Proofs of Claim.

7.      The *FitzSimons* Action was transferred to the United States District Court for the

Southern District of New York (the "District Court") for inclusion in the coordinated

proceedings under 28 U.S.C. § 1407 (the "MDL"), where it is presently being prosecuted by the

Litigation Trustee before the Honorable Richard J. Sullivan.[3]  The Litigation Trustee has filed

the Fifth Amended Complaint in the *FitzSimons* Action (the "*FitzSimons* Complaint"). In

particular, Counts 24, 25 (the portion of Count 25 relating to the purchase and/or transfer of the

Designated Debentures), 26, 27, 28, 29, and 30 (collectively, the "Swap-Related Claims") are

directed at MSCS and/or Morgan Stanley.

8.      On final approval by the Court, the Settlement Agreement will, among other

things, finally resolve the Swap-Related Claims and MSCS will be dismissed with prejudice

from the FitzSimons Action (certain claims against Morgan Stanley will remain outstanding).

9.      Under the Settlement Agreement, MSCS and Morgan Stanley release any and all

claims they may have against the Debtors, the Litigation Trust, and related parties arising out of

the swap agreement, the MSCS Setoff, and the Designated Debentures, among other things. In

_____

[3] Pursuant to Section 1.1.138 of the DCL Plan, the claims against MSCS and Morgan Stanley in the *FitzSimons* Action are Preserved Causes of Action, to be prosecuted by the Tribune Litigation Trust.

4

connection with that release, MSCS agreed to move this Court for authority to withdraw, with prejudice, the Swap-Related Proofs of Claim, subject only to the Settlement Agreement becoming effective.

## RELIEF REQUESTED

10.    Pursuant to Bankruptcy Rule 3006, MSCS requests that the Court enter an order authorizing it to withdraw the Swap-Related Proofs of Claim at such time as the Settlement Agreement becomes effective in accordance with its terms.

## BASIS FOR RELIEF REQUESTED

11.    Generally, parties may withdraw proofs of claim as a matter of right. However, Bankruptcy Rule 3006 provides that court authorization for such withdrawal is necessary if "a complaint is filed against [a] creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or otherwise has participated significantly in the case . . . ." And such an order must be "after a hearing on notice to the trustee or debtor in possession, and any creditors' committee elected pursuant to §705(a) or appointed pursuant to §1102 of the Code." Inasmuch as MSCS is a defendant in the *FitzSimons* Action and has participated in these chapter 11 cases, court authorization to withdraw the Swap-Related Proofs of Claim is necessary.

12.    The few courts that have addressed the requirement of Bankruptcy Rule 3006 have looked to the standards that federal courts apply to the dismissal of an action under Rule 41 of the Federal Rules of Civil Procedure. The principal inquiry is whether the debtor will suffer some legal prejudice from the withdrawal of the proof of claim. *See In re Appleseed's Intermediate Holdings, LLC,* 2012 Bankr. LEXIS 5957 (Bankr. D. Del. Dec. 20, 2012); *In re Kaiser Group Int'l,* 272 B.R. 852 (Bankr. D. Del. 2002).

13.    In this case, there is no prejudice. Pursuant to the DCL Plan, the Litigation Trust is the successor to the Debtors in connection with claims against MSCS in the *FitzSimons* Action

5

and dealing with the claims of MSCS under the Swap-Related Proofs of Claim. Under the Settlement Agreement, the Litigation Trust will receive, among other things, $23,700,000 and MSCS's release of its claims against the Debtors, including any interest it has in the funds and other property that would otherwise have been received by MSCS if the Court ultimately allowed its claims under the Swap-Related Proofs of Claim. As part of the overall settlement, the parties agreed that withdrawal of the Swap-Related Proofs of Claim with prejudice would be consistent with the releases granted by MSCS and would reconcile the claims record in these chapter 11 cases. Accordingly, the Settlement Agreement requires MSCS to seek court authorization to withdraw the Swap-Related Proofs of Claim, subject only to the Settlement Agreement becoming effective.

## NO PRIOR REQUEST

14.     No previous request for the relief requested in this Motion has been made in this or any court.

## NOTICE

15.     Notice of this Motion has been provided to (i) the United States Trustee; (ii) the Reorganized Debtors; (iii) the Indenture Trustees; and (iv) the Litigation Trustee. In light of the nature of the relief requested and that the Creditors Committee no longer exists, MSCS submits that no further notice need be given.

WHEREFORE, MSCS respectfully requests that the Court enter an order, in the form submitted herewith, authorizing it to withdraw the Swap-Related Proofs of Claim at such time as the Settlement Agreement becomes effective in accordance with its terms, and granting such other and further relief as the Court may deem just and proper.

6

Dated: Wilmington Delaware
      April \_\_, 2016

Respectfully submitted,

BARNES & THORNBURG LLP

_____
David M. Powlen (DE Bar No. 4978)
Kevin G. Collins (DE Bar No. 5149)
1000 N. West Street, Suite 1500
Wilmington, DE 19801-1050
Telephone:  (302) 300-3434
Facsimile:  (302) 300-3456
david.powlen@btlaw.com
kevin.Collins@btlaw.com

-and-

WEIL, GOTSHAL & MANGES LLP
Michael F. Walsh
Jonathan D. Polkes
Stacy Nettleton
767 Fifth Avenue
New York, NY 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
michael.walsh@weil.com
jonathan.polkes@weil.com
stacy.nettleton@weil.com

*Attorneys for Morgan Stanley Capital
Services LLC, f/k/a Morgan Stanley Capital
Services, Inc.*