IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> TRIBUNE MEDIA COMPANY, *et al.*, <br><br> *Reorganized Debtors.* | Chapter 11 Cases <br> Bankruptcy Case No. 08-13141 (KJC) |
| ROBERT HENKE, <br><br> *Appellant,* <br><br> v. <br><br> TRIBUNE MEDIA COMPANY, *et al.* <br><br> *Appellees.* | Civil Action No. 1:16-cv-00424-RGA |

**MEMORANDUM ORDER**

Presently before me is an appeal filed *pro se* by Robert Henke seeking vacatur of the Bankruptcy Court's Order Sustaining Objection to Claim of Robert Henke and the Opinion related to that Order, both dated May 25, 2016. (D.I. 1-1, 1-2). I have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). Briefing is complete, and the Parties have submitted supplemental letters on the Bankruptcy Court's procedure. (D.I. 18, 19, 20, 28, 29). For the reasons that follow, the order of the Bankruptcy Court is **VACATED**, and the case is **REMANDED** for further consideration consistent with this order.

I. **BACKGROUND**

Mr. Henke's claim stems from an October 7, 2007 article published by the Baltimore Sun ("the Sun") titled *A Modern Day Ahab—In Pursuit of Geologic Immortality, Inventor Robert Henke Has Sacrificed Everything: Comfort, Career, Family* ("the Article"). (*See* D.I. 10-2 at 50-62). The Article appeared on the front page of the Sun and spanned more than two pages of the

Sunday paper. (D.I. 18 at 23). The Sun also published the Article online. (D.I. 10-2 at 50). The Article discusses Mr. Henke's childhood, family life, and career with a focus on his efforts to develop a soil testing technology that predicts how soils will react in an earthquake. (*Id.* at 50-62).

Mr. Henke, proceeding *pro se*, filed a lawsuit against the Sun on October 3, 2008 in the Circuit Court for Baltimore City, Maryland ("Maryland Court"). (D.I. 1-1 at 4; Bankr. D.I. 11931-3, Exh. D (original Complaint)).[1] The Maryland Court received the Complaint on October 7, 2008. (Bankr. D.I. 11931-3, Exh. D). The clerk rejected his submission, however, for failure to follow certain court procedures. (Bankr. D.I. 11931-3, Exh. E). Mr. Henke responded to the clerk's rejection on October 13, 2008 but did not provide a new copy of the Complaint. (Bankr. D.I. 11931-3, Exh. F). The Maryland Court received his response on October 17, 2008. (*Id.*). On December 18, 2008, he learned that the Maryland Court had no record of his case. (D.I. 10-3 at 66). Mr. Henke again submitted his Complaint on December 30, 2008. (*Id.*). The Maryland court docketed Mr. Henke's Complaint on January 12, 2009. (Bankr. D.I. 11792-3).

Meanwhile, on December 8, 2008, the Sun entered Chapter 11 Bankruptcy. (D.I. 19 at 6). The Bankruptcy Court established June 12, 2009 as the final date for individuals holding claims against the Sun to file proofs of claim in the Chapter 11 case. (*Id.* at 7). Mr. Henke filed a proof of claim on June 8, 2009. (Bankr. D.I. 3796-2). He included in his proof of claim various filings from the Maryland Court action and his original Complaint. (*Id.*). The Debtors objected to Mr. Henke's claim on March 19, 2010. (Bankr. D.I. 3796). They argued that Mr.

---

[1] The D.I. numbers for documents filed in the Delaware Bankruptcy Court's docket for Case No. 08-13141 are prefaced by "Bankr. D.I." and the D.I. numbers for documents filed in this Court are prefaced by "D.I."

2


Henke's claim was time-barred under Maryland law and that Mr. Henke had failed to state a claim as a matter of Maryland law. (D.I. 19 at 7-8).

