# Exhibit A

**In Re. Tribune Company, et al.,**

**Case No. 08-13141 (KJC)**

# Tribune Litigation Trust

## ANNUAL REPORT

*Prepared Pursuant to Section 8.1 of the Tribune Litigation Trust Agreement*

*For reporting period beginning January 1, 2018 and ending December 31, 2018*

**Tribune Litigation Trust**
Annual Report
*For reporting period beginning January 1, 2018 and ending December 31, 2018*

# Tribune Litigation Trust

**2018 Annual Report – UNAUDITED**

## Table of Contents

A.  Background / Disclaimer ................................................................................................................. 3

B.  Schedule of Cash Receipts and Disbursements – Annual ................................................. 6

C.  Schedule of Cash Receipts and Disbursements – Cumulative ........................................ 7

D.  Statement of Net Assets in Liquidation ................................................................................ 8

E.  Statement of Changes in Net Assets in Liquidation .......................................................... 9

F.  Notes to the Financial Statements ........................................................................................ 10

    Note 1: Background to Establishing the Trust ............................................................. 10

    Note 2: Status of Prosecuting Litigation Claims ........................................................ 11

    Note 3: Liquidation Basis Accounting ........................................................................... 15

    Note 4: Distributions to Liquidation Trust Interest Holders ................................... 15

    Note 5: Disputed Claims Reserve .................................................................................... 16

    Note 6: Reserve for Litigation Costs .............................................................................. 17

    Note 7: Taxes ....................................................................................................................... 18

    Note 8: Interests in the Trust .......................................................................................... 18

    Note 9: Trustee Fees .......................................................................................................... 19

G.  Claims Analysis ......................................................................................................................... 20

## A.  Background / Disclaimer

(Unless otherwise defined herein, all capitalized terms have the same meaning as defined in the Plan.)

This Annual Report of Tribune Litigation Trust (the "Trust"), established pursuant to the Trust Agreement (as defined below) for the purposes of administering the Litigation Trust Assets and making distributions on account of Litigation Trust Interests ("LTI") as provided for under the Fourth Amended Joint Plan of Reorganization for Tribune Company and its subsidiaries approved by the Debtors, the official committee of unsecured creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P., and JPMorgan Chase Bank, N.A., (as modified July 19, 2012), (the "Plan"), to the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), covering the period from January 1, 2018 through December 31, 2018, was prepared pursuant to Section 8.1 of the Litigation Trust Agreement. This Annual Report is limited in scope and covers only a limited time period. This Report was prepared in accordance with liquidation basis accounting. The financial data reflected in this document were not audited or reviewed by an independent registered public accounting firm and are subject to future adjustment, reclassification and/or reconciliation. Given its special purpose and limited scope, this report does not include all adjustments and notes that would be required to be reported in accordance with U. S. Generally Accepted Accounting Principles as adopted by the Financial Accounting Standards Board ("FASB"). Results set forth in the Annual Report should not be viewed as indicative of future results. This disclaimer applies to all information contained herein.

On December 8, 2008 (the "Petition Date"), the Debtors commenced voluntary cases under Chapter 11 of title 11 of the United States Code with the Bankruptcy Court, Case No. 08-13141 (KJC). The Bankruptcy Court confirmed the Fourth Amended Joint Plan pursuant to Chapter 11 of the United States Bankruptcy Code that the Debtors filed with the Bankruptcy Court on July 20, 2012, by order, dated July 23, 2012, (the "Confirmation Order") [Docket No: 12074]. After the satisfaction or waiver of the conditions described in the Plan, the transactions contemplated by the Plan were consummated on December 31, 2012 (the "Effective Date").

The Plan provided for the creation of the Trust which was formed on December 31, 2012, pursuant to the execution of the Litigation Trust Agreement dated December 31, 2012 (the "Litigation Trust Agreement"), by and among the Tribune Company (for itself and on behalf of the other Debtors, as Debtors and Debtors in Possession, and the Guarantors Non-Debtors and Non-Guarantors Non Debtors) and Marc S. Kirschner, as the litigation trustee ("Trustee"). The beneficiaries of the Litigation Trust Assets (as defined below) include creditors of Tribune who have unsatisfied claims.  The "Litigation Trust Assets" include any and all claims of the Debtors' Estates against (a) any person (including advisors to the Debtors) arising from the leveraged buy-out of Tribune that occurred in 2007, including, without limitation, the purchase by Tribune of its common stock on or about June 4, 2007, the merger and related transactions involving Tribune on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction; (b) Morgan Stanley Capital Services, Inc. ("MSCS") relating to (i) the acquisition, sale or disposition of any notes, bonds or other indebtedness of the Debtors held by MSCS, (ii) the interest rate swap transaction executed pursuant to the ISDA Master

**Tribune Litigation Trust**
Annual Report
*For reporting period beginning January 1, 2018 and ending December 31, 2018*

Agreement dated as of August 5, 1994 between The Times Mirror Company and MSCS and (iii) any advisory engagement and/or advice given by, or information or analyses withheld, by MSCS; and (c) claims and causes of action against Non-Settling Step Two Payees to the extent such claims or causes of action seek recovery of payments (i) under the Senior Loan Agreement on account of the Incremental Senior Loans or (ii) under the Bridge Loan Agreement.

On the Effective Date, as per the Confirmation Order or the Litigation Trust Agreement, in accordance with section 1141 of the Bankruptcy Code, all of the Litigation Trust Assets, as well as the rights and powers of the Debtors' Estates applicable to the Litigation Trust Assets, automatically vested in the Trust, free and clear of all Claims and Interests for the benefit of the Litigation Trust Beneficiaries. Additionally, effective on the Effective Date, the initial members of the Litigation Trust Advisory Board: (i) Rodney Gaughan, representative of Deutsche Bank Trust Company Americas, as Successor Indenture Trustee for Certain Series of Senior Notes; (ii) Julie Becker, representative of Wilmington Trust Company, as Successor Indenture Trustee for the PHONES Notes; and (iii) William Niese ("Initial Members") serve as members of the Litigation Trust Advisory Board in accordance with the terms of the Plan and the Litigation Trust Agreement. In August 2013, Wilmington Trust Company replaced its original designee with Steven M. Cimalore to represent Wilmington Trust Company as its representative on the Litigation Trust Advisory Board. Furthermore, on the Effective Date, Reorganized Tribune, as lender, and the Trust, as borrower, became parties to the Trust Loan Agreement. The Trust Loan Agreement contains terms that are consistent with the terms set forth in Section 5.13 of the Plan.

The Trust is a successor-in-interest to the Debtors pursuant to the Plan and the Litigation Trust Agreement. The Trust had an initial term of five years from the Effective Date. However, the term was extended by Bankruptcy Court order for an additional 5 years.

The transfer of each of the Litigation Trust Assets to the Trust is treated for U.S. federal income tax purposes as a transfer of the Litigation Trust Assets (other than the amounts set aside in the LT Reserves if the LT Reserves are subject to an entity level tax) to the Litigation Trust Beneficiaries, followed by a transfer of the Litigation Trust Assets by the Litigation Trust Beneficiaries to the Trust. The Litigation Trust Beneficiaries are the grantors, deemed owners and beneficiaries of the Trust. The Debtors retained a valuation expert ("Valuation Expert") who as of the Effective Date determined solely for tax purposes and provided to the Debtors an estimated fair market value of the Litigation Trust Assets to be transferred to the Trust of $358.4 million. Notice of such valuation was filed with the Bankruptcy Court on January 4, 2013. The Valuation Expert's determination of the fair market value as of the Effective Date of all Litigation Trust Assets transferred to the Trust is being used by the Trust, the Trustee, and the Litigation Trust Beneficiaries for all U.S. federal income tax purposes, including for determining tax basis and gain or loss. The Trust was not involved in preparation of the valuation, and has no access to its underlying calculations.

