# United States Bankruptcy Court for the District of Delaware

**Robert Henke,**

      **Claimant,**

v.                                                                            **Bankruptcy Case No. 08-13141 (KJC)**

**Tribune Media Company,** *et al.*,

      **Reorganized Debtors.**

This document respectfully consists of two motions. They are aimed at increasing the fairness of proceedings related to the captioned dispute.

## Motion to recuse

Claimant requests that Your Honor recuse yourself from the case. He is concerned over the possibility of substantial bias on your part against him and believes that the "reasonable person" would be likewise concerned. It appears as if you have had *ex parte* communications with representatives of debtor, *The Baltimore Sun* ("*The Sun*"). Purely by chance, claimant recently found that *The Sun* had published a large article entitled *Part Four: Bankruptcy Inc.* in which you were covered heavily. The date of the article appears to be Jan. 16, 2013 though the "6" is hard for claimant to make out. Oddly, the date didn't carry over to his file as did the rest of the article so he has no means to clarify it. This date was in the thick of your deliberations on claimant's claim. Several matters strengthen his concerns over your neutrality:

    1) You did not disclose the communication to claimant, allowing him to object to it.

    2) The communication fits into a hard-to-dismiss decades-old pattern shown by *The Sun* that suggests, compellingly, it seeks to interfere with claimant's doings.

    3) Your failure to notify claimant of the nature of the July 11, 2012 hearing on his claim and what was required of him seems out of character for a seasoned federal judge apparently nearing retirement. Claimant was so certain that the Court could not commit so substantive a process error that he wrote in his appeal " … he [claimant] assumes that the Court did not err materially in following the process that it did." (p. 12, appellant's opening brief)

    Regarding your May 25, 2016, ruling/opinion on the subject claims (nos. 3697 and 7106), claimant was similarly concerned over the number of "seemingly material issues or statements raised in the amended complaint" that "[t]he Court does not address,

addresses only partially, or addresses incorrectly". (p. 9, appellant's opening brief)

4) The May 25, 2016 ruling/opinion wasn't issued until roughly four years after the July 11, 2012 hearing. This is of special concern in that claimant, a *pro se* litigant, was clearly under fatal misconceptions. It appears to him that it fell on the Court to hold a status conference to point that out and allow him to take corrective steps.

5) The April 16, 2019, hearing for scheduling an evidentiary hearing gave claimant the distinct impression that both debtors' attorney and the Court were in a rush to evaluate claimant's evidence. He recalls debtors' attorney, in his opening statement, having said something on the order of having the expectation of disposing of the case in time for the judge's retirement. He does not recall Your Honor objecting to that zeal. Claimant felt that his case was being railroaded through the Court to an end based on something other than the evidence.

Given the complexity of his case, as he suggested during that hearing, he believes the June 20, 2019 date for an evidentiary hearing is far too severe for any semblance of justice. His efforts since the April 16 hearing have only intensified this belief. He is facing mounds of evidence collected over the past three decades; evidence that he needs to cull, organize, and explain. And that doesn't even include discovery.

6) It appears as if substantial efforts have been made towards influencing the Court. These are discussed in claimant's opening brief of his appeal under IV Compromised Deliberations (pp. 11, 69).

Briefly, during the Court's deliberations, reputable sources including national broadcasters put forth allegations that a Dr. Theodore Benzinger – claimant's now deceased step-father – carried out, as a Nazi during World War II, experiments on inmates of concentration camps. Placed him in the top-tier of war criminals.

The question naturally arises, was the Court influenced? The concerns expressed above suggest that that possibility can't be ruled out.

## Motion regarding conduct of debtors' attorneys

As the Court knows, from the April 16, 2019 hearing and possibly from claimant's opening appellant's brief and three-page letter to the District Court that handled his appeal, he sees the Bankruptcy Court as an illegitimate forum for his lawsuit. Facts and reason suggest that debtors' attorneys took advantage of his *pro se* status, deceiving him into arguing his case before that Court. Herein, claimant provides a brief statement of the most relevant facts of the matter. Details of the matter are provided in the brief (I. Denial of due process, p. 3 and A. Arguments, p. 12) and the letter (pp. 3-4). Much of the following is taken from that letter.

