1     UNITED STATES BANKRUPTCY COURT
       DISTRICT OF DELAWARE
2

3 IN RE:         . Chapter 11
            .
4 TRIBUNE MEDIA COMPANY, *et al.*, . Case No. 08-13141 (BLS)
 (F/K/A TRIBUNE COMPANY),  . (Jointly Administered)
5            .
            . Courtroom No. 1
6            . 824 Market Street
     Reorganized Debtors. . Wilmington, Delaware 19801
7            .
            . Thursday, May 23, 2019
8 . . . . . . . . . . . . . . . . 12:03 P.M.

9     TRANSCRIPT OF TELEPHONIC STATUS HEARING
    BEFORE THE HONORABLE BRENDAN L. SHANNON
10     UNITED STATES BANKRUPTCY JUDGE

11 <u>APPEARANCES:</u>

12 For the Debtor,
 Tribune Media Company,
13 Reorganized Debtors:  Kenneth P. Kansa, Esquire
         SIDLEY AUSTIN, LLP
14         One South Dearborn
         Chicago, Illinois 60603
15
         -and-
16
         Nathan Siegel, Esquire
17         DAVIS WRIGHT TREMAINE, LLP
         1919 Pennsylvania Avenue NW
18         Suite 800
         Washington, D.C. 20006
19

20 (APPEARANCES CONTINUED)
 ECRO:       Dana L. Moore, ECRO
21
 Transcription Service: Reliable
22         1007 N. Orange Street
         Wilmington, Delaware 19801
23         Telephone: (302) 654-8080
         E-Mail:  gmatthews@reliable-co.com
24
 Proceedings recorded by electronic sound recording:
25 transcript produced by transcription service.

1 │ APPEARANCES (Continued):

2 │ For the Debtor,
  │ Tribune Media Company:    J. Kate Stickles, Esquire
3 │                          COLE SCHOTZ, P.C.
  │                          500 Delaware Avenue
4 │                          Suite 1410
  │                          Wilmington, Delaware 19801
5 │
  │ For Creditor,
6 │ Robert Henke:            Robert Henke, Pro Se

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                INDEX

2    MOTIONS:                                        PAGE

3    Telephonic Status Conference                      4

4    Transcriptionist's Certificate                   32

5                          -o0o-

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 12:03 p.m.)

2               THE COURT:  Good afternoon.  This is Judge

3     Shannon.

4               I understand from the operator that all necessary

5     parties are on the call.  This is a telephonic hearing in the

6     Tribune matter, Case Number 08-13141, and specifically

7     relating to proceedings between Tribune, the reorganized

8     debtor, and Mr. Robert Henke.

9               The record does reflect that this matter is in

10    anticipation of a hearing that's currently scheduled for the

11    20th of June and the Court is in receipt of submissions from

12    Mr. Henke regarding a number of requests for relief, but

13    specifically concerns with respect to whether the matter is

14    or will be fully ready for consideration before the Court on

15    the 20th.

16              I do note, also, that on May 14th, or dated May

17    14th on the docket, is the submission I mentioned a moment

18    ago from Mr. Henke that identifies, as a threshold request, a

19    motion to recuse, that is presumably directed to Judge Carey.

20    The record further reflects that Judge Carey has announced

21    his retirement, effective in August, and consistent with that

22    development, Judge Carey is transferring, or a number of his

23    cases have been transferred, to his colleagues.

24              So, this matter was transferred to me as a routine

25    reassignment, and I would simply note that the motion to

1   recuse was not actually granted, but I think, actually, they

2   probably crossed wires.  The motion to recuse is not granted.

3   The matter has been reassigned to me, and, therefore, as to a

4   request for recusal, that motion will be denied as moot.

5           Before we move any further, I would just like to

6   confirm, is Mr. Henke on the line, sir?

7           MR. HENKE:  This is he.

8           THE COURT:  Very good.  Good afternoon, sir, and

9   thank you for participating in the call that afternoon.

10          And do I have counsel for the reorganized debtor

11  on the line, as well?

12          MR. KANSA:  Your Honor, Ken Kansa, Sidley Austin,

13  on behalf of the reorganized debtor.  I also believe that I

14  have my co-counsel Nathan Siegel from the Davis Wright

15  Tremaine firm on the line --

16          MR. SIEGEL:  Yes, Your Honor.

17          MR. KANSA:  -- as well as --

18          THE COURT:  Very good.

19          MR. KANSA:  As well as Ms. Stickles from Cole

20  Schotz firm.

21          THE COURT:  All right.  Terrific.

22          MS. STICKLES:  Good morning, Your Honor.

23          THE COURT:  Good morning, and, again, or good --

24  now, it's afternoon.

