# **<u>EXHIBIT 3</u>**

✓ PREMIUM ACCESS PROVIDED BY UC DAVIS

THE CHRONICLE OF HIGHER EDUCATION          NEWS   OPINION   ADVICE   STORE   JOBS   LOG IN   SUBSCRIBE

SECTIONS    FEATURED:   Origins of an Admissions-Bribery Mastermind    The Outsourced University    The Successful President of Tomorrow

ARCHIVES

# Challenge to Peer Review

### Lawsuit against NSF could jeopardize confidentiality of federal grant process

By Stephen Burd  |  APRIL 06, 1994   ✓ PREMIUM

Washington, D.C. -- A federal district court here will soon hear a case that could lead to sweeping changes in how the government reviews researchers' grant applications.

A Maryland couple is suing the National Science Foundation and the National Institute of Standards and Technology after each agency turned them down for grants to study the usefulness of a device that the couple says tests the stability of soil in earthquake-prone areas. The pair is suing the agencies for refusing to reveal the names of the peer reviewers who examined their proposals and for failing to tell them what these peer reviewers said about their applications.

Robert and Wanda Henke, the couple, run a small research and development company, Dynamic In Situ Geotechnical Testing Inc., that focuses on geotechnical earthquake engineering. Mr. Henke was an assistant professor of civil engineering at the Johns Hopkins University from 1985 to 1989.

The Henkes received four grants from the NSF in the period from 1985 to 1993. But, Ms. Henke says, the agency turned down between 10 and 15 grant proposals in that same period.

The couple suspects that the agencies used peer reviewers who were biased against them, and who have been used repeatedly to deny them grants. Without all the evidence, they say, they can't know for sure whether their suspicions are correct.

"The real point we are trying to raise is that there are certain fundamental problems with secrecy and a lack of accountability in the peer-review system that you can't get at without making changes to make it a lot more open," says Eric R. Glitzenstein, the Henkes' attorney.

Federal agencies that give out grants using the peer-review systems differ on how much information they will provide to rejected applicants. But none release copies of the peer reviewers' comments with the names of the reviewers who made the comments attached to them.

Should the Henkes prevail in court, all federal agencies, including the National Institutes of Health, the National Endowment for the Humanities, and the National Endowment for the Arts, would be vulnerable to similar suits.

The result could be that federal agencies would no longer be able to guarantee confidentiality to people who serve on their peer-review panels. That, many scientists and scholars say, would chill the system, discouraging many top academics from giving advice to the agencies. Those who continued to serve, these scientists and scholars say, would probably not be as candid as they are now.

"I think that in any peer-review system, for papers, promotions, or grants, being able to solicit comments from people without having to divulge their specific identity is critical to make it work," says Philip A. Sharp, chairman of the department of biology at the Massachusetts Institute of Technology. "If you do not have that privilege, you will get increasingly fewer people to do so, and increasingly fewer revealing comments."

Jerold Roschwalb, director of federal relations at the National Association of State Universities and Land-Grant Colleges, says that if peer-review comments were attributed to the people who made them, the reviewers would be put at risk of lawsuits and harassment. "You probably won't get people to review, but if they do review, they'd be tormented," Mr. Roschwalb says.

The Henkes and their lawyer disagree, saying that more openness will bring more credibility to the peer-review system. All too often, they say, applicants are led to believe that their projects were rejected because of personal or career rivalries, conflicts of interest, or ideological differences.

"There have been too many examples of people who believe they've been wronged by the system for me to believe that the NSF grant-review system works well now," says Mr. Glitzenstein.

"Is it better to raise suspicions, rely on innuendo, or is it better to get to bottom of it, know who people are, and know why a grant did not get funded?"

The Henkes decided to sue after the two agencies refused their request to give the names of those who had reviewed their grant applications. The NIST also refused to hand over the written comments of the peer reviewers. The NSF gave the Henkes the written unattributed comments of four of the people who had reviewed their grant application, and the agency provided a list of the 12 people who had served on the panel that decided not to support their project. The NSF, however, refused to tell the Henkes which of the 12 panel members had written the comments.

Ms. Henke says that numerous rejections by the NSF over the last several years have left her suspicious. While she was not willing to specify her concerns, Ms. Henke says, "We want to look to see if there has been a repeated use of the same negative reviewers. You can tell from the syntax and the handwriting that there are similarities."

She says that while the NSF allows applicants to appeal final grant decisions if they believe that their proposals have been wrongfully rejected, especially if there are conflicts of interests, it is impossible to do so without knowing exactly who reviewed the proposal.

The Henkes turned to Mr. Glitzenstein to help them get this information because he had successfully sparred with the NSF before. He represented Jon E. Kalb, an independent geologist, in a fight with the agency.

Mr. Kalb sued the foundation, contending that false rumors that linked him to the Central Intelligence Agency had doomed his grant proposals. The rumors had been passed along by an NSF program officer to the peer panel that was reviewing his grant proposal. In a settlement in 1987, which awarded Mr. Kalb $20,000, the NSF maintained that the proposals had been turned down for legitimate reasons. But it apologized if the rumor had "played a role" in individual reviews by peer panelists.

Mr. Glitzenstein says the law requires the NSF to provide the information his current clients want. In court papers, he pointed to the Privacy Act, which states that each agency with "a system of records pertaining to individuals must allow access to the records by the persons who are the subjects of the records."

The NSF would not specify its legal reasoning for not revealing the names of the reviewers. But Mr. Glitzenstein says it has relied on an exemption to the act that applies to "investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for federal civilian employment, military service, federal contracts, or access to classified information."

That exemption, Mr. Glitzenstein says, applies to federal contracts, not to grants.

"Congress knew the difference between federal grants and federal contracts. And I think that NSF knows the difference too," he says.

He says that any other agency that relies on the exemption to refuse to provide all peer-review material is in violation of the law.

NSF officials deny that there has been any bias against the Henkes. Speaking privately, an NSF official points out that the application had received all negative reviews.

Lawrence Rudolph, the acting general counsel of the agency, says he believes the NSF's peer-review process works well as is. "We feel that it is important for us to get candid remarks from reviewers, and we do not feel in any way that that unfairly impacts people who submit proposals," he says.

Robert Charrow, a Washington lawyer who writes about legal issues affecting science, terms the case "interesting" and says the Henkes have a "chance" of winning.

"It would be an interesting conflict between the strict wording of the law and the public-policy considerations that if reviewers' names are made available they will be less able to speak frankly," he says. "The whole peer-review system works on that assumption."

Loren R. Anderson, head of the civil and environment engineering department at Utah State University and an NSF peer reviewer, says he has found the agency's merit-review process to be strong. Mr. Anderson says that applicants shouldn't worry about the biases of a single reviewer because "it is never one person who makes the decision."

Officials at other federal agencies say they would not want the system to change, either. Michael S. Shapiro, general counsel at the National Endowment for the Humanities, says, "The process has worked well and served the humanities-grantee community well."

© 2019 The Chronicle of Higher Education

1255 23rd Street, N.W.
Washington, D.C. 20037

