# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY, et al.,[1] (f/k/a Tribune Company), | Case No. 08-13141 (BLS) |
| | Jointly Administered |
| Reorganized Debtors. | **Hearing Date:  May 12, 2020, at 10:00 a.m. ET** |
| | **Re:  D.I. 14606** |

## REORGANIZED DEBTORS' BRIEF ON
## REMAND ISSUES REGARDING WTC FEE CLAIM

The reorganized debtors in the above-captioned chapter 11 cases (collectively, the "Reorganized Debtors") submit this brief on the "Remand Issues" regarding the WTC fee claim as outlined in the Court's Stipulated Scheduling Order [D.I. 14606] (the "Scheduling Order") and in response to the Declaration of James W. Stoll [D.I. 14609] (the "Stoll Declaration").

---

[1]  The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Media Company (0355); Chicagoland Television News, LLC (1352); and Tribune CNLBC, LLC (0347).  The corporate headquarters and the mailing address for each entity listed above is 515 North State Street, Chicago, Illinois 60654.

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ....................................................................1

II.   REMAND ISSUE ONE – WTC IS NOT ENTITLED TO A CLAIM
      FOR FEES IT HAS NOT PAID AND FOR WHICH IT IS NOT LIABLE.................3

      A.    WTC Did Not Pay And Is Not Liable For
            A Large Majority Of Its Claimed Fees ..................................................3

      B.    Tribune Is Not Liable For Fees WTC Did Not And Is Not Obligated To Pay ........6

III.  REMAND ISSUE TWO – WTC'S FEES ARE UNREASONABLE ...........................10

      A.    WTC Is Limited To A Reasonable Fee...................................................10

      B.    The Amount That Holders Of The PHONES Notes Were Willing To Pay
            Bears Upon The Reasonableness Of The Fee Claim ..............................12

      C.    The Fee Claim Is Unreasonable When Viewed "Through The Prism Of What
            WTC Knew At The Time It Acted"......................................................13

      D.    The Claimed Fees Are Objectively Unreasonable................................14

            1.    Inadequate Time Keeping Hinders Analysis
                  And Compels Reduction Of The Fee Claim ..............................15

            2.    The "Result Achieved" (Or Lack Thereof) Demonstrates
                  That The Fee Claim Is Not Reasonable ....................................17

            3.    Neither The Fees Incurred By Other Parties Nor The Dividend On
                  Other Parent Claims Make WTC's Fee Claim Reasonable ......................17

IV.   REMAND ISSUE THREE – WTC HAS NO CLAIM FOR MESIROW'S FEES ....19

V.    REMAND ISSUE FOUR – WTC HAS NO CLAIM FOR POST-EFFECTIVE
      DATE FEES .............................................................................................20

VI.   CONCLUSION ....................................................................................21

46429/0001-19090653v1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**Cases**

*Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*,
  73 F.3d 150 (7th Cir. 1996) ................................................................................12, 13

*Fishman v. Fox River Commons Shopping Ctr., LLC*,
  2012 Ill. App. Unpub. LEXIS 3057 (Ill. App. Ct. 2012) ........................................12

*Harris Trust & Sav. Bank v. American Nat'l Bank & Trust Co.*,
  230 Ill. App. 3d 591 (Ill. App. Ct. 1992) ...............................................................12

*Kaiser v. MEPC Am. Props., Inc.*, 164 Ill. App. 3d 978 (Ill. App. Ct. 1987)................................16

*In re Kroh Bros. Dev. Co.*, 105 B.R. 515 (Bankr. W.D. Mo. 1989)................................11

*Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518 (7th Cir. 1999) ...................12

*Mountbatten Sur. Co. v. Szabo Contr., Inc.*, 349 Ill. App. 3d 857 (Ill. App. Ct. 2004)................12

*Quick v. NLRB*, 245 F.3d 231 (3d Cir. 2001) .............................................................6, 8

*SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826 (9th Cir. 2009) ......................11

*Town of New Windsor v. Tesa Tuck, Inc.*, 935 F. Supp. 317 (S.D.N.Y. 1996)................................7

*Travelers Cas. & Sur. Co. v. Pacific Gas & Electric Co.*, 549 U.S. 443 (2007)..........................10

*Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211 (S.D.N.Y. 2010),
  *aff'd* 453 F. App'x 108 (2d Cir. 2012)..................................................................6-7

*In re Worldwide Direct, Inc.*, 334 B.R. 112 (Bankr. D. Del. 2005).........................................12, 18

**Statutes**

11 U.S.C. § 330(a)(1)(A) ....................................................................................10

11 U.S.C. § 503(b)(4) ........................................................................................10

11 U.S.C. § 506(b) ...........................................................................................10-11

11 U.S.C. § 523(d) ...........................................................................................11

46429/0001-19090653v1

I.    **PRELIMINARY STATEMENT**[1]

1.    Wilmington Trust Company ("WTC") served as the indenture trustee for unsecured bonds known as the PHONES Notes, issued by Tribune Company ("Tribune").  The PHONES Notes were subordinated to virtually all of Tribune's other debt.  From the very first days of Tribune's bankruptcy cases, it was apparent that there would be no distribution on the PHONES Notes absent a litigation "home run" resulting in avoidance of $8.6 billion in senior debt relating to Tribune's pre-bankruptcy LBO.  That litigation failed and holders of PHONES Notes ultimately received nothing in the bankruptcy cases.

2.    WTC served as a member of the official creditors' committee and was reimbursed for its professional fees in connection with that service.  WTC asserts a claim for an *additional* $30 million in fees it allegedly incurred during the bankruptcy cases.  The Bankruptcy Court (Judge Carey) followed the recommendation of the Mediator (Retired Judge Farnan) and disallowed that claim in its entirety, holding that the Bankruptcy Code does not authorize an unsecured claim for postpetition fees where, as here, the alleged basis for recovery is a prepetition contract (the PHONES Notes Indenture).[2]  The District Court reversed and remanded for consideration of the Reorganized Debtors' other objections to the claim.[3]

3.    This brief addresses those other objections, defined in the Scheduling Order as the "Remand Issues."[4]  As summarized below and detailed in prior briefing, on *Remand Issue One*, WTC is not entitled to any claim for professional fees it has not paid and for which it is not

---

[1]    Capitalized terms not defined in this brief have the meanings given in the *Fourth Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries (As Modified July 19, 2012)* [D.I. 12072] (the "Plan"), which became effective on December 31, 2012.

