## EXHIBIT A

**Summary of Unreasonable WTC Activities and Fees**

## EXHIBIT A

## SUMMARY OF UNREASONABLE WTC ACTIVITIES AND FEES

WTC's subordinated position, and the contingent nature of its lawyers' fee arrangement, prompted it to take a "swing for the fences" approach.  WTC engaged in unproductive, counterproductive, and litigious conduct that served to needlessly prolong the bankruptcy cases and increase administrative expenses by tens of millions of dollars.  Among other things:

- Prosecution of the Noteholder Plan.  WTC was a co-proponent of the competing "Noteholder Plan," a litigation-centric proposal filed as a tactical maneuver in an attempt to block confirmation of Tribune's settlement plan.  The Noteholder Plan was soundly opposed by creditors, with *240 out of 243 classes of claims rejecting it*, and denied confirmation by Judge Carey, who concluded that it unfairly discriminated against LBO lenders, improperly released non-debtor guarantors, improperly modified an intercompany claims settlement, and had not been accepted by an impaired class of creditors of each of the Tribune debtors.  WTC's insistence on prosecuting that patently-unconfirmable plan to the bitter end resulted in substantial delay and large administrative expenses incurred by Tribune, the creditors' committee, and others in opposing it.

- Objection to the Tribune settlement plan.  WTC opposed every iteration of Tribune's plan, both at the disclosure statement and confirmation phases.  In the process, WTC pursued pointlessly broad discovery (including from every member of the creditors' committee and eighteen individual LBO lenders who were not proponents of the plan), injected meritless issues already being considered by the Federal Communications Commission, and necessitated a ten-day confirmation hearing.  After Tribune followed the roadmap provided by Judge Carey in his initial confirmation opinion by amending the settlement plan to cure every identified deficiency, WTC pursued still more objections to the amended version of the plan, necessitating another contested confirmation hearing and causing substantial additional delay.  This resulted in ever greater administrative expenses to the detriment of the bankruptcy estate.

- Appeals.  After failing to achieve confirmation of the Noteholder Plan, WTC appealed Judge Carey's interlocutory order *denying* confirmation of the original Tribune settlement plan (the very result WTC had advocated) because it did not like certain findings in that order.  WTC then appealed Judge Carey's interlocutory order deciding certain "Allocation Disputes" that would not become operative unless an order confirming Tribune's plan was entered.  In each case, this frivolous conduct resulted in substantial administrative expenses as Tribune and the Creditors' Committee were forced to respond.

- FCC Objection.  WTC filed a frivolous objection to Tribune's application to the Federal Communications Commission for the waivers and approvals necessary for it to emerge from bankruptcy.  The very same waivers and approvals also would have been necessary had WTC's own Noteholder Plan been confirmed.  Here again, Tribune incurred substantial fees and administrative expenses responding to this wasteful conduct.

The fees for which WTC seeks reimbursement are similarly unreasonable.  In prior briefing, among other things, WTC failed to explain or justify –

- Mesirow's $4.9 million in fees for which no time records were submitted and Mesirow's $2.6 million in fees for work that duplicated that of the financial advisors employed by the creditors' committee and the Examiner.

- Brown Rudnick's $4 million in fees for reviewing documents related to the LBO, with up to seventy-six timekeepers per month, where the creditors' committee (of which it was a member), the Senior Notes Indenture Trustees and the Examiner all had professionals performing the same investigation at the same time.

- Brown Rudnick's additional $3 million in fees relating to the Examiner, including $2.5 million in fees for briefing to and interaction with the Examiner, which were largely unnecessary and duplicative given that the creditors' committee, the Senior Notes Indenture Trustees, and Centerbridge, all in-the-money stakeholders with ample incentive to advance the best possible arguments to the Examiner, actively participated in the Examiner process and had interests aligned with those of WTC.

- Brown Rudnick's $9.7 million in fees relating to prosecution of the Noteholder Plan and opposition to the various iterations of Tribune's Plan, all of which was unnecessary given the incentives of economically-motivated in-the-money-stakeholders Aurelius and the Senior Notes Indenture Trustees to perform the same tasks without WTC's involvement.

- Brown Rudnick's unnecessary and wasteful fees relating to intercreditor Allocation Disputes not implicating the PHONES Notes as a whole.

- Brown Rudnick's fees relating to WTC's frivolous interlocutory appeals of the Bankruptcy Court's preliminary confirmation and allocation disputes opinions.

- Brown Rudnick's fees relating to abandoned litigation against senior creditors.

46429/0001-19090653v1