## EXHIBIT B

**Excerpts of Deposition of Patrick Healy**

46429/0001-19090653v1

```
         IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE DISTRICT OF DELAWARE


IN RE:                        )   CHAPTER 11 CASES
                              )
TRIBUNE COMPANY, et al.       )   CASE NO. 08-13141 (KJC)
                              )
    Debtors.                  )   (JOINTLY ADMINISTRATED.)
                              )
                              )
                              )
_____)


                      DEPOSITION OF

                   PATRICK J. HEALY

                WILMINGTON, DELAWARE

                   AUGUST 8, 2013
```

Reported by:
MARCY C. MUZYCZKA, RPR
REGISTERED PROFESSIONAL REPORTER
NO.13-26422



1  A. Right.
2  Q. -- to essentially all of
3  Wilmington Trust professionals?
4  A. Right.
5  Q. Do you know whether Brown Rudnick
6  received any of that $3 million?
7  A. I assume they did. I don't know,
8  you know. Wilmington got between, as I
9  mentioned, 70 to $80,000. I don't know what else
10 was paid out to other professionals --
11 Q. Okay.
12 A. -- what would have been, if any,
13 retained by Brown Rudnick.
14 Q. Even if you assumed that all of
15 the rest of it went to Brown Rudnick, Brown
16 Rudnick still had a very sizeable unpaid hourly
17 fee claim; correct?
18 A. Yes.
19 Q. And it's your understanding that
20 Brown Rudnick has no way of being -- of
21 recovering those hourly fees absent recovery from
22 Tribune for recoveries on the charging claim;
23 correct?
24 A. Correct.
25 Q. How is that anything different

1 than a standard garden variety lawyer's
2 contingency fee where the lawyer takes the risks
3 of non-payment in the event of an unsuccessful
4 outcome?
5          MR. STOLL:  I'll object.  I mean,
6     what kind of question is that for him to
7     answer.  Is he an expert on contingency
8     fee agreements?
9          MR. JOHNSTON:  No, but he's
10    testified that he has seen them before.
11         MR. STOLL:  Well, I know, but now
12    you're trying to get him to testify his
13    opinion as to whether this arrangement
14    states some other arrangement and I guess
15    asking him to opine on contingency fee
16    agreements generally.  It seems a little
17    bit far afield for his particular -- you
18    can answer, if you can.
19         THE WITNESS:  Can you repeat it,
20    the question?  I'm sorry.
21 BY MR. JOHNSTON:
22    Q.    Given the facts and circumstances
23 of the Tribune case --
24    A.    Right.
25    Q.    -- how is Brown Rudnick's fee

1  arrangement any different than a standard garden
2  variety lawyer's contingency fee arrangement?
3  And by that I mean, an arrangement where the
4  lawyer gets paid if a successful result is
5  achieved and the lawyer doesn't get paid if an
6  unsuccessful result is obtained.
7        A.    There really isn't much of a
8  difference.
9              MR. JOHNSTON:  Okay.  I'm going to
10       switch gears now.  It's probably a good
11       time for a break.
12             MR. STOLL:  Okay.
13           (Recessed 11:48 p.m.)
14           (Reconvened 11:54 a.m.)
15             MR. JOHNSTON:  Back on the record.
16 BY MR. JOHNSTON:
17       Q.    Let's go back to your Declaration
18 again.  Paragraph 14 you state that Wilmington
19 Trust was optimistic -- excuse me.  As of the
20 petition date Wilmington Trust was optimistic
21 that the LBO would provide or prove fertile
22 ground for the investigation, development, and
23 assertion of claims that could lead to a
24 meaningful recovery of all non-LBO creditors.
25 First question, what's the "LBO"?