# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------X
| In re: | : | **Chapter 11 Cases** |
|---|---|---|
|  | : | **Case No. 08-13141 (KJC)** |
| **TRIBUNE COMPANY, et al.,** | : | **(Jointly Administered)** |
|  | : |  |
| Debtors. | :: |  |

------------------------------------------------------X

## WILMINGTON TRUST COMPANY'S REPLY TO THE REORGANIZED DEBTORS' BRIEF ON REMAND ISSUES REGARDING WTC FEE CLAIM

**SULLIVAN · HAZELTINE · ALLINSON LLC**
William D. Sullivan, Esq. (Del. Bar No. 2820)
William A. Hazeltine, Esq. (Del. Bar No.3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Telephone:  (302) 428-8191
Email: bsullivan@sha-llc.com
Email: whazeltine@sha-llc.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Alex Fraser, Esq.
Seven Times Square
New York, New York 10036
212-209-4800
Email: rstark@brownrudnick.com
Email: afraser@brownrudnick.com

James W. Stoll, Esq.
Shari Dwoskin, Esq.
One Financial Center
Boston, MA 02111
617-856-8200
Email: jstoll@brownrudnick.com
Email: sdwoskin@brownrudnick.com

*Co-counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*

i

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PROCEDURAL BACKGROUND......................................................................................... 1

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 3

    I.    REMAND ISSUE I: WTC IS ENTITLED TO AN UNSECURED CLAIM FOR FEES PURSUANT TO THE PHONES NOTES INDENTURE........................................ 3

    II.   REMAND ISSUE II: WTC'S FEES ARE REASONABLE ............................................ 5

   III.  REMAND ISSUE III: CLAIM FOR MESIROW'S FEES ............................................ 10

   IV.  REMAND ISSUE IV: CLAIM FOR POST-EFFECTIVE DATE FEES ........................ 11

CONCLUSION..................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Avalon Care Ctr.-Federal Way, LLC v. Brighton Rehabilitation, LLC*,
   Civ. No. 2:10-CV-01038 BSJ, 2013 WL 4027535 (D. Utah Aug. 7, 2013) ..............................4

*Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*,
   73 F.3d 150 (7th Cir. 1996) ....................................................................................................5

*Harris Trust & Sav. Bank v. Am. Nat'l Bank & Tr. Co.,*
   230 Ill. App. 3d 591 (Ill. App. Ct. 1st Dist. 1992) ..................................................................7

*In re Nortel Networks Inc.,*
   Case No. 09-10138(KG), 2017 WL 932947 (Bankr. D. Del. 2017) ..................................7, 11

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ..................................................................................................6

## PROCEDURAL BACKGROUND

On October 31, 2019, the court entered the *Order Approving Stipulated Scheduling Order on Contested Matter* [D.I. 14606] (the "Stipulation"). In the Stipulation, the Court approved a briefing schedule to govern the issues remaining on remand related to the 1F Claim Objection (the "Remand Issues"). On November 26, 2019, Wilmington Trust Corporation ("WTC") submitted the Declaration of James W. Stoll [D.I. 14609] (the "Stoll Declaration"), attaching and describing the previously submitted briefing relevant to the Remand Issues. On January 17, 2020, the Reorganized Debtors[1] submitted the *Reorganized Debtors' Brief on Remand Issues Regarding WTC Fee Claim* [D.I. 14642] (the "Tribune Brief"). WTC submits this brief (the "WTC Reply Brief") in response to the Tribune Brief.

## PRELIMINARY STATEMENT

The most recent brief of the Reorganized Debtors is largely a rehash of their previous arguments set forth at length in their initial objection and subsequent reply briefs. With the argument regarding Sections 502(b) and 506(b) having been resolved, for the moment, in WTC's favor, the Reorganized Debtors turn to their two other principal arguments: *first*, that as a matter of law, an indenture trustee can only be reimbursed under the indemnity provisions of its indenture for amounts it has actually advanced out of pocket or contractually obligated itself to pay; and/or *second*, and independently of the argument above, that WTC's fee application is unreasonable in any amount because at all times it was unlikely that PHONES Noteholders would receive a recovery due to their position in the capital structure of Tribune.

