# Exhibit A

DEPOSITION OF

PATRICK HEALY

IN RE TRIBUNE COMPANY

TAKEN ON

AUGUST 8, 2013

Condensed Transcript Provided by:



SULLIVAN & HARGREAVES
COURT REPORTERS
70 S. Lake Avenue, 10th Floor
Pasadena, California 91101
Phone 323.525.3860 | Fax 323.938.8750

Page 1

```
 1      IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE DISTRICT OF DELAWARE
 2
 3   IN RE:                  )  CHAPTER 11 CASES
                             )
 4   TRIBUNE COMPANY, et al. )  CASE NO. 08-13141 (KJC)
                             )
 5      Debtors.             )  (JOINTLY ADMINISTERED.)
                             )
 6                           )
                             )
 7   _____  )
 8
 9              DEPOSITION OF
10              PATRICK J. HEALY
11              WILMINGTON, DELAWARE
12              AUGUST 8, 2013
13
14
15
16
17
18
19
20
21
22
23   Reported by:
24   MARCY C. MUZYCZKA, RPR
     REGISTERED PROFESSIONAL REPORTER
25   NO.13-26422
```

Page 2

```
 1      IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE DISTRICT OF DELAWARE
 2
                       - - -
 3   IN RE:               :  CHAPTER 11 CASES
                          :
 4   TRIBUNE COMPANY, et al. : CASE NO. 08-13141 (KJC)
                          :
 5      Debtors.          :  (JOINTLY ADMINISTERED.)
 6                        :
 7                        :
 8                       - - -
 9
10      Deposition of PATRICK J. HEALY, held at the
11   Law Offices of Cole, Schotz, Meisel, Forman & Leonard,
12   P.A., 500 Delaware Avenue, Suite 1410, Wilmington,
13   Delaware 19801, on Thursday, August 8, 2013,
14   commencing at 10:01 a.m., taken by and before
15   Marcy C. Muzyczka, Registered Merit Reporter,
16   Certified Court Reporter, and Notary Public.
17
18                       - - -
```

Page 3

```
 1
 2   APPEARANCES:
 3
 4   Jones Day
     BY:  JAMES O. JOHNSTON, ESQUIRE
 5   555 South Flower Street
     Fiftieth Floor
 6   Los Angeles, California 90071-2452
     (213) 489-3939
 7   Email: Jjohnston@jonesday.com
     REPRESENTING THE REORGANIZED DEBTORS IN THE
 8   TRIBUNE BANKRUPTCY
 9
10   Brown Rudnick
     BY:  JAMES W. STOLL, ESQUIRE
11        RYAN S. MOORE, ESQUIRE
     One Financial Center
12   Boston, Massachusetts 02111
     (617) 856-8200
13   Email: Jstoll@brownrudnick.com
            Rmoore@brownrudnick.com
14   REPRESENTING WILMINGTON TRUST COMPANY
15
16   United States Department of Justice, Office of
     the U.S. Trustee
17   BY:  DAVID L. BUCHBINDER, ESQUIRE
     J. Caleb Boggs Federal Building
18   844 King Street, Suite 2313, Lockbox 35
     Wilmington Delaware 19801
19   (302) 573-6491
     Email: David.L.Buchbinder@usdoj.gov
20   REPRESENTING U.S. TRUSTEE
```

Page 4

```
 1                    I N D E X
 2   WITNESS                                    PAGE
 3   PATRICK J. HEALY
 4      By Mr. Johnston                          5
 5      By Mr. Buchbinder                      139
 6                       - - -
 7              E X H I B I T S
 8   Number                                   Marked
 9   1    Declaration of Patrick J. Healy        7
10   2    Brown Rudnick document dated 12/22/08 20
11   3    Document dated 12/24/09                24
12   4    Document dated 1/12/10                 28
13   5    Mesirow Financial document dated 2/2/10  33
14   6    Document dated 2/1/10                  37
15   7    One-page fax cover sheet and dated 5/19/10  43
          and Mesirow Financial document dated 4/26/10
16
17   8    Document dated 7/9/10                  48
18   9    Brown Rudnick document dated 7/9/10    49
19   10   Document dated 10/28/10                52
20   11   Brown Rudnick document dated 10/28/10  54
21   12   Mesirow Financial document dated 12/16/10  56
22   13   Document dated 2/24/11                 69
23   14   Wilmington Trust Company's Omnibus Reply 108
24                       - - -
25              (Exhibits Continued.)
```

