## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY, et al.,[1] (f/k/a Tribune Company), | Case No. 08-13141 (BLS) |
| | Jointly Administered |
| Reorganized Debtors. | **Hearing Date: November 4, 2020 at 10:30 a.m. ET** **Objection Deadline: October 28, 2020 at 4:00 p.m. ET** |

### REORGANIZED DEBTORS' SEVENTY-SEVENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003 AND 3007, AND LOCAL RULE 3007-1

### ("EMPLOYMENT INDEMNIFICATION CLAIMS")

The reorganized debtors in the above-captioned chapter 11 cases (each a "<u>Reorganized Debtor</u>" and, collectively, the "<u>Reorganized Debtors</u>"),[2] by and through their undersigned counsel, hereby file this seventy-seventh omnibus objection to claims (the "<u>Objection</u>"), which Objection covers each of the seven (7) claims filed by certain former officers and directors of the Reorganized Debtors set forth on **Exhibit A** attached hereto (the "<u>Employment Indemnification Claims</u>").  This Objection is submitted pursuant to sections 502(b) and 558 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 3001, 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").  By this Objection, the Debtors request the entry of an order

---

[1] The Reorganized Debtors, or successors-in-interest to the Reorganized Debtors, in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: Tribune Media Company (0355) and Tribune CNLBC, LLC (0347).  The corporate headquarters and the mailing address for each entity listed above is 545 E. John Carpenter Freeway, Suite 700, Irving, TX 75062.

[2] Unless otherwise specified, all defined terms shall have the same meanings as in the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (as modified July 19, 2012, the "<u>Plan</u>") [D.I. 12072-2], confirmed by an order of the Court dated July 23, 2012 [D.I. 12074] (the "<u>Confirmation Order</u>").

disallowing in full and expunging the Employment Indemnification Claims for the reasons described in further detail below.  In support of the Objection, the Debtors rely on the Declaration of Elizabeth Ryder (the "Ryder Declaration"), attached hereto as **Exhibit B**.  In further support of the Objection, the Reorganized Debtors respectfully state as follows:

## INTRODUCTION

1.      The Employment Indemnification Claims that are objected to in this Objection, as listed on the attached **Exhibit A**, are all substantially identical contingent, unliquidated claims by former directors and officers of the Debtors.  The Employment Indemnification Claims seek contribution and/or reimbursement of costs and/or liabilities that might be incurred by the claimants in various civil actions.  Five (5) of the claims focus on such rights in connection with costs that might be incurred in connection with adversary proceedings commenced by the Official Committee of Unsecured Creditors (the "Committee") against each of the claimants in 2010 and other associated civil actions.  The two (2) other claims covered by this Objection purport to cover any indemnification relating to the claimant's service as a director or officer more generally.

2.      The Reorganized Debtors submit this objection seeking to disallow all of the Employment Indemnification Claims because (i) the adversary proceedings in which the claimants were named as defendants have long been dismissed by the Reorganized Debtors or other parties, or the claimants have been terminated as defendants in such litigation, (ii) the likelihood of any new matters arising that could give rise to a right of payment for the claimants is extremely remote at best, and (iii) none of the claimants has, to the Reorganized Debtors' knowledge, advised the Debtors of any amounts owing to them, or otherwise attempted to liquidate their claims, in the more than eight years since the Employment Indemnification Claims were filed.  Based on those facts, the Reorganized Debtors have no basis on which to conclude that any

amounts are owing to any of the claimants or will ever be owed to any of them on account of any of the Employment Indemnification Claims. The Reorganized Debtors accordingly object to such claims and ask the Court to disallow them and expunge them from the claims register.

## STATUS OF THE CASE AND JURISDICTION

3.      Tribune Company (now known as Tribune Media Company) and certain of its affiliates (collectively, the "Debtors"),[3] each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on December 8, 2008 (or in the case of Tribune CNLBC, LLC, October 12, 2009) (each date, the "Petition Date").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [D.I. 43, 2333].

