## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY, *et al.*, | Case No. 08-13141 (BLS) |
| Debtors | Re: Docket Nos. 13338, 13402-2, 14028-1, 14609, 14642, 14658 |

## MEMORANDUM OPINION[1]

Before the Court is the Reorganized Debtors' objection to the claim filed by the Indenture Trustee for the PHONES Notes for professional fees and costs in the amount of $29,790,038.61.[2]  The confirmed plan in this case permits the Indenture Trustee to seek allowance of its professional fees and costs as a general unsecured claim.  This is not a request for a substantial contribution administrative expense claim under Bankruptcy Code Section 503(b)(3) or (b)(4); in fact, such a claim was previously allowed and paid to the Indenture Trustee.  This is also not a request for payment of a priming lien against the distribution to the noteholders and, in fact, the subordinated PHONES Noteholders did not receive any distribution in this case.   For the reasons set forth below, based on the language of the Indenture, the Indenture Trustee's claim will be allowed in the amount of $3 million; the balance of the Indenture Trustee's claim will be disallowed.

---

[1] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. This Court has jurisdiction to decide this claim objection pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

[2] Capitalized terms are defined *infra*.

**Background**

On December 8, 2008, Tribune Company and its affiliates filed Chapter 11 bankruptcy petitions before this Court. Wilmington Trust Company ("WTC" or the "Indenture Trustee") served as the indenture trustee for unsecured bonds known as the PHONES Notes that were issued by Tribune Company and that were subordinated to virtually all of Tribune's other debt.

From the start, the Tribune bankruptcy was contentious.[3]  WTC hired counsel and other professionals to represent it and the interests of the PHONES Noteholders in the bankruptcy case.  WTC also served as a member of the Official Committee of Unsecured Creditors.

On July 23, 2012, the Court entered an Order Confirming the Fourth Amended Joint Plan of Reorganization.[4]  The Plan permits WTC to seek a general unsecured claim as a "Class 1F Other Parent Claim" under the Plan. The Plan's definition of "General Unsecured Claim" states in a parenthetical "for the avoidance of doubt, General Unsecured Claims shall include any Allowed Claim by [WTC] for fees and expenses arising under Section 6.07 of the PHONES Notes Indenture."[5]

WTC submitted three requests for payment of professional fees and expenses from the bankruptcy estate:

> (1)     WTC submitted an application for fees and expenses incurred as a member of the Official Committee of Unsecured Creditors pursuant to Section 9.1.1 of the Plan (the "Committee Member

---

[3] The Court writes for the parties only and, therefore, is not providing a detailed background of this lengthy bankruptcy case.

[4] D.I. 12074 (the "Plan").

[5] The Plan, § 1.1.101.

Claim"). This was allowed and WTC received the amount of $763,208.47 for the Committee Member Claim.

(2)     WTC submitted an application under § 503(b) for its work in obtaining a court-appointed examiner early in the Tribune bankruptcy case (the "Substantial Contribution Claim"). Pursuant to Court Order, WTC was paid $496,592.22 for the Substantial Contribution Claim.

(3)     Pursuant to a stipulated procedure, after the Plan's effective date of December 31, 2012, WTC submitted its original unsecured Class 1F Other Parent Claim seeking payment of fees and expenses in the amount of $30,043,326.81. On March 18, 2013, the Reorganized Debtors filed an objection to WTC's original claim.[6]

(a)     WTC also submitted a supplemental claim for post-effective date fees and expenses in the amount of $1,006,512.49.

The parties agree that the current total claim amount (the "WTC Fee Claim") at issue here can be summarized as follows:

| | |
|---|---|
| Original Fee Claim | $ 30,043,326.81 |
| Supp'l. Post-Effective Date Claim | +$ 1,006.512.49 |
| Committee Member Claim (paid) | ($    763,208.47) |
| Substantial Contribution Claim (paid) | ($    496,592.22) |
| Total Unsecured Claim | $ 29,790,038.61 |

To the extent the WTC Fee Claim is allowed as a Class 1F Other Parent Claim under the Plan, WTC will receive a cash payment equal to 32.73% of the allowed amount of the Fee Claim.[7]  Accordingly, if the Court allows the WTC Fee Claim in its entirety, WTC will receive payment in the amount of $9,750,279.64.

