# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY[1] (f/k/a Tribune Company), | Case No. 08-13141 (BLS) |
| Reorganized Debtor. | Hearing Date: August 16, 2022 at 11:00 a.m. (ET) Objection Deadline: July 21, 2022 at 4:00 p.m. ET |

**REORGANIZED DEBTOR'S SEVENTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003 AND 3007, AND LOCAL RULE 3007-1**

**("EMPLOYMENT INDEMNIFICATION CLAIMS")**

The reorganized debtor in the above-captioned chapter 11 case (the "Reorganized Debtor"),[2] by and through its undersigned counsel, hereby files this seventy-eighth omnibus objection to claims (the "Objection"), which Objection covers each of the eight (8) claims filed by certain former officers and directors of the Reorganized Debtor set forth on **Exhibit A** attached hereto (the "Employment Indemnification Claims"). This Objection is submitted pursuant to sections 502(b) and 558 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 3001, 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). By this Objection, the Reorganized Debtor requests the entry of an order disallowing in full and expunging the Employment Indemnification Claims for the reasons described in further detail below. In support of the Objection, the Reorganized Debtor relies on the

---

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the entity's federal tax identification number, is Tribune Media Company (0355). The corporate headquarters and the mailing address for the Reorganized Debtor is 545 E. John Carpenter Freeway, Suite 700, Irving, TX 75062.

[2] Unless otherwise specified, all defined terms shall have the same meanings as in the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (as modified July 19, 2012, the "Plan") [D.I. 12072-2], confirmed by an order of the Court dated July 23, 2012 [D.I. 12074] (the "Confirmation Order").

Declaration of Elizabeth Ryder (the "Ryder Declaration"), attached hereto as **Exhibit B**.  In further support of the Objection, the Reorganized Debtor respectfully states as follows:

## INTRODUCTION

1.	The Employment Indemnification Claims that are objected to in this Objection, as listed on the attached **Exhibit A**, are all substantially identical contingent, unliquidated claims by former directors and officers of the Debtors (as defined in footnote 4, below).  The Employment Indemnification Claims seek contribution and/or reimbursement of costs and/or liabilities that the claimants alleged they might incur in various civil actions.  Four (4) of the claims appear to focus primarily on such rights in connection with costs that might be incurred in connection with adversary proceedings commenced by the Official Committee of Unsecured Creditors (the "Committee") against each of the claimants in 2010 and other associated civil actions, which actions were pursued by the Litigation Trust following confirmation of the Debtors' chapter 11 plan in 2012 and have now been resolved with finality.  The four (4) other claims covered by this Objection purport to cover any indemnification relating to the claimant's service as a director or officer more generally.

2.	The Reorganized Debtor submits this objection seeking to disallow all of the Employment Indemnification Claims because (i) the adversary proceedings in which certain of the claimants were named as defendants have been dismissed, or the claimants have been terminated as defendants in such litigation, and the Litigation Trust that was pursuing any such litigation has now been dissolved, (ii) the likelihood of any new matters timely arising that could give rise to a right of payment for the claimants is extremely remote at best, and (iii) none of the claimants has, to the Reorganized Debtor's knowledge, advised the Reorganized Debtor of any amounts owing to them, or otherwise attempted to liquidate their claims, in the more than ten (10)

years since the Employment Indemnification Claims were filed.[3] Based on those facts, the Reorganized Debtor has no basis on which to conclude that any amounts are owed to any of the claimants or ever will be owed to any of them on account of any of the Employment Indemnification Claims. The Reorganized Debtor accordingly objects to such claims and asks the Court to disallow them and expunge them from the claims register.

3. Resolution of the Employment Indemnification Claims will mean that virtually all of the proofs of claim filed against the Debtors' estates have been addressed with finality. Such resolution is accordingly an important predicate step to allow the Reorganized Debtor to move for a final decree and conclude its chapter 11 case.

## STATUS OF THE CASE AND JURISDICTION

4. Tribune Company (now known as Tribune Media Company) and certain of its affiliates (collectively, the "Debtors"),[4] each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on December 8, 2008 (or in the case of Tribune CNLBC, LLC, October 12, 2009) (each date, the "Petition Date"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [D.I. 43, 2333].

