## **EXHIBIT B**

**Ryder Declaration**

46429/0001-44105657v1

DocuSign Envelope ID: F3160D64-67C2-4753-AB86-5F520D87A6CC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE MEDIA COMPANY[1] (f/k/a Tribune Company), | Case No. 08-13141 (BLS) |
| Reorganized Debtor. | |

## DECLARATION OF ELIZABETH RYDER IN SUPPORT OF REORGANIZED DEBTOR'S SEVENTY-NINTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS

### ("MORGAN STANLEY INDEMNIFICATION CLAIMS")

I, Elizabeth Ryder, declare as follows:

1.      I am Elizabeth Ryder, Secretary of Tribune Media Company, the reorganized debtor in the above-captioned chapter 11 case (the "Reorganized Debtor").

2.      I have read the Reorganized Debtor's Seventy-Ninth Omnibus (Substantive) Objection to Claims Pursuant to Sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007-1, and Local Rule 3007-1 (the "Objection")[2] and am directly, or indirectly by and through the Reorganized Debtor's personnel and advisors, familiar with the information contained therein and the Exhibit attached thereto.  I am authorized to submit this declaration (the "Declaration") in support of the Objection.

3.      All matters set forth in this Declaration are based on: (a) my personal knowledge; (b) my review of relevant documents; (c) my view, based on my experience and knowledge of the Reorganized Debtor's operations and personnel; (d) information supplied to me by others at the

---

[1]   The Reorganized Debtor in this chapter 11 case, along with the last four digits of the entity's federal tax identification number, is Tribune Media Company (0355). The corporate headquarters and the mailing address for the Reorganized Debtor is 545 E. John Carpenter Freeway, Suite 700, Irving, TX 75062.

[2] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Objection.

Reorganized Debtor's request; or (e) as to matters involving United States bankruptcy law or rules or other applicable laws, my reliance on the advice of counsel or other advisors to the Reorganized Debtor. If called upon to testify, I could and would testify competently to the facts set forth herein.

4. I have read the proofs of claim filed by Morgan Stanley for claim numbers 5034, 7162, and 6708, copies of which are attached hereto as <u>Exhibit 1</u>, <u>Exhibit 2</u>, and <u>Exhibit 3</u>, respectively.

5. The Reorganized Debtor is not aware of information, including supporting documentation (*e.g.*, invoices) provided either concurrently or supplementarily with the proofs of claim that support Morgan Stanley's alleged claim amounts.

6. The proofs of claim do not contain any supporting documentation, including invoices, to evidence the legal fees and expenses incurred. Absent such information, the Reorganized Debtor is unable to determine, among other things, whether the fees and expenses sought are reasonable.

7. In addition, the Reorganized Debtor has reached out to Morgan Stanley through each party's counsel, beginning in August 2022, to try to obtain further information about Morgan Stanley's proofs of claim and the basis for any amounts owed. However, as of the date of the Objection, the Reorganized Debtor has not received such requested and necessary information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of November 2022.

DocuSigned by:

*Elizabeth Ryder*

925EC852EE144F5...

By: Elizabeth Ryder
Secretary
Tribune Media Company

2

## **EXHIBIT 1**

**Proof of Claim No. 5034**

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
Tribune Company Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5069
New York, NY 10150-5069

## PROOF OF CLAIM

Filed: USBC - District of Delaware
Tribune Company, Et Al.
08-13141 (KJC)          0000005034

| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
|---|---|
| Tribune Company | 08-13141 (KJC) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

Morgan Stanley & Co. Incorporated
1585 Broadway, 3rd Floor
New York, NY 10036
Attn: Stephen O'Connor
Attn: General Counsel
Attn: Miscellaneous Notices
Fax: 212-507-4622

with a copy to:
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Attn: Thomas J. Moloney, Esq.
Attn: Seth Grosshandler, Esq.
Fax: 212-225-3999

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

Telephone number: 212-761-4000    Email Address: Stephen.O'Connor@morganstanley.com

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:          Email Address:

---

**1. Amount of Claim as of Date Case Filed: $** See Attachment

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete Item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

☐ Check this box if claim is for a claim related to goods delivered during the twenty (20) days prior to December 8, 2008 (the "Petition Date"), pursuant to 11 U.S.C. §503(b)(9). Please indicate amount entitled to 503(b)(9) $

**2. Basis for Claim:** See Attachment
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☒ Other
Describe: See Attachment

Value of Property: $_____    Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any:

$_____    Basis for perfection: _____

**Amount of Secured Claim: $**_____    **Amount Unsecured: $**_____

---

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

* Amounts are subject to adjustment on 4'1-10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

---

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date:  6/10/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.   Stephen O'Connor, Managing Director |
|---|---|

**FOR COURT USE ONLY**

**FILED / RECEIVED**

JUN 1 2 2009

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

## Items to be completed in Proof of Claim form

**Court, Name o f Debtor, and Case Number:**
Fill in the name of the debtor in the bankruptcy case and the bankruptcy case number. The full list of debtors is provided under the general information section on the Claims Agent's website http://chapter11.epiqsystems.com/tribune.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim. Also, check the appropriate box if all or a portion of your claim qualifies as an Administrative Expense priority under 11 U.S.C. § 503(b)(9) and provide the amount that is related to such priority.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---
## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at one of the following addresses:

*If by first-class mail:*
**Tribune Company Claims Processing Center**
**c/o Epiq Bankruptcy Solutions, LLC**
**FDR Station, P.O. Box 5069**
**New York, NY 10150-5069**

*If by hand delivery or overnight mail:*
**Epiq Bankruptcy Solutions, LLC**
**Attn: Tribune Company Claims Processing Center**
**757 Third Avenue, 3rd Floor**
**New York, NY 10017**

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property

of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials

---
## INFORMATION

of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the Claims Agent's website: (http://chapter11.epiqsystems.com/tribune) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                              )    Chapter 11
                                                    )
**TRIBUNE COMPANY, et al.,**                        )    Case No. 08-13141-KJC
                                                    )    Jointly Administered
                                                    )
                   Debtors.                         )
                                                    )
_____         )

## ATTACHMENT TO PROOF OF CLAIM
## OF MORGAN STANLEY & CO. INCORPORATED

The undersigned, Stephen O'Connor, is a Managing Director of Morgan Stanley

& Co. Incorporated ("MS&Co."), a corporation organized under the laws of Delaware, which

maintains an office at 1585 Broadway, 3rd Floor, New York, NY 10036, and is duly empowered

to make this claim (the "Claim"). As set forth more fully below, MS&Co. holds claims against

Tribune Company (formerly known as The Times Mirror Company) ("Tribune Company")

arising from and relating to the terms and conditions of the Indemnity (as defined below).

    I.    Background

    A.    The Tribune Company Bankruptcy

On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its

affiliates (collectively, the "Debtors") commenced voluntary cases under Chapter 11 of Title 11

of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for

the District of Delaware (the "Bankruptcy Court"). On March 25, 2009, the Bankruptcy Court

entered an Order Pursuant to Sections 501, 502, and 1111(a) of the Bankruptcy Code,

Bankruptcy Rules 2002 and 3003(c)(3), and Local Rule 2002-1(e) Establishing Bar Dates for

Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof (the "Bar Date

Bankruptcy Court for the District of Delaware
**In re Tribune Company, Case Number 08-13141-KJC**

Order") (Docket No. 813). Pursuant to the Bar Date Order, the Bankruptcy Court set June 12, 2009 as the bar date (subject to certain limitations) for prepetition claims against the Debtors.

B.     The Indemnity

Tribune Company and MS&Co. were parties to a certain indemnity agreement (the "Indemnity") that was executed on November 30, 2008. A copy of the Indemnity, together with a cover letter from MS&Co. to Tribune Company enclosing the Indemnity, is attached as Exhibit A hereto.

Under the Indemnity, Tribune Company agreed to indemnify and hold harmless MS&Co. and its affiliates and their respective officers, directors, employees and agents and other persons controlling MS&Co. or its affiliates from and against any losses, claims, damages, or liabilities related to, arising out of or in connection with MS&Co.'s anticipated engagement by Tribune Company in connection with certain restructuring matters (the "Engagement") under a certain proposed engagement letter (the "Engagement Letter"), including reimbursement of legal fees and expenses and other expenses incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement. The Engagement Letter was never fully executed by the parties thereto. A draft of the Engagement Letter circulated by MS&Co. to Tribune Company is attached as Exhibit B hereto.

II.     Claims Asserted by MS&Co.

MS&Co. hereby asserts a claim for all legal fees and costs and other expenses incurred by MS&Co. to which MS&Co. is entitled to reimbursement by Tribune Company under the Indemnity. Pursuant to the Indemnity, Tribune Company agreed to indemnify and hold harmless MS&Co. and its officers, directors, employees and agents and other persons controlling

2

MS&Co. from and against any losses, claims, damages, or liabilities related to, arising out of or in connection with the Engagement, including reimbursement of legal fees and expenses and other expenses incurred in connection with investigating, preparing, pursuing, or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement. MS&Co. hereby asserts a claim for the gross amount of such reimbursable fees and expenses under the Indemnity as, and to the extent that, such fees and expenses are incurred by MS&Co.[1]

### III. Miscellaneous

MS&Co. reserves the right to amend, clarify, modify or supplement this Claim to assert additional claims (including, without limitation, administrative expense claims) and/or additional grounds for its claims against Tribune Company or any of the other Debtors or their respective estates. MS&Co. (on behalf of itself and its affiliates) also reserves all rights accruing to it against Tribune Company or any of the other Debtors or any other third parties, and the submission of this Claim is not intended to be and shall not be construed as (a) an election of remedy or (b) a waiver or limitation of any rights of MS&Co. or its affiliates. In addition, MS&Co. reserves the right to supplement this Claim with additional relevant documents to the extent necessary. Furthermore, MS&Co. reserves the right to withdraw this Claim for any reason whatsoever. MS&Co. (on behalf of itself and its affiliates) and its affiliates reserve all rights and remedies against affiliates of Tribune Company or any of the other Debtors or any other third parties.

---

[1]    MS&Co.'s claim under the Indemnity described herein does not include, and is without prejudice to, all amounts owed under the Indemnity by Tribune Company to Morgan Stanley Capital Services Inc. and/or any other affiliate of MS&Co.

3

Bankruptcy Court for the District of Delaware
**In re Tribune Company, Case Number 08-13141-KJC**

This Claim shall not be deemed to be a waiver of MS&Co.'s right (i) to have final

orders in noncore matters entered only after *de novo* review by a District Court Judge, (ii) to trial

by jury in any proceeding so triable in these cases or any case, controversy, or proceeding related

to these cases (to the extent such right has not otherwise been waived), (iii) to have the District

Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or

(iv) to any other rights, claims, actions, defenses, setoffs, or recoupments to which MS&Co. is or

may be entitled, in law or in equity, all of which rights, claims, actions, defenses, setoffs, and

recoupments MS&Co. expressly reserves.

This Claim is in addition to and does not supersede any other Claim or other proof

of claim filed by MS&Co. against Tribune Company or any of the other Debtors.

Any notices sent in connection with the Claim should be addressed to MS&Co. at

the address below:

> Morgan Stanley & Co. Incorporated
> 1585 Broadway, 3rd Floor
> New York, NY 10036
> Attn:  Stephen O'Connor, Managing Director
> Attn:  General Counsel,  Miscellaneous Notices
> Fax:  212-507-4622

With a copy to:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, NY 10006
> Attn:  Thomas J. Moloney, Esq.
> Attn:  Seth Grosshandler, Esq.
> Fax: 212-225-3999

4

Bankruptcy Court for the District of Delaware
**In re Tribune Company, Case Number 08-13141-KJC**

As to the foregoing factual matters, those are true and accurate to the best of my

information and belief.

Dated this 10th day of June 2009.

