# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE MEDIA COMPANY[1]<br><br>(f/k/a Tribune Company),<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 08-13141 (BLS)<br><br>Hearing Date: July 12, 2023 at 11:00 a.m. (ET)<br><br>Objection Deadline: July 5, 2023 at 4:00 p.m. (ET) |

### REORGANIZED DEBTOR'S
### MOTION FOR ENTRY OF FINAL DECREE AND ORDER
### (I) CLOSING THE CHAPTER 11 CASE, (II) TERMINATING
### CLAIMS AND NOTICING SERVICES, (III) ESTABLISHING
### MODIFIED PROCEDURES FOR UNDELIVERABLE, UNCLAIMED,
### AND DE MINIMIS DISTRIBUTIONS, AND (IV) GRANTING RELATED RELIEF

The reorganized debtor in the above-captioned chapter 11 case (the "Reorganized Debtor"), by and through its undersigned counsel, hereby submits this motion (the "Motion") for the entry of an order, pursuant to sections 105(a) and 350(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 1005, 2002(f), and 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3022-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of a final decree in substantially the form attached hereto (the "Proposed Final Decree"): (i) closing the chapter 11 case of Tribune Media Company (f/k/a Tribune Company), Case No. 08-13141 (BLS) (the "Case"); (ii) terminating the claims and noticing services provided by Epiq Bankruptcy Solutions, LLC, the Reorganized Debtor's claims and noticing agent ("Epiq") in connection with the Case; (iii) establishing modified procedures for

---

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the entity's federal tax identification number, is Tribune Media Company (0355). The corporate headquarters and the mailing address for the Reorganized Debtor is 545 E. John Carpenter Freeway, Suite 700, Irving, TX 75062.

1

the treatment of undeliverable, unclaimed, and de minimis distributions; and (iv) granting related relief.  In support of this Motion, the Reorganized Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, which jurisdiction was retained pursuant to Article IX of the Confirmation Order (defined below) and Section 12.1 of the Plan (defined below).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Reorganized Debtor confirms its consent, pursuant to Rule 9013-1(f) of the Local Rules, to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 105(a) and 350(a) of the Bankruptcy Code, Bankruptcy Rules 1005, 2002(f), and 3022, and Local Rule 3022-1.

## STATUS OF THE CASE

3. On December 8, 2008 (the "Petition Date"), Tribune Company (n/k/a Tribune Media Company) and certain of its subsidiaries (collectively, the "Debtors")[2] each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC,[3] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.

---

[2] As used herein, the term "Debtors" refers to the entities that filed the above-captioned chapter 11 case and related chapter 11 cases that have been closed, and the term "Reorganized Debtors" refers to the entities that became successors to the Debtors upon the Debtors' emergence from their chapter 11 cases.

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

4. The Debtors' chapter 11 cases were consolidated for procedural purposes only and were jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 43, 2333].

5. On July 23, 2012, the Court entered an order [Docket No. 12074] (the "Confirmation Order") confirming the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 12072] (the "Plan").

6. The Effective Date of the Plan occurred on December 31, 2012.

**A.    Closure of the Other Debtors' Chapter 11 Cases**

7. The Reorganized Debtor has previously requested and the Court has granted final decrees closing all of the Debtors' chapter 11 cases other than the instant case as "fully administered" under section 350 of the Bankruptcy Code and Bankruptcy Rule 3022. Specifically, on February 25, 2015, the Reorganized Debtor and its then-Debtor affiliates filed a motion (the "Initial Case Closure Motion") seeking the entry of a final decree closing eighty-eight (88) of the one hundred ten (110) then-pending chapter 11 cases. See Docket No. 14055. The Reorganized Debtor and its then-Debtor affiliates subsequently filed five further motions seeking to close additional chapter 11 cases. See Docket Nos. 14123, 14237, 14291, 14639, 14763 (collectively with the Initial Case Closure Motion, the "Prior Case Closure Motions"). Each of the Prior Case Closure Motions was granted. See Docket Nos. 14078, 14135, 14255, 14303, 14652, 14773 (collectively, the "Prior Final Decrees").