After the Debtors filed their objection, the Parties discussed potential resolution of Mr. Henke's claim and the possibility of allowing the Maryland litigation to go forward. (*Id.* at 8). In March 2012, not having reached a resolution, the Parties agreed to advance the Claim Objection in the Bankruptcy Court. (*Id.*). Mr. Henke filed a new claim with an Amended Complaint and the Debtors maintained their objections. (*Id.* at 9). On July 11, 2012, the Bankruptcy Court held a hearing on the claim objection where the Debtors and Mr. Henke presented oral argument. (Bankr. D.I. 11988; D.I. 10-3 (transcript of hearing)).

During the hearing, the Debtors argued two points. First, they argued that Mr. Henke had not filed his defamation claim within Maryland's one-year statute of limitations period. (D.I. 10-3 at 50). Second, they argued that Mr. Henke failed to state a claim for defamation or fraud. (*Id.* at 51). The Court allowed Mr. Henke to respond. (*Id.* at 58-102). He was under oath for most of his argument. (*Id.* at 64-65). Mr. Henke argued that his claims were not time barred, explaining that he had initially submitted his complaint prior to the close of the limitations period. (*Id.* at 63-77). He also argued that his complaint adequately stated a claim to move past the pleading stage. (*Id.* at 77-93). The Bankruptcy Court allowed the Debtors to cross-examine Mr. Henke following Mr. Henke's argument. (*Id.* at 93-99).

The Bankruptcy Court issued its opinion on May 25, 2016. (D.I. 1-1). The opinion states that it "constitutes the findings of fact and conclusions of law" on the claim. (*Id.* at 1 n.2). The issues the Bankruptcy Court resolved in the opinion are: "(i) whether Mr. Henke's defamation claim is barred by the statute of limitations; (ii) whether Mr. Henke has proven his defamation claims; and (iii) whether Mr. Henke has proven his fraud claims by clear and convincing

evidence." (*Id.* at 8). The Bankruptcy Court found that Mr. Henke's claims were not barred by the statute of limitations, that Mr. Henke failed to prove his defamation claims, that Mr. Henke failed to prove his fraud claim by clear and convincing evidence, that Mr. Henke failed to prove his fraudulent concealment claim, and that Mr. Henke failed to prove his conspiracy claim. (*Id.* at 12, 35-36, 39-40, 41 n.148).

Mr. Henke filed a notice of appeal of the Bankruptcy Court's decision on June 8, 2016. (D.I. 1).

## II.  STATUTE OF LIMITATIONS

The Bankruptcy Court found, and the Appellees do not dispute, that the applicable Maryland statute of limitations did not bar, as a matter of Maryland law, Mr. Henke's defamation claim. (D.I. 1-1 at 8-12). Rather, the Appellees argue, "The relevant issue is not whether the Clerk of the Maryland Circuit Court properly rejected the complaint in October 2008, but whether the corrected complaint filed in January 2009 could relate back to the pre-petition period in light of the imposition of the automatic stay." (D.I. 19 at 25). The Appellees mentioned this possible basis for relief in a single sentence, with no analysis, at the Bankruptcy Court. (Bankr. D.I. 11792 at ¶ 15 ("Because the complaint was filed in violation of the automatic stay, 11 U.S.C. § 362(a), it is void ab initio under applicable bankruptcy law . . . .")). They do not provide much more analysis on appeal. (D.I. 19 at 25-26).

I do not read the Bankruptcy Court's opinion as requiring Mr. Henke to rely on "relation back" to fall within the limitations period. Rather, as the Bankruptcy Court noted, a civil action in Maryland "is commenced by filing a complaint with a court." Md. Rule 2-101. Maryland law deems a complaint filed as of the date it is received by a Maryland Court, not as of the date it is docketed or date stamped. (D.I. 1-1 at 9 (citing *Mole v. Jutton*, 846 A.2d 1035, 1039-40 (Md. 2004) ("[T]he date stamped on a pleading or paper is not necessarily dispositive of the date on

which the pleading or paper was filed.")))). Moreover, in Maryland, a clerical error in the filing of a document is not grounds to deny the filing of a complaint. (*Id.* at 9-11 (collecting cases)).