The Trustee will file federal income tax returns for the Trust as a grantor trust in accordance with United States Treasury Regulation Section 1.671-4 and report, but not pay tax on, the Trust's tax items of income, gain, loss, deductions and credits ("LT Tax Items"). The holders of Trust Interests shall report

**Tribune Litigation Trust**
Annual Report
*For reporting period beginning January 1, 2018 and ending December 31, 2018*

such LT Tax Items on their federal income tax returns and pay any resulting federal income tax liability on a pro rata basis.

As a successor-in-interest to certain litigation claims transferred from the Debtor, the Trust bears the responsibility for future reporting to the Bankruptcy Court. The Trust reports in accordance with liquidation basis accounting, which requires the reporting entity to report its assets and liabilities based on net realizable values. For purposes of the Annual Report, the Trustee has assigned a value of $358.4 million to the assets for tax reporting purposes, based upon the Valuation Expert's conclusion. Recoveries of assets for the Trust are subject to the outcome of litigation and are speculative.

Valuation of assets requires making difficult estimates and judgments. The Debtor used the services of an independent valuation firm to make its estimates solely for tax purposes for the Trust's assets. Estimates necessarily require assumptions, and changes in such assumptions over time could materially affect the results. Due to the inherently uncertain nature of estimates and the underlying assumptions, the actual cash to be received by the Trust from liquidation of assets and liabilities will likely be different than estimated. As the Trust has recoveries in respect of Litigation Trust Assets, the remaining value of the Trust's assets will be reduced by such amount from the Valuation Expert's determined value of $358.4 million of the Trust assets.

The information provided in the notes to the financial statements is provided to offer additional information to the readers of this report. However, the information is not complete and should be read in conjunction with the Plan and Disclosure Statement. In addition, readers are encouraged to visit the Trust's website at www.TribuneTrustLitigation.com.

## B. Schedule of Cash Receipts and Disbursements – Annual

| For Period Beginning January 1, 2018 and Ending December 31, 2018 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| $ Actual | | Wilmington Trust - Disbursing Agent Account | | Wilmington Trust - Disputed Claims Reserve Account | | Wilmington Trust - Expense Reserve Fund | | Total | |
| **Beginning Cash - January 1, 2018** | | $ | 11,490,965 | $ | 692,428 | $ | 2,766,721 | $ | 14,950,113 |
| **Receipts** | | | | | | | | | |
| Interest / Investment Income Received | (1) | $ | 168,867 | $ | 9,451 | $ | 37,760 | $ | 216,079 |
| Claim Liquidation - Other | (2), (5) | $ | 12,346,298 | $ | - | $ | - | $ | 12,346,298 |
| **Total Receipts** | | $ | 12,515,165 | $ | 9,451 | $ | 37,760 | $ | 12,562,376 |
| **Transfers** | | | | | | | | | |
| Transfer Between Trust Accounts | (3), (5) | $ | - | $ | - | $ | - | $ | - |
| **Total Transfers** | | $ | - | $ | - | $ | - | $ | - |
| **Disbursements / Payments** | | | | | | | | | |
| Board Fees | (4) | $ | (180,000) | $ | - | $ | - | $ | (180,000) |
| Distributions | (5) | $ | (7,730,765) | $ | - | $ | - | $ | (7,730,765) |
| Insurance Payment | (6) | $ | - | $ | - | $ | - | $ | - |
| Legal Counsel to Trust Board | (7) | $ | (10,000) | $ | - | $ | - | $ | (10,000) |
| Litigation Trustee Fees and Expenses | (8) | $ | (400,784) | $ | - | $ | - | $ | (400,784) |
| Litigation Trustee Professionals Fees and Expenses | (9) | $ | (5,611,758) | $ | - | $ | - | $ | (5,611,758) |
| Bank Fees and Expenses | | $ | (2,461) | $ | - | $ | - | $ | (2,461) |
| Other Outside Services | (10) | $ | (42,912) | $ | - | $ | - | $ | (42,912) |
| **Total Disbursements and Payments** | | $ | (13,978,680) | $ | - | $ | - | $ | (13,978,680) |
| **Ending Cash - December 31, 2018** | | $ | 10,027,450 | $ | 701,880 | $ | 2,804,481 | $ | 13,533,810 |

**Notes:**

(1) Dividend / interest earned.

(2) Proceeds from the Litigation Trust's share of recoveries from (a) the Preserved Causes of Action against the Non-Settling Step Two Payees and (b) global settlements with: (i) a number of clawback defendants who were sued by the Trust; and (ii) state court defendants.

(3) This includes transfers between accounts of proceeds from various recoveries as well as transfers to purchase Treasury Bills.

(4) Tribune Litigation Trust Board Member's fees paid for the fourth quarter of 2015 and the first three quarters of 2016 pursuant to Section 4.8(a) of the Litigation

(5) In June 2016, the Trust made a distribution of $20,000,000 to its 1E and 1F claimholders. $758,956 that was unable to be distributed was transferred into the Disputed Claims Reserve Account. In August 2016, $85,635 was paid from the Disbursing Agent Account instead of the Disputed Claims Reserve Account. An adjustment for this was made in March 2017. In December 2017, the Trust received the correct contact details for three class 1F claimants, and payments totaling $3,469 were made out of the Disputed Claims Reserve Account. From July 2018 through October 2018, the Trust made a distribution of $8,000,000 to its 1E and 1F claimholders. Approximately $269,000 was unable to distributed and will be transferred into the Disputed Claims Reserve Account in 2019. After such transfer, there will be approximately $971,000 in the Disputed Claims Reserve Account.

(6) Effective December 29, 2015, the Trust has renewed its D&O policy for five years. 1/60th of the initial $500,000 payment amount (paid in January 2016) is expensed for each month and the remainder is carried as prepaid expense.

(7) Annual fees for counsel to Trust Board.

(8) Payment for Litigation Trustee's services.

(9) Disbursements made on account of professional services rendered.

(10) Disbursements made on account of web hosting and other services not related to professionals.

*Note:* All amounts are rounded to the nearest dollar.