In a Mar. 28, 2012 telephone conference with claimant, a Ms. J. Ludwig and Mr. D. Twomey, both attorneys for *Sidley Austin LLP*, proposed arguing his case in the Bankruptcy Court instead of the Baltimore Court in which the parties had long been planning to argue the case. The attorneys, though, did not disclose to him that the proceedings for the two were materially different from each other. This fact was well beyond his grasp; he agreed to the change. In view of the harm caused by his uninformed consent, the non-disclosure was troubling enough.

However, since he submitted his appeal documents, he has found *Sidley Austin's* fault to be even more troubling than a nondisclosure of a material fact. It appears as if it had interfered with his learning of that fact; and dispensed legal advice to him in doing so as well. He understands that the former can create a duty to disclose and that the latter violates accepted practice.

Regarding details, in a Saturday, Mar. 10, 2012, email, Ms. Ludwig wrote, in relevant part,

> We [presumably Ms. Ludwig and Mr. Twomey] would like to set up a telephone conference with you to discuss your proof of claim against the Baltimore Sun and the Debtors' pending objection to the claim in the bankruptcy proceedings.
>
> Please let us know if next Tuesday or Wednesday would work for you, ...

The relevant part of claimant's Monday, Mar. 12, 2012, email reply:

> Regarding your request to set up a telephone conference to discuss my proof of claim against *The Baltimore Sun* and the corresponding Debtors' pending objection, it comes as somewhat of a surprise that, at this stage, we are stepping back to these matters and I would greatly appreciate your providing me more detail as to what it is you have in mind to discuss. I am asking this of you so that I have some basis for judging the best time for the conference. In particular, if the subject matter requires a fair amount of thought on my part, I would tend to favor a day that would allow me the needed preparation, perhaps, beyond Tuesday or Wednesday.

Not having received a reply to this email, claimant sent an email on Wednesday, Mar. 21, 2012, to Ms. Ludwig largely on other matters. However, as follows, he did address the issue of the telephone conference:

> Regarding your March 10, 2012[,] email in which you requested a telephone conference to discuss my proof of claim and the Debtors' objection and also regarding my March 12, 2012 response, since I have not heard from you on this matter I have assumed that you no longer have need to address the matter.

The relevant part of Ms. Ludwig's Wednesday, Mar. 21, 2012, reply:

> Thank you for your emails, and apologies for not responding sooner to your request for clarification on the proposed conference call to discuss the matter further. We would still like to schedule a call with you.
>
> The purpose of the call is for us to provide an update on the current status of the overall bankruptcy case and also on our thinking with respect to your claim. *We do not believe that the call will require advance preparation by you and we anticipate that it would take no more than half an hour.* (emphasis added)

Aside from the hindsight find that the email failed to provide a meaningful reply to claimant's request for greater detail as what was to be discussed in the telephone conference, the reply left him with the impression that the matter of the conference call was far less than consequential. Seeing *Sidley Austin* as a firm of high standing, appellant accepted Ms. Ludwig's writing in good faith. He approached the Mar. 28, 2012, call without further thought.

It's difficult to overstate just how consequential said matter was. Appellant's uninformed consent to *Sidley Austin's* proposal, put forth after all the work towards the Baltimore Court, may well have been pivotal to the outcome of his lawsuit. And so, it may well have brought down on his family continued untold grief.

Regarding a duty to disclose, claimant cites *Prosser and Keeton on Torts*; fifth edition; 1984 (p. 739, in section 106. Representation and Nondisclosure):

> … there has been a rather amorphous tendency on the part of most courts in recent years to find a duty of disclosure when the circumstances are such that the failure to disclose something would violate a standard requiring conformity to what the ordinary ethical person would have disclosed. …

A list of factors of importance included the following:

> (7) The importance of the fact not disclosed;
>
> (8) Any conduct of the person not disclosing something to prevent discovery. [Footnote] 42 [seemingly includes a dissent of a sort]. The active concealment of any material fact – anything that might prevent the purchaser from buying at the price agreed on is, and should be, as a matter of law fraudulent.