25          I do appreciate everyone getting on the call, and,

1   again, I note that there's obviously a significant history to

2   the Tribune case generally, which was handled by Judge Carey

3   pre- and post-confirmation and there's obviously history

4   between Tribune and Mr. Henke.  I have had an opportunity to

5   review and familiarize myself with the record as it relates

6   to issues between the debtor and Mr. Henke.  I've reviewed

7   the District Court opinion sending the matter back down,

8   obviously, Judge Carey's opinion that led to that appeal,

9   and, ultimately, to the remand back to this Court.  And I've

10  reviewed and have had an opportunity to consider Mr. Henke's

11  most recent submission, as noted, dated May 14th.

12          And I've seen, and one of the things we're going

13  to talk about today, is the stipulation that's been signed by

14  both sides, dated on the docket for May 7, but dated May 2,

15  at least for purposes of signatures, that is the stipulation

16  between the debtors and Mr. Henke regarding the discovery

17  schedules.  So, I would at least observe and wanted to share

18  with the parties that I am familiar with the matter and I'm

19  still getting up to speed, but I don't need an extensive

20  background discussion for purposes of this status conference.

21  This is really for purposes of responding to the issues or

22  concerns that were raised in Mr. Henke's submission and,

23  specifically, to address questions about the proceedings

24  currently scheduled for the 20th of June.

25          Mr. Henke, since your submissions are the genesis

1  of this afternoon's call, I'd be happy to hear from you

2  first, sir.

3          MR. HENKE:  Okay.  If you'd just give me a few

4  minutes, I'd like to, before I get to the main issue, I'd

5  like to say a few words about the list of documents that

6  appeared in the agenda if that is okay with you.

7          THE COURT:  Okay.

8          MR. HENKE:  First of all, I'd like to remind the

9  Court that I feel that that list was built on a fraudulent

10 proposal, as you know, from my motion.  I think the case is a

11 misfit in the Bankruptcy Court.

12         Secondly, I do think the list of the document list

13 implies more progress towards justice than is the case and I

14 point out as my main example, it's been 11 and a half years

15 since the *Sun* published its defamatory article and we're just

16 now beginning on the evidentiary stage, and it seems like it

17 would not come very far.  Plus, for various reasons, I think

18 pages and pages of the writing in those documents is rather

19 empty in meaning.

20         And it appears as if the main product of what I

21 see as deceit has been a pivotal draining on resources that I

22 needed for a financially relevant, defamation, representation

23 case -- has relevance not only to me, partially, but also to

24 the nation.  And lastly, I should add that I wasn't invited

25 to add to that document list.  As a result, I think the list

1  is absent material dimensions.

2          THE COURT:  Mr. Henke, this is Judge Shannon.

3          MR. HENKE:  Yes?

4          THE COURT:  I'm satisfied -- I understand your

5  concerns.

6          MR. HENKE:  Uh-huh.

7          THE COURT:  I've had an opportunity, as I said, to

8  review the agenda and my focus on the matter was really

9  limited to the items that I identified for purposes of

10 setting up for today's conference.  So, I'm sympathetic, or I

11 understand the concerns you have with respect to the various

12 items that have been submitted to the Court in connection

13 with what is simply a status conference today, but,

14 obviously, I'm not conducting a hearing or a trial today, so

15 this is not a closed record for purposes of today and I'm

16 treating the materials that have been submitted, at most, as

17 background or context for the Court.  And I understand that

18 there is much more to this story, but I think we can move

19 forward, okay?

20         MR. HENKE:  Okay.

21         THE COURT:  So, then, Mr. Henke -- and, sir, I

22 just wanted to confirm -- am I pronouncing your name

23 correctly, sir?

24         MR. HENKE:  Yes, very good.

25         THE COURT:  Very good.  So, with that, we're then

1  turning to the issues that were raised, and I think the

2  easiest thing for me to boil it down is, I read your

3  correspondence, again, which I believe your correspondence or

4  submission was dated May 9, docketed by the Court on the 14th

5  of May, and as I said, it starts with a motion to recuse.

6  There's issues with respect to the debtors', but most

7  specifically, for our purposes, I deem that you are asking

8  that the Court adjourn the hearing that's scheduled for the

9  20th of June and I would like to address that concern if I am

10  reading your papers correctly.

11            MR. HENKE:  Yes.

12            THE COURT:  Do you have anything to add, with

13  respect to your requests that the matters be adjourned, sir?