[2]    Stoll Decl., Exs. G and I.

[3]    Stoll Decl., Ex I.

[4]    The Reorganized Debtors preserve for further appeal the issue of categorical disallowance previously ruled upon by the Bankruptcy and District Courts.

46429/0001-19090653v1

liable.  The PHONES Notes Indenture, under which WTC's claim arises, limits WTC to reimbursement of fees actually advanced or incurred.  WTC only paid $3 million of the fees for which it seeks "reimbursement," and WTC is not liable for the remainder of those alleged fees. WTC structured its relationships with counsel and financial advisors to relieve it from any liability for their fees, $3 million of which were funded by holders of the PHONES Notes with the remainder subject to a contingency fee arrangement premised on a contingency (payment on the PHONES Notes) that never occurred.  Consequently, WTC's claim for reimbursement of fees may not exceed $3 million less the $1,259,800 that the Reorganized Debtors previously paid – a maximum claim of $1,740,200.

4.      On *Remand Issue Two*, WTC is limited in any event to a claim for "reasonable" fees and expenses.  WTC's $30 million claim is patently unreasonable given that actual holders of PHONES Notes only agreed to pay $3 million for WTC's efforts.  Given the out-of-the-money nature of the PHONES Notes, it was not reasonable for WTC to incur any additional fees, much less $30 million.

5.      On *Remand Issue Three*, WTC has no right to reimbursement of $7.5 million in fees charged by financial advisor Mesirow Financial Consulting LLC ("Mesirow").  The PHONES Notes Indenture does not provide reimbursement of financial advisor fees.  Further, Mesirow agreed that $4.9 million of those fees were the sole responsibility of Aurelius Capital Management ("Aurelius"), a holder of non-subordinated Senior Notes, and Aurelius ultimately paid almost all of Mesirow's fees.

6.      Finally, on *Remand Issue Four*, Tribune's Plan disallows WTC's claim for more than $1 million in fees incurred after the Effective Date of the Plan.

## II.    REMAND ISSUE ONE – WTC IS NOT ENTITLED TO A CLAIM FOR FEES IT HAS NOT PAID AND FOR WHICH IT IS NOT LIABLE

7.    The Plan permitted WTC to seek a General Unsecured Claim "for fees and expenses arising under Section 6.07 of the PHONES Notes Indenture."  Plan § 1.1.101. Section 6.07 provided for Tribune "to reimburse [WTC] . . . for all reasonable expenses, disbursements and advances incurred or made by [WTC] in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel) . . . ."[5]  Under the plain language of Section 6.07, WTC is not entitled to a claim for anything more than "*reimburse[ment]*" for "reasonable expenses, disbursements and advances *incurred or made* by" it.  But WTC only paid $3 million to its professionals and is not obligated to them for any other amount.  As a consequence, WTC has no right to "reimburse[ment]" for an amount more than $1,740,200 ($3 million less $1,259,800 previously reimbursed by the Reorganized Debtors).[6]

### A.    WTC Did Not Pay And Is Not Liable For A Large Majority Of Its Claimed Fees

8.    The PHONES Notes Indenture relieves WTC of any obligation "to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for

---

[5]    A copy of the PHONES Notes Indenture is attached as Exhibit E to the Stoll Declaration ("Tribune Obj."), at pages 62-138 of the pdf document.

[6]    Tribune paid WTC $763,208.47 on account of its service as a member of the creditors' committee and $496,592.22 on account of WTC's substantial contribution claim. Stoll Decl. ¶¶ 11-12.  WTC had requested an additional $679,000 in alleged fees relating to its service as a committee member, but the Mediator recommended disallowance of those fees and WTC withdrew the request. Stoll Decl., Ex. G at pdf pages 16-18 (Mediator's Report at 15-17).  WTC had requested payment of $7.1 million in fees on account of its alleged substantial contribution to the bankruptcy cases [D.I. 13272], but the Mediator recommended approval of only $497,000 of that request.  Stoll Decl., Ex. G at pdf pages 18-21 (Mediator's Report at 17-20).  The Reorganized Debtors paid that amount and WTC withdrew its request for the balance.

46429/0001-19090653v1

believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it."[7]

9.      Consistent with that protection, and given the reality that the PHONES Notes were subordinated and highly unlikely to receive any distribution, WTC ensured that it would have no liability to the professionals it retained in connection with the bankruptcy cases.  Instead, all fees were to be paid by Camden Asset Management, L.P. ("Camden") and Suttonbrook Capital Management LP ("Suttonbrook"), holders of PHONES Notes who directed WTC's actions.

10.     For example, the Brown Rudnick firm – WTC's primary counsel – included the following statement in its engagement agreement with WTC:

> Notwithstanding anything to the contrary herein, it is expressly understood that your liability for our fees and expenses, and the fees and expenses of outside parties retained by us, will be limited to the amounts you receive under that certain letter agreement of the same date hereof by and among Wilmington Trust Company and the holders' party thereto [Camden and Suttonbrook].  We understand that you will not advance your own funds to satisfy our invoices or the invoices of outside parties retained by us.[8]

Similarly, Mesirow agreed "that the liability of Wilmington Trust to pay [Mesirow]'s fees and expenses will be limited to the amounts received by Wilmington Trust under the Letter Agreement [with Camden and Suttonbrook].  Wilmington Trust will not advance its own funds to satisfy such fees and expenses.  As indicated by signature below, [Camden and Suttonbrook] assume responsibility for fees and expenses incurred by [Mesirow] under this agreement."[9]

---

[7]      Stoll Decl., Ex. E at pdf pages 105-06 (PHONES Notes Indenture § 6.01(c)(4)).