As to the first argument, Reorganized Debtors restate the original arguments, virtually unsupported by case law now as then, all of which WTC addressed in its opening briefs. With

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Stoll Declaration.

respect to the second argument, this Court is presented with the difficult task of assessing the reasonableness of fees in a case over which this Court did not preside and which were incurred over a decade ago. The Reorganized Debtors assert that it was apparent from the start of the case that PHONES Noteholders would never receive a distribution, absent successful post-bankruptcy litigation, and thus WTC should never have engaged in the bankruptcy in a meaningful way at all. How this Court is to assess that "assertion" (which is only that—an assertion, not fact) is a challenge. What is fact, however, is that at the very outset of the bankruptcy, the Debtors, the Senior Lenders (as defined in the Plan), and the Official Committee of Unsecured Creditors appointed in these Chapter 11 cases (the "Official Committee") came to immediate agreement on a plan that released all potential claims arising out of the $8 billion LBO that pushed Tribune into bankruptcy within months of its closing. It was WTC that was the driving force in objecting to this initial plan and demanding the appointment of the Examiner, and thereafter fighting to preserve the fraudulent transfer claims that only this past summer resulted in a $200 million settlement in favor of the litigation trust.[2]

In any event, asserting that work on one issue or another was "useless" or "frivolous" or "duplicative" (*see* Tribune Brief Ex. A) is simply advocacy. It is most certainly not evidence. Because the Tribune Brief largely rehashes what it previously argued, what follows here as WTC's response organized by remand topic (as in the Tribune Brief), is essentially an index tying the arguments back to WTC's original briefing and expanding where necessary for context.

---

[2] *See Order Granting Litigation Trustee's Motion for an Order Approving Settlement* [D.I. 14565]; *Declaration of David M. Zensky in Support of the Litigation Trustee's Motion for an Order Approving Settlement* [D.I. 14537-3].

**ARGUMENT**

I.     **REMAND ISSUE I: WTC IS ENTITLED TO AN UNSECURED CLAIM FOR FEES PURSUANT TO THE PHONES NOTES INDENTURE**

The Reorganized Debtors' first argument is that the remaining disputed portion of WTC's claim for professional fees (the "Remaining Fee Claim") must be disallowed to the extent that WTC did not first pay its professional fees out of pocket or contractually obligate itself to pay those fees. *See* Tribune Brief ¶¶ 7-22.[3]

This argument has two parts. First, the Reorganized Debtors assert that (i) only Section 6.07 of the PHONES Notes Indenture applies, and (ii) WTC never "incurred" any fees pursuant to that section because the fee agreement between WTC's counsel Brown Rudnick LLP ("Brown Rudnick") and WTC establishes that WTC was not required to pay any fees out of its own funds, and thus, in their view, it has never "incurred" any fees.[4] Second, they assert that, under Section 6.07, "WTC is not entitled to a claim for anything more than 'reimburse[ment]' for 'reasonable expenses, disbursements and advances incurred or made by' it."[5] Tribune argues that because WTC (through advances made by two of its noteholders) only paid $3 million to its professionals, WTC's Remaining Fee Claim must be capped at that amount.[6]

WTC addressed these arguments at length in the WTC Opposition at 22-31 and 39-40. As WTC originally argued, there is no case law that supports Reorganized Debtors' argument.

---

[3] The Reorganized Debtors argue that a contingent fee agreement is equivalent to a lack of a contractual obligation to pay attorneys' fees. This is not accurate.

[4] *See* Tribune Brief at ¶¶ 8-13.

[5] Tribune Brief at ¶ 7; *see id.* at ¶¶ 14-22.

[6] The Reorganized Debtors then subtract, without citing any authority for doing so, the amounts WTC received on account of the 9.1.3 Claim and the Substantial Contribution Claim from this purported $3 million cap. Aside from the fact that there is no such cap, WTC's rights to receive professional fees under the Indenture (which resulted in the Class 1F Other Parent Claim) are separate and apart from its rights under the Plan to be reimbursed for its service as a committee member (the 9.1.3 Claim) or its rights under the Bankruptcy Code to receive an allocation for its substantial contribution (the Substantial Contribution Claim). Rather, as set forth in the Stoll Declaration, it is appropriate to subtract the amounts received on account of the 9.1.3 Claim and the Substantial Contribution Claim from the *gross* amount of the Class 1F Other Parent Claim.