Page 21

1    (Brown Rudnick document dated
2    12/22/08 marked Exhibit 2 for
3    identification.)
4        THE WITNESS: (Witness reviewing
5    document.)
6 BY MR. JOHNSTON:
7    Q.   Do you recognize this document?
8    A.   I do.
9    Q.   Is that your signature at the end?
10   A.   (Witness reviewing document.)  Yes.
11   Q.   This is a document dated that's
12 December 22, 2008, that appears to be an
13 Engagement Agreement between Wilmington Trust
14 Company and Brown Rudnick. Is that what this is?
15   A.   Yes.
16   Q.   Was this Wilmington Trust's first
17 engagement of a professional for the Tribune
18 cases?
19   A.   Yes.
20   Q.   Did Wilmington Trust receive a
21 direction from Holders to retain Brown Rudnick?
22   A.   No.
23   Q.   How did Wilmington Trust determine
24 to retain Brown Rudnick?
25   A.   We've -- we had experience

Page 22

1 whether -- I had experience and Dan Fisher had
2 experience with Brown Rudnick at Law Debenture,
3 and prior to the Tribune case working with Brown
4 Rudnick engaging Brown Rudnick on other cases.
5 So just we liked working with Brown Rudnick.
6    Q.   So you hired them before?
7    A.   We had, yes.
8    Q.   What was the fee arrangement for
9 Brown Rudnick under this Engagement Agreement?
10   A.   When you say "fee arrangement,"
11 all -- all of our fee arrangements are on a
12 contingency basis when it comes to outside
13 professionals. We --
14   Q.   What do you mean by that?
15   A.   That we do not go out of pocket.
16   Q.   Okay.
17   A.   Wilmington does not go out of pocket.
18   Q.   Wilmington does not go out of
19 pocket. In fact, this agreement expressly
20 provides that Wilmington Trust will not go out of
21 pocket; correct?
22   A.   From what I recall, yes.
23   Q.   If you look at page two, the
24 second paragraph up from the bottom.
25   A.   (Witness reviewing document.)  Yes.

Page 23

1    Q.   And it says that, "Wilmington
2 Trust will not advance its own funds to satisfy
3 Brown Rudnick invoices"; correct?
4    A.   Yes.
5    Q.   How were Brown Rudnick's fees to
6 be determined, the amount of the fees under this
7 agreement?
8        MR. STOLL: Object to the form. I
9    think that's a little vague. If you
10   understand.
11 BY MR. JOHNSTON:
12   Q.   Do you understand the question?
13   A.   I don't.
14   Q.   Let me restate it. Under this
15 agreement Brown Rudnick's fees were to be
16 calculated pursuant to its standard hourly rates;
17 is that correct?
18   A.   Yes.
19   Q.   Okay. And when you describe this
20 as a "contingency fee," what do you mean by that?
21   A.   Well, Brown Rudnick in this case
22 could accrue their hourly fees as they may
23 choose. They may periodically send us copies of
24 invoices or update us on the amount that they've
25 accrued at the time, but they did not submit

Page 24

1 bills to us for payment. Wilmington doesn't
2 pay -- would not pay those.
3    Q.   How would Brown Rudnick get paid
4 under this agreement?
5    A.   At the end of the case if there's
6 a recovery to the Holders or -- there's two ways
7 to get a recovery: Number one is through the
8 estate; and number two is through any recovery
9 exerting our charging as Indenture Trustee. Any
10 payment to the Holders we can assert our charges
11 and pay any fees and expenses of our
12 professionals and us --
13   Q.   Okay. And through the --
14   A.   -- Wilmington.
15   Q.   I'm sorry?
16   A.   No. I just wanted to clarify. I
17 said "us." Wilmington.
18   Q.   Okay. And "through the estate"
19 means what, when you say they could get paid
20 through the estate?
21   A.   At the end of the case once a plan
22 goes effective we would submit an invoice to, in
23 this case, Tribune and ask for payment of our --
24 Wilmington Trust's fees and all its
25 professionals' fees.