4.      On July 23, 2012, the Court confirmed the Plan.

5.      The Effective Date of the Plan occurred on December 31, 2012.

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1.  The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[3] As used herein, the term "Debtors" refers to the entities that filed the above-captioned chapter 11 cases and the term "Reorganized Debtors" refers to the entities that became successors to the Debtors upon the Debtors' emergence from their chapter 11 cases.

46429/0001-21371302v1

## FACTUAL BACKGROUND TO THE DEBTORS' CLAIMS PROCESS AND THE OBJECTION

7.      On December 18, 2008, the Office of the United States Trustee appointed the Committee pursuant to section 1102(a) of the Bankruptcy Code.

8.      On March 23, 2009, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I. 567-789], which were subsequently amended on April 13, 2009 [D.I. 894-957], June 12, 2009 [D.I. 1343-1453], March 2, 2010 [D.I. 3548-3599] May 14, 2010 [D.I. 4388], and January 28, 2011 [D.I. 7661-7671] (collectively, the "Schedules").

9.      On March 26, 2009, the Court entered an order (the "Bar Date Order") that established June 12, 2009 as the final date and time for all persons and entities holding or asserting a claim against any of the Debtors arising on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11 cases.  [D.I. 813].  In relevant part, the Bar Date Order provided:

> ORDERED, that the following persons or entities are not required to file a Proof of Claim on or before the General Bar Date:…
>
> > e. current officers and directors of the Debtors who assert claims for indemnification and/or contribution arising as a result of such officers' or directors' prepetition or postpetition services.

Id. at 4.

10.      Written notice of the Bar Date was mailed to, among others, all known creditors listed on the Schedules, as amended, and the Bar Date Order was served on all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date Order. Id. Ex. B at 1-2.  In addition to mailing such actual notice, the Debtors also published notice

46429/0001-21371302v1

of the Bar Date in the National Editions of the <u>Wall Street Journal</u> and the <u>New York Times</u> and in the <u>Chicago Tribune</u> and <u>Los Angeles Times</u> on May 12, 2009.  <u>Id</u>. at 6.

11.     As of the Effective Date, approximately 7,165 Proofs of Claim were filed in these chapter 11 cases.  The Proofs of Claim are recorded on the official claims register (the "<u>Claims Register</u>") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors and Reorganized Debtors to assist with claims processing in these chapter 11 cases (the "<u>Claims Agent</u>").

## <u>FACTUAL BACKGROUND TO THE EMPLOYMENT INDEMNIFICATION CLAIMS</u>

12.     By orders dated October 27, 2010 and November 29, 2010 [D.I. 6150, 6657, and 6658], this Court granted the Committee standing to file and prosecute certain adversary proceedings (the "<u>Adversary Proceedings</u>") against then-current and former directors and officers of the Debtors.  In the Adversary Proceedings, the Committee sought, among other things, to recover various payments made to such then-current and former directors and officers as either preferences or fraudulent conveyances, damages for alleged breaches of fiduciary duty, the issuance of unlawful dividends, and unjust enrichment relating to the 2007 leveraged buyout of Tribune (the "<u>Tribune LBO</u>").

13.     In November and December 2010, the Committee commenced the Adversary Proceedings.  The Adversary Proceedings consisted of (i) actions that did not arise from the Tribune LBO, including, *inter alia*, actions relating solely to preferences or fraudulent conveyances (the "<u>Ordinary Litigation Adversary Proceedings</u>"), (ii) actions relating solely to damages resulting from the Tribune LBO (the "<u>Tribune LBO Adversary Proceedings</u>"), and (iii) actions for both preferences or fraudulent conveyances and damages resulting from the Tribune LBO (the "<u>Mixed Adversary Proceedings</u>").  Shortly after commencement of the

5

Adversary Proceedings, the "Ordinary Litigation" components, as defined in paragraph 18 below, of the Adversary Proceedings were stayed. [D.I. 7165].

14.     In June 2011, lawsuits in various jurisdictions asserting state law constructive fraudulent conveyance claims were brought against former stockholders of Tribune (the "SLCFC Actions") for damages arising out of the Tribune LBO.  Certain then-current and former directors and officers were named as defendants in the SLCFC Actions.