---

[6] D.I. 13338.
[7] Plan § 3.2.6.

The WTC Fee Claim has been negotiated, mediated, and litigated up to the Third Circuit and back.[8]  In their objection to the WTC Fee Claim, the Reorganized Debtors argued that the claim should not be allowed because WTC, an unsecured creditor, cannot recover postpetition attorney fees and costs as part of its allowed claim.  Alternatively, the Reorganized Debtors argued that the WTC Fee Claim should be disallowed or substantially reduced in amount based upon the language of the PHONES Indenture and the unreasonableness of the amount of the claim.

In 2015, Judge Kevin Carey[9] issued a memorandum opinion and order sustaining the Reorganized Debtors' objection to the WTC Fee Claim, deciding as a matter of law that an unsecured creditor cannot recover postpetition attorney fees and costs as part of its allowed claim against a bankruptcy estate.[10]  He acknowledged that courts were divided on this issue, even after the issuance of the United States Supreme Court 2007 opinion in *Travelers*,[11] in which the Court abrogated "the Ninth Circuit's *Fobian* rule that disallowed claims against a bankruptcy estate for attorney's fees arising from litigating issues that were 'peculiar to federal bankruptcy law' rather than basic contract enforcement

---

[8] *In re Tribune Media Company*, Case No. 08-13141, 2015 WL 7307305 (Nov. 19, 2015), *motion to certify appeal granted*, Case No. 15-1116-GMS, 2016 WL 1451161 (D. Del. Apr. 12, 2016), *order denying appeal*, Case No. 16-8041 (3d Cir. May 25, 2016), *rev'd and remanded*, Case No. 15-1116-RGA, 2018 WL 6167504 (D. Del. Nov. 26, 2018), *order dismissing appeal for lack of appellate jurisd.*, Case No. 18-3793 (3d Cir. Aug. 14, 2019).

[9] Judge Kevin Carey retired from the bench in August 2019 and this matter was reassigned to the undersigned.

[10] *In re Tribune Media Co.*, Case No. 08-13141, 2015 WL 7307305 (Nov. 19, 2015).

[11] *Travelers Cas. & Surety Co. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007).

issues."[12]  However, the Supreme Court also wrote "we express no opinion with regard to whether, following the demise of the *Fobian* rule, other principles of bankruptcy law might provide an independent basis for disallowing Traveler's claim for attorney's fees."[13]  Judge Carey's opinion was based solely on that legal issue and he did not consider the other grounds underlying the Reorganized Debtors' objection.

On appeal, the District Court reversed the 2015 *Tribune* decision, noting that all of the appellate courts considering the issue since *Travelers* have "unanimously rejected [Tribune's] position and have allowed unsecured claims for contractual attorneys' fees that accrued post-filing of the bankruptcy petition."[14]

The matter is now before this Court on remand from the United States District Court for the District of Delaware.  The parties have stipulated to four remand issues:

1. Whether WTC is entitled to a claim for professional fees it has not paid and for which Tribune claims that WTC is not liable?

2. Whether, and the extent to which, the fees that are the subject of WTC's unsecured claim are reasonable in light of the prudent person standard, the "economics of the situation" and the facts and circumstances of the Tribune bankruptcy case and the nature of the invoices submitted by WTC?

3. Whether WTC's claim properly includes the professional fees of Mesirow Financial Consulting, LLC?

---

[12] *Tribune*, 2015 WL 7307305 at *4 (citing *Travelers*, 549 U.S. at 447, discussing *In re Fobian*, 951 F.2d 1149 (9th Cir. 1991)).

[13] *Id.* (citing *Travelers*, 549 U.S. at 455)).