5. On July 23, 2012, the Court confirmed the Plan.

6. The Effective Date of the Plan occurred on December 31, 2012. [D.I. 12939].

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

---

[3] As detailed herein, the Reorganized Debtor has communicated or attempted to communicate with each of the holders of the Employment Indemnification Claims, or his or her representative(s), prior to the filing of this Objection. Counsel for Mr. Robert La Blanc, the holder of Claim No. 6832, has asserted that the Reorganized Debtor may owe amounts to the claimant; however, to date, counsel has not informed the Reorganized Debtor of any specific amounts that are owed nor provided the Reorganized Debtor with any documentation in support of such amounts. The details of these communications are included in the **Exhibit A** attached hereto.

[4] As used herein, the term "Debtors" refers to the entities that filed the above-captioned chapter 11 case and its jointly administered cases, and the term "Reorganized Debtors" refers to the entities that became successors to the Debtors upon the Debtors' emergence from their chapter 11 cases.

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1.  The Reorganized Debtor confirms its consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

### FACTUAL BACKGROUND TO THE DEBTORS' CLAIMS PROCESS AND THE OBJECTION

8. On December 18, 2008, the Office of the United States Trustee appointed the Committee pursuant to section 1102(a) of the Bankruptcy Code.

9. On March 23, 2009, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I. 567–789], which were subsequently amended on April 13, 2009 [D.I. 894–957], June 12, 2009 [D.I. 1343–1453], March 2, 2010 [D.I. 3548–3599], May 14, 2010 [D.I. 4388], and January 28, 2011 [D.I. 7661–7671] (collectively, the "Schedules").

10. On March 26, 2009, the Court entered an order (the "Bar Date Order") that established June 12, 2009, as the final date and time for all persons and entities holding or asserting a claim against any of the Debtors arising on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11 cases.  [D.I. 813].  In relevant part, the Bar Date Order provided:

> ORDERED, that the following persons or entities are not required to file a Proof of Claim on or before the General Bar Date: . . .

4

     e. current officers and directors of the Debtors who assert claims for indemnification and/or contribution arising as a result of such officers' or directors' prepetition or postpetition services.

Id. at 4.

11. Written notice of the Bar Date was mailed to, among others, all known creditors listed on the Schedules, as amended, and the Bar Date Order was served on all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date Order. Id. Ex. B at 1–2. In addition to mailing such actual notice, the Debtors also published notice of the Bar Date in the National Editions of the Wall Street Journal, New York Times, Chicago Tribune, and Los Angeles Times on May 12, 2009. Id. at 6.

12. As of the Effective Date, approximately 7,165 Proofs of Claim were filed in these chapter 11 cases. The Proofs of Claim are recorded on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors and Reorganized Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent").

**FACTUAL BACKGROUND TO THE EMPLOYMENT INDEMNIFICATION CLAIMS**

13. By orders dated October 27, 2010 and November 29, 2010 [D.I. 6150, 6657, and 6658], this Court granted the Committee standing to file and prosecute certain adversary proceedings (the "Adversary Proceedings") against then-current and former directors and officers of the Debtors. In the Adversary Proceedings, the Committee sought, among other things, to recover various payments made to such then-current and former directors and officers as either preferences or fraudulent conveyances, damages for alleged breaches of fiduciary duty, the issuance of unlawful dividends, and unjust enrichment relating to the 2007 leveraged buyout of Tribune (the "Tribune LBO").

5

14. In November and December 2010, the Committee commenced the Adversary Proceedings. The Adversary Proceedings consisted of (i) actions that did not arise from the Tribune LBO, including, *inter alia*, actions relating solely to preferences or fraudulent conveyances (the "Ordinary Litigation Adversary Proceedings"), (ii) actions relating solely to damages resulting from the Tribune LBO (the "Tribune LBO Adversary Proceedings"), and (iii) actions for both preferences or fraudulent conveyances and damages resulting from the Tribune LBO (the "Mixed Adversary Proceedings"). Shortly after commencement of the Adversary Proceedings, the "Ordinary Litigation" components, as defined in paragraph 19 below, of the Adversary Proceedings were stayed. [D.I. 7165].