_____

STEPHEN O'CONNOR
Managing Director, Morgan Stanley & Co.
Incorporated

# Exhibit A

November 30, 2008

PERSONAL AND CONFIDENTIAL

Tribune Company
435 North Michigan Avenue
Chicago, IL 60611
Attn: Chandler Bigelow, Chief Financial Officer

Dear Mr. Bigelow:

In connection with our engagement by Tribune Company ("Tribune") to advise Tribune in connection with certain restructuring matters commencing as of November 10. 2008, attached please find a copy of our standard indemnity form for your review and execution. We may sign a formal engagement letter with you at a later date setting out in greater detail the agreed terms of this engagement. We view our role in this current situation to be that of an independent contractor with duties and obligations solely to Tribune. Because we will be acting on your behalf in this capacity, it is our practice to receive indemnification.

Please be advised that Morgan Stanley does not provide accounting, tax or legal advice. Any advice or opinions Morgan Stanley provides to Tribune may not be disclosed or referred to publicly or to any third party other than to Tribune's representatives and legal, financial, accounting, and other similar advisors except in accordance with our prior written consent; provided, however, that such advice or opinions of Morgan Stanley may be disclosed by Tribune, in a form reasonably acceptable to Morgan Stanley and our counsel, in the context of a court proceeding where the deliberations of the Tribune Board of Directors are disclosed or as otherwise required by law, in which case, reasonable prior notice shall be provided to Morgan Stanley in advance of such disclosure.

Notwithstanding the foregoing, Tribune (and its employees, representatives or other agents) may disclose to any and all persons, without limitation of any kind from the commencement of discussions, the U.S. federal and state income tax treatment and tax structure of any transaction and all materials of any kind (including opinions or other tax analyses) that are provided to Tribune relating to such tax treatment and tax structure, except where confidentiality is reasonably necessary to comply with securities laws. For this purpose, "tax structure" is limited to facts relevant to the U.S. federal and state income tax treatment of any transaction and does not include information relating to the identity of the parties, their affiliates, agents or advisors.

Please note that Morgan Stanley is a global financial services firm engaged in the securities, investment management and credit services businesses. Our securities business is engaged in securities underwriting, trading and brokerage activities, foreign exchange, commodities and derivatives trading, prime brokerage, as well as providing investment banking, financing and financial advisory services. Morgan Stanley, its affiliates, directors and officers may at any time invest on a principal basis or manage funds that invest, hold long or short positions, finance positions, and may trade or otherwise structure and effect transactions, for their own account or the accounts of its customers, in debt or equity securities or loans of Tribune or any related derivative instrument.

By your execution of the attached indemnity agreement, Tribune (on its own behalf and, to the extent permitted by law, on behalf of its shareholders) hereby waives any right to trial by jury in any action, claim, suit or proceeding with respect to Morgan Stanley's role in connection herewith.

As of the date hereof, this letter and the related indemnity agreement represent the entire agreement between Tribune and Morgan Stanley with respect to this engagement and may only be amended in writing.

We look forward to working with Tribune on this very important assignment.

Very truly yours,
MORGAN STANLEY & CO. INCORPORATED

By:

Name: S. BLAKE O'DOWD

Title: MANAGING DIRECTOR

Enclosure

Morgan Stanley & Co. Incorporated
1585 Broadway
New York, New York 10036

Ladies and Gentlemen:

This letter will confirm that we have engaged Morgan Stanley & Co. Incorporated to advise us in connection with certain restructuring matters commencing on November 10, 2008, as may be further described in an engagement letter (the "Engagement Letter"). We agree to indemnify and hold harmless you and your affiliates and your and their respective officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Person") from and against any losses, claims, damages or liabilities ("Losses") related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter, and will reimburse each Indemnified Person for all expenses (including fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding (an "Action") related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party. We will not be responsible, however, for any Losses (or expenses relating thereto) that are finally judicially determined, and no longer subject to appeal or review, to have resulted from the bad faith or gross negligence of any Indemnified Person. We also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us in connection with the Engagement except for any such liability for Losses incurred by us that are finally judicially determined, and no longer subject to appeal or review, to have resulted from the bad faith or gross negligence of such Indemnified Person.

We will not, without your prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate ("Terminate") any Action in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes a release of each Indemnified Person from any liabilities arising out of such Action. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without our prior written consent, Terminate any Action referred to in the preceding paragraph.

If the indemnification provided for in the first paragraph of this agreement is judicially determined to be unavailable (other than in accordance with the terms hereof) to an Indemnified Person in respect of any Losses referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, we shall contribute to the amount paid or payable by such Indemnified Person as a result of such Losses (and expenses relating thereto) (i) in such proportion as is appropriate to reflect the relative benefits to you, on the one hand, and us, on the other hand, of the Engagement or (ii) if the allocation provided by clause (i) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For the purposes of this agreement, the relative benefits to us and you of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us or our stockholders, as the case may be, in the transaction or transactions that are the subject of the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to you under the Engagement Letter.

*On our own behalf and, to the extent permitted by law, on behalf of our shareholders, we and Morgan Stanley waive any right to trial by jury in any Action against any Indemnified Person. The provisions of this agreement will remain operative regardless of any modification, completion or termination of the Engagement or the Engagement Letter. This agreement and the Engagement Letter shall be governed by and construed in accordance with the internal laws of the State of New York.*

*Very truly yours,*

TRIBUNE COMPANY

By _____

Date:   November 30, 2008

*Accepted:*

MORGAN STANLEY & CO. INCORPORATED

By _____

Date:   NOVEMBER 30, 2008

# Exhibit B

Draft of November 17, 2008

MORGAN STANLEY & CO. INCORPORATED
1585 Broadway
New York, NY 10036

November [17], 2008

**PERSONAL AND CONFIDENTIAL**

Tribune Company
435 North Michigan Avenue
Chicago, IL 60611
Attention:  Chandler Bigelow
Chief Financial Officer

Dear Sir:

This letter (the "Agreement") will confirm the terms and conditions of the arrangement under which Morgan Stanley & Co. Incorporated ("Morgan Stanley") has been engaged as the exclusive financial advisor by Tribune Company, collectively with its direct and indirect subsidiaries, including any entity formed for the purposes set forth herein (taken together, the "Company") since November 10, 2008 in connection with any Transaction or series of Transactions (as defined below).

Section 1      Services to be Rendered.  In connection with the formulation, analysis and implementation of various options for a restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to a Transaction (as defined below) or any series or combinations of Transactions, Morgan Stanley, acting through itself or one of its affiliates, will perform such services as set forth below in connection with the exploration and execution of such Transactions.  [The Company shall also retain Morgan Stanley on a non-exclusive basis in connection with any potential sale or disposition of the Company's assets or businesses (a "Disposition Transaction") outside the context of any Transaction (as defined below); provided, however that, after the commencement of any Chapter 11 proceeding, the Company shall retain Morgan Stanley exclusively in connection with any Disposition Transaction done in connection with, or outside of, any Transaction.]

Morgan Stanley agrees it will perform the services below in connection with any Transaction or Transactions:

a) Review and analysis of the Company's business, operations, liquidity, financial condition and financial projections;

Page 1 of 15

Draft of November 17, 2008

b) Evaluation of the Company's potential debt capacity in light of its projected cash flows;

c) Assisting in the determination of a capital structure for the Company;

d) Analysis of industry trends and the Company's position in its industry;

e) Review of comparable company and transaction information;

f) Assisting in the determination of a range of values for the Company on a going concern basis;

g) Advising the Company on tactics and strategies for negotiating with its stakeholders;

h) Rendering financial advice to the Company and participating in meetings or negotiations with the stakeholders and/or rating agencies or other appropriate parties in connection with any Transaction;

i) Advising and assisting the Company in evaluating any potential new debt or equity financing (a "Financing Transaction"), including Debtor-in-Possession Financing (a "DIP Financing"), if required;

j) Subject to mutual agreement of the Company and Morgan Stanley, advising and assisting the Company with respect to a Disposition Transaction;

k) Attending meetings of the Company's Board of Directors and its committees with respect to matters on which Morgan Stanley has been engaged to advise the Company;

l) Providing testimony, as necessary, with respect to matters on which Morgan Stanley has been engaged to advise the Company in a Bankruptcy Case as defined below; and

m) Rendering such other financial advisory and investment banking services as may be agreed upon by the Company and Morgan Stanley in connection with the foregoing.

As used herein, the term "Transaction" shall mean, collectively, whether pursuant to solicitation of acceptances of a plan of reorganization (a "Prepackaged Plan") in contemplation of any proceeding or proceedings by the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code"), or otherwise: (i) any transaction or series of transactions that makes or proposes to make material amendments to or other material changes in any of the

Company's outstanding indebtedness, trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, pension liabilities, retiree medical liabilities and other liabilities, if any, including any new financing (including DIP Financing), exit financing in a Chapter 11 proceeding, refinancing, waiver, forbearance or similar transaction, tender offer, exchange or repurchase of the Company's indebtedness, or material repayment of outstanding funded indebtedness in conjunction with any of the foregoing, or any other Financing Transaction; (ii) (A) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination, Disposition Transaction or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or (B) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), whether in a single transaction, multiple transactions or a series of transactions, of (1) other than in the ordinary course of business, any material portion of the assets or operations of the Company or (2) any outstanding or newly-issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company; (iii) any restructuring, reorganization and/or refinancings; or (iv) any transaction similar to any of the foregoing.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Morgan Stanley is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction. Morgan Stanley shall not have any obligation or responsibility to provide legal, accounting, tax, audit, "crisis management" or business consultant advice or services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

**Section 2        Information Provided by the Company**. The Company will cooperate with Morgan Stanley and furnish to, or cause to be furnished to, Morgan Stanley any and all information as Morgan Stanley deems appropriate to enable Morgan Stanley to render services hereunder (all such information being the "Information"). Morgan Stanley will rely on the accuracy and completeness, without verifying it independently, the Information or any other information it receives or reviews in connection with this engagement. Morgan Stanley will not independently evaluate or appraise any assets or liabilities that may be involved in this engagement. Morgan Stanley will assume that any forecasted financial information reflects the best available estimates of future financial performance. The Company represents and warrants that the information (other than projections) to be furnished by or on behalf of the Company, when delivered, to the best of its knowledge will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made. The Company further represents and warrants that any projections provided by or on behalf of the Company

will have been prepared in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable. The Company will promptly notify Morgan Stanley if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Morgan Stanley.

In order to coordinate our efforts on behalf of the Company during the period of our engagement, the Company will promptly inform Morgan Stanley of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries as have occurred during the first six month period prior to the date of this Agreement and throughout the term of this Agreement. In the event that Morgan Stanley receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

Section 3      Fees of Morgan Stanley. As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Morgan Stanley (via wire transfer or other mutually acceptable means) the following fees in cash:

a) Commencing as of November 10, 2008, and whether or not a Transaction is proposed or consummated, a cash advisory fee (the "Monthly Fee") of $200,000 per month. The initial Monthly Fee shall be payable by the Company upon the execution of this Agreement by each of the parties hereto, and shall be pro rated based on the date that Morgan Stanley's services commenced (November 10, 2008) and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each month until consummation of a Transaction or upon mutual agreement between Morgan Stanley and the Company. All Monthly Fee amounts paid shall be credited against the Completion Fee.

b) An amendment fee (the "Amendment Fee") of $2,000,000, payable in cash upon the substantial consummation of a Transaction that proposes to make material amendments to or other material changes in any of the Company's outstanding indebtedness, trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, pension liabilities, retiree medical liabilities and other liabilities, if any, including any new financing (including DIP Financing), exit financing in a Chapter 11 proceeding, refinancing, waiver, forbearance or similar transaction, tender offer, exchange or repurchase of the Company's indebtedness, or material repayment of outstanding funded indebtedness in conjunction with any of the foregoing. Any Amendment Fee amounts paid shall be credited against the Completion Fee.

c) A fee (the "Completion Fee") of $20,000,000, payable in cash upon the substantial consummation of any Transaction (other than an amendment covered by the foregoing paragraph or any financing for which a Financing Fee is payable or any Disposition Transaction for which a Disposition Transaction Fee is payable); provided, however, that in the event that the Transaction is predicated

upon a Prepackaged Plan on which acceptances are solicited in reliance, in whole or in part, on the exemption from registration provided for in Section 3(a)(9) of the Securities Act of 1933, as amended, then (i) the Completion Fee (A) shall be deemed earned in full upon the expiration of the period during which such consents or acceptances may be submitted, regardless of whether the consents or acceptances received are sufficient for such plan to be confirmed pursuant to the Bankruptcy Code and (B) shall be payable upon the earlier of (1) one hundred eighty (180) days after the expiration of such period and (2) the confirmation of such Transaction by the Bankruptcy Court and (ii) Morgan Stanley shall no longer be under any obligation to perform the services set forth in Section 1 hereof subsequent to the commencement of the Company's Bankruptcy Case.

d) [For each Disposition Transaction other than any for which a Completion Fee is payable, a disposition transaction fee (a "Disposition Transaction Fee") payable in cash directly out of the gross proceeds of each such Disposition Transaction calculated based on the scale set forth in Schedule I. One half of any Disposition Transaction Fee amounts paid shall be credited against the Completion Fee.]

e) [A fee, payable upon consummation of a Financing Transaction other than any for which a Completion Fee is payable (a "Financing Fee"), equal to the amount set forth in Schedule II. One half of any Financing Fees paid shall be credited against the Completion Fee for any financing other than a DIP Financing. Morgan Stanley further agrees that any Financing Fee paid with respect to any DIP Financing raised shall be credited against the Completion Fee.]

f) For the avoidance of any doubt, more than one fee may be payable pursuant to clauses (b) THROUGH (e).

g) To the extent the Company requests Morgan Stanley to perform additional services not contemplated by this Agreement, such additional fees as shall be mutually agreed upon by Morgan Stanley and the Company, in writing, in advance.