**B.    Proofs of Claim**

8. All claims against the Debtors have either been satisfied prior to the date of this Motion or will be satisfied through distributions to be made following entry of the Proposed

3

Final Decree.  Approximately 7,191 proofs of claim were filed in the Debtors' chapter 11 cases (the "Proofs of Claim").  The Debtors and/or the applicable Reorganized Debtor(s) filed seventy-nine (79) omnibus objections to claims during the course of the Debtors' chapter 11 cases, as well as a number of discrete objections to particular claims, motions to approve settlements of various claims, and similar requests for relief.  Numerous other claims against the Debtors were resolved or released pursuant to the terms of the Plan.

9. All of the claims that were the subject of these objections and resolutions have now been allowed or disallowed on a final basis.[4]  Those claims that were allowed against the Debtors, or were allowed by their terms pursuant to the Plan, have previously been satisfied by the Debtors or the Reorganized Debtors with the exception of the claims described in the Declaration of D. Randall Bradford in Support of the Reorganized Debtor's Motion for Entry of a Final Decree and Order (I) Closing the Chapter 11 Case, (II) Terminating Claims and Noticing Services, (III) Establishing Modified Procedures for Undeliverable, Unclaimed, and De Minimis Distributions, and (IV) Granting Related Relief (the "Bradford Declaration"), attached hereto as **Exhibit A**.  Specifically, the only amounts that the Reorganized Debtor's books and records show

---

[4] The last Proofs of Claim to be resolved were asserted by Mr. Robert Henke against Debtor The Baltimore Sun Company in the face amount of $100 million.  See Proofs of Claim Nos. 3697, 7106 (the "Henke Claims").  The Henke Claims were disallowed by this Court on March 3, 2020.  See Docket No. 14659.  Mr. Henke subsequently appealed that disallowance to the United States District Court for the District of Delaware, see Henke v. Tribune Media Co. (In re Tribune Media Co.), Civ. A. No. 1:20-cv-00383-RGA, Docket No. 1 (D. Del. Mar. 18, 2020), and, thereafter, to the United States Court of Appeals for the Third Circuit, see Henke v. Tribune Media Co. (In re Tribune Media Co.), No. 21-02000, Docket No. 1 (3d Cir. May 24, 2021).  Each of those courts affirmed the disallowance of the Henke Claims.  See Henke v. Tribune Media Co. (In re Tribune Media Co.), Civ. A. No. 1:20-cv-00383-RGA, Docket Nos. 37, 38 (D. Del. Mar. 22, 2021); Henke v. Tribune Media Co. (In re Tribune Media Co.), No. 21-02000, Docket Nos. 49, 50 (3d Cir. Mar. 24, 2023).  On April 7, 2023, Mr. Henke filed a petition for rehearing before the Third Circuit panel and the Third Circuit en banc.  Henke v. Tribune Media Co. (In re Tribune Media Co.), No. 21-02000, Docket No. 51 (3d Cir. Apr. 7, 2023).  The United States Court of Appeals for the Third Circuit denied Mr. Henke's petition for rehearing on May 9, 2023.  Henke v. Tribune Media Co. (In re Tribune Media Co.), No. 21-02000, Docket No. 52 (3d Cir. May 9, 2023); see also Docket No. 14922.  The Reorganized Debtor has been informed by Mr. Henke that he intends to file a petition for a writ of certiorari with the Supreme Court of the United States.  As of the date and time of filing this Motion, to the best of the Reorganized Debtor's knowledge, Mr. Henke has not filed a petition for a writ of certiorari.

that remain to be distributed in its chapter 11 case are (i) distributions of any surpluses remaining in the Other Parent Claims Reserve and the Subsidiary GUC Reserve to the holders of Senior Loan Claims, and (ii) distributions of the Bridge Settlement Proceeds as set forth on Schedule 1 to the Bradford Declaration.  See Bradford Declaration at ¶¶ 4–5.  The estimated amounts of Bridge Settlement Proceeds to be distributed are set forth in the Bradford Declaration.[5]  See Bradford Declaration at Schedule 1.