Therefore, as a matter of Maryland law, the Complaint that the Maryland Court date-stamped January 12, 2009 was actually filed when it was first received by the Maryland Court on October 7, 2008. The Clerk of the Maryland Court's clerical mistakes do not negate that conclusion. The fact that the date stamp on the document which the Maryland Court ultimately filed is after the date of the automatic stay is similarly insignificant.

October 7, 2008 is prior to the automatic stay imposed by the Bankruptcy proceeding. Thus, the Bankruptcy Court properly allow Mr. Henke's claim to go forward.

### III. PROCEDURAL PROPRIETY OF THE BANKRUPTCY COURT'S DISPOSITION OF THE CLAIM

The record indicates that the Parties expected the Bankruptcy Court to resolve Mr. Henke's claims as a matter of law. The strongest support for that conclusion is found in Appellees' own Claim Objection. (Bankr. D.I. 3796 ¶¶ 17-21). There, Appellees outlined two legal bases for disallowing Mr. Henke's claim: the above-mentioned statute of limitations argument and failure to state a claim under Maryland law. (*Id.* at ¶¶ 17-18). The substance of their failure to state a claim argument focused on the allegations in Mr. Henke's complaint and the pleading standard set by Maryland law. (*Id.* at ¶¶ 19-20). Consistent with a failure to state a claim argument, at the July 2012 Hearing, Appellees focused exclusively on the sufficiency of the claims as pled in Mr. Henke's complaint. (D.I. 10-3 at 51-56). Appellees did not reference proof or evidence. (*Id.*). Indeed, they specifically noted the contrary: "The debtors do not intend, obviously, for an evidentiary hearing or for the presentation of anything other than the argument." (*Id.* at 49). Mr. Henke's understanding of the Appellees' objection was, as he stated it at the Hearing, "in the Amended Complaint, I failed to state a claim on which relief can be granted." (*Id.* at 62). He illustrated his understanding of the procedural posture of the

5

proceeding by referencing his plans to establish proof via discovery if his case proceeded. (*Id.* at 77).

The Parties' understanding of how the Bankruptcy Court meant to resolve Mr. Henke's claim has carried through to this appeal. Mr. Henke states that he understood that the Bankruptcy Court would consider Appellees' objection under the same basic standard as a motion to dismiss for failure to state a claim. (D.I. 18 at 6-7). He did not understand that he was expected to provide evidence to prove his claims at or after the Hearing. (*Id.* at 17). He notes that he does not question that the Bankruptcy Court followed proper procedure but argues that the procedure he was given was not the procedure he was due. (*Id.* at 12-21). Appellees' Brief largely ignores the procedural misstep alleged by Mr. Henke. They argue that the Bankruptcy Court resolved their claim objection as a matter of law. (D.I. 19 at 10, 14).[2] Their position is consistent with the understanding the Parties had in July 2012—the Bankruptcy Court would resolve the claims as a matter of law.

Appellees' primary argument is that the Bankruptcy Court resolved Mr. Henke's claims as a matter of law. (D.I. 28 at 3). It did not. The Bankruptcy Court is clear about this point in its Opinion. It states, "This Opinion constitutes the findings of fact and conclusions of law, as required by Fed. R. Bankr. P. 7052."[3] (D.I. 1-1 at 1 n.2). Moreover, throughout its Opinion the Court repeatedly references proof and evidence. (*Id.* at 17, 19, 22, 32, 35-36, 38-41). Accordingly, the initial question that I must resolve is whether the Bankruptcy Court gave Mr.

---

[2] "The Bankruptcy Court's disallowance of the Claim Objection as a matter of law was a legal determination for which the standard of review is *de novo*." (D.I. 19 at 10).
[3] Fed. R. Bankr. P. 7052 references Fed. R. Civ. P. 52, which addresses factual findings by a Court.