**Tribune Litigation Trust**
Annual Report
*For reporting period beginning January 1, 2018 and ending December 31, 2018*

## C.  Schedule of Cash Receipts and Disbursements – Cumulative

**For Period Beginning December 31, 2012 and Ending December 31, 2018**

| $ Actual | | Wilmington Trust - Disbursement Agent Account | Wilmington Trust - Disputed Claims Reserve Account | Deutsche Bank - Trust Account | Deutsche Bank - Investment Account | Wilmington Trust - Expense Reserve Fund | Total |
|---|---|---|---|---|---|---|---|
| **Ending Cash - December 31, 2012** | | $ 20,000,000 | $ - | $ - | $ - | $ - | $ 20,000,000 |
| **Receipts** | | | | | | | |
| Interest Income Received | (1) | $ 207,587 | $ 15,856 | $ 9,526 | $ | $ 49,957 | $ 282,925 |
| Claim Liquidation - Other | (2), (5) | 51,533,355 | 16,164 | - | | | 51,549,518 |
| **Total Receipts** | | $ 51,740,942 | $ 32,020 | $ 9,526 | $ | $ 49,957 | $ 51,832,444 |
| **Transfers** | | | | | | | |
| Transfer Between Accounts | (3), (5) | $ (3,418,328) | $ 673,330 | $ (9,526) | $ | $ 2,754,524 | $ |
| **Total Transfers** | | $ (3,418,328) | $ 673,330 | $ (9,526) | $ | $ 2,754,524 | $ |
| **Disbursements / Payments** | | | | | | | |
| Board Fees | (4) | $ (1,035,000) | $ - | $ | $ | $ | $ (1,035,000) |
| Distributions | (5) | (27,057,435) | (3,469) | - | - | - | (27,060,904) |
| Insurance Payment | (6) | (500,000) | - | - | - | - | (500,000) |
| Step Two Arrangers | (7) | (126,439) | - | - | - | - | (126,439) |
| Legal Counsel to Trust Board | (8) | (157,502) | - | - | - | - | (157,502) |
| Litigation Trustee Fees and Expenses | (9) | (1,806,996) | - | - | - | - | (1,806,996) |
| Litigation Trustee Professionals Fees and Expenses | (10) | (26,062,805) | - | - | - | - | (26,062,805) |
| Other Outside Services | (11) | (1,102,875) | - | - | - | - | (1,102,875) |
| First Installment Per Agreement | (12) | (300,000) | - | - | - | - | (300,000) |
| Bank Fees and Expenses | (13) | (146,111) | - | - | - | - | (146,111) |
| **Total Disbursements and Payments** | | $ (58,295,164) | $ (3,469) | $ - | $ - | $ - | $ (58,298,634) |
| **Ending Cash - December 31, 2018** | | $ 10,027,450 | $ 701,880 | $ - | $ - | $ 2,804,481 | $ 13,533,810 |

**Notes:**
(1) Dividend / interest earned.
(2) Proceeds from the Litigation Trust's share of recoveries from (a) the Preserved Causes of Action against the Non-Settling Step Two Payees and (b) global settlements with: (i) a number of clawback defendants who were sued by the Trust; and (ii) state court defendants.
(3) This includes transfers between accounts of proceeds from various recoveries as well as transfers to purchase Treasury Bills.
(4) Tribune Litigation Trust Board Member's fees paid for the fourth quarter of 2015 and the first three quarters of 2016 pursuant to Section 4.8(a) of the Litigation Trust.
(5) In June 2016, the Trust made a distribution of $20,000,000 to its 1E and 1F claimholders. $758,956 that was unable to be distributed was transferred into the Disputed Claims Reserve Account. In August 2016, $85,635 was paid from the Disbursing Agent Account instead of the Disputed Claims Reserve Account. An adjustment for this was made in March 2017. In December 2017, the Trust received the correct contact details for three class 1F claimants, and payments totaling $3,469 were made out of the Disputed Claims Reserve Account. From July 2018 through October 2018, the Trust made a distribution of $8,000,000 to its 1E and 1F claimholders. Approximately $269,000 was unable to distributed and will be transferred into the Disputed Claims Reserve Account in 2019. After such transfer, there will be approximately $971,000 in the Disputed Claims Reserve Account.
(6) Effective December 29, 2015, the Trust has renewed its D&O policy for five years. 1/60th of the initial $500,000 payment amount (paid in January 2016) is expensed for each month and the remainder is carried as prepaid expense.
(7) 90% of proceeds received from two Non-Settling Step Two Payees paid to Step Two Arrangers.
(8) Annual fees for counsel to Trust Board.
(9) Payment for Litigation Trustee's services.
(10) Disbursements made on account of professional services rendered.
(11) Disbursements made on account of web hosting and other services not related to professionals.
(12) The first of two Installments totaling $400,000 to be paid to the Tribune Media Company per the Settlement Agreement. The Second Installment will be paid upon the repayment of the Litigation Trust Loan.
(13) Includes Deutsche Bank and Wilmington Trust annual fees as well as advances made to the MS Escrow account for its annual fees and 2014 tax payment.
Note: All amounts are rounded to the nearest dollar.

**Tribune Litigation Trust**
Annual Report
*For reporting period beginning January 1, 2018 and ending December 31, 2018*

# D.  Statement of Net Assets in Liquidation

| ($ Actual) | | December 31, 2018 | | Effective Date |
|---|---|---|---|---|
| **ASSETS** | | | | |
| Assets | | | | |
| Bank Accounts | | | | |
| Wilmington Trust - Disbursing Agent Account | (1) $ | 10,027,449 | $ | 20,000,000 |
| Wilmington Trust - Disputed Claims Reserve Account | (1) | 701,880 | | - |
| Wilmington Trust - Trust Expense Fund Reserve | (2) | 2,804,481 | | - |
| Total Cash and Cash Equivalents | $ | 13,533,810 | $ | 20,000,000 |
| Prepaid Expenses & Other Assets | | | | |
| D&O and E&O Insurance | (3) $ | 200,000 | $ | - |
| Total Assets | $ | 13,733,810 | $ | 20,000,000 |
| **TOTAL ASSETS** | $ | **13,733,810** | $ | **20,000,000** |
| | | | | |
| **LIABILITIES** | | | | |
| Liabilities | | | | |
| Long Term Liabilities | | | | |
| Professional Fee Holdback | (4) $ | 1,753,182 | $ | - |
| Litigation Trustee Fee Holdback | (5) | 367,049 | | - |
| Term Loan | (6) | 20,000,000 | | 20,000,000 |
| Total Long Term Liabilities | $ | 22,120,231 | $ | 20,000,000 |
| **Total Liabilities** | $ | 22,120,231 | $ | 20,000,000 |
| **NET ASSETS** | | | | |
| Surplus / (Deficit) | (7) $ | (8,386,421) | $ | - |
| **TOTAL LIABILITIES & NET ASSETS** | $ | **13,733,810** | $ | **20,000,000** |

Notes:

(1) The Disputed Claims Reserve Account holds funds related to disputed claims and Trust Interests. The Disbursing Agent Account is the primary account for distribution of litigation proceeds and payment of ongoing professional fees and Trust expenses.

(2) Per the Litigation Trust Agreement 3.4(b), cash held in reserve from the Litigation Trust's share of recoveries is from (a) the Preserved Causes of Action against the Non-Settling Step Two Payees and (b) global settlements with: (i) a number of clawback defendants who were sued by the Trust; and (ii) state court defendants.

(3) Effective December 29, 2015, the Trust has renewed its D&O policy for five years. 1/60th of the initial $500,000 payment amount is expensed for each month and the remainder is carried as prepaid expense.

(4) 20% of certain professional fees incurred after December 31, 2013 were deferred without interest pursuant to agreement with counsel. In July 2018, the counsels to the Litigation Trustee were paid their fees that had been deferred for the period through December 2016.

(5) Litigation Trustee fees are subject to Board approval. On an interim basis the Litigation Trustee was billing the trust at the rate of $950 an hour, subject to a 20% holdback. Fees for the period prior to the Effective Date of $115,425, will not be paid to the Litigation Trustee until the Trust loan has been paid in full. In May and June 2014 the Trustee voluntarily deferred all fees exceeding $50,000 ($52,600 and $85,375, respectively). Effective January 2019, a definitive agreement for Trustee fees was reached pursuant to which the Trustee will continue to bill at $950 per hour subject to a 20% holdback. The Trustee received a board approved $250,000 in December 2018, as partial payment of previously deferred fees. The balance of other deferred fees will be paid if there are adequate cash reserves, subject to Board approval. The Trustee will also be entitled to a contingent fee ranging from 1% to 1.5% out of distributions to Trust Holders after distribution of the $ 90 million priority payment and repayment of the $ 20 million loan under the Plan and Trust Agreement.

(6) Payable without interest as provided in the Trust Loan Agreement.