Given Ms. Ludwig's command of bankruptcy law; the complexity of appellant's claim; his *pro se* status; and more, it is difficult for him to see her as being unaware of what could come of his claim, that he was under fatal misconceptions, and that his consent likely doomed the claim. Her failure to bring out either to him or the Court that he appeared to be under such misconceptions suggests that she intended for him to be under them.

Regarding the inappropriate dispensing of legal advice, appellant has learned, through informal exchanges, that legal advice may be seen as any information that might change the course of legal activity. The emphasized statement of Ms. Ludwig's Mar. 21, 2012, email would seem to qualify. Appellant further understands that an attorney's giving legal advice to one other than the attorney's clients is a violation of well-accepted professional conduct.

The losses brought about by claimant's uninformed consent appear to have been immense. For one, on Mar. 28, 2012, he had resources in an amount seemingly more than sufficient to engage in a respectable discovery effort. He no longer does. For example, at this time, he can't even begin to consider a deposition. And he does not believe that it would have taken 7 years for the Baltimore Court to reach the stage at which the proceedings now are - the discovery stage. In that court, discovery would have explicitly followed the complaint-answer stage, assuming the complaint survived a motion to dismiss. Especially with that court's practice of allowing amendments to complaints, he believes that to be a reasonable expectation. Moreover, he believes that the evidence supporting his allegations is particularly strong; even as a *pro se* litigant he had a respectable chance of prevailing.

Regarding other substantial losses, one relates to the seeming requirement at the answer stage for the defendant to admit to or deny each of plaintiff's allegations. To date, and it has been over eleven years since the publication of the article in dispute, *The Sun* has yet to provide any meaningful account of its doings, such as admissions and denials. That seems out of hand. Moreover, claimant was denied a jury trial. He understands that such a trial is preferable in a defamation case in that a jury likely is more representative of the readership of a news article

than a single individual. That makes it more able to identify what the public sees as defamation.

As the Court knows, claimant does not believe that the Bankruptcy Court is a legitimate forum for his case. It is one that came about through seeming deceit. He does not believe that acting on so glaring a wrong would be inconsistent with the order of the District Court. He does believe that inaction would violate, at least in sprit, the Constitution, assuming it to reflect the thinking of reasonable people.

## Conclusion

Claimant respectfully requests the following of Your Honor:

1) That you recuse yourself to prevent the appearance of partiality towards a party;

2) That you order the reorganized debtors, at the very least, to restore the resources that claimant had on Mar. 28, 2012 to mount a discovery effort;

3) That you suspend the deadline for discovery requests and the evidentiary hearing until the issues presented herein are resolved;

4) That you reconsider extending the period for the gathering of evidence so that claimant has the opportunity to carry out a respectable showing of evidence; and

5) That you provide any other relief that you see to be appropriate.

Claimant greatly appreciates any efforts that you give to these matters. Meanwhile, he will be seeking to arrange a hearing on them.

Lastly, claimant should note that the circumstances did not allow the level of checking to which he is accustomed. Though there may be minor errors, he believes this mailing to be substantially correct. He apologizes for any missteps.

Respectfully submitted,

*Robert Henke* , May 9, 2019

Robert Henke, *pro se* litigant
4104 Hearthside Drive, Apt. 101
Wilmington, North Carolina  28412
hroberthenke@aol.com
910-791-3896

## Certificate of service

On May 9, 2019, I sent, by U.S. mail and email, a true and correct copy of this document to the following:

James F. Conlan, Esquire, *Sidley Austin LLP*
Kenneth P. Kansa, Esquire, *Sidley Austin LLP*
Allison Ross Stromberg, Esquire, *Sidley Austin LLP*
One South Dearborn Street
Chicago, IL 60603

Norman L. Pernick, Esquire, *Cole Schotz P.C.*
J. Kate Stickles, Esquire, *Cole Schotz P.C.*
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

Nathan Siegel, Esquire, *Davis Wright Tremaine LLP*
Suite 800
1919 Pennsylvania Avenue NW
Washington, DC 20006-3401

*Robert Henke*          May 9, 2019

Robert Henke, *pro se* litigant
4104 Hearthside Drive, Apt. 101
Wilmington, North Carolina 28412
hroberthenke@aol.com
910-791-3896