14            MR. HENKE:  No, not really.

15            THE COURT:  Well, then, I think I'd like -- and

16  before I hear from the debtor in response, I think I'd like

17  some clarity from you.  I have in the record before me, the

18  stipulation that the parties signed on the 2nd of May that

19  provided for mechanics of discovery and as I read it,

20  Paragraph 1 provides that you would issue discovery requests

21  by the 20th of May, which I think was Monday, that the *Sun*

22  would respond within 18 days, and that there'd be a hearing

23  scheduled on the 20th of June.

24            MR. HENKE:  Yes.

25            THE COURT:  That stipulation is signed by you and

1   it is signed by counsel for the reorganized debtor.  And it

2   seems that by a submission a week later, you are asking that

3   that schedule be changed.

4           I will simply observe that it's not typical that a

5   party that has stipulated to a schedule request that it be

6   modified only a week later.  So, I think I'd like some

7   clarity on that from you before I hear from the folks on the

8   other side, okay?

9           MR. HENKE:  Well, the reason for that is at the

10  time that I signed it, I felt pressed.  I felt like as if I

11  had no choice.  I mean, either show them my evidence or don't

12  and even under the tight constraints, I wouldn't have rather

13  than shown it, so I signed it, but with the intent of asking

14  for a relief from that.  I argued in the court that I

15  didn't -- in the hearing in the April 16th hearing that I

16  didn't think that that was a reasonable time and, you know, I

17  signed the document because I didn't feel I had any choice if

18  I wanted to go forward.

19          THE COURT:  Mr. Henke have you propounded or sent,

20  prepared and served any discovery requests?

21          MR. HENKE:  Yes, I have.  I sent those to Mr.

22  Kansa and the distribution that he normally --

23          THE COURT:  Okay.  So, you have sent requests and

24  they were sent by the 20th or we don't have an issue about

25  them being, you know, timely.  I'll hear from Mr. Kansa in a

1  moment.

2          So, the point is that you have at least asked for

3  certain information and my guess would be that you're now

4  waiting upon the *Sun* to respond; is that correct?

5          MR. HENKE:  Well, not entirely.  I did send a

6  document for requests and I had -- I wanted to attach to that

7  document, various PDF files, and I sent the document on the

8  20th, but I ran into computer problems.  Something happened

9  and I could not transmit the attachments.  I was only able to

10  transmit them the next morning on the 21st.

11          THE COURT:  Okay.  Well, I'll hear from Mr. Kansa

12  in response, or from anybody that wishes to be heard at the

13  appropriate time.  My point is that since I did not have an

14  opportunity -- or I did look on the docket and I didn't see

15  any notice of service, I wanted to find out if discovery has

16  been submitted.  If it's been submitted, you know, within the

17  ballpark of the deadline, I think we'd regard it as being

18  timely submitted for purposes of getting us to a hearing.

19          I have read, carefully now, a couple of times,

20  Judge Andrews' opinion, which remands the matter back to this

21  Court with instructions that there be an evidentiary hearing.

22  So, as I see the matter in front of me, the goal here is for

23  the exchange of information to allow for an evidentiary

24  hearing and, you know, I'll hear whether the debtor has any

25  objection on grounds of lateness to your submission, but, you

1   know, again, the main question I had to you was:  Has some

2   discovery requests been propounded?  And I think I'm hearing

3   from you that the answer is yes.

4              MR. HENKE:  May I ask you a question?

5              THE COURT:  Sure.

6              MR. HENKE:  Was I supposed to send you a copy of

7   my request?

8              THE COURT:  No, sir, you were not.

9              MR. HENKE:  Okay.  Because I was uncertain about

10  that.

11             THE COURT:  No, you were not, and I'm certainly

12  not faulting you for not having done so.  The Rules don't

13  require it and the stipulation doesn't require it and I would

14  not have expected it.

15             But the only question that I had was it wasn't

16  clear to me.  I see this date in this deadline that the

17  parties have agreed to of propounding discovery by the 20th.

18  So, my first question was, is that process underway?  And

19  you've answered that question for me.

20             But no, sir, you were not obliged to send it to

21  me, and I wouldn't typically get it and I'm certainly not

22  asking for it at this point, okay?

23             MR. HENKE:  Okay.  Thank you.

24             THE COURT:  Certainly.

25             All right.  Can I hear from -- Mr. Henke, do you

1    have anything else before I have to hear from counsel for the

2    reorganized debtors?