[8]      Stoll Decl., Ex. E at pdf page 259 [WTC1F05139].

[9]      Stoll Decl., Ex. E at pdf page 356 (Mesirow engagement agreement dated April 26, 2010) [WTC1F06169].  Mesirow's prior engagement agreement, dated February 2, 2010, limited its fee to $100,000, which apparently was paid by holders of the PHONES Notes.  Stoll Decl., Ex. E at pdf page 347 [WTC1F06177].

11.     Suttonbrook and Camden provided just $3 million to be "used to partially advance fees and expenses of certain of Wilmington Trust's professionals related to the exercise of rights under the PHONES Indenture."[10]  This raises the question of how the professionals could have charged $27 million in fees not funded by the directing PHONES Notes holders.  There are two answers.

12.     First, Brown Rudnick agreed to work on a contingency fee.  It agreed to a fee equal to "the higher of:  (i) its fees and expenses accrued or incurred in connection with this representation; or (ii) 10% of all recoveries obtained by the Trustee or the holders on account of the PHONES, with no ceiling or maximum."[11]  As WTC had no liability for the "fees and expenses accrued or incurred in connection with this representation," and the directing holders agreed to fund only $3 million (most of which was used to pay other professionals), Brown Rudnick agreed to take the risk of an unfavorable outcome in exchange for an uncapped, unlimited 10% cut of all payments made in respect of the PHONES Notes.  Patrick Healy, WTC's Vice President who oversaw the Tribune engagement, conceded at deposition that, given these facts, "[t]here really isn't much of a difference" between the Brown Rudnick fee and a "standard garden variety lawyer's contingency fee arrangement."[12]  Yet, WTC now asserts a claim for "reimbursement" for the entirety of Brown  Rudnick's *hourly* fees as if WTC had paid and been liable for them.

13.     Similarly, Mesirow ultimately was paid by Aurelius, the largest holder of Senior Notes (not PHONES Notes).  When Aurelius decided to advance a plan in competition to Tribune's Plan (the "Noteholder Plan"), Mesirow entered into a new, joint engagement

---

[10]    Stoll Decl., Ex. A at pdf pages 68-69 (WTC draft brief ¶¶ 9, 11).

[11]    Stoll Decl., Ex. E at pdf page 392 [WTC1F06137].

[12]    Healy deposition transcript at 83:19-85:8, excerpts attached as **Exhibit B**.

agreement with counsel for Aurelius, the Senior Notes Indenture Trustees, and WTC.[13]  In that

new agreement, Aurelius agreed to pay Mesirow "an initial work fee of $1,250,000" in

"recognition of past efforts dedicated by [Mesirow] to the Tribune case on Wilmington Trust's

behalf."[14]  Aurelius further agreed to be solely liable for all of Mesirow's fees relating to the

Noteholder Plan:  "none of the Firms nor the Co-Plan Proponents shall be obligated to pay the

Compensation, all of which shall be paid solely by Aurelius or its designee."[15]  Yet, WTC now

asserts a claim for "reimbursement" for the entirety of Mesirow's fees as if WTC had paid and

been liable for them.

### B.    Tribune Is Not Liable For Fees WTC Did Not And Is Not Obligated To Pay

14.    As noted, under Section 6.07 of the PHONES Notes Indenture Tribune agreed

only to "*reimburse*" WTC for the "reasonable expenses, disbursements and advances *incurred* or

*made* by" it.

15.    There can be no "reimbursement" absent payment of – or liability for – the sums

at issue.  *Quick v. NLRB*, 245 F.3d 231, 252 (3d Cir. 2001) (no reimbursement to claimant "for

legal expenses he never incurred and for which he has no personal liability"); *id.* at 256

("'*Reimburse' means 'to pay back to someone*.'") (quoting WEBSTER'S NINTH NEW COLLEGIATE

DICTIONARY 993 (1990)) (emphasis added); *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp.

2d 211, 219 (S.D.N.Y. 2010) ("The word 'reimburse' means 'repay' or 'pay back or compensate

(a person) for money spent or for losses or damages incurred.'") (quoting WEBSTER'S II NEW

---

[13]   Stoll Decl., Ex. E at pdf page 364 (Mesirow engagement agreement dated December 16, 2010) [WTC1F06142].

[14]   Stoll Decl., Ex. E at pdf page 366 (Mesirow engagement agreement dated December 16, 2010) [WTC1F06144].

[15]   Stoll Decl., Ex. E at pdf page 366 (Mesirow engagement agreement dated December 16, 2010) [WTC1F06144]; *see also* Stoll Decl., Ex. A at pdf page 80 (WTC draft brief) ¶ 40 (Aurelius advanced "payments totaling approximately $6.2 million to Mesirow . . . to satisfy fees and expenses of Mesirow in connection with the Debtors' chapter 11 cases.").

RIVERSIDE DICTIONARY 1324 (1988)), *aff'd* 453 F. App'x 108 (2d Cir. 2012).  WTC may be

"reimbursed" only for the $3 million it actually paid its professionals (less the $1.26 million for

which it already has been reimbursed).

16.    WTC has not "incurred" the other fees for which it is not liable:

> BLACK'S LAW DICTIONARY defines "incur" as "[t]o have liabilities cast
> upon one by act or operation of law, as distinguished by contract, where
> the party acts affirmatively.  To become liable or subject to, to bring down
> upon oneself, as to incur debt, danger, displeasure and penalty, and to
> become through one's own action liable or subject to."  The case law
> confirms that "incur" pertains to liability.  *See United States v. St. Paul
> Mercury Indem. Co.*, 238 F.2d 594, 598 (8th Cir. 1956) ("'Incur
> emphasizes the idea of liability'. . . .  [And i]t has been held that a thing
> for which there exists no obligation to pay, either express or implied,
> cannot in law be claimed to constitute an 'expense incurred.'"); *Waltuch v.
> ContiCommodity Services, Inc.*, 833 F. Supp. 302, 314 (S.D.N.Y. 1993)
> ("[t]he word 'incurred' means 'to become liable for'"), *aff'd in part, rev'd
> in part on other grounds*, 88 F.3d 87 (2d Cir. 1996); *Quarles Petroleum
> Co. v. United States*, 551 F.2d 1201, 1205 (Cl. Ct. 1977) ("To incur means
> to become liable for or subject to; it does not mean to actually pay for it.").