In fact, the law is expressly to the contrary. *See* WTC Opp. at 28 (citing cases including *Rodriguez v. Taylor*, 569 F.2d 1231, 1245 (3rd Cir. 1977) (holding that entitlement to award of attorneys' fees not abrogated by fact that individual plaintiffs are not obligated to pay their counsel));[7] *see also* WTC Opp. at 39-41 (citing cases including *Sullivan v. Crown Paper Bd. Co.*, 719 F. 2d 667, 669 (3d Cir. 1983) (employing twelve-factor test set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F. 2d 714, 717-719 (5th Cir. 1979) to award of attorneys' fees, of which existence of contingent fee agreement is but one factor in consideration of reasonableness)). The Reorganized Debtors once again cite a few cases where the words "incurred" or "disbursed" are analyzed in a fee award context[8], but none of those cases involve a trustee's indemnity rights under an indenture utilized in the issuance of bonds.

The Reorganized Debtors' reading of the PHONES Notes Indenture as limiting WTC's indemnification rights is predicated on an unreasonably narrow interpretation of § 6.07(b), ignoring critical language in that section (i.e., "except as otherwise expressly provided herein") (WTC Opp. at 26-27) and industry practice and custom (WTC Opp. at 28-30).

Again, this argument has been exhaustively briefed[9] and will not be restated here. WTC does note, however, that while the Reorganized Debtors blithely wave away the chilling impact on the bond market their position would cause, they submit no contrary evidence to the affidavit of Patrick Healy, the WTC officer in charge of the PHONES Notes Indenture, submitted by WTC. Mr. Healy averred as to the practice and custom in the industry with respect to the fact that WTC's lack of out-of-pocket payment of fees and reliance by counsel on the indemnity

---

[7] *See also Avalon Care Ctr.-Federal Way, LLC v. Brighton Rehabilitation, LLC*, Civ. No. 2:10-CV-01038 BSJ, 2013 WL 4027535, at *4-5 (D. Utah Aug. 7, 2013) (citing cases).
[8] *See* Tribune Br. at ¶¶ 15-16.
[9] *See* WTC Opposition at 22-30.

4

provisions in the Indenture.[10]  That is the only evidence before the Court on that topic; the Reorganized Debtors have submitted nothing.

## II.     REMAND ISSUE II: WTC'S FEES ARE REASONABLE

The question of whether the fee application submitted by WTC is reasonable is a legitimate one.  But the Reorganized Debtors' attack does little to further the discussion.  In the first instance, the Reorganized Debtors now argue that case law establishing reasonableness for inclusion of fees in a secured claim under § 506(b) should govern WTC's application for an unsecured claim under §502(b).  This is a variant of the argument made initially by the Reorganized Debtors that sought to apply § 503 case law with respect to fees incurred by WTC that Debtors characterized as duplicative.  *See* WTC Opp. at 43-44.  The current argument that §506(b) case law should govern is incorrect for the same reasons that the original § 503 argument was incorrect: the Remaining Fee Claim is an application for allowance of an unsecured claim under § 502(b), which means the allowance of the claim is governed by applicable state law (here, Illinois).  WTC addressed that law at pages 41-46 of the WTC Opposition.  By contrast, the Reorganized Debtors did not address Illinois law initially.

Seven years later, the Reorganized Debtors principally rely on one case in which Judge Easterbrook, writing for the Seventh Circuit, stated that "[c]ourts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it."[11]  This case was not a bankruptcy case, and therefore had nothing to do with the allowance of attorneys' fees as an unsecured claim under Section 502(b).  Nor did it involve an indenture trustee.

---

[10] As Mr. Healy averred, trustees seldom expend or agree to be liable for the fees and expenses necessary to enforce indenture rights, because they are generally paid nominal fees as compensation, have no immediate access to any trust funds to reimburse themselves, and the cost of enforcing rights can often be extraordinarily expensive.  Trustees rely as a matter of course on indemnity rights and fee agreements such as the one at issue here: without such rights, neither WTC nor any similar entity would accept a trustee undertaking.  *See* Stoll Declaration at Ex. B (Healy Declaration at ¶¶ 20-22).

[11] *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996).

Nonetheless, the Reorganized Debtors claim that because two holders of the PHONES Notes advanced $3 million to fund WTC's efforts, that $3 million number now controls the reasonableness of the Remaining Fee Claim. This argument remains incorrect. First, as outlined in the WTC Opposition, if the reasonableness of attorneys' fees depended on whether a client agreed to pay them out of pocket and in what amount, contingent fee counsel could never seek a fee award pursuant to statute or a fee-shifting provision of a contract.[12] Second, to the extent the Reorganized Debtors intend to rely on the "market" to determine reasonableness, the only evidence of that market in the record comes from the Healy Declaration. Again, as Mr. Healy averred, indenture trustees do not advance fees out of pocket due to the economics of the relationship. Rather, indenture trustees rely on indemnity rights under the indenture.[13] It is this "market" the Reorganized Debtors are now seeking to undermine by demanding that indenture trustees first pay all expenses out of pocket before they can be "reimbursed" by the company.[14] Third, the fact that two noteholders advanced a certain amount of WTC's expenses does not limit the indemnity obligations of the Reorganized Debtors pursuant to Section 5.03 and 6.07 of the PHONES Notes Indenture. Each of those sections states that WTC's claim includes all costs and expenses of collection, including reasonable compensation, expenses, disbursements and advances of the Trustee, its agents, and counsel.[15] Nothing in the PHONES Notes Indenture states that the Trustee must first pay such amounts out of pocket.