15.     The certificates of incorporation and/or bylaws of the various Debtors contained provisions pertaining to indemnification of the Debtors' respective directors and officers against liability for certain acts performed within the scope of their employment and providing reimbursement and advancement of costs and expenses incurred in defending lawsuits to which they become parties by virtue of their status as directors and officers of the Debtors, subject to specified limitations.  See Plan § 11.6.1.

16.     On October 3, 2011, this Court entered an order clarifying the bar date as to then-current and former directors and officers of the Debtors (the "Bar Date Clarification Order").  [D.I. 9876].  Under this order, the Court clarified that certain of those then-current and former directors and officers were required to file proofs of claim in the Debtors' chapter 11 cases, as follows:

> [then-current] or former directors and officers of the Debtors who cease to be employed by the Debtors shall have the longer of sixty (60) days after (i) the last day of employment with the Debtors and (ii) in the case that directors and officers of the Debtors have become disassociated from the Debtors postpetition but prior to the entry of this Order, [] in either such case, to timely file an indemnification and/or contribution claim against the Debtors arising from or related to the Adversary Proceedings or the SLCFC Actions."

Id. at 2.  Directors and officers who remained employed by the Debtors were not required to file proofs of claim as a result of the Bar Date Clarification Order.  Id.

6

46429/0001-21371302v1

17.     After the entry of Bar Date Clarification Order, numerous then-current and former directors and officers of the Debtors filed proofs of claim for indemnification in the Debtors' chapter 11 cases.  All of such proofs of claim are contingent, unliquidated claims for amounts that might be payable by one or more of the Debtors to such directors and officers on account of such indemnification rights.  Of relevance to this Objection, seven (7) of such claims were Employment Indemnification Claims, which are claims for indemnification obligations for defense costs and judgments relating to the Adversary Proceedings and related civil actions or for "indemnity for claims arising out of employment."  See, e.g., Claim No. 6870, Proof of Claim of David P. Murphy Against Tribune Company at 2-3 (Nov. 1, 2011) ("Mr. Murphy asserts a claim for . . . indemnification, contribution and reimbursement of all amounts paid or demanded in connection with the Adversary Proceeding and any other action that may be filed or claims that may be asserted against him by or on behalf of the Debtors . . . as well as for the costs for defending such actions…"); Claim No. 7087, Proof of Claim of Roger D. Williams Against Tribune Company at 1 (Dec. 1, 2011) (basis for claim is "indemnity for claims arising out of employment").

18.     Under the Plan, the Committee was terminated and the Litigation Trust (the "Litigation Trust") was created as of the Effective Date of the Plan.  Plan § 13.1.  In summary, the Plan split the ownership of claims against the then-current and former directors into three pieces: (i) the Reorganized Debtors were vested with the rights to the so-called "Ordinary Litigation," consisting of, inter alia, claims for preferences or fraudulent conveyances that did not arise due to the Tribune LBO; (ii) the Litigation Trust was vested with the rights to certain Preserved Causes of Action, consisting of claims for damages arising from the Tribune LBO; and (iii) both parties agreed to later reach a resolution regarding the ownership of certain unresolved

7

claims, which consisted of actions in which the specifics were disputed or unknown.  See Plan §§ 1.1.156 (defining Ordinary Litigation Claims); 1.1.174 (defining Preserved Causes of Action). Following Plan confirmation and the creation of the Litigation Trust, the unresolved claims were split into individual claims and ownership was transferred to either the Reorganized Debtors or the Litigation Trust, as appropriate, by agreement of the Reorganized Debtors and the Litigation Trustee.