[14] *In re Tribune Media Co.*, Civ. Action No. 1:15-cv-01116-RGA, 2018 WL 6167504, *2 (D. Del. Nov. 26, 2018) (citing cases).

4.  Whether WTC is entitled to an unsecured claim for professional fees incurred after the effective date of Tribune's plan of reorganization?

## **Indenture Language**[15]

The Plan specifically permits WTC to submit a claim for fees and expenses arising under Section 6.07 of the PHONES Notes Indenture.  That section provides, in relevant part, as follows:

The Company agrees:

(1)  To pay to the Trustee from time to time reasonable compensation in Dollars for all services rendered by it hereunder …

(2)  except as otherwise expressly provided herein, **to reimburse** the Trustee in Dollars upon its request for all reasonable expenses, disbursements and advances **incurred or made by the Trustee** in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to its negligence or bad faith . . . .[16]

WTC also relies on two other sections of the PHONE Notes Indenture:

Section 5.03:

The Company covenants that if [it defaults] the Company will, upon demand of the Trustee, pay to it … such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel.

---

[15] A copy of the PHONES Indenture (the "Indenture") is attached as Ex. A to the Declaration of James O. Johnston (D.I. 13402-2).

[16] Indenture § 6.07(1) and (2) (emphasis added).

Section 5.04:

In the pendency of any ... bankruptcy ... or other similar judicial
proceeding relative to the Company, ... the Trustee ... shall be entitled
and empowered ...

> (1) to file and prove a claim . . . and to file such other papers or
> documents as may be necessary or advisable in order to have
> the claims of the Trustee (including any claim for the
> reasonable compensation, expenses, disbursements and
> advances of the Trustee, its agents and counsel) . . . allowed
> in a judicial proceeding, and
> (2) to collect and receive any moneys or other property payable
> or deliverable on any such claims and to distribute the same;

and any ... trustee ... or other similar official in any such judicial
proceeding is hereby authorized by each Holder to make such
payments to the Trustee, and in the event that the Trustee shall
consent to the making of such payments directly to the Holders, to pay
to the Trustee any amount due it for the reasonable compensation,
expenses, disbursements and advances of the Trustee, its agents and
counsel, and any other amounts due the Trustee under Section 6.07.

## **Discussion**

Remand Issue 1: Whether WTC is entitled to a claim for professional fees it has
not paid and for which Tribune claims that WTC is not liable?

The Plan defined General Unsecured Claims to include "any Allowed Claim

by [WTC] for fees and expenses arising under Section 6.07 of the PHONES

Indenture."   The Reorganized Debtors focus on specific language in Section 6.07

providing that Tribune will *reimburse* WTC for all reasonable expenses,

disbursements, and advances *incurred or made* by the Trustee. Two PHONES

noteholders (Camden Asset Management, L.P. ("Camden") and Suttonbrook Capital

Management LP ("Suttonbrook")) agreed to pay WTC up to $3 million for

professional fees and expenses related to WTC's exercise of rights under the

PHONES Indenture.[17]  WTC has paid only that $3 million to its professionals and, pursuant to the terms of the engagement agreement with counsel, it is not obligated to pay any further amount.  The Reorganized Debtors assert that the WTC Fee Claim should be limited to reimbursement of the $3 million of professional fees that were actually incurred and paid.[18]

WTC rejects the Reorganized Debtors' position, claiming that nothing in the Indenture, relevant case law, or established industry practice requires WTC to actually be liable for fees, or to pay its professionals' legal fees prior to asserting a claim for payment of the reasonable fees, costs and expenses of the Trustee and its agents and counsel.

For the reasons set forth below, the Court agrees with the Debtors' position and concludes that the allowed amount of the WTC Fee Claim should be limited to $3 million, which reimburses WTC for the amount of professional fees it has incurred.