15. In June 2011, lawsuits in various jurisdictions asserting state law constructive fraudulent conveyance claims were brought against former stockholders of Tribune (the "SLCFC Actions") for damages arising out of the Tribune LBO. Certain then-current and former directors and officers were named as defendants in the SLCFC Actions.

16. The certificates of incorporation and/or bylaws of the various Debtors contained provisions pertaining to indemnification of the Debtors' respective directors and officers against liability for certain acts performed within the scope of their employment and providing reimbursement and advancement of costs and expenses incurred in defending lawsuits to which they become parties by virtue of their status as directors and officers of the Debtors, subject to specified limitations. See Plan § 11.6.1.

17. On October 3, 2011, this Court entered an order clarifying the bar date as to then-current and former directors and officers of the Debtors (the "Bar Date Clarification Order"). [D.I. 9876]. Under this order, the Court clarified that certain of those then-current and former directors and officers were required to file proofs of claim in the Debtors' chapter 11 cases, as follows:

> [then-current] or former directors and officers of the Debtors who cease to be employed by the Debtors shall have the longer of sixty (60) days after (i) the last day of employment with the Debtors and (ii) in the case that directors and officers of the Debtors have become disassociated from the Debtors postpetition but prior to the entry of this Order, [] in either such case, to timely file an indemnification and/or contribution claim against the Debtors arising from or related to the Adversary Proceedings or the SLCFC Actions.

Id. at 2. Directors and officers who remained employed by the Debtors were not required to file proofs of claim as a result of the Bar Date Clarification Order. Id.

18. After the entry of Bar Date Clarification Order, numerous then-current and former directors and officers of the Debtors filed proofs of claim for indemnification in the Debtors' chapter 11 cases. All of such proofs of claim were contingent, unliquidated claims for amounts that might be payable by one or more of the Debtors to such directors and officers on account of such indemnification rights. Of relevance to this Objection, eight (8) of such claims are the Employment Indemnification Claims, which are claims for indemnification obligations for defense costs and judgments relating to the Adversary Proceedings and related civil actions or for "indemnity for claims arising out of employment." See, e.g., Claim No. 7073, Proof of Claim of Timothy R. Kennedy Against Tribune Company at 1 (Nov. 28, 2011) (basis for the claim is "indemnification/contribution related to pending litigation."); Claim No. 6828, Proof of Claim of Denise E. Palmer at 1 (Oct. 10, 2011) (basis for the claim is "indemnity for claims arising out of employment.").

19. Under the Plan, the Committee was terminated, and the Litigation Trust (the "Litigation Trust") was created as of the Effective Date of the Plan. Plan § 13.1. In summary, the Plan split the ownership of claims against the then-current and former directors into three pieces: (i) the Reorganized Debtors were vested with the rights to the so-called "Ordinary Litigation," consisting, of, inter alia, claims for preferences or fraudulent conveyances that did not

7

arise out of the Tribune LBO; (ii) the Litigation Trust was vested with the rights to certain Preserved Causes of Action, consisting of claims for damages arising from the Tribune LBO; and (iii) both parties agreed to later reach a resolution regarding the ownership of certain unresolved claims, which consisted of actions in which the specifics were disputed or unknown. See Plan §§ 1.1.156 (defining Ordinary Litigation Claims); 1.1.174 (defining Preserved Causes of Action). Following Plan confirmation and the creation of the Litigation Trust, the unresolved claims were split into individual claims and ownership was transferred to either the Reorganized Debtors or the Litigation Trust, as appropriate, by agreement of the Reorganized Debtors and the Litigation Trustee.