The Company and Morgan Stanley acknowledge and agree that (i) the hours worked, (ii) the results achieved and (iii) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Morgan Stanley have taken such factors into account in setting the fees hereunder.

Section 4      Expenses.  In addition to any of the foregoing fees for professional services, Morgan Stanley will separately bill its expenses from time to time.  Generally these expenses include travel costs, document production and other expenses of this type, and will also include the fees of Morgan Stanley's outside counsel, and other professional advisors should they be retained.  In the event the Company becomes a debtor and/or a debtor-in-possession in a Chapter 11 proceeding, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse

Morgan Stanley for such expenses under this Section 4 upon presentation of an invoice or other similar documentation with reasonable detail. The Company shall pay Morgan Stanley an evergreen retainer of $100,000 to be applied by Morgan Stanley to any due but unpaid fees or expenses at any time (subject to prior Bankruptcy Court approval, if required).

Section 5    Retention of Morgan Stanley in Chapter 11 Proceedings. In the event of commencement of Chapter 11 proceedings, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Morgan Stanley's retention by the Company under the terms of this Agreement, nunc pro tunc to the date of this Agreement, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use its best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Morgan Stanley and its counsel with a draft of such application and any proposed order authorizing Morgan Stanley's retention sufficiently in advance of the filing of such application and proposed order to enable Morgan Stanley and its counsel to review and comment thereon. Morgan Stanley shall have no obligation to provide any services under this Agreement unless Morgan Stanley's retention under the terms of this Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Morgan Stanley in all respects.

Morgan Stanley acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 5, payment of Morgan Stanley's fees and expenses shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Morgan Stanley's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications. In the event that Morgan Stanley's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Morgan Stanley hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any. In so agreeing to seek Morgan Stanley's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Morgan Stanley's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Morgan Stanley's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fee and the Completion Fee (as each is defined

Draft of November 17, 2008

above) are reasonable regardless of the number of hours to be expended by Morgan Stanley's professionals in performance of the services to be provided hereunder.

Section 6    Indemnity.    It is Morgan Stanley's practice to receive indemnification. A copy of the indemnification agreement between Morgan Stanley and the Company ("Annex A") is attached to this Agreement.

Section 7    Termination.    Morgan Stanley's services hereunder may be terminated with or without cause by the Company or by Morgan Stanley at any time upon express written notice and without liability or continuing obligation to the Company or to Morgan Stanley (except for any compensation earned and expenses incurred by Morgan Stanley to the date of termination and except, in the case of termination by the Company, for Morgan Stanley's right to fees pursuant to this letter for any Transactions effected within eighteen months of such termination) and provided that Sections 3 through 4 and 6 through 8 hereof, inclusive, including the provisions set forth in Annex A, will remain operative regardless of any such termination.

Section 8    Miscellaneous.

(a) Administrative Expense Priority.  In the event of the commencement of Chapter 11 proceedings in order to pursue a Transaction, the Company agrees that Morgan Stanley's post-petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in such Chapter 11 proceedings pursuant to one or more financing orders entered by the Bankruptcy Court.

(b) Survival, Successors & Assigns.  Sections 3 through 4 and 6 through 8 hereof, inclusive, including the provisions set forth in Annex A hereto, shall survive the termination of this Agreement.  The benefits of this Agreement and the indemnification and other obligations of the Company to Morgan Stanley and certain related persons contained in Annex A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Annex A by the parties hereto and thereto shall be binding upon their respective successors and assigns.

(c) Benefit of Agreement; No Reliance by Third Parties.  The advice (oral or written) rendered by Morgan Stanley pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person or used for any other purpose without the prior written consent of Morgan Stanley.

(d) Nature of Relationship. The relationship of Morgan Stanley to the Company hereunder shall be that of an independent contractor and only as set forth in this Agreement. Morgan Stanley shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Morgan Stanley have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Morgan Stanley will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including security holders, creditors or employees of the Company. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Morgan Stanley or any of its affiliates to underwrite, place or purchase any securities or otherwise provide any financing. Any such commitment shall only be set forth in a separate written agreement between the parties.

(e) Required Information. Since Federal law requires Morgan Stanley to obtain, verify, and record information that identifies any entity not listed on the New York Stock Exchange, the American Stock Exchange or whose common stock or equity interests have not been designated as a National Market System security listed on the NASDAQ stock market that enters into a formal relationship with it, the Company agrees to provide Morgan Stanley with its tax or other similar identification number and/or other identifying documents, as Morgan Stanley may request, to enable it to comply with applicable law. For your information, Morgan Stanley may also screen the Company against various databases to verify its identity.

(f) Public Announcements. The Company acknowledges that Morgan Stanley may at its option and expense, after announcement of any Transaction, place announcements and advertisements or otherwise publicize any Transaction in such financial and other newspapers and journals as it may choose, stating that Morgan Stanley acted as financial advisor to the Company in connection with such Transaction. The Company further consents to Morgan Stanley's public use or display of the Company's logo, symbol or trademark as part of Morgan Stanley's general marketing or promotional activities, provided such use or display is in the nature of a public record or tombstone announcement in relation to any Transaction.

(g) Disclosures. Any advice or opinions Morgan Stanley provides for this assignment may not be disclosed or referred to publicly or to any third party except in accordance with its prior written consent. Notwithstanding anything herein to the contrary, Morgan Stanley and the Company agree that the Company (and its employees, representatives or other agents) may disclose to any and all persons, without limitation of any kind from the commencement of discussions, the U.S. federal and state income tax treatment and tax structure of any Transaction and all materials of any kind (including opinions or other tax analyses) that are provided

to the Company relating to such tax treatment and tax structure, except where confidentiality is reasonably necessary to comply with securities laws. For this purpose, "tax structure" is limited to facts relevant to the U.S. federal and state income tax treatment of any Transaction and does not include information relating to the identity of the parties, their affiliates, agents or advisors.

(h) CHOICE OF LAW; JURISDICTION. THIS AGREEMENT (INCLUDING ANNEX A) HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN ANY OF (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT ANY SERVICE OF PROCESS, SUMMONS, NOTICE OR DOCUMENT BY REGISTERED MAIL ADDRESSED TO SUCH PARTY SHALL BE EFFECTIVE SERVICE OF PROCESS OF ANY SUIT, ACTION OR PROCEEDING RELATING TO ANY SUCH DISPUTE.

(i) Waiver of Jury Trial. Each of the parties (on its own behalf and, to the extent permitted by law, on behalf of its shareholders) hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement (including Annex A) or any Transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented expressly or otherwise that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been

induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(j) Disclosures. Please note that Morgan Stanley is a global financial services firm engaged in the securities, investment management and individual wealth management businesses.    Morgan Stanley is also engaged in securities underwriting, trading and brokerage activities, foreign exchange, commodities and derivatives trading, prime brokerage, as well as providing investment banking, financing and financial advisory services. Morgan Stanley, its affiliates, directors and officers may at any time hold long or short positions, finance positions, and may trade or otherwise structure and effect transactions, for their own account or the accounts of its customers, in debt or equity securities or loans of the Company, or any other company, or any currency or commodity, that may be involved in any Transaction, or any related derivative instrument.

In the past, Morgan Stanley and its affiliates have provided financial advisory and financing services for and received compensation from the Company, may have provided such services to and received compensation from other parties that may become involved in any Transaction and may seek in the future to provide financial services to and receive compensation from such parties in matters not related to the Transaction.

(k) Entire Agreement.    This Agreement embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(l) Authority. Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Annex A and the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Morgan Stanley will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by, or is reasonably believed by Morgan Stanley to be a director, officer, employee or authorized agent.

(m)Counterparts. This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by

Draft of November 17, 2008

facsimile or electronic "pdf" or similar file shall be effective as delivery of a manually executed counterpart to this Agreement.

(n) Affiliates. Morgan Stanley reserves the right to employ the services of one or more of its affiliates in providing services contemplated by this Agreement and to allocate, in whole or in part, to such affiliates certain fees payable to us in such manner as we and such affiliates may agree in our sole discretion. The Company acknowledges that Morgan Stanley may share with any of its affiliates, and such affiliates may share with Morgan Stanley, any information related to the Transactions.

If the foregoing correctly sets forth the understanding and agreement between Morgan Stanley and the Company, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

MORGAN STANLEY & CO. INCORPORATED

By:_____

J. Blake O'Dowd
Managing Director

Accepted and Agreed to as of
the date first written above:

TRIBUNE COMPANY

By:_____

Chandler Bigelow
Chief Financial Officer

Draft of November 17, 2008

ANNEX A

*Ladies and Gentlemen:*

*This letter will confirm that we have engaged Morgan Stanley & Co. Incorporated to advise us in connection with the matters referred to in our letter agreement dated November [17], 2008 (the "Engagement Letter") commencing on November 10, 2008. We agree to indemnify and hold harmless you and your affiliates and your and their respective officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Person") from and against any losses, claims, damages or liabilities ("Losses") related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter, and will reimburse each Indemnified Person for all expenses (including fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding (an "Action") related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party. We will not be responsible, however, for any Losses (or expenses relating thereto) that are finally judicially determined, and no longer subject to appeal or review, to have resulted from the bad faith or gross negligence of any Indemnified Person. We also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us in connection with the Engagement except for any such liability for Losses incurred by us that are finally judicially determined, and no longer subject to appeal or review, to have resulted from the bad faith or gross negligence of such Indemnified Person.*

*We will not, without your prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate ("Terminate") any Action in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes a release of each Indemnified Person from any liabilities arising out of such Action. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without our prior written consent, Terminate any Action referred to in the preceding paragraph.*

*If the indemnification provided for in the first paragraph of this agreement is judicially determined to be unavailable (other than in accordance with the terms hereof) to an Indemnified Person in respect of any Losses referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, we shall contribute to the amount paid or payable by such Indemnified Person as a result of such Losses (and expenses relating thereto) (i) in such proportion as is appropriate to reflect the relative benefits to you, on the one hand, and us, on the other hand, of the Engagement or (ii) if the allocation provided by clause (i) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For the purposes of this agreement, the relative benefits to us and you of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us or our stockholders, as the case may be, in the transaction or transactions that are the subject of the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to you under the Engagement Letter.*

*On our own behalf and, to the extent permitted by law, on behalf of our shareholders, we and Morgan Stanley waive any right to trial by jury in any Action against any Indemnified Person. The provisions of this agreement will remain operative regardless of any modification, completion or termination of the*

*Engagement or the Engagement Letter. This agreement and the Engagement Letter shall be governed by and construed in accordance with the internal laws of the State of New York..*

*Very truly yours,*

TRIBUNE COMPANY

*By* _____

*Accepted:*

MORGAN STANLEY & CO. INCORPORATED

*By* _____

*Date:*

Draft of November 17, 2008

**Schedule I**

**Disposition Transaction Fee**

The amount of any Disposition Transaction Fee shall be equal to the Aggregate Value of the Disposition Transaction multiplied by the Applicable Fee Percentage, determined in accordance with the following schedule:

| Aggregate Value ($) | Applicable Fee Percentage (%) | Illustrative Disposition Transaction Fee ($) |
|---|---|---|
| $500,000,000 or less | 1.50% | $7,500,000 |
| $1,000,000,000 | 1.20% | $12,000,000 |
| $2,000,000,000 | 0.65% | $13,000,000 |
| $3,000,000,000 or greater | 0.55% | $16,500,000 |

For a Disposition Transaction in which the Aggregate Value is between two values shown in the above schedule, the Applicable Fee Percentage for the Disposition Transaction shall be determined by linear interpolation from the two nearest Applicable Fee Percentages.