## RELIEF REQUESTED

10. By this Motion, the Reorganized Debtor requests the entry of a final decree pursuant to sections 105(a) and 350(a) of the Bankruptcy Code, Bankruptcy Rules 1005, 2002(f), and 3022, and Local Rule 3022-1, in substantially the form attached hereto: (i) closing the Reorganized Debtor's Case; (ii) terminating the claims and noticing services provided by Epiq in connection with the Case; (iii) establishing modified procedures for the treatment of undeliverable, unclaimed, and de minimis distributions; and (iv) granting related relief.

## BASIS FOR RELIEF REQUESTED

**I. The Reorganized Debtor's Chapter 11 Case Is Fully Administered for Purposes of the Bankruptcy Code.**

11. Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."  11 U.S.C. § 350(a).  Bankruptcy Rule 3022 provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court . . . shall enter a final decree closing the case."  Fed. R. Bankr. P. 3022.

---

[5] The estimated distribution amounts set forth on Schedule 1 to the Bradford Declaration are subject to minor adjustments, including but not limited to potential withholding requirements and based on the possible impact of unclaimed or undeliverable distributions.  Such adjustments are not expected to be material, either with respect to individual claims or in the aggregate.

12. Neither the Bankruptcy Code nor the Bankruptcy Rules define the term "fully administered." The Advisory Committee Note to the 1991 amendment to the Bankruptcy Rule 3022 provides a list of six factors that a court may consider in determining whether an estate has been fully administered for final decree purposes. The six factors are: (a) whether the order confirming the plan has become final; (b) whether deposits required by the plan have been distributed; (c) whether the property proposed by the plan to be transferred has been transferred; (d) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan; (e) whether payments under the plan have commenced; and (f) whether all motions, contested matters, and adversary proceedings have been finally resolved. See Advisory Committee Note to Fed. R. Bankr. P. 3022.

13. Courts have frequently applied the six factors set forth in the Advisory Committee Note in determining whether a case has been fully administered. See, e.g., In re Kliegl Bros. Univ. Elec. Stage Lighting Co., Inc., 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999); In re SLI, Inc., No. 02-12608 (WS), 2005 Bankr. LEXIS 1322, at *5 (Bankr. D. Del. June 24, 2005). These factors act as a guide to assist the determination of whether a case is fully administered, although each of the factors need not be present in order for a court to enter a final decree. See, e.g., In re JMP-Newcor Int'l, Inc., 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998) (finding that case was fully administered despite pending adversary proceeding).

14. The Reorganized Debtor's case has been or, upon entry of the Proposed Final Decree, will be "fully administered" within the meaning of section 350 of the Bankruptcy Code when the foregoing factors are taken into account. First, the Confirmation Order became final, and the Reorganized Debtor assumed the management of property dealt with by the Plan,

over ten years ago. Second, all Proofs of Claim asserted against all of the Debtors—including those that were administered in the sole remaining Reorganized Debtor's case—have now been resolved. Third, all costs required by the Plan to be paid by the Reorganized Debtor have been paid, other than in connection with the final payment of U.S. Trustee fees and those payments that have not yet become due in the ordinary course of business or otherwise under non-bankruptcy law. Fourth, all motions, contested matters, or adversary proceedings related to the Reorganized Debtor's Case have been resolved. Fifth, all transactions contemplated by the Plan have closed.

15.     Given the foregoing, the Reorganized Debtor has no need for the Case to remain open, and the Case should be closed immediately. The Court's supervision is no longer required in the Case because the Plan has been substantially consummated and the Case fully administered. Moreover, the continuation of the Case would place an administrative and financial burden on the Reorganized Debtor in the form of resources required to monitor the Case, continued professional costs, and the imposition of quarterly fees assessed by the U.S. Trustee. Closure of the Case will also reduce the Court's docket and the attendant burden on this Court, as well as the Clerk of Court's office and the U.S. Trustee.

16.     The Reorganized Debtor further requests that the entry of a final decree closing the Case be without prejudice to the reopening of the Case pursuant to section 350(b) of the Bankruptcy Code.