Henke sufficient process prior to converting what appeared to be oral argument on a motion to dismiss for failure to state a claim into a bench trial.

The Appellees contend that if the Bankruptcy Court considered the merits of the claim, its disposition of the Claim was procedurally appropriate under both statutory and constitutional standards. (D.I. 28 at 2).

The Bankruptcy Court determines whether to allow a claim "after notice and a hearing." 11 U.S.C. § 502(b). "After notice and a hearing" is defined in Section 102(1) as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." This is meant to give the Bankruptcy Court flexibility. *In re Harnischfeger Indus., Inc.*, 316 B.R. 616, 620 (D. Del. 2003).

In addition to following the statutorily prescribed procedure, the Bankruptcy Court must consider procedural due process. "[P]rocedural due process requires 'at a minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *United States v. Ausburn*, 502 F.3d 313, 322 (3d Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). These considerations apply equally to the Bankruptcy Court. *In re Tribune Media Co.*, 902 F.3d 384, 397 (3d Cir. 2018). Specifically, creditors have a right to notice and an opportunity to be heard on their claims. *Id.* Denial of that right is a denial of due process. *Id.*

Appellees argue that the Bankruptcy Court allowed Mr. Henke to submit, without any objection from them, many hundreds of pages in support of his claims both before and after the Hearing. (D.I. 28 at 1). This is true. Mr. Henke notes, however, that those pages were responses to Appellees' objections and to establish that his complaint stated a claim. (D.I. 29 at 1). Abundant opportunity to be heard matters very little when one does not know what needs to

7

be talked about. Mr. Henke was not on notice that he was expected to produce evidence to prove his claims at the Hearing. As he, and Appellees too, understood it, he needed only to establish that his complaint stated a claim as a matter of law. The fact that he, a *pro se* claimant, submitted hundreds of pages to show the sufficiency of his claims does not establish that he was on notice that he needed to prove his claims at that juncture.

Appellees next argue that the Bankruptcy Court advised Mr. Henke of his burden at the Hearing and that Mr. Henke understood. They point to one colloquy as key:

> The Court: "It's your burden to prove the validity of your claim."
> Appellant: "Okay. Can I - is it still possible for me to do that?"
> The Court: "If you'd like to include something by virtue of the submission that's due in 30 days, you may do so."

(D.I. 10-3 at 93). They identify other comments as additional support. At one point the Court advised Mr. Henke that he had to "carry the burden that the claim is valid," and, at another, stated "everybody's entitled to their day in court, and this is yours." (*Id.* at 70, 86). They also note that Mr. Henke thanked the Court for "the opportunity to argue the merits of [his] claim." *Id.* at 58.

Mr. Henke responds, "[C]learly, he and the Bankruptcy Court were speaking [of] two very different things." (D.I. 29 at 1). I agree with his assessment. I have reviewed the record and find these statements are ambiguous given the context of the Hearing. The "validity" of a claim may refer to factual proof entitling the claimant to compensation but may just as well refer to the sufficiency of a claim as pled. "Merits" of a claim can be read in the same manner. At the Hearing, the Parties were under the impression that the case would be decided as a matter of law. The statements, read in that light, lend themselves to an interpretation consistent with deciding the "validity" or "merit" of the claims as pled. The fact that a legally educated mind can divine

from the nuances of the Bankruptcy Court's speech that the Court *may* have been referring to Mr. Henke's evidentiary burden is not sufficient to establish that he was on notice.