(7) Does not include the Litigation Trust Assets contributed by the Litigation Trust Interest Holders. These assets were estimated for tax purposes at $358.4 million. At this time, the actual amount of recoveries cannot be determined with any certainty. Accordingly, no value is attributed to Net Assets for the Litigation Trust Assets.

*Note:* All amounts are rounded to the nearest dollar.

# E.  Statement of Changes in Net Assets in Liquidation

| | | Year Ended December 31, 2018 | | Effective Date through December 31, 2018 |
|---|---|---|---|---|
| **Income** | | | | |
| **Revenue & Receipts** | | | | |
| Claim Liquidation | | | | |
| Non-Settling LBO Lenders | | $        - | $ | 30,211 |
| Settlement Income | | 12,346,298 | | 51,766,852 |
| Interest / Investment Income | | 208,169 | | 274,294 |
| Total Income | | $ 12,554,467 | $ | 52,071,358 |
| **Expenses** | | | | |
| **Distributions** | | $ 7,432,555 | $ | 26,677,058 |
| **Fees** | | | | |
| **Board Fees and Expenses** | | | | |
| Legal Counsel to Trust Board | | $ 10,000 | $ | 157,502 |
| Board Fees and Expenses - Other | | 180,000 | | 1,035,000 |
| Total Board Fees and Expenses | | $ 190,000 | $ | 1,192,502 |
| **Litigation Trustee & Professional Fees & Expenses** | | | | |
| Counsel to Litigation Trustee Fees & Expenses | (1) | $ 3,110,056 | $ | 19,514,770 |
| Professional Fee Holdback | (1) | 778,808 | | 5,441,115 |
| Accrued Interest | (1) | - | | 350,198 |
| Testimonial Expert Fees & Expenses | | 1,740,141 | | 2,052,643 |
| Tax Advisory Fees | | 26,250 | | 155,852 |
| Trust Administrator Fees & Expenses | | 180,128 | | 925,924 |
| Litigation Trustee Fees and Expenses | (2) | 187,880 | | 2,173,685 |
| Total Litigation Trustee & Professional Fee & Expenses | | $ 6,023,264 | $ | 30,614,187 |
| Total Fees | | $ 6,213,264 | $ | 31,806,689 |
| **Other Expenses** | | | | |
| Bank Service Charges | | $ 22,461 | $ | 166,111 |
| Computer and Internet Expenses | | 40,213 | | 290,765 |
| Insurance Expense | (3) | 100,000 | | 1,052,550 |
| Settlement Expenses | (4) | - | | 300,000 |
| Other Miscellaneous Expenses | | 2,699 | | 64,003 |
| Total Other Expenses | | $ 165,373 | $ | 1,873,428 |
| Total Expenses | | $ 13,811,191 | $ | 33,680,117 |
| **Net Surplus / (Deficit)** | | $ (1,256,725) | $ | (8,285,817) |

**Notes:**

(1) 20% of certain professional fees incurred after December 31, 2013 were deferred without interest pursuant to agreement with counsel.

(2) Litigation Trustee fees are subject to Board approval. On an interim basis the Litigation Trustee was billing the trust at the rate of $950 an hour, subject to a 20% holdback. Fees for the period prior to the Effective Date of $115,425, will not be paid to the Litigation Trustee until the Trust loan has been paid in full. In May and June 2014 the Trustee voluntarily deferred all fees exceeding $50,000 ($52,600 and $85,375, respectively). Effective January 2019, a definitive agreement for Trustee fees was reached pursuant to which the Trustee will continue to bill at $950 per hour subject to a 20% holdback. The Trustee received a board approved $250,000 in December 2018, as partial payment of previously deferred fees. The balance of other deferred fees will be paid if there are adequate cash reserves, subject to Board approval. The Trustee will also be entitled to a contingent fee ranging from 1% to 1.5% out of distributions to Trust Holders after distribution of the $ 90 million priority payment and repayment of the $ 20 million loan under the Plan and Trust Agreement.

(3) Effective December 29, 2015, the Trust has renewed its D&O policy for five years. 1/60th of the initial $500,000 payment amount (paid in January 2016) is expensed for each month and the remainder is carried as prepaid expense.

(4) The first of two Installments totaling $400,000 to be paid to the Tribune Media Company per the Settlement Agreement. The Second Installment will be paid upon the repayment of the Litigation Trust Loan.

*Note:*  All amounts are rounded to the nearest dollar.

**Tribune Litigation Trust**
Annual Report
*For reporting period beginning January 1, 2018 and ending December 31, 2018*

## F.  Notes to the Financial Statements

### Note 1: Background to Establishing the Trust

On December 8, 2008, the Tribune Company and its various debtor-subsidiaries (collectively, the "Debtors" or "Tribune") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[1] On December 18, 2008, the Office of the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors of Tribune Co. (the "Committee").[2]

On October 27, 2010, the Bankruptcy Court issued an order (the "Standing Order") granting the Committee standing, on behalf of the Debtors' estates, to commence various adversary proceedings that assert claims relating to the leveraged buyout of Tribune in 2007.[3]

On November 1, 2010, the Committee commenced one such adversary proceeding in the Bankruptcy Court (the "FitzSimons Action") against Tribune's former shareholders, advisors, officers, and directors that participated in the LBO.[4] In addition, the Committee commenced two other adversary proceedings in the Bankruptcy Court (collectively, the "Lender Actions") against the lenders that financed the LBO.[5] Finally, the Committee commenced numerous adversary proceedings in the Bankruptcy Court against certain former executives of Tribune (collectively, the "Insider Actions") who received special compensation in connection with the LBO.

On March 15, 2012, the Bankruptcy Court issued an order permitting the Committee to sever certain claims (the "Advisor Claims") from the Lender Action.[6] On April 2, 2012, the Committee commenced an adversary proceeding in the Bankruptcy Court (the "Advisor Action," and together with the FitzSimons

---

[1] Voluntary Petition, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. Dec. 8, 2008), ECF No. 1.

[2] Notice of Appointment of Committee of Unsecured Creditors, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. Dec. 18, 2008), ECF No. 101.

[3] Order Granting Unsecured Creditors Committee's Standing Motions, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. Oct. 27, 2010), ECF No. 6150.

[4] Complaint, Official Committee of Unsecured Creditors of Tribune Co. v. FitzSimons, et al., Adv. Proc. No. 10-54010 (Bankr. D. Del. Nov. 1, 2010), ECF No. 1.  A fourth amended complaint was filed on November 8, 2012.  Complaint, Official Committee of Unsecured Creditors of Tribune Co. v. FitzSimons, et al., Case No. 1:11-md-02296-WHP (S.D.N.Y. Nov. 8, 2012), ECF No. 1826.

[5] Complaint, Official Committee of Unsecured Creditors of Tribune Company v. JPMorgan Chase Bank, N.A., et al., Adv. Proc. No. 10-53963 (Bankr. D. Del. Nov. 1, 2010), ECF No. 1; Complaint, Official Committee of Unsecured Creditors of Tribune Company v. JPMorgan Chase Bank, N.A., et al., Adv. Proc. No. 10-55969 (Bankr. D. Del. Dec. 8, 2010), ECF No. 1.

[6] Order Partially Lifting Stay of Adversary Proceedings and State Law Constructive Fraudulent Conveyance Actions, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. March 15, 2012), ECF No. 11158.