3          MR. HENKE:  No, not at this time.

4          THE COURT:  Very well.  Mr. Kansa, this is Judge

5    Shannon.

6          MR. KANSA:  Good afternoon, Your Honor.  Ken

7    Kansa, Sidley Austin, on behalf of the reorganized debtors.

8          I think I can clear up one issue that Mr. Henke

9    and the Court are having right off the bat, and say the

10   debtors have no objection to the timeliness of Mr. Henke's

11   discovery requests.  We did receive them, as Mr. Henke noted,

12   by email on the 20th and 21st, and we're satisfied with the

13   timeliness, Your Honor.

14         THE COURT:  Okay.

15         MR. KANSA:  I think that --

16         THE COURT:  Mr. Kansa, this is Judge Shannon, and

17   this is probably where you're going right now.  As noted, I

18   haven't seen these discovery requests, and this is not a

19   discovery hearing, but does the debtor intend to respond to

20   the discovery requests?

21         MR. KANSA:  We do, Your Honor.  The debtors have

22   stipulated that we would respond within 18 days of the time

23   the discovery requests were served.  I think it's fair to

24   characterize the discovery requests, without you having seen

25   them, Your Honor, as unconventional in nature, in that they

1  don't follow the standard form of interrogatories, requests

2  for admission, and request for production of documents.

3         We are reviewing those and attempting to sort out

4  the best way to respond in a cogent fashion to Mr. Henke's

5  requests and we believe we can do that in the near term;

6  however, if Mr. Henke is looking to reset the calendar for

7  this hearing, knowing that the Court may not have

8  availability on June 20th and subject, in any event, to the

9  Court's schedule, I think we are amenable to a brief

10 extension of the time for the hearing to occur.

11        The one other issue that I would want to address

12 with the Court is Mr. Henke's motion depleting his fine

13 styled motion regarding the conduct of the debtors' attorneys

14 makes requests that go beyond simply adjourning the discovery

15 timetable and the timetable for the hearing, and if the

16 debtors are to respond to that in writing -- although, it has

17 not been noticed for a hearing and Mr. Henke notes that he is

18 looking to set a hearing on that motion in his motion -- we

19 may need to address the timetable there, as well, Your Honor,

20 to allow the debtors to submit a written response to the

21 Court, if the Court deems that necessary.

22        THE COURT:  Okay.  Well, just for a bit of

23 clarity, my intention and expectation is that the hearing

24 that is scheduled for the 20th is on my calendar and I have

25 set time aside for conducting that hearing based upon the

1  stipulation and order that the parties into regarding

2  discovery and the hearing date.  So, I am not, at this point,

3  looking to adjourn that hearing.

4          I think what I'd like to do is ask if there are in

5  other party that wish to be heard.  But actually, Mr. Kansa,

6  I don't want to cut you off.  Did you have anything else to

7  add, sir?

8          MR. KANSA:  No, I think that gives the debtors the

9  clarity we need, Your Honor.

10          THE COURT:  Okay.  Any other party wish to be

11  heard?

12          MR. HENKE:  May I ask a question?

13          THE COURT:  Mr. Henke, hang on.  I will hear from

14  you in reply in just a moment.  I just want to make sure that

15  anyone and everyone that's on the call that wishes to be

16  heard has an opportunity to do so.

17          So, does anyone else wish to be heard before I

18  hear from Mr. Henke in reply?

19          MR. SIEGEL:  No, Your Honor.

20          THE COURT:  Okay.  Mr. Henke, you may proceed.

21          MR. HENKE:  I'm confused a little bit.  Mr. Kansa

22  spoke about setting another hearing and I thought that what

23  the agenda was, was the setting of this hearing -- of a

24  hearing.  I'm confused about a second hearing.

25          THE COURT:  Right.  And I think I'm trying to

1   answer that question.  So, here's what we're going to do.

2   There is a hearing that is scheduled for the 20th.  It is a

3   hearing that has been identified in a stipulation that's been

4   agreed to by the parties.  That stipulation also provides

5   that there is a mechanism for the exchange of discovery

6   between the parties.

7            It's my expectation that the debtor will respond

8   to the discovery requests.  I'm not surprised by Mr. Kansa's

9   characterization of the discovery requests as

10  "unconventional."  Mr. Henke is representing himself, but he

11  has a legal right to do so and the Court has significant

12  experience in managing litigation involving *pro se* litigants

13  and so I'll expect that the debtor will be able to construe

14  and respond to the discovery, as appropriate.

15           The hearing is scheduled for the 20th of June and

16  will go forward.  I don't believe right now at this point it

17  would be appropriate for me to consider adjourning or pushing

18  that hearing, particularly where the parties stipulated to

19  the date and particularly where the purpose of the hearing is

20  to provide for an evidentiary hearing, consistent with the

21  recommendations of Judge Andrews.  While the discovery is

22  pending, it seems to me that the hearing should be remain on.