*Town of New Windsor v. Tesa Tuck, Inc.*, 935 F. Supp. 317, 320 n.3 (S.D.N.Y. 1996).

17.    In prior briefing, WTC cited Sections 5.03 and 5.04 of the PHONES Notes, but

those provisions do not create a right to payment for fees that are not WTC's obligation.

Section 5.03 provides for Tribune to pay to WTC an "amount as shall be sufficient to cover the

costs and expenses of collection, including the reasonable compensation, expenses,

disbursements and advances of [WTC], its agents and counsel."[16]  This provision involves only

"the costs and expenses of collection" on the PHONES Notes.  The millions of dollars in fees for

activities like investigation of the LBO, interaction with the Examiner, prosecution of the

Noteholder Plan, and objection to the various iterations of the Tribune Plan go well beyond any

"collection" of the PHONES Notes.  More importantly, Section 5.03 provides for Tribune to

---

[16]    Stoll Decl., Ex. E at pdf pages 99-100 (PHONES Notes Indenture § 5.03).

reimburse *WTC* for *its* costs and expenses of collection.  It does not require Tribune to "cover"

fees WTC is not obligated to pay.

18.     This point is driven home by Section 5.04, which authorizes WTC to claim "any

amount due it for the reasonable compensation, expenses, disbursements and advances of

[WTC], its agents and counsel, and any other amounts due [WTC] under Section 6.07."[17]  Here

again, WTC may assert a claim for amounts "due it", but may not seek to be reimbursed for

amounts for which it is not liable.

19.     Thus, WTC's assertion that "[n]othing in §§ 5.03 or 5.04 requires [WTC] to pay

first or be bound legally to pay before seeking reimbursement"[18] is both textually inaccurate (it

conflicts with the plain language of the PHONES Notes Indenture) and grammatically

nonsensical ("'[r]eimburse' means 'to pay back to someone,'" *Quick*, 245 F.3d at 256).

20.     Two examples make this point.  First consider Brown Rudnick.  Because holders

of the PHONES Notes were unwilling to pay for Brown Rudnick's hourly fees, Brown Rudnick

negotiated for a contingency fee of "10% of all recoveries obtained by [WTC] or the holders on

account of the PHONES, with no ceiling or maximum."[19]  As the prospect for payment on the

PHONES Notes became dimmer during the bankruptcy cases, Brown Rudnick actually

renegotiated its fee, increasing it from (1) a fee of 10% of the first $50 million in recoveries and

5% of recoveries over $50 million, up to an aggregate fee of $15 million,[20] to (2) the 10% with

---

[17]    Stoll Decl., Ex. E at pdf pages 100-01 (PHONES Notes Indenture § 5.04).

[18]    Stoll Decl., Ex. A ("WTC Opp.") at pdf page 35 (WTC Opp. at 27).

[19]    Stoll Decl., Ex. E at pdf page 392 [WTC1F06137].

[20]    *See Wilmington Trust Company's Application For Allowance Of Claim Under 11 U.S.C. §§ 503(b)(3)(D) And 503(b)(4) As A Result Of Wilmington Trust Company's Motion Requesting The Appointment Of An Examiner And Wilmington Trust Company's Participation In Examiner's Investigation And Granting Waiver Of Compliance With Del. Bankr. L.R. 2016-2(d) In Accordance With Del. Bankr. L.R. 2016-2(g)* [D.I. 13272] ("WTC Substantial Contribution App."), Ex. I [WTC1F06094].

46429/0001-19090653v1

"no ceiling or maximum" fee described above.  Brown Rudnick assumed the risk of non-payment in exchange for the potential of an unlimited fee "with no ceiling or maximum."  The contingency on which Brown Rudnick's fee was based – payment on the PHONES Notes – did not occur.  Yet, WTC now asserts a claim for nearly $22 million in Brown Rudnick's hourly fees.  Despite having bet and lost on a contingency that did not come to pass, Brown Rudnick (through WTC) seeks to have its cake and eat it too through a claim for the hourly fees that it purportedly would have charged if it was not working on a contingency basis.[21]

21.    Next consider Mesirow.  WTC asserts a claim for $4.9 million in Mesirow fees relating to its service as an expert jointly retained by Aurelius, the Senior Notes Indenture Trustees, and WTC in support of the Noteholder Plan and objections to Tribune's Plan.  As described in Section IV, below, Aurelius paid for all of those fees (and a substantial portion of Mesirow's other fees).  WTC was not liable for any of them.  Yet WTC now asserts a claim for the fees without even attempting to apportion them between whatever (minuscule) proportion of services Mesirow rendered to WTC and the vast majority rendered to Aurelius and the Senior Notes Indenture Trustees.[22]

22.    Limiting WTC's claim to amounts it paid or was obligated to pay does not "risk[] impairing the bond market"[23] or run "contrary to decades-old industry custom" as WTC

---

[21]    WTC attempted to justify this by noting that the Brown Rudnick engagement agreement provides for it to receive "the higher of" an unlimited contingency fee and its hourly fees.  That provision is a sham.  Had holders of PHONES Notes deemed it prudent to pay for Brown Rudnick's services, they would have negotiated a reasonable hourly fee or, alternatively, a straight contingency fee.  An agreement for accrual of hourly fees for which neither WTC nor the bondholders were liable – and for which there existed no means of recovery absent occurrence of the contingency that would trigger the unlimited contingency fee – cannot subject Tribune to liability.  WTC cites nothing for the proposition that an out-of-the-money indenture trustee can put the debtor in a "heads I win, tails you lose" position whereby the trustee's professional can obtain an unlimited contingency fee if success is achieved and be paid full hourly fees in the event of failure.

[22]    Mesirow did not keep time records for any of its work relating to the Noteholder Plan, making such an allocation impossible in any event.