---

[12] WTC Opposition at 40-41. The law, of course, is to the contrary. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) ("The criterion for the court is not what the parties agreed but what is reasonable.").
[13] *See* Healy Declaration at ¶¶ 20-22.
[14] *Id.*; Healy deposition transcript at 22:8-17, excerpts attached as **Exhibit A** hereto.
[15] Stoll Declaration at Ex. A (WTC Opposition at Ex. 1 (1F Draft Brief at Ex. A (PHONES Notes Indenture at §§ 5.03, 5.04, 6.07))).

6

The crux of the Reorganized Debtors' attempt to avoid paying the Remaining Fee Claim is their assertion that the Remaining Fee Claim is "objectively unreasonable."[16] There are several flaws in this argument. In the first instance, the size of the initial fee claim submitted by WTC (i.e., $30 million) must be put in perspective by reference to the fees incurred by all parties and reflecting the complexity of the case. WTC highlighted these issues in the WTC Opposition at pages 5 and 45. As stated there, while WTC incurred $30 million in fees and expenses, the professionals retained by the Debtors, the LBO Lenders, and the Official Committee, incurred a total of over ***$381 million***. And while it is true that the Debtors, who incurred $170 million of that amount, had many things to do, the amounts of fees incurred by all professionals in these cases points to the complexity of the issues.

Second, the Reorganized Debtors are quick to point out that the litigation now appears to be winding down and the $200 million settlement recently achieved does not result in a distribution to the PHONES Notes. This is analysis by hindsight, which is inappropriate under Illinois law.[17] Their only response to the charge of hindsight is that it was always an "undeniable fact is that the subordinated PHONES Notes were out of the money and had no prospect of recovery absent a 'home run' litigation victory."[18] The Reorganized Debtors ignore, however, that twelve years ago, at the outset of these Chapter 11 cases, the LBO which caused Tribune to file bankruptcy within months of its closing (in which Tribune's former shareholders received

---

[16] Tribune Brief at ¶¶ 33-41. The Reorganized Debtors state that "WTC never responded" to the Reorganized Debtors' "analysis" of the Remaining Fee Claim, and claims that they should be permitted to submit supplemental briefing if WTC "belatedly attempts a response." *Id.* at ¶ 33 and n.33. WTC would direct the Court to pages 42-48 of the WTC Opposition and pages 18-52 of the 1F Draft Brief.

[17] *See* WTC Opposition at 34-39; *Harris Trust & Sav. Bank v. Am. Nat'l Bank & Tr. Co.,* 230 Ill. App. 3d 591, 598-99 (Ill. App. Ct. 1st Dist. 1992) (rejecting argument that trial court erred by not making determination of reasonableness of attorneys' fees in hindsight rather than at time of services); *see also In re Nortel Networks Inc.,* Case No. 09-10138(KG), 2017 WL 932947 at *3 (Bankr. D. Del. 2017) ("Whether the Indenture Trustee acted with prudence is not something the Court can readily review in hindsight.").

[18] Tribune Brief at ¶ 30.

7

---
---

approximately $8.2 *billion*) was a source of colorable claims against parties including the Senior Lenders and the principal shareholder.[19] The Official Committee included both LBO lenders and non-LBO creditors. The non-LBO creditors, such as WTC, believed that the claims arising from the LBO litigation claims should be pursued. However (in part due to the Official Committee's constitution) it became obvious to WTC at the time that the investigation of the Official Committee into LBO-related causes of action would be cut short in the form of a plan (the "First Plan") that provided for a settlement in which unsecured creditors would release *all* claims related to the LBO, and which would provide no value to holders of the PHONES Notes. In the face of this release of value, WTC successfully spearheaded the effort to appoint an Examiner (against the wishes of the Official Committee). Once appointed, the Examiner engaged in a lengthy process, in which all parties and their advisors participated in determining that colorable claims did exist. That investigation resulted in the abandonment of the First Plan and the negotiation of subsequent plans (including at one point a competing plan (the "Noteholder Plan")), and mediation related thereto. Even though the Noteholder Plan was not confirmed, there were substantial improvements for non-LBO unsecured creditors, including the PHONES noteholders, in the confirmed Plan, over the First Plan, including the establishment of a litigation trust to pursue LBO-related litigation.[20]