19.    In January of 2013, the Court entered a Substitution Order that substituted the Reorganized Debtors and other parties for the Committee as plaintiffs in the Ordinary Litigation Adversary Proceedings and Mixed Adversary Proceedings with respect to the "Ordinary Litigation" components.  [D.I. 13099]; see, e.g., Notice of Substitution, Tribune Co. v. Murphy (In re Tribune Co.), Adv. Pro. No. 10-55612 (KJC) (D. Del. Jan. 24, 2013), ECF No. 41.  Shortly thereafter, the Reorganized Debtors and other parties filed Notices of Dismissal in each of the Ordinary Litigation Adversary Proceedings.  See, e.g., Notice of Dismissal, Tribune Co. v. Williams (In re Tribune Co.), Adv. Pro. No. 10-55662 (D. Del. Jan. 28, 2013), ECF No. 43.  Each Notice of Dismissal filed in each Ordinary Litigation Adversary Proceeding is substantially similar and states that the dismissal "hereby dismiss[es] this Adversary Proceeding with prejudice in its entirety . . . ."  Id. at 2.  The Reorganized Debtors and other parties also filed Notices of Partial Dismissal in each of the Mixed Adversary Proceedings.  See, e.g., Notice of Partial Dismissal, Tribune Co. v. Murphy (In re Tribune Co.), Adv. Pro. No. 10-55612 (D. Del. Jan. 28, 2013), ECF No. 42.  Each Notice of Partial Dismissal filed in each of the Mixed Adversary Proceedings is substantially similar and makes clear that the dismissal applies "solely with respect to the Ordinary Litigation Claims."  Id. at 2 (emphasis in original).

20.     In March of 2013, the Court entered another Substitution Order that substituted the Litigation Trustee for the Committee as plaintiff in the Tribune LBO Adversary Proceedings and Mixed Adversary Proceedings with respect to the Preserved Causes of Action.  [D.I. 13351].  One such Preserved Cause of Action vested in the Litigation Trustee was claims relating to certain severance payments to then-current and former directors and officers triggered by the change of control resulting from the Tribune LBO (the "Executive Transition Payments").  See, e.g., Notice of Substitution, Tribune Co. v. Murphy (In re Tribune Co.), Adv. Pro. No. 10-55612 (KJC) (D. Del. Mar. 25, 2013), ECF No. 43 (noting that the Litigation Trustee was substituting for the Committee as plaintiff "solely with respect to the Preserved Causes of Action" including, among others, "Executive Transition Payments").  Following this substitution by the Litigation Trustee, the Preserved Causes of Action in the Mixed Adversary Proceedings and in the Tribune LBO Adversary Proceedings were transferred to the consolidated multidistrict action that was pending in the Southern District of New York until 2019 (the "MDL Litigation"), certain aspects of which are the subject of various appeals pending before the United States Court of Appeals for the Second Circuit. See In re Tribune Co. Fraudulent Conveyance Litig., No. 12 MC 2296 (DLC), MDL No. 11 MD 2296 (DLC) (S.D.N.Y. 2011); see also Court's Letter to the United States Judicial Panel on Multidistrict Litigation, Tribune Co. v. Murphy (In re Tribune Co.), Adv. Pro. No. 10-55612 (D. Del. May 30, 2013), ECF No. 51.  In addition, pursuant to the Confirmation Order, the SLCFC Actions were transferred to the Southern District of New York (the "SDNY Court") as part of the MDL Litigation.  See Confirmation Order § 8.B.7.

21.     Two of the claimants covered by this objection, David P. Murphy and James L. Ellis (together, the "MDL Litigation Defendants,") were defendants in Mixed Adversary Proceedings and had Preserved Causes of Action asserted against them relating to Executive