(A)    The Indenture

WTC's right to payment of professional fees and costs arises from the PHONES Indenture.[19]  Section 6.07 specifically provides that Tribune will

---

[17] Decl. of Patrick Healy, Mar. 26, 2013, ¶ 12 (D.I. 14609-3, Ex. B).

[18] The Debtors argue that the fee claim of $3 million should be further reduced by the amount of $1,259,000 previously paid to WTC for the Committee Member Claim and the Substantial Contribution Claim.  The Court, however, agrees with WTC that it is appropriate to subtract the previously allowed claim amounts from the *gross* amount of WTC's claim and not further reduce the $3 million allowed amount.

[19] "A 'trust indenture' is a contract entered into between a corporation issuing bonds or debentures and a trustee for the holders of the bonds or debentures, which, in general, delineates the rights of the holders and the issuer."  *MeehanCombs Global Credit Opp. Funds., LP v. Caesars Entm't Corp.*, 80 F.Supp.3d 507, 512 n. 27 (S.D.N.Y. 2015) (quoting *Upic & Co. v. Kinder-Care Learning Ctrs., Inc.*, 793 F.Supp. 448, 450 (S.D.N.Y. 1992)).

"**reimburse the Trustee** … for all reasonable expenses, disbursements and advances **incurred or made by the Trustee** in accordance with any provision of this Indenture (including reasonable compensation and the expenses and disbursements of its agents and counsel)."[20]  The Reorganized Debtors assert that "reimburse" means "to pay back someone."[21]  The Reorganized Debtors thus argue that WTC's attorney fee claim should be limited to reimbursing WTC for the $3 million actually paid to its professionals.

The Reorganized Debtors also claim that WTC has not *incurred* the professional fees and expenses that make up the remainder of the WTC Fee Claim because WTC has no obligation to pay those amounts. The engagement letter agreement between WTC and its primary counsel, Brown Rudnick, LLP, provides that counsel is entitled to:

> *the higher of:* (i) its fees and expenses accrued and incurred in connection with this representation; *or* (ii) 10% of all recoveries obtained by the Trustee or the holders on account of the PHONES, with no ceiling or maximum (the "Shared Compensation").[22]

---

[20] Indenture, § 6.07(2) (emphasis added).

[21] *Quick v. NLRB*, 245 F.3d 231, 256 (3d Cir 2001) (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 993 (1990)) (affirming the NLRB's decision not to award attorney fees to a prevailing plaintiff because (i) the plaintiff did not incur attorney fees since he was represented by a non-profit organization and (ii) the National Labor Relations Act does not award attorney fees to prevailing parties).

[22] *See* Substantial Contribution Appl., D.I. 13272, Ex. I, Letter Agreement dated as of Oct. 28, 2010, at WTC1F06137 (emphasis added).  The Reorganized Debtors assert that the terms of the  fee arrangement between WTC and its counsel changed over time as the prospect for payment on the PHONES Notes became dimmer during the Chapter 11 cases.  The Debtors point out that counsel increased the "Shared Compensation" or contingency piece of its fee arrangement from a fee of 10% of the first $50 million in recoveries and 5% of recoveries over $50 million, up to an aggregate fee of $15 million (*Id.,* Ex. I., Letter Agreement dated Jan. 12, 2010, at WTC1F06087-WTC1F06088) to a fee of 10% of all recoveries with no ceiling or maximum (*Id.,* Ex. I, Letter Agreement dated Oct. 28, 2010, at WTC1F06137).  The Debtors claim that this is more evidence that the agreement between WTC and its counsel was really just a garden variety contingency fee claim.  The Reorganized Debtors argue that agreeing to pay the *higher* of actual fees and costs or the contingency fee puts the bankruptcy estate into a "heads I win, tails you lose" position whereby counsel would obtain an unlimited

9

WTC argues that the contingency fee component in clause (ii) is triggered only if ultimate recoveries by WTC would result in a higher fee than the fees and expenses billed at hourly rates.  Since there was no recovery on the PHONES Notes that would trigger payment of a contingency fee, WTC argues that Tribune must pay all professional fees and expenses billed in connection with the representation of the PHONES Noteholders in the Tribune Chapter 11 bankruptcy cases.