20. In January of 2013, the Court entered a Substitution Order that substituted the Reorganized Debtors and other parties for the Committee as plaintiffs in the Ordinary Litigation Adversary Proceedings and Mixed Adversary Proceedings with respect to the "Ordinary Litigation" components. [D.I. 13099]; see, e.g., Notice of Substitution, Tribune Co. v. Healy (In re Tribune Co.), Adv. Pro. No. 10-55760 (KJC) (Bankr. D. Del. Jan. 24, 2013) [E.C.F. No. 42]. Shortly thereafter, the Reorganized Debtors and other parties filed Notices of Dismissal in each of the Ordinary Litigation Adversary Proceedings. See, e.g., Notice of Dismissal, Tribune Co. v. Healy (In re Tribune Co.), Adv. Pro. No. 10-55760 (Bankr. D. Del. Jan. 28, 2013) [E.C.F. No. 43]. Each Notice of Dismissal filed in each Ordinary Litigation Adversary Proceeding is substantially similar and states that the dismissal "hereby dismiss[es] this Adversary Proceeding with prejudice in its entirety . . . ." Id. at 2. The Reorganized Debtors and other parties also filed Notices of Partial Dismissal in each of the Mixed Adversary Proceedings. See, e.g., Tribune Co. v. Murphy (In re Tribune Co.), Adv. Pro. No. 10-55612 (Bankr. D. Del. Jan. 28, 2013) [E.C.F. No. 42]. Each Notice of Partial Dismissal filed in each of the Mixed Adversary Proceedings is

substantially similar and makes clear that the dismissal applies "<u>solely with respect to the Ordinary Litigation Claims</u>." Id. at 2 (emphasis in original).

21. In March of 2013, the Court entered another Substitution Order that substituted the Litigation Trustee for the Committee as plaintiff in the Tribune LBO Adversary Proceedings and Mixed Adversary Proceedings with respect to the Preserved Causes of Action. [D.I. 13351]. Following this substitution by the Litigation Trustee, the Litigation Trustee pursued the Preserved Causes of Action for several years. That prosecution ultimately resulted in the settlement or dismissal (including after appellate proceedings) of all of the causes of action included in the Tribune LBO Adversary Proceedings and Mixed Adversary Proceedings with respect to the Preserved Causes of Action.[5] The Litigation Trustee has now advised the Court and the parties in interest that in this case that following the denial in February 2022 of a petition for a writ of certiorari filed by the Litigation Trustee with the Supreme Court, "all appeals of the remaining claims . . . were exhausted and the final claims in the Trust's litigation were concluded with finality." Final Report at 17. The Litigation Trust was subsequently dissolved on its own initiative as of April 30, 2022, and filed its Final Report with the Court on June 17, 2022. Final Report at 3.

22. As a result of these actions, the Litigation Trust is no longer asserting claims against any director, officer, or other party in interest in the Debtors' chapter 11 cases relating to the Tribune LBO. Furthermore, the Reorganized Debtor is not aware of any other party or parties asserting any claims against any of the Debtors' former directors, officers, or employees relating to the prepetition operations of the Debtors, nor is the Reorganized Debtor aware of any party that could plausibly assert any such claims given the more than 13 years that have passed since the Debtors' chapter 11 cases were commenced, and the nearly ten years that have passed since the

---

[5] See generally Litigation Trustee's Notice of Final Annual Report Ex. A (June 17, 2022) [D.I. 14860] (the "<u>Final Report</u>"). The Reorganized Debtor neither questions the summary provided by the Litigation Trustee in its Final Report nor adopts it as true. The Reorganized Debtor references the Final Report insofar as it is evidence that the Litigation Trust has resolved with finality all of the causes of actions that were assigned to it.

9

46429/0001-43395356v1

Plan was confirmed. Ryder Declaration at ¶¶ 4–5. There are accordingly, to the best of the Debtor's knowledge, no longer any claims that may plausibly be asserted against the parties who filed the Employment Indemnification Claims relating to the matters covered by those claims.