In no event shall any Disposition Transaction Fee be less than $2,000,000.

The "Aggregate Value" of any Disposition Transaction shall be the value of the consideration paid per share of common stock times the total number of common shares (including the number of shares which would be outstanding upon exercise of any in-the-money securities, including among others, options, convertible debt, convertible preferred stock or warrants) of the Company, or the relevant business of the Company (or in the case of a sale or purchase of assets, the consideration paid for such assets), plus the value of any debt, capital lease, and preferred stock obligations or other liabilities of the Company, or the relevant business of the Company, reflected on the entity's consolidated balance sheet, adjusted proportionally in the event of a sale of less than all the shares of such Company or business. In calculating any Disposition Transaction's Aggregate Value, to the extent that the consideration to be paid consists of the common stock of the buyer, then the value of such common stock to be used to calculate Aggregate Value shall be based on the volume weighted average of the closing price of such common stock over the ten trading day period up to and including the trading day preceding the day of announcement of the Disposition Transaction. Any amounts to be paid by the buyer contingent upon future events shall be estimated for purposes of the Disposition Transaction Fee calculation at an expected value mutually agreeable to you and to us at the time of closing, except that amounts held in escrow shall be deemed paid at closing.

Draft of November 17, 2008

## Schedule II

### Financing Fee

The following table outlines the Financing Fees:

### Financing Fee Schedule

| Funds Raised | Fee % |
|---|---|
| Senior Secured Debt | 1.00% |
| Senior and Subordinated Debt | 2.75% |
| Convertible Debt | 3.75% |
| Convertible Preferred Stock | 5.00% |
| Common Stock | 6.00% |

ORIGIN ID: FIDA (212) 225-3573
MAILROOM
CLEARY GOTTLIEB STEEN HAMILTON LLP
1 LIBERTY PLAZA
38TH FL
NEW YORK, NY 100061404
UNITED STATES US

Ship Date: 11JUN09
ActWgt: 1.0 LB MAN
System: 0743043/CAFE2361
Account: S 010094305

TO TRIBUNE CO CLAIMS PROCESSING CENTER
   EPIQ BANKRUPTCY SOLUTIONS,LLC
   757 THIRD AVENUE  3RD FLOOR
   (RE :MS & CO.)
   NEW YORK CITY, NY 10017

(212) 225-2000

FedEx
Express

RECEIVED
JUN 1 2 2009

E

Ref: 30296-42423029
Dept: 30296-424

Delivery Address
Barcode

BILL SENDER

PRIORITY OVERNIGHT

TRK#    9421 9666 4854    Form
                          0201

10017    — NY — US    ZB OGSA

FRI
Deliver By:
12JUN09
EWR    A1

For FedEx Express® Shipments Only

Time.

Align top of FedEx Express Shipping Label here.

## **EXHIBIT 2**

**Proof of Claim No. 7162**

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF DELAWARE
Tribune Company Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5069
New York, NY 10150-5069

# PROOF OF CLAIM

Filed: USBC - District of Delaware
Tribune Company, Et Al.
08-13141 (KJC)          0000007162

| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
|---|---|
| Tribune Company | 08-13141 (KJC) |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

Morgan Stanley & Co. Incorporated
1221 Avenue of the Americas, 35th Floor
New York, NY 10020
Attn: Matthew Morningstar, Executive Director
Fax: 212-507-4622

with a copy to:
Weil, Gotshal & Manges LLP
767 Fifth Avenue, 27th Floor
New York, NY 10153
Attn: Michael Walsh, Esq.
Fax: 212-310-8007

Telephone number: 212-761-4000   Email Address: matthew.morningstar@morganstanley.com

☒ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** ___5034___
(*If known*)

Filed on: ___June 12, 2009___

**FILED / RECEIVED**

JAN 3 0 2013

EPIQ BANKRUPTCY SOLUTIONS, LLC

Name and address where payment should be sent (if different from above)

Telephone number:          Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed: $** ___See Attachment___

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete Item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

☐ Check this box if claim is for a claim related to goods delivered during the twenty (20) days prior to December 8, 2008 (the "Petition Date"), pursuant to 11 U.S.C. §503(b)(9). Please indicate amount entitled to 503(b)(9) $_____.

2. **Basis for Claim:** ___See Attachment___
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:    ☐ Real Estate    ☐ Motor Vehicle    ☒ Other
Describe: ___See Attachment___

Value of Property: $_____ Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any:

$_____ Basis for perfection: _____

**Amount of Secured Claim: $**_____ **Amount Unsecured: $**_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**FOR COURT USE ONLY**

Date:

1/29/13

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*John Pearce, Managing Director*

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

US_ACTIVE:\44174963\1\64058.0108

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
Fill in the name of the debtor in the bankruptcy case and the bankruptcy case number. The full list of debtors is provided under the general information section on the Claims Agent's website http://chapter11.epiqsystems.com/tribune.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim. Also, check the appropriate box if all or a portion of your claim qualifies as an Administrative Expense priority under 11 U.S.C. § 503(b)(9) and provide the amount that is related to such priority.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor..

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at one of the following addresses:

*If by first-class mail:*

**Tribune Company Claims Processing Center**
**c/o Epiq Bankruptcy Solutions, LLC**
**FDR Station, P.O. Box 5069**
**New York, NY 10150-5069**

*If by hand delivery or overnight mail:*

**Epiq Bankruptcy Solutions, LLC**
**Attn: Tribune Company Claims Processing Center**
**757 Third Avenue, 3rd Floor**
**New York, NY 10017**

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the Claims Agent's website:
(http://chapter11.epiqsystems.com/tribune) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

-------------------------------------------------------------x
                                      :     **Chapter 11**

*In re*                               :

                                        :     **Case No. 08-13141 (KJC)**

**TRIBUNE COMPANY,** *et al.*,        :

                                        :     **(Jointly Administered)**

            **Debtors.**            :

                                        :
-------------------------------------------------------------x

## ATTACHMENT TO AMENDMENT TO PROOF OF CLAIM 5034 OF MORGAN STANLEY & CO. INCORPORATED

Morgan Stanley & Co. Incorporated (*"**Morgan Stanley**"*) hereby submits this amendment, dated January 29, 2013, to Proof of Claim 5034, dated June 10, 2009, and filed on June 12, 2009, in the above-captioned chapter 11 case (the *"**Original Proof of Claim**"*).  The Original Proof of Claim included claims against the Tribune Company (*"**Tribune Company**"*) under that certain indemnity agreement, dated November 30, 2008, by and between Tribune Company and Morgan Stanley (the "***Indemnity***").  In addition to the claims set forth in the Original Proof of Claim, Morgan Stanley holds claims against Tribune Company to the extent the Indemnity is an executory contract that Tribune Company has rejected.

### Background

1.      On or about November 30, 2008, Tribune Company and Morgan Stanley entered into the Indemnity, under which Tribune Company agreed to indemnify Morgan Stanley and its affiliates against certain losses and claims, as described below.  A copy of the Indemnity is attached as Exhibit A to the Original Proof of Claim.

2.      On December 8, 2008, Tribune Company and certain of its affiliates (collectively, the "***Debtors***") commenced voluntary cases under chapter 11 of title 11 of the United States

Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").  On July 23, 2012, the Bankruptcy Court entered the Order [D.I. 12074] confirming the *Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.* (the "**Debtors' Plan**") [D.I. 12072].

3.      On July 20, 2012, the Debtors filed the Exhibits to the Debtors' Plan, including Exhibit 6.3 – Rejected Executory Contracts and Unexpired Leases.  Exhibit 6.3 includes "[a]ny and all executory contracts between any Debtor and another party concerning the . . . . possible indemnification by a Debtor of a professional . . . ."

4.      Pursuant to the Debtors' Plan, if an executory contract is listed on Exhibit 6.3, any proof of claim based upon the rejection of such contract must be filed within thirty (30) days after service of the Notice of Effective Date (*i.e.*, on January 30, 2013).  *See* Debtors' Plan §§ 6.3-6.4; Notice of Effective Date ¶ 5 [D.I. 12939].  Accordingly, Morgan Stanley submits the following amendment to the Original Proof of Claim for damages to the extent the Indemnity is an executory contract that Tribune Company has rejected.

## The Indemnity and the Original Proof of Claim

5.      Under the Indemnity, Tribune Company agreed to indemnify and hold harmless Morgan Stanley and its affiliates and their respective officers, directors, employees and agents and other persons controlling Morgan Stanley or its affiliates from and against any losses, claims, damages, or liabilities related to, arising out of or in connection with Morgan Stanley's anticipated engagement by Tribune Company in connection with certain restructuring matters (the "**Engagement**") under a certain proposed Engagement Letter (the "**Engagement Letter**"),

2

including reimbursement of legal fees and expenses and other expenses incurred in connection with investigating, preparing, pursuing, or defending any action, claim, suit, investigation, or proceeding related to, arising out of or in connection with the Engagement. The Engagement Letter was never fully executed by the parties thereto. A draft of the Engagement Letter circulated by Morgan Stanley to Tribune Company was attached as Exhibit B to the Original Proof of Claim.

6.    On or around June 10, 2009, Morgan Stanley filed the Original Proof of Claim asserting, *inter alia*, a claim for all legal fees and costs and other expenses incurred by Morgan Stanley to which Morgan Stanley is entitled to reimbursement by Tribune Company under the Indemnity. The Original Proof of Claim seeks the gross amount of such reimbursable fees and expenses under the Indemnity as, and to the extent that, such fees and expenses are incurred by Morgan Stanley. The Original Proof of Claim was filed prior to the rejection by the Debtors of executory contracts concerning the indemnification by a Debtor of a professional and, accordingly, does not explicitly assert damages arising from the rejection of the Indemnity.

## Rejection Damages Claim Asserted by Morgan Stanley

7.    Although the Indemnity is not expressly listed as a contract to be rejected, the general language included in Exhibit 6.3 to the Plan, quoted above, which results in the rejection of executory agreements under which indemnity claims by professionals are asserted, appears to apply to the Indemnity. Accordingly, Morgan Stanley hereby amends the Original Proof of Claim to include a claim for any and all damages resulting from the rejection of the Indemnity.

8.    In particular, Morgan Stanley asserts a claim for all and any losses, claims, damages, or liabilities related to, arising out of, or in connection with rejection of the Indemnity, including reimbursement of reasonable legal fees and expenses and other reasonable expenses

3

incurred in connection with investigating, preparing, pursuing, or defending any action, claim, suit, investigation, or proceeding related to, arising out of, or in connection with a rejection of the Indemnity, each as incurred or to be incurred in the future.   For the avoidance of doubt, this claim includes all losses, claims, damages, or liabilities, including fees and expenses that may be incurred by Morgan Stanley in any future litigation, inquiry, or investigation regarding the Indemnity itself and any damages resulting from the rejection thereof.  Notwithstanding the foregoing, Morgan Stanley continues to assert claims against Tribune Company arising under and pursuant to the Indemnity all as set forth in the Original Proof of Claim.