**II.    With Closure of the Chapter 11 Case, the Reorganized Debtor May Make Final Distributions and Terminate the Claims and Noticing Services, and the Reorganized Debtor Requests Establishing Modified Procedures for the Treatment of Undeliverable, Unclaimed, and De Minimis Distributions.**

**A.    <u>Final Distributions and Terminating the Claims and Noticing Services</u>**

17.     All expenses arising from the administration the Case, including court fees, U.S. Trustee fees, professional fees, and expenses, have been paid or will be paid in the amounts

due and, to the extent applicable, approved by the Court as soon as reasonably practicable after the closure of the Case.

18. In addition to the foregoing, the Reorganized Debtor desires to terminate the claims and noticing services (the "Claims and Noticing Services") performed by Epiq pursuant to the Order Authorizing the Debtors and Debtors in Possession to Retain and Employ Epiq Bankruptcy Solutions, LLC as Claims, Noticing, and Balloting Agent Pursuant to 28 U.S.C. § 156(c), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure and Local Rule 2002-1(f) as of the Petition Date [Docket No. 44] (the "Epiq Order") and the underlying services agreement. Upon the termination of the Claims and Noticing Services, and except as otherwise provided herein, Epiq shall have no further obligations (arising out of the services agreement, the Epiq Order, or otherwise) to the Court, the Reorganized Debtor, or any party in interest with respect to the official claims agent and noticing services in the case. In accordance with Local Rule 2002-1(f)(ix), within twenty-eight (28) days of entry of a final decree, Epiq shall: (a) forward to the Clerk of the Court an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF; and (c) docket a final claims register containing the claims filed in the Debtors' chapter 11 cases.

B. **Establishing Modified Procedures for the Treatment of Undeliverable, Unclaimed, and De Minimis Distributions**

19. The Reorganized Debtor also requests that the Court authorize certain modified procedures with respect to distributions that are undeliverable, unclaimed, or de minimis in nature. These modifications, if approved, would dramatically reduce the cost and administrative burden of making final distributions in this chapter 11 case with little overall effect on claimants as a whole. Specifically, the Reorganized Debtor requests the following relief:

8

    i. Any Holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed distribution within ninety (90) days of the Distribution Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any claim on account of such undeliverable or unclaimed distribution;

    ii. The Reorganized Debtor shall not be required to make any distribution to a Holder of an Allowed Claim where the amount of such distribution would be less than $100; and

    iii. The Reorganized Debtor shall not be required to make any distribution to a Holder of an Allowed Claim that fails to submit a Form W-9 (if required) to the Reorganized Debtor within ninety (90) days of the Distribution Date, and such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any claim on account of such undeliverable or unclaimed distribution.

20.     The procedures set forth in the Plan currently governing these matters provide that Holders of Allowed Claims shall have one year following the Effective Date (i.e., December 31, 2012) to assert a claim for an undeliverable or unclaimed distribution or deemed to forfeit such distribution. See Plan at § 7.6.2(c). Such date is facially inapplicable to distributions made more than ten years following the Effective Date, and given the more limited universe of potential claimants and the need to bring the administration of the Debtors' estates to a conclusion, the Reorganized Debtor submits that a ninety-day (90-day) grace period for claimants to assert

claims for undeliverable or unclaimed distributions or for claimants to submit a Form W-9 (if required) is appropriate.