Appellees' citation to cases where courts have upheld the Bankruptcy Court's procedure are inapposite. Appellees look primarily to *In re Tribune Media Co.*, 902 F.3d 384 (3d Cir. 2018).[4] In *Tribune*, the Third Circuit found that the Bankruptcy Court had given the appellant sufficient process before deciding the appellant's claim on summary judgment. Prior to deciding the claim, the Bankruptcy Court advised the parties that it was considering resolving the claim as a matter of law based on the evidence and invited them to submit evidence of any factual dispute. *In re Tribune Media Co.*, 2017 WL 2622743, at *6 (D. Del. June 16, 2017). In deciding that the procedure was constitutionally sufficient, the Third Circuit emphasized that the appellant was on notice prior to the Bankruptcy Court's decision and that the appellant had not identified what additional procedures he was due.

Mr. Henke was given less notice than the Appellant in *Tribune*. Specifically, unlike the *Tribune* appellant, Mr. Henke was not given notice of the Bankruptcy Court's inclination to decide the case based on its evaluation of the evidence. He was at all relevant times under the

---

[4] Appellees also cite *In re Harnischfeger Indus., Inc.*, 316 B.R. 616, 620 (D. Del. 2003); *Ceda Mills, Inc. v. Duffy*, 2012 WL 1070096, at *18 (W.D. Pa. Mar. 29, 2012); and *In re Lease-A-Fleet, Inc.*, 1995 WL 743666, at *6 (E.D. Pa. Dec. 14, 1995). Each of these cases miss the mark. In *Harnischfeger,* the court held that the bankruptcy court had not erred in deciding factual issues after the claimant had engaged in fact discovery, deposed six witnesses, and attended five hearings. In *Ceda Mills*, the claimant had attended five hearings at the bankruptcy court and did not suggest on appeal what evidence it would have presented if given the opportunity. In *Lease-A-Fleet*, the court was addressing the "limited circumstances" in which a motion to dismiss or convert pursuant to 11 U.S.C. § 1112(b) might be decided without an evidentiary hearing. Together, these cases do not stand for Appellees' proposition that the bankruptcy court has complete discretion to decide a claim objection based on whatever record it has before it. Rather, they support the conclusion that a bankruptcy court may rule once a party is on notice and has had an opportunity to present argument on the issues which the bankruptcy court is deciding.

9

impression that his case would be decided as a matter of law under a failure to state a claim standard. The record supports the reasonableness of his impression. Appellees have not identified any post-Hearing communication from the Bankruptcy Court where the Court indicated its intent to convert a motion to dismiss to a bench trial.[5] Moreover, unlike *Tribune*, Mr. Henke has identified the procedures that are required for him to receive adequate process: notice that the hearing was his evidentiary hearing on the merits and an opportunity to be heard with that understanding in mind.

Mr. Henke was not given "notice as is appropriate in the particular circumstances" of the nature of the hearing or the standard under which the Bankruptcy Court would assess his claim. Without notice, Mr. Henke was not afforded a fair chance to submit evidence to support his claim. Since the Bankruptcy Court did not decide that Mr. Henke failed to state a claim as a matter of law, its decision must be vacated. Thus, I will vacate the Bankruptcy Court's Order Sustaining Objection to Claim of Robert Henke and remand the case.

### IV. CONCLUSION

The order of the Bankruptcy Court is **VACATED**, and the case is **REMANDED** for further proceedings not inconsistent with this order.

Entered this _15_ day of February 2019.

<div style="text-align:right">
_____<br>
United States District Judge
</div>

---

[5] The Bankruptcy Court's decision in *Tribune Media* clearly sets out the standard under which it decided the claim. *In re Tribune Media Co.*, 2016 WL 1122865, at *3-4 (Bankr. D. Del. Mar. 18, 2016). In this case, however, the Bankruptcy Court's Opinion does not clearly indicate the standard under which it decided Mr. Henke's claim. (*See* D.I. 1-1 at 6-7). Indeed, it only announces the high-level framework for establishing a claim in the bankruptcy court as a general matter. (*Id.* at 6-7). Based on the Bankruptcy Court's footnote and its treatment of the record, it appears the Court decided the issues after holding a bench trial. (*Id.* at 1 n.2).