Action, the Lender Actions, and the Insider Actions, collectively the "Actions") asserting the severed Advisor Claims.[7]

On March 20, 2012, the United States Judicial Panel for Multidistrict Litigation ("JPML") transferred the FitzSimons Action to the United States District Court for the Southern District of New York (the "District Court") for coordinated and consolidated pretrial proceedings with various related actions.[8] On August 3, 2012, the JPML also transferred the Advisor Action to the District Court for similarly coordinated and consolidated pretrial proceedings.[9]

On July 20, 2012, the Debtors, the Committee, and various co-proponents filed the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (the "Plan") in the Bankruptcy Court.[10] The Bankruptcy Court confirmed the Plan on July 23, 2012.[11]

The Plan approved the creation of a litigation trust (the "Trust") to pursue the claims asserted in the Actions. The Plan became effective on December 31, 2012.[12] On that date, the Litigation Trust was created, and a Trustee succeeded the Committee as plaintiff in the Actions.

## Note 2: Status of Prosecuting Litigation Claims

As discussed above, the Plan became effective on December 31, 2012. On that date, the Trustee succeeded the Committee as plaintiff in the Actions. On January 10, 2013, the Trustee filed in the District Court a notice to substitute the Trustee as successor-in-interest plaintiff in the FitzSimons Action and Advisor Action. The District Court approved the substitution on January 11, 2013.[13] Subsequently, on February 20, 2013, the Trustee moved the Bankruptcy Court for entry of an order (the "Substitution Motion"), among other things, authorizing substitution of the Trustee as the successor-in-interest plaintiff in: (i) the Lender Actions solely with respect to certain counts against certain defendants; and

---

[7] Complaint, Official Committee of Unsecured Creditors of Tribune Company v. Citigroup Global Markets Inc., et al., 08-bk-13141 (Bankr. D. Del. April 2, 2012), ECF No. 11303.

[8] Order Lifting Stay of Conditional Transfer Order, In re Tribune Co. Fraudulent Conveyance Litig., MDL No. 2296 (J.P.M.L. Mar. 20, 2012), ECF No. 992.

[9] Transfer Order, In re Tribune Co. Fraudulent Conveyance Litig., MDL No. 2296 (J.P.M.L. Aug. 3, 2012), ECF No. 1015.

[10] Certification of Counsel Regarding (i) Proposed Confirmation Order and (ii) Amended Plan and Related Documents, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. July 20, 2012), ECF No. 12072.

[11] Order Confirming Fourth Amended Joint Plan of Reorganization, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. July 23, 2012), ECF No. 12074.

[12] Notice of (i) Effective Date of the Fourth Amended Joint Plan of Reorganization and (ii) Bar Date for Certain Claims, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. Dec. 31, 2012), ECF No. 12939.

[13] Memo Endorsement on Notice of Substitution of Party, Counsel, and Liaison Counsel, In re Tribune Co. Fraudulent Conveyance Litig., 11-mc-2296 (S.D.N.Y. Jan. 11, 2013), ECF No. 2179.

(ii) the various Insider Actions solely with respect to the claims asserted therein that are owned by the Trust.[14] On March 21, 2013, the Bankruptcy Court issued an order granting the Substitution Motion.[15]

A detailed description of material events and pleadings during 2013 through 2017 is set out in The Trust's Annual Reports for the years ending December 31, 2013, December 31, 2014, December 31, 2015, December 31, 2016 and December 31, 2017 which were filed with the Bankruptcy Court on April 10, 2014, May 13, 2015, April 18, 2016, March 2, 2017 and March 20, 2018 respectively, and placed on the Trust's website at www.TribuneTrustLitigation.com.

The Trustee reached a settlement of certain claims against Morgan Stanley & Co. LLC ("MS&Co.") and Morgan Stanley Capital Services LLC ("MSCS," together, the "Morgan Stanley Defendants"), two of the defendants in the FitzSimons Action. The Settlement Agreement, which was signed on April 25, 2016 and was subject to approval by the Bankruptcy Court, resolves claims against the Morgan Stanley Defendants arising from MSCS's attempt to offset its obligations to Tribune under a 1994 interest rate swap agreement with The Times Mirror Company (a Tribune predecessor) using Tribune debentures that MS&Co. had purchased between April 2006 and November 2008.

In exchange for the Trustee's dismissal of these claims, the Morgan Stanley Defendants paid the Trust $23.7 million and relinquished its rights to an approximately $12.6 million escrow account that had been created for the purpose of segregating MSCS's potential interests pending resolution of the swap-related claims. The Trustee retained his other claims against MS&Co. in the FitzSimons Action relating to the latter's role as financial advisor to Tribune and its Special Committee in the period leading to Tribune's 2007 leveraged buyout. The Settlement Agreement was approved by the Bankruptcy Court on May 17, 2016 and became effective on May 31.

Commencing in June 9, 2016, the Trustee distributed $20 million to the Class 1E and Class 1F beneficiaries of the Trust pursuant to the terms of the Litigation Trust Distribution Schedule (set forth in Exhibit C to the Litigation Trust Agreement). In addition, by stipulation of all of the interested parties, the Trust received 50 percent – or approximately $6.3 million – of the $12.6 million escrow amount relinquished by MSCS as part of the settlement, with the remaining 50 percent going to Deutsche Bank Trust Company Americas ("DBTCA") and Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture trustees, for distribution to Tribune's senior Noteholders. Additional details on the distributions may be found under the "Distributions" page at www.TribuneTrustLitigation.com.

---

[14] Motion to Authorize Omnibus Order: (I) Authorizing Substitution of the Litigation Trustee as Plaintiff in Certain Adversary Proceedings and Approving Procedures to Evidence Such Substitutions; (II) Modifying the Stay of Such Proceedings; and (III) Extending the Time to Effect Service in Such Proceedings, In re Tribune Co., et al., 08-bk-13141 (Bankr. D. Del. Feb. 20, 2013), ECF No. 13210.

[15] Order Granting Litigation Trustees Motion for an Omnibus Order: (I) Authorizing Substitution of the Litigation Trustee as Plaintiff in Certain Adversary Proceedings and Approving Procedures to Evidence Such Substitutions; (II) Modifying the Stay of Such Proceedings; and (III) Extending the Time to Effect Service in Such Proceedings, In re Tribune Co., 08-bk-13141 (Bankr. D. Del. Mar. 21, 2013), ECF No. 13351.

On January 6, 2017, Judge Sullivan issued an opinion and order dismissing Count 1 of the Fifth Amended Complaint in Kirschner v. Fitzsimons et al. against all shareholder defendants and denying leave to amend (the "Count One Order").  No. 1:12-mc-02296-DLC [Dkt. No. 343]. The Count One Order exclusively addressed Phase Two Motion to Dismiss No. 12, and did not address or provide a ruling on any of the Phase Two Motions to Dismiss Nos. 1-11, which addressed claims made against various Tribune directors, officers, and advisors other than those for intentional fraudulent transfer. The Trustee subsequently sought leave of the court to appeal the Count One Order, and on February 23, 2017 Judge Sullivan determined that an interlocutory appeal would be appropriate, but concluded that the Court would wait to so certify until the remaining pending motions to dismiss are resolved.  See Order, No. 11-MD-2296 [ECF No. 6944].

On May 1, 2017, the Supreme Court granted certiorari in Merit Mgmt. Grp., LP v. FTI Consulting, Inc., No. 16-784 ("Merit Mgmt."), agreeing to hear an appeal of the Seventh Circuit Court of Appeals' opinion in that case concerning the scope and nature of 11 U.S.C. § 546(e).  See FTI Consulting, Inc. v. Merit Management Group, LP, 830 F.3d 690, 697 (7th Cir. 2016).  On July 18, 2017, the Trustee wrote to Judge Sullivan to request permission to amend or move to amend the Fifth Amended Complaint to add a constructive fraudulent conveyance claim under 11 U.S.C. § 548(a)(1)(B) in anticipation of an affirmance by the Supreme Court in Merit Mgmt., which the Trustee asserted would nullify Second and Third Circuit precedent previously barring such a claim by the Trustee.  On August 24, having considered responsive letters from defendants, Judge Sullivan denied the request without prejudice to renewal  once the Supreme Court issued its opinion in Merit Mgmt., concluding that an affirmance of the Seventh Circuit would present a strong argument in support of amendment.  See Order, No. 1:11-md-02296-DLC [Dkt. No. 7019].