23           Here's what I think is appropriate, though.

24  Mr. Henke has not yet received responses to the discovery

25  that he's propounded.  And I appreciate Mr. Kansa, the

1  debtors' agreement not to quibble over a day or two in terms

2  of the production.  I think my goal here is to get to the

3  merits of this dispute and to do so promptly.

4         So, here's what I'm going to do.  I'm going to

5  schedule a further pretrial conference and it'll be

6  telephonic, and it will be on the 17th of June at 12:00 noon.

7  At that teleconference, Mr. Henke, presumably, you will have

8  received the responses that are in -- to your discovery

9  requests and we can discuss anything that remains to be

10  prepared or needs to be done in order to have the evidentiary

11  hearing on the 20th.

12         If there is a basis for requesting that the

13  hearing on the 20th be moved to a different date in order to

14  allow for sufficient trial preparation, et cetera, then we

15  can have that discussion on the 17th of June.  Again, I don't

16  think it's appropriate or necessary at this point to discuss

17  adjourning that hearing until Mr. Henke knows what he's

18  received in response to his discovery requests and, again,

19  the goal is consistent with the remand instructions to get to

20  a hearing on the merits of the dispute.  So, that's where I'm

21  going to leave it.

22         And as to the balance of the relief that's

23  requested in the motion, if the parties want to calendar that

24  for a hearing, then we can do that.  But right now, the focus

25  of my attention I believe is to assist the parties in getting

1   to the hearing on the merits that is, again, scheduled by

2   stipulation between the parties, for the 20th of June.

3          The telephonic hearing on the 17th will give us an

4   opportunity to discuss and confirm that the matter is,

5   indeed, ready to go forward, and we can talk about some of

6   the details and mechanics of the hearing at that point, but I

7   would assume by then all parties will be informed as to what

8   the discovery is and, again, what the issues that will be

9   presented to the Court on the 20th.  And, again, if there is

10  a reason to request that that hearing be moved for whatever

11  reason, we can have that discussion on the 20th, as well,

12  okay?

13         Are there any questions this afternoon?

14         MR. HENKE:  Yes, I have several.  I'm very

15  confused about the various hearings that there will be.

16         THE COURT:  There's -- Mr. Henke, I just want to

17  be clear.  There's only going to be one hearing.

18         MR. HENKE:  Okay.

19         THE COURT:  Right now, it's scheduled for the

20  20th --

21         MR. HENKE:  Okay.

22         THE COURT:  -- and it is precisely the hearing

23  that was contemplated in the stipulation that was signed on

24  the 2nd of May and filed with the Court on the 7th.  So,

25  there is only one hearing.

1          There's a further -- there's a pretrial

2    conference, basically, a status conference, similar to what

3    we're doing right now that's scheduled for 12:00 noon on the

4    17th of June, and the purpose of that is simply to get

5    together, in advance of the 20th.  And the reason that I'm

6    doing that -- again, I want to be entirely clear so that

7    everybody understands exactly where we stand -- is that I

8    have been, as I said, on many, many occasions, called upon to

9    preside over significant hearings where one party is

10   representing themselves on a *pro se* basis, sometimes two

11   people.

12          MR. HENKE:  Uh-huh.

13          THE COURT:  One of my privileges here is that I

14   handle the majority of the personal and consumer bankruptcy

15   docket for the State of Delaware, so I do this a good deal.

16   And in my experience, when we set a substantive hearing and

17   we get to that hearing, there's often a lot of legwork that

18   needs to be done in order to make sure that each side has the

19   information that they were expecting, that there aren't any

20   surprise, and that everybody understands what it is that

21   we're doing for purposes of that hearing.

22          So, my goal would be that we have that discussion

23   on the 17th of June, just so that everybody is in agreement.

24   And as I said, if one of the points raised by you or,

25   frankly, by the other side, is this hearing shouldn't go

1  forward on the 20th of June because we're not ready for

2  trial, that's a discussion that we can have.  But, otherwise,

3  my assumption is that there's going to be a hearing.  There's

4  going to be a trial on the 20th of June and parties should

5  and will assume that that hearing is going to go forward.

6          And in anticipation of that hearing, we're going

7  to have a pretrial conference on the 20th [sic].  It'll be

8  telephonic, and I want to confirm, again, that, Mr. Henke,

9  your -- the fee associated with participation in the

10  telephonic hearing will be waived.

11          Could you confirm for me, sir, that it was for you

12  today?

13          MR. HENKE:  Yes, it was, and I really appreciate

14  that.

15          THE COURT:  I'm happy to oblige, and, again,

16  that's a standard procedure that I have, given the nature of

17  the docket that I have handled over many years.