[23]    Stoll Decl., Ex. A at pdf pages 15-16 (WTC Opp. at 7-8).

claimed.[24]  It merely ensures that indenture trustees do what their indentures contemplate in a

case where the issuer has become unable to pay – either arrange for bondholders to pay the fees

of their chosen professionals or hire professionals who are willing to defer payment (for either

hourly or contingency fees) until distributions are made.

## III.    REMAND ISSUE TWO – WTC'S FEES ARE UNREASONABLE

23.    Even if WTC otherwise is entitled to an unsecured claim for fees it has not paid

and for which it is not liable, WTC's claim is limited to fees that are "reasonable."  WTC's

claimed fees here are not.

### A.    <u>WTC Is Limited To A Reasonable Fee</u>

24.    Sections 5.03, 5.04 and 6.07 of the PHONES Notes Indenture expressly limit

WTC to a claim for "reasonable" fees and expense.[25]

25.    So does the Bankruptcy Code.  The Supreme Court has held that "[c]reditors'

entitlements in bankruptcy arise in the first instance from the underlying substantive law creating

the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy

Code." *Travelers Cas. & Sur. Co. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 450 (2007)

(quotations omitted).  The Bankruptcy Code consistently places "reasonableness" limitations on

the allowance of professional fees to be paid from the estate.  *See, e.g.*, 11 U.S.C.

§§ 330(a)(1)(A) ("reasonable compensation" to an estate professional); 502(b)(4) (disallowing

claims of debtor's attorney to the extent fee "exceeds the reasonable value of such services");

503(b)(4) (allowing "reasonable compensation" for attorneys' services in making a substantial

contribution in a case); 506(b) (permitting oversecured creditor to recover "reasonable fees,

---

[24]    Stoll Decl., Ex. A at pdf page 36 (WTC Opp. at 28).

[25]    Stoll Decl., Ex. E at pdf pages 100, 101, 108 (PHONES Notes Indenture §§ 5.03, 5.04 and 6.07).

costs, or charges provided for under the agreement or State statute under which such claim

arose"); 523(d) (providing "a reasonable attorney's fee" for successfully opposing a

nondischargeability action).  That overarching construct of "reasonableness" applies when

considering an unsecured creditor's claim for fees:

> While there is intuitive appeal to the . . . concern that an overactive
> creditor could unfairly run up fees, several factors reduce the potential for
> trouble.  First, the fee doctrines of many jurisdictions . . . impose
> requirements in the nature of reasonableness.  Second, the sections of the
> Bankruptcy Code that expressly focus on compensation for attorneys
> generally include limitations premised on reasonableness: *e.g.*,
> section 303(i)(1)(B) ("reasonable attorney's fee"); section 329(b)
> ("reasonable value of any such services"); section 330(a) ("reasonable
> compensation"); section 331 (incorporates section 330); section 502(b)(4)
> ("reasonable value of such services"); section 503(b)(4) ("reasonable
> compensation").  *It is counterintuitive to suppose that a court of equity
> would fully allow a claim for creditor's unreasonable attorneys' fees in
> litigating with an attorney who can receive only "reasonable"
> compensation.*

*SNTL Corp. v. Centre Ins. Co.* (*In re SNTL Corp.*), 571 F.3d 826, 845 n.20 (9th Cir. 2009)

(emphasis added).

26.     Because the standard for allowance of a fee claim by an unsecured creditor can be

no less stringent than that for a claim by a secured creditor, the case law construing

section 506(b) of the Bankruptcy Code is directly relevant.  The touchstone inquiry of

section 506(b) is "the economics of the situation":  "It is inherently unreasonable . . . to seek

reimbursement for fees 'that are not cost justified either by the economics of the situation or

necessary to preservation of the creditor's interest in light of the legal issues involved.'"  *In re*

*Kroh Bros. Dev. Co.*, 105 B.R. 515, 520-21 (Bankr. W.D. Mo. 1989) (quoting *In re Nicfur-Cruz*

*Realty Corp.*, 50 B.R. 162, 169 (Bankr. S.D.N.Y. 1985)).  Here, the "economics of the situation"

were that the PHONES Notes were subordinated to all material Tribune debt and that Tribune

was insolvent (non-subordinated unsecured creditors received only 33 cents on the dollar).  It

was readily apparent that holders of PHONES Notes would receive no distributions unless

$8.6 billion in senior LBO loans were avoided or limited.  WTC's fee claim is manifestly

unreasonable because no prudent person would have incurred $30 million in fees given the slim

chance of obtaining any recovery on the PHONES Notes.[26]

### B.    The Amount That Holders Of The PHONES Notes Were Willing To Pay Bears Upon The Reasonableness Of The Fee Claim

27.    Courts applying Illinois law have held that "the best evidence of the market value

of legal services is what people pay for it."  *Balcor*, 73 F.3d at 153.  "Indeed, this is not

'evidence' about market value; it *is* market value."  *Id.* (emphasis in original); *see, e.g., Medcom*,

200 F.3d at 520 ("The fees in dispute here are not pie-in-the-sky numbers that one litigant seeks

to collect from a stranger but would never dream of paying itself.").  Similarly, under the prudent

person standard applicable to indenture trustees WTC was "required to act with the same care as

if it owned the investment."  *In re Worldwide Direct, Inc.*, 334 B.R. 112, 129 (Bankr. D. Del.

2005).