In light of these efforts, which yielded substantial value to the estates (even if they ultimately, and in hindsight, did not result in recovery by the PHONES noteholders), the Reorganized Debtors' characterization of these efforts as "unproductive, counterproductive, and

---

[19] For support and detail regarding the facts set forth in this paragraph, s*ee* WTC Opp. at 34-39 and Ex. A (1F Draft Brief at ¶¶ 43-91).

[20] These improvements are detailed in the 1F Draft Brief at ¶¶ 76-80, attached as Exhibit A to WTC's Opposition. As recently as May 2019 the Litigation Trust settled certain causes of action related to the LBO for approximately $200 million (which would not have been possible without WTC's efforts related to the appointment of the Examiner and the renegotiated Plan). *See Order Granting Litigation Trustee's Motion for an Order Approving Settlement* [D.I. 14565].

8

litigious conduct that served to needlessly prolong the bankruptcy cases"[21] is unsubstantiated, and not <u>evidence</u> that WTC's conduct was unreasonable.

Indeed, the evidence as to the reasonableness of the Remaining Fee Claim, apart from the case history that clearly demonstrates the positive impact of WTC's efforts, is set forth in the Stark Declaration[22] (attaching Brown Rudnick's billing records), the Novod Declaration[23] (attaching the billing records and invoices of Mesirow and other counsel and consultants retained by WTC); and the First Stoll Declaration[24] (detailing fees and expenses billed by Brown Rudnick and WTC's Delaware co-counsel from January 2, 2013 through June 30, 2013).

The Reorganized Debtors further object to the Remaining Fee Claim because it alleges that "Brown Rudnick's billing is replete with meaninglessly vague service descriptions covering huge blocks of time."[25] This objection is yet another red herring: the Reorganized Debtors *paid in full* fee statements submitted by the LBO lenders' counsel, even where no time entries were submitted and such counsel provided only one-page summaries of their services.[26] Moreover, although block billing does not comport with best practices, it is not a prohibited practice under Seventh Circuit and Illinois law. Additionally, the appropriate remedy for vague or insufficient time records is a "haircut" of a given percentage, not disallowance of the fee claim.[27] *See* WTC

---

[21] *See* Tribune Brief at Ex. A.
[22] *See* Stoll Declaration at Ex. C.
[23] *See* Stoll Declaration at Ex. D.
[24] *See Wilmington Trust Company's Limited Objection to the Mediator's Report and Recommendation and Brief in Further Support of its Opposition to Reorganized Debtors' Objection to Class 1F Other Parent Claim Asserted by Wilmington Trust Company* [D.I. 14028] at Ex. A.
[25] Tribune Brief at ¶ 35.
[26] Novod Declaration at ¶ 12. The Reorganized Debtors assert that such time entries were permitted by settlement embodied in the confirmed Plan, but that only goes to show that this "objection" is purely punitive and has nothing to do with the reasonableness of the Remaining Fee Claim.
[27] The typical amount of such reductions is 10%-20%. *See* WTC Opposition Brief at 33; Stoll Declaration at ¶ 15. The Reorganized Debtors respond that their detailing of WTC's purported "excesses" resolves the issue. That is incorrect. These purported "excesses" are the Reorganized Debtors' opinion regarding the reasonableness of the Remaining Fee Claim in general given the eventual

Opp. at 44-46. Finally, the Reorganized Debtors' claim that they "provided detailed descriptions (twenty pages) of WTC's excesses for precisely that purpose [of "trim[ming] the fat . . . for any vagueness or lumping that may exist"]"[28] and that WTC never responded to this critique is misleading on both fronts. First, in the twenty pages to which they cite, the Reorganize Debtors simply divide the work performed by WTC's professionals into eight categories of their own creation, allocate amounts of the WTC fee claim to each category, and characterize, without evidentiary support, the amounts as "beyond the pale,"[29] "staggering,"[30] "astronomical,"[31] "excessive and unreasonable,"[32] "plainly excessive,"[33] and "excessive, unnecessary, and unreasonable."[34] These unsupported characterizations bear no relation to the block billing for which the Court may impose a "haircut."[35] Second, WTC did respond to this critique in the WTC Opposition at pages 34-39 and in the 1F Draft Brief attached thereto at paragraphs 43-91.