Transition Payments transferred to the MDL Litigation.  See Kirschner v. Ellis, et al., No. 13-03746 (S.D.N.Y. 2013); Kirschner v. Murphy, et al., No. 13-03742 (S.D.N.Y. 2013).   On December 3, 2018, the SDNY Court issued an opinion granting five motions to dismiss related to claims asserted by the Litigation Trustee against several individuals and entities that were involved in or received payments arising from the Tribune LBO.  In re Tribune Co. Fraudulent Conveyance Litig., No. 11-MD-2296 (RJS), 2018 WL 6329139, at *21 (S.D.N.Y. Nov. 30, 2018), reconsideration denied, No. 11MD2296 (DLC), 2019 WL 549380 (S.D.N.Y. Feb. 12, 2019).  Included in this opinion was the dismissal of certain defendants in eighteen (18) so-called "tag-along actions," the complaints of which "do not allege any specific details regarding the relationship between the [defendants] and Tribune." Id. at 16 n.10.  The actions in which the MDL Litigation Defendants were parties were tag-along actions.  Id. at 1 n.1.  The SDNY Court's opinion and order dismissed the claims asserted against the MDL Litigation Defendants in their entirety.  Id. at *12-17.  Pursuant to this opinion, on October 2, 2019, the MDL Litigation Defendants were terminated as defendants in the MDL Litigation.  Kirschner v. Ellis, et al., No. 13-03746 (S.D.N.Y. Oct. 2, 2019), ECF No. 78; Kirschner v. Murphy, et al., No. 13-03742 (S.D.N.Y. Oct. 2, 2019), ECF No. 78.  Although the Litigation Trustee subsequently appealed the dismissals, the appeals were withdrawn with prejudice by stipulation of the parties in early 2020.  See Kirschner v. Ellis, et al., No. 19-3537 (2d Cir. Feb. 24, 2020), ECF No. 58; Kirschner v. Murphy, et al., No. 19-3533 (2d Cir. Jan. 22, 2020), ECF No. 57.

22.    In the period since the Ordinary Litigation Adversary Proceedings and the Ordinary Litigation claims components of the Mixed Adversary Proceedings were dismissed, the Reorganized Debtors have not been advised by any of the defendants in those actions that asserted Employment Indemnification Claims that such defendants are owed any amounts on

account of such claims.  <u>See</u> Ryder Declaration at ¶ 4.  Similarly, in the period since the Preserved

Causes of Action components of the Mixed Adversary Proceedings were transferred, the

Reorganized Debtors have not been advised by either of the MDL Litigation Defendants that

such defendants are owed any amounts on account of asserted Employment Indemnification

Claims.  <u>Id.</u>  The Reorganized Debtors are unaware of any other attempts by the claimants

asserting Employment Indemnification Claims to liquidate or quantify their claims, nor are the

Reorganized Debtors aware of any amounts that might otherwise be owed to such claimants on

account of such claims.  <u>Id</u>.

## RELIEF REQUESTED

23.      By this Objection, the Reorganized Debtors seek an entry of an order, pursuant to

sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and

Local Rule 3007-1, (i) disallowing and expunging in their entirety each of the Employment

Indemnification Claims identified on <u>Exhibit A</u> on the grounds set forth herein with respect to each

such claim and (ii) authorizing the Claims Agent to modify each of the Employment

Indemnification Claims on the Claims Register in accordance with the proposed Order.

24.      This Objection complies with Local Rule 3007-1 in all respects.

## BASIS FOR OBJECTION

25.      This Objection is based on section 502(b)(1) of the Bankruptcy Code, which

provides in pertinent part:

> [l]f such objection to a claim is made, the court, after notice and a hearing, shall
> determine the amount of such claim in lawful currency of the United States as
> of the date of the filing of the petition, and shall allow such claim in such
> amount, except to the extent that-
>
> > (l) such claim is unenforceable against the debtor and property of the
> > debtor, under any agreement or applicable law for a reason other than
> > because such claim is contingent or unmatured . . .

11 U.S.C. § 502(b)(l).  Section 502(b)(l) recognizes the settled principle that "[c]reditors'

entitlements in bankruptcy arise in the first instance from the underlying substantive law

creating the debtor's obligation, subject to any qualifying or contrary provisions of the

Bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec.. Co*., 549 U.S. 443, 450-

51 (2007) (*citing Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000)).  A claim against

the bankruptcy estate, therefore, "will not be allowed in a bankruptcy proceeding if the same

claim would not be enforceable against the debtor outside of bankruptcy." *In re Combustion

Eng'g, Inc.*, 391 F.3d 190, 245 (3d Cir. 2004).  In proceedings to determine whether a claim

is enforceable against the estate, "[t]he estate shall have the benefit of any defense available

to the debtor as against any entity other than the estate, including statutes of limitation, statutes

of frauds, usury, and other personal defenses" pursuant to section 558 of the Bankruptcy Code.