The Reorganized Debtors point out that the engagement letter agreement between WTC and its counsel also included following statement:

> Notwithstanding anything to the contrary herein, it is expressly understood that your liability for our fees and expenses, and the fees and expenses of outside parties retained by us, will be limited to the amounts you receive under that certain letter agreement of the same date hereof by and among Wilmington Trust Company and the holders party thereto [Camden and Suttonbrook].  We understand that you will not advance your own funds to satisfy our invoices or the invoices of outside parties retained by us.[23]

The Reorganized Debtors assert that the foregoing language relieves WTC from any obligation to pay professional fees unless a Noteholder agrees to provide WTC with funds to pay those fees.  Because neither WTC nor any Noteholder had any obligation to pay professional fees and expenses beyond the amount provided by

---

contingency fee if success were achieved *but* also would be paid its full hourly fees and expenses in the event the PHONES Noteholders failed to receive any distribution.

[23] Decl. of James O. Johnston in Support of Reorganized Debtors' Objection to Class 1F Other Parent Claim Asserted by Wilmington Trust Company, Mar. 18, 2013, Ex. B (D.I. 13402-2 at WTC1F05139).  This is consistent with Section 6.01(c)(4) of the Indenture, which provides that:

> no provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or power, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.
> Indenture, § 6.01(c)(4).

Camden and Suttonbrook under certain concurrent letter agreements, the

Reorganized Debtors contend that WTC has not *incurred* any professional fees or

expenses.

Other courts considering the definition of the word "incurred" have looked to

Black's Law Dictionary to determine its plain meaning and have concluded that "to

'incur' means to 'suffer or bring on oneself,' as in a 'liability or expense,' and …this

definition does not 'leave any room for debate on this proposition: one who has

'incurred' an expense is *liable* for it.'"[24]  In *White*, the Court considered the language

of Fed.R.Civ.P. 37(a)(5)(A), which provides, in part, that:

> If the motion [to compel disclosure or discovery] is granted … the court
> must … require the party or deponent whose conduct necessitated the
> motion, the party or attorney advising that conduct, or both **to pay the
> movant's reasonable expenses *incurred* in making the motion,
> including attorney's fees**.[25]

 The *White* court concluded that "[a]bsent a demonstration that White is obligated

to reimburse his attorney for the time spent in preparing and arguing the motion,

he is not entitled to relief under Rule 37(a)(5)(A)."[26]

The issue of whether professional fees are "incurred" when the client has no

obligation to pay them also has arisen in bankruptcy cases when professionals seek

---

[24] *White v. Larusch*, ___ F.Supp.3d ___, 2021 WL 1263885, *3 (W.D.N.Y. Apr. 5, 2021) (quoting *In re Dawes*, 652 F.3d 1236, 1239 (10th Cir. 2011) (emphasis in original)).  *See also United States Dept. of Justice, Tax Div. v. Hudson*, 626 F.3d 36, (2d Cir. 2010) (deciding that an attorney who successfully represented himself in tax-related litigation against the IRS was not entitled to payment of attorney fees under a prevailing party statute because he did not "incur" any obligation to pay attorney fees); *Town of New Windsor v. Tesa Tuck, Inc.*, 935 F. Supp. 317, 320 n. 3 (S.D.N.Y. 1996) ("a thing for which there exists no obligation to pay, either express or implied, cannot in law be claimed to constitute an 'expense incurred'")(citing *U.S. v. St. Paul Mercury Indem. Co.*, 238 F.2d 594, 598 (8th Cir. 1956)).

[25] Fed.R.Civ.P. 37(a)(5)(A) (emphasis added).