23. In the period since the Ordinary Litigation Adversary Proceedings and the Ordinary Litigation claims components of the Mixed Adversary Proceedings were dismissed, the Reorganized Debtor has not been advised by any of the defendants in those actions that asserted Employment Indemnification Claims that such defendants are owed any amounts on account of such claims. See Ryder Declaration at ¶ 4. Similarly, in the period since the Preserved Causes of Action components of the Mixed Adversary Proceedings were transferred, the Reorganized Debtor has not been advised by any of the claimants involved in the MDL Litigation that such claimants are owed any amounts on account of asserted Employment Indemnification Claims. Id. The Reorganized Debtor is unaware of any other attempts by the claimants asserting Employment Indemnification Claims to liquidate or quantify their claims, nor is the Reorganized Debtor aware of any amounts that might otherwise be owed to such claimants on account of such claims. Id.

24. These outstanding Employment Indemnification Claims are a majority of the remaining proofs of claim in the Claims Register. Resolution of the Employment Indemnification Claims is the principal remaining step that must be cleared by the Reorganized Debtor before it can seek a final decree in the remaining Reorganized Debtor's chapter 11 case.

## **RELIEF REQUESTED**

25. By this Objection, the Reorganized Debtor seeks an entry of an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1, (i) disallowing and expunging in their entirety each of the Employment Indemnification Claims identified on **Exhibit A** on the grounds set forth herein with respect to

46429/0001-43395356v1

each such claim and (ii) authorizing the Claims Agent to modify each of the Employment Indemnification Claims on the Claims Register in accordance with the proposed Order.

26. This Objection complies with Local Rule 3007-1 in all respects.

## BASIS FOR OBJECTION

27. This Objection is based on section 502(b)(1) of the Bankruptcy Code, which provides in pertinent part:

> [l]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that-
>
> (l) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . .

11 U.S.C. § 502(b)(l). Section 502(b)(l) recognizes the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450–51 (2007) (citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)). A claim against the bankruptcy estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." In re Combustion Eng'g, Inc., 391 F.3d 190, 245 (3d Cir. 2004). In proceedings to determine whether a claim is enforceable against the estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses" pursuant to section 558 of the Bankruptcy Code. See 11 U.S.C. § 558.

28. The principal basis for the Employment Indemnification Claims alleged by the claimants was to preserve their contingent indemnification rights with respect to actions being

pursued by the Litigation Trust in which the claimants had been named as defendants or such claimants' service as directors or officers of one or more of the Debtors (or both).  However, any action in which the claimants had been named that was being pursued by the Litigation Trust has now been resolved with finality and the Litigation Trust has dissolved, so no costs may potentially be incurred in connection with that litigation any longer that could trigger any indemnification rights.

29. In addition, although certain of the Employment Indemnification Claims are general assertions of contingent indemnification rights and not limited to claims in connection with the Adversary Proceedings, there is no basis on which to conclude that any amounts are or may become owed on account of the Employment Indemnification Claims.  The Debtors' chapter 11 cases were commenced over 13 years ago, and the Reorganized Debtor and its affiliates emerged from chapter 11 more than nine years ago.  It is extremely unlikely, if not impossible, that any new claims against any of the parties asserting the Employment Indemnification Claims could plausibly arise that would implicate the contribution and reimbursement rights that form the basis of the Employment Indemnification Claims.

30. The Reorganized Debtor's diligence and the other facts available to the Court support the conclusion that no amounts are, or are likely to become, owing on account of the Employment Indemnification Claims.  The Reorganized Debtor has reviewed its books and records and is unaware of any amounts owed to any of the holders of the Employment Indemnification Claims on account of their indemnification rights.  The Reorganized Debtor is also not aware of any assertions by the holders of such claims that they are owed any amounts.[6]  See Ryder Declaration at ¶ 4.

---

[6] *But see supra* note 3.

46429/0001-43395356v1

31.     The Reorganized Debtor's conclusion that no amounts are owing on account of the Employment Indemnification Claims is supported by the actions of the claimants and the Reorganized Debtor respecting those claims. None of the claimants has amended or supplemented his or her proof of claim in the over ten (10) years since such claim was filed to assert that any amounts are owed. Id. Following the conclusion of the litigation being pursued by the Litigation Trust, the Reorganized Debtor attempted on multiple occasions to contact each of the holders of the Employment Indemnification Claims, as well as all remaining similar claims, to determine if any amounts were owing or, if not, whether such claims could be consensually withdrawn. In most cases, the claimants agreed to withdraw the claims without payment because no amounts were owed thereunder. See, e.g., Notice of Withdrawal of Proofs of Claim (Apr. 12, 2022) [D.I. 14848]; Notice of Withdrawal of Proof of Claim (Apr. 12, 2022) [D.I. 14849]; Notice of Withdrawal of Proof of Claim (June 10, 2022) [D.I. 14859].