9.      Morgan Stanley reserves the right to amend, clarify, modify, or supplement this amendment to the Original Proof of Claim to assert additional claims (including, without limitation, administrative expense claims) and/or additional grounds for its claims against Tribune Company or any of the other Debtors or their respective estates.  Morgan Stanley (on behalf of itself and its affiliates) also reserves all rights accruing to it against Tribune Company or any of the other Debtors or any other third parties, and the submission of this amendment to the Original Proof of Claim is not intended to be and shall not be construed as (a) an election of remedy or (b) a waiver or limitation of any rights of Morgan Stanley or its affiliates.  In addition, Morgan Stanley reserves the right to supplement this amendment to the Original Proof of Claim with additional relevant documents to the extent necessary.  Furthermore, Morgan Stanley reserves the right to withdraw this amendment to the Original Proof of Claim for any reason whatsoever and Morgan Stanley (on behalf of itself and its affiliates) reserves all rights and remedies against affiliates of Tribune Company or any of the other Debtors or any other third parties.

4

10.     This amendment to the Original Proof of Claim shall not be deemed to be a waiver of Morgan Stanley's right (i) to have final orders in noncore matters entered only after *de novo* review by a District Court Judge, (ii) to trial by jury in any proceeding so triable in these cases or any case, controversy, or proceeding related to these cases (to the extent such right has not otherwise been waived), (iii) to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or (iv) to any other rights, claims, actions, defenses, setoffs, or recoupments to which Morgan Stanley is or may be entitled, in law or in equity, all of which rights, claims, actions, defenses, setoffs, and recoupments Morgan Stanley expressly reserves.  As noted above, this amendment to the Original Proof of Claim is in addition to and does not supersede any other claim or other proof of claim filed by Morgan Stanley against Tribune Company or any of the other Debtors.

11.     In addition to the foregoing, Morgan Stanley expressly reserves all other rights, remedies, interests, priorities, protections, claims, counterclaims, defenses, setoffs, and recoupments, including, without limitation, claims against the Debtors under section 553 of the Bankruptcy Code, to the fullest extent possible under applicable bankruptcy and nonbankruptcy law.

12.     This amendment to the Original Proof of Claim does not amend, replace, or supersede Claim 5027 and Claim 6708 already filed by Morgan Stanley and its affiliates.

13.     Any notices sent in connection with the Claim should be addressed to Morgan Stanley at the address below:

5

Morgan Stanley & Co. Incorporated
1221 Avenue of the Americas, 35th Floor
New York, NY 10020
Attn: Matthew Morningstar, Executive Director
Fax: 212-507-4622

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue, 27th Floor
New York, NY 10153
Attn: Michael Walsh, Esq.
Fax: 212-310-8007

6

# Weil, Gotshal & Manges LLP

BY HAND DELIVERY

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8652 tel
+1 212 310 8007 fax

**Abigail Zigman**

January 30, 2013

Tribune Company Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, Third Floor
New York, NY 10017

Re: *Tribune Company, et al.*

Dear Sir or Madam:

Enclosed please find the following documents:  (i) Morgan Stanley & Co. Incorporated's amendment, dated January 29, 2013, to Proof of Claim 5034 and (ii) Morgan Stanley Capital Services Inc.'s amendment, dated January 29, 2013, to Proof of Claim 5027.  The enclosed proofs of claim and attachments are to be filed in the chapter 11 case of Tribune Company, case number 08-13141.

If you have any questions concerning the enclosed documents please do not hesitate to contact me.

Best regards,

Abigail Zigman

Enclosures

H
A
N
D

D
E
L
I
V
E
R
Y



**FILED / RECEIVED**

JAN 3 0 2013

EPIQ BANKRUPTCY SOLUTIONS, LLC

12:07

---
RECEIVED BY:

---
DATE

---
TIME

## **EXHIBIT 3**

**Proof of Claim No. 6708**

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE<br>Tribune Company Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5069<br>New York, NY 10150-5069 | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor Against Which Claim is Held<br>**Tribune Company** | Case No. of Debtor<br>**08-13141 (KJC)** | Filed: USBC - District of Delaware<br>Tribune Company, Et Al.<br>08-13141 (KJC)          0000006708 |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

| Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)<br><br>Morgan Stanley & Co. Incorporated<br>1221 Avenue of the Americas, 35th Floor<br>New York, NY    10020<br>Attn: Matthew Morningstar<br><br>Telephone number: (212) 761-4000    Email Address: | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:**<br>_____<br>*(If known)*<br><br>Filed on: _____ |
|---|---|
| Name and address where payment should be sent (if different from above)<br><br><br>Telephone number:          Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1.   Amount of Claim as of Date Case Filed:** $ <u>See attachment</u><br><br>If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete Item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.<br><br>☐ Check this box if claim is for a claim related to goods delivered during the twenty (20) days prior to December 8, 2008 (the "Petition Date"), pursuant to 11 U.S.C. §503(b)(9). Please indicate amount entitled to 503(b)(9) $<br><br>**2.   Basis for Claim:** <u>See attachment</u><br>(See instruction #2 on reverse side.)<br><br>**3.   Last four digits of any number by which creditor identifies debtor:** _____<br>**3a. Debtor may have scheduled account as:** _____<br>(See instruction #3a on reverse side.)<br><br>**4.   Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☒ Other<br>Describe: <u>See attachment</u><br><br>Value of Property: $_____   Annual Interest Rate _____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim, if any:<br><br>$_____   Basis for perfection: _____<br><br>Amount of Secured Claim: $_____   Amount Unsecured: $_____ | **5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).  If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim:<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br><br>☐ Wages, salaries or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).<br><br>☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).<br><br>**Amount entitled to priority:**<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment* |

| | |
|---|---|
| **6.   Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br><br>**7.   Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br>**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**<br>If the documents are not available, please explain: | **FOR COURT USE ONLY** |