21.     The Reorganized Debtor also submits that a $100 de minimis threshold for distributions is appropriate for the remaining distributions to be made in the chapter 11 case. The Plan currently provides that distributions do not need to be made to Holders of Allowed Claims if the value of such claim is less than $25. See Plan at § 7.13. While the $25 de minimis threshold could have been—and was—administratively efficient for the initial round of distributions in the Debtors' chapter 11 cases, the Reorganized Debtor cannot cost-effectively make a large number of small-dollar distributions as part of the final distribution in the case given the likely absence of current contact information or other distribution details for claimants, increased reporting requirements, and other factors. Approximately 392 of the remaining Allowed Claims would receive a distribution of Bridge Settlement Proceeds of less than $100, with such claims totaling roughly $11,371.19 in the aggregate. See Bradford Declaration at ¶ 7. It is unlikely that the Reorganized Debtor could make such a large number of small-dollar distributions without consuming more in transaction costs than the value of the claims. The Reorganized Debtor accordingly requests that it be relieved of the obligation to make distributions on Allowed Claims where the value of such distribution is less than $100. The Reorganized Debtor accordingly requests that it be relieved of the obligation to make distributions on account of such claims, as has been approved by this Court in other cases. See, e.g., In re Chisholm Oil and Gas Operating, LLC, Case No. 20-11593 (BLS) (Bankr. D. Del. Sept. 23, 2020) [Docket No. 322] (confirming a plan of reorganization with de minimis distribution threshold of less than $100); In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bankr. D. Del. Feb. 21, 2018) [Docket No. 2120] (same); In re Tidewater Inc., Case No. 17-11132 (BLS) (Bankr. D. Del. July 17, 2017) [Docket No. 378] (same).

**CALCULATION OF FEES**

22. For the purposes of calculating fees which are due and payable pursuant to 28 U.S.C. § 1930 in connection with the Case, (a) any disbursements made by Tribune Media Company prior to the entry of the Proposed Final Decree will be included in the calculation of quarterly fees for the third quarter of 2023, (b) the appropriate quarterly fees based on any such disbursements will be paid by or on behalf of Tribune Media Company on or before the deadline for the payment of quarterly fees for the third quarter of 2023 pursuant to 28 U.S.C. § 1930, (c) no disbursements made by Tribune Media Company following entry of the Proposed Final Decree will be included in the calculation of such quarterly fees, and (d) no quarterly fees shall be due and payable with respect to the Case for quarterly periods thereafter.

**EFFECTIVENESS**

23. In light of the facts and circumstances described in this Motion, the Reorganized Debtor respectfully requests that notwithstanding any provision of the Bankruptcy Code, Bankruptcy Rules, or Local Rules to the contrary, the terms and conditions of the Proposed Final Decree be immediately effective and enforceable upon its entry.

24. The Reorganized Debtor further requests that notwithstanding any provision of the Bankruptcy Code, Bankruptcy Rules, or Local Rules to the contrary, closure of the Case shall not alter or modify the terms of the Plan, Confirmation Order, any supplement, exhibit, appendix, or schedule to the Plan, or any other contract, instrument, release, or other agreement executed or created pursuant to the Plan, with the exception of the modified procedures governing undeliverable, unclaimed, and de minimis distributions expressly requested in this Motion.

25. The Reorganized Debtor further requests that it and its agents be authorized to take all actions necessary to effectuate the relief granted pursuant to the Proposed Final Decree in accordance with this Motion.

## FINAL REPORT

26. In accordance with Local Rule 3022-1(c), the Reorganized Debtor will file a verified final report on or before the date that is fourteen (14) days before the hearing on this Motion. In accordance with the Court's Prior Final Decrees, the Reorganized Debtor's final report shall be a consolidated final report with respect to all of the Debtors.

## NOTICE

27. Notice of this Motion has been provided to (i) the Office of the United States Trustee, (ii) those parties who are listed on Schedule 1 to the Bradford Declaration, and (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rules 2002-1(b) and 9013-1. In light of the nature of the relief requested herein, the Reorganized Debtor submits that no other or further notice is necessary.

*[Remainder of Page Left Blank Intentionally]*


WHEREFORE the Reorganized Debtor respectfully requests entry of the Proposed Final Decree, substantially in the form attached hereto, granting the relief requested herein and such further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>June 21, 2023 | Respectfully submitted,<br><br>SIDLEY AUSTIN LLP<br>Kenneth P. Kansa<br>Ian C. Ferrell<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone: (312) 853-7000<br><br>-and-<br><br>COLE SCHOTZ, P.C.<br><br>By: __/s/ Patrick J. Reilley_____<br>Norman L. Pernick (No. 2290)<br>Patrick J. Reilley (No. 4451)<br>500 Delaware Avenue, Suite 1410<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-3131<br><br>ATTORNEYS FOR REORGANIZED DEBTOR |