On February 27, 2018, the Supreme Court issued a unanimous opinion in Merit Mgmt., affirming the opinion of the Seventh Circuit and ruling that the safe harbor contained in Section 546(e) of the U.S. Bankruptcy Code only looks to the transfer that the plaintiff seeks to avoid, irrespective of the involvement of a bank or other financial institution as an intermediary.  138 S. Ct. 883 (2018).  On March 8, the Trustee renewed his request to amend the Complaint to assert a constructive fraudulent conveyance claim.  See Letter, No. 1:11-md-02296-DLC [Dkt. No. 7285].  There were numerous responses. On June 18, Judge Sullivan stayed the Trustee's request pending further action by the Second Circuit in the Noteholder actions, and requested a joint status report from parties in the various consolidated actions regarding discovery and options for resolving the pending claims.  See Order, No. 1:11-md-02296-DLC [Dkt. No. 7552].  That report was filed on July 9, and details, among other things, the Trustee's position on further discovery and the potential mediation of claims.  Joint Letter, No. 1:11-md-02296-DLC [Dkt. No. 7586].

By opinion and order dated November 30, 2018, the District Court dismissed Counts 2, 3, 6, 8, and 14-22 of the Fifth Amended Complaint in Kirschner v. Fitzsimons et al. against certain defendants and denied leave to amend (the "November 2018 Order").  See No. 1:11-md-02296-DLC [Dkt. No. 7659].  The

**Tribune Litigation Trust**
Annual Report
*For reporting period beginning January 1, 2018 and ending December 31, 2018*

Trustee sought reconsideration and clarification of the November 2018 Order, which was denied on February 12, 2019.  See No. 1:11-md-02296-DLC [Dkt. No. 7761].

On December 1, 2018, the Actions pending in the District Court were reassigned from Judge Richard J. Sullivan to Judge Denise L. Cote.  See No. 1:11-md-02296-DLC [Dkt. No. 7658].  The Trustee wrote to Judge Cote to request a status conference to address dissolving the stay in order to permit briefing on the Trustee's motion to amend the Complaint to assert a constructive fraudulent conveyance claim, and to address the Trustee's intention to seek to reinstate claims for intentional fraudulent conveyance. See No. 1:11-md-02296-DLC [Dkt. No. 7676].  Judge Cote scheduled a status conference for January 14, 2019 and invited further letters from the parties describing any issues they would like the Court to address at the conference.  See No. 1:11-md-02296-DLC [Dkt. No. 7679].  At the status conference, the Court advised that the stay would remain in place as to the Trustee's request to move to amend the Complaint to assert a constructive fraudulent conveyance claim.  See No. 1:11-md-02296-DLC [Dkt. No. 7758].

On January 23, 2019, Judge Cote entered an order granting in part and denying in part the remaining Phase Two Motions to Dismiss.  See No. 1:11-md-02296-DLC [Dkt. No. 7738].  Judge Cote refused to dismiss Counts 3, 31, and 33 against the director defendants, Counts 5, 33, and 36 against defendant Sam Zell ("Zell"), Count 32 against Zell and the entity defendants associated with him (the "Zell Defendants"), and Counts 7, 9, 10, 11, and 31 against certain Zell Defendants.  Id.  Judge Cote granted dismissal of the other counts subject to the remaining Phase Two Motions to Dismiss, including all claims in the Advisor Action.  Id.  Judge Cote further ordered that the parties engage in mediation until March 25, 2019, and that depositions commence March 25, 2019.  See No. 1:11-md-02296-DLC [Dkt. No. 7739].

On February 13, 2019, Judge Cote entered an order dismissing the remaining portion of Count 25 as to MS&Co.  See No. 1:11-md-02296-DLC [Dkt. No. 7763].

On February 15, 2019, the parties jointly submitted a proposed litigation schedule to govern discovery and provided an update to the court respecting mediation, which schedule Judge Cote so-ordered on February 19, 2019.  See No. 1:11-md-02296-DLC [Dkt. No. 7771].  Pursuant to the schedule, depositions commence on March 25, 2019, and the period for fact depositions concludes on December 13, 2019.  Id.

On February 21, 2019, the Trustee filed a notice of appeal of the order dismissing the claims in the Advisor Action.  See No. 1:11-md-02296-DLC [Dkt. No. 7775].

The Trustee, along with plaintiffs in various related actions, has made a series of settlement proposals to shareholder defendants in the intentional fraudulent transfer litigation, further described on the "Settlements" page at www.TribuneTrustLitigation.com.  As of December 31, 2018, the aggregate settlement proceeds received by the Trust, net of allocated legal fees and expenses of the settlement administrator, were $21.5 million. Commencing in July 2016, the Trustee distributed $8 million to the

**Tribune Litigation Trust**
Annual Report
*For reporting period beginning January 1, 2018 and ending December 31, 2018*

Class 1E and Class 1F beneficiaries of the Trust pursuant to the terms of the Litigation Trust Distribution Schedule.

## Note 3: Liquidation Basis Accounting

Given the liquidating nature of the Trust, the liquidation basis of accounting was adopted by the Trust for all periods from the Effective Date, and will continue as the basis of accounting for the Trust. Liquidation basis accounting may be considered for entities that do not intend to continue as a going concern.

Instead of a balance sheet, income statement and cash flow statement, the Trust provides a Statement of Net Assets in Liquidation, a Statement of Changes in Net Assets in Liquidation and a Schedule of Cash Receipts and Disbursements.

Typically under Liquidation Basis Accounting, assets and liabilities should be reported at their net realizable values, which requires the preparer to make estimates and judgments that affect the reported values of assets (including net assets in liquidation), liabilities and expenses from time to time. However, the Trust will recognize financial transactions in accordance with generally accepted accounting principles ("GAAP"). The financial data reflected in the financial statements and notes appearing elsewhere in this report were not audited or reviewed by an independent registered public accounting firm.

In footnotes where appropriate it is noted that a Valuation Expert hired by the Debtors determined for tax purposes as of the Effective Date and provided to the Debtors an estimated fair market value of the Litigation Trust Assets to be transferred to the Trust of $358.4 million. Notice of such value was filed with the Bankruptcy Court on January 4, 2013. The Trust recorded a liability for the $20.0 million loan from the Debtors on the Effective Date as provided by the Plan to operate the Trust. As of December 31, 2017, the remaining liability is $20.0 million. No interest accrues on the loan.

The precise nature, amount and timing of any future distribution to the holders of LTIs is speculative and will depend on, and could be delayed by, among other things, final settlements regarding litigation, proceeds from pursuing litigation against third parties, and unexpected or greater than expected expenses incurred to administer the Trust.  The costs of administration of the Trust and prosecution of litigation claims will reduce the amount of net assets available for ultimate distribution to the holders of LTIs.