18          But I will make -- that order will carry over to

19  the hearing on the 17th, so you'll be able to register for

20  that call without being charged.  So, hopefully, that's

21  responsive to your question.  There's only one trial.

22  There's only one hearing coming up and there's a telephone

23  that we'll have on the 17th in advance of that, okay?

24          MR. HENKE:  Well, could I ask one more question?

25  I hope this isn't a (indiscernible) one.

1           THE COURT:  No, sir.  You're welcome to.  Go

2   ahead.

3           MR. HENKE:  Yeah.  Could you possibly let me know

4   today, now, just what the nature of the hearing on the 20th

5   will be and what's going to be expected of me, the format of

6   it, things like that?

7           THE COURT:  I think what I would do is, the

8   hearing is essentially on the debtors' objection to your

9   proof of claim.

10          MR. HENKE:  Okay.

11          THE COURT:  And I know that there was a hearing

12  that was held in front of Judge Carey that led to an opinion

13  that Judge Carey issued that was appealed and then remanded

14  back by the District Court.  And I have at least some

15  familiarity with those proceedings, but I haven't studied

16  them deeply.

17          But, essentially, the concern that the District

18  Court expressed was that at the prior hearing in front of

19  Judge Carey, the District Court was concerned that it wasn't

20  clear that this was going to be a hearing on the merits of

21  the dispute, an evidentiary hearing, and so, but then in

22  Judge Carey's opinion, he cited to certain findings of fact

23  that he was making and the Court felt that there was a lack

24  of clarity and, perhaps, a lack of a reasonable expectation

25  on your part that there'd be a hearing with evidence and

1  submissions, and so Judge Andrews, from the District Court,

2  has sent the matter back and directed that we schedule a

3  hearing.

4          So, to the extent that you have evidence in

5  support of your claims, I would expect that you should come.

6  You should bring any documents and any information and

7  materials.  If there are other witnesses that have

8  information relevant to this that would be supportive of your

9  position, then you should try to line up those witnesses.

10 You should absolutely make sure that Mr. Kansa knows whatever

11 witnesses and exhibits you're going to bring.

12         Mr. Kansa will tell you well in advance whatever

13 witnesses or evidence he intends to bring and we're going to

14 conduct a hearing.  There's only so much -- I'll be honest,

15 Mr. Henke, there's only so much in terms of legal advice that

16 I'm permitted to give you, but, again, my goal here is to be

17 as crystal clear as I can so that everybody knows what's

18 going to happen and when, okay?

19         MR. HENKE:  Well, let me ask this, then.  I

20 apologize for bombarding you with questions, but this is the

21 first time for me.  Now, with the evidence, for example, if I

22 want to present a document, do I make a write-up that

23 explains the documents -- the document and, you know,

24 justifies it, you know, in other words, a brief that explains

25 the evidence that I'm presenting?

1        THE COURT:  Okay.  A couple of things -- and,

2   again, we're getting pretty close to the edge of me lawyering

3   for you.

4        MR. HENKE:  Uh-huh.

5        THE COURT:  All kidding aside, I'm going to ask

6   you to do the following.  I'm going to suggest that you

7   confer with Mr. Kansa.

8        MR. HENKE:  Uh-huh.

9        THE COURT:  As a general proposition, if you've

10  got a document, for example, and that document, you believe,

11  supports your position, you should let Mr. Kansa know what

12  that document is and that you intend to present it to Judge

13  Shannon as part of the hearing on the 20th.  One of two

14  things will happen.  Mr. Kansa will say, That's fine, you're

15  welcome to do that, and at which point, there's no issue.  If

16  Mr. Kansa says, I disagree and that's going to be a big

17  issue, then we'll -- then you'll need to be able to make an

18  explanation to me about how evidence should come into the

19  Court.

20        I'll be honest -- and I don't think that this is a

21  surprise to Mr. Kansa or other folks who have litigated in

22  front of me -- but I intend to take a fairly broad view of

23  documents.  My goal is to get as much relevant information

24  before me as I can, in order to avoid dealing with procedural

25  issues and technicalities and to rule on the merits, where

1  possible.  And I believe that the Third Circuit has

2  consistently admonished Trial Courts under its supervision

3  avoid technical and procedural defaults and to rule on the

4  merits, where possible, and I believe that's absolutely

5  consistent with the mandate that I have received from Judge

6  Andrews in this case.

7          So, I can't give you a lot of guidance in terms of

8  specific evidence, but I'm confident that you can have,

9  hopefully, a conversation with Mr. Kansa or some of his

10 colleagues about what it is that's going to be presented and

11 what it is that you intend to bring.