28.    Here, the *actual* "owners of the investment" (Camden and Suttonbrook)

consciously limited to $3 million the fees for which WTC now claims $30 million.  This

undisputed fact is directly relevant to the reasonableness (or lack thereof) of WTC's claimed

---

[26]    Illinois law is consistent with bankruptcy law in this regard.  Under Illinois law a court will award only those fees that are reasonable.  *Mountbatten Sur. Co. v. Szabo Contr., Inc.*, 349 Ill. App. 3d 857, 873 (Ill. App. Ct. 2004).  "[A] party seeking to recover attorney fees from another party bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness."  *Harris Trust & Sav. Bank v. American Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 591, 595 (Ill. App. Ct. 1992).  Of particular note, "[i]n fee-shifting cases where attorney fees are being imposed on a third party, many of the usual motivations to rein in excessive fees may be lacking.  In such cases stricter scrutiny of the fee request is warranted because the attorney submitting billing statements . . . has no fiduciary relationship with the party ultimately liable for payment of those fees."  *Fishman v. Fox River Commons Shopping Ctr., LLC*, 2012 Ill. App. Unpub. LEXIS 3057, at *78 (Ill. App. Ct. 2012) (quotation omitted).  In those cases, it is the court's responsibility to "guard against moral hazard – the tendency to take additional risks (or run up extra costs) if someone else pays the tab."  *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 521 (7th Cir. 1999) (applying Illinois law).  In contrast, where a "[c]orporate inside counsel monitor[s] bills submitted by outside counsel[,]" and the bills are paid, reasonableness may be inferred.  *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996).

- 12 -

fees.  As noted by the Seventh Circuit in applying Illinois law, "the best guarantee of reasonableness is willingness to pay."  *Balcor*, 73 F.3d at 153.  By the same token, unwillingness to pay is a strong indicator of unreasonableness and evidence that an alleged fee is not justified by the economics of the situation.

29.     WTC previously argued that the unwillingness of holders of the PHONES Notes to invest more than $3 million is irrelevant (a "red herring") because contingency fee arrangements are commonplace.[27]  This misses the point.  The Reorganized Debtors do not assert that an indenture trustee cannot hire counsel on a contingency fee.  The Reorganized Debtors do object to WTC's retention of counsel on a contingency fee and subsequent effort to collect $30 million in *hourly* fees after the contingency that would trigger the fee failed to materialize.

**C.     The Fee Claim Is Unreasonable When Viewed "Through The Prism Of What WTC Knew At The Time It Acted"**

30.     WTC has asserted that the reasonableness of its fees "must be analyzed through the prism of what WTC knew at the time it acted."[28]  The Reorganized Debtors have no quarrel with that proposition.  But the undeniable fact is that the subordinated PHONES Notes were out of the money and had no prospect of recovery absent a "home run" litigation victory.

31.     From the start of the bankruptcy cases WTC itself argued that Tribune had been insolvent since 2007 (insolvency being a prerequisite to the LBO avoidance actions WTC sought to pursue).  The evidence at confirmation confirmed this, establishing that Tribune's total distributable value was $4 to $5 billion lower than the $12 billion in outstanding unsubordinated debt.[29]  WTC's own "substantial contribution" application acknowledged that WTC "was

---

[27]  Stoll Decl. Ex. A at pdf page 47-48 (WTC Opp. at 39-40).

[28]  Stoll Decl. Ex. A at pdf page 42 (WTC Opp. at 34).

[29]  *Memorandum Overruling Objections To Confirmation Of The Fourth Amended Plan Of Reorganization For Tribune Company And Its Subsidiaries And Denying Clarification Motion* [D.I. 12033] at 6 n.8.

cognizant [of] the fact that its avenues to recovery of its fees and expenses, including those of outside counsel, were limited."[30]  In particular, "recovering on a claim against the Debtors' estates under the PHONES Indenture was unavailable absent changes to the First Plan. Similarly, because there was no distribution to the PHONES, Wilmington Trust could not rely on its charging lien to pay its fees and expenses."[31]

32.     That is why Brown Rudnick negotiated for a contingency fee and Mesirow's arranged for Aurelius to pay its fees once it became clear that holders of the PHONES Notes were unwilling to foot the bill.  These facts speak for themselves.

## D.     The Claimed Fees Are Objectively Unreasonable

33.     In the objection to WTC's claim, the Reorganized Debtors painstakingly categorized WTC's alleged fees and provided twenty pages of detailed analysis to show their unreasonableness.[32]  WTC never responded to that analysis, which the Reorganized Debtors incorporate by reference here.[33]  The Reorganization Debtors also summarize some of the salient points on the attached **Exhibit A**.

34.     Instead of confronting the issue, in an effort to avoid judicial scrutiny WTC asserted that a detailed examination of its professionals' invoices was unnecessary and suggested that the Court should just apply a "typical" reduction of 10%-20% of the amount of its claim.[34]  WTC repeated that suggestion in the recently filed Stoll Declaration.[35]  WTC cannot escape

---

[30]   WTC Substantial Contribution App. ¶ 60.

[31]   WTC Substantial Contribution App. ¶ 60.

[32]   Stoll Decl., Ex. E at pdf pages 35-54 (Trib. Obj. at 26-46).

[33]   The Reorganized Debtors reserve the right to supplement this brief if WTC belatedly attempts a response in its reply brief on remand.

[34]   Stoll Decl. Ex. A at pdf pages 53-54 (WTC Opp. at 45-46).

[35]   Stoll Decl. ¶ 15.

examination so easily – a 10%-20% reduction of a patently unreasonable fee results in a fee that remains patently unreasonable.  Any across-the-board discount must be based on an analysis of whether the work undertaken by WTC and the fees associated with that work were necessary and reasonable in these cases.

       1.       Inadequate Time Keeping Hinders Analysis And
                  Compels Reduction Of The Fee Claim

    35.    WTC conceded that "Brown Rudnick's time detail contains lumped descriptions and may not otherwise strictly comply with the Local Rules."[36]  That is an understatement.  As summarized in prior briefing, Brown Rudnick's billing is replete with meaninglessly vague service descriptions covering huge blocks of time.[37]  The U.S. Trustee concluded that, "[n]otwithstanding its extensive bankruptcy experience, the Brown Rudnick time and expense submissions fail to comply with the applicable rules and guidelines,"[38] and the U.S. Trustee eviscerated Brown Rudnick's timekeeping practices:  "Overwhelmingly, the time entries are vague, and where numerous services were performed by the same person over a number of hours, the entries are lumped."[39]  The invoices are "replete with vague or incomplete entries on virtually every page,"[40] and "[v]irtually every page of the Brown Rudnick timesheets contains lumped entries."[41]  "[T]he amount of lumping in the Brown Rudnick timesheets is astounding, particularly for a firm which holds itself out as an experienced bankruptcy professional in

---

[36]   WTC Substantial Contribution App. ¶ 72.