### III. REMAND ISSUE III: CLAIM FOR MESIROW'S FEES

The Reorganized Debtors' contention that no part of Mesirow's fees can be included in the Remaining Fee Claim was discussed at length in the WTC Opposition Brief at pp. 46-48.[36] Once again, the Reorganized Debtors are asking the Court to disregard what is run-of-the-mill practice in reorganization cases. Briefly, Mesirow was retained by Brown Rudnick to assist in its representation of WTC, and its fees are therefore covered as expenses of "agents and counsel"

---

outcome of the case, and do not speak to whether or by how much the Remaining Fee Claim should be reduced due to inadequate billing.

[28] Tribune Brief at ¶ 37.
[29] Tribune Objection at 31.
[30] *Id*. at 34.
[31] *Id*. at 36.
[32] *Id*. at 39.
[33] *Id*. at 40.
[34] *Id*. at 41.
[35] The Reorganized Debtors reference the block billing only once in these twenty pages, on page 16 of the Tribune Objection.
[36] Opposition Brief at 46-48.

under the PHONES Notes Indenture.  Moreover, just as the fact that certain noteholders agreed to advance some amount of fees to WTC's counsel does not bear upon the Reorganized Debtors' liability for indemnification of such fees under the terms of the PHONES Notes Indenture, nor does the fact that Mesirow was paid in the first instance by Aurelius relieve the Reorganized Debtors of liability for Mesirow's fees.

### IV.      REMAND ISSUE IV: CLAIM FOR POST-EFFECTIVE DATE FEES

As to the fourth remand issue, the Debtors argue that WTC has no claim for post-effective date fees because the plan both (i) discharges all prepetition liabilities and (ii) discharges all PHONES Notes claims that could be brought against the Debtor.

This argument is untenable in light of the fact that the Debtors and WTC entered into a stipulation (the "Stipulation") expressly establishing the procedure for the submittal, review, objection, and resolution of WTC's fee claim under the Indenture.[37]  The Stipulation provides for the determination of the "allowance in the Debtors' chapter 11 cases as a General Unsecured Claim in Class 1F under the Fourth Amended Joint Plan of Reorganization."[38]  In the contentious dispute that followed, more fees were incurred.  It is of course well understood that where an entitlement to a fee award stems from a contractual fee shifting provision, fees incurred in fighting over those fees, are also recoverable.  *See*, e.g., I*n re Nortel Networks*, Case No. 09-10138, 2017 WL 932947, at *9 (Bankr. D. Del. Mar. 8, 2017) (where an indenture requires a debtor company to indemnify the trustee for costs and expenses of defending itself, the trustee is entitled to secure payment of fees incurred as a result of a fee dispute).

---

[37] *See Order Approving Stipulation Between Debtors and Wilmington Trust Company Regarding Post-Effective Date Procedure For Review and Allowance of Wilmington Trust Company's Fee and Expense Claim* [D.I. 11831], attached hereto as **Exhibit B**.
[38] *Id*.

Because WTC's rights to seek allowance of its fees under the Indenture were preserved in the Stipulation, the right to include fees incurred in the dispute over the fee application is similarly preserved.

## CONCLUSION

For the reasons stated above, and in the prior briefing, the Remaining Fee Claim should be allowed in the amount of $29,790,038.61.[39]

Dated: March 2, 2020

                                                             **SULLIVAN · HAZELTINE · ALLINSON LLC**

By: */s/ William A. Hazeltine*
      William D. Sullivan, Esq. (Del. Bar No. 2820)
      William A. Hazeltine, Esq. (Del. Bar No.3294)
      919 North Market Street, Suite 420
      Wilmington, DE 19801
      Telephone: (302) 428-8191
      Email: bsullivan@sha-llc.com
      Email: whazeltine@sha-llc.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Alex Fraser, Esq.
Seven Times Square
New York, New York 10036
212-209-4800
Email: rstark@brownrudnick.com
Email: afraser@brownrudnick.com

James W. Stoll, Esq.
Shari Dwoskin, Esq.
One Financial Center
Boston, MA 02111
617-856-8200
Email: jstoll@brownrudnick.com
Email: sdwoskin@brownrudnick.com

63691708 v1

---

[39] As set forth in the Stoll Declaration.