See 11 U.S.C. § 558.

26.     The principal reason the Employment Indemnification Claims were filed was to

preserve the claimants' contingent indemnification rights in connection with the Adversary

Proceedings.   However, the Ordinary Litigation Adversary Proceedings and the Ordinary

Litigation claims components of the Mixed Adversary Proceedings were dismissed more than

seven (7) years ago and were stayed prior to their dismissal.  This makes it unlikely that any of the

claimants would ever have incurred amounts that would be covered by their alleged rights of

indemnification.  Additionally, the Reorganized Debtors are unaware of any costs incurred by the

MDL Litigation Defendants in the tag-along actions.

27.     Although the Employment Indemnification Claims are general assertions of

contingent indemnification rights and not limited to claims in connection with the Adversary

Proceedings, there is no basis on which to conclude that any amounts are or may become owed on

account of the Employment Indemnification Claims.  The Reorganized Debtors have reviewed their books and records and are unaware of any amounts owed to any of the holders of the Employment Indemnification Claims on account of their indemnification rights, nor are the Reorganized Debtors aware of any assertions by the holders of such claims that they are owed any amounts.  Ryder Declaration at ¶ 4.

28.    There is ample basis on which to conclude that no amounts are or ever will be owed on account of the Employment Indemnification Claims.  None of the claimants has amended or supplemented his or her proof of claim in the over eight (8) years since such claim was filed to assert that any amounts are owed.  <u>Id</u>.  The Reorganized Debtors have reviewed the MDL Litigation and the related pending appeals before the United States Court of Appeals for the Second Circuit, and it does not appear that any of the holders of the Employment Indemnification Claims are a party to any remaining part of that litigation.  <u>Id.</u> at 5.  Finally, given the long period of time since the Employment Indemnification Claims were filed and the Debtors emerged from chapter 11, it is extremely unlikely, if not impossible, that any new claims against any of the holders of the Employment Indemnification Claims could conceivably arise that would implicate the contribution and reimbursement rights that form the basis of the Employment Indemnification Claims.

29.    The Reorganized Debtors are not objecting in this Objection to any claims where the claimant still is or may be a party in the MDL Litigation, or whose basis for his or her claim appears to be anything other than a contingent right to contribution or reimbursement for amounts that may be incurred by the claimant as a defendant in one or more of the Adversary Proceedings and associated civil actions.  The Reorganized Debtors are continuing to review all remaining

13

proofs of claim asserted against the Debtors' estates and reserve their rights to object to such claims on all applicable grounds.

## RESERVATION OF RIGHTS

30.      The Reorganized Debtors hereby reserve their right to amend, modify, and/or supplement this Objection at any time prior to the hearing on this Objection.  The Reorganized Debtors further reserve their right to adjourn the hearing on this Objection as it pertains to any or all of the Employment Indemnification Claims.  In the event that the Reorganized Debtors so adjourn the hearing, they will state that the hearing on the Objection and, if applicable, any response filed in connection therewith and all applicable deadlines for responsive pleadings have been adjourned on the agenda for the hearing, which agenda will be served on any party affected by such adjournment.

## NOTICE

31.      Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) the claimants listed on Exhibit A; and (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Reorganized Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

32.      No previous application for the relief sought herein has been made to this Court or to any other court.

46429/0001-21371302v1

WHEREFORE, for the reasons set forth herein, the Reorganized Debtors respectfully request that the Court enter an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-l, (i) disallowing and expunging in their entirety each of the Employment Indemnification Claims identified on Exhibit A on the grounds set forth herein with respect to each such claim; (ii) authorizing the Claims Agent to modify each of the Employment Indemnification Claims on the Claims Register in accordance with the proposed Order; and  (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      September 29, 2020

Respectfully submitted,

SIDLEY AUSTIN LLP
Kenneth P. Kansa
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000

Zebulun G. Johnson
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5566

      -and-

COLE SCHOTZ P.C.

By: */s/ J. Kate Stickles*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
npernick@coleschotz.com
kstickles@coleschotz.com

ATTORNEYS FOR REORGANIZED DEBTORS