[26] *White*, 2021 WL 1263885 at *4.

payment of a substantial contribution administrative expense claim under

Bankruptcy Code § 503(b)(3)(D) and (b)(4).[27] Some courts have distinguished

between awarding relief under Section 503(b)(3)(D) - - which requires that expenses

be *incurred* by the creditor - - and Section 503(b)(4) - - which does include the term

"incurred."[28]

WTC disagrees with the Reorganized Debtors' argument and points out that

Section 6.07 incorporates other sections of the Indenture:

> The Company agrees . . . except as otherwise expressly provided
> herein, to reimburse the Trustee in Dollars upon its request for all
> reasonable expenses, disbursements and advances incurred or made
> by the Trustee ***in accordance with any provision of this
> Indenture*** (including the reasonable compensation and the expenses
> and disbursements of its agents and counsel).[29]

---

[27] Those subsections of § 503(b) provide, in pertinent part:

(b)　　After notice and a hearing, there shall be allowed administrative expenses, …, including - -

. . . .

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, **incurred by** - -

. . . .

(D)　　a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

. . . .

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D) or (E) of paragraph 3 of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. § 503(b)(3)(D) and (4) (emphasis added).

[28] *In re R.L. Adkins Corp.*, 505 B.R. 770, 779 (Bankr. N.D. Tex. 2014) ("[T]he distinctions between the two provisions, (b)(3)(D) and (b)(4) are important.　Section 503(b)(3)(D) requires *incurrence* of expenses by the creditor seeking reimbursement.　Section 503(b)(4), on the other hand, contains no explicit requirement of incurrence of legal fees by the creditor; it simply refers to the *rendering* of legal services.") (emphasis in original).　*See also In re Mirant Corp.*, 354 B.R. 113, 140 (Bankr. N.D. Tex. 2006); *In re Western Asbestos Co.*, 318 B.R. 527, 530 (Bankr. N.D. Ca. 2004).　*But see In re Olsen*, 334 B.R. 104, (S.D.N.Y. 2005) (deciding that fees covered by subsection (b)(4), like costs covered by subsection (b)(3), must be "incurred by" a creditor).

[29] Indenture, § 6.07(2).

WTC argues that other provisions of the Indenture - - notably, Sections 5.03 and 5.04. - - also obligate Tribune to pay WTC's professional fees and expenses and do not contain the words "reimburse" or "incur."

The Court agrees that the Section 6.07 incorporates other provisions of the Indenture but disagrees that these provisions help WTC.  Sections 5.03 and 5.04 do not create a right to payment for fees and costs *that WTC is not obligated to pay*.

In Section 5.03 Tribune agreed that, if it defaulted on the PHONES Notes, then "upon demand of the Trustee, [Tribune will ] pay to [WTC] … such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel."[30]   If WTC has not incurred any liability to pay the costs or expenses of collection, then there is no amount to pay *to WTC*.  Further, Section 5.03 references payment to WTC of an amount sufficient to cover the "costs and expenses of collection."  As noted, WTC did not collect any amount in the bankruptcy case on behalf of the PHONES Noteholders.[31]

Section 5.04 authorizes WTC to file and prove a claim in a bankruptcy case for all amounts owed on the PHONES Notes.  Section 5.04 also provides that Tribune will "pay to the Trustee any amount due it for the reasonable

---

[30] Indenture, § 5.03.

[31] Moreover, the Reorganized Debtors note that the professional fees billed in connection with the PHONES Notes cover much more than "collection" costs, including "millions of dollars in fees for activities like the investigation of the LBO, interaction with the Examiner, prosecution of the Noteholder Plan, and objections to the various iterations of the Tribune Plan."  Reorganized Debtors' Brief, D.I. 14642, at ¶ 17.  It is an open question whether the foregoing activities could fall within the "costs of collection." If WTC were liable for the professional fees, the Court would be required to review these services more closely to determine the reasonableness of the activities. However, since WTC is not liable for the fees and costs, a reasonableness evaluation at this point is moot.

compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and any other amounts due to Trustee under Section 6.07."   Section 5.04 permits payment to WTC for amounts "due it," but, again, not for amounts that the Trustee is not liable to pay.