32.     In the case of the Employment Indemnification Claims covered by this Objection, the Reorganized Debtor attempted to contact each of the claimants by several means (e.g., telephone, email, and overnight mail, as provided on the applicable proof of claim form) to ascertain the status of his or her claim.[7] In cases where additional contact information for a claimant beyond that provided on the proof of claim form was made available to the Reorganized Debtor, attempts were made to contact the claimant using that information as well. The Reorganized Debtor's efforts to reach each of the holders of the Employment Indemnification

---

[7] A creditor that has submitted a proof of claim bears the responsibility for keeping a debtor apprised of any changes in the creditor's contact information set forth on that proof of claim, including any change in address. See, e.g., Dellamarggio v. B-Line, LLC (In re Barker), 306 B.R. 339, 348 (Bankr. E.D. Cal. 2004) ("Parties in claims proceedings are entitled to rely on the addresses provided by the claimant on a proof of claim and that requirements of due process are satisfied by mailing notice to such addresses.") (citations omitted); In re Eagle Bus Mfg., Inc., 62 F.3d 730, 736 (5th Cir. 1995) ("[W]e note that [the creditor] herself is to blame for not receiving notice because she failed to keep [the debtor] apprised of any change in her mailing address. Mailing a notice by First Class U.S. Mail to [the creditor's] last known address was reasonably calculated to inform her of the bar date for filing proofs of claim."). See also Fed. R. Bankr. P. 2002(g)(1) ("Notices required to be mailed under Rule 2002 to a creditor . . . shall be addressed as such entity or authorized agent has directed in its last request filed in the particular case.").

46429/0001-43395356v1

Claims covered by this Objection are set forth in detail on **Exhibit A** hereto. The Reorganized Debtor submits that it has taken all reasonable efforts to contact the holders of the Employment Indemnification Claims and determine whether any amounts are owed thereunder, and that the fact that the holders of those claims covered by this Objection have not responded thereto should not be a bar to granting the Objection.

## RESERVATION OF RIGHTS

33. The Reorganized Debtor hereby reserves its right to amend, modify, and/or supplement this Objection at any time prior to the hearing on this Objection. The Reorganized Debtor further reserves its right to adjourn the hearing on this Objection as it pertains to any or all of the Employment Indemnification Claims. In the event that the Reorganized Debtor so adjourns the hearing, it will state that the hearing on the Objection and, if applicable, any response filed in connection therewith and all applicable deadlines for responsive pleadings have been adjourned on the agenda for the hearing, which agenda will be served on any party affected by such adjournment.

## NOTICE

34. Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) the holders of the Employment Indemnification Claims listed on **Exhibit A**; and (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Reorganized Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

35. No previous application for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Reorganized Debtor respectfully requests that the Court enter an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-l, (i) disallowing and expunging in their entirety each of the Employment Indemnification Claims identified on **Exhibit A** on the grounds set forth herein with respect to each such claim; (ii) authorizing the Claims Agent to modify each of the Employment Indemnification Claims on the Claims Register in accordance with the proposed Order; and (iii) granting such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>July 7, 2022 | Respectfully submitted,<br><br>SIDLEY AUSTIN LLP<br>Kenneth P. Kansa<br>Ian C. Ferrell<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone:  (312) 853-7000<br><br>-and-<br><br>COLE SCHOTZ, P.C.<br><br>By: */s/ Patrick J. Reilley*<br>Norman L. Pernick (No. 2290)<br>Patrick J. Reilley (No. 4451)<br>500 Delaware Avenue, Suite 1410<br>Wilmington, Delaware 19801<br>Telephone:  (302) 652-3131<br><br>ATTORNEYS FOR REORGANIZED DEBTOR |