| Date: 3/2/11 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
-----------------------------------------------x
                                               :
In re                                          :
                                               :
TRIBUNE COMPANY, et al.,                       :
                                               :
          Debtors.                             :
                                               :
                                               :
-----------------------------------------------x
```

**Chapter 11**

**Case No. 08-13141 (KJC)**

**(Jointly Administered)**

## ATTACHMENT TO PROOF OF CLAIM
## OF MORGAN STANLEY & CO. INCORPORATED

Morgan Stanley & Co. Incorporated ("***Morgan Stanley***"), by and through its undersigned counsel, Weil, Gotshal & Manges LLP, hereby submits this proof of claim (the "***Claim***").  As set forth more fully below, Morgan Stanley holds claims against Tribune Company ("***Tribune Company***") arising from and relating to the rejection of that certain Engagement Letter, dated October 17, 2006, by and between the Tribune Company and Morgan Stanley (the "***Engagement Letter***").

### Background

1.      On December 8, 2008, Tribune Company and certain of its affiliates (collectively, the "***Debtors***") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Delaware.  On December 10, 2010, the Debtors filed the *First Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.* [D.I. 7136] (as amended, the "***Debtors' Plan***").

2.      On January 31, 2011, the Debtors' filed the Exhibits to the Debtors' Plan, including Exhibit 6.3 – Rejected Executory Contracts and Unexpired Leases.  Exhibit 6.3 lists the Engagement Letter.

3.      Pursuant to the Debtors' Plan, if an executory contract is listed on Exhibit 6.3, any proof of claim based upon the rejection of such contract must be filed within thirty (30) days after service of a notice that the executory contract has been rejected.  *See* Debtors' Plan §§ 6.3-6.4.  Accordingly, Morgan Stanley submits the following Claim.

### The Engagement Letter

4.      The Engagement Letter relates to Morgan Stanley's representation of the Special Committee of the Board of Directors of Tribune in connection with a possible strategic transaction involving Tribune (the "*Engagement*").  Included in the Engagement Letter is an Indemnity Agreement (the "*2006 Indemnity*").  A copy of each of the Engagement Letter and the 2006 Indemnity is attached hereto as *Exhibit "A"*.

5.      Under the 2006 Indemnity, Tribune Company agreed to indemnify and hold harmless Morgan Stanley and its affiliates and their respective officers, directors, employees and agents and other persons controlling Morgan Stanley or its affiliates from and against any losses, claims, damages, or liabilities related to, arising out of or in connection with Morgan Stanley's engagement under the Engagement Letter, including reimbursement of reasonable legal fees and expenses and other reasonable expenses incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement.

### Rejection Damages Claim Asserted by Morgan Stanley

6.      Morgan Stanley hereby asserts a claim for all and any, losses, claims, damages, or liabilities related to, arising out of or in connection with the Engagement, including reimbursement of reasonable legal fees and expenses and other reasonable expenses incurred in connection with investigating, preparing, pursuing, or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement each as incurred, or to be incurred.[1]  For the avoidance of doubt, this claim includes all losses, claims, damages or liabilities, including fees and expenses, that may be incurred by Morgan Stanley in any future litigation, inquiry, or investigation regarding the Engagement.

7.      To date, approximately $1,000,511.87 in legal fees and expenses have been incurred in connection with (i) the action styled, *The Official Committee of Unsecured Creditors of Tribune Company v. Fitzsimons, et. al.*, Adv. Proc. No. 10-54010 (KJC) (the "***Creditors' Committee's Action***"), (ii) the examiner, appointed on April 30, 2010 (the "***Examiner***"), and (iii) the chapter 11 plan process, including Court appointed mediation, all of which relate to the Engagement Letter.  Specifically, these fees and expenses were incurred as a result of Morgan Stanley's role as advisor to the Special Committee of the Board of Directors of Tribune, and include, among other things:  (i) investigating, preparing, and defending the Creditors' Committee's Action and its attendant claims and investigations, (ii) responding to the requests of the Examiner, and (iii) investigating and preparing for the contested confirmation of the multiple competing chapter 11 plans, including responding to various discovery requests by certain non-Debtor plan proponents.

---

[1] Morgan Stanley's claim under the 2006 Indemnity described herein does not include, and is without prejudice to, all amounts owed under Claim 5027 and Claim 5034, previously filed by Morgan Stanley Capital Services and Morgan Stanley.

8.      Morgan Stanley reserves the right to amend, clarify, modify or supplement this Claim to assert additional claims (including, without limitation, administrative expense claims) and/or additional grounds for its claims against Tribune Company or any of the other Debtors or their respective estates.  Morgan Stanley (on behalf of itself and its affiliates) also reserves all rights accruing to it against Tribune Company or any of the other Debtors or any other third parties, and the submission of this Claim is not intended to be and shall not be construed as (a) an election of remedy or (b) a waiver or limitation of any rights of Morgan Stanley or its affiliates. In addition, Morgan Stanley reserves the right to supplement this Claim with additional relevant documents to the extent necessary.  Furthermore, Morgan Stanley reserves the right to withdraw this Claim for any reason whatsoever and Morgan Stanley (on behalf of itself and its affiliates) reserves all rights and remedies against affiliates of Tribune Company or any of the other Debtors or any other third parties.

9.      This Claim shall not be deemed to be a waiver of Morgan Stanley's right (i) to have final orders in noncore matters entered only after *de novo* review by a District Court Judge, (ii) to trial by jury in any proceeding so triable in these cases or any case, controversy, or proceeding related to these cases (to the extent such right has not otherwise been waived), (iii) to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or (iv) to any other rights, claims, actions, defenses, setoffs, or recoupments to which Morgan Stanley is or may be entitled, in law or in equity, all of which rights, claims, actions, defenses, setoffs, and recoupments Morgan Stanley expressly reserves. This Claim is in addition to and does not supersede any other claim or other proof of claim filed by Morgan Stanley against Tribune Company or any of the other Debtors.

10.    In addition to the foregoing, Morgan Stanley expressly reserves all other rights, remedies, interests, priorities, protections, claims, counterclaims, defenses, setoffs and recoupments, including, without limitation, claims against the Debtors under section 553 of the Bankruptcy Code, to the fullest extent possible under applicable bankruptcy and nonbankruptcy law.

11.    This proof of claim does not amend, replace or supersede the proofs of claims already filed by Morgan Stanley and its affiliates (Claim 5024 and Claim 5034).

12.    Any notices sent in connection with the Claim should be addressed to Morgan Stanley at the address below:

Morgan Stanley & Co. Incorporated
1221 Avenue of the Americas, 35th Floor
New York, NY 10020
Attn: Matthew Morningstar, Vice President
Fax: 212-507-4622

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue, 27th Floor
New York, NY 10153
Attn: Shai Y. Waisman, Esq.
Attn: Andrea C. Saavedra, Esq.
Fax: 212-310-8007

# EXHIBIT A

OCT-26-2006  18:55                                                                                            P.03

1585 Broadway
New York, NY 10036

# Morgan Stanley

17 October 2006

PERSONAL AND CONFIDENTIAL

Tribune Company
435 North Michigan Avenue
Chicago, IL 60611
Attention:  Mr. William A. Osborn
             Chairman of the Special Committee of the Board of Directors

Dear Bill:

Pursuant to our recent discussions, I am pleased to confirm the arrangements under which Morgan Stanley &
Co. Incorporated ("Morgan Stanley") is engaged by Tribune Company ("Tribune" or the "Company") as
financial advisor to the Special Committee (the "Committee") of Tribune's Board of Directors in connection
with (i) a possible sale, merger or other strategic business combination involving a change of control of the
Company (a "Transaction") or (ii) a potential recapitalization or restructuring plan (a "Plan") for Tribune,
including any potential spin-off, split-off or significant asset sale program involving a Tribune business.

During the term of our engagement we will provide financial advice and assistance in connection with this
assignment. Our anticipated responsibilities may include (i) reviewing the analyses and presentations of the
Company's financial advisors; (ii) representing the Committee throughout the process; (iii) making
recommendations to the Committee to improve the process and (iv) providing the Committee a fairness opinion
in accordance with our customary practice.

It is our practice to charge an "Advisory Fee," which is intended to reimburse us for our time and efforts
expended in connection with this assignment. For this assignment, the Advisory Fee will be $2,500,000. The
Advisory Fee will become payable and is to be paid by the Company upon execution of this letter agreement.

Upon your request, we will render a financial opinion letter in accordance with our customary practice with
respect to the consideration to be received in the Transaction or Plan. The terms of our opinion and the nature
and scope of any analysis and investigation we undertake in order to render such opinion shall be such as we
consider appropriate in the circumstances.

In consideration for our services, we will also charge a "Transaction Fee" of $7,500,000. The Transaction Fee
will be payable upon the earlier to occur of (i) the time we advise the Committee that we are prepared to deliver
our written opinion in connection with a Transaction or Plan after receiving such request from the Committee,
regardless of the conclusion reached therein, (ii) the closing of a Transaction where a financial opinion is not
requested by the Committee or (iii) the closing of a Plan where a financial opinion is not requested, but in
which, at the request of the Committee, Morgan Stanley played a substantive role.

The Committee agrees to discuss with Morgan Stanley, at an appropriate time, whether any additional fee is
appropriate. Any such fee would be payable at any time and at the sole discretion of the Committee, and may
reflect such considerations as the duration and complexity of the engagement and, in the event of a Transaction
or Plan, the value added by Morgan Stanley, the involvement of the Company's advisors in any contemplated

OCT-26-2006  18:56

P.04

Morgan Stanley

financing of any proposed Transaction or Plan, and the timing and certainty of closing. Morgan Stanley acknowledges and agrees that none of the Company, its Board of Directors or the Committee shall be obligated to pay any such additional fee to Morgan Stanley pursuant to this letter.

Notwithstanding the foregoing, should our role change substantially from that outlined in the Independent Financial Advisor Role & Responsibilities Memo dated October 6, a copy of which is attached to this letter as Appendix I , we may propose a revised fee arrangement, it being understood that any such modification must be considered by the Committee in good faith.

Morgan Stanley will rely on the accuracy and completeness, without verifying it independently, of any information we receive in connection with this engagement. We will not independently evaluate or appraise any assets or liabilities that may be involved in this engagement. We will assume that any forecasted financial information reflects the best available estimates of future financial performance. Except as required by law, legal process or in connection with a legal proceeding (in which case reasonable prior notice shall be provided to Morgan Stanley in advance of such disclosure), any advice or opinions provided by Morgan Stanley may not be disclosed or referred to publicly or to any third party except in accordance with our prior written consent. Notwithstanding the preceding sentence, any written opinion that we render hereunder may be included in a proxy statement, Schedule 14D-9 or other disclosure document to be delivered to the shareholders of the Company in connection with a Transaction or Plan if such inclusion is required by law, provided that the written opinion is reproduced therein in its entirety and any description of or reference to us or our advice in any such document is reasonably acceptable to us and our counsel.

We agree to keep confidential, and not to use other than in connection with this engagement, all information that we receive in connection with this engagement except information that (i) is or becomes generally available to the public (other than as a result of a disclosure by us), (ii) was available to us on a nonconfidential basis prior to its disclosure by the Company, the Committee or their respective advisors, (iii) becomes available to us on a nonconfidential basis prior to its disclosure from a person other than the Company, the Committee or their respective advisors who is not bound by a confidentiality agreement with the Company or otherwise prohibited from transferring such information to us, (iv) the Company agrees may be disclosed or (v) we are required by, law, regulation, legal process or regulatory authority to disclose.

Notwithstanding anything herein to the contrary, Morgan Stanley and the Committee agree that the Company (and its employees, representatives or other agents) may disclose to any and all persons, without limitation of any kind from the commencement of discussions, the U.S. federal and state income tax treatment and tax structure of any Transaction or Plan and all materials of any kind (including opinions or other tax analyses) that are provided to the Company or the Committee relating to such tax treatment and tax structure, except where confidentiality is reasonably necessary to comply with securities laws. For this purpose, "tax structure" is limited to facts relevant to the U.S. federal and state income tax treatment of any Transaction or Plan and does not include information relating to the identity of the parties, their affiliates, agents or advisors.

In addition to our fee for professional services, we will separately bill our reasonable expenses as incurred. Generally these expenses include travel costs, document production and other expenses of this type, and will also include the reasonable fees of outside counsel and other professional advisors should they be engaged with your written consent.

-2-

MORGAN STANLEY CONFIDENTIAL

MS 00212

# Morgan Stanley

The Company represents that the Committee has been formed by a duly authorized and binding resolution of the Board of Directors of the Company (the "Board Resolution") and represents further that the Board Resolution gives the Committee the authority to engage our services and to bind the Company with regard to the obligations of this letter agreement, including among other things, the payment of any and all fees and expenses of Morgan Stanley and the provision of an indemnity to Morgan Stanley.

Morgan Stanley will act under this letter agreement as an independent contractor with duties solely to the Committee. Because we will be acting on your behalf in this capacity, it is our practice to receive indemnification. A copy of the indemnity between us is attached to this letter. Upon execution by the Committee on behalf of the Company, the indemnity will be a binding obligation of the Company.

Please note that Morgan Stanley is a full service securities firm engaged in securities trading, investment management and brokerage activities, as well as providing investment banking, financing, and financial advisory services; provided, however, that Morgan Stanley acknowledges and agrees that, during the term of this engagement, neither Morgan Stanley nor its affiliates will provide mergers and acquisitions advisory services or act as lead book-runner, underwriter, placement agent, manager or arranger with respect to new money financing to the Company or any third party in connection with a Transaction or Plan without the Committee's prior written consent. In the ordinary course of our trading, brokerage, investment management and financing activities, Morgan Stanley or its affiliates may at any time hold long or short positions, and may trade or otherwise effect transactions, for our own account or the accounts of customers, in debt or equity securities or senior loans of the Company or any other company, commodity or currency that may be involved in this Transaction or Plan.

Our services hereunder may be terminated with or without cause by you or by us at any time and without liability or continuing obligation to you or to us (except for any fees payable pursuant to the terms hereof (and expenses incurred by us) to the date of termination and except, only in the case of termination by you without cause, for our right to fees to the extent payable pursuant to this letter in connection with a Transaction or Plan effected within 18 months of such termination) and provided that the indemnity, nondisclosure and jury trial waiver provisions will remain operative regardless of any such termination. For purposes of this letter agreement, "cause" shall mean a party's conduct that is determined to be gross negligence, bad faith or willful misconduct.