## Note 4: Distributions to Liquidation Trust Interest Holders

Distributions of Net Litigation Trust Proceeds will only be made to holders of LTIs after the Trust successfully achieves settlement or judgment on claims it has against third parties and generally after deducting certain fees and establishing the Expense Reserve of up to $25 million. Distributions of Net Litigation Trust Proceeds will be made to holders within each class of Interests pursuant to the waterfall distribution schedule in Exhibit C of the Trust Agreement. Distributions will be made directly to beneficial holders in Classes 1C, 1D, 1F and 1L and will be made to the indenture trustees for Classes 1E

**Tribune Litigation Trust**
Annual Report
*For reporting period beginning January 1, 2018 and ending December 31, 2018*

and 1J. In general, distributions of Net Litigation Trust Proceeds after fees and the Expense Reserve will be made in the following priority:

a) the first $90 million to holders of Class 1E Litigation Trust Interests and Class 1F Litigation Trust Interests, after giving effect to the turnover from Class 1I Litigation Trust Interests and Class 1J Litigation Trust Interests;

b) repayment of the $20 million loan;

c) (i) After the first $110 million, 65% to holders of Class 1E Litigation Trust Interests, Class 1F Litigation Trust Interests, Class 1I Litigation Trust Interests and Class 1J Litigation Trust Interests, subject to turnover from the holders of Class 1I Litigation Trust Interests and Class 1J Litigation Trust Interests, in accordance with the Bankruptcy Court's reconsideration and allocation disputes opinions [Docket No. 10531, 10532, 11337, 11338]; and (ii) 35% to the holders of Class 1C Litigation Trust Interests and Class 1D Litigation Trust Interests; and

d) after the holders of Class 1E Litigation Trust Interests, Class 1F Litigation Trust Interests, Class 1I Litigation Trust Interests and Class 1J Litigation Trust Interests have received payment in full of the allowed amount of such holders' claims plus allowable interest, all remaining proceeds shall be distributed to the holders of Class 1C Litigation Trust Interests and Class 1D Litigation Trust Interests.

### Note 5: Disputed Claims Reserve

Pursuant to the Plan and Litigation Trust Agreement, at the time the Trustee has proceeds of litigation claims to distribute, the Trustee will set aside amounts otherwise distributable to holders of disputed claims, if any, into a disputed claims reserve ("LT Reserve").[16] The amount set aside for each disputed claim will be such amount otherwise distributable assuming the maximum amount claimed would be allowed. If the maximum amount claimed is unknown, contingent and/or the claim is unliquidated, the Trustee may, pursuant to the Plan, request that the Bankruptcy Court estimate the Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or Reorganized Debtors have previously objected to such Claim.

At the time and to the extent that disputed claims are disallowed, any funds already set aside in the LT Reserve on their account will be reallocated pro rata among allowed claims and any remaining disputed claims. Funds reallocated to Allowed claims will be withdrawn from the LT Reserve, and distributed when the Trustee makes a subsequent distribution.

Pursuant to the Plan and Litigation Trust Agreement, the Trustee: (i) will treat the LT Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and 1.468B-2 (and will make any appropriate elections), and (ii) to the extent permitted by applicable law, will report consistently with the foregoing for state and local income tax purposes. Accordingly, the LT Reserve will

---

[16] P 1.1.135, LTA 3.2(i)

be taxable as a separate entity for U.S. federal, state and/or local income tax purposes.  Any distributions from the LT Reserve will be treated for U.S. federal, state and/or local income tax purposes as if received directly by the recipient from the Debtors on the original Claim or Equity Interest of such recipient. The LT Reserve is taxable as a complex trust. Holders of allowed claims that receive distributions of funds would receive a credit for any income taxes paid by the LT Reserve for the taxable year of distribution on account of such funds.

In June 2016, the Trust made a distribution of $20,000,000 to its 1E and 1F claimholders. $758,956 that was unable to be distributed was transferred into the Disputed Claims Reserve Account. In August 2016, $85,635 was paid from the Disbursing Agent Account instead of the Disputed Claims Reserve Account. An adjustment for this was made in March 2017. In December 2017, the Trust received the correct contact details for three class 1F claimants, and payments totaling $3,469 were made out of the Disputed Claims Reserve Account. From July 2018 through October 2018, the Trust made a distribution of $8,000,000 to its 1E and 1F claimholders. Approximately $269,000 was unable to distributed and will be transferred into the Disputed Claims Reserve Account in 2019. After such transfer, there will be approximately $971,000 in the Disputed Claims Reserve Account.

### Note 6: Reserve for Litigation Costs

Pursuant to the Plan, on the Effective Date the Reorganized Debtors provided a non interest bearing loan to the Trust in the amount of $20 million ("Trust Loan") to provide for expenses of administration of the Trust and pursuit of recoveries from pending and future litigations.[17] Because it has not been determined whether and to what extent such funds will actually be used, the Trustee did not, upon emergence, record a liability for such costs and the Trust will report costs as incurred. However, the Trust does report the cash as a separate line item on the Statement of Net Assets and the activity is disclosed on the Schedule of Cash Receipts and Disbursements. As of December 31, 2018, $30.2 million had been paid to administration and litigation professionals and total expenses paid were $31.6 million.

In addition, pursuant to the Plan and Litigation Trust Agreement, the Trustee is authorized to set aside funds out of litigation recoveries into an Expense Fund to cover the expenses of administration of the Trust and pursuit of recoveries from pending and future litigations.[18]

Since the formation of the Trust, the Trust has received an aggregate of $51.5 million from settlements negotiated with various defendants, including $23.7 million received from Morgan Stanley as described above.

---

[17] Plan 1.1.236, 5.13
[18] LTA 3.4(b)

**Tribune Litigation Trust**
Annual Report
*For reporting period beginning January 1, 2018 and ending December 31, 2018*

Until the Trust Loan is fully repaid, the amount that may be set aside in the Expense Fund is capped at $25 million.[19] Once the Trust Loan has been repaid, there is no limit to the amount the Trustee may set aside for expenses.[20]

### Note 7: Taxes

The Trust will file federal income tax returns on IRS Form 1041 as a grantor trust and report, but not pay tax on, its respective items of income, gain, loss deductions and credits (the "Tax Items"). As a grantor trust, the Trust is not required to prepare Schedules K-1 for the beneficiaries. Rather, the Trust will provide each beneficiary with a "Grantor Letter" detailing the beneficiary's pro-rata share of such Tax Items for federal income tax purposes. Each holder of an LTI will be required to report his, her, or its proportionate share of such Tax Items, as reported on the Grantor Letter, on his, her, or its federal and, if required, state income tax returns, and pay any resulting federal, and if required, state income tax liability, regardless of whether the Trustee distributes sufficient cash to pay such taxes.

The Trustee has decided that the LT Reserve should be treated as a complex trust for tax purposes. It will pay taxes currently on any income it earns prior to making distributions. Holders of allowed claims that receive distributions of funds would receive a credit for any income taxes paid by the LT Reserve for the taxable year of distribution on account of such funds.

### Note 8: Interests in the Trust

The Plan provides that former creditors of the Debtors received LTIs in accordance with the class of their allowed claims against the Debtors. The LTIs are recorded and maintained on a class by class basis based on the allowed amount of total claims in each class. The percentage of each class of claims held by any one beneficial holder is the amount of the creditor's allowed claim in each class divided by the total allowed claims in each class.