12         The last point I would make is that you mentioned

13 preparing a write-up or a brief for a submission or a

14 memorandum.

15         MR. HENKE:  Yes.

16         THE COURT:  And, again, I believe that I'm not

17 certain whether or not something along those lines has

18 already been submitted, but I believe that you should be

19 afforded an opportunity to make that pretrial submission that

20 explains essentially why you oppose the debtors' objection to

21 your claim.  And I'm not going to set a date or a deadline

22 for that, but you're going to need to come to an agreement

23 with Mr. Kansa on when you're going to submit that, if,

24 indeed, you want to do that.

25         MR. HENKE:  Okay.

1      THE COURT:  I will not -- as concerned as I am

2  that you are treated fairly, I am equally concerned that the

3  debtor not be surprised.  So, if you had a significant

4  submission that you wanted to make on the morning of the

5  20th, the chances are very slim that I would let you do that.

6      MR. HENKE:  Uh-huh.

7      THE COURT:  But if you want to be able to take the

8  opportunity to put it in writing why the debtors' objection

9  is not well-founded and why there are documents that support

10  your position and why I should overrule the debtors'

11  objection, I think that that is precisely what this hearing

12  is for.  And, again, what you should expect and what I think

13  you do expect, is that the debtors will present and prosecute

14  their objection to your proof of claim and to the extent that

15  they have evidence and testimony, that, likewise, will be

16  elicited at the hearing on the 20th of June, okay?

17      MR. HENKE:  Okay.  I have another.  Could you give

18  me an idea of how much time will be available?

19      THE COURT:  As a practical matter, we have --

20  we're scheduled in the morning, I believe --

21      MR. HENKE:  Uh-huh.

22      THE COURT:  -- and I will have, essentially, all

23  day for this matter.

24      MR. HENKE:  Okay.  Good.  All day.

25      THE COURT:  That's -- I'm not telling you that you

1  need to go all day, but I want to be clear that there will be

2  enough time in the day for a full presentation of everybody's

3  case.

4           MR. HENKE:  Could I --

5           THE COURT:  There is no prospect, sir, that we're

6  going to get halfway through a hearing and I'm going to say

7  Okay, we're done.

8           MR. HENKE:  Could I still continue?  Could you

9  give me an idea of what format we're going into; in other

10 words, do each of us make some kind of opening presentation

11 and then --

12          THE COURT:  I think that would be helpful.

13          MR. HENKE:  Uh-huh.  An opening.

14          Can you give me an idea how much time that would

15 be?  See, I have to say that in my hearing with Judge Carey,

16 I already bungled because I didn't know what was expected of

17 me in the hearing and I way overextended myself.

18          THE COURT:  Okay.  Well, here's what I think is

19 going to happen, and, again --

20          MR. HENKE:  Okay.

21          THE COURT:  --  I would suggest that you confer

22 with Mr. Kansa.

23          MR. HENKE:  Uh-huh.

24          THE COURT:  And I think Mr. Kansa is hearing me

25 loud and clear this afternoon that I want as much clarity on

 1  both sides as I can.

 2          MR. HENKE:  Uh-huh.

 3          THE COURT:  And this is the sort of collaboration

 4  that I would expect where both sides were represented by an

 5  attorney, and so, in some ways, I'm expecting that kind of

 6  coordination between the two of you.

 7          I think that it would be appropriate to have

 8  openings from each side.

 9          MR. HENKE:  Uh-huh.

10          THE COURT:  Those openings would be limited to

11  about 10 minutes, okay?

12          MR. HENKE:  Uh-huh.

13          THE COURT:  And the purpose of that would be to

14  tell me -- I will have reviewed all of the materials.  So,

15  I'm not coming to this cold.  You don't need to tell me your

16  name and explain to me everything from the beginning of time.

17  I will be familiar with matters.

18          But this will give you 10 minutes and, again, the

19  debtor in response.  The debtor will go first.  It is the

20  debtors' objection to your claim.

21          MR. HENKE:  Uh-huh.

22          THE COURT:  So, the debtor will come up and make a

23  presentation up to 10 minutes long, and the purpose of that

24  presentation will be to tell me, one, why I'm right and

25  you're wrong and what evidence I'm going to bring and show

1  you that will prove that up and, essentially, just tell me

2  what it is that we're going to -- what arguments are going to

3  be made to the Court in broad-brush.

4        After that -- so, Mr. Kansa will make an argument

5  or whichever attorney is representing -- Mr. Kansa, I'm not

6  meaning to jam this entire thing on you, but you're right now

7  my sights.