[37]   Stoll Decl., Ex. E at pdf page 36 (Trib. Obj. at 27).

[38]   *United States Trustee's Amended Objection To WTC Substantial Contribution Application* [D.I. 13443] ("UST Obj.") ¶ 53.

[39]   UST Obj. ¶ 14.

[40]   UST Obj. ¶ 56.

[41]   UST Obj. ¶ 57.

complex cases such as this."[42]  Even worse, Mesirow submitted no time detail at all for services rendered after August 31, 2010 – a period for which WTC now asserts a reimbursement claim of nearly $5 million.

36.     WTC argued that vague and block-billed time records are "insufficient to justify disallowance of the claim under § 502(b)."[43]  This misses the point.  Vague (or missing) time entries make it impossible to match fees with specific tasks and thus do not permit a reasonable review of the fee claim.  *See Kaiser v. MEPC Am. Props., Inc.*, 164 Ill. App. 3d 978, 988 (Ill. App. Ct. 1987) (affirming denial of attorneys' fees that were block billed because the time records presented "no completely objective manner by which to determine the reasonableness of the charges").  To be clear, the Reorganized Debtors do not expect the Court to conduct "an hour-by-hour analysis of the time records."[44]  Meaningful fee records would enable the Court to *avoid* such a laborious review and rationally determine an appropriate discount based on the reasonableness of the services and the total hours spent on those tasks.  Those records do not exist here.

37.     WTC concedes that the Court should "'trim the fat' on the Fee Claim for any vagueness or lumping that may exist."[45]  The Reorganized Debtors provided detailed descriptions (twenty pages) of WTC's excesses for precisely that purpose.[46]  WTC never responded and instead suggested that the Court apply an arbitrary "percentage cut[]," without any rational connection between the level of the discount and the amount of unnecessary or

---

[42]    UST Obj. ¶ 57.

[43]    Stoll Decl. Ex. A at pdf page 40 (WTC Opp. at 32).

[44]    Stoll Decl. ¶ 15.

[45]    Stoll Decl. Ex. A at pdf page 41 (WTC Opp. at 33).

[46]    Stoll Decl., Ex. E at pdf pages 35-54 (Trib. Obj. at 26-46).

excessive time devoted to a task for which reimbursement is sought.  It is telling that WTC

seems to argue that the less information the Court can access, the better.[47]

2.      The "Result Achieved" (Or Lack Thereof) Demonstrates
That The Fee Claim Is Not Reasonable

38.      Inconsistent with its contention that the reasonableness of its fee claim "must be

analyzed through the prism of what WTC knew at the time it acted,"[48] WTC also argued that

"the result obtained for the PHONES Noteholders was substantial and justifies the allowance of

the fee claim."[49]  This is nonsense.  To repeat, at the outset of the cases it was apparent that there

would be no distribution to holders of the PHONES Notes, and holders of PHONES Notes

received *nothing* under Tribune's Plan.  As such, the vast majority of services for which WTC

now seeks payment were not objectively reasonable at the time they were rendered.

3.      Neither The Fees Incurred By Other Parties Nor The Dividend On
Other Parent Claims Make WTC's Fee Claim Reasonable

39.      WTC asserted that "one of the most appropriate ways to assess the reasonableness

question is to contrast its fees and expenses with those of the parties opposing it."[50]  But WTC's

superficial comparison of fees is meaningless because other constituencies had vastly different

claim sizes, responsibilities, and prospects of recovery – critical facts that comprise the

"economics of the situation" and necessarily inform any prudent person's decision to incur

fees.[51]  Critically, unlike WTC, the other constituencies also agreed to pay their own

---

[47]    WTC also sought to compare its time records to the fee requests submitted by senior lenders and members of
the creditors' committee.  Stoll Decl. Ex. A at pdf page 40 (WTC Opp. at 32).  Those fee requests were part of
the negotiated settlement embodied in the Plan, which provided for the settling parties to submit fee statements
"in summary form without individual time records."  Plan §§ 9.1.1, 9.1.3.

[48]    Stoll Decl. Ex. A at pdf page 42 (WTC Opp. at 34).

[49]    Stoll Decl. Ex. A at pdf page 50 (WTC Opp. at 42).

[50]    Stoll Decl. Ex. A at pdf page 52 (WTC Opp. at 44).

[51]    Stoll Decl., Ex. E at pdf pages 34-35 (Trib. Obj. at 25-26).

- 17 -

professionals, which necessarily resulted in the exercise of billing discipline sorely lacking from WTC's professionals.

40.     WTC complained that, "while every other party has had its professional fees allowed in full as part of their claims," the WTC fee claim would be paid at "32.73 cents on the dollar," something that WTC asserted should be "reduction enough."[52]  But the 32.73% distribution is what all unsecured creditors received under Tribune's Plan – it has nothing to do with the appropriate amount of the claim in the first place.

41.     WTC similarly averred that the Reorganized Debtors' objection to the fee claim is "inconsistent with their treatment of allowing claims for the other indenture trustees in this case, Law Debenture and DBTCA[,] . . . without any opposition or review and determination of reasonableness of conduct or review of time detail."[53]  But there was no need to review the fee claims of the Senior Notes Indenture Trustees because their fees were paid from the fixed pool of consideration to be distributed to Senior Noteholders,[54] meaning that *Senior Noteholders* paid the fees and allowance of the fee claims did not cost the Reorganized Debtors anything.  As Judge Carey recognized, "it is not unfair for Senior Noteholders to bear the cost of the Indenture Trustee Expense Claims when those expense claims provided a benefit to the Senior Noteholders only."[55]  In contrast, WTC seeks to have its fee claim allowed as an Other Parent Claim, meaning that payment would not be made by holders of the PHONES Notes and instead would come from assets otherwise available for distribution to other creditors.

---

[52]   Stoll Decl. Ex. A at pdf page 53 (WTC Opp. at 45).