Ultimately, the Reorganized Debtors' interpretation of the Indenture language is more convincing.  The Court concludes that the PHONES Indenture does not require Tribune to reimburse WTC for amounts that WTC is not obligated to pay, that is, amounts that were not *incurred*.

(B)    Caselaw

WTC also argues that case law supports its argument that the Reorganized Debtors must pay the professional fees regardless of WTC's obligation to pay them, noting that other courts have decided that (i) attorney fee awards "are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel;"[32] and (ii) "[t]he presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards."[33]  In *Wilson*, the court awarded attorney fees to the prevailing plaintiff under the Equal Access to Justice Act ("EAJA")[34] even though the attorney fees were paid by the plaintiff's insurer.  The *Wilson* court determined that litigants who pay a third party (such as an insurer or a union) for benefits that include legal representation may not "incur" attorney fees

---

[32] *Ed A. Wilson Inc. v. General Serv. Adm.*, 126 F.3d 1406, 1409 (Fed. Cir. 1997) (quoting *Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir. 1977), *criticized on other grounds*, 621 F.2d 532 (3d Cir. 1980)).
[33] *Id.*
[34] *Wilson*, 126 F.3d at 1408 (citing 5 U.S.C.A. § 504 (West 1994 & Supp. 1997)).

at the time litigation is pursued, but "both the union employee and the insured can

be viewed as having *incurred* legal fees insofar as they have paid for legal services

in advance as a component of the union dues or insurance premiums."[35]  There is no

analogous prepayment of legal fees in this matter.

More importantly, many statutes awarding attorney fees to prevailing parties

have important public policy considerations.  The United States Supreme Court

recognized that the purpose behind awarding attorney fees under The Civil Rights

Attorney's Fees Award Act of 1976[36]  "is to ensure 'effective access to the judicial

process' for persons with civil rights grievances."[37]  The statutes awarding

prevailing party attorney fees in *Wilson* (under the EAJA) and *Rodriguez* (under the

Age Discrimination in Employment Act[38])  are intended "to eliminate financial

disincentives for those who would defend against unjustified governmental action

and thereby to deter the unreasonable exercise of Government authority,"[39] or "to

encourage private enforcement of individual rights and to deter socially harmful

conduct."[40]  Such public policy incentives are not applicable in the case at bar.    The

litigation does not attempt to stop unjustified governmental actions or protect basic

rights.   This is a contractual dispute involving collection of a debt.

The Court concludes that the case law considering attorney awards under

prevailing party statutes is not analogous to the contractual rights at issue here.

---

[35] *Wilson*, 126 F.3d at 1409-1410 (emphasis added).

[36] 42 U.S.C. § 1988

[37] *Blanchard v. Bergeron*, 489 U.S. 87, 95, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

[38] *Rodriguez*, 569 F.2d at 1234 (citing 29 U.S.C. §§ 621-634 (1970 & Supp. IV 1974)).

[39] *Wilson*, 126 F.3d at 1410.

[40] *Rodriguez*, 569 F.2d at 1245.

(C)    <u>Industry custom</u>

WTC also argues that the Reorganized Debtors' position is contrary to

decades-old industry custom and would risk impairing the bond market. WTC relies

upon a declaration by Patrick Healy, a WTC officer, who disagrees that an

indenture trustee must first pay all legal fees and expenses of outside counsel,

advisors, and experts before seeking reimbursement from the issuer under the

relevant indemnity provisions of an Indenture.[41]  Mr. Healy attested that:

> [A]n indenture trustee invariably invokes indemnity rights at the
> outset or retains counsel with the understanding that counsel will look
> to the issuer for payment of those fees.  As a practical matter, the
> economics of the trustee relationship allows for no other result.  An
> institution such as Wilmington Trust acts as a trustee under myriad
> indentures at any given time.  The compensation it receives for the
> traditional and routine, non-litigation-oriented services is modest.
> Given that reality, when litigation does arise, an indenture trustee
> must look to the indemnities in the indenture if it intends to provide
> any substantive services.  The idea that an indenture trustee would
> advance such costs defies economic reality.  Moreover, without the
> ability to access such indemnities absent first paying out what could be
> substantial fees and expenses, entities such as Wilmington Trust would
> never accept such engagements.  Indenture Trustees are of course
> integral to the marketability of public debt.[42]

The Reorganized Debtors, however, contend that limiting WTC's claim to the

amount it paid or was obligated to pay does not risk impairing the bond market or

running counter to industry custom.  Instead, the Reorganized Debtors assert that

such limitations on payment will merely ensure that indenture trustees do what the

indenture agreements contemplate when the issuer defaults: either arrange for

bondholders to pay the fees of their chosen professionals or hire professionals who

---

[41] Decl. of Patrick Healy, March 26, 2013, ¶ 21 (D.I. 14609-3, Ex. B).
[42] Decl. of Patrick Healy, March 26, 2013, ¶¶ 21-22 (D.I. 14609-3, Ex. B).

are willing to defer payment (for either hourly or contingency fees) until distributions are made.

The Court concludes that WTC's argument about the bond industry is overstated, and the Debtors' argument is more persuasive. This case utilized both bondholder payments and contingency fees, thereby asking noteholders and counsel, respectively, to carefully evaluate the risk of their legal strategy. The Court is not requiring an indenture trustee to advance payment of fees and costs, but it is requiring that an indenture trustee be liable to pay those costs either out of its pocket or from distributions received. Asking Tribune to pay more than the amount that WTC is obligated to pay - - that is, the amount of fees that WTC *incurred* - - is tantamount to giving WTC's professionals a blank check. When considering a contractual fee-shifting provision, a court must "keep in mind that it has a responsibility to guard against moral hazard, which is 'the tendency to take additional risks (or run up extra costs) if someone else pays the tab.'"[43] Limiting professional fees to the amount that WTC was actually obligated to pay (even if that amount was not paid prior to seeking reimbursement) reinforces the commercial reasonableness of the claim.

---

[43] *Capital One Auto Finance, Inc. v. Orland Motors, Inc.*, No. 09-cv-4731, 2012 WL 3777025, *4 (N.D. Ill. Aug. 27, 2012) (quoting *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 200 F.3d 518, 521 (7th Cir. 1999)). In *Medcom*, Judge Easterbrook decided that attorney fee awards under a fee-shifting statute required itemization and a review for reasonableness under the "lodestar" method, while a contractual indemnity clause implies that "reasonable" fees should be assessed using the market's mechanisms. *Medcom*, 200 F.3d at 520. "The district judge should have undertaken a review of [plaintiff's] aggregate costs to ensure that they were reasonable in relation to the stakes of the case . . . [o]ne indicator of reasonableness is that [plaintiff] paid all of these bills at a time when its ultimate recovery was uncertain." *Id.* at 521.

## **Conclusion**

The language of the Indenture Agreement determines the rights and responsibilities of the issuer (Tribune) and the Indenture Trustee.  Here, the Indenture requires Tribune to reimburse WTC for professional fees and costs that were *incurred*.  WTC's letter agreement with counsel makes clear that WTC is not responsible to pay any professional fees and costs greater than the amount paid by the Noteholders.  For all of the reasons discussed above, the Court concludes that WTC's general unsecured claim will be allowed in the amount of fees *incurred* by WTC – that is, $3 million.[44] The balance of the WTC Fee Claim will be disallowed. The parties shall confer and submit an appropriate Order consistent with this Opinion within 14 days of the date hereof.

FOR THE COURT:

Brendan Linehan Shannon
United States Bankruptcy Judge

Dated:  June 25, 2021

---

[44] Because the Court concludes that the language of the Indenture and the facts of this case fix the allowed amount of the WTC Fee Claim at $3 million, the Court does not reach the remaining three Remand Issues.