Morgan Stanley, the Company (on its own behalf and, to the extent permitted by law, on behalf of its shareholders), and the Committee each waives any right to trial by jury in any action, claim, suit or proceeding with respect to Morgan Stanley's engagement as financial advisor or its role in connection herewith.

This agreement or its terms may not be modified or amended except in a writing signed by each party. If the terms of our engagement as set forth in this letter are satisfactory, kindly sign the enclosed copy of this letter and indemnification form and return them to us.

- 3 -

MORGAN STANLEY CONFIDENTIAL
REF # 9807595A001                                          PAGE 4 OF 8                MS 00213

**Morgan** Stanley

We look forward to working with the Committee on this very important assignment.

Very truly yours,

MORGAN STANLEY & CO. INCORPORATED

By:

Paul J. Taubman
Managing Director

Accepted and agreed to:

TRIBUNE COMPANY

By: THE SPECIAL COMMITTEE OF THE
BOARD OF DIRECTORS OF TRIBUNE
COMPANY

By:

Title:   DIRECTOR

Date:   10/27/06

Enclosure

- 4 -

MORGAN STANLEY CONFIDENTIAL                          MS 00214

Morgan Stanley

**APPENDIX I**

Independent Financial Advisor
Role & Responsibilities

Morgan Stanley has been selected by the Independent Special Committee to assist the Committee through the transaction process. The Committee's RFP requested that its financial advisor assist the Committee in (i) reviewing the analyses and presentations of the Company's financial advisors; (ii) representing the Committee throughout the process; (iii) making recommendations to the Committee to improve the process and (iv) providing a fairness opinion. Unless requested by the Committee, Morgan Stanley will not communicate with any bidders or lenders regarding the process. Morgan Stanley's role and responsibilities may be modified at any time by the Committee.

To facilitate the provision of these services, management and the Company's financial advisors will keep Morgan Stanley apprised of all developments throughout the process. In particular, management and the Company's financial advisors will undertake the following:

- Provide Morgan Stanley with all presentation materials and work papers previously reviewed with the Board, engage Morgan Stanley regarding the alternatives reviewed and solicit Morgan Stanley's views regarding the analysis;
- Include Morgan Stanley in due diligence presentations by the Company to its financial advisors and staple financing sources;
- Provide Morgan Stanley with all documents, including bid letters, transaction documents and financing agreements, related to the transaction process;
- Communicate with Morgan Stanley on a regular basis regarding the process and bidders;
- Include Morgan Stanley on the distribution of all reports or other materials provided to the Committee;
- Provide all other information necessary for Morgan Stanley to provide a fairness opinion to the Committee.

Morgan Stanley will not provide financing to any bidder and will not participate in the transaction other than as an advisor to the Committee on a basis determined by the Committee.

- 5 -

MORGAN STANLEY CONFIDENTIAL

OCT-26-2006  18:57                                                                      P.08

Morgan Stanley & Co. Incorporated
1585 Broadway
New York, New York 10036

Gentlemen:

*[handwritten annotation: "reasonable"]*

*[handwritten annotation: ", willful misconduct"]*

This letter will confirm that we have engaged Morgan Stanley & Co. Incorporated to advise and assist us in connection with the matters referred to in our letter agreement dated _____ (the "Engagement Letter"). In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Person") from and against any losses, claims, damages or liabilities related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter, and will reimburse each Indemnified Person for all expenses (including fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party. We will not, however, be responsible for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined to have resulted from the bad faith or gross negligence of any Indemnified Person. We also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us for or in connection with the Engagement except for any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined to have resulted from the bad faith or gross negligence of such Indemnified Person.

*[handwritten annotation: "Rider A"]*

We will not, without your prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes a release of each Indemnified Person from any liabilities arising out of such action, claim, suit or proceeding. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without our prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to in the preceding paragraph.

*[handwritten annotation: "Rider B"]*

If the indemnification provided for in the first paragraph of this agreement is judicially determined to be unavailable (other than in accordance with the terms hereof) to an Indemnified Person in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, we shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (i) in such proportion as is appropriate to reflect the relative benefits to you, on the one hand, and us, on the other hand, of the Engagement or, if such allocation is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to above but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, in no case shall our aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For the purposes of this agreement, the relative benefits to us of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us or our shareholders, as the case may be, in the transaction or transactions that are the subject of the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to you under the Engagement Letter.

*[handwritten annotation: "and"]*

The provisions of this agreement shall apply to the Engagement and any modification thereof and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement and the Engagement Letter shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,    TRIBUNE COMPANY, by the Special
Committee of the Board of Directors
of Tribune Company

By _____

Accepted:

MORGAN STANLEY & CO. INCORPORATED

By _____

Date: _____

## Rider A

You agree to promptly reimburse us for any amount paid by us to any Indemnified Person prior to a judicial determination of any matter allegedly giving rise to an obligation on our part under this letter if its finally determined that such Indemnified Person was not entitled to such amount hereunder.

## Rider B

Each Indemnified Person shall provide us with prompt written notice of the commencement of any action or proceeding with respect to which indemnification or contribution will be sought hereunder, provided that the failure to provide such notice will not relieve us from any liability hereunder except to the extent we are materially prejudiced thereby. We shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Person. Upon assumption by us of the defense of any such action or proceeding, the Indemnified Person shall have the right to participate in such action or proceeding and to retain its own counsel but we shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Person in connection with the defense thereof unless (A) we have agreed to pay such fees and expenses, (B) we shall have failed to employ counsel reasonably satisfactory to the Indemnified Person in a timely manner, (C) the use of counsel chosen by us to represent the Indemnified Person would present such counsel with a conflict of interest, or (D) the Indemnified Person shall have been advised by counsel that there are actual or potential conflicting interests between us and the Indemnified Person, including situations in which there are one or more legal defenses available to the Indemnified Person that are different from or additional to those available to us, provided, however, that we shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys (or one local counsel in each applicable jurisdiction) at any time for all Indemnified Persons.

595160.02-Chicago Server 2A - MSW

1

MORGAN STANLEY CONFIDENTIAL

REF #    8987585A001

MS 00217

PAGE    8 OF 8
TOTAL P.09

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**
Tribune Company Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5069
New York, NY 10150-5069

# PROOF OF CLAIM

| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
|---|---|
| Tribune Company | 08-13141 (KJC) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

Morgan Stanley & Co. Incorporated
1221 Avenue of the Americas, 35th Floor
New York, NY 10020
Attn: Matthew Morningstar

Telephone number: (212) 761-4000    Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ See attachment

   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

   If all or part of your claim is entitled to priority, complete Item 5.

   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

   ☐ Check this box if claim is for a claim related to goods delivered during the twenty (20) days prior to December 8, 2008 (the "Petition Date"), pursuant to 11 U.S.C. §503(b)(9). Please indicate amount entitled to 503(b)(9) $

2. **Basis for Claim:** See attachment
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
        (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☒ Other
   Describe: See attachment

   Value of Property: $_____    Annual Interest Rate _____%

   Amount of arrearage and other charges as of time case filed included in secured claim, if any:

   $_____    Basis for perfection: _____

   **Amount of Secured Claim:** $_____    **Amount Unsecured:** $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

   Specify the priority of the claim:

   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

   ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

   **Amount entitled to priority:**

   $_____

   *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**

If the documents are not available, please explain:

**FOR COURT USE ONLY**

| Date: 3/2/11 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------x
                                  :

*In re*                                :

**TRIBUNE COMPANY,** *et al.,*       :

        **Debtors.**                :

                                    :

---------------------------------------------------------x

Chapter 11

Case No. 08-13141 (KJC)

(Jointly Administered)

### ATTACHMENT TO PROOF OF CLAIM
### OF MORGAN STANLEY & CO. INCORPORATED

       Morgan Stanley & Co. Incorporated ("***Morgan Stanley***"), by and through its undersigned counsel, Weil, Gotshal & Manges LLP, hereby submits this proof of claim (the "***Claim***").  As set forth more fully below, Morgan Stanley holds claims against Tribune Company ("***Tribune Company***") arising from and relating to the rejection of that certain Engagement Letter, dated October 17, 2006, by and between the Tribune Company and Morgan Stanley (the "***Engagement Letter***").

### Background

      1.      On December 8, 2008, Tribune Company and certain of its affiliates (collectively, the "***Debtors***") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Delaware.  On December 10, 2010, the Debtors filed the *First Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.* [D.I. 7136] (as amended, the "***Debtors' Plan***").

2.      On January 31, 2011, the Debtors' filed the Exhibits to the Debtors' Plan,
including Exhibit 6.3 – Rejected Executory Contracts and Unexpired Leases.  Exhibit 6.3 lists
the Engagement Letter.

3.      Pursuant to the Debtors' Plan, if an executory contract is listed on Exhibit 6.3, any
proof of claim based upon the rejection of such contract must be filed within thirty (30) days
after service of a notice that the executory contract has been rejected.  *See* Debtors' Plan §§ 6.3-
6.4.  Accordingly, Morgan Stanley submits the following Claim.

## The Engagement Letter

4.      The Engagement Letter relates to Morgan Stanley's representation of the Special
Committee of the Board of Directors of Tribune in connection with a possible strategic
transaction involving Tribune (the "***Engagement***").  Included in the Engagement Letter is an
Indemnity Agreement (the "***2006 Indemnity***").  A copy of each of the Engagement Letter and the
2006 Indemnity is attached hereto as ***Exhibit "A"***.

5.      Under the 2006 Indemnity, Tribune Company agreed to indemnify and hold
harmless Morgan Stanley and its affiliates and their respective officers, directors, employees and
agents and other persons controlling Morgan Stanley or its affiliates from and against any losses,
claims, damages, or liabilities related to, arising out of or in connection with Morgan Stanley's
engagement under the Engagement Letter, including reimbursement of reasonable legal fees and
expenses and other reasonable expenses incurred in connection with investigating, preparing,
pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out
of or in connection with the Engagement.

## Rejection Damages Claim Asserted by Morgan Stanley

6.     Morgan Stanley hereby asserts a claim for all and any, losses, claims, damages, or liabilities related to, arising out of or in connection with the Engagement, including reimbursement of reasonable legal fees and expenses and other reasonable expenses incurred in connection with investigating, preparing, pursuing, or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement each as incurred, or to be incurred.[1] For the avoidance of doubt, this claim includes all losses, claims, damages or liabilities, including fees and expenses, that may be incurred by Morgan Stanley in any future litigation, inquiry, or investigation regarding the Engagement.

7.     To date, approximately $1,000,511.87 in legal fees and expenses have been incurred in connection with (i) the action styled, *The Official Committee of Unsecured Creditors of Tribune Company v. Fitzsimons, et. al.*, Adv. Proc. No. 10-54010 (KJC) (the "***Creditors' Committee's Action***"), (ii) the examiner, appointed on April 30, 2010 (the "***Examiner***"), and (iii) the chapter 11 plan process, including Court appointed mediation, all of which relate to the Engagement Letter.  Specifically, these fees and expenses were incurred as a result of Morgan Stanley's role as advisor to the Special Committee of the Board of Directors of Tribune, and include, among other things:  (i) investigating, preparing, and defending the Creditors' Committee's Action and its attendant claims and investigations, (ii) responding to the requests of the Examiner, and (iii) investigating and preparing for the contested confirmation of the multiple competing chapter 11 plans, including responding to various discovery requests by certain non-Debtor plan proponents.

---

[1] Morgan Stanley's claim under the 2006 Indemnity described herein does not include, and is without prejudice to, all amounts owed under Claim 5027 and Claim 5034, previously filed by Morgan Stanley Capital Services and Morgan Stanley.

8.     Morgan Stanley reserves the right to amend, clarify, modify or supplement this Claim to assert additional claims (including, without limitation, administrative expense claims) and/or additional grounds for its claims against Tribune Company or any of the other Debtors or their respective estates.  Morgan Stanley (on behalf of itself and its affiliates) also reserves all rights accruing to it against Tribune Company or any of the other Debtors or any other third parties, and the submission of this Claim is not intended to be and shall not be construed as (a) an election of remedy or (b) a waiver or limitation of any rights of Morgan Stanley or its affiliates. In addition, Morgan Stanley reserves the right to supplement this Claim with additional relevant documents to the extent necessary.  Furthermore, Morgan Stanley reserves the right to withdraw this Claim for any reason whatsoever and Morgan Stanley (on behalf of itself and its affiliates) reserves all rights and remedies against affiliates of Tribune Company or any of the other Debtors or any other third parties.

9.     This Claim shall not be deemed to be a waiver of Morgan Stanley's right (i) to have final orders in noncore matters entered only after *de novo* review by a District Court Judge, (ii) to trial by jury in any proceeding so triable in these cases or any case, controversy, or proceeding related to these cases (to the extent such right has not otherwise been waived), (iii) to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or (iv) to any other rights, claims, actions, defenses, setoffs, or recoupments to which Morgan Stanley is or may be entitled, in law or in equity, all of which rights, claims, actions, defenses, setoffs, and recoupments Morgan Stanley expressly reserves. This Claim is in addition to and does not supersede any other claim or other proof of claim filed by Morgan Stanley against Tribune Company or any of the other Debtors.

10.    In addition to the foregoing, Morgan Stanley expressly reserves all other rights, remedies, interests, priorities, protections, claims, counterclaims, defenses, setoffs and recoupments, including, without limitation, claims against the Debtors under section 553 of the Bankruptcy Code, to the fullest extent possible under applicable bankruptcy and nonbankruptcy law.

11.    This proof of claim does not amend, replace or supersede the proofs of claims already filed by Morgan Stanley and its affiliates (Claim 5024 and Claim 5034).

12.    Any notices sent in connection with the Claim should be addressed to Morgan Stanley at the address below:

Morgan Stanley & Co. Incorporated
1221 Avenue of the Americas, 35th Floor
New York, NY 10020
Attn: Matthew Morningstar, Vice President
Fax: 212-507-4622

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue, 27th Floor
New York, NY 10153
Attn: Shai Y. Waisman, Esq.
Attn: Andrea C. Saavedra, Esq.
Fax: 212-310-8007

**EXHIBIT A**

US_ACTIVE:\43635352\07\64058.0108

P.03

1585 Broadway
New York, NY 10036

# Morgan Stanley

17 October 2006

PERSONAL AND CONFIDENTIAL

Tribune Company
435 North Michigan Avenue
Chicago, IL 60611
Attention: Mr. William A. Osborn