Noteholder claims in classes 1E and 1J (excluding claims in Class 1J held by noteholders who have tendered their notes) are in turn broken down by original CUSIP number and the successor escrow CUSIP number. The percentage ownership of each CUSIP (or escrow CUSIP) held by any owner is the amount of the Noteholder's allowed claim divided by the total notes represented by that CUSIP number.

a) Holders of Senior Loan Claims are entitled to a Pro Rata share of Class 1C Litigation Trust Interests based on the aggregate amount of all allowed Senior Loan Claims as of the record date of November 19, 2012;

b) Holders of Bridge Loan Claims are entitled to a Pro Rata share of Class 1D Litigation Trust Interests based on the aggregate amount of all allowed Bridge Loan Claims as of the record date of July 23, 2012;

c) Holders of Senior Noteholder Claims that elected treatment Option 1 or 2 are entitled to a Pro Rata share of Class 1E Litigation Trust Interests based on the aggregate amount of all allowed Senior Noteholder Claims on a CUSIP by CUSIP basis as of the record date of December 31, 2012;

---

[19] LTA 3.4(c)
[20] Ibid

d)  Holders of allowed Other Parent Claims that elected treatment Option 3 or 4 are entitled to a Pro Rata share of Class 1F Litigation Trust Interests based on the aggregate amount of all allowed Other Parent Claims as of the record date of July 23, 2012;

e)  Holders of PHONES Notes Claims are entitled to a Pro Rata share of Class 1J Litigation Trust Interests based on the aggregate amount of all allowed PHONES Notes Claims on a CUSIP by CUSIP basis as of the record date of December 31, 2012; and

f)  Holders of EGI Notes Claims are entitled to a Pro Rata share of Class 1I Litigation Trust Interests based on the aggregate amount of all allowed EGI Notes Claims as of the record date of July 23, 2012.

The value of the Trust Assets at the Effective Date is treated as the tax basis of the LTIs for tax purposes only and is allocated among holders of LTIs in accordance with Exhibit C of the Trust Agreement. LTIs which have an allocation, after the value for tax purposes has been fully allocated to other LTIs, will have a zero tax basis.

## Note 9: Trustee Fees

Litigation Trustee fees are subject to Board approval. On an interim basis the Litigation Trustee was billing the trust at the rate of $950 an hour, subject to a 20% holdback. Fees for the period prior to the Effective Date of $115,425, will not be paid to the Litigation Trustee until the Trust loan has been paid in full. In May and June 2014 the Trustee voluntarily deferred all fees exceeding $50,000 ($52,600 and $85,375, respectively). Effective January 2019, a definitive agreement for Trustee fees was reached pursuant to which the Trustee will continue to bill at $950 per hour subject to a 20% holdback. The Trustee received a board approved $250,000 in December 2018, as partial payment of previously deferred fees. The balance of other deferred fees will be paid if there are adequate cash reserves, subject to Board approval. The Trustee will also be entitled to a contingent fee ranging from 1% to 1.5% out of distributions to Trust Holders after distribution of the $ 90 million priority payment and repayment of the $ 20 million loan under the Plan and Trust Agreement.

Fees billed, inclusive of the 20% holdback are as follows:

a.  $115,425 for the period prior to the effective date from June 2012 through December 30, 2012;

b.  $2,079,330 for December 31, 2012 through December 31, 2018.

**Tribune Litigation Trust**
Annual Report
*For reporting period beginning January 1, 2018 and ending December 31, 2018*

## G.  Claims Analysis

| Claimant | (1) | Claim Amount | Claim Adjusted for Fees Paid by Noteholders | Initial Distribution Per Plan | Allowed Claim Less Plan Distribution | Relinquished in Settlement | Distribution From State Action | Distribution From Trust |
|---|---|---|---|---|---|---|---|---|
| Class 1 C - Senior Loan Claims | (2) | $  8,452,244,258 | $  8,452,244,258 | $  7,289,617,703 | $  1,162,626,555 | $  - | $  - | $  - |
| Class 1 D - Bridge Loan Claims | (3) | $  1,618,797,903 | $  1,618,797,903 | $  64,500,000 | $  1,554,297,903 | $  - | $  - | $  - |
| Class 1 E - Senior Noteholder Claims | | | | | | | | |
| Class 1 E - Electing Noteholders | (4) | $  96,584,459 | $  98,168,425 | $  36,782,197 | $  61,386,228 | $  - | $  - | $  1,429,736 |
| Class 1 E - Non Electing Noteholders | | $  1,146,843,437 | $  1,174,429,587 | 358,024,330 | $  816,405,257 | $  - | $  - | $  17,104,519 |
| Class 1 E - MSCS (escrowed) | (5) | $  39,627,848 | $  40,197,823 | 12,628,519 | $  27,569,304 | $  27,569,304 | $  - | $  - |
| Class 1 E - Law Debenture | (6) | $  14,665,492 | $  - | $  - | $  - | $  - | $  - | $  - |
| Class 1 E - Deutsche Bank | (6) | $  15,074,600 | $  - | $  - | $  - | $  - | $  - | $  - |
| | | $  1,312,795,835 | $  1,312,795,835 | $  407,435,046 | $  905,360,789 | $  27,569,304 | $  - | $  18,534,255 |
| Class 1 F - Other Parent Claims | | | | | | | | |
| Class 1 F - Allowed | (7) | $  64,007,499 | $  64,007,499 | $  21,038,307 | $  42,969,192 | $  - | $  - | $  1,465,745 |
| | | $  64,007,499 | $  64,007,499 | $  21,038,307 | $  42,969,192 | $  - | $  - | $  1,465,745 |
| PHONES | (8) | $  760,697,492 | $  760,697,492 | $  - | $  760,697,492 | $  - | $  - | $  - |
| EGI-TRB LLC Notes Claims | (9) | $  235,300,418 | $  235,300,418 | $  - | $  235,300,418 | $  - | $  - | $  - |
| **Total** | | $  12,443,843,406 | $  12,443,843,406 | $  7,782,591,056 | $  4,661,252,350 | $  27,569,304 | $  - | $  20,000,000 |

**Notes:**

(1) All Senior Noteholders, Senior Loan Claims and Bridge Loan Claims received Litigation Trust Interests.  Only those Other Parent Claimants ("OPC's") electing Options 3 & 4 received Litigation Trust Interests.  Allowed Claim amounts for Classes 1C, 1D and 1E are final.  Allowed Claim amount for Class 1F is estimated and subject to ongoing resolution of disputed claims.

(2) Per JPM senior lender list (Holdings as of the Distribution Record Date 11/19/2012) as amended for abandonments from claim holders with a total claim amount of $121.2 million.

(3) Per Proof of Claim amount filed as amended for an abandonment of a claim of $262,000.

(4) Noteholders who elected treatment option 1 under the Plan.

(5) As part of the settlement with Morgan Stanley Capital Services, MSCS relinquished any claim to an escrowed prior distribution and to any future distributions on account of certain debentures, including distributions of Litigation Trust I

(6) Comprised of Indenture Trustee Fees of $29.74 million.

(7) Class 1F Claim amount is as of December 31, 2016 and includes claims that have become allowed since the Effective Date. $673,330 of the amount distributed was placed in a reserve for disputed claims.

(8) PHONES Notes Claims (Allowed in the Aggregate amount of $759,252,932.00. Also included is Debtors scheduled pre-petition interest of $1,444,560.45 accrued between 11/15/2008 and 12/8/2008). The value of the Class IJ LT Interests is contingent and treated as zero. PHONES Notes Claims are split between Exchanged ($56 million) and Un-Exchanged Claims ($705 million).

(9) EGI Notes Claims which are subject to challenge by the Litigation Trust pursuant to Article XIII of the Plan and scheduled at $235.3 million. The value of the Class 1I LT Interests is contingent and treated as zero.

The foregoing annual report for the period commencing January 1, 2018 and ending December 31, 2018 was prepared in accordance with Section 8.1 of the Litigation Trust Agreement and is hereby distributed as of the date set forth below, by Marc S. Kirschner solely in his capacity as the Trustee, in accordance with the Plan and the Litigation Trust Agreement.

3/26/2019
Date

Marc S. Kirschner, Trustee