8        (Laughter)

9        MR. KANSA:  Understood, Your Honor.

10        THE COURT:  Okay.  So, I want -- after that,

11  Mr. Henke, you will provide your opening to the Court and

12  then we will move to essentially the trial.  The party that

13  bears the burden of proof at this stage, I believe, would be

14  the debtor, because it's the debtors' objection.

15        Mr. Kansa, does the debtor have a different

16  belief?

17        MR. KANSA:  The debtor believes the burden

18  shifting that I think the Third Circuit has articulated that

19  Mr. Henke has the obligation to demonstrate *prima facie*

20  entitlement to a claim and the debtors have then, we believe,

21  rebutted that through our objection.  And so, the burden, I

22  believe, is now on Mr. Henke to demonstrate his entitlement

23  to the claim.

24        I don't think it materially shifts because the

25  burden is ultimately, I believe the Third Circuit has said,

1    is always on the claimant to demonstrate the right to

2    payment, but we, at least, have the obligation here, I think

3    Your Honor is correct, to make our presentation as to why Mr.

4    Henke is not entitled to a claim and I think he needs to

5    overcome that.

6             THE COURT:  And I agree with you.  I'm certainly

7    familiar with the burden shifting that's described in

8    Allegheny and later cases, but as a practical matter from my

9    point of view, trying to structure this, I think I'd ask

10   whether or not you have any opposition to essentially going

11   first with your case, not just with the opening.  I believe

12   that it might help to provide a little bit of structure and I

13   believe that it might be helpful to have you provide an

14   opening, Mr. Henke provide an opening, and then the debtor

15   essentially presents its objection to the claim.

16            I don't dispute that you could do it another way,

17   but it might be the easiest way for us to get the evidentiary

18   process moving forward.  Is that acceptable to the debtor?

19            MR. KANSA:  That structure is acceptable to the

20   debtor, Your Honor.

21            THE COURT:  Okay.  So, Mr. Henke, what would

22   happen is, once you sit down from your opening, the debtor

23   will present, basically, their case in opposition to your

24   claim.  They will present whatever testimony or witnesses or

25   documents they have, and Mr. Kansa will let you know.  If

1  he's got witnesses coming, he will let you know in advance

2  who those witnesses are.  And if he's got documents that he

3  intends to introduce, he'll let you know in advance what

4  those documents are.

5         Once the debtor concludes their presentation

6  saying, Judge, this is what we have and this is why

7  Mr. Henke's claim should be disallowed and sustain our

8  objection, you will have an opportunity, then, to respond and

9  to submit to me and present any evidence.  If you have other

10  witnesses that come in, calling those witnesses at this time

11  would be the appropriate thing, and then when you're done,

12  the debtor would have an opportunity, essentially, to reply.

13         I don't, right now, know whether or not we would

14  have closing arguments, but that's a possibility.  But,

15  again, mostly, the goal is to get guidance from the parties

16  in the openings and then a presentation of the evidence and

17  submissions on both sides and then we can figure out if there

18  will be closings, okay?

19         Does that provide a little bit of clarity to you,

20  Mr. Henke?

21         MR. HENKE:  Oh, yeah.  This is really helpful.  I

22  could have used this last time.

23         But I have another question now.  When Mr. Kansa

24  takes the stage after my opening, do I ask questions of his

25  witnesses and of him or do I --

1          THE COURT:  You will have the right to ask

2    questions of his witnesses.

3          MR. HENKE:  Uh-huh.  During that time?

4          THE COURT:  During that time.  And the process

5    there is that Mr. Kansa, if he's got a witness, he will

6    elicit testimony and you will have the opportunity to cross-

7    examine.  If Mr. Kansa wants to submit documents in support,

8    you may have the right to object to the submission of those

9    documents -- do the admission of those documents, okay?

10          MR. HENKE:  Uh-huh.

11          THE COURT:  All right.  I believe that that covers

12   most of the matters that we have.  Again, I have set a

13   telephonic hearing, a status conference for the 17th of June

14   at 12:00 noon and, again, that is a pretrial conference for

15   purposes of addressing any open matters in anticipation of a

16   trial, presently scheduled to occur beginning at 10:00 a.m.

17   on the 20th of June.

18          Thank you very much, Counsel.  We're adjourned.

19        (Proceedings concluded at 12:52 p.m.)

20

21

22

23

24

25

1                         CERTIFICATION

2            I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8

9    /s/ William J. Garling                    May 28, 2019

10   William J. Garling, CET**D-543

11   Certified Court Transcriptionist

12   For Reliable

13

14

15

16

17

18

19

20

21

22

23

24

25