[53]   Stoll Decl. Ex. A at pdf page 29 (WTC Opp. at 21).

[54]   *See* Plan § 3.2.5.

[55]   *Memorandum Overruling Objections To Confirmation Of The Fourth Amended Plan Of Reorganization For Tribune Company And Its Subsidiaries And Denying Clarification Motion* [D.I. 12033] at 18 n.26 (citing *Worldwide Direct*, 334 B.R. at 128).

- 18 -

## IV.     REMAND ISSUE THREE – WTC HAS NO CLAIM FOR MESIROW'S FEES

42.     Independently from the points made above, no part of WTC's claim for

$7.5 million in Mesirow's fees may be allowed.  To start, the PHONES Notes Indenture only

permits WTC to seek reimbursement for "the reasonable compensation and the expenses and

disbursements of its agents and counsel."[56]  Mesirow, as a financial advisor, is neither.  Mesirow

clearly is not counsel, and its engagement agreements with WTC specifically provide that

"neither party is or shall be considered an agent, distributor or representative of the other" and

that "[n]either party shall act or represent itself, directly or by implication, as an agent of the

other."[57]  Mesirow's December 2010 engagement agreement with respect to the Noteholder Plan

further provides that "it is expressly understood that (i) [Mesirow] does not hereby establish any

client relationship with any of the Co-Plan Proponents [including WTC], . . . and (iii) [Mesirow]

shall not take any direction or instruction from any of the Co-Plan Proponents."[58]  That is the

antithesis of an "agency" relationship.

43.     Further, as noted above, Mesirow's $4.9 million fees for post-December 2010

work relating to the Noteholder Plan (for which no time records were submitted) were incurred

principally, if not exclusively, for the benefit of the Senior Noteholders (not WTC) and were

paid exclusively by Aurelius.  Mesirow, in other words, worked for Aurelius, not WTC, as

evidenced by the fact that Aurelius's lawyers presented Mesirow's witness at the confirmation

hearing.

---

[56]    Stoll Decl., Ex. E at pdf pages 108-09 (PHONES Notes Indenture § 6.07(2)).

[57]    WTC Substantial Contribution App., Ex. I [WTC1F06157 and WTC1F06173].

[58]    WTC Substantial Contribution App., Ex. I [WTC1F06143].

44.     WTC asserted that this is unimportant "because Aurelius owns both PHONES notes and Senior Notes,"[59] but that contention does not pass the straight face test.  As Judge Carey witnessed on many occasions during the course of the bankruptcy cases, Aurelius acted as a Senior Noteholder at all times.  Given its vastly larger stake in Senior Notes and the negligible prospects of any recovery on the PHONES Notes, this was the economically rational course of action.  When the interests of the PHONES Notes and the Senior Notes diverged (including, most notably, when Aurelius sought reconsideration of an order relating to allowance of the PHONES Notes), Aurelius did not hesitate to advances the interests of Senior Noteholders at the expense of the PHONES Notes.

45.     WTC cannot credibly assert otherwise, yet it now seeks to be reimbursed for *all* of the work that Mesirow performed on behalf of Aurelius and the Senior Notes.  There is no conceivable basis for allowance of such a claim.

## V.     REMAND ISSUE FOUR – WTC HAS NO CLAIM FOR POST-EFFECTIVE DATE FEES

46.     The amount of the claim that WTC now asserts is $1 million greater than the claim it originally asserted.[60]  WTC increased its claim to include "supplemental fees and expenses" billed by counsel from January 2, 2013 through June 30, 2013.[61]  In fact, WTC claims to have incurred $2.1 million in fees during that six-month period but then "voluntarily" reduced its claim by $1.1 million.[62]

47.     That WTC incurred $2.1 million in fees in just six months of "prosecuting" its fee claim speaks volumes about the unreasonable nature of its fees in general.  More importantly,

---

[59]   Stoll Decl. Ex. A at pdf page 56 (WTC Opp. at 48 n.19).

[60]   Stoll Decl. ¶¶ 9-10.

[61]   Stoll Decl. ¶ 10.

[62]   *Declaration of James W. Stoll* [D.I. 14028-1] ¶ 3.

there is no ground for any claim for fees incurred after December 31, 2012, the Effective Date of

Tribune's Plan.  Pursuant to sections 1141 of the Bankruptcy Code and Section 11.1.1 of the

confirmed Plan, all prepetition claims (including claims under the PHONES Notes Indenture)

have been discharged.[63]  Confirmation expressly "discharge[d] the Debtors from all Claims or

other debts that arose before the Effective Date."[64]  In addition, under Section 3.2.9(c) of the

Plan, the treatment of the PHONES Notes Claims is "in full satisfaction, settlement, release and

discharge of and in exchange for Allowed PHONES Notes Claims against Tribune."[65]

48.     Accordingly, there is no remaining right to reimbursement under the PHONES

Notes Indenture, and WTC is not entitled to a claim for fees incurred after the Effective Date.

## VI.     CONCLUSION

If WTC's fee claim is not disallowed entirely, it should be limited to a maximum of

$1,740,200 ($3 million less $1,259,800 previously reimbursed) because WTC has only paid that

amount in respect of the fees for which it now seeks "reimbursement" and is not otherwise

obligated to pay anything for the balance.  Independently, WTC's claim should be materially

reduced due to the unreasonable nature of the fees it seeks.

[Remainder of Page Intentionally Left Blank]

---

[63]   *See* 11 U.S.C. § 1141; Plan §§ 11.1.1, 5.8.2.

[64]   Plan §§ 11.1.1.

[65]   Plan §§ 3.2.9(c).

Dated: Wilmington, Delaware
       January 17, 2020

Respectfully submitted,

JONES DAY
Bruce Bennett
James O. Johnston
Joshua M. Mester
555 South Flower Street, 50th Floor
Los Angeles, CA  90071-2300
Telephone:  (213) 489-3939

-and-

COLE SCHOTZ P.C.
By: */s/ J. Kate Stickles*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131

ATTORNEYS FOR REORGANIZED DEBTORS

46429/0001-19090653v1