Chairman of the Special Committee of the Board of Directors

Dear Bill:

Pursuant to our recent discussions, I am pleased to confirm the arrangements under which Morgan Stanley & Co. Incorporated ("Morgan Stanley") is engaged by Tribune Company ("Tribune" or the "Company") as financial advisor to the Special Committee (the "Committee") of Tribune's Board of Directors in connection with (i) a possible sale, merger or other strategic business combination involving a change of control of the Company (a "Transaction") or (ii) a potential recapitalization or restructuring plan (a "Plan") for Tribune, including any potential spin-off, split-off or significant asset sale program involving a Tribune business.

During the term of our engagement we will provide financial advice and assistance in connection with this assignment. Our anticipated responsibilities may include (i) reviewing the analyses and presentations of the Company's financial advisors; (ii) representing the Committee throughout the process; (iii) making recommendations to the Committee to improve the process and (iv) providing the Committee a fairness opinion in accordance with our customary practice.

It is our practice to charge an "Advisory Fee," which is intended to reimburse us for our time and efforts expended in connection with this assignment. For this assignment, the Advisory Fee will be $2,500,000. The Advisory Fee will become payable and is to be paid by the Company upon execution of this letter agreement.

Upon your request, we will render a financial opinion letter in accordance with our customary practice with respect to the consideration to be received in the Transaction or Plan. The terms of our opinion and the nature and scope of any analysis and investigation we undertake in order to render such opinion shall be such as we consider appropriate in the circumstances.

In consideration for our services, we will also charge a "Transaction Fee" of $7,500,000. The Transaction Fee will be payable upon the earlier to occur of (i) the time we advise the Committee that we are prepared to deliver our written opinion in connection with a Transaction or Plan after receiving such request from the Committee, regardless of the conclusion reached therein, (ii) the closing of a Transaction where a financial opinion is not requested by the Committee or (iii) the closing of a Plan where a financial opinion is not requested, but in which, at the request of the Committee, Morgan Stanley played a substantive role.

The Committee agrees to discuss with Morgan Stanley, at an appropriate time, whether any additional fee is appropriate. Any such fee would be payable at any time and at the sole discretion of the Committee, and may reflect such considerations as the duration and complexity of the engagement and, in the event of a Transaction or Plan, the value added by Morgan Stanley, the involvement of the Company's advisors in any contemplated

OCT-26-2006  18:56

P.04

# Morgan Stanley

financing of any proposed Transaction or Plan, and the timing and certainty of closing. Morgan Stanley acknowledges and agrees that none of the Company, its Board of Directors or the Committee shall be obligated to pay any such additional fee to Morgan Stanley pursuant to this letter.

Notwithstanding the foregoing, should our role change substantially from that outlined in the Independent Financial Advisor Role & Responsibilities Memo dated October 6, a copy of which is attached to this letter as Appendix I , we may propose a revised fee arrangement, it being understood that any such modification must be considered by the Committee in good faith.

Morgan Stanley will rely on the accuracy and completeness, without verifying it independently, of any information we receive in connection with this engagement. We will not independently evaluate or appraise any assets or liabilities that may be involved in this engagement. We will assume that any forecasted financial information reflects the best available estimates of future financial performance. Except as required by law, legal process or in connection with a legal proceeding (in which case reasonable prior notice shall be provided to Morgan Stanley in advance of such disclosure), any advice or opinions provided by Morgan Stanley may not be disclosed or referred to publicly or to any third party except in accordance with our prior written consent. Notwithstanding the preceding sentence, any written opinion that we render hereunder may be included in a proxy statement, Schedule 14D-9 or other disclosure document to be delivered to the shareholders of the Company in connection with a Transaction or Plan if such inclusion is required by law, provided that the written opinion is reproduced therein in its entirety and any description of or reference to us or our advice in any such document is reasonably acceptable to us and our counsel.

We agree to keep confidential, and not to use other than in connection with this engagement, all information that we receive in connection with this engagement except information that (i) is or becomes generally available to the public (other than as a result of a disclosure by us), (ii) was available to us on a nonconfidential basis prior to its disclosure by the Company, the Committee or their respective advisors, (iii) becomes available to us on a nonconfidential basis prior to its disclosure from a person other than the Company, the Committee or their respective advisors who is not bound by a confidentiality agreement with the Company or otherwise prohibited from transferring such information to us, (iv) the Company agrees may be disclosed or (v) we are required by, law, regulation, legal process or regulatory authority to disclose.

Notwithstanding anything herein to the contrary, Morgan Stanley and the Committee agree that the Company (and its employees, representatives or other agents) may disclose to any and all persons, without limitation of any kind from the commencement of discussions, the U.S. federal and state income tax treatment and tax structure of any Transaction or Plan and all materials of any kind (including opinions or other tax analyses) that are provided to the Company or the Committee relating to such tax treatment and tax structure, except where confidentiality is reasonably necessary to comply with securities laws. For this purpose, "tax structure" is limited to facts relevant to the U.S. federal and state income tax treatment of any Transaction or Plan and does not include information relating to the identity of the parties, their affiliates, agents or advisors.

In addition to our fee for professional services, we will separately bill our reasonable expenses as incurred. Generally these expenses include travel costs, document production and other expenses of this type, and will also include the reasonable fees of outside counsel and other professional advisors should they be engaged with your written consent.

-2-

MS 00212

P.05

# Morgan Stanley

The Company represents that the Committee has been formed by a duly authorized and binding resolution of the Board of Directors of the Company (the "Board Resolution") and represents further that the Board Resolution gives the Committee the authority to engage our services and to bind the Company with regard to the obligations of this letter agreement, including among other things, the payment of any and all fees and expenses of Morgan Stanley and the provision of an indemnity to Morgan Stanley.

Morgan Stanley will act under this letter agreement as an independent contractor with duties solely to the Committee. Because we will be acting on your behalf in this capacity, it is our practice to receive indemnification. A copy of the indemnity between us is attached to this letter. Upon execution by the Committee on behalf of the Company, the indemnity will be a binding obligation of the Company.

Please note that Morgan Stanley is a full service securities firm engaged in securities trading, investment management and brokerage activities, as well as providing investment banking, financing, and financial advisory services; provided, however, that Morgan Stanley acknowledges and agrees that, during the term of this engagement, neither Morgan Stanley nor its affiliates will provide mergers and acquisitions advisory services or act as lead book-runner, underwriter, placement agent, manager or arranger with respect to new money financing to the Company or any third party in connection with a Transaction or Plan without the Committee's prior written consent. In the ordinary course of our trading, brokerage, investment management and financing activities, Morgan Stanley or its affiliates may at any time hold long or short positions, and may trade or otherwise effect transactions, for our own account or the accounts of customers, in debt or equity securities or senior loans of the Company or any other company, commodity or currency that may be involved in this Transaction or Plan.

Our services hereunder may be terminated with or without cause by you or by us at any time and without liability or continuing obligation to you or to us (except for any fees payable pursuant to the terms hereof (and expenses incurred by us) to the date of termination and except, only in the case of termination by you without cause, for our right to fees to the extent payable pursuant to this letter in connection with a Transaction or Plan effected within 18 months of such termination) and provided that the indemnity, nondisclosure and jury trial waiver provisions will remain operative regardless of any such termination.  For purposes of this letter agreement, "cause" shall mean a party's conduct that is determined to be gross negligence, bad faith or willful misconduct.

Morgan Stanley, the Company (on its own behalf and, to the extent permitted by law, on behalf of its shareholders), and the Committee each waives any right to trial by jury in any action, claim, suit or proceeding with respect to Morgan Stanley's engagement as financial advisor or its role in connection herewith.

This agreement or its terms may not be modified or amended except in a writing signed by each party. If the terms of our engagement as set forth in this letter are satisfactory, kindly sign the enclosed copy of this letter and indemnification form and return them to us.

- 3 -

MORGAN STANLEY CONFIDENTIAL
REF: H    9997595A001                                    MS 00213
                                                                              PAGE    4 OF 8

P.06

Morgan Stanley

We look forward to working with the Committee on this very important assignment.

Very truly yours,

MORGAN STANLEY & CO. INCORPORATED

By:

Paul J. Taubman
Managing Director

Accepted and agreed to:

TRIBUNE COMPANY

By: THE SPECIAL COMMITTEE OF THE
BOARD OF DIRECTORS OF TRIBUNE
COMPANY

By:

Title: DIRECTOR

Date: 10/27/06

Enclosure

- 4 -

MORGAN STANLEY CONFIDENTIAL

MS 00214

# Morgan Stanley

**APPENDIX I**

Independent Financial Advisor
Role & Responsibilities

Morgan Stanley has been selected by the Independent Special Committee to assist the Committee through the transaction process. The Committee's RFP requested that its financial advisor assist the Committee in (i) reviewing the analyses and presentations of the Company's financial advisors; (ii) representing the Committee throughout the process; (iii) making recommendations to the Committee to improve the process and (iv) providing a fairness opinion. Unless requested by the Committee, Morgan Stanley will not communicate with any bidders or lenders regarding the process. Morgan Stanley's role and responsibilities may be modified at any time by the Committee.

To facilitate the provision of these services, management and the Company's financial advisors will keep Morgan Stanley apprised of all developments throughout the process. In particular, management and the Company's financial advisors will undertake the following:

- Provide Morgan Stanley with all presentation materials and work papers previously reviewed with the Board, engage Morgan Stanley regarding the alternatives reviewed and solicit Morgan Stanley's views regarding the analysis;
- Include Morgan Stanley in due diligence presentations by the Company to its financial advisors and staple financing sources;
- Provide Morgan Stanley with all documents, including bid letters, transaction documents and financing agreements, related to the transaction process;
- Communicate with Morgan Stanley on a regular basis regarding the process and bidders;
- Include Morgan Stanley on the distribution of all reports or other materials provided to the Committee;
- Provide all other information necessary for Morgan Stanley to provide a fairness opinion to the Committee.

Morgan Stanley will not provide financing to any bidder and will not participate in the transaction other than as an advisor to the Committee on a basis determined by the Committee.

- 5 -

MORGAN STANLEY CONFIDENTIAL

Morgan Stanley & Co. Incorporated
1585 Broadway
New York, New York 10036

Gentlemen:

*[handwritten: reasonable]*  *[handwritten: , willful misconduct]*

This letter will confirm that we have engaged Morgan Stanley & Co. Incorporated to advise and assist us in connection with the matters referred to in our letter agreement dated _____ (the "Engagement Letter"). In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Person") from and against any losses, claims, damages or liabilities related to, arising out of or in connection with our engagement (the "Engagement") under the Engagement Letter, and will reimburse each Indemnified Person for all expenses (including fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party. We will not, however, be responsible for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined to have resulted from the bad faith or gross negligence of any Indemnified Person. We also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us for or in connection with the Engagement except for any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined to have resulted from the bad faith or gross negligence of such Indemnified Person.

*[handwritten: Rider A]*  We will not, without your prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes a release of each Indemnified Person from any liabilities arising out of such action, claim, suit or proceeding. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without our prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to in the preceding paragraph.

*[handwritten: Rider B]*  If the indemnification provided for in the first paragraph of this agreement is judicially determined to be unavailable (other than in accordance with the terms hereof) to an Indemnified Person in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, we shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (i) in such proportion as is appropriate to reflect the relative benefits to you, on the one hand, and us, on the other hand, of the Engagement or (ii) if the allocation provided by clause (i) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For the purposes of this agreement, the relative benefits to us and you of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us or our stockholders, as the case may be, in the transaction or transactions that are the subject of the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to you under the Engagement Letter.  *[handwritten: and]*

The provisions of this agreement shall apply to the Engagement and any modification thereof and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement and the Engagement Letter shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,    TRIBUNE COMPANY, by the Special
                      Committee of the Board of Directors
                      of Tribune Company

By _____

Accepted:

MORGAN STANLEY & CO. INCORPORATED

By _____

Date: _____

2/3

MORGAN STANLEY CONFIDENTIAL                              MS 00216

**Rider A**

You agree to promptly reimburse us for any amount paid by us to any Indemnified Person prior to a judicial determination of any matter allegedly giving rise to an obligation on our part under this letter if its finally determined that such Indemnified Person was not entitled to such amount hereunder.

**Rider B**

Each Indemnified Person shall provide us with prompt written notice of the commencement of any action or proceeding with respect to which indemnification or contribution will be sought hereunder, provided that the failure to provide such notice will not relieve us from any liability hereunder except to the extent we are materially prejudiced thereby. We shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Person. Upon assumption by us of the defense of any such action or proceeding, the Indemnified Person shall have the right to participate in such action or proceeding and to retain its own counsel but we shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Person in connection with the defense thereof unless (A) we have agreed to pay such fees and expenses, (B) we shall have failed to employ counsel reasonably satisfactory to the Indemnified Person in a timely manner, (C) the use of counsel chosen by us to represent the Indemnified Person would present such counsel with a conflict of interest, or (D) the Indemnified Person shall have been advised by counsel that there are actual or potential conflicting interests between us and the Indemnified Person, including situations in which there are one or more legal defenses available to the Indemnified Person that are different from or additional to those available to us, provided, however, that we shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys (or one local counsel in each applicable jurisdiction) at any time for all Indemnified Persons.

595360.02-Chicago Server 2A - MSW

1

MORGAN STANLEY CONFIDENTIAL

MS 00217

RECEIV

MAR 0 2 2011

**HAND DELIVERY**

**Tribune Company Claims Processing Center**
**c/o Epiq Bankruptcy Solutions, LLC**
**757 Third Avenue, Third Floor**
**New York, NY 10017**

H
A
N
D

D
E
L
I
V
E
R
Y

MAR 0 2 2011

RECEIVED BY: _____

DATE 3-2-2011

TIME 